IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                             :

In re                         :    Chapter 11

                             :

DPH HOLDINGS CORP., et al.,    :    Case No. 05-44481 (RDD)

                             :

            Reorganized Debtors.    :    (Jointly Administered)

                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AFFIDAVIT OF SERVICE

       I, Darlene Calderon, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants LLC, the Court appointed claims and noticing agent for the Reorganized Debtors in the above-captioned cases.

       On December 6, 2010, I caused to be served the documents listed below (i) upon the parties listed on <u>Exhibit A</u> hereto via electronic notification, and (ii) upon the party listed on <u>Exhibit B</u> hereto via postage pre-paid U.S. mail:

1) Reorganized Debtors' Supplemental Reply to Response of Claimant to Debtors' Objection to Proof of Claim Number 1294 Filed by Ohio Bureau of Workers' Compensation ("Supplemental Reply Regarding Claim Filed by Ohio Bureau of Workers Compensation") (Docket No. 20977) [a copy of which is attached hereto as <u>Exhibit C</u>]

2) Reorganized Debtors' Supplemental Reply with Respect to Proof of Administrative Expense Claim Number 20017 (Andrew C. Gregos) ("Supplemental Reply Regarding Administrative Expense Claim Andrew C. Gregos") (Docket No. 20978) [a copy of which is attached hereto as <u>Exhibit D</u>]

       On December 6, 2010, I caused to be served the document listed below (i) upon the parties listed on <u>Exhibit E</u> hereto via overnight mail, and (ii) upon the parties listed on <u>Exhibit F</u> hereto via electronic notification:

3) Reorganized Debtors' Supplemental Reply to Response of Claimant to Debtors' Objection to Proof of Claim Number 1294 Filed by Ohio Bureau of Workers' Compensation ("Supplemental Reply Regarding Claim Filed by Ohio Bureau of Workers Compensation") (Docket No. 20977) [a copy of which is attached hereto as <u>Exhibit C</u>]

On December 6, 2010, I caused to be served the document listed below upon the party listed on <u>Exhibit G</u> hereto via overnight mail:

4) Reorganized Debtors' Supplemental Reply with Respect to Proof of Administrative Expense Claim Number 20017 (Andrew C. Gregos) ("Supplemental Reply Regarding Administrative Expense Claim Andrew C. Gregos") (Docket No. 20978) [a copy of which is attached hereto as <u>Exhibit D</u>]

Dated: December 9, 2010

_____*/s/ Darlene Calderon*_____
Darlene Calderon

State of California
County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 9th day of December, 2010, by Darlene Calderon, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature:  _*/s/ Vanessa R. Quiñones*_____

Commission Expires: _*3/20/11*_____

# EXHIBIT A

DPH Holdings Corp.

Post-Emergence Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|
| Barnes & Thornburg LLP | Deborah L. Thorne Kathleen L. Matsoukas | One N Wacker Drive | Suite 4400 | Chicago | IL | 60606 | 312-357-1313 | dthorne@btlaw.com kmatsoukas@btlaw.com | Counsel to Johnson Controls Battery Group, Inc.; Johnson Controls, Inc. (Power Solutions) |
| Delphi Automotive Systems LLP | Sean Corcoran Karen Craft David M. Sherbin | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com david.sherbin@delphi.com | Delphi Automotive Systems LLP |
| DPH Holdings Corp. | John Brooks | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2143 | john.brooks@delphi.com | Reorganized Debtors |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | fgorman@honigman.com rweiss@honigman.com | Counsel to General Motors Corporation |
| Ruskin Moscou Faltischek PC | Jeffrey A. Wurst, Esq. | 1425 RXR Plaza | 15th Floor | Uniondale | NY | 11556 | 516-663-6535 | jwurst@rmfpc.com | |
| Skadden, Arps, Slate, Meagher & Flom LLP | Ron E. Meisler | 155 N Wacker Drive | Suite 2700 | Chicago | IL | 60606-1720 | 312-407-0700 | rmeisler@skadden.com | Counsel to the Reorganized Debtor |
| Weil, Gotshal & Manges LLP | Harvey R. Miller Robert J. Lemons | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8500 | harvey.miller@weil.com robert.lemons@weil.com | Counsel to General Motors Corporation |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 1 of 1

12/8/2010 12:08 AM
Post-Emergence Master Service List 101130.xlsx Email (7)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Adalberto Cañadas Castillo | | Avda Ramon de Carranza | 10-1° | Cadiz | | 11006 | Spain | 34 956 226 311 | adalberto@canadas.com | Representative to DASE |
| Adler Pollock & Sheehan PC | Joseph Avanzato | One Citizens Plz 8th Fl | | Providence | RI | 02903 | | 401-274-7200 | javanzato@apslaw.com | Attorneys for Fry's Metals Inc. and Specialty Coatings Systems Eft |
| Airgas, Inc. | David Boyle | 259 Radnor-Chester Road, Suite 100 | P.O. Box 6675 | Radnor | PA | 19087-8675 | | 610-902-6028 | david.boyle@airgas.com | Counsel to Airgas, Inc. |
| Akebono Brake Corporaton | Brandon J. Kessinger | 310 Ring Road | | Elizabethtown | KY | 42701 | | 270-234-5580 | bkessinger@akebono-usa.com | Representative for Akebono Corporation |
| Akin Gump Strauss Hauer & Feld, LLP | Christina M. Padien | 2029 Centure Park East | Suite 2400 | Los Angeles | CA | 90067 | | 310-229-1000 | cpadien@akingump.com | Counsel to Wamco, Inc. |
| Akin Gump Strauss Hauer & Feld, LLP | David M Dunn | 1333 New Hampshire Ave NW | | Washington | DC | 20036 | | 202-887-4000 | ddunn@akingump.com | Counsel to TAI Unsecured Creditors Liquidating Trust |
| Akin Gump Strauss Hauer & Feld, LLP | Ira S Dizengoff | One Bryant Park | | New York | NY | 10036 | | 212-872-1000 | idizengoff@akingump.com | Counsel to TAI Unsecured Creditors Liquidating Trust |
| Allen Matkins Leck Gamble & Mallory LLP | Michael S. Greger | 1900 Main Street | Fifth Floor | Irvine | CA | 92614-7321 | | 949-553-1313 | mgreger@allenmatkins.com | Counsel to Kilroy Realty, L.P. |
| Alliance for Sustainable Energy LLC | National Renewable Energy Laboratory | Jim Martin Senior Attorney | 1617 Golden Blvd MS 1734 | Golden | CO | 80401 | | 303-384-7497 | jim.martin@nrel.gov | Counsel for National Renewable Energy Laboratory |
| Alston & Bird, LLP | Craig E. Freeman | 90 Park Avenue | | New York | NY | 10016 | | 212-210-9400 | craig.freeman@alston.com | Counsel to Cadence Innovation, LLC |
| Alston & Bird, LLP | Dennis J. Connolly; David A. Wender | 1201 West Peachtree Street | | Atlanta | GA | 30309 | | 404-881-7269 | dconnolly@alston.com dwender@alston.com | Counsel to Cadence Innovation, LLC, PD George Co, Furukawa Electric Companay, Ltd., and Furukawa Electric North America APD, Inc. |
| American Axle & Manufacturing, Inc. | Steven R. Keyes | One Dauch Drive, Mail Code 6E-2-42 | | Detroit | MI | 48243 | | 313-758-4868 | steven.keyes@aam.com | Representative for American Axle & Manufacturing, Inc. |
| Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP | Mark T. Flewelling | 199 South Los Robles Avenue | Suite 600 | Pasadena | CA | 91101-2459 | | 626-535-1900 | mtf@afrct.com | Counsel to Stanley Electric Sales of America, Inc. |
| Arent Fox PLLC | Robert M. Hirsh | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | Hirsh.Robert@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arnall Golden Gregory LLP | Darryl S. Laddin | 171 17th Street NW | Suite 2100 | Atlanta | GA | 30363-1031 | | 404-873-8120 | dladdin@agg.com | Counsel to Daishinku (America) Corp. d/b/a KDS America ("Daishinku"), SBC Telecommunications, Inc. (SBC) |
| Arnold & Porter LLP | Joel M. Gross | 555 Twelfth Street, N.W. | | Washington | D.C. | 20004-1206 | | 202-942-5000 | joel_gross@aporter.com | Counsel to CSX Transportation, Inc. |
| ATS Automation Tooling Systems Inc. | Carl Galloway | 250 Royal Oak Road | | Cambridge | Ontario | N3H 4R6 | Canada | 519-653-4483 | cgalloway@atsautomation.com | Company |
| Balch & Bingham LLP | Eric T. Ray | PO Box 306 | | Birmingham | AL | 35201 | | 205-251-8100 | eray@balch.com | Attorney for Alabama Power Company |
| Barack, Ferrazzano, Kirschbaum & Nagelberg LLP | Kimberly J. Robinson | 200 W Madison St Ste 3900 | | Chicago | IL | 60606 | | 312-984-3100 | kim.robinson@bfkn.com | Counsel to Motion Industries, Inc., EIS, Inc. and Johnson Industries, Inc. |
| Barack, Ferrazzano, Kirschbaum & Nagelberg LLP | William J. Barrett | 200 W Madison St Ste 3900 | | Chicago | IL | 60606 | | 312-984-3100 | william.barrett@bfkn.com | Counsel to Motion Industries, Inc., EIS, Inc. and Johnson Industries, Inc. |
| Barnes & Thornburg LLP | Alan K. Mills | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | alan.mills@btlaw.com | Counsel to Mays Chemical Company |
| Barnes & Thornburg LLP | Damon R Leichty | 600 1st Source Bank Center | 100 North Michigan | South Bend | IN | 46601 | | 574-233-1171 | damon.leichty@btlaw.com | Counsel to Bank of America, N.A. |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 1 of 23

12/8/2010 12:06 AM
Email (397)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Barnes & Thornburg LLP | David M. Powlen | 1000 N West Street | Suite 1200 | Wilmington | DE | 19801 | | 302-888-4536 | david.powlen@btlaw.com | Counsel to Howard County, Indiana |
| Barnes & Thornburg LLP | Deborah L. Thorne | One North Wacker Drive | Suite 4400 | Chicago | IL | 60606 | | 312-357-1313 | deborah.thorne@btlaw.com | Counsel to Johnson Controls Battery Group, Inc.; Johnson Controls, Inc. (Power Solutions) |
| Barnes & Thornburg LLP | John T. Gregg | 171 Monroe Avenue NW | Suite 1000 | Grand Rapids | MI | 49503 | | 616-742-3930 | jgregg@btlaw.com | Counsel to Priority Health; Clarion Corporation of America; Continental AG and Affiliates |
| Barnes & Thornburg LLP | Kathleen L. Matsoukas | One North Wacker Drive | Suite 4400 | Chicago | IL | 60606 | | 312-357-1313 | kathleen.matsoukas@btlaw.com | Counsel to Johnson Controls Battery Group, Inc.; Johnson Controls, Inc. (Power Solutions); Howard County, Indiana |
| Barnes & Thornburg LLP | Mark R. Owens | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | mark.owens@btlaw.com | Counsel to Clarion Corporation of America |
| Barnes & Thornburg LLP | Michael K. McCrory | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | michael.mccrory@btlaw.com | Counsel to Gibbs Die Casting Corporation; Clarion Corporation of America |
| Barnes & Thornburg LLP | Patrick E. Mears | 171 Monroe Avenue NW | Suite 1000 | Grand Rapids | MI | 49503 | | 616-742-3936 | pmears@btlaw.com | Counsel to Armada Rubber Manufacturing Company, Bank of America Leasing & Capital, LLC, & AutoCam Corporation |
| Barnes & Thornburg LLP | Sarah Quinn Kuhny | 600 1st Source Bank Center | 100 North Michigan | South Bend | IN | 46601 | | 574-233-1171 | sarah.kuhny@btlaw.com | Counsel to Bank of America, N.A. |
| Barnes & Thornburg LLP | Wendy D. Brewer | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | wendy.brewer@btlaw.com | Counsel to Gibbs Die Casting Corporation |
| Bartlett Hackett Feinberg P.C. | Frank F. McGinn | 155 Federal Street | 9th Floor | Boston | MA | 02110 | | 617-422-0200 | ffm@bostonbusinesslaw.com | Counsel to Iron Mountain Information Management, Inc. |
| Beeman Law Office | Thomas M Beeman | 33 West 10th Street | Suite 200 | Anderson | IN | 46016 | | 765-640-1330 | tom@beemanlawoffice.com | Counsel to Madison County (Indiana) Treasurer |
| Bendinelli Law Office PC | Jerry Sumner | 11184 Huron Street | Suite 10 | Denver | CO | 80234 | | 303-940-9900 | js@colawfirm.com michelle@colawfirm.com | Counsel to Jose C Alfaro |
| Bernstein Litowitz Berger & Grossman | Hannah E. Greenwald | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1411 | hannah@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |
| Berry Moorman P.C. | James P. Murphy | 535 Griswold | Suite 1900 | Detroit | MI | 48226 | | 313-496-1200 | murph@berrymoorman.com | Counsel to Kamax L.P.; Optrex America, Inc.; GKN Sinter Metals, Inc. |
| Bialson, Bergen & Schwab | Kenneth T. Law, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | klaw@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.. |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 2 of 23

12/8/2010 12:06 AM
Email (397)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Bialson, Bergen & Schwab | Lawrence M. Schwab, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | lschwab@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.; Solectron Corporation; Solectron De Mexico SA de CV; Solectron Invotronics; Coherent, Inc.; Veritas Software Corporation |
| Bialson, Bergen & Schwab | Thomas M. Gaa | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | tgaa@bbslaw.com | Counsel to Veritas Software Corporation |
| Bingham McCutchen LLP | Kate K Simon | One State Street | | Hartford | CT | 06103 | | 860-240-2700 | kate.simon@bingham.com | Counsel to Sumitomo Corporation and Sumitomo Corp. of America |
| Bingham McHale LLP | Whitney L Mosby | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-635-8900 | wmosby@binghammchale.com | Counsel to Universal Tool & Engineering co., Inc. and M.G. Corporation |
| Blank Rome LLP | Marc E. Richards | The Chrysler Building | 405 Lexington Avenue | New York | NY | 10174 | | 212-885-5000 | mrichards@blankrome.com | Counsel to DENSO International America, Inc. |
| Bodman LLP | Ralph E. McDowell | 100 Renaissance Center | 34th Floor | Detroit | MI | 48243 | | 313-393-7592 | rmcdowell@bodmanllp.com | Counsel to Freudenberg-NOK; General Partnership; Freudenberg-NOK, Inc.; Flextech, Inc.; Vibracoustic de Mexico, S.A. de C.V.; Lear Corporation; American Axle & Manufacturing, Inc. |
| Bond, Schoeneck & King, PLLC | Camille W. Hill | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | chill@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp. |
| Bond, Schoeneck & King, PLLC | Charles J. Sullivan | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | csullivan@bsk.com | Counsel to Diemolding Corporation |
| Bond, Schoeneck & King, PLLC | Stephen A. Donato | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | sdonato@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp; Diemolding Corporation |
| Boult, Cummings, Conners & Berry, PLC | Austin L. McMullen | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | amcmullen@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Boult, Cummings, Conners & Berry, PLC | Roger G. Jones | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | rjones@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Brembo S.p.A. | Massimiliano Cini | Administration Department via Brembo 25 | 24035 Curno BG | Bergamo | | | Italy | 00039-035-605-529 | massimiliano_cini@brembo.it | Creditor |
| Brown & Connery, LLP | Donald K. Ludman | 6 North Broad Street | | Woodbury | NJ | 08096 | | 856-812-8900 | dludman@brownconnery.com | Counsel to SAP America, Inc. |
| Buchalter Nemer, A Profesional Corporation | Shawn M. Christianson | 333 Market Street | 25th Floor | San Francisco | CA | 94105-2126 | | 415-227-0900 | schristianson@buchalter.com | Counsel to Oracle USA, Inc.; Oracle Credit Corporation |
| Buchanan Ingersoll & Rooney PC | Mark Pfeiffer | 50 S. 16th St Ste 3200 | | Philadelphia | PA | 19102 | | 215-665-8700 | mark.pfeiffer@bipc.com | Counsel to ATEL Leasing Corp. |
| Buchanan Ingersoll & Rooney PC | Mary Caloway | The Brandywine Building | 1000 West Street, Suite 1410 | Wilmington | DE | 19801 | | 302-552-4200 | mary.caloway@bipc.com | Counsel to Fiduciary Counselors |
| Buchanan Ingersoll & Rooney PC | Peter S. Russ | 620 Eighth Ave | 23rd Floor | New York | NY | 10018 | | 212-440-4400 | peter.russ@bipc.com | Counsel to ATEL Leasing Corp. |
| Buchanan Ingersoll & Rooney PC | William H. Schorling, Esq. | Two Liberty Place | 50 S. 16th St., Ste 3200 | Philadelphia | PA | 19102 | | 215-665-5326 | william.schorling@bipc.com | Counsel to Fiduciary Counselors |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 3 of 23

12/8/2010 12:06 AM
Email (397)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Butzel Long | Cynthia J. Haffey | 150 W. Jefferson | Suite 100 | Detroit | MI | 48226 | | 313-983-7434 | haffey@butzel.com | Counsel to Delphi Corporation |
| Butzel Long | Donald V. Orlandoni | 150 W. Jefferson | Suite 100 | Detroit | MI | 48226 | | 313-225-7063 | orlandoni@butzel.com | Counsel to Delphi Corporation |
| Cadwalader Wickersham & Taft LLP | Jeannine D'Amico | 1201 F St NW Ste 1100 | | Washington | DC | 20004 | | 202-862-2452 | jeannine.damico@cwt.com | Attorneys for the Audit Committee of Dephi Corporation |
| Cadwalader Wickersham & Taft LLP | John J. Rapisardi Esq Joseph Zujkowski Esq | One World Financial Center | | New York | NY | 10281 | | 212-504-6000 | john.rapisardi@cwt.com joseph.zujkowski@cwt.com | Counsel to the Auto Task Force of the U.S. Department of the Treasury |
| Cahill Gordon & Reindel LLP | Jonathan Greenberg | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | jonathan.greenberg@BASF.COM | Counsel to Engelhard Corporation |
| Cahill Gordon & Reindel LLP | Kevin Burke | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | kburke@cahill.com | Counsel to Engelhard Corporation |
| Calfee, Halter & Griswold LLC | Jean R. Robertson, Esq. | 1400 McDonald Investment Ctr | 800 Superior Ave | Cleveland | OH | 44114 | | 216-622-8404 | jrobertson@calfee.com | Counsel to Brush Engineered materials |
| Calinoff & Katz, LLP | Dorothy H. Marinis-Riggio Robert Calinoff | 140 East 45th Street | 17th Floor | New York | NY | 10017 | | 212-826-8800 | dhriggio@gmail.com rcalinoff@candklaw.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, I |
| Cantor Colburn LLP | Michael J Rye | 20 Church Street | 22nd Floor | Hartford | CT | 06103-3207 | | 860-286-2929 | mrye@cantorcolburn.com | Patent Counsel to Delphi Corporation et al., Debtors and Debtors-in-Possession |
| Carson Fischer, P.L.C. | Joseph M Fischer Patrick J Kukla | 4111 Andover Road | West 2nd Floor | Bloomfield Hills | MI | 48302 | | 248-644-4840 | brcy@carsonfischer.com | Counsel to Bing Metals Group, LLC; Behr America, Inc.; Findlay Industries; Vitec, LLC |
| Carson Fischer, P.L.C. | Robert A. Weisberg | 4111 Andover Road | West 2nd Floor | Birmingham | MI | 48302 | | 248-644-4840 | rweisberg@carsonfischer.com brcy@carsonfischer.com | Counsel to Cascade Die Casting Group, Inc.; Behr America, Inc. |
| Carter Ledyard & Milburn LLP | Aaron R. Cahn | 2 Wall Street | | New York | NY | 10005 | | 212-732-3200 | cahn@clm.com | Counsel to STMicroelectronics, Inc. |
| Chadbourne & Parke LLP | Douglas Deutsch, Esq. | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-408-5100 | ddeutsch@chadbourne.com | Counsel to EagleRock Capital Management, LLC |
| Clark Hill PLC | Joel D. Applebaum | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | japplebaum@clarkhill.com | Counsel to 1st Choice Heating & Cooling, Inc.; BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLC | Shannon Deeby | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | sdeeby@clarkhill.com | Counsel to BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLLC | Robert D. Gordon | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8572 | rgordon@clarkhill.com | Counsel to ATS Automation Tooling Systems Inc. |
| Cleary Gottlieb Steen & Hamilton LLP | Deborah M. Buell | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | maofiling@cgsh.com | Counsel to Arneses Electricos Automotrices, S.A.de C.V.; Cordaflex, S.A. de C.V. |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 4 of 23

12/8/2010 12:06 AM
Email (397)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Cleary, Gottlieb, Steen & Hamilton LLP | James L. Bromley | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | maofiling@cgsh.com | Counsel to Bear, Stearns, Co. Inc.; Citigroup, Inc.; Credit Suisse First Boston; Deutsche Bank Securities, Inc.; Goldman Sachs Group, Inc.; JP Morgan Chase & Co.; Lehman Brothers, Inc.; Merrill Lynch & Co.; Morgan Stanley & Co., Inc.; UBS Securities, LLC |
| Cohen & Grigsby, P.C. | Thomas D. Maxson | 11 Stanwix Street | 15th Floor | Pittsburgh | PA | 15222-1319 | | 412-297-4706 | tmaxson@cohenlaw.com | Counsel to Nova Chemicals, Inc. |
| Cohen, Weiss & Simon LLP | Joseph J. Vitale Babette Ceccotti | 330 West 42nd Street | | New York | NY | 10036 | | 212-356-0238 | jvitale@cwsny.com bceccotti@cwsny.com | Counsel to International Union, United Automobile, Areospace and Agriculture Implement Works of America (UAW) |
| Cohn Birnbaum & Shea P.C. | Scott D. Rosen, Esq. | 100 Pearl Street, 12th Floor | | Hartford | CT | 06103 | | 860-493-2200 | srosen@cb-shea.com | Counsel to Floyd Manufacturing Co., Inc. |
| Connolly Bove Lodge & Hutz LLP | Jeffrey C. Wisler, Esq. | 1007 N. Orange Street | P.O. Box 2207 | Wilmington | DE | 19899 | | 302-658-9141 | jwisler@cblh.com | Counsel to ORIX Warren, LLC |
| Coolidge Wall Co. LPA | Ronald S. Pretekin | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | Pretekin@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany; Attorneys for Columbia Industrial |
| Covington & Burling | Susan Power Johnston Aaron R. Marcu | 620 Eighth Ave | | New York | NY | 10018 | | 212-841-1005 | sjohnston@cov.com | Special Counsel to the Debtor |
| Cox, Hodgman & Giarmarco, P.C. | Sean M. Walsh, Esq. | Tenth Floor Columbia Center | 101 W. Big Beaver Road | Troy | MI | 48084-5280 | | 248-457-7000 | swalsh@chglaw.com | Counsel to Nisshinbo Automotive Corporation |
| Curtin & Heefner, LLP | Daniel P. Mazo | 250 N. Pennslyvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | dpm@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Cindi Eilbott | 101 Park Avenue | | New York | NY | 10178-0061 | | 212-696-6936 | ceilbott@curtis.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Damon & Morey LLP | William F. Savino | 1000 Cathedral Place | 298 Main Street | Buffalo | NY | 14202-4096 | | 716-856-5500 | wsavino@damonmorey.com | Counsel to Relco, Inc.; The Durham Companies, Inc. |
| David P. Martin | | 519 Energy Center Blvd | Ste 1104 | Northport | AL | 35401 | | 205-343-1771 | davidpmartin@erisacase.com davidpmartin@bellsouth.net | Co-Counsel for David Gargis, Jimmy Mueller, and D. Keith Livingston |
| Day Pitney LLP | Richard M. Meth | P.O. Box 1945 | | Morristown | NJ | 07962-1945 | | 973-966-6300 | rmeth@daypitney.com | Counsel to Marshall E. Campbell Company |
| Day Pitney LLP | Ronald S. Beacher Conrad K. Chiu | 7 Times Square | | New York | NY | 10036 | | 212-297-5800 | rbeacher@daypitney.com cchiu@daypitney.com | Counsel to IBJTC Business Credit Corporation, as successor to IBJ Whitehall Business Credit Corporation |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 5 of 23

12/8/2010 12:06 AM
Email (397)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Dechert LLP | Glenn E. Siegel James O. Moore | 1095 Avenue of the Americas | | New York | NY | 10036-6797 | | 212-698-3500 | glenn.siegel@dechert.com james.moore@dechert.com | Counsel for Kensington International Limited, Manchester Securities Corp. and Springfield Associates, LLC |
| Denso International America, Inc. | Carol Sowa | 24777 Denso Drive | | Southfield | MI | 48086 | | 248-372-8531 | carol_sowa@denso-diam.com | Counsel to Denso International America, Inc. |
| DiConza Law, P.C. | Gerard DiConza, Esq. | 630 Third Avenue, 7th Floor | | New York | NY | 10017 | | 212-682-4940 | gdiconza@dlawpc.com | Counsel to Tyz-All Plastics, Inc.; Co-Counsel to Tower Automotive, Inc. |
| Dinsmore & Shohl LLP | John Persiani | 1900 Chemed Center | 255 East Fifth Street | Cincinnati | OH | 45202 | | 513-977-8200 | john.persiani@dinslaw.com | Counsel to The Procter & Gamble Company |
| DLA Piper Rudnick Gray Cary US LLP | Richard M. Kremen Maria Ellena Chavez-Ruark | The Marbury Building | 6225 Smith Avenue | Baltimore | Maryland | 21209-3600 | | 410-580-3000 | richard.kremen@dlapiper.com | Counsel to Constellation NewEnergy, Inc. & Constellation NewEnergy - Gas Division, LLC |
| Drinker Biddle & Reath LLP | Andrew C. Kassner | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | andrew.kassner@dbr.com | Counsel to Penske Truck Leasing Co., L.P. |
| Drinker Biddle & Reath LLP | David B. Aaronson | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | david.aaronson@dbr.com | Counsel to Penske Truck Leasing Co., L.P. and Quaker Chemical Corporation |
| Duane Morris LLP | Joseph H. Lemkin | 744 Broad Street | Suite 1200 | Newark | NJ | 07102 | | 973-424-2000 | jhlemkin@duanemorris.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC; and Hosiden America Corporation |
| Duane Morris LLP | Lewis R Olshin Esq | 30 South 17th Street | | Philadelphia | PA | 19103 | | 215-979-1129 | Olshin@duanemorris.com | Counsel to ACE American Insurance Company and Pacific Employers Insurance Company |
| Duane Morris LLP | Margery N. Reed, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | dmdelphi@duanemorris.com mreed@duanemorris.com | Counsel to ACE American Insurance Company and Pacific Employers Insurance Company |
| Duane Morris LLP | Wendy M. Simkulak, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1547 | wmsimkulak@duanemorris.com | Counsel to ACE American Insurance Company and Pacific Employers Insurance Company |
| Dykema Gossett PLLC | Douglas S Parker | 39577 Woodward Ave | Suite 300 | Bloomfield Hills | MI | 48304 | | 248-203-0703 | dparker@dykema.com | Counsel for Federal Screw |
| Dykema Gossett PLLC | Robert D. Nachman | 10 South Wacker Drive | Suite 2300 | Chicago | IL | 60606 | | 312-876-1700 | rnachman@dykema.com | Counsel to MJ Celco, Inc. |
| Dykema Gossett PLLC | Sharon A. Salinas | 10 South Wacker Dr | Suite 2300 | Chicago | IL | 60606 | | 312-627-2199 | ssalinas@dykema.com | Counsel to Tremont City Barrel Fill PRP Group |
| Electronic Data Systems Corporation | Ayala Hassell | 5400 Legacy Dr. | Mail Stop H3-3A-05 | Plano | TX | 75024 | | 212-715-9100 | ayala.hassell@eds.com | Representattive for Electronic Data Systems Corporation |
| Ellenberg, Ogier, Rothschild & Rosenfeld, P.C. | Barbara Ellis-Monro | 170 Mitchell Street, SW | | Atlanta | GA | 30303 | | 404-581-3818 | bem@eorrlaw.com | Counsel to Southwire Company |
| Entergy Services, Inc. | Alan H. Katz | 639 Loyola Ave 26th Fl | | New Orleans | LA | 70113 | | | akatz@entergy.com | Assistant General Counsel to Entergy Services, Inc |

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Epstein Becker & Green PC | Maura I. Russell Anthony B. Stumbo | 250 Park Ave | 11th Floor | New York | NY | 10177-1211 | | 212-351-4500 | MRussell@ebglaw.com | Counsel to SPCP Group LLC as agent for Silver Point Capital Fund LP and Silver Point Capital Offshore Fund Ltd |
| Ettelman & Hochheiser, P.C. | Gary Ettelman | c/o Premium Cadillac | 77 Main Street | New Rochelle | NY | 10801 | | 516-227-6300 | gettelman@e-hlaw.com | Counsel to Jon Ballin |
| Faegre & Benson LLP | Elizabeth K. Flaagan | 3200 Wells Fargo Center | 1700 Lincoln St | Denver | CO | 80203-4532 | | 303-607-3694 | eflaagan@faegre.com | Counsel to CoorsTek, Inc.; Corus, L.P. |
| Farrell Fritz PC | Louis A. Scarcella Patrick T. Collins | 1320 RexCorp Plaza | | Uniondale | NY | 11556-1320 | | 516-227-0700 | lscarcella@farrellfritz.com pcollins@farrellfritz.com | Counsel to Official Committee of Equity Holders |
| Filardi Law Offices LLC | Charles J. Filardi, Jr., Esq. | 65 Trumbull Street | Second Floor | New Haven | CT | 06510 | | 203-562-8588 | charles@filardi-law.com | Counsel to Federal Express Corporation |
| Finkel Goldstein Rosenbloom & Nash LLP | Ted J. Donovan | 26 Broadway | Suite 711 | New York | NY | 10004 | | 212-344-2929 | tdonovan@finkgold.com | Counsel to Pillarhouse (U.S.A.) Inc. |
| Foley & Lardner LLP | Ann Marie Uetz | 500 Woodward Avenue | Suite 2700 | Detroit | MI | 48226-3489 | | 313-234-7100 | auetz@foley.com | Counsel to PBR Tennessee |
| Foley & Lardner LLP | Jill L. Murch | 321 North Clark Street | Suite 2800 | Chicago | IL | 60610-4764 | | 312-832-4500 | jmurch@foley.com | Counsel to Kuss Corporation |
| Foley & Lardner LLP | John A. Simon | One Detroit Center | 500 Woodward Ave Suite 2700 | Detroit | MI | 48226-3489 | | 313-234-7100 | jsimon@foley.com | Counsel to Ernst & Young LLP |
| Foley & Lardner LLP | John R. Trentacosta Katherine R. Catanese | 500 Woodward Avenue | Suite 2700 | Detroit | MI | 48226-3489 | | 313-234-7100 | jtrentacosta@foley.com kcatanese@foley.com | Counsel to Kautex Inc. |
| Fox Rothschild LLP | Brian Isen | 1301 Atlantic Avenue | | Atlantic City | NJ | 08401 | | 609-348-2294 | bisen@foxrothschild.com | Counsel to M&Q Plastic Products L.P. |
| Fox Rothschild LLP | Fred Stevens | 100 Park Avenue | 15th Floor | New York | NY | 10017 | | 212-878-7900 | fstevens@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Frederick T. Rikkers | | 419 Venture Court | P.O. Box 930555 | Verona | WI | 53593 | | 608-848-6350 | ftrikkers@rikkerslaw.com | Counsel to Southwest Metal Finishing, Inc. |
| Frost Brown Todd LLC | Ronald E. Gold | 2200 PNC Center | 201 East Fifth Street | Cincinnati | OH | 45202-4182 | | 513-651-6156 | rgold@fbtlaw.com | Counsel to AKS Receivables, LLC |
| Fulbright & Jaworski LLP | David A Rosenzweig | 666 Fifth Avenue | | New York | NY | 10103-3198 | | 212-318-3000 | drosenzweig@fulbright.com | Counsel to Southwest Research Institute Attorney for Solvay Fluorides, LLC |
| Fulbright & Jaworski LLP | Michael M Parker | 300 Convent St Ste 2200 | | San Antonio | TX | 78205 | | 210-224-5575 | mparker@fulbright.com | Counsel to Southwest Research Institute |
| Genovese Joblove & Battista, P.A. | David C. Cimo | 100 S.E. 2nd Street | Suite 4400 | Miami | FL | 33131 | | 305-349-2300 | dcimo@gjb-law.com | Counsel to Ryder Integrated Logistics, Inc. |
| Gibbons P.C. | David N. Crapo | One Gateway Center | | Newark | NJ | 07102-5310 | | 973-596-4523 | dcrapo@gibbonslaw.com | Counsel to Epcos, Inc. |
| Goldberg Segalla LLP | Attn Bruce W Hoover | 665 Main St Ste 400 | | Buffalo | NY | 14203 | | 716-566-5400 | bhoover@goldbergsegalla.com | Attorneys for MasTec Inc. |
| Gorlick, Kravitz & Listhaus, P.C. | Barbara S. Mehlsack | 17 State Street | 4th Floor | New York | NY | 10004 | | 212-269-2500 | bmehlsack@gkllaw.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Goulston & Storrs, P.C. | Peter D. Bilowz | 400 Atlantic Avenue | | Boston | MA | 02110-333 | | 617-482-1776 | pbilowz@goulstonstorrs.com | Counsel to Thermotech Company |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 7 of 23

12/8/2010 12:06 AM
Email (397)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Grant & Eisenhofer P.A. | James J Sabella | 485 Lexington Ave | | New York | NY | 10017 | | 646-722-8520 | jsabella@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Grant & Eisenhofer P.A. | Jay W. Eisenhofer | 45 Rockefeller Center | 650 Fifth Avenue | New York | NY | 10111 | | 212-755-6501 | jeisenhofer@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Gratz, Miller & Brueggeman, S.C. | Matthew R. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | mrr@previant.com | Counsel to International Brotheroed of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Graydon Head & Ritchey LLP | J. Michael Debbler, Susan M. Argo | 1900 Fifth Third Center | 511 Walnut Street | Cincinnati | OH | 45202 | | 513-621-6464 | mdebbeler@graydon.com | Counsel to Grote Industries; Batesville Tool & Die; PIA Group; Reliable Castings |
| Greenberg Traurig, LLP | Maria J. DiConza | MetLife Bldg | 200 Park Avenue | New York | NY | 10166 | | 212-801-9200 | diconzam@gtlaw.com | Counsel to Samtech Corporation |
| Greenberg Traurig, LLP | Shari L. Heyen | 1000 Louisiana | Suite 1800 | Houston | TX | 77002 | | 713-374-3500 | heyens@gtlaw.com | Counsel to Samtech Corporation |
| Greensfelder, Hemker & Gale, P.C. | Cherie Macdonald J. Patrick Bradley | 10 S. Broadway | Suite 200 | St. Louis | MO | 63102 | | 314-241-9090 | ckm@greensfelder.com jpb@greensfelder.com | Counsel to ARC Automotive, Inc. |
| Hahn Loeser & Parks LLP | Lawrence E Oscar Christopher W Peer | 200 Public Square | Suite 2800 | Cleveland | OH | 44114 | | 216-621-0150 | leoscar@hahnlaw.com cpeer@hahnlaw.com | Counsel to Casco Products, a Unit of Sequa Corporation and ARC Automotive, Inc. |
| Halperin Battaglia Raicht, LLP | Alan D. Halperin Christopher J.Battaglia Julie D. Dyas | 555 Madison Avenue | 9th Floor | New York | NY | 10022 | | 212-765-9100 | cbattaglia@halperinlaw.net ahalperin@halperinlaw.net jdyas@halperinlaw.net | Counsel to Pacific Gas Turbine Center, LLC and Chromalloy Gas Turbine Corporation; ARC Automotive, Inc |
| Hancock & Estabrook LLP | R John Clark Esq | 1500 Tower I | PO Box 4976 | Syracuse | NY | 13221-4976 | | 315-471-3151 | rjclark@hancocklaw.com | Counsel to Alliance Precision Plastics Corporation |
| Harrington, Dragich & O'Neill PLLC | David G Dragich | 21043 Mack Avenue | | Grosse Pointe Woods | MI | 48236 | | 313-886-4550 | ddragich@hdolaw.com | Counsel to Intermet Corporation |
| Harris D. Leinwand | Harris D. Leinwand | 315 Madison Avenue | Suite 901 | New York | NY | 10017 | | 212-725-7338 | hleinwand@aol.com | Counsel to Baker Hughes Incoporated; Baker Petrolite Corporation |
| Haskell Slaughter Young & Rediker LLC | Robert H. Adams | 2001 Park Place North | Suite 1400 | Birmingham | AL | 35203 | | 205-251-1000 | rha@hsy.com | Counsel to Simco Construction, Inc. |
| Haynes and Boone, LLP | Judith Elkin | 153 East 53rd Street | Suite 4900 | New York | NY | 10022 | | 212-659-7300 | judith.elkin@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Haynes and Boone, LLP | Lenard M. Parkins Kenric D. Kattner | 1 Houston Center | 1221 McKinney, Suite 2100 | Houston | TX | 77010 | | 713-547-2000 | lenard.parkins@haynesboone.com kenric.kattner@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Herrick, Feinstein LLP | Paul Rubin | 2 Park Avenue | | New York | NY | 10016 | | 212-592-1448 | prubin@herrick.com | Counsel to Canon U.S.A., Inc. and Schmidt Technology GmbH |
| Hewlett-Packard Company | Kenneth F. Higman | 2125 E. Katella Avenue | Suite 400 | Anaheim | CA | 92806 | | 714-940-7120 | ken.higman@hp.com | Counsel to Hewlett-Packard Company |

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Hewlett-Packard Company | Ramona S. Neal | 11311 Chinden Blvd., M/S 314 | | Boise | ID | 83714-0021 | | 208-396-6484 | Ramona.neal@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Sharon Petrosino | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4760 | sharon.petrosino@hp.com | Counsel to Hewlett-Packard Financial Services Company |
| Hinckley Allen & Snyder LLP | Michael J Pendell | 185 Asylum St CityPlace I | 35th Floor | Hartford | CT | 06103-3488 | | 860-725-6200 | mpendell@haslaw.com | Counsel to Barnes Group, Inc. |
| Hiscock & Barclay, LLP | J. Eric Charlton | 300 South Salina Street | PO Box 4878 | Syracuse | NY | 13221-4878 | | 315-425-2716 | echarlton@hiscockbarclay.com | Counsel to GW Plastics, Inc. |
| Hodgson Russ LLP | Garry M. Graber | 60 E 42nd St 37th Fl | | New York | NY | 10165-0150 | | 212-661-3535 | ggraber@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hogan & Hartson L.L.P. | Audrey Moog | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | amoog@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Edward C. Dolan | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | ecdolan@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Scott A. Golden | 875 Third Avenue | | New York | NY | 10022 | | 212-918-3000 | sagolden@hhlaw.com | Counsel to XM Satellite Radio Inc. |
| Hogan Lovells US LLP | Matthew P Morris | 875 Third Avenue | | New York | NY | 10022 | | 212-918-3000 | matthew.morris@hoganlovells.com | Counsel to TESA AG |
| Honigman, Miller, Schwartz and Cohn, LLP | Donald T. Baty, Jr. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7314 | dbaty@honigman.com | Counsel to Fujitsu Ten Corporation of America |
| Honigman, Miller, Schwartz and Cohn, LLP | E. Todd Sable | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7548 | tsable@honigman.com | Counsel to Valeo Climate Control Corp.; Valeo Electrical Systems, Inc. - Motors and Actuators Division;Valeo Electrical Systems, Inc. - Wipers Division; Valeo Switches & Detection System, Inc. |
| Honigman, Miller, Schwartz and Cohn, LLP | I. W. Winsten, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7608 | iww@honigman.com | Counsel to Affina Group Holdings Inc. |
| Honigman, Miller, Schwartz and Cohn, LLP | Lawrence J. Murphy | 2290 First National Building | 660 Woodward Ave | Detroit | MI | 48226 | | 313-465-7488 | lmurphy@honigman.Com | Attorneys for Guide Corporation and Lightsource Parent Corporation |
| Honigman, Miller, Schwartz and Cohn, LLP | Seth A Drucker | 2290 First National Building | 660 Woodward Avenue Ste 2290 | Detroit | MI | 48226 | | 313-465-7626 | sdrucker@honigman.com | Counsel for Valeo Climate Control, Corp. |
| Howard & Howard Attorneys PC | Lisa S Gretchko | 39400 Woodward Ave | Ste 101 | Bloomfield Hills | MI | 48304-5151 | | 248-723-0396 | lgretchko@howardandhoward.com | Intellectual Property Counsel for Delphi Corporation, et al. |
| Howick, Westfall, McBryan & Kaplan, LLP | Louis G. McBryan | 3101 Tower Creek Parkway | Ste 600 One Tower Creek | Atlanta | GA | 30339 | | 678-384-7000 | lmcbryan@hwmklaw.com | Counsel to Vanguard Distributors, Inc. |
| Hunter & Schank Co. LPA | John J. Hunter | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | | 419-255-4300 | jrhunter@hunterschank.com | Counsel to ZF Group North America Operations, Inc. |
| Hunter & Schank Co. LPA | Thomas J. Schank | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | | 419-255-4300 | tomschank@hunterschank.com | Counsel to ZF Group North America Operations, Inc. |
| Hunton & Wiliams LLP | Steven T. Holmes | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | sholmes@hunton.com | Counsel to RF Monolithics, Inc. |
| Hurwitz & Fine P.C. | Ann E. Evanko | 1300 Liberty Building | | Buffalo | NY | 14202 | | 716-849-8900 | aee@hurwitzfine.com | Counsel to Jiffy-Tite Co., Inc. |
| Ice Miller | Ben T. Caughey | One American Square | Box 82001 | Indianapolis | IN | 46282-0200 | | 317-236-2100 | Ben.Caughey@icemiller.com | Counsel to Sumco, Inc. |

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Ice Miller LLP | Henry A. Efroymson | One American Square | 29th Floor | Indianapolis | IN | 46482 | | 317-236-2397 | henry.efroymson@icemiller.com | Counsel to Fin Machine Co. Ltd |
| Infineon Technologies North America Corporation | Greg Bibbes | 1730 North First Street | M/S 11305 | San Jose | CA | 95112 | | 408-501-6442 | greg.bibbes@infineon.com | General Counsel & Vice President for Infineon Technologies North America Corporation |
| Infineon Technologies North America Corporation | Jeff Gillespie | 2529 Commerce Drive | Suite H | Kokomo | IN | 46902 | | 765-454-2146 | jeffery.gillispie@infineon.com | Global Account Manager for Infineon Technologies North America |
| International Union of Operating Engineers | Richard Griffin | 1125-17th Avenue, N.W. | | Washington | DC | 20036 | | 202-429-9100 | rgriffin@iuoe.org | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Jackson Walker LLP | Bruce J. Ruzinsky | 1401 McKinney St Ste 1900 | | Houston | TX | 77010 | | 713-751-4200 | bruzinsky@jw.com | Counsel to Constellation NewEnergy, Inc. |
| Jackson Walker LLP | Heather M. Forrest | 901 Main St Ste 600 | | Dallas | TX | 75202 | | 214-953-6000 | hforrest@jw.com | Counsel to Constellation NewEnergy, Inc. |
| James R Scheuerle | Parmenter O'Toole | 601 Terrace Street | PO Box 786 | Muskegon | MI | 49443-0786 | | 231-722-1621 | JRS@Parmenterlaw.com | Counsel to Port City Die Cast and Port City Group Inc |
| Jason, Inc. | Will Schultz, General Counsel | 411 E. Wisconsin Ave | Suite 2120 | Milwaukee | WI | 53202 | | 414-277-2110 | wschultz@jasoninc.com | General Counsel to Jason Incorporated |
| Jenner & Block LLP | Ronald R. Peterson | One IBM Plaza | | Chicago | IL | 60611 | | 312-222-9350 | rpeterson@jenner.com | Counsel to SPX Corporation (Contech Division), Alcan Rolled Products-Ravenswood, LLC, Tenneco Inc. and Contech LLC |
| Johnston, Harris Gerde & Komarek, P.A. | Jerry W. Gerde, Esq. | 239 E. 4th St. | | Panama City | FL | 32401 | | 850-763-8421 | gerdekomarek@bellsouth.net | Counsel to Peggy C. Brannon, Bay County Tax Collector |
| Jones Day | Corinne Ball | 222 East 41st Street | | New York | NY | 10017 | | 212-326-7844 | cball@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Jones Day | Peter J. Benvenutti Michaeline H. Correa | 555 California St 26th Floor | | San Francisco | CA | 94104 | | 415-626-3939 | pjbenvenutti@jonesday.com mcorrea@jonesday.com | Attorneys for Symantec Corporation, Successor-in-Interest to Veritas Corporation |
| Jones Day | Scott J. Friedman | 222 East 41st Street | | New York | NY | 10017 | | 212-326-3939 | sjfriedman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Katten Muchin Rosenman LLP | John P. Sieger, Esq. | 525 West Monroe Street | | Chicago | IL | 60661 | | 312-902-5200 | john.sieger@kattenlaw.com | Counsel to TDK Corporation America and MEMC Electronic Materials, Inc. |
| Kaye Scholer LLP | Richard G Smolev | 425 Park Avenue | | New York | NY | 10022-3598 | | 212-236-8000 | rsmolev@kayescholer.com | Counsel to InPlay Technologies Inc |
| Kegler, Brown, Hill & Ritter Co., LPA | Kenneth R. Cookson | 65 East State Street | Suite 1800 | Columbus | OH | 43215 | | 614-426-5400 | kcookson@keglerbrown.com | Counsel to Solution Recovery Services |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 10 of 23

12/8/2010 12:06 AM
Email (397)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Keller Rohrback L.L.P. | Lynn Lincoln Sarko Cari Campen Laufenberg Erin M. Rily | 1201 Third Avenue | Suite 3200 | Seattle | WA | 98101 | | 206-623-1900 | lsarko@kellerrohrback.com claufenberg@kellerrohrback.com eriley@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Keller Rohrback P.L.C. | Gary A. Gotto | National Bank Plaza | 3101 North Central Avenue, Suite 900 | Phoenix | AZ | 85012 | | 602-248-0088 | ggotto@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Kelley Drye & Warren, LLP | Craig A. Wolfe | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | cwolfe@kelleydrye.com | Counsel to the Pension Benefit Guaranty Corporation |
| Kelley Drye & Warren, LLP | Merrill B. Stone | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | mstone@kelleydrye.com | Counsel to the Pension Benefit Guaranty Corporation |
| Kennedy, Jennick & Murray | Susan M. Jennik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | sjennik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Thomas Kennedy | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | tkennedy@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kerr Russell & Weber PLC | James E. DeLine | 500 Woodward Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-961-0200 | jed@krwlaw.com | Counsel to Pontiac Coil, Inc. |
| Kerr Russell & Weber PLC | Patrick Warren Hunt | 500 Woodward Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-961-0200 | pwh@krwlaw.com | Counsel to Pontiac Coil, Inc. |
| King & Spalding, LLP | H. Slayton Dabney, Jr. | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | sdabney@kslaw.com | Counsel to KPMG LLP |
| Kirkland & Ellis LLP | David Spiegel | 300 North LaSalle | | Chicago | IL | 60654 | | 312-862-2000 | david.spiegel@kirkland.com | |
| Kirkland & Ellis LLP | Jim Stempel | 200 East Randolph Drive | | Chicago | IL | 60601 | | 312-861-2000 | jstempel@kirkland.com | Counsel to Lunt Mannufacturing Company |
| Kirkpatrick & Lockhart Nicholson Graham LLP | Edward M. Fox | 599 Lexington Avenue | | New York | NY | 10022 | | 212-536-4812 | efox@klng.com | Counsel to Wilmington Trust Company, as Indenture trustee |
| Kokomo Gas & Fuel Company | Patti E Pope Revenue Recovery Manager | Northern Indiana Public Service Company | 801 East 86th Avenue | Merrillville | IN | 46410 | | | pepope@nisource.com | Kokomo Gas & Fuel Company |
| Kramer Levin Naftalis & Frankel LLP | Jordan D Kaye | 1177 Avenue of the Americas | | New York | NY | 10036 | | 212-715-9489 | jkaye@kramerlevin.com | Counsel to HP Enterprise Services, LLC; Vishay Americas Inc. |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 11 of 23

12/8/2010 12:06 AM
Email (397)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-------|------------------|
| Krieg Devault LLP | Lawrence W. Schmits Esq. | One Indiana Square, Suite 2800 | | Indianapolis | IN | 46204 | | 317-238-6271 | lschmits@kdlegal.com | Co-Counsel for Delphi Salaried Retirees Association Benefit Trust VEBA Committee |
| Krieg Devault LLP | Patricia L. Beaty Esq | One Indiana Square, Suite 2800 | | Indianapolis | IN | 46204 | | 317-636-4341 | pbeaty@kdlegal.com | Co-Counsel for Delphi Salaried Retirees Association Benefit Trust VEBA Committee |
| Krugliak, Wilkins, Griffiths & Dougherty CO., L.P.A. | Sam O. Simmerman | 4775 Munson Street N.W. | P.O. Box 36963 | Canton | OH | 44735-6963 | | 330-497-0700 | sosimmerman@kwgd.com | Counsel for Millwood, Inc. |
| Kutak Rock LLP | Jay Selanders | 1010 Grand Blvd Ste 500 | | Kansas City | MO | 64106 | | 816-502-4617 | jay.selanders@kutakrock.com | Counsel to DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrylser Canada, Inc. |
| Kutchin & Rufo, P.C. | Edward D. Kutchin | Two Center Plaza | Suite 620 | Boston | MA | 02108-1906 | | 617-542-3000 | ekutchin@kutchinrufo.com | Counsel to Parlex Corporation |
| Kutchin & Rufo, P.C. | Kerry R. Northrup | Two Center Plaza | Suite 620 | Boston | MA | 02108-1906 | | 617-542-3000 | knorthup@kutchinrufo.com | Counsel to Parlex Corporation |
| Lambert. Leser, Isackson, Cook & Guinta, P.C. | Adam D. Bruski | 309 Davidson Building | PO Box 835 | Bay City | MI | 48707-0835 | | 989-893-3518 | adbruski@lambertleser.com | Counsel to Creditor Linamar Corp. |
| Lambert. Leser, Isackson, Cook & Guinta, P.C. | Susan M. Cook | 309 Davidson Building | PO Box 835 | Bay City | MI | 48707-0835 | | 989-893-3518 | smcook@lambertleser.com | Counsel to Linamar Corporation |
| Latham & Watkins | Mark A. Broude | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1384 | mark.broude@lw.com | UCC Professional |
| Latham & Watkins | Michael J. Riela | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | michael.riela@lw.com | UCC Professional |
| Latham & Watkins | Mitchell A. Seider | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | mitchell.seider@lw.com | UCC Professional |
| Latham & Watkins | Robert Rosenberg | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1370 | robert.rosenberg@lw.com | UCC Professional |
| Law Offices of Michael O'Hayer | Michael O'Hayer Esq | 22 N Walnut Street | | West Chester | PA | 19380 | | 610-738-1230 | mkohayer@aol.com | Counsel to A-1 Specialized Services and Supplies Inc |
| Lewis and Roca LLP | Rob Charles, Esq. | One South Church Street | Suite 700 | Tucson | AZ | 85701 | | 520-629-4427 | rcharles@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Lewis and Roca LLP | Susan M. Freeman, Esq. | 40 North Central Avenue | Suite 1900 | Phoenix | AZ | 85004-4429 | | 602-262-5756 | sfreeman@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Linear Technology Corporation | John England, Esq. | General Counsel for Linear Technology Corporation | 1630 McCarthy Blvd. | Milpitas | CA | 95035-7417 | | 408-432-1900 | jengland@linear.com | Counsel to Linear Technology Corporation |
| Linebarger Goggan Blair & Sampson, LLP | Diane W. Sanders | 1949 South IH 35 (78741) | P.O. Box 17428 | Austin | TX | 78760-7428 | | 512-447-6675 | austin.bankruptcy@publicans.com | Counsel to Cameron County, Brownsville ISD |
| Linebarger Goggan Blair & Sampson, LLP | Elizabeth Weller | 2323 Bryan Street | Suite 1600 | Dallas | TX | 75201 | | 214-880-0089 | dallas.bankruptcy@publicans.com | Counsel to Dallas County and Tarrant County |
| Linebarger Goggan Blair & Sampson, LLP | John P. Dillman | P.O. Box 3064 | | Houston | TX | 77253-3064 | | 713-844-3478 | houston_bankruptcy@publicans.com | Counsel in Charge for Taxing Authorities: Cypress-Fairbanks Independent School District, City of Houston, Harris County |
| Locke Lord Bissell & Liddell | Kevin J. Walsh | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | | 212-812-8304 | kwalsh@lockelord.com | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Locke Lord Bissell & Liddell | Timothy S. McFadden | 111 South Wacker Drive | | Chicago | IL | 60606 | | 312-443-0370 | tmcfadden@lockelord.com | Counsel to Methode Electronics, Inc. |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 12 of 23

12/8/2010 12:06 AM
Email (397)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Loeb & Loeb LLP | P. Gregory Schwed | 345 Park Avenue | | New York | NY | 10154-0037 | | 212-407-4000 | gschwed@loeb.com | Counsel to Creditor The Interpublic Group of Companies, Inc. and Proposed Auditor Deloitte & Touche, LLP |
| Loeb & Loeb LLP | William M. Hawkins | 345 Park Avenue | | New York | NY | 10154 | | 212-407-4000 | whawkins@loeb.com | Counsel to Industrial Ceramics Corporation |
| Lowenstein Sandler PC | Bruce S. Nathan | 1251 Avenue of the Americas | | New York | NY | 10020 | | 212-262-6700 | bnathan@lowenstein.com | Counsel to Daewoo International (America) Corp. |
| Lowenstein Sandler PC | Ira M. Levee | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | ilevee@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Kenneth A. Rosen | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | krosen@lowenstein.com | Counsel to Cerberus Capital Management, L.P. |
| Lowenstein Sandler PC | Michael S. Etikin | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | metkin@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Scott Cargill | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | scargill@lowenstein.com | Counsel to Cerberus Capital Management, L.P.; AT&T |
| Lowenstein Sandler PC | Vincent A. D'Agostino | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | vdagostino@lowenstein.com | Counsel to AT&T Corporation |
| Lyden, Liebenthal & Chappell, Ltd. | Erik G. Chappell | 5565 Airport Highway | Suite 101 | Toledo | OH | 43615 | | 419-867-8900 | egc@lydenlaw.com | Counsel to Metro Fibres, Inc. |
| Maddin, Hauser, Wartell, Roth & Heller PC | Alexander Stotland Esq | 28400 Northwestern Hwy | Third Floor | Southfield | MI | 48034 | | 248-354-4030 | axs@maddinhauser.com | Attorney for Danice Manufacturing Co. |
| Madison Capital Management | Joe Landen | 6143 South Willow Drive | Suite 200 | Greenwood Village | CO | 80111 | | 303-957-4254 | jlanden@madisoncap.com | Representative for Madison Capital Management |
| Margulies & Levinson, LLP | Leah M. Caplan, Esq. | 30100 Chagrin Boulevard | Suite 250 | Pepper Pike | OH | 44124 | | 216-514-4935 | lmc@ml-legal.com | Counsel to Venture Plastics |
| Mastromarco & Jahn, P.C. | Victor J. Mastromarco, Jr. | 1024 North Michigan Avenue | P.O. Box 3197 | Saginaw | MI | 48605-3197 | | 989-752-1414 | vmastromar@aol.com | Counsel to H.E. Services Company and Robert Backie and Counsel to Cindy Palmer, Personal Representative to the Estate of Michael Palmer |
| Masuda Funai Eifert & Mitchell, Ltd. | Gary D. Santella | 203 North LaSalle Street | Suite 2500 | Chicago | IL | 60601-1262 | | 312-245-7500 | gsantella@masudafunai.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC and Hosiden America Corporation |
| McCarter & English, LLP | David J. Adler, Jr. Esq. | 245 Park Avenue, 27th Floor | | New York | NY | 10167 | | 212-609-6800 | dadler@mccarter.com | Counsel to Ward Products, LLC |
| McCarter & English, LLP | Eduardo J. Glas, Esq. | Four Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4096 | | 913-622-4444 | eglas@mccarter.com | Counsel to General Products Delaware Corporation |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 13 of 23

12/8/2010 12:06 AM
Email (397)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| McCarthy Tetrault LLP | Lorne P. Salzman | 66 Wellington Street West | Suite 4700 | Toronto | Ontario | M5K 1E6 | | 416-362-1812 | lsalzman@mccarthy.ca | Counsel to Themselves (McCarthy Tetrault LLP) |
| McDermott Will & Emery LLP | Gary O. Ravert | 340 Madison Avenue | | New York | NY | 10017-1922 | | 212-547-5477 | gravert@mwe.com | Counsel for Temic Automotive of North America, Inc. |
| McDermott Will & Emery LLP | Stephen B. Selbst | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5400 | sselbst@mwe.com | Counsel to National Semiconductor Corporation |
| McDermott Will & Emery LLP | Steven P. Handler Monica M. Quinn | 227 W Monroe St | | Chicago | IL | 60606 | | 312-372-2000 | shandler@mwe.com mquinn@mwe.com | Counsel for Temic Automotive of North America, Inc. |
| McDonald Hopkins Co., LPA | Scott N. Opincar, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | sopincar@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McDonald Hopkins Co., LPA | Shawn M. Riley, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | sriley@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McElroy, Deutsch, Mulvaney & Carpenter, LLP | Jeffrey Bernstein, Esq. | Three Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4079 | | 973-622-7711 | jbernstein@mdmc-law.com | Counsel to New Jersey Self-Insurers Guaranty Association |
| McGuirewoods LLP | Aaron G McCollough Esq | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | | 804-775-1000 | amccollough@mcguirewoods.com | Counsel to Siemens Energy & Automation, Inc. |
| McGuirewoods LLP | Daniel F Blanks | One James Center | 901 East Cary Street | Richmond | VA | 23219 | | 804-775-1000 | dblanks@mcguirewoods.com | Counsel for CSX Transportation, Inc. |
| McGuirewoods LLP | John H Maddock III | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | | 804-775-1178 | jmaddock@mcguirewoods.com | Counsel to Siemens Logistics Assembly Systems, Inc.; Counsel for CSX Transportation, Inc. |
| Meyer, Suozzi, English & Klein, P.C. | Attn Thomas R Slome Esq | 990 Stewart Ave Ste 300 | PO Box 9194 | Garden City | NY | 11530-9194 | | 516-741-6565 | tslome@msek.com | Counsel for Pamela Geller; JAE Electronics, Inc. |
| Meyer, Suozzi, English & Klein, P.C. | Hanan Kolko | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | hkolko@msek.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Meyers Law Group, P.C. | Merle C. Meyers | 44 Montgomery Street | Suite 1010 | San Francisco | CA | 94104 | | 415-362-7500 | mmeyers@mlg-pc.com | Counsel to Alps Automotive, Inc. |
| Meyers, Rodbell & Rosenbaum, P.A. | M. Evan Meyers | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | emeyers@mrrlaw.net | Counsel to Prince George County, Maryland |
| Meyers, Rodbell & Rosenbaum, P.A. | Robert H. Rosenbaum | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | rrosenbaum@mrrlaw.net | Counsel to Prince George County, Maryland |
| Miami-Dade County Tax Collector | April Burch | Paralegal Unit | 140 West Flagler St Ste 1403 | Miami | FL | 33130 | | 305-375-5314 | mdtcbkc@miamidade.gov | Paralegal Collection Specialist for Miami-Dade County |
| Michael Cox | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | miag@michigan.gov | Attorney General for State of Michigan, Department of Treasury |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Dennis J. Raterink | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1176 | raterinkd@michigan.gov | Assistant Attorney General for Worker's Compensation Agency; Attorney for the Funds Administration for the State of Michigan |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Michael Cox | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | miag@michigan.gov | Attorney General for Worker's Compensation Agency; Attorney for the Funds Administration for the State of Michigan |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 14 of 23

12/8/2010 12:06 AM
Email (397)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Miles & Stockbridge, P.C. | Thomas D. Renda | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | trenda@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miller & Martin PLLC | Dale Allen | 150 Fourth Ave North | Ste 1200 | Nashville | TN | 37219 | | | vjones@millermartin.com | Counsel to Averitt Express |
| Miller Johnson | Thomas P. Sarb Robert D. Wolford | 250 Monroe Avenue, N.W. | Suite 800, PO Box 306 | Grand Rapids | MI | 49501-0306 | | 616-831-1748 616-831-1726 | sarbt@millerjohnson.com wolfordr@millerjohnson.com | Counsel to Pridgeon & Clay, Inc. |
| Miller, Canfield, Paddock and Stone, P.L.C. | Jonathan S. Green | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8452 | greenj@millercanfield.com | Counsel to Wells Operating Partnership, LP |
| Miller, Canfield, Paddock and Stone, P.L.C. | Marc N. Swanson | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-963-6420 | swansonm@millercanfield.com | Counsel to Brose North America Holding LP and its affiliates |
| Miller, Canfield, Paddock and Stone, P.L.C. | Timothy A. Fusco | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8435 | fusco@millercanfield.com | Counsel to Niles USA Inc.; Techcentral, LLC; The Bartech Group, Inc.; Fischer Automotive Systems |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Paul J. Ricotta | One Financial Center | | Boston | MA | 02111 | | 617-542-6000 | pjricotta@mintz.com pricotta@mintz.com | Counsel to Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Molex Connector Corp | Jeff Ott | 2222 Wellington Ct. | | Lisle | IL | 60532 | | 630-527-4254 | Jeff.Ott@molex.com | Counsel to Molex Connector Corp |
| Morgan, Lewis & Bockius LLP | Andrew D. Gottfried | 101 Park Avenue | | New York | NY | 10178-0060 | | 212-309-6000 | agottfried@morganlewis.com | Counsel to ITT Industries, Inc.; Hitachi Chemical (Singapore), Ltd. |
| Morgan, Lewis & Bockius LLP | Menachem O. Zelmanovitz | 101 Park Avenue | | New York | NY | 10178 | | 212-309-6000 | mzelmanovitz@morganlewis.com | Counsel to Hitachi Chemical (Singapore) Pte, Ltd. |
| Morgan, Lewis & Bockius LLP | Richard W. Esterkin, Esq. | 300 South Grand Avenue | | Los Angeles | CA | 90017 | | 213-612-1163 | resterkin@morganlewis.com | Counsel to Sumitomo Corporation |
| Moritt Hock Hamroff & Horowitz LLP | Leslie Ann Berkoff | 400 Garden City Plaza | | Garden City | NY | 11530 | | 516-873-2000 | lberkoff@moritthock.com | Counsel to Standard Microsystems Corporation and its direct and indirect subsidiares Oasis SiliconSystems AG and SMSC NA Automotive, LLC (successor-in-interst to Oasis Silicon Systems, Inc.) |
| Moses & Singer LLP | James M. Sullivan Esq. | The Chrysler Building | 405 Lexington Avenue | New York | NY | 10174 | | 212-554-7800 | jsullivan@mosessinger.com | Counsel to The Timken Corporation |
| Munsch Hardt Kopf & Harr, P.C. | Raymond J. Urbanik, Esq., Joseph J. Wielebinski, Esq. and Davor Rukavina, Esq. | 3800 Lincoln Plaza | 500 North Akard Street | Dallas | RX | 75201-6659 | | 214-855-7590 214-855-7561 214-855-7587 | rurbanik@munsch.com jwielebinski@munsch.com drukavina@munsch.com | Counsel to Texas Instruments Incorporated |
| Nantz, Litowich, Smith, Girard & Hamilton, P.C. | Sandra S. Hamilton | 2025 East Beltline, S.E. | Suite 600 | Grand Rapids | MI | 49546 | | 616-977-0077 | sandy@nlsg.com | Counsel to Lankfer Diversified Industries, Inc. |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 15 of 23

12/8/2010 12:06 AM
Email (397)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Nathan, Neuman & Nathan, P.C. | Kenneth A. Nathan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | | 248-351-0099 | Knathan@nathanneuman.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| National City Commercial Capital | Lisa M. Moore | 995 Dalton Avenue | | Cincinnati | OH | 45203 | | 513-455-2390 | l.moore@pnc.com | Vice President and Senior Counsel to National City Commercial Capital |
| Nelson Mullins Riley & Scarborough | George B. Cauthen | 1320 Main Street, 17th Floor | PO Box 11070 | Columbia | SC | 29201 | | 803-7255-9425 | george.cauthen@nelsonmullins.com | Counsel to Datwyler Rubber & Plastics, Inc.; Datwyler, Inc.; Datwyler i/o devices (Americas), Inc.; Rothrist Tube (USA), Inc. |
| New Jersey Attorney General's Office Division of Law | Tracy E Richardson Deputy Attorney General | R.J. Hughes Justice Complex | 25 Market St P.O. Box 106 | Trenton | NJ | 08628-0106 | | 609-292-1537 | tracy.richardson@dol.lps.state.nj.us | Deputy Attorney General - State of New Jersey Division of Taxation |
| North Point | David G. Heiman | 901 Lakeside Avenue | | Cleveland | OH | 44114 | | 216-586-3939 | dgheiman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Office of the Chapter 13 Trustee | Camille Hope | P.O. Box 954 | | Macon | GA | 31202 | | 478-742-8706 | cahope@chapter13macon.com | Office of the Chapter 13 Trustee |
| Office of the Texas Attorney General | Jay W. Hurst | P.O. Box 12548 | | Austin | TX | 78711-2548 | | 512-475-4861 | jay.hurst@oag.state.tx.us | Counsel to The Texas Comptroller of Public Accounts |
| Ohio Environmental Protection Agency | c/o Michelle T. Sutter | Principal Assistant Attorney General Environmental Enforcement Section | 30 E Broad St 25th Fl | Columbus | OH | 43215 | | 614-466-2766 | msutter@ag.state.oh.us | Attorney for State of Ohio, Environmental Protection Agency |
| Orbotech, Inc. | Michael M. Zizza, Legal Manager | 44 Manning Road | | Billerica | MA | 01821 | | 978-901-5025 | michaelz@orbotech.com | Company |
| O'Rourke Katten & Moody | Michael Moody | 55 W Wacker Dr | Ste 1400 | Chicago | IL | 60615 | | 312-849-2020 | mmoody@orourkeandmoody.com | Counsel to Ameritech Credit Corporation d/b/a SBC Capital Services |
| Orrick, Herrington & Sutcliffe LLP | Alyssa Englund, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | | 212-506-5187 | aenglund@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Frederick D. Holden, Jr., Esq. | 405 Howard Street | | San Francisco | CA | 94105 | | 415-773-5700 | fholden@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Raniero D'Aversa, Jr. | 51 West 52nd Street at 6th Avenue | | New York | NY | 10103-0001 | | 212-506-3715 | Rdaversa@orrick.com | Counsel to Bank of America, N.A. |
| Pachulski Stang Ziehl & Jones LLP | Michael R. Seidl | 919 N. Market Street, 17th Floor | P.O. Box 8705 | Wilmington | DE | 19899-8705 | | 302-652-4100 | mseidl@pszjlaw.com | Counsel for Essex Group, Inc. |
| Pachulski Stang Ziehl & Jones LLP | Robert J. Feinstein Ilan D. Scharf | 780 Third Avenue, 36th Floor | | New York | NY | 10017-2024 | | 212-561-7700 | Rfeinstein@pszjlaw.com lscharf@pszjlaw.com | Counsel for Essex Group, Inc. |
| Patterson Belknap Webb & Tyler LLP | Daniel A. Lowenthal | 1133 Avenue of the Americas | | New York | NY | 10036 | | 212-336-2720 | dalowenthal@pbwt.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation |
| Patterson Belknap Webb & Tyler LLP | David W. Dykhouse Phyllis S. Wallitt | 1133 Avenue of the Americas | | New York | NY | 10036-6710 | | 212-336-2000 | dwdykhouse@pbwt.com | Attorneys for Fry's Metals Inc. and Specialty Coatings Systems Eft |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 16 of 23

12/8/2010 12:06 AM
Email (397)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Paul H. Spaeth Co. LPA | Paul H. Spaeth | 130 W Second St Ste 450 | | Dayton | OH | 45402 | | 937-223-1655 | spaethlaw@phslaw.com | Attorneys for F&G Multi-Slide Inc and F&G Tool & Die Co. Inc. |
| Paul, Weiss, Rifkind, Wharton & Garrison | Andrew N. Rosenberg | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | arosenberg@paulweiss.com | Counsel to Merrill Lynch, Pierce, Fenner & Smith, Incorporated |
| Paul, Weiss, Rifkind, Wharton & Garrison | Douglas R. Davis | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | ddavis@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Elizabeth R. McColm | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | emccolm@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Peggy Housner | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | housnerp@michigan.gov | Assistant Attorney General for State of Michigan, Department of Treasury |
| Penachio Malara LLP | Anne Penachio | 235 Main Street | Suite 600A | White Plains | NY | 10601 | | 914-946-2889 | apenachio@pmlawllp.com | Counsel to UVA Machine Company and its successors by acquisition |
| Pepe & Hazard LLP | Kristin B. Mayhew | 30 Jelliff Lane | | Southport | CT | 06890-1436 | | 203-319-4022 | kmayhew@pepehazard.com | Counsel for Illinois Tool Works Inc., Illinois Tool Works for Hobart Brothers Co., Hobart Brothers Company, ITW Food Equipment Group LLC and Tri-Mark, Inc. |
| Pepper, Hamilton LLP | Francis J. Lawall | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | lawallf@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Henry Jaffe | 1313 Market Street | PO Box 1709 | Wilmington | DE | 19899-1709 | | 302-777-6500 | jaffeh@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pepper, Hamilton LLP | Nina M. Varughese | 3000 Two Logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | varughesen@pepperlaw.com | Counsel to Capro, Ltd; Teleflex Automotive Manufacturing Corporation; Teleflex Incorporated; Ametek; Cleo, Inc.; Sierra International, Inc. |
| Pickrel Shaeffer & Ebeling | Sarah B. Carter Esq | 2700 Kettering Tower | | Dayton | OH | 45423-2700 | | 937-223-1130 | scarter@pselaw.com | |
| Pierce Atwood LLP | Jacob A. Manheimer | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | jmanheimer@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pierce Atwood LLP | Keith J. Cunningham | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | kcunningham@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pietragallo Bosick & Gordon LLP | Richard J. Parks | 54 Buhl Blvd | | Sharon | PA | 16146 | | 724-981-1397 | rjp@pbandg.com | Counsel to Ideal Tool Company, Inc. |
| Pillsbury Winthrop Shaw Pittman LLP | Karen B. Dine | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | karen.dine@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 17 of 23

12/8/2010 12:06 AM
Email (397)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Pillsbury Winthrop Shaw Pittman LLP | Margot P. Erlich | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | margot.erlich@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Mark D. Houle | 650 Town Center Drive | Ste 550 | Costa Mesa | CA | 92626-7122 | | 714-436-6800 | mark.houle@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Richard L. Epling | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | richard.epling@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Robin L. Spear | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | robin.spear@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Porzio, Bromberg & Newman, P.C. | Brett S. Moore, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | bsmoore@pbnlaw.com | |
| Porzio, Bromberg & Newman, P.C. | John S. Mairo, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | jsmairo@pbnlaw.com | Counsel to Neuman Aluminum Automotive, Inc. and Neuman Aluminum Impact Extrusion, Inc. |
| Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, S.C. | Jill M. Hartley and Marianne G. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | jh@previant.com mgr@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| PriceWaterHouseCoopers | Enrique Bujidos | Almagro | 40 | Madrid | | 28010 | Spain | 34 915 684 356 | enrique.bujidos@es.pwc.com | Representative to DASE |
| QAD, Inc. | Stephen Tyler Esq | 10,000 Midlantic Drive | Suite 100 West | Mt. Laurel | NJ | 08054 | | 856-840-2870 | xst@qad.com | Counsel to QAD, Inc. |
| Quarles & Brady LLP | Kasey C. Nye | One South Church Street | | Tucson | AZ | 85701 | | 520-770-8717 | knye@quarles.com | Counsel to Offshore International, Inc.; Maquilas Teta Kawi, S.A. de C.V.; On Semiconductor Corporation; Flambeau Inc. |
| Quarles & Brady LLP | Roy Prange | 33 E Main St Ste 900 | | Madison | WI | 53703-3095 | | 608-283-2485 | rlp@quarles.com | Counsel for Flambeau Inc. |
| Quarles & Brady LLP | Valerie L. Bailey-Rihn Esq | 33 E Main St Ste 900 | | Madison | WI | 53703 | | 608-283-2407 | valerie.bailey-rihn@quarles.com | Counsel to Charter Manufacturing Co., Charter Mfg. Co. Inc., Charter Steel and Milwaukee Wire Products |
| Reed Smith | Ann Pille | 10 South Wacker Drive | | Chicago | IL | 60606 | | 312-207-1000 | apille@reedsmith.com | Counsel to Infineon; Infineon Technologies |
| Republic Engineered Products, Inc. | Joseph A Kaczka | 3770 Embassy Parkway | | Akron | OH | 44333 | | 330-670-3215 | jkaczka@republicengineered.com | Counsel to Republic Engineered Products, Inc. |
| Riddell Williams P.S. | Joseph E. Shickich, Jr. | 1001 4th Ave. | Suite 4500 | Seattle | WA | 98154-1195 | | 206-624-3600 | jshickich@riddellwilliams.com | Counsel to Microsoft Corporation; Microsoft Licensing, GP |
| Rieck and Crotty PC | Jerome F Crotty | 55 West Monroe Street | Suite 3390 | Chicago | IL | 60603 | | 312-726-4646 | jcrotty@rieckcrotty.com | Counsel to Mary P. O'Neill and Liam P. O'Neill |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 18 of 23

12/8/2010 12:06 AM
Email (397)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Russell Reynolds Associates, Inc. | Charles E. Boulbol, P.C. | 26 Broadway, 17th Floor | | New York | NY | 10004 | | 212-825-9457 | rtrack@msn.com | Counsel to Russell Reynolds Associates, Inc. |
| Satterlee Stephens Burke & Burke LLP | Christopher R. Belmonte | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | cbelmonte@ssbb.com | Counsel to Moody's Investors Service |
| Satterlee Stephens Burke & Burke LLP | Pamela A. Bosswick | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | pbosswick@ssbb.com | Counsel to Moody's Investors Service |
| Satterlee Stephens Burke & Burke LLP | Roberto Carrillo | 230 Park Avenue | Suite 1130 | New York | NY | 10169 | | 212-818-9200 | rcarrillo@ssbb.com | Attorney's for Tecnomec S.r.l. |
| Schafer and Weiner PLLC | Daniel Weiner | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | dweiner@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Howard Borin | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | hborin@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Michael R Wernette | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | mwernette@schaferandweiner.com shellie@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Ryan Heilman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | rheilman@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schiff Hardin LLP | Eugene J. Geekie, Jr. | 7500 Sears Tower | | Chicago | IL | 60606 | | 312-258-5635 | egeekie@schiffhardin.com | Counsel to Means Industries |
| Schulte Roth & Zabel LLP | David J. Karp | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | david.karp@srz.com | Counsel to Parnassus Holdings II, LLC and Platinum Equity Capital Partners II, LP |
| Schulte Roth & Zabel LLP | James T. Bentley | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2273 | james.bentley@srz.com | Counsel to Panasonic Autommotive Systems Company of America |
| Schulte Roth & Zabel LLP | Michael L. Cook | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | michael.cook@srz.com | Counsel to Panasonic Automotive Systems Company of America; D.C. Capital Partners, L.P. |
| Schwartz Lichtenberg LLP | Barry E Lichtenberg Esq | 420 Lexington Ave Ste 2400 | | New York | NY | 10170 | | 212-389-7818 | barryster@att.net | Counsel to Marybeth Cunningham |
| Seyfarth Shaw LLP | Paul M. Baisier, Esq. | 1545 Peachtree Street, N.E. | Suite 700 | Atlanta | GA | 30309-2401 | | 404-885-1500 | pbaisier@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | | 212-218-5500 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | William J. Hanlon | World Trade Center East | Two Seaport Lane, Suite 300 | Boston | MA | 02210 | | 617-946-4800 | whanlon@seyfarth.com | Counsel to Ie Belier/LBQ Foundry S.A. de C.V. |
| Shaw Gussis Fishman Glantz Wolfson & Towbin LLC | Brian L Shaw | 321 N. Clark St. | Suite 800 | Chicago | IL | 60654 | | 312-541-0151 | bshaw100@shawgussis.com | Counsel to ATC Logistics & Electronics, Inc. |
| Sheehan Phinney Bass + Green Professional Association | Bruce A. Harwood | 1000 Elm Street | P.O. Box 3701 | Manchester | NH | 03105-3701 | | 603-627-8139 | bharwood@sheehan.com | Counsel to Source Electronics, Inc. |
| Sheldon S. Toll PLLC | Sheldon S. Toll | 2000 Town Center | Suite 2550 | Southfield | MI | 48075 | | 248-358-2460 | lawtoll@comcast.net | Counsel to Milwaukee Investment Company |
| Sheppard Mullin Richter & Hampton LLP | Eric Waters | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | ewaters@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Malani J. Sternstein | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | msternstein@sheppardmullin.com | Counsel to International Rectifier Corp. and Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theodore A. Cohen | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | tcohen@sheppardmullin.com | Counsel to Gary Whitney |

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Sheppard Mullin Richter & Hampton LLP | Theresa Wardle | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | twardle@sheppardmullin.com | Counsel to International Rectifier Corp. |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 5353 Essen Lane | Suite 650 | Baton Rouge | LA | 70809 | | 225-757-2185 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 909 Poydras Street | 28th Floor | New Orleans | LA | 70112-1033 | | 504-299-2100 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Shipman & Goodwin LLP | Kathleen M. LaManna | One Constitution Plaza | | Hartford | CT | 06103-1919 | | 860-251-5603 | bankruptcy@goodwin.com | |
| Sills, Cummis Epstein & Gross, P.C. | Andrew H. Sherman | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | asherman@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Jack M. Zackin | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | jzackin@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Valerie A Hamilton Simon Kimmelman | 650 College Rd E | | Princeton | NJ | 08540 | | 609-227-4600 | vhamilton@sillscummis.com skimmelman@sillscummis.com | Counsel to Doosan Infracore America Corp. |
| Silver Point Capital, L.P. | Chaim J. Fortgang | Two Greenwich Plaza | 1st Floor | Greenwich | CT | 06830 | | 203-542-4216 | cfortgang@silverpointcapital.com | Counsel to Silver Point Capital, L.P. |
| Smith, Katzenstein & Furlow LLP | Kathleen M. Miller | 800 Delaware Avenue, 7th Floor | P.O. Box 410 | Wilmington | DE | 19899 | | 302-652-8400 | kmiller@skfdelaware.com | Counsel to Airgas, Inc. |
| Sonnenschein Nath & Rosenthal LLP | D. Farrington Yates | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | fyates@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. and United Plastics Group |
| Sonnenschein Nath & Rosenthal LLP | Monika J. Machen | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | mmachen@sonnenschein.com | Counsel to United Plastics Group |
| Sonnenschein Nath & Rosenthal LLP | Oscar N. Pinkas | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | opinkas@sonnenschein.com | Counsel to Schaeffler Canada, Inc. and Schaeffler KG |
| Sonnenschein Nath & Rosenthal LLP | Robert E. Richards | 7800 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | rrichards@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc.; Counsel to Schaeffler Canada, Inc. and Schaeffler KG |
| Squire, Sanders & Dempsey L.L.P. | G. Christopher Meyer | 4900 Key Tower | 127 Public Sq | Cleveland | OH | 44114 | | 216-479-8692 | cmeyer@ssd.com | Counsel to Furukawa Electric Co., Ltd.; Counsel for the City of Dayton, Ohio |
| State of California Office of the Attorney General | Sarah E. Morrison | Deputy Attorney General | 300 South Spring Street Ste 1702 | Los Angeles | CA | 90013 | | 213-897-2640 | sarah.morrison@doj.ca.gov | Attorneys for the State of California Department of Toxic Substances Control |
| State of Michigan Department of Labor & Economic Growth, Unemployment Insurance Agency | Roland Hwang Assistant Attorney General | 3030 W. Grand Boulevard | Suite 9-600 | Detroit | MI | 48202 | | 313-456-2210 | hwangr@michigan.gov | Assistant Attorney General for State of Michigan, Unemployment Tax Office of the Department of Labor & Economic Growth, Unemployment Insurance Agency |
| State of Michigan Labor Division | Susan Przekop-Shaw | PO Box 30736 | | Lansing | MI | 48909 | | 517-373-2560 | przekopshaws@michigan.gov | Assistant Attorney General as Attorney for the Michigan Workers' Compensation Agency |
| Steel Technologies, Inc. | John M. Baumann | 15415 Shelbyville Road | | Louisville | KY | 40245 | | 502-245-0322 | jmbaumann@steeltechnologies.com | Counsel to Steel Technologies, Inc. |
| Sterns & Weinroth, P.C. | Michael A Spero Simon Kimmelman Valerie A Hamilton | 50 West State Street, Suite 1400 | PO Box 1298 | Trenton | NJ | 08607-1298 | | 609-392-2100 | jspecf@sternslaw.com | Counsel to Doosan Infracore America Corp. |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 20 of 23

12/8/2010 12:06 AM
Email (397)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Stevens & Lee, P.C. | Constantine D. Pourakis, Esq. | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | | 212-319-8500 | cp@stevenslee.com | Counsel to Tonolli Canada Inc.; VJ Technologies, Inc. and V.J. ElectroniX, Inc. |
| Stinson Morrison Hecker LLP | Mark A. Shaiken | 1201 Walnut Street | | Kansas City | MO | 64106 | | 816-842-8600 | mshaiken@stinsonmoheck.com | Counsel to Thyssenkrupp Waupaca, Inc. and Thyssenkrupp Stahl Company |
| Stites & Harbison PLLC | Madison L.Cashman | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | robert.goodrich@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison PLLC | Robert C. Goodrich, Jr. | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | madison.cashman@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison, PLLC | W. Robinson Beard, Esq. | 400 West Market Street | | Louisville | KY | 40202 | | 502-681-0448 502-587-3400 | wbeard@stites.com loucourtsum@stites.com | Counsel to WAKO Electronics (USA), Inc.,Ambrake Corporation, and Akebona Corporation (North America) |
| Stutman Treister & Glatt Professional Corporation | Christine M. Pajak Eric D. Goldberg Isaac M. Pachulski Esq Jeffrey H Davidson Esq | 1901 Avenue of the Stars | 12th Floor | Los Angeles | CA | 90067 | | 310-228-5600 | cpajak@stutman.com egoldberg@stutman.com ipachulski@stutman.com jdavidson@stutman.com | Counsel to CR Intrinsic Investors, LLC, Elliot Associates, L.P., Highland Capital Management, L.P. |
| Taft, Stettinius & Hollister LLP | Richard L .Ferrell | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202-3957 | | 513-381-2838 | ferrell@taftlaw.com | Counsel to Wren Industries, Inc. |
| Taft, Stettinius & Hollister LLP | W Timothy Miller Esq | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202 | | 513-381-2838 | miller@taftlaw.com | Counsel to Select Industries Corporation and Gobar Systems, Inc. |
| Teitelbaum & Baskin LLP | Jay Teitelbaum Ron Baskin | 3 Barker Avenue | 3rd Floor | White Plains | NY | 10601 | | 914-437-7670 | jteitelbaum@tblawllp.com rbaskin@tblawllp.com | Counsel to Mary H. Schaefer |
| Tennessee Department of Revenue | Marvin E. Clements, Jr. | c/o TN Attorney General's Office, Bankruptcy Division | PO Box 20207 | Nashville | TN | 37202-0207 | | 615-532-2504 | agbanknewyork@ag.tn.gov | Tennesse Department of Revenue |
| Thacher Proffitt & Wood LLP | Jonathan D. Forstot | Two World Financial Center | | New York | NY | 10281 | | 212-912-7679 | jforstot@tpw.com | Counsel to TT Electronics, Plc |
| Thacher Proffitt & Wood LLP | Louis A. Curcio | Two World Financial Center | | New York | NY | 10281 | | 212-912-7607 | lcurcio@tpw.com | Counsel to TT Electronics, Plc |
| The Furukawa Electric Co., Ltd. | Mr. Tetsuhiro Niizeki | 6-1 Marunouchi | 2-Chrome, Chiyoda-ku | Tokyo | Japan | 100-8322 | | | niizeki.tetsuhiro@furukawa.co.jp | Legal Department of The Furukawa Electric Co., Ltd. |
| The Michaelson Law Firm | Robert N Michaelson | 11 Broadway Ste 615 | | New York | NY | 10004 | | 212-604-0685 | rnm@michaelsonlawfirm.com | Counsel to NXP Semiconductors USA, Inc. |
| The Timpken Corporation BIC - 08 | Robert Morris | 1835 Dueber Ave. SW | PO Box 6927 | Canton | OH | 44706-0927 | | 330-438-3000 | robert.morris@timken.com | Representative for Timken Corporation |
| Thompson & Knight | Rhett G. Cambell | 333 Clay Street | Suite 3300 | Houston | TX | 77002 | | 713-654-1871 | rhett.campbell@tklaw.com | Counsel to STMicroelectronics, Inc. |
| Thompson & Knight LLP | Ira L. Herman | 919 Third Avenue | 39th Floor | New York | NY | 10022-3915 | | 212-751-3045 | ira.herman@tklaw.com | Counsel to Victory Packaging |
| Thompson & Knight LLP | John S. Brannon | 1700 Pacific Avenue | Suite 3300 | Dallas | TX | 75201-4693 | | 214-969-1505 | john.brannon@tklaw.com | Counsel to Victory Packaging |
| Thompson Coburn Fagel Haber | Lauren Newman | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | lnewman@tcfhlaw.com | Counsel to Aluminum International, Inc. |
| Thompson Coburn LLP d/b/a Thompson Coburn Fagel Haber | Dennis E. Quaid Esq | 55 E Monroe 37th Fl | | Chicago | IL | 60603 | | 312-580-2215 | dquaid@thompsoncoburn.com | Counsel for Penn Aluminum International Inc |
| Thompson Hine LLP | Jennifer L Maffett | 2000 Courthouse Plaza NE | 10 W Second St | Dayton | OH | 45402 | | 937-443-6600 | Jennifer.Maffett@ThompsonHine.com | Counsel to Rieck Group, LLC n/k/a Mechanical Construction Managers, LLC |
| TI Group Automotive Systms LLC | Timothy M. Guerriero | 12345 E Nine Mile Rd | | Warren | MI | 48089 | | 586-755-8066 | tguerriero@us.tiauto.com | General Counsel and Company Secretary to TI Group Automotive Systems LLC |
| Todd & Levi, LLP | Jill Levi, Esq. | 444 Madison Avenue | Suite 1202 | New York | NY | 10022 | | 212-308-7400 | jilevi@toddlevi.com | Counsel to Bank of Lincolnwood |
| Todtman Nachamie Spizz & Johns PC | Janice B. Grubin | 425 Park Avenue | 5th Floor | New York | NY | 10022 | | 212-754-9400 | jgrubin@tnsj-law.com | Counsel to Vanguard Distributors, Inc. |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 21 of 23

12/8/2010 12:06 AM
Email (397)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| U.S. Department of Justice | Matthew L Schwartz Joseph N Cordaro | Assistant United States Attorneys | 86 Chambers St 3rd Fl | New York | NY | 10007 | | 212-637-1945 | matthew.schwartz@usdoj.gov Joseph.Cordaro@usdoj.gov | Counsel to Enviromental Protection Agency; Internal Revenue Service; Department of Health and Human Services; and Customs and Border Protection |
| Underberg & Kessler, LLP | Helen Zamboni | 300 Bausch & Lomb Place | | Rochester | NY | 14604 | | 585-258-2800 | hzamboni@underbergkessler.com | Counsel to McAlpin Industries, Inc. |
| Union Pacific Railroad Company | Mary Ann Kilgore | 1400 Douglas Street | MC 1580 | Omaha | NE | 68179 | | 402-544-4195 | mkilgore@UP.com | Counsel to Union Pacific Railroad Company |
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy | Allied Industrial and Service Workers, Intl Union (USW), AFL-CIO David Jury, Esq. | | Five Gateway Center Suite 807 | Pittsburgh | PA | 15222 | | 412-562-2546 | djury@usw.org | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Vorys, Sater, Seymour and Pease LLP | Tiffany Strelow Cobb | 52 East Gay Street | | Columbus | OH | 43215 | | 614-464-8322 | tscobb@vorys.com | Counsel to America Online, Inc. and its Subsidiaries and Affiliates |
| Wachtell, Lipton, Rosen & Katz | Richard G. Mason | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | RGMason@wlrk.com | Counsel to Capital Research and Management Company |
| Warner Norcross & Judd LLP | Gordon J. Toering | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2185 | gtoering@wnj.com | Counsel to Robert Bosch Corporation; Counsel to Daewoo International Corp and Daewoo International (America) Corp |
| Warner Norcross & Judd LLP | Michael G. Cruse | 2000 Town Center | Suite 2700 | Southfield | MI | 48075 | | 248-784-5131 | mcruse@wnj.com | Counsel to Compuware Corporation |
| Warner Norcross & Judd LLP | Stephen B. Grow | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2158 | growsb@wnj.com | Counsel to Behr Industries Corp. |
| Weltman, Weinberg & Reis Co., L.P.A. | Geoffrey J. Peters | 175 South Third Street | Suite 900 | Columbus | OH | 43215 | | 614-857-4326 | gpeters@weltman.com | Counsel to Seven Seventeen Credit Union |
| White & Case LLP | Glenn Kurtz Gerard Uzzi Douglas Baumstein | 1155 Avenue of the Americas | | New York | NY | 10036-2787 | | 212-819-8200 | gkurtz@ny.whitecase.com guzzi@whitecase.com dbaumstein@ny.whitecase.com | Counsel to Appaloosa Management, LP |
| White & Case LLP | Thomas Lauria Frank Eaton | Wachovia Financial Center | 200 South Biscayne Blvd., Suite 4900 | Miami | FL | 33131 | | 305-371-2700 | tlauria@whitecase.com featon@miami.whitecase.com | Counsel to Appaloosa Management, LP |
| Whyte, Hirschboeck Dudek S.C. | Bruce G. Arnold | 555 East Wells Street | Suite 1900 | Milwaukee | WI | 53202-4894 | | 414-273-2100 | barnold@whdlaw.com | Counsel to Schunk Graphite Technology |
| Wickens Herzer Panza Cook & Batista Co | James W Moennich Esq | 35765 Chester Rd | | Avon | OH | 44011-1262 | | 440-930-8000 | jmoennich@wickenslaw.com | Counsel for Delphi Sandusky ESOP |
| Winston & Strawn LLP | David Neier Carey D. Schreiber | 200 Park Avenue | | New York | NY | 10166-4193 | | 212-294-6700 | dneier@winston.com cschreiber@winston.com | Counsel to Ad Hoc Group of Tranche A & B DIP Lenders |
| Winthrop Couchot Professional Corporation | Marc. J. Winthrop | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | mwinthrop@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Winthrop Couchot Professional Corporation | Sean A. O'Keefe | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | sokeefe@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Womble Carlyle Sandridge & Rice, PLLC | Allen Grumbine | 550 South Main St | | Greenville | SC | 29601 | | 864-255-5402 | agrumbine@wcsr.com | Counsel to Armacell |
| Womble Carlyle Sandridge & Rice, PLLC | Michael G. Busenkell | 222 Delaware Avenue | Suite 1501 | Wilmington | DE | 19801 | | | mbusenkell@wcsr.com | Counsel to Chicago Miniature Optoelectronic Technologies, Inc. |
| Woods Oviatt Gilman LLP | Ronald J. Kisinski | 700 Crossroads Bldg | 2 State St | Rochester | NY | 14614 | | 585-362-4514 | rkisicki@woodsoviatt.com | |

In re: DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 22 of 23

12/8/2010 12:06 AM
Email (397)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-------|------------------|
| Zeichner Ellman & Krause LLP | Stuart Krause | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | skrause@zeklaw.com | Counsel to Toyota Tsusho America, Inc. |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 23 of 23

12/8/2010 12:06 AM
Email (397)

# EXHIBIT B

DPH Holdings Corp.
Post-Emergence Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| United States Trustee | Brian Masumoto | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | Counsel to United States Trustee |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 1 of 1

12/8/2010 12:10 AM
Post-Emergence Master Service List 101130.xlsx US Mail (1)

# EXHIBIT C

**Hearing Date and Time:  December 16, 2010 at 10:00 a.m. (prevailing Eastern time)**
**Supplemental Response Date and Time:  December 14, 2010 at 4:00 p.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

　　　- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
　　Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| DPH HOLDINGS CORP., et al., | : | Case Number 05-44481 (RDD) |
| | : | |
| | : | (Jointly Administered) |
| Reorganized Debtors. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

REORGANIZED DEBTORS' SUPPLEMENTAL REPLY TO RESPONSE OF
CLAIMANT TO DEBTORS' OBJECTION TO PROOF OF CLAIM NUMBER
1294 FILED BY OHIO BUREAU OF WORKERS' COMPENSATION

("SUPPLEMENTAL REPLY REGARDING CLAIM FILED BY
OHIO BUREAU OF WORKERS COMPENSATION")

DPH Holdings Corp. and its affiliated reorganized debtors in the above-captioned

cases (together with DPH Holdings Corp., the "Reorganized Debtors") hereby submit the

Reorganized Debtors' Supplemental Reply To Response Of Claimant To Reorganized Debtors'

Objections To Proof of Claim Number 1294 Filed By Ohio Bureau Of Workers' Compensation

(the "Supplemental Reply"), and respectfully represent as follows:

A.    <u>Preliminary Statement</u>

1.    On October 8 and 14, 2005 (the "Petition Date"), Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates (the "Debtors"), predecessors of the

Reorganized Debtors, filed voluntary petitions in this Court for reorganization relief under

chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the

"Bankruptcy Code").

2.    On October 6, 2009 (the "Effective Date"), the Debtors substantially

consummated the First Amended Joint Plan Of Reorganization Of Delphi Corporation And

Certain Affiliates, Debtors And Debtors-In-Possession, As Modified (the "Modified Plan"),

which had been approved by this Court pursuant to an order entered on July 30, 2009 (Docket

No. 18707), and emerged from chapter 11 as the Reorganized Debtors.

3.    On November 16, 2010, the Reorganized Debtors filed the (I) Notice Of

Adjournment Of Evidentiary Hearing With Respect To Debtors' Objection To Proofs Of Claim

Numbers 1294 And 1310 Filed By Ohio Bureau Of Workers' Compensation And (II) Notice Of

Sufficiency Hearing With Respect To Debtors' Objection To Proof Of Claim Number 1294 Filed

By Ohio Bureau Of Workers' Compensation (Docket No. 20803) (the "Sufficiency Hearing

Notice").

4.    The Reorganized Debtors filed the Sufficiency Hearing Notice and are

filing this Supplemental Reply to implement Article 9.6(a) of the Modified Plan, which provides

2

that "[t]he Reorganized Debtors shall retain responsibility for administering, disputing, objecting

to, compromising, or otherwise resolving all Claims against, and Interests in, the Debtors and

making distributions (if any) with respect to all Claims and Interests."

5.      By the Sufficiency Hearing Notice and pursuant to the Order Pursuant To

11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014

Establishing (I) Dates For Hearings Regarding Objections To Claims And (II) Certain Notices

And Procedures Governing Objections To Claims, entered December 7, 2006 (Docket No. 6089)

(the "Claims Objection Procedures Order") and the Twelfth Supplemental Order Pursuant To 11

U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014

Establishing (I) Dates For Hearings Regarding Objections To Claims And (II) Certain Notices

And Procedures Governing Objections To Claims, entered July 16, 2010 (Docket No. 20427),

the Reorganized Debtors scheduled a hearing (the "Sufficiency Hearing") on December 16, 2010

at 10:00 a.m. (prevailing Eastern time) in this Court to address the legal sufficiency of proof of

claim number 1294 and whether such proof of claim states a colorable claim against the asserted

Debtor.

6.      This Supplemental Reply is filed pursuant to paragraph 9(b)(i) of the

Claims Objection Procedures Order.  Pursuant to paragraph 9(b)(ii) of the Claims Objection

Procedures Order, if a claimant wishes to file a supplemental pleading in response to this

Supplemental Reply, the claimant shall file and serve its response no later than two business days

before the scheduled Sufficiency Hearing – i.e., by **December 14, 2010.**

B.      Relief Requested

7.      By this Supplemental Reply, the Reorganized Debtors request entry of an

order disallowing and expunging proof of claim number 1294 filed against the Debtors in their

chapter 11 cases.

3

C.    The Claim Filed Against the Debtors

8.    On December 27, 2005, the Ohio Bureau of Workers' Compensation (the "Bureau") filed proof of claim number 1294 (the "Proof of Claim") against Delphi. The Proof of Claim asserts an unsecured priority claim in the amount of $24,732,628.02 stemming from amounts allegedly owed in connection with workers' compensation assessments[1] (the "Claim").

9.    The Debtors' Objection to the Proof of Claim. On June 22, 2009, the Debtors objected to the Proof of Claim pursuant to the Debtors' Thirty-Fourth Omnibus Objection Pursuant to 11. U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To (I) Expunge (A) Certain Pension And OPEB Claims, (B) Certain Individual Workers' Compensation Claims, (C) Certain Duplicate And/Or Amended Individual Workers' Compensation Claims, (D) Certain Untimely Individual Workers' Compensation Claims, (E) A Secured Books And Records Claim, And (F) Certain Untimely Claims, (II) Modify Certain (A) Wage And Benefit Claims, (B) State Workers' Compensation Claims, And (C) Individual Workers' Compensation Claims Asserting Priority, (III) Provisionally Disallow Certain Union Claims, And (IV) Modify And Allow Certain Settled Claims (Docket No. 17182) (the "Thirty-Fourth Omnibus Claims Objection").

10.    Response to the Reorganized Debtors' Objection. On July 16, 2009, the Bureau filed the Ohio Bureau Of Workers' Compensation's Response To Debtors' Thirty-Fourth Omnibus Objection To Claims (Docket No. 18346) (the "Response"), asserting that the Proof of Claim should be classified as a priority claim.

---

[1]    Although the Proof of Claim actually references the Debtors' obligation to pay workers' compensation "premiums," it is the Debtors' understanding that the claim actually refers to workers' compensation assessments applicable under the same Ohio statute. The Debtors' operated as self-insurers in Ohio and, as a result, were not obligated to pay workers' compensation insurance premiums.

D.    Claimant's Burden of Proof and Standard for Sufficiency of Claim

11.    The Reorganized Debtors respectfully submit that the Proof of Claim fails to state a claim against the Debtors under rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Bureau has not proved any facts to support a right to further payment by the Reorganized Debtors on behalf of the Debtors.  Accordingly, the Reorganized Debtors' objections to the Proof of Claim should be sustained and the Claim should be disallowed and expunged in its entirety.

12.    The burden of proof to establish a claim against the Debtors rests on the claimant and, if a proof of claim does not include sufficient factual support, such proof of claim is not entitled to a presumption of prima facie validity pursuant to Bankruptcy Rule 3001(f).  In re Spiegel, Inc., No. 03-11540, 2007 WL 2456626, at *15 (Bankr. S.D.N.Y. August 22, 2007) (the claimant always bears the burden of persuasion and must initially allege facts sufficient to support the claim); see also In re WorldCom, Inc., No. 02-13533, 2005 WL 3832065, at *4 (Bankr. S.D.N.Y. Dec. 29, 2005) (only a claim that alleges facts sufficient to support legal liability to claimant satisfies claimant's initial obligation to file substantiated proof of claim); In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992) (in its initial proof of claim filing, claimant must allege facts sufficient to support claim); In re Chiro Plus, Inc., 339 B.R. 111, 113 (Bankr. D. N.J. 2006) (claimant bears initial burden of sufficiently alleging claim and establishing facts to support legal liability); In re Armstrong Finishing, L.L.C., No. 99-11576-C11, 2001 WL 1700029, at *2 (Bankr. M.D.N.C. May 2, 2001) (only when claimant alleges facts sufficient to support its proof of claim is it entitled to have claim considered prima facie valid); In re United Cos. Fin. Corp., 267 B.R. 524, 527 (Bankr. D. Del. 2000) (claimant must allege facts sufficient to support legal basis for its claim to have claim make prima facie case).

5

13.     For purposes of sufficiency, this Court has determined that the standard of
whether a claimant has met its initial burden of proof to establish a claim should be similar to the
standard employed by courts in deciding a motion to dismiss under Bankruptcy Rules 7012 and
9014.  See Hr'g Tr. 52:24-53:1, Jan. 12, 2007 (Docket No. 7118).  Pursuant to that standard, a
motion to dismiss should be granted if a claimant fails to make "'[f]actual allegations . . . enough
to raise a right to relief above the speculative level [to a plausible level],' assuming (of course)
that all the allegations in the complaint are true." Bradley v. Rell, No. 1:07-CV-0148, 2010 U.S.
Dist. LEXIS 29606, at *13 (N.D.N.Y. Mar. 25, 2010) (quoting Bell Atl. Corp. v. Twombly, 550
U.S. 544, 555 (2007)).  Essentially, the claimant must provide facts that plausibly support a legal
liability against the Debtors.

14.     This Court further established that the sufficiency-hearing standard is
consistent with Bankruptcy Rule 3001(f), which states that "a proof of claim executed and filed
in accordance with these Rules shall constitute prima facie evidence of the validity and amount
of the claim."  Fed. R. Bankr. P. 3001(f) (emphasis added).  Likewise, Bankruptcy Rule 3001(a)
requires that "the proof of claim shall conform substantially to the appropriate Official Form"
and Bankruptcy Rule 3001(c) requires that "when a claim . . . is based on a writing, the original
or a duplicate shall be filed with the proof of claim." Fed. R. Bankr. P. 3001(a), (c).  See Hr'g Tr.
52:17-22, Jan. 12, 2007.

E.      Argument Regarding the Claim

15.     The Claim Has Been Satisfied in Full.  The Debtors previously paid all
obligations relating to the prepetition workers' compensation assessments asserted in the Proof of
Claim.  The Proof of Claim states that on October 8, 2005, the Petition Date, the Debtors
incurred a debt of $24,732,628.02 based on obligations to pay workers' compensation
assessments pursuant to Ohio statute.  After reviewing the Proof of Claim, it is not apparent to

6

the Reorganized Debtors how the Bureau determined the amount of the Claim.  The Proof of

Claim attaches a spreadsheet with various entries between 2001 and 2005 that presumably relate

to the various Ohio workers' compensation administrative funds.  By some undisclosed

calculation, the spreadsheet generates a subtotal of $2,473,262.80, which then appears to have

been multiplied by a factor of ten to reach the total of $24,732,628.02.  In any event, the amount

asserted in the Proof of Claim for prepetition assessments is vastly overstated.

16.      In fact, all prepetition assessments were paid in the ordinary course while

the Debtors operated as self-insurers, such that the prepetition assessments for most years were

paid long before the Petition Date.[2]  The assessments incurred in 2005 and levied in 2006, after

the Petition Date, were also paid in full pursuant to the Order Under 11 U.S.C. §§ 105(a), 363,

507, 1107, and 1108 (I) Authorizing Debtors To Pay Prepetition Wages And Salaries To

Employees And Independent Contractors; (II) Authorizing Debtors To Pay Prepetition Benefits

And Continue Maintenance Of Human Capital Benefit Programs In The Ordinary Course; And

(III) Directing Banks To Honor Prepetition Checks For Payment Of Prepetition Human Capital

Obligations (Docket No. 198) (the "Human Capital Order"), which authorized the Debtors to

continue making payments relating to prepetition workers' compensation obligations in order to

maintain their status as self-insurers.  In accordance with the Human Capital Order, the Debtors

continued to pay assessments levied throughout the pendency of their chapter 11 cases and

maintained their self-insured status in Ohio until after the Effective Date.

17.      The Claim Does Not Establish a Right to Payment for Future Assessments.

Based on recent communications with the Bureau, the Reorganized Debtors understand it to be

---

[2]    Proof of payment of the prepetition Ohio workers' compensation assessments is available upon request and will
also be made available at the Sufficiency Hearing.

the Bureau's position that post-Effective Date assessments should be included as part of the

prepetition priority claim asserted in the Proof of Claim.  To the extent that the Bureau continues

to adhere to this view, it is mistaken.

18.    This Court recently considered a nearly identical issue in connection with

a claim asserted against the Debtors by the Michigan Funds Asministration for workers'

compensation assessments.  Like the Michigan assessments, Ohio workers' compensation

assessments are only capable of determination on an annual basis because they depend not only

on a self-insurer's total workers' compensation payments for the prior year, but on the aggregate

payments made by all self-insurers.  OHIO REV. CODE ANN. § 4123.35(J).  While Michigan

sought to amend an administrative claim to include post-Effective Date assessments, the Bureau

apparently is seeking to assert assessments for the same post-Effective Date period as part of its

existing prepetition Proof of Claim.  Nevertheless, this Court's conclusion that Michigan

worker's compensation assessments based on annual calculations should be treated as separate

claims is just as pertinent to the Ohio assessments.  Hr'g Tr. 60:15-61:16, Aug. 27, 2010;  see

also In re Sage-Dey, Inc., 170 B.R. 46, 50-51 (Bankr. N.D.N.Y. 1994) (distinguishing between

taxes that are assessed on an annual basis and continuous taxes that accumulate as they accrue).

19.    The majority of cases considering similar circumstances have reached the

same conclusion as this Court.  For example, both the Fifth Circuit, United States v. Waindel (In

re Waindel), 65 F.3d 1307, 1311-12 (5th Cir. 1995), and the Seventh Circuit, In re Stavriotis, 977

F.2d 1202, 1206 n.4 (7th Cir. 1992); In re Unroe, 937 F.2d 346, 349 (7th Cir. 1991), have held

that each discreet tax period gives rise to a separate claim.  As have district courts and

bankruptcy courts in the Second Circuit, In re PT-1 Commc'ns, Inc., 292 B.R. 482, 487 (Bankr.

E.D.N.Y. 2003), the Third Circuit, In re Cont'l Airlines, Inc., 183 B.R. 698, 699 (D. Del. 1995);

In re Blue Coal Corp., 166 B.R. 816, 821 (M.D. Pa. 1993); United States v. Owens, 84 B.R. 361,

363 (E.D. Pa. 1988), the Fourth Circuit, United States v. Roberson, 188 B.R. 364, 365-66 (D. Md.

1995); In re Rains, 139 B.R. 158, 159-60 (Bankr. D. Md. 1992), the Sixth Circuit, In re Chavis,

160 B.R. 804, 806 (Bankr. S.D. Ohio 1993), aff'd, 47 F.3d 818 (6th Cir. 1995); In re Johnson, 84

B.R. 492, 494 (Bankr. N.D. Ohio 1988), aff'd, 901 F.2d 513 (6th Cir. 1990), the Eighth Circuit,

United States v. Baker (In re Baker), 129 B.R. 607, 608 (E.D. Mo. 1991), the Tenth Circuit,

Sunwest Hotel Corp. ex rel. Chequers Inv. Assocs. II v. Bd. of County Comm'rs of Reno County,

Kan. (In re Sunwest Hotel Corp.), Nos. 92-40079-11, et al., 1998 WL 982905, at *9 (D. Kan.

Sept. 29, 1998); In re Ltd. Gaming of Am., Inc., 213 B.R. 369, 373 (Bankr. N.D. Okla. 1997),

and the Eleventh Circuit, In re Gilley, 288 B.R. 901, 905 (Bankr. M.D. Fla. 2002); In re Appling,

162 B.R. 43, 46 (Bankr. M.D. Ga. 1993).

   20.  The Reorganized Debtors are aware of only one case in which a court has

taken the contrary view that postpetition workers' compensation assessments should be treated as

if they were incurred prior to the Petition Date.  In In re Belden Locker Co., No. 06-60316, 2008

WL 762243 (Bankr. N.D. Ohio Mar. 21, 2008), the bankruptcy court held that postpetition

workers' compensation assessments are entitled to priority treatment under section 502(i) of the

Bankruptcy Code because, although assessments may arise after the petition date, the bankruptcy

court found that the assessments relate back to prepetition transactions.[3]  Id. at *5-6.  The

bankruptcy court concluded that, under Ohio law, assessments are sufficiently analogous to

premium payments to the state workers' compensation insurance fund, such that both types of

claims arise simply by employing workers.  Id. (citing In re Suburban Motor Freight, Inc., 998

---

[3] The purpose of section 502(i) of the Bankruptcy Code is to "make[] clear that only taxes incurred by the debtor prepetition but not becoming due and payable until after the petition is filed are allowed under 502 just as any other prepetition claim."  4 COLLIER ON BANKRUPTCY 502.10 (Alan N. Resnick & Henry J. Sommer eds., 15th rev. ed.).

F.2d 338, 340 n.3 (6th Cir. 1993)).  The reasoning in <u>Belden Locker</u> is fatally flawed, however,

because claims for premiums and assessments are easily distinguishable and are not

interchangeable for purposes of determining when a claim arises.

21.    In Ohio, as in most states, employers can fulfill their obligation to provide

workers' compensation benefits in one of two ways.  Employers are generally required to insure

their workers' compensation obligations by making premium payments.[4]  As the court observed

in <u>Suburban</u>, the obligation to make premium payments arises by virtue of having employees

during the coverage period.  <u>Suburban</u>, 998 F.2d at 340 n.3.  In lieu of making insurance-

premium payments, an employer may seek to operate as a self-insurer and pay workers'

compensation claims directly.  Claims for self-insured workers' compensation benefits arise on

the date of the injury.  <u>In re Olga Coal Co.</u>, 194 B.R. 741, 746 (Bankr. S.D.N.Y. 1996).  The

Bureau's claim for workers' compensation assessments is categorically different than claims

based on either premium payments or self-insured workers' compensation benefits.  As described

above, a new claim for assessments arises each year based on the total workers' compensation

payments for the previous calendar year incurred by the self-insurer, individually, and by all

other self-insurers in the state.

22.    Accordingly, any claims for postpetition workers' compensation

assessments are separate and distinct from the prepetition priority claim asserted in the Proof of

Claim.  What is more, the Proof of Claim cannot be construed as an administrative expense claim

under section 503(b) of the Bankruptcy Code.  As provided in the Order (A)(I) Approving

Modifications To Debtors' First Amended Plan Of Reorganization (As Modified) And Related

Disclosures And Voting Procedures And (II) Setting Final Hearing Date To Consider

---

[4]    In Ohio, workers' compensation insurance is administered by the state.

Modifications To Confirmed First Amended Plan Of Reorganization And (B) Setting

Administrative Expense Claims Bar Date And Alternative Transaction Hearing Date (Docket No.

17032) (the "Modification Procedures Order"), a party seeking to assert an administrative claim

against the Debtors may only rely on a previously filed proof of claim if "such proof of claim

clearly and unequivocally sets forth that such claim is made for an administrative expense

priority."  Modification Procedures Order ¶ 39.  Otherwise, parties were required to file separate

proofs of administrative expense claims.  As this Court has recognized, the Debtors' ability to

accurately assess the amount of allowable administrative expense claims was critical to the

successful consummation of the Modified Plan.  See Hr'g Tr. 55:13-24, Aug. 27, 2010.  To this

end, even when examined in the light most favorable to the Bureau, the Proof of Claim did not

clearly and unequivocally assert an administrative expense claim.

    23.  The Reorganized Debtors, therefore, believe that the Claim has been paid

in full and assert that (a) the Bureau has not met its burden of proof to establish a claim against

or interest in the Debtors, (b) the Proof of Claim is not entitled to a presumption of prima facie

validity pursuant to Bankruptcy Rule 3001(f), and (c) the Proof of Claim fails to state a claim

against the Reorganized Debtors under Bankruptcy Rule 7012.  Because the Bureau cannot

provide facts or law supporting the Claim, the Thirty-Fourth Omnibus Claims Objection should

be sustained as to the Proof of Claim and the Proof of Claim should be disallowed and expunged

in its entirety.

WHEREFORE the Reorganized Debtors respectfully request this Court enter an

order (a) sustaining the objection with respect to the Claim, (b) disallowing and expunging the

Claim in its entirety, and (c) granting such further and other relief this Court deems just and

proper.

Dated:      New York, New York
            December 6, 2010

                                    SKADDEN, ARPS, SLATE, MEAGHER
                                       & FLOM LLP

                                    By:   /s/ John Wm. Butler, Jr.
                                          John Wm. Butler, Jr.
                                          John K. Lyons
                                          Ron E. Meisler
                                    155 North Wacker Drive
                                    Chicago, Illinois 60606

                                          - and -

                                    Four Times Square
                                    New York, New York 10036

                                    Attorneys for DPH Holdings Corp., et al.,
                                       Reorganized Debtors

# EXHIBIT D

**Hearing Date and Time:  December 16, 2010 at 10:00 a.m. (prevailing Eastern time)**
**Supplemental Response Date and Time:  December 14, 2010 at 4:00 p.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

　　　　- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
　　Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
　　　　In re                                :        Chapter 11
                                            :
DPH HOLDINGS CORP., et al.,                 :        Case No. 05-44481 (RDD)
                                            :
　　　　　　　　Reorganized Debtors.           :        (Jointly Administered)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

REORGANIZED DEBTORS' SUPPLEMENTAL REPLY WITH RESPECT TO PROOF OF
ADMINISTRATIVE EXPENSE CLAIM NUMBER 20017 (ANDREW C. GREGOS)

("SUPPLEMENTAL REPLY REGARDING ADMINISTRATIVE
EXPENSE CLAIM ANDREW C. GREGOS")

DPH Holdings Corp. and its affiliated reorganized debtors in the above-captioned

cases (collectively, the "Reorganized Debtors"), hereby submit this Supplemental Reply With

Respect To Proof Of Administrative Expense Claim Number 20017 (Andrew C. Gregos) (the

"Supplemental Reply") and respectfully represent as follows:

A.      Preliminary Statement

        1.      On November 5, 2009, Andrew C. Gregos filed proof of administrative

expense claim number 20017 (the "Administrative Claim") against Delphi Corporation asserting

amounts owed on account of extended disability benefits and medical retirement pension.  Since

the filing of the Administrative Claim, Mr. Gregos's extended disability benefits have been

retroactively reinstated.  However, no amounts are presently owed to Mr. Gregos due to certain

overpayments, totaling $63,945.00, made to Mr. Gregos from March 1, 2007 through July 31,

2009.  With respect to his pursuit of a medical retirement pension, because the pension plan has

been terminated and taken over by the Pension Benefit Guaranty Corporation, the Reorganized

Debtors are unable to provide the relief sought.  Accordingly, this Court should enter an order

disallowing and expunging the Administrative Claim as set forth herein.

        2.      On October 8 and 14, 2005, Delphi Corporation ("Delphi") and certain of

its subsidiaries and affiliates (the "Debtors"), predecessors of the Reorganized Debtors, filed

voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the

United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").

        3.      On October 6, 2009 (the "Effective Date"), the Debtors substantially

consummated the First Amended Joint Plan Of Reorganization Of Delphi Corporation And

Certain Affiliates, Debtors And Debtors-In-Possession, As Modified (the "Modified Plan"),

which had been approved by this Court pursuant to an order entered on July 30, 2009 (Docket

No. 18707), and emerged from chapter 11 as the Reorganized Debtors.

2

4.      On November 16, 2010, the Reorganized Debtors filed the Notice Of Sufficiency Hearing With Respect To Reorganized Debtors' Objection To Proofs Of Administrative Expense Claim Numbers 19063, 19134, 19135, 19136 And 20017 (Docket No. 20807) (the "Sufficiency Hearing Notice").

5.      The Reorganized Debtors are filing this Supplemental Reply to implement Article 9.6(a) of the Modified Plan, which provides that "[t]he Reorganized Debtors shall retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving all Claims against, and Interests in, the Debtors and making distributions (if any) with respect to all Claims and Interests."

6.      By the Sufficiency Hearing Notice,[1] the Reorganized Debtors scheduled a hearing (the "Sufficiency Hearing") on December 16, 2010 at 10:00 a.m. (prevailing Eastern time) in this Court to address the legal sufficiency of the Administrative Claim and whether the Administrative Claim states a colorable claim against Delphi.

7.      This Supplemental Reply is filed pursuant to paragraph 9(b)(i) of the Claims Objection Procedures Order.  Pursuant to paragraph 9(b)(ii) of the Claims Objection Procedures Order, if a Claimant wishes to file a supplemental pleading in response to this Supplemental Reply, the Claimant shall file and serve its response no later than two business days before the scheduled Sufficiency Hearing – i.e., by **December 14, 2010.**

---

[1]      The Sufficiency Hearing Notice was filed pursuant to the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I) Dates For Hearings Regarding Objections To Claims And (II) Certain Notices And Procedures Governing Objections To Claims, entered December 7, 2006 (Docket No. 6089) (the "Claims Objection Procedures Order"), the Order Pursuant To 11 U.S.C. §§ 105(a) And 503(b) Authorizing Debtors To Apply Claims Objection Procedures To Address Contested Administrative Expense Claims, entered October 22, 2009 (Docket No. 18998) (the "Administrative Claims Procedures Order"), and the Twelfth Supplemental Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I) Dates For Hearings Regarding Objections To Claims And (II) Certain Notices And Procedures Governing Objections To Claims, entered July 16, 2010 (Docket No. 20426).

3

B.      Relief Requested

8.      By this Supplemental Reply, the Reorganized Debtors request entry of

an order disallowing and expunging proof of administrative expense claim number 20017 as set

forth herein.

C.      The Claims Filed Against The Debtors

9.      On November 5, 2009, Andrew C. Gregos (the "Claimant"), a former

employee of the Debtors, filed the Administrative Claim against Delphi seeking $528,443.24 for

benefits arising under extended disability benefits (the "EDB Claim") and medical retirement

(the "Medical Retirement Claim," together with the EDB Claim, the "Claims").

10.      The Reorganized Debtors' Objection To The Claim.  On January 22,

2010, the Reorganized Debtors objected to the Administrative Claim pursuant to the

Reorganized Debtors' Forty-Third Omnibus Objection Pursuant To 11 U.S.C. § 503(b) And Fed.

R. Bankr. P. 3007 To (I) Expunge Certain Administrative Expense (A) Severance Claims, (B)

Books And Records Claims, (C) Duplicate Claims, (D) Equity Interests, (E) Prepetition Claims,

(F) Insufficiently Documented Claims, (G) Pension, Benefit, And OPEB Claims, (H) Workers'

Compensation Claims, And (I) Transferred Workers' Compensation Claims, (II) Modify And

Allow Certain Administrative Expense Severance Claims, And (III) Allow Certain

Administrative Expense Severance Claims (Docket No. 19356) (the "Forty-Third Omnibus

Claims Objection"), seeking entry of an order disallowing and expunging the Administrative

Claim because it was not owing by the Reorganized Debtors pursuant to their books and records.

11.      Response To The Reorganized Debtors' Objection.  On February 18,

2010, Mr. Gregos submitted a letter in response to the Forty-Third Omnibus Claims Objection

(Docket No. 19523) (the "Response") asserting that he is appealing the Employee Benefit Plans

Committee's (the "EBPC") decision to deny his medical retirement request.

4

12.     On December 2, 2010, the Reorganized Debtors received an undocketed letter addressed to this Court, appearing to be a supplemental response supporting Mr. Gregos's Administrative Claim (the "Supplement Response").  The Supplemental Response also appears to amend the Administrative Claim to include, among other things, attorney's fees incurred by Mr. Gregos.[2]

D.    Claimant's Burden Of Proof And Standard For Sufficiency Of Claim

13.     The Reorganized Debtors respectfully submit that (a) the EDB Claim is being satisfied and (b) the Medical Retirement Claim fails to state a claim against the Debtors under rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  Pursuant to Bankruptcy Rule 7012, a claimant must provide facts that plausibly support a claim upon which relief can be granted.  Fed. R. Bankr. P. 7012 (b).  The Claimant has not provided any facts to support a right to payment by the Reorganized Debtors on behalf of the Debtors on account of the Medical Retirement Claim, and as explained more fully below, the EDB Claim is being satisfied.  Accordingly, the Reorganized Debtors' objection to the Administrative Claim should be sustained and (a) the EDB Claim should be disallowed and expunged provided that such disallowance shall not affect the Claimant's right to receive EDB in accordance with the terms of the Disability Benefits Program (as defined below) and subject to the Reorganized

---

[2]     In the Supplemental Response, Mr. Gregos attempts to amend his Administrative Claim to include additional amounts, including attorney's fees.  Pursuant to section 9.6(d) of the Modified Plan (as defined below), "Any claim (whether a newly filed Claim or an amendment to a previously filed Claim) filed after the later of (i) the Effective Date, (ii) with respect to Claims for rejection damages, the bar date established pursuant to Article 8.3 of this Plan for the filing of such claims, (iii) with respect to Claims that are Administrative Claims, the bar date established pursuant to Articles 10.2 and 10.5 of this Plan, or (iv) with respect to Claims that are Prepetition Employee Related Obligations, the bar date established pursuant to Article 7.12(b) of this Plan, shall not be recognized, or recorded on the claims register, by the Claims Agent and shall be disallowed automatically without the need for any objection from the Debtors or the Reorganized Debtors unless such untimely filing is expressly authorized by an order of the Bankruptcy Court."  Accordingly, Mr. Gregos's attempt to amend the Administrative Claim was not recognized or recorded on the claims register.

5

Debtors' right to terminate the Disability Benefits Program and (b) the Medical Retirement Claim

should be disallowed and expunged in its entirety.

14.     The burden of proof to establish a claim against the Debtors rests on the

claimant and, if a proof of claim does not include sufficient factual support, such proof of claim

is not entitled to a presumption of prima facie validity pursuant to Bankruptcy Rule 3001(f).  In

re Spiegel, Inc., Nos. 03-11540, 06-CV-13477, 2007 WL 2456626, at *15 n.6 (S.D.N.Y. Aug. 22,

2007) (the claimant always bears the burden of persuasion and must initially allege facts

sufficient to support the claim); see also In re WorldCom, Inc., No. 02-13533, 2005 WL 3832065,

at *4 (Bankr. S.D.N.Y. Dec. 29, 2005) (only a claim that alleges facts sufficient to support legal

liability to claimant satisfies claimant's initial obligation to file substantiated proof of claim); In

re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992) (in its initial proof of claim filing,

claimant must allege facts sufficient to support claim); In re Chiro Plus, Inc., 339 B.R. 111, 113

(D.N.J. 2006) (claimant bears initial burden of sufficiently alleging claim and establishing facts

to support legal liability); In re Armstrong Finishing, L.L.C., No. 99-11576-C11, 2001 WL

1700029, at *2 (Bankr. M.D.N.C. May 2, 2001) (only when claimant alleges facts sufficient to

support its proof of claim is it entitled to have claim considered prima facie valid); In re United

Cos. Fin. Corp., 267 B.R. 524, 527 (Bankr. D. Del. 2000) (claimant must allege facts sufficient

to support legal basis for its claim to make a prima facie case).

15.     For purposes of sufficiency, this Court has determined that the standard

of whether a claimant has met its initial burden of proof to establish a claim should be similar to

the standard employed by courts in deciding a motion to dismiss under Bankruptcy Rules 7012

and 9014.  See Transcript of January 12, 2007 Hearing (Docket No. 7118) (the "January 12,

2007 Transcript") at 52:24-53:1.  Pursuant to that standard, a motion to dismiss should be

granted if a claimant fails to make "'[f]actual allegations . . . enough to raise a right to relief

above the speculative level [to a plausible level],' assuming (of course) that all the allegations in

the complaint are true." <u>Bradley v. Rell</u>, 703 F. Supp. 2d 109, 115 (N.D.N.Y. 2010) (<u>quoting</u> <u>Bell</u>

<u>Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  Essentially, the claimant must provide facts

that plausibly support a legal liability against the Debtors.

    16.  This Court further established that the sufficiency hearing standard is

consistent with Bankruptcy Rule 3001(f), which states that "[a] proof of claim executed and filed

in accordance with these rules shall constitute prima facie evidence of the validity and amount of

the claim."  Fed. R. Bankr. P. 3001(f) (emphasis added).  Likewise, Bankruptcy Rule 3001(a)

requires that the "proof of claim shall conform substantially to the appropriate Official Form"

and Bankruptcy Rule 3001(c) requires that "[w]hen a claim . . . is based on a writing, the original

or a duplicate shall be filed with the proof of claim." Fed. R. Bankr. P. 3001(a), (c).  <u>See</u> January

12, 2007 Transcript at 52:17-22.

E.  <u>Argument Regarding The Claims</u>

    17.  <u>The Reinstatement Of EDB Satisfies The EDB Claim</u>.  The Reorganized

Debtors have reviewed the information attached to the Administrative Claim, the Response, and

the Supplemental Response and dispute that they owe certain amounts asserted in the

Administrative Claim for the denial of extended disability benefits ("EDB") or medical

retirement.  The Reorganized Debtors retroactively reinstated EDB for the Claimant dating back

to August 14, 2009;[3] therefore, the EDB Claim will be satisfied subject to (i) the requirements

under the Delphi Life And Disability Benefits Program For Salaried Employees (the "Disability

---

[3]  As described more fully below, the initial determination by Dr. Tochtenhagen that Mr. Gregos could return
to work as of August 14, 2009 led to the termination of his EDB benefits effective that date.

Benefits Program")[4] and (ii) the Reorganized Debtors right to terminate the Disability Benefits

Program.

18.      As outlined in the Disability Benefits Program, certain employees

became eligible for EDB after eligibility for Sickness And Accident Benefits (as defined in the

Disability Benefits Program) expired.  Mr. Gregos last performed work on September 15, 2006

and claimed disability commencing September 18, 2006.  Mr. Gregos was eligible for 12 months

of Sickness and Accident Benefits through September 24, 2007.  Mr. Gregos applied for and was

certified for EDB effective September 25, 2007, which he continued to receive through August

14, 2009.  Throughout this period, Mr. Gregos, like all parties receiving EDB, would periodically

apply for certification for EDB eligibility.  Under the Disability Benefits Program, EDB does not

provide for health care insurance, life insurance, or any other benefit other than, at most, 60% of

an employee's Monthly Base Salary (as defined in the Disability Benefits Program).

Furthermore, this monetary amount was subject to reduction by any social security benefits for

which employees become eligible.  See Disability Benefits Program Art. IV, § 4.09.

19.      While receiving EDB, Mr. Gregos also received a social security

disability insurance benefit for the period from March 1, 2007 through July 31, 2009.  As a result

of these benefits, Mr. Gregos's EDB were overpaid in the gross amount of $63,945.00 (the

"Overpayment").  The Reorganized Debtors' records reflect that Mr. Gregos was sent a letter

dated October 12, 2009 outlining his overpayment of benefits.  See Overpayment letter, dated

October 12, 2009, attached hereto as Exhibit B.  Mr. Gregos remained responsible for the

outstanding Overpayment regardless of the validity of the Claims.

---

[4]      A copy of the Disability Benefits Program is attached hereto as Exhibit A.

8

20.    In addition to certification, to maintain eligibility for EDB before he was separated from employment, Mr. Gregos was required to undergo additional fitness for duty examinations performed by a Delphi plant medical physician.  Accordingly, on August 14, 2009, Mr. Gregos underwent such a fitness for duty examination performed by Dr. Tochtenhagen, a Delphi plant medical physician.  Dr. Tochtenhagen's opinion was that Mr. Gregos was able to return to restrictive job duties consisting of alternating sitting for half an hour with standing for half an hour.[5]  Under the Disability Benefits Program, for an employee to be deemed eligible for EDB, such employee must be wholly prevented from engaging in any regular employment or occupation with the corporation at the plant or plants where the employee last worked.  Consequently, Mr. Gregos's EDB were canceled on August 14, 2009, due to the determination that he no longer met the requirements to receive EDB.  Regardless of Mr. Gregos's eligibility for EDB, his position was terminated as of September 1, 2009.  Because Mr. Gregos was rendered fit to work, he was no longer eligible for EDB when he was separated.

21.    Nevertheless, to resolve the Overpayment[6] and avoid litigation of the EDB Claim, Mr. Gregos's EDB were "retroactively reinstated commencing August 14, 2009."  See Sedgwick CMS letter, dated November 4, 2010, attached hereto as Exhibit C.  Accordingly, because Mr. Gregos had EDB reinstated, the EDB Claim will be satisfied subject to (i) Mr. Gregos satisfying the eligibility requirements under the Disability Benefits Program and (ii) the Reorganized Debtors right to terminate the Disability Benefits Program.

---

[5]    Delphi's corporate medical director, Dr. Thomas Morley, subsequently reviewed the relevant records and concurred with Dr. Tochtenhagen's opinion.

[6]    The Overpayment was offset against the EDB that were reinstated and would have otherwise been payable to Mr. Gregos.

9

22.     <u>The Termination Of The Salaried Pension Plan Renders The Medical
Retirement Claim Without Merit</u>.  The Medical Retirement Claim relates to a "Total &
Permanent Disability" ("T&PD") retirement under the former Delphi Retirement Program for
Salaried Employees (the "Salaried Employee Retirement Program").  The Salaried Employee
Retirement Program was the salaried pension plan that Delphi provided prior to July 31, 2009.
However, on that date the plan was terminated and taken over by the U.S. Pension Benefit
Guaranty Corporation (the "PBGC").  The PBGC now has sole control over issues relating to the
Salaried Employee Retirement Program, and the Reorganized Debtors have no power or
authority to make benefit determinations under the plan.  Accordingly, any claims regarding Mr.
Gregos's eligibility for a T&PD retirement must be addressed by the PBGC, not the Reorganized
Debtors.  Therefore, the Medical Retirement Claim against the Debtors should be disallowed.

23.     <u>The Items Listed In The Supplemental Response Are Without Merit</u>.  In
the Supplemental Response, Mr. Gregos asserts that the retroactive reinstatement of EDB
granted him additional rights to continued health care benefits.  Mr. Gregos refers to a letter from
the Reorganized Debtors, dated November 2, 2010 and attached hereto as <u>Exhibit D</u>, which
stated in part, "[n]otwithstanding the fact that *eligibility for EDB* has been reinstated retroactive
to [August 14, 2009],[7] the fact remains that his *employment* with [the Debtors] was terminated
effective September 1, 2009."  Regardless of the reinstatement of the EDB,  Mr. Gregos's
employment with the Debtors was terminated.  Indeed, in March 2009, Mr. Gregos's job was
identified for elimination as part of an ongoing reduction in force.  Effective September 1, 2009,
the Debtors formally discharged <u>all</u> employees who were on disability leaves of absence and

---

[7]     The reference to the September 2, 2009 date in the letter was a scrivener's error and should have stated
August 14, 2009.

10

whose jobs had been previously eliminated as part of a reduction in force. Thus, even if Mr.

Gregos's EDB would have theoretically continued in perpetuity, he still was discharged effective

September 1, 2009. This discharge rendered him ineligible for continuing health care benefits.

24.    In addition, Mr. Gregos states that he is unaware whether he has been

reinstated or whether he is receiving any benefits.[8] As described above, Mr. Gregos's EDB were

retroactively reinstated to August 14, 2009. However, Mr. Gregos still remains responsible for

the Overpayments, which are currently being offset against his EDB. As described in the letter

from Mark Fraylick, Manager, Workers' Compensation & Disability on behalf of DPH Holdings

Corp., dated September 2, 2010, attached hereto as Exhibit E, the anticipated time when Mr.

Gregos will have fulfilled his obligation regarding the Overpayments is in February 2011. At

that time, if Mr. Gregos is certified for EDB eligibility, he would continue to receive EDB

without need to offset the Overpayments, subject to the Reorganized Debtors rights to terminate

the Disability Benefits Program or until he is no longer eligible for EDB pursuant to the terms of

the program.

25.    Furthermore, Mr. Gregos also seems to confuse his obligation to

periodically apply for certification with the reinstatement of EDB. The reinstatement of EDB

can occur only after EDB is denied. For example, Mr. Gregos had his EDB reinstated only after

it was denied on August 14, 2009. The subsequent reinstatement, however, did not relieve Mr.

Gregos from his obligation to periodically apply for certification to maintain eligibility. Mr.

Gregos refers to a suspension of EDB in November 2010 and to his doctor's absence during the

---

[8]    Mr. Gregos attached a letter to the Supplemental Response dated November 11, 2009 from the National
Benefit Center stating that "[a]s a Delphi salaried employee rehired with seniority, you will be eligible for
various benefits on your rehire date." As this Court is aware, the Reorganized Debtors have not hired any
employees since the Effective Date and Mr. Gregos was not rehired by the Debtors after September 1, 2009.

11

time period for certification.  The suspension of EDB is not the same as denial and once Mr.

Gregos completes the certification process, his suspension will be lifted.[9]

26.     Finally, Mr. Gregos further confuses EDB and T&PD, which are

separate elements of two distinct programs.  EDB is part of the Disability Benefits Program and

T&PD is part of the Salaried Employee Retirement Program.  As described above, the Salaried

Employee Retirement Program was terminated and taken over by the PBGC, which now has sole

control over issues relating to the Salaried Employee Retirement Program.[10]  Reinstatement of

the EDB, therefore, has no bearing on Mr. Gregos's rights to any other benefits.

F.     Conclusion

27.     For the foregoing reasons, the Reorganized Debtors assert that (a) the

EDB Claim is being satisfied because Mr. Gregos's EDB was retroactively reinstated subject to

the terms of the Disability Benefits Program and (b) the Medical Retirement Claim against the

Reorganized Debtors is without merit because the Salaried Employee Retirement Program was

terminated and taken over by the PBGC, and the Reorganized Debtors are unable to provide the

relief sought.  Accordingly, this Court should enter an order disallowing proof of administrative

expense claim number 20017 provided, however that nothing in the order shall affect the

Claimant's right to receive EDB in accordance with the terms of the Disability Benefits Program

or the Reorganized Debtors' right to terminate the Disability Benefits Program.

---

[9]      Indeed, the Reorganized Debtors have been informed that the suspension of Mr. Gregos's EDB has been
         lifted.

[10]     As for any other assertions made in the Supplemental Response, including the request for attorney's fees,
         the Reorganized Debtors contend that Mr. Gregos has not made a prima facie case that he is entitled to such
         relief.  Specifically, Mr. Gregos has not provided any facts that the "American Rule" regarding attorney's
         fees should not apply.  Under the American Rule, each party bears its own cost of litigation unless
         authorized by agreement between the parties, statute, or court rule.  See Haliw v. City of Sterling Heights,
         691 N.W.2d 753, 756 (Mich. 2005) ("Michigan follows the 'American [R]ule' with respect to the payment
         of attorney fees and costs . . . ."); see also Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 199 (2d Cir.
         2003) (the general rule of New York follows the American Rule).

12

WHEREFORE the Reorganized Debtors respectfully request that this Court enter
an order (a) disallowing and expunging the EDB Claim provided that such disallowance shall not
affect the Claimant's right to receive EDB in accordance with the terms of the Disability Benefits
Program and subject to the Reorganized Debtors' right to terminate the Disability Benefits
Program, (b) disallowing and expunging the Medical Retirement Claim in its entirety, and (c)
granting the Reorganized Debtors such other and further relief as is just.

Dated:    New York, New York
          December 6, 2010

                              SKADDEN, ARPS, SLATE, MEAGHER
                                & FLOM LLP

                              By:    /s/ John Wm. Butler, Jr.
                                   John Wm. Butler, Jr.
                                   John K. Lyons
                                   Ron E. Meisler
                              155 North Wacker Drive
                              Chicago, Illinois 60606

                                   - and -

                              Four Times Square
                              New York, New York 10036

                              Attorneys for DPH Holdings Corp., et al.,
                                   Reorganized Debtors

# Exhibit A

THE DELPHI LIFE AND DISABILITY
BENEFITS PROGRAM FOR
SALARIED EMPLOYEES

(Effective January 1, <u>2004</u>
With Modifications Through
December 31, <u>2006</u>)

DELPHI CORPORATION

Art. I

## ARTICLE I

## ESTABLISHMENT AND EFFECTIVE DATE
## OF LIFE AND DISABILITY BENEFITS PROGRAM

### 1.01 – Establishment of Program

Delphi Corporation (the "Corporation" or "Delphi") on behalf of itself and certain of its directly or indirectly wholly-owned and substantially wholly-owned domestic subsidiaries, hereby establishes the Delphi Life and Disability Benefits Program for Salaried Employees (the "Program").    Benefits under the Program will be provided, at the discretion of the Corporation, through a self-insured arrangement or under a group insurance policy or policies issued by a Carrier as set forth in Article IV.

It is understood that for the purpose of determining eligibility for any coverage hereunder, any Employee covered under the provisions of this Program who, immediately prior, was eligible under the General Motors Life and Disability Benefits Program for Salaried Employees will be treated as though such Employee was continuously covered under this Program.

### 1.02 – Effective Date of Amended Program

The Program became effective January 1, 1999, and has been amended through December 31, 2006.  For any Employee who is Actively at Work on or after January 1, 2004, the Program, as amended on or after January 1, 2004 will become effective on the later of January 1, 2004 and the date the Employee returns to active work, except as may otherwise be provided in Article III 3.02 and in Article IV.

Art. II

## ARTICLE II

## DEFINITION OF TERMS

### 2.01 – "Actively at Work"

Actively at Work means performing the regular duties of the Employee's assignment, as determined by the Corporation, on a scheduled workday at one of the Corporation's places of business or at any other location to which the Corporation's business may require the Employee to work.  Assignment includes both the Employee's regular permanent assignment as well as any given on a temporary basis.  If the effective date of coverage or change in coverage falls on a day that is not a scheduled workday for the Employee, such Employee will be deemed to be Actively at Work if the Employee was at work on the immediately preceding scheduled workday.

For purposes of the Program, an Employee on a special Career Transition Leave under a program approved by the Corporation is deemed to be Actively at Work while on such leave.

An Employee who is on an approved vacation, as determined by the Corporation, is to be considered Actively at Work while on such approved vacation.

### 2.02 – "Annual Base Salary"

Annual Base Salary, for purposes of determining amounts of coverage, means (a) 12 times the Employee's Monthly Base Salary; or, (b) the Employee's annual earnings base, if the Employee is compensated wholly or partially on a commission basis; and includes any premium for necessary continuous seven-day operations.

Notwithstanding the above, for purposes of determining amounts of coverage, Annual Base Salary for an Employee eligible to participate in the election of coverage amounts under the Options! Program means the Employee's Annual Base Salary as of each September 1 for the following calendar year while the Employee remains so eligible.

2004 Plan

Art. II, 2.02

If an Employee receives an increase or decrease in Annual Base Salary prior to September 1, the resulting increased or decreased amount of life insurance coverage will become effective on January 1 of the following plan year.

2.03 – "Carrier"

Carrier means the entity by which coverages are underwritten or benefits are paid.  As used in this Program, the term will include, but is not limited to, the following types of entities:

      (a)     Delphi;

      (b)     an insurance company; and

      (c)     a non-governmental administrative service.

2.04 – "Dependent"

For purposes of (a) Dependent Life Insurance as set forth in Article IV, Section 4.12; or (b) Personal Accident Insurance as set forth in Article IV, Section 4.13, Dependent means the following:

      (a)     Prior to January 1, 2005

               The Employee's spouse or a Dependent Child as defined under the provisions of the Delphi Health Care Program for Salaried Employees except that Sponsored Dependents, Dependents acquired after the Employee's retirement effective date, and same-sex domestic partners and children of a same-sex domestic partner will not qualify as eligible Dependents.  A child, who is otherwise eligible, will qualify as a Dependent from the moment of live birth.  "Live birth" means that the child is born with spontaneous respiration or a heartbeat.  Live birth does not include a stillbirth, miscarriage, spontaneous abortion or induced abortion.

Art. II, 2.04(b)

> **(b)** <u>On or After January 1, 2005</u>
>
> - <u>The Employee's spouse.  A spouse will also include the Employee's Same-Sex Domestic Partner; or</u>
>
> - <u>The Employee's Dependent Child.  A Dependent Child will also include a Dependent Child of the Employee's Same-Sex Domestic Partner,</u>
>
> <u>provided any such person is eligible to be covered under the provisions of the Delphi Health Care Program for Salaried Employees, except that Sponsored Dependents and Dependents acquired after the Employee's retirement effective date will not qualify as eligible Dependents. A child, who is otherwise eligible, will qualify as a Dependent from the moment of live birth.  "Live birth" means that the child is born with spontaneous respiration or a heartbeat.  Live birth does not include a stillbirth, miscarriage, spontaneous abortion or induced abortion.</u>

A child may not be covered as a Dependent of more than one Delphi salaried Employee. In the event of a claim for Dependent Life or Personal Accident Insurance when two Delphi salaried Employees have coverage on the life of the same Dependent, a benefit will be paid only to the Employee whose birthday occurs earlier in the calendar year.

For purposes of Dependent Life Insurance as set forth in Article IV, Section 4.12, a child born after the Employee's death will be an eligible Dependent only if such child is the issue of the surviving spouse's marriage to the deceased Employee and was conceived prior to such Employee's death.  Any such child will be eligible on the same basis as a child born prior to the Employee's death.

For purposes of Personal Accident Insurance as set forth in Article IV, Section 4.13, any person insured as an Employee will not be considered an eligible Dependent.

2004 Plan

Art. II, 2.05

2.05 – "Employee"

(a) Employee means any person regularly employed in the United States by the Corporation or by a wholly-owned or substantially wholly-owned domestic subsidiary thereof, or a person so employed outside of the United States or Canada whose services, if discontinued, would be discontinued by recall to the United States, (except an Employee who is classified as a temporary Employee) on a salaried basis, herein referred to as Employees, including:

(1) classified salaried Employees scheduled to work the normal base work week including Employees in professional/technical salaried positions;

(2) Commissioned Employees who are compensated wholly or partially on a commission basis;

(3) part-time physicians who are paid monthly salaries and who, without further considerations such as fees or other forms of remuneration, agree to render on a regular and continuing basis such medical services as may be require

(4) part-time salaried Employees whose service date is prior to September 1, 1984, (except part-time physicians) who, on a regular and continuing basis, perform jobs having definitely established working hours but the complete performance of which requires fewer hours of work than the regular work week, provided the services of such Employees are normally available for at least half of the employing unit's regular work week;

(5) Flexible Service Employees who, on an indefinite basis, perform jobs having definitely established working hours, but the complete performance of which requires fewer hours of work than the regular work week, provided the services of such Employees are normally available for at least 50% of the employing unit's regular work week;

Art. II, 2.05(a)(6)

<u>(6)</u>       executive salaried Employees;

<u>(7)</u>       salaried Employees of Delco Electronics Corporation (DEC);

<u>(8)</u>       former Employees of a Delphi business unit as defined by the GM/Delphi Employee Matters Agreement who are not retired as of January 1, 1999 and for whom the applicable sales or joint venture agreement provided for continued participation in the Program for a limited transitional period of time and where such sales or joint venture agreement had been approved by the General Motors Board of Directors or other committee or person(s) to whom such Board of Directors had delegated approval authority; and

<u>(9)</u>       former Employees of a Delphi Business unit as defined by the GM/Delphi Employee Matters Agreement for whom the applicable sales or joint venture agreement provides for participation in the Program solely for purposes of those post retirement coverages specifically provided for under the terms of such sales or joint venture agreement, and where such sales or joint venture agreement had been approved by General Motors Board of Directors or other committee or person(s) to whom such Board of Directors had delegated such approval authority.

(b)    The term "Employee" will not include:

(1)    employees of any directly or indirectly wholly-owned or substantially wholly-owned subsidiary of the Corporation acquired or formed by the Corporation unless specifically approved for inclusion herein by the Delphi Board of Directors;

(2)    employees represented by a labor organization with which no written agreement has been reached making the Program applicable to such employees, unless such employees are included through

understandings between the Corporation and their collective bargaining representatives;

(3)     leased employees as defined under Section 414(n) of the Internal Revenue Code;

(4)     contract employees, bundled services employees, consultants, individuals who have represented themselves to be independent contractors, individuals whom the Corporation does not consider to be Employees, or other similarly situated individuals regardless of whether the individual is a common law employee of the Corporation.  The purpose of this provision is to exclude from participation in the Program all persons who may actually be common law employees of the Corporation, but who are not paid as though they were employees of the Corporation regardless of whether that exclusion is correct;

(5)     former Employees of a Delphi business unit as set forth in Article II, Section 2.05(a)(8) above, upon termination of the transitional period and former Employees of a Delphi business unit as defined by the GM/Delphi Employee Matters Agreement for whom the applicable sales or joint venture agreement does not require continued participation in the Program, unless otherwise eligible as set forth in this Section 2.05; or

(6)     Cooperative Students whose service date is on or after January 1, 1999.

2.06 – "Length of Service"

Length of Service means the Employee's unbroken service as defined by rules established by the Corporation; except if the Employee is represented under a collective bargaining agreement, such Employee's Length of Service will be the same as the Employee's Length of Service as defined in such agreement.  If an Employee retired under the terms of the Delphi Retirement Program for Salaried Employees is rehired, but does not have Length of

Art. II, 2.06

Service reinstated, the Employee will be deemed, solely to satisfy the purposes of the Program, to have Length of Service while so employed.

2.07 – "Monthly Base Salary"

Monthly Base Salary, for purposes of determining amounts of coverage, means the Employee's current regular rate of pay each month without overtime, night shift premium or any other payment, but does include premium for necessary seven-day operation, except that commissioned Employees will be deemed to have a Monthly Base Salary equal to 1/12th the annual earnings base determined in accordance with a schedule established by the Corporation.

Notwithstanding the above, for purposes of determining amounts of coverage for Supplemental Extended Disability Benefits and Long-Term Disability Benefits, Monthly Base Salary for an Employee eligible to participate in the election of coverage amounts under the Options! Program means the Employee's Monthly Base Salary as of each September 1 for the following calendar year.  If an Employee receives an increase or decrease in Monthly Base Salary prior to September 1, the resulting increased or decreased amount of Supplemental Extended Disability Benefits and Long-Term Disability Benefits will become effective on January 1 of the following year.

2.08 – "Named Fiduciary"

Named Fiduciary means the Executive Committee of the Board of Directors of Delphi Corporation. The Executive Committee may delegate authority to carry out such of its responsibilities as it deems proper to the extent permitted by the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  Furthermore, certain authority may be delegated to a Carrier responsible for the adjudication of claims under the Program.

2.09 – "Options! Program"

Options! Program means The Delphi Options! Benefits Program for Salaried Employees in the United States.

Art. II, 2.10

2.10 – "2004 – 2006 Plan"

2004 – 2006 Plan means the Program as constituted on January 1, 2004 with modifications through December 31, 2006.

2.11 – "Program Administrator"

Program Administrator means Delphi Corporation or its delegate.

2.12 – "Years of Participation"

(a) Years of Participation will be the sum of:

(1) the Employee's credited service accrued after January 1, 1999 under any pension plan or retirement program to which the Corporation has contributed;

(2) any Years of Participation accrued under any General Motors Life and Disability Benefits Program prior to January 1, 1999;

(3) any Years of Participation accrued under any GM Life and Disability Benefit Program after January 1, 1999; provided such employee immediately transferred to Delphi from General Motors in accordance with the GM/Delphi Employee Matters Agreement prior to January 1, 2001.

(b) In the case of an Employee who, immediately prior to the date such Employee becomes an Employee as defined in Section 2.05 of this Article, was employed by a subsidiary or affiliated company or corporation not providing coverage under this Program, credit for Years of Participation, if any, on account of such prior service will be determined under rules established by the Corporation.

2004 Plan

Art. III

# ARTICLE III

## ELIGIBILITY FOR AND EFFECTVE DATES OF COVERAGES, AND FINANCING AND ADMINSTRATION OF PROGRAM

### 3.01 – Enrollment Options

Each eligible Employee will be enrolled in the Program.  For Optional Life, Dependent Life, Personal Accident Insurance and Supplemental Extended Disability Benefits, an eligible Employee must complete an enrollment application or election through a telephone or other electronic enrollment system, for the coverage in which the Employee chooses to participate.

### 3.02 – Eligibility for Coverage

Persons who are Employees as defined in the Plan are eligible to participate in the Program.

For purposes of determining eligibility in this Program, Employees who return to the Corporation from employment with Peregrine or any divestiture on or after September 30, 1998, Employees' eligibility for coverage hereunder will be based on such Employees' adjusted service date as determined by the Corporation.

   (a)    Basic Life, Sickness and Accident, Extended Disability Benefits, Short-Term Disability Benefits and Long-Term Disability Benefits Coverage

   (1)    Basic Life Insurance

An Employee whose service date is prior to January 1, 2001 will be eligible for Basic Life Insurance coverage provided under Article IV on the later of January 1, 2004 and the first day of the third month next following the month in which employment with the Corporation commences subsequent to such Employee's most recent date of hire as determined by the Corporation.

Art. III, 3.02(a)(1)

An Employee whose service date is on or after January 1, 2001 will be eligible for Basic Life Insurance coverage provided under Article IV on the <u>later of January 1, 2004 and the</u> first day of the second month next following the month in which employment with the Corporation commences subsequent to such Employee's most recent date of hire as determined by the Corporation.

Notwithstanding the foregoing, certain executive Employees of the Corporation who would otherwise be eligible for Basic Life Insurance under the Program, and who are eligible for an alternative form of coverage which the Corporation owns or for which it makes contributions, will not be eligible for Basic Life Insurance. Such executive Employees will be eligible for all other applicable coverages under the Program on the same basis and under the same circumstances as such coverages would otherwise be provided had they become or continued to be eligible for Basic Life Insurance.

(2)   Sickness and Accident and Extended Disability Benefits

An Employee whose service date is prior to January 1, 2001 will be eligible for Sickness and Accident and Extended Disability Benefits coverage provided under Article IV on the later of January 1, <u>2004</u> <u>and</u> the first day of the sixth month next following the month in which employment with the Corporation commences subsequent to such Employee's most recent date of hire as determined by the Corporation.

(3)   Short-Term and Long-Term Disability Benefits

An Employee whose service date is on or after January 1, 2001 will be eligible for Short-Term and Long-Term Disability Benefits provided under Article IV on the <u>later of January 1, 2004 and the</u> first day of the sixth month next following the month in which employment with the Corporation commences subsequent to such Employee's most recent date of hire as determined by the Corporation.

Art. III, 3.02(b)

(b)      When Coverage Resumes for Employees Returning to Work

If an Employee's coverage is discontinued and the Employee subsequently returns to work, such Employee's eligibility for coverage under the Program will be determined under subsection (a) herein except as follows:

(1)      Employees on a Leave of Absence

If an Employee's coverage is discontinued while on a leave of absence and such Employee again becomes Actively at Work with Length of Service, the Employee will be eligible for all coverages under this Program immediately on the date of the Employee's return to active work with the Corporation.

(2)      Employees Separated From Service Due to a Quit or Discharge

If separation from service was due to a quit or discharge but the Employee is reemployed within 31 days and no individual policy has been issued to the Employee in accordance with Article VI, Section 6.06, the Employee will be eligible immediately on the date the Employee is Actively at Work for all coverage under this Program for which such Employee was covered at the time of such quit or discharge.

(3)      Employees Separated From Service for Reasons Other Than Quit or Discharge

If separation from service was due to a reason other than quit or discharge, and the Employee never acquired Length of Service or Length of Service was canceled, and the Employee returns to active work within a period of 24 consecutive months, the Employee will be eligible for all coverage under this Program for which the Employee was covered at the time of such separation immediately on the date the Employee is again Actively at Work with the Corporation.

2004 Plan

Art. III, 3.02(b)(4)

    (4)    Employees Returning From Military Leaves of Absence

        Notwithstanding any other provisions of the Program, an Employee upon reporting for work from military leave of absence in accordance with the terms of such leave will be eligible immediately for Basic Life Insurance provided under Article IV.

(c)    Effective Date of Coverages

    (1)    An Employee will become covered on each of the dates such Employee first becomes eligible as set forth in subsections (a) and (b)(1), (2), and (3) above, if Actively at Work on that date and on the date the Employee becomes eligible as set forth in subsection (b)(4) above.

        Notwithstanding the above, Long-Term Disability Benefits will not become effective if the Employee has waived such coverage. Additionally, if the Employee is subject to proof of good health, Long-Term Disability coverage will become effective as set forth in Article IV, Section 4.10(b).

    (2)I    If an Employee is not Actively at Work on each of such dates such Employee's coverage would otherwise become effective as set forth in this Section 3.02 except subsection (b)(4) above, the Employee becomes covered on the date the Employee is again Actively at Work provided that date is not more than 24 months later, or if later, the Employee has not then broken Length of Service.

(d)    Additional Coverage

The provisions of subsections (a), (b), and (c) of this Section to the contrary notwithstanding, if an Employee dies as a result of bodily injuries prior to becoming insured for Basic Life Insurance as set forth in this Section, such insurance coverage will be provided for such death but only if:

Art. III, 3.02(d)(1)

 (1) a benefit would be payable for such death under Section 4.03(a) of Article IV, had the Employee been insured for Basic Life Insurance;

 (2) the bodily injuries are caused solely by employment with Delphi; and

 (3) the bodily injuries result solely from an accident in which both the cause and result are unexpected and definite as to time and place.

### 3.03 – Amounts of Life Insurance in States With Insurance Laws Which Conflict With Insurance Policy Provisions

The Basic Life, Optional Life and Dependent Life Insurance Programs will be administered in compliance with applicable state laws to the extent legally required and to the extent such laws are not preempted by federal law.

### 3.04 – Program in States With Disability Benefits Laws

 (a) Not Applicable in States With Laws Providing Such Benefits

 (1) The provisions of this Program pertaining to Sickness and Accident Benefits, Short-Term Disability Benefits, Extended Disability Benefits, Supplemental Extended Disability Benefits and Long-Term Disability Benefits will not be applicable to Employees in states having laws which now or hereafter may provide such benefits, under whatever name, for Employees who are disabled by non-occupational sickness or accident, or similar disability; and compliance by the Corporation with such laws will be deemed full compliance with the provisions of the Program with respect to Employees in such states.

  If such benefits exceed the benefits provided under the Program, the Corporation may require from Employees in such states such contributions as it may deem appropriate for such excess benefits.

Art. III, 3.04(a)(2)

(2)     In any state where the benefits under such state laws are on a generally lower level than the corresponding benefits under the Program, the Corporation will, to the extent it finds it practicable, provide benefits supplementary to the state plan benefits to the extent necessary to make the total benefits as nearly comparable as practicable to the benefits provided by the Program in states without such laws.

(b)     Substitution of Applicable Provisions of Program for State Plan

The provisions of subsection (a) above to the contrary notwithstanding, the Corporation may, in any state wherein the substitution of a private plan is authorized by the law of such state, modify the provisions of the Program to the extent and in respects necessary to secure the approval of the appropriate state governing body to substitute the benefits provided by the Program in lieu of any plan provided by state law.  Upon such modification and approval as a state-qualified plan, the Corporation may make the benefits provided by the Program available to its Employees in such state or states with such Employee contributions as may be appropriate with respect to any benefits under such modified Program benefits which exceed the benefits otherwise provided under the Program.

3.05 – Net Costs, Administration and Amendment of Program, Application and Claims Review Procedure and Non-Applicability of Grievance Procedure

(a)     Net Costs

Except as provided in Article IV, Sections 4.11 (e), 4.12 (f) and 4.13 (e), the Corporation will also pay the balance of the net cost of the Program over and above any Employee contributions specified in Article V and the cost of benefits as presently provided to the Corporation's Employees under the California, New Jersey and New York disability benefit laws.  It will also pay any increase in such costs and will receive and retain any divisible surplus,

Art. III, 3.05(a)

credits, refunds or reimbursements under whatever name, arising out of any such state plan benefits.

(b)    Administration and Amendment

(1)    The Corporation, as the Program Administrator, will be responsible for the administration of the Program.  The Corporation reserves the right to amend, modify, suspend or terminate the Program in whole or in part, at any time by action of its Board of Directors or other committee or individual expressly authorized by the Board to take such action.  The benefits available to Employees are determined solely by the terms of this Program.  Absent an express delegation of authority from the Board of Directors, no one has the authority to commit the Corporation to any benefit or benefit provisions not provided for under the terms of this Program.  The Program Administrator expressly reserves the right to construe, interpret and apply the terms of this Program.  In carrying out its responsibilities under the Program, the Carrier also will have discretionary authority to interpret the terms of the Program and to determine eligibility for and entitlement to Program benefits in accordance with the terms of the Program.  Any interpretation or determination made by the Program Administrator or the Carrier, pursuant to such discretionary authority, will be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious. The determination of the Corporation or, in the event of an appeal, of the Carrier, will be final and binding on the Corporation, the insurance company and the Employee or the Employee's designated beneficiary.

(2)    Unless otherwise specifically provided herein, the Corporation will pay all expenses incurred by it in the administration of the Program.

Art. III, 3.05(c)

(c)     Application and Claims Review Procedure

To receive benefits, an Employee (or beneficiary following the death of the Employee) must file an application or claim form obtained from the Carrier, in accordance with the instructions provided. Eligibility for benefits will be determined and the claim application will be processed by the Carrier, which has been granted the discretionary authority to construe, interpret, apply, make factual determinations, and administer the Plan. The Employee will be notified of benefits paid or, if the application for benefits is denied in whole or in part, written notice of such denial will be provided within a reasonable time but not later than 90 days, 45 days in the case of a disability claim (unless special circumstances require an extension), following receipt of the claim application. The notice will include specific reasons for the denial and will refer to the plan provisions upon which the denial is based. The notice will also include a description of any additional information that may be needed if the claim is to be resubmitted and an explanation of the procedure to be followed to have the claim reviewed if the claim has been denied.

(1)     Life Insurance and Personal Accident Insurance

To afford Employees a means by which they can seek review and possible reconsideration of a life insurance or Personal Accident Insurance claim, excluding a claim for Total and Permanent Disability benefits under Personal Accident Insurance, denied by the Carrier, internal procedures of the Corporation will provide a procedure as follows:

Within 60 days following the receipt of the formal notification letter from the Carrier by which the Employee or beneficiary is advised of the reasons for the denial of the claim, the Employee or beneficiary may request in writing to have the claim reviewed. The request for review should be submitted to the Carrier at the address where the claim was processed. As part of the review, the Employee or beneficiary may submit any data or written comments to support the

Art. III, 3.05(c)(1)

claim.  A written decision on the Employee's or beneficiary's request for review will be furnished within 60 days (120 days if special circumstances require an extension of time)  after the request for review is received.

The written decision on the review will include the specific reasons for the decision and will set forth specific reference to plan provisions upon which the decision is based.

(2)    Disability Including the Accelerated Benefits Option and Total and Permanent Disability

To afford Employees a means by which they can seek review and possible reconsideration of a disability claim, including a claim for Accelerated Benefits under Basic Life Insurance and Total and Permanent Disability benefits under Personal Accident Insurance, denied by the Carrier, internal procedures of the Corporation will provide a procedure as follows:

Within 180 days following receipt of the formal notification letter from the Carrier by which the Employee is advised of the reasons for the denial of the claim, the Employee may request in writing to have the claim reviewed.  The request for review should be submitted in writing directly to the Carrier at the address provided in the initial determination.  As part of the review, the Employee may submit any data or written comments to support the claim.  A written decision on the Employee's request for review will be furnished within a reasonable time but not later than 45 days (90 days if special circumstances require an extension of time) after the request is reviewed.

This written decision on the review will include specific reasons for the decision and will set forth specific reference to plan provisions upon which the decision is based.

2004 Plan

Art. III, 3.05(c)(2)

The written decision on review will also include a statement indicating the Employee's right to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the Employee's claim for benefits.  The written decision will describe the voluntary procedure available to the Employee and indicate that the Employee may bring a cause of action for benefits under ERISA Section 502(a).

Review by the Carrier exhausts the mandatory administrative remedies available to the Employee.  However, with the exception of a denial of Accelerated Benefits under Basic Life Insurance and Total and Permanent Disability benefits under Personal Accident Insurance, which are insured, and with regard to which the Carrier's decision on review is final and binding, if the Employee is not satisfied with the decision of the Carrier, the Corporation provides for an additional voluntary level of review by which the Employee may appeal in writing to the Plan Administrator.  The Employee may submit an appeal under this voluntary process to the Plan Administrator.  As part of the review, the Employee may submit any data or written comments to support the claim.

If an Employee is not satisfied with the decision of the Plan Administrator, the Employee may appeal in writing, within 60 days following receipt of the formal notification letter, to the Delphi Employee Benefit Plans Committee (EBPC) which has been delegated discretionary authority to construe, interpret and administer Delphi Employee benefit plans, The decision of the EBPC is final and binding.

If a Collective Bargaining Agreement applicable to a represented salaried Employee contains an appeal procedure which is different than the one described above, the appeal procedure in the Collective Bargaining Agreement will be applicable to that represented Employee.

Art. III, 3.05(c)(2)
Art. III, 3.05(c)(2)

The claims review procedure described above will be the exclusive means for resolution of all disputes concerning application for benefits and all other issues concerning the interpretation and application of the Program. Any decision resulting from this procedure will be final and binding upon the Corporation, the Union if applicable, the insurance company and the Employee or beneficiary. Any suit or legal action initiated by an Employee must be brought no later than one year following a final decision on the claim by the Carrier or, if the Employee pursues the voluntary appeal process, the EBPC, whichever is later.

(d)    Grievance Procedure Not Applicable

It is understood that the grievance procedure of any Collective Bargaining Agreement will not apply to this Program or any insurance or administrative service contract in connection therewith.

3.06 – Treatment of Existing Coverage on Effective Date

(a)    Protection of Employees currently covered under Corporation Life and Disability benefits plans (except its New Jersey and New York Private Plans) will be terminated on the effective dates of the provisions of the amended Program as to Employees Actively at Work on such effective dates, and the benefits provided by the Program set forth in Article IV will be in lieu of and substitute for any and all other plans and benefits thereunder providing for insurance or disability benefits or payments to Employees or beneficiaries for death, loss of member, or disability benefits of any kind or nature, in which the Corporation participates.

(b)    All Employees currently covered under the Program who are not eligible to become covered on the effective date of the Program, as amended, or to whom any provision of the Program, as amended, is not applicable, will be covered in accordance with the conditions, provisions and limitations of the Program as constituted on the date each such Employee was last Actively at Work as if such Program were being continued during the existence of the

2004 Plan

Art. III, 3.06(b)

Program set forth herein.  The provisions of this subsection (b) will not be applicable to (i) an Employee whose coverage is reinstated upon retirement from an approved leave of absence as set forth in Article V, Section 5.05(c); or, (ii) a former Employee whose Basic Life Insurance is reinstated upon retirement from a successor employer under the terms of a sales or joint venture agreement.

2004 Plan

Art. IV

## ARTICLE IV

BASIC LIFE INSURANCE,
SICKNESS AND ACCIDENT BENEFITS, SHORT-TERM DISABILITY BENEFITS,
EXTENDED DISABILITY BENEFITS, LONG-TERM DISABILITY BENEFITS,
OPTIONAL LIFE INSURANCE, DEPENDENT LIFE INSURANCE AND
PERSONAL ACCIDENT INSURANCE

4.01 – Amount of Basic Life Insurance

The amount of Basic Life Insurance will be as set forth in the following schedule:

| BASIC LIFE INSURANCE | |
| --- | --- |
| **Applicable to** | **Amount of Insurance** |
| Regular Salaried Employee (includes Classified and Executive) whose service date is prior to January 1, 2001 | 2 times Annual Base Salary as defined in Article II, Section 2.02, but not less than $11,700 for a full-time Employee nor more than $400,000[1] |
| Regular Salaried Employee (includes Classified and Executive) whose service date is on or after January 1, 2001 | $50,000 |
| Flexible Service Employee | $15,000 |
| [1]*In addition, an Employee, other than a Flexible Service Employee, who is eligible to participate in the Options! Program may elect an amount of Basic Life Insurance equal to one times Annual Base Salary while the Employee remains eligible under the Options! Program. If the amount of Basic Life Insurance is not a multiple of $100, such amount of insurance will be the next higher multiple of $100.* | |

2004 Plan

Art. IV, 4.02

4.02 – <u>Basic Life Insurance</u>

    (a)    Employees Hired On or After January 1, 1993 or Whose Service Date is January 1, 1993 or Later, as Applicable

        (1)    Prior to Retirement

        The amount of Basic Life Insurance to which an Employee is entitled prior to retirement is as shown in Section 4.01 of this Article.

        (2)    Upon Retirement

        On the date on which an Employee retires, the amount of the Employee's Basic Life Insurance in force on the day immediately preceding such date will be discontinued.  The Employee may exercise the conversion privilege in accordance with Article VI, Section 6.06.

    (b)    Employees Hired Prior to January 1, 1993 or Whose Service Date is prior to January 1, 1993, as Applicable

    Notwithstanding the provisions of subsection (b)(2) below, when calculating the amount of Continuing Life Insurance for an Employee eligible to participate in the Options! Program, the amount of insurance on the day immediately preceding the Employee's retirement effective date will be based on the Employee's Annual Base Salary as of the Employee's last day worked, rather than the Employee's Annual Base Salary on September 1, of the applicable plan year.

        (1)    Prior to Retirement

        The amount of Basic Life Insurance to which an Employee is entitled prior to retirement is as shown in Section 4.01 of this Article.

Art. IV, 4.02(b)(2)

(2)    Continuing Life Insurance After Retirement

On the date on which an Employee with ten or more Years of Participation retires (other than due to total and permanent disability), the amount of the Employee's Basic Life Insurance in force on the day immediately preceding such date will reduce to 1-1/2% of the amount in force times the number of Years of Participation, but in no event to less than $5,000, except as otherwise provided in subsection (b)(3)(i) herein. If an Employee retires under the provisions of the Delphi Retirement Program for Salaried Employees for total and permanent disability, such reduction will occur on the first day of the month following the month the Employee attains age 65. Such reduced amount is referred to as Continuing Life Insurance and will be continued thereafter until the death of the Employee, (except as set forth in Article V, Section 5.07 for a Flexible Service Employee).

(3)    General Provisions for Continuing Life Insurance

(i)    An Employee who last worked prior to January 1, 1994 but on or after October 1, 1990 and is otherwise eligible for Continuing Life Insurance after the earlier of age 65 or retirement will have a minimum amount of Continuing Life Insurance of $4,500 if such Employee's death occurs on or after January 1, 1993.   An Employee who last worked prior to October 1, 1990 but on or after November 1, 1987 and is otherwise eligible for Continuing Life Insurance after the earlier of age 65 or retirement will have a minimum amount of Continuing Life Insurance of $3,500 if such Employee's death occurs on or after October 1, 1990.   An Employee who last worked prior to November 1, 1987 and is otherwise eligible for Continuing Life Insurance after the earlier of age 65 or retirement will have a minimum amount of Continuing Life Insurance of $3,000 if such Employee's death occurs on or after November 1, 1987.

Art. IV, 4.02(b)(3)(ii)

(ii)     No Employee contributions for Continuing Life Insurance are required after attainment of age 65.

(iii)    Each retired Employee eligible for Continuing Life Insurance will be notified of the ultimate amount of such Life Insurance. Notification will be provided following retirement or commencement of reductions, as well as when the ultimate amount of Continuing Life Insurance is reached.

(iv)    An Employee who discontinues active work, whose insurance has started to reduce and who is otherwise eligible for Continuing Life Insurance may elect to cancel the remaining Continuing Life Insurance and exercise the conversion privilege in accordance with Article VI, Section 6.06.

(c)    Assignment

An Employee insured for Basic Life Insurance may transfer by absolute and irrevocable assignment, as a gift (a viatical assignment does not qualify as a gift), all the Employee's rights, title, interests and incidents of ownership, both present and future, under Basic Life Insurance.  No assignment will be binding upon the insurance company unless it is in a form acceptable to the insurance company and until it has been accepted and filed with the insurance company. The insurance company assumes no obligation as to the validity or sufficiency of any assignment.

An assignment made pursuant to the above will not destroy the right to the death benefits of a beneficiary (or beneficiaries) last designated prior to such assignment if the assignee does not revoke the interest of such beneficiary (or beneficiaries) and if such beneficiary (or beneficiaries) survives the Employee.

2004 Plan

Art. IV, 4.02(d)

(d)    Restoration (Options! Program)

(1)    Prior to Retirement

(i)    Automatic

An Employee eligible to participate in the Options! Program who is eligible for and has elected Basic Life Insurance in the amount of one times Annual Base Salary and who subsequently becomes ineligible to participate in the Options! Program will have the full amount of Basic Life Insurance automatically restored to 2 times Annual Base Salary on the following dates:

(aa)    the effective date of an approved non-disability leave,

(bb)    the day immediately following the date the Employee has been on an approved disability leave of absence for six months, or

(ii)    Elective

An Employee eligible to participate in the Options! Program who is eligible for and has elected Basic Life Insurance in the amount of one times Annual Base Salary may elect an amount of Basic Life Insurance equal to two times Annual Base Salary (the amount which otherwise would be provided under this Program). in accordance with the provisions of the Options! Program. Such an election may be made by the Employee:

(aa)    during the annual Options! Program enrollment period, or

(bb)    during the Options! Program plan year provided the

Art. IV, 4.02(d)(1)(ii)

> Employee notifies the Carrier within 31 days of a qualifying life event change.

    (2)    At Retirement

> For an Employee whose service date is prior to January 1, 1993, the full amount of the Employee's Basic Life Insurance will be automatically restored on the effective date of the Employee's retirement subject to the reductions set forth in Section 4.02(b)(2) of this Article, as applicable. For an Employee whose service date is on or after January 1, 1993, the Employee's Basic Life Insurance will cease in accordance with Article V, Section 5.08(b).

## 4.03 – Work-Related Accidental Death Benefit

    (a)    Amount of Benefit

        (1)    Employee Whose Service Date is Prior to January 1, 2001

> If an Employee, other than a Flexible Service Employee, while insured or prior to becoming insured for Basic Life Insurance, sustains bodily injuries, as a direct result of a covered accident, while on Corporation business which result in death within one year, a work-related accidental death benefit equal to 50% of Basic Life Insurance in force or that would have become in force, up to one times Annual Base Salary, will be paid.

        (2)    Employee Whose Service Date is On or After January 1, 2001

> If an Employee, other than a Flexible Service Employee, while insured or prior to becoming insured for Basic Life Insurance, sustains bodily injuries, as a direct result of a covered accident, while on Corporation business which result in death within one year, a work-related accidental death benefit equal to the amount of Basic Life Insurance in force or that would have become in force will be paid.

Art. IV, 4.03(a)

Work-related accidental death benefits are paid provided the death is not contributed to or caused, wholly or partly, directly or indirectly by:

(i)     disease or bodily or mental infirmity, or by medical or surgical treatment or diagnosis thereof, or

(ii)    any infection, except infection caused by an external visible wound accidentally sustained, or

(iii)   hernia, no matter how or when sustained, or

(iv)    war or any act of war, or

(v)     intentional self-destruction or intentionally self-inflicted injury, while sane or insane.

(b)     Notice and Proof of Claim

(1)     Written notice of work-related accidental death must be given to the Carrier within 20 days after the date of such death.  Proof of such death must be furnished within 90 days after the date of such death.

(2)     The Carrier will have the right to have an autopsy made where it is not forbidden by law.

(3)     No legal action will be brought to recover under the Program prior to the expiration of 60 days after proof of claim has been filed, nor will such action be brought at all unless brought within three years from the expiration of the time within which proof of claim is required.

Art. IV, 4.04

4.04 – <u>Payment of Basic Life Insurance Under the Accelerated Benefits Option</u>

    (a)      Requirements

        A terminally ill Employee or retiree who has a life expectancy not to exceed 12 months, supported by medical evidence satisfactory to the insurance company, may access a portion of Basic Life Insurance.

    (b)      Eligibility for Benefits

        An Employee or retiree is eligible for payment of an accelerated benefit if, at the time the Employee, retiree or a legal representative applies for the payment, Basic Life Insurance is in effect and the Employee or retiree meets the requirements specified in (a) above.

    (c)      Amount Available for Accelerated Benefit Payment

        The maximum amount of the accelerated benefit is 50% of the amount of the Basic Life Insurance in force as of the date the insurance company accepts that all requirements are met.

        If Basic Life Insurance will be reduced within twelve months of the date the accelerated benefit is approved, such payment will be limited to 50% of the fully reduced amount of coverage.

<u>In no event will an accelerated benefit be paid if such amount would be less that $1,000.</u>

Payment of an accelerated benefit will reduce the amount of Basic Life Insurance payable at death.  The total of the accelerated benefit payment and the amount payable at death may never exceed the amount which would have been payable without the accelerated benefit provision.

2004 Plan

Art. IV, 4.04(d)

(d)    Exclusions

An accelerated benefit will not be payable if (1) all or a portion of an Employee's or retiree's Basic Life Insurance is to be paid to a former spouse <u>and/or children</u> of the Employee as part of a divorce agreement; (2) the Employee or retiree is making contributions for Basic Life Insurance; (3) all or a portion of an Employee's or retiree's Basic Life Insurance is assigned to another party; or (4) a totally and permanently disabled Employee or retiree is <u>receiving a pay-out of</u>  their Basic Life Insurance benefits.

(e)    Notice and Proof of Claim

The benefit will be payable only following receipt of a claim form and certification acceptable to the Carrier from a physician confirming that the Employee or retiree meets the requirements in subsection (a) above.

The Carrier will have the right and opportunity to have medical examinations of the Employee or retiree made by a physician or physicians designated by it.  If such an examination is requested, the Carrier will pay the cost of the examination.

(f)    Payment of Accelerated Benefit

(1)    Accelerated benefits are payable only if the Employee or retiree is living when payment is made.  Accelerated benefits are payable in a lump-sum.  No other payment options are available.

(2)    An Employee or retiree may receive an accelerated benefit payment only once, regardless of the amount elected.

(3)    No accelerated benefits will be subject in any manner to assignment, pledge, attachment or encumbrance of any kind, nor subject to the debts or liability of any Employee or retiree except as set forth in Article VI, Section 6.04 of the Program.

Art. IV, 4.05

4.05 – <u>Payment of Basic Life Insurance and Work-Related Accidental Death Benefit</u>

(a)    The amount of Basic Life Insurance, less any amount paid in accordance with Section 4.04 of this Article, is payable to the beneficiary of record of the Employee in the event of death from any cause while the Employee is insured under the Program for Basic Life Insurance.  In the event of a work-related accidental death, the benefit is also payable to the beneficiary of record of the Employee if surviving the Employee, otherwise to the estate of the Employee.  Such work-related accidental death benefit will, in the absence of an election by the beneficiary of any other method of settlement, be payable with, and on the same basis as, the Basic Life Insurance of the Employee.

(b)    At the written request of the beneficiary, the Basic Life Insurance and work-related accidental death benefit, if any, will be paid either in a lump sum or in installments.  No installment settlement election will be valid if such settlement would result in installment payments of less than $10.00 each.

(c)    If the insurance is payable in installments and the beneficiary dies before all installments have been paid, the unpaid installments will be commuted at the rate of interest used in computing the amount of installment payments and paid in one lump sum to the estate of the beneficiary unless otherwise provided in the election of an installment settlement.

(d)    The Employee's insurance certificate will set forth the administrative provisions regarding the recording of beneficiary designations, changes of beneficiary and the procedure for payment of insurance in case there is no beneficiary living at the death of the Employee.

(e)    All insurance is term insurance without cash, loan or paid-up values.

Art. IV, 4.06

4.06 – Amount of Disability Benefits

     (a)    The amount of Sickness and Accident Benefits, Short-Term Disability Benefits, Extended Disability Benefits, and Long-Term Disability Benefits will be as set forth in the following schedules:

| SCHEDULE OF BENEFITS (In States With No Disability Benefits Laws) | |
| --- | --- |
| **SICKNESS AND ACCIDENT BENEFITS** | |
| **Applicable to** | **Benefit Amount** |
| Classified Employee and Flexible Service Employee whose service date is prior to January 1, 2001 | 75% of Monthly Base Salary as defined in Article II, Section 2.07, but not less than $370 per month for a full-time Employee[1,2] |
| Executive Employee | None |
| **SHORT-TERM DISABILITY BENEFITS** | |
| **Applicable to** | **Benefit Amount** |
| Classified Employee and Flexible Service Employee whose service date is on or after January 1, 2001 | 75% of Monthly Base Salary as defined in Article II, Section 2.07, but not less than $370 per month for a full-time Employee[2] |
| Executive Employee | None |
| [1] The amount of Sickness and Accident Benefits will be 60% of Monthly Base Salary for any period of disability occurring prior to the day the Employee attains one year Length of Service.<br><br>[2] If such amount of Sickness and Accident or Short-Term Disability Benefits is not a multiple of $1, such amount will be the next higher multiple of $1. | |

Art. IV, 4.06(a)

| SCHEDULE OF BENEFITS (In States With No Disability Benefits Laws) | |
|---|---|
| **EXTENDED DISABILITY BENEFITS** | |
| **Applicable to** | **Benefit Amount** |
| Classified Employee, and Executive Employee whose service date is prior to January 1, 2001 | 60% of Monthly Base Salary as defined in Article II, Section 2.07, but not less than $345 per month for a full-time Employee[1] |
| All Flexible Service Employees | None |
| **LONG-TERM DISABILITY BENEFITS** | |
| **Applicable to** | **Benefit Amount** |
| Classified Employee and Executive Employee whose service date is on or after January 1, 2001 | 60% of Monthly Base Salary as defined in Article II, Section 2.07, but not less than $345 per month for a full-time Employee[1] |
| All Flexible Service Employees | None |
| [1] *If such amount of Extended or Long-Term Disability Benefits is not a multiple of $1, such amount will be the next higher multiple of $1.* | |

(b)     The benefit amounts for a part-time Employee will be the amounts obtained by multiplying the ratio of the Employee's regularly scheduled hours in a week to the number of hours in the standard work week by the benefit amounts applicable to the Employee in accordance with the foregoing appropriate schedule.

Art. IV, 4.07

4.07 – <u>Sickness and Accident Benefits (Applicable to Employees whose service date is prior to January 1, 2001)</u>

    (a)    Eligibility for Benefits

If while covered for these benefits, an Employee becomes wholly and continuously disabled as a result of any injury or sickness so as to be prevented thereby from performing any and every duty of such Employee's occupation, and during the period of such disability is under treatment therefor by a physician legally licensed to practice medicine, the amount of monthly benefits for which the Employee is then covered will be paid to the Employee each month during the period the Employee is so disabled and under such treatment.  Notwithstanding the above, Sickness and Accident Benefits will be payable to an Employee who becomes wholly and continuously disabled as a result of undergoing surgery for sterilization purposes, or becomes confined as a registered bed patient in a legally constituted hospital for the purpose of undergoing testing to determine such Employee's suitability to be a donor for an organ or tissue transplant and, in either case, is otherwise eligible for such benefits.  In no case will such benefits be payable for the waiting period specified in subsection (b)(2) below.

The requirement that an Employee be under treatment by a physician legally licensed to practice medicine will be deemed to have been met if an Employee under treatment for alcohol or drug abuse in an inpatient, residential, day treatment or outpatient substance abuse treatment facility approved for benefits under the Delphi Health Care Program for Salaried Employees furnishes the Carrier with certification of disability, provided either by the facility's physician director or by a physician consultant selected by the facility, based on information furnished by, and upon the recommendation of, the therapist who is supervising the Employee's therapy.  For such certification to be acceptable, the physician director or physician consultant providing it must be a licensed doctor of medicine or osteopathy.

2004 Plan

Art. IV, 4.07(a)

> Effective January 1, 2004, the requirement that an Employee be under treatment by a physician legally licensed to practice medicine will be deemed to have been met if an Employee is under treatment by a physician assistant, provided the treatment is within the scope of his or her license.  Certification of disability must be provided by a legally licensed physician.

(b)    Duration and Commencement of Benefits

(1)    Sickness and Accident Benefits will be payable during total disability for a period equal, on a time for time basis, to the period of time from the Employee's most recent date of hire through and including the first day of disability or, if longer, the period equal to an Employee's credit for Years of Participation on the first day of disability, but in no case for more than 12 months for any one continuous period of disability, whether from one or more causes, or for successive periods of disability due to the same or related cause or causes.   However, if such Employee is confined as a registered bed patient in a legally constituted hospital or is receiving payments because of employment with the Corporation under any Workers Compensation Law or Act or any Occupational Disease Law or Act for the same disability at the date of expiration of the maximum period for which the Employee is entitled to receive Sickness and Accident Benefits, and such benefits were payable for less than 12 months, benefits will continue to be payable while the Employee continues to be so confined or while the Employee receives such payments, but in no case beyond the end of such 12-month period. Notwithstanding the fact that all the requirements of this subsection (b) and subsection (a) above have been met, in no case will Sickness and Accident Benefits be payable for the waiting period specified below.

(2)    The waiting period will be the first seven days of disability.

Art. IV, 4.07(c)

    (c)    Basis for Benefit Payments

Any Sickness and Accident Benefits due for the whole of a pay period will be the monthly benefit divided by the number of pay periods in the month.  Any such benefits due for periods other than the whole of the Employee's normal pay period will be such a proportion of the monthly benefit as the number of working days the Employee is disabled in such pay period bears to the entire number of working days in that month.  Working days, as used in the preceding sentence, will include only those in the base work week.

    (d)    Benefits for More Than One Absence

    (1)    If an Employee returns to work after receiving Sickness and Accident Benefits for less than 12 months and is again absent within three months for the same reason or some disability related to it, there is no waiting period for the rest of the 12-month period, if the Employee is disabled that long.

    (2)    If the second absence results from a different kind of sickness or injury, the first absence does not affect any possible future benefits.  If there are three months or more between two periods of disability, and the Employee returned to work for at least one day in the intervening period, the second period of disability will not be considered as being due to the same or related cause or causes as the first disability.

    (3)    In any event, if salary payments under the Corporation's salary continuation policy have been paid or are payable with respect to a prior period of disability due to the same or related cause or causes, but separated by less than three months from the second period of disability, the period for which such salary payments have been paid or are payable will be deemed to be a period for which Sickness and Accident monthly benefits were paid.

Art. IV, 4.07(e)

(e)    Occupational Disabilities

(1)    Benefits payable for any period will be reduced by any payments for time lost from work in that period to which the Employee is entitled under any Workers Compensation Law or Act or any Occupational Disease Law or Act.

(2)    No deductions will be made for any payments under such laws specifically for (i) hospitalization, (ii) medical expense, (iii) specific allowances for loss, or 100% loss of use, of a body member, (iv) disfigurements, (v) any portion of an award for a permanent partial disability for a work-related disability to which an Employee is entitled while working full time, or (vi) benefits for total disability due to pneumoconiosis, as defined on September 21, 1973 under the Federal Black Lung Benefits Act of 1972.

(f)    Unemployment Compensation

Benefits payable for any period will be reduced by any payments of unemployment benefits to which the Employee is entitled for that period under any Unemployment Compensation Law.

(g)    Weekly Benefits

For purposes of benefit payment, or reductions set forth herein, a monthly benefit will be equal to 4.33 weekly benefits.

(h)    Social Security

Sickness and Accident Benefits otherwise payable for any period of disability will be reduced by any Disability Insurance Benefits or Retirement Benefits (Primary Insurance Amount only) to which the Employee is entitled for the same period under the Federal Social Security Act or any future

Art. IV, 4.07(h)

legislation providing similar benefits, except Retirement Benefits reduced because of the age at which received.  The procedures for the reduction of such benefits are set forth in Appendix A hereof.

Any Disability Insurance Benefits or Retirement Benefits which are awarded retroactively will be treated as having been received by the Employee during the entire time period for which such benefits were payable and any overpayments of Sickness and Accident Benefits will be calculated accordingly.

The Carrier will have the right to periodically request recipients of Sickness and Accident Benefits to complete an authorization form allowing the Social Security Administration to advise the Carrier of the status of a claim for Social Security benefits.  Failure to complete and return such authorization within two weeks of the date of such request will result in the suspension of Sickness and Accident Benefit payments until receipt of the authorization.

(i)     Salary Continuation and Separation Payments

Sickness and Accident benefits otherwise payable are to be reduced by any payments made under the Corporation's salary continuation policy or any other payments that may be made in connection with any Corporation separation plan.

(j)     Non-Alienation

No Sickness and Accident monthly benefit payable will be subject in any manner to assignment, pledge, attachment or encumbrance of any kind, nor subject to the debts or liability of any Employee, except as set forth in Article VI, Section 6.04 of the Program.

Art. IV, 4.07(k)

(k)     Notice and Proof of Claim

(1)     Written notice of injury or sickness must be given to the Carrier within 20 days after the date of an accident causing such injury or the commencement of disability resulting from such sickness.  Proof of such injury or sickness must be furnished to the Carrier within 90 days after the termination of the period for which monthly benefits are payable under the Program.

The Carrier, upon receipt of the required notice, will furnish such forms as are usually furnished by it for filing proofs of claim.  If such forms are not received by the claimant within 15 days after the Carrier receives such notice, the claimant will be deemed to have complied with the requirements as to proof of claim upon submitting, within the time specified in the preceding paragraph for filing proofs of claim, written proof covering the occurrence, character and extent of the disability for which claim is made.

Failure to furnish notice or proof within the time provided above will not invalidate or reduce any claim if it was not reasonably possible to furnish such notice or proof and such notice or proof was furnished as soon as was reasonably possible.

(2)     The Carrier, at its own expense, will have the right to have such medical examinations of an Employee who is eligible to receive Sickness and Accident Benefits as it may reasonably require, made by a physician or physicians designated by such Carrier.  Failure to report for such examination may result in denial of such Benefits.

An Employee whose residence is more than 40 miles one way from the office where any such examination is to be made will be reimbursed, upon request, at a rate of 36 cents per mile for miles

Art. IV, 4.07(k)(2)

actually driven from such residence to such office and back, using the most direct route available.

(3)    No legal action will be brought by any Employee to recover from the Carrier prior to the expiration of 60 days after proof of claim has been filed in accordance with the requirements of the Program, nor will such action be brought at all unless brought within three years from the expiration of the time within which proof of claim is required under the Program.

(l)    Payment of Claim

(1)    Subject to due proof of claim, the monthly benefits will be paid to the Employee each month during any period of disability for which such benefits are payable and any balance remaining unpaid at the termination of such period will be paid immediately upon receipt of proof.

(2)    If disability is due to or accompanied by mental incapacity, all or any part of such monthly benefits may, at the option of the Carrier, be paid to the beneficiary of record of the Employee's Basic Life Insurance or to any other person or institution then, in the judgment of the Carrier, contributing toward or providing for the care or maintenance of the Employee.

(m)    Waiver

To receive retirement benefits under the provisions of the Delphi Retirement Program for Salaried Employees an Employee may waive irrevocably any right such Employee may have to receive Sickness and Accident Benefits with respect to any period of disability by completing a waiver form furnished by the Corporation for that purpose.  No Sickness and Accident Benefits will be payable for any period of disability covered by such waiver.

Art. IV, 4.08

4.08 – <u>Short-Term Disability Benefits (Applicable to Employees whose service date is on or after January 1, 2001)</u>

The provisions set forth in subsection 4.07 above will apply to this subsection 4.08 with the following exceptions:

(a)     Substitution of "Short-Term Disability Benefits" for "Sickness and Accident Benefits"

Short-Term Disability Benefits will be substituted for Sickness and Accident Benefits wherever it appears in Section 4.07 for the purposes of applying the provisions therein to this Section.

(b)     Duration and Commencement of Benefits

Subsection 4.07(b)(1) will be replaced with the following:

Short-Term Disability Benefits will be payable during total disability but in no case more than 6 months for any one continuous period of disability, whether from one or more causes, or for successive periods of disability due to the same or related cause or causes.  Notwithstanding the fact that all the requirements of this subsection (b) and subsection (a) above have been met, in no case will Short-Term Disability Benefits be payable for the waiting period specified below or following the Employee's termination of employment because of a quit or discharge.

(c)     Benefits for More Than One Absence

Subsection 4.07(d)(1) will be replaced with the following:

If an Employee returns to work after receiving Short-Term Disability Benefits for less than 6 months and is again absent within three months for the same reason or some disability related to it, there is no waiting period for the rest of the 6-month period, if the Employee is disabled that long.

Art. IV, 4.09

4.09 – <u>Extended Disability Benefits (Applicable to Employees whose service date is prior to
January 1, 2001)</u>

    (a)    Eligibility

Extended Disability Benefits coverage will be provided while an Employee is covered for Sickness and Accident Benefits coverage.  If while receiving Sickness and Accident Benefits an employee loses coverage for such benefits, due to termination of employment, (other than retirement) Extended Disability Benefits coverage will cease and benefits will not be payable.

An Employee with Extended Disability Benefits coverage who, at the date of expiration of the maximum period for which such Employee is entitled to receive (1) Sickness and Accident Benefits or (2) Salary Continuation payments, and during a continuous period of disability thereafter, is totally disabled will receive monthly Extended Disability Benefits for the period described in subsection (c) below.

For an Employee to be deemed totally disabled, such Employee must not be engaged in regular employment or occupation for remuneration or profit and, must be found to be wholly prevented from engaging in regular employment or occupation with the Corporation at the location where the Employee last worked for remuneration or profit as a result of bodily injury or disease, either occupational or non-occupational in cause.

No Extended Disability Benefit payable will be subject in any manner to assignment, pledge, attachment or encumbrance of any kind, nor subject to the debts or liability of any Employee except as set forth in Article VI, Section 6.04 of the Program.

2004 Plan

Art. IV, 4.09(b)

(b)    Amount of Benefit

(1)    The monthly Extended Disability Benefit is the applicable amount shown in the Schedule of Benefits in Section 4.06 of this Article reduced by an amount equal to the monthly equivalent of the total of the following benefits for which the person receiving Extended Disability Benefits is eligible:

(i)    Part A benefits and Part B supplementary benefits under the Delphi Retirement Program for Salaried Employees or any benefits under any other pension plan or retirement program then in effect to which the Corporation or any of its subsidiaries has contributed;

(ii)    Lost time benefits under any Workers Compensation Law or other law or act providing benefits for occupational injury or disease, including lump-sum settlements, but excluding specific allowances for loss, or 100% loss of use, of a body member or permanent partial disability payments for a work-related disability unrelated to the disability for which benefits under this Program are payable, and excluding benefits for total disability due to pneumoconiosis, as defined on September 21, 1973, under the Federal Black Lung Benefits Act of 1972;

(iii)    Disability or Retirement Benefits (Primary Insurance Amount only) to which the Employee is entitled under the Federal Social Security Act or any future legislation providing similar benefits, except Retirement Benefits reduced because of the age at which received;

(iv)    Benefits under any state or Federal law providing benefits for working time lost because of disability; and

2004 Plan

Art. IV, 4.09(b)(1)(v)

    (v)     Any payments made under the Corporation's salary continuation policy or any other payments that may be made in connection with any Corporation separation plan.

(2)    In determining the amount by which Extended Disability Benefits are reduced:

    (i)     The monthly equivalent of benefits paid on a weekly basis is computed by multiplying the weekly benefit rate by 4.33;

    (ii)    Lump-sum settlements under state Workers Compensation Laws result in reductions equal to the monthly equivalent of the amount of the Workers Compensation benefit to which the Employee would have been entitled under the applicable law had there been no lump-sum payment, but not to exceed in total the amount of the settlement.  The amount of such settlement will be allocated to days of disability for which compensation has not   previously been paid, in chronological order until such amount has been fully allocated, at the rate of one-seventh of the weekly Workers Compensation benefit which would have been applicable under the state law if the claim had been allowed and if there had been no lump-sum settlement; and

    (iii)   The amount of monthly Extended Disability Benefit will not be reduced by any increase in an Employee's benefit under subsection (b)(1) above that is effective subsequent to the first day for which an Employee's Extended Disability Benefit is reduced because of receipt of such benefit.  However, the amount of Extended Disability Benefit will be reduced by any such increase which represents an adjustment in the original determination of the amount of the Employee's benefit under subsection (b)(1).

Art. IV, 4.09(b)(3)

(3)     Extended Disability Benefit computations presume eligibility for Social Security Disability Insurance Benefits and for disability benefits under any pension plan or retirement program then in effect to which the Corporation has contributed, but excluding any Part B primary benefits under the Delphi Retirement Program for Salaried Employees. However, such presumption of pension plan and retirement program benefits will not be made with respect to any Extended Disability Benefit payments due for the 12-month period immediately following the date of expiration of the maximum number of months for which the Employee is entitled to receive Sickness and Accident Benefits or the date of expiration of salary continuation payments under the Corporation's salary continuation policy, whichever is later.  Amounts deducted from Extended Disability Benefits on this basis are paid upon presentation of satisfactory evidence that these benefits were applied for and denied; provided, however, that a reduction in Extended Disability Benefits is made in an amount equal to Social Security Disability Insurance Benefits that would have been payable except for refusal to accept vocational rehabilitation services.

The procedures for the reduction of Extended Disability Benefits by certain Social Security Benefits are set forth in Appendix A hereof.

(4)     Benefits payable for less than a full calendar month are prorated on the basis of the ratio of calendar days of eligibility to total calendar days in the month.

(5)     The Carrier may require each applicant or recipient of Extended Disability Benefits to certify or furnish verification of the amounts of such applicant's or recipient's income from sources listed in subsection (b)(1) above.  Further, the Carrier will have the right to periodically request recipients of Extended Disability Benefits to complete an authorization form allowing the Social Security Administration to advise the Carrier of the status of a claim for Social

Art. IV, 4.09(b)(5)

Security benefits.  Failure to complete and return such authorization within two weeks of the date of such request will result in the suspension of Extended Disability Benefit payments until receipt of the authorization.

(6)    Any benefits described in subsection (b)(1) above which are awarded retroactively will be treated as having been received by the Employee during the entire time period for which such benefits were payable and any overpayments of Extended Disability Benefits will be calculated accordingly.

(c)    Commencement and Duration of Benefits

(1)    Extended Disability Benefits to an eligible Employee will be for the period commencing the day following the last day of disability included within the period for the maximum number of monthly Sickness and Accident Benefits, including months in which such Sickness and Accident Benefits were partially or wholly offset because of receipt of Workers Compensation benefits or expiration of salary continuation payments, whichever is later.

(2)    The maximum period during which Extended Disability Benefits may be payable will be:

(i)    in the case of an Employee who has ten or more Years of Participation as of the day on which disability commenced, the number of months commencing with the month in which the date of the expiration of the maximum number of monthly Sickness and Accident Benefits or salary continuation payments, as applicable, occurs and terminating with the end of the month in which the Employee attains age 65; and

2004 Plan

Art. IV, 4.09(c)(2)(ii)

(ii)     in the case of an Employee who has less than ten Years of
Participation as of the day on which disability commenced, the
number of months by which the Employee's Years of
Participation at commencement of disability exceed the
maximum number of months for which the Employee is entitled
to receive Sickness and Accident Benefits or salary continuation
payments, as applicable.

In any event, Extended Disability Benefits will not be payable beyond
the date of the Employee's death, the end of the month in which the
Employee attains age 65, or the date the Employee no longer satisfies
the disability requirement, except that if the Employee becomes
disabled at or after age 63 and subsequently becomes eligible for
Extended Disability Benefits, such benefits will be payable in
accordance with the following schedule:

| AGE AT COMMENCEMENT OF DISABILITY | | MAXIMUM DURATION OF EXTENDED DISABILITY BENEFITS |
|---|---|---|
| **EMPLOYEE IS** | **BUT LESS THAN** | |
| 63 and 0 months | 68 and 1 month | 12 months |
| 68 and 1 month | 68 and 2 months | 11 months |
| 68 and 2 months | 68 and 3 months | 10 months |
| 68 and 3 months | 68 and 4 months | 9 months |
| 68 and 4 months | 68 and 5 months | 8 months |
| 68 and 5 months | 68 and 6 months | 7 months |
| 68 and 6 months and older | | 6 months |

An Employee who has less than ten Years of Participation as of the day
on which disability commenced and who is both eligible for and enrolled
in the Supplemental Extended Disability Benefits coverage offered in
conjunction with the Options! Program, will, for the purpose of
determining the maximum duration of such Supplemental Extended
Disability Benefits following Extended Disability Benefits, be deemed to
have ten Years of Participation at the commencement of disability.

Art. IV, 4.09(c)(2)

If an Employee's return to work with the Corporation does not qualify the Employee for a new period of Sickness and Accident Benefits or if the Employee engages in some gainful occupation or employment other than one for which the Employee is reasonably qualified by education, training or experience, the Employee's satisfying of the disability requirement will not be deemed to end, but the Employee's Extended Disability Benefits will be suspended for the period of the return to work or the period the Employee engages in such occupation or employment.

(3)     If monthly Extended Disability Benefits payable to an Employee are discontinued because the Employee no longer satisfies the disability requirement, and within two weeks of the effective date of such discontinuance and before the Employee returns to work with the Corporation, the Employee again becomes disabled so as to satisfy the disability requirement, monthly Extended Disability Benefits will be resumed.

(4)     For purposes of applying the maximum period for monthly Extended Disability Benefits, a month in which such benefits are partially or wholly offset by benefit payments from sources listed in subsection (b)(1), suspended under subsection (c)(2), or not paid between periods of disability under circumstances described under subsection (c)(3), is counted as a full month.  Fractions of the first and last month are counted as fractions of a month.

(5)     The cumulative total number of months during any previous periods of eligibility for Extended Disability Benefits, regardless of whether for the same or related disabling condition, reduces the maximum number of monthly benefit payments for which the individual is otherwise eligible under subsection (c)(2)(ii) when Extended Disability Benefits again commence.

2004 Plan

Art. IV, 4.09(c)(6)

(6)    If disability is due to or accompanied by mental incapacity, all or any part of such monthly Extended Disability Benefits may, at the option of the Carrier, be paid to the beneficiary of record of the Employee's Basic Life Insurance or to any other person or institution then in the judgment of the Carrier contributing toward or providing for the care or maintenance of the Employee.

(d)    Rehabilitation

There is no ineligibility for Extended Disability Benefits because of work which is determined to be primarily for training under a recognized program of vocational rehabilitation.

(e)    Proof of Disability

The Carrier, at its own expense, may require an Employee, as a condition of eligibility, to submit to examinations by a physician designated by such Carrier for the purpose of determining such applicant's initial or continuing disability. An Employee whose residence is more than 40 miles one way from the office where any such examination is to be made will be reimbursed, upon request, at the rate of 36 cents per mile for miles actually driven from such residence to such office and back, using the most direct route available.

(f)    Employees Not Covered (Flexible Service)

Extended Disability Benefits will not be provided for a Flexible Service Employee.

(g)    Supplemental Extended Disability Benefits

An Employee who has at least 13 months but less than ten Years of Participation as of the day on which disability commenced and who is both eligible for and enrolled in Supplemental Extended Disability Benefits

2004 Plan

Art. IV, 4.09(g)

coverage offered in conjunction with the Options! Program is eligible for Supplemental Extended Disability Benefit payments provided:

- - the Employee was eligible for Extended Disability Benefits and such benefits have been exhausted;

- - disability first begins after the Employee becomes covered for Supplemental Extended Disability Benefits under the Options! Program; and

- - the Employee makes at least one pre-tax contribution for Supplemental Extended Disability Benefits under the Options! Program during the plan year in which disability first begins.

(1)    Amount of Benefit

The provisions of Section 4.09 of this Article IV, applicable to Extended Disability Benefits apply equally to Supplemental Extended Disability Benefits except the monthly amount is determined using the Employee's Annual Base Salary as of September 1 of the year prior to the Employee's first day of disability.  This amount is reduced by an amount equal to the monthly equivalent of the total of the benefits described in Section 4.09(b) of this Article IV.  Supplemental Extended Disability Benefits will not be reduced by any increase in the benefits described in Section 4.09(b) of this Article IV, except in the case of an original determination or an adjustment in an original determination as provided for under Section 4.09(b) of this Article IV.

(2)    Commencement and Duration of Benefits

Supplemental Extended Disability Benefits are payable commencing with the day following the day Extended Disability Benefits cease. For purposes of determining the maximum duration of such benefits,

Art. IV, 4.09(g)(2)

> an Employee will be deemed to have ten <u>Y</u>ears of <u>P</u>articipation at the commencement of disability.  Benefits will be paid in accordance with subsection (c) above.

4.10 – <u>Long–Term Disability Benefits (Applicable to Employees whose service date is on or after January 1, 2001)</u>

(a)    Eligibility

> (1)    Long-Term Disability Benefit coverage is an optional benefit that is fully Employee paid.  Enrollment is automatic unless the Employee elects to waive coverage during the Options! Program annual enrollment.  If an Employee waives coverage and later wishes to enroll during the Options! Program annual enrollment, proof of good health will always be required, as set forth in subsection (b) below.

> (2)    If while receiving Short-Term Disability Benefits, an Employee loses coverage for such benefits, due to termination of employment, (other than retirement), Long-Term Disability Benefits will cease and benefits will not be payable.

> (3)    An Employee with Long-Term Disability Benefits coverage who, at the date of expiration of the maximum period for which such Employee is entitled to receive Short-Term Disability Benefits or salary continuation payments, and during a continuous period of disability thereafter, is totally disabled will receive monthly Long-Term Disability Benefits for the period described in subsection (d) below.

> (4)    For an Employee to be deemed totally disabled, such Employee must not be engaged in regular employment or occupation for remuneration or profit and, must be found to be wholly prevented from engaging in regular employment or occupation with the

Art. IV, 4.10(a)(4)

Corporation at the location where the Employee last worked for remuneration or profit as a result of bodily injury or disease, either occupational or non-occupational in cause.

(5)    No Long-Term Disability Benefit payable will be subject in any manner to assignment, pledge, attachment or encumbrance of any kind, nor subject to the debts of liability of any Employee except as set forth in Article VI, Section 6.04 of the Program.

(b)    Effective Date and Proof of Good Health for Late Enrollments

If an Employee waives Long-Term Disability Benefit coverage and later decides to enroll for such coverage during the Options! Program annual enrollment, the Employee must furnish proof satisfactory to the Carrier of the Employee's good health.  Coverage will become effective on January 1 of the next plan year or the first day of the calendar month next following the date the Carrier approves such proof, if later.

For coverage to become effective, an Employee must be Actively at Work on the date the coverage would become effective.  If the Employee is not Actively at Work on such date, the coverage becomes effective on the date the Employee returns to active work, provided the Employee then is still eligible.

(c)    Amount of Benefit

(1)    The monthly Long-Term Disability Benefit is the applicable amount shown in the Schedule of Benefits in Section 4.06 of this Article reduced by an amount equal to the monthly equivalent of the total of the following benefits for which the person receiving Long-Term Disability Benefits is eligible:

(i)    Part A benefits and Part B supplementary benefits under the Delphi Retirement Program for Salaried Employees which the

2004 Plan

Art. IV, 4.10(c)(1)(i)

           Employee qualified for prior to January 1, 2001, or any benefits under any other pension plan or retirement program then in effect to which the Corporation or any of its subsidiaries has contributed other than Part C of the Delphi Retirement Program for Salaried Employees;

(ii)    Lost time benefits under any Workers Compensation Law or other law or act providing benefits for occupational injury or disease, including lump-sum settlements, but excluding specific allowances for loss, or 100% loss of use, of a body member or permanent partial disability payments for a work-related disability unrelated to the disability for which benefits under this Program are payable, and excluding benefits for total disability due to pneumoconiosis, as defined on September 21, 1973, under the Federal Black Lung Benefits Act of 1972;

(iii)    Disability or Retirement Benefits (Primary Insurance Amount only) to which the Employee is entitled under the Federal Social Security Act or any future legislation providing similar benefits, except Retirement Benefits reduced because of the age at which received;

(iv)    Benefits under any state or Federal law providing benefits for working time lost because of disability; and

(v)    Payments under the Separation Allowance Plan

(2)    In determining the amount by which Long-Term Disability Benefits are reduced:

(i)    The monthly equivalent of benefits paid on a weekly basis is computed by multiplying the weekly benefit rate by 4.33;

           2004 Plan

Art. IV, 4.10(c)(2)(ii)

        (ii)     Lump-sum settlements under state Workers Compensation Laws result in reductions equal to the monthly equivalent of the amount of the Workers Compensation benefit to which the Employee would have been entitled under the applicable law had there been no lump-sum payment, but not to exceed in total the amount of the settlement.  The amount of such settlement will be allocated to days of disability for which compensation has not previously been paid, in chronological order until such amount has been fully allocated, at the rate of one-seventh of the weekly Workers Compensation benefit which would have been applicable under the state law if the claim had been allowed and if there had been no lump-sum settlement; and

        (iii)    The amount of monthly Long-Term Disability Benefit will not be reduced by any increase in an Employee's benefit under subsection (c)(1) above that is effective subsequent to the first day for which an Employee's Long-Term Disability Benefit is reduced because of receipt of such benefit.  However, the amount of Long-Term Disability Benefit will be reduced by any such increase which represents an adjustment in the original determination of the amount of the Employee's benefit under subsection (c)(1).

    (3)     Long-Term Disability Benefit computations presume eligibility for Social Security Disability Insurance Benefits.  Amounts deducted from Long-Term Disability Benefits on this basis are paid upon presentation of satisfactory evidence that these benefits were applied for and denied; provided, however, that a reduction in Long-Term Disability Benefits is made in an amount equal to Social Security Disability Insurance Benefits that would have been payable except for refusal to accept vocational rehabilitation services.

Art. IV, 4.10(c)(3)

The procedures for the reduction of Long-Term Disability Benefits by certain Social Security Benefits are set forth in Appendix A hereof.

(4)     Benefits payable for less than a full calendar month are prorated on the basis of the ratio of calendar days of eligibility to total calendar days in the month.

(5)     The Carrier may require each applicant or recipient of Long-Term Disability Benefits to certify or furnish verification of the amounts of such applicant's or recipient's income from sources listed in subsection (c)(1) above.  Further, the Carrier will have the right to periodically request recipients of Long-Term Disability Benefits to complete an authorization form allowing the Social Security Administration to advise the Carrier of the status of a claim for Social Security benefits.  Failure to complete and return such authorization within two weeks of the date of such request, will result in the suspension of Long-Term Disability Benefit payments until receipt of the authorization.

(6)     Any benefits described in subsection (c)(1) above which are awarded retroactively will be treated as having been received by the Employee during the entire time period for which such benefits were payable and any overpayments of Long-Term Disability Benefits will be calculated accordingly.

(d)     Commencement and Duration of Benefits

(1)     Long-Term Disability Benefits to an eligible Employee will be for the period commencing the day following the last day of disability included within the period for the maximum number of monthly Short-Term Disability Benefits, including months in which such Short-Term Disability Benefits were partially or wholly offset because of receipt of Workers Compensation benefits or expiration of salary continuation payments, whichever is later.

2004 Plan

Art. IV, 4.10(d)(2)

(2)    The maximum period during which Long-Term Disability Benefits may be payable are until the Employee is no longer disabled but not beyond age 65.  If the Employee becomes disabled at age 63, the Employee may receive Long-Term Disability Benefits for a period of time beyond age 65.

In any event, Long-Term Disability Benefits will not be payable beyond the date of the Employee's death, the end of the month in which the Employee attains age 65, the date the Employee quits or is discharged, or the date the Employee no longer satisfies the disability requirement, except that if the Employee becomes disabled at or after age 63 and subsequently becomes eligible for Long-Term Disability Benefits, such benefits will be payable in accordance with the following schedule:

| AGE AT COMMENCEMENT OF DISABILITY | | MAXIMUM DURATION OF LONG-TERM DISABILITY BENEFITS |
|---|---|---|
| EMPLOYEE IS | BUT LESS THAN | |
| 63 and 0 months | 68 and 1 month | 12 months |
| 68 and 1 month | 68 and 2 months | 11 months |
| 68 and 2 months | 68 and 3 months | 10 months |
| 68 and 3 months | 68 and 4 months | 9 months |
| 68 and 4 months | 68 and 5 months | 8 months |
| 68 and 5 months | 68 and 6 months | 7 months |
| 68 and 6 months and older | | 6 months |

If an Employee's return to work with the Corporation does not qualify the Employee for a new period of Short-Term Disability Benefits or if the Employee engages in some gainful occupation or employment other than one for which the Employee is reasonably qualified by education, training or experience, the Employee's satisfying of the disability requirement will not be deemed to end, but the Employee's Long-Term Disability Benefits will be suspended for the period of the return to work or the period the Employee engages in such occupation or employment.

Art. IV, 4.10(d)(3)

(3)     If monthly Long-Term Disability Benefits payable to an Employee are discontinued because the Employee no longer satisfies the disability requirement, and within two weeks of the effective date of such discontinuance and before the Employee returns to work with the Corporation, the Employee again becomes disabled so as to satisfy the disability requirement, monthly Long-Term Disability Benefits will be resumed.

(4)     If disability is due to or accompanied by mental incapacity, all or any part of such monthly Long-Term Disability Benefits may, at the option of the Carrier, be paid to the beneficiary of record of the Employee's Basic Life Insurance or to any other person or institution then in the judgment of the Carrier contributing toward or providing for the care or maintenance of the Employee.

(e)     Rehabilitation

There is no ineligibility for Long-Term Disability Benefits because of work which is determined to be primarily for training under a recognized program of vocational rehabilitation.

(f)     Proof of Disability

The Carrier, at its own expense, may require an Employee, as a condition of eligibility, to submit to examinations by a physician designated by such Carrier for the purpose of determining such applicant's initial or continuing disability.  An Employee whose residence is more than 40 miles one way from the office where any such examination is to be made will be reimbursed, upon request, at the rate of 36 cents per mile for miles actually driven from such residence to such office and back, using the most direct route available.

2004 Plan

Art. IV, 4.10(g)

(g)   Employees Not Covered (Flexible Service)

Long-Term Disability Benefits will not be provided for a Flexible Service Employee.

4.11 – Optional Life Insurance

(a)   Eligibility

An Employee as defined in Article II, Section 2.05 who is insured for Basic Life Insurance described in Section 4.02 of this Article, except an Employee who is eligible for, and has elected an amount of Basic Life Insurance equal to one times Annual Base Salary in accordance with the Options! Program, will become eligible for Optional Life Insurance as follows:

(1)   An Employee whose service date is prior to January 1, 2001, will become eligible for Optional Life Insurance on such date or the first day of the third month next following the month in which employment with the Corporation commences, if later.

(2)   An Employee whose service date is on or after January 1, 2001, will become eligible for Optional Life Insurance on the first day of the second month next following the month in which employment with the Corporation commences.

Effective October 15, 2005, an executive Employee whose Supplemental Life Benefits has ceased, or will cease, due to retirement, will have a one-time opportunity to enroll in or increase Optional Life Insurance as indicated in subsection (c) below.

The date the Employee becomes eligible for Optional Life Insurance will be referred to hereinafter as the Employee's eligibility date.

Art. IV, 4.11(b)

(b)     Enrollment and Effective Dates

(1)     Employee Whose Service Date is Prior to January 1, 2001

An eligible Employee may enroll for Optional Life Insurance when first eligible, during the annual enrollment period, or due to a qualifying life event change.

(i)      If the Employee's enrollment form is received by the Carrier on or before the Employee's eligibility date, insurance becomes effective on the eligibility date.

(ii)     If the Employee's enrollment form is received by the Carrier during the 31-day period following the Employee's eligibility date, or in the case of an Employee who was on a leave of absence on such eligibility date and subsequently returns to work, during the 31-day period following the date of return to work, the insurance becomes effective on the first day of the calendar month next following the date the Employee's enrollment form is received, provided the Employee is then Actively at Work.

(2)     Employee Whose Service Date is On or After January 1, 2001

An eligible Employee may enroll for Optional Life Insurance when first eligible, during the annual enrollment period, or due to a qualifying life event change.

The Employee's Optional Life Insurance in amounts of $600,000 or less will become effective as set forth in subsection (b)(1)(i) and  (b)(1)(ii), above.

Effective January 1, 2005, if an Employee elects an amount of Optional Life Insurance that exceeds $600,000 the Employee must furnish proof satisfactory to the Carrier of the Employee's good health.

Art. IV, 4.11(b)(2)

> Insurance amounts in excess of $600,000 will become effective the first day of the calendar month next following the date the Carrier approves such proof.

If the Employee's enrollment form is received by the Carrier after the periods set forth above, the Employee may enroll or increase coverage during the annual enrollment period or if the Employee has a qualifying life event. The Employee must furnish proof satisfactory to the Carrier (i) of the Employee's good health, or (ii) that the Employee has had an increase in family status. The Employee's election form must be received during the annual enrollment period or within the 31-day period provided for a qualifying life event.

(i)     If the Employee is enrolling during the annual enrollment period, insurance will become effective on the later of January 1 following the annual enrollment or the first day of the calendar month next following the date the Carrier approves such proof, provided that in the case of (ii) above, the increase in family status still is in existence.

(ii)    If the Employee is enrolling due to a qualifying life event, insurance will become effective on the first day of the calendar month next following the date the Carrier approves such proof, provided that in the case of (ii) above, the increase in family status still is in existence.

In any event, for an Employee to become insured initially or for a higher amount of insurance, such Employee must be Actively at Work on the date the insurance or higher amount of insurance otherwise would become effective.  If the Employee is not Actively at Work on such date, the Insurance or higher amount of insurance becomes effective on the date the Employee returns to active work, provided the Employee then is still eligible as set forth in subsection (a) above.

If the Employee becomes insured for Optional Life Insurance and enrolls for a lower amount of insurance during the annual enrollment period or due to a qualifying life event, the Employee will become insured for such lower amount of insurance

Art. IV, 4.11(b)

on January 1 following the annual enrollment or on the first day of the calendar month next following the month in which the Employee's enrollment form is received within the 31-day period provided for a qualifying life event.    Such lower amount of insurance will become effective whether or not the Employee is Actively at Work.

(c)    Enrollment and Effective Dates for Retired Executive Employees On or After October 15, 2005

(1)    Executive Employees Who Retired Prior to October 15, 2005

(i)    An executive Employee who retired prior to October 15, 2005, and who was not enrolled in Optional Life Insurance prior to retirement, will be given a one-time opportunity, as determined by the Corporation, to elect an amount of Optional Life Insurance as indicated in subsection (d) below.  The Employee's election form must be received within the 31-day period provided for this one-time enrollment, and the Employee must furnish proof satisfactory to the Carrier of the Employee's good health. Insurance will become effective on the first day of the calendar month next following the date the Carrier approves such proof.

(ii)    An executive Employee who retired prior to October 15, 2005, and who was already enrolled in Optional Life Insurance, will be given a one-time opportunity, as determined by the Corporation, to increase coverage up to an amount of coverage as indicated in subsection (d) below.  The Employee's election form must be received within the 31-day period provided for this one-time enrollment, and the Employee must furnish proof satisfactory to the Carrier of the Employee's good health.  Any increase in coverage will become effective on the first day of the calendar month next following the date the Carrier approves such proof.

2004 Plan

Art. IV, 4.11(c)(2)

(2)   Executive Employees Who Retire On and After October 15, 2005

(i)   An executive Employee who retires on or after October 15, 2005, and who is not enrolled in Optional Life Insurance on the date of retirement, will be given a one-time opportunity to elect an amount of Optional Life Insurance as indicated in subsection (d) below.  The Employee's election form must be received within the 31-day period provided for this one-time enrollment, and the Employee must furnish proof satisfactory to the Carrier of the Employee's good health.  Insurance will become effective on the first day of the calendar month next following the date the Carrier approves such proof.

(ii)   An executive Employee who retires on or after October 15, 2005, and who is already enrolled in Optional Life Insurance on the date of retirement, will be given a one-time opportunity to increase coverage up to an amount of coverage as indicated in subsection (d) below.  The Employee's election form must be received within the 31-day period provided for this one-time enrollment, and the Employee must furnish proof satisfactory to the Carrier of the Employee's good health.  Any increase in coverage will become effective on the first day of the calendar month next following the date the Carrier approves such proof.

No Employee will be eligible to elect or increase coverage after the time periods specified above.  However, if the Employee becomes insured for Optional Life Insurance and wishes to enroll for a lower amount of insurance, the Employee may do so on an enrollment form provided by the Carrier.  The Employee will become insured for such lower amount of insurance on the first day of the calendar month next following the month in which the Employee's enrollment form is received.

2004 Plan

Art. IV, 4.11(d)

    (d)    Amount of Insurance

        (1)    Schedule_s of Insurance

An Employee may elect an amount of Optional Life Insurance as set forth in the following schedule_s:

*Note: Prior to January 1, 2006, an Employee who resides in Texas could not elect an amount of Optional Life Insurance which, when combined with Basic Life Insurance, exceeded seven (7) times their Annual Base Salary. This limitation was repealed effective January 1, 2006*

| OPTIONAL LIFE INSURANCE | |
|---|---|
| **Applicable to** | **Benefit Amount** |
| Employee whose service date is prior to January 1, 2001 | 1x, 2x, 3x, 4x, 5x, 6x[1], 7x[1] or 8x[1] Employee's Annual Base Salary<br><br>*(If the amount selected is not a multiple of $100, the amount of coverage will be the next higher multiple of $100.)* |
| Employee whose service date is on or after January 1, 2001 | $100,000, $200,000, $300,000, $400,000, $500,000 $600,000, $700,000[2], $800,000[2], $900,000[2] or $1,000,000[2] |
| *(1) Amounts effective as of January 1, 2006.*<br><br>*(2) Amounts effective as of January 1, 2005. As of January 1, 2006, elections in excess of $600,000 cannot exceed 10 times Annual Base Salary.* | |

2004 Plan

Art. IV, 4.11(d)(1)

| ADDITIONAL OPTIONAL LIFE INSURANCE AVAILABLE TO RETIRED EXECUTIVES EFFECTIVE OCTOBER 15, 2005 | |
| --- | --- |
| **Applicable to** | **Benefit Amount** [3] |
| Employee placed in an executive position prior to January 1, 1989 | 1x, 2x, or 3x Employee's Annual Base Salary[4] as of retirement date |
| Employee placed in an executive position on or after January 1, 1989 | 1x Employee's Annual Base Salary[4] as of retirement date |
| *[3] The amount elected by an uninsured retired executive Employee cannot exceed the available options, nor can the increased amount elected by a retired executive Employee who is already insured exceed the plan maximum in effect as of the date of retirement.*<br><br>*[4] If the amount selected is not a multiple of $100, the amount of Optional Life Insurance will be the next higher multiple of $100.* | |

    (2)    Amounts of Optional Life Insurance

        (i)    Prior to Retirement

The amount of the Employee's Optional Life Insurance prior to retirement will be the amount elected by the Employee in accordance with item (1) above.

For Employees who are not eligible to participate in the Options! Program, and whose election is based on Annual Base Salary, any increase in the amount of the Employee's insurance because of an increase in the Employee's Annual Base Salary will become effective on the date of such salary increase and any decrease in the amount of insurance because of a reduction in the Employee's Annual Base Salary will become effective on the first day of the calendar month next following the date of such salary reduction provided, in any case, the Employee is Actively at Work on the date of such salary increase or, in the case of salary reduction, on such first day of the month. If the Employee is not Actively at Work on the date an increase or

Art. IV, 4.11(d)(2)(i)

decrease in the amount of insurance would otherwise become effective, such increase or decrease will become effective on the date the Employee returns to active work.

For Employees who are eligible to participate in the Options! Program, an increase or decrease in the amount of insurance because of an increase or decrease in the Employee's Annual Base Salary will become effective on January 1 of the following Options! Program plan year provided the Employee is Actively at Work. If the Employee is not Actively at Work on the date an increase or decrease in the amount of insurance would otherwise become effective, such increase or decrease will become effective on the date the Employee returns to active work.

(ii)   After Retirement

If the Employee retires prior to age 66, the amount of insurance in force on account of the Employee as of the last day of the calendar month during which the Employee attained age 66 will be reduced on the first day of the calendar month following the calendar month in which the Employee attains age 66, and on each following anniversary of such date, by 10% of the amount of Optional Life Insurance in force on the Employee's 66th birthday, until the insurance ceases following the Employee's 75th birthday.

If the Employee retires after age 66, the Optional Life Insurance in force on account of the Employee, as of the day immediately preceding the Employee's retirement date, will be immediately reduced to the amount in the following schedule based upon the Employee's age at retirement. A 10% reduction will occur on the first of the month following the retiree's birthday and annually thereafter.

Art. IV, 4.11(d)(2)(ii)

If an executive Employee retires after age 66, and elects or

increases Optional Life Insurance as provided for in subsection (d)(1) above, such elected amount of coverage (or increase in coverage) will be subject to reduction as follows:

(aa)    If an executive Employee is uninsured upon retirement and enrolls in Optional Life Insurance, the amount elected will be immediately reduced to the amount in the following schedule, based upon the Employee's age as of the effective date of coverage. A 10% reduction will occur on the first of the month following the retiree's birthday and annually thereafter.

(bb)    If an executive Employee is already insured for Optional Life Insurance and elects to increase coverage upon retirement, the increased amount of coverage will be immediately reduced to the amount in the following schedule, based upon the Employee's age as of the effective date of the increase in coverage. Thereafter, the 10% reduction of the total amount of coverage in force will continue annually on the first of the month following the retiree's birthday as stated in this subsection above.

Art. IV, 4.11(d)(2)(ii)

| Optional Life Insurance Reduction | |
|---|---|
| Age at Retirement | Percentage of Insurance In Effect on The Employee's Retirement Date |
| 66 | 90% |
| 67 | 80% |
| 68 | 70% |
| 69 | 60% |
| 70 | 50% |
| 71 | 40% |
| 72 | 30% |
| 73 | 20% |
| 74 | 10% |
| 75 | 0 |

No insurance is provided on and after the month in which the Employee attains age 75.

(e)    Contributions

The Employee will contribute the full cost of Optional Life Insurance. Contributions will be payable monthly in advance and, where possible, from any monies then payable to the Employee in the form of wages or benefits payable under a Delphi benefit plan.

The required monthly contribution is established by the Carrier for each plan year and is subject to change.

For Employees eligible to participate in the Options! Program, the amount of the monthly contribution will be based on the Employee's age as of December 31 of the applicable Options! Program plan year.

For all other Employees, the monthly contribution will be based on the Employee's age as of the effective date of coverage.  When the Employee attains a birthday, which places the Employee in a higher age bracket, the monthly contribution will change on the first day of the calendar month next

Art. IV, 4.11(e)

following the month in which such birthday occurs. If the amount of the Employee's Optional Life Insurance is changed because of a change in Annual Base Salary, the monthly contribution will automatically change on the date such change in the amount of insurance becomes effective.

(f)    Payment of Optional Life Insurance

(1)    The amount of Optional Life Insurance is payable to the beneficiary of record of the Employee in the event of death from any cause while the Employee is insured under the Program for Optional Life Insurance. In the absence of a designated beneficiary for Optional Life Insurance, such insurance will be paid to the last designated beneficiary of record of the Employee for Basic Life Insurance.

(2)    At the written request of the beneficiary, Optional Life Insurance will be paid either in a lump sum or in installments. No installment settlement election will be valid if such settlement would result in installment payments of less than $10.00 each.

(3)    If the insurance is payable in installments and the beneficiary dies before all installments have been paid, the unpaid installments will be commuted at the rate of interest used in computing the amount of installment payments, and paid in one lump sum to the estate of the beneficiary unless otherwise provided in the election of an installment settlement.

(4)    The Employee's insurance certificate will set forth the administrative provisions regarding the recording of beneficiary designations, changes of beneficiary and the procedure for payment of insurance in case there is no beneficiary living at the death of the Employee.

(5)    This insurance is term insurance without cash, loan or paid-up values.

2004 Plan

Art. IV, 4.11(g)

(g)     Cessation of Insurance

Optional Life Insurance will cease on the earliest of the following:

(1)     The date the Employee ceases to be insured for Basic Life Insurance provided in accordance with Section 4.02 of this Article except that for an Employee hired on or after January 1, 1993, or whose adjusted service date is on or after January 1, 1993, who retires with benefits (other than deferred vested ) under the Delphi Retirement Program for Salaried Employees, Optional Life Insurance will not cease if the Employee has 10 or more Years of Participation as of the date of retirement or the Employee retires at age 55 or later under Part C of the Delphi Retirement Program for Salaried Employees.

(2)     The effective date of the Employee's election under the Options! Program to decrease Basic Life Insurance from two times Annual Base Salary to one times Annual Base Salary.

(3)     If the Employee fails to make a required contribution for Optional Life Insurance when due, the last day of the calendar month immediately preceding the calendar month for which such contribution was due. However, if Optional Life Insurance ceases in accordance with subsection (g)(1) above or this item (g)(3) while the Employee is on a leave of absence, it will be reinstated on the date the Employee returns to active work for the Corporation, provided the Employee is then still eligible for Optional Life Insurance as set forth in Section 4.11(a) of this Article and makes the required contribution.

(4)     The last day of the calendar month in which the Employee attains age 75, or the last day of the calendar month immediately preceding the Employee's retirement effective date, if later.

2004 Plan

Art. IV, 4.11(g)(5)

    (5)    On the 30th day immediately following the date of the event which causes an Applicant Owner to no longer qualify as an Applicant Owner, as set forth in subsection (j) below.

    (6)    The date of discontinuance of Optional Life Insurance as a coverage available under the Program.

(h)    Conversion Privilege

    (1)    Upon written application made to the Carrier within 31 days after the date of cessation of the Employee's Optional Life Insurance because of cessation of the Employee's Basic Life Insurance in accordance with Article V, Section 5.08(a), the Employee will be entitled to have issued to such Employee by the Carrier, without evidence of insurability, an individual policy of life insurance only, without disability or accidental means death benefits.  Such individual policy will be upon one of the forms then customarily issued by the Carrier, except term insurance, and the premium for such individual policy will be the premium applicable to the class of risk to which the Employee belongs and to the form and amount of the individual policy at the Employee's attained age at the date of issue of such individual policy.  The amount of such individual policy will be equal to (or, at the option of the Employee, less than) the amount of the Employee's Optional Life Insurance under the Program on the date of cessation of such Insurance.

    (2)    Any individual policy of life insurance so issued will become effective at the end of the 31-day period during which application for such individual policy may be made.  If, however, the Employee dies during such 31-day period, the Carrier will pay to the Employee's beneficiary of record, whether or not the Employee has made application for such individual policy, the maximum amount of life insurance for which an individual policy could have been issued.

    2004 Plan

Art. IV, 4.11(h)(2)

No such payments will be made under subsection (h)(2) of this Section 4.11 on account of an Employee who becomes insured under any group policy issued to the Corporation or to any directly or indirectly wholly-owned or substantially wholly-owned subsidiary of Delphi for the same or similar insurance within such 31-day period.

(i)     Assignment

The Employee may transfer by absolute and irrevocable assignment, as a gift (a viatical assignment does not qualify as a gift), all the Employee's rights, title, interests and incidents of ownership, both present and future, under Optional Life Insurance.  No assignment will be binding upon the insurance company unless it is in a form acceptable to the insurance company and until it has been accepted and filed with the insurance company.  The insurance company assumes no obligation as to the validity or sufficiency of any assignment.

An assignment made pursuant to the above will not destroy the right to the death benefits of a beneficiary (or beneficiaries) last designated prior to such assignment, if the assignee does not revoke the interest of such beneficiary (or beneficiaries), and if such beneficiary (or beneficiaries) survives the Employee.

(j)     Applicant Owner (Applicable to Employees whose service date is prior to January 1, 2001)

Prior to January 1, 2001, Optional Life Insurance could be applied for, paid for, and owned by a person other than the Employee, provided such person was an adult who had the relationship to the Employee of a spouse, child, son-in-law, daughter-in-law, parent, brother, brother-in-law, sister, sister-in-law, grandchild, or grandparent.

If the Optional Life Insurance is owned by such a person (herein called Applicant Owner), all title and incidents of ownership in the Optional Life Insurance are vested in the Applicant Owner who alone may exercise every

2004 Plan

Art. IV, 4.11(j)

right and privilege with respect to such insurance which otherwise could have been exercised by the Employee.

If the Optional Life Insurance owned by an Applicant Owner ceases because of an event which causes the Applicant Owner to no longer qualify as an Applicant Owner, the Employee will be automatically excluded from eligibility for Optional Life Insurance under subsection (a), above, on the date of cessation of such Insurance.  Such Employee may become eligible for other Optional Life Insurance on the first day following the date of cessation of such insurance provided the Employee is otherwise eligible as described in subsection (a) above.  Such first day is the Employee's eligibility date.  The provisions of this Section 4.11 except (j) will generally apply to an Employee insured under the modified Optional Life Insurance, provided the Employee enrolls and elects an amount of insurance equal to or less than the amount of insurance owned by the Applicant Owner.

4.12 – <u>Dependent Life Insurance</u>

(a)    Eligibility

An Employee as defined in Article II, Section 2.05 who is insured for Basic Life Insurance described in Section 4.02 of this Article will become eligible for Dependent Life Insurance as follows:

(1)    An Employee whose service date is prior to January 1, 2001, will become eligible for Dependent Life Insurance on such date or the first day of the third month next following the month in which employment with the Corporation commences, if later.

(2)    An Employee whose service date is on or after January 1, 2001, will become eligible for Dependent Life Insurance on the first day of the second month next following the month in which employment with the Corporation commences.

2004 Plan

Art. IV, 4.12(a)

An Employee is eligible for Dependent Life insurance on account of a spouse or Dependent Child as set forth in (3) and (4) below.

The date that the Employee becomes eligible for Dependent Life Insurance will be referred to hereinafter as the Employee's eligibility date.

(3)    Eligibility for Dependent Life Insurance for a Spouse

An Employee is eligible for Dependent Life Insurance for the Employee's spouse on the eligibility date set forth above provided the Employee is enrolled for such coverage and has an eligible spouse.

If the Employee is (i) not then insured for Basic Life Insurance, or (ii) does not then have an eligible spouse, such Employee will become eligible for Dependent Life Insurance on account of a spouse on the first day of the calendar month following the date both of these conditions are first met.

(4)    Eligibility for Dependent Life Insurance for a Dependent Child

The Employee is eligible for Dependent Life Insurance for a Dependent Child on the eligibility date set forth above provided the Employee has at least one Dependent Child as defined in Article II, Section 2.04.

If the Employee (i) is not then insured for Basic Life Insurance, or (ii) does not then have a Dependent Child, the Employee will become eligible for Dependent Life Insurance on account of a Dependent Child on the first day of the calendar month following the date both of these conditions are first met.

(b)    Enrollment and Effective Dates

An eligible Employee may enroll for Dependent Life Insurance when first eligible, during the Options! Program's annual enrollment period or due to a qualifying life event change.

2004 Plan

Art. IV, 4.12(b)

Except as set forth in Article VI, Section 6.07, the Employee's Dependent Life Insurance will become effective as set forth below:

(1)    If the Employee's enrollment form is received by the Carrier on or before the Employee's eligibility date, insurance becomes effective on the eligibility date.

(2)    If the Employee's enrollment form is received by the Carrier during the 31-day period following the Employee's eligibility date, or in the case of an Employee who was on a leave of absence on such eligibility date and subsequently returns to work, during the 31-day period following the date of the Employee's return to work, the insurance becomes effective on the first day of the calendar month next following the date the Employee's enrollment form is received, provided the Employee is then Actively at Work.

Effective January 1, 2005, if an Employee elects an amount of Dependent Life Insurance for a spouse that exceeds $100,000 when the Employee is initially eligible, the Employee must furnish proof satisfactory to the Carrier of the spouse's good health.  Insurance amounts in excess of $100,000 will become effective the first day of the calendar month next following the date the Carrier approves such proof.

(3)    If the Employee's enrollment form is received by the Carrier after the periods set forth in subsections (1) and (2) above, the Employee may enroll or increase coverage during the Options! Program's annual enrollment period or if the Employee has a qualifying life event. The Employee must furnish proof satisfactory to the Carrier of each Dependent's good health.

If the Employee is enrolling during the Options! Program's annual enrollment period, insurance will become effective on the later of January 1 or the first day of the calendar month next following the date

2004 Plan

Art. IV, 4.12(b)(3)

the Carrier approves such proof.

If the Employee is enrolling due to a qualifying life event, insurance will become effective on the first day of the calendar month next following the date the Carrier approves such proof, with respect to those persons whose evidence has been approved and who are still eligible Dependents as defined in Article II, Section 2.04.

In any event, for insurance to become effective:

(4)    a signature is required from Dependents age 18 or over who are enrolled for the first time in $10,000 or more of coverage. This also includes any increase in coverage that raises the amount to $10,000 or more. Coverage on any Dependent whose signature is required will not take effect unless the signed form is received by the Carrier; and

(5)    the Employee must be Actively at Work on the date insurance would otherwise become effective. If the Employee is not Actively at Work on such date, insurance becomes effective on the date the Employee returns to active work, provided the Employee is then still eligible as set forth in subsection (a), above.

If the Employee becomes insured for Dependent Life Insurance and later enrolls for a lower amount of insurance during the Options! Program's annual enrollment period or due to a qualifying life event, the Employee will become insured for such lower amounts of insurance on January 1 following the Options! Program's annual enrollment period or on the first day of the calendar month next following the month in which the Employee's enrollment form is received due to a qualifying life event, provided the Employee's form is received within the 31-day period provided for a qualifying life event. Such lower amount of insurance will become effective whether or not the Employee is then Actively at Work.

Art. IV, 4.12(c)

(c)    Amounts of Insurance

An Employee may elect an amount of Dependent Life Insurance as set forth in the following schedules:

*Note: An Employee who is a resident of Texas may not elect an amount of Dependent Life Insurance which exceeds the combined amount of their Basic Life and Optional Life Insurance.*

| DEPENDENT LIFE INSURANCE | |
| --- | --- |
| **Spouse Coverage** | |
| **Applicable to** | **Benefit Amount** |
| An Employee whose service date is prior to January 1, 2001 | $10,000; $25,000, $50,000; $75,000; $100,000, $150,000[1] or $200,000[1] |
| An Employee whose service date is on or after January 1, 2001 | $25,000; $50,000; $75,000; $100,000, $150,000[1] or $200,000[1] |
| **Child(ren) Coverage** | |
| **Applicable to** | **Benefit Amount** |
| All Employees | $5,000, $10,000, $15,000 or $20,000[1] |
| *(1) Amounts effective as of January 1, 2005* | |
| *No increase in the amount of insurance in force on account of any Dependent will occur after the Employee's death.* | |

(d)    Special Death Benefit

A special death benefit may be payable to an Employee insured on account of a spouse in the event of the death of the Employee's first born child.  This special benefit of $2,000 will cover the Employee's first born child from the moment of live birth for a period up to 60 days, except that no benefit will be paid under this provision if the Employee is then covered for Dependent Life Insurance on such child.

2004 Plan

Art. IV, 4.12(e)

    (e)    Continuation for Certain Survivors

In the event an Employee dies while insured for Dependent Life Insurance, the insurance as set forth in subsection (c) above, may be continued for the surviving spouse of the Employee and any Dependent Child who continues to be eligible, as set forth in Article II, Section 2.04. The surviving spouse must make the required contributions for such continuation of Dependent Life Insurance.

    (f)    Contributions

The Employee will contribute the full cost of Dependent Life Insurance. Contributions will be payable monthly in advance and, where possible, from any monies then payable to the Employee in the form of wages or benefits payable under any Delphi benefit plan. The required monthly contribution is established by the Carrier for each plan year and is subject to change.

    (1)    Contributions for Dependent Life Insurance for a Spouse

For Employees eligible to participate in the Options! Program, the amount of the monthly contribution will be based on the Employee's age as of December 31 of the applicable Options! Program plan year.

For all other Employees, the amount of the monthly contribution will be based on the Employee's age as of the effective date of coverage. When the Employee's birthday places the Employee in a higher age bracket the monthly contribution will change on the first day of the calendar month next following the month in which such birthday occurs.

    (2)    Contributions for Dependent Life Insurance for a Dependent Child

The monthly rate of contribution for coverage on account of a Dependent Child will be established by the Carrier for each plan year and is subject to change. The amount will be the same regardless of the number of eligible Dependent Children.

Art. IV, 4.12(f)(2)

In the case of Dependent Life Insurance continued after the Employee's death, the surviving spouse of the Employee will contribute the full cost of such insurance. Contributions will be deducted monthly, in advance, from any monies then payable to the surviving spouse under the Delphi Retirement Program for Salaried Employees. However, to continue this insurance if the surviving spouse is not eligible for a benefit under the Delphi Retirement Program for Salaried Employees, the spouse must make the required contribution, annually and in advance. In either case, the monthly rate of contribution for coverage on account of such spouse will be determined by the Carrier and will increase based on the progressing age of the surviving spouse.

(g)    Payment of Dependent Life Insurance

(1)    If a Dependent dies from any cause while the Employee is insured for Dependent Life Insurance, the amount of such insurance in force on account of the Dependent will be paid in a lump sum to the Employee.

The insurance certificate applicable to the Employee will set forth the procedure for payment of insurance in case a Dependent dies subsequent to the death of the Employee and prior to Dependent Life Insurance being continued as set forth in subsection (e) above.

(2)    If a Dependent Child dies from any cause while Dependent Life Insurance is being continued as set forth in subsection (e), above, the insurance in force on account of the Dependent Child will be paid in a lump sum to the surviving spouse of the Employee.

(3)    If the surviving spouse of the Employee dies from any cause while Dependent Life Insurance is being continued as set forth in subsection (e), above, the insurance in force on account of the surviving spouse will be paid in a lump sum to the spouse's beneficiary of record if one has been designated, otherwise to the estate of the surviving spouse.

Art. IV, 4.12(g)(4)

(4)    The insurance certificate will set forth the administrative provisions regarding the recording of beneficiary designations, changes of beneficiary and the procedure for payment of insurance in case there is no beneficiary living at the death of a Dependent.

(5)    In no event will more than one claim be paid hereunder on account of the death of any insured person.  In the event that coverage for a Dependent Child is elected under this Program by more than one eligible Employee, only the amount of insurance elected by the Employee with the earlier birthday in the calendar year will be paid. Such payment will satisfy the Program's liability on account of the death of that Dependent Child.

(6)    This insurance is term insurance without cash, loan or paid-up values.

(h)    Cessation of Insurance

(1)    An Employee's Dependent Life Insurance will cease on the earliest of the following:

(i)    The date the Employee ceases to have a Dependent as defined in Article II, Section 2.04;

(ii)    The date the Employee ceases to be insured for Basic Life Insurance provided in accordance with Section 4.02 of this Article except that for an Employee whose service date is on or after January 1, 1993, who retires with benefits (other than deferred vested) under the Delphi Retirement Program for Salaried Employees, Dependent Life Insurance will not cease if the Employee has 10 or more Years of Participation as of the date of retirement;

(iii)    If the Employee fails to make a required contribution for Dependent Life Insurance when due, the last day of the calendar month immediately preceding the calendar month for which such

Art. IV, 4.12(h)(1)(iii)

contribution was due. However, if Dependent Life Insurance ceases in accordance with item (ii) above or this item (iii) while the Employee is on a leave of absence, it will be reinstated on the date the Employee returns to active work for the Corporation, provided the Employee is then still eligible and makes the required contribution;

(iv) The last day of the calendar month in which the Employee attains age 70 or the last day of the calendar month immediately preceding the Employee's retirement effective date, if later; or

(v) The date of discontinuance of Dependent Life Insurance as a coverage available under the Program.

(2) Any Dependent Life Insurance continued in accordance with the provisions of subsection (e), above, will cease on the earliest of the following:

(i) The date of the surviving spouse's remarriage, or the date the surviving spouse enters into a new same-sex domestic partner relationship;

(ii) The last day of the calendar month in which the surviving spouse attains age 70;

(iii) The date the surviving spouse dies;

(iv) If the surviving spouse fails to make a required contribution as set forth in subsection (f), above, when due, the last day of the calendar month immediately preceding the calendar month for which such contribution was due; or

2004 Plan

Art. IV, 4.12(h)(2)(v)

        (v)     The date of discontinuance of Dependent Life Insurance as a coverage available under the Program.

    (3)     The Dependent Life Insurance on account of any Dependent will, in any case, automatically cease on the day immediately preceding the date such person ceases to be a Dependent as defined in Article II, Section 2.04.

(i)    Conversion Privilege

Upon written application made by a person to the Carrier within 31 days after the date of cessation of the Dependent Life Insurance on account of such person because of:

    (1)     cessation of the Employee's Basic Life Insurance provided in accordance with Section 4.02 of this Article, unless such cessation was due to discontinuance of Dependent Life Insurance as a coverage available under the Program;

    (2)     cessation of Dependent Life Insurance in accordance with subsection (h)(2)(i) and (iii) above; or

    (3)     such person's ceasing to be a Dependent as defined in Article II, Section 2.04.

Such person will be entitled to have an individual policy of life insurance only, without disability or accidental means death benefits, issued by the Carrier, without evidence of insurability. Such individual policy will be upon one of the forms then customarily issued by the Carrier, except term insurance, and the premium for such individual policy will be the premium applicable to the class of risk to which such person belongs and to the form and amount of the individual policy at such person's attained age at the date of issue of such

Art. IV, 4.12(i)

individual policy. The amount of such individual policy will be equal to (or at the option of such person, less than) the amount of Dependent Life Insurance in force on account of such person on the date of cessation of such insurance. Any individual policy of life insurance so issued will become effective at the end of the 31-day period during which application for such individual policy may be made. If, however, the person who is entitled to the privilege of obtaining an individual policy of life insurance dies during such 31-day period, the Carrier will pay benefits in accordance with subsection (g), above, as though insurance had been in force, whether or not application for such individual policy <u>was</u> made, the maximum amount of life insurance for which an individual policy could have been issued. The Employee's insurance certificate will set forth the procedure for payment of insurance in case such person dies subsequent to the death of the Employee.

No such payments will be made under subsection (i) of this Section 4.12 on account of an Employee who becomes insured under any group policy issued to the Corporation or to any directly or indirectly wholly-owned or substantially wholly-owned subsidiary of Delphi for the same or similar insurance within such 31-day period.

4.13 – <u>Personal Accident Insurance</u>

(a)    Eligibility

An Employee as defined in Article II, Section 2.05 who is insured for Basic Life Insurance described in Section 4.02 of this Article, will become eligible for Personal Accident Insurance on the Employee's own account (personal coverage) as follows:

(1)    An Employee whose service date is prior to January 1, 2001, will become eligible for Personal Accident Insurance on such date or the first day of the third month next following the month in which employment with the Corporation commences, if later.

Art. IV, 4.13(a)(2)

(2)    An Employee whose service date is on or after January 1, 2001, will become eligible for Personal Accident Insurance on the first day of the second month next following the month in which employment with the Corporation commences.

An Employee insured on the Employee's own account will be eligible for Personal Accident Insurance on account of the Employee's Dependents as defined in Article II, Section 2.04, as set forth in (3) and (4) below.

The date that the Employee becomes eligible for Personal Accident Insurance will be referred to hereinafter as the Employee's eligibility date.

(3)    Eligibility for Personal Accident Insurance for a Spouse

The Employee is eligible for Personal Accident Insurance for the Employee's spouse on the same day the Employee is eligible for personal coverage, provided the Employee is enrolled for such coverage and has an eligible spouse.

If the Employee (i) does not have personal coverage when such Employee is married, or (ii) is not married when personal coverage becomes effective, the Employee will become eligible for coverage for the Employee's spouse on the first day of the calendar month following the date both of these conditions are first met.

If the Employee (i) does not have personal coverage when such Employee has an established same-sex domestic partner relationship under the Delphi Health Care Program for Salaried Employees, or (ii) does not have an established same-sex domestic partner relationship under the Delphi Health Care Program for Salaried Employees when personal coverage becomes effective, the Employee will become eligible for coverage for the Employee's same-sex domestic partner

2004 Plan

Art. IV, 4.13(a)(3)

on the first day of the calendar month following the date both of these conditions are first met.

(4)    Eligibility for Personal Accident Insurance for a Dependent Child

An Employee is eligible for Personal Accident Insurance for a Dependent Child on the same day such Employee is eligible for personal coverage, provided the Employee is enrolled for such coverage and has at least one Dependent Child as defined in Article II, Section 2.04.

If the Employee does not have personal coverage when acquiring the first Dependent Child or does not have at least one Dependent Child when personal coverage becomes effective, the Employee will become eligible for coverage for a Dependent Child on the first day of the calendar month following the date both of these conditions are first met.

(b)    Enrollment and Effective Dates

An eligible Employee may enroll for Personal Accident Insurance when first eligible, during the Options! Program annual enrollment period, or due to a qualifying life event change.

Except as set forth in Article VI, Section 6.07, Personal Accident Insurance will become effective as set forth below.

(1)    If the Employee's enrollment form is received by the Carrier on or before the Employee's eligibility date, insurance becomes effective on the eligibility date.

(2)    If the Employee's enrollment form is received by the Carrier during the 31-day period following the Employee's eligibility date, or in the case of an Employee who was on a leave of absence on such eligibility

Art. IV, 4.13(b)(2)

<u>date subsequently returns to work, during the 31-day period following the date of the Employee's return to work,</u> insurance becomes effective on the first day of the calendar month next following the date the Employee's enrollment form is received, provided the Employee is then Actively at Work.

(3)    If the Employee's enrollment form is received by the Carrier after the periods set forth in subsections (1) and (2) above, the Employee may enroll or increase coverage during the Options! Program's annual enrollment period or if the Employee has a qualifying life event. Insurance will become effective January 1 or on the first day of the calendar month following the date the Employee's enrollment form is received by the Carrier.

In any event, for an Employee to become insured initially, or for a higher amount of insurance, such Employee must be Actively at Work on the date such insurance or higher amount of insurance otherwise would become effective. If the Employee is not Actively at Work on such date, the insurance or higher amount of insurance becomes effective on the date the Employee returns to active work, provided the Employee is then still eligible as set forth in subsection (a), above.

If the Employee becomes insured for Personal Accident Insurance and later enrolls for a lower amount of insurance during the Options! Program annual enrollment period or due to a qualifying life event, the Employee will become insured for such lower amount of insurance on January 1 following the Options! Program's annual enrollment period or on the first day of the calendar month next following the month for which the Employee's enrollment form is received within the 31-day period provided for a qualifying life event. Such lower amount of insurance will become effective whether or not the Employee is then Actively at Work.

Art. IV, 4.13(c)

(c)    Amounts of Insurance

(1)    Amounts of Personal Coverage

An Employee may elect personal coverage as set forth in the following
schedule:

| PERSONAL ACCIDENT INSURANCE | |
|---|---|
| **Applicable to** | **Coverage Amount** |
| An Employee whose service date is prior to January 1, 2001 | $10,000; $25,000; $50,000; $100,000; $200,000; $250,000; $300,000; $400,000; $500,000; $750,000[(1)]; or $1,000,000[(1)] |
| An Employee whose service date is on or after January 1, 2001 | $100,000; $200,000; $300,000; $400,000; $500,000; $750,000[(1)]; or $1,000,000[(1)] |
| *(1) Amounts effective January 1, 2005*<br><br>*For any amount of insurance over $300,000, the amount elected may not exceed ten times the Employee's Annual Base Salary.* | |

(2)    Amount of Coverage on a Spouse

The Employee may elect an amount of Personal Accident Insurance on
an eligible spouse from the amounts set forth above, as applicable to
the Employee.   However, Personal Accident Insurance on a spouse
may not exceed the amount of the Employee's personal coverage.

If the amount of Personal Accident Insurance on a spouse exceeds the
amount of the Employee's personal coverage because:

(i)    the Employee later elects an amount of personal coverage less
than the amount of coverage for the Employee's spouse; or

Art. IV, 4.13(c)(2)(ii)

(ii)     the Employee's personal coverage reduces in accordance with subsection (c)(4), below, to an amount less than the amount of coverage for the Employee's spouse; the amount of Personal Accident Insurance on the Employee's spouse automatically will reduce on the effective date of such election or such reduction to an amount equal to the Employee's personal coverage.

(3)     Amount of Coverage for a Dependent Child

The Employee may elect an amount of Personal Accident Insurance on an eligible Dependent Child as set forth in the following schedule:

| Applicable to | Coverage Amount |
|---|---|
| All Employees | $10,000; $20,000, $30,000; $40,000; $50,000; or $100,000[1] |
| *(1) Amount effective January 1, 2005* | |
| *Personal Accident Insurance on a Dependent Child may not exceed the amount of the Employee's personal coverage.* | |

If the amount of Personal Accident Insurance on a Dependent Child exceeds the amount of the Employee's personal coverage because the Employee later elects an amount of personal coverage less than the amount of coverage for a Dependent Child, the amount of Personal Accident Insurance on the Employee's Dependent Child automatically will reduce on the effective date of such election to an amount equal to the Employee's personal coverage.  If an amount of coverage equal to the Employee's personal coverage is not available to a Dependent Child, the Dependent Child's coverage will reduce to the next lower available amount.

Art. IV, 4.13(c)(4)

(4)    Coverage at Retirement

The maximum amount of personal coverage in force after the Employee attains age 70 or upon retirement, if later, will be $150,000 effective on the first day of the calendar month following the calendar month in which the Employee attains age 70 or the retirement effective date, if later.

(d)    Special Death Benefit

A special death benefit may be payable to an Employee insured on account of a spouse in the event of the death of the Employee's first born child <u>due to a</u> <u>covered accident</u>.  This special benefit of an amount equal to the lowest level of dependent child coverage will cover the Employee's first born child from the moment of live birth for a period up to 31 days, except that no benefit will be paid under this provision if the Employee is then covered for Personal Accident Insurance on such child.

(e)    Contributions

The Employee will contribute the full cost of Personal Accident Insurance. Contributions will be payable monthly and where possible, from any monies then payable to the Employee in the form of wages or benefits payable under a Delphi benefit plan.  The required monthly contribution rate is established by the Carrier for each plan year and is subject to change.

<u>The amount of the monthly contribution for Personal Accident Insurance on a spouse is based on the amount of insurance elected.</u>

The amount of the monthly contribution for Personal Accident Insurance on a Dependent Child is based on the amount of insurance elected, regardless of the number of eligible dependent children insured.

Art. IV, 4.13(f)

(f)    Losses

(1)    Employee Only

The full amount of the Personal Accident Insurance in force on the date of <u>a covered</u> accident is payable for any of the following losses: loss of life, speech and hearing, total and permanent disability (as set forth below), or loss of any two <u>or more</u> members as defined in (g) below.

"Total and permanent disability" as used in this Section 4.13, means the Employee's complete inability to engage in any occupation or employment for remuneration or profit for which the Employee is suited by reason of education, training or experience; and which disability is determined by a licensed physician to be a total and permanent disability which will continue for the remainder of the Employee's life.

(2)    Spouse

The full amount of the Personal Accident Insurance in force on the date of <u>a covered</u> accident is payable for any of the following losses: loss of life, loss of speech and hearing, paralysis (as set forth below), or loss of any two <u>or more</u> members as defined in (g) below.

(3)    Employee or Spouse

One-half of the Personal Accident Insurance in force on the date of <u>a covered</u> accident is payable for any of the following losses; loss of one member, loss of speech, or loss of hearing in both ears.

One-quarter of the Personal Accident Insurance in force on the date of <u>a covered</u> accident is payable for the irrevocable loss of the thumb and index finger of the same hand.

2004 Plan

Art. IV, 4.13(f)(4)

(4)    Dependent Child

Two times the <u>full amount of the</u> Personal Accident Insurance in force on the date of <u>a covered</u> accident is payable for <u>any of the following losses:</u>  loss of two or more members, <u>loss of speech and hearing,</u> or for paralysis <u>as defined in (g) below</u>.

The full amount of Personal Accident Insurance in force on the date of <u>a covered</u> accident is payable for loss of life or loss of any one member as defined <u>in (g)</u> below.

One-half of the Personal Accident Insurance in force on the date of <u>a covered</u> accident is payable for the loss of thumb and index finger of the same hand.

(5)    Special Benefits

(i)    Coma Benefit

One percent of the full amount of Personal Accident Insurance in force will be payable, on behalf of an insured Employee, covered spouse or covered child who becomes comatose within 365 days of <u>a covered</u> accident.  Such benefit will be payable on the 32nd day of the coma and each month thereafter for a maximum of 100 months, until the date the comatose person regains consciousness or until death, if earlier, at which time any balance would be paid.

<u>No benefit is payable for any covered person following the Employee's retirement.</u>

(ii)    Special Child Care Center

If the Employee's spouse and Dependent Child(ren) are insured, an additional benefit of five percent of the Employee's full amount

Art. IV, 4.13(f)(5)(ii)

of Personal Accident Insurance or the actual amount of child care costs, whichever is less, (subject to a maximum of $6,000, or $7,500 effective January 1, 2005, per year) will be paid to the beneficiary for up to four years for each eligible child, under the age of 13, enrolled (or who becomes enrolled within 90 days of the covered accident) in a qualified child care center, when the insured Employee or insured spouse suffers a loss of life as a result of a covered accident.  If there is no Dependent Child who qualifies, an additional benefit of $1,000 will be paid to the beneficiary.

No benefit is payable for any covered person following the Employee's retirement.

(iii)    Spousal Occupational Training

If the Employee and spouse are insured, a benefit up to five percent (ten percent effective January 1, 2005) of the full amount of Personal Accident Insurance or the actual amount of expenses incurred, whichever is less, but not to exceed $6,000 ($25,000 effective January 1, 2005) per year, will be reimbursed to a surviving spouse, as a Spousal Occupational Training benefit, when the insured Employee suffers a loss of life as a result of a covered accident.  The benefit is paid to the surviving spouse as reimbursement for attending a formal occupational training program in order to become specifically qualified for active employment in an occupation for which the spouse would not otherwise qualify.  The benefit is provided for reasonable and necessary expenses incurred within three years of the date of the Employee's death.  No payment will be made for room, board, or other living, traveling, or clothing expenses.

Art. IV, 4.13(f)(5)(iii)

<u>No benefit is payable for any covered person following the Employee's retirement.</u>

    (iv)    Special Education

If the Employee and Dependent Child<u>(ren)</u> are insured an additional benefit of up to five percent <u>(ten percent effective January 1, 2005)</u> of the Employee's full amount of Personal Accident Insurance or the actual amount of tuition, whichever is less, (subject to a maximum of $6,000, <u>or $25,000 effective January 1, 2005,</u> per year) will be paid as a Special Education benefit for each eligible Dependent Child when the insured Employee suffers a loss of life as a result of a covered accident. Each eligible Dependent Child must be enrolled as a full-time student in an accredited college or university within 365 days of the death of the Employee.

The benefit will be payable annually for up to four consecutive years providing the eligible Dependent Child continues education without interruption as a full-time student. Benefits payable beyond the first year require evidence that the child has successfully completed all academic requirements of the prior school year.

No payment will be made for room, board, or other living, traveling or clothing expenses. If there is no Dependent Child who qualifies, an additional benefit of $1,000 will be paid to the beneficiary.

<u>No benefit is payable for any covered person following the Employee's retirement.</u>

2004 Plan

Art. IV, 4.13(f)(5)(v)

(v)    Seat Belt and Air Bag Benefit

If the Employee, Employee's spouse or Dependent Child(ren) are insured, an additional benefit of ten percent of the covered person's full amount of Personal Accident Insurance (subject to a maximum of $25,000) will be paid to the beneficiary if the insured person suffers a loss of life as a result of a covered accident in a private passenger car and the covered person's seat belt was properly used.  An additional benefit of ten percent of the covered person's full amount of Personal Accident Insurance (subject to a maximum of $25,000) will also be payable if an air bag is deployed for the seat which such person occupied and while properly using a seat belt.

(vi)    Repatriation Expense Benefit

If the Employee, Employee's spouse or Dependent Child(ren) are insured, a repatriation benefit of $2,500 ($5,000 effective January 1, 2005) will be paid for the preparation and transportation of the covered person's body to the city of such person's principal residence, if the covered person suffers a loss of life as the result of a covered accident, provided the death occurred at least one hundred miles away from such person's principal residence.

(g)    Definitions for Losses

(1)    "Loss" means, with regard to hand or foot, complete severance through or above the wrist or ankle joint; loss of an eye means total and irrecoverable loss of sight; loss of thumb and index finger means severance of each through or above the joint closest to the wrist.

(2)    "Member" means hand, foot, sight of eye, speech or hearing in both ears.

2004 Plan

Art. IV, 4.13(g)(3)

(3)     "Severance" means the complete separation and dismemberment from the body.

(4)     "Paralysis" means Quadriplegia, total paralysis of both upper and lower limbs; Paraplegia, total paralysis of both lower limbs; or Hemiplegia, total paralysis of upper and lower limbs on one side of the body.

(5)     "Loss of Speech" means total and irrecoverable loss of audible communication.

(6)     "Loss of Hearing" means permanent total deafness in both ears such that it cannot be corrected to any functional degree by an aid or device.

(h)     Exclusions

In no case will payment be made for any loss which is contributed to or caused, wholly or partly, directly, or indirectly, by:

(1)     physical or mental illness, diagnosis of, or treatment for the illness;

(2)     any infection, except infection caused by an external, visible wound accidentally sustained;

(3)     any war, or war-like action in time of peace;

(4)     any accident occurring while an Employee or Dependent is serving on full-time active duty in the Armed Forces of any country or international authority at war (any premium paid will be returned on a pro-rated basis for any such period of full-time active duty);

(5)     suicide, attempted suicide or self-inflicted injury while sane or insane;

2004 Plan

Art. IV, 4.13(h)(6)

(6)    the use of any drug or medicine unless taken on the advice of and in accordance with the direction of a licensed physician;

(7)    committing or attempting to commit an assault or felony; or

(8)    flight in an aircraft (including boarding or alighting therefrom) while an Employee or Dependent is a pilot, student pilot or member of the crew that is being used for (a) flights requiring special permits or waivers; (b) racing or exhibition stunt flying; (c) skywriting or banner towing, crop dusting or spraying, seeding or fire fighting; (d) exploration, pipe or power line inspection; or (e) hunting.

(9)    flight in an aircraft (including boarding or alighting therefrom) which is (a) being used for testing or experimental purposes except when the Employee is performing duties as an Employee of the Corporation, or (b) operated by or under the direction of a military authority, other than transport type aircraft operated by the Military Airlift Command (MAC) of the United States of America or similar air transport service of any other country.

(i)    Notice and Proof of Claims

Written notice of loss must be given to the Carrier within 20 days after the date of such loss.  Proof of such loss must be furnished within 90 days after the date of such loss.

The Carrier, at its own expense, will have the right and opportunity to have medical examinations of the insured made by a physician or physicians designated by such Carrier, as often as it may reasonably require during the pendency of claim.  Also, the Carrier will have the right to have an autopsy made in the case of death, where it is not forbidden by law.

2004 Plan

Art. IV, 4.13(i)

No legal action will be brought to recover prior to the expiration of 60 days after proof of claim has been filed, nor will such action be brought at all unless brought within three years from the expiration of the time within which proof of claim is required.

(j)    Payment of Benefits

If, while insured for Personal Accident Insurance, an Employee, Spouse or Dependent Child sustains bodily injuries <u>due to a covered accident</u>, and within one year thereafter will have suffered loss of life or any other loss set forth in subsection (f) as a direct result of such bodily injuries independently of all other causes, the Carrier will pay the benefit specified for such Losses.

For a Dependent Child, in the event of <u>a covered</u> accident that qualifies for two times the full amount of Personal Accident Insurance in force on the date of <u>such</u> accident, only the full amount will be paid upon submission of proof of loss satisfactory to the Carrier.  Any remaining amount payable will be paid at the expiration of a period of 90 days following the date of the accident.  In the event the Dependent Child dies within 90 days of the <u>covered</u> accident, the maximum amount payable will be the full amount of Personal Accident Insurance in force on the date of <u>such</u> accident.

This insurance is term insurance without cash, loan or paid-up values.

Only one amount, the largest to which the beneficiary is entitled, will be paid for all losses suffered by one covered individual resulting from one accident. Subject to the exclusions set forth in subsection (h), the full amount payable will not exceed $100,000 for any loss while the insured is flying as a pilot, student pilot, or member of the crew.  This limitation does not apply to commercial air travel.

In no event will more than one claim be paid hereunder on account of the death or other loss of any insured person.  In the event that coverage for a Dependent Child is elected under this Program by more than one eligible

Art. IV, 4.13(j)

Employee, only the amount of insurance under the schedule elected by the Employee with the earlier birthday in the calendar year will be paid. Such payment will satisfy the Program's liability on account of the Dependent Child's death, dismemberment, or other covered loss.

(1)    Designated Beneficiary

(i)    If the Employee should suffer a loss as set forth in subsection (f) above, other than loss of life, the benefit is payable to the Employee.

(ii)    If the Employee designated a beneficiary for Personal Accident Insurance on or after May 1, 1992, the amount of personal coverage is payable to such beneficiary in the event the Employee should die as the direct result of a covered accident while insured.

(iii)    If the Employee has not designated a beneficiary for Personal Accident Insurance on or after May 1, 1992, the amount of personal coverage is payable to the beneficiary last designated for the Employee's Basic Life Insurance in the event the Employee should die as the direct result of a covered accident while insured.

(iv)    If a Spouse or Dependent Child(ren) should sustain a loss as the direct result of a covered accident while covered for Personal Accident Insurance, the benefit will be paid to the Employee.

(2)    Loss of Life

At the written request of the Employee, or the beneficiary, Personal Accident Insurance will be paid either in a lump sum or in installments. No installment settlement election will be valid if such settlement would result in installment payments of less than $10.00

Art. IV, 4.13(j)(2)

each.  If Personal Accident Insurance is payable in installments and the <u>Employee or</u> beneficiary dies before all the installments have been paid, the unpaid installments will be commuted at the rate of interest used in computing the amount of installment payments, and paid in one lump sum to the estate of the <u>Employee or</u> beneficiary unless otherwise provided in the election of an installment settlement.

(3)   Total and Permanent Disability Benefit

(i)   A monthly benefit will be paid for a covered Employee who becomes totally and permanently disabled, as set forth in subsection (f)(1), as a result of bodily injury <u>due to a covered accident</u>, except as may be limited under subsection (h).  No benefit for total and permanent disability will be paid for disability which commences following retirement under the provisions of any pension plan or retirement program to which Delphi has contributed.

The amount of each monthly benefit will be an amount equal to 2% of the full amount of Personal Accident Insurance in force on the date of <u>a covered</u> accident less any other Personal Accident Insurance benefit paid for losses resulting from the same accident as set forth in subsection (f).

The first payment will be payable on the later of:

(aa)   the first day of the month which includes the date the Carrier receives satisfactory proof of the Employee's total and permanent disability; and

(bb)   the first day of the month which includes the date the Employee has been totally and permanently disabled for a period of 12 months following <u>a covered</u> accident.

2004 Plan

Art. IV, 4.13(j)(3)(i)

All payments will be made to the Employee.  However, if such disability is due to or accompanied by mental incapacity, all or any part of such installments may, at the option of the Carrier, be paid to the beneficiary of record of the Employee or to any other person or institution then, in the judgment of the Carrier, contributing toward or providing for the care or maintenance of the Employee.

If the Employee should die during the period of total and permanent disability and while the monthly installments are being paid, an amount equal to the aggregate of the installments remaining unpaid will be paid in a lump sum as a death benefit to the beneficiary of record of the Employee.

(ii)    The monthly benefits will end on the earliest of the following dates:

(aa)    the date the Employee is no longer totally and permanently disabled;

(bb)    the date the Employee fails to submit any required proof of total and permanent disability to the Carrier as set forth in subsection (i), above; and

(cc)    the date the sum of the monthly benefits paid plus any other benefits paid on account of any covered loss which resulted from the same accident equals the full benefit amount;

(dd)    the date all of the installments have been paid; and

(ee)    the date of the Employee's death

2004 Plan

Art. IV, 4.13(j)(3)(iii)

(iii)   Effect of Other Benefits

Any payment under this Section will be entirely independent of any payment to which the Employee may be entitled on account of total and permanent disability under a pension plan or retirement program to which Delphi has contributed or under Section 4.08 or on account of disability under the Supplemental Extended Disability Benefits or Long-Term Disability coverage offered in conjunction with the Corporation's Options! Program.

(4)   No Designated Beneficiary

The Employee's insurance certificate will set forth the administrative provisions regarding the recording of beneficiary designations, changes of beneficiary and the procedure for payment of insurance in case there is no beneficiary living at the time of death of the Employee.

(5)   Non-Alienation

Except as expressly provided for in subsection (m) herein and in Article VI, Section 6.04, no Personal Accident Insurance benefit payable hereunder will be subject in any manner to assignment, pledge, attachment or encumbrance of any kind, nor subject to the debts or liability of any eligible beneficiary except as required by applicable law.

(k)   Cessation of Insurance

Personal Accident Insurance will cease on the earliest of the following:

(1)   The date the Employee ceases to be insured for Basic Life Insurance provided in accordance with Section 4.02 except that for an Employee whose service date is on or after January 1, 1993 who retires with benefits (other than deferred vested) under the Delphi Retirement

Art. IV, 4.13(k)(1)

Program for Salaried Employees, Personal Accident Insurance will not cease if the employee has 10 or more Years of Participation as of the date of retirement.

(2)    If the Employee fails to make a required contribution for Personal Accident Insurance when due, the last day of the calendar month immediately preceding the calendar month for which such contribution was due.

(3)    The day immediately preceding the first monthly installment of total and permanent disability benefits with regard to Personal Accident Insurance on the Employee.

(4)    On the 30th day immediately following the date of the event which causes an Applicant Owner to no longer qualify as an Applicant Owner, as set forth in subsection (n) below.

(5)    The day immediately preceding the date a Spouse or Dependent Child ceases to be an eligible Dependent as defined in Article II, Section 2.04 with respect to Personal Accident Insurance coverage on a Spouse or a Dependent Child.

(6)    The date the Employee's personal coverage ceases with regard to Personal Accident Insurance coverage on a Spouse or a Dependent Child.  However, if the Employee's personal coverage ceases (i) as set forth in (k)(3) above, the Employee may continue Personal Accident Insurance coverage on account of the Employee's Dependents until the full amount of the Employee's personal coverage has been paid, or (ii) as set forth in (k)(4) above, because an Applicant Owner fails to qualify as an eligible Applicant Owner, the Employee may continue Personal Accident Insurance coverage on account of the Employee's Dependents (other than coverage on the Employee's spouse if such spouse is the Applicant Owner) until the 60th day

2004 Plan

Art. IV, 4.13(k)(6)

following the date the Applicant Owner failed to qualify as an Applicant Owner, provided the Employee makes the required contributions.

(7)    The date of discontinuance of Personal Accident Insurance as <u>a</u> coverage available under the Program.

(l)    Conversion Privilege

No conversion privilege is applicable to Personal Accident Insurance.

(m)    Assignment

The Employee may transfer by absolute and irrevocable assignment, as a gift, all the Employee's rights, title, interest and incidents of ownership, both present and future, in personal coverage under Personal Accident Insurance. No assignment will be binding upon the insurance company unless it is in a form acceptable to the insurance company and until it has been accepted and filed with the insurance company.   The insurance company assumes no obligation as to the validity or sufficiency of any assignment.   An assignment made pursuant to the above will not destroy the right to the death benefits of a beneficiary (or beneficiaries) last designated prior to the assignment, if the assignee does not revoke the interest of such beneficiary (or beneficiaries), and if such beneficiary (or beneficiaries) survives the Employee.   Only the Employee may own Personal Accident Insurance on a Spouse or Dependent Child and no assignment of such coverage may be made.

(n)    Applicant Owner (Applicable to Employees whose service date is prior to January 1, 2001)

<u>Prior to January 1, 2001,</u> Personal Accident Insurance on the Employee, only, <u>could</u> be applied for, paid for, and owned by a person other than the Employee, provided such person <u>was</u> an adult who ha<u>d</u> the relationship to the Employee of a spouse, child, son-in-law, daughter-in-law, parent, brother, brother-in-law, sister, sister-in-law, grandchild, or grandparent.

2004 Plan

Art. IV, 4.13(n)

If the Personal Accident Insurance is owned by such a person (hereinafter called Applicant Owner), all title and incidents of ownership in the Personal Accident Insurance on the Employee are vested in the Applicant Owner who alone may exercise every right and privilege with respect to such Insurance which otherwise could have been exercised by the Employee.

If the Personal Accident Insurance owned by an Applicant Owner ceases because of an event which causes the Applicant Owner to no longer qualify as an Applicant Owner, the Employee will be automatically excluded from eligibility for Personal Accident Insurance on the Employee under subsection (a) above, on the date of cessation of such Insurance.  Such Employee may become eligible for other Personal Accident Insurance on the first day following the date of cessation of such insurance provided the Employee is otherwise eligible as described in subsection (a) above.  Such first day is the Employee's eligibility date.  The provisions of this Section 4.13 except (n) will generally apply to an Employee insured under the modified Personal Accident Insurance.

Art. V

## ARTICLE V

CONTINUATION OF COVERAGES,
CORPORATION AND EMPLOYEE CONTRIBUTIONS,
<u>AND CESSATION OF COVERAGES</u>

**5.01 – <u>Employees in Active Service</u>**

The Corporation will pay the full monthly charge for coverage provided under Article IV (other than Optional Life, Dependent Life, Personal Accident Insurance, Supplemental Extended Disability and Long-Term Disability Benefits) for an Employee with respect to any month in which the Employee has earnings from the Corporation, except as may otherwise be provided under Article III, Section 3.03.  The Employee will contribute the full cost of Optional Life, Dependent Life, Personal Accident Insurance, Supplemental Extended Disability and Long-Term Disability Benefits.

**5.02 – <u>Employees on a Leave of Absence Other Than for Disability (Except Flexible Service Employees)</u>**

Coverages under Article IV (other than Optional Life, Dependent Life and Personal Accident Insurance) may be continued for the following periods after the month in which the Employee last worked prior to a non-disability leave of absence.  Such coverages may be continued after the month in which the Corporation last provides coverage upon payment of any required contributions by the Employee, except that no contributions will be required after the Employee attains age 65.  Optional Life, Dependent Life and Personal Accident Insurance may be continued for any month the Employee is insured for Basic Life Insurance under the Program.  In any event, the Employee will contribute the full cost of Optional Life, Dependent Life and Personal Accident Insurance continued.

(a)     For the first month after the month in which the Employee last worked prior to a non-disability leave of absence, all coverages provided under Article IV will be continued and the Corporation will pay the full monthly charge for such coverages.

2004 Plan

Art. V, 5.02(b)

(b)    In the event of a leave of absence other than for disability, Basic Life Insurance may be continued for up to 11 months (24 months if the Employee is placed on a special leave of absence for dependent care) following the last month the Corporation contributed in accordance with subsection (a) of this Section.  If the Employee is placed on an approved educational leave of absence, Basic Life Insurance may be continued for the duration of the approved educational leave of absence.  Employees will contribute 50¢ per month per $1,000 of coverage continued for such periods.

At the end of any period set forth in this Section 5.02, and except as otherwise provided in this Article, or at any time the Employee fails to make the required contributions for Basic Life Insurance during such period, such insurance is canceled and the Employee is entitled to the conversion privilege described in Article VI, Section 6.06.

(c)    Special Provisions

(1)    Employee Placed on Leave of Absence Other Than for Disability Because of A Clinically Anticipated Disability

If an Employee is granted a leave of absence other than for disability, because of a clinically anticipated disability based on the natural course of the Employee's diagnosed condition, Sickness and Accident, Short-Term Disability and Long-Term Disability Benefits coverage which may have ceased after the period described in subsection (a) above, during the period of such leave will be reinstated, provided the Employee is insured for Basic Life Insurance, as of the date the Employee presents medical certification from the Employee's personal physician, satisfactory to the Carrier, that the Employee is totally disabled and will remain in force on the same basis as set forth in Section 5.03 of this Article.  Commencing with the month in which Sickness and Accident Benefit or Short-Term Disability Benefit coverage is reinstated, the Corporation will pay the full monthly charge for such coverage on the same basis as set forth in Section 5.03(a) of  this Article for an Employee on an approved disability leave of absence..

Art. V, 5.02(c)(2)

(2)    Employee on Approved Union Leave of Absence

(i)    Local Union

An Employee who is on an approved leave of absence to work for the employee's local union (not a Credit Union) may continue Basic Life Insurance coverage, for the duration of such leave, by making a monthly contribution of $.60 per $1,000 of Basic Life insurance coverage plus $5.00 for Sickness and Accident, Short-Term Disability and Extended Disability Benefit coverage.

If an Employee becomes disabled while on such leave, the Employee must continue to pay the required contribution set forth above while receiving Sickness and Accident, Short-Term Disability or Extended Disability benefits, and after receiving the maximum benefits payable, must contribute at the rate of $.60 per month per $1,000 of Basic Life insurance coverage

(ii)    International Union

An Employee who is on an approved leave of absence to work for the International Union may continue Basic Life Insurance coverage, for the duration of such leave, by making a monthly contribution of $.60 per $1,000 of Basic Life insurance coverage.  Such an Employee may not continue Sickness and Accident, Short-Term Disability, Extended Disability or Long-Term Disability Benefits coverage, as applicable.

Art. V, 5.02(c)(2)(iii)

      (iii)    After Age 65

If an Employee attains age 65 while on an approved union leave of absence as set forth in (i) and (ii) above, the Employee must contribute $.30 per $1,000 for each month of the Basic Life Insurance coverage in effect on the Employee's 65th birthday while the Employee remains on such leave of absence. If such Employee is on an approved leave of absence to work for the Employee's local union, the Employee must also contribute $5.00 each month for Sickness and Accident, Short-Term Disability and Extended Disability Benefit coverage.

**5.03 – <u>Disabled Employees (Except Flexible Service Employees) Whose Service Date is Prior to January 1, 2001</u>**

Coverages may be continued as set forth in subsections (a) or (b) below. The Corporation will pay the full monthly charge for such coverages (other than Optional Life, Dependent Life and Personal Accident Insurance) continued. Optional Life, Dependent Life and Personal Accident Insurance may be continued for any month the Employee is insured for Basic Life Insurance under the Program. In any event, the Employee will contribute the full cost of Optional Life, Dependent Life and Personal Accident Insurance continued.

    (a)    For any period during which an Employee

        (1)    will be entitled to receive Sickness and Accident Benefits or salary continuation payments under the Corporation's Salary Continuation Plan, or

        (2)    is totally and continuously disabled while covered for Sickness and Accident Benefits and such Employee remains on an approved disability leave of absence but not to exceed the period equal to the Employee's Years of Participation as of the first day of disability, all

Art. V, 5.03(a)(2)

the Employee's coverages under Article IV will remain in force, except that if an Employee's disability leave is canceled because the period of such leave equaled the Employee's Length of Service, all the Employee's coverages under Article IV will continue to remain in force in any month in which the Employee continues to receive Extended Disability Benefits, other than benefits payable under the Supplemental Extended Disability Benefits option available under the Options! Program, subsequent to such cancellation.

(b)    If, within three working days after an Employee's disability leave of absence is canceled because the Employee's disability has ceased, the Employee is again disabled so as to satisfy the disability requirements for Sickness and Accident Benefits and is thereby unable to return to work, all the Employee's coverages under Article IV will remain in force while the Employee is so disabled, on the same basis as if the Employee had become disabled while Sickness and Accident coverage was in force, but in no case will the duration of Sickness and Accident Benefits exceed the maximum period for which benefits would have been payable at the onset of the initial disability as set forth under Article IV, Section 4.07(b)(1).

(c)    If at the expiration of the applicable period specified in subsections (a) or (b) above, an Employee is receiving payments because of employment with the Corporation under any Workers Compensation Law or Act or any Occupational Disease Law or Act, only such Employee's Basic Life Insurance will be continued for the period the Employee continues to receive such payments.    Any Optional Life, Dependent Life and Personal Accident Insurance may be continued during such period provided the Employee makes required contributions.

(d)    If at the expiration of the applicable period specified in subsections (a) (b), or (c) above the Employee continues to be disabled, the following provisions apply:

Art. V, 5.03(d)(1)

(1)    Employees With Less Than Ten Years of Participation

An Employee may continue during such Employee's period of continuing total disability only Basic Life, Optional Life, Dependent Life and Personal Accident Insurance which was in force on the last day of the month in which disability commenced for a minimum period of one year from the date of disability, or, if longer, for a period not to exceed the Employee's Years of Participation as of the first day of disability, but not after age 65. The Employee will contribute 50¢ per month per $1,000 of Basic Life Insurance (other than Optional Life, Dependent Life and Personal Accident Insurance) continued. The Employee will contribute the full cost of Optional Life, Dependent Life and Personal Accident Insurance continued.

(2)    Employees With Ten or More Years of Participation

An Employee may continue during such Employee's period of continuing total disability up to age 65 only Basic Life, Optional Life, Dependent Life and Personal Accident Insurance which was in force on the last day of the month in which disability commenced. The Employee will contribute 50¢ per month per $1,000 of Basic Life Insurance for such insurance (other than Optional Life, Dependent Life and Personal Accident Insurance) continued, except that while the Employee is adjudged totally and permanently disabled no further contributions for such insurance (other than Optional Life, Dependent Life and Personal Accident Insurance) will be required. The Employee will contribute the full cost of Optional Life, Dependent Life and Personal Accident Insurance continued.

Continuing Basic Life Insurance on and after age 65 or non-disability retirement will be determined as set forth in Article IV, Section 4.02(b). Sickness and Accident coverage will be canceled upon retirement or upon termination of an approved disability leave of absence, if earlier.

2004 Plan

Art. V, 5.03(d)(2)

> Years of Participation in such cases include the period of total and permanent disability during which contributions were not required. On and after age 65 Optional and Dependent Life Insurance will be determined as set forth in Article IV, Section 4.11 and 4.12, respectively.

**5.04 – Disabled Employees (Except Flexible Service Employees) Whose Service Date is on or after January 1, 2001**

Coverages may be continued as set forth in subsections (a), (b), or (c) below. The Corporation will pay the full monthly charge for such coverages (other than Optional Life, Dependent Life, Personal Accident Insurance and Long-Term Disability Benefits) continued. Optional Life, Dependent Life and Personal Accident Insurance may be continued for any month the Employee is insured for Basic Life Insurance under the Program. In any event, the Employee will contribute the full cost of Optional Life, Dependent Life and Personal Accident Insurance continued. In addition, the Employee will contribute the full cost of Long-Term Disability coverage while receiving salary continuation payments under the Corporation's Salary Continuation Plan.

    (a)    For any period during which an Employee

> (1)    will be entitled to receive Short-Term Disability Benefits or salary continuation payments under the Corporation's Salary Continuation Plan, or

> (2)    is totally and continuously disabled while covered for Short-Term Disability Benefits and such Employee remains on an approved disability leave of absence,

> Basic Life Insurance will be continued for a maximum of 29 months following the month in which the Employee last worked. If the Employee's disability leave is canceled because the period of disability exceeds the Employee's Length of Service, Basic Life Insurance will also be canceled at the end of the month in which the Employee's approved disability leave ends.

Art. V, 5.04(b)

(b)   If, within three working days after an Employee's disability leave of absence is canceled because the Employee's disability has ceased, the Employee is
again disabled so as to satisfy the disability requirements for Short-Term Disability Benefits and is thereby unable to return to work, all the Employee's coverages under Article IV will remain in force while the Employee is so disabled, on the same basis as if the Employee had become disabled while Short-Term Disability Benefits were in force, but in no case will Basic Life Insurance be continued beyond the period equal to 29 months following the month in which the Employee last worked.

(c)   If at the expiration of the applicable period specified in subsection (a) or (b) above, an Employee is receiving payments because of employment with the Corporation under any Workers Compensation Law or Act or any Occupational Disease Law or Act, only such Employee's Basic Life Insurance will be continued for the period the Employee continues to receive such payments.  Any Optional Life, Dependent Life and Personal Accident Insurance may be continued during such period provided the Employee makes required contributions.

5.05 – <u>Special Provisions Applicable to Employees Hired Prior to January 1, 1993 Who Retire or Separate At or After Age 55 (Except Flexible Service Employees Unless Specified in Section 5.07(b)(5) of this Article)</u>

(a)   Insured Employee Prior to Age 60

An insured Employee who retires prior to age 60 under the total and permanent disability provisions of the Delphi Retirement Program for Salaried Employees or who is eligible for a retirement benefit under the provisions of Part A of the Delphi Retirement Program for Salaried Employees (1) at or after age 55 but prior to age 60 with combined years of age and credited service of 85 or more or (2) at any age with 30 or more years of credited service or (3) prior to age 60 as may be made available under certain Window Retirement Programs, and who was insured to the date such Employee retires will have only Basic Life Insurance continued to age 65 without any premium

Art. V, 5.05(a)

contribution.  An insured Employee who retires voluntarily at or after age 55 but prior to age 60 with combined years of age and credited service totaling less than 85 may continue the Basic Life Insurance to age 65 by making the required contribution of 50¢ per month per $1,000 of Basic Life Insurance. The Basic Life Insurance continued as set forth above will be subject to the reduction formula set forth in Article IV, Section 4.02(b).

(b)    Insured Employee Between Ages 60 and 65

An insured Employee who retires at or after age 60 with ten or more years of credited service and is eligible for a retirement benefit under the provisions of Part A of the Delphi Retirement Program for Salaried Employees and who was insured to the date the Employee retires will have only Basic Life Insurance subject to reduction continued to age 65 without any premium contribution.

An insured Employee who ceases active work at or after age 60 and was insured from age 60 to the date the Employee ceases active work or who has ceased active work prior to age 60 but is insured at age 60, and who in either case has five or more Years of Participation at the end of the month in which the Employee attains age 60 may continue only Basic Life Insurance to age 65 by making the required contributions at the rate of 50¢ per month per $1,000 of Basic Life Insurance, except that such contributions will not be required of any such retired Employee eligible for retirement benefits under Part A of the Delphi Retirement Program for Salaried Employees.

(c)    Uninsured Employee Retiring With Benefits

(1)    When Retiring From a Leave of Absence

An uninsured Employee retiring with benefits under Part A, (other than total and permanent disability or deferred vested) of the Delphi

Art. V, 5.05(c)(1)

Retirement Program for Salaried Employees without returning to work from a leave of absence who thereby is unable to continue Basic Life Insurance in accordance with subsections (a) or (b) above will become insured, if such Employee is then under age 65 on the first day of the month following the month coincident with such retirement for the same amount the Employee otherwise could have continued at the time of the Employee's retirement, subject to reduction in accordance with Article IV, Section 4.02(b).    Contributions will not be required of any such retired Employee, except as follows.

If the Employee retired voluntarily as early as age 55 but prior to age 60 with combined years of age and service, determined in accordance with the provisions of the Delphi Retirement Program for Salaried Employees, totaling less than 85, Basic Life Insurance may be reinstated and continued as set forth above only if the required contributions are made.    The contributions are 50¢ per month per $1,000 of Basic Life Insurance.

(2)    When Retiring From a Successor Employer Under the Terms of a Sales or Joint Venture Agreement

An uninsured Employee, as defined in Section 2.05(a)(9) retiring from a successor employer with benefits under Part A, (other than deferred vested) of the Delphi Retirement Program for Salaried Employees, who thereby is unable to continue Basic Life Insurance in accordance with subsections (a) or (b) above, may have Basic Life, Optional Life, Dependent Life and Personal Accident Insurance reinstated if specifically provided for under the terms of a Corporation approved sales or joint venture agreement.    Such uninsured Employee will become insured on the first day of the month following the month coincident with such retirement.    Amounts of Basic Life Insurance are subject to reduction in accordance with Article IV, Section 4.02 (b) of the Program.

2004 Plan

Art. V, 5.05(c)(2)

Contribution for Basic Life Insurance will not be required of any such retired Employee except as follows.  If the Employee retired voluntarily as early as age 55 but prior to age 60 with combined years of age and service, determined in accordance with the provisions of the Delphi Retirement Program for Salaried Employees, totaling less than 85, contributions are to be made equal to $.50 per month per $1,000 of Basic Life Insurance.

Contributions for Optional Life, Dependent Life and Personal Accident Insurance are to be made in accordance with rates then in effect.

(d)    Conversion Privilege

(1)    If the Employee does not continue Basic Life Insurance in the manner set forth in (a) or (b) above, the Employee may exercise the conversion privilege described in Article VI, Section 6.06.

(2)    An Employee separated at or after age 55 who is not eligible to continue Basic Life Insurance under the provisions of subsections (a) and (b) above will have all coverages discontinued and the Employee will be entitled to the conversion privilege as described in Article VI, Section 6.06; except that if such separation is due to total disability the Employee may be eligible to continue the coverages as described in Section 5.03 of this Article.

5.06 – Special Separation Provisions

Employees Who Separate Under the Separation Allowance Plan (Applicable to Employees whose service date is on or after January 1, 1993)

(a)    Employees Eligible to Retire

An Employee who separates under the provisions of the Separation Allowance Plan who is eligible for a retirement benefit under Part A of the

Art. V, 5.06(a)

> Delphi Retirement Program for Salaried Employees at the time of separation, will have Basic Life Insurance discontinued during retirement in accordance with the provisions of Section 4.02(a)(2). Optional Life, Dependent Life and Personal Accident Insurance may be continued only if required contributions are made. Contributions for Optional Life, Dependent Life and Personal Accident Insurance are to be made in accordance with rates then in effect.

(b)   Employees Not Eligible to Retire

> An Employee who separates under the provisions of the Separation Allowance Plan, who is not eligible for a retirement benefit under Part A of the Delphi Retirement Program for Salaried Employees at the time of separation, will have Basic Life, Sickness and Accident and Extended Disability Benefits coverage continued until the end of the month in which separation of employment occurs. Thereafter, only Basic Life Insurance may be continued while the Employee is entitled to salary continuation payments, provided the Employee has not secured new employment. The Corporation will pay the full monthly charge for such continuance of Basic Life Insurance. Optional Life, Dependent Life and Personal Accident Insurance may not be continued under the Plan.

5.07 – <u>Flexible Service Employees</u>

Coverage may be continued as set forth in subsections (a), (b), (c), (d), and (e), below. Optional Life, Dependent Life and Personal Accident Insurance may be continued for any month the Flexible Service Employee is insured for Basic Life Insurance. Such coverages may also be continued for the periods specified in subsection (b) below by a Flexible Service Employee whose service date is prior to January 1, 1993 whose Basic Life Insurance is discontinued upon retirement. In any event, the Flexible Service Employee will contribute the full cost of Optional Life, Dependent Life and Personal Accident Insurance.

2004 Plan

Art. V, 5.07(a)

(a)     Employees on Approved Disability Leave of Absence

(1)     For any period during which a Flexible Service Employee is totally and continuously disabled and remains on an approved disability leave of absence, Basic Life Insurance will be continued for 12 months following the month in which such Employee last worked, without any premium contribution.  Sickness and Accident Benefits in force will be continued without any premium contribution while the Employee remains on an approved disability leave of absence but not beyond the day coincident with the end of the 12th month following the Employee's last day worked.   Short-Term Disability Benefits in force will be continued without any premium contribution while the Employee remains on an approved disability leave of absence but not beyond the day coincident with the end of the 6th month following the Employee's last day worked.

(2)     If a Flexible Service Employee's disability leave of absence is canceled prior to the expiration of the continuance periods set forth in (a) above, Sickness and Accident Benefits or Short-Term Disability Benefits will cease on the date such leave of absence is canceled. Basic Life Insurance will be continued for the balance of the 12-month period set forth in (a) above provided the Flexible Service Employee makes the required contribution of 50¢ per month per $1,000 of Basic Life Insurance.

(b)     Employees Whose Service Date is prior to January 1, 2001 and Who Retire

(1)     A Flexible Service Employee whose service date is prior to January 1, 1993, who retires from active service, will have Continuing Life Insurance continued until the end of the month following the month in which such Employee last worked without any premium contribution. Thereafter, the Flexible Service Employee may continue Continuing Life Insurance for the next 11 months by making the required contribution of 50¢ per month per $1,000 of such Insurance.

2004 Plan

Art. V. 5.07(b)(2)

(2)     A Flexible Service Employee whose service date is on or after January 1, 1993, who retires from active service and has Basic Life Insurance discontinued, may continue Optional Life, Dependent Life and Personal Accident Insurance for up to 12 months following the month the Employee last worked, provided the Employee makes the required contributions and remains otherwise eligible. Optional Life, Dependent Life and Personal Accident Insurance will cease at the end of the 12-month period described herein if such coverage does not cease earlier due to one of the events set forth in Article IV, Sections 4.11(g), 4.12(h) and 4.13(k), respectively.

(3)     A Flexible Service Employee whose service date is prior to January 1, 1993, who retires from a disability leave of absence will have Basic Life Insurance continued through the end of the month immediately preceding the month in which such Employee retires from a disability leave without any premium contribution. Thereafter, the Flexible Service Employee may continue Continuing Life Insurance for the balance, if any, of the 12-month period commencing with the month following the month in which the Employee last worked, by making the required contribution of 50¢ per month per $1,000 of such insurance.

(4)     A Flexible Service Employee whose service date is on or after January 1, 1993, who retires from a disability leave of absence and has Basic Life insurance discontinued, may continue Optional Life, Dependent Life and Personal Accident Insurance for the balance, if any, of the 12-month period commencing with the month following the month in which the Employee last worked, provided the Employee makes the required contributions and remains otherwise eligible. Optional Life, Dependent Life and Personal Accident Insurance will cease at the end of the 12-month period described herein if such coverage does not cease earlier due to one of the events set forth in Article IV, Sections 4.11(g), 4.12(h) and 4.13(k), respectively.

Art. V, 5.07(b)(5)

(5)     When a Flexible Service Employee who was eligible to retire with benefits under the Delphi Retirement Program for Salaried Employees on the date such Employee transferred from regular full-time salaried employment to Flexible Service employment retires, the coverage for which the Employee would have been eligible on the date the Employee transferred from regular full-time salaried employment may be continued as set forth in Section 5.05 of this Article, provided such Flexible Service Employee was hired as a regular full-time salaried Employee prior to January 1, 1993.

(6)     A Flexible Service Employee whose service date is on or after January 1, 1993, who subsequently retires from regular full-time salaried employment and has Basic Life Insurance discontinued, may continue Optional Life, Dependent Life and Personal Accident Insurance as set forth in Section 5.05 of this Article V.

(c)     Employees Separated for Reasons Other Than Quit or Discharge

(1)     A Flexible Service Employee whose service date is prior to January 1, 2001 who is separated for reasons other than quit or discharge will have Basic Life Insurance and Sickness and Accident Benefits or Short-Term Disability Benefits continued until the end of the month following the month in which the Employee last worked without any premium contribution.    Thereafter, the Flexible Service Employee whose service date is prior to January 1, 2001 may continue Basic Life Insurance for the next 11 months or on a time-for-time basis, whichever is less by making the required contribution of 50¢ per month per $1,000 of Basic Life Insurance.

(2)     A Flexible Service Employee whose service date is on or after January 1, 2001 who is separated for reasons other than quit or discharge will have Basic Life Insurance, Sickness and Accident and Short-Term Disability benefits continued until the end of the month in which the Employee last worked.

Art. V, 5.07(d)

    (d)    Employees on Military Leave of Absence

A Flexible Service Employee who is placed on a military leave of absence, will have Basic Life and Sickness and Accident Benefits or Short-Term Disability Benefits continued for the balance of the month in which the Employee last worked and for the first full calendar month thereafter without any premium contribution.  Thereafter, the Flexible Service Employee may continue Basic Life insurance for the next 11 months by making the required contribution of 50¢ per $1,000 of Basic Life Insurance.

    (e)    Employees on Approved Leave of Absence Other Than for Disability

    (1)    For the first month after the month in which the Employee last worked prior to leave of absence, Basic Life and Sickness and Accident coverage or Short-Term Disability Benefits will be continued and the Corporation will pay the full monthly charge for such coverages.

    (2)    Following the period above, Basic Life Insurance may be continued for up to 11 months (23 months if the Employee is placed on a special leave of absence for dependent care).  If the Employee is placed on an approved educational leave of absence, Basic Life Insurance may be continued for the duration of the approved educational leave of absence.  Employees will contribute $.50 per month per $1,000 of coverage continued for such periods.

At the end of any period set forth in this Section 5.07, or at any time the Flexible Service Employee fails to make the required contribution for Basic Life Insurance during such period, Basic Life, Optional Life, Dependent Life and Personal Accident Insurance is canceled.  The Flexible Service Employee is then entitled to the conversion privilege described in Article VI, Section 6.06, applicable to Basic Life Insurance and the conversion privilege described in Article IV, Section 4.11(h), applicable to Optional Life Insurance.  The Employee's eligible dependent(s) may also exercise the conversion privilege described in Article IV, Section 4.12(i), applicable to Dependent Life Insurance.

Art. V, 5.07

A Flexible Service Employee who has continued Basic Life Insurance, will have Basic Life Insurance reduced as provided in Article IV, Section 4.02(b). In any event, during any period a Flexible Service Employee is eligible to continue insurance in accordance with the provisions above, the Employee will not be required to contribute for such insurance if the Employee has attained age 65.

5.08 – <u>Cessation of Coverages</u>

(a)    If an Employee quits or is discharged, all coverages will cease as of the day the Employee quits or is discharged or on the date Length of Service is broken, if later. However, if an Employee is separated for reasons other than quit or discharge, all coverages will cease as of the last day of the month in which separation of employment occurs or on the date Length of Service is broken, if later, provided the Employee makes all required contributions.

(b)    If an Employee, including a Flexible Service Employee, who was hired, or whose adjusted service date is on or after January 1, 1993, retires, all coverages under Article IV (except for Optional Life, Dependent Life and Personal Accident Insurance) will cease on the day immediately preceding the Employee's retirement effective date.

(c)    If the Employee fails to make the required contributions for coverages under Article IV, such coverages will cease on the last day of the last month for which contribution was made by either the Employee or the Corporation.

(d)    All coverages will cease upon the discontinuance of the Program, or, if the provisions thereunder for any one of the forms of coverage in Article IV are discontinued, that form of coverage will be discontinued.

(e)    If Sickness and Accident or Short-Term Disability Benefits coverage does not cease in accordance with subsection (a) herein, such coverage will cease on the later of the date of:

Art. V, 5.08(e)(1)

(1)    the expiration of the maximum period for which benefits are payable under this coverage on account of the Employee's disability, and

(2)    the earlier of the expiration of the Employee's approved disability leave of absence, or retirement.

Except as set forth in Section 5.02(c)(1) of this Article, Sickness and Accident or Short-Term Disability Benefits coverage may be reinstated only if and when the Employee returns to active work for the Corporation.  However, in the event Sickness and Accident or Short-Term Disability Benefits cease while an Employee's personal physician continues to certify to total disability and the Employee remains on approved disability leave of absence, Sickness and Accident or Short-Term Disability Benefits coverage will remain in force but in no case would the duration of benefits exceed the maximum period for which benefits would have been payable at the onset of the initial disability as set forth under Article IV, Section 4.07(b)(1) and 4.08(b), respectively.

Art. VI

## ARTICLE VI

## GENERAL PROVISIONS

6.01 – Amount of Coverage Depends on Monthly or Annual Base Salary

(a)     For an Employee whose service date is prior to January 1, 2001, the amount of Basic Life Insurance is determined by the Annual Base Salary as defined in Article II, Section 2.02, on the date the Employee becomes covered under the Program.

(b)     Amounts of Sickness and Accident Benefits, Short-Term Disability Benefits, Extended Disability Benefits, Supplemental Extended Disability Benefits and Long-Term Disability coverages are determined by the Monthly Base Salary as defined in Article II, Section 2.07, on the date the Employee becomes covered under the Program.

(c)     An Employee whose service date is prior to January 1, 2001 who retired under the Delphi Retirement Program for Salaried Employees, other than on disability retirement, who returns to work while still covered, will have the amount of such Employee's coverages determined by the Employee's Annual or Monthly Base Salary, as applicable, on the date the Employee returns to work.

6.02 – Amount of Coverage Subsequent to Becoming Covered Under the Program

(a)     Subsequent to the date an Employee becomes covered under the Program the amount of

(1)     Basic Life Insurance, for which an Employee whose service date is prior to January 1, 2001 is covered, will be based on the Employee's current Annual Base Salary.   The amounts of Basic Life Insurance for an Employee eligible for the Options! Program will be based on the Employee's Annual Base Salary as set forth in Article II, Section 2.02. The amounts of Sickness and Accident and Extended Disability

Art. VI, 6.02(a)(1)

Benefits coverages for which such Employee is covered will be based on the Employee's current Monthly Base Salary. <u>The amount of Supplemental Extended Disability Benefits will be based on the Employee's Monthly Base Salary as set forth in Article II, Section 2.07.</u>

(2)     Basic Life Insurance, for which an Employee whose service date is on or after January 1, 2001 is covered, will be based on the schedule as set forth in Section 4.01.  The amount of Short-Term Disability will be based on the Employee's current Monthly Base Salary.  The amount of Long-Term Disability for an Employee eligible for the Options! Program will be based on the Employee's <u>Monthly</u> Base Salary as <u>set</u> forth in Article II, Section 2.07.

In any event, if the Employee is not Actively at Work on the date when the amount of the Employee's coverage would change, the Employee will be covered for such changed amount when the Employee returns to active work.

(b)     Changes in amounts of Basic Life Insurance, Sickness and Accident, Short-Term Disability and Extended Disability Benefits coverages due to transfers from hourly to salaried payrolls will become effective on the date of transfer, provided the Employee is then Actively at Work.  If the Employee is not Actively at Work on such date, the change will be effective on the date of the Employee's return to work.

(c)     An Employee who returns from an occupational disability absence and because of a continuing physical limitation connected with such occupational disability is placed on a job paying a lower Annual or Monthly Base Salary, as applicable, than the job such Employee held immediately prior to the Employee's disability absence, will have amounts of Basic Life Insurance for an Employee whose service date is prior to January 1, 2001, Sickness and

2004 Plan

Art. VI, 6.02(c)

> Accident, Short-Term Disability, Extended Disability and Long-Term Disability Benefits coverages determined in accordance with the higher Annual or Monthly Base Salary, as applicable, of the Employee's former job, for as long as the Employee receives payments under any applicable Workers Compensation Law in reimbursement for the loss in pay occasioned by such physical limitation.

## 6.03 – Benefits for Part-Time Employees

For a part-time Employee the benefit amounts set forth in Article IV, Sections 4.01 and 4.06 will be payable in the same percentage relationship as the regularly scheduled hours in a week for such Employee's job is to the number of hours in the standard work week.

## 6.04 – Recovery of Benefit Overpayments and Other Debts

For the purpose of this Section, any benefits paid to an Employee under any General Motors Employee Benefit Plan will be deemed to have been paid under the applicable Delphi Employee benefit plan and will be subject to recovery provided such benefits were paid prior to the date Delphi ceased to be a subsidiary of General Motors as set forth below.

(a)     If it is determined that any benefit(s) paid to an Employee under Article IV should not have been paid or should have been paid in a lesser amount, written notice thereof will be given to such Employee and the Employee will repay the amount of the overpayment to the Carrier.  In the event the Employee fails to repay this amount promptly, the recovery of this overpayment will be recovered as set forth herein.  In the event the Employee fails to repay any other debt to the Corporation after being given written notice thereof, the recovery of such debt will also be recovered as set forth herein.

(b)     If the Employee fails to repay an overpayment or debt promptly after having been given written notice to do so, the Carrier will arrange to recover the

Art. VI, 6.04(b)

amount of the overpayment or debt by making an appropriate deduction or deductions from any future benefit payment or payments payable to the Employee under Article IV, or may request the Corporation to make or arrange for an appropriate deduction or deductions from any monies then payable, or which may become payable, by the Corporation, or on the Corporation's behalf, or otherwise, to the Employee in the form of wages or benefits. The Corporation will have the right to make or arrange to have made deductions for recovering such overpayments or debts from any such present or future wages or benefits which are or become payable to such Employee.

(c)    At the direction of the Corporation, the Carrier will make an appropriate deduction or deductions from any future benefit payment or payments payable to the Employee under Article IV for the purpose of recovering overpayments made to an Employee under any Delphi employee benefit plan.

Amounts so deducted will be remitted by the Carrier to the applicable benefit plan. The Carrier, by such remittance, will be relieved of any further liability with respect to such payments.

(d)    If the benefit overpayment is caused by a retroactive award under any state Workers Compensation Law or Act or any Occupational Disease Law or Act and applicable state law allows coordination of benefits resulting in a reduction of such award payable, the Carrier in its sole discretion may waive part or all of the overpayment in consideration of such benefit coordination.

6.05 – Recovery of Disability Benefit Advances

If the Corporation makes advances to an Employee on account of a claim for disability benefits under the Program and subsequently it is determined that no such benefits are payable or a smaller amount is payable than was anticipated, the Employee will be obligated to repay in cash the amount of such advances or overpayment, as the case may

Art. VI, 6.05

be, upon notice of the amount to be repaid, and, if such repayment is not made within 60 days after request is made by the Corporation for repayment thereof, the amount may be deducted by the Corporation from any wages or other benefits thereafter payable to the Employee.

6.06 – <u>Conversion Privilege</u>

(a)     Upon written application made to the Carrier within 31 days after the date Basic Life Insurance ceases in accordance with Article V, Sections 5.06(b), 5.08(a) and (b), the Employee will be entitled to have issued to such Employee by the Carrier, without evidence of insurability, an individual policy of life insurance only, without disability or accidental means death benefits. Such individual policy will be upon one of the forms then customarily issued by the Carrier, except term insurance, and the premium for such individual policy will be the premium applicable to the class of risk to which the Employee belongs and to the form and amount of the individual policy at the Employee's attained age at the date of issue of such individual policy.   The amount of such individual policy will be equal to (or at the option of the Employee less than) the amount of the Employee's Basic Life Insurance under the Program on the date specified above.   The amount of the policy may further be increased by the amount of Optional Life Insurance that may be converted by the Employee in accordance with Section 4.11(<u>h</u>) of Article IV.

(b)     Any individual policy of life insurance so issued will become effective at the end of the 31-day period during which application for such individual policy may be made.  If, however, the Employee dies during such 31-day period, the Carrier will pay to the Employee's beneficiary of record, whether or not the Employee <u>has</u> made application for such individual policy, the maximum amount of life insurance for which an individual policy could have been issued.

Art. VI, 6.06(b)

No such payments will be made under this subsection (b) on account of an Employee who becomes insured under any group policy issued to the Corporation or to any directly or indirectly wholly-owned or substantially wholly-owned subsidiary of Delphi or the same or similar insurance within such 31-day period.

6.07 – <u>Options! Program</u>

Notwithstanding that Employees eligible to make Options! Program elections will also be afforded concurrent opportunities to make elections for Optional Life, Dependent Life, and Personal Accident Insurance, <u>as well as Supplemental</u> <u>Extended Disability Benefits and Long-Term Disability Benefits,</u> such coverages are provided under this Life and Disability Benefits Program for Salaried Employees and not under the Options! Program.   Except as expressly provided for hereunder, the coverages provided under this Program will be subject to the terms and conditions of this Program and not of the Options! Program.

An Employee's elections for Basic Life, Optional Life, Dependent Life and Personal Accident Insurance, Supplemental Extended Disability Benefits and Long-Term Disability Benefits will cease to apply as follows:

(a)    For an Employee eligible to make Options! Program elections during the Options! Program enrollment period, all elections in effect will cease to apply the day immediately preceding the effective date of the Employee's new elections under the Options! Program;

(<u>b</u>)    For an Employee ineligible to make Options! Program elections because of the Employee's employment category, elections in effect will cease to apply on the day immediately preceding the effective date of the Employee's new elections under the Options! Program.

2004 Plan

APPENDIX TO

LIFE AND DISABILITY

BENEFITS PROGRAM

Appendix A

APPENDIX A

Procedure for Coordination of Disability Benefits with Social Security

The following outlines the procedures for reducing Sickness and Accident, Short-Term Disability Benefits, Extended Disability Benefits, Supplemental Extended Disability Benefits and Long-Term Disability Benefits by certain Social Security Benefits as provided in Article IV, Sections 4.07(h) and 4.09(b)(2)(iii) of the Life and Disability Benefits Program.

(a)    At commencement of the fifth full calendar month of disability, an Employee will be notified of the eligibility requirements for Social Security Disability Insurance Benefits (DIB).  The Employee will be advised that, effective with the payment for the sixth full calendar month of disability, Sickness and Accident or Short-Term Disability (and monthly Extended Disability, Supplemental Extended Disability or Long-Term Disability) Benefits computations will presume eligibility for DIB except as provided below. The Employee will also be advised that, subject to the Employee's completion of a Reimbursement Agreement, the Employee may receive unreduced Sickness and Accident or Short-Term Disability (or Extended Disability, Supplemental Extended Disability or Long-Term Disability) Benefits payments, commencing with the sixth full calendar month of disability, while the Employee is otherwise eligible.  Further, the Employee will be instructed that, if the Employee's physician anticipates that the Employee's disability will not extend beyond twelve months, the Employee's physician should complete a statement indicating such a prognosis.  Where such a statement is provided, a reduction of Sickness and Accident or Short-Term Disability (or Extended Disability, Supplemental Extended Disability or Long-Term Disability) Benefits, based on presumed eligibility for DIB, will not be instituted in the sixth full calendar month of disability.

(b)    At commencement of the eighth full calendar month of disability, any Employee whose physician has not completed the statement referenced in (a) above, will be advised to apply for DIB and instructed to complete an authorization form allowing the Social Security Administration to advise the Carrier of its

Appendix A

determination.  An Employee's failure to complete the authorization form within two weeks from the date of the notice instructing the Employee to do so will result in the suspension of an amount of Sickness and Accident or Short-Term Disability (or Extended Disability, <u>Supplemental</u> <u>Extended Disability</u> or Long-Term Disability) Benefits equal to the presumed amount of DIB until the Employee provides satisfactory proof that the authorization form has been completed.  The Employee also will be advised that the Employee may authorize release of information in the Sickness and Accident or Short-Term Disability (and Extended Disability, <u>Supplemental</u> <u>Extended Disability</u> or Long-Term Disability) Benefits claim files to the Social Security Administration.

(c)     <u>At commencement of the fifteenth full calendar month of disability, the Employee will be notified that they are required to apply for DIB and a copy of the entire award or denial letter received from the Social Security Administration must be submitted to the Carrier.  If the Employee has applied for DIB but has not received a determination from the Social Security Administration, a copy of the most recent correspondence received regarding the Employee's claim must be submitted to the Carrier.  An Employee's failure to submit this correspondence will result in the suspension of an amount of Sickness and Accident or Short-Term Disability (or Extended Disability, Supplemental Extended Disability or Long-Term Disability) Benefits equal to the presumed amount of DIB until the Employee provides satisfactory proof of the status of their claim for DIB.  In addition, the Employee will also be advised that if they retire with benefits under the Delphi Retirement Program for Salaried Employees and they have an outstanding disability benefit overpayment as stated in subsection (h) below, their eligibility for any future retirement benefit increases will be impacted in accordance with the terms of the Delphi Life and Disability Benefits Program.</u>

2004 Plan

Appendix A

(d)    Upon receipt of an Initial determination of disallowance of DIB, unless no reconsideration level is available, a notice will be sent instructing the Employee that within two weeks from the date of the notice the Employee must (1) request a Reconsideration, and (2) complete an authorization form allowing the Social Security Administration to advise the Carrier of its determination. Failure to comply with this instruction, request such Reconsideration or complete the authorization form will result in the suspension of an amount of Sickness and Accident or Short-Term Disability (or Extended Disability, Supplemental Extended Disability or Long-Term Disability) Benefits payments equal to the presumed amount of DIB until the Employee provides satisfactory proof that such request has been filed and the authorization form has been completed.

(e)    Upon receipt of a Reconsideration determination of disallowance, or where no Reconsideration level is available, the Carrier will review the Employee's disability claim and will send a notice to the Employee instructing the Employee that within two weeks from the date of the notice the Employee must file for a Hearing before an administrative law judge of the Social Security Administration and complete an authorization form allowing the Social Security Administration to advise the Carrier of its determination. Failure to comply with this instruction will result in the suspension of an amount of Sickness and Accident or Short-Term Disability (or Extended Disability, Supplemental Extended Disability or Long-Term Disability) Benefits payments equal to the presumed amount of DIB until the Employee provides satisfactory proof that such request has been filed and the authorization form has been completed.

(f)    In the event of a Reconsideration or an administrative law judge Hearing determination denying DIB, and provided any subsequent review does not reverse such determination, the Employee will not be required to repay any Sickness and Accident or Short-Term Disability (or Extended Disability, Supplemental Extended Disability or Long-Term Disability) Benefits otherwise payable, unless such denial of DIB resulted from the Employee's refusal to accept vocational rehabilitation.  Where such denial occurs, the Employee is

Appendix A

obligated to repay Sickness and Accident or Short-Term Disability (and Extended Disability, Supplemental Extended Disability or Long-Term Disability) Benefits in an amount not to exceed the amount of DIB (primary Insurance Amount only) to which the Employee would otherwise have been entitled for the same period or periods of disability.

(g)    In the event an Employee files for a Hearing before an administrative law judge pursuant to instructions issued under subsection (e), above, and the administrative law judge determination denies DIB, an amount equal to any reasonable expenses which an Employee incurs in conjunction with the Hearing before the administrative law judge will be paid to the Employee by the Carrier upon submission of satisfactory proof of such expenses.

(h)    Upon receipt of a notice of award of DIB, any overpayment of Sickness and Accident or Short-Term Disability (or Extended Disability, Supplemental Extended Disability or Long-Term Disability) Benefits caused by the retroactive award of DIB is to be repaid. The amount of the overpayment will be based on the actual amount (Primary Insurance Amount) of such award.

(i)    In the event of a DIB award resulting from a Reconsideration or Hearing before an administrative law judge, the amount of Sickness and Accident or Short-Term Disability (and Extended Disability, Supplemental Extended Disability or Long-Term Disability) Benefits to be repaid will be reduced by an amount equal to any attorney fees associated with the award, provided the Employee makes such repayment within 30 days of the date the Employee is notified of the amount to be repaid.  This reduction applies only to attorney fees associated with a successful appeal of a denial of DIB and includes only that portion of the attorney's fee associated with the period of time the Employee was entitled to receive Sickness and Accident or Short-Term

Appendix A

Disability (and Extended Disability, <u>Supplemental Extended Disability</u> or Long-Term Disability) Benefits.  This reduction for such attorney fees may not exceed 25 percent of the repayment due.  Attorney fees for services prior to denial of the initial application for DIB will not reduce the amount of repayment due.

(j)    As an alternative, or in addition, to the DIB procedures set forth above, the Carrier may authorize an organization to evaluate an Employee's claim for DIB and represent the Employee in the filing of a claim or an appeal for DIB. The cost of such representation will not be paid by the Employee.  Failure on the part of an Employee to comply, in a timely fashion, with reasonable requests from such an organization in conjunction with its representation of the Employee, will result in the suspension of an amount of Sickness and Accident or Short-Term Disability (or Extended Disability<u>, Supplemental Extended Disability</u> or Long-Term Disability) Benefits payments equal to the presumed amount of DIB until the Employee complies with such requests.

(k)    An Employee age 65 or older may be entitled to Retirement Benefits as early as the first day of total disability.  No reduction of Sickness and Accident or Short-Term Disability Benefits will be made until the Employee provides evidence that the Employee is receiving Retirement Benefits.

(l)    In addition to the requirements set forth in (b), (c) (d) and (<u>e</u>) above, the Carrier will have the right to require the Employee to complete an authorization form allowing the Social Security Administration to advise the Carrier of the status of a claim for DIB.  An Employee's failure to complete such authorization form within two weeks from the date of the notice informing the Employee of such requirement will result in the suspension of an amount of Sickness and Accident or Short-Term Disability (or Extended Disability<u>, Supplemental Extended Disability</u> or Long-Term Disability) Benefits payments equal to the presumed amount of DIB until such time as the authorization form is completed.

# Exhibit B

MetLife          10/12/2009 11:26:06 AM   PAGE   2/008   MetLife
091013F05555

# DELPHI

October 12, 2009

Andrew Gregos
3076 Crescent Drive NE
Warren, OH  44483-6302

Claim Number:  980710010278
Cisco:  55905

Re:   Social Security Disability Benefits (SSDIB) Award
      Delphi Benefit Plan Advances

**Dear Andrew Gregos**:

As you were previously informed, Delphi Corporation has received notification that you have
been awarded Social Security Disability Benefits (SSDIB) effective 3/01/07.  As you already
are aware, certain benefits provided to you by Delphi Corporation are subject to reduction by
any Social Security Benefits for which you become eligible.

The SSDIB determination process usually requires an extended period of time for completion.
So as not to cause you undue financial hardship while you were waiting for the determination,
benefit advances were made to you by Delphi Corporation.  These advances were equal to the
amount of SSDIB for which you could have been eligible.  Now that SSDIB has been awarded
to you, you are required to repay Delphi the amounts that were advanced to you for the period
for which you now have been awarded SSDIB.

The amount advanced to you through Delphi benefits, and which you now are required to repay
totals **$60,343.34** for the period 3/01/07 through 7/31/09, as follows:

| | |
|---|---|
| Sickness and Accident Benefits (S&A) | $14,825.32 |
| Extended Disability Benefits (EDB) | $45,518.02 |
| Retirement Benefits | $0.00 |
| Total Delphi Benefit Amount to be Repaid Within 30 Days | $55,058.93 |
| Total Delphi Benefit Amount to be Repaid After 30 Days | $60,343.34 |

Details about the calculation are attached. In addition, any taxes that were withheld from certain benefit payments may have an impact on the actual amount you must repay. Therefore, please review the attached information carefully.

You are required to repay the Total Delphi Benefit Amount advance of **$55,058.93** to Delphi Corporation within 30 days from the date of this letter. If repayment is not made within 30 days, you are required to repay the Total Delphi Benefit Amount advance of **$60,343.34** to Delphi Corporation and will no longer be eligible for the attorney fee credit.

Make your check or money order for **$55,058.93** payable to **"Delphi Corporation"**, and return it in the enclosed self-addressed envelope. Please include your Social Security number on the check.

Failure to repay the monies advanced to you within 30 days from the date of this notice will result in a suspension of any benefits until the full amount of the overpayment is recovered from you. If you are retired with benefits under the Delphi Retirement Program for Salaried Employees and you have an outstanding disability benefit overpayment, your eligibility for any future basic benefit increases or lump-sum payments under such Program will be impacted in accordance with the terms of the Program.

If you have any questions regarding the S&A and EDB overpayment, please call the National Benefit Center at **(866) 335-7444**.

Delphi Corporation

Enclosures

Andrew Gregos

**Re:    Delphi Advances To Be Repaid Due to Social Security Disability Benefits
(SSDIB) Award - Calculation Details**

**Sickness and Accident (S&A) Benefits**

You received both S&A and SSDIB for the period **3/01/07 through 9/24/07**. Your monthly
S&A scheduled benefit is **$7,155.00**. SSDIB was paid at $2,205.00 a month and increased to
$2,255.00 effective 12/1/07 and increased to $2,386.00 effective 12/1/08. Note, the
calculations below are displayed on a monthly basis. The monthly S&A paid varies based on
the number of benefit days in a month. In addition, your S&A may be reduced by other gross
payments or benefits.

Your S&A overpayment is detailed as follows:

| Period | Monthly S&A Paid | Should Have Been Paid | Difference | No. of Months | Total Overpaid |
|---|---|---|---|---|---|
| 03/01/2007 - 08/31/2007 | $7,155.00 | $4,950.00 | $2,205.00 | 6 | $13,230.00 |
| 09/01/2007 - 09/15/2007 | $3,577.50 | $2,475.00 | $1,102.50 | Partial | $1,102.50 |
| 09/16/2007 - 09/24/2007 | $1,873.89 | $1,212.39 | $661.50 | Partial | $661.50 |

The amount you are to repay has been determined as follows:

| | |
|---|---|
| Gross Overpayment | **$14,994.00** |
| Less FICA Tax | **$168.68** |
| Less Income Tax Withholding | **$0.00** |
| S & A amount to be repaid | **$14,825.32** |

Your balance has been reduced by **$168.68** of FICA tax. However, if you <u>do not</u> sign and
return the enclosed FICA Tax Adjustment form to this office, your balance will be <u>increased</u> by
this amount.

MetLife          10/12/2009 11:26:06 AM    PAGE    5/008    MetLife
091013F05555

## Extended Disability Benefits (EDB)

Detailed below is what you were paid by Delphi as compared to your actual EDB entitlement from 9/25/07 through 7/31/09.

| Period | Monthly EDB Paid | Should Have Been Paid | Difference | No. of Months | Total Overpaid |
|---|---|---|---|---|---|
| 09/25/2007 - 09/30/2007 | $1,144.00 | $703.80 | $441.00 | Partial | $441.00 |
| 10/01/2007 - 07/31/2009 | $5,724.00 | $3,519.00 | $2,205.00 | 22 | $48,510.00 |

The amount you are to repay has been determined as follows:

| | |
|---|---|
| Gross Overpayment | **$48,951.00** |
| Less FICA Tax | **$0.00** |
| Less Income Tax Withholding | **$3,432.98** |
| EDB Total Amount to be Repaid | **$45,518.02** |

Your balance has been <u>reduced</u> by **$3,432.98** to account for current year Income Tax withheld during the period benefits were advanced. However, if the balance is not paid in its entirety by 12/15/09, your balance will be increased by any remaining uncredited current year Income Tax.

10051808042 9

MetLife                10/12/2009 11:26:06 AM    PAGE    6/008    MetLife
091013F05555

### Attorney Fee Credit

You may be eligible for a reduction in the amount you are to repay, as it relates to attorney fees you are required to pay related to your successful appeal of an earlier Social Security Benefit denial. The following shows the calculation of your estimated attorney fee credit. The credit is the amount of attorney fee you incurred up to a maximum of 25% of your total advance.

To qualify for the attorney fee credit, you must:

1. Refund within 30 days of the date of this letter, the amount of the Estimated Adjusted Overpayment shown below.

| Benefit | Overpayment Amount | Up to 25% | Tax Credits | | Totals |
|---------|--------------------|-----------|-------------|---|--------|
| S&A | $14,994.00 | $1,386.15 | $*153.09 | = | $13,454.76 |
| EDB | $48,951.00 | $3,913.85 | $3,432.98 | = | $41,604.17 |
| Attorney Credit | | $5,300.00 | | = | $55,058.93 |

2. If you do not pay the estimated adjusted balance of $55,058.93 to Delphi Corporation within 30 days, you will forfeit any entitlement you now may have to the attorney fee credit, and you will be required to pay the total amount of $60,343.34, with no credit allowed for the attorney fee.

* Since the S&A benefit overpayment is reduced due to the attorney fee credit, the S&A FICA tax credit was adjusted accordingly.

Redacted

091013F05555

## Receipt for Adjustment of S&A FICA Tax

During 2007, you were advanced Sickness and Accident (S&A) benefits from which FICA tax amounting to **$168.68** was withheld. If you sign and return this form, you can receive credit against the advance for the amount of FICA tax, thereby reducing the amount which you must repay to Delphi Corporation.

In addition, as a result of the advances made to you, the FICA wages reported on your 2007 Form W-2 are incorrect. When your overwithheld FICA tax is credited in full, you will receive a corrected Form W-2C, which will adjust your FICA earnings with the Social Security Administration. In each year you repay money to Delphi Corporation, you also will receive a letter explaining the impact the amount repaid has on your taxable income. Upon receipt of the letter, you may wish to consult your tax advisor.

The following statement must be signed by you so Delphi can recover the amount of the FICA tax from the Internal Revenue Service and apply such amount against your S&A benefit overpayment.

> "I acknowledge receipt of a FICA tax adjustment in the amount stated above. In consideration of the above adjustment, I certify that I have not claimed, nor will I claim, a refund or credit of this FICA tax adjustment from the Internal Revenue Service."

Date _____        Employee
                                   Name   **Andrew Gregos**
                                          Type or Print

Social Security Number | Redacted

Employee
Signature _____

MetLife          10/12/2009 11:28:08 AM   PAGE  8/008   MetLife
091013F05555

### METROPOLITAN LIFE INSURANCE COMPANY
### EDB / S&A  ATTORNEY FEE CREDIT CALCULATION SHEET

Reviewer:  SHEILA POPE          Employee:  Andrew Gregos
DATE:   10/12/2009              SSN:  Redacted

| | |
|---|---|
| Date Retro. Award Paid Through: | 4/30/2009 |
| S&A Overpayment During The FICA Period: | $2,205.00 |
| FICA Period end date: | 3/31/2007 |
| S&A Overpayment during the NON-FICA period: | $12,789.00 |
| TOTAL S&A Overpayment: | $14,994.00 |
| EDB Overpayment thru the retro SS date: | $42,336.00 |
| TOTAL Gross Overpayment thru retro SS date: | $57,330.00 |

| | |
|---|---|
| S&A Overpayment Percentage of TOTAL: | 26.15% |
| EDB O/P Percentage of TOTAL (thru retro ss date): | 73.85% |
| | 100.00% |

| | | | | |
|---|---|---|---|---|
| ATTORNEY actually received: | | | | $5,300.00 |
| S&A Attorney fee CREDIT: | $5,300.00 | x | 26.15% | = $1,386.15 |
| EDB Attorney fee CREDIT: | $5,300.00 | x | 73.85% | = $3,913.85 |
| | | | | $5,300.00 |

RECALCULATION OF OVERWITHHELD FICA

| | | | | | |
|---|---|---|---|---|---|
| S&A FICA period percentage: | $2,205.00 | / | ####### | = | 14.71% |
| S&A NON-FICA period percentage: | $12,789.00 | / | ####### | = | 85.29% |
| | | | | | |
| S&A Attorney fee credit: | $1,386.15 | x | 14.71% | = | $203.85 |
| | | | | | |
| S&A FICA period overpayment: | $2,205.00 | | | | |
| ( - ) Attorney fee CREDIT: | $203.85 | | | | |
| ADJUSTED Overwithheld FICA: | $2,001.15 | x | 7.65% | = $ | 153.09 |

SUMMARY SECTION:

| S&A | |
|---|---|
| Total S&A Overpayment: | $14,994.00 |
| ( - ) S&A Attorney fee credit: | $1,386.15 |
| Remaining Overpayment: | $13,607.85 |
| ( - ) Over withheld FICA | $153.09 |
| ( - ) S&A Overwithheld FIT | $0.00 |
| BALANCE | $13,454.76 |

| EDB | |
|---|---|
| Total EDB Overpayment: | $48,951.00 |
| ( - ) EDB Attorney fee credit: | $3,913.85 |
| ( - ) EDB Overwithheld FIT | $3,432.98 |
| BALANCE | $41,604.17 |

Attorney Calculation Sheet - ATTYCALC.XL1

# Exhibit C



# Sedgwick CMS

DPH Holdings Corp., Benefit Center
P.O. Box 14422
Lexington, KY 40512-4422
Phone: 1-877-933-5744, Fax: 1-859-825-6897
TTY: 1-866-665-1287

Date: November 4, 2010


Mr. Mark Fraylick
Manager, DPH Holdings Corp., Workers' Compensation and Disability
5725 Delphi Drive
Troy, Michigan 48096-2815

Re: Andrew Gregos
Claim No.: 980710010278


Dear Mr. Fraylick:

This is in response to your request for confirmation that Mr. Gregos' Extended Disability benefits have been reinstated.

Our records reflect that Mr. Gregos' Extended Disability benefits have been retroactively reinstated commencing August 14, 2009. On behalf of DPH Holdings Corp., we will continue to recover Mr. Gregos' outstanding overpayment through his benefits, until full recovery has been made.

Based upon medical information, Mr. Gregos' benefits have been authorized through August 31, 2010. Upon receipt of additional medical information, determination for further benefits will be made. Enclosed you will find a copy of our payment authorization screen, which indicates benefits have been reinstated.

Sincerely,

Dan Battani, Assistant Manager II
Sedgwick Claims Management Services, Inc.
**DPH Holdings Corp., Benefit Center**


Enclosures


Cc: Claim File


Revised 06/10



# Exhibit D

# DELPHI

November 2, 2010

<u>Via Facsimile and U.S. Mail</u>

Michael A. Malyuk
Law Office of Michael A. Malyuk
2020 Front Street, Suite 305
Cuyahoga Falls, OH  44221

      RE:   Andrew Gregos

Dear Mr. Malyuk:

I am writing in response to your October 20, 2010 letter to Mark Fraylick regarding your client, Andrew Gregos.  This letter is submitted on behalf of DPH Holdings Corp. ("DPH Holdings"), the entity that, prior to October 6, 2010, was known as Delphi Corporation.

1.    Regarding the uncashed checks, under the Separation Allowance Plan maintained by Delphi (now DPH Holdings) at the time, even though Mr. Gregos chose not to sign the release of claims form (which would have entitled him to additional severance benefits), he was still entitled to a severance payment equivalent to one month of salary, which added up to $6,898 after taxes.  He was also paid his salary and car stipend for the second half of August 2009, which added up to $5,584.30.  These two items are the basis for the $12,482.30 he received.  Mr. Gregos was free to accept all of those payments – none were conditioned on his signing a release of claims or waiving any rights.

2.    Regarding the medical retirement issue, Mr. Fraylick's July 13, 2010 letter did **not** indicate that the issue would be considered by the EBPC.  Rather, Mr. Fraylick was referring only to Mr. Gregos' request for Extended Disability Benefits (EDB).  However, because DPH Holdings subsequently reinstated Mr. Gregos' eligibility for those benefits, the issue was moot and there was no longer anything for the EBPC to consider.

The concept of a "medical retirement" is entirely separate, and relates to a "Total & Permanent Disability" (T&PD) retirement under the former Delphi Retirement Program for Salaried Employees.  This was the salaried pension plan that DPH Holdings provided prior to July 31, 2009.  However, on that date the plan was terminated and the U.S. Pension Benefit Guaranty Corporation (PBGC) took over.  The PBGC has sole control over issues relating to the plan, and at this time DPH Holdings has no power or authority to make benefit determinations under the plan.  Accordingly, any inquiries regarding Mr. Gregos' eligibility for a T&PD retirement must be directed to the PBGC.

3.    Mr. Gregos was not entitled to health care from DPH Holdings after September 1, 2009.  Notwithstanding the fact that his *eligibility for EDB* has been reinstated retroactive to September 2, 2009, the fact remains that his *employment* with DPH Holdings was terminated effective September 1, 2009.  In March 2009 Mr. Gregos' job was identified for elimination as part of an ongoing reduction in force.  Effective September 1, 2009, DPH

November 2, 2010
Page 2 of 2

Holdings formally discharged *all* employees who were on disability leaves of absence whose jobs had been previously eliminated as part of a reduction in force. Thus, even if Mr. Gregos had never been cleared to return to work in August 2009, he still would have been discharged effective September 1, 2009. This discharge rendered him ineligible for continuing health care or life insurance coverage under the plans.

4.      Please see the preceding answer.

5.      DPH Holdings does not believe it is obligated to pay legal fees incurred by Mr. Gregos.

6.      Neither DPH Holdings nor MetLife have referred the overpayment to a collection agency. Accordingly, Mr. Gregos should not be receiving such calls, and any calls he is receiving are not at the direction of DPH Holdings or MetLife.

At the conclusion of your letter, you indicate that resolution of Mr. Gregos' bankruptcy claim can be discussed after resolution of the above items. However, his bankruptcy claim (copy attached) only seeks recovery for extended disability and medical retirement. The extended disability issue has been fully resolved in Mr. Gregos' favor. As for the medical retirement, as stated above, DPH Holdings no longer maintains the Retirement Plan, and currently has no authority for, or involvement in, T&PD determinations. Any such issues must be raised with the PBGC. Accordingly, it is DPH Holdings' position that the bankruptcy claim should be dismissed, regardless of any resolution or discussion of the above issues. If the claim is not voluntarily dismissed, DPH Holdings will file a motion in the near future asking the Bankruptcy Court to expunge the claim.

With respect to any remaining issues, DPH Holdings' position is as stated above. If you have specific questions you would like to discuss, let me know and I will be happy to set up a conference call with myself and benefits personnel.

Very truly yours,

Jeffery M. Peterson
Attorney
On Behalf of DPH Holdings Corp.

Enclosure

c:      Mark Fraylick

Claim #20017  Date Filed: 11/5/2009

# United States Bankruptcy Court
### Southern District of New York

Delphi Corporation et al. Claims Processing
c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue
El Segundo, California 90245

## Administrative Expense Claim Form

Debtor against which claim is asserted :
Delphi Corporation, *et al.* 05-44481

Case Name and Number
In re Delphi Corporation., *et al.* 05-44481
Chapter 11, Jointly Administered

NOTE: This form should not be used to make a claim in connection with a request for payment for goods or services provided to the Debtors prior to the commencement of the case. This Administrative Expense Claim Form is to be used solely in connection with a request for payment of an administrative expense arising after commencement of the case but prior to June 1, 2009, pursuant to 11 U.S.C. § 503.

Name of Creditor
*(The person or other entity to whom the debtor owes money or property)*

ANDREW C. GREGOS

Name and Address Where Notices Should be Sent
ANDREW C. GREGOS
3076 CRESCENT DR. NE.
WARREN, OH 44483
Telephone number:
330-393-3328

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
☐ Check box if you have never received any notices from the bankruptcy court in this case.
☐ Check box if the address differs from the address on the envelope sent to you by the court.

Claim #20017
USBC SDNY
Delphi Corporation, et al
05-44481 (RDD)

THIS SPACE IS FOR
COURT USE ONLY

ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:

Check here if this claim  ☐ replaces
                          ☐ amends a previously filed claim, dated: _____

### 1. BASIS FOR CLAIM
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☑ Other (Describe briefly)

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (Fill out below)
Your social security number  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
Unpaid compensation for services performed
from _____ to _____
     (date)        (date)

ADMINISTRATIVE EXTENDED DISABILITY AND MEDICAL RETIREMENT CLAIM

2. DATE DEBT WAS INCURRED  8-14-09

3. IF COURT JUDGMENT, DATE OBTAINED:

4. TOTAL AMOUNT OF ADMINISTRATIVE CLAIM: $  528,443.24
☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

5. Brief Description of Claim (attach any additional information): DEBTOR DENIED CLAIMANTS REQUESTS FOR MEDICAL RETIREMENT AND EXTENDED DISABILITY THEN ISSUED CLAIMANT ORDERS TO RETURN TO WORK AGAINST DOCTORS ORDERS. THE DEBTOR THEN SEVERED THE CLAIMANT AND STOPPED ALL PAYMENTS FOR DISABILITY, EVEN THOUGH CLAIMANT HAS BEEN AWARDED SOCIAL SECURITY DISABILITY.

6. CREDITS AND SETOFFS: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

7. SUPPORTING DOCUMENTS: *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. Any attachment must be 8-1/2" by 11".

8. DATE-STAMPED COPY: To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR
COURT USE ONLY

RECEIVED
NOV 05 2009
KURTZMAN CARSON CONSULTANTS

Date
11/3/09

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)

*Andrew C. Gregos*



☑ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return



0544481091105000000000120

# Exhibit E

ATTACHMENT 1
1 PAGE

Per
9/9/10
S

September 2, 2010

Michael A. Malyuk
Attorney At Law
2020 Front Street, Suite 305
Cuyahoga Falls, OH 44221

Re:    Andrew Gregos

Dear Mr. Malyuk:

**As administrator** of the DPH Holdings Corp. (DPH) disability benefit plans, I have conducted a secondary review of your claim that Mr. Gregos' disability benefits, which were discontinued on August 14, 2009, should be reinstated. Based on my review of the file and the information available to me, I have determined that Mr. Gregos' eligibility for disability benefits will be reinstated, retroactive to August 14, 2009.

Of course, this finding is not a guarantee of future benefits. Mr. Gregos will be treated like any other benefit recipient in accordance with the terms of the plan(s). Specifically, he will have to continue to demonstrate eligibility as requested by the plan administrator, Sedgwick CMS. Moreover, DPH Holdings Corp. reserves the right to amend, modify, suspend, increase, decrease, or terminate any of its benefit plans, policies, and programs at any time.

In addition, even though Mr. Gregos' benefits are being reinstated retroactive to August 14, 2009 at a monthly rate of $3,519, we are aware that Mr. Gregos was awarded a retroactive Social Security Disability Insurance benefit for the period March 1, 2007 through July 31, 2009. As a result of this award, Mr. Gregos' disability benefits were overpaid in the gross amount of $63,945.00. Our records reflect that Mr. Gregos was sent a letter dated October 12, 2009 outlining this overpayment. To date we have not received any monies towards this outstanding overpayment balance. Therefore, the retroactive monthly benefits will be applied to the balance. The overpayment balance will continue to be reduced by $3,519 each month until it is satisfied, which is expected to occur in February 2011.

Any questions regarding the ongoing administration of Mr. Gregos' disability benefits should be directed to the benefits administrator, Sedgwick CMS, at 877-933-5744.

Mark Fraylick

Mark Fraylick
Manager, Workers' Compensation & Disability
On Behalf of DPH Holdings Corp.
5820 Delphi Drive
MC 480.405.328
Troy, MI 48098

**DPH Holdings Corp.**    World Headquarters 5725 Delphi Drive, Troy, MI 48098, USA

# EXHIBIT E

DPH Holdings Corp.
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Ohio Bureau of Workers Compensation | Law Section Bankruptcy Unit | 30 W Spring St | PO Box 15567 | Columbus | OH | 43215-0567 |
| Ohio Bureau of Workers Compensation | Victoria D Garry Richard Cordray | Ohio Attorney Generals Office | 1600 Carew Twr 441 Vine St | Cincinnati | OH | 45202 |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 1 of 1

12/8/2010 12:01 AM
Ohio Workers Comp Special Parties

# EXHIBIT F

DPH Holdings Corp.
Special Parties

| Contact | Email |
|---|---|
| Joseph "Ted" Chapman | joseph.chapman@ohioattorneygeneral.gov |
| Victoria Garry | victoria.garry@ohioattorneygeneral.gov |

# EXHIBIT G

DPH Holdings Corp.
Special Parties

| Company | Address1 | City | State | Zip |
|---|---|---|---|---|
| Andrew C Gregos | 3076 Crescent Dr NE | Warren | OH | 44483 |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 1 of 1

12/7/2010 11:56 PM
Gregos Special Parties