November 29, 2010

The Honorable Robert D. Drain,

I am writing to you regarding my Administrative Claim # 20017, for Andrew C. Gregos, against Delphi. My claim, for the amount of $528,443.24 was filed on November 5, 2009. This included the lost disability income that Delphi quit paying in August of 2009 until I turn age 65 and estimated attorney fees.

Recently, Delphi requested that the Bankruptcy Court expunge my case. I request that my case not be expunged and that the Court instead rule in my favor.

Delphi continues to ignore ERISA laws, has failed to provide documentation that my attorney and I have requested and are using a variety of stalling tactics to keep my case from proceeding to Federal Court.

In an effort to keep this short, I am providing additional information comments and documents regarding my situation that has occurred primarily since the last documentation was sent to the court.

### Item 1

On September 2, 2010, Mark Fraylick, Manager, Workers' Compensation & Disability for Delphi, sent a letter to my ERISA attorney stating that he " conducted a secondary review of your claim that Mr. Gregos' disability benefits, which were discontinued on August 14th, 2009, should be reinstated. Based on my review of the file and the information available to me, I have determined that Mr. Gregos' eligibility for disability benefits will be reinstated retroactive to August 14, 2009." (See attachment 1)

Note that Mr. Fraylick states that my benefits that were discontinued on August 14th should be reinstated. He did not state that only my pay would be reinstated. Obviously he agreed that Delphi acted incorrectly based on the information he had. It should also be noted that this documentation has not been provided to us.

In addition, please note Mr. Fraylick fails to mention anything about being severed on September 1 or 2 of 2009. This will be discussed further in Item 3.

Mr. Fraylick also contacted my ERISA attorney regarding my situation and at that time requested that we drop the bankruptcy claim. He responded to Mr. Fraylick that he would discuss that with me.

Enclosed you will find a letter from my ERI SA attorney to Mr. Fraylick regarding several of our concerns and that the bankruptcy claim could be eliminated by resolving our concerns. (See attachment 2)

It should also be noted that this is not the first time Delphi had claimed to reinstate me. November 11, 2009 The Delphi National Benefit Center issued a letter stating "as a

sickleave/bankruptcy/appeal bankruptcy nov 29 2010.doc

Delphi salaried employee rehired with seniority, you will be eligible for various benefits on your rehire date." (See attachment 3) In addition, I even received new insurance cards. When I contacted the Benefit Center, I found that I was not rehired as the letter had stated and the insurance cards were not active.

Our next contact was from Sedgwick CMS.

**Item 2**

A letter, dated September 14, 2010, was received from Sedgwick CMS who manages Delphi's National Benefit Center. (See Attachment 4) Below is a summary of what transpired regarding that request:

- Sedgwick requested a form to be completed by my doctor.
- The form was delayed from my doctor and Sedgwick was contacted to request additional time on October 6th. Additional time was granted.
- The form was received from the doctor and I contacted Sedgwick, however, my phone calls were not immediately returned.
- I later discovered that my Doctor was out of the country
- November 6th I received a letter of suspension of my Extended Disability Benefits (EDB). The letter was dated October 7, the day after I contacted Delphi regarding my request for additional time. (See Attachment 5) The envelope was dated November 3rd.
- I wrote a letter to Sedgwick on November10, 2010 (See attachment 6). This letter was sent along with the Doctor's form
- Finally, I received a return phone call from Sedgwick and was told they would call me when the letter was received. Per U.S. Postal Service my letter and the form was received on November 12, 2010. Eighteen days have passed and I have yet to receive a response from Sedgwick.

I am unaware if I have been reinstated, if I am receiving benefits or have any idea of my status.

Delphi and their representatives continue to fail to provide information, fail to communicate and fail to live up to their commitments as defined by the Salaried Benefits Plan.

The next contact was via letter from Jeffery Peterson, a Delphi attorney.

**Item 3**

Most recently a letter was sent to my ERISA attorney from Jeffery Petterson. A copy of that letter is attachment 7. Below are my comments regarding that letter.

**Part 2** of his letter pertains to the medical retirement issue. Mr. Peterson states that Mr. Fraylick did not indicate that the Employee Benefit Plan Committee (EBPC) would

consider medical retirement. However, in previous correspondence he stated that it would be reviewed at a forthcoming meeting. To the best of my knowledge, that did not occur.

We requested that I be reinstated to disability leave and we had previously requested, per the Delphi guidelines, that my medical retirement be reconsidered by the EBPC. I personally requested this review several times. My earliest request for medical retirement to the Delphi National Benefit Center and the EBPC was in January of 2009 and several more times in 2009.

My ERISA attorney also requested this several times and we never received a response. Mr. Peterson states that this is a moot point since the EDB was reinstated. My response is that is not acceptable!

The benefit plan required that I had to apply for medical retirement after an extended period of time on Extended Disability. In addition, I could appeal that decision through the EBPC and appeals are required to occur within a specific time frame. Delphi has never afforded me that opportunity. In fact they have ignored all of our requests. Mr. Peterson proceeds to state that "medical retirement" or "total and permanent disability" was the salaried pension plan prior to July 31, 2009. This just seems too convenient, ignore all requests for appeal, including those made prior to July 31, then claim that the plan was terminated and is now under control of the Pension Benefit Guarantee Corporation (PBGC).

Mr. Peterson claims Delphi has no control over the plan, yet when I contacted the PBGC about an estimate for medical retirement, they contacted Delphi. The PBGC stated in my phone call with them on October 28, 2010 that Delphi is responsible to classify me as "medically retired", not the PBGC. They are both claiming the other has responsibility for this action.

This entire premise is absolutely ridiculous! In fact, is this not a violation of the ERISA laws, as they have not followed their own benefit plan? Delphi claims that my "benefits" have been reinstated to EDB. How do you reinstate selective benefits? In other words, how do you reinstate the monetary benefit and not medical or life insurance benefits?

**Part 3** discusses eligibility. Notice that Mr. Peterson emphasized the " **eligibility for EDB**". He states that I was not eligible for health care from DPH Holdings after September 1, 2009. He is somewhat correct in his statement due to the fact that their position is I was severed effective September 1, 2009. I have been on COBRA since that time. In his second statement of this section, Mr. Peterson states "notwithstanding the fact that his **eligibility for EDB** has been reinstated retroactive to September 2, 2009, the fact remains that his **employment** with DPH Holdings was terminated effective September 1, 2009."

First, Peterson states that **eligibility for EDB** has been reinstated retroactive to September 2, 2009. I am not sure how he arrived at this date. Consider Mr. Fraylick's letter dated September 2, 2010, in which he states that my benefits were reinstated retroactive to August 14, 2009. There seems to be a conflict between the two letters. To

sickleave/bankruptcy/appeal bankruptcy nov 29 2010.doc

the best of my knowledge, we have never seen this September 2, 2009 date until Mr. Peterson's letter.

In addition, when I look up reinstate in the dictionary, the definition is "to put back in a former position or condition; establish again". On August 14th, the date Mr. Fraylick identifies as my reinstatement, my position was on extended disability leave, collecting monthly monetary benefits, covered by medical and life insurance. Therefore, to use a phrase that Mr. Peterson used, any claim that I was severed on September 1, 2009 is a moot point!

As for Mr. Peterson's claim that my job was identified for elimination is bogus. I was the only person in that function or job title; it was a "one of a kind" job. Delphi's practice for people returning from sick leave is, as I was previously advised, when a person returned to work, a job in that level and classification would be available, however, it may not be the exact same job. This was to enable a department to replace a person that would be absent for an extended period and continue to function effectively.

Delphi did just that! William Flynn Jr. was assigned to replace me and performed my previous job functions. Unfortunately, Bill was in this job when it was identified for elimination and he was severed. My question therefore becomes "how many times can you eliminate the same "one of a kind" job"? I believe that casts doubt onto Peterson's claim that **my** job was identified for elimination since it was **Bill Flynn's job** and he was eliminated!

Peterson also claims "DPH Holdings formally discharged *all* employees who were on disability leaves of absence who's jobs had been previously eliminated as part of a reduction in force". Why have we not received any communication to this effect previously? Why bother sending me through medical for an "exam" in August 2009 if this was the plan? The company surely knew about this by mid-August. If this were the case why did Mr. Fraylick, the "Manager, Worker's Compensation & Disability" not instruct us of that position? Surely he would have known about it! It appears that these rules are being made up as we go along.

**Part 4** deals with insurance costs and reimbursements. Mr. Peterson refers to the preceding answer. So I will do the same. Focus on the part that states I was reinstated retroactively to August 14, 2009. If that were the case, I would have not incurred any of these additional expenses. I assume this could be pursued in Federal court, if we end up there.

**Part 6** pertains to the collection agency. It was determined that they were calling regarding an Albert Gregos, not Andrew.

**Now it is time to review Mr. Peterson's conclusions.** As I mentioned in part 2 above, Delphi and the National Benefit Center completely ignore all requests for appeal, including those made prior to July 31, then claim that the plan was terminated on July 31, 2009 and is now under control of the Pension Benefit Guarantee Corporation (PBGC). Mr. Peterson claims Delphi has no control over the plan, yet when I contacted the PBGC

about an estimate for medical retirement, they contacted Delphi. The PBGC stated in my phone call with them on October 28, 2010 that Delphi is responsible to classify me as "medically retired", not the PBGC.

As far as my bankruptcy claim and Mr. Peterson's statement to file a motion in Bankruptcy Court to expunge my claim, that is why we are here now. We have provided a means to resolve this situation. Delphi, however, has made no attempt to resolve this issue

In his final paragraph, Mr. Peterson states that he would be willing to set up a meeting, including Benefits Personnel to discuss specific questions. I have numerous questions and would be happy to review those with my ERISA attorney, Mr. Peterson and the appropriate Delphi representatives. In an effort to keep confidentiality in my ERISA case, I feel it necessary to withhold those questions and comments at this time.

I am concerned that Delphi can claim I have been reinstated but I am only eligible for the monetary portion of extended disability benefits. Nowhere in our benefits book does it state that they could selectively apply which benefits they give to people. Nor does it say that certain employees are eligible for only certain benefits. In addition, since I have not received any statements, I have no record that I am being paid EDB or that they have applied anything to the Social Security repayment.

Problems still exist and, in my opinion, Delphi has made no effort to resolve the situation except to attempt to deceive me and possibly even the courts.

In fact due to the recent actions of Delphi, I am now incurring an additional expense for my family's medical coverage increasing my medical expenses over the next 10 years by $113,160. That was not factored into my original claim since it was not known at the time it was filed.

If my claim can be amended, it would increase my claim to $651,603.24.

Again I ask that my claim not be expunged and that I be awarded the full value of my claim.

Thank you for your consideration,

Andrew C. Gregos
3076 Crescent Dr. NE
Warren, Ohio 44483

330-393-3328

sickleave/bankruptcy/appeal bankruptcy nov 29 2010.doc

ATTACHMENT 1
1 PAGE

9/9/10
S

September 2, 2010

Michael A. Malyuk
Attorney At Law
2020 Front Street, Suite 305
Cuyahoga Falls, OH 44221

    Re:   Andrew Gregos

Dear Mr. Malyuk:

As administrator of the DPH Holdings Corp. (DPH) disability benefit plans, I have conducted a secondary review of your claim that Mr. Gregos' disability benefits, which were discontinued on August 14, 2009, should be reinstated. Based on my review of the file and the information available to me, I have determined that Mr. Gregos' eligibility for disability benefits will be reinstated, retroactive to August 14, 2009.

Of course, this finding is not a guarantee of future benefits. Mr. Gregos will be treated like any other benefit recipient in accordance with the terms of the plan(s). Specifically, he will have to continue to demonstrate eligibility as requested by the plan administrator, Sedgwick CMS. Moreover, DPH Holdings Corp. reserves the right to amend, modify, suspend, increase, decrease, or terminate any of its benefit plans, policies, and programs at any time.

In addition, even though Mr. Gregos' benefits are being reinstated retroactive to August 14, 2009 at a monthly rate of $3,519, we are aware that Mr. Gregos was awarded a retroactive Social Security Disability Insurance benefit for the period March 1, 2007 through July 31, 2009. As a result of this award, Mr. Gregos' disability benefits were overpaid in the gross amount of $63,945.00. Our records reflect that Mr. Gregos was sent a letter dated October 12, 2009 outlining this overpayment. To date we have not received any monies towards this outstanding overpayment balance. Therefore, the retroactive monthly benefits will be applied to the balance. The overpayment balance will continue to be reduced by $3,519 each month until it is satisfied, which is expected to occur in February 2011.

Any questions regarding the ongoing administration of Mr. Gregos' disability benefits should be directed to the benefits administrator, Sedgwick CMS, at 877-933-5744.

*Mark Fraylick*

Mark Fraylick
Manager, Workers' Compensation & Disability
On Behalf of DPH Holdings Corp.
5820 Delphi Drive
MC 480.405.328
Troy, MI 48098

**DPH Holdings Corp.**   World Headquarters 5725 Delphi Drive, Troy, MI 48098 USA

ATTACHMENT 2
2 PAGES

**Via Facsimile (248) 813-1111**

October 20, 2010

Delphi
World Headquarters and Customer Center
Attn: Mr. Mark Fraylick
5725 Delphi Drive
Troy, Michigan 48098-2815

Re:  Andrew Gregos

Dear Mr. Fraylick:

Following up a couple of conversations we had recently, and with regard to concerns since the receipt of your letter dated 9/2/10, there are several loose ends with regard to Mr. Gregos' situation and I am addressing each of them below and would request your responses as quickly as possible:

1. There are uncashed checks in the amount of $12,482.30 that were connected with a severance package sent to him sometime ago; those checks have not been cashed due to the language of the severance documentation and the consequences that would arise with regard to any benefit plans that currently exist. Please advise if they are related to severance and, if cashed, would eliminate all benefit programs;

2. We have never had a decision on the medical retirement issue and your letter of July 13, 2010 indicated that the EBPC would consider the matter at a forthcoming meeting. We have never heard and believe that a decision is long overdue and likely in violation of ERISA rules from a procedural standpoint at this time. You were to provide me a name and number to follow-up;

3. With the reinstatement of disability insurance as outlined in your letter of 9/2/10, what about the reinstatement of life insurance and the medical insurance? Mr. Gregos continues to receive bills for COBRA and has not received any information on reinstatement of benefits. Since your letter is dated 9/2/10, he should have received something by now stating that benefits have been reinstated.

4. With regard to the reinstatement of disability per the letter of 9/2/10, will there be reimbursement for medical expenses/insurance that had to be procured as the result of the lapse in medical coverage while Mr. Gregos was not on benefits? Basically, subject to a definitive claim that can be submitted, he has had COBRA

ATTACHMENT 2

coverage since 9/09 at the rate of $372.00 per month and when he was with Delphi his premium was $142.00 a month. The $230.00 difference times twelve (12) to fifteen (15) months (November 10 is when the COBRA ends) should be reimbursed. We believe November 2010 is when COBRA ends. If COBRA does end in November, then Mr. Gregos will have a significant increase in his medical insurance cost and we will expect that amount will also be reimbursed. <u>In addition</u>, when reinstated on the medical, we are requesting that the deductible be waived or credited since on the COBRA they have satisfied the deductible;

5. Mr. Gregos has gone to considerable expense to involve me as counsel for him in this ERISA matter. There are two (2) issues regarding fees:

   A. He should get a credit for the $5,300.00 that he paid to his Social Security lawyer and that should be deducted from the overpayment amount. He did respond to you timely (within thirty (30) days) when dealing with that and then he was severed and then didn't hear from anyone until October 2009 which is two (2) months after Delphi severed him. Advise if Delphi's position is in accordance with any contract terms;

   B. Will you reimburse Mr. Gregos for reasonable attorney fees paid to me because of the necessary actions to communicate with your offices and the delays that have prompted additional stress and problems for this family?

6. If you have turned repayment of the Social Security over to a collection agency, as stated in previous letters, then that should be eliminated and any corrections to his credit rating be corrected. Mr. Gregos continues to receive phone calls regarding the overpayment and I have advised him to run a credit report to determine whether there is anything reflected on that report. Please stop the calls.

With regard to questions about the bankruptcy and the claim filed, that can be discussed and likely resolved after these basic concerns that I have listed above have been addressed fully.

Thank you very much and please respond as quickly as possible.

Very truly yours,


Michael A. Malyuk
MAM/es

**National Benefit Center**
**Delphi Benefits**
P.O. Box 14673
Lexington, Kentucky 40512-0
1-866-DELPHI4 (335-7444)
1-888-688-2860 TTY
www.Delphinbc.com

November 11, 2009

Andrew C. Gregos
3076 Crescent Dr
Warren, OH  44483-6302


Dear Andrew Gregos:

As a Delphi salaried employee rehired with seniority, you will be eligible for various benefits on your rehire date.

The Options Enrollment form should be completed and returned to the National Benefit Center at the address listed above within 31 days.  Please review all documents carefully before completing your election.

**For additional information, please visit the web site for the National Benefit Center at www.delphinbc.com or the Benefits Home Page on Apollo for the following information:**

- **Summary Plan Description (SPD)**
A general overview of the benefits available to you.

- **Health Plan Benefit Summary Sheets (available only on www.delphinbc.com)**
These sheets briefly explain coverage levels available for each plan. Also remember to check the web site for your elected plan and choose a primary care physician if you have elected an HMO or POS option.

- **Guide to Dependent Eligibility (GDE)**
This guide will help you determine whether you have eligible dependents that may be added to your healthcare coverage.

- **Dependent Add Kit (DEPA)**
Salaried employees' kit to add dependents to your health care coverage.  Your dependents will not be added until all forms and required documentation are received.

NEW 10/01/2008

ATTACHMENT 4
1 PAGE

## Sedgwick CMS
Delphi Benefit Center
P.O. Box 14422
Lexington, KY 40512-4422
Phone: 1-877-933-5744, Fax: 1-859-825-6897
TTY: 1-866-665-1287

Date: 09/14/2010

ANDREW C. GREGOS
3076 CRESCENT DR. NE
WARREN, OH 44483-

Claim No.: 980710010278

*[handwritten notes in margin: 10/6/10, 345, $0.14 P, contacted form to notify not doc, Gutted form Back file, M Pablo will note file]*

**Re: Supplementary Report of Claim for Disability Benefits**

Dear Mr. GREGOS:

Enclosed please find the following:

- **Instructions to Attending Physician**—*Deliver to your Attending Physician*
- **Disability Claim form**—*Deliver to your Attending Physician*

It is your responsibility to ensure that your physician submits all necessary medical information pertaining to your claim. Any fees associated with the medical records are the employee's responsibility.

Please make a note of your claim number—which can be found on the upper left-hand side of your claim form—and refer to it in future correspondences.

The completed form must be returned as soon as possible to:

Delphi Benefit Center
P.O. Box 14422
Lexington, KY 40512-4422

If the completed form is not received promptly, payment of disability benefits will be suspended. If there is any reason the completed form cannot be returned promptly, it is your responsibility to advise us immediately.

If you have any questions about S&A, Extended Disability Benefits, or Workers' Compensation Benefits, please call 1-877-933-5744 to speak with a Customer Service Associate.

Sincerely,

**Delphi Benefit Center**

ATTACHMENT 5
1 PAGE

Rec'd 11/6/10
Envelope date 11/3/10



**Sedgwick CMS**
Delphi Benefit Center
P.O. Box 14422
Lexington, KY 40512-4422
Phone: 1-877-933-5744, Fax: 1-859-825-6897
TTY: 1-866-665-1287

Date: 10/07/2010 ?

ANDREW GREGOS
3076 CRESCENT DR. NE
WARREN, OH 44483

Claim No.: 980710010278

**Re: Suspension of Extended Disability Benefits (EDB)**

Dear Participant:

A request for current medical certification of your disability was previously mailed to your attention. To date, your response has not been received.

**As a result, your Extended Disability Benefits (EDB) have been suspended, effective 11/1/2010.**

Please have your attending physician complete the enclosed medical statement, based on a recent medical examination, and return it to the Delphi Benefit Center in the envelope provided. When the completed medical statement is received by the Delphi Benefit Center, your claim will be reviewed to determine if you qualify for further benefits.

**If the completed medical statement is not received by the Delphi Benefit Center within 30 days, your EDB will be terminated.**

If you have any questions about S&A, Extended Disability Benefits, or Workers' Compensation Benefits, please call 1-877-933-5744 to speak with a Customer Service Associate.

Sincerely,

**Delphi Benefit Center**

Enclosures

Revised 02/09

Called Left message to have then call me
Nov. 8, 2010   4:40 PM

Nov 9, 2010  5:40 PM  left message
to call me

ATTACHMENT 6
1 PAGE

Sent
NOVEMBER 10, 2010

Sedgwick CMS
Delphi Benefit Center
P.O. 14422
Lexington, KY 40512-4422

To whom it may concern,

I am writing to you in regard to my Extended Disability Benefits, claim number 980710010278. As you may know, I spoke with Sonya in your office on October 6, 2010 and requested additional time, as I had not received the completed report from my doctor. She stated that that was not a problem and would note that in the file.

On November 6th I received your letter dated October 07, 2010 regarding suspension of Extended Disability Benefits (EDB). I am not sure why this letter is dated October 7th and was not sent until nearly a month later (The Envelope is dated November 3, 2010.) Enclosed you will find the report completed by Dr. Sahgal. It appears that some sections could have greater detail. Unfortunately, I recently discovered that Dr. Sahgal is out of the country.

I have called Sedgwick several times to discuss what action to take and have left numerous messages, as directed on your system. However, I have yet to receive a return phone call.

Therefore, I am providing the information that I have at this time. If you need additional information please contact me and I will provide it.

Thank You,


Andrew C. Gregos
3076 Crescent Dr. NE
Warren, Ohio 44483

330-393-3328

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____ Cody Willis ☐ Agent ☐ Addressee<br>B. Received by ( Printed Name)   C. Date of Delivery |
| 1. Article Addressed to:<br>SEDGWICK CLAIMS MGT.<br>Delphi BENEFIT CENTER<br>P.O. Box 14422<br>LEXINGTON, KY 40512-4422 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☑ Certified Mail   ☐ Express Mail<br>☐ Registered   ☐ Return Receipt for Merchandise<br>☐ Insured Mail   ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee)   ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | 7009 2250 0001 3863 6840 |
| PS Form 3811, February 2004 | Domestic Return Receipt   102595-02-M-1540 |

2488131122                                                         03:21:52 p.m.    11-02-2010       2/4

Attachment 7

3 PAGES

# DELPHI

November 2, 2010

<u>Via Facsimile and U.S. Mail</u>

Michael A. Malyuk
Law Office of Michael A. Malyuk
2020 Front Street, Suite 305
Cuyahoga Falls, OH 44221

      RE:   Andrew Gregos

Dear Mr. Malyuk:

I am writing in response to your October 20, 2010 letter to Mark Fraylick regarding your client, Andrew Gregos. This letter is submitted on behalf of DPH Holdings Corp. ("DPH Holdings"), the entity that, prior to October 6, 2010, was known as Delphi Corporation.

1. Regarding the uncashed checks, under the Separation Allowance Plan maintained by Delphi (now DPH Holdings) at the time, even though Mr. Gregos chose not to sign the release of claims form (which would have entitled him to additional severance benefits), he was still entitled to a severance payment equivalent to one month of salary, which added up to $6,898 after taxes. He was also paid his salary and car stipend for the second half of August 2009, which added up to $5,584.30. These two items are the basis for the $12,482.30 he received. Mr. Gregos was free to accept all of those payments -- none were conditioned on his signing a release of claims or waiving any rights.

2. Regarding the medical retirement issue, Mr. Fraylick's July 13, 2010 letter did <u>**not**</u> indicate that the issue would be considered by the EBPC. Rather, Mr. Fraylick was referring only to Mr. Gregos' request for Extended Disability Benefits (EDB). However, because DPH Holdings subsequently reinstated Mr. Gregos' eligibility for those benefits, the issue was moot and there was no longer anything for the EBPC to consider.

    The concept of a "medical retirement" is entirely separate, and relates to a "Total & Permanent Disability" (T&PD) retirement under the former Delphi Retirement Program for Salaried Employees. This was the salaried pension plan that DPH Holdings provided prior to July 31, 2009. However, on that date the plan was terminated and the U.S. Pension Benefit Guaranty Corporation (PBGC) took over. The PBGC has sole control over issues relating to the plan, and at this time DPH Holdings has no power or authority to make benefit determinations under the plan. Accordingly, any inquiries regarding Mr. Gregos' eligibility for a T&PD retirement must be directed to the PBGC.

3. Mr. Gregos was not entitled to health care from DPH Holdings after September 1, 2009. Notwithstanding the fact that his *eligibility for EDB* has been reinstated retroactive to September 2, 2009, the fact remains that his *employment* with DPH Holdings was terminated effective September 1, 2009. In March 2009 Mr. Gregos' job was identified for elimination as part of an ongoing reduction in force. Effective September 1, 2009, DPH

November 2, 2010
Page 2 of 2

    Holdings formally discharged *all* employees who were on disability leaves of absence whose jobs had been previously eliminated as part of a reduction in force. Thus, even if Mr. Gregos had never been cleared to return to work in August 2009, he still would have been discharged effective September 1, 2009. This discharge rendered him ineligible for continuing health care or life insurance coverage under the plans.

4.   Please see the preceding answer.

5.   DPH Holdings does not believe it is obligated to pay legal fees incurred by Mr. Gregos.

6.   Neither DPH Holdings nor MetLife have referred the overpayment to a collection agency. Accordingly, Mr. Gregos should not be receiving such calls, and any calls he is receiving are not at the direction of DPH Holdings or MetLife.

At the conclusion of your letter, you indicate that resolution of Mr. Gregos' bankruptcy claim can be discussed after resolution of the above items. However, his bankruptcy claim (copy attached) only seeks recovery for extended disability and medical retirement. The extended disability issue has been fully resolved in Mr. Gregos' favor. As for the medical retirement, as stated above, DPH Holdings no longer maintains the Retirement Plan, and currently has no authority for, or involvement in, T&PD determinations. Any such issues must be raised with the PBGC. Accordingly, it is DPH Holdings' position that the bankruptcy claim should be dismissed, regardless of any resolution or discussion of the above issues. If the claim is not voluntarily dismissed, DPH Holdings will file a motion in the near future asking the Bankruptcy Court to expunge the claim.

With respect to any remaining issues, DPH Holdings' position is as stated above. If you have specific questions you would like to discuss, let me know and I will be happy to set up a conference call with myself and benefits personnel.

Very truly yours,

Jeffery M. Peterson
Attorney
On Behalf of DPH Holdings Corp.

Enclosure

c:   Mark Fraylick

2488131122                                                                03:22:21 p.m.    11-02-2010                4/4

Claim #20017  Date Filed: 11/5/2009

| United States Bankruptcy Court | Administrative |
|---|---|
| Southern District of New York<br>Delphi Corporation et al. Claims Processing<br>c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue<br>El Segundo, California 90245 | Expense Claim<br>Form |

**Debtor against which claim is asserted:**
Delphi Corporation, et al. 05-44481

**Case Name and Number**
In re Delphi Corporation, et al. 05-44481
Chapter 11, Jointly Administered

NOTE: This form should not be used to make a claim in connection with a request for payment for goods or services provided to the Debtors prior to the commencement of the case. This Administrative Expense Claim Form is to be used solely in connection with a request for payment of an administrative expense arising after commencement of the case but prior to June 1, 2009, pursuant to 11 U.S.C. § 503.

**Name of Creditor**
(The person or other entity to whom the debtor owes money or property)
ANDREW C. GREGOS

**Name and Address Where Notices Should be Sent**
ANDREW C. GREGOS
3076 CRESCENT DR. N.E.
WARREN, OH 44483

**Telephone No.**
330-393-3328

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
☐ Check box if you have never received any notices from the bankruptcy court in this case.
☐ Check box if the address differs from the address on the envelope sent to you by the court.

Claim #20017
USBC SDNY
Delphi Corporation, et al
05-44481 (RDD)

**THIS SPACE IS FOR COURT USE ONLY**

**ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:**

Check here if this claim  ☐ replaces
                         ☐ amends a previously filed claim, dated: _____

**1. BASIS FOR CLAIM**
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☑ Other (Describe briefly)
ADMINISTRATIVE EXTENDED DISABILITY AND MEDICAL RETIREMENT CLAIM

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (Fill out below)
Your social security number  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
Unpaid compensation for services performed
from _____ to _____

**2. DATE DEBT WAS INCURRED**  8-14-09

**3. IF COURT JUDGMENT, DATE OBTAINED:**

**4. TOTAL AMOUNT OF ADMINISTRATIVE CLAIM:** $ 528,443.24
☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

**5. Brief Description of Claim** (attach any additional information): DEBTOR DENIED CLAIMANTS REQUESTS FOR MEDICAL RETIREMENT AND EXTENDED DISABILITY THEN ISSUED CLAIMANT ORDERS TO RETURN TO WORK AGAINST DOCTORS ORDERS. THE DEBTOR THEN SEVERED THE CLAIMANT AND STOPPED ALL PAYMENTS FOR DISABILITY, EVEN THOUGH CLAIMANT HAS BEEN AWARDED SOCIAL SECURITY DISABILITY.

**6. CREDITS AND SETOFFS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

**7. SUPPORTING DOCUMENTS:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. Any attachment must be 8-1/2" by 11".

**8. DATE-STAMPED COPY:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

**THIS SPACE IS FOR COURT USE ONLY**

RECEIVED
NOV 05 2009
KURTZMAN CARSON CONSULTANTS

**Date**  11/3/09

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)
[signature]


☑ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return


0544481091105000000000120