BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Richard J. Bernard

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>DPH HOLDINGS CORP., et al.,<br><br>    Reorganized Debtors | Chapter 11<br><br>Case No. 05-44481 (RDD)<br><br>(Jointly Administered) |

**RESPONSE OF THE OHIO BUREAU OF WORKERS' COMPENSATION TO
REORGANIZED DEBTORS' SUPPLEMENTAL REPLY TO RESPONSE OF
CLAIMANT TO DEBTORS' OBJECTION TO PROOF OF CLAIM NUMBER 1294
FILED BY OHIO BUREAU OF WORKERS' COMPENSATION**

The Ohio Bureau of Workers' Compensation ("BWC") hereby responds (the "Supplemental Response") to the supplemental reply (the "Supplemental Reply"; Docket No. 20977) of the within reorganized debtors (the "Reorganized Debtors") to BWC's response, dated July 16, 2009 (the "Response"), to the thirty-fourth omnibus objection to claims, dated June 22, 2009 (the "Objection"), within debtors (the "Debtors"; and Delphi Corp., the "Debtor") and, in support, respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.    On December 27, 2005, BWC filed its proof of claim for assessments, which was assigned claim number 1294 ("Claim 1294"), and its proof of claim for reimbursements, which was assigned claim number 1301 ("Claim 1301"). BWC assesses amounts to all self-insured employers based upon certain percentages of the amounts paid in actual workers' compensation benefits for the cost of administration of the workers' compensation system in Ohio. Claim 1294

103642772

is an estimate of assessments owed to BWC on account of actual and projected injuries that occurred while the Debtor enjoyed the benefits of self-insured status. Claim 1301 constitutes an estimate of actual and projected workers' compensation benefits to be paid by BWC to the Debtor's workers for injuries that occurred prepetition. The assessments sought by BWC under Claim 1294 are taxes entitled to priority under section 507(a)(8)(E). However, because under Ohio law these self-insured assessments are based on compensation actually paid, BWC must estimate its claim for self-insured assessments as contemplated is section 502(c). However, BWC's claim for self-insured assessments is entitled to priority under section 502(i). The within proceeding is solely to determine the sufficiency of Claim 1294 as a priority tax claim under Bankruptcy Code section 507(a)(8)(E) by operation of Bankruptcy Code section 502(c) and 502(i).

  2. The Reorganized Debtors agree that the assessments included in Claim 1294 are the types of claims entitled to tax priority status under section 507(a)(8)(E) of the Bankruptcy Code; however, they take the position that the Debtors have paid all of the prepetition assessments due to BWC. BWC contests this position. To date, there are unpaid assessments which are capable of concrete calculation, and there will be future assessments, that relate to workers' compensation benefits that arose immediately prior to the commencement of these cases as a result of the Debtor's election to operate as a self-insured employer and its employment of individuals in Ohio. Section 502(i) of the Bankruptcy Code deems the assessments that "arise" postpetition to be prepetition priority taxes.

  3. The Reorganized Debtors, in their Supplemental Reply, attempt to undermine the decision entered in <u>In re Belden Locker Company</u>, No. 06-60316, 2008 WL 762243 (Bankr. N.D. Ohio Mar. 21, 2008); however, <u>Belden</u> is the only case that the Reorganized Debtors cite

that is on point and specifically addresses the very same statutes upon which BWC relies to support its deemed prepetition tax priority status for Claim 1294. The other cases cited by the Reorganized Debtors address untimely claims and amendments of and relation back to timely filed proofs of claim for federal, state and local income and sales taxes and are inapposite to BWC's assessments. BWC timely filed Claim 1294. Moreover, the income and sales excise taxes cited in the Supplemental Reply arise based upon the underlying income earned or sales generated in the respective period. Here, the "transaction" (for purposes of Bankruptcy Code section 507(a)(8)(E)) upon which the assessments are based is the Debtor's election of self-insured employer status and the employment of individuals in Ohio immediately prior to the commencement of the within cases.

## **BACKGROUND**

4. Prior to its petition date of October 8, 2005 and during its postpetition operations, the Debtor was an employer amenable to Ohio's workers' compensation laws. An amenable employer can comply with Ohio's workers' compensation laws in one of only two ways, either (a) by paying premiums into Ohio's State Fund or (b) by applying for, and being granted the privilege of being, "self-insured." The Debtor operated as a self-insured employer under Ohio's workers' compensation laws and continued to operate as a self-insured employer after its petition date.

5. In addition to paying workers' compensation claims directly, and various other duties and responsibilities imposed by Ohio law, all self-insured employers must pay certain self-insured assessments. These assessments are created by and governed by O.R.C. § 4123.35, O.R.C. § 4123.351, O.R.C. § 4123.342, Ohio Administrative Code Rule 4123-19-15, and Ohio Administrative Code Rule 4123-17-32.

6. Ohio law is clear and unambiguous. Once an employer applies to be, and is granted the privilege of being, a self-insured employer, Ohio law imposes the pecuniary burden of paying self-insured assessments. Because Ohio's self-insured assessments are calculated based on workers' compensation benefits paid to an employer's injured workers, the precise amount of self-insured assessments is not known until all the Debtor's workers' compensation benefits to the Debtor's injured workers have been paid. Accordingly, BWC has estimated its self-insured assessments for purposes of Claim 1294.

7. On or about October 27, 2009, counsel for the Reorganized Debtors sent BWC a letter advising BWC that the Debtor's/Reorganized Debtors' representative would not be attending the October 28, 2009 hearing/conference regarding the revocation of the Debtor's self-insured status. A copy of this letter is annexed hereto as <u>Exhibit A</u>.

8. On October 28, 2009, the members of BWC's Self-Insured Review Panel conducted a hearing and, thereafter, issued an order revoking the Debtor's self-insured status as of October 5, 2009. A copy of such order is annexed hereto as <u>Exhibit B</u>.

## ARGUMENT

9. It does not appear that the Reorganized Debtors contest that the types of claims asserted by BWC in Claim 1294 constitute priority taxes under section 507(a)(8)(E) of the Bankruptcy Code.[1] The Reorganized Debtors, however, take the incorrect position that the

---

[1] In the event that the Reorganized Debtors contest the characterization of BWC assessments as claims entitled to tax priority status, BWC relies upon the standards set forth in <u>Yoder v. Ohio Bureau of Workers' Compensation (In re Suburban Motor Freight, Inc.)</u>, 998 F.2d 338 (6th Cir. 1993) ("<u>Suburban I</u>"); <u>Ohio Bureau of Workers' Compensation v. Yoder (In re Suburban Motor Freight)</u>, 36 F.3d 484, 486 (6th Cir. 1994) ("<u>Suburban II</u>"); and <u>In re Chateaugay Corp.</u>, 153 B.R. 632 (Bankr. S.D.N.Y. 1993). The <u>Suburban I</u> and <u>Suburban II</u> standards require that a tax be:
    1. an involuntary pecuniary burden;
    2. imposed by the state legislature;
    3. for a public purpose; and
    4. under the police or taxing power of the state.

assessments estimated in Claim 1294 arise postpetition. To the contrary, such excise tax claims are deemed prepetition because they relate to a prepetition "transaction."

10. Bankruptcy Code section 507(a)(8)(E) provides for priority treatment of an excise tax on: "(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or (ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition." 11 U.S.C. § 507(a)(8)(E).

11. The Reorganized Debtors apparently take the incorrect position that the "transaction" here is the payment of workers' compensation benefits which will only occur postpetition, and Claim 1294 is, therefore, not entitled to priority. Under Ohio law, however, as of the petition date, the Debtor, as a self-insured employer with employees in Ohio, had an obligation to pay assessments, even if the precise amount of which is determined in the future.

---

Suburban II, at 488. Additionally, the Sixth Circuit adopted two other elements:
1. that the pecuniary obligation be universally applicable to similarly situated entities; and
2. that according priority treatment to the government claim not disadvantage private creditors with like claims.

Suburban II, at 488. Self-insured assessments satisfy the first four elements. Self-insured assessments are imposed through the police or taxing power of the state, and are involuntary pecuniary burdens. Although an employer may voluntarily apply for the privilege of being self-insured, all self-insured employers must pay assessments. These assessments are created by statute in O.R.C. § 4123.35, § 4123.351, and § 4123.342, and are further governed by rules found in the Ohio Administrative Code. Self-insured assessments further a public purpose, funding Ohio's workers' compensation system and fairly distributing that financial burden, even as it relates to the management and oversight of self-insured employers. The universality requirement and the requirement that private creditors with like claims not be disadvantaged are both clearly met by Ohio's self-insured assessments. All self-insured employers must pay assessments. These assessments provide for (a) the self-insured guaranty fund, which is the fund established by Ohio law to provide for workers' compensation benefits to employees of defaulted self-insured employers; (b) the surplus fund, which is also statutorily created, and which serves various roles under Ohio law such as helping to ensure funds will be available for injured workers; (c) the safety and hygiene fund; and (d) the fair allocation, as determined by the Ohio legislature, of the pecuniary burdens associated with administering and enforcing Ohio's workers' compensation laws.

There is an enormous difference between (a) defaulted self-insured claims costs, which were addressed by the Sixth Circuit in Suburban II and (b) self-insured assessments. Defaulted self-insured claims costs are the actual costs of a defaulted self-insured employer's workers' compensation claims. Ohio's self-insured assessments provide funding for administration of Ohio's workers' compensation system. The State of Ohio is the only entity that manages Ohio's workers' compensation system. There absolutely are no private creditors with similar claims.

103642772          5

12. <u>Belden</u> is the only case that specifically addresses when a "transaction" occurs for purposes of the assessments included in Claim 1294 and holds that the assessments arise when the employer elects self-insured status and employs individuals.

> An employer's obligation to pay self-insured assessments under Ohio Rev. Code §4123.35 manifests the moment the employer elects to operate as a self-insured employer and proceeds to employ individuals. It does not matter if that employer later ceases operations entirely or becomes a state fund participant; the obligation will remain. It is only the amount of the obligation, not its existence, that will be established later.

<u>Belden</u>, 2008 WL 762243 at *5.

13. The above interpretation of the Bankruptcy Code section 507(a)(8) "transaction" for purposes of the assessments is consistent with Bankruptcy Code section 502(i) which provides:

> A claim that does not arise until after the commencement of the case for a tax entitled to priority under section 507 (a)(8) of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

11 U.S.C. § 502(i)

14. The <u>Belden</u> court recognizes that the subject assessments arise prepetition despite the establishment of amounts postpetition:

> It is ultimately the time a tax obligation originates, not the time its final tally is ascertained, that matters for the purposes of §507(a)(8). The Code envisioned such circumstances in allowing claims for taxes on prepetition transactions that arise postpetition to be treated as if they had arisen prepetition.
>
> [a] claim that does not arise until after the commencement of the case for a tax entitled to priority under section 507(a)(8) of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

<u>Belden</u>, 2008 WL 762243 at *6.

15. The <u>Belden</u> court concludes:

> Thus, hiring employees while a self-insured employer in 2006 does expose one to liability for assessments in 2007 and beyond, even should one cease to employ workers as a self-insured employer in those later years. Likewise, the language of 11 U.S.C. § 502(i) is plain on its face: it provides for the allowance of claims that arise after the commencement of the case; it does not include a far horizon. This may in fact have the effect of treating taxes arising in 2016 as if they had arisen in 2006, That ten-year horizon, how-ever, is primarily an artifact of Ohio statute and OBWC's actuarial methods (and the Court emphasizes again that it is not ruling today upon the soundness of the methods or numbers OBWC has used); § 502(i) is only an enabler, taking the tax laws as it finds them. The Court must do the same.
>
> Therefore, to the extent that OBWC's claim can be shown to flow from the act of employing individuals prepetition while enjoying the status of a self-insured employer, the claim merits priority unsecured status.

Belden, 2008 WL 762243 at *7.

16.   The "transaction" being taxed is the act of employing people in the State of Ohio as a self-insured employer within the three year period preceding the bankruptcy case. The Debtor made a business decision to apply to be, and to continue operations as, a self-insured employer in Ohio. As a consequence of this business decision, the Debtor stood to save considerable money in the event it could maintain a safe work environment with limited work related accidents. The Debtor knew at the time it decided to qualify for self-insured employer status that the obligations to pay assessments remain regardless whether the Debtor ceases to be a self-insuring employer or ceases operations in Ohio. See O.R.C. § 4123.35(J); Ohio Administrative Code Rule 4123-17-32(G). The Debtor and its estate received all the benefit of the Debtor's qualification as a self-insured employer, prepetition and postpetition. Like many business decisions, there are tax consequences associated with the decision to operate as a self-insured employer in Ohio.

17.   According priority tax treatment to BWC's Claim 1294 ensures that the Debtor fulfills its tax obligations that flow from its business decision. Denying priority treatment to BWC's Claim 1294, on the other hand, would provide the Reorganized Debtors a windfall at

BWC's expense (and at the expense of other Ohio employers who must ultimately make up the difference) by allowing the Debtor and its estate to reap all the benefit of Debtor's having operated as a self-insured employer while not requiring the Reorganized Debtor (as legal successor to the Debtor) to fulfill the tax obligations associated with Debtor's having operated as a self-insured employer.

## CONCLUSION

Self-insured assessments are taxes. The relevant "transaction" under Bankruptcy Code 507(a)(8)(E) is the act of employing people as a self-insured employer during the three years preceding the Debtor's bankruptcy case. Although the Debtor has a current obligation as of the petition date to pay its self-insured assessments, the actual amounts are not liquidated until further workers' compensation is actually paid to the Debtor's injured workers at times after the petition date. BWC's Claim 1294 must be estimated as contemplated under 502(c); however, for purposes of the instant sufficiency proceeding, Claim 1294 and is entitled to priority treatment under Bankruptcy Code sections 507(a)(8)(E) and 502(i).

WHEREFORE, BWC respectfully requests that the Court enter an order sustaining the sufficiency of claim 1294 as a priority tax claim, subject to an estimation of the amount of such priority tax claim, denying the Reorganized Debtors' objection to Claim 1294, and granting BWC such other and further relief the Court deems appropriate.

103642772                                8

Dated: December 14, 2010

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Richard J. Bernard*
    Richard J. Bernard
    45 Rockefeller Plaza
    New York, NY  10111
    Telephone: (212) 589-4200
    Facsimile: (212) 589-4201
    E-mail: rbernard@bakerlaw.com

*Attorneys for Ohio Bureau of Workers' Compensation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Response of the Ohio Bureau of Workers' Compensation to Reorganized Debtors' Supplemental Reply to Response of Claimant to Debtors' Objection to Proof of Claim Number 1294 Filed by Ohio Bureau of Workers' Compensation was furnished 14th day December, 2010, via electronic ECF notice to those parties receiving such notices and via email upon the following:

>Skadden, Arps, Slate, Meagher & Flom LLP
>155 North Wacker Drive
>Chicago, Illinois 60606
>John K. Lyons
>Email:  john.lyons@skadden.com
>Brandon M. Duncomb
>Email: brandon.duncomb@skadden.com

Dated: December 14, 2010

>*/s/ Richard J. Bernard*
>Richard J. Bernard