Hearing Date and Time: December 16, 2010 at 10:00 a.m. (prevailing Eastern time)
Supplemental Response Date and Time: December14, 2010 at 4:00 p.m. (prevailing Eastern time)

Andrew C. Gregos
3076 Crescent Dr. NE
Warren, Ohio 44483
330-393-3328

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                       :      Chapter 11
      In re                :
                       :      Case No. 05-44481 (RDD)
DPH HOLDINGS CORP., etal.,    :
                       :      (Jointly Administered)
        Reorganized Debtors  :
                       :
-------------------------------------------------------x

ANDREW C. GREGOS' SUPPLEMENTAL REPLY WITH RESPECT TO PROOF OF
ADMINISTRATIVE EXPENSE CLAIM NUMBER 20017 (ANDREW C. GREGOS)


RECEIVED
DEC 15 2010
U.S. BANKRUPTCY COURT, SDNY

Andrew C. Gregos hereby submits this Supplemental Reply with respect to Proof Of Administrative Expense Claim Number 20017 against DPH Holdings Corp. and its affiliated reorganized debtors and respectfully represent as follows:

A.    Preliminary Statement

   1.    On November 5, 2009, Andrew C. Gregos filed proof of administrative expense claim number 20017 (the Administrative Claim) against Delphi Corporation asserting amounts owed on account of extended disability benefits and Medical retirement pension.
   2.    Delphi has claimed that no amount is presently owed to Mr. Gregos as his extended disability has been retroactively reinstated.
   3.    Delphi also states with respect to his pursuit of medical retirement pension, that the pension plan has been terminated and taken over by the Pension Benefit Guaranty Corporation, the reorganized debtors are unable to provide the relief sought.
   4.    The Reorganized Debtors are requesting an order disallowing and expunging proof of administrative expense claim number 20017. Mr. Gregos requests that his claim be allowed and paid in full.

B.    Claimant's Proof
   5.    Mr. Gregos provides Exhibit A, a portion of – Your Delphi Benefits – Summary Plan Description. This is the employee handbook provided to Mr. Gregos while working. It clearly states regarding Extended Disability Benefits " If you have 10 or more years of participation when you become disabled, benefits are payable until recovery or death, but not beyond age 65."
   6.    Mr. Gregos had over 28 years of service and therefore meets the requirement.
   7.    The Debtor acknowledges that Mr. Gregos has been identified as disabled and has requested the repayment of $63,945 paid by Social Security for the period of March 1, 2007 through July1, 2009. (Debtor's preliminary statement, item 1.)
   8.    After Mr. Gregos notified Delphi of such overpayment, Delphi requested he return to the Warren, Ohio Medical Department for an examination. In Section E. Argument Regarding the Claims, item 17, the reorganized Debtors claim retroactive reinstatement of EDB dating back to August 14, 2009. Item 18 claims EDB does not provide for health care insurance, life insurance, or any other benefits other than, at most, 60% of an employee's Monthly Base Salary (as defined in the Disability Benefits Program) Exhibit A, page 81 states that "Delphi will continue contributions towards your health care coverages while you remain totally and continuously disabled and you remain on an approved disability leave."
   9.    Item 20 of the Debtor's reply states, "In addition to certification, to maintain eligibility for EDB before he was separated from employment, Mr. Gregos was required to undergo additional fitness examinations

performed by Dr. Tochtenhagen, a Delphi plant medical physician. Dr. Tochtenhagen's opinion was that Mr. Gregos was able to return to restrictive duties consisting of alternating sitting for half an hour with standing for half an hour." In the report from the medical department, the restrictions are different. EXHIBIT B states "limited standing @1 hr., limited sitting @ ½ hr., no repetitive bending, no lifting over 15#. The word "alternating" was not included in that report.

10. Mr. Gregos challenges this evaluation as no examination by Dr. Tochtenhagen or any other doctor occurred on August 14, 2009 in the medical department.

11. Footnote 5 states that Dr. Morley reviewed the records and concurred with Dr. Tochtenhagen. Mr. Gregos and his ERISA attorney have requested that documentation and have never receive it. (See Attachment C)

12. The Debtor made a decision to return Mr. Gregos to work for 1 ½ hours per day without even an examination. In addition, ignored over 40 pages of documentation provided supporting Mr. Gregos' disability, including Social Security, which they acknowledge for the purpose of recouping overpayment. The Debtor also ignored the decision of an independent doctor that Delphi selected, who confirmed Mr. Gregos was unable to return to work (See attachment D)

13. The debtor states that "*eligibility for EDB* has been reinstated retroactive to [August 14, 2009], the fact remains that his employment with [the Debtors] was terminated effective September 1, 2009. How convenient, the Debtor, without a medical exam and against doctor's orders, deem an employee able to return to work for 1 ½ hours per day, arbitrarily sever that employee and stop benefits.

14. The Debtor also provides Exhibit C in their response. The letter states that Mr. Gregos' benefits have been authorized through August 31, 2010. In addition, a screen print is provided. To date, no monthly statement or summary of repayment has been provided. The screen print also fails to provide any payment information. In addition, in a letter dated October 07 and received November 6, 2010, Sedgwick states that Mr. Gregos' benefits will be suspended effective November 1, 2010. (See Attachment E) The form Sedgwick requested Mr. Gregos have his doctor complete was delayed. Mr. Gregos requested and was granted additional time. Sedgwick states that upon receipt of additional medical information, determination for further benefits will be made. Mr. Gregos provided that information and it was received at Sedgwick on November 12, 2010. (See Attachment F) No response has been received from Sedgwick , a month after receipt of the form.

C.    Medical Retirement

16. The debtor claims that they have turned the pension over to the Pension Benefit Guaranty Corporation (PBGC). Therefore, as stated in item 22 "The PBGC now has sole control over issues relating to the Salaried Employee Retirement Program, and the Reorganized Debtors have no

power or authority to make benefit determinations under the plan. Accordingly, any claims regarding Mr. Gregos' eligibility for Total and Permanent Disability (T&PD) retirement must be addressed by the PBGC, not the Reorganized Debtors. Therefore, the Medical Retirement Claim against the Debtors should be disallowed"

17. This has just recently been stated, in Mr. Peterson's letter dated November 2, 2010. Mr. Gregos and his ERISA attorney have requested T&PD or Medical Retirement numerous times and never before received information that the PBGC must make that decision.

18. Mr. Gregos contacted the PBGC regarding T&PD retirement. They subsequently contacted Delphi for his reclassification. Further review and investigation is required by the PBGC into this matter.

D.    Conclusion

19. Delphi arbitrarily, without even a medical exam, returned Mr. Gregos to work and terminated employment in an effort to not pay benefits. This return to work and subsequent termination was predetermined as even the severance papers were dated prior to Mr. Gregos' visit to Delphi's Medical Department. (See Attachment G). Delphi ignored Mr. Gregos' medical evidence, Social Security and even the independent doctor they selected. With this in mind, Mr. Gregos requests the court find in favor of his claim number 20017 and award him the requested $528,443.24 of his original claim.

# Exhibit A



# Summary Plan Description

For salaried employees hired on or
before December 31, 2000 and/or
with a service date on or before December 31, 2000



# *Extended Disability Benefits and Supplemental Extended Disability Benefits*

If you continue to be disabled after you receive Sickness and Accident benefits and/or salary continuation payments for the maximum period and you continue to be a Delphi employee, you may be eligible to receive monthly Extended Disability Benefits.

**You are covered** for Extended Disability Benefits on the first day of the sixth month following the month in which you commence working with Delphi. If you are not actively at work on the day your coverage otherwise would start, coverage commences on the day you return to active work.

**To receive Extended Disability Benefits,** you must (1) be totally disabled so as to be unable to engage in any regular employment with Delphi at the location where you last worked, and (2) not be working elsewhere.

**Monthly benefit amounts** are determined by your monthly base salary. Base salary, for purposes of Extended Disability Benefits, includes the premium for necessary continuous seven-day operations, but does not include overtime, night-shift premium, or any other payments.

Your monthly benefit amount is equal to 60% of your monthly base salary.

**Extended Disability Benefits are payable** for a period based on your Delphi years of participation under the Life and Disability Benefits Program (see page 116).

- ■ **If you have 10 or more years of participation when you become disabled,** benefits are payable until recovery or death, but not beyond age 65.*

- ■ **If you have less than 10 years of participation when you become disabled,** benefits are payable until recovery, death, or, if less, for a period equal to your years of participation at the commencement of disability (less the period during which Sickness and Accident benefits or salary continuation payments are received), but not beyond age 65.*

  * *However, if you become disabled at or after age 63, you may receive Extended Disability Benefits for a period of time beyond age 65.*

In addition, **if you are covered for Extended Disability Benefits, but have less than 10 years of participation in the Life and Disability Benefits Program,** you may elect to purchase Supplemental Extended Disability Benefits coverage under the Delphi Options! Program.

As the name implies, Supplemental Extended Disability Benefits coverage is intended to supplement the Delphi Extended Disability Benefits for shorter service employees. You may elect Supplemental Extended Disability Benefits during the Delphi Options! Program enrollment period, **only** if on January 1 of the following year, you will have **at least six months but less than 10 years of participation.** If eligible, Supplemental Extended Disability Benefits would be available to you on a pre-tax, self-paid basis. Employee contributions and coverage for Supplemental Extended Disability Benefits would not commence until you have acquired 13 months of credited service under the Retirement Program for salaried employees.

All Extended Disability Benefits plan provisions also apply to Supplemental Extended Disability Benefits. However, receipt of Supplemental Extended Disability Benefits does not extend eligibility for health care and life and disability coverage.

To be eligible for a Supplemental Extended Disability Benefits payment, you must have (1) elected Supplemental Extended Disability Benefits under the Delphi Options! Program, (2) made at least one monthly contribution, and (3) exhausted maximum Extended Disability Benefits.

If you are eligible, Supplemental Extended Disability Benefits provides you with disability benefits equal to 60% of your monthly base salary in effect as of September 1 of the year prior to your first day of disability. Supplemental Extended Disability Benefits will begin when your Extended Disability Benefits are exhausted. The length of time the benefit is paid may continue until the earliest of recovery from your qualifying disability, age 65, or death. This additional coverage will provide you with the maximum duration of Extended Disability Benefits available to employees with 10 or more years of credited service.

**Extended Disability Benefits and Supplemental Extended Disability Benefits are reduced by:**

- Any monthly Part A benefits and Part B supplementary benefits (see pages 84 - 98) for which you may be eligible under the Delphi Salaried Retirement Program;

- Any benefit for which you are eligible under any other Delphi retirement or pension plan;

- Any salary payments that may be made in connection with any Corporation separation plan;

- Governmental benefits, such as workers' compensation;

- Certain social security benefits; and

- Any federal or state lost-time disability benefits.

Increases in any of these benefits payable after Extended Disability Benefits or Supplemental Extended Disability Benefits commence will not be deducted, unless the increase represents an adjustment in the original determination of the amount of such benefit. **A retroactive award of any of these benefits will create an overpayment of Extended Disability Benefits or Supplemental Extended Disability Benefits that were paid for the same period of disability. (See page 115 for Recovery of Benefit Overpayments.)**

For both Extended Disability Benefits and Supplemental Extended Disability Benefits, you will be required to apply for Social Security Disability Insurance Benefits (SSDIB) under a special procedure designed to handle the offset of SSDIB against Extended Disability Benefits. You also will be required to repay any overpayment incurred due to receipt of an SSDIB award.

## Social Security Disability Insurance Benefits

If you become disabled before age 65, you may be eligible for disability insurance benefits from Social Security. Your nearest Social Security office can tell you if you qualify. Benefits may be payable after you have been disabled for five full calendar months.

The amount of Social Security benefits payable because of disability generally is in accordance with the schedule set forth on page 95 for benefits payable at age 65.

It is important for you to apply for Social Security Disability Insurance Benefits (SSDIB) for these reasons:

- Failure to obtain an SSDIB award may result in a lesser Social Security old age benefit.

- Your dependents also may qualify for Social Security benefits.

- Your Social Security benefits may be increased annually to reflect cost-of-living increases.

- You become eligible for Medicare after receiving 24 months of SSDIB. If you become enrolled in Medicare Part B, you may become eligible for payment of a monthly Special Benefit under the Delphi Salaried Health Care Program (see page 66).

- If you are receiving SSDIB and return to work you may be eligible to continue these benefits, in addition to your salary, up to 12 months. You should contact your nearest Social Security office for additional information.

- SSDIB awards are given favorable federal tax treatment, under current tax laws.

**78**

If you are receiving Sickness and Accident, Extended Disability Benefits or Supplemental Extended Disability Benefits, you may be required to complete an authorization form that allows the Social Security Administration to inform Delphi of the status of your claim for Social Security Disability Insurance Benefits. If you fail to complete this authorization, your Sickness and Accident or Extended Disability Benefits or Supplemental Extended Disability Benefits will be suspended until the authorization is received.



To apply for **Extended Disability Benefits**, you must complete a claim form provided by the **National Benefit Center**. You may contact the center, toll-free, at **1-800-734-0346 or 1-800-882-3563 for the hearing or speech impaired**.

## *Illustration of Salary Continuation, Sickness and Accident Benefits (S&A), and Extended Disability Benefits (EDB) for Eligible Salaried Employees*

| Types of Disability Payments for Periods Shown Below | | | | |
|---|---|---|---|---|
| Length of Service[1] | Full Salary[2] | S&A and Salary Combined Equal to Full Salary[3] | Maximum S&A Benefits Payable | Maximum EDB Payable |
| Less than 1 year | 1st week | — | Up to 12 months | None[4] |
| 1 year but less than 5 years | 1st week | Next 7 weeks | 12 months | For a period equal to years of participation (if under 10) less the period S&A and/or salary continuation paid[5] but not beyond age 65[6] |
| 5 years but less than 10 years | 1st week | Next 12 weeks | 12 months | |
| 10 or more years | 1st week | Next 25 weeks | 12 months | To age 65[6] (if years of participation are 10 or more) |

(1)  At commencement of disability.
(2)  For this purpose, full salary includes base salary and the premium for necessary continuous seven-day operations, but does not include overtime, night-shift premium, or any other payment.
(3)  The combined payments equal 25% salary continuation and 75% Sickness and Accident benefits. For this purpose, full salary includes base salary and the premium for necessary continuous seven-day operations, but does not include overtime, night-shift premium, or any other payment.
(4)  If you elected Supplemental Extended Disability Benefits, employee contributions and coverage will not begin until you have acquired 13 months of credited service under the Retirement program for salaried employees.
(5)  If you are covered for Extended Disability Benefits, but have less than 10 years of participation in the Life and Disability Benefits Program, you may elect to purchase Supplemental Extended Disability Benefit coverage under the Delphi Options! Program.
(6)  If you become disabled at or after age 63, you may receive Extended Disability Benefits for a period of time beyond age 65.

| Example of Delphi Disability Income Benefits | | |
|---|---|---|
| A Delphi employee with more than 10 years of service becomes totally and permanently disabled in February 2001. The following table illustrates the monthly benefits the employee would receive assuming a final monthly base salary of $4,100. | | |
| **Period Payable** | **Type of Disability Income Benefit** | **Monthly Benefit Amount** |
| 1st 6 months | Salary continuation (25%) | $1,025.00 |
| | Sickness and accident (75%) | $3,075.00 |
| | **Total** | $4,100.00 |
| 2nd 6 months | Sickness and accident (75%) | $3,075.00 |
| After 12 months | Extended disability (60%) | $2,460.00 |
| This employee also may be eligible to receive:<br>■ Monthly total and permanent disability benefits under the Retirement Program (see page 89).<br>■ Their entire account balance under the Savings-Stock Purchase Program after one year of disability. | | |

**80**

# Other Benefit Program Coverages While on Disability Leave

## Health Care Coverages

Delphi will continue contributions towards your health care coverages while you remain totally and continuously disabled and you remain on an approved disability leave. If while you are receiving Sickness and Accident or Extended Disability Benefits the period of disability exceeds your length of service, health care coverage will be continued. However, receipt of Supplemental Extended Disability Benefits does not extend the continuation period. Note also that for this coverage to remain in effect you must continue to pay the applicable monthly employee contribution, if any.

## Savings-Stock Purchase Program

You may continue to contribute to the S-SPP while you are on an approved disability leave and while you continue to receive salary continuation payments. If you are eligible, you may contribute for a period of up to six months, and such contributions will be based on salary continuation payments of 25% of your monthly base salary.

Delphi contributions continue to vest while you remain on disability leave. You retain the usual withdrawal, fund exchange and loan privileges. You must, however, continue to make your loan repayments to the Program.

## Life and Disability Benefits Coverages

Corporation contributions for Basic Life Insurance, Sickness and Accident, and Extended Disability Benefits coverages will be continued:

- For any period you are entitled to receive Sickness and Accident benefits or salary continuation payments while you are totally disabled;

- And thereafter, while you are totally and continuously disabled and remain on an approved disability leave, but not to exceed a period equal to your years of participation (see page 116) as of the first day of disability.

Also, in the event your disability leave is canceled because the period of the leave equaled your length of service, life and disability benefits coverages may be continued while you are entitled to receive monthly Extended Disability Benefits. Delphi will make contributions for these coverages during these periods. However, receipt of Supplemental Extended Disability Benefits will not extend continuation of Life and Disability Benefits coverage.

If your disability leave is canceled because you recovered, and you again become totally disabled within three working days of the date your leave was canceled, so as to be unable to work, life and disability benefits coverages to which you were entitled will be continued under these circumstances. If you are returned to an approved disability leave, Delphi will make contributions for these coverages while you remain totally disabled. However, coverage cannot continue beyond the period equal to your years of participation as of your first day of disability.

You will need to pay the required monthly contributions to continue Optional Life, Dependent Life and Personal Accident Insurance while your Basic Life Insurance remains in force.

If you have 10 or more years of participation at the commencement of your disability, your Basic Life Insurance will be continued at no cost to you while you are totally and permanently disabled prior to age 65.

## Accelerated Benefits Options

If you are diagnosed as having a terminal illness with a life expectancy not to exceed 12 months, you may be eligible to receive an accelerated benefits option payment of up to 50%, but not less than $1,000, of your Basic Life Insurance. However, if your Basic Life Insurance will be reduced within twelve months of the date the accelerated benefits option payment is approved, such payment will be limited to 50% of the fully reduced amount of Basic Life Insurance.

**81**

The total of an accelerated benefits option payment and the amount of Basic Life Insurance payable at your death may never exceed the amount of Basic Life Insurance which would otherwise have been payable without the accelerated benefits option payment.

**An accelerated benefits option payment will be made** (1) as of the date the insurance company certifies all eligibility requirements are met, (2) only once, regardless of the amount elected, (3) only in one lump sum and (4) only if you are living when payment is made.

**An accelerated benefits option payment will be reduced by** any benefits paid to you under any Delphi benefit plan which should not have been paid or should have been paid in a lesser amount.

**An accelerated benefits option payment will not be made if** (1) your Basic Life Insurance is not in force, (2) you are making contributions for Basic Life Insurance, (3) all or a portion of your Basic Life Insurance is to be paid to a former spouse and/or child(ren) as part of a divorce agreement, (4) the amount of payment would be less than $1,000, (5) you previously received payment of Basic Life Insurance as an accelerated benefits option, regardless of the amount paid, (6) you are not living as of the date the insurance company certifies all eligibility requirements are met or (7) you have assigned all or a portion of your Basic Life Insurance to another party.

**You may be required to be examined by a** physician or physicians designated by the insurance company, at the insurance company's expense, for the purpose of determining if you are terminally ill and have a life expectancy not to exceed 12 months.

**If you die** Basic Life Insurance proceeds payable to your Beneficiary will be reduced by the amount of any accelerated benefits option payment.

**To apply for an accelerated benefits option payment** you will be required to complete a claim form provided by the **National Benefit Center**. A form may be obtained by calling the National Benefit Center toll-free at, **1-800-435-3946** or, for the hearing or speech impaired, **1-800-872-8682**.

# Personal Accident Insurance

Personal Accident Insurance also may provide payment for loss of body members, hearing, speech, or eyesight. A paralysis benefit also is available if your spouse or dependent child(ren) is injured as the result of an accident.

If you become totally and permanently disabled, as defined below, as a result of an accidental injury while you are an active employee, you may be paid the full benefit amount of any Personal Accident Insurance you elected in monthly installments of 2% of that amount, less any amount paid for losses previously sustained. For benefits to become payable, you must become totally and permanently disabled within 12 months of the accident, remain so disabled for 12 months thereafter and you must submit evidence satisfactory to the insurance company of such disability. Total and permanent disability benefits, under Personal Accident Insurance, begin on the later of: (a) the first day of the month the insurance company receives satisfactory proof you are totally and permanently disabled, or (b) the first day of the month you have been totally and permanently disabled for a period of 12 months following an accident.

"Total and permanent disability" under Personal Accident Insurance means the total and permanent inability, as caused by an accidental injury, to engage in any employment or occupation for remuneration or profit, for which you are suited by reason of education, training or experience as based on medical evidence satisfactory to the insurance company. Spouses and dependent child(ren) are not eligible for this benefit.

Additional information is contained in the section "In the Event of Death" on page 99.

# Retirement Program

You may continue to make regular monthly contributions to Part B, while you remain on an approved disability leave and you receive salary continuation payments.

You may continue to accrue credited service for up to 11 months while you remain on an approved disability leave, as explained on page 85.

**82**

# Exhibit B

PIHMS® Medical

## Plan SOAP Notes

Home > Medical Encounter > Visit Registration Details > SOAP Notes

### Plan SOAP Notes

| | | | | | |
|---|---|---|---|---|---|
| Employee Name: | Gregos, Andrew | Visit Date: | 02-APR-2009 | Employee ID: | 01020849 |
| Visit Type: | Fitness for Duty | Visit Time: | 1015 | Case Number: | 2009-099406 |

Subjective | Objective | Assessment | **P** Plan

Treatment/Procedures/Medications | Referrals/Restrictions

Refer to Ergonomics:

*14 Avg   Maintain present restrictions*    *Review in 2mo* 10/14/09    *TL*

Add New Referrals                                                                      Referral History

| | |
|---|---|
| Specialty: | ---Please choose--- |
| Referral Type | ---Please choose--- |

| | |
|---|---|
| Referral Provider: | |
| Appointment Date | Time: |

| Record | Specialty | Referral Provider | Referral Type | Appointment Date |
|---|---|---|---|---|
| | | | | |

### Restrictions

| | |
|---|---|
| Restriction: | --Choose-- |
| Body Part: | --Choose-- |
| Body Side: | --Choose-- |
| Assigned By: | --Choose-- |

| | |
|---|---|
| Vocational | ○ Yes ● No |
| Permanent | ○ Yes ● No |
| Start Date: | |
| End Date: | |

Use Duration: ○ No Use ○ Occ (1 – 33%) ○ Freq (34 – 66%) ○ Cons (67 – 100%)

Comment:

### All Restrictions

Restrictions

| Record | Restriction | Use | Start Date | End Date | Comment | Perm | Voc | Assigned By |
|---|---|---|---|---|---|---|---|---|
| 1 | Stand/Walk | | 02-APR-2009 | 31-DEC-2009 | Limited standing @ 1 hr., limited sitting @ 1/2 hr, no repetitive bending, no lifting over 15#. | N | N | Sam Tochtenhagen Md |

*DOES NOT
STATE
" ALTERNATING"*

Email: helpdesk@kcps.com          Copyright © KCPS, I          Login Time: Fri Apr

**<u>Via Certified Mail</u>**

May 18, 2010

Delphi
World Headquarters and Customer Center
Attn: Mark Fraylick
Manager, Delphi Workers' Compensation & Disability
5725 Delphi Drive
Troy, Michigan   48098-2815

Re:    Andrew Gregos

Dear Mr. Fraylick:

I have your letter of May 13, 2010 which denies Mr. Gregos his benefits.

Your letter does not provide a time within which to file the appeal and I am requesting your information regarding that at this time.

Secondly, you reference a Dr. Tochtenhagen and a fitness for duty examination and a review by Dr. Morley.  Please forward Dr. Tochtenhagen's notes, records, and conclusions and also Dr. Morley's review.  I have neither and they have never been in the record.

Thank you very much and <u>please respond as soon as possible.</u>

Very truly yours,


Michael A. Malyuk
MAM/es

# Exhibit C

# Exhibit D

Medix Evaluation Services
60 N. Canfield-Niles Rd. Ste 500
Youngstown, OH 44515
(330) 792-1973

July 8, 2008

RE:  Andrew C. Gregos
NO:  980710010278

Andrew C. Gregos is a 52-year-old male, was seen at Medix Evaluation Services,
per your request, on July 8, 2008, for intervertebral disc disorders and neck pain.
He was first seen by me on March 23, 2007 for evaluation of DJD of cervical,
thoracic and lumbar spine and cervical disc displacement.
The employee's occupational duties are:  Engineer

PRESENT HISTORY:
Since he has been here on his last visit, nothing has really transpired to change his
condition.  He has been told he has intervertebral disc disorder in the lower back
and he has to have three discs replaced.  The FDA has approved only one disc at a
time and the surgeon, Dr. Brian Mullen, at Mt. Carmel East in Columbus does not
want to do three times surgery, so they are waiting for FDA approval to replace
three discs and this is still experimental in this country, but it has been approved in
Germany and all this reference has been made in the previous exam.

He also had cervical fusion and that has left him with still some numbness and
tingling in both hands, but range and mobility is good.  He is under the care of Dr.
Brian Mullen at Mt. Carmel East, who is a neurosurgeon in Columbus.  He only
sees him on a yearly basis until technology and surgical approaches have improved
significantly.  He is also the patient of Dr. Dechellis here in town, whom he sees
basically for therapy and basically for medication, etc.

CHIEF COMPLAINT:
Intervertebral disc disorders and neck pain. His complaints are that he has lower
back pain that radiates down his right leg to his foot, mostly right and sometimes
left.  Also still has a little radicular pain, numbness and tingling in both hands,
depending on position.  He has completed physical therapy and is not a candidate
for anything else in the way of epidurals, etc., and is awaiting surgery.  He has pain
and limited ability to sit to stand, weakness in his hands and lower extremities.

RE: Andrew C. Gregos
NO: 980710010278
PAGE 2

Incidentally and he is not being seen for this today, he miss stepped and sustained a
twisting injury to his left knee, for which he is in a knee immobilizer and he
presently on crutches. This is not what he is being seen for, but it should be noted
that he also has that problem and he is accompanied by his wife.

MEDICATION:
His medications at this point are Lisinopril, Vytorin, aspirin, Vicodin as needed.

PAST HISTORY: There is no worker's comp. He is an engineering manager.
There is no history of worker's comp. His problems with his neck and lower back
are probably on a hereditary basis, since his dad, he says, had that and has not had
any injuries or whatever else. He has not had another MRI. MRI scans were
reviewed last time and they showed degenerative disc disease L3-4, L4-5, L5-S1
and status post cervical fusion C5-6, C6-7 and upper thoracic degenerative disc
disease.

PHYSICAL EXAMINATION:
HEIGHT: 6'1"   WEIGHT: 203 lbs.
This is a well-developed, well-nourished gentleman, oriented, right hand dominant.
He is 52-years of age. Straight leg raising is positive bilaterally at 90 degrees.
Range of motion to his lumbar spine he is about 6" from touching his toes. He is
somewhat limited also because of the knee brace on that left side. Extension and
lateral bending are about 50% of normal. Lumbosacral spasm is 3+. He has
minimal tenderness in the sciatic notch and SI joints. DTR's are equal and
symmetrical in the lower extremities. Cervical spine has surprisingly good range of
motion. There is a well healed anterior cervical scar. DTR's are 2+ equal and
symmetrical. Radial and median nerve are intact. Good pinch, grip and grasp.
Really not much in the C-spine, but the lumbar spine is most of his debility and
problem.

IMPRESSION:
This gentleman is under the care of a neurosurgeon. His surgery has not been
approved. He needs intervertebral disc replacements at three levels and this is not
approved as yet. He is in limbo. His surgery has not been approved by the FDA
and he is in a hold pattern. There is nothing to do in the way of treatment. There is
nothing to do other than supportive. There is no therapy, nothing else, he is under
the care of the neurosurgeon.

RE:  Andrew C. Gregos
NO:  980710010278
PAGE 3

CONCLUSION:
Based on these findings and the lack there of, of anticipated surgery, I find him
unfit for an indefinite period of time, as he says, until technology catches up to his
condition. There is no way he can do his job.

Sincerely,


Robert J. Cuttica, M.D.
Orthopedic Specialist

RJC/pds

Date _____ July 2 _____

*(handwritten: Per Phone Return to work denied)*

**YOU HAVE BEEN SCHEDULED FOR A MEDICAL EXAMINATION ON:**

Date _____ July 8 _____

Time _____ 11:45 _____ ☒ A.M.  ☐ P.M.  WITH:



Examining Physician/Clinic:
*(faint/illegible address)*
5425 HARDING AVE  STE N
*(illegible)*
*(illegible), OH  44515
330 792-1973

To:
Andrew Grogos
3076 Crescent Dr. NE
Warren, Ohio
-4483

A provision of the Life and Disability Benefits Program permits a medical examination with respect to your eligibility to receive Sickness and Accident or Extended Disability Benefits. The Corporation and the Union have agreed that required examinations of employees are to be performed by a clinic and/or doctors selected from a list of Impartial Medical Examiners.

Please report to the Examining Physician/Clinic named at the top of this letter on the date and time indicated. To assist the examiner in his/her evaluation, and to avoid duplicate testing, if possible, please bring with you your medical records, any test results, x-rays, and/or a list of medications you are currently taking. **You will not be required to pay any fee for the examination. In accordance with an agreement between the Corporation and the Union, the Impartial Medical Examiner's determination will be final and binding upon you, the Corporation, the Union, and MetLife with respect to your current claim for disability benefits. Failure to report for this examination may result in the denial of Sickness and Accident or Extended Disability Benefits.**

If you returned to work on the date of the examination, it will not be necessary for you to report for the examination. However, if you again become disabled prior to the time of the examination, you should immediately contact the National Benefit Center.

**You should obtain the results of your examination by calling the number shown below on the date of the examination.**

# Exhibit E

 

# Sedgwick CMS

Delphi Benefit Center
P.O. Box 14422
Lexington, KY 40512-4422
Phone: 1-877-933-5744, Fax: 1-859-825-6897
TTY: 1-866-665-1287

Date: 10/07/2010

ANDREW GREGOS
3076 CRESCENT DR. NE
WARREN, OH 44483

Claim No.: 980710010278

**Re: Suspension of Extended Disability Benefits (EDB)**

Dear Participant:

A request for current medical certification of your disability was previously mailed to your attention. To date, your response has not been received.

**As a result, your Extended Disability Benefits (EDB) have been suspended, effective 11/1/2010.**

Please have your attending physician complete the enclosed medical statement, based on a recent medical examination, and return it to the Delphi Benefit Center in the envelope provided. When the completed medical statement is received by the Delphi Benefit Center, your claim will be reviewed to determine if you qualify for further benefits.

**If the completed medical statement is not received by the Delphi Benefit Center within 30 days, your EDB will be terminated.**

If you have any questions about S&A, Extended Disability Benefits, or Workers' Compensation Benefits, please call 1-877-933-5744 to speak with a Customer Service Associate.

Sincerely,

**Delphi Benefit Center**

Enclosures

Revised 02/09

*Called Left message to Have them callme*
*Nov. 8, 2010  4 40 PM*

# Exhibit F

*Sent*
*November 10, 2010*

Sedgwick CMS
Delphi Benefit Center
P.O. 14422
Lexington, KY 40512-4422

To whom it may concern,

I am writing to you in regard to my Extended Disability Benefits, claim number 980710010278. As you may know, I spoke with Sonya in your office on October 6, 2010 and requested additional time, as I had not received the completed report from my doctor. She stated that that was not a problem and would note that in the file.

On November 6th I received your letter dated October 07, 2010 regarding suspension of Extended Disability Benefits (EDB). I am not sure why this letter is dated October 7th and was not sent until nearly a month later (The Envelope is dated November 3, 2010.) Enclosed you will find the report completed by Dr. Sahgal. It appears that some sections could have greater detail. Unfortunately, I recently discovered that Dr. Sahgal is out of the country.

I have called Sedgwick several times to discuss what action to take and have left numerous messages, as directed on your system. However, I have yet to receive a return phone call.

Therefore, I am providing the information that I have at this time. If you need additional information please contact me and I will provide it.

Thank You,


Andrew C. Gregos
3076 Crescent Dr. NE
Warren, Ohio 44483

330-393-3328

---

**SENDER: COMPLETE THIS SECTION**

- ☒ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ☒ Print your name and address on the reverse so that we can return the card to you.
- ☒ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Sedgwick Claims Mgt.
Delphi Benefit Center
P.O. Box 14422
Lexington, KY
40512-4422

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Cody Willis_   ☐ Agent   ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)
7009 2250 0001 3863 6840

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

# Exhibit G

## Delphi Corporation
### Separation Allowance Plan Release of Claims

I have been or will be separated from my employment with Delphi Corporation or any applicable subsidiary, affiliate, or joint venture ("Delphi") effective September 1, 2009 under terms which make me eligible for benefits under the Separation Allowance Plan (the "Plan"). These benefits include Severance Pay in the total amount of $ 57,240.00 , less applicable deductions, to be paid in semi-monthly installments commencing on September 15, 2009, until paid, and Other Transition Assistance, comprised of outplacement assistance and $2000 which I may, at my discretion, use to help pay for the continuation of health care coverage through Delphi. I acknowledge that the consideration provided for in this Release of Claims is in excess of anything I would otherwise be entitled to receive absent my signing this Release of Claims.

In consideration for receiving these benefits, I, for myself, family, heirs, and representatives, release, remise, and forever discharge Delphi, General Motors Corporation, and their respective officers, shareholders, subsidiaries, affiliates, joint ventures, employee benefit plans, employee benefit plan sponsors and fiduciaries, employee benefit plans, agents and employees, predecessors, successors, and assigns from any and all manner of actions, causes of actions, suits, proceedings, damages, costs, and claims whatsoever in law or in equity (collectively "Claims"), which I have or may have based upon or in connection with my employment with or separation from Delphi. This release specifically includes all Claims under the Employee Retirement Income Security Act of 1974, as amended, which regulates employee benefit plans; Title VII of the Civil Rights Act of 1964, as amended, which prohibits discrimination in employment based on race, color, national origin, religion, or sex; the Americans with Disabilities Act, which prohibits discrimination in employment based on disability; the Age Discrimination in Employment Act, which prohibits discrimination in employment based on age; the Equal Pay Act, which prohibits wage discrimination; state fair employment practices or civil rights laws; and any other federal, state or local law, order, or regulation or the common law relating to employment or employment discrimination, including those which preclude any form of discrimination based on age. This includes, without limitation, Claims for breach of contract (either express or implied), slander, libel, defamation, misrepresentation, promissory estoppel, detrimental reliance, and wrongful discharge. This release does not apply to Claims that are not subject to waiver under applicable law. This covers Claims I know about and Claims I do not know about; but does not cover Claims that arise after I separate from Delphi.

In further consideration for receiving these benefits, I, for myself, family, heirs, and representatives, hereby rescind and revoke any prior Separation Allowance Plan Release of Claims document, or any other document purporting to promise, provide, or entitle me to severance benefits of any kind, that I signed during my employment with Delphi, and acknowledge and agree that any such documents are null and void in all respects.

I understand that, by accepting benefits under the Plan, I will no longer be entitled to receive any disability benefits (short-term, long-term, or total and permanent) under the Delphi Life and Disability Benefits Program for Salaried Employees or the Delphi Retirement Program for Salaried Employees relating to any disability that arose or arises at any time, and if I am currently receiving or am eligible to receive disability benefits as of the effective date of this Release of Claims, I understand that such benefits or eligibility for such benefits will cease upon the effective date of this Release of Claims.

I have been given a minimum of forty-five (45) calendar days to review this Release of Claims and a written notice of the ages and job titles of all individuals in the same job classification or organizational unit who were (i) selected and (ii) who were not eligible or not selected for separation. I understand that I may use as much of this forty-five (45) day period as I wish. I have been advised to consult an attorney before signing this Release of Claims, but understand that whether or not I do so is exclusively my decision. I understand that I may revoke this Release of Claims within seven (7) days of my signing it. To be effective, the revocation must be in writing and must be received by    Anna Marie Pinti    before the close of business on the seventh (7th) day after I sign this Release of Claims.

I acknowledge that Delphi has made no prior representations, promises, or agreements relating to my employment and separation contrary to this Release of Claims. I understand that I am not eligible for benefits Delphi provides under any other separation program and that I will not be eligible for any enhancements Delphi may subsequently make to the benefits provided under the Plan or any other separation program. This Release of Claims constitutes the entire and only understanding between Delphi and me regarding my separation. If any provision or portion of this Release of Claims is held unenforceable or invalid, all remaining provisions of this Release of Claims remain in full force and effect.

BY SIGNING BELOW, I ACKNOWLEDGE THAT I HAVE READ THIS RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS. I AFFIRM THAT I UNDERSTAND AND VOLUNTARILY AGREE TO ITS TERMS.

Signed: _____

Delphi Identification Number (DIN):    1020849

Name:    Andrew C. Gregos

Dated: _____

Accepted: _____
        Delphi Corporation

August 12, 2009



**EXPRESS MAIL**

UNITED STATES POSTAL SERVICE®

Mailing Label
Label 11-B, March 2004

**Post Office To Addressee**

**DELIVERY (POSTAL USE ONLY)**

| Delivery Attempt | Time | | Employee Signature |
|---|---|---|---|
| Mo.   Day | | ☐ AM ☐ PM | |
| Delivery Attempt | Time | | Employee Signature |
| Mo.   Day | | ☐ AM ☐ PM | |
| Delivery Date | Time | | Employee Signature |
| Mo.   Day | | ☐ AM ☐ PM | |

**CUSTOMER USE ONLY**

PAYMENT BY ACCOUNT
Express Mail Corporate Acct. No.

☐ WAIVER OF SIGNATURE (Domestic Mail Only) Additional merchandise insurance is void if customer requests waiver of signature. I wish delivery to be made without obtaining signature of addressee or addressee's agent (if delivery employee judges that article can be left in secure location) and I authorize that delivery employee's signature constitutes valid proof of delivery.

Federal Agency Acct. No. or
Postal Service Acct. No.

**NO DELIVERY**
☐ Weekend ☐ Holiday        Mailer Signature

**ORIGIN (POSTAL SERVICE USE ONLY)**

PO ZIP Code: 44484

Day of Delivery: ☐ Next ☐ 2nd ☐ 2nd Del. Day

Postage: $ 18 30

Date Accepted: Nov. 12 Day 13 Year 10

Scheduled Date of Delivery: Month 12 Day 14

Return Receipt Fee: $

Time Accepted: 2:00 ☐ AM ☐ PM

Scheduled Time of Delivery: ☑ Noon ☐ 3 PM

COD Fee: $

Insurance Fee: $

Flat Rate ☐ or Weight: 0.37 lbs.   ozs.

Military: ☐ 2nd Day ☐ 3rd Day

Int'l Alpha Country Code

Total Postage & Fees: $ 18 30

Acceptance Emp. Initials: MC

**FROM:** (PLEASE PRINT)   PHONE ( 330 ) 393-5328

A C GREGOS
3076 CRESCENT DR.
WARREN, OH
                44483

**FOR PICKUP OR TRACKING**
Visit **www.usps.com**
Call 1-800-222-1811

**TO:** (PLEASE PRINT)   PHONE (   )

U S BANKRUPTCY COURT
SOUTHERN DISTRICT OF N Y
ONE BOWLING GREEN PL.
ROOM 610 (JUDGE DRAIN)
NEW YORK, NEW YORK

ZIP + 4 (U.S. ADDRESSES ONLY. DO NOT USE FOR FOREIGN POSTAL CODES.)

1 0 0 0 4 +

FOR INTERNATIONAL DESTINATIONS, WRITE COUNTRY NAME BELOW.

EG 613799152 US