Page 1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 05-44481-rdd

5  - - - - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  DPH HOLDINGS CORP., et al.,

9

10          Reorganized Debtors.

11

12  - - - - - - - - - - - - - - - - - - - - - - -x

13

14               U.S. Bankruptcy Court

15               300 Quarropas Street

16               White Plains, New York

17

18               December 16, 2010

19               10:45 AM

20

21

22  B E F O R E:

23  HON. ROBERT D. DRAIN

24  U.S. BANKRUPTCY JUDGE

25

Page 2

1

2    SIXTY-SECOND OMNIBUS HEARING re Motion Of DPH Holdings Corp.

3    For Final Decree And Order Pursuant To 11 U.S.C. Section 350(a)

4    And Fed. R. Bankr. P. 3022 And Local R. Bankr. P. 3022-1

5    Closing Chapter 11 Cases Of Five Filing Debtors (Docket No.

6    20938)

7

8    SUFFICIENCY HEARING re Claim Number 1294 of the Ohio Bureau of

9    Workers' Compensation as Objected to on Debtors' Thirty-Fourth

10   Omnibus Objection Pursuant To 11 U.S.C. Section 502(b) And Fed.

11   R. Bankr. P. 3007 To (I) Expunge (A) Certain Pension And OPEB

12   Claims, (B) Certain Individual Workers' Compensation Claims,

13   (C) Certain Duplicate And/Or Amended Individual Workers'

14   Compensation Claims, (D) Certain Untimely Individual Workers'

15   Compensation Claims, (E) A Secured Books And Records Claim, And

16   (F) Certain Untimely Claims, (II) Modify Certain (A) Wage And

17   Benefit Claims, (B) State Workers' Compensation Claims, And (C)

18   Individual Workers' Compensation Claims Asserting Priority,

19   (III) Provisionally Disallow Certain Union Claims, And (IV)

20   Modify And Allow Certain Settled Claims (Docket No. 17182)

21

22

23

24

25

Page 3

1

2     SUFFICIENCY HEARING re Claim Number 20017 of Andrew C. Gregos

3     as Objected to on the Reorganized Debtors' Forty-Third Omnibus

4     Objection Pursuant to 11 U.S.C. Section 503(b) and Fed. R.

5     Bankr. P. 3007 to (I) Expunge Certain Administrative Expense

6     (A) Severance Claims, (B) Books and Records Claims,

7     (C)Duplicate Claims, (D) Equity Interests, (E) Prepetition

8     Claims, (F) Insufficiently Documented Claims, (G) Pension,

9     Benefit, and OPEB Claims, (H) Workers' Compensation Claims, and

10    (I) Transferred Workers' Compensation Claims, (II) Modify and

11    Allow Certain Administrative Expense Severance Claims, and

12    (III) Allow Certain Administrative Expense Severance Claims

13    (Docket No. 19356)

14

15

16

17

18

19

20

21

22

23

24    Transcribed by:  Clara Rubin

25

```
                                                          Page 4

 1

 2    A P P E A R A N C E S :

 3    SKADDEN ARPS SLATE MEAGHER & FLOM, LLP

 4         Attorneys for the Reorganized Debtors

 5         155 North Wacker Drive

 6         Chicago, IL 60606

 7

 8    BY:   JOHN K. LYONS, ESQ.

 9          LOUIS S. CHIAPPETTA, ESQ.

10          BRANDON M. DUNCOMB, ESQ. (TELEPHONICALLY)

11          MICHAEL W. PERL, ESQ. (TELEPHONICALLY)

12

13    BAKER HOSTETLER

14         Attorneys for the Ohio Bureau of Workers' Compensation

15         45 Rockefeller Plaza

16         New York, NY 10111

17

18    BY:   RICHARD J. BERNARD, ESQ.

19

20    SATTERLEE STEPHENS BURKE & BURKE LLP

21         Attorneys for the VEBA Committee

22         230 Park Avenue

23         New York, NY 10169

24

25    BY:   TIMOTHY T. BROCK, ESQ.
```

Page 5

1

2   FARELLA BRAUN + MARTEL LLP

3        Attorneys for THE Official Committee of Eligible

4          Salaried Retirees

5        235 Montgomery Street

6        17th floor

7        San Francisco, CA 94104

8

9   BY:   DEAN M. GLOSTER, ESQ. (TELEPHONICALLY)

10

11  GAZES LLC

12       Attorneys for Fortunoff Holdings

13       32 Avenue of the Americas

14       New York, NY 10013

15

16  BY:   IAN J. GAZES, ESQ. (TELEPHONICALLY)

17

18  KRIEG DEVAULT LLP

19       Attorneys for the VEBA Committee

20       One Indiana Square

21       Suite 2800

22       Indianapolis, IN 46204

23

24  BY:   PATRICIA L. BEATY, ESQ. (TELEPHONICALLY)

25

DPH HOLDINGS CORP., et al.

Page 6

1                    P R O C E E D I N G S

2          THE COURT:  Okay.  Delphi.  DPH Holdings.

3          MR. LYONS:  Good morning, Your Honor. John Lyons on

4    behalf of DPH Holdings Corp., with my colleague Louis

5    Chiappetta.  And also Mr. Rodder (ph.), the claims

6    administrator, is here today.

7          THE COURT:  Okay.

8          MR. LYONS:  Your Honor, we have our sixty-second

9    omnibus hearing agenda which we filed earlier with the Court.

10   All matters on the agenda have either been resolved, continued

11   or uncontested, and I'll quickly go through those.  The first

12   item on the agenda, Wiegel Tool, that matter's been adjourned

13   to the January 20th hearing next year.  The VEBA Committee

14   motion for order -- we understand the parties are very close to

15   finalizing a stipulation which would resolve issues, go out on

16   notice --

17         THE COURT:  That was the one that was discussed at the

18   last hearing, I think?

19         MR. LYONS:  Yeah, I believe so, yes.

20         THE COURT:  Yeah.

21         MR. LYONS:  So, again, that would go out on notice and

22   a hearing will then be heard on January 20th as well.

23         THE COURT:  Okay.  I thought there was some issue

24   about trying to meet a deadline of -- there was a possible

25   expiration of the legislation.  I thought it needed to be done

Page 7

1    faster.  Am I missing something there, or --

2            MR. LYONS:  Your Honor, we have -- we may have some

3    folks on the line who may be able to shed some light on that.

4            THE COURT:  Okay.

5            MR. GLOSTER:  Good morning, Your Honor.  Dean Gloster

6    on behalf of the 1114 committee.  We've worked with the IRS,

7    and the IRS ACTC program folks said that rather than proceeding

8    by getting a private letter ruling from the IRS, they've worked

9    it out so that the IRS is provided an attestation for

10   participants in the program.  It's still useful to get an

11   order, but we've had to coordinate that with them.

12           THE COURT:  Okay.

13           MR. GLOSTER:  We've now reached agreement between the

14   1114 committee and the VEBA board about the proposed form of

15   order for the Court, and we've provided that to the debtor for

16   the debtor's review.  We expect to go forward with that.  In

17   addition, just in terms of a legislative update, yesterday the

18   House passed, as part of the trade bill, an extension of the

19   American Recovery and Reinvestment Act and that will go the

20   Senate.  So --

21           THE COURT:  Okay.  All right.  But --

22           MR. GLOSTER:  Things are moving forward, but we expect

23   to have that addressed.

24           THE COURT:  And you're also --

25           MR. GLOSTER:  We've also --

1          THE COURT:  -- you're also coordinating with the IRS?

2          MR. GLOSTER:  Yes, Your Honor.

3          THE COURT:  Okay, well, that's great.  All right, so

4     I'll look for that to be dealt with at the next omnibus.

5          MR. GLOSTER:  Thank you, Your Honor.

6          THE COURT:  Okay.  Thank you.

7          MR. LYONS:  Item number 3 on the agenda is the

8     Furukawa administrative expense claim.  That has been resolved

9     and I believe that has already been -- it may well have been

10    entered.  But it has been resolved by mutual withdrawal by the

11    parties.

12         Item number 4 is the claims objection; again,

13    Furukawa, same thing.  There was a resolve pursuant to a mutual

14    withdrawal by the parties.

15         Item number 5 is an indenture trustee plan injunction

16    motion.  That matter has also been resolved and pursuant to a

17    joint stipulation and order, which I believe has been entered

18    already.  So that matter is already on the docket as entered.

19    And similarly with item number 6, the second indenture trustee

20    plan injunction motion.

21         THE COURT:  Right.  I guess they just -- they

22    didn't -- they weren't aware of the case, or did this happen

23    automatically or something?

24         MR. LYONS:  It was just consensually resolved when we

25    submitted it to Your Honor.

Page 9

1        THE COURT:  No, but I mean their actions -- it just

2    happened automatically, I guess?  It was sort of mechanical

3    violation of the automatic -- of the plan injunction?

4        MR. LYONS:  Correct.

5        THE COURT:  Okay.  Thank you.

6        MR. LYONS:  And then, finally, the last item on the

7    omnibus agenda is the second case closing motion.  We have

8    another five debtor entities where all claims have been

9    resolved.  There are no outstanding preference actions or

10   avoidance actions, and we're ready to close those cases.  We

11   filed a motion, no objections had been made and we believe it's

12   under appropriate, under the rules of the law, to close these

13   five cases.

14       THE COURT:  Okay.  And you're going to coordinate with

15   the U.S. Trustee about the fees?

16       MR. LYONS:  Yes.  Yeah, the U.S. Trustee's been

17   involved in this process.  We've CC'd the U.S. Trustee.

18       THE COURT:  Okay.  Very well.  Thank you.

19       MR. LYONS:  Okay, Your Honor, so that is it for the

20   omnibus hearing agenda, and now I'll return to the claims

21   hearing.  Your Honor, basically we have -- there are going to

22   be two contested matters today, and the first one is -- relates

23   to the bureau -- the Ohio Bureau of Workers' Compensation,

24   which we have filed various responses; it relates to a pre-

25   petition claim filed by the bureau.  The parties have briefed

05-44481-rdd   Doc 21070   Filed 12/17/10   Entered 01/18/11 16:07:31   Main Document
DPH HOLDINGS CORP., et al.
Pg 10 of 51

Page 10

1    the issue and we filed a reply yesterday afternoon, which I

2    don't know if Your Honor's had a chance to review.

3                THE COURT:  No, I have.

4                MR. LYONS:  But we're certainly -- we're prepared to

5    rest on our pleadings and answer any questions Your Honor has.

6                THE COURT:  Okay.  Well, I guess I have a, I guess, a

7    practical question.  The -- I'm trying to figure out what it

8    is, in terms of dollars and cents, that you all are fighting

9    over.  Reading between the lines, but maybe I missed this, the

10   debtors have paid, I guess, through the draw on a letter of

11   credit, all of the liquidated pre-petition claims?

12               MR. LYONS:  No, well, let me back up, Your Honor; I

13   think it might be helpful to Your Honor.

14               THE COURT:  Okay.

15               MR. LYONS:  The bureau basically has -- there are two

16   components to their claim.  They filed two pre-petition proofs

17   of claim; one deals with reimbursement of claims brought by

18   individuals that Ohio was paying directly; those are the claims

19   that are actually being paid through the letter of credit --

20               THE COURT:  Okay.

21               MR. LYONS:  -- as it's been drawn down, and those are

22   being paid.  The other component to Ohio's claim is for

23   assessments; that's where Ohio, you know, takes a look at a

24   calendar year, they see the paid compensation to workers'

25   compensation claimants made by the company, they also look at

Page 11

1    the paid compensation in that calendar year by other companies

2    who are self-insurers in the state of Ohio, then they look at

3    what their administrative costs are, and then they send out an

4    assessment to all the employers, including -- you know,

5    including Delphi and all other self-insured employers in Ohio.

6    So that's the claim that's at issue today.

7              THE COURT:  All right.

8              MR. LYONS:  And so it wasn't paid through the LC.  And

9    the debtors have paid those assessments.  They're assessed for

10   the prior calendar year, for all the paid compensation.  And

11   Delphi had paid those right up through it emerged, because, as

12   Your Honor may recall, the human capital order authorized the

13   debtors to continue payments to workers' compensation

14   claimants, as well as assessments.  So that's --

15             THE COURT:  Okay, so what is unpaid at this point?

16             MR. BERNARD:  Your Honor, Richard Bernard of Baker

17   Hostetler, on behalf of the Bureau of Workers' Compensation for

18   Ohio.  May I address --

19             THE COURT:  Sure.

20             MR. BERNARD:  -- Your Honor's question?

21             THE COURT:  Yeah.

22             MR. BERNARD:  Yes, the -- what is unpaid is

23   assessments that are accruing now based upon underlying

24   transactions that were -- that are pre-petition.  So --

25             THE COURT:  But that's really a legal --

DPH HOLDINGS CORP., et al.

Page 12

1        MR. BERNARD:  Yes.

2        THE COURT:  That's a legal charac -- I'm just trying

3   to figure out --

4        MR. BERNARD:  I don't believe an assessment has gone

5   out to Delphi for -- that would say this amount is currently

6   outstanding.

7        THE COURT:  Okay.

8        MR. BERNARD:  However, in 2009 and 2010 there are

9   amounts which are a percentage of the compensation benefits

10   actually paid based upon claims that relate back to pre-

11   petition.

12        THE COURT:  But the claims have been paid, the

13   underlying claims, right?  The --

14        MR. BERNARD:  The compensation benefits are being paid

15   by Ohio as of, I believe, revocation of self-insured status.

16   But there is a letter of credit that's been drawn on there.

17        MR. LYONS:  But that's not the assessment claim.

18   That's --

19        THE COURT:  Right.

20        MR. BERNARD:  That's not the assessment --

21        MR. LYONS:  That's the reimbursement claim.

22        THE COURT:  All right, so let's go back.  What is the

23   assessment claim for?

24        MR. BERNARD:  The assessment claim for is -- claim

25   is -- it's an excise tax charged to a self-insurer -- to all

Page 13

1   self-insurers, for the administration of the workers'

2   compensation program.  So this is a tax on the compensation

3   benefits paid to cover the administration of -- generally the

4   administration of the system.

5          THE COURT:  And it's calculated under -- let me find

6   it here.  I thought I had it right in front of me.

7          MR. BERNARD:  The percentages are set forth in, I

8   believe, the Ohio Administrative Rules.

9          THE COURT:  Right.

10         MR. LYONS:  Yeah.

11         MR. BERNARD:  I think it's cited at OAC.

12         THE COURT:  But -- and that in turn -- those rules are

13  enacted to implement Section 4123 and, I guess, more

14  specifically 4123.35(J) of the Ohio Code -- the Ohio Revenue

15  Code?

16         MR. BERNARD:  4123.35, 4123.35(1), 4123.35(2), yes.

17         THE COURT:  Okay.  And it's for, quote -- I'm quoting

18  here, "the total assessment against all self-insuring employers

19  as a class for each fund and for the administrative costs for

20  the year that the assessment is being made."  So it's for

21  administrative costs for that year, right, for 2009 and 2010?

22         MR. BERNARD:  Yes, Your Honor.  The -- similar to --

23  well, I would -- yes, Your Honor.

24         THE COURT:  Okay.

25         MR. BERNARD:  So there are administrative costs.

DPH HOLDINGS CORP., et al.

Page 14

1   The -- then there's an underlying percentage assigned based

2   upon the actual compensation payments made --

3           THE COURT:  Right.

4           MR. BERNARD:  -- on behalf of a particular self-

5   insured employer.

6           THE COURT:  That's how they calculate it?

7           MR. BERNARD:  That's how it's calculated, Your Honor,

8   yes.

9           THE COURT:  Okay.  And for 2009 and 2010, are those

10  going to be paid by Delphi?  What's the status of those?

11          MR. LYONS:  Your Honor, here's the issue:  State of

12  Ohio did not file administrative claims.

13          THE COURT:  Okay.

14          MR. LYONS:  And that's why we're fighting about

15  this --

16          THE COURT:  Right.

17          MR. LYONS:  -- because they're trying to, in our

18  view --

19          THE COURT:  I mean, normally you'd want to have an

20  administrative claim rather than a 507(a)(8) claim --

21          MR. BERNARD:  Well, Your Honor --

22          MR. LYONS:  Right.

23          THE COURT:  -- if you're in Ohio's position.

24          MR. LYONS:  But our position is they're -- you know,

25  they're time-barred.  They didn't file a claim.

DPH HOLDINGS CORP., et al.

Page 15

1           THE COURT:  Okay.

2           MR. LYONS:  And now they're --

3           THE COURT:  But that's not really in front of me, that

4    issue.

5           MR. LYONS:  No, that is not.  There's no motion to

6    file --

7           THE COURT:  Okay.  For example --

8           MR. LYONS:  -- a late claim.

9           THE COURT:  -- the administrative claims bar date only

10   went through a certain period.  I don't know if this arises

11   after that.  I mean, for 2011, for example, you know, or 2012,

12   I don't think the administrative claims bar date applied to

13   those; did it?

14          MR. LYONS:  Well, it's a contingent claim, Your Honor.

15          THE COURT:  Okay.

16          MR. BERNARD:  It's subject to estimation.

17          THE COURT:  All right.

18          MR. LYONS:  It's a contingent claim.

19          THE COURT:  That's fair.

20          MR. BERNARD:  Your Honor --

21          THE COURT:  Anyway, I don't want to get into that.

22   I'm just trying to figure out -- I wanted to make sure I

23   understood, and I think I do now, that this is not a claim for

24   reimbursement for unpaid workers' compens -- insurance, self-

25   insured, that wasn't paid by Delphi.  This is a claim for

DPH HOLDINGS CORP., et al.

Page 16

1    future assessments?

2              MR. LYONS:  Right.  And --

3              THE COURT:  And, actually, 2009, 2010 assessments as

4    well?

5              MR. LYONS:  And I think -- Your Honor, I think that if

6    you would take the bureau's argument to its logical conclusion,

7    these would be for assessments stretching out till all the

8    employees die or a statute of limitations expire.  So we're

9    talking about --

10             THE COURT:  Right.

11             MR. LYONS:  -- really a claim for assessments that's

12   indefinite into the future.

13             THE COURT:  Okay.  All right.

14             MR. BERNARD:  Your Honor, I -- well, let me step back.

15   The assessments constitute an excise tax, and excise taxes are

16   based upon transaction.

17             THE COURT:  Right.

18             MR. BERNARD:  Pursuant to the case law, you know, our

19   definition of transaction is Delphi being a self-insured

20   employer in Ohio with employees as of the petition date.

21             THE COURT:  Right.

22             MR. BERNARD:  And so based upon that being the

23   transaction, and the obligation that it pay all assessments

24   regardless whether it continues as a self-insurer or not, it

25   creates exposure for Delphi for, you know, what would relate

Page 17

1   back as a pre-petition tax claim for all compensa -- based upon

2   all compensation payments made, I guess, you know, as a

3   snapshot.

4        Your Honor, my understanding generally of the

5   Bankruptcy Code is that the petition date is a demarcation.

6   And specifically with respect to priority taxes, our position

7   would relate to taxes that are based upon an underlying pre-

8   petition transaction as pre-peti -- also as a pre-petition

9   claim.  To the extent that there are workers' compensation

10  claims that occurred post-petition here because the debtor

11  continued to operate as a self-insurer for several years, after

12  the petition date those would not be included within the pre-

13  petition priority tax.  That -- those would be separate.

14        So we're not saying that all assessments that actually

15  get billed or are, you know, precisely determined after the

16  bankruptcy filing would constitute pre-petition tax.  What

17  we're saying is, if the transaction's pre-petition, the tax

18  arising from the transaction is also pre-petition, and 502(i)

19  allows that to relate back to be deemed pre-petition.

20        Now, Your Honor, there is a wind-down, or a tail-off.

21        THE COURT:  But can I -- let me --

22        MR. BERNARD:  Yeah.

23        THE COURT:  -- make sure I just -- I understand what

24  you just got through.  Let's assume for the moment that, in

25  calculating the 2010 assessment, a portion of the claims that

Page 18

1   have been paid are claims that arose within three years before

2   the petition date, and a portion, probably by now a larger

3   portion, are claims that arose after the petition date in 2005.

4   What's the transaction?

5          MR. BERNARD:  The transaction, Your Honor, is Delphi

6   being a self-insured employer with employees.  So that's the

7   universe as of the petition date.

8          THE COURT:  But the -- but even in the very

9   calculation, a portion of that wouldn't be based on that

10   period; it'd be based on post-petition.

11          MR. BERNARD:  Correct, Your Honor.  And, for example,

12   to the extent that a worker was injured post-petition, the --

13   since the calculation is a percentage, the pre-petition tax

14   would not include the percentage based upon the post-

15   petition -- well, the injury that occurred post-petition and

16   the workers' compensation benefits paid on that.  So there is a

17   bifurcation of -- based upon the individual claims, Your Honor,

18   yes.

19          Your Honor, for example, if Delphi was self-insured up

20   until the petition date and then completely ceased employing

21   any workers in Ohio as of the petition date, under the debtors'

22   argument here the assessments that arise immediately post-

23   petition would be administrative claims.  That just doesn't

24   make sense, because everything -- in that black-and-white

25   scenario, the assessments are clearly on payments that relate

Page 19

1   to pre-petition transactions.

2          THE COURT:  But is it really even -- is it -- I guess

3   what I'm -- I know neither of you have really dealt with this

4   issue; you've just -- you've assumed it and they've assumed it

5   for purposes of this matter.  Is this the -- is this really the

6   type of excise tax that Congress had in mind, since it's really

7   just an administrative cost for running the system?

8          MR. BERNARD:  Well, Your Honor, I -- I'm not sure what

9   Congress had in mind.  I've reviewed the 507(a)(8)(E) and have

10  looked at the Ohio statutes and it seems to fit the definition

11  that, based upon a percentage, it's an administration of a

12  state-run monopolized workers' compensation program.  And what

13  we're dealing with is costs of administrating that program in

14  Ohio.  We're not dealing with the underlying benefits, except

15  to determine what percentage that the employer is requiring.

16         THE COURT:  No, I guess the issue I'm having with it

17  is more with the -- not that it would be a tax but that it

18  would be an excise tax.  I just -- I'm having a hard -- I mean,

19  normally an excise tax is like when you sell cigarettes.

20         MR. BERNARD:  Right.

21         THE COURT:  You know, there's a specific transaction.

22         MR. BERNARD:  Right.

23         THE COURT:  And this is really like, you know, a tax

24  for running a program, and it just so happens that the method

25  of calculating it is premised upon prior activity.  But they

Page 20

```
 1    could just as easily have calculated it any way that -- I mean

 2    you can calculate it pro rata if you wanted to.  You can

 3    calculate it based on the -- I mean, it's --

 4            MR. BERNARD:  You could, but this is the way that

 5    the --

 6            THE COURT:  I know, but it's -- it doesn't --

 7            MR. BERNARD:  -- the government of Ohio --

 8            THE COURT:  I understand that.  It just seems like an

 9    odd -- and it's particularly relevant here because of the

10    timing issue; it's critical.  It's odd that it would be viewed

11    as an excise tax.  I mean, I think, tax, fine; I accept that.

12            MR. BERNARD:  I'm not really sure --

13            THE COURT:  But I don't know whether it's an excise

14    tax.

15            MR. BERNARD:  I'm not really sure, Your Honor, what

16    other provisions under (a)(8) that it would qualify for.  It's

17    not an income tax.  It's --

18            THE COURT:  Well, no, I'm -- what I'm saying, it may

19    not be under (a)(8).  I mean, it may be -- there may literally

20    be a distinction.  I mean, this is counterintuitive, because

21    you all -- the two of you are arguing the opposite of what

22    you'd normally argue but for the bar date issue.

23            MR. BERNARD:  Well, Your --

24            THE COURT:  But it seems -- I mean, it would seem to

25    me that it's -- you know, if it were assessed -- if it's
```

Page 21

1   assessed post-petition, but for costs that were incurred pre-

2   petition of running the system, then I guess I could see why it

3   might be an (a)(8) claim or maybe some other claim; not (a)(8)

4   but 507(a)(8) claim; not an excise tax necessarily, but a tax.

5           MR. BERNARD:  Right.

6           THE COURT:  If it were assessed for post-petition

7   costs that the bureau incurred, then it would seem to me it

8   would be an admin claim.  But the notion that the way that it

9   is calculated determines its priority, it seems odd to me.

10          MR. BERNARD:  Your Honor, in my discussion over these

11  issues with the Ohio Attorney General's Office yesterday, the

12  comment was made, and I think it's applicable, it's like is

13  Pluto a planet.  I mean, what's the definition of a planet, and

14  then trying to determine whether --

15          THE COURT:  Well, I know, but --

16          MR. BERNARD:  -- we meet the characteristics.  And

17  it's similar -- Your Honor, I think it's similar in that

18  respect.  But if you look at the total costs of the program,

19  the reason why there's cost is because there's claims to

20  administer.

21          THE COURT:  Right.

22          MR. BERNARD:  Those claims -- those underlying claims

23  being administered relate to the pre-petition transaction.  And

24  so --

25          THE COURT:  I understand, but the costs are being

05-44481-rdd   Doc 21070   Filed 12/17/10   Entered 01/18/11 16:07:31   Main Document
DPH HOLDINGS CORP., et al.
Pg 22 of 51

Page 22

1   incurred in a particular year --

2           MR. BERNARD:  I understand.

3           THE COURT:  -- which would seem to me to be the

4   relevant determination, I guess.

5           MR. BERNARD:  And, Your Honor, I personally did some

6   research on this and I could not find anything particularly --

7           THE COURT:  Well, there are -- I mean, you all

8   actually, and I don't know if this was conscious or not, but

9   there's a series of cases in the Ninth Circuit that really do

10  address this issue, I think, a lot more -- in a more thorough

11  way than the Belden case did, which I think had some issues

12  with how it was briefed, frankly.  The judge -- no one even

13  considered the issue of the injury date, and the judge sort of

14  complains about the briefing in the case.  And since no one

15  really briefed the issue of the occurrence of the injury, the

16  judge doesn't really deal with that.

17          MR. BERNARD:  Your Honor, I did see one of the

18  supplemental briefs on that, and the issue of transaction was

19  briefed, but there wasn't any citation --

20          THE COURT:  Okay.

21          MR. BERNARD:  -- legal citation that I saw in that

22  briefing response.

23          THE COURT:  Well, anyway, there's a series of -- I

24  referred to them.  And, by the way, I think the debtors are

25  right that, although it wasn't really squarely in front of the

Page 23

```
 1    Court, both Chateaugay and Oracole (ph.) focus on the date of
 2    the underlying injury.  But here I think that the underlying
 3    injury isn't really the issue, because you're being paid for
 4    the underlying injury.  This is a separate assessment, as
 5    opposed to someone being injured.
 6         MR. BERNARD:  But, Your Honor, it's the cost of
 7    administering --
 8         THE COURT:  Well, I understand that --
 9         MR. BERNARD:  -- related to that underlying --
10         THE COURT:  -- but that's why -- I am guided heavily
11    here by, as I alluded to a moment ago, a series of opinions in
12    the Ninth Circuit.  I thought I had this nailed when I read In
13    re DeRoche, D-E-R-O-C-H-E, 287 F.3d 751 (9th Cir. 2001), where
14    the Ninth Circuit, in dealing with an Arizona self-insurance
15    program, said that it's the date of the injury, that the tax is
16    for payments owing when you employed a worker, without carrying
17    the required insurance, and the worker is injured.  So that'd
18    be great for you.  And there's actually a really good
19    bankruptcy court opinion that's famous for a completely
20    different proposition, In re Bliemeister, 251 B.R. 383 (Bankr.
21    D. Ariz.), that deals with the same issue.  And it's famous
22    because it dealt with sovereign immunity, but it gets beyond
23    that and then it says 'Look, the transaction here is employing
24    someone when not having the requisite insurance and then
25    they're injured.'  So if the injury occurs within three years
```

1    before the petition, then you're stuck.

2            The problem, though, for you --

3            MR. BERNARD:  Is Belden.

4            THE COURT:  -- is that -- oh, and that Bliemeister

5    opinion was actually cited favorably in DeRoche and then the

6    Ninth Circuit affirmed it and said DeRoche -- you know, the

7    district -- the bankruptcy court was right to look at the date

8    of the underlying injury.  The problem is that, after that, in,

9    I think, something that's much more analogous to our situation,

10   the Ninth Circuit BAP, in In re Lorber Industries of

11   California, 373 B.R. 663 (9th Cir. BAP, 2007), distinguished

12   DeRoche, I think correctly, when it talks about the

13   transaction, which is referred to in (a)(8).  And there -- and

14   the main -- the point they make is that -- well, they say "The

15   distilled message of the authorities is that the 'transaction'

16   giving rise to an excise tax in the workers' compensation area

17   (sic) is the event occasioning the Fund's (or an equivalent

18   agency's) statutory obligation to make or continue compensation

19   payments to the defaulting self-insurer's ...." Now, again,

20   that's not what we're talking about here, but -- because that's

21   been -- that's dealt with in connection with the other claim

22   that you filed.  That's not really at issue.

23           MR. BERNARD:  Right.

24           THE COURT:  But what they point out here in this case

25   is that, unlike the people in DeRoche who never had the

Page 25

1    insurance, this debtor actually was properly self-insured and

2    didn't default, even though the injuries occurred pre-petition,

3    until after the petition date.  And they say, well, that's when

4    the fund, or in your case the bureau, was wronged, and that's

5    when the claim arises.  And here I think it's even more clear,

6    because this is just to fund the cost of the program, and it

7    would seem to me that that, you know, should be based on the

8    costs incurred by the bureau.  If it's post-petition, it's a

9    post-petition claim.  If it's pre-petition, it's a pre-petition

10   claim.  And, I guess, if it straddles it, then, you know, a

11   portion is pre- and a portion is post-.  And that's the -- the

12   wrong that has occurred is occasioned by not paying that post-

13   petition assessment.  It's not a fault in the debtors' not

14   being self-insured when they were employing these people,

15   because they were -- they -- there's no wrong stemming from

16   that.

17             MR. BERNARD:  But, Your Honor, the -- I guess the --

18   to further that through in Your Honor's assessment, then if the

19   debtor terminates -- you know, completely terminates the

20   employment of anybody in Ohio as of the petition date, these

21   assessments will continue to accrue post-petition and, while

22   the debtor's case is pending, the debtor would be obligated to

23   pay administrative expenses, although none of the activity --

24   there is no activity to give rise post-petition to those

25   administrative taxes.

Page 26

1           THE COURT:  Sure, it's the cost of the -- well, I

2    underst -- I --

3           MR. BERNARD:  It revokes on the petition date, so it's

4    no longer in the program.  But under Ohio law --

5           THE COURT:  But it was in the program.

6           MR. BERNARD:  It was in the program pre-petition --

7           THE COURT:  And post-.

8           MR. BERNARD:  Well, in this case, but I'm saying Your

9    Honor's reasoning would allow for an administrative claim that

10   would be completely based upon an entity that was self-insured

11   up until the petition date, revoked its self-insured status,

12   had no employees post-petition, and so no activity, you know,

13   would have rejected the self-insured program for the entire

14   post-petition period and still be charged with administrative

15   assessments for the costs of the program.  And its percentage

16   cost of the program is related entirely to the pre-petition

17   compensation benefits and administering those benefits.

18          MR. LYONS:  Your Honor --

19          THE COURT:  Okay.  That's a legitimate point.

20          MR. LYONS:  If I may, Your Honor.  I think the cases

21   that you've discussed in the Ninth Circuit, I mean, those are

22   looking at the reimbursement prong.

23          THE COURT:  Right.

24          MR. LYONS:  And those are date of injury.  For

25   purposes of this assessment claim, the date of injury is not

Page 27

1   really relevant.  I mean, what -- again, what the State of Ohio

2   does is they look at the previous calendar year and see the

3   loss history that's been paid --

4          THE COURT:  Right.

5          MR. LYONS:  -- and then that factors into what the

6   assessment is.  So by definition, the assessment that hasn't

7   been sent to us yet but which Ohio certainly intends to do

8   through the pre-petition proof of claim, would be for 2009 paid

9   losses.  So it's --

10          THE COURT:  Well, but when you say "2009 paid losses",

11  that could include people who were injured in 2002, right?

12          MR. LYONS:  It could be 2002, it could be -- and

13  here's the problem:  If you're -- and this is where I think the

14  flaw is.  I mean, if you hear the bureau arguing -- they say

15  'What is the transaction?'  Well, it's the act of employing

16  people and being a self-insured right before the petition date.

17  Well, that makes no sense.  They're trying to relate back all

18  of these --

19          THE COURT:  Well, they're saying something more than

20  that.  They're saying employing them and that they were injured

21  before the petition date.

22          MR. BERNARD:  Right --

23          MR. LYONS:  No.  No, they're not.

24          MR. BERNARD:  Well --

25          MR. LYONS:  They're not saying that.

Page 28

1            THE COURT:  Well --

2            MR. BERNARD:  The umbrella --

3            THE COURT:  -- I think that they're saying that the

4    excise would only cover people who were injured pre-petition.

5    Right?  Or am I missing that?

6            MR. BERNARD:  Yeah.  Your Honor, essentially you would

7    have to boil it down -- I'm trying to reconcile Belden with

8    this -- the position that we have on the definition of

9    transaction here.  And if you were to take a snapshot on the

10   petition date, you have a self-insurer with employees, some

11   reported injuries, some unreported injuries, potentially

12   sickness claims if there's, you know, asbestos in the plant, or

13   what have you.  Those -- that is the umbrella of the

14   definition.  So --

15           THE COURT:  So it wouldn't include -- if Mr. Smith is

16   injured after the petition, even though he was employed pre-

17   petition --

18           MR. BERNARD:  Correct.

19           THE COURT:  -- this theory wouldn't cover it?

20           MR. BERNARD:  Correct, Your Honor.

21           THE COURT:  Although under Belden it would, I think.

22           MR. LYONS:  No --

23           MR. BERNARD:  Your Honor, I don't think that was the

24   intent of --

25           THE COURT:  All right.

```
 1            MR. BERNARD:  Well --

 2            THE COURT:  Okay.

 3            MR. BERNARD:  -- I don't agree with that result.  I

 4     think --

 5            THE COURT:  All right.

 6            MR. BERNARD:  -- there should be a demarcation between

 7     pre- and post-.

 8            MR. LYONS:  I'd like to understand this, because I

 9     think -- I thought the bureau was arguing that the transaction

10     was the act of employing and being self-insured, and then they

11     would relate back all the claims to that date.  And if we do

12     that here, Your Honor, we'd be in 2001, which is well beyond

13     the three-year window for priority, because Delphi was a self-

14     insurer in 2001 and employed people.  So --

15            THE COURT:  Right.

16            MR. LYONS:  -- if they want to relate back 'Why do you

17     stop at the petition date?  Why don't you relate it all the way

18     back to 2001,' that's the --

19            THE COURT:  No, I understand, but I think that's why

20     the bureau's counsel acknowledges that you have to have some

21     limits to it, and I think that would be an injury that occurs

22     during the three-year period pre-petition.

23            MR. LYONS:  Well --

24        (Open phone line broadcasting)

25            MR. LYONS:  But --
```

05-44481-rdd   Doc 21070   Filed 12/17/10   Entered 01/18/11 16:07:31   Main Document
DPH HOLDINGS CORP., et al.
Pg 30 of 51

Page 30

1

2          THE COURT:  Sorry.

3          MR. LYONS:  -- Your Honor, I mean, I think --

4          MR. BERNARD:  We didn't ask anybody to call in.

5          MR. LYONS:  -- I think, frankly, it underscores just a

6     flaw in that whole rationale.  I think --

7          THE COURT:  Right.

8          MR. LYONS:  -- you've got to follow the line of cases

9     which -- you look when the assessment is calculated; it's --

10         THE COURT:  Right.

11         MR. LYONS:  -- the prior year.

12         THE COURT:  But how do you --

13         MR. LYONS:  That's the tax period.

14         THE COURT:  -- how do you -- I mean, just putting on

15    your general debtor counsel hat for the moment, let's assume

16    for the moment that in the next case there's a timely admin

17    claim or that I let them file a claim, and they assert a claim

18    for assessments in -- I guess I have to do the hypothetical,

19    because this case -- you continued on, so you continue to have

20    benefits of being part of the program post-petition.

21         MR. LYONS:  We're a self-insurer, right.

22         THE COURT:  But let's assume that you stopped business

23    pre-petition.  They can assert their assessment in the -- you

24    know, for the next year; it'll be based wholly on pre-petition

25    conduct.  I guess -- is your argument that, yes, it's a post-

Page 31

1    petition assessment but there's no benefit to it and therefore

2    it's not an admin claim?  I don't know.  I don't know what the

3    answer on that is.

4         MR. LYONS:  Well, I think, because all the paid losses

5    are pre-petition, Your Honor, that that's -- that that relates

6    to a pre-petition claim.  Here the paid losses would be 2009,

7    which is the post-petition period.  The assessment would come

8    in in 2010.  Correct?

9         MR. BERNARD:  Actually, the paid losses would continue

10   both pre- and post-, because --

11        MR. LYONS:  Well --

12        MR. BERNARD:  -- the compensation benefits would --

13        MR. LYONS:  Well, no, but once -- but, again, once

14   there is a filing of the petition, and the debtors chose not to

15   pay further workers' compensation claims because they're pre-

16   petition --

17        THE COURT:  Right.

18        MR. LYONS:  -- that would be firmly in the pre-

19   petition realm.  So as Debtors' counsel, that would not trouble

20   me if the debtor had to decide not to pay workers' compensation

21   benefits.  It would only be when the debtor would pay the post-

22   petition benefits that they would then expose themselves to a

23   post-petition assessment for administrative priority.

24        THE COURT:  So you would bifurcate the portion of the

25   assessment that's based on pre- and the portion that's assessed

Page 32

1   on post-?  Your view is that if -- you know, that as long as

2   it's assessed post-petition, even though it's calculated on a

3   mixture of pre- and post-petition assessments -- pre- and post-

4   petition payments, that the whole thing would be post-petition?

5           MR. LYONS:  No, no, I would exactly do what Your Honor

6   suggested; I would segregate between pre-petition paid

7   losses -- this would only occur if the debtor decided not to

8   pay post-petition workers' compensation --

9           THE COURT:  Right.

10          MR. LYONS:  -- and turn it over to the guarantee fund.

11          THE COURT:  Right.

12          MR. LYONS:  Then it would be entirely a pre-petition

13  assessment.  If the debtor chose to pay post-petition, then

14  that portion of the post-petition would then go into the pro

15  rata calculation of what portion of the assessment would be

16  entitled administrative priority, because the debtor's

17  willingly participating in the self-insured program for Ohio;

18  because, remember, if a debtor, after they file, if they don't

19  continue a self-insured program, you know, they have the rights

20  of a debtor-in-possession and a trustee where they have to

21  comply with applicable law.  They either have to go out and get

22  separate insurance, or they have to continue their self-insured

23  status, if they want to do business in that state.  So that's

24  why debtors will routinely seek authority to pay the workers'

25  compensation and keep the self-insured program, which generally

DPH HOLDINGS CORP., et al.

Page 33

```
 1    is cheaper than going out and getting third-party insurance.

 2              So, again, the assessment that's based upon post-

 3    petition paid losses would support an administrative priority

 4    claim for an assessment.  And I think that's entirely

 5    consistent with bankruptcy law and how you look at it on an

 6    accrual basis.

 7              MR. BERNARD:  But if --

 8              THE COURT:  Okay.

 9              MR. BERNARD:  Under this hypothetical, if the portion

10    attributable to pre-petition is not treated as admin and it's

11    recognized that it is a tax, then it would have tax priority

12    status.

13              THE COURT:  Right.

14              MR. BERNARD:  And that's --

15              MR. LYONS:  Yes.

16              THE COURT:  Right.

17              MR. BERNARD:  That's our argument today, Your Honor.

18              THE COURT:  And he's -- no, no, it would have --

19              MR. LYONS:  But it's paid losses.

20              THE COURT:  -- it would have post-petition priority

21    taxes.

22              MR. LYONS:  Right --

23              MR. BERNARD:  Pre- and post-.

24              MR. LYONS:  -- though the way the State of Ohio set it

25    up, Your Honor, you look at paid losses that are paid that
```

Page 34

1   prior year, not these potential future injuries that might

2   occur because there's asbestos floating around, or what have

3   you.  See, that's the problem; they try to fold in this

4   projected losses --

5           THE COURT:  Right, but it seems to me that their --

6           MR. LYONS:  -- into the state formula.

7           THE COURT:  -- but their calcul -- how they calculate

8   the assessment, which is clearly a post-petition assessment, it

9   seems to me shouldn't necessarily govern the treatment of the

10  claim.  I mean, for example, if they determine to calculate the

11  assessment based on a fifteen-year average history of the

12  people in the program -- of the companies in the program, you

13  know, I'm not sure that would govern whether it's a pre- or

14  post-petition tax.  The tax is assessed post-petition.  If they

15  chose to look at, you know, the last three months of

16  payments -- I mean, there are all sorts of ways you could

17  calculate an assessment.

18          MR. LYONS:  Well, but they --

19          THE COURT:  The assessment isn't related to -- I mean,

20  it -- I don't want to say it's arbitrary, but it doesn't really

21  tie into, I don't think, bankruptcy law.  The assessment is

22  what counts, not the -- not how they chose to calculate it.

23          MR. LYONS:  Well, but, again, I think the way the

24  calculation --

25          THE COURT:  It's based on post-peti -- the assessment

Page 35

1    is to recomp -- to repay the bureau, ultimately the State of

2    Ohio, for expenses that the bureau incurred post-petition.

3              MR. LYONS:  The prior year.

4              THE COURT:  Right.

5              MR. LYONS:  The prior year.

6              THE COURT:  Well, that's right, but we're only talking

7    about post-petition years now.

8              MR. LYONS:  Yes.

9              THE COURT:  So that, to me, is, I think, the relevant

10   factor, not how they come up with that number.  You know, it's

11   for their costs that were incurred for the prior year, and in

12   this case those costs are all post-petition costs.

13             MR. LYONS:  Right, because the -- because Delphi paid

14   those every year, you know, right through -- you know, prior to

15   the petition and then forward.

16             THE COURT:  Up to 2009.

17             MR. LYONS:  Right.  One other point, Your Honor, and I

18   don't mean to lose the track that we're on, but with respect to

19   whether or not this is an excise tax --

20             THE COURT:  Yeah?

21             MR. LYONS:  -- we didn't brief that.  I mean, there's

22   a real split out there as to whether these types of workers'

23   compensation reimbursements --

24             THE COURT:  I understand.

25             MR. LYONS:  -- are excise -- so we kind of reserved on

DPH HOLDINGS CORP., et al.

Page 36

1    that, because --

2            THE COURT:  Although most of the split is dealing with

3    not this type of administrative assessment --

4            MR. LYONS:  Correct.

5            THE COURT:  -- but, rather, payment of --

6            MR. BERNARD:  Reimbursement.

7            THE COURT:  -- the other claim --

8            MR. BERNARD:  Yeah.

9            THE COURT:  -- the other claim that --

10           MR. LYONS:  Right.

11           THE COURT:  -- Ohio filed.

12           MR. LYONS:  And that may be a real live issue when we

13   get to that claim, if we can't resolve it.

14           THE COURT:  I mean, it -- the DeRoche case, I think,

15   is quite good in explaining that this type of liability at

16   least doesn't look like what one normally thinks of as an

17   excise tax.  It also says that an excise tax is one that can be

18   avoided "by the simple expedient of refraining from an act that

19   would give rise to the tax", which is -- I'm not sure that

20   really is key.  I mean, you can --

21           MR. BERNARD:  Your Honor, I would just reiterate that

22   there is a logical basis for the State of Ohio to allocate

23   taxes the way it does, as a percentage of actual payments --

24           THE COURT:  Right.

25           MR. BERNARD:  -- because the actual payments are --

Page 37

1   represent the share of the actual -- the administrative costs

2   incurred, to make sure that the system operates properly.  I

3   also would like to point Your Honor to Ohio law on these

4   assessments, in the sense that once an employer qualifies for

5   self-insured status under Ohio, it is obligated, regardless

6   whether it continues that status or not, for all assessments.

7           THE COURT:  No, I understand.  I think --

8           MR. BERNARD:  And there is a wind-down.  So --

9           THE COURT:  I understand that that --

10          MR. BERNARD:  -- we're saying --

11          THE COURT:  -- that fits into those cases that say

12  that's an excise -- that's a key element of an excise tax.

13          MR. BERNARD:  Right.

14          THE COURT:  But there are a lot of -- I mean, most

15  taxes are like that, right?  And I think the key word in 507(e)

16  is the word "excise" here, not the word "tax".  Most of the

17  cases discuss whether it's a tax or a fee, you know, or a tax

18  or a fine.

19          MR. BERNARD:  Or premium.

20          THE COURT:  But -- or a premium.  But I haven't found

21  one that actually -- except the couple I cited, that talk about

22  the word "excise".

23          MR. BERNARD:  Right.

24          THE COURT:  And the ones I cited don't really deal

25  with that issue very much; they go hunting for a transaction.

Page 38

1   And I think, consistent with most bankruptcy law, they look at

2   the injury.  And I think the injury is not just the fact that

3   you were an employer; it's either that you were an employer and

4   didn't have insurance and defaulted, because there was an

5   underlying employee injury, and that was the DeRoche case, or

6   you, in this case I think, as well as in the Rorick (ph.) case,

7   didn't pay your tax.

8        MR. BERNARD:  Well, Your Honor, it -- I mean, I guess

9   the important aspect is -- for the bureau's point, is that we

10  don't want debtors to evade their taxes.  And, in essence, if

11  the debtor can, you know, continue the self-insured program

12  until exit -- until effective date of a plan and then terminate

13  it, in essence there is no --

14       THE COURT:  No, then they would be liable.  They'd be

15  liable for an admin expense.

16       MR. BERNARD:  But, Your Honor, they notified us

17  within, I think, days or weeks that -- I guess, days.  I think

18  the bar date under the plan was November -- early November.

19       THE COURT:  Right.

20       MR. BERNARD:  And the letter was October 27.

21       THE COURT:  Well, that's part of your pioneer motion.

22       MR. BERNARD:  Your Honor, yes, it likely will be.

23       THE COURT:  You know, I don't know whether there's any

24  distinction in this case as to whether admin -- I don't know

25  whether this case is insolvent on an (a)(8) basis or not.  You

Page 39

1    may be pleased that you lost today.

2            MR. BERNARD:  Your Honor, I may be.

3            THE COURT:  I don't know.  I don't know if there's a

4    distinction here.

5            MR. LYONS:  And obviously, Your Honor, our view --

6            THE COURT:  And --

7            MR. LYONS:  -- is it's a contingent claim and, you

8    know, it's --

9            THE COURT:  No, I understand.

10           MR. LYONS:  -- it's time-barred.

11           THE COURT:  I understand.

12           MR. LYONS:  But, again, you know, back to this date of

13   injury, and I know Your Honor's focused on this because the

14   Ninth Circuit cases discuss it, I think, for purposes of this

15   assessment claim, the date of injury is just not relevant.

16           THE COURT:  Well, the injury is not paying the tax --

17           MR. LYONS:  Well, okay, that injury.  I thought you

18   were talking about the underlying individual's injury.

19           THE COURT:  -- because, until then, you were doing

20   everything you were supposed to do.

21           MR. LYONS:  Right.  Well --

22           THE COURT:  You were paying the workers' comp claims,

23   you had secure -- you posted the LC and they drew down on that.

24   So the only thing that you didn't do was pay the assessment,

25   which was not -- again, not for -- not to reimburse the bureau

05-44481-rdd   Doc 21070   Filed 12/17/10   Entered 01/18/11 16:07:31   Main Document
DPH HOLDINGS CORP., et al.
Pg 40 of 51

Page 40

1    or, you know, satisfy a subrogation claim; it was to cover the

2    bureau's administrative costs for the prior year, and that was

3    something that you only really breached -- or you incurred that

4    obligation during that prior year.

5              MR. LYONS:  But, again, I think, if you look at it on

6    an accrual basis -- you have to see the time period --

7              THE COURT:  No, I know.  I'm sorry, it wasn't --

8              MR. LYONS:  -- that that tax runs.

9              THE COURT:  -- it wasn't when you didn't pay the tax.

10   It was when it accrued, which was for the prior year.

11             MR. LYONS:  Correct.  I think it's no -- you know,

12   it's no different, Your Honor, than an income tax.  I mean, if

13   you do business in a state, you got to pay income tax.  If you

14   do business in Ohio as a self-insurer, you got to pay these

15   assessments.  I mean, it's very similar, and I think that's why

16   the case law, which calculates when a tax claim accrues, is --

17   if it's on a calendar year, you look at the calendar year.  I

18   think that's entirely -- frankly, the overwhelming majority of

19   courts have found that.

20             THE COURT:  Yeah.  No, that's -- I think it's

21   analogous.  I mean, here 507(a)(8)(E) doesn't refer to

22   assessment, it doesn't refer to accrual; it just says

23   "transaction".  But I think this -- here the transaction, for

24   this particular tax, is a -- I think it's wholly a post-

25   petition transaction.  It may be, you know, in a different set

Page 41

1    of facts where they didn't pay the -- they filed in October

2    2005, and they contin -- let's assume they continued business

3    into -- you know, for a year, October 2006.  For the assessment

4    where the bill comes on 2006, I would assume that a court would

5    probably prorate the -- you know, the assessment based on 2005

6    starting in October, and going forward would be the admin

7    claim, and the pre-October would be the -- whatever claim.  I

8    don't know whether it's an excise tax, but it would be

9    something other than an admin claim.

10          MR. BERNARD:  Right.  And, Your Honor, I think

11   ultimately our argument ends up achieving that sort of

12   proration.  We're just looking at it --

13          THE COURT:  Okay.

14          MR. BERNARD:  -- for the underlying basis.  So it

15   relates more back to --

16          THE COURT:  You're looking at how it's calculated?

17          MR. BERNARD:  Yes, Your Honor.

18          THE COURT:  Okay.

19          MR. LYONS:  Yes.

20          MR. BERNARD:  We're --

21          THE COURT:  Right.

22          MR. BERNARD:  We're drilling down a little deeper than

23   just when the assess -- when the -- I guess, the costs were

24   incurred for the operation of the system.

25          THE COURT:  Right.

Page 42

```
 1            MR. BERNARD:  We're looking at the underlying basis

 2       for those costs --

 3            THE COURT:  Okay.

 4            MR. BERNARD:  -- and the taxation thereof.

 5            THE COURT:  All right, well, I'm going to disagree

 6       with that analysis, and I will grant the debtors' objection to

 7       the assertion of the claim, which is -- it's claim, what, 1219?

 8       Is that it?  1294.  Excuse me.  1294, which is marked as a

 9       claim for premiums on the proof of claim, but it's really a

10       claim for, I believe, assessment of a -- an obligation under

11       Ohio Revenue Code (Annotated) 4123-19-5, and it's calculated

12       under Ohio Revenue Code (Annotated) Section 4123-35(J) to be a

13       "total assessment against all self-insuring employers as a

14       class for each fund and for the administrative costs for the

15       year that the assessment is being made, as determined by the

16       administrator, divided by the total amount of paid compensation

17       for the previous calendar year attributable to all amenable

18       self-insuring employers".  That assessment -- here it's

19       undisputed -- is for an entirely post-petition period, the

20       prior year here being wholly post-petition, and all future

21       prior years being wholly post-petition.  As a consequence, to

22       the extent that that tax would qualify as an excise tax, and I

23       have serious reservations as to whether it would, not focusing

24       on the tax aspect of it but focusing on whether it was an

25       excise tax, I believe that the assessments that are still at
```

Page 43

1   issue in connection with claim number 1294 would not be in

2   respect of a transaction occurring during the three years

3   immediately preceding the date of the filing of the Chapter 11

4   petitions here, which was October 8th, 2005.  For purposes of

5   Section 507(a)(8)(E) of the Bankruptcy Code, it's that section

6   that gives -- or that would, under the bureau's theory, give it

7   an eighth-level priority for that assessment.  I believe that

8   here the accrual of the tax is something that accrued during

9   the year before the tax was assessed -- that's a wholly post-

10  petition period -- and therefore wouldn't fit into the three

11  years prior to the petition date requirement of 507(a)(8).

12          I therefore disagree with In re The Belden Locker

13  Company, 2008 WL 762243 (Bankr. N.D. Ohio, Mar. 21, 2008),

14  which I'll note first is, by its own terms, expressly

15  intended -- I'm sorry, expressly not intended for publication

16  or citation, but I've reviewed it as it is potentially

17  instructive.  I believe that the analysis there, I think

18  probably because of the briefing which the Court complains

19  about, is off the mark, at least in two respects:  First, I

20  don't believe that the tax that is the basis for claim 1294 is

21  in fact analogous to unpaid premiums, contrary to the analysis

22  in the Belden case; secondly, I don't believe that the tax here

23  originates with the start of an employer being a self-insured

24  employer under the Ohio statutory system.  That is simply too

25  open-ended a basis.  Rather, the Ohio statute says when the tax

Page 44

1    accrues that it's really for the prior year; a much more, I

2    think, logical assumption.  Granted, it is calculated upon, in

3    part, claims that were satisfied during that year, which could

4    include claims of employees that arose pre-petition.  But the

5    payment of those claims is not the injury that's the basis for

6    this claim.  The basis for this claim is the administrative

7    costs incurred by the bureau for that particular year, which is

8    wholly post-petition.

9           For the same reason, these facts are distinguished

10   from the facts in In re DeRoche, 287 F.3d 751 (9th Cir. 2002),

11   as well as In re Bliemester, B-L-I-E-M-E-I-S-T-E-R, 251 B.R.

12   383 (Bankr. D. Ariz. 2000) aff'd 296 F.3d 858 (9th Cir. 2002).

13   And I think that's pointed out by the analysis of the Ninth

14   Circuit BAP in In re Lorber Industries of California, 373 B.R.

15   663 (9th Cir. BAP 2007), aff'd on other grounds, 564 F.3d 1098

16   (9th Cir. 2009).

17          My focus really needs to be on the injury, in other

18   words, and when that accrued.  And here I believe the accrual

19   of the claim -- I guess it's fair to refer to a tax as an

20   injury -- the accrual of the claim or the tax or the injury is,

21   again, the administrative costs incurred by the bureau for the

22   year.  So to my mind it's a post-petition claim under these

23   facts and therefore doesn't qualify under 507(a)(8).

24          I think it's also undisputed that all we're talking

25   about here now is future assessments for 2009 forward.  Or was

Page 45

1    2009 actually paid?

2            MR. LYONS:  I believe 2008 was paid.  2009 was not

3    paid.

4            THE COURT:  So from 2009 forward, the claim should be

5    reduced to reflect that.  But it would only be a claim if it

6    were an allowed admin claim and not a pre-petition claim.  And

7    the debtors have asserted that it is a -- an untimely admin

8    claim.  Whether it was untimely or not has not really been

9    briefed to me, nor has the bureau made any motion for the

10   deemed timely filing of the claim, and all those issues are

11   reserved.

12           MR. BERNARD:  Your Honor, the claim as filed is filed

13   as a priority tax claim.  Your Honor's ruling today would

14   disallow it as a priority tax claim.

15           THE COURT:  Right.

16           MR. BERNARD:  Your Honor, we'd request that it be

17   deemed an admin claim.

18           THE COURT:  All right, well, I'm not going to rule on

19   that today.  I think you're going to have to make a motion on

20   that.

21           MR. BERNARD:  Right, but --

22           THE COURT:  And you can certainly phrase it in the

23   alternative, but --

24           MR. BERNARD:  Yes, Your Honor, but I would object to

25   an order emanating from today that would do more than determine

Page 46

1   the sufficiency of the (a)(8) -- I would not want to see the

2   claim expunged as a result of the hearing today, because that

3   wasn't the relief requested.

4           MR. LYONS:  Your Honor, it's not an administrative

5   claim; it's a pre-petition claim as filed.  It should be

6   expunged.  If they want to file a motion for leave to file an

7   admin claim, that's their right, and we'll obviously object to

8   it.

9           MR. BERNARD:  But, Your Honor, they're on notice of

10  the claim and the nature of the claim right from 2005.

11          THE COURT:  Well, but that's really part of a --

12  that's a pioneer issue, though, I think.

13          MR. BERNARD:  Right.

14          THE COURT:  I mean, you can --

15          MR. BERNARD:  Yes.

16          THE COURT:  -- file a late claim, people are on notice

17  of it, but the issue is --

18          MR. BERNARD:  I would not want --

19          THE COURT:  This --

20          MR. BERNARD:  -- want an order prejudice that issue.

21          THE COURT:  My ruling is without prejudice to any of

22  your arguments --

23          MR. BERNARD:  Yes.

24          THE COURT:  -- under 9006.

25          MR. BERNARD:  Thank you, Your Honor.

05-44481-rdd   Doc 21070   Filed 12/17/10   Entered 01/18/11 16:07:31   Main Document
DPH HOLDINGS CORP., et al.
Pg 47 of 51

Page 47

1          THE COURT:  So the claim should be disallowed but

2    without prejudice to any arguments under 9006.

3          MR. BERNARD:  Thank you.

4          THE COURT:  Okay.

5          MR. LYONS:  Thank you, Your Honor.

6          THE COURT:  Okay.

7          MR. LYONS:  We have one final item on the agenda, and

8    that is the Gregos claim, and I'm going to --

9          THE COURT:  Right.

10         MR. LYONS:  -- turn the podium over to my colleague

11   Mr. Chiappetta.

12         MR. BERNARD:  And, Your Honor, may I be excused?

13         THE COURT:  Yes.

14         MR. BERNARD:  Thank you.

15         THE COURT:  Is -- I don't think -- is anyone here for

16   Mr. Gregos, or on the phone?

17      (No response)

18         THE COURT:  No.  Okay.

19         MR. CHIAPPETTA:  If that's the case, Your Honor -- you

20   know, this is a proof of administrative claim that was, you

21   know, filed on over 528,000 dollars, basically of denial of

22   OPEB that has been terminated.

23         THE COURT:  Right.

24         MR. CHIAPPETTA:  There were two portions to Mr.

25   Gregos' claim:  One requested extended disability benefits, and

Page 48

1   one requested the medical retirement.  The medical retirement

2   was very easily dealt with.  As you know, the U.S. Pension

3   Benefit Guaranty Corporation terminated the salary retiree

4   program for Delphi retirees on July 31st, 2009, and any issue

5   that Mr. Gregos had, he'd have to address with the PBGC.

6        The EDB claim -- he currently is getting paid EDB.

7   It's been reinstated and offset against amounts that he owes

8   the debtors.  And we request that this claim be disallowed,

9   provided that he be paid EDB so long as he qualified under the

10  program and recognize that the reorganized debtors have the

11  right to terminate the program in its entirety.

12       THE COURT:  Well, I'm not -- I don't think we need to

13  have that latter point.  It's just he -- the debtors have

14  acknowledged that his EDB rights were reinstated; those rights

15  are whatever rights he has under the EDB.

16       MR. CHIAPPETTA:  Correct.

17       THE COURT:  And that includes, for example, his need,

18  to the extent EDB requires it, to continue to qualify.  I mean,

19  I'd be using exactly the right phrase there, but it's an --

20       MR. CHIAPPETTA:  It's certification.

21       THE COURT:  -- it asserts ongoing certification

22  responsibility.  Similarly, if the debtors have some right to

23  terminate it or modify it, it's subject to that too.  So I will

24  grant the objection, and you can submit a proposed order

25  consistent with that.

Page 49

1            MR. CHIAPPETTA:  Thank you, Your Honor.

2            THE COURT:  Okay.  Thank you.

3            MR. LYONS:  Your Honor, just one last item -- it's not

4    on the agenda -- before we leave.  I just wanted to give you a

5    very quick update on where we are with the claims.  It seems

6    that this process has been going on for some time.  We're down

7    to 25 pre-petition open claims, and we have another 114

8    administrative claims.  So we're --

9            THE COURT:  Okay.

10           MR. LYONS:  -- as I'm sure Your Honor can see, and --

11           THE COURT:  All right.  Now, the -- you've been moving

12   along fine as far I'm concerned.  So --

13           MR. LYONS:  Okay, so --

14           THE COURT:  Okay.

15           MR. LYONS:  -- we'll continue that pace as well.

16           THE COURT:  Okay.  Thank you.

17           MR. LYONS:  Thank you, Your Honor.

18           THE COURT:  Okay.

19        (Whereupon these proceedings were concluded at 11:46 AM)

20

21

22

23

24

25

Page 50

1                              I N D E X

2

3                          R U L I N G S

4    DESCRIPTION                                    PAGE        LINE

5    Debtors' Motion For Final Decree And Order      9          18

6    1 Closing Chapter 11 Cases Of Five Filing

7    Debtors, granted.

8

9    Debtors' Thirty-Fourth Omnibus Objection       47          1

10   to Claim Number 1294 of the Ohio Bureau

11   of Workers' Compensation, granted, without

12   prejudice to any arguments under 9006.

13

14   Debtors' Thirty-Fourth Omnibus Objection       48          24

15   to Claim Number 20017 of Andrew C. Gregos,

16   granted.

17

18

19

20

21

22

23

24

25

Page 51

1

2                        C E R T I F I C A T I O N

3

4    I, Clara Rubin, certify that the foregoing transcript is a true

5    and accurate record of the proceedings.

6    Clara Rubin
     Digitally signed by Clara Rubin
     DN: cn=Clara Rubin, c=US
     Reason: I am the author of this
     document
7    _____
     Date: 2010.12.17 14:05:07 -05'00'

8    Clara Rubin

9    AAERT Certified Electronic Transcriber (CET**D-491)

10

11

12   Veritext

13   200 Old Country Road

14   Suite 580

15   Mineola, NY 11501

16

17   Date: December 17, 2010

18

19

20

21

22

23

24

25