Page 1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 05-44481-RDD (Jointly Administered)

5   - - - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   DPH HOLDINGS CORP., et al.,

9

10          Reorganized Debtors.

11

12   - - - - - - - - - - - - - - - - - - - - - -x

13

14                United States Bankruptcy Court

15                300 Quarropas Street

16                White Plains, New York

17

18                December 17, 2010

19                2:33 PM

20

21   B E F O R E:

22   HON. ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25

1

2    HEARING re Telephone Status Conference filed by Eric Fisher on

3    Behalf of DPH Holdings Corp., et al.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Transcribed by:  Pnina Eilberg

25

1

2   A P P E A R A N C E S :

3   BUTZEL LONG, A PROFESSIONAL CORPORATION

4        Attorneys for Reorganized Debtors

5        380 Madison Avenue

6        22nd Floor

7        New York, NY 10017

8

9   BY:   ERIC B. FISHER, ESQ. (TELEPHONICALLY)

10

11

12   HONIGMAN MILLER SCHWARTZ AND COHN LLP

13        2290 First National Building

14        660 Woodward Avenue

15        Detroit, MI 48226

16

17   BY:   I.W. WINSTEN, ESQ. (TELEPHONICALLY)

18

19

20

21

22

23

24

25

Page 4

1

2    MOSES & SINGER LLP

3         Attorneys for Timken

4         The Chrysler Building

5         405 Lexington Avenue

6         New York, NY 10174

7

8    BY:   JAMES M. SULLIVAN, ESQ. (TELEPHONICALLY)

9

10

11   QUARLES & BRADY LLP

12         33 East Main Street

13         Suite 900

14         Madison, WI 53703

15

16   BY:   VALERIE L. BAILEY-RIHN, ESQ. (TELEPHONICALLY)

17

18

19   MORGAN, LEWIS & BOCKIUS LLP

20         Attorneys for Wagner Smith Company

21         1701 Market Street

22         Philadelphia, PA 19103

23

24   BY:   ANDREW D. GOTTFRIED, ESQ. (TELEPHONICALLY)

25

1

2   SMITH, GAMBRELL & RUSSELL, LLP

3         250 Park Avenue

4         Suite 1900

5         New York, NY 10177

6

7   BY:   WILLIAM M. BARRON, ESQ. (TELEPHONICALLY)

8

9

10  LAW FIRM OF HARRIS D. LEINWAND, ESQ.

11        315 Madison Avenue

12        Suite 901

13        New York, NY 10017

14

15  BY:   HARRIS D. LEINWAND, ESQ. (TELEPHONICALLY)

16

17

18  REED SMITH LLP

19        Attorneys for Wells Fargo

20        2500 One Liberty Place

21        1650 Market Street

22        Philadelphia, PA 19103

23

24  BY:   DEREK J. BAKER, ESQ. (TELEPHONICALLY)

25

Page 6

1

2    DICKENSON WRIGHT PLLC

3         500 Woodward Avenue

4         Suite 4000

5         Detroit, MI  48226

6

7    BY:   JASON P. KLINGENSMITH, ESQ. (TELEPHONICALLY)

8

9

10   LOEB & LOEB LLP

11        Attorneys for Kyocera Industrial Ceramics,

12          Kyocera Americas and Kyocera Mita

13        345 Park Avenue

14        New York, NY 10154

15

16   BY:   DANIEL B. BESIKOF, ESQ. (TELEPHONICALLY)

17

18

19   JUDY B. CALTON, ESQ.

20        Attorney for Affinia

21        660 Woodward Avenue

22        Suite 2290

23        Detroit, MI 48226

24

25   BY:   JUDY B. CALTON, ESQ. (TELPHONICALLY)

Page 7

P R O C E E D I N G S

1

2          MR. FISHER:  Hello, Judge.

3          THE COURT:  Do we have everyone on who we're expecting

4     to be on this call?

5          MR. FISHER:  Your Honor, this is Eric Fisher from

6     Butzel Long for the reorganized debtors.  I just confirmed that

7     Mr. Winston from the Honigman firm is on and judging from the

8     number of beeps that preceded the Court's entry onto the call,

9     I can tell you that there are many, many other parties on the

10    line, although I'm not sure who will want to be heard from,

11    Your Honor.

12         THE COURT:  All right.  Well, I decided, since it's

13    quite possible that we don't have everyone on the line who's

14    interested in this litigation, that I should do this on the

15    record.  So we are taping the call so that people can get a

16    record of the call and understand what was discussed, even if

17    they weren't on the call.

18         So what I'm going to do is, rather than taking a roll

19    of everyone on the phone, I'm just going to ask that you

20    identify yourself when you speak.

21         MR. WINSTEN:  Thank you, Your Honor.  This is Bill

22    Winsten of the Honigman firm and I represent the FINEA (ph.)

23    defendants and the MSX defendants.  And I've been asked to be

24    the spokesperson for the call for the defendants but I hasten

25    to add that I only represent those two clients.  And while I

Page 8

1    think I can speak to the consensus of the group on most issues,

2    if folks disagree or think that there's something that should

3    be added, they're free to chime in on this call and that's why

4    they're all on as well.

5            THE COURT:  Okay.  That's great.  And I received your

6    e-mail, which was in response to the Butzel Long e-mail from

7    Mr. Fisher that also went out yesterday.  So you should assume

8    that I've read both of those documents.

9            Has there been any further discussion between you and

10   Mr. Fisher or anyone else from his firm?

11           MR. WINSTEN:  Unfortunately not, Your Honor.  I just

12   got their list yesterday, mid-day, just a couple hours before

13   it was sent to you.  I do think, though, that if you, kind of,

14   look at where we both agree on our list, which if you look at

15   my list and portions of their list, that we're agreeing are

16   global you have a pretty good general sense of what the global

17   issues are.  There's obviously a fair amount of overlap between

18   them.

19           THE COURT:  Right.  No, I agree with that.

20           MR. WINSTEN:  And obviously from our perspective, you

21   know, there are some -- some issues that are more global than

22   others.  The solvency issue can be a show stopper here or

23   should be, in our view, a show stopper here.  Some of the --

24   you know, the fact that these preference actions should really

25   be futile or implausible under the circumstances of a 2.6

Page 9

1    billion dollar net worth at the time of filing.  That's a

2    pretty big hurdle to get over from a plausibility standpoint

3    and as well as the other issues that I raised.

4         THE COURT:  All right.  Well before turning to that

5    issue, I agree with you that there was a lot of overlap on the

6    two lists, particularly if you -- if you read into some general

7    language in your letter, more specific issues raised in the

8    Butzel Long letter about Iqbal and Twombley issues.

9         There were three points, though, that it seemed to me

10   should be addressed by DPH but that really shouldn't be part of

11   the February 17th hearing and those are points 6, 7 and 8 in

12   your e-mail.  I think that the ruling on the -- well, we'll

13   call it the first wave motions to dismiss, I think should be

14   governing on the issue of defendants that were not named in the

15   proposed amended complaints on the foreign defendants who are

16   less than 250,000 dollar defendants and the defendants whose

17   contracts were assumed as long as the preference was in respect

18   to that contract or the alleged preference.

19         So it would seem to me that those three issues should

20   be dealt with either by a submission by Butzel Long of an order

21   or if it's not submitted promptly by the defendants themselves.

22   Unless I'm missing something, I've already ruled on those three

23   issues.

24         MR. WINSTEN:  Correct.  We've just got to get them out

25   of the case.

DPH HOLDINGS CORP., et al.

Page 10

1           THE COURT:  Right.  So I don't want to tee something

2     up for February 17th on those issues because they've already

3     been dealt with.

4           MR. SULLIVAN:  Your Honor, James Sullivan from Moses &

5     Singer.  We've, kind of, divvied up amongst ourselves some of

6     the -- some of the issues to, kind of, cover and that, kind of,

7     comes into an issue which I told some members of the group that

8     I would try to address and it might help to flesh a little bit

9     of this out.

10          I think your order was fairly specific and

11    comprehensive as it related to the foreign defendants with

12    respect to the claims against -- of less than 250,000 dollars.

13    It was silent as to the assumed contracts but obviously you

14    were fairly vocal on that during the hearing.

15          THE COURT:  Well, the debtors -- let me interrupt.

16    The debtors represented that if they could determine that in

17    fact the alleged preferential payment was on an assumed

18    contract then they wouldn't pursue the case.  So I viewed that

19    as, in essence, an admission by the debtors that they didn't

20    have a claim there.

21          MR. SULLIVAN:  Right.  I mean, I guess it could be

22    viewed as an Iqbal Twombley issue to some degree.  But, you

23    know, we view the requirements of Iqbal and Twombley as

24    requiring the debtors to make sufficient factual allegations

25    with respect to 547(b)(5), for example, and we don't believe

05-44481-rdd   Doc 21078   Filed 12/21/10   Entered 01/19/11 15:10:53   Main Document
DPH HOLDINGS CORP., et al.
Pg 11 of 47

Page 11

1    they've made sufficient allegations as to 547(b)(5) which shows

2    that the defendant is not receiving -- is receiving amounts

3    more than they would have under a Chapter 7 had they not been

4    paid under the Code because, obviously, if a defendant has been

5    released or if a contract's been assumed then the debtors are

6    not -- the debtors are not going to be able to satisfy that

7    prong of 547 and they haven't alleged any such factual

8    allegations in the complaint to deal with that prong.

9            And the other part of the problem is that, you know,

10   from the defendants' perspective it's difficult, if not

11   impossible, based upon the factual allegations that were made

12   to determine whether or not the transfers alleged in the

13   complaint relate to a contract which was assumed or which was

14   the subject of a potential settlement agreement.

15           So that's what makes it, kind of, difficult from the

16   defendants' perspective, Your Honor.

17           THE COURT:  So you're saying that there's a category

18   of proposed amended complaints where the defendants believe

19   their contract was assumed?

20           MR. SULLIVAN:  Yes.

21           THE COURT:  But there's an issue with the debtor, it's

22   been explored with the debtor, and the debtor says it's not

23   been assumed?

24           MR. SULLIVAN:  No, I mean, I can't speak for everyone

25   Your Honor but I can speak for my own client.  We requested

Page 12

1   information from the debtors many, many weeks ago.  They

2   indicated that they would respond promptly, hopefully within a

3   week, and we have heard nothing.

4         And I -- from my -- based upon communications I've had

5   with other defendants, I believe the same is true with respect

6   to many other defendants, that they've asked for information

7   from the debtors and that none was forthcoming.

8         I mean, we believe, as a group, that the debtors have

9   that obligation to make sufficient factual allegations in their

10  amended complaint to satisfy the 547(b)(5) prong and that

11  issues relating to contracts that have been assumed or

12  settlements that have been reached tie into that.  And that

13  it's their burden to make factual allegations to show that the

14  transfers do not relate to an assumed contract or in a matter

15  which has been dealt with as part of a settlement or release

16  agreement.

17        MS. BAILEY:  Your Honor, this is Valerie Bailey from

18  Quarles & Brady.

19        I am in the same situation.  We have provided

20  information to the debtor regarding our contracts being

21  assumed.  Ours was actually assumed and also released, the

22  preference actions against my client and that was months ago.

23  And I keep attempting to try to get something, a response from

24  the debtors' counsel.

25        Now I know there are hundreds and hundreds of these

Page 13

1    cases but we filed, you know, a response, then they filed an

2    amended complaint.  We filed a response to that.

3              So, I mean, I would like some finality, I think, on

4    that issue as well.

5              THE COURT:  Okay.

6              MR. WINSTEN:  This is Bill Winsten.  And Judge, not

7    surprisingly I'm in the same boat as well.  In fact, one of the

8    reasons we moved on this issue or opposed the motion for leave

9    on this basis as well is we've been asking for information from

10   the debtor for several months now, haven't gotten it.  And we

11   believe, as to one of our clients, the contracts have been

12   assumed and we just can't get anywhere with them.

13             THE COURT:  Well, this -- let me deal with the

14   contract issue first and then clarify whether there are any

15   other issues in connection with points 6 through 8.

16             I want anyone who is opposing a motion to amend, on

17   the basis that they have a contract that was assumed and they

18   believe that the transfer relates to that contract, to so

19   inform counsel for the plaintiff by the end of next week,

20   identifying the contract they believe has been assumed.  And

21   after the -- after the Christmas holiday the debtors really

22   need to get back promptly on that.

23             I don't want to be -- I don't want to have the parties

24   spending any time litigating an issue that can be resolved

25   based on the debtors own representations that they're not going

Page 14

 1   to pursue a preference claim relating to an assigned or assumed

 2   contract.  So you can resend the letter that you previously

 3   sent, I just want them all sent by the end of next week.

 4        MR. FISHER:  Your Honor, this is Eric Fisher --

 5        THE COURT:  I mean, that's without prejudice to your

 6   arguments for the motion to dismiss.  I just don't think we

 7   should be wasting our time at a hearing on something like this

 8   if the contracts have been identified.  Unless, after making,

 9   you know, reasonable inquiry the debtors haven't, you know,

10   disagree with that.

11        MR. FISHER:  Your Honor, we, of course, agree with

12   that.  I think that there's no dispute about what the law is in

13   this regard and there have been instances, of course, where

14   defendants brought to our attention, were able to show that

15   payments were made pursuant to assumed contract and we have

16   dismissed either specific claims or in certain instances entire

17   actions on that basis.

18        So we will continue to do so in dialogue with

19   defendants who raise that issue with us.

20        THE COURT:  Okay.  I don't want to shift any burden.

21   I just want the defendants who have this issue to raise the

22   point, identifying the contract that they believe was assumed

23   and for the debtors to do the inquiry on their records.  In

24   essence, this is to give the debtors another chance to amend

25   their complaint because it may well be that if their complaint

Page 15

1   is so vague as to the transfer that you don't know what it

2   relates to, what payable it relates to, then that may -- that

3   may create an issue.  But I'd like to narrow it down first and

4   give the debtors a chance to provide additional information to

5   their proposed amended complaint if they have it, to show that

6   it doesn't relate to the contract that was assumed.  And I

7   think that needs to be done -- that effort needs to have been

8   completed in early January.

9           Then with regard to points 6 and 7, is there any issue

10  here?  I mean, I think, if -- I've signed two or three orders

11  where people have said, on notice to the debtors, that we

12  weren't named in the proposed amended complaint therefore we

13  want the complaint dismissed as to us and I've signed those

14  orders.

15          So I think, you know, unless the debtors are going to

16  be doing it voluntarily people should be submitting those

17  orders to me.  Same with the foreign defendants.

18          MR. FISHER:  Your Honor, again this is Eric Fisher.

19  We -- on September 7th we filed 121 amended complaints and any

20  defendant not named in those proposed amended complaints is not

21  the subject of a litigation.

22          THE COURT:  Right.

23          MR. FISHER:  I think the record is clear on that,

24  based on Your Honor's having dismissed the first wave of

25  complaints and directed us to amend all of the complaints.

05-44481-rdd   Doc 21078   Filed 12/21/10   Entered 01/19/11 15:10:53   Main Document
DPH HOLDINGS CORP., et al.
Pg 16 of 47

Page 16

1          THE COURT:  Okay.

2          MR. FISHER:  So anyone not named in the proposed

3    amended complaint is not a defendant in a live action.

4          THE COURT:  Okay.

5          MR. FISHER:  I would hope the --

6          MR. WINSTEN:  It's both the plaintiffs and the

7    defendants.

8          THE COURT:  I'm sorry, say that again?

9          MR. WINSTEN:  It's both the plaintiffs and the

10   defendants.  In other words, the original complaint had forty-

11   odd plaintiffs, in theory.  The proposed amended complaint has

12   one plaintiff and a reduced number of defendants from most of

13   us.  So we just need to clean that up and get everybody else

14   dismissed out.

15         MR. SULLIVAN:  With prejudice.

16         MR. FISHER:  Your Honor, I don't think I'm -- I think

17   requesting dismissal of plaintiffs doesn't make sense.  When we

18   amended the complaints it's true we identified DOS LLC as

19   really the only relevant debtor entity with respect to the

20   preference complaints and that's how the proposed amended

21   complaints now stand.  But it's just not -- I don't know what

22   it means to dismiss a plaintiff from a case.

23         The plaintiff in each and every one of these cases is

24   DOS LLC.

25         THE COURT:  All right.  I guess I don't see what needs

Page 17

1   to be done on these -- on these issues.  So let me turn,

2   then -- so I would not include points 6 and 7 on Mr. Winsten's

3   e-mail in the issues that need to be dealt with on February

4   17th.

5            As far as issue number 8, which again is the assumed

6   contract issue, the parties need to narrow down the scope of

7   this.  I believe that when you do that it should be narrowed

8   down so that it won't come up on February 17th.  But if there

9   is a remaining Iqbal or Twombley issue, I guess I'll deal with

10  it on the 17th.

11           The parties' efforts to resolve that issue before then

12  will bear on whether I would grant any further leave to amend

13  on this issue.  So I think they ought to use their best effort

14  to try to resolve the issue beforehand.  Okay?

15           MR. FISHER:  Understood, Your Honor.

16           THE COURT:  Now as to the other points, I suppose

17  that's an unhappy defendant I'm hearing on the phone.

18           UNIDENTIFIED SPEAKER:  I think that's our

19  spokesperson, Your Honor.

20           THE COURT:  The eleven issues identified in Mr.

21  Fisher's list seem to overlap with the issues in Mr. Winsten's

22  list, except the issue on solvency.  And I also want to flag,

23  because I want to understand what you're referring to in your

24  respective letters, the defendants' right to make a de novo

25  challenge to the prior 4M orders and/or request to vacate the

05-44481-rdd   Doc 21078   Filed 12/21/10   Entered 01/19/11 15:10:53   Main Document
DPH HOLDINGS CORP., et al.
Pg 18 of 47

Page 18

1    prior orders.

2          MR. WINSTEN:  Sure.

3          THE COURT:  But let's deal with the solvency point

4    first.  It's a motion for leave to amend so I would not

5    contemplate a full blown solvency hearing with experts and the

6    like.

7          When you raise that issue in connection with the

8    motion for leave to amend, what did you have in mind as far as

9    a showing on the -- on the issue of the futility of the

10   complaint?

11         MR. WINSTEN:  Sure.  This is Bill Winsten.  A classic

12   basis for denying a motion for leave to amend is if the

13   proposed complaint is futile.  A 2.6 billion dollar net worth

14   would make any preference claim here futile.

15         THE COURT:  But when you say 2.6 billion net worth,

16   you're basing that on what, the trading value of the stock or

17   the book --

18         MR. WINSTEN:  No, no, no.  The schedules they filed at

19   the front of end DOS' bankruptcy, that the schedule for DOS,

20   the sole plaintiff, filed at the beginning of the bankruptcy

21   stating what its balance sheet was at the beginning of the

22   bankruptcy and that it had a net worth of 2.6 billion.  It

23   turns out the sole plaintiff here, DOS, or sole proposed

24   plaintiff, is where all of the positive assets were and not as

25   many of the liabilities and it had an enormous net worth.  And

Page 19

1     it is, I think as the Second Circuit has said, a basis to deny

2     a motion for leave is if the complaint is unlikely to be

3     productive and that's certainly the case if they can't make a

4     credible showing to you.  I'm not at all suggesting that you

5     have to ultimately determine the issue for all time.  But

6     unless they can come in and show to you that they can get

7     traction on this issue of showing insolvency, we ought not to

8     have to go through all this, especially when, you know, we've

9     got all the other issues in the case and we're all kept in the

10    dark for a couple years or so.

11          We've now, fortunately from your ruling in the summer,

12    narrowed this down to who the correct plaintiff is and that

13    plaintiff can't get up to bat, in our view, because it was

14    heftily solvent at the time.

15          So it seems to me that in order to get over the hurdle

16    here, and I don't think they can, they need to come in and

17    convince you that they're likely to be able to get some

18    traction in this issue.  And it seems kind of hard for them to

19    do that under the circumstances.

20          In addition, there's the separate Iqbal issue which is

21    they have to plead some facts.  They can't just say we're

22    insolvent.  They've got to show that it's plausibly true.

23          So on those two separate bases, either futility or

24    plausibility under Iqbal, they need to come forward with some

25    hefty showing here which, in our view, is -- would seem to be

Page 20

1   virtually impossible because they have to knock out over 2.6

2   billion dollars worth of net worth and that can, kind of add

3   up.

4           MR. FISHER:  Your Honor, this is Eric Fisher.  If I

5   can just address the solvency point.

6           I do think that this is an attempt to accelerate

7   litigation of the merits of the claims as opposed to testing

8   the adequacy of the pleadings.  And I think even in the context

9   of a motion, an opposition to a motion for leave to amend,

10  they're asking for much more than they're entitled to and

11  putting a burden on us that's much more than we should be

12  required to meet.

13          I also disagree with them, as a matter of law, and

14  believe that with respect to transfers during the ninety-day

15  period we are entitled to plead and benefit from the

16  presumption of insolvency.  However, I can tell the Court that

17  to address the solvency issue we are prepared to, in a certain

18  sense, accelerate expert disclosures.  We have been working

19  with FTI as the debtors worked with FTI throughout the

20  bankruptcy proceedings, and we're prepared to make a

21  preliminary submission demonstrating DOS' insolvency during the

22  relevant period of time and that's how we plan to address that.

23          But I appreciate that the Court does not want to

24  conduct a solvency hearing on February 17th.  So we certainly

25  will put in a declaration and an other evidentiary matter

Page 21

```
 1   sufficient to demonstrate that our allegation of insolvency is

 2   plausible.

 3           THE COURT:  Okay.  All right.  I think that's enough

 4   for me to believe that both sides are on the right track on

 5   this issue.

 6           Now where, at this point, do you have any

 7   disagreement, if you do, on what should be heard by me on

 8   February 17th?

 9           MR. FISHER:  Your Honor, since Mr. Winsten hasn't had

10   the benefit of my commenting on his list I think the

11   disagreement is pretty narrow at this point, particularly since

12   Your Honor's indicated that issues 6 through 8 are not properly

13   February 17 issues.

14           THE COURT:  Well the -- number 8 may be, I just -- I

15   have a feeling it won't be after you all go through this

16   exercise.  But it may be.  If there's still a question mark

17   over whether a transfer relates to an assumed contract.

18           MR. FISHER:  Okay.  Then, I think, in terms of -- then

19   without quibbling about how the issues are worded, I don't

20   think that's productive, I think we see the issues for what

21   they are and as advocates we can word them however we choose to

22   word them.

23           Mr. Winsten flags the 4M issues; these are items 3 and

24   4 on his list.  And if -- if -- if he means to say that the

25   defendants should be heard as to their argument that as a
```

05-44481-rdd   Doc 21078   Filed 12/21/10   Entered 01/19/11 15:10:53   Main Document
DPH HOLDINGS CORP., et al.
Pg 22 of 47

Page 22

1    matter of law the 4M orders extending time to serve and also

2    extending the feel (ph.) period should not have been entered,

3    then I suppose that is something that is a global issue that is

4    not fact specific that can be heard on February 17th.  However,

5    I think Your Honor already heard argument about that in July

6    and I think the consequence was that most of the 4M issues

7    tended to turn on case-specific and factually driven

8    determinations about whether or not a particular defendant

9    suffered litigation prejudice as a result of the delay

10   occasioned by the 4M orders.

11          And so we think the 4M issues are amenable to being

12   addressed on February 17th, if they're just addressed facially

13   as a matter of law.  But if the question is the 4M orders as

14   applied to any particular defendant, we don't think that that's

15   something that can be addressed at the February 17th hearing

16   because it likely is the kind of issue that requires discovery

17   and case-specific determination.

18          MR. WINSTEN:  This is Bill Winsten.  Number 3 does not

19   turn on prejudice at all.  What number 3, and number 3 does not

20   mean to be rearguing the summer of 2010 discussion about

21   whether or not the orders were providently or improvidently --

22          THE COURT:  I'm sorry; number 3 on whose list?

23          MR. WINSTEN:  Oh, I'm sorry.  On Winsten's list.

24          THE COURT:  Okay.

25          MR. WINSTEN:  The de novo challenge to the 4M.

1         THE COURT:  What do you mean by that?  I'm not sure I

2    understand what you meant by that.

3         MR. WINSTEN:  Okay.  Number 3 on my list says, "Each

4    of the defendants has a right to make a de novo challenge to

5    the Court's prior 4M orders."

6         THE COURT:  Right.

7         MR. WINSTEN:  What we're getting to here is that all

8    of us or virtually all of us have the right to a de novo

9    challenge.  I think the Court ruled back in the summer that if

10   you weren't on notice you have a right to make a de novo

11   challenge.  And what we're arguing here is that all of the

12   defendants or virtually all of the defendants are in the

13   position, globally, where they have the right to make a de novo

14   challenge on 4M.

15        For example, in the Affinia brief we pointed out the

16   law that -- how, for example, the U.S. Supreme Court has held

17   that even if you know about a lawsuit and even if you've gotten

18   a courtesy complaint of a lawsuit, you don't have to take any

19   action and you can ignore it and you're not bound by anything

20   that occurs in your absence.

21        And so it's our view that none of us or virtually none

22   of us are on actual notice that -- and that even if somebody

23   were on inquiry notice it doesn't matter because until you were

24   served you didn't have to do anything.  And that even if you

25   were on inquiry notice it was reasonable to do nothing because

1    11,000 potential preference defendants did nothing, which

2    certainly would suggest that the reasonable thing to do, even

3    if you were on inquiry of this is to do nothing without losing

4    any of your rights.  And therefore there is a global argument

5    that all of us or virtually all of us, and certainly including

6    those who didn't get ECF notice but even those as well there's

7    an argument as to them as well, are entitled to have a de novo

8    challenge to the 4M issue.  That's a global issue.

9         The Court said back in the summer that we're going to

10   have to figure out who was or wasn't on notice, this is a

11   refinement of that which is everybody has the right to make

12   that de novo challenge.

13        Now I understand that we are not going to be

14   readdressing, necessarily, on February 17 whether or not the

15   Court should or should not have entered the various extension

16   orders.  But what I'm really addressing here is that virtually

17   all of the defendants get up to bat on a de novo challenge to

18   it, the bucket of folks who get to challenge it de novo.  And

19   it's our view that that bucket includes all of us or virtually

20   all of us.  And that argument is explained some detail in the

21   Affinia brief.

22        MR. GOTTFRIED:  Your Honor, this Andy Gottfried at

23   Morgan Lewis for Wagner Smith.

24        I think, if we could just step back for one moment and

25   perhaps define the concept of global issues here, I think at

05-44481-rdd   Doc 21078   Filed 12/21/10   Entered 01/19/11 15:10:53   Main Document
DPH HOLDINGS CORP., et al.
Pg 25 of 47

Page 25

1   least in my mind global should refer to a large group of the

2   defendants but not necessarily all for purposes of this because

3   I don't that there'll be issues that are necessarily universal

4   but are -- still affect a large enough group that it's worthy

5   of considering as part of a hearing on global issues.

6          And I think in this instance this is a global issue,

7   albeit there may be subdivisions to that issue depending upon

8   the extent of notice or lack of notice or no notice that the

9   particular groupings of defendants would fall into.

10          I think one of the comments Your Honor made last

11   summer was that, at least in the instance of my client, that if

12   we receive no notice at all because we were not a creditor in

13   the case or had any other connection to the case, that would be

14   a very strong argument but you were looking for a declaration

15   to that effect.  And in our instance, and I think in other

16   instances on the motion before the Court, we have now put in

17   those declarations as to the particular circumstances with

18   regard to our issue with notice or lack of notice.

19          So I think this is a matter that can --

20          THE COURT:  I'm sorry; you have or you haven't?

21          MR. GOTTFRIED:  We have.

22          THE COURT:  You have.

23          MR. GOTTFRIED:  We have put in a declaration; excuse

24   me, Your Honor.

25          MR. WINSTEN:  And candidly, Your Honor, there's a

05-44481-rdd   Doc 21078   Filed 12/21/10   Entered 01/19/11 15:10:53   Main Document
DELPHI HOLDINGS CORP., et al.
Pg 26 of 47

Page 26

1   whole slew of defendants who really, if they didn't have notice

2   or aren't bound by these orders, they ought to get out of this

3   thing if they can and not be dragged along and continue to have

4   the expense.  And we do fall into some global buckets there.

5          MR. LEINWAND:  This is Harris Leinwand.  The vast

6   majority did not get the 2002 notice and many of those,

7   including my client, filed declarations that they had no actual

8   knowledge of any of those motions or orders.

9          MR. FISHER:  Your Honor, this is Eric Fisher.  I think

10  that this is a reprise of the July hearing issues.  This isn't,

11  you know, global in any new way.  The question of what notice

12  any particular defendant received and whether or not they had

13  actual notice of the 4M extension is a fact question.  It

14  should be addressed on a case-by-case basis and I just don't

15  think that there's any orderly way to do it on February 17th,

16  in the absence of discovery and fact findings as to each

17  individual case.

18          To the extent that the 4M issues are issues that can

19  be resolved as a matter of law, certainly they're appropriate

20  for February 17th.

21          MR. WINSTEN:  And that's what we're arguing.  That's

22  what we're arguing.  I mean, I've -- the Supreme Court -- this

23  is Bill Winsten -- the Supreme Court case that I've cited, the

24  Murphy Brothers case, was a case where a defendant was given a

25  courtesy copy of the complaint, did not thereafter act and the

Page 27

1      Court said they didn't lose any rights whatsoever, it had every

2      right to ignore the proceedings until it was formally brought

3      in.

4           MR. FISHER:  Your Honor, of course the situation here

5      is that no defendant has been subject to any liability and no

6      determination has been made with respect to liability of any

7      defendant.  And that's why the Murphy case is easily

8      distinguished.

9           MR. WINSTEN:  It's a procedural case.  The issue in

10     Murphy Brothers was, the Court may recall the case, is a

11     defendant was given a courtesy copy of a complaint, did

12     nothing, thirty days later, and you have thirty days to remove

13     after having been served or having been put on notice of the

14     complaint, and they didn't remove.

15          They were then formally served, after the thirty days.

16     They then removed and the plaintiff said well you lost your

17     right -- procedural right to remove because you didn't act

18     within thirty days after getting the courtesy copy of the

19     complaint.  And the U.S. Supreme Court says that's not how it

20     works.  They didn't lose any procedural rights.  It didn't

21     start until they were actually served.

22          But that's an issue for February 17th, which is a

23     legal issue of people in these buckets have the right to get

24     out, it seems to me.  And I don't believe that Delphi is

25     disputing these buckets.  If the Court recalls, back in the --

Page 28

1          THE COURT:  Well no, he just said he was.  If Delphi

2     wasn't disputing them, then we could at least deal with some of

3     them.  But Mr. Fisher just said that they need to take

4     discovery on that issue.

5          MR. WINSTEN:  No, they -- what I'm saying is, Your

6     Honor, they acknowledged in their briefing the last time Your

7     Honor was briefed, that for example, only twenty-four, if I

8     recall the number correctly, of the one -- only twenty-four of

9     the defendants in the 177 cases were actually ever even given

10    ECF notice of any of these extension orders.

11         And the legal issue is, if you weren't given notice

12    and there's no legal obligation, even if you're on inquiry,

13    then you ought to be able to challenge them de novo.  It

14    doesn't matter.  And so that's a legal question and that's a

15    question that's frankly near and dear to large groups of our

16    defendants who are candidly spending a lot of time and money

17    and want to get up to bat on those issues and get out of the

18    case, because it's going to be, for many of us, a certainty, I

19    believe, that we were kept in the dark on this and did not have

20    notice and ought to be able to challenge de novo.  So we ought

21    to determine the groups that get to challenge de novo.

22         MR. BARRON:  Judge, this is William Barron on behalf

23    of the Arrayas (ph.) defendants.  But if I may put my nickel on

24    what I just heard pounded as the discovery drama, the issue

25    here is whether the plaintiff, the debtors, gave notice and

Page 29

```
 1   their counsel gave notice to the more than one hundred

 2   defendants here.  They know whether they did or not and I

 3   gather they've admitted they didn't except for a very small

 4   handful.

 5            I can't imagine taking discovery of --

 6            THE COURT:  Actually that's not the issue.  As I

 7   recall, on the first hearing on the motions to dismiss, the

 8   issue is whether the defendants had notice, which is somewhat

 9   different than whether they were given notice by the debtors.

10            MR. BARRON:  But there's no procedural way they could

11   have received notice but that which would have been --

12            THE COURT:  It was a pretty simple -- it was a pretty

13   simple test, someone had to submit an affidavit saying that we

14   never -- we didn't know.

15            MR. BARRON:  Yeah, and that has been done by our

16   clients and, I gather, by a myriad of others.

17            THE COURT:  How many defendants are there at this

18   point?  How many defendants are there at this point?

19            MR. BAKER:  Your Honor, this is Derek Baker from Reed

20   Smith on behalf of a defendant.

21            THE COURT:  No, let me -- please answer my -- I'm

22   speaking to Mr. Fisher now.  How many defendants have objected

23   to the motions to amend?

24            MR. FISHER:  There are seventy-seven oppositions to

25   the motions to amend.
```

Page 30

1          THE COURT:  But how many defendants?  There are

2     multiple defendants covered by those motions?

3          MR. FISHER:  Some of them are multiple defendants,

4     seventy-seven cases.  And Your Honor, there were seventy-seven

5     oppositions filed, since they were filed some cases have been

6     settled or otherwise resolved.  So the actual number of active

7     opposition may be seventy-three cases, I think.

8          THE COURT:  And the debtors can't -- they have a

9     factual issue with regard to each objecting defendant that

10    objected on the basis of notice?

11         MR. FISHER:  Your Honor, there may be some -- there

12    may be some cases where it is factually correct that a

13    defendant did not receive notice.  If I understand the

14    defendants' argument, they say that that entitles them to

15    challenge the 4M orders on a de novo basis.

16         THE COURT:  Right.  So are there any where that issue

17    is not really a factual issue, it's a pure legal issue?

18         MR. APPLEBAUM:  Your Honor, this Joel Applaud.

19         THE COURT:  No, I want to hear the answer to my

20    question.

21         MR. FISHER:  Your Honor, there are instances where

22    defendants submitted affidavits and said we had no idea that

23    this was going on.

24         THE COURT:  Right.

25         MR. FISHER:  That's all we have.  I would want to take

Page 31

1   the deposition of those affiants because they were

2   participating in the case.  The 4M extension procedures were

3   disclosed in the disclosure statement and so I would want to

4   determine whether or not I could show that they had actual

5   notice of the extension.

6        MR. GOTTFRIED:  Your Honor, this is Andy Gottfried

7   again.  I'd like to address Mr. Fisher, particularly in my

8   instance.  My client was not a creditor in the Delphi case, he

9   knows that.  He didn't participate in anything.  We received no

10  notice of anything and he's aware of that.  We put in a

11  declaration to that effect.  I don't think he can hind behind,

12  in an instance such as this, an issue of fact.  There is no

13  issue of fact.  It's incumbent upon him to show an issue of

14  fact, not just say it.

15       MR. BAKER:  Your Honor, this is Derek Baker from Reed

16  Smith.  I would actually, on behalf of Wachovia Bank, I would

17  actually join that comment from Mr. Gottfried and the reason is

18  my client is also not a creditor.  My client, in fact, didn't

19  even have notice of this motion to amend.  We don't have any

20  record of even receipt of this motion.  We found out about it

21  when we checked the docket to see if the case had been

22  dismissed.

23       So we didn't even receive -- not only did we not

24  receive any of the 4M orders, we don't even have record of

25  receipt of the motion that is arguably set for hearing on

Page 32

1    February 17th that was filed three months ago.

2         MR. APPELBAUM:  And Your Honor, this is Joel

3    Applebaum.  I would just indicate that we filed a motion and

4    brief to set aside, under Rule 60, the fourth order extending

5    time under 4M, based upon the Global Crossing case, among

6    others and that is a global and legal issue.

7         MR. WINSTEN:  This is Bill Winsten also.  On the

8    disclosure statement issue, the disclosure statement that Mr.

9    Fisher's referring to only said that there was an extension

10   until February of 2008.  So any defendant who wasn't served by

11   February of 2008, even if that disclosure statement somehow

12   were deemed to put people on notice in a fashion that were

13   binding here, which we can argue about.  But even if that were

14   the case, come after February of 2008 every defendant who read

15   that disclosure statement ought to have concluded, well we're

16   not being sued, the time has passed.

17        So the disclosure statement doesn't get the Delphi

18   home here and it doesn't get them around the bases.  It doesn't

19   get them very far at all, it doesn't get them anywhere.  And,

20   you know, there's all the law about there's no obligation for

21   inquiry to monitor a bankruptcy.

22        And so all the disclosure statement said is they have

23   until February and that's it.  And of course there was another

24   extension in April and thereafter.

25        THE COURT:  Have you all read the transcript of the

Page 33

1    hearing on the first motions to dismiss?

2            MR. FISHER:  Of course, Your Honor.

3            THE COURT:  All right.  I'm not going to deal with the

4    notice issues on the 17th.

5        (Pause)

6            MR. FISHER:  Your Honor, I think the notice issues and

7    then issue number 4 on Mr. Winsten's list, the global

8    prejudice, it ties with the notice issue.  It's, similarly, a

9    fact-specific issue that will depend on the particular case,

10   the particular circumstances of the defendant, will require at

11   least some discovery and for that reason I think, also, it's

12   just not appropriate for an omnibus hearing on the 17th.

13           MR. SULLIVAN:  Your Honor, this is James Sullivan from

14   Moses Singer, counsel for Timken.  Again, there are global

15   issues that apply universally to all the defendants or if not

16   almost all of them.  Just by way of example, again, my client,

17   shortly before the complaint was filed, within a matter of a

18   couple of weeks, a few weeks, had sold its claim for 102 cents

19   on the dollars.  And Delphi still hasn't responded to this

20   issue.  I mean, every single one --

21           THE COURT:  How is that a global issue that applies to

22   -- I'm sorry; I don't -- I mean, I think that --

23           MR. SULLIVAN:  Okay.  Had each of the defendants been

24   served with a copy of the complaint and known about the

25   complaint when it was filed, it could have, such as my client,

Page 34

1  repaid the alleged preference and sold the claim and actually

2  made a profit on it, thereby completely mitigating its damages.

3  And even if --

4          THE COURT:  But I thought you said --

5          MR. SULLIVAN:  -- certain of the defendants --

6          THE COURT:  -- but I'm sorry -- you did sell the

7  claim, I thought?

8          MR. SULLIVAN:  We did but we didn't sell the

9  preference claim, we could have sold that one too, the 502(h)

10  claim.  By hiding this from us it deprives each of the

11  defendants of the opportunity to fully mitigate its damages by

12  selling its claim at a hundred cents or close to.

13          Just by way of example, my client made money -- sold

14  its claim for 102 cents on the dollar.  And as a result of this

15  three year delay, filing this under seal now the claims are

16  trading -- I don't know what they're trading at now but I'd be

17  surprised if it was more than ten cents, now there's no hope of

18  mitigating the damages by selling the 502(h) claim.

19          THE COURT:  I just -- I guess --

20          MR. SULLIVAN:  That's huge prejudice, Your Honor.

21          THE COURT:  I understand that but I'm not prepared, on

22  February 17th, to hear a story which, and I'm not story I

23  accept the fact of it, to hear each defendant's unique story on

24  those points.

25          MR. SULLIVAN:  But Your Honor, if we know -- if we

05-44481-rdd   Doc 21078   Filed 12/21/10   Entered 01/19/11 15:10:53   Main Document
DPH HOLDINGS CORP., et al.
Pg 35 of 47

Page 35

1   know that the claims were trading at a hundred cents at that

2   point in time, then why wouldn't it be a defense that would be

3   applicable to each and every defendant because each and every

4   single defendant --

5          THE COURT:  I don't know where the defendant would

6   come up with the money to pay the preference.

7          MR. SULLIVAN:  I'm sure that the buyer would have

8   funded that money, no problem.

9          THE COURT:  You're sure of that and I should make that

10  finding for seventy-nine defendants?  It doesn't -- I'm sorry;

11  I'm not able to do that.

12         MR. SULLIVAN:  I mean, I can't speak to all defendants

13  in general, like I said I only represent my client, Timken.

14  But -- and I've put more than enough facts in there for my

15  client.  But I don't -- I personally don't see why it wouldn't

16  apply to everybody but, you know, again, I'm pushing this for

17  my client.

18         THE COURT:  Well, because I doubt everyone had exactly

19  the same fact.  Maybe they sold for eighty cents?

20         MR. SULLIVAN:  I know, Your Honor.  But we're talking

21  about at the time that this case was -- that the complaints

22  were filed.  So it wouldn't matter if it sold its claim, let's

23  say, a week after the case filed for fifty cents because at the

24  time -- I'm just speaking hypothetically of course.

25         THE COURT:  But that's the problem.

05-44481-rdd   Doc 21078   Filed 12/21/10   Entered 01/19/11 15:10:53   Main Document
DPH HOLDINGS CORP., et al.
Pg 36 of 47

Page 36

1          MR. SULLIVAN:  But at the time that these --

2          THE COURT:  That's the problem.  I'm -- look, I

3     understand that people would like to have a complete resolution

4     on their particular claim.  But I don't think that can happen

5     on omnibus basis.  What can happen is an analysis of the

6     amended complaint and whether, on its face, it's unlikely to

7     succeed and/or failing the Twombley and Iqbal standards and

8     that's already been briefed.

9          And it is quite possible that by the time the hearing

10    on the 17th is over with, we'll be down to, just as we've

11    already come down from the complaints that were at issue this

12    summer, to a smaller amount.

13         MR. KLINGENSMITH:  Your Honor, this is Jason

14    Klingensmith at Dickinson Wright.  There's also the issue

15    number 5 on Mr. Winsten's list which is the failure of at least

16    a large number of these complaints to relate back to the

17    original complaint.

18         THE COURT:  That's on -- that's on Mr. Fisher's list

19    too, I think.  Right?

20         MR. FISHER:  Yes, it is.

21         MR. KLINGENSMITH:  Okay.

22         THE COURT:  I think that's on both lists.

23         MR. KLINGENSMITH:  Okay.  As long as that's made clear

24    that the Rule 15 would also be ripe for global determination.

25         THE COURT:  Yes.

1          MR. FISHER:  We agree with that.

2          THE COURT:   I think that's a -- you know, that's

3     covered.

4          MR. KLINGENSMITH:  Okay.

5          MR. FISHER:  Your Honor, this is Eric Fisher again.

6     Just in terms of mapping the way forward, I think we're --

7     we've worked on this call off of Mr. Winsten's list and I think

8     Your Honor has made clear which of those issues the Court

9     believes is appropriate for the omnibus hearing and which are

10    not.  And what we would -- we have a brief due on January 28th.

11    We would propose to put in an omnibus brief that addresses

12    those issues that the Court has identified are appropriate for

13    the February 17th hearing, in a single over-sized brief.

14          And then in addition to the issues that we've

15    discussed on this call there was a wave of motions filed by

16    thirty-four different -- in thirty-four different cases but

17    they're substantially the same and those motions specifically

18    argue that the fourth extension order was improvidently granted

19    because the rationale for seeking the extension changed, from

20    the third extension order to the fourth extension order.  I

21    think that that's a pure legal issue that can be resolved on

22    the existing record.

23          So we think that it makes sense to address those

24    motions on the 17th as well, Your Honor.  And then in terms of

25    all of the other issues --

05-44481-rdd   Doc 21078   Filed 12/21/10   Entered 01/19/11 15:10:53   Main Document
DPH HOLDINGS CORP., et al.
Pg 38 of 47

Page 38

1          THE COURT:  Let me interrupt you there.  Do the

2     defendants have any problem with that?

3          MR. WINSTEN:  No, Your Honor.

4          THE COURT:  Okay.  I agree with you both.

5          MR. FISHER:  And then in terms of all of the other

6     kinds of issues that may have been raised in the oppositions

7     that were filed with respect to leave to amend, I think that

8     perhaps February 17th is the best time to decide how best to

9     proceed but it might make sense to deal with these as

10    individual cases and schedule individual hearing dates to

11    resolve particular issues in particular cases.

12         THE COURT:  Well you're not asking me to do that now,

13    though, right?

14         MR. FISHER:  Certainly not, Your Honor.

15         THE COURT:  You want to see -- I mean, I would think

16    we'd want to see what happened on the 17th first?

17         MR. FISHER:  Yes.

18         THE COURT:  And it may well be that after that hearing

19    I will want to focus on the de novo challenge issue, to the

20    extent that it is truly, you know, relating to, at this point,

21    a complaint that I think passes Twombley & Iqbal, if that's

22    what I conclude.  But I think it'll be narrowed down to a

23    better focus then and there may be that intermediate stage

24    before we get into any individual discovery.

25         MR. WINSTEN:  This is Bill Winsten, Your Honor.  Many,

Page 39

1    I think most of the defendants in opposing the motions for

2    leave, put in, in addition to global issues, the case-by-case

3    individualized issues as to why a motion for leave ought not to

4    be filed as to them.

5          I also think, frankly, that many of us laid out in

6    some detail why we thought the Delphi claims did not have any

7    merit in the hope that it would get Delphi to focus on it and

8    hopefully, you know, let out the various defendants on some

9    basis so that we can be done with this.

10         THE COURT:  Well, I encourage Delphi to do that.  I

11   mean, obviously you don't want to be spending money fighting

12   something that is not worth a candle.

13         MR. WINSTEN:  Well my concern, Your Honor, is if

14   Delphi is only filing an omnibus brief on the few global issues

15   in advance of February 17 and is not responding to the

16   individualized issues that have been raised by each of the

17   defendants, then we really aren't advancing the ball in terms

18   of getting these cases resolved because, and I'm not throwing

19   stones about it it's just the reality, Delphi, for whatever

20   reason, has tended not to focus on the specifics of any of the

21   cases.  And if they do, I think most of us think that they're

22   going to realize that maybe they ought not to be investing a

23   whole lot in many of these cases.

24         THE COURT:  Well, I need to -- I need to distinguish

25   what you're referring to as the individualized issues.  If

Page 40

1    they're issues about notice, I think we've already addressed

2    that.  If they're issues about the merits or the preference

3    claim --

4          MR. WINSTEN:  Yes.

5          THE COURT:  -- you know, I guess I have a hard time

6    dealing with that except with regard to assumed contracts and

7    the solvency issue that you've raised in an omnibus hearing.

8          MR. WINSTEN:  Oh no, Your Honor, I'm saying something

9    else.  I'm not saying that the case-by-case gets dealt with on

10   February 17th.  What I'm saying instead is this, I'm

11   suggesting, in fact urging, that Delphi be required in each of

12   these seventy-seven cases to respond to all of the arguments

13   raised by each of the defendants, including the case-by-case.

14   And, you know, they can file an omnibus on the few global

15   issues but there ought to be individualized briefs in each

16   issue forcing them to focus on these cases because at some

17   point we're going to have a case-by-case hearing and so they're

18   going to have to do it in any event.  And I think it will be a

19   very positive event.

20         THE COURT:  Well, can you give me a couple of examples

21   on specifically what you're talking about?

22         MR. WINSTEN:  Sure.  On Affinia, for example, they're

23   suing Affinia for five million and on three of the five million

24   the antecedent box is blank.  On the rest of them all they've

25   put in is evidence of the antecedent debt is the check they

Page 41

1    claim they used to pay the transfer.

2          THE COURT:  But those are -- that's covered by the

3    Twombley and Iqbal points.  I'm assuming they're going to

4    respond on each of those.

5          MR. WINSTEN:  If they're doing one omnibus brief, Your

6    Honor, I tend to think they're not.

7          THE COURT:  Well, I would think they would have to.

8    They're doing an omnibus brief but they're going to have a

9    carve out or two on each one of these points.

10          MR. FISHER:  Your Honor, I think that functionally

11    that's correct.  Your Honor is going to have to rule on whether

12    the exhibits that we prepared in connection with each of these

13    complaints that we believe demonstrates the allegations as

14    antecedent debt as plausible, whether those charts and the

15    allegations in the complaint are adequate.

16          THE COURT:  Okay.  So just to cover Mr. Winsten's

17    point then, this omnibus brief is going to cover those details,

18    those types of details.

19          MS. CALTON:  Yes, Your Honor.  This is Judy Calton

20    also for Affinia and this is, perhaps, an individual one but if

21    they paid attention to it -- gas is the only plaintiff but the

22    1.6 million of wire transfers didn't even come to the named

23    defendant plus it came from Delphi not DOS.  That's not a

24    universal issue but if they actually focused on it we might

25    really, really narrow this case.

Page 42

 1          THE COURT:  No, but again, we're talking about -- I'm

 2     sorry maybe this terminology is misleading people.  But the

 3     universal issue is whether each complaint, A, is one that

 4     passes muster for purposes of a Rule 15 motion.  And B, as a

 5     subset of that, would meet Twombley and Iqbal.  And obviously

 6     they're going to have to, in answering that question for each

 7     complaint; they're going to have to respond to each objector's

 8     individual position as to whether the complaint does that.  And

 9     they're going to have to do it either by, you know, two or

10     three paragraphs on each objection or a long chart detailing

11     each objection.  But they're going to have to show that, yes,

12     we have alleged the antecedent debt because, you know,

13     notwithstanding what the objection says X or Y or whatever,

14     whatever they come up with.

15          MS. CALTON:  Well this is a unique futility issue and,

16     I guess the point that I believe Mr. Winsten was trying to make

17     is Delphi should be directed to pay their attention to it.

18     Yes, it won't be heard on February 17th --

19          THE COURT:  No, no.  It will be heard.

20          MR. WINSTEN:  It's going to be heard.

21          THE COURT:  It's going to be heard.  It'll be heard on

22     the 17th.

23          MS. CALTON:  Okay.

24          THE COURT:  They have to respond in their brief to

25     that.  That's not something that need to take discovery on and

Page 43

1    they're not entitled to take discovery on it.  It's whether

2    their complaint is adequate.  And if the complaint refers to ac

3    check that -- the preferential transfer was a transfer from

4    someone other than the plaintiff, then they're going to lose.

5    Are you clear on that, Mr. Fisher?

6            MR. FISHER:  Yes I am, Your Honor.

7            THE COURT:  Okay.  All right.  So they -- I mean

8    obviously they're going to have to focus on it by the time in

9    January that they have to respond.  And I am happy to give

10   people extensions if you are -- if you are individually

11   resolving something by a stipulation as a result of that, you

12   know, analysis by the debtor or by DPH.

13           Okay.  Anything else?

14      MR. BESIKOF:  Your Honor this is Dan Besikof from Loeb &

15   Loeb.  I represent Kyocera Industrial Ceramics, Kyocera

16   Americas and Kyocera Mita.

17         I apologize if this issue was addressed already earlier

18   in the call but we've got multiple defendants, as I mentioned.

19   The proposed amended complaint on some of those defendants does

20   not recite that those defendants received in excess of 250,000

21   dollars in transfers.

22           THE COURT:  No, we did deal with this.  I'm sorry; let

23   me interrupt you, we did deal with this.  If with respect to a

24   particular defendant it is believed that that defendant got

25   less than 250,000 dollars, the debtors really need to focus on

DPH HOLDINGS CORP., et al.

Page 44

1    that and dismiss them.  And if you believe that your client

2    didn't get the 250,000 dollars and it's not been so alleged in

3    the complaint, my earlier order governs and you can --

4              MR. BESIKOF:  That was my understanding.

5              THE COURT:  I want the parties to try to resolve it by

6    a stipulation dismissing the complaint as to that particular

7    defendant.  But if the debtor is not willing to do that or not

8    answering your call on it, then settle an order consistent with

9    my ruling from this summer.

10             MR. BESIKOF:  Sounds good.  Thanks.

11             THE COURT:  Settle it on notice to Mr. Fisher and I'll

12   enter it.

13             MR. BESIKOF:  Thank you very much, Judge.

14             THE COURT:  Okay.  All right.  Anything else?

15             MR. FISHER:  Nothing further from the debtors, Your

16   Honor.

17             MR. BAKER:  Your Honor, Derek Baker from Reed Smith,

18   again, for Wells Fargo successor in interest to Wachovia.

19             Your Honor, we haven't filed anything on any of these

20   motions because we were never served with them.  So we will

21   probably be filing a motion to dismiss.

22             THE COURT:  That's a separate issue.  Yeah, I'll deal

23   with that separately.

24             MR. BAKER:  And we'll probably set it for the 17th,

25   simultaneously, if that's acceptable to Your Honor.

Page 45

```
 1          THE COURT:  Okay.  Although you may come at the end of

 2    the calendar but that's fine.

 3          MR. BAKER:  And that's fine, Your Honor.  We

 4    understand that.  Thank you.

 5          THE COURT:  Okay.

 6       (Pause)

 7          THE COURT:  Okay.  So again, this was on the record.

 8    If people have any confusion about it, they can get -- they can

 9    order a transcript of it otherwise I'll wait to see the

10    briefing.

11          MR. WINSTEN:  This is Bill Winsten, Your Honor.  There

12    was one other thing that we said we were going to address, and

13    we may have to your satisfaction but I just want to raise it,

14    that was in the order scheduling this day and that is how to

15    deal with the case-by-case hearings and when and how to

16    schedule them.

17          Do I take it from what I have a sense you're saying

18    that that's something you want to deal with on February 17,

19    after you see where we are?

20          THE COURT:  I think so.  I mean, I think given the --

21    it wasn't clear to me, obviously, when I ruled earlier this

22    year whether the, buy and large, the debtors proposed amended

23    complaints would resolve the Iqbal issues.

24          Obviously, based upon the objections as well as the

25    issues that both parties have identified, there's still a
```

Page 46

1   series of potentially very serious issues about that problem.

2   And rather than getting the parties into case-by-case discovery

3   on notice related to the 4M issues and/or discovery generally,

4   I think we ought to deal with the complaint first, just the

5   face of the complaint first.

6            MR. WINSTEN:  That was my sense of what you were

7   saying.  I just wanted to make explicit what was implicit.

8            THE COURT:  Yeah.  So, I mean, it may be that we still

9   have, you know, a hundred or so defendants but it's also

10  possible we'll only have twenty or fifteen or thirty.  So I

11  think rather than deal with that now, we should focus on that

12  for the 17th, depending on how I rule.

13           Okay.  All right.  Hearing nobody else, I thank you

14  all for focusing on this.  I appreciate that it is -- it's an

15  unusual and frustrating situation for the defendants but I

16  believe that this is probably the most efficient way to deal

17  with it, particularly after the hearing this summer.  So we'll

18  go down this path for February 17th.

19           Thank you.

20           MR. FISHER:  Okay.  Thank you, Your Honor.

21      (Whereupon these proceedings were concluded at 3:38 PM)

22

23

24

25

Page 47

1

2                         C E R T I F I C A T I O N

3

4       I, Pnina Eilberg, certify that the foregoing transcript is a

5       true and accurate record of the proceedings.

6
        Pnina Eilberg       Digitally signed by Pnina Eilberg
                            DN: cn=Pnina Eilberg, o, ou,
                            email=digital1@veritext.com, c=US
7       _____   Date: 2010.12.21 15:58:39 -05'00'

8       PNINA EILBERG (CET**D-488)

9       AAERT Certified Electronic Transcriber

10

11

12      Veritext

13      200 Old Country Road

14      Suite 580

15      Mineola, New York 11501

16

17      Date:   December 21, 2010

18

19

20

21

22

23

24

25