Marc Skapof  
BAKER & HOSTETLER LLP  
45 Rockefeller Plaza  
New York, New York  10111  
Telephone:  (212) 589-4200  
Facsimile:  (212) 589-4201  

*Attorneys for Ohio Bureau of Workers' Compensation*

Hearing Date: February 18, 2011  
Objection Deadline: February 11, 2011  

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No.  05-44481 (RDD) |
| DPH HOLDINGS CORP., et al., | Chapter  11 |
| Reorganized Debtors. | Jointly Administered |

### MOTION OF OHIO BUREAU OF WORKERS' COMPENSATION TO (I) DEEM CLAIM TIMELY FILED OR, ALTERNATIVELY, (II) AUTHORIZE THE AMENDMENT OF CLAIM, OR (III) PERMIT LATE FILED CLAIM

Ohio Bureau of Workers' Compensation ("BWC"), by its undersigned counsel, hereby files this motion (the "Motion") seeking entry of an order[1] (I) deeming claim number 1294 (the "Claim") to be a timely filed administrative expense claim in accordance with this Court's ruling on December 16, 2010 (the "Hearing") or, alternatively, (II) authorizing BWC to amend the Claim to reflect BWC's entitlement to administrative status, or, alternatively, (III) permitting BWC to file a late proof of claim for administrative expenses pursuant to Section 503 of Title 11 of the United States Code (the "Bankruptcy Code"), and Federal Rule of Bankruptcy Procedure 9006 (the "Rules").  In support of the Motion, BWC respectfully states as follows:

---

[1] A copy of the proposed order is annexed hereto as Exhibit "A".

**PRELIMINARY STATEMENT**

1.     Delphi Corp. (the "Debtor") incurred approximately $24,732,628.02 in tax assessments for workers' compensation in connection with its status as a self-insured employer doing business in the state of Ohio.[2]  On December 27, 2005, BWC timely filed its Claim as a priority tax claim, in reliance upon applicable Ohio law.  More than three years after BWC filed the Claim, the debtors (the "Debtors") and subsequently, the reorganized debtors (the "Reorganized Debtors") objected (the "Objection") to the Claim on the grounds that the Claim should be reclassified from a priority tax claim to a general unsecured claim.  After the bar date for filing administrative claims passed (the "Administrative Expense Bar Date"), the Debtors, for the first time, indicated that they believed BWC may have had an administrative claim.  By their dilatory objection to the Claim, the Debtors and subsequently the Reorganized Debtors are attempting to punish BWC for protecting its rights by timely filing the Claim in advance of the general bar date (the "Bar Date") for prepetition claims. Put another way, BWC could have let the Bar Date pass and subsequently have filed an administrative expense claim, leaving it vulnerable to an objection that the Claim was in fact pre-petition and thus time-barred.  Rather than risk tripping the Bar Date, BWC took the prudent course of putting the Debtors on notice of its Claim before the Bar Date expired based on its good faith understanding of the law.  It was not until the conclusion of the Hearing, more than *five years* after the Claim was filed that BWC learned that the Court considered the Claim one for an administrative expense and not a pre-petition priority tax claim.  To permit the Claim to be expunged would thus punish BWC for protecting its rights and simultaneously unjustly enrich the estates for the valuable post-petition services provided to the Debtors by BWC.

---

[2] Due to the manner in which assessments are calculated, BWC is seeking allowance of its Claim at this time with liquidation to be determined later by the parties or the Court.

- 2 -

**RELIEF SOUGHT**

2. By this Motion, BWC seeks entry of an order pursuant to sections 105(a) and 503 of the Bankruptcy Code and Rules 3003 and 9006 of the Rules (a) deeming the Claim to be a timely filed administrative expense claim or, (b) alternatively, authorizing BWC to amend the Claim to reflect the Court's ruling that BWC has an administrative expense claim or, (c) alternatively, permitting BWC to file a late administrative expense claim to avoid an obviously prejudicial result, which in effect punishes BWC for timely filing its Claim in accordance with Ohio law.

**RELEVANT BACKGROUND**

A. <u>The Debtor's Participation In Ohio's Self-Insured Program</u>

3. Prior to their petition dates of October 8 and October 14, 2005, respectively (the "Petition Dates") and during their post-petition operations, the Debtors, and in particular Delphi Corp., were employers subject to Ohio's workers' compensation laws. A subject employer can comply with Ohio's workers' compensation laws in one of only two ways; either (a) by paying premiums into Ohio's State Fund or (b) by applying for, and being granted the privilege of being, "self-insured." The Debtors operated as self-insured employers under Ohio's workers' compensation laws and continued to operate as self-insured employers after the Petition Date.

4. In addition to paying workers' compensation claims directly, and various other duties and responsibilities imposed by Ohio law, all self-insured employers must pay certain self-insured assessments. These assessments are created by and governed by Ohio Revised Code ("O.R.C.") § 4123.35, O.R.C. § 4123.351, O.R.C. § 4123.342, Ohio Administrative Code Rule 4123-19-15, and Ohio Administrative Code Rule 4123-17-32.

5.     Ohio law is clear and unambiguous. Once an employer applies to be, and is granted the privilege of being, a self-insured employer, Ohio law imposes the pecuniary burden of paying self-insured assessments. Because Ohio's self-insured assessments are calculated based on workers' compensation benefits paid to an employer's injured workers, the precise amount of self-insured assessments is not known until all the Debtors' workers' compensation benefits to the Debtors' injured workers have been paid. Accordingly, BWC estimated its self-insured assessments for purposes of the Claim. Further, because the assessments at issue related back to obligations incurred by the Debtors before the Petition Dates, BWC reasonably believed its Claim to be a pre-petition one.

B.     The Debtors' Bankruptcies

6.     On the Petition Dates, the Debtors commenced their cases in this Court under Chapter 11 of the Bankruptcy Code.

7.     On October 13, 2005, the Court entered the Order Under 11 U.S.C. §§ 105(a), 363, 507, 1107, and 1108 (I) Authorizing Debtors to Pay Prepetition Wages and Salaries to Employees and Independent Contractors; (II) Authorizing Debtors to Pay Prepetition Benefits and Continue Maintenance of Human Capital Benefit Programs in the Ordinary Course; and (III) Directing Banks to Honor Prepetition Checks for Payment of Prepetition Human Capital Obligations [Docket No. 198] (the "Human Capital Obligations Order") which granted the Debtors the authority to pay all amounts related to workers' compensation claims.

8.     BWC filed its Claim on December 27, 2005. BWC asserted a right to payments of the assessments as a pre-petition priority tax claim under section 507 of the Bankruptcy Code.

9.     The Bar Date for filing proofs of claim was July 31, 2006. Thus, BWC filed its Claim almost eight months *before* the Bar Date expired.

10.     On December 10, 2007, the Debtors filed the First Amended Joint Plan of reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession [Docket No. 11386] (the "Plan"). Among other things, the Plan (1) reserved this Court's authority to permit late filed claims; and (2) required administrative expense claims to substantially conform to the Administrative Claim Request Form.

11.     On January 25, 2008, the Court entered Findings of Fact, Conclusions of Law, and Order under 11 U.S.C. §§ 1129(a) and (b) and Fed. R. Bankr. P. 3020 Confirming First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession, as Modified [Docket No. 12359] (the "Confirmation Order").

12.     The Debtors subsequently modified the Plan. On June 1, 2009, the Debtors filed their (A) Supplement to Motion for Order (I) Approving Modifications to Debtors' First Amended Plan of Reorganization (As Modified) and Related Disclosures and Voting Procedures and (II) Setting Final Hearing Date to Consider Modifications to Confirmed First Amended Plan of Reorganization and (B) Request to Set Administrative Expense Claims Bar Date and Alternative Sale Hearing Date [Docket No. 16646] (the "Modification"). On July 30, 2009, the Court entered an Order approving the Modification [Docket No. 18707] (the "Modification Order"). Among other things, the Modification Order established that the Administrative Expense Bar Date for certain types of administrative claims would be thirty (30) days after the Effective Date.

13.     On June 22, 2009, *thirty-five months* after the Bar Date passed, the Debtors objected to the Claim [Docket No. 17182]. The Debtors' objection to BWC's Claim was relegated to a very small portion of an approximately 200 page omnibus objection. Notably, the Debtors asserted that the Claim was not entitled to priority and should be re-classified as

unsecured, thereby acknowledging that the Claim was timely filed and only challenging its classification. Nowhere in their papers or with communications with BWC did the Debtors indicate that they took the position that the Claim was an administrative claim.

14. On July 16, 2009, BWC filed its Response to Debtors' Thirty-Fourth Omnibus Objection to Claims [Docket No. 18346]. BWC argued that the assessments were excise taxes in accordance with this Court's decision in In re Olga Coal, 194 B.R. 741 (Bankr. S.D.N.Y. 1996).

15. On October 6, 2009, (the "Effective Date") the Debtors substantially consummated the Plan, and emerged from chapter 11 as the Reorganized Debtors. Thus, the Administrative Expense Bar Date for certain claims was on November 5, 2009.

16. On December 6, 2010, *almost five (5) years* after BWC filed its Claim and after the Administrative Expense Bar Date passed, the Reorganized Debtors filed their Supplemental Reply to Response of Claimant to Debtors' Objection to Proof of Claim Number 1294 Filed by Ohio Bureau of Workers' Compensation [Docket No. 20977]. The Debtors' objected to the Claim on the grounds that BWC was paid in full on its Claim and that BWC did not establish entitlement to future assessments. Furthermore, for the very first time, the Debtors argued that post Effective Date assessments were separate claims, and raised the issue of administrative expense status. Ultimately, the Reorganized Debtors took the position that the Claim was insufficiently noticed to be relied upon as an administrative expense claim.

17. On December 14, 2010, BWC filed its Response of the Ohio Bureau of Workers' Compensation to Reorganized Debtors' Supplemental Reply to Response of Claimant to Debtors' Objection to Proof of Claim Number 1294 Filed by Ohio Bureau of Workers' Compensation [Docket No. 21003]. BWC noted that the Reorganized Debtors did not contest that the Claim was one for priority taxes under section 507(a)(8)(E) of the Bankruptcy Code.

Rather, the Reorganized Debtors suddenly took the position that the assessments arose post-petition and were thus administrative expenses.

18. On December 15, 2010, the Reorganized Debtors filed their Second Supplemental Reply to Supplemental Response of Claimant to Debtors' Objection to Proof of Claim Number 1294 Filed by Ohio Bureau of Workers' Compensation [Docket No. 21008]. The Debtors again argued that post-petition assessments were administrative claims and that the post-petition assessments should not be included within the Claim.

19. During the Hearing, the Court concluded that BWC had an administrative expense claim because the Claim arose from the provision of post-petition administrative services provided by BWC. The Court stated that:

> My focus really needs to be on the injury, in other words, and when that accrued. And here I believe the accrual of the claim – I guess it's fair to refer to a tax as an injury – the accrual of the claim or the tax or the injury is, again, the administrative costs incurred by the bureau for the year. So to my mind it's a post-petition claim under these facts and therefore doesn't qualify under 507(a)(8).

Transcript of the December 16, 2010 hearing at p. 44, lines 17-23, In re DPH Holdings Corp., 05-44481 (RDD) (2010) (the "Transcript"). A copy of the relevant portions of the Transcript are annexed hereto as Exhibit "B".

20. The Court ruled that the Claim would be disallowed as a priority tax claim but that the disallowance was "without prejudice to any arguments under [Bankruptcy Rule] 9006." Transcript at p. 45, lines 12-15 and p. 47 lines 1-2.

21. The Hearing was the first time BWC became aware that the Claim was for an administrative expense.

22. On December 20, 2010, the Court entered the Order Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 Disallowing and Expunging Proof of Claim Number 1294

- 7 -

Filed by Ohio Bureau of Workers' Compensation (the "Order") [Docket No. 21027]. The Order is partially erroneous because it failed to incorporate the Court's ruling that there is no prejudice to BWC's rights to file this Motion.[3]

## ARGUMENT

A.  The Claim Should Be Deemed A Timely Filed Administrative Expense Claim

23.    BWC respectfully submits that the Court should deem the Claim a timely filed administrative expense claim. BWC timely filed its Claim as a pre-petition priority tax claim in reliance on Ohio case law.[4] The Claim sets forth the basis of the Debtors' liability to BWC, an estimation of the amount owed to BWC, and clearly indicates that BWC intends to hold the Debtors liable for their indebtedness to BWC. BWC timely acted in a reasonable manner and took affirmative steps to protect its rights. Thus, the Court should permit the Claim to serve as a timely filed administrative expense claim because BWC satisfied all of the elements for stating a claim whether formally or informally.[5]

24.    Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Generally, when determining if a document should be considered an informal

---

[3] The Order was not circulated to counsel for BWC prior to its entry as is the usual practice.

[4] Indeed, the Northern District of Ohio Bankruptcy Court's decision in In re The Belden Locker Co., 2008 WL 762243 (Bankr. N.D. Ohio, March 21, 2008), provided additional support for BWC's position that its claim was properly classified as a pre-petition priority tax claim. However, this Court declined to adopt the Belden decision.

[5] The Bankruptcy Code explicitly recognizes that the allowance or disallowance of claims should be a flexible process. For instance, section 502(j) and Rule 3008 govern reconsideration of orders allowing or disallowing claims. Section 502(j) of the Bankruptcy Code states in part that a "claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." 11 U.S.C. § 502(j). Rule 3008 provides in relevant part that a "party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate." Fed. R. Bankr. P. 3008. Courts have the authority to "allow or disallow the claim, increase or decrease the amount of a prior allowance, accord the claim a priority different from that originally assigned it, or enter any other appropriate order." 4 Collier on Bankruptcy, ¶ 502.11[4][b] (Alan N. Resnick & Henry J. Sommer eds. 16th ed. 2009), quoting 1983 Advisory Committee Note to Fed. R. Bankr. P. 3008.

claim, courts examine whether the document "apprise[s] the court of the existence, nature and amount of the claim (if ascertainable) and make[s] clear the claimant's intention to hold the debtor liable for the claim." The Charter Company v. Dioxin Claimants (In re The Charter Company), 876 F.2d 861, 863 (11th Cir. 1989); see also In re Plunkett, 191 B.R. 768, 774 (Bankr. E.D. Wis. 1995); Sambo's Restaurants, Inc. v. Wheeler (In re Sambo's Restaurants, Inc.), 754 F.2d 811 (9th Cir. 1985) (ruling that a complaint, correspondence and joint motion with the debtor constituted an amendable informal proof of claim). Here, as set forth below, BWC did precisely that.

25.   Furthermore, claims for administrative expenses "need not take any particular form under the Code or Rules… in some situations a proof of claim filed pursuant to Bankruptcy Rule 3001 can satisfy the Code § 503 procedure for requesting payment of an administrative expense." In re FAS Mart Convenience Stores, Inc., 320 B.R. 587, 593-94 (Bankr. E.D. Va. 2004) (holding that an administrative claim was not procedurally barred where the creditor's claim was contained in a generic proof of claim form instead of in the specific administrative claim form adopted for the case). An administrative claim should not be denied when it is not set forth in a proof of claim form because to do so "elevates form over substance." Id. at 594; see also In re Benedict, 65 B.R. 95, 96 (Bankr. N.D.N.Y. 1986) (Permitting a formal claim filed after the bar date to serve as an amendment to a timely filed informal claim, and stating that "[i]t is not essential that a document be styled a 'proof of claim', or that it be filed in the form of a claim, if it fulfills the purposes for which the filing of proof is required." quoting In re Sullivan, 36 B.R. 771, 773 (Bankr. E.D.N.Y. 1984)); In re The Charter Company, 876 F.2d at 863-64.

26.   Here, there is no question that the Claim satisfies the requirements for a deemed filed informal administrative expense claim. The Claim is a writing, filed with the Court, which

- 9 -

specifies the existence and nature of BWC's claim, and makes it clear that BWC holds the Debtors liable for the workers' compensation assessments. Accordingly, given that the Claim has been on file for over five (5) years, and sets forth BWC's right to payment, the Reorganized Debtors can hardly argue that the Claim took them by surprise or would disrupt implementation of the Plan. Accordingly, the Court should deem the Claim a timely filed administrative expense claim subject to liquidation by the parties or the Court.[6]

B.    The Court Should Permit BWC To Amend The Claim

27.    If the Court chooses not to deem the Claim a timely filed administrative expense claim, BWC respectfully submits the Court authorize BWC to amend the Claim as one for an administrative expense. First, BWC timely filed its Claim. BWC classified its claim as a pre-petition priority tax claim based on its interpretation of the law, which interpretation is supported by case law that the Court ultimately declined to adopt. Second, the misclassification of BWC's Claim occurred through no fault of BWC. Presumably, if BWC failed to file the Claim prior to the Bar Date, the Debtors would have taken the opposite view at the Hearing, and, consistent with their initial position, argued that BWC had nothing more than a time-barred general unsecured claim. Alternatively, the Debtors may have taken the approach used against the Michigan Self-Insurers' Security Fund ("MSSF"), and similarly argued that BWC's claims are time barred. See e.g. Reorganized Debtors' Objection to Motion of Michigan Self-Insurers' Security Fund to Permit Late Filed Claim Pursuant to Fed. R. Bankr. P. 9006(b) [Docket No. 19179]. However, unlike MSSF, BWC did act to protect its rights in a timely manner.

---

[6] While BWC is cognizant that the Plan provides for the use of a specific form for administrative expense claims, BWC respectfully submits that under the circumstances the Court deem the Claim a timely filed administrative expense claim. It would be inequitable to penalize BWC for timely acting to protect its rights in reliance on case law from Ohio when the actual priority of the Claim was not determined until December 16, 2010.

Accordingly, BWC should be permitted to amend the Claim to comport with the Court's ruling during the Hearing.

28.  Generally, "amendments to timely filed proofs of claim should be freely permitted unless material equitable considerations, such as the claimant's bad faith or dilatory behavior, suggest otherwise." In re Hertz, 38 B.R. 215, 218 (Bankr. S.D.N.Y. 1984) (permitting post bar date amendment); see also In re McLean Industries, Inc., 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990); In re Sage-Dey, Inc., 170 B.R. 46, 51 (Bankr. N.D.N.Y. 1994) (a determination regarding the equities of permitting an amendment should "be made in the context of the policy favoring liberal amendment").  Amendments are warranted when "the purpose is to cure a defect in the claim as originally filed, … or to plead a new theory of recovery on the facts set forth in the original claim." In re Andover Togs, Inc., 231 B.R. 521, 549 (Bankr. S.D.N.Y. 1999) (citations omitted) (permitting post bar date amendment when original claim gave notice that creditor intended to hold debtor accountable for certain charges).  An amendment should be permitted unless the party opposing the amendment would suffer undue prejudice. In re Hertz, 38 B.R. at 218.

29.  Courts have developed a two prong test to determine whether to permit a creditor to amend a claim.  In re McLean Industries, Inc., 121 B.R. at 708.  First, courts examine the claim to confirm that the proposed amendment is not merely a new claim submitted under the guise of an amendment. Id.  Second, courts conduct an equitable analysis to ensure that "granting the amendment … [is] fair and impose[s] no undue hardship on a party." Id.  The party opposing the amendment must demonstrate "overriding equities militating strongly against the amendment." Id. at 709. When weighing the equities, courts consider

> (1) undue prejudice to the opposing party; (2) bad faith or dilatory behavior on the part of the claimant; (3) whether other creditors would receive a windfall were the

- 11 -

>amendment not allowed; (4) whether other claimants might be harmed or prejudiced; [and] (5) the justification for the inability to file the amended claim at the time the original claim was filed.

Id. at 708 (citations omitted). Diminution in the amount available for other creditors is insufficient prejudice to deny a request for an amendment. See In re Sage-Dey, Inc., 170 B.R. at 52. Ultimately, courts look to principles of equity to make sure that "'fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done.'" In re Sage-Dey, Inc., 170 B.R. at 51, quoting Internat. Horizons, Inc., 751 F.2d 1213, 1216 (11th Cir. 1985).

30.    In addition to the factors cited above, courts apply Federal Rule of Civil Procedure 15 ("Federal Rules") considerations to determine whether a claim may be amended. In re McLean Industries, Inc., 121 B.R. at 709-10; see also In re Sage-Dey, Inc., 170 B.R. at 49. Pursuant to Federal Rule 15, an amendment is appropriate when "the original pleading[] … give[s] notice of the transaction or occurrence giving rise to the plaintiff's cause of action in the amended pleading and the amendment must not substantially prejudice the opposing party." In re McLean Industries, Inc., 121 B.R. at 710.

31.    In this case, application of the factors used to determine whether an amendment is appropriate weighs decidedly in favor of permitting BWC to amend its Claim. As an initial matter, the proposed amendment does not "add, delete, or otherwise change any fact set forth in the" Claim. In re McLean Industries, Inc., 121 B.R. at 709. Rather, the amended claim stems from the same assessments for the same injuries that form the factual basis for the Claim. Thus, the Reorganized Debtors are clearly on notice of the facts and the proposed amendment is not a new claim.

32.     Furthermore, although the Reorganized Debtors bear the burden of demonstrating that there are no strong overriding equities which weigh in favor of disallowing the proposed amendment, BWC submits that the equities favor permitting the amendment.  First, there will be no undue prejudice to the Reorganized Debtors because they have been on notice of the circumstances supporting the Claim for more than five years.  Indeed, had BWC initially taken the position that the Claim was for administrative expenses and missed the original Bar Date, the Debtors (and then Reorganized Debtors) likely would have argued that the Claim was time barred.  Instead, for more than three years, the Debtors (and then Reorganized Debtors) lulled BWC into relying on the presumption that its Claim was deemed allowed in accordance with Section 502 of the Bankruptcy Code.

33.     Second, BWC acted in a timely fashion and in good faith in asserting its Claim.  BWC filed the Claim well in advance of the Bar Date to protect its rights as it understood them, in accordance with case law which this Court ultimately declined to adopt.  Third, the Claim's expungement would confer a windfall on the estates and their creditors because there is no question that BWC provided valuable services to the Debtors post-petition.  If the Claim remains expunged, creditors will receive additional distributions for which they are not entitled on the back of BWC.  To emphasize this point, the Debtors were only able to continue doing business in Ohio post-petition because they continued to have workers' compensation protection provided by BWC.  Thus, the very creditors who now stand to receive a windfall do so only because the Debtors were able to operate post-petition in Ohio.

34.     Accordingly, the Court should permit BWC to amend its timely filed Claim to reflect the Court's decision that the Claim is for administrative expenses.

C.  Alternatively, The Court Should Permit BWC To File
A Late Administrative Expense Claim

35. In the event that the Court chooses not to deem the Claim timely filed or permit its amendment, it should still allow the Claim under the "excusable neglect" doctrine.

36. Section 503(b) of the Bankruptcy Code provides in relevant part that "[a]fter notice and a hearing, there shall be allowed administrative expenses… the actual, necessary costs and expenses of preserving the estate…". 11 U.S.C. § 503(b). "The priority furthers the goal of rehabilitation by encouraging third parties to supply goods and services on credit to the estate." In re Patient Education Media, Inc., 221 B.R. 97, 101 (Bankr. S.D.N.Y. 1998).

37. A claim is entitled to administrative priority when (1) the claim arises "from a transaction with or on account of consideration furnished to the debtor-in-possession, and (2) the transaction or consideration directly benefitted the debtor-in-possession." Id. Courts generally find consideration "where (1) the debtor-in-possession induces the creditor to perform postpetition, or (2) the creditor performs under an executory contract prior to rejection." Id.

38. Here, the Court ruled during the Hearing that BWC has an administrative expense claim. There is no question that the Debtors required workers' compensation insurance as a prerequisite to conducting business in Ohio and that the Debtors, as debtors-in-possession, chose to continue with their self-insured status after the Petition Date. See Human Capital Obligations Order. Nor is there any disagreement that the estates benefitted from the continued provision of workers' compensation insurance because (a) the Debtors were able to continue operating as a going concern, (b) employees would not have to make claims against the estates, and (c) the Debtors did not have to seek out other, more costly, insurance options. Therefore, as conceded by the Debtors in the Human Capital Obligations Motion and incorporated into the Human

Capital Obligations Order and subsequently reiterated at the Hearing, BWC has an administrative expense claim.

39.    Section 503(a) of the Bankruptcy Code provides in relevant part that "an entity … may tardily file [a request for payment of an administrative expense claim] if permitted by the court for cause." 11 U.S.C. § 503(a). "In determining whether cause exists, cases construing the 'for cause shown' standard of Bankruptcy Rules 3002(c)(1), 3003(c)(3) and 9006(b)(1) are relevant." 4 <u>Collier on Bankruptcy</u>, ¶ 503.02[2] (Alan N. Resnick & Henry J. Sommer eds. 16th ed. 2009). Cause under Rule 3002(c)(1) may exist where (1) outside factors prevent the filing of a claim, (2) there has been purposeful wrongdoing by the debtors, or (3) the creditor was negligently misinformed of circumstances such that the creditor was left without notice of a filing deadline. <u>In re Jones</u>, 238 B.R. 338, 342 (Bankr. W.D. Mich 1999), <u>aff'd</u> 2000 WL 1175717 (W.D. Mich., June 28, 2000). With regard to cause under Rule 3003(c)(3), "the Supreme Court has adopted the excusable neglect standard without considering whether Rule 3003(c)(3) provides for a test different from Rule 9006(b)." 9 <u>Collier on Bankruptcy</u>, ¶ 3003.03[4][b] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. revised).

40.    Rule 9006(b) provides in relevant part that when an act must be done by a date certain, "the court for cause shown may at any time in its discretion…(2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect."

41.    As stated by the Supreme Court in <u>Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership</u>, 507 U.S. 380, 388-89 (1993), the standard for excusable neglect is flexible and permits courts "to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." A mistake is

"'(a)n error, misconception, or misunderstanding; an erroneous belief.'" Krupski v. Costa Crociere S.p.A., 130 S.Ct. 2485, 2494 (2010) (Discussing mistake in the context of Federal Rule 15), quoting Black's Law Dictionary 1092 (9th Ed. 2009).  In determining whether to accept a late filing, courts are granted "broad equitable powers to balance the interests of the affected parties, guided by the overriding goal of ensuring the success of the reorganization." Pioneer Investment Services Co., 507 U.S. at 389.

42.     To determine whether neglect is "excusable," courts must examine "all relevant circumstances surrounding the party's omission." Id. at 395.  Relevant circumstances include:

> the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

Id.

43.     While all of the factors must be considered, "they all need not point in the same direction." In re Keene Corp., 188 B.R. 903, 909 (Bankr. S.D.N.Y. 1995).

44.     The Second Circuit has applied the Pioneer standard somewhat stringently.  See Midland Congregation Venture Limited Partnership v. Enron Corp. (In re Enron Corp.), 419 F.3d 115, 122 (2d Cir. 2005).  However, even under a strict application, an analysis of the Pioneer factors weighs heavily in favor of permitting BWC to file a late administrative claim.

A.     Prejudice

45.     To determine whether there is prejudice to a debtor, courts weigh several considerations, including:

> the size of the late claim in relation to the estate, whether a disclosure statement or plan has been filed or confirmed with knowledge of the existence of the claim, the disruptive effect that the late filing would have on a plan close to completion or upon the economic model upon which the plan was formulated and negotiated.

In re Keene Corp., 188 B.R. at 910. "[P]rejudice to the debtor is a more flexible and complex concept than a simple dollar-for-dollar depletion of assets otherwise available for timely filed claims." Manousoff v. Macy's Northeast, Inc. (In re R.H. Macy & Co., Inc.), 166 B.R. 799, 802 (S.D.N.Y. 1994). Moreover, there is no prejudice to a debtor that should have known that, but for a mistake in timing, a creditor would have properly filed a claim. C.f. Krupski, 130 S.Ct. at 2493-94.

46. In Krupski, the Supreme Court addressed the concept of "mistake" in the context of Federal Rule 15. The Supreme Court found "mistake" where the plaintiff was aware of the existence of the correct party, but failed to appreciate that party's role in the events forming the basis of the complaint. The Supreme Court stated that "repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity." Id. at 2494. Similarly, BWC's "mistake" here was in filing its Claim in accordance with existing case law as one for priority taxes and only learning after the fact that the Claim was in fact one for administrative expenses at the Hearing. To prohibit BWC from now filing an administrative expense claim would result in precisely the windfall to the estates that the Supreme Court cautioned against in Krupski.

47. Additionally, Courts look at whether permitting a late filed claim will result in a "floodgate" of similar claims. See In re Enron, 419 F.3d at 132. Here, BWC's claim is not large in relation to the estates, which involve several billion dollars. Moreover, BWC timely filed its Claim, which included an assertion of a right to payment for future assessments so that there is no question that the Debtors knew about BWC's claim when they prepared their disclosure statements and when the Plan was confirmed and subsequently modified. Thus, BWC's Claim

will have little or no effect on the Plan due in part to its insignificant nature in relation to other claims against the estates, and the Debtors' knowledge of BWC's Claim. Finally, allowance of BWC's late filed administrative expense claim will not create a floodgate. BWC is uniquely situated because (a) it timely filed the Claim, and simply misclassified the nature based on a good faith understanding of the law, and (b) there are a finite number of creditors who could use the allowance of BWC's claim as precedent. Thus, the lack of prejudice to the Debtors weighs in favor of permitting BWC to file a late claim.

B.      Length of Delay

48.     BWC discovered that it had an administrative expense claim for the first time on December 16, 2010, at the Hearing. Thus, BWC has only very recently learned of the true nature of its Claim, and has responded to that discovery with this Motion. Thus, the length of the delay for filing an administrative expense claim is extremely short. Indeed, BWC filed its Claim, which it believed was properly classified as pre-petition, prior to the expiration of the Administrative Expense Bar Date.

C.      The Reason For Delay

49.     As set forth above, BWC timely filed its Claim. However, BWC (and for years, the Debtors) erroneously thought that the Claim was properly classified as a pre-petition claim, not an administrative expense claim. BWC's classification is consistent with case law from Ohio, and, until recently, not inconsistent with the law of this Court. Thus, BWC did not classify its claim as administrative due to its analysis of the law as it existed prior to the passing of the Administrative Expense Bar Date and not through any dilatory conduct or carelessness.

D.  Good Faith

50.  Here, BWC unambiguously acted in good faith. It filed its Claim based upon what it believed were its rights under Ohio law. At most, BWC made an honest mistake in classifying its Claim, which mistake was corrected by the Court during the Hearing. Thus, this is hardly a case where BWC sat on its rights or otherwise acted improperly. C.f. Krupski, 130 S.Ct. at 2493-94.

## CONCLUSION

WHEREFORE, for the reasons set forth above, BWC respectfully requests that the Court grant the Motion and enter an order: (a) deeming the Claim to be an allowed timely filed administrative expense claim; (b) in the alternative, authorizing BWC to file an amended claim; or (c) in the alternative, permitting BWC to file a late administrative expense claim; and such other and further relief as the Court may deem just and proper.

Dated:  New York, New York  
       January 24, 2011

Respectfully submitted,

BAKER & HOSTETLER LLP

By: _/s/ Marc Skapof_  
Marc Skapof  
45 Rockefeller Plaza  
New York, NY 10111  
Telephone: (212) 589-4200  
Facsimile: (212) 589-4201

*Attorneys for Ohio Bureau of Workers' Compensation*