Hearing Date:  To Be Determined

BUTZEL LONG, a professional corporation
380 Madison Avenue
22nd Floor
New York, New York 10017
Eric B. Fisher
Cynthia J. Haffey
Barry N. Seidel
Telephone: (212) 818-1110
Facsimile: (212) 818-0494

*Attorneys for Reorganized Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DPH HOLDINGS CORP., *et al*., <br><br>                Reorganized Debtors. | Chapter 11 <br><br> Case No. 05-44481 (RDD) <br> (Jointly Administered) |

## REORGANIZED DEBTORS' OMNIBUS REPLY IN FURTHER SUPPORT OF MOTIONS FOR LEAVE TO FILE AMENDED COMPLAINTS

BUTZEL LONG, a professional corporation
Eric B. Fisher
Barry N. Seidel
Cynthia J. Haffey
380 Madison Avenue
22nd Floor
New York, New York 10017
Telephone: (212) 818-1110
Facsimile: (212) 818-0494
fishere@butzel.com

*Attorneys for Reorganized Debtors*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................iii

PRELIMINARY STATEMENT .................................................................................... 1

ARGUMENT .................................................................................................................. 8

    I.     The PACs Comply with Rule 8 ........................................................................ 8

        A.     Plaintiff Has Sufficiently Alleged That The Transfers
              Were Of "An Interest Of The Debtor In Property"................................... 11

        B.     Plaintiff Has Sufficiently Alleged That The
              Transfers Were "To Or For The Benefit Of A Creditor".......................... 13

        C.     Plaintiff Has Sufficiently Alleged That The Transfers Were
              Made "On Account Of An Antecedent Debt Owed By The Debtor"........ 15

             i.     Plaintiff Has Plausibly Alleged An "Antecedent Debt" ................ 166

             ii.    The Reorganized Debtors Have Plausibly
                  Alleged That Each Antecedent Debt Was "Owed"
                  By The Debtor Before Such Transfer Was Made" .......................... 24

        D.     Plaintiff Has Sufficiently Alleged That The Transfers
              Were "Made While The Debtor Was Insolvent" ...................................... 27

             i.     Plaintiff Is Entitled To Rely On The Statutory
                  Presumption Of Insolvency For Purposes Of The PACs.................. 27

             ii.    Amendment of the Complaints is Not Futile
                  Because Plaintiff Will Ultimately Establish
                  Its Insolvency During the Preference Period ................................... 29

        E.     Plaintiff Has Sufficiently Alleged That The
              Transfers Were Made "On Or Within 90
              Days Before The Date Of The Filing Of The Petition" ............................ 36

        F.    Plaintiff Has Sufficiently Alleged That The Transfers Enabled
              The Defendants To Receive More Than They Would Have
               Received "If The Case Were A Case Under Chapter 7, The Transfer
               Had Not Been Made, And The Defendant[s] Received Payment
               Of Such Debt To The Extent Provided By The Bankruptcy Code" .......... 36

II.      The Proposed Amended Complaints Comply With The Dismissal Order........................ 37

CONCLUSION........................................................................................................................... 39

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Pages**

*Adelphia Recovery Trust v. Bank of America, N.A.*,
  624 F.Supp.2d 292 (S.D.N.Y. 2009)........................................................................ 3

*Alfa Mut. Fire Ins. Co. v Memory (In re Martin)*,
  184 B.R. 985 (M.D. Ala. 1995), *aff'd at* 101 F.3d 708 (11th Cir. 1996)................................. 13

*Angell v. BER Care Inc. (In re Caremerica, Inc.)*,
  409 B.R. 737 (Bankr. E.D.N.C. 2009) .................................................................. passim

*Angell v. Burrell (In re Caremerica, Inc.)*,
  409 B.R. 759 (Bankr. E.D.N.C. 2009)...................................................................... 14

*Angell v. Day (In re Caremerica, Inc.)*,
  415 B.R. 200 (Bankr. E.D.N.C. 2009) ...................................................................... 14

*Angell v. First Eastern, LLC (In re Caremerica, Inc.)*,
  2009 Bankr. LEXIS 2331 (Bankr. E.D.N.C. July 28, 2009) ........................................... 14, 28

*Angell v. Haveri (In re Caremerica, Inc.)*,
  409 B.R. 346 (Bankr. E.D.N.C. 2009)............................................................. 14, 27, 28

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ................................................................................ passim

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007)................................................................................. 9

*Baer v. Jones (In re Montgomery)*,
  224 F.3d 1193 (10th Cir. 2000) .......................................................................... 12

*Begier v. IRS*,
  496 U.S. 53 (1990)..................................................................................... 11, 12

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................. passim

*Gold v. Winget (In re NM Holdings Co., LLC)*,
  407 B.R. 232 (Bankr. E.D. Mich. 2009) .......................................................... 10, 16, 17

*In re C.R. Stone Concrete Contractors, Inc.*,
  434 B.R. 208 (Bankr. E.D. Mass. 2010) ..................................................... 5, 10, 11, 17

*In re Enron Corp.*,
    357 B.R. 32, 47 (Bankr. S.D.N.Y. 2006)..........................................................15, 16, 20, 21, 25

*In re Imperial Home Décor Group, Inc.*,
    2005 Bankr. LEXIS 264 (Bankr. D. Del. Feb. 24, 2005) ........................................ 22

*In re Interior Wood Prods. Co.*,
    986 F.2d 228 (8th Cir. 1993) ................................................................................ 13

*In re Innovative Comm'n Corp.*,
    2010 Bankr. LEXIS 2297 (Bankr. D.V.I. June 18, 2010) ........................................ 28

*In re LandAmerica Fin. Group, Inc.*,
    412 B.R. 800 (Bankr. E.D. Va. 2009)....................................................................... 12

*In re Meadows*,
    396 B.R. 485 (6th Cir. 2008) .................................................................................. 12

*In re Randall's Island Family Golf Centers, Inc.*,
    290 B.R. 55 (Bankr. S.D.N.Y. 2003).......................................................................... 17

*In re Roblin Industries, Inc.*,
    78 F.3d 30 (2d Cir. 1996) .........................................................................26, 28, 30

*In re Rock Rubber & Supply of CT, Inc.*,
    345 B.R. 37 (Bankr. D. Conn. 2006) ........................................................................ 12

*In re Rocor Int'l, Inc.*,
    352 B.R. 319 (W.D. Okla. 2006) ............................................................................... 12

*In re Teligent, Inc.*,
    380 B.R. 324 (Bankr. S.D.N.Y. 2008) ....................................................................... 37

*In re The 1031 Tax Group, LLC*,
    439 B.R. 47 (S.D.N.Y. 2010).................................................................................. 12

*In re Valley Media, Inc.*,
    288 B.R. 189 (Bankr. D. Del. 2003) .............................................................. passim

*Mangiafico v. Blumenthal*,
    471 F.3d 391 (2d Cir. 2006).................................................................................... 23

*Nunley v. Ethel Hedgeman Lyle Acad.*,
    2010 U.S. Dist. LEXIS 114191 (E.D. Mo. October 27, 2010) .................................. 4

*Official Comm. of Unsecured Creditors of Hydrogen, L.L.C. (In re Hydrogen, L.L.C.)*,
    431 B.R. 337 (Bankr. S.D.N.Y. 2010).............................................................. 4, 7, 9

iv

*Pension Ben. Guar. Corp. v. Ouimet Corp.*,
  470 F. Supp. 945 (D. Mass. 1979) *affirmed at* 630 F.2d 4 (1st Cir. 1980),
  *cert. denied*, 450 U.S. 914 (1981) ............................................................................ 31

*Smith v. Spohn (In re IFS Fin. Corp.)*,
  2010 Bankr. LEXIS 3951, (Bankr. S.D. Tex. November 3, 2010) ............................ 4

*Tabacalera Cubana, S.A. v. Faber, Coe & Gregg, Inc.*,
  379 F. Supp. 772 (S.D.N.Y. 1974) ............................................................................ 3

*TOUSA Homes, Inc. v. Palm Beach Newspapers, Inc.*,
  2010 Bankr. LEXIS 4607 (Bankr. S.D. Fla. December 27, 2010) ................................... passim

*Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*,
  429 B.R. 73 (Bankr. S.D.N.Y. 2010) .............................................................. 22, 26

**Statutes**

11 U.S.C. § 541 .......................................................................................................... 11, 12

11 U.S.C. § 547 ........................................................................................................... passim

26 U.S.C. § 1563(a) .......................................................................................................... 33

26 U.S.C. § 412(b)(2) ....................................................................................................... 35

26 U.S.C. § 414(b) ........................................................................................................... 31

29 U.S.C. § 1301 ............................................................................................................. 31

29 U.S.C. § 1342 ............................................................................................................. 32, 34

29 U.S.C. § 1362 ............................................................................................................. 32, 34

29 U.S.C. § 1082(b)(2) ..................................................................................................... 35

**Other Authorities**

2-547 Collier Bankruptcy Manual, 3d Edition Revised P 547.03[4] (2010) ......................... 16, 21

4 Collier on Bankruptcy ¶ 541.09 (15th ed.2009) ....................................................... 12

5 Wright & Miller § 1202 .................................................................................................. 9

Black's Law Dictionary, Seventh Ed. (1999) ........................................................... 21

Treasury Regulation 1.414(c)-2(b) (26 C.F.R. 1.414(c)-2(b)........................................................32

Pension Benefit Guaranty Corporation Opinion 97-1 (May 5, 1997)..........................................33

**Rules**

Fed. R. Bankr. P. 7008 ........................................................................................................... 10

Fed. R. Civ. P. 12(b)(6)...................................................................................................... 22, 26

Fed. R. Civ. P. 8(a)(2)..................................................................................................... 4, 9, 10

Fed. R. Civ. P. 15.................................................................................................................4, 8

Hearing Date:  To Be Determined

BUTZEL LONG, a professional corporation
380 Madison Avenue
22nd Floor
New York, New York 10017
Eric B. Fisher
Barry N. Seidel
Cynthia J. Haffey
Telephone: (212) 818-1110
Facsimile: (212) 818-0494

*Attorneys for Reorganized Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

DPH HOLDINGS CORP., *et al*.,

                    Reorganized Debtors.

Chapter 11

Case No. 05-44481 (RDD)
(Jointly Administered)

### REORGANIZED DEBTORS' OMNIBUS REPLY IN FURTHER SUPPORT OF MOTIONS FOR LEAVE TO FILE AMENDED COMPLAINTS

DPH Holdings Corporation and certain of its affiliated reorganized debtors (the "Reorganized Debtors"), as successors to Delphi Corporation and certain of its affiliates and subsidiaries (the "Debtors"), by their counsel, Butzel Long, a professional corporation, respectfully submit this reply memorandum of law ("Reply") in further support of their Motions for Leave to File Amended Complaints (the "Motions to Amend"):

### PRELIMINARY STATEMENT

1.      On July 22, 2010, the Court heard oral argument on various Defendants' motions to dismiss in their respective Adversary Proceedings (the "Dismissal Motions").[1]  At that hearing (the "Dismissal Hearing"), the Court issued a bench ruling dismissing certain of the Adversary

---

[1]      Capitalized terms not defined herein shall have the meanings ascribed to them in the Motions to Amend.

Proceedings with prejudice.  The Court further ruled that the Reorganized Debtors' complaints in all other Adversary Proceedings subject to the Dismissal Motions were dismissed *without* prejudice, and that the Reorganized Debtors could file Motions to Amend in those Adversary Proceedings that they wished to preserve.

2.      On September 7, 2010, the Reorganized Debtors timely filed the Motions to Amend in the remaining Adversary Proceedings.[2]  On the same day, the Court entered an Order consistent with its bench rulings from the Dismissal Hearing (the "Dismissal Order") (Docket No. 20574).

3.      During a telephone conference on October 6, 2010, the Court advised that the initial hearing on the Motions to Amend (the "Hearing") would be limited to those issues of law that are common among the Defendants that file responses to the Motions to Amend (the "Respondents").  The Court further advised that it would hold future hearings, if needed, on a case-by-case basis to address factual issues raised in response to the Motions to Amend.

4.      The Respondents subsequently filed their responses to the Motions to Amend on or about November 24, 2010.

5.      On December 17, 2010, the Reorganized Debtors and Respondents held another telephone conference with the Court to identify the specific issues to be addressed at the Hearing. During that conference, the Court decided to limit the Hearing to Respondents' arguments

---

[2]      At the outset of Butzel Long's involvement in the Adversary Proceedings, there were 177 preference cases (including cases being prosecuted by Togut, Segal and Segal).  Butzel Long filed Motions to Amend with respect to 121 cases.  Oppositions to the Motions to Amend have been filed, to date, in only 78 of those cases.  Since September 7, 2010, Butzel Long has resolved 18 of those cases, leaving only 60 Motions to Amend for resolution by the Court.  Butzel Long is currently engaged in active settlement discussions in numerous cases.  In advance of the hearing on the Motions to Amend, Butzel Long will advise the Court and all parties as to the number of additional cases that have been resolved, thereby further reducing the total number of cases requiring adjudication by this Court.

concerning whether the Reorganized Debtors' proposed amended complaints ("PACs") were

compliant with the Dismissal Order and facially sufficient under Rule 8 of the Federal Rules of

Civil Procedure (the "Rules").[3]  *See* **Exhibit A**, Transcript of Dec. 17, 2010 Telephone

Conference, p. 46 ("[R]ather than getting the parties into case-by-case discovery on notice

related to the 4M issues and/or discovery generally, I think we ought to deal with the complaint

first, just the face of the complaint first.").[4]  Accordingly, this Reply addresses the sufficiency of

the PACs under Rule 8 and the Dismissal Order, and demonstrates that the Respondents'

pleading-based futility arguments lack merit.[5]

---

[3]      In addition, the Court will hear oral argument at the Hearing on the motions filed by
certain of the Defendants for relief from the fourth order extending the time to serve the original
complaints in these Adversary Proceedings.  Those motions are substantially identical and
require the Reorganized Debtors to respond by February 3, 2011.

[4]      The Court also directed the Reorganized Debtors to promptly investigate all assumed-
contract defenses raised by the Defendants and to dismiss such Adversary Proceedings if
appropriate.  *See* **Exhibit A** at pp. 13-14. Accordingly, the Reorganized Debtors have
investigated and are continuing to investigate such defenses and, as they have already done, will
continue to dismiss those actions in which they conclude that the subject Transfers, in fact, were
made pursuant to assumed contracts.  To the extent that any Defendants continue to believe that
there is not a *bona fide* dispute about their asserted assumption defenses, Butzel Long urges such
Defendants to raise this issue with counsel in advance of the Hearing, in order to further
determine whether there is a possibility of consensually resolving such dispute.

[5]      Further consistent with the December 17, 2010 telephone conference, this Reply does not
address the arguments raised by certain Respondents that the PACs should not relate back for
limitations purposes under Rule 15 insofar as the PACs name new parties or identify Transfers
that the Reorganized Debtors did not identify in their original complaints.  The relation-back
analysis is factual and thus not suited for resolution at the Hearing.  Courts in this district have
recognized the factual nature of the relation-back issue as it pertains to additional claims.  *See
e.g.*, *Tabacalera Cubana, S.A. v. Faber, Coe & Gregg, Inc.*, 379 F. Supp. 772, 775-77 (S.D.N.Y.
1974) (stating that the amended claim related back to the date of the original pleading in part
because (1) defendant received ample and timely "notice of the conduct, transactions and
occurrences out of which the amended claim arose;" (2) defendant had "not shown that any
substantial prejudice would result from the delay in asserting the claim alleged in the
amendment;" and (3) the increase in the monetary amount sought to be recovered in the
amendment "had no bearing on the [relation-back] issue) (emphasis added); *Adelphia Recovery
Trust v. Bank of America, N.A.*, 624 F.Supp.2d 292, 333-34 (S.D.N.Y. 2009) (acknowledging
that, in preference actions, courts have found a factual nexus among transactions arising from the

6.       In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129

S. Ct. 1937 (2009), the Supreme Court established a heightened standard for whether a complaint

is sufficiently pled under Rule 8.  Although this standard "does not require detailed factual

allegations," a complaint must contain "sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face."  *Iqbal*, 129 S. Ct. at 1949.

7.       Furthermore, "[a] claim has facial plausibility when the plaintiff pleads factual

content that allows the Court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Id.*  Moreover, "[t]he plausibility standard is not akin to a probability

requirement, but it asks for more than sheer possibility that a defendant has acted unlawfully."

*Id.*  Therefore, a complaint that only "offers labels and conclusions or a formulaic recitation of

the elements of a cause of action will not do," as Rule 8 requires "more than an unadorned, the-

defendant-unlawfully-harmed-me accusation."  *See id.*  "Nor does a complaint suffice if it

tenders naked assertions devoid of further factual enhancement."  *Id.*

8.       Although *Twombly* and *Iqbal* are recent decisions, certain courts, including in this

district, have already had occasion to apply and further define the revised pleading standard in

preference actions.  These courts have concluded that, to satisfy this standard, preference

complaints must allege sufficient facts to put defendants on fair notice of the claims at issue.

*See, e.g.*, *Official Comm. of Unsecured Creditors of Hydrogen, L.L.C. (In re Hydrogen, L.L.C.)*,

431 B.R. 337, 345-46 (Bankr. S.D.N.Y. 2010) ("[F]or purposes of pleading sufficiency, the

---

same pattern of conduct and have allowed relation back).  Moreover, relation back with respect
to new parties named in amended complaints is also an issue of fact.  *See  e.g.*, *Smith v. Spohn
(In re IFS Fin. Corp.)*, 2010 Bankr. LEXIS 3951, at *13 (Bankr. S.D. Tex. November 3, 2010)
(holding that it remained a genuine issue of material fact whether amended complaint related
back under Rule 15 with respect to a newly named defendant); *Nunley v. Ethel Hedgeman Lyle
Acad.*, 2010 U.S. Dist. LEXIS 114191, at *5 (E.D. Mo. October 27, 2010) (finding it necessary
to consider material outside the scope of the pleadings to determine whether complaint that was
amended to add defendant should relate back to the date of filing of the original complaint).

Amended Complaint must allege enough facts with respect to each of the foregoing elements of

section 547(b) in order to put [d]efendants on notice for the preference claims."); *In re C.R.*

*Stone Concrete Contractors, Inc.*, 434 B.R. 208, 221 (Bankr. E.D. Mass. 2010) ("So long as the

defendant is provided fair notice of what the plaintiff's claim is and the grounds upon which it

rests, the complaint should not be dismissed for failure to state a claim.  Further elaboration, if

required, may be obtained through the discovery process.") (internal citations and quotation

marks omitted); *TOUSA Homes, Inc. v. Palm Beach Newspapers, Inc.*, 2010 Bankr. LEXIS

4607, at *9 (Bankr. S.D. Fla. December 27, 2010) (stating that "so long as the complaint makes

clear who transferred what to whom and when, a preference defendant will have enough

information to mount whatever defenses may be available" and "to require more is to mandate

pedantry and to return federal courts to the days of gotcha pleadings before the adoption of the

Federal Rules of Civil Procedure").

9.      Here, DAS LLC ("Plaintiff") has sufficiently alleged in the PACs each element of

its preference claims under Bankruptcy Code § 547(b):

a.      Plaintiff has sufficiently alleged that each payment was "a transfer of an

interest of the debtor in property" because Plaintiff has alleged that all payments that it seeks to

avoid and recover in the PACs (the "Transfers") were payments generated from its own account,

with the exception of payments for goods and services provided to Delphi Medical Systems

Colorado Corporation.

b.      Plaintiff has sufficiently alleged that each Transfer was "to or for the

benefit of a creditor" because Plaintiff has identified the Respondents that received the Transfers

in exchange for their previously-provided goods or services.

c.      For each Transfer, the PACs cite specific document numbers and/or assert

other facts, such as that all payments were made in return for goods or services previously

provided by the Respondents, to plausibly allege that each Transfer was "for or on account of an

antecedent debt owed by the debtor before such transfer was made."

d.      Given that Plaintiff made each Transfer no earlier than 90 days prior to the

relevant chapter 11 petition date, Plaintiff has sufficiently alleged that each Transfer was "made

while the debtor was insolvent" simply by invoking the presumption of insolvency under

Bankruptcy Code § 547(f).

e.      Having identified a specific date for each preference payment, and

provided other factual detail about the Transfers, Plaintiff has sufficiently alleged that each

Transfer occurred "on or within 90 days before the date of the filing of the petition."

f.      The PACs state that each of the Reorganized Debtors' unsecured creditors,

*e.g.*, the Respondents, will receive less than 100% payout in distributions under the Modified

Plan.  Plaintiff has further alleged that Respondents, should they retain the Transfers, will have

received more money from Plaintiff than if Plaintiff never made the Transfers and the Debtors'

cases had proceeded under chapter 7 of the Bankruptcy Code.  Therefore, Plaintiff has plausibly

alleged that each Transfer "enables such creditor to receive more than such creditor would

receive if – (A) the case were a case under chapter 7 of this title; (B) the transfer had not been

made; and (C) such creditor received payment of such debt to the extent  provided by the

provisions of this title."

10.     As further set forth below, the allegations in the PACs satisfy the "plausibility"

pleading standard under *Twombly* and *Iqbal*.  For example, while Exhibit 1 to the original

complaints only set forth the amount, date and type of each transfer, Exhibit 1 to the PACs now

6

identifies the Transfer Recipient, Contracting Entity, Obligor, Transferring Entity, Transfer Date, and Transfer Amount for each Transfer. The amended exhibits also identify the alpha-numeric designations of the documents that Plaintiff consulted in further verifying its allegations, such as that the Transfers were on account of an antecedent debt that Plaintiff owed to the Respondents. As fully explained below, the factual allegations in the PACs and their accompanying exhibits are sufficient to meet the requisite pleading standard.

11.     The Respondents give short shrift to *Hydrogen*, which is a decision in this district, and instead place undue emphasis on a string of preference cases from the Eastern District of North Carolina in the Caremerica bankruptcy (collectively, *Caremerica*), in which the court imposed a higher pleading standard than set forth in *Twombly* and *Iqbal*. The PACs, however, are more detailed than the complaints in *Caremerica*. In any event, courts have criticized *Caremerica* for misreading *Twombly* and *Iqbal*, and imposing an excessively stringent pleading standard. *See, e.g., TOUSA, supra*, at *2 ("The pleading requirements of Caremerica require more than the standard promulgated in *Twombly* and *Iqbal* and the liberal pleading policy underlying the civil rules."). Regardless, the PACs comply with *Caremerica*.[6]

12.     In line with the courts that have taken *Twombly* and *Iqbal* to require a less onerous pleading standard than applied in *Caremerica*, however, the Reorganized Debtors submit that an appropriate pleading standard would advance the primary purpose of *Twombly* and *Iqbal* – to identify and dismiss frivolous claims before discovery – while letting the plausibility inquiry be "a context-specific task that requires the reviewing court to draw on its

---

[6]     Because the Reorganized Debtors dispute the applicability of the *Caremerica* pleading standard in this district for the reasons set forth more particularly below in this Reply, any assertions herein that the PACs meet the *Caremerica* standard are simply intended to point out that the PACs suffice, even under the most stringent interpretation of *Twombly* and *Iqbal*. Accordingly, any reliance by the Reorganized Debtors on *Caremerica* shall not be construed as a concession that *Caremerica* is a correct interpretation of *Twombly* and *Iqbal*.

judicial experience and common sense." *See Iqbal*, 129 S. Ct. at 1950.   This is especially true

where, as here, the complaints at issue give the defendants sufficient notice of the nature and

substance of the claims against them.   Accordingly, when properly examined, and as further set

forth below, the PACs meet the *Twombly* and *Iqbal* standard under Rule 8.

13.    Similarly, the PACs comply with the Dismissal Order, which required the

Reorganized Debtors to set forth the transferor, transferee and antecedent debt for each Transfer,

and to identify which of the Reorganized Debtors is the Plaintiff.   Consistent with the Dismissal

Order, each PAC names DAS LLC as the sole Plaintiff.   Further, as noted above, Plaintiff has

alleged specifically that it was the transferor of each Transfer.   Plaintiff has also specifically and

sufficiently identified the alleged transferee and antecedent debt for each Transfer. Therefore, in

addition to satisfying Rule 8, the PACs meet the requirements set forth in the Dismissal Order.

## ARGUMENT

### THE PROPOSED AMENDED COMPLAINTS
### COMPLY WITH RULE 8 AND THE DISMISSAL ORDER

14.    Respondents erroneously contend that the PACs are facially insufficient, and

therefore, it would be futile under Rule 15 to grant the Motions to Amend.   However, the PACs

easily meet the recently heightened Rule 8 pleading standard, and they further comply with the

Dismissal Order.   Amendment of the original complaints is therefore not futile and the Motions

to Amend should be granted.

## I.    The PACs Comply with Rule 8

15.    To state a preference claim, a plaintiff must allege (A) a transfer of an interest of

the debtor in property (B) to or for the benefit of a creditor (C) on account of antecedent debt (D)

made while the debtor was insolvent (E) on or within 90 days before filing of the debtor's

bankruptcy petition (F) that enabled the defendant to receive more than it would have received if

the debtor brought its case under chapter 7, the transfer(s) had not been made, and the defendant

received payment of such debt to the extent provided by the Bankruptcy Code.  *See* 11 U.S.C. §

547(b).

16.     Moreover, Rule 8 requires that a preference complaint, like all complaints, be a

"short plain statement of the claim" showing that the plaintiff is "entitled to relief."  Fed. R. Civ.

P. 8(a)(2).  Recently, *Twombly* and *Iqbal* raised the Rule 8 pleading standard to require that

complaints contain sufficient factual allegations to make the asserted claims facially plausible.

*See Twombly*, 550 U.S. at 570.  Further, a plausible claim is one with enough factual content "to

raise a reasonable expectation that discovery will reveal evidence of [the defendant's liability]."

*Id.* at 556.

17.     Last year, in *Hydrogen*, Chief Bankruptcy Judge Gonzalez addressed the recently

enhanced pleading standard:

> In order to survive a 12(b)(6) motion, the complaint must contain "enough factual
> matter (taken as true)" to "raise [the] right to relief above the speculative level,"
> *Twombly*, 550 U.S. at 555-56; *accord Campo*, 635 F.Supp.2d 323,328 (citing
> *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Iqbal*,
> 129 S.Ct. at 1949).  As such, although "detailed factual allegations" are not
> necessary, "a formulaic recitation of the elements of a cause of action will not
> do," *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).  Rule 8(a)
> "contemplates the statement of circumstances, occurrences, and events in support
> of the claim presented and does not authorize a pleader's bare averment that he
> wants relief and is entitled to it."  *Twombly*, 550 U.S. at 556, n.3 (quoting 5
> Wright & Miller § 1202, at 94, 95) (internal quotation marks omitted).  Given the
> foregoing, a complaint that merely contains "naked assertion[s] devoid of 'further
> factual enhancement'" cannot survive a motion to dismiss.  *See Iqbal*, 129 S.Ct. at
> 1950 (quoting *Twombly*, 550 U.S. at 557).

*Hydrogen*, *supra*, 431 B.R. 337, 345-46 (Bankr. S.D.N.Y. 2010).  The court in *Hydrogen* further

explained that "'[j]udicial experience and common sense' will be required in determining the

plausibility of a claim."  *Id.* at 346 (quoting *Iqbal*, 129 S. Ct. at 1950 ("Determining whether a

Complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.")).[7]

18.    As noted, the Respondents substantially rely on the pleading standard applied in

*Caremerica*.  However, the *Caremerica* pleading standard is more rigorous than *Twombly* and

*Iqbal* require.[8]  Other courts, moreover, have expressly rejected the *Caremerica* pleading

standard as going beyond what is required by *Twombly* and *Iqbal*.  As one court explained:

> The pleading requirements of *Caremerica* require more than the standard
> promulgated in *Twombly* and *Iqbal* and the liberal pleading policy underlying the
> civil rules. I agree with *C.R. Stone* to the extent it rejects the *Caremerica* & *Valley
> Media* view:
>
>> While plaintiffs should be encouraged to provide specific
>> information in support of their claims whenever possible, to
>> require them to do so in their initial pleading in all cases,
>> particularly with the specificity demanded by *Valley Media*, is in
>> this court's view inappropriate and unnecessarily harsh. The fact
>> that Bankruptcy Rule 7008, which contains special pleading
>> requirements in certain adversary cases before bankruptcy judges,
>> fails to provide any such additional requirements for preference
>> actions indicates it was intended that the adequacy of pleadings in
>> such actions be judged under the notice pleading standard of Civil
>> Rule 8(a)(2), which requires only a short and plain statement of the

---

[7]    The court dismissed the preference claims in *Hydrogen* because it was "impossible to identify any specific avoidable transfer," given that the complaints did not contain "a single relevant detail such as date, amount or type of transfer."  *See Hydrogen*, 431 B.R. at 355.  The same cannot be said here; the PACs expressly identify each Transfer and otherwise provide sufficient factual content to state plausible claims to relief.

[8]    The court in *Caremerica* erroneously took *Twombly* and *Iqbal* as validation of the heightened pleading standard earlier set forth in 2003 by a bankruptcy court from the District of Delaware in *In re Valley Media, Inc.*, 288 B.R. 189 (Bankr. D. Del. 2003).  *See, e.g.*, *Angell v. BER Care Inc. (In re Caremerica, Inc.)*, 409 B.R. 737, 753 n.2 (Bankr. E.D.N.C. 2009) ("[T]he Supreme Court in *Twombly* and *Iqbal* breathe new life into the pleading requirements implemented in *Valley Media* for § 547 preference claims.").  Courts, however, have criticized the *Valley Media* pleading standards, even after and in light of *Twombly*.  *See, e.g., Gold v. Winget (In re NM Holdings Co., LLC),* 407 B.R. 232, 256-57 (Bankr. E.D. Mich. 2009) (the "heightened pleading requirements imposed by the *Valley Media* case [are] inconsistent with the liberal notice pleading principles underlying the civil rules" and *Twombly*) (internal quotation marks and citations omitted).

> claim showing that the pleader is entitled to relief. So long as the
> defendant is provided fair notice of what the plaintiff's claim is and
> the grounds upon which it rests, the complaint should not be
> dismissed for failure to state a claim. Further elaboration, if
> required, may be obtained through the discovery process.

> This view is consistent with my own experience in asserting and defending
> against preference claims during my thirty years as a bankruptcy lawyer: so long
> as the complaint makes clear who transferred what to whom and when, a
> preference defendant will have enough information to mount whatever defenses
> may be available. To require more is to mandate pedantry and to return federal
> courts to the days of gotcha pleadings before the adoption of the Federal Rules of
> Civil Procedure.

*TOUSA Homes,* 2010 Bankr. at *8-9 (quoting *C.R. Stone*, 434 B.R. at 220-21).

19.    That being said, and as more fully set forth below, the PACs are well-pled under

*Twombly* and *Iqbal*, and the proposed amendment of the original complaints is not futile.

### A.    Plaintiff Has Sufficiently Alleged That The Transfers Were Of "An Interest Of The Debtor In Property"

20.    Any suggestion that Plaintiff failed to sufficiently allege that the Transfers

constitute "an interest of the debtor in property" is false.  When taken as true, as the law requires,

Plaintiff's factual allegations plausibly establish that each Transfer was a transfer of its interest in

property.

21.    Although the Bankruptcy Code does not define "an interest of the debtor in

property," the Supreme Court, in *Begier v. IRS*, 496 U.S. 53, 58-59 (1990), stated:

> Because the purpose of the avoidance provision is to preserve the property
> includable within the bankruptcy estate – the property available for distribution to
> creditors – "property of the debtor" subject to the preferential transfer provision is
> best understood as that property that would have been part of the estate had it not
> been transferred before the commencement of bankruptcy proceedings.

22.    The Supreme Court then noted that "for guidance . . . we must turn to § 541,

which delineates the scope of 'property of the estate' and serves as the post petition analog to §

547(b)'s 'property of the debtor'" and observed that Section 541(a)(1) provides that the property

11

of the estate includes "all legal or equitable interest of the debtor in property as of

commencement of the (bankruptcy) case." *Begier*, 496 U.S. at 58 (citing and quoting 11 U.S.C. §

541(a)(1)).    The scope of § 541 "is broad and should be generously construed . . . an interest

may be property of the estate even if it is novel or contingent." *See Baer v. Jones* (*In re*

*Montgomery*), 224 F.3d 1193, 1194 (10th Cir. 2000) (internal quotations omitted).

23.    Significantly, it is well-established that, under this broad scope, transferred funds

from the debtor's bank account constitute an "interest of the debtor in property." *See, e.g., In re*

*The 1031 Tax Group, LLC*, 439 B.R. 47, 70 (S.D.N.Y. 2010) (trustee carried its burden of

proving transfers of an "interest of the debtor in property" where the "transferred funds were all

contained in unrestricted bank accounts belonging to the 1031 Debtors"); *In re Meadows*, 396

B.R. 485, 490 (6th Cir. 2008) (finding that funds in a debtor's checking account became property

of the estate); *In re Rocor Int'l, Inc*., 352 B.R. 319, 328 (W.D. Okla. 2006) ("[T]he presumption

is that 'deposits in a bank to the credit of a bankruptcy debtor belong to the entity in whose name

the account is also established.'"); *In re LandAmerica Fin. Group, Inc*., 412 B.R. 800, 809

(Bankr. E.D. Va. 2009)  ("In line with the broad definition of 'property of the estate,' money

held in a bank account in the name of a debtor is presumed to be property of the bankruptcy

estate"); *In re Rock Rubber & Supply of CT, Inc*., 345 B.R. 37, 40 (Bankr. D. Conn. 2006)

(holding that debtor's deposit accounts were property of the estate).

24.    Plaintiff's allegations easily satisfy this threshold element.  Plaintiff alleges that it

made certain payments to Defendant in satisfaction of debts owed within 90 days of the filing

date. *See, e.g.*, **Exhibit 17** to the Motion to Amend in Case No. 05-44481, PAC against Critech

Research, Inc. (Adv. Pro. No. 07-02188) at ¶¶ 18, 20 and 22 and Exhibit 1.  The dates, amounts,

and types of transfers (check, wire transfer, etc.) are further detailed in Exhibit 1 to the PACs.

Significantly, Plaintiff utilized its accounts payable system to make such Transfers.  *Id.* at ¶ 18; *see also* **Exhibit B**, Unrue Declaration, ¶ 5.  Given that Plaintiff's accounts payable system drew funds from Plaintiff's account, Plaintiff's allegations, taken as true as the law requires, plausibly establish that the amounts transferred by Plaintiff were under Plaintiff's control and were without question an "interest of the debtor in property."  This conclusion is further supported by the attached declaration of Dean Unrue, which affirms that Plaintiff was the entity that made payments through its accounts payable system to the Respondents, *id.* at ¶ 5, and Plaintiff also used its accounts payable system to pay both its own obligations and obligations initially incurred by other Reorganized Debtors, *id.* at ¶¶ 4-5 and 10.[9]

**B.      Plaintiff Has Sufficiently Alleged That The Transfers Were "To Or For The Benefit Of A Creditor"**

25.      The Bankruptcy Code provides that a preferential transfer must be "to or for the benefit of a creditor."  11 U.S.C. § 547(b)(1).  There is no merit to Respondents' arguments that Plaintiff has insufficiently alleged this element of its preference claims.

26.      The *Caremerica* requirement for properly pleading this element of a preference claim is twofold: first, the plaintiff must sufficiently allege that the defendant was the transferee

---

[9]      Certain Respondents argue that the PACs fail in that Plaintiff supposedly was not the "transferor" of all payments, and certain payments were supposedly made in the name of other Reorganized Debtors.  While the Reorganized Debtors do not concede these facts for purposes of this Reply, it is important to note that even if the Respondents' assertions were true, the PACs would still be "plausible" in that the affected Transfers still would have originated with DAS, and even transfers made indirectly to a creditor can be avoidable in the name of a debtor.  *See, e.g.*, *In re Interior Wood Prods. Co.*, 986 F.2d 228 (8th Cir. 1993) (payment by purchaser of debtor's assets to debtor's creditor as part of purchase price was voidable preference regardless of whether creditor was paid directly by debtor or indirectly by purchaser because transfer was of debtor's property; payment was made from debtor's property and thus implicitly diminished estate).  *Alfa Mut. Fire Ins. Co. v Memory (In re Martin)*, 184 B.R. 985 (M.D. Ala. 1995), *aff'd at* 101 F.3d 708 (11th Cir. 1996) (court pointed to sufficient evidence existed to support finding that check drawn on account of company owned by debtor constituted transfer of interest in debtor's property).

of the alleged preferential transfer; second, the plaintiff must sufficiently allege that it made the

transfer on account of an antecedent debt, which is the next element of the preference claim. *See*

*Angell v. Burrell (In re Caremerica, Inc.)*, 409 B.R. 759, 763-64 (Bankr. E.D.N.C. 2009); *Angell*

*v. First Eastern, LLC (In re Caremerica, Inc.)*, 2009 Bankr. LEXIS 2331, at *10 (Bankr.

E.D.N.C. July 28, 2009). The *Caremerica* cases further provide that a preference action plaintiff

sufficiently alleges the transferee by identifying the recipient, date and amount of the alleged

transfer. *See, e.g.*, *Burrell*, 409 B.R. at 763-64; *First Eastern*, at *10 (both finding that "the

information provided in Exhibit A to the Amended Complaint, including an identification of the

Defendant as transferee and the dates and amounts of each transfer, is sufficient to plausibly

assert that the funds were transferred to the Defendant"); *Angell v. BER Care Inc. (In re*

*Caremerica, Inc.)*, 409 B.R. 737, 751 (Bankr. E.D.N.C. 2009) (likewise finding that "the

information in the Table of Transfers, including the names of transferees and the dates and

amounts of each transfer, is sufficient to plausibly assert that funds were transferred to the

[defendants]"); *see also Angell v. Haveri (In re Caremerica, Inc.)*, 409 B.R. 346, 351 (Bankr.

E.D.N.C. 2009) (finding that Plaintiff failed to plead transfers to or for the benefit of a creditor

because Plaintiff (1) merely recited this element of the claim while providing no facts in support,

(2) failed to allege facts to support its assertion that defendant was a transferee, and (3) did not

provide information as to the number, amounts and dates of the transfers); *Angell v. Day (In re*

*Caremerica, Inc.)*, 415 B.R. 200, 204-205 (Bankr. E.D.N.C. 2009) (finding that "the names of

transferees and the total amounts of transfers allegedly received by each transferee are facts

which support the allegations that funds were transferred to the defendants").

      27.      Here, as in *Burrell*, *First Eastern* and *BER Care*, the Reorganized Debtors have

attached an Exhibit 1 to each PAC. That exhibit clearly identifies the Transfer Recipient(s),

Transfer Amount and Transfer Date of each transfer.  Further, each PAC contains additional,

substantially identical allegations about the respective transferee(s).  *See, e.g.*, **Exhibit 52** to

Motion to Amend in Case No. 05-44481, PAC against Jamestown Container Corp. (Adv. Pro.

No. 07-02322) (alleging that "Plaintiff's accounts payable system was used to generate payment

. . . upon the payment terms associated with Defendant," ¶ 17; "Plaintiff made certain payments

to Defendant . . . for services previously rendered by Defendant under the Agreements," ¶ 18;

and "Plaintiff made, or caused to be made, the Transfers listed on Exhibit 1 to, or for the benefit

of, Defendant," ¶ 20).  Indeed, the PACs suffice even under *Caremerica's* unduly heightened

pleading standard.  Thus, under any sound interpretation of *Twombly* and *Iqbal*, the Plaintiff has

sufficiently alleged the transferees in these Adversary Proceedings.

28.    Having specifically identified alleged transferees, Plaintiff has sufficiently alleged

that the Plaintiff made each payment to or for the benefit of a creditor because, as explained in

the next section, the PACs further suffice in alleging that each Transfer was on account of

antecedent debt.

### C.    Plaintiff Has Sufficiently Alleged That The Transfers Were Made "On Account Of An Antecedent Debt Owed By The Debtor"

29.    Section 547(b)(2) of the Bankruptcy Code requires that a preferential transfer be

"for or on account of an antecedent debt owed by the debtor before such transfer was made."  11

U.S.C. § 547(b)(2).  As such, "Section 547(b) is grammatically structured such that 'antecedent'

modifies 'debt', and the compound concept 'antecedent debt' is in turn modified by the phrase

'owed by the debtor before the transfer was made.'"  *In re Enron Corp.*, 357 B.R. 32, 47 (Bankr.

S.D.N.Y. 2006).  In this case, the Reorganized Debtors have plainly alleged ample facts in the

PACs relating to each distinct component of Section 547(b)(2).

15

### i.     Plaintiff Has Plausibly Alleged An "Antecedent Debt"

30.      As the Bankruptcy Court for the Southern District of New York held in *In re Enron Corp.*, a "debt" is "a liability for payment, whether or not such liability is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 357 B.R. 32, 47 (Bankr. S.D.N.Y. 2006) (internal quotation marks omitted). The term "antecedent," in turn, means "going before; preceding." *Id.* (internal citation omitted). Accordingly, although the compound term "'antecedent debt' is not defined by the Code, a debt is 'antecedent' if it is incurred before the transfer. . . ." 2-547 Collier Bankruptcy Manual, 3d Edition Revised P 547.03[4] (2010). As for when a debt is "incurred," "the case law reveals an obvious trend interpreting 'antecedent debt' broadly and rejecting the proposition that debt is only incurred as it becomes due. Courts considering payments made under purchase and sales contracts have consistently held that the debt was incurred at the inception of the agreement." *In re Enron* Corp., 357 B.R. at 44.

31.      In light of these principles, together with the reality that the "plausibility" determination under *Iqbal* turns on "a context-specific [inquiry] that requires the reviewing court to draw on its judicial experience and common sense," there is no single formula for properly pleading antecedent debt. *See Iqbal*, 129 S. Ct. at 1950. Even under the strictest of post-*Iqbal* pleading standards, all that is required is that the plaintiff allege facts relating to the "nature and amount of the antecedent debt" precipitating each transfer. *See, e.g., BER Care,*, 409 B.R. at 751 ("In order to satisfy the pleading requirements under *Iqbal,* the court finds that the trustee is obligated to allege facts regarding the nature and amount of the antecedent debt which, if true, would render plausible the assertion that a transfer was made for or on account of such antecedent debt."). This "nature and amount" requirement originated in *Valley Media, supra*.

16

32.     As already discussed above, while certain courts have espoused the *Valley Media*

approach in light of *Iqbal*, other courts have held that the *Valley Media* standard presents an

improperly high burden for preference claimants.  *Compare, e.g., BER Care,* 409 B.R. at 751

(discussing *Valley Media*'s requirement that "the nature and amount of the antecedent debt" be

pled and concluding that, subsequent to *Iqbal*, "the trustee must assert the nature and amount of

the antecedent debt in order to allege a plausible claim for relief."), *with Gold v. Winget (In re*

*NM Holdings Co., LLC),* 407 B.R. 232, 256-57 (Bankr. E.D. Mich. 2009) (the "heightened

pleading requirements imposed by the *Valley Media* case [are] inconsistent with the liberal

notice pleading principles underlying the civil rules" and *Twombly*) (internal quotation marks

and citations omitted), and *TOUSA Homes,* , 2010 Bankr. LEXIS at *8-*9 (quoting *C.R. Stone*,

434 B.R. at 220-21, for the proposition that the *Valley Media* standard is "inappropriate and

unnecessarily harsh"; holding also that "so long as the complaint makes clear who transferred

what to whom and when, a preference defendant will have enough information to mount

whatever defenses may be available.").

33.     In particular, the bankruptcy court in this district has expressly rejected the *Valley*

*Media* standard, at least before *Iqbal*, and the Reorganized Debtors have found no cases in which

the Court has since reversed its position.  *In re Randall's Island Family Golf Centers, Inc.*, 290

B.R. 55, 65 (Bankr. S.D.N.Y. 2003) ("[W]hile the information identified by *Valley Media* might

ultimately be necessary to adjudicate the preference claims, it does not follow that it must be

pleaded on pain of dismissal.").

34.     Regardless of whether the "unnecessarily harsh" *Valley Media* standard applies to

the PACs, however, Plaintiff has plainly surpassed the requirement to plead "antecedent debt"

with respect to each Transfer.  Specifically, each of the PACs includes the following allegations

17

regarding the existence, "nature," and "amount" of the "antecedent debt" owed to each

defendant:[10]

    a.    "Plaintiff entered into certain purchase agreements (the 'Agreements') with Defendant for the supply of various parts to the Reorganized Debtors."  PAC ¶ 13.

    b.    "Pursuant to the terms of the Agreements, Defendant was required to ship certain goods for the benefit of the Reorganized Debtors."  *Id.* at ¶ 15.

    c.    "During the ninety (90) days preceding the Initial Filing Date, Plaintiff made certain payments to Defendant in satisfaction of amounts due for goods previously shipped by Defendant under the Agreements (the 'Transfers').  Such Transfers are identified on Exhibit 1 hereto."  *Id.* at ¶ 18.

    d.    "Plaintiff made, or caused to be made, each Transfer listed on Exhibit 1 for, or on account of, an antecedent debt owed to Defendant as of the date on which each Transfer was made.  The documents evidencing the antecedent debt include the purchase orders and/or invoices/bills of lading identified on Exhibit 1, which purchase orders and/or invoices/bills of lading include evidence of the amount of the antecedent debt and the approximate dates the subject goods contemplated by the Agreements were ordered pursuant to the Agreements and/or were provided

---

[10]    All of the PACs contain substantially similar allegations to those cited in this Section of this Reply; however, the paragraph numbers and exact allegations in the PACs differ based on the underlying facts at issue.  For ease of reference, therefore, as the Reorganized Debtors did in their Motions to Amend, the Reorganized Debtors have based the allegations cited in this Section of their Reply on **Exhibit 24** of their Motion to Amend in Case No. 05-44481, which is the PAC against D&S Machine Products, Inc. (Adv. Pro. No. 07-02217).

by Defendant." PAC ¶ 22. *See also* Exhibit 1 to the PAC, showing "Antecedent t: Purchase Order/Invoice Number" and "Purchase Order/Invoice" designation. [11]

35.    Taking each of the factual allegations as true, as the Court must under *Twombly* and *Iqbal*, Plaintiff has adequately set forth the existence of the "debt" underlying each Transfer. *See Iqbal*, 129 S. Ct. at 1959 ("Under *Twombly*, the relevant question is whether, assuming the factual allegations are true, the plaintiff has stated a ground for relief that is plausible.") Specifically, Plaintiff has alleged the existence of the Agreements for the provision of goods or services, which necessarily create "a liability for payment, whether or not such liability is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,

---

[11]    The Reorganized Debtors have also moved to file PACs against certain Defendants that agreed to furnish services rather than goods to the Reorganized Debtors. The PACs in such cases account for this distinction. For instance, **Exhibit 11** to the Motion to Amend in Case No. 05-44481, which is the PAC against Access One Technology, Inc. (Adv. Pro. No. 07-02142), alleges as follows:

   a.    "Plaintiff entered into certain service agreements (the 'Agreements') with Defendants for the provision of certain services to the Reorganized Debtors." PAC ¶ 13.

   b.    "Pursuant to the terms of the Agreements, Defendants were required to render certain services for the benefit of the Reorganized Debtors." PAC ¶ 15.

   c.    "During the ninety (90) days preceding the Initial Filing Date, Plaintiff made certain payments to Defendants in satisfaction of amounts due for services previously rendered by Defendants under the Agreements (the 'Transfers')." PAC ¶ 18.

   d.    "Plaintiff made, or caused to be made, each Transfer listed on Exhibit 1 for, or on account of, an antecedent debt owed to Defendants as of the date on which each Transfer was made. The documents evidencing the antecedent debt include the purchase orders and/or invoices/bills of lading identified on Exhibit 1, which purchase orders and/or invoices/bills of lading include evidence of the amount of the antecedent debt and the approximate dates the subject services contemplated by the Agreements were ordered pursuant to the Agreements and/or were provided by Defendants." PAC ¶ 22.

19

undisputed, legal, equitable, secured, or unsecured." *In re Enron Corp.*, 357 B.R. at 47; PAC ¶¶ 13, 15, 18, and 22.

36.    Plaintiff has also alleged the "antecedence" of each relevant "debt" by alleging the existence of the Agreements at the time of each Transfer, as well as the defendant's previous shipment of goods (or provision of services) under those Agreements.[12]   PAC ¶¶ 13 and 18. These allegations alone are sufficient to plausibly establish an "antecedent debt" under applicable precedent in this district.[13]   *In re Enron* Corp., 357 B.R. at 44.  ("Courts considering payments made under purchase and sales contracts have consistently held that the debt was

---

[12]    Plaintiff's pleading of antecedent debt is further supported by the following allegations in the PACs:

> (a) "Plaintiff did not accept physical invoices from Defendant in connection with Defendant's shipment of goods under the Agreements."  PAC ¶ 16.

> (b) "Rather, Plaintiff used its accounts payable system to make payment to Defendant."  *Id.* at 17.

> (c) "During the ninety (90) days preceding the Initial Filing Date, Plaintiff made certain payments to Defendant in satisfaction of amounts due for goods previously shipped by Defendants under the Agreements (the 'Transfers')."  *Id.* at 18.

Collectively, these allegations make clear that each Transfer was initiated pursuant to the Reorganized Debtors' automated payment system.  Pursuant to that system, defendants generally were paid only after the Reorganized Debtors confirmed that payment was owed for performance that already occurred under the applicable agreements.  **Exhibit B**, Unrue Declaration, ¶¶ 10-11. Accordingly, based on the Reorganized Debtors' business practices, the mere act of payment was generally evidence of an antecedent debt owed to the payee.

[13]    This conclusion responds to arguments that the PACs have not linked purchase order and/or invoice/bill of lading numbers to the specific Transfers.  The instances in which these arguments are made are limited, however, and typically affect only a small portion of the Transfers in each relevant PAC.  Nonetheless, certain Defendants argue with respect to those specific Transfers that the absence of purchase order and/or invoice/bill of lading numbers is fatal to the corresponding PACs.  These defendants are wrong.  As evidenced by the authority discussed above, a preference complaint is not *per se* required to identify a specific purchase order or invoice/bill of lading number for each preferential transfer.  Rather, descriptive allegations like those in the PACs can alone be adequate.

incurred at the inception of the agreement."); *see also* 2-547 Collier Bankruptcy Manual, 3d
Edition Revised P 547.03[4] (2010) ("[A] debt is 'antecedent' if it is incurred before the
transfer. . . .").  The allegations are also sufficient to establish an "antecedent debt" based on this
Court's comments during the July Hearing: "I don't know if you have to say the antecedent debt
is down to . . . the very invoice, but you have to give some context to show that there is a debt
owing."  *See* **Exhibit C**, Transcript of Dismissal Hearing, p. 208.

      37.     Indeed, Plaintiff has *exceeded* the "antecedent debt" pleading standard by linking
nearly every Transfer to a specific invoice, bill of lading, or purchase order number associated
with the defendant.  *See In re Enron* Corp., *supra*; *see also* 2-547 Collier Bankruptcy Manual, 3d
Edition Revised P 547.03[4] (2010), *supra*.  An invoice is "[a]n itemized list of goods or services
*furnished* by a seller to a buyer."  Black's Law Dictionary, Seventh Ed. (1999) (emphasis added),
and a bill of lading is a "document of title acknowledging the *receipt* of goods by a carrier or by
the shipper's agent."  *Id.* (emphasis added).  As such, the Court can reasonably infer from the
invoices and bills of lading referenced in the PACs that each Defendant has completed
performance to Plaintiff.  Plaintiff's references to specific purchase orders are also equally
adequate to plead "antecedent debt" under Section 547, as case law expressly provides that a
debtor's "debt" is "incurred at the inception of the agreement." *In re Enron Corp.*, 357 B.R. at
47 at 44.  Whether payment was *due* at the time of each transfer is therefore immaterial to the
"antecedence" pleading analysis. *Id.* at 49 ("A 'debt' was a created at the time the Agreement
was signed, and as that debt preceded the [] Transfer, the [] Transfer was made 'for or on account
of an antecedent debt.' . . . That the [] Transfer was made one day before the obligation matured
and became due is not relevant.").  Accordingly, by linking nearly every Transfer to a purchase

order and/or invoice and/or bill of lading, Plaintiff has shown that it is "plausible" (if not certain)

that an "antecedent debt" was "owed" at the time of such Transfer.  *See* 11 U.S.C. 547(b).[14]

38.    Next, although not expressly required by case law in this district, the Reorganized

Debtors have alleged the "nature" and "amount" of their "debt" consistent with the highest of

post-*Iqbal* pleading standards.  *See BER Care,* 409 B.R. at 751 (requiring allegations of "facts

regarding the nature and amount of the antecedent debt which, if true, would render plausible the

assertion that a transfer was made for or on account of such antecedent debt.").  PAC ¶ 18.

Specifically, the PACs have adequately alleged the "nature" and "amount" of each antecedent

debt because they assert, respectively, that (a) the Transfers were for "amounts due for goods

previously shipped by Defendant under the Agreements," and (b) "Plaintiff made, or caused to

be made, each Transfer listed on Exhibit 1 for, or on account of, an antecedent debt owed to

Defendant as of the date on which each Transfer was made."

39.    While certain Respondents dispute the adequacy of Plaintiff's "nature" allegations

on the grounds that the PACs supposedly fail to detail the specific goods or services

contemplated under each Agreement, such arguments are erroneous.  Indeed, even under the

heightened pleading standard set forth in *Valley Media*, "[i]nformation regarding the 'nature' of

each antecedent debt need only detail whether the alleged transfer falls within the group of

avoidable transfers delineated in section 547."  *In re Imperial Home Décor Group, Inc.*, 2005

---

[14]    This conclusion holds true despite certain Respondents' assertions that the purchase order
and/or invoice and/or bill of lading numbers cited in the PACs do not correspond to the record
numbers maintained by the defendant.  "For pleading purposes, a defendant's rebuttal of a
plaintiff's contentions with its own does not entitle the defendant to dismissal of an action
pursuant to Fed. R. Civ. P. 12(b)(6). The so-called 'plausibility standard' is not akin to a
probability requirement. The relative strength of the parties' explanations is not a question to be
decided at the pleading stage unless the plaintiff's version is so remote as to be implausible."
*Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*, 429 B.R. 73, 91 (Bankr. S.D.N.Y.
2010).

Bankr. LEXIS 264, *3-*4 (Bankr. D. Del. Feb. 24, 2005) (holding that plaintiff adequately pled

"nature" of antecedent debt "by following the language of section 547(b)(4)(A).").  Interpreting

the "'nature' requirement as requiring a description of the goods or services that Defendant

provided . . . is neither proper nor an appropriate interpretation of the heightened pleading

standard."  *Id.*  at *4.[15]

40.    In any event, these Respondents' assertions regarding the lack of specificity of

Plaintiff's "nature and amount" allegations are factually false.  For each Transfer described in the

PACs, Plaintiff has alleged that "[t]he documents evidencing the antecedent debt include the

purchase orders and/or invoices/bills of lading identified on Exhibit 1, which purchase orders

and/or invoices/bills of lading include evidence of the amount of the antecedent debt and the

approximate dates the subject goods contemplated by the Agreements were ordered pursuant to

the Agreements and/or were provided by Defendant."  PAC ¶ 22.  These purchase orders,

invoices and bills of lading constitute a part of each PAC as a matter of law.[16]  *See Mangiafico v.*

---

[15]    While the court found the trustee's complaint in *Caremerica* to be deficient in that it
failed to allege the "nature and amount" of an antecedent debt when it simply asserted that the
defendant "performed construction and maintenance services for the debtors prior to petition,"
the complaint in that case differs materially from the PACs.  *See Caremerica*, 2009 Bankr.
LEXIS 2328, *8-*9 (Bankr. E.D.N.C. 2009).  In *Caremerica*, it was "unclear from the complaint
whether an antecedent debt arose from the[] [defendant's] services."  *Id.* In this case, the
Reorganized Debtors have specifically alleged that "Plaintiff made certain payments to
Defendant *in satisfaction of amounts due for goods previously shipped by Defendant under the
Agreements* . . . ."  PAC ¶ 18.  The Reorganized Debtors further cited specific "purchase orders
and/or invoices/bills of lading" in Exhibit 1 of their PACs to "evidence of the amount of the
antecedent debt and the approximate dates the subject goods contemplated by the Agreements
were ordered pursuant to the Agreements and/or were provided by Defendant."  PAC ¶ 22.  *See
also* Exhibit 1 to the PAC.  Accordingly, unlike the trustee in *Caremerica*, the Reorganized
Debtors have "allege[d] facts regarding the nature and amount of the antecedent debt which, if
true, would render plausible the assertion that a transfer was made for or on account of such
antecedent debt."  *See Caremerica*, 2009 Bankr. LEXIS 2328, *9.

[16]    Accordingly, Respondents err when they argue that the PACs are deficient for failure to
include copies of the purchase orders and/or invoices and/or bills of lading cited on Exhibit 1.
*See, e.g.,* Mtronics.com, Inc.'s Brief in Opposition to Reorganized Debtors' Motion for Leave to

*Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("[F]or purposes of deciding a motion to dismiss

pursuant to Rule 12(b)(6): [T]he complaint is deemed to include any written instrument attached

to it as an exhibit or any statements or documents incorporated in it by reference.  Even where a

document is not incorporated by reference, the court may nevertheless consider it where the

complaint relies heavily upon its terms and effect, which renders the document integral to the

complaint.").  As such, Plaintiff's "nature and amount" allegations are "plausible" because any

additional information sought by the defendants is present in the purchase orders, invoices and

bills of lading cited in the PACs.  *Iqbal*, 129 S. Ct. at 1940 ("A claim has facial plausibility when

the pleaded factual content allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged.").

> **ii.    The Reorganized Debtors Have Plausibly Alleged That Each
> Antecedent Debt Was "Owed By The Debtor Before Such
> <u>Transfer Was Made"</u>**

41.     The remaining requirement of Section 547(b) is that each antecedent debt

underlying a preferential transfer be "owed by the debtor before such transfer was made."  11

U.S.C. § 547(b).  In construing this requirement, the proper approach is "to focus not on the

concept 'owed' but on the phrase 'by the debtor.'  The phrase 'owed by the debtor before the

transfer was made' thus does not express a temporal concept like the phrase 'antecedent debt', or

legal concept like 'legally obligated to pay', but rather a concept of identity.  Only those transfers

---

File Amended Complaints, p. 15 ("The referenced documents are not attached to the Amended
Complaint and, therefore, whatever information may be contained therein is simply irrelevant.").
Respondents cite no applicable case law in support of this proposition, and this proposition is
directly undermined by the authority cited above.

on account of an antecedent debt owed by the debtor are subject to avoidance under section

547(b); transfers on account of an antecedent debt owed by a third-party are not." *In re Enron*

*Corp.*, 357 B.R. 32, 48 (Bankr. S.D.N.Y. 2006) (internal citations omitted).

42.    In this case, Plaintiff has alleged the identity of the debtor owing the debt:  the

debtor in each case was DAS.  Not only is DAS the sole plaintiff in each action, but each PAC

alleges one of two factual scenarios:  either (A) "*Plaintiff* entered into certain purchase

agreements (the 'Agreements') with Defendant for the supply of various parts to the Reorganized

Debtors," **Exhibit 24** to the Motion to Amend in Case No. 05-44481, PAC against D&S

Machine Products, Inc. (Adv. Pro. No. 07-02217), ¶ 13 (emphasis added), or (B) "Plaintiff [and

one or more of its affiliates] . . . entered into certain purchase agreements (the 'Agreements')

with Defendants for the supply of various parts to the Reorganized Debtors and Plaintiff assumed

or otherwise became obligated for the [non-Plaintiff entities'] payment obligations thereunder."

**Exhibit 81** to Motion to Amend in Case No. 05-44481, PAC against Vishay Americas, Inc.

(Adv. Pro. No. 07-02556), ¶ 14.  Each PAC then goes on to allege the specific nature of each

debt through the allegations recited in Section (I)(C)(i) above and appropriately concludes that ".

. . Defendant was a general unsecured creditor of *Plaintiff* . . . ."  **Exhibit 24** to Motion to Amend

in Case No. 05-44481,  PAC against D&S Machine Products, Inc. (Adv. Pro. No. 07-02217), ¶

24 (emphasis added)).

43.    Although such allegations are plainly "plausible" in that they unambiguously

identify the debtor in each case, various Respondents have criticized Plaintiff's identity-of-the-

debtor allegations by asserting that certain PACs inadequately describe how Plaintiff "assumed

or otherwise became obligated" for payment obligations originally incurred by its affiliates.

This argument is unavailing.  Under the Court's Order, the Court's minimum requirement was

that the Reorganized Debtors set forth for each Transfer only "the transferor, transferee, and any known subsequent transferee against whom relief is sought, the antecedent debt and which Reorganized Debtor is the plaintiff."  Order ¶ 4.  Case law is consistent with the Court's Order. *TOUSA Homes, Inc. v. Palm Beach Newspapers, Inc.*, 2010 Bankr. LEXIS 4607, at *8-9 (Bankr. S.D. Fla. December 27, 2010) (holding also that "so long as the complaint makes clear who transferred what to whom and when, a preference defendant will have enough information to mount whatever defenses may be available."); *see also In re Valley Media*, 288 B.R. 189 (Bankr. D. Del. 2003) (holding that even the heightened pleading requirement requires only allegations as to the "nature and amount" of each antecedent debt and an identification of each alleged preference transfer by date, name of debtor/ transferor, name of transferee and the amount of the transfer; holding also that Defendant's argument that "Plaintiff's complaint should also prove: (1) how Defendant is considered a creditor; (2) how an interest in the property was transferred to the Defendant; (3) that Plaintiff owed Defendant an antecedent debt; and (4) how the transfers enable Defendant to receive more than it would have in a Chapter 7 liquidation . . . r[a]n contrary to Civil Procedure Rule 8." (internal citations omitted)).  Plaintiff has therefore satisfied the pleading requirements for the "owed by the debtor before such transfer was made" element of Section 547(b).  11 U.S.C. § 547(b).

44.    In any event, the Respondents have challenged only the *accuracy* of Plaintiff's identity-of-the-debtor allegations, and such a challenge necessarily turns on factual disputes that are not proper for resolution at this juncture.  *See Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*, 429 B.R. 73, 91 (Bankr. S.D.N.Y. 2010) ("For pleading purposes, a defendant's rebuttal of a plaintiff's contentions with its own does not entitle the defendant to dismissal of an action pursuant to Fed. R. Civ. P. 12(b)(6). The so-called 'plausibility standard' is not akin to a

probability requirement. The relative strength of the parties' explanations is not a question to be

decided at the pleading stage unless the plaintiff's version is so remote as to be implausible."

(citing *Twombly*, 550 U.S. at 556)).

45.    In summary, for the reasons set forth above, the PACs "plausibly" allege that each

Transfer was made "for or on account of an antecedent debt owed by the debtor before such

transfer was made."  11 U.S.C. § 547(b)(2).

       **D.**       **Plaintiff Has Sufficiently Alleged That The Transfers Were "Made While
               The Debtor Was Insolvent"**

              **i.**       **Plaintiff Is Entitled To Rely On The Statutory Presumption Of
                       Insolvency For Purposes Of The PACs**

46.    Respondents' arguments that Plaintiff failed to sufficiently plead its insolvency as

of the date of the preferential transfers are also without merit.  It is well-established that "the

Debtor is presumed insolvent during the 90 days preceding the filing of the petition."  *See In re*

*Roblin Industries, Inc.*, 78 F.3d 30, 34 (2d Cir. 1996); *see also* 11 U.S.C. §547(f) ("For the

purposes of this Section, the Debtor is presumed to have been insolvent on and during the 90

days immediately preceding the date of the filing of the petition.").  It is also well-established

that, ultimately, "insolvency is a question of fact."  *Roblin Industries*, 78 F.3d at 35.

47.    Furthermore, even after *Twombly* and *Iqbal*, so long as a debtor alleges that the

preferential transfers at issue occurred within 90 days before its petition date, the debtor need not

allege any other evidence of its insolvency during the preference period.  *See Angell v. Haveri*

*(In re Caremerica, Inc.)*, 409 B.R. 346, 351 (Bankr. E.D.N.C. 2009) ("With respect to the

Defendant, the trustee asserts that the alleged preferential transfers were made within 90 days of

the petition date.  Under § 547(f), the trustee is entitled to a presumption of insolvency for such

transfers [so long as] . . . the complaint [] provide[s] facts showing that the transfers were made

27

during this 90-day preference period."); *see also In re Innovative Comm'n Corp.*, 2010 Bankr.

LEXIS 2297, *12-13 (Bankr. D.V.I. June 18, 2010) (holding that plaintiff seeking to avoid

various pre-petition transfers pursuant to complaint lacking detailed allegations of insolvency

could nonetheless rely on presumption of insolvency to avoid transfers made during 90-day

preference period); *Angell v. First Eastern, LLC (In re Caremerica, Inc.)*, 2009 Bankr. LEXIS

2331, at *13 (Bankr. E.D.N.C. July 28, 2009) (requiring detailed solvency allegations in

avoidance action only for transfers made *outside* the 90-day preference period).

48.      In this case, Plaintiff alleges that "on or within 90 days prior to the initial filing

date, Plaintiff made, or caused to be made, the transfers listed on Exhibit 1 to, or for the benefit

of, Defendant."  *See* **Exhibit 17** to Motion to Amend in Case No. 05-44481, PAC against Critech

Research, Inc. , *supra*, ¶ 21.  Exhibit 1 to each PAC, in turn, sets forth the date of each Transfer

and confirms that it occurred within 90 days of Plaintiff's October 8, 2005 filing date.  *Id.* at

Exhibit 1.  These factual allegations provide ample support – even under the highest of post-

*Iqbal* pleading standards – for Plaintiff's allegation of insolvency.  *See Haveri*, *supra*; *Innovative*

*Comm'n Corp.*, *supra*; *First Eastern*, *supra*.

49.      While certain Respondents dispute that the Reorganized Debtors are entitled to

rely on the statutory presumption of insolvency because certain facts supposedly evidence the

Reorganized Debtors' solvency during the preference period, such evidence is irrelevant for

purposes of the Hearing on the Motion.  Indeed, the Hearing is confined to the sufficiency of the

PACs, which, as a matter of law, adequately allege Plaintiff's insolvency merely by relying on

the statutory presumption.  *See* Paragraph ¶ 47, *supra*, and accompanying citations.

    ii.  **Amendment Of The Complaints Is Not Futile Because Plaintiff Will Ultimately Establish Its Insolvency During The <u>Preference Period</u>**

   50.  Although Plaintiff's actual insolvency is not properly before the Court for purposes of the Hearing, whenever the Court ultimately chooses to resolve the issue, Plaintiff will be able to present cogent evidence of its insolvency.  Further, those Respondents that have challenged Plaintiff's insolvency have failed to cite any dispositive evidence in support of their position.  Rather, they rely chiefly on the following facts: (a) during its underlying chapter 11 cases, Plaintiff submitted certain schedules showing approximately $2.6 billion in net equity as of its petition date; (b) during the first two years of its bankruptcy, Delphi Corporation represented that it expected a 100 cent plan; and (c) during the month preceding Plaintiff's petition date, Delphi Corporation's stock was trading at a value of around  $3-$5 per share, thereby supposedly suggesting a market capitalization of between $1,122,813,802 and $3,312,353,816.  *See* Blair Strip Steel Co.'s Brief in Opposition to Reorganized Debtors' Motion for Leave to File Amended Complaint, pp. 7-8.  For the reasons set forth below, none of these facts renders Plaintiff's allegations of insolvency implausible.

   51.  Case law makes clear that neither schedules submitted by a debtor during its bankruptcy proceedings nor pre-petition market data relating to a debtor's financial condition is necessarily dispositive of the insolvency issue.  *See, e.g.*, *In re Roblin Industries*, 78 F.3d 30 (2d Cir. 1996) (where defendant rebutted debtor's insolvency presumption based on debtor's schedules showing assets in excess of liabilities by $3.9 million, debtor was ultimately held to be insolvent in light of its negative net worth, prepetition losses, the decreased demand for its product, and increased foreign competition); *In re TOUSA, Inc.*, 422 B.R. 783, 827 (Bankr. S.D. Fla. 2009) (noting improper reliance on debtor's positive market capitalization (total value of

outstanding shares) when determining insolvency because, among other reasons, "the stock of even notoriously bankrupt companies trades at a positive price even after it is clear that the stock interests will be wiped out in the bankruptcy process. Economic rationality appears to play little role in such matters."). Accordingly, "[w]henever possible, a determination of insolvency should be based on seasonable appraisals or expert testimony." *In re Roblin Industries*, 78 F.3d at 38.

52.     Although certainly not required by *Twombly and Iqbal,* in order to demonstrate that amendment of the complaints will ultimately not be a futile exercise, the Reorganized Debtors' financial expert FTI Consulting, Inc. ("FTI"), has preliminarily concluded that Plaintiff was insolvent under the three applicable tests. Specifically, as set forth in the Declaration of Randall S. Eisenberg, Senior Managing Director of FTI, Plaintiff was insolvent under the Balance Sheet, Cash Flow and Adequate Capitalization tests. **Exhibit D**, FTI Declaration, ¶¶ 71-75.

53.     In particular, FTI's preliminary conclusions indicate the following:

        a.     Applying the Balance Sheet test to Plaintiff on a stand-alone basis, even after certain adjustments by FTI that increased DAS LLC's value, liabilities still exceeded assets by $2.3 billion, indicating that DAS LLC was insolvent. *Id.* at ¶ 40. On a substantively consolidated basis, FTI similarly reached a preliminary conclusion of insolvency. *Id.* at ¶ 41.

        b.     FTI also applied the Balance Sheet test to DAS LLC based upon its enterprise value. This approach also yielded a finding of negative value in excess of $2 billion, demonstrating DAS LLC's insolvency. *Id.* at ¶ 47.

        c.     On a stand-alone and consolidated basis, FTI also concluded that DAS LLC was insolvent under the Cash Flow test. Specifically, according to FTI's analysis, by the second quarter of 2006, DAS LLC would have run out of cash. Under realistic assumptions,

FTI projected the cash shortfall to be approximately $1.2 billion; however, even under

unrealistically optimistic conditions, DAS LLC would still experience a cash shortfall during that

period of approximately $600 million.  *Id.* at ¶ 58.

                    d.        Finally, under the Adequate Capitalization test, FTI found that

DAS LLC had insufficient capital to finance its operations.  *Id.* at ¶ 66.

      54.     The discrepancy between FTI's preliminary conclusion of insolvency and the

positive value indicated on DAS LLC's bankruptcy schedules is driven, in part, by certain

pension and other post-employment benefit ("OPEB") liabilities (collectively, the "Pension

Liabilities").  In the Debtors' schedules, these liabilities were allocated to Delphi Corporation

only, and not to DAS LLC.  However, for purposes of conducting a solvency analysis of DAS

LLC, it is appropriate to view Delphi Corporation and DAS LLC as co-employers under ERISA

(the Employee Retirement Income Security Act of 1974, as amended) and the with respect to

those liabilities.

      55.     DAS LLC is properly deemed a co-employer with respect to those obligations for

the following reasons: The Reorganized Debtors' Pension Liabilities were governed by ERISA

and the Internal Revenue Code of 1986, as amended.  Under Section 4001(b)(1) of ERISA (29

U.S.C. § 1301), all employees of trades or businesses (whether or not incorporated) that are

under common control are treated as employed by a single employer.  Among other things,

Section 4001(b)(1) provides that regulations prescribed under that section are to be consistent

and coextensive with regulations prescribed for similar purposes by the Secretary of the Treasury

under Section 414(c) of the Internal Revenue Code of 1986.  Sections 414(b) and (c) of the

Internal Revenue Code of 1986, as amended (26 U.S.C. § 414(b) and (c)) also provide guidance

as to when multiple entities are under common control.  Specifically, those sections provide,

respectively, that "all employees of all corporations which are members of a controlled group of corporations . . . shall be treated as employed by a single employer," and "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer.  The regulations prescribed under this subsection shall be based on principles similar to the principles which apply in the case of subsection (b)."

       a.     In this case, DAS was under common control with Delphi Corporation because, among other reasons, Delphi Corporation owned 100% of DAS's voting stock.  *See* Treasury Regulation 1.414(c)-2(b) (26 C.F.R. 1.414(c)-2(b)) (parent-subsidiary group of trades or businesses under common control);[17] *see also Pension Ben. Guar. Corp. v. Ouimet Corp.*, 470

---

[17]     In relevant part, Treasury Regulation section 1.414(c)-2(a) and (b) provide as follows:

§ 1.414(c)-2   Two or more trades or businesses under common control.

    (a) *In general.* For purposes of this section, the term "two or more trades or businesses under common control" means any group of trades or businesses which is either a "parent-subsidiary group of trades or businesses under common control" as defined in paragraph (b) of this section, a "brother-sister group of trades or businesses under common control" as defined in paragraph (c) of this section, or a "combined group of trades or businesses under common control" as defined in paragraph (d) of this section. For purposes of this section and §§1.414(c)–3 and 1.414(c)–4, the term "organization" means a sole proprietorship, a partnership (as defined in section 7701(a)(2)), a trust, an estate, or a corporation.

    (b) *Parent-subsidiary group of trades or businesses under common control —*

        (1) *In general.* The term "parent-subsidiary group of trades or businesses under common control" means one or more chains of organizations conducting trades or businesses connected through ownership of a controlling interest with a common parent organization if—

            (i) A controlling interest in each of the organizations, except the common parent organization, is owned (directly and with the application of §1.414(c)–4(b)(1), relating to options) by one or more of the other organizations; and

            (ii) The common parent organization owns (directly and with the application of §1.414(c)–4(b)(1), relating to options) a controlling interest in at least one of the other organizations, excluding, in computing such controlling interest, any direct ownership interest by such other organizations.

        (2) *Controlling interest defined —*

F. Supp. 945 (D. Mass. 1979), *affirmed at* 630 F.2d 4 (1st Cir. 1980), *cert. denied*, 450 U.S. 914

(1981) (subsidiary entity is generally deemed to be under common control with parent when

parent holds at least 80% of subsidiary's voting stock) (citing 26 U.S.C. § 1563(a))[18] (cited by

Pension Benefit Guaranty Corporation Opinion 97-1 (May 5, 1997)).  Thus, Delphi Corporation

---

(i) Controlling *interest.* For purposes of paragraphs (b) and (c) of this section, the phrase "controlling interest" means:
(A) In the case of an organization which is a corporation, ownership of stock possessing at least 80 percent of total combined voting power of all classes of stock entitled to vote of such corporation or at least 80 percent of the total value of shares of all classes of stock of such corporation;
(B) In the case of an organization which is a trust or estate, ownership of an actuarial interest of at least 80 percent of such trust or estate;
(C) In the case of an organization which is a partnership, ownership of at least 80 percent of the profits interest or capital interest of such partnership; and
(D) In the case of an organization which is a sole proprietorship, ownership of such sole proprietorship.
(ii) *Actuarial interest.* For purposes of this section, the actuarial interest of each beneficiary of trust or estate shall be determined by assuming the maximum exercise of discretion by the fiduciary in favor of such beneficiary. The factors and methods prescribed in §20.2031–7 or, for certain prior periods, §20.2031–7A (Estate Tax Regulations) for use in ascertaining the value of an interest in property for estate tax purposes shall be used for purposes of this subdivision in determining a beneficiary's actuarial interest.

[18]   In relevant part, 26 U.S.C. § 1563(a) provides that "the term 'controlled group of corporations' means any group of—

(1) Parent-subsidiary controlled group. One or more chains of corporations connected through stock ownership with a common parent corporation if--
(A) stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of stock of each of the corporations, except the common parent corporation, is owned (within the meaning of subsection (d)(1)) by one or more of the other corporations; and
(B) the common parent corporation owns (within the meaning of subsection (d)(1)) stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of stock of at least one of the other corporations, excluding, in computing such voting power or value, stock owned directly by such other corporations."

33

and DAS constituted a "single employer" under ERISA and under the relevant pension-related

provisions of the Internal Revenue Code.

       b.      Further, although the Collective Bargaining Agreements governing the

Pension Liabilities were signed by Delphi Corporation, Delphi Corporation did not benefit

directly from those agreements because it was a holding company with no operations.  Instead,

Delphi Corporation relied upon DAS LLC, which owned substantially all of its North American

operations, to operate its business.  For this reason, from an accounting standpoint, the Pension

Liabilities were "reported on the books of DAS LLC, matching labor costs to the underlying

revenue stream."  **Exhibit D,** FTI Declaration, ¶ 31.  Accordingly, DAS LLC's status as a joint

employer with respect to the Pension Liabilities is consistent with DAS LLC's accounting

records.

       c.      If a single employer plan is terminated in a distress termination (a

termination where the plan is not fully funded) or a termination is instituted by the Pension

Benefit Guaranty Corporation ("PBGC") (a U.S. government corporation), commonly controlled

entities become jointly and severally liable (i) to the PBGC for the total amount of unfunded

benefit liabilities to all participants and beneficiaries under the plan as of the termination date,

plus interest compounded daily from the date of plan termination; and (ii) to the plan trustee

under Section 4042 of ERISA (29 U.S.C. § 1342) in an amount equal to the shortfall

amortization charge, plus the aggregate total of shortfall amortization installments, plus the sum

of the waiver amortization charges.  Section 4062 of ERISA (29 U.S.C. § 1362).

       d.      If an employer responsible for contributing to a defined benefit pension

plan (and a money purchase pension plan) is a member of a controlled group, then each member

of the group is jointly and severally liable for payment of any contribution required by the

34

minimum funding requirements and any required quarterly installments.  *See* Section 412(b)(2)

of the Internal Revenue Code (26 U.S.C. § 412(b)(2)) and Section 302(b)(2) of ERISA (29

U.S.C. § 1082(b)(2)).[19]

     56.     Finally, even if, for the sake of argument only, DAS LLC were not to be

considered a co-employer with respect to the Pension Liabilities, FTI's analysis shows that DAS

---

[19]    Section 412(a) and (b) of the Internal Revenue Code provide as follows:

(a) Requirement to meet minimum funding standard
    (1) In general
A plan to which this section applies shall satisfy the minimum funding standard
applicable to the plan for any plan year.
    (2) Minimum funding standard
For purposes of paragraph (1), a plan shall be treated as satisfying the minimum funding
standard for a plan year if—
        (A) in the case of a defined benefit plan which is not a multiemployer
plan, the employer makes contributions to or under the plan for the plan year which, in
the aggregate, are not less than the minimum required contribution determined under
section 430 for the plan for the plan year,
        (B) in the case of a money purchase plan which is not a multiemployer
plan, the employer makes contributions to or under the plan for the plan year which are
required under the terms of the plan, and
        (C) in the case of a multiemployer plan, the employers make contributions
to or under the plan for any plan year which, in the aggregate, are sufficient to ensure that
the plan does not have an accumulated funding deficiency under section 431 as of the end
of the plan year.
 (b) Liability for contributions
    (1) In general
Except as provided in paragraph (2), the amount of any contribution required by this
section (including any required installments under paragraphs (3) and (4) of section 430
(j)) shall be paid by the employer responsible for making contributions to or under the
plan.
    (2) Joint and several liability where employer member of controlled group
If the employer referred to in paragraph (1) is a member of a controlled group, each
member of such group shall be jointly and severally liable for payment of such
contributions.
    (3) Multiemployer plans in critical status
Paragraph (1) shall not apply in the case of a multiemployer plan for any plan year in
which the plan is in critical status pursuant to section 432. This paragraph shall only
apply if the plan sponsor adopts a rehabilitation plan in accordance with section 432 (e)
and complies with such rehabilitation plan (and any modifications of the plan).

LLC would nonetheless be deemed insolvent under the Cash Flow test.  **Exhibit D**, FTI

Declaration, ¶¶ 61-62.

57.    In summary, although an ultimate factual finding as to DAS's insolvency during

the preference period is not a proper subject for the upcoming Hearing, when the Court does

decide this issue on the merits, following Defendants' opportunity for discovery, Plaintiff will be

able to present a great deal of evidence of its insolvency during the preference period.

Accordingly, Plaintiff's allegations of insolvency are plausible.

**E.    Plaintiff Has Sufficiently Alleged That The Transfers Were Made "On Or
Within 90 Days Before The Date Of The Filing Of The Petition"**

58.    Plaintiff's allegations clearly satisfy the next element – the Transfers were made

on or within 90 days before the date of the filing of the petition.  Plaintiff specifically alleges that

"on or within ninety (90) days prior to the initial filing date, Plaintiff made, or caused to be

made, the transfers listed on Exhibit 1 to, or for the benefit of, Defendant."  PAC against Applied

Biosystems, *supra*, ¶ 21.  Exhibit 1 to each PAC identifies the date of each Transfer, which in

every case is within ninety days of the October 8, 2005 filing date.  *Id.* at Exhibit 1.  As a result,

Plaintiff has pled sufficient facts to satisfy this element of its preference claims.

**F.    Plaintiff Has Sufficiently Alleged That The Transfers Enabled The
Defendants To Receive More Than They Would Have Received "If The Case
Were A Case Under Chapter 7, The Transfer Had Not Been Made, And The
Defendant[s] Received Payment Of Such Debt To The Extent Provided By
The Bankruptcy Code"**

59.    Plaintiff has also sufficiently alleged the last element of its preference claims.

Section 547(b)(5) of the Bankruptcy Code provides that "the Trustee may avoid any transfer of

an interest of the Debtor in property . . . that enable such Creditor to receive more than such

Creditor would receive if: (A) the case were a case under Chapter 7 of this title; (B) the transfer

had not been made; and (C) such Creditor received payment of such debt to the extent provided

by the provisions of this title."  The transferee must therefore have "received more as a result of the preference than if the preference was never paid, and instead, the transferee received a distribution on its claim in a hypothetical Chapter 7 case."  *In re Teligent, Inc.,* 380 B.R. 324, 339 (Bankr. S.D.N.Y. 2008); *see also id.* (This element "is satisfied whenever the plaintiff shows that the creditor would receive less than 100% in a hypothetical Chapter 7 distribution.").

60.    Here, Plaintiff alleges that each Defendant was a general unsecured creditor of Plaintiff.  *See* PAC against Critech Research, Inc., ¶24.  Plaintiff further alleges that "unsecured Creditors in these Chapter 11 cases will receive less than full value on account of their unsecured claims."  *Id.*  Specifically, Plaintiff alleges that, "under the Modified Plan, which was confirmed by the Court on July 30, 2009, these general unsecured Creditors will receive less than full value on account of their unsecured claims."  *Id.* at ¶4-5.  Thus, Plaintiff alleges sufficient facts showing that Defendant would receive less than 100% distribution.  As such, Defendants, all of whom received payments during the preference period, have received more than they would have under chapter 7 liquidation.   Plaintiff has therefore satisfied the remaining element of its preference claims.

## II.    The Proposed Amended Complaints Comply With The Dismissal Order

61.    The Dismissal Order required the Reorganized Debtors to attach to each of the Motions to Amend "a proposed amended complaint that, for each alleged transfer shall set forth, at a minimum, the transferor, the transferee, any known subsequent transferee against whom relief is sought, the antecedent debt and which Reorganized Debtor is the plaintiff."  Dismissal Order, ¶ 4.  As to plaintiff identification, the case caption on each PAC identifies DAS LLC as the sole plaintiff in each of the Adversary Proceedings.  It is therefore beyond dispute that the

37

PACs sufficiently set forth "which Reorganized Debtor is the plaintiff" pursuant to the Dismissal Order.

62.     Further, the Reorganized Debtors have identified the transferor in all Adversary Proceedings.  First, Exhibit 1 to each PAC plainly identifies the Plaintiff, "DAS LLC," as the "Transferring Entity" for each Transfer.  Second, each PAC is substantially identical in its other allegations that Plaintiff was the transferor of each Transfer.  *See, e.g.*, **Exhibit 52** to Motion to Amend in Case No. 05-44481, PAC against Jamestown Container Corp. (Adv. Pro. No. 07-02322) (alleging that "Plaintiff . . . performed . . . accounting and payment functions for the Reorganized Debtors in connection with their [business]," ¶ 12; "Plaintiff made certain payments to Defendant" and "[s]uch Transfers are identified on Exhibit 1," ¶ 18; "Plaintiff made, or caused to be made, the Transfers listed on Exhibit 1, ¶ 20; "Plaintiff made, or caused to be made, each transfer listed on Exhibit 1," ¶ 22).  Taken in their entirety, the allegations in each PAC sufficiently identify the transferor of each Transfer.

63.     Finally, as set forth above in sections IB and IC, Plaintiff has sufficiently alleged the transferee and antecedent debt for each Transfer.  Thus, the PACs comply with the Dismissal Order, and the Motions to Amend should not be denied based on the pleading requirements in the Dismissal Order.

[CONCLUDED ON NEXT PAGE]

38

## <u>CONCLUSION</u>

64.      For the foregoing reasons, the PACs comply with Rule 8 and the pleading requirements set forth in the Dismissal Order.  Therefore, Reorganized Debtors respectfully request that this Court grant the Motions to Amend.

Dated:  New York, New York
        January 28, 2011

                                        Respectfully submitted,

                                        BUTZEL LONG,
                                        a professional corporation

                                        By:  /s/ Eric B. Fisher
                                            Eric B. Fisher
                                            Barry N. Seidel
                                            Cynthia J. Haffey
                                        380 Madison Avenue
                                        22nd Floor
                                        New York, New York 10017
                                        Telephone:  (212) 374-5359
                                        Facsimile:  (212) 818-0494
                                        fishere@butzel.com

                                        *Attorneys for Reorganized Debtors*

BUTZEL LONG, a professional corporation
380 Madison Avenue, 22nd Floor
New York, New York 10017
Telephone:  (212) 818-1110
Facsimile:  (212) 818-0494
Barry N. Seidel
Eric B. Fisher
Cynthia J. Haffey

*Attorneys for Plaintiffs*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| DPH HOLDINGS CORP., *et al.*, | Chapter 11 |
|  | Case No. 05-44481 (RDD) |
| Reorganized Debtors. | (Jointly Administered) |
| ------------------------------------------------------------------- |  |
| DPH HOLDINGS CORP., *et al.*, |  |
| Plaintiffs, | Adv. Pro. No. 07-02076, <u>et seq.</u> |

## <u>CERTIFICATE OF SERVICE</u>

        I hereby certify that on January 28, 2011, a true and correct copy of the Reorganized Debtors' Omnibus Reply In Further Support Of Motions For Leave To File Amended Complaints, was served electronically through the Court's ECF system on all parties.


Dated: Detroit, Michigan                    /s/ Alexis L. Richards
        January 28, 2011                     Alexis L. Richards