BUTZEL LONG, a professional corporation
Eric B. Fisher
Cynthia J. Haffey
Barry N. Seidel
380 Madison Avenue
22nd Floor
New York, New York 10017
Telephone: (212) 818-1110
Facsimile: (212) 818-0494

*Attorneys for Reorganized Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DPH HOLDINGS CORP., *et al.*, <br><br> Reorganized Debtors. | Chapter 11 <br><br> Case No. 05-44481 (RDD) <br> (Jointly Administered) |

# REORGANIZED DEBTORS' OMNIBUS RESPONSE TO MOTIONS FOR RELIEF FROM FOURTH ORDER EXTENDING TIME TO SERVE COMPLAINT

BUTZEL LONG, a professional corporation
Eric B. Fisher
Cynthia J. Haffey
Barry N. Seidel
380 Madison Avenue
22nd Floor
New York, New York 10017
Telephone: (212) 818-1110
Facsimile: (212) 818-0494
fishere@butzel.com
haffey@butzel.com
seidelb@butzel.com

*Attorneys for Reorganized Debtors*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 2

BACKGROUND ........................................................................................................................... 2

ARGUMENT ................................................................................................................................. 7

    I.    RELIEF UNDER *GLOBAL CROSSING* SHOULD BE DENIED ................................ 8

    II.   RELIEF UNDER RULE 60(b) SHOULD BE DENIED ............................................. 10

        A.    THE FOURTH EXTENSION ORDER WAS NOT A FINAL ORDER.............. 11

        B.    ALTERNATIVELY, ISSUES INVOLVING MISTAKE,
INADVERTENCE AND SURPRISE SHOULD BE
STAYED FOR FUTURE RESOLUTION .......................................................... 13

CONCLUSION ............................................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**                                                                                  **Pages**

*Aetna Casualty & Sur. Co. v. Home Ins. Co.*,
   882 F.Supp. 1355 (S.D.N.Y. 1995) .................................................................................. 10

*Favell v. Speck*,
   22 Cl. Ct. 132 (1990) ......................................................................................................... 12

*Glendora v. Malone*,
   165 F.R.D. 42 (S.D.N.Y. 1996) ................................................................................... 11, 12

*Global Crossing Estate Representative v. Alta Partners Holdings LDC*,
   385 B.R. 52 (Bankr. S.D.N.Y. 2008) ........................................................................... passim

*Koelling v. Livesay*,
   239 F.R.D. 517 (S.D. Ill. 2006) ....................................................................................... 11

*Menoken v. McNamara*,
   213 F.R.D. 193 (D. N.J. 2003) ................................................................................... 11, 12

*Peacock v. Bd. Of School Comm'rs*,
   721 F.2d 210 (7th Cir. 1983) ........................................................................................... 13

*Wheeler Mach. Co. v. Mountain States Mineral Enter., Inc.*,
   696 F.2d 787 (10th Cir. 1993) ......................................................................................... 11

*Wilson v. United States of America*,
   669 F.Supp. 563 (E.D.N.Y. 1987) .................................................................................. 11

**Statutes**

11 U.S.C. §§ 101-1330 .......................................................................................................... 2

28 U.S.C. § 1291 ............................................................................................................ 11, 12

**Rules**

Fed. R. Civ. P. 4(m) ..................................................................................................... passim

Fed. R. Civ. P. 8(a) ................................................................................................................ 6

Fed. R. Civ. P. 15(c)(3) .................................................................................................. 8, 9, 10

Fed. R. Civ. P. 60 ............................................................................................................... passim

Federal Rules of Bankruptcy Procedure 1107(a) ............................................................................ 3

Federal Rules of Bankruptcy Procedure 1108 ................................................................................ 3

Federal Rules of Bankruptcy Procedure 9024 ............................................................................ 2, 6

BUTZEL LONG, a professional corporation
380 Madison Avenue
22nd Floor
New York, New York 10017
Eric B. Fisher
Cynthia J. Haffey
Barry N. Seidel
Telephone: (212) 818-1110
Facsimile: (212) 818-0494

*Attorneys for Reorganized Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

DPH HOLDINGS CORP., *et al.*,

                Reorganized Debtors.

Chapter 11

Case No. 05-44481 (RDD)
(Jointly Administered)

## REORGANIZED DEBTORS' OMNIBUS RESPONSE TO MOTIONS FOR RELIEF FROM FOURTH ORDER EXTENDING TIME TO SERVE COMPLAINT

DPH Holdings Corporation and certain of its affiliated reorganized debtors (the "Reorganized Debtors"), as successors to Delphi Corporation and certain of its affiliates and subsidiaries (the "Debtors"), by their counsel, Butzel Long, a professional corporation, respectfully submit this omnibus response in opposition to a number of motions (the "Motions") filed by certain preference action Defendants (the "Movants"), seeking relief from this Court's fourth order extending the time for the Reorganized Debtors to serve preference complaints.[1]  In support of their opposition, the Reorganized Debtors state as follows:

---

[1] The 33 Motions opposed in this omnibus filing are substantially identical. **Exhibit A**, attached hereto, identifies the Motions at issue by adversary proceeding number and docket entry, and also indicates those cases in which the Reorganized Debtors are represented by Butzel Long and those in which they are represented by Togut, Segal & Segal, LLP.

**PRELIMINARY STATEMENT**

1. The Movants seek relief from the last of four orders under Rule 4(m) of the Federal Rules of Civil Procedure (the "Rules") extending the deadline to serve the complaints in the preference actions. Specifically, the Movants request that the Court render that order ineffectual under *Global Crossing Estate Representative v. Alta Partners Holdings LDC*, 385 B.R. 52 (Bankr. S.D.N.Y. 2008) or, alternatively, vacate it under Rule 60(b), as applicable through Bankruptcy Rule 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2. The Motions should be denied. The Court entered the order at issue based upon an express finding of good cause, and *Global Crossing* provides no basis for the Movants' requested relief. The order at issue, moreover, is interlocutory, and so it cannot be subject to vacatur under Rule 60(b). Further, the Movants assert conclusory grounds for relief under Rule 60(b) and, at best, raise case-specific factual issues which, as the Court already ruled, will require future resolution through discovery and other procedures to be determined at a later date.

3. Alternative to denying the Motions in full, the requested relief under *Global Crossing* should be denied, and the Rule 60(b) issues should be stayed for future resolution in accordance with the above-referenced procedures, which will be determined at a later date.

**BACKGROUND**

4. On October 8 and 14, 2005, the Debtors' predecessors, Delphi Corporation and certain of its subsidiaries and affiliates, filed voluntary petitions in this Court for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"). The Reorganized Debtors continued to operate their businesses and manage their

2

properties as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code until they emerged from chapter 11 protection on October 6, 2009.

5. On August 6, 2007, given the impending expiration of applicable statutes of limitation and the time needed for approval and consummation of the Equity Purchase and Credit Agreement ("EPCA"),[2] the Debtors filed a motion (Docket No. 8905, the "First Extension Motion") to commence adversary proceedings under seal and to extend the time to serve their complaints until March 31, 2008, so that the complaints would not be subject to dismissal under Rule 4(m).

6. The following reasons were among those offered by the Debtors for filing the First Extension Motion: (i) to facilitate their reorganization by keeping the adversary proceedings inactive and separate from all other activity in their chapter 11 cases; (ii) to prevent any party from incurring needless litigation costs, as the Debtors were then pursuing a one hundred percent plan, which would have obviated the adversary proceedings; and (iii) to avoid unnecessarily alarming their suppliers, which were crucial to the Debtors' reorganization. (*See* First Extension Motion at ¶¶ 36, 37.)

7. The Court found good cause for the First Extension Motion, stating: "[F]or the record, the motion in addition to being unopposed sets forth good cause and to the extent you needed good business reasons for all the relief that you're seeking here, and that includes the [sea]ling portion of it and consequently I'll approve it in full." (*See* **Exhibit B**, Transcript, August 16, 2007 at p. 11.) On the same day, the Court entered an order granting the motion (Docket No. 9105, the "First Extension Order").

---

[2] Through the EPCA, several financial firms committed to fund the Debtors' exit from Bankruptcy Court protection under a plan that paid each allowed unsecured claim in full in cash and plan currency.

3

8. In September 2007, the Debtors timely commenced 742 adversary proceedings (the "Adversary Proceedings") by filing the complaints in accord with the First Extension Order.

9. On January 25, 2008, the Court entered an Order (Docket No. 12359) confirming the Debtors' First Amended Joint Plan of Reorganization (Docket No. 11386, the "First Plan").

10. On February 28, 2008, before the EPCA's scheduled closing, and while working to consummate the First Plan, the Debtors filed a motion to extend further the time to serve their preference complaints until May 31, 2008 (Docket No. 12922, the "Second Extension Motion").

11. On March 28, 2008, again having found good cause, the Court entered an order granting this extension (Docket No. 13277, the "Second Extension Order").

12. In April 2008, after announcing that the EPCA investors would not close the EPCA transaction, which prevented consummation of the First Plan, the Debtors filed a motion seeking to extend their time to serve the preference complaints until 30 days after substantial consummation of a reorganization plan (Docket No. 13361, the "Third Extension Motion").

13. On April 30, 2008, again having found good cause, the Court entered an order granting this extension (Docket No. 13484, the "Third Extension Order").

14. The Court confirmed the Reorganized Debtors' First Amended Joint Plan of Reorganization, as modified and amended, on July 30, 2009 (Docket No. 18707, the "Modified Plan").

15. On October 2, 2009, while the Debtors focused their attention and resources on consummating the Modified Plan and related transactions, they filed a motion (Docket No. 18952, the "Fourth Extension Motion") to extend further the service of process deadline until 180 days after substantial consummation of the Modified Plan.

4

16. The Court retrospectively summarized the rationale for the Fourth Extension Motion as follows:

> It became clear during the course of 2008 that the plan investors were not going to close the plan or a closely similar modified plan and, instead, the debtors turned their attention to a new plan. During this period, the debtors also narrowed down the number of potential proceedings . . . to 177. The . . . primary rationale for the prior extension orders no longer applied. However, the debtors concluded that even with respect to the 177 claims, there may not be a sufficient basis to pursue those claims actively and force any parties to incur additional cost in respect thereto.
>
> Frankly, by that point in the case, and we're now focusing on the fall of 2009, it was not clear whether the debtors had sufficient funds to even conduct their case let alone pursue adversary proceedings. And the specter of conversion to Chapter 7 where a Chapter 7 trustee would be pursuing the proceedings was [quite] real. Consequently, the debtors sought, and the Court granted, a third [i.e., fourth] extension motion . . . .

(*See* **Exhibit C**, Transcript April 1, 2010, pp. 62-63.)

17. The Modified Plan became effective on October 6, 2009.

18. Thereafter, on October 22, 2009, again having found good cause, the Court granted the Fourth Extension Motion (Docket No. 18999, the "Fourth Extension Order") (together with the First, Second and Third Extension Orders, "the Extension Orders").

19. In December 2009, the Reorganized Debtors, through their counsel, began serving the summonses and complaints (the "Original Complaints") in 177 of the Adversary Proceedings (the "Preference Actions").[3] The Reorganized Debtors timely served the Original Complaints upon the Movants within the extended service period.

20. Thereafter, certain Defendants filed motions to, among other things, (A) vacate the Extension Orders; (B) dismiss the Original Complaints filed against them with prejudice; and (C) in the alternative, require the Reorganized Debtors to file a more definite statement (the

---

[3] Currently, 116 of the original 177 actions remain pending due to the resolution of many of those actions.

5

"Motions to Dismiss").

21. On July 22, 2010, the Court heard argument on the Motions to Dismiss (the "Dismissal Hearing"). In its bench ruling (the "Dismissal Rulings"), the Court held, among other things, that the Original Complaints in the preference actions that had not already been dismissed with prejudice during the Dismissal Hearing were dismissed without prejudice under Rule 8(a). The Court further directed the Reorganized Debtors to file motions for leave to amend their complaints ("Motions to Amend") in those Adversary Proceedings that the Reorganized Debtors wished to preserve. The Court, however, declined to rule on any of the Defendants' requests under Rule 60(b) and Bankruptcy Rule 9024 to vacate the Extension Orders, which Defendants argued were improper applications of Rule 4(m). Instead, the Court elected to address such issues (the "Rule 4(m) Issues") within the context of the Motions to Amend. *See* **Exhibit D**, Transcript of Dismissal Hearing, pp. 228-29.

22. On September 7, 2010, the same day the Court entered an Order (Docket No. 20574) consistent with the Dismissal Rulings, the Reorganized Debtors timely filed Motions to Amend in all pending Adversary Proceedings.

23. The Movants then filed the instant Motions on or about October 22, 2010. The Motions present new arguments in support of the Movants' request for relief from the Fourth Extension Order. Although the Movants could have raised each such argument in their Motions to Dismiss, they did not.

24. On or about November 24, 2010, numerous Defendants filed oppositions to the Motions to Amend. The hearing (the "Hearing") on the Motions to Amend, and on these Motions, will be held on a date to be determined by the Court.

6

25.     On December 17, 2010, the Court convened a telephone conference to determine what issues raised in opposition to the Motions to Amend would be addressed by the Court at the Hearing.  During that conference, the Court decided to limit such issues to those concerning the facial sufficiency of the Reorganized Debtors' proposed amended complaints, and to leave all factual issues for future resolution on a case-by-case basis.  *See* **Exhibit E**, Transcript of December 17, 2010 Telephone Conference, p. 46 (where the Court stated that "rather than getting the parties into case-by-case discovery on notice related to the 4M issues and/or discovery generally, I think we ought to deal with the complaint first, just the face of the complaint first").  The Court further indicated that it would use the Hearing as an occasion to set procedures for adjudicating the fact-specific Rule 4(m) Issues in the future.  *Id.* at 45-46.

## ARGUMENT

### THE MOTIONS FOR RELIEF FROM THE FOURTH ORDER EXTENDING TIME TO SERVE COMPLAINT SHOULD BE DENIED BECAUSE THE MOVANTS HAVE MISCONSTRUED *GLOBAL CROSSING* AND ARE NOT ENTITLED TO RELIEF UNDER RULE 60(b)

26.     The Movants request that the Court either render the Fourth Extension Order ineffective under *Global Crossing, supra,* or vacate it under Rule 60(b).  These requests should be denied.  The Movants have misconstrued *Global Crossing* and have incorrectly deemed the Fourth Extension Order to be a "final order" within the meaning of Rule 60(b).  In addition, in specifically seeking relief from the Fourth Extension Order under Rule 60(b)(1) on the alleged grounds of mistake, inadvertence and surprise, the Movants raise factual issues that are substantially identical to the Rule 4(m) Issues, which the Court has deferred for future resolution through procedures to be determined at the Hearing.

7

**I.      RELIEF UNDER *GLOBAL CROSSING* SHOULD BE DENIED**

27.     According to the Movants, *Global Crossing* supports the notion that the asserted rationale for securing sequential Rule 4(m) extensions cannot "morph" or change from one Rule 4(m) order to the next.  The Movants further contend that, because the asserted reasons for seeking the Rule 4(m) extensions had changed by the time the Reorganized Debtors filed the Fourth Extension Motion, the resulting Fourth Extension Order should be rendered ineffectual, and thus, the preference complaints against the Movants should be dismissed.  For the reasons that follow, however, the Movants' "morphed rationale" argument only succeeds in "morphing" the court's actual analysis in *Global Crossing*.  Properly construed, *Global Crossing* does not provide an avenue to the Movants' requested relief.

28.     The issue in *Global Crossing* was whether, under Rule 15(c)(3), the plaintiff's amended complaint should relate back to those defendants who were neither named parties nor yet identified by the plaintiff when the plaintiff filed successive motions under Rule 4(m) to extend the service period in its adversary proceedings.  The issue was not, as the Movants assert, whether a subsequent Rule 4(m) extension could be based on a different or "morphed" rationale with respect to a prior Rule 4(m) extension, and the court undertook no such analysis.  Rather, the narrow issue was whether a Rule 4(m) extension order could later be construed "to cover a purpose that was not intended [for it] at the time it was entered." *See Global Crossing*, 385 B.R. at 84-85.  More precisely, the issue was "whether the Court should find the [first] Rule 4(m) extension applicable to unnamed and unidentified parties for reasons wholly different than the stated reasons for the extension at the time." *Id.* at 85-86.

29.      In *Global Crossing*, as here, the court entered four successive Rule 4(m) orders. *Id.* at 57.  In the first Rule 4(m) motion, the plaintiff cited several reasons why the court should

8

grant the requested service extension. *See id.* at 61. Unlike in the plaintiff's subsequent Rule 4(m) motions, however, the plaintiff did not assert in the first Rule 4(m) motion that it wanted more time to discover additional, then-unnamed defendants to add to the complaint. *See id.* Thus, the court held that the first Rule 4(m) order did not apply to the later-named defendants who were unnamed and unidentified when the first Rule 4(m) order was entered.[4] *Id.* at 85.

30. In other words, contrary to the Movants' interpretation, *Global Crossing* stands for the proposition that a court cannot apply a Rule 4(m) extension order *retroactively* to achieve a purpose that was not intended at the time the order was entered. *See id.* at 88. The court further stated: "It is more appropriate, in the Court's view, to hold that the first Rule 4(m) order was fully effective to achieve its stated purpose at the time – extending the time to serve identified, but unserved, entities – but was ineffective to achieve other purposes."[5] *Id.*

---

[4] Thus, the court further concluded in view of Rule 15(c)(3) that plaintiff's amended complaint would only relate back with respect to the defendants at issue if, within 120 days of the filing of the original complaint, those defendants knew or should have known that, but for a mistake, they would have been originally named defendants. *Global Crossing*, 385 B.R. at 85-86 ("[T]he first extension order [is] ineffectual to extend the statute of limitations for defendants who were unknown and unnamed when the original 120-day period to serve ran out.").

[5] One cannot plausibly dispute that the court's holding in *Global Crossing* with respect to the first Rule 4(m) Order was the result of analyzing the plaintiff's stated reasons in the first Rule 4(m) motion for requesting the initial service extension. That there were different reasons asserted in plaintiff's subsequent Rule 4(m) motions was irrelevant to the court's holding. Furthermore, as the Rule 4(m) order at issue in *Global Crossing* was the first such order in the case, the court did not, and could not, base its holding on finding that earlier Rule 4(m) orders were entered for different reasons. Simply put, *Global Crossing* does not support the Movants' "morphed rationale" theory.

9

31. *Global Crossing*, therefore, does not state that a court cannot order successive Rule 4(m) extensions unless the reasons for each extension are the same.[6] Unlike *Global Crossing*, the Movants here do not – and cannot – contend that the Reorganized Debtors have applied, or seek to apply, the Fourth Extension Order to a purpose other than the purposes asserted in the Fourth Extension Motion, upon which the Court found good cause to grant the extension. In fact, the Court entered each of the Extension Orders for good cause, and each of the Extension Orders only served to further the purposes set forth by the Debtors in their respective motions. Thus, *Global Crossing* is of no use to the Movants; nor have they cited another case that supports their "morphed rationale" theory.[7]

32. Accordingly, and for the reasons set forth below, the Motions should be denied.

## II.  RELIEF UNDER RULE 60(b) SHOULD BE DENIED

33. The Motions should be denied as a threshold matter because the Fourth Extension Order was not a final order. Rule 60(b)(1) provides: "On motion and just terms, the court may relieve a party . . . from a <u>final</u> judgment, <u>order</u>, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1) (2010) (emphasis added). Moreover, a decision under Rule 60(b) is within the trial court's discretion. *Aetna Casualty & Sur. Co. v. Home Ins. Co.*, 882 F.Supp. 1355, 1356 (S.D.N.Y. 1995). Here, the Fourth Extension Order was

---

[6] The court in *Global Crossing* did note that, because the first Rule 4(m) order was ineffective to extend the service period with respect to defendants who were not identified and named within 120 days of when the plaintiff filed the complaint, the subsequent Rule 4(m) orders were also necessarily ineffective as to those defendants. *Global Crossing*, 385 B.R. at 85. Nowhere, though, did the court deem a subsequent Rule 4(m) order ineffective for having been entered for a different reason than a prior Rule 4(m) order, which is what Movants request of this Court.

[7] Accordingly, as to notice under Rule 15(c)(3), the relevant service period with respect to all parties named in Plaintiff's Proposed Amended Complaints runs from the date the original complaint was filed to the final extended service deadline, as approved by this Court.

10

clearly preliminary to the litigation in these preference actions and therefore not a final order within the meaning of Rule 60(b).  Accordingly, it is well within this Court's discretion to deny the Movants' requested relief under Rule 60(b).

34.     Alternatively, the Rule 60(b) issues should be stayed for future resolution. Whether to vacate the Fourth Extension Order on the basis of mistake, inadvertence and surprise raises notice and other factual issues that are coextensive with the Rule 4(m) Issues.  As noted above, moreover, the Rule 4(m) Issues are set to be resolved after the Hearing.

### A.     THE FOURTH EXTENSION ORDER WAS NOT A FINAL ORDER

35.     "A 'final' order is of course one that resolves a case on its merits, leaving a court nothing further to do but to enter judgment." *Koelling v. Livesay*, 239 F.R.D. 517, 520 (S.D. Ill. 2006).  Rule 60, moreover, is "inapplicable before entry of final judgment, and rulings made before entry of final judgment are interlocutory in nature and may be changed within the trial court's discretion." *Wilson v. United States of America*, 669 F.Supp. 563, 565 (E.D.N.Y. 1987); *see also Glendora v. Malone*, 165 F.R.D. 42, 43 (S.D.N.Y. 1996) (denying relief under Rule 60(b) because the order denying the motion for temporary restraining order and preliminary injunction, as well as the order dismissing certain defendants, were not final orders).  Likewise, certain courts have found that discovery orders and other "preliminary steps in litigation" are interlocutory and thus outside the scope of Rule 60(b).  *See, e.g., Menoken v. McNamara*, 213 F.R.D. 193, 196 (D. N.J. 2003) (denying relief under Rule 60(b) from the court's order that it had subject matter jurisdiction over the case because the order was not final).

36.     Furthermore, "[f]inality [under Rule 60(b)] is judged by the standards applicable to determining [appellate] jurisdiction under 28 U.S.C. § 1291."  *Wheeler Mach. Co. v. Mountain*

11

*States Mineral Enter., Inc.*, 696 F.2d 787, 789 (10th Cir. 1993) (per curiam).  As one court

stated:

> The historic rule in the federal courts has always tried to limit piecemeal disposal of litigation and permitted appeals only from final judgments, except in those special instances covered by statute.
>
> * * *
>
> The basic rationale of the finality rule is conservation of judicial resources. Frequent appeals during pending cases in the lower courts would unnecessarily protract litigation, raise the costs of litigation, and forestall the ultimate resolution of the cases, as well as provide opportunities for harassment of one party by his opponent.
>
> * * *
>
> The requirement of finality also may help to ensure a more correct disposition of the merits of the case as a whole.  After the proceedings at the trial court level are complete, the appellate court is in a position to assess the wisdom of individual particular interlocutory orders with heightened perspective, and to avoid the probability of a second appeal.

*Favell v. Speck*, 22 Cl. Ct. 132, 139-40 (1990).

37.     As with the order confirming the court's subject matter jurisdiction in *Menoken*, the Fourth Extension Order was preliminary to the litigation in these Adversary Proceedings. Further, the Movants cannot contend, nor have they contended, that the Fourth Extension Order resolved any Adversary Proceedings on the merits, leaving this Court nothing more to do but to enter judgment.  Rather, the opposite is true.  This Court entered the Fourth Extension Order before service of the complaints for the purpose of extending the service of process deadline. Thus, the Fourth Extension Order is arguably even farther from being a final order than was the order of dismissal as to certain defendants in *Glendora*, in which the court deemed the order to be interlocutory.

38.     To find the Fourth Extension Order final under Rule 60(b), moreover, would mean that it was also appealable under 28 U.S.C. § 1291.  However, given the policy behind the

12

finality requirement, as well stated in *Favell*, it would be implausible to grant final status to the Fourth Extension Order, which was preliminary to any litigation, and the Movants have not cited authority to suggest otherwise.

39.    The Fourth Extension Order is interlocutory; therefore, the Movants' request for relief under Rule 60(b) should be denied.

### B.    ALTERNATIVELY, ISSUES INVOLVING MISTAKE, INADVERTENCE AND SURPRISE SHOULD BE STAYED FOR FUTURE RESOLUTION

40.    The Movants specifically seek relief from the Fourth Extension Order under Rule 60(b)(1) because, as they contend, the reasons they "did not object to the Fourth Extension Motion or appeal the Fourth Extension Order were mistake, inadvertence and surprise." *See, e.g.*, Motion of ATS Automation Tooling Systems Inc. (Adv. Pro. No. 07-02125), p. 12.  Further, the Movants attribute their mistake, inadvertence and surprise to having not received notice that the Debtors filed preference complaints against them under seal, or that the Debtors moved for and secured the Extension Orders.

41.    Assuming the Fourth Extension Order is a final order, which it is not, the Movants at most have raised issues of fact as to whether they suffered from mistake, inadvertence or surprise within the meaning of Rule 60(b)(1). *See, e.g.*, *Peacock v. Bd. Of School Comm'rs*, 721 F.2d 210, 213 (7th Cir. 1983) ("Rule 60(b) provides for extraordinary relief and may be invoked only upon a showing of exceptional circumstances.").  Here, such issues necessarily turn on the degree to which the Movants received notice of the Fourth Extension Motion; therefore, the issues are subsumed under the Rule 4(m) Issues. As the Court has recognized, the Rule 4(m) Issues will require discovery and resolution on a case-by-case basis.  For that reason, the Court has set the Hearing as the venue not to resolve the Rule 4(m) Issues but to determine the nature of discovery and other procedures through which to resolve them in the future.  Thus,

13

it would be premature, if not impossible, to properly resolve the Rule 4(m) Issues at the Hearing.

42.     That being said, however, for the reasons set forth in their omnibus response (Docket No. 20225) to the Motions to Dismiss, the Reorganized Debtors dispute the Movants' conclusory assertions that the Fourth Extension Order caused them to be surprised, make a mistake, or act inadvertently to entitle them to relief under Rule 60(b).[8]

43.     Accordingly, for the reasons set forth above, the Motions should be denied.

[CONCLUSION ON NEXT PAGE]

---

[8]    The Extension Orders were entered to let the Debtors/Reorganized Debtors preserve their supplier relationships and consummate their reorganization by filing their preference complaints under seal and postponing service of process. Thus, relieving the Movants from any of the Extension Orders simply because they did not know that they were parties to the Adversary Proceedings, as the Movants assert, would be procedurally inconsistent.

14

## CONCLUSION

44. The Reorganized Debtors respectfully request entry of an order (i) denying all relief requested in the Motions, or, alternatively, (ii) reserving the Rule 60(b) issues for future resolution with the Rule 4(m) Issues through the procedures to be determined at the Hearing, but denying the Movants all other relief, and, in any event, (iii) granting the Reorganized Debtors such relief as the Court deems warranted.

Dated: New York, New York
February 3, 2011

Respectfully submitted,

BUTZEL LONG,
a professional corporation

By: /s/ Eric B. Fisher
    Eric B. Fisher
    Cynthia J. Haffey
    Barry N. Seidel
380 Madison Avenue
22nd Floor
New York, New York 10017
Telephone: (212) 374-5359
Facsimile: (212) 818-0494
fishere@butzel.com
haffey@butzel.com
seidelb@butzel.com

BUTZEL LONG, a professional corporation
Eric B. Fisher
Cynthia J. Haffey
Barry N. Seidel
380 Madison Avenue
22nd Floor
New York, New York 10017
Telephone: (212) 818-1110
Facsimile: (212) 818-0494

*Attorneys for Reorganized Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DPH HOLDINGS CORP., *et al.*, <br><br> Reorganized Debtors. | Chapter 11 <br><br> Case No. 05-44481 (RDD) <br> (Jointly Administered) |

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2011, a true and correct copy of the Reorganized Debtors' Omnibus Response to Motions For Relief From Fourth Order Extending Time to Serve Complaint, was served electronically through the Court's ECF system on all parties.

Dated: Detroit, Michigan  /s/ Alexis L. Richards
February 3, 2011  Alexis L. Richards

16