# EXHIBIT C

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 05-44481-rdd

- - - - - - - - - - - - - - - - - - - -x


In the matter of:


DPH HOLDINGS CORP., et al.,


          Reorganized Debtors.


- - - - - - - - - - - - - - - - - - - -x


          United States Bankruptcy Court

          One Bowling Green

          New York, New York


          April 1, 2010

          10:44 AM


B E F O R E:

HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE

```
                                                                    2

 1
 2    HEARING re Reorganized Debtors' Emergency Motion for Order
 3    Under Section 105(a) of the Bankruptcy Code, Fed. R. Bankr. P.
 4    7004(a) and 9006(b)(1) and Fed. R. Civ. P. 4(m) Extending
 5    Deadline to Serve Process for Certain Avoidance Actions
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25    Transcribed by:  Lisa Bar-Leib
```

05-44481-rdd    Doc 21102-3    Filed 02/03/11    Entered 02/03/11 14:00:02    Errata C
Pg 4 of 7

```
                                                              60
 1   also?
 2             THE COURT:  Sorry?
 3             MS. CALTON:  The German Valeo.
 4             THE COURT:  Oh, yes.  They're not in the same
 5   complaint but I'm --
 6             MS. CALTON:  Yeah.
 7             THE COURT:  -- including them in the Affinia group of
 8   objectors --
 9             MS. CALTON:  Okay.
10             THE COURT:  -- represented by Honigman Miller.
11             The history of this motion is somewhat lengthy and, I
12   believe, ultimately not particularly relevant to the present
13   motion for reasons I'll explain.  But it is relevant in one key
14   respect.  The Delphi debtors, like all Chapter 11 debtors, had
15   a two-year limitations period post-petition, under Section 546
16   of the Bankruptcy Code, to bring actions to avoid preferences,
17   fraudulent transfers and the like.  Faced with that impending
18   deadline and with an analysis that showed in excess of 11,000
19   potential recipients of avoidable transfers, the debtors, with
20   their -- in consultation with their official creditors'
21   committee, determined to seek an order that would allow the
22   debtors to preserve these causes of action notwithstanding the
23   running of is statute of limitations or to -- in light of the
24   statute of limitations running -- excuse me -- but delay the
25   issuance of summonses by the clerk of the court and staying any
```

VERITEXT REPORTING COMPANY
212-267-6868                                              516-608-2400

61

1  activity in the adversary actions commenced until service of
2  process and extending the deadline under Federal Rule 4(m) by
3  which the debtors would have to serve process.
4      The Court granted that request by order dated August
5  16th, 2007. Notwithstanding the number of adversary --
6  potential adversary proceedings they could bring, the debtor
7  actually brought only 742 within the statute of limitations
8  period. It, even with respect to those 742, did not actively
9  seek, as would have been required by the August 16th, 2007
10 order, to have the summonses issued and proceedings become live
11 and active for two reasons. The first, which applied at the
12 time the original motion was entered and continued for some
13 time, was the good faith belief shared by all parties in the
14 case that the debtors were on track to confirm and consummate a
15 Chapter 11 plan that would have paid unsecured creditors in
16 full or with at least sufficient value so that it would have
17 made no sense to have actually pursued the avoidance actions or
18 to have caused the defendants in those actions to incur any
19 cost in response. That situation pertained at least until
20 April of 2008. In the meantime, the Court had entered an
21 extension (sic), in light of that fact, granting a further
22 extension of the time to serve without prejudice to the
23 debtors' rights to seek further extension.
24      In April of 2008, the investors under the debtors'
25 confirmed Chapter 11 plan announced their intention not to

62

1  close their investment under that plan. It was not clear at
2  the time whether they could nevertheless be forced to close or
3  whether the debtors' monetary claims against them would force
4  them to close as a practical matter. In light of that
5  uncertainty, the debtors sought another deadline which was
6  granted in a second extension order dated April 30th, 2008 of
7  the time to serve 742 complaints.
8      It became clear during the course, the remaining
9  course of 2008, that the plan investors were not going to close
10 the plan or a closely similar modified plan and, instead, the
11 debtors turned their attention to a new plan. During this
12 period, the debtors also narrowed down the number of potential
13 proceedings that they determined to pursue but delayed the
14 prosecution of to 177. The rationale for -- or the primary
15 rationale for the prior extension orders and the original
16 preservation order in delaying service at that time, i.e., that
17 the pursuit of such action might not, in fact, benefit the
18 estate because it was likely that creditors would receive a
19 hundred cents or close to a hundred cents on the dollar no
20 longer applied. However, the debtors concluded that even with
21 respect to the 177 claims, there may not be a sufficient basis
22 to pursue those claims actively and force any parties to incur
23 additional cost in respect thereto.
24     Frankly, by that point in the case, and we're now
25 focusing on the fall of 2009, it was not clear whether the

63

1  debtors had sufficient funds to even conduct their case let
2  alone pursue adversary proceedings. And the specter of
3  conversion to Chapter 7 where a Chapter 7 trustee would be
4  pursuing the proceedings was quiet real. Consequently, the
5  debtors sought, and the Court granted, a third extension motion
6  extending a deadline under Federal Rule 4(m) to April 5, 2010.
7  And that order was issued October 2, 2009.
8       As I noted at the beginning of my ruling, when this
9  motion was filed, the present motion before me, there were
10 sixty-two adversary proceedings where the debtor was concerned
11 that service might not be completed by April 5th. Presently,
12 it appears that there are forty-two, thirty of which fall into
13 the category of foreign defendant proceedings.
14      There is, and always has been, an issue as to whether
15 any deadline for service applies with respect to the foreign
16 corporate defendants because such an issue exists, however.
17 And as for the existence of the issue, see In re Harnischfeger
18 Industries, Inc., 288 B.R. 79, 86 (Bankr. D. Del. 2003). The
19 debtors, exercising, I think, proper discretion to try to avoid
20 any question about the issue, obtained an extension under
21 Section 4(m), thus avoiding, as far as through the date of the
22 extension, any issue that the complaint should be dismissed for
23 failure to serve within an applicable deadline.
24      The debtors, when posed with this question now as to
25 whether there is, in fact, a deadline, have taken the position