**Hearing Date And Time:  February 18, 2011 at 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
   Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                             :
      In re                      :    Chapter 11
                             :
DPH HOLDINGS CORP., et al.,   :    Case No. 05-44481 (RDD)
                           :
                           :    (Jointly Administered)
           Reorganized Debtors.    :
                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REORGANIZED DEBTORS' OBJECTION TO MOTION OF OHIO BUREAU OF WORKERS' COMPENSATION TO (I) DEEM CLAIM TIMELY FILED OR, ALTERNATIVELY, (II) AUTHORIZE THE AMENDMENT OF CLAIM, OR (III) PERMIT LATE FILED CLAIM

### ("OBJECTION TO OHIO BUREAU OF WORKERS' COMPENSATION'S MOTION TO FILE LATE CLAIM")

DPH Holdings Corp. ("DPH Holdings") and its affiliated reorganized debtors in

the above-captioned cases (together with DPH Holdings, the "Reorganized Debtors"), successors

of Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, former debtors and

debtors-in-possession (collectively, the "Debtors"), hereby object to the Motion Of Ohio Bureau

Of Workers' Compensation To (I) Deem Claim Timely Filed Or, Alternatively, (II) Authorize

The Amendment Of Claim, Or (III) Permit Late Filed Claims (Docket No. 21083) (the "Motion"),

dated January 24, 2011, filed by the Ohio Bureau of Workers' Compensation (the "Bureau"), and

respectfully represent as follows:

Preliminary Statement

1.    On or before June 20, 2009, the Debtors caused the Notice Of Bar Date

For Filing Proofs Of Administrative Expense (the "June 2009 Notice") to be served on the

Bureau.  The June 2009 Notice stated that July 15, 2009, was the deadline for asserting an

administrative expense claim for the period from the commencement of these chapter 11 cases

through June 1, 2009 (the "Initial Administrative Claim Bar Date").  In addition, on or before

October 9, 2009, the Reorganized Debtors caused the notice of Effective Date[1] to be served on

the Bureau (the Effective Date Notice, together with the June 2009 Notice, the "Notices") which,

among other things, provided notice of the November 5, 2009, deadline for filing Administrative

Claims arising on or after June 1, 2009 (the "Final Administrative Claim Bar Date," and together

with the Initial Administrative Claim Bar Date, the "Administrative Claim Bar Dates").  The

Bureau does not dispute that it received the Notices and that it had actual knowledge of the

Administrative Claim Bar Dates.  Nevertheless, more than eighteen months after the Initial

Administrative Claim Bar Date and more than fourteen months after the Final Administrative

---

[1]    Capitalized terms not defined in this Preliminary Statement are defined below.

Claim Bar Date, the Bureau now seeks to pursue claims for postpetition workers' compensation assessments in an unliquidated amount that will continue to accrue indefinitely into the future (the "Administrative Claim").

2.      The Bureau has now requested, in the alternative, that the Administrative Claim, either should be (i) deemed timely under the informal proof-of-claim doctrine, (ii) permitted as a post-bar date amendment to the Proof of Claim, or (iii) permitted because the Bureau's failure to file the Administrative Claim prior to the Administrative Claim Bar dates was the result of excusable neglect.  The Bureau's argument as to why the Court should permit the Bureau to pursue the Administrative Claim can be distilled down to the following: the Bureau—relying on an Ohio bankruptcy court decision that expressly was not intended for publication or citation—believed that filing its prepetition proof of claim—which makes no reference to any postpetition workers' compensation assessments—was sufficient to assert an administrative expense claim against the Debtors, despite this Court's orders to the contrary.  The Bureau has not, and cannot, present any evidence that would justify the relief sought in the Motion.  The Bureau is, therefore, forever barred, estopped, and enjoined from asserting the Administrative Claim against the Debtors or the Reorganized Debtors.  (See Modification Procedures Order ¶ 38; Modified Plan § 10.5; Modification Approval Order ¶ 47.)  Accordingly, the Motion should be denied.

<u>Background</u>

3.      On October 8 and 14, 2005 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").

4.      On December 27, 2005, the Bureau filed proof of claim number 1294 (the "Proof of Claim") against Delphi.  The Proof of Claim asserted a prepetition unsecured priority

claim in the amount of $24,732,628.02 stemming from amounts allegedly owed in connection with workers' compensation assessments.[2]

5.    On June 22, 2009, the Debtors objected to the Proof of Claim pursuant to the Debtors' Thirty-Fourth Omnibus Objection Pursuant To 11. U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To (I) Expunge (A) Certain Pension And OPEB Claims, (B) Certain Individual Workers' Compensation Claims, (C) Certain Duplicate And/Or Amended Individual Workers' Compensation Claims, (D) Certain Untimely Individual Workers' Compensation Claims, (E) A Secured Books And Records Claim, And (F) Certain Untimely Claims, (II) Modify Certain (A) Wage And Benefit Claims, (B) State Workers' Compensation Claims, And (C) Individual Workers' Compensation Claims Asserting Priority, (III) Provisionally Disallow Certain Union Claims, And (IV) Modify And Allow Certain Settled Claims (Docket No. 17182) (the "Thirty-Fourth Omnibus Claims Objection").  The Debtors objected to the Bureau's classification of the Proof of Claim and sought to modify the Proof of Claim to a prepetition general unsecured claim.[3]

6.    On July 16, 2009, the Bureau filed the Ohio Bureau Of Workers' Compensation's Response To Debtors' Thirty-Fourth Omnibus Objection To Claims (Docket No. 18346), asserting that the Proof of Claim should be classified as a priority claim.

---

[2]    Although the Proof of Claim actually references the Debtors' obligation to pay workers' compensation "premiums," it is the Reorganized Debtors' understanding that the Proof of Claim actually relates only to workers' compensation assessments applicable under the same Ohio statute.  The Debtors' operated as self-insurers in Ohio and, as a result, were not obligated to pay workers' compensation insurance premiums.

[3]    The Bureau suggests in the Motion that "the Reorganized Debtors did not contest that the Claim was one for priority taxes under section 507(a)(8)(E) of the Bankruptcy Code."  (Motion ¶ 17.)  This is incorrect.  In addition to the Debtors' explicit objection to priority treatment in the Thirty-Fourth Omnibus Claims Objection, the Reorganized Debtors expressly reserved their rights to contest priority treatment in footnote 5 of their Second Supplemental Reply Regarding Claim Filed Ohio Bureau Of Workers' Compensation (defined below) and on the record at the subsequent hearing (Hr'g Tr. 35:17-36:13, Dec. 16, 2010).

7.      On July 30, 2009, this Court entered its Order Approving Modifications Under 11 U.S.C. § 1127(b) To (I) First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified And (II) Confirmation Order (Docket No. 12359) (Docket No. 18707) (the "Modification Approval Order"), which approved the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified (the "Modified Plan").

8.      On October 6, 2009 (the "Effective Date"), the Debtors substantially consummated the Modified Plan and closed the transactions under the Master Disposition Agreement, dated as of July 30, 2009, by and among Delphi, GM Components Holdings, LLC, General Motors Company, Motors Liquidation Company (f/k/a General Motors Corporation), DIP Holdco 3 LLC (which assigned its rights to DIP Holdco LLP, subsequently renamed Delphi Automotive LLP, a United Kingdom limited liability partnership), and the other sellers and buyers party thereto.  The Debtors emerged from chapter 11 as the Reorganized Debtors and remain responsible for the post-Effective Date administration of these chapter 11 cases, including the disposition of certain retained assets, the payment of certain retained liabilities as provided for under the Modified Plan, and the eventual closing of the cases.

9.      On December 6, 2010, the Reorganized Debtors filed their Supplemental Reply To Response Of Claimant To Debtors' Objection To Proof Of Claim Number 1294 Filed By Ohio Bureau Of Workers' Compensation (Docket No. 20977), seeking disallowance of the Proof of Claim because all prepetition workers' compensation assessments had been paid in full.

10.     On December 14, 2010, the Bureau filed the Response Of The Ohio Bureau Of Workers' Compensation To Reorganized Debtors' Supplemental Reply To Response Of Claimant To Debtors' Objection To Proof Of Claim Number 1294 Filed By Ohio Bureau Of Workers' Compensation (Docket No. 21003).

5

11.     On December 15, 2010, the Reorganized Debtors filed their Second Supplemental Reply To Supplemental Response Of Claimant To Debtors' Objection To Proof Of Claim Number 1294 Filed By Ohio Bureau Of Workers' Compensation (Docket No. 21008) (the "Second Supplemental Reply Regarding Claim Filed By Ohio Bureau Of Workers' Compensation").

12.     On December 16, 2010, the Court held a hearing to address the legal sufficiency of the Proof of Claim.  After hearing argument from the Reorganized Debtors and the Bureau, the court ruled that the Proof of Claim was disallowed without prejudice to the Bureau's right to seek further relief under Federal Rule of Bankruptcy Procedure 9006.  (Hr'g Tr. 47:1-2, Dec. 16, 2010.)

13.     On December 20, 2010, the Court entered its Order Pursuant To 11 U.S.C. § 503(b) And Fed. R. Bankr. P. 3007 Disallowing And Expunging Proof Of Claim Number 1294 Filed By Ohio Bureau Of Workers' Compensation (Docket No. 21027).  The Bureau did not appeal.

14.     On January 24, 2011, more than eighteen months after the Initial Administrative Claim Bar Date and more than fourteen months after the Final Administrative Claim Bar Date, the Bureau filed the Motion advancing three arguments for why the Bureau believes it should be permitted to pursue the late Administrative Claim.  Specifically, the Bureau argues that the Administrative Claim should be either (i) deemed timely under the informal proof-of-claim doctrine, (ii) permitted as a post-bar date amendment to the Proof of Claim, or (iii) permitted because the Bureau's failure to file the Administrative Claim prior to the Administrative Claim Bar dates was the result of excusable neglect.

B.    The Bar Dates and Deadlines for Asserting Claims

15.    Bar Date for § 503(b) Claims Arising Through June 1, 2009. On June 16, 2009, this Court entered the Order (A)(I) Approving Modifications To Debtors' First Amended Plan Of Reorganization (As Modified) And Related Disclosures And Voting Procedures And (II) Setting Final Hearing Date To Consider Modifications To Confirmed First Amended Plan Of Reorganization And (B) Setting Administrative Expense Claims Bar Date And Alternative Transaction Hearing Date, entered by this Court on June 16, 2009 (Docket No. 17032) (the "Modification Procedures Order") which, among other things, authorized the Debtors to commence solicitation of votes on the Modified Plan, established July 15, 2009, as the Initial Administrative Claim Bar Date, [4] and included a form to be used to submit an administrative expense claim (an "Administrative Claim Form").[5] Accordingly, paragraph 38 of the Modification Procedures Order provided that:

> Any party that wishes to assert an administrative claim under 11 U.S.C. § 503(b) for the period from the commencement of these cases through June 1, 2009 shall file a proof of administrative expense (each, an "Administrative Expense Claim Form") for the purpose of asserting an administrative expense request, including any substantial contribution claims (each, an "Administrative Expense Claim" or "Claim") against any of the Debtors.  July 15, 2009 at 5:00 p.m. prevailing Eastern time shall be the deadline for submitting all Administrative Expense Claims (the "Administrative Expense Bar Date") for the period from the commencement of these cases through June 1, 2009.

---

[4]    The Initial Administrative Claim Bar Date was established pursuant to paragraph 38 of the Modification Procedures Order.  On July 15, 2009, this Court entered the Stipulation And Agreed Order Modifying Paragraph 38 Of Modification Procedures Order Establishing Administrative Expense Bar Date (Docket No. 18259) to provide that paragraph 38 of the Modification Procedures Order should be amended to require parties to submit an Administrative Claim Form (as defined below) for Administrative Claims for the period from the commencement of these cases through May 31, 2009, rather than through June 1, 2009.

[5]    On June 20, 2009, in accordance with the Modification Procedures Order, the Debtors caused Kurtzman Carson Consultants LLC ("KCC") and Financial Balloting Group LLC or their agents to transmit notices containing certain procedures for asserting an Administrative Claim and a copy of the Administrative Claim Form.

(Modification Procedures Order ¶ 38.)  In addition, paragraph 41 of the Modification Procedures

Order provides that:

> Any party that is required but fails to file a timely Administrative
> Expense Claim Form shall be forever barred, estopped and
> enjoined from asserting such claim against the Debtors, and the
> Debtors and their property shall be forever discharged from any
> and all indebtedness, liability, or obligation with respect to such
> claim.

(Id. at ¶ 41.)

16.    On or before June 20, 2009, the Debtors, through KCC, the claims and

noticing agent in these chapter 11 cases, served the Bureau with a copy of the June 2009 Notice

by first class mail at the following address:

> Ohio Bureau of Workers Compensation
> Law Section Bankruptcy Unit
> 30 W Spring St
> PO Box 15567
> Columbus, OH 43215-0567

See Affidavit Of Service Of Evan Gershbein For Solicitation Materials Served On Or Before

June 20, 2009, dated June 23, 2009 (Docket No. 17267), the relevant portions of which are

attached hereto as Exhibit A.

17.    Bar Date for § 503(b) Claims Arising after June 1, 2009.  Paragraph 47 of

the Modification Approval Order provides in part:

> [R]equests for payment of an Administrative [Expense] Claim
> (other than as set forth in the Modified Plan or otherwise
> contemplated by the Master Disposition Agreement, i.e., for such
> claims arising on or after June 1, 2009) must be filed, in
> substantially the form of the Administrative Claim Request Form
> attached as Exhibit 10.5 to the Modified Plan, with the Claims
> Agent and served on counsel for the Debtors and the Creditors'
> Committee no later than 30 days notice of after the Effective Date
> is filed on the docket of the Chapter 11 Cases.  **Any request for
> payment of an Administrative Claim pursuant to this
> paragraph that is not timely filed and served shall be**

8

**disallowed automatically** without the need for any objection from
the Debtors or the Reorganized Debtors.

(Modification  Approval Order ¶ 47 (emphasis added).)

18.    In compliance with paragraph 47 of the Modification Approval Order, the

Notice Of (A) Order Approving Modifications To First Amended Joint Plan Of Reorganization

Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession And (B)

Occurrence Of Effective Date (Docket No. 18958) (the "Effective Date Notice") was filed with

this Court on October 6, 2009.  Upon the occurrence of the Effective Date on October 6, 2009,

the Final Administrative Claim Bar Date was recognized as November 5, 2009.  As set forth

above, paragraph 47 of the Modification Approval Order provides that any administrative claim

for which a party has failed to timely file and serve a request for payment is automatically

disallowed without the need for any objection from the Debtors or the Reorganized Debtors.

19.    On or before October 9, 2009, KCC served the Bureau by first class mail

with a copy of the Effective Date Notice (at the address set forth in the creditor matrix), which,

among other things, provided notice of the Final Administrative Claim Bar Date at the following

address:

> Ohio Bureau of Workers Compensation
> Law Section Bankruptcy Unit
> 30 W Spring St
> PO Box 15567
> Columbus, OH 43215-0567

See Affidavit Of Service Of Evan Gershbein For Notice Of Effective Date Materials Served On

Or Before October 9, 2009, dated October 14, 2009 (Docket No. 18978), the relevant portions of

which are attached hereto as Exhibit B.

20.    Moreover, notice of the Final Administrative Claim Bar Date was also

published in The New York Times, USA Today (national and international editions), and The

Wall Street Journal (national and global editions). (See Affidavits of Publication at Docket Nos. 18990, 18989, and 19001.)

Argument

C.    The Bureau Received Notice of Administrative Claim Bar Dates

21.    As a preliminary matter, the Bureau does not dispute that it received the Notices setting forth the Administrative Claim Bar Dates. As discussed above, the Debtors provided adequate service of the June 2009 Notice and the Effective Date Notice. Courts uniformly presume that an addressee receives a properly mailed item when the sender presents proof that it is properly addressed, stamped, and deposited in the mail. See, e.g., Hagner v. U.S., 285 U.S. 427, 430 (1932) ("The rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed."). The Bureau was, therefore, obligated to file any administrative expense claims before the applicable Administrative Claim Bar Dates, in accordance with the procedures referenced in the Modification Procedures Order and Modification Approval Order, or be barred, estopped, and enjoined from asserting those claims against the Reorganized Debtors. Accordingly, this Court should deny the Motion.

D.    The Proof of Claim Does Not State a Claim for Postpetition Administrative Expenses

(a)    The Proof of Claim Is Not an Informal Proof of Administrative Expense Claim

22.    The Bureau begins its argument by requesting that the Court deem the Proof of Claim to be a timely filed administrative expense claim. To qualify as an informal proof of claim, the Proof of Claim "must have (1) been timely filed with the bankruptcy court and have become part of the judicial record, (2) state the existence and nature of the debt, (3) state the amount of the claim against the estate, and (4) evidence the creditor's intent to hold the debtor liable for the debt." In re Enron Creditors Recovery Corp., 370 B.R. 90, 99 (Bankr.

10

S.D.N.Y. 2007) (citing Houbigant, Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.), 190 B.R.

185, 187 (Bankr. S.D.N.Y. 1995)).  The Motion does not, and cannot, explain how the Proof of

Claim satisfies these factors.

    23.  Instead, the Bureau contends that it chose to "file[] its Claim as a pre-

petition priority tax claim in reliance on Ohio case law."  (Motion ¶ 23.)  In support of this

assertion, however, the Bureau cites only to an unpublished opinion by the U.S. Bankruptcy

Court for the Northern District of Ohio, In re Belden Locker Co., No. 06-60316, 2008 WL

762243 (Bankr. N.D. Ohio Mar. 21, 2008).  To be sure, the Bureau could not have relied on

Belden Locker when it filed the Proof of Claim because that case was not decided until more

than two years later.

    24.  The Bureau goes on to state, in conclusory fashion, that "there is no

question that the [Proof of Claim] satisfies the requirements for a deemed filed informal

administrative expense claim [because it] is a writing, filed with the Court, which specifies the

existence and nature of [the Bureau's] claim, and makes it clear that [the Bureau] holds the

Debtors liable for the workers' compensation assessments."  (Motion ¶ 26.)  A review of the

Proof of Claim, however, reveals that it falls well short of establishing an informal claim for

administrative expenses.  Although the Proof of Claim was filed prior to the Administrative

Claim Bar Dates, the Proof of Claim does not satisfy the final three requirements for an informal

proof of claim.  Nowhere does the Proof of Claim state that the Bureau may be entitled to

payment of an administrative expense, or that the Bureau is asserting a claim for any postpetition

assessments.  Not once does the Bureau indicate that the Proof of Claim includes any contingent

liabilities or an estimate of future assessments.  Nor does the Proof of Claim even hint at the

Bureau's intent to hold the Debtors liable for postpetition assessments.

25.    In fact, the Proof of Claim does not even mention assessments, but instead references the Debtors' obligations to pay workers' compensation premiums[6]—as a self-insurer, the Debtors were never obligated to pay premiums.  Attached to the Proof of Claim is a spreadsheet that lists various amounts for years 2001 through 2005 and indicates that the total amount of the claim is $24,732,628.02.[7]  The Reorganized Debtors do not know, nor has the Bureau explained, how these amounts were derived.  In any event, the Proof of Claim fails to evidence any claim for payment of postpetition workers' compensation assessments, let alone with the degree of specificity necessary to establish an informal proof of claim.  See In re L.F. Rothschild Holdings, Inc., 143 B.R. 335, 336 (S.D.N.Y. 1992) ("Where an informal proof of claim has been accepted, it has been required to contain a specific demand setting forth the amount and nature of the debt and the intent to hold the debtor liable." (citing In re Nutri*Bevco, Inc., 117 B.R. 771, 789 (Bankr. S.D.N.Y. 1990)).

26.    In the absence of any mention of postpetition workers' compensation assessments in the Proof of Claim, the Bureau seems to be relying on the mere existence of a claim for prepetition workers' compensation assessments as evidence of the Bureau's intent to hold the Debtors liable for all future assessments.  As discussed in greater detail below, and as

---

[6]    In the context of premium payments, the Proof of Claim cites OHIO REV. CODE ANN. § 4123.35, which also relates to the payment of workers' compensation assessments.  As described below, the spreadsheet attached to the Proof of Claim references an Ohio Administrative Code Rule, which also relates to assessments.  But mere citation to these provisions, without more, cannot be relied on to transform the prepetition Proof of Claim into an informal claim for administrative expenses.  See Enron Creditors Recovery, 370 B.R. at 99 ("Merely referencing [an] agreement . . . in [a proof of claim] does not evidence an intention to hold Enron liable for the debt.").

[7]    Near the total amount on the spreadsheet, the Bureau includes a reference to "Ohio Administrative Code Rule 4123-17-32(G) declining balance factor."  Ohio Administrative Code Rule 4123-17-32(G) provides that "[a]n employer who no longer is a self-insuring employer in Ohio or who no longer is operating in this state shall continue to pay assessments for administrative costs and for the portion of the surplus fund that is mandatory," and sets forth multiples for determining such rates in a given year.  Thus, the rule establishes alternative assessment rates for certain classes of employers.  At the time the Proof of Claim was filed, however, this rule was inapplicable to the Debtors, who continued to operate as self-insured employers through the Effective Date of the Modified Plan.

previously recognized by this Court, each year that assessments are levied represents a separate

claim.  The Bureau cannot demonstrate its intent to hold the Debtors liable for postpetition

assessments based solely on allegations of the Debtors' knowledge of the claim for prepetition

assessments in the Proof of Claim.  In re Manville Forest Prods Corp., 89 B.R. 358, 377 (Bankr.

S.D.N.Y. 1988) ("Debtor's mere knowledge of the creditor's claim has never been held to be

sufficient to constitute an informal proof of claim."); see also United States v. Int'l Horizons, Inc.

(In re Int'l Horizons, Inc.) 751 F.2d 1213, 1217 (5th Cir. 1985) ("[M]ere notice of a claim alone

is not to be called an informal proof of claim and does not excuse the absence of a proper timely

proof as the law requires.  An informal claim may be asserted, if it can be at all, only when it is

apparent that the creditor intends to seek recovery from the estate and when the informal proof of

claim is 'filed' prior to the bar date."); Wilkens v. Simon Bros., 731 F.2d 462, 465 (7th Cir. 1984)

("The general rule is that a claim arises where the creditor evidences an intent to assert its claim

against the debtor.  Mere knowledge of the existence of the claim by the debtor, trustee or

bankruptcy court is insufficient.").[8]

27.     Accordingly, the Proof of Claim does not satisfy the requirements to

establish an informal administrative expense claim for postpetition workers' compensation

assessments.

(b)     The Proof of Claim Fails to Comply with the Modification Procedures Order

28.     The Modification Procedures Order also undercuts the Bureau's reliance

on the Proof of Claim as a basis to assert the Administrative Claim against the Reorganized

Debtors.  The Modification Procedures Order expressly provided that creditors would be entitled

---

[8]     At a minimum, the Bureau could have stated in the Proof of Claim that workers' compensation assessments
would continue to accrue after the Petition Date and reserved the right to amend the Proof of Claim to include
the liquidated amount of any postpetition assessments.

13

to rely on an existing proof of claim, and would not be required to file a subsequent administrative expense claim prior to the Administrative Claim Bar Dates, so long as "such proof of claim <u>clearly and unequivocally</u> sets forth that such claim is made for an administrative expense priority."  (Modification Procedures Order ¶ 39 (emphasis added).)  As discussed above, the Proof of Claim contains nothing that approaches a clear and unequivocal assertion of an administrative expense claim.  Consequently, the Bureau clearly was on notice that it was required to file an administrative expense claim prior to the Administrative Claim Bar Dates to preserve any claim for unpaid postpetition assessments and that it could not rely on the Proof of Claim.  Having failed to so, any such claim is now barred.

E.      <u>Circuit Precedent Does Not Permit the Bureau to Amend Its Prepetition Proof of Claim to Include Postpetition Administrative Expenses</u>

29.      Alternatively, the Bureau argues that if the Proof of Claim is not deemed to constitute an administrative expense claim for postpetition expenses, then the Bureau should be permitted to amend the Proof of Claim to include the Administrative Claim.  At the outset, the Reorganized Debtors' note that this Court previously disallowed and expunged the Proof of Claim in its entirety pursuant to its December 20, 2010, order (Docket No. 21027).  The Bureau did not appeal that order.  Thus, the Reorganized Debtors do not believe that the Bureau can resuscitate the Proof of Claim.  There is no claim left to amend.  Allowing the Bureau to amend the Proof of Claim would circumvent the Court's prior order and would open the door for other creditors whose claims have been disallowed to seek the same relief.

30.      Nevertheless, even if the Bureau is able to seek amendment of the Proof of Claim, the proposed amendment is not permitted.  As set forth in <u>Midland Cogeneration Venture Limited Partnership v. Enron Corp.</u> (In re Enron Corp.), 419 F.3d 115 (2d Cir. 2005), a "two-step inquiry" determines whether a claimant can amend a timely claim after the applicable bar date.

14

In that case, the Second Circuit directed that "the court must subject post bar date amendments to careful scrutiny to assure that there was no attempt to file a new claim under the guise of an amendment." Id. at 133 (internal quotations omitted).  The Bureau's proposed amendment does not pass this careful scrutiny.

        (a)      Step One: Administrative Claim Does Not Relate Back to the Proof of Claim

        31.      The first step is to "examine whether there was [a] timely assertion of a similar claim or demand evidencing an intention to hold the estate liable." Id. (internal quotations omitted) (alteration in original).  To meet this requirement, the amendment must be one that "corrects a defect of form in the original claim," "describes the original claim with greater particularity," or "pleads a new theory of recovery on the facts set forth in the original claim." Id. (internal quotations omitted).

        32.      The Bureau offers little in support of the first prong of the two-part test, arguing only that "the amended claim stems from the same assessments for the same injuries that form the factual basis of the Claim."  (Motion ¶ 31.)  But this argument was already addressed by the Court in connection with the Reorganized Debtors' objection to the Proof of Claim.  As the Court explained at the hearing, the Bureau's claim for postpetition assessments arises from the Bureau's own administrative costs for the previous calendar year, and not from previous assessments or injuries:

> [T]he payment of [employees' workers' compensation] claims is not the injury that's the basis for this claim.  The basis for this claim is the administrative costs incurred by the bureau for that particular year, which is wholly postpetition. . . . My focus really needs to be on the injury, in other words, and when that accrued.  And here I believe . . . the accrual of the claim or the tax or the injury is, again, the administrative costs incurred by the bureau for the year.

(Hr'g Tr. 44:4-8, 17-22, Dec. 16, 2010.)

33.     The Court also reached a similar conclusion on nearly identical facts when it denied the Michigan Funds Administration's request to amend its timely filed administrative expense claim to include additional future postpetition workers' compensation assessments. (Hr'g Tr. 60:10-61:16, Aug. 27, 2010.)  There, the Court found that the proposed amendment was "on the face of the claims, and under the law, clearly a new claim for a new year and not based on the facts of the assessment set forth in the [original] claim."  (Id. at 60:10-14.)  In particular, the Court reasoned that claims for workers' compensation assessments "should be treated as separate claims if they are based upon annual calculations as these claims are" unless there is a "clear reservation of rights or assertion of an unliquidated contingent claim for the future set forth in the original proof of claim."[9]  (Id. at 60:19-23.)

34.     The Court's approach—treating assessment claims for different years as new, separate claims that do not relate back to an earlier claim for purposes of amendment—is consistent with the approach adopted by the majority of courts considering the issue.[10]  In re

---

[9]     The Bureau's proposed amendment of the Proof of Claim is even more dubious than the Michigan Funds Administration's proposed amendment because the Administrative Claim is materially different in kind from the Proof of Claim.  The Michigan Funds Administration sought to amend its timely filed administrative expense claim to include additional administrative expenses for future years.  The Bureau's proposed amendment, on the other hand, would improperly bestow administrative-priority status upon what otherwise would have been a general unsecured claim.  See In re Alliance Operating Corp., 60 F.3d 1174, 1175-77 (5th Cir. 1995) (holding that claimant who filed general unsecured claim for workers' compensation premiums was not entitled to amend claim to include postpetition workers' compensation premiums because, among other things, "amendments to proofs of claim that change the nature of the claim from an unsecured status to a priority status set forth a new claim").  As the Court noted at the December 16, 2010, hearing, it is questionable whether the type of workers' compensation assessments asserted in the Proof of Claim would qualify as excise taxes entitled to priority treatment.  (Hr'g Tr. 36:14-20, 42:21-25, Dec. 16, 2010.)

[10]    As the Reorganized Debtors have previously noted, courts adhering to this majority approach include both the Fifth Circuit, United States v. Waindel (In re Waindel), 65 F.3d 1307, 1311-12 (5th Cir. 1995), and the Seventh Circuit, In re Stavriotis, 977 F.2d 1202, 1206 n.4 (7th Cir. 1992); In re Unroe, 937 F.2d 346, 349 (7th Cir. 1991), as well as district courts and bankruptcy courts in the Second Circuit, In re PT-1 Commc'ns, Inc., 292 B.R. 482, 487 (Bankr. E.D.N.Y. 2003), the Third Circuit, In re Cont'l Airlines, Inc., 183 B.R. 698, 699 (D. Del. 1995); In re Blue Coal Corp., 166 B.R. 816, 821 (M.D. Pa. 1993); United States v. Owens, 84 B.R. 361, 363 (E.D. Pa. 1988), the Fourth Circuit, United States v. Roberson, 188 B.R. 364, 365-66 (D. Md. 1995); In re Rains, 139 B.R. 158, 159-60 (Bankr. D. Md. 1992), the Sixth Circuit, In re Chavis, 160 B.R. 804, 806 (Bankr. S.D. Ohio 1993), aff'd, 47 F.3d 818 (6th Cir. 1995); In re Johnson, 84 B.R. 492, 494 (Bankr. N.D. Ohio 1988), aff'd, 901 F.2d 513

*(cont'd)*

Gilley, 288 B.R. 901, 905 (Bankr. M.D. Fla. 2002) ("With regard to the threshold issue of whether an amendment to a proof of claim to add a different tax period can relate back to the originally filed claim, the majority of courts conclude that different years give rise to different claims."); Blue Coal Corp., 166 B.R. at 821 ("We are compelled to agree with the majority of cases and . . . conclude that a tax claim for one year is as dissimilar to a tax claim for another year as it might be to a vehicular accident with a government vehicle.").  The few cases where courts have allowed amendments to include subsequent tax periods have turned on the continuous nature of the taxes at issue—for example, certain employment-related taxes—that "accumulate as they accrue."  In re Sage-Dey, Inc., 170 B.R. 46, 50-51 (Bankr. N.D.N.Y. 1994) (permitting post-bar date amendment for quarterly assessed FICA taxes); see also, e.g., Industrial Comm'r v. Schneider, 162 F.2d 847, 848-49 (2d. Cir. 1947) (permitting post-bar date amendment for quarterly assessed taxes levied under state law where "computation of the amounts due as contributions from employers under the statute depended upon factors which continued constant irrespective of quarterly periods").

35.     The workers' compensation assessments at issue here that comprise the Administrative Claim are not continuous in nature.  Rather, the assessments are levied on a yearly basis and accrue annually.  OHIO REV. CODE ANN. § 4123.35(J).  The assessments are based on both the individual self-insurer's total workers' compensation payments for the prior year and the aggregate yearly payments made by all self-insurers.  Id.  Moreover, the Proof of Claim contains no clear reservation of rights or contingent claim for postpetition assessments.

_____

*(cont'd from previous page)*

(6th Cir. 1990), the Eighth Circuit, United States v. Baker (In re Baker), 129 B.R. 607, 608 (E.D. Mo. 1991), the Tenth Circuit, Sunwest Hotel Corp. ex rel. Chequers Inv. Assocs. II v. Bd. of County Comm'rs of Reno County, Kan. (In re Sunwest Hotel Corp.), Nos. 92-40079-11, et al., 1998 WL 982905, at *9 (D. Kan. Sept. 29, 1998); In re Ltd. Gaming of Am., Inc., 213 B.R. 369, 373 (Bankr. N.D. Okla. 1997), and the Eleventh Circuit, Gilley, 288 B.R. at 905; In re Appling, 162 B.R. 43, 46 (Bankr. M.D. Ga. 1993).

Accordingly, the Bureau cannot show that the Administrative Claim relates back to the Proof of

Claim.  The Bureau's request to amend the Proof of Claim should, therefore, be denied.

       (b)     Step Two: It Would Be Inequitable to Allow the Amendment

       36.     No further analysis under the two-step test is necessary if the first step is

not satisfied.  In re Macmillan, Inc., 186 B.R. 35, 49 (Bankr. S.D.N.Y. 1995); Sage-Dey, Inc., at

49.  If the amendment satisfies the first step, however, and relates back to a claim filed before the

bar date, courts proceed to step two and "examine each fact within the case and determine

whether it would be equitable to allow the amendment."  Midland Cogeneration, 419 F.3d at 133

(internal quotations omitted).

       37.     As the Second Circuit noted, step two of the amended-claim analysis

"closely resembles" the standard for deciding whether a party's failure to file a timely claim was

the result of "excusable neglect" under Fed. R. Bankr. P. 9006(b)(1) and Pioneer Investment

Services Co. v. Brunswick Associates, L.P., 507 U.S. 380 (1993).  Midland Cogeneration, 419

F.3d at 133.  Accordingly, the equitable factors pertinent to both the Bureau's request to amend

the Proof of Claim and to file a late Administrative Claim on account of excusable neglect under

Pioneer are discussed together below.  As will be described, the balance of the equities weighs in

favor of the Reorganized Debtors.

F.     The Bureau Has Not Met Its Burden of Proof to Establish Excusable Neglect

       38.     The Bureau's final argument is that, if the Proof of Claim cannot be

amended or deemed to assert the Administrative Claim, then the Bureau's failure to file the

Administrative Claim in a timely matter was the result of excusable neglect.  As discussed above,

the Bureau received proper notice of the Administrative Claim Bar Dates.  The Bureau, therefore,

18

bears the burden to establish excusable neglect pursuant to Bankruptcy Rule 9006(b)(1).[11]  See

In re R.H. Macy & Co., 161 B.R. 355, 360 (Bankr. S.D.N.Y. 1993) ("the burden of proving

'excusable neglect' is on the creditor seeking to extend the bar date"); see also In re Dana Corp.,

No. 06-10354, 2007 WL 1577763, at *3 (Bankr. S.D.N.Y. May 30, 2007) (finding that the

excusable neglect analysis applies to administrative expense claims under section 503).  As this

Court previously observed, "given the practice of treating claims and disputes related to missed

bar dates for administrative claims the same way as the courts treat missed bar dates for pre-

petition claims, I find . . . those cases . . . to be appropriate here, and for all intents and purposes

on all fours."  (Hr'g Tr. 44-45, Aug. 27, 2009.)

        39.    Under Pioneer, courts must engage in a two-prong analysis.  Mich. Self-

Insurers' Security Fund v. DPH Holdings Corp. (In re DPH Holdings Corp.), 434 B.R. 77, 82

(S.D.N.Y. 2010) (citing Pioneer, 507 U.S. at 388, 395).  First, a creditor must first show that its

failure to file a timely claim was the result of "'neglect,' as opposed to willfulness or a knowing

omission."  Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 (I) Denying

United States Of America's Motion For Leave To File Late Claim And (II) Disallowing And

Expunging Proof Of Claim Number 16727, at Ex. A p. 2, Mar. 6, 2008 (Docket No. 12980)

(citing Pioneer, 507 U.S. at 387-88), aff'd Mar. 24, 2009 (Docket No. 16515).  Second, the

creditor "must show by a preponderance of the evidence that the neglect was 'excusable.'"  Id.

        40.    Under the present circumstances, it does not appear that the Bureau can

satisfy even the first prong of the Pioneer test.  Specifically, the Bureau argues that it failed to

file a timely administrative claim because it was relying instead on Belden Locker to pursue

---

[11]    Rule 9006(b)(1) provides that, "when an act is required or allowed to be done at or within a specified period . . .
the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the
specified period permit the act to be done where the failure to act was the result of excusable neglect."

claims for postpetition workers' compensation assessments. (Motion ¶¶ 23, 49.) Thus, the Bureau's failure to file a timely administrative expense claim was not the result of neglect at all, but was part of a willful, deliberate decision on the part of the Bureau.[12] While the Bureau may now regret its decision to rely on Belden Locker,[13] a calculated strategic decision—however imprudent—cannot support a claim of excusable neglect.

41.    Even if the Bureau were able to demonstrate that its failure to file an administrative expense claim was the result of neglect, the Bureau has not met its burden to establish that the neglect was excusable. In Pioneer, the Supreme Court examined four factors to determine whether a creditor's failure to file a claim by the bar date constituted excusable neglect: "[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." Id. at 395. Although the third factor of the Pioneer test—the reason for the delay—is often dispositive, in this case three factors weigh in favor of the Reorganized Debtors: the reason for the delay, the prejudice to the Reorganized Debtors, and the length of the delay. Accordingly, the Bureau cannot establish excusable neglect and the Motion should be denied.

(i)    Reason for the Delay

42.    In the Second Circuit, the reason for the delay is the most important factor and is often dispositive. See Midland Cogeneration, 419 F.3d at 122-24; In re Musicland Holding

---

[12]    In similar circumstances, the Second Circuit has recognized that willfulness does not necessarily entail a showing of bad faith or wrongful conduct. Gucci Am., Inc. v. Gold Ctr. Jewelry, 158 F.3d 631, 634-35 (2d. Cir. 1998). Rather, it is sufficient that the Bureau knew about the Administrative Claim Bar Dates and chose not to file an administrative expense claim. See id.

[13]    As discussed on the record at the December 16, 2010, hearing, Belden Locker was wrongly decided. (Hr'g Tr. 43:12-44:8, Dec. 16, 2010; see also Second Supplemental Reply Regarding Claim Filed Ohio Bureau Of Workers' Compensation ¶¶ 3-6.)

Corp., 356 B.R. 603, 608 (Bankr. S.D.N.Y. 2006) (noting that the Second Circuit emphasizes the

reason for the delay in determining excusable neglect). Indeed, the reason for the delay may be

the only factor that a court considers, as "the other factors are relevant only in close cases."

Williams v. KFC Nat'l Mgmt. Co., 391 F.3d 411, 415-16 (2d Cir. 2004).

43.    The Bureau first argues that its failure to file a timely administrative claim

was outside of its control due to its own mistaken reliance on Belden Locker.[14]  But to the extent

that the Bureau made a conscious decision to rely wholly on Belden Locker—even though the

case, by its own terms, was never intended for publication or citation, Belden Locker, 2008 WL

762243, at *1—and not to file an administrative expense claim, the responsibility for that

decision lies exclusively with the Bureau. Moreover, the Bureau's mistaken reliance on Belden

Locker does not demonstrate excusable neglect. It is widely accepted in this jurisdiction and in

others that "[l]egal mistakes are usually not considered excusable neglect." In re DPH Holdings

Corp., 434 B.R. at 85; see also Kyle v. Campbell Soup Co., 28 F.3d 928, 931-32 (9th Cir. 1994)

("[C]ounsel has not presented a persuasive justification for his misconstruction of nonambiguous

rules. Accordingly, there is no basis for deviating from the general rule that a mistake of law

does not constitute excusable neglect."); In re Singer Co., No. M-47, 2002 WL 10452, at *3

(S.D.N.Y. Jan. 3, 2002) ("Judge Lifland's decision that the Union's mistake as to the applicable

law was not excusable neglect is a reasonable one and one that this court will not disturb."); In re

Bushnell, 273 B.R. 359, 368-69 (Bankr. D. Vt. 2001) (citing string of cases from multiple

---

[14]    In the Motion, the Bureau also (incorrectly) attributes this mistake to the Debtors: "BWC (and for years, the
Debtors) erroneously thought that the Claim was properly classified as a pre-petition claim, not an
administrative expense claim."  To be clear, the Reorganized Debtors continue to believe—as discussed
above—that the Proof of Claim asserts only a prepetition claim because it makes no mention of any postpetition
obligations.  Neither the Debtors, nor the Reorganized Debtors, have ever "erroneously thought" that the Proof
of Claim included postpetition liabilities that would constitute an administrative expense claim.

jurisdictions supporting proposition that mistake of law does not meet the standard for establishing excusable neglect).

44.    The Bureau's reliance on the Supreme Court's decision in Krupski v. Costa Crociere S.p.A., 130 S. Ct. 2485 (2010), is inapposite here.  At issue in Krupski was the application of Federal Rules of Civil Procedure 15(c)(1)(C)(ii) regarding when an amended pleading relates back to the original pleading if the defendant added by the amendment "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Id. at 2489-90, 2493-96.  Even if  Krupski were somehow relevant to the relief sought in the Motion, it would not help the Bureau because there is no evidence to suggest that the Debtors knew or should have known about the Bureau's mistaken reliance on Belden Locker prior to the Administrative Claim Bar Dates.

45.    Accordingly, not only was the Bureau's mistake in relying on Belden Locker and not filing an administrative expense claim was entirely within the control of the Bureau, but the Bureau's mistaken interpretation of the law does not even provide valid reason to support a claim of excusable neglect.

46.    The Bureau's second argument is that the Bureau is not responsible for allegedly mischaracterizing the Administrative Claim because, had the Bureau not filed the Proof of Claim prior to the bar date for filing prepetition claims, the Debtors would have taken the view that the Administrative Claim was actually a prepetition claim and, therefore, untimely. (Motion ¶¶ 27, 32.)  This argument is without merit.  Unlike the Bureau, the Michigan Funds Administration filed a timely administrative expense claim for workers' compensation assessments.  The Reorganized Debtors did not argue that claim was a prepetition claim and, in fact, adhered to the same approach as they are now taking with the Bureau—that a claim for workers' compensation assessments accrues within the time period covered by the assessments.

22

(See generally Second Supplemental Reply Regarding Claim Filed By Michigan Funds Administration (Docket No. 20547).)  In addition to the Proof of Claim, the Bureau easily could have filed a timely administrative expense claim.  Only the Bureau is to blame for its failure to do so.

47.    Courts in the Second Circuit have "taken a hard line" in applying the Pioneer test and focus on the reason for the delay, including whether it was within the reasonable control of the movant.  Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 368 (2d Cir. 2003).  "[T]he equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule [and] where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the Pioneer test."  Midland Cogeneration, 419 F.3d at 122-23.  The Bureau's refrain throughout the Motion is that the Debtors should have known about the Administrative Claim.  They did not.  On the other hand, the Bureau does not dispute its own actual knowledge of its potential claims for postpetition workers' compensation assessments.  Yet, the Bureau failed to follow this Court's orders and to file proofs of administrative expense by the Administrative Claim Bar Dates.  Consequently, the Bureau's own actions are the reason for the delay.  This factor, therefore, weighs heavily in favor of the Reorganized Debtors and, indeed, is dispositive of the Bureau's allegations of excusable neglect.

(ii)    Danger of Prejudice to the Debtor

48.    Allowing the Bureau to file a late claim more than sixteen months after the consummation of the Modified Plan will prejudice the Reorganized Debtors as well as other creditors in these cases who filed timely administrative expense claims.

49.    Citing Krupski, the Bureau argues that there is no prejudice to the Reorganized Debtors because they "should have known that, but for a mistake in timing, [the Bureau] would have properly filed a claim."  (Motion ¶ 24.)  Although Krupski is not relevant

23

here, other cases have recognized that a debtor's actual knowledge of a claim in advance of a bar

date is relevant to an excusable-neglect inquiry.  See, e.g., Midland Cogeneration, 419 F.3d at

130.  Again, however, neither the Debtors nor the Reorganized Debtors knew about the

Administrative Claim prior to the Administrative Claim Bar Dates because the Bureau failed to

assert it.  Moreover, simply because workers' compensation assessments accrue annually does

not excuse the Bureau from filing a timely claim.  See, for example, the cases cited at footnote 9

above.

        50.     The Bureau further argues that denying the Bureau relief will result in a

windfall to other creditors.  This argument is predicated on an apparent misunderstanding of the

Modified Plan and the Master Disposition Agreement under which the Debtors emerged from

chapter 11.  Any distribution to general unsecured creditors will come from Delphi Automotive

LLP and not the Reorganized Debtors.  (See Modified Plan § 5.3.)  Furthermore, the Modified

Plan already provides for payment in full of administrative expense claims—as set forth below,

the Administrative Claim Bar Dates were critical to determine the Reorganized Debtors' budget

for paying these claims.

        51.     The Bureau's arguments notwithstanding, the relief sought in the Motion

would significantly prejudice the Reorganized Debtors.  First, the Administrative Claim Bar

Dates played an integral role in the Debtors' emergence from chapter 11.  As the Court

previously explained, the Administrative Claim Bar Dates "served a very important and practical

purpose in this case" because "the determination of allowable administrative claims was an

important factor in the court's consideration whether to approve confirmation of the [Modified

Plan]" and was also an important factor in determining whether certain stakeholders would

provide the support and funding required to consummate the Modified Plan.  (Hr'g Tr. 55:15-

56:2, Aug. 27, 2010.)  Thus, permitting the Bureau to pursue the Administrative Claim would

24

substantially prejudice the Reorganized Debtors and their stakeholders by allowing the Bureau to

pursue significant unliquidated claims that, due to the Bureau's failure to assert such claims in a

timely manner, were not contemplated at the time the Modified Plan was negotiated and

confirmed, and would reduce the liquidity that is necessary for the Reorganized Debtors to carry

out their obligations under the Modified Plan.

52.    Second, allowing untimely claims at this time may open the floodgates to

any potential claimant who failed to file an administrative expense claim on or before the

applicable Administrative Claim Bar Dates.  Courts often have recognized the danger of opening

the floodgates to potential claimants.  See, e.g., In re Enron Corp., 419 F.3d at 132 n. 2 ("courts

in this and other Circuits regularly cite the potential 'flood' of similar claims as a basis for

rejecting late-filed claims"); In re Kmart Corp., 381 F.3d 709, 714 (7th Cir. 2004) (noting that if

court allowed all similar late-filed claims, "Kmart could easily find itself faced with a mountain

of such claims"); In re Enron Creditors Recovery Corp., 370 B.R. 90, 103 (Bankr. S.D.N.Y. 2007)

("'It can be presumed in a case of this size with tens of thousands of filed claims, there are other

similarly-situated potential claimants. . . . Any deluge of motions seeking similar relief would

prejudice the Debtors' reorganization process.'" (citation omitted)); In re Dana Corp., 2007 WL

1577763, at *6 ("the floodgates argument is a viable one").  Accordingly, the Bureau's argument

that their claim does not prejudice the Reorganized Debtors because of "its insignificant nature in

relation to other claims against the estates" (Motion ¶ 47) is without merit.

53.    The Administrative Claim Bar Dates were established to identify

administrative expense claims that would be paid pursuant to the terms of the Modified Plan.

Allowing the Bureau to prevail on the Motion may inspire many other similarly situated potential

claimants to file similar motions.  Any potential claimant who, by its own error, failed to file a

timely administrative expense claim may seek to follow the Bureau's lead.  Accordingly,

establishing a precedent for allowing untimely claims without a compelling justification would

greatly prejudice the Reorganized Debtors' ability to carry out their obligations under the

Modified Plan.

(iii)   <u>Length of the Delay</u>

54.      Finally, the length of the delay also favors denying the relief sought in the

Motion.  The Bureau knew that workers' compensation assessments would continue to accrue

after the Debtors emerged from chapter 11 and, therefore, had the information necessary to file a

contingent or estimated claim well in advance of the Administrative Claim Bar Dates.

Nevertheless, the Bureau waited more than eighteen months after the Initial Administrative

Claim Bar Date and more than fourteen months after the Final Administrative Claim Bar Date

before seeking to file the Administrative Claim.

55.      The Second Circuit has adopted a "strict" standard in the area of excusable

neglect, <u>Asbestos Personal Injury Plaintiffs v. Travelers Indem. Co.</u>  (In re Johns-Manville

Corp.), 476 F.3d 118, 120 (2d Cir. 2007).  Although the Bureau waited nearly a year and a half

to file its late claim, the Bureau characterizes its delay in seeking to file the Administrative

Claim as "extremely short" by virtue of the Bureau having filed the Motion thirty-nine days after

the Court ruled that the Proof of Claim was disallowed.  (Motion ¶ 48.)  But the length of the

Bureau's delay is measured from the Administrative Claim Bar Dates and, as noted above, the

Bureau's delay was significantly longer than thirty-nine days.  Courts considering excusable

neglect in this jurisdiction have characterized delays of six months as "substantial."  <u>See</u> <u>In re</u>

<u>Dana Corp.</u>, 2007 WL 1577763, at *5 (citing <u>In re Enron</u>, 419 F.3d at 125 (delay of more than

six months after bar date was "substantial")).  Indeed, a delay of only one day may be

inexcusable.  <u>Singer</u>, 2002 WL 10452, at *3 ("Although the Union's miscalculation as to the

appropriate appeals deadline was in good faith and resulted in only one day's delay, not every

26

minor error can or should be excused.  Compliance with deadlines is not a game of horseshoes;

close doesn't count.").  Accordingly, this factor also weighs in favor of the Reorganized Debtors

and further supports denying the Motion.

<u>Conclusion</u>

56.    The Bureau has failed to provide any evidence of circumstances justifying

the extraordinary relief it seeks and has not met its burden for establishing an informal claim, a

post-bar date amendment to the Proof of Claim, or excusable neglect.  The Motion should,

therefore, be denied.

WHEREFORE the Reorganized Debtors respectfully request that this Court enter

an order (a) denying the Motion, and (b) granting them such other and further relief as is just.

Dated: New York, New York
        February 10, 2011

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By: /s/ John Wm. Butler, Jr._____
    John Wm. Butler, Jr.
    John K. Lyons
    Ron E. Meisler
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and –

Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for DPH Holdings Corp., <u>et al.</u>,
  Reorganized Debtors

27

## **EXHIBIT A**

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                       :
        In re                                          :        Chapter 11
                                                       :
DELPHI CORPORATION, et al.,                            :        Case No. 05-44481 (RDD)
                                                       :
                            Debtors.                   :        (Jointly Administered)
                                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>AFFIDAVIT OF SERVICE</u>

I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases. I submit this Affidavit in connection with the service of the solicitation materials for the **First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (As Modified)** [Docket No. 17030] ("the Plan").

On December 1, 2005, the Court signed and entered an Order Pursuant to 28 U.S.C. § 156(c) Authorizing Retention and Appointment of Kurtzman Carson Consultants LLC as Claims, Noticing and Balloting Agent for Clerk of Bankruptcy Court [Docket No. 1374] designating KCC as the official Balloting Agent.

KCC is charged with the duty of printing and distributing Solicitation Packages to creditors and other interested parties pursuant to the instructions set forth in the **Order (A)(I) Approving Modifications to Debtors' First Amended Plan of Reorganization (as Modified) and Related Disclosures and Voting Procedures and (II) Setting Final Hearing Date to Consider Modifications to Confirmed First Amended Plan of Reorganization and (B) Setting Administrative Expense Claims Bar Date and Alternative Transaction Hearing Date ("Modification Procedures Order")** [Docket No. 17032] ("Modification Procedures Order") as entered by the Court on June 16, 2009.

The various solicitation materials consist of the following documents:

1) Ballot for Accepting or Rejecting First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (As Modified) (Class A Secured Claims) ("Class A Ballot") (attached hereto as <u>Exhibit A</u>);

2) Ballot for Accepting or Rejecting First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (As Modified) (Class C-1 General Unsecured Claims) ("Class C-1 Ballot") (attached hereto as <u>Exhibit B</u>);



3) Ballot for Accepting or Rejecting First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (As Modified) (Class C-2 Pension Benefit Guaranty Corporation Claims) ("Class C-2 Ballot") (attached hereto as <u>Exhibit C</u>);

4) Ballot for Accepting or Rejecting First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (As Modified) (Class D General Motors Corporation Claim) ("Class D Ballot") (attached hereto as <u>Exhibit D</u>);

5) Notice of (1) Approval of Supplement; (2) Hearing on Modifications to Plan; (3) Deadline and Procedures for Filing Objections to Modifications of Plan; (4) Deadline and Procedures for Temporary Allowance of Certain Claims for Voting Purposes; (5) Treatment of Certain Unliquidated, Contingent, or Disputed Claims for Noticing, Voting, and Distribution Purposes; (6) Record Date; (7) Voting Deadline for Receipt of Ballots; and (9) Proposed Releases, Exculpation, and Injunction in Modified Plan ("Final Modification Hearing Notice") (attached hereto as <u>Exhibit E</u>);

6) a letter from the Delphi Corporation Official Committee of Unsecured Creditors ("Creditors' Committee Letter") (attached hereto as <u>Exhibit F</u>);

7) First Amended Disclosure Statement Supplement with Respect to First Amended Plan of Reorganization (As Modified), Modification Procedures Order and December 10, 2007 Solicitation Procedures Order, in CD-ROM format ("CD-ROM")

8) Notice of Non-Voting Status with Respect to Certain Claims and Interests ("Notice of Non-Voting Status") (attached hereto as <u>Exhibit G</u>);

9) Notice to Unimpaired Creditors of (I) Filing of Proposed Modified Plan of Reorganization, (II) Treatment of Claims Under Modified Plan, (III) Hearing on Approval of Modified Plan, and (IV) Deadline and Procedures for Filing Objections Thereto ("Unimpaired Notice") (attached hereto as <u>Exhibit H</u>);

10) a memorandum from Kurtzman Carson Consultants to additional notice parties of ballot recipients ("Ballot Notice Party Memo") (attached hereto as <u>Exhibit I</u>);

11) Notice of Bar Date for Filing Proofs of Administrative Expense ("Administrative Bar Date Notice") (attached hereto as <u>Exhibit J</u>); and

12) Administrative Expense Claim Form ("Administrative Expense Claim Form") (attached hereto as <u>Exhibit K</u>).

On or before June 20, 2009, I caused to be served a personalized Class A Ballot, Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Administrative Bar Date Notice, Administrative Expense Claim Form and a pre-addressed, postage pre-paid return envelope upon the parties listed on Exhibit L via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served a personalized Class C-1 Ballot, Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Administrative Bar Date Notice, Administrative Expense Claim Form and a pre-addressed, postage pre-paid return envelope upon the parties listed on Exhibit M via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served a personalized Class C-2 Ballot, Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Administrative Bar Date Notice, Administrative Expense Claim Form and a pre-addressed, postage pre-paid return envelope upon the party listed on Exhibit N via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served a personalized Class D Ballot, Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Administrative Bar Date Notice, Administrative Expense Claim Form and a pre-addressed, postage pre-paid return envelope upon the party listed on Exhibit O via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served the Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Administrative Bar Date Notice and Administrative Expense Claim Form upon the parties listed on Exhibit P via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served the Final Modification Hearing Notice, Notice of Non-Voting Status, Administrative Bar Date Notice and Administrative Expense Claim Form upon the parties listed on Exhibit Q via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served the Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Unimpaired Notice, Administrative Bar Date Notice and Administrative Expense Claim Form upon the parties listed on Exhibit R via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served the Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Notice of Non-Voting Status, Administrative Bar Date Notice and Administrative Expense Claim Form upon the parties listed on Exhibit S via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served the Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Ballot Notice Party Memo, Administrative Bar Date Notice and Administrative Expense Claim Form upon the parties listed on Exhibit T via postage pre-paid U.S. mail.

3

On or before June 20, 2009, I caused to be served the Final Modification Hearing Notice, Administrative Bar Date Notice and Administrative Expense Claim Form upon the parties listed on <u>Exhibit U</u> via postage pre-paid U.S. mail.


Dated: June 23, 2009

Evan Gershbein

State of California
County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 23rd day of June, 2009, by Evan Gershbein, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature

Commission Expires: _10-1-09_

L. MAREE SANDERS
Commission # 1610322
Notary Public - California
Los Angeles County
My Comm. Expires Oct 1, 2009

# EXHIBIT J

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -   -   x
                                                          :
      In re                 :    Chapter 11
                                                          :
DELPHI CORPORATION, et al.,                               :    Case No. 05-44481 (RDD)
                                                          :
                    Debtors.    :    (Jointly Administered)
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - -  - -   x

### NOTICE OF BAR DATE FOR FILING PROOFS OF ADMINISTRATIVE EXPENSE

          PLEASE TAKE NOTICE that on June 16, 2009, the United States Bankruptcy
Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the
"Modification Procedures Order") (Docket No. 17032), which among other things, established
**July 15, 2009** (the "Administrative Expense Bar Date") as the last date to file proof of
administrative expense (each, an "Administrative Expense Claim Form") for the purpose of
asserting administrative expense claims ("Administrative Expense Claims" or "Claims"), against
Delphi Corporation ("Delphi") and its affiliated debtors and debtors-in-possession (the "Debtors"
or "Company").  The Administrative Expense Bar Date and the procedure set out below for filing
proofs of administrative expense with respect to Claims apply to all alleged postpetition Claims
against the Debtors that arose, accrued, or that were incurred on or before **June 1, 2009**.

          PLEASE TAKE FURTHER NOTICE that the Modification Procedures Order
requires all parties to file an Administrative Expense Claim Form with Kurtzman Carson
Consultants LLC ("KCC"), the claims, noticing, and solicitation agent in these cases, **so that
such Administrative Expense Claim Form is received on or before 5:00 p.m., prevailing
Eastern time, on the Administrative Expense Bar Date**.

### WHO SHOULD FILE AN ADMINISTRATIVE EXPENSE CLAIM FORM

          You must file an Administrative Expense Claim Form if you believe that you are
entitled to an Administrative Expense Claim as described in 11 U.S.C. § 503, except as provided
below.

          You do not need to file an Administrative Expense Claim Form for (i) any claim
for postpetition goods and services delivered to the Debtors prior to June 1, 2009 that are not yet
due and payable pursuant to the applicable contract terms, (ii) employee claims arising prior to
June 1, 2009 for wages, salary, and other benefits arising in the ordinary course of business that
are not yet due and payable; (iii) any claim for which the party has already properly filed an
Administrative Expense Claim Form or a proof of claim form with the Court which has not been
expunged by order of the Court and provided that such proof of claim clearly and unequivocally
sets forth that such claim is made for an administrative expense priority; (iv) any claim for fees
and/or reimbursement of expenses by a professional employed in these chapter 11 cases accruing
through January 25, 2008, to the extent that such claim is subject to this Court's Interim

Compensation Orders;[1] or (v) any claim asserted by any Debtor or any direct or indirect subsidiary of any of the Debtors in which the Debtors in the aggregate directly or indirectly own, control or hold with power to vote, 50% or more of the outstanding voting securities of such subsidiary.

**TIME AND PLACE FOR FILING ADMINISTRATIVE EXPENSE CLAIMS**

**A signed original of any Administrative Expense Claim Form, together with accompanying documentation, must be delivered to Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245, so as to be received no later than 5:00 p.m., prevailing Eastern time, on the Administrative Expense Bar Date**. Claims may be submitted in person or by courier service, hand delivery or mail addressed to KCC at the foregoing address. Any Claim submitted by facsimile, e-mail, or by other electronic means will not be accepted and will not be deemed filed until such Claim is submitted by one of the methods described in the preceding sentence. Claims will be deemed filed only when actually received by KCC. If you wish to receive acknowledgment of KCC's receipt of your Claim, you must also submit a copy of your original Claim and a self-addressed, stamped envelope.

**CONSEQUENCES OF FAILURE TO TIMELY SUBMIT
ADMINISTRATIVE EXPENSE CLAIM FORM**

**ANY PARTY THAT IS REQUIRED BUT FAILS TO FILE AN ADMINISTRATIVE EXPENSE CLAIM FORM IN ACCORDANCE WITH THIS NOTICE ON OR BEFORE THE ADMINISTRATIVE EXPENSE BAR DATE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH CLAIM AGAINST THE DEBTORS AND REORGANIZED DEBTORS, AS APPLICABLE, AND THEIR PROPERTY SHALL BE FOREVER DISCHARGED FROM ANY AND ALL INDEBTEDNESS, LIABILITY, OR OBLIGATION WITH RESPECT TO SUCH CLAIM.**

---

[1]     See Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated November 4, 2005 (Docket No. 869) (the "Interim Compensation Order"); Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated March 8, 2006 (Docket No. 2747) (the "Supplemental Compensation Order"); Second Supplemental Order Under 11 U.S.C. Section 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated March 28, 2006 (Docket No. 2986) (the "Second Supplemental Interim Compensation Order"); and Third Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures For Interim Compensation And Reimbursement Of Expenses Of Professionals, dated May 5, 2006 (Docket No. 3630) (the "Third Supplemental Interim Compensation Order"); Fourth Supplemental Order Under 11 U.S.C. Section 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated July 13, 2006 (Docket No. 4545) (the "Fourth Supplemental Interim Compensation Order"); Fifth Supplemental Order Under 11 U.S.C. Section 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses, dated October 13, 2006 (Docket No. 5310) (the "Fifth Supplemental Interim Compensation Order"); Sixth Supplemental Order Under 11 U.S.C. Section 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated December 12, 2006 (Docket No. 6145) (the "Sixth Supplemental Interim Compensation Order"); and the Seventh Supplemental Order Under 11 U.S.C. §331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated January 28, 2008 (Docket No. 12367) (together with the Interim Compensation Order, the Supplemental Compensation Order, the Second Supplemental Interim Compensation Order, the Third Supplemental Interim Compensation Order, the Fourth Supplemental Interim Compensation Order, the Fifth Supplemental Interim Compensation Order, and the Sixth Interim Compensation Order, the "Interim Compensation Orders").

2

PLEASE TAKE FURTHER NOTICE that all pleadings and orders of the Bankruptcy Court are publicly available along with the docket and other case information by accessing the Delphi Legal Information Website at www.delphidocket.com and may also be obtained, upon reasonable written request, from the Creditor Voting Agent, Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245, Att'n: Delphi Corporation, et al.

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

Dated: New York, New York
       June 16, 2009

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

John Wm. Butler, Jr.
Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606

Kayalyn A. Marafioti
Thomas J. Matz
Four Times Square
New York, New York 10036

Attorneys for Delphi Corporation, et al., Debtors and Debtors-in-Possession

3

Delphi Corporation
Class K (Other Priority Claims) Service List

| Name | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Mutton Connie L | | 780 N Sie Boutell | | | Essexville | MI | 48732-0000 | |
| Nash Richard P | | 661 Country Lane | | | Frankenmuth | MI | 48734 | |
| Nason William E | | O 4950 Boyne City Rd | | | Boyne City | MI | 49712-0000 | |
| Naylor Craig G | | Group VP Electronic & Communication Technologies | E I du Pont de Nemours & Company | Barly Mill Plz 30 1168 4417 Lancaster Pike | Wilmington | DE | 19805 | |
| Neal Naomi | | 261 Barbara Ln | | | Saginaw | MI | 48601-9469 | |
| Neal Naomi | | 261 Barbara Ln | | | Saginaw | MI | 48601-9469 | |
| Nebio Debra S | | 8802 Heather Ln | | | Onsted | MI | 49265 | |
| Nelson Evelyn M | | 425 W Flint Park Blvd | | | Flint | MI | 48505 | |
| Nething Roger L | | 124 Dandridge Ave NW | | | Palm Bay | FL | 32907 | |
| New Jersey Self Insurers Guaranty Association | c/o Jeffrey Bernstein Esq | McElroy Deutsch Mulvaney & Carpenter LLP | Three Gateway Ctr | 100 Mulberry St | Newark | NJ | 07102-4079 | |
| Newton Jr James David | | 5555 Widgeon Ct | | | Dayton | OH | 45424 | |
| Nez Lupita | | PO Box 830 | | | Fort Defiance | AZ | 86504 | |
| Nicholson Warren B | | 112 Venetian Way Sw | | | Pataskala | OH | 43062-9147 | |
| Nieman James L | | 5784 Carter Rd | | | Freeland | MI | 48623-0000 | |
| Nieman James L | | 5784 Carter Rd | | | Freeland | MI | 48623-0000 | |
| Noel Ellen C | | 3538 Christy Way W | | | Saginaw | MI | 48603-7226 | |
| Noel Morgan Hubert | | 7700 Nardo Goodman | | | El Paso | TX | 79912 | |
| Oaks Mary A | | 27484 Joann Dr | | | Bonita Springs | FL | 34135-7143 | |
| Obryan Everett E | | 1609 Martin St | | | Flatwoods | KY | 41139-1261 | |
| Offenbacher Lon | | 538 Springview Dr | | | Rochester | MI | 48307 | |
| Ohio Bureau of Workers Compensation | Law Section Bankruptcy Unit | 30 W Spring St | | PO Box 15567 | Columbus | OH | 43215-0567 | |
| Ohio Bureau of Workers Compensation | Law Section Bankruptcy Unit | 30 W Spring St | | PO Box 15567 | Columbus | OH | 43215-0567 | |
| Ohio Environmental Protection Agency | Michelle T Sutter | Ohio Attorney General | Environmental Enforcement Section | 30 E Broad St 25th Fl | Columbus | OH | 43215-3400 | |
| Ohio Environmental Protection Agency | Michelle T Sutter | Ohio Attorney General | Environmental Enforcement Section | 30 E Broad St 25th Fl | Columbus | OH | 43215-3400 | |
| Ohio Environmental Protection Agency | Michelle T Sutter | Ohio Attorney General | Environmental Enforcement Section | 30 E Broad St 25th Fl | Columbus | OH | 43215-3400 | |
| Olah Shelia M | | G 3100 Miller Rd Apt 17 A | | | Flint | MI | 48507-0000 | |
| Olah Shelia M | | G 3100 Miller Rd Apt 17 A | | | Flint | MI | 48507-0000 | |
| Olfano Ross A | | 3023 Tyler Rd | | | Sanborn | NY | 14132-9444 | |
| Oneil Darrel W | | 2131 Bayou Dr S | | | Ruskin | FL | 33570 | |
| Opie John D | c/o Delphi Corporation | 5725 Delphi Dr | | | Troy | MI | 48098-2815 | |
| Ortega Maria | | 5920 Fraser Rd | | | Bay City | MI | 48706-9729 | |
| Ortega Maria | | 5920 Fraser Rd | | | Bay City | MI | 48706-9729 | |
| Ostash Robert S | | 2436 W German Rd | | | Bay City | MI | 48708-9652 | |
| Ostash Robert S | | 2436 W German Rd | | | Bay City | MI | 48708-9652 | |
| Otto Brad K | | 1080 Kenmoor SE | | | Grand Rapids | MI | 49546 | |
| Oyefeso Samuel O | | PO Box 1253 | | | Alief | TX | 77411-1253 | |
| Palmer Michael A | | 1973 Homepath Ct | | | Centerville | OH | 45459-6971 | |
| Paprocki Jeffrey | | 4265 Emu Dr | | | Pinckney | MI | 48169 | |
| Paradise Gail A | | 4130 Bridlegate Way | | | Dayton | OH | 45424-8000 | |
| Pariseau Leona R | | 408 W Page St | | | Rose City | MI | 48654-9592 | |
| Pariseau Letitia S | | 14624 Windemere St | | | Southgate | MI | 48195-3709 | |
| Pariseau Richard J | | 388 Gilford Ranch Trail | | | Rose City | MI | 48654-8594 | |
| Parisi Henry | | 6617 Isla Del Rey Dr | | | El Paso | TX | 79912 | |
| Parker Julie | | 719 Janice St | | | Holly | MI | 48442-1286 | |

Page 12 of 18

**<u>EXHIBIT B</u>**

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
         In re                                :    Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :    Case No. 05-44481 (RDD)
                                              :
                        Debtors.              :    (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>AFFIDAVIT OF SERVICE</u>

I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

On or before October 9, 2009, I caused to be served the document listed below upon the parties listed on <u>Exhibit A</u> hereto via postage pre-paid U.S. mail:

Notice of (A) Order Approving Modifications to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affilicates, Debtors and Debtors-in-Possession and (B) Occurrence of Effective Date (Docket No. 18958)

On or before October 13, 2009, I caused to be served the appropriate number of copies of the document listed below (i) upon the service list attached hereto as <u>Exhibit B</u>, for subsequent distribution to beneficial holders of Common Stock, CUSIP 172737 10 8; 6 ½% Notes due 2009, CUSIP 247126 AB 1; 7 1/8% Notes due 2029, CUSIP 247126 AC 9; 6.55% Notes due 2006, CUSIP 247126 AD 7; 6.50% Notes due 2013, CUSIP 247126 AE 5; 8 ¼% Adjustable Rate Subordinated Note due 2033, CUSIP 247126 AF 2; and 6.197% Junior Subordinated Note due 2033, CUSIP 247126 AG 0, via Overnight mail and hand delivery; (ii) upon the parties set forth on <u>Exhibit C</u> via postage pre-paid U.S. Mail; (iii) upon the registered holders of Common Stock listed on <u>Exhibit D</u>, provided by Computershare as transfer agent, via postage pre-paid U.S. Mail; and (iv) upon the service list attached hereto as <u>Exhibit E</u> via Electronic mail.

Notice of (A) Order Approving Modifications to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affilicates, Debtors and Debtors-in-Possession and (B) Occurrence of Effective Date (Docket No. 18958)

Dated: October 14, 2009

_____ */s/ Evan Gershbein* _____
Evan Gershbein

State of California
County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 14th day of October, 2009, by
Evan Gershbein, proved to me on the basis of satisfactory evidence to be the person who
appeared before me.

Signature: _*/s/ Shannon J. Spencer*_____

Commission Expires: *6/20/10*_____

Delphi Corporation

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|---|
| OHARA RUBERG TAYLOR SLOAN AND SERGENT | | PO BOX 17411 | | | | COVINGTON | KY | 41017-0411 | |
| OHARA SERVICE INC | | 239 N RIVER RD | | | | MT CLEMENS | MI | 48043 | |
| OHARA SERVICE INC | | ADD CHG LTR 7 01 CSP | 239 N RIVER RD | | | MT CLEMENS | MI | 48043 | |
| OHARE J | | 96 BROWNMOOR LN | CROSBY | | | LIVERPOOL | | L23 0TF | UNITED KINGDOM |
| OHARE MARIE | | 2100 CANDLESTICK | | | | MIDLAND | MI | 48640 | |
| OHARE, MARIE D | | 2100 CANDLESTICK | | | | MIDLAND | MI | 48640 | |
| OHAROLD BARBARA H | | 1635 HART RD | | | | LEBANON | OH | 45036-9621 | |
| OHARRA HARRY | | 3769 ADELL RD | | | | COLUMBUS | OH | 43228 | |
| OHASHI TECHNICA INC | | 2 3 1 NISHISHINJUKU | | | | SHINJUKU KU | 13 | 1600023 | JP |
| OHASHI TECHNICA USA INC | | 111 BURRER DR | AD CHG PER LTR 05 16 05 GJ | | | SUNBURY | OH | 43074 | |
| OHASHI TECHNICA USA INC | | 111 BURRER DR | | | | SUNBURY | OH | 43074 | |
| OHASHI TECHNICA USA INC | | PO BOX 951521 | | | | CLEVELAND | OH | 44193 | |
| OHAUS CORP | | 19A CHAPIN RD | | | | PINE BROOK | NJ | 07058 | |
| OHAUS CORP | | 290 HANOVER RD | | | | FLORHAM PK | NJ | 07932 | |
| OHAUS CORP | | PO BOX 18175 | | | | NEWARK | NJ | 07191 | |
| OHAUS CORPORATION | | 19 CHAPIN RD NO A | | | | PINE BROOK | NJ | 07058-9385 | |
| OHAVER TAMMY | | 8417 AIRLANE AVE | | | | LOS ANGELES | CA | 90045-3020 | |
| OHAVER, TAMMY G | | 8417 AIRLANE AVE | | | | LOS ANGELES | CA | 90045-3020 | |
| OHD LLC | | OCCUPATIONAL HEALTH DYNAMICS | 2635 VALLEYDALE RD STE 100 | | | BIRMINGHAM | AL | 35244 | |
| OHE INDUSTRIES LLC | ACCOUNTS PAYABLE | 4480 8TH AVE | | | | MARION | IA | 52302 | |
| OHERRON ROBERT | | 472 MAYFLOWER | | | | LINCOLN PK | MI | 48146 | |
| OHIO & MICHIGAN PAPER CO | | PO BOX 621 | | | | TOLEDO | OH | 43694 | |
| OHIO & MICHIGAN PAPER CO | | PO BOX 621 | | | | TOLEDO | OH | 43697 | |
| OHIO & MICHIGAN PAPER CO THE | | AMPOINT COMPLEX 350 4TH ST | | | | PERRYSBURG | OH | 43551 | |
| OHIO & MICHIGAN PAPER CO THE | | PO BOX 621 | | | | TOLEDO | OH | 43694-0621 | |
| OHIO ACADEMY OF SCIENCE YOUNGS TOWN STATE UNIVERSITY DEP ARTS | | 1 UNVSTY PLZ DEBARTOLE HALL RM 104 | | | | YOUNGSTOWN | OH | 44555 | |
| OHIO AEROSPACE INSTITUTE | | 22800 CEDAR POINT RD | | | | BROOK PK | OH | 44142 | |
| OHIO AEROSPACE INSTITUTE | | OAI | 22800 CEDAR POINT RD | | | CLEVELAND | OH | 44142 | |
| OHIO AFL CIO | | 395 EAST BROAD ST | STE 300 | | | COLUMBUS | OH | 43215 | |
| OHIO ALLIANCE FOR CIVIL | | JUSTICE ADD CHG 10 97 | OHIO CHAMBER OF COMMERCE | 230 E TOWN ST | | COLUMBUS | OH | 43215 | |
| OHIO ALLIANCE FOR CIVIL JUSTICE | | OHIO CHAMBER OF COMMERCE | 230 E TOWN ST | | | COLUMBUS | OH | 43215 | |
| OHIO ASPHALT MAINTENANCE INC | | 3401 VENICE RD | | | | SANDUSKY | OH | 44870 | |
| OHIO ASPHALT MAINTENANCE INC | | PO BOX 1045 | | | | SANDUSKY | OH | 44871-1045 | |
| OHIO BARBRI BAR REVIEW | | 1370 ONTARIO ST | STE 410 | | | CLEVELAND | OH | 44113 | |
| OHIO BEAM INC | | 8963 DARROW RD | | | | TWINSBURG | OH | 44087 | |
| OHIO BELTING & TRANSMISSION CO | | CO | 300 N WESTWOOD | | | TOLEDO | OH | 43697 | |
| OHIO BELTING AND TRANSMISSION CO | | PO BOX 404 | | | | TOLEDO | OH | 43697 | |
| OHIO BOARD OF NURSING | | PO BOX 182869 | | | | COLUMBUS | OH | 43218-2869 | |
| OHIO BRAKE & CLUTCH CORP | | 1460 WOLF CREEK TRAIL | | | | SHARON CTR | OH | 44274-0325 | |
| OHIO BRAKE & CLUTCH CORP | | OBC | 1460 WOLFCREEK TRL | | | SHARON CTR | OH | 44274 | |
| OHIO BRAKE AND CLUTCH CORP | | PO BOX 325 | | | | SHARON CTR | OH | 44274-0325 | |
| OHIO BUILDING RESTORATION INC | | OBR | 912 MILL ST | | | TOLEDO | OH | 43609 | |
| OHIO BUREAU OF WORKERS COMPENSATION | LAW SECTION BANKRUPTCY UNIT | 30 W SPRING ST | PO BOX 15567 | | | COLUMBUS | OH | 43215-0567 | |
| OHIO BUSINESS ROUNDTABLE | | L 2481 | PO BOX 600001 | | | COLUMBUS | OH | 43260-2481 | |
| OHIO BUSINESS WEEK FOUNDATION | | 1572 WEST FIRST AVE | AD CHG PER AFC 02 24 04 AM | | | COLUMBUS | OH | 43212 | |
| OHIO BUSINESS WEEK FOUNDATION | | 1572 WEST FIRST AVE | | | | COLUMBUS | OH | 43212 | |
| OHIO C S P C | | PO BOX 182394 | | | | COLUMBUS | OH | 43218 | |
| OHIO CAMSHAFT INC | | 8333 BOYLE PKWY | | | | TWINSBURG | OH | 44087 | |
| OHIO CAMSHAFT INC | | PO BOX 26304 | | | | AKRON | OH | 44319-0003 | |
| OHIO CARBON BLANK | | 38403 PELTON RD | | | | WILLOUGHBY | OH | 44094-7721 | |
| OHIO CARBON BLANK INC | | 38403 PELTON RD | | | | WILLOUGHBY | OH | 44094-7721 | |
| OHIO CARBON BLANK INC | | PO BOX 71 4093 | | | | COLUMBUS | OH | 43271-4093 | |
| OHIO CAT | | 3993 E ROYALTON RD | | | | CLEVELAND | OH | 44147 | |
| OHIO CAT | | DEPT 495 | | | | COLUMBUS | OH | 43265 | |
| OHIO CENTRAL RAILROAD INC | | ADD CHG 11 04 02 CP | PO BOX 1180 | | | COSHOCTON | OH | 43812 | |
| OHIO CENTRAL RAILROAD INC | | PO BOX 1180 | | | | COSHOCTON | OH | 43812 | |
| OHIO CHILD SUPPORT PAYMENT | | CENTER | PO BOX 182394 | | | COLUMBUS | OH | 43218-2394 | |
| OHIO CHILD SUPPORT PAYMENT CENTRAL | | CENTRAL | PO BOX 182394 | | | COLUMBUS | OH | 43218 | |
| OHIO CHILD SUPPORT PMT CENTER | | PO BOX 182394 | | | | COLUMBUS | OH | 43218-2394 | |
| OHIO CINCINNATI INCOME TAX | | BUREAU | PO BOX 640770 | | | CINCINNATI | OH | 45264-0770 | |
| OHIO CITY OF DAYTON | | DEPARTMENT OF FINANCE | DIV OF REVENUE AND TAXATION | PO BOX 2806 | | DAYTON | OH | 45401-2806 | |
| OHIO CITY OF PARMA | | DIVISION OF TAXATION | PO BOX 94734 | | | CLEVELAND | OH | 44101-4734 | |
| OHIO COLLEGE OF PODIATRIC | | MEDICINE | 10515 CARNEGIE AVE | BUSINESS OFFICE | | CLEVELAND | OH | 44106 | |
| OHIO COMMERCE CENTER | | 5232 TOD AVE SW UNIT 11 | | | | WARREN | OH | 44481 | |
| OHIO CONCRETE SAWING & DRILLIN | | OHIO CONCRETE SAWING & DRILLIN | 314 CONOVER DR | | | FRANKLIN | OH | 45005 | |
| OHIO CONCRETE SAWING AND | | DRILLING INC | 8534 W CENTRAL AVE | | | SYLVANIA | OH | 43560 | |
| OHIO CONTAINER SERVICE LLC | | 3091 ROCKEFELLER AVE | | | | CLEVELAND | OH | 44115 | |
| OHIO COUNTING SCALE SOUTH INC | | 4816 PETER PL | | | | CINCINNATI | OH | 45246 | |
| OHIO CSPC | | PO BOX 182394 | | | | COLUMBUS | OH | 43218 | |
| OHIO CSPC | | PO BOX 182394 | | | | COUMBUS | OH | 43218 | |
| OHIO DECORATIVE PRODUCTS INC | | 220 S ELIZABETH ST | PO BOX 126 | | | SPENCERVILLE | OH | 45887-0126 | |
| OHIO DECORATIVE PRODUCTS INC | | 220 S ELIZABETH ST | | | | SPENCERVILLE | OH | 45887-131 | |
| OHIO DECORATIVE PRODUCTS INC | | PO BOX 126 | | | | SPENCERVILLE | OH | 45887-0126 | |
| OHIO DEPARTMENT OF | | JOB & FAMILY SERVICES | PO BOX 182404 | | | COLUMBUS | OH | 43218-2404 | |
| OHIO DEPARTMENT OF COMMERCE | | DIVISION OF UNCLAIMED FUNDS | PO BOX 18305 | | | COLUMBUS | OH | 43218 | |
| OHIO DEPARTMENT OF COMMERCE | | DIV OF INDUSTRIAL COMPLIANCE | 6606 TUSSING RD | | | REYNOLDSBURG | OH | 43068-9009 | |
| OHIO DEPARTMENT OF COMMERCE | | INDUSTRIAL COMPLIANCE DIVISION | 6606 TUSSING RD | ADD CHG 11 19 04 AH | | RENOLDSBURG | OH | 43068 | |
| OHIO DEPARTMENT OF COMMERCE DIV OF INDUSTRIAL COMPLIANCE | | PO BOX 4009 | | | | REYNOLDSBURG | OH | 43068-9009 | |
| OHIO DEPARTMENT OF COMMERCE DIVISION OF STATE FIRE MARSHAL | ROBERT R RIELAGE | STATE FIRE MARSHALL | OHIO FIRE ACADEMY | 8895 EAST MAIN ST | | REYNOLDSBURG | OH | 43068 | |
| OHIO DEPARTMENT OF DEVELOPMENT | | 373 S HIGH ST 25TH FL | | | | COLUMBUS | OH | 43215 | |