Marc Skapof
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York  10111
Telephone:  (212) 589-4200
Facsimile:  (212) 589-4201

*Attorneys for Ohio Bureau of Workers' Compensation*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No.  05-44481 (RDD) |
| DPH HOLDINGS CORP., et al., | Chapter  11 |
| Reorganized Debtors. | Jointly Administered |

**REPLY IN FURTHER SUPPORT OF MOTION OF
OHIO BUREAU OF WORKERS' COMPENSATION TO (I) DEEM
CLAIM TIMELY FILED OR, ALTERNATIVELY, (II) AUTHORIZE THE
AMENDMENT OF CLAIM, OR (III) PERMIT LATE FILED CLAIM**

Ohio Bureau of Workers' Compensation ("BWC"), by its undersigned counsel, hereby files this reply (the "Reply") in further support of its Motion of Ohio Bureau of Workers' Compensation to (I) Deem Claim Timely Filed or, Alternatively, (II) Authorize the Amendment of Claim, or (III) Permit Late Filed Claim (the "Motion").  In support of the Reply, BWC respectfully states as follows:

**PRELIMINARY STATEMENT**

1. This case boils down to one simple proposition: should BWC be compensated for post-petition benefits it uncontrovertedly provided to the debtors (the "Debtors"), their estates, and other creditors when BWC timely filed its claim (the "Claim") but the Court disagreed with its classification? If the Court answers yes, then BWC's Claim should be considered a timely filed, informal administrative expense claim, or should be amended to reflect its administrative expense status. Alternatively, BWC should be permitted to file a late administrative expense claim.

2. The Debtors and reorganized debtors (the "Reorganized Debtors") agreed for years with BWC that the Claim was properly classified as pre-petition. The Debtors and Reorganized Debtors took affirmative steps evidencing their belief that the Claim was pre-petition. Moreover, the Debtors, Reorganized Debtors and BWC's shared conclusion regarding the Claim's pre-petition status lasted for almost five years, until well after the Debtors filed their initial objection to the Claim and also after the passing of the administrative expense bar date (the "Administrative Expense Bar Date"). Thus, at most, BWC's classification of the Claim as pre-petition was an honest, good faith mistake, which should be rectified by granting the Motion.

3. Contrary to the Reorganized Debtors' position in their objection (the "Objection") to the Motion, this is not an instance where BWC sat on its rights for more than eighteen months. See Objection at pg. 6. BWC timely filed its Claim and asserted its rights against the Debtors and their estates. When BWC learned during the December 16, 2010 hearing (the "Hearing") that the Claim should have been classified as administrative, BWC promptly filed the Motion. Thus, BWC has always acted diligently to protect its rights.

4.     The Reorganized Debtors tepidly reserved their right to make an argument that the Claim was for administrative expenses for the first time in December 2010.  The Reorganized Debtors made this argument for the sole purpose of having the Claim disallowed after the Debtors received several years of post-petition benefits from BWC.  These benefits allowed the Debtors to remain in operation and increased the value of the estates, to the benefit of all other creditors.  Additionally, the Debtors failed to raise the administrative expense argument until long after they made their initial objection to the Claim.  Instead, the Debtors took affirmative steps indicating that they believed the Claim was pre-petition.  Accordingly, the Reorganized Debtors should be estopped from arguing that BWC's classification of its Claim now forms a basis for denying BWC compensation for the post-petition benefits it provided to the Debtors.

**REPLY**

A.   The Court Has The Authority To Grant BWC Relief

5.     The Reorganized Debtors spend a significant amount of time setting forth various provisions of certain orders (the "Plan Orders") which set forth the requirements for filing an administrative expense claim.  Notably absent from the Objection is any mention by the Reorganized Debtors that the plan (the "Plan") expressly preserves this Court's authority to permit late filed claims. See Plan at ¶ 9.6(e).

6.     Moreover, it is well settled law that courts may deem claims timely filed and to permit post bar date amendments. See, e.g., In re Benedict, 65 B.R. 95, 96 (Bankr. N.D.N.Y. 1986); In re Rockville Orthopedic Associates, P.C., 365 B.R. 366, 369 (Bankr. D. Conn. 2007) (permitting a post bar date amendment to an informal proof of claim that was comprised of two pleadings where the creditor identified "itself as 'a creditor and party in interest.'").

Furthermore, it is beyond dispute that a court retains jurisdiction to review and amend its own orders.

7.  Thus, this Court can and respectfully should enter the relief sought in the Motion pursuant to established case law, its inherent authority and the terms of the Plan. Accordingly, the Court should grant BWC relief to compensate BWC for the post-petition benefits it conferred upon the Debtors and their estates and, which to now, have unjustly enriched them.

B.  BWC Has Satisfied The Elements To Have The Claim
    Deemed An Informal Administrative Expense Claim

8.  The Reorganized Debtors erroneously argue that the Claim does not satisfy the elements for an informal claim. As set forth in the Motion, the Claim more than meets the criteria to serve as an informal administrative expense claim. See, e.g., In re Enron Creditors Recovery Corp., 370 B.R. 90, 99 (Bankr. S.D.N.Y. 2007). First, the Claim is in writing and was filed with the court appointed claims agent, thus making the Claim part of the judicial record. Second, the Claim states that a debt exists as a result of workers' compensation coverage provided by BWC to one or more of the Debtors. Third, the Claim put the Debtors, and now the Reorganized Debtors, on notice that the debt was for administrative services provided by BWC for the Debtors' workers' compensation coverage. Fourth, although not required (See Hr'g Tr. pg. 62, lines 11-16, Aug. 27, 2010), the Claim provides an amount that is owed to BWC. The amount includes assessments that arose post-petition in connection with pre-petition injuries to the Debtors' employees. Fifth, the Claim is contained in a proof of claim form and clearly signals BWC's intent to hold the Debtors liable for the debt to BWC.[1] Accordingly, BWC has

---

[1] The Reorganized Debtors assert that BWC could not have relied upon In re Belden Locker Co., No. 06-60316, 2008 WL 762243 (Bankr. N.D. Ohio Mar. 21, 2008) because the case was decided after the Claim was filed. However, Belden was decided before the Administrative Expense Bar Date, and thus created confusion as to the classification of BWC's Claim.

satisfied the elements for an informal claim. Nothing more is required for the Court to deem the Claim a timely filed informal administrative expense claim.

9.  The Reorganized Debtors also try to impose additional elements to the test for informal claims to create the illusion that BWC's Claim does not constitute an informal administrative expense claim. For instance, the Reorganized Debtors attempt to make an issue with the Claim's reference to the word "premiums" and allege that BWC does not explain how it arrived at the amount of debt owed by the Debtors and Reorganized Debtors. However, BWC is not required to provide this information to have an informal claim.[2] Indeed, courts have found that correspondence or pleadings which provided the respective debtors and courts with limited information constituted informal proofs of claim. See, e.g., In re Plunkett, 191 B.R. 768 (Bankr. E.D. Wis. 1995); Sambo's Restaurants, Inc. v. Wheeler (In re Sambo's Restaurants, Inc.), 754 F.2d 811 (9th Cir. 1985).

10. Finally, the Reorganized Debtors' argument that BWC has done nothing more than allege that the Debtors knew about the claim for pre-petition assessments is specious. The Debtors, who satisfied their workers' compensation obligations through BWC for several years prior to their petition dates (the "Petition Dates"), are and were fully aware how BWC calculated assessments. The Debtors knew that an assessment for any given year was triggered by injuries to employees from prior years. Therefore, the Reorganized Debtors' argument that the Debtors only knew about pre-petition assessments is meritless.

11. Contrary to the Reorganized Debtors' assertion, the Claim gives ample notice that BWC seeks payment for assessments that were made post-petition. Indeed, the only reason BWC classified the Claim as pre-petition is because BWC believed that the date of the injury to

---

[2] BWC is willing to provide the Reorganized Debtors with all relevant, non-privileged information to substantiate the Claim.

the employee dictated whether a claim was pre or post-petition and the Debtors knew that such assessments were levied post-petition on account of pre-petition injuries.  Moreover, BWC's conduct, including having discussions with counsel for the Debtors and Reorganized Debtors, is further evidence that it intended to hold the Debtors liable for the debt incurred to BWC.  C.f. The Charter Company v. Dioxin Claimants (In re The Charter Company), 876 F.2d 861, 864 (11th Cir. 1989) (A court may "examine [all] … documents and actions of the claimants, even if they occur after the bar date…" in determining whether an informal claim was filed).  Finally, the supporting documentation attached to and incorporated into the Claim indicates some post-petition activity even if it related to pre-petition injuries.  Thus, the Reorganized Debtors are incorrect in stating that the Claim does not give sufficient notice of BWC's intent to hold the Debtors responsible for payment of assessments made post-petition.

C.      The Court Should Permit BWC To Amend The Claim

12.     As an initial matter, the Reorganized Debtors argue that BWC cannot amend its Claim because the Claim was expunged and BWC did not appeal the order (the "Order") expunging the Claim.  However, BWC was not required to appeal the Order because the Court invited BWC to seek further relief from the Court when it rendered its ruling during the Hearing.  However, should the Court decide that an appeal of the Order was a prerequisite to making a motion to amend the Claim, BWC respectfully requests that the Court treat the Motion and this Reply as a request for reconsideration of the Order pursuant to Federal Rule of Bankruptcy Procedure 9024 (the "Rules").

13.     As set forth in greater detail in the Motion, courts have developed a two prong test to determine whether to permit a creditor to amend a claim.  In re McLean Industries, Inc., 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990).  First, courts examine the claim to confirm that the

proposed amendment is not merely a new claim submitted under the guise of an amendment. Id. Second, courts conduct an equitable analysis to ensure that "granting the amendment [is] fair and impose[s] no undue hardship on a party." Id. The party opposing the amendment must demonstrate "overriding equities militating strongly against the amendment." Id. at 709. Amendments are warranted when "the purpose is to cure a defect in the claim as originally filed, … or to plead a new theory of recovery on the facts set forth in the original claim." In re Andover Togs, Inc., 231 B.R. 521, 549 (Bankr. S.D.N.Y. 1999).

14. The Reorganized Debtors erroneously argue that because an assessment is made post-petition it cannot be part of an amended claim, but instead must be a new claim. See Objection at pg. 14-15. The Reorganized Debtors try to analogize this matter to the Michigan Funds Administration's request to amend its claim. Id. at 16. However, the facts presented here are unique and do not resemble the Michigan Funds Administration's circumstances. The Michigan Funds Administration was attempting to amend a claim to include additional assessments for additional post-petition administration. Moreover, the first of Michigan Funds Administration's claims were not filed until after the modified plan (the "Modified Plan") was proposed. Here, BWC is not trying to add anything new, instead BWC is taking its direction from the Court that its Claim should be presented as administrative and not pre-petition. The assessments which comprise the Claim are the same. Thus, BWC's amended claim would do nothing more than conform the Claim to this Court's ruling during the Hearing.

15. Moreover, for the reasons set forth in the Motion and below, the equities weigh in favor of granting BWC leave to amend the Claim.

D.     BWC Should Be Permitted To File A Late Administrative Expense Claim

16.     The Reorganized Debtors argue that BWC fails to satisfy the "excusable neglect" standard set forth in Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380, 388-89 (1993).  According to the Reorganized Debtors, BWC's reliance on the Belden Locker decision negates a finding of neglect.  However, the concept of excusable neglect permits courts "to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control."  Pioneer Investment Services Co., 507 U.S. at 388-89 (emphasis added).  A mistake is "'(a)n error, misconception, or misunderstanding; an erroneous belief.'"  Krupski v. Costa Crociere S.p.A., 130 S.Ct. 2485, 2494 (2010) (Discussing mistake in the context of Federal Rule 15),[3] quoting Black's Law Dictionary 1092 (9th Ed. 2009).

17.     The Reorganized Debtors fail to explain how BWC's good faith determination that the assessments were pre-petition constitutes anything other than a mistake, particularly when the assessments arose from services provided in connection with pre-petition workers' compensation claims.  Tellingly, in the initial objection to the Claim, the Debtors agreed with BWC that the Claim was properly classified as pre-petition.  Nor do the Reorganized Debtors explain why reliance on existing case law, which this Court declined to adopt, also fails to constitute neglect and mistake.  Indeed, it is obvious that, at worst, BWC made a mistake, and thus satisfies the neglect prong of Pioneer.

18.     The Reorganized Debtors also argue that the Krupski decision does not apply because the Debtors may not have known that BWC was relying on the Belden Locker decision.  The Reorganized Debtors are again mistaken.  The Belden Locker decision supports BWC's

---

[3] Courts look to Rule 15 for guidance on late filed claims.

- 8 -

position. However, the issue is not whether the Debtors or Reorganized Debtors knew that BWC relied on the <u>Belden Locker</u> decision. The issue is whether under the standard set forth in <u>Krupski</u>, BWC made a mistake. Furthermore, given BWC and the Debtors' long term dealings with each other, and the presence of some post-petition activity set forth in the attachment to the Claim, BWC submits that the Debtors and Reorganized Debtors were well aware that the assessments set forth in the Claim were incurred post-petition.

19. The Reorganized Debtors point to BWC's citation of the <u>Belden Locker</u> decision as proof that BWC made an inexcusable decision to rely on the wrong law. However, prior to the Hearing, there was no indication that the Court would not adopt the <u>Belden Locker</u> decision, nor was there, to BWC's knowledge, any controlling, published case from this jurisdiction which contradicted BWC's belief that the Claim was properly classified as pre-petition. The absence of contrary authority is made more evident by the Debtors' own belief that assessments made post-petition for services performed in connection with pre-petition injuries are also pre-petition.

20. The Reorganized Debtors try to minimize the importance of BWC's timely filed Claim by arguing that BWC waited for more than a year to seek to file an administrative expense claim. No amount of spin changes the facts. BWC timely filed the Claim. The Debtors agreed, and took the position before this Court, that the Claim should be classified as pre-petition; the only disagreement was to whether the Claim was entitled to priority tax treatment or should be classified merely as a general unsecured claim. During the Hearing, the Court informed BWC that its Claim should be classified as administrative. BWC, acting on the Court's statements, filed the Motion to correct the classification of the Claim. BWC filed the Motion less than six weeks after the Hearing. Thus, BWC has always acted reasonably to protect its rights and to assert those rights in this case.

21. The Reorganized Debtors also deny knowledge of the post-petition nature of the assessments. Their claims are baseless. First, the Debtors, having had a long term relationship with BWC, knew how assessments were made. Second, the Claim contains a component which shows post-petition activity. The Reorganized Debtors simply cannot claim ignorance of the course of dealing between the Debtors and BWC, nor can they ignore the contents of the Claim.

22. Finally, there will be no opened floodgate if the Court grants BWC relief. There are no other creditors that are similarly situated with BWC. If such creditors existed, the Reorganized Debtors would have brought them to the Court's attention instead of making vague allegations. BWC is the sole provider of workers' compensation coverage in Ohio. Self-insurance is a privilege granted by BWC. There are a finite number of creditors who provided similar services in other states, most of whom have had any issues surrounding their claims resolved. Moreover, none of these creditors have the same factual circumstances. BWC timely filed its Claim, is not seeking to increase its amount, or add additional years of assessments. BWC was informed by this Court that its claim was administrative. The only thing BWC is doing is seeking relief to make its Claim comport with the Court's determination at the Hearing. Thus, it is extremely unlikely that granting BWC relief will embolden other creditors to seek similar relief, which this Court can always deny if it sees fit.

## **CONCLUSION**

WHEREFORE, for the reasons set forth above and in the Motion, BWC respectfully requests that the Court grant the Motion and either deem the Claim to be an allowed timely filed administrative expense claim or, alternatively, authorize BWC to file an amended claim, or, alternatively, permit BWC to file a late administrative expense claim, and requests such other and further relief as the Court may deem just and proper.

| | |
|---|---|
| Dated: New York, New York<br>February 16, 2011 | Respectfully submitted,<br><br>Baker & Hostetler LLP<br><br><br>*/s/ Marc Skapof*<br>Marc Skapof<br>45 Rockefeller Plaza<br>New York, NY 10111<br>Telephone: (212) 589-4200<br>Facsimile (212) 589-4201<br><br>*Attorneys for Ohio Bureau of Workers' Compensation* |