TOGUT, SEGAL & SEGAL LLP  
Bankruptcy Conflicts Counsel for DPH Holdings Corp, *et al.*,  
Reorganized Debtors  
One Penn Plaza, Suite 3335  
New York, New York 10119  
(212) 594-5000  
Albert Togut  
Neil Berger  
Lara Sheikh  

HEARING DATE: 5/26/11  
AT: 10:00 A.M.

DPH Holdings Corp. Legal Information Hotline:  
Toll Free: (800) 718-5305  
International: (248) 813-2698  

DPH Holdings Corp. Legal Information Website:  
http://www.dphholdingsdocket.com  

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
-------------------------------------------------------------x  
In re:  

DPH HOLDINGS CORP., et al.,  

               Reorganized Debtors.  
-------------------------------------------------------------x  

Chapter 11  
Case No. 05-44481 [RDD]  

Jointly Administered  

**REORGANIZED DEBTORS' STATEMENT OF DISPUTED ISSUES
WITH RESPECT TO PROOF OF ADMINISTRATIVE EXPENSE
CLAIM NOS. 19069, 19087, 19088, 19123, 19124, 19125, 19602,
19603, 19604, 19815, 19816, AND 19817 (BANK OF AMERICA, N.A.)**

**("STATEMENT OF DISPUTED ISSUES –
BANK OF AMERICA, N.A.")**

DPH Holdings Corp. and its affiliated reorganized debtors in the above captioned cases (collectively, the "Reorganized Debtors") hereby submit this Statement of Disputed Issues (the "Statement of Disputed Issues") With Respect to Proof of Administrative Claim Numbers 19069, 19087, 19088, 19123, 19124, 19125, 19602, 19603, 19604, 19815, 19816, and 19817 filed by Bank of America, N.A. (the "Claimant") and respectfully represent as follows:

**Background**

1.     On October 8 and 14, 2005 (the "Petition Date"), Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, including Delphi Automotive Systems Human Resources LLC ("DAS HR") and Delphi Automotive Systems LLC ("DAS") (collectively, the "Debtors"), predecessors to the Reorganized Debtors, filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Chapter 11 Cases").

2.     On October 6, 2009, the Debtors substantially consummated the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified, (the "Modified Plan"), which had been approved by this Court pursuant to an order entered July 30, 2009 (Docket No. 18707), and emerged from chapter 11 as the Reorganized Debtors. Article 9.6(a) of the Modified Plan provides that "[t]he Reorganized Debtors shall retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving all Claims against, and Interests in, the Debtors and making distributions (if any) with respect to all Claims and Interests."

**A.    The July 15, 2009 Claims**

3.     On or about July 15, 2009, Claimant filed Proofs of Administrative Claim 19087 and 19124 ("Claims 19087 and 19124") against DAS HR. Claims 19087 and 19124 are exact duplicates and assert an administrative priority claim in an unliquidated amount in excess of $8,691,000, triggered by DAS HR's rejection of a certain Learjet aircraft lease dated March 30, 2001 (the "Learjet Lease") and a certain Challenger aircraft lease, dated March 30, 2001 (the "Challenger Lease," together with the Learjet Lease, the "Rejected Leases" or the "Leases") pursuant to the Modified Plan.

2

       4.      On or about July 15, 2009, Claimant filed Proofs of Administrative Claim 19069 and 19125 ("Claims 19069 and 19125") against DAS. Claims 19069 and 19125 are exact duplicates and assert an administrative priority claim in an unliquidated amount in excess of $8,691,000, arising from DAS's guaranty of DAS HR's obligations under the Rejected Leases.

       5.      On or about July 15, 2009, Claimant filed Proofs of Administrative Claim 19088 and 19123 ("Claims 19088 and 19123") against Delphi. Claims 19088 and 19123 are exact duplicates and assert an administrative priority claim in an unliquidated amount in excess of $8,691,000, arising from Delphi's guaranty of DAS HR's obligations under the Rejected Leases.

**B.**    **The September 15, 2009 Claims**

       6.      On or about September 15, 2009, Claimant filed Proof of Administrative Claim 19602 ("Claim 19602") against DAS HR. Claim 19602 asserts an administrative priority claim in an unliquidated amount in excess of $10,352,500, triggered by DAS HR's rejection of the Leases pursuant to the Modified Plan.

       7.      On or about September 15, 2009, Claimant filed Proof of Administrative Claim 19603 ("Claim 19603") against DAS. Claim 19603 asserts an administrative priority claim in an unliquidated amount in excess of $10,352,500, arising from DAS's guaranty of DAS HR's obligations under the Rejected Leases.

       8.      On or about September 15, 2009, Claimant filed Proof of Administrative Claim 19604 ("Claim 19604") against Delphi. Claim 19604 asserts an administrative priority claim in an unliquidated amount in excess of $10,352,500, arising from Delphi's guaranty of DAS HR's obligations under the Rejected Leases.

C.   **The November 2, 2009 Claims**

9.   On or about November 2, 2009, Claimant filed Proof of Administrative Claim 19815 ("Claim 19815") against DAS HR.  Claim 19815 asserts an administrative priority claim in an unliquidated amount in excess of $10,633,035, triggered by DAS HR's rejection of the Leases pursuant to the Modified Plan.

10.  On or about November 2, 2009, Claimant filed Proof of Administrative Claim 19816 ("Claim 19816") against Delphi.  Claim 19816 asserts an administrative priority claim in an unliquidated amount in excess of $10,633,035, arising from Delphi's guaranty of DAS HR's obligations under the Rejected Leases.

11.  On or about November 2, 2009, Claimant filed Proof of Administrative Claim 19817 ("Claim 19817") against DAS.  Claim 19817 asserts an administrative priority claim in an unliquidated amount in excess of $10,633,035, arising from DAS's guaranty of DAS HR's obligations under the Rejected Leases.

D.   **The Omnibus Objections and Responses Thereto**

12.  On October 15, 2009, the Debtors objected to Claim 19088 pursuant to The Debtors' Thirty-Seventh Omnibus Objection Pursuant to 11 U.S.C. § 503(b) and Fed. R. Bankr. P. 3007 to Expunge Certain (I) Prepetition Claims, (II) Equity Interest, (III) Books and Records Claims, (IV) Untimely Claims, (V) Paid Severance Claims (VI) Pension, Benefit and OPEB Claims and (VII) Duplicate Claims (the "Thirty-Seventh Omnibus Objection") (Docket No. 18984) on the ground that Claim 19088 is duplicative of Claim 19123.

13.  On October 27, 2009, Claimant filed its Response to the Thirty-Seventh Omnibus Objection (Docket No. 19018).

14.  On November 2, 2009, Claimant filed its Amended Response to the Thirty-Seventh Omnibus Objection (Docket No. 10922), in which Claimant requested

that one set of its claims filed on or about July 15, 2009 be deemed allowed and the other duplicative set of claims be conditionally disallowed. Claimant asserted that in the event that the Reorganized Debtors object to one or more of the remaining allowed claims, then the conditionally disallowed claims should be deemed automatically reinstated and allowed. The Thirty-Seventh Omnibus Objection was adjourned as to Claim 19088.

    15. On April 16, 2010, the Debtors objected to Claim 19069, Claim 19087, Claim 19123, Claim 19124, Claim 19125, Claim 19602, Claim 19603, Claim 19604, Claim 19815, Claim 19816, and Claim 19817 (together with Claim 19088, the "Claims"), pursuant to The Debtors' Forty-Seventh Omnibus Objection Pursuant to 11 U.S.C. § 503(b) and Fed. R. Bankr. P. 3007 to (I) Disallow And Expunge (A) Certain Administrative Expense Books and Records Claims, (B) A Certain Administrative Expense Duplicate Claim, and (C) Certain Administrative Expense Duplicate Substantial Contribution Claims, and (II) Modify Certain Administrative Expense Claims (the "Forty-Seventh Omnibus Objection") (Docket No. 19873) on the ground that the Claims are not reflected on the Debtors' books and records.

    16. On May 11, 2010, Claimant filed responses (each, a "Response," and, collectively, the "Responses") (Docket Nos. 20018, 20019, 20020, 20022, 20023, 20024, 20025, 20026, 20027 and 20028) to the Forty-Seventh Omnibus Objection, asserting that the Claims are valid administrative priority expenses that were incurred by Claimant upon rejection of the Leases relating to maintenance, remarketing, and diminution in value of the aircraft. Specifically, in its Responses, Claimant asserts post-petition administrative expense claims against each of DAS HR, DAS and Delphi in an amount not less than $8,902,276.77 comprised of the following:

      (a)    <u>Administrative Remarketing Fee</u>: Claimant asserts an "Administrative Remarketing Fee Claim" under Schedule 2-A Lease Supplement No. 1 and the Maintenance and Return Addendum (the "Addendum") to the Leases, pursuant to which "the Debtors agreed to pay a remarketing fee for the [Aircraft] upon [their] return to the Bank." Response ¶ 20(a), (b). Claimant calculates the remarketing fee for the Learjet at $1,001,268.00, and for the Challenger at $1,690,483.20. *Id*. The Addendum to the Leases provides in relevant part that DAS HR shall "upon the return of the Aircraft upon the expiration or other termination of this Lease (whether following an Event or Default or otherwise), …pay to Lessor the Remarketing Fee" (emphasis added).[1]

      (b)    <u>Administrative Maintenance Claims</u>: Claimant asserts an "Administrative Maintenance Claim" pursuant to the Addendum. Response ¶ 20(e), (f). Specifically, the Addendum provides:

> Upon the expiration, cancellation or other termination of the Lease (whether following an Event or Default or otherwise), Lessee, at its own expense, will return the Aircraft (together with all Records) to Lessor at a location specified by the Lessor…in the condition in which the Aircraft is required to be maintained pursuant to this M&R Addendum and any other applicable provisions of the Lease.[2]

According to Claimant's inspection of the aircraft following termination of the Leases, the Debtors' obligations under this provision of the Addendum total $51,703.37 for the Learjet Lease, and $131,214.20 for the Challenger Lease. Response ¶ 20(e), (f).

<u>Administrative Diminution Claims</u>: Finally, Claimant asserts an "Administrative Diminution Claim" for the decrease in value of the aircraft subject to the Leases during the pendency of the Chapter 11 cases. Response ¶ 20(g), (h). Specifically, the Addendum provide that "upon the expiration, cancellation or other termination of the Lease" the Debtor must pay for any diminution in value of the Aircraft upon their return to the Lessor if (i) any repairs were made to the Aircraft, or if (ii) the "Actual Annual Hours" for the period from the "Acceptance Date" to the return date is ten percent greater than "Estimated Annual Hours."[3] Claimant asserts an Administrative Diminution Claim of: (i) $2,150,816 for the aircraft subject to the Learjet Lease, Response ¶ 20(g), and (ii) $3,876,792 for the aircraft subject to the Challenger Lease, Response ¶ 20(h).

---

[1]   *See*, Learjet Aircraft Lease at 49, Challenger Aircraft Lease at 49. True and correct copies of the Leases are attached as Exhibit "1."
[2]   *See*, Learjet Aircraft Lease at 49, Challenger Aircraft Lease at 49.
[3]   *See*, Learjet Aircraft Lease at 49-50. Challenger Aircraft Lease at 49-50.

**Disputed Issues**

17.     The Debtors' books and records show no post-petition amounts due and owing under the Leases. According to the Debtors' books and records, DAS HR remained current on all post-petition obligations under the Rejected Leases through the October 6, 2009 rejection date, including, without limitation, the payment of rent and maintenance of the aircraft subject to the Leases.

18.     The Claims are based entirely on provisions of the Leases that were triggered by the Debtors' rejection of the Leases and therefore, to the extent valid, are entitled to general unsecured status as rejection damages pursuant to Bankruptcy Code § 365(g)(1) and relevant caselaw.

19.     Claimant has separately filed general unsecured claims alleging damages arising from the Rejected Leases, which incorporate, among other amounts, the remarketing fees, maintenance and diminution in value claims that comprise the Claims, and the Debtors reserve all of their rights regarding those general unsecured claims.

20.     Based on the foregoing, there are no amounts owing on account of the Claims, which are entitled to administrative priority, and the Reorganized Debtors request that the Claims be disallowed and expunged.

**[Concluded on Following Page]**

<u>Reservation Of Rights</u>

21.    This Statement Of Disputed Issues is submitted by the Reorganized Debtors pursuant to paragraph 9(d) of the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims (Docket No. 6089) (the "Claims Objection Procedures Order").  Consistent with the provisions of the Claims Objection Procedures Order, the Reorganized Debtors' submission of this Statement Of Disputed Issues is without prejudice to (a) the Reorganized Debtors' right to later identify and assert additional legal and factual bases for disallowance, expungement, reduction, or reclassification of the Claim(s) and (b) the Reorganized Debtors' right to later identify additional documentation supporting the disallowance, expungement, reduction, or reclassification of the Claim(s).

Dated:   New York, New York
         March 29, 2011

DPH HOLDINGS CORP., *et al.*
By their attorneys,
TOGUT, SEGAL & SEGAL LLP
By:

/s/ Neil Berger
NEIL BERGER
A Member of the Firm
One Penn Plaza
New York, New York 10119
(212) 594-5000

05-44481-rdd    Doc 21187    Filed 03/29/11    Entered 03/29/11 15:30:36    Main Document
Pg 9 of 9

# EXHIBIT "1"

## True and Correct Copies of the Leases