# EXHIBIT A

# (PART 3)

0 0 0 0 0 0 0 1 4 4 4

8-19

PURCHASE, EARLY PURCHASE AND RENEWAL OPTION ADDENDUM ("Option Addendum") to Aircraft Lease (N699DA) dated as of March 30, 2001 (the "Lease") by and between Fleet National Bank, as lessor ("Lessor"), and SM 5105 LLC, as lessee ("Lessee"):

All capitalized terms used herein which are not otherwise defined herein shall have the meanings given to such terms in the Lease. Except as set forth herein, all of the terms and conditions of the Lease and any supplements, schedules, addenda, exhibits or the like entered into pursuant to the Lease remain in full force and effect. Execution of the Lease by Lessee and Lessor shall be deemed to constitute execution and acceptance of the terms and conditions hereof, whereupon this Option Addendum shall be deemed to be a part of the Lease.

The following provisions are hereby incorporated into the Lease:

Purchase, Early Purchase and Renewal Options.

(a) End of Term Purchase Option. So long as (i) Lessee shall not have exercised its renewal option pursuant to paragraph (b) hereof and (ii) the Lease shall not have been earlier terminated or cancelled, Lessee shall be entitled, at its option, upon written notice to Lessor at least one hundred fifty (150) days but no more than two hundred forty (240) days prior to the expiration of the Basic Term, to purchase the Aircraft at the expiration of the Basic Term for an amount, payable in immediately available funds, equal to the greater of (i) fifty-seven percent (57%) of the Lessor's Cost, or (ii) the Fair Market Sales Value of the Aircraft as of the end of the Basic Term determined in accordance with paragraph (c) hereof, plus any applicable sales, excise or other taxes imposed as a result of such sale (other than gross or net income taxes attributable to such sale) together with any Basic Rent due and payable on or before such Basic Rent Date and all accrued and unpaid Rent then due and owing. Lessor's sale of the Aircraft shall be on an "AS-IS WHERE-IS" BASIS, WITHOUT ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, OF ANY KIND WHATSOEVER, BY, OR RECOURSE TO, LESSOR.

(b) Renewal Option. So long as (i) no Default or Event of Default shall have occurred and be continuing under the Lease, (ii) Lessee shall not have exercised its purchase option pursuant to paragraph (a) hereof or its early purchase option pursuant to paragraph (e) hereof and (iii) the Lease shall not have been earlier terminated, Lessee shall be entitled, at its option, to extend the Term of the Lease with respect to the Aircraft at the expiration of the Basic Term for an additional period as set forth below. A Renewal Term shall commence at the expiration of the Basic Term. Lessee's option to renew the Lease for a Renewal Term shall be exercisable by giving written notice to Lessor at least one hundred fifty (150) days but no more than two hundred forty (240) days prior to the expiration of the Basic Term. All of the provisions of the Lease shall be applicable during the Renewal Term, except that, during the Renewal Term, the Basic Rent shall be an amount equal to the Aircraft's Fair Market Rental Value, which shall be determined in accordance with paragraph (c) hereof and the Expiration Date shall be changed to the date the last day of the Renewal Term. During the Renewal Term, Basic Rent shall be payable monthly in advance on the same day of each month as Basic Rent was payable during the Basic Term, which dates shall be deemed "Basic Rent Dates" for purposes of the Lease.

(c) Determination of Fair Market Sales and Rental Values. If Lessee has elected to exercise its purchase or renewal options, as provided in paragraphs (a) or (b) hereof, then as soon as practicable following Lessor's receipt of the written notice from Lessee of Lessee's intent to exercise such option, Lessor and Lessee shall consult for the purpose of determining the Fair Market Sales Value or Fair Market Rental Value, as applicable, (as defined below) of the Aircraft as of the end of the Basic Term, and any values agreed upon in writing shall constitute such Fair Market Sales Value or Fair Market Rental Value, as the case may be, of the Aircraft for the purposes of this Option Addendum. If Lessor and Lessee fail to agree upon such value prior to one hundred thirty-five (135) days before the expiration of the Basic Term, Lessor shall appoint an independent appraiser (reasonably acceptable to Lessee) to determine Fair Market Sales Value or Fair Market Rental Value, as the case may be, and that

RSCOMBS 366237                                        45                                        (AIRCRAFT LEASE)

0 0 0 0 0 0 0 1 4 4 5                                        8-17

determination shall be final, binding and conclusive.  Lessee and Lessor agree to split the costs and expenses of any such appraisal.  For the purposes of this Option Addendum, "Fair Market Sales Value" and "Fair Market Rental Value" shall be determined on the basis of, and shall equal in value, the amount which would be obtained in an arm's length transaction between an informed and willing buyer-user or lessee, as the case may be, (who is neither a lessee in possession nor a used equipment dealer) and an informed and willing seller or lessor, as the case may be, under no compulsion to sell or lease, as the case may be, and in such determination costs of removal of the Aircraft from its then location shall not be a deduction from such Fair Market Sales Value or Fair Market Rental Value, as the case may be, and it shall be assumed (whether or not the same be true) that the Aircraft has been maintained by Lessee and returned to Lessor in accordance with the provisions of the Lease.  .  If on the date upon which Lessee exercises its purchase option pursuant to paragraph (a) above, the actual average annual flight hours accumulated with respect to the Airframe (such product, the "Actual Annual Hours") for the period from the Acceptance Date to such purchase date (such period, the "Operating Period"), is greater than the Estimated Annual Hours (as defined below), then, Lessor and Lessee shall consult for the purpose of determining the Fair Market Sales Value and the Excess Use Amount (as defined below) of the Aircraft as of such purchase date, and any values agreed upon in writing shall constitute such Fair Market Sales Value and Excess Use Amount of the Aircraft for the purposes of this Option Addendum.  If Lessor and Lessee fail to agree upon such values within 30 days after the purchase date, then Lessor and Lessee shall follow the appraisal procedure set forth in this paragraph (c) for the purpose of determining the Fair Market Sales Value and Excess Use Amount of the Aircraft.  Lessee shall then pay to Lessor within ten (10) days of Lessor's written demand therefor (which demand shall, unless determination of the amount payable is otherwise agreed upon by Lessor and Lessee without consulting with an appraiser, be accompanied by a copy of an appraiser's report containing such determination), an amount equal to the Excess Use Amount.  For the purposes of this Option Addendum, (A) "Excess Use Amount" shall mean the amount by which the Aircraft's Fair Market Sales Value has been diminished as a result of the Actual Annual Hours accumulated with respect to the Airframe during the Operating Period being greater than the Estimated Annual Hours per annum on average; and (B) "Estimated Annual Hours" shall mean the anticipated number of average annual flight hours as shown on Schedule 2-A to Lease Supplement No. 1.  Without limiting the generality of any other provision of the Lease, Lessee's obligation to pay the Excess Use Amount shall survive the expiration of this Lease.

(d) Time to Exercise Option.  Lessee shall be deemed to have waived the foregoing purchase option and renewal option unless Lessee provides Lessor with written notice of its irrevocable election to exercise the applicable option within fifteen (15) days after the Fair Market Sales Value and/or Fair Market Rental Value, as applicable, is determined (by agreement or appraisal).

(e) Early Purchase Option.  So long as no Default or Event of Default (that can be cured by payment of money) shall have occurred and be continuing hereunder, Lessee shall be entitled, at its option, on each Early Purchase Date upon written notice to Lessor of at least one hundred twenty (120) but no more than one hundred eighty (180) days prior to the proposed Early Purchase Date, to purchase the Aircraft.  Such early purchase by Lessee shall be effective upon the payment to the Lessor on the Early Purchase Date of an amount equal to the applicable Early Purchase Option Amount together any applicable sales, excise or other taxes imposed as a result of such sale (other than gross or net income taxes attributable to such sale), any Basic Rent due and owing on or before such Early Purchase Date and all accrued and unpaid Rent then due and owing for the Aircraft.

On the Early Purchase Date, but in no event prior to Lessor's receipt of the amounts specified in this paragraph (e), Lessor shall sell the Aircraft to Lessee on an "AS-IS, WHERE-IS" BASIS, WITHOUT ANY REPRESENTATION BY, OR RECOURSE OR WARRANTY, EXPRESS OR IMPLIED, OF ANY KIND WHATSOEVER TO LESSOR.  Upon receipt of the amounts specified in the foregoing paragraph and upon consummation of the sale of the Aircraft, this Lease shall be deemed terminated.

RSCOMBS 366237                                  .46                              (AIRCRAFT LEASE)

0 0 0 0 0 0 0 1 4 4 6

8-15

Unless and until the foregoing payments and performance have been made and/or observed in full by Lessee, Lessee's obligations under this Lease, including, without limitation, the obligation to pay Basic Rent for the Aircraft, shall continue in full force and effect.

Notwithstanding anything to the contrary contained herein or otherwise, Lessee shall not be entitled to purchase the Aircraft pursuant to this paragraph (e) if an Event of Default or Default shall have occurred and be continuing, this Lease shall have been earlier terminated and/or the Aircraft purchased or upgraded on or prior to the proposed Early Purchase Date.

(f) Additional Definitions.  For purposes of this Option Addendum and the Lease, the following terms shall have the following meanings:

Renewal Term shall mean a period of twelve months.

Early Purchase Date shall mean each of the Basic Rent Date designated as such on Schedule 2A to Lease Supplement No. 1.

Early Purchase Option Amount shall be the amount payable by the Lessee in the event that it exercises its option to purchase the Aircraft pursuant to paragraph (e) hereof, and shall be determined by multiplying the Lessor's Cost of the Aircraft by the percentage set forth opposite the applicable Early Purchase Date set forth on Schedule No. 2-A to Lease Supplement No. 1 to the Lease.

0 0 0 0 0 0 0 1 4 4 7

8-13

**MAINTENANCE AND RETURN ADDENDUM** ("M&R Addendum") to Aircraft Lease (N699DA) dated as of March 30, 2001 (the "Lease") by and between Fleet National Bank, as lessor ("Lessor"), and SM 5105 LLC, as lessee ("Lessee").

All capitalized terms used herein which are not otherwise defined herein shall have the meanings given to such terms in the Lease. Except as set forth herein, all of the terms and conditions of the Lease and any supplements, schedules, addenda, exhibits or the like entered into pursuant to the Lease remain in full force and effect. Execution of the Lease by Lessee and Lessor shall be deemed to constitute execution and acceptance of the terms and conditions hereof, whereupon this M&R Addendum shall be deemed to be a part of the Lease.

The following provisions are hereby incorporated into the Lease:

I. Maintenance of Aircraft.

(a) Maintenance and Operation. During the Term, Lessee, at its own cost and expense, shall (i) maintain, inspect, service, repair, overhaul and test the Airframe and each Engine in accordance with FAA approved and Manufacturer's recommended maintenance programs; (ii) maintain (in the English language) all Records and (iii) promptly furnish to Lessor such information as may be required to enable Lessor to file any reports required by any governmental authority as a result of Lessor's ownership of the Aircraft. All maintenance procedures shall be performed in accordance with all FAA and Manufacturer's standards and procedures by properly trained, licensed, and certified maintenance sources and maintenance personnel utilizing replacement parts approved by the FAA and the Manufacturer, so as to keep the Airframe and each Engine and Part in good operating condition, ordinary wear and tear alone excepted, and to enable the airworthiness certificate for the Aircraft to be continually maintained.

In the event any Engine is damaged or is being inspected or overhauled, Lessee, at its option, may substitute another engine of the same make and model as the Engine being repaired or overhauled provided such Engine is approved by the FAA and the manufacturer of the Airframe for use on the Aircraft (any such substitute engine being hereinafter referred to as a "Loaner Engine") during the period of such repair or overhaul and provided further (x) installation of the Loaner Engine is performed by an FAA and manufacturer certified mechanic with respect to an aircraft of the type of the Aircraft, (y) the Loaner Engine is removed and the repaired or overhauled original Engine is reinstalled on the Airframe promptly upon completion of the repair or overhaul of the original Engine but in no event later than the expiration, cancellation or earlier termination of the Term and (z) the Loaner Engine is free and clear of all Liens and is maintained in accordance herewith.

(b) Additions, Alterations and Replacement Parts. Lessee shall be entitled from time to time during the Term to acquire and install on the Aircraft at Lessee's own cost and expense (and Lessor hereby appoints Lessee to be Lessor's agent for such purpose, so long as no Event of Default has occurred and is continuing), any additional accessory, device or equipment as may be available at such time ("Additions") but only so long as such Additions (i) are ancillary to the Aircraft; (ii) are not required to render the Aircraft complete for its intended use by Lessee; (iii) will not impair the originally intended function or use of the Aircraft or diminish the value of the same; (iv) can be readily removed without causing material damage to the Aircraft and (v) in the event that Lessee has executed a Special Tax Indemnity Rider to the Lease, do not result in a "Tax Loss" as such term is defined in such Special Tax Indemnity Rider. Title to each Addition which is not removed by Lessee prior to the return of the Aircraft to Lessor shall vest in Lessor upon such return.

Any alteration or modification ("Alterations") with respect to the Aircraft that may at any time during the Term be required to comply with any applicable law or any governmental rule or regulation, including, without limitation, any airworthiness directives, shall be made at the expense of Lessee.

RSCOMBS 366237                              48                              (AIRCRAFT LEASE)

0 0 0 0 0 0 0 1 4 4 8                                    8-11

Lessee, at its own cost and expense, will promptly replace all Parts which may from time to time become worn out, lost, stolen, taken, destroyed, seized, confiscated, requisitioned, damaged beyond repair or permanently rendered or declared unfit for use for any reason whatsoever.

Lessee shall repair all damage to the Aircraft resulting from the installation and removal of Additions, Alterations and/or replacement parts so as to restore the Aircraft to its condition prior to installation, ordinary wear and tear excepted.

Alterations and/or replacement parts shall be deemed accessions, and title thereto shall be immediately vested in Lessor without cost or expense to Lessor.

(c) Aircraft Marking. Lessee agrees, at its own cost and expense, to (i) cause the Airframe and the Engines to be kept numbered with the identification or serial number therefor as specified in Schedule No. 1 to Lease Supplement No. 1 hereof; (ii) prominently display on the Aircraft that "N" number, and only that "N" number, specified in Schedule No. 1 to Lease Supplement No. 1 or such other "N" number as has been approved in writing by the Lessor and duly recorded with the FAA; (iii) notify Lessor in writing thirty (30) days prior to making any change in the configuration, appearance or coloring of the Aircraft from the time the Aircraft is accepted by Lessee hereunder (other than changes in configuration mandated by the FAA or changes which are reasonably consistent with the configuration, appearance and coloring of the Aircraft as of the Acceptance Date) and in the event of any such change or modification of configuration, coloring or appearance, (other than as permitted hereby) at the request of Lessor to restore the Aircraft to the configuration, coloring and/or appearance of the Aircraft as of the Acceptance Date or, at Lessor's option to pay to Lessor an amount equal to the reasonable cost of such restoration and (iv) affix and maintain in the Airframe adjacent to the airworthiness certificate and on each Engine a two-inch by four-inch plaque made of metal or other permanent material or permanently painted stencil bearing the following legend:

"This property is Owned by and Leased from Fleet National Bank, c/o Fleet Capital Corporation, One Financial Plaza, Fifth Floor, Providence, Rhode Island 02903. Any removal, alteration, disposal or other change in the condition or location of this property must be approved by the Owner-Lessor."

and such other markings as from time to time may be required by law or otherwise deemed necessary or advisable by Lessor in order to protect the title of Lessor to the Aircraft and the rights of Lessor under this Lease.

II. Return of Aircraft.

(a) Condition Upon Return. Unless purchased by Lessee, upon the expiration, cancellation or other termination of the Lease (whether following an Event of Default or otherwise), Lessee, at its own expense, will return the Aircraft (together with all Records) to Lessor at a location specified by the Lessor within the continental United States and in the condition in which the Aircraft is required to be maintained pursuant to this M&R Addendum and any other applicable provisions of the Lease. The Aircraft shall be fully equipped with the Engines or the same number, make and model number of engines as are set forth on Schedule No. 1 to Lease Supplement No. 1, which shall fully comply with this M&R Addendum, and which, in the opinion of Lessor, have the same or improved utility, value, useful life, performance, and efficiency (normal wear and tear excepted) as the Engines had on the Acceptance Date and are suitable for use on the Airframe and owned by Lessor and properly installed thereon. Lessee shall not be relieved of any of its duties, obligations, covenants, or agreements under the Lease (including, without limitation, its obligation to pay Rent) prior to the return of the Aircraft in the manner and condition required with respect to such return. In addition, upon the return of the Aircraft, upon the expiration or other termination of this Lease (whether following an Event of Default or otherwise), Lessee shall pay to Lessor the Remarketing Fee. The Aircraft, at Lessee's expense, upon redelivery pursuant hereto (i) shall have a currently effective FAA airworthiness certificate; (ii) shall be free and clear of all Liens other than the Lease and any Lessor's Liens; (iii) shall be in the same configuration and in the

RSCOMBS 366237                                    49                                    (AIRCRAFT LEASE)

0 0 0 0 0 0 0 1 4 4 9                                    8-9

same operating condition, ordinary wear and tear excepted, as when delivered to Lessee on the Acceptance Date; (iv) shall be in good operating condition, in good physical condition and good appearance (ordinary wear and tear excepted) with all systems operating normally; (v) shall have no damage history (including, without limitation, any damage history required to be reported on a FAA form #337 or pursuant to any other governmental reporting requirement), unless such damage history has been repaired in accordance with the provisions hereof, and after the making of such repairs, the value of the Aircraft has not been negatively affected (or in the event that the value of the Aircraft continues to be negatively affected after such repairs, Lessee may avoid any Default that might otherwise result therefrom by paying to Lessor an amount equal to the difference between the value of the Aircraft without such history and the value of the Aircraft with such history); (vi) shall have no open (and shall be in compliance with) all mandatory service bulletins, manufacturer's directives or airworthiness directives and all other applicable service, maintenance, repair and overhaul regulations issued by the FAA and/or any Manufacturer, and (vii) shall be otherwise in the condition and repair required under the Lease.  For purposes of clause (v) of the preceding sentence, the existence and the extent of any diminution in value contemplated therein shall be determined by mutual agreement, and if no such agreement is reached between the parties within ten (10) Business Days of Lessor's notice that it desires a valuation with respect to such damage history (the "Damage History Notice"), the parties will use the appraisal process set forth in Paragraph (c) of the Option Addendum to determine the existence and extent of such diminution. The parties will use their best efforts to complete such valuation as promptly as practicable, but, in any event, within thirty (30) Business Days after the Damage History Notice. A final determination regarding the existence and extent of any diminution shall be binding and conclusive on both parties. Upon Lessor's request, Lessee shall assign to Lessor Lessee's rights under any manufacturer's or servicer's maintenance service contracts and/or extended warranties for the Aircraft, the Engines and/or any Parts. If at the time of the return of the Aircraft to Lessor, the actual average annual flight hours accumulated with respect to the Airframe (such product, the "Actual Annual Hours") for the period from the Acceptance Date to such return date (such period, the "Operating Period"), is ten percent (10%) greater than the Estimated Annual Hours (as defined below), then, Lessor and Lessee shall consult for the purpose of determining the Fair Market Sales Value and the Excess Use Amount (as defined below) of the Aircraft as of the return date, and any values agreed upon in writing shall constitute such Fair Market Sales Value and Excess Use Amount of the Aircraft for the purposes of this M&R Addendum. If Lessor and Lessee fail to agree upon such values within 30 days after the return date, then Lessor and Lessee shall follow the appraisal procedure set forth in paragraph (c) of the Option Addendum to the Lease for the purpose of determining the Fair Market Sales Value and Excess Use Amount of the Aircraft. Lessee shall then pay to Lessor within ten (10) days of Lessor's written demand therefor (which demand shall, unless determination of the amount payable is otherwise agreed upon by Lessor and Lessee without consulting with an appraiser, be accompanied by a copy of an appraiser's report containing such determination), an amount equal to the Excess Use Amount.  For the purposes of this M&R Addendum, (A) "Excess Use Amount" shall mean the amount by which the Aircraft's Fair Market Sales Value has been diminished as a result of the Actual Annual Hours accumulated with respect to the Airframe during the Operating Period being greater than the Estimated Annual Hours per annum on average; and (B) "Estimated Annual Hours" shall mean the anticipated number of average annual flight hours as shown on Schedule 2-A to Lease Supplement No. 1.

(b)  Mid-Life Condition.  At the time of such return (i) each Engine shall have available operating hours until both the next scheduled "hot section" inspection and the next scheduled major overhaul of not less than fifty percent (50%) of the total operating hours available between such "hot section" inspection or major overhaul, as the case may be; (ii) the Airframe shall have remaining not less than (aa) fifty percent (50%) of the available operating hours allowed between major airframe inspections; and (bb) fifty percent (50%) of number of operating months allowed between major airframe inspections until the next scheduled major airframe inspection; and (iii) all life limited parts and components shall have remaining not less than fifty percent (50%) of the available hours, cycles and/or months, as the case may be, until the next scheduled replacement.  In addition to the requirements set forth in clauses (i), (ii) and (iii) above, all inspections and scheduled maintenance required to be performed on the Airframe, Engines and all

0 0 0 0 0 0 0 1 4 5 0

8-7

life limited parts and components within one hundred twenty (120) days of the date of return and/or one hundred hours (100) of additional operation shall have been performed by Lessee.

(c) Engines. In the event that any Engine does not meet the conditions set forth in Section II (b)(i) above, for each such Engine Lessee shall pay Lessor an amount equal to the sum of (i) the current estimated cost of the next scheduled "hot section" inspection (including in such estimated cost, all required replacements of life limited parts) multiplied by the fraction wherein the numerator shall be the greater of (A) zero and (B) the remainder of (x) the actual number of operating hours since the previous hot section inspection, minus (y) 50% of the total operating hours allowable between hot section inspections, and the denominator shall be the total operating hours allowable between hot section inspections, plus (ii) for each such Engine, the product of the current cost of the next scheduled major overhaul (including in such estimated cost, all required replacements of life limited parts) multiplied by the fraction wherein the numerator shall be the greater of (A) zero and (B) the remainder of (x) the actual number of hours of operation since the previous major overhaul minus (y) 50% of the total operating hours allowable between major overhauls, and the denominator shall be the total operating hours allowable between major overhauls.

Notwithstanding the foregoing, the requirements of Section II (b)(i) above and the final sentence of Section II (b) above (but solely with respect to the Engines) shall be deemed to have been satisfied if at the time of return of the Engines (x) the Engines being returned to Lessor shall be covered by a service and maintenance contract in form and substance reasonably satisfactory to Lessor which provides for the maintenance and/or overhaul of the Engines ("Maintenance Contract"), (y) either (i) adequate reserves for future required maintenance and/or overhaul shall have been provided for pursuant to such Maintenance Contract or (ii) all amounts due and payable pursuant to such Maintenance Contract shall have been paid in full through the date of return and (z) the entity which provides the maintenance and/or overhaul services under such Maintenance Contract shall either (i) recognize the transfer by Lessee to Lessor of the rights and interests of Lessor (or its designee) under such Maintenance Contract or (ii) acknowledge the rights and interests of Lessor (or its designee) under such Maintenance Contract.

(d) Airframe. In the event that the Airframe does not meet the conditions set forth in Section II (b)(ii) above, Lessee shall pay Lessor an amount equal to the sum of the product of the current estimated cost of the next scheduled major airframe and pressure vessel inspection (including in such estimated cost, all required replacement of life limited parts) multiplied by the greater of the fraction wherein the numerator shall be the greater of (i) zero and (ii) the remainder of (x) the actual number of respective operating hours or months of operation since previous major airframe and pressure vessel inspection, minus (y) 50% of the respective total operating hours or months of operation allowable between scheduled major airframe and pressure vessel inspections, and the denominator shall be the respective total operating hours or months of operation between scheduled major airframe and pressure vessel inspections.

(e) Parts and Components. In the event any life limited part or component does not meet the conditions set forth in Section II (b)(iii) above, Lessee shall pay to Lessor with respect to each part or component for which said requirement is not met the dollar amount obtained by multiplying (i) the ratio that the life expended in excess of fifty percent (50%) of the available hours, cycles and/or months, as the case may be, until the next scheduled replacement bears to the total allowable life (measured in hours, cycles and/or months, as the case may be) for such part or component by (ii) Lessor's cost of replacement of such part or component. Lessor's cost of replacement of a part or component shall include Lessor's then current cost of purchasing the part or component itself and all of Lessor's current costs associated with the replacement.

(f) Treatment of Charges. All prorated inspection and/or overhaul charges, if any, shall be payable as Supplemental Rent and shall be due upon presentation to Lessee of an invoice setting forth in reasonable detail the calculation of such amounts due, including the names of all sources used for the

RSCOMBS 366237                               51                            (AIRCRAFT LEASE)

0 0 0 0 0 0 0 1 4 5 1

8-5

required cost estimates. Unless both Lessor and Lessee agree to an alternative source, the Manufacturers of the Airframe and Engines shall be used as the sources for all cost estimates.

(g) Fuel and Records. Upon the return of the Aircraft in accordance with the terms and conditions hereof; (i) each fuel tank shall contain no less than fifty percent (50%) of its full capacity or, in the case of differences in such quantity, an appropriate adjustment will be made at the then current market price of fuel and (ii) Lessee shall deliver all Records to Lessor. In the event any Records are missing or incomplete, Lessor shall have the right to cause any such Records to be reconstructed at the reasonable expense of Lessee.

(h) Storage. Upon the expiration, cancellation or other termination of the Lease, Lessee will, if requested by Lessor, permit Lessor to store the Aircraft at the Primary Hangar Location. During such storage period Lessee will, at its own cost and expense, keep the Aircraft properly hangared, and will permit Lessor or any Person designated by Lessor, including the authorized representatives of any prospective purchaser, lessee or user of the Aircraft to inspect the same. Lessee shall not be liable, except in the case of negligence, gross negligence or intentional misconduct of Lessee or of its employees or agents, for injury to, or the death of, any Person exercising, either on behalf of Lessor or any prospective purchaser, lessee or user, the rights of inspection granted hereunder. Lessee shall bear the risk of loss and shall pay any and all expenses connected with insuring and maintaining the Aircraft during such storage period. Notwithstanding the foregoing, upon the expiration of the Term for any reason other than an expiration, cancellation or termination which occurs as a result of an Event of Default, the storage period provided for in this paragraph and the obligation to hangar and insure the Aircraft shall be limited to fifteen (15) days.

(i) Replacement Engines. In the event that any engine not owned by Lessor shall be installed on the returned Airframe as set forth in Section II (a) hereof, then Lessee will, concurrently with such delivery, at its own expense, furnish Lessor with a full warranty bill of sale, in form and substance satisfactory to Lessor, with respect to each such engine and with a written opinion of FAA Counsel to the effect that, upon such return, Lessor will acquire a valid and perfected interest in such engine free and clear of all Liens (except Lessor's Liens). Thereupon, unless a Default or Event of Default shall have occurred and be continuing, Lessor will transfer to Lessee, on an "AS-IS, WHERE-IS" BASIS WITHOUT ANY REPRESENTATION OR WARRANTY BY, OR RECOURSE OR WARRANTY TO, LESSOR, all of Lessor's right, title and interest in and to any Engine not installed on the Airframe at the time of the return of such Airframe.

(j) Inspections. Not more than ninety (90) days prior to the expiration of the Lease, upon the written request of Lessor, Lessee shall, at its expense, review the maintenance records of the Aircraft to determine if the Aircraft is in the condition required by this M&R Addendum. Following such review, Lessee shall certify to Lessor that such Aircraft is in the condition required by this M&R Addendum according to the maintenance records for such Aircraft, or, if the maintenance records so indicate, indicate what maintenance or repair is needed to bring the Aircraft to the specified condition.

Lessor shall have the right, but not the duty, to inspect the Aircraft, any component thereof and/or the Records, at any reasonable time and from time to time, wherever located, upon reasonable prior written notice to Lessee. Upon request of Lessor, Lessee shall confirm to Lessor the location of the Aircraft and shall, at any reasonable time and from time to time, upon reasonable prior written notice to Lessee, make the Aircraft and/or the Records available to Lessor for inspection.

(k) Survival. The provisions of this M&R Addendum shall survive the expiration, cancellation or other termination of the Lease and the return of the Aircraft for any reason whatsoever.

(l) Injunctive Relief. Without limiting any other terms or conditions of the Lease, the provisions of this M&R Addendum are of the essence of the Lease, and upon application to any court of equity having jurisdiction, Lessor shall be entitled to a decree against Lessee requiring specific performance of the covenants of Lessee set forth herein.

RSCOMBS 366237                                    52                                    (AIRCRAFT LEASE)

0 0 0 0 0 0 0 1 4 5 2

8-3

UPGRADE ADDENDUM ("Upgrade Addendum") to Aircraft Lease (N699DA) dated as of March 30, 2001 (the "Lease") by and between Fleet National Bank, as lessor ("Lessor"), and SM 5105 LLC, as lessee ("Lessee").

All capitalized terms used herein which are not otherwise defined herein shall have the meanings given to such terms in the Lease. Except as set forth herein, all of the terms and conditions of the Lease and any supplements, schedules, addenda, exhibits or the like entered into pursuant to the Lease remain in full force and effect. Execution of the Lease by Lessee and Lessor shall be deemed to constitute execution and acceptance of the terms and conditions hereof, whereupon this Upgrade Addendum shall be deemed to be a part of the Lease.

The following provisions are hereby incorporated into the Lease:

Upgrade Option. So long as no Default or Event of Default shall have occurred and be continuing hereunder, Lessee shall be entitled, at its option, upon at least one hundred twenty (120) days but no more than two hundred forty (240) days prior written notice to Lessor, to replace the Aircraft on any Basic Rent Date commencing with the seventy-second (72nd) Basic Rent Date and ending with the one hundred eighth (108th) Basic Rent Date (any such date for purposes of this Section called an "Upgrade Date"), with an aircraft (the "Upgrade Aircraft") which has a value, utility, and useful life better than the Aircraft immediately prior to the exercise by Lessee of its option under this Upgrade Addendum to upgrade the Aircraft. Any such proposed Upgrade Aircraft shall be expressly subject to the prior written approval and consent of the Lessor, which approval and consent shall be given, if at all, in Lessor's sole discretion. On the Upgrade Date, the Lessee shall pay to Lessor in immediately available funds, (i) the Upgrade Option Amount, (ii) the Basic Rent due for the Aircraft on the Upgrade Date, (iii) all accrued and unpaid Rent then due and owing plus (iv) any applicable sales, excise or other taxes imposed as a result of the sale of the Aircraft (other than gross or net income taxes attributable to such sale). Upon full compliance by Lessee with the terms of this Upgrade Addendum, the Lease shall terminate and Lessor will transfer to Lessee or its designee, all of Lessor's right, title and interest, if any, in and to the Aircraft. SUCH TRANSFER SHALL BE "AS-IS, WHERE-IS," WITHOUT RECOURSE TO LESSOR, AND LESSOR SHALL NOT BE DEEMED TO HAVE MADE, AND LESSOR HEREBY DISCLAIMS, ANY REPRESENTATION OR WARRANTY, EITHER EXPRESS OR IMPLIED, AS TO THE AIRCRAFT SO TRANSFERRED TO LESSEE.

Notwithstanding anything to the contrary contained herein or otherwise, until such time as the Lease is actually terminated pursuant to the terms hereof, in no event shall Lessee's exercise of this option to upgrade the Aircraft under the circumstances contemplated by the terms of this Upgrade Addendum result in any reduction in or delay in the payment of Basic Rent or any other payments of any kind whatsoever due under the Lease or relieve Lessee of any obligations of any kind whatsoever under the Lease or any document, agreement or instrument related thereto.

Lessor's Option to Lease. If the Lessor determines that the Upgrade Aircraft is acceptable, Lessor shall have the option, subject to satisfaction of Lessor's then current underwriting standards and completion of Lessor's then current underwriting process, to lease the Upgrade Aircraft to Lessee pursuant to the terms hereof. In the event that Lessor exercises its option to lease pursuant hereto, on the Upgrade Date Lessee, at its own cost and expense, shall convey to the Lessor good and marketable title to the Upgrade Aircraft, free and clear of any Liens or title defects of any kind whatsoever (for no additional cost to Lessor, including, without limitation, any purchase price amounts or any taxes of any kind whatsoever relating to the conveyance or the sale of the Upgrade Aircraft). Prior to or at the time of any such conveyance, Lessee, at its own cost and expense, will furnish Lessor with such documents to evidence such conveyance as Lessor shall request in its sole discretion, including, without limitation, bills of sale and opinions of Lessee's counsel and FAA Counsel comparable to those furnished on the Acceptance Date, which documents shall be in form and substance satisfactory in all respects to Lessor in its sole discretion. In addition, Lessor and Lessee agree that any such lease financing of the Upgrade Aircraft shall be effected utilizing documentation which reflects Lessor's then current standard aircraft lease financing documents, but taking into account the

0 0 0 0 0 0 0 1 4 5 3

8-1

negotiated points of the Lease, and the financial terms of such financing shall reflect Lessor's then current financial terms for similar customers and aircraft.

In the event, and only in such event, that Lessor elects not to exercise the foregoing option to lease, Lessee shall be entitled to exercise the upgrade option set forth in this Upgrade Addendum free and clear of Lessor's option to lease.

Additional Terms and Definitions.   For purposes of this Upgrade Addendum and the Lease, the following definitions and terms shall apply:

Upgrade Option Amount shall mean (i) in the event that Lessor exercises its option to lease the Upgrade Aircraft to Lessee:  an amount equal to the Lessor's Cost multiplied by the factor set forth on Schedule No. 4 to Lease Supplement No. 1 to the Lease for the applicable Upgrade Option Date or (ii) in the event that Lessor does not exercise its option to lease the Upgrade Aircraft to Lessee: an amount equal to the greater of (A) the Fair Market Value of the Aircraft and (B) an amount equal to the Lessor's Cost multiplied by the factor set forth on Schedule No. 4 to Lease Supplement No. 1 to the Lease for the applicable Upgrade Option Date.

Determining Fair Market Value:  If Lessee has elected to exercise its upgrade option, then as soon as practicable following Lessor's receipt of the written notice from Lessee of Lessee's intent to exercise such option, Lessor and Lessee shall consult for the purpose of determining the Fair Market Value of the Aircraft as of the Upgrade Date.  Any values agreed upon in writing shall constitute such Fair Market Value of the Aircraft for the purposes of this Upgrade Addendum.  If Lessor and Lessee fail to agree upon such value within thirty (30) days after Lessee has elected its upgrade option, Lessor shall appoint an independent appraiser (reasonably acceptable to Lessee) to determine Fair Market Value and that determination shall be final, binding and conclusive.  Lessee agrees to pay the costs and expenses of any such appraisal.

8

**COMPARISON CERTIFICATE**

I have compared the foregoing instrument with the original and
the same is a true and correct copy thereof in all respects.

*Demetia J. Carter*

# EXHIBIT B

FORM APPROVE!
OMB NO. 2120-004

UNITED STATES OF AMERICA
U.S. DEPARTMENT OF TRANSPORTATION FEDERAL AVIATION ADMINISTRATION

**CRAFT BILL OF SALE**

FOR AND IN CONSIDERATION OF $ **1 and OVC**THE
UNDERSIGNED OWNER(S) OF THE FULL LEGAL
AND BENEFICIAL TITLE OF THE AIRCRAFT DES-
CRIBED AS FOLLOWS:

RECORDED
FEDERAL AVIATION ADMINISTRATION

UNITED STATES
REGISTRATION NUMBER **N 699DA**   DATE **1/29/02**   TIME **7:55**

AIRCRAFT MANUFACTURER & MODEL   CONVEYANCE NUMBER **I 068667**
**Learjet Inc.**

AIRCRAFT SERIAL No.   **8632**

DOES THIS **20** DAY OF **December, 2001,**
HEREBY SELL, GRANT, TRANSFER AND
DELIVER ALL RIGHTS, TITLE, AND INTERESTS
IN AND TO SUCH AIRCRAFT UNTO:

Do Not Write In This Block
FOR FAA USE ONLY

**NAME AND ADDRESS**
(IF INDIVIDUAL(S), GIVE LAST NAME, FIRST NAME, AND MIDDLE INITIAL.)

**PURCHASER**

**Fleet National Bank
One Financial Plaza
Providence, R.I. 02903**

DEALER CERTIFICATE NUMBER

AND TO **its successors** EXECUTORS, ADMINISTRATORS, AND ASSIGNS TO HAVE AND TO HOLD
SINGULARLY THE SAID AIRCRAFT FOREVER, AND WARRANTS THE TITLE THEREOF.

IN TESTIMONY WHEREOF **I**   HAVE SET **my**   HAND AND SEAL THIS **20** DAY OF **Dec., 2001.**

| NAME (S) OF SELLER<br>(TYPED OR PRINTED) | SIGNATURE (S)<br>(IN INK) IF EXECUTED<br>FOR CO-OWNERSHIP, ALL MUST<br>SIGN.) | TITLE<br>(TYPED OR PRINTED) |
|---|---|---|
| **SELLER** Learjet Inc. | *Janice Williams*<br>Janice Williams | Manager,<br>Domestic Contracts |
| | | |
| | | |

ACKNOWLEDGMENT (NOT REQUIRED FOR PURPOSES OF FAA RECORDING; HOWEVER, MAY BE REQUIRED
BY LOCAL LAW FOR VALIDITY OF THE INSTRUMENT.)
**(CERTIFIED COPY-TO BE RETURNED)**

PURCHASER'S COPY (This copy must be signed in ink if
submitted to the FAA.)

AC Form 8050-2 (9/92) (NSN 0052-00-629-0003) Supersedes Previous Edition

# COPY - TO BE RETURNED

FORM APPROVED
OMB No. 2120-0042

UNITED STATES    AMERICA DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION-MIKE MONRONEY AERONAUTICAL CENTER
AIRCRAFT REGISTRATION APPLICATION

CERT. ISSUE DATE

| UNITED STATES REGISTRATION NUMBER | **N** 699DA |
|---|---|

AIRCRAFT MANUFACTURER & MODEL
**Learjet Inc Model 60**

AIRCRAFT SERIAL No.
**237**

FOR FAA USE ONLY

### TYPE OF REGISTRATION (Check one box)

☐ 1. Individual  ☐ 2. Partnership  ☒ 3. Corporation  ☐ 4. Co-owner  ☐ 5. Gov't.  ☐ 8. Non-Citizen Corporation

NAME OF APPLICANT (Person(s) shown on evidence of ownership. If individual, give last name, first name, and middle initial.)

Fleet National Bank
c/o SM 5105 LLC

TELEPHONE NUMBER: (248) 813-2564

ADDRESS (Permanent mailing address for first applicant listed.)

Number and street: 38500 Woodward Ave, Suite 100

| Rural Route: CITY | STATE | ZIP CODE |
| Bloomfield Hills | MI | 48304 |

P.O. Box:

☐ **CHECK HERE IF YOU ARE ONLY REPORTING A CHANGE OF ADDRESS**

**ATTENTION!  Read the following statement before signing this application.
This portion MUST be completed.**

A false or dishonest answer to any question in this application may be grounds for punishment by fine and / or imprisonment (U.S. Code, Title 18, Sec. 1001).

## CERTIFICATION

I/WE CERTIFY:

(1) That the above aircraft is owned by the undersigned applicant, who is a citizen (including corporations) of the United States.

(For voting trust, give name of trustee: _____ ), or:

CHECK ONE AS APPROPRIATE:

  a. ☐ A resident alien, with alien registration (Form I-151 or Form I-551) No. _____

  b. ☐ A non-citizen corporation organized and doing business under the laws of (state) _____ and said aircraft is based and primarily used in the United States. Records or flight hours are available for inspection at _____

(2) That the aircraft is not registered under the laws of any foreign country; and

(3) That legal evidence of ownership is attached or has been filed with the Federal Aviation Administration.

NOTE: If executed for co-ownership all applicants must sign. Use reverse side if necessary.

| TYPE OR PRINT NAME BELOW SIGNATURE | TITLE | DATE |
|---|---|---|
| SIGNATURE | Banking Officer | 12/20/01 |
| SIGNATURE | TITLE | DATE |
| SIGNATURE John E. Haakenson, Jr. | TITLE | DATE |

EACH PART OF THIS APPLICATION MUST BE SIGNED IN INK

NOTE  Pending receipt of the Certificate of Aircraft Registration, the aircraft may be operated for a period not in excess of 90 days, during which time the PINK copy of this application must be carried in the aircraft.

AC Form 8050-1 (12/90) (0052-00-628-9007) Supersedes Previous Edition

# EXHIBIT C

## AIRCRAFT TITLE REPORT from FAA RECORDS SEARCH

**Account No.** 71281
**Phone No.** 616-742-3953

**For:** Barnes & Thornburg LLP
300 Ottawa, N.W. Suite 500
Grand Rapids, MI 49503

**I A** **Insured Aircraft Title Service, Inc.**
**T S** P.O. BOX 19527    405-681-6663
OKLAHOMA CITY, OKLAHOMA 73144
TOLL FREE:   PHONE 800-654-4882

Attn: Laura Schmidt

Re:  N/A

**FAA Records Search revealed the following TITLE information on the aircraft herein described.**

| | | | |
|---|---|---|---|
| **Registration** | N699DA    Learjet Inc. | **Model** | 60 |

**Record Owner:** Bank of America, N.A. *
c/o 7310 Highland Rd., Waterford, MI 48327

**Serial No.** 237

| | | | |
|---|---|---|---|
| **Title:** | Vice President | **Type:** | Corporation |
| **Signed By:** | Deborah M. Hayes | **Date Regstrd:** | 1-29-02 |
| **Acquired By:** | Bill of Sale | **Date:** | 12-20-01 |
| **Date Filed:** | 12-20-01 | **Recorded:** 1-29-02 | **FAA Doc. #** T068687 |

**Prev. Owner:** Learjet Inc.
Manufacturer

**Date Regstrd:** --

**Subject To:** Lease Agreement          **Dated:** 12-20-01      **Amount $**  Term: 144 months
**Filed at FAA:** 12-20-01          **Recorded:** 1-29-02      **FAA Doc. #** T068688 **
**Lessee:**          Delphi Automotive Systems Human Resources LLC ***
5725 Delphi Dr., Troy, MI 48098
**Lessor:**          Bank of America, N.A. *
One Financial Plaza, Fifth Fl., Providence, RI 02903-2305

\* (successor by Merger to Fleet National Bank)
\*\* Covers N699DA and 2 Pratt & Whitney PW305A engines, serial numbers PCE-CA0319 and PCE-CA0318
\*\*\* Delphi Automotive Systems Human Resources LLC assumed the equitable interest as lessee from SM 5105
LLC in the above described Lease Doc. #T068688 through an Assumption/Assignment Agreement, dated
12-16-03, recorded 2-18-04 as FAA Doc. #H110456, with the consent of the Lessor.

**Page 2   N699DA   Ser. No. 237**
**10/13/2005**
For:   Barnes & Thornburg LLP
300 Ottawa, N.W. Suite 500
Grand Rapids, MI 49503

Attn: Laura Schmidt

**Account No.**   71281
**Phone No.**   616-742-3953



P.O. BOX 19527        405-681-6663
OKLAHOMA CITY, OKLAHOMA 73144
TOLL FREE:    PHONE 800-654-4882

Re:   N/A

**This search is subject to the filings reflected on the index of collateral provided by the FAA and  Insured Aircraft Title Service, Inc. assumes no responsibility as to the accuracy of said source, and does not guarantee, insure, or warrant that said FAA index is free of error.**

10/13/2005
7:29 a.m. Central
**INSURED AIRCRAFT TITLE SERVICE, INC.**

By_____E. Cotton_____
**Title Examiner**

**EC/eb**

# EXHIBIT D

**CORPORATION SERVICE COMPANY**
www.incspot.com

CSC- Springfield
801 Adlai Stevenson Drive
Springfield, IL 62703
217-544-5900
217-492-2727 (Fax)

| | | | |
|---|---|---|---|
| **Matter#** | NOT PROVIDED | **Order#** | 652124-1 |
| **Project Id :** | | **Order Date** | 10/14/2005 |
| **Additional Reference :** | NOT PROVIDED | | |

| | |
|---|---|
| **Subject :** | **SM 5105 LLC** |
| **Jurisdiction :** | **DE-SECRETARY OF STATE** |
| **Request for :** | UCC Debtor Search |
| **Result :** | Records found |
| Thru Date : | October 04, 2005 |
| No. of findings : | 2 |
| Original UCC Filings : | 2 |
| Amendments : | 0 |
| Continuations : | 0 |
| Assignments : | 0 |
| Releases : | 0 |
| Corrections : | 0 |
| Terminations : | 0 |

Ordered by MARTHA LEDEZMA at BARNES & THORNBURG

Thank you for using CSC.  For real-time 24 hour access to the status of any order placed with CSC, access our website at www.incspot.com.

If you have any questions concerning this order or IncSpot,  please feel free to contact us.

Margaret Pike
mpike@cscinfo.com

**CSC Article 9 Compliant Searching**
Under Revised Article 9, in order to conduct proper due diligence, all UCC debtor searches must be performed in both the old Article 9 and Revised Article 9 jurisdictions. CSC accepts no responsibility for omissions resulting from an incomplete search request.

**Corporation Service Company(R) Terms and Conditions**
You agree that all information that Corporation Service Company furnishes to you will be used solely as one factor in your credit, insurance, marketing or other business decisions and will not be used (i) in determining a consumer's eligibility for credit or insurance where such credit or insurance is to be used primarily for personal, family or household purposes, (ii) for employment purposes, or (iii) for governmental licenses. Use of the information in the above manner is a violation of the Fair Credit Reporting Act.

**CORPORATION SERVICE COMPANY**

www.incspot.com

CSC- Springfield
801 Adlai Stevenson Drive
Springfield, IL 62703
217-544-5900
217-492-2727 (Fax)

Matter#   NOT PROVIDED
Project Id :
Additional Reference :           NOT PROVIDED

Order#       652124-1
Order Date   10/14/2005

| | |
|---|---|
| Subject : | **SM 5105 LLC** |
| Jurisdiction : | **DE-SECRETARY OF STATE** |
| Request for : | **UCC Debtor Search** |
| Result : | Records found |

| | |
|---|---|
| File Type : | Original |
| File Number : | 20066583 |
| File Date : | 11/30/2001 |
| Current Secured Party of Record : | FLEET NATIONAL BANK |

| | |
|---|---|
| File Type : | Original |
| File Number : | 20146930 |
| File Date : | 12/17/2001 |
| Current Secured Party of Record : | FLEET NATIONAL BANK |

Ordered by MARTHA LEDEZMA at BARNES & THORNBURG

Thank you for using CSC. For real-time 24 hour access to the status of any order placed with CSC, access our website at www.incspot.com.

If you have any questions concerning this order or IncSpot, please feel free to contact us.

Margaret Pike
mpike@cscinfo.com

Corporation Service Company(R) Terms and Conditions

You agree that all information that Corporation Service Company furnishes to you will be used solely as one factor in your credit, insurance, marketing or other business decisions and will not be used (i) in determining a consumer's eligibility for credit or insurance where such credit or insurance is to be used primarily for personal, family or household purposes, (ii) for employment purposes, or (iii) for governmental licenses. Use of the information in the above manner is a violation of the Fair Credit Reporting Act.

**CORPORATION SERVICE COMPANY**
www.incspot.com

CSC- Springfield
801 Adlai Stevenson Drive
Springfield, IL 62703
217-544-5900
217-492-2727 (Fax)

| | | | |
|---|---|---|---|
| **Matter#** | NOT PROVIDED | **Order#** | 652124-1 |
| **Project Id :** | | **Order Date** | 10/14/2005 |
| **Additional Reference :** | NOT PROVIDED | | |

Subject :                                SM 5105 LLC

Jurisdiction :                         DE-SECRETARY OF STATE

Request for :                         Federal Tax Lien Search
   Thru Date :                        October 04, 2005

Result :                                Certified clear result retrieved


Ordered by MARTHA LEDEZMA at BARNES & THORNBURG

Thank you for using CSC.  For real-time 24 hour access to the status of any order placed with CSC, access our website at
www.incspot.com.

If you have any questions concerning this order or IncSpot,  please feel free to contact us.

Margaret Pike
mpike@cscinfo.com

Corporation Service Company(R) Terms and Conditions
You agree that all information that Corporation Service Company furnishes to you will be used solely as one factor in your credit, insurance, marketing or other
business decisions and will not be used (i) in determining a consumer's eligibility for credit or insurance where such credit or insurance is to be used
primarily for personal, family or household purposes, (ii) for employment purposes, or (iii) for governmental licenses. Use of the information in the above
manner is a violation of the Fair Credit Reporting Act.

# Delaware

**The First State**

PAGE    1

### CERTIFICATE

SEARCHED OCTOBER 14, 2005, AT 10:37 A.M.
FOR DEBTOR "SM 5105 LLC"

```
1 OF   2   LEASE                                20066583
          EXPIRATION DATE: NOVEMBER 30, 2006
DEBTOR:  SM 5105 LLC
         38500 WOODWARD AVENUE                  ADDED 11-30-01
         SUITE 100
         BLOOMFIELD            MI   48304
SECURED: FLEET NATIONAL BANK
         ONE FINANCIAL PLAZA, 5TH FLOOR         ADDED 11-30-01
         PROVIDENCE              RI   02903
              F I L I N G    H I S T O R Y
20066583  FILED 11-30-01   AT 1:50 P.M.  LEASE

2 OF   2   FINANCING STATEMENT                  20146930
          EXPIRATION DATE: DECEMBER 17, 2006
DEBTOR:  SM 5105 LLC
         38500 WOODWARD AVENUE                  ADDED 12-17-01
         SUITE 100
         BLOOMFIELD            MI   48304
SECURED: FLEET NATIONAL BANK
         ONE FINANCIAL PLAZA                    ADDED 12-17-01
         PROVIDENCE              RI   02903
              F I L I N G    H I S T O R Y
20146930  FILED 12-17-01   AT 12:55 P.M.  FINANCING STATEMENT
         E N D   O F   F I L I N G   H I S T O R Y
```

THE UNDERSIGNED FILING OFFICER HEREBY CERTIFIES THAT THE
ABOVE LISTING IS A RECORD OF ALL PRESENTLY EFFECTIVE FINANCING
STATEMENTS, LAPSED FINANCING STATEMENTS, FEDERAL TAX LIENS AND
UTILITY SECURITY INSTRUMENTS FILED IN THIS OFFICE WHICH NAME THE
ABOVE DEBTOR, AS OF OCTOBER 4, 2005 AT 11:59 P.M.

*Harriet Smith Windsor*

Harriet Smith Windsor, Secretary of State

20053178937UCXL

050840455

AUTHENTICATION:  4226165

DATE:  10-14-05

**UCC FINANCING STATEMENT**
**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

> PARASEARCH
> 222 Jefferson Boulevard
> Warwick, RI 02888
> (401) 732-2490  Fax: 739-7708

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 01:50 PM 11/30/2001
2006658 3 - 0000000
SRV: 010645612

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (1a or 1b) – do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| SM 5105 LLC | | | | | |

| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 38500 Woodward Avenue, Suite 100 | Bloomfield | MI | 48304 | USA |

| 1d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | limited liability co. | Delaware | 3297657   ☒ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (2a or 2b) – do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|

| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Fleet National Bank | | | | | |

| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| c/o Fleet Capital Coproration<br>One Financial Plaza, 5th floor | Providence | RI | 02903 | USA |

4. This FINANCING STATEMENT covers the following collateral: THOSE ASSETS INDICATED ON ITEM 16 OF THIS FINANCING STATEMENT. This financing statement is continues each financing statement (a "pre-effective-date financing statement") identified below. Each identified pre-effective-date financing statement remains effective.

| Secretary of State, Michigan | 5/1/01 | D769440 | N/A | N/A |
|---|---|---|---|---|

5. ALTERNATIVE DESIGNATION [if applicable]: ☒ LESSEE/LESSOR   ☐ CONSIGNEE/CONSIGNOR   ☐ BAILEE/BAILOR   ☐ SELLER/BUYER   ☐ AG. LIEN   ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum   if applicable

7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional]   ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

**UCC FINANCING STATEMENT ADDENDUM**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

| | |
|---|---|
| 9a. ORGANIZATION'S NAME | |
| **SM 5105 LLC** | |

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|
| | | |

10. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME -- insert only one name (11a or 11b) -- do not abbreviate or combine names

| 11a. ORGANIZATION'S NAME |
|---|
| |

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|
| | | | | | |

| 11d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

12. ☐ ADDITIONAL SECURED PARTY'S   or   ☐ ASSIGNOR S/P'S NAME -- insert only one name (12a or 12b)

| 12a. ORGANIZATION'S NAME |
|---|
| |

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as extracted collateral, or is filed as a ☐ fixture filing.

14. Description of real estate:

16. Additional collateral description

## All Collateral described on the attached Exhibit A.

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

17. Check only if applicable and check only one box.

Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate.

18. Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction -- effective 30 years
☐ Filed in connection with a Public-Finance Transaction -- effective 30 years

FILING OFFICE COPY -- NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

BUSDOCS:941298.4

**FINANCING STATEMENT · FOLLOW INSTRUCTIONS CAREFULLY**

This Financing Statement is presented for filing pursuant to the Uniform Commercial Code and will remain effective, with certain exceptions, for a period of five years from date of filing.

**EXHIBIT A**

**REC'D U.C.C. UNIT**
**05/01/01    9:00 AM**
**SECRETARY OF STATE**
**LANSING MI  D769440**

A. NAME & TEL. # OF CONTACT AT FILER (optional)

Robbin A. Gossman, Paralegal
Ober, Kaler, Grimes & Shriver
120 East Baltimore Street
Baltimore, Maryland 21202

B. FILING OFFICE ACCT. # (optional)

D. OPTIONAL DESIGNATION [if applicable]: ☐ LESSEE/LESSOR ☐ CONSIGNOR/CONSIGNEE ☐ NON-UCC FILING

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b)

1a. ENTITY'S NAME: **SM 6105 LLC**

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE |
|---|---|---|---|---|
| 38500 Woodward Avenue, Suite 100 | Bloomfield Hills | MI | USA | 48304 |

| 1d. S.S. OR TAX ID. # | OPTIONAL ADD'L INFO RE: ENTITY DEBTOR | 1e. TYPE OF ENTITY | 1f. ENTITY'S STATE OR COUNTRY OF ORGANIZATION | 1g. ENTITY'S ORGANIZATIONAL I.D. #, if any |
|---|---|---|---|---|
| | | limited liability company | Delaware | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b)

2a. ENTITY'S NAME:

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

ACKNOWLEDGEMENT COPY

| 2c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE |
|---|---|---|---|---|
| | | | USA | |

| 2d. S.S. OR TAX ID. # | OPTIONAL ADD'L INFO RE: ENTITY DEBTOR | 2e. TYPE OF ENTITY | 2f. ENTITY'S STATE OR COUNTRY OF ORGANIZATION | 2g. ENTITY'S ORGANIZATIONAL I.D. #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S (ORIGINAL S/P or ITS TOTAL ASSIGNEE) EXACT FULL LEGAL NAME - insert only one secured party name (3a or 3b)

3a. ENTITY'S NAME: **FLEET NATIONAL BANK**

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE |
|---|---|---|---|---|
| One Financial Plaza, 5th Floor | Providence | RI | USA | 02903 |

4. This FINANCING STATEMENT covers the following types or items of property:

The items of property set forth on the attached Schedule A, and all additions, accessions, modifications, improvements, replacements, substitutions and accessories thereto and therefor, whether now owned, leased or hereafter acquired (the "Equipment"), and the proceeds, products and income of any of the foregoing, including insurance proceeds. Debtor has possession of the Equipment under a true lease. Secured Party has a security interest in the Equipment to the extent necessary to protect its title and/or interest therein.

The Equipment is generally described as One (1) Canadair Challenger Model CL-600-2B16 Variant 604 aircraft (N599DA).

35459-01/tkd
File: XX  S/S: MI    Town/County:

5. CHECK BOX ☐ This FINANCING STATEMENT is signed by the Secured Party instead of the Debtor to perfect a security interest (a) in collateral already subject to a security interest in another jurisdiction when it was brought into this state, or when the debtor's location was changed to this state, or (b) in accordance with other statutory provisions [additional data may be required]

7. If filed in Florida (check one) ☐ Documentary stamp tax paid ☐ Documentary stamp tax not applicable

6. REQUIRED SIGNATURE(S)
Signature:
Printed Name/Title: _John Blahnik, Vice President of Tenant_

8. ☐ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS. Attach Addendum (if applicable)

Signature:
Printed Name/Title:

9. Check to REQUEST SEARCH CERTIFICATE(S) on Debtor(s) [ADDITIONAL FEE] [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

(1) FILING OFFICER COPY - NATIONAL FINANCING STATEMENT (FORM UCC-1) (TRANS) (REV. 12/18/95)     THIS SPACE FOR USE OF FILING OFFICER

# ATTACHMENT TO UNIFORM COMMERCIAL CODE FINANCING STATEMENT

1.    SECURED PARTY:    **FLEET NATIONAL BANK**
c/o Fleet Capital Corporation
One Financial Plaza, 5th Floor
Mail Stop: RI/DE/03705A
Providence, Rhode Island   02903

D769440

      DEBTOR:    **SM 5105 LLC**
38500 Woodward Avenue
Suite 100
Bloomfield Hills, Michigan  48304

2.    DESCRIPTION OF PROPERTY:

Debtor hereby assigns to Secured Party, and grants to Secured Party a first priority security interest in and with respect to, all of Debtor's rights, title and interests of whatever kind or description (but none of its obligations) in and to: (a) the Purchase Documents; (b) the Aircraft, and all present or future additions, attachments, or accessories to the Aircraft, and replacements thereof; (c) all tools, manuals, service records, software and similar information and materials incorporated into or located on the Aircraft, and (d) the products, rents and profits and other proceeds therefrom or thereof, including, without limitation, all refunds and other amounts payable by Vendor under or with respect to the Purchase Agreement.

For purposes hereof:

"Aircraft" means the Canadair Challenger Model CL-600-2B16 Variant 604 (N599DA) (including, without limitation, the airframe, engines, auxiliary power unit, avionics, parts and records relating thereto) having a scheduled delivery date 4th quarter 2001, pursuant to the Purchase Agreement.

"Purchase Agreement" means the Aircraft Purchase Agreement dated January 31, 2001, between Debtor and Vendor, as amended from time to time.

"Purchase Documents" means any purchase orders or related documents, warranties and agreements with Vendor, including the Purchase Agreement.

"Vendor" means Bombardier Aerospace Corporation.

GFJ 361814                                                                                            (UCC)

## "IN LIEU" INITIAL UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Ucc Fleet

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

PARASEARCH INC.
222 Jefferson Boulevard
Warwick, RI 02888
(401) 732-2490   Fax: (401) 739-7708

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 12:55 PM 12/17/2001
2014693 0 - 0000000
SRV: 020022197

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR  1b. INDIVIDUAL'S LAST NAME  SM 5105 LLC | FIRST NAME | | MIDDLE NAME | | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 38500 Woodward Avenue, Suite 100 | Bloomfield | MI | 48304 | USA |

| 1d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| 38-3575295 | | limited liability co | Delaware | 3297657 | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR  2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | USA |

| 2d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR  3b. INDIVIDUAL'S LAST NAME  Fleet National Bank | FIRST NAME | | MIDDLE NAME | | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| c/o Fleet Capital Corporation  One Financial Plaza | Providence | RI | 02903 | USA |

4. This FINANCING STATEMENT covers the following collateral:

Equipment generally described as, one (1) Learjet 60 aircraft, serial number 237 and FAA registration mark N699DA,
As further described in the attached Schedules U & A

5. ALTERNATIVE DESIGNATION [if applicable]: ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR  ☐ SELLER/BUYER  ☐ AG. LIEN  ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable]

7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional]   ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

Customer No. 35459-02

SCHEDULE U
(Leases)

Debtor:
SM 5105 LLC
38500 Woodward Ave., Suite 100
Bloomfield, MI 48304

Secured Party:
Fleet National Bank
c/o Fleet Capital Corporation
One Financial Plaza
Providence, RI 02903

The collateral is certain goods generally described as one (1) Learjet 60, serial number 237 and FAA registration mark N699DA, and more particularly described in the attached Schedule A's, in which the Debtor now or hereafter has rights, and all parts, accessories, accessions and attachments thereto, and all replacements, substitutions and exchanges (including trade-ins) for such goods, together with proceeds of all of the foregoing, including proceeds in the form of goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations.

*Initial financing statement to continue effectiveness of pre-effective-date financing statements.* The following information is provided so that, upon the later of the filing date of this financing statement or the effective date of Revised Article 9 as applicable under the law of any relevant jurisdiction, this financing statement shall be effective to continue the financing statements (the *"pre-effective-date financing statements"*) identified below:

1. The above address of the Debtor is a mailing address of the Debtor.
2. The Debtor is an organization.
3. The Debtor's type of organization is a limited liability company.
4. The Debtor's jurisdiction of organization is Delaware.
5. The Debtor's organizational identification number is 3297657.
6. The pre-effective-date financing statements are those identified on the schedule below.
7. Each pre-effective-date financing statement remains effective.

*Schedule identifying pre-effective date financing statements.* The following schedule identifies each pre-effective-date financing statement:

| 35459-02 | Sec. Of State- MI | 5/1/01 | D769439 | N/a | N/a |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## SCHEDULE A

## ATTACHMENT TO UNIFORM COMMERCIAL CODE FINANCING STATEMENT

1.   LESSOR:         **FLEET NATIONAL BANK**
                     c/o Fleet Capital Corporation
                     One Financial Plaza, 5th Floor
                     Mail Stop: RI/DE/03705A
                     Providence, Rhode Island   02903

     LESSEE:         **SM 5105 LLC**
                     38500 Woodward Avenue
                     Suite 100
                     Bloomfield Hills, Michigan  48304

2.   DESCRIPTION OF PROPERTY:

     Lessee hereby grants and conveys to Lessor a security interest in and lien on (1) the Aircraft Lease (N699DA) (the "Lease") dated as of March 30, 2001, between Lessor, as lessor, and Lessee, as Lessee, (2) the Aircraft (as defined below), (3) any subleases relating to the Aircraft, and (4) any and all proceeds (including insurance proceeds) of any or all of the foregoing.

     For purposes hereof:

     Aircraft shall mean (i) the Airframe, (ii) the Engines, and (iii) to the extent applicable, the Records.

     Airframe shall mean (i) the Aircraft described in Schedule A hereto and (ii) any and all Parts from time to time incorporated in, installed on or attached to such Aircraft and any and all Parts removed therefrom so long as title thereto shall remain vested in Lessor in accordance with the applicable terms of the Lease after removal from the Aircraft.

     Engine shall mean (i) each of the engines and the auxiliary power unit described and listed by manufacturer's serial numbers in Schedule A hereto and currently installed on the Airframe, whether or not thereafter installed on such Airframe or any other airframe from time to time; (ii) any engine and/or auxiliary power unit that may from time to time be substituted, pursuant to the applicable terms of the Lease, for an Engine leased thereunder; and (iii) in each case set forth in clauses (i) and (ii) hereof, with any and all Parts incorporated in or installed on or attached to such Engine, engine and/or auxiliary power unit or any and all Parts removed therefrom so long as title thereto shall remain vested in Lessor in accordance with the applicable terms of the Lease after removal from such Engine.

Parts shall mean all appliances, avionics, parts, instruments, appurtenances, accessories, furnishings and other equipment of whatever nature (other than additions or complete Engines), that may from time to time be incorporated or installed in or attached to the Airframe or any Engine for so long as title thereto shall be vested in Lessor in accordance with the applicable terms of the Lease.

Records shall mean any and all logs, manuals, certificates and data and inspection, modification, maintenance, engineering, technical and overhaul records (including all computerized data, records and materials of any kind whatsoever) with respect to the Aircraft, including, without limitation, all records required to be maintained by the Federal Aviation Administration or any other governmental agency or authority having jurisdiction with respect to the Aircraft or any manufacturer or supplier of the Aircraft (or any part thereof) with respect to the enforcement of warranties or otherwise.

SCHEDULE A TO UCC

## DESCRIPTION OF AIRCRAFT

Learjet 60 aircraft which consists of the following components:

(a) Airframe bearing FAA Registration Mark N699DA and manufacturer's serial number 237.

(b) Two (2) Pratt and Whitney Canada, Model number PW305A, engines bearing manufacturer's serial numbers PCE-CA0319 and PCE-CA0318, (each of which has 750 or more rated takeoff horsepower or the equivalent of such horsepower).

(c) Standard accessories and optional equipment and such other items fitted or installed on the Aircraft and as may be more particularly described hereinafter:

See Schedule A-2 which is attached hereto and made a part hereof.

(d) Those items of Lessee furnished equipment described in a bill of sale or bills of sale therefor (copies of which may be appended hereto), delivered by Lessee to Lessor which constitute appliances and equipment which will be installed on the Aircraft.

(e) one (1) PATS, Inc. model T-20G-10C3A auxiliary power unit bearing manufacturer's serial number SP-E010358.

SCHEDULE A-2 TO UCC

## AVIONICS

Reduced vertical separation minimums (RVSM) compliant
Fireproofing protection per FAR 25,853 Appendix F compliant
EROS oxygen masks
FM Immunity for VIR-432 Nav Units
Heads-up Technologies Passenger Briefing System
Dual Collins VHF-422C comm with 8.33 khz channel spacing (exchange)
Honeywell Airborne flight information system (AFIS)
Collins traffic collision avoidance system (TCAS II)
Honeywell enhanced GPWS with windshear detection
Emergency locator transmitter
Magnastar C-2000 digital airborne telephone system (exchange)
Lighted control wheel chart holders
Floorplan M50-4 with exposed seat tracking on two (2) middle seats
Two (2) cabin throw rugs with the Delphi logo
110 VAC/60 hz power outlet (each)
Plated trim package
Pulsating recognition and landing lights
Hardwood trim strip
Wood veneer package
Collins TWR-850 enhanced weather radar (exchange)
Rosemount Ice Detection System
Dual rechargeable flashlights
Cockpit voice recorder
Fax/data outlet (without airshow network and/or Unilink selected)
Microwave
Detail Paint

Exterior: Matterhorn White with stripes of Gamma Grey, Fire Red, Sky Blue, Blue Green and
Fed Ex Purple

AND ALL STANDARD EQUIPMENT, ALL ADDITIONS, ACCESSIONS,
MODIFICATIONS, IMPROVEMENTS, REPLACEMENTS, SUBSTITUTIONS, AND
ACCESSORIES THERETO AND THEREFOR, ALL AVIONICS, ONBOARD EQUIPMENT,
LOOSE EQUIPMENT LOCATED IN THE AIRCRAFT, RECORDS, MANUALS, AND
LOGBOOKS, IN BOTH WRITTEN AND COMPUTER DATA FORM, AND WHETHER
NOW EXISTING OR HEREAFTER ACQUIRED.

# EXHIBIT E



## MICHIGAN DEPARTMENT OF STATE

Uniform Commercial Code Section
P.O. Box 30197
Lansing, Michigan 48909-7697
www.michigan.gov/sosucc

October 15, 2005

**Job Number:**    U20051013-0870

**Job Contents:**
    **Search Request(s):**                    2

**Special Handling Instructions:**

### Important Notice

**To comply with P.A. 212 of 2004, the UCC Unit is now mailing Debtor Notifications to individuals named as new debtors.**  The notification includes a copy of the filed financing statement.  Secured parties may receive calls from customers with questions or errors found in the filing.  If a correction is needed, file a UCC3 Amendment.

Martha Ledezma
300 Ottawa Ave., NW
Suite 500
Grand Rapids MI  49503



## MICHIGAN DEPARTMENT OF STATE

Uniform Commercial Code Section
P.O. Box 30197
Lansing, Michigan 48909-7697
www.michigan.gov/sosucc

## Job Receipt

October 15, 2005

**Job Number:**   U20051013-0870
**Account Number:**

### Charges

| Description | Filing Number | Filing Date/Time | Qty | Price | Amount |
|---|---|---|---|---|---|
| Information Request (Written Inquiry) | 0000722881-9 | | 1 | $6.00 | $6.00 |
| UCC Copy(ies) | 0000722881-9 | | 4 | $2.00 | $8.00 |
| Information Request (Written Inquiry) | 0000722882-1 | | 1 | $6.00 | $6.00 |
| Total | | | | | $20.00 |

### Payments

| Type | Description | Amount |
|---|---|---|
| | | $20.00 |
| Total | | $20.00 |



## MICHIGAN DEPARTMENT OF STATE

Uniform Commercial Code Section
P.O. Box 30197
Lansing, Michigan 48909-7697
www.michigan.gov/sosucc

### Search Request

October 15, 2005

**Job Number:**        U20051013-0870
**Reference Number:**  0000722881-9
**Certification Date:** 10/12/2005 17:00 PM

The filing officer certifies that the attached is a record, according to the search criteria specified, of all financing statements, [tax liens,] and amendments which name the debtor as filed with the Michigan Secretary of State, Uniform Commercial Code Section, as of the above certification date.

**Search Criteria:**
Debtor Name:    SM 5105 LLC
Lien Type:      UCC/Tax
Lien Status:    All (Including lapsed)

Michigan Department of State
Jeffry C. Nickerson
Filing Officer

### Disclaimer

Information relative to security interests and statutory liens obtained from the index is for information purposes only. Such information <u>does not relieve</u> any person or business from liability, alter priorities of security interest or liens, or affect any other legal rights or responsibilities. The index primarily contains information relative to security interests and statutory liens which have been filed for record on or before the above certification date. There may be security interests and statutory liens filed after that date which are valid. A search request limited under R 440.508(1) may not reveal all filings against the debtor search. The scarcher bears the risk of relying on the limited search.



# MICHIGAN DEPARTMENT OF STATE

Uniform Commercial Code Section
P.O. Box 30197
Lansing, Michigan 48909-7697
www.michigan.gov/sosucc

Financing Statement #D769439
FILED: 05/01/2001 09:00 AM

(D) S M 5105 LLC
    ORGANIZATION
    38500 WOODWARD AVE 100
    BLOOMFIELD HILLS, MI 48304

(S) FLEET NATIONAL BANK
    ORGANIZATION
    1 FINANCIAL PLAZA 5TH FL
    %FLEET CAPITAL CORP
    PROVIDENCE, RI 02903

| ACTIONS: | DATE | DOCUMENT # | PGS |
|---|---|---|---|
| Initial Financing Statement | 05/01/2001 09:00 AM | D769439 | 2 |

Financing Statement #D769440
FILED: 05/01/2001 09:00 AM

(D) S M 5105 LLC
    ORGANIZATION
    38500 WOODWARD AVE 100
    BLOOMFIELD HILLS, MI 48304

(S) FLEET NATIONAL BANK
    ORGANIZATION
    1 FINANCIAL PLAZA 5TH FL
    %FLEET CAPITAL CORP
    PROVIDENCE, RI 02903

| ACTIONS: | DATE | DOCUMENT # | PGS |
|---|---|---|---|
| Initial Financing Statement | 05/01/2001 09:00 AM | D769440 | 2 |

(D)=Debtor
(T)=Tax Payer

1 of 1

(S)=Secured Party
(L)=Lien Holder

THIS SPACE FOR USE OF FILING OFFICER

**FINANCING STATEMENT – FOLLOW INSTRUCTIONS CAREFULLY**

This Financing Statement is presented for filing pursuant to the Uniform Commercial Code and will remain effective, with certain exceptions, for 5 years from date of filing.

A. NAME & TEL. # OF CONTACT AT FILER (optional)    B. FILING OFFICE ACCT. # (optional)

Robbin A. Gossman, Paralegal
Ober, Kaler, Grimes & Shriver
120 East Baltimore Street
Baltimore, Maryland 21202

REC'D  U. C. C. UNIT
05/01/01   9:00 AM
SECRETARY OF STATE
LANSING MI   D769439

MDOS 903459 – 2 04/11/2001
2001 95016 12016 1032
$3.00
UCC       NEW YEAR

1. DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (1a or 1b)

| 1a. ENTITY'S NAME | | | |
|---|---|---|---|
| SM 6105 LLC | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE | SUITE |
|---|---|---|---|---|---|
| 38500 Woodward Avenue, Suite 100 | Bloomfield Hills | MI | USA | 48304 | |

| 1d. S.S. OR TAX I.D. # | OPTIONAL ADD'L INFO RE: ENTITY DEBTOR | 1e. TYPE OF ENTITY | 1f. ENTITY'S STATE OR COUNTRY OF ORGANIZATION | 1g. ENTITY'S ORGANIZATIONAL I.D. #, if any |
|---|---|---|---|---|
| 98-3575295 | | limited liability company | Delaware | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (2a or 2b)

| 2a. ENTITY'S NAME | | | |
|---|---|---|---|

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE |
|---|---|---|---|---|
| | | | USA | |

| 2d. S.S. OR TAX I.D. # | OPTIONAL ADD'L INFO RE: ENTITY DEBTOR | 2e. TYPE OF ENTITY | 2f. ENTITY'S STATE OR COUNTRY OF ORGANIZATION | 2g. ENTITY'S ORGANIZATIONAL I.D. #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S (ORIGINAL S/P or ITS TOTAL ASSIGNEE) EXACT FULL LEGAL NAME – insert only one secured party name (3a or 3b)

| 3a. ENTITY'S NAME | | | |
|---|---|---|---|
| FLEET NATIONAL BANK | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE |
|---|---|---|---|---|
| One Financial Plaza, 5th Floor | Providence | RI | USA | 02903 |

4. This FINANCING STATEMENT covers the following types or items of property:

The items of property set forth on the attached Schedule A, and all additions, accessions, modifications, improvements, replacements, substitutions and accessories thereto and therefor, whether now owned, leased or hereafter acquired (the "Equipment"), and the proceeds, products and income of any of the foregoing, including insurance proceeds. Debtor has possession of the Equipment under a true lease. Secured Party has a security interest in the Equipment to the extent necessary to protect its title and/or interest therein.
   The Equipment is generally described as One [1] Learjet 60 aircraft, serial number 237.

35459-02/tkd
File: XX   S/S:  MI      Town/County:

5. CHECK ☐  This FINANCING STATEMENT is signed by the Secured Party instead of the Debtor to perfect a security interest ...
BOX
(a) in collateral already subject to a security interest in another jurisdiction when it was brought into this state, or when the debtor's location was changed to this state, or (b) in accordance with other statutes or product collateral (as may be required).

6. REQUIRED SIGNATURE(S)
Signature:   _John Blahnik_
Printed Name/Title:   Vice President-Vendor

7. If this is filed for record only
☐ Documentary      ☐ Documentary stamp tax not appearing

8. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS   Attach Addendum    [if applicable]

Signature:
Printed Name/Title:

9. Check to REQUEST SEARCH CERTIFICATE(S) on Debtor(s)
[ADDITIONAL FEE]
[optional]   ☐ All Debtors   ☐ Debtor 1   ☐ Debtor 2

(1) FILING OFFICER COPY – NATIONAL FINANCING STATEMENT (FORM UCC-1) (TRANS) (REV. 12/18/95)        THIS SPACE FOR USE OF FILING OFFICER

H74067
KAM

D769439

## ATTACHMENT TO UNIFORM COMMERCIAL CODE FINANCING STATEMENT

1.  **SECURED PARTY:**     **FLEET NATIONAL BANK**
c/o Fleet Capital Corporation
One Financial Plaza, 5th Floor
Mail Stop: RI/DE/03705A
Providence, Rhode Island   02903

   **DEBTOR:**     **SM 5105 LLC**
38500 Woodward Avenue
Suite 100
Bloomfield Hills, Michigan  48304

2.  **DESCRIPTION OF PROPERTY:**

Debtor hereby assigns to Secured Party, and grants to Secured Party a first priority security interest in and with respect to, all of Debtor's rights, title and interests of whatever kind or description (but none of its obligations) in and to: (a) the Purchase Documents; (b) the Aircraft, and all present or future additions, attachments, or accessories to the Aircraft, and replacements thereof, (c) all tools, manuals, service records, software and similar information and materials incorporated into or located on the Aircraft, and (d) the products, rents and profits and other proceeds therefrom or thereof, including, without limitation, all refunds and other amounts payable by Vendor under or with respect to the Purchase Agreement.

For purposes hereof:

   "Aircraft" means the Learjet 60 (serial number 237) (including, without limitation, the airframe, engines, auxiliary power unit, avionics, parts and records relating thereto) having a scheduled delivery date 4th quarter 2001, pursuant to the Purchase Agreement.

   "Purchase Agreement" means the Aircraft Purchase Agreement dated March 22, 2001, between Debtor and Vendor, as amended from time to time.

   "Purchase Documents" means any purchase orders or related documents, warranties and agreements with Vendor, including the Purchase Agreement.

   "Vendor" means Learjet Inc.

RSCOMBS 367512.1 3/30/01 12:00 PM

THIS SPACE FOR USE OF FILING OFFICER

**FINANCING STATEMENT - FOLLOW INSTRUCTIONS CAREFULLY**
This Financing Statement is presented for filing pursuant to the Uniform Commercial Code
and will remain effective, with certain exceptions, for 5 years from date of filing.

A. NAME & TEL. # OF CONTACT AT FILER (optional)

Robbin A. Gossman, Paralegal
Ober, Kaler, Grimes & Shriver
120 East Baltimore Street
Baltimore, Maryland 21202

B. FILING OFFICE ACCT. # (optional)

RECD U.C.C. UNIT
05/01/01    9:00 AM
SECRETARY OF STATE
LANSING MI  D769440
N
MDOS 903459 - 1 04/11/2001
2001 95016 12016 1032
$3.00    NEW YEAR
UCC

C. OPTIONAL DESIGNATION (if applicable): [ ] LESSOR/LESSEE [ ] CONSIGNOR/CONSIGNEE [ ] NON-UCC FILING

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b)
   OR
   1a. ENTITY'S NAME
   SM 5105 LLC

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE |
|---|---|---|---|---|
| 38500 Woodward Avenue, Suite 100 | Bloomfield Hills | MI | USA | 48304 |

| 1d. TAX ID # | OPTIONAL ADD'L INFO. RE: ENTITY DEBTOR | 1e. TYPE OF ENTITY | 1f. ENTITY'S STATE OR COUNTRY OF ORGANIZATION | 1g. ENTITY'S ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| 38 3575295 | | limited liability company | Delaware | [ ] NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b)
   OR
   2a. ENTITY'S NAME

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE |
|---|---|---|---|---|
| | | | USA | |

| 2d. TAX ID # | OPTIONAL ADD'L INFO. RE: ENTITY DEBTOR | 2e. TYPE OF ENTITY | 2f. ENTITY'S STATE OR COUNTRY OF ORGANIZATION | 2g. ENTITY'S ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | [ ] NONE |

3. SECURED PARTY'S (ORIGINAL S/P or ITS TOTAL ASSIGNEE) EXACT FULL LEGAL NAME - insert only one secured party name (3a or 3b)
   OR
   3a. ENTITY'S NAME
   FLEET NATIONAL BANK

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE |
|---|---|---|---|---|
| One Financial Plaza, 5th Floor | Providence | RI | USA | 02803 |

4. This FINANCING STATEMENT covers the following types or items of property:

The items of property set forth on the attached Schedule A, and all additions, accessions, modifications, improvements, replacements, substitutions and accessories thereto and therefor, whether now owned, leased or hereafter acquired (the "Equipment"), and the proceeds, products and income of any of the foregoing, including insurance proceeds. Debtor has possession of the Equipment under a true lease. Secured Party has a security interest in the Equipment to the extent necessary to protect its title and/or interest therein.

The Equipment is generally described as  One (1) Canadair Challenger Model CL-600-2B16 Variant 604 aircraft (N599DA)

35469-01/kkd
File: XX  S/S:  MI    Town/County:

5. CHECK [ ] THIS FINANCING STATEMENT is signed by the Secured Party instead of the Debtor to perfect a security interest (a) in collateral already subject to a security interest in another jurisdiction when it was brought into this state, or when the debtor's location was changed to this state, or (b) in accordance with other statutory provisions (additional fees may be required)
BOX

7. [ ] This FINANCING STATEMENT is to be filed (for record) or recorded) in the REAL ESTATE RECORDS
Attach Addendum (if applicable)

6. REQUIRED SIGNATURE(S):
Signature:  _John Blahnik_
Printed Name/Title:  John Blahnik / Vice President-Treasurer

8. Check to REQUEST SEARCH CERTIFICATE(S) on Debtor(s) (ADDITIONAL FEE) (optional) [ ] All Debtors [ ] Debtor 1 [ ] Debtor 2

Signature:
Printed Name/Title:

(1) FILING OFFICER COPY - NATIONAL FINANCING STATEMENT (FORM UCC-1) (TRANS) (REV. 12/18/95)    THIS SPACE FOR USE OF FILING OFFICER

H74067
KAM



D769440

## ATTACHMENT TO UNIFORM COMMERCIAL CODE FINANCING STATEMENT

1.  SECURED PARTY:      **FLEET NATIONAL BANK**
                        c/o Fleet Capital Corporation
                        One Financial Plaza, 5th Floor
                        Mail Stop: RI/DE/03705A
                        Providence, Rhode Island  02903

    DEBTOR:             **SM 5105 LLC**
                        38500 Woodward Avenue
                        Suite 100
                        Bloomfield Hills, Michigan  48304

2.  DESCRIPTION OF PROPERTY:

    Debtor hereby assigns to Secured Party, and grants to Secured Party a first priority
    security interest in and with respect to, all of Debtor's rights, title and interests of
    whatever kind or description (but none of its obligations) in and to: (a) the Purchase
    Documents; (b) the Aircraft, and all present or future additions, attachments, or
    accessories to the Aircraft, and replacements thereof, (c) all tools, manuals, service
    records, software and similar information and materials incorporated into or located on
    the Aircraft, and (d) the products, rents and profits and other proceeds therefrom or
    thereof, including, without limitation, all refunds and other amounts payable by Vendor
    under or with respect to the Purchase Agreement.

    For purposes hereof:

    "Aircraft" means the Canadair Challenger Model CL-600-2B16 Variant 604 (N599DA)
    (including, without limitation, the airframe, engines, auxiliary power unit, avionics, parts and
    records relating thereto) having a scheduled delivery date 4th quarter 2001, pursuant to the
    Purchase Agreement.

    "Purchase Agreement" means the Aircraft Purchase Agreement dated January 31, 2001,
    between Debtor and Vendor, as amended from time to time.

    "Purchase Documents" means any purchase orders or related documents, warranties and
    agreements with Vendor, including the Purchase Agreement.

    "Vendor" means Bombardier Aerospace Corporation.

GFJ 361814                                              (UCC)



## MICHIGAN DEPARTMENT OF STATE

Uniform Commercial Code Section
P.O. Box 30197
Lansing, Michigan 48909-7697
www.michigan.gov/sosucc

### Search Request

October 15, 2005

**Job Number:**            U20051013-0870
**Reference Number:**   0000722882-1
**Certification Date:**    10/12/2005 17:00 PM

The filing officer certifies that the attached is a record, according to the search criteria specified, of all financing statements, [tax liens,] and amendments which name the debtor as filed with the Michigan Secretary of State, Uniform Commercial Code Section, as of the above certification date.

**Search Criteria:**
Debtor Name:   Delphi Automotive Systems Human Resources, LLC
Lien Type:        UCC/Tax
Lien Status:      All (Including lapsed)

Michigan Department of State
Jeffry C. Nickerson
Filing Officer

### Disclaimer

Information relative to security interests and statutory liens obtained from the index is for information purposes only. Such information does not relieve any person or business from liability, alter priorities of security interest or liens, or affect any other legal rights or responsibilities. The index primarily contains information relative to security interests and statutory liens which have been filed for record on or before the above certification date. There may be security interests and statutory liens filed after that date which are valid. A search request limited under R 440.508(1) may not reveal all filings against the debtor search. The searcher bears the risk of relying on the limited search.



# MICHIGAN DEPARTMENT OF STATE

Uniform Commercial Code Section
P.O. Box 30197
Lansing, Michigan 48909-7697
www.michigan.gov/sosucc

Search Criteria:

Debtor Name:   Delphi Automotive Systems Human Resources, LLC
Lien Type:     UCC/Tax
Lien Status:   All (Including lapsed)

No Matching Records Found.

(D)=Debtor
(T)=Tax Payer

(S)=Secured Party
(L)=Lien Holder