Neil J. Smith, Esq.  
Mackenzie Hughes LLP  
101 South Salina Street  
Syracuse, NY 13066  
Telephone: 315-233-8226  
Fax: 315-233-8235  
Email:nsmith@mackenziehughes.com  

Hearing Date: April 21, 2011  
Hearing Time: 10:00 a.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
::: 
In re:                              :       Chapter 11
                                    :
   DPH HOLDINGS CORP., et. al.,     :       Case No. 05-44481 (RDD)
                                    :
          Reorganized Debtors.      :       (Jointly Administered)
---------------------------------------------------------------x

**MOTION OF TAL-PORT INDUSTRIES, LLC**
**FOR ALLOWANCE OF AN ADMINISTRATIVE CLAIM**
**PURSUANT TO 11 U.S.C. § 503(B)(1)(A) AND, IN THE ALTERNATIVE,**
**FOR LEAVE TO FILE A LATE ADMINISTRATIVE EXPENSE**
**CLAIM PURSUANT TO BANKRUPTCY RULE 9006(B)**

COMES NOW, Tal-Port Industries, LLC ("Tal-Port"), and, pursuant to Section 503(b)(1)(A) of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), files this Request for Allowance of an Administrative Expense Claim and, in the Alternative, for Leave to File a Late Administrative Expense Claim. In support of its Motion, Tal-Port respectfully shows the Court as follows:

**BACKGROUND**

1.  On October 8 and 14, 2005 ("Petition Date"), the Debtors commenced their cases in this Court under Chapter 11 of the Bankruptcy Code.

2. Prior to and following the Petition Date, the Debtors, through Delphi Packard Electrical/Electronic Architecture ("Delphi"), entered into a business relationship with Tal-Port whereby Tal-Port produced certain automotive components at its Yazoo, Mississippi facility which were then picked up by Delphi transports and delivered to a warehouse facility in Mission, Texas leased by Tal-Port. These components would then be shipped by Delphi from the Mission, Texas facility to their various final destinations. The warehouse facility in Mission, Texas was jointly administered by Delphi and Tal-Port, with all shipping and receiving records, as well as payment records, kept on computers owned by Delphi.

3. On November 3, 2008, Tal-Port filed its Chapter 11 Voluntary Petition with the United States Bankruptcy Court for the Southern District of Mississippi. Shortly before this date, Tal-Port ceased operations at the Mission, Texas facility. All computers owned and used by Delphi at the Mission, Texas facility were taken by Delphi to a still unknown location.

4. Following the filing of its Chapter 11 Petition, Tal-Port began efforts to collect on past-due invoices from a number of entities, including Delphi. Tal-Port began discussions with representatives of Delphi and Delphi's Mississippi counsel in an attempt to locate the computer systems which were located in Mission, Texas in order to ascertain exactly the amounts owed by Delphi to Tal-Port and to obtain proof that such products were received by Delphi at the Mission, Texas facility. Despite repeated discussions with a number of Delphi representatives, Delphi could not ascertain the location of these missing records and could not determine with certainty the shipments from Tal-Port to the Mission, Texas facility which had been paid for and which shipments had not been paid.

5. On October 27, 2009, after several failed attempts by Tal-Port to ascertain the

{M0167218.3}                                            2

location of the shipment and payment records located in Delphi's computer system, Tal-Port filed its Administrative Claim against the Debtors' Bankruptcy Estate (Claim No. 19804) *See* Creditor Data for Claim No. 19804 attached as Exhibit "A." The amount of the claim, $89,459.02, represents the amount to which Tal-Port's financial records show that payment was not received for the invoices in its possession, ranging in date from September 20, 2007 and continuing until May 8, 2008. *See* various invoices attached herein as Exhibit "B." Such amount may be higher or lower, and may contain invoices from 2009, depending on the records contained in Delphi's computer system from Mission, Texas which has yet to be located by Delphi.

6. Following the filing of its Administrative Claim, Tal-Port has resumed productive discussions with representatives of Delphi regarding amounts owed by Delphi and the location of the missing Mission, Texas records. Counsel for Tal-Port began discussions with Margaret Bechtel, representative of Tal-Port, regarding these issues and Tal-Port counsel has been assured that Delphi is currently searching for all records applicable to Tal-Port's relationship with Delphi in Mission, Texas in order to ascertain the amounts, if any, that remain outstanding. *See* e-mail correspondence between Margaret Bechtel, Contractee of Delphi Corporation and counsel for Tal-Port attached herein as Exhibit "C."

**RELIEF REQUESTED**

**A.    Request for Immediate Payment of Postpetition Obligations**

7. Section 503(b)(1)(A) of the Bankruptcy Code entitles parties to administrative priority for the "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Administrative priority under this section may be granted if a party shows that it (i) contracted with the estate and (ii) provided some demonstrable benefit. *Trustees of Amalgamated*

{M0167218.3}                                                3

*Ins. Fund v. McFarlin's*, 789 F.2d 98, 101 (2d Cir. 1986).

8. The invoices attached in Exhibit B demonstrate that the Debtors, after the filing of its Chapter 11 Petition with this Court, continued to enter into purchase agreements with Tal-Port for the purchase of automotive components to be delivered to the Mission, Texas facility and then shipped to the Debtors' various locations, whereby Debtors would receive the benefit of such components. As such, it is clear that Delphi received a demonstrable benefit from a contract with the Debtors following the filing of its Chapter 11 Petition. The extent to which the Debtors received this benefit is unknown due to Delphi's failure to locate records kept at the Mission, Texas facility.

9. Based on the above, Claim No. 19804 is entitled to administrative priority pursuant to Section 503(b)(1)(A) of the Bankruptcy Code.

**B.      Request for Leave to File a Late Administrative Claim**

10. In addition to the above, Tal-Port seeks leave to file a late Administrative Claim on the grounds that Delphi's failure to locate the applicable records, despite many requests, has made it nearly impossible for Tal-Port to truly ascertain the extent to which the Debtors owe for goods provided.

11. Pursuant to Bankruptcy Rule 9006(b), leave to file a late claim may be granted where the failure to file is due to "excusable neglect." *In re PTI Comm, Inc.*, 403 B.R. 250 (Bankr. E.D.N.Y. 2009). Neglect has been defined by the United States Supreme Court as including failure caused by inadvertance, mistake, or carelessness. *Pioneer Investment Services Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 382 (1993). Whether such neglect is "excusable" depends on an equitable determination of "all relevant circumstances surrounding the

{M0167218.3 }                                               4

party's omission." *Id*. at 395.  This determination involves four relevant factors: 1) The danger of prejudice to the debtor; 2) the length of the delay and its potential impact on judicial proceedings; 3) the reason for the delay , including whether it was in the reasonable control of the movant; and 4) whether the movant acted in good faith.  *Id*. at 394.

12.     In ascertaining whether a bankruptcy estate would be prejudiced by the late filing of a claim, the bankruptcy courts of New York look to i) the size of the late claim in relation to the estate; ii) whether a disclosure statement or plan has been filed or confirmed with knowledge of the existence of the claim, and iii) the disruptive effect that the late filing would have on a plan close to completion or upon the economic model upon which the plan was formulated and negotiated.  *In re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D.N.Y. 1995).  The bankruptcy of Delphi Corporation, with its sheer size and hundreds of millions of dollars at issue, is certainly not prejudiced by the filing of Tal-Port's claim for $89,459.02.  Nor would such a claim disrupt any completed plan or economic model upon which such plan was completed.  As some of the unpaid invoices contained in Tal-Port's administrative claim pre-date the confirmation of Delphi's Chapter 11 plan, and because discussions regarding these invoices took place prior to such confirmation, Delphi has known about the existence of possible amounts owed to Tal-Port for goods provided well before confirmation of its Chapter 11 plan.

13.     Tal-Port's filing of a late administrative claim also does not present a significant delay that would impact these proceedings in any way.  The Debtors' Plan was confirmed over a year before the July 1, 2009 bar date for the filing of administrative claims.

14.     The Background section of Tal-Port's Motion displays that Tal-Port's delay in filing its Administrative Claim was not within the reasonable control of Tal-Port and that

{M0167218.3 }                                              5

Tal-Port's various attempts to ascertain the true amount and status of its claims have been completely in good faith. Tal-Port genuinely desired to resolve any and all outstanding amounts with representatives of Delphi, of which it had a long standing relationship, without having to resort to the course of filing an administrative claim. Unfortunately, Delphi's inability to locate vital and applicable records regarding their business relationship have unduly delayed Tal-Port's attempts in collecting on past due amounts. Any delay in seeking relief through this Court has been due to Delphi's inability to keep up with vital records regarding shipments made and received and payments made. Tal-Port continues good faith discussion with Delphi to date, and disallowing Tal-Port's claim would derail several months of productive discussions and man-hours spent on ascertaining the true value of Tal-Port's claims against the Debtors.

15. Leave to file Tal-Port's administrative claim is warranted based on the absence of prejudice to the debtors, the lack of delay in these proceedings, and Tal-Port's good faith. Such leave in the context of a bankruptcy proceeding has been granted in the presence of such factors. *See Pioneer*, 507 U.S. at 398 ("the lack of any prejudice to the debtor or to the interest of efficient judicial administration, combined with the good faith of the respondents and their counsel weigh strongly in favor of permitting the tardy claim."). As such, Tal-Port respectfully requests that this Court grant it Leave to File its Administrative Claim in order to allow it to continue its productive discussions with representatives of the Debtors and to ascertain the true amount of all amounts owed by the Debtors.

## CONCLUSION

WHEREFORE, Tal-Port respectfully requests that this Court enter an Order granting leave for the late filing of Administrative Claim No. 19804 and compelling payment of such claim as a

{M0167218.3}                                            6

priority administrative expense claim pursuant to Section 503(b)(1)(A) of the Bankruptcy Code.

DATED: April 1, 2011

                               **MACKENZIE HUGHES LLP**

                         ___/s/ Neil J. Smith_____
By:   Neil J. Smith, Esq.
        101 South Salina Street, Suite 600
        Syracuse, New York 13202
        nsmith@mackenziehughes.com
        (315)233-8226 (Phone)
        (315)233-8235 (Fax)