**Hearing Date and Time:  April 21, 2011 at 10:00 a.m. (prevailing Eastern time)**
**Supplemental Response Date and Time:  April 19, 2011 at 4:00 p.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
   Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | | |
| | : | |
|    In re | : | Chapter 11 |
| | : | |
| DPH HOLDINGS CORP., et al., | : | Case Number 05-44481 (RDD) |
| | : | |
| | : | (Jointly Administered) |
|    Reorganized Debtors. | : | |
| | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | | |

REORGANIZED DEBTORS' SUPPLEMENTAL REPLY TO RESPONSE OF
CLAIMANT TO REORGANIZED DEBTORS' OBJECTION TO (I) SCHEDULED
LIABILITY NUMBER 10396186 SCHEDULED ON BEHALF OF AMERICAN
CABLE COMPANY INC. AND SUBSEQUENTLY TRANSFERRED TO MADISON
NICHE OPPORTUNITIES LLC AND (II) SCHEDULED LIABILITY NUMBER
10402173 SCHEDULED ON BEHALF OF UNION METAL PRODUCTS
CORP. EFT AND SUBSEQUENTLY TRANSFERRED TO
MADISON INVESTMENT TRUST SERIES 38

("SUPPLEMENTAL REPLY REGARDING SCHEDULED
LIABILITY NUMBERS 10396186 AND 10402173 )

DPH Holdings Corp. and its affiliated reorganized debtors in the above-captioned cases (together with DPH Holdings Corp., the "Reorganized Debtors") hereby submit the Reorganized Debtors' Supplemental Reply To Response Of Claimant To Reorganized Debtors' Objection To (I) Scheduled Liability Number 10396186 Scheduled On Behalf Of American Cable Company Inc. And Subsequently Transferred To Madison Niche Opportunities LLC And (II) Scheduled Liability Number 10402173 Scheduled On Behalf Of Union Metal Products Corp. EFT And Subsequently Transferred To Madison Investment Trust Series 38 (the "Supplemental Reply"), and respectfully represent as follows:

A.    Preliminary Statement

1.    On October 8 and 14, 2005 (the "Petition Date"), Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Debtors"), predecessors of the Reorganized Debtors, filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").

2.    On October 6, 2009 (the "Effective Date"), the Debtors substantially consummated the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified (the "Modified Plan"), which had been approved by this Court pursuant to an order entered on July 30, 2009 (Docket No. 18707), and emerged from chapter 11 as the Reorganized Debtors.

3.    On March 24, 2011, the Reorganized Debtors filed the Notice Of Sufficiency Hearing With Respect To (I) Debtors' Objection To Proof Of Claim Number 9647 And (II) Reorganized Debtors' Objection To Scheduled Liability Numbers 10396186 And 10402310 (Docket No. 21178) (the "Sufficiency Hearing Notice").

4.       The Reorganized Debtors filed the Sufficiency Hearing Notice and are
filing this Supplemental Reply to implement Article 9.6(a) of the Modified Plan, which provides
that "[t]he Reorganized Debtors shall retain responsibility for administering, disputing, objecting
to, compromising, or otherwise resolving all Claims against, and Interests in, the Debtors and
making distributions (if any) with respect to all Claims and Interests."

5.       By the Sufficiency Hearing Notice and pursuant to the Order Pursuant To
11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014
Establishing (I) Dates For Hearings Regarding Objections To Claims And (II) Certain Notices
And Procedures Governing Objections To Claims, entered December 7, 2006 (Docket No. 6089)
(the "Claims Objection Procedures Order") and the Fourteenth Supplemental Order Pursuant To
11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014
Establishing (I) Dates For Hearings Regarding Objections To Claims And (II) Certain Notices
And Procedures Governing Objections To Claims, entered January 28, 2011 (Docket No. 21098),
the Reorganized Debtors scheduled a hearing (the "Sufficiency Hearing") on April 21, 2011 at
10:00 a.m. (prevailing Eastern time) in this Court to address the legal sufficiency of scheduled
liability numbers 10396186 and 10402173 and whether each such scheduled liability states a
colorable claim against the asserted Debtor.

6.       This Supplemental Reply is filed pursuant to paragraph 9(b)(i) of the
Claims Objection Procedures Order.  Pursuant to paragraph 9(b)(ii) of the Claims Objection
Procedures Order, if a claimant wishes to file a supplemental pleading in response to this
Supplemental Reply, the claimant shall file and serve its response no later than two business days
before the scheduled Sufficiency Hearing – i.e., by **April 19, 2011.**

B.    Relief Requested

7.    By this Supplemental Reply, the Reorganized Debtors request entry of an

order (i) disallowing and expunging scheduled liability number 10396186 and (ii) modifying and

allowing scheduled liability number 10402173 as a general unsecured non-priority claim in the

amount of $1,637.30 against DPH-DAS LLC.

C.    The Claims Scheduled Against the Debtors

8.    On January 20, 2006, the Debtors filed their schedules of assets and

liabilities and included, among other things, (a) scheduled liability number 10396186 on behalf

of American Cable Company Inc. ("American Cable") and (b) scheduled liability number

10402173 on behalf of Union Metal Products Corp. EFT ("Union Metal").  Scheduled liability

number 10396186 scheduled an unsecured non-priority claim in the amount of $31,200.00

stemming from amounts allegedly owed for goods or services rendered by American Cable to the

Debtors prior to the Petition Date ("Claim 10396186").  Scheduled liability number 10402173

scheduled an unsecured non-priority claim in the amount of $51,735.60 stemming from amounts

allegedly owed for goods or services rendered by Union Metal to the Debtors prior to the Petition

Date ("Claim 10402173," and together with Claim 10396186, the "Claims").

9.    On or about February 12, 2007, Claim 10402173 was subsequently

transferred to Madison Investment Trust Series 38 ("Madison Investment," and together with

Madison Niche, "Madison") pursuant to an Evidence Of Transfer Of Claim (Docket No. 6955).

10.    On or about June 11, 2007, Claim 10396186 was subsequently transferred

to Madison Niche Opportunities, LLC ("Madison Niche") pursuant to an Evidence Of Transfer

Of Claim (Docket No. 8230).

11.    The Debtors' Objection to the Claims. On February 3, 2010, the

Reorganized Debtors objected to the Claims pursuant to the Reorganized Debtors' Forty-Fourth

4

Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And (d) And Fed. R. Bankr. P. 3007 To (I)

Modify And Allow (A) Certain Modified And Allowed Claims, (B) A Partially Satisfied Claim,

And (C) Certain Partially Satisfied Scheduled Liabilities, (II) Disallow And Expunge (A) Certain

Fully Satisfied Scheduled Liabilities, (B) Certain MDL-Related Claims, (C) Certain Union

Claims, (D) Certain Personal Injury Claims, And (E) A Duplicate Claim, (III) Object To Certain

(A) Preference-Related Claims And (B) Preference-Related Scheduled Liabilities, And (IV)

Modify Certain SERP-Related Scheduled Liabilities (Docket No. 19395) (the "Forty Fourth

Omnibus Claims Objection")[1] asserting that the Claims had either been fully or partially satisfied

by Cure Payments (defined below).

      12.    <u>Response to the Reorganized Debtors' Objection</u>.  On or about March 15,

2010, Madison Niche filed its Response To: Notice Of Objection To Claim – Forty-Fourth

Omnibus (Docket No. 19690) (the "First Response"), asserting that any distributions made on

behalf of the Claim 10396186 should have been made to Madison Niche.

      13.    On or about March 15, 2010, Madison Investment filed its Response To:

Notice Of Objection To Claim – Forty-Fourth Omnibus (Docket No. 19691) (the "Second

Response," and together with the First Response, the "Responses"), asserting that any

distributions made on behalf of the Claim 10402173 should have been made to Madison

Investment.

---

[1]    On April 5, 2010, this Court entered the Forty-Fourth Omnibus Claims Objection Order (Docket No. 19770), adjourning the Claims to a future date to be noticed by the Reorganized Debtors consistent with and subject to the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I) Dates For Hearings Regarding Objections To Claims And (II) Certain Notices And Procedures Governing Objections To Claims, entered December 7, 2006 (Docket No. 6089) (the Claims Objection Procedures Order").

D.    <u>Claimant's Burden of Proof and Standard for Sufficiency of Claim</u>

14.    The Reorganized Debtors respectfully submit that with the exception of $1,637.30 on account of Claim 10402173, the Claims fail to state a claim against the Debtors under rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Madison has not proved any facts to support a right to further payment by the Reorganized Debtors on behalf of the Debtors.  Accordingly, the Reorganized Debtors' objection to the Claims should be sustained and (i) Claim 10396186 should be disallowed and expunged in its entirety and (ii) Claim 10402173 should be modified and allowed as a general unsecured non-priority claim in the amount of $1,637.30 against DPH-DAS LLC.

15.    This Court has consistently held that a general claim assignment agreement by itself, does not give a claims trader the right to deal with the Debtors on cure issues under section 365 of the Bankruptcy Code.  <u>See</u> Hr'g Tr. 146:15-23, Feb. 21, 2008 (Docket No. 13210), relevant portions of which are attached hereto as <u>Exhibit A</u> (finding that claims traders "who were not assignees of the contract . . . just purchasers of a portion of the claim" do not have the right "to get in between the debtor and the contract counterparty").

16.    In addition, this Court has held that the designation of a claims trader as an agent or attorney-in-fact also does not give the claims trader authority to deal with the Debtors on cure issues under section 365.  Instead, a contract counterparty must either assign the contract to the claims trader or grant the claims trader power of attorney.  <u>Id.</u> at 149:1-10 ("[T]he contract party can make it clear to the debtor that it [has] properly authorized a third party to deal in its stead in . . . [a] 365 motion.  If there's proper evidence of that, and I think it's more than just . . . a claim assignment form.  It can be a contract assignment form or it can be, I think, a proper power of attorney.").

17.     Furthermore, this Court has held that an agreement by which a claims trader purchases a claim does not give the claims trader the right to insert itself between the Debtors and their contract counterparties merely because the agreement gives the claims trader an economic interest.  See Hr'g Tr. 99:8-25, Jan. 10, 2008 (Docket No. 12627), relevant portions of which are attached hereto as Exhibit B ("The debtor is not a party to [claims transfer] agreements.  And if [the contract counterparties] don't do what they're supposed to do under [the claims traders'] agreements, [claims traders] have rights against them.").  Moreover, this Court has observed that the Debtors' practice of dealing only with the contract counterparty is "really no surprise because that's generally how the assumption of executory contracts works.  Under section 365(a) and (b), the debtor deals with the party to the contract unless, of course, that party has assigned the entire contract to a third party."  See Hr'g Tr. 105:18-23, Feb. 26, 2008, (Docket No. 13038), relevant portions of which are attached hereto as Exhibit C.

18.     For purposes of sufficiency, this Court has determined that the standard of whether a claimant has met its initial burden of proof to establish a claim should be similar to the standard employed by courts in deciding a motion to dismiss under Bankruptcy Rules 7012 and 9014.  See Hr'g Tr. 52:24-53:1, Jan. 12, 2007 (Docket No. 7118).  Pursuant to that standard, a motion to dismiss should be granted if a claimant fails to make "'[f]actual allegations . . . enough to raise a right to relief above the speculative level [to a plausible level],' assuming (of course) that all the allegations in the complaint are true." Bradley v. Rell, No. 1:07-CV-0148, 2010 U.S. Dist. LEXIS 29606, at *13 (N.D.N.Y. Mar. 25, 2010) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Essentially, the claimant must provide facts that plausibly support a legal liability against the Debtors.

7

E.      Argument Regarding the Claim

19.     Assumption Of Contracts And Related Cure Payments.  Prior to the
Petition Date, the Debtors were party to thousands of contracts for the supply of goods to the
Debtors' manufacturing operations.  Pursuant to article 8.1(a) of the Modified Plan, all executory
contracts and unexpired leases to which any of the Debtors was a party were deemed
automatically assumed in accordance with the provisions and requirements of sections 365 and
1123 of the Bankruptcy Code as of the effective date of the Modified Plan, unless such executory
contracts or unexpired leases (a) had been previously rejected by the Debtors pursuant to a final
order of this Court, (b) were the subject of a motion to reject pending on or before such effective
date, (c) were rejected or assumed pursuant to a motion to sell or transfer property or assets filed
by the Debtors prior to such effective date, (d) had expired or been terminated on or prior to such
effective date (and not otherwise extended) pursuant to their own terms, (e) were listed on
Exhibit 8.1(a) (Rejected Contracts) to the Modified Plan as executory contracts or unexpired
leases to be rejected pursuant to section 365 of the Bankruptcy Code, or (f) were otherwise
rejected pursuant to the terms of the Modified Plan and/or upon the direction of either buyer
pursuant to the Master Disposition Agreement.  In early November 2009, as required under
section 365 of the Bankruptcy Code and article 8.2 of the Modified Plan, the non-Debtor contract
counterparties received payments to cure the undisputed defaults on the assumed executory
contracts and unexpired leases (the "Cure Payments").

20.     The Claims Have Been Fully or Partially Satisfied.  The Debtors
previously paid all obligations relating to the Claim 10396186.  On November 2, 2009, the
Debtors made a cure payment of $31,200.00 to American Cable corresponding to the same
$31,200.00 scheduled on Claim 10396186. A copy of the check is attached hereto as Exhibit D.
Similarly, on November 3, 2009, the Debtors made a cure payment in the amount of $50,098.30

8

to Union Metal corresponding to amounts included on Claim 10402173. A copy of the check is attached hereto as Exhibit E.

21.   In the Responses, Madison confuses the distinction between cure and claim.  Madison was not an assignee of either a contract between the Debtors and American Cable or a contract between the Debtors and Union Metal.  The mere purchase of the economic interest in the Claims does not give Madison the right to insert itself between the Debtors and their contract counterparties.  Because the unpaid cure forms the basis for Claim 10396186 and such cure has been satisfied in full, Claim 10396186 should be disallowed and expunged in its entirety.  Similarly, the unpaid cure forms the basis for Claim 10402173 and the payment of $50,098.30 reduced the liability owed on behalf of Claim 10402173 from $51,735.60 to $1,637.30.  Because the Reorganized Debtors do not dispute the remaining amounts owed on behalf of Claim 10402173, Claim 10402173 should be modified and allowed as a general unsecured non-priority claim in the amount of $1,637.30 against DPH-DAS LLC.

22.   The Reorganized Debtors, therefore, believe that with the exception of $1,637.30 on account of Claim 10402173, the obligations giving rise to the Claims have been satisfied in full and that (a) Madison has not met its burden of proof to establish a claim against or interest in the Debtors and (b) the Claims as scheduled fail to state a claim against the Reorganized Debtors under Bankruptcy Rule 7012.  Because Madison cannot provide facts or law supporting the Claims, the Forty-Fourth Omnibus Claims Objection should be sustained as to each Claim and (i) Claim 10396186 should be disallowed and expunged in its entirety and (ii) Claim 10402173 should be modified and allowed as a general unsecured non-priority claim in the amount of $1,637.30 against DPH-DAS LLC.

WHEREFORE the Reorganized Debtors respectfully request that this Court enter an order (a) sustaining the objection with respect to each Claim, (b) disallowing and expunging scheduled liability number 10396186, (c) modifying and allowing scheduled liability number 10402173 as a general unsecured non-priority claim in the amount of $1,637.30 against DPH-DAS LLC, and (d) granting such further and other relief this Court deems just and proper.

Dated:    New York, New York
          April 11, 2011

                            SKADDEN, ARPS, SLATE, MEAGHER
                              & FLOM LLP

                            By:   /s/ John K. Lyons
                                  John Wm. Butler, Jr.
                                  John K. Lyons
                                  Ron E. Meisler
                            155 North Wacker Drive
                            Chicago, Illinois 60606

                                  - and -

                            Four Times Square
                            New York, New York 10036

                            Attorneys for DPH Holdings Corp., et al.,
                                  Reorganized Debtors

# Exhibit A

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 05-44481

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


DELPHI CORPORATION, ET AL.,


          Debtors.


- - - - - - - - - - - - - - - - - - - -x


               U.S. Bankruptcy Court

               One Bowling Green

               New York, New York


               February 21, 2008

               10:10 a.m.


B E F O R E:

HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE



054448108032400000000000012

146

1  think that that would be the equivalent of the cure party

2  filing it themselves.

3      MR. BUTLER:  Well Your Honor, I mean our view on that

4  is that could well be a violation of our supply agreement and

5  not enforceable.  These -- as Your Honor ruled in that thing,

6  365 deals with not just cure it deals with terms under which

7  things will be negotiated.

8      THE COURT:  No, I -- but that's a separate issue.  I

9  mean, I think what I'm focusing on now is -- is the very narrow

10  point which is whether -- not whether but to what extent are

11  these three entities bound by my ruling.  In fact, everyone

12  else too because I think that's there's a law of the case

13  issue.

14      MR. BUTLER:  We're going to get to that later.

15      THE COURT:  But -- but my -- my belief is that what I

16  -- what I told Mr. Shiff was that I did not want, and I didn't

17  think they had the right to, to have the purchasers who were

18  not assignees of the contract they were just purchasers of a

19  portion of the claim, to get in between the debtor and the

20  contract party.  However, if the contract party took

21  appropriate action, then that would be -- and I told them that

22  was something that they should try to accomplish -- that would

23  be sufficient.  Now that -- it brings the question what the

24  appropriate action is but it seems to me that I left that issue

25  open in that ruling.  I didn't -- I didn't preclude them from

147

1   taking an action that would properly evidence the -- the

2   counterparty's desires vis-a-vis cure.  Now, I guess if in fact

3   the counterparty has done something contrary to another

4   agreement you have with them, that -- that may raise an issue.

5   But I think as far as the issue preclusive effect of my ruling,

6   I don't think you could take it so far as to say that only the

7   counterparty had to file the notice or the response to the

8   notice.  They had to file something, arguably.  But -- so I

9   don't think they're necessarily precluded.

10       MR. BUTLER:  Well then, Your Honor, the question

11   is -- and then we can group Contrarian, Argo and ASM back with

12   everybody else because the other 150 notices --

13       THE COURT:  Well, there is -- there is, obviously,

14   still an issue about Pioneer.  And -- and they may end up being

15   different because of their involvement before but -- but I

16   don't think it's necessarily on a strict issue preclusion

17   basis.  It may be just as far as balancing the pioneer factors.

18   So while you're saying you're to group them with everybody else

19   they may still, ultimately, be different because obviously they

20   were really focused on this issue and, you know, they may have

21   excuses or reasons why the things didn't get filed or they got

22   filed the way they did.  But I'm not immediately lumping them

23   in with everyone else.

24       MR. BUTLER:  Well Your Honor, then the question, I

25   think, from the debtors' perspective in terms of how we move

148

1   from here, there are 151 notices still, putting aside the

2   seventeen, that are the subject then of the contested hearing.

3   And it seems to me the question is, of 151 notices what is Your

4   Honor going to require in order for a -- a notice not executed

5   by the contract counterparty in order for that to be a valid

6   notice to then go through and talk about the two, three and

7   four issues.  Because the -- it seems to me that, you know,

8   that from the company's perspective, you know, that, you know,

9   we need some guidance from Your Honor as to what it is that

10  claims originally were required to do in order for them to be

11  able to step into shoes.  In our view, when we actually thought

12  we had won this on the 10th, Your Honor.  I'm a little

13  concerned about Your Honor may be modifying your prior ruling.

14  But I thought that law is pretty clear that 365 does not permit

15  purchasers to -- to interfere with the cure and contract

16  assumption relationship between --

17       THE COURT:  I --

18       MR. BUTLER:  -- the debtors and a contract party.

19       THE COURT:  It seems to me that if the contract party

20  has -- has enabled the timely notification of the debtor with

21  the proper power of attorney, under 9014, then they've, you

22  know, they've done what they need to do.

23       MR. BUTLER:  So maybe the Court --

24       THE COURT:  I mean, it -- the exception that I was

25  taking to your -- to your issue of preclusion argument is -- is

149

1  a narrow one.  I -- I believe that the scheme enacted as part

2  of 365 is that the debtor deals with the contract party.  But I

3  -- I think that the contract party can make it clear to the

4  debtor that it is properly authorized a third party to deal in

5  its stead in that negotiation or that motion, 365 motion.  If

6  there's proper evidence of that, and I think it's more than

7  just an assignment form, and I don't mean a contract assignment

8  form I mean, you know, a claim assignment form.  It can be a

9  contract assignment form or it can be, I think, a proper power

10 of attorney.

11      MR. BUTLER:  I think we -- I don't think anybody in

12 this courtroom is asserting that they had the supply agreement

13 assigned to them.  So I think we can put that aside.

14      THE COURT:  So I think we're talking about an

15 appropriate power of attorney from these people.

16      MR. BUTLER:  So maybe the question then -- the way to

17 proceed on this, Your Honor, is to run -- run through the

18 objecting parties and just ask who is asserting that they have

19 evidence that they have powers of attorney that were executed

20 in accordance with 9014 prior to the submission of the form, is

21 that the question, Your Honor?

22      MR. SACKS:  Your Honor, Ira Sacks on behalf of twenty

23 contract counterparties.  I think the question is a little bit

24 broader than that.  I think that if you heard from some of the

25 counterparties as to what they did both on the 11th and after

# Exhibit B

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 05-44481

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


DELPHI CORPORATION ET AL.,


          Debtor.


- - - - - - - - - - - - - - - - - - - -x

                  United States Bankruptcy Court

                  One Bowling Green

                  New York, New York


                  January 10, 2008

                  2:36 PM


B E F O R E:

HON. ROBERT  D. DRAIN

U.S. BANKRUPTCY JUDGE

0544481080115000000000085

98

1    people use copies if they can't get the originals.

2           THE COURT:  Well, but they can call the -- they can

3    call the ballot agent.

4           MR. SHIFF:  And if they get it then they can get them

5    in.

6           THE COURT:  Well, but, you know, if they call the

7    ballot agent five minutes before the ballot's due, I think

8    there's a problem.  But if they call --

9           MR. SHIFF:  Certainly.

10          THE COURT:  -- you know, in the morning, then the

11   ballot agent is probably going to get it to them.

12          MR. SHIFF:  We probably are five minutes before,

13   but -- no, they have been calling, Your Honor.  But I know it's

14   not in the record, and that's something we'll have to develop,

15   I guess, further

16          THE COURT:  All right.  I think that the relief

17   you're seeking here is relief that, as Mr. Butler says, is

18   contrary to the order.  And that order was on, I believe, ample

19   notice.  It also, and as importantly, is relief that I think is

20   not merely a procedural correction of an error or relief that

21   would have no material effect on the debtors or other parties

22   in interest.  The main reason for that conclusion is that I

23   think it depends -- granting the relief would depend on me

24   overlooking the primary relationship here, in fact the only

25   relationship here, that the debtor has, which is with its

99

1    contract counter party, who are obviously ongoing trade

2    suppliers and vendees who are important to the debtor's ongoing

3    business.  And under Section 365, they are the ones who really

4    need to deal with the cure notice, because it's not just a cure

5    notice.  It's an assumption notice that lays out and reminds

6    the contract parties -- counter parties, of their rights under

7    Section 365, which are not limited to insisting upon cure.

8              I believe that your clients, as a very function of

9    the assignment agreement which they entered into, know who

10   these people are and could have, and I believe as you say they

11   have, contacted them and given them what your clients believe

12   are their obligations under your clients' agreements with those

13   people.  But those aren't three-party agreements.  The debtor

14   is not a party to those agreements.  And if they don't do what

15   they're supposed to do under your agreements, you have rights

16   against them.  I don't know what those obligations are and what

17   those rights are because they're not in the record.  But I

18   believe that, again, as I said earlier, contrary to when I

19   signed this order to show cause, this is not an instance where

20   the debtor is just being difficult about a deadline or a

21   procedure and trying to prevent the real party in interest from

22   having its wishes set forth; but rather would have the debtor

23   change the relationship with its contract parties and get in

24   the middle of your relationship with them.  And they're really

25   two separate relationships.

# Exhibit C

1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 05-44482-rdd

5    - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    DELPHI CORPORATION,

9

10            Debtor.

11

12    - - - - - - - - - - - - - - - - - - - -x

13

14                United States Bankruptcy Court

15                One Bowling Green

16                New York, New York

17

18                February 26, 2008

19                10:23 AM

20

21    B E F O R E:

22    HON. ROBERT D. DRAIN

23    U.S. BANKRUPTCY JUDGE

24

25

0544481080310000000000007

103

1    The evidence says that maybe they didn't comply with the order,

2    as Your Honor's ruled, but there's no -- that's different from

3    saying there's an intent, as if we sat down, figured out what

4    the order which Your Honor ruled and thought you know, this is

5    what the order says but we're not going to do it anyways.

6           THE COURT:  Okay.  All right.  Pursuant to a motion

7    that was dated September 6th, 2007, the debtors in these

8    Chapter 11 cases sought approval of several procedures in

9    related forms of notice pertaining to their efforts to emerge

10   from Chapter 11.  The motion sought approval for timing and

11   form of notice of the hearing on the disclosure statement,

12   procedures for the temporary allowance of certain claims,

13   setting a hearing date for plan confirmation and procedures for

14   filing objections to a plan and solicitation of ballots on a

15   plan and procedures for resolving disputes about post-petition

16   interest claims and reclamation claims and, as relevant here,

17   procedures for dealing with claims by parties to as yet

18   unassumed executory contracts with regard to a requirement of

19   Section 365(b)(1) of the Bankruptcy Code that before the debtor

20   can be authorized to assume an executory contract or lease, the

21   debtor must cure or provide adequate assurance of prompt cure

22   of defaults under such contract.  That motion was ultimately

23   granted pursuant to an order dated December 10th, 2007 which is

24   referred to as the solicitation procedures order.

25           As regards the motion itself, the relief sought in

104

1    respect of cure claim procedures was governed by paragraphs 83

2    through 87 under the upper case heading "Cure Claim

3    Procedures".  It explains the rationale for the request which

4    is, first, to set up a method for determining cure claims with

5    appropriate notice; and, second, to allow those who would have

6    cure claims the choice of participating in treatment afforded

7    to general unsecured creditors under the plan or,

8    alternatively, to elect to receive cash.  If the former option

9    applied, then the contract party would receive post-petition

10   interest in respect of its secured claim.  And the cure claim

11   plus the interest would be paid in plan currency as ultimately

12   provided in the plan that would be stock in the reorganized

13   debtors.  If the counterparty elected to receive cash instead,

14   it would not receive post-petition interest for the roughly two

15   years that the debtors were in Chapter 11 in respect of its

16   pre-petition cure claim.

17        The motion, in paragraphs 84 through 87, made it

18   clear that the party the debtors were dealing with was the

19   nondebtor contract counterparty to the supply contracts.

20   That's made clear by the repeated references to the

21   counterparty in paragraphs 84 and 85 and 86.  In particular,

22   paragraph 87 -- I'm sorry, paragraph 85 states "The cure amount

23   notice provides that if the counterparty agrees with the

24   debtors' stated cure amount, it may choose the treatment for

25   its cure claim.  If the counterparty disagrees with the cured

105

1    claim amount, the counterparty would be required to so mark and

2    return the cure amount notice by November 9, 2007." As an

3    aside, that date was later extended to January 11th, 2008. And

4    then continuing on with the motion, "And such party must

5    subsequently file a substantive objection to the cure claim

6    amount. If the counterparty makes no election or does not

7    indicate that it will dispute the cure claim, then such

8    counterparty would be given the plan currency." The motion

9    then says "The debtors propose to send the cure amount notice

10   to the supply contract counterparties on or before October

11   29th, 2007." Again, that date was extended. Finally, it said

12   "The plan provides, and the cure amount notice makes clear,

13   that the cure claim amount will be paid directly to the

14   contract party and not to the current holder of a claim

15   underlying the cured claim amount, if any."

16        It's quite clear when reading the motion that the

17   debtors' intent was to have the notice and the election all go

18   to and be exercisable by the contract counterparty. That's

19   really no surprise because that's generally how the assumption

20   of executory contracts works. Under Section 365(a) and (b),

21   the debtor deals with the party to the contract unless, of

22   course, that party has assigned the entire contract to a third

23   party in connection with the assumption and must establish that

24   it has cured or provided adequate assurance of prompt cure that

25   it's provided compensation or adequate assurance of prompt

# Exhibit D

5009

**DELPHI AUTOMOTIVE SYSTEMS**
MAIL CODE 480-900-001
5725 DELPHI DRIVE
TROY, MICHIGAN  48098

JPMORGAN CHASE BANK, N.A.
SYRACUSE, NEW YORK
50-937-213

11/2/2009

PAY TO THE
ORDER OF    AMERICAN CABLE COMPANY INC

$ **31,200.00

Thirty-One Thousand Two Hundred and 00/100********************************************************************

DOLLAR

AMERICAN CABLE COMPANY INC

231 E LUZERNE ST

MEMO    PHILADELPHIA, PA 19124

⑈500⑈3⑈ ⑆021309379⑆ 6018 3222⑈

**DELPHI AUTOMOTIVE SYSTEMS**
AMERICAN CABLE COMPANY INC

11/2/2009

5009

Contract Cure Payment - See attached docs.

31,200.00

Contract Cure Payme

31,200.00

**DELPHI AUTOMOTIVE SYSTEMS**
AMERICAN CABLE COMPANY INC

11/2/2009

5009

Contract Cure Payment - See attached docs.

31,200.00

Cashed 11/12/2009

Contract Cure Payme

31,200.00

DELUXE BUSINESS FORMS  1-800-328-0304  www.deluxeforms.com

# Exhibit E

5018

**DELPHI AUTOMOTIVE SYSTEMS**
MAIL CODE 480-900-001
5725 DELPHI DRIVE
TROY, MICHIGAN  48098

JPMORGAN CHASE BANK, N.A.
SYRACUSE, NEW YORK
50-937-213

11/3/2009

PAY TO THE
ORDER OF   UNITED METAL PROD CORP EFT

$  **50,098.30

Fifty Thousand Ninety-Eight and 30/100*********************************************************************

DOLLAR

UNITED METAL PROD CORP EFT

8101 LYNDON ST

MEMO      DETROIT, MI 48238-2452

⑈50183⑈ ⑆021309379⑆     6018282220⑈

---

**DELPHI AUTOMOTIVE SYSTEMS**
UNITED METAL PROD CORP EFT                                          5018

Contract Cure Payment - See attached docs.          11/3/2009

50,098.30

Contract Cure Payme                                          50,098.30

---

**DELPHI AUTOMOTIVE SYSTEMS**
UNITED METAL PROD CORP EFT                                          5018

Contract Cure Payment - See attached docs.          11/3/2009

50,098.30

*Cashed 11/10/2009*

Contract Cure Payme                                          50,098.30

DELUXE BUSINESS FORMS  1-800-328-0304  www.deluxeforms.com