Page 1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 05-44481(RDD)

5   - - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   DPH HOLDINGS CORP., et al.,

9

10                  Reorganized Debtors.

11

12   - - - - - - - - - - - - - - - - - - - - -x

13

14                  United States Bankruptcy Court

15                  300 Quarropas Street

16                  White Plains, New York

17

18                  April 21, 2011

19                  10:13 AM

20

21   B E F O R E:

22   HON. ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25

Page 2

1

2    FORTY-THIRD CLAIMS HEARING AGENDA:

3    HEARING re Claims Objection Hearing Regarding Claims of Ohio

4    Bureau of Workers' Compensation as Objected to on the Debtors'

5    Thirty-Fourth Omnibus Objection Pursuant to 11 U.S.C. § 502(b)

6    And Fed. R. Bankr. P. 3007 to (I) Expunge (A) Certain Pension

7    and OPEB Claims; (B) Certain Individual Workers' Compensation

8    Claims; (C) Certain Duplicate and/or Amended Individual

9    Workers' Compensation Claims; (D) Certain Untimely Individual

10   Workers' Compensation Claims; (E) a Secured Books and Records

11   Claim; and (F) Certain Untimely Claims; (II) Modify Certain (A)

12   Wage and Benefit Claims; (B) State Workers' Compensation

13   Claims; and (C) Individual Workers' Compensation Claims

14   Asserting Priority; (III) Provisionally Disallow Certain Union

15   Claims; and (IV) Modify and Allow Certain Settled Claims

16

17

18

19

20

21

22

23

24

25

Page 3

1

2    HEARING re Claims Objection Hearing Regarding Proofs of

3    Administrative Expense Claim Numbers 19147 and 19921 of

4    Navistar, Inc. f/k/a International Truck and Engine Corporation

5    as Objected to on the Reorganized Debtors' Forty-Third Omnibus

6    Objection Pursuant to 11 U.S.C. § 503(b) and Fed. R. Bankr. P.

7    3007 to (I) Expunge Certain Administrative Expense (A)

8    Severance Claims; (B) Books and Records Claims; (C) Duplicate

9    Claims; (D) Equity Interests; (E) Prepetition Claims; (F)

10   Insufficiently Documented Claims; (G) Pension, Benefit, and

11   OPEB Claims,;(H) Workers' Compensation Claims; and (II)

12   Transferred Workers' Compensation Claims; (III) Modify and

13   Allow Certain Administrative Expense Severance Claims; and (IV)

14   Allow Certain Administrative Expense Severance Claims

15

16

17

18

19

20

21

22

23

24

25

Page 4

1

2    HEARING re Claims Objection Hearing Regarding Claim of Sensata

3    Technologies, Inc. as Objected to on the Reorganized Debtors'

4    Forty-Third Omnibus Objection Pursuant to 11 U.S.C. § 503(b)

5    and Fed. R. Bankr. P. 3007 to (I) Expunge Certain

6    Administrative Expense (a) Severance Claims; (b) Books and

7    Records Claims; (c) Duplicate Claims; (d) Equity Interests; (e)

8    Pre-Petition Claims; (f) Insufficiently Documented Claims; (g)

9    Pension, Benefit, and OPEB Claims; (h) Workers' Compensation

10   Claims; and (i) Transferred Workers' Compensation Claims; (II)

11   Modify and Allow Certain Administrative Expense Severance

12   Claims; and (III) Allow Certain Administrative Expense

13   Severance Claims

14

15   HEARING re Sufficiency Hearing Regarding Claim Number 9647 of

16   Longacre Master Fund Ltd., as Transferee of Park Enterprises of

17   Rochester, Inc., as Objected to on the Debtors' Twenty-Seventh

18   Omnibus Objection Pursuant to 11 U.S.C. § 502(b) And Fed. R.

19   Bankr. P. 3007 to Certain Claims to Implement Cure Payments and

20   Modify General Unsecured Claims by Amount of Cure Payments

21

22

23

24

25

Page 5

1

2    HEARING re Sufficiency Hearing Regarding Scheduled Liability

3    Number 10396186 of Madison Niche Opportunities LLC, as

4    Transferee of American Cable Company Inc., as Objected to on

5    the Reorganized Debtors' Forty-Fourth Omnibus Objection

6    Pursuant to 11 U.S.C. § 502(b) and (d) and Fed. R. Bankr. P.

7    3007 to (I) Modify And Allow (a) Certain Modified And Allowed

8    Claims; (b) a Partially Satisfied Claim; and (c) Certain

9    Partially Satisfied Scheduled Liabilities; (II) Disallow and

10   Expunge (a) Certain Fully Satisfied Scheduled Liabilities; (b)

11   Certain MDL-Related Claims; (c) Certain Union Claims; (d)

12   Certain Personal Injury Claims; and (e) a Duplicate Claim;

13   (III) Object to Certain (a) Preference-Related Claims; and (b)

14   Preference-Related Scheduled Liabilities; and (IV) Modify

15   Certain SERP-Related Scheduled Liabilities

16

17

18

19

20

21

22

23

24

25

Page 6

1

2    HEARING re Sufficiency Hearing Regarding Scheduled Liability

3    Number 10402173 of Madison Investment Trust Series 38, as

4    Transferee of United Metal Prod Corp EFT, as Objected to on the

5    Reorganized Debtors' Forty-Fourth Omnibus Objection Pursuant to

6    11 U.S.C. § 502(b) and (d) and Fed. R. Bankr. P. 3007 to (I)

7    Modify and Allow (a) Certain Modified and Allowed Claims; (b) a

8    Partially Satisfied Claim; and (c) Certain Partially Satisfied

9    Scheduled Liabilities; (II) Disallow and Expunge (a) Certain

10   Fully Satisfied Scheduled Liabilities; (b) Certain MDL-Related

11   Claims; (c) Certain Union Claims, (d) Certain Personal Injury

12   Claims; and (e) a Duplicate Claim; (III) Object to Certain (a)

13   Preference-Related Claims; and (b) Preference-Related Scheduled

14   Liabilities; and (IV) Modify Certain SERP-Related Scheduled

15   Liabilities

16

17   SIXTY-FIFTH OMNIBUS HEARING AGENDA:

18   HEARING re Motion of the VEBA Committee for the Delphi Salaried

19   Retirees Association Benefit Trust Pursuant to 11 U.S.C. §105

20   and the Salaried OPEB Settlement Order to (I) Compel the

21   Official Committee of Eligible Salaried Retirees to File its

22   Final Report With the Court Pursuant to the Terms of the

23   Salaried OPEB Settlement Order; and, (II) to Direct the Office

24   of the United States Trustee to Disband the Official Committee

25   Of Eligible Salaried Retirees

1

2    HEARING re Motion of Tal-Port Industries, LLC For Allowance Of

3    an Administrative Claim Pursuant to 11 U.S.C. § 503(b)(1)(A)

4    and, in the Alternative, for Leave to File a Late

5    Administrative Expense Claim Pursuant to Bankruptcy Rule

6    9006(b)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Lisa Bar-Leib

**Page 8**

```
 1
 2   A P P E A R A N C E S :
 3   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
 4        Attorneys for the Debtors
 5        155 North Wacker Drive
 6        Chicago, IL 60606
 7
 8   BY:   JOHN K. LYONS, ESQ.
 9        LOUIS S. CHIAPETTA, ESQ. (TELEPHONICALLY)
10        CARL T. TULLSON, ESQ. (TELEPHONICALLY)
11
12   ARONAUER, RE & YUDELL, LLP
13        Attorneys for Park Enterprises of Rochester, Inc.
14        444 Madison Avenue
15        New York, NY 10022
16
17   BY:   KENNETH S. YUDELL, ESQ.
18
19   MCKENZIE HUGHES LLP
20        Attorneys for Tal-Port Industries, LLC
21        101 South Salina Street
22        Syracuse, NY 13221
23
24   BY:   NEIL J. SMITH, ESQ.
25
```

1                    P R O C E E D I N G S

2          THE COURT:  All right.  DPH Holdings.

3          MR. LYONS:  Good morning, Your Honor.  John Lyons on

4    behalf of DPH Holdings Corp. and affiliated reorganized

5    debtors.  We are here today both on the sixty-fifth omnibus

6    hearing and the forty-third claims hearing.  We really have

7    probably two matters where we have counsel here and one is

8    going to be contested.  The other, I think, is --

9          THE COURT:  Okay.

10          MR. LYONS:  -- not going to be contested.

11          THE COURT:  Shall we do the claims hearing first since

12    I think those probably are not contested, right?

13          MR. LYONS:  Sure.  The first one, Your Honor, is the

14    claim -- well, it's just a continued matter.  The workers'

15    compensation claim of the Ohio Bureau of Workers' Comp.

16          THE COURT:  Okay.

17          MR. LYONS:  And that will be continued.  That

18    actually --

19          THE COURT:  That's on appeal, though, isn't it?

20          MR. LYONS:  There are many components.  This is the

21    underlying priority pre-petition claim, not for assessment but

22    for the actual reimbursement claim.

23          THE COURT:  Okay.

24          MR. LYONS:  I suspect we may have a hearing, a real

25    hearing, on that in June but --

Page 10

1            THE COURT:  All right.

2            MR. LYONS:  -- we will -- we will certainly let the

3     Court know.

4            THE COURT:  Okay.

5            MR. LYONS:  The next matter, number 2, is the claim

6     objection hearing regarding the claim of Navistar.  That matter

7     has been resolved.  Similarly, item number 3, Sensata, that

8     matter has been resolved, too, by stipulations that the Court

9     has already entered.

10           The fourth claim is the claim filed by Park

11    Enterprises.  It's claim number 9647.

12           THE COURT:  Right.

13           MR. LYONS:  It's a duplicate claim.  9647 was the

14    first claim.  They filed a second claim later that amended and

15    superseded and that was claim 16395.  Our relief was just to

16    get rid of the original one.  And with respect to claim 16395,

17    we've agreed not to object on grounds of timeliness.

18           THE COURT:  Okay.  And, I guess, Longacre is the S&E

19    of that claim and they, from what I can tell from their

20    response, they acknowledge that the first one was duplicative.

21    So --

22           MR. LYONS:  I think counsel's in the room --

23           THE COURT:  Is that right?

24           MR. LYONS:  -- so --

25           MR. YUDELL:  Good morning, Your Honor.  Kenneth

Page 11

1    Yudell, Aronauer, Re & Yudell, on behalf of Park Enterprises.

2    Actually, Your Honor, the -- as I am -- I'm acting as local

3    counsel so I only learned about this in the last day or two.

4            THE COURT:  Okay.

5            MR. YUDELL:  But as I understand it, the claim has

6    actually been transferred to Park Enterprises.

7            THE COURT:  Oh, all right.  Fine.

8            MR. YUDELL:  And I had not seen and I don't believe

9    primary counsel has seen the supplemental response.  But based

10   on my discussions with counsel and what he said on the record

11   here that they're waiving their objection to timeliness of the

12   amended claim 16395 --

13           THE COURT:  Right.

14           MR. YUDELL:  -- that we have no objection to expunging

15   the 9647.

16           THE COURT:  Okay.  So you can submit an order

17   consistent with both of those points.

18           MR. LYONS:  We will, Your Honor.

19           THE COURT:  Okay.  Thanks.

20           MR. LYONS:  Yes, Your Honor.  Next are items number 6

21   and 7.  And these are claims held by Madison Niche

22   Opportunities LLC and Madison Investment Trust Series 38.  We

23   were informed yesterday that they are not going to oppose our

24   relief.  Basically, Your Honor, it's just to disallow claims

25   that have already been scheduled that we scheduled due to cure

1    payments that were made to the counterparty.  These claims, I

2    understand, may have been subsequently transferred.  But

3    nonetheless, the liability underlying those claims has been

4    extinguished or dramatically reduced.  I think there's about a

5    thousand dollar or so claim left on one of the claims.

6            THE COURT:  Okay.  All right.  So in light of that,

7    including there being no opposition, you can submit an order on

8    those two claims --

9            MR. LYONS:  We'll do, Your Honor.

10           THE COURT:  -- granting the objection in the amount

11   sought.

12           MR. LYONS:  So that's it for the claims hearing

13   agenda.  And now to the sixty-fifth omnibus hearing agenda.

14   The first item number 1, the VEBA motion, that has been

15   continued once again.  And that leaves --

16           THE COURT:  Do you have any insight on that?  I mean,

17   I thought they were facing some sort of deadline and they were

18   prodding me to be ready for a pleading.  And --

19           MR. LYONS:  Your Honor, it's -- I'm not sure exactly

20   what's going on with it, too.

21           THE COURT:  All right.

22           MR. LYONS:  But we --

23           THE COURT:  Okay.

24           MR. LYONS:  -- have been told that they will

25   ultimately --

1          THE COURT:  All right.

2          MR. LYONS:  -- file a motion and seek some sort of

3    relief from Your Honor.

4          THE COURT:  All right.  Okay.  That's fine.

5          MR. LYONS:  Item number 2 is Tal-Port's late claim

6    motion.  I will cede the podium to Tal-Port's counsel.

7          THE COURT:  Okay.

8          MR. SMITH:  Good morning, Your Honor.

9          THE COURT:  Good morning.

10         MR. SMITH:  Neil Smith, McKenzie Hughes LLP, for Tal-

11   Port Industries, LLC.  Essentially, the background is that for

12   making a motion for permission to file the -- or, excuse me --

13   have the late administrative claim allowed --

14         THE COURT:  Right.

15         MR. SMITH:  And, frankly, Your Honor, the parties laid

16   out their positions fairly thoroughly in their papers.  I don't

17   want to necessarily use up the Court's time rehashing all of

18   that all over again.  The only point I would to really kind of

19   emphasize is the fact that Tal-Port's main issue was that they

20   had these difficulties in determining the true amount of their

21   claim because of the fact that the computers that were storing

22   the information were actually on the debtors' -- under the

23   debtors' control, effectively.  And this kind of contributed to

24   the delay in the filing.

25         THE COURT:  All right.  But they -- I mean, they did

1    file a claim.

2            MR. SMITH:  Ultimately, yes, they did.

3            THE COURT:  And it wasn't because they got any

4    additional information, right?  They eventually just filed

5    what -- based on what they had.

6            MR. SMITH:  They filed what they had based on their

7    best information available.  But I was even informed fairly --

8    last night that they still had some questions about what the

9    actual number might be.

10           THE COURT:  Okay.  But -- I mean, there's no -- is

11   there any question that they could have filed a claim in that

12   amount and said and such other additional amounts as may be

13   subsequently liquidated?  I mean, the definition of claim is

14   very broad.  It doesn't include just liquidated amounts.

15           MR. SMITH:  Excuse me, Your Honor.  It's true that the

16   definition of claim is quite broad.  And perhaps the debtor

17   was -- excuse me -- the creditor was subject to an

18   overabundance of caution and hesitation relating to the fact

19   that they had this genuine information probably.  The debtor

20   was in control of the information.  They were communicating --

21   my understanding is that counsel -- the Mississippi counsel for

22   Tal-Port was in communication with representatives of the

23   debtors throughout this time.  So I don't believe that this was

24   a humungous shock to the debtors that it was filed albeit it

25   was after the deadline.

Page 15

1          THE COURT:  Now Tal-Port was in its own Chapter 11

2     case starting in November of 2008, right?

3          MR. SMITH:  That is correct, Your Honor.

4          THE COURT:  And it didn't -- it really wasn't in

5     business then?  It had shut down?

6          MR. SMITH:  That is my understanding, Your Honor.  I

7     was -- I'm not a hundred percent sure on the exact status of

8     their Chapter 11 but I don't believe they're -- I don't know --

9     I'm not a hundred percent sure if they're operating right now,

10    Your Honor.

11         THE COURT:  Okay.  Well, I think the -- well, it just

12    ceased operations in the Mission, Texas facility, right?  So it

13    may have had other operations.  But I'm assuming because it was

14    in bankruptcy that they were -- I mean, should I infer that the

15    person that -- the lawyer that you referred to was cognizant of

16    bankruptcy law and knew what he was doing?  Or she?

17         MR. SMITH:  I believe we can probably infer that, Your

18    Honor, yes.

19         THE COURT:  Okay.  All right.  Okay.  Anything else?

20         MR. SMITH:  I think for the most part, I'll just rest

21    on my papers, Your Honor.

22         THE COURT:  Okay.  All right.  Okay.  Very well.

23    Thank you.

24         MR. SMITH:  Thank you very much, Your Honor.

25         THE COURT:  Okay.

05-44481-rdd   Doc 21236   Filed 04/26/11   Entered 04/26/11 13:59:43   Main Document
DPH HOLDINGS CORP., et al.
Pg 16 of 28

Page 16

1          MR. LYONS:  Just very briefly, Your Honor, I mean,

2     they did attach their proof of claim, forty invoices.

3          THE COURT:  Well, it's down to the last two cents,

4     $89,459.02.  So --

5          MR. LYONS:  Right.  So they obviously had possession

6     and control of the invoices.  And the communications, the only

7     thing they attached to their papers, were actually three e-

8     mails in 2011.  So you couldn't infer any type of estoppel

9     argument, for example, that somehow would convince them not to

10    file a proof of claim.  So other than that, we'll rely on our

11    papers as well.

12         THE COURT:  Okay.  All right.  I have before me a

13    motion by Tal-Port Industries, LLC under Bankruptcy Rule

14    9006(b) to have an administrative claim that it filed in this

15    case on October 27, 2009, claim number 19804, deemed timely

16    filed notwithstanding that the Court, in an order entered June

17    16th, 2009, had established a bar date for administrative

18    claims covered by the period of this proof of claim of July

19    15th, 2009.  That is, the proof of claim here is approximately

20    three and a half months late.  And consistent with the

21    procedures that I adopted earlier in this case to deal with

22    late claims, Tal-Port is seeking an order deeming it timely

23    filed notwithstanding that lateness.

24         The motion states that on November 3, 2008, Tal-Port

25    filed its own Chapter 11 case and slightly before that date had

Page 17

1    ceased doing business out of the warehouse that it did out of a

2    facility in Mission, Texas that it operated along with Delphi,

3    the debtor in this case.

4         The motion states that Tal-Port requested Delphi for

5    records that might support a claim in response to the bar date

6    order but that it was unable to obtain such records and

7    therefore filed the claim late in October of 2009 when it

8    determined that it was not going to get any more records at

9    least in the near term future from Delphi.  It therefore filed

10   a claim based on invoices in its own possession covering the

11   period from September 20, 2007 through May 8, 2008 in the

12   amount of $89,459.02.

13        The record is clear, I believe, that Tal-Port had due

14   and sufficient notice of the bar date and was able to file the

15   claim albeit late based on records it had in its possession

16   well before the bar date that would have enabled it to file the

17   claim in a timely fashion.  It's also clear under the law that

18   it could have filed its claim in a liquidated amount and added

19   in addition on the proof of claim form something to the effect

20   as follows:  and such other amounts for the applicable period

21   which is for administrative claims arising prior to June 1,

22   2009 as may be subsequently liquidated.  That would have

23   sufficiently identified the nature of Tal-Port's claims given

24   that it was in one relationship with the debtor arising from

25   the same business that gave rise to the invoices that were

1   attached to the proof of claim.  Given that Tal-Port was in its

2   own bankruptcy case, I believe it's fair to infer that it had

3   sufficient knowledge of bankruptcy law to have filed a proof of

4   claim that would have done that.  But even a nondebtor, based

5   on the definition of claim and the Code and the bar date order,

6   should have known that it did not need to delay the filing of a

7   proof of claim based on its concern that the claim was not

8   entirely liquidated.  But that to the contrary, the bar date

9   order and the Code itself permits the filing of claims that are

10  described sufficiently to identify the claim without

11  liquidating it down to the last penny.

12         The motion does not allege more than discussions about

13  trying to fix the amount of the claim between Tal-Port and

14  Delphi.  It does so only in the motion not in any affidavit by

15  somebody engaged in such discussions.  But more importantly, it

16  does not suggest any tolling of the bar date by Delphi or even

17  any statements by Delphi that could have misled Tal-Port into

18  thinking that it did not need to file its proof of claim by the

19  bar date but rather could wait until the numbers were

20  liquidated by the parties.

21         Lastly, as I have repeatedly ruled in this case, I

22  should note that the setting of an administrative claims bar

23  date in this case was a very significant step in the case.  The

24  record of this case is clear, as summarized in the hearing

25  transcript of August 20th, 2009 appended as an exhibit to

Page 19

1    Delphi's objection to Tal-Port's motion, that the amount of

2    asserted administrative claims was of critical importance to

3    the parties negotiating Delphi's modified Chapter 11 plan and

4    to the Court's confirmation of that plan in July of 2009.  That

5    is because there was a very serious issue as to whether the

6    plan would be feasible given Delphi's cash position and the

7    willingness of the plan funders to contribute cash to enable a

8    plan to be confirmed.  Under the Bankruptcy Code, unless

9    waived, administrative expense claims must be paid in full for

10   a plan to be feasible and confirmable.  And therefore, the

11   debtors sought entry of an order establishing an administrative

12   claims bar date so that they and the parties with whom they

13   were negotiating could determine the amount of at least

14   asserted administrative expense claims to see whether, in fact,

15   the plan would be confirmed or confirmable.  And then the Court

16   took testimony based in part upon the debtors' analysis of

17   those filed claims in determining if the plan should be

18   confirmed and would be feasible.

19        That is consistent with the repeated theme set forth

20   in the case law that a bar date serves the important purpose of

21   enabling the parties in interest in a bankruptcy case to

22   ascertain with reasonable promptness the identity of those

23   making claims against the estate and the general amount of the

24   claims, a necessary step at achieving the goal of successful

25   reorganization.  In re Calpine Corp., 2007 U.S. Dist. LEXIS

Page 20

1    86514, pp. 14-15 (S.D.N.Y., Nov. 21, 2007).  See also, First

2    Fidelity Bank, N.A. v. Hooker Investments, Inc., In re Hooker

3    Investments, Inc., 937 F.2d. 833, 840 (2d. Cir. 1991) and In re

4    Asia Global Crossing Ltd., 324 B.R. 503, 508 (Bankr. S.D.N.Y.,

5    2005) and In re Drexel Burnham Lambert Group, Inc., 148 B.R.

6    1002, 1008-10 (Bankr. S.D.N.Y., 1993) each of which note that

7    strict enforcement of a bar date allows the trustee in

8    bankruptcy or debtor-in-possession and the other parties in the

9    case to evaluate the claims against the estate and negotiate a

10   plan and that, therefore, the fixing of a bar date is not

11   merely a simple procedural gaunt letter trap but performs a

12   critical function in a bankruptcy case.  That function was

13   especially important, as I noted here earlier, in fixing the

14   amount of the administrative claims in the case.  The claim was

15   filed after the confirmation hearing, as I noted, and therefore

16   was not part of the analysis in connection with the hearing.

17           Bankruptcy Rule 9006(b)(1) permits a claimant to file

18   a late proof of claim if the failure to submit a timely proof

19   of claim was due to "excusable neglect".  The burden of proving

20   an excusable neglect is on the claimant seeking to extend the

21   bar date.  In re R.H. Macy & Company, 161 B.R. 355, 360 (Bankr.

22   S.D.N.Y. 1993).  The Supreme Court has developed a two-step

23   test for determining whether a late filed claim was due to

24   excusable neglect as set forth in Pioneer Investment Services

25   Company v. Brunswick Associates Ltd. Partnership, 507 U.S. 380,

Page 21

1   388 and 395 (1993).  See also In re DPH Holdings Corp., 434

2   B.R. 72 at 82 (S.D.N.Y. 2010).

3          Under that test, a movant must first show that its

4   failure to file a timely claim constituted neglect as opposed

5   to willfulness or knowing omission.  Neglect usually or

6   generally being attributed to a movant's inadvertent mistake or

7   carelessness.  Pioneer at 387, 388.

8          After establishing neglect, as opposed to willfulness

9   or a knowledge of the bar date and the failure to show an

10  unknowing basis for neglecting it, the movant must show by a

11  preponderance of the evidence that the neglect was excusable.

12  That analysis is to be undertaken on a case by case basis based

13  on the particular facts although the Court is guided by and

14  makes the determination balancing the following four factors:

15  (1)whether the -- I'm sorry -- (1)the danger of prejudice to

16  the debtor; (2)the length of the delay and whether or not it

17  would impact the case; (3)the reason for the delay and, in

18  particular, whether the delay was within the control of the

19  movant; and (4)whether the movant acted in good faith.  Id. at

20  395.

21         The rule in the following analysis is equally

22  applicable to administrative claims filed after a bar date as

23  it is to general unsecured claims filed after a bar date.  See

24  In re Dana Corp., 2007 WL 157763 at page 3 (Bankr. S.D.N.Y.,

25  Aug. 20, 2009) as well as In re P.T. Communications, Inc., 386

Page 22

1    B.R. 402 (Bankr. E.D.N.Y. 2007).  In this circuit, as set forth

2    in Midland Cogeneration Venture L.P. v. Enron Corporation, In

3    re Enron Corporation, 419 F.3d 115 at 126 (2d Cir. 2005), the

4    Courts take a hard line in applying the Pioneer test and,

5    further, that the first and primary focus should be on the

6    third factor set forth in Pioneer; that is, the reason for the

7    delay, including whether it was within the reasonable control

8    of the movant.  As the Second Circuit noted in the Midland

9    Cogeneration case, in a typical case, three of the Pioneer

10   factors, the length of the delay, the danger of prejudice and

11   the movant's good faith, usually weigh in favor of the party

12   seeking the extension.  However, the Circuit went on to caution

13   that the equities will rarely, if ever, favor a party who fails

14   to follow the clear dictates of a Court rule or, in this case,

15   a Court order and that where the rule is entirely clear, we

16   continue to expect that a party claiming excusable neglect

17   will, in the ordinary course, lose under the Pioneer test where

18   the failure to comply was within the control of the movant.

19   Id. at 122-123.  See also In re Musicland Holding Corporation,

20   2003 Bankr. LEXIS 3315 at pp. 10-11 (Bankr. S.D.N.Y. 2006) in

21   which then Chief Judge Bernstein citing Midland stated that the

22   Second Circuit focuses on the reason for the delay in

23   determining excusable neglect under Pioneer and that the other

24   factors are relevant only in closed cases.

25          As noted in Midland Cogeneration, inadvertence,

1    ignorance of the rules or mistakes construing the rules do not

2    usually constitute excusable neglect.  Here, as noted in

3    Delphi's objection, it's not entirely clear that this is a case

4    of neglect as opposed to a case of the claimant making a

5    conscious choice not to file a timely claim.  As set forth in

6    paragraph 14 of Tal-Port's motion, "Tal-Port generally desired

7    to resolve any and all outstanding amounts with representatives

8    of Delphi of which it had a longstanding relationship without

9    having to resort to the course of filing an administrative

10   claim."  One can certainly infer from that sentence and from

11   the facts generally that while Tal-Port was proceeding in good

12   faith, it chose not to file a claim and perhaps also chose not

13   to hire a lawyer to file a proof of claim because it determined

14   that it would rather try to resolve amounts outstanding without

15   the need to do so.  This is particularly the case as it was not

16   on the record in any way misled by Delphi into believing that

17   it did not have to file a claim by the bar date.

18           However, I will go to the next step of the Pioneer

19   analysis and consider whether the failure to file the claim was

20   excusable.  And having considered the facts and circumstances

21   here, I conclude that the late filing of the claim was not, in

22   fact, excusable under the Pioneer test in Midland Cogeneration.

23   The filing of the claim on a timely basis was here wholly

24   within the control of Tal-Port.  The claim that it actually did

25   file, which, as I noted, was liquidated down to the last penny,

Page 24

1    was based on the information that the motion acknowledges it

2    always had within its own possession.

3              Secondly, the Code and bar date order clearly

4    contemplate and permit a claimant such as Tal-Port to file a

5    claim in a liquidated amount and an amount to be liquidated

6    based upon the same set of facts or business relationship

7    supporting the liquidated claim.  Yet, Tal-Port did not do

8    that.  Therefore, the most important Pioneer factor is not

9    satisfied here.

10             In addition, the delay of three and a half months was

11   material.  The claim was filed after the confirmation hearing

12   as well as, again, three and a half months late as opposed to,

13   for example, a day or so late, although I'll note that there

14   are cases that find that even that short of a delay of a day or

15   so does not ultimately mitigate against denying the Pioneer

16   motion where the delay was within the movant's control.

17             The factor of the movant's good faith is established

18   but as noted in a number of cases, including the Midland

19   Cogeneration case, it is usually established in these types of

20   motions.

21             Finally, the issue of prejudice is, at best, evenly

22   balanced here.  As I noted, the administrative claims bar date

23   in this case was especially significant.  On the other hand,

24   the amount of the claim, $89,459.02, is not huge in the context

25   of this entire case and probably would not have caused me to

Page 25

1    deny confirmation of the plan if it had been timely filed.

2         On the other hand, given the other factors here, I

3    believe that if I were to grant this motion, it would open the

4    door to numerous other motions for leave to file or to be

5    deemed timely filed a tardy proof of claim in this case that,

6    on similar facts, I have denied.  That is, although this may

7    well be the last one of these motions in the case, I believe

8    that it would, in effect invite the reopening of those matters

9    and perhaps also inspire other parties who did not file timely

10   claims to file motions since it would go against the logic and

11   analysis of several rulings in the case which I have to assume

12   anyone who had a late claim would have reviewed.

13        That consideration, i.e., the effect of allowing a

14   late filed claim on whether there would be numerous other

15   claims also filed in the case on a tardy basis has been

16   recognized in a number of the cases as an extra element, or an

17   appropriate element to consider when considering Pioneer's

18   prejudice factor.  See In re Dana Corp., 2007 WL 157763 at page

19   6.  And see also Midland Cogeneration, 419 F.3d at 132 *2 and

20   In re Enron Creditors Recovery Corporation, 370 B.R. 90, 103

21   (Bankr. S.D.N.Y. 2007).

22        Therefore, in weighing all of the factors and assuming

23   for the purpose of that analysis that the claim was filed late

24   based on neglect as opposed to a conscious decision, I conclude

25   that the late filing here was not excusable and therefore I'll

Page 26

1    deny the motion.

2         So DPH should submit an order consistent with that

3    ruling.

4         MR. LYONS:  Thank you, Your Honor.  We will do so.

5    And that's all I have on the omnibus agenda.

6         THE COURT:  Okay.  Thank you.

7         MR. SMITH:  Thank you, Your Honor.

8         THE COURT:  Thank you.

9         (Whereupon these proceedings were concluded at 10:48 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 27

1

2                              **I N D E X**

3

4                          **R U L I N G S**

5    DESCRIPTION                                PAGE      LINE

6    Debtors' 43rd omnibus claim objection      11        17

7    regarding claim of Park Enterprises of

8    Rochester, Inc. sustained

9    Debtors' 43rd omnibus objection to claims  12        11

10   held by Madison Niche Opportunities LLC and

11   Madison Investment Trust Series 38 sustained

12   Tal-Port Industries, LLC's motion to have its   26      1

13   late administrative claim allowed denied

14

15

16

17

18

19

20

21

22

23

24

25

1

2                          C E R T I F I C A T I O N

3

4     I, Lisa Bar-Leib, certify that the foregoing transcript is a

5     true and accurate record of the proceedings.

6

7

8     _____

9     LISA BAR-LEIB

10    AAERT Certified Electronic Transcriber (CET**D-486)

11

12    Veritext

13    200 Old Country Road

14    Suite 580

15    Mineola, NY 11501

16

17    Date:  April 25, 2011

18

19

20

21

22

23

24

25