TOGUT, SEGAL & SEGAL LLP  
Bankruptcy Conflicts Counsel for DPH Holdings Corp, *et al.*,  
Reorganized Debtors  
One Penn Plaza, Suite 3335  
New York, New York 10119  
(212) 594-5000  
Neil Berger  
Lara Sheikh

HEARING DATE: 5/26/11  
AT: 10:00 A.M.

DPH Holdings Corp. Legal Information Hotline:  
Toll Free: (800) 718-5305  
International: (248) 813-2698

DPH Holdings Corp. Legal Information Website:  
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
------------------------------------------------------------x  
: :  
In re: :  
: Chapter 11  
DPH HOLDINGS CORP., *et al.*, : Case No. 05-44481 [RDD]  
: :  
Reorganized Debtors. : Jointly Administered  
: :  
------------------------------------------------------------x

### REORGANIZED DEBTORS' SUPPLEMENTAL REPLY WITH RESPECT TO PROOF OF ADMINISTRATIVE EXPENSE CLAIM NOS. 19069, 19087, 19088, 19123, 19124, 19125, 19602, 19603, 19604, 19815, 19816, AND 19817 (BANK OF AMERICA, N.A.)

### ("SUPPLEMENTAL REPLY REGARDING BANK OF AMERICA, N.A. ADMINISTRATIVE EXPENSE CLAIMS")

DPH Holdings Corp. and its affiliated reorganized debtors in the above-captioned cases (collectively, the "Reorganized Debtors") hereby submit this Supplemental Reply (the "Supplemental Reply") to Bank of America, N.A.'s (the "Claimant") Supplemental Response to the Reorganized Debtors' Claims Objection With Respect to Proof of Administrative Claim Numbers 19069, 19087, 19088, 19123, 19124, 19125, 19602, 19603, 19604, 19815, 19816, and 19817 (the "Supplemental Response"), and respectfully represent as follows:

**PRELIMINARY STATEMENT**

1.     Claimant asserts administrative expense claims of $6,616,450.17 against Delphi Corporation, Delphi Administrative Systems LLC and Delphi Automotive Systems Human Resources, LLC.  The amounts asserted by Claimant are comprised entirely of amounts that came due only upon the return of Aircraft[1] as a result of the Debtors' rejection of the Leases for such Aircraft.  Consequently, the Claims are not entitled to administrative priority; they are general unsecured rejection damages.[2]

2.     Claimant, who has the burden of proof on the Claims' administrative priority status, has not submitted any facts to support a finding that the Debtors failed to fulfill any obligations under the Leases prior to rejection or that the estate received any benefit for which Claimant was not adequately compensated.  To the contrary, Claimant admits that the Debtors were current on all rent payments under the Leases through the Rejection Date and the only evidence in the record relating to maintenance of the Aircraft, which was provided by Claimant, confirms that all scheduled maintenance of the Aircraft was up to date and exemplary.  Perhaps in concession to the lack of a basis under Bankruptcy Code sections 365(d)(5) or 503(b)(1)(A) for its Claims, Claimant has asserted general unsecured claims that duplicate the asserted "administrative expense" amounts sought by the Claims.  The facts and law are fatal to Claimant's assertion of administrative priority.

---

[1]  Terms used but not defined in this Preliminary Statement shall have the meanings ascribed in this Supplemental Reply.

[2]  As noted below, Claimant has filed separate rejection damage claims that incorporate, among other amounts, the amounts sought by the Claims.  As further noted below, the Reorganized Debtors reserve the right to contest the amount of Claimant's asserted rejection damage claims.

2

3. The Bankruptcy Code and relevant case law, including the case law relied upon by Claimant in its Supplemental Response, provide that claims which are triggered by rejection of a lease, such as the Claims, are general unsecured rejection damages which are not entitled to administrative priority treatment.

4. Moreover, diminution in the value of leased property based upon a debtor's delay in rejecting a lease is not compensable as an administrative expense. Claimant's misconstruction of the law extends to its assertion of super-priority administrative expense status under Bankruptcy Code section 507(b) for diminution in value of the Aircraft during the Chapter 11 Cases. First, the Administrative Diminution Claims are not entitled to administrative expense priority under section 503(b)(1)(A), which is a pre-requisite to allowance of a section 507(b) super-priority administrative expense. Any diminution in value argument concerning the Aircraft is irrelevant to a section 507(b) analysis in this instance. As the owner of the Aircraft under a "true lease" transaction, Claimant was not entitled to, and did not receive, adequate protection against diminution in the value of its ownership interest in the Aircraft. Adequate protection is a remedy for secured creditors – not equipment owner/lessors such as Claimant.

5. Further, there was no diminution in value of Claimant's collateral – the revenue that the Debtors received by sub-leasing the Aircraft (the "Aircraft Cash Collateral") - because all of the Aircraft Cash Collateral was deposited in a collateral account (the "Account") pursuant to that certain Consent Order Resolving Motion by Bank of America, N.A. for Adequate Protection Replacement Liens, dated January 12, 2006 (the "Consent Order") during the pendency of the Chapter 11 Cases. The funds in the Account will act as security for Claimant's rejection damages claim, if and when allowed.

6.  Finally, the Schwartz Affidavit should not be considered because it contains unsupported, unsubstantiated hearsay statements that refer to an unnamed maintenance consultant and its alleged report and findings regarding the maintenance and condition of the Aircraft. In fact, all of the Affidavits submitted in support of the Supplemental Response are undated and, therefore, the personal opinions and allegations contained therein should not be considered, unless resubmitted in proper form.

7.  Based on the foregoing and for the reasons set forth below, the Claims should be disallowed and expunged in their entirety.

## BACKGROUND

8.  On October 8 and 14, 2005 (the "Petition Date"), Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, including Delphi Automotive Systems Human Resources LLC ("DAS HR") and Delphi Automotive Systems LLC ("DAS") (collectively, the "Debtors"), predecessors to the Reorganized Debtors, filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Chapter 11 Cases").

9.  On October 6, 2009, the Debtors substantially consummated the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified, (the "Modified Plan"), which had been approved by this Court pursuant to an order entered July 30, 2009 (Docket No. 18707), and emerged from chapter 11 as the Reorganized Debtors. Article 9.6(a) of the Modified Plan provides that "[t]he Reorganized Debtors shall retain responsibility for administering, disputing, objecting to, compromising, or otherwise

4

resolving all Claims against, and Interests in, the Debtors and making distributions (if any) with respect to all Claims and Interests."

**A.    The Claims**

10.    Prior to the Petition Date, DAS HR and Claimant entered into a certain Learjet aircraft (the "Learjet Aircraft") lease dated March 30, 2001 (the "Learjet Lease") and a certain Challenger aircraft (the "Challenger Aircraft," together with the Learjet Aircraft, the "Aircraft") lease, dated March 30, 2001 (the "Challenger Lease," together with the Learjet Lease, the "Rejected Leases" or the "Leases").  The Debtors utilized the Aircraft, primarily, to transport personnel to its manufacturing and business facilities throughout North America until the Leases were rejected, effective October 6, 2009 (the "Rejection Date") pursuant to the Modified Plan.

11.    On or about July 15, 2009, Claimant filed Proofs of Administrative Claim 19087 and 19124 ("Claims 19087 and 19124") against DAS HR.  Claims 19087 and 19124 are exact duplicates and assert administrative priority claims in unliquidated amounts in excess of $8,691,000, triggered by DAS HR's rejection of the Leases.  Claims 19087 and 19124 were amended on September 15, 2009 by Proof of Administrative Claim 19602 ("Claim 19602") in an unliquidated amount in excess of $10,352,500 and again on November 2, 2009 by Proof of Administrative Claim 19815 ("Claim 19815") in an unliquidated amount in excess of $10,633,035.

12.    On or about July 15, 2009, Claimant filed Proofs of Administrative Claim 19069 and 19125 ("Claims 19069 and 19125") against DAS and 19088 and 19123 ("Claims 19088 and 19123") against Delphi, arising from DAS and Delphi's guaranty of DAS HR's obligations under the Leases.  Claims 19069 and 19125 and Claims 19088 and 19123, respectively, are exact duplicates and assert administrative priority claims in unliquidated amounts in excess of $8,691,000.  Claims 19069 and 19125 and Claims

5

19088 and 19123 were amended on September 15, 2009 by Proofs of Administrative Claim 19603 ("Claim 19603") and 19604 ("Claim 19604"), each in an unliquidated amount in excess of $10,352,500 and again on November 2, 2009 by Proof of Administrative Claim 19817 ("Claim 19817") and 19816 ("Claim 19816), each in an unliquidated amount in excess of $10,633,035.

B.     **The Omnibus Objections and Responses Thereto**

13.     On October 15, 2009, the Debtors objected to Claim 19088 pursuant to The Debtors' Thirty-Seventh Omnibus Objection Pursuant to 11 U.S.C. § 503(b) and Fed. R. Bankr. P. 3007 to Expunge Certain (I) Prepetition Claims, (II) Equity Interest, (III) Books and Records Claims, (IV) Untimely Claims, (V) Paid Severance Claims (VI) Pension, Benefit and OPEB Claims and (VII) Duplicate Claims (the "Thirty-Seventh Omnibus Objection") (Docket No. 18984) on the ground that Claim 19088 is duplicative of Claim 19123.

14.     On October 27, 2009, Claimant filed its Response to the Thirty-Seventh Omnibus Objection (Docket No. 19018).

15.     On November 2, 2009, Claimant filed its Amended Response to the Thirty-Seventh Omnibus Objection (Docket No. 10922), in which Claimant requested that one set of its claims filed on or about July 15, 2009 be deemed allowed and the other duplicative set of claims be conditionally disallowed. Claimant asserted that in the event that the Reorganized Debtors object to one or more of the remaining allowed claims, then the conditionally disallowed claims should be deemed automatically reinstated and allowed. The Thirty-Seventh Omnibus Objection was adjourned as to Claim 19088.

16.     On April 16, 2010, the Debtors objected to Claim 19069, Claim 19087, Claim 19123, Claim 19124, Claim 19125, Claim 19602, Claim 19603, Claim 19604, Claim

6

19815, Claim 19816, and Claim 19817 (together with Claim 19088, the "Claims"), pursuant to The Debtors' Forty-Seventh Omnibus Objection Pursuant to 11 U.S.C. § 503(b) and Fed. R. Bankr. P. 3007 to (I) Disallow And Expunge (A) Certain Administrative Expense Books and Records Claims, (B) A Certain Administrative Expense Duplicate Claim, and (C) Certain Administrative Expense Duplicate Substantial Contribution Claims, and (II) Modify Certain Administrative Expense Claims (the "Forty-Seventh Omnibus Objection") (Docket No. 19873) on the ground that the Claims are not reflected on the Debtors' books and records.

17. On May 11, 2010, Claimant filed responses (each, a "Response," and, collectively, the "Responses") (Docket Nos. 20018, 20019, 20020, 20022, 20023, 20024, 20025, 20026, 20027 and 20028) to the Forty-Seventh Omnibus Objection, and asserted that the Claims are valid administrative priority expenses that were incurred by Claimant upon return of the Aircraft, relating to maintenance, remarketing, and diminution in value of the Aircraft in an aggregate amount of not less than $8,902,276.77.

18. On March 22, 2011, the Reorganized Debtors filed a Notice of Claims Objection Hearing with Respect to their Objection to the Claims (Docket No. 21171).

19. On March 29, 2011, the Reorganized Debtors filed a Statement of Disputed Issues with Respect to their Objection to the Claims (Docket No. 21187).

20. On April 14, 2011, Claimant filed its Supplemental Response (Docket No. 21209) in which it (a) reduced the Claims by the asserted amount of remarketing fees and (b) increased the amounts sought on account of maintenance, resulting in an aggregate reduction in the Claims to $6,616,450.17.

**C.     The Remaining Asserted Claims**

21.    The remaining Claims are comprised of "Administrative Maintenance Claims" in an aggregate amount of $588,842.17[3] and "Administrative Diminution Claims" in an aggregate amount of $6,027,608.

22.    The Administrative Maintenance Claims arise under Sections II(b) and II(e) of the Maintenance and Return Addendum to the Leases (the "Return Addendum"). *See* Affidavit of Stuart R. Schwartz in support of Claimant's Supplemental Response (the "Schwartz Affidavit"). A true and correct copy of the Return Addendum is annexed to this Supplemental Reply as Exhibit "1."

23.    Section II(b) of the Return Addendum requires that upon return of the Aircraft resulting from the "expiration, cancellation or other termination of the Lease", all inspections, life limited components and other applicable parts are to have remaining not less than fifty percent of their available hours, cycles and/or months, as the case may be, until the next scheduled replacement (the "Mid-Life Condition"). Schwartz Affidavit ¶ 5. Under section II(e) of the Return Addendum, if the Mid-Life Condition exceeds the Mid-Life Condition targets upon return of the Aircraft, the lessee is obligated to pay the difference in the value between the target and the actual useful life remaining for such inspection or component. Schwartz Affidavit ¶ 7. Claimant seeks $57,703.07 based on the Mid-Life Condition of the Learjet Aircraft and $131,214.20 based on the Mid-Life Condition of the Challenger Aircraft. Schwartz Affidavit ¶¶ 13, 15.

---

[3] Of note, in its May 11, 2010 Responses, Claimant asserted Administrative Maintenance Claims of $51,703.37 for the Learjet Lease, and $131,214.20 for the Challenger Lease. *See* Response ¶ 20(e), (f). In its Supplemental Response, Claimant increased the amount of its Administrative Maintenance Claims to $66,894.70 under the Learjet Lease and $521,947.47 under the Challenger Lease, resulting in a $405,924.60 aggregate increase in asserted Administrative Maintenance Claims between May 11, 2010 and April 14, 2011. The increase is based on the addition of damages based on an Inspection and Return Requirement (defined and discussed below) to the Administrative Maintenance Claims.

8

24.     The Administrative Maintenance Claims are also comprised of a claim for reimbursement for inspections and scheduled maintenance required to be performed on the Aircraft within one hundred twenty days after the return date and within one hundred hours of operation from the Aircraft's total hours of operation at the time of return (the "Inspection and Maintenance Requirement").  Schwartz Affidavit ¶ 17.  Claimant asserts damages based on the Inspection and Maintenance Requirement of $9,191.63 for the Learjet Aircraft and $390,733.27 for the Challenger Aircraft.  Schwartz Affidavit ¶ 20-23.

25.     In addition to its Administrative Maintenance Claims, Claimant asserts Administrative Diminution Claims for the asserted decrease in value of the Aircraft during the pendency of the Chapter 11 Cases of:  (i) $2,150,816 for the Learjet Aircraft, and (ii) $3,876,792 for the Challenger Aircraft.

26.     The Reorganized Debtors file this Supplemental Reply seeking disallowance of the Claims comprised of Administrative Maintenance Claims and Administrative Diminution Claims on an administrative priority basis.

## DISCUSSION

**A.     Claims Triggered by Lease Rejection Are Not Entitled to Administrative Priority Under Bankruptcy Code § 365(d)(5)**

27.     Bankruptcy Code sections 365(g)(1) and 365(d)(5) differentiate the priorities of claims which arise out of and prior to the rejection of personal property leases, such as the Leases.

28.     Under section 365(g)(1), the rejection of an unexpired lease constitutes a breach of the lease immediately before the petition date and any damage claim for breach of the rejected lease is a general unsecured claim.  *In re BH S&B*

9

*Holdings, LLC*, 426 B.R. 478, 483 (Bankr. S.D.N.Y. 2010) (*citing In re Nat'l Refractories & Minerals Corp.*, 297 B.R. 614, 617 (Bankr. N.D. Cal. 2003).

29.   In contrast, under section 365(d)(5), the debtor is required to timely perform obligations under an unexpired lease of personal property, first arising from or after 60 days after the petition date, until such lease is assumed or rejected, unless the court orders otherwise.  11 U.S.C. § 365(d)(5).[4]  "Expenses arising out of this performance are entitled to automatic administrative expense status."  *See In re BH S & B Holdings LLC*, 401 B.R. at 100, 103-04 (addressing the analogous context of section 365(d)(3) unexpired non-residential real property lease obligations).

30.   Courts have consistently and unequivocally held that damages that are triggered by the early termination of a lease upon its rejection do not arise pre-rejection and, therefore, are not entitled to administrative expense status.  Rather, such damages arise upon rejection, and are general unsecured claims under section 365(g)(1).  *In re BH S & B Holdings LLC*, 401 B.R. at 484; *In re Ames Dep't Stores, Inc.*, 306 B.R. 43, 59 (Bankr. S.D.N.Y. 2004) (finding that removal/repair obligations under a lease were general unsecured rejection damages rather than administrative expenses because they arose at termination of the lease and were not obligations, such as the duty to pay monthly rent, that had to be satisfied on an ongoing basis before lease termination).

31.   Here, the Claims were triggered and arose only upon the Debtors' rejection of the Leases and return of the Aircraft; they were not continual obligations that arose during the term of the Leases such as to give rise to an "automatic administrative expense" under section 365(d)(5).  Accordingly, the Claims should be

---

[4] Section 365(d)(10) was renumbered section 365(d)(5) under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, which does not apply to the Chapter 11 Cases because they were commenced prior to October 17, 2005.  For ease of reference, this Supplemental Reply refers to section 365(d)(5).

10

classified as general unsecured claims for rejection damages pursuant to section 365(g)(1).

32.   Tellingly, Claimant does not rely on section 365(d)(5) or address section 365(g)(1) in its Supplemental Response. As set forth below, even under an application of Bankruptcy Code section 503(b)(1)(A), the Claims are not entitled to administrative priority treatment.

**B.   Claimant Has Not Met the Burden of Proof for Awarding Administrative Priority Treatment Under Bankruptcy Code § 503(b)(1)(A)**

33.   Section 503(b)(1)(A) permits "allowed, administrative expenses" that involve the "actual, necessary costs and expenses of preserving the estate . . . ," provided that they satisfy the following two-pronged test: (1) the claim must "arise out of a post-petition transaction between the creditor and the…debtor" and (2) the claim must "be allowable only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor's estate in the operation of business." *In re BH S&B Holdings LLC*, 426 B.R. at 486. *See also*, *In re Chateaugay Corp.*, 10 F.3d 944, 956 (2d Cir. 1993) ("it is well settled…that a claim will be afforded priority 'only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of business.'").

34.   Claimant concedes that it bears the burden of proof on the administrative priority status of its Claims. Supplemental Response at 11 *(citing Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d. Cir. 1986)). *See also, In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 482, 489 (Bankr. S.D.N.Y. 1991); *In re O.P.M. Leasing Serv., Inc.*, 60 B.R. 678, 680 (Bankr. S.D.N.Y. 1986). Yet, as discussed below, the only evidence that Claimant has submitted in support of the Claims supports

11

a finding that the Debtors paid all of the lease payments and performed all of the scheduled maintenance and other ongoing obligations under the Leases through the Rejection Date.

35. Claimant relies on *In re United Trucking Serv., Inc.*, 851 F.2d 159 (6th Cir. 1988) and *Hayes Lemmerz Int'l, Inc.*, 340 B.R. 461 (Bankr. Del. 2006), for the proposition that "where debtors fail to properly store, maintain and repair leased equipment, the lessor is entitled to an administrative expense claim." Supplemental Response at 12. Both decisions are distinguishable and inapposite to the Claims.

36. *First*, both *In re Hayes Lemmerz* and *In re United Trucking* involved leased equipment returned by a debtor upon rejection in "terrible" or "inoperable" condition and stripped of parts. *See In re Hayes Lemmerz*, 340 B.R. at 467 (awarding administrative expense priority to lessor's claim for damages arising from debtor's post-petition breach of equipment leases based on benefit to estate resulting from debtor's failure to properly store, maintain and repair leased equipment and debtor's cannibalization of such equipment); *In re United Trucking Service*, 851 F.2d at 161, 162 (same).

37. Here, Claimant has not submitted any fact to support a finding that the Debtors failed to maintain the Aircraft during the Chapter 11 Cases. To the contrary, the only proof that Claimant has submitted establishes that the Debtors met all maintenance and other obligations under the Leases until the Rejection Date.

38. Specifically, the most recent report on the condition of the Aircraft, which is dated February 10, 2009 and attached to the Affidavit of John Bucher re: Inspection of Aircraft (the "Bucher Affidavit") states:

12

> I am pleased with the overall care, maintenance, control and management of these aircraft. Each aircraft is clean, polished, shows well and is current in its maintenance status. Review of logbooks for each aircraft show continued attention to details and above average record keeping. All 8130 are on file to support maintenance actions. I have no concerns with the aircraft record keeping or management of the aircraft logbooks. Both aircraft continue to be tracked with CAMP maintenance tracking.

Bucher Affidavit, Ex. B.

39. With respect the Challenger Aircraft, the report further states:

> A review of the CAMP Due List shows that there are no open or overdue items. All maintenance, AD's and Mandatory SB are current and up to date. There has been no damage to this aircraft reflected in the logbooks. . . . Both engines inspected were normal with no defects noted. *Id.*

40. With respect to the Learjet Aircraft, the report further states:

> A review of the CAMP Due List shows that there are no open or overdue items. All maintenance, AD's and Mandatory SB are current and up to date. There has been no damage to this aircraft reflected in the logbooks. *Id.*

41. In summary, the report states:

> The Challenger has some large maintenance due at the end of the year [2009] with an expected budget cost of 275k for the aircraft inspections and 125k for aircraft painting, with a total of $400k expected costs. The Lear has normal maintenance events for 2009 scheduled with no major concerns. I continue to be pleased with the care, operation, control, maintenance and management given to these aircraft by Pentastar for Delphi. The logbooks are in very good shape, high attention to detail and represent the aircraft very well. The real question is what Delphi will be doing. With the low utilization of these aircraft[,] the operating costs per flight hour must be very high compared to the industry averages. *Id.*

13

42. One can only surmise that the $521,947.47 in Administrative Maintenance Claims arising from the Mid-Life Condition and Inspection and Maintenance Requirements under the Return Addendum, relates to the "$400k" in expected total costs for "large maintenance due at the end of the year" referred to in the Bucher Affidavit quoted in the preceding paragraph. Considering that the Leases were rejected effective October 6, 2009, such year-end maintenance obligations are clearly not continuing, ongoing pre-rejection obligations entitled to administrative express priority under Bankruptcy Code section 365(d)(5) and provided no benefit to the estate, as required by section 503(b)(1)(A).

43. Allowance of an administrative expense under section 503(b)(1)(A) focuses on the actual benefit to the estate, not the loss sustained by a creditor. *In re CIS Corp.*, 142 B.R. 640,, 642 (S.D.N.Y. 1992) ("the examination of an administrative expense claim focuses on the actual benefit that such transactions confer on the estate, not the loss sustained by such creditors."); *In re BH S&B Holdings, LLC*, 426 B.R. at 487 (holding that deferred payments under leases were triggered by rejection and provided no post-petition benefit to estate). The lease obligations pertaining to the Administrative Maintenance Claims were expressly contemplated by the Return Addendum to be incurred by Claimant upon return of the Aircraft, presumably, to prepare the Aircraft for sale or re-leasing. *See* Return Addendum, Section II at 49-50. Accordingly, the Administrative Maintenance Claims, all of which were incurred after the Rejection Date, are precisely the type of claims that do not satisfy the requirement under section 503(b)(1)(A) of having conferred a benefit on the debtor's estate.

44. Further, a lessor's damages for the diminution in value of leased property are not compensable as an administrative expense because they confer no benefit on the debtor's estate. *See In re P.J. Clarke's Rest. Corp.*, 265 B.R. 392, 400 (Bankr.

14

S.D.N.Y. 2001) (disallowing landlord's administrative expense for losses arising from inability to re-let premises at market rent prior to rejection). Thus, the Administrative Diminution Claims, which seek reimbursement for Claimant's alleged losses based on depreciation of the Aircraft based on the Debtors' delay in rejecting the Leases, also fail to meet the requirements of section 503(b)(1)(A).

45. Because the Bank's claims for diminution in value of the Aircraft are not administrative expense claims under section 503(b)(1)(A), it logically follows they do not qualify for superpriority status pursuant to section 507(b).

C. **Section 507(b) Does Not Apply to Diminution in Value of the Aircraft**

46. Section 507(b) of the Bankruptcy Code provides:

> If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from the stay of action against such property under section 362 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim under such subsection.

47. The allowance of a so-called "super-priority" administrative priority claim under section 507(b) protects a secured creditor from diminution in the value of its collateral and is only available when adequate protection that was granted later proves inadequate. *See In re Blackwood Associates, L.P.*, 153 F.3d 61, 68 (2d Cir. 1998) ("In essence, § 507(b) means that a secured creditor has superpriority for a claim in the amount that the debtor's use of the collateral during the time of the stay diminished the value of the collateral, but only to the extent such diminution is in excess of the adequate protection received."); *LNC Investments, Inc. v. First Fidelity Bank*, 247 B.R. 38, 49 (S.D.N.Y. 2000) (finding the limited benefit of section 507((b) is compensation for

15

diminution in value of court-ordered protection); *In re J.F.K. Acquisitions Group*, 166 B.R. 207, 212 (Bankr. E.D.N.Y. 1994) (a creditor is entitled to a section 507(b) claim for the difference between the amount of secured collateral at the time of the hearing to vacate the automatic stay and the current value of the collateral, less the amount of adequate protection payments it received).

48. To meet the requirements of section 507(b): (1) the claim must be allowable as an administrative claim under section 503(b)(1)(A); (2) the Court must expressly award adequate protection to the creditor; and (3) the adequate protection payments must later prove to be inadequate. *In re J.F.K. Acquisitions Group*, 166 B.R. at 212.

49. Here, Claimant fails to satisfy each of the requirements for a section 507(b) claim. *First*, as discussed above, the Administrative Diminution Claims are not entitled to administrative expense priority under section 503(b)(1)(A). *Second*, Claimant was the owner of the Aircraft, not a "holder of a claim secured by a lien on" the Aircraft, and as the owner/lessor of the Aircraft, Claimant was not entitled to and did not receive adequate protection for any diminution in value of the Aircraft. And, *finally*, there was no diminution in the value of Claimant's collateral – the Aircraft Cash Collateral. The Aircraft Cash Collateral remains in a segregated account pursuant to the Consent Order and remains subject to Claimant's security interest. Accordingly, section 507(b) is inapplicable and does not provide a basis for granting super-priority administrative status to the Administrative Diminution Claims.

D. **Claimant's Affidavits Should Not be Considered**

50. The Schwartz Affidavit should not be considered because it relies on unauthenticated records, constitutes testimony regarding the contents of those records, and is, therefore, inadmissible hearsay. Fed. R. Evid. 802, 803(6), 902(11); *In re*

16

*Lexington Healthcare Group, Inc.*, 335 B.R. 570, 574 (Bankr. D. Del. 2005) (finding that testimony that relied on unauthenticated records was inadmissible hearsay under Fed. R. Evid. 802, 803(6)); *In re New Breed Realty Enterprises, Inc.*, 278 B.R. 314, 323 (Bankr. E.D.N.Y. 2002) (affidavit of president of real estate agency that repeated what unidentified person or persons in his office had been told, was inadmissible hearsay).

          51.     The Schwartz Affidavit refers to an unnamed maintenance consultant that prepared: (a) "a report that detailed that inspections, life limited components and other parts were not in compliance with their Mid-Life Condition requirements pursuant to the Agreement and that DASHR failed to return the Learjet in compliance with its contractual obligation," Schwartz Affidavit ¶ 12, and (b) "a report detailing that the [Learjet and Challenger were] not in compliance with the Inspection and Maintenance Requirement set forth in Section II(e) of the Agreement and that DAS HR failed to perform its contractual obligation." Schwartz Affidavit ¶ 14. These unsupported and conclusory statements referring to an unidentified maintenance consultant's unauthenticated report and its alleged findings are inadmissible hearsay and they should not be considered.

          52.     Moreover, none of the Affidavits submitted in support of the Supplemental Response comply with the requirements for a sworn affidavit or 28 U.S.C. § 1746 because they to not indicate the date on which they were executed. *See* 28 U.S.C. § 1746. Accordingly, the personal opinions and allegations that are contained in the Affidavits should not be considered unless resubmitted in a form that complies with the requirements either of a sworn affidavit or 28 U.S.C. § 1746.

## CONCLUSION AND RESERVATION OF RIGHTS

          53.     Based upon the foregoing, there is no basis whatsoever to award Claimant administrative expense priority treatment for the Claims, and the Reorganized

17

Debtors request that the Claims be disallowed and expunged.  Claimant has adequately preserved its rejection damage claims by separately filing general unsecured claims alleging damages arising from the Rejected Leases, which incorporate, among other amounts, the Administrative Maintenance Claims and Administrative Diminution Claims that comprise the Claims.

54.    The Debtors' objection to the Claims is without prejudice to (a) the Debtors' right to later identify and assert additional legal and factual bases for disallowance, expunction, reduction, or reclassification of the Claimant's remaining claims;  and (b) the Reorganized Debtors' right to later identify additional documentation or testimony supporting the disallowance, expunction, reduction, or reclassification of the Claims based on additional facts submitted or produced by Claimant in support of the Claims.

*[Concluded on Following Page]*

**WHEREFORE**, the Debtors respectfully request that this Court enter an order (a) granting the Forty-Seventh Omnibus Objection by disallowing and expunging the Claims, and (b) granting the Debtors such other and further relief as is just.

DATED:  New York, New York
April 28, 2011

          DPH HOLDINGS CORP., *et al.*
          By their attorneys,
          TOGUT, SEGAL & SEGAL LLP
          By:

          /s/ Neil Berger
          NEIL BERGER
          LARA R. SHEIKH
          One Penn Plaza, Suite 3335
          New York, New York 10119
          (212) 594-5000