Page 1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 05-44481-rdd

5   - - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   DPH HOLDINGS CORP., et al.,

9

10          Reorganized Debtors.

11

12   - - - - - - - - - - - - - - - - - - - - -x

13

14                United States Bankruptcy Court

15                300 Quarropas Street

16                White Plains, New York

17

18                February 18, 2011

19                10:11 AM

20

21   B E F O R E:

22   HON. ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25

Page 2

1

2    Hearing re:   Proposed Forty-First Claims Hearing Agenda

3

4    Hearing re:   Proposed Sixty-Third Omnibus Hearing Agenda

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Transcribed by:   Hana Copperman

25

Page 3

```
 1
 2    A P P E A R A N C E S :
 3    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
 4          Attorneys for the Debtors
 5          155 North Wacker Drive
 6          Chicago, IL 60606
 7
 8    BY:   JOHN K. LYONS, ESQ.
 9          BRANDON DUNCOMB, ESQ.
10          LOUIS S. CHIAPPETTA, ESQ. (TELEPHONICALLY)
11          MICHAEL PERL, ESQ. (TELEPHONICALLY)
12
13
14    BAKER HOSTETLER LLP
15          Attorneys for Ohio Bureau of Workers' Compensation
16          45 Rockefeller Plaza
17          11th Floor
18          New York, NY 10111
19
20    BY:   MARC SKAPOF, ESQ.
21          ELYSSA S. KATES, ESQ.
22
23    ALSO APPEARING:
24          JAMES LUECKE (TELEPHONICALLY)
25          PARTY PRO SE
```

Page 4

1                        P R O C E E D I N G S

2            THE COURT:  Please be seated.  Okay.  DPH Holdings.

3            MR. LYONS:  Good morning, Your Honor.  John Lyons on

4    behalf of DPH Holdings Corp and affiliated reorganized debtors.

5    Your Honor, we have a sixty-third omnibus hearing and forty-

6    first claims hearing.  All the matters in the claims hearing

7    have been either adjourned or resolved, so there need be no

8    time spent on the claims agenda.  And there is only one matter

9    that is currently before Your Honor in the omnibus hearing, and

10   that is the motion filed by the Ohio Bureau of Workers'

11   Compensation for leave to file a late claim, and, Your Honor,

12   I'll turn it over to them unless you have any questions to me.

13           THE COURT:  No, that's fine.

14           MR. SKAPOF:  Good morning, Your Honor.  Marc Skapof

15   from Baker Hostetler for the Ohio Workers' Compensation Bureau.

16           THE COURT:  Right.

17           MR. SKAPOF:  And I also have my colleague here, Elyssa

18   Kates from Baker Hostetler.

19           Your Honor, we're here this morning on the motion of

20   BWC to have its claim for workers' comp assessment, that's

21   claim number 1294, allowed, whether it's deemed allowed or an

22   amended claim or for the Bureau to be permitted to file a late

23   filed claim under Rule 9006, as construed by Pioneer.  I think

24   the legal and factual predicates are set out in our pleadings,

25   and so I'm not going to repeat myself and I'll try to be brief

Page 5

1    here.  I think some areas to focus on are what's not in dispute

2    in this matter before we get on.

3            As a preliminary matter, it was the debtors' argument

4    that the claim that Ohio has, albeit they're arguing that it's

5    time barred, is an admin claim, and by definition an admin

6    claim means that BWC provided valuable post-petition services

7    to the debtor.  So as we sit here today we're in a situation

8    where the debtor concedes that services were provided by BWC

9    but it doesn't want to pay for them.  So, in effect, the estate

10   has been unjustly enriched, because it got services which

11   allowed it to stay in business and consummate a sale, and today

12   we're not getting paid for those.

13           THE COURT:  Well, I guess that's the case for at least

14   as long as they were in business, but they're disputing the

15   amount of it, and they're, basically, saying there's a gate

16   keeping issue, which is whether it's late or not, so we don't

17   really have to get into the merits of the claim.

18           MR. SKAPOF:  Fair enough, Your Honor.  Right.  I mean,

19   that goes to the liquidation of the claim, the amount, if,

20   indeed, there is a claim.

21           THE COURT:  Okay.

22           MR. SKAPOF:  But I think when you look to the facts

23   and how this was teed up, especially the timeline here, it

24   weighs heavily in favor of allowing the claim.

25           As a preliminary matter the debtors, in their paper,

Page 6

1    say that the Bureau was eighteen months late in filing its

2    motion to seek to have its administrative claim recognized,

3    whether under a Pioneer theory or other ones.  The Bureau would

4    take the position that, in fact, the motion was filed six weeks

5    after this Court determined for the very first time, on

6    December 16th, 2010, that the claim was, in fact, one for an

7    administrative claim.  So it's a little specious to argue it's

8    a year and a half late when, in fact, it's only six weeks late.

9          THE COURT:  Well, let me -- I mean, I think -- let me

10   cut to the chase here.  I think that the difference between the

11   parties on the facts is that Ohio states, and, in fact, I'm

12   just, I'm quoting from the motion at paragraph 31, quote

13          "The amended claim stems from the same assessments for

14   the same injuries that form the factual basis for the claim",

15   i.e. the claim that was actually filed on December 27, 2005.

16   And the debtors say that's not true, that, in fact, the 2005

17   proof of claim doesn't refer at all to the assessments that

18   would be coming due thereafter.

19          MR. SKAPOF:  I agree, Your Honor, and I think this

20   goes back to a little bit about the substance of Ohio law and

21   the Bureau's position at the time.  Now, the assessments based

22   on your December 16th determination are the injury that gives

23   rise to the claim, because those assessments come due post-

24   petition, and that was the basis for the Court's determination

25   on the 16th.  It was Ohio's position, and it still is as a

Page 7

1    matter of fact if not a matter of law for purposes of a claim

2    at this point, that those post-petition assessments that are

3    coming due relate back to servicing pre-petition obligations.

4          THE COURT:  But how would you know that when you

5    looked at this claim?  I mean, it's for -- I agree with you,

6    the fact that it says premiums as opposed to assessments isn't,

7    ultimately, I think, a problem for Ohio, but it looks as if,

8    from the claim, it's for assessments that, at the latest, come

9    due, if you look at the attachment to the claim, January 1,

10   2005.

11         MR. SKAPOF:  No.  You know, the claim says what it

12   says, Your Honor.  I wasn't there when it was --

13         THE COURT:  But, I mean, that's the, I mean --

14         MR. SKAPOF:  Yes.

15         THE COURT:  But, I mean, I think that's the --

16         MR. SKAPOF:  The gist of it.

17         THE COURT:  The point is that anyone looking at this

18   claim thinks oh, well, this is for assessments that we owed up

19   through January 1, 2005, and, in fact, I think they objected

20   originally on the basis that they were paid.

21         MR. SKAPOF:  That's correct, Your Honor.  Two points

22   on that.  I mean, one, anybody looking at the claim, I

23   understand the point that you're making, but here you have a

24   business that was doing business in Ohio, that is intimately

25   familiar with the workers' comp regime, so, concededly, if the

Page 8

1    claim was inartfully phrased, the debtor was on notice, or the

2    pre-petition debtor was on notice at the time and, certainly,

3    thereafter of its obligations.  And I think those are implied.

4    They're not expressly stated in the Human Capital order, where

5    the debtor thought authority under the necessity doctrine to

6    basically take care of all its pre-petition obligations, and at

7    the time Ohio would have conceived of the post-petition

8    accruing assessments as, in effect, taking care of those pre-

9    petition obligations.

10          THE COURT:  But once the administrative claims bar

11   date is set isn't it incumbent upon Ohio, then, to file a claim

12   for its accruing post-petition assessments?

13          MR. SKAPOF:  Well, again, Your Honor, Ohio believed

14   its claim was one for pre-petition, and whenever the

15   assessments arose they related back to pre-petition injuries.

16   You know, it sort of said --

17          THE COURT:  But it doesn't say that.  It doesn't say,

18   for example, that this includes any future assessments in an

19   unliquidated amount, you know, to be determined as they arise.

20   I mean, it doesn't put you on notice on that at all.

21          MR. SKAPOF:  I mean, as I said, I mean, the claim says

22   what it says, and I'm not going to dispute people's

23   interpretation over it, but on the debtors' view you're sort of

24   setting a rule here that in order for creditors to be a hundred

25   percent protected they need to file claims or at least reserve

Page 9

1    rights for any conceivable later bar date in the case.  And I

2    don't think that's the rule.

3           THE COURT:  Well, no.  I mean, that's only if they

4    missed the bar date.  I mean, they could have raised the claim

5    before.  Afterwards, too.

6           MR. SKAPOF:  Clearly, but --

7           THE COURT:  And I don't think I'm setting the rule

8    here.  I mean, there are a lot of cases that I think are right

9    on point.  The Alliance Operating Corporation case.

10          MR. SKAPOF:  Right.  But, Your Honor, I mean you're

11   speaking of having the claim amended, correct?

12          THE COURT:  Right.

13          MR. SKAPOF:  Okay.  So, I mean, I think in this

14   instance, and I accept your point and what those cases say, but

15   I think the facts are a little more unique in this one, because

16   the issue of whether it was an administrative claim or not

17   wasn't raised by the debtor until well after the administrative

18   claims bar date had passed.  So, in effect, Ohio was also

19   relying on the debtor, which, when they initially objected said

20   no, it's a general unsecured claim.  They actually initially

21   argued it was a lower priority claim that was filed and only

22   filed their objection as to the classification of the claim

23   that it was for post-petition injuries after the admin bar

24   date, and I don't think it should be the rule, then, that it's

25   incumbent upon the creditor to guess if the debtor is going to

1   object, especially after a bar date, as to the classification

2   of the claim, that it's actually admin, when they took the

3   position before that it was general unsecured.

4          THE COURT:  But I don't see how that deals with the

5   case law, where either insurers or states themselves filed

6   claims that, on their face, covered and asserted pre-petition

7   claims for these types of assessments or the underlying

8   reimbursements, and then they realized that the law was

9   different, and they sought to amend, and the Courts, I think,

10  have uniformly said you can't do that.

11         MR. SKAPOF:  I mean, that may be the case.  Again, we

12  would say that the facts are a little different.  But, in any

13  event, you know, that goes to amending the claim under --

14         THE COURT:  Right.

15         MR. SKAPOF:  -- Rule 3001.  You know, the --

16  alternatively, we had been seeking relief either as a deemed

17  claim -- I think, for what I'm hearing Your Honor say, that

18  you'd apply the same analysis to that.

19         THE COURT:  Well, certainly as a deemed claim, because

20  on its face it just doesn't --

21         MR. SKAPOF:  It doesn't say it.

22         THE COURT: -- doesn't say it.

23         MR. SKAPOF:  Right.  And, so, that leads us into

24  Pioneer.

25         THE COURT:  Right.

05-44481-rdd   Doc 21246   Filed 05/02/11   Entered 05/02/11 09:37:18   Main Document
Pg 11 of 46
DPH HOLDINGS CORP., ET AL.

Page 11

1          MR. SKAPOF:  And here, I think, the equities that I've

2     been mentioning do cut in favor.  As an initial matter, again,

3     the determination that it was, in fact, an admin claim was not

4     made until December 16th.  I think we'll all agree with that.

5     And at the December 16th hearing there was a disagreement of

6     the parties as to what the controlling law was and how that

7     established the basis of the claim, and Your Honor chose not to

8     follow Belden Locker for the reasons stated on the record and,

9     instead, went with a series of Ninth Circuit cases and made

10    that.  And then Your Honor dismissed the claim, but with leave,

11    in fact, to be here again today --

12          THE COURT:  Right.

13          MR. SKAPOF: -- to argue excusable neglect.

14          THE COURT:  But can I go back?  As far as being misled

15    is concerned, I guess the problem I'm having with the Pioneer

16    argument, to the extent it's based on the notion that, quote,

17    "everyone assumed until November or December, 2010 that this

18    was not an admin claim".  I think that just misstates the

19    facts, because this isn't an admin claim.  That's the problem.

20    I mean, no one was assuming it was an admin claim, because it

21    isn't an admin claim.  It's a claim that ends at January 1,

22    2005.  So I don't see how anyone was misled.  I mean, the

23    notion that this claim itself, the proof of claim is an admin

24    claim, I think, is a real stretch.  I think what the debtors

25    were actually saying is that all that they owed as of the date

DPH HOLDINGS CORP., ET AL.

Page 12

1   of the hearing would be administrative expenses, but there was

2   no claim ever filed for those.  It's not that the December 27,

3   2005 claim would have been an admin claim, because it doesn't

4   say anything about it.

5           MR. SKAPOF:  Your Honor --

6           THE COURT:  Or indicating that it would be an admin

7   claim.

8           MR. SKAPOF:  Okay.

9           THE COURT:  I mean, I would under -- let me just go

10  one step further.  I would understand if the box that was

11  checked said it was an unsecured priority claim, which it did,

12  and then it went further, though, and added that, which it

13  doesn't do, that it's liquidated in the amount of 24,732,628

14  dollars, which is what it does say, and then says in addition

15  it's unliquidated for amounts accruing in subsequent years,

16  based on pre-bankruptcy events or pre-bankruptcy calculations.

17          I think, and I think the debtors acknowledge this in

18  their response, if the claim did that it would be a much harder

19  case for them to argue against a) amendment and, also, b)

20  against your Pioneer motion, because then you're just talking

21  about a difference between 507(a)(8) and 507(a)(2).  And, you

22  know, everyone's pretty much on notice that they're hundred

23  cent claims, and it's just the theory, as opposed to the facts,

24  but here the facts just don't assert a post-petition claim.

25          I mean, every -- not just the label, but the facts

1    themselves.  Everything stops on January 1, 2005, and most of

2    the stuff goes back to 2002, and it doesn't say anything about

3    future assessments that might be unpaid.  So I just, I think

4    the notion that no one thought of "this" as an admin, you know,

5    I'm putting quotes around this, I don't think -- I think

6    that's -- the debtor certainly didn't, because it didn't give

7    them any indication that they should.  So it seems to me what

8    Ohio is doing now is trying to say that although it didn't

9    assert a claim in the face of the administrative bar date for

10   those post-petition amounts that it should be allowed to have

11   it even though it is, in fact, twelve months later.

12           MR. SKAPOF:  Right.  I mean, Your Honor, just there's

13   one clarification, at least, or amplification.  There is one

14   line on the attachment to the proof of claim that does have an

15   entry for October, 2005.  I mean, the parties can --

16           THE COURT:  Where?  Which one?  Where?  Is the

17   attachment more than one page?

18           MS. KATES:  No.

19           MR. SKAPOF:  No, Your Honor.

20           THE COURT:  Where is the October?

21           MR. LYONS:  It's the third group, Your Honor, the last

22   entry.  The third group of entries, that very last entry,

23   under, right next to "guarantee fund high", in the amount of

24   253,000 and change.  It's at October 17, 2005.

25           THE COURT:  I don't see it.  Here.  You want to just

Page 14

1    mark it on here for me, or maybe I have a different attachment?

2        (Pause)

3            MR. SKAPOF:  May I approach?

4            THE COURT:  Yes.

5            MR. SKAPOF:  You know --

6            THE COURT:  Okay.  I see it now.  I see it.

7            MR. SKAPOF:  But, again, going to Your Honor, you

8    know, that is in the attachment, albeit it's one line in the

9    attachment, but, again, you know, this is a debtor that's

10   intimately familiar with the workers' comp regime, so they

11   can't necessarily act as if they're surprised.  And, then, I

12   would just, again, according to this timeline the claim was

13   filed in December '05.  The first objection is not raised until

14   December 6, 2010.  Excuse me.  The first one is June 22, 2009,

15   and it's not till --

16           THE COURT:  Right.

17           MR. SKAPOF:  -- 2010, ten days before the hearing, that

18   they even raise this issue as to classification.  So, you know,

19   in terms of a laches type argument, the Bureau is out there,

20   and they're not getting --

21           THE COURT:  But can I --

22           MR. SKAPOF:  -- it objected to.

23           THE COURT:  But, again, I don't -- I think all of that

24   history is explained by the fact that they were actually

25   thinking of this as a pre-petition claim, not as an admin

Page 15

1    claim, for pre-petition assessments, which they paid.  And, I

2    mean, that's what we went through at the start of the hearing.

3    I was confused, too, because I asked your colleague and Mr.

4    Lyons what are you guys fighting about at this point.  What is

5    unpaid?  And, in fact, the answer was assessments for 2009 and

6    going forward, so they certainly wouldn't have objected in

7    2005, 6 or 7 over unpaid assessments from 2009, and I think

8    anyone dealing with this is basically saying did you pay your

9    assessments for the pre-petition three years.  And I think that

10   explains the delay in the debtors objecting to this and

11   bringing it to a head.  It wasn't that pressing an issue for

12   them, because they, you know, it's a pre-petition claims.

13        And I think the argument about it being an admin claim

14   is in response to, I'm assuming, that they asked the same

15   question that I asked at the start of the hearing, which is

16   what is Ohio really claiming for at this point, because we

17   paid.  So I just don't, I mean, I think the burden's really on

18   Ohio to file the admin claim.

19        Now, I know that the argument is that we thought by

20   having filed this claim we did file an admin claim, but it

21   really doesn't seem to indicate that anywhere to me.

22        MR. SKAPOF:  I mean, I guess, just as the -- I mean, I

23   see where Your Honor is going on this.

24        THE COURT:  Well, I mean, I --

25        MR. SKAPOF:  I don't think, I mean, I'd like to argue

1    the equities, because I think if you get past the hurdle of

2    excusable neglect I think a lot of them, or most of them, cut

3    on our side.  I'm seeing Your Honor's very hesitant to go

4    beyond whether there is excusable neglect and you're focused on

5    the substance and the face of the claim.  I can't change --

6             THE COURT:  Well, I'm also focused --

7             MR. SKAPOF: -- what the claim says or doesn't say.

8             THE COURT:  I mean, I'm focused on the equity.

9             MR. SKAPOF:  Yes.

10            THE COURT:  Am I?

11            MR. SKAPOF:  Yes.

12            THE COURT:  I am focused also on the equities, because

13   if, you know, again, if people were, essentially, on notice of

14   this, and that's to your argument, that the debtor really was,

15   sort of, laying in the weeds until the administrative claims

16   bar date passed, and, I guess, I mean, that is, I think that's

17   relevant to the Pioneer analysis if that's what they were

18   doing, but it just seems to me they were just in a totally

19   different field or forest or wherever.  They weren't in the

20   same weeds, because they were looking at this as a, you know,

21   as what it, I think, purports to be.

22            MR. SKAPOF:  I mean, I, again, I don't --

23            THE COURT:  No, I understand that --

24            MR. SKAPOF:  I don't want to waste anybody's time

25   here, just --

1          THE COURT:  I understand the confusion point, and I

2     think that it is, I mean, there are -- I don't think this is a

3     case where the law necessarily changed.  I mean, I think there

4     are a lot of cases that deal with the issue of when these types

5     of excise tax claims really arise, and, you know, they go back

6     pretty far.  They go back to the nineties, at least, and they

7     were, I think, current fairly close to the time that this case

8     was filed in 2005, so it's not -- I don't think this is a case

9     where the law really changed, and, therefore, you could be

10    justified in filing a claim thinking that it was pre-petition.

11          MR. SKAPOF:  And I understand what Your Honor is

12    saying, but, I guess, under, sort of, a Pioneer standard, and

13    people can use their factors for whether it's excusable or not,

14    I mean, in some instances there's no claim filed at any bar

15    date, and then a creditor shows up and says oh, by the way, I

16    have a claim, and here is my reason for why I missed the bar

17    date, and if the Court accepts that as excusable neglect it

18    then goes on to the equity.  So, you know, the Court seems

19    focused today on the notice prong of the face of the claim,

20    which concededly goes to an amendment or deemed claim, but I

21    don't think it's a necessary analysis to make when looking at a

22    late filed claim.  So our view would be we were told on

23    December 16th, and given leave that this was, in fact, an admin

24    claim, which the debtor agreed with.  I mean, they're the ones

25    that pressed that argument.  And six weeks later we file a

1    motion based on us learning this for the first time, and we ask

2    to have that claim recognized, and, as our papers say, there's

3    no prejudice to the debtor in this.  In fact, I think they

4    should almost be estopped from claiming prejudice, because

5    they're the ones that agreed it should be a hundred cents

6    claim.  We came in and argued it should be an unsecured claim.

7    So they shouldn't then be able to use the, sort of, gotcha of

8    no, actually we think it's a different kind of claim, and it's

9    actually worth more money, but you're late.  There's going to

10   be no floodgates of litigation here or people running in.  I

11   mean, I think we can pretty much agree that this is, sort of,

12   unique on its facts.  I don't think there are going to be

13   similar circumstances.  This late in the case I don't think

14   there are going to be admin claimants that pop out of the woods

15   filing a bunch of claims under the fact that they thought they

16   had a pre-petition claim.  I mean, if they missed the bar date

17   because they were providing services post-petition and that's

18   all they were doing, I think that's a very different case than

19   this one.

20           And, you know, just to amplify that, again, I think,

21   under, at least as I would read Pioneer, there's no requirement

22   to look at a previously filed claim and whether that was

23   defective, because Pioneer is based on the fact that you're

24   filing a new claim.

25           THE COURT:  No, I know.  I'm just looking at it as for

Page 19

1   the reason why it wasn't filed as an admin claim from the

2   beginning.  And the reason given is that Ohio thought that it

3   wasn't an admin claim.

4           MR. SKAPOF:  Agreed, Your Honor.  I mean, clearly our

5   position would be look, Ohio, in retrospect, in hindsight, made

6   a mistake, as construed by the Supreme Court that inadvertence

7   or --

8           THE COURT:  Right.

9           MR. SKAPOF: -- you know, that, and we say that.  I

10  mean, we're falling on that --

11          THE COURT:  Right.

12          MR. SKAPOF: -- because we need the Court to recognize

13  that, in fact --

14          THE COURT:  Right.

15          MR. SKAPOF: -- we made a mistake that rises to the

16  level of excusable neglect before we can move on and discuss

17  the equities, but --

18          THE COURT:  Right.  And I understand that it wasn't

19  a -- taking on its face the assertion that it did make a

20  mistake and think that it wasn't an admin claim, because it's

21  based upon pre-bankruptcy injuries.  The assessment, the

22  calculation of the assessment is based on pre-bankruptcy

23  injuries.

24          The other thing that you have that's appealing to your

25  side is that the mistake was one that was not in your favor.

Page 20

1    It's one thing to make a mistake that would have asserted an

2    admin claim, but this one asserted a lower priority claim.

3            On the other hand, I, kind of, have to question

4    whether it was entirely a mistake, since it's clear that the

5    assessments are based not only on pre-petition but also on

6    post-petition injuries and, certainly, for, I mean, I can't

7    imagine that there were no workers' comp claims from October of

8    2005 forward.  So --

9            MR. SKAPOF:  Agreed, Your Honor, but --

10           THE COURT:  So that wasn't based on a mistaken view of

11   the law.  That was just error, right?  They just forgot to file

12   the claim.

13           MR. SKAPOF:  I mean, I guess, Your Honor, I mean, and

14   the debtor can disagree with this and you can read the

15   assertion now, I would say that once they were operating in a

16   post-petition regime, you know, in order to be in business they

17   have to operate under the aegis of the Workers' Compensation

18   Bureau's rules, and those are, in effect, ordinary course

19   claims, and the future assessments arising from post-petition

20   injuries, the debtor was paying those post-petition injury

21   claims in the ordinary course, would have to recognize them,

22   and --

23           THE COURT:  No, but you still have the assessment

24   issue.

25           MR. SKAPOF:  -- the assessment's attached to them.

1          THE COURT:  I mean, you still have the assessment

2     issue.  Those are still separate from the reimbursement claims,

3     so I don't really -- I guess I don't follow that argument.

4          MR. SKAPOF:  Okay.  And, I guess, just, for purposes

5     of this argument going, I think Your Honor's indicated that

6     it's a quasi-mistake, charitably.

7          THE COURT:  Well, I mean, I --

8          MR. SKAPOF:  From Your -- I mean, I guess so.  I --

9          THE COURT:  I just have some skepticism that someone

10     actually really did this legal analysis.  I think that people

11     got the bar date for unsecured claims.  They realized that

12     there was probably something owing that you could assert a

13     507(a) claim for and filed this, and then they got the bar date

14     for the admin claims and didn't do anything.

15          I mean, I think it's -- I'm not sure that you've

16     really convinced me that this was, in fact, some sort of

17     reasoned legal analysis that led to not filing the admin claim.

18     And, of course, that leaves aside the cases that say that

19     reasoned legal analyses aren't an excuse.  I'm not sure Pioneer

20     goes that far, but I'm not sure there was any reasoned legal

21     analysis.

22          MR. SKAPOF:  Okay.  Right.  And, I think, as to Your

23     Honor second's point, I think the cases where they say you

24     know, sort of, mistake of law, doesn't rise to the level, I

25     think if you look, and even in the parentheticals that the

DPH HOLDINGS CORP., ET AL.

Page 22

 1    debtor has and in others, they sort of say whether it was a

 2    known and clear rule --

 3              THE COURT:  Right.

 4              MR. SKAPOF: -- or it was unambiguous.

 5              THE COURT:  No, I --

 6              MR. SKAPOF:  I think here, if we could get over the

 7    hurdle of whether it was a mistake to begin with, again, I

 8    would think, on the merits, clearly we weren't dealing with an

 9    area of settled law, because there was a dispute as to that,

10    and there was a contested hearing on it, and people debated

11    cases, and it's not a bright-line rule, clearly.  I think most

12    people in this room would also concede that.  But, you know,

13    for purposes of just this hearing, and I see I'm not totally

14    convincing you, which is the first thing that I need to do, so

15    I don't, really, necessarily, think other than the arguments in

16    our papers and our colloquy now, that, you know, I can't change

17    the face of the proof of claim, and if Your Honor's going to

18    focus on that there was really a post-petition piece there,

19    then, you know, no, the Bureau didn't reserve their rights on

20    that, and if it's not apparent to the Court, at least, that

21    they put them on notice, you know, I don't know where --

22              THE COURT:  Okay.

23              MR. SKAPOF:  Excuse me for a second, Your Honor.

24              THE COURT:  Okay.  All right.  Well, I mean, I don't

25    think that the debtor really misled you all.  That's what I was

1    focusing on --

2              MR. SKAPOF:  Okay.

3              THE COURT:  -- the proof of claim as far as the

4    Pioneer analysis goes.

5              MR. SKAPOF:  Okay.  So I mean, that's --

6              THE COURT:  They didn't lull you into a false sense

7    that you were covered by -- on your admin claim --

8              MR. SKAPOF:  Okay.

9              THE COURT:  -- in other words.

10             MR. SKAPOF:  So accepting that, that still leaves

11   under Pioneer, whether it was stayed, which again, we would

12   concede, especially in hindsight, we made, gets to the level of

13   excusable neglect.

14             THE COURT:  Right.

15             MR. SKAPOF:  If Your Honor doesn't think that, then I

16   think I should sit down, basically.  Because we don't get to

17   the next stage of the analysis.  You know, I'm sort of looking

18   for a little guidance here.  Because if you're not going to be

19   convinced --

20             THE COURT:  Well --

21             MR. SKAPOF:  -- then you're not convinced.

22             THE COURT:  -- I mean, how do you overcome the fact

23   that there was no administrative proof of claim filed, even for

24   assessments premised upon post-petition injuries?

25             MR. SKAPOF:  I don't have an explanation for that,

1    because, you know, I mean, I wasn't even involved --

2          THE COURT:  Right.

3          MR. SKAPOF:  -- in the case at the time.  The Bureau

4    filed this claim in the ordinary course of how they prosecute

5    their claims and their litigation.  And, you know, it turns out

6    they were wrong.

7          THE COURT:  Okay.  All right.

8          MR. SKAPOF:  But my colleague is indicating that, I

9    think, and the debtor would have confirmed this debt, in fact,

10   we were getting paid for post-petition assessments during the

11   case, which then would lead to the fact that the debtor would

12   be on notice, in fact, that it had a continuing obligation --

13         THE COURT:  Well, but --

14         MR. SKAPOF:  -- under Ohio law.

15         THE COURT:  -- debtors pay admin claims all the time

16   post-petition.  But here, very clearly, there was a change in

17   circumstances from a case where the stock was trading at a

18   substantial premium.  The debtor was on the verge of

19   administrative insolvency.  And, you know, with the changes in

20   the financial market and with GM's imminent bankruptcy filing

21   and Chrysler's bankruptcy filing, knowing what the

22   administrative claims were, because they might not get paid if

23   they were too high, became a really important thing.  That's

24   why -- I mean that's, I think, why the administrative claims

25   bar date was set.  It's not -- you don't have one in every

1    case, obviously, every Chapter 11 case.  So, I mean, that's the

2    explanation for that.

3            MR. SKAPOF:  I guess we don't really have anything

4    else to say on this --

5            THE COURT:  Okay.

6            MR. SKAPOF:  -- other than also, you know, again, I

7    don't think this is a claim that came out of the woodwork or a

8    creditor that does, because, again, this was a condition to

9    doing business in Ohio.  Delphi had been in Ohio for a long

10   time.  It knows what it's Workers' Comp obligations are.  It

11   couldn't -- you know, outside of bankruptcy, if it went in and

12   said well, I forgot I needed to pay these assessments, I

13   mean --

14           THE COURT:  Right.

15           MR. SKAPOF:  -- that argument's just not going to fly.

16           THE COURT:  Right.

17           MR. SKAPOF:  So --

18           THE COURT:  Although the cases say it doesn't matter.

19   The bar date still puts the onus on the claimant to file the

20   proof of claim.  Okay.

21           MR. SKAPOF:  Thank you, Your Honor.

22           THE COURT:  Thank you.  Did the debtors have anything

23   more to say?

24           MR. LYONS:  Your Honor, just very briefly.  I mean,

25   just to confirm Your Court's statements that, you know, we did

1    nothing in any way to mislead Ohio.  I think that's clear.  The

2    record shows that.  And we objected to the claim on the basis

3    it was paid.  Simple as that.  The arguments regarding post-

4    petition assessments really came in response to the Belden

5    Locker argument.  And that's where we addressed that.

6          Just one other item and then I'll sit down.  You know,

7    just also to turn the Court's attention to the modification

8    procedures, paragraph 39.  I think we actually went the extra

9    mile.  We said, if you have a proof of claim you can only rely

10   on it -- and it clearly and unambiguously states it's for an

11   administrative expense.  So, you know, if you're Ohio and you

12   get the bar date and you look at the bar date language and you

13   look at the claim that you filed, the light should have gone

14   on, and it didn't.

15         And I think, Your Honor, we don't even get to

16   excusable neglect.  I think what we've heard so far could

17   underpin a finding that there was actually a conscious decision

18   not to file a claim, albeit based upon a mistake of law or a

19   wrong interpretation.  But it may not even get to excusable

20   neglect in our view.  And that's all I have, Your Honor.

21         THE COURT:  Okay.  All right.  I have a motion before

22   me by the Ohio Bureau of Workers' Compensation to seek -- or to

23   obtain three alternative forms of relief.  The first would be

24   to deem a claim timely filed, or alternatively, two, to

25   authorize the amendment of the claim, or three, to permit a

1    late filed claim.  The successor to Delphi Corporation and its

2    affiliated debtors, DPH Holdings Corporation, under Delphi's

3    Chapter 11 plan, has objected to the motion.

4         The motion is premised or refers to a claim that the

5    Ohio Bureau filed in Delphi's case on December 27, 2005, in

6    response to -- actually well before the first bar date set in

7    this Chapter 11 case, which was a bar date for pre-petition

8    claims.  That is claim number 1294.  The claim asserts an

9    unsecured priority claim of $24,732,628.02 under Section

10   507(a)(8) of the Bankruptcy Code, for, on the face of the

11   claim, the debtors' statutory obligation to pay Workers'

12   Compensation premiums, pursuant to Ohio Revised Code Section

13   4123.35.

14        This is not the first time that the Court has dealt

15   with this proof of claim.  The debtors objected to the claim,

16   and the Court held a hearing on it on December 16, 2010, at

17   which it became clear -- and this was not disputed by the

18   debtors -- that the claim is one for assessments calculated by

19   the Ohio Bureau based on the prior years' experience of the

20   debtor of dealing with Workers' Compensation claims.  And those

21   assessments are the cost of running the self-insured program by

22   the Ohio Bureau.

23        The debtors' objection to the claim asserted that the

24   debtors had paid all of the pre-bankruptcy assessments,

25   including those that would have been owing for the three years

1   before the bankruptcy petition date.  And in fact, it was

2   acknowledged by the Bureau at the December 16th hearing that

3   the remaining claim that Ohio had was for assessments for 2009

4   and thereafter.

5           I ruled at the December 16th hearing that claim number

6   1294 did not set forth a claim for those assessments, but

7   rather set forth a claim for assessments accrued pre-petition;

8   on the theory espoused by the debtors that first they had paid

9   all pre-petition assessments, the claim would be denied with

10  regard to anything owing before 2009, and secondly that the

11  2009 and thereafter assessments were not asserted in the proof

12  of claim and did constitute separate post-petition claims

13  determined and coming due each year under the Ohio statute,

14  based on, among other cases, the theory set forth in In re Blue

15  Coal Corporation, 166 B.R. 816 (Bankr. M.D.Pa. 1993) and In re

16  Giley, 288 B.R. 901 (Bankr. M.D.Fla. 2002).

17          My ruling was expressly without prejudice to the Ohio

18  Bureau's right to seek to file a late administrative claim for

19  2009 and thereafter or to seek related relief, which is what

20  Ohio has done in the present motion before me.  I've reviewed

21  that motion and heard oral argument and I've determined that

22  the motion should not be granted.

23          The first argument by the Bureau is that claim 1294

24  should be treated as a timely filed administrative claim and

25  that the box checked as "unsecured priority claim" should be

05-44481-rdd   Doc 21246   Filed 05/02/11   Entered 05/02/11 09:37:18   Main Document
Pg 29 of 46
DPH HOLDINGS CORP., ET AL.

Page 29

1   ignored and I should treat the claim, as based on its facts, as

2   setting forth an administrative claim.  The claim itself is

3   relied upon as the basis for the assertion that it should be

4   treated as a timely claim, apparently under the theory of -- or

5   the doctrine by which courts have permitted informal proofs of

6   claim to be treated as proofs of claim.

7           That theory requires that the claim have been filed

8   with the bankruptcy court and had to have become part of the

9   judicial record, that it states the existence and nature of the

10  debt, that it states the amount of the claim against the

11  estate, and finally, fourth, evidences the creditor's attempt

12  to hold the debtor liable for the debt.  See In re Enron

13  Creditors' Recovery Corporation 370 B.R. 90, 99 (Bankr.

14  S.D.N.Y. 2007) as well as In re Houbigant Inc., 190 B.R. 185,

15  187 (Bankr. S.D.N.Y. 1995).

16          The problem with that assertion here is that the proof

17  of claim as filed does not state the nature of the debt or the

18  amount of the claim against the estate.  That is because the

19  claim, to the extent that Ohio now wants it to be treated as an

20  administrative claim, not only does not say it's an

21  administrative claim, but it also does not set forth sufficient

22  facts from the face of the claim to give those who would be

23  reviewing the court docket reasonable notice that the claim is

24  asserted for assessments accruing in subsequent years.  Instead

25  it contains no reservation of that type of claim, nor does it

1    state that the specific dollar amount, down to the last two

2    cents, is the liquidated portion of the claim and that there is

3    an unliquidated portion for amounts that would be accruing in

4    subsequent years, based on pre-petition Workers' Compensation

5    claims being factored into the Bureau's subsequent annual

6    assessments.  And, in fact, the attachment to the claim, which

7    references specific dates going back to 2001 and up to the day

8    before the petition date, gives every indication that it is

9    referring simply to calculations for the three years prior to

10   the bankruptcy case, which is the standard for -- at least

11   under the case law that recognizes these types of assessments -

12   - as fitting within 507(a)(8) of the Code, the period that is

13   covered by that section.  So I do not believe that the proof of

14   claim that was filed can be treated as an informal proof of

15   administrative expense claim.

16         Next, the Bureau seeks to obtain an order permitting

17   it to amend claim number 1294 to include the necessary

18   averments that would give parties notice that it was asserting

19   an administrative expense claim for the 2009 and thereafter

20   years.  It is well settled that the decision to permit an

21   amendment of a proof of claim rests with the sound discretion

22   of the bankruptcy judge. In re McLean Industries Inc., 121 B.R.

23   704, 708 (Bankr. S.D.N.Y. 1990).

24         Generally, amendments to claims are freely allowed

25   when, "The purpose is to cure a defect in the claim as

Page 31

1    originally filed, to describe the claim with greater

2    particularity, or to plead a new theory of recovery on the

3    facts set forth in the original complaint or claim,"Midland

4    Cogeneration Venture Limited Partnership v. Enron Corporation,

5    419 F.3d 115, 133 (2d Cir. 2005).

6            The Court must, however, "subject post-bar date

7    amendments to careful scrutiny, to assure that there was no

8    attempt to file a new claim under the guise of an amendment,"

9    id., thereby circumventing the bar date.  Here the amendment

10   very clearly would be post-bar date, because this Court

11   established two separate administrative expense bar dates in

12   this case and they ran approximately fourteen months before the

13   motion was made.

14           The post-bar date -- the fact that the Court must pay

15   close scrutiny to post-bar date requests to amend, is

16   highlighted in particular in a situation where the movant seeks

17   to amend in a way that enhances the priority of the claim or

18   that would turn the claim from being an unsecured to a secured

19   claim.  See In re Alliance Operating Corp. 60 F.3d 1174 (5th

20   Cir. 1995), as well as In re Big Rivers Electric Corp. 1998

21   U.S. Dist. LEXIS 23011 (W.D.Ky. September 25, 1998).

22           A determination of whether an amendment to a proof of

23   claim is permissible requires a two-step inquiry.  First,

24   courts examine "whether there was a timely assertion of a

25   similar claim or demand evidencing the intention to hold the

Page 32

 1   estate liable." Midland Cogeneration 419 F.3d at 133.  The test

 2   for permitting an amendment to a claim in this respect is

 3   largely the same as the test governing an amendment to a

 4   pleading under Rule 15(c) of the Federal Rules of Civil

 5   Procedure. In re Asia Global Crossing Limited, 324 B.R. 503,

 6   508 (Bankr. S.D.N.Y. 2005).  That is, "The Court must decide

 7   whether there is a sufficient commonality of facts between the

 8   allegations relating to the two causes of action to preclude

 9   the claim of unfair surprise," i.e., the claim relates back to

10   the original pleading where there is a sufficient commonality

11   of facts. Id.

12           In addition, the Court should consider whether the

13   defendant had notice of the claim now being asserted and

14   whether the plaintiff would rely on the same type of evidence

15   to prove both claims. Id. Thus, consistent with Rule 15(c), an

16   amendment that simply raises an alternative legal theory is not

17   improper if it relies on facts already in the claim.  See In re

18   Integrated Resources Inc., 157 B.R. 66, 71 (S.D.N.Y. 1993). If

19   the amendment does relate back to the timely filed claim,

20   courts have then proceeded to the second step of the analysis,

21   which is an equitable consideration of the particular facts of

22   the case to determine whether it would be equitable to allow

23   the amendment. Midland Cogeneration 419 F.3d at 133.  Multiple

24   factors are considered under this second prong of the analysis,

25   including:  1) whether there was undue prejudice to the

1   opposing party; 2) whether there was bad faith or dilatory

2   behavior on behalf of the claimant; 3) whether other creditors

3   would receive a windfall were the amendment not allowed;

4   4) whether other claimants might be harmed or prejudiced; and

5   5) the justification for the inability to file the amendment at

6   the time the original claim was filed. Id. See also In re

7   McLean Industries Inc., 121 B.R. 704, 708 (Bankr. S.D.N.Y.

8   1990).

9          As the Midland court stated, the most important

10  consideration is whether the opposing party will be unduly

11  prejudiced. Id. Further, that analysis -- that second prong of

12  the analysis, closely resembles the excusable neglect analysis

13  under Bankruptcy Rule 9006(b) and the Supreme Court's Pioneer

14  decision. Id.

15         Here, I believe the objection to the motion is correct

16  that the motion fails the first prong of the analysis; that is,

17  it would not properly relate back to the -- the amendment, I'm

18  sorry, would not properly relate back to the original proof of

19  claim as filed, in essence for the same reasons that the

20  original proof of claim cannot be deemed a timely informal

21  proof of claim for the administrative expense that's now being

22  asserted by Ohio.  The amendment would:  a) change the priority

23  from 507(a)(8) to administrative expense status under

24  507(a)(2).  Moreover, it would be based upon new evidence which

25  is the debtors' Workers' Comp experience in the years preceding

DPH HOLDINGS CORP., ET AL.

Page 34

1    the dates of the unpaid assessments.  That would be starting in

2    the year 2008 and thereafter, since Ohio's calculation is based

3    on that experience.

4          In similar circumstances, and, in fact, almost

5    directly on point circumstances, the courts have been clear

6    that such amendments should not be permitted in the face of an

7    intervening bar date.  See In re Alliance Operating Corp., 60

8    F.3d 1174 (5th Cir. 1995), and In re Lions of California Inc.

9    2005 Bankr. LEXIS 3292, at pages 10 through 11 (Bank. S.D. Cal.

10   July 26, 2005).  See also In re Big Rivers Electric Corp., 1998

11   U.S. Distr. LEXIS 23011 (W.D. Ky. September 25, 1998), as well

12   as In re Walls & All Inc., 127 B.R. 115 (W.D.Pa. 1991) and In

13   re Metro Transportation Co., 117 B.R. 143 (Bankr. E.D.Pa.

14   1990).

15         That should end the inquiry with regard to whether an

16   amendment should be permitted here.  But I will note also that

17   in weighing the equitable factors to consider, I believe that

18   the balance tips in favor of DPH and its creditors.  This is

19   not merely because the amount of hundred-cent claims would

20   increase if I permitted the claim to be amended, and if it was

21   subsequently sustained on the merits, since a mere increase in

22   dollar amount, I believe, is not sufficient to prejudice the

23   debtor and other creditors.

24         Rather, I believe, here, the equitable factors that

25   weigh in favor of the denial of this request are as follows.

1    First, the claim itself, on its face, I believe is one that

2    gives no indication that it's asserting claims for post-

3    petition periods.  I would note that the function of a claims

4    bar date, particularly an administrative claims bar date in

5    this case, is not only for the benefit of the debtor to

6    calculate the claims asserted against it, but also for the

7    benefit of creditors.

8         Here, the creditors that were particularly focused on

9    the administrative claims bar date and the administrative

10   claims that would be asserted in light of that bar date, were

11   the DIP lender group and those who would be funding the

12   debtors' belated exit from Chapter 11.  As I've noted in prior

13   hearings, the record of this case is clear that with the

14   collapse of the auto industry and the Chapter 11 case of

15   Chrysler and the imminent Chapter 11 case of GM, as well as the

16   collapse of normal banking relationships, there was a very real

17   possibility that Delphi's case had become administratively

18   insolvent and it would, therefore, not have the necessary cash

19   to emerge from Chapter 11 at the time that the administrative

20   claims bar date was set.

21        Therefore, getting a proper tally of administrative

22   expense claims was critical to the debtors' emergence from

23   Chapter 11, and the DIP lenders' and others' willingness to

24   fund that emergence.  I believe that to the extent they would

25   have reviewed this proof of claim, they would not have reached

1    the conclusion that Ohio -- the Ohio Bureau was, in this proof

2    of claim, setting forth sufficient facts to assert that they

3    had, in addition, administrative expense liability for 2009 and

4    thereafter.  See, again, In re Lions of California Inc., 2005

5    Bankr. LEXIS 3292 at page 11, which talks about the reliance on

6    a proof of claim by third parties.

7              I have, in light of the importance of the

8    administrative claims bar date, over the last couple of years,

9    disallowed late-filed administrative claims, and I believe that

10   it would be unfair to those creditors, as well as the creditors

11   who filed timely proofs of claim, to permit this claim to be

12   amended to assert a late admin claim, and would, I believe,

13   lead such creditors whose claims were not allowed to be filed

14   late to seek reconsideration under Section 502(j).  So it

15   appears to me that there would be prejudice to third parties

16   here.

17             I also believe that while the Bureau has asserted that

18   it believed in good faith that it had asserted a claim that

19   would never be an administrative claim, because its view of the

20   law was that the claim would be treated as a pre-petition

21   claim, there are two problems with that assertion as far as the

22   equitable analysis for an amendment request goes, as well as

23   for the Pioneer analysis, which I'm about to undergo.

24             First, it is clear, based upon the cases that the

25   debtors and I have cited, that the issue of when a 507(a)(8)

Page 37

1    claim like this accrues or an administrative claim for such

2    assessment accrues, has -- or was current as an issue well

3    before December 27, 2005, when the claim was filed, and that

4    the majority of cases and the analysis supporting them argued

5    that the claim accrued each year when the assessment is made

6    and then not paid, as opposed to during the years when the data

7    making up the calculation originated.  The contrary approach is

8    a distinct minority approach, and, in fact, apparently as far

9    as Ohio has stated, was limited to a case issued after the

10   claim was filed although before the administrative claims bar

11   date, in an unreported decision, In re the Belden Locker

12   Company, 2008 W.L. 762243 (Bankr. N.D. Ohio March 21, 2008).

13          Therefore, it appears to me that while I may not go so

14   far as the debtors to say that a legal mistake is never an

15   excuse for a late claim or a basis for arguing that the

16   equities are in favor of the claimant, I don't believe that

17   this legal mistake was one that was so clearly justifiable as

18   to merit taking the chance of not filing an administrative

19   claim before the bar date for such claims.

20          Secondly, the facts undercut the argument that Ohio

21   has made that the claim was not filed as an administrative

22   claim solely because of this legal mistake.  Ohio acknowledges,

23   as it must, that the data informing the 2009 and thereafter

24   assessments includes Workers' Comp claims that would have been

25   filed post-petition, and, therefore, under its mistaken theory

1   of why the claim would fall on either the pre- or post-petition

2   side, that portion, based upon post-petition or post-bankruptcy

3   assessments, would clearly be an administrative claim.  And,

4   therefore, there would be no excuse for not filing an

5   administrative claim based on its mistaken legal theory insofar

6   as the assessments were based on those calculations, which

7   means that, in fact, Ohio was at least in some measure simply

8   dilatory as opposed to mistaken in not filing an administrative

9   expense claim by the administrative expense claim bar date.

10          So, for that alternative reason, I would deny the

11  motion to file an amended claim that would set forth the facts

12  supporting Ohio's administrative expense claim.

13          Finally, Ohio has sought permission to file a claim

14  late or an administrative expense claim late, under Bankruptcy

15  Rule 9006(b), which permits a claimant to file a late proof of

16  claim if the failure to submit a timely proof of claim was due

17  to excusable neglect.  I have held in this case, and that

18  holding is supported by the case law, that a court's

19  administrative expense bar date is equally subject to Section

20  9006(b) and the case law analysis of it.  That case law for my

21  purposes is driven by two decisions.  First, Pioneer

22  Investments Services Co. v. Brunswick Associates Limited

23  Partnership, 507 U.S. 380 (1993), as well as the Midland

24  Cogeneration case that I previously cited, 419 F.3d 115.

25          The burden of proving excusable neglect is on the

DPH HOLDINGS CORP., ET AL.

Page 39

1    claimant seeking to extend the bar date, In re R.H. Macy & Co.,

2    161 B.R. 355, 360 (Bankr. S.D.N.Y. 1993).  The test is a two-

3    step one here, as well.  First, the movant must show that its

4    failure to file a timely claim constituted neglect as opposed

5    to willfulness or a knowing omission, neglect generally being

6    attributed to a movant's inadvertence, mistake or carelessness.

7    Id. at 387-88 -- I'm sorry, Pioneer 507 U.S. 387-88.

8           After establishing neglect, as opposed to willfulness

9    or a knowledge of the bar date and the failure to show any

10   unknowing basis for neglecting it, the movant must show by a

11   preponderance of the evidence that the neglect was excusable.

12   And that analysis is to be undertaken on a case-by-case basis

13   on the particular facts before the Court, although the Court is

14   to be guided by, and make the determination balancing, the

15   following factors:  a) the danger of prejudice to the debtor;

16   b) the length of the delay and whether or not it would impact

17   the case; c) the reason for the delay, in particular whether

18   the delay was within the control of the movant; and d) whether

19   the movant acted in good faith (Id. at 395).

20          The Second Circuit, in the Midland case, has held

21   however, that, "Inadvertence, ignorance of the rules or

22   mistakes construing the rules do not usually constitute

23   excusable neglect." 419 F.3d 126.  Indeed, the Second Circuit

24   said in that case, "We've taken a hard line in applying the

25   Pioneer test.  In a typical case, three of the Pioneer factors,

1    the length of the delay, the danger of prejudice and the

2    movant's good faith, usually weigh in favor of the party

3    seeking the extension.  We've noted, though, that we and other

4    circuits have focused on the third factor, the reason for the

5    delay, including whether it was within the reasonable control

6    of the movant, and we caution that the equities will rarely if

7    ever favor a party who fails to follow the clear dictates of a

8    court rule, and that where the rule is entirely clear, we

9    continue to expect that a party claiming excusable neglect

10   will, in the ordinary course, lose under the Pioneer test." Id.

11   at 366 -- I'm sorry, Id. at 122-123.  See also In re Musicland

12   Holding Corporation, 2006 Bankr. LEXIS 3315 at pages 10-11

13   (Bankr. S.D.N.Y. 2006).

14           Before turning to the test, it should be noted that

15   "The bar date serves the important purpose of enabling the

16   parties-in-interest to ascertain with reasonable promptness the

17   identity of those making claims against the estate and the

18   general amount of the claims, a necessary step in achieving the

19   goal of successful reorganization, " In re Calpine Corp., 2007

20   U.S. Dist. LEXIS 86514 at pages 14-15 (S.D.N.Y. November 21,

21   2007).  Therefore, the bar date is not simply a procedural

22   gauntlet or trap but plays an extremely important role in

23   negotiating the debtor's emergence from Chapter 11, including

24   not only informing the debtor's analysis but that of important

25   third-party constituents in the case.  In re Drexel Burnham

Page 41

1   Lambert Group Inc., 148 B.R. 1002, 1008-10 (Bankr. S.D.N.Y.

2   1993).

3          This is particularly the case in allowing late filed

4   claims after a plan is confirmed, which subjects the debtor and

5   third parties potentially to prejudice and skewing the premises

6   upon which they agreed upon the debtor's plan. Id.

7          Here, as I've said, the Court has serious doubts as to

8   whether the neglect here was legitimately outside of Ohio's

9   reasonable control.  As I noted during oral argument, I think

10  that Ohio was mistaken in asserting that it was led on or

11  confused by the debtors' response to the proof of claim that

12  was filed into thinking that it had legitimately protected

13  itself.  I believe, to the contrary, that it was the debtor and

14  its constituents who would have been legitimately confused by

15  the proof of claim that was filed, which, on its face, asserted

16  a pre-petition claim and made no mention of amounts that would

17  be accruing for post-bankruptcy years.

18         Further, as I've said, I believe that the majority of

19  the case law, and clearly the better reasoned case law, would

20  have put the Bureau on notice that the claims for accruing

21  assessments, at least for the period while the debtor was doing

22  business post-bankruptcy, would more properly be viewed as

23  administrative claims and therefore be subject to the

24  administrative claims bar date.

25         Therefore, as I said during oral argument, I don't

Page 42

1   believe that the debtor was laying in the weeds to trap Ohio by

2   asserting after the administrative claims bar date that, in

3   fact, the claims it had were administrative claims.  In fact, I

4   think that the claims that were asserted in the proof of claim,

5   as I've already stated, were not administrative claims but were

6   pre-petition claims.  It was only the non-filed claims that

7   still remained and were still to be dealt with, on December 16,

8   2010 at the prior hearing, that would be of an administrative

9   expense nature.  And so I believe that there was no legitimate

10  confusion caused by the debtor in the Bureau's mind as to

11  whether those claims should have been separately filed after

12  the -- I mean, before the administrative claims bar date.

13         So it appears to me here that this is not a case of

14  neglect as opposed to a conscious decision.  But assuming for

15  the sake of argument that the Bureau would get over the neglect

16  hurdle, I don't believe it is excusable here, first because of

17  the fact that it was within the control of the claimant to file

18  the claim properly.  Certainly there was a legitimate basis for

19  asserting an administrative expense claim.  And as I've noted

20  earlier, even under Ohio's theory of when the claim accrued,

21  with regard to those aspects of the assessment that were based

22  upon post-petition Workers' Compensation claims, the only basis

23  for the claim would have been as an administrative claim.  And

24  yet Ohio didn't file the administrative expense claim timely.

25  So, generally speaking, if there was neglect here, I don't

Page 43

1   believe that it was neglect that was outside of the reasonable

2   control of the Bureau.

3          Secondly, I believe the proper analysis of the delay

4   here should be not starting from December 16th as Ohio -- of

5   2010 -- as Ohio asserts, but from the date of the actual notice

6   of the administrative claims bar date.  Therefore, the delay in

7   asserting an administrative expense claim is here over a year,

8   which courts, including the Midland court, have recognized to

9   be undue delay.  Moreover, that delay straddled the

10  confirmation of the plan, and as I have stated before,

11  calculation of administrative expenses was an important element

12  of whether the plan would actually be confirmed and go

13  effective as modified.  So here I believe that the delay was

14  both undue in terms of just its basic length as well as the

15  relevance of the delay to the facts of the case itself.

16         While I believe that Ohio acted in good faith, I also

17  believe that there is a risk of prejudice here, as I've already

18  discussed in the context of the request to amend the proof of

19  claim with regard to the debtors and other creditors.  And I

20  won't repeat that discussion again.

21         So, in weighing the Pioneer factors, I conclude that

22  the claim should not be permitted to be filed late.  So, to the

23  extent that the -- either one of the two administrative claims

24  bar dates entered by me in this case would pertain to Ohio's --

25  the Ohio Bureau's outstanding and claimed administrative

DPH HOLDINGS CORP., ET AL.

Page 44

1    expenses, those expenses would be barred and the claims

2    therefore would be disallowed.  And the debtors should submit

3    an order consistent with that ruling.

4              MR. LYONS:  We will, Your Honor.  That's the only item

5    we have for today, unless Your Honor has any questions.

6              THE COURT:  No.

7              MR. LYONS:  That's fine.  Thank you, Your Honor.

8              THE COURT:  Thank you.

9         (Whereupon these proceedings were concluded at 11:35 AM)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 45

1

2                                    I N D E X

3

4                                    RULINGS

5                                                     Page       Line

6    Motion of Ohio Bureau of Workers' Compensation 28          22

7    to accept a late filed claim denied

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 46

1

2                           C E R T I F I C A T I O N

3

4     I, Hana Copperman, certify that the foregoing transcript is a

5     true and accurate record of the proceedings.

6

7

8     _____

9     HANA COPPERMAN

10    AAERT Certified Electronic Transcriber (CET**D-487)

11

12    Veritext

13    200 Old Country Road

14    Suite 580

15    Mineola, NY 11501

16

17    Date:  February 24, 2011

18

19

20

21

22

23

24

25