| | |
|---|---|
| Neil A. Goteiner (NG 1644) | Hearing Date & Time: May 26, 2011 at |
| Dean M. Gloster (Admitted *Pro Hac Vice*) | 10 a.m. (prevailing Eastern Time) |
| Kelly A. Woodruff (Admitted *Pro Hac Vice*) | |
| FARELLA BRAUN + MARTEL LLP | |
| 235 Montgomery Street, 17th Floor | Objections due:  May 19, 2011 |
| San Francisco, CA  94104 | |
| Telephone:  (415) 954-4400 | |
| Facsimile:  (415) 954-4480 | |

Attorneys for OFFICIAL COMMITTEE OF
ELIGIBLE SALARIED RETIREES

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x   Chapter 11
                                                      :
   In re:                                             :   Case No. 05-44481 (RDD)
                                                      :
DPH HOLDINGS CORP., et al.,                           :   (Jointly Administered)
                                                      :
                                                      :
                                                      :
                                                      :
         Reorganized Debtors.                         :
------------------------------------------------------x

**MOTION BY OFFICIAL COMMITTEE OF ELIGIBLE SALARIED RETIREES TO
DESIGNATE BENEFIT OF DSRA VEBA AS IN LIEU OF COBRA COVERAGE**

      The Official Committee of Eligible Salaried Retirees ("Retirees' Committee") respectfully files this motion (the "Motion") under Title 11 (the "Bankruptcy Code") section 105, 11 U.S.C. § 105 and Title 26 (the "Internal Revenue Code") section 35(e)(1)(K), 26 U.S.C. § 35(e)(1)(K), to designate the medical and prescription drug benefits provided by the DSRA VEBA Benefit Trust (the "DSRA VEBA") as in lieu of lifetime COBRA continuation coverage benefits not offered to retirees represented by the Retirees' Committee  in connection with the termination of their benefits during the bankruptcy case to the extent set forth in this Motion and

accompanying proposed form of order.  In support of the Motion, the Retirees' Committee respectfully represent as follows:

## Introduction

With the agreement of the DSRA VEBA, the Retirees' Committee has filed this motion to reduce the risk, because of possible future legislative uncertainty, that the benefit provided by the DSRA VEBA to thousands of Delphi retirees and their dependants may lose eligibility for the Health Coverage Tax Credit ("HCTC") subsidy after February 13, 2012.

An advanced copy of this Motion has been provided to counsel for the DSRA VEBA and to counsel for the Reorganized Debtors, and counsel for the DSRA VEBA supports the Motion. At a minimum, the Reorganized Debtor may have an objection to, or suggested alternative language to, the proposed form of order

In February 2009, the American Recovery and Reinvestment Act ("ARRA") added section 35(e)(1)(K) to the Internal Revenue Code, providing that a benefit is eligible for the HCTC subsidy (currently 65% of benefit costs) if it is provided by a tax-exempt voluntary employee benefit association established by a retiree representative under Bankruptcy Code section 1114 or by order of a bankruptcy court.[1]  That statutory authorization was to expire December 31, 2010, but was extended until February 13, 2012 by Section 117 of the Omnibus Trade Act of 2010, H.R. 6517, signed into law on December 29, 2010.[2]

---

[1] To be eligible for the HCTC subsidy, the beneficiary retirees and their dependants must be aged 55-64 and be enrolled in "qualified health insurance" plan and have had their pensions terminated and trusteed by the Pension Benefit Guaranty Corporation ("PBGC"), as has happened with the pensions for both salaried and hourly employees of Delphi, which was the debtor and debtor-in-possession, predecessor to the Reorganized Debtor.  See http://www.pbgc.gov/news/press/releases/pr09-48.html

[2] As amended, Internal Revenue Code Section 35(e)(1)(K) provides that "qualified health insurance" coverage for purposes of the HCTC  includes for "eligible coverage months beginning before February 13, 2012, coverage under an employee benefit plan funded by a voluntary employees' beneficiary association (as defined in section 501(c)(9)) established pursuant to an order of a bankruptcy court, or by agreement with an authorized representative, as provided in section 1114 of title 11, United States Code."  26 U.S.C. § 35(e)(1)(K).  Internal Revenue Code section

2

In the event that (A) the existing legislation is not extended beyond February 13, 2012, and (B) the Internal Revenue Service changes its position and takes the position in the future that, as a result, eligibility for the HCTC subsidy has lapsed, the relief requested in this Motion may make it easier for the DSRA VEBA to obtain a favorable Private Letter Ruling from the Internal Revenue Service which would allow the DSRA VEBA to continue to provide HCTC-eligible subsidized benefits for thousands of Delphi retirees who have had their pensions terminated and trusteed by the PBGC.  It might also provide an argument that the DSRA VEBA benefit is eligible under prior Private Letter Rulings, which have extended HCTC eligibility to benefits provided by VEBAs set up by Section 1114 retiree committees in bankruptcy if those benefits were set up in lieu of COBRA continuation coverage.

## Background

1. On October 8 and 14, 2005, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (collectively the "Debtors") filed voluntary petitions in this Court for reorganization relief under chapter 11 of the Bankruptcy Code.  The Debtors continued to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108.  This Court ordered joint administration of these cases.

2. On February 4, 2009, the Debtors filed a motion seeking the Court's approval to cease contributions to retiree welfare benefit plans after March 31, 2009.  (Docket No. 14705 (the "OPEB Termination Motion.").)

3. At a hearing on February 24, 2009, the Court determined that Delphi could terminate unvested retiree welfare benefits without following the procedures set forth in section 1114 of the Bankruptcy Code, as memorialized in the Court's subsequent order (Docket No.

---

501(c)(9) is the provision authorizing voluntary employee benefit associations as non-profit tax exempt entities.  26 U.S.C. § 501(c)(9).

3

16380 (the "Provisional Salaried OPEB Termination Order")). Although the Court also provisionally determined that Delphi's welfare benefit plans were in fact unvested, at-will benefits, the Court directed the United States Trustee to appoint a Retirees' Committee under the discretionary provisions of section 1114 (the Retirees' Committee) for the principal purpose of determining whether evidence existed that any retiree or group of retirees had vested benefits, and to meet and confer with the Debtors over any consensual modifications to the Provisional Salaried OPEB Termination Order in return for waiving or settling the right to appeal from entry of that order. (*Id.*)

        4.      After discovery and an additional hearing on March 11, 2009 the Court finalized its ruling authorizing Delphi to cease OPEB contributions as of April 1, 2009. (Docket No. 16448 (the "Final OPEB Termination Order."))

        5.      The Retirees' Committee filed a notice of appeal to the United States District Court for the Southern District of New York from the Final OPEB Termination Order. (Docket No. 16458.)

        6.      Pursuant to this Court's order appointing the Retirees' Committee, the Retirees' Committee undertook extensive but rapid negotiations with the Debtors to reach a settlement, particularly in light of recent changes to the law that permitted a VEBA set up by a section 1114 committee or authorized by a bankruptcy court to offer a benefit eligible for the HCTC without going through the lengthy and uncertain Private Letter Ruling request process. The HCTC is a federal tax credit, codified in Internal Revenue Code Section 35(e)(1), 26 U.S.C. § 35(e)(1), which then paid 80%[3] of the cost of health and prescription drug coverage constituting "qualified health insurance" for eligible retirees who are at least age 55 but not yet

---

[3] This subsidy has since returned to the pre-ARRA level of 65% of the benefit cost.

4

65 and who are receiving benefits from the Pension Benefit Guaranty Corporation ("PBGC") because of termination of their defined benefit pension plan and turnover of the plan to the PBGC.  *See* 26 U.S.C. § 35(e)(1)(J)(iii).

    7.  The Retirees' Committee reached agreement with the Debtors, and on April 1, 2009, the Debtors filed an expedited motion seeking approval from this Court for the compromise and settlement (the "Settlement") with the Retirees' Committee.  (Docket No. 16535.)

    8.  Among other things, under the Settlement, the Debtors agreed that the Debtors would make a series of payments that totalled $8.75 million to the Retirees' Committee for the benefit of Delphi's salaried retirees, not subject to reduction because of enrollment levels, and comprised of (i) a $1 million hardship fund, payable at the beginning of May 2009; (ii) $500,000 for VEBA set-up costs, payable at the beginning of May 2009 (which the DSRA VEBA could also use for hardship fund or subsidizing retiree medical benefit costs); (iii) $1.25 million per month for five months, payable monthly at the beginning of each of June through October 2009; and (iv) one final payment of $1 million on November 1, 2009.  (*Id.*)  Existing Debtor-in-Possession lenders did not agree to subordinate to these payment obligations in the Settlement, so at the time of the Settlement, there was no certainty that the payments would be made.  Declaration of Dean Gloster in Support of 1114 Committee Motion to Designate VEBA Benefit as in Lieu of COBRA (Gloster Decl.) at ¶ 6.

    9.  This Court's approved the Settlement by an order entered April 3, 2009 ("the Settlement Approval Order.")  (Docket No. 16547.)  The Settlement Approval Order also authorized the Retirees' Committee to establish a VEBA which could offer a benefit eligible for the HCTC.  (*Id.*)  It also provided that the Court retained jurisdiction to modify the order.  (*Id.*)

5

10. After entry of the Settlement Approval Order, the Debtors made the full payments required under the Settlement Approval Order, and the defined benefit pension plan of the salaried retirees of the Debtors was terminated. On August 10, 2009, the PBGC took over responsibility for the terminated defined benefit pension plan of the salaried retirees, triggering eligibility for the HCTC for certain beneficiaries of the DSRA VEBA. (See http://www.pbgc.gov/faq/delphifaq.html )

11. The Salaried Retirees 1114 Committee formed the DSRA VEBA, and the board of the DSRA VEBA was appointed (the "VEBA Board"). Working with a third party broker of record, the Retirees' Committee obtained competitive quotes from various vendors, negotiated attractive insurance benefits (health, prescription drug, dental and vision care) with various vendors and selected a the third party administrator of the benefits. Coordinating with the IRS about rolling out information on HCTC benefit eligibility, the Retirees' Committee and the VEBA Board rolled out the benefits for salaried retirees and their dependants on September 1, 2009, within a month of the PBGC assuming responsibility for the pensions. A hardship process was also established to provide assistance to retirees with extraordinary needs.

12. Concurrent with the termination of the salaried employees' defined pension plan Delphi also terminated the hourly rate employees defined benefit pension plan and the PBGC also took over as trustee of that plan, again triggering eligibility for the HCTC for certain hourly rate employees, if they were able to, and elected to, enroll in benefits offered by the DSRA VEBA.

13. The VEBA Board voted to expand eligibility, contingent on this Court's approval, to allow the hourly Delphi retirees to take advantage of the benefit plans and lower costs offered through the DSRA VEBA while also taking advantage of the HCTC subsidy. The Court

6

subsequently enter an order authorizing the VEBA to provide benefits for hourly retirees and their dependants, intended to be eligible for the HCTC subsidies under Internal Revenue Code Section 35(e)(i)(K), and under this amended order, the Court again retained jurisdiction to modify the order in the future. (December 18, 2009 Docket 19407.)  Over 4700 retirees and dependants were enrolled in the benefits offered.  (See Docket 20617, Exhibit A.)

14.    On October 6, 2009, the Debtors substantially consummated the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession, as Modified (the "Modified Plan"), which had been approved by this Court pursuant to an order entered on July 30, 2009 (Docket No. 18707), and emerged from chapter 11 as the Reorganized Debtors.  In connection with the consummation of the Modified Plan, Delphi Corporation emerged from chapter 11 as DPH Holdings Corp.

15.    Subsequently, the Retirees' Committee filed a Final Report and Accounting based on information received from the VEBA Board (Docket 20617) but requested that the Retirees' Committee not be disbanded until the DSRA VEBA trust agreement was amended to provide for future open election of trustees by beneficiaries under procedures binding on trustees.  (Id.)

16.    At the hearing on September 24, 2010, this Court requested that prior to disbanding the Retirees' Committee, the VEBA Board adopt changes to the trust agreement to provide for beneficiary election of trustees, and directed that the parties try to reach agreement over those provisions.

17.    The Retirees' Committee and the VEBA Board reached agreement over those provisions (See Docket Nos. 20818, 20820 and 20821 ) which satisfied the Court's expressed concerns that beneficiaries have the right to select and to replace trustees and that that right continue into the future.  The revised provisions of the trust agreement called for beneficiary

7

elections of trustees, an open nomination process, and prohibited trustee amendments of the trust agreement to abrogate those provisions. In the pleading filed by the Retirees' Committee announcing that agreement, and at the November 18, 2010 hearing regarding the amendments, the parties brought to the Court's attention that they might seek the further relief set forth in this Motion to reduce the risk of future lapse of eligibility of the DSRA VEBA's benefits for the HCTC subsidy.

18. At the time the Settlement was negotiated, there were numerous uncertainties, including whether the Debtor would survive long enough in the bankruptcy to make the agreed payments, whether the pensions would be terminated and trusteed by the PBGC. (See Gloster Declaration at ¶6.) At and after the time of the Settlement, the Salaried Retirees 1114 Committee made the deliberate tactical choice to set up retiree health and related benefits through the DSRA VEBA rather than seeking to litigate that Delphi retirees should be offered lifetime COBRA continuation coverage under the COBRA statute, 29 U.S.C. § 1163(6) and 29 U.S.C. § 1162(2)(A)(iii) because of the termination of their retiree health insurance benefits during the bankruptcy case. (*Id.* At ¶9.)

**Argument**

**Because the Salaried Retirees Made the Deliberate Choice to Pursue Funding of the DSRA VEBA Benefit Instead of Litigating Eligibility for Lifetime COBRA, this Court Should Designate the DSRA VEBA Benefit as "In Lieu of" COBRA**

19. The Salaried Retirees 1114 Committee, on the advice of counsel, made that tactical decision not to pursue litigation over lifetime COBRA for numerous reasons, including that (1) this Court had already ruled that the retirees' benefits were amendable and not protected by Section 1114, and the Settlement waived the right to appeal from that ruling, so the

8

Debtor would contend the benefits were not modified by reason of a bankruptcy filing; (2) the retirees' benefits were terminated more than one year after the bankruptcy filing, and the Committee expected the Debtor to assert retirees therefore had no right to lifetime COBRA coverage as a result of the termination of their health coverage; (3) there was no budget to litigate that issue (and the Debtor strongly disputed there was any such COBRA benefit right); (4) applicable deadlines might quickly bar that litigation as a practical matter; (5) this Court might reject any such challenge because of failure to preserve the argument in the Settlement, which was a resolution of all issues; and (6) any victory on that issue would be potentially expensive to Delphi but almost certainly useless to retirees: COBRA coverage is expensive, and the one scenario where it would become most important was if the Settlement failed because the Debtor was liquidated before it paid the funds due under the Settlement. In that event, however, the liquidated Debtor would not be providing active employees with health benefits, so there would be no COBRA coverage in which to enroll.[4] See Gloster Decl. at ¶¶ 9, 10. A COBRA benefit would also be eligible for the HCTC, but would be much more expensive, and the potential beneficiaries would have to elect expensive COBRA coverage immediately, even before their pensions were terminated, or waive COBRA eligibility by failure to make that election. Currently, even though liquidation outside a confirmed plan has been avoided, the Reorganized Debtor has few employees (as the Salaried Retirees 1114 Committee understands it, only one employee, Gloster Decl. at ¶ 10) validating the Committee's tactical choice: If the Reorganized Debtor had been ordered to offer lifetime COBRA benefits to thousands of retirees, the Reorganized Debtor could simply choose not to provide healthcare benefits to its single active employee and thus avoid the obligation entirely.

---

[4] COBRA continuation coverage simply allows an eligible beneficiary to enroll in the same benefit active employees are receiving for a statutorily set period of time, by paying 102% of the benefit cost. It is extremely expensive,

9

20. Although the Salaried Retirees 1114 Committee made the deliberate tactical choice not to litigate over lifetime COBRA eligibility in favor of offering retiree health and related benefits through the DSRA VEBA, in the Settlement, there was no explicit waiver of lifetime COBRA rights, because the Salaried Retirees 1114 Committee wanted to reserve some plausible argument to deploy with the Debtor in Possession lenders in the event those lenders caused a liquidation of Delphi that prevented Delphi from making the Settlement Payments to the DSRA VEBA. Gloster Decl. ¶ 7. (There is an argument that a buyer of assets at a foreclosure sale might have successor liability to provide COBRA continuation coverage.)

21. Fortunately, that risk was avoided, as Delphi made the required payments under the Settlement and confirmed its liquidating Chapter 11 Plan. Nevertheless, now there is an advantage to retirees in making explicit the tactical choice made earlier by the Salaried Retirees 1114 Committee, in declaring the DSRA VEBA benefits in lieu of any claim of right to lifetime COBRA continuation coverage: Prior to the current provisions of the Internal Revenue Code (specifically, Internal Revenue Code Section 35(e)(1)(K), now set to expire on February 13, 2012) that make benefits provided by a VEBA eligible for the HCTC if set up by a retiree representative under Bankruptcy Code section 1114 or by order of a bankruptcy court, earlier private letter rulings by the Internal Revenue Service provided similar relief, without such a statutory basis, if the VEBA was set up during a bankruptcy by an 1114 Committee (as the DSRA VEBA was) and the benefit was provided "in lieu of COBRA continuation coverage." See PLR 200434012, 2004 PLR LEXIS 479.

22. The Retirees' Committee intended to set up the DSRA VEBA benefit instead of litigating over a right to lifetime COBRA for retirees, and in the Settlement did not

---

because it is not otherwise subsidized by the employer.

10

preserve the right to assert a lifetime COBRA right for retirees. The Settlement, however, did not contain an explicit waiver only because the Retirees' Committee wanted to preserve some leverage with the Debtor in Possession lenders if their actions caused the Settlement to be breached because of Delphi's failure to make the required payments to the DSRA VEBA.

**Requested Relief**

23. The Salaried Retirees 1114 Committee respectfully requests that this Court modify its prior orders to specify that the DSRA VEBA's benefits are in lieu of any alleged right to lifetime COBRA continuation coverage that was not offered by Delphi to retirees whose benefits were modified during the bankruptcy.

24. The Reorganized Debtor strongly insists that (A) no retirees who were not offered lifetime COBRA coverage were eligible for such coverage; (B) any arguments to the contrary were implicitly waived by the Settlement, particularly after it was consummated; (C) any arguments to the contrary may be time barred; (D) in any event, any such claims were barred by failure to assert them in the bankruptcy by filing a proof of claim; and (E) any such claims were barred by the plan, confirmation order, and discharge injunction of Bankruptcy Code section 524.

25. In light of those arguments and the illusory nature of any right to lifetime COBRA coverage under these circumstances, designating the benefit provided by the DSRA VEBA as in lieu of any right to lifetime COBRA not offered to retirees and their dependents does not meaningfully impair substantive rights of retirees. That designation will, however, document the tactical choice of the Retiree Committee not to litigate any claim to a right to lifetime COBRA in return for the funding of the DSRA VEBA, which may assist the DSRA

11

VEBA in seeking to obtain a favorable Private Letter Ruling from the Internal Revenue Service in the future in order to preserve the HCTC-eligibility of its benefits.

26. For avoidance of doubt, as provided in the attached proposed form of order, nothing in this Motion is intended to terminate any COBRA coverage in which a retiree, former employee or dependent is currently enrolled.

## Conclusion

The Retirees' Committee respectfully requests that the DSRA VEBA's benefits be designated as in lieu of any lifetime COBRA continuation coverage under 29 U.S.C. § 1163(6) and 1162(2)(A)(iii) that was not offered by the Debtors by reason of the modification of retiree benefits during the bankruptcy case.

Dated:    San Francisco, California
          May 5, 2011

FARELLA BRAUN & MARTEL LLP

By:    */s/ Neil A. Goteiner*
       Neil A. Goteiner
       Dean M. Gloster

235 Montgomery Street, 17th Floor
San Francisco, California  94104
(415) 954-4400

Attorneys for OFFICIAL COMMITTEE OF ELIGIBLE SALARIED RETIREES

10629\2519148.8

12