**Hearing Date: June 23, 2010 at 10:00 a.m.**

ILENE J. FELDMAN, ESQ., LLC
Ilene J. Feldman (IF1045)
325 Reef Road, Suite 105
P.O. Box 1639
Fairfield, CT 06825
(203) 254.2277 (phone)
(203) 256.3333 (fax)
collinsfeldman@aol.com

Attorney for Union Pacific Railroad Company

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
                                                                         :
　　In re                                                                :    Chapter 11
                                                                         :
DPH HOLDINGS CORP., et al.,                                              :    Case No. 05-44481 (RDD)
                                                                         :
　　　　Reorganized Debtors,                                              :    (Jointly Administered)
                                                                         :
-------------------------------------------------------------------------X


UNION PACIFIC RAILROAD COMPANY'S SUPPLEMENTAL RESPONSE TO
REORGANIZED DEBTORS' NOTICE OF CLAIMS OBJECTION HEARING WITH RESPECT
TO REORGANIZED DEBTORS' OBJECTION TO PROOF OF ADMINISTRATIVE EXPENSE
CLAIM NO. 17882 (UNION PACIFIC RAILROAD COMPANY)

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

　　　　Union Pacific Railroad Company ("Union Pacific"), by and through its attorneys, submits its Supplemental Response ("Supplemental Response") to Reorganized Debtors' Notice of Claims Objections Hearing with Respect to Reorganized Debtors' Objection to Proof of Administrative Expense Claim No. 17882 (Union Pacific Railroad Company). This hearing has been adjourned to June 23, 2011. In support of its Supplemental Response, Union Pacific incorporates the arguments and evidence previously submitted in its Response to Reorganized Debtors' Forty-Third Omnibus Objection Pursuant to 11 U.S.C. §503(b) and Fed.R.Bankr.P. 3007 to (1) Expunge Certain Administrative Expense (A) Severance Claims, (B) Books and Records Claims, (C) Duplicate Claims, (D) Equity Interests, (E) Prepetition Claims, (F) Insufficiently Documented Claims, (G) Pension, Benefit, and OPEB Claims, (H) Workers' Compensation Claims, and (I)

Transferred Workers' Compensation Claims, (II) Modify and Allow Certain Administrative Expense Severance Claims, (II) Modify and Allow Certain Administrative Expense Severance Claims, and (III) Allow Certain Administrative Expense Severance Claims (the "Objection") and the accompanying Affidavit of Michael Francis dated February 16, 2010 submitted as Exhibit A thereto ("Francis Affidavit). For those reasons and for the reasons more fully enumerated herein and in the Supplemental Affidavit of Michael H. Francis dated May 2, 2011 ("Exhibit 1") attached hereto as Exhibit 1, Reorganized Debtors' Objection as to Union Pacific's Claim should be overruled and Union Pacific's Administrative Claim should be paid in full.

Background

1. As previously noted, from October 8, 2005 through June 1, 2009, Union Pacific provided Reorganized Debtors and/or its predecessor companies (hereinafter collectively referred to as "Reorganized Debtors") with services valued at $81,842.00 for various transportation services and accessorial rail transportation services relating to shipments of auto parts and/or other items being transported from various points in the United States to Mexico. Union Pacific filed a timely filed a Proof of Claim in the amount of $81,842.00 pursuant to the Notice of Bar Date for Filing Proofs of Administrative Claims dated June 16, 2009.

2. The Reorganized Debtor's incurred the obligations to Union Pacific after the petition date of October 8, 2005 and before June 1, 2009, and such obligations were due and owing and have not been paid. The specific services in the total amount of $81,842.00 were clearly outlined and described in the Francis Affidavit previously submitted in February 2010. See Francis Affidavit, ¶ 10 and Exhibit A thereto.

3. In its Objection dated January 22, 2010, Reorganized Debtors categorized Union Pacific's Claim in its "Books and Records Claims" category and sought to expunge Union Pacific's Claim on this basis. See, Objection at Section D, ¶¶ 20-23, pp. 9-10. and Objection, Schedule B, p. 55.

4. Specifically, Reorganized Debtors claimed in the Objection relating to "Books and Records Claims" that "certain Claims filed against the Debtors assert liabilities or dollar amounts that are not owing pursuant to Reorganized Debtors' books and records, in most cases because such Administrative

Claims have been satisfied in the ordinary course of business… Accordingly, the Reorganized Debtors believe that the parties asserting Books and Records Claims are not creditors of the Debtors."

5. The Objection did not make any specific allegations that the services were not provided by Union Pacific nor did the Objection contest in any way the validity or timeliness of any of the invoices set forth in Union Pacific's Claim.

<u>Union Pacific's Response to Reorganized Debtors' Forty-Third Omnibus Objection and the Francis Affidavit dated February 16, 2010 (collectively "Union Pacific's Response.)</u>

6. Union Pacific's Response clearly demonstrated that its claim was properly executed and timely filed. Moreover, Union Pacific's Response established prima facie evidence that the Claim and the underlying amounts set forth therein were valid.

7. Union Pacific's Response showed that the Claim was not been "satisfied in the ordinary course of business". The books and records of Union Pacific reflect and reiterate that the Reorganized Debtors have not paid the amount specified in Union Pacific's Claim. Francis Affidavit, ¶¶ 12-14.

8. No evidence has ever been produced or proffered showing that Union Pacific's Claim has been paid in whole or in part.

9. In fact, The Francis Affidavit and Exhibit A thereto unequivocally demonstrates that the $81,842 set forth in Union Pacific's Claim were for transportation and accessorial services provided to Reorganized Debtors between October 8, 2005 and June 1, 2009, that Union Pacific's Claim has not been paid in whole or in part, and that the entire sum of $81,842.00 is outstanding and is due and owing to Union Pacific. Francis Affidavit, ¶¶ 6-7 and 12-14.

Reorganized Debtor's Notice of Claims Objection Hearing Request and Statement of
<u>Disputed Issues With Respect to Union Pacific's Administrative Expense Claim Number 17882</u>

10. In Reorganized Debtor's Notice of Claims Objection Hearing Request and Statement of Disputed Issues with Respect to Union Pacific's Administrative Expense Claim Number 17782, Reorganized Debtor has set forth two new issues, clearly abandoning its prior claim that the charges were satisfied in the ordinary course of business. First, Reorganized Debtors now claim to dispute the amounts asserted in the Claim, without any supporting or specific invoices, services or any proof or other evidence in support of its position. Second, Reorganized Debtors claims that Claimant "failed to

submit any invoices with respect to the Claim to the Reorganized Debtors within twelve months after delivering the subject goods", which it further erroneously asserts is the prevailing industry standard.

Union Pacific has properly established the basis for the full amount of its Administrative Claim.  There is no valid basis in support of Reorganized Debtors' <u>attempt to dispute any of the amounts asserted in the Claim.</u>

11. In its response to Reorganized Debtors' Forty-Third Omnibus Objection, Union Pacific provided the data and documentation summarizing its charges to the Reorganized Debtors and provided bills for each of the charges. Exhibit 1, ¶8, Copies of each of the invoices were previously attached as Exhibit B to the Francis Affidavit submitted by Union Pacific in February 2010.  A spreadsheet specifying each invoice and the salient information including the nature of the charges was also included with the Francis Affidavit as Exhibit A  This spreadsheet identified the charges relating to the services performed, which included despacho pevio, demurrage, switch, special switch, and diversion.  See Exhibit A to the Francis Affidavit.

12. There is a mandatory procedure for disputing bills and  no written dispute was ever asserted by the Reorganized Debtors for any of the invoices provided in Exhibit B to the Francis Affidavit dated February 16, 2010. Exhibit 1, ¶ 10.

13. Fifteen of the invoices related to despacho previo charges caused by document delay and total $24,875. Exhibit 1, ¶10.  These invoices are identified by either the words "Despacho Previo" or "for Demurrage Charges at Rates per Published Tariffs" near the top of each invoice.  Exhibit 1, ¶10.  These charges were assessed because the customer did not file the necessary documents to timely clear customs, which resulted in Union Pacific holding the railcars until this was accomplished, specified from the Start Date to the End Date. Exhibit 1, ¶10.   These charges are authorized by Tariff Authority UP 6004 – Item 8380. Exhibit 1, ¶10.   A copy of this tariff provision is attached hereto as Exhibit A to Exhibit 1.

14. Union Pacific released these railcars without requiring prepayment of applicable Document Delay charges based upon the Reorganized Debtors agreement to pay such charges, as evidenced by the following verbiage on these Invoices "THIRD PARY LETTER FROM DELPHI PER AUTHORITY

OF MIRNA GARZA." Attached to Exhibit 1 as Exhibit B is an example of the authority provided by the Reorganized Debtors to Union Pacific. Exhibit 1, ¶10.

15. All of the bills relating to switch charges in the amounts of $540, $570 and $585 (or multiples thereof) are for switch charges to remove a railcar from a train for inspection by Customs or because the required customs documents were not completed by the Reorganized Debtors and the railcars could not be moved into Mexico. Exhibit 1, ¶11. "Switching" means that a Union Pacific crew separated and moved these railcars using a Union Pacific locomotive. Exhibit 1, ¶11. These charges are authorized by Tariff Authority UP 6004 – Item 8505. Exhibit 1, ¶11. A copy of this tariff provision is attached hereto as Exhibit C to Exhibit 1. Exhibit 1, ¶11.

16. All of the $345 bills are for diversion of railcars requested by the customer. A diversion is a request to change the destination of a railcar, which has already been tendered for rail movement. Exhibit 1, ¶12. These charges are authorized by Tariff Authority UP 6004 – Item 9170. Exhibit 1, ¶12. A copy of this tariff provision is attached hereto as Exhibit D to Exhibit 1. Exhibit 1, ¶12.

17. All of the bills for $115 are for intra-plant switches at Fairfax, Kansas requested by the customer. Exhibit 1, ¶13. The "Additional Information" box of each Invoice references the details of each requested switch. Exhibit 1, ¶13. These charges are authorized by Tariff Authority UP 6004 – Item 7041. Exhibit 1, ¶13. A copy of this tariff provision is attached hereto as Exhibit E to Exhibit 1. Exhibit 1, ¶13.

18. Invoice No. 226313922 in the amount of $1,400 related to charges for a "special switch" requested by the Reorganized Debtors on August 7, 2007. Exhibit 1, ¶14. This switch was performed on August 10, 2007 and was billed four days later on August 14, 2007. Exhibit 1, ¶14. This charge was authorized by Tariff Authority UP 6004 – Item 7041. Exhibit 1, ¶14. A copy of this tariff provision is attached hereto as Exhibit F to Exhibit 1. Exhibit 1, ¶14.

19. Invoices Nos. 23278962 and 234857653, each in the amount of $350, were for "No Bills" or charges for releasing a railcar without providing forwarding instructions. Exhibit 1, ¶ 16. These charges were authorized by Tariff Authority UP 6004- Item 35. Exhibit 1, ¶16. A copy of this tariff provision is attached hereto as Exhibit G to Exhibit 1. Exhibit 1, ¶16.

The evidence produced by Union Pacific clearly supports its entitlement to the Claim. Although Reorganized Debtor has not set out any specifics regarding its defenses, even though this is the second round of briefing with respect to this issue, Union Pacific will set out its position with respect to what may be Reorganized Debtor's third submission on this issue.

20. While Reorganized Debtor has failed to produce any specifics discussion about its alleged defenses for nonpayment in its moving papers, as required by the procedural rules of this Court, Union Pacific will address the specious and meritless arguments that Reorganized Debtors may proffer at the time of the hearing, which it has failed to raise on its initial papers filed in the winter of 2010 in its Omnibus Objection and in this round of briefing with regard to the validity of Union Pacific's Administrative Expense Claim.

21. On April 14, 2011, Union Pacific received a spreadsheet from Reorganized Debtors specifying the alleged defenses for nonpayment for the each invoice ("Reorganized Debtors' April 14, 2011 Spreadsheet"). Exhibit 1, ¶ 18. A copy of Reorganized Debtors' April 14, 2011 Spreadsheet is attached hereto as Exhibit F to Exhibit 1.

22. The Reorganized Debtor's April 14, 2011 Spreadsheet asserts four bases for Reorganized Debtors' alleged reasons for the denying payment of the administrative expense. Exhibit 1, ¶ 19. For 61 invoices with a total amount at issue of $44,672.00 it states "Bill to CISCO is missing". Exhibit 1, ¶ 19. For 26 invoices with a total amount at issue of $21,195.00 it states "Consignee is Delphi and terms on the invoice are 'prepaid'". Exhibit 1, ¶ 19. For 20 invoices with a total amount at issue of $6,640.00 it states "Did not submit entire BOL". Exhibit 1, ¶ 19. For 3 invoices with a total amount at issue of $5750, it states "invoice not found in Trendset". Exhibit 1, ¶ 19.

23. With respect to the 61 invoices, each one of the invoices apprises Reorganized Debtors of the origin and destination of the railcars. Exhibit 1, ¶ 20. Upon information and belief, the CISCO codes changed and Union Pacific was not given a valid list of CISCO codes until July 23, 2009, after which all of the invoices were resubmitted. Exhibit 1, ¶ 20.

24. Even if a CISCO code was not provided by Reorganized Debtors, this is not a valid excuse for nonpayment of charges for services rendered and was not a condition precedent to payment Exhibit 1, ¶ 20.

25. With respect to the 26 invoices in which Reorganized Debtors claim that the freight charges were "prepaid", none of the services in the instant claim were prepaid. "Prepaid" on the bills means that the originating railroad does the billing for the services. Exhibit 1, ¶ 22. None of the services were provided on a cash advance basis. Exhibit 1, ¶ 22. The industry usage of "prepaid" is prescribed in Uniform Freight Classification 6000-M, Rule 62 and is incorporated into Tariff Authority UP6004 – Item 10 Exhibit 1, ¶ 22. A copy of Rule 62 and the Tariff are attached hereto as Exhibit I to Exhibit 1. It is uncontroverted that Union Pacific was not paid in advance for any of the charges at issue in this dispute. Exhibit 1, ¶ 22. There has been no evidence produce by Reorganized Debtors showing that any of the charges were paid.

26. With respect to the 20 invoices where Reorganized Debtors claim that no BOL (bill of lading) was submitted, each of these invoices were for diversion of railcars or changing the destination to a different location or cutting railcars out of the consist of a train. Exhibit 1, ¶ 23. No bills of lading were needed – these railcars were billed on the originating railroad CSX, not Union Pacific. Exhibit 1, ¶23. Moreover, to the extent that charges were for cutting out the cars from the consist of the train, this was done because the customs documentation were not completed so that the shipments could cross from the United States into Mexico. Exhibit 1, ¶ 23.

27. With respect to the 3 invoices which Reorganized Debtors claim were not found in Trendset, Trendset did not become Reorganized Debtors' payment agent until March 1, 2009, well after the date that most of the services at issue were provided. Exhibit 1, ¶ 24.

28. As the foregoing reflects, there is no valid basis for denial of the administrative expense. Reorganized Debtors, having had 2 previous opportunities, in the Forty-Third Omnibus Objection and in the Notice of Hearing, has failed to provide any credible or proper basis for denying this Claim.

There is no basis for Reorganized Debtors' Contention
that the billing was not timely. All of the invoices were billed within
<u>the time prescribed in 49 U.S.C. §11705</u>

29. Each Invoice was placed in the United States mail on that Statement Date identified at the time of each Invoice in accordance with Union Pacific's ordinary business practices. Exhibit 1, ¶9.

30. With the exception of Invoice No. 233071949, discussed <u>infra</u> at Paragraph 31, each invoice was submitted to the Reorganized Debtors shortly after the services were performed and well within the one year time which Reorganized Debtors alleges is the proper time for submission. See Exhibit 1, ¶¶ 10-16.

31. With regard to Invoice No. 233071949, this is the only invoice beyond the twelve month period of time which Reorganized Debtors allege is the proper time for submission, which Union Pacific expressly denies is the appropriate time. Invoice No. 233071949 is for fuel surcharge in the amount of $3,997. Exhibit 1, ¶ 17. This invoice reflects a service dated of January 29, 2008 and a Statement Date of May 28, 2009. Exhibit 1, ¶17. This clearly establishes that the invoice was submitted within the three year period from the date that services were provided to submitting billing established in 49 U.S.C. §11705. See also, Exhibit 1, ¶ 9.

32. In any event, the invoices themselves attached as Exhibit A to Francis Affidavit dated February 16, 2010, clearly demonstrate that the billing was all done contemporaneously with the provision of services, all but one invoice was submitted before a one year period. Invoice No. 233071949 was billed within 16 months of service, well within the three year statute of limitations.

33. Consequently, Reorganized Debtor's contention is without merit with respect to the facts for all but one of the invoices and with respect to that invoice, it is clear that Invoice No. 23307949 invoice was timely as required by the applicable federal statute, 49 U.S.C. §11705.

<u>Conclusion</u>

34. The well established precedent coupled with the evidence presented by Union Pacific and the complete lack of evident submitted by Reorganized Debtors clearly demonstrates that Union Pacific's Claim should be given administrative expense priority status as prescribed by 11 U.S.C. §503. Union Pacific has submitted undisputed evidence that the charges were all actual and necessary expenses of the Reorganized Debtors' estate and that the services provided by Union Pacific were vital and critical to the interstate and international rail transportation of auto parts and other items into Mexico, which enabled the Reorganized Debtors to continue its business operations and preserved the estate. There is no issue as presented as to the timeliness of the bills. Each of the

invoices were submitted within the time prescribed in 49 U.S.C. §11705 and with the exception of one bill, all were submitted contemporaneously with the services and within the one year time erroneously claimed by Reorganized Debtor. Consequently, Union Pacific Claim in the amount of $81,842 should be paid in full.

WHEREFORE, UNION PACIFIC respectfully requests that this Court enter an Order: (1) overruling the instant Objection as to Union Pacific, and (2) finding that Union Pacific's Claim in the amount of $81,842.00 is a valid administrative expense.

Dated:  May 23, 2011

By_____/s/ Ilene J. Feldman_____
Ilene J. Feldman, Esq. (IF1045)
ILENE J. FELDMAN, ESQ., LLC
325 Reef Road, Suite 105
P.O. Box 1639
Fairfield, CT 06825
(203) 254.2277 (phone)
(203) 256-3333 (fax)
Email: collinsfeldman@aol.com

Attorneys for UNION PACIFIC RAILROAD COMPANY

# Exhibit 1

(Supplemental Affidavit of Michael H. Francis dated May 2, 2011)