Hearing Date and Time: June 21, 2011, 10:00 a.m. Eastern Time

BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Telephone: (312) 357-1313
Facsimile: (312) 759-5646

Deborah L. Thorne (admitted *pro hac vice*)
Kathleen L. Matsoukas (KL-1821)
Email: deborah.thorne@btlaw.com
       kathleen.matsoukas@btlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| DELPHI CORPORATION, *et al.*, | No. 05-44481 (RDD) |
| Reorganized Debtors. | Jointly Administered |
| DELPHI CORPORATION, *et al.* | |
| Plaintiffs, | Adv. Pro. No. 07-2348 |
| -against- | |
| JOHNSON CONTROLS, JOHNSON CONTROLS BATTERY GROUP, JOHNSON CONTROLS GMBH & CO. KG and JOHNSON CONTROLS, INC. | |
| Defendants. | |

**SUR-REPLY OF JOHNSON CONTROLS, JOHNSON CONTROLS BATTERY GROUP, AND JOHNSON CONTROLS, INC. IN FURTHER OPPOSITION TO PLAINTIFF'S <u>MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT</u>**

Defendants Johnson Controls, Johnson Controls Battery Group, and Johnson Controls, Inc. (each a "**Defendant**," and collectively "**JCI**"), by their undersigned counsel, as their sur-reply brief in further opposition to Plaintiff's motion for leave to file a first amended complaint (the "**Motion**"), respectfully state as follows:

## ARGUMENT

1. Plaintiff, in its brief joinder (*see* Adv. Pro. Doc. No. 48, referred to herein as the "**Joinder**") in response to Defendants' opposition papers, has failed to substantively address *any* of Defendants' arguments as to why the proposed amended complaint against JCI is insufficient to state a claim against JCI under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S. Ct. 1937 (2009). Contrary to this Court's specific instructions on December 17, 2010, Plaintiff has not addressed any of the specific arguments made by JCI. In response to JCI's objection brief (*see* Doc. No. 20892, referred to herein as the "**Objection**"), in which Defendants detailed why the proposed first amended complaint in the JCI adversary proceeding ("**FAC**") is deficient – including but not limited to the failure of the amended complaint to identify the antecedent debt with specificity sufficient to give JCI notice – Plaintiffs filed only a two-page joinder in the omnibus reply brief, stating that the omnibus brief filed by the Butzel firm "responds to these same arguments" (*see* Doc. No. 21096, referred to herein as the "**Omnibus Reply**"[1]). The Omnibus Reply in fact does not address JCI's *specific* arguments at all, but merely asserts generally that antecedent debt has been adequately pled in the complaints to which the Omnibus Reply was applicable.[2]

---

[1] The Omnibus Reply was not filed in the JCI adversary proceeding, Adv. Pro. No. 07-2348.

[2] Most seriously, the Omnibus Reply argues that it has "surpassed the requirement to plead 'antecedent debt' with respect to each Transfer. Specifically, each of the PACs includes the following allegations regarding the existence, 'nature,' and 'amount' of the antecedent debt owed to each defendant. . . ." The allegations then contain statements to the effect that Plaintiff entered into certain purchase agreements with the Defendant. Nowhere in the complaint is there any allegation specifically identifying a purchase agreement between Delphi and JCI. JCI is

2. The fact remains that Exhibit 2 to the FAC (like many of the Exhibits filed by Plaintiff in support of their antecedent debt allegations against many defendants)[3] does not contain *any* information that puts JCI on notice of the antecedent debt on which Plaintiff bases its claims. The information contained in Exhibit 2 is meaningless, as the numbers appear to be internal Delphi numbers and are not numbers that allow JCI to identify any goods or services rendered to Plaintiff or more importantly whether the alleged transfers were payment of antecedent debt. Plaintiff might as well have left the columns addressing antecedent debt blank. Moreover, Plaintiff has failed to provide any evidence of antecedent debt on an informal basis to JCI, despite JCI's repeated requests for such information. JCI (and the other defendants facing a dearth of factual support in the complaints for any allegations of antecedent debt) must conclude that no such facts exist.

3. Accordingly, Plaintiff's motion to amend must be denied.

## I.  NEITHER THE OMNIBUS REPLY BRIEF NOR THE JOINDER REPLY ADDRESSES JCI'S ARGUMENTS WITH RESPECT TO ANTECEDENT DEBT

4. Despite that the Togut firm currently represents the Plaintiff in only two remaining adversary proceedings, including the proceeding against JCI, Plaintiff could not be bothered to file a substantive reply brief addressing JCI's arguments directly, choosing instead to rely on the Omnibus Reply. The Omnibus Reply, however, does not address JCI's arguments specifically, nor would it, given that the JCI adversary proceeding is not one in which Butzel is involved.

---

unaware of any purchase agreement, supply agreement or other agreement with Delphi under which Delphi purchased product or inventory from JCI. Moreover, Plaintiff has failed to identify any specific agreement that might be the basis of specific antecedent debt which may be related to the specific transfers alleged.

[3] Concurrent with the filing of this sur-reply, JCI and the other defendants in the various adversary proceedings are submitting a chart to the Court's Chambers which lists the currently-pending adversary proceedings of which the defendants are aware and the corresponding live issues in each, in order to provide the Court with some context regarding the global issues.

5. In the Objection, JCI argued that Exhibit 2 to the proposed FAC in the JCI adversary proceeding failed to follow this Court's instructions on July 22, 2010[4] by simply not providing sufficient facts to support the allegations that the transfers at issue were made in payment of antecedent debt. As set forth in the Objection, Exhibit 2 lists only numbers that are meaningless to the JCI Defendants, including "Document Numbers," "Bill of Lading" numbers,[5] and "Check Numbers" that the JCI Defendants can only surmise are internal Delphi numbers. Although Exhibit 2 lists a "Shipment/Invoice Date" nothing in the exhibit links the Shipment/Invoice Date to the specific amount alleged to be transferred or to a specific invoice number. This Court and JCI simply are required to make a leap of faith that somehow the unidentifiable document numbers are related to the alleged transfers and are somehow evidence supporting the allegation of payment of antecedent debt, similar to if there had been no numbers supplied at all, and Plaintiff simply alleged, without any factual detail, that antecedent debt existed for the cited transfers.

6. The JCI Defendants have no record of any of these numbers, and cannot use them to identify the transfers or any antecedent debt, because the numbers have no meaning and no

---

[4] This Court stated during the hearing on July 22, 2010 the following:

In a similar context where, as here, the complaint did identify the date of the transfer and the amount of the transfer, bankruptcy courts, including the court in this district have similarly concluded as I do now that the preference complaint does not pass muster under Rule 8. See In re Hydrogen, LLC, 2010 WL 1609,56 (Bankr. S.D.N.Y., April 20, 2010); In re McLaughlin, 415 B.R. 23 (Bankr. D.N.H. 209); In re Caremerica Inc., 409 B.R. 737 (Bankr. E.D.N.C. 2009).

I've stated during oral argument why I believe all three of these elements of the claim need to be pled with more clarity in the context. In particular, while it may seem at first glace that anyone receiving money has to receive it for some purpose and therefore it's reasonable to infer in the context that that purpose is to pay an antecedent debt, that is not always the case. Debtors may pay COD or in advance. And in addition, in identifying the debt, a complaint may therefore also enable a debtor to show that the creditor, or the transferee, rather, received more than it would otherwise in a Chapter 7 case which would, in the case of a contract that had been subsequently assumed, be a basis for dismissing the claim.

See Transcript of July 22, 2010 Hearing ("July Tr."), at 276 - 277.

[5] "Bills of Lading" may indicate delivery of certain items, but may include pre-paid items or cash on delivery (COD) transfers. JCI cannot determine, based on the allegations of the FAC, what invoices or purchase orders are related to the alleged deliveries.

3

reference in the JCI Defendants' accounting systems. Similarly, Plaintiff has not provided any specific factual information related to any requirements contracts with JCI, and JCI is unaware of any requirements contracts between JCI and Plaintiff. Although, the JCI Defendants have repeatedly requested that Delphi provide them with documentation, including purchase orders, invoices, requirement contracts or other documents that would show antecedent debt, Delphi has refused to – or is unable to – provide this information.

7.    The Omnibus Reply does not contain any arguments contrary to JCI's assertion that the numbers are meaningless. Indeed, the Omnibus Reply concedes that, under *Official Committee of Unsecured Creditors of Hydrogen, L.L.C. (In re Hydrogen, L.L.C.)*, 431 B.R. 337, 345-46 (Bankr. S.D.N.Y. 2010), the complaint "must allege sufficient facts to put defendants on fair notice of the claims at issue." (Omnibus Reply at 4.) Here, Defendants do not have notice of the claims against them because, without more information than that provided in Exhibit 2 – information that has been repeatedly denied to them by Plaintiffs – Defendants cannot identify the basis for the antecedent debt. Specifically, at paragraph 37 on page 21 of the Omnibus Reply, the Plaintiff claims to have "exceeded the 'antecedent debt' pleading standard by linking nearly every Transfer to a specific invoice, bill of lading, or purchase order number associated with the defendant." The Omnibus Reply does not address Plaintiff's argument that, although Plaintiff lists bill of lading numbers, those numbers are meaningless to JCI as they are *internal Delphi numbers* of which JCI has no record. Nor does JCI have any record of specific materials delivered and whether they have any relevance to the alleged transfers. Similarly, neither the "Check Numbers" nor the "Document Numbers" listed have any relevance to any information that links specific debt to the alleged transfers.

4

8. Plaintiff's two-page Joinder also fails to meaningfully address JCI's arguments regarding antecedent debt. The Joinder makes only one specific argument with respect to JCI's position, and that is in footnote 2, in which Plaintiff appears to assert that JCI's argument with respect to the check numbers identified in the Exhibits to the FAC is somehow inconsistent with its argument that the numbers are meaningless. Plaintiff's somewhat incoherent argument is meritless. In its opposition, JCI pointed out that Exhibit 1 and Exhibit 2 are internally inconsistent, because Exhibit 1 provides that certain of the transfers to the JCI defendants were made by check, and others were made by "EFT" or "electronic funds transfers," while Exhibit 2 states check numbers for each and every transfer. (Objection at 17.) Plaintiff now appears to assert that the heading of "Check Number" in Exhibit 2 is incorrect, because some are checks and some are electronic transfers. (Joinder at 2, n.2.) Whether the numbers are check numbers or wire transfer identification numbers is wholly irrelevant to JCI's argument that the numbers are meaningless – JCI merely pointed out this inconsistency as further evidence that Plaintiff has not (and apparently, cannot) provide JCI with invoices or other documentation identifiable to JCI in order to put JCI on notice of the antecedent debt. Most importantly, at no time has Plaintiff alleged any document number or attached any document which identifies the specific alleged transfer in such a manner that JCI could respond or be at issue on the matter of antecedent debt.

9. The numbers in Exhibit 2 are internal Delphi numbers and are unidentifiable, at least to JCI. For all JCI knows, they could be numbers that correspond to other goods or services received by Plaintiff from some other vendor, or numbers that Plaintiff pulled out of thin air. Implicit in the requirement of "notice" and "plausibility" under *Iqbal* and *Twombly* is that the *defendant* must be given notice of plausible claims against it – in other words, the facts must be consequential to the defendant. Without additional information, including actual invoices

5

attached to the FAC or other documentation showing what the numbers in Exhibit 2 mean, the FAC does not put JCI on notice of the claims against it and, thus Plaintiff has not properly alleged a claim under section 547(b). *In re Hydrogen, L.L.C.*, 431 B.R. at 353 n.8 (stating that the pleadings must "give the defendant fair notice of what the plaintiff's claim is") (citing F.R.C.P. 8(a) and *In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721, 735 (Bankr. S.D.N.Y. 2008)).

II. **PLAINTIFF'S FAILURE TO ADDRESS THE ANTECEDENT DEBT POINT WARRANTS DISMISSAL IN LIGHT OF THE COURT'S PRIOR PRONOUNCEMENTS.**

10. At the hearing on July 22, 2010, the Court made clear that Plaintiff had not sufficiently pled antecedent debt in its initial complaints, and was under an obligation to replead its claims with sufficient particularly so as to put the Defendants on notice of the specific antecedent debt that served as the basis for Plaintiff's recovery. *See* Transcript of July 22, 2010 Hearing ("July Tr."), at 275-278.

11. Then, at the hearing in December, this Court specifically instructed the Plaintiffs to, in their reply briefs, respond to the individual points made by each defendant. See Transcript of December 17, 2010 Hearing, at 41-43.

12. Indeed, the only argument the Plaintiff makes in the Omnibus Reply in reference to the issue of whether antecedent debts existed related to the transfers is in paragraph 36 of the Omnibus Reply. In paragraph 36, the Plaintiff argues that it "plausibly" establishes the existence of antecedent debts by <u>alleging</u> in the proposed amended complaints that: (A) Plaintiff had an agreement with the preference defendant; (B) the Transfers were initiated pursuant to the Plaintiff's automated payment system; and (C) the preference defendant previously shipped goods (or provided services) to the Plaintiff.

13. Here, the Plaintiff in the Omnibus Reply merely attempts to argue that alleging the mere existence of a transfer to a preference defendant, is a "plausible" allegation that the

6

transfer was made for an antecedent debt. This position was rejected by this Court at the July 22, 2010 dismissal hearing on this matter when the Court stated:

> I've stated during oral argument why I believe all three of these elements of the claim need to be pled with more clarity in the context. In particular, while it may seem at first glance that anyone receiving money has to receive it for some purpose and therefore it's reasonable to infer in the context that that purpose is to pay an antecedent debt, that it not always the case. Debtors may pay COD or in advance. And in addition, in identifying the debt, a complaint may therefore also enable a debtor to show that the creditor, or the transferee, rather, received more than it would otherwise in a Chapter 7 case which would, in the case of a contract that had been subsequently assumed, be a basis for dismissing the claim.

Transcript of July 22, 2010 Hearing ("July Tr."), at 277.

14.     Plaintiff has had ample opportunity to prepare and file a complaint which complies with the standard set forth in *Iqbal* and *Twombly*, and to respond to the various arguments by the Defendants as to why those amended complaints are not sufficient. In the overwhelming number of adversary proceedings that are still pending, the Plaintiff has failed to respond to the specific objections related to antecedent debt which are an essential element of its *prima facie* case. Attached hereto as Exhibit A is a chart reflecting the Plaintiff's failure to respond specifically to the objections of approximately 50 of the defendants to the antecedent debt allegations made by the Plaintiff.

15.     The fact is, despite that nearly four years have passed, Plaintiff still cannot plead the element of antecedent debt "with more clarity in the context." July Tr. at 277. Plaintiff's failure to do so, in spite of its multiple "bites at the apple," warrants dismissal.

16.     Indeed, Judge Gonzalez recently held in *The Liquidation Trust v. Daimler AG (In re Old Carco LLC)*, Adv. No. 09-00505 (AJG), 2011 WL 1833244, at *1 (Bankr. S.D.N.Y. May 12, 2011), that the plaintiff's failure to comply with *Iqbal* and *Twombly* requirements with

7

respect to certain counts, despite having been given the chance to file an amended complaint after a motion to dismiss had been granted, warranted dismissal of those counts with prejudice. *C.f. RBSF LLC v. Franklin (In re Franklin)*, 445 B.R. 34, 49 (Bankr. D. Mass 2011) (denying a delayed, second motion to amend where the allegations in an amended complaint failed to cure the deficiencies associated with the original complaint and were filed late). The facts here are even more compelling than those in the *Daimler AG* case as the complaints in this case were filed in *2007* and despite the passage of nearly four years, the Plaintiff has not been able to state facts sufficient to state a cause of action to support its *prima facie* case. For that reason, the Motion for Leave to Amend should be denied with prejudice in its entirety.

### III.    JOINDER WITH OTHER SUR-REPLIES

For the convenience of the Court, JCI has respectfully limited this sur-reply to specific issues related to its objection to the Reorganized Debtors' motion for leave to file its amended complaint. JCI respectfully joins with and incorporates all arguments raised by the other preference defendants' sur-replies.

### CONCLUSION

For the reasons set forth herein, Defendants respectfully request that this Court deny Plaintiff's motion to file the proposed amended complaint with prejudice in its entirety, and request all further relief as this Court deems proper and just.

Dated:  June 13, 2011                                    Respectfully submitted,

                                                         BARNES & THORNBURG LLP

                                                         By:    /s/Kathleen L. Matsoukas
                                                               Deborah L. Thorne (admitted *pro hac vice*)
                                                               Kathleen L. Matsoukas (KL-1821)
                                                               One North Wacker Drive, Suite 4400
                                                               Chicago, Illinois 60606-2833

Telephone: (312) 357-1313

Counsel to Johnson Controls, Johnson Controls Battery Group, and Johnson Controls, Inc.