**Hearing Date and Time:  June 21, 2011 at 10:00 a.m.**

Shalom Jacob
Zachary D. Silbersher
LOCKE LORD BISSELL & LIDDELL LLP
Three World Financial Center
New York, New York 10281-2101
Tel:  (212) 415-8600
Fax: (212) 303-2754

-and-

Courtney E. Barr (CE 7768)
LOCKE LORD BISSELL & LIDDELL LLP
111 South Wacker Drive
Chicago, Illinois  60606
Tel:  (312) 443-0700
Fax: (312) 443-0336

*Counsel for Methode Electronics, Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| DPH HOLDINGS CORP., et al., | Case No. 05-44481 [RDD] |
| Reorganized Debtors. | (Jointly Administered) |

-------------------------------------------------x

| | |
|---|---|
| DELPHI CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Adv. Pro. No. 07-02432 [RDD] |
| METHODE ELECTRONICS, INC. | |
| Defendant. | |

-------------------------------------------------x

**METHODE ELECTRONICS, INC.'S SUR-REPLY IN SUPPORT OF ITS
OBJECTION TO THE REORGANIZED DEBTORS'
<u>MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS</u>**

Defendant Methode Electronics, Inc. ("**Methode**") submits this sur-reply in further support of its objection (the "**Objection**") to the Reorganized Debtors'[1] Motion for Leave to File Amended Complaints (the "**Motion**").  On January 28, 2011, the Reorganized Debtors filed their Omnibus Reply in Further Support of Motions for Leave to File Amended Complaints (the "**Reply Motion**"), to which this sur-reply responds.

    A.    **The Amended Complaint Fails to Sufficiently Plead the Alleged Transfers Were Made on Account of Debts Specifically Owed By DAS**

A recent case, *KHI Liquidation Trust v. Wisenbaker Builder Services, Inc. (In re Kimball Hill, Inc.)*, where the Court held that the complaint failed to state a "plausible" avoidance claim, has facts strikingly to this case.  No. 10A00842, 2011 WL 2182429 (Bankr. N.D. Ill. Jun. 3, 2011),

In *Kimball Hill*, similar to Delphi's bankruptcy, the bankruptcy included numerous affiliates, including KHH Texas, KHH Houston, KHH Dallas and so forth.  *Id.* at *1.  And similar to the Reorganized Debtors' PAC, the preference complaint in *Kimball Hill* alleged in conclusory manner that the allegedly preferential transfers were made on account of antecedent debts owed *only* by the named plaintiff, which was KHH Texas.  *Id*. at *12.  But the complaint also alleged that the transfers were on account of services provided to other debtor affiliates—but not actually to KHH Texas.  *Id.*  The Court found that these allegations contradicted the conclusory allegation that the transfers were on account of debts owed by KHH Texas.  *Id.*

The Court relied on the United States Supreme Court in *Twombly*, which expressly clarified that to allege "plausible" liability does not simply mean alleging something that is *possible*, but it must cross the line "between factually neutral and the factually suggestive."  *Id.*

---

[1] Capitalized terms used herein but not defined shall have the same meaning given to them in the Motion.

1

at 10 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1966 n.5, 167 L.E.2d 929 (2007)). The Court thus concluded that in light of the allegation that the work was provided to debtor affiliates, but not to KHH Texas, "the current allegations are not suggestive of an antecedent owed by KHH Texas." *Id.* at *12.

The same reasoning applies to the allegations by the Reorganized Debtors. For one thing, the PAC fails to even allege in conclusory fashion that the Transfers were for debts owed *by* DAS—it alleges only that they were debts owed *to* Defendant. (PAC, ¶ 22). Numerous additional allegations contradict the suggestion that the debts were owed *by* DAS. The PAC alleges that Methode supplied goods "for the benefit of the Reorganized Debtors"—not specifically for the benefit of DAS. (PAC, ¶ 15). The PAC even fails to recite that DAS is one of the Reorganized Debtors, and so on its face, there is no allegation that the goods were even shipped for the benefit of DAS. Indeed, in its Reply Motion, the Reorganized Debtors admit that "Plaintiff also used its accounts payable system to pay both its own obligations *and obligations initially incurred by other Reorganized Debtors*." (Reply Motion, p. 13, emphasis added). The PAC also states that DAS "performed, among other things, accounting and payment functions for the Reorganized Debtors . . . ." (Amended Complaint, ¶ 12). Combined, these allegations plausibly suggest that DAS accounted for payment of debts owed by the Reorganized Debtors—not that the alleged Transfers were for debts owed specifically by DAS.

The PAC does state that: "Plaintiff entered into certain purchase agreements (the 'Agreements') with [Methode] for the supply of various parts to the Reorganized Debtors," (PAC, ¶ 13). However, as the Supreme Court indicated in *Twombly*, this is a "neutral" fact, not a fact that is "suggestive" that the debts were owed by DAS. Indeed, in *Kimball Hill*, the plaintiff made a similar allegation. It alleged that it issued "certain work orders" for the work provided to

2

the other debtor affiliates, and for this reason, it adequately alleged it owed the debt. The Court disagreed:

> The allegation that 'certain work orders' were issued by KHH Texas does not plausibly suggest that KHH Texas incurred liability to either of the Defendants for the work those Defendants performed for KHH Houston, KHH Dallas, KHH San Antonio, and KHH Austin. Without more detail, the mere fact that KHH Texas issued the work order is factually neutral.

*Kimball Hill*, 2011 WL 2182429, at *12. Accordingly, the PAC's allegation that DAS entered "certain purchase agreements" for goods and services provided "to the Reorganized Debtors" cannot overcome the sum of the complaint's suggestion that other Reorganized Debtors—and not DAS—actually owed the debts.

The Declaration of Dean Unrue ("Unrue Declaration") submitted by the Reorganized Debtors' with their Reply Motion makes their allegation that the Transfers were owed by DAS even *less* plausible. Mr. Unrue states that "DAS owned the account that was the source of funds for each of the Payments." (Reply Motion, Ex. B ¶ 5). Yet, he never states each of the Transfers were on behalf of debts actually incurred or owed by DAS. On the contrary, he admits that many of the Transfers were made on behalf of debts incurred or owed *by other Reorganized Debtors*.

> [M]y staff sought to ensure that each Payment was made on account of an obligation arising from the existence of a purchase agreement or service agreement previously entered into by any of the Reorganized Debtors and the respective defendant(s).

(Reply Motion, Ex. B ¶ 9).

He also admits DAS itself did not determine if the debts were owed to Defendants—rather the other Reorganized Debtors did so.

> DAS generally did not initiate payment to vendors until the Reorganized Debtors verified that payment was owed as a result of the respective vendor's performance under its contract with the Reorganized Debtors.

3

(Reply Motion, Ex. B ¶ 10).[2]

In light of these statements, the *plausible suggestion* is that DAS acted as the conduit for payment of debts owed by *other* Reorganized Debtors. Courts in this district have held that "transfers on account of an antecedent debt owed by a third-party are not [avoidable]." *In re Enron Corp.*, 357 B.R. 32, 48 (Bankr. S.D. N.Y. 2006). Thus, the PAC simply lacks the requisite detail to sufficiently allege that it paid millions in Transfers based on debts actually *owed* by DAS.

The PAC fails *Iqbal* and *Twombly*. Leave to amend should be denied.

> **B.    The Amended Complaint Fails to Sufficiently Plead Facts Showing the Alleged Transfers Were on Behalf of an Antecedent Debt**

The Reorganized Debtors hinge much on their allegation that DAS entered "certain purchase agreements" with the defendants. They revert to their prior argument that the "certain purchase agreements"—themselves—necessarily evidence that the payments pursuant to those agreements must be for goods already shipped. (Reply Motion, p. 19). Yet, this is the exact type of inference this Court instructed against reading into a preference complaint:

> [W]hile it may seem at first glance that anyone receiving money
> has to receive it for some purpose and therefore it's reasonable to
> infer in the context that that purpose is to pay an antecedent debt,
> that is not always the case.

(Transcript, July 22, 2010, p. 277).

Moreover, the PAC is devoid of any specific allegations regarding these "certain purchase agreements". There is no specific allegation that they even preceded the Transfers. Without specifying the date of those agreements, the fact that "certain purchase agreements"

---

[2] Mr. Unrue also states: [I]t is my understanding that such Payments were nonetheless made on account of contracts previously entered into by the Reorganized Debtors. (Reply Motion, Ex. B ¶ 10).

4

existed is not enough—it just a "neutral" fact, not a "suggestive" fact. *Kimball Hill*, 2011 WL 2182429, at *12 (mere allegation that plaintiff issued "certain work orders" to defendants was insufficient allegation that debts were owed by plaintiff).

The Reorganized Debtors attempt to bolster the details of these "certain purchase agreements" with the declaration of Dean Unrue, a Delphi claims administrator. (Reply Motion, Ex. B). Yet, the alleged facts in this declaration were not included in the PAC, and thus, cannot be considered by the Court. *See Kimball Hill*, 2011 WL 2182429, at *12 ("the court's review is limited to the contents of the Amended Complaint").

Even still, the Unrue Declaration fails to push the allegations in the PAC over the line from neutral to suggestive. He does not appear to have been a former employee of any of the Reorganized Debtors, nor does he even state that he spoke with any former employees of the Reorganized Debtors, (¶ 2).[3]

More importantly, he admits that the DACOR payment system was significantly disorganized and frequently used in a non-uniform manner—sometimes invoice numbers were used, sometimes shipper numbers were used, sometimes purchase order numbers were used, sometimes bills of lading numbers were recorded as invoice numbers, and so forth, (¶ 7). If anything, Mr. Unrue demonstrates that the integrity of the very invoice numbers and purchase order numbers—on which the Reorganized Debtors' place so much weight to allege antecedence—is utterly lacking.

The Second Circuit Court of Appeals has held that a debt is incurred when the goods are shipped. *See In re Bennett Funding Group, Inc.*, 220 B.R. 739, 742 (2d Cir. 1998). As many of the defendants have pointed out, merely citing invoice and purchase order numbers, without any

---

[3] Mr. Unrue states, "Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents and data, and my experience with and knowledge of the Reorganized Debtors' pre-petition relationships with their supply base and other creditors." (Reply Motion, Ex. B ¶ 2).

5

more detail, simply fails to identify when the alleged goods were shipped. Yet, the Reorganized Debtors' now claim that—in addition to the "certain purchase agreements"—merely alleging the existence of those invoices and purchase orders themselves necessarily shows "antecedence".

Courts have rejected the notion that an invoice or purchase order alone incurs a debt for the purpose of showing an antecedent debt. *See e.g. In re Vanguard Airlines, Inc.*, 294 B.R. 329, 334 (Bankr. W.D. Mo. 2003) ("An invoice does not create or establish a debt; it simply memorializes the debt."); *In re Kahn & Associates, Inc.*, 135 B.R. 251, (Bankr. W.D. Pa. 1991) ("The legal obligation to pay arises when a particular service is performed or when goods are received by the debtor. The date of the invoice is not relevant in determining the date a debt is incurred.") (citations omitted).

The Reorganized Debtors cite *In re Enron Corp.*, 357 B.R. 32, 47-49 (Bankr. S.D.N.Y. 2006). This case does not hold that invoices or purchase orders by themselves show a debt to be antecedent. In *Enron*, the Court held that a payment for a retention bonus that was contractually due on February 1, but paid one day earlier on January 31, was antecedent. *Id.* at 49.

That case is distinguishable. In *Enron*, there was no dispute that the agreement preceded the transfer. Here, the Reorganized Debtor's PAC does not even allege that the relevant agreement, invoice, purchase order predated any of the Transfers—because no dates are alleged for any of them. Nor does the PAC even allege that these "certain purchase agreements" or the invoices created any actual obligations on the part of DAS or the Defendants. For this precise reason, courts within this district have recently held that agreements alone cannot show a debt is antecdent. *In re Ames Dep't Stores, Inc.*, No. 01-42217, 2010 WL 2403104, at *5 (Bankr. S.D.N.Y. Jun. 10, 2010) (holding that no legal obligation to pay arose from a master agreement

6

that "significantly lacked obligations on the part of buyer and seller to purchase and sell any objectively verifiable quantity of towels").

Accordingly, the PAC could not survive a motion to dismiss because the sum of its allegations fail to show these "certain purchase agreements" or invoices created legal obligations before the Transfers. Put another way, the fact that DAS entered "certain purchase agreements" is just a *neutral* fact—not a *suggestive* one for plausibly alleging an antecedent debt. *Twombly*, 127 S.Ct. at 1966 n.5.

Finally, the Reorganized Debtors argue that the PAC *exceeded* the antecedent debt pleading standard by linking each transfer to an alleged invoice, purchase order or bill of lading. But additional allegations in the PAC contradict this. The PAC states that "Plaintiff did not accept physical invoices from Defendant in connection with Defendant's shipment of goods under the Agreements." (PAC, ¶ 16). And Exhibit 1 attached to the PAC for Methode lists no bills of lading. Nevertheless, the Reorganized Debtors suggest that "the Court can reasonably infer from the invoices and bills of lading referenced in the PACs that each Defendant has completed performance to Plaintiff." (Reply Motion, p. 21). Yet, it is not clear how invoices that were not accepted from Methode, or bills of lading that were not referenced in the complaint, demonstrate anything. This is exactly the sort of unspecified pleading both *Iqbal* and *Twombly* cautioned against.

Leave to amend should be denied.

### C.    JOINDER WITH OTHER SUR-REPLIES

For the convenience of the Court, Methode has respectfully limited this sur-reply to specific issues related to its objection to the Reorganized Debtors' motion for leave to file its

7

amended complaint. Methode respectfully joins with and incorporates all arguments raised by the other preference defendants' sur-replies.

### D.     CONCLUSION

For the foregoing reasons, the Reorganized Debtors' motion for leave to file the Amended Complaints should be denied.

Dated: June 14, 2010
New York, New York

/s/ Zachary D. Silbersher
Shalom Jacob
Zachary D. Silbersher
LOCKE LORD BISSELL & LIDDELL LLP
Three World Financial Center
New York, New York 10281-2101
Tel: (212) 415-8600
Fax: (212) 303-2754

-and-

Courtney Engelbrecht. Barr (CE 7768)
LOCKE LORD BISSELL & LIDDELL LLP
111 S. Wacker Dr.
Chicago, IL 60606
Tel: (312) 443-0700
Fax: (312) 443-0336

*Counsel for Methode Electronics, Inc.*

8