**Hearing Date And Time:  June 23, 2011 at 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
  Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|  |  |
|---|---|
| | : |
| In re | :    Chapter 11 |
| | : |
| DPH HOLDINGS CORP., et al., | :    Case No. 05-44481 (RDD) |
| | : |
| | :    (Jointly Administered) |
|      Reorganized Debtors. | : |
| | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

REORGANIZED DEBTORS' OBJECTION TO REQUEST FOR STAY OF
COURT ORDER AND RELATED PROCEEDINGS REGARDING OF VEBA IN
LIEU OF COBRA RULING (DOCKET # 21306)

("OBJECTION TO JAMES SUMPTER'S EXPEDITED STAY MOTION")

DPH Holdings Corp. ("DPH Holdings") and its affiliated reorganized debtors in the above-captioned cases (together with DPH Holdings, the "Reorganized Debtors"), successors of Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, former debtors and debtors-in-possession (collectively, the "Debtors"), hereby object (the "Objection") to James Sumpter's Request For Stay Of Court Order And Related Proceedings Regarding Of VEBA In Lieu Of COBRA Ruling (Docket # 21306) (Docket No. 21308) (the "Motion"), dated June 8, 2011, requesting a stay of this Court's Order Pursuant To 11 U.S.C. §§ 105 And 1114 And 26 U.S.C. § 35(e)(1)(K) Designating DSRA VEBA Benefit As In Lieu Of COBRA Continuation Coverage (Docket No. 21306) (the "Designation Order"), and respectfully represent as follows:

<u>Preliminary Statement</u>

1.    In the Motion, Mr. Sumpter asks this Court to stay its Designation Order until some undefined point in time after the September 22, 2011 omnibus hearing so that Mr. Sumpter can file a motion for reconsider of Court's rulings on his Expedited Motion To Enforce COBRA Benefits For Salaried Retirees And Motion For COBRA Settlement (COBRA Benefit Motion) (Docket No. 18366) (the "COBRA Benefit Motion"), dated July 10, 2009.  Because the Motion seeks a stay of the Designation Order for the purpose of allowing Mr. Sumpter to file a motion to reconsider this Court's rulings denying the COBRA Benefit Motion—ultimately seeking COBRA benefits that Mr. Sumpter believes are worth more than $500 million—prosecution of the Motion violates the injunctions set forth in the Modified Plan[1] (Docket No. 18707 Ex. A art. 11.14) and this Court's order approving the Modified Plan (Docket No. 18707 ¶ 22).  Accordingly, the Motion should be denied.

---

[1]    Capitalized terms not otherwise defined in this Preliminary Statement are defined below.

2.        In addition, Mr. Sumpter filed proof of administrative expense claim

number 18621 against Delphi, asserting an administrative expense priority claim in the amount

of $62,524.08 on account of lifetime COBRA continuation coverage.  On December 2, 2009, Mr.

Sumpter's claim for COBRA continuation coverage was disallowed (Docket No. 19135, Ex. F).

Although Mr. Sumpter's Motion makes no mention of his COBRA claim or its subsequent

disallowance, to obtain the ultimate relief he seeks, Mr. Sumpter would not only need to overturn

this Court's rulings denying the COBRA Benefit Motion, but would also need to successfully

challenge this Court's order disallowing his claim for lifetime COBRA continuation coverage.

3.        Even if Mr. Sumpter had not violated the injunctions set forth in the

Modified Plan and was not seeking to relitigate this Court's order approving the Modified Plan

and earlier orders of this Court denying the COBRA Benefit Motion and disallowing his claim

for lifetime COBRA continuation coverage, the Motion does not sustain the "heavy burden"

necessary to obtain a stay pursuant to Federal Rule of Bankruptcy Procedure 8005.  See In re

Adelphia Commc'ns Corp., 333 B.R. 649, 659 (S.D.N.Y. 2005) (noting that "[a] party seeking a

stay pending appeal carries a heavy burden").[2]  To obtain a stay, Mr. Sumpter must demonstrate

that (1) there is a substantial possibility of success on the merits; (2) he would suffer irreparable

injury if a stay were denied; (3) the lack of substantial harm to another party if the stay were

granted; and (4) public interest favors a stay.  See, e.g., In re Adelphia Commc'ns Corp., 333 B.R.

at 659; Hirschfeld v. Bd. of Elections, 984 F. 2d 35, 39 (2d Cir. 1993).  All four criteria must be

---

[2]    The stay provisions of Federal Rule of Bankruptcy Procedure 7062(b) do not apply to contested matters.
Accordingly, the Reorganized Debtors believe that the standard governing motions for a stay under Federal
Rule of Bankruptcy Procedure 8005 are best suited to evaluate Mr. Sumpter's request for a stay pending a
motion for reconsideration.  Regardless, the standard governing a motion for stay under Bankruptcy Rule 8005
is the same as the standard used under Federal Rule of Civil Procedure 62 ("Rule 62").  Compare Hirschfeld v.
Bd. of Elections, 984 F. 2d 35, 39 (2d Cir. 1993), with Rodriguez ex rel. Rodriguez v. DeBuono, 175 F.3d 227,
234 (2d Cir. 1999).

satisfied to some extent before a stay is granted.  In re Adelphia Commc'ns Corp., 333 B.R. at

659.

    4.    Mr. Sumpter cannot show a substantial possibility of success on the

merits of his contemplated motion to reconsider this Court's rulings denying his COBRA Benefit

Motion for four reasons.  First, when this Court considered the COBRA Benefit Motion in July

2009, it treated the COBRA Benefit Motion as an objection to the Modified Plan.  This Court

overruled the objection in a bench ruling on July 30, 2009 (Docket No. 18830), and that ruling is

reflected in paragraph 2 of the Plan Modification Order (Docket No. 18707), dated July 30,

2009.[3]  Any motion for reconsideration of this Court's ruling on the COBRA Benefit Motion

would therefore constitute a challenge to the Plan Modification Order under 11 U.S.C. § 1144.  8

Collier on Bankruptcy ¶ 1144.01[2], at 1144–4, (16th ed. 2011) (section 1144 "provides the sole

basis for overturning confirmation of a chapter 11 plan.").  Under section 1144 of the Bankruptcy

Code, the deadline for any such challenge expired 180 days after this Court entered the Plan

Modification Order.  That deadline passed nearly one year ago.  It is far too late for Mr. Sumpter

to seek to unwind a ruling that was an essential factor in this Court's decision to approve the plan

modifications and enter the Plan Modification Order.

    5.    Second, contrary to Mr. Sumpter's assertion that a stay is warranted

because he "has secured an IRS ruling letter," the letter attached to the Motion is actually a letter

dated November 24, 2009, declining to issue a private letter ruling regarding a bankruptcy

qualifying event under applicable COBRA health care continuation requirements.  (Motion Ex.

1.)  The IRS letter declining to issue a private letter ruling is of no weight, and merely "addresses

well-established principles of tax law without applying them to a specific set of facts."  (Id.)  The

---

[3]    The COBRA Benefit Motion was subsequently denied as moot.  See Order Denying Expedited Motion To
Enforce COBRA Benefits For Salaried Retirees And Motion For COBRA Settlement (COBRA Benefit Motion)
(Docket No. 18723) (the "Order Denying COBRA"), entered August 3, 2009.

IRS letter itself states that it "is advisory only and has no binding effect on the IRS" (Motion Ex. 1), and applicable provisions of the Internal Revenue Code confirm that the IRS letter has no weight. 26 U.S.C. § 6110(k)(3); cf. § 6110(b)(1)(A). Accordingly, the letter cannot be properly used by Mr. Sumpter to establish a substantial probability of success on the merits.

6.       Third, even if the IRS letter were probative, it is "well settled that a change in decisional law is not grounds for relief under Rule 60(b)(6)." See Travelers Indem. Co. v. Sarkisan, 794 F. 2d 754, 757 (2d Cir. 1986) (citing Ackermann v. United States, 340 U.S. 193 (1950) (affirming denial of Rule 60(b)(6) relief to party who failed to appeal adverse judgment and then relied on reversal of similar judgment in related case)). Accordingly, even if the IRS letter were viewed as a source of decisional law in this context, the IRS letter is an improper basis for seeking reconsideration of this Court's ruling on the COBRA Benefit Motion.

7.       Finally, given the absence of any likelihood of success on the merits, Mr. Sumpter cannot show irreparable harm. In re Delphi Corp., Hr'g Tr. at 47, March 17, 2009 (citing Grand River Enter. Six Nations Ltd., 481 F.3d at 66-67). For all of these reasons, the Motion should be denied.

## Background

### A.       Mr. Sumpter's COBRA Benefit Motion

8.       In connection with the hearings on the Debtors' motion under 11 U.S.C. § 1127 for an order approving (i) certain modifications to the confirmed plan and related disclosure statement and (ii) related procedures for re-soliciting votes on the confirmed plan, as modified (Docket No. 14310) (the "Plan Modification Motion") and the supplement to the Plan Modification Motion (Docket No. 16646) (the "Motion Supplement"), Mr. Sumpter filed his COBRA Benefit Motion. The COBRA Benefit Motion requested, among other things, that this

Court order the Debtors to provide salaried retirees COBRA coverage "retroactively from April 1, 2009, until the death of each eligible retiree." (COBRA Benefit Motion ¶ 11.)

9.    This Court heard argument on the COBRA Benefit Motion, insofar as it constituted an objection to the Plan Modification Motion and the Motion Supplement, at the hearings held on July 29–30, 2009. On July 30, 2009, this Court ruled that Delphi's salaried retirees were not entitled to lifetime COBRA continuation coverage under the applicable provisions of Titles 26 and 29 of the U.S. Code. In re Delphi Corp., Hr'g Tr. at 15, July 30, 2009 ("[T]he plain meaning of the statute is that the one year reference [for a bankruptcy qualifying event] refers to both the one year before or after language in the statute.") On August 3, 2009, this Court entered its Order Denying COBRA, denying the COBRA Benefit Motion as moot.

B.    Mr. Sumpter's Administrative Expense Claims

10.    On July 14, 2009, Mr. Sumpter filed a proof of administrative expense claim number 18621 ("Claim 18621") against Delphi.[4] Claim 18621 asserted an administrative expense priority claim in the amount of $62,524.08 on account of lifetime COBRA continuation coverage.

11.    Delphi objected to Claim 18621 pursuant to the Thirty-Seventh Omnibus Objection Pursuant To 11 U.S.C. § 503(b) And Fed. R. Bankr. P. 3007 To Expunge Certain (I) Prepetition Claims, (II) Equity Interests, (III) Books And Records Claims, (IV) Untimely Claims, (V) Paid Severance Claims, (VI) Pension, Benefit, And OPEB Claims, And (VII) Duplicative Claims (Docket No. 18984) (the "Thirty-Seventh Omnibus Claims Objection").

---

[4]    A copy of Claim 18621 is attached hereto as Exhibit 1. Mr. Sumpter also filed proof of administrative expense claim number 18620 ("Claim 18620") against Delphi. Claim 18620 asserted an administrative expense priority claim in the amount of $97,788.00 on account of life insurance and an early payout for disability. On December 2, 2009, Claim 18620 was disallowed and expunged (Docket No. 19135 Ex. F).

12.      On December 2, 2009, Claim 18621 was disallowed and expunged by this Court's Order Pursuant to 11 U.S.C. § 503(b) and Fed. R. Bankr. P. 3007 to Expunge Certain (I) Prepetition Claims, (II) Equity Interests, (III) Books and Records Claims, (IV) Untimely Claims, (V) Paid Severance Claims, (VI) Pension, Benefit, and OPEB Claims, and (VII) Duplicative Claims (Docket No. 19135) ("Thirty-Seventh Omnibus Claims Objection Order").

C.      Approval Of The Modified Plan And Plan Modification Order Injunctions

13.      On July 30, 2009, this Court entered its Order Approving Modifications Under 11 U.S.C. § 1127(b) To (I) First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified And (II) Confirmation Order (Docket No. 12359) (Docket No. 18707) (the "Plan Modification Order"), which approved the Debtors' First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (As Modified) (the "Modified Plan"). On October 6, 2009 (the "Effective Date"), the Debtors substantially consummated the Modified Plan. The Reorganized Debtors have emerged from chapter 11 as DPH Holdings and affiliates and remain responsible for the post-Effective Date administration of these chapter 11 cases, including the disposition of certain retained assets, the payment of certain retained liabilities as provided for under the Modified Plan, and the eventual closing of the cases.

14.      Article 11.14 of the Modified Plan provides:

Subject to Article 11.13 of this Plan, the satisfaction, release, and discharge pursuant to this Article XI shall act as an injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recovery any Claim, Interest, or Cause of Action satisfied, released, or discharged under this Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof.

(See Docket No. 18707 Ex. A art. 11.14.)

15.      Similarly, the Plan Modification Order provides:

Except as otherwise specifically provided in the Modified Plan, the MDA Documents, or this order and except as may be necessary to enforce or remedy a breach of the Modified Plan, the Debtors and all Persons shall be precluded and permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any Claim, action, employment of process, or other proceeding of any kind with respect to any Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, (b) the enforcement, attachment, collection, offset, recoupment, or recovery by any manner or means of any judgment, award, decree, order, or otherwise with respect to any Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, (c) creating, perfecting, or enforcing any encumbrance of any kind with respect to any Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, and (d) asserting any Claims, Interests, or Causes of Action that are satisfied, discharged, released, or subject to exculpation hereby or by the Modified Plan.

(Docket No. 18707 ¶ 22.)

D.      Approval Of COBRA Designation Order

16.      On May 5, 2011, the Official Committee of Eligible Salaried Retirees (the "Retirees' Committee") filed its Motion By Official Committee Of Eligible Salaried Retirees To Designate Benefit Of DSRA VEBA As In Lieu Of COBRA Coverage (Docket No. 21261) (the "Designation Motion").  On June 6, 2011, this Court entered the Designation Order.

E.      Mr. Sumpter's Motion For Stay Of Designation Order

17.      On June 8, 2011, Mr. Sumpter filed the present Motion, requesting a stay of this Court's Designation Order entered June 6, 2011.[5]  The Motion seeks a stay of the Designation Order so that Mr. Sumpter can file a motion to reconsider this Court's rulings on his COBRA Benefit Motion.

---

[5]  On June 6, 2011, this Court entered its Order Directing United States Trustee To Disband Official Committee Of Eligible Salaried Retirees (Docket No. 21305) (the "Disbandment Order"), directing the United States Trustee to disband the Retirees' Committee effective as of the later of (a) the date of entry of the Disbandment Order or (b) the date the Designation Order becomes final and nonappealable.  Federal Rule of Bankruptcy Procedure 8002 provides that if a party makes a timely motion to reconsider under Federal Rule of Bankruptcy Procedure 9024, the time for appeal for all parties runs from the entry of the order disposing of such motion.

<u>Argument</u>

A.   <u>Mr. Sumpter's Efforts To Relitigate The COBRA Benefit Motion Violate The Plan
Injunction</u>

18.   Mr. Sumpter asserts that a stay is warranted because he "has secured an

IRS ruling letter."  (Motion ¶ 2.)  The Motion seeks a stay of the Designation Order for the

purpose of allowing Mr. Sumpter to file a motion to reconsider this Court's rulings denying the

COBRA Benefit Motion.[6]  There is no question that these actions are in violation of the

injunctions set forth in Article 11.14 of the Modified Plan and paragraph 22 of the Plan

Modification Order, as the Motion is the first step in seeking to assert a claim for $500,000,000

in lieu of lifetime COBRA coverage. (Motion ¶¶ 11, 15.)

19.   The injunctions in the Modified Plan and Plan Modification Order

prohibit parties from taking action against DPH Holdings or any of the other former Debtors

with respect to, among other things, any "Claim" or "Causes of Action."  (Docket No. 18707 Ex.

A art. 11.14; Docket No. 18707 ¶ 22.)  For purposes of the Modified Plan and the Plan

Modification Order, a "Claim" is "a claim against one of the Debtors (or all or some of them),

whether or not asserted, as defined in section 101(5) of the Bankruptcy Code."  (Docket No.

18707 Ex. A art. 1.29; Docket No. 18707 at 4 n.1.)

20.   Under 11 U.S.C. § 101(5)(A), a "claim" includes a "right to payment,

whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent,

matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  "Congress

intended by this language to adopt the broadest available definition of 'claim.'"  <u>Johnson v. Home

State Bank</u>, 501 U.S. 78, 83 (1991).  It is "sufficiently broad to encompass any possible right to

payment."  <u>Mazzeo v. U.S.</u> (In re Mazzeo), 131 F.3d 295, 302 (2d Cir. 1997).

---

[6]   As set forth above, Mr. Sumpter previously filed Claim 18621 asserting lifetime COBRA benefits.

21.    Under the Modified Plan, "Causes of Action" means:

> any and all actions, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, non-contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and whether asserted or assertable directly or derivatively in law, equity, or otherwise, including Avoidance Claims, unless otherwise waived or released by the Debtors or the Reorganized Debtors to the extent such Cause of Action is a Cause of Action held by the Debtors or the Reorganized Debtors.

(Docket No. 18707 Ex. A art. 1.25.)  The contemplated motion to reconsider rulings denying the

COBRA Benefit Motion, and the Motion, constitute Causes of Action enjoined by the Modified

Plan and Plan Modification Order.

22.    In addition, Mr. Sumpter previously filed Claim 18621 against Delphi on

account of COBRA benefits, which claim was disallowed and expunged.  Under 11 U.S.C. §

1141(d) and pursuant to the terms of the Plan Modification Order and the Modified Plan, upon

the Effective Date, the distributions and rights provided in the Modified Plan operates as a

discharge of all Claims and Causes of Action against the Debtors that arose on or prior to the

Effective Date.  Specifically, section 11.2 of the Modified Plan provides that:

> the distributions and rights that are provided in [the Modified] Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims and Causes of Action, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to [the Modified] Plan on account of such Claims, rights, and Interests, **including, but not limited to, Claims and Interests that arose before the Effective Date** . . . .

(Docket No. 18707 Ex. A art. 11.2 (emphasis added).)

23.    The Claims and Causes of Action for lifetime COBRA coverage that

undergird the Motion's request for a stay of the Designation Order, insofar as they seek to

reconsider this Court's rulings on the COBRA Benefit motion July and August of 2009, fall

within the discharge granted under section 11.2 of the Modified Plan.  There is no basis for

requiring the Reorganized Debtors to relitigate disallowed and discharged claims.  Accordingly,

the Motion should be denied.

B.    Mr. Sumpter's Claim For Lifetime COBRA Continuation Coverage Was Disallowed And
      Expunged

24.    In addition, Mr. Sumpter filed Claim 18621 against Delphi, asserting an

administrative expense priority claim in the amount of $62,524.08 on account of lifetime

COBRA continuation coverage.  On December 2, 2009, Mr. Sumpter's claim for COBRA

continuation coverage was disallowed (Docket No. 19135 Ex. F).  Mr. Sumpter did not appeal

the order denying Claim 18621.

25.    The Motion makes no mention of the fact that Mr. Sumpter filed Claim

18621 asserting lifetime COBRA continuation coverage or that Claim 18621 was subsequently

disallowed.  Yet to obtain the ultimate relief Mr. Sumpter is seeking here, he would not only

need to overturn this Court's rulings denying the COBRA Benefit Motion, but would also need to

successfully challenge this Court's order disallowing his claim for lifetime COBRA continuation

coverage.  Given this Court's ruling disallowing Claim 18621, which Mr. Sumpter does not

appear to challenge in his Motion, Mr. Sumpter's standing to press forward with his attempt to

establish lifetime COBRA continuation coverage is far from clear.

C.    The Motion Fails To Sustain The Heavy Burden Necessary For A Stay

26.    Mr. Sumpter's Motion fails to sustain the "heavy burden" necessary to

obtain a stay pursuant to Federal Rule of Bankruptcy Procedure 8005.  See In re Adelphia

Commc'ns Corp., 333 B.R. 649, 659 (S.D.N.Y. 2005) (noting that "[a] party seeking a stay

pending appeal carries a heavy burden").  To obtain a stay, Mr. Sumpter must demonstrate that

(1) there is a substantial possibility of success on the merits; (2) he would suffer irreparable

injury if a stay were denied; (3) the lack of substantial harm to another party if the stay were

granted; and (4) public interest favors a stay.  See, e.g., In re Adelphia Commc'ns Corp., 333 B.R.

at 659; Hirschfeld v. Bd. of Elections, 984 F.2d 35, 39 (2d Cir. 1993).

      27.      Many courts in this circuit hold that "[a]ll four criteria must be satisfied to

some extent before a stay is granted." In re Adelphia Commc'ns Corp., 333 B.R. at 659; see also

Turner v. Citizens Nat'l Bank of Hammond (In re Turner), 207 B.R. 373, 375 (B.A.P. 2d Cir.

1997) (explaining that movant "must show 'satisfactory evidence on all four criteria'" (citations

omitted)); Triple Net Invs. IX, LP v. DJK Residential, LLC (In re DJK Residential, LLC), Nos.

08-10375 (JMP), M-47 (GEL), 2008 WL 650389, at *2 (S.D.N.Y. Mar. 7, 2008) (same).  Under

this formulation, the "[f]ailure to satisfy one prong of this standard for granting a stay will doom

the motion."  In re Turner, 207 B.R. at 375; see also, ePlus, Inc. v. Katz (In re Metiom, Inc.), 318

B.R. 263, 271 (S.D.N.Y. 2004) (failure to demonstrate substantial possibility of success "dooms

the motion").

      28.      Other courts follow a nominally different practice of weighing the four

factors.  See ACC Bondholder Group v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns

Corp.), 361 B.R. 337, 347 (S.D.N.Y. 2007); see also Empresa Cubana Del Tabaco v. Culbro

Corp., No. 97 Civ. 8399 (RWS), 2004 WL 925615, at *5 (S.D.N.Y. Apr. 30, 2004) (Sweet, J.)

(weighing likelihood of success on the merits against other three factors).  Under this balancing

approach, "'[t]he probability of success that must be demonstrated is inversely proportional to the

amount of irreparable injury [the movant] will suffer absent the stay.'" Empresa Cubana Del

Tabaco, 2004 WL 925615, at *1 (quoting Mohammed v. Reno, 309 F.3d 95, 100 (2d Cir. 2002)).

In other words, "more of one excuses less of the other."  Mohammed v. Reno, 309 F.3d at 101.

      (1)      Any Motion To Reconsider This Court's Rulings On The
COBRA Benefit Motion Constitutes A Motion To Revoke
The Plan Modification Order That Is Untimely Under 11
U.S.C. § 1144

29.     Because this Court treated the COBRA Benefit Motion as an objection to approval of the Modified Plan and overruled the objection as part of the Plan Modification Order, the Court's ruling on the COBRA Benefit Motion is not subject to reconsideration based on the 180-day deadline in section 1144.  11 U.S.C. § 1144; Fed. R. Bankr. P. 9024 (Rule 60(b) applies except that "a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144"); Fed. R. Bankr. P. 9006(b)(2) (court may not enlarge time for taking action under 9024).  In order to reconsider this Court's rulings on the COBRA Benefit Motion, this Court would need to reconsider its primary ruling denying the COBRA Benefit Motion insofar as it constituted an objection to the Modified Plan.  The rulings denying the COBRA Benefit Motion were entered 22 months ago, and Mr. Sumpter did not appeal those rulings.  In the 22 months since the rulings denying the COBRA Benefit Motion became final, the Reorganized Debtors substantially consummated the Modified Plan and emerged from chapter 11.[7]

30.     The only way Mr. Sumpter could unwind this Court's ruling on the COBRA Benefit Motion—which attempted to impose $500 million in COBRA continuation benefits on the Debtors—would be by revoking the Plan Modification Order.  8 Collier on Bankruptcy ¶ 1144.01[2], at 1144–4, (16th ed. 2011) (section 1144 "provides the sole basis for overturning confirmation of a chapter 11 plan.")  Even if Mr. Sumpter were asserting that the Plan Modification Order had been procured by fraud, a request for revocation of a confirmation order is only permitted "before 180 days after the date of the entry of the order of confirmation." 11 U.S.C. § 1144; see also In re Vencor, Inc., 284 B.R. 79, 83 (Bankr. D. Del. 2002) (Federal

---

[7]     For similar reasons, to the extent the Motion seeks a stay of the Designation Order so that Mr. Sumpter can seek reconsideration of the COBRA Benefit Motion in an attempt to impose $500 million in COBRA continuation benefits, such relief is barred by the doctrine of equitable mootness.  See In re Chateaugay Corp., 10 F.3d 944, 952-53 (2d Cir. 1993); In re Calpine Corp., 390 B.R. 508, 516 (S.D.N.Y. 2008) (when chapter 11 plan of reorganization has been substantially consummated, appeal should be dismissed as moot if implementation of relief would be inequitable).

Rule of Bankruptcy Procedure 9024 "expressly requires that any action to revoke a confirmation

order under chapter 11 must be filed within the time specified in section 1144"); 680 Fifth Ave.

Assoc. v. EGI Co. Servs., Inc. (In re 680 Fifth Ave. Assoc.), 209 B.R. 314, 322-23 (Bankr.

S.D.N.Y. 1997) (strictly construing 180-day time limitation in section 1144).  Because Mr.

Sumper's forthcoming motion for reconsideration of this Court's rulings on the COBRA Benefit

Motion would be time barred by 11 U.S.C. § 1144, he has no chance of success on the merits.

Accordingly, the Motion should be denied.

> (2)    The IRS Letter, By Its Terms And Under Applicable
> Provisions Of The Internal Revenue Code, Is Entitled To
> No Weight

31.    Second, the IRS letter Mr. Sumpter received from the Office of Chief

Counsel is a letter declining to issue a private letter ruling.  (Motion Ex. 1.)  A written

determination, including Chief Counsel advice, "may not be used or cited as precedent."  26

U.S.C. § 6110(k)(3); cf. § 6110(b)(1)(A) (written determination "means a ruling, determination

letter, technical advice memorandum, or Chief Counsel advice").  The IRS letter itself makes the

same point, stating that it "is advisory only and has no binding effect on the IRS."  (Motion Ex.

1.)  Moreover, Mr. Sumpter received this letter in November 2009—yet chose to wait nearly 19

months to file his Motion and announce his plans to move for reconsideration of the rulings

denying the COBRA Benefit Motion.  Accordingly, the IRS letter provides no basis for finding

that Mr. Sumpter has a substantial possibility of success on the merits.

> (3)    Intervening Legal Authority Is Not Grounds For
> Reconsideration Under Rule 60(b)

32.    Third, even if the IRS letter were somehow viewed to have probative

value, it is "well settled that a change in decisional law is not grounds for relief under Rule

60(b)(6)."  See Travelers Indem. Co. v. Sarkisan, 794 F. 2d 754, 757 (2d Cir. 1986) (citing

Ackermann v. United States, 340 U.S. 193 (1950) (affirming denial of Rule 60(b)(6) relief to party who failed to appeal adverse judgment and then relied on reversal of similar judgment in related case)).[8]  Accordingly, even assuming that the IRS letter is viewed as a source of decisional law in this context, the IRS letter is an improper basis for seeking reconsideration of rulings denying the COBRA Benefit Motion.

(4)    Given The Absence Of Any Possibility Of Success On The Merits, Mr. Sumpter Cannot Show Irreparable Harm

33.    Finally, "a showing of irreparable harm is the 'principal prerequisite' for the issuance of a stay under Bankruptcy Rule 8005."  In re Delphi Corp., Hr'g Tr. at 47, March 17, 2009 (citing Grand River Enter. Six Nations Ltd., 481 F.3d at 66-67).  See also In re Liberty Warehouse Assocs. Ltd. P'ship, 1998 WL 35180893, at *1 (Batts, J.) (finding no need to consider remaining elements for stay pending appeal when plaintiff failed to demonstrate irreparable injury).  To satisfy this burden of proof, Mr. Sumpter must demonstrate irreparable harm in the absence of a stay that is "'neither remote nor speculative, but actual and imminent.'"  E.g., In re Calpine Corp., No. 05-60200 (BRL), 2008 WL 207841, at *4 (Bankr. S.D.N.Y. Jan 24, 2008) (citations omitted).

34.    Mr. Sumpter has made no showing of why, absent a stay of the Designation Order—19 months after receiving the IRS letter—he would suffer irreparable harm that is actual and imminent.  And given the absence of any likelihood of success on the merits, Mr. Sumpter cannot show irreparable harm.  Mohammed v. Reno, 309 F.3d at 101 ("more of one [factor] excuses less of another").  For all these reasons, the Motion fails to satisfy the "heavy

---

[8]    This Court has previously treated motions to reconsider as motions under Rule 60(b) or Federal Rule of Bankruptcy Procedure 9024.  See, e.g., In re DPH Holdings Corp., Hr'g Tr. at 26, Aug. 27, 2010; In re DPH Holdings Corp., Hr'g Tr. at 19, 186, May 20, 2010.

burden" necessary to obtain a stay and should be denied.  See In re Adelphia Commc'ns Corp.,

333 B.R. at 659.

## Conclusion

35.    For the reasons set forth above, Mr. Sumpter's efforts violate the plan

injunctions and, in any event, fail to satisfy the standard for obtaining a stay of the Designation

Order.  Accordingly, the Motion should be denied.

WHEREFORE the Reorganized Debtors respectfully request that this Court enter an order (a) denying the Motion, and (b) granting them such other and further relief as is just.

Dated: New York, New York
      June 20, 2011

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr.
    John K. Lyons
    Ron E. Meisler
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and –

Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for DPH Holdings Corp., et al.,
   Reorganized Debtors

# Exhibit 1

# United States Bankruptcy Court
### Southern District of New York

Delphi Corporation et al. Claims Processing
c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue
El Segundo, California 90245

## Administrative Expense Claim Form

| Debtor against which claim is asserted : | Case Name and Number |
|---|---|
| Delphi Corporation, *et al.* 05-44481 | In re Delphi Corporation., *et al.* 05-44481<br>Chapter 11, Jointly Administered |

**NOTE: This form should not be used to make a claim in connection with a request for payment for goods or services provided to the Debtors prior to the commencement of the case. This Administrative Expense Claim Form is to be used solely in connection with a request for payment of an administrative expense arising after commencement of the case but prior to June 1, 2009, pursuant to 11 U.S.C. § 503.**

**Name of Creditor**
*(The person or other entity to whom the debtor owes money or property)*

**James B. Sumpter**

Name and Address Where Notices Should be Sent

**James B. Sumpter
21169 Westbay Circle
Noblesville, IN  46062**

Telephone No.

**317-877-0736**

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☒ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

Claim #18621
USBC SDNY
Delphi Corporation, et al.
05-44481 (RDD)

**THIS SPACE IS FOR COURT USE ONLY**

| ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:   **N/A** | Check here if this claim  ☐ replaces<br>☐ amends a previously filed claim, dated: _____ |
|---|---|

**1. BASIS FOR CLAIM**

☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☐ Other (Describe briefly)

☒ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (Fill out below)
Your social security number  **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**
Unpaid compensation for services performed
from _____ to _____
(date)               (date)

**2. DATE DEBT WAS INCURRED  April 1, 2009**

**3. IF COURT JUDGMENT, DATE OBTAINED:**

**4. TOTAL AMOUNT OF ADMINISTRATIVE CLAIM: $ 62,524.08**    **(Assumes no change in family status and life expectancy of 85 years)**
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

**5. Brief Description of Claim (attach any additional information):**
**COBRA health care liability per Title 29; § 1163 and Title 26; § 4980B:
A substantial reduction in Retiree health care coverage during a Title 11 proceeding is a lifetime COBRA benefit.**

**6. CREDITS AND SETOFFS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

**7. SUPPORTING DOCUMENTS:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. Any attachment must be 8-1/2" by 11".

**8. DATE-STAMPED COPY:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

**THIS SPACE IS FOR COURT USE ONLY**

**RECEIVED**
JUL 1 4 2009
KURTZMAN CARSON CONSULTANTS

| Date<br>**July 8, 2009** | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any) |
|---|---|



■ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return



21169 Westbay Circle
Noblesville, IN  46062
July 8, 2009

Delphi Corporation Claims Processing
c/o Kurtzman Carson Consultants LLC
2335 Alaska Avenue
El Segundo, CA 90245

RE:  In re Delphi Corporation, et al.,
     Case No. 05-44481 (RDD) Jointly Administered
     United States Bankruptcy Court
     Southern District of New York

     Proof of Claim:

I have submitted a request for COBRA coverage in conformance with the controlling
SPD.  Delphi eliminated health car coverage on April 1 for salaried retirees and placed
me in a self pay category.

However, Pursuant to Tittle29, Chapter 18, Subchapter I, Part 6, §1163(6), a substantial
elimination of coverage, after the commencement  proceeding under Title 11, is a
COBRA Qualifying Event.

§1162 of the same section specifies that my premiums shall not exceed 102 of the
applicable premium.  In addition, §1162 also directs that COBRA coverage shall last
until my death.

The difference between the self pay rate and the COBRA rate is $187.76.
     Enhanced Medical Plan, employee only
     ($ 666 + $44 dental) – ( $ 491.64 + 30.60 dental) =  $187.76

COBRA claim April 1, 2009 thru July 30, 2009:     4 x 187.76   = $   751.04

COBRA claim August 1, 2009 thru Dec. 31, 2009:     5 x 187.76   = $   938.80

COBRA claim 2110 thru Dec. 31, 2037:     27 yrs ( 12 x 187.76) = $ 60,824.24

(Assumes Life expectancy of 85 years     Total   = $ 62,524.08
and no changes in family status)

Because Delphi is not complying with these statutes, I have requested a formal ruling from the IRS and the Department of Labor.

James B. Sumpter

## Cornell University
## Law School

LII / Legal Information Institute

# U.S. Code collection

TITLE 29 > CHAPTER 18 > SUBCHAPTER I > Subtitle B > part 6 > § 1163

## § 1163. Qualifying event

For purposes of this part, the term "qualifying event" means, with respect to any covered employee, any of the following events which, but for the continuation coverage required under this part, would result in the loss of coverage of a qualified beneficiary:

(1)  The death of the covered employee.

(2)  The termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment.

(3)  The divorce or legal separation of the covered employee from the employee's spouse.

(4)  The covered employee becoming entitled to benefits under title XVIII of the Social Security Act [42 U.S.C. 1395 et seq.].

(5)  A dependent child ceasing to be a dependent child under the generally applicable requirements of the plan.

(6)  A proceeding in a case under title 11, commencing on or after July 1, 1986, with respect to the employer from whose employment the covered employee retired at any time.

In the case of an event described in paragraph (6), a loss of coverage includes a substantial elimination of coverage with respect to a qualified beneficiary described in section 1167 (3)(C) of this title within one year before or after the date of commencement of the proceeding.

*LII has no control over and does not endorse any external Internet site that contains links to or references LII.*

Cornell University
Law School

LII / Legal Information Institute

# U.S. Code collection

TITLE 29 > CHAPTER 18 > SUBCHAPTER I > Subtitle B > part 6 > § 1162

## § 1162. Continuation coverage

For purposes of section 1161 of this title, the term "continuation coverage" means coverage under the plan which meets the following requirements:

### (1) Type of benefit coverage

The coverage must consist of coverage which, as of the time the coverage is being provided, is identical to the coverage provided under the plan to similarly situated beneficiaries under the plan with respect to whom a qualifying event has not occurred. If coverage is modified under the plan for any group of similarly situated beneficiaries, such coverage shall also be modified in the same manner for all individuals who are qualified beneficiaries under the plan pursuant to this part in connection with such group.

### (2) Period of coverage

The coverage must extend for at least the period beginning on the date of the qualifying event and ending not earlier than the earliest of the following:

#### (A) Maximum required period

**(i)  General rule for terminations and reduced hours**  In the case of a qualifying event described in section 1163 (2) of this title, except as provided in clause (ii), the date which is 18 months after the date of the qualifying event.

**(ii)  Special rule for multiple qualifying events**  If a qualifying event (other than a qualifying event described in section 1163 (6) of this title) occurs during the 18 months after the date of a qualifying event described in section 1163 (2) of this title, the date which is 36 months after the date of the qualifying event described in section 1163 (2) of this title.

**(iii)  Special rule for certain bankruptcy proceedings**  In the case of a qualifying event described in section 1163 (6) of this title (relating to bankruptcy proceedings), the date of the death of the covered employee or qualified beneficiary (described in section 1167 (3)(C)(iii) of this title), or in the case of the surviving spouse or dependent children of the covered employee, 36 months after the date of the death of the covered employee.

**(iv)  General rule for other qualifying events**  In the case of a qualifying event not described in section 1163 (2) or 1163 (6) of this title, the date which is 36 months after the date of the qualifying event.

**(v)  Medicare entitlement followed by qualifying event**  In the case of a qualifying event described in section 1163 (2) of this title that occurs less than 18 months after the date the covered employee became entitled to benefits under title XVIII of the Social Security Act [42 U.S.C. 1395 et seq.], the period of coverage for qualified beneficiaries other than the covered employee shall not terminate under this subparagraph before the close of the 36-month period beginning on the date the covered employee became so entitled.

In the case of a qualified beneficiary who is determined, under title II or XVI of the Social Security Act [42 U.S.C. 401 et seq., 1381 et seq.], to have been disabled at any time during the first 60 days of continuation coverage under this part, any reference in clause (i) or (ii) to 18 months is deemed a reference to 29 months (with respect to all qualified beneficiaries), but only if the qualified beneficiary has provided notice of such determination under section 1166 (3) [1] of this title before the end of such 18 months.

### (B) End of plan

The date on which the employer ceases to provide any group health plan to any employee.

### (C) Failure to pay premium

The date on which coverage ceases under the plan by reason of a failure to make timely payment of any premium required under the plan with respect to the qualified beneficiary. The payment of any premium (other than any payment referred to in the last sentence of paragraph (3)) shall be considered to be timely if made within 30 days after the date due or within such longer period as applies to or under the plan.

### (D) Group health plan coverage or medicare entitlement

The date on which the qualified beneficiary first becomes, after the date of the election—

(i)   covered under any other group health plan (as an employee or otherwise) which does not contain any exclusion or limitation with respect to any preexisting condition of such beneficiary (other than such an exclusion or limitation which does not apply to (or is satisfied by) such beneficiary by reason of chapter 100 of title 26, part 7 of this subtitle, or title XXVII of the Public Health Service Act [42 U.S.C. 300gg et seq.]), or

(ii)   in the case of a qualified beneficiary other than a qualified beneficiary described in section 1167 (3)(C) of this title, entitled to benefits under title XVIII of the Social Security Act [42 U.S.C. 1395 et seq.].

### (E) Termination of extended coverage for disability

In the case of a qualified beneficiary who is disabled at any time during the first 60 days of continuation coverage under this part, the month that begins more than 30 days after the date of the final determination under title II or XVI of the Social Security Act [42 U.S.C. 401 et seq., 1381 et seq.] that the qualified beneficiary is no longer disabled.

## (3) Premium requirements

The plan may require payment of a premium for any period of continuation coverage, except that such premium—

(A)   shall not exceed 102 percent of the applicable premium for such period, and

(B)   may, at the election of the payor, be made in monthly installments.

In no event may the plan require the payment of any premium before the day which is 45 days after the day on which the qualified beneficiary made the initial election for continuation coverage. In the case of an individual described in the last sentence of paragraph (2)(A), any reference in subparagraph (A) of this paragraph to "102 percent" is deemed a reference to "150 percent" for any month after the 18th month of continuation coverage described in clause (i) or (ii) of paragraph (2)(A).

## (4) No requirement of insurability

The coverage may not be conditioned upon, or discriminate on the basis of lack of, evidence of insurability.

## (5) Conversion option

In the case of a qualified beneficiary whose period of continuation coverage expires under paragraph (2)(A), the plan must, during the 180-day period ending on such expiration date, provide to the qualified beneficiary the option of enrollment under a conversion health plan otherwise generally available under the plan.

[1] See References in Text note below.

*LII has no control over and does not endorse any external Internet site that contains links to or references LII.*

21169 Westbay Circle
Noblesville, IN 46062
July 2, 2009

**National Benefit Center**
**Delphi Benefits**
**PO Box 14673**
**Lexington, KY 40512-4673**



RE:    **Health Care COBRA Coverage**
       **James B. Sumpter        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**

I am writing to formally request health insurance COBRA coverage.

I am a Salaried Disability Retiree.  Pursuant to Tittle29, Chapter 18, Subchapter I, Part 6,
§1163(6), a substantial elimination of coverage, after the commencement of a chapter 11
bankruptcy proceeding under title 11, is a COBRA Qualifying Event.

§1162 of the same section specifies that my premiums shall not exceed 102 of the
applicable premium.  In addition §1162 also directs that COBRA coverage shall last until
my death.

For your convenience, I have attached copies of both sited sections of Title 29 to this letter.

I am currently paying the self pay rate of $666.00.  You have published a COBRA rate for
my health plan of $491.64.  Therefore, I am requesting that you adjust my insurance rate to
the COBRA rate and that you reimburse to me the difference of $174.36, for each month
of coverage since April 1, 2009. (I have attached copies of your publish rate schedules for
COBRA and Self Pay Retiree Premiums).

Since this adjustment is likely not to be processed before Delphi's anticipated emergence
from bankruptcy, I will be filing an administrative claim with the Bankruptcy court to
preserve my rights.

I look forward to your expeditious processing of the above request.

My contact information follows:

       Address        **21169 Westbay Circle**
                      **Noblesville, IN  46062**


       Phone          **317-877-0763**

Fax          **317-877-1070**
e-mail       **jsump@ieee.org**

Sincerely,

James E. Sumpter