Timothy T. Brock, Esq.
Abigail Snow, Esq.
SATTERLEE STEPHENS BURKE & BURKE LLP
230 Park Avenue
New York, New York 10169
(212) 818-9200

*Co-Counsel with:*
Patricia L. Beaty, Esq.
KRIEG DEVAULT LLP
One Indiana Square, Suite 2800
Indianapolis, IN 46204
(317) 636-4341

*Co-Counsel for Delphi Salaried Retirees*
*Association Benefit Trust VEBA Committee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) ) ) Chapter 11 |
| DPH HOLDINGS CORP., *et al.*, | ) ) Case No. 05-44481 (RDD) |
| Reorganized Debtors. | ) ) Jointly Administered ) ) |

**OBJECTION OF THE VEBA COMMITTEE FOR THE DELPHI SALARIED**
**RETIREES ASSOCIATION BENEFIT TRUST TO THE "REQUEST FOR STAY**
**OF COURT ORDER AND RELATED PROCEEDINGS REGARDING OF VEBA**
**IN LIEU OF COBRA RULING" FILED BY JAMES B. SUMPTER, PRO SE**

The VEBA Committee (the "VEBA Committee") for the Delphi Salaried Retirees

Association Benefit Trust (the "DSRA VEBA"), by its attorneys, Satterlee Stephens Burke &

Burke LLP and Krieg DeVault LLP, hereby submits this Objection (the "Objection"), to the so-

called "Request for Stay of Court Order and Related Proceedings Regarding of VEBA in Lieu of

COBRA Ruling" (Dkt. No. 21308).   In support of the Objection, the VEBA Committee

respectfully represents as follows:

1184433_5

**PRELIMINARY STATEMENT**

The VEBA Committee objects to the "Request for Stay of Court Order and Related Proceedings Regarding of VEBA in Lieu of COBRA Ruling" (the "Motion"). Leaving aside whether this Motion is a procedurally appropriate way of attacking the *Order Pursuant to 11 U.S.C. §§ 105 & 1114 & 26 U.S.C. § 35(e)(1)(K) Designating DSRA VEBA Benefit as In Lieu of COBRA Continuation Coverage* (the "In Lieu Order" or the "COBRA Order", Dkt. No. 21306) entered on June 6, 2011, the relief sought by Mr. Sumpter – a months-long stay during which he intends to draft and prosecute a manifestly improper motion of reconsideration of what is essentially the order of confirmation – could gravely damage the interests of Delphi retirees. By delaying the finality of the COBRA Order, the Motion will seriously jeopardize the DSRA VEBA's ability to secure a favorable Private Letter Ruling from the Internal Revenue Service in time for it to continue to provide health insurance benefits to its participants and beneficiaries when section 35(e)(1)(K) of the Code expires February 13, 2012. If the DSRA VEBA thereby loses its eligibility to provide benefits subsidized by the Health Care Tax Credit ("HCTC"), it will no longer be able to provide meaningful health insurance benefits to thousands of current participants and beneficiaries. Many Delphi retirees could thus lose the tangible benefits that the DSRA VEBA has brought them so that Mr. Sumpter can pursue his futile, ill-conceived, and untimely quest for lifetime COBRA coverage from Reorganized Debtors.

**THE ENTITIES REPRESENTING DELPHI SALARIED RETIREES**

1.      By way of brief background and clarification, three entities representing the interests of Delphi salaried retirees grew out of these bankruptcy cases. First was the organization representing such retirees generally, the Delphi Salaried Retirees' Association (the "DSRA"). The Court and the U.S. Trustees' Office ("UST") appointed the second such entity,

2

*i.e.*, the Official Committee of Eligible Salaried Retirees appointed pursuant to 11 U.S.C. § 1114

(the "1114 Committee"), pursuant to the negotiations arising in the wake of the Debtors' motion

to terminate salaried retirees' health and welfare benefits.  In resolution of the DSRA's and 1114

Committee's appeals of the Court's final order allowing for such termination ("Final OPEB

Termination Order"), the (now-Reorganized) Debtors agreed to fund a VEBA trust (the "DSRA

VEBA") which could secure government-subsidized benefits for Delphi retirees.

2.      The third entity is the VEBA Committee, *i.e.*, the named fiduciary under

the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and board of

trustees for the DSRA VEBA, which was set up by and whose initial members were appointed

by the 1114 Committee pursuant to a Trust Agreement that was executed on or about June 9,

2009 (the "Trust Agreement").

3.      These three entities and their component volunteers share the goal of

advancing the interests of Delphi salaried retirees. The interests of Delphi salaried retirees have

thus been advanced and protected throughout these bankruptcy cases by multiple representatives

and their counsel.  Conversely, Mr. Sumpter has no fiduciary duty to anyone and would appear

to represent no one but himself.

### THE TANGIBLE BENEFITS RECEIVED BY DSRA VEBA BENEFICIARIES

4.      The VEBA Committee, as ERISA fiduciary, has the weighty tasks of

securing and administering government-subsidized benefits and a "hardship" program (to assist

especially-beleaguered Delphi retirees) using the DSRA VEBA trust funds received from now-

Reorganized Debtors.

5.      The VEBA Committee was able to implement the rolling out of

government-subsidized benefits packages for 2010.  The medical plans were rolled out and made

1184433_5

available to participants in September of 2009, and over the course of the following year the

VEBA Committee accomplished the following:

    (a)    The VEBA Committee has established through Blue Cross Blue Shield of Michigan, medical, dental and vision coverage plans for enrollees under age 65.

    (b)    The VEBA Committee has established medical coverage through Hartford for enrollees over age 65.

    (c)    The VEBA Committee worked with the Internal Revenue Service and its administrator, Marsh, to be certain that all enrollees entitled to the HCTC applied for and received that credit (which, in 2009-10, initially covered 80%, and now covers 65%, of the enrollees' premium costs). Eighty percent of all of the enrollees are eligible for and receive the HCTC benefit.

    (d)    The VEBA Committee also secured fiduciary liability coverage for the VEBA Committee and the ERISA required fidelity bond in September of 2009. The VEBA Committee remains covered by a fiduciary liability policy and fidelity bond.

6.    The VEBA Committee conducted a survey of enrollees regarding their

satisfaction with their benefits; the results were received on or around July 1, 2010 and they

showed a 93% satisfaction rating.

7.    The VEBA Committee has thus, in meeting its fiduciary duties, secured

and administered tangible benefits for beneficiary Delphi salaried retirees.[1]

8.    The stay sought by Mr. Sumpter jeopardizes these benefits, all so that he

can presumably litigate the futile matter of lifetime COBRA coverage with Reorganized Debtors:

ultimately, should the present Motion and any forthcoming motion for reconsideration succeed,

Mr. Sumpter would ask this Court to revisit its (unappealed and final) ruling from July 2009 that

there was no ongoing right for COBRA benefits. Yet, despite the futility of Mr. Sumpter's

---

[1]    Moreover, due to the parallel efforts of the 1114 Committee before this Court in late 2009, the benefits of the DSRA VEBA have been extended to non-salaried Delphi retirees.

4

ultimate goal, the stay now sought could harm the DSRA VEBA beneficiaries' receipt of government-subsidized benefits and will impose additional expenses on the DSRA VEBA by forcing the VEBA Committee to, at a minimum, maintain a level of vigilance over Mr. Sumpter's futile pursuit at a time when it otherwise could be pursuing a Private Letter Ruling.

9.      Given that Mr. Sumpter's quixotic quest is therefore as futile as it is potentially damaging, the VEBA Committee, for its part and on behalf of the thousands of beneficiaries who have received and continue to receive tangible benefits from the DSRA VEBA trust funds, respectfully objects.  The VEBA Committee hereby asks that this Court deny the Motion and overrule Mr. Sumpter's self-appointed request to venture forth on a futile bid to seek an illusory benefit.

## DISCUSSION

*1.      Stay of the COBRA Order Will Harm the VEBA Beneficiaries*

10.      The American Recovery and Reinvestment Act ("ARRA") added section 35(e)(1)(K) to the Internal Revenue Code (the "Code").  Section 35(e)(1)(K) of the Code states that the cost of health insurance benefits provided by a tax-exempt voluntary employee benefit association established by a retiree representative under Bankruptcy Code section 1114 or by order of a bankruptcy court constitutes "qualified health coverage" and as such, is eligible for the HCTC.  The HCTC provides a federal subsidy equal to 65% of the health insurance premium costs (previously the subsidy was 80%).[2]  Section 35(e)(1)(K) of the Code was originally set to expire December 31, 2010, but was extended until February 13, 2012 by Section 117 of the

---

[2]      To be eligible for the HCTC subsidy, the beneficiary retirees and their dependants must be aged 55-64 and be enrolled in a "qualified health insurance" plan and have had their pensions terminated and trusteed by the Pension Benefit Guaranty Corporation ("PBGC").

1184433_5

Omnibus Trade Act of 2010, H.R. 6517, which was signed into law on December 29, 2010.[3]

11.     Because Section 35(e)(1)(K) is scheduled to expire as of February 13, 2012, the future ability of the DSRA VEBA to provide HCTC eligible benefits to thousands of participants and beneficiaries remains uncertain.  Due to this uncertainty, the DSRA VEBA may seek to obtain a Private Letter Ruling from the Internal Revenue Service that the medical and prescription drug benefits provided through the DSRA VEBA are eligible for the HCTC subsidy under Section 35(e)(1)(A) of the Code as coverage in lieu of COBRA.  Such a ruling would eliminate the uncertainty associated with expiration of section 35(e)(1)(K)(1) of the Code because section 35(e)(1)(A) of the Code is not scheduled to sunset in the future.

12.     The COBRA Order will make it easier for the DSRA VEBA to obtain such a favorable Private Letter Ruling because it memorializes the fact that the DSRA VEBA was established in lieu of lifetime COBRA coverage.

13.     It takes anywhere from six to twelve months for the Internal Revenue Service to rule on a Private Letter Ruling request.  Counsel for the VEBA Committee has been advised by the Internal Revenue Service that, due to the amount of time the Internal Revenue Service is devoting to health care reform implementation, it would likely take more than six months for the DSRA VEBA to obtain a Private Letter Ruling, even if an expedited request were to be made.

14.     Mr. Sumpter is asking for a stay of the COBRA Order to allow time for him to file a Motion for Reconsideration, *i.e.*, until after the September 22, 2011 hearing and, if

---

[3]      As amended, Code Section 35(e)(1)(K) provides that "qualified health insurance" coverage for purposes of the HCTC  includes for "eligible coverage months beginning before February 13, 2012, coverage under an employee benefit plan funded by a voluntary employees' beneficiary association (as defined in section 501(c)(9)) established pursuant to an order of a bankruptcy court, or by agreement with an authorized representative, as provided in section 1114 of title 11, United States Code."  26 U.S.C. § 35(e)(1)(K).  Internal Revenue Code section 501(c)(9) is the section governing the tax-exempt status of voluntary employee benefit associations.  26 U.S.C. § 501(c)(9).

1184433_5

possible, until after the October 27, 2011 hearing. Leaving aside the dubious merits of the futile relief he ultimately seeks, the requested stay will harm DSRA VEBA beneficiaries:  by delaying the finality of the COBRA Order, a grant of Mr. Sumpter's request would seriously jeopardize the DSRA VEBA's ability to secure a favorable Private Letter Ruling from the Internal Revenue Service in time for it to continue to provide health insurance benefits to its participants and beneficiaries when section 35(e)(1)(K) of the Code expires February 13, 2012.  If the DSRA VEBA loses its HCTC eligibility, it will no longer be able to provide meaningful health insurance benefits to thousands of current participants and beneficiaries.

2.      *In Lieu of COBRA Designation Does Not Harm Delphi Retirees*

15.      As a result of its negotiations with the Debtors, the 1114 Committee, with the approval of this Court, established the DSRA VEBA in exchange for waiving its right to appeal this Court's ruling that the Debtors could cease contributions to its retiree welfare benefit plan (Docket No. 16547.)  As part of its negotiations with the Debtors, the Retirees' Committee made a tactical decision not to litigate over a right to lifetime COBRA continuation coverage for retirees whose benefits were modified by the Debtors (Docket No. 21262).  However, that tactical decision was not memorialized in the settlement agreement.  In an effort to make it easier for the DSRA VEBA to obtain a favorable Private Letter Ruling from the Internal Revenue Service and preserve the HCTC eligibility of the DSRA VEBA in the future, the 1114 Committee filed its *Motion to Designate Benefit of DSRA VEBA as In Lieu of COBRA Coverage* (the "COBRA Motion") to memorize its tactical decision to establish the DSRA VEBA instead of litigating over a right to lifetime COBRA continuation (Docket No. 21261).  This Court granted the COBRA Motion and entered the COBRA Order.

16.      Mr. Sumpter states that the COBRA Order irreparably harms Delphi retirees by eliminating their ability to pursue claims for lifetime COBRA coverage.  Mr.

Sumpter's statement is not true: the COBRA Order does not eliminate any rights of retirees that may currently exist (given the Court's July 2009 ruling, there is no such right for the COBRA Order to presently eliminate), but rather is memorializing the tactical decision of the Retirees' Committee not to litigate over the right to lifetime COBRA continuation coverage in exchange for the creation and funding of the DSRA VEBA.[4]

17.     Even though the broader constituency on whose supposed behalf Mr. Sumpter acts is thus not harmed by the COBRA Order, by seeking a stay of that order in order to undertake a futile quest for non-existent COBRA benefits, Mr. Sumpter will only harm the interests of thousands of DSRA VEBA beneficiaries.

## CONCLUSION

18.     For the reasons set forth above, the VEBA Committee respectfully asks the Court to deny the present Motion.

**Remainder of this page intentionally left blank**

---

[4] Mr. Sumpter's argument that the 1114 Committee had no standing to file the COBRA Motion (Mot. ¶ 14) is thus mistaken; the 1114 Committee had not asked for substantive affirmative relief in the COBRA Motion, but for memorialization of what had already effectively been done in 2009.

1184433_5

WHEREFORE, the VEBA Committee respectfully requests that this Court sustain

the present Objection and deny Mr. Sumpter's "Request for Stay of Court Order and Related

Proceedings Regarding of VEBA in Lieu of COBRA Ruling."

Dated: New York, New York
       June 20, 2011

SATTERLEE STEPHENS BURKE & BURKE LLP

By:  ___/s/ Timothy T. Brock_____
       Timothy T. Brock, Esq.
       Abigail Snow, Esq.
230 Park Avenue
New York, New York 10169
(212) 818-9200

Co-Counsel with:

Patricia L. Beaty, Esq.
KRIEG DEVAULT LLP
One Indiana Square, Suite 2800
Indianapolis, IN  46204
(317) 636-4341

*Co-Counsel for Delphi Salaried Retirees*
*Association Benefit Trust VEBA Committee*