21169 Westbay Circle
Noblesville, IN 46062
June 27, 2011

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Albert L. Hogan III
Ron E. Meister

 - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

cc: The Honorable Judge Robert D. Drain

**RE:   DPH,  James B. Sumpter and Various Bankruptcy COBRA Motions
for Delphi Salaried Retirees and Request for Negotiations**

Dear Gentlemen:

After learning of Judge Drain's ruling on my recent motion for a STAY related to VEBA
in lieu of COBRA, I have concluded that I will have a more difficult, but not impossible
task as it pertains to my goal of gaining compensation for life time COBRA for Salaried
Retirees.

My immediate options are to appeal the Judge's ruling or to ask for a rehearing based on
the fact that I did not receive notice of the hearing until after it was concluded.  Judge
Drain indicated that, after I review the transcript of the proceedings, if I chose to, I could
ask for a rehearing.  The transcript is not yet in print.  However, Mr. Tullison has
promised to email a copy to me when it becomes available.

I also believe that I have the option to motion Judge Drain to set aside his order (docket #
21306) based on certain procedural and/or operational anomalies associated with the
VEBA Committee, the Retiree Committee and their related motions. Depending on the
outcome of this motion, I would also have the option to appeal.

However, I would like to propose as an alternative to the legal proceedings, which is that
we negotiate for a finale resolution in conjunction with settling an unresolved claim that I
have for disability life insurance.  I have attached a copy of my final insurance appeal
letter for your reference.

My proposal is that with a negotiated resolution to the Life Insurance Claim, I will not pursue any litigation of the insurance claim, for which the statute of limitations does not expire until October 2012. In addition, I will discontinue all litigation regarding Life Time COBRA.  Also, I will discontinue all my efforts to engage my legislators, the IRS and the Department of Labor on the COBRA issue.

The value of the disability Life insurance claim is $100,000.  There is also the potential for ERISA penalties of at least $322,400. (See attached letter for details.)

I hope you find this proposal of interest and choose to act positively and expeditiously. As you are aware, I have limited time to take actions regarding a rehearing and /or related appeals.

Sincerely,

James B. Sumpter

Phone 317-877-0736
Fax     317-877-1070
Email  jsump@ieee.org

# Disability

# Life

# Insurance

**Appeal of Claim Denial**

**To**

**Delphi Employee Benefits
Plan Committee**

*(14-APR-2010)*

21169 Westbay Circle
Noblesville, IN 46062
April 14, 2010

Delphi Employee Benefits Plan Committee
5725 Delphi Drive
Mail Code: 483-400-606
Troy, Michigan 48098

**RE:    Appeal of Claim Appeal Denial Dated 20-MAR-2010**
**Total & Permanent Disability Benefits, a Payout of Basic Life Insurance**
**Group: 1400-Salaried**
**Appeal Denial dated 20-MAR-2010**
**James B. Sumpter        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**

I am writing to formally appeal the decision by Met Life regarding my request for
Disability Payout of my Basic Life Insurance.  As I stated in my original request and
subsequent appeals, I applied for this benefit base on GM – March 1992 Salaried Plan
Document.  I contend that this is the applicable SPD even through the spin-off of Delphi
Automotive Systems.  I also contend that my request for benefits was prior to April 1,
2009.

**Regarding Benefits instruction at the time of the Spin-Off**

I noted in previous documents that Delphi employees at the time of the spin-off were told
to continue to use the current SPD.  I made no assertion that a specific SPD was identified
when that advisory was issued, as Mr. Coughenour asserted in his denial letter of
20-MAR-2010.  Mr. Coughenour writes that he could find no record of any such
instruction.  However, I offer as relative proof, the transcript from the Delphi bankruptcy
hearing of **24-FEB-2009.**  The transcript can be found by docket number **16451 in Case
No. 05-44481 (RDD)**.  I have copied the following text from pages 113 and 114:

        THE COURT: But what about the testimony that around
        23 the time of the spin-off that the employees were told that it
        24 essentially would be a rollover from GM as far as your
        25 benefits?

        MR. BUTLER: Well, I think in fact the documents
        2 speak for themselves. I'll give you the exhibit number in a
        3 minute of the document that was provided in 1989 in connection
        4 with the transfer -- Your Honor can read the document for
        5 himself - that, too, includes the reservation of rights
        6 language in it. And my point in this is that those plans, when

```
7  they came over from General Motors, came over subject to
8  Sprague. Meaning, I accept the fact that there was a contested
```

This text represents part of the dialog between Judge Drain and Mr. Butler, Delphi's attorney. The question by Judge Drain indicates that there was testimony from others, which confirms my assertion that employees were advised to continue to used the current SPD.


## Regarding SPD Publication


It has been my contention that no other SPD was published until the Delphi January 2002 SPD. It was in the 2002 SPD that the Early Payout provision was eliminated.
However, Mr. Coughenour, (representing MET Life the Benefit Administrator) asserts that the provision regarding Disability Life Insurance Early Payout was eliminated on January 1, 1994. Mr. Coughenour, first offered as proof a 1996 GM SPD.

I contend that this SPD was not widely circulated and that I, along with most employees, never received the document. In addition, I claimed that various ERISA rules regarding benefits changes and notifications were not met. I have attached as **Appendix D**, the ERISA rules that govern benefit change notification. This document also includes my commentary identifying the various notification failures.

As a part of his final denial, Mr. Coughenour offered, as proof of notification, the benefits enrollment document of 1994. In fact, there is a paragraph on page 34 of this document that states that the early payout benefit was eliminated.   However, this document does not meet the ERISA notice requirements. It did not meet the stipulated timing requirements and it is not a document that was identified as a notice of benefit changes. Nor was it an SPD (See appendix A). It should also be noted that no effort was made to draw attention to this change.  For example, this change was not listed in the **"What's Important"** section, starting on page 6 of the enrollment document.

In addition, the relevant information was in the middle of the document and was likely not read by many employees, including me. The reason for this is that the benefit enrollment offered the "easy enrollment" option, which precluded the necessity to read the enrollment booklet, if no changes were being made in benefit selections.

In **Appendix B**, I have provided a record of communications and notes from an inquiry I made to the National Benefit Center, beginning in **November 2003** and lasting through **January 2004**.  You will see in these documents that I requested information on the disability Life insurance payout and that I included excerpts from the GM –MAR-1992 SPD.  I never received an informed answer and the promised follow-up by people at the NBC did not happen. In addition, I never receive a response to my request for the payout.

Considering that my inquiry contained excerpts and reference from the 1992 SPD, a logical first step would have been to provide documentation that showed that this benefit had been changed.  This was not done.  In addition, no copy of the relevant ERISA notice was provided, nor was a copy or excerpts from the 1996 SPD provided.  This is strong evidence that either the documents did not exist or that they were not widely published.

## Regarding Benefit Request Date

In Met Life's final response regarding my claim, Mr. Coughenour letter stated:

> **"You did not apply for a payout of your Basic Life Insurance until April 11, 2009, long after the provision was eliminated under General Motors."**

I have included the e-mail thread between Mr. Coughenour and myself, regarding this issue, in **Appendix C.**  I informed Mr. Coughenour that my request was mailed, via priority mail, on March 12, 2009.  I also indicated that I faxed the request to separate Delphi NBC locations.

In response to my request, Met life requested that I and my physician complete a set of forms that they sent to me in early April 2009.  My Physician completed and mailed the forms after 14-April-2009.  Mr. Coughenour would not change his statement as to when my request was made, as you can read in the e-mail thread.  However, his statement is factually incorrect.  I'm confident that the record demonstrates that the NBC received my request no later than 16-MAR-2009.

In addition, the letter and notes in **Appendix B,** document that I made my original request on 10-JAN-2004.  However, I never received a response from Met Life or anyone else at the National Benefit Center.

## Regarding ERISA Response Requirements

The Administrators behavior in processing my claim and the subsequent appeal is sufficient cause, in itself, to grant my claim.  I have requested information from the Administrator on multiple occasions. However, important questions have gone unanswered.  The Administrator has often failed to provide specifics and has demonstrated a pattern of ignoring important parts of any request. In almost all of the cases, the administrator has failed to even acknowledge that the request has ever been made.

As a result, the Administrator has not met the ERISA mandated response time, as they apply to my appeal or my January 2004 request.  In the list below, I have cataloged these administrative failures, the amount of time that has passed, and whether the request is still pending:

- Response to Jan 2004 Letter                                    Pending over **2283 days**
- Request for Appeal procedure                               Pending over **288 days**
  documentation
- Request for name and address of                        Pending over **311 days**
  decision maker
- Response to  31-JUL-Letter                                    Produced after **86 days**
- Request for information on the impact             Pending over **185 days**
  of Delphi Bankruptcy on administration
  of claim
- Response to my 10-JAN-2010 letter                    Produced after **71 days**

At the time of this letter, there is an accumulated Administrator failure of 3224 days. These delays have the potential of producing an ERISA penalty exceeding $ 322,400, which is at least $ 222,400 greater than my claim.

**Appendix F** contains a copy of a letter that I sent to the Department of Labor (EBSA), the NBC and Met Life on 2-MAR-2010.  This letter documents a number of ERISA related administrative failures relative to this claim.  It also provides additional detail about the various bulleted issues identified above.

Thus, I believe that my 12-MAR2009 claim, my subsequent appeal and the entire communication thread establishes the validity of my claim.  In addition, this letter, along with the included appendixes, demonstrates that the Administrator did not have a valid basis to deny my claim.   I have also demonstrated that there has been a substantial failure to comply with the ERISA statues as it applies to processing my claim.

I, therefore, anticipate a prompt review and approval of my claim.  I also anticipate that important questions regarding the impact of bankruptcy and payout arrangements, which have gone unanswered, will be addressed.

Sincerely,

James B. Sumpter