## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| | :    Chapter 11 |
| In re | : |
| | :    Case No. 05-44481 (RDD) |
| DELPHI CORPORATION, *et al.*, | : |
| | :    Jointly Administered |
| Debtors. | : |
| | :    **Hearing Date:  August 25, 2011** |
| | :    **Objection Deadline: August 18, 2011** |
| | : |

### MEMORANDUM IN SUPPORT OF MOTION OF METHODE ELECTRONICS, INC. FOR LEAVE TO FILE ITS AMENDED COUNTERCLAIM AGAINST THE REORGANIZED DEBTORS IN MICHIGAN

WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000

LOCKE LORD BISSELL & LIDDELL LLP
111 South Wacker Drive
Chicago, Illinois  60606
Telephone:  (312) 443-0654
Facsimile:  (312) 896-6654

LOCKE LORD BISSELL & LIDDELL LLP
Three World Financial Center
New York, NY 10281
Telephone:  212-415-8600
Facsimile:  212-303-2754

Dated:  July 1, 2011

*Attorneys for Methode Electronics, Inc.*

Methode Electronics, Inc. ("Methode"), respectfully submits this Memorandum of Law in support of its Motion for Leave to File Its Amended Counterclaim in Michigan Against the Reorganized Debtors.

## PRELIMINARY STATEMENT

When Methode was last before the Court, the Court directed it to reformulate its proposed counterclaim.  Methode has done that and tendered its proposal to Delphi, but Delphi has not advised whether Methode's proposal is acceptable.  Accordingly, we must now ask the Court to approve Methode's prosecution of this counterclaim in Michigan, consistent with applicable law and this Court's prior rulings in this matter.  This memorandum sets forth the reasons, including Delphi's concealed preference action against Methode, that support Methode's right to freely prosecute its counterclaim in Michigan.

The Court should grant Methode leave to file its amended counterclaim—asserting breach of a contract that was executed after confirmation of Delphi's first plan of reorganization—in Michigan state court.  Delphi should readily agree to this forum.  After all, the Michigan court is the forum (i) that Delphi consistently imposed on its vendors, including Methode, (ii) where Delphi initiated its lawsuit against Methode, and (iii) in which Delphi litigated the state-law issues extensively both before and after Delphi's Modified Plan was confirmed.  In fact, this Court recognized the significant involvement by the Michigan court in the contract dispute and that Michigan was an appropriate venue.  After all, as previously successfully argued by Delphi, Michigan is the epicenter of the automotive industry.

In fact, Delphi had expressly agreed to this approach.  It litigated the contract action in Michigan for fourteen months and even agreed to a date for trial by jury in the Michigan court— before it abruptly moved to enjoin the Michigan proceedings to the complete surprise of the

2

Michigan judge and Methode.  Delphi's "about-face" is nothing more than a ploy to avoid resolution of a legitimate contract action on the merits before the state court mutually selected by the parties.  This Court should not involve itself with this non-core, pure state-law counterclaim which has no nexus to the bankruptcy, especially at this late, post-confirmation, stage of these proceedings.

This is all the more true because the entire contract and lawsuit at issue never would have come into existence had Delphi merely disclosed that it had secretly sued Methode in this Court *a year earlier* for alleged preference payments. Delphi concealed the preference action so that Methode would be lulled into continuing to do business with a party that had just sued it for $20 million!  During the time it concealed its preference lawsuit from Methode, Delphi procured various orders from this Court, including the administrative bar dates and a vague "injunction" embedded within the depths of its Modified Plan.  Under the guise of enforcing those very same orders, Delphi now attempts to use those orders as roadblocks to Methode's counterclaim. Methode had no idea of critical facts or its claims against Delphi while Delphi obtained relief from the Court and, therefore, did not receive "notice" thereof.  Thus, Delphi cannot now use these orders to challenge Methode's rights.  Delphi further compounded these abuses by ignoring both the basic notice requirements as to the content of those notices and this Court's orders governing notice of the motions that allowed it to keep its preference lawsuits "under seal." Having misled the Court and Methode, Delphi should not now be allowed to avoid adjudication of its contract lawsuit on the merits.

Instead of prolonging this litigation over where to litigate the parties' supply contract, the Court should send this case back to Michigan state court where it belongs, before a judge who has already spent a significant amount of time on this contract dispute between the parties.

3

There the parties can focus their time, effort, and expense not on these disputes of Delphi's own making but on resolving the underlying contract action once and for all.

## STATEMENT OF FACTS

**A.      Delphi's Plans of Reorganization**

In October 2005, Delphi Corporation and a number of its affiliated entities, including Delphi Automotive Systems LLC ("DAS") (collectively "Delphi")[1] filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code.

On September 6, 2007, Delphi filed its first joint plan of reorganization and on December 10, 2007, filed an amended plan.  On January 25, 2008, this Court entered an order confirming Delphi's amended plan of reorganization (the "Confirmed Plan").  On April 4, 2008, Delphi announced that it was unable to consummate the Confirmed Plan.  However, **the Confirmed Plan was never revoked or rescinded.**

Subsequently, Delphi filed a modified plan (the "Modified Plan"), which was confirmed by this Court pursuant to an order entered on July 30, 2009 (the "Plan Modification Order"). The Plan Modification Order provided that the Modified Plan did not vacate or revoke the Confirmed Plan, and that the provisions of the Confirmed Plan remained in full force and effect except where modified.  *See* Plan Modification Order, § 3.  The Modified Plan became effective on October 6, 2009.

---

[1] For simplicity's sake, Delphi Corporation and its related entities are referred to as "Delphi."  By defining "Delphi" collectively here, Methode is not waiving the distinction between Delphi and its related entities; nor is Methode waiving its argument regarding the inadequacy of the bar date notice as to Delphi Automotive Systems, LLC (DAS), the particular Delphi entity that sued Methode in Michigan state court.  *See* section V.A *infra*.

B.    **The 2008 Supply Agreement**

Methode's business relationship with Delphi began in August 2001 when the parties

entered into the first of three long-term supply agreements.  Under these agreements, Methode

supplied to Delphi certain bladder assemblies ("subject parts") that are critical to the

determination of whether a minimum threshold weight is applied to the vehicle's passenger seat.

If the minimum threshold is met and a deployable event occurs, the system deploys the airbag.

Each supply agreement typically spanned several years.  The critical advantage to Delphi

of a long-term agreement was that Delphi was able to purchase the subject parts at a lower price

because Methode was able to spread costs over a greater number of parts and a longer period of

time.  On December 20, 2004 Methode and Delphi entered into a new supply agreement that was

scheduled to expire on June 30, 2008.  Despite Delphi's bankruptcy filing, and substantial unpaid

amounts owing to Methode, Methode continued to supply these safety-critical parts to Delphi

without any price increases.

With the approaching expiration of the 2004 agreement, Methode informed Delphi that it

would have to seek price increases.  Specifically, Methode advised Delphi that price increases

were necessary in the next contract due to rising costs for materials and other components and

significant declines—in excess of 50%—in the quantity of purchased parts.  In addition, since

2001, Methode had provided year-after-year price decreases to Delphi, which could not continue.

In December 2007, shortly before the Court's confirmation of the Confirmed Plan,

Delphi and Methode commenced negotiations over a new agreement.  However, the parties were

unable to consummate a new agreement before the scheduled expiration of the 2004 agreement.

As an accommodation to Delphi, Methode agreed to continue supplying the subject parts to

Delphi as negotiations continued.

In August 2008, with no agreement in place, Delphi requested that Methode provide two different pricing options based on a one-year and a three-year contract. Methode did so. Its three-year proposal offered lower pricing because costs could be spread over a much larger volume of parts.

On September 4, 2008, Delphi accepted Methode's lower-priced, three-year proposal, and the parties entered into a new long-term agreement (the "2008 Agreement"). Throughout these negotiations, Delphi conducted itself as a post-confirmation entity—free to enter into binding agreements without bankruptcy restrictions.

**C.    Delphi's Mandatory Forum Selection Clause**

As a condition to entering into any contract with Delphi, Delphi (i.e., before, during and after its Chapter 11 case) provided all of its suppliers, including Methode, a set of detailed General Terms and Conditions, which are available on Delphi's website. Among these terms and conditions was a provision that required all Delphi suppliers to agree in advance that all contract disputes would be brought in Michigan courts. Specifically, the clause provided:

> each party hereby agrees that the forum and venue for any legal proceeding or equitable action or proceeding arising out of, or in connection with, this Contract will lie in the appropriate federal and state courts in the State of Michigan and specifically waives any and all objections to such jurisdiction and venue.

Delphi General Terms and Conditions §26.1 (Ex. 1).

Delphi continued to impose the Michigan forum on its suppliers after it filed for bankruptcy, after confirmation of the Confirmed Plan and even after confirmation of the Modified Plan without any reference to its bankruptcy case. Delphi thus sought to convey the message to its suppliers that it was free to do business "as usual," unhindered by its bankruptcy cases. The confirmation of the Confirmed Plan in January 2008 further reinforced Delphi's

6

public message that its everyday business affairs were separate from, and would not be affected

by, the remaining vestiges of its bankruptcy case.

**D.      Delphi's 30-Month Concealment of the Methode Preference Case**

Delphi's public message was egregiously out of line with its own conduct with respect to

Methode.  Unbeknownst to Methode, prior to the negotiations of the 2008 Agreement, Delphi

secretly filed an adversary proceeding against Methode with this Court seeking to recover almost

$20 million in allegedly preferential pre-petition transfers (the "Preference Lawsuit").  Delphi

filed the complaint against Methode on September 28, 2007 "under seal" and then sought an

order from this Court extending its deadline for serving the complaint.  On three subsequent

occasions, Delphi moved this Court to extend its deadline to unseal and serve the complaint (the

"Extension Motions").  Delphi convinced the Court that it needed to keep the preference

complaint sealed and un-served in order to maintain good relationships with its suppliers.

Notably, Delphi failed to serve the Extension Motions on Methode in the manner required by this

Court's case management order and, on at least one occasion, expressly misrepresented to this

Court that it had properly served Methode with the Extension Motion.  Delphi did not serve the

complaint on Methode and Methode remained unaware of its existence, until March 19, 2010,

some <u>thirty months</u> after it was actually filed.

Accordingly, throughout the time that the parties were negotiating the 2008 Agreement,

Delphi knew—but Methode had no idea—of the existence of the Preference Lawsuit.  Contrary

to Delphi's "business as usual" public message, Delphi had actually embroiled Methode in its

bankruptcy proceedings, even if Methode was not yet aware of these developments.  Methode

would never have agreed to the terms of the 2008 Agreement had it known that Delphi had sued

it for close to $20 million.  Delphi's concealment of its Preference Lawsuit deprived Methode of

its ability to negotiate fully the 2008 Agreement and to protect its rights against Delphi.

**E.**    **Delphi's Contract Lawsuit Against Methode in Michigan**

On October 23, 2008, less than two months after Delphi and Methode entered into the

2008 Agreement, Delphi commenced suit against Methode in Oakland County Michigan (the

"Contract Lawsuit").  Delphi brought this action pursuant to the terms of the 2008 Agreement,

seeking to obtain certain drawings for tools that were used to manufacture the subject parts.  In

its Complaint, Delphi specifically relied upon the contract's forum selection clause as the basis

for initiating suit in Michigan and in two subsequent amendments of its Complaint.

Significantly, Delphi's Second Amended Complaint was filed only days before confirmation of

the Modified Plan.

Delphi litigated its Contract Lawsuit in Michigan for fourteen months.  In fact, the

litigation proceeded at an active pace and at a substantial cost to both sides.  The Michigan court

conducted several lengthy substantive hearings and set the case for trial.

On January 9, 2009, almost a year after confirmation of Delphi's Confirmed Plan, and in

response to the Contract Lawsuit, Methode counterclaimed for anticipatory repudiation of the

2008 Agreement.  Delphi did not attempt to remove the case to federal court, as it could have

attempted under Rule 9027(a)(3) of the Federal Rules of Bankruptcy Procedure.  During the

spring and summer of 2009, the case continued in Michigan state court with active participation

by Delphi and Methode.  For example, the parties exchanged written discovery requests and

litigated the terms of a protective order.  Delphi served extensive discovery requests, which

required Methode to hire almost fifty contract attorneys and an e-discovery consultant to collect

and review millions of pages of Methode's electronically-stored information.  To date, Methode

has produced over half-a-million pages of documents.

Despite fourteen months of litigation in the Michigan court, Delphi never offered the

slightest indication that the Contract Lawsuit or Methode's Counterclaim had any connection to

8

its bankruptcy cases or to the Modified Plan.  For example, while Delphi actively pursued the

Michigan litigation, Delphi simultaneously filed a disclosure statement and obtained this Court's

approval of the Modified Plan.  Neither of these documents mentions the Contract Lawsuit or

Methode's Counterclaim.  Likewise, the schedule of "Retained Actions" annexed to the

Modified Plan did not list the Contract Lawsuit, Methode's Counterclaim, or anything relating

thereto.

**F.      Delphi's Termination of the 2008 Agreement**

On August 26, 2009, while actively litigating the Contract Lawsuit in Michigan, Delphi

notified Methode that it was unilaterally terminating the 2008 Agreement, effective September

10, 2009.  This termination occurred only ten months into the three-year contract.  Thus, Delphi

exploited Methode's lower three-year pricing model, but then terminated the agreement after less

than a full year.  In perfect hindsight, Delphi's approach with Methode can be summed up as

"heads I win, tails you lose."

**G.      Delphi's Administrative Bar Dates**

On June 16, 2009, this Court established July 15, 2009 as the first bar date for

administrative claims that were incurred on or before June 1, 2009 (the "First Bar Date").  The

notice of the First Bar Date ("First Notice") contained the administratively consolidated "Delphi

Corporation" caption and stated as follows: "[a]ny party that wishes to assert an administrative

claim under 11 U.S.C. § 503(b) for the period from commencement of these cases through June

1, 2009 shall file a proof of administrative expense . . . ."  Modifications Procedures Order, June

16, 2009, ¶ 38, p. 22.  However, the First Notice made no specific reference to Delphi

Automotive Systems, LLC, the particular Delphi company that brought suit against Methode and

that Methode had counterclaimed against.  Nor did the First Notice give any indication that it

9

covered non-bankruptcy, post-confirmation litigation already proceeding in other courts pursuant
to the Confirmed Plan.

In fact, Delphi's First Notice created considerable ambiguity as to the type of claim for
which filing of an administrative claim was required both generally and, in particular, with
respect to Methode.  As is typical in a large bankruptcy, Delphi's Confirmed Plan, for example,
expressly provided that "no request for payment of an Administrative Claim need be filed with
respect to an Administrative Claim which is paid or payable in the ordinary course of business."
(Confirmed Plan, Art. 10.5).  Similarly, the Modified Plan's disclosure statement provided that
no proof of claim is required for administrative claims arising from ordinary course transactions
and that such claims are to be paid by Delphi in the ordinary course (Supplement to Disclosure
Statement, June 16, 2009, S-xxx).  The Modification Procedures Order also provided that no
proof of claim was required for certain ordinary course transactions.  (Modifications Procedures
Order, p. 23).[2]  These notices suggested that, as was the case with the Confirmed Plan, filing of a
Proof of Claim was not necessary for ordinary course transactions.

On the same date that the Modified Plan was confirmed, July 30, 2009, this Court also
established November 5, 2009 as the second bar date for administrative claims.  The second bar
date was to cover claims that accrued after the First Bar Date through the Modified Plan
Effective Date (the "Second Bar Date").

---

[2] The Court also confirmed this where it stated, "the debtors have been very clear that they're continuing to pay
administrative claims in the ordinary course."  (Transcript, June 10, 2009, p. 150).  And, at the hearing on the
Modified Plan, Delphi confirmed on the record that the First Administrative Bar Date did not apply to ordinary
course transactions.  (Transcript, July 30, 2009, p. 66).

### H.    Methode's Administrative Claims

Methode did not file any proof of claim before the First Bar Date because it was not required to do so.  Methode reached this conclusion for a multitude of reasons, not the least of which was the fact that Delphi had not breached the contract yet and Methode was continuing to supply and get paid for the subject parts.  In addition, no claim was needed because: (i) Methode's Counterclaim arose in the ordinary course of Delphi's business, (ii) Methode's Counterclaim was already pending in a separate proceeding in Michigan, which—based on Delphi's actions—appeared to have no connection to Delphi's bankruptcy, (iii) filing an administrative claim would potentially have impaired Methode's rights in the Contract Lawsuit, including the parties' right to a jury trial, which both Delphi and Methode had already requested, and (iv) Methode's Counterclaim was not an "administrative expense claim" for which a claim had to be filed before the First Bar Date because Methode's claim was not going to be payable until months or years after consummation of the Modified Plan.

On November 5, 2009, the last day of the Second Bar Date, Methode filed a "protective" proof of claim with the Court covering its counterclaim.  Methode waited until the very last day to demonstrate its objection in the event that Delphi would seek to use the bar date process to improperly obtain an unfair advantage in the Contract Lawsuit.  Throughout the bar date process, Methode was unaware that it had been sued by Delphi for close to $20 million in the Preference Lawsuit.

### I.    Delphi's Post-Effective Date Conduct

Throughout the Modified Plan confirmation process and after its effective date of October 6, 2009, Delphi continued actively litigating the Contract Lawsuit in Michigan.  Delphi never suggested to the Michigan court that the Contract Lawsuit was subject to the bankruptcy court's jurisdiction, nor did it ever question the appropriateness of the Michigan forum.

11

In fact, Delphi's actions confirmed precisely the opposite.  Delphi repeatedly availed itself of the Michigan court's jurisdiction and authority on numerous occasions, including the following:

- On August 25, 2009, Delphi requested a jury trial in Michigan.

- On October 20, 2009, Delphi petitioned the Michigan court to compel Methode to produce documents.

- On October 28, 2009, Delphi filed a joint motion to extend a scheduling order, which included scheduling a new trial date.  The motion was granted on November 19, 2009.

- On November 25, 2009, Delphi again sought Michigan court intervention and opposed Methode's motion for leave to subpoena an out-of-state supplier.

- On December 7, 2009, Delphi filed a brief responding to a motion to compel filed by Methode.

- Delphi also made substantial document productions after the effective date of the Modified Plan.

Delphi's actions after the Modified Plan's effective date demonstrate that Delphi did not see any connection between the Michigan litigation and its bankruptcy case or the Modified Plan.

**J.    Delphi's Motion to Enjoin the Contract Lawsuit**

After litigating in Michigan for fourteen months, on December 4, 2009, Delphi abruptly moved the Michigan court to dismiss or enjoin the Contract Lawsuit.  As the basis for this request, Delphi argued for the very first time that Methode's Counterclaim was barred by an injunction contained in the Modified Plan and Plan Modification Order, which provided:

> Except as otherwise specifically provided in the Modified Plan . . . the Debtors and all Persons shall be precluded and permanently enjoined on and after the Effective Date from  . . . commencing or continuing in any manner any Claim, action, employment of process, or other proceeding of any kind with respect to any Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date.

Plan Modification Order, ¶ 22, p. 54.

Delphi's injunction argument came as a complete surprise to Methode and the Michigan trial judge because Delphi had never raised the Modified Plan injunction in the Michigan Court or suggested in any way that the proceedings in Michigan were somehow subject to bankruptcy jurisdiction.  At the same time, nothing in the Modified Plan or its disclosure statement referred to the Contract Lawsuit or Methode's Counterclaim or even hinted that these claims fell within the scope of the Modified Plan injunction.

By Order and Opinion, on February 24, 2010, the Michigan court recognized that Modified Plan injunction "does not address [Methode's Counterclaim], much less explain how its continuation would defeat or impair the [Michigan court's] jurisdiction with respect to the Delphi petition."  Nevertheless, the Michigan court decided to "honor the order, at least until it is modified by the Bankruptcy Court" and stayed the Contract Lawsuit.

## K.    Methode's Objections to Delphi's Motions

On March 19, 2010, Delphi filed an objection in this Court (the "Objection") in which it challenged Methode's administrative claims on the grounds that the claims were "duplicative of each other, include untimely claims that were asserted after the applicable July 15 Bar Date, and assert liabilities and dollar amounts that are not owing pursuant to the Reorganized Debtors' books and records."[3]  Delphi argued that Methode should have filed an administrative claim by

---

[3] See Forty-Sixth Omnibus Claims Objection, at 10, ¶ 19, March 19, 2010, Docket No. 196711.

July 15, 2009, the First Bar Date, because Methode's Counterclaim was for Delphi's anticipatory repudiation of the 2008 Agreement.[4]

On April 20, 2010, Methode filed a motion (i) for authority to continue litigating the Contract Lawsuit in Michigan and (ii) asking the Court to overrule Delphi's timeliness objection as to Methode's administrative claim. At a hearing on May 20, 2010, this Court allowed Methode to amend its counterclaim to assert a "post bar date breach," i.e., a claim based on Delphi's termination of the 2008 Agreement after the First Bar Date. The Court specifically distinguished between anticipatory breach and breach of contract, the latter of which occurred after the First Bar Date. Methode revised its counterclaim accordingly and tendered its proposed amended counterclaim to Delphi. However, Delphi objected, and the parties submitted supplemental briefing on the issue.

At a hearing on July 22, 2010, the Court stated that the proposed amended counterclaim insufficiently alleges a claim based on Delphi's conduct after the Second Bar Date. The Court also directed Methode to revise its counterclaim further, so that it alleges a claim based on Delphi's conduct that occurred after June 1, 2009, as opposed to Delphi's "pre-bar date conduct."

## L.    The Consequences of Delphi's Concealment

Coincidentally, Delphi filed its Objection to Methode's Counterclaim with the Court on March 19, 2010—the very same day on which Delphi unsealed and served the Preference

---

[4] As explained *infra* at Argument section II, Methode was not required to file a claim by the First Bar Date because Delphi had not terminated the contract until well after the First Bar Date. To the contrary, in May and June of 2009, Delphi continued to purchase and pay for the subject parts from Methode, and Methode continued to supply the parts well beyond the First Bar Date. No breach occurred until after the First Bar Date. In fact, within days of the First Bar Date, Delphi counsel advised Methode in writing on May 29, 2009 that Delphi was not currently manufacturing and did not intend to manufacture the subject parts for future commercial use, thus representing that Delphi did not intend to breach the contract. *See* Ltr from Charles Shifley to Katherine Barecchia dated May 29, 2009 (Ex. 2).

Lawsuit on Methode.  Delphi's Objection did not even mention the Preference Lawsuit or acknowledge that (i) its astounding thirty months of concealment from Methode might affect the relief it was seeking against Methode, (ii) it failed to provide Methode with required notice of the Extension Motions, or (iii) that it had misled the Court on at least one occasion by representing that such notice was provided to Methode when, in fact, Delphi provided nothing more than the same computer-blip ECF notice it provided to its entire service list.

As it turns out, Delphi used the time during which it concealed preference complaints against Methode and numerous other defendants to obtain critical relief from the Court affecting these parties, including the Modified Plan, the Plan Modification Order, the Modified Plan injunction and both of the administrative bar date orders.  In light of these facts, Methode has revised its proposed amended counterclaim accordingly and submitted it to Delphi on May 27, 2011.  *See* Methode's Proposed Counterclaim (Ex. 3).  To date, Delphi has not advised whether it is acceptable.

**M.      Summary of Methode's Legal Position**

As demonstrated below, even if the Court concludes that it has jurisdiction over the Contract Lawsuit and Methode's Counterclaim, the Court should overrule Delphi's Objection and grant Methode's motion because Delphi concealed the Preference Lawsuit from Methode and made other related misrepresentations to this Court.  As a matter of law, the Court cannot enforce bar dates and an injunction against Methode where each of these orders was requested by Delphi and approved by the Court while Delphi intentionally concealed such significant information from Methode for an astounding two and-a-half years.

Further, as recognized by this Court at an earlier hearing, Methode's cause of action for Delphi's breach of contract did not arise until Delphi terminated the contract, which was after the First Bar Date.  Thus, Methode's administrative claim was timely.

15

By filing its administrative claim, Methode in no way consented to the jurisdiction of this Court. First, at the time of filing, Delphi was actively concealing its secret Preference Suit and thus Methode's actions cannot be considered a consent or waiver. In addition, Methode was faced with a Hobson's choice at the time—if Methode did not file a claim, Delphi would allege that Methode's Counterclaim was barred, and if Methode filed a claim, Delphi would assert that Methode was consenting to the Court's jurisdiction.

In any case, this Court lacks jurisdiction over the Contract Lawsuit. This lawsuit involves nothing more than post-confirmation, state law breach of contract claims, which have no place in this Court. Therefore, these claims should be returned to the Michigan court and Methode should be allowed to resume litigation against Delphi without any restrictions imposed by this Court.

## ARGUMENT

### I.    DELPHI CANNOT ENFORCE THE BAR DATES AGAINST METHODE BECAUSE IT PROCURED THEM WHILE CONCEALING THE PREFERENCE LAWSUIT

First and foremost, Delphi's disclosure to Methode of the secret preference suit did not occur until March 2010—well after the occurrence of both bar dates and the Modified Plan Injunction. Prior to the bar dates, Methode had no knowledge of, nor could it have discovered, Delphi's actions. But for Delphi's post-bar date conduct, Methode would never have entered into the 2008 Agreement with Delphi. During that critical period of concealment, Delphi induced Methode to enter into a long term agreement that Methode would never have agreed to, had it known that Delphi had secretly sued it for $20 million.

Delphi should not be able to use the bankruptcy court process to bar Methode's Counterclaim because the entire contract between Delphi and Methode would not have existed but for Delphi's concealment of its preference lawsuit for thirty months. Having misled

16

Methode and the Court in order to induce Methode to enter into the contract, Delphi should not

now be allowed to take further advantage of circumstances it created through its bankruptcy

court gamesmanship.

Second, Delphi cannot enforce the Modified Plan injunction or either of the

administrative bar dates against Methode because these orders were procured from the Court

while Delphi concealed the Preference Lawsuit from Methode.  As a matter of law, the

boilerplate "notices" that Delphi purportedly provided with respect to each of these orders do not

compensate for Delphi's concealment and misrepresentations and cannot be used to bar

Methode's Counterclaim.[5]

Delphi's Objection to Methode's Counterclaim—which it filed on the very same day that

it unsealed the Preference Lawsuit—fails even to mention that the very orders upon which the

Objection is based—the Modified Plan injunction and both of the Administrative Bar Date

orders—were procured from the Court during the thirty-months that Delphi actively concealed

the Preference Lawsuit.  Given the magnitude of the Preference Lawsuit and the negative

ramifications to Methode arising from each of these orders, the boilerplate "notice" that Delphi

purportedly provided with respect to each of these orders was, as a matter of law, inadequate as

to Methode.  As the United States Supreme Court held in *Mullane v. Central Hanover Bank &*

*Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652 (1950), notice must be "reasonably calculated, under

all the circumstances, to apprise interested parties of the pendency of the action and afford them

an opportunity to present their objections."  Delphi's form "notices" gave Methode no

---

[5] As explained in Section V, *infra* each of the notices with respect to these orders failed to satisfy applicable notice
requirements.

opportunity to protect its rights and present its objections because Delphi continued to conceal

critical facts from Methode.

In fact, a creditor is not bound by a plan of reorganization or other court orders unless the

debtor has provided the creditor with adequate notice.  *See Chemetron Corp. v. Jones*, 72 F.3d

341, 346 (3d Cir. 1995) ("Inadequate notice is a defect which precludes discharge of a claim in

bankruptcy."); *In re Unioil*, 948 F.2d 678, 683 (10th Cir. 1991) (creditor's claim could not be

discharged based on missing the bar date where formal notice of plan was not received, despite

having actual knowledge of bankruptcy proceeding because "discharging a creditor's claim in

Chapter 11 bankruptcy under 11 U.S.C. § 1141(d) without reasonable notice and opportunity to

be heard violate[s] the creditors Fifth Amendment due process rights"); *Adam Glass Service, Inc.

v. Federated Dep't Stores*, 173 B.R. 840, 843 (E.D.N.Y. 1994) (noting that bankruptcy courts in

the Second Circuit follow the rule that due process prevents discharging a creditor's claim where

formal notice of the plan was not given).  To hold a creditor bound under such circumstances

would violate its due process rights.  *See In re Waterman Steamship Corp.*, 157 B.R. 220, 221

(S.D.N.Y. 1993) ("Due process requires the provision of reasonable notice to those parties whose

claims are to be discharged.").

This is especially true where, as in this case, the debtor has concealed material

information from the creditor.  *Tillman v. Camelot Music, Inc.*, 408 F.3d 1300, 1308 (10th Cir.

2005) (bar date notice was deemed insufficient because employer concealed life insurance

policies from employees to prevent them from claiming entitlement to benefits from policies).

In fact, Delphi did far more than merely "conceal" information—it actively misled

Methode and the Court by repeatedly seeking extensions of time to serve the preference

complaint while keeping it sealed.[6]  In seeking this authority, Delphi represented to the Court

that it required this relief for the alleged purpose of maintaining good relationships with its

suppliers.  *See* Preservation of Estate Claims Procedure Motion, filed August 6, 2007 [Docket

No. 8905], pp. 20-21.  But Delphi never disclosed to the Court that, rather than maintaining a

good relationship with Methode, Delphi had in fact already sued Methode in Michigan.  Delphi

also repeatedly violated this Court's case management order because it failed to provide

Methode with particularized notice of the Extension Motions.  Furthermore, on at least one

occasion, Delphi misrepresented to this Court that service of its Extension Motion complied with

this Court's order when it failed to do so[7].  Thus, insofar as Methode was concerned, Delphi's

representations to the Court were false and constituted a blatant abuse of the bankruptcy process.

*See Chan v. Secured Creditor Allied Banking Corp.*, 243 F.3d 547 (9th Cir. 2000).[8]

Delphi concealed the Preference Lawsuit from Methode and Delphi misled the Court

while it procured the Modified Plan, the Modified Plan injunction, and the administrative bar

date orders.  Thus, Delphi should not be permitted to enforce these orders against Methode.

Accordingly, Methode should be free to proceed in Michigan with its amended counterclaim as

if none of these orders were entered by this Court.[9]

---

[6] These extension orders included: (i) Preservation of Estate Claims Procedure Order, entered August 16, 2007 [Docket No. 9105]; (ii) Extension of Avoidance Action Service Deadline Order, entered March 28, 2008 [Docket No. 13277]; (iii) Postconfirmation Extension of Avoidance Action Service Deadline Order, entered April 30, 2008 [Docket No. 13484]; and (iv) Postconfirmation Extension of Avoidance Action Service Deadline Order, entered October 22, 2009 [Docket No. 18999].

[7] On this occasion, Delphi provided nothing more than ECF notice – the same notice provided to everyone on its service list.  Delphi has never acknowledged to the Court that it made this misrepresentation.

[8] Methode joined a number of Rule 60 motions as to the numerous concealed preference actions commenced by Delphi.  To the extent necessary, those motions are incorporated by reference in their entirety.

[9] Methode is not seeking to address the propriety of Delphi's actions in seeking leave to file preference complaints under seal, which is the subject of a separate action.  Methode's position here is simply that even if Delphi was entitled to such relief in connection with the Preference Lawsuit, its failure to make adequate disclosure to Methode rendered its notices with respect to the bar dates and the Modified Plan injunction inadequate.

## II.    METHODE'S PROOF OF CLAIM WAS TIMELY BECAUSE DELPHI'S BREACH OF CONTRACT OCCURRED AFTER THE FIRST BAR DATE

Methode was not required to file a claim by the First Bar Date because Delphi had not actually terminated the 2008 Agreement by the end of the claims period for the First Bar Date. To the contrary, in May and June of 2009, Delphi continued to purchase and pay for the subject parts from Methode, and Methode continued to supply the parts well beyond the First Bar Date. No breach occurred until after the First Bar Date.  In fact, just days before the First Bar Date, Delphi counsel advised Methode in writing on May 29, 2009 that Delphi was not currently manufacturing and did not intend to manufacture the subject parts for future commercial use, thus representing that Delphi did not intend to breach the contract.

Despite Delphi's representation on May 29, it sent Methode a termination notice for the 2008 Agreement on August 26, 2009, effective September 10, 2009—after the First Bar Date. Thus, the facts that gave rise to Methode's claim for breach of contract did not occur until after the First Bar Date but before the Second Bar Date.

As acknowledged by the Court on May 20, 2009,

> …the contract claim against DPH that's being asserted, and the only contract claim that's being asserted on this contract, is based upon the August termination, the claim of breach in August. And, obviously, a claim for anticipatory breach is different than a claim for actual breach, and you're asserting a claim for actual breach now, not anticipatory breach.

> Transcript 27:23 – 28:4.

The Court ordered Methode to assert a claim based on post-bar date facts.  As set forth above, Delphi's contract termination, which gives rise to Methode's Counterclaim, occurred after the First Bar Date.

### III.    METHODE'S LAST-DAY PROOF OF CLAIM DID NOT CONFER THIS COURT WITH JURISDICTION OVER ITS COUNTERCLAIM

Delphi apparently claims that Methode's filing of an administrative claim has conferred this Court with jurisdiction over its counterclaim.  As demonstrated below, this is incorrect for two reasons.  First, Methode filed its claim while Delphi continued to conceal the Preference Lawsuit.  As a matter of law, Methode's actions taken while Delphi concealed these facts cannot constitute a "consent" or "waiver" to this Court's jurisdiction or for any purpose.  The second reason is that Methode's proof of claim was filed involuntarily in order to prevent Delphi from using its Administrative Bar Dates to strip Methode of its rights in the Contract Lawsuit.

### A.    Delphi's Intentional Concealment of the Preference Lawsuit Precludes Its Claim that Methode "Consented" to Jurisdiction

A court of equity should not countenance Delphi's active concealment of its $20 million Preference Lawsuit while Delphi procured orders from this Court that directly affected Methode, including the bar dates.  Delphi's concealment of its lawsuit directly impacted the contract at the heart of Methode's Counterclaim and Methode's ability to protect its rights.  For example, Methode offered pricing to Delphi during negotiation of the 2008 Agreement without any knowledge that it potentially faced an almost $20 million liability to Delphi.  Methode would never have entered into the 2008 Agreement had it known of this lawsuit.  Delphi should not be able to take further advantage of its conduct by seeking to bar Methode from pursuing its counterclaim in Michigan state court arising out of Delphi's ill-gotten agreement.

Moreover, as a matter of law, Delphi's concealment of the Preference Lawsuit precludes Delphi from asserting that Methode's administrative claim constituted any sort of "waiver" or "consent" for any purpose.  Courts have consistently held that a waiver or consent based on concealed information is invalid.  *Davis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 906 F.2d 1206, 1213-14 (8th Cir. 1990) (plaintiff did not waive securities claim due to failure to object to

21

unauthorized trades because it was "clear that her alleged ratification or waiver was not given

voluntarily and intelligently with full knowledge of the facts."); *Andrews v. Blue*, 489 F.2d 367,

375 (10th Cir. 1973) ("To have an effective estoppel or waiver there must be full knowledge on

the part of the plaintiff. Where, as here, the crucial information was withheld or concealed the

crucial element is not present."); *Kenneally v. First Nat. Bank of Anoka*, 400 F.2d 838, 843 (8th

Cir. 1968) (bankruptcy trustee was not estopped from contesting validity of securities

instruments given by debtor, but executed without knowledge of debtor's officers, because a

party cannot be estopped from contesting a representation unless that party had full knowledge of

the facts of the representation giving rise to estoppel); *Dekro v. Stern Bros. & Co.*, 540 F.Supp.

406, 418 (D.C. Mo. 1982) (denying underwriter's waiver defense because underwriter

consistently failed to disclose and actually concealed information).

Having concealed the Preference Lawsuit from Methode for thirty months, Delphi is

precluded from asserting that Methode's actions or inactions during Delphi's concealment

constituted a "consent" or "waiver" on Methode's part. *See City of Alexandria v. Cleco Corp.*,

05-cv-01121, 2010 WL 290506, at *14 (W.D. La. Jan. 22, 2010) (contractor's failure to disclose

crucial information vitiated the waiver).

### B.    The Involuntary Filing Of A Claim Does Not Confer Jurisdiction

Although the filing of a claim is ordinarily held to constitute consent to the bankruptcy

court's jurisdiction, this rule is inapplicable here because Delphi misused its power with this

Court to obtain an unfair advantage in the Contract Lawsuit.  Delphi's bar dates left Methode

with a Hobson's choice—no matter what Methode did or did not do, its rights in the Contract

Lawsuit would be materially impaired.  Refraining from filing an administrative claim would

have jeopardized Methode's Counterclaim because Delphi would certainly claim, as it now does,

that Methode's Counterclaim is barred.  Complying with the First Bar Date, on the other hand,

would arguably have constituted consent to this Court's jurisdiction and a waiver of Methode's

right to a jury trial in the Contract Lawsuit.  Thus, Methode was left with only remaining

alternative—to file a proof of claim before the Second Bar Date, which Methode did not do until

the very last day.  Methode also promptly objected to this Court's jurisdiction when Delphi

attempted to enjoin Methode's Counterclaim before the Michigan court and this Court.  Delphi's

bar dates placed Methode in a losing, untenable position regardless of its actions.  This is not the

purpose of bankruptcy law.

In *In re Castlerock Properties*, 781 F.2d 159, 162-63 (9th Cir. 1986), the court held the

filing of a defensive proof of claim by a creditor did not confer jurisdiction on the bankruptcy

court where the creditor was left with no alternative.  In that case, the creditor commenced a

breach of contract action against the debtor in state court before the petition was filed, which was

stayed by the chapter 11 filing.  Rather than filing a proof of claim, the creditor moved for relief

from the stay, and in response, the debtor filed counterclaims.  After objecting unsuccessfully to

the court's jurisdiction, the creditor filed a proof of claim.  The court recognized that the filing of

the claim was a defensive maneuver because "[the creditor] would not have filed the Proof of

Claim if the bankruptcy court had declined jurisdiction over the [debtor's] counterclaims." *Id.* at

161-62.  In rejecting the debtor's reliance on the general rule that a creditor consents to

bankruptcy jurisdiction over related counterclaims by filing a proof of claim, the court explained

as follows:

> The purpose of the rule, to prevent a bankruptcy trustee from
> having 'to split a cause of action by defending against the claim in
> the summary proceedings and then seeking affirmative relief in a
> plenary suit,' is not served by forcing the creditor to file a proof of
> claim as a defensive maneuver, thereby conferring jurisdiction on
> the bankruptcy court.  Asserting an affirmative defense does not
> constitute consent.  By analogy, Piombo's filing the proof of claim
> should not be deemed consent.

23

*Id.* at 162-63, quoting *Peters v. Lines*, 275 F.2d 919, 925 (9th Cir. 1960) (citations omitted).

Similarly, Delphi's tactics left Methode with no alternative but to file a proof of claim.  In fact, the circumstances here are even stronger for Methode.  Unlike *Castlerock*, Methode's case was not pending in bankruptcy court.  Methode was defending itself in Michigan state court in a case initiated by Delphi.

Other courts have also held that the filing of an administrative claim does not create automatic bankruptcy jurisdiction where the filing was involuntary.  In *In re Kamine/Besicorp Allegany, L.P.*, 214 B.R. 953, 969 (Bankr. D. N.J. 1993), for example, the creditor filed a proof of claim that mirrored its claims in a state action that had been proceeding for months.  Like Methode's Counterclaim, the creditor's claim in that case was deemed non-core.  The Court held that, "the filing of the Proof of Claim […] did not in any respect 'initiate' or 'create' the causes of action now asserted in the Counterclaim," but rather they existed and were litigated in state court before being brought into the bankruptcy.  *Id.* [10]

Similarly, in this case, Methode asserted its counterclaims in Michigan months before the First Bar Date.  It did so without challenge by Delphi before (or for months after) the First Bar Date.  *See In re Kamine/Besicorp Allegany, L.P.*, 214 B.R. 953, 969 n.10 (Bankr. D. N.J. 1993) ("the Court notes that [in other cases where creditor's filing of a proof of claim resulted in consent to jurisdiction], the creditor *immediately* filed its proof of claim and commenced the

---

[10] The Court in *Kamine* distinguished the case *Travellers International A.G. v. Robinson,* 982 F.2d 96,100 (3d Cir.1992) on the ground that it involved a preference action, which was undoubtedly core, rather than a state law action commenced in state court.  In addition, the court distinguished *Travellers* on the ground that the creditor did not object to the bankruptcy court's jurisdiction before filing its proof of claim.  Here, Methode had no reason to object to this Court's jurisdiction at the time of filing its proof of claim because its counterclaim was pending in Michigan, and there was no suggestion that Delphi intended to move the case to this Court.  The Court in *Kamine* also distinguished *S.G. Phillips Constructors, Inc. v. City of Burlington, Vermont,* 45 F.3d 702 (2d Cir.1995) on the grounds that the proceeding was undoubtedly core, and "City's first move in the bankruptcy proceeding was to file its proof of claim and it thereafter became deeply involved in the proceedings.  *Id.* at 707.

adversary proceeding against the debtor as opposed to the case at bar where the Proof of Claim

was filed *three days before the bar date* for filing a proof of claim.") (emphasis in original).

Thus, Methode's involuntary filing of an administrative claim and later objecting to this

Court's jurisdiction did not confer jurisdiction on this Court.  Given these unique facts,

Methode's filing of a claim did not confer jurisdiction on this Court.[11]

### IV.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE NON-CORE MICHIGAN LITIGATION

As explained below, the Court's lack of subject matter jurisdiction is based on the

following fundamental principles:  (i) all events relevant to the Contract Lawsuit and Methode's

Counterclaim occurred post-confirmation, when the bankruptcy court's jurisdiction is

significantly narrowed; (ii) neither the Contract Lawsuit nor Methode's Counterclaim, which

involve pure breach of contract issues, have any legitimate nexus to Delphi's bankruptcy case;

(iii) the Contract Lawsuit and Methode's Counterclaim are non-core; and (iv) Delphi's

confirmed plans expressly provide that the bankruptcy court did not retain jurisdiction over

lawsuits that Delphi chose to pursue outside of this Court.

### A.    Methode's Counterclaim Arose Post-Confirmation—When Bankruptcy Jurisdiction Is Significantly Limited

The relevant chronology for this case begins on January 15, 2008, the confirmation date

of Delphi's Confirmed Plan.[12]  All of the events relating to the Contract Lawsuit and Methode's

---

[11] Consistent with the arguments set forth above, Methode hereby withdraws the proof of claim to the extent feasible.  A proof of claim may be withdrawn pursuant to Bankruptcy Rule 3006 as a matter of right, which "renders the withdrawn claim a legal nullity and leaves the parties as if the claim had never been brought."  *Smith v. Dowden*, 47 F.3d 940, 943 (8th Cir. 1995).

Counterclaim occurred <u>months</u> after this date.  For example, the only contract relevant to this dispute—the 2008 Agreement—was executed seven months after plan confirmation.  Delphi initiated the Contract Lawsuit in Michigan on October 23, 2008, nine months after confirmation of Delphi's Confirmed Plan.  And Methode filed its counterclaim in the Michigan case on January 9, 2009—almost a full year after confirmation of Delphi's Confirmed Plan.  In addition, during the post-confirmation period between October 23, 2008 and January 5, 2010 (when Delphi argued for the first time in the Michigan court that its own lawsuit violated the Modified Plan Injunction), Delphi and Methode actively litigated various discovery motions and requests for injunctive relief in the Michigan court.  All of these events occurred after plan confirmation since the subject of the Counterclaim, the 2008 Agreement, did not even exist before confirmation.  In addition, Delphi continued to litigate the Michigan case for an additional four months after confirmation of the Modified Plan before it ever asserted that Methode's Counterclaim was governed by the Modified Plan Injunction.

After plan confirmation, a bankruptcy court's jurisdiction is severely limited because the debtor's estate ceases to exist once confirmation has occurred.  *See In re Resorts Int'l, Inc.*, 372 F.3d 154, 165 (3d Cir. 2004).  As noted by the court in *In re General Media, Inc.*, 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005), "all courts that have addressed the question have ruled that once confirmation occurs, the bankruptcy court's jurisdiction shrinks".  Accordingly, post-

---

[12] Delphi's stated inability to consummate the Confirmed Plan did not alter its post-confirmation status because the Confirmed Plan was never revoked or vacated.  *See* 11 U.S.C. §1141(a) (confirmed plan binding on debtor).  In fact, precisely the opposite occurred—the Modified Plan reconfirmed the Confirmed Plan.  *See* Modified Plan §12.1.  Thus, the Court specifically directed that the Modified Plan did not revoke or vacate the Confirmed Plan, but merely supplemented it.  *See* Plan Modification Order, §3 (Confirmation Order "remains in full force and effect as to those provisions of the Confirmed Plan that have not been modified…").  The referenced provisions of the Modified Plan and Plan Modification Order are entirely consistent with the case law.  Contracts are treated as post-confirmation contracts for jurisdictional purposes, even where, as in this case, the court holds a second confirmation hearing with respect to the second, modified plan.  *See In re Coastal Petroleum Corp.*, 142 B.R. at 178-80; *Victorian Park Associates v. The Patrician Mortgage Co.*, NO. 95 C 7643, 1997 WL 264401, at *2 (N.D. Ill. May 9, 1997).

confirmation jurisdiction typically extends only to disputes that can significantly impact the plan

of reorganization. *Stoe v. Flaherty*, 436 F.3d 209, 216 n.3 (3d Cir. 2006). *See also In re Resorts*

*Int'l, Inc.*, 372 F.3d at 166; *In re Cary Metal Products, Inc.*, 158 B.R. 459, 463 (N.D. Ill. 1993);

*In the Matter of Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir. 2001) (After

confirmation "bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the

implementation or execution of the plan.").[13]

### B.    Methode's Counterclaims Have No Nexus to Delphi's Bankruptcy Or The Modified Plan

In order to confer jurisdiction (referred to as "related to" jurisdiction), a post-

confirmation dispute must have a "close nexus" to the plan. *Valley Historic Limited Partnership*

*v. Bank of New York*, 486 F.3d 831, 837 (4th Cir. 2007). Courts within this district have held

that a party invoking post-confirmation jurisdiction must satisfy two requirements: "First, the

matters must have a close nexus to the bankruptcy plan or proceeding, as when a matter affects

the interpretation, implementation, consummation, execution or administration of the Plan, and

second, the plan must provide for the retention of jurisdiction over the dispute." *In re Kassover*,

336 B.R. 74, 79 (Bankr. S.D.N.Y. 2006); *In re General Media, Inc.*, 335 B.R. 66, 73 (Bankr.

S.D.N.Y. 2005). Neither requirement is met in this case.

Here, there is no legitimate nexus between the Contract Lawsuit and Delphi's

bankruptcy. First and foremost, the parties' claims arise from a contract that was executed <u>post-</u>

<u>confirmation</u> of the Confirmed Plan. *In re Coastal Petroleum Corp.*, 142 B.R. 177, 180 (Bankr.

---

[13] Methode acknowledges "the decision of the District Court in *In re DPH Holdings Corp.*, 437 B.R. 88, (S.D.N.Y. 2010) that "the bankruptcy court's post-confirmation jurisdiction is more broad" where the debtor's plan is a "liquidating plan." Even if the Delphi case somehow falls within the scope of this principle, it appears to have no relevance to Delphi's post-confirmation dispute with Methode. The instant dispute involves state law claims arising in the context of a business dispute. Conversely, the decisions which have followed the reasoning outlined in the DPH case involve bankruptcy litigation brought to increase creditor recoveries.

N.D. Ohio 1992) (where subject agreement was executed post-confirmation, any recourse should not be the subject of further bankruptcy proceeding but can be pursued in a non-bankruptcy court).  Additionally, both the Contract Lawsuit and Methode's Counterclaim are grounded entirely in state law.  *In re Coastal Petroleum Corp.*, 142 B.R. at 180 (post-confirmation dispute regarding a post-confirmation contract was not subject to bankruptcy jurisdiction in part because it involved a state law contract claim).

Second, Methode's Counterclaim could not have affected the Confirmed Plan and will have no discernible effect on the Modified Plan.  *Craig's Stores*, 266 F.3d at 391; *In re General Media, Inc.*, 335 B.R. 66, 74-75 (Bankr. S.D.N.Y. 2005) (denying bankruptcy jurisdiction over post-confirmation claim because "[n]one of the claims arise under the Plan or require the Court to interpret it."); *In re TransAmerican Natural Gas Corp.*, 127 B.R. 800, 803 (S.D. Tex. 1991) (denying bankruptcy jurisdiction over claim because there was insufficient impact upon the bankruptcy estate and implementation of the plan because the estate ceased to exist upon plan confirmation).

The lack of any nexus between this case and either of Delphi's plans of reorganization is further demonstrated by Delphi's own actions preceding and following confirmation of the Modified Plan.  As set forth above, Delphi actively continued to litigate the Contract Lawsuit in Michigan even as it sought plan confirmation and for several months after obtaining confirmation of the Modified Plan.  Delphi never suggested that resolution of the Michigan litigation was relevant to its bankruptcy case or the Modified Plan.  Nor is there any mention of the Michigan litigation in any bankruptcy document prior to December 4, 2009, when Delphi

abruptly moved the Michigan court to enjoin the Contract Lawsuit.[14]  *See In re Coastal*

*Petroleum Corp.*, 142 B.R. at 180 (bankruptcy jurisdiction did not exist over post-confirmation

dispute concerning post-confirmation contract where the "plan, as confirmed, makes no

reference nor incorporates the subject agreement."); *In re Greenley Energy Holdings of*

*Pennsylvania, Inc.*, 110 B.R. 173 (Bankr. E.D. Pa. 1990) (holding post-confirmation jurisdiction

did not exist over dispute involving distribution of property agreements where "no such

agreements were attached to or referenced in the instant Plan").  *See also Resorts Int'l*, 372 F.3d

at 167; *In re Kassover*, 336 B.R. at 79; *In re General Media, Inc.*, 335 B.R. at 74-75.  Thus, there

is no connection between the Michigan litigation and either of Delphi's plans.[15]

        Given the lack of any reasonable nexus, it is too late for Delphi to seek the bankruptcy

protection of this Court.  As many courts have stressed, "[o]nce the bankruptcy court confirms a

plan of reorganization, the debtor may go about its business without further supervision or

approval.  The firm also is without the protection of the bankruptcy court.  It may not come

running to the bankruptcy judge every time something unpleasant happens."  *Pettibone Corp. v.*

*Easley*, 935 F.2d 120, 122 (7th Cir. 1991); *In re Xonics, Inc.*, 813 F.2d 127, 130-32 (7th Cir.

1987); *In re General Media, Inc.*, 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005).

---

[14] In fact, as explained *infra* at section IV.D, both of Delphi's Plans expressly provided for the litigation of lawsuits such as the Contract Lawsuit <u>outside</u> the Bankruptcy Court.

[15] Delphi may claim that this Court has post-confirmation jurisdiction over Methode's Counterclaim because Methode's potential recovery in the Contract Lawsuit could *potentially* affect distributions to Delphi's creditors. Here, too, the law is clear that "[t]he mere potential of a claim to increase or decrease the pool of funds available to a debtor, without more, is insufficient to create bankruptcy jurisdiction."  *In re TransAmerican Natural Gas Corp.*, 127 B.R. 800, 803-04 (S.D. Tex. 1991).  *See also Craig's Stores*, 266 F.3d at 391 ("[W]hile [debtor] insists that the status of its contract with the [creditor] will affect its distribution to creditors under the plan, the same could be said of any other post-confirmation contractual relations in which [debtor] is engaged."); *In re BWI Liquidation Corp.*, 437 B.R. 160, 166 (Bankr. D. Del. 2010) ("the mere potential to increase the assets of the trust is insufficient to establish a close nexus."); *In re General Media, Inc.*, 335 B.R. at 75 ("A bankruptcy court cannot hear a post-confirmation dispute simply because it might conceivably increase the recovery to its creditors, because the rationale could endlessly stretch a bankruptcy court's jurisdiction.") (citations omitted).

Delphi should not be permitted to use this Court and its bankruptcy in order to avoid litigating a legitimate contract claim on the merits. Despite its own selection of Michigan as the only acceptable forum for the Contract Lawsuit, Delphi belatedly decided that it would be better off "running to the bankruptcy judge" for protection. However, Delphi is no longer entitled to protection but must go about its business where it chose to commence this litigation—in Michigan.

### C.    Methode's Counterclaim Is "Non-Core"

The Court stated at the July 22, 2010 hearing that Delphi's Objection is a "core proceeding." Even if that is the case, the Contract Lawsuit and Methode's Counterclaim are by definition "non-core." Non-core proceedings are those that: (1) do not fall within any of the illustrative categories listed in 28 U.S.C. § 157(b); (2) do not invoke a substantive right provided by title 11; and (3) are not proceedings "that by [their] nature, could only arise in the context of the bankruptcy case." *In re Grace Community, Inc.*, 262 B.R. 625, 631 (Bankr. E.D. Pa. 2001). Thus, the Court of Appeals for the Second Circuit has held that "proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the proceedings directly affect a core bankruptcy function." *Corning*, 399 F.3d at 448; quoting *United States Lines*, 196 F.3d at 637.

Methode's Counterclaim involves nothing more than a breach of contract. As such, it does not fall under any of the illustrative categories of proceedings under 28 U.S.C. § 157(b) and does not involve a substantive right under Title 11. *In re General Media, Inc.*, 335 B.R. 66, 73, 75 (Bankr. S.D.N.Y. 2005) (holding that claims arising under state law were non-core because they "do not invoke rights under title 11. Nor are they the type that could only arise in a bankruptcy case").

30

As to the third type of non-core proceedings, the Michigan suit and counterclaim are not

the type of claims that, by their nature, could only have arisen in a bankruptcy context.  In fact,

Delphi initiated this action in state court *outside* of its bankruptcy proceeding nine months after

its plan was confirmed.  *See Mt. McKinley Insurance Co. v. Corning Inc.*, 399 F.3d 436, 448 (2d

Cir. 2005); *In re United States Lines*, 197 F.3d 631, 637 (2d Cir. 1999).

Although the Second Circuit has held on two occasions that post-petition contracts are

"core," its opinions involved facts or circumstances that are not remotely analogous to this case.

*See In re United States Lines, Inc.*, 197 F.3d 631, 637-38 (2d Cir. 1999); *In re Ben Cooper, Inc.*,

896 F.2d 1394, 1400 (2d Cir. 1990).  Neither of those cases involved a post-confirmation

lawsuit.  Further, neither involved a breach of contract lawsuit commenced and litigated by the

debtor in state court.  And neither involved a situation in which the debtor mandated, both as a

business policy and pursuant to two plans of reorganization, that every breach of contract action

proceed in state court—an acknowledgement by Delphi of the absence of any bankruptcy nexus.

Most important, neither of those lawsuits involved a situation in which the debtor concealed

critical facts relating directly to the creditor's claim.

In fact, courts have held that disputes arising from contracts entered post-confirmation

are non-core.  *Bernheim v. Chubb Ins. of Canada*, 160 B.R. 42, 47 (D.N.J. 1993) (even though

contract executed post-petition, contract suit was held to be non-core because contract was

entered after confirmation, and resolution of the case was not integral to the administration of the

estate).  *See TransAmerican Natural Gas Corp.*, 127 B.R. 800, 803-04 (S.D. Tex. 1991); *In re

General Media, Inc.*, 335 B.R. 66, 73, 75 (Bankr. S.D.N.Y. 2005) ("[T]he outcome of a post-

confirmation proceeding cannot affect the estate."); *In re Lawndale Steel Co. Inc.*, 1991 WL

242977, Adv. Nos. 91-A-706, 90-A-726, 90-A-737, at *4 (Bankr. N.D. Ill. May 2, 1991) (finding

31

claim was non-core because "[a]bsent the framework of its bankruptcy case, Lawndale's complaints can stand alone in a state forum.").

Delphi may claim that Methode's Counterclaim is core because Methode filed an administrative claim on the last day before the Second Bar Date. Even if this Court were to hold that Methode's administrative claim is within the "core" jurisdiction of the Court, Methode's Counterclaim has always been and remains non-core. *See In re Asousa Partnership*, 264 B.R. 376, 387 (Bankr. E.D. Pa. 2001) (holding that counterclaims against debtor in state court are not transformed into core proceedings simply because debtor removes them to bankruptcy court); *In re Marshall*, 118 B.R. 954, 959-60 (W.D. Mich. 1990) ("We do not believe that [debtor] can turn his purely state law actions into a Section 157(b)(2)(B) 'core proceeding' by simply removing these prepetition cases, along with the [defendant's] counterclaim to [the bankruptcy court]").[16]

In sum, Delphi's Contract Lawsuit, commenced after confirmation of its Confirmed Plan, and Methode's Counterclaim are non-core.

### D.    Delphi's Plans Expressly Relinquished Bankruptcy Jurisdiction Over the Contract Lawsuit and Methode's Counterclaim

Even if this Court would have had jurisdiction over Methode's Counterclaim, it expressly relinquished such jurisdiction. Once the bankruptcy court has expressly relinquished jurisdiction

---

[16] Furthermore, courts have recognized that a creditor can avoid consenting to "core" jurisdiction where its claim contains an appropriate reservation of rights. *See In re Northwestern Corp.*, 319 B.R. 68, 75 n.1 (D. Del. 2005) (refusing to take judicial notice of filed proofs of claim because they contained a reservation of rights and were filed under the compulsion of a bar date, such that the claims did not operate to transform a non-core claim into a core claim.); *In re Mid-Atlantic Handling Systems, LLC*, 304 B.R. 111, 124 (Bankr. D. N.J. 2003) (where proof of claim was filed one-day before bar date, the filing of the claim with its reservation of rights did not transform pre-petition state law claims into a core proceeding nor constitute an acceptance of the court's jurisdiction.) Methode's claim contained a clear reservation of rights: "This administrative expense claim is *protective* in nature as [litigation involving the subject of the claims] is proceeding in non-bankruptcy jurisdictions and venues selected by [Delphi]. Methode is filing this claim, among other things, to preserve any and all rights and entitlements Methode may have as herein asserted…" Therefore, Methode's administrative claim did not submit its counterclaim to this Court's "core" jurisdiction.

over a dispute pursuant to a confirmed plan, it cannot seek to reassert such jurisdiction. *See In re Kassover*, 336 B.R. 74, 79 (Bankr. S.D.N.Y. 2006); *In re General Media, Inc.*, 335 B.R. 66, 73-74 (Bankr. S.D.N.Y. 2005) (plan must expressly reserve jurisdiction).

Both of Delphi's plans provided that the Bankruptcy Court would <u>not</u> reserve jurisdiction over legal actions that Delphi chose to commence *outside* of this Court. The Confirmed Plan and the Modified Plan contain an identical provision, which states as follows:

> Despite the foregoing [i.e., the Bankruptcy Court's reservation of jurisdiction of Retained Actions], if the Bankruptcy Court is determined not to have jurisdiction with respect to the foregoing, or if the Reorganized Debtors choose to pursue any Retained Actions[17] in another court of competent jurisdiction, the Reorganized Debtors shall have authority to bring such action in any other court of competent jurisdiction.

Confirmed Plan, Article XIII, p. 71; Modified Plan, Article XIII, p. 69 (emphasis added)

Delphi relied on this provision in the Plans when it commenced the Contract Lawsuit in the Michigan court and continued to litigate in that court for a full fourteen months, even after confirmation of the Modified Plan. Having relinquished jurisdiction in its plans, it is too late for Delphi to request this Court to assert jurisdiction over this state law dispute.

## V. DELPHI'S NOTICE OF THE ADMINISTRATIVE CLAIM BAR DATE WAS INSUFFICIENT AS A MATTER OF LAW

As noted above, Delphi's Objection seeks to prevent Methode from asserting a counterclaim that allegedly arose prior to the First Bar Date on the ground that Methode did not

---

[17] "Retained Actions" is defined in the Confirmed Plan, § 1.172, as "Claims, Causes of Action, rights of action, suits, and proceedings, whether in law or in equity, whether known or unknown, which any Debtor or any Debtor's Estate may hold against any Person, including, without limitation, Claims and Causes of Action brought prior to the Effective Date or identified in the Schedules, other than Claims explicitly released under this Plan or by Final Order of the Bankruptcy Court prior to the date hereof. A non-exclusive list of Retained Actions is attached hereto as Exhibit 7.24." Retained Actions in the Modified Plan, § 1.197, are defined in the same way and adds "Claims transferred to the Buyers pursuant to the Master Disposition Agreement. A non-exclusive list of Retained Actions is attached hereto as Exhibit 7.19."

file an administrative claim before that deadline.[18]  In addition to Delphi's concealment of the

Preference Lawsuit, however, Delphi's notice with respect to the First Bar Date was legally

insufficient and was compounded by Delphi's misleading actions.

### A.      Delphi's Administrative Bar Date Notice Was Facially Inadequate

The First Bar Date established July 15, 2009 as the deadline for filing administrative

claims, but Delphi's notice to creditors of this deadline failed to comply with the explicit

requirements of the Federal Rules of Bankruptcy Procedure.  Delphi's notice provides no

specific reference to Delphi Automotive Systems, LLC, the plaintiff in the Contract Lawsuit.

Rather, the notice referred simply to "Delphi Corporation ('Delphi') and its affiliated debtors and

debtors-in-possession (the 'Debtors' or 'Company')."  Thus, Delphi's notice was inadequate

with respect to Methode.

Under the Federal Rules of Bankruptcy Procedure and the Advisory Committee Notes,

the caption of each notice must contain all other names used by the debtor.  *See* FED. R. BANKR.

PRO. 1005 and 2002(n).  Interpreting Rule 1005, courts have held that a bar date notice to

creditors is insufficient to bar claims where the specific debtor's name to which the creditor

claim is directed is absent from the notice, even where a similar name is listed.  *See Grand Pier

Center, LLC v. ATC Group Svcs, Inc.*, Nos. 03 C 7767, 05 C 1156, 2007 WL 2973829 (N.D. Ill.

Oct. 9, 2007) (holding that the absence of the relevant debtor's name on the bar date notice

constituted a failure to comply with Rules 2002(n) and 2005 and therefore the bar date notice

was insufficient).

Methode's Counterclaim is asserted against Delphi Automotive Systems, LLC, the

plaintiff in the Contract Lawsuit.  However, none of Delphi's bar date notices made any

---

[18] *See* Forty-Sixth Omnibus Claims Objection, at 11, ¶ 21, March 19, 2010 [Docket No. 196711].

reference to <u>this</u> entity.  Accordingly, these notices are insufficient as a matter of law and cannot be used to bar Methode's claims.

**B.     Delphi's Bar Date Notices and Its Actions Were Misleading and Ambiguous**

The insufficiency of Delphi's bar date notice was compounded by Delphi's misleading actions with respect to Methode.  *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).  As explained below, (i) Delphi's bar date notice was ambiguous with respect to Methode's Counterclaim; (ii) Delphi's own filings with this Court suggested that Methode was <u>not</u> required to file any administrative claim on account of its Counterclaim; and (iii) Delphi's actions in the Contract Lawsuit continuously misled Methode into believing that it was not required to file any administrative claim.

Each of Delphi's plans expressly recognized Delphi's authority to pursue litigation in other courts without any indication that such litigation remained subject to this Court's powers. Nothing in Delphi's bar date notice, however, expressly addressed the Michigan litigation or gave any indication that the bar date applied to a lawsuit already pending in another court pursuant to the Confirmed Plan.

Furthermore, as explained above, Delphi's request for a jury trial in the Contract Lawsuit, after Methode requested a jury trial, reaffirmed Delphi's position that the Contract Lawsuit was not subject to this Court's bar date process, as the filing of an administrative claim arguably would have impaired Methode's right to a jury trial.

Methode was further misled by Delphi's other actions in the Michigan court.  For example, Delphi never informed Methode or the Michigan court that the Contract Lawsuit somehow remained subject to a hidden bankruptcy court "trapdoor" — the administrative bar date process.  In fact, Delphi continued to litigate in Michigan for months even after Methode did

35

not file a claim by the First Bar Date.  *See Eagle Bus*, 62 F.2d 735, 740 (5th Cir. 1995) (bar date notice was not conspicuous and the ambiguity regarding the need to file proof of claim was further compounded by the debtor's conduct in the other pending litigation); *In re Centennial Healthcare Corp.*, No. 02-74974, 2005 WL 639835, at *2, 7 (Bankr. N.D. Ga. 2005) (holding that debtors were "far more to blame" for creditor missing administrative bar date because debtor's counsel continued to litigate in other court).  *See also In re Zilog, Inc.*, 450 F.3d 996, 1005 (9th Cir. 2006), (holding that debtor's conduct gave "mixed signals" as to whether a claim was required).

In sum, Delphi's attempt to undermine Methode's Counterclaim without providing reasonable notice smacks of foul play.  The Court of Appeals for the Fifth Circuit warned that it did not condone the "unsavory tactic" of a debtor negotiating a potential settlement and then attempting to "resort to the passage of the bar date as their 'ace' in the sleeve."  *Eagle Bus*, 62 F.2d at 739.  *See also In re Job-Site Industries, Inc.*, 78 B.R. 332, 334 (Bankr. S.D. Fla. 1987) (trustee, who was fully aware of counterclaim filed by creditor, could not "lie in wait" until bar date lapsed to argue that claim was barred).

Delphi voluntarily commenced this dispute in Michigan, litigated the case for months, both *before* and *after* the bar dates, and remained silent regarding the allegedly lapsed bar date thus confirming that its dispute with Methode had no connection to its bankruptcy case.  Having

failed to provide adequate notice, Delphi cannot now seek to impair Methode's rights on the

basis that Methode should have filed a claim.[19]

## VI.    METHODE'S COUNTERCLAIM CANNOT BE ENJOINED BY THE MODIFIED PLAN INJUNCTION

As is the case with Delphi's notice of the administrative bar dates, the Modified Plan

injunction is not enforceable with respect to Methode's Counterclaim because Delphi failed to

abide by applicable rules governing the requirements for notice with respect to a plan injunction.

The type of notice required for injunctions contained in a plan of reorganization is set

forth in Federal Rule of Bankruptcy Procedure 2002(c)(3), which provides:

> Notice of Hearing on Confirmation When Plan Provides for an Injunction.  If a plan provides for an injunction against conduct not otherwise enjoined under the Code, the notice required under Rule 2002(b)(2) shall:
>
> (A)    include in conspicuous language (bold, italic, or underlined text) a statement that the plan proposes an injunction;
> (B)    describe briefly the nature of the injunction; and
> (C)    identify the entities that would be subject to the injunction.

Fed. R. Bankr. P. 2002(c)(3) (emphasis added).

Delphi ignored the requirements of this rule.  For example, nothing in the Modified Plan

identified "the entities that would be subject to the injunction."  Similarly, the disclosure

statement distributed by Delphi, which is precisely where such disclosures should have been

made, simply parroted the Plan's vague and over-inclusive language.  *See* Disclosure Statement

---

[19] Methode was not required to file any proof of claim with this Court because its claims were pending before the Michigan court and certainly not by the First Bar Date because Delphi had not breached the contract by that date. *See* Section II *supra*.  But even if Delphi's bar date notices somehow applied to the Contract Lawsuit (which, as explained above, is not the case), Methode was not required to file any administrative claim because damages from its Counterclaim, which would not be payable for years after confirmation of the Modified Plan, does not constitute an "administrative claim" as that term is defined in Section 503(b) of the Bankruptcy Code.  *See National Union Fire Insurance Co. v. VP Buildings, Inc.*, 606 F.3d 835, 839 (6th Cir. 2010).  Such claims are therefore not subject to Delphi's Administrative Bar Dates.

at DS-279.  Neither of these documents or any other notices identified Methode, its

counterclaims, or the Contract Lawsuit in any way.

Even the Michigan court recognized the lack of notice and clarity with respect to the

Modified Plan Injunction.  The Michigan court, in ruling on Delphi's motion to enjoin, stated

that the Modified Plan injunction language

> does not address [Methode's counterclaim], much less explain how
> its continuation would defeat or impair the [Michigan court's]
> jurisdiction with respect to the Delphi petition.

See Opinion and Order, State of Michigan, County of Oakland, Case Number 2008-095518-CK,

February 24, 2010 (Ex. 4).  Having completely ignored the requirements of Rule 2002, Delphi

cannot use the Modified Plan Injunction to bar Methode's Counterclaim.

## VII.    THE COURT SHOULD ENFORCE DELPHI'S SELECTION OF MICHIGAN AS THE FORUM

Delphi has sought to marginalize the legal impact of its "forum selection clause" which

Delphi imposed on all of its suppliers, including Methode—claiming that this "clause" has

somehow been trumped by its former bankruptcy status.  As demonstrated below, the relevant

facts demonstrate that, if ever there were a bankruptcy case in which such a clause must be

enforced, this is it.

### A.    The Court Should Enforce the Michigan Forum Selection Clause that Delphi Imposed on All of Its Suppliers

Delphi's selection of Michigan as the required forum for contract disputes was not unique

to its dispute with Methode but was part of its standard terms and conditions, which stated as

follows:

> U.S. Contracts. […] (a) this Contract is to be construed according
> to the laws of the United States of America and the State of
> Michigan […] and (b) each party hereby agrees that the forum and
> venue for any legal or equitable action or proceeding arising out of,
> or in connection with, this Contract will lie in the appropriate

> federal or state courts in the State of Michigan and specifically
> waives any and all objections to such jurisdiction and venue.

Delphi General Terms and Conditions, ¶ 26.1 (emphasis added) (Ex. 1). Despite the fact that these terms and conditions made no reference to Delphi's bankruptcy case, these rules governed Delphi's relationships with its vendors throughout its Chapter 11 case and the plan confirmation process.

Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Similarly, bankruptcy courts have readily enforced forum selection clauses for non-core proceedings, such as this one. *See In re Exide Technologies*, 544 F.3d 196, 218 n.15 (3d Cir. 2008); *In re Manchester, Inc.*, 417 B.R. 377, 385 (Bankr. N.D. Tex. 2009); *In re N. Parent, Inc.*, 221 B.R. 609, 622 (Bankr. D. Mass. 1998).

Delphi has consistently enforced its own forum selection clauses even against Methode. In fact, Delphi enforced the same provision against Methode related to the same automotive parts in dispute in the Contract Lawsuit. Specifically, Methode brought suit in the Northern District of Illinois against Delphi for infringement of Methode's patents on the subject parts. Delphi quickly moved to transfer the patent infringement case to a Michigan court. At that time, Delphi insisted that its forum selection clause was mandatory, valid and enforceable. Delphi also argued that the dispute should proceed in Michigan because Michigan was the epicenter of the U.S. auto industry and was also a convenient location for the parties, witnesses and evidence. The Illinois court agreed with Delphi's arguments and granted the motion. Delphi apparently now wants to abandon those arguments after it has benefitted from them.

Furthermore, as the 2008 Agreement is a post-confirmation contract, Delphi's selection

of Michigan must be accorded even greater weight.  *In re Almarc Corp.*, 94 B.R. 361, 366

(Bankr. E.D. Pa. 1988) ("In short, forum selection clauses have even more force after

confirmation, when bankruptcy court oversight is lessened, than prior to confirmation").  In fact,

this is true even for core matters.  *In re Manchester, Inc.*, 417 B.R. 377, 388 n.8 (Bankr. N.D.

Tex. 2009) (enforcing forum selection clause because "any 'presumption in favor in favor of

maintaining venue of an adversary proceeding in the forum where the bankruptcy case is pending

. . . [is] significantly weakened, if not entirely destroyed, by the circumstance that this is now

post-confirmation litigation." (quoting *Mirant Corp. v. Southern Co.*, 337 B.R. 102 124 (N.D.

Tex. 2006)); *In re D.E. Frey Group, Inc.*, 387 B.R. 799 (Bankr. D. Colo. 2008) (enforcing forum

selection clause in core proceeding where debtor was able to obtain confirmation of its plan long

before the trial of its contract claims).[20]

As Delphi had admitted in the Methode patent litigation, Delphi's Michigan forum

selection is fully enforceable.  Having insisted on Michigan as the sole jurisdiction for contract

disputes, even during its bankruptcy, and categorically imposing that selection on all of its

suppliers, including in the Michigan contract dispute and patent infringement case, Delphi

recognized the Michigan court's jurisdiction over the Contract Lawsuit and Methode's

Counterclaim.

---

[20] Nor does enforcement of the Michigan forum selection clause violate public policy that favors centralization of bankruptcy proceedings in bankruptcy court.  *In re N. Parent, Inc.*, 221 B.R. 609, 621 (Bankr. D. Mass. 1998). Failure to enforce the forum selection clause defeats the public policy favoring enforcement of contractual obligations.  *Envirolite Enterprises, Inc. v. Glastechnische Industrie Peter Lisec Gesellschaft M.B.H.*, 53 B.R. 1007, 1013 (S.D.N.Y. 1985) *aff'd* 788 F.2d 5 (2d Cir. 1986); *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983).

### B.    Delphi Actively Litigated Methode's Counterclaim in Michigan

In addition to bypassing this Court's jurisdiction and imposing its Michigan forum on all suppliers, Delphi invoked its own forum selection clause by initiating the Contract Lawsuit in Michigan and actively litigating there for more than a year before asking the Michigan court to send the lawsuit to this Court.  As set forth in Section I of the Statement of Facts above, Delphi participated extensively in discovery in Michigan, which required Methode to retain nearly 50 contract attorneys and an e-discovery consultant to collect and review millions of pages of Methode's electronically-stored information.  Delphi continued down this aggressive discovery path even after the effective date of its Modified Plan, repeatedly availing itself of the Michigan court's authority through motion practice.  Delphi's consent to proceed with the Contract Lawsuit in Michigan is evidenced by the fact that Delphi, after confirmation of the Modified Plan, filed a request for jury demand in Michigan—a right not available in bankruptcy court.

Bankruptcy courts have more readily enforced forum selection clauses where the debtor previously commenced an action in the selected state court before attempting to remove the case to bankruptcy court.  For instance, in *In re Omna Medical Partners, Inc.*, 2000 WL 33712302, at *4 (Bankr. D. Del. Jun. 12, 2000), the debtor unilaterally terminated a contract, and subsequently attempted to enforce its termination rights under the contract by commencing a foreclosure action in a Texas court.  The defendants responded by commencing a related state court action in Texas that sought to bar the debtor's foreclosure.  After filing its bankruptcy case, the debtor removed the defendants' action to the bankruptcy court.  Noting that the debtor had already availed itself of the Texas forum selection clause in the contract, the bankruptcy court abstained from adjudicating the action.  The court stated:

> [I]t is significant that the Debtor agreed that all issues under the
> [contract] would be determined in Texas courts… Since the Debtor
> has already availed itself of the Texas court on this issue, it cannot

41

> contend that Texas is not a convenient forum. The Debtor chose to
> enforce its rights under the terminated [contract] in the Texas court
> both pre-petition and post-petition. The Debtor should not
> legitimately have expected that it could use the Texas court to
> enforce its rights under the terminated agreement, while depriving
> the Defendants of the concomitant right to enforce their rights
> under that same agreement in the same court.

*Id.* at \*4. *See also In re Manchester, Inc.*, 417 B.R. 377, 387 (N.D. Tex. 2009).

At the hearing held on May 20, 2010, the Court recognized the Michigan court's

significant involvement in the contract dispute and that Michigan was the appropriate venue for

the case. After all, Delphi initiated the Contract Lawsuit and chose Oakland County, Michigan

as the forum -- a courthouse that is the veritable epicenter of automotive disputes. The Michigan

court is well-familiar with the matter and had already spent a considerable amount of time

hearing and adjudicating two preliminary injunction motions and several discovery disputes.

Thus, this Court noted that:

> …where I'm leaning on this is that, leaving aside the plan provision, given
> the status of the litigation, how it commenced and how it's proceeded,
> shouldn't I just lift the injunction? I mean, at this point you have a court
> that's relatively familiar with the matter; the parties have been litigating
> there for quite a while. The claim has to be liquidated one way or the
> other. I just don't see particularly why, you know, we should start from
> scratch here. We wouldn't start from scratch, obviously, because you
> would have the discovery that you have. But on the other hand, what's to
> be served by moving it?

Transcript 52:3-13.

> [I]t seems to me that if they [Methode] amend their claim, it probably
> makes sense to have the whole thing continue in Michigan.

Transcript 59:15-16.

Thus, this Court has recognized the appropriateness of the Michigan forum for

adjudication of this case. Delphi actively sought to enforce its forum selection clause against all

suppliers, including Methode in both the contract and patent cases, and Delphi should not be permitted to forum shop.

## VIII.   THIS COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION OVER METHODE'S COUNTERCLAIM AND REMAND TO MICHIGAN

Delphi originally commenced this action in state court in Michigan.  Accordingly, even if this Court determines it has jurisdiction over Methode's Counterclaim—which it does not— mandatory abstention requires this Court to abstain.

Section 1334(c)(2) of Title 28 provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Thus, section 1334 provides that a district court must abstain when the following requirements are met: "(1) the abstention motion was timely brought, (2) the motion is based upon a state law claims, (3) the action is 'related to' a bankruptcy proceeding, as opposed to 'arising under' the Bankruptcy Code or 'arising in' a case under the Bankruptcy Code, (4) the sole federal jurisdiction for the action is federal bankruptcy jurisdiction, (5) there is an action 'commenced' in state court, and (6) the action is capable of being timely adjudicated in state court."  *In re Kassover*, 336 B.R. 74, 79 (Bankr. S.D.N.Y. 2006); S*ee also Mt. McKinley Insurance Co.*, 399 F.3d 436, 446 (2d Cir. 2005).

These requirements are all satisfied here.  First, there can be no dispute that Methode's motion for this Court to abstain from deciding Methode's Counterclaim was timely.  Second, Methode's Counterclaim is for breach of contract.  Thus, Delphi cannot dispute that this is a state law claim.  *In re RJZM LLC*, Adv. No. 09-01264, 2009 WL 2929433, at *4-5 (Bankr. S.D.N.Y.

Jul. 28, 2009) (mandatory abstention warranted where claim based only in state law and there are no bankruptcy law issues). Furthermore, both Delphi and Methode demanded a jury trial, a clear right that cannot be honored in this Court.

Third, as discussed above, this Court lacks subject matter jurisdiction over Methode's Counterclaim—including "arising under," "arising in," and "related to." For this reason, this Court should not even reach the issue of abstention. Nevertheless, if this Court has any jurisdiction over Methode's Counterclaims pursuant to section 1334, it is "related to" jurisdiction.

Fourth, the only possible basis for federal jurisdiction is bankruptcy jurisdiction. There can be no diversity jurisdiction because both Methode and Delphi are incorporated in Delaware. *Delphi Automotive Systems, LLC v. Segway Inc.*, 519 F. Supp. 2d 662, 665-66 (E.D. Mich. 2007). Fifth, Delphi commenced this action in Michigan, and Methode filed its counterclaim in Michigan. (The Second Circuit has held that mandatory abstention applies to removed cases. *Mt. McKinley Insurance Co. v. Corning Inc.*, 399 F.3d 436, 446-47 (2d Cir. 2005)).

Finally, there can be no doubt that Methode's Counterclaim can be timely adjudicated in Oakland County, Michigan—the epicenter of automotive contract disputes. The case can be tried before a judge who has already spent sixteen months with the parties and is well-familiar with the contract in question, the dispute, and the nuances of the automotive industry. This factor alone justifies abstention. *See Lennar Corp. v. Briarwood Capital LLC*, 430 B.R. 253, 266 (Bankr. S.D. Fla. 2010) (mandatory abstention warranted because state court could timely adjudicate dispute where state court action litigated for year and half before removal with significant discovery); *Massey Energy Co. v. West Virginia Consumers for Justice*, 351 B.R. 348, 353 (E.D. Va. 2006) (state court action litigated 15 months before removal and "the State

44

Court possesses greater familiarity, has expended substantial resources, and has made

considerable sacrifices in reasonable reliance upon the parties' intentions to litigate this case.").

In analyzing this final element of mandatory abstention, courts also "focus[] on whether

allowing the case to proceed in the state court will have an unfavorable effect on the

administration of the bankruptcy case."  *Lennar Corp. v. Briarwood Capital LLC*, 430 B.R. 253,

265 (Bankr. S.D. Fla. 2010).  This can hardly be the case here where the dispute arose post-

confirmation.

## IX.    MINIMALLY METHODE CAN ASSERT ITS COUNTERCLAIM AS A SETOFF AGAINST ANY LIABILITY TO DELPHI

Even if this Court were somehow to determine, despite all of the foregoing authority to

the contrary, that Methode cannot freely pursue its counterclaim against Delphi, Methode should

nevertheless be permitted to assert its Counterclaim defensively, i.e., at least to the extent of any

liability that may be assessed against Methode in the Contract Lawsuit.

Methode's alleged failure to file an administrative claim before the First Bar Date (even

if it was required to file such a claim), does not bar its right to setoff with respect to its

counterclaim.  *See In re M. Silverman Laces, Inc.*, 404 B.R. 345, 365 (Bankr. S.D.N.Y. 2009)

(holding that "notwithstanding that [creditor] did not timely file a proof of claim in this case, it

may set off its undisputed $564,496.55 claim as an affirmative defense against the lesser amount,

determined above, that it owes to [debtor]."; "[F]iling a proof of claim is not a prerequisite to

asserting an otherwise valid setoff"); *Bernstein v. IDT Corp.*, 76 B.R. 275 (Bankr. S.D.N.Y.

1987) ("Counterclaims and set-offs may be asserted in a plenary suit notwithstanding the fact

that no proof of claim had been filed in Bankruptcy Court.").  *See also Bloor v. Shapiro*, 32 B.R.

993, 1002 (S.D.N.Y. 1983) (holding defendant's counterclaims were not time-barred despite not

being raised in a timely fashion in the bankruptcy proceeding because "[i]t has long been settled

that a claim provable in bankruptcy . . . may be used as a set-off or counterclaim though the time

has expired within which it could be proved." (citations omitted)).

Thus, even if Methode was required to file an administrative claim, it should be permitted

to assert its counterclaim as a setoff against any liability to Delphi.

## CONCLUSION

For the foregoing reasons, Methode's motion for leave to file an amended counterclaim

in Michigan should be granted and the Court should grant such other relief as is just and proper.


Dated:    New York, New York
          July 1, 2011

**LOCKE LORD BISSELL & LIDDELL LLP**

  /s/ Shalom Jacob
Shalom Jacob
Three World Financial Center
New York, NY 10281
Telephone:  212-415-8600
Facsimile:  212-303-2754

**LOCKE LORD BISSELL & LIDDELL LLP**
Ann Marie Walsh
111 South Wacker Drive
Chicago, Illinois  60606
Telephone:  (312) 443-0654
Facsimile:  (312) 896-6654

**WACHTELL, LIPTON, ROSEN & KATZ**
Douglas K. Mayer
Emil A. Kleinhaus
Alexander B. Lees
51 West 52nd Street
New York, New York  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000
