# BUTZEL LONG
## ATTORNEYS AND COUNSELORS

a professional corporation

**Cynthia J. Haffey**
**313 983 7434**
haffey@butzel.com

Suite 100    150 West Jefferson
Detroit, Michigan 48226
**T: 313 225 7000  F: 313 225 7080**
**butzel.com**

*Via email/pdf to rdd.chamber@nysb.uscourts.gov*

July 1, 2011

The Honorable Robert D. Drain
United States Bankruptcy Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

> **Re:**    ***DPH Holdings Corp. re: Doshi Prettl International***
> ***Adversary Proceeding No.: 07-02211***

Dear Judge Drain:

We write in response to Mr. Nayak's letter of June 30, 2011.[1] We respectfully disagree with Mr. Nayak's characterization of the information that this Court directed the Reorganized Debtors to produce to defendants.

At the June 21, 2011 hearing, this Court directed the Reorganized Debtors to reconcile the preference transfer list attached as Exhibit 1 to the proposed First Amended Complaint with the preference transfer list attached to the original Complaint for all defendants who thereafter notified the Reorganized Debtor's counsel that they had raised in their papers a "relationship back" objection to DAS LLC's motion to amend.[2] *See June 21, 2011 Transcript, pp. 246-247, 257 (attached as Exhibit 1).* The issue before the court was "relation back" and whether the duplicate payments related back to the original Complaint.

Mr. Nayak asserts that the Reorganized Debtors were also required to provide antecedent debt information for those transfers that did not have purchase order, invoice or other information indicated on Exhibit 1 of the proposed First Amended Complaints. This issue relates to the question of whether the Reorganized Debtors properly pled antecedent debt as to those transfers. It is not a relation back issue. The discussion on antecedent debt, and in particular the discussion on whether antecedent debt had been properly pled where there were "blanks" on a transfer line contained within Exhibit 1 of a proposed First Amended Complaint, was addressed by the Court earlier in the hearing. The Court did not rule that the information

---

[1] Mr. Nayak's letter was received by this office only today, July 1, 2001, via electronic mail, and was not sent yesterday at the time of transmittal to this Court.
[2] Doshi Prettl's counsel failed to timely inform the Reorganized Debtor's counsel provide it with the relation back information. Despite this failure, the information was provided by the Reorganized Debtors.

July 1, 2011

was to be provided by Monday, June 27, 2011 as alleged by Mr. Nayak. On the contrary, the Court stated the following:

> Mr. Sullivan (counsel for Timken Corp.): "Your Honor, I'm not sure if we'll get to this, or you're ready to get to this yet, but are you going to create today, perhaps some kind of a time limit in which plaintiff must product the documents that are the subject of these [blanks]…"

> The Court: "We're not getting to that yet."

*See June 21, 2011 Transcript, pp. 139-140 (attached as Exhibit 1).*

      Later, at the conclusion of the hearing, the Reorganized Debtors sought to clarify whether they could or should provide a revised exhibit which identified the antecedent debt information for those transfers where there was no purchase order, invoice or other information provided in the column titled "Antecedent Debt" on Exhibit 1. This Court stated that it would "see how this [relation back] exercise shakes out over the next week or so…" before making that determination. *See June 21, 2011 Transcript, pp. 322-323 (attached as Exhibit 1).*

      The Reorganized Debtors believe that the record of the Hearing demonstrates that they were not required by this Court to provide the information that demonstrates antecedent debt. Nevertheless, as the Reorganized Debtors' counsel advised this Court at the hearing, the Reorganized Debtors have located this information for a significant number of the transfers at issue and are willing to provide this information to Doshi Prettl's counsel. Exhibit 1 to the Doshi Prettl Proposed Amended Complaint contains two transfers, one on September 6, 2005 and another on October 6, 2005 which have blanks in the antecedent debt column. *See Exhibit 2.* Attached to this letter as *Exhibit 3* is a copy of the documents that evidence that both the September 6, 2005 and October 6, 2005 transfers were made on account of antecedent debt. *See Exhibit 2 and 3.*

      For the reasons stated above, the Reorganized Debtors kindly request that this Court deny the relief sought by defendant Doshi Prettl International in its letter of June 30, 2011.

Respectfully,

*Cynthia J. Haffey*
Cynthia J. Haffey

BUTZEL LONG

cc: Mahesh Nayak via email w/ attachments

# EXHIBIT 1

Page 139

1   payables; and that these are the payables, as opposed to

2   something else.  That's what 22 says.

3           MS. HAFFEY:  Your Honor --

4           THE COURT:  That's what paragraph 22 says.

5           MS. HAFFEY:  That's correct and that is my

6   understanding, with the exception, and that's why there is a

7   blank in that antecedent debt column where there were

8   situations where we didn't -- DAS didn't use the accounts

9   payable --

10          THE COURT:  Right.

11          MS. HAFFEY:  -- DACOR system, and it was done at --

12          THE COURT:  It was a one-off thing.

13          MS. HAFFEY:  Yeah, it was a manual --

14          THE COURT:  Right.

15          MS. HAFFEY:  -- and we've got the manual documents to

16   show those deviations from payment terms.

17          THE COURT:  All right, okay.

18          MR. SULLIVAN:  Your Honor, I'm not sure if we'll get

19   to this, or you're ready to get to this yet, but are you going

20   to create today, perhaps some kind of a time limit in which

21   plaintiff must produce the documents that are the subject of

22   these --

23          THE COURT:  We're not getting to that yet.

24          MR. SULLIVAN:  Okay, thank you.

25          THE COURT:  Okay, so are there other issues with

Page 140

1    ane -- I mean, we've covered, I think, the two categories that

2    I had on this, which is where it was blank, and where there was

3    something there.  Are there other issues besides that?

4        MR. KOCHIS:  I believe there are, Your Honor.

5        THE COURT:  Okay.

6        MR. KOCHIS:  Anthony Kochis from Wolfson Bolton PLLC,

7    and I represent two different defendants in different adversary

8    proceedings.

9        So while I would echo a lot of the sentiments that

10    have been argued, one of my clients, which is Ex-cell-o Machine

11    Tools, adversary 07-02337, is where the reorganized debtors are

12    represented by the Togut law firm, and as I stated in my

13    papers, the Togut form of proposed amended complaint actually

14    differs in the allegations that are alleged and the schedules

15    that are attached; so I don't know if you want to talk about

16    this right now, but my point is I don't think those allegations

17    and those exhibits are sufficient, in addition to the futility

18    argument that I have.

19        THE COURT:  All right.  Why don't we just put a place

20    order on that, unless --

21        MR. KOCHIS:  Sure.

22        THE COURT:  -- unless we're done with the Butzel Long

23    ones.

24        MR. KOCHIS:  Sure, no problem.

25        THE COURT:  It's just a question of moving a lot of

1          MR. SULLIVAN:  But there are also ETFs on that day and

2     a wire that add up, I think, to 1.1 which again, there is still

3     a 400,000 dollar problem but.

4          THE COURT:  Okay.  All right.  Well, again, if there's

5     a material difference, if we're not talking about, you know,

6     pennies here, but if there's a material difference then I think

7     we're in the realm of what Mr. Sullivan is saying which is we

8     can't trust that you really are unbundling and I think that's a

9     real problem for the debtors in terms of relation back.

10         MR. MILIN:  Your Honor, we understand what -- that we

11    need to provide a reconciliation and I'll repeat what I said

12    before that until that happens we're talking in the abstract --

13    you know, the Rule 15 relationship back standard's fairly well

14    developed in the law.

15         THE COURT:  Okay.  But I can't -- I cannot -- I will

16    hold off on my ruling on the relation back issue until -- well,

17    you need time to review it -- till next Friday a week from

18    today.  So, you'll get this information by Monday and we'll

19    check with people on Thursday as to whether I should rule or

20    not.

21         If you all want to submit -- I mean my hope is that

22    everyone will reach agreement that may well be a vain hope for

23    a lot of people but if you need a ruling and you need more time

24    then I'll delay it further but I guess I want a reality check

25    by next Thursday and then we'll contact the parties then.

Page 247

1          It would be useful, therefore, to have for the debtors

2    a list of all of the objectors who have raised the relation

3    back point so that we know who we're dealing with here.  So,

4    you all should give that information to the debtors.  Not

5    everyone raised this point.  All right.  So, I would assume by

6    the end of the day tomorrow you'll have alerted the debtors'

7    counsel to the fact that you raised this issue in your

8    pleadings and point them to where you raised it so they'll have

9    your contact information, can send you the chart they're going

10   to assemble, the reconciliation.  Okay?  All right.

11          MR. MILIN:  Your Honor, a few other relation back

12   issues and you've mentioned the defendant relationship back.

13   First, some confusion on our end.  We thought there was a

14   mention of Castrol or a Castrol entity.

15          THE COURT:  Right.

16          MR. MILIN:  I'm looking at the complaint and the first

17   amended complaint and the captions look the same.  Perhaps I'm

18   missing something.

19          THE COURT:  Right.  I thought BP alleged that they

20   added Castrol.  Maybe I was wrong.

21          MR. MILIN:  I can -- there are defendants who've

22   raised the issue.  The one that I know of standing here is

23   Wells Fargo so the issue arises.  I just don't see that it's a

24   Castrol.

25          THE COURT:  Okay.  Did I read that wrong?

Page 257

1          THE COURT:  I think we've dealt with that.

2          MR. SULLIVAN:  Maybe I came back late from the

3    bathroom and I apologize, Your Honor.

4          THE COURT:  Well, to br -- I mean there are factual

5    issues that I've given them until -- specific dates to deal

6    with.

7          MR. SULLIVAN:  Did you deal with dates on the

8    calendar?

9          THE COURT:  Yes.

10         MR. SULLIVAN:  Okay.  So, I must have been in the

11   bathroom.  I apologize.

12         THE COURT:  I don't think you were.  I was looking

13   right at you.

14         MR. SULLIVAN:  I have no dates written in my --   in

15   my --

16         THE COURT:  I said by next Monday they have to provide

17   the charts and we'll check with the lawyers who give counsel

18   their names as to the different amounts by -- on Thursday to

19   see if I should be ruling or not.

20         MR. SULLIVAN:  Well, on relation back, Your Honor, I'm

21   talking about other issues like laches and judicial estoppel

22   and other kinds of arguments that were briefed and that you

23   ordered them to be briefed and they decided not to.

24         MS. HAFFEY:  Then again --

25         THE COURT:  Well, let me turn to my order.

Page 322

1          THE COURT:  In my view, at least.  Okay.

2          MS. HAFFEY:  Your Honor, one housekeeping matter?  And

3    this relates back to the motions to amend and the blanks

4    that --

5          THE COURT:  Yes.

6          MS. HAFFEY:  -- that this Court said, prior to lunch,

7    that it may entertain the opport -- allowing the reorganized

8    debtors to be able to provide a amended exhibit so that it

9    would provide antecedent debt information in?

10         THE COURT:  I don't remember -- that was not my view.

11   The issue was whether I would permit you all to amend -- to

12   make a motion to amend.  I'm going to see how this exercise

13   shakes out over the next week or so --

14         MS. HAFFEY:  Okay.

15         THE COURT:  -- before I decide that.  My view, though,

16   is that there should be some costs on any motion to amend here

17   because -- on this point.  It just seems to me that it's an

18   issue that was pretty obvious and my inclination is if I allow

19   it all, the cost of responding to it would be picked up by the

20   estate.

21         I don't like repeated motions to amend where I think

22   it should have been dealt with in advance.  I just -- you know,

23   if you were able to tell this to me today, I don't know why you

24   weren't able to tell it in the complaint when it was filed.

25         MS. HAFFEY:  And all I can tell Your Honor is it was

Page 323

1    just a matter of my client digging into its documents and --

2             THE COURT:  I understand, but on the other hand,

3    that's what I had granted 180 days after the effective date of

4    the fourth plan, so that these things could be done.  And they

5    weren't.  So that's if I granted any leave to amend at all.

6    So --

7             MS. HAFFEY:  Okay.

8             THE COURT:  -- I mean, to file a motion to amend,

9    which obviously incur -- people have to spend money answering

10   or responding to.

11            MS. HAFFEY:  Thank you, Your Honor.

12            THE COURT:  Okay.

13            IN UNISON:  Thank you, Your Honor.

14            THE COURT:  You look puzzled.

15            UNIDENTIFIED SPEAKER:  I am puzzled.

16            THE COURT:  About what?

17            UNIDENTIFIED SPEAKER:  Where we are in proceeding on

18   where there are blanks.

19            THE COURT:  They don't have leave to amend.

20            UNIDENTIFIED SPEAKER:  They don't have leave to amend?

21            THE COURT:  Not yet.  I'm not granting them.

22            UNIDENTIFIED SPEAKER:  So that's the thing.

23            THE COURT:  Yes.

24         (Whereupon these proceedings were concluded at 6:45 PM)

25

# EXHIBIT 2

✳

EXHIBIT 1
Delphi Automotive Systems, LLC v. Doshi Prettl International, LLC
Adv. Pro. No. 07-42211 [RDD]

| Adversary Proceeding Number | Transferee (Recipient) | Contracting Entities | Obligor and Transferring Entity | Transfer Date | Transfer Amount | Antecedent Debt Purchase Order/Invoice Number | Purchase Order/Invoice | Transfer Type |
|---|---|---|---|---|---|---|---|---|
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 8/2/2005 | $845,794.20 | D0550011476 | PO | WIRE |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 8/2/2005 | $43,255.50 | D0550011477 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 8/2/2005 | $92,885.40 | D0550011478 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 8/2/2005 | $168,983.30 | D0550054472 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 8/2/2005 | $106,258.24 | D0550054473 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 8/2/2005 | $123,053.82 | D0550024179 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 8/2/2005 | $409,677.70 | D0550024181 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 8/2/2005 | $187,110.33 | D0550025690 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 8/2/2005 | $47,458.08 | D0550054282 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 8/2/2005 | $52,596.40 | D0550054285 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 8/2/2005 | $44,073.52 | D0550054290 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 8/2/2005 | $87.05 | D0550085751 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 8/2/2005 | $55,128.32 | D0550085752 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 8/2/2005 | $7,451.08 | D0550085753 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 8/2/2005 | $8,760.44 | D0550085751 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 8/29/2005 | $64.80 | D0550085751 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/2/2005 | $655.00 | D0550085752 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/2/2005 | $371,715.00 | D0550011476 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/2/2005 | $14,447.10 | D0550011477 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/2/2005 | $54,815.78 | D0550011478 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/2/2005 | $83,123.82 | D0550054472 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/2/2005 | $65,876.58 | D0550054473 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/2/2005 | $75,583.52 | D0550024179 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/2/2005 | $231,538.24 | D0550024181 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/2/2005 | $88,565.40 | D0550025690 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/2/2005 | $44,821.52 | D0550054282 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/2/2005 | $86,881.81 | D0550054285 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/2/2005 | $117,208.00 | D0550054290 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/2/2005 | $91,576.96 | D0550085752 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/2/2005 | $19,159.92 | D0550085753 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/2/2005 | $51,197.40 | D0550085753 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/6/2005 | $2,697,252.98 | D0550012835 | | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/19/2005 | $6,591.40 | D0550077663 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/19/2005 | $25,116.00 | D0550077674 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/20/2005 | $89,211.60 | D0550011476 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/20/2005 | $31,389.80 | D0550054473 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/20/2005 | $84,181.88 | D0550024181 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/20/2005 | $55,426.16 | D0550025690 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/20/2005 | $25,616.64 | D0550085752 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/21/2005 | $74,343.00 | D0550011476 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/21/2005 | $5,778.84 | D0550011477 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/21/2005 | $15,513.90 | D0550011478 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/21/2005 | $30,786.60 | D0550054472 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/21/2005 | $15,804.90 | D0550054473 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/21/2005 | $91,542.60 | D0550024181 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/22/2005 | $29,521.80 | D0550025690 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/21/2005 | $9,887.10 | D0550077663 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/22/2005 | $74,343.00 | D0550011476 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/22/2005 | $8,568.26 | D0550011477 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/22/2005 | $21,119.46 | D0550011478 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/22/2005 | $15,804.90 | D0550054479 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/22/2005 | $38,651.32 | D0550024181 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/22/2005 | $16,476.50 | D0550077663 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/22/2005 | $28,129.92 | D0550077674 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/22/2005 | $2,102.04 | D0550077675 | PO | EFT |
| 07-42211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/22/2005 | $48,222.72 | D0550079109 | PO | EFT |

EXHIBIT 1
*Delphi Automotive Systems, LLC v. Doshi Prettl International, LLC*
Adv. Pro. No. 07-02211 [RDD]

| Adversary Proceeding No. | Transfer Recipient(s) | Contracting Entity/Entities | Obligor and Transferring Entity | Transfer Date | Transfer Amount | Antecedent Obligation Number | Purchase Order/Invoice Number | Purchase Order/Invoice | Transfer Type |
|---|---|---|---|---|---|---|---|---|---|
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/26/2005 | $ 74,343.00 | D0550011476 | D0550011476 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/26/2005 | $ 34,419.96 | D0550024181 | D0550024181 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/26/2005 | $ 22,414.56 | D0550065752 | D0550065752 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/26/2005 | $ 2,102.84 | D0550079107 | D0550079107 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/26/2005 | $ 24,111.36 | D0550079109 | D0550079109 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/26/2005 | $ 6,591.40 | D0550079117 | D0550079117 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/28/2005 | $ 89,211.60 | D0550011476 | D0550011476 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/28/2005 | $ 5,779.84 | D0550011477 | D0550011477 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/28/2005 | $ 27,925.02 | D0550011478 | D0550011478 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/28/2005 | $ 30,786.60 | D0550015472 | D0550015472 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/28/2005 | $ 22,125.86 | D0550024179 | D0550024179 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/28/2005 | $ 45,771.30 | D0550024181 | D0550024181 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 9/28/2005 | $ 41,320.32 | D0550025690 | D0550025690 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 10/3/2005 | $ 72,499.50 | D0550011476 | D0550011476 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 10/3/2005 | $ 28,346.68 | D0550015473 | D0550015473 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 10/3/2005 | $ 89,894.82 | D0550024181 | D0550024181 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 10/3/2005 | $ 38,424.96 | D0550065752 | D0550065752 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 10/4/2005 | $ 98,087.18 | D0550011476 | D0550011476 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 10/4/2005 | $ 43,303.74 | D0550011477 | D0550011477 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 10/4/2005 | $ 108,365.70 | D0550011478 | D0550011478 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 10/4/2005 | $ 221,683.52 | D0550015472 | D0550015472 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 10/4/2005 | $ 153,302.05 | D0550015473 | D0550015473 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 10/4/2005 | $ 151,727.04 | D0550024179 | D0550024179 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 10/4/2005 | $ 624,850.38 | D0550024181 | D0550024181 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 10/4/2005 | $ 183,035.16 | D0550025690 | D0550025690 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 10/4/2005 | $ 116,076.30 | D0550054282 | D0550054282 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 10/4/2005 | $ 138,959.69 | D0550054285 | D0550054285 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 10/4/2005 | $ 126,584.64 | D0550054290 | D0550054290 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 10/4/2005 | $ 6,470.16 | D0550065761 | D0550065761 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 10/4/2005 | $ 155,834.56 | D0550065752 | D0550065752 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 10/4/2005 | $ 95,633.28 | D0550072835 | D0550072835 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 10/4/2005 | $ 23,469.90 | D0550077663 | D0550077663 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 10/4/2005 | $ 1,469.76 | D0550077675 | D0550077675 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 10/4/2005 | $ 31,668.48 | D0550079109 | D0550079109 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 10/4/2005 | $ 12,823.80 | D0550079117 | D0550079117 | PO | EFT |
| 07-02211 | DOSHI PRETTL INTERNATIONAL | DAS LLC | DAS LLC | 10/6/2005 | $ 589,590.73 | | | | WIRE |

Total Amount of Claim =     $    11,409,638.18

# EXHIBIT 3

03/13/2006   10:04      248-813-4577              PURCHASING                              PAGE   02/08

08/31/2005   17:22      248-813-4577              PURCHASING                              PAGE   01/02
Fax sent by  : 2486894136              doshi associates              08/31/05    16:86    Pg:   1/2

## Settlement Agreement

This Settlement Agreement (this "Agreement") is entered into as of August 31, 2005 (the "Effective Date") by and between Delphi Corporation (together with its affiliates and subsidiaries, "Delphi") and Doshi Pretil International LLC ("Company").

A.      Company supplies various Oxygen Sensor Harness parts (the "Parts") to Delphi pursuant to various purchase orders and supply contracts (collectively, the "Purchase Orders").

C.      Company is currently Delphi's sole source for the Parts, and Delphi will not be able to obtain the Parts from an alternative source in the near term. As such, even a short supply interruption is likely to result in production shut downs for both Delphi and its OEM customer, GM, Hyundai.

D.      Delphi and Company disagree as to their respective rights and obligations related to the Purchase Orders.

E.      Delphi and Company believe it to be in their mutual best interests to resolve their dispute amicably by making certain modifications to the Purchase Orders in accordance with this Agreement in order to avoid litigation and to maintain a continuous flow of Parts from Company to Delphi.

Based upon the foregoing recitals and for good and valuable consideration, the receipt and adequacy of which is acknowledged, Delphi and Company agree as follows:

1.      Subject to the modifications set forth herein, all Purchase Orders remain in full force and effect.

2.      With respect to shipments of Parts to Delphi's U.S. locations only, Delphi will pay for Parts on the following terms (the "Modified Terms"): (a) net 10 days with a unit price discount of 0.2% based on the current unit pricing effective for shipments starting on September 1st, 2005 and continuing through October 30, 2005 and (c) MNS2-2 (without any unit price discount) thereafter and (c) with respect to shipment of parts to Delphi's U.S. locations prior to August 31, 2005, Delphi will pay all sums owed to Doshi Pretil International LLC by Tuesday 6 September 2005 via a wire transfer. Company agrees that the Modified Terms constitute adequate assurance under Uniform Commercial Code Section 2-609.   The Modified Terms will not apply to shipments of Parts to Delphi's non-U.S. locations, which shipments will continue to be governed by the terms of the applicable Purchase Orders.

*Relates to September 6 payment*

3.      Notwithstanding any intervening change in Delphi's financial situation, Company will continue to supply products to Delphi in accordance with the Purchase Orders and

Page 1 of 2

this Agreement and waives any further right to seek adequate assurance or further contract modifications under the Uniform Commercial Code or other applicable laws.

4.      Company will keep the terms of this Agreement together with all related settlement discussions strictly confidential. Company will disclose the terms of this Agreement only to its management personnel that need to know such information to implement the terms of this Agreement and legal counsel and other advisors with whom Company has a recognized legal privilege; provided that all such parties have been informed of the confidentiality restrictions contained herein. Company further agrees that it will be responsible and liable for any breach of the confidentiality provisions set forth in this Agreement by its management personnel, legal counsel and other advisors. Company acknowledges that failure to honor the confidentiality provisions contained herein would cause significant economic harm to Delphi. Any discussions by Company with any third parties, including the press or media or consultants, regarding this Agreement and its terms are expressly prohibited.

5.      The parties hereto acknowledge that they are executing this Agreement without duress or coercion and without reliance on any representations, warranties or commitments other than those representations, warranties and commitments expressly set forth in this Agreement.

6.      This Agreement constitutes the entire understanding of the parties in connection with the subject matter hereof. This Agreement may not be modified, altered, or amended except by an agreement in writing signed by Delphi and Company. This Agreement shall be deemed to be incorporated by reference into, and shall be part of, all Purchase Orders without any specific reference to this Agreement in any such Purchase Order. The terms and conditions of the Purchase Orders are amended to include the terms of this Agreement. Should an inconsistency or conflict exist between the express terms of the Purchase Orders and this Agreement, the terms of this Agreement shall govern and control. This Agreement is being entered into among competent persons who are experienced in business and represented by counsel, and has been reviewed by Company and its counsel. Therefore, any ambiguous language in this Agreement will not necessarily be construed against any particular party as the drafter of such language.

7.      This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Michigan, without regard to conflicts of law principles.

EXECUTED as of the Effective Date.

Delphi Corporation                                Doshi Pretti International LLC

By:_____                        By:_____
Name: LAWRENCE GAVIN, CAM                          Name: AJAY B. JALAMANCHI
Title: COMMODITY DIRECTOR                           Title: Controller
  - 31 AUG 05                                        - 08/31/05

Page 2 of 2

**Delphi**

**Pre Petition Wire Analysis Review Form**

| | |
|---|---|
| Vendor Name: | DOSHI PRETTL INTERNATIONAL |
| Remit Duns: | RD 945587546 |
| Date of Wire: | 06 Oct 2005 ✳    (Actual wire date not date requested) |
| Amount of Wire | $589,590.73    (Indicate currency if other than USD) |
| Source: | Wire Room    (e.g. Treasury, ACS or Wire Room) |

What was intent of wire made above?        (Place X in the most appropriate box below)

To Pay for Shipments Prior to Wire:                        [ X ] ✳

To Pay for Shipments Subsequent to Wire:                [   ]

To Pay for Shipments both Prior & Subsequent:          [   ]

Unknown Intent:                                          [   ]

Please **attach** documentation in support of the above assessment of intent.  Documentation may include but is not limited to the following types of documentation:
**NO DOCUMENTATION: 589,590.73 in Essential Supplier Payments**

- Email correspondence indicating intent for wire
- Detail lists of invoices/shipments that are being remitted
- Letters/notes/memos indicating intent for wire
- Meeting/Phone conversation minutes that indicate intent
- E-Dacor listings indicating amount due at date of wire that match wire amounts
- Terms deviation requests that indicate wire amount and intent for wire