case go to trial vis-à-vis the concrete present and future benefits held forth by the settlement

without the expense and delay of a trial and subsequent appellate procedures, (b) the prospect of

complex and protracted litigation if the settlement is not approved, (c) the competency and

experience of counsel who support the settlement, (d) the relative benefits to be received by

individuals or groups within the class, and (e) the extent to which the settlement is truly the

product of arm's-length bargaining, and not of fraud or collusion.  Adelphia, 327 B.R. at 159-60;

accord In re Texaco Inc., 84 B.R. 893, 902 (Bankr. S.D.N.Y. 1988).

      56.    The bankruptcy court need not determine that all of the foregoing criteria

favor approval of a compromise, and the proposed compromise need not be the best agreement

that the debtor could have achieved under the circumstances.  See Adelphia, 327 B.R. at 159-60;

Nellis, 165 B.R. at 123.  Instead, the court's proper role is to familiarize itself with all the facts

necessary for an intelligent and objective opinion, and determine whether the settlement is fair

and equitable.  In re Best Products Co., Inc., 168 B.R. 35, 49-51 (Bankr. S.D.N.Y. 1994).  To

that end, courts should not substitute their own judgment for that of the debtor, but rather should

"'canvass the issues'" to affirm that the proposed settlement falls above "'the lowest point in the

range of reasonableness.'"  Adelphia, 327 B.R. at 159 (quoting W.T. Grant Co., 699 F.2d at 608);

accord Airline Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.),

156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd sub nom. Sobchack v. Am. Nat'l Bank & Trust Co., 17

F.3d 600 (2d Cir. 1994); In re Best Products Co., 168 B.R. at 49-51.

      57.    Because the IUOE, IBEW, and IAM Settlement Agreements are a

resolution or settlement of the issues raised in the 1113/1114 Motion as it pertains to the IUOE,

IBEW, and IAM, they should be approved under Bankruptcy Rule 9019(a) because their terms

are fair and equitable, fall well within the range of reasonableness, and are in the best interests of

the Debtors, their estates, their creditors, and their stakeholders.  Most significantly, the IUOE,

IBEW, and IAM Settlement Agreements clarify and provide certainty regarding the manner in which Delphi's labor, pension, and OPEB issues with the IUOE, IBEW, and IAM will be resolved.

58.    Moreover, the Court is not required to find that the terms of the settlements are the most favorable that the Debtors could have obtained in order to approve the IUOE, IBEW, and IAM Settlement Agreements.  In re W.T. Grant Co., 699 F.2d at 608 (noting that court is only required to "see whether the settlement falls below the lowest point in the range of reasonableness") (citation omitted); Nellis, 165 B.R. at 123; In re Best Products Co., Inc., 168 B.R. at 49-51.

59.    As recognized by this Court on various occasions, a consensual resolution to the Debtors' need to reduce labor costs is in the best interests of the Debtors' estates.  See, e.g., May 12, 2006 Hearing Transcript at pp. 201-02 (noting that representatives of Delphi and Unions, rather than Court, are the most important in an 1113/1114 proceeding, and urging parties to reach good-faith agreement).  Consensual agreements are recognized generally as a normal part of the reorganization process and as beneficial to the estate in part because of the inevitable reduction in administrative costs and other burdens associated with protracted litigation.  This is especially the case here, in light of the many employees and retirees who would be affected by the non-consensual modifications proposed in the 1113/1114 Motion, should that motion ultimately be granted by the Court.  See, e.g., TMT Trailer Ferry, Inc., 390 U.S. at 424 ("[c]ompromises are a normal part of the process of reorganization."); Nellis, 165 B.R. at 123 (stating "the general rule that settlements are favored and, in fact, encouraged by the bankruptcy approval process").

J.    Section 1114 Of The Bankruptcy Code Is Inapplicable To The Proposed Modification To
      Retiree Welfare Benefits Of Delphi's Non-Represented Hourly Active Employees And
      Retirees

      60.    The Debtors believe that the procedures outlined in section 1114(d) of the

Bankruptcy Code are inapplicable to the modifications to retiree welfare benefits of its non-

represented hourly active employees and retirees proposed here.  Section 1114(d) provides that:

> The court, upon a motion by any party in interest, and after notice and
> a hearing, shall appoint a committee of retired employees if the debtor
> seeks to modify or not pay the retiree benefits or if the court otherwise
> determines that it is appropriate, to serve as the authorized representative,
> under this section, of those persons receiving any retiree benefits not covered by a
> collective bargaining agreement.

Section 1114(a) defines "retiree benefits" as:

> payments to any entity or person for the purpose of providing or
> reimbursing payments for retired employees and their spouses and
> dependents, for medical, surgical, or hospital care benefits, or benefits
> in the event of sickness, accident, disability, or death under any plan,
> fund, or program (through the purchase of insurance or otherwise)
> maintained or established in whole or in part by the debtor prior to
> filing a petition commencing a case under this title.

11 U.S.C. § 1114(a).

      61.    Where the terms of a plan unambiguously state that benefits can be

modified or terminated at any time, the modification procedure provided in section 1114(d) of

the Bankruptcy Code is not applicable, and a debtor may modify or terminate benefits without

any obligation to comply with such section.  See In re Doskocil Cos., 130 B.R. 870 (Bankr. D.

Kan. 1991) (where debtor has no legal obligation under ERISA to refrain from modifying or

terminating future benefits, bankruptcy court is not required to appoint section 1114(d)

committee). See also CF & I Steel Corp. v. Conners (In re CF & I Fabricators of Utah Inc.), 163

B.R. 858,874 (Bankr. C.D. Utah 1994) (section 1114 does not protect retiree benefits beyond

contractual obligations of debtors); In re Federated Dept. Stores, Inc., 132 B.R. 572, 574 (Bankr.

S.D. Ohio 1991) (section 1129(a)(13) creates no new substantive rights to benefits for pre-

petition retirees; expiration of old contract rights makes modification process of section 1114 inapplicable).  But see  In re Farmland Indus., Inc., 294 B.R. 903 (Bankr. W.D. Mo. 2003) (holding that § 1114 prohibits debtor from terminating or modifying any retiree benefits during chapter 11 case unless debtor complies with section 1114, regardless of whether debtor has prepetition non-bankruptcy right to unilaterally terminate or modify benefits).

   62. Delphi has the right to modify OPEB unilaterally under the terms of its benefit plans with respect to the non-represented hourly active employees and retirees.  As set forth in Doskocil, there is no provision of section 1114 indicating that Congress intended section 1114 to apply to benefit plans that are terminable by their own terms.  In Doskocil, the court, relying on precedent from the Southern District of New York and citing the legislative history of section 1114, held that section 1114 applies only in situations where a debtor has a continuing legal obligation to pay retiree benefits.  Doskocil, 130 B.R. at 875, citing In re Chateaugay Corp., 111 B.R. 399 (S.D.N.Y. 1990).  "Congress intended to focus primarily on the modification of [a] debtor's legal obligations to retirees as opposed to creating for the debtor some new obligation not already imposed by the terms of the retiree benefit plan." Doskocil, 130 B.R. at 876.

   63. Because the terms of Delphi's retiree health and welfare plans with respect to its non-represented hourly active employees and retirees provide that they may be amended or terminated at any time, the Debtors are under no contractual obligation to refrain from effectuating the proposed modifications.   Therefore, section 1114 of the Bankruptcy Code does not apply to the Debtors' proposed OPEB modifications with respect to its non-represented hourly active employees and retirees, and the non-represented hourly active employees and retirees have no right to be represented by a statutory committee, the appointment of which would be an administrative expense to the Debtors' estates and which could delay the Debtors' efforts to emerge from chapter 11.

## Notice Of Motion

64.     Notice of this Motion has been provided in accordance with the Amended

Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m),

9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case

Management, And Administrative Procedures, entered by this Court on October 26, 2006

(Docket No. 5418), and the Supplemental Order Under 11 U.S.C. Sections 102(1) And 105 And

Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And

Certain Notice, Case Management, And Administrative Procedures (Docket No. 2883).  The

Debtors have also provided the informational notice of this Motion, a copy of which is attached

hereto as Exhibit 1, as a courtesy to all of the IUOE, IBEW, and IAM-represented employees

and IUOE, IBEW, and IAM-represented retirees and non-represented hourly active employees

and retirees affected by this Motion.  In light of the relief requested, the Debtors submit that no

other or further notice is necessary.

## Memorandum Of Law

65.     Because the legal points and authorities upon which this Motion relies are

incorporated herein, the Debtors respectfully request that the requirement of service and filing of

a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.


WHEREFORE the Debtors respectfully request that the Court enter an

order pursuant to 11 U.S.C. §§ 363, 1113, and 1114 of the Bankruptcy Code and Fed. R. Bankr.

P. 6004 and 9019 (i) approving the IUOE, IBEW, and IAM Settlement Agreements, (ii)

authorizing the withdrawal without prejudice of the Debtors' 1113/1114 Motion solely as it

pertains to the IUOE, IBEW, and IAM and approving the parties' settlement of the 1113/1114

Motion solely as it pertains to the IUOE, IBEW, and IAM, (iii) authorizing the Debtors'

modification of retiree welfare benefits for certain IUOE, IBEW, and IAM-represented retirees,

(iv) pursuant to 11 U.S.C. § 363, authorizing the Debtors' modification of retiree welfare benefits

for certain non-represented hourly active employees and retirees and approval of the Non-

Represented Term Sheet, and (v) granting the Debtors such other and further relief as is just.

Dated:          New York, New York
                August 6, 2007

                                    SKADDEN, ARPS, SLATE, MEAGHER
                                     & FLOM LLP

                          By:     /s/ John Wm. Butler, Jr.
                                 John Wm. Butler, Jr. (JB 4711)
                                 John K. Lyons (JL 4951)
                                 Ron E. Meisler (RM 3026)
                                  333 West Wacker Drive, Suite 2100
                                  Chicago, Illinois 60606
                                  (312) 407-0700

                                       - and -

                          By:     /s/ Kayalyn A. Marafioti
                                 Kayalyn A. Marafioti (KM 9632)
                                 Thomas J. Matz (TM 5986)
                                  Four Times Square
                                  New York, New York 10036
                                  (212) 735-3000

                                       - and-

                          O'MELVENY & MYERS LLP

                          By:    /s/ Tom A. Jerman
                                 Tom A. Jerman (TJ 1129)
                                 Jessica Kastin (JK 2288)
                                  1625 Eye Street, NW
                                  Washington, DC 20006
                                  (202) 383-5300

                          Attorneys for Delphi Corporation, et al.,
                           Debtors and Debtors-in-Possession

**A COMPLETE COPY OF DELPHI'S COURT
PAPERS, INCLUDING THE MEMORANDA
OF UNDERSTANDING, CAN BE OBTAINED
AT WWW.DELPHIDOCKET.COM OR BY
CALLING 1-888-249-2691**

---

This is a notice of a motion to the U.S. Bankruptcy Court which may affect you as a present or
former employee of Delphi:

**FOR A SUMMARY OF THE RELIEF SOUGHT IN THIS MOTION REGARDING MEMBERS
OF:
IUOE LOCAL 832S: SEE PAGES 3 & 4
IUOE LOCAL 18S: SEE PAGES 5 & 6
IUOE LOCAL 101S: SEE PAGES 7 & 8
IBEW (ELECTRONICS & SAFETY): SEE PAGES 9 & 10
IBEW (POWERTRAIN): SEE PAGES 11& 12
IAM: SEE PAGES 13 &14
NON-REPRESENTED HOURLY ACTIVE EMPLOYEES AND RETIREES: SEE PAGE 15**

The information in this notice is only a summary and you can obtain complete papers as set forth
above this box and on page 16.

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
In re                                   :       Chapter 11
                                        :
DELPHI CORPORATION, <u>et al.</u>,             :       Case No. 05-44481 (RDD)
                                        :
                      Debtors. :       (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

INFORMATIONAL NOTICE OF EXPEDITED MOTION FOR ORDER UNDER 11 U.S.C.
§§ 363, 1113, AND 1114 AND FED. R. BANKR. P. 6004 AND 9019 APPROVING
(I) MEMORANDA OF UNDERSTANDING AMONG IUOE, IBEW, IAM,
DELPHI, AND GENERAL MOTORS CORPORATION INCLUDING MODIFICATION
OF IUOE, IBEW, AND IAM COLLECTIVE BARGAINING AGREEMENTS AND
RETIREE WELFARE BENEFITS FOR CERTAIN IUOE, IBEW, AND IAM-REPRESENTED
RETIREES AND (II) MODIFICATION OF, AND TERM SHEET REGARDING,
RETIREE WELFARE BENEFITS FOR CERTAIN NON-REPRESENTED
<u>HOURLY ACTIVE EMPLOYEES AND RETIREES</u>

**INFORMATION FOR IUOE, IBEW, AND IAM-REPRESENTED
EMPLOYEES AND RETIREES AND CERTAIN NON-REPRESENTED
HOURLY ACTIVE EMPLOYEES AND RETIREES OF DELPHI CORPORATION**

On August 6, 2007, Delphi Corporation and certain of its affiliated debtors and
debtors-in-possession ("Delphi"), filed the **Expedited Motion For Order Under 11 U.S.C. §§**

**363, 1113, And 1114 And Fed. R. Bankr. P. 6004 And 9019 Approving (I) Memoranda Of Understanding Among IUOE, IBEW, IAM, Delphi, And General Motors Corporation Including Modification Of IUOE, IBEW, And IAM Collective Bargaining Agreements And Retiree Welfare Benefits For Certain IUOE, IBEW, And IAM-Represented Retirees And (II) Modification Of, And Term Sheet Regarding, Retiree Welfare Benefits For Certain Non-Represented Hourly Active Employees And Retirees** (the "Motion"), which seeks bankruptcy court approval (subject to ratification by the IUOE,[1] IBEW, and IAM, respectively) of six memoranda of understanding dated July 31 and August 1, 2007 (the "Settlement Agreements" or "Memoranda of Understanding") among Delphi, General Motors, and the IUOE, IBEW, and IAM, respectively, regarding Delphi's restructuring as well as bankruptcy court approval of modification of retiree welfare benefits for certain non-represented hourly active employees and retirees and a term sheet between GM and Delphi regarding such modification.

On August 16, 2007 at 10:00 a.m., the United States Bankruptcy Court (the "Court") for the Southern District of New York will conduct a hearing on approval of the Settlement Agreements.

If approved by the Court (and ratified, where necessary, by the IUOE, IBEW, and IAM, respectively), each Settlement Agreement will go into effect.

---

[1]   Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the Memoranda of Understanding with the additional clarification that use of the IUOE refers to Locals 832S, 18S, and 101S of the International Union of Operating Engineers and not to the international union itself.

<u>**IUOE Local 832S**</u>

The **IUOE Local 832S** Settlement Agreement, among other subject matters, provides that:

(A)    Effective upon the later of entry of this Court's approval order in respect of the Motion or the first Monday following receipt of written notice of ratification from the International Union of Operating Engineers and its Local 832S ("IUOE Local 832S"):

- The 2003 IUOE Local 832S – Delphi Powertrain – Rochester Agreements and all related agreements and understandings are extended until September 14, 2011, subject to their termination provisions;

- A workforce transition program is implemented for eligible IUOE Local 832S-represented employees that provides eligible employees with transformation plan options including (i) attrition options similar to the previously-approved UAW and IUE-CWA attrition program for eligible IUOE Local 832S employees who are participants in the Delphi Hourly-Rate Employees Pension Plan, (ii) provision of a lump sum "buy-down" payment totaling $10,000 for eligible employees, and (iii) severance payments up to $40,000 to eligible employees who are permanently laid off prior to September 14, 2011;

- Certain terms of certain IUOE CBAs are modified with respect to wages, personal savings plans, Independence Week Pay, holidays, vacation accrual, GIS, job security and/or guaranteed employment levels, subsidized discount programs, tuition assistance, attendance, representation, and dispute resolution; and

- All employee, retiree, and union asserted and unasserted claims are settled (except for waiver of rights to vested pension benefits, workers compensation benefits, unemployment compensation benefits, and the right to pursue pending ordinary course grievance except for employees who have signed individual releases of claims).

(B)    Effective upon the execution by Delphi and GM of a comprehensive settlement agreement resolving certain financial, commercial, and other matters between Delphi and GM and substantial consummation of a plan of reorganization proposed by Delphi in its chapter 11 cases and confirmed by this Court which incorporates, approves, and is consistent with all of the terms of the IUOE Local 832S Settlement Agreement and Delphi-GM settlement:

- Delphi's obligation to provide certain retiree welfare benefits is eliminated and GM is obligated to provide certain retiree welfare benefits for certain IUOE Local 832S-represented retirees and eligible employees covered as provided in the Term Sheet – Delphi Cessation and GM Provision of OPEB;

- Delphi's existing pension plan is frozen in certain respects effective upon emergence from chapter 11 for certain covered IUOE Local 832S-represented employees as provided in Section D.2 of the IUOE Local 832S Settlement Agreement;

- The Memorandum of Understanding (including certain IUOE CBAs) is assumed pursuant to 11 U.S.C. § 365;

- The IUOE Local 832S released parties are exculpated and released in connection with the IUOE Local 832S Memorandum of Understanding and Delphi's chapter 11 cases; and

- Delphi and GM receive releases from the IUOE Local 832S, all employees and former employees of Delphi represented or formerly represented by the IUOE Local 832S, and all persons or entities with claims derived from or related to any relationship with such employees of Delphi arising directly or indirectly from or in any way related to any obligations under the collective bargaining agreements or the IUOE Local 832S Memorandum of Understanding (except for claims for benefits provided for or explicitly not waived under the IUOE Local 832S Memorandum of Understanding, including, but not limited to, workers' compensation benefits and unemployment compensation benefits against Delphi, its subsidiaries, or affiliates that are otherwise assertable under applicable law).

### IUOE Local 18S

The **IUOE Local 18S** Settlement Agreement, among other subject matters, provides that:

(A)     Effective upon the later of entry of this Court's approval order in respect of the Motion or the first Monday following receipt of written notice of ratification from the International Union of Operating Engineers and its Local 18S ("IUOE Local 18S"):

- The IUOE Local 18S, Delphi, and GM acknowledge that the Delphi Thermal & Interior – Columbus operation is scheduled to be closed;

- The term of the 2003 IUOE Local 18S – Delphi Agreements and all related agreements and understandings are extended until September 14, 2011, subject to their termination provisions;

- A workforce transition program is implemented for eligible IUOE Local 18S-represented employees that provides eligible employees with transformation plan options including (i) attrition options similar to the previously-approved UAW and IUE-CWA attrition program for eligible IUOE Local 18S employees who are participants in the Delphi Hourly-Rate Employees Pension Plan, (ii) provision of a lump sum "buy-down" payment totaling $10,000 for eligible employees, and (iii) severance payments up to $40,000 to eligible employees who are permanently laid off prior to September 14, 2011;

- Certain terms of certain IUOE CBAs are modified with respect to wages, personal savings plans, Independence Week Pay, holidays, vacation accrual, GIS, job security and/or guaranteed employment levels, Plant Closing and Sale Moratorium, subsidized discount programs, tuition assistance, and representation;

- On a case-by-case basis, Delphi employees transferring from a Delphi plant to another Delphi plant may be eligible for a Relocation Allowance based on actual expenses incurred, up to a maximum of $10,000; and

- All employee, retiree, and union asserted and unasserted claims are settled (except for waiver of rights to vested pension benefits, workers compensation benefits, unemployment compensation benefits, and the right to pursue pending ordinary course grievance except for employees who have signed individual releases of claims).

(B)    Effective upon the execution by Delphi and GM of a comprehensive
settlement agreement resolving certain financial, commercial, and other
matters between Delphi and GM and substantial consummation of a plan
of reorganization proposed by Delphi in its chapter 11 cases and
confirmed by this Court which incorporates, approves, and is consistent
with all of the terms of the IUOE Local 18S Settlement Agreement and
Delphi-GM settlement:

- Delphi's obligation to provide certain retiree welfare benefits is
eliminated and GM is obligated to provide certain retiree welfare
benefits for certain IUOE Local 18S-represented retirees and
eligible employees covered as provided in the Term Sheet – Delphi
Cessation and GM Provision of OPEB;

- Delphi's existing pension plan is frozen in certain respects effective
upon emergence from chapter 11 for certain covered IUOE Local
18S-represented employees as provided in Section D.2 of the
IUOE Local 18S Settlement Agreement;

- The Memorandum of Understanding (including certain IUOE
CBAs) is assumed pursuant to 11 U.S.C. § 365;

- The IUOE Local 18S released parties are exculpated and released
in connection with the IUOE Local 18S Memorandum of
Understanding and Delphi's chapter 11 cases; and

- Delphi and GM receive releases from the IUOE Local 18S, all
employees and former employees of Delphi represented or
formerly represented by the IUOE Local 18S, and all persons or
entities with claims derived from or related to any relationship with
such employees of Delphi arising directly or indirectly from or in
any way related to any obligations under the collective bargaining
agreements or the IUOE Local 18S Memorandum of
Understanding (except for claims for benefits provided for or
explicitly not waived under the IUOE Local 18S Memorandum of
Understanding, including, but not limited to, workers'
compensation benefits and unemployment compensation benefits
against Delphi, its subsidiaries, or affiliates that are otherwise
assertable under applicable law).

## IUOE Local 101S

The **IUOE Local 101S** Settlement Agreement, among other subject matters, provides that:

(A)   Effective upon the entry of this Court's approval order in respect of the Motion:

- The International Union of Operating Engineers Local 101S ("IUOE Local 101S"), Delphi, and GM acknowledge that the Delphi Automotive Holdings Group – Olathe operations are closed, and that Delphi no longer employs any Olathe bargaining unit employees;

- The IUOE Local 101S Settlement Agreement terminates and supersedes the 2003 IUOE Local 101S – Delphi Agreements and all related agreements and understandings; and

- All employee, retiree, and union asserted and unasserted claims are settled (except for waiver of rights to vested pension benefits, workers compensation benefits, unemployment compensation benefits, and the right to pursue pending ordinary course grievance except for employees who have signed individual releases of claims).

(B)   Effective upon the execution by Delphi and GM of a comprehensive settlement agreement resolving certain financial, commercial, and other matters between Delphi and GM and substantial consummation of a plan of reorganization proposed by Delphi in its chapter 11 cases and confirmed by this Court which incorporates, approves, and is consistent with all of the terms of the IUOE Local 101S Settlement Agreement and Delphi-GM settlement:

- Delphi's obligation to provide certain retiree welfare benefits is eliminated and GM is obligated to provide certain retiree welfare benefits for certain IUOE Local 101S-represented retirees and eligible employees covered as provided in the Term Sheet – Delphi Cessation and GM Provision of OPEB;

- Delphi's existing pension plan is frozen in certain respects effective upon emergence from chapter 11 for certain covered IUOE Local 101S-represented employees as provided in Section C of the IUOE Local 101S Settlement Agreement;

- The Memorandum of Understanding (including certain IUOE agreements) is assumed pursuant to 11 U.S.C. § 365;

-7-

- The IUOE Local 101S released parties are exculpated and released in connection with the IUOE Local 101S Memorandum of Understanding and Delphi's chapter 11 cases; and

- Delphi and GM receive releases from the IUOE Local 101S, all employees and former employees of Delphi represented or formerly represented by the IUOE Local 101S, and all persons or entities with claims derived from or related to any relationship with such employees of Delphi arising directly or indirectly from or in any way related to any obligations under the collective bargaining agreements or the IUOE Local 101S Memorandum of Understanding (except for claims for benefits provided for or explicitly not waived under the IUOE Local 101S Memorandum of Understanding, including, but not limited to, workers' compensation benefits and unemployment compensation benefits against Delphi, its subsidiaries, or affiliates that are otherwise assertable under applicable law).

## IBEW (Electronics & Safety)

The **IBEW E&S** Settlement Agreement, among other subject matters, provides that:

(A)    Effective upon the later of entry of this Court's approval order in respect of the Motion or the first Monday following receipt of written notice of ratification from the IBEW:

- The IBEW, Delphi, and GM acknowledge that the Delphi Electronics & Safety – Milwaukee operation is scheduled to be closed;

- The term of the 2003 IBEW – Delphi E&S Agreements and all related agreements and understandings are extended until September 14, 2011, subject to their termination provisions;

- A workforce transition program is implemented for eligible IBEW-represented employees that provides eligible employees with transformation plan options, including (i) attrition options similar to the previously-approved UAW and IUE-CWA attrition program for eligible IBEW employees who are participants in the Delphi Hourly-Rate Employees Pension Plan, (ii) provision of a lump sum "buy-down" payment totaling $10,000 for eligible employees, and (iii) severance payments up to $40,000 to eligible employees who are permanently laid off prior to September 14, 2011;

- Certain terms of the IBEW CBAs are modified with respect to wages, personal savings plans, Independence Week Pay, holidays, vacation accrual, Plant Closing and Sale Moratorium, GIS, job security and/or guaranteed employment levels, tuition assistance, subsidized discount programs, strikes, and stoppages; and

- All employee, retiree, and union asserted and unasserted claims are settled (except for waiver of rights to vested pension benefits, workers compensation benefits, unemployment compensation benefits, and the right to pursue pending ordinary course grievance except for employees who have signed individual releases of claims).

(B)    Effective upon the execution by Delphi and GM of a comprehensive settlement agreement resolving certain financial, commercial, and other matters between Delphi and GM and substantial consummation of a plan of reorganization proposed by Delphi in its chapter 11 cases and confirmed by this Court which incorporates, approves, and is consistent with all of the terms of the IBEW E&S Settlement Agreement and Delphi-GM settlement:

-9-

- Delphi's obligation to provide certain retiree welfare benefits is eliminated and GM is obligated to provide certain retiree welfare benefits for certain IBEW-represented retirees and eligible employees covered as provided in the Term Sheet – Delphi Cessation and GM Provision of OPEB;

- Delphi's existing pension plan is frozen in certain respects effective upon emergence from chapter 11 for certain covered IBEW-represented employees as provided in Section D.2 of the IBEW E&S Settlement Agreement;

- The Memorandum of Understanding (including certain IBEW CBAs) is assumed pursuant to 11 U.S.C. § 365;

- The IBEW released parties are exculpated and released in connection with the IBEW E&S Memorandum of Understanding and Delphi's chapter 11 cases; and

- Delphi and GM receive releases from the IBEW, all employees and former employees of Delphi represented or formerly represented by the IBEW, and all persons or entities with claims derived from or related to any relationship with such employees of Delphi arising directly or indirectly from or in any way related to any obligations under the collective bargaining agreements or the IBEW E&S Memorandum of Understanding (except for claims for benefits provided for or explicitly not waived under the IBEW E&S Memorandum of Understanding, including, but not limited to, workers' compensation benefits and unemployment compensation benefits against Delphi, its subsidiaries, or affiliates that are otherwise assertable under applicable law).

**IBEW (Powertrain)**

The **IBEW Powertrain** Settlement Agreement, among other subject matters, provides that:

(A)   Effective upon the later of entry of this Court's approval order in respect of the Motion or the first Monday following receipt of written notice of ratification from the IBEW:

- The IBEW, Delphi, and GM acknowledge that the Delphi Powertrain – Milwaukee operation is scheduled to be closed;

- The term of the 2003 IBEW – Delphi Powertrain (formerly Delphi E&C) – Milwaukee Operations Agreements and all related agreements and understandings are extended until September 14, 2011, subject to their termination provisions;

- A workforce transition program is implemented for eligible IBEW-represented employees that provides eligible employees with transformation plan options, including (i) attrition options similar to the previously-approved UAW and IUE-CWA attrition program for eligible IBEW employees who are participants in the Delphi Hourly-Rate Employees Pension Plan, (ii) provision of a lump sum "buy-down" payment totaling $10,000 for eligible employees, and (iii) severance payments up to $40,000 to eligible employees who are permanently laid off prior to September 14, 2011;

- Certain terms of the IBEW CBAs are modified with respect to wages, personal savings plans, Independence Week Pay, holidays, vacation accrual, Plant Closing Restrictions, GIS, job security and/or guaranteed employment levels, tuition assistance, subsidized discount programs, strikes, and stoppages; and

- All employee, retiree, and union asserted and unasserted claims are settled (except for waiver of rights to vested pension benefits, workers compensation benefits, unemployment compensation benefits, and the right to pursue pending ordinary course grievance except for employees who have signed individual releases of claims).

(B)   Effective upon the execution by Delphi and GM of a comprehensive settlement agreement resolving certain financial, commercial, and other matters between Delphi and GM and substantial consummation of a plan of reorganization proposed by Delphi in its chapter 11 cases and confirmed by this Court which incorporates, approves, and is consistent with all of the terms of the IBEW Powertrain Settlement Agreement and Delphi-GM settlement:

-11-

- Delphi's obligation to provide certain retiree welfare benefits is eliminated and GM is obligated to provide certain retiree welfare benefits for certain IBEW-represented retirees and eligible employees covered as provided in the Term Sheet – Delphi Cessation and GM Provision of OPEB;

- Delphi's existing pension plan is frozen in certain respects effective upon emergence from chapter 11 for certain covered IBEW-represented employees as provided in Section D.2 of the IBEW Powertrain Settlement Agreement;

- The Memorandum of Understanding (including certain IBEW CBAs) is assumed pursuant to 11 U.S.C. § 365;

- The IBEW released parties are exculpated and released in connection with the IBEW Powertrain Memorandum of Understanding and Delphi's chapter 11 cases; and

- Delphi and GM receive releases from the IBEW, all employees and former employees of Delphi represented or formerly represented by the IBEW, and all persons or entities with claims derived from or related to any relationship with such employees of Delphi arising directly or indirectly from or in any way related to any obligations under the collective bargaining agreements or the IBEW Powertrain Memorandum of Understanding (except for claims for benefits provided for or explicitly not waived under the IBEW Powertrain Memorandum of Understanding, including, but not limited to, workers' compensation benefits and unemployment compensation benefits against Delphi, its subsidiaries, or affiliates that are otherwise assertable under applicable law).

## IAM

The **IAM** Settlement Agreement, among other subject matters, provides that:

(A)    Effective upon the later of entry of this Court's approval order in respect of the Motion or the first Monday following receipt of written notice of ratification from the IAM:

- The IAM, Delphi, and GM acknowledge that the Delphi Electronics & Safety – Milwaukee operation is scheduled to be closed;

- The term of the 2003 IAM – Delphi Electronics & Safety – Milwaukee Operations Agreements and all related agreements and understandings are extended until September 14, 2011, subject to their termination provisions;

- A workforce transition program is implemented for eligible IAM-represented employees that provides eligible employees with transformation plan options including (i) attrition options similar to the previously-approved UAW and IUE-CWA attrition program for eligible IAM employees who are participants in the Delphi Hourly-Rate Employees Pension Plan, (ii) provision of a lump sum "buy-down" payment totaling $10,000 for eligible employees, and (iii) severance payments up to $40,000 to eligible employees who are permanently laid off prior to September 14, 2011;

- Certain terms of the IAM CBAs are modified with respect to wages, personal savings plans, Independence Week Pay, holidays, vacation accrual, Plant Closing and Sale Moratorium, GIS, job security and/or guaranteed employment levels, tuition assistance, subsidized discount programs, strikes, and stoppages; and

- All employee, retiree, and union asserted and unasserted claims are settled (except for waiver of rights to vested pension benefits, workers compensation benefits, unemployment compensation benefits, and the right to pursue pending ordinary course grievance except for employees who have signed individual releases of claims).

(B)    Effective upon the execution by Delphi and GM of a comprehensive settlement agreement resolving certain financial, commercial, GIS, and other matters between Delphi and GM and substantial consummation of a plan of reorganization proposed by Delphi in its chapter 11 cases and confirmed by this Court which incorporates, approves, and is consistent

-13-

with all of the terms of the IAM Settlement Agreement and Delphi-GM settlement:

- Delphi's obligation to provide certain retiree welfare benefits is eliminated and GM is obligated to provide certain retiree welfare benefits for certain IAM-represented retirees and eligible employees covered as provided in the Term Sheet – Delphi Cessation and GM Provision of OPEB;

- Delphi's existing pension plan is frozen in certain respects effective upon emergence from chapter 11 for certain covered IAM-represented employees as provided in Section D.2 of the IAM Settlement Agreement;

- The Memorandum of Understanding (including certain IAM CBAs) is assumed pursuant to 11 U.S.C. § 365;

- The IAM released parties are exculpated and released in connection with the IAM Memorandum of Understanding and Delphi's chapter 11 cases; and

- Delphi and GM receive releases from the IAM, all employees and former employees of Delphi represented or formerly represented by the IAM, and all persons or entities with claims derived from or related to any relationship with such employees of Delphi arising directly or indirectly from or in any way related to any obligations under the collective bargaining agreements or the IAM Memorandum of Understanding (except for claims for benefits provided for or explicitly not waived under the IAM Memorandum of Understanding, including, but not limited to, workers' compensation benefits and unemployment compensation benefits against Delphi, its subsidiaries, or affiliates that are otherwise assertable under applicable law).

-14-

## <u>Non-Represented Hourly Active  Employees And Retirees</u>

The Motion also requests that the Court approve modification of retiree welfare benefits for certain **non-represented hourly active employees and retirees** of the Debtors pursuant to 11 U.S.C. § 363.  On August 3, 2007, Delphi and GM agreed to the treatment of these non-represented hourly individuals in the Term Sheet – Delphi Cessation and GM Provision of OPEB For Certain Non-Represented Delphi Employees and Retirees (the "Non-Represented Term Sheet").   Upon the effective date of the Non-Represented Term Sheet, GM will provide post-retirement medical benefits to certain of the non-represented hourly active employees and retirees in accordance with all the ongoing terms, conditions and eligibility requirements of the GM Health Care Program for Hourly Employees and GM will provide the applicable level of post retirement medical benefits to certain of the non-represented hourly active employees and retirees consistent with the terms of the Modified Plan, as defined in the settlement agreement approved by the court in the case <u>IUE, et al. v. General Motors Corporation</u> (case number 2:06-cv-12151), on the same basis as such benefits are provided to GM-IUE-CWA hourly employees who retired from GM with eligibility to participate in the GM Health Care Program.  Further, GM will provide all employer-paid post-retirement Basic Life Insurance benefits to certain of the non-represented hourly active employees and retirees in accordance with all the ongoing terms, conditions, and eligibility requirements of the GM Life and Disability Benefits Program for Hourly Employees and at the level provided for non-represented hourly retirees on the date immediately preceding the GM's provision of such benefits, <u>provided, however</u>, that GM will not be required to provide life insurance benefits at a level and scope that exceeds that being provided for similarly situated IBEW or IAM-represented hourly retirees of GM.  Certain active non-represented hourly employees, may be eligible for an attrition program substantially similar to the special attrition program, known as the SAP-T, currently agreed to by the IUE-CWA, subject to Court approval.

~    ~    ~

This information is only a summary of the Motion and of some of the terms of the Settlement Agreements and are qualified entirely by and are subject to the actual terms and conditions of the Settlement Agreements and the Non-Represented Term Sheet.  A complete copy of Delphi's court papers, including the Settlement Agreements, can be obtained at www.delphidocket.com or by calling 1-888-249-2691.  Delphi's plan of reorganization will be considered by the Court at a later time and you will receive notice about that proceeding.

A copy of the notice of the Motion is attached hereto.

Dated:          New York, New York
                August 6, 2007

                          SKADDEN, ARPS, SLATE, MEAGHER
                            & FLOM LLP

                   By:     /s/ John Wm. Butler, Jr.
                           John Wm. Butler, Jr. (JB 4711)
                           John K. Lyons (JL 4951)
                           Ron E. Meisler (RM 3026)
                           333 West Wacker Drive, Suite 2100
                           Chicago, Illinois 60606
                           (312) 407-0700

                              - and -

                   By:     /s/ Kayalyn A. Marafioti
                           Kayalyn A. Marafioti (KM 9632)
                           Thomas J. Matz (TM 5986)
                           Four Times Square
                           New York, New York 10036
                           (212) 735-3000

                              - and-

                          O'MELVENY & MYERS LLP

                   By:    /s/ Tom A. Jerman
                           Tom A. Jerman (TJ 1129)
                           Jessica Kastin (JK 2288)
                           1625 Eye Street, NW
                           Washington, DC 20006
                           (202) 383-5300

                           Attorneys for Delphi Corporation, et al.,
                             Debtors and Debtors-in-Possession

-16-

**Hearing Date And Time: August 16, 2007 at 10:00 a.m.**
**Objection Deadline: August 13, 2007 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

     -and-

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

     -and-

O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300
Tom A. Jerman (TJ 1129)
Jessica Kastin (JK 2288)

Attorneys for Delphi Corporation, et al.,
   Debtor and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698
Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                :
       In re                       :       Chapter 11
                                  :
   DELPHI CORPORATION, et al.,    :       Case No. 05-44481 (RDD)
                                  :
                   Debtors. :      (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF EXPEDITED MOTION FOR ORDER UNDER 11 U.S.C. §§ 363, 1113,
AND 1114 AND FED. R. BANKR. P. 6004 AND 9019 APPROVING (I) MEMORANDA OF UNDERSTANDING AMONG IUOE,
IBEW, IAM, DELPHI, AND GENERAL MOTORS CORPORATION INCLUDING MODIFICATION OF IUOE, IBEW, AND IAM
COLLECTIVE BARGAINING AGREEMENTS AND RETIREE WELFARE BENEFITS FOR CERTAIN IUOE, IBEW, AND IAM-
REPRESENTED RETIREES AND (II) MODIFICATION OF, AND TERM SHEET REGARDING, RETIREE WELFARE BENEFITS
FOR CERTAIN NON-REPRESENTED HOURLY ACTIVE EMPLOYEES AND RETIREES

PLEASE TAKE NOTICE that on August 6, 2007, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), filed an Expedited Motion For Order Under 11 U.S.C. §§ 363, 1113 And 1114 And Fed. R. Bankr. P. 6004 And 9019 Approving (I) Memoranda Of Understanding Among IUOE, IBEW, IAM, Delphi, And General Motors Corporation Including Modification Of IUOE, IBEW, And IAM Collective Bargaining Agreements And Retiree Welfare Benefits For Certain IUOE, IBEW, And IAM-Represented Retirees And (II) Modification Of, And Term Sheet Regarding, Retiree Welfare Benefits For Certain Non-Represented Hourly Active Employees And Retirees (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of the Motion will be held on August 16, 2007 at 10:00 a.m. (prevailing Eastern time) (the "Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, entered March 20, 2006 (Docket No. 2883) (the "Supplemental Case Management Order") and the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, entered October 26, 2006 (Docket No. 5418) (together with the Supplemental Case Management Order, the "Case Management Orders"), (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the

2

Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), O'Melveny & Myers LLP, 1625 Eye Street, NW, Washington, DC 20006 (Att'n: Tom A. Jerman), and Groom Law Group, Chartered, 1701 Pennsylvania Avenue NW Washington, DC 20006 (Att'n: Lonie Hassel), (iii) counsel for the agent under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017 (Att'n: Donald Bernstein and Brian Resnick), (iv) counsel for the official committee of unsecured creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n: Robert J. Rosenberg and Mark A. Broude), (v) counsel for the official committee of equity security holders, Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, New York 10004 (Att'n: Bonnie Steingart), (vi) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n: Alicia M. Leonhard), (vii) counsel to the IUOE, Gorlick, Kravitz & Listhaus, P.C., 17 State Street, 4th Floor, New York, New York 10004 (Att'n: Barbara S. Mehlsack), and (viii) counsel to the IAM and IBEW, Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, S.C., 1555 N. RiverCenter Drive, Suite 202, Milwaukee, Wisconsin 53212 (Att'n: Marianne G. Robbins) in each case so as to be **received** no later than **4:00 p.m. (prevailing Eastern time)** on **August 13, 2007** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth herein and in accordance with the Case Management Orders will be considered by the Bankruptcy Court at the Hearing.  If no objections to the Motion are timely filed and served in accordance with the procedures set forth herein and the Case Management Orders, the Bankruptcy Court may enter a final order granting the Motion without further notice.

Dated:   New York, New York
         August 6, 2007

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By:    /s/ John Wm. Butler, Jr.
       John Wm. Butler, Jr. (JB 4711)
       John K. Lyons (JL 4951)
       Ron E. Meisler (RM 3026)
        333 West Wacker Drive, Suite 2100
        Chicago, Illinois 60606
        (312) 407-0700

               - and -

By:    /s/ Kayalyn A. Marafioti
        Kayalyn A. Marafioti (KM 9632)
        Thomas J. Matz (TM 5986)
        Four Times Square
        New York, New York 10036
        (212) 735-3000

                - and-

O'MELVENY & MYERS LLP

By: /s/ Tom A. Jerman
     Tom A. Jerman (TJ 1129)
     Jessica Kastin (JK 2288)
     1625 Eye Street, NW
     Washington, DC 20006
     (202) 383-5300

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
              In re                       :        Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :        Case No. 05-44481 (RDD)
                                          :
                        Debtors.          :        (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


ORDER UNDER 11 U.S.C. §§ 363, 1113,
AND 1114 AND FED. R. BANKR. P. 6004 AND 9019 APPROVING
(I) MEMORANDA OF UNDERSTANDING AMONG IUOE, IBEW, IAM,
DELPHI, AND GENERAL MOTORS CORPORATION INCLUDING MODIFICATION
OF IUOE, IBEW, AND IAM COLLECTIVE BARGAINING AGREEMENTS AND RETIREE
WELFARE BENEFITS FOR CERTAIN IUOE, IBEW, AND IAM-REPRESENTED
RETIREES AND (II) MODIFICATION OF, AND TERM SHEET REGARDING, RETIREE
WELFARE BENEFITS FOR CERTAIN NON-REPRESENTED HOURLY ACTIVE
EMPLOYEES AND RETIREES

("IUOE, IBEW, AND IAM 1113/1114 SETTLEMENT
AND RETIREE BENEFIT APPROVAL ORDER")

Upon the expedited motion (the "Motion"), dated August 6, 2007, of Delphi

Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-

possession in the above-captioned cases (collectively, the "Debtors"), for an order under 11

U.S.C. §§ 363, 1113, and 1114 of the Bankruptcy Code and Fed. R. Bankr. P. 6004 and 9019

approving (i) a memorandum of understanding regarding Delphi's restructuring entered into

among Delphi, General Motors Corporation ("GM"), and the International Union of Operating

Engineers Local 832S dated August 1, 2007 (with the attachments thereto, the "IUOE Local

832S Settlement Agreement" or the "IUOE Local 832S Memorandum of Understanding"); a

memorandum of understanding regarding Delphi's restructuring, entered into among Delphi, GM,

and the International Union of Operating Engineers Local 18S, dated August 1, 2007 (with the

attachments thereto, the "IUOE Local 18S Settlement Agreement" or the "IUOE Local 18S

Memorandum of Understanding"); a memorandum of understanding regarding Delphi's

restructuring entered into among Delphi, GM, and the International Union of Operating

Engineers Local 101S (the International Union of Operating Engineers Locals 832S, 18S, and

101S, collectively the "IUOE"[1]) dated August 1, 2007 (with the attachments thereto, the "IUOE

Local 101S Settlement Agreement" or the "IUOE Local 101S Memorandum of Understanding");

a memorandum of understanding regarding Delphi's restructuring entered into among Delphi,

GM, and the International Brotherhood of Electrical Workers and its Local 663 ("IBEW")

relating to Delphi Electronics and Safety dated July 31, 2007 (with the attachments thereto, the

"IBEW E&S Settlement Agreement" or the "IBEW E&S Memorandum of Understanding"); a

memorandum of understanding regarding Delphi's restructuring entered into among Delphi, GM,

and the IBEW relating to Delphi Powertrain dated July 31, 2007 (with the attachments thereto,

the "IBEW Powertrain Settlement Agreement" or the "IBEW Powertrain Memorandum of

Understanding"); a memorandum of understanding regarding Delphi's restructuring entered into

among between Delphi, GM, and the International Association of Machinists and Aerospace

Workers and its District 10 and Tool and Die Makers Lodge 78 ("IAM"), dated July 31, 2007

(with the attachments thereto, the "IAM Settlement Agreement" or the "IAM Memorandum of

Understanding" and, collectively with the IUOE Local 832S Settlement Agreement, the IUOE

---

[1]    Only the designated locals of the International Union of Operating Engineers and not the
international union are parites to the IUOE collective bargaining agreements, IUOE
memoranda of understanding, and attachments thereto involved in this Motion and only
the designated locals and not the international union are parties to the 1113/1114 Motion
herein.  Moreover, the international union of the IUOE has represented that it is not, and
never has been, a representative under 11 U.S.C. §§ 1113 and 1114 of any IUOE
bargaining-unit employees and does not have any claims against the Debtors or GM in
connection with the IUOE bargaining units, their members, or retirees, including, without
limitation, under any of the collective bargaining agreements, IUOE memoranda of
understanding or attachments thereto.

Local 18S Settlement Agreement, the IBEW E&S Settlement Agreement, and the IBEW

Powertrain Settlement Agreement, the "IUOE, IBEW, and IAM Settlement Agreements" or the

"Memorandum of Understanding"), comprehensive agreements that (a) modify, extend, or

terminate provisions of the existing respective collective bargaining agreements among Delphi,

the IUOE, International Brotherhood of Electrical Workers, and International Association of

Machinists and Aerospace Workers, and their various locals and/or districts (the "IUOE, IBEW,

and IAM CBAs") and (b) provide that GM and Delphi will undertake certain financial

obligations to Delphi's IUOE, IBEW, and IAM-represented employees and retirees to facilitate

these modifications, (ii) withdrawal without prejudice of the Debtors' Motion For Order Under

11 U.S.C. § 1113(c) Authorizing Rejection Of Collective Bargaining Agreements And Under 11

U.S.C. § 1114(g) Authorizing  Modification Of Retiree Welfare Benefits (the "1113/1114

Motion") solely as it pertains to the IUOE, IBEW, and IAM and IUOE, IBEW, and IAM-

represented retirees and approving each parties' settlement of the 1113/1114 Motion solely as it

pertains to the IUOE, IBEW, and IAM and IUOE, IBEW, and IAM-represented retirees, (iii)

modification of retiree welfare benefits for certain IUOE, IBEW, and IAM-represented retirees

of the Debtors, and (iv) pursuant to 11 U.S.C. § 363, modification of retiree welfare benefits for

certain non-represented hourly active employees and retirees of the Debtors and approval of The

Term Sheet – Delphi Cessation and GM Provision of OPEB For Certain Non-Represented

Delphi Employees and Retirees entered into among Delphi and GM, dated August 3, 2007 (the

"Non-Represented Term Sheet"), all as more fully set forth in the Motion; and the only

remaining conditions to the effectiveness of the IUOE Local 101S Settlement Agreement

pursuant to Section E.1 thereof and the only remaining condition to the effectiveness of the other

IUOE, IBEW, and IAM Settlement Agreements pursuant to each Section F.1 thereof being

3

ratification of the IUOE, IBEW, and IAM Settlement Agreements by their respective

membership and/or this Court's entry of an approval order satisfactory in form and substance to

the IUOE, IBEW, and IAM, respectively, GM, and Delphi; and this Court having been advised

by counsel to the IUOE, IBEW, and IAM, respectively, and Delphi that the form and substance

of this order is satisfactory to each of the IUOE, IBEW, and IAM, GM, and Delphi as required

by Section E.1 of the IUOE Local 101S Settlement Agreement and Section F.1 of the other

IUOE, IBEW, and IAM Settlement Agreements; and this Court having determined that the relief

requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and

other parties-in-interest; and it appearing that proper and adequate notice of the Motion has been

given and that no other or further notice is necessary; and after due deliberation thereon; and

good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is GRANTED.

2.      The Debtors are hereby authorized to enter into the IUOE Local 832S

Settlement Agreement, a copy of which is attached hereto as <u>Exhibit 1</u>; the IUOE Local 18S

Settlement Agreement, a copy of which is attached hereto as <u>Exhibit 2</u>; the IUOE Local 101S

Settlement Agreement, a copy of which is attached hereto as <u>Exhibit 3</u>; the IBEW E&S

Settlement Agreement, a copy of which is attached hereto as <u>Exhibit 4</u>; IBEW Powertrain

Settlement Agreement, a copy of which is attached hereto as <u>Exhibit 5</u>; the IAM Settlement

Agreement, a copy of which is attached hereto as <u>Exhibit 6</u>; and the Non-Represented Term

Sheet, a copy of which is attached hereto as <u>Exhibit 7</u>.

3.      The Debtors are authorized modify retiree welfare benefits for certain non-

represented hourly active employees and retirees of the Debtors.

4

4.      Each of the signatories to the IUOE, IBEW, and IAM Settlement

Agreements (each such party, a "Signatory," and collectively, the "Signatories") is directed to

take all actions necessary or appropriate to effectuate the terms of this order and the terms of the

IUOE, IBEW, and IAM Settlement Agreements, including, without limitation, any and all

actions necessary or appropriate to such Signatory's implementation of and performance under

the IUOE, IBEW, and IAM Settlement Agreements.

5.      The IUOE, IBEW, and IAM Settlement Agreements are binding on the

Debtors, GM, and the IUOE, IBEW, and IAM, respectively, subject to their terms, and constitute

valid and binding amendments to the IUOE, IBEW, and IAM CBAs, respectively, with

authorized representatives of all individuals who were or are in a bargaining unit represented by

the IUOE, IBEW, and IAM, respectively, as permitted by section 1113 of the Bankruptcy Code

and the IUOE, IBEW, and IAM CBAs, respectively, as amended, or otherwise, and the IUOE,

IBEW, and IAM CBAs, respectively, in accordance with the IUOE, IBEW, and IAM Settlement

Agreements, are binding on the Debtors and the IUOE, IBEW, and IAM, respectively.

6.      The IUOE, IBEW, and IAM Settlement Agreements, and Debtors'

modifications of retiree welfare benefits for certain non-represented hourly active employees and

retirees of the Debtors, constitute valid and binding amendments to existing retiree health and

welfare benefits, as permitted by section 1114 of the Bankruptcy Code or otherwise.

7.      Notice of the Motion was properly and timely served in accordance with

the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R.

Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain

Notice, Case Management, And Administrative Procedures, entered on October 26, 2006

(Docket No. 5418), the Supplemental Order Under 11 U.S.C. Sections 102(1) And 105 And Fed.

R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain

Notice, Case Management, And Administrative Procedures, entered on March 17, 2006 (Docket

No. 2883), and by service upon (a) the IUOE, with respect to Local 832S, Att'n James N. Glathar,

3174 Brighton-Henrietta Town Line Rd, Rochester, New York 14692, with respect to Local 18S

at Att'n: Charles Scherer, 12106 Rhodes Road, Wayne, Ohio 43466, with respect to Local 101S

Att'n Danny Baird, 6601 Winchester, Kansas City, Missouri 64133, (b) counsel to the IUOE,

Gorlick, Kravitz & Listhaus, P.C., 17 State Street, 4th Floor, New York, New York 10004, (c)

the IBEW, 900 Seventh Street NW, Washington, DC 20001, (d) counsel to the IBEW, Previant,

Goldberg, Uelman, Gratz, Miller & Brueggeman, S.C., 1555 N. RiverCenter Drive, Suite 202,

Milwaukee, Wisconsin 53212, (e) the IAM, 9000 Machinists Place, Upper Marlboro, Maryland

20772-2687, (f) counsel to the IAM, Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman,

S.C., at 1555 N. RiverCenter Drive, Suite 202, Milwaukee, Wisconsin 53212, (g) the Debtors'

hourly employees and hourly retirees who are represented by the IUOE, IBEW, and IAM at their

individual addresses, pursuant to an informational form of notice, a copy of which was attached

to the Motion as Exhibit 1, and (h) the Debtors' non-represented hourly active employees and

hourly retirees at their individual addresses, pursuant to an informational form of notice, a copy

of which was attached to the Motion as Exhibit 1.

       8.     The Debtors are authorized to withdraw, without prejudice, their

1113/1114 Motion solely as it pertains to the IUOE, IBEW, and IAM.  The 1113/1114 Motion is

settled solely as it pertains to the IUOE, IBEW, and IAM.

       9.     As a condition precedent to the effectiveness of certain obligations of the

parties pursuant to Section F.2 of the IUOE Local 832S Settlement Agreement and the IUOE

Local 18S Settlement Agreement and pursuant to Section E.2 of the IUOE Local 101S

Settlement Agreement and as provided in Section F.3 of the IUOE Local 832S Settlement

Agreement and the IUOE Local 18S Settlement Agreement and as provided in Section E.3 of the

IUOE Local 101S Settlement Agreement, any Debtors' plan of reorganization (the "Delphi

Reorganization Plan") that is consistent with the IUOE Local 832S Settlement Agreement, the

IUOE Local 18S Settlement Agreement, and the IUOE Local 101S Settlement Agreement and

any confirmation order entered into with respect to such plan shall include the following

provisions:

> (a)     On the effective date of the Delphi Reorganization Plan, the IUOE, all employees and former employees of Delphi represented or formerly represented by the IUOE, and all persons or entities with claims derived from or related to any relationship with such employees or former employees of Delphi, shall waive and release and be deemed to have waived and released any and all claims of any nature, whether liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, existing and/or arising in the future against Delphi, its subsidiaries, or affiliates, the Delphi HRP[2], the Delphi Health Care Program for Hourly Employees and the Delphi Life and Disability Benefits Program for Hourly Employees, GM, its subsidiaries or affiliates, the GM HRP, the GM Health Care Program for Hourly Employees and the GM Life and Disability Benefits Program for Hourly Employees, and the officers, directors, employees, fiduciaries, and agents of each, arising directly or indirectly from or in any way related to any obligations under the collective bargaining agreements between Delphi and the IUOE and between GM and the IUOE related to such employees (provided, however, that claims for benefits provided for or explicitly not waived under the provisions of the IUOE Local 832S Settlement Agreement, or, as applicable, the IUOE Local 18S Settlement Agreement, or, as applicable, the IUOE Local 101S Settlement Agreement (including, but not limited to, claims for workers' compensation benefits and unemployment compensation benefits against Delphi, its subsidiaries, or affiliates that are otherwise assertable under law) are not waived).

> (b)     A plan exculpation and release provision (which provision shall be at least as comprehensive as the plan exculpation and release

---

[2]     Capitalized terms used and not otherwise defined in this Order have the meanings ascribed to them in the Memorandum of Understanding.

provision under the Delphi Reorganization Plan) for the IUOE
released parties (which shall include the IUOE and each of their
current or former members, officers, committee members,
employees, advisors, attorneys, accountants, investment bankers,
consultants, agents, and other representatives) with respect to any
liability such person or entity may have in connection with or
related to the Delphi bankruptcy cases, the formulation,
preparation, negotiation, dissemination, implementation,
administration, confirmation, or consummation of any of the
Delphi Reorganization Plan, the disclosure statement concerning
the plan, the IUOE Local 832S Settlement Agreement, or, as
applicable, the IUOE Local 18S Settlement Agreement, or, as
applicable, the IUOE Local 101S Settlement Agreement, or the
Agreements on Attachment A thereto, or any contract, employee
benefit plan, instrument, release, or other agreement or document
created, modified, amended, or entered into in connection with
either the Delphi Reorganization Plan or any agreement between
the IUOE or Delphi, or any other act taken or omitted to be taken
consistent with the IUOE Local 832S Settlement Agreement, or, as
applicable, the IUOE Local 18S Settlement Agreement, or, as
applicable, the IUOE Local 101S Settlement Agreement in
connection with the Delphi bankruptcy.

(c)     The IUOE Local 832S Settlement Agreement, or, as applicable, the
IUOE Local 18S Settlement Agreement, or, as applicable, the
IUOE Local 101S Settlement Agreement, and the agreements
referenced in Attachment A thereto shall be assumed under 11
U.S.C. §365.

10.     As a condition precedent to the effectiveness of certain obligations of the

parties pursuant to Section F.2 of the IBEW E&S Settlement Agreement and the IBEW

Powertrain Settlement Agreement and as provided in Section F.3 of the IBEW E&S Settlement

Agreement and the IBEW Powertrain Settlement Agreement, any Delphi Reorganization Plan

that is consistent with the IBEW E&S Settlement Agreement and the IBEW Powertrain

Settlement Agreement and any confirmation order entered into with respect to such plan shall

include the following provisions:

(a)     On the effective date of the Delphi Reorganization Plan, the
IBEW, all employees and former employees of Delphi represented
or formerly represented by the IBEW, and all persons or entities
with claims derived from or related to any relationship with such

8

employees or former employees of Delphi, shall waive and release and be deemed to have waived and released any and all claims of any nature, whether liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, existing and/or arising in the future against Delphi, its subsidiaries, or affiliates, the Delphi HRP, the Delphi Health Care Program for Hourly Employees and the Delphi Life and Disability Benefits Program for Hourly Employees, GM, its subsidiaries or affiliates, the GM HRP, the GM Health Care Program for Hourly Employees and the GM Life and Disability Benefits Program for Hourly Employees, and the officers, directors, employees, fiduciaries, and agents of each, arising directly or indirectly from or in any way related to any obligations under the collective bargaining agreements between Delphi and the IBEW and between GM and the IBEW related to such employees (provided, however, that claims for benefits provided for or explicitly not waived under the provisions of the IBEW E&S Settlement Agreement, or, as applicable, the IBEW Powertrain Settlement Agreement (including, but not limited to, claims for workers' compensation benefits and unemployment compensation benefits against Delphi, its subsidiaries, or affiliates that are otherwise assertable under law) are not waived).

(b)     A plan exculpation and release provision (which provision shall be at least as comprehensive as the plan exculpation and release provision under the Delphi Reorganization Plan) for the IBEW released parties (which shall include the IBEW and each of their current or former members, officers, committee members, employees, advisors, attorneys, accountants, investment bankers, consultants, agents, and other representatives) with respect to any liability such person or entity may have in connection with or related to the Delphi bankruptcy cases, the formulation, preparation, negotiation, dissemination, implementation, administration, confirmation, or consummation of any of the Delphi Reorganization Plan, the disclosure statement concerning the plan, the IBEW E&S Settlement Agreement, or, as applicable, the IBEW Powertrain Settlement Agreement, or the Agreements on Attachment A thereto, or any contract, employee benefit plan, instrument, release, or other agreement or document created, modified, amended, or entered into in connection with either the Delphi Reorganization Plan or any agreement between the IBEW or Delphi, or any other act taken or omitted to be taken consistent with the IBEW E&S Settlement Agreement, or, as applicable, the IBEW Powertrain Settlement Agreement, in connection with the Delphi bankruptcy.

(c)     The IBEW E&S Settlement Agreement, or, as applicable, the IBEW Powertrain Settlement Agreement, and the agreements

9

referenced in Attachment A thereto shall be assumed under 11
U.S.C. §365.

11.    As a condition precedent to the effectiveness of certain obligations of the

parties pursuant to Section F.2 of the IAM Settlement Agreement and as provided in Section F.3

of the IAM Settlement Agreement, any Delphi Reorganization Plan that is consistent with the

IAM Settlement Agreement and any confirmation order entered into with respect to such plan

shall include the following provisions:

(a)    On the effective date of the Delphi Reorganization Plan, the IAM,
all employees and former employees of Delphi represented or
formerly represented by the IAM, and all persons or entities with
claims derived from or related to any relationship with such
employees or former employees of Delphi, shall waive and release
and be deemed to have waived and released any and all claims of
any nature, whether liquidated or unliquidated, contingent or non-
contingent, asserted or unasserted, existing and/or arising in the
future against Delphi, its subsidiaries, or affiliates, the Delphi
HRP, the Delphi Health Care Program for Hourly Employees and
the Delphi Life and Disability Benefits Program for Hourly
Employees, GM, its subsidiaries or affiliates, the GM HRP, the
GM Health Care Program for Hourly Employees and the GM Life
and Disability Benefits Program for Hourly Employees, and the
officers, directors, employees, fiduciaries, and agents of each,
arising directly or indirectly from or in any way related to any
obligations under the collective bargaining agreements between
Delphi and the IAM and between GM and the IAM related to such
employees (provided, however, that claims for benefits provided
for or explicitly not waived under the provisions of the IAM
Settlement Agreement (including, but not limited to, claims for
workers' compensation benefits and unemployment compensation
benefits against Delphi, its subsidiaries, or affiliates that are
otherwise assertable under law) are not waived).

(b)    A plan exculpation and release provision (which provision shall be
at least as comprehensive as the plan exculpation and release
provision under the Delphi Reorganization Plan) for the IAM
released parties (which shall include the IAM and each of their
current or former members, officers, committee members,
employees, advisors, attorneys, accountants, investment bankers,
consultants, agents, and other representatives) with respect to any
liability such person or entity may have in connection with or
related to the Delphi bankruptcy cases, the formulation,

10

preparation, negotiation, dissemination, implementation, administration, confirmation, or consummation of any of the Delphi Reorganization Plan, the disclosure statement concerning the plan, the IAM Settlement Agreement, or the Agreements on Attachment A thereto, or any contract, employee benefit plan, instrument, release, or other agreement or document created, modified, amended, or entered into in connection with either the Delphi Reorganization Plan or any agreement between the IAM or Delphi, or any other act taken or omitted to be taken consistent with the IAM Settlement Agreement in connection with the Delphi bankruptcy.

(c)    The IAM Settlement Agreement and the agreements referenced in Attachment A thereto shall be assumed under 11 U.S.C. §365.

12.    Nothing contained in the IUOE, IBEW, and IAM Settlement Agreements shall constitute an assumption of any agreement described therein, including, without limitation, any IUOE, IBEW, or IAM CBAs (except as provided for in Section E.3 of the IUOE Local 101S Settlement Agreement or Section F.3 of the other IUOE, IBEW, and IAM Settlement Agreements) or any commercial agreement between GM and Delphi, nor shall anything therein be deemed to create an administrative or priority claim with respect to GM or convert a prepetition claim into a postpetition claim or an administrative expense with respect to any party. The IUOE, IBEW, and IAM Settlement Agreements are without prejudice to any party-in-interest (including the parties to the IUOE, IBEW, and IAM Settlement Agreements and the Debtors' statutory committees) in all other aspects of Delphi's chapter 11 cases and each party to the IUOE, IBEW, and IAM Settlement Agreements shall reserve all rights not expressly waived therein.  Further, nothing in the Motion, the IUOE, IBEW, and IAM Settlement Agreements, this Court's approval of such agreements, the performance of any obligation thereunder, or any other document shall prejudice any right or remedy of any Debtor against any other Debtor with respect to the allocation of Delphi's obligations under the IUOE, IBEW, and IAM Settlement

11

Agreements or claims asserted against, or payments by, Delphi thereunder, all of which rights are expressly preserved.

13.    This Court shall retain jurisdiction to hear and determine all matters arising from the implementation and performance of this order and the IUOE, IBEW, and IAM Settlement Agreements, and over each of the Signatories in connection therewith, through the effective date of a plan of reorganization proposed by the Debtors and confirmed by this Court (and thereafter to the extent provided for in such reorganization plan); provided, however, that the Court's jurisdiction shall not extend to any bilateral agreements of any of the IUOE, IBEW, and IAM on one hand and GM on the other hand.

14.    Notwithstanding Rule 6004(g) of the Federal Rules of Bankruptcy Procedure or any other Bankruptcy Rule, (a) this order shall take effect immediately upon its entry, (b) upon entry of this order, the Debtors are authorized to take any and all necessary actions to implement the terms of the IUOE, IBEW, and IAM Settlement Agreements, including executing any amendments to existing collective bargaining agreements consistent in all material respects with the IUOE, IBEW, and IAM Settlement Agreements, (c) the IUOE, IBEW, and IAM Settlement Agreements shall become effective upon entry of this order and, to the extent required, satisfaction of the conditions set forth in the IUOE, IBEW, and IAM Settlement Agreements, and (d) upon entry of this order, the Debtors are authorized to take any and all necessary actions to modify retiree welfare benefits for certain non-represented hourly active employees and retirees of the Debtors.

15.    The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

12

Dated: New York, New York
       August ___, 2007


_____
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit 1**

**IUOE Local 832S Settlement Agreement**

**IUOE LOCAL 832S – DELPHI – GM
MEMORANDUM OF UNDERSTANDING
DELPHI RESTRUCTURING**

## INTRODUCTION

The International Union of Operating Engineers, AFL-CIO, Local 832S ("IUOE") and Delphi Corporation, and General Motors Corporation ("the Parties") have discussed the challenges impacting Delphi and its IUOE-represented operations. The Parties acknowledge that restructuring actions are necessary and commit to take specific actions to protect the needs of the Parties and their constituencies. To that end, the Parties agree as follows on a two-party or three-party basis, as applicable (the "Agreement") subject to ratification by the membership.

### A. DURATION

1. The agreements comprising the modified IUOE Local 832S – Delphi collective bargaining agreements following the date of this Agreement are set forth in Attachment A hereto.

2. Except as modified by this Agreement, the 2003 IUOE Local 832S – Delphi Powertrain - Rochester Agreements and all related agreements and understandings will be extended and remain in effect until 11:59 p.m. on September 14, 2011, subject to their termination provisions.

### B. WORKFORCE TRANSITION

1. Transformation Program Options

   Delphi, GM and IUOE Local 832S, as applicable, agree on the following Transformation Program options. The Retirement Incentives and Buy Out are subject to the terms of Attachment C, and are generally described below. No retirement options will be afforded to any Delphi employee who was a temporary employee on or after October 8, 2005.

   a. Retirement Incentives – Employees Participating in the Delphi Hourly-Rate Employees Pension Plan ("Delphi HRP")

      Delphi, IUOE Local 832S and GM, as applicable, agree to the following Special Attrition Program – Transformation for such Delphi employees who are participants in the Delphi HRP.

Retirement options will be provided for eligible Delphi employees as
described in Attachment C and summarized below:

1)  $35,000 for normal or early voluntary retirements, retroactive to
    October 1, 2005

2)  50 & 10 Mutually Satisfactory Retirement (MSR)

Provisions B.1.a.1 and B.1.a.2 will apply to employees who are
eligible to retire by January 1, 2008.  Eligible employees will be
allowed to retire under these provisions when their services are no
longer required, but in any event no later than January 1, 2008.

3)  Pre-retirement program covering employees with at least 26
    years of credited service but less than 30 years of credited
    service as of January 1, 2008, as provided in Attachment C.
    Employees must commence the pre-retirement program no later
    than January 1, 2008.

4)  These retiring employees will be considered to have transitioned
    to GM for purposes of post-retirement health care and employer
    paid basic life insurance in retirement ("Check the Box") as
    provided in Attachment C.

5)  Participation conditioned on release of claims


b.  <u>Buy Out Payments</u>

Delphi and IUOE Local 832S agree that employees who are active
or on leave status will be offered lump sum buyouts to sever all ties
with Delphi and GM except vested pension benefits (as such no
supplements are payable) when their services are no longer
required, but in any event no later than January 1, 2008.  The
amount of the Buy Out Payments shall be in a non-allocable lump
sum, less withholdings, as follows;

1)  Eligible employees with 10 or more years of seniority or credited
    service, whichever is greater, as of January 1, 2008, are eligible
    for $140,000;
2)  Eligible employees with three (3) but less than 10 years
    seniority or credited service, whichever is greater, as of January
    1, 2008, are eligible for $70,000;
3)  Eligible employees with one (1) but less than three (3) years of
    seniority or credited service, whichever is greater, as of January

1, 2008, will be eligible for $40,000 (the "Buyout Payments").

c. <u>Application Period</u>

The application period, timing of retirements and buyouts and release dates, will be determined by Delphi based upon staffing considerations.  In no event will the application period extend beyond October 15, 2007.

d. <u>Release Dates</u>

The timing of retirements, Buy Outs and employee release dates will be determined by Delphi based upon staffing considerations, but no later than January 1, 2008.  Notwithstanding this, Delphi is willing to work cooperatively with the IUOE to seek mutually agreeable operating arrangements that would facilitate the ability to address employees' desires regarding release dates.  Release dates will be in accordance with seniority by classification from an integrated list of eligible employees who have applied for retirement, placement in the pre-retirement program or Buy Out under Paragraphs B.1.a and B.1.b of this Agreement.  Release will be offered to the most senior eligible employee in the classification first.  If there are insufficient volunteers, the least senior employee in the classification will be released.

e. <u>Release of Claims</u>

All participants will be required to sign a release releasing all claims against Delphi and GM, except workers' compensation claims and unemployment compensation claims.

f. <u>Temporary Employees</u>

As necessary, employees who have accepted a Buy Out may be rehired as temporary employees to satisfy any operating needs.  Any employee rehired as a temporary employee will not acquire seniority or be eligible for benefits, but will otherwise be covered by the provisions of the IUOE 832S – Delphi Agreements.  Employees who have been rehired as temporary employees will not be eligible for conversion to permanent status, and shall receive the starting wage rate applicable for a new temporary employee.  Such temporary employees will not be eligible for any future attrition programs or payments related to such programs.  Temporary assignments will not exceed twelve (12) months without mutual agreement between Delphi and IUOE Local 832S.

g. Selection of Option

An employee may only select one of the options described above for which they are eligible as of January 1, 2008.

h. Failure to Select an Option

Employees who do not select one of the attrition options for which they are eligible, will, when their services are no longer required, be laid off in accordance with the Collective Bargaining Agreement with no Corporation-paid benefits except for vested pension benefits, if any, (as such no supplements are payable) and up to 25 months of health care coverage in accordance with the Exhibit C (Supplemental Agreement Covering Health Care) to the IUOE – Delphi – Rochester Agreement, unless the employee is eligible to retire and chooses to retire under the Delphi HRP.

i. The IUOE will continue to perform the bargaining unit work for which it is certified. This does not preclude the use of temporary employees as provided for in this Agreement.

2. Buy Down Payment – Seniority Employees

a. Delphi and IUOE Local 832S agree that all seniority employees who are on roll (i.e. active, on temporary layoff or on an authorized leave of absence) on January 1, 2008 and receiving compensation (except for pre-retirement program participants and employees who have accepted one of the attrition options effective January 1, 2008 under Attachment C) will be eligible for a one time Buy Down payment of $10,000, less applicable withholding, in the first pay ending after January 1, 2008.

b. Such employees, whether they elect to receive the Buy Down Payment or not, will have their wages and benefits modified as follows:

   1) COLA in effect as of the Effective Date of this Agreement will be frozen at that level through December 30, 2007. Employees who remain on roll will have such frozen COLA folded into their base rate effective December 31, 2007. Thenceforward, Paragraphs 95 through 95 j will be deleted from the IUOE Local 832S – Delphi Agreement, and there will be no COLA.

   2) Sickness & Accident (S&A) benefits, Extended Disability Benefits (EDB), health care, life insurance, and other applicable benefits will be reduced on January 1, 2008 to the levels

described in Attachment D.  The Individual Retirement plan will become effective as provided in Section D.2 of this Agreement and the Retiree Medical Account will become effective as provided in Section D.4 of this Agreement.

3) For all hours worked on and after December 31, 2007, the Corporation contribution to the Income Security Plan accounts of eligible employees will be reduced to $0.18 per hour.

c. Employees must sign a Conditions of Participation Release Form in order to receive the $10,000 lump sum payment.

d. These modifications will apply to any employees (except temporary employees) hired after the effective date of this Agreement.

3. <u>Separation Payment – Current Employees with Less than One Year of Seniority or Credited Service as of January 1, 2008</u>

Delphi and IUOE Local 832S agree that any employee (except temporary employees) on the active employment rolls as of the Effective Date of this Agreement who does not have at least one (1) year of seniority or credited service, whichever is greater, as January 1, 2008, and who is permanently laid off prior to September 14, 2011, shall be eligible for a non allocable lump sum severance payment equal to $1,500 for each month of his/her service with Delphi.  The maximum amount of the severance pay is $40,000, less applicable withholdings.  Employees must sign a Conditions of Participation Release form in order to receive the Severance Payment.  The Parties agree that employees who are separated will sever all ties with GM and Delphi except for any vested pension benefits (as such no pension supplements are payable), if any.

4. Any problems with the implementation of this Transformation section will be discussed by a representative designated by IUOE Local 832S and a representative designated by the Vice President – Human Resources – Delphi Corporation.

## C. GM PROVISION OF OPEB

The Parties have agreed to a "Term Sheet – Delphi Cessation and GM Provision of OPEB" (the "Term Sheet") with respect to the cessation of post-retirement health care and employer paid basic life insurance in retirement ("OPEB") for Delphi employees and retirees and GM provision of OPEB for certain Delphi retirees and eligible employees.  That agreement is attached as Attachment B, and is incorporated by reference

herein.

## D. MODIFICATIONS TO THE EXISTING 2003 IUOE LOCAL 832S – DELPHI E&C – ROCHESTER AGREEMENTS

The IUOE and Delphi agree to the following modifications to the 2003 IUOE Local 832S – Delphi E&C – Rochester Agreements (signed March 24, 2004):

1. <u>Wages</u>

   Section III (General Wage Increase) in the Wage Agreement attached to the 2003 IUOE Local 832S – Delphi E&C Agreement will be replaced by the following clause:

   "During the term of this Agreement, IUOE-represented employees at the Delphi Powertrain – Rochester plant will receive base wage rate increases calculated in the same manner and implemented at the same time as the base wage rate increases received by UAW-represented skilled trades employees at the Delphi Powertrain - Rochester plant. Concurrent with the implementation of each base wage rate increase, the table of minimum and maximum rates for each classification in Article IV.B. of the Wage Agreement attached to the 2003 IUOE Local 832S – Delphi E&C Agreement will be adjusted to reflect the increases."

2. <u>Delphi Hourly Rate Employees Pension Plan</u>

   Applicable terms and conditions of Supplemental Agreement Covering Pension Plan, Exhibit A of the IUOE Local 832S – Delphi Agreement will be eliminated or modified as follows:

   a. Delphi will as of the first of the month next following the Effective Date or as soon as practicable thereafter in accordance with applicable law (the "Freeze Date"), amend the Delphi HRP so as to freeze benefit accruals for future credited service in the Delphi HRP, except as set forth in paragraph D.2.b.2 below. This freeze does not apply to the Individual Retirement Plan provisions of the Delphi HRP.

   b. With regard to such amendment and freeze of the Delphi HRP, Delphi will cause the frozen Delphi HRP to pay benefits in accordance with the terms of the Delphi HRP and applicable law. These benefits will not be reduced from the levels in effect as of the date immediately preceding the Effective Date unless they are similarly reduced for other retired Delphi HRP participants. The

IUOE agrees that Delphi reserves its right to seek termination of the Delphi HRP consistent with applicable law. In this regard:

1) Delphi HRP participants, who are retired as of the Freeze Date, will continue to be eligible for and receive from the Delphi HRP all benefits, including but not limited to any applicable supplements and benefit redetermination provided for in the Delphi HRP as of the date immediately preceding the Effective Date.

2) Delphi HRP participants who are participants in the Special Attrition Program – Transformation provided for in Attachment C of this Agreement (the "SAP-T"), and who are not retired or separated from service under the SAP-T as of the Freeze Date, will receive credited service in the Delphi HRP for all purposes, including but not limited to eligibility, vesting and future benefit accruals, as if there were no freeze, until the earlier of their retirement or separation from service under the terms of the SAP-T. For the avoidance of doubt, the Delphi HRP is solely responsible for all credited service for accrual, vesting and eligibility purposes for all Delphi participants in the SAP-T, including but not limited to participants in the pre-retirement program option. Further, all Delphi SAP-T participants will be eligible for and will receive full Delphi HRP benefits upon their retirement under the terms of the SAP-T, including but not limited to any applicable supplements and benefit redetermination provided for in the Delphi HRP as of the date immediately preceding the Effective Date. Delphi SAP-T participants are not eligible to participate in the Individual Retirement Plan provisions of the Delphi HRP and are not eligible to receive Delphi matching contributions under the Delphi Personal Savings Plan.

3) Delphi HRP participants (other than those referred to in paragraph D.2.b.2) above) who are eligible to retire as of the Freeze Date will, upon their retirement, receive from the frozen Delphi HRP all benefits provided for in the Delphi HRP under the terms in effect as of the date immediately preceding the Effective Date, including but not limited to any applicable supplements and benefit redetermination provided for in the Delphi HRP.

4) Delphi HRP participants (other than those referred to in paragraph D.2.b.2) who become eligible to retire after the Freeze Date, when taking into account Delphi credited service and their age at retirement will, upon their retirement, receive from the Delphi HRP all benefits provided for in the Delphi HRP,

including but not limited to any applicable supplements and benefit redetermination provided for in the Delphi HRP under the terms in effect as of the date immediately preceding the Effective Date.

5) For the avoidance of doubt, Delphi HRP participants referred to in paragraphs D.2.b.3 and D.2.b.4 above, will, upon retirement, receive from the Delphi HRP in addition to any other applicable Delphi HRP benefits the:

   a) full amount of the 30 & out benefit through age 62 and one month, or the 80% date for those born on or before September 14, 1945, including, but not limited to, the full Early Retirement Supplement, in effect as of the date immediately preceding the Effective Date;

   b) portion of the Interim Supplement (which is applicable in both 85 point and 60 & 10 retirements) in effect under the Delphi HRP based on the credited service accrued as of the date immediately preceding the Freeze Date and age at the time of retirement; and

   c) portion of the Temporary Benefit (T&PD and mutual retirements) in effect under the Delphi HRP based on the credited service accrued as of the date immediately preceding the Freeze Date, not to exceed 30 years.

6) For the avoidance of doubt, no Delphi HRP participants, including those referred to in paragraphs D.2.b.1 through D.2.b.4 above, will receive lump sum payments or any increase in benefits above the level of those provided for in the Delphi HRP as of January 1, 2007. Additionally, no new participants will be allowed to join the frozen Delphi HRP.

7) Until the Freeze Date, Delphi HRP participants who buy down, pursuant to this Agreement will continue to receive credited service in the Delphi HRP for all purposes, including but not limited to, eligibility, vesting, and future benefit accruals under the same terms and conditions in the Delphi HRP as prior to the buy down. During this period, such Delphi HRP participants will not be eligible for the Individual Retirement Plan provisions of the Delphi HRP or matching contributions under the Delphi Personal Savings Plan. As of the Freeze Date, Delphi HRP participants who buy down pursuant to this Agreement will receive credited service in the Delphi HRP for eligibility and vesting purposes only.

   c. Effective upon the Delphi HRP Freeze Date, employees who are bought down, or who are hired on or after the effective date of this Agreement (except temporary employees), will be eligible for the provisions of the Individual Retirement Plan provisions of the Delphi HRP;

      1) Delphi will provide annual contributions equal to 5.4% of wages to each employee's Individual Retirement Plan account.

      2) Accounts will accrue with interest credited annually at the 30 year U.S. Treasury Bond rate.

      3) Plan assets will be retained in a pension trust subject to vesting and portability provisions.

      4) There will be no provisions for supplements, temporary benefits or 30 and out retirement.

      5) Annuities with lump sum option(s) will be available.

All related Miscellaneous Program Documents and Unpublished Letters will be conformed to the provisions above.

3. <u>Personal Savings Plan</u>

Applicable terms and conditions of Supplemental Agreement Covering Personal Savings Plan, Exhibit G, will continue to apply with the following modifications:

   a. Effective upon the Delphi HRP Freeze Date, all employees who are bought down or hired on or after the effective date of this Agreement (excluding temporary employees), will be provided an employer match of 30% on up to 7% of employees' eligible weekly pay.

   b. Employees who are not eligible under the foregoing definition will not be entitled to any benefit.

All Miscellaneous Program Documents and Unpublished Letters will be conformed to the administration of the provisions described above.

4. <u>Post-Retirement Health Care and Employer Paid Basic Life Insurance in Retirement</u>

a. <u>Current employees and retirees eligible to receive post-retirement health care and employer paid basic life insurance in retirement from GM in accordance with Attachment B</u>

Employees who can attain eligibility to receive post-retirement health care and employer paid basic life insurance in retirement from GM under the Term Sheet are not eligible to receive credits in the Post-Retirement Health Care Account described in paragraph D.4.b. below.

Applicable terms and conditions, related to post-retirement health care coverage, of Supplemental Agreement Covering Health Care Program, Exhibit C and post-retirement life insurance coverage, of Supplemental Agreement Covering Life and Disability Benefits, Exhibit B of the agreement between Delphi and the International Union of Operating Engineers, AFL-CIO, Local 832S, will be eliminated or modified accordingly as of the effective date of the Term Sheet – Delphi Cessation and GM Provision of OPEB (Attachment B).

b. <u>Current employees who are bought down and who are not eligible for post-retirement health care and employer paid basic life insurance from GM in accordance with the Term Sheet, and all new employees hired on or after the Effective Date of this Agreement</u>

As of January 1, 2008, current employees who are bought down and who are not eligible to receive post-retirement health care and employer paid basic life insurance in retirement from GM in accordance with the Term Sheet, and all employees hired after that date, will be eligible for the following:

1) Upon retirement from Delphi, employees will be able to continue any health care coverages then in effect for themselves and any eligible dependents by paying the full cost of any coverages continued. Delphi will make such coverages available at "group rates".

2) Delphi will provide a Post-Retirement Health Care Account that can be used to pay for continued coverages. Delphi will credit each eligible employee's account with $0.50 for every compensated hour during employment. Newly hired employees are immediately eligible for such credits on date of hire. For bought down employees, eligibility for such credits will commence with the buy down on January 1, 2008.