**Delphi Corporation**
**New Hire Health Care Plan**
Health Care Plan Benefit Summary

| | **IN-NETWORK SERVICES**<br>Services must be provided by a TCN physician for maximum benefits up to 90% of R&C* | **OUT-OF-NETWORK SERVICES**<br>Coverage is reduced if you use out-of-network providers without a referral, subject to the out-of-pocket maximums listed below |
|---|---|---|
| **MENTAL HEALTH** | • These services require pre-authorization: Call ValueOptions at 1-877-786-4008 | |
| • Outpatient Services | 100% visits 1-20. You pay 25% for visits 21-35 | 50% of panel reimbursement (physicians only) |
| • Inpatient/Residential* | 100% up to 45 days | 50% of panel reimbursement (physicians and facility only) |
| **SUBSTANCE ABUSE** | These services require pre-authorization: Call ValueOptions at 1-877-786-4008 | |
| • Outpatient Services | 100% up to 35 visits | Not covered |
| • Inpatient/Residential (including detoxification)** | 100% up to 45 visits<br>**Mental Health and Substance Abuse: inpatient days are combined for a total of 45 days allowed. | Not covered, except for emergency detoxification |
| **HEARING CARE** | | |
| • Examination/Hearing Aid | 90%; Audiometric exam, up to $122 for evaluation test, and one hearing aid every 36 months | Not covered |
| **OTHER** | | |
| • Medicare Eligibles | Accepted. | Accepted |
| **PAYMENT FOR NONEMERGENCY** | | |
| • Out-of-Area Services | Call the carrier for details on providers in other areas | If HSM services are received from a non-participating provider (except with a referral from a participating provider), you will be assessed the Out-of-Network Deductible, Copayment and Out-of-Pocket Maximum amounts |

**\*Reasonable and Customary (R&C) Charges based on charges for services by providers in specific geographic location. The carrier determines what is considered reasonable and customary charges.**
**\*\*Annual deductibles, copayments and out-of-pocket maximums are calculated on the basis of R&C. Each covered individual can only contribute a maximum of $300 toward satisfying the Family Deductible. Copayments and out-of-pocket maximums apply only to covered hospital/surgical and medical services. Deductibles, copayments and out-of-pocket maximums do not apply to mental health/substance abuse coverage, Durable Medical Equipment, Prosthetics & Orthotics and Prescription Drugs. Mental health/substance abuse and prescription drugs have separate cost sharing features.**
**\*\*\*Amounts paid for all office visit services do not count towards your deductibles and annual out-of-pocket maximum.**

To the extent any of the above information conflicts with the terms and conditions of the Delphi Health Care Program for Hourly Employees ("the Program"), the terms of the Program will apply.

**<u>Term Sheet – Delphi Cessation and GM Provision of OPEB</u>**

1) This Term Sheet sets forth the agreement of General Motors Corporation ("GM"), Delphi Corporation, or any successor to Delphi as a result of the acquisition of substantially all the stock or assets of Delphi Corporation or a merger of Delphi Corporation, ("Delphi"), and the International Union of Operating Engineers and its Local Unions 832(S), 101S and 18(S) ("IUOE"), the International Brotherhood of Electrical Workers and its Local Union 663 ("IBEW"), and the International Association of Machinists and Aerospace Workers and its Tool and Die Maker Lodge 78 ("IAM"), regarding Delphi's cessation of post-retirement health care benefits and employer-paid post-retirement basic life insurance benefits (hereinafter referred to as "OPEB") and GM's agreement to provide OPEB to certain retired employees currently receiving such benefits from Delphi and other active Delphi employees who may become eligible for OPEB in accordance with this Term Sheet. Except as otherwise expressly stated herein, the terms of the respective Delphi and GM employee benefit plans and programs will govern. This Term Sheet does not, and is not intended to, constitute an employee benefit plan under the meaning of ERISA.

2) The parties acknowledge that this Term Sheet will become effective (the "Effective Date") when all of the following events have occurred and as of the date when the last of such events shall have occurred:  (a) the entry of an approval order by the Bankruptcy Court in Delphi's chapter 11 cases approving the applicable IUOE, IBEW, or IAM-Delphi-GM Memorandum of Understanding-Delphi Restructuring which incorporates (among other subject matters) this Term Sheet and approves modifications to the existing collective bargaining agreements between Delphi and the applicable union resolving any Section 1113 and 1114 motions pending in the Bankruptcy Court as between Delphi and the applicable union; (b) successful ratification by the applicable union membership of such of the agreements referred to in the preceding clause as are determined by the applicable union to require such ratification; (c) execution by Delphi and GM of a comprehensive settlement agreement resolving the financial, commercial, and other matters between them; and (d) the substantial consummation of a plan of reorganization proposed by Delphi in its chapter 11 cases (the "Plan") and confirmed by the Bankruptcy Court which incorporates, approves and is consistent with all of the terms of this Term Sheet and the comprehensive settlement agreement between Delphi and GM.

3) Pursuant to the Plan and this Term Sheet, as of the Effective Date or as soon as practicable thereafter in accordance with applicable law and administrative requirements (the "Cessation Date"), Delphi will cease to provide, offer, or have any liability for OPEB to its IUOE, IBEW, and IAM

represented hourly employees and retirees and their spouses, surviving spouses, dependents or other beneficiaries. The cessation will be administered on a "claims incurred" basis, and Delphi will therefore retain responsibility for all claims incurred but either unfiled or unpaid as of the Cessation Date. This cessation will include elimination of the Special Benefit relating to Medicare Part B.

4) As of the Cessation Date, GM agrees to provide OPEB (including the Special Benefit relating to Medicare Part B if applicable) to the IUOE, IBEW, and IAM represented Delphi hourly employees and Delphi retirees who:

   A   as of the Effective Date are retired with eligibility for OPEB;

   B.  as of the Effective Date are eligible to retire from Delphi on a normal retirement basis under Article II, section 1 of the Delphi Hourly-Rate Employees Pension Plan ("Delphi HRP") (i.e., age 65) or an early retirement basis under Article II, sections 2(a)(1), 2(a)(2) or 2(a)(3) of the Delphi HRP (i.e., 60 &10), 85 Point or 30 & Out), with OPEB under the terms of the applicable 2003 collective bargaining agreement in effect on the date immediately preceding the Effective Date; and

   C.  become eligible to retire on a normal retirement basis under Article II, section 1 of the Delphi HRP (i.e., age 65) or an early retirement basis under Article II, sections 2(a)(1), 2(a)(2) or 2(a)(3) of the Delphi HRP (i.e., 60 & 10, 85 Point or 30 & Out) or as a Total and Permanent Disability retirement under Article II, section 3 of the Delphi HRP approved both by Delphi pursuant to the procedures applicable to the Delphi HRP as of the date immediately preceding the Effective Date and approved by GM under the procedures applicable to the General Motors Hourly-Rate Employees Pension Plan ("GM HRP"), within 7 years of the Effective Date.

5) All post-retirement medical benefits provided by GM will be in accordance with all the ongoing terms, conditions and eligibility requirements of the GM Health Care Program for Hourly Employees and GM will provide the applicable level of post retirement medical benefits consistent with the terms of the Modified Plan, as defined in the settlement agreement (the "Settlement Agreement") approved by the court in the case *IUE, et al. v. General Motors Corporation (case number 2:06-cv-12151)*, on the same basis as such benefits are provided to GM-IUE-CWA hourly employees who retired from GM with eligibility to participate in the GM Health Care Program.

6) All employer-paid post-retirement Basic Life Insurance benefits provided by GM will be in accordance with all the ongoing terms, conditions and eligibility requirements of the GM Life and Disability Benefits Program for Hourly Employees and will be at the level provided for Delphi IUOE, IBEW, or IAM,

as applicable, represented retirees on the date immediately preceding the
Effective Date, provided, however, that in no event shall GM be required to
provide life insurance benefits at a level and scope that exceeds that being
provided for similarly situated IBEW or IAM – represented hourly retirees of
GM.

7) The parties agree to fully cooperate with the efficient transfer of
administrative responsibilities from Delphi to GM so that the Cessation Date
will be the Effective Date or as soon as possible after the Effective Date, but
in no case later than 3 months after the Effective Date (unless mutually
agreed to by the parties). The parties further agree that there may be
differing Cessation Dates for different portions of post-retirement medical
plan benefits depending on the benefit and how quickly administrative
responsibilities can be transferred. The parties further agree that the
Cessation Date shall not occur unless and until GM is prepared to assume
responsibility for all covered claims incurred on and after the Cessation
Date, in order to assure a smooth transition of the obligation.

## General Provisions

8) Delphi, GM, and the IUOE, IBEW, and IAM agree to make all collective
bargaining agreement and benefit plan amendments and modifications
necessary to implement and comply with the terms contained herein.

9) Employees electing a Buy Down under the applicable IUOE, IBEW, or IAM-
Delphi-GM Memorandum of Understanding-Delphi Restructuring will retain
eligibility for OPEB under this Term Sheet without regard to such election.

10) This Term Sheet shall not be effective unless the confirmation order
approving the Plan incorporates and approves all of the terms of this Term
Sheet (including the releases provided for herein), does not include terms
that are inconsistent with this Term Sheet, and provides that on the Effective
Date, the IUOE, IBEW, and IAM, all employees and former employees of
Delphi represented or formerly represented by the IUOE, IBEW, and IAM,
and all persons or entities with claims derived from or related to any
relationship with such employees or former employees of Delphi, waive and
be deemed to have waived any and all claims of any nature, whether
liquidated, un-liquidated, contingent, non-contingent, asserted, unasserted,
existing and/or arising in the future against Delphi, the Delphi HRP, the
Delphi Health Care Program for Hourly Employees and the Delphi Life and
Disability Benefits Program for Hourly Employees, GM, the GM HRP, the
GM Health Care Program for Hourly Employees and the GM Life and
Disability Benefits Program for Hourly Employees, and the officers, directors,
employees, fiduciaries, and agents of each,  arising from or related to any
obligations of Delphi, GM and/or such employee benefits plans to provide
OPEB or pension benefits, or related in any way to the amendment and

freeze of the Delphi HRP, the cessation of Delphi OPEB; provided however, that claims for benefits provided for under the provisions of this Term Sheet or ordinary course claims by participants and beneficiaries of the GM Health Care Program for Hourly Employees,  the Delphi Health Care Program for Hourly Employees and the Delphi Life and Disability Benefits Program for Hourly Employees, arising after the Effective Date based on the denial or miscalculation of benefits under such plans are not waived.  The parties acknowledge that Delphi and/or GM may seek additional waivers of other claims, other than ordinary course grievances and workers' compensation claims, in connection with the resolution of its current labor negotiations with the IUOE, IBEW, and IAM.  The parties also acknowledge that (i) the consideration provided by GM in this Term Sheet constitutes a substantial contribution to the Plan, (ii) this contribution is necessary to the success of the Plan, and (iii) GM would not have made this contribution without obtaining the releases provided for herein. The Parties further acknowledge that nothing in the preceding sentence shall give rise to or entitle GM to seek or be allowed any claim against or consideration from any entity, including Delphi, other than as specifically approved by the Bankruptcy Court as agreed to by Delphi and GM in a comprehensive settlement agreement resolving the financial, commercial, and other matters between them.

The parties, by their duly authorized officers and representatives, agree accordingly this 31st day of July, 2007.

| District 10, International Association of Machinists and Aerospace Workers, AFL-CIO | Delphi Corporation | General Motors Corporation |
|---|---|---|
| _Donald Griffen_ | _PM Better_ | _Deanie Murry_ |
| International Brotherhood of Electrical Workers, AFL-CIO | | |
| _signature_ | _C. M. Mawee_ | _____ |
| International Union of Operating Engineers, Local 18S | | |
| _____ | _M Beth Sap_ | _____ |
| _Charlesw Schewr_ | _signature_ | _____ |
| _Roger Struckman_ | _signature_ | _____ |

obligations of Delphi, GM and/or such employee benefits plans to provide OPEB or pension benefits, or related in any way to the amendment and freeze of the Delphi HRP, the cessation of Delphi OPEB; provided however, that claims for benefits provided for under the provisions of this Term Sheet or ordinary course claims by participants and beneficiaries of the GM Health Care Program for Hourly Employees, the Delphi Health Care Program for Hourly Employees and the Delphi Life and Disability Benefits Program for Hourly Employees, arising after the Effective Date based on the denial or miscalculation of benefits under such plans are not waived. The parties acknowledge that Delphi and/or GM may seek additional waivers of other claims, other than ordinary course grievances and workers' compensation claims, in connection with the resolution of its current labor negotiations with the IUOE, IBEW, and IAM. The parties also acknowledge that (i) the consideration provided by GM in this Term Sheet constitutes a substantial contribution to the Plan, (ii) this contribution is necessary to the success of the Plan, and (iii) GM would not have made this contribution without obtaining the releases provided for herein. The Parties further acknowledge that nothing in the preceding sentence shall give rise to or entitle GM to seek or be allowed any claim against or consideration from any entity, including Delphi, other than as specifically approved by the Bankruptcy Court as agreed to by Delphi and GM in a comprehensive settlement agreement resolving the financial, commercial, and other matters between them.


District 10, International
Association of Machinists and
Aerospace Workers, AFL-CIO                Delphi Corporation            General Motors Corporation

_____

International Brotherhood of        _____      _____
Electrical Workers, AFL-CIO

_____

International Union of Operating    _____      _____
Engineers, Local 1ocal 10tS

Harvey Baird Jr                    _____      _____


_____

International Union of Operating    _____      _____
Engineers, Local 832S

_____         _____      _____


_____         _____      _____

4

International Union of Operating
Engineers, Local 832S

_(signature)_

_(signature)_

IBEW Local 663 (Delphi
Powertrain - Milwaukee)

_(signature)_

IBEW Local 663, (Delphi E&S -
Milwaukee)

_(signature)_ Frank J. Kosiak

_(signature)_ Michael Wizola

IAM – Tool & Die Makers
Lodge 78

_(signature)_

_(signature)_

## Delphi-GM- IBEW, IAM, IUOE Special Attrition Program –Transformation

1. Delphi, the International Union of Operating Engineers, AFL-CIO (IUOE), the International Brotherhood of Electrical Workers, AFL-CIO (IBEW), and the International Association of Machinists and Aerospace Workers, AFL-CIO (IAM) (collectively the "Unions"), and General Motors agree on the following Special Attrition Program – Transformation (SAP-T) for Delphi employees who are participants in the Delphi Hourly-Rate Employees Pension Plan ("Delphi HRP").

    a. An attrition program will be run for eligible IBEW, IAM, and IUOE-represented Delphi employees as follows:

        i. $35,000 for normal or early voluntary retirements when the employee's services are no longer required but no later than January 1, 2008.
        ii. Age 50 with 10 years of credited service Mutually Satisfactory Retirement (MSR) effective when the employee's services are no longer required but no later than January 1, 2008.

    b. Any employee with at least 26 and less than 30 years of credited service regardless of age will be eligible for special voluntary placement in a pre-retirement program when their services are no longer required, but no later than January 1, 2008, under the following terms:

        i. Employees electing this pre-retirement program must be eligible no later than January 1, 2008.
        ii. Employees will retire without additional incentives when they first accrue 30 years of credited service under the provisions of the Delphi HRP.
        iii. The gross monthly wages while in the program will be:

            1. 29 years credited service       $2,900
            2. 28 years credited service       $2,850
            3. 27 years credited service       $2,800
            4. 26 years credited service       $2,750

            Wages will be paid weekly on an hourly basis (2,080 hours per year) and will remain at that rate until 30 years of credited service is accrued. Employees will be treated the same as active employees with the following exceptions: (1) not eligible for Cost of Living Allowance (COLA); (2) not eligible for vacation pay except as was earned and unpaid prior to the commencement of this Pre-Retirement Program; (3) for purposes of pension benefits, the Benefit Class Code will be determined using the twenty-four month look back period as specified in Appendix A of the Delphi HRP, with said period starting from the last

day worked prior to the commencement of the pre-retirement program; (4) for purposes of life insurance, the amount of life insurance will be based on the base rate as of the last day worked prior to the commencement of the pre-retirement program.

c. Buy out of $140,000 for eligible employees with 10 or more years of seniority or credited service, whichever is greater; $70,000 for eligible employees with at least three but less than 10 years of seniority or credited service, whichever is greater; and $40,000 for eligible employees with at least one but less than three years of seniority or credited service, whichever is greater, to sever all ties with GM and Delphi except any vested pension benefits (as such no pension supplements will be payable). Employees will buy out when their services are no longer required, but no later than January 1, 2008. An employee electing a buy out whose spouse is employed at Delphi may, if they meet all plan requirements to do so, be eligible for health care coverage as a dependent pursuant to their spouse's health care program.

d. An employee may only select one of the options described above.

e. Effective January 1, 2008, all employees (other than those participating in option 1.b.), not electing an attrition option will be bought down consistent with the IBEW, IAM, or IUOE -Delphi-GM Memorandum of Understanding - Delphi Restructuring applicable to the employee.

f. Temporary employees will be used as needed to bridge any difficulties arising from the implementation of the Special Attrition Program – Transformation.

2. GM, the Unions and Delphi agree that any employee electing to retire under options 1.a.i., 1.a.ii, or 1.b. will transition to GM for purposes of post-retirement health care and employer paid basic life insurance in retirement ("check the box") and receive such benefits from GM on the same basis as GM-IUE-CWA retirees; post-retirement medical benefits provided will be in accordance with all the ongoing terms, conditions and eligibility requirements of the GM Health Care Program for Hourly Employees. As such, GM will provide the applicable level of post retirement medical benefits consistent with the terms of the Modified Plan, as defined in the settlement agreement (the "Settlement Agreement") approved by the court in the case *IUE, et al. v. General Motors Corporation (case number 2:06-cv-12151)*, on the same basis as such benefits are provided to GM-IUE-CWA hourly employees who retired from GM with eligibility to participate in the GM Health Care Program. Any employee choosing option 1.b. above will be considered a Delphi employee until they retire. Employees who have 100% of their credited service in the Delphi HRP will receive 100% of their pension benefit from the Delphi HRP. Notwithstanding paragraph 3 below, any obligations assumed by GM under the "check the box" provisions of this paragraph shall be conclusively deemed to be comprehended by, included within, and shall constitute a prepetition, general unsecured claim assertable by GM against

the estate of Delphi Corporation under Delphi's general indemnity of GM under the Master Separation Agreement. Neither Delphi Corporation nor any of its debtor affiliates may object on any grounds to the allowance of such claim; provided, however, that Delphi Corporation and any of its debtor affiliates reserve the right to object to the economic value of such claim (in the nature of assumptions such as discount rate, health care trend rates, mortality, other withdrawal rates and current and future expected benefit plan design changes). This limited objection waiver applies to Delphi, only, and not for other parties in interest, for which all rights are expressly reserved to object to the allowance of such claim under any grounds other than it was not assertable under the Master Separation Agreement. In exchange for eligibility to receive post-retirement health care and life insurance benefits from GM, employees will waive any and all rights to post retirement health care and employer paid basic life insurance benefits from Delphi including but not limited to any and all rights to COBRA continuation through Delphi.

3.  The parties acknowledge the following matters regarding the Special Attrition Program - Transformation:

    a.  Delphi's participation in this SAP-T is subject to the approval of the U.S. Bankruptcy Court; which approval Delphi will seek promptly at the next available omnibus hearing. In the event such participation is not allowed by the Bankruptcy Court, GM and the IBEW, IAM, IUOE will have no obligations hereunder. GM's obligations hereunder are subject to approval of this SAP-T by the U.S. Bankruptcy Court pursuant to entry of an order that provides for the treatment of GM's claims as described in this SAP-T and is otherwise reasonably satisfactory to GM, Delphi, the IBEW, IAM, and IUOE.

    b.  For the avoidance of doubt, any obligations assumed by GM under this SAP-T with respect to post retirement health care and employer paid basic life insurance benefit under paragraph 2 above shall be conclusively deemed to be comprehended by, included within, and shall constitute a prepetition, general unsecured claim assertable by GM against the estate of Delphi Corporation. GM agrees to assume and pay post retirement health care and employer paid basic life insurance benefit payments to Delphi employees who "check the box" for purposes of post-retirement health care and employer paid basic life insurance in retirement. .

    c.  This SAP-T shall not be subject to abrogation, modification or rejection without the mutual consent of the IBEW, IAM, or IUOE, as applicable, GM and Delphi and the order obtained in the Bankruptcy Court by Delphi approving this SAP-T shall so provide. The parties further agree (and the Bankruptcy Court order shall also provide) that this SAP-T is without prejudice to any interested party (including the parties to this SAP-T and the Official Committee of Unsecured Creditors) in all other aspects of Delphi's Chapter 11 cases, including by illustration, Delphi's and GM's respective positions in all

commercial discussions and claims matters between them, all collective bargaining matters involving the parties, in any potential proceedings under Sections 1113 and/or 1114 of the Bankruptcy Code with respect to the IBEW, IAM, or IUOE and under Section 365 of the Bankruptcy Code with respect to GM's contracts with Delphi, in any pension termination proceeding under ERISA and/or the Bankruptcy Code, and all claims administration and allowance matters.

d.  Nothing in this SAP-T, the Bankruptcy Court's approval of this SAP-T, or the performance of any obligation hereunder, shall limit or otherwise modify (a) Delphi's rights under Section 4041 of ERISA, or (b) Delphi's rights under Section 1113 and/or 1114 of the Bankruptcy Code with regard to any obligations which pre-existed this SAP-T (including pre-existing obligations referenced within this SAP-T), such as (by way of illustration only) the obligation to maintain the Delphi HRP or provide retirees or active employees (including employees/retirees participating in the attrition programs contained in this SAP-T) with levels of healthcare or other benefits as specified in pre-existing labor agreements.  Under no circumstances shall Delphi freeze the Delphi HRP in a manner that prevents employees in the pre-retirement program described in Paragraph 1.b. above from receiving on-going credited service sufficient to reach 30 years of credited service.  Delphi shall provide the same healthcare and life insurance coverage to employees participating in paragraph 1.b. that it provides to its other active IAM, IBEW or IUOE-represented employees, as applicable.

e.  Nothing contained herein, in the Bankruptcy Court's approval of this SAP-T, or the performance of any obligation hereunder, shall constitute an assumption of any agreement described herein, including, without limitation any collective bargaining agreement between the IBEW, IAM, or IUOE and Delphi or any agreement between GM and Delphi, nor shall anything herein, in the Bankruptcy Court's approval of this SAP-T, or the performance of any obligation hereunder, be deemed to create or give rise to an administrative or priority claim with respect to GM or convert a prepetition claim into a postpetition claim or an administrative expense with respect to any party.

**IMPLEMENTATION OF THE SPECIAL ATTRITION PROGRAM – TRANSFORMATION IS SUBJECT TO U.S. BANKRUPTCY COURT APPROVAL AND NO PAYMENTS OR RETIREMENTS WILL BE PROCESSED UNTIL AFTER COURT APPROVAL.**

The parties, by their duly authorized officers and representatives, agree accordingly this 31st day of July 2007.

District 10, International
Association of Machinists and
Aerospace Workers, AFL-CIO

Delphi Corporation

General Motors Corporation

International Brotherhood of
Electrical Workers, AFL-CIO

International Union of Operating
Engineers, Local 185S

International Union of Operating
Engineers, Local 832S

IBEW Local 663 (Delphi
Powertrain - Milwaukee)

IBEW Local 663, (Delphi E&S -
Milwaukee)

IAM – Tool & Die Makers
Lodge 78

## Exhibit 7

**Non-Represented Term Sheet**

**Term Sheet – Delphi Cessation and GM Provision of OPEB For Certain Non-
Represented Delphi Employees and Retirees**

1) This Term Sheet sets forth the agreement between General Motors Corporation
("GM") and Delphi Corporation, or any successor to Delphi as a result of the
acquisition of substantially all the stock or assets of Delphi Corporation or a merger
of Delphi Corporation regarding Delphi's cessation of post-retirement health care
benefits and employer-paid post-retirement basic life insurance benefits (hereinafter
referred to as "OPEB") and GM's agreement to provide OPEB to certain retired
hourly employees currently receiving such benefits from Delphi who are not
currently represented by one of the unions representing Delphi's employees and
retirees (the "Unions") and other active hourly Delphi employees who are not
represented by any of the Unions and who may become eligible for OPEB in
accordance with this Term Sheet.  Except as otherwise expressly stated herein, the
terms of the respective Delphi and GM employee benefit plans and programs will
govern. This Term Sheet does not, and is not intended to, constitute an employee
benefit plan under the meaning of ERISA.

2) The parties acknowledge that this Term Sheet will become effective (the "Effective
Date") when all of the following events have occurred and as of the date when the
last of such events shall have occurred:  (a) the entry of an approval order by the
Bankruptcy Court in Delphi's chapter 11 cases approving this Term Sheet; and (b)
execution by Delphi and GM of a comprehensive settlement agreement resolving the
financial, commercial, and other matters between them; and (c) the substantial
consummation of a plan of reorganization proposed by Delphi in its chapter 11 cases
(the "Plan") and confirmed by the Bankruptcy Court which incorporates, approves
and is consistent with all of the terms of this Term Sheet and the comprehensive
settlement agreement between Delphi and GM.

3) Pursuant to the Plan and this Term Sheet, as of the Effective Date or as soon as
practicable thereafter in accordance with applicable law and administrative
requirements (the "Cessation Date"), Delphi will cease to provide, offer, or have any
liability for OPEB to its non-represented hourly employees and retirees and their
spouses, surviving spouses, dependents or other beneficiaries.  The cessation will be
administered on a "claims incurred" basis, and Delphi will therefore retain
responsibility for all claims incurred but either unfiled or unpaid as of the Cessation
Date. This cessation will include elimination of the Special Benefit relating to
Medicare Part B.

4) As of the Cessation Date, GM agrees to provide OPEB (including the Special
Benefit relating to Medicare Part B if applicable) to the non-represented Delphi
hourly employees and Delphi retirees who:

   A  as of the Effective Date are retired with eligibility for OPEB;

B. as of the Effective Date are eligible to retire from Delphi on a normal retirement basis under Article II, section 1 of the Delphi Hourly-Rate Employees Pension Plan ("Delphi HRP") (i.e., age 65) or an early retirement basis under Article II, sections 2(a)(1), 2(a)(2) or 2(a)(3) of the Delphi HRP (i.e., 60 &10), 85 Point or 30&Out), with OPEB under the terms of the Delphi hourly health care program in effect on the date immediately preceding the Effective Date; and

C. become eligible to retire on a normal retirement basis under Article II, section 1 of the Delphi HRP (i.e., age 65) or an early retirement basis under Article II, sections 2(a)(1), 2(a)(2) or 2(a)(3) of the Delphi HRP (i.e., 60 & 10, 85 Point or 30 & Out) or as a Total and Permanent Disability retirement under Article II, section 3 of the Delphi HRP approved both by Delphi pursuant to the procedures applicable to the Delphi HRP as of the date immediately preceding the Effective Date and approved by GM under the procedures applicable to the General Motors Hourly-Rate Employees Pension Plan ("GM HRP"), within 7 years of the Effective Date.

5) All post-retirement medical benefits provided by GM will be in accordance with all the ongoing terms, conditions and eligibility requirements of the GM Health Care Program for Hourly Employees and GM will provide the applicable level of post retirement medical benefits consistent with the terms of the Modified Plan, as defined in the settlement agreement (the "Settlement Agreement") approved by the court in the case *IUE, et al. v. General Motors Corporation (case number 2:06-cv-12151)*, on the same basis as such benefits are provided to GM-IUE-CWA hourly employees who retired from GM with eligibility to participate in the GM Health Care Program.

6) All employer-paid post-retirement Basic Life Insurance benefits provided by GM will be in accordance with all the ongoing terms, conditions and eligibility requirements of the GM Life and Disability Benefits Program for Hourly Employees and will be at the level provided for Delphi non-represented retirees on the date immediately preceding the Effective Date, provided, however, that in no event shall GM be required to provide life insurance benefits at a level and scope that exceeds that being provided for similarly situated non-represented hourly retirees of GM.

7) The parties agree to fully cooperate with the efficient transfer of administrative responsibilities from Delphi to GM so that the Cessation Date will be the Effective Date or as soon as possible after the Effective Date, but in no case later than 3 months after the Effective Date (unless mutually agreed to by the parties). The parties further agree that there may be differing Cessation Dates for different portions of post-retirement medical plan benefits depending on the benefit and how quickly administrative responsibilities can be transferred. The parties further agree that the Cessation Date shall not occur unless and until GM is prepared to assume responsibility for all covered claims incurred on and after the Cessation Date, in order to assure a smooth transition of the obligation.

## General Provisions

8) Delphi and GM agree to make all benefit plan amendments and modifications necessary to implement and comply with the terms contained herein.

9) Employees electing a Buy Down under the applicable special attrition program will retain eligibility for OPEB under this Term Sheet without regard to such election.

10) This Term Sheet shall not be effective unless the confirmation order approving the Plan incorporates and approves all of the terms of this Term Sheet (including the releases provided for herein), does not include terms that are inconsistent with this Term Sheet, and provides that on the Effective Date all non-represented hourly employees and former hourly employees of Delphi, and all persons or entities with claims derived from or related to any relationship with such employees or former employees of Delphi, waive and be deemed to have waived any and all claims of any nature, whether liquidated, un-liquidated, contingent, non-contingent, asserted, unasserted, existing and/or arising in the future against Delphi, the Delphi HRP, the Delphi Health Care Program for Hourly Employees and the Delphi Life and Disability Benefits Program for Hourly Employees, GM, the GM HRP, the GM Health Care Program for Hourly Employees and the GM Life and Disability Benefits Program for Hourly Employees, and the officers, directors, employees, fiduciaries, and agents of each, arising from or related to any obligations of Delphi, GM and/or such employee benefits plans to provide OPEB or pension benefits, or related in any way to the amendment and freeze of the Delphi HRP, the cessation of Delphi OPEB; provided however, that claims for benefits provided for under the provisions of this Term Sheet or ordinary course claims by participants and beneficiaries of the GM Health Care Program for Hourly Employees, the Delphi Health Care Program for Hourly Employees and the Delphi Life and Disability Benefits Program for Hourly Employees, arising after the Effective Date based on the denial or miscalculation of benefits under such plans are not waived. The parties also acknowledge that (i) the consideration provided by GM in this Term Sheet constitutes a substantial contribution to the Plan, (ii) this contribution is necessary to the success of the Plan, and (iii) GM would not have made this contribution without obtaining the releases provided for herein. The Parties further acknowledge that nothing in the preceding sentence shall give rise to or entitle GM to seek or be allowed any claim against or consideration from any entity, including Delphi, other than as specifically approved by the Bankruptcy Court as agreed to by Delphi and GM in a comprehensive settlement agreement resolving the financial, commercial, and other matters between them.

Delphi Corporation                          General Motors Corporation

3

**Hearing Date And Time: August 16, 2007 at 10:00 a.m.**
**Objection Deadline: August 13, 2007 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

         -and-

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

         -and-

O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300
Tom A. Jerman (TJ 1129)
Jessica Kastin (JK 2288)

Attorneys for Delphi Corporation, et al.,
  Debtor and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698
Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                          :
         In re                            :      Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :      Case No. 05-44481 (RDD)
                                          :
                          Debtors. :      (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

NOTICE OF EXPEDITED MOTION FOR ORDER UNDER 11 U.S.C. §§ 363, 1113,
AND 1114 AND FED. R. BANKR. P. 6004 AND 9019 APPROVING (I) MEMORANDA OF UNDERSTANDING AMONG IUOE,
IBEW, IAM, DELPHI, AND GENERAL MOTORS CORPORATION INCLUDING MODIFICATION OF IUOE, IBEW, AND IAM
COLLECTIVE BARGAINING AGREEMENTS AND RETIREE WELFARE BENEFITS FOR CERTAIN IUOE, IBEW, AND IAM-
REPRESENTED RETIREES AND (II) MODIFICATION OF, AND TERM SHEET REGARDING, RETIREE WELFARE BENEFITS
FOR CERTAIN NON-REPRESENTED HOURLY ACTIVE EMPLOYEES AND RETIREES

PLEASE TAKE NOTICE that on August 6, 2007, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), filed an Expedited Motion For Order Under 11 U.S.C. §§ 363, 1113 And 1114 And Fed. R. Bankr. P. 6004 And 9019 Approving (I) Memoranda Of Understanding Among IUOE, IBEW, IAM, Delphi, And General Motors Corporation Including Modification Of IUOE, IBEW, And IAM Collective Bargaining Agreements And Retiree Welfare Benefits For Certain IUOE, IBEW, And IAM-Represented Retirees And (II) Modification Of, And Term Sheet Regarding, Retiree Welfare Benefits For Certain Non-Represented Hourly Active Employees And Retirees (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of the Motion will be held on August 16, 2007 at 10:00 a.m. (prevailing Eastern time) (the "Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, entered March 20, 2006 (Docket No. 2883) (the "Supplemental Case Management Order") and the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, entered October 26, 2006 (Docket No. 5418) (together with the Supplemental Case Management Order, the "Case Management Orders"), (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the

2

Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n:  General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n:  John Wm. Butler, Jr.), O'Melveny & Myers LLP, 1625 Eye Street, NW, Washington, DC 20006 (Att'n:  Tom A. Jerman), and Groom Law Group, Chartered, 1701 Pennsylvania Avenue NW Washington, DC 20006 (Att'n:  Lonie Hassel), (iii) counsel for the agent under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017 (Att'n:  Donald Bernstein and Brian Resnick), (iv) counsel for the official committee of unsecured creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n:  Robert J. Rosenberg and Mark A. Broude), (v) counsel for the official committee of equity security holders, Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, New York 10004 (Att'n:  Bonnie Steingart), (vi) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n:  Alicia M. Leonhard), (vii) counsel to the IUOE, Gorlick, Kravitz & Listhaus, P.C., 17 State Street, 4th Floor, New York, New York 10004 (Att'n: Barbara S. Mehlsack), and (viii) counsel to the IAM and IBEW, Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, S.C., 1555 N. RiverCenter Drive, Suite 202, Milwaukee, Wisconsin 53212 (Att'n: Marianne G. Robbins) in each case so as to be **received** no later than **4:00 p.m. (prevailing Eastern time)** on **August 13, 2007** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth

herein and in accordance with the Case Management Orders will be considered by the Bankruptcy

Court at the Hearing.  If no objections to the Motion are timely filed and served in accordance with the

procedures set forth herein and the Case Management Orders, the Bankruptcy Court may enter a final

order granting the Motion without further notice.

Dated:    New York, New York
            August 6, 2007

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By:    /s/ John Wm. Butler, Jr.
        John Wm. Butler, Jr. (JB 4711)
        John K. Lyons (JL 4951)
        Ron E. Meisler (RM 3026)
        333 West Wacker Drive, Suite 2100
        Chicago, Illinois 60606
        (312) 407-0700

- and -

By:    /s/ Kayalyn A. Marafioti
        Kayalyn A. Marafioti (KM 9632)
        Thomas J. Matz (TM 5986)
        Four Times Square
        New York, New York 10036
        (212) 735-3000

- and-

O'MELVENY & MYERS LLP

By: /s/ Tom A. Jerman
      Tom A. Jerman (TJ 1129)
      Jessica Kastin (JK 2288)
      1625 Eye Street, NW
      Washington, DC 20006
      (202) 383-5300

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

4

# EXHIBIT H

**Hearing Date And Time: August 16, 2007 at 10:00 a.m.**
**Objection Deadline: August 13, 2007 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

       -and-

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

       -and-

O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300
Tom A. Jerman (TJ 1129)
Jessica Kastin (JK 2288)

Attorneys for Delphi Corporation, et al.,
   Debtor and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698
Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                               :
        In re                        :      Chapter 11
                               :
DELPHI CORPORATION, et al.,       :      Case No. 05-44481 (RDD)
                               :
                Debtors. :      (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

EXPEDITED MOTION FOR ORDER UNDER 11 U.S.C. §§ 363, 1113, AND 1114
AND FED. R. BANKR. P. 6004 AND 9019 APPROVING MEMORANDUM OF UNDERSTANDING
AMONG IUE-CWA, DELPHI, AND GENERAL MOTORS CORPORATION
INCLUDING MODIFICATION OF IUE-CWA COLLECTIVE BARGAINING AGREEMENTS
AND RETIREE WELFARE BENEFITS FOR CERTAIN IUE-CWA-REPRESENTED RETIREES

("IUE-CWA 1113/1114 SETTLEMENT APPROVAL MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this expedited motion (the "Motion")[1] for an order approving under 11 U.S.C. §§ 363, 1113, and 1114 of the Bankruptcy Code and Fed. R. Bankr. P. 6004 and 9019, (i) a memorandum of understanding regarding Delphi's restructuring entered into among the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communication Workers of America ("IUE-CWA"), Delphi, and General Motors Corporation ("GM") (the "IUE-CWA Settlement Agreement" or the "Memorandum of Understanding"),[2] a comprehensive agreement that (a) modifies, extends, or terminates provisions of the existing collective bargaining agreements among Delphi, the IUE-CWA, and its various locals (the "IUE-CWA CBAs"), and (b) provides that GM and Delphi will undertake certain financial obligations to Delphi's IUE-CWA-represented employees and retirees to facilitate these modifications, (ii) withdrawal without prejudice of the Debtors' Motion For Order Under 11 U.S.C. § 1113(c) Authorizing Rejection Of Collective Bargaining Agreements And Under 11 U.S.C. § 1114(g) Authorizing  Modification Of Retiree Welfare Benefits (the "1113/1114 Motion") as it solely pertains to the IUE-CWA and IUE-CWA-represented retirees and approving the parties' settlement of the 1113/1114 Motion as it solely pertains to the IUE-CWA and IUE-CWA-represented retirees, and (iii) modification of retiree welfare benefits for certain IUE-CWA-represented retirees of the Debtors.

---

[1]    A copy of the informational notice provided to Delphi active hourly employees and hourly retirees represented by the IUE-CWA in connection with the Motion is attached hereto as Exhibit 1.

[2]    A copy of the IUE-CWA Settlement Agreement is annexed to the Proposed Order which is attached hereto as Exhibit 2.  Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the IUE-CWA Settlement Agreement.

Introduction

1.      The IUE-CWA, Delphi, and GM have discussed the challenges impacting

Delphi and its IUE-CWA-represented operations.  As GM's largest supplier and the employer of

thousands of IUE-CWA-represented employees, indirectly supporting tens of thousands of

dependents, retirees, and surviving spouses, these parties have a critical interest in Delphi's

successful emergence from bankruptcy with certain IUE-CWA-represented operations.  These

parties acknowledge that restructuring actions are necessary and commit to take specific actions

to protect the needs of these parties and their constituencies, continuing progress already made

toward transforming Delphi's labor cost structure and ongoing business operations.

2.      The IUE-CWA has already agreed to an attrition program pursuant to

which thousands of employees at traditional Big Three wages and benefits took buyouts or

retired, and the IUE-CWA waived Delphi obligations to hire thousands of new employees as a

result of the departures caused by the attrition program.  The IUE-CWA, Delphi, and GM have

also agreed to the "Term Sheet – Delphi Pension Freeze and Cessation of OPEB, and GM

Consensual Triggering of Benefit Guarantee"[3] facilitating the freeze of Delphi's pension plan and

the assumption of significant OPEB liabilities by GM, thereby reducing Delphi's ongoing benefit

costs and liabilities.

3.      In addition, to enable continued transformation to more competitive wage

and benefit levels, to address capacity, divestiture, work rules, and staffing level issues, and to

better position Delphi to retain existing business and attract new business, the IUE-CWA,

Delphi, and GM have entered into various agreements in the Memorandum of Understanding on

a two-party or three-party basis, as applicable, subject to ratification.

---

[3]   This agreement is Attachment B to the Memorandum of Understanding.

4.      The Debtors filed the 1113/1114 Motion on March 31, 2006, after they were unable to consummate consensual modifications to the Debtors' collective bargaining agreements and retiree welfare benefits with the IUE-CWA and the other unions representing certain of the Debtors' U.S. employees and retirees (the "Unions")[4] during the first six months of their chapter 11 reorganization cases.  The Debtors continued to negotiate with the Unions even after they filed the 1113/1114 Motion, and represented that they would continue to negotiate with the Unions even if Debtors obtained the order requested in the 1113/1114 Motion.[5]  The parties were unable to reach a consensus before the scheduled commencement of the hearing on the 1113/1114 Motion on May 9, 2006.  This Court conducted hearings on the contested motion on various trial dates in May and June 2006, the record of which constitutes part of the basis for the relief requested in this Motion.  Throughout the 1113/1114 proceedings, however, the Debtors and the Unions continued to seek negotiated alternatives to litigation.

5.      On June 8, 2006, the Debtors and all respondents to the 1113/1114 Motion conducted a "meet and confer" at which the parties agreed to submit a scheduling order to this Court which provided for a recess of the hearings until August 11, 2006 (Docket No. 4170).  During the next five months, the Debtors' discussions with the Unions, GM, and other stakeholders continued.  As a consequence of those negotiations, the parties submitted to this

---

[4]    These unions include the United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW"), the United Steelworkers of America (the "USW"), the International Association of Machinists and Aerospace Workers (the "IAM"), the International Brotherhood of Electrical Workers (the "IBEW"), the International Union of Operating Engineers (the "IUOE"), and their local affiliates.

[5]    The Debtors' proposed modifications to the IUE-CWA CBAs upon which their 1113/1114 Motion was based are described in detail in the 1113/1114 Motion and the accompanying Declaration Of Darrell Kidd In Support of the 1113/1114 Motion (Docket No. 3039).  In sum, the Debtors' proposed modifications contemplated two possible scenarios: one in which they received no or inadequate financial support from GM (the "Competitive Benchmark Proposals") and the other in which they received financial support from GM adequate to offer less restrictive or severe modifications to their national and local labor agreements (the "GM Consensual Proposals").  The IUE-CWA, as well as the Debtors' other Unions, rejected the Competitive Benchmark Proposals and took the position that the Competitive Benchmark and GM Consensual Proposals did not provide a framework for resolution.  The Memorandum of Understanding that is the basis of this Motion is a fully negotiated  agreement on terms acceptable to the IUE-CWA, Delphi, and GM.

4

Court further scheduling orders adjourning the 1113/1114 Motion through the balance of 2006 and, on January 31, 2007, this Court suspended further proceedings on the 1113/1114 Motion (Docket No. 6779).  Further orders continuing the suspension of the 1113/1114 Motion have been granted by this Court with the intention of allowing the parties additional time to negotiate consensual modifications to Delphi's labor agreements.

6.    On June 22, 2007, Delphi reached a tentative agreement and signed a Memorandum of Understanding with the UAW and GM covering site plans, workforce transition, and other comprehensive transformational issues (the "UAW Settlement Agreement"), which was ratified by the UAW on June 28, 2007.  On July 31 and August 1, 2007, the Debtors reached similar tentative agreements with the IUOE, IBEW, and IAM (the "IUOE, IBEW, and IAM Settlement Agreements").

7.    The IUE-CWA Settlement Agreement is analogous to the UAW Settlement Agreement and the IUOE, IBEW, and IAM Settlement Agreements because they are all similar comprehensive agreements with Unions that modify, extend, or terminate provisions of existing collective bargaining agreements among Delphi, the Unions and their various locals and provides that GM and Delphi will undertake certain financial obligations to Delphi's Union-represented employees and retirees to facilitate these modifications.  On June 29, 2007, Delphi filed a motion with this Court for an order approving the UAW Settlement Agreement, approving withdrawal without prejudice of the 1113/1114 Motion solely as it pertains to the UAW and UAW-represented retirees, approving the settlement of the 1113/1114 Motion solely as it pertains to the UAW and UAW-represented retirees, and approving modification of retiree welfare benefits for certain UAW-represented retirees of Delphi.  After a hearing on this motion on July 19, 2007, this Court issued an order approving that motion (Docket No. 8693).  A similar

motion relating to the IUOE, IBEW, and IAM Settlement Agreements was filed on August 6, 2007.

8.    The IUE-CWA Settlement Agreement applies only to the IUE-CWA and does not resolve the 1113/1114 Motion as to the remaining Unions. As of the date of this Motion, however, the Debtors have achieved agreements with the IUOE, the IBEW, and the IAM, and stand ready to renew bargaining with the USW in an effort to reach a consensual agreement. If reached, such an agreement could be considered by this Court as early as the September 27, 2007 omnibus hearing.

9.    The IUE-CWA Settlement Agreement, among other subject matters, provides that: [6]

(A)    Effective upon the later of entry of this Court's approval order in respect of the Motion or the first Monday following receipt of written notice of ratification from the IUE-CWA: [7]

- The terms of the IUE-CWA CBAs are extended until October 12, 2011;

- A site plan is implemented with respect to each of 7 IUE-CWA-Delphi plants which includes, at certain sites, certain revenue program and production commitments from Delphi and/or GM and pursuant to which Delphi will retain ownership and operations in three facilities, two facilities will be sold or transferred to a third party and two facilities will be closed;

---

[6]    The summary of the IUE-CWA Settlement Agreement set forth in this Motion is qualified entirely by and is subject to the actual terms and conditions of the IUE-CWA Settlement Agreement.

[7]    Until the effective date of a plan of reorganization, nothing in the IUE-CWA Settlement Agreement will constitute an assumption of any agreement described in the IUE-CWA Settlement Agreement, including, without limitation, any collective bargaining agreement between the IUE-CWA and Delphi (except as provided for in Section H.3) or any commercial agreement between GM and Delphi, nor will anything in the IUE-CWA Settlement Agreement be deemed to create an administrative or priority claim with respect to GM or convert a prepetition claim into a postpetition claim or an administrative expense with respect to any party. The IUE-CWA Settlement Agreement also provides that the IUE-CWA, Delphi, and GM agree (and the order approving this Motion must also provide) that the IUE-CWA Settlement Agreement is without prejudice to any interested party (including the IUE-CWA, Delphi, GM, and the statutory committees) in all other aspects of Delphi's chapter 11 cases and the IUE-CWA, Delphi, and GM reserve all rights not expressly waived in the IUE-CWA Settlement Agreement.

- A workforce transition program is implemented for traditional IUE-CWA-represented employees that provides eligible employees with transformation plan options, including (1) attrition options similar to the previously-approved IUE-CWA attrition program, (2) special employee placement opportunities for eligible Delphi employees who do not elect the attrition options, including relocation allowances of up to $67,000 in certain circumstances when specific plants cease production, (3) provision of lump sum "buy-down" payments totaling up to $105,000 for eligible employees who do not elect the attrition option or become employed by GM and continue to work for Delphi under the terms of the IUE-CWA Settlement Agreement, and (4) severance payments up to $40,000 to eligible employees who are permanently laid off prior to October 12, 2011;[8]

- Certain terms of the IUE-CWA CBAs are modified with respect to wages and benefits for certain employees, including vacation entitlement, life insurance, extended disability benefits, supplemental unemployment benefits, paid holidays, and healthcare;

- Certain terms of the IUE-CWA CBAs are modified with respect to provisions covering hiring requirements, existing JAC/Legal Services, temporary employees, Appendix F, GIS, AOL, LJISA, and other matters described in Attachment E to the Memorandum of Understanding;

- Local negotiations for all Keep and Footprint sites conducted concurrently with the negotiations resulting in the IUE-CWA Settlement Agreement are final and binding upon ratification of the IUE-CWA Settlement Agreement;

- All employee, retiree, and union asserted and unasserted claims are settled (except for waiver of rights to vested pension benefits, workers compensation benefits, unemployment compensation benefits, and pending ordinary course grievances of employees remaining in the workforce); and

- The IUE-GM National Joint Skill Development and Training Committee will quitclaim any rights to the JAC Building to the IUE-CWA International or to an agreed upon not-for-profit entity.

(B)    Effective upon the execution by Delphi and GM of a comprehensive settlement agreement resolving certain financial, commercial, and other

---

[8]    GM will receive certain claims in connection with certain of these commitments as specified in Attachment C to the IUE-CWA Settlement Agreement.

7

matters between Delphi and GM and substantial consummation of a plan of reorganization proposed by Delphi in its chapter 11 cases and confirmed by this Court which incorporates, approves, and is consistent with all of the terms of the IUE-CWA Settlement Agreement and Delphi-GM settlement:

- Delphi's obligation to provide certain retiree welfare benefits is eliminated and GM is obligated to provide certain retiree welfare benefits for certain IUE-CWA-represented employees covered as provided in the Benefit Guarantee Term Sheet;

- A transfer of certain pension assets and liabilities from Delphi's pension plans to GM's pension plans is effectuated pursuant to Internal Revenue Code Section 414(l);

- Delphi's existing pension plan is frozen in certain respects effective upon emergence from chapter 11 and GM is obligated to pay certain benefits for certain IUE-CWA-represented employees covered as provided in the Benefit Guarantee Term Sheet;

- The IUE-CWA will receive an allowed general unsecured prepetition claim against Delphi in the amount of $126 million in complete settlement of all asserted and unasserted IUE-CWA claims, including, but not limited, to IUE-CWA/Delphi Joint Activities Center (the "JAC") asserted and unasserted claims ("the Allowed Claim"). The proceeds realized by the IUE-CWA and/or the voluntary employees' beneficiary association ("VEBA") trust, from a $26 million dollar portion of the Allowed Claim, will be paid directly to the VEBA trust to be established and sponsored by the IUE-CWA to provide supplemental retiree health insurance to certain eligible Delphi employees and their dependents; the proceeds realized by the IUE-CWA and/or the VEBA trust, from a $90 million dollar portion of the Allowed Claim, will be paid directly to a VEBA trust to be established and sponsored by the IUE-CWA for the purpose of funding employee benefits for active and retired employees and their dependents; and the proceeds realized by the IUE-CWA and/or a VEBA trust, from a $10 million dollar portion of the Allowed Claim, will be paid directly to the successor to the JAC entity which shall be established and administered by the IUE-CWA;

- The Memorandum of Understanding (including the IUE-CWA CBAs) is assumed pursuant to 11 U.S.C. § 365;

- The IUE-CWA released parties are exculpated and released in connection with the Memorandum of Understanding and Delphi's chapter 11 cases; and

8

- Delphi and GM receive releases from the IUE-CWA, all employees and former employees of Delphi represented or formerly represented by the IUE-CWA, and all persons or entities with claims derived from or related to any relationship with such employees of Delphi arising directly or indirectly from or in any way related to any obligations under the collective bargaining agreements or the Memorandum of Understanding (except for claims for benefits provided for or explicitly not waived under the Memorandum of Understanding, including, but not limited to, workers' compensation benefits against Delphi, its subsidiaries, or affiliates that are otherwise assertable under applicable law).

10.     The Debtors submit that approval of the IUE-CWA Settlement Agreement, which resolves Delphi's 1113/1114 Motion as it pertains to the IUE-CWA, is in the best interests of the Debtors and their stakeholders.  The Debtors believe that approval of the IUE-CWA Settlement Agreement will facilitate the Debtors' continued progress toward transformation and emergence.

Background

A.     The Chapter 11 Filings

11.     On October 8 and 14, 2005 (collectively, the "Petition Date"), the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108.  This Court has ordered joint administration of these cases.

12.     No trustee or examiner has been appointed in these cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders.