13.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

14.     The statutory predicates for the relief requested herein are sections 363, 1113, and 1114 of the Bankruptcy Code and Rule 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.      Business Operations Of The Debtors

15.     Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2006 had global net sales of $26.4 billion and global assets of approximately $15.4 billion.[9]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from this Court.[10]

16.     The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer.

---

[9]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 27, 2007.

[10]    On March 20 2007, Delphi Automotive Systems Espana S.L. ("DASE"), whose sole operation is a non-core automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency proceeding.  The application was approved by the Spanish court on April 13, 2007.  On July 4, 2007, DASE, its Concurso receivers, and the Cadiz workers councils and unions reached a settlement on a social plan, the funding of which was approved by this Court on July 19, 2007.  The Spanish court approved the social plan on July 31, 2007.  The Concurso proceeding is consistent with Delphi's transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

17.     Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.     Events Leading To The Chapter 11 Filing

18.     In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[11] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion.  Moreover, in 2006, the Debtors incurred a net loss of $5.5 billion, $3.0 billion of which comprised charges related to Special Attrition Programs.

19.     The Debtors believe that the Company's financial performance has deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production

---

[11]   Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating loss in calendar year 2004 was $482 million.

environment for domestic automakers resulting in the reduced number of motor vehicles that

GM produces annually in the United States and related pricing pressures, and (iii) increasing

commodity prices.

20.    In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

portfolio, operational issues, and forward-looking revenue requirements.  Because discussions

with its stakeholders had not progressed sufficiently by the end of the third quarter of 2005, the

Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors'

transformation plan and preserve value for its stakeholders.

21.    On March 31, 2006, the Company outlined the key tenets of a

transformation plan that it believed would enable it to return to stable, profitable business

operations.  The Debtors stated that they needed to focus on five key areas:[12] first, modifying the

Company's labor agreements to create a competitive arena in which to conduct business;[13]

---

[12]    In furtherance of the Debtors' transformation plan, on December 18, 2006, the Debtors announced their execution of an equity purchase and commitment agreement with certain investors, and a plan framework support agreement with those investors and GM.   On July 9, 2007, Delphi confirmed that it had formally terminated the equity purchase and commitment agreement and related plan framework support agreement but that it expected to enter into new framework agreements with plan investors presently.  Subsequently, on July 18, 2007, Delphi announced that it had accepted a new proposal for an equity purchase and commitment agreement (the "Delphi-Appaloosa EPCA") submitted by a group comprising a number of the original plan investors (affiliates of Appaloosa Management L.P., Harbinger Capital Partners Master Fund I, Ltd., Merrill Lynch, Pierce, Fenner & Smith Inc., and UBS Securities LLC) as well as, Goldman Sachs & Co. and an affiliate of Pardus Capital Management, L.P. (collectively, the "New Plan Investors").  Under the Delphi-Appaloosa EPCA,  the New Plan Investors would invest up to $2.55 billion in preferred and common equity in the reorganized Delphi to support the Company's transformation plan and plan of reorganization.  This Court approved the Delphi-Appaloosa EPCA on August 2, 2007.

[13]    Among the progress made to date, on June 22, 2007, Delphi reached an agreement with the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (the "UAW") and GM that (a) modifies, extends, or terminates provisions of the existing collective bargaining agreements among Delphi, the UAW, and its various locals, (b) provides that Delphi and GM will undertake certain financial obligations to Delphi's UAW-represented employees and retirees to facilitate these modifications, and (c) modifies retiree welfare benefits for certain UAW-represented retirees of the Debtors.  This agreement, which was approved by this Court on July 19, 2007, should facilitate the Debtors' reaching consensual resolutions of their labor issues with the remaining unions and GM and permit the Debtors to continue to implement their transformation plan and to develop, prosecute, confirm, and consummate a plan of reorganization.  As of August 6, 2007, similar

second, concluding their negotiations with GM to finalize GM's financial support for the

Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company;[14]

third, streamlining their product portfolio to capitalize on their world-class technology and

market strengths and make the necessary manufacturing alignment with their new focus;[15]

fourth, transforming their salaried workforce to ensure that the Company's organizational and

cost structure is competitive and aligned with its product portfolio and manufacturing footprint;[16]

and devising a workable solution to their current pension situation.[17]

---

agreements have been reached with the International Association of Machinists and Aerospace Workers and its District 10 and Tool and Die Makers Lodge 78, the International Brotherhood of Electrical Workers and its Local 663, International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communication Workers of America and its local unions, and Locals 832S, 18S, and 101S of the International Union of Operating Engineers. Delphi is currently engaged in settlement discussions with its remaining U.S. labor union and is working to conclude discussions with that union as soon as practicable.

[14]    On July 9, 2007, Delphi confirmed that its discussions with GM on a comprehensive settlement agreement had entered the documentation phase and that it expected that a settlement with GM would be incorporated into the Debtors' plan of reorganization rather than filed with this Court for separate approval.

[15]    In connection with their March 31, 2006 announced transformation plan, the Debtors classified "core" and "non-core" product lines and plants. The Debtors have been working to divest non-core assets so as to maximize the value of the estate for stakeholders. During the 2006 and 2007 calendar years, for example, the Debtors sold substantially all of the assets related to MobileAria, Inc., its chapter 11 affiliate, obtained court approval for the sale of substantially all of the assets of their brake hose and Saltillo, Mexico brake plant businesses, and obtained court approval of bid procedures related to the upcoming sale of substantially all assets used in their catalyst business. In addition, as announced publicly, the Debtors anticipate selling additional non-core assets, including, without limitation, their steering, interior, and closures businesses.

[16]    As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product portfolio on core technologies for which the Company believes it has significant competitive and technological advantages. The Company's revised operating structure consists of its four core business segments: Electronics and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture. The Company also has two additional segments, Steering and Automotive Holdings Group, which will be transitioned as part of the Company's transformation plan. The Debtors also made significant progress in ensuring that their organizational and cost structure is competitive in obtaining the entry of this Court's Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 6004 Authorizing Debtors To Enter Into Finance Outsourcing Agreement on April 23, 2007 (Docket No. 7773) (the "Finance Outsourcing Order"). The Finance Outsourcing Order authorized the Debtors to outsource certain of the Debtors' accounts receivable, accounts payable, fixed assets, travel and expense reporting, general ledger, and contract administration processes and significantly reduce SG&A expenses as part of their transformation plan.

[17]    To that end, on May 31, 2007, this Court granted the Debtors' motion for authority to perform under the terms of those certain September 30, 2006 plan year funding waivers, which were approved by the IRS, for both the Delphi Hourly-Rate Employees Plan and the Delphi Retirement Program for Salaried Employees (collectively, the "Plans"). On July 13, 2007, the IRS modified the conditional funding waivers granted to Delphi related to the Plans, extending the dates by which Delphi is required to file a plan of reorganization and emerge from chapter 11 to December 31, 2007 and February 28, 2008, respectively.

D.    The Debtors' Prior Special Attrition Programs

22.    The Debtors and GM have previously entered into attrition agreements with the UAW and the IUE-CWA that provided similar options to the attrition options presented in the IUE-CWA Settlement Agreement.  On March 22, 2006, Delphi, GM and the UAW entered into a three-party agreement establishing a special attrition program, which was approved by order of this Court on May 8, 2006 (Docket No. 3648) and amended on May 12, 2006 (Docket No. 3754).  On June 5, 2006, Delphi, GM, and the UAW agreed on a supplemental program and on June 16, 2006, Delphi, GM, and the IUE-CWA reached agreement on the terms of a special attrition program which mirrored in all material respects the prior UAW attrition programs.  The UAW supplemental attrition program and the IUE-CWA attrition program were approved by this Court on June 29, 2006, and on July 7, 2006, this Court entered the approved order (Docket No. 4461).

23.    These attrition programs provided nearly two-thirds of Delphi's existing UAW and IUE-CWA-represented long-term hourly employees (as of September 26, 2006 and August 18, 2006, respectively) with "soft landings" through incentivized retirement programs and other options.

E.    This Court Has Already Approved A Similar Settlement Of The 1113/1114 Motion As It Pertained To The UAW Through The UAW Settlement Agreement

24.    On June 22, 2007, Delphi signed the UAW Settlement Agreement with the UAW and GM covering site plans, workforce transition and other comprehensive transformational issues, which was ratified by the UAW on June 28, 2007.  Similar to the UAW Settlement Agreement and the IUOE, IBEW, and IAM Settlement Agreements, the IUE-CWA Settlement Agreement is a comprehensive agreement that modifies, extends, or terminates provisions of the existing collective bargaining agreements among Delphi, the IUE-CWA, and the various IUE-CWA locals and provides that GM and Delphi will undertake certain financial

14

obligations to Delphi's IUE-CWA-represented employees and retirees to facilitate these

modifications.  On June 29, 2007, Delphi filed a motion with this Court for an order approving

the UAW Settlement Agreement, approving withdrawal without prejudice of the 1113/1114

Motion solely as it pertains to the UAW and UAW-represented retirees, approving the settlement

of the 1113/1114 Motion solely as it pertains to the UAW and UAW-represented retirees, and

approving modification of retiree welfare benefits for certain UAW-represented retirees of

Delphi.  After a hearing on this motion on July 19, 2007, this Court issued an order approving

that motion (Docket No. 8693).  By a motion filed on August 6, 2007, Delphi is also seeking an

order approving the IUOE, IBEW, and IAM Settlement Agreements.

F.      Settlement Of The 1113/1114 Motion As It Pertains To The IUE-CWA Settlement
        Agreement Presented For This Court's Approval On The Instant Motion

        25.     On August 5, 2007, the Debtors reached the IUE-CWA Settlement

Agreement that includes significant and necessary modifications to the IUE-CWA CBAs.[18]  As

set forth above, Delphi, GM, and the IUE-CWA will implement certain terms of the IUE-CWA

Settlement Agreement as of the Effective Date (defined in the IUE-CWA Settlement Agreement

as the later of entry of an order by the Court approving the IUE-CWA Settlement Agreement that

is satisfactory to the parties (the "Approval Order") or the first Monday following receipt by

Delphi of written notice of ratification from the IUE-CWA).[19]

---

[18]    The Debtors do not believe that the IUE-CWA Settlement Agreement will have any material adverse effect on
        the Debtors' five year business plan through December, 2011 or the Debtors' ability to comply with Section 1.1
        of Exhibit B to the Delpi-Appaloosa EPCA which requires that the aggregate amount of all trade claims and
        other unsecured claims (including any accrued interest but excluding certain categories of other unsecured
        claims) that have been asserted or scheduled but not yet disallowed as of the effective date of the reorganization
        plan shall be allowed or estimated for distribution purposes by the Bankruptcy Court to be no more than $1.7
        billion, excluding all allowed accrued postpetition interest thereon.

[19]    As noted above, the effective date of certain provisions of the IUE-CWA Settlement Agreement is conditioned
        upon confirmation of the Debtors' reorganization plan and resolution of certain financial, commercial, and other
        issues between Delphi and GM.

26.    The IUE-CWA Settlement Agreement settles the 1113/1114 Motion as it pertains to the IUE-CWA, enabling the Debtors to seek authority by to withdraw, without prejudice, the 1113/1114 Motion with respect to the IUE-CWA.

Relief Requested

27.    By this Motion, the Debtors seek entry of an order, under 11 U.S.C. §§ 363, 1113, and 1114 of the Bankruptcy Code and Fed. R. Bankr. P. 6004 and 9019, approving (i) the IUE-CWA Settlement Agreement, (ii) withdrawal without prejudice of the 1113/1114 Motion solely as it pertains to the IUE-CWA and approving the parties' settlement of the 1113/1114 Motion solely as it pertains to the IUE-CWA, and (iii) modification of retiree welfare benefits for certain IUE-CWA-represented retirees of the Debtors.

Basis For Relief

28.    The IUE-CWA Settlement Agreement requires a court order approving the IUE-CWA Settlement Agreement, which encompasses a settlement of the 1113/1114 Motion as it pertains to the IUE-CWA.  See IUE-CWA Settlement Agreement Section H.  Thus, as noted above and consistent with the terms and spirit of the IUE-CWA Settlement Agreement, this Motion is brought before this Court under sections 363, 1113, and 1114 of the Bankruptcy Code and Bankruptcy Rules 6004 and 9019.[20]

---

[20]    The Debtors do not concede through this Motion that the modifications to the IUE-CWA CBAs contained in the IUE-CWA Settlement Agreement require court approval either because such modifications are outside the ordinary course of business under section 363 or pursuant to sections 1113 or 1114 of the Bankruptcy Code. Out of an abundance of caution in connection with GM's unique role here and consistent with the terms of the IUE-CWA Settlement Agreement, however, the Debtors are seeking this Court's approval of the IUE-CWA Settlement Agreement.  See  In re The Leslie Fay Cos., 168 B.R. 294, 303 (Bankr. S.D.N.Y. 1994) (debtors can enter into agreement modifying existing collective bargaining agreements postpetition without notice or hearing).

G.     Approval Of The IUE-CWA Settlement Agreement Is Warranted Under Bankruptcy
       Code Section 363

      29.     Bankruptcy Code section 363(b)(1) permits a debtor-in-possession to use property of the estate "other than in the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363(b)(1).  Whether modifications to a collective bargaining agreement are ordinary-course transactions under section 363 of the Bankruptcy Code or whether such modifications are outside the ordinary course requiring approval under the Bankruptcy Code has generally been determined on a case-by-case basis.  See In re N. Am. Royalties, Inc., 267 B.R. 587, 593 (Bankr. E.D. Tenn. 2002) (collecting and comparing relevant authority).

      30.     Use of estate property outside the ordinary course of business may be authorized if the debtor demonstrates a sound business justification for it.  See Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (business judgment rule requires finding that good business reason exists to grant debtor's application under section 363(b)); see also In re Delaware & Hudson Ry. Co., 124 B.R. 169, 178-179 (D. Del. 1991).

      31.     The Second Circuit has held that, although the bankruptcy court sits as an "overseer of the wisdom with which the bankruptcy estate's property is being managed by the . . . debtor-in-possession," it must nevertheless resist becoming an "arbiter of disputes between creditors and the estate." Orion Pictures Corp. v. Showtime Network, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1098-99 (2d Cir. 1993).  The Court's consideration of a debtor's section 363(b) motion is a "summary proceeding," intended merely as a means "to efficiently review the . . . debtor's decision[s] . . . in the course of the swift administration of the bankruptcy estate.  It is not the time or place for prolonged discovery or a lengthy trial with disputed issues." Id. at 1098-99.

32.    Once the debtor articulates a valid business justification, a presumption arises that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" Official Comm. of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992). Thereafter, "[p]arties opposing the proposed exercise of a debtor's business judgment have the burden of rebutting the presumption of validity." Id. To satisfy its burden, it is not enough for an objector simply to raise and argue an objection. Rather, an objector "is required to produce some evidence respecting its objections." Lionel Corp., 722 F.2d at 1071.

33.    As a rule, the debtor's business judgment "should be approved by the court unless it is shown to be 'so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice.'" In re Aerovox, Inc., 269 B.R. 74, 81 (Bankr. D. Del. 2001) (quoting In re Interco, Inc., 128 B.R. 229, 234 (Bankr. E.D. Mo. 1991)).

34.    The Debtors have demonstrably sound business reasons for entering into the IUE-CWA Settlement Agreement at this time. The IUE-CWA Settlement Agreement, which is the result of careful deliberations and extensive negotiations, includes modifications to the IUE-CWA CBAs that equitably address many of the Debtors' substantial financial, transformational, and labor relations roadblocks in a manner that will best serve the economic interests of the Debtors' estates and their stakeholders.

35.    First, once implemented, the modifications to the IUE-CWA CBAs contemplated by the IUE-CWA Settlement Agreement will generate a level of labor cost savings that will significantly improve the Debtors' ability to emerge from chapter 11 successfully.

36.     Second, the IUE-CWA Settlement Agreement provides the Debtors with the flexibility necessary to transform their operations to compete as a supplier to nearly every major global automotive original equipment manufacturer while furthering the legitimate interests of Delphi's employees, retirees, and other stakeholders.  As evidenced by the summary provided above, the IUE-CWA Settlement Agreement achieves significant cost savings through wage reductions, work rule and operational changes, and buy-outs and buy-downs that will enable Delphi to better meet its competitive challenges.  Accordingly, there is a sound business purpose for consummating the transactions contemplated in the IUE-CWA Settlement Agreement promptly.

37.     In the exercise of their business judgment, the Debtors believe that the terms of the IUE-CWA Settlement Agreement are reasonable based upon the significant benefits that they will receive, as summarized above, as well as the potential harm to the estates if the relief requested herein is not granted.[21]

H.    Approval Of The IUE-CWA Settlement Agreement Is Warranted Under Bankruptcy Rule 9019

38.     Bankruptcy Rule 9019 provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Bankruptcy Rule 9019(a).  Settlements and compromises are "a normal part of the process of reorganization."  Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. L.A. Lumber Prods. Co., 308 U.S. 106,

---

[21]   For certain of the agreements in the IUE-CWA Settlement Agreement to be implemented, the Debtors' plan of reorganization must contain provisions consistent with the IUE-CWA Settlement Agreement and the confirmation order for such plan must provide for the assumption of the IUE-CWA Settlement Agreement and the agreements referenced in Attachment E thereto under section 365 of the Bankruptcy Code.  Indeed, by its terms, the IUE-CWA Settlement Agreement itself does not constitute an assumption of the IUE-CWA CBAs.  See IUE-CWA Settlement Agreement Section H.  It is relevant to note that this undertaking by the Debtors constitutes a condition to the effectiveness of certain provisions rather than a covenant by the Debtors that might impermissibly restrict the plan of reorganization that could be prosecuted by them.

130 (1939)); In re Adelphia Communications Corp., 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005)

(decision to accept or reject settlement lies within sound discretion of bankruptcy court), adhered

to on reconsideration, 327 B.R. 175 (Bankr. S.D.N.Y. 2005).

39.     In addition, Rule 9019 applies to settlements such as the IUE-CWA

Settlement Agreement that modify (i) the terms of a collective bargaining agreement pursuant to

11 U.S.C. § 1113 and (ii) retiree benefits pursuant to 11 U.S.C. § 1114.  See Nellis v. Shugrue,

165 B.R. 115, 116-17, 121 (S.D.N.Y. 1994) (applying Bankruptcy Rule 9019 to approval of

settlement under 11 U.S.C. § 1113); In re Tower Automotive, 241 F.R.D. 162, 170 (S.D.N.Y.

2006) (applying Bankruptcy Rule 9019 to approval of settlements and compromises under 11

U.S.C. § 1114); see also In re GF Corp., 120 B.R. 421, 425 (Bankr. D. Ohio 1990) (applying

Bankruptcy Rule 9019 to settlement pursuant to 11 U.S.C. §§ 1113, 1114).[22]

40.     Approval of a compromise under Bankruptcy Rule 9019(a) is appropriate

when the compromise is fair and equitable and is in the best interests of the debtor's estate.  See,

e.g., TMT Trailer Ferry, 390 U.S. at 424; Adelphia, 327 B.R. at 159 ("The settlement need not be

the best that the debtor could have obtained.  Rather, the settlement must fall 'within the

reasonable range of litigation possibilities.'") (citations and internal quotations omitted); Nellis,

165 B.R. at 121 ("The obligation of the bankruptcy court is to determine whether a settlement is

in the best interest of an estate before approving it.")  In general, compromises in the bankruptcy

context should be approved unless they "'fall below the lowest point in the range of

---

[22]    No retiree committee was formed under section 1114 of the Bankruptcy Code in these cases because under the
Order (I) Appointing Unions As Authorized Representatives For Union Represented Retirees Under 11 U.S.C.
§§ 1114(c) And 1114(d) Or, In The Alternative, (II) Establishing Procedures For Solicitation, Nomination, And
Appointment Of Committee Of Retired Employees granted by this Court on October 13, 2005 (Docket No.
231), the IUE-CWA (and the other Unions) elected to serve and have been acting as the authorized
representative for purposes of section 1114 of the Bankruptcy Code throughout these chapter 11 cases of the
Delphi retirees who were previously represented by the Unions as active employees.

reasonableness.'"  Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983)

(citation omitted).

41.    The Supreme Court in TMT Trailer Ferry set forth the following factors

that courts should consider in determining whether a proposed settlement or compromise is in the

best interests of a debtor's estate:  (a) the probability of the debtor's success in the litigation, (b)

the difficulties associated with collection, (c) the complexity of the litigation and the attendant

expense, inconvenience, and delay, and (d) the paramount interests of the estate's creditors.

TMT Trailer Ferry, 390 U.S. at 424-25; see also Nellis, 165 B.R. at 122.

42.    Courts in this district have further elaborated on the following relevant

factors: (a) the balance between the likelihood of plaintiffs' or defendants' success should the

case go to trial vis-à-vis the concrete present and future benefits held forth by the settlement

without the expense and delay of a trial and subsequent appellate procedures, (b) the prospect of

complex and protracted litigation if the settlement is not approved, (c) the competency and

experience of counsel who support the settlement, (d) the relative benefits to be received by

individuals or groups within the class, and (e) the extent to which the settlement is truly the

product of arm's-length bargaining, and not of fraud or collusion.  Adelphia, 327 B.R. at 159-60;

accord In re Texaco Inc., 84 B.R. 893, 902 (Bankr. S.D.N.Y. 1988).

43.    The bankruptcy court need not determine that all of the foregoing criteria

favor approval of a compromise, and the proposed compromise need not be the best agreement

that the debtor could have achieved under the circumstances.  See Adelphia, 327 B.R. at 159-60;

Nellis, 165 B.R. at 123.  Instead, the court's proper role is to familiarize itself with all the facts

necessary for an intelligent and objective opinion, and determine whether the settlement is fair

and equitable.  In re Best Products Co., Inc., 168 B.R. 35, 49-51 (Bankr. S.D.N.Y. 1994).  To

that end, courts should not substitute their own judgment for that of the debtor, but rather should

"'canvass the issues'" to affirm that the proposed settlement falls above "'the lowest point in the range of reasonableness.'" <u>Adelphia</u>, 327 B.R. at 159 (quoting <u>W.T. Grant Co.</u>, 699 F.2d at 608); <u>accord</u> <u>Airline Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co.</u> (In re Ionosphere Clubs, Inc.), 156 B.R. 414, 426 (S.D.N.Y. 1993), <u>aff'd sub nom.</u> <u>Sobchack v. Am. Nat'l Bank & Trust Co.</u>, 17 F.3d 600 (2d Cir. 1994); <u>In re Best Products Co.</u>, 168 B.R. at 49-51.

44.    Given that the IUE-CWA Settlement Agreement is a resolution or settlement of the issues raised in the 1113/1114 Motion as it pertains to the IUE-CWA, it should be approved under Bankruptcy Rule 9019(a) because its terms are fair and equitable, fall well within the range of reasonableness, and are in the best interests of the Debtors, their estates, their creditors, and their stakeholders.  Most significantly, the IUE-CWA Settlement Agreement clarifies and provides certainty regarding the manner in which Delphi's labor, pension, and OPEB issues with the IUE-CWA will be resolved.

45.    Moreover, the Court is not required to find that the terms of the settlement are the most favorable that the Debtors could have obtained in order to approve the IUE-CWA Settlement Agreement.  <u>In re W.T. Grant Co.</u>, 699 F.2d at 608 (noting that court is only required to "see whether the settlement falls below the lowest point in the range of reasonableness") (citation omitted); <u>Nellis</u>, 165 B.R. at 123; <u>In re Best Products Co.</u>, 168 B.R. at 49-51.

46.    And, as recognized by this Court on various occasions, a consensual resolution to the Debtors' need to reduce labor costs is in the best interests of the Debtors' estates. <u>See, e.g.,</u> May 12, 2006 Hearing Transcript at pp. 201-02 (noting that representatives of Delphi and Unions, rather than Court, are the most important in an 1113/1114 proceeding, and urging parties to reach good-faith agreement).  Consensual agreements are recognized generally as a normal part of the reorganization process and as beneficial to the estate in part because of the inevitable reduction in administrative costs and other burdens associated with protracted

litigation.  This is especially the case here, given the thousands of employees and retirees who

would be affected by the non-consensual modifications proposed in the 1113/1114 Motion,

should that motion ultimately be granted by the Court.  See, e.g., TMT Trailer Ferry, Inc., 390

U.S. at 424 ("[c]ompromises are a normal part of the process of reorganization."); Nellis, 165

B.R. at 123 (stating "the general rule that settlements are favored and, in fact, encouraged by the

bankruptcy approval process").

## Notice Of Motion

47.     Notice of this Motion has been provided in accordance with the Amended

Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m),

9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case

Management, And Administrative Procedures, entered by this Court on October 26, 2006

(Docket No. 5418), and the Supplemental Order Under 11 U.S.C. Sections 102(1) And 105 And

Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And

Certain Notice, Case Management, And Administrative Procedures (Docket No. 2883).  The

Debtors have also provided an informational notice of this Motion, a copy of which is attached

hereto as Exhibit 1, as a courtesy to all of the IUE-CWA-represented employees and IUE-CWA-

represented retirees affected by this Motion.  In light of the relief requested, the Debtors submit

that no other or further notice is necessary.

## Memorandum Of Law

48.     Because the legal points and authorities upon which this Motion relies are

incorporated herein, the Debtors respectfully request that the requirement of service and filing of

a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an

order pursuant to 11 U.S.C. §§ 363, 1113, and 1114 of the Bankruptcy Code and Fed. R. Bankr.

P. 6004 and 9019 (i) approving the IUE-CWA Settlement Agreement, (ii) authorizing the

withdrawal without prejudice of the Debtors' 1113/1114 Motion solely as it pertains to the IUE-

CWA and approving the parties' settlement of the 1113/1114 Motion solely as it pertains to the

IUE-CWA, (iii) authorizing the Debtors' modification of retiree welfare benefits for certain IUE-

CWA-represented retirees of the Debtors, and (iv) granting the Debtors such other and further

relief as is just.

Dated:       New York, New York
             August 6, 2007
                                   SKADDEN, ARPS, SLATE, MEAGHER
                                    & FLOM LLP

                           By:      /s/ John Wm. Butler, Jr.
                                   John Wm. Butler, Jr. (JB 4711)
                                   John K. Lyons (JL 4951)
                                   Ron E. Meisler (RM 3026)
                                   333 West Wacker Drive, Suite 2100
                                   Chicago, Illinois 60606
                                   (312) 407-0700

                                      - and -

                           By:      /s/ Kayalyn A. Marafioti
                                   Kayalyn A. Marafioti (KM 9632)
                                   Thomas J. Matz (TM 5986)
                                   Four Times Square
                                   New York, New York 10036
                                   (212) 735-3000

                                      - and-

                                   O'MELVENY & MYERS LLP

                           By:      /s/ Tom A. Jerman
                                   Tom A. Jerman (TJ 1129)
                                   Jessica Kastin (JK 2288)
                                   1625 Eye Street, NW
                                   Washington, DC 20006
                                   (202) 383-5300

                                   Attorneys for Delphi Corporation, et al.,
                                    Debtors and Debtors-in-Possession

**A COMPLETE COPY OF DELPHI'S
COURT PAPERS, INCLUDING THE
MEMORANDUM OF UNDERSTANDING,
CAN BE OBTAINED AT
WWW.DELPHIDOCKET.COM OR BY
CALLING 1-888-249-2691**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
In re                                     :       Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :       Case No. 05-44481 (RDD)
                                          :
                      Debtors. :       (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

INFORMATIONAL NOTICE OF EXPEDITED MOTION FOR ORDER APPROVING
MEMORANDUM OF UNDERSTANDING AMONG IUE-CWA, DELPHI, AND GENERAL
MOTORS CORPORATION INCLUDING MODIFICATION OF IUE-CWA COLLECTIVE
BARGAINING AGREEMENTS AND RETIREE WELFARE BENEFITS FOR CERTAIN IUE-
CWA-REPRESENTED RETIREES

INFORMATION FOR IUE-CWA-REPRESENTED
EMPLOYEES AND RETIREES OF DELPHI CORPORATION

On August 6, 2007, Delphi Corporation and certain of its affiliated debtors and
debtors-in-possession ("Delphi"), filed the **Expedited Motion For Order Under 11 U.S.C. §§ 363,
1113, and 1114 and Fed. R. Bankr. P. 6004 and 9019 Approving Memorandum of
Understanding Among IUE-CWA, Delphi, and General Motors Corporation, Including
Modification of IUE-CWA Collective Bargaining Agreements and Retiree Welfare Benefits For
Certain IUE-CWA-Represented Retirees** (the "Motion"), which seeks bankruptcy court approval
(subject to ratification by the IUE-CWA) of a memorandum of understanding dated August 5, 2007
(the "Agreement" or "Memorandum of Understanding") among Delphi, General Motors, and the
IUE-CWA regarding Delphi's restructuring.

On August 16, 2007 at 10:00 a.m., the United States Bankruptcy Court (the "Court")
for the Southern District of New York will conduct a hearing on approval of the Agreement.

If approved by the Court (and ratified by IUE-CWA), the Agreement will go into
effect.  The Agreement provides, among other terms, that:

(A)     Effective upon the later of entry of this Court's approval order in respect of
        the Motion or the first Monday following receipt of written notice of
        ratification from the IUE-CWA:

        • The terms of the IUE-CWA CBAs are extended until October 12,
          2011;

- A site plan is implemented with respect to each of 7 IUE-CWA-Delphi plants which includes, at certain sites, specific revenue program and production commitments from Delphi and/or GM and pursuant to which Delphi will retain ownership and operations in three facilities, two facilities will be sold or transferred to a third party, and two facilities will be closed;

- A workforce transition program is implemented for traditional IUE-CWA-represented employees that provides eligible employees with transformation plan options including (1) attrition options similar to the previously-approved IUE-CWA attrition program, (2) special employee placement opportunities for eligible Delphi employees who do not elect the attrition options, including relocation allowances of up to $67,000 in certain circumstances when specific plants cease production, (3) provision of lump sum "buy-down" payments totaling up to $105,000 for eligible employees who do not elect the attrition option or become employed by GM and continue to work for Delphi under the terms of the Agreement, and (4) severance payments up to $40,000 to eligible employees who are permanently laid off prior to October 12, 2011;

- Certain terms of the IUE-CWA CBAs are modified with respect to wages and benefits for certain employees including vacation entitlement, life insurance, extended disability benefits, supplemental unemployment benefits, paid holidays, and healthcare;

- Certain terms of the IUE-CWA CBAs are modified with respect to provisions covering hiring requirements, existing JAC/Legal Services,[1] temporary employees, Appendix F, GIS, AOL, LJISA, and other matters described in Attachment E to the Memorandum of Understanding;

- Local negotiations for all Keep and Footprint sites conducted concurrently with the negotiations resulting in the Agreement are final and binding upon ratification of the Agreement;

- All employee, retiree, and union asserted and unasserted claims are settled (except for waiver of rights to vested pension benefits, workers compensation benefits, unemployment compensation benefits, and pending ordinary course grievances of employees remaining in the workforce); and

---

[1]    Capitalized terms used and not defined in this informational notice have the meanings set forth in the Agreement.

- The IUE-GM National Joint Skill Development and Training Committee will quitclaim any rights to the JAC Building to the IUE-CWA International or to an agreed upon not-for-profit entity.

(B)    Effective upon the execution by Delphi and GM of a comprehensive settlement agreement resolving certain financial, commercial, and other matters between Delphi and GM and substantial consummation of a plan of reorganization proposed by Delphi in its chapter 11 cases and confirmed by this Court which incorporates, approves, and is consistent with all of the terms of the Agreement and Delphi-GM settlement:

- Delphi's obligation to provide certain retiree welfare benefits is eliminated and GM is obligated to provide certain retiree welfare benefits for certain IUE-CWA-represented employees covered as provided in the Benefit Guarantee Term Sheet;

- A transfer of certain pension assets and liabilities from Delphi's pension plans to GM's pension plans is effectuated pursuant to Internal Revenue Code Section 414(l);

- Delphi's existing pension plan is frozen in certain respects effective upon emergence from chapter 11 and GM is obligated to pay certain benefits for certain IUE-CWA-represented employees covered as provided in the Benefit Guarantee Term Sheet;

- The IUE-CWA will receive an allowed general unsecured prepetition claim against Delphi in the amount of $126 million in complete settlement of all asserted and unasserted IUE-CWA claims, including, but not limited to, IUE-CWA/Delphi Joint Activities Center (the "JAC") asserted and unasserted claims ("the Allowed Claim").  The proceeds realized by the IUE-CWA and/or the VEBA trust, from a $26 million dollar portion of the Allowed Claim will be paid directly to a voluntary employees' beneficiary association (VEBA) trust to be established and sponsored by the IUE-CWA to provide supplemental retiree health insurance to certain eligible Delphi employees and their dependents; the proceeds realized by the IUE-CWA and/or the VEBA trust, from a $90 million dollar portion of the Allowed Claim will be paid directly to a VEBA trust to be established and sponsored by the IUE-CWA for the purpose of funding employee benefits for active and retired employees and their dependents; and the proceeds realized by the IUE-CWA and/or a VEBA trust, from a $10 million dollar portion of the Allowed Claim will be paid directly to the successor to the JAC entity which will be established and administered by the IUE-CWA;

- The Memorandum of Understanding (including the IUE-CWA CBAs) is assumed pursuant to 11 U.S.C. § 365;

-3-

- The IUE-CWA released parties are exculpated and released in connection with the Memorandum of Understanding and Delphi's chapter 11 cases; and

- Delphi and GM receive releases from the IUE-CWA, all employees and former employees of Delphi represented or formerly represented by the IUE-CWA, and all persons or entities with claims derived from or related to any relationship with such employees of Delphi arising directly or indirectly from or in any way related to any obligations under the collective bargaining agreements or the Memorandum of Understanding (except for claims for benefits provided for or explicitly not waived under the Memorandum of Understanding, including, but not limited to, workers' compensation benefits against Delphi, its subsidiaries, or affiliates that are otherwise assertable under applicable law).

This list is only a summary of some of the terms of the Agreement and is qualified entirely by and is subject to the actual terms and conditions of the Agreement. A complete copy of Delphi's court papers, including the Memorandum of Understanding, can be obtained at www.delphidocket.com or by calling 1-888-249-2691. Delphi's plan of reorganization will be considered by the Court at a later time and you will receive notice about that proceeding.

A copy of the notice of the Motion is attached hereto.

Dated:       New York, New York
             August 6, 2007

                              SKADDEN, ARPS, SLATE, MEAGHER
                               & FLOM LLP

                         By:      /s/ John Wm. Butler, Jr.
                                 John Wm. Butler, Jr. (JB 4711)
                                 John K. Lyons (JL 4951)
                                 Ron E. Meisler (RM 3026)
                                  333 West Wacker Drive, Suite 2100
                                  Chicago, Illinois 60606
                                  (312) 407-0700

                                    - and -

                         By:      /s/ Kayalyn A. Marafioti
                                 Kayalyn A. Marafioti (KM 9632)
                                 Thomas J. Matz (TM 5986)
                                  Four Times Square
                                  New York, New York 10036
                                  (212) 735-3000

                                    - and-

-4-

O'MELVENY & MYERS LLP

By: /s/ Tom A. Jerman
    Tom A. Jerman (TJ 1129)
    Jessica Kastin (JK 2288)
    1625 Eye Street, NW
    Washington, DC 20006
    (202) 383-5300

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

**Hearing Date And Time: August 16, 2007 at 10:00 a.m.**
**Objection Deadline: August 13, 2007 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

     -and-

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

     -and-

O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300
Tom A. Jerman (TJ 1129)
  Jessica Kastin (JK 2288)


Attorneys for Delphi Corporation, et al.,
   Debtor and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698
Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                     :
     In re                  :    Chapter 11
                     :
DELPHI CORPORATION, et al.,  :    Case No. 05-44481 (RDD)
                     :
             Debtors. :    (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF EXPEDITED MOTION FOR ORDER UNDER 11 U.S.C. §§ 363, 1113, AND 1114
AND FED. R. BANKR. P. 6004 AND 9019 APPROVING MEMORANDUM OF UNDERSTANDING
AMONG IUE-CWA, DELPHI, AND GENERAL MOTORS CORPORATION
INCLUDING MODIFICATION OF IUE-CWA COLLECTIVE BARGAINING AGREEMENTS
AND RETIREE WELFARE BENEFITS FOR CERTAIN IUE-CWA-REPRESENTED RETIREES

PLEASE TAKE NOTICE that on August 6, 2007, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), filed an Expedited Motion For Order Under 11 U.S.C. §§ 363, 1113, And 1114 And Fed. R. Bankr. P. 6004 And 9019 Approving Memorandum Of Understanding Among IUE-CWA, Delphi, And General Motors Corporation Including Modification Of IUE-CWA Collective Bargaining Agreements And Retiree Welfare Benefits For Certain IUE-CWA-Represented Retirees (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of the Motion will be held on August 16, 2007 at 10:00 a.m. (prevailing Eastern time) (the "Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, entered March 20, 2006 (Docket No. 2883) (the "Supplemental Case Management Order") and the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, entered October 26, 2006 (Docket No. 5418) (together with the Supplemental Case Management Order, the "Case Management Orders"), (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable

2

Document Format (PDF), WordPerfect, or any other Windows-based word processing format),

(d) be submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain,

United States Bankruptcy Judge, and (e) be served upon (i) Delphi Corporation, 5725 Delphi

Drive, Troy, Michigan 48098 (Att'n:  General Counsel), (ii) counsel to the Debtors, Skadden,

Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606

(Att'n:  John Wm. Butler, Jr.), O'Melveny & Myers LLP, 1625 Eye Street, NW, Washington, DC

20006 (Att'n:  Tom A. Jerman), and Groom Law Group, Chartered, 1701 Pennsylvania Avenue

NW Washington, DC 20006 (Att'n:  Lonie Hassel), (iii) counsel for the agent under the

postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New

York 10017 (Att'n:  Donald Bernstein and Brian Resnick), (iv) counsel for the official committee

of unsecured creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York

10022 (Att'n:  Robert J. Rosenberg and Mark A. Broude), (v) counsel for the official committee

of equity security holders, Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza,

New York, New York 10004 (Att'n:  Bonnie Steingart), (vi) the Office of the United States

Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New

York 10004 (Att'n:  Alicia M. Leonhard), and (vii) counsel to the IUE-CWA, Kennedy, Jennick

& Murray, P.C., 113 University Place, 7th Floor, New York, New York 10003 (Att'n: Thomas

Kennedy) in each case so as to be **received** no later than **4:00 p.m. (prevailing Eastern time)** on

**August 13, 2007** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth

herein and in accordance with the Case Management Orders will be considered by the

Bankruptcy Court at the Hearing.  If no objections to the Motion are timely filed and served in

accordance with the procedures set forth herein and the Case Management Orders, the

Bankruptcy Court may enter a final order granting the Motion without further notice.

Dated:    New York, New York
          August 6, 2007

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By:    /s/ John Wm. Butler, Jr.
       John Wm. Butler, Jr. (JB 4711)
       John K. Lyons (JL 4951)
       Ron E. Meisler (RM 3026)
       333 West Wacker Drive, Suite 2100
       Chicago, Illinois 60606
       (312) 407-0700

              - and -

By:    /s/ Kayalyn A. Marafioti
       Kayalyn A. Marafioti (KM 9632)
       Thomas J. Matz (TM 5986)
       Four Times Square
       New York, New York 10036
       (212) 735-3000

              - and-

O'MELVENY & MYERS LLP

By:    /s/ Tom A. Jerman
       Tom A. Jerman (TJ 1129)
       Jessica Kastin (JK 2288)
       1625 Eye Street, NW
       Washington, DC 20006
       (202) 383-5300

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                          :
    In re                        :        Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :        Case No. 05-44481 (RDD)
                                          :
            Debtors.          :        (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ORDER UNDER 11 U.S.C. §§ 363, 1113, AND 1114 AND FED. R. BANKR. P.
6004 AND 9019 APPROVING MEMORANDUM OF UNDERSTANDING AMONG
IUE-CWA, DELPHI, AND GENERAL MOTORS CORPORATION INCLUDING
MODIFICATION OF IUE-CWA COLLECTIVE BARGAINING AGREEMENTS AND
RETIREE WELFARE BENEFITS FOR CERTAIN IUE-CWA-REPRESENTED RETIREES

("IUE-CWA 1113/1114 SETTLEMENT APPROVAL ORDER")

Upon the expedited motion ("IUE-CWA 1113/1114 Settlement Approval Motion"

or the "Motion"), dated August 6, 2007, of Delphi Corporation ("Delphi") and certain of its

subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), for an order under 11 U.S.C. §§ 363, 1113, and 1114 of the

Bankruptcy Code and Fed. R. Bankr. P. 6004 and 9019 approving (i) a memorandum of

understanding regarding Delphi's restructuring entered into among the International Union of

Electronic, Electrical, Salaried, Machine and Furniture Workers-Communication Workers of

America ("IUE-CWA"), Delphi, and General Motors Corporation ("GM"), dated August 5, 2007

(with the attachments thereto, the "IUE-CWA Settlement Agreement" or the "Memorandum of

Understanding"), that (a) modifies, extends, or terminates provisions of the existing collective

bargaining agreements among Delphi, the IUE-CWA, and its various locals (the "IUE-CWA

CBAs") and (b) provides that Delphi and GM will undertake certain financial obligations to

Delphi's IUE-CWA-represented employees and retirees to facilitate these modifications, (ii)

withdrawal without prejudice of the Debtors' Motion For Order Under 11 U.S.C. § 1113(c)

Authorizing Rejection Of Collective Bargaining Agreements And Under 11 U.S.C. § 1114(g)

Authorizing  Modification Of Retiree Welfare Benefits, dated March 31, 2006 (the "1113/1114

Motion") solely as it pertains to the IUE-CWA and approving the parties' settlement of the

1113/1114 Motion solely as it pertains to the IUE-CWA, and (iii) modification of retiree welfare

benefits for certain IUE-CWA-represented retirees of the Debtors, all as more fully set forth in

the IUE-CWA 1113/1114 Settlement Approval Motion; and the only remaining conditions to the

effectiveness of the IUE-CWA Settlement Agreement pursuant to Section H.1 thereof being

ratification of the IUE-CWA Settlement Agreement by IUE-CWA membership and this Court's

entry of an approval order satisfactory in form and substance to the IUE-CWA, GM, and Delphi;

and this Court having been advised by counsel to the IUE-CWA, GM, and Delphi that the form

and substance of this Order is satisfactory to each of the IUE-CWA, GM, and Delphi as required

by Section H.1 of the IUE-CWA Settlement Agreement; and this Court having determined that

the relief requested in the Motion is in the best interests of the Debtors, their estates, their

creditors, and other parties-in-interest; and it appearing that proper and adequate notice of the

Motion has been given and that no other or further notice is necessary; and after due deliberation

thereon; and good and sufficient cause appearing therefor, it is hereby

       ORDERED, ADJUDGED, AND DECREED THAT:

       1.      The Motion is GRANTED.

       2.      The Debtors are hereby authorized to enter into the IUE-CWA Settlement

Agreement, a copy of which is attached hereto as Exhibit 1, and to implement the terms of such

IUE-CWA Settlement Agreement.

3.     Each of the signatories to the IUE-CWA Settlement Agreement (each such party, a "Signatory," and collectively, the "Signatories") is directed to take all actions necessary or appropriate to effectuate the terms of this order and the terms of the IUE-CWA Settlement Agreement, including, without limitation, any and all actions necessary or appropriate to such Signatory's implementation of and performance under the IUE-CWA Settlement Agreement.

4.     The IUE-CWA Settlement Agreement is binding on the Debtors, GM, and the IUE-CWA subject to its terms and constitutes a valid and binding amendment to the IUE-CWA CBAs with authorized representatives of all individuals who were or are in a bargaining unit represented by the IUE-CWA, as permitted by section 1113 of the Bankruptcy Code and the IUE-CWA CBAs as amended, or otherwise, and the IUE-CWA CBAs, in accordance with the IUE-CWA Settlement Agreement, are binding on the Debtors and the IUE-CWA.

5.     The IUE-CWA Settlement Agreement constitutes a valid and binding amendment to existing retiree health and welfare benefits, as permitted by section 1114 of the Bankruptcy Code, or otherwise.

6.     Notice of the IUE-CWA 1113/1114 Settlement Approval Motion was properly and timely served in accordance with the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered on October 26, 2006 (Docket No. 5418), the Supplemental Order Under 11 U.S.C. Sections 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered on March 17, 2006 (Docket No. 2883), and by service upon (a) the IUE-CWA, 501 Third Street, NW Washington, D.C.  20001-2797, (b) counsel to the IUE-

3

CWA, Kennedy Jennik & Murray, P.C., 113 University Place, 7th Floor, New York, New York

10003, and (c) the active Delphi hourly employees and hourly retirees who are represented by

the IUE-CWA at their individual addresses, pursuant to an informational form of notice, a copy

of which was attached to the IUE-CWA 1113/1114 Settlement Approval Motion as Exhibit 1.

   7.  The Debtors are authorized to withdraw, without prejudice, their

1113/1114 Motion solely as it pertains to the IUE-CWA.  The 1113/1114 Motion is settled solely

as it pertains to the IUE-CWA.

   8.  The IUE-CWA shall receive an allowed general unsecured prepetition

claim against Delphi in the amount of $126 million in complete settlement of all asserted and

unasserted IUE-CWA claims, including, but not limited, to IUE-CWA/Delphi Joint Activities

Center (the "JAC") asserted and unasserted claims (the "Allowed Claim").  The proceeds

realized by the IUE-CWA and/or the VEBA Trust (as defined below) from a $26 million dollar

portion of the Allowed Claim, shall be paid directly to a voluntary employees' beneficiary

association trust ("VEBA Trust") to be established and sponsored by the IUE-CWA to provide

supplemental retiree health insurance to certain eligible Delphi employees and their dependents;

the proceeds realized by the IUE-CWA and/or the VEBA Trust from a $90 million dollar portion

of the Allowed Claim, shall be paid directly to a VEBA Trust to be established and sponsored by

the IUE-CWA for the purpose of funding employee benefits for active and retired employees and

their dependents; and the proceeds realized by the IUE-CWA and/or a VEBA Trust from a $10

million dollar portion of the Allowed Claim, shall be paid directly to the successor to the JAC[1]

entity which shall be established and administered by the IUE-CWA.

---

[1]  Capitalized terms used and not otherwise defined herein shall have the meanings ascribed
to  them in the Memorandum of Understanding.

4

9.      Debtors, GM, and Delphi will cause the IUE-GM National Joint Skill

Development and Training Committee to quitclaim any rights to the JAC Building to the IUE-

CWA International or to an agreed upon not-for-profit entity and the IUE-CWA and Delphi shall

cause the IUE-CWA-Delphi Joint Activities Center to agree to and assist with this transfer.

10.      As a condition precedent to the effectiveness of certain obligations of the

parties pursuant to Section H.2 of the IUE-CWA Settlement Agreement and as provided in

Section H.3 of the IUE-CWA Settlement Agreement, any Debtors' plan of reorganization (the

"Delphi Reorganization Plan") that is consistent with the IUE-CWA Settlement Agreement and

any confirmation order entered into with respect to such plan shall include the following

provisions:

(a)      On the effective date of the Delphi Reorganization Plan, the IUE-CWA, all employees and former employees of Delphi represented or formerly represented by the IUE-CWA, and all persons or entities with claims derived from or related to any relationship with such employees or former employees of Delphi, shall waive and release and be deemed to have waived and released any and all claims of any nature, whether liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, existing and/or arising in the future against Delphi, its subsidiaries, or affiliates, the Delphi HRP, the Delphi Health Care Program for Hourly Employees and the Delphi Life and Disability Benefits Program for Hourly Employees, GM, its subsidiaries or affiliates, the GM HRP, the GM Health Care Program for Hourly Employees, and the GM Life and Disability Benefits Program for Hourly Employees, and the officers, directors, employees, fiduciaries, and agents of each, arising directly or indirectly from or in any way related to any obligations under the IUE-CWA CBAs and the collective bargaining agreements between GM and the IUE-CWA related to such employees and the IUE-CWA-GM-Delphi Memorandum of Understanding regarding pension and other matters concerning the employment of GM employees with Delphi Automotive Systems related to such employees (provided, however, that claims for benefits provided for or explicitly not waived under the provisions of the IUE-CWA Settlement Agreement (including, but not limited to, workers' compensation benefits against Delphi, its subsidiaries, or affiliates that are

5