a.  Current employees and retirees eligible to receive post-retirement
    health care and employer paid basic life insurance in retirement
    from GM in accordance with Attachment B

    Employees who can attain eligibility to receive post-retirement
    health care and employer paid basic life insurance in retirement
    from GM under the Term Sheet are not eligible to receive credits in
    the Post-Employment Health Care Account described in paragraph
    D.4.b. below.

    Applicable terms and conditions, related to post-retirement health
    care coverage, of Supplemental Agreement Covering Health Care
    Program, Exhibit C and post-retirement life insurance coverage, of
    Supplemental Agreement Covering Life and Disability Benefits,
    Exhibit B of the agreement between Delphi and the International
    Brotherhood of Electrical Workers, Local 663, will be eliminated or
    modified accordingly as of the effective date of the Term Sheet –
    Delphi Cessation and GM Provision of OPEB (Attachment B).

b.  Current employees who are bought down and who are not eligible
    for post-retirement health care and employer paid basic life
    insurance in retirement from GM in accordance with the Term
    Sheet, and all new employees hired on or after the Effective Date of
    this Agreement

    As of January 1, 2008, current employees who are bought down
    and who are not eligible to receive post-retirement health care and
    employer paid basic life insurance from GM in accordance with the
    Term Sheet, and all employees hired after the date, will be eligible
    for the following:

    1)  Upon retirement from Delphi, employees will be able to continue
        any health care coverages then in effect for themselves and any
        eligible dependents by paying the full cost of any coverages
        continued. Delphi will make such coverages available at "group
        rates".

    2)  Delphi will provide a Post-Retirement Health Care Account that
        can be used to pay for continued coverages. Delphi will credit
        each eligible employee's account with $0.50 for every
        compensated hour during employment. Newly hired employees
        are immediately eligible for such credits on date of hire. For
        bought down employees, eligibility for such credits will
        commence with the buy down on January 1, 2008.

3) Hours for which employees will receive the credit generally
include any time for which they receive pay, including straight-
time hours, for such things as:

    i.   Bereavement Pay;
    ii.  Call-in Pay;
    iii. Holiday Pay;
    iv. Jury Duty;
    v.  Overtime;
    vi. Short-term Military Duty; and
    vii. Vacation.

4) The Post-Retirement Health Care Account will also be credited
with interest on an annual basis. The interest rate is that for the
30-year U.S. Treasury Bond at the end of each year. Any
interest will be credited based on the accrued balance at the
end of each calendar year and will be recorded no later than
May 1 of each year. This credit balance continues to accrue
until the employee retires or dies, at which time all credits and
interest will cease to accrue.

5) At that point the retiree or eligible surviving spouse may begin to
draw down the balance. Credits may only be used to pay for the
cost of health care coverages continued through Delphi or
health care coverages that are purchased on an individual basis
or through another group.

6) This credit balance has no cash value, may not be transferred
and may only be used to pay for health care coverages. Delphi
contributes cash to the account only when a claim for
reimbursement is made. If an employee leaves Delphi without
retiring, the balance will be forfeited.

7) If the employee dies in retirement status, or after becoming
eligible to retire voluntarily under the Delphi HRP, the
employee's eligible surviving spouse and eligible dependents
will continue to have access to Delphi group coverages on a
self-pay basis. Such coverages may be paid for using any
remaining balance in the Post-Retirement Health Care Account.

8) A surviving spouse age 65 or older who is eligible, but is not
enrolled for Medicare Part B coverage, is not eligible to draw
upon the Post-Retirement Health Care Account. Coverages may
be continued on a self-paid basis until Medicare Part B
coverage is obtained. After enrollment in Part B, the surviving

spouse may draw upon the account while Medicare Part B enrollment is maintained.

All Miscellaneous Program Documents and Unpublished Letters will be conformed to the administration of the provisions described above.

5. <u>Independence Week (Paragraphs 56 (n) through 56(r) of the 2003 IBEW – Delphi E&C – Milwaukee Agreement)</u>

Independence Week Pay, any overtime premiums related to working on any day during Independence Week (except the Independence Day holiday itself) and Additional Time Off related to working during Independence Week will be eliminated. Employees who are not scheduled to work during the Independence Week period shall have the option to use Vacation Entitlement hours, if available, or be granted an unpaid leave of absence for such period.

6. <u>Holiday Schedule</u>

Delphi and the IBEW agree to adopt the same specified holidays as agreed to by General Motors and the UAW through September 14, 2011 (not including any paid Independence Week days except for the specified Independence Day holiday itself).

7. <u>Vacation Accrual</u>

Effective January 1, 2008, eligible employees who have worked at least 26 pay periods in the eligibility year shall be entitled to the following vacation entitlement

| For an Eligible Employee With Seniority of: | Hours of Vacation Entitlement (40 hours – Restricted) |
|---|---|
| Less than one year | 40 |
| One but less than three years | 60 |
| Three but less than five years | 80 |
| Five but less than ten years | 100 |
| Ten but less than 15 years | 120 |
| Fifteen but less than 20 years | 140 |
| Twenty or more years | 160 |

The existing Percent of Qualified Earnings schedule for calculating vacation pay in Paragraph 56(c) of the 2003 IBEW – Delphi E&C – Milwaukee Agreement will be retained.

8. Existing Agreements

The IBEW – Delphi Powertrain – Milwaukee Agreements, as modified by this Agreement, shall supersede and control all agreements between the IBEW and Delphi Powertrain.

Upon execution of this Agreement by the Parties, any provisions of the IBEW – Delphi Powertrain Agreements which are inconsistent with this Agreement shall be deemed to have been eliminated if no longer applicable as provided by the specific terms of this Agreement, or modified as necessary so as not to conflict with the agreements in this Agreement.

9. Plant Closing Restrictions

The IBEW and Delphi agree that any restrictions on Delphi's right to close the Milwaukee – Powertrain operations as planned are eliminated.

10. GIS

The IBEW and Delphi agree that the Guaranteed Income Stream (GIS) Program (Exhibit D to the 2003 IBEW – Delphi E&C - Milwaukee Agreement) is eliminated.

11. Job Security and/or Guaranteed Employment Levels

The IBEW and Delphi agree that Supplement J (Memorandum of Understanding – Employment Security), and Items 24 (JOBS Bank Overtime) and 25 (JOBS Bank – Funding Limit) in the General Local Demands attached to the 2003 IBEW – Delphi E&C – Milwaukee Agreement, and all other agreements related to job security and/or guaranteed employment levels are eliminated.  Nothing in this provision or any other provision of this Agreement shall be construed to alter the status of employees who elect to participate in the pre-retirement program under Paragraph B.1.a.3 of this Agreement.

12. Supplement B (Tuition Assistance Plan)

The IBEW and Delphi agree that Supplement B (Tuition Assistance Plan) attached to the 2003 IBEW – Delphi E&C – Milwaukee Agreement and any other agreements related to Corporation-paid tuition assistance, scholarships or similar programs, are eliminated.

13. Subsidized Discount Programs

The IBEW and Delphi agree that any provisions of the IBEW – Delphi Powertrain Agreements that require expenditures by Delphi for personal items shall be eliminated, such as, but not limited to, discount programs subsidized by Delphi, e.g., AOL. Personal protective equipment (PPE) will still be provided. Supplier and/or customer provided discounts are provided to Delphi employees at their discretion.

14. <u>Strikes and Stoppages</u>

The IBEW and Delphi agree that Paragraphs 67 and 68 of the 2003 IBEW – Delphi E&C – Milwaukee Agreement shall be modified to read:

"67. During the life of this Agreement, Management will not lock out any employees of the bargaining unit."

"68. During the life of this Agreement, the Union will not cause or permit its members to cause, nor will any member of the Union take part in any sit-down, stay-in or slow-down, at the Company, or any curtailment of work or restriction of production or interference with production of the Company. The Union will not cause or permit its members to cause, nor will any member of the Union take part in, any strike or stoppage of any of the Company's operations or picket the plant or premises. Management reserves the right to discipline any employee taking part in any violation of this Section of the Agreement."

## E. SETTLEMENT OF ALL EMPLOYEE, RETIREE, AND UNION ASSERTED AND UNASSERTED CLAIMS

The Parties agree to the following in partial consideration for the IBEW entering into this Agreement and in consideration for the releases to be provided pursuant to Section F:

1. Individual settlements pursuant to Transformation Program terms and conditions.

2. There shall be no waiver of rights, if any, to vested pension benefits, workers compensation benefits and unemployment compensation benefits. The right to pursue pending ordinary course grievances shall continue except for employees who have signed individual releases of claims.

3. All other consideration and concessions provided by Delphi and GM under the terms of this Agreement and all attachments to this Agreement.

The Parties also acknowledge that (i) the consideration provided by GM pursuant to this Agreement and all attachments to this Agreement constitutes a substantial contribution to Delphi's plan of reorganization, (ii) this contribution is necessary to the success of Delphi's plan of reorganization, and (iii) GM would not have made this contribution without obtaining the waivers and releases provided for herein.  The Parties further acknowledge that nothing in the preceding sentence shall give rise to or entitle GM to seek or be allowed any claim against or consideration from any entity, including Delphi, other than as specifically approved by the Bankruptcy Court as agreed to by Delphi and GM in a comprehensive settlement agreement resolving the financial, commercial, and other matters between them.

## F. EFFECTIVE DATES AND BANKRUPTCY PROCEEDINGS

1. Subject to its terms and conditions, this Agreement is a final, binding and conclusive commitment and agreement that will be effective on the later of entry of an Order by the U.S. Bankruptcy Court approving this Agreement that is satisfactory to the IBEW, GM and Delphi (the "Approval Order"), or the first Monday following receipt by Delphi of written notice of ratification from the IBEW (the "Effective Date").  The ratification process will commence as soon as practical following the date of this Agreement. In connection with Delphi's prosecution of a motion to obtain entry of the Approval Order in the Bankruptcy Court, (a) Delphi shall use its best efforts to file a motion for approval of this Agreement in form and substance reasonably acceptable to the Parties to be heard not later than the first monthly omnibus hearing at which the motion can be considered under the case management orders entered in the Bankruptcy Court, (b) Delphi shall provide, to the extent reasonably practicable, both the IBEW and GM with copies of, and a reasonable opportunity to comment on, all motions, applications, proposed orders, pleadings and supporting papers prepared by Delphi for filing with the bankruptcy court relating to court approval of this Agreement, and (c) the Parties shall support the approval of this Agreement in the Bankruptcy Court without condition, qualification or exception.

2. The parties acknowledge that the following provisions of this Agreement will not become effective until all of the following events have occurred and as of the date when the last of such events shall have occurred:  (a) execution by Delphi and GM of a comprehensive settlement agreement resolving the financial, commercial, and other matters between them and (b) the substantial consummation of a plan of reorganization proposed by Delphi in its chapter 11 cases and confirmed by the Bankruptcy Court which incorporates, approves and

is consistent with all of the terms of this Agreement and the comprehensive settlement agreement between Delphi and GM:

   a. Delphi pension freeze (Section D.2)
   b. Cessation of Delphi OPEB (Section C, D.4 and Attachment B)
   c. Provision of GM OPEB (Section C, D.4 and Attachment B)

3. The Parties agree that the order of the Bankruptcy Court approving this Agreement shall provide that any plan of reorganization consistent with this Agreement and any confirmation order entered into with respect to such plan shall include the following provisions:

   a) On the effective date of such plan of reorganization, the IBEW, all employees and former employees of Delphi represented or formerly represented by the IBEW, and all persons or entities with claims derived from or related to any relationship with such employees or former employees of Delphi, waive and release and be deemed to have waived and released any and all claims of any nature, whether liquidated, unliquidated, contingent, non-contingent, asserted or unasserted, existing and/or arising in the future against Delphi, its subsidiaries or affiliates, the Delphi HRP, the Delphi Health Care Program for Hourly Employees and the Delphi Life and Disability Benefits Program for Hourly Employees, GM, its subsidiaries or affiliates, the GM HRP, the GM Health Care Program for Hourly Employees and the GM Life and Disability Benefits Program for Hourly Employees, and the officers, directors, employees, fiduciaries, and agents of each, arising directly or indirectly from or in any way related to any obligations under the collective bargaining agreements between Delphi and the IBEW and between GM and the IBEW related to such employees (provided, however, that claims for benefits provided for or explicitly not waived under the provisions of this Agreement (including, but not limited to, claims for workers' compensation benefits and unemployment compensation benefits against Delphi, its subsidiaries or affiliates, that are otherwise assertable under law) are not waived).

   b) A plan exculpation and release provision (which provision shall be at least as comprehensive as the plan exculpation and release provision under the plan of reorganization for the debtor) for the IBEW released parties (which shall include the IBEW and each of their current or former members, officers, committee members, employees, advisors, attorneys, accountants, investment bankers, consultants, agents and other representatives) with respect to any liability such person or entity may have in connection with or related to the Delphi bankruptcy cases, the formulation,

preparation, negotiation, dissemination, implementation, administration, confirmation or consummation of any of the plan of reorganization, the disclosure statement concerning the plan of reorganization, this Agreement or the Agreements on Attachment A hereto or any contract, employee benefit plan, instrument, release or other agreement or document created, modified, amended or entered into in connection with either the plan of reorganization or any agreement between the IBEW or Delphi, or any other act taken or omitted to be taken consistent with this Agreement in connection with the Delphi bankruptcy.

c)    This Agreement and the agreements referenced in Attachment A shall be assumed under 11 U.S.C. §365.

4.    Nothing contained herein shall constitute an assumption of any agreement described herein, including, without limitation any collective bargaining agreement between the IBEW and Delphi (except as provided for in Section F.3) or any commercial agreement between GM and Delphi, nor shall anything herein be deemed to create an administrative or priority claim with respect to GM or convert a prepetition claim into a postpetition claim or an administrative expense with respect to any party.  The Parties further agree (and the Bankruptcy Court order shall also provide) that this Agreement is without prejudice to any interested party (including the parties to this Agreement and the statutory committees) in all other aspects of Delphi's Chapter 11 cases and that each Party to this Agreement reserves all rights not expressly waived herein.

5.    Unless this Agreement is consummated following all required approvals, nothing herein shall bind any of the Parties nor shall the Agreement be admissible in any judicial or other proceeding on behalf of or against any Party.

The parties, by their duly authorized officers and representatives, agree accordingly this 31st day of July, 2007.

International Brotherhood of
Electrical Workers, AFL-CIO          Delphi Corporation          General Motors Corporation

_____          _____          _____

_____          _____          _____
IBEW Local 663

_____          _____          _____

_____          _____          _____

_____          _____          _____

_____          _____          _____

_____          _____          _____

_____          _____          _____

_____          _____          _____

_____          _____          _____

_____          _____          _____

_____          _____          _____

_____          _____          _____

## Attachment A

### List of Agreements

The term "IBEW-Delphi Powertrain Agreements" shall mean the following:

- The Agreement Between Delphi Energy & Chassis Division – Milwaukee Operations and the IBEW, dated March 31, 2004, amended as necessary to conform to the provisions of the IBEW - Delphi Powertrain Memorandum of Understanding dated July 31, 2007;

- The Supplemental Agreement Covering Pension Plan, Exhibit A, to the Agreement between Delphi Energy and Chassis Division and the IBEW dated March 31, 2004, amended as necessary to conform to the provisions of the IBEW - Delphi Powertrain Memorandum of Understanding dated July 31, 2007;

- The Supplemental Agreement Covering Life and Disability Benefits Program, Exhibit B, to the Agreement between Delphi Energy and Chassis Division and the IBEW dated March 31, 2004, amended as necessary to conform to the provisions of the IBEW - Delphi Powertrain Memorandum of Understanding dated July 31, 2007;

- The Supplemental Agreement Covering Health Care Program, Exhibit C, to the Agreement between Delphi Energy and Chassis Division and the IBEW dated March 31, 2004, amended as necessary to conform to the provisions of the IBEW - Delphi Powertrain Memorandum of Understanding dated July 31, 2007;

- The Supplemental Agreement Covering Income Security Plan, Exhibit D to the Agreement between Delphi Energy and Chassis Division and the IBEW dated March 31, 2004, amended as necessary to conform to the provisions of the IBEW – Delphi Powertrain Memorandum of Understanding dated July 31, 2007;

- The Supplemental Agreement Covering Profit Sharing Plan, Exhibit F to the Agreement between Delphi Energy and Chassis Division and the IBEW dated March 31, 2004, amended as necessary to conform to the provisions of the IBEW - Delphi Powertrain Memorandum of Understanding dated July 31, 2007;

- The Supplemental Agreement Covering Personal Savings Plan, Exhibit G, to the Agreement between Delphi Energy and Chassis Division and the IBEW dated March 31, 2004, amended as necessary to conform to the provisions of the IBEW - Delphi Powertrain Memorandum of Understanding dated July 31, 2007;

- Any and all agreements, supplements, appendices, documents, memoranda, letters, minutes and understandings, published and unpublished, between Delphi Powertrain (formerly Delphi E&C) and the IBEW related to pay practices, amended as necessary to conform to the provisions of the IBEW - Delphi Powertrain Memorandum of Understanding dated July 31, 2007;

- Any and all other agreements, supplements, appendices, documents, memoranda, letters, minutes and understandings, published and unpublished, between Delphi Powertrain (formerly Delphi E&C) and the IBEW, amended as necessary to conform to the provisions of the IBEW - Delphi Powertrain Memorandum of Understanding dated July 31, 2007.

## Attachment B

### Term Sheet – Delphi Cessation and GM Provision of OPEB

1) This Term Sheet sets forth the agreement of General Motors Corporation ("GM"), Delphi Corporation, or any successor to Delphi as a result of the acquisition of substantially all the stock or assets of Delphi Corporation or a merger of Delphi Corporation, ("Delphi"), and the International Union of Operating Engineers and its Local Unions 832(S) and 18(S) ("IUOE"), the International Brotherhood of Electrical Workers and its Local Union 663 ("IBEW"), and the International Association of Machinists and Aerospace Workers and its Tool and Die Maker Lodge 78 ("IAM"), regarding Delphi's cessation of post-retirement health care benefits and employer-paid post-retirement basic life insurance benefits (hereinafter referred to as "OPEB") and GM's agreement to provide OPEB to certain retired employees currently receiving such benefits from Delphi and other active Delphi employees who may become eligible for OPEB in accordance with this Term Sheet.  Except as otherwise expressly stated herein, the terms of the respective Delphi and GM employee benefit plans and programs will govern. This Term Sheet does not, and is not intended to, constitute an employee benefit plan under the meaning of ERISA.

2) The parties acknowledge that this Term Sheet will become effective (the "Effective Date") when all of the following events have occurred and as of the date when the last of such events shall have occurred:  (a) the entry of an approval order by the Bankruptcy Court in Delphi's chapter 11 cases approving the applicable IUOE, IBEW, or IAM-Delphi-GM Memorandum of Understanding-Delphi Restructuring which incorporates (among other subject matters) this Term Sheet and approves modifications to the existing collective bargaining agreements between Delphi and the applicable union resolving any Section 1113 and 1114 motions pending in the Bankruptcy Court as between Delphi and the applicable union; (b) successful ratification by the applicable union membership of such of the agreements referred to in the preceding clause as are determined by the applicable union to require such ratification; (c) execution by Delphi and GM of a comprehensive settlement agreement resolving the financial, commercial, and other matters between them; and (d) the substantial consummation of a plan of reorganization proposed by Delphi in its chapter 11 cases (the "Plan") and confirmed by the Bankruptcy Court which incorporates, approves and is consistent with all of the terms of this Term Sheet and the comprehensive settlement agreement between Delphi and GM.

3) Pursuant to the Plan and this Term Sheet, as of the Effective Date or as soon as practicable thereafter in accordance with applicable law and administrative requirements (the "Cessation Date"), Delphi will cease to provide, offer, or have any liability for OPEB to its IUOE, IBEW, and IAM

represented hourly employees and retirees and their spouses, surviving spouses, dependents or other beneficiaries. The cessation will be administered on a "claims incurred" basis, and Delphi will therefore retain responsibility for all claims incurred but either unfiled or unpaid as of the Cessation Date. This cessation will include elimination of the Special Benefit relating to Medicare Part B.

4) As of the Cessation Date, GM agrees to provide OPEB (including the Special Benefit relating to Medicare Part B if applicable) to the IUOE, IBEW, and IAM represented Delphi hourly employees and Delphi retirees who:

    A  as of the Effective Date are retired with eligibility for OPEB;

    B.  as of the Effective Date are eligible to retire from Delphi on a normal retirement basis under Article II, section 1 of the Delphi Hourly-Rate Employees Pension Plan ("Delphi HRP") (i.e., age 65) or an early retirement basis under Article II, sections 2(a)(1), 2(a)(2) or 2(a)(3) of the Delphi HRP (i.e., 60 &10, 85 Point or 30 & Out), with OPEB under the terms of the applicable 2003 collective bargaining agreement in effect on the date immediately preceding the Effective Date; and

    C.  become eligible to retire on a normal retirement basis under Article II, section 1 of the Delphi HRP (i.e., age 65) or an early retirement basis under Article II, sections 2(a)(1), 2(a)(2) or 2(a)(3) of the Delphi HRP (i.e., 60 & 10, 85 Point or 30 & Out) or as a Total and Permanent Disability retirement under Article II, section 3 of the Delphi HRP approved both by Delphi pursuant to the procedures applicable to the Delphi HRP as of the date immediately preceding the Effective Date and approved by GM under the procedures applicable to the General Motors Hourly-Rate Employees Pension Plan ("GM HRP"), within 7 years of the Effective Date.

5) All post-retirement medical benefits provided by GM will be in accordance with all the ongoing terms, conditions and eligibility requirements of the GM Health Care Program for Hourly Employees and GM will provide the applicable level of post retirement medical benefits consistent with the terms of the Modified Plan, as defined in the settlement agreement (the "Settlement Agreement") approved by the court in the case *IUE, et al. v. General Motors Corporation (case number 2:06-cv-12151)*, on the same basis as such benefits are provided to GM-IUE-CWA hourly employees who retired from GM with eligibility to participate in the GM Health Care Program.

6) All employer-paid post-retirement Basic Life Insurance benefits provided by GM will be in accordance with all the ongoing terms, conditions and eligibility requirements of the GM Life and Disability Benefits Program for Hourly Employees and will be at the level provided for Delphi IUOE, IBEW, or IAM, as applicable, represented retirees on the date immediately preceding the

Effective Date, provided, however, that in no event shall GM be required to provide life insurance benefits at a level and scope that exceeds that being provided for similarly situated IBEW or IAM – represented hourly retirees of GM.

7) The parties agree to fully cooperate with the efficient transfer of administrative responsibilities from Delphi to GM so that the Cessation Date will be the Effective Date or as soon as possible after the Effective Date, but in no case later than 3 months after the Effective Date (unless mutually agreed to by the parties). The parties further agree that there may be differing Cessation Dates for different portions of post-retirement medical plan benefits depending on the benefit and how quickly administrative responsibilities can be transferred. The parties further agree that the Cessation Date shall not occur unless and until GM is prepared to assume responsibility for all covered claims incurred on and after the Cessation Date, in order to assure a smooth transition of the obligation.

## General Provisions

8) Delphi, GM, and the IUOE, IBEW, and IAM agree to make all collective bargaining agreement and benefit plan amendments and modifications necessary to implement and comply with the terms contained herein.

9) Employees electing a Buy Down under the applicable IUOE, IBEW, or IAM-Delphi-GM Memorandum of Understanding-Delphi Restructuring will retain eligibility for OPEB under this Term Sheet without regard to such election.

10) This Term Sheet shall not be effective unless the confirmation order approving the Plan incorporates and approves all of the terms of this Term Sheet (including the releases provided for herein), does not include terms that are inconsistent with this Term Sheet, and provides that on the Effective Date, the IUOE, IBEW, and IAM, all employees and former employees of Delphi represented or formerly represented by the IUOE, IBEW, and IAM, and all persons or entities with claims derived from or related to any relationship with such employees or former employees of Delphi, waive and be deemed to have waived any and all claims of any nature, whether liquidated, un-liquidated, contingent, non-contingent, asserted, unasserted, existing and/or arising in the future against Delphi, the Delphi HRP, the Delphi Health Care Program for Hourly Employees and the Delphi Life and Disability Benefits Program for Hourly Employees, GM, the GM HRP, the GM Health Care Program for Hourly Employees and the GM Life and Disability Benefits Program for Hourly Employees, and the officers, directors, employees, fiduciaries, and agents of each, arising from or related to any obligations of Delphi, GM and/or such employee benefits plans to provide OPEB or pension benefits, or related in any way to the amendment and freeze of the Delphi HRP, the cessation of Delphi OPEB; provided however, that claims for benefits provided for under the provisions of this Term Sheet

or ordinary course claims by participants and beneficiaries of the GM Health Care Program for Hourly Employees,  the Delphi Health Care Program for Hourly Employees and the Delphi Life and Disability Benefits Program for Hourly Employees, arising after the Effective Date based on the denial or miscalculation of benefits under such plans are not waived.  The parties acknowledge that Delphi and/or GM may seek additional waivers of other claims, other than ordinary course grievances and workers' compensation claims, in connection with the resolution of its current labor negotiations with the IUOE, IBEW, and IAM.  The parties also acknowledge that (i) the consideration provided by GM in this Term Sheet constitutes a substantial contribution to the Plan, (ii) this contribution is necessary to the success of the Plan, and (iii) GM would not have made this contribution without obtaining the releases provided for herein. The Parties further acknowledge that nothing in the preceding sentence shall give rise to or entitle GM to seek or be allowed any claim against or consideration from any entity, including Delphi, other than as specifically approved by the Bankruptcy Court as agreed to by Delphi and GM in a comprehensive settlement agreement resolving the financial, commercial, and other matters between them.

## Attachment C

### Delphi-GM- IBEW, IAM, IUOE Special Attrition Program –Transformation

1. Delphi, the International Union of Operating Engineers, AFL-CIO (IUOE), the International Brotherhood of Electrical Workers, AFL-CIO (IBEW), and the International Association of Machinists and Aerospace Workers, AFL-CIO (IAM) (collectively the "Unions"), and General Motors agree on the following Special Attrition Program – Transformation (SAP-T) for Delphi employees who are participants in the Delphi Hourly-Rate Employees Pension Plan ("Delphi HRP").

   a. An attrition program will be run for eligible IBEW, IAM, and IUOE-represented Delphi employees as follows:

      i. $35,000 for normal or early voluntary retirements when the employee's services are no longer required but no later than January 1, 2008.
      ii. Age 50 with 10 years of credited service Mutually Satisfactory Retirement (MSR) effective when the employee's services are no longer required but no later than January 1, 2008.

   b. Any employee with at least 26 and less than 30 years of credited service regardless of age will be eligible for special voluntary placement in a pre-retirement program when their services are no longer required, but no later than January 1, 2008, under the following terms:

      i. Employees electing this pre-retirement program must be eligible no later than January 1, 2008.
      ii. Employees will retire without additional incentives when they first accrue 30 years of credited service under the provisions of the Delphi HRP.
      iii. The gross monthly wages while in the program will be:

          | | | |
          |---|---|---|
          | 1. | 29 years credited service | $2,900 |
          | 2. | 28 years credited service | $2,850 |
          | 3. | 27 years credited service | $2,800 |
          | 4. | 26 years credited service | $2,750 |

          Wages will be paid weekly on an hourly basis (2,080 hours per year) and will remain at that rate until 30 years of credited service is accrued. Employees will be treated the same as active employees with the following exceptions: (1) not eligible for Cost of Living Allowance (COLA); (2) not eligible for vacation

pay except as was earned and unpaid prior to the commencement of this Pre-Retirement Program; (3) for purposes of pension benefits, the Benefit Class Code will be determined using the twenty-four month look back period as specified in Appendix A of the Delphi HRP, with said period starting from the last day worked prior to the commencement of the pre-retirement program; (4) for purposes of life insurance, the amount of life insurance will be based on the base rate as of the last day worked prior to the commencement of the pre-retirement program.

c. Buy out of $140,000 for eligible employees with 10 or more years of seniority or credited service, whichever is greater; $70,000 for eligible employees with at least three but less than 10 years of seniority or credited service, whichever is greater; and $40,000 for eligible employees with at least one but less than three years of seniority or credited service, whichever is greater, to sever all ties with GM and Delphi except any vested pension benefits (as such no pension supplements will be payable). Employees will buy out when their services are no longer required, but no later than January 1, 2008. An employee electing a buy out whose spouse is employed at Delphi may, if they meet all plan requirements to do so, be eligible for health care coverage as a dependent pursuant to their spouse's health care program.

d. An employee may only select one of the options described above.

e. Effective January 1, 2008, all employees (other than those participating in option 1.b.), not electing an attrition option will be bought down consistent with the IBEW, IAM, or IUOE -Delphi-GM Memorandum of Understanding -Delphi Restructuring applicable to the employee.

f. Temporary employees will be used as needed to bridge any difficulties arising from the implementation of the Special Attrition Program – Transformation.

2. GM, the Unions and Delphi agree that any employee electing to retire under options 1.a.i., 1.a.ii, or 1.b. will transition to GM for purposes of post-retirement health care and employer paid basic life insurance in retirement ("check the box") and receive such benefits from GM on the same basis as GM-IUE-CWA retirees; post-retirement medical benefits provided will be in accordance with all the ongoing terms, conditions and eligibility requirements of the GM Health Care Program for Hourly Employees. As such, GM will provide the applicable level of post retirement medical benefits consistent with the terms of the Modified Plan, as defined in the settlement agreement (the

"Settlement Agreement") approved by the court in the case *IUE, et al. v. General Motors Corporation (case number 2:06-cv-12151)*, on the same basis as such benefits are provided to GM-IUE-CWA hourly employees who retired from GM with eligibility to participate in the GM Health Care Program. Any employee choosing option 1.b. above will be considered a Delphi employee until they retire. Employees who have 100% of their credited service in the Delphi HRP will receive 100% of their pension benefit from the Delphi HRP. Notwithstanding paragraph 3 below, any obligations assumed by GM under the "check the box" provisions of this paragraph shall be conclusively deemed to be comprehended by, included within, and shall constitute a prepetition, general unsecured claim assertable by GM against the estate of Delphi Corporation under Delphi's general indemnity of GM under the Master Separation Agreement. Neither Delphi Corporation nor any of its debtor affiliates may object on any grounds to the allowance of such claim; provided, however, that Delphi Corporation and any of its debtor affiliates reserve the right to object to the economic value of such claim (in the nature of assumptions such as discount rate, health care trend rates, mortality, other withdrawal rates and current and future expected benefit plan design changes). This limited objection waiver applies to Delphi, only, and not for other parties in interest, for which all rights are expressly reserved to object to the allowance of such claim under any grounds other than it was not assertable under the Master Separation Agreement. In exchange for eligibility to receive post-retirement health care and life insurance benefits from GM, employees will waive any and all rights to post retirement health care and employer paid basic life insurance benefits from Delphi including but not limited to any and all rights to COBRA continuation through Delphi.

3. The parties acknowledge the following matters regarding the Special Attrition Program - Transformation:

   a. Delphi's participation in this SAP-T is subject to the approval of the U.S. Bankruptcy Court; which approval Delphi will seek promptly at the next available omnibus hearing. In the event such participation is not allowed by the Bankruptcy Court, GM and the IBEW, IAM, IUOE will have no obligations hereunder. GM's obligations hereunder are subject to approval of this SAP-T by the U.S. Bankruptcy Court pursuant to entry of an order that provides for the treatment of GM's claims as described in this SAP-T and is otherwise reasonably satisfactory to GM, Delphi, the IBEW, IAM, and IUOE.

   b. For the avoidance of doubt, any obligations assumed by GM under this SAP-T with respect to post retirement health care and employer paid basic  life insurance benefit under paragraph 2 above  shall be conclusively deemed to be comprehended by, included within, and shall constitute a prepetition, general unsecured claim assertable by

GM against the estate of Delphi Corporation.  GM agrees to assume and pay post retirement health care and employer paid basic life insurance benefit payments to Delphi employees who "check the box" for purposes of post-retirement health care and employer paid basic life insurance in retirement. .

c.  This SAP-T shall not be subject to abrogation, modification or rejection without the mutual consent of the IBEW, IAM, or IUOE, as applicable, GM and Delphi and the order obtained in the Bankruptcy Court by Delphi approving this SAP-T shall so provide.  The parties further agree (and the Bankruptcy Court order shall also provide) that this SAP-T is without prejudice to any interested party (including the parties to this SAP-T and the Official Committee of Unsecured Creditors) in all other aspects of Delphi's Chapter 11 cases, including by illustration, Delphi's and GM's respective positions in all commercial discussions and claims matters between them, all collective bargaining matters involving the parties, in any potential proceedings under Sections 1113 and/or 1114 of the Bankruptcy Code with respect to the IBEW, IAM, or IUOE and under Section 365 of the Bankruptcy Code with respect to GM's contracts with Delphi, in any pension termination proceeding under ERISA and/or the Bankruptcy Code, and all claims administration and allowance matters.

d.  Nothing in this SAP-T, the Bankruptcy Court's approval of this SAP-T, or the performance of any obligation hereunder, shall limit or otherwise modify (a) Delphi's rights under Section 4041 of ERISA, or (b) Delphi's rights under Section 1113 and/or 1114 of the Bankruptcy Code with regard to any obligations which pre-existed this SAP-T (including pre-existing obligations referenced within this SAP-T), such as (by way of illustration only) the obligation to maintain the Delphi HRP or provide retirees or active employees (including employees/retirees participating in the attrition programs contained in this SAP-T) with levels of healthcare or other benefits as specified in pre-existing labor agreements. Under no circumstances shall Delphi freeze the Delphi HRP in a manner that prevents employees in the pre-retirement program described in Paragraph 1.b. above from receiving on-going credited service sufficient to reach 30 years of credited service.  Delphi shall provide the same healthcare and life insurance coverage to employees participating in paragraph 1.b. that it provides to its other active IAM, IBEW or IUOE-represented employees, as applicable.

e.  Nothing contained herein, in the Bankruptcy Court's approval of this SAP-T, or the performance of any obligation hereunder, shall constitute an assumption of any agreement described herein, including, without limitation any collective bargaining agreement between the IBEW, IAM, or IUOE and Delphi or any agreement

between GM and Delphi, nor shall anything herein, in the Bankruptcy Court's approval of this SAP-T, or the performance of any obligation hereunder, be deemed to create or give rise to an administrative or priority claim with respect to GM or convert a prepetition claim into a postpetition claim or an administrative expense with respect to any party.

**IMPLEMENTATION OF THE SPECIAL ATTRITION PROGRAM – TRANSFORMATION IS SUBJECT TO U.S. BANKRUPTCY COURT APPROVAL AND NO PAYMENTS OR RETIREMENTS WILL BE PROCESSED UNTIL AFTER COURT APPROVAL.**

## Attachment D

Benefits Effective January 1, 2008 (or Freeze Date as to Defined Benefit Pension Plan and Defined Contribution Plan)

# DELPHI

## Benefits

| | |
|---|---|
| **Defined Benefit Pension Plan** | **Frozen; Replaced by Individual Retirement Plan provisions** |
| **Defined Contribution Plan** | **Company Match: 30% on 7%** |
| **Active Life Insurance** | **Based on new Wage Rate** |
| **S&A** | **Based on Wage Rate**<br>**Maximum 26 weeks for employees with <3 years seniority** |
| **EDB** | **Based on Wage Rate**<br>**Max. 13 weeks for 1 but less than 3 years seniority**<br>**Max. 26 weeks for 3 but less than 5 years of seniority** |
| **ISP** | **$0.18 per hour** |
| **GIS** | **Eliminated** |
| **Active Health Care** | **See below; also includes annual Health Reimbursement Account of $600 per employee** |
| **Dental** | **Yes (requires 3 years seniority)** |
| **Vision** | **Yes (requires 5 years seniority)** |

Delphi Confidential

## Attachment D, cont.

### *Delphi Corporation*
### *New Hire Health Care Plan*
Health Care Plan Benefit Summary

|  | **IN-NETWORK SERVICES**<br>Services must be provided by a TCN physician for maximum benefits up to 90% of R&C* | **OUT-OF-NETWORK SERVICES**<br>Coverage is reduced if you use out-of-network providers without a referral, subject to the out-of-pocket maximums listed below |
|---|---|---|
| **ANNUAL DEDUCTIBLE**** | | |
| • Individual | $300 | $1,200 |
| • Family | $600 | $2,100 |
| **COPAYMENTS**** | | |
| • Plan Pays | 90% | 65% |
| • Enrollee Pays | 10% | 35% |
| **ANNUAL OUT-OF-POCKET MAXIMUMS**** | | |
| • Individual | $1,000 | None |
| • Family | $2,000 | None |
| **OUTPATIENT SERVICES** | | |
| • Outpatient Surgery | 90% | 65% R&C* |
| • Physical Therapy | 90% up to 60 treatments per condition per year by an approved provider. | 65% up to 60 treatments per year by an approved provider |
| • Routine Office Visits | Not Covered | Not Covered |
| • Diagnostic X-ray and Lab | 90% | 65% R&C* |
| • Well-Baby Care | 90% for 6 visits in first year | Not covered |
| • Preschool Immunizations | 90% specified types | Not covered |
| • Pap Smears and Mammograms | 90% | 65% R&C* |
| • PSA Screening | 90% for test that meets program criteria; otherwise not covered | 65% R&C* for test that meets program criteria; otherwise not covered |
| • Allergy Testing & Injections | Not covered | Not covered |
| **HOSPITAL SERVICES** | | |
| • Semiprivate Room and Board | 90% up to 365 days | 65% up to 365 days (non-par provisions apply to non-par facility) |
| • Miscellaneous Hospital, X-ray | 90% | 65% R&C* |
| • Surgery | 90% | 65% R&C* |
| • Doctor Visits In-Hospital | 90% | 65% R&C* |
| • Maternity Benefits | 90% | 65% R&C* |
| **EXTENDED CARE** | | |
| • Skilled Nursing Facility (excludes Custodial Care) | 90% up to 730 days (2 days for each unused day of hospitalization) | 65% up to 730 days (2 days for each unused day of hospitalization) in approved facility |
| **EMERGENCY** | | |
| • In-Plan Area/Out-of-area | 90% | 90% Requires predetermination within 24 hrs of admission |
| • Ambulance - Ground | 90% when medically necessary for transfers that meet program criteria | 90% when medically necessary for transfers that meet program criteria. |
| • Ambulance- Air/Boat | 50% up to 100 miles | 50% up to 100 miles |
| **PRESCRIPTION DRUGS** | Administered by Medco Health @ 1-800-711-3459 | |
| • Participating Pharmacies | You pay $7.50 (generic)/ $15 (brand) per prescription up to 34-day supply | Not applicable |
| • Non-participating Pharmacies | Not applicable | You pay $7.50 (generic)/ $15 (brand) plus 25% R&C* per prescription ( |
| • Mail-Order Prescription | You pay $7.50 (generic)/ $15 (brand) per prescription up to 90-day supply | Not applicable |
| • Insulin/Syringes | You pay $15 per prescription | You pay $15 plus 25% R&C* per prescription |

**Delphi Corporation**
**New Hire Health Care Plan**
Health Care Plan Benefit Summary

| | IN-NETWORK SERVICES | OUT-OF-NETWORK SERVICES |
|---|---|---|
| | Services must be provided by a TCN physician for maximum benefits up to 90% of R&C* | Coverage is reduced if you use out-of-network providers without a referral, subject to the out-of-pocket maximums listed below |
| **MENTAL HEALTH** | • These services require pre-authorization: Call ValueOptions at 1-877-786-4008 | |
| • Outpatient Services | 100% visits 1-20. You pay 25% for visits 21-35 | 50% of panel reimbursement (physicians only) |
| • Inpatient/Residential* | 100% up to 45 days | 50% of panel reimbursement (physicians and facility only) |
| **SUBSTANCE ABUSE** | These services require pre-authorization: Call ValueOptions at 1-877-786-4008 | |
| • Outpatient Services | 100% up to 35 visits | Not covered |
| • Inpatient/Residential (including detoxification)** | 100% up to 45 visits **Mental Health and Substance Abuse: inpatient days are combined for a total of 45 days allowed. | Not covered, except for emergency detoxification |
| **HEARING CARE** | | |
| • Examination/Hearing Aid | 90%; Audiometric exam, up to $122 for evaluation test, and one hearing aid every 36 months | Not covered |
| **OTHER** | | |
| • Medicare Eligibles | Accepted. | Accepted |
| **PAYMENT FOR NONEMERGENCY** | | |
| • Out-of-Area Services | Call the carrier for details on providers in other areas | If HSM services are received from a non-participating provider (except with a referral from a participating provider), you will be assessed the Out-of-Network Deductible, Copayment and Out-of-Pocket Maximum amounts |

\*Reasonable and Customary (R&C) Charges based on charges for services by providers in specific geographic location. The carrier determines what is considered reasonable and customary charges.
\*\*Annual deductibles, copayments and out-of-pocket maximums are calculated on the basis of R&C. Each covered individual can only contribute a maximum of $300 toward satisfying the Family Deductible. Copayments and out-of-pocket maximums apply only to covered hospital/surgical and medical services. Deductibles, copayments and out-of-pocket maximums do not apply to mental health/substance abuse coverage, Durable Medical Equipment, Prosthetics & Orthotics and Prescription Drugs. Mental health/substance abuse and prescription drugs have separate cost sharing features.
\*\*\*Amounts paid for all office visit services do not count towards your deductibles and annual out-of-pocket maximum.

To the extent any of the above information conflicts with the terms and conditions of the Delphi Health Care Program for Hourly Employees ("the Program"), the terms of the Program will apply.

## Term Sheet – Delphi Cessation and GM Provision of OPEB

1) This Term Sheet sets forth the agreement of General Motors Corporation
("GM"), Delphi Corporation, or any successor to Delphi as a result of the
acquisition of substantially all the stock or assets of Delphi Corporation or a
merger of Delphi Corporation, ("Delphi"), and the International Union of
Operating Engineers and its Local Unions 832(S), 101S and 18(S) ("IUOE"),
the International Brotherhood of Electrical Workers and its Local Union 663
("IBEW"), and the International Association of Machinists and Aerospace
Workers and its Tool and Die Maker Lodge 78 ("IAM"), regarding Delphi's
cessation of post-retirement health care benefits and employer-paid post-
retirement basic life insurance benefits (hereinafter referred to as "OPEB")
and GM's agreement to provide OPEB to certain retired employees currently
receiving such benefits from Delphi and other active Delphi employees who
may become eligible for OPEB in accordance with this Term Sheet.  Except
as otherwise expressly stated herein, the terms of the respective Delphi and
GM employee benefit plans and programs will govern. This Term Sheet
does not, and is not intended to, constitute an employee benefit plan under
the meaning of ERISA.

2) The parties acknowledge that this Term Sheet will become effective (the
"Effective Date") when all of the following events have occurred and as of
the date when the last of such events shall have occurred:  (a) the entry of
an approval order by the Bankruptcy Court in Delphi's chapter 11 cases
approving the applicable IUOE, IBEW, or IAM-Delphi-GM Memorandum of
Understanding-Delphi Restructuring which incorporates (among other
subject matters) this Term Sheet and approves modifications to the existing
collective bargaining agreements between Delphi and the applicable union
resolving any Section 1113 and 1114 motions pending in the Bankruptcy
Court as between Delphi and the applicable union; (b) successful ratification
by the applicable union membership of such of the agreements referred to in
the preceding clause as are determined by the applicable union to require
such ratification; (c) execution by Delphi and GM of a comprehensive
settlement agreement resolving the financial, commercial, and other matters
between them; and (d) the substantial consummation of a plan of
reorganization proposed by Delphi in its chapter 11 cases (the "Plan") and
confirmed by the Bankruptcy Court which incorporates, approves and is
consistent with all of the terms of this Term Sheet and the comprehensive
settlement agreement between Delphi and GM.

3) Pursuant to the Plan and this Term Sheet, as of the Effective Date or as
soon as practicable thereafter in accordance with applicable law and
administrative requirements (the "Cessation Date"), Delphi will cease to
provide, offer, or have any liability for OPEB to its IUOE, IBEW, and IAM

represented hourly employees and retirees and their spouses, surviving spouses, dependents or other beneficiaries. The cessation will be administered on a "claims incurred" basis, and Delphi will therefore retain responsibility for all claims incurred but either unfiled or unpaid as of the Cessation Date. This cessation will include elimination of the Special Benefit relating to Medicare Part B.

4) As of the Cessation Date, GM agrees to provide OPEB (including the Special Benefit relating to Medicare Part B if applicable) to the IUOE, IBEW, and IAM represented Delphi hourly employees and Delphi retirees who:

    A   as of the Effective Date are retired with eligibility for OPEB;

    B. as of the Effective Date are eligible to retire from Delphi on a normal retirement basis under Article II, section 1 of the Delphi Hourly-Rate Employees Pension Plan ("Delphi HRP") (i.e., age 65) or an early retirement basis under Article II, sections 2(a)(1), 2(a)(2) or 2(a)(3) of the Delphi HRP (i.e., 60 &10), 85 Point or 30 & Out), with OPEB under the terms of the applicable 2003 collective bargaining agreement in effect on the date immediately preceding the Effective Date; and

    C. become eligible to retire on a normal retirement basis under Article II, section 1 of the Delphi HRP (i.e., age 65) or an early retirement basis under Article II, sections 2(a)(1), 2(a)(2) or 2(a)(3) of the Delphi HRP (i.e., 60 & 10, 85 Point or 30 & Out) or as a Total and Permanent Disability retirement under Article II, section 3 of the Delphi HRP approved both by Delphi pursuant to the procedures applicable to the Delphi HRP as of the date immediately preceding the Effective Date and approved by GM under the procedures applicable to the General Motors Hourly-Rate Employees Pension Plan ("GM HRP"), within 7 years of the Effective Date.

5) All post-retirement medical benefits provided by GM will be in accordance with all the ongoing terms, conditions and eligibility requirements of the GM Health Care Program for Hourly Employees and GM will provide the applicable level of post retirement medical benefits consistent with the terms of the Modified Plan, as defined in the settlement agreement (the "Settlement Agreement") approved by the court in the case *IUE, et al. v. General Motors Corporation (case number 2:06-cv-12151)*, on the same basis as such benefits are provided to GM-IUE-CWA hourly employees who retired from GM with eligibility to participate in the GM Health Care Program.

6) All employer-paid post-retirement Basic Life Insurance benefits provided by GM will be in accordance with all the ongoing terms, conditions and eligibility requirements of the GM Life and Disability Benefits Program for Hourly Employees and will be at the level provided for Delphi IUOE, IBEW, or IAM,