HEARING DATE AND TIME: July 27, 2011 at 10:00 a.m. (Eastern Time)
OBJECTION DEADLINE: July 20, 2011 at 4:00 p.m. (Eastern Time)

Thomas M. Kennedy, Esq.
Susan M. Jennik, Esq.
Serge Ambroise, Esq.
KENNEDY, JENNIK & MURRAY, P.C.
113 University Place, 7th floor
Telephone: (212) 358-1500
Facsimile: (212) 358-0207
Attorneys for IUE-CWA

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
| | |
|---|---|
| In re: | Chapter 11 Case No. |
| DPH HOLDINGS CORP., et al., | 05-44481 (RDD) |
| f/k/a DELPHI CORP., et al., | (Jointly Administered) |
| Debtors. | |

------------------------------------------------------------x

**IUE-CWA'S MOTION PURSUANT TO 11 U.S.C. §§ 105 AND 363(b),
TO AMEND THE IUE-CWA 1113/1114 SETTLEMENT APPROVAL ORDER**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

## PRELIMINARY STATEMENT

1. By this Motion, the IUE-CWA, Industrial Division of the Communications Workers of America, AFL-CIO, CLC ("IUE-CWA"), seeks entry of an order, pursuant to 11 U.S.C. §§ 105(a) and 363, amending the Order under 11 U.S.C. §§ 363, 1113 and 1114 and Fed. R. Bankr. P. 6004 and 9019 Approving Memorandum of Understanding among IUE-CWA, Delphi, and General Motors Corporation Including Modification of IUE-CWA Collective Bargaining Agreements and Retiree Welfare Benefits for Certain IUE-CWA-Represented Retirees ("Settlement Approval Order"), entered on August 16, 2007 (Docket No. 9106). A

proposed amended order in blackline (complete with exhibits) is attached as Exhibit A. A redline version of the proposed order—showing the original language of the August 16, 2007 Order and the proposed amendments—is attached as Exhibit B.

2. The Amended Order also clarifies that all necessary preconditions for the allowance and payment of the IUE-CWA bankruptcy claim in the Delphi proceeding have been met and there is no impediment to paying this claim on the same basis as other allowed claims in this proceeding.

3. On or about August 5, 2007, the IUE-CWA entered into an agreement with Delphi Corp. ("Delphi" or "the Debtors") and General Motors Company ("GM"), titled IUE-Delphi-GM Memorandum Of Understanding, Delphi Restructuring ("Settlement Agreement"). A copy of the Settlement Agreement is attached as Exhibit 1 to the proposed amended order. The Settlement Agreement provides, in pertinent part, as follows:

> The IUE-CWA will receive an allowed general unsecured pre-petition claim against Delphi in the amount of $126 million in complete settlement of all asserted and unasserted IUE-CWA claims, including but not limited to IUE-CWA/Delphi Joint Activities Center asserted and unasserted claims ("the Allowed Claim"), pursuant to an order of the Bankruptcy Court. The Bankruptcy Court order shall provide that (i) the proceeds realized by the IUE-CWA and/or the VEBA trust, described herein, from a $26 million dollar portion of the Allowed Claim shall be paid directly to a voluntary employees' beneficiary association (VEBA) trust to be established and sponsored by the IUE-CWA to provide supplemental retiree health insurance to certain eligible Delphi employees and their dependents (ii) the proceeds realized by the IUE-CWA and/or the VEBA trust, described herein, from a $90 million dollar portion of the Allowed Claim shall be paid directly to a VEBA trust to be established and sponsored by the IUE-CWA for the purpose of funding employee benefits for active and retired employees and their dependents and (iii) the proceeds realized by the IUE-CWA and/or a VEBA trust, described herein, from a $10 million dollar portion of the Allowed Claim shall be paid directly to the successor to the JAC entity which shall be established and administered by the IUE-CWA.

(See Ex. 1 of the proposed amended order (Ex. A), § G.2, at 15.)

4. The Settlement Approval Order included those provisions at ¶ 8.

2

5.  IUE-CWA now seeks to sell its claim. As this Court is aware, the value of the claim is greatly diminished today. The amount that IUE-CWA can expect to recover from the sale of its claim will not be sufficient to provide supplemental retiree health insurance as was originally contemplated and will not be sufficient to cover the administrative costs of establishing a VEBA trust. It is not now known what amount IUE-CWA will receive, if anything, in exchange for the sale of its claim. The Amended Order therefore characterizes the proposed uses as percentages of the net proceeds of the sale of this Claim. Accordingly, the IUE-CWA proposes the following amendments to the existing August 16, 2007 Settlement Approval Order:

A.  20.6% of the net proceeds of the sale of the Allowed Claim will be used to establish a Health Savings Account in an existing VEBA for each Delphi IUE-CWA represented retiree who would have been eligible at the time of his/her separation or retirement from Delphi for Delphi-provided retiree health insurance (not to exceed $10,000 per eligible employee) and was not eligible to receive retiree health benefits under any of IUE-CWA-negotiated retiree health benefit programs in the General Motors bankruptcy litigation;

B.  71.4% of the net proceeds from the sale of the Allowed Claim will be paid to the IUE-CWA Skills and Advancement Fund, a 501(c)(6) qualified tax exempt entity that pays for training programs to upgrade the job skills and employability of IUE-CWA members; and

C.  7.9% of the net proceeds from the sale of the Allowed Claim will be paid to the IUE-CWA JAC Building Corporation, which was established by IUE-CWA as the

3

successor entity to the Joint Activities Center, to be used to maintain and upgrade the training center operated by IUE-CWA.

6. The Allowed Claim is specific to IUE-CWA and imposes particular uses of the proceeds of the claim on IUE-CWA. As outlined above, the modifications proposed by IUE-CWA comply with the intended purposes of the Allowed Claim. Since any sale of the claims would yield only pennies on the dollar, it would be administratively impractical and needlessly expensive to establish and fund separate VEBAs to accomplish what was originally intended under the August 5, 2007 agreement. Therefore, IUE-CWA seeks to amend ¶ 8 of the Settlement Approval Order to read as follows:

> Subject to Section H.2.e of the IUE-CWA Settlement Agreement, the IUE-CWA shall receive an allowed general unsecured prepetition claim against Delphi in the amount of $126 million in complete settlement of all asserted and unasserted IUE-CWA claims, including, but not limited, to IUE-CWA/Delphi Joint Activities Center (the "JAC") asserted and unasserted claims (the "Allowed Claim"). Of the net proceeds realized by the IUE-CWA from a sale of the Allowed Claim: (i) 20.6% shall be utilized to establish Health Savings Accounts for certain eligible Delphi employees and their dependents who were eligible for Delphi retiree health insurance at the time of their retirement or separation from Delphi and are not eligible for any benefits under any of the IUE-CWA-negotiated retiree health benefit programs in the General Motors bankruptcy litigation (not to exceed $10,000 per eligible employee); (ii) 71.4% shall be paid to the IUE-CWA Skills and Advancement Fund, a 501(c)(6) qualified tax exempt entity that pays for training programs to upgrade the job skills and employability of IUE-CWA members, and (iii) 7.9% shall be paid to the IUE-CWA JAC Building Corporation to be used to maintain and upgrade the training center operated by IUE-CWA. The purposes for which the proceeds of a sale of the Allowed Claim are to be used apply to IUE-CWA and not to any transferee of the Allowed Claim.

7. The IUE-CWA General Executive Board ("GEB") has resolved to approve the modification of how proceeds from the Allowed Claim are utilized. A copy of the GEB's Resolution Authorizing Modification of Order Regarding IUE-CWA Claim in the Delphi Corp. Bankruptcy case is attached as Exhibit C.

4

## THE MOTION TO AMEND THE 1113/1114 SETTLEMENT APPROVAL ORDER SHOULD BE GRANTED UNDER §§ 105(a) AND 363(b) OF THE BANKRUPTCY CODE

8. Ample authority exists for approval of the Motion under §§ 105(a) and 363(b) of the Bankruptcy Code. Section 105 of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Settlement Agreement contemplates approval of the bankruptcy court for the distribution of any funds resulting from the Allowed Claim. The IUE-CWA seeks to modify the distribution and use of the proceeds of the Allowed Claim due to the change in the expected value of the Allowed Claim, but proposes to maintain the purposes intended by the Settlement Agreement.

9. The Allowed Claim is for the loss of retiree health benefits and for the loss of contractual benefits for employees. The IUE-CWA proposes to distribute the proceeds of the sale of the Allowed Claim in a manner consistent with the intended purposes stated in the Settlement Agreement. The proposed changes reflect the greatly altered economic situation of the Debtors and the expected significant reduction in the realized value of the Allowed Claim.

10. On September 7, 2009, IUE-CWA was successful in securing an agreement from General Motors in its bankruptcy proceeding to establish a $467,000,000 insurance program for Delphi and General Motors pre-65 retirees (the IUE-CWA GM Retiree Benefit Programs). In addition, IUE-CWA received a $793,000,000 allowed general unsecured claim in the Delphi bankruptcy. Many of the individuals who might have been unable to participate in the originally intended $26 million VEBA under the August 5, 2007 agreement between IUE-CWA, General Motors and Delphi may be eligible for benefits from either of these programs. In order to maximize the benefits available for persons who were entitled to lifetime medical benefits from Delphi at the time of their separation or retirement from Delphi, those individuals who are

5

eligible for benefits under the IUE-CWA GM Retiree Benefit Programs should not also be beneficiaries of the 20.6% of the Claim set aside for Retiree Medical Accounts.

11.     A union is the representative of employees in a bankruptcy proceeding. Pursuant to § 1113 of the Code, provisions of existing collective bargaining agreements may be modified during the proceeding. When such provisions are modified, the union has a claim on behalf of the employees whose terms and conditions of employment have been modified. Similarly, pursuant to § 1114(c)(1) of the Code, a labor organization may serve as the representative of retirees whose health and other non-pension benefits are modified in the bankruptcy case. In such circumstances, the union may sell the claim and distribute the proceeds to the affected members in the form of cash or other benefits. *In re Northwest Airlines Corp.*, 366 B.R. 270, 274 (Bankr. S.D.N.Y. 2007) ("In addition, each of the unions that has agreed with the Debtor on a new collective bargaining agreement has received a large proof of claim, and these unions have (with Court approval) sold part of their claims and made a substantial cash distribution to their members."); *Hourly Employees/Retirees of Debtor v. Erie Forge & Steel, Inc.*, CIV.A. 03-233 ERIE, 2004 WL 385023, *8 (W.D. Pa. Feb. 2, 2004) *aff'd sub nom. In re Erie Forge & Steel, Inc.*, 418 F.3d 270 (3d Cir. 2005) ("There is no basis for concluding, as Appellants urge, that the Union would somehow personally profit from this recovery, which was obviously obtained for the benefit of its members. Indeed, the Union has conceded on the record that this recovery was negotiated for distribution to the hourly employees in addition to the recovery of some $340,000 in allowed administrative claims for their vacation pay."). *See also, In re General Motors Corp.*, 407 B.R. 463, 484-86, 519-20 (Bankr. S.D.N.Y. 2009) (approval of agreement to fund a VEBA providing retiree health benefits); *In re Chrysler LLC,* No. 09-50002 (AJG), 2009 WL 1360869, *37-38 (Bankr. S.D.N.Y. May 7, 2009) (approval of agreement to fund a VEBA providing

retiree health benefits with equity and a note); *In re Delphi Corp.*, No. 05-44481 (RDD), 2009 WL 973130, *2 (Bankr. S.D.N.Y. April 2, 2009) (approving payment to a salaried retirees' committee to set up a VEBA in settlement of claims for lost retiree health benefits).

12.   Section H.2 of the August 5, 2007 agreement provided certain conditions for the effectiveness of the IUE-CWA claim, as follows:

> H.2. The parties acknowledge that the following provisions of this Agreement will not become effective until all of the following events have occurred and as of the date when the last of such events shall have occurred: (a) execution by Delphi and GM of a comprehensive settlement agreement resolving the financial, commercial, and other matters between them and (b) the substantial consummation of a plan of reorganization proposed by Delphi in its chapter 11 cases and confirmed by the Bankruptcy Court which incorporates, approves and is consistent with all of the terms of this Agreement and the comprehensive settlement agreement between Delphi and GM:
> a. The Benefit Guarantee Term Sheet (Attachment B)
> b. Delphi pension freeze (Section E and Attachment B)
> c. Cessation of Delphi OPEB (Section E and Attachment B)
> d. 414(l) transfer (Section F.2 and Attachment B)
> e. Section G.2

(See Ex. 1 of the proposed amended order (Ex. A), § H.2, at 17.)

13.   Section G.2 of the August 5, 2007 Agreement provides as follows:

> G.2. The IUE-CWA will receive an allowed general unsecured pre-petition claim against Delphi in the amount of $126 million in complete settlement of all asserted and unasserted IUE-CWA claims, including but not limited to IUE-CWA/Delphi Joint Activities Center asserted and unasserted claims ("the Allowed Claim"), pursuant to an order of the Bankruptcy Court. The Bankruptcy Court order shall provide that (i) the proceeds realized by the IUE-CWA and/or the VEBA trust, described herein, from a $26 million dollar portion of the Allowed Claim shall be paid directly to a voluntary employees' beneficiary association (VEBA) trust to be established and sponsored by the IUE-CWA to provide supplemental retiree health insurance to certain eligible Delphi employees and their dependents (ii) the proceeds realized by the IUE-CWA and/or the VEBA trust, described herein, from a $90 million dollar portion of the Allowed Claim shall be paid directly to a VEBA trust to be established and sponsored by the IUE-CWA for the purpose of funding employee benefits for active and retired employees and their dependents and (iii) the proceeds realized by the IUE-CWA and/or a VEBA trust, described herein, from a $10 million dollar portion of the Allowed Claim shall be paid directly to the successor to the JAC entity which shall be established and administered by the IUE-CWA.

(*Id.*, § G.2, at 15.)

14. All of the conditions to the effectiveness of Sections G and H of the August 5, 2007 Agreement set forth in Section H.2 thereof have occurred. The IUE-CWA Claim is not subject to any contingencies or conditions and shall be an allowed claim in the event of any distribution to General Unsecured Creditors in this proceeding on the same basis as the other allowed general unsecured creditors.

## JURISDICTION

15. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## NOTICE

16. Notice of this Motion has been provided to (i) the Office of the United States Trustee for the Southern District of New York; (ii) the attorneys for the Debtors; and (iii) the attorneys for the statutory committee of unsecured creditors appointed in these chapter 11 cases. IUE-CWA submits that such notice is sufficient and no other or further notice need be provided.

17. No previous request for the relief sought herein has been made by IUE-CWA to this or any other Court.

WHEREFORE IUE-CWA respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: New York, New York
July 14, 2011

>Respectfully submitted,
>KENNEDY, JENNIK & MURRAY, P.C.
>Attorneys for IUE-CWA
>
>By: Thomas M. Kennedy
>tkennedy@kjmlabor.com
>Susan M. Jennik
>sjennik@kjmlabor.com
>Serge Ambroise
>sambroise@kjmlabor.com
>113 University Place, 7th floor
>New York, NY  10003
>Tel. (212) 358-1500
>Fax: (212) 358-0207