Page 1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 05-44481-rdd

5  - - - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  DPH HOLDINGS CORP., ET AL.,

9

10          Debtors.

11

12  - - - - - - - - - - - - - - - - - - - - - -x

13

14              U.S. Bankruptcy Court

15              300 Quarropas Street

16              White Plains, New York

17

18              June 23, 2011

19              10:10 AM

20

21  B E F O R E:

22  HON. ROBERT D. DRAIN

23  U.S. BANKRUPTCY JUDGE

24

25

1

2      RE: Doc #21406; Proposed Sixty-Seventh Omnibus Hearing Agenda

3

4      RE: Doc #21407; Proposed Forty-Fifth Claims Hearing Agenda

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25      Transcribed by:  Avigayil Roth

1

2   A P P E A R A N C E S :

3   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

4        Attorneys for Debtors

5        155 North Wacker Drive

6        Chicago, IL 60606

7

8   BY:   JOHN K. LYONS, ESQ.

9        MR. NICK D. CAMPANARIO (TELEPHONICALLY)

10       MR. LOUIS S. CHIAPPETTA (TELEPHONICALLY)

11

12  KRIEG DEVAULT LLP

13       Attorneys for Creditor, VEBA committee

14       One Indiana Square

15       Suite 2800

16       Indianapolis, IN 46204

17

18  BY:   PATRICIA L. BEATY, ESQ. (TELEPHONICALLY)

19

20  ALSO PRESENT:

21       PHILIP CARSON, In Propria Persona (TELEPHONICALLY)

22

23

24

25

Page 4

```
 1                    P R O C E E D I N G S

 2              THE COURT:  Good morning.  In re DPH Holdings

 3    Corporation.

 4              MR. LYONS:  Good morning, Your Honor, John Lyons on

 5    behalf of DPH Holdings.

 6              Today on both agendas there are really only two

 7    contested matters; the rest have either been settled or

 8    adjourned.  So first, turning to the omnibus hearing agenda,

 9    this is now the sixty-seventh omnibus hearing.  There is one

10    contested matter and that is the request for stay of order

11    filed by Mr. Sumpter.  My colleague Nick Campanario is going to

12    address the merits of that request, Your Honor.  And then

13    again, we did file a brief which I believe outlines our

14    arguments in opposition.

15              THE COURT:  Right.  Okay.

16              Mr. Campanario, you're on the phone, right?

17              MR. CAMPANARIO:  Yeah, that's right.

18              THE COURT:  Okay.

19              MR. CAMPANARIO:  Good morning, Your Honor.

20              THE COURT:  Okay.  So do you have anything to add to

21    your papers?

22              MR. CAMPANARIO:  Well, I don't know if Mr. Sumpter is

23    on the phone, but since it's his motion, at least the way I

24    envisioned it was that he would maybe present first and then I

25    would respond to that.
```

Page 5

1          THE COURT:  Okay.  I don't have him listed on

2     CourtCall.

3          Mr. Sumpter, are you on the phone?

4       (No audible response.)

5          COURTCALL:  We have no appearance scheduled for Mr.

6     Sumpter via CourtCall, Your Honor.

7          THE COURT:  All right.  He was obviously aware that

8     this hearing had been scheduled; it had been scheduled at his

9     request.

10          All right.  I have reviewed the pleadings, including

11     the filings by the VEBA trust and the VEBA committee, as well

12     as the debtor -- or the reorganized debtor.  Does anyone have

13     anything to add to those pleadings?

14          MS. BEATY:  Your Honor, this is Patricia Beaty of

15     Krieg DeVault for VEBA committee.  I don't have anything to

16     add, but I wanted to let you know that I was on the phone.

17          THE COURT:  Okay.

18          MR. CAMPANARIO:  Nothing to add here, Your Honor --

19     Nick Campanario.

20          THE COURT:  All right.  All right.  Then I'll issue my

21     ruling.  Mr. James Sumpter, S-U-M-P-T-E-R, has made a motion

22     for a stay of an order entered recently by the Court in this

23     case, which appears at docket 21306.  Granting a motion by the

24     Trust and the -- the VEBA trust and the 1114 Committee jointly,

25     it was not opposed by the debtor.

Page 6

1          Deeming or clarifying the record that the

2    establishment of the VEBA benefit among other things -- or

3    among settling other issues in the case, resolved -- or was in

4    lieu of claims that could have been asserted by the VEBA

5    parties for COBRA.  Those parties, in fact, did not assert

6    those claims during the case in an active way.  Instead, the

7    only party to do so in the case was Mr. Sumpter.

8          He raised the potential COBRA claim twice in this

9    case, first, in opposition to the debtors' motion to terminate

10   retiree benefits.  I granted that motion, and in so doing

11   overruled Mr. Sumpter's objection.  Secondly, Mr. Sumpter filed

12   an expedited motion to enforce COBRA benefit for Delphi

13   salaried retirees, and a motion for COBRA settlement (COBRA

14   benefit motion) on July 10th, 2009.  Which I heard at the --

15   based on the expedited request -- at the hearing on Delphi's

16   request to modify its confirmed Chapter 11 plan, which I held

17   on July 29th, 2009, and thereafter gave my ruling on July 30th,

18   2009.

19          I treated Mr. Sumpter's expedited motion from July 10,

20   2009 equally as an objection to Delphi's proposed modified plan

21   as well as a stand-alone motion.  I overruled the motion in its

22   capacity as an objection to the plan as referenced in the July

23   30th plan modification order -- July 30th, 2009 plan

24   modification order, and as set forth in my bench ruling from

25   July 30th, 2009.  I also issued an order denying Mr. Sumpter's

Page 7

1    motion in which I denied the motion having alread -- as moved

2    having already ruled against him on the motion in connection

3    with the plan modification order.  That second order was

4    entered by me on August 30th, 2009.

5          Those two orders -- i.e., the plan modification order

6    and the August 30, 2009 order were not appealed by Mr. Sumpter

7    and have become final, obviously, years ago.  Notwithstanding

8    that fact, Mr. Sumpter has requested a stay of my recent order

9    granting the VEBA trust motion on the ground -- as stated in

10   his motion -- that he seeks an opportunity to submit a motion

11   for reconsideration of his July 10th, 2009 motion and the

12   orders that I issued in July and August 2009 denying that

13   motion.  The rationale for seeking -- eventually -- a motion

14   under presumably Bankruptcy Rule 9024 -- although that basis in

15   the Rules is not stated in his present motion before the

16   Court -- is "based on the fact that movant has secured an IRS

17   ruling letter", which Mr. Sumpter believes is contrary to the

18   Court's bench ruling from July 30, 2009 in which I denied his

19   July 10 motion.

20          In addition, Mr. Sumpter states that he also needs

21   time to hire an economist and time for the economist to perform

22   the required analysis regarding the underlying financial

23   conditions during the two critical COBRA-related dates.

24   Ultimately, then, the legal basis for Mr. Sumpter's present

25   motion to stay my order on the VEBA committee's motion is

Page 8

1    premised upon his ability to obtain the vacatur of the July

2    30th, 2009 plan modification order and the August 3, 2009 order

3    denying his July 30th motion as a stand-alone motion as moot

4    now having -- my having already ruled on it in the July 30th

5    order -- and bench ruling.  The reorganized debtor, DPH

6    Holdings, as well as the VEBA Committee for the Delphi Salaried

7    Retirees Association Benefit Trust and The Official Committee

8    of Salaried Retirees have each objected to the stay motion by

9    Mr. Sumpter, as well.

10            The standard for obtaining a stay pending appeal is

11    clear in this circuit with one potential exception that is not

12    relevant here.  All courts agree that under Bankruptcy Rule

13    8005, which governs the procedures for seeking a stay pending

14    appeal, a party seeking a stay has the "heavy burden" to

15    demonstrate:  one, whether the movant will suffer irreparable

16    injury absent a stay; two, whether a party will suffer

17    substantial injury if a stay is issued -- that is another

18    party; three, whether the movant has demonstrated a substantial

19    possibility -- although less than a likelihood -- of success on

20    appeal; and four, the public interests that may be affected.

21    See In re Calpine Corp., 2008 Bankr. LEXIS 217 at 10 (Bankr.

22    S.D.N.Y. 2008), as well as In re Adelphia Communications

23    Corporation, 361 B.R. 337, 346 (S.D.N.Y. 2007), and In re

24    Suprema Specialties, Inc. 330 B.R. 93, 95 (S.D.N.Y. 2005).

25            The only potential area of confusion in this circuit

Page 9

1   is whether the moving party must show all of the forgoing four

2   factors or, you know, in the alternative, whether the movant,

3   in establishing its heavy burden, may assert factors in a way

4   so that the court can balance them against the other.  This

5   issue discussed by Judge Lifland in the Calpine case here, as

6   elsewhere in the case law, the showing of irreparable harm is

7   the principle requisite for the issuance of a stay under

8   Bankruptcy Rule 8005.  See Grand River Enters. Six Nations Ltd.

9   v. Pryor 481 F.3d 60, 67 (2nd Circuit 2007).

10       In that the moving party must first demonstrate that

11  such injury is likely before the other requirements for the

12  issuance of injunction will be considered, see also Mohammed v.

13  Reno 309 F.3d 95, 100 (2nd Circuit 2002), where the court said

14  the probability of success that must be demonstrated is

15  inversely proportional to the amount of irreparable injury

16  plaintiff will suffer absent the stay.  Simply stated, "More of

17  one excuse is less of the other".

18       The motion asserts irreparable harm here in that the

19  movant, Mr. Sumpter, apparently believes that the issuance of

20  my order would serve apparently as a declaration that all

21  potential COBRA claimants had settled their COBRA claims in

22  lieu of the VEBA benefit that the debtors agreed to with the

23  VEBA committee and the statutory 1114 committee.  That notion

24  of a declaratory judgment in that the settlement would be

25  binding on all parties as a settlement of COBRA claims does not

Page 10

1    appear to be apparent from the order that I entered earlier

2    this month.

3         I also should note that the existence of such a

4    settlement has been a matter of record for years and the

5    underlying support for the debtors' payment of a settlement has

6    been a matter of record for years.  And in addition, the so-

7    called private letter ruling that Mr. Sumpter says he has

8    obtained and which he seeks to have be a basis for a motion to

9    vacate the confirmation order and/or the August 3rd order --

10   August 3rd, 2009 order denying his motion has been present for

11   several years, i.e., since November of 2009.

12        Given those facts, it's difficult for me to see

13   irreparable harm to the movant now in light of all the time

14   that has passed.  But I do not find that Mr. Sumpter has

15   carried his burden to show imminent and irreparable harm by the

16   entry of the -- an enforcement of the Court's order granting

17   the VEBA committee's motion.  I agree with the objectors -- the

18   1114 Committee and the VEBA trust committee -- that granting

19   Mr. Sumpter's motion and staying my order could provide

20   substantial -- or cause substantial injury to them since the

21   purpose of their seeking such an order was to make it clear to

22   the IRS and obviate the need to go back through additional

23   peeling of the onion with regard to the initial settlement

24   setting up the VEBA benefit -- that part of the consideration

25   in the debtors settling with the VEBA committee was to resolve

05-44481-rdd   Doc 21491   Filed 06/27/11   Entered 07/15/11 11:28:33   Main Document
DPH HOLDINGS CORPORATION, ET AL.
Pg 11 of 27

Page 11

1    any potential outstanding COBRA issues.

2         The reason that there would be a potential -- a

3    serious potential for substantial injury to the nonmoving

4    parties is that they are seeking a letter ruling from the IRS

5    to confirm that fact and have a time deadline to do so.  The

6    letter ruling process is potentially lengthy and a stay of my

7    order would cloud that process, and I believe provide -- or

8    cause the potential that the IRS would simply not issue a

9    ruling until that cloud was removed.

10        The most important factor here, however -- although I

11   find that Mr. Sumpter has not shown irreparable harm and that

12   there is a substantial injury -- or there would be to the

13   nonmoving third-party objectors here, is the likelihood of

14   success factor.  I find that there is literally no likelihood

15   of success that Mr. Sumpter would prevail on his ultimate

16   necessary precondition here for relief, which is obtaining an

17   order to vacate the plan modification order, as well as my

18   August 3rd, 2009 order denying his July 10, 2009 motion.

19        As the debtors point out, under Bankruptcy Rule 9024

20   there is a unique time limitation on requests to revoke an

21   order confirming a plan, which the plan modification order was;

22   that time limit is 180 days.  It exists, obviously, because of

23   Congress' desire to have a finality to the confirmation of

24   Chapter 11 plans that is prescribed by much more restrictive

25   time limit -- or a much more restrictive time limit than the

05-44481-rdd    Doc 21491    Filed 06/27/11    Entered 07/15/11 11:28:33    Main Document
DPH HOLDINGS CORPORATION, ET AL.
Pg 12 of 27

Page 12

1    general time limit applicable to motions under Rule 60, which

2    is incorporated into Bankruptcy Rule 9024.  Clearly more than

3    180 days has lapsed since the entry of the July 30th, 2009 plan

4    modification order.

5            The Court treated Mr. Sumpter's July 10, 2009 motion

6    as an objection to the plan -- and Mr. Sumpter did as well --

7    both as to the feasibility of the plan under Section 1129 as

8    well as to whether the plan complied with applicable law and

9    was proposed in good faith.  Mr. Sumpter contended that because

10   of his view that he and others like him were entitled to an

11   unlimited COBRA benefit until their death, the debtor would owe

12   hundreds of millions of dollars, which would completely

13   undermine the plan in that the debtors' intention to proceed in

14   derogation of its responsibility to provide for such a benefit

15   was not in good faith and contrary to applicable law.

16           I concluded, to the contrary, that based on my

17   analysis of the applicable statute and regulations as set forth

18   in the transcript of my bench ruling from July 30th, that under

19   the circumstances here there was a twelve-month window upon

20   which unlimited COBRA benefits could be triggered after the

21   commencement of Delphi's Chapter 11 case, construing 29 U.S.C.

22   Section 1163.

23           Since the benefits were terminated more than twelve

24   months -- and, in fact, considerably more than twelve months

25   after Delphi's petition date in a context where Delphi had very

05-44481-rdd    Doc 21491    Filed 06/27/11    Entered 07/15/11 11:28:33    Main Document
DPH HOLDINGS CORPORATION, ET AL.
Pg 13 of 27

Page 13

1    clearly intended to maintain those benefits beforehand and

2    where Delphi's original confirmed Chapter 11 plan had provided

3    for the maintenance of such benefits, clearly new financial

4    circumstances had occurred -- i.e., the total collapse of the

5    auto market in light of the financial recession -- that changed

6    that path, and since those events occurred more than twelve

7    months after the petition date, there was a -- based on my

8    reading of the statute -- an exception to the rule that Mr.

9    Sumpter was relying upon.

10           His focus was simply on his disagreement with the

11   debtors' position as to whether the twelve-month limitation

12   applied to both pre and post-petition periods.  He viewed the

13   limitation applying only to pre-petition periods; the debtor

14   viewed, obviously, that it applied to both pre and post-

15   petition, and I agreed with the debtors.  The ruling, as I

16   said, is now not subject to Rule 60 challenge or any other

17   challenge other than fraud in the adducement, which was not

18   asserted by Mr. Sumpter here as based upon the 180-day

19   limitation that I've already discussed.

20           Furthermore, to the extent that the confirmation

21   order -- or the plan modification order of July 30th, 2009

22   wouldn't apply -- and when we're focusing on seeking vacatur of

23   the August 3rd order -- although I don't believe that that

24   would be the appropriate approach -- Rule 60 as incorporated in

25   Rule 9024 wouldn't apply there either.

05-44481-rdd   Doc 21491   Filed 06/27/11   Entered 07/15/11 11:28:33   Main Document
DPH HOLDINGS CORPORATION, ET AL.
Pg 14 of 27

Page 14

1          With regard to that order standing on its own, Rule 60

2     as incorporated by Rule 9024 sets forth six factors -- or six

3     bases for a court relieving a party of a final judgment or

4     order:  one, mistaken advertent surprise or excusable neglect;

5     two, newly discovered evidence, which by due diligence could

6     not have been discovered in time to move for a new trial under

7     Rule 59(b); fraud, whether heretofore denominated in intrinsic

8     or extrinsic misrepresentation or other misconduct of an

9     adverse party; four, the judgment is void; five, the judgment

10    has been satisfied, released or discharged, or a prior judgment

11    upon which it is based has been reversed or otherwise vacated,

12    or it is no longer equitable that the judgment should have

13    prospective application; or six, any other reason justifying

14    relief from the operation of a judgment.

15          The catchall provision is not intended to apply in a

16    situation where any of the prior five provisions would apply;

17    reasons one, two and three give rise to a basis for vacatur and

18    reconsideration of vacatur for no more than a year after the

19    entry of the judgment order or the date of the proceeding.  The

20    only two grounds that could even be remotely applicable here

21    are ground number two, newly discovered evidence which by due

22    diligence could not have been discovered in time to move for a

23    new trial under Rule 59(b), which is precluded by the one-year

24    limitation that I've just mentioned; and six, the catchall

25    provision.

05-44481-rdd    Doc 21491    Filed 06/27/11    Entered 07/15/11 11:28:33    Main Document
DPH HOLDINGS CORPORATION, ET AL.
Pg 15 of 27

Page 15

1          I should note that the so-called IRS ruling that Mr.

2   Sumpter is relying upon is clearly not that; on its face it is

3   not stated as a ruling, but rather only as general observations

4   about a bankruptcy qualifying event.  Moreover, it is simply a

5   restatement -- albeit from an IRS official -- of the statute,

6   although it is stated as not being binding on the IRS.  It

7   confirms that there is a twenty-four month period that could

8   only be pre and post since the statute refers to twelve months,

9   and that that period is an exception in the situation where the

10  underlying financial condition that led to the bankruptcy is

11  not a major contributing factor leading to the termination of

12  coverage.

13          But in any event, the law is clear that even if it

14  were taken to be a change in decisional law, relief should not

15  be granted under Rule 60(b), and in particular under Rule

16  60(b)(6).  See Moore's -- I'm sorry, see 12 Moore's Federal

17  Practice section 60.485(b) where the editors go on to say, "the

18  rationale for denying relief in such a situation is

19  particularly strong in cases in which a party had not bothered

20  to appeal to challenge existing law and then hopes to benefit

21  from the efforts of some other person's appeal", or I believe a

22  later development in the law that that party could not obtain

23  itself.  That the editors of Moore state that this, "should

24  never be considered an extraordinary circumstance under which

25  equity would set aside a final judgment".

Page 16

1        So I find that there is literally no likelihood of

2   success on appeal here since the appeal would be premised upon

3   vacatur of the plan modification order as well as the August

4   3rd, 2009 order and there is no basis under Rule 9024 otherwise

5   to vacate those orders.  The last public policy interest

6   provision is at best neutral here for Mr. Sumpter, although

7   given the potential harm to many third parties as described in

8   the two briefs submitted by the retirees and the VEBA trust and

9   the lack of merit to Mr. Sumpter's underlying legal arguments I

10  conclude that the public interest is against staying my recent

11  order.

12       So for all those reasons I'll deny Mr. Sumpter's

13  motion.  The debtor can submit an order doing so consistent

14  with my ruling.

15       MR. LYONS:  Thank you, Your Honor.  We will do so.

16       THE COURT:  Okay.

17       MS. BEATY:  Thank you, Your Honor.

18       THE COURT:  Thank you.

19       MR. LYONS:  That's it for the omnibus hearing, Your

20  Honor.

21       Now we turn to the forty-fifth claims hearing agenda.

22  Items 1 through 8 and items 11 -- which is the Conway matter --

23  those have all been adjourned.  Item number 10, which is the

24  claim relating to FCI entities, that I understand has been

25  settled.  So that just leaves item number 9, which is the

Page 17

1    sufficiency matter for Philip J. Carson's claim.

2              THE COURT:  Okay.

3              MR. LYONS:  So we'd like to turn to that.  I believe

4    Mr. Carson is on the line.

5              THE COURT:  Are you on the phone, Mr. Carson?

6              MR. CARSON:  This is Philip Carson, Your Honor.

7              THE COURT:  Okay.  Good morning.

8              MR. CARSON:  Good morning.

9              MR. LYONS:  And as Your Honor may recall, last time we

10   were before you on Mr. Carson's matter it was in relation to a

11   motion to deny the claim on the grounds that it was late; there

12   were some issues regarding the service and where Mr. Carson

13   was.  His mother was ill, so per the Court's admonition we did

14   reach out to Mr. Carson to discuss settlement.  In that context

15   though, we did note that Mr. Carson has also been -- filed and

16   pursuing a Workers' Compensation claim under the state of

17   Michigan laws and that precipitated the notice of sufficiency

18   hearing.  Because like, you know, most other states -- almost

19   all states that have a Workers' Compensation framework, if an

20   injury occurs while the employee is working at a workplace, the

21   sole remedy of that employee is to pursue a Workers'

22   Compensation claim.

23             THE COURT:  And if Mr. Carson successfully pursues

24   that claim, what would happen?

25             MR. LYONS:  What would happen -- the state of Michigan

Page 18

1    also filed a timely administrative claim for Workers'

2    Compensation matters, so the way that would work, Your Honor,

3    is -- because Michigan has a timely filed administrative claim,

4    ultimately the debtors would pay that post-petition Workers'

5    Compensation claim.

6              THE COURT:  Okay.

7              MR. LYONS:  So again, what we would ask for Your Honor

8    is to --

9              THE COURT:  So if Mr. Carson's successful, let's say

10   he gets the Workers' Compensation Board and however -- whatever

11   levels of appeal that people go through -- conclude that he's

12   entitled to dollar X, whatever that amount is, that would get

13   paid by DPH?

14             MR. LYONS:  Or Michigan -- or the state of Michigan.

15             THE COURT:  Or Michigan and then DPH -- and then

16   Michigan would have whatever subrogation claim or other claim

17   it would have against DPH?

18             MR. LYONS:  Correct, Your Honor.

19             THE COURT:  All right.

20             MR. LYONS:  So again, what relief we're seeking is

21   really to have Mr. Carson's claim disallowed without prejudice

22   to his rights to pursue this Workers' Compensation claim.

23             THE COURT:  Okay.  So he has a timely marker in his

24   proof of claim so he can pursue that Workers' Compensation

25   claim?

```
 1              MR. LYONS:  Well, Your Honor, I don't know exactly

 2     what all the defenses are to the Workers' Compensation --

 3              THE COURT:  Okay.

 4              MR. LYONS:  -- claim itself --

 5              THE COURT:  Fine.

 6              MR. LYONS:  -- so I don't want to prejudice -- you

 7     know -- DPH's defense of that --

 8              THE COURT:  Right.  But if it's allowed, the debtor

 9     would -- let me step back.  If I granted the debtors' objection

10     today, if the Workers' Compensation claim ultimately is allowed

11     by the Workers' Compensation Board and any appeals -- after any

12     appeals there from, my disallowance of the claim here doesn't

13     affect his right to get paid?

14              MR. LYONS:  Correct.

15              THE COURT:  Okay.  All right.  Okay.  Mr. Carson, I

16     don't know if that's made things clearer for you, but I'm happy

17     to hear from you on this point.

18              MR. CARSON:  Okay.  Yes.  I've read all the memos that

19     the law firms have sent me.  They sent me a supplemental reply

20     in reference to all the facts that were just issued.  I don't

21     know, Your Honor, if you have a copy of my response to them.

22              THE COURT:  What did -- just -- if you could summarize

23     it.

24              MR. CARSON:  It won't take long.

25              THE COURT:  I think I did, but if you could just
```

1    summarize it.

2         MR. CARSON:  The Workers' Comp, as it is there's a

3    case pending right now and of course, it's with the PBGC or

4    they have to figure that out as we just talked about.  But my

5    visibility of this whole thing is that it was negligent on the

6    company's part to have the canisters there.  Yes, I was working

7    and I was the maintenance supervisor and I had to get the

8    assembly lines back to work and I think I mentioned that before

9    it was my job to do that, and I -- you know, these canisters

10   were out there for twenty-some years and it shouldn't have been

11   there because we do yearly audits -- or the plant that I was

12   assigned to does.

13        And I was looking at this twofold, being a Workers'

14   Comp thing that would help me out with the horrendous amount of

15   pay that I view that's being lost, because when I was sixty I

16   was sent out -- and I had plans because I'm very healthy -- to

17   work longer than that; and so that would take care of that.

18   But the reason I put in -- you know, submitted this

19   administrative claim was because of all the pain and anguish

20   and the suffering I'm going through because I just located

21   myself in Florida for better air, and there's supposed to be

22   the cleanest, best air down here in Ormond Beach and -- but,

23   you know, it's not really where I wanted to live, but I'm doing

24   it so I can breathe better.  I can't breathe inside the

25   enclosed areas too good, I have to -- you know, if I go into a

Page 21

1    doctor's office or something like that then I have to get out

2    because I've got to have volume of air.

3            So anyway, I don't want to go on and on, but these are

4    the kinds of things and other things that changed my life to

5    thinking that this -- the administrative claim would help me

6    work through this, so --

7            THE COURT:  Okay.

8            MR. CARSON:  That's in summary of the whole thing, and

9    there's a lot more, but it's not the time, so.

10           THE COURT:  Okay.  Well, the consideration that I have

11   to take into account here, however, is that the allowance of

12   your claim against the debtors is governed by the law of

13   Michigan; that's where this -- where you inhaled the gas.

14           MR. CARSON:  Right.

15           THE COURT:  Or where the factory was where you say you

16   inhaled the gas.

17           MR. CARSON:  Right.

18           THE COURT:  Under Michigan law the legislature is

19   established as part of the Workers' Disability Compensation Act

20   that an employee's exclusive remedy -- only remedy against an

21   employer for personal injury or occupational disease is the

22   recovery of the benefits provided for in that Workers'

23   Compensation Act.

24           MR. CARSON:  Right.  Right.

25           THE COURT:  This is ultimately a negligence claim --

1    again, that the company was negligent in leaving the canisters

2    in the condition they were in where they were -- where you say

3    you found them.  And therefore the exception to that exclusive

4    remedy doesn't apply.  The only exception is an intentional

5    tort and the Supreme Court of Michigan has been very clear on

6    that in construing the Workers' Compensation statute.

7              MR. CARSON:  Right.

8              THE COURT:  In a case called Gray v. Morley --

9              MR. CARSON:  Right.

10             THE COURT:  -- 460 Mich. 738 (1999).

11             So I believe that the debtors are correct that your

12   only remedy here is to continue to pursue your Workers'

13   Compensation claim under the Workers' Disability Compensation

14   Act.  And my disallowance of your administrative claim here is

15   without prejudice to your rights in that Workers' Compensation

16   proceeding, including if ultimately you're -- you know, you're

17   found to be entitled to payment by either the debtor or, as

18   would probably happen, the state of Michigan.

19             And the exclusive exception is in Section 418.1311 of

20   that Workers' Compensation Act, so I'm going to grant the

21   debtors' objection.  Again, as they say and as we made clear on

22   the record, it's without prejudice to your continued right to

23   get -- if in fact you win in the Workers' Compensation case

24   that's pending -- to get paid on that claim, either from

25   Michigan --

05-44481-rdd   Doc 21491   Filed 06/27/11   Entered 07/15/11 11:28:33   Main Document
DPH HOLDINGS CORPORATION, ET AL.
Pg 23 of 27

Page 23

1              MR. CARSON:  Right.

2              THE COURT:  -- or from the debtor under the Michigan

3     act.

4              So I'm going to ask the debtor to submit an order

5     consistent with that ruling.

6              MR. LYONS:  We will do so, Your Honor.  And we'll copy

7     Mr. Carson.

8              THE COURT:  Okay.  Thank you.

9              MR. LYONS:  All right, Your Honor, that's it for the

10    claims agenda.  I thought I would quickly sum up where we are

11    just generally speaking with claims that are out there, and

12    this won't take more than a minute or so.

13             THE COURT:  Okay.

14             MR. LYONS:  We have about eighty or so claims, both

15    pre-petition and post-petition.  There are, you know, several

16    significant claims, including the Ohio Workers' Compensation

17    claim, which we're in active discussions with them, but that is

18    a, you know --

19             THE COURT:  I'm sorry, I jostled the microphone.

20    Ohio, you say?

21             MR. LYONS:  Yeah.

22             THE COURT:  Yeah.

23             MR. LYONS:  The Ohio Bureau of Workers' Compensation.

24             THE COURT:  Right.

25             MR. LYONS:  We're working with them --

DPH HOLDINGS CORPORATION, ET AL.

Page 24

1            THE COURT:  Right.

2            MR. LYONS:  -- but that's a pretty significant claim.

3            THE COURT:  Right.

4            MR. LYONS:  We have a number of federal claims that

5    we're negotiating with the U.S. government on, and there are

6    also a host of environmental claims.  Some of the environmental

7    claims go away though, once DPH is able to sell off certain

8    sites, so those are being wound down and disposed of.

9            THE COURT:  Okay.

10           MR. LYONS:  Then, you know, assorted trade claims, but

11   we're making really good progress on those.  Then up on appeal

12   we have the Ace Michigan sovereign immunity issue; that's

13   before the Second Circuit --

14           THE COURT:  Right.

15           MR. LYONS:  -- I believe oral argument's going to be

16   August 28th.

17           Also up on appeal is the Michigan post-petition

18   assessment claim; that's fully briefed awaiting ruling from the

19   district court.  Then of course, two days ago there were a

20   bunch of avoidance actions, so those still are wending their

21   way through the process.

22           THE COURT:  Right.

23           MR. LYONS:  So that's pretty much where we are, you

24   know, and Methode as well is out there.  You know, ultimately

25   we're looking forward to case closing when the rest of these

Page 25

1    matters get resolved.

2            THE COURT:  I am too.

3            MR. LYONS:  So -- but we're making progress and I

4    think we're keeping our --

5            THE COURT:  No, I think you're --

6            MR. LYONS:  -- eye on the ball.

7            THE COURT:  I mean, I said this yesterday -- or the

8    day before yesterday.  You clearly are making progress, given

9    where you started with over 13,000 claim objections.

10           Okay.

11           MR. LYONS:  So that's it.  Thank you, Your Honor.

12           THE COURT:  Thank you.

13       (Whereupon these proceedings were concluded at 10:54 AM)

14

15

16

17

18

19

20

21

22

23

24

25

Page 26

1

2                                I N D E X

3

4                              RULINGS

5                                              Page        Line

6    Motion to Stay Plan Remodification Order      16           12

7    Denied

8

9    Debtors' Objection to Administrative Claim    22           20

10   Granted

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 27

1

2                          C E R T I F I C A T I O N

3

4       I, Avigayil Roth, certify that the foregoing transcript is a

5       true and accurate record of the proceedings.

6
        Avigayil          Digitally signed by Avigayil Roth
7                         DN: cn=Avigayil Roth, o, ou,
        Roth              email=digital1@hotmail.com,
                          c=US
8                         Date: 2011.06.27 11:14:36 -04'00'
        _____

9       AVIGAYIL ROTH

10

11      Veritext

12      200 Old Country Road

13      Suite 580

14      Mineola, NY 11501

15

16      Date:  June 27, 2011

17

18

19

20

21

22

23

24

25