# Exhibit A

**Hearing Date and Time: August 25, 2011 at 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Albert L. Hogan, III
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
 Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | : | |
| In re | : | Chapter 11 |
| | : | |
| DPH HOLDINGS CORP., et al., | : | Case No. 05-44481 (RDD) |
| | : | |
|     Reorganized Debtors. | : | (Jointly Administered) |
| | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | | |

REORGANIZED DEBTORS' STATEMENT IN OPPOSITION TO DECLARATIONS FILED
BY CERTAIN PREFERENCE DEFENDANTS REGARDING SERVICE OF THE
SUPPLEMENTAL POSTCONFIRMATION EXTENSION OF
<u>AVOIDANCE ACTION SERVICE DEADLINE MOTION</u>

(REORGANIZED DEBTORS' 4(M) SERVICE STATEMENT)

DPH Holdings and its affiliated reorganized debtors in the above-captioned cases (collectively, the "Reorganized Debtors"), formerly known as Delphi Corporation and certain of its subsidiaries and affiliates, former debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), submit this statement concerning the declarations filed by certain preference defendants (the "Declarations") regarding service of the Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion (Docket No. 18952) (the "Final Extension Motion"),[1] attached as Exhibit A hereto.

**INTRODUCTION**

1.  This Statement responds to allegations in the Declarations that the Debtors' service of the Final Extension Motion was improper because certain preference defendants were not served with the Final Extension Motion and service was not in accord with the Supplemental Case Management Order (defined below). This Statement has been prepared with the assistance of the Reorganized Debtors' counsel of record that was responsible for service and prosecution of the Final Extension Motion in the Debtors' consolidated cases in October 2009. Such counsel did not participate in the June 21, 2011 hearing regarding individual adversary proceedings (which have been prosecuted since 2009 by special counsel) at which hearing there was apparently some confusion regarding the scope of notice authorized by this Court with respect to the Final Extension Motion. Because these issues were left unresolved at the conclusion of the June 21 hearing, the Reorganized Debtors' have compiled the relevant history to show that service of the Final Extension Motion was both proper and transparent.

---

[1] Capitalized terms used and not defined in this statement have the meanings ascribed to them in the Final Extension Motion.

2.    Like each of the predecessor extension motions filed in the Reorganized Debtors' consolidated chapter 11 cases, the Final Extension Motion was *not* served on individual preference defendants *except* with respect to a very small list of defendants to whom service was directed by the Court and those parties with potential preference exposure that had determined to monitor the Debtors' chapter 11 cases and receive notices through the master or 2002 service lists by filing an appearance in the Debtors' chapter 11 cases.  This limited service of the Final Extension Motion was not improper; to the contrary, the Final Extension Motion, like every other extension motion, was, by definition, an *ex parte* proceeding, the service scheme was identical with every other extension motion, had been established by disclosure and discussion with the Court, and the order approving the Final Extension Motion—just like all prior extension orders—provided that the preference defendants would *not* receive service of that order until they were served with a complaint.

3.    Indeed, to have required immediate service of the Final Extension Motion on all preference defendants in October 2009 would have defeated the very purpose of the Final Extension Motion, which, like the previous extension motions, was to keep the complaints sealed and avoid unnecessary litigation costs while the Debtors determined whether or not they would proceed with various preference actions.  The fact that the Reorganized Debtors ultimately proceeded with the prosecution of most of the remaining avoidance actions does not vitiate either the good cause demonstrated at the October 2009 hearing, or the relief granted by this Court with respect to the Final Extension Motion.

**BACKGROUND**

4.    <u>Preservation of Estate Claims Procedures Order</u>.  On August 16, 2007, the Court entered the Preservation of Estate Claims Procedures Order (Docket No. 9105) which,

3

among other things, (i) authorized the Debtors to file complaints in the adversary proceedings pertaining to avoidance actions under seal, (ii) stayed each adversary action unless and until the Debtors made service of process on the respective defendants, and (iii) extended to March 31, 2008, the deadline under Federal Rule of Civil Procedure 4(m) by which the Debtors would have to serve process, so that the complaints would not be subject to dismissal under Federal Rule of Civil Procedure 4(m).  (Preservation of Estate Claims Procedures Order ¶¶ 7-9, attached as Exhibit B hereto.)  Such relief was intended to allow the Debtors to "preserve potentially valuable assets without disrupting the plan process or existing business relationships prematurely or prejudicing the rights of any defendants."  (Preservation of Estate Claims Procedures Motion ¶ 34 (Docket No. 8905), attached as Exhibit C hereto.)  In addition, while the Preservation of Estate Claims Procedures Motion was served on only the master and 2002 service lists[2] (Aff. of Serv. (Docket No. 9039)), the Preservation of Estate Claims Procedures Order provided that: "The Debtors must serve a copy of this order upon each defendant in any Adversary Proceeding *either when the Debtors serve a summons and complaint on the defendant or as soon thereafter as practicable*."  (Preservation of Estate Claims Procedures Order ¶ 11 (emphasis added).)  In accordance with the Preservation of Estate Claims Procedures Order, the Debtors commenced 742 adversary proceedings (the "Adversary Proceedings") by filing complaints under seal.  None of those complaints, however, were served at that time.

       5.      First Extension Motion.  As the March 31, 2008, deadline to serve complaints in the Adversary Proceedings approached, the Debtors had not yet substantially

---

[2] Based on the information provided by special counsel handling the Adversary Proceedings, preference defendants—or their counsel either directly or indirectly by notice to such counsel's firm—in 19 of the 77 remaining Adversary Proceedings received actual notice of the Preservation of Estate Claims Procedures Motion (14 on the master or 2002 service lists, 9 by electronic notification through the Court's ECF system—4 received both forms of notice).

consummated a plan of reorganization.  The Debtors, therefore, filed the Extension of Avoidance Action Service Deadline Motion (Docket No. 12922) (the "First Extension Motion"), attached as <u>Exhibit D</u> hereto, seeking to extend the deadline to serve complaints by two months to May 31, 2008.  In addition, the First Extension Motion—like all subsequent extension requests, including the Final Extension Motion—provided that notice of the motion had been provided in accordance with the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures (Docket No. 2883) (the "Supplemental Case Management Order") .  (First Extension Motion ¶ 26.)  The underlying predicate in this representation was the Debtors' good faith belief that the Supplemental Case Management Order should not be interpreted to require service of process on defendants that were party to sealed actions for which the Debtors were seeking procedural extensions of time to serve the complaints and summons.

     6.  At all relevant times, the Debtors were completely and publicly transparent about their interpretation of the Supplemental Case Management Order.  Their interpretation is further supported by Bankruptcy Rule 9006(b)(1) which did not require the Debtors to serve the extension motions.  <u>See</u> <u>Law Debenture Trust Co. v. Calpine Corp.</u> (In re Calpine Corp.) 356 B.R. 585, 595 (S.D.N.Y. 2007); <u>Kernisant v. City of New York</u>, 225 F.R.D. 422, 431 n.13 (E.D.N.Y. 2005); <u>Brady v. Marks</u>, 7 F. Supp. 2d 247 255 (W.D.N.Y. 1998).  This additional authority was specifically cited in each of the extension motions subsequent to the First Extension Motion in a further effort to be completely transparent.  Moreover, as early as the hearing on the First Extension Motion, the Debtors and the Court engaged in specific discussions regarding the scope of notice of the extension motions.  Indeed, at the hearing on the First

Extension Motion, the Court specifically asked the Debtors whether the preference defendants that were named as retained actions under the Confirmed Plan had received notice of the First Extension Motion. The Debtors responded that such defendants "would have *not* gotten individualized notice unless they were on the 2002 list."[3] (Hr'g Tr. 23:19-21, Mar. 19, 2008, relevant excerpts of which are attached as <u>Exhibit E</u> hereto (emphasis added).) The Debtors further explained that defendants were not served because they were not aware of the existence of the complaints. <u>Id.</u> 23:23-24. Taking these statements under advisement, the Court instructed the Debtors to settle the order approving the First Extension Motion on parties whose identities were publicly disclosed among the retained causes of action listed on Exhibit 7.24 of the Confirmed Plan—Laneko Engineering Co., Wachovia Bank, National Association, and Laneko Engineering Co., Inc. (<u>See</u> Hr'g Tr. 24:7-10, Mar. 19, 2008.) As to preference defendants in the other 741 Adversary Proceedings, most of which did not receive service of the First Extension Motion, the Court noted that: "With regard to the vast majority [of Adversary Proceedings], all the others, clearly there's a good basis for not activating that litigation. It would be moot upon consummation of the plan." <u>Id.</u> 24:12-14. To which the Debtors' counsel responded: "And the existence of those folks is obviously that the exhibit to the plan is public. So everyone knows what that retention is." <u>Id.</u> 24:15-17. The Court agreed. <u>Id.</u> 24:19.

       7.      Accordingly, on March 20, 2008, the Debtors filed a notice of presentment (Docket No. 13190) with respect to the order approving the First Extension Motion. No party objected. The Court therefore entered an order approving the First Extension Motion (Docket

---

[3] Based on the information provided by special counsel handling the Adversary Proceedings, preference defendants—or their counsel either directly or indirectly by notice to such counsel's firm—in 21 of the 77 remaining Adversary Proceedings received actual notice of the First Extension Motion (14 on the master or 2002 service lists and 12 by electronic notification through the Court's ECF system—5 received both forms of notice). No objections were filed by anyone with respect to the First Extension Motion.

6

No. 13277), attached as <u>Exhibit F</u> hereto, which provided that "The Debtors shall serve a copy of this order upon each defendant in any Adversary Proceeding either when the Debtors serve a summons and complaint on such defendant or as soon thereafter as practicable." (Extension of Avoidance Action Service Deadline Order ¶ 2.) Additionally, based on the exchange with the Court regarding Laneko Engineering Co., Bank, National Association, and Laneko Engineering Co., Inc., the Debtors served these three parties in connection with all subsequent extension requests and included them in the notice sections of the corresponding motions.

        8.      <u>Second Extension Motion</u>. On April 10, 2008, after the Debtors' plan investors failed to participate in a closing and fulfill their obligations to fund the Confirmed Plan, the Debtors filed a motion (Docket No. 13361) (the "Second Extension Motion"), attached as <u>Exhibit G</u> hereto, seeking to extend the service deadline from May 31, 2008, to a date thirty days after substantial consummatio of the Confirmed Plan or any modified plan. The Debtors served the Second Extension Motion upon the master and 2002 service lists, as well as Laneko Engineering Co., Wachovia Bank, National Association, and Laneko Engineering Co., Inc.[4] The Second Extension Motion again stated that notice of the motion was provided in accordance with the Supplemental Case Management Order and, further, that notice of the motion also was provided to the three individual preference defendants. (Second Extension Motion ¶ 27.) This additional disclosure regarding notice to Laneko Engineering Co., Wachovia Bank, National Association, and Laneko Engineering Co., Inc. is consistent with the Debtors' interpretation of the requirements of the Supplemental Case Management Order as it pertained to the various

---

[4] Based on the information provided by special counsel handling the Adversary Proceedings, preference defendants—or their counsel either directly or indirectly by notice to such counsel's firm—in 21 of the 77 remaining Adversary Proceedings received actual notice of the Second Extension Motion (14 on the master or 2002 service lists or by individual service and 12 by electronic notification through the Court's ECF system—5 received both forms of notice). No objections were filed by anyone with respect to the Second Extension Motion.

7

extension motions and as discussed with the Court.  Indeed, the disclosure of service on the three parties mandated by the Court in the prior hearing would have been meaningless if the Debtors had served all of the preference defendants.

        9.     At the hearing on the Second Extension Motion, the Debtors again raised the issue of service and informed the Court that:

> We did give some specific notice in connection with [the Second Extension Motion], Your Honor.  We gave notice of the motion to [Laneko] Engineering Company, Wachovia Bank National Association and the master service list and the 2002 list.  The reason that we gave specific notice to [Laneko] and Wachovia was because those were the only two parties that had been identified under Exhibit 7.24 of the plan as having the avoidance actions preserved under the plan and, therefore, we gave particularized notice to them of the relief sought by the debtors.  We have not given notice to the 742 other defendants therein which are under seal and it was not served on those defendants except to the extent those defendants already had placed themselves on either the master service list or the 2002 list.

(Hr'g Tr. 11:18-12:5, Apr. 30, 2008, relevant excerpts of which are attached as Exhibit H hereto.)

The Court concluded that:

> Except for the notice you did give I don't think any further notice is necessary under the plain terms of 9006 and the cause is obviously that the analysis so far that's presented in the motion is the same as it was when the motion was originally granted which is that these causes of action are being preserved in light of the limitations period, however, it's not presently contemplated that they will be pursued, although obviously the preservation of them means that they may be pursued but given that there's no reason for either the debtors or the potential defendants to start to have to incur any costs in connection with the litigation . . . cause is shown under Rule 4(m) and 9006.

Id. 12:17-13:3.  As a result, the order approving the Second Extension Motion (Docket No. 13484), attached as Exhibit I hereto, again provided that "The Debtors shall serve a copy of this order upon each defendant in any Adversary Proceeding either when the Debtors serve a summons and complaint on such defendant or as soon thereafter as practicable."

(Postconfirmation Extension of Avoidance Action Service Deadline Order ¶ 2.)

8

10. <u>Modified Plan</u>. On July 30, 2009, the Court entered an order approving the Modified Plan (Docket No. 18707). Among the various modifications to the Confirmed Plan, the Modified Plan provided for the retention of 177 of the 742 Adversary Proceedings. (<u>See</u> Modified Plan Ex. 7.19. ¶ 6.) At the time, the Debtors were considering whether to retain special counsel to prosecute the retained Adversary Proceedings and had not yet decided to proceed in any of the Adversary Proceedings. In accordance with paragraph 2 of the order approving the Second Extension Motion, the Debtors therefore determined to keep the retained Adversary Proceedings sealed until after substantial consummation of the Modified Plan.

11. <u>Final Extension Motion</u>. As the Debtors approached the effective date of the Modified Plan in October 2009, it became clear that facilitating the complex transactions provided for under the Modified Plan and the Master Disposition Agreement would consume most of the Reorganized Debtors' time and resources in the immediate wake of their emergence from chapter 11. (Final Extension Motion ¶ 17.) These restraints were particularly onerous once it was determined that the Reorganized Debtors would have only a single employee and that a separate law firm would pursue the Adversary Proceedings. (Hr'g Tr. 5:10-18, Oct. 22, 2009, attached as <u>Exhibit J</u> hereto). Although the Debtors had narrowed the number of Adversary Proceedings from 742 to 177, the Debtors concluded that an additional extension was necessary to evaluate the remaining Adversary Proceedings and determine whether to proceed with litigation. Accordingly, on October 2, 2009, the Debtors filed the Final Extension Motion seeking a further extension of the service deadline from 30 days to 180 days after the effective date of the Modified Plan. The underlying rationale for the Final Extension Motion remained the same as prior extensions. The Debtors believed that, given additional time to evaluate the 177 retained Adversary Actions, the Reorganized Debtors might elect not to pursue certain

9

preference claims, thereby avoiding unnecessary litigation and the corresponding costs to both the Reorganized Debtors and preference defendants. (Final Extension Motion ¶ 18.).

12. Upon filing the Final Extension Motion, the Debtors served the parties listed on the master and 2002 lists, as well as the special parties that the Court required be served in connection with the First Extension Motion and the Second Extension Motion (i.e., Laneko Engineering Co., Wachovia Bank, National Association, and Laneko Engineering Co., Inc.). (Final Extension Motion ¶ 24.) Like the previous extension motion, the Final Extension Motion stated that notice of the motion had been provided in accordance with the Supplemental Case Management Order. Once again, the Final Extension Motion also stated that notice of the motion was provided to Laneko Engineering Co., Wachovia Bank, National Association, and Laneko Engineering Co., Inc. As explained above, naming these three parties would have been meaningless if the Debtors had served every one of the remaining preference defendants. The Debtors did not individually serve any of the other preference defendants in the Adversary Proceedings with the Final Extension Motion. Nevertheless, based on the information provided by special counsel handling the Adversary Proceedings, preference defendants—or their counsel either directly or indirectly by notice to such counsel's firm—in 22 of the 77 remaining Adversary Proceedings received actual notice of the Final Extension Motion (12 on the master or 2002 service lists or by individual service and 19 by electronic notification through the Court's ECF system—7 received both forms of notice).[5] Consistent with the record in the chapter 11 cases with respect to the prosecution of the First and Second Extension Motions, counsel to the Reorganized Debtors noted on the record at the hearing on the Final Extension Motion that

---

[5] As with the prior extension motions, no objections were filed by *anyone* with respect to the Final Extension Motion.

10

service had been completed "in the usual fashion." (Hr'g Tr. 5:21, Oct. 22, 2009.) Approving the Final Extension Motion, the Court observed that:

> Obviously the debtors' decision to proceed this way is borne out by the fact that the vast majority of these cases have already been, effectively, booted out. And as the motion states, the potential plaintiff, here, certainly should have a little more time to analyze whether it makes sense to bring the remaining lawsuits or only some of them before DPH and the defendants incur additional costs.

Id. 6:20-7:1. And, once again, the order approving the Final Extension Motion (Docket No. 18999) provided that "The Debtors shall serve a copy of this order upon each defendant in any Adversary Proceeding *either when the Debtors serve a summons and complaint on such defendant or as soon thereafter as practicable*."[6] (Postconfirmation Extension of Avoidance Action Service Deadline Order (Docket No. 18999) ¶ 2, attached as Exhibit K hereto (emphasis added).)

## STATEMENT

13.  Although the treatment of the Adversary Proceedings had changed since the Court granted earlier extensions—the Modified Plan, unlike the Confirmed Plan, contemplated that the Reorganized Debtors would pursue at least some of the undisclosed Adversary Proceedings—the rationale for keeping complaints sealed and withholding notice to undisclosed preference defendants remained the same at the time of the Final Extension Motion. The Debtors already had made the decision not to pursue the substantial majority of the Adversary Proceedings by retaining only 177 of the 742 Adversary Proceedings, and believed that further resources of both the Reorganized Debtors and the preference defendants could be saved by giving the Reorganized Debtors additional time with its recently retained special

---

[6] To be sure, this requirement to serve preference defendants along with the complaint would have been redundant if all preference defendants were required to receive service at the time of the hearing.

11

counsel to assess the remaining Adversary Proceedings and potentially avoid unnecessary litigation. The Debtors' demonstration of good cause in connection with the Final Extension Motion cannot be vitiated because the Reorganized Debtors, with the benefit of additional time, determined that it was in the Debtors best interests to pursue the retained Adversary Proceedings.

14. As set forth above, the lack of notice to preference defendants prior to the hearing on the Final Extension Motion was not the result of any dereliction by the Debtors. In fact, as described above, notice of the Final Extension Motion was made in the same manner as notice of each of the First and Second Extension Motions under Federal Rule of Civil Procedure 4(m), including identically phrased references to the Supplemental Case Management Order. By confirming at the hearing on the Final Extension Motion that notice of the Final Extension Motion was provided "in the usual fashion," the Debtors did nothing more than confirm the scope and method of process that had been reviewed with and approved by the Court in respect of the trilogy of 4(m) extension motions. As explained herein, the Debtors had consistently and candidly disclosed that this description of the service of the motions specifically did *not* include service on the preference defendants whose complaints remained under seal, and who were not otherwise on the master or 2002 service lists (except as otherwise specifically required by the Court).

15. Accordingly, notice of each of the First, Second, and Final Extension Motions was consistent with the Preservation of Estate Claims Procedures Order and the statements made on the record at the hearings on those motions. Any assertion to the contrary in the Declarations is incorrect.

Dated: New York, New York
       August 2, 2011

                        SKADDEN, ARPS, SLATE, MEAGHER
                          & FLOM LLP

                By:  /s/ John Wm. Butler, Jr.
                      John Wm. Butler, Jr.
                      John K. Lyons
                      Albert L. Hogan, III
                      Ron E. Meisler
                      155 North Wacker Drive
                      Chicago, Illinois 60606

                          - and -

                      Four Times Square
                      New York, New York 10036

                      Attorneys for DPH Holdings Corp., et al.,
                       Reorganized Debtors