BUTZEL LONG, a professional corporation
150 West Jefferson, Suite 100
Detroit, Michigan 48226
Cynthia J. Haffey
Sheldon H. Klein
Thomas Radom
Bruce L. Sendek
David J. DeVine
Telephone: (313) 225-7000
Facsimile: (313) 225-7080
*Attorneys for Reorganized Debtors*

**Hearing Date and Time:**
**August 25, 2011 at 10:00 a.m.**
**(Prevailing Eastern time)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

DPH HOLDINGS CORP., *et al.*,

                 Reorganized Debtors.

Chapter 11
Case No. 05-44481 (RDD)
(Jointly Administered)

**REORGANIZED DEBTORS' OMNIBUS RESPONSE TO**
**CERTAIN DEFENDANTS' SUBMISSIONS REGARDING THE**
**OCTOBER 2, 2009 SUPPLEMENTAL POSTCONFIRMATION EXTENSION**
**OF AVOIDANCE ACTION SERVICE DEADLINE MOTION**

141814\001\1294206

## TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** ............................................................................................. 2

**ARGUMENT** .................................................................................................................. 7

I.      The Final Extension Order is Proper, and the Debtors Made No
Misrepresentations to the Court Regarding Service of the Final Extension
Motion. .................................................................................................................. 7

II.     Debtors Used the Additional Time Allowed by the Final Extension Order to
Evaluate the 177 Preference Actions. ................................................................. 10

III.    This Court's Final Extension Order Was And Remains A Valid Order Of
The Court that Should Not be Reconsidered or Modified. ................................... 11

IV.     The Facts and Circumstances Regarding the Final Extension Order Do Not
Justify Denying Leave to Amend ........................................................................ 13

V.      Even if Submission Defendants Could Properly Challenge the Final
Extension Order, Debtors' Claims Would Not Be Time-Barred or Futile ........... 16

VI.     The Submission Defendants' Submissions Do Not Resolve the Question of
their Notice or Knowledge ................................................................................... 17

**CONCLUSION** ............................................................................................................. 21

## TABLE OF AUTHORITIES

**Page**

### Cases

*A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*,
    87 F. Supp. 2d 281 (S.D.N.Y. 2000)................................................................ 15

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) ..................................... 14

*Aucoin v. Southern Ins. Facilities Liquidating Corp. (In re Aucoin)*,
    35 F.3d 167 (5th Cir. 1994) ........................................................................... 11

*Baldayaque v. US*, 338 F. 3d 145 (2d Cir. 2003)................................................. 16

*Foman v. Davis*, 371 U.S. 178 (1962) ................................................................. 14

*Haekal v. Refco, Inc.*, 198 F.3d 37 (2d Cir. 1999) ............................................... 16

*Hemispherx Biopharma, Inc. v. Johannesburg Consol. Investments*,
    553 F.3d 1351 (11th Cir. 2008) ..................................................................... 21

*In re Medaglia*,
    52 F.3d 451 (2d Cir. 1995)............................................................................. 18

*In re Pharmacy Benefit Managers Antitrust Litig.*,
    582 F.3d 432 (3d Cir. 2009)........................................................................... 12

*In re Schicke*,
    290 B.R. 792 (Bankr. App. 10th Cir. 2003)................................................... 18

*In re TWA Inc. Post Confirmation Estate*,
    305 B.R. 221 (D. Del. 2004) .......................................................................... 19

*In re Yashaya*,
    403 B.R. 278 (E.D. N.Y. 2009) ...................................................................... 18

*Journal Pub. Co. v. American Home Assurance Co.*,
    771 F. Supp. 632 (S.D.N.Y. 1991)................................................................. 14

*Mann v. American Airlines*,
    324 F.3d 1088 (9th Cir. 2003) ....................................................................... 16

*McCurdy v. American Bd. of Plastic Surgery*,
    157 F.3d 191 (3rd Cir. 1998) ......................................................................... 20

*Monahan v. New York City Dept. of Corrections*,
    214 F.3d 275 (2d Cir. 2000)........................................................................... 14

*National Union Fire Ins. Co. v. Barney Assoc.*,
    130 F.R.D. 291 (S.D.N.Y.1990) .................................................................... 13

*State Teachers Retirement Bd. v. Fluor Corp.*,
    654 F.2d 843 (2d Cir. 1981)........................................................................... 15

*Virgin Atlantic Airways v. Nat. Mediation Bd.*,
    956 F. 2d 1245 (2d Cir. 1992)........................................................................ 11

*Wright v. Potter,* 350 Fed. Appx. 898; 2009 WL 3416246 (5th Cir. 2009)................................... 17

*Zapata v. City of New York*,
    502 F.3d 192 (2d Cir. 2007)......................................................................... 17

**Rules**

Fed. R.Civ.P. 4(m) ........................................................................ 1, 7, 8, 13, 17, 18, 21

Fed.R.Civ.P. 12(b)(5).................................................................................. 21

Fed.R.Civ.P. 12(g) and (h)............................................................................ 5, 21

DPH Holdings Corp. ("DPH Holdings") and its affiliated reorganized debtors in the above-captioned cases (collectively, the "Reorganized Debtors"), formerly known as Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, former debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"[1]), submit this Omnibus Response to the submissions[2] of 43 defendants[3] (collectively, the "Submission Defendants") in the preference actions arising from the above-captioned cases (collectively, the "Preference Actions") concerning the Debtors' October 2, 2009 Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion (the "Final Extension Motion").

Debtors, through Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), their counsel in connection with the Final Extension Motion (and all prior Extension Motions), have separately filed a "Motion Under 11 U.S.C. Section 105 and Fed R. Bankr. P. 9014 for Leave to (I) Supplement the Record of the June 21, 2011 Hearing and (II) File the Reorganized Debtors' Statement Regarding Service of the Final Extension Motion," together with an accompanying "4(m) Service Statement" in Case No. 05-44481, (collectively, the "Skadden Filings") responsive to questions raised by the Court concerning the service of and reasons for the Final

---

[1] For simplicity, this Omnibus Response generally refers to "Debtors," since the distinctions are not important to this Response.

[2] The Submission Defendants are identified in Exhibits 20-61. The submissions are variously titled and generally include a declaration, together with an accompanying brief or other filing. For simplicity, Debtors will refer to these documents as "Submissions," unless the context requires a more specific description.

[3] Many Submissions address issues other than the Final Extension Motion. The Debtors do not attempt to respond to each of these other arguments in this Omnibus Response. The Debtors believe that these untimely arguments, filed 6 months or more after the schedule set by this Court, should not be considered. If the court does elect to consider them, the Debtors ask that the Court establish a schedule for the orderly briefing of these new motions and to avoid further piecemeal and untimely filings.

Extension Motion and Order.  The Skadden Filings are attached to this Omnibus Response as Exhibit 3 and are incorporated by reference.

This Omnibus Response addresses issues of exceptional importance, being potentially dispositive of valid and valuable preference claims.  Moreover, it responds to Submissions that were filed after the recent June 21, 2011 hearing and addresses matters raised at that hearing regarding service of the Final Extension Order which, as the Court recognized, "were not on the agenda" and would "sidetrack" the court from the intended purpose of the June 21, 2011 hearing. (Ex. 2, Transcript pp. 56 – 57).  Thus, Debtors submit that a hearing is essential if the Court does not reject on the papers the Submission Defendants' challenges to the Final Extension Order and related challenges to Debtors' Motion to Amend.

## PRELIMINARY STATEMENT

1.     Each of the Submissions includes declarations addressing whether each Defendant received formal notice and/or had knowledge of the Final Extension Motion, but they materially vary in their assertions.  The Submission Defendants' assertions regarding their notice and knowledge are addressed principally in Section VI of this Omnibus Response and in the individual responses to the Submissions, attached as Exs. 20-61

2.     Many of the Submissions also wrongly accuse the Debtors of making false representations to the Court regarding service of the Final Extension Motion and challenge the adequacy of the reasons the Debtors gave for not serving the Final Extension Motion on all Submission Defendants.  At the June 21, 2011 hearing (the "June 21 Hearing") on the Reorganized Debtors' Motion for Leave to File Amended Complaints (the "Motion to Amend"), the Court also raised questions on these topics.  The Submissions also generally argue that the facts regarding the Submission Defendants' notice and/or knowledge of the Final Extension

-2-

Motion and the surrounding circumstances warrant vacating the Final Extension Order, dismissing the Preference Actions, or denying leave to amend.

3.      Many of the Submissions also make individualized, fact-intensive assertions regarding alleged prejudice to the Submission Defendant.

4.      In this Omnibus Response, the Debtors demonstrate the following:

• The Debtors made no misrepresentations to the Court regarding service of the Final Extension Motion.  The Debtors were forthright and transparent about the fact that the Final Extension Motion (like all prior Extension Motions)[4] was not being served on the Submission Defendants unless such parties were specifically identified in the Motion or were on the master or 2002 service lists.

• The Final Extension Motion offered sound reasons for not serving all of the Submission Defendants, including allowing the Debtors to evaluate the 177 pending Preference Actions and to determine whether or not to pursue some of them.

• Following the Final Extension Order, DPH did review the Preference Actions, consistent with the statements in the Final Extension Motion.  John Brooks, the President of DPH Holdings, reviewed and evaluated each Preference Actions and made a business decision that pursuing the 177 Preference Actions was in the Debtors' best interest. (Ex. 1, Declaration of John Brooks, ¶5) ("Brooks Declaration")).

---

[4]There were a total of four motions concerning the filing of the Preference Actions under seal and the extension of time for service (each unopposed and each resulting in a corresponding order): a "Preservation of Estate Claims Procedures Motion" (the "Preservation Motion") (Docket No. 8905) and Order (Docket No. 9105) and three motions extending the Preservation Motion Order.  (Docket Nos. 12922, 13361 and 18952 (respectively, the "First," "Second," and "Final" Extension Motions)).  The four motions will be referred to collectively as the "Extension Motions" and the corresponding orders as the "Extension Orders."

- This Court entered the Final Extension Order on October 22, 2009 (Docket No. 18999), again directing the Debtors to defer serving the Final Extension Order on the Submission Defendants until such time as the Debtors served their complaints or shortly thereafter.

- A number of Submission Defendants were served with the Final Extension Motion or Order. Other Submission Defendants were served through counsel. Counsel for other Submission Defendants received electronic notice.

- ***All of the Submission Defendants*** were served with the December 2007 Disclosure Statement that fully disclosed that Preference Actions would be filed under seal, with service deferred beyond the usual two year limitations period. Counsel for other Submission Defendants received notice of the Final Extension Motion, albeit not in their capacity as counsel for the Defendant. There are other unique, Defendant specific facts, addressed on Debtors' responses to the individual Submission Defendant Submissions. Further, as discussed below, the facts regarding the Preference Actions here were reported and commented on in the business press.

- Collectively, these facts, at a minimum, raise questions as to whether all Submission Defendants were on inquiry notice and as to the actual knowledge of the Submission Defendants who were not served with the Final Extension Motion.

- In any case, the entry of the Extension Orders without notice to all Preference Defendants, and the related sealing of the complaints in the Preference Actions, were both procedurally and substantively proper, even if some Submission Defendants had neither notice nor any relevant knowledge. Debtors addressed this at length in their initial 2010 response to

-4-

various Defendants' motions to dismiss.[5] It will not repeat those arguments here, but instead incorporate them by reference, together with all related arguments they have made in support of their Motion to Amend and in opposition to various Submission Defendants' motions to vacate the Final Extension Order.

- In addition, certain of the Submission Defendants have waived their challenge to the Final Extension Motion under Rule 12(g) by not challenging the Final Extension Order, and thus the efficacy of service, in their first responsive pleading (by affirmative defense or 12(b) motion).

- In any event, the fact that the Final Extension Motion was not served on certain Submission Defendants does not warrant either vacating the Final Extension Order or denying the Debtors' Motion to Amend.  Rather, the balance of prejudices[6] and other equitable considerations necessitates that the Debtors be permitted to pursue their Preference Actions.  The prejudice to Submission Defendants from their alleged lack of notice of the Final Extension Motion is highly fact-specific and speculative.  Even in the unlikely event that any Defendant had actually opposed the motion and that the Court had been persuaded by the opposition, the Debtors still would have had additional time to serve their complaints under the terms of the Second Extension Order.  Regardless, it is unlikely that the Submission Defendants' notice of the Final Extension Motion would have resulted in Debtors not being allowed additional time to serve their complaints.  Stated simply then, even if the Submission Defendants had all been

---

[5]"Omnibus Response to Motions Seeking, Among Other Forms of Relief, Orders to Vacate Certain Procedural Orders Previously Entered By This Court and to Dismiss the Avoidance Actions Against the Moving Defendants," Dkt. No. 20225, filed June 7, 2010 ("Omnibus Response to Dismissal Motions").  See generally, Sections I and II.

[6]As this Court has repeatedly indicated, individual assertions of prejudice require individual hearings and inquiries and cannot be addressed on an omnibus basis.

served with the Final Extension Motion, the Debtors still would have been able to pursue their Preference Actions.

- For that reason, the prejudice to the Debtors from the Court's vacation of the Final Extension Order or denial of the Motion to Amend is obvious and monumental—the Debtors would, at least according to the Submission Defendants, lose their Preference Actions altogether. Except as a severe sanction, there is no possible justification for disregarding the Debtors' reliance on the Final Extension Order and denying the Debtors the opportunity to pursue recovery of substantial dollars for the benefit of Plan creditors.[7] Debtors have done nothing wrong, let alone engage in the sort of egregious conduct that would warrant the ultimate sanction of dismissal.

- Even if the Court were inclined to vacate the Final Extension Order or deny the Debtors' Motion to Amend, the Debtors' Preference Actions would still remain viable, as the statute of limitations was and remains tolled, so Debtors would still have time to serve the complaints. The result would therefore be wasted judicial resources and needless expense to all parties, since the Debtors would be forced to re-file and/or re-serve their complaints merely to end up where they started.

5.      In light of the above facts, the Debtors respectfully request that this Court dispose of the various Submissions by upholding the Final Extension Order and granting the Debtors' Motion to Amend as to all Submission (and other) Defendants.

---

[7]The "Plan" refers to the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors in Possession (As Modified), dated July 30, 2009.

6.      In the alternative, if the Court is unwilling to grant the Debtors the relief requested above based solely on the papers, a hearing is necessary, for the reasons set forth above.

## ARGUMENT

### I.    The Final Extension Order is Proper, and the Debtors Made No Misrepresentations to the Court Regarding Service of the Final Extension Motion.

7.      The Debtors fully disclosed to this Court that the Final Extension Motion, like the three Extension Motions preceding it, was not being served on the Preference Defendants unless such Defendants were specifically identified in the Motion or were on the master or 2002 service lists.  The Debtors disclosed this fact in both their written submissions and at the hearings on the Extension Motions.   (See 4(m) Service Statement, ¶¶ 6-8 regarding the hearing on the First Extension Motion and ¶¶ 8-9 regarding the Final Extension Motion hearing.)

8.      By way of example, at the hearing on the Second Extension Motion, the Debtors informed the Court of the following:

> We did give some specific notice in connection with [the Second Extension Motion], Your Honor.   We gave notice of the motion to [Laneko] Engineering Company, Wachovia Bank National Association and the master service list and the 2002 list.   The reason that we gave specific notice to [Laneko] and Wachovia was because those were the only two parties that had been identified under Exhibit 7.24 of the plan … We have not given notice to the 742 other defendants therein which are under seal and it was not served on those defendants except to the extent those defendants already had placed themselves on either the master service list or the 2002 list.

(Apr. 30, 2008 Transcript, pp. 11-12, Ex. 3-A(H).)

9.      In response, the Court concluded that the Debtors' service procedures were both adequate and proper:

> Except for the notice you did give I don't think any further notice is necessary … [T]hese causes of action are being preserved in light of the limitations period, however, it's not presently contemplated that they will

> be pursued, although obviously the preservation of them means that they
> may be pursued but given that there's no reason for either the debtors or
> the potential defendants to start to have to incur any costs in connection
> with the litigation . . . cause is shown under Rule 4(m) and 9006.

(*Id.* at 12-13.)

10.    At the Final Extension Motion hearing, counsel for the Debtors noted on the record that service had been completed "in the usual fashion."  (Oct. 22, 2009 Transcript, p. 5, See Ex. 3-A(J).)  In light of the preceding and following facts in this Section I, the Debtors' statement regarding "the usual fashion" can only be understood to mean that notice was being given consistently with the prior Extension Motions.

11.    In approving the Final Extension Motion, the Court affirmed the reasonableness of the Debtors' procedures:

> Obviously the debtors' decision to proceed this way is borne out by the
> fact that the vast majority of these cases have already been, effectively,
> booted out.  And as the motion states, the potential plaintiff, here, certainly
> should have a little more time to analyze whether it makes sense to bring
> the remaining lawsuits or only some of them before DPH and the
> defendants incur additional costs.

(*Id.* at 6-7.)

12.    The Debtors' statements in the Extension Motions themselves, including the Final Extension Motion, were likewise truthful and transparent.  Each of the Extension Motions included language substantially identical to the following[8]:

> Although notice is not required …, notice of this Motion has been
> provided in accordance with the [Supplemental Case Management
> Order]…. Notice has also been provided to Laneko Engineering Co.,
> Wachovia Bank, National Association, and Laneko Engineering Co., Inc.
> In light of the nature of the relief requested, the Debtors submit that no
> other or further notice is necessary.

---

[8] The reference to Laneko and Wachovia were added in the First Extension Order, at the Court's direction, and were included in the Second and Final Extension Motions.

13.    The Certificates of Service filed in connection with each Extension Motion disclosed that each such Motion was served only on parties on the master and 2002 service lists, and, following the First Extension Motion, Laneko and Wachovia.

14.    As discussed further in the following section, each of the Extension Motions sought to file (or keep) the complaints in the Preference Actions under seal and to extend the time for service, in order to protect Debtors and potential defendants from incurring unnecessary expense and burden if the Preference Actions were not ultimately pursued.  The very purpose of the Extension Motions and Orders would have been undermined if the motions had been served on the Preference Defendants.  Thus, each of the Extension Motions sought, and the Extension Orders provided for, delayed service:

> The Debtors shall serve a copy of this order upon each defendant in any Adversary Proceeding either when the Debtors serve a summons and complaint on such defendant or as soon thereafter as practicable.[9]

This language is plainly inconsistent with either an obligation or a representation that the Preference Defendants were to be served with the Extension Motions before service of the complaints.

15.    Had the case been otherwise, it would have been pointless to separately identify Laneko and Wachovia, as those parties would have been subsumed by the larger group of Defendants.

16.    The reference in the Final Extension Motion to compliance with the Supplemental Case Management Order plainly did not and cannot mean that the Final Extension Motion had been served on all Preference Defendants, given that the identical language was in each prior

---

[9]Although not pertinent to the issues addressed in this Omnibus Response, the Final Extension Order was not served on some defendants until several months after service, as Debtors have previously acknowledged.

-9-

Extension Motion, that Debtors expressly informed the Court in those prior motions that notice was not being given to all Preference Defendants, and service would have been inconsistent with the purpose of the Motions and the language of the Orders.  Instead, these facts prove that Debtors fully and fairly disclosed that not all Preference Defendants were being served.

## II.    Debtors Used the Additional Time Allowed by the Final Extension Order to Evaluate the 177 Preference Actions.

17.    The Final Extension Motion identified the purpose of the Motion as follows:

> [T]he Debtors do not believe that DPH Holdings will be able to evaluate each of the retained Adversary Proceedings – for example, to assess the ongoing relationship with certain defendants and whether events since initiating the Adversary Proceedings have impacted the Debtors' estimated recoveries – and make a determination whether to pursue such Adversary Proceedings …

> ***

> In addition, the extension … will relieve the Debtors and defendants in the Adversary Proceedings from incurring unnecessary costs. Although the Debtors ultimately may determine not to prosecute certain of the Adversary Proceedings …, the Debtors would have to effect service to each of the 177 Retained Adversary Proceedings soon after substantial consummation to allow the Debtors enough to timely serve each defendant and meet the deadline set forth in the Postconfirmation Extension Order. In turn, defendants who are parties to Retained Adversary Proceedings that the Debtors otherwise might not ultimately pursue could be forced to unnecessarily incur litigation expenses associated with the defense of such Adversary Proceedings.

(Ex.3(A), ¶¶ 17 and 18.)

18.    Consistent with the purpose of the Final Extension Motion, John Brooks, DPH Holdings' President, personally reviewed the 177 Preference Actions claims and, in consultation with others, made the business decision that they should be pursued.  (Ex. 1, ¶¶5-6). The

-10-

business review did not result in the immediate abandonment[10] of any of them, but that does not mean that the purpose stated in the Motion was inaccurate or that the Debtors did not evaluate the claims.    Debtors told the court that if given an opportunity for further assessment, it "ultimately *may* determine" to not pursue some of them; Debtors did not and could not responsibly say that further assessment would result in the immediate abandonment of any claims, since those decisions necessarily turned on the future assessment. The reasons for the Final Extension Motion were proper and sufficient when made, and Debtors acted consistently with those reasons.

### III.    This Court's Final Extension Order Was And Remains A Valid Order Of The Court that Should Not be Reconsidered or Modified.

19.    The Final Extension Order remains a valid and proper order of this Court.

20.    The Final Extension Order is interlocutory, s*ee Aucoin v. Southern Ins. Facilities Liquidating Corp. (In re Aucoin)*, 35 F.3d 167, 169 (5th Cir. 1994), and may be reconsidered in the Court's discretion.  *Virgin Atlantic Airways v. Nat. Mediation Bd.*, 956 F. 2d 1245, 1255 (2d Cir. 1992).[11] However, reconsideration, modification or vacation would be improper here.

21.    When reconsidering a ruling, the Court must "take appropriate steps so that the parties are not prejudiced by reliance on the prior ruling."  *In re Pharmacy Benefit Managers*

---

[10] Debtors' evaluation of the claims was ongoing, and they did later decide not to actively seek to serve or pursue a number of defendants based on an assessment of viability and other business considerations.

[11]The Final Extension Order was the subject of an earlier challenge by 33 Defendants who filed motions to vacate under Rule 60(b).  However, as the Court recognized at the June 21, 2011 hearing, Rule 60(b) applies only to *final* judgments or orders, not to interlocutory judgments.  MOORE'S FEDERAL PRACTICE 3d, Section 60.23.  Debtors agree, and therefore address the appropriate analysis for interlocutory appeals, notwithstanding that a Rule 60 analysis is arguably more favorable to Debtors.

*Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (internal citation omitted).  Here, Debtors risk irremediably prejudice if the Submission Defendants are granted the relief they request..

22.    On the other hand, any prejudice to the Submission Defendants resulting from their alleged lack of notice of the Final Extension Motion is, at best, fact-intensive and speculative.  To the extent that certain Submission Defendants assert individualized prejudice based on events following entry of the Final Extension Order (*e.g.*, change of personnel),[12] those are fact-intensive questions that can be resolved only on an individualized basis following a fair opportunity to develop the pertinent facts.  As the Court has recognized, it cannot resolve on an omnibus basis these individual claims of prejudice.  Moreover, while the Court has broad discretion to design an appropriate remedy for any demonstrated prejudice, certainly in this case, dismissal or vacation is neither necessary nor warranted.

23.    Beyond that, Submission Defendants can only weakly speculate as to what might have happened if they had received notice of the Final Extension Motion.  They might have opposed the motion, notwithstanding that none of the Defendants that did receive notice of *any* of the Extension Motions ever filed an opposition.  The Court conceivably could have flatly denied[13] the Final Extension Motion, but there is no reason to believe that the Court would have done so.  Even if that had happened, Debtors still had additional time to serve the complaints because the Second Extension Order had not yet expired.  (See Section V below.)  Surely, Debtors would have done what was necessary to serve their complaints within the remaining

---

[12]Of course, any "prejudice" that occurred prior to the Final Extension Motion is irrelevant here.

[13]By "flatly denied," Debtors mean denied with no extension of the service time whatsoever.  Even if the Submission Defendants had been served with and opposed the Final Extension Motion, and had persuaded the Court not to enter the Final Extension Order as proposed, it does not follow that the Court would have refused to grant the Debtors at least some limited additional time to serve.

time.  Moreover, as also explained in Section V, Debtors had the right to seek additional time under Rule 4(m), even after the expiration of the Second Extension Order.  Thus, the complaints would have been timely regardless of the Final Extension Order.

24.    Additionally, even if the complaints would otherwise have been time barred, the relevant prejudice to the Submitting Defendants that the Court must now consider in reviewing the Final Extension Order "involves impairment of defendant's ability to defend on the merits, rather than foregoing such a procedural or technical advantage [of the statute of limitations]." *National Union Fire Ins. Co. v. Barney Assoc.,* 130 F.R.D. 291, 294 (S.D.N.Y. 1990).

25.    Conversely, the resulting prejudice to the *Debtors* if the Court were to award the Submission Defendants the relief they seek – (i) either the effective dismissal of valid and valuable preference claims; or (ii) the needless and immense costs associated with re-filing and re-serving all of the complaints -- monumentally outweighs any prejudice to the Submission Defendants, which at this point remains purely speculative.  In either case, the result would be unreasonable and punitive.  There was no impropriety by Debtors in the Final Extension Motion and no basis for such an unreasonable and punitive result.

## IV.    The Facts and Circumstances Regarding the Final Extension Order Do Not Justify Denying Leave to Amend

26.    Some Submission Defendants also ask this Court to deny leave to amend because they were not served with the Final Extension Motion.[14]  This Court should deny the requests and grant leave to amend.

27.    A motion to amend, although "left to the sound discretion of the district court," must be granted unless there is "good reason to deny the motion."  *Acito v. IMCERA Group, Inc.,*

_____

[14]Debtors limit their arguments to those related to the Final Extension Motion and do not repeat the broader Rule 15 issues already briefed by the parties.

-13-

47 F.3d 47, 55 (2d Cir. 1995). "[A]bsent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed." *Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 283 (2d Cir. 2000)) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Here, there is no good reason to deny the Motion.

28.     First, the Debtors' Motion to Amend cannot be denied on the grounds of futility. A proposed amendment is only futile under Rule 15 if it is unable to withstand a motion to dismiss under Rule 12(b)(6). *Journal Pub. Co. v. American Home Assurance Co.*, 771 F. Supp. 632, 635 (S.D.N.Y. 1991). Here, the Court has recognized that, with limited exceptions, Debtors' proposed First Amended Complaints state claims for relief under *Twombly* and *Iqbal*.

29.     Because the proposed First Amended Complaints stated a claim (with the noted exceptions), leave to amend can be futile only if the claims would necessarily be time-barred. As explained in Section VI below, even if the Court were to vacate the Final Extension Order (a possibility the Debtors vigorously oppose), the Debtors' Preference Actions would not be time-barred. Thus, the Debtors' amendment would not be futile.

30.     Moreover, the broader equitable considerations pertinent to Rule 15 mandate amendment. As previously explained, Debtors acted in the utmost good faith in seeking the Final Extension Order (and all prior Extension Orders).

31.     There is likewise no basis to deny the Debtors' Motion to Amend on the grounds of "dilatory motive" or "undue delay." *See Monahan*, 214 F.3d at 283. The reasons given by the Debtors for seeking the Final Extension Order were truthful, justified and appropriate, and the Debtors acted consistently with them. The Court entered its Order on a finding of good cause. Any delay was not undue or dilatory – the very purpose of the Final Extension Motion and Order

was to allow additional time to commence litigation for the purposes explained above.  In any event, "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a . . . court to deny the right to amend."  *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (reversing district court's denial of leave to amend where, at the time plaintiffs made their request, no trial date had been set, no motion for summary judgment had been filed by the defendants, and the amendment would not involve a great deal of additional discovery).

32.     Submission Defendants will not be unduly prejudiced if the Motions to Amend are granted (if it would prejudice them at all). First, under Rule 15, "prejudice alone is insufficient to justify a denial of leave to amend; rather, the necessary showing is '*undue* prejudice to the opposing party.'"  *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (internal citations omitted, emphasis in original).  "In determining whether a party's interests have been unduly prejudiced, the Second Circuit has instructed district courts to consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction."  *Id.* (internal citations and quotation marks omitted). Stated otherwise, the test for "undue prejudice" under Rule 15 turns on prospective litigation considerations arising from the new pleading; not unrelated prior litigation conduct.  *See id.*

33.     Here, therefore, Submission Defendants' claimed prejudice resulting from their alleged lack of notice of the Final Extension Motion is irrelevant to the Motion to Amend. Submission Defendants cannot and have not established that they have suffered prejudice in the sense relevant to Rule 15.  Discovery has yet to even begin, and the proposed First Amended

-15-

Complaints present the same claims and involve the same transfers as the original complaints.[15]

Accordingly, there is no reason why granting the Debtors' Motion to Amend would in any way

delay the resolution of these actions or impose any additional discovery burdens on the

Submission Defendants. *See id.*

34.    On the other hand, as discussed above, the prejudice the Debtors would suffer if

leave to amend is denied is monumental, for the reasons discussed above.

## V.    Even if Submission Defendants Could Properly Challenge the Final Extension Order, Debtors' Claims Would Not Be Time-Barred or Futile

35.    Once the Debtors' preference claims were filed, "the failure to serve process

within Rule 4(m)'s 120–day period does not affect the tolling of the statute of limitations unless

the failure to serve process causes the district court to dismiss the action." *Mann v. American

Airlines*, 324 F.3d 1088, 1091 (9th Cir. 2003).

36.    Moreover, even if the limitations period was not automatically tolled, it should be

equitably tolled. Equitable tolling applies when necessary to prevent unfairness to a diligent

plaintiff, even where the unfairness was not the fault of the defendant. *Haekal v. Refco, Inc.*, 198

F.3d 37, 43 (2d Cir. 1999).  Debtors recognize that equitable tolling applies only in extraordinary

circumstances, *Baldayaque v. US*, 338 F. 3d 145, 150 (2d Cir. 2003), but the circumstances here

are extraordinary, the potential unfairness to Debtors manifest, and equitable tolling is therefore

warranted.

37.    The Preference Actions were timely filed on September 26, 2007, as the statute of

limitations would not have run on those Actions until October 8, 2007 even if the first

"Preservation Motion" had not been entered.

---

[15]Debtors do not here address any relation back issues.

-16-

38.    The Final Extension Order was entered October 22, 2009.  Debtors' time to serve under the Second Extension Order did not expire until November 5, 2009.

39.    Therefore, even if the Final Extension Motion had been flatly denied, Debtors would have had additional time to serve the Preference Actions.  Debtors would still have that remaining time if the Court were to now find that the summons was not properly extended under Rule 4(m).

40.    Moreover, the Court has discretion under Rule 4(m) to extend the time to serve even after the summons has expired and even if the claim is otherwise time-barred.  *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007).  This is true even without showing good cause.  *Id.  See also, Wright v. Potter,* 350 Fed. Appx. 898, 899; 2009 WL 3416246 (5th Cir. 2009) (An extension is appropriate "where the claims would be otherwise time-barred and there is no clear record of delay or evidence of contumacious conduct.").  In deciding whether to grant an additional extension, the court should consider the balance of prejudices.  *Zapata, supra* at 198-199.

41.    Here, Debtors have not engaged in contumacious conduct and have not delayed— they have merely relied in good faith on the orders of this Court.  Moreover, for the reasons previously explained, the balance of prejudices plainly favors Debtors.  Therefore, if additional time to re-serve were necessary beyond the unexpired portion of the limitations period, the Court could and should allow Debtors additional time to re-serve the Preference Actions.

42.    Debtors respectfully suggest that under these circumstances it would be a pointless and wasteful exercise to grant Submission Defendants relief with respect to the Final Extension Order.

## VI.    The Submission Defendants' Submissions Do Not Resolve the Question of their Notice or Knowledge

43.    There are unique facts regarding the Submissions of each of the Submission Defendants that cannot be addressed in a common Omnibus Response and cannot be resolved on an omnibus basis.  The unique facts, specifically addressed in separately and attached as Exhibits 20-61, are important to a proper understanding of each Submission Defendant's notice and knowledge.  In this Omnibus Response, Debtors address several points applicable to a number of Submission Defendants.

44.    A number of Submission Defendants were on the master or 2002 service lists and were served with the Final Extension Motion[16] or Order.[17] Others were served through counsel. Yet other counsel received electronic notice.[18]  Counsel's actual knowledge is sufficient. *In re Medaglia*, 52 F.3d 451, 454 (2d Cir. 1995); *In re Schicke*, 290 B.R. 792, 805-806 (Bankr. App, 10th Cir. 2003).

45.    Some of these Submission Defendants assert only that they were not served by overnight mail in accordance with the Case Management Order.  It is undeniable that they had actual service and actual knowledge of the motion which, as noted, is sufficient.  Debtors recognize the importance of the Court's Case Management Order and sought to comply with it, but questions as to the manner of service provides no basis for the draconian relief the Submission Defendants seek.

---

[16]See Exhibit 4, Affidavit of Service.  The affidavit of service raises a presumption of receipt and an affidavit of non-receipt is not sufficient to rebut the presumption. *In re Yashaya*, 403 B.R. 278, 283 (E.D. N.Y. 2009)

[17]Ex. 12.

[18]Ex. 10.

46.     In addition, some the Submission Defendants were served with the 48th Omnibus

Hearing Agenda,[19] which specifically identified Debtors' Final Extension Motion as Agenda

Item C-1.

47.     Each and every Submission Defendant was served with the First Amended

Disclosure Statement, filed on December 10, 2007.   (See Affidavit of Service, Docket No.

11974)[20]   On December 13, 2007, the Debtors also filed a copy of the Disclosure Statement

publicly with their Form 8-K, Docket No. 11388.   The Disclosure Statement outlined in detail

that Preference Actions were to be filed under seal, with service deferred until after the

limitations period.[21]   The First Amended Disclosure Statement, as supplemented, was addressed

in detail in Debtors' Omnibus Response to the Dismissal Motions, ¶¶ 15-19, 70 and 78-81; that

discussion will not be repeated here.

48.     As this Court discussed in the July 22, 2010 hearing, the Disclosure Statement,

combined with the Submission Defendants' knowledge that they had in fact received a

preference claim, put the Submission Defendants on notice of the Preference claim procedures at

issue and on inquiry notice as to the need to monitor preference claim developments.   July 22,

2010 Transcript, pp 150-153 (Ex. 8).   *See also*, *In re TWA Inc. Post Confirmation Estate*, 305

B.R. 221, 227 (D. Del. 2004) ("[I]n large chapter 11 cases sophisticated creditors typically are

well aware of prospects and risks of preference litigation. … Thus, it seems unlikely that

creditors could be surprised or caught off guard when such preference complaints are finally

---

[19]See Agenda (Ex. 5) and Affidavit of Service (Ex. 6).

[20]The Affidavit was approximately 6,000 pages, reflecting the extraordinarily broad disclosure of the essential information regarding the Preference Claims about which the Submission Defendants claim ignorance.   Pages from the Affidavit identifying Submission Defendants are attached as Ex. 7.

[21]See Dkt. No. 20225.

filed.").  Indeed, as explained in Debtors' individual Submission responses, Delphi was required to make large, extraordinary payments to a number of the Submission Defendants on the cusp of its bankruptcy petition filing, in order to maintain supply.  It is difficult to imagine that these Defendants did not understand the preference implications of the payments.

49.    For other Submission Defendants, their counsel was served with the Final Extension Motion, albeit not on behalf of the Defendant.

50.    Debtors believe that there was broad awareness in the automotive, financial and business community that Preference Actions were being filed under seal, with service to be deferred.  Illustratively, on October 2, 2007, CFO.com magazine published an article (Ex. 9) entitled "Delphi Files Secret Preference Claims," describing how the Preference Actions were being handled, and expressly relying on a separate article regarding the Preference Actions published by the Associated Press.

51.    The facts set forth in this Section and the other facts outlined in Debtors individual response demonstrate that even the Submission Defendants that were not served with the Final Extension Order were on inquiry notice of it.  At a minimum, the facts raise substantial questions about each Defendant's actual knowledge which should warrant further inquiry before the Court makes any conclusion as to the various Submission Defendants' knowledge, assuming that that knowledge matters, which it does not.

52.    Finally, several Submission Defendants have waived any challenge to the Final Extension Motion.    Under Fed.R.Civ.P. 12(g) and (h), a challenge to the efficacy of service under Fed. R.Civ.P. 4(m) is waived if not raised in its answer or in a pre-answer motion under Fed.R.Civ.P. 12(b)(5) (or perhaps 12(b)(2) or (4)). *McCurdy v. American Bd. of Plastic Surgery*, 157 F.3d 191, 193-195 (3rd Cir. 1998).  See also, *Hemispherx Biopharma, Inc. v. Johannesburg*

*Consol. Investments,* 553 F. 3d 1351, 1360 (11th Cir. 2008). These Submission Defendants filed an answer before filing a Rule 12(b) motion. The answer did not challenge (by affirmative defense or otherwise) the Final Extension Order, and thus the efficacy of service. These Submission Defendants have therefore waived the arguments they now assert.

### CONCLUSION

53.     For the reasons set forth above, the Debtors respectfully request that this Court dispose of the Submission Defendants' "no notice" objections to the Final Extension Motion by (a) upholding the Final Extension Order, (b) granting the Debtors' Motion to Amend as to all Submission Defendants against which the Debtors have filed adequate proposed First Amended Complaints under *Twombly* and *Iqbal*, and (c) granting the Debtors such other relief as the Court deems just and proper. Debtors further request a hearing on the "no notice" objections, if the Court determines that it will not grant the above relief on the papers.

Dated:  Detroit, Michigan
        August 2, 2011

Respectfully submitted,

**BUTZEL LONG, a professional corporation**

s/*Cynthia J. Haffey*
  Cynthia J. Haffey
  Sheldon H. Klein
  Thomas Radom
  Bruce L. Sendek
  David J. DeVine
150 West Jefferson, Suite 100
Detroit, MI  48226-4452
(313) 225-7000
haffey@butzel.com
P57352

Dated:  August 2, 2011

BUTZEL LONG, a professional corporation
150 West Jefferson, Suite 100
Detroit, Michigan 48226
Cynthia J. Haffey
Sheldon H. Klein
Thomas Radom
Bruce L. Sendek
David J. DeVine
Telephone: (313) 225-7000
Facsimile: (313) 225-7080
*Attorneys for Reorganized Debtors*

**Hearing Date and Time:**
**August 25, 2011 at 10:00 a.m.**
**(Prevailing Eastern time)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

DPH HOLDINGS CORP., *et al*.,

               Reorganized Debtors.

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2011, a true and correct copy of the

Reorganized Debtors' Omnibus Response to Certain Defendants' Submissions Regarding The

October 2, 2009 Supplemental Post Confirmation Extension of Avoidance Action Service

Deadline Motion via the courts electronic filing system.

Dated: Detroit, Michigan
       August 2, 2011

/s/ Alexis L. Richards
Alexis L. Richards