# EXHIBIT 9



FOCUS - 1 of 5 DOCUMENTS

Copyright 2007 Economist.com
All Rights Reserved
CFO.com

October 2, 2007 Tuesday

**SECTION:** RESTRUCTURING

**LENGTH:** 605 words

**HEADLINE:** Delphi Files Secret Preference Claims

**BYLINE:** Stephen Taub

**BODY:**

Behind the cover of sealed documents, the bankrupt company sues vendors and others to recoup alleged improper payments.

Bankrupt Delphi Corp. filed more than 700 lawsuits against vendors, other companies and individuals over the weekend, seeking recovery of payments that may have been made outside the ordinary course of business, the Associated Press reported.

However, the names of those being sued are not public knowledge, for the time being. In August, Delphi received permission from U.S. Bankruptcy Judge Robert Drain to seal the lawsuits, since defendants could be alienated if they knew they were being sued, noted the wire service.

The suits targeted up to $5.5 billion in possibly questionable payments made before the auto parts supplier filed for Chapter 11 in October 2005, according to the AP report. The lawsuits, also called preference claims, are filed by trustees of bankrupt companies against the ailing company's vendors, and the defendants tend to be unsecured trade creditors.

Governed by the U.S. Bankruptcy Code, preference claims are meant to prevent an insolvent company from favoring one creditor at the expense of another. Basically, the bankrupt company has the right to sue vendors to force them to return payments that were made within 90 days of the bankruptcy filing. While the law's rationale may not make immediate sense, its aim is clear. Its purpose is to stop failing companies from doling out payments to preferred vendors just before they go broke.

Under the law, a trustee must file a preference claim within two years of the company's Chapter 11 filing, in most cases. But trustees usually wait until the last possible moment to file a preference suit so as not to ruin the company's relationship with vendors while negotiating bankruptcy settlements with them. Indeed, if the company emerges from Chapter 11, it will need strong vendor relationships to keep the operation viable.

Delphi Files Secret Preference Claims CFO.com October 2, 2007 Tuesday

"The reason Delphi is filing the lawsuits is because its two-year statute of limitation [for preference claims] is running out," posited Hal Schaeffer, president of D&H Credit Services, a trade credit analysis firm that specializes in preference claims research. Delphi requested that the suits be kept sealed while it makes a determination about whether to proceed with the claim, he speculated. "Some companies in Chapter 11 really don't want to go after preference claims unless a gun is held to their head," added Schaefer.

Calling the move "unusual," Schaeffer said he commends Delphi for coming up with the "unique idea" of sealing the suits, and expects that other companies may try the same legal strategy in the future. However, he added that the secret lawsuits should "scare the heck out of vendors." If Delphi doesn't do well with its reorganization--that is, if the company is negotiating a low return for creditors--the automotive supplier may be forced to pursue the preference claims to increase the pot of cash it uses to pay back creditors.

Nevertheless, Delphi said in the lawsuits that it has no intention of pursuing the claims as long as its emergence from bankruptcy--currently anticipated for January 2008--proceeds as planned, according to AP. If the reorganization plan were to go awry, Delphi would serve the secret lawsuits to their targets.

Reportedly, Delphi could file as many as 1,650 secret lawsuits, each seeking to recoup a minimum of $250,000 in allegedly improper payments to vendors and insiders. Some of the suits could target Delphi insiders, including top executives, members of the board, and major shareholders who received favorable financial treatment from the company.

**LOAD-DATE:** October 8, 2007