# EXHIBIT 36

# EXHIBIT 36

## Doshi Prettl International, Adv. Pro. No. 07-02211-rdd

Doshi Prettl International ("Doshi") has been in the thick of the Delphi bankruptcy proceedings since its inception.  As early as 2006, Doshi filed two proofs of claim in the amounts of $571, 199.67 and $1,130,675.71, through its attorney of record, David H. Freedman.  *See Ex. 36(a), Declaration of David H. Freedman, ¶¶ 4 and* 5.

According to Mr. Freedman's declaration, he continued as counsel for  Doshi until some point in 2008 and as late as September 2008 and continued to receive electronic filings in the Delphi chapter 11 bankruptcy cases. *See Ex. 36(a), ¶ 5.*

The Affidavit of service reveals that Mr. Freedman was on the master electronic service notice list, *Ex. 36(a), ¶5,* and received notice of the Preservation of Estate Claims Procedure Motion. *Ex. 36(a).*  Mr. Freedman also received Notice of Electronic Filing of the August 16, 2007 Preservation of Estate Claims Procedure Order (Docket No. 9105), which, among other things, (i) authorized the Debtors to file complaints in the adversary proceedings pertaining to avoidance actions under seal, (ii) stayed each adversary proceeding unless and until the Debtors made service of process on the respective defendants, and (iii) extended to March 31, 2008 the deadline under Federal Rule of Civil Procedure 4(m) by which the Debtors would have to serve process, so that the complaints would not be subject to dismissal under Federal Rule of Civil Procedure 4(m).  *See Ex. 11, 2002 List, p. 5 of 20.*

Doshi was also served with the First Amended Plan Disclosure Statement, filed in December 2007.  *See Affidavit of Service (Docket No. 11974).*[8] On December 13, 2007, the Debtors also filed a copy of the Disclosure Statement publicly with their Form 8-K (Docket No.

---

[8]  *Ex. 7, Service List – Disallowed Claims, p. 41.*

11388).  The Disclosure Statement outlined in detail that preference claims were to be filed

under seal, with service deferred until after the limitations period.  As this Court discussed

during the July 22, 2010 hearing, the Disclosure Statement, combined with the defendants'

knowledge that they had in fact received preferential transfers, put the defendants on notice of

the preference claim procedures at issue and on inquiry notice as to the need to monitor

preference claim developments.  *Ex. 8, July 22, 2010 Transcript, pp. 150-153*.  *See also In re*

*TWA Inc. Post Confirmation Estate*, 305 B.R. 221, 227 (D. Del. 2004) ("[I]n large chapter 11

cases sophisticated creditors typically are well aware of prospects and risks of preference

litigation. … Thus, it seems unlikely that creditors could be surprised or caught off guard when

such preference complaints are finally filed.").

     Through the information conveyed in the above filings, Doshi cannot credibly deny

knowledge that avoidance claims were filed and placed under seal and the summonses had been

extended.  Moreover, Doshi had every reason to anticipate that it was the target of one of the

avoidance claims.  As set forth in the complaint, Doshi was a significant supplier who shortly

before the chapter 11 petition was filed demanded modified payment terms and received over

$4.5 million in non-ordinary course avoidable payments.  Of this, $2,697,252.98 and

$589,590.73 were wired to Doshi in lump sum payments, the later on October 6, 2005.  *Ex.*

*36(b)*.  This was only 2 days before the Delphi chapter 11 petition was filed and undoubtedly

Doshi understood the preference implications.

     Doshi is charged with notice of all of the above described filings and events.  It cannot

disclaim knowledge, as it tries to do through the declaration of Peter Schrennen.  *Ex 36(c)*.  In his

April 8, 2010 declaration Mr. Schrennen identifies himself of the Vice President of Prettl

International, Inc. ("PII"), a member of Doshi.  Mr. Schrennen tells us that PII bought out its

partner in May 2008, but that has no significance here.  Doshi, now known as Detroit Products International LLC ("DPI"), is the same entity now as it was prior to May 2008.  *Ex 36(c), Schrennen Declaration dated April 8, 2010, ¶ 2.*  Thus, Doshi cannot disclaim knowledge that adversary proceedings were filed under seal and that summonses were extended solely because of an ownership change. *Ex. Ex 36(c) , ¶2.*

In Mr. Schrennen's second declaration dated November 23, 2010, he again attempts to disclaim knowledge of events going back to the start of the bankruptcy proceeding.  He again makes reference to the May 2008 "Transaction" as if that created a line of demarcation that allows Doshi to feign ignorance of all that preceded, when in fact all that changed, as Mr. Schrennen explained in his first declaration, is that one member bought out the interest of the other. *Ex. 36(c), November 23, 2010, ¶¶ 3-8.*

The July 12, 2010 declaration of Mahesh Nayek asserts that Doshi was not served with the Final Extension Motion.  *Ex. 36(d), ¶ 8.*  That is explainable by the gap that existed between the time Mr. Freedman withdrew in 2008 until Clark Hill entered its appearance.  Notably, Mr. Nayek does not deny that Doshi was served with the materials described above and that Doshi was informed that preference claims had been filed under seal and the service period had been extended.

# EXHIBIT A

CLARK HILL PLC
151 S. Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
Christopher M. Cahill
*pro hac vice* admission pending
ccahill@clarkhill.com
(248) 988-5878

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:                                )
                                       )        Chapter 11
DELPHI CORPORATION, *et al.*,          )        Case No. 05-44481
                                       )        (Jointly Administered)
              Debtors.                 )
_____/   )        Honorable Robert D. Drain

Delphi Corporation, et al.,                     Adv. Pro. No. 07-02211

v.

Doshi Prettl International,

_____/


### DECLARATION OF DAVID H. FREEDMAN

I, David H. Freedman, declare as follows:

1.     I am an attorney and shareholder of Erman, Teicher, Miller, Zucker & Freedman, P.C., 400 Galleria Officentre, Suite 444, Southfield, Michigan 48034.

2.     I represented Doshi Prettl International, LLC (now known as Detroit Products International, LLC, hereafter referred to as "DPI") in connection with the above-captioned chapter 11 bankruptcy cases (the "Cases").

3.     I advised DPI in its preparation of the following proofs of claim, filed in the Cases: Proof of Claim 8380, in the amount of $573,199.69; and Proof of Claim 16427, in the amount of

$1,130.675.71. After objection by Debtors to the Proofs of Claim and response by DPI, on September 4, 2007 the Court entered an order approving stipulation between the parties, which disallowed Proof of Claim 8380 and allowed Proof of Claim 16427 in the amount of $1,130.675.71.

4. In late 2006, I conducted discussions on behalf of DPI with a claims purchaser with respect to Proof of Claim 16427. During 2007, I had periodic discussions regarding the status of the allowance of such claim with such claims purchaser through September 2007.

5. In early 2008, prior to April 16, 2008, I withdrew from representation of DPI. On April 16, 2008, I filed a Request to Be Removed from Receiving Electronic Filings (Docket No. 13411) in the Cases. On September 19, 2008, I filed a request to remove my name from the service list that receives electronic filings and other notices in the Cases (Docket No. 14200).

6. After withdrawing from representing DPI in connection with the Case, I (a) no longer represented DPI on any matter; and (b) engaged in no discussions or correspondence with DPI in connection with the Cases.

7. Throughout my representation of DPI in connection with the Cases, I was unaware that: (a) any adversary proceeding had been initiated by Debtors against DPI; or that (b) the Debtors filed any motions in the Cases seeking extension of time in which to serve summons and an adversary complaint on DPI; or (c) any orders were entered by the Court granting such relief.

8. I did not receive (a) the Reorganized Debtors' First Amended Joint Plan of Reorganization, as modified and amended, that was confirmed by the Court on July 30, 2009 (Docket No. 18707, the "Modified Plan") or any disclosure statement or solicitation package in connection therewith; or (b) the motion filed by the Debtors on October 2, 2009 seeking extension of the deadline for serving summons and complaints until 180 says after substantial

-2-

consummation of the Modified Plan (Docket No. 18952, the "Fourth Extension Motion"). Nothing in my files indicates that I received these items or forwarded such items to my former client DPI. Had I received any such documents, I would have forwarded them to my former client DPI.

9.    I was unaware that the adversary proceeding Debtor filed against DPI existed until current counsel for Defendant contacted me in July, 2010 to inquire about my representation of DPI in connection with the Cases.

10.    I make this Declaration on personal knowledge, and if called as a witness, would testify to the facts contained herein.

11.    I make this Declaration under penalty of perjury under the laws of the United States of America.

David H. Freedman

Executed on:

November 17, 2010

6804561.1 30885/135676

# EXHIBIT B

03/13/2006  10:04    248-813-4577    PURCHASING    PAGE  02/08

08/31/2005  17:22    248-813-4577    PURCHASING    PAGE  01/02

Fax sent by  : 2486894136    doshi associates    08/31/05  16:05  Pg:  1/2

## Settlement Agreement

This Settlement Agreement (this "Agreement") is entered into as of August 31, 2005 (the "Effective Date") by and between Delphi Corporation (together with its affiliates and subsidiaries, "Delphi") and Doshi Prettl International LLC ("Company").

A.    Company supplies various Oxygen Sensor Harness parts (the "Parts") to Delphi pursuant to various purchase orders and supply contracts (collectively, the "Purchase Orders").

C.    Company is currently Delphi's sole source for the Parts, and Delphi will not be able to obtain the Parts from an alternative source in the near term. As such, even a short supply interruption is likely to result in production shut downs for both Delphi and its OEM customer, GM, Hyundai.

D.    Delphi and Company disagree as to their respective rights and obligations related to the Purchase Orders.

E.    Delphi and Company believe it to be in their mutual best interests to resolve their dispute amicably by making certain modifications to the Purchase Orders in accordance with this Agreement in order to avoid litigation and to maintain a continuous flow of Parts from Company to Delphi.

Based upon the foregoing recitals and for good and valuable consideration, the receipt
and adequacy of which is acknowledged, Delphi and Company agree as follows:

1.    Subject to the modifications set forth herein, all Purchase Orders remain in full force and effect.

2.    With respect to shipments of Parts to Delphi's U.S. locations only, Delphi will pay for Parts on the following terms (the "Modified Terms"): (a) net 10 days with a unit price discount of 0.2% based on the current unit pricing effective for shipments starting on September 1st, 2005 and continuing through October 30, 2005 and (b) MNS2-2 (without any unit price discount) thereafter and (c) with respect to shipment of parts to Delphi's U.S. locations prior to August 31, 2005, Delphi will pay all sums owed to Doshi Prettl International LLC by Tuesday 6 September 2005 via a wire transfer. Company agrees that the Modified Terms constitute adequate assurance under Uniform Commercial Code Section 2-609.  The Modified Terms will not apply to shipments of Parts to Delphi's non-U.S. locations, which shipments will continue to be governed by the terms of the applicable Purchase Orders.

*Relates to September 6 payment*

3.    Notwithstanding any intervening change in Delphi's financial situation, Company will continue to supply products to Delphi in accordance with the Purchase Orders and

this Agreement and waives any further right to seek adequate assurance or further contract modifications under the Uniform Commercial Code or other applicable laws.

4.    Company will keep the terms of this Agreement together with all related settlement discussions strictly confidential. Company will disclose the terms of this Agreement only to its management personnel that need to know such information to implement the terms of this Agreement and legal counsel and other advisors with whom Company has a recognized legal privilege; provided that all such parties have been informed of the confidentiality restrictions contained herein. Company further agrees that it will be responsible and liable for any breach of the confidentiality provisions set forth in this Agreement by its management personnel, legal counsel and other advisors. Company acknowledges that failure to honor the confidentiality provisions contained herein would cause significant economic harm to Delphi. Any discussions by Company with any third parties, including the press or media or consultants, regarding this Agreement and its terms are expressly prohibited.

5.    The parties hereto acknowledge that they are executing this Agreement without duress or coercion and without reliance on any representations, warranties or commitments other than those representations, warranties and commitments expressly set forth in this Agreement.

6.    This Agreement constitutes the entire understanding of the parties in connection with the subject matter hereof. This Agreement may not be modified, altered, or amended except by an agreement in writing signed by Delphi and Company. This Agreement shall be deemed to be incorporated by reference into, and shall be part of, all Purchase Orders without any specific reference to this Agreement in any such Purchase Order. The terms and conditions of the Purchase Orders are amended to include the terms of this Agreement. Should an inconsistency or conflict exist between the express terms of the Purchase Orders and this Agreement, the terms of this Agreement shall govern and control. This Agreement is being entered into among competent persons who are experienced in business and represented by counsel, and has been reviewed by Company and its counsel. Therefore, any ambiguous language in this Agreement will not necessarily be construed against any particular party as the drafter of such language.

7.    This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Michigan, without regard to conflicts of law principles.

EXECUTED as of the Effective Date.

Delphi Corporation                              Doshi Prettl International LLC

By: _____                           By: _____
Name: LAWRENCE GAVIN, CPM                        Name: AJAY B. JALAMANCHI
Title: COMMODITY DIRECTOR                        Title: Controller
   - 31 AUG 05                                      - 08/3/05

**Delphi**
**Pre Petition Wire Analysis Review Form**

| | |
|---|---|
| Vendor Name: | DOSHI PRETTL INTERNATIONAL |
| Remit Duns: | RD 945587546 |
| Date of Wire: | 06 Oct 2005 ✳ (Actual wire date not date requested) |
| Amount of Wire | $589,590.73 (Indicate currency if other than USD) |
| Source: | Wire Room (e.g. Treasury, ACS or Wire Room) |

What was intent of wire made above?    (Place X in the most appropriate box below)

To Pay for Shipments Prior to Wire: [ X ] ✳

To Pay for Shipments Subsequent to Wire: [ ]

To Pay for Shipments both Prior & Subsequent: [ ]

Unknown Intent: [ ]

Please **attach** documentation in support of the above assessment of intent. Documentation may include but is not limited to the following types of documentation:
NO DOCUMENTATION: 589,590.73 in Essential Supplier Payments

- Email correspondence indicating intent for wire
- Detail lists of invoices/shipments that are being remitted
- Letters/notes/memos indicating intent for wire
- Meeting/Phone conversation minutes that indicate intent
- E-Dacor listings indicating amount due at date of wire that match wire amounts
- Terms deviation requests that indicate wire amount and intent for wire

This is a sealed pleading and it is subject to the Order Under 11 U.S.C. §§ 102(1)(A), 105(a), 107, 108(a)(2), and 546(a) and Fed. R. Bankr. P. 7004, 9006(c), and 9018 (i) Authorizing Debtors to Enter into Stipulations Tolling Statute of Limitations with Respect to Certain Claims, (ii) Authorizing Procedures to Identify Causes of Action that Should be Preserved, and (iii) Establishing Procedures for Certain Adversary Proceedings Including Those Commenced by Debtors Under 11 U.S.C. § 541, 544, 545, 547, 548 or 553, dated August 16, 2007.

TOGUT, SEGAL & SEGAL LLP
Conflicts Counsel for Delphi Corporation, *et al.*,
Debtors and Debtors in Possession
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Neil Berger (NB-3599)
Scott E. Ratner (SER-0015)

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                                                         :
In re:                                                   :    Chapter 11
                                                         :    Case No. 05-44481 [RDD]
DELPHI CORPORATION, *et al.*,                            :
                                                         :    Jointly Administered
---------------------------------------------------------x
                                                         :
DELPHI CORPORATION, *et al.*,                            :    Adv. Pro. No. 07-_____ [RDD]
                                                         :
                              Plaintiffs,                :
                                                         :
        - against -                                      :
                                                         :
DOSHI PRETTL INTERNATIONAL and                           :
DOSHI PRETTL INT.,                                       :
                                                         :
                              Defendants.                :
                                                         :
---------------------------------------------------------x

## COMPLAINT TO AVOID AND RECOVER
## TRANSFERS PURSUANT TO 11 U.S.C. §§ 547 AND 550

Delphi Corporation ("Delphi") and the other above-captioned debtors and debtors in possession, the plaintiffs herein (together, the "Plaintiffs"),[1] by their conflicts counsel, Togut, Segal & Segal LLP, as and for their complaint ("Complaint") against the above-captioned Defendants (defined below), allege the following on knowledge as to themselves and their own acts and otherwise upon information and belief:

## INTRODUCTION

1.    On October 8, 2005 (the "Initial Filing Date"), Delphi and certain of its subsidiaries (the "Initial Filers") each filed voluntary petitions in this Court for reorganization relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers, the "Debtors") filed voluntary petitions in this Court for reorganization relief under Chapter 11 of the Bankruptcy Code.

2.    The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

## JURISDICTION, VENUE AND PARTIES

3.    Plaintiffs bring this adversary proceeding (the "Adversary Proceeding") pursuant to, *inter alia*, sections 547 and 550 of the Bankruptcy Code and Rules 3007 and 7001(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for an Order and Judgment of this Court against Doshi Prettl International and Doshi Prettl Int. (together, "Defendants") to direct the return of certain avoidable transfers (the "Transfers") that were made by Plaintiffs to Defendants as more fully and particularly identified in Exhibit "1" annexed hereto.

---

[1]    The term "Plaintiffs" shall mean all of the Debtors in the above-captioned chapter 11 cases.

2

4.    This Adversary Proceeding is a "core" proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (F) and (O).

5.    Jurisdiction exists in this Court pursuant to 28 U.S.C. § 1334.

6.    Venue of this Adversary Proceeding is proper in this Court pursuant to 28 U.S.C. § 1409(a).

7.    Upon information and belief, Defendants were creditors of one or more of the Plaintiffs prior to the filing of Plaintiffs' chapter 11 cases.

8.    Plaintiffs retain the right to enforce, sue on, settle or compromise all causes of action including, without limitation, claims under and pursuant to sections 502(d), 544, 547, 548 and 550 of the Bankruptcy Code.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### (Avoidance and Recovery of Preferential Transfers)

9.    Plaintiffs repeat, reallege and incorporate by reference all of the allegations contained in paragraphs 1 through 8 of this Complaint as though set forth at length herein.

10.    On or within ninety (90) days prior to the Initial Filing Date, Plaintiffs made, or caused to be made, the Transfers to Defendants.

11.    The Transfers constitute transfers of interests in Plaintiffs' property.

12.    Plaintiffs made, or caused to be made, the Transfers to, or for the benefit of Defendants.

13.    Plaintiffs made, or caused to be made, the Transfers for, or on account of, antecedent debt(s) owed to Defendants prior to the dates on which the Transfers were made (the "Debt").

3

14.    Pursuant to Bankruptcy Code section 547(f), for purposes of this Adversary Proceeding, Plaintiffs are presumed to have been insolvent at the time that the Transfers were made.

15.    The Transfers enabled Defendants to receive more than they would have received if: (i) this case was administered under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendants had received payment of the Debt to the extent provided by the Bankruptcy Code.

16.    Based upon the foregoing, the Transfers constitute avoidable preferential transfers pursuant to section 547(b) of the Bankruptcy Code and pursuant to section 550(a) of the Bankruptcy Code, an Order should be entered granting judgment in favor of Plaintiffs: (i) avoiding the Transfers pursuant to Bankruptcy Code section 547(b); (ii) against Defendants in an amount not less than the amount of the Transfers, plus interest from the date hereof and the costs and expenses of this action including, without limitation, attorneys' fees; and (iii) directing Defendants to turnover and pay such sum to Plaintiffs pursuant to Bankruptcy Code section 550(a).

**WHEREFORE**, Plaintiffs respectfully request entry of judgment on their Complaint as follows:

a.    On Plaintiffs' First Cause of Action, in favor of Plaintiffs and against Defendants in an amount not less than the amount of the Transfers, plus interest from the date hereof until full payment is made to Plaintiffs, together with the costs and expenses of this action, including, without limitation, attorneys' fees, and directing Defendants to turnover such sum to Plaintiffs pursuant to Bankruptcy Code sections 547(b) and 550(a); and

4

b.    Granting such other and further relief as this Court may deem just

and proper.

DATED:    New York, New York
          September 26, 2007

                              DELPHI CORPORATION, *et al.,*
                              Debtors, Debtors in Possession and Plaintiffs,
                              By their Conflicts Counsel,
                              TOGUT, SEGAL & SEGAL, LLP
                              By:

                              /s/ Neil Berger
                              _____
                              NEIL BERGER (NB-3599)
                              SCOTT E. RATNER (SER-0015)
                              Members of the Firm
                              One Penn Plaza, Suite 3335
                              New York, New York  10119
                              (212) 594-5000

5

## EXHIBIT "1"

### DELPHI CORPORATION, *et al.*
### v.
### DOSHI PRETTL INTERNATIONAL, *et al.*

| Transfer Date | Transfer Amount | Transfer Type |
|---|---|---|
| 8/2/2005 | $2,234,910.78 | EFT |
| 8/29/2005 | $720.00 | EFT |
| 9/2/2005 | $1,396,271.05 | EFT |
| 9/6/2005 | $2,697,252.98 | WIRE |
| 9/19/2005 | $31,707.40 | EFT |
| 9/20/2005 | $265,806.08 | EFT |
| 9/21/2005 | $288,863.64 | EFT |
| 9/22/2005 | $254,120.72 | EFT |
| 9/26/2005 | $163,982.62 | EFT |
| 9/28/2005 | $262,930.74 | EFT |
| 10/3/2005 | $229,164.96 | EFT |
| 10/4/2005 | $295,620.50 | EFT |
| 10/6/2005 | $589,590.73 | WIRE |
| **TOTAL:** | **$8,710,942.20** | |

# EXHIBIT C

CLARK HILL PLC
151 S. Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
Mahesh K. Nayak
*pro hac vice* admitted
mnayak@clarkhill.com
(248) 988-5868

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 05-44481 |
| DELPHI CORPORATION, *et al.*, | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Honorable Robert D. Drain |
| _____/ | ) | |

Delphi Corporation, et al.,                          Adv. Pro. No. 07-02211

v.

Doshi Prettl International,

_____/

### DECLARATION OF PETER SCHRENNEN

I, Peter Schrennen, declare as follows:

1.      On April 8, 2010 I gave a Declaration in support of a the motion to dismiss[1] filed the defendant in the above-captioned adversary proceeding (the **"Adversary Proceeding"**).  That Declaration is incorporated as if more fully set forth herein.

2.      I am a Vice President of Prettl International, Inc. (**"PII"**).  Until May 2, 2008, PII was a minority partner in Defendant Doshi Prettl International, LLC (now known as Detroit

---

[1] *See Motion and Brief of Defendant to: (A) Vacate Certain Orders of the Court; and (B) Dismiss the Complaint With Prejudice; or (C) in the Alternative, to Dismiss the Claims Against Certain Defendants Named in the Complaint,* Docket No. 23 (the **"Motion to Dismiss"**).

Products International, LLC, hereafter referred to as "**DPI**"). On that date, PII entered into a transaction (the "**Transaction**") by which it purchased all of the membership interest from its then partner in DPI, Doshi Family, LLC ("**Doshi**").

3.     Up to the time of the Transaction, PII was not in control of DPI, was not managing DPI, and was frozen out of the financial affairs of DPI.

4.     None of the employees working for DPI at any time prior to the Transaction is currently employed by PII or DPI.

5.     Prior to the Transaction, at the time of the Transaction, and until March 2010, neither I, anyone at PII, nor anyone employed by DPI since the time of the Transaction, had any notice that Delphi Corporation and its affiliates or successors, debtors and debtors-in-possession (collectively. the "**Debtors**" or "**Delphi**") in the above captioned chapter 11 cases (the "**Cases**") had initiated the Adversary Proceeding against DPI to avoid and recover alleged preferential payments made by Delphi to DPI in 2005. Moreover, given the manner in which the Adversary Proceeding was filed (i.e., under seal), no amount of due diligence could have discovered its existence.

6.     Until July 2010, neither I, anyone at PII, nor anyone employed by DPI since the time of the Transaction, was aware that DPI had filed proofs of claim with this Court through attorney David H. Freedman. According to the claims register for Delphi presented at dphholdingsdocket.com, DPI's proof of claim no. 16427 was transferred effective April 29, 2007 to SPCP Group LLC, long before the Transaction occurred. A copy of relevant pages from such claims register are attached hereto as Exhibit 1. I came to learn about Mr. Freedman and these proofs of claim in approximately July 2010.

6811377.1 30885/135676

7.    Only after DPI's current counsel Mahesh K. Nayak spoke with Mr. Freedman in July 2010 did I come to learn about any of the matters contained in the Declaration of David H. Freedman (the "**Freedman Declaration**"). A copy of the Freedman Declaration is attached hereto as Exhibit 2.

8.    Neither I, anyone at PII, nor anyone employed by DPI since the time of the Transaction, received (a) the Reorganized Debtors' First Amended Joint Plan of Reorganization, as modified and amended, that was confirmed by the Court on July 30, 2009 (Docket No. 18707, and all disclosure statements or solicitation packages in connection therewith (the "**Modified Plan Documents**"); or (b) the motion filed by the Debtors on October 2, 2009 seeking extension of the deadline for serving summons and complaints until 180 says after substantial consummation of the Modified Plan (Docket No. 18952, the "**Fourth Extension Motion**").

9.    It would have been impossible for DPI (as it was constituted either before or after the time of the Transaction) to have received either of the items identified in Paragraph 8 above. According to the Freedman Declaration, he withdrew from representing DPI in 2008 and himself did not receive these items. Exhibit 2 at ¶ 8. The Freedman Declaration refers to two pleadings he filed in the Cases in which Mr. Freedman requested removal from lists of those who are to receive electronic notice of filings in the Cases. *Id.* at ¶ 5. Such pleadings are attached hereto as Exhibit 3. If the Modified Plan Documents and Fourth Extension Motion were separately sent directly to DPI in July 2009 and October 2009 at DPI's address identified on its Proofs of Claim, DPI did not receive them. DPI had moved from that address over a year before, on May 2, 2008. Upon information and belief, DPI's old premises were vacant and unoccupied for much of 2009. Furthermore, there would have been no way for me or DPI to alert the Court to DPI's new address on May 2, 2008 since neither I nor anyone at PII, nor anyone employed by DPI after the date of

-3-

the Transaction, was aware of the Proofs of Claim, the fact that DPI previously had a lawyer who had filed these Proofs of Claim (and who I now understand had withdrawn), or the fact that a Complaint has been secretly filed by Delphi against DPI.

10.     Until it was served with the complaint and other papers associated with the Adversary Proceeding in March 2010, DPI and PII had no notice that Delphi had sued DPI to recover alleged preference payments.  Further, neither I nor anyone employed by DPI since the time of the Transaction received any of the Service Extension Motions, as that term is defined in the Motion to Dismiss.  Neither I, anyone at PII, nor anyone employed at DPI since the time of the Transaction had any knowledge or notice prior to March 2010 that on several occasions Delphi had sought and obtained authority to file and maintain hundreds of adversary proceedings under seal and to extend the time for service of the complaints long past the running of the statute of limitations.

11.     Had PII known of the Adversary Proceeding (which seeks recovery from DPI in an amount almost three times the value of the Transaction) at the time of the Transaction, PII's decisions with respect to negotiating, and even entering into the Transaction would obviously have been affected.

12.     Additionally, PII would have taken special and additional steps to locate, identify, review, organize and preserve its records with respect to Delphi, to hold specific interviews with the seller relative to the alleged preferential payments (as it was the seller who was knowledgeable about the Delphi business relationship at this time), and to make arrangements to obtain the cooperation of the seller and its employees (several of whom have departed the seller's employ) to provide information relative to this litigation, or serve as witnesses.  None of these steps were taken.

-4-

6811377.1 30885/135676

13.    DPI is prejudiced in its ability to defend this action because of the extraordinary changes in the company over the passage of time, including the change in ownership and control of DPI, the loss of institutional knowledge relevant to the transfers in the timeframe alleged in the Adversary Proceeding, and prejudice arising from the fact that neither DPI nor its former lawyer received notice of the existence of the filings identified in paragraph 8 of this Declaration, which I understand were important notices.

14.    The schedule of transfers attached to Delphi's proposed amended complaint (attached to *The Reorganized Debtors' Motion for Leave to File Amended Complaints*, Docket No. 29) indicates that Delphi now seeks millions of more dollars more from DPI, than it did in its original Complaint. Such schedule is attached hereto as Exhibit 4.

15.    It is very difficult to decipher the data provided in such schedule as to the antecedent debt to which each transfer alleged is tied.

16.    By way of example, for two alleged transfers set forth on such schedule, corresponding to "transfer dates" of September 6, 2005 and October 6, 2005, no data regarding antecedent debt is supplied at all. Exhibit 4. These two alleged transfers are in an aggregate amount exceeding $3 million.

17.    By way of further example, such schedule refers to eighteen separate EFT transfers which allegedly occurred on October 4, 2005, in an aggregate amount exceeding $2 million. Exhibit 4. However, a review of DPI's bank records indicates that DPI received only one transfer on October 4, 2005, in the amount of $295,620.50. The inconsistencies to which I refer reflect approximately one-third of the aggregate amount of transfers alleged in the proposed amended complaint. Such erroneous factual recitations call into question the accuracy of all the factual recitations made in the proposed amended complaint regarding the alleged transfers.

-5-

18.    I make this Declaration on personal knowledge, and if called as a witness, would testify to the facts contained herein.

19.    I make this Declaration under penalty of perjury under the laws of the United States of America.

_____
Peter Schrennen

Executed on:

November 23, 2010

# EXHIBIT D

CLARK HILL PLC
151 S. Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
Mahesh K. Nayak
*pro hac vice* admitted
mnayak@clarkhill.com
(248) 988-5868

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 05-44481 |
| DELPHI CORPORATION, *et al.*, | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Honorable Robert D. Drain |
| _____/ | ) | |
| | | Adv. Pro. No. 07-02211 |
| Delphi Corporation, et al., | | |
| | | |
| v. | | |
| | | |
| Doshi Prettl International, | | |
| _____/ | | |

### DECLARATION OF PETER SCHRENNEN

I, Peter Schrennen, declare as follows:

1.    On April 8, 2010 I gave a Declaration in support of a the motion to dismiss[1] filed the defendant in the above-captioned adversary proceeding (the **"Adversary Proceeding"**). That Declaration is incorporated as if more fully set forth herein.

2.    I am a Vice President of Prettl International, Inc. (**"PII"**). Until May 2, 2008, PII was a minority partner in Defendant Doshi Prettl International, LLC (now known as Detroit

---

[1] *See Motion and Brief of Defendant to: (A) Vacate Certain Orders of the Court; and (B) Dismiss the Complaint With Prejudice; or (C) in the Alternative, to Dismiss the Claims Against Certain Defendants Named in the Complaint,* Docket No. 23 (the **"Motion to Dismiss"**).

Products International, LLC, hereafter referred to as "**DPI**"). On that date, PII entered into a transaction (the "**Transaction**") by which it purchased all of the membership interest from its then partner in DPI, Doshi Family, LLC ("**Doshi**").

3. Up to the time of the Transaction, PII was not in control of DPI, was not managing DPI, and was frozen out of the financial affairs of DPI.

4. None of the employees working for DPI at any time prior to the Transaction is currently employed by PII or DPI.

5. Prior to the Transaction, at the time of the Transaction, and until March 2010, neither I, anyone at PII, nor anyone employed by DPI since the time of the Transaction, had any notice that Delphi Corporation and its affiliates or successors, debtors and debtors-in-possession (collectively. the "**Debtors**" or "**Delphi**") in the above captioned chapter 11 cases (the "**Cases**") had initiated the Adversary Proceeding against DPI to avoid and recover alleged preferential payments made by Delphi to DPI in 2005. Moreover, given the manner in which the Adversary Proceeding was filed (i.e., under seal), no amount of due diligence could have discovered its existence.

6. Until July 2010, neither I, anyone at PII, nor anyone employed by DPI since the time of the Transaction, was aware that DPI had filed proofs of claim with this Court through attorney David H. Freedman. According to the claims register for Delphi presented at dphholdingsdocket.com, DPI's proof of claim no. 16427 was transferred effective April 29, 2007 to SPCP Group LLC, long before the Transaction occurred. A copy of relevant pages from such claims register are attached hereto as Exhibit 1. I came to learn about Mr. Freedman and these proofs of claim in approximately July 2010.

-2-

7.     Only after DPI's current counsel Mahesh K. Nayak spoke with Mr. Freedman in July 2010 did I come to learn about any of the matters contained in the Declaration of David H. Freedman (the "**Freedman Declaration**"). A copy of the Freedman Declaration is attached hereto as Exhibit 2.

8.     Neither I, anyone at PII, nor anyone employed by DPI since the time of the Transaction, received (a) the Reorganized Debtors' First Amended Joint Plan of Reorganization, as modified and amended, that was confirmed by the Court on July 30, 2009 (Docket No. 18707, and all disclosure statements or solicitation packages in connection therewith (the "**Modified Plan Documents**"); or (b) the motion filed by the Debtors on October 2, 2009 seeking extension of the deadline for serving summons and complaints until 180 says after substantial consummation of the Modified Plan (Docket No. 18952, the "**Fourth Extension Motion**").

9.     It would have been impossible for DPI (as it was constituted either before or after the time of the Transaction) to have received either of the items identified in Paragraph 8 above. According to the Freedman Declaration, he withdrew from representing DPI in 2008 and himself did not receive these items. Exhibit 2 at ¶ 8. The Freedman Declaration refers to two pleadings he filed in the Cases in which Mr. Freedman requested removal from lists of those who are to receive electronic notice of filings in the Cases. *Id.* at ¶ 5. Such pleadings are attached hereto as Exhibit 3. If the Modified Plan Documents and Fourth Extension Motion were separately sent directly to DPI in July 2009 and October 2009 at DPI's address identified on its Proofs of Claim, DPI did not receive them. DPI had moved from that address over a year before, on May 2, 2008. Upon information and belief, DPI's old premises were vacant and unoccupied for much of 2009. Furthermore, there would have been no way for me or DPI to alert the Court to DPI's new address on May 2, 2008 since neither I nor anyone at PII, nor anyone employed by DPI after the date of

-3-

the Transaction, was aware of the Proofs of Claim, the fact that DPI previously had a lawyer who had filed these Proofs of Claim (and who I now understand had withdrawn), or the fact that a Complaint has been secretly filed by Delphi against DPI.

10.    Until it was served with the complaint and other papers associated with the Adversary Proceeding in March 2010, DPI and PII had no notice that Delphi had sued DPI to recover alleged preference payments.    Further, neither I nor anyone employed by DPI since the time of the Transaction received any of the Service Extension Motions, as that term is defined in the Motion to Dismiss.    Neither I, anyone at PII, nor anyone employed at DPI since the time of the Transaction had any knowledge or notice prior to March 2010 that on several occasions Delphi had sought and obtained authority to file and maintain hundreds of adversary proceedings under seal and to extend the time for service of the complaints long past the running of the statute of limitations.

11.    Had PII known of the Adversary Proceeding (which seeks recovery from DPI in an amount almost three times the value of the Transaction) at the time of the Transaction, PII's decisions with respect to negotiating, and even entering into the Transaction would obviously have been affected.

12.    Additionally, PII would have taken special and additional steps to locate, identify, review, organize and preserve its records with respect to Delphi, to hold specific interviews with the seller relative to the alleged preferential payments (as it was the seller who was knowledgeable about the Delphi business relationship at this time), and to make arrangements to obtain the cooperation of the seller and its employees (several of whom have departed the seller's employ) to provide information relative to this litigation, or serve as witnesses.    None of these steps were taken.

-4-

13.    DPI is prejudiced in its ability to defend this action because of the extraordinary changes in the company over the passage of time, including the change in ownership and control of DPI, the loss of institutional knowledge relevant to the transfers in the timeframe alleged in the Adversary Proceeding, and prejudice arising from the fact that neither DPI nor its former lawyer received notice of the existence of the filings identified in paragraph 8 of this Declaration, which I understand were important notices.

14.    The schedule of transfers attached to Delphi's proposed amended complaint (attached to *The Reorganized Debtors' Motion for Leave to File Amended Complaints*, Docket No. 29) indicates that Delphi now seeks millions of more dollars more from DPI, than it did in its original Complaint. Such schedule is attached hereto as Exhibit 4.

15.    It is very difficult to decipher the data provided in such schedule as to the antecedent debt to which each transfer alleged is tied.

16.    By way of example, for two alleged transfers set forth on such schedule, corresponding to "transfer dates" of September 6, 2005 and October 6, 2005, no data regarding antecedent debt is supplied at all. Exhibit 4. These two alleged transfers are in an aggregate amount exceeding $3 million.

17.    By way of further example, such schedule refers to eighteen separate EFT transfers which allegedly occurred on October 4, 2005, in an aggregate amount exceeding $2 million. Exhibit 4. However, a review of DPI's bank records indicates that DPI received only one transfer on October 4, 2005, in the amount of $295,620.50. The inconsistencies to which I refer reflect approximately one-third of the aggregate amount of transfers alleged in the proposed amended complaint. Such erroneous factual recitations call into question the accuracy of all the factual recitations made in the proposed amended complaint regarding the alleged transfers.

-5-



18.     I make this Declaration on personal knowledge, and if called as a witness, would testify to the facts contained herein.

19.     I make this Declaration under penalty of perjury under the laws of the United States of America.

Peter Schrennen

Executed on:

November 23, 2010

6811377.1 30885/135676

CLARK HILL PLC
151 S. Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
Joel D. Applebaum
*pro hac vice admission*
Mahesh K. Nayak
*pro hac vice admission*
japplebaum@clarkhill.com
(248) 642-9692

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| DELPHI CORPORATION, *et al.*, | ) | Case No. 05-44481 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____/ | ) | Honorable Robert D. Drain |

DELPHI CORPORATION, *et al.*,                    Adv. Pro. No. 07-02211

Plaintiffs,

-against-

DOSHI PRETTL INTERNATIONAL and
DOSHI PRETTL INT.,

Defendants.

_____

## DECLARATION OF MAHESH K. NAYAK

1.      I am a member with the law firm of Clark Hill PLC and am counsel of record for
Doshi Prettl International, n/k/a Detroit Products International, LLC ("**DPI**" or "**Defendant**"),
defendant in the above-captioned adversary proceeding (the "**Adversary Proceeding**").

2.      At the June 21, 2011 hearing on the *Reorganized Debtors' Motion for Leave to File
Amended Complaints* [Docket No. 20575; Adv. Pro. Docket No. 29] (the "**Motion**"), the Court
instructed the adversary proceeding defendants to file an affidavit advising the Court of the form

and manner of notice (if any) received of the Debtors' *Supplemental Motion Pursuant to Fed. R. Bankr. P. 7004(a) and 9006(b)(1) and Fed. R. Civ. P. 4(m) to Extend Deadline to Serve Process for Avoidance Actions Filed in Connection with Preservation of Estate Claims Procedures Order* filed on October 2, 2009 [Docket No. 18952] (the "**Fourth Service Extension Motion**"). The Court considered such an affidavit as "part two of a Rule 15 motion." *See* Excerpt from June 21, 2011 Hearing Transcript attached hereto as Exhibit 1 at p. 309, lns 20-25 and p. 310, lns 10-12.

      3.    This Declaration is being submitted in accordance with the Court's instructions and to supplement the argument that Defendant originally raised in the *Motion and Brief of Defendant to: (A) Vacate Certain Orders of This Court; and (B) Dismiss the Complaint with Prejudice; Or (C) In the Alternative, to Dismiss the Claims Against Certain Defendants Named in the Complaint* [Docket No. 20093 and Adv. Pro. Docket No. 23] (the "**Motion to Dismiss**") and renewed in the *Objection of Defendant to Motion by Reorganized Debtors for Leave to File Amended Complaint* [Docket No. 20912; Adv. Pro. Docket No. 36] (the "**Objection**"); specifically, that amendment of the Complaint would be futile because the Defendant was deprived of its Constitutional right to due process with respect to the service extension orders. Objection at ¶¶ 35-47. This Declaration is also being submitted to supplement the *Motion and Brief of Defendant for Relief from Fourth Order Extending Time to Serve Complaint* [Docket No. 20699; Adv. Pro. Docket No. 31].

      4.    On October 7, 2009, the Debtors' claims and noticing agent, Kurtzman Carson Consultants LLC ("**KCC**") filed an *Affidavit of Service* [Docket No. 18967] stating that it had caused the Fourth Service Extension Motion to be served on parties identified on Exhibits A, B and C to the Affidavit of Service. Exhibit 2. The Affidavit of Service does not identify Defendant

or its prior counsel, David H. Freedman[1], as parties served with the Fourth Service Extension Motion. As this Court indicated at the June 21, 2011 hearing, this Affidavit of Service is "prima facie evidence of who got notice". *See* Excerpt from June 21, 2011 Hearing Transcript attached hereto as Exhibit 1 at p. 303, lns 19-20.

5.      Without notice to Defendant, on October 22, 2009, the Court entered an *Order Pursuant to Fed. R. Bankr. P. 7004(a) and 9006(b)(1) and Fed. R. Civ. P. 4(m) to Extend Deadline to Serve Process for Avoidance Actions Filed in Connection with Preservation of Estate Claims Procedures Order* [Docket No. 18999] (the "**Fourth Service Extension Order**").

6.      At the June 21, 2011 hearing, the Court recognized the seriousness of Debtors' failure to serve the Fourth Service Extension Motion when it stated:

> The order I've been focusing on is the fourth one, which is the only one that's at issue in this motions.  And that order recites - - based upon a recital in the underlying motion, as well as, I believe, a statement on the record by the debtors' counsel, Ms. Marafioti that the motion was served as set forth in my standing order for service in the case - - your motion as well as others takes issues with that cite, attaching the certificate of service.  And I think that's a serious issue here.  Separate and apart from the other ones.  The order - - the supplemental case management order dated March 17th, 2006 states, "All filing shall be served via overnight mail upon all parties with a particularized interests in the subject of the filing, as well as to the master service list."  And the motion that was filed on October 2, 2009 states that, "Notice of this motion has been provided in accordance with the supplemental order."  And it doesn't appear to have been.  So, I mean, I think that also goes to Rule 60.

*See* Exhibit 1 at p. 291, lns 18-25 and p. 292, lns 1-10.

7.      The Court went on to indicate at the June 21, 2011 hearing, "if you really didn't get any notice of [the Fourth Service Extension Motion] then you shouldn't be sued". *See* Exhibit 1 at

---

[1]      As Mr. Freedman states in his Declaration, he withdrew from representing DPI in connection with Debtor's Chapter 11 bankruptcy case prior to April 16, 2008, and requested to be removed from receiving electronic filings on April 16, 2008 [Docket No. 13411] and requested to be removed again from the service list on September 18, 2008 [Docket No. 14200].

p. 298, lns 12-16.  The Court recognized that "[DPI is] asserting that they weren't even on the matrix, and they weren't served with the [Fourth Service Extension] motion - - and I'm very troubled by the fact that [DPI wasn't] served by the Motion." *See Id.* at p. 298, lns 22-24.  The Court suggested that this was a matter of law that could be dealt with now.  See, Id., at p. 295, lns 19-23.  Since Defendant DPI did not receive any notice of the Fourth Service Extension Motion, the Motion for leave to file amended complaints now before the Court should be denied as to Defendant.

8.    The October 7, 2009 Affidavit of Service filed by the Debtors' claims and noticing agent, **KCC** should be sufficient on its face to make a determination of who received notice as a matter of law, not requiring further inquiry.  (See Exhibit 1, p. 295, lns 14-23, p. 319 lns. 2-6).  It is noteworthy, however, that this Affidavit of Service, constituting "prima facie evidence" that DPI did not receive notice of the Fourth Service Extension Motion, is consistent with the previously filed April 8, 2010 and November 23, 2010 Declarations of Peter Schrennen (attached as Exhibit A to the Objection and the Motion to Dismiss respectively), and the November 17, 2010 Declaration of DPI's former counsel David H. Freedman (attached as Exhibit 2 to the November 23, 2010 Schrennen Declaration) that neither DPI nor its former counsel received notice of the Fourth Service Extension Motion.

Pursuant to 28 USC §1746, I declare under penalty of perjury that the foregoing is true and correct.

Mahesh K. Nayak

Executed on:  July 12, 2011