Hearing Date And Time:  August 25, 2011 at 10:00 a.m. (prevailing Eastern time)

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler
Lee P. Garner


        - and -


SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
    Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                             :
        In re                                :        Chapter 11
                                             :
DPH HOLDINGS CORP., et al.,                  :        Case No. 05-44481 (RDD)
                                             :
                                             :        (Jointly Administered)
                        Reorganized Debtors. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

REORGANIZED DEBTORS' OBJECTION TO MOTION OF
METHODE ELECTRONICS, INC. FOR LEAVE TO FILE ITS AMENDED
COUNTERCLAIM AGAINST THE REORGANIZED DEBTORS IN MICHIGAN

        DPH Holdings Corp. and its affiliated reorganized debtors hereby submit this

objection in response to the Motion Of Methode Electronics, Inc. For Leave To File Its Amended

Counterclaim Against The Reorganized Debtors In Michigan, filed July 1, 2011 (Docket Nos. 21424

and 21425) (the "Motion").

## Preliminary Statement

This is the third time that Methode has moved for leave to prosecute a claim for breach of the parties' Supply Agreement in Michigan state court.  At the first hearing, on May 20, 2010, Methode stipulated that it did not seek to assert claims that arose prior to June 1, 2009, the first administrative claims bar date, in order to avoid an adverse ruling regarding its failure to file a timely proof of claim.  Thereafter, Methode submitted a new proposed claim that violated the stipulation by continuing to allege wrongful conduct that occurred prior to the bar date.  At a second hearing, on July 22, 2010, the court again gave Methode leave to submit a revised claim that complied with the stipulation.

After Methode took no action for ten months, the Reorganized Debtors re-noticed for a sufficiency hearing their original objection to Methode's administrative expense claim.  Two days later, Methode committed an intentional and sanctionable violation of the stipulation and this Court's prior orders by proffering yet another proposed counterclaim that is based on alleged pre-bar-date conduct.  This time, the main basis of the claim is Delphi's alleged concealment of a preference action against Methode during contract negotiations in 2008.  However, the stipulation clearly bars any claim based on Delphi's pre-bar-date conduct, including alleged conduct in connection with entry into the Supply Agreement, and Methode was fully aware of the preference action at the time it entered into the stipulation.  Accordingly, the Court should deny the Motion with prejudice.  The Court should not countenance Methode's sanctionable conduct in repeatedly causing the Reorganized Debtors to spend resources litigating issues that are foreclosed by Methode's prior stipulation and this Court's orders.

2

## Background

## Delphi's Supply Agreement With Methode[1]

Methode was a supplier to former Delphi Automotive Systems LLC of parts used in Delphi's Passive Occupant Detection System.  Beginning in May 2008, Methode demanded significant price increases from Delphi – up to 50% or more – and threatened to cease supplying parts to Delphi if it did not comply.  Although Delphi informed Methode that its actions would cause Delphi to seek to resource away from Methode, ultimately Delphi entered into a new three-year Supply Agreement with Methode in September 2008 that included significant price increases.  The agreement expressly incorporated Delphi's Terms & Conditions, but only after Delphi agreed to specific modifications to the Terms & Conditions that were required by Methode.  Section 11 of the Terms & Conditions – which Methode did not ask to modify – provided Delphi the right to terminate "for convenience" at any time in exchange for a cancellation payment to compensate Methode for "raw materials, work-in-process and finished goods inventory."  The agreement provided a formula for calculating the cancellation payment and provided that the cancellation payment would be Methode's "sole and exclusive recovery" if Delphi terminated the agreement for convenience.  (See Motion, Exh. 1, § 11.)

## The Michigan State Court Action

In January 2009, Methode sued Delphi for anticipatory breach of contract, alleging that Delphi's purportedly concealed efforts to resource supply constituted an anticipatory

---

[1]    Methode's brief in support of its initial motion, the Reorganized Debtors' objection, and Methode's reply are at Docket Nos. 19896, 20070, and 20164, respectively.  The transcript of the May 20, 2010 hearing and the Court's order granting in part, denying in part, and determining to be moot in part the initial motion are at Docket Nos. 20197 and 20240, respectively.  Methode's supplement to the initial motion, the Reorganized Debtors' supplemental objection, and Methode's supplemental reply are at Docket Nos. 20274, 20418, and 20431, respectively.  The Court held a hearing on the supplemental motion on July 22, 2010.  The Court's order denying the supplemental motion is at Docket No. 20548.  Much of the background set forth herein and in Methode's brief comes from the record of the prior proceedings, which should be incorporated into the record of the Motion.

3

repudiation of the Supply Agreement.  Methode pleaded its claim as a counterclaim in existing

litigation in which Delphi was seeking to compel Methode to provide access to tooling drawings.

The counterclaim alleged that Delphi entered into the agreement in bad faith and, in particular,

that "Delphi concealed its intent to in-source or re-source Methode shortly after executing the

agreement in order to induce Methode to enter the agreement . . . ."  (Original Counterclaim ¶ 44.)

While the suit was pending, Methode continued to supply parts and Delphi continued to pay for

them.  Although Methode's breach of contract allegations arose, and were filed, well prior to

June 1, 2009, Methode did not file an administrative claim by the July 15, 2009 bar date

applicable to claims that arose on or before June 1, 2009.

On August 26, 2009, Delphi sent a letter terminating the supply agreement for

convenience effective September 10, 2009.  Methode sought to enjoin the termination in the state

court action, but the state court denied the motion.  Thereafter, Methode submitted a claim for a

cancellation payment of approximately $761,000 under Section 11 of the Terms & Conditions.

Despite the Supply Agreement's express provision of the cancellation payment as Methode's sole

and exclusive remedy, Methode then submitted an administrative claim seeking $40.5 million,

citing its existing Michigan counterclaim (the "Contract Claim").

Meanwhile, Delphi's modified plan of reorganization became effective on

October 6, 2009.  On December 4, 2009, the Reorganized Debtors moved in the Michigan case

for a stay based on the plan injunctions contained in paragraph 22 of the Plan Modification Order

and Article 11.4 of the modified plan.  The state court granted the motion on February 24, 2009.

**Proceedings In This Court**

In the Forty-Sixth Omnibus Claims Objection, the Reorganized Debtors sought to

disallow and expunge Methode's administrative claims as untimely and also objected to them on

the merits.  (Docket No. 19711.)  In response, Methode filed a motion to overrule the

Reorganized Debtors' timeliness objection and allow continued litigation of the contract dispute

in Michigan state court.

At the May 20, 2010 hearing on this matter, Methode avoided a ruling on the

timeliness of the Contract Claim by stipulating that Methode would only assert a timely claim.

For example, Methode's counsel agreed with the Court's statement that "[y]ou don't have a bad

faith claim based upon their . . . breach of duty of good faith and fair dealing claim, for example,

based on pre bar date activity."  (See May 20, 2010 Tr. at 31.)  Thereafter, the settled order

recited that "Methode's Contract Claim does not seek to assert claims that arose prior to June 1,

2009."  (Docket No. 20240 ¶ E.)  In other words, Methode voluntarily agreed to relinquish any

claims that arose prior to June 1, 2009, thereby mooting the Reorganized Debtors' timeliness

objection.  As a result of the stipulation, Methode agreed that its existing counterclaim for

anticipatory breach of contract, pending in Michigan state court, was also moot.  In light of

Methode's agreement to submit to the Reorganized Debtors a proposed amended counterclaim

alleging only a post-bar date breach of contract, the Court held in abeyance Methode's request to

lift the Plan Injunction to allow litigation regarding the contract claim in Michigan state court

"pending a stipulation between the parties or further application to this Court." (Id. ¶1.c.)

On June 15, 2010, Methode provided to the Reorganized Debtors its first

proposed amended counterclaim.  Despite the stipulation, the only wrongful conduct alleged in

the first proposed amended counterclaim was the same pre-bar date conduct that was alleged as

the basis for the counterclaim filed in January 2009, i.e., that Delphi had no good faith intention

to perform at the time it entered into the contract, but concealed its intent in order to induce

Methode to enter into the agreement.  (Docket No. 20274, Ex. C, ¶¶ 20, 24.)  At a subsequent

hearing on July 15, 2010, the Court agreed with the Reorganized Debtors that Methode "did not

establish that the [first] Proposed Amended Counterclaim asserts claims that arose after May 31,

2009." (Docket No. 20548 ¶ D.) However, the Court denied the motion without prejudice to

provide Methode with another chance to plead a timely claim.

      Ten months later, the Reorganized Debtors noticed Methode's administrative

claim for a sufficiency hearing in light of Methode's failure to proffer a new claim. (Docket No.

21288.) On May 27, 2011, Methode submitted a second proposed amended counterclaim

consisting of two counts. Count I alleges breach of contract in August 2009 under the theory that

"the three-year term negotiated by the parties overrides any general boilerplate terms," including

Delphi's right to terminate for convenience. (Motion, Exh. 3, ¶ 26.) Count II alleges that Delphi

fraudulently induced Methode to enter the contract in 2008 by concealing the existence of its

preference suit against Methode. (<u>Id.</u> ¶ 39, 46.)

<u>**Argument**</u>

**I.**      <u>**METHODE'S PROPOSED COUNTERCLAIM IS BARRED BY METHODE'S
PRIOR STIPULATION THAT ITS CONTRACT CLAIM IS PREDICATED ON
POST-BAR-DATE CONDUCT**</u>

      Although Methode's current Motion is written as though on a clean slate, Methode

is constrained by its prior stipulation that it only seeks to bring a Contract Claim based on

conduct that occurred after the first administrative claims bar date. The stipulation is law of the

case that (1) precludes Methode's arguments regarding the validity of the first bar date and (2)

bars Methode's purported claim based on fraudulent inducement and other alleged pre-bar-date

conduct.

    **A.**     <u>**The Stipulation Is Law Of The Case**</u>

      During argument on Methode's first motion, in May 2010, Methode avoided a

ruling on the effect of its failure to file a claim by the first administrative claims bar date by

6

stipulating that its Contract Claim is predicated upon post-bar-date conduct.  The transcript

reflects the stipulation in several places as follows:

> MR MAYER:  . . . [J]ust to cut through it, then, what one has at this point
> in time as a live claim . . . is a claim where we say that Delphi's
> termination, which occurred August 26th/27th of 2009, was in breach. . . .
> And that claim had not been pleaded in Michigan . . . .
>
> THE COURT:  All right.  So just to be clear then.  At this point Methode's
> contract claim is a claim predicated upon post bar date conduct.
>
> MR MAYER:  That is certainly our view, Your Honor. . . .
>
> * * *
>
> THE COURT: You don't have a bad faith claim based upon their whatever,
> you know, breach of duty of good faith and fair dealing claim, for example,
> based on pre bar date activity.
>
> MR. MAYER: Yes. I think that is right.

(May 20, 2010 Tr. at 24, 31.)   There was another colloquy with Methode's other counsel that

ended in similar agreement regarding the scope of the stipulation:

> THE COURT:  Okay.  I.e., the only claim you're asserting is a post bar
> date breach.
>
> MS WALSH:  Yes.

(Id. at 32.)  The transcript makes clear that the Court treated the timeliness issue as moot – and

therefore did not rule on it – because of Methode's stipulation that the Contract Claim would be

predicated solely on post-bar-date conduct.

> THE COURT:  The claim in the papers raised the possibility, just as with
> the patent claim, that there's some additional wrongdoing that gives rise to
> a basis for a claim before the bar date. . . . But they're very clear on the
> record today that that's not their position, that it's the breach in August that
> is the basis for the claim. . . .  So I conclude, then, that the issue of the
> timeliness of the . . . November claim as it applies to the contract claim
> issue . . . is moot, given the clear statement on the record today . . . that the
> contract claim against DPH that's being asserted, and the only contract
> claim that's being asserted on this contract, is based upon the August
> termination, the claim of breach in August.

7

(Id. at 26-27.)   The stipulation was also reflected in a settled order, which contains a finding that:

> As stipulated by Methode on the record at the Hearing, the counterclaim
> with respect to the Supply Agreement is moot as currently pleaded in the
> Michigan state court, and Methode's Contract Claim does not seek to
> assert claims that arose prior to June 1, 2009.

(June 14, 2010 Order ¶ E.)   Additionally, the disposition of the Motion as set forth in the Order is expressly based upon the stipulation:

> The disposition of the Motion and the Reorganized Debtors' timeliness
> objection with respect to the Contract Claim is as set forth in the transcript
> of the Hearing, which is hereby So Ordered by the Court.   Accordingly,
> the request to overrule the Reorganized Debtors' timeliness objection with
> respect to the Contract Claim is deemed moot and the request to lift the
> Plan Injunction to allow litigation regarding the Contract Claim in the
> Michigan state court is held in abeyance pending a stipulation between the
> parties or further application to this Court.

(Id. ¶1.c.)

The record is clear that Methode relied on the stipulation to avoid having the Court rule on the Reorganized Debtors' timeliness objection to the Contract Claim.   Indeed, with respect to Methode's Patent Claim, which was not covered by the stipulation, the Court found that Methode had failed to establish excusable neglect or cause to justify its failure to timely file its administrative claims.   Having relied upon its stipulation to avoid a similar ruling on the Contract Claim, Methode must abide by the stipulation as law of the case.

**B.    The Stipulation Bars Methode's Arguments Against
Enforcement Of The First Administrative Claims Bar Date**

Methode's Motion misapprehends the significance of the stipulation.   All parties agreed at the May 20, 2010 hearing that the first administrative bar date order was "out of the case" in light of the stipulation.   (Tr. at 55; see also id. at 27.)   Accordingly, Methode's leading argument in the current Motion – that "Delphi cannot enforce the bar dates against Methode because it procured them while concealing the preference lawsuit" – must fail.   (See Motion,

8

Point I, pp. 16-19.) In objecting to Methode's Contract Claim, the Reorganized Debtors are seeking only to enforce Methode's stipulation on the timeliness issue – not the bar date order itself. Moreover, Methode cannot claim that there was any concealment of the preference suit at the time it entered into the stipulation in May 2010. Methode admits to receiving service of the suit two months earlier, in March 2010, and was fully apprised of the circumstances at the time of the stipulation.

Similarly inapposite is Methode's argument that "Delphi's notice with respect to the First Bar Date was legally insufficient" because it allegedly failed to specifically identify Delphi Automotive Systems LLC as a debtor or because the plan allegedly was ambiguous with regard to litigation proceeding in other forums. (See Motion , Point V, pp. 33-37.) Again, the Reorganized Debtors are seeking to enforce Methode's stipulation – not the first bar date order itself. At this point in the litigation, any arguments Methode could have alleged regarding the sufficiency of notice of the first bar date were waived by its stipulation that the Contract Claim is predicated solely on conduct that occurred after that date.[2]

### C.    Methode's Proposed Counterclaim Violates The Stipulation

The current proposed two-count counterclaim is again predicated on pre-bar-date conduct and therefore willfully flouts the stipulation and this Court's prior orders. This time, among other things, Methode alleges that Delphi fraudulently induced Methode to enter into the Supply Agreement during the 2008 negotiations because Delphi had "secretly" filed a preference

---

[2]    Indeed, Methode gave these arguments up in connection with the patent claim, which did go forward to a decision on the merits. The Court found that "Methode does not dispute that it received such notice in a timely fashion that would have enabled it to file an administrative claim, in respect of its patent claim, before the July 15th bar date." (May 20, 2010 Tr. at 64.) Similarly, Methode's counsel agreed with the Court's observation that "I don't see any suggestion in the record that someone actually looked at the plan and said, oh, no, I don't have to file a proof of claim for an admin expense because the plan says the parties can choose their forum." (Id. at 44.)

9

suit against Methode.  As alleged in the current proposed counterclaim and incorporated into

both Count I and Count II:

> 3.    Delphi actively concealed the existence of this suit during contract
> negotiations of the three-year contract.  As a result of Delphi's
> deceptive activity, Methode entered into a contract that it would
> not otherwise have entered into had it known of Delphi's secret
> preference action.

> 23.    . .  [T]hroughout the period that Methode and Delphi were
> negotiating the three-year contract, Delphi withheld critical
> information in bad faith in order to induce Methode to enter into a
> long-term agreement. . . .

(Motion, Exh. 3, Proposed Counterclaim ¶¶ 3, 23-24, 37.)  There is no question that claims

predicated on fraud during the 2008 negotiations arose prior to June 1, 2009 and therefore violate

Methode's stipulation that its Contract Claim is based solely on post-bar-date conduct.  Moreover,

Methode entered into the stipulation with full knowledge of the existence of the preference suit

that it now deems "silent fraud."

The current proposed counterclaim also continues to allege, at least implicitly,

that Delphi entered the agreement in bad faith because Delphi allegedly "intended to in-source or

re-source Methode as a supplier at the time of contract formation."  (See Motion, Exh. 3, Count I,

¶ 29-30 (alleging that Delphi's denial of the foregoing allegation in discovery "purposely misled

Methode"); see also ¶¶ 14, 17.)  Additionally, the proposed counterclaim states that "Methode's

damages were exacerbated by Delphi's conduct in concealing its in-sourcing efforts . . . ."  (Id. ¶

2.)  Methode also claims that certain of Delphi's pre-bar-date discovery responses were false.  (Id.

¶ 31.)[3]

---

[3]    Methode alleges that "[o]n May 29, 2009, Delphi counsel affirmatively stated in writing that Delphi was
not currently manufacturing or intending to manufacture any of the subject parts for future commercial use" and that
this representation was false.  First, this was pre-bar-date conduct of which Methode was fully aware at the time it
entered into the stipulation in May 2010.  Second, Methode misrepresents the substance of the response.  Delphi
truthfully disclosed that it was "producing bladders for the purpose of evaluating in-house production capabilities"
and that "[w]hen, and if, a decision is made whether Delphi will use any commercial production capabilities for

As the Court noted in rejecting Methode's prior proposed counterclaim:

THE COURT: [W]hat happened here with the complaint is it actually became less specific, which gave me some pause because . . . I think it was really incumbent to be more specific as to what was the post-bar date conduct.

* * *

. . . [W]e're just dealing with Methode's desire to comply with the bar date. . . . It may be hard for them to do. I'm assum -- well, I'm not going to assume, but one could perhaps infer that it was done this way because it couldn't be done specifically.

(July 22, 2010 Tr. 79, 82-83.) Here, much like the prior proposed counterclaim that the Court rejected, Count I superficially appears to be based on the August 2009 termination but is purposefully vague in incorporating all of Methode's allegations regarding pre-bar-date conduct and then vaguely alleging that "Delphi's conduct constitutes a breach of the three-year Agreement." (See ¶ 35.) Count II, on the other hand, is expressly based on alleged pre-bar-date conduct. (See ¶ 46 ("As a consequence of Delphi's silent fraud during negotiations for the three-year contract, Methode incurred substantial damages in an amount to be determined at trial.").)

Accordingly, the court should again find the proposed counterclaim untimely and deny Methode's motion – this time with prejudice.[4]

---

PODS bladders that it may or may not develop, Delphi will provide reasonable commercial notice of any such decision to Methode as may be required under our existing contracts." (Motion, Ex. 2, at 1, 2.)

[4]    Methode argues that it should be permitted to assert an untimely counterclaim defensively as a set off against any affirmative claim DPH Holdings raised in the Michigan suit. However, the original suit Delphi initiated in Michigan sought to gain access to tooling drawings that Methode was wrongfully withholding. As discussed at the May 20, 2010 hearing, the Reorganized Debtors no longer need these drawings and intend to dismiss the affirmative claim. (May 20, 2010 Tr. pp. 59-60.)

## II.  EVEN IF THESE CLAIMS WERE TIMELY, THE REORGANIZED DEBTORS' OBJECTION TO THEM SHOULD PROCEED IN THIS COURT

### A.  The Claim Of Fraud In Connection With The Preference Action Requires The Court To Interpret Its Own Orders

The proposed counterclaim is premised on Methode's claim that Delphi induced Methode to enter into the Supply Agreement through "silent fraud" by "seeking and obtaining Bankruptcy Court orders allowing it to file the [preference] complaint 'under seal' and hidden from the public record." (Motion, Exh. 3, ¶ 39.)  In addition, Methode alleges that Delphi committed a fraud upon the Court.  (Id. ¶ 40 ("Delphi's representations to the Bankruptcy Court . . . [were] . . . utterly untrue.").)  Even if these allegations were not time-barred, Methode's plan to pursue them in the Michigan state court would waste judicial resources. Quite clearly this Court is in a better position than the Michigan state court judge to evaluate whether Delphi made false representations or failed to comply with this Court's own orders.  Indeed, the Court has consistently emphasized the strong rationale for liquidating Methode's administrative claim in the bankruptcy court if adjudication would require the Court to interpret its own orders.[5]

### B.  A Claim That Delphi's Termination Right Is Unenforceable "Boilerplate" Is Inconsistent With Prior Contentions And Lacks Merit

Count I alleges that the August 2009 termination constituted a breach of contract in light of all of the conduct alleged in the counterclaim – including conduct that occurred prior to first bar date for administrative claims.  Even if Count I could be reformed to jettison reliance on pre-bar-date conduct and allege only that the termination was unlawful because "[t]he three-

---

[5]       Although it is unnecessary to refute the merits of Methode's claim, its argument that Delphi fraudulently concealed the preference action is specious.  The First Amended Disclosure Statement, filed December 10, 2007, disclosed that preference actions that met a $250,000 threshold and other criteria had been commenced and that the complaints initiating the actions had been filed under seal and would not be served until a later time.  (DS 148-52.) The First Amended Disclosure Statement was served on all creditors as part of the solicitation materials.  In addition, the Court approved each extension of the service deadline and Methode received electronic service of each motion and order.

year term negotiated by the parties overrides any general boilerplate terms relating to duration of

the contract," the Court should not countenance a fourth attempt to allege a timely claim.  To do

so would unfairly reward Methode's sanctionable violations of the stipulation and the Court's

prior orders.

Moreover, a stand-alone claim that the termination right is unenforceable

"boilerplate" is also inconsistent with Methode's previous concession that it would need to plead

that Delphi's allegedly wrongful conduct overcame the express termination right in the Supply

Agreement.  Methode has not previously contended that the Terms & Conditions were void as a

matter of law because they were "boilerplate."  Instead, Methode's prior proposed claims alleged

that Delphi lost the right to terminate because of other wrongful conduct.  As discussed in a prior

colloquy with the Court:

> THE COURT: I just don't think your complaint parses through this
> sufficiently. It really covers the gamut here. I mean, paragraph 2 is the key
> thing; it says "Due to Delphi's unlawful contract termination". It was
> unlawful. Right? It was unlawful for a reason.
>
> MR. MAYER: Yes.
>
> THE COURT: As per the contract, they had a right to terminate. So
> something else rendered it unlawful, right?
>
> MR. MAYER: Yes.
>
> THE COURT: So if that something else happened before the bar date and
> was covered by the bar date order, then, as I view it and as I view the prior
> order and the transcript, it's out, because it gives rise to the right. It gives
> right to the claim.
>
> * * *
>
> THE COURT:  Again, the termination here isn't the cause of action; it's
> the wrongful termination based on something that, as I gather, invalidates
> the right to termination.
>
> MR. MAYER:  Yes.

13

(July 2010 Tr. at 77-78; 80.)  This concession should foreclose any request by Methode for leave
to plead such a claim now.

       In any event, a claim based solely on the argument that the Terms & Conditions
are unenforceable "boilerplate" should be easily disposed of.  Delphi's termination rights were
specifically included as part of the parties' contract.  In fact, during the negotiations of that
agreement in 2008, Methode modified the Terms & Conditions by deleting some paragraphs
entirely and substituting others with alternative clauses.  Yet despite this specific negotiation,
Methode left the termination rights intact.  Under well-settled law, courts are bound to enforce a
contract as written.  Rory v. Cont'l Ins. Co., 703 N.W. 2d 23, 30 (Mich. 2005) ("A fundamental
tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and
must be enforced as written." (emphasis in original)); see also APJ Assocs., Inc. v. N. Am.
Philips Corp., 317 F.3d 610, 614 (6th Cir. 2003) (finding termination-for-convenience clause
unambiguous and precluding extrinsic evidence).

       Moreover, because Delphi terminated the Supply Agreement in accordance with
the terms of the contract, Methode's assertion of bad faith is unfounded.  See Trionic Assocs. v.
Harris Corp., 27 F. Supp. 2d 175, 182 (E.D.N.Y. 1998) (observing that "conduct which is
expressly authorized by the contract cannot be said to breach the implied covenant [of good faith
and fair dealing]" and holding that termination for convenience was not bad faith where
expressly authorized by the parties' agreement) (applying Florida law), aff'd, 198 F.3d 235 (2d
Cir. 1999).

       Here, Methode has not put forward any legal support to show that it could
plausibly prevail on a claim that the three-year term in the Supply Agreement renders the express
termination-for-convenience provision void.  This further counsels against transfer.

C.    <u>The Court Retained Exclusive Jurisdiction And There Is No
Compelling Reason To Transfer The Claim To Michigan</u>

This Court maintained exclusive jurisdiction to adjudicate claims like Methode's

Contract Claim pursuant to Article XIII of the Modified Plan, which states that:

> Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the
> Bankruptcy Court shall have exclusive jurisdiction of all matters
> arising out of, and related to, the Chapter 11 Cases and this Plan,
> including . . . to adjudicate any and all adversary proceedings,
> applications, and contested matters that may be commenced or
> maintained pursuant to the Chapter 11 Cases, this Plan, or that
> were the subject of proceedings before the Bankruptcy Court prior
> to the Effective Date, proceedings to adjudicate the allowance of
> Disputed Claims and Disputed Interests, and all controversies and
> issues arising from or relating to any of the foregoing[.]

Methode's argument that the parties are contractually required to resolve the

Contract Action in Michigan pursuant to the terms of the forum selection clause stems from its

misconception that this is a non-core proceeding.  As discussed more fully below, however,

claims for breach of contract arising from post-petition contracts fall within the core jurisdiction

of the bankruptcy court.  (<u>See</u> Section III.B, below.)  Case law recognizes that "[a] debtor-in-

possession or trustee . . . is not bound by a forum selection clause in an agreement provided the

litigation at issue amounts to a core proceeding and is not inextricably intertwined with non-core

matters." <u>Official Comm. of Unsecured Creditors v. Transpacific Corp. Ltd.</u> (In re Commodore

Int'l, Ltd.), 242 B.R. 243, 261 (Bankr. S.D.N.Y. 1999); <u>see also</u> <u>Statutory Comm. of Unsecured</u>

<u>Creditors v. Motorola, Inc.</u>, (In re Iridium Operating LLC) 285 B.R. 822, 837 (S.D.N.Y. 2002)

(following <u>Commodore Int'l</u> and stating that "'[t]ransferring a core matter that is not "inextricably

intertwined" with non-core matters adversely impacts the strong public policy interest in

centralizing all core matters in the bankruptcy court'" (citation omitted)).

Although the forum selection clause does not compel transfer, the Court could of

course elect to transfer the action to Michigan state court if there were compelling reasons to do

so based on judicial economy.  Here, however, the Michigan court would have no familiarity with a newly-minted claim that Delphi's Terms & Conditions are unenforceable "boilerplate." This Court is at least as competent as the Michigan court to interpret the Terms & Conditions, and this Court's claims procedures are much more efficient than civil litigation in a state trial court would be. Accordingly, there is no compelling reason to have Methode's administrative expense claim liquidated in Michigan state court.

III.     **METHODE'S CONTRACT CLAIM IS A CLAIM FOR AN ADMINISTRATIVE EXPENSE AND IS WITHIN THE CORE JURISDICTION OF THIS COURT UNDER WELL-SETTLED PRINCIPLES OF BANKRUPTCY LAW.**

In addition to violating its stipulation, Methode also makes a number of arguments regarding the nature of its claim that contravene well-established Second Circuit precedent.  There can be no doubt that Methode's Contract Claim is a claim for an administrative expense within the core jurisdiction of this Court.

### A.     Methode's Claim Is An Administrative Claim

Despite having filed its administrative expense claim, Methode now argues that its claim is not, in fact, and administrative claim because it arose "post-confirmation" in the ordinary course of business.  This argument – variants of which Methode makes throughout the Motion – relies on the pretense of equating the initial confirmation of the plan, in January 2008, with the Effective Date in October 2009.   Even though plan confirmation often cuts off the accrual of further administrative expenses, "[t]his is true because the 'estate' usually no longer exists after plan confirmation or, at the latest, after the effective date of the plan of reorganization."  4 Collier on Bankruptcy ¶ 503.06[3][a] at pp. 503-28 – 503-29 (16th ed. 2011). In Delphi's case, the estates revested in the Reorganized Debtors on the Effective Date of the modified plan, not on the date of confirmation.  (Article 11.1)

Under the modified plan, an administrative expense claim includes "the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estates and operating the business of the Debtors." (Article 1.4.)  Although Methode cites <u>National Union Fire Ins. Co. v. VP Buildings, Inc.,</u> for the proposition that a claim not payable for years after confirmation does not constitute an "administrative claim" (Motion at 37 n. 19), that case dealt with a claim the court determined did not <u>arise</u> until after the effective date.  <u>See</u> 606 F.3d 835, 839 (6th Cir. 2010).  As the Court in <u>National Union Fire Insurance</u> recognized, courts generally treat claims for post-petition, pre-effective date breach of contract as administrative expense claims.  <u>See</u> Id. at 841 (concurring opinion).  This is also well established under Second Circuit precedent.  <u>See</u> <u>Nostas Assocs. v. Costich</u> (In re Klein Sleep Prods.), 78 F.3d 18, 26 (2d Cir. 1996) (claims arising "from contracts entered into by the trustee or debtor-in-possession [] are entitled to administrative expense priority.").

It is difficult to understand what Methode hopes to accomplish by now arguing for the first time that its claim is not an administrative expense claim.  Under Article 11.2 of the Modified Plan, except as otherwise provided, the Reorganized Debtors were discharged of all liabilities that arose prior to the Effective Date.

> **11.2 Discharge Of The Debtors.** Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in this Plan, Confirmation Order, or Modification Approval Order, the distributions and rights that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims and Causes of Action, whether known or unknown, against . . .the Debtors or any of their assets or properties . . . including, but not limited to, Claims and Interests that arose before the Effective Date . . . .

Thus, if the Contract Claim is not an administrative expense claim that was preserved by the timely filing of a claim under the terms of the plan, then it was discharged and Methode is enjoined from prosecuting it.

17

Methode also purports to withdraw its claim, noting that "[a] proof of claim may be withdrawn pursuant to Bankruptcy Rule 3006 as a matter of right[.]" (Motion at p. 25 n. 11.) The following sentence of Rule 3006, however, provides that a creditor may not withdraw its claim after an objection to the claim is filed "except on order of the court." Any order permitting withdrawal of Methode's claim should deny Methode's Contract Claim with prejudice, require dismissal with prejudice of the Michigan state court action, and expressly enjoin further related litigation.

### B.    The Court Has Core Subject Matter Jurisdiction

Although the Modified Plan provides for the Court's retention of exclusive jurisdiction of, among other things, "proceedings to adjudicate the allowance of Disputed Claims and Disputed Interests, and all controversies arising from or relating to any of the foregoing" (Modified Plan, Art. XIII), Methode argues that the Court lacks subject matter jurisdiction over the Michigan counterclaim. As Methode acknowledges, however, the Second Circuit has expressly found that any cause of action stemming from a contract entered into and breached post-petition is a core proceeding because the adjudication of post-petition contract claims is an integral part of administering the estate. Ben Cooper, Inc. v. Ins. Co. of Pa. (In re Ben Cooper, Inc.), 896 F.2d 1394, 1399-1400 (2d Cir. 1990) ("We hold, therefore, that the bankruptcy court has core jurisdiction, pursuant to § 157(b)(2)(A), over contract claims under state law when the contract was entered into post-petition."); see also U.S. Lines, Inc. v. Am. Steamship Owners Mut. Prot. & Indem. Assoc. (In re U.S. Lines, Inc.), 197 F.3d 631, 637-38 ("The Bankruptcy Court has core jurisdiction over claims arising from a contract formed post-petition . . . .").

Methode cites a number of inapposite cases discussing whether a creditor who files a proof of claim in the bankruptcy court thereby consents to the bankruptcy court's jurisdiction over the debtor's pre-petition counterclaim against the creditor. (Motion at 22-25

18

(citing <u>Piombo Corp. v. Castlerock Props.</u>, (In re Castlerock Properties), 781 F.2d 159, 162-63

(9th Cir. 1986); <u>Kamine/Besicorp Allegany, L.P. v. Rochester Gas & Elec. Co.</u>, (In re

Kamine/Besicorp Allegany, L.P.), 214 B.R. 953, 969 (Bankr. D.N.J. 1993).)  As discussed above,

however, the Court has core jurisdiction over disputes arising from <u>post-petition</u> contracts.  This

would be true whether or not Methode had filed a proof of claim for an administrative expense.

Methode attempts to distinguish this controlling precedent on the ground that the

contract dispute first arose after confirmation of Delphi's plan of reorganization in January 2008.

Again conflating confirmation with the emergence, Methode argues that the bankruptcy court's

jurisdiction became "severely limited" at the moment the plan was confirmed in January 2008.

(Motion at 26 (citing <u>Penthouse Media Group v. Guccione</u> (In re General Media, Inc.), 335 B.R.

66, 73 (Bankr. S.D.N.Y 2005) (stating that "all courts that have addressed the question have

ruled that once confirmation occurs, the bankruptcy court's jurisdiction shrinks.")).)  Despite its

use of the term "post-confirmation jurisdiction," however, the Court in <u>General Media</u> was

dealing with not just "post-confirmation" but "post-effective date" litigation.  <u>See</u> 335 B.R. 68 &

n.1 (showing that acquirer of reorganized debtors sued former CEO for turnover of property

nearly eleven months after effective date of the plan.)  Nothing in <u>General Media </u>or the other

cases cited by Methode addresses post-confirmation, pre-effective date jurisdiction.

Methode also cites two cases that purportedly stand for the proposition that

"Contacts are treated as post-confirmation contracts for jurisdictional purposes, even where, as in

this case, the court holds a second confirmation hearing with respect to the second, modified

plan." (Motion at 26, n. 12.)  However, in both cases, the modification hearing at issue occurred

after the effective date of the plan. <u>See</u> <u>Coastal Petroleum Corp. v. Second Medina Corp.</u>, (In re

Coastal Petroleum Corp.), 142 B.R. 177, 179 (Bankr. N.D. Ohio 1992) (no jurisdiction over

contract dispute where "the agreement's execution . . . occurred post-confirmation while the

reorganized Coastal had emerged from bankruptcy and had been revested with its assets");

Victorian Park Assocs. v. Patrician Mortgage Co., No. 95 C 7643, 1997 WL 264401, at *1 (N.D.

Ill. May 9, 1997) (no jurisdiction because "once the Third Plan was confirmed the property

revested in the debtor, no estate remained to be administered and the Bankruptcy Code

provisions governing debtors and creditors no longer apply").

   Moreover, in a prior bench ruling in this case, the Court determined that the

concerns expressed in General Media are not applicable to a case such as this one where the

reorganized debtor is not carrying on an ongoing reorganized business but exists to deal with

remaining claims against the estate.  Ace American Ins. Co. v. DPH Holdings Corp. (In re DPH

Holdings Corp.), Jan. 26, 2010 Tr. at 11-13, aff'd, 437 B.R. 88, 97-98 (S.D.N.Y. 2010).  Here,

the plan fully reserved this Court's exclusive jurisdiction over administrative claims and

Methode's administrative claim bears a close nexus to the Court's core function of dealing with

claims against the estate.  Determination of the timeliness of Methode's administrative expense

claim is clearly within the Court's core jurisdiction.  In addition, Methode's $40 million claim

was not contemplated at the time the plan was confirmed and its allowance would

unquestionably have a detrimental if not fatal effect on the Reorganized Debtors' ability to carry

out the terms of the plan.

### C.  The Plan Injunction Applies To The Michigan Action

   Methode cites a wholly inapplicable procedural rule to argue that the plan

injunction is unenforceable.  Federal Rule of Bankruptcy Procedure 2002(c)(3) was amended in

2001 to add a requirement that "[i]f a plan provides for an injunction against conduct not

otherwise enjoined under the Code, the notice [of the confirmation hearing] shall . . . (B)

describe briefly the nature of the injunction; and (C) identify the entities that would be subject to

the injunction."  Methode claims Delphi "ignored" this rule by failing to identify "the entities that would be subject to the injunction."

As the Advisory Committee recognized in its comments on the 2001 Amendment, however, this rule only applies to notice of injunctions beyond those provided for in the Code – such as injunctions in favor of non-debtors.

> For example, if a plan contains an injunction against acts to collect a discharged debt from the debtor, Rule 2002(c) would not apply because that conduct would be enjoined under § 524(a)(2) upon the debtor's discharge.  But if a plan provides that creditors will be enjoined from asserting claims against persons who are not debtors in the case, the notice of the confirmation hearing must include the information required under Rule 2002(c)(3) because that conduct would not be enjoined by operation of the Code.

See Fed. R. Bankr. P. 2002, Advisory Committee Notes to 2001 Amendments.

The Code provides that the discharge of the debtor "operates as an injunction against the commencement or continuation of an action . . . to collect" a discharged debt.  11 U.S.C. 524(a)(2).  Because Methode's Michigan suit was enjoined by operation of the Code, Rule 2002 is inapplicable.[6]

## D.    There Is No Basis For Mandatory Abstention

As Methode concedes, mandatory abstention applies only to claims in which the bankruptcy court is exercising "related to" jurisdiction.  Because Methode's counterclaim is a core proceeding, there can be no mandatory abstention.  In addition, the abstention motion is untimely as Methode is raising it more than 15 months after its original motion in this matter and 21 months after the plan injunction became effective.

---

[6]    Even if Rule 2002 were otherwise applicable, the rule does not require a listing by name of every party subject to the injunction.  Here, thousands of parties are subject to the plan injunction and it would be infeasible to list them all by name rather than by class or category.  See 2001 Advisory Committee Notes ("For example, it may be sufficient for the notice to identify the entities as 'all creditors of the debtor' and for the notice to be published in a manner that satisfies due process requirements.").  Moreover, '[t]he validity and effect of any injunction provided for in a plan are substantive law matters that are beyond the scope of these rules."  Id.

WHEREFORE, the Reorganized Debtors respectfully request that this Court enter an order denying Methode's motion for leave to file its amended counterclaim in Michigan and granting the Reorganized Debtors such other and further relief as is just.

Dated:   New York, New York
         August 18, 2011

                              SKADDEN, ARPS, SLATE, MEAGHER
                                & FLOM LLP

                              By:   /s/  John Wm. Butler, Jr.
                                    John Wm. Butler, Jr.
                                    John K. Lyons
                                    Ron E. Meisler
                                    Lee P. Garner
                              155 North Wacker Drive
                              Chicago, Illinois 60606

                                    - and -

                              Four Times Square
                              New York, New York 10036

                              Attorneys for DPH Holdings Corp., et al.,
                                Reorganized Debtors