05-44481-rdd    Doc 21541    Filed 08/23/11    Entered 08/23/11 18:39:13    Main Document
       Pg 1 of 10

Hearing Date and Time: August 25, 2011 at 10:00 a.m. (prevailing Eastern time)

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                       :   Chapter 11
In re                                  :
                                       :   Case No. 05-44481 (RDD)
DELPHI CORPORATION, *et al.*,          :
                                       :   Jointly Administered
        Debtors.                       :
                                       :
_____ :

**METHODE ELECTRONICS, INC.'S RESPONSE TO THE REORGANIZED
DEBTORS' OBJECTION TO MOTION OF METHODE ELECTRONICS, INC.
FOR LEAVE TO FILE ITS AMENDED COUNTERCLAIM AGAINST THE
REORGANIZED DEBTORS IN MICHIGAN**

| | |
|---|---|
| WACHTELL, LIPTON, ROSEN & KATZ | LOCKE LORD BISSELL & LIDDELL LLP |
| 51 West 52nd Street | 111 South Wacker Drive |
| New York, New York  10019 | Chicago, Illinois  60606 |
| Telephone:  (212) 403-1000 | Telephone:  (312) 443-0654 |
| Facsimile:  (212) 403-2000 | Facsimile:  (312) 896-6654 |
| | |
| | LOCKE LORD BISSELL & LIDDELL LLP |
| | Three World Financial Center |
| | New York, NY 10281 |
| | Telephone:  212-415-8600 |
| | Facsimile:  212-303-2754 |
| Dated:  August 23, 2011 | *Attorneys for Methode Electronics, Inc.* |

Methode Electronics, Inc. ("Methode") submits this reply to the *Reorganized Debtors' Objection to Motion of Methode Electronics, Inc. for Leave to File Its Amended Counterclaim Against the Reorganized Debtors in Michigan* [Doc. 21,529] (hereinafter "Delphi's Objection").

## PRELIMINARY STATEMENT

In opposing Methode' renewed motion to file a counterclaim, Delphi resorts to shrill accusations to mask an unsupportable position. In its proposed Amended Counterclaim, Methode has stated two causes of action: Methode alleges that Delphi fraudulently induced it to enter a new three-year supply contract by concealing — until March 19, 2010 — that it had brought a $19.7 million preference action against Methode. (Methode's Motion, Ex. 3, ¶¶ 37-46). And Methode alleges that Delphi breached its supply contract with Methode by concealing its re-sourcing activity and then terminating the contract in bad faith after June 1, 2009. *Id*. ¶¶ 24-36.

Delphi's one and only argument in support of its position that Methode is barred from pursuing these claims in *any* forum is that the claims violate a "stipulation" under which Methode may only bring claims that arose after June 1, 2009. But Methode's counterclaim *did* arise after that date, and Delphi has offered no coherent argument to the contrary.

*First*, Methode's fraudulent inducement claim arose after June 1, 2009 for the simple reason that the concealed preference action was kept secret until after that date. Delphi's suggestion that Methode is barred from bringing its fraud claim because Delphi's *concealment* occurred before June 1, 2009 would create absurd results, allowing a debtor to avoid tort liability simply by concealing its tortious conduct until after all bar dates have passed. Under applicable law, including case law from this District that Delphi ignores, Delphi's illogical position can be swiftly rejected.

1

*Second*, Methode's claim that Delphi violated the parties' supply contract also arose after June 1, 2009. Methode has alleged that Delphi violated the contract when it terminated the contract in bad faith in August 2009 and concealed its efforts to re-source after the June 1, 2009 First Bar Date cutoff. Delphi's main response, namely that its termination of the contract was permitted under a "convenience" clause, goes to the merits of Methode's claim and has no bearing on whether the claim arose after the bar date, which it did.

Accordingly, Delphi's "stipulation" argument — which is Delphi's sole basis for urging that Methode's claims should be barred from going forward in any court — is an unsuccessful attempt at a "gotcha" by a debtor seeking to avoid liability for post-confirmation misconduct. Furthermore, as discussed below, Delphi's argument that this Court rather than the Michigan state court should adjudicate Methode's claims ignores Delphi's own prior choice to bring suit against Methode in Michigan and should be rejected.

## ARGUMENT

### I.  METHODE'S PROPOSED COUNTERCLAIM DOES NOT VIOLATE ANY STIPULATIONS OR COURT ORDERS.

In its objection, Delphi claims that Methode's Amended Counterclaim is precluded by Methode's "stipulation" that its Contract Claim would be predicated on conduct that occurred after June 1, 2009, the First Bar Date. (Delphi's Objection at 7). Delphi also relies upon this Court's order of June 14, 2010, which states that "Methode's Contract Claim does not seek to assert claims that arose prior to June 1, 2009" and concludes that Methode's "request to lift the Plan Injunction to allow litigation regarding the Contract Claim in the Michigan state court is held in abeyance" pending further application to this Court. (Delphi's Objection at 8).

Delphi's position is totally unfounded. Methode's fraudulent inducement claim is not even mentioned in the "stipulation" and, in any event, is predicated upon conduct that came to

2

light *after* the First Bar Date, namely Delphi's revelation of its $19.7 million preference action against Methode. Moreover, Methode's breach of contract claim has been revised to do precisely what the Court instructed — *i.e.*, to "be more specific as to what was the post-bar date conduct" that constituted Delphi's breach. (July 22, 2010 Tr. at 79:24-25). Both claims, accordingly, should be permitted to go forward.

    A.    **Methode's fraudulent inducement claim**

Methode's proposed Amended Counterclaim alleges that Delphi fraudulently induced Methode to enter into a three-year supply agreement when it concealed that it had sued Methode for $19.7 million in alleged preferences. (*See* Methode's Motion, Ex. 3, Proposed Counterclaim, ¶¶ 3, 21-23, 37-46). Methode did not discover Delphi's concealment until March 2010, well after the passage of the First Bar Date, when Methode was served with the Preference Lawsuit.

At the last hearing in this matter, counsel for Methode and the Court discussed the precise question of whether Methode could assert claims against Delphi based on conduct of which Methode was unaware at the time of the First Bar Date. (July 22, 2010 Tr. at 81:8-82:3). And the Court expressly left open the issue of whether Methode's lack of knowledge at the time of the First Bar Date would prevent Delphi from enforcing that bar date against Methode. *Id.*

In its objection, although Delphi declares that "claims predicated on fraud during the 2008 negotiations arose prior to June 1, 2009," Delphi completely ignores both the applicable case law and the concealment alleged by Methode. Courts in this District and elsewhere have concluded that a debtor's concealment of facts that provide the basis for a proof of claim prevents the debtor from enforcing a bar date. *See Houbigant Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.)*, 188 B.R. 347, 355 (Bankr. S.D.N.Y. 1995) (refusing to dismiss late-filed claims predicated on information concealed by debtor but not discovered until after the bar date);

3

*see also Tillman v. Camelot Music, Inc.*, 408 F.3d 1300, 1308 (10th Cir. 2005) (bar date notice by publication was deemed insufficient because employer concealed life insurance policies from employees to prevent them from claiming entitlement to benefits from policies); *In re Arts Des Provinces de France, Inc.*, 153 B.R. 144, 147 (Bankr. S.D.N.Y. 1993) ("[T]he debtors may not assume the role of righteous indignation [regarding an untimely proof of claim] when they contributed to the confusion [leading to the untimely filing]."). *Houbigant* is on point.  In that case, the debtor moved to dismiss certain claims on the ground that the relevant claimant had failed to file a timely proof of claim.  *See* 188 B.R. at 350-51.  The claimant argued that its failure to file a timely proof of claim should be excused because the debtor's concealment of critical facts caused the claimant not to discover the basis for such claims until after the relevant bar date.  *See id.* at 354.  The court agreed, concluding that "it would be inequitable to permit [the] debtor to profit from its [concealment] by barring the late filed claims." *Id.* at 355.

The Second Circuit, moreover, has observed that "[t]he time [when] a claim arises is determined under relevant non-bankruptcy law," here the law of Michigan. *Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.)*, 209 F.3d 125, 128 (2d Cir. 2000); *accord Ogle v. Fid. & Deposit Co. of Md.*, 586 F.3d 143, 146 (2d Cir. 2009).  Under Michigan law, the limitations period relating to a claim is tolled when the actionable facts are concealed. *See* Mich. Comp. Laws § 600.5855 ("If a person who is or may be liable for any claim fraudulently conceals the existence of the claim . . ., the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim.").  Here, therefore, Delphi's concealment of the factual basis for Methode's claim until after the First Bar Date renders that claim a *post*-bar date claim.

4

Delphi's position defies not only the case law but also logic and common sense. If Delphi's position were accepted, a debtor could avoid creditor claims, including administrative expense claims based on post-petition conduct, by concealing actionable facts underlying those claims until after the relevant bar date. Delphi's objection provides absolutely no basis for this result, and there is none.[1]

Delphi asserts that in May 2010, when Methode "stipulated" that its breach of contract claim was based on post-First Bar Date conduct, Methode was already aware of the Preference Lawsuit. (Delphi's Objection at 2, 9). This is a red herring. The governing order, consistent with the "stipulation" that Delphi invokes, provides simply that "Methode's Contract Claim does not seek to assert claims that arose prior to June 1, 2009." (June 14, 2010 Order ¶ E). Methode's fraud claim against Delphi, aside from not being a "Contract Claim," does *not* assert claims that arose prior to June 1, 2009. It asserts a claim that arose *after* that date, when Delphi first disclosed the preference action that it had previously concealed.[2]

B.   **Methode's breach of contract claim**

Methode's breach of contract claim alleges new facts that occurred after June 1, 2009 pertaining to Delphi's bad faith termination of the 2008 Agreement. (*See* Methode's Motion,

---

[1] Cases from the mass tort context – which involve harms or creditors that are unknown to the debtor – are not analogous. *Compare Chemetron Corp. v. Jones*, 72 F.3d 341, 347-9 (3d Cir. 1995) (finding that a debtor was not obligated to provide notice of a bar date to unknown creditors whose identities were not "reasonably ascertainable" but also directing the district court, in considering a late-filed claim, to consider "the role that [the debtor] might have played in contributing to the delay [in filing]"). Here, Delphi knew that it had sued Methode for $19.7 million, it had the ability to disclose that fact to Methode, but it nevertheless concealed that material fact throughout negotiation of the 2008 Agreement and expiration of the bar date.

[2] In a footnote, Delphi claims that its disclosure statement filed in December 2007, coupled with electronic service of motions to extend the service deadline for the Preference Lawsuit, demonstrate that the preference action against Methode was not concealed. (Delphi's Objection at 12 n. 5). This argument, which really goes to the merits of Methode's claim, conflates the issue of whether Delphi's preference claims were properly disclosed in this Court with the issue of whether Delphi had an obligation to disclose its $19.7 million suit against Methode in the context of a contract negotiation. Contrary to Delphi's assertion, Methode is not challenging any order of this Court in connection with the Contract Claim (Delphi's Objection at 12); Methode is alleging that Delphi deceived Methode in particular when it negotiated a new contract with Methode while concealing its $19.7 million lawsuit.

5

Proposed Counterclaim, Ex. 3, ¶¶ 29-31). Specifically, Methode alleges that, on May 29, 2009 — right before the June 1 First Bar Date — Delphi conveyed that it was not manufacturing or intending to manufacture the subject parts itself, and thus did not intend to breach. (*Id.* at ¶ 31). Then, on July 13, 2009 — well after the First Bar Date's June 1, 2009 cutoff — Delphi again denied that it intended to manufacture the subject parts. (*Id.* at ¶ 30). These misrepresentations, which continued after the First Bar Date, purposefully misled Methode as to whether Delphi was going to breach its contract with Methode.

The May 29, 2009 letter, which was sent only one business day before the June 1, 2009 First Bar Date cutoff, although pre-First Bar Date, is relevant to Methode's claim not only because it was not corrected after the First Bar Date but also because the misrepresentations in that letter were reiterated on July 13, 2009. The Court previously indicated that pre-First Bar Date facts — such as Delphi's May 29, 2009 letter — can be relevant to Methode's claim, provided that they do not alone substantiate the claim. (May 20, 2010 Tr. at 32:15-20). Methode's breach of contract claim is *not* based solely on the May 29, 2009 letter. Rather, the Amended Counterclaim alleges that Delphi misled Methode after June 1, 2009 by concealing its re-sourcing efforts and ultimately breached its contract with Delphi by terminating the contract in bad faith on August 26, 2009, months after the First Bar Date. (*See* Methode's Motion, Proposed Counterclaim, Ex. 3, ¶¶ 25-31).[3]

Delphi's argument that Delphi acted within its rights under the boilerplate "termination for convenience" clause once again concerns the merits of Methode's claim and hence is beside

---

[3] Delphi contends that the May 29, 2009 letter was not a misrepresentation because, in addition to disclosing that it was not intending to manufacture the subject part, Delphi also stated that it was evaluating in-house capabilities. (Delphi's Objection at 10 n.3). Regardless of whether Delphi was evaluating in-house manufacturing capabilities - which could have been in connection with programs for which Methode was not the supplier, or for a period after its contract with Methode expired - Delphi represented in the May 29 letter that it was not manufacturing or intending to manufacture the subject parts, falsely signaling that Delphi did not intend to terminate the 2008 Agreement. More importantly, whether this letter constitutes a misrepresentation constitutes an issue of Michigan state law.

6

the point. Aside from the issue of forum, the sole issue presented to this Court on this motion is whether Methode's claims are based on conduct occurring after June 1, 2009, which they are.

## II.     METHODE'S COUNTERCLAIM SHOULD BE LITIGATED IN MICHIGAN.

### A.     This is not a core proceeding.

Delphi insists that Methode's counterclaim, simply by virtue of arising from a *post-petition* contract, is a core proceeding — and thus not subject to the Michigan forum selection clause — because the suit "is an integral part of administering the estate." (Delphi's Objection at 18). This argument is not supported by the case law. In *Ben Cooper*, the Second Circuit held that a claim arising from a post-petition contract is "core," because creditors entering into post-petition contracts reasonably contemplate that the contracts at issue are "integral to the estate administration from the date they are entered into." *In re Ben Cooper*, 896 F.2d 1394, 1399 (2d Cir. 1990).

This reasoning clearly does not apply here. The 2008 Agreement was entered into by Delphi *post-confirmation*, leading Methode to reasonably discern — as the contract itself expressly provided — that any disputes would be resolved in a Michigan forum. And that is precisely what occurred. *Delphi* initiated this lawsuit in Michigan and litigated the suit there for fourteen months. Thus, both the contract itself and Delphi's conduct demonstrate that this contract was anything but "integral" to the administration of the estate.

Delphi also cites Article XIII of the Modified Plan as a basis for this Court's exclusive jurisdiction over Methode's Contract Claim. (Delphi's Objection at 15). As demonstrated in the Methode's motion, however, both the Confirmed Plan and the Modified Plan contain a carve-out to this Court's exclusive jurisdiction for actions that Delphi chooses to commence *outside* of the

Bankruptcy Court. (Methode's Motion at 33). This is exactly what Delphi did here and, therefore, these provisions are controlling.

### B. The Modified Plan Injunction is not applicable.

As set forth in Methode's Motion (at 37-38), the Modified Plan injunction is unenforceable against Methode's Contract Claim because it failed to comply with Federal Rule of Bankruptcy Procedure 2002(c)(3). Delphi now claims, however, that Rule 2002(c)(3) is inapplicable because Methode's claims would otherwise be enjoined by the Bankruptcy Code. (Delphi's Objection at 21).

This is wrong. Put simply, Delphi cannot conceal the material facts underlying Methode's claim and then argue that the claim has been enjoined by a plan injunction. The Modified Plan was confirmed in July 2009, long before Methode learned that Delphi had been concealing the Preference Lawsuit. Accordingly, as discussed above, Methode's counterclaim had yet to arise at the time of the injunction. The counterclaim is not covered by any enforceable injunction and, to the extent that they are, the injunction should be modified to permit Methode to pursue those post-bar-date claims in Michigan.

### C. This Court should abstain from exercising jurisdiction

Finally, Methode reiterates its request that this Court abstain from hearing its counterclaim. Delphi suggests that "the Michigan court would have no familiarity with a newly-minted claim that Delphi's Terms & Conditions are unenforceable boilerplate." (Delphi's Objection at 16). This is not persuasive. Methode has the right to amend its counterclaim. And before the Michigan suit was stayed, the parties had litigated for fourteen months, discovery was well underway, and the Michigan state court – which is the epicenter for resolution of automotive contractual disputes – was very familiar with the case.

8

## CONCLUSION

When Methode was last before the Court, the Court directed it to reformulate its proposed counterclaim to allege post-First Bar Date conduct on the part of Delphi. Methode has done that. It alleges that Delphi concealed its secret preference lawsuit against Methode and that, had Methode known of that secret suit, it would never have entered into the subject contract. In addition, Methode alleges in clear terms that Delphi breached the 2008 Agreement after the First Bar Date. Those facts were not and could not have been discovered before the bar date that Delphi is seeking to enforce. Methode, accordingly, should be permitted to pursue its counterclaim in the Michigan forum that Delphi chose for this litigation.

Dated: New York, New York
         August 23, 2011

**LOCKE LORD BISSELL & LIDDELL LLP**

  /s/ Shalom Jacob
Shalom Jacob
Three World Financial Center
New York, NY 10281
Telephone: 212-415-8600
Facsimile: 212-303-2754

Ann Marie Walsh
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 443-0654
Facsimile: (312) 896-6654

**WACHTELL, LIPTON, ROSEN & KATZ**
Douglas K. Mayer
Emil A. Kleinhaus
51 West 52nd Street
New York, New York 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000