Hearing Date and Time: September 22, 2011 at 10 a.m. (EDT)
Response Date and Time: September 15, 2011 at 4:00 (EDT)

BUTZEL LONG, a professional corporation
Stoneridge West
41000 Woodward Avenue
Bloomfield Hills, MI  48304
(248) 258-1616

Cynthia J. Haffey
Sheldon H. Klein
Thomas B. Radom
Thomas D. Noonan
*Attorneys for Reorganized Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| DPH HOLDINGS CORP., *et al.,* | Case No. 05-44481 (RDD) |
| | Jointly Administered |
| Reorganized Debtors. | |

**REORGANIZED DEBTORS' MOTION FOR ORDER (I) ENFORCING
MODIFICATION PROCEDURES ORDER, MODIFIED PLAN AND PLAN
MODIFICATION ORDER INJUNCTIONS AGAINST TRUSTEE FOR THE
OLDCO M DISTRIBUTION TRUST, AND (II) DIRECTING TRUSTEE
<u>TO DISMISS ACTION TO RECOVER DISCHARGED CLAIM</u>**

**("OLDCO TRUSTEE INJUNCTION MOTION")**

DPH Holdings Corp. ("DPH") and certain of its affiliated reorganized debtors in the above-captioned cases (collectively, the "Reorganized Debtors"), for their Motion For Order (I) Enforcing Modification Procedures Order, Modified Plan And Plan Modification Order Injunctions Against Trustee For The Oldco M Distribution Trust, And (II) Directing Trustee To Dismiss Action To Recover Discharged Claim, state as follows:

**OVERVIEW**

1. By their Motion, Reorganized Debtors request this Court to exercise its jurisdiction and enforce the bar claims and discharge provisions contained in the Court's June 16, 2009 Modifications Procedures Order and the discharge and injunction provisions contained in the Court's July 30, 2009 Plan Modification Order, which confirmed the Reorganized Debtors' Modified Plan, against the Trustee of Oldco M Distribution Trust ("Oldco Trustee").[1] The trust is the successor in interest to certain assets and claims of Metaldyne Corporation and certain of its affiliates, former chapter 11 debtors, whose cases were and continue to be presided over by Judge Glenn of this District.

2. Twenty-two months after this Court confirmed the Modified Plan, the Oldco Trustee commenced an adversary proceeding in its bankruptcy court against one of the Reorganized Debtors, Delphi Automotive Systems, LLC ("DAS"), to recover an alleged preferential transfer in the approximate amount of $200,000 made by Metaldyne to DAS shortly before Metaldyne filed for bankruptcy protection in the latter part of May, 2009. Despite receiving actual notice of the July 15, 2009 Administrative Claim Bar Date, Metaldyne did not file proof of an administrative expense claim to preserve its preference claim in these chapter 11 cases. As discussed below, the preference claim, therefore, became barred and discharged under the terms of the Modification Procedures Order and the Modified Plan and the litigation of that claim by the Oldco Trustee is a violation of the Plan Injunction under the terms of the Plan Modification Order.

3. Following service of the preference complaint on DAS, counsel for DPH requested on multiple occasions to counsel for the Oldco Trustee that the Oldco Trustee dismiss

---

[1] As this District wrote in *In re Texaco, Inc.*, 182 B.R. 937, 947 (Bankr. S.D.N.Y. 1995), "A bankruptcy court is undoubtedly the best qualified to interpret and enforce its own orders, including those providing for discharge and injunction…."

the adversary proceeding because it seeks to recover upon a claim that was barred and discharged in these chapter 11 cases. The Oldco Trustee has refused. Consequently, in connection with the enforcement of the above orders of the Court, Reorganized Debtors are entitled to have the Court direct the Oldco Trustee to take all necessary action to promptly dismiss the adversary proceeding against DAS.

## RELEVANT FACTS

4.    On October 8 and 14, 2005, Delphi Corporation and certain of its affiliates, former debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), predecessors of the Reorganized Debtors, filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended.

5.    On May 27, 2009, Metaldyne Corporation and certain of its affiliates (collectively "Metaldyne") filed voluntary petitions for reorganization relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, Case No. 09-13412 (MG) (the "Metaldyne Bankruptcy").

6.    On June 16, 2009, this Court entered an Order (A)(I) Approving Modifications to Debtors' First Amended Plan of Reorganization (as Modified) and Related Disclosures and Voting Procedures and (II) Setting Final Hearing Date to Consider Modifications to Confirmed First Amended Plan of Reorganization and (B) Setting Administrative Expense Claims Bar Date and Alternative Transaction Hearing Date ("Modification Procedures Order") (Docket No. 17032). The Modification Procedures Order provided in pertinent part that: (i) July 15, 2009 was the deadline for all creditors holding administrative expense claims arising during the period from the commencement of the chapter 11 cases in October 2005 through June 1, 2009 to file a

3

claim on an Administrative Expense Claim Form ("Administrative Claim Bar Date"); and (ii) any party that "is required but fails to file a timely Administrative Expense Claim Form shall forever be barred, estopped, and enjoined from asserting such claim against the Debtors, and the Debtors and their property shall be forever discharged from any and all indebtedness, liability, or obligation with respect to such claim." *Id*. at ¶¶ 38-41.

7. On or before June 20, 2009, Debtors served a Notice of Bar Date for Filing Proof of Administrative Expense in accordance with the Modification Procedures Order on Metaldyne at numerous locations, including locations for Metaldyne's attorneys of record. A copy of the Affidavit of Service of the Notice, among other things, dated June 23, 2009 (Docket No. 17267), together with the pertinent pages thereto showing service on Metaldyne, is attached as *Exhibit A*.

8. Neither Metaldyne nor any affiliate of Metaldyne with the "Metaldyne" name in it filed an administrative expense claim on account of the alleged preference claim or on account of any other claim by the Administrative Claim Bar Date or anytime thereafter in these chapter 11 cases. *See Affidavit of Dean Unrue attached as Exhibit B*.

9. On July 30, 2009, this Court entered an Order Approving Modifications Under U.S.C. §1127(b) to (I) first Amended Joint Plan Of Reorganization ("Plan") of Delphi Corporation and Certain Affiliates and Debtors-In-Possession, As Modified and (II) Confirmation Order (the "Plan Modification Order"). (Docket No. 18707)

10. On January 11, 2010, Metaldyne filed a plan and related disclosure statement in the Metaldyne Bankruptcy, which provided for the liquidation of Metaldyne's remaining assets for the benefit of Metaldyne's creditors. Pursuant to that plan – which became effective March 30, 2010 – Metaldyne was dissolved and the Oldco M Distribution Trust, as successor in interest to Metaldyne, was created in order to, among other things, pursue causes of action under sections

4

547 and 550 of the Bankruptcy Code. Executive Sounding Board Associates, Inc. was appointed the Trustee of the Oldco M Distribution Trust. *See Exhibit C: Oldco Trustee Preference Complaint, ¶¶ 16, 19, 20, & 24*.

11. On May 23, 2011, almost two years after the Administrative Bar Claim Date, the Oldco Trustee filed an adversary proceeding ("Preference Action") in the Metaldyne Bankruptcy against DAS to recover $199,134 of preference payments Metaldyne allegedly made to DAS in May, 2009. *See Exhibit C*. The alleged preference payments were for "components" provided by DAS that Metaldyne "used in connection with their assembly and fabrication of highly engineered metal components for the global light vehicle market." *Id*. at ¶ 28.

12. Following service of the preference complaint on DAS, counsel for DPH, on multiple occasions, requested that the Oldco Trustee dismiss the Preference Action. That request was rejected, thus necessitating the filing of (i) an Answer and Affirmative Defenses to the preference complaint in the Preference Action for precautionary purposes, and (ii) this Motion.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1334, the Modified Plan (Article XIII) and the Plan Modification Order (¶56). This matter is a core proceeding within the meaning of 28 U.S.C. §157(b). This Court is the proper venue for this matter pursuant to 28 U.S.C. §§1408 and 1409.

## ARGUMENT

### A. Introduction

14. It is well established that confirmation of a chapter 11 plan discharges any and all debts of the debtor, which arose prior to confirmation, in accordance with the plan and the Bankruptcy Code. 11 U.S.C. § 1141(d)(1). The Bankruptcy Code provides, in pertinent part:

5

> (c)     Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of the plan, the property dealt with by the plan is free and clear of all claims and interests of creditors…
>
> (d)     Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—
>
> > (A) discharges the debtor from any debt that arose before the date of such confirmation and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not—
> >
> > > (i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;
> > >
> > > (ii) such claim is allowed under section 502 of this title…

11 U.S.C. § 1141(c) and (d)(1).

15.     On July 30, 2009, this Court entered the Plan Modification Order. By entry of the Plan Modification Order, (i) the Reorganized Debtors were discharged of, among other things, all Claims and Causes of Action, whether known or unknown, (ii) all retained assets of the Reorganized Debtors revested in the Reorganized Debtors free and clear of all Claims of creditors; and (iii) all Persons (as that term is defined in the Plan) were permanently enjoined ("Plan Injunction") from, among other things, "commencing…in any manner any Claim, Interest, Cause of Action or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date" of the Plan. *See Plan Modification Order, ¶¶ 20 and 22*.

16.     The effect of the Reorganized Debtors' discharge is set forth in section 524(a) of the Bankruptcy Code, under which that discharge operates as a permanent injunction against the <u>commencement or continuation</u> of any action to recover discharged claims against the Reorganized Debtors. Specifically, Section 524(a)(2) provides:

> (a)    A discharge in a case under this title –
>
> …..
>
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. § 524(a)(2).

17.    Consequently, under the Plan Modification Order and the Bankruptcy Code, all pre-confirmation claims asserted by the Oldco Trustee on behalf of the Metaldyne estate against DAS were discharged, and the Oldco Trustee is permanently enjoined from prosecuting such claims against DAS.

### B.    Debtors Provided Metaldyne with Actual Notice of the Administrative Claim Bar Date.

18.    Discharge under the Bankruptcy Code presumes that all creditors bound by the plan were given notice to satisfy due process. *DePippo* v. *Kmart Corp.*, 335 B.R. 290, 295 (D.C. S.D. N.Y. 2005). Notice requirements will vary depending upon whether the creditor is known or unknown to the debtor. A "known" creditor is one whose *identity* is either known to the debtor or is 'reasonably ascertainable' by the debtor." *Id.* at 296. Here, Oldco was a known creditor. A known creditor "must be afforded notice reasonably calculated, under all of the circumstances to apprise them of the pendency of the bar date." *See In re Macy & Co., Inc.*, 161 B.R. 355, 359 (Bankr. S.D.N.Y. 1993) (*quoting Mullane* v. *Central Hanover Bank & Trust Co.*, 399 U.S. 306, 314 (1950)). The "Supreme Court has repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice." *Id.* (*quoting Tulsa Professional Collection Serv., Inc.* v. *Pope*, 485 U.S. 478, 490 (1988)). The "appropriate inquiry is whether the Debtors properly mailed notice of the bar date to known creditors." *Id*.

(*citations omitted*). "Mail properly addressed, stamped and deposited in the mail system is presumed to have been received by the party to whom it has been addressed." *Id*. (*citations omitted*)

19. As indicated in the Affidavit of Service, on or before June 20, 2009, Reorganized Debtors mailed notice of the Notice of Bar Date for Filing Proof of Administrative Expense to Metaldyne at numerous locations, including two separate locations for its attorneys of record. Accordingly, Reorganized Debtors provided more than adequate notice under the law, and the Oldco Trustee cannot credibly claim that Metaldyne did not receive actual notice of the Administrative Claim Bar Date.

### C. Oldco Trustee's Preference Claims Were "Claims" Under the Modification Procedures Order and the Bankruptcy Code.

20. As demonstrated above, all pre-confirmation "claims" against Reorganized Debtors held by Metaldyne, were discharged. The Bankruptcy Code defines "claims" to include any and all "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5). Courts have recognized that the definition of a claim is intentionally broad to enable all the obligations of a debtor to be treated in a bankruptcy case, no matter how remote or contingent, to give the debtor the broadest relief possible in the bankruptcy court. *See, In re Chateaugay Corp*., 944 F.2d 997, 1003 (2nd Cir. 1991); *see also*; *Grady* v. *A.H. Robins Co*., 839 F.2d 198, 202 (4th Cir. 1988); *In re Lorro, Inc*. 391 B.R. 760, 767 (E.D. Mich. 2008).

21. A preference claim is a "claim" under the Bankruptcy Code, which arises on the filing of the Chapter 11 petition. *See*, e.g., *In re Lorro*, 391 B.R. at 768 (preference claims arose on "the date on which Lorro filed its bankruptcy petition."); *In re Nuttall Equipment Co., Inc*.,

8

188 B.R. 732, 736 (W.D.N.Y. 1995) ("Thus, the preference claim became a 'claim' for § 101(5) purposes when Nuttall filed its Chapter 11 petition … The right to payment that § 101(5)(A) says constitutes a 'claim' exists once the transferor of the preferential payment has filed a petition under the Bankruptcy Code."); *In re Fonda Group, Inc.*, 108 B.R. 962, 966 (Bankr. N.J. 1989)("The right to assert the preference arose by under 11 U.S.C. §547 at the time the petition was filed and at that date all the events that would give rise to the preference action had occurred.") (*emphasis by court*)

22.     Thus, Metaldyne had a claim under the Bankruptcy Code – i.e., an alleged right to payment for the transfers claimed in the preference complaint – when it filed its Chapter 11 petition on May 27, 2009.

### D.    Oldco Trustee's Preference Claims are Barred and Discharged because Metaldyne Failed to File the Claims as Administrative Expense Claims by the Administrative Claim Bar Date.

23.     Because Oldco Trustee's preference claims arose before the Administrative Claim Bar Date, and because Metaldyne had actual notice of the Administrative Claim Bar Date, they were required to file the preference claims as administrative expense claims by the Administrative Claim Bar Date, or they would be forever discharged. Metaldyne failed to do so and, as result, the preference claims are forever barred and discharged by the Modification Procedures Order, and by the terms of that order, the Oldco Trustee is estopped and enjoined from asserting such claims against DAS.

24.     Instructive on this point is *In re Lorro*, *supra*. In that case, the debtor, Meridian Automotive Systems, Inc. ("Meridian"), filed a voluntary Chapter 11 bankruptcy petition on April 26, 2005. 391 B.R. at 762. During the Meridian bankruptcy, Lorro, Inc. ("Lorro") made payments to Meridian in excess of $32 million. *Id.* On April 26, 2006, Lorro filed a voluntary

9

Chapter 7 bankruptcy petition. *Id*. Subsequently, on December 6, 2006, the bankruptcy court in the Meridian bankruptcy entered an order confirming the Meridian Plan of Reorganization, which established an administrative claims bar date of February 12, 2007. *Id*. at 763. That plan provided that "any such [administrative] claim that is not served and filed within this time period shall be discharged and forever barred." *Id*. Lorro failed to file an administrative expense claim, in spite of the fact that it had notice of Meridan's bankruptcy proceeding and the administrative claims bar date. *Id*. at 764. Instead, on April 25, 2008, more than a year after the administrative claims bar date, Lorro's bankruptcy trustee filed an adversary complaint in the Lorro Chapter 7 bankruptcy case seeking recovery of more than $32 million in alleged preferential and fraudulent transfers. *Id*. Meridian moved for dismissal and/or summary judgment contending that Lorro's trustee's adversary claims were administrative expenses which were barred, discharged, and enjoined by the express terms of Meridian's chapter 11 plan. *Id*. at 764 – 765.

25.     The main issue before the Court was whether the causes of action alleged by the Lorro trustee in the adversary proceeding were administrative expenses in the Meridian bankruptcy. *Id*. at 765. If they were, then the Meridian chapter 11 plan would bar the Lorro trustee's adversary complaint because Lorro failed to file an administrative expense claim by the plan deadline. *Id*.

26.     The Court concluded that "a preference claim against a party in bankruptcy is an administrative claim in that party's bankruptcy." *Id*. at 767. In doing so, the Court engaged in a three step analysis. First, the Court analyzed whether the causes of action asserted in the adversary complaint were "claims" under the Bankruptcy Code. *Id*. After discussing the "intentionally broad" definition of "claim" under the Code, the Court concluded that Lorro's

10

trustee's preference and fraudulent transfer claims were "claims" because they "alleged rights to payment." *Id.*

27.     Second, the Court then analyzed when the claims arose, and determined – after noting that the parties agreed on this point – that the claims arose on April 26, 2006 when Lorro filed its Chapter 7 bankruptcy petition. *Id.* at 768. The Court then noted: "Lorro's bankruptcy petition was filed after Meridian's petition was filed, but prior to the filing of the plan and entry of the order confirming the plan. Thus, Lorro's claims arose post petition and pre-confirmation in the Meridian bankruptcy." *Id.*

28.     Third, the Court addressed whether Lorro's claims arose in the ordinary course of Meridian's business, and concluded that they did.

> Debtor Meridian and Lorro had a business relationship for seven years prior to Meridian's bankruptcy. That relationship continued until Lorro filed for bankruptcy on April 28, 2006. There is no question that the money received by Meridian was paid by Lorro in the ordinary course of the parties' relationship: Meridian supplied parts and Lorro paid for those parts in the course of its role as a middleman with auto companies. The possibility that a chapter 7 trustee would subsequently seek recovery of that money through an avoidance action does not alter the nature of the relationship between the parties.

*Id.* at 768.

29.     Thus, the Court held that the trustee's claims asserted in the adversary complaint were administrative expense claims in the Meridian bankruptcy.

> To hold otherwise potentially eviscerates Meridian's entire bankruptcy proceeding by permitting the Plaintiff/Trustee to bring, post-confirmation, a $ 32 million dollar cause of which existed pre-confirmation. The Plaintiff/Trustee's causes of action arose at the time Lorro's petition was filed, April 28, 2006. At the time Lorro's petition was filed, Debtor Meridian had been in bankruptcy for a year. Lorro was well aware of Debtor Meridian's bankruptcy proceeding. An order confirming Debtor Meridian's plan of reorganization was filed on December 6, 2006, thus, Lorro's Trustee had nearly seven months after the filing of the Lorro bankruptcy (but before confirmation of Meridian's plan) to raise the present

11

> claims in Debtor Meridian's bankruptcy. Had the Trustee raised the claims pre-confirmation, Debtor Meridian could have addressed the claims in its plan. The Plaintiff/Trustee had another two months, until February 12, 2007, the administrative claims bar date, to file an administrative expense claim, but did not do so. Plaintiff failed to file a claim seeking recovery of money paid to Meridian while Meridian was in bankruptcy. Plaintiff failed to file its claim before the administrative claims bar date. Plaintiff is, therefore, not entitled to payment by the reorganized debtor.

*Id*. at 768.

30.    The Court then held that the trustee's claims were discharged under the Meridian plan because the trustee failed to timely file an administrative expense claim.

> Plaintiff/Trustee's claims against defendant Reorganized Meridian fall within § 1141 of the Bankruptcy Code and section 10.2 of the plan. The Plaintiff/Trustee's claims against Meridian arose on April 28, 2006, the date Lorro, Inc. filed for bankruptcy. Thus, the claims arose prior to the December 6, 2006 confirmation of Debtor Meridian's plan and treatment of those claims is dictated by the terms of the confirmed plan. Because, at the time the plan was confirmed, Debtor Meridian was unaware of Plaintiff/Trustee's claims, the claims are not dealt with by the plan, and are, thus, not obligations of defendant Reorganized Meridian. Plaintiff/Trustee's claims were discharged by the plan and confirmation order.

*Id*. at 769.

31.    The material facts pertinent to this Motion are the same as in *Lorro*, and should warrant the same legal result – the barring and discharge of the Oldco Trustee's preference claims against DAS. *See also, In re Transue & Williams Stamping Co*., 242 B.R. 363, 366 - 367 (Bankr. N.D. Ohio 1999) (debtor's preference claims against creditor, who had previously filed Chapter 11 petition, barred where they were asserted after claim deadline set forth in creditor's reorganization plan.) As in *Lorro*, where the debtor filed for bankruptcy after Meridian had filed its Chapter 11 petition but before the Meridian plan had been confirmed, Metaldyne filed its bankruptcy petition – on May 27, 2009 - after the Reorganized Debtors had filed their Chapter 11 petitions, but before the Modification Procedures Order was entered on June 16, 2009 setting

12

the Administrative Claim Bar Date for July 15, 2009 and confirmation of the Modified Plan on July 30, 2009. Likewise, as in *Lorro*, Metaldyne had actual notice of the Administrative Claim Bar Date, and cannot credibly assert otherwise. Further, just as in *Lorro*, the Oldco Trustee's preference claims arose on May 27, 2007, Metaldyne's petition date, and they therefore constituted "claims" under the Bankruptcy Code in the Reorganized Debtors' chapter 11 cases.

32. Moreover, just as Lorro's claims arose in the ordinary course of Meridian's business, the Oldco Trustee's preference claims also arose in the ordinary course of Reorganized Debtors' businesses as Reorganized Debtors were both buyers and sellers of component parts with Metaldyne. *See Ex C at* ¶ 28 ("… [DAS] provided components … to the Debtors, which the Debtors used in connection with their assembly and fabrication of highly engineered metal components for the global light vehicle market.") Consequently, just as Lorro's claims, the Oldco Trustee's preference claims are administrative expense claims under the Plan Modification Order and the Bankruptcy Code.

33. Like Lorro, Metaldyne failed to file an administrative expense claim by the Administrative Claim Bar Date. As a consequence, the Oldco Trustee's preference claims are barred and discharged by express terms of the Modification Procedures Order and the Plan Modification Order and the Oldco Trustee is permanently enjoined from asserting them. Accordingly, the Reorganized Debtors' Motion should be granted, and an Order should be entered directing the Oldco Trustee to dismiss the Preference Action.

## RELIEF REQUESTED

WHEREFORE the Reorganized Debtors request that this Court enter an order permanently enjoining the Oldco Trustee from pursuing claims against DAS that have been forever discharged, and directing the Oldco Trustee to dismiss the Preference Action, and granting Reorganized Debtors such other and further relief to which they may be entitled.

Dated:   Bloomfield Hills, MI
           August 31, 2011

                                        BUTZEL LONG, a professional corporation


                                        By:   /s/   Thomas B. Radom
                                              Cynthia J. Haffey
                                              Sheldon H. Klein
                                              Thomas B. Radom
                                              Thomas D. Noonan
                                        Stoneridge West
                                        41000 Woodward Avenue
                                        Bloomfield Hills, MI  48304
                                        (248) 258-1616

                                        *Attorneys for Reorganized Debtors*