Hearing Date And Time: September 22, 2011 at 10:00 a.m. (prevailing Eastern Time)
Response Date And Time: September 15, 2011 at 4:00 p.m. (prevailing Eastern Time)

James B. Sumpter, Pro se
21169 Westbay Circle
Noblesville, IN 46062
Telephone: (317) 877-0736
Facsimile: (317) 877-1070
jsump@ieee.org

Salaried Retiree of Debtors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------.x Chapter 11 Case No. 05-44481 (RDD)

In re:

DELPHI CORPORATION, et. al.,

                                     : (Jointly Administered) :

   Debtors.                             : :
                                          : :

---------------------------------x

# AMENDED MOTION FOR RECOUPMENT ON BEHALF OF
# DELPHI SALARIED RETIREES [Ref Docket # 21534]

1.    This motion is a request for an order under the **Equitable Doctrine of**

**Recoupment**, which seeks the recoupment of certain payments made by, or required to be made

by Delphi Salaried Retirees (DSRs) to Delphi Automotive as specified in the companies

Summary Plan Document (SPD). These payments include Social Security reimbursements,

Health Care reimbursements due to Third Party payments and Workers' Compensation Offsets.

1

2.      **WHEREAS**, the Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b) (2) (B), (O) and (I).

3.      **In regards to 28 U.S.C. § 1334:**

This is a matter arising in the case under the bankruptcy code in that the proceeding, which seeks to "determine the proper liability" on the amounts owed" (See paragraph 14.), which is the result of the debtor's OPEB benefits obligation being discharged, which could only arise in the context of the debtor's bankruptcy case.

4.      **In regards to 28 U.S.C. § 157(b)(2):**

- (B) This recoupment motion would exempt property from the estate.
- (O) The recoupment results in the adjustment of the debtor-creditor relationship.
- This motion affects the dischargeability of a debt in that this recoupment motion seeks to determine the proper liability as it relates to the discharge of Salaried Retiree OPEB benefits (See paragraph 14).

5.      To the extent that there are any issues that are determined to be non-core, the Movant consents to having this court enter final judgment.

6.      For the reasons set forth herein, the relief requested is warranted and necessary. In support of this Recoupment Motion, the Movant respectfully represents as follows:

## Background

7. Recoupment of each of the three types of payments listed above is important to the Salaried Retirees. However, the Social Security reimbursements are required of more retirees and more adversely and disproportionately affect Disabled Delphi Salaried Retirees (DDSRs). In addition, Heath Care and Workers' Compensation reimbursement affect a smaller number of retirees. As a result, this motion will emphasize the Social Security reimbursements and the DDSRs. Nevertheless, the legal standards that govern recoupment in bankruptcy, as they pertain to the DSRs, apply equally to each type of reimbursement listed in paragraph 1.

8. On 8-OCT-2005 Delphi et al. filed a petition for chapter 11 bankruptcy. On 25-APR-2009, Delphi while under supervision of the bankruptcy court, terminated what Delphi termed other post-employment benefit obligations (OPEB) for Salaried Retirees, which included all Salaried Retiree Health Care benefits, company paid Basic Life Insurance, the Medicare Part B special benefit for DDSRs (under age 65), and all Retiree Health Reimbursement Accounts.

9. In its 4-FEB-2009 filing, Delphi valued its Health Care and Life Insurance liability at 1.1 billion dollars. The lost of these long anticipated OPEB benefits resulted in significant hardship for Salaried Retirees. For several months, most retirees were forced, by circumstances; to purchase a Delphi sponsored self pay bridge program that was priced 138 % higher than Delphi's cost. Since then, many retirees have chosen to participate in a Salaried Retiree sponsored VEBA health plan. Although most VEBA participants are eligible for a government subsidy, which has varied between 65% and 80% of their cost, retiree Health Care expenses still exceeds the cost of retiree Health Care prior to April 1, 2009. Also, no DDSR receiving Social Security can receive the VEBA subsidy. In addition, retirees who are Medicare eligible are faced with paying a higher premium, absent the Delphi "Special subsidy".

10. Because of the loss of OPEB benefits, a near simultaneous transfer of the retirees' pension to the PBGC and the increased health insurance cost, many retirees have been forced to re-enter the job market. However, the DDSR sub-class of the class DSRs has faced a significantly larger and more adverse financial impact than other retirees. The Disabled Retirees' health limitations and the terms of the disability benefit plan precludes DDSRs from earning additional wage income, which prevents them from offsetting the increased Health Care cost and the loss of other benefits. Disabled Retirees remain on a fixed income (60% of their base pay), which was set the day each retired. The impact is significant, since Health Care cost have risen **41.3 %** over the past decade and outpaces inflation by almost two-to-one.

11. Disabled retirees, who are Medicare eligible (who are under age 65); also face Medicare supplement premiums that are typically 230% higher than non disabled Medicare beneficiaries. These same retirees are also required to reimburse Delphi for disability payments equal the benefit they receive from Social Security.

12. Thus, as a means to mitigate the adverse effect of the lost of OPEB benefits and in an effort to establish the correct value of the discharged OPEB benefit, the Movant seeks to recoup, for the disabled retiree, their prior and ongoing Social Security reimbursements against the 1.1 billion dollar OPEB liability which was discharged by Delphi.

13. For the same reasons, the Movant also seeks recoupment of Health Care Third Party and Workers' Compensation reimbursements.

## The Doctrine of Recoupment

14. Recoupment is an equitable doctrine, used to determine amounts owed on a given transaction. It is the ancestor of the compulsory counterclaim set forth in Federal Rule of Civil

Procedure 13(a). *(Coplay Cement Co. v. Willis & Paul Group*, 983 F.2d *1435 (7th Cir. 199*3). Thus, recoupment, a creditor's right long recognized in bankruptcy proceedings, is merely the means used to determine the proper liability on the amounts owed *(Ref-3, Sec III-A).* Therefore, particularly in regards to Delphi Salaried Retirees (DSRs), **"Where mutual debts arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations, the creditor's apparent offset is really recoupment"** ( Warsco v. Household Bank, 272 B.R. 246 (Bankr. N.D. Ind. 2002), aff'd 334 F.2d 638(7th Cir. 2003)).

15. Thus, recoupment avoids the absurdity of having the creditor, DSR; continue to pay the debtor, Delphi, while the debtor has discharged most if not all of its related or reciprocal liabilities.

## Recoupment Requires the Same Transaction

16. A key principal of recoupment is that the mutual debts must arise out of the same transaction or occurrence. *(See Ref- 1, page 3; and Ref-3, sec III-A-1)*.  A review of case law reveals that there are four operating standards among the various Court Circuits as it relates to defining a single transaction:

   a. **Logical relationship**

   *i.    In the Ninth Circuit (AK, AZ, CA, HI, ID, MT, NV, OR, WA, and Pacific territories), whether two claims arise out of the same transaction depends upon their* "logical relationship." *In re TLC Hospitals, Inc., 224 F.3d 1008 (9th Cir. 2000) (holding that Medicare overpayments and underpayments from different years arise out of the same transaction, the Medicare Provider Agreement,*

5

*because the Agreement contemplated year-to-year adjustments and an "exchange of funds . . . over an extended period of time"). (See Ref- 1, page 3)*

**ii.** *The parameters of recoupment are derived from the common law pleading rules concerning counterclaims… In that context it has been said that "transaction" is a word of flexible meaning, including a series of occurrences, depending not so much on the immediateness of their connection as upon their <u>logical relationship</u>. Moore v. New York Cotton Exch., 270 U.S. 593, 610 (1926); In re Pinkstaff, 974 F.2d 113 (9th Cir. 1992); Montgomery Ward Dev. Corp. v. Juster, 932 F.2d 1378 (11th Cir. 1991); Tullos v. Parks, 915 F.2d 1192 (8th Cir. 1990); Savarese v. Agriss, 883 F.2d 1194, 1208 (3d Cir. 1989); United States v. Pullman Constr. Indus., Inc., 153 B.R. 539, 541-42 (N.D. Ill. 1993). (**Ref-3, section III-A-1**)*

**iii.** *Whether the <u>logical relationship</u> standard applies in bankruptcy proceedings is controversial. At least one court has permitted the use of that standard. Newbery Corp. v. Fireman's Fund Ins. Co., 95 F.3d 1392 (9th Cir. 1996). (**See Ref 2, section III-A-1**)*

**iv.** In the context of the Delphi Bankruptcy and the DSRs, the SPD linked the various disability payments, Life Insurance, Health Care benefits and Workers' Compensation to form the major part of the set of benefits that DSRs would receive. The SPD also linked Social Security reimbursements and Medical coverage to the Disability Benefit *(See **Ref-5 SPD excerpt**, all pages; and **Transaction Relationship Table**, page 8).* The SPD also linked the Workers' Compensation Offset to retirement benefits in general *(See **Ref-5, SPD excerpt, page 93,**).* The discharge of Delphi's OPBE liabilities affected the set of connected disability and retirement benefits and resulted in an overpayment by

6

DSRs.  Thus, the mutual claims are logically connected and the justification for recoupment under this test is met.

b. **A single Integrated transaction**

i. This concept, as it applies to recoupment in bankruptcy, is not broadly accepted.  Although*, "Other courts, such as the Third Circuit (DE, NJ, PA, and USVI), require the claims to arise out of a "single integrated transaction." University Med. Ctr. v. Sullivan (In re University Med. Ctr.), 973 F.2d 1065 (3d Cir. 1992). "In these jurisdictions, a single contract may give rise to multiple transactions for purposes of recoupment."*  (Ref-1, page 4)

ii. However, in *973 F.2d 1065 (3d Cir. 1992)* The Honorable Judge Roth went on to write "*…both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations*".  This Concept can easily be applied when evaluating the nature of the transaction between Delphi and the DSRs as specified in the SPD.  The highlighted excerpted pages of the SPD, found in REF-5, clearly establishes, for retirees, that the relationship among Disability Benefits, Health Care, Life Insurance, Social Security reimbursements, Third Party Health Care reimbursements and Workers' Compensation offsets are so intertwined as to operate inseparably *(See SPD **Transaction Relationship Table** below, and **Ref -5: SPD** excerpts*).  Thus, as a "single integrated transaction" it would be inequitable for Delphi to enjoy the benefits of the SPD without also meeting its obligations to the DSRs.

7

# SPD Transaction Relationship Table (See REF – 5)

| | |
|---|---|
| Page 66 | Part of the section; *"Administrative Provisions"*:<br>**Linking**- Retirement, Medicare special benefit, Disability Benefits, Health Care expenses and Third Party Liability |
| Page 76 | Part of the section; *"While You Are Disabled"*:<br>**Linking** - Disability, Social Security and Workers' Compensation reimbursements |
| Page 78 | Part of the section; *"Extended Disability Benefits and Supplemental Extended Disability Benefits"*:<br>**Linking** - Disability, Social Security and Workers' Compensation reimbursements and Health Care |
| Page 81 | Part of the section; "*Other Benefit Program Coverages While on Disability Leave"*:<br>**Linking** – Disability, Health Care and Basic Life Insurance |
| Page 84 | Part of the section; "*When You Retire"*:<br>**Linking**- Retirement and Disability |
| Page 87 | Part of the section; "*When You Retire"*:<br>**Linking** – Retirement, Social Security and Health Care |
| Page 89 | Part of the section; "*When You Retire"*:<br>**Linking** – Retirement, Disability, Social Security Disability, Health Care and Social Security reimbursement |
| Page 92 | Part of the section; "*When You Retire"*:<br>**Linking** – Retirement, Social Security Disability and Social Security reimbursement |
| Page 93 | Part of the section; "*When You Retire"*:<br>Linking – Retirement and Workers' Compensation reimbursement |
| Page 97 | Part of the section; **"***Other Benefit Program Coverages After Retirement"*:<br>**Linking** – Retirement, Disability, Health Care and Basic Life Insurance |
| Page 98 | Part of the section; **"***Other Benefit Program Coverages After Retirement"*:<br>**Linking** – Retirement and Basic Life Insurance |
| Page 100 | Part of the section; "*Life and Disability Program"*:<br>**Linking** – Basic Life Insurance and Disability, |
| Page 101 | Part of the section; "*Life and Disability Program"*:<br>**Linking** – Basic Life Insurance and Retirement, |
| Page 115 | Part of the section; "*Life and Disability Program"*:<br>**Linking** – Retirement, Life Insurance, Health Care and Disability payment reimbursements |

    **iii.** Although the ruling of the Third Circuit (as stated in paragraph **16-b (i)** above), appears to be at odds with the generally held definition of a "single transaction" as it pertains to recoupment, it presents no hurdle when applied to recoupment by the DSRs.

  **c.** **Mutual debts arise from the same contract**

    **i.** *"Where the relationship between the creditor and the debtor is contractual, and the mutual debts arise from the same contract, withholding from ongoing payments to offset earlier overpayments has generally been allowed as recoupment. Because recoupment is an equitable defense, most courts recognize that application of the defense of recoupment in a contractual context is especially appropriate. Where the parties' mutual debts arise out of the contract recoupment is allowed because "there is but one recovery due on a contract, and that recovery must be determined by taking into account the mutual benefits and obligations of the contract"( See Ref-3, section III-A-1-(a), page 2)*

    **ii.** In this case, the SPD specified the relationship between Delphi and the DSRs. Therefore it was as a contract which provided Disability, Life Insurance and Health Care Benefits for Salaried Retirees. The SPD specifies the benefits the Salaried Retiree is to receive and the related obligations. This includes the requirements for Disability Benefits and the conditions under which Social Security benefits, Health Care and Workers Compensation benefits must be reimbursed to Delphi.

  **iii.** Thus, the requirement that there be a single contract (which appears to be the most broadly applied standard among the Circuits) is easily met and, as a result, recoupment by **DSRs** is justified.

 **d. Some type of over payment**

  ***i.*** *Other courts have required "'some type of overpayment,' whether accidentally or contractually made" to permit recoupment. In re Photo Mech. Servs., Inc., 179 B.R. 604, 613 (Bankr. D. Minn. 1995); In re Midway Airlines, Inc., 175 B.R. 239, 246 (Bankr. N.D. Ill. 1994). ( See Ref-3, section III-A-1, page 2)*

  **ii.** There are also rulings that reject the requirement regarding overpayment, e.g. *with Newbery Corp. v. Fireman's Fund Ins. Co., 95 F.3d 1392 (9th Cir. 1996) (rejecting "the argument that recoupment is only available in cases involving overpayments") and Matter of U.S. Abatement Corp., 79 F.3d 393 (5th Cir. 1996) (The court rejects the district court's ruling that recoupment is only permissible to recover some prior overpayment, noting that "[t]he [district] court cited no authority that substantiates this 'overpayment requirement' and we have found none.") ( See Ref 2, section III-A-1, page 24)*

  **iii.** Even though this test is controversial, it is easily met since discharge of Delphi's OPEB liabilities created an overpayment by DSRs which continues to accrue as long as Social Security and other reimbursements are made by retirees or deducted by Delphi. As a result, according to this test, recoupment is allowed.

17. Thus, based on widely held views in the various Circuits, the circumstances resulting in the mutual debt between Delphi and the Salaried Retirees meets the requirement of a single transaction.

## The Effect of Time Limits

18.     Another key issue regarding recoupment is that of time limits.  Therefore, it should be noted that *"The time limits of setoff do not apply; prepetition claims can be withheld from postpetition debts"* *(See REF-3: Section III Paragraph C; and REF-2, paragraph E, page 28.)*  Therefore, it logically follows that postpetition claims can also be withheld from postpetition debts.

19.     *"Recoupment is not barred by a statute of limitations as long as the main action itself is timely"*. (See REF-3: Section III Paragraph F. In particular*: In re Mid Atl. Fund, Inc.*, 60 B.R. 604, 609-10 (Bankr. S.D.N.Y. 1986) *"Statutory limitation periods generally have no application to offsetting counterclaims and other matters of defense"*.

20.     In addition**,** *"the defensive right of recoupment under the contract remains so long as any right under the same contract is urged against him offensively"; (Amoco Production Co. v. fry, 904 F. Supp. 3, 16-17 and n. 21 (D.D.C. 1995))*

## Recoupment and Discharge

21.     It should also be noted that *"Recoupment is unaffected by a discharge in bankruptcy"* (See REF-3: Section III Paragraph E; and REF-2, paragraph D, page 28.)

## Timing

22.     Prior to the petition date, 5-OCT-2005, the (SPD) was as a functioning contract between Delphi Automotive and the DSRs. After the petition date, the contractual arrangement in the SPD operated under ongoing jeopardy.

11

23. On 1-JAN-2007, the Debtor eliminated the long term provisions of the health plan for non disabled retirees, replacing it with a limited value Medical Saving account.

24. On 1-APR-2009, the Debtor eliminated all company paid Life Insurance and some medical benefits. However, because of regulatory timing issues, some medical benefits were not eliminated until 1-JUN-2009.

25. This motion comes, now, more than two years after Delphi was permitted to discharge most of its OPEB obligations. However, this was not due to indifference or carelessness. Because of various preceding rulings in this case, salaried retirees have operated with limited legal funding. As a result, the kind of legal resource that would have been available to a fully empowered 1114 committee was not accessible. Retirees, left with three desperate choices were forced to pursue recovery of lost pension benefits, over seeking disputed lifetime COBRA benefits or potential recoupments.

26. Thus, the Movant, who is a **DDSR** with significant health limitations and limited finances, has pursued COBRA and now recoupment. Because of the high cost of legal representation and the significant and complex challenges of Delphi's bankruptcy case, the Movant has been unable to secure legal representation. As a result, these issues have been pursued on a pro se basis.

27. Because the Movant, who is an Electrical Engineer, has no legal training, the legal learning curve has been steep. This, coupled with the Movant's significant health limitations has resulted in relatively long and/or delayed response times. However, as noted in paragraphs 18, 19 and 20, this Recoupment Motion is not subject to any statute of limitations. Nor, is it affected by bankruptcy discharge, as noted in paragraph 21.

## Postpetition Recoupment

28.     The occurrence and timing of all of the events in paragraph 22, 23 and 24 were at the convenience of the Debtor and governed by the petition date of 5-OCT-2005.  Consequently the Debtors discharge of its OPEB obligation to Salaried Retirees has created an overpayment by the DSRs and the sub-class of DDSRs.  Since the Debtors actions to discharge it's liability for OPEB benefits occurred postpetition, it is logical that the DSRs and DDSRs should be able to recoup all the identified reimbursement payments including the Social Security obligations that have developed or will develop postpetition.

## Prepetition Recoupment

29.     It should also be noted that **"*prepetition claims can be withheld from postpetition debts* "**(*See REF-3: Section III Paragraph D and In re TLC Hospitals, Inc., 224 F.3d at 1011.*)  Therefore, in addition to recoupment of reimbursements after 8-OCT-2005, the Movant request for recoupment is allowed for all reimbursement payments and obligations that occurred or developed prior to the petition date (8-OCT-2005) but after Delphi's spin-off date from General Motors, which was 31-MAY-1999.

## Relevant Recoupment Case History

30.     The Movant has referenced numerous relevant case histories through the citing of individual cases and the application of case references found in REF-1 through REF-3.  In addition, the case of DEER and Company vs. Rebel Saffold (REF-4) has many relevant parallels to the issues raised this motion.

13

31.     The essential character of the **DEER vs. Saffold** case is that Rebel Saffold was a bankrupt retiree of DEER Company, who through the receipt of Social Security disability payments had amassed a significant overpayment, which DEER pursued through recoupment. In addition, the court determined that the DEER benefit plan that governed the retirement benefits of Saffold was an executory contract, which amounted to a single transaction for the purposes of recoupment.

32.     The contractual relationship between DEER and Saffold is analogous to the relationship between Delphi and the Salaried Retirees, except ironically, the company, Delphi is the bankrupt party and it is the retirees who seek recoupment of Social Security payments.

33.     Another difference, although not critical, is that in **DEER vs. Saffold**, the recoupable overpayments were the result of Saffold receiving Social Security Disability payments. In this motion the overpayments was created because Delphi discharged its OPEB liabilities through bankruptcy.

34.     There are four definitive and important parts of the ruling in **DEER vs. Saffold** by The Honorable Michael Mellroy, Chief Bankruptcy Judge, that guide this motion:

   i. The first is that the benefit plan is a contract that serves as one transaction for the purposes of recoupment.
   ii. The recoupment of the overpayment by the creditor is valid.
   iii. Recoupment of the overpayments, which occurred both prepetition and post-petition, is allowed and
   iv. The important observation that *"the debtor should not be free to "pick and choose the contract provision that they want to abide by" by using bankruptcy to get rid of the burdens, while continuing to demand the benefits."*

14

35.     Therefore Delphi cannot discharge its OPEB liabilities and avoid the recoupment of Social Security and other reimbursements that the DSRs seek.

## Relief Requested

36.     Consequently, based on the **Equitable Doctrine of Recoupment**, the Movant requests that the court approve a recoupment of the designated benefit reimbursement payments (past, present and future) made to Delphi against the OPEB benefits liabilities discharged by Delphi.

    **i.**  For Disabled Retirees who reimbursed Social Security Disability Benefits to Delphi between the dates of 31-May-1999 and 8-OCT-2005, this recoupment shall result in a full refund, from Delphi.

    **ii.** For Disabled Retirees who reimbursed Social Security Disability Benefits to Delphi between the dates of 8-OCT-2005 and 1-APR-2009, this recoupment shall result in a full refund, from Delphi.

    **iii.** For Disabled Retirees who received Social Security Disability Benefits anytime between 1-APR-2009 and now, a recoupment and full refund shall be made for any amount owed or reimbursed to Delphi.

    **iv.** In addition, this recoupment shall eliminate any requirement for Disabled Retirees to reimburse Delphi for any currently unreimbursed or future Social Security Disability Benefit. Any requirement for future reimbursements shall be eliminated, since the offsetting liabilities are logically linked and are derived from the same transaction, which was established in paragraphs 14, 15 and 16.

    **v.** For Salaried Retirees who directly or indirectly reimbursed Workers' Compensation payments anytime after 31-MAY-1999, this recoupment shall result in a full refund from Delphi.

    **vi.** For Salaried Retirees who directly or indirectly reimbursed Third Party Health Care payments anytime after 31-MAY-1999, this recoupment shall result in a full refund, from Delphi.

37. The Movant does not have access to a complete census of Disabled Salaried Retirees. However, it is believed that on 1-APR-2009, there were **230** Disabled Salaried Retirees (under age 65). Thus, to estimate the upper and lower limits of this recoupment, the Movant assumes the following:

- For each interval there were 230 disable retirees
- The high average reimbursement is the 2011 Social Security maximum of $2,366.
- The low average reimbursement is the 2011 Social Security average of $1,117.

    **A.** For the period Between 31-MAY-1999 and 5-OCT-2005 ( 6.33 years)

- The estimated Social Security recoupment upper limit equals $41,336,000.
- The estimated Social Security recoupment lower limit equals $19,515,000.

    **B.** For the period Between 5-OCT-2005and 1-APR-2009 ( 3.5 years)

- The estimated Social Security recoupment upper limit equals $22,856,000.
- The estimated Social Security recoupment lower limit equals $10,790,000.

    **C.** For the period Between 1-APR-2009 and 22-SEP-2011( 2.42 years)

- The estimated Social Security recoupment upper limit equals $15,803,000.
- The estimated Social Security recoupment lower limit equals   $7,461,000.

    **D.** After 22-SEP-2011 (Duration 10 years)

- The estimated Social Security recoupment upper limit equals $65,302,000.
- The estimated Social Security recoupment lower limit equals $30,829,000.

38.     Thus, the estimated upper limit of the Social Security reimbursement recoupment total equals $145,327,000.   While, the estimated lower limit of the Social Security reimbursement recoupment total equals $68,595,000.

39.     The Movant does not have a reference for estimating the possible range of the recoupment from Third Party Health Care reimbursements and Workers' Compensation offsets. Although, the number of retirees affected is expected to be relatively small.

40.     While allowing for unknowns, it is clear that the recoupment sums, even the upper limit total, is substantially less than Delphi's 1.1 billion dollar discharged OPEB liability and can be easily recouped.

## Benefit of Relief

Permitting this recoupment establishes Delphi's just and proper liability.  It also promotes the fairness anticipated in the bankruptcy code, while mitigating the significant hardship to Disabled Retirees, which resulted from the discharge of Delphi's OPEB liabilities. While, absent this recoupment, DSRs (in particular DDSRs) are in the worst of both worlds: they must pay their debts to the debtor in full, but are only entitled to a tiny fraction of the money the debtor owes them (See "*In re DeLaurentiis Entertainment Group, Inc.*, *963 F.2d 1269, 1277 (9th Cir. 1992)*".

17

## No Prior Request

41.    This motion is the corrected version of Movant's recoupment motion [Docket # 21534].  Other than that, no prior motion for the relief sought herein has been made by the Movant to this or any other court.

42.    WHEREFORE, the Movant respectfully request that this Court enter an order granting the relief requested herein, and such other and further relief as may be just, necessary and appropriate.

Dated: Noblesville, Indiana
September 7, 2011

By: *[signature]*
James B. Sumpter
/s/ James B. Sumpter

James B. Sumpter, Pro se
21169 Westbay circle
Noblesville, IN 46062
Telephone: (317) 877-0736
Facsimile: (317) 877-1070
jsump@ieee.org

Salaried Retiree of Debtors

18