# EXHIBIT 20

# EXHIBIT 20

**Calsonic Corp., Calsonic North America, Inc., Adv. Proc. No.: 07-02282--rdd**

Calsonic North America, Inc. and Calsonic Corp. ("Calsonic") received electronic notice of the Final Extension Motion (Docket No. 18952). As confirmed by the Affidavit of Service for the Final Extension Motion, that motion was electronically served by Kurtzman Carson Consultants LLC ("KCC") on October 2, 2009 on Roger Jones and Austin McMullen of Boult, Cummings, Conners & Berry, PLC, counsel to Calsonic. *Ex. 4, October 7, 2009 Affidavit of Service—Ex. B, 2002 List, p. 3 of 22 (Docket No. 18967).*[1] Additionally, Messrs. Jones and McMullen received an automatic ECF notice of the Final Extension Motion when that motion was filed on the docket. *Ex. 10, October 2, 2009 ECF Notice of Electronic Filing, pp. 17 and 22 (Docket No. 18952).* Messrs. Jones and McMullen were also electronically served with the Proposed Forty-Eighth Omnibus Hearing Agenda (Docket No. 18991), which specifically identified the Debtors' Final Extension Motion as Agenda item C(1). *Ex. 6, October 26, 2009 Affidavit of Service, Ex. B, 2002 List, p, 3 of 22 (Docket No. 19015); Ex. 5, October 21, 2009 Proposed Forty-Eighth Omnibus Hearing Agenda (Docket No. 18991).*

In his declaration filed in this matter, Mr. Jones does not state that he did not receive service of the Final Extension Motion. Rather, he merely declares that he and his colleague,

---

[1]While Calsonic was listed on the Service List as "Calsonic Kansei North America, Inc.", this is in fact the same entity as Calsonic North America, Inc. According to the company's website, http://www.calsonic.com/, "CalsonicKansei Corporation merged [with] Calsonic North America, Inc. and Kantus Corporation in 2001, forming CalsonicKansei North America, Inc." *Exhibit 20(a).* Accordingly, for purposes of this Exhibit 20, Calsonic and Calsonic Kansei North America, Inc. are referred to interchangeably.

Mr. McMullen, chose not to "*review*" the ECF filings that they received.[2]  *See Ex. 20(b), Declaration of Roger G. Jones ¶¶ 7 and 19* (emphasis added).  Mr. McMullen did not file a declaration.  Notably, no one employed by Calsonic filed a declaration in this matter.  Calsonic has not provided a sworn statement declaring that it did not receive notice of the Final Extension Motion.

Next, Calsonic received relevant information advising that avoidance claims had been filed under seal and the time to serve the complaints and summonses had been extended.  The Affidavit of Service for the Preservation of Estate Claims Procedures Motion confirms that Messrs. Jones and McMullen received electronic service of that motion (which motion was filed as Docket No. 8905) as counsel for Calsonic.  *Ex. 11, August 10, 2007 Affidavit of Service—Ex. B, 2002 List, p. 3 of 20 (Docket No. 9039)*.  Messrs. Jones and McMullen also received electronic service of the August 16, 2007 Preservation of Estate Claims Procedures Order (Docket No. 9105), which, among other things, (i) authorized the Debtors to file complaints in the adversary proceedings pertaining to avoidance actions under seal, (ii) stayed each adversary proceeding unless and until the Debtors made service of process on the respective defendants, and (iii) extended to March 31, 2008 the deadline under Federal Rule of Civil Procedure 4(m) by which the Debtors would have to serve process, so that the complaints would not be subject to dismissal under Federal Rule of Civil Procedure 4(m).  *See Ex. 12, August 23, 2007 Affidavit of Service– Ex. B, 2002 List, p. 3 of 20 (Docket No. 9141)*.  Similarly, Messrs. Jones and McMullen were also electronically served with the subsequently filed (i) First Extension Motion (Docket No.

---

[2] Mr. Jones' assertion is premised on the notion that Calsonic was required to be served by overnight mail under paragraph 15 of the Supplemental Case Management Order (Docket No. 2883).  *Ex. 20(b), July 11, 2011 Declaration of Roger G. Jones, ¶ 6*.  For the reasons set forth in detail in the Omnibus Response and the Skadden Filings, that premise is erroneous.

2

12922), *Ex. 13, March 4, 2008 Affidavit of Service—Ex. B, 2002 List, p. 3 of 21 (Docket No. 12970)*; (ii) First Extension Order (Docket No. 13277), *Ex. 14, April 1, 2008 Affidavit of Service—Ex. A, 2002 List, p. 3 of 21 (Docket No. 13315)*; (iii) Second Extension Motion (Docket No. 13361), *Ex. 15, April 16, 2008 Affidavit of Service—Ex. B, 2002 List, p. 3 of 21 (Docket No. 13415);* and (iv) Second Extension Order (Docket No. 13484), *Ex. 16, May 6, 2008 Affidavit of Service—Ex. A, 2002 List, p. 3 of 20 (Docket No. 13540).*

      Calsonic was also served through Mr. McMullen with the First Amended Plan Disclosure Statement via postage pre-paid U.S. Mail. *See Ex. 7, January 11, 2008 Affidavit of Service–Ex. W; see also id. at Ex. HH (Docket No. 11974).* In addition to the fact that the First Amended Plan Disclosure Statement and the Extension Motions and Extension Orders were served on Calsonic, Calsonic was placed on notice of the preference actions in several other respects. On December 13, 2007, the Debtors filed a copy of the First Amended Plan Disclosure Statement publicly with their Form 8-K (Docket No. 11388). The First Amended Plan Disclosure Statement outlined in detail that preference claims were to be filed under seal, with service deferred until after the limitations period. As this Court discussed during the July 22, 2010 hearing, the Disclosure Statement, combined with the defendants' knowledge that they had in fact received preferential transfers, put the defendants on notice of the preference claim procedures at issue and on inquiry notice as to the need to monitor preference claim developments. *Ex. 8, July 22, 2010 Transcript, pp. 150-153. See also In re TWA Inc. Post Confirmation Estate*, 305 B.R. 221, 227 (D. Del. 2004) ("[I]n large chapter 11 cases sophisticated creditors typically are well aware of prospects and risks of preference litigation. … Thus, it seems unlikely that creditors could be surprised or caught off guard when such preference complaints are finally filed.").

# EXHIBIT A





**GLOBAL LEADER IN INTEGRATED AUTOMOTIVE SYSTEMS**

Driving comfort through technology

CalsonicKansei Corporation merged Calsonic North America, Inc. and Kantus Corporation in 2001, forming CalsonicKansei North America, Inc.

The path to Genic is https://sp.calsonickansei.biz/genic/SSRM/
Please copy into your address bar and save in favorites.

## CKNA E-Mail Portal

**Important Contractor Safety Information:**

CKNA Construction Contractor Safety-Enviromental Policy

CKNA Contractor Pamphlet

# EXHIBIT B

BRADLEY ARANT BOULT CUMMINGS, LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
(615) 252-2323
Fax: (615) 252-6323
Roger G. Jones (admitted Pro Hac Vice)
RJones@babc.com
Austin L. McMullen (admitted Pro Hac Vice)
AMcMullen@babc.com

Attorneys for the Defendants

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT of NEW YORK

----------------------------------------------------------------

| | |
|---|---|
| In re: | Chapter 11 |
| DELPHI CORPORATION, et al. | Case No. 05-44481 (RDD)<br>(Jointly Administered) |
| ---------------------------------------------------------- x | |
| DELPHI CORPORATION | |
| Plaintiffs, | |
| -v- | Adv. Pro. No. 07-02282 (RDD) |
| CALSONIC CORP., CALSONIC N. AMERICA INC. and CALSONIC NORTH AMERICA INC., | |
| Defendants. | |
| ---------------------------------------------------------- x | |

**DECLARATION OF ROGER G. JONES IN SUPPORT OF DEFENDANTS' MOTION
TO VACATE PRIOR ORDERS ESTABLISHING PROCEDURES FOR CERTAIN
ADVERSARY PROCEEDINGS AND DEFENDANTS' OBJECTION TO MOTION FOR
LEAVE TO FILE AMENDED COMPLAINTS**

I, Roger G. Jones, an adult individual, hereby declare and state as follows:

1.      I am a member of the firm of Bradley Arant Boult Cummings, LLP ("BABC"), 1600 Division St., Suite 700, Nashville, TN 37203. Austin L. McMullen is also a member of BABC.

2.      On October 8 and October 14, 2005, Delphi and certain of its subsidiaries (collectively, "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code. Mr. McMullen and I were admitted *pro hac vice* to represent Calsonic Kansei North America, Inc. ("Calsonic"). See Docket Nos. 215 and 985. Mr. McMullen and I also filed a Notice of Appearance for Calsonic. See Docket No. 397.

3.      By letter dated November 17, 2005, Calsonic sought authority to setoff prepetition claims between Delphi Automotive Systems, LLC ("DAS") and Calsonic. Calsonic also filed Proof of Claim No. 11162 evidencing its prepetition claim against DAS.

4.      In May, 2007, Calsonic and DAS entered into that Joint Settlement Agreement, Stipulation, and Agreed Order Between Delphi Automotive Systems, LLC, Calsonic Kansei North America To Disallow and Expunge Claim Number 11162 (the "Joint Settlement Agreement"). See Docket No. 8016. On July 24, 2007, this Court approved the Joint Settlement Agreement. See Docket No. 8722.

5.      Pursuant to the Joint Settlement Agreement, Calsonic and DAS agreed to offset their prepetition claims and to expunge Calsonic's Proof of Claim No. 11162. See Docket No. 8016. Calsonic's prepetition claim against DAS was satisfied as the result of the setoff, and Calsonic no longer held any prepetition claim against DAS or any of the other Debtors.

6.      On March 20, 2006, this Court entered that Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management and Administrative Procedures entered on

7/2657499.1
110652-001

-2-

March 20, 2006 [Docket No. 2883] (the "Case Management Order"). The Case Management Order required that all Filings (as defined therein) be served *"via overnight mail upon all parties with a particularized interest in the subject of the Filing."* 2883, at ¶ 15 (*emphasis added*).

7.  Prior to July 24, 2007, Mr. McMullen and/or I reviewed each ECF Notice we received via e-mail. However, once the Joint Settlement Agreement was approved and Calsonic no longer had a claim against Debtors, we ceased reviewing ECF Notices. After July 24, 2007, and in reliance on the Case Management Order, we only reviewed notices that we received via overnight mail. Reviewing each ECF Notice would have caused Calsonic to incur enormous legal expenses even though its prepetition claim had been satisfied. More importantly, to the extent that any Filing directly affected Calsonic, the Case Management Order required that Debtors provide Calsonic notice via overnight mail. There was simply no reason for Mr. McMullen or I to review ECF Notices.

8.  On August 6, 2007, Debtors filed their Expedited Motion For Order Under 11 U.S.C. Sections 102(1)(A), 105(a), 107, 108(a)(2), and 546(a) and Fed. R. Bankr. P. 7004, 9006(c), and 9018 (I) Authorizing Debtors To Enter Into Stipulations Tolling Statute of Limitations With Respect To Certain Claims, (II) Authorizing Procedures To Identify Causes of Action That Should Be Preserved, and (III) Establishing Procedures For Certain Adversary Proceedings Including Those Commenced By Debtors Under 11 U.S.C. Sections 541, 544, 545, 547, 548, or 553 (the "First Extension Motion") seeking, among other things, (i) authority to file complaints under seal, (ii) an extension of time beyond the initial 120-day period provided for in Fed. R. Civ. P. 4(m) to serve the summonses and complaints, and (iii) a stay of each adversary proceedings until the summons and complaint were actually served.

9. In the First Extension Motion, Debtors represented they had provided notice in accordance with the Case Management Order. Although there can be no doubt that Calsonic had a "particularized interest" in the subject of the First Extension Motion, Debtors did not serve Calsonic or its counsel via overnight mail as required by the Case Management Order. See Affidavit of Service, Docket No. 9039. While Debtors sent an ECF Notice, for the reasons set forth in paragraph 6 above, neither Mr. McMullen nor I reviewed the ECF Notice. Other than the ECF Notice, Debtors did not provide, and Calsonic did not receive, any notice of the First Extension Motion. Id.

10. On August 16, 2007, this Court entered that Order (I) Authorizing Debtors To Enter Into Stipulations Tolling Statute of Limitations With Respect To Certain Claims, (II) Authorizing Procedures To Identify Causes of Action That Should Be Preserved, and (III) Establishing Procedures For Certain Adversary Proceedings Including Those Commenced By Debtors (the "First Extension Order") which (i) authorized Debtors to file certain complaints under seal, (ii) directed the Clerk of the Court to delay issuing summonses unless and until Debtors requested a summons be issued, (iii) extended the deadline under Fed. R. Civ. P. 4(m) by which Debtors would have to serve the summonses and complaints to March 31, 2008, and (iv) stayed each adversary proceeding unless and until Debtors served the summons and complaint. Docket No. 9105, at ¶¶ 7-10.

11. On February 28, 2008, Debtors filed their Motion Pursuant To Fed. R. Bankr. P. 7004 (a) and 9006(b)(1) and Fed. R. Civ. P. 4(m) To Extend Deadline To Serve Process For Avoidance Actions Filed In Connection With Preservation of Estate Claims Procedures Order (the "Second Extension Motion") seeking to extend for a second time the deadline under Fed. R.

Civ. P. 4(m) by which Debtors would be required to serve the summons and complaint to May 31, 2008. See Docket No. 12922, at ¶ 18.

12.    In Second Extension Motion, Debtors once again represented they had provided notice in accordance with the Case Management Order. See Docket No. 12922 at ¶ 26. Although there can be no doubt that Calsonic had a "particularized interest" in the subject of the Second Extension Motion, Debtors did not serve Calsonic or its counsel via overnight mail as required by the Case Management Order. See Affidavit of Service, Docket No. 12970. While Debtors sent an ECF Notice, for the reasons set forth in paragraph 6 above, neither Mr. McMullen nor I reviewed the ECF Notice. Other than the ECF Notice, Debtors did not provide, and Calsonic did not receive, any notice of the Second Extension Motion. Id.

13.    On March 28, 2008, this Court entered that Order Extending Deadline To Serve Process For Avoidance Actions Filed In Connection With Preservation of Estate Claims Procedures Order (the "Second Extension Order") extending the time by which Debtors must serve the summons and complaint to May 31, 2008. See Docket No. 13277, at ¶ 2.

14.    On April 10, 2008, Debtors filed their Motion to Extend Time Motion Pursuant To Fed. R. Bankr. P. 7004(a) and 9006(b)(1) and Fed. R. Civ. P. 4(m) To Extend Deadline To Serve Process For Avoidance Actions Filed In Connection With Preservation of Estate Claims Procedures Order (the "Third Extension Motion") seeking to extend for a third time the deadline under Fed. R. Civ. P. 4(m) by which Debtors would have to serve summons and complaint until 30 days after substantial consummation of Debtors' plan or any modified plan. See Docket No. 13361, at ¶ 19.

15.    In the Third Extension Motion, Debtors once again represented that notice had been provided in accordance with the Case Management Order. Id. at ¶ 27. Although there can

be no doubt that Calsonic had a "particularized interest" in the subject of the Third Extension Motion, Debtors did not serve Calsonic or its counsel via overnight mail as required by the Case Management Order. See Affidavit of Service, Docket No. 13415. While Debtors sent an ECF Notice, for the reasons set forth in paragraph 6 above, neither Mr. McMullen nor I reviewed the ECF Notice. Other than the ECF Notice, Debtors did not provide, and Calsonic did not receive, any notice of the Third Extension Motion. Id.

16.    On April 30, 2008, this Court entered that Order Granting Motion To Extend Deadline To Serve Process For Avoidance Actions Filed In Connection With Preservation of Estate Claims Procedures Order (the "Third Extension Order") extending the time under Fed. R. Civ. P. 4(m) by which Debtors must serve a defendant in the adversary proceedings with a summons and complaint to 30 days after the later of substantial consummation of Debtors' plan or any modified Chapter 11 plan. See Docket No. 13484, at ¶ 2.

17.    On July 30, 2009, this Court entered that Order Approving Modifications to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (the "Order Approving Plan Modification") approving certain modifications to the Plan (the "Modified Plan"). Docket No. 18707. The effective date of the Modified Plan occurred on October 6, 2009. See Docket No. 18958, at ¶ 3.

18.    On October 2, 2009, Debtors filed their Supplemental Motion Pursuant To Fed. R. Bankr. P. 7004 (a) and 9006(b)(1) and Fed. R. Civ. P. 4(m) To Extend Deadline To Serve Process For Avoidance Actions Filed In Connection With Preservation of Estate Claims Procedures Order (the "Fourth Extension Motion") seeking to extend for a fourth time the deadline under Fed. R. Civ. P. 4(m) by which Debtors were required to serve process until 180 days after substantial consummation of the Modified Plan. See Docket No. 18952, at ¶ 16.

19. In the Fourth Extension Motion, Debtors once again represented that they had provided notice in accordance with the Case Management Order. <u>Id.</u> at ¶ 24. Although there can be no doubt that Calsonic had a "particularized interest" in the subject of the Fourth Extension Motion, Debtors did not serve Calsonic or its counsel via overnight mail as required by the Case Management Order. <u>See</u> Affidavit of Service, Docket No. 18967. While Debtors sent an ECF Notice, for the reasons set forth in paragraph 6 above, neither Mr. McMullen nor I reviewed the ECF Notice. Other than the ECF Notice, Debtors did not provide, and Calsonic did not receive, any notice of the Fourth Extension Motion. <u>Id.</u>

20. On October 22, 2009, this Court entered that Order Granting Motion to Extend Deadline To Serve Process For Avoidance Actions Filed In Connection With Preservation of Estate Claims Procedures Order (the "<u>Fourth Extension Order</u>").

I declare under penalty of perjury that the foregoing statements are true and correct.

This the 11th day of July, 2011.

*/s/ Roger G. Jones*
Roger G. Jones