# EXHIBIT 21

# EXHIBIT 21

**Methode Electronics Inc., Adv. Proc. No.: 07-02432-rdd**

Methode Electronics Inc. ("Methode") received notice of the Final Extension Motion (Docket No. 18952). On October 2, 2009, the Final Extension Motion was electronically served on both Kevin J. Walsh and Timothy S. McFadden of Locke Lord Bissell & Liddell as counsel to Methode Electronics, Inc., as certified by KCC. *See Ex. 4, October 7, 2009 Affidavit of Service—Ex. B, 2002 List, p. 12 of 22 (Docket No. 18967)*. Methode's counsel was also electronically served with the Proposed Forty-Eighth Omnibus Hearing Agenda (Docket No. 18991), which specifically identified the Debtors' Final Extension Motion as Agenda item C(1). *Ex.6, October 29, 2009 Affidavit of Service, Ex. B, 2002 List, p. 12 of 22 (Docket No. 19015)*; *Ex. 5, October 21, 2009 Proposed Forty-Eighth Omnibus Hearing Agenda (Docket No. 18991)*.

Timothy R. Glandon, Vice President and General Manager of Methode's North American Automotive Operations, filed a declaration stating that "Methode was not served with any of the four Extension Motions *by overnight mail*...."[1] *Ex. 21(a), July 11, 2011 Declaration of Timothy R. Glandon, ¶ 5 (emphasis added)*. Notably, Mr. Glandon does not deny that Methode was served with notice of the Final Extension Motion by other means, such as via counsel. Further, Mr. Glandon does not claim that Methode was unaware of the Final Extension Motion. As noted above, Kevin J. Walsh and Timothy S. McFadden of Locke Lord Bissell & Liddell, were both electronically served as Methode's counsel with notice of the Final Extension Motion and Proposed Forty-Eighth Omnibus Hearing Agenda, which specifically identified the Debtors'

---

[1] Methode's assertion is apparently premised on the notion that Methode was required to be served by overnight mail under paragraph 15 of the Supplemental Case Management Order (Docket No. 2883). For the reasons set forth in detail in the Omnibus Response and the Skadden Filings, that premise is erroneous.

Final Extension Motion as Agenda item C(1). *See Ex. 4, October 7, 2009 Affidavit of Service—Ex. B, 2002 List, p. 12 of 22 (Docket No. 18967); Ex.6, October 29, 2009 Affidavit of Service, Ex. B, 2002 List, p. 12 of 22 (Docket No. 19015); Ex. 5, October 21, 2009 Proposed Forty-Eighth Omnibus Hearing Agenda (Docket No. 18991).*

Moreover, Methode received relevant information advising that avoidance claims had been filed under seal and the time to serve the complaints and summonses had been extended. The Affidavit of Service for the Preservation of Estate Claims Procedures Motion confirms that Messrs. McFadden and Walsh received electronic service of that motion (which motion was filed as Docket No. 8905) as counsel for Calsonic. *Ex. 11, August 10, 2007 Affidavit of Service—Ex. B, 2002 List, p. 10 of 20 (Docket No. 9039).* Messrs. McFadden and Walsh also received electronic service of the August 16, 2007 Preservation of Estate Claims Procedures Order (Docket No. 9105), which, among other things, (i) authorized the Debtors to file complaints in the adversary proceedings pertaining to avoidance actions under seal, (ii) stayed each adversary proceeding unless and until the Debtors made service of process on the respective defendants, and (iii) extended to March 31, 2008 the deadline under Federal Rule of Civil Procedure 4(m) by which the Debtors would have to serve process, so that the complaints would not be subject to dismissal under Federal Rule of Civil Procedure 4(m). *See Ex. 12, August 23, 2007 Affidavit of Service–Ex. B, 2002 List, p. 10 of 20 (Docket No. 9141).* Similarly, Messrs. McFadden and Walsh were also served with the subsequently filed (i) First Extension Motion (Docket No. 12922), *Ex. 13, March 4, 2008 Affidavit of Service—Ex. B, 2002 List, p. 11 of 21 (Docket No. 12970); see also id. at Ex. C, 2002 List, pp. 2 and 3 of 4*; (ii) First Extension Order (Docket No. 13277), *Ex. 14, April 1, 2008 Affidavit of Service—Ex. A, 2002 List, p. 11 of 21 (Docket No. 13315); see also id. at Ex. B, 2002 List, p. 2 of 3*; (iii) Second Extension Motion (Docket No.

2

13361), *Ex. 15, April 16, 2008 Affidavit of Service—Ex. B, 2002 List, p. 11 of 21 (Docket No. 13415); see also id. at Ex. C, 2002 List, pp. 2 and 3 of 4;* and (iv) and Second Extension Order (Docket No. 13484), *Ex. 16, May 6, 2008 Affidavit of Service—Ex. B, 2002 List, p. 2 of 5 (Docket No. 13540)*.

  Moreover, Methode was served through Mr. McFadden with the First Amended Plan Disclosure Statement, filed in December 2007. *See Ex. 7, January 11, 2008 Affidavit of Service– Ex. HH (Docket No. 11974)*. The Disclosure Statement outlined in detail that preference claims were to be filed under seal, with service deferred until after the limitations period. In addition, on December 13, 2007, the Debtors filed a copy of the Disclosure Statement publicly with their Form 8-K (Docket No. 11388).

  As this Court discussed during the July 22, 2010 hearing, the Disclosure Statement, combined with the defendants' knowledge that they had in fact received preferential transfers, put the defendants on notice of the preference claim procedures at issue (as did Methode's receipt of the Extension Motions and Extension Orders) and on inquiry notice as to the need to monitor preference claim developments. *Ex. 8, July 22, 2010 Transcript, pp. 150-153*. As Delphi's financial condition deteriorated, the Debtors' payment records show that Methode succeeded in capturing over $3 million dollars in payments that were not otherwise due. These were not ordinary course payments. *See e.g.*, *Ex. 21(b), October 3, 2005 Settlement Agreement which reflects that Method received modified payment terms.* Within the 4 days prior to Delphi's bankruptcy, Methode received over $9 millions in transfers. *Id.* Methode is a sophisticated supplier and the fact that it extracted these payments on the eve of bankruptcy would not have gone unnoticed and Methode would have known the implications of these preferential transfers.

3

Additionally, Methode was listed as one of Debtors' 50 largest unsecured creditors, along with Robert Bosch Corporation, PBR Automotive USA Pacific, HSS LLC, Philips Semiconductors, Applied Bio Systems, Timken Company and Victory Packaging. Sophisticated creditors like Methode typically are well aware of prospects and risks of preference litigation, and it seems unlikely that creditors like Methode could be surprised or caught off guard when such preference complaints are finally filed. *See In re TWA Inc. Post Confirmation Estate*, 305 B.R. 221, 227 (D. Del. 2004) ("[I]n large chapter 11 cases sophisticated creditors typically are well aware of prospects and risks of preference litigation. … Thus, it seems unlikely that creditors could be surprised or caught off guard when such preference complaints are finally filed.").

Finally, even if Methode did not receive notice, Methode has waived its right to argue that dismissal is warranted. Under Fed. R. Civ. P. 12(g) and (h), a challenge to the efficacy of service under Fed. R. Civ. P. 4(m) is waived if not raised in an answer or in a pre-answer motion under Fed. R. Civ. P. 12(b). *McCurdy v. American Bd. of Plastic Surgery*, 157 F. 3d 191, 193-195 (3rd Cir. 1998). *See also Hemispherx Biopharma, Inc. v. Johannesburg Consol. Investments*, 553 F. 3d 1351, 1360 (11th Cir. 2008). Methode filed its answer on April 9, 2010, prior to filing a Rule 12(b) motion which did not challenge (by affirmative defense or otherwise) the Final Extension Order, and thus the efficacy of service. *See Ex. 21(c), Methode Electronics Inc.'s Answer to Delphi Corporation's Adversary Complaint for (1) Avoidance of Preferential Transfers Pursuant to 11 U.S.C. 547 and (2) Recovery of Property Transferred and/or Preservation of Transfers Pursuant to 11 U.S.C. §§ 547 and 550.* Methode has therefore waived the arguments it now seeks to assert.

# EXHIBIT A

Shalom Jacob
Zachary D. Silbersher
LOCKE LORD BISSELL & LIDDELL LLP
Three World Financial Center
New York, New York 10281-2101
Tel: (212) 415-8600
Fax: (212) 303-2754

-and-

Courtney E. Barr (CB 7768)
LOCKE LORD BISSELL & LIDDELL LLP
111 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 443-0700
Fax: (312) 443-0336

*Counsel for Methode Electronics, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| DPH HOLDINGS CORP., et al., | Case No. 05-44481 [RDD] |
| Reorganized Debtors. | (Jointly Administered) |
| DELPHI CORPORATION, et al., | |
| Plaintiffs, | |
| v. | Adv. Pro. No. 07-02432 [RDD] |
| METHODE ELECTRONICS INC., | |
| Defendant. | |

------------------------------------------------------x

### DECLARATION OF TIMOTHY R. GLANDON

Timothy R. Glandon, hereby declares, pursuant to 28 U.S.C. § 1746, that the following is true to the best of my knowledge, information and belief:

1. My name is Timothy R. Glandon. I am of sound mind, over the age of eighteen years, capable of making this declaration (the "Declaration") and fully competent to testify

herein. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information provided to me by certain employees of Methode Electronics, Inc. ("Methode") with whom I manage, my review of relevant documents, or my opinion based upon my experience, knowledge, and information concerning the operations and financial affairs of Methode. If I were called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration.

2. I submit this Declaration in connection with the above-captioned bankruptcy case and adversary proceeding and in support of Methode's Objection to the Reorganized Debtors' Motion for Leave to File Amended Complaints and the motion to vacate the Fourth Extension Order.

3. Since August 2001, I have been employed by Methode. I am currently employed as Vice President and General Manager of North American Automotive Operations at Methode.

4. As Vice President and General Manager at Methode, I am familiar with the supply arrangements between Methode and Delphi Automotive Systems, LLC ("Delphi") and have been involved in Methode's business relationship with Delphi since coming to Methode in 2001.

5. Methode was not served with any of the four Extension Motions by overnight mail, including the First Extension Motion, the Second Extension Motion, the Third Extension Motion, or the Fourth Extension Motion.

6. Methode was not served with the Fourth Extension Motion by postage pre-paid US mail.

I declare under the penalty of perjury and the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on July 10, 2011 at Chicago, Illinois.

*[signature]*
Timothy R. Glandon
Vice President and General Manager of North American Automotive Operations
Methode Electronics, Inc.

STATE OF ILLINOIS    )
                     ) SS
COUNTY OF COOK       )

Subscribed and sworn to before me this 11th day of July, 2011.

*[signature]*
Notary Public

OFFICIAL SEAL
PATRICIA M. SWAGGERTY
Notary Public - State of Illinois
My Commission Expires Feb 17, 2014

3

# EXHIBIT B

## Settlement Agreement

This Settlement Agreement (this "Agreement") is entered into as of 10/3/2005 (the "Effective Date") by and between Delphi Corporation (together with its affiliates and subsidiaries, "Delphi") and Methode Electronics, Inc. ("Company").

A. Company supplies various bladders (the "Parts") to Delphi pursuant to various purchase orders and supply contracts (collectively, the "Purchase Orders").

B. Company has requested modified terms from Delphi.

C. Company is currently Delphi's sole source for the Parts, and Delphi will not able to obtain the Parts from an alternative source in the near term. As such, even a short supply interruption is likely to result in production shut downs for both Delphi and its OEM customer, GM.

D. Delphi and Company disagree as to their respective rights and obligations related to the Purchase Orders.

E. Delphi and Company believe it to be in their mutual best interests to resolve their dispute amicably by making certain modifications to the Purchase Orders in accordance with this Agreement in order to avoid litigation and to maintain a continuous flow of Parts from Company to Delphi.

Based upon the foregoing recitals and for good and valuable consideration, the receipt and adequacy of which is acknowledged, Delphi and Company agree as follows:

1. Subject to the modifications set forth herein, all Purchase Orders remain in full force and effect.

2. A. Effective for shipments of Parts to Delphi's U.S. locations (or directed locations in the case of "pass-thru" components) from and after October 4, 2005, Delphi will, pay for such Parts on "Cash in Advance" terms with a unit price discount of 1% (based on the current unit pricing) continuing through 12/23/05, and MNS2-2 (without any unit price discount) thereafter. Cash in Advance payments under this Agreement will be executed as follows: (i) Delphi will wire transfer to Company on October 4, 2005 an initial advance payment equal to the estimated payables for the next seven (7) days based on forecasted volumes, (ii) Delphi's payment system will then pay invoices for shipments starting on October 4, 2005, in full (but subject to the unit price discount) on "Net Immediate" terms (iii) the parties will, from time to time, adjust the amount of the advance payment retained by Company based on volume forecasts so that the advance payment remains approximately equal to the estimated payables for each subsequent seven (7) day period.

B. The parties intend for the payment arrangement called for in Section 2.A above to satisfy the requirements of a contemporaneous exchange for new value for purposes of the U.S. Bankruptcy Code.

3. Notwithstanding any intervening change in Delphi's financial situation, Company will continue to supply parts to Delphi in accordance with the Purchase Orders and this Agreement and waives any further right to seek adequate assurance or further contract modifications under the Uniform Commercial Code or other applicable laws.

4. Company will keep the terms of this Agreement together with all related settlement discussions strictly confidential. Company will disclose the terms of this Agreement only to its management personnel that need to know such information to implement the terms of this Agreement and legal counsel and other advisors with whom Company has a recognized legal privilege; provided that all such parties have been

informed of the confidentiality restrictions contained herein. Company further agrees that it will be responsible and liable for any breach of the confidentiality provisions set forth in this Agreement by its management personnel, legal counsel and other advisors. Company acknowledges that failure to honor the confidentiality provisions contained herein would cause significant economic harm to Delphi. Any discussions by Company with any third parties, including the press or media or consultants, regarding this Agreement and its terms are expressly prohibited.

5.    The parties hereto acknowledge that they are executing this Agreement without duress or coercion and without reliance on any representations, warranties or commitments other than those representations, warranties and commitments expressly set forth in this Agreement.

6.    This Agreement constitutes the entire understanding of the parties in connection with the subject matter hereof. This Agreement may not be modified, altered, or amended except by an agreement in writing signed by Delphi and Company. This Agreement shall be deemed to be incorporated by reference into, and shall be part of, all Purchase Orders without any specific reference to this Agreement in any such Purchase Order. The terms and conditions of the Purchase Orders are amended to include the terms of this Agreement. Should an inconsistency or conflict exist between the express terms of the Purchase Orders and this Agreement, the terms of this Agreement shall govern and control. This Agreement is being entered into among competent persons who are experienced in business and represented by counsel, and has been reviewed by Company and its counsel. Therefore, any ambiguous language in this Agreement will not necessarily be construed against any particular party as the drafter of such language.

7.    This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Michigan, without regard to conflicts of law principles.

EXECUTED as of the Effective Date.

Delphi Corporation                                  Methode Electronics, Inc.

By: *Mark A. Shively*                               By: _____
Name: Mark A. Shively                               Name: _____
Title: E&S Manager – Chemical Commodity             Title: _____

# EXHIBIT C

Timothy S. McFadden (TM 9650)
Courtney E. Barr, *admitted pro hac* (CB 7768)
LOCKE LORD BISSELL & LIDDELL LLP
111 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 443-0700
Fax: (312) 443-0336

-and-

Shalom Jacob (SJ 1160)
Casey B. Howard (CH 4633)
LOCKE LORD BISSELL & LIDDELL LLP
Three World Financial Center
New York, New York 10281-2101
Tel: (212) 415-8600
Fax: (212) 303-2754

*Counsel for Defendant Methode Electronics, Inc.*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>DELPHI CORPORATION, et al.,<br><br>Debtors-in-Possession. | Chapter 11<br>Case No. 05-44481 (RDD)<br>(Jointly Administered) |
| DELPHI CORPORATION, et al.,<br><br>Plaintiff,<br><br>v.<br><br>METHODE ELECTRONICS INC.,<br><br>Defendant. | Adv. Pro. No. 07-02432 (RDD) |

**METHODE ELECTRONICS INC.'S ANSWER TO DELPHI CORPORATION'S ADVERSARY COMPLAINT FOR (1) AVOIDANCE OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547 AND (2) RECOVERY OF PROPERTY TRANSFERRED AND/OR PRESERVATION OF TRANSFERS PURSUANT TO 11 U.S.C. §§ 547 AND 550**

Now comes the Defendant, METHODE ELECTRONICS, INC. ("Methode" or "Defendant"), by and through its attorneys, LOCKE LORD BISSELL & LIDDELL LLP, and in answer to Plaintiffs' Complaint (the "Complaint") states as follows:

## INTRODUCTION

1. Defendant admits the allegations contained in paragraph 1 of the Complaint.

2. Defendant admits the allegations contained in paragraph 2 of the Complaint.

## JURISDICTION, VENUE AND PARTIES

3. With respect to the allegations contained in paragraph 3 of the Complaint, Defendant admits that the Plaintiff has filed an adversary proceeding against Methode (the "Adversary Proceeding"), denies that all of the Transfers identified in Exhibit 1 were made by Plaintiff to Defendant in the amounts listed therein on the dates listed therein, and further denies Plaintiff is entitled to the relief requested.

4. Defendant admits the allegations contained in paragraph 4 of the Complaint.

5. Defendant admits the allegations contained in paragraph 5 of the Complaint.

6. Defendant admits the allegations contained in paragraph 6 of the Complaint.

7. Defendant admits the allegations contained in paragraph 7 of the Complaint.

8. The allegations contained in paragraph 8 of the Complaint constitute legal conclusions to which no response is required. To the extent a response is required, Defendant denies such allegations.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
(Avoidance and Recovery of Preferential Transfers)

9. Defendant restates and incorporates herein by this reference its responses to the allegations contained in paragraphs 1 through 8 of the Complaint.

10. Defendant admits that certain of the Transfers as defined in the Complaint were made to Defendant, but denies that all of the Transfers identified in Exhibit 1 to the Complaint were made by Plaintiffs to Defendant in the amounts and/or dates listed therein. Defendant affirmatively states that it received certain transfers (the "Actual Transfers") from the Plaintiffs within the ninety (90) days prior to the Initial Filing Date, as more fully described on Exhibit A hereto. Defendant did not receive a transfer in the amount of $6,827.52 within the ninety (90) days prior to the Initial Filing Date, as set forth in the Exhibit 1 to the Plaintiffs' Complaint. Rather, Defendant received a transfer from one or more of the Plaintiffs in such amount on July 9, 2005, a date prior to the ninety (90) days prior to the Initial Filing Date. Except as so admitted, Defendant denies the remaining allegations in paragraph 10 of the Complaint.

11. Defendant restates and incorporates herein by this reference its response to the allegations contained in paragraph 10. Except as so admitted, Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 of the Complaint.

3

12. Defendant restates and incorporates herein by this reference its response to the allegations contained in paragraph 10. Defendant admits that the Plaintiffs made, or caused to be made, the Actual Transfers to, or for the benefit of it. Except as so admitted, Defendant denies the remaining allegations in paragraph 12 of the Complaint.

13. Defendant restates and incorporates herein by this reference its response to the allegations contained in paragraph 10. Defendant denies the allegations in paragraph 13 of the Complaint. Specifically, Defendant denies that the transfer made on October 6, 2010 for $3,053,806.92 (the "October 6 Transfer") was a transfer made by Plaintiff for, or an account of, an antecedent debt owed to Defendant prior to the date on which it was made. The October 6 Transfer was a "Cash in Advance" payment made by Plaintiff to Defendant pursuant to a Settlement Agreement between the parties dated as of October 3, 2005. The October 6 Transfer was a payment for future goods and services supplied to Plaintiff by Defendant and was not intended to be, and was not in fact a transfer for or on account of an antecedent debt.

14. The allegations contained in paragraph 14 of the Complaint constitute legal conclusions to which no response is required. To the extent a response is required, Defendant denies such allegations.

15. Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the Complaint.

16. Defendant denies the allegations in paragraph 16 of the Complaint.

### FIRST AFFIRMATIVE DEFENSE

17. The Actual Transfers received by the Defendant from the Debtors in the 90 day period preceding the Petition Date were in payment of a debt incurred by the

4

Debtors in the ordinary course of business or financial affairs of the Debtors and the Defendant; made in the ordinary course of business or financial affairs of the Debtors and the Defendant; and made according to ordinary business terms. Therefore, the Actual Transfers are not subject to avoidance by Plaintiffs under 11 U.S.C. § 547(c)(2).

### SECOND AFFIRMATIVE DEFENSE

18.     Subsequent to the receipt of certain of the Actual Transfers by the Defendant from the Debtors in the 90 day period preceding the Petition Date, Defendant gave new value to or for the benefit of the Debtors not secured by an otherwise unavoidable security interest and on account of which the Debtors did not make an otherwise unavoidable transfer to or for the benefit of the Defendant. Therefore, the Actual Transfers are not subject to avoidance by Plaintiff under 11 U.S.C. § 547(c)(4).

### THIRD AFFIRMATIVE DEFENSE

19.     One or more of the Actual Transfers were contemporaneous exchanges for new value pursuant to 11 U.S.C. § 547(c)(1) and are not subject to avoidance.

### FOURTH AFFIRMATIVE DEFENSE

20.     Defendant reserves its right to assert other affirmative defenses as they become known at a future date.

WHEREFORE, Defendant, METHODE ELECTRONICS INC., prays for judgment against Plaintiff, DELPHI CORPORATION, et al., as follows:

    A.    Dismissal of the Complaint;

    B.    Award of attorneys' fees incurred in defending against the allegations in the Complaint;

    C.    Award of costs incurred in defending against the allegations in the Complaint; and

D.   Any and all other relief as the Court deems just and proper.

Dated: Chicago, Illinois                Respectfully submitted,
April 9, 2010

_____/s/_____
Timothy S. McFadden (TM 9650)
Courtney E. Barr *admitted pro hac* (CB 7768)
LOCKE LORD BISSELL & LIDDELL LLP
111 South Wacker Drive
Chicago, Illinois 60606-4410
Telephone: (312) 443-0700
Fax: (312) 443-0336

-and-

Shalom Jacob (SJ 1160)
Casey B. Howard (CH 4633)
LOCKE LORD BISSELL & LIDDELL LLP
Three World Financial Center
New York, New York 10281-2101
Tel: (212) 415-8600
Fax: (212) 303-2754

*Counsel for Defendant*
*Methode Electronics Inc.*

## EXHIBIT A

| Transfer Date | Transfer Amount |
|---|---|
| 10/4/2005 | $6,655,222.18 |
| 10/4/2005 | $75,673.80 |
| 10/6/2005 | $3,053,806.92 |
| 7/21/2005 | $38,556.00 |
| 8/1/2005 | $58,548.00 |
| 8/2/2005 | $5,365,903.75 |
| 8/2/2005 | $59,684.72 |
| 8/3/2005 | $300.00 |
| 8/6/2005 | $3,563.52 |
| 9/7/2005 | $52,098.51 |
| 9/16/2005 | $3,374.07 |
| 9/2/2005 | $3,949,866.97 |
| 9/2/2005 | $43,078.64 |
| 9/28/2005 | $4,672.51 |
| 9/28/2005 | $2,812.80 |
| 10/4/2005 | $33,767.41 |
| 9/28/2005 | $2,072.00 |
| 9/6/2005 | $264,420.66 |
| 9/7/2005 | $49,820.24 |
| **TOTAL** | **$19,717,242.70** |