# EXHIBIT 44

# EXHIBIT 44

## Globe Motors Inc., Adv. Pro. No. 07-02333-rdd

Globe has waived its right to argue that dismissal is warranted on account of ineffective service. Under Fed. R. Civ. P. 12(g) and (h), a challenge to the efficacy of service under Fed. R. Civ. P 4(m) is waived if not raised in a party's answer or in a pre-answer motion under Fed. R. Civ. P. 12(b). *McCurdy v. American Bd. of Plastic Surgery*, 157 F. 3d 191, 193-195 (3rd Cir. 1998). *See also*, *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Investments*, 553 F. 3d 1351, 1360 (11th Cir. 2008). Globe filed its answer on January 15, 2010, before filing a Rule 12(b) motion which did not challenge (by affirmative defense or otherwise) the Final Extension Order, and thus the efficacy of service. *See Ex. 44(a), Answer To Complaint filed by Globe Motors, Inc*. Globe has therefore waived the arguments it now asserts.

Globe Motors Inc. ("Globe") provided two declarations from Thomas Carroll, Globe's Vice President-Secretary and General Counsel, dated July 8, 2011 and January 31, 2011 respectively. *Ex. 44(b), July 8, 2011 Declaration of Thomas Carroll; Ex. 44(c), January 30, 2011 Declaration of Thomas Carroll.* In both declarations, Mr. Carroll states that "Globe did not receive any particularized notice of the Extension Motions and, upon information and belief, Globe received no notice of them at all." *Ex. 44(b) at ¶ 6; Ex. 44(c) at ¶ 5.* As Mr. Carroll notes in his Declaration, Globe did have notice of Delphi's bankruptcy and "had reviewed materials that it received related to the Delphi bankruptcy case." *Ex. 44(b) at ¶ 7.* In his declaration, Mr. Carroll further states that Globe "reviewed the materials that it had received related to the Delphi bankruptcy case" and found that it had been served only with the documents that he identifies in Paragraph 7 of his declaration. *Id.*

As Delphi's financial condition deteriorated, the Debtors' payment records show that Globe held Delphi hostage and refused to ship unless Delphi made payments that were outside the ordinary course. This is documented in a Settlement Agreement between Delphi and Globe dated October 6, 2005, only 2 days before Delphi's chapter 11 filing. *See Ex. 44(d), October 6, 2005 Settlement Agreement (reflecting that Globe demanded modified terms and threatened Delphi with terminating shipments if those demands were not met).* On that same day, Delphi made a wire transfer to Globe in the amount of $181,178.24 as demanded by Globe due to "[c]oncerns regarding Delphi's financial condition." *See Ex. 44(d), October 6, 2005 Delphi Payment Term Deviation Request Form.* Globe is a sophisticated supplier and the fact that it extracted these payments on the eve of bankruptcy would not have gone unnoticed and Globe most certainly would have known the implications of these preference transfers.

As acknowledged by Mr. Carroll, Globe received relevant information advising that avoidance claims had been filed under seal and the time to serve the complaints and summonses had been extended. Globe was served with the First Amended Plan Disclosure Statement, filed in December 2007. *See Ex. 7, January 11, 2008 Affidavit of Service—Ex. W, (Docket No. 11974).* On December 13, 2007, the Debtors also filed a copy of the Disclosure Statement publicly with their Form 8-K (Docket No. 11388). The Disclosure Statement outlined in detail that preference claims were to be filed under seal, with service deferred until after the limitations period. As this Court discussed during the July 22, 2010 hearing, the Disclosure Statement, combined with the defendants' knowledge that they had in fact received preferential transfers, put the defendants on notice of the preference claim procedures at issue and on inquiry notice as to the need to monitor preference claim developments. *Ex. 8, July 22, 2010 Transcript, pp. 150-153. See also In re TWA Inc. Post Confirmation Estate*, 305 B.R. 221, 227 (D. Del. 2004) ("[I]n

large chapter 11 cases sophisticated creditors typically are well aware of prospects and risks of preference litigation. … Thus, it seems unlikely that creditors could be surprised or caught off guard when such preference complaints are finally filed.").

# EXHIBIT A

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 05-44481 (RDD) |
| DELPHI CORPORATION, *et.al.,* | (Jointly Administered) |
| | |
| DELPHI CORPORATION, *et.al.,* | |
| | Adv. Pro. No. 07-02333 (RDD) |
| Plaintiffs, | |
| | |
| v. | |
| | |
| GLOBE MOTORS, INC. and GLOBE MOTORS, | |
| | |
| Defendants. | |

## ANSWER TO COMPLAINT

Globe Motors, Inc. and Globe Motors (together, "Defendants"), by their attorneys, answer the above-captioned complaint as follows:

### INTRODUCTION

1.    The allegations in Paragraph 1 of the Complaint are admitted.

2.    The allegations in Paragraph 2 of the Complaint are admitted.

### JURISDICTION, VENUE AND PARTIES

3.    The allegations in Paragraph 3 of the Complaint are admitted.

4.    The allegations in Paragraph 4 of the Complaint are admitted.

5.    The allegations in Paragraph 5 of the Complaint are admitted.

6.    The allegations in Paragraph 6 of the Complaint are admitted.

7.    The allegations in Paragraph 7 of the Complaint are admitted, except that Defendants state that "Globe Motors" is not a distinct entity from "Globe Motors, Inc."

8.    The allegations in Paragraph 8 of the Complaint are admitted.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
(Avoidance and Recovery of Preferential Transfers)

9.    Defendants repeat, re-allege and incorporate by reference all of their answers to paragraphs 1 through 8 of this Complaint as though set forth at length herein.

10.    The allegations in Paragraph 10 of the Complaint are admitted, except that Defendants state that "Globe Motors" is not a distinct entity from "Globe Motors, Inc."

11.    The allegations in Paragraph 11 of the Complaint are admitted.

12.    The allegations in Paragraph 12 of the Complaint are admitted.

13.    Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 13.  Answering further, Defendants state that not every Transfer may have been on account of an antecedent debt owed to Defendants. Investigation continues.

14.    Defendants admit that Bankruptcy Code Section 547(f) includes a presumption of insolvency at the time of the Transfers, but Defendants lack knowledge and information sufficient to form a belief as to whether Debtors were insolvent at the time of the Transfers.

15.    The allegations in Paragraph 15 of the Complaint are denied.

16.    The allegations in Paragraph 16 of the Complaint are denied.


## AFFIRMATIVE DEFENSES

1.    Each of the Transfers was intended by the Debtors and Defendants to be a substantially contemporaneous exchange for new value and was in fact a substantially contemporaneous exchange.  11 U.S.C. § 547(c)(1).

2

SL1 973525v1/105400.00001

2.      After each of the Transfers, Defendants supplied new value to or for the benefit of the Debtors not secured by an otherwise unavoidable security interest, and on account of which new value the Debtors did not make an otherwise unavoidable transfer to or for the benefit of Defendants. 11 U.S.C. § 547(c)(4).

3.      Each of the Transfers was in payment of a debt incurred by the Debtors in the ordinary course of business or financial affairs of the Debtors and Defendants, and (i) made in the ordinary course of business or financial affairs of the Debtors and Defendants, or (i) made according to ordinary business terms. 11 U.S.C. § 547(c)(2).

4.      The relief sought in the Complaint is barred by estoppel, unclean hands, laches and/or waiver.

3

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
In re:                                                  :
                                                        :        Chapter 11
DELPHI CORPORATION, et al.,                             :
                                     Debtors.           :
-------------------------------------------------------  :        Case No. 05-44481 (RDD)
DELPHI CORPORATION, et al.,                             :
                                     Plaintiffs,        :        Adv. Proc. No. 07-02333 (RDD)
                                                        :
       -against-                                        :
                                                        :
                                                        :
GLOBE MOTORS, INC. and GLOBE MOTORS,                    :
                                                        :
                                     Defendants.        :
-------------------------------------------------------  X


### SECOND DECLARATION OF THOMAS CARROLL IN SUPPORT OF OBJECTION OF GLOBE MOTORS TO REORGANIZED DEBTORS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS AND IN SUPPORT OF MOTIONS TO DISMISS ADVERSARY PROCEEDINGS

I, Thomas Carroll, declare and state:

1.      I am the Vice President-Secretary and General Counsel of Globe Motors, Inc. ("Globe").[1] This declaration (the "Declaration") is made in furtherance of the hearings held before this Court on June 21, 2011 (the "June 21 Hearing"). Upon information and belief, at the June 21 Hearing, the Court granted any defendant the ability to submit an affidavit or declaration in support of its position that it did not receive: (i) notice of the Original Complaint (as defined below) at or about the time it was filed and (ii) notice of the Debtors' fourth request to extend time to serve complaints and summonses. The Court provided defendants with three (3) weeks to submit such a declaration.

---

[1]  As Globe indicated in its answer to the Original Complaint, "Globe Motors" is not a distinct entity from "Globe Motors, Inc."

2.      Except as otherwise set forth in this Declaration, I have personal knowledge of the matters set forth herein.

3.      Upon information and belief, on or about September 30, 2007, the Debtors filed a complaint (the "Original Complaint") against Globe under seal.  No summons or notice of the filing of the Original Complaint was provided to Globe.

4.      The Original Complaint sought the return of allegedly preferential transfers from the Debtors to Globe totaling $456,551.96.

5.      Upon information and belief, the Debtors filed four extension motions (the "Extension Motions") seeking to extend the time to serve each preference complaint and attendant summons.  Upon information and belief, this Court is concerned about whether the defendants, including Globe, received notice of the fourth requested extension of time to serve the Original Complaint (the "Fourth Extension").

6.      Globe did not receive any particularized notice of the Extension Motions, including the Fourth Extension, and, upon information and belief, Globe received no notice of them at all.[2]

7.      To determine whether Globe received the Extension Motions, it reviewed the materials that it received related to the Delphi bankruptcy case and found that it had been served only with: (i) Ballot For Accepting Or Rejecting Joint Plan Of Reorganization; (ii) Letter From The Delphi Corporation Official Committee Of Equity Security Holders; (iii) Post Petition Interest Rate Determination Notice; (iv) Notice Of:  Approval Of Disclosure Statement; Hearing On Confirmation Of Plan; Deadline And Procedures For Filing Objections To Confirmation Of

---

[2] Stevens & Lee, which now represents Globe, did receive the Extension Motions.  It received the Extension Motions in its capacity as counsel to Tonolli Canada Ltd., VJ Technologies, Inc., VJ ElectroniX, Inc. and Wamco, Inc.  Stevens & Lee  was not retained by Globe until after the filing and service of the Extension Motions and was retained only after service of the Original Complaint which was received on or about December 22, 2009.

Plan; Deadline And Procedures For Temporary Allowance Of Certain Claims For Voting

Purposes; Deadline For Asserting Cure Claims For Assumed Contracts; Treatment Of Certain

Unliquidated, Contingent, Or Disputed Claims For Notice, Voting and Distribution Purposes;

Record Date; Voting Deadline For Receipt Of Ballots; and Proposed Releases, Exculpation, and

Injunction In Plan; (v) Claim Objection Procedures Order; (vi) a CD titled:  First Amended

Disclosure Statement With Respect To First Amended Plan Of Reorganization (collectively, the

"Received Documents").  None of the Received Documents indicated that Globe might be sued

to recover allegedly preferential transfers.  In fact, Globe believed just the opposite.  Section 7.24

of the plan, as modified, indicated that all preference actions were waived by the Debtor unless

they were specifically set forth on Exhibit 7.24.  Globe was not identified on Exhibit 7.24.

8.    Absent effective, particularized notice, Globe had no way of knowing or

discovering that the Extension Motions affected its rights because neither the Extension Motions

nor Exhibit 7.24 of the plan (the exhibit by which the Debtors purported to preserve claims

against adversary defendants) identified Globe as a named defendant.

9.    At no time prior to service of the Original Complaint upon Globe on or about

December 22, 2009, was Globe aware of the existence of the Original Complaint or of the

Extension Motions.  Globe understood that it needed to be served with all documents specifically

affecting its rights and, thus, Globe had no reason to believe that its rights were being affected

because it was not served with the Original Complaint or the Extension Motions.

10.    Further, Globe is prejudiced by the long delay in this case.  Discovery has not yet

begun in this adversary proceeding.  Thus, the impact of the prejudice to Globe from the

Debtors' actions taken in this adversary proceeding cannot be fully known.  But the Debtors'

actions so far have given rise to significant, immediately recognizable prejudice to Globe (in

addition to other, as yet undiscovered prejudice). For example, the Regional Account Manager responsible for the Debtors' account, and who was the key interface related to the settlement agreement between the Debtors and Globe, retired in mid-2010 and passed away in late 2010. Additionally, the memories of remaining employees naturally have faded with the passage of so much time since the Original Complaint was filed under seal. Moreover, Globe may have difficulty obtaining documents internally and from its vendors that would assist in establishing its defenses (*e.g.*, industry standard). Such records would have been easily obtainable had the Original Complaint been timely served.

11. Finally, Globe did not reserve adequate funds to pay its defense costs or to satisfy any judgment that might be obtained against it because it was misled to believe that it would *not* be facing litigation regarding the amounts at issue in this adversary proceeding. On a related note, Globe did not disclose the existence of the Debtors' claims in its financial statements or incorporate those potential claims into its budgets and financial projections--again because the Debtors' claims were concealed from Globe.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July _____8___, 2011.

**FURTHER AFFIANT SAYETH NOT.**

_____
THOMAS CARROLL

# EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------X

|  |  |  |
|---|---|---|
| In re: | : |  |
|  | : | Chapter 11 |
| DELPHI CORPORATION, et al., | : |  |
| Debtors. | : |  |
| ----------------------------------------------------- | : | Case No. 05-44481 (RDD) |
| DELPHI CORPORATION, et al., | : |  |
| Plaintiffs, | : | Adv. Proc. No. 07-02333 (RDD) |
|  | : |  |
| -against- | : |  |
|  | : |  |
|  | : |  |
| GLOBE MOTORS, INC. and GLOBE MOTORS, | : |  |
|  | : |  |
| Defendants. | : |  |
| ----------------------------------------------------- | X |  |

### DECLARATION OF THOMAS CARROLL IN SUPPORT
### OF OBJECTION OF GLOBE MOTORS TO REORGANIZED
### DEBTORS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS

I, Thomas Carroll, declare and state:

1.    I am the Vice President-Secretary and General Counsel of Globe Motors, Inc.
("Globe").[1] This declaration (this "Declaration") accompanies and supports the Objection of
Globe Motors to Reorganized Debtors' Motion for Leave to File Amended Complaints (the
"Objection").[2]

2.    Except as set forth in this Declaration, I have personal knowledge of the matters
set forth herein.

3.    Upon information and belief, on or about September 30, 2007, the Debtors filed a
complaint (the "Original Complaint") against Globe under seal.  No summons or notice of the
filing of the Original Complaint was provided to Globe.

---

[1]  As Globe indicated in its answer to the Original Complaint, "Globe Motors" is not a distinct entity from "Globe Motors, Inc."
[2]  Capitalized terms used but not defined in this Declaration shall have the meanings ascribed to them in the
Objection.

4.      The Original Complaint sought the return of transfers from Debtors to Globe totaling $456,55.196.

5.      Globe did not receive any particularized notice of the Extension Motions and, upon information and belief, Globe received no notice of them at all.

6.      Absent effective, particularized notice, Globe had no way of knowing or discovering that the Extension Motions affected its rights because neither the Extension Motions nor Exhibit 7.24 of the plan (the exhibit by which the Debtors purported to preserve claims against adversary defendants) identified Globe as a named defendant.

7.      Globe understood that it needed to be provided with overnight delivery of hard copies of all documents specifically affecting its rights and, thus, Globe justifiably relied on that lack of service in forming a belief that the Extension Motions did not affect its rights.

8.      Discovery has not yet begun in this adversary proceeding. Thus, the impact of the prejudice to Globe from the Debtors' actions taken in this adversary proceeding cannot be fully known. But the Debtors' actions so far have given rise to significant, immediately recognizable prejudice to Globe (in addition to other, as yet undiscovered prejudice). For example, the Regional Account Manager responsible for the Debtors' account, and who was the key interface related to the settlement agreement between the Debtors and Globe, retired in mid-2010 and passed away in late 2010. Additionally, the memories of remaining employees naturally have faded with the passage of so much time since the Original Complaint was filed under seal. Moreover, Globe may have difficulty obtaining documents internally and from its vendors that would assist in establishing its defenses (*e.g.*, industry standard). Such records would have been easily obtainable had the Original Complaint been timely served.

9.      Finally, Globe did not reserve adequate funds to pay its defense costs or to satisfy any judgment that might be obtained against it because it was misled to believe that it would *not* be facing litigation regarding the amounts at issue in this adversary proceeding.   On a related note, Globe did not disclose the existence of the Debtors' claims in its financial statements or incorporate those potential claims into its budgets and financial projections--again because the Debtors' claims were concealed from Globe.

I declare under penalty of perjury that the foregoing is true and correct.

**FURTHER AFFIANT SAYETH NOT.**

_____
THOMAS CARROLL

SUBSCRIBED AND SWORN TO
BEFORE ME THIS 3i   DAY OF JANUARY 2011

_____
Notary Public

**DENISE MOHLER, Notary Public**
**In and for the State of Ohio**
My Commission Expires September 13, 2015

3

# EXHIBIT D

10/07/2005   10:48     248-655-8360          PURCHASING FAX                    PAGE  02
@002/003

# DELPHI

### Settlement Agreement

This Settlement Agreement (this "Agreement") is entered into as of October 6, 2005 (the "Effective Date") by and between Delphi Corporation (together with its affiliates and subsidiaries, "Delphi") and Globe Motors, Inc. ("Company").

A.    Company supplies various Power Lift Gate Motors (part number 16643234) (the "Parts") to Delphi pursuant to various purchase orders and supply contracts (collectively, the "Purchase Orders").

B.    Company has demanded modified terms from Delphi and has threatened to cease shipments of Parts to Delphi in connection with its demand.

C.    Company is currently Delphi's sole source for the Parts, and Delphi will not able to obtain the Parts from an alternative source in the near term.  As such, even a short supply interruption is likely to result in production shut downs for both Delphi and its OEM customer, Ford.

D.    Delphi and Company disagree as to their respective rights and obligations related to the Purchase Orders.

E.    Delphi and Company believe it to be in their mutual best interests to resolve their dispute amicably by making certain modifications to the Purchase Orders in accordance with this Agreement in order to avoid litigation and to maintain a continuous flow of Parts from Company to Delphi.

Based upon the foregoing recitals and for good and valuable consideration, the receipt and adequacy of which is acknowledged, Delphi and Company agree as follows:

1.    Subject to the modifications set forth herein, all Purchase Orders remain in full force and effect.

2.    With respect to shipments of Parts to Delphi's U.S. locations only, Delphi will pay for Parts on the following terms (the "Modified Terms"):  (a) net-immediate with a unit price discount of [0.a5%] per month based on the current unit pricing effective for shipments starting on October 10, 2005 and continuing through November 30, 2005 and (b) MNS2-2 (without any unit price discount) thereafter.  Company agrees that the Modified Terms constitute adequate assurance under Uniform Commercial Code Section 2-609.    The Modified Terms will not apply to shipments of Parts to Delphi's non-U.S. locations, which shipments will continue to be governed by the terms of the applicable Purchase Orders.

3.    Notwithstanding any intervening change in Delphi's financial situation, Company will continue to supply products to Delphi in accordance with the Purchase Orders and this Agreement and waives any further right to seek adequate assurance or further contract modifications under the Uniform Commercial Code or other applicable laws.

4.    Company will keep the terms of this Agreement together with all related settlement discussions strictly confidential.  Company will disclose the terms of this Agreement only to its management personnel that need to know such information to implement the terms of this Agreement and legal counsel and other advisors with

10/07/05  FRI 10:26  [TX/RX NO 5819]

whom Company has a recognized legal privilege; provided that all such parties have been informed of the confidentiality restrictions contained herein. Company further agrees that it will be responsible and liable for any breach of the confidentiality provisions set forth in this Agreement by its management personnel, legal counsel and other advisors. Company acknowledges that failure to honor the confidentiality provisions contained herein would cause significant economic harm to Delphi. Any discussions by Company with any third parties, including the press or media or consultants, regarding this Agreement and its terms are expressly prohibited.

5.    The parties hereto acknowledge that they are executing this Agreement without duress or coercion and without reliance on any representations, warranties or commitments other than those representations, warranties and commitments expressly set forth in this Agreement.

6.    This Agreement constitutes the entire understanding of the parties in connection with the subject matter hereof. This Agreement may not be modified, altered, or amended except by an agreement in writing signed by Delphi and Company. This Agreement shall be deemed to be incorporated by reference into, and shall be part of, all Purchase Orders without any specific reference to this Agreement in any such Purchase Order. The terms and conditions of the Purchase Orders are amended to include the terms of this Agreement. Should an inconsistency or conflict exist between the express terms of the Purchase Orders and this Agreement, the terms of this Agreement shall govern and control. This Agreement is being entered into among competent persons who are experienced in business and represented by counsel, and has been reviewed by Company and its counsel. Therefore, any ambiguous language in this Agreement will not necessarily be construed against any particular party as the drafter of such language.

7.    This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Michigan, without regard to conflicts of law principles.

EXECUTED as of the Effective Date.

Delphi Corporation

By: _____
Name: _COREY BIVEN_
Title: _SENIOR BUYER_
        10/7/05

Globe Motors

By: _____
Name: _DEREK J. KEEGAN_
Title: _V.P. - MARKETING + SALES_
        OCTOBER 7, 2005.

# DELPHI

*Payment Term Deviation*
*Request Form*

Date: __Oct. 6, 2005__

Subject: Request for Authorization for Deviation: (Check One)
    ☐ Standard Supplier Payment Terms
    ☒ Expedited Payment

From: __Corey Biven__
Position: __Senior Buyer__
Division: __Thermal & Interior__
Location/phone: __Troy, Michigan (248) 655-0724__
To: Sandra Voelker Delphi Supply Management Financial Manager (North America Only)
    Or
    Delphi Regional Financial Director

*Supplier stopped shipments*

The following information is provided to support this request for a deviation from the Delphi Corporate standard supplier payment terms of second day of the second month (MNS-2) or to request an expedited payment. It has been approved and signed (see below) by the Vice President of the requester named above.

| Supplier Information | Contract Information |
|---|---|
| Name*: __Globe Motors, Inc__ | PO #: __550023598__ |
| Address: __2275 Stanley Ave. Dayton, Ohio 45404__ | Contract Source Sys: __SAP__ |
| Phone: __(937) 229-0105__ | Annual Purchase Value: __$1,400,000__ |
| Contact: __Debbie Anderson and Tyler Terrell__ | Wire Transfer Amount: __$181,178.24__ |
| DUNS No.: __181709775__ | Wire Request Form Attached: _____ |
| Remit Duns: | *Include Parent Company Name where applicable |

Description of a commodity purchased or type of business conducted with the supplier:
__DC Motor used for FORD (Poer Tailgate Drive Unit)__

| Payment terms to be changed | Effective date: |
|---|---|
| From: __MNS2-2__   (un) | From: __October 10, 2005__ |
| To: __Net-Immediate, All Payables__ | To: __November 30, 2005__ |

Reason for deviation to standard payment terms: (Reference supplier financial situation, legal ramifications, if any, tax issues etc.)
__Concerns regarding Delphi's financial condition.__

Requester: _____  Date: __October 6, 2005__
    Name:
    Phone No: __248-655-0724__    Fax No: __248-655-8350__

Approved: __Sandra Voelker__  Date: __10/6/05__
    Delphi Supply Management Financial manager (North America Only)
    Or
    Delphi Regional Financial Director

Approved: __W. F. Eagan__  Date: __10-6-05__
    Vice President - Delphi Global Supply Management
    Name Printed

8_3_14_payment_term_deviation_request_form1 **DELPHI CONFIDENTIAL**
Last Printed 10/06/05 2:02 PM    Uncontrolled Copy

-2-