# EXHIBIT 48

# EXHIBIT 48

**Multitronics Inc., Adv. Proc. No.: 07-02436-rdd**

Mtronics.com, Inc., successor by merger to Multitronics, Inc. ("Multitronics"), provided a declaration from Ashok K. Mahbubani, its President and CEO. *Ex. 48(a), July 11, 2011 Declaration of Ashok K. Mahbubani.* Mr. Mahbubani states that "Mtronics had no notice or actual knowledge" of the summons, complaint, or claims before March 29, 2010. *Id. at ¶¶ 7-8.* Mr. Mahbubani also states that "Mtronics did not receive copies of the First Extension Motion, Second Extension Motion, Third Extension Motion, and Fourth Extension Motion . . . at the time they were filed, considered by the Court or granted." *Id. at ¶ 9.*

As Delphi's financial condition deteriorated, the Debtors' payment records show that Multitronics succeeded in capturing nearly $3 million dollars in payments that were not otherwise due. These were not ordinary course payments and Delphi was making significant transfers to Multitronics on non-regular intervals starting on September 12, 2005. *See e.g., Ex. 48(b), September 8, 2005 Settlement Agreement (reflecting that Multitronics demanded modified terms and threatened Delphi with terminating shipments if those demands were not met) and October 6, 2005 Delphi Pre Petition Wire Analysis Review Form.* Multitronics is a sophisticated supplier and the fact that it extracted these payments on the eve of bankruptcy would not have gone unnoticed and Multitronics almost certainly would have known these implications of preference transfers.

Multitronics did receive relevant information advising that avoidance claims had been filed under seal and the time to serve the complaints and summonses had been extended. Multitronics was served with the First Amended Plan Disclosure Statement, filed in December 2007. *Ex. 7, January 11, 2008 Affidavit of Service–Ex. W (Docket No. 11974).* On December

13, 2007, the Debtors filed a copy of the First Amended Plan Disclosure Statement publicly with their Form 8-K (Docket No. 11388). The First Amended Plan Disclosure Statement outlined in detail that preference claims were to be filed under seal, with service deferred until after the limitations period. As this Court discussed during the July 22, 2010 hearing, the Disclosure Statement, combined with the defendants' knowledge that they had in fact received preferential transfers, put the defendants on notice of the preference claim procedures at issue and on inquiry notice as to the need to monitor preference claim developments. *Ex. 8*, *July 22, 2010 Transcript, pp. 150-153*. *See also In re TWA Inc. Post Confirmation Estate*, 305 B.R. 221, 227 (D. Del. 2004) ("[I]n large chapter 11 cases sophisticated creditors typically are well aware of prospects and risks of preference litigation. … Thus, it seems unlikely that creditors could be surprised or caught off guard when such preference complaints are finally filed.").

# EXHIBIT A

BRADLEY ARANT BOULT CUMMINGS LLP
T. Parker Griffin, Jr. (admitted Pro Hac Vice)
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8524
Facsimile: (205) 48-6524
Email: pgriffin@babc.com

*Attorney for Mtronics.com, Inc., successor by merger to Multitronics Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------x

In re:                                              :       Chapter 11
                                                    :       Case No. 05-44481 (RDD)
    DPH HOLDINGS CORP, *et al.*,           :
                                                    :
-------------------------------------------x
                                                    :
DELPHI AUTOMOTIVE SYSTEMS, LLC,                     :
                                                    :
    Plaintiff,                             :       Adv. Pro. No. 07-02500 (RDD)
                                                    :
v.                                                  :
                                                    :
MULTITRONICS INC., and                              :
MTRONICS.COM, INC., successor by merger,            :
                                                    :
    Defendants.                            :
-------------------------------------------x

**DECLARATION OF ASHOK K. MAHBUBANI IN SUPPORT OF MTRONICS.COM, INC.'S OPPOSITION TO REORGANIZED DEBTORS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINTS**

    ASHOK K. MAHBUBANI declares as follows:

2

Pg 6 of 15

1.    I am the Chief Executive Officer and President of Mtronics.Com, Inc., successor by merger to Multitronics, Inc. ("<u>Mtronics</u>"), and have held such positions at all times relevant to this lawsuit.

2.    I have personal knowledge of and am familiar with the day-to-day operations, business, and financial affairs of Mtronics, including, without limitation, Mtronics' relationship and dealings with Delphi Corporation and its affiliates (the "<u>Debtors</u>"). As President and Chief Executive Officer of Mtronics, I have direct and primary responsibility and control over Mtronics' relationship dealings with the Debtors and all litigation, lawsuits and other legal proceedings against Mtronics.

3.    I submit this declaration in further support of Mtronics' opposition to the *Reorganized Debtors' Motion for Leave to File Amended Complaint* and in accordance with this Court's direction at the June 21, 2011 hearing.

4.    I am over the age of 18 years old and I have personal knowledge of the facts set forth herein. If I were called to testify, I could and would testify to the facts set forth herein.

5.    Mtronics first received notice of this lawsuit on or about March 29, 2010, when Mtronics received by certified mail a copy of a Summons dated March 12, 2010 (the "<u>Summons</u>") and a Complaint dated September 26, 2007 (the "<u>Complaint</u>"). The certified mail receipt indicates a mailing date of March 19, 2010.

6.    In the Complaint the Debtors asserted claims against Mtronics in the amount of $5,046,103.44 (the "<u>Claims</u>").

7.    Mtronics had no notice or actual knowledge of the Summons or the Complaint before March 29, 2010.

8.    Mtronics had no notice or actual knowledge of the Claims before March 29, 2010.

3

9. Mtronics did not receive copies of the First Extension Motion, Second Extension Motion, Third Extension Motion, and Fourth Extension Motion (as these terms are defined below) at the time they were filed, considered by the Court or granted. Mtronics later received copies of these motions after it received service of the Summons and Complaint. Mtronics had no notice and no actual knowledge of these motions or the relief requested in these motions before April 2010.

### First Extension Motion and Order

10. My attorney has provided my with a copy of that certain *Expedited Motion For Order Under 11 U.S.C. §§ 102(1)(A), 105(a), 107, 108(a)(2), And 546(a) And Fed. R. Bankr. P. 7004, 9006(c), and 9018 (i) Authorizing Debtors to Enter Into Stipulations Tolling Statute of Limitations With Respect to Certain Claims, (ii) Authorizing Procedures to Identify Causes of Action That Should Be Preserved, And (iii) Establishing Procedures For Certain Adversary Proceedings Including Those Commenced By Debtors Under 11 U.S.C. § 541, 544, 545, 547, 548, or 553* [Docket No. 8905, Lead Bankruptcy] (the "First Extension Motion") filed by the Debtors on or about August 6, 2007, and a copy of the corresponding *Affidavit of Service* filed on or about August 10, 2007 [Docket No. 9039, Lead Bankruptcy] (the "First Extension Motion Affidavit of Service"). I have reviewed both the First Extension Motion and the First Extension Motion Affidavit of Service. Mtronics does not appear in the service list contained in the First Extension Motion Affidavit of Service. Mtronics did not receive a copy of the First Extension Motion from the Debtors. Mtronics had no notice or knowledge of the First Extension Motion before it was granted. Mtronics first received notice of the First Extension Motion after Mtronics' receipt of the Summons and Complaint.

4

11. My attorney has provided me with a copy of the Order dated August 16, 2007 [Docket No. 9105, Lead Bankruptcy] (the "First Extension Order"), pursuant to which the Court granted the First Extension Motion, and a copy of the corresponding *Affidavit of Service* filed on or about August 23, 2007 [Docket No. 9141, Lead Bankruptcy] (the "First Extension Order Affidavit of Service"). I have reviewed both the First Extension Order and the First Extension Order Affidavit of Service. Mtronics does not appear in the service list contained in the First Extension Order Affidavit of Service. Mtronics did receive a copy of the First Extension Order from the Debtors. Mtronics first received notice of the First Extension Order after Mtronics' receipt of the Summons and Complaint.

### Second Extension Motion and Order

12. My attorney has provided me with a copy of that certain *Motion Pursuant to Fed. R. Bankr. P. 7004(a) and 9006(b)(1) and Fed. R. Civ. P. 4(m) to Extend Deadline to Serve Process for Avoidance Actions Filed in Connection With Preservation of Estate Claims Procedures Order* [Docket No. 12922, Lead Bankruptcy] (the "Second Extension Motion") filed by the Debtors on or about February 28, 2008, and a copy of the corresponding *Affidavit of Service* filed on or about March 4, 2008 [Docket No. 12970, Lead Bankruptcy] (the "Second Extension Motion Affidavit of Service"). I have reviewed both the Second Extension Motion and the Second Extension Motion Affidavit of Service. Mtronics does not appear in the service list contained in the Second Extension Motion Affidavit of Service. Mtronics did not receive a copy of the Second Extension Motion from the Debtors. Mtronics had no notice or knowledge of the Second Extension Motion before it was granted. Mtronics first received notice of the Second Extension Motion after Mtronics' receipt of the Summons and Complaint.

13. My attorney has also provided me with a copy of the Order dated March 28, 2008 [Docket No. 13277, Lead Bankruptcy] (the "Second Extension Order"), pursuant to which the Court granted the Second Extension Motion, and a copy of the corresponding *Affidavit of Service* filed on or about April 1, 2008 [Docket No. 13313, Lead Bankruptcy] (the "Second Extension Order Affidavit of Service"). I have reviewed both the Second Extension Order and the Second Extension Order Affidavit of Service. Mtronics does not appear in the service list contained in the Second Extension Order Affidavit of Service. Mtronics received a copy of the Second Extension Order from the Debtors on or about April 16, 2010. However, Mtronics did not have notice or knowledge of the Second Extension Order until after Mtronics' receipt of the Summons and Complaint.

### Third Extension Motion

14. My attorney has provided me with a copy of that certain *Motion Pursuant to Fed. R. Bankr. P. 7004(a) and 9006(b)(1) and Fed. R. Civ. P. 4(m) to Extend Deadline to Serve Process for Avoidance Actions Filed in Connection With Preservation of Estate Claims Procedures Order* [Docket No. 13361, Lead Bankruptcy] (the "Third Extension Motion") filed by the Debtors on or about April 10, 2008, and a copy of the corresponding *Affidavit of Service* filed on or about April 16, 2008 [Docket No. 13415, Lead Bankruptcy] (the "Third Extension Motion Affidavit of Service"). I have reviewed both the Third Extension Motion and the Third Extension Motion Affidavit of Service. Mtronics did not receive a copy of the Third Extension Motion from the Debtors. Mtronics had no notice or knowledge of the Third Extension Motion before it was granted. Mtronics first received notice of the Third Extension Motion after Mtronics' receipt of the Summons and Complaint.

6

15. My attorney has provided me with a copy of the Order dated April 30, 2008 [Docket No. 13484, Lead Bankruptcy] (the "Third Extension Order"), pursuant to which the Court granted the Third Extension Motion, and a copy of the corresponding *Affidavit of Service* filed on or about May 6, 2008 [Docket No. 13540, Lead Bankruptcy] (the "Third Extension Order Affidavit of Service"). I have reviewed both the Third Extension Order and the Third Extension Order Affidavit of Service. Mtronics does not appear in the service list contained in the Third Extension Order Affidavit of Service. Mtronics received a copy of the Third Extension Order from the Debtors on or about April 16, 2010. However, Mtronics did not have notice or knowledge of the Third Extension Order until after Mtronics' receipt of the Summons and Complaint.

### Fourth Extension Motion and Order

16. My attorney has provided me with a copy of that certain *Supplemental Motion Pursuant to Fed. R. Bankr. P. 7004(a) and 9006(b)(1) and Fed. R. Civ. P. 4(m) to Extend Deadline to Serve Process for Avoidance Actions Filed in Connection With Preservation of Estate Claims Procedures Order* [Docket No. 18952, Lead Bankruptcy] (the "Fourth Extension Motion") filed by the Debtors on or about October 2, 2009, and a copy of the corresponding *Affidavit of Service* filed on or about October 7, 2009 [Docket No. 18967, Lead Bankruptcy] (the "Fourth Extension Motion Affidavit of Service"). I have reviewed both the Fourth Extension Motion and the Fourth Extension Motion Affidavit of Service. Mtronics does not appear in the service list contained in the Fourth Extension Motion Affidavit of Service. Mtronics did not receive a copy of the Fourth Extension Motion from the Debtors. Mtronics had no notice or

knowledge of the Fourth Extension Motion before it was granted. Mtronics first received notice of the Fourth Extension Motion after Mtronics' receipt of the Summons and Complaint.

17. My attorney has provided me with a copy of the Order dated October 22, 2009 [Docket No. 18999, Lead Bankruptcy] (the "Fourth Extension Order"), pursuant to which the Court granted the Fourth Extension Motion. I have reviewed the Fourth Extension Order. Mtronics received a copy of the Fourth Extension Order from the Debtors on or about April 16, 2010. However, Mtronics did not have notice or knowledge of the Fourth Extension Order until after Mtronics' receipt of the Summons and Complaint.

I declare under penalty of perjury that the foregoing is true and correct.

Executed:   July 11, 2011
            Huntsville, AL                    _____
                                              Ashok K. Mahbubani

# EXHIBIT B

## Settlement Agreement

This Settlement Agreement (this "Agreement") is entered into as of September 8, 2005 (the "Effective Date") by and between Delphi Corporation (together with its affiliates and subsidiaries, "Delphi") and Mtronics.Com, Inc. ("Company").

A.  Company supplies various headphones kits and heatsink assemblies (the "Parts") to Delphi pursuant to various purchase orders and supply contracts (collectively, the "Purchase Orders").

B.  Company has demanded modified terms from Delphi and has threatened to cease shipments of Parts to Delphi in connection with its demand].

C.  Company is currently Delphi's sole source for the Parts, and Delphi will not be able to obtain the Parts from an alternative source in the near term. As such, even a short supply interruption is likely to result in production shut downs for both Delphi and its OEM customer, Ford, Hyundai, and Kia.

D.  Delphi and Company disagree as to their respective rights and obligations related to the Purchase Orders.

E.  Delphi and Company believe it to be in their mutual best interests to resolve their dispute amicably by making certain modifications to the Purchase Orders in accordance with this Agreement in order to avoid litigation and to maintain a continuous flow of Parts from Company to Delphi.

Based upon the foregoing recitals and for good and valuable consideration, the receipt and adequacy of which is acknowledged, Delphi and Company agree as follows:

1.  Subject to the modifications set forth herein, all Purchase Orders remain in full force and effect.

2.  With respect to shipments of Parts to Delphi's U.S. locations only, Delphi will pay for Parts on the following terms (the "Modified Terms"): (a) net 7 days with a unit price discount of 1.5% per month based on the current unit pricing effective for shipments starting on September 8, 2005 and continuing through November 15, 2005 and (b) unless there occurs a material adverse change in the financial situation at Delphi MNS2-2 (without any unit price discount) thereafter. Company agrees that the Modified Terms constitute adequate assurance under Uniform Commercial Code Section 2-609. The Modified Terms will not apply to shipments of Parts to Delphi's non-U.S. locations, which shipments will continue to be governed by the terms of the applicable Purchase Orders.

3.  Unless there occurs a material adverse change in Delphi's current financial situation, Company will continue to supply products to Delphi in accordance with the Purchase Orders and this Agreement and waives any further right to seek adequate assurance or further contract modifications under the Uniform Commercial Code or other applicable laws.

4. Company will keep the terms of this Agreement together with all related settlement discussions strictly confidential. Company will disclose the terms of this Agreement only to its management personnel that need to know such information to implement the terms of this Agreement and legal counsel and other advisors with whom Company has a recognized legal privilege; provided that all such parties have been informed of the confidentiality restrictions contained herein. Company further agrees that it will be responsible and liable for any breach of the confidentiality provisions set forth in this Agreement by its management personnel, legal counsel and other advisors. Company acknowledges that failure to honor the confidentiality provisions contained herein would cause significant economic harm to Delphi. Any discussions by Company with any third parties, including the press or media or consultants, regarding this Agreement and its terms are expressly prohibited.

5. The parties hereto acknowledge that they are executing this Agreement without duress or coercion and without reliance on any representations, warranties or commitments other than those representations, warranties and commitments expressly set forth in this Agreement.

6. This Agreement constitutes the entire understanding of the parties in connection with the subject matter hereof. This Agreement may not be modified, altered, or amended except by an agreement in writing signed by Delphi and Company. This Agreement shall be deemed to be incorporated by reference into, and shall be part of, all Purchase Orders without any specific reference to this Agreement in any such Purchase Order. The terms and conditions of the Purchase Orders are amended to include the terms of this Agreement. Should an inconsistency or conflict exist between the express terms of the Purchase Orders and this Agreement, the terms of this Agreement shall govern and control. This Agreement is being entered into among competent persons who are experienced in business and represented by counsel, and has been reviewed by Company and its counsel. Therefore, any ambiguous language in this Agreement will not necessarily be construed against any particular party as the drafter of such language.

7. This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Michigan, without regard to conflicts of law principles.

EXECUTED as of the Effective Date.

| Delphi Corporation | Mtronics.Com, Inc. |
|---|---|
| By:_____ | By:_____ |
| Name:_____ | Name:_____ |
| Title:_____ | Title:_____ |

# Delphi
## Pre Petition Wire Analysis Review Form

| Index Number | Source | Vendor Name | Remit Duns | Date | Amount |
|---|---|---|---|---|---|
| 492 | Wire Room | MultiTronics Inc | RD 183241454 | 10/6/05 | $1,316,850.39 |

Copy and Paste the First Six Columns of the Pre-petition Wire File to the Table above.

What was intent of wire made above?    (Place X in the most appropriate box below)

To Pay for Shipments Prior to Wire:  ✓   [X]

To Pay for Shipments Subsequent to Wire:  [ ]

To Pay for Shipments both Prior & Subsequent:  [ ]

Unknown Intent:  [ ]

Please **attach** documentation in support of the above assessment of intent. Documentation may include but is not limited to the following types of documentation:

- Email correspondence indicating intent for wire
- Detail lists of invoices/shipments that are being remitted
- Letters/notes/memos indicating intent for wire
- Meeting/Phone conversation minutes that indicate intent
- E-Dacor listings indicating amount due at date of wire that match wire amounts
- Terms deviation requests that indicate wire amount and intent for wire