Hearing Date: September 22, 2011 at 10 a.m. (EDT)
Response Date: September 15, 2011

BUTZEL LONG, a professional corporation
150 West Jefferson, Suite 100
Detroit, MI  48226
(313) 225-7000

Cynthia J. Haffey
Thomas B. Radom
Chester E. Kasiborski, Jr.
*Attorneys for Reorganized Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| DPH HOLDINGS CORP., *et al.,* | Case No. 05-44481 (RDD) |
|  | Jointly Administered |
| Reorganized Debtors. | |

## REORGANIZED DEBTORS' RESPONSE IN OPPOSITION TO AMENDED MOTION FOR RECOUPMENT ON BEHALF OF DELPHI SALARIED RETIREES

DPH Holdings Corp. and certain of its affiliated reorganized debtors in the above-captioned cases (collectively, the "Reorganized Debtors"), for their response in opposition to the Amended Motion for Recoupment On Behalf of Delphi Salaried Retirees (the "Motion"), state as follows:

## OVERVIEW

1. In a convoluted and, in any event, frivolous, *pro se* motion, the movant, James B. Sumpter ("Sumpter"), seeks to recover between $68 million and $145 million for himself and the universe of Delphi salaried retirees based on an alleged (and mislabeled) recoupment claim, that

was fully and finally disposed of over two years ago under the Court's April 2, 2009 Salaried OPEB Settlement Order and otherwise extinguished and discharged under the Debtors' Modified Plan and the Court's July 30, 2009 Plan Modification Order.[1]

2. Even if the motion were not barred by the *res judicata* effect of the OPEB Settlement Order and the Plan Modification Order, the Motion is fundamentally flawed because there have been no overpayments or shortages of payments in connection with OPEB to Delphi salaried retirees. Offsets or reductions against OPEB because of third party payments received by retirees were entirely appropriate and based on the applicable provisions of the plan documents governing the employee benefits.

3. Procedurally, the Motion is also patently defective because it fails to state any authority to authorize or permit Sumpter to represent any persons other than himself.

4. Sumpter is no stranger to these proceedings. He was appointed by the U.S. Trustee to, and served for period of time on, the Official Committee of Retired Salaried Employees ("Retirees' Committee"), the very committee that represented all Delphi Salaried Retirees in connection with the OPEB Settlement. He personally authored and filed two previous motions that were denied[2] and he filed two administrative expense claims (Numbers 18620 and 18621), both of which were disallowed and expunged.[3]

---

[1] Capitalized terms are defined below.

[2] On July 10, 2006, Sumpter filed his Expedited Motion To Enforce COBRA Benefits For Salaried Retirees And Motion For COBRA Settlement ("COBRA Settlement Motion") (Docket No. 18366) which was denied by this Court's Order entered on August 3, 2009 on the grounds that the COBRA Benefit Motion was moot (Docket No. 18723). On June 13, 2011, Sumpter filed his motion entitled Request For Stay Of Court Order And Related Proceedings Regarding Of VEBA In Lieu Of COBRA (Docket No. 21306 and Docket No. 21308) which was denied by this Court's Order entered on June 27, 2011 (Docket No. 21415).

[3] On December 2, 2009, the Sumpter Administrative Claims were disallowed and expunged by this Court's Order Pursuant to U.S.C. § 503(B) And Fed. R. Bankr. P. 3007 To Expunge Certain (I) Prepetition Claims, (II) Equity Interests, (III) Books And Records Claims, (IV) Untimely Claims, (V) Paid Severance Claims, (VI) Pension, Benefit And OPEB Claims, And (VII) Duplicative Claims ("Thirty-Seventh Omnibus Claims Objection Order") (Docket No. 19135).

5. Sumpter has cost the Reorganized Debtors substantial legal expense to defend against his *pro se* motions or claims that have no merit and this Motion is no exception. Consequently, in addition to the Court denying the Motion, the Reorganized Debtors request that the court exercise its equitable powers and permanently enjoin Sumpter from any further attempts to assert claims that relate in any way relate to the OPEB Settlement.

## RELEVANT FACTS

6. On October 8 and 14, 2005, Delphi Corporation and certain of its affiliates, former debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), predecessors of the Reorganized Debtors, filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended.

7. At the inception of the chapter 11 cases, the Debtors maintained, among other things, health, disability and life insurance benefit plans for their retirees (commonly referred to as "other post-retirement benefits" or "OPEB"). These plans all provided for various offsets or reductions in the amount of benefits payable by the Debtors based on government subsidies, third party payments or other payments a Delphi employee may receive. Examples would be social security disability benefits or workers' compensation payments paid directly to the employee. In any case, the purpose was to avoid the employee collecting twice on the same claim at the expense of the Debtors.

8. On February 4, 2009, the Debtors filed a Motion seeking this Court's approval to cease contributions to certain welfare benefit plans for salaried employees, retirees and their spouses after March 31, 2009 (the "Salaried OPEB Termination Motion") (Docket No. 14705). Approximately 1,633 objections were filed in opposition to the Salaried OPEB Termination Motion. *See the Revised Proposed Fortieth Omnibus Hearing Agenda, Exhibits A – C*. (Docket

3

No. 16326).  Sumpter, individually (Docket No. 14898), and three groups of retirees, including the Delphi Salaried Retirees' Association ("the Association"), were among those objecting.

9.   At a hearing held on February 24, 2009 in connection with the Salaried OPEB Termination Motion, this Court determined, among other things, that Debtors could terminate unvested retiree welfare benefits without following the procedures set forth in Section 1114 of the Bankruptcy Code and on February 25, 2009 entered the Provisional Salaried OPEB Termination Order (Docket No. 16380).  Among other things, that Order directed the U.S. Trustee to appoint members to the Retirees' Committee for limited purposes as described in Paragraph 8 of the Order.  The U.S. Trustee was also ordered to limit the solicitation of persons for membership on the Retirees' Committee to parties who appeared at the hearing on the Salaried OPEB Termination Motion.  The Provisional Salaried OPEB Termination Order also authorized Debtors to reimburse the Retirees' Committee for up to $200,000.00 in attorney fees.

10.  Sumpter was appointed to the Retirees' Committee by the U.S. Trustee, but subsequently resigned.  See Final Report of The Official Committee of Retired Salaried Employees Pursuant to 11 U.S.C. §1114 (d) And Request for Instructions, at Paragraph 4 (Docket No. 20527, and then refiled Docket No. 20617).

11.  On March 11, 2009, after discovery and an additional hearing, the Court entered its Final OPEB Termination Order (Docket No. 16448).

12.  On March 4, 2009, the Association filed an appeal with the United States District Court for the Southern District of New York ("the District Court") from the Provisional OPEB Termination Order (Docket No. 16404).  On March 13, 2009 the Retirees' Committee filed an appeal with the District Court from the Final OPEB Termination Order (Docket No. 16458).

4

13.     Subsequently, the Retirees' Committee and the Association reached an agreement with Debtors relative to the terms of the Final OPEB Termination Order ("the Settlement"). Among other things, under the Settlement, the Debtors agreed to pay $8,750,000.00 in subsidy payments to the Retirees' Committee for the benefit of salaried retirees and the Association and reimburse the Retirees' Committee and the Association an additional $250,000 in attorneys' fees, and the Retirees' Committee and the Association agreed to dismiss their appeals.

14.     On April 2, 2009 this Court entered its Salaried OPEB Settlement Order (Docket No. 16545) which approved the Settlement.

15.     On June 16, 2009, this Court entered an Order (A) (I) Approving Modifications to Debtors' First Amended Plan of Reorganization (as Modified) and Related Disclosures and Voting Procedures and (II) Setting Final Hearing Date to Consider Modifications to Confirmed First Amended Plan of Reorganization and (B) Setting Administrative Expense Claims Bar Date and Alternative Transaction Hearing Date ("the Modification Procedures Order") (Docket No. 17032).  The Modification Procedures Order provided, in pertinent part that: (i) July 15, 2009 (the "Administrative Claim Bar Date") serve as the deadline for all creditors holding administrative expense claims for the period from the commencement of the chapter 11 case in October, 2005 through June 1, 2009 to file such a claim on an Administrative Expense Claim Form. The Modification Procedures Order also set July 15, 2009 as the deadline to object to confirmation of the Modified Plan.

16.     Sumpter received timely service of the Final Modification Hearing Notice, the Administrative Claim Bar Notice and an Administrative Expense Claim Form.  *See Affidavit of Service filed on June 23, 2009 at p. 4 and Exhibit U (Part 5), p. 3928* (Docket No. 17267).

5

17. On July 14, 2000, Sumpter filed Administrative Expense Claim Number 18620 requesting a pay out on a life insurance policy and Administrative Expense Claim 18621 requesting lifetime COBRA payments (collectively, the "Sumpter Administrative Claims"). Sumpter did not file an administrative expense claim relating to the so-called recoupment claim set forth in his Motion. The Sumpter Adminstrative Claims were disallowed and expunged. See fn. 3, above.

18. On July 30, 2009, this Court entered its Order Approving Modifications under 11 U.S.C. § 1127(b) To (I) First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified And (II) Confirmation Order (Docket No. 12359) (the "Plan Modification Order") (Docket No. 18707), which approved the Debtors' First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (As Modified) (The "Modified Plan"). Article 11.14 of the Modified Plan provides:

> Subject to Article 11.13 of this Plan, the satisfaction, release and discharge pursuant to Article XI shall act as an injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim, Interest, or Cause of Action satisfied, release, or discharged under this Plan to the fullest extent authorized or provided by the Bankruptcy code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof.

See Docket No. 18707, Ex. A, Art. 11.14.

19. Similarly, the Plan Modification Order provides:

> Except as otherwise specifically provided in the Modified Plan, the MDA Documents, or this order and except as may be necessary to enforce or remedy a breach of the Modified Plan, the Debtors and all Persons shall be precluded and permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any Claim, action, employment of process, or other proceeding of any kind with respect to any Claim,

6

>Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, (b) the enforcement, attachment, collection, offset, <u>recoupment</u>, or recovery by any manner or means of any judgment, award, decree, order, or otherwise with respect to any Claim interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, (c) creating, perfecting, or enforcing any encumbrance of any kind and with respect to any Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior the Effective Date, and (d) asserting any Claims, Interests, or Causes of Action that are satisfied, discharged, released, or subject to exculpation hereby or by the Modified Plan. (*emphasis added*)

See Docket No. 18707, ¶ 22.

20. On October 6, 2009, the Modified Plan became effective.

## **SUMPTER'S CLAIM**

21. Sumpter asserts that he and other salaried retired employees are entitled to repayment for all of the offsets (dating back to 1999) because the Debtors terminated or significantly modified their OPEB obligations in connection with the bankruptcy proceedings. Sumpter asserts that due to the Debtors' cutbacks and the increased cost of health care and Medicare premiums, the OPEB benefits are now costing retirees more out of pocket dollars than originally anticipated. He asks that, in light of such hardships, (i) the Reorganized Debtors should not be entitled to the offsets which have always been part of the underlying benefits provided, and (ii) the offsets constitute overpayments that should be returned to the salaried retirees. What Sumpter is asserting, therefore, is not a claim for recoupment (as discussed below) but, rather a claim for payment of all of the offsets or reduction in payments which Sumpter now characterizes as overpayments. Further, any future offsets (such as monthly

7

benefit offsets for social security disability) should be canceled so the retirees can receive an unreduced benefit.[4]

## ARGUMENT

**A.    The Final OPEB Termination Order, as supplemented and amended by The Salaried OPEB Settlement Order, Renders Sumpter's Claim Barred and Unenforceable Under the Doctrine of *Res Judicata***

22.    The Provisional and Final OPEB Termination Orders found, after extensive hearings and after considering a multitude of objections, that Debtors <u>were</u> <u>authorized</u> to terminate OPEB to salaried retirees.  Neither of those Orders, nor the OPEB Settlement Order, restricted Debtors' right to continue to make the offsets and reductions for third party payments complained of in the Motion or granted salaried retirees the right to recover any offsets made by the Debtors.  Sumpter was aware of all proceedings relating to the Salaried OPEB Termination Motion and its resolution.  The Orders became final and binding.  "Under the doctrine of *res judicata*, ….a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action, not just those that were actually litigated." *Caldwell v. Gutman, Mintx, Baker & Sonnenfeldt,* 701 F. Supp. 2d 340, 351 (E.D.N.Y. 2010)(internal quotations and citations omitted).  Accordingly, Sumpter is barred as a matter of *res judicata* from re-litigating the OPEB Termination Motion or otherwise attacking the Final OPEB Termination Order or otherwise raising this "recoupment" claim.

---

[4] For example, the Motion alleges:  "This motion affects the dischargeability of a debt in that this recoupment motion seeks to determine the proper liability as it relates to the discharge of Salaried Retiree OPEB benefits…" (¶14); "…the discharge of Delphi's OPEB liabilities created an overpayment by DSRs which continues to accrue…" (¶16(d)(iii), p. 10); "…Debtors [sic] discharge of its OPEB obligations to Salaried Retirees has created an overpayment by the DSRs and the sub-class of DDSRs." (¶28); and "…the significant hardship to Disabled Retirees… resulted from the discharge of Delphi's OPEB liabilities." (p. 17).

8

### B. Sumpter's Self-Styled "Recoupment" Claim was Extinguished and Discharged under the Modified Plan and the Plan Modification Order

23. It is well established that confirmation of a chapter 11 plan discharges any and all debts of the debtor which arose prior to confirmation, in accordance with the plan and the Bankruptcy Code. 11 U.S.C. § 1141(d) (1). The Bankruptcy Code provides, in pertinent part:

> (c) Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of the plan, the property dealt with by the plan is free and clear of all claims and interests of creditors…
>
> (d) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—
>
> (A) discharges the debtor from any debt that arose before the date of such confirmation and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not—
>
> (i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;
>
> (ii) such claim is allowed under section 502 of this title…

11 U.S.C. § 1141(c) and (d)(1).

24. On July 30, 2009, this Court entered the Plan Modification Order. By entry of the Plan Modification Order, (i) the Reorganized Debtors were discharged of, among other things, all Claims and Causes of Action, whether known or unknown, <u>including claims for recoupment;</u> (ii) all retained assets of the Reorganized Debtors revested in the Reorganized Debtors free and clear of all Claims of creditors; and (iii) all Persons (as that term is defined in the Plan) were permanently enjoined ("Plan Injunction") from, among other things, "commencing…in any manner any Claim, Interest, Cause of Action or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date" of the Plan. *See Plan Modification Order, ¶¶ 20 and 22*.

9

25.     The effect of the Reorganized Debtors' discharge is set forth in section 524(a) of the Bankruptcy Code, which operates as a permanent injunction against the commencement or continuation of any action to recover discharged claims against the Reorganized Debtors. Specifically, 11 U.S.C. § 524(a)(2) provides:

> (a)     A discharge in a case under this title –
> …..
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

26.     While Sumpter identifies his request as one for recoupment, the term recoupment is a misnomer. Sumpter's Motion seeks alleged overpayments created by the discharge of Debtors' OPEB obligations to salaried retirees, which occurred on March 11, 2009 pursuant to the Final OPEB Termination Order. The Motion also seeks alleged overpayments made as early as May 31, 1999 (See ¶ 32). Sumpter requests this Court to issue an order compelling the Reorganized Debtors to pay over to him and the other salaried retirees all the offsets taken since 1999. While the Reorganized Debtors are cognizant of the general rule that recoupment is not a "claim" within the meaning of the Bankruptcy Code (*see e.g., In re Harmon*, 188 B.R. 421, 425 (B.A.P. 9th Cir. 1995), Sumpter's claim is indisputably a claim for payment and, thus, falls squarely within the definition of "Claim" under §101(5) of the Bankruptcy Code. *See, also, In re King's Terrace Nursing Home,* 184. B.R. 200, 203 (S.D.N.Y. 1995)("Given that there is no right to recoupment unless the party claiming recoupment has some underlying right to recover, directly or indirectly, against the party from whom recoupment is sought, an alleged right to recoupment unquestionably is a "Claim" with the meaning of the Code.")

10

27. Consequently, the alleged debt Sumpter has asserted arose <u>before</u> the date of the plan confirmation. Therefore, under the Plan Modification Order and the Bankruptcy Code, all claims asserted by Sumpter in the Motion have been discharged and Sumpter is permanently enjoined from prosecuting such claims against the Reorganized Debtors.

28. Further, irrespective of whether Sumpter's claim could be deemed a claim for recoupment, the Modified Plan and Plan Modification Order prohibits a creditor from exercising any right or claim of recoupment arising before the Effective Date of the Modified Plan. Sumpter received actual notice of the objection deadline to confirmation of the Modified Plan and failed to file an objection. Further, despite receiving actual notice of the Administrative Claims Bar Date, Sumpter failed to file by the Administrative Claim Bar Date proof of an administrative expense claim for the alleged overpayments made during the postpetition period or take any other action prior to confirmation of the Modified Plan to preserve his alleged recoupment claim. As a consequence, Sumpter, like all other creditors, became bound by the provisions of the Plan and Plan Modification Order which prohibited the exercise of any recoupment based on pre-confirmation claims. *See Daewoo International (America) Corp. Creditor Trust v. SSTS America Corp. et. al.*; 2003 U.S. Dist. LEXIS 9802 at p.7 (D.C. S.D. N.Y. 2003 (" …in this case, because SSTS was provided sufficient notice to object to the plan's prohibition on recoupment and because it did not do so in a timely fashion before the Bankruptcy Court, we will not allow it to do so now."); *See also, In re King's Terrace Nursing Home, supra,* where the court wrote:

> The broad definition of "claim" in Section 101(5) performs a vital role in the reorganization process by requiring, in conjunction with the bar date, that all those with a potential call on the debtor's assets, provided the call in at least some circumstances could give rise to a suit for payment, see *In re Chateaugay Corp.,* 944 F.2d at 1003, come before the reorganization court so that

11

>those demands can be allowed or disallowed and their priority and dischargeability determined.  This is important even with respect to valid claims for equitable recoupment, despite their usual survival of plan confirmation, because the existence of such claims, like the existence of other non-dischargeable debts, can have a significant impact on the necessary determination of whether a proposed plan is feasible.  [citations omitted]  To allow a creditor such as DSS to stand outside the process of reorganization and later assert its right to recoupment thus would frustrate an important policy underlying the Code by undermining and, in some circumstance, destroying the utility and reliability of the bankruptcy judge's feasibility determination.  At least in some circumstances, it would be impossible for a judge to determine accurately whether a proposed plan would create a viable reorganized company or, instead, an entity ripe for another bankruptcy precipitated by the absent creditor.

184 B.R. at 204.

### C. General Principles of Law Do Not Afford Sumpter the Right of Recovery Under A Claim of Recoupment

29. The Motion is based upon a fundamental misunderstanding of the doctrine of recoupment.  Recoupment does not provide a remedy but "…is in the nature of defense arising out of some feature of the transaction upon which the plaintiff's action is grounded." *Bull v. United States*, 295 U.S. 247, 262; 79 L. Ed. 1421; 55 S. Ct. 695 (1935).  See, also: *In re Drexel Burnham Lambert Group, Inc.*, 113 B.R. 830, 854 (Bankr. S.D.N.Y. 1990) ("In the absence of a statute to the contrary, recoupment is purely defensive, or in the nature of a common-law defense, and not a separate cause of action or weapon of offense [citations omitted]."); *Brown v General Motors Corporation,* 152 B.R. 935, 938 (W.D. Wis. 1993) ("Recoupment is only a challenge to the validity and extent of the plaintiff's claim, and no recovery is permitted [citations omitted]"); and *In re Bram*, 179 B.R. 824, 826 and 827 (Bankr. E.D. Tex. 1995) ("Recoupment…is asserted for the purpose of reducing or extinguishing a debt arising from the

same transaction;" "…under the doctrine of recoupment, no affirmative recovery may be permitted.")

30.    Therefore, if, for argument purposes only, Debtors (or Reorganized Debtors) had commenced an action against Sumpter for monies owing to them on account of retiree benefits provided, then theoretically Sumpter could have sought to reduce (or eliminate) the amount of Debtors' recovery by arguing that he was entitled to recoup alleged overpayments. But, this is not what has occurred.

31.    In support of his Motion, Sumpter cites an unreported opinion rendered by the United States Bankruptcy Court for the Northern District of Iowa in the matter of *Deere & Company v. Rebel Saffold*, Adv. Pro. No. L-89-0198W. In that case, Deere, the employer, had a pension plan which offered a monthly early retirement supplement for eligible retirees. The Deere pension plan provided that the supplement would be reduced by up to $300/month if the early retiree became eligible for an unreduced social security benefit. The provision was intended to avoid duplication of payments because the monthly amount <u>supplemented</u> the pension until social security kicked in since the early retiree had not yet become entitled to social security payments. Saffold retired in 1977 at age 46 and began receiving the early retirement supplement. In 1983, he began receiving an unreduced social security benefit prior to age 65 since he was disabled, but he never told Deere he was receiving Social Security benefits. Under the terms of the Deere pension plan, Saffold was overpaid from 1983-1988. Deere sued to recoup the overpayment and was successful; it being well established under case law and IRS guidance that an employer can offset future payments to recoup prior <u>overpayments</u> to an employee or former employee. Notwithstanding, Sumpter nevertheless argues, in an inexplicable leap of logic, that the *Deere* case supports his claim that the Debtors were overpaid

13

and retirees can now recoup the overpayments. There is no connection between the *Deere* case and Sumpter's claim.

32. In sum, the doctrine of recoupment may not be relied upon for an affirmative recovery. The Motion fails to identify any other theory of recovery. Accordingly, the Motion can be denied on this narrow ground as well.

### D. The Statute of Limitations Argument Is Based Upon The Misunderstanding Of Recoupment

33. The Motion incorrectly argues that because it invokes the doctrine of recoupment, it "…is not subject to any statute of limitations." It is true that the statute of limitations does not preclude a defendant from raising the right to recoupment where recoupment is asserted as a defense and the "main action itself is timely." *Bull, supra,* 295 U.S. at p. 262. See also *In re MidAtlantic Fund*, 60 B.R. 604, 610 (Bankr. S.D.N.Y., 1986) ("The ultimate purpose of a limitation law is to bar actions rather than to suppress or deny matters of defense. Hence, as a general rule, limitation statutes are not applicable to defenses, but apply only where affirmative relief is sought.") However, that principle is completely inapplicable here where recoupment has not been raised as a defense to an action instituted against Sumpter by Debtors but has been invoked by Sumpter for affirmative relief.

### E. The Motion As To All Other Retirees Should Be Denied Because Sumpter Fails To Present Any Authority That He Represents Other Salaried Retirees

34. Sumpter purports to represent all other salaried retirees. He does so even though he has not (i) filed a verified statement, as required by Fed. R. Bankr. P. 2019, that, among other things, identifies the name and address of each and every creditor he purports to represent; or (ii) submitted a power of attorney evidencing his authority to act as agent or attorney in fact for all other salaried retirees as required by Fed. R. Bankr. P. 9010(c).

35. Given the absence of any required filings or submissions to evidence Sumpter's authority to represent all other salaried retirees, his motion as it relates to all other salaried retirees fails and a denial of the motion is warranted.

## **CONCLUSION**

36. For all of the reasons set forth above, the Motion should be denied. The Motion also violates Fed. R. Bankr. P. 9011 because it is frivolous and has caused Reorganized Debtors to incur unnecessary costs and attorney fees. At a minimum, the court should permanently enjoin Sumpter from filing any further motions or papers that seek to challenge or modify OPEB based on the OPEB Termination Orders.

WHEREFORE, the Reorganized Debtors request that this Court enter an Order: (a) denying the Motion; and (b) granting them such other and further relief as requested herein or to which they are entitled.

Dated: Detroit, MI
September 15, 2011

BUTZEL LONG

By: /s/ Cynthia J. Haffey
Cynthia J. Haffey
Thomas B. Radom
Chester E. Kasiborski, Jr.
150 West Jefferson Avenue, Suite 100
Detroit, MI 48226
(313) 225-7000

Attorneys for Reorganized Debtors

BUTZEL LONG, a professional corporation
150 West Jefferson, Suite 100
Detroit, MI 48226
(313) 225-7000

Cynthia J. Haffey
Thomas B. Radom
Chester E. Kasiborski, Jr.
*Attorneys for Reorganized Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | ) ) ) Chapter 11 |
| DPH HOLDINGS CORP., *et al.,* | ) ) Case No. 05-44481 (RDD) ) Jointly Administered |
| Reorganized Debtors. | ) ) ) |

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2011, a true and correct copy of the Reorganized Debtors' Response in Opposition to Amended Motion for Recoupment on Behalf of Delphi Salaried Retirees ("Response to Salaried Retirees' Recoupment Motion") was served by Electronic Mail to the following person at the following e-Mail address:

James B. Sumpter, Pro Se
21169 Westbay Circle
Noblesville, IN 46062
Ph: (317) 877-0736
Fax: (317) 877-1070
e-Mail: jsump@ieee.org


Dated: Detroit, Michigan                    /s/ Alexis L. Richards
       September 15, 2011                   Alexis L. Richards

#1287511 v1