# EXHIBIT B

# SETTLEMENT AGREEMENT

Laneko Engineering Co., for itself and on behalf of all of its affiliated companies (collectively "Laneko"), and Delphi Automotive Systems, LLC, for itself and on behalf of its division, Delphi Thermal & Interior Systems (collectively, "Delphi") enter into this Settlement Agreement (this "Agreement") on August 31, 2005.

## RECITALS

A.  Pursuant to various purchase orders and/or supply contracts, as amended, issued by Delphi to Laneko prior to the date of execution of this Agreement and accepted by Laneko (the "Purchase Orders"), Laneko has manufactured and provided Delphi with component parts as set forth in the Purchase Orders (the "Component Parts").

B.  Wachovia Bank ("Bank") provides substantially all of Laneko's working-capital and term financing pursuant to various loan and security agreements and related documents (as may be amended from time to time, the "Loan Documents") between Laneko and Bank. These loans are secured by security interests granted by Laneko to Bank in all of Laneko's assets. Bank and Laneko, among others, are parties to a September 22, 2003 Second Forbearance Agreement, as amended ("Forbearance Agreement") which forbearance is due to expire on August 31, 2005.

C.  Disputes under the Purchase Orders arose between the parties, leading Delphi to initiate action against Laneko in the United States District Court for the Eastern District of Michigan, Southern Division ("Federal Court"), Case No. 2-05 CV 73193 ("Federal Action"), by filing a verified complaint for specific performance, declaratory relief and money damages.

D.  Laneko denies liability to Delphi.

E.  Subject to the terms of this Agreement, Delphi and Laneko have agreed to resolve and settle the Federal Action by Delphi agreeing to certain financial and other accommodations to Laneko in exchange for Laneko's assurances and acknowledgements to fulfill Delphi's remaining production requirements under the Purchase Orders as modified by this Agreement.

WHEREFORE, based upon the foregoing recitals and for good and valuable consideration, the receipt and adequacy of which is acknowledged, the parties agree as follows:

000115900/0059/643939-9

## TERMS AND CONDITIONS

### Laneko Accommodations and Assurances

1. **Parts Banks Production and Resourcing.** Laneko agrees to produce and ship parts banks as required by Delphi in accordance with Exhibit A hereto and, upon expiration of the Production Period, to cooperate with Delphi in resourcing the Component Parts in an orderly manner. Nothing contained in this Agreement shall prohibit Delphi from taking any and all actions reasonably necessary to prepare for resourcing so long as such actions do not interfere with Laneko's production of the Component Parts. Prices to be paid by Delphi to Laneko for the respective Component Parts shall be the piece prices in effect since April 28, 2005 as set forth in Exhibit A (the "Agreed Price").

2. **Production Period.** For purposes of this Agreement, the Production Period means the period beginning on September 1, 2005 and expiring on the earlier of (a) October 30, 2005, or (b) when Delphi's production requirements under the Purchase Orders as amended by this Agreement are fully satisfied or all Component Parts are resourced by Delphi or (c) when Delphi exercises its access right under the "Access Agreement" (defined below).

3. **Monitoring of Production/Projections.** Delphi, through two of its agents, representatives, consultants, officers and employees at any one time, shall have reasonable access to Laneko's plant and operations at reasonable times during business hours for the purpose of monitoring Laneko's production of the Component Parts and, otherwise, Laneko's compliance with the terms of this Agreement. Laneko agrees to fully cooperate with Delphi and its agents, representatives, consultants, officers and employees to accomplish the ends contemplated by this Agreement. In addition, Laneko shall deliver to Delphi concurrently herewith a copy of the cash flow projections given to Bank that evidence cash sources and uses regarding Laneko's business operations during the Production Period.

4. **Access Agreement.** Simultaneous with execution of this Agreement, Laneko (i) will enter into an Access Agreement with Delphi in form attached as Exhibit B (the "Access Agreement"), and (ii) deliver to Delphi Bank's written consent to the Access Agreement as provided therein. The Access Agreement shall become enforceable by Delphi in the event of a default by Laneko under paragraph 12 of this Agreement.

5. **Acknowledgment of Delphi Tooling.**

A. Laneko acknowledges and agrees that, subject to any possessory lien under Pennsylvania law, which Laneko will waive upon the terms set forth in paragraph 5(C) below Delphi is the owner of, and subject to the terms of this Agreement, has the right to possession of, all tooling, dies, test and assembly fixtures, jigs, gauges, patterns, casting patterns, cavities, molds, and documentation including engineering specifications and test reports together with any accessions, attachments, parts, accessories, substitutions, replacements, and appurtenances used by Laneko in connection with its manufacture of the Component Parts for Delphi (the "Delphi Tooling"), including but not limited to the Delphi Tooling described in Exhibit C hereto, and are

being held by Laneko or, to the extent Laneko has transferred the Delphi Tooling to third parties, by such third parties, as bailees at will. Notwithstanding, within 15 days from the date of execution of this Agreement, Laneko will supply Delphi with its list of Delphi Tooling and a list of any other tooling utilized to produce the Component Parts not included in Exhibit C which either should be deemed Delphi Tooling or tooling currently owned by Laneko.

B.   Laneko acknowledges and agrees that all machinery and equipment furnished, either directly or indirectly, to Laneko by Delphi or for which Delphi gives consideration to Laneko in whole , including, without limitation, the machinery and equipment set forth on Schedule D attached hereto (which may be amended from time to time by agreement of the parties) (the "Delphi Equipment") are owned by Delphi and are being held by Laneko or, to the extent Laneko has transferred the Delphi Equipment to third parties, by such third parties, as bailees at will.

C.   No person or entity other than Delphi has any right, title, or interest in the Delphi Tooling or the Delphi Equipment . It is expressly understood and agreed that subject to (1) Delphi being current in its payments to Laneko for the Component Parts and the Delphi Inventory, and (2) Delphi providing indemnification to Laneko, Bank and any third-party owner of legal or equitable interests in Laneko's realty or personalty (including reasonable attorney fees) with regard to any damage by Delphi to Laneko's facility at 275 New Jersey Avenue, Fort Washington, PA, and/or any equipment or other contents therein in connection with Delphi taking possession of any Delphi Tooling and Delphi Equipment, effective upon the completion by Laneko of Delphi's production requirements set forth in Exhibit A relating as to any one particular Component Part, Delphi shall have the right to enter the premises of Laneko and take possession of the Delphi Tooling and the Delphi Equipment relating to the particular Component Part, and Laneko agrees to provide Delphi with such access, provided, however, that the Delphi Tooling and Delphi Equipment utilized to make the final Component Part shall not be removed by Delphi until all of Delphi's obligations under paragraph 8 hereof have been satisfied in full. Subject to the full payment of Delphi's obligations, under paragraph 8 hereof, Bank shall acknowledge that it has no security interest in or lien on any of the Delphi Tooling or the Delphi Equipment and will not assert, or permit any person claiming an interest through Bank to assert, any interest in the Delphi Tooling or the Delphi Equipment.

## Delphi Accommodations

6.   **Payment Terms.**   During the Funding Period, Delphi agrees to continue its "net immediate" payment terms on all accounts payable due Laneko from Delphi arising from shipments of the Component Parts made on or after the date hereof. In the event of a breach in these payment terms by Delphi, and such breach is not cured by Delphi within 48-hours of receipt of written notice of same by Laneko, Laneko may suspend further production and delivery of Component Parts until the breach by Delphi has been fully cured. All finished Component Parts shall unless otherwise directed by Delphi, be shipped, delivered or released to Delphi by Laneko in accordance with the Purchase Orders. Notwithstanding anything to the contrary, Laneko acknowledges and agrees that upon payment in full for finished Component Parts, Delphi is the owner of, and, subject to the terms of this Agreement, has the right to possession of any

paid and unshipped finished Component Parts and Laneko will hold the finished Component Parts as a bailee-at-will only. When Delphi purchases the finished Component Parts, Laneko agrees to cooperate with Delphi in its taking possession of the finished Component Parts. Without further notice, which rights, if any, are waived, Delphi shall have the right to enter immediately the premises of Laneko and take possession of any and all paid and unshipped finished Component Parts and Laneko agrees to provide Delphi or its agents or nominee(s) with such access.

7.  **Delphi Funding.**   On or prior to August 31, 2005, Delphi will pay to Bank the sum of $1,860,000 which monies shall be used to reduce the working capital line of credit indebtedness owing by Laneko to Bank and as otherwise permitted under the Loan Documents. This payment by Delphi to Bank shall be in addition to and not a credit against its accounts payable that shall be due to Laneko for Component Parts.

8.  **Inventory Purchase.**

A.   Within five (5) days following the completion of production of a Component Part or the exercise by Delphi of its access rights as set forth in the Access Agreement, Delphi will purchase from Laneko and Laneko will sell to Delphi all raw materials and work in process inventory of Laneko related to the Component Part which are "usable" (defined below) by Delphi and in a "merchantable" (defined below) condition (the "Delphi Inventory"). Payment for such Delphi Inventory will be made by Delphi to Laneko. In addition, provided Delphi has not exercised its access rights under the Access Agreement, Delphi shall pay to Laneko within the five-day period an amount equal to the full piece price for the quantity of parts relating to any particular Component Part ordered in accordance with Exhibit A but not produced at Delphi's written direction (the "Non-Produced Parts").

B.   As used in this Agreement, "usable" means usable in the production of the Component Part reasonably related to the quantities called for by Exhibit A. As used in this Agreement, "merchantable" means merchantable as that term is described in Uniform Commercial Code Section 2-314 and in conformance with all applicable Purchase Order specifications.

C.   Delphi will only be obligated to purchase the Delphi Inventory under this Agreement if (i) Laneko can sell and deliver the Delphi Inventory free and clear of all security interests including any liens senior to Bank's lien and security interest, and (ii) Delphi is permitted to take immediate possession of the applicable Delphi Inventory.

D.   In connection with any sale by Laneko, (i) Laneko will acknowledge that the prices set forth below to be paid by Delphi for the Delphi Inventory constitute commercially reasonable prices and that any sale pursuant to this Agreement shall be deemed commercially reasonable in all respects, including, method, time, place, and terms, and (ii) upon payment of the purchase price for the Delphi Inventory, Bank will represent and warrant that (a) such sale is free and clear of Bank's lien and security interest, and (b) Bank consents to such sale.

E.  Delphi will purchase the Delphi Inventory for the following amounts:

(i) For raw materials – 100% of Supplier's actual cost; and

(ii) For work in process – 100% of the applicable Purchase Order price for the Component Part in question prorated on a percentage of completion basis, and;

(iii) For any Non-Produced Parts – 100% of Agreed Price.

F.  For purposes of Section 8(E) above, percentage of completion shall be based on the mutual agreement of Delphi and Laneko, or if such agreement cannot be reached within seven (7) days after completion of production of the Component Part or assertion of Delphi's access rights, Delphi and Laneko shall jointly select an independent accountant who shall determine the appropriate percentages of completion of the work in process Delphi Inventory, which determination shall be final and binding upon the parties. Delphi and Laneko shall equally share the fees and costs of such independent accountant (as they relate to the services required under this Section 8).

9.  **Setoffs.**  All setoff or recoupment rights of Delphi for defective or nonconforming products, unordered or unreleased parts returned to Laneko, short shipments, misshipments, improper invoices, mispricing, premium freight, vendor hostage payments (whether for component parts or tooling), any amounts that Delphi must pay vendors on account of valid statutory liens held against tooling owned by Delphi, duplicate payments or billing error, are expressly preserved. For purposes of this paragraph, Laneko shall not be deemed to be a vendor. Further, Delphi expressly reserves and <u>does</u> <u>not</u> waive any rights, claims, and interests of any kind or nature it has or may have against any third party, including, without limitation, setoffs asserted for defense purposes against any other such party.

## Bank Accommodations

10.  **Funding.**  Concurrently with the execution of this Agreement, Laneko shall deliver to Delphi a written acknowledgement from Bank wherein Bank agrees through the Production Period to (i) continue to provide financing to Laneko under the terms and conditions of the Loan Documents as they relate to the working capital line of credit, subject to a cap of $400,000 and consistent with cash flow projections delivered by Laneko to Bank and Delphi, and (ii) provided that there are no further defaults under the Loan Documents (exclusive of any defaults existing as of the date of this Agreement) to forbear from enforcing any and all of its rights against Laneko or any of Laneko's assets used in the production of the Component Parts, including any rights arising under the Loan Documents, provided, that there are no further or additional defaults under the Loan Documents (exclusive of any defaults existing as of the date of this Agreement); provided further that in the event of a default under the Loan Documents by Laneko, Bank shall not exercise any of its rights and remedies in any way as to interfere with Delphi's production of the Component Parts under the Access Agreement or otherwise.

11.    **Consent.** Also upon the execution of this Agreement, Bank shall consent to the Access Agreement as provided therein.

### General Terms

12.    **Events of Default.** The following shall be "Events of Default" hereunder, that unless a waiver thereof is agreed to in writing by the non-defaulting party, shall entitle the non-defaulting party to exercise all rights and remedies hereunder:

A.    Laneko or Delphi repudiates or breaches any of the material terms of this Agreement;

B.    Any default by Laneko under the Loan Documents is declared by Bank;

C.    Laneko acknowledges in writing that it is unable to timely satisfy the production requirements of any Component Part as required under this Agreement and will not be able to cure such default within one (1) business day;

D.    A Chapter 7 Petition under the United States Bankruptcy Code is filed by or against Laneko or Delphi or if any Chapter 11 Bankruptcy Case filed by or against Laneko or Delphi is subsequently converted to Chapter 7;

E.    Laneko makes an assignment for the benefit of creditors or a similar transfer of or action involving any of its operating assets or real estate used in the production of the Component Parts, or a trustee, custodian or receiver is appointed over all or substantially all of the operating assets and/or the real estate, provided, however, that the mere filing of a Chapter 11 case by Laneko shall not constitute a default;

F.    Laneko fails or refuses for any reason to timely ship or produce any Component Part required in accordance with Exhibit A, the consequence of which is that production at Delphi's assembly plant(s) is interrupted or is likely to be interrupted;

G.    Any secured or lien creditor commences a foreclosure action of its liens, security interests and/or mortgages in or against any of the operating assets or the real estate and such action is not dismissed or stayed within twenty (20) days of service of the notice and/or complaint, or if any lessor of the real estate commences a collection or eviction action under its lease and such action is not dismissed or stayed within twenty (20) days of the notice or complaint;

H.    Delphi fails or refuses to make timely payment in full for Component Parts, Delphi Inventory or Non-produced Parts as required by this Agreement, and such failure or refusal is not cured within any grace period provided herein; or

I.    Delphi fails to honor its obligation to indemnify as set forth in paragraph 5(C) of this Agreement.

13.  **Bankruptcy Filing.**  In the event that a voluntary or involuntary bankruptcy proceeding is filed by or against Laneko or Delphi before the end of the Production Period, then to the fullest extent permissible under applicable law, all terms and conditions of this Agreement and the Access Agreement shall continue in any proceedings under the Bankruptcy Code, and Laneko or Delphi will consent to Bankruptcy Court approval of the assumption of this Agreement and the Access Agreement as executed.

14.  **Successor Liability.**  Nothing in this Agreement shall be interpreted to constitute Laneko as Delphi's agent or Delphi as Laneko's agent for any purpose.

15.  **Release.**  Upon fulfillment of all of (i) Laneko's obligations to Delphi hereunder, including without limitation, the timely production and delivery of all finished Component Parts to Delphi and the timely release of all Delphi Tooling to Delphi, and (ii) Delphi's obligations to Laneko hereunder, including without limitation the payment in full for all Component Parts, Delphi Inventory and Non-Produced Parts, (a) the Federal Action shall be dismissed with prejudice pursuant to a stipulated order to be submitted by the parties to the Federal Court in form attached as Exhibit E, and (b) Laneko and Delphi, on behalf of themselves and their respective officers, directors, stockholders, employees, agents, affiliates, successors and assigns, waive, discharge and forever release any and all claims, liabilities, damages, causes of action, defenses, counterclaims or offsets, whether known or unknown, each party has or may have against the other as of the end of the Production Period.

16.  **Authorization.**  The parties executing this Agreement warrant that they have the corporate power and authority to execute this Agreement and that this Agreement has been duly authorized by the parties.

17.  **Cooperation.**  Each party agrees to cooperate fully with the other parties and to take all additional actions that may be reasonably necessary to give full force and effect to this Agreement.

18.  **Section Headings.**  The Section headings used in this Agreement are for convenience of reference only and are not to affect the construction hereof or be taken into consideration in the interpretation of this Agreement. All references to Sections, Schedules, and Exhibits are to Sections, Schedules, and Exhibits in or to this Agreement unless otherwise specified.

19.  **No Waiver; Cumulative Remedies; Unenforceability.**  Laneko and Delphi shall not by any act, delay, indulgence, omission, or otherwise be deemed to have waived any right or remedy under this Agreement or of any breach of the terms and conditions of this Agreement. A waiver by Laneko or Delphi of any right or remedy under this Agreement on any one occasion shall not be construed as a bar to any right or remedy which Laneko or Delphi would otherwise have had on a subsequent occasion. No failure to exercise, nor any delay in exercising, on the part of Laneko or Delphi, any right, power, or privilege under this Agreement, shall operate as a waiver, nor shall any single or partial exercise of any right, power or privilege under this Agreement preclude any other or future exercise thereof or the exercise of any other right, power

or privilege. The rights and remedies under this Agreement are cumulative, may be exercised singly or concurrently, and are not exclusive of any rights and remedies provided by any other agreements or applicable law. Should any provision of this Agreement be held invalid or unenforceable, the remainder of this Agreement will not be affected thereby.

20. **Waivers and Amendments; Successors and Assigns.** No term or provision of this Agreement may be waived, altered, modified, or amended except by a written instrument, duly executed by Laneko and Delphi. This Agreement and all of the parties' obligations are binding upon their respective successors and assigns, and together with the rights and remedies of the parties under this Agreement, inure to the benefit of the parties and their respective successors and assigns. Neither Delphi nor Laneko may not assign or transfer any right or obligation under this Agreement without the prior written consent of the other party.

21. **Notices.** All notices, requests, and other communications that are required or may be given under this Agreement must be in writing, and shall be deemed to have been given on the date of delivery, if delivered by hand, telecopy or courier, or three (3) days after mailing, if mailed by certified or registered mail, postage prepaid, return receipt requested, addressed as set forth below (which addresses may be changed, from time to time, by notice given in the manner provided in this Section):

| | |
|---|---|
| If given to Laneko, sent to: | Laneko Engineering Co.<br>275 New Jersey Dr.<br>Fort Washington, PA 19034<br>Attn: James Derrah, Sr.<br>Telephone: (215) 646-8180, ext. 134<br>Fax: (215) 646-8188 |
| with a copy to: | Cozen O'Connor<br>Suite 400<br>200 Four Falls<br>P.O. Box 800<br>West Conshohocken, PA 19428<br>Attn: Carl Weiss, Esq.<br>Telephone: (610) 941-2346<br>Fax: (877) 295-6882 |
| If given to Delphi, sent to: | Delphi Automotive Systems, LLC<br>1401 Crooks Rd<br>Troy, MI 48084<br>Attn: Patrick Murtagh<br>Telephone: (248) 655-0800<br>Fax: (248) 655-8350 |

|  |  |
|---|---|
| with a copy to: | Delphi Automotive Systems, LLC<br>5825 Delphi Drive<br>Troy, MI 48098<br>Attn: Charles Brown, Esq.<br>Telephone: (248) 813-3368<br>Fax: (248) 813-1122 |
| and: | Butzel Long<br>100 Bloomfield Hills Parkway, Ste. 200<br>Bloomfield Hills, MI 48304<br>Attn: James Derian, Esq.<br>     Thomas Radom, Esq.<br>Telephone: (248) 258-1616<br>Fax: (248) 258-1439 |

22. **No Intended Third Party Beneficiary.** The parties hereto acknowledge and agree that the rights and interests of the parties under this Agreement are intended to benefit solely the parties to this Agreement, except as expressly set forth in this Agreement.

23. **Counterparts.** This Agreement may be executed in any number of counterparts and by each party hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all of which together shall constitute one and the same instrument, and it shall not be necessary in making proof of this Agreement to produce or account for more than one such counterpart. For purposes of this Agreement, facsimile signatures shall also constitute originals.

24. **Entire Agreement; Conflicts; Ambiguous Language.** This Agreement, together with any other agreements and schedules referenced to herein or executed in connection with this Agreement, constitutes the entire understanding of the parties in connection with the subject matter hereof. This Agreement may not be modified, altered, or amended except by an agreement in writing signed by Delphi and Laneko. The terms and conditions of the Purchase Orders are amended to include the terms of this Agreement. Should an inconsistency or conflict exist between the express terms of the Purchase Orders and this Agreement, the terms of this Agreement shall govern and control. To the extent any term or condition of this Agreement is inconsistent or in conflict with the terms of any other agreements between Laneko and Delphi, the terms of this Agreement shall govern and control. This Agreement is being entered into among competent persons who are experienced in business and represented by counsel, and has been reviewed by Laneko and its counsel. Therefore, any ambiguous language in this Agreement will not necessarily be construed against any particular party as the drafter of such language.

25. **Time of the Essence.** Time is of the essence as to the performance of each party's obligations under this Agreement.

26. **Governing Law and Forum.** This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Michigan, without regard to

conflicts of law principles. The parties agree that the Federal Court shall continue to have personal jurisdiction over the parties to adjudicate any dispute arising from or under this Agreement upon application and at least forty-eight (48) hours actual notice of any request for a hearing via telephone by either party.

LANEKO ENGINEERING CO.

By: *W. James Derrek, Sr.*

Its: PRESIDENT

DELPHI AUTOMOTIVE SYSTEMS, LLC

By: _____

Its: _____

00011900/0059/643939-8

10

conflicts of law principles. The parties agree that the Federal Court shall continue to have personal jurisdiction over the parties to adjudicate any dispute arising from or under this Agreement upon application and at least forty-eight (48) hours actual notice of any request for a hearing via telephone by either party.

LANEKO ENGINEERING CO.

By:_____

Its:_____

DELPHI AUTOMOTIVE SYSTEMS, LLC

By: *[signature]*

Its: Dir. of Purch.

## SCHEDULE A

## DELPHI PRODUCTION REQUIREMENTS

# EXHIBIT B

## ACCESS AND SECURITY AGREEMENT

# EXHIBIT C

# DELPHI TOOLING

## EXHIBIT D

## DELPHI EQUIPMENT

PEM Nut Feeder for Part No. 16641700 per Delphi Purchase Order #FDS66723.

# EXHIBIT E

## STIPULATED ORDER OF DISMISSAL