**Hearing Date and Time: October 24, 2011 at 10:00 a.m. (prevailing Eastern time)**
**Response Date and Time: October 17, 2011 at 4:00 p.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Albert L. Hogan, III
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

DPH Holdings Corp. Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Attorneys for DPH Holdings Corp., et al.,
  Reorganized Debtors

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
       In re                            :   Chapter 11
                                        :
DPH HOLDINGS CORP., et al.,             :   Case No. 05-44481 (RDD)
                                        :
            Reorganized Debtors.        :   (Jointly Administered)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

REORGANIZED DEBTORS' MOTION FOR ORDER APPROVING SETTLEMENT
AGREEMENT BETWEEN REORGANIZED DEBTORS AND UNITED STATES
<u>COMPROMISING AND ALLOWING PROOF OF CLAIM NUMBER 14309</u>

("MOTION TO APPROVE EPA SETTLEMENT")

DPH Holdings Corp. ("DPH Holdings") and certain of its affiliated reorganized debtors in the above-captioned cases (collectively, the "Reorganized Debtors"), successors to Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, former debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Motion For Order Approving Settlement Agreement Between Reorganized Debtors And United States Compromising And Allowing Proof Of Claim Number 14309 (the "Motion"), and respectfully represents as follows:

Preliminary Statement

1.      On October 4, 2011, the Reorganized Debtors and the United States of America, on behalf of the United States Environmental Protection Agency (along with any legal successor thereto, "EPA") entered into a Settlement Agreement resolving all disputes concerning a proof of claim filed by the United States, on behalf of EPA.  A copy of the Settlement Agreement is attached hereto as Exhibit A.  The Settlement Agreement is part of a proposed global settlement between Delphi Automotive LLP, General Motors Company, the Reorganized Debtors, and the United States to resolve the claims currently pending in the United States District Court for the Southern District of New York in the action styled Delphi Corporation, et al. v. United States of America, No. 08-CIV-4487 (the "Delphi FICA Case").  Specifically, the Delphi FICA Case seeks a refund of approximately $26 million for alleged overpayment of employment taxes on lump-sum payments made to unionized employees on the effective dates of new collective-bargaining agreements in 1998 and 2003.  The proposed global settlement of the Delphi FICA Case is under review by the United States Department of Justice and will not be effective until a formal settlement offer is accepted by the Office of the Associate Attorney General.  As a part of the proposed global settlement, the Settlement Agreement provides the United States with an allowed prepetition environmental claim of $857,582.52 against DPH-

2

DAS LLC, which the United States shall apply, with Reorganized Debtors' agreement, as a setoff against the FICA refund settlement amount to be paid to the Reorganized Debtors. Although the Reorganized Debtors do not believe they have liability with respect to this environmental claim, the benefits of the contribution protection[1] and covenant not to sue granted pursuant to the Settlement Agreement, together with general litigation risk, weigh in favor of granting the EPA an allowed prepetition claim.

2. The Reorganized Debtors believe that the terms of the Settlement Agreement are fair, reasonable, and in the public interest. The United States will publish notice of the proposed settlement in the Federal Register, and the public comment period will expire fourteen (14) days after the publication. Upon conclusion of the comment period, the United States will file with the Bankruptcy Court any comments received, as well as the United States' responses to the comments, and, if appropriate, will file a pleading in support of the relief sought in this Motion seeking approval of this Settlement Agreement. Until filing its pleading in support of the Motion, the United States reserves the right to withdraw or withhold its consent if the comments regarding the Settlement Agreement disclose facts or considerations which indicate that the Settlement Agreement is not in the public interest. Should the United States exercise its right to withdraw from the Settlement Agreement, the Reorganized Debtors will withdraw this Motion.

3. Under Article 11.3 of the Plan of Reorganization, the Reorganized Debtors have broad authority to compromise and settle claims against the Debtors "without the need for further approval of the Bankruptcy Court." (Docket No. 18707 Ex. A art. 11.3.) But this Court's

---

[1] Consistent with CERCLA, the proposed Settlement Agreement provides the Reorganized Debtors with contribution protection for the matters addressed in the Settlement Agreement. See 42 U.S.C. § 9613(f)(2).

3

approval of the Settlement Agreement is required under environmental law, to confirm that the terms of the settlement are "fair and adequate and are not unlawful, unreasonable, or against public policy." United States v. Hooker Chem. & Plastics Corp., 540 F. Supp. 1067, 1072 (W.D.N.Y. 1982), aff'd, 749 F. 2d 968 (2d Cir. 1984).

       4.       The Court should also confirm that the proposed Settlement Agreement is consistent with the goals of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"). See United States v. Akzo Coatings of Am., Inc., 949 F. 2d 1409, 1426 (6th Cir. 1991) (applying a three-part test of fairness, reasonableness, and consistency with CERCLA's goals). Finally, in the event that the United States determines, upon the conclusion of the notice-and-comment period, that the settlement is in the public interest, that determination is entitled to deference. See United States v. Cannons Eng'g Corp., 899 F. 2d 79, 84 (1st Cir. 1990) (Judicial review of a settlement negotiated by the United States to protect the public interest is subject to special deference; courts should not engage in "second-guessing the Executive Branch."). For the reasons set forth herein and in the pleading anticipated to be filed by the United States in support of this Motion, the Reorganized Debtors respectfully request that this Court approve the proposed Settlement Agreement.

Background

    A.    The Chapter 11 Filings

       5.       On October 8 and 14, 2005, the Debtors, including Delphi Automotive Systems LLC ("DAS LLC"), filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended, in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

4

B. <u>EPA's Claim</u>

6. On July 31, 2006, the United States, on behalf of EPA, filed proof of claim number 14309 ("Claim 14309" or the "Claim") against DAS LLC, contending, among other things, that the Debtors have liability: (i) under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675; (ii) for work requirements arising under court orders, administrative orders, and other regulatory requirements imposed by law; and (iii) under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 <u>et</u> <u>seq.</u>

7. On October 31, 2006, the Debtors objected to Claim 14309 pursuant to the Debtors' (I) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Claims With Insufficient Documentation, (B) Claims Unsubstantiated By Debtors' Books And Records, And (C) Claims Subject To Modification And (II) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452), but subsequently withdrew their objection to Claim 14309.

8. On June 22, 2009, the Debtors objected to Claim 14309 pursuant to the Debtors' Thirty-Fourth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To (I) Expunge (A) Certain Pension And OPEB Claims, (B) Certain Individual Workers' Compensation Claims, (C) Certain Duplicate And/Or Amended Individual Workers' Compensation Claims, (D) Certain Untimely Individual Workers' Compensation Claims, (E) A Secured Books And Records Claim, And (F) Certain Untimely Claims, (II) Modify Certain (A) Wage And Benefit Claims, (B) State Workers' Compensation Claims, And (C) Individual Workers' Compensation Claims Asserting Priority, (III) Provisionally Disallow Certain Union Claims, And (IV) Modify And Allow Certain Settled Claims (Docket No. 17182).

9. On July 16, 2009, the EPA filed its United States Of America's Response To Debtors' Objection To The Claim Of The United States Environmental Protection Agency (Claim No. 14309) (Docket No. 18330).

C. Approval Of Delphi's Plan Of Reorganization

10. On July 30, 2009, this Court entered its Order Approving Modifications Under 11 U.S.C. § 1127(b) To (I) First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified And (II) Confirmation Order (Docket No. 12359) (Docket No. 18707) (the "Plan Modification Order").

11. On October 6, 2009 (the "Effective Date"), the Debtors substantially consummated the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified (the "Plan of Reorganization"), which had been approved by this Court pursuant to the Plan Modification Order (Docket No. 18707), and emerged from chapter 11 as the Reorganized Debtors. In connection with the consummation of the Plan of Reorganization, Delphi and DAS LLC emerged from chapter 11 as DPH Holdings Corp. and DPH-DAS LLC, respectively.

D. The Statutory Background

12. The environmental liabilities resolved by the Settlement Agreement derive primarily from two federal statutes. The first of these, CERCLA, is generally directed at cleaning up sites contaminated with hazardous substances. The second, RCRA, is a "cradle-to-grave" statute that regulates the handling of hazardous wastes from the time they are generated until disposal.

(i) Overview Of CERLCA

13. CERCLA was enacted to provide a framework for cleanup of the nation's worst hazardous waste sites. The primary goal of CERCLA is to protect and preserve public health and the environment from the effects of releases or threatened releases of hazardous substances to the environment. See New York v. Shore Realty Corp., 759 F. 2d 1032, 1040 n.7 (2d Cir. 1985).

14. CERCLA also created a Hazardous Substance Superfund (the "Superfund") to finance federal response actions undertaken pursuant to Section 104(a) of CERCLA. The Superfund was established under 26 U.S.C. § 9507. Although CERCLA authorizes cleanup of hazardous waste sites using money provided by the Superfund, the Superfund is a limited source and cannot finance cleanup of all of the many hazardous waste sites nationwide. See S. Rep. No. 96-842, 848, 96th Cong., 2d Sess. at 17-18 (1980), reprinted in 1 Sen. Comm. on Env't & Pub. Works, Legislative History of CERCLA 305, 324-25 (1983).

15. Accordingly, Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), permits the United States to recover its costs of responding to releases of hazardous substances from potentially responsible parties ("PRPs"). Pursuant to Section 107(a), PRPs include the owners and operators of Superfund sites at the time of the disposal of hazardous substances at the sites, the current owners and operators of Superfund sites, as well as the generators and transporters of hazardous substances sent to Superfund sites. See United States v. Alcan Aluminum Corp., 990 F. 2d 711, 722 (2d Cir. 1993); O'Neil v. Picillo, 883 F. 2d 176, 178 (1st Cir. 1989) ; United States v. Monsanto, 858 F. 2d 160, 168-171 (4th Cir. 1988). While Delphi and its Debtor affiliates never owned or operated the Superfund sites described in the EPA's Claim, nor generated or transported hazardous substances disposed at those locations, the United States asserted that the Debtors have successor liability.

7

16. Sections 104(a) and (b) of CERCLA, 42 U.S.C. §§ 9604(a) and (b), authorize EPA to use Superfund monies to investigate the nature and extent of hazardous substance releases from contaminated sites and to clean up those sites. Moreover, pursuant to Section 106 of CERCLA, 42 U.S.C. § 9606, EPA may issue unilateral administrative orders to PRPs requiring them to clean up sites, may seek injunctive relief through a civil action to secure such relief, or may seek to reach agreements with PRPs through which they agree to perform the necessary cleanup of sites. See 42 U.S.C. §§ 9604, 9606, and 9622.

(ii) Overview Of RCRA

17. RCRA, also known as the Solid Waste Disposal Act, 42 U.S.C. §§ 6901 et seq., regulates generators and transporters of hazardous waste and owners and operators of facilities that manage, treat, store, or dispose of hazardous wastes. Pursuant to 42 U.S.C. § 6926(b)(1), EPA has authorized certain states to administer portions of the RCRA hazardous waste management programs. The United States retains authority to enforce an authorized State's regulations as well as the federal portion of the program administered by the United States. 42 U.S.C. § 6928.

18. RCRA regulations impose on owners and operators of hazardous waste generation, treatment, storage, disposal, and transportation facilities certain obligations regarding the manner in which solid and hazardous wastes are dealt with. See 42 U.S.C. §§ 6921-6925; 40 C.F.R. Subpchapter I. If the EPA determines that handling of solid waste may present an imminent and substantial endangerment to health or the environment, it may issue a cleanup order or seek injunctive relief against any person who has contributed or is contributing to the handling, storage, treatment, transportation, or disposal of solid waste anywhere that solid waste is located. 42 U.S.C. § 7003.

8

E. <u>Settlement Negotiations And The Settlement Agreement</u>

19. The Reorganized Debtors have been engaged in months of arms-length negotiations with the United States in an effort to resolve Claim 14309. The parties weighed the merits, costs, risks and delays that litigation would entail against the value of the settlement. The settlement memorialized in the Settlement Agreement was reached after lengthy negotiations of its terms among sophisticated counsel, in connection with the ongoing negotiation of a potentially broader settlement resolving litigation pending in the United States District Court for the Southern District of New York, styled <u>Delphi Corporation, et al. v. United States of America</u>, No. 08 Civ. 4487 (PKC) (the "Delphi FICA Case").

20. Moreover, resolution of the Reorganized Debtors' purported liability with respect to Claim 14309 under the Settlement Agreement will remove uncertainty as to future liability of the Reorganized Debtors. But for the settlement with the United States on behalf of EPA, the EPA would reserve the right to litigate whether the Reorganized Debtors are liable under environmental law with respect to the sites specified in the Federal Register publication giving notice of the settlement. The Reorganized Debtors would, of course, reserve the right to challenge any such assertion of liability on all applicable grounds.

21. The salient terms of the Settlement Agreement are as follows:[2]

a. <u>Satisfaction Of Claim 14309</u>. Claim 14309 shall be allowed as a prepetition claim in the amount of $857,582.52 against DPH-DAS LLC and shall be in full satisfaction of Claim 14309. In accordance with section 553 of the Bankruptcy Code and article 11.9 of the Plan of Reorganization and as more specifically set forth in section (e) below, the United

---

[2] The following description represents only a summary of certain provisions of the proposed Settlement Agreement; the Settlement Agreement itself should be referred to in its entirety for the specific terms and conditions thereof. In the event of any inconsistency between the Settlement Agreement and the summary contained herein, the terms and conditions of the Settlement Agreement shall control. Capitalized terms used in this summary of the salient terms of the Settlement Agreement and not defined herein shall have the meaning ascribed to such terms in the Settlement Agreement.

9

   States shall apply the allowed amount of Claim 14309 as a setoff against the refund owed to the Reorganized Debtors in connection with the settlement of the Delphi FICA Case. Consummation of the setoff described in the Settlement Agreement shall constitute the EPA's distribution under the Plan of Reorganization with respect to Claim 14309.

 b. <u>Preservation Of Releases And Discharge</u>.  Notwithstanding section (a) above, the Reorganized Debtors and EPA recognize and agree that, in accordance with Article 11.5 of the Plan of Reorganization and paragraph 64(i) of the Plan Modification Order, nothing in the Plan of Reorganization, Plan Modification Order, or the Settlement Agreement:

  (i) discharges, releases, or precludes any environmental liability that is not a claim (as that term is defined in the Bankruptcy Code), or any environmental claim (as the term "claim" is defined in the Bankruptcy Code) of a governmental unit that arises on or after the Effective Date;

  (ii) releases the Debtors or Reorganized Debtors from liability under environmental law as the owner or operator of property that such persons own or operate after the Effective Date;

  (iii) releases or precludes any environmental liability to a governmental unit on the part of any person other than the Debtors and Reorganized Debtors; or

  (iv) enjoins a governmental unit from asserting or enforcing, outside this Court, any liability described in this paragraph.

 c. <u>Covenant Not To Sue</u>.

  (i) In consideration of all of the foregoing, including, without limitation, the satisfaction of the Claim pursuant to section (a), EPA and the United States on behalf of EPA covenant not to file a civil action or to take any administrative or other civil action against the Debtors or Reorganized Debtors pursuant to Sections 106 and 107 of CERCLA or Section 7003 of RCRA with respect to the sites identified in the Federal Register publication giving notice of this settlement.

  (ii) The covenant not to sue set forth in subsection (c)(i) shall not apply to violations of any criminal laws.

  (iii) The covenant not to sue set forth in subsection (c)(i) extends only to those persons identified in the Settlement Agreement and does not extend to any other person. Nothing in the Settlement Agreement is intended as a covenant for any person or entity other than the Debtors, Reorganized Debtors, the United States, and the persons described in the Settlement Agreement.  The Parties reserve all rights which they may have against all other persons for any matter relating hereto.  The United States also specifically reserves, and the Settlement Agreement is without prejudice to, any action based on a failure to meet a requirement of the Settlement Agreement.  The United States also reserves, and the Settlement Agreement is without prejudice to, all rights against the Debtors, Reorganized Debtors, or other persons described in the Settlement Agreement for acts that occur after the date of lodging of the Settlement Agreement.

d.  Covenant Not To Sue United States.  Except as relates to the matters set forth in section (b) above, the Debtors and Reorganized Debtors covenant not to sue and agree not to assert or pursue any claims or causes of action against the United States and all of its agencies, departments, and instrumentalities with respect to the sites identified in the Federal Register publication giving notice of this settlement; provided, however, that with respect to all agencies, departments and instrumentalities of the United States other than EPA, the covenant not to sue shall not bar the Debtors and Reorganized Debtors from asserting any counterclaims against an agency, department or instrumentality that brings a claim or cause of action against the Debtors or Reorganized Debtors with respect to the sites identified in the Federal Register publication giving notice of this settlement but only to the extent that the counterclaim arises from the same response action, response costs, or damages sought by the agency, department, or instrumentality.

e.  Allocation.  The Debtors and Reorganized Debtors recognize that EPA will allocate the money contemplated by the Settlement Agreement and to be received pursuant to the Settlement Agreement to specific Superfund sites and that such allocation is in the sole discretion of EPA.  EPA's decision as to allocation will be set forth in the Federal Register publication giving notice of this settlement.  The United States on behalf of EPA, the Debtors, and the Reorganized Debtors agree that the covenant not to sue set forth in section (c)(i) in this settlement shall apply solely to the sites identified in the Federal Register publication giving notice of this settlement.  Debtors and Reorganized Debtors further agree that they shall not challenge in any manner EPA's allocation as set forth in the Federal Register or claim any credit in any manner for any site that is not set forth in the Federal Register publication giving notice of this settlement.

f.  The United States on behalf of EPA's Administrative Expense Application.  Except as relates to the sites identified in the Federal Register publication giving notice of this Settlement Agreement: (i) the Settlement Agreement is without prejudice to the amended administrative expense application submitted by the United States, on behalf of EPA, dated November 4, 2009 ("Claim 19786") and (ii) nothing in this Settlement Agreement shall be construed to resolve Claim 19786.  The United States on behalf of EPA and EPA acknowledge that Claim 19786 does not seek any recovery with respect to the sites identified in the Federal Register publication giving notice of this Settlement Agreement.

g.  Contribution Protection.  The parties to the Settlement Agreement agree that the Settlement Agreement constitutes a judicially-approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that the Debtors and Reorganized Debtors are entitled, as of the date of the setoff described in the Settlement Agreement, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), or as may be otherwise provi ded by law, for "matters addressed" in the Settlement Agreement.  Subject to section (b) above, the "matters addressed" in the Settlement Agreement, as that phrase is used in Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), include all liabilities covered by the Claim.

h.  Public Comment Period And Approval Of Settlement Agreement.

(i) The Settlement Agreement shall be subject to public comment for a period following publication of notice of the Settlement Agreement in the Federal Register. After the conclusion of the public comment period, the United States will file with the Bankruptcy Court any comments received, as well as the United States' responses to the comments, and, if appropriate, will seek approval of the Settlement Agreement under environmental laws. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Settlement Agreement disclose facts or considerations which indicate that the Settlement Agreement is not in the public interest. If the United States determines that this Settlement Agreement is in the public interest and files a pleading with the Bankruptcy Court seeking approval of this Settlement Agreement, that filing terminates the right of the United States to withdraw from, or withhold its consent to, this Settlement Agreement.

(ii) If for any reason (a) the Settlement Agreement is withdrawn by the United States or the Reorganized Debtors as provided in section (h)(i), (b) the Settlement Agreement is not approved by the Bankruptcy Court, or (c) the FICA settlement agreement never becomes effective: (x) the Settlement Agreement shall be null and void and the parties shall not be bound hereunder or under any documents executed in connection herewith; (y) the parties shall have no liability to one another arising out of or in connection with the Settlement Agreement or under any documents executed in connection herewith; and (z) the Settlement Agreement and any documents prepared in connection herewith shall have no residual or probative effect or value, and it shall be as if they had never been executed.

Jurisdiction And Venue

22.     This matter arises under title 11 of the United States Code or arises in a case under title 11 of the United States Code. This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 157, and 1334, as provided in the Plan of Reorganization (Docket No. 18707 Ex. A art. XIII), and the Plan Modification Order (Docket No. 18707 ¶ 56). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). This Court is the proper venue for this matter pursuant to 28 U.S.C. §§ 157 and 1409.

23.     Bankruptcy courts in this district regularly approve similar environmental settlement agreements. See, e.g., In re Chemtura Corp., Case No. 09-11233 (Bankr. S.D.N.Y. Dec. 7, 2010) (Gerber, J.); In re Motors Liquidation Co., Case No. 09-50026 (Bankr. S.D.N.Y.

Jun. 17, 2011) (Gerber, J.); In re Tronox Inc., Case No. 09-10156 (Bankr. S.D.N.Y. Jan. 26, 2011) (Gropper, J.).

## Relief Requested

24.     The Reorganized Debtors respectfully request that, should the United States file papers in support of this Motion, this Court enter the enclosed form of order, approving the Settlement Agreement as fair, reasonable, and in the public interest.

## Applicable Authority

A.     **The Court Has Authority To Approve The Settlement Agreement Resolving Claim 14309**

25.     Since the Effective Date, the Reorganized Debtors have had broad authority to compromise and settle claims against the Debtors "without the need for further approval of the Bankruptcy Court." (Docket No. 18707 Ex. A art. 11.3.) However, the United States will provide notice of the Settlement Agreement by publication in the Federal Register and an opportunity for public comment on the proposed settlement. Provided that the United States determines at the end of the public comment period that the Settlement Agreement is in the public interest, the Court should approve the Settlement Agreement. And although the Plan of Reorganization gave the Reorganized Debtors broad authority to settle claims without further Court approval, such approval is necessary here because the Court must confirm that the terms of the Settlement Agreement, which compromises and allows Claim 14309, are fair, reasonable, and consistent with environmental law.

B.     **This Court Should Approve The Settlement Agreement**

26.     As noted above, if the United States decides to proceed with the settlement after the public comment period has run, the United States will file supportive papers seeking

approval of the Settlement Agreement under environmental law.  For the reasons set forth below, the Reorganized Debtors believe that such approval should be granted.

27.     Under environmental law, approval of a Settlement Agreement is a judicial act committed to the informed discretion of the Court.  <u>Publicker Indus. Inc. v. United States</u> (In re Cuyahoga), 908 F. 2d 110, 118 (2d Cir. 1992); <u>Cannons Eng'g</u>, 720 F. Supp. at 1035. Judicial review of a settlement negotiated by the United States to protect the public interest is subject to special deference; the Court should not engage in "second-guessing the Executive Branch." <u>Cannons Eng'g</u>, 899 F. 2d at 84; <u>In re Cuyahoga</u>, 980 F. 2d at 118 (noting the "usual deference given" to the EPA); <u>New York v. Solvent Chem. Corp.</u>, 984 F. Supp. 160, 165 (W.D.N.Y. 1997) ("This Court recognizes that its function in reviewing consent decrees apportioning CERCLA liability is not to substitute its judgment for that of the parties to the decree but to assure itself that the terms of the decree are fair and adequate and are not unlawful, unreasonable, or against public policy." (internal quotation marks omitted)).[3]

28.     As discussed below, the Court should approve the Settlement Agreement because it is fair, reasonable, in the public interest, and furthers the goals of CERCLA and RCRA. <u>See</u> <u>Charles George Trucking</u>, 34 F.3d at 1084; <u>Cannons Eng'g</u>, 899 F. 2d at 85; <u>Solvent Chem. Corp.</u>, 984 F. Supp. at 166; <u>Hooker Chem.</u> 540 F. Supp. at 1073 ("the task has been to examine the proposal and determine whether it is a fair and adequate settlement and whether its implementation will reflect concern for the problems for which Congress has enacted the various environmental statutes.").

---

[3]  An evidentiary hearing is not required in order to evaluate a proposed CERCLA consent decree because such hearings would frustrate the statutory goal of expeditious settlement; hearing requests are therefore routinely and properly denied. <u>See</u> <u>United States v. Charles George Trucking Inc.</u>, 34 F.3d 1081, 1085 (1st Cir. 1994); <u>Cannons Eng'g</u>, 899 F. 2d at 94.  This "limited standard of review reflects a clear policy in favor of settlements." <u>Solvent Chem. Corp.</u>, 984 F. Supp. at 165.

      (i)      The Settlement Agreement Is Fair

      29.      The fairness criterion of a CERCLA settlement integrates both procedural fairness and substantive fairness. Cannons Eng'g, 899 F. 2d at 86-88. To measure procedural fairness, the Court "should ordinarily look to the negotiation process and gauge its candor, openness, and bargaining balance." Id. at 86. The Reorganized Debtors' believe the proposed Settlement Agreement is procedurally fair because it was negotiated at arm's length over many months, with good faith participation by governmental actors and parties who were represented by experienced counsel. See id. at 87 (finding CERCLA settlement procedurally fair based on criteria including an arms-length negotiation, experienced counsel, and good faith participation by settling agency).

      30.      To measure "substantive" fairness, the Court considers whether the settlement is "based upon, and roughly correlated with, some acceptable measure of comparative fault, apportioning liability . . . according to rational (if necessarily imprecise) estimates of how much harm each PRP has done." Id. at 87; see also United States v. Davis, 261 F.3d 1, 24 (1st Cir. 2001); Charles George Trucking, 34 F.3d at 1087. Claim 14309 asserts a number of causes of action regarding multiple sites. The Reorganized Debtors believe they have strong defense against many of the causes of action, but recognize there is inherent litigation risk and that the issues raised by EPA involve complex issues of environmental liability. The Reorganized Debtors have taken into account EPA's arguments regarding liability, the defenses to such liability, and the risks of further litigation and believe that the amount of the allowed Claim represents a substantively fair resolution of the Reorganized Debtors' potential liabilities, taking into account the uncertainties and litigation risks involved.

      (ii)      The Settlement Agreement Is Reasonable

      31.      Courts evaluating the reasonableness of CERCLA settlements have considered three factors: (i) technical adequacy of the work to be performed; (ii) satisfactory compensation to the public; and (iii) the risks, costs, and delays inherent in litigation. See Charles George Trucking, 34 F.3d at 1085; Cannons Eng'g, 899 F. 2d at 89-90; see also United States v. Montrose Chemical Co., 50 F.3d 741, 746 (9th Cir. 1996) (Court evaluates whether CERCLA settlement is fair, reasonable, and consistent with CERCLA).

      32.      Although the first prong of the reasonableness inquiry is not at issue in this settlement, the Settlement Agreement satisfies the other, necessarily intertwined, considerations relevant to reasonableness. As discussed above, the United States will receive an allowed claim for the Superfund sites totaling more than $850,000, with provision for setoff against the FICA refund owed to the Reorganized Debtors without litigation risk. Moreover, the proposed Settlement Agreement contains a covenant not to sue regarding the Superfund sites to be listed in the Federal Register publication giving notice of the Settlement Agreement. CERCLA encourages settlements by providing parties who settle with the United States protection from contribution claims for matters addressed in the settlement. See 42 U.S.C. § 9613(f)(2). Consistent with this provision, the proposed Settlement Agreement provides the Reorganized Debtors with contribution protection for the matters addressed in the Settlement Agreement.

      33.      The Settlement Agreement satisfactorily compensates the public, and reasonably balances myriad competing factors, including the extent of Reorganized Debtors' liability in light of the litigation risks and costs, the litigation risks associated with the United States' proof of claim, and the need to recover funds for cleanup, and to minimize the expense

16

and potential delay of protracted litigation. Accordingly, the proposed Settlement Agreement is reasonable.

      (iii)    The Settlement Agreement Is Consistent With The Goals Of CERLA And RCRA

34. The primary goals of CERCLA are to "encourage prompt and effective responses to hazardous waste releases and to impose liability on responsible parties," and to "encourage settlements that would reduce the inefficient expenditure of public funds on lengthy litigation." In re Cuyahoga, 980 F. 2d at 119. The Settlement Agreement furthers these statutory goals.

35. The settlement meets CERCLA's statutory goal of providing final resolution of liability for settling parties. Moreover, the proposed Settlement Agreement serves CERCLA's goal of reducing, where possible, the litigation and transaction costs associated with response actions, as well as the public policy favoring settlement to reduce costs to litigants and burdens on the courts. See Solvent Chem. Corp., 984 F. Supp. at 165; Hooker Chem., 540 F. Supp. at 1072.

Notice

36. Notice of this Motion has been provided in accordance with the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Twenty-Fourth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered August 1, 2011 (Docket No. 21507). To be clear, the Reorganized Debtors are not providing notice of this Motion to any parties related

to the Superfund sites because such parties either did not file a claim relating to the Superfund sites in the Settlement Agreement or their claims have been disallowed and expunged. Therefore, the Reorganized Debtors do not believe such parties have a particularized interest in the relief requested. In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Reorganized Debtors respectfully request that this Court enter an order approving the Settlement Agreement and granting the Reorganized Debtors such other and further relief as is just.

Dated: New York, New York
October 4, 2011

                SKADDEN, ARPS, SLATE, MEAGHER
                  & FLOM LLP

By: /s/ Ron E. Meisler
John Wm. Butler, Jr.
John K. Lyons
Albert L. Hogan, III
Ron E. Meisler
155 North Wacker Drive
Chicago, Illinois 60606

- and -

Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
  Reorganized Debtors