**Exhibit A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| DPH HOLDINGS CORP., *et al.*, | Case No. 05-44481 (RDD) |
| Reorganized Debtors. | Jointly Administered |

## SETTLEMENT AGREEMENT AMONG THE REORGANIZED DEBTORS
## AND THE UNITED STATES OF AMERICA

THIS AGREEMENT, dated as of October 4, 2011 (this "Settlement Agreement"), is entered into by and between DPH Holdings Corp. and its affiliated reorganized debtors, including DPH-DAS LLC, in the above-captioned cases (collectively, the "Reorganized Debtors") and the United States of America (the "United States"), on behalf of the United States Environmental Protection Agency ("EPA").

## RECITALS

WHEREAS, on October 8 and 14, 2005, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, including Delphi Automotive Systems LLC ("DAS LLC"), former debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended, in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

WHEREAS, on July 31, 2006, the United States, on behalf of EPA, filed proof of claim number 14309 ("Claim 14309" or the "Claim") against Delphi Automotive Systems LLC, contending, *inter alia*, that the Debtors have liability: (i) under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*; (ii) for work requirements arising under court orders, administrative orders, and other regulatory requirements imposed by law; and (iii) under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.*

WHEREAS, on October 31, 2006, the Debtors objected to Claim 14309 pursuant to the Debtors' (I) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Claims With Insufficient Documentation, (B) Claims Unsubstantiated By Debtors' Books And Records, And (C) Claims Subject To Modification And (II) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) (the "Third Omnibus Claims Objection") but subsequently withdrew its objection to Claim 14309.

1

WHEREAS, on June 22, 2009, the Debtors objected to Claim 14309 pursuant to the Debtors' Thirty-Fourth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To (I) Expunge (A) Certain Pension And OPEB Claims, (B) Certain Individual Workers' Compensation Claims, (C) Certain Duplicate And/Or Amended Individual Workers' Compensation Claims, (D) Certain Untimely Individual Workers' Compensation Claims, (E) A Secured Books And Records Claim, And (F) Certain Untimely Claims, (II) Modify Certain (A) Wage And Benefit Claims, (B) State Workers' Compensation Claims, And (C) Individual Workers' Compensation Claims Asserting Priority, (III) Provisionally Disallow Certain Union Claims, And (IV) Modify And Allow Certain Settled Claims (Docket No. 17182) (the "Thirty-Fourth Omnibus Claims Objection").

WHEREAS, on July 16, 2009, the United States, on behalf of EPA, filed the United States Of America's Response To Debtors' Objection To The Claim Of The United States Environmental Protection Agency (Claim No. 14309) (Docket No. 18330) (the "Response").

WHEREAS, on July 30, 2009, the Bankruptcy Court entered its Order Approving Modifications Under 11 U.S.C. § 1127(b) To (I) First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified And (II) Confirmation Order (Docket No. 12359) (Docket No. 18707) (the "Plan Modification Order").

WHEREAS, on October 6, 2009 (the "Effective Date"), the Debtors substantially consummated the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified (the "Plan of Reorganization"), which had been approved by the Bankruptcy Court pursuant to an order entered on July 30, 2009 (Docket No. 18707), and emerged from chapter 11 as the Reorganized Debtors.  In connection with the consummation of the Plan of Reorganization, Delphi and DAS LLC emerged from chapter 11 as DPH Holdings Corp. and DPH-DAS LLC, respectively.

WHEREAS, Article 9.6(a) of the Plan of Reorganization provides that "[t]he Reorganized Debtors shall retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving all Claims against, and Interests in, the Debtors and making distributions (if any) with respect to all Claims and Interests."

WHEREAS, on October 5, 2010, the Bankruptcy Court entered an order regarding certain environmental claims (Docket No. 20658) (the "October 5, 2010 Order").

WHEREAS, an action is pending in the United States District Court for the Southern District of New York styled *Delphi Corporation, et al. v. United States of America*, No. 08 Civ. 4487 (PKC) (the "Delphi FICA Case").

WHEREAS, the Reorganized Debtors will tender to the United States an offer (the "FICA Settlement Offer") to resolve the Delphi FICA Case.

WHEREAS, the FICA Settlement Offer will provide that in connection with the resolution of the Delphi FICA Case, a certain amount of the refund due and owing to the

Reorganized Debtors shall be available for offset against certain claims in the chapter 11 proceedings in the Bankruptcy Court, including Claim 14309.

WHEREAS, in connection with the FICA Settlement Offer and to resolve the Thirty-Fourth Omnibus Claims Objection and the Response with respect to Claim 14309, the Reorganized Debtors acknowledge and agree that Claim 14309 shall be allowed as a prepetition claim against DPH-DAS LLC, in accordance with the terms of the Plan of Reorganization as provided herein.

NOW, THEREFORE, in consideration of the premises set forth above and by execution of this Settlement Agreement, the Reorganized Debtors and the United States agree as follows:

1.     Satisfaction of Claim 14309.  Claim 14309 shall be allowed as a prepetition claim in the amount of $857,582.52 against DPH-DAS LLC and shall be in full satisfaction of Claim 14309.  In accordance with section 553 of the Bankruptcy Code and article 11.9 of the Plan of Reorganization and as more specifically set forth in paragraphs 5-6 herein, the United States shall apply the allowed amount of Claim 14309 as a setoff against the refund owed to the Reorganized Debtors in connection with the settlement of the Delphi FICA Case. Consummation of the setoff described in the Settlement Agreement shall constitute the United States on behalf of EPA's distribution and rights provided under the Plan of Reorganization with respect to Claim 14309, and the United States on behalf of EPA shall be entitled to no further distributions or other payments under the Plan of Reorganization on account of Claim 14309.

2.     Notwithstanding paragraph 1, the Reorganized Debtors and EPA recognize and agree that, in accordance with Article 11.5 of the Plan of Reorganization and paragraph 64(i) of the Plan Modification Order, nothing in the Plan of Reorganization, Plan Modification Order, or this Settlement Agreement:

(a)     discharges, releases, or precludes any environmental liability that is not a claim (as that term is defined in the Bankruptcy Code), or any environmental claim (as the term "claim" is defined in the Bankruptcy Code) of a governmental unit that arises on or after the Effective Date;

(b)     releases the Debtors or Reorganized Debtors from liability under environmental law as the owner or operator of property that such persons own or operate after the Effective Date;

(c)     releases or precludes any environmental liability to a governmental unit on the part of any person other than the Debtors and Reorganized Debtors; or

(d)     enjoins a governmental unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in this paragraph.

3.     Covenant Not to Sue.  In consideration of all of the foregoing, including, without limitation, the satisfaction of the Claim pursuant to paragraph 1, EPA and the United States on behalf of EPA covenant not to file a civil action or to take any administrative or other civil action against the Debtors or Reorganized Debtors pursuant to Sections 106 and 107 of CERCLA or

Section 7003 of RCRA with respect to the sites to which EPA applies the Settlement Amount, as identified in the Federal Register publication giving notice of this settlement.

4.     Without in any way limiting the covenant not to sue as set forth in paragraph 3, and notwithstanding any other provision of this Settlement Agreement, such covenants not to sue shall also apply to each of the Debtors' and Reorganized Debtors' successors and assigns, officers, directors, employees, and trustees, but only to the extent that the alleged liability of the successor or assign, officer, director, employee, or trustee of any Debtor or Reorganized Debtor is based solely on its status as and in its capacity as a successor or assign, officer, director, employee, or trustee of any Debtor or Reorganized Debtor.

5.     The Debtors and Reorganized Debtors recognize that EPA will allocate the money contemplated by this settlement and to be received pursuant to the settlement of the Delphi FICA Case to specific Superfund sites and that such allocation is in the sole discretion of EPA.  EPA's decision as to allocation will be set forth in the Federal Register publication giving notice of this settlement. The United States on behalf of EPA, the Debtors, and the Reorganized Debtors agree that the covenant not to sue set forth in paragraph 3 in this settlement shall apply solely to the sites identified in the Federal Register publication giving notice of this settlement. Debtors and Reorganized Debtors further agree that they shall not challenge in any manner EPA's allocation as set forth in the Federal Register or claim any credit in any manner for any site that is not set forth in the Federal Register publication giving notice of this settlement.

6.     Any funds received by EPA for a site specified in the Federal Register publication giving notice of this settlement shall be deposited into the EPA special account for that site within the Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the site, or to be transferred to the Hazardous Substance Superfund.

7.     The United States on behalf of EPA, the Debtors, and the Reorganized Debtors recognize that: (i) the Debtors and Reorganized Debtors are entering into this agreement to facilitate the settlement of certain tax refund issues with the United States and to reduce litigation expenses; (ii) the Debtors and Reorganized Debtors make no admission of liability with respect to any liabilities addressed in this settlement agreement; (iii) regardless of the allocation of setoff decisions made by EPA , the October 5, 2010 Order held that, for the reasons articulated by the Bankruptcy Court at a hearing on September 24, 2010, the Debtors are not liable as corporate successors with respect to certain Superfund sites "under any of the doctrines of corporate successor liability, including mere continuation, de facto merger or assumption of liabilities"; (iv) EPA was not a party to the claims objection proceeding or any hearings leading up to the October 5, 2010 Order, and (v) but for this Settlement Agreement, the United States would reserve the right to litigate whether Debtors or Reorganized Debtors are liable under CERCLA with respect to the sites specified in the Federal Register publication giving notice of this settlement, and the Debtors and Reorganized Debtors would reserve the right to challenge any such assertion of liability on all applicable grounds, including, if applicable, whether the October 5, 2010 Order precludes such liability.

8.     The covenant not to sue set forth in paragraph 3 shall not apply to violations of any criminal laws.

4

9.     The covenant not to sue contained in paragraph 3 extends only to the Debtors, Reorganized Debtors, and the persons described in paragraph 4 above and does not extend to any other person.  Nothing in this Settlement Agreement is intended as a covenant for any person or entity other than the Debtors, Reorganized Debtors, the United States, and the persons described in paragraph 4.  The United States, Debtors, and Reorganized Debtors expressly reserve all Claims, demands, and causes of action, either judicial or administrative, past, present, or future, in law or equity, which they may have against all other persons for any matter relating hereto. The covenant set forth in paragraph 3 does not pertain to any matters other than those expressly specified therein.  The United States also specifically reserves, and this Settlement Agreement is without prejudice to, any action based on a failure to meet a requirement of this Settlement Agreement.  The United States also reserves, and this Settlement Agreement is without prejudice to, all rights against the Debtors, Reorganized Debtors, or the persons described in paragraph 4 for acts by Debtors, Reorganized Debtors, or the persons described in paragraph 4 that occur after the date of lodging of this Settlement Agreement.  As used in the preceding sentence, the phrase "acts by the Debtors, Reorganized Debtors, or the persons described in paragraph 4 that occur after the date of lodging of this Settlement Agreement" does not include continuing or migrating releases relating to conduct occurring before the date of lodging of this Settlement Agreement.

10.     Except as relates to the matters set forth in paragraph 2 above, the Debtors and Reorganized Debtors hereby covenant not to sue and agree not to assert or pursue any claims or causes of action against the United States and all of its agencies, departments and instrumentalities with respect to the sites identified in the Federal Register publication giving notice of this settlement; provided, however, that with respect to all agencies, departments and instrumentalities of the United States other than EPA, this covenant not to sue shall not bar the Debtors and Reorganized Debtors from asserting any counterclaims against an agency, department or instrumentality that brings a claim or cause of action against the Debtors or Reorganized Debtors with respect to the sites identified in the Federal Register publication giving notice of this settlement but only to the extent that the counterclaim arises from the same response action, response costs, or damages sought by the agency, department, or instrumentality.

11.     Except as relates to the sites identified in the Federal Register publication giving notice of this Settlement Agreement: (i) this Settlement Agreement is without prejudice to the amended administrative expense application submitted by the United States, on behalf of EPA, dated November 4, 2009 ("Claim 19786") and (ii) nothing in this Settlement Agreement shall be construed to resolve Claim 19786.  The United States on behalf of EPA and EPA acknowledge that Claim 19786 does not seek any recovery with respect to the sites identified in the Federal Register publication giving notice of this Settlement Agreement.

12.     Contribution Protection.  The Parties agree, that this Settlement Agreement constitutes a judicially-approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that the Debtors and Reorganized Debtors are entitled, as of the date of the setoff described in the Settlement Agreement, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), or as may be otherwise provided by law, for "matters addressed" in this Settlement Agreement.  Subject to paragraph 2 above, the "matters addressed" in this Settlement Agreement, as that phrase is used

in Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), include all liabilities covered by the Claim.

13.     The Debtors and Reorganized Debtors each agree that, with respect to any suit for contribution brought against any of them after the execution of the Settlement Agreement for matters related to this Settlement Agreement, they will notify EPA within fifteen business days of service of the complaint upon them.  In addition, in connection with such suit, the Reorganized Debtors shall notify the EPA within fifteen business days of service or receipt of any Motion for Summary Judgment and within fifteen business days of receipt of any order from a court setting a case for trial (provided, however, that the failure to notify EPA pursuant to this paragraph shall not in any way affect the protections afforded under paragraph 3 (Covenant Not to Sue)).

14.     The Reorganized Debtors will file a motion with the Bankruptcy Court seeking approval of this Settlement Agreement.  In response to this motion, the United States shall make the filing described in paragraph 15.

15.     This Settlement Agreement shall be subject to public comment for a period following publication of notice of the Settlement Agreement in the Federal Register.  After the conclusion of the public comment period, the United States will file with the Bankruptcy Court any comments received, as well as the United States' responses to the comments, and, if appropriate, will seek approval of the Settlement Agreement under environmental laws.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Settlement Agreement disclose facts or considerations which indicate that the Settlement Agreement is not in the public interest.  If the United States determines that this Settlement Agreement is in the public interest and files a pleading with the Bankruptcy Court seeking approval of this Settlement Agreement, that filing terminates the right of the United States to withdraw from, or withhold its consent to, this Settlement Agreement.

16.     If for any reason (i) the Settlement Agreement is withdrawn by the United States as provided in paragraph 15, (ii) the Settlement Agreement is not approved by the Bankruptcy Court, or (iii) the FICA settlement agreement never becomes effective: (a) this Settlement Agreement shall be null and void and the parties shall not be bound hereunder or under any documents executed in connection herewith; (b) the parties shall have no liability to one another arising out of or in connection with this Settlement Agreement or under any documents executed in connection herewith; and (c) this Settlement Agreement and any documents prepared in connection herewith shall have no residual or probative effect or value, and it shall be as if they had never been executed.

17.     Subject to paragraph 15, the parties agree to exercise all reasonable efforts to obtain prompt approval of this Settlement Agreement by the Bankruptcy Court.

18.     Effective Date.  The effective date of this Settlement Agreement (the "Effective Date") shall be the later of the following: (i) entry of an order approving this Settlement Agreement and (ii) the effectiveness of the agreement resolving the FICA Case.  Both (i) and (ii) in the preceding sentence must occur in order for this Settlement Agreement to be effective.

19.     <u>Withdrawal of Debtors' Objection to Claim 14309 and the Response</u>.   Upon the Effective Date of this Settlement Agreement, as defined in paragraph 18 herein, the Debtors' objection to Claim 14309 pursuant to the Thirty-Fourth Omnibus Claims Objection shall be deemed withdrawn with prejudice, and the Response shall be deemed withdrawn with prejudice.

20.     <u>Governing Law</u>.  This Settlement Agreement shall be governed by, and construed and enforced in accordance with, as appropriate, federal bankruptcy law and the laws of the State of New York, without regard to conflicts of law principles.

21.     <u>Bankruptcy Court Jurisdiction</u>.  The Bankruptcy Court shall retain jurisdiction to adjudicate any disputes arising from or in connection with this Settlement Agreement.

22.     <u>No Party Deemed Drafter</u>.  This Settlement Agreement is being entered into among competent persons who are experienced in business and represented by counsel, and has been reviewed by the United States and its counsel.  Therefore, any ambiguous language in this Settlement Agreement shall not be construed against any particular party as the drafter of such language.

THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT

FOR THE UNITED STATES OF AMERICA

Date: _10-3-2011_    By: _____

W. BENJAMIN FISHEROW
Acting Chief, Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice

Date: _____    By: _____

JOSEPH N. CORDARO
Assistant United States Attorney
Office of the United States Attorney for the
    Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007

8

23.    <u>Counterparts</u>.  This Settlement Agreement may be executed in any number of counterparts and by the different parties hereto in separate counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same agreement.  Delivery of an executed counterpart of this Settlement Agreement by facsimile or electronic mail shall be equally as effective as delivery of an original executed counterpart of this Settlement Agreement.

THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT

FOR THE UNITED STATES OF AMERICA

Date: _____    By: _____
W. BENJAMIN FISHEROW
Acting Chief, Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice

Date: _10_/_4_/_2011_    By: _____
JOSEPH N. CORDARO
Assistant United States Attorney
Office of the United States Attorney for the
    Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007

8

**FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**

Date: _____9-30-11_____          By: _____

Richard C. Karl, Director
Superfund Division – Region 5

FOR THE DEBTORS AND REORGANIZED DEBTORS

Date: _10/4/2011_          By:    _Ron E. Meisler_

John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler
SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606

       - and –

Four Times Square
New York, New York, 10036

10