Jeffrey L. Gansberg
**Much Shelist Denenberg Ament & Rubenstein, P.C.**
191 N. Wacker Drive, Suite 1800
Chicago, IL 60606
312-521-2000
jgansberg@muchshelist.com


Attorneys for Defendants


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————
In re:                                                          :
                                                                :       Chapter 11
DPH HOLDINGS CORP., *et al.,*                                   :       Case No. 05-44481 (RDD)
                                                                :       (Jointly Administered)
                        Reorganized Debtors.                    :
———————————————————————
                                                                :
DELPHI CORPORATION, *et.al.,*                                  :
                                                                :
                        Plaintiffs,                            :
                                                                :
        v.                                                     :
                                                                :
GLOBE MOTORS, INC. and GLOBE MOTORS,                           :       Adv. Pro. No. 07-02333-RDD
                                                                :
                        Defendants.                            :


**RESPONSE OF GLOBE MOTORS, INC. AND GLOBE MOTORS TO REORGANIZED
DEBTORS' AMENDED OMNIBUS RESPONSE TO CERTAIN DEFENDANTS'
SUBMISSIONS REGARDING THE OCTOBER 2, 2009 SUPPLEMENTAL
POSTCONFIRMATION EXTENSION OF AVOIDANCE ACTION SERVICE
<u>DEADLINE MOTION</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................... 2

FACTS ...................................................................................................................... 3

ARGUMENT ............................................................................................................ 7

    A.    **The Reorganized Debtors Failed to Give Globe Notice of the Extension Motions, Extension Orders, or the Preference Complaint** ............. 8

    B.    **The Reorganized Debtors Ignore the Lack of Actual Notice to Globe and Instead Try to Impute Knowledge and or Notice to Globe** ..................... 11

    C.    **The Documents That Were Served On Globe Provided No Notice of the Reorganized Debtors' Covert Motion Practice** .......................................... 12

    D.    **If Delphi Did Not Know It Was Going to Bring Suit Against Globe, How Could Globe?** ............................................................................................ 13

    E.    **Globe Would Be Prejudiced If the Reorganized Debtors Are Allowed to Prosecute the Complaint Against Globe** ....................................................... 16

    F.    **The Original Complaint Was Dismissed by this Court and Is Therefore Irrelevant** ............................................................................................ 18

JOINDER .................................................................................................................. 18

CONCLUSION ......................................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

CASES

*Acevedo v. Van Dorn Plastic Machinery Co.*,
 68 B.R. 495, 499 (Bankr. E.D.N.Y. 1986)................................................................9

*In re Drexel Burnham Lambert Group, Inc.*,
 151 B.R. 674, 679 (Bankr. S.D.N.Y. 1993)............................................................10

*In re Johns-Manville Corp.*,
 600 F.3d 135 (2d Cir. 2010)......................................................................................8

*In re Linkous*
 990 F.2d 160, 162 (4th Cir. 1993) ..........................................................................10

*In re Texaco, Inc.*,
 254 B.R. 536, 561 (Bankr. S.D.N.Y. 2000)..............................................................9

*In re Thomson McKinnon Securities Inc.*,
 130 B.R. 717 (Bankr. S.D.N.Y. 1991).....................................................................12

*International Strategies Group, Ltd. v. Ness*,
 645 F.3d 178, 184 (2d Cir. 2011)............................................................................15

*Mullane v. Central Hanover Bank & Trust Co.*,
 399 U.S. 306, 312-14 (1950) ..................................................................................10

*Order of Railroad Telegraphers v. Railway Express Agency, Inc.*,
 321 U.S. 342, 348-49 (1944) ..................................................................................15

*Solow Building Co., LLC v. ATC Assocs., Inc.*,
 175 F.Supp.2d 465, 471 (E.D.N.Y. 2001) ..............................................................10

*Zapata v. City of New York*,
 502 F.3d 192, 198 (2d Cir. 2007)............................................................................16

STATUTES

11 U.S.C. §§ 102(1)(A), 105(a), 107, 108(a)(2), and 546(A).........................................4

11 U.S.C. § 541, 544, 545, 547, 548...........................................................................4, 7

11 U.S.C. § 546....................................................................................................................15

**OTHER AUTHORITIES**

Transcript of Hearing of July 22, 2010 ..................................................................................9, 11

Transcript of Hearing of June 21, 2011 ...........................................................8, 9, 10, 11, 16, 17

U.S. Const. Amend. V ..................................................................................................................8

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| DPH HOLDINGS CORP., *et al.,* | : | Case No. 05-44481 (RDD) |
| | : | (Jointly Administered) |
| Reorganized Debtors. | : | |

_____

| | | |
|---|---|---|
| DELPHI CORPORATION, *et.al.,* | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| GLOBE MOTORS, INC. and GLOBE MOTORS, | : | Adv. Pro. No. 07-02333-RDD |
| | : | |
| Defendants. | : | |

**RESPONSE OF GLOBE MOTORS, INC. AND GLOBE MOTORS TO REORGANIZED
DEBTORS' AMENDED OMNIBUS RESPONSE TO CERTAIN DEFENDANTS'
SUBMISSIONS REGARDING THE OCTOBER 2, 2009 SUPPLEMENTAL
POSTCONFIRMATION EXTENSION OF AVOIDANCE ACTION SERVICE
<u>DEADLINE MOTION</u>**

Globe Motors, Inc. and Globe Motors (collectively, "Globe"), by and through its

undersigned attorneys, hereby makes and files this, its Response ("Response") to Reorganized

Debtors' Amended Omnibus Response to Certain Defendants' Submissions Regarding the

October 2, 2009 Supplemental Postconfirmation Extension of Avoidance Action Service

Deadline Motion (the "Reorganized Debtors' Omnibus Response"), and states:

## PRELIMINARY STATEMENT

Due process is a fundamental principle of American jurisprudence and notice is a fundamental principle of due process.  In this case, the Reorganized Debtors have attempted to throw due process by the wayside by failing to provide Globe and the other preference defendants with notice of the four motions to extend time for service and the corresponding orders.  As a result, Globe has been severely prejudiced.  By failing to provide adequate notice to Globe, the Reorganized Debtors have secured a void order and therefore have effectuated a waiver of their rights to proceed against Globe.

As sworn to in the Declarations of Thomas Carroll with respect to the various pleadings filed in this case and the companion adversary proceeding against Globe, Globe was not served with the October Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion (the "Fourth Extension Motion") and the order therefrom, the Order Pursuant to Fed. R. Bankr. P. 7004(a) and 9006(b)(1) and Fed. R. Civ. P. 4(m) to Extend Deadline to Serve Process for Avoidance Actions Filed in Connection with Preservation of Estate Claims Procedures Order (the "Fourth Extension Order").  Similarly, Globe did not receive either actual or constructive notice of any of the motions seeking or orders granting extensions of time to serve the complaints,[1] extending the time for almost two years for the Reorganized Debtors to effectuate service.  In fact, until it was actually served with a preference complaint filed more than two years earlier, Globe had no reason to suspect or believe that it was going to be a preference defendant in these cases.  To the contrary, more than two years after the statute of

---

[1]  As sworn to by Thomas Carroll in the Carroll Declaration (hereinafter defined), Globe did not receive notice of any of the extension motions or extension orders, including the Fourth Extension Motion and the Fourth Extension Order.  Because the Court is focused on the Fourth Extension Motion, Globe will limit its discussion to those items, but the Court should be aware that Globe received none of the extension motions or orders but to the extent the other motions and orders become at issue, Globe reserves all of its rights as to those.

limitations had expired, Globe had every reason to believe that it was not subject to a preference suit.

In their Reorganized Debtors' Omnibus Response, the Reorganized Debtors argue: (i) that they fully disclosed to this Court that the Fourth Extension Motion was not being served on all of the preference defendants although the preference defendants' rights were being affected by the relief requested; (ii) that its need for additional time to make a business determination as to whether to preserve the adversary proceedings constituted sufficient grounds for the relief sought in the Fourth Extension Motion , and (iii) that Globe and the other defendants were not entitled to actual notice because they should have known that they were going to be sued to recover preferential transfers.  Ultimately, however, because Globe was not served with the Fourth Extension Motion, the Reorganized Debtors should not now be allowed to prosecute the complaint against Globe.  Similarly, any prejudice befalling the Reorganized Debtors results from their own actions, not Globe's.

## FACTS

The undisputed (and indisputable) facts in this matter show that Globe was not served with any of the extensions motions or extension orders, including the Fourth Extension Motion and the Fourth Extension Order.  *See* Declaration Of Thomas Carroll In Support Of Objection Of Globe Motors To Reorganized Debtors' Motion For Leave To File Amended Complaints (the "First Carroll Declaration") [Docket No. 36 in Adv. Pro. No. 07-2333]; Second Declaration Of Thomas Carroll In Support Of Objection Of Globe Motors To Reorganized Debtors' Motion For Leave To File Amended Complaints And In Support Of Motions To Dismiss Adversary Proceedings (the "Second Carroll Declaration" and collectively with the First Carroll Declaration, the "Carroll Declarations") [Docket No. 43 in Adv. Pro. No. 07-2333].  Similarly,

Globe had no notice of the preference action filed against it under seal on September 28, 2007.

The first notice that Globe had that it was sued to recover a preference was when it was served

with the complaint over two years after the expiration of the statute of limitations.

As set forth in the timeline below, it is abundantly clear that Globe was not served with

any of the extension motions or orders, including the Fourth Extension Motion and the Fourth

Extension Order.  Similarly, Globe had no knowledge and was not served with the preference

complaint filed against it until over two years after the statute of limitations expired.  The

timeline in these cases are as follows:

| Date | Document | Did Globe Receive Notice? [Docket No. for Certificate of Service] |
|---|---|---|
| August 6, 2007 | Expedited Motion for Order Under 11 U.S.C. §§ 102(1)(A), 105(a), 107, 108(a)(2), and 546(A) and Fed. R. Bankr. P. 7004, 9006(c), and 9018 (i) Authorizing Debtors to Enter into Stipulations Tolling Statute of Limitations with Respect to Certain Claims, (ii) Authorizing Procedures to Identify Causes of Action that Should be Preserved, and (iii) Establishing Procedures for Certain Adversary Proceedings Including those Commenced by Debtors Under 11 U.S.C. § 541, 544, 545, 547, 548, or 553 ("Preservation of Estate Claims Procedures Motion") [Docket No. 8905] | No [Docket No. 9039] |
| August 16, 2007 | Order Under 11 U.S.C. §§ 102(1)(A), 105(a), 107, 108(a)(2), and 546(a) and Fed. R. Bankr. P. 7004, 9006(c), and 9018 (i) Authorizing Debtors to Enter into Stipulations Tolling Statute of Limitations with Respect to Certain Claims, (ii) Authorizing Procedures to Identify Causes of Action that Should be Preserved, and (iii) Establishing Procedures for Certain Adversary Proceedings Including those Commenced by Debtors Under 11 U.S.C. § 541, 544, 545, 547, 548, or 553 ("Preservation of Estate Claims Procedures Order") [Docket No. 9105] | No [Docket No. 9141] |

| | | |
|---|---|---|
| September 27, 2007 | Adversary case 07-02333. Complaint against Defendant 260A, Defendant 260B (Filed Under Seal). Nature(s) of Suit: (14 (Recovery of money/property - other)) Filed by Togut, Segal & Segal LLP, Scott Eric Ratner on behalf of Delphi Corporation, et al.. (Ratner, Scott) (Entered: 09/28/2007) [Docket No. 1 in Adv. No. 07-2333] | No – not until December 2009 |
| October 8, 2007 | Statute of Limitations Expires | N/A |
| December 10, 2007 | First Amended Disclosure Statement with Respect to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession [Docket No. 11388] | Yes |
| December 28, 2007 | December 28, 2008 Notice of Filing of Exhibits with Respect to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession ("December 28, 2007 Notice of Filing of Plan Exhibits") [Docket No. 11608] | No [Docket No. 11977] |
| February 8, 2008 | Motion Pursuant to Fed. R. Bankr. P. 7004(a) and 9006(b)(1) and Fed. R. Civ. P. 4(m) to Extend Deadline to Serve Process for Avoidance Actions Filed in Connection with Preservation of Estate Claims Procedures Order ("Extension of Avoidance Action Service Deadline Motion")  [Docket No. 12922] | No [Docket No. 12970] |
| March 28, 2008 | Order Pursuant to Fed. R. Bankr. P. 7004(a) and 9006(b)(I) and Fed. R. Civ. P. 4(m) to Extend Deadline to Serve Process for Avoidance Actions Filed in Connection with Preservation of Estate Claims Procedures Order [Docket No. 13277] | No [Docket No. 13315] |
| April 10, 2008 | Motion Pursuant to Fed. R. Bankr. P. 7004(a) and 9006(b)(1) and Fed. R. Civ. P. 4(m) to Extend Deadline to Serve Process for Avoidance Actions Filed in Connection with Preservation of Estate Claims Procedures Order ("Postconfirmation Extension of Avoidance Action Service Deadline Motion") [Docket No. 13361] | No [Docket No. 13415] |
| April 30, 2008 | Order Pursuant to Fed. R. Bankr. P. 7004(a) and 9006(b)(1) and Fed. R. Civ. P. 4(m) to Extend Deadline to Serve Process for Avoidance Actions Filed in Connection with Preservation of Estate Claims | No [Docket No. 13540] |

| | Procedures Order ("Postconfirmation Extension of Avoidance Action Service Deadline Order") [Docket No. 13484] | |
|---|---|---|
| June 1, 2009 | (A) Supplement to Motion for Order (I) Approving Modifications to Debtors' First Amended Plan of Reorganization (as Modified) and Related Disclosures and Voting Procedures and (II) Setting Final Hearing Date to Consider Modifications to Confirmed First Amended Plan of Reorganization and (B) Request to Set Administrative Expense Claims Bar Date and Alternative Sale Hearing Date ("Supplement to Plan Modification Approval Motion") [Docket No. 16646] | No [Docket No. 16657] |
| October 2, 2009 | Supplemental Motion Pursuant to Fed. R. Bankr. P. 7004(a) and 9006(b)(1) and Fed. R. Civ. P. 4(m) to Extend Deadline to Serve Process for Avoidance Actions Filed in Connection with Preservation of Estate Claims Procedures Order ("Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion") [Docket No. 18952] | No [Docket No. 18967] |
| October, 22, 2009 | Order Pursuant to Fed. R. Bankr. P. 7004(a) and 9006(b)(1) and Fed. R. Civ. P. 4(m) to Extend Deadline to Serve Process for Avoidance Actions Filed in Connection with Preservation of Estate Claims Procedures Order ("Postconfirmation Extension of Avoidance Action Service Deadline Order") [Docket No. 18999] | No [No Docket Entry Found] |

As set forth in the Carroll Declarations, Globe received service of only the following items: (i) Ballot For Accepting Or Rejecting Joint Plan Of Reorganization; (ii) Letter From The Delphi Corporation Official Committee Of Equity Security Holders; (iii) Post Petition Interest Rate Determination Notice; (iv) Notice Of:  Approval Of Disclosure Statement; Hearing On Confirmation Of Plan; Deadline And Procedures For Filing Objections To Confirmation Of Plan; Deadline And Procedures For Temporary Allowance Of Certain Claims For Voting Purposes; Deadline For Asserting Cure Claims For Assumed Contracts; Treatment Of Certain Unliquidated, Contingent, Or Disputed Claims For Notice, Voting and Distribution Purposes;

Record Date; Voting Deadline For Receipt Of Ballots; and Proposed Releases, Exculpation, and Injunction In Plan; (v) Claim Objection Procedures Order; (vi) a CD titled:  First Amended Disclosure Statement With Respect To First Amended Plan Of Reorganization (collectively, the "Received Documents").  *See* Carroll Declarations.  Because of the limited service upon it, Globe had no knowledge that the preference actions had been filed or that the Debtors/Reorganized Debtors had received multiple extensions of time to serve the preference actions.  *Id*.

The adversary complaint filed against Globe over two years after the expiration of the statute of limitations sought the return of approximately $456,551.96 in allegedly preferential transfers.  This first complaint was dismissed by order of this Court entered September 7, 2010, and docketed on October 22, 2010.  The order granted, in part, the First Wave Motions to Dismiss [Docket No. 30 in Adv. Pro. 07-2333].  The dismissal order granted leave for the Reorganized Debtors to file a Motion For Leave to Amend within a specific time period.  On or about September 7, 2010, the Reorganized Debtors filed a motion for leave to amend.  Numerous defendants, including Globe, then objected to the motion for leave to amend and sought vacatur of the Fourth Extension Order.

## ARGUMENT

Although admitting that the Debtors/Reorganized Debtors did not serve Globe with the Fourth Extension Motion or the Fourth Extension Order, the Reorganize Debtors, in a self-serving attempt to impute notice to Globe, attempt to convince this Court that: (i) Globe received the notice to which it was entitled; and (ii) the filing of the complaint against Globe under seal and requesting a total of over two years worth of extensions to serve the preference complaint without notice to Globe satisfied due process concerns and was justified since the lawsuits were

not really a secret.[2]  In making these arguments, the Reorganized Debtors disregard the entire

construct of due and proper notice as required by both the Bankruptcy Code, and more

importantly, the United States Constitution.  *See* U.S. Const. amend. V.  Additionally, while

disregarding their failure to provide notice to Globe, in making their arguments, the Reorganized

Debtors undercut their purported reasons for the entry of not only the Fourth Extension Order but

the very reason offered for filing the adversary complaints under seal in the first instance.

A.    **The Reorganized Debtors Failed to Give Globe Notice of the Extension Motions,
      Extension Orders, or the Preference Complaint**

Despite all of the rhetoric from the Reorganized Debtors, once the voluminous pile of

documents in this case is reviewed one thing becomes clear, Globe did not receive any notice of

the extension motions, extension orders or the preference complaint filed against it until such

time as it was served with the preference complaint.  Because Globe did not receive proper (or

any) notice of the Fourth Extension Motion, the Fourth Extension Order is void as to Globe.  *In

re Johns-Manville Corp.*, 600 F.3d 135 (2d Cir. 2010); *see also*, Transcript of Hearing of June

21, 2011 at p. 298 ("I mean, it basically said if you really didn't get any notice of this then you

shouldn't be sued.").  And, because it is void as to Globe, the time to serve Globe was not

extended and no complaint can now be prosecuted.

The Reorganized Debtors' position on whether due process was provided is really quite

simple – due process should be ignored.  Specifically, at the June 21, 2011 hearing, counsel for

the Reorganized Debtors told this Court that due process would only interfere with the well

thought out process of filing secret complaints and the equally secret extensions of time for

serving those complaints.  *See* Transcript of Hearing of June 21, 2011 hearing at p. 305.  Counsel

stated:

---

[2] This just begs the question of why, if the complaint against Globe (and the other defendants) was not a secret, that
it (and the other adversary proceedings) had to be filed under seal and could not be served when filed.

> Plainly, there was not an understanding, and I could imagine a
> very sensible reason for thinking that the notice language in the -
> - case management will likely know what the exact name of the
> order is – applied here.  First, it would be inherently - - expecting
> this sort of notice, would be inherently inconsistent with the big
> picture series of orders that were entered that provided for filing
> the cases under seal, precisely to avoid creating the sorts of
> controversies that would arise here.

Transcript of Hearing of June 21, 2011 Hearing at p. 305.  Similarly, in their Reorganized

Debtors' Omnibus Response, the Reorganized Debtors state: "[t]he very purpose of the Extension

Motions and Extension Orders would have been undermined if the motions had been served on

the Preference Defendants."  *See* Reorganized Debtors' Omnibus Response at 9-10.  The

Reorganized Debtors can not ignore due process when it suits their purposes.

Contrary to the position taken by the Reorganized Debtors that due process is an

administrative and procedural headache, this Court has raised a concern as to whether the

Reorganized Debtors violated Globe's (and the other defendant's) due process rights.

Specifically, the Court indicated its concern with whether Globe (and the other preference

defendants) received notice of the Fourth Extension Motion.  *See generally*, Transcript of

Hearing of June 21, 2011 and Transcript of Hearing of July 22, 2010.  Globe did not.  This

appears to be of no import to the Reorganized Debtors.  Rather they ignore the well established

precedent that the enforceability of a court order is always subject to due process concerns.

*Acevedo v. Van Dorn Plastic Machinery Co.,* 68 B.R. 495, 499 (Bankr. E.D.N.Y. 1986); *In re*

*Texaco, Inc.*, 254 B.R. 536, 561 (Bankr. S.D.N.Y. 2000).  Instead, they argue that Globe had

knowledge of or should have known that: (i) the preferences might be filed under seal, and (ii)

numerous extensions of time were granted to the Reorganized Debtors to serve the secret

preference complaints.  In essence, the Reorganized Debtors want this Court to have deemed that

they served Globe with notice of material documents that affected Globe's rights although they

never did so.  Additionally, the disclosure statement on the claims agent website linked only to

the First Amended Disclosure Statement and not to any of the modifications.  Therefore, the

links were to the old exhibits which indicated that most of the adversary proceedings were going

to be waived by the Reorganized Debtor.  Moreover, contrary to the Court's mandate in June,

2011, the Reorganized Debtors did not and cannot affirmatively state that Globe received notice

of the Fourth Extension Motion or the Fourth Extension Order.  *See* Transcript of Hearing of

June 21, 2011 Hearing at p. 307 (". . . but the debtor needs to say something more than we think

they had knowledge").  It is not able do so because, like Globe, it reviewed the appropriate

certificates of service and determined that Globe was not served.  It is telling that the

Reorganized Debtors make no argument as to service on Globe when this Court already noted

that the Reorganized Debtors had failed to respond to that point before the June 21, 2011

hearing.  *See* Transcript of Hearing of June 21, 2011 Hearing at p. 295.

　　　　Due and proper notice is a fundamental concept when relief is sought against a party and

no relief can be granted against a party unless due and proper notice has been given.  *See*

*Mullane v. Central Hanover Bank & Trust Co.,* 399 U.S. 306, 312-14 (1950);  *Solow Building*

*Co., LLC v. ATC Assocs., Inc.,* 175 F.Supp.2d 465, 471 (E.D.N.Y. 2001); *In re Drexel Burnham*

*Lambert Group, Inc.*, 151 B.R. 674, 679 (Bankr. S.D.N.Y. 1993).  Due process is so integral to

the judicial process that it trumps policy arguments about finality.  *In re Linkous*, 990 F.2d 160,

162 (4th Cir. 1993)("However, we cannot defer to such an order on *res judicata* grounds if it

would result in a denial of due process in violation of the Fifth Amendment of the United States

Constitution.").  In this case, the Reorganized Debtors did not give notice to Globe depriving it

of its due process rights.  Specifically, the Reorganized Debtors failed to provide Globe with any

notice of any of the extension motions or orders.  And, contrary to their assertions that Globe

should have known that it was a potential preference defendant, all of the information provided

to Globe, in addition to the fact that the statute of limitations and time for service had run,

indicated not only that it was **not** a potential preference defendant, but also, failed to indicate that

the time to serve any preference complaints was extended for over two years.

Recognizing that Globe did not receive notice of the Fourth Extension Motion or the

Fourth Extension Order, the Reorganized Debtors attempt to cobble together arguments as to

why they should be allowed to prosecute the complaint served on Globe over two years after the

statute of limitations had run.  At one point they even go so far as to state that Globe can only

speculate what it would have done if it had received the Fourth Extension Motion.  That

argument is specious, at best.  The issue is not what Globe or the Court might or might not have

done if Globe had received notice – the issue is that Globe did not know about the Fourth

Extension Motion so it was **unable** to do anything.  *See generally*, Transcript of Hearing of June

21, 2011 at p. 314 ("THE COURT:  . . . because I'm sort of already have - - have my analysis in

mind, and it really depends on notice."); Transcript of Hearing of July 20, 2010 at p. 125 ("THE

COURT:        I understand your argument, but since they didn't have the chance to respond to it,

how should they be bound by that Order?  Since you knew who they were.")  The lack of notice

and opportunity to respond is the harm – speculation as to what may or may not have happened

is irrelevant.

**B.**      **The Reorganized Debtors Ignore the Lack of Actual Notice to Globe and Instead
Try to Impute Knowledge and or Notice to Globe**

Despite these undeniable facts, in their Reorganized Debtors' Omnibus Response, the

Reorganized Debtors make a number of arguments leading, in their estimation, to the irrefutable

conclusion that Globe should have known that it was going to be sued for the return of allegedly

preferential transfers.  Surprisingly, knowing that Globe did not receive actual notice, the

Reorganized Debtors make the argument that Globe had inquiry notice of the fact that it was sued. Specifically, the Reorganized Debtors argue that "the Debtors believe that there was broad awareness in the automotive, financial and business community that Preference Actions were being filed under seal and deferred." Reorganized Debtors' Omnibus Response at p. 21. They further argue that "facts set forth in this Section and the other facts outlined in the Debtors' individual responses demonstrate that even the Submission Defendants that were not served with the Final Extension Order were on inquiry notice of it." *Id.* That the Reorganized Debtors make this argument is surprising because it undercuts and is directly contrary to the very reason that they believed the adversary proceedings needed to be filed under seal in the first instance. If, as the Reorganized Debtors state, it was well known that the adversary complaints were filed and the defendants should have known that they were sued, there was no valid reason to file the complaints under seal. Moreover, because Globe was a **known** preference defendant, it was entitled to actual notice of motions. *See generally*, *In re Thomson McKinnon Securities Inc.*, 130 B.R. 717 (Bankr. S.D.N.Y. 1991) (publication notice is not reasonable to known creditor and known creditors require actual notice). Instead, as they had been doing, the Reorganized Debtors served the numerous extension motions and extension orders on only certain, limited parties. *Id.* They make this argument despite failing to provide any substantive notice to Globe and filing the complaint under seal. To reach this conclusion, the Reorganized Debtors have to mold, stretch and contort the law and facts well beyond recognition.

**C.    The Documents That Were Served On Globe Provided No Notice of the Reorganized Debtors' Covert Motion Practice**

The documents that the Debtors/Reorganized Debtors did serve upon Globe contained no indication that a preference action was brought against Globe and that the Debtors/Reorganized Debtors had additional time to serve complaints filed under seal.

In an attempt to manufacture a constructive notice argument, the Reorganized Debtors point to the First Amended Disclosure Statement to indicate that Globe should have been put on notice that it could be sued.  That allegation has no merit.  The First Amended Disclosure Statement did not inform Globe that it was a preference defendant.  In fact, it should be noted that if Globe had been served with the exhibit to the First Amended Plan, they would have seen that only a select group of avoidance actions were preserved (excluding any action against Globe) and the rest were waived (including an action against Globe).  *See* Exhibit 7.24.  Similarly, standing on its own, the First Amended Disclosure Statement did not inform Globe that the time to serve preference complaints was extended.

It would be both prejudicial and contrary to any notion of due process to assume that Globe had knowledge of a document to which it was entitled but never received notice.  The crux of the issue is notice.  Without due and proper notice, whatever perceived prejudice that the Reorganized Debtors may suffer is irrelevant.  Because the Reorganized Debtors chose not to serve Globe, the innocent party, with the extension motions or extension orders, the only prejudice that would occur is if the Reorganized Debtors are entitled to prosecute any amended complaint against Globe.

**D.    If Delphi Did Not Know It Was Going to Bring Suit Against Globe, How Could Globe?**

One of the purported justifications for the request that this Court enter the Fourth Extension Order was the fact that the Reorganized Debtors had to evaluate which causes of action to bring and which causes of action to forgo.  *See* Reorganized Debtors' Omnibus Response at 3, 10-13.  If the Reorganized Debtors had not determined which preference claims to pursue, how could, as the Reorganized Debtors suggest, Globe know that they were going to be sued?  The Reorganized Debtors seem to equate knowledge that preference litigation is

possible and the fact that Globe's receipt of the Amended Disclosure Statement equates "with the

Submission Defendants' knowledge that they had in fact received a preference claim, [and] put

the Submission Defendants on notice of the Preference claim procedures at issue and on inquiry

notice as to the need to monitor preference claims development." *Id.* at 20-21.  They further

state that "[i]t is difficult to imagine that these Submission Defendants did not understand the

preference implications of the payments." *Id.* at 21.  If it was so obvious to everyone, except the

Reorganized Debtors, that Globe was going to be sued to recover allegedly preferential transfers,

there was no need or valid justification to file the complaint under seal and extend the time to

serve it.  Rather, the Debtors could have filed the complaints openly, served the complaints and

then entered into tolling agreements or otherwise stayed the proceedings.  This would have

allowed Globe and the other preference defendants the ability to choose their own fate.  Rather

than being open about what they were doing, one who was cynical might suggest that the

Debtors/Reorganized Debtors sought these extensions of time to secure the votes needed to

confirm their plan of reorganization without disclosing the possibility to creditors that they

would be sued.  As part of that effort, the Reorganized Debtors executed a stealth campaign for

their own benefit to the detriment of Globe and the other preference defendants.  As a result of

the Debtors/Reorganized Debtors' actions, the inherently contradictory nature of the Fourth

Extension Motion and the hearing related thereto has come to the forefront and the position the

Reorganized Debtors now are taking undercuts the very relief that they sought and were granted.

Once the basis for the relief sought in the Fourth Extension Motion is nullified, it becomes clear

that the Fourth Extension Order should be vacated.

        Additionally, the *TWA* case cited by the Reorganized Debtors provides no support for

their position.  In the *TWA* case, the preference complaint was filed within the statute of

limitations set forth in 11 U.S.C. §546.  Unlike this case, in the *TWA* case the debtors did not ask

the Court to allow the complaints to be filed under seal and delay their service for approximately

two years.  So while the preference complaint in *TWA* may have been a surprise to the defendant

--- it was timely filed and served.  In this case, the complaint was not served for over two years

after the statute of limitations had run.  In fact, the Reorganized Debtors secured four extensions

of time to serve Globe with the preference complaint.  Even if Globe had been served with the

first three of the extensions, the statute of limitations and time for service would have run before

Globe was actually served.  However, the Reorganized Debtors served Globe with none of the

extension orders or extension motions.  If the Reorganized Debtors are now allowed to bring this

suit it would undermine the entire purpose of statute of limitations – granting certainty and

alleviating surprise by the bringing of stale claims.  *See International Strategies Group, Ltd. v.*

*Ness*, 645 F.3d 178, 184 (2d Cir. 2011) (purposes of statutes of limitation are "to prevent the

unexpected enforcement of stale claims concerning which the persons interested have been

thrown off their guard by want of prosecution") (citation omitted).  As stated by the United

States Supreme Court:

> Statutes of limitation, like the equitable doctrine of laches, in their
> conclusive effects are designed to promote justice by preventing
> surprises through the revival of claims that have been allowed to
> slumber until evidence has been lost, memories have faded, and
> witnesses have disappeared. The theory is that even if one has a just
> claim it is unjust not to put the adversary on notice to defend within
> the period of limitation and that the right to be free of stale claims
> in time comes to prevail over the right to prosecute them.

*See Order of Railroad Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348-49

(1944).  Allowing the Reorganized Debtors to have extra time to continue to evaluate whether

they wanted to pursue a cause of action without giving notice to the defendant vitiates the very

purpose of the statute of limitations.  It is even more egregious in this case, because the operative

orders which effectively extended the statute of limitations were secured without any notice

whatsoever to Globe.

**E.    Globe Would Be Prejudiced If the Reorganized Debtors Are Allowed to Prosecute
the Complaint Against Globe**

The Reorganized Debtors plead a tale of woe and hardship if they are not allowed to

amend and prosecute the complaint against Globe.  *See* Reorganized Debtors' Omnibus

Response at 14-18.  It reminds one of the orphan's plea to the Court for mercy at his or her trial

for the murder of his or her parents because he is now an orphan.  Those seeking equity should

come to the court with clean hands and the Reorganized Debtors do not.  *See generally*,

Transcript of Hearing of June 21, 2011 hearing at p. 299 ("THE COURT:  This seems to be - - in

balancing the prejudice issues it's much harder for the plaintiff here to argue that it would be

prejudiced by my revoking the fourth order when it, in fact, knew that the motion wasn't

served."), 305 ("But if it's an order entered based upon a representation that the people had been

served, when in fact, they hadn't been served.  That's a real problem").  Again ignoring the fact

that they failed to provide any notice to Globe, the Reorganized Debtors launch into an argument

of why leave to amend should be granted.  The key, however, is their failure to provide notice

and the resulting deprivation of Globe's ability to contest the requested relief.  As stated by the

Second Circuit, "[i]t is obvious that any defendant would be harmed by a generous extension of

the service period beyond the limitations period for the action, especially if the defendant had no

actual notice of the existence of the complaint until the service period had expired . . ." *Zapata*

*v. City of New York*, 502 F.3d 192, 198 (2d Cir. 2007).

Notwithstanding the foregoing, the Reorganized Debtors argue that Globe cannot and has

not established prejudice if the Reorganized Debtors are allowed to continue prosecuting the

complaint.  Initially, this Court has recognized that the reasons for entry of the Fourth Extension

Order "were a lot weaker than the grounds for the first three." *See* Transcript of Hearing of June 21, 2011 Hearing at p. 302. For that reason, "the issue of prejudice to both sides is not as evenly balanced, I think, as it was before." *Id.* Despite this Court's suggestion that prejudice to the Reorganized Debtors is outweighed by the prejudice to Globe, the Reorganized Debtors soldier on. They posit that the prejudice to them far outweighs any prejudice to Globe. In fact, they argue that the "claimed prejudice" of the "Submissions Defendants" is irrelevant to their attempt to amend and ultimately prosecute their complaints. *See* Reorganized Debtors' Omnibus Response at 16. The Reorganized Debtors' argue that prejudice to Globe (and the other "Submission Defendants") is irrelevant because discovery has not yet begun and the claims are the same claims as in the original complaint (which was filed over two years prior to its service and which was served in December 2009). A portion of this argument is expressly contrary to the Court's determination that discovery should not issue until the matter has further developed. Transcript of Hearing of June 21, 2011 Hearing at pp. 316 – 319. They further argue that, despite the prejudice to Globe being irrelevant, the prejudice to the Reorganized Debtors would be "monumental" if leave to amend and ultimately prosecute the complaints is denied. *See* Reorganized Debtors' Omnibus Response at p. 16. Interestingly, they fail to define "monumental."

Contrary to the Reorganized Debtors' blanket statement that Globe would not be prejudiced, much has happened since 2007, when the complaint was originally filed. Much has also happened since 2009, when the complaint was finally served on Globe. As sworn to in the Carroll Declarations much has transpired which may prejudice Globe. For example, the Regional Account Manager responsible for the Debtors' account, and who was the key interface related to the settlement agreement between the Debtors and Globe, retired in mid-2010 and

passed away in late 2010. Additionally, the memories of remaining employees naturally have

faded with the passage of so much time since the complaint was filed under seal. Moreover,

Globe may have difficulty obtaining documents internally and from its vendors that would assist

in establishing its defenses (*e.g.*, industry standard). Such records would have been easily

obtainable had the complaint been timely served or if Globe, has, at the very least, received

notice of the four extensions of time. Additionally, it is likely that the Reorganized Debtors,

knowing that the complaint was filed, have retained the documents they need to prosecute the

preferences.

**F.    The Original Complaint Was Dismissed by this Court and Is Therefore Irrelevant**

In a last ditch effort to save a cause of action for which Globe had no notice, the

Reorganized Debtors argue that Globe should be estopped from arguing that the preference

complaint should not be amended. They so argue because, they allege, that Globe waived that

right with respect to the original complaint. However, the original complaint has been dismissed

and Globe is free to respond to the amended complaint in whatever manner is appropriate,

including objecting to the Reorganized Debtors' right to even bring it. More importantly,

however, the Reorganized Debtors' initial complaint against Globe will fall once this Court

vacates the Fourth Extension Order. Once that happens, the Reorganized Debtors' arguments fall

with it.

### JOINDER

Globe hereby joins in the Omnibus Reply of Certain Defendants to Reorganized Debtors'

Omnibus Response to Certain Defendants' Submissions Regarding the October 2, 2009

Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion and the

responses of the other "No Notice Defendants."

## CONCLUSION

The Reorganized Debtors failed to give Globe any notice of the extension motions or the

extensions order.  This intentional lack of notice requires that this Court deny the Reorganized

Debtors' request to file an amended preference complaint against Globe.

**GLOBE MOTORS, INC.**

By:  /s/ Jeffrey L. Gansberg
       One of Its Attorneys

Jeffrey L. Gansberg
**Much Shelist Denenberg Ament & Rubenstein, P.C.**
191 N. Wacker Drive, Suite 1800
Chicago, IL 60606
312-521-2000
jgansberg@muchshelist.com