**Hearing Date and Time: October 24, 2011 at 10:00 a.m.**

Jennifer L. Maffett
**THOMPSON HINE LLP**
2000 Courthouse Plaza, N.E.
Dayton, Ohio 45402
(937) 443-6804
(937) 443-6635 (fax)
jennifer.maffett@thompsonhine.com
*Counsel for Rieck Group, LLC nka*
*Mechanical Construction Managers, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
In re:                                                      : Chapter 11
                                                            : Case No. 05-44481 [RDD]
DELPHI CORPORATION, *et al.*                                : Jointly Administered
                                                            :
------------------------------------------------------------x

## OMNIBUS REPLY OF CERTAIN DEFENDANTS TO REORGANIZED DEBTORS' OMNIBUS RESPONSE TO CERTAIN DEFENDANTS' SUBMISSIONS REGARDING THE OCTOBER 2, 2009 SUPPLEMENTAL POSTCONFIRMATION EXTENSION OF AVOIDANCE ACTION SERVICE DEADLINE MOTION

_____

        At the June 21, 2011 hearing on these preference cases, the Court reiterated its consistent

view from the beginning of this case regarding those parties that did not receive notice of the

motions extending the deadline to serve the preference complaints:

> I guess, my point though, ultimately, is I understood a fair matter on this point at the
> July [2010] hearing. I mean, it basically said if you really didn't get any notice of
> this then you shouldn't be sued. I mean, I -- so why are we still dealing [with the
> defendants that did not receive notice]…

June 21, 2011 Hearing Tr., p. 298 (Doc. No. 21490).

A small subset of the defendants in the remaining preference actions pending before the Court in this chapter 11 case fall into this "No Notice" category (the "No Notice Defendants"),[1] and they join in this reply to the Reorganized Debtors' Amended Omnibus Response (Doc. No. 21571, the "Debtors' Omnibus Response") to Certain Defendants' Submissions Regarding the October 2, 2009 Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion (Doc. No. 18952, the "Fourth Extension Motion"). This matter is before the Court upon the Court's instructions at the hearing held on June 21, 2011 (the "2011 Hearing") regarding "Part Two" of the consideration of the Debtors' Motion for Leave to File Amended Complaints (Doc. No. 20575, the "Motion for Leave to Amend") and the filing of declarations by preference defendants and Debtors regarding the extent of notice received by each preference defendant of the Fourth Extension Motion.

At the 2011 Hearing, and consistent with the Court's statement on this issue at the first hearing on July 22, 2010 (the "2010 Hearing"), the Court explicitly stated that those defendants that did not receive notice of the Fourth Extension Motion, despite the Debtors' representation in the Motion that notice was actually served upon all defendants, are entitled to a fresh look at that motion on its merits and instructed the parties to flush out the notice issues.

As evidenced by the declarations and affidavits filed by each of the No Notice Defendants and the Debtors' response thereto (attached as Exs. 20-61 to the Debtors' Omnibus Response), the No Notice Defendants did not receive any notice of the Fourth Extension Motion,[2] and Debtors' arguments to the contrary are without merit. Accordingly, based on this

---

[1] Each of the No Notice Defendants is identified in the signature block of their counsel below, including its respective adversary proceeding case number.

[2] The affidavit or declaration of each No Notice Defendant has been filed in the respective adversary proceeding and is attached to the Debtors' Omnibus Response. Each No Notice Defendant only makes representation as to its own lack of notice of the Fourth Extension Motion. To the extent the Court finds that a defendant included in this group did in fact receive notice, then that defendant shall not be considered a No Notice Defendant. The arguments

Court's holding at both the 2010 and 2011 Hearing, the No Notice Defendants are entitled to a fresh, *de novo* review of the merits of the Fourth Extension Motion.

As suggested by the Court, and for multiple reasons discussed below and in prior filings by many of the preference defendants, there was no good cause for the relief requested in the Fourth Extension Motion and, particularly in light of Debtors' failure to serve the motion on the No Notice Defendants despite their representations to the Court otherwise, it should be vacated as to the No Notice Defendants. Without the additional time to serve the complaints provided by the order granting the Fourth Extension Motion, it is undisputed that the Debtors failed to timely serve the No Notice Defendants with the complaints and, therefore, any amendment to the complaints would be futile and they should be dismissed with prejudice. Debtors' arguments that this would result in unfair prejudice to them are incredulous and without merit. Any prejudice to the Debtors is a result of their own conduct.

The No Notice Defendants constitute a small percentage of the original 177 preference defendants, and even the Court has acknowledged that it is time to dismiss them from these cases. 2011 Hearing Tr., p. 298. The No Notice Defendants request that this Court exercise its discretion and deny Debtors leave to amend the complaints filed against the No Notice Defendants (the "Complaints") and enter an order dismissing the Complaints with prejudice as to defendants that did not receive actual notice of the Fourth Extension Motion.

## I.    FACTS AND BACKGROUND

As this Court is fully aware of the general background of this case, only specific facts relevant to the issues characterized by the Court as "Part Two" of the Motion for Leave to Amend – the consequence of the Debtors' failure to serve the Fourth Extension Motion on the No

---

asserted herein are made on behalf of those defendants that the Court ultimately determines did not receive notice of the Fourth Extension Motion.

Notice Defendants despite their representations to the Court in the Motion that they would do so -- are set forth below.

Case Management Order

1.      Pursuant to the terms of the Case Management Order (the "CMO") originally entered on March 20, 2006,[3] the Court specifically directed the Debtors to provide actual notice to "all parties with a particularized interest in the subject" of any filing.

First Extension Motion

2.      By motion dated August 6, 2007 (the "First Extension Motion"), the Debtors sought authority to file more than 700 preference complaints under seal, to extend the 120-day period to serve the summonses and complaints pursuant to Fed. R. Civ. P. 4(m) as incorporated by Fed. R. Bankr. P. 7004(a) ("Rule 4(m)") and a blanket stay of the applicable adversary proceedings until service of process was effected because they anticipated confirmation of a plan paying unsecured creditors in full. (Doc. No. 8905 at ¶¶ 33-38).

3.      On August 16, 2007, this Court entered an order authorizing Debtors to file the complaints under seal and extending the deadline to serve them under Rule 4(m) to **March 31, 2008**.  (Doc. No. 9105, the "First Extension Order," at ¶¶ 7- 10).

First Amended Disclosure Statement and Plan

4.      After obtaining the First Extension Order, Debtors proposed their first amended joint plan of reorganization (the "First Amended Plan"), which provided for payment in full of all unsecured claims. (Doc. No. 11386).

---

[3] Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 and Red. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Fifteenth Supplemental Order Under 11. U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered August 27, 2009 (Docket No. 18839).

5.      Some of the No Notice Defendants were served with the First Amended

Disclosure Statement (Doc. No. 11388) on or before December 15, 2007, and some of the No

Notice Defendants were only served with the notice of the hearing on confirmation and not the

First Amended Disclosure Statement itself.[4]  At the time the First Amended Disclosure

Statement was served, the Debtors had until March 31, 2008 to serve the preference complaints

pursuant to the First Extension Order.

6.      On January 25, 2008, the Court entered an order (the "Confirmation Order")

confirming the First Amended Plan.

7.      The First Amended Disclosure Statement disclosed that the First Amended Plan

provided for payment in full to unsecured creditors, expressly stated that there was no intention

to pursue the preference actions that had been filed under seal, did not disclose the identity of the

defendants that had been sued for preferences filed under seal and noted that one of the

Extension Orders had already been entered extending Debtors time to serve any preference

complaints to March 31, 2008.  Accordingly, even those No Notice Defendants that did receive it

and read the December 2007 First Amended Disclosure Statement would not have been provided

notice that they had been sued **and**, in the absence of receiving future information to the

contrary, would have believed that, if they were not sued by March 2008, there no was no longer

any risk of suit.

<u>Second and Third Extension Motions</u>

8.      By motion dated February 28, 2008 (the "Second Extension Motion"), Debtors

sought to extend for a second time the deadline under Rule 4(m) by which Debtors would be

---

[4] See Affidavit of Service, Doc. No. 11974 filed January 11, 2007 and Debtors' declarations at Exhibits 20-61 to
Debtor's Omnibus Response.

required to serve process by an additional two months to May 31, 2008.  (Doc. No. 12922 at ¶ 18).

9.      By motion dated April 10, 2008 (the "Third Extension Motion"), Debtors sought to extend for a third time the deadline under Rule 4(m) by which Debtors would be required to serve process.  (Doc. No. 13361 at ¶ 19).

10.      The stated purpose for these extensions was to "enable the Debtors to fulfill their fiduciary responsibility to preserve valuable estate assets in a manner that would not unnecessarily disrupt the emergence process or the Debtors' current business relationships with potential defendants that are necessary to the Debtors' ongoing operations," and to "reduce the administrative and economic burdens of the adversary proceedings on the Debtors, the Court, the Clerk of Court, and the potential defendants." (Third Extension Motion at ¶ 22).

11.       At the hearing on the Second Extension Motion, the Debtors represented to the Court the following:

> We did give some specific notice in connection with [the Second Extension Motion], Your Honor. We gave notice of the motion to [Laneko] Engineering Company, Wachovia Bank National Association and the master service list and the 2002 list. The reason that we gave specific notice to [Laneko] and Wachovia was because those were the only two parties that had been identified under Exhibit 7.24 of the plan … We have not given notice to the 742 other defendants therein which are under seal and it was not served on those defendants except to the extent those defendants already had placed themselves on either the master service list or the 2002 list.

Apr. 30, 2008 Hearing Tr., pp. 11-12, Ex. 3-A(H) to Debtors' Omnibus Response.

12.      In response, the Court concluded that this limited service was proper because the basis for granting the extension was there was no present intention to actually pursue the preference complaints against any of the other defendants:

> Except for the notice you did give I don't think any further notice is necessary … [T]hese causes of action are being preserved in light of the limitations period, however, it's not presently contemplated that they will be pursued, although

obviously the preservation of them means that they may be pursued but given that there's no reason for either the debtors or the potential defendants to start to have to incur any costs in connection with the litigation . . . cause is shown under Rule 4(m) and 9006. (*Id.* at 12-13.)

## Modified Plan

13.     On July 30, 2009, the Court entered an order approving certain modifications to the Plan (Doc. No. 18707, the "Modified Plan").  The effective date of the Modified Plan occurred on October 6, 2009.  (Doc. No. 18958).

14.     Pursuant to the order granting the Third Extension Motion, Debtors had until November 5, 2009 (30 days after substantial consummation of the Modified Plan) to serve the summons and complaint.

15.     Debtors did not serve the Modified Plan on any of the No Notice Defendants.

## Fourth Extension Motion

16.     By motion dated October 2, 2009 (the "Fourth Extension Motion," together with the First, Second and Third Extension Motions, the "Extension Motions"), Debtors sought to further extend for a fourth time the deadline under Rule 4(m) by which Debtors were required to serve process until 180 days after substantial consummation of the Modified Plan. (Doc. No. 18952 at ¶ 16).

17.     Debtors stated that this further extension was necessary in light of the fact that Debtors intended to retain 177 of the adversary proceedings filed under seal (the "Adversary Proceedings").  Debtors asserted that 30 days after substantial consummation of the Modified Plan (the deadline granted to Debtors per the Third Extension Order) was not sufficient time to "assess the ongoing relationship with certain defendants and whether events since initiating the [Adversary Proceedings] have impacted the Debtors' estimated recoveries," and to determine whether to pursue such retained adversary proceedings.  Debtors claimed that the requested

extension and opportunity to evaluate which of the preference claims to pursue "would reduce the administrative and economic burdens of the [Adversary Proceedings] on the Debtors and the potential defendants." (Id. at ¶¶ 17, 19).

18.     In the Fourth Extension Motion, the Debtors represented to the Court that the motion was served in compliance with the CMO, meaning that all those with a particularized interest in the Fourth Extension Motion, including the No Notice Defendants, would be served with the Motion.

19.     In Debtors' Omnibus Response, Debtors state that, at the hearing on the Fourth Extension Motion, counsel for the Debtors represented to the Court that service had been completed "in the usual fashion." (Oct. 22, 2009 Hearing Tr., p. 5, Doc. No. 19002).  Debtors' counsel's full statement to the Court regarding service of the Fourth Extension Motion is as follows:

> There has been no objection filed.  We did serve the motion in the usual fashion, and no objections were lodged.  So we would simply ask that the order be entered as submitted.

*Id.*

20.     Also at that hearing, the Court affirmed the basis for this final extension – to allow Debtors additional time to determine whether to pursue the remaining 177 preference actions that had been filed under seal:

> [A]s the motion states, the potential plaintiff, here, certainly should have a little more time to analyze whether it makes sense to bring the remaining lawsuits or only some of them before DPH and the defendants incur additional costs.

*Id.* at 6-7.

21.     On October 22, 2009, the Court entered an order further extending the time under Rule 4(m) by which Debtors must serve a defendant with a summons and complaint to 180 days after substantial consummation of the Modified Plan. (Doc. No. 18999 at ¶ 2).

22.     Without the extension provided by the order granting the Fourth Extension
Motion, none of the complaints were timely served on the No Notice Defendants.

23.     Despite receiving the additional time to serve the preference complaints for the
purpose of evaluating which of the 177 actions to actually pursue, the Debtors ultimately pursued
each and every one of the 177 preference actions that had been filed under seal.  As this Court
stated:

> Well, you know what?  They all got sued after all, didn't they?  There were 177, and
> 177 got sued.  So, there was not winnowing out process, and frankly there was no
> refinement process either as we've been learning over the last several months.  So,
> why don't we leave [it] at that…

2011 Hearing Tr., p. 306.

### Notice of the Fourth Extension Motion

24.     None of the No Notice Defendants were on the ECF notice list that Debtors used
to serve the Extension Motions, and, according to the docket and service affidavits filed by
Debtors, Debtors did not provide any notice of any of the four Extension Motions to any of the
No Notice Defendants.  (Doc. No. 9039, Affidavit of Service, dated August 10, 2007; Doc. No.
12970, Affidavit of Service, dated March 5, 2008; Doc. No. 13415, Affidavit of Service, dated
April 16, 2008; Doc. No. 18967, Affidavit of Service, dated October 7, 2009.)

25.     Through the responses to the affidavits and declarations filed by the No Notice
Defendants, attached as exhibits to Debtors' Omnibus Response, Debtors acknowledge that,
contrary to the representation made in the Fourth Extension Motion, the No Notice Defendants
were not actually served with the Fourth Extension Motion. [5]

---

[5] At the 2011 Hearing, the Court stated that the Debtors had the burden to produce some evidence that a defendant
had actual notice of the Fourth Extension Motion when the certificates of service showed they did not.  2011
Hearing Tr., p. 307.   With respect to the No Notice Defendants, the Debtors have not done so.

26.    Debtors allege that service of the Extension Motions on the No Notice Defendants

"would have been inconsistent with the purpose of the Motions."  (Debtors' Omnibus Response,

p. 10).  Even if that is true with respect to the First, Second and Third Extension Motions, as the

Court itself stated, it is *not* applicable to the Fourth Extension Motion:

> THE DEBTORS: Plainly, there was not an understanding, and I could imagine very
> sensible reasons for thinking that the notice language in the -- case management
> will likely know what the exact name of the order is -- applied here.  First, it would be
> inherently -- expecting this sort of notice, would be inherently inconsistent with the
> big picture series of orders that were entered that provided for filing the cases under
> seal, precisely to avoid creating the sorts of controversies that would arise here.  I
> mean, that was –
> THE COURT:  But that isn't -- that wasn't the basis for the fourth extension.
> THE DEBTORS:  Well, but it's inextricably tied to put it -- the cases under seal.
> You can't -- I mean, the whole point of the extension was to continue the status quo
> where complaints hadn't been served.
> THE COURT:  But did -- the point as stated in the motion and in the oral
> presentation was that the debtor needed some more time to get his act together.  That
> it changed from the first three.  …[I]t does affect how I view the failure to serve.  I'm
> not sure it does fit into your argument.  It might well fit into the argument in regard
> to the first three orders, where the premise was we don't want to raise issues when
> everyone's going to get paid anyway, so, why create this issue.  But the fourth one,
> which is the one we're really focusing on, is things have been happening so fast,
> Judge, with our new plan, we don't really know who we should be suing at this point.
> And I think that's, you know, that's a different issue.  And maybe that should be a
> point where people should say, well, we want to be sued at that point.  We'd rather
> know.

2011 Hearing Tr., p. 305-306.

<u>The Court's holding with respect to a *de novo* review of the Fourth Extension Motion</u>

27.    This Court has held that the No Notice Defendants, who did not receive any

notice of the Fourth Extension Motion, could challenge them *de novo*.  Specifically, this Court

concluded during the 2010 Hearing that:

> [I]f [a Defendant] didn't get notice, it's wide open and I should look at it as whether,
> you know, it was appropriate to have entered those orders.  And they should have all
> their – you know, their rights to say the [Procedures Order and Extension Orders]
> shouldn't have been entered . . . .
>
>  . . . . if someone really didn't get notice of the extension motions, then it would seem

to me they should be able to argue to me as if the motions were being made right
now . . . .

2010 Hearing Tr., pp. 103, 119 (Doc. No. 21455).  The Court further stated that, if a preference

defendant had no notice of the Fourth Extension Motion, "it's a slam dunk as far as looking at the

order as brand new."  *Id*. at 107.

      28.    Then, at the 2011 Hearing, the Court held:

[M]y view is [the Fourth Extension Motion] should be reviewed de novo, at this
point…  My preliminary view is that people who truly did not get notice of the
extension motions can argue their merits on the merits.

2011 Hearing Tr., p. 300, citing to 2010 Hearing Tr., p. 225.

      29.    The Court has already rejected the Debtors' claim that they would be *unfairly*

prejudiced by the vacating of the order granting the Fourth Extension Motion:

This seems to be -- in balancing the prejudice issues it's much harder for the plaintiff
here to argue that it would be prejudiced by my revoking the fourth order when it, in
fact, knew that the motion wasn't served… I do have some serious doubts as to how
much the debtor can said to be prejudiced by undoing this, given that there wasn't
that notice, particularly when it was represented that there was in the actual
motion….Well, the prejudice it would be, though, how much would you have --
could be said to rely on such an order… But if it's an order entered based upon a
representation that the people had been served, when in fact, they hadn't been served.
That's a real problem.

*Id.,* pp. 299, 304-305.

## II.    LAW AND ARGUMENT

As the Court described it, "Part Two" of the Debtors' motions for leave to amend the

complaints is solely an issue of notice:  if a defendant did not receive notice of the Fourth

Extension Motion, then it is entitled to a *de novo* review of that motion.  The Court also

questioned whether upon such a fresh look the Debtors could substantiate grounds for that final

extension under the circumstances as they existed then and suggested the complaints against

those defendants that did not receive notice should be dismissed.

In response to the Court's statements at the 2011 Hearing, Debtors first argue that all of the defendants, including the No Notice Defendants, should be bound by the order granting the Fourth Extension Motion despite not having been served with it, based on the existence and service of other documents and information and because notice was not required. Debtors are wrong.

Debtors then argue that, even upon a fresh look, the Court properly granted the Fourth Extension Motion and that vacating the order would unfairly prejudice Debtors. Yet the Court has already acknowledged the weakness of the alleged basis for the Fourth Extension Motion and, as stated by the Court, there can be no unfair prejudice to Debtors in vacating an order obtained by a misrepresentation as to service of the underlying motion. The Court should deny the Fourth Extension Motion as to the No Notice Defendants because there was no good cause for the relief requested. Without the extension provided by the Fourth Extension Motion, the complaints were not timely served. Accordingly, any amendment to the complaint is futile and the motions for leave to amend should be denied and the complaints dismissed with prejudice as to the small subset of No Notice Defendants.

**A.      The No Notice Defendants did not receive notice of the Fourth Extension Motion**.

At the 2011 Hearing, the Court was clear that the issue it wanted the Debtors to address specifically was whether there were any factual issues as to who actually received notice of the Fourth Extension Motion:

> To the extent that I am prepared to grant the motion to amend, the next issue is another gate keeping issue, which is the, whether you want to call it a Rule 60 issue or simply an amendment of a interlocutory order issue, and I think that all depends upon reconsideration of the [October 2009] order. And that does hinge on notice. And the parties need to focus on whether there really are any notice issues here."… I think step one of this part two would be the defendants' assertion of their facts as to notice and step two of it would be the debtors' response.

2011 Hearing Tr., pp. 306-307.

As evidenced by the Affidavit of Service filed by the Debtors (Fourth Extension Motion,

Doc. No. 18967) and the affidavits and declarations filed by the No Notice Defendants, there are

no notice issues with respect this small subset of defendants.  They were not served with the

Fourth Extension Motion, and Debtor has offered no facts to suggest that any of the No Notice

Defendants had actual notice of the Fourth Extension Motion.  Accordingly, this Court has held

that, as a matter of law, it can determine whether the No Notice Defendants can be dismissed

from this case now:

> What's the response when there's literally no notice?  Second, what's the response on
> the supplemental case management order and the representation of the motion not
> apparently being true.  And under those scenarios -- if there's not a satisfactory
> answer on those two, isn't this really -- this is a matter of a law, isn't it?  I mean, can I
> deal with this now?

2011 Hearing Tr., p. 295.

Rather than provide evidence to "actually dispute" that the No Notice Defendants did not

receive notice of the Fourth Extension Motion as directed by the Court, which they cannot do,

the Debtors attempt to argue that other documents and filings should somehow count as notice of

the Fourth Extension Motion.  Debtors argue that, even though the No Notice Defendants were

not actually served with the Fourth Extension Motion, they should nonetheless be bound by it

because other documents and filings provided notice and because notice was not required under

Fed. R. Civ. P. 9006.  These arguments are merely further attempts to salvage these cases from

fatal flaws which were solely of the Debtors' making.

Debtors first suggest that service of the First Amended Disclosure Statement provided

sufficient notice to the No Notice Defendants of the Fourth Extension Motion.  Debtors'

argument has no basis.  First, some of the No Notice Defendants did not even receive a copy of

the First Amended Disclosure Statement, but were only served with a notice of the hearing on

confirmation of the First Amended Plan.  See Affidavit of Service, Doc. No. 11974.[6]  As to those

No Notice Defendants, Debtors' argument that the First Amended Disclosure Statement provided

notice is inapposite because they did not even receive that document.  As to those No Notice

Defendants that the Affidavit of Service (see Id.) shows were served with the First Amended

Disclosure Statement, it was served in December 2007, almost two years before the Fourth

Extension Motion.  Moreover, at the time of the First Amended Disclosure Statement, even if a

defendant could tell from the statement it had been sued (which it could not as discussed below)

and took the step of reviewing the thousands of entries on the docket to find the First Extension

Motion, it would have seen that the Debtors had received an extension to serve the complaints

until March 31, 2008.  Without receipt of any further notice, that defendant would have no

reason to believe suit was still a possibility beyond that date.  In any event, it certainly cannot be

said to be notice of a motion filed two years later.

　　Additionally, the Debtors specifically state in Article 7.24 of the First Amended Plan and

Article 7.19 of the Modified Plan that "Causes of action against Persons arising under section

544, 545, 547, 548, or 553 of the Bankruptcy Code or similar state laws shall not be retained by

the reorganized Debtors unless specifically listed on Exhibit 7.24 [7.19 in the Modified Plan]."

Upon entry of the Confirmation Order, the Debtors lost the ability to amend Exhibit 7.19/7.24.[7]

---

[6] In the Debtors' Omnibus Response, Debtors suggest that mere notice of the existence of the First Amended
Disclosure Statement is notice of not only the contents of the statement but somehow notice of the preservation of
preference claims specifically against individual defendants even though those claims were not even enumerated in
the statement itself.  The No Notice Defendants incorporate the arguments made by Detroit Products International,
LLC, f/k/a Doshi Prettl International, LLC in their reply to Debtors' Omnibus Response to Debtors' theory regarding
notice based on receipt of the confirmation hearing notice alone.

[7] Section 14.3 of the First Amended Plan provides that the Debtors "may alter, amend, or modify any Exhibits to this
Plan under Section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date."  The Confirmation
Date was January 25, 2008.  Thus, after January 25, 2008, the Debtors did not have the right under the plan to
amend or add to Exhibit 7.24 (renumbered 7.19 in the Modified Plan).

Exhibit 7.24 only lists four potential actions.  In fact, it does not identify any of the No Notice

Defendants as potential defendants in any of the actions Debtors seek to retain.

Even if the Court were to determine that Debtors retain the right to pursue these causes of

action in the First Amended Plan, service of the First Amended Plan is not sufficient notice of

the subsequent complaints.  It has long been recognized that: "The core of due process is the

right to notice a meaningful opportunity to be heard." *Lachance v. Erickson*, 522 U.S. 262, 266

(1998).  The Supreme Court and the Second Circuit both recognize that, if a party is not afforded

due process during the proceeding that led up to entry of an order, the party is not bound and the

order is unenforceable against that party.  For example, in *City of New York v. New York, N.J. &

H. R.R. Co.*, 344 U.S. 293 (1953), the City, a creditor of the bankruptcy debtor, did not receive

notice of the claims bar date order issued by the court despite the fact that the debtor was

required to mail notice of the order to the City.  The Supreme Court held that the City, whose

identity and address were known, was not bound by the claims bar date because it was not given

notice by the debtor.  Similarly, in *In re Johns Manville Corp.*, 600 F.3d 135 at *20 (2d Cir.

2010), the Second Circuit held that because Chubb Indemnity Insurance Company did not

receive notice of the proceedings that led to approval of certain agreements and orders, it was not

bound by the orders because to bind Chubb would violate its due process rights.  The Court

concluded that, based on the information provided, Chubb could not anticipate that its rights

were being foreclosed.  Therefore, even if the Court finds that the Debtors had the right to amend

Exhibit 7.19/7.24, the Debtors have not adequately described the avoidance actions.  Exhibit

7.19/7.24 provided no information on the avoidance causes of action to be retained – it did not

disclose the identity of the defendant or, more importantly, the value of the claims.  Indeed,

because all of the complaints were filed under seal, neither the creditors nor the potential

defendant could review the preserved causes of action to glean this information.

Debtors further suggest that the Debtors' filing of a copy of the Disclosure Statement with

the Debtors' Form 8-K on December 13, 2007 with the Securities and Exchange Commission

somehow was sufficient to put parties on notice that they were subject to a preference action

filed under seal and should therefore be on the lookout for further Extension Motions.  The

Debtors do not cite a single case or other authority holding that "service" in such a matter is

sufficient to put parties on notice that their rights may be in jeopardy.  The Defendants have been

unable to locate any such authority.  The Debtors have presented a novel method of service, but

one that must ultimately be found insufficient.

For the Debtors' notice under this method to be effective, an extraordinary number of

factors need to line up.  First, a potential preference defendant needs to be monitoring the

Debtors' SEC filings.  The Debtors fail to explain why any potential preference defendants would

be doing this in the first place.  However, assuming the potential defendant did have cause to see

the Debtors' 8-K in December of 2007 and read the Disclosure Statement attached thereto, the

potential defendant would then have to make the same analytical leap to connect itself to being

one of the potential defendants with a complaint under seal – a requirement which is rejected by

this brief, *supra*.  And then would have had to make a second analytical leap that after the

passage of March 31, 2008, somehow suit could still be brought despite not having received any

notice of any further extensions of the service deadline or any indication they had actually been

sued.

-16-

Further, the effectiveness of this method of service has already called into question by the Court. At the 2011 Hearing, the Court, while not deciding the issue, identified a spectrum of effective ways in which the Debtors could show notice:

> I mean, if it was -- I haven't ruled on this but I could see a spectrum which is we had public filings that referred to the disclosure statement and so you could be deemed to have read the public filings and therefore deemed to have read the disclosure statement to we have an affidavit of Mr. X from Delphi who specifically spoke to Mr. Y at Doshi about this issue. It's that level of spectrum.

2011 Hearing Tr., p. 308. Clearly, the Debtors' purported service through the 8-K filing is at the bottom, and therefore most suspect, end of this spectrum.

Moreover, the No Notice Defendants' knowledge of the bankruptcy itself is not sufficient to provide them notice of the Fourth Extension Motion - the Court has already rejected this argument: "Well, but it's more than Delphi's bankruptcy. Just the fact that Delphi was in bankruptcy isn't going to be enough, obviously." 2011 Hearing Tr., p. 308. In *City of New York*, the Supreme Court expressly declared that the Due Process Clause entities creditors to reasonable notice from a bankruptcy court before they will be bound – even where the creditor knew of the bankruptcy proceedings but did not monitor them. The Court stated:

> Nor can the bar order against New York be sustained because of the city's knowledge that the reorganization of the railroad was taking place in the court. The argument is that such knowledge puts a duty on creditors to inquire for themselves about possible court orders limited the time for filing claims. But even creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred.

344 U.S. at 297. The Supreme Court has never wavered from this reasoning. *See, e.g., Richards v. Jefferson County*, 517 U.S. 793, 800 n.5 (1996) (no duty to intervene in suit in which the party is a stranger); *Martin v. Wilks*, 490 U.S. 755, 763 (1989) (no duty to intervene where a party is entitled to notice and a hearing before its rights are affected).

Accordingly, the No Notice Defendants had no duty to monitor the bankruptcy case merely because they were served with or had knowledge of the Amended Disclosure Statement. The Amended Disclosure Statement, which fails to identify any of the Defendants as potentially retained claims, is not sufficient notice to monitor the bankruptcy or anticipate any extension motions or avoidance actions.

In its most recent Omnibus Response the Debtors cite to *In re TWA Inc. Post Confirmation Estate,* 305 B.R. 221, 227 (D. Del. 2004) for the proposition that "[I]n large chapter 11 cases sophisticated creditors typically are well aware of prospects and risks of preference litigation. ... Thus, it seems unlikely that creditors could be surprised or caught off guard when such preference complaints are finally filed."

*TWA* is inapplicable to establish an ongoing duty to monitor the case at bar for two reasons.  The first is the assumption, apparently being put forth by the Debtors that all of the remaining preference defendants are "sophisticated creditors" as that term is used in *TWA*.  Some of the remaining defendants are not experienced in bankruptcy preferences and some of them were not even creditors of the estate when the First Amended Disclosure Statement was served. Further, whatever duty the Debtors would like to show *TWA* as imposing on creditors, the facts of these cases are so out of the ordinary that it strains the credibility of this argument beyond the breaking point.

Through *TWA*, the Debtors are proposing that a creditor who received a payment 90 days prior to the petition date should know they might be the subject of a preference action and somehow monitor the ongoing proceedings in a rapidly moving docket and attempt to speculate as to whether it is one of the complaints that was filed under seal in 2007, laid dormant for three

years while the statute of limitations ran, and then arose from the grave in 2009 or 2010.  Such a

duty simply cannot be expected of creditors, regardless of their level of "sophistication".

Further, imposition of such a duty is directly contrary to the Debtors' purported motives

for keeping the complaints sealed in the first place.  The Debtors cannot claim they were hoping

to spare possible defendants from having to hire counsel when seeking the Extension Motions

while now arguing that possible defendants were under a duty to monitor case proceedings in

detail.

Neither the notice claimed by the Debtors through the service of the First Amended

Disclosure Statement or the SEC filing nor the "inquiry notice" purportedly created by the

dissemination of the First Amended Disclosure Statement and the existence of the bankruptcy

itself were methods approved by the Court.  The methods for notifying parties in interest and

serving them with pleadings were expressly provided in the CMO.  The Debtors cannot now

retroactively create new service methods in an attempt to overcome its express choice not to

follow the service requirements of the CMO, or to provide the No Notice Defendants with any

notice of the Fourth Extension Motion at all.

Finally, the Debtors argue that they were not required to provide notice of the Fourth

Extension Motion under Fed. R. Civ. P. 9006(b) and, therefore, the failure to serve notice should

have no consequence.  Not only has the Court rejected this argument (See 2011 Hearing Tr.,

p. 300) (quote about ex parte…), but it completely ignores the affirmative misrepresentation the

Debtors made to the Court that service was in fact provided.   The Fourth Extension Motion

made an affirmative representation that notice would be provided to all parties affected by the

relief requested and Debtors, undisputedly and intentionally, failed to make such service.  After

making that representation in the filed motion, Debtors had an absolute obligation to explicitly

inform the Court if anything in the motion was not accurate, which the representation regarding

service undisputedly was.

Debtors claim (i) that service of the Extension Motions on the No Notice Defendants

"would have been inconsistent with the purpose of the Motions," Omnibus Response, p. 10; and

(ii) that they were explicit in telling the Court that the representation made in the motion

regarding service was false and that all of the 177 remaining preference defendants would not be

served. Debtors are again wrong on both counts.

First, even if it is true that, with respect to the First, Second and Third Extension Motions,

service would have been inconsistent with the purpose of the extensions (to hide from the

defendants the fact they had been sued), as the Court itself stated, that argument is *not* applicable

to the Fourth Extension Motion:

> But that isn't -- that wasn't the basis for the fourth extension… the point as stated in
> the motion and in the oral presentation was that the debtor needed some more time to
> get his act together. That [the purpose] changed from the first three. …[I]t does
> affect how I view the failure to serve. I'm not sure it does fit into your argument. It
> might well fit into the argument in regard to the first three orders, where the premise
> was we don't want to raise issues when everyone's going to get paid anyway, so, why
> create this issue. But the fourth one, which is the one we're really focusing on, is
> things have been happening so fast, Judge, with our new plan, we don't really know
> who we should be suing at this point. And I think that's, you know, that's a different
> issue. And maybe that should be a point where people should say, well, we want to
> be sued at that point. We'd rather know.

2011 Hearing Tr., pp. 305-306

30.    Second, Debtors' claim that they were transparent with the Court at the hearing by

fully disclosing that the service actually being done was different than what the Fourth Extension

Motion represented (service in accordance with the CMO) is belied by their own words. As

quoted by Debtors in their Omnibus Response, the only statement made to the Court at the

hearing regarding service of the Fourth Extension Motion was that service had been completed

-20-

"in the usual fashion." (Oct. 22, 2009 Transcript, p. 5).  Actually, Debtors' counsel's full

statement to the Court regarding service of the Fourth Extension Motion was more descriptive

and affirmative then just a mere two words.  Debtors' counsel represented to the Court:

> There has been no objection filed.  We did serve the motion in the usual fashion, and
> no objections were lodged.  So we would simply ask that the order be entered as
> submitted.

*Id*.  Debtors' counsel's statement clearly implies that all parties affected by the relief requested

were served and, *because no objections had been filed*, the Court should enter the order.  This

statement does nothing to dispel the representation in the Fourth Extension Motion that all

parties affected by the relief requested were served and, in fact, reinforces it by urging the Court

to enter the order because no objections were filed.  What the Debtors failed to tell the Court was

that at least some of the defendants affected by the relief requested (i.e., the "No Notice

Defendants") *never even had the opportunity* to object because they were not served with the

motion, despite the explicit representation in the motion that they were.

The absurdity of the Debtor's argument is further exposed when the Debtors' counsel's

statement at the hearing on the Fourth Extension Motion is compared to the lengthy exchange

between the Debtors' counsel and the Court at, for example, the hearing on the Second Extension

Motion, wherein the Debtors' counsel did explicitly and fully disclose to the Court that most of

the preference defendants were *not* being served with that motion. (See quoted transcript at ¶¶ 11

and 19 above; Debtors' Omnibus Response, p. 8).

This impact of the misrepresentation to the Court regarding service of the Fourth

Extension Motion is exacerbated when considering the changed circumstances of the chapter 11

case and the clear intent, as of the filing of the Fourth Extension Motion, to proceed with at least

some of the adversaries (and, as it turned out, *all 177 of them*).  In light of this change in purpose

of the extension there was an enhanced obligation for the Debtors to either serve the defendants, or to *explicitly inform the Court* that their representation in the motion that the defendants were being served was not true and that the defendants were actually not being served.  Debtors' counsel's statements to the Court that it should enter the order because service was completed in the usual fashion and no objections were filed did nothing to contradict the written representation that service was made.

The Debtors are essentially suggesting that the Court knew or should have known that the "usual fashion" meant they were *not* serving the 177 preference defendants as represented in the motion and that the Court somehow had an obligation to review the certificates of service Debtors filed to confirm for itself what service was completed, rather than being able to rely on the Debtors' representation in the motion and at the hearing.  (Debtors' Omnibus Response, pp. 9-10.)  That position cannot and should not be sustained by this Court.

In any event, the Court, as made apparent from its statements at the 2011 Hearing, was *not* in fact aware that service was not made as represented in the motion.  2011 Hearing Tr., p. 292 ("it does not appear to me that that representation was correct as to the service of the motion") and p. 298 ("and I'm very troubled by the fact they were not served by the motion").  Debtors' attempted reliance on a rule of civil procedure (Fed. R. Civ. P. 9006(b)) to excuse them from the consequences of their misstatements to the Court regarding service is yet another desperate attempt to unwind reality and should be rejected.

**B.**       **Because the No Notice Defendants did not receive notice of the Fourth Extension Motion, they are entitled to a *de novo* review of the motion.**

The Court has already determined that any defendant, like the No Notice Defendants, who did not receive notice of the Extension Motions, specifically the Fourth Extension Motion, may now challenge, de novo, the entry of the Extension Orders.  (See 2010 Hearing Tr., p. 260.)

("My preliminary view is that people who truly did not get notice of the extension motions can argue their merits on the merits; it's not a Rule 60 requirement.  They can argue them as if they were being argued for the first time.").[8]  This holding is consistent with the Court's holding at the first hearing in these matters, the 2010 Hearing.  At that hearing, the Court concluded that "if [a Defendant] didn't get notice, it's wide open and I should look at it as whether, you know, it was appropriate to have entered those orders.  And they should have all their – you know, their rights to say the [Procedures Order and Extension Orders] shouldn't have been entered."  (2010 Hearing Tr., pp. 103, 119.)  Indeed, this Court held that if, as here, a party had no notice of Debtors' Motions, "it's a slam dunk as far as looking at the order as brand new."  Id. at 107.

Because the indisputable evidence, including Debtors' own admissions and documents, confirms that the Debtors failed to provide the No Notice Defendants with **any** actual notice of the Extension Motions, including the Fourth Extension Motion, the No Notice Defendants are entitled to a de novo review of at least the Fourth Extension Motion.[9]

### C.    Under a *de novo* review of the Fourth Extension Motion, it should be denied and vacated as against the No Notice Defendants.

Good cause for extending the service deadline under Rule 4(m) is "generally found only in exceptional circumstances where the Debtor's failure to serve process in a timely manner was the result of circumstances beyond its control."  *Nat'l Union Fire Ins. Co. v. Sun*, 1994 U.S. Dist.

---

[8] Even if the Court does not review its entry of orders granting the Extension Motions on due process grounds, federal courts of appeal have concluded that trial courts may revoke a previously granted Rule 4(m) extension where such court determines that the extension was inappropriate:

> [Rule 4(m)] does not address the authority of a district court that has granted [] an extension to revoke it if it subsequently determines that good cause has not been shown. We discern no reason why a district court should not be able to do so . . . If a district court concludes that good cause had not been shown, it is within its discretion to vacate its prior extension of time for effecting service that was based upon that erroneous foundation.

*McCrae v. KLLM Inc.* 89 Fed. Appx. 361, 363 (3d Cir. 2004).

[9] Many of the No Notice Defendants and the other preference defendants, in prior filings, have made multiple arguments supporting the Court's holding that they are entitled to a *de novo* review of at least the Fourth Extension Motion, and those arguments are incorporated herein.

LEXIS 11934 *8 (S.D.N.Y. Aug. 25, 1994); *E. Refractories Co., v. Forty Eight Insulations, Inc*.,

187 F.R.D. 503, 505 (S.D.N.Y. 1999).  Good cause is measured against the plaintiff's reasonable

efforts to effect service and the prejudice to the defendant from the delay. *E. Refractories Co., v.*

*Forty Eight Insulations, Inc.,* 187 F.R.D. 503, 505 (S.D.N.Y. 1999); AIG Managed Mkt. Neutral

Fund v. Askin Capital Mgmt.. L.P., 197 F.R.D. 104,108 (S.D.N.Y. 2000).  Examples of good

cause include a failure of service where the defendant is actively avoiding service or gives the

false impression that service has been perfected by his bad faith participation in settlement

discussions.  *See, e.g., United States v. Ayer*, 857 F.2d 881, 886 (1st Cir. 1988).  In short, a basis

exists for extending the time to serve a complaint, despite the delay in notice of claims to the

defendant as required by due process,  when, after due diligence and effort, the plaintiff is still

unable to timely effect service.  The purpose of an extension under Rule 4(m) is to facilitate

service, not to delay it for plaintiff's purpose.

Specifically, Rule 4(m) should not be used to provide additional time for the plaintiff to

decide whether to proceed with the claim or not or to proceed at a time better-suited to the

plaintiff's workload or business strategy.  *See Fimbres v. United States*, 833 F.2d 138, 139 (9th

Cir. 1987) (Plaintiff's claim that it lacked the financial resources to prosecute the action was an

improper basis to delay service); *Smith v. Pennsylvania Glass Sand Corp*., 123 F.R.D. 648, 651

(N.D. Fla. 1988) ("Plaintiff cannot deliberately or even inadvertently 'wait and see' if his

financial resources improve enough to allow him to diligently prosecute his case.").  The statute

of limitations and Rule 4(m) are meaningless if they can just be extended to suit the plaintiff's

preferred timing.

The Debtors' stated basis for the relief requested in the Fourth Extension Motion [10] is that they needed additional time to evaluate which of the 177 preference proceedings they wanted to pursue and they just had too many other things to do to get that done in the time remaining since the last extension they obtained.  Yet again, the Debtors asserted they were acting for the benefit of the defendants they wanted to remain in the dark for another six months to keep them from "incurring unnecessary costs" to defend actions "the Debtors ultimately may determine not to prosecute…" (Fourth Extension Motion, p. 9.)  Not only is this the antithesis of due process and the purpose of requiring timely service of a complaint, but this is simply not good cause for an extension under Rule 4(m).

Had the Debtors served the Fourth Extension Motion on any of the preference defendants, they would have had the opportunity to make these arguments to the Court.  By not serving the preference defendants (despite representing in the motion that they had), the Debtors were able to make it appear to the Court that all sides and views were being represented, lulling the Court into believing that all parties, including the defendants, were on board with the extension.  This was a false impression upon which the Court apparently relied in granting the uncontested Fourth Extension Motion despite its concerns with the merits of the basis for this extension when compared to the prior extensions.  As this Court has said, "the grounds for the fourth extension were a lot weaker than the grounds for the first three.  And the issue of prejudice to both sides is not as evenly balanced, I think, as it was before."  2011 Hearing Tr., p. 302.

---

[10] Many of the preference defendants have, in previous filings, argued that the Debtors lacked good cause for each of the Extension Motions, that the changing bases for each extension made them improper and that they violated the defendants' due process rights.  The No Notice Defendants reserve their right to make those arguments, but for purposes of this Reply focus solely on the lack of good cause for the relief requested in the Fourth Extension Motion, particularly in light of the failure to serve the No Notice Defendants and the Debtors' misrepresentations to the Court otherwise.

While the stated basis for the Fourth Extension Motion was suspect from the outset, it becomes completely untenable knowing what we know now, that after requesting yet additional time to (i) evaluate the 177 pending preference action to determine which ones to pursue and (ii) to avoid having the defendants incur unnecessary costs of defending actions that would not or should not be pursued, the Debtors nevertheless served and pursued all 177 complaints filed under seal.  As the Court said:

> Well, you know what?  They all got sued after all, didn't they?  There were 177, and 177 got sued.  So, there was not winnowing out process, and frankly there was no refinement process either as we've been learning over the last several months.  So, why don't we leave [it] at that…

2011 Hearing Tr., p. 306.

Debtors' affidavit that there was an evaluation done and the business decision was to pursue all 177 actions is self-serving and contradicted by reality.  As the Court alluded to, several actions were dismissed or resolved early on because there was clearly no basis for the claims or a substantial portion of the claims, which is precisely the sort of winnowing process the Debtors were granted relief to complete.  In reality, the No Notice Defendants' due process rights were trampled for months longer and many were still sued on claims that lacked any merit.  Under a fresh look at the Fourth Extension Motion, now having the opportunity to hear from all parties (rather than the Debtors acting for the alleged protection and benefit of the No Notice Defendants) and knowing that the Debtors failed to use the additional time for the purpose they claimed they needed it, the Court should deny the motion as to the No Notice Defendants.

-26-

**D.    Without the extension provided by the order granting the Fourth Extension Motion, the Complaints were not timely filed and, therefore, the Motions for leave to amend the Complaints should be denied and the Complaints against the small group of No Notice Defendants should be dismissed with prejudice.**

The Fourth Extension Motion authorized the extension of the time to serve the complaints pursuant to Civil Rule 4(m).  Civil Rule 4(m) is incorporated into the Bankruptcy Rules by Bankruptcy Rule 7004(a)(1) and provides that, "If a defendant is not served within 120 days after the complaint is filed, the court - on motion or in its own after notice to the plaintiff - must dismiss the action without prejudice against the defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m).

The Debtors do not dispute that without the extension provided by the Fourth Extension Motion the Complaints were not timely served in accordance with Rule 4(m).  Rather, they argue that vacating the order granting the Fourth Extension Motion, resulting in the dismissal of the Complaints against the No Notice Defendants, would unfairly prejudice the Debtors.  This is pure chutzpah.  The Court said it best:

> This seems to be -- in balancing the prejudice issues it's much harder for the plaintiff here to argue that it would be prejudiced by my revoking the fourth order when it, in fact, knew that the motion wasn't served… I do have some serious doubts as to how much the debtor can said to be prejudiced by undoing this, given that there wasn't that notice, particularly when it was represented that there was in the actual motion….Well, the prejudice it would be, though, how much would you have -- could be said to rely on such an order… But if it's an order entered based upon a representation that the people had been served, when in fact, they hadn't been served. That's a real problem."

2011 Hearing Tr., pp. 299, 304.  Any prejudice to the Debtors is a result of their own conduct. The fact that Debtors would still have had time to serve the complaints by the then-existing deadline if the Fourth Extension Motion had been denied is inapposite.  Their reliance is on an order obtained by misrepresenting to the Court who was served with the motion was at their own

risk.  Debtors, by choosing not to serve the Fourth Extension Motion on all of the defendants, after representing to the court that they would, created the situation in which they find themselves.  That is not the fault of the Court as Debtors seem to suggest, or the defendants, and Debtors must bear the consequences of their decisions and actions which, going back more than four years, have all been designed to hide information from and mislead the preference defendants for Debtors' own benefit and advantage.  Even if the comments at the hearing on the Fourth Extension Motion about service in the "usual fashion" could be construed to create an ambiguity about service, the risk of that ambiguity clearly falls on Debtors, who made the misrepresentation in the Motion and failed to clearly and explicitly advise the Court to the contrary, as evidenced by the Court's own statements at the Hearing that it was not aware the defendants were not being served.  2011 Hearing Tr, pp 291-292.

Without the extension provided for by the order granting the Fourth Extension Motion, the Debtors did not timely serve the complaints.  Debtors' suggestion that the Court should now, some two years later (now *six years* after the bankruptcy was filed and *four years* after the statute of limitations expired), provide yet another chance to timely serve the complaints to prevent *prejudice to the Debtors* is beyond all possible fairness to the No Notice Defendants.  If the Court vacates the order granting the Fourth Extension Motion as to the No Notice Defendants, the Complaints will not be timely served.  Thus, it would be wholly unfair and prejudicial to the No Notice Defendants to allow Debtors yet another chance at this beyond-late date to serve the complaints, when it is Debtors' own actions and manipulations that have created this situation, a situation which has already cost the No Notice Defendants tens, if not hundreds, of thousands of dollars in attorneys' fees to address these procedural issues created by Debtors' attempt to have their cake and eat it too all while keeping the No Notice Defendants in the dark.

Any amendment to the complaint would be futile because, when the plaintiff fails to effectively and timely serve the complaint, the claims would not survive a motion to dismiss. Rule 4(m); *see Acito v. IMCERA Group*, 47 F.3d 47, 55 (2d Cir. N.Y. 1995); *Hall v. N. Bellmore Union Free Sch. Dist.*, 2010 U.S. Dist. LEXIS 27448, 10-11 (E.D.N.Y. Mar. 18, 2010). Accordingly, the Court should deny the Motions for leave to amend as to the No Notice Defendants and enter an order dismissing the complaints against them with prejudice. *Id.*

## IV.    INCORPORATION OF OTHER DEFENDANTS' ARGUMENTS

The No Notice Defendants incorporate all of the other meritorious arguments raised by the other preference defendants, including any individual brief filed by any of the No Notice Defendants in response to the Debtors' Omnibus Response as they are applicable.

## V.    CONCLUSION

Rule 15 speaks of justice.  There is nothing "just" about how Debtors have proceeded in these preference cases, from their attempted use of *ex parte* motions to extend the time in which they could keep the preference defendants in the dark, to their misrepresentations to the Court about who had been served with notice of the Fourth Extension Motion.  Debtors have proceeded at their own risk here and they, not the Court, have created the circumstances in which they find themselves.  For all of the foregoing reasons, the No Notice Defendants respectfully request that the Court exercise its discretion to deny Debtors' Motion for Leave so that the complaints against the No Notice Defendants remain dismissed and grant the No Notice Defendants such other and further relief as this Court may deem appropriate.

**Date:  October 7, 2011**
**Dayton, Ohio**

/s/ Jennifer L. Maffett
Jennifer L. Maffett (OH #0075334)
**THOMPSON HINE LLP**
2000 Courthouse Plaza N.E.
10 West Second Street
Dayton, Ohio 45402
937.443.6804
937.443.6635 (facsimile)
jennifer.maffett@thompsonhine.com
*Counsel for Rieck Group, LLC nka Mechanical*
*Construction Managers, LLC Adv. Proc. No. 07-2750*

/s/ *Joel D. Applebaum (with written*
*authorization)*
Joel D. Applebaum (*pro hac vice*)
Mahesh K. Nayak (*pro hac vice*)
**CLARK HILL PLC**
151 South Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
(248) 642-9692
*Attorneys for Defendant, Detroit Products*
*International, LLC, f/k/a*
*Doshi Prettl International, LLC*
*Adversary Proceeding Number: 07-02211*

/s/ Devon Merling (per written authorization 10/6/11)
**POLSINELLI SHUGHART PC**
Jason A. Nagi (JN 6891)
Christopher A. Ward (CW 0854)
7 Penn Plaza, Suite 600
New York, New York 10001
Tel: (212) 644-2092
Fax: (212) 684-0197
Jnagi@polsinelli.com
cward@polsinelli.com

-and-

Kim Martin Lewis
Devon Merling
**DINSMORE & SHOHL, LLP**
1900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202
Telephone: (513) 977-8200
Facsimile: (513) 977-8141
kim.lewis@dinslaw.com
devon.merling@dinslaw.com
*Counsel for Florida Production Engineering, Inc.*
*Adversary Proceeding #:  07-02302*


/s/ Jason V. Stitt (signed with permission)
Jason V. Stitt (0078513)
**KEATING MUETHING & KLEKAMP PLL**
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Telephone:        (513) 639-3964
Facsimile:        (513) 579-6457
jstitt@kmklaw.com
*Counsel for Defendant, F.A. Tech Corporation*
*Adv. Proc. No. 07-02350 [RDD]*


*s/ Douglas L. Lutz* (per authorization on 10/6/11)
Douglas L. Lutz, Esq.
Lindsey F. Baker, Esq.
**FROST BROWN TODD LLC**
3300 Great American Tower
301 East Fourth Street
Cincinnati, OH 45202
513-651-6800 Telephone
513-651-6981 Facsimile
dlutz@fbtlaw.com
lbaker@fbtlaw.com
*Attorneys for Sprimag Inc., Adv. Pro. No. 07-02644*

By: /s/ William M. Barron
William M. Barron
Ronald E. Barab
David Webster Barron
Nicholas J. Roecker
**SMITH, GAMBRELL & RUSSELL, LLP**
250 Park Avenue
New York, New York 10177
 (212) 907-9700
wbarron@sgrlaw.com
*Attorneys for Heraeus Precious Metals*
*Adv. Pro. No. 07-2445*
*and*
*Heraeus Metals Processing*
*Adv. P`ro. No. 07-02442*

/s/ Adam D. Bruski
Susan M. Cook (MI # P 31514)
Rozanne M. Giunta (MI # P 29969)
Adam D. Bruski (MI # P 70030)
**LAMBERT, LESER, ISACKSON,
COOK & GIUNTA, P.C.**
916 Washington Ave, Suite 309
PO Box 835
Bay City, MI  48707
989-893-3518
abruski@lambertleser.com
*Counsel for Defendants Pro Tech*
*Machine (Adv. Pro. No. 07-02690)*
*and Stephenson & Son Roofing*
*(Adv. Pro. No. 07-02654)*

By: /s/ Jeffrey A. Wurst
Jeffrey A. Wurst
**RUSKIN MOSCOU FALTISCHEK, P.C.**
East Tower, 15th Floor
1425 RXR Plaza
Uniondale, New York 11556-1425
(516) 663-6600
jwurst@rmfpc.com
*Counsel for Wells Fargo Bank, N.A.*
*Adv. Proc. No. 07-02597*

Robert N. Michaelson
**THE MICHAELSON LAW FIRM**
11 Broadway, Suite 615
New York, NY 10004
(v) 212.604.0685
(f)  800.364.1291
(c) 917.992.5006
rnm@michaelsonlawfirm.com
www.michaelsonlawfirm.com
*Counsel for NXP*


Michelle McMahon (MM-8130)
**BRYAN CAVE LLP**
1290 Avenue of the Americas
New York, NY 10104
Telephone:  (212) 541-2000
Facsimile:  (212) 541-1493

and

/s/ Christopher J. Lawhorn (per written
authorization 10/7/11)
Lloyd A. Palans (admitted pro hac vice)
Christopher J. Lawhorn (admitted pro hac vice)
**BRYAN CAVE LLP**
200 North Broadway, Suite 3600
St. Louis, MO 63102
Telephone:  (314) 259-2000
Facsimile:  (314) 259-2020
lapalans@bryancave.com
cjlawhorn@bryancave.com
*Attorneys for Spartech Polycom*


/s/  Stephen M. Packman            .
Stephen M. Packman
2 Penn Plaza, Suite 1500
**ARCHER & GREINER, P.C.**
New York, NY  10121
Tel:  (212) 292-4988
Fax:  (212) 629-4568
spackman@archerlaw.com
*Attorneys for Magnesium Electron Inc. and*
*Magnesium Elektron Inc., Adv. Proc. No. 07-02758*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 7th day of October 2011, a true and correct copy of the foregoing was served electronically through the Court's ECF System to the parties registered to receive notice thereby, and upon the following parties by first-class mail:

Alicia M. Leonhard, Esq.
Tracy Hope Davis, Esq.
Office of the United States Trustee
Southern District of New York
33 Whitehall Street, Suite 2100
New York, NY 10004

Lara R. Sheikh, Esq.
Togut, Segal & Segal LLP
One Penn Plaza
Suite 3335
New York, NY 10119

Cynthia 1. Haffey, Esq.
Butzel Long, P.C.
150 W. Jefferson Avenue
Suite 100
Detroit, MI 48226

Eric Fisher, Esq.
Butzel Long, P.C.
380 Madison Avenue
22nd Floor
New York, NY 10017

/s/ Jennifer L. Maffett
Jennifer L. Maffett

666645