CLARK HILL PLC
151 S. Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
Joel D. Applebaum
*pro hac vice admission*
Mahesh K. Nayak
*pro hac vice admission*
japplebaum@clarkhill.com
(248) 642-9692

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| DELPHI CORPORATION, *et al.*, | ) | Case No. 05-44481 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable Robert D. Drain |
| | ) | |
| DELPHI CORPORATION, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Adv. Pro. No. 07-02211 |
| | ) | |
| -against- | ) | |
| | ) | |
| DOSHI PRETTL INTERNATIONAL and | ) | |
| DOSHI PRETTL INT., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPLY IN OPPOSITION TO: (I) REORGANIZED DEBTORS' 4(M) SERVICE STATEMENT AND (II) REORGANIZED DEBTORS' AMENDED OMNIBUS RESPONSE TO CERTAIN DEFENDANTS' SUBMISSIONS REGARDING THE OCTOBER 2, 2009 SUPPLEMENTAL POSTCONFIRMATION EXTENSION OF <u>AVOIDANCE ACTION SERVICE DEADLINE MOTION</u>**

Detroit Products International, LLC, f/k/a Doshi Prettl International, LLC ("**DPI**"), states

as follows for its Reply in Opposition to: (I) Reorganized Debtors' 4(M) Service Statement and (II)

Reorganized Debtors' Amended Omnibus Response to Certain Defendants' Submissions

Regarding the October 2, 2009 Supplemental PostConfirmation Extension of Avoidance Action Service Deadline Motion.

### **Preliminary Statement**

At the June 21, 2011 hearing, this Court ruled that "if you really didn't get any notice of [the Fourth Service Extension Motion[1]] then you shouldn't be sued." *See* Excerpt from June 21, 2011 Hearing Transcript attached hereto as Exhibit 1 at p. 298, lns 12-16. **It is undisputed that DPI did not receive notice of the Fourth Service Extension Motion.** The October 7, 2009 Affidavit of Service for the Fourth Service Extension Motion does not identify DPI as a party served with the same and constitutes "prima facie evidence" that DPI did not receive notice of the Fourth Service Extension Motion. *See* October 7, 2009 Affidavit of Service attached hereto as Exhibit 2 and Exhibit 1 at p. 303, lns 19-20. Reorganized Debtors do not dispute that DPI was not served with the Fourth Service Extension Motion in their Amended Omnibus Response.[2] Because DPI did not receive notice of the Fourth Service Extension Motion, it should not be sued. Therefore, *Reorganized Debtors' Motion for Leave to File Amended Complaints* [Docket No. 20575; Adv. Pro. Docket No. 29] (the "**Motion**") must be denied and the Complaint dismissed with prejudice.

Unable to avoid the consequences of their failure to serve the Fourth Service Extension Motion upon DPI, the Reorganized Debtors assert contradictory positions in their briefs. In the

---

[1] Debtors' *Supplemental Motion Pursuant to Fed. R. Bankr. P. 7004(a) and 9006(b)(1) and Fed. R. Civ. P. 4(m) to Extend Deadline to Serve Process for Avoidance Actions Filed in Connection with Preservation of Estate Claims Procedures Order* filed on October 2, 2009 [Docket No. 18952] (the "**Fourth Service Extension Motion**").

[2] *Reorganized Debtors' Amended Omnibus Response to Certain Defendants' Submissions Regarding the October 2, 2009 Supplemental PostConfirmation Extension of Avoidance Action Service Deadline Motion* [Docket No. 21571; Adv. Pro. Docket No. 65] (the "**Amended Omnibus Response**").

Skadden Filing,[3] the Reorganized Debtors candidly affirm that the Debtors intended to keep secret the filing of the Fourth Service Extension Motion and, therefore, notice of the Fourth Service Extension Motion was deliberately not provided to preference defendants such as DPI.    In the Amended Omnibus Response, however, Reorganized Debtors argue that, even though they deliberately hid the filing of the preference actions and the Fourth Service Extension Motion from preference defendants, knowledge of the preservation of the preference actions and of the Fourth Service Extension Motion should be imputed to DPI.    Reorganized Debtors cannot have it both ways.    The contradictory absurdity of the Reorganized Debtors' imputation argument is apparent, and the Motion must be denied.

### Reply

**I.    OMNIBUS REPLY TO REORGANIZED DEBTOR'S AMENDED OMNIBUS RESPONSE**

DPI relies upon and incorporates by reference the Omnibus Reply of Certain Defendants to Reorganized Debtors' Omnibus Response to Certain Defendants' Submissions Regarding the October 2, 2009 Supplemental PostConfirmation Extension of Avoidance Action Service Deadline Motion (the "**No Notice Defendants' Omnibus Reply**") [Docket No. 21624].

**II.    COGENT AND COMPELLING REASONS EXIST FOR THE COURT TO EXERCISE ITS DISCRETION AND REVOKE THE FOURTH SERVICE EXTENSION ORDER**

At the June 21, 2011 hearing on the Motion, the Court instructed the adversary proceeding defendants to file affidavits advising the Court of the form and manner of notice (if any) of the Debtors' Fourth Service Extension Motion.    The Court considered such an affidavit as "part two of a Rule 15 motion."    *See* Exhibit 1 at p. 310, lns 10-12.    The Court also indicated at the June 21,

---

[3] *Reorganized Debtors' Statement in Opposition to Declarations Filed by Certain Preference Defendants Regarding Service of the Supplemental PostConfirmation Extension of Avoidance Action Service Deadline Motion* (the "**Skadden Filing**") is attached as Exhibit 3A to the Reorganized Debtors' Amended Omnibus Response. DPI does not oppose the Reorganized Debtors' request for leave to supplement the June 21, 2011 hearing record and directs this response to the substance of the Skadden Filing.

2011 hearing, "if you really didn't get any notice of [the Fourth Service Extension Motion] then you shouldn't be sued." *See* Id. at p. 298, lns 12-16. The Court suggested that this was a matter of law that could be dealt with now. *See* Id. at p. 295, lns 19-23.

On July 12, 2011, DPI submitted the Declaration of Mahesh Nayak [Adv. Pro. Docket No. 54] (the "**Nayak Declaration**") in accordance with the Court's instructions[4] and to supplement the argument that DPI originally raised in the *Motion and Brief of Defendant to: (A) Vacate Certain Orders of This Court; and (B) Dismiss the Complaint with Prejudice; Or (C) In the Alternative, to Dismiss the Claims Against Certain Defendants Named in the Complaint* [Docket No. 20093 and Adv. Pro. Docket No. 23] (the "**Motion to Dismiss**") and renewed in the *Objection of Defendant to Motion by Reorganized Debtors for Leave to File Amended Complaint* [Docket No. 20912; Adv. Pro. Docket No. 36] (the "**Objection**"). The Nayak Declaration was also submitted to supplement the *Motion and Brief of Defendant for Relief from Fourth Order Extending Time to Serve Complaint* [Docket No. 20699; Adv. Pro. Docket No. 31]. The Nayak Declaration confirms that DPI did not receive notice of the Fourth Service Extension Motion.

Reorganized Debtors do not dispute that DPI did not receive notice of the Fourth Service Extension Motion. Rather, the Skadden Filing argues that: (i) the Debtors sought *ex parte* relief from the service extension motions; (ii) the Court knew that each of the service extension motions was served without particularized notice to the individual preference defendants; (iii) the Court approved the Fourth Service Extension Motion even though the Court knew that the Fourth Service Extension Motion was served without particularized notice to the individual preference defendants; and (iv) the Reorganized Debtors will be prejudiced if the Court now sets aside the

---

[4] Through its counsel, DPI also submitted a Letter regarding the June 21, 2010 hearing [Adv. Pro. Docket No. 49] and a Letter in reply to Reorganized Debtors' letter dated July 1, 2011 [Adv. Pro. Docket No. 51] in accordance with the Court's instructions.

Fourth Service Extension Order.   Although it does not reference the law of the case doctrine explicitly, the Skadden Filing encourages the Court to follow its prior order granting the Fourth Service Extension Motion.

As a general matter, "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case . . . unless 'cogent' and 'compelling' reasons militate otherwise."   *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002), quoting *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991) and *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000).   Such compelling reasons include correcting a clear error or preventing manifest injustice.   *Uccio* at 758, *internal citations omitted.*   The absence of any notice of the Fourth Service Extension Motion is a manifest injustice which this Court indicated it intends to correct.

The *Uccio* court further elaborated:

> [the] principle [of the law of the case] is that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case. *Arizona v. California*, 460 U.S. 605, 618 (1983). However, this branch of the doctrine, while it informs the court's discretion, "does not limit the tribunal's power." Id. Thus, we have noted that "the doctrine of the law of the case is not an inviolate rule," *United States v. Birney*, 686 F.2d 102, 107 (2d Cir. 1982) . . . and the decision whether or not to apply law-of-the-case is, in turn, informed principally by the concern that disregard of an earlier ruling not be allowed to prejudice the party seeking the benefit of the doctrine, *United States v. Birney*, 686 F.2d at 107. . . . **In this context "prejudice" does not mean harm resulting from the failure to adhere to the prior decision; "rather, it refers to a lack of sufficiency of notice" or a lack of sufficient "opportunity to prepare armed with the knowledge that [the prior ruling is not deemed controlling]."**

*Uccio*, 940 F.2d at 758, citing *United States v. Birney*, 686 F.2d at 107, (*emphasis added*).   In the Skadden Filing, Reorganized Debtors complain that they will be prejudiced if the Fourth Service Extension Order is set aside because they will not be able to pursue the preference actions.   The

Court already suggested that this prejudice may be outweighed by the prejudice suffered as a result of the failure to serve the Fourth Service Extension Motion, when it said: "in balancing the prejudice issues it's much harder for the plaintiff here to argue that it would be prejudiced by my revoking the fourth order when it, in fact, knew that the motion wasn't served." Exhibit 1 at p. 299, lns 1-4. As recognized by the *Uccio* Court, prejudice does not mean a failure to adhere to a prior decision, in this case the Fourth Service Extension Order. Rather, it means lack of opportunity to oppose a different decision. Reorganized Debtors cannot complain, under any scenario, that they lacked an opportunity to oppose the Submission Defendants' requests that the Fourth Service Extension Order be set aside. The Reorganized Debtors have opposed, and continue to oppose, this relief in numerous pleadings and at multiple hearings,[5] fully armed with the knowledge that the Court's previous decision regarding the Fourth Service Extension Motion may not be controlling. Having given the Reorganized Debtors "sufficient notice and an opportunity to be heard, it [is] well within the court's discretion to decline to deem itself bound by a ruling that it [has] come to view as wrong." *Uccio* at 759.

### A. DPI Did Not Receive Actual Notice of the Fourth Service Extension Motion And, Therefore, DPI Should Not Be Sued.

On October 7, 2009, the Debtors' claims and noticing agent, Kurtzman Carson Consultants LLC ("**KCC**") filed an *Affidavit of Service* [Docket No. 18967] stating that it had caused the Fourth Service Extension Motion to be served on parties identified on Exhibits A, B and C to the Affidavit of Service. Exhibit 2. The Affidavit of Service does not identify DPI or its prior

---

[5] *See:* (i) the Skadden Filing; (ii) the Amended Omnibus Response; (iii) the June 21, 2011 hearing transcript; (iv) the July 2010 hearing transcript; (v) *Reorganized Debtors' Response to Motions For Relief From Fourth Order Extending Time to Serve Complaints* [Docket No. 21102; Adv. Pro. Docket No. 39]; and (vi) *Reorganized Debtors' Omnibus Response to Motions Seeking, Among Other Forms of Relief, Orders to Vacate Certain Procedural Orders Previously Entered by This Court and to Dismiss the Avoidance Actions Against the Moving Defendants* [Docket No. 20225; Adv. Pro. Docket No. 24].

counsel, David H. Freedman,[6] as parties served with the Fourth Service Extension Motion. As this Court indicated at the June 21, 2011 hearing, this Affidavit of Service is "prima facie evidence of who got notice." *See* Exhibit 1 at p. 303, lns 19-20.

In the Skadden Filing, the Reorganized Debtors argue that the failure to serve the Fourth Service Extension Motion is not cause to set the Fourth Service Extension Order aside because the Court knew that DPI and other preference defendants were not receiving the particularized notice required by the Supplemental Case Management Order.[7] The Skadden Filing boldly implies that either the Court had not reviewed or considered the prior record before ruling that "if you didn't get notice... you shouldn't be sued" or, alternatively, that the Court was complicit in the Debtors' previous secrecy. Both arguments are false.

First, as evidenced by the Court's comments at the June 21, 2011 hearing, the Court obviously reviewed and considered the record, including (i) the Fourth Service Extension Motion, (ii) the Supplemental Case Management Order dated March 17, 2006, and (iii) the transcript of the October 22, 2009 hearing on the Fourth Service Extension Motion. See Exhibit 1 at p. 292, lns 6-8 ("And the motion that was filed on October 2, 2009 states that, 'Notice of this motion has been provided in accordance with the supplemental order.'"); Id. at p. 292, lns 2-6 ("The order - - the supplemental case management order dated March 17th, 2006 states that, 'All filing shall be served via overnight mail upon all parties with a particularized interests in the subject of the filing, as well as to the master service list.'"); Id. at p. 291, lns 20-25 ("And that order recites - - based upon a

---

[6] As Mr. Freedman states in his Declaration, he withdrew from representing DPI in connection with Debtor's Chapter 11 bankruptcy case prior to April 16, 2008, and requested to be removed from receiving electronic filings on April 16, 2008 [Docket No. 13411] and requested to be removed again from the service list on September 18, 2008 [Docket No. 14200].

[7] *Supplemental Order Under 11 U.S.C. § § 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures* [Docket No. 2883] (the "**Supplemental Case Management Order**").

recital in the underlying motion, as well as, I believe, a statement on the record by the debtors' counsel, Ms. Marafioti that the motion was served as set forth in my standing order for service in the case - - your motion as well as others takes issues with that cite, attaching the certificate of service."); and Id. at p. 292, lns 11-16 ("The argument that was made in the motion at the hearing was twofold, as you all point out. First of all, that the debtors wanted more time given their drastically changed circumstances. And secondly, that it was quite possible that in light of that more time they'd drop more people and would not pursuit (sic) the lawsuits against them.") The Court also referenced its recollection of the July 2010 hearing and cited to the July 2010 hearing transcript Id. at p. 298, lns 12-15 ("I guess, my point though, ultimately, is I understood a fair matter on this point at the July hearing. I mean, it basically said if you really didn't get any notice of this then you shouldn't be sued.") and Id. at p. 301, lns 9-12, 15-17 ("I mean, I do - - page 225, 'My preliminary view is that people who truly did not get notice of the extension motions can argue their merits on the merits. It's not a Rule 60 requirement.' . . . "And then I just say, 'But that leaves a factual issue as to who got the notice and who didn't and what do people know.'") Consistent with the views expressed during the July 2010 hearing, and based upon its review of the record, the Court concluded at the June 21, 2011 hearing, "if you really didn't get any notice of this then you shouldn't be sued." Exhibit 1 at p. 298, lns 14-15. The Skadden Filing does not provide any information not previously considered by the Court in reaching this conclusion.

Second, the Skadden Filing ignores the Court's recognition that the circumstances surrounding the Fourth Service Extension Motion had materially changed, such that particularized notice had to be given to DPI and similarly situated preference defendants. In October 2009, the First Amended Plan had been confirmed, the Reorganized Debtors knew that there would not be a 100% distribution to unsecured creditors, and, the Reorganized Debtors also knew that they would

be pursuing preference claims.  The Reorganized Debtors filed the Fourth Service Extension Motion and wanted more time "given their drastically changed circumstances" and because it was "quite possible that in light of that more time they'd drop more people and would not pursuit (*sic*) the lawsuits against them." Exhibit 1 at p. 292, lns 11-20.

As the Court recognized, the Fourth Service Extension Motion stated that it was served in accordance with the Supplemental Case Management Order, a fact Ms. Marafioti attested to when she represented to the Court that it had been served in the "usual fashion." Exhibit 1 at p. 291, lns 14-25 and p. 292, lns 1-10 and October 22, 2009 Hearing Transcript attached hereto as Exhibit 3, p. 5, ln 21.  Understood in the context of the Reorganized Debtors' drastically changed circumstances, it is evident that the representation that the Fourth Service Extension Motion was served in the "usual fashion" was inaccurate, and that the changes in the Debtors' course of action with respect to preference actions demanded that particularized notice be given.  Because DPI did not receive any notice of the Fourth Service Extension Motion, let alone particularized notice, it should not be sued.

**B.    Reorganized Debtors Cannot Impute Knowledge of the Fourth Service Extension Motion or this Preference Action to DPI.**

       **(i)    DPI's involvement in Debtors' bankruptcy cases was limited to claim-related issues and ended after the claim was transferred to a third party in 2007.**

Because it is undisputed that DPI did not receive notice of the Fourth Service Extension Motion, the Reorganized Debtors now try, through the Amended Omnibus Response, to make certain inferences and draw illogical conclusions about DPI's awareness of this adversary proceeding and the Fourth Service Extension Motion, and request that the Court impute knowledge of these events to DPI.  The Amended Omnibus Response characterizes DPI as having been "in the

thick" of the Delphi bankruptcy since its inception.  Amended Omnibus Response, Exhibit 36, p.

1.  However, the record demonstrates that DPI's involvement in the Delphi bankruptcy was limited

to the filing of proofs of claim, resolving an objection to those claims, and transferring its claim to

a third party.  The timeline that follows summarizes the record of DPI's involvement in the Delphi

bankruptcy prior to service of the preference complaint:

| Date | Docket No. | Document Title | Relevant Information |
|---|---|---|---|
| 10/8/05 & 10/14/05 | | Voluntary Petitions | |
| 6/22/06 | Claim No. 8379 and 8380 | Proofs of Claim | DPI filed $573,199.69 claims against Delphi Corporation and Delphi Automotive Systems, LLC, respectively |
| 11/22/06 | Claim No. 16427 | Proof of Claim | DPI filed $1,130675.71 claim filed against Delphi Automotive Systems |
| 4/4/07 | 7573 | Notice of Transfer of Claim Other than for Security | DPI transfers Claim no. 16427 in the amount of $1,130,675.71 to SPCP Group LLC as agent for Silver Point Capital Fund and Silver Point Offshore Fund, LTD |
| 8/4/07 | 9237 | Joint Stipulation and Agreed Order (I) Allowing Proof of Claim Number 16427 and (II) Disallowing and Expunging Proof of Claim Number 8380 (Doshi Prettl International, LLC) | Claim No. 16427 is allowed |
| 9/28/07 | Adv. Pro. Doc. No. 1 | Complaint | Filed under seal |

As is evident from the above timeline, DPI's limited involvement in the Debtors'

bankruptcy cases stopped entirely after it transferred its claim and stipulated to entry of an order

allowing the same, both of which occurred before the adversary complaint was even filed.

Having transferred its claim in April of 2007, DPI had no reason to immerse itself in the details of

the First Amended Plan Disclosure Statement or any of the other tens of thousands of pleadings in

the cases. *See In re Ruehle*, 412 F.3d 679, 682-83 (6th Cir. 2004) (large creditors received "tidal

waves of mail . . . the quantity of notice that is issued by the bankruptcy system is so

overwhelming that it is necessary to have clear rules in order for creditors to know what notices to

notice as opposed to the notices that are deafening legal background noise"). Moreover, as

Reorganized Debtors agree, by April 16, 2008, at the latest, DPI was not even represented by

counsel in the bankruptcy cases. Exhibit 36 to Amended Omnibus Response at p. 1. On these

facts alone, the Reorganized Debtors' attempt to charge DPI with knowledge of the filing of

preference actions and the Fourth Service Extension Motion fails.

> **(ii)**    **DPI did not have actual knowledge of the First Amended Plan
> Disclosure Statement or the Preference Action and knowledge
> of the same cannot be imputed to DPI.**

The Reorganized Debtors argue that DPI "cannot credibly deny knowledge that avoidance

claims were filed and placed under seal and the summonses had been extended" and ask this

Court to impute knowledge of the same to DPI because: (i) Mr. Freedman, DPI's former counsel,

was served with the First Service Extension Motion and Order; (ii) DPI was served with the

Confirmation Hearing Notice informing it of the existence and availability of the First Amended

Plan Disclosure Statement on a website; (iii) the Debtors filed a publicly available Form 8-K,

which Form 8-K included the First Amended Plan Disclosure Statement; (iv) Mr. Freedman was

served with the First Amended Plan Disclosure Statement in his capacity as counsel for an

unrelated third party at a time when he was still representing DPI; (v) DPI received payments on

the eve of Delphi's bankruptcy; and, (vi) attorneys at Clark Hill received the Fourth Service

Extension Motion on behalf of unrelated third parties at a time when Clark Hill was not

representing DPI in connection with the Delphi bankruptcy. As discussed below, each of these

arguments is flawed. The Reorganized Debtors cannot rebut the fact that DPI did not have

knowledge of the preference actions and did not have notice of the Fourth Service Extension Motion.

### a.   Service of the First Service Extension Motion and Order Upon Mr. Freedman is irrelevant.

As the Court noted during the June 21, 2011 hearing, "[t]he order [the Court has] been focusing on here is the fourth one, which is the only one that's at issue." *See* Exhibit 1 at p. 291, lns 18-19.   Thus service of the First Service Extension Motion and Order is irrelevant.   If, as Reorganized Debtors incorrectly speculate, DPI had knowledge of this proceeding because the First Service Extension Motion and Order were served upon Mr. Freedman, the only logical conclusion to be drawn from the fact that DPI was not served with the Fourth Service Extension Motion is that the Debtors decided not to pursue the preference claim against DPI.

### b.   Service of the Confirmation Hearing Notice upon DPI was insufficient to inform DPI of the preservation of avoidance claims.

The Reorganized Debtors absurdly suggest that DPI learned of the First Amended Plan Disclosure Statement and its preservation of avoidance actions because the Confirmation Hearing Notice informed its recipients of the existence and availability of the First Amended Plan Disclosure Statement on a website and because the Debtors attached the same to a publicly available Form 8-K.   The Affidavit of Service [Docket No. 11974] indicates that, on or before December 15, 2007, DPI was served with the Confirmation Hearing Notice, not the First Amended Plan Disclosure Statement.[8]   DPI had transferred its claim eight months before the Confirmation Hearing Notice was served. A stipulated order [Docket No. 9237] allowing DPI's claim had been entered four months before the Confirmation Hearing Notice was served.   Thereafter, DPI had no

---

[8] The Affidavit of Service [Docket No. 11974] states: "On or before December 15, 2007, I caused to be served the Confirmation Hearing Notice upon the parties listed on Exhibit FFF via postage pre-paid U.S. mail."  DPI is identified on Exhibit FFF of the Affidavit of Service as an entity having been served with the Confirmation Hearing Notice.

reason to concern itself with, let alone seek out, Delphi's First Amended Plan Disclosure Statement on a website or in a Form 8-K, as it had divested itself of its claim.  Moreover, the Confirmation Hearing Notice substantively informed its recipients of (i) approval of the disclosure statement, (ii) the hearing on plan confirmation and the deadlines and procedures for objecting to the same, (iii) the deadline and procedures for temporary allowance of certain claims for voting purposes, and (iv) the voting deadline.  Having transferred its allowed claim, DPI did not need to attend to voting deadlines, and did not have any reason to object to plan confirmation as the satisfaction of its claim had already been determined.  Nothing in the Confirmation Hearing Notice suggests that a preference action against DPI was being preserved, or that DPI had any reason to seek out the First Amended Plan Disclosure Statement to discern the same.  More importantly, nothing in the Confirmation Hearing Notice or the First Amended Plan Disclosure Statement would have notified DPI of the Fourth Service Extension Motion, which motion is the only one at issue.

### c.    Information obtained by Clark Hill PLC through its representation of other clients cannot be imputed to DPI.

Having failed to demonstrate that DPI had actual knowledge of the First Amended Plan Disclosure Statement, this preference action, or the Fourth Service Extension Motion, the Reorganized Debtors argue that knowledge of the preservation of preference actions against defendants such as DPI and the Fourth Service Extension Motion should be imputed to DPI because Clark Hill PLC received the First Amended Plan Disclosure Statement and the Fourth Service Extension Motion in its capacity as counsel for unrelated third-parties, before Clark Hill

even began to represent DPI[9] with respect to the Delphi bankruptcy.  The suggestion that Clark Hill's knowledge of events in the Delphi bankruptcy is imputable "back to the future" to DPI and somehow absolves the Reorganized Debtors of their failure to serve the Fourth Service Extension Motion defies logic, unless it can be said that the clients of every law firm in the world are charged with knowledge of information obtained by any of the firm's attorneys on any matter the firm is involved in, even though the firm is not representing the client in that particular matter at that particular time.

The Reorganized Debtors' advocacy of this position is even more startling because unlike Clark Hill, Butzel Long actually represented both the Debtors[10] and DPI during the time period at issue.  Under its analysis then, information obtained by Butzel Long as a result of its representation of the Debtors is imputable to DPI (and any of Butzel Long's other clients) and Butzel Long should have disclosed this information to DPI.  If, as Reorganized Debtors contend, any entity receiving the First Service Extension Motion and Order and the First Amended Plan Disclosure Statement had knowledge of the existence of the preference actions, then Butzel Long must also be charged with that knowledge and had the ability and/or option to inform its clients of the same.  Moreover, since Butzel Long was Debtors' counsel throughout 2007, it must also be charged with knowledge of this adversary proceeding, which was commenced against DPI in 2007.  Butzel Long was on both sides of the fence.

As described more fully in DPI's Objection, prior to May 1, 2008, Doshi Prettl International, LLC was comprised of two entities:  Doshi Family LLC (**"Doshi"**) and Prettl

---

[9] Clark Hill first began representing DPI in the Delphi bankruptcy in February 2010, just after the Complaint was served, and filed its first pleading in the adversary proceeding in April of 2010.  See Application for Pro Hac Vice Admission filed by Christopher M. Cahill on behalf of Doshi Prettl International [Adv. Pro. Docket No. 10].

[10] Butzel Long filed its application [Docket No. 1453] to be employed as commercial and litigation counsel to the Debtors on December 6, 2005.  The Court entered an order [Docket No. 1705] approving the Debtors' retention of Butzel Long as their commercial and litigation counsel on January 3, 2006.

International, Inc. ("**Prettl**"). Butzel Long represented Prettl in a variety of matters dating back to at least 2005. *See* Sampling of Butzel Long Invoices attached hereto as Exhibit 4.[11]  At all times, Butzel Long was aware that DPI's sole customer was Delphi. As this Court is aware, the First Amended Plan Disclosure Statement was filed on December 10, 2007. It was never served on DPI. On November 1, 2008, Prettl, represented by Butzel Long, sued Doshi in a shareholder action. *See* Shareholder Complaint, attached hereto as Exhibit 5. Clark Hill later became Butzel Long's co-counsel in this litigation. The matter was litigated intensively for four months, and finally approached a settlement dynamic, wherein Prettl was contractually obligated to either purchase Doshi's interest in DPI, or else sell its interest in DPI to Doshi, at a set price.[12]

Despite Butzel Long's apparent knowledge of the First Amended Plan Disclosure Statement,[13] the preservation of preference actions, and the First Service Extension Order's extension of time to serve preference complaints,[14] Butzel Long advised Prettl in connection with

---

[11] DPI attaches Exhibits 4 through 8, confirming Butzel Long's representation of DPI (a company the Debtor contends is the "same entity" both before and after May 1, 2008, *see* Exhibit 36 to the Amended Omnibus Response at p. 5), solely to rebut Debtor's arguments concerning imputed knowledge and "notice" as further set forth in this Brief. The content of some of these documents has been redacted in order to maintain the protections afforded to confidential and/or secret communications in these documents. In so doing, DPI expressly reserves, and does not expressly or impliedly waive, the protections afforded by the attorney-client privilege, work product rule and doctrine, and/or other applicable law. Butzel Long attorneys generated these documents and they have access to full, unredacted copies of the same. If the Court should require, DPI can provide full, unredacted copies of these documents, under seal, pursuant to the Court's protective order.

[12] The agreement at issue contains a confidentiality provision which prohibits its disclosure. However, Butzel Long attorneys already have a copy of the agreement. DPI's attorney will have a copy of the agreement available at the hearing on October 24, 2011 for *in camera* review by the Court, as the Court may deem necessary.

[13] The Affidavit of Service [Docket No. 11974] for the First Amended Plan Disclosure Statement lists David F. DuMouchel of Butzel Long on Exhibit JJ as having been served with the Confirmation Hearing Notice, CD-Rom containing the First Amended Plan Disclosure Statement, and other documents. The Affidavit of Service [Docket No. 11974] for the First Amended Plan Disclosure Statement also lists "Butzel Long" and "Butzel Long Pc" on Exhibit FFF as having been served with the Confirmation Hearing Notice.

[14] The First Amended Plan Disclosure Statement provides, in relevant part: "On August 16, 2007, the Bankruptcy Court entered an order (the '[First Service Extension] Order') ... establishing adversary proceeding procedures for preserving causes of action. ... Because of the Plan's treatment of unsecured creditors, the Debtors have determined that the affirmative pursuit of many if not all of these causes of action would not benefit their estates and creditors. ... Although the Debtors do not intend to pursue these cause of action in light of the distributions to be made under the Plan, as a precautionary measure they must identify and preserve the causes of action in some manner." First Amended Plan Disclosure Statement [Docket No. 11388] at p. DS-148- DS-149. The Reorganized Debtors theorize

this election and carried out Prettl's instructions to purchase Doshi's interest in DPI at a price which was half of the amount being sought in this preference action. See sample e-mails from Butzel Long attached hereto as <u>Exhibit 6</u>. Butzel Long also participated in and advised on matters leading to the closing of the Transaction on May 1, 2008. See sample e-mails attached hereto as <u>Exhibit 7</u>. Butzel Long continued to represent and advise the newly constituted DPI after May 1, 2008. See sample e-mails attached hereto as <u>Exhibit 8</u>.

Applying Reorganized Debtors' theory of notice, presumably, Butzel Long had the knowledge that the Reorganized Debtors now incorrectly and improperly attempt to impute to DPI from Clark Hill. Butzel Long represented the Debtors with full knowledge of the preservation of preference actions at a time when Butzel Long also represented Prettl and DPI. Butzel Long knew preference actions had been preserved when it was advising Prettl in connection with the election to purchase the shares of Doshi in early 2008. Information about this lawsuit would have been particularly informative because the Complaint seeks more than twice the amount in damages than the purchase price paid by Prettl for Doshi's interest in DPI (and Prettl otherwise had the ability to sell its interest). Moreover, Butzel Long continued to represent the newly constituted DPI after the closing of the Transaction on May 1, 2008 and could have notified DPI of the existence of this lawsuit, the Second Extension Order entered in March of 2008, the Third Service Extension Order entered on April 30, 2008, and the impact of the same.

The Court need only apply ordinary common sense when considering whether to impute knowledge of the preference actions and the Fourth Service Extension Motion to DPI. Under no imaginable circumstances would Prettl (or any party) have elected to purchase DPI for millions of

---

that receipt of the First Amended Plan Disclosure Statement imputes knowledge of the preservation of avoidance actions to its recipients. Employing this theory, it must be concluded that Butzel Long had knowledge of the preservation of preference actions and the First Service Extension Order because Butzel Long received the First Amended Plan Disclosure Statement.

dollars in early May 2008, if it had notice of a pending lawsuit against DPI which would result in exposing it to liability for more than twice the purchase amount. The fact that their former counsel, which has brought the instant lawsuit against DPI, is now charging DPI with notice regarding this lawsuit through its counsel, is beyond ironic. Butzel Long attorneys who were advising Prettl on the purchase (not the same ones representing the Reorganized Debtors in this lawsuit) might testify that they had no knowledge of their colleagues' involvement in this lawsuit such as to advise Prettl, DPI and their co-counsel, Clark Hill, of the same. If so, that belies the arguments the Reorganized Debtors make to the Court here. If not, and they had such knowledge (which would likely carry its own independent issues) it is a practical impossibility for that knowledge to be imputed to DPI given the undisputed history of what happened.

## III.   CONCLUSION

DPI did not receive actual notice of the Fourth Service Extension Motion and knowledge of the Fourth Service Extension Motion cannot be imputed to DPI under the circumstances of this case. Therefore, DPI respectfully requests that this Court (i) set aside the Fourth Service Extension Order; (ii) deny the Reorganized Debtors' Motion for Leave to File Amended Complaints because it is futile; and (iii) enter an order dismissing the adversary proceeding with prejudice.

Respectfully submitted,

CLARK HILL PLC

/s/ *Joel D. Applebaum*
Joel D. Applebaum (*pro hac vice*)
Mahesh K. Nayak (*pro hac vice*)
151 South Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
(248) 642-9692

Dated:  October 7, 2011

Attorneys for Defendant, Detroit Products International, LLC, f/k/a Doshi Prettl International, LLC

-17-

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of October, 2011, a copy of the foregoing was electronically filed with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

I further certify that on the 7th day of October, 2011, a copy of the foregoing was sent via Federal Express overnight delivery on the following:

| | |
|---|---|
| DPH Holdings Corp.<br>Attn: John Brooks<br>5725 Delphi Drive<br>Troy, Michigan 48098 | Butzel Long, a professional corporation<br>Attn: Cynthia J. Haffey<br>150 W. Jefferson Avenue<br>Suite 100<br>Detroit, Michigan 48226 |
| Butzel Long, a professional corporation<br>Attn: David J. Devine<br>150 W. Jefferson Avenue<br>Suite 100<br>Detroit, Michigan 48226 | Butzel Long, a professional corporation<br>Attn: Thomas Radom<br>150 W. Jefferson Avenue<br>Suite 100<br>Detroit, Michigan 48226 |
| Skadden, Arps, Slate, Meagher, & Flom LLP<br>Attn: John Wm. Butler, Jr.<br>155 N. Wacker Drive<br>Suite 2700<br>Chicago, IL 60606 | Butzel Long, a professional corporation<br>Attn: Bruce L. Sendek<br>150 W. Jefferson Avenue<br>Suite 100<br>Detroit, Michigan 48226 |
| Skadden, Arps, Slate, Meagher, & Flom LLP<br>Attn: John K. Lyons<br>155 N. Wacker Drive<br>Suite 2700<br>Chicago, IL 60606 | Skadden, Arps, Slate, Meagher, & Flom LLP<br>Attn: Albert L. Hogan, III<br>155 N. Wacker Drive<br>Suite 2700<br>Chicago, IL 60606 |
| Skadden, Arps, Slate, Meagher, & Flom LLP<br>Attn: Ron E. Meisler<br>155 N. Wacker Drive<br>Suite 2700<br>Chicago, IL 60606 | |

*/s/ Joel D. Applebaum*
Joel D. Applebaum
Clark Hill PLC

I further certify that on the 7th day of October, 2011, a copy of the foregoing was sent via Federal Express overnight delivery upon the Honorable Robert D. Drain, U.S. Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601-4140.

/s/ Joel D. Applebaum
Joel D. Applebaum
Clark Hill PLC