**Hearing Date and Time:**
**October 24, 2011at 10:00 a.m.**

BUTZEL LONG, a professional corporation
Cynthia J. Haffey
Bruce Sendek
Sheldon Klein
Thomas D. Noonan
150 W. Jefferson, Suite 100
Detroit, Michigan 48226
Telephone: (313) 983-7434
Facsimile: (313) 225-7080
haffey@butzel.com*Attorneys for Plaintiffs*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| DPH Holdings Corp., *et al.*,<br><br>    Reorganized Debtors. | Chapter 11<br><br>Case No. 05-44481 (RDD)<br>(Jointly Administered) |

**REORGANIZED DEBTORS' RESPONSE TO MOTION OF WELLS FARGO BANK, N.A., SUCCESSOR TO WACHOVIA BANK, NATIONAL ASSOCIATION, UNDER RULE 60(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND RULE 9024 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR RELIEF FROM THE ORDERS SEALING COMPLAINT AND EXTENDING THE TIME FOR SERVICE THEREOF**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT/INTRODUCTION ..................................................................1

STATEMENT OF RELEVANT FACTS ....................................................................................4

   The Hostage Payment ........................................................................................................4

   Debtors Obtain and Serve the  Preservation Motion and Order Pursuant to this Court's Order
and Applicable Law ..........................................................................................................6

   The Disclosure Statement...................................................................................................8

   Debtors Provide Wachovia with Notice of Subsequent Extension Motions and Orders to
Which Wachovia Fargo Fails to Object ............................................................................10

   The Court Confirms  the Modified Plan and Enters the Plan Modification  Order to Which
Wachovia Fails to Object ..................................................................................................12

   Wachovia Finally Raises Objections to the Preservation Order in June 2011 ........................14

ARGUMENT ......................................................................................................................15

   Wachovia's Motion Should be Denied as Untimely Because it Was not Filed within 180 Days
of the Plan Modification Order...........................................................................................15

   Even if Rule 60 Applies, Wachovia's Motion Should be Denied as Untimely and Otherwise
Meritless .........................................................................................................................18

   Wachovia's Prejudice Argument Fails..................................................................................22

CONCLUSION ......................................................................**Error! Bookmark not defined.**

# TABLE OF AUTHORITIES

## Cases

*680 Fifth Ave. Assoc.* v. *EGI Co. Servs.*, Inc. (*In re 680 Fifth Ave. Assoc.*),
    209 B.R. 314, 322 – 323 (Bankr. S.D.N.Y. 1997) ................................................................17

*Bd. of Regents of State Colleges v. Roth*,
    408 U.S. 564, 571 (1972) ....................................................................................................21

*Brady* v. *Marks*,
    7 F.Supp. 2d 247, 255 (W.D.N.Y. 1998) .............................................................................22

*Branchburg Plaza Assoc., L.P. v. Fesa (In re Fesa)*,
    153 F.3d 113, 116 – 20 (3rd Cir. 1998) ...............................................................................17

*Dale C. Eckert Corp. v. Orange Tree Assoc., Ltd. (In re Orange Tree Assoc., Ltd.)*,
    961 F.2d 1445, 1447 (9th Cir. 1992) ....................................................................................17

*Days Inn Worldwide, Inc.* v. *Patel*,
    445 F.3d 899, 905-906 (6th Cir. 2006) ................................................................................23

*In re Chipwich, Inc.*,
    64 B.R. 670, 678 (Bankr. S.D.N.Y. 1986) ...........................................................................17

*In re Longardner & Assoc.*
    855 F.2d 455, 460 (7th Cir. 1988) .......................................................................................17

In re Rickel & Assoc.,
    260 B.R. 673, 678 (Bankr. S.D.N.Y. 2001). 284 B.R. at 83 ................................................17

*In re Vencor, Inc.*,
    284 B.R. 79 (Bankr. D. Del. 2002) .....................................................................................16

*Kellogg v. Struck,*
    *269 F.3d 100, 104 (2d Cir. 2001)* .........................................................................................24

*Kernisant* v. *City of New York*,
    225 F.R.D. 422, 431 n. 13 (E.D.N.Y. 2005) .......................................................................22

*Ky. Dep't of Corr. v. Thompson*,
    490 U.S. 454, 460 (1989) ....................................................................................................21

*La Barbera v. Whitney Trucking, Inc.*,
    245 F.R.D. 142, 145 (S.D.N.Y.) ..........................................................................................24

*Law Debenture Trust Co.* v. *Calpine Corp.* (In re Calpine Corp.),

356 B.R. 585, 595 (S.D.N.Y. 2007)........................................................................................22

*Mendell v. Gollust,*
909 F.2d 724, 731 (2d Cir. 1990) .........................................................................................20

*Mullane v. Cent. Hanover Bank & Trust Co.,*
339 U.S. 306, 313 (1950) .............................................................................................21, 22

*National Union Fire Ins. Co. v. Barney Assoc.*
130 F.R.D. 291 (S.D.N.Y.1990).........................................................................................25

*Nemaizer v. Baker,*
793 F.2d 58, 61 – 62 (2d Cir. 1986)....................................................................................20

*Nemaizer,*
793 F.2d at 61 - 62 ..............................................................................................................24

Pelletier v. Donald (In re Donald),
240 B.R. 141, 147 (1st Cir. 1999)......................................................................................17

*Peyser v. Searle Blatt & Co., Ltd.,*
No. 99 Civ. 10785 (WK), 2001 WL 1602129, at *2 (S.D.N.Y. Dec. 14, 2001) .....................24

*Reynolds v. Wagner,*
128 F.3d 166, 179 (3d Cir. 1997) ........................................................................................21

*State St. Bank & Trust Co.* v. *Inversiones Errazuriz Limitada,*
374 F.3d 158, 178 – 179 (2d. Cir. 2004).............................................................................23

*Sutera v. Transp. Sec. Admin.,*
2010 U.S. Dist. LEXIS 42759, at *18 (E.D.N.Y. Apr. 29, 2010) ..........................................22

*Truskowski* v. *ESPN, Inc.,*
60 F.3d 74, 77 (2d Cir. 1995) .............................................................................................24

*United Student Aid Funds, Inc. v. Espinosa,*
130 S.Ct. 1367, 1377 (2010) ..............................................................................................21

## Rules

11 U.S.C. § 541, 544,, 545, 547, 548, or 553................................................................................9

11 U.S.C. §§ 102(1)(A), 105(a), 107, 108(a)(2), and 546(a) .......................................................9

11 U.S.C. §§ 541, 544, 545, 547, 548, or 549.............................................................................1

Fed. R. Bankr. P. 7004(a) and 9006(b)(1)............................................................10, 11, 13, 14

Fed. R. Bankr. P. 7004, 9006(c), and 9018 (i) ............................................................................9

Fed. R. Bankr. P. 7012(b) ...........................................................................................................1

Fed. R. Bankr. P. 9024 ................................................................................................................1

Fed. R. Civ. P. 12(b) ...................................................................................................................1

Fed. R. Civ. P. 60........................................................................................................................1

Plaintiffs, DPH Holdings Corporation and certain of its affiliated reorganized debtors (collectively, the "Debtors" ), respectfully submit this response ("Response") to the Motion of Wells Fargo Bank, N.A., Successor to Wachovia Bank, National Association, under Rule 60(B) of the Federal Rules of Bankruptcy Procedure for Relief from the Orders Sealing Complaint and Extending Time for Service Thereof (hereinafter Wells Fargo shall be referred to as "Wachovia"), seeking relief from the Order Under 11 U.S.C. §§ 102 (1)(A), 105(a), 107, 108(a)(2), and 546(a) and Fed. R. Bankr. P. 7004, 9006(c), and 9018 (i) Authorizing Debtors to Enter into Stipulations Tolling Statute of Limitations with respect to Certain Claims, (ii) Authorizing Procedures to Identify Causes of Action that Should be Preserved, and (iii) Establishing Procedures for Certain Adversary Proceedings Including Those Commenced by Debtors Under 11 U.S.C. § 541, 544, 547, 548, or 553 (Docket No. 9105) as well as all orders of the Court extending the time for service of the complaint in adversary proceeding number 07-02720 ("the Wachovia Motion").  For the reasons set forth below, the Wachovia Motion should be denied.

## PRELIMINARY STATEMENT/INTRODUCTION

1.       After extorting a hostage payment from the Debtors for $1,860,000 during the preference period, Wachovia has regrettably and disingenuously portrayed itself a victim who has been unfairly "swept along" in this bankruptcy proceeding without proper notice in purported deprivation of its constitutional rights.  Nothing could be further from the truth.

2.       Wachovia complains that it somehow has been deprived of due process because Debtors did not serve the August 6 2007 motion for preservation order sealing the preference actions and extending the time to serve the summons and complaint ("Preservation Motion") prior to the hearing on that Motion, and did not serve the order granting that Motion that was

1

subsequently entered on August 16, 2007 ("Preservation Order"). As a result, Wachovia claims that it was in the dark about a preference complaint that Debtors had filed against it and Laneko Engineering, Inc. ("Laneko") when it allegedly released claims against Laneko in January 2008, even though at that time: (a) Wachovia knew it had received the $1.86 million hostage payment directly from Debtors during the preference period; (b) Delphi had publicly filed its Disclosure Statement; and (c) even in the absence of the Preservation Order, the 120 time period in which to serve the summons and complaint against Wachovia – which was filed within the 2 year statute of limitations – had not expired.

3.      Simply put, Wachovia's Motion is baseless. As the Court recognized in entering the Preservation Order, the notice that Wachovia now – more than four years later – claims should have been provided then was <u>not</u> required to be provided at that time.  As a result, the Preservation Order provided: "The Debtors must serve a copy of this order upon each defendant in any Adversary Proceeding either when the Debtors serve a summons and complaint on the defendant or as soon thereafter as practicable."  Debtors fully and properly complied with the Preservation Order, and did serve that Order upon Wachovia when it served the summons and complaint.

4.      In fact, there is no dispute that, beginning in March 2008, Debtors served Wachovia with each and every subsequently filed motion to extend the time to serve the preference actions, as well as any related orders.  In spite of this, Wachovia failed to file any motion asserting any putative notice arguments relating to the Preservation Order until July 20011.  Under well established, controlling principles of law, the Motion should be denied as untimely and otherwise meritless.

5.      The Motion is untimely because it was not filed within 180 days of the entry of the July 30, 2009 Order confirming the Modified Plan ("Plan Modification Order") as required by U.C.S § 1144, which provides that a party requesting revocation of an order confirming a plan must file an appropriate motion "within 180 days of entry of the order of confirmation." The preference action against Wachovia could not have been retained pursuant to the Plan Modification Order had the Preservation Order and subsequent extension orders not been entered. As such, Wachovia's attack on the Preservation Order should be viewed as an attack on the Plan Modification Order, and was required to be filed by January 26, 2010 - within 180 days of the Plan Modification Order. Wachovia did not file its any motion asserting any notice argument until almost a year and a half after that deadline. Consequently, for this reason alone, Wachovia's Motion is untimely and should be denied.

6.      In addition, even if Rule 60 applies, the Wachovia Motion should still be denied because Wachovia has not, and cannot, meet the stringent requirements of that Rule to obtain the drastic relief it seeks – dismissal of Debtors' preference action. Wachovia's reliance upon Rule 60(b)(4) – which allows relief from a "final judgment, order, or proceeding" where "the judgment is void" – is misplaced. Rule 60(b)(4) motions can only be granted under "exceptional circumstances" where there has been a "violation of due process that deprives a party of notice of the opportunity to be heard." There has been no due process violation because the Preservation Order has not deprived Wachovia of any liberty or property interest. No judgment or other adjudication on the merits has occurred in this case as a result of that Order, and any such judgment will follow an adjudication of this case with all of the protections afforded Wachovia by the Federal Rules of Bankruptcy Procedure. Moreover, the Rule 60(b)(4) motion was required to be brought within a "reasonable time." Wachovia cannot credibly claim its motion is

3

timely.  Nothing prevented Wachovia from bringing this motion when it received notice of the second extension order back in March 2008.  Wachovia instead chose to sit on its hands. Wachovia's three and half year delay in bringing its Motion is completely unjustified, and the Rule 60(b)(4) Motion should be denied as untimely.

7.    Likewise, Wachovia's reliance upon Rule 60(b)(6) - which allows relief for "any other reason justifying" it – is misplaced.  Wachovia has not, and cannot, meet the "exceptional circumstances" required for such a relief, as well as the requirement that Wachovia's Motion  be brought within a "reasonable time." Wachovia offers no good reason why it delayed in bringing this motion for three and a half years, and no such reason exists.

8.    For these main reasons, as further discussed below, Wachovia's Motion should be denied.

## STATEMENT OF RELEVANT FACTS

### The Hostage Payment

9.    On October 8 and 14, 2005 ("Petition Date"), Debtors filed voluntary petitions in this Court for reorganization relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code").   The Debtors continued to operate their businesses and manage their properties as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code until they emerged from chapter 11 protection on October 6, 2009.

10.    Prior to that filing, Laneko was a supplier to one of the Debtors, Delphi Automotive Systems, LLC ("DAS") of several stamped steel parts ("Components").  Pursuant to a series of written contracts, Laneko was required to supply DAS with 100% of its Components through December 31, 2005. *See Exhibit A*: *August 17, 2005 DAS Complaint Against Laneko, at ¶¶ 6 - 7.*

4

11.    Beginning in April 2004, Laneko made a series of coercive and extortionate demands of DAS, including threatening to cut off supply of the Components, unless DAS agreed to various concessions, including price increases and more favorable payment terms. Because Laneko was DAS' single source supplier of the Components – which were in turn installed in various door latch assemblies to DAS' customers such as Ford and General Motors – any supply cut off by Laneko would have shut down not only DAS' production lines, but Ford and General Motors' production lines as well. *Id. at ¶¶ 14 - 16.*

12.    Faced with the prospect of a supply cut off – and the catastrophic consequences that would result from the subsequent shutdown of its production lines – DAS had no choice but to agree to a series of modifications to the parties' contract terms from April 2004 through May 2005. *Id.* at ¶¶ 16 – 18.

13.    In August 2005, Laneko renewed its threat to cutoff supply – this time threatening to cut-off supply by September 1, 2005 – unless DAS agreed to further extortionate concessions. This time, Laneko and its lender, Wachovia threatened that Laneko would be forced to cut off supply unless DAS paid off more than $2 million of Laneko's line of credit with Wachovia. *Id. at ¶¶ 22 – 23.*

14.    These outrageous threats led DAS to commence suit against Laneko in the United States District Court Eastern District of Michigan to protect its rights. *See Exhibit A.*

15.    Ultimately, on August 31, 2005, DAS entered into an agreement with Laneko in the hopes of ensuring shipment of the critical Components until production could be transitioned to another supplier. Toward that end, DAS reluctantly agreed, and obligated itself, to make a hostage payment directly to Wachovia in the amount of $1,860,000 – a fact that Wachovia conveniently omits from its Motion.

16.      It was well known by Wachovia at the time that Debtors were contemplating filing for bankruptcy, and the agreement contained a provision contemplating a bankruptcy filing.

17.      On August 31, 2005, as obligated under the Settlement Agreement, Delphi made a wire transfer directly to Wachovia in the amount of $1,860,000.  *See Exhibit B: Adversary Complaint against Laneko and Wachovia.*

18.      As noted previously, a little more than a month later, Debtors filed the Petitions.

**Debtors Obtain and Serve the Preservation Motion and Order Pursuant to this Court's Order and Applicable Law.**

19.      By August 2007, Debtors had made significant progress toward confirming a plan of reorganization.   However, in view of the impending expiration of applicable statutes of limitations for any preference actions, on August 6, 2007, Debtors filed the Preservation Motion requested an Order  Under 11 U.S.C. §§ 102(1)(a), 105(a), 107, 108(a)(2), and 546(a) and Fed. R. Bankr. P. 7004, 9006(c) and 9018(i) Authorizing Debtors to Enter into Stipulations Tolling Statute of Limitations with Respect to Certain Claims, (ii) Authorizing Procedures to Identify Causes of Action that Should be Preserved, and (iii) Establishing Procedures for Certain Adversary Proceedings Including those Commenced Under 11 U.S.C. § 541, 544, 547, 548 or 553 (Docket No. 8905).

20.      The Preservation Motion sought entry of  the Preservation Order  that: (a) allowed the Debtors to file adversary proceeding complaints under seal, (b) directed the Clerk of Court to delay issuing summonses until the Debtors notified the Clerk of their intent to prosecute the relevant actions, (c) stayed each adversary action unless and until the Debtors made service of process on the respective defendants, (d) authorized, but did not direct, the abandonment of

certain causes of action, and (e) extended the time by which the Debtors would be required to

serve process until March 31, 2008 so that the complaints would not be subject to dismissal

under Fed. R. Civ. P. 4(m).

21. The Preservation Motion explained the Debtors' rationale as follows:

> Sealing the complaints will keep the actions inactive and would be
> consistent with the Debtors' intention to de-link the sealed adversary
> proceedings from all other activity in these chapter 11 cases and to prevent
> their use for any purpose by any party.  Thus, sealing should promote the
> plan process and avoid needless costs relating to actions that remain
> unnecessary under the Debtors' prospective plan ...
>
> Moreover, sealing the actions would avoid unnecessarily alarming
> potential defendants.  The Debtors have worked to preserve and repair
> their business relationship with many of the potential defendants during
> these cases and have negotiated or regained favorable credit terms with
> many suppliers and are continuing to do so. (Docket 8905, at ¶¶ 36 – 37)

22.    At the time, as the Court noted, even potential preference defendants understood

that the Preservation Motion benefited them, and not just the Debtors, because at that time

Debtors anticipated that the Chapter 11 plan was going to pay creditor's 100 cents on the dollar

and therefore preference actions would have been unnecessary and moot.  Thus, Wachovia's

statement in its Motion that "nor did any basis ever exist for delaying service of the Complaint

against [Wachovia]" is not true.  (Wachovia Motion, ¶ 4 ) (*Emphasis in original*).  The

Preservation Motion:

> was signed off on by the unsecured creditors' saying that there's a recog-
> nition that there is a two-year statute of limitation and also recognizing
> that, at the time, the plan was going to pay creditors a hundred cents on the
> dollar and that it did not make sense for creditors to have to hire people …
> to defend them in a situation where it was likely to be moot … And it was
> on very wide notice … there were lots and lots of potential recipients of
> [preferences] who got actual notice of it.  And there were no objections.
> Everyone was delighted not to be sued.  They understood.

*See Exhibit C: Transcript of April 1, 2010 hearing at p. 28*  Not surprisingly, the Preservation Motion was unopposed.  Although Laneko/Wachovia was not served with the Preservation Motion because they not on the master service list, they were not required to be served.  *See*, e.g., Fed. R. of Bankr. P. 9006(b)(1) ("the court for cause shown may at any time in its discretion ... **with or without motion or notice** order the period enlarged if the request therefor is made before the expiration of the period originally prescribed...."). (*emphasis added*)

      23.     In approving the Preservation Order, the Court expressly found good cause:

> let me say for the record, the motion in addition to being unopposed sets forth good cause and to the extent you needed good business reasons for all the relief that you're seeking here, and that includes the [sea]ling portion of it and consequently I'll approve it in full.

*See Exhibit D: Transcript, August 16, 2007 at p. 11*.  The Court then entered the Preservation Order, which permitted the Debtors to file the adversary complaints under seal, and to serve the summons and complaints by March 31, 2008.

      24.     On September 30, 2007, the Debtors filed an adversary proceeding against Wachovia and Laneko ("Wachovia Adversary Complaint").  See Exhibit B.  The Debtors sought to recover millions of dollars in preferential transfers to Laneko and Wachovia, including the $1.86 million hostage payment.  Had the Preservation Order not been entered, Debtors still would have had 120 days – or until January 28, 2008 – to serve that Adversary Complaint and Summons on Wachovia.

      **The Disclosure Statement**

      25.     On December 10, 2007, the Debtors filed their First Amended Joint Plan of Reorganization (Docket No. 11386) and related disclosure statement (the "Disclosure Statement" or "DS") (Docket No. 11388).  Also on December 10, 2007, the Court entered an order (Docket No. 11389) approving the adequacy of the information contained in the Disclosure Statement.

8

26.    Exhibit 7.24 of the Plan, filed on December 28, 2007, expressly reserved causes of action against Laneko and Wachovia.

> For the avoidance of any confusion, the Debtors and Reorganized Debtors or any successors holding such rights of action expressly retain, among other rights of action:
> ……
>
> Any and all claims, Causes of Action, rights of action, suits, and proceedings in favor of the Debtors or their Estates against Laneko Engineering Co., Wachovia Bank, National Association and Laneko Engineering Co. Inc. and their affiliates and subsidiaries. (Docket No. 11608)

27.    The Disclosure Statement estimated that the Debtors had more than 11,000 potential preference claims totaling almost $6 billion, but added that the Debtors did not intend to pursue these claims in light of distributions to be made under the Plan if and when it was consummated.  (DS at 149-153.)  The Disclosure Statement also indicated that the Court had entered the Preservation Order, which had been sought by the Debtors, to "preserve valuable estate assets in a manner that will not unnecessarily disrupt their prosecution of the Plan or their existing business relationships with potential defendants that are necessary to the Debtors' on-going operations."  (DS at 148.)  The Disclosure Statement further stated that the Debtors were "authorized (but not directed)" to abandon certain preference claims under the Preservation Order.  (DS at 150.)

28.    On December 15, 2007, Debtors served upon Wachovia a Confirmation Hearing Notice, which set the hearing date for the Plan Confirmation for January 25, 2008. (Docket 11974)

29.    Wachovia contends that it released certain liens and claims against Laneko on January 14, 2008 because it was unaware a cause of action had been asserted against it, in spite of the fact that: (a) it knew that it had received the $1.86 million hostage payment within 90 days

9

of the Debtor's bankruptcy filing; (b) it received notice of the Confirmation Hearing and the Disclosure Statement had been filed publicly; and (c) the 120 day service period in which to serve a summons and complaint had not yet expired had the complaint been filed on October 8, 2007 – the date on which Wachovia contends the applicable statute of limitations would have expired.

30.      On January 25, 2008, the Court entered an Order (Docket No. 12359) confirming the Plan, as amended (the "Confirmed Plan").   The Confirmed Plan proposed payment in full to the holders of allowed unsecured claims.  (Confirmed Plan, Art. 5.3.)  The Confirmed Plan was expressly conditioned, however, upon certain "Restructuring Transactions contemplated by this Plan." (*Id.*, Art. 7.1).)

**Debtors Provided Wachovia with Notice of Extension Motions and Orders to Which Wachovia Fargo Fails to Object**

31.      On February 28, 2008, the Debtors filed a motion (the "Second Extension Motion") to extend their time to serve their preference complaints.  (Docket No. 12922).  In the Second Extension Motion, the Debtors stated that they intended to "emerge from chapter 11 as soon as practicable," but sought an extension to "enable [them] to fulfill their fiduciary responsibility to preserve valuable assets in a manner that would not unnecessarily disrupt the emergence process or the Debtors' current business relationships with defendants that are necessary to the Debtors' on-going operations." (*Id.* at ¶ 21.)

32.      During the March 19, 2008 hearing on the Second Extension Motion, the Court – after noting that there were no objections to the Motion - raised the issue of whether entities not on the 2002 Service List, but against whom Debtors had retained causes of action in the Plan (i.e., Laneko and Wachovia), had been served.  *See Exhibit E: March 19, 2008 Hearing Transcript, pp. 23 – 25.*  The Court directed the Debtors to serve notice of presentment of the

10

Order granting the Second Extension Motion on Laneko and Wachovia to "settle [the order] as to the handful of people that the plan at least contemplates would be pursued." *Id.* at 24. Debtors' counsel then noted, and the Court agreed, that Exhibit 7.24 was a public document.

> MR. BUTLER: We'll do that, Your Honor. And the existence of those folks is obviously that that exhibit to the plan is public. So everyone knows what that retention is. So –

> THE COURT: Right. *Id.* at 25

33. On March 20, 2008, Debtors filed a notice of presentment regarding the Second Extension Order. (Docket 13190) Debtors served Wachovia with that notice. (Docket No. 13199). Although Wachovia now claims that by then the "damage already was done," Wachovia did not object to the proposed order. Had it done so, this Court would have reviewed Wachovia's objection.

34. On March 28, 2008, the Court granted the Debtors' request and extended their time to serve preference complaints until May 31, 2008. (*See* Docket No. 13277). The Debtors served that Order on Wachovia. (Docket 13315)

35. On April 10, 2008, the Debtors sought a further extension of time to serve their preference complaints. (*See* Docket No. 13361) ("Third Extension Motion"). The Third Extension Motion sought to extend the Debtors' service deadline until 30 days after substantial consummation of the Confirmed Plan or any modified plan. Debtors served that Motion on Wachovia. (Docket No. 13415)

36. After a hearing on April 30, 2008 – during which Wachovia raised no objections to the Third Extension Motion - the Court entered an order granting the extension. (*See* Docket No. 13484) ("Third Extension Order"). During that hearing, counsel for the Debtors noted that specific notice of that Motion was given to Laneko and Wachovia because they were "the only

two parties that had been identified under Exhibit 7.24 of the plan as having avoidance actions

preserved under the plan and, therefore, we gave particularized notice to them of the relief

sought by the debtors…" *See Exhibit F: April 30, 2008 hearing transcript, at 11 – 12.*

37.    Debtors served the Third Extension Order on Wachovia. (Docket No. 13540).

**The Court Confirms  the Modified Plan and Enters the Plan Modification  Order to
Which Wachovia Fails to Object**

38.    On June 1, 2009, the Debtors sought an Order approving additional modifications

to the Confirmed Plan (the "Modified Plan") as well as a supplemental disclosure and procedures

for re-soliciting votes. (Docket No. 16646.) The Court entered the Order, with modifications, on

June 16, 2009.  Subsequent amending Orders were entered on June 29, July 17 and July 21, 2009

(Docket Nos. 17376, 18352 and 18551).

39.    On July 30, 2009, the Court entered an order confirming the Modified Plan as

amended (Docket No. 18707) ("Plan Modification Order").  The Court found that the Debtors'

retention of the 177 preference actions listed on Exhibit 7.19 of the Modified Plan, and the non-

retention of the other preference actions, was in the best interests of creditors. *Id.* at ¶¶ LL.

40.    Section 7.19 of the Modified Plan provides, in pertinent part:

> In accordance with section 1123(b)(3) of the Bankruptcy Code and except
> as otherwise provided in section 7.19 of the Plan, the Reorganized Debtors
> shall retain and may (but are not required to) enforce all Retained Actions
> and all other similar claims arising under applicable state laws, including,
> without limitation, fraudulent transfer claims, if any, and all other Causes
> of Action of a trustee and debtor-in-possession under the Bankruptcy
> Code, including without limitation, all of those claims, Retained Actions,
> and Causes of Action that are listed in the Debtor's Schedules, as they
> may have been amended, and any such claims, Retained Actions, and
> Causes of Action that may have subsequently arisen, that may have
> subsequently been discovered, or which may be pending.  The Debtors or
> the Reorganized Debtors, in their sole and absolute discretion, shall
> determine whether to bring, settle, release, compromise, or enforce such
> Retained Actions (or decline to do any of the foregoing), and shall not be
> required to seek further approval of the Bankruptcy Court for such action.

The Reorganized Debtors or any successors may pursue such litigation claims in accordance with the best interests of the Reorganized Debtors or any successors holding such rights of action.

For the avoidance of any confusion, the Debtors and Reorganized Debtors or any successors holding such rights of actions expressly retain, among all other rights of action:

………

5.     Any and all claims, Causes of Action, rights of action, suits, and proceedings in favor of Debtors or their Estates against Laneko Engineering Co., Wachovia Bank, National Association and Laneko Engineering Co. Inc. and their affiliates and subsidiaries including those asserted in Adversary Proceeding No. 07-02720.

41.     On October 2, 2009, the Debtors filed a further extension motion.  (Docket No. 18952) (the "Fourth Extension Motion")  The Fourth Extension Motion requested an extension of the deadline for serving summonses and complaints until 180 days after substantial consummation of the Modified Plan.  Debtors served the Fourth Extension Motion on Wachovia. (Docket No. 18967).  Again, Wachovia did not object.

42.     The Court summarized the rationale for the Fourth Extension Motion as follows:

It became clear during the course of 2008 that the plan investors were not going to close the plan or a closely similar modified plan and, instead, the debtors turned their attention to a new plan.  During this period, the debtors also narrowed down the number of potential proceedings . . . to 177.  The . . . primary rationale for the prior extension orders no longer applied.  However, the debtors concluded that even with respect to the 177 claims, there may not be a sufficient basis to pursue those claims actively and force any parties to incur additional cost in respect thereto.

Frankly, by that point in the case, and we're now focusing on the fall of 2009, it was not clear whether the debtors had sufficient funds to even conduct their case let alone pursue adversary proceedings.  And the specter of conversion to Chapter 7 where a Chapter 7 trustee would be pursuing the proceedings was [quite] real.  Consequently, the debtors sought, and the Court granted, a third extension motion . . . .

*See* Ex. C, Transcript April 1, 2010 at 62-63.

43.    The Fourth Extension Motion explained as follows why the Debtors needed more than thirty days after confirmation to serve their preference complaints:

> At the time of the Debtors' request to extend their Fed. R. Civ. P. 4(m) deadline to serve defendants in the Adversary Proceedings until 30 days after substantial consummation of a plan of reorganization, the Confirmed Plan contemplated that the Debtors would maintain essentially the same identity and corporate organization . . . and that the reorganized company would retain few causes of action . . . [H]owever, the transaction set forth in the Modified Plan . . . divides the Debtors' business among three separate parties . . . Consequently, the Debtors do not believe that DPH Holdings will be able to evaluate each of the retained Adversary Proceedings – for example, to assess the ongoing relationship with certain defendants and whether events since initiating the Adversary Proceedings have impacted the Proceedings within 30 days after substantial consummation of the Modified Plan . . . In turn, defendants who are parties to Retained Adversary Proceedings . . . could be forced to unnecessarily incur litigation expenses associated with the defense of such Adversary Proceedings.

(Fourth Extension Motion, at ¶¶ 17-18.)

44.    On October 6, 2009, the Debtors substantially consummated the Modified Plan, and the Modified Plan became effective on that date.  (Docket No. 18958)

45.    On October 22, 2009, the Court entered an Order granting the Fourth Extension Motion.  (Docket No. 18999) ("Fourth Extension Order").  The Debtors did serve this Order on Wachovia.  (Adv. Pro. Docket No. 21)  On February 19, 2010, the Debtors timely served the summons and Wachovia Adversary Complaint on Laneko and Wachovia.  *Id.*

**Wachovia Finally Raises Objections to the Preservation Order in June 2011**

46.    On September 7, 2010, Debtors filed their Motion for Leave to File Amended Complaints.  (Docket No. 20575)

47.    47.    On June 7, 2011, Wachovia filed its Joinder to Opposition to the Reorganized Debtors' Motion for Leave to File Amended Complaint and Motion to Dismiss with Prejudice (Adv. Pro. Docket No. 35).  In that filing, Wachovia asserted that the case should be

dismissed because it allegedly did not receive notice of Complaint in 2007 – the first time

Wachovia had ever raised such an assertion in any filing with the Court.

48.     October 3, 2011, Wachovia filed this Motion and scheduled it for hearing on

October 24, 2011.[1]  At no time prior to June 7, 2011 did Wachovia ever file a Motion objecting

on the basis that it did not receive notice in that an adversary proceeding may have been filed

against it before it allegedly released the Laneko liens and claims.

## ARGUMENT

### A. Wachovia's Motion Should be Denied as Untimely Because it Was not Filed within 180 Days of the Plan Modification Order.

49.     Wachovia's Motion – purporting to rely on Rule 60 - should be denied as

untimely because it was not filed within 180 days of the Modification Approval Order as

required by 11 U.S.C. § 1144, which provides:

> On request of a party in interest at any time before 180 days after the date
> of entry of the order of confirmation, and after notice and a hearing, the
> court may revoke such order if and only if such order was procured by
> fraud…

50.     A creditor cannot rely upon Rule 60 to circumvent the 6 month time limitations

set forth in Section 1144.  The Court elaborated on this in the case of *In re Vencor, Inc.*, 284 B.R.

79 (Bankr. D. Del. 2002):

> The Debtors respond that Rule 60 (b) is not available to revoke an order
> confirming a chapter 11 plan. We agree. The Federal Rules of Civil
> Procedure are not generally applicable to bankruptcy proceedings except
> as specifically incorporated by the Federal Rules of Bankruptcy
> Procedure. While Rule 9024 of the Federal Rules of Bankruptcy

---

[1] It was Debtors' understanding that the narrow issue before the Court at the October 24, 2011
hearing was whether the service issues relating to the Rule 4(m) Orders require the Court to deny
the Debtors' Rule 15 Motion for Leave to File Amended Complaint.  This is consistent with the
Court's prior statements that it intended to address the global service issues before addressing
issues as to any particular defendant.  Wachovia's Motion seeks to circumvent this procedure
without having shown any legitimate basis for doing so.

Procedure does make Rule 60 applicable to contested matters in bankruptcy cases, it does so subject to certain restrictions. Of particular note is that Rule 9024 expressly requires that any action to revoke a confirmation order under chapter 11 must be filed within the time specified in section 1144. **Section 1144 provides that a party requesting revocation of an order confirming a chapter 11 plan must file its request within 180 days of entry of that order**. 11 U.S.C. § 1144. **This deadline is strictly enforced**. *See, e.g., Dale C. Eckert Corp. v. Orange Tree Assoc., Ltd. (In re Orange Tree Assoc., Ltd.),* 961 F.2d 1445, 1447 (9th Cir. 1992); *In re Longardner & Assoc.,* 855 F.2d 455, 460 (7th Cir. 1988); *680 Fifth Ave. Assoc.* v. *EGI Co. Servs.,* Inc. (*In re 680 Fifth Ave. Assoc.),* 209 B.R. 314, 322 – 323 (Bankr. S.D.N.Y. 1997).

Even if Rule 9024 did not expressly provide that a motion to revoke a confirmation order had to be filed within the time specified in section 1144, such a request would still have to comply with the time limits in that section rather than those in Rule 60(b). Rules of procedure may not modify substantive law. 28 U.S.C. § 2075. *See, e.g., Branchburg Plaza Assoc., L.P. v. Fesa (In re Fesa),* 153 F.3d 113, 116 – 20 (3rd Cir. 1998); Pelletier v. Donald (In re Donald), 240 B.R. 141, 147 (1st Cir. 1999); In re Rickel & Assoc., 260 B.R. 673, 678 (Bankr. S.D.N.Y. 2001). 284 B.R. at 83 (*emphasis added*)

51.     Moreover, Section 1144 "provides that an order of confirmation may be revoked if and only if such order was procured by fraud... Fraud is the sole ground for revoking a confirmation." *See In re Chipwich, Inc.,* 64 B.R. 670, 678 (Bankr. S.D.N.Y. 1986) (*citations omitted*). Thus, "fraud in the procurement of a confirmed Chapter 11 plan of reorganization is the sole ground for revoking the confirmation order, and this issue must be raised by a party in interest within 6 months after the entry of the confirmation order." *Id*. (*citations omitted*)

52.     Applying these well-established, controlling legal principles here, there is no question that Wachovia's Motion is untimely and otherwise fails to comply with the requirements of Section 1144.

53.     On July 30, 2009, the Court entered the Plan Modification Order and concluded that the Debtors' retention of the 177 preference actions identified on Exhibit 7.19 of the

Modified Plan, including the Wachovia Adversary Complaint, was in the best interests of creditors.

54.     In the Plan Modification Order, the Court found that "it is in the best interests of the holders of Claims and Interests that the Retained Actions that are not expressly released under the Modified Plan be retained by the Reorganized Debtors pursuant to Article 7.19 of the Modified Plan to maximize the value of the Debtors' Estates." (Docket 18707 at ¶ LL)

55.     Arguably, the preference actions could not have been retained pursuant to the Plan Modification Order had the Preservation Order not been entered.  At bottom, Wachovia is essentially seeking a dismissal of the Wachovia Adversary Complaint because, if the Preservation Order is void as to Wachovia, then Debtors' preference claims against Wachovia are time barred.  Consequently, Wachovia's attack on the Preservation Order should be viewed as an attack on the Plan Modification Order.

56.     The Plan Modification Order was entered on July 30, 2009.  Thus, any attack on the validity of the Preservation Order was required to: (a) be made within 180 days of the entry of the Plan Modification Order – by January 26, 2010; and (b) allege that the Plan Modification Order was procured by fraud.  Wachovia fails to meet either of these requirements.

57.     Wachovia's Motion was not filed until October 3, 2011 – over a year and half beyond the 180 day period set forth in Section 1144. The first time Wachovia ever objected to the Preservation Order was in its Joinder Opposition brief in response to Debtor's Motion for Leave to Amend, which was not filed until June 7, 2011. Even if that filing somehow constituted a "request" under Section 1144 to modify the Plan Modification Order, it is still untimely by more than a year. Consequently, Wachovia's Motion should be denied for this reason alone.

58.    Further, Wachovia fails to allege that the Plan Modification Order was procured by fraud as required by Section 1144 for the simple reason that there is absolutely no evidence supporting such an assertion.   As a result, for this additional reason, Wachovia's Motion should be denied.

**B.    Even if Rule 60 Applies, Wachovia's Motion Should be Denied as Untimely and Otherwise Meritless.**

59.    Even if Rule 60 applies, Wachovia's Motion should still be denied because it has not, and cannot, meet the requirements of that Rule to obtain relief from the Preservation Order.

60.    Bankruptcy Rule 9024 incorporates Fed. R. Civ. P. 60.  In pertinent part, Rule 60 provides that:

> (b) On motion and upon such terms as are just, the court may relieve a party or a partys' legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged...; or (6) any other reason justifying relief from the operation of the judgment. *See* Fed. R. Civ. P. 60(b)

61.    A "motion under Rule 60(b) must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).  Wachovia seeks to avoid Rule 60's one year time limitation for sections (1) – (3) by relying upon Rule 60(b)(4) – "the judgment is void" – and the catch all provision of Rule 60(b)(6) – "any other reason that justifies relief." However, neither provision helps Wachovia.

62.    First, Wachovia has not, and cannot, meet the requirements of Rule 60(b)(4), under which a court may relieve a party from a final judgment, order, or proceeding where the

judgment is void. A motion for relief from an order or judgment is within the discretion of the court. *See Nemaizer v. Baker*, 793 F.2d 58, 61 – 62 (2d Cir. 1986). "Motions under rule 60(b) are addressed to the sound discretion of the ... court and are generally granted only upon a showing of **exceptional circumstances**." *Mendell v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990) (*emphasis added*). "Properly applied Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." *Nemaizer*, 793 F.2d at 61. Stated another way, Rule 60(b) should be broadly construed to do "substantial justice," however final judgments should not "be lightly reopened." *See id.*

63.     As the Supreme Court has recently explained the stringent requirements that need to be satisfied in order to prevail on a Rule 60(b)(4) motion in the context of a bankruptcy court order:

> [A] void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final. The list of such infirmities is exceedingly short; otherwise, Rule 60(b)(4)'s exception to finality would swallow the rule. "A judgment is not void," for example, "simply because it is or may have been erroneous."... Instead, Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard.

*United Student Aid Funds, Inc.* v. *Espinosa*, 130 S.Ct. 1367, 1377 (2010)

64.     Wachovia erroneously claims that the alleged lack of notice regarding the Preservation Order deprived it of due process warranting relief from that Order pursuant to Rule 60(b)(4). Wachovia's argument on this point lacks merit.

65.     The due process clause proscribes the "deprivation of life, liberty or property by adjudication" without prior "notice and opportunity for hearing appropriate to the nature of the case." *Mullane* v. *Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). To prevail on a procedural due process claim, a litigant must show (1) that the state deprived him of a protected

interest in life, liberty, or property and (2) that the deprivation occurred without due process of law. *See Ky. Dep't of Corr.* v. *Thompson*, 490 U.S. 454, 460 (1989); *Reynolds* v. *Wagner*, 128 F.3d 166, 179 (3d Cir. 1997); *see also Bd. of Regents of State Colleges* v. *Roth*, 408 U.S. 564, 571 (1972) (the first question in the procedural due process analysis is whether the government has interfered with a liberty or property interest belonging to the claimant). Here, neither prong is satisfied; accordingly, the due process challenge to the Preservation Order fails.

66.    Wachovia was not entitled to notice of the Motion for the Preservation Order. *See*, e.g., Bankruptcy Rule 9006(b)(1); *Law Debenture Trust Co.* v. *Calpine Corp.* (In re Calpine Corp.), 356 B.R. 585, 595 (S.D.N.Y. 2007); *Kernisant* v. *City of New York*, 225 F.R.D. 422, 431 n. 13 (E.D.N.Y. 2005); *Brady* v. *Marks*, 7 F.Supp. 2d 247, 255 (W.D.N.Y. 1998). Clearly, the Preservation Order has not deprived Wachovia of any identifiable liberty or property interest. *See Mullane*, 339 U.S. at 313 (noting that lack of notice and opportunity to be heard, in the absence of a deprivation, does not constitute a due process violation). Indeed, to the extent that Debtors prevail in its preference action and obtain a judgment against Wachovia, such judgment will follow an adjudication of the case with all of the protections afforded by the Federal Rules of Bankruptcy Procedure. *Sutera v. Transp. Sec. Admin.*, No. 09-cv-2351, 2010 U.S. Dist. LEXIS 42759, at *18 (E.D.N.Y. Apr. 29, 2010) ("[T]he 'essential principle' of procedural due process is that a deprivation of life, liberty, or property be preceded by notice and an opportunity to be heard.").[2] Wachovia's putative lack of notice of the Preservation Order in 2007 does not rise to the level of a constitutional deprivation. As a result, Wachovia's Motion should be denied as to its Rule 60(b)(4) argument.

---

[2] The cases upon which Wachovia relies are easily distinguished because the orders in those cases, unlike the Preservation Order here which simply extended the time in which Debtors could serve the summons and Wachovia Adversary Complaint, did deprive the defendants of property rights.

20

67.     In addition, Wells Fargo's Rule 60(b)(4) Motion should be denied as untimely.
Rule 60(b)(4) Motions must be made within "a reasonable time." See Fed. R. Civ. P. 60(c)(1).
Although Wachovia cites to cases from other jurisdictions that conclude that a Rule 60(b)(4) may
be made at any time, the Second Circuit requires that such a motion be made within a reasonable
time.  *See State St. Bank & Trust Co.* v. *Inversiones Errazuriz Limitada*, 374 F.3d 158, 178 – 179
(2d. Cir. 2004).

68.     Wachovia cannot credibly claim that its Motion was made within a reasonable
time.  Wachovia has known since, at the latest, March 2008, about the possibility that the
Wachovia Adversary Complaint had been filed against it.  It waited three and a half years to
bring this Motion.  There is no possible valid basis excusing such a delay.  This is clearly an
unreasonable amount of time, and for this additional reason, should result in the denial of
Wachovia's Rule 60(b)(4) Motion.  *See*, e.g., *Days Inn Worldwide, Inc.* v. *Patel*, 445 F.3d 899,
905-906 (6th Cir. 2006) (delay of 11 months was unreasonable, with Court noting that "[a] party
may not use a Rule 60(b)(4) motion as a substitute for a timely appeal.")

69.     In addition, Rule 60(b)(6) – "any other reason that justifies relief" – does not help
Wachovia.  Rule 60(b)(6) motions likewise are only granted where there is a showing of
"exceptional circumstances." *Nemaizer*, 793 F.2d at 61 - 62.

70.     A motion under Rule 60(b)(6) also "must be made within a reasonable time." *See*
Fed. Civ. P. 60(c)(1). "What is reasonable will vary from case to case and depends on, among
other things, whether the adverse party has been prejudiced and whether the moving party had
some good reason for his failure to take appropriate action sooner." *La Barbera* v. *Whitney*
*Trucking, Inc.*, 245 F.R.D. 142, 145 (S.D.N.Y.) (*internal quotation marks omitted*). Wachovia's
Motion, filed at least three and a half years after Wachovia became aware that a preference

action may have been filed against it, was not made within a reasonable time. The Second Circuit and other Courts in this District have routinely found that shorter periods of delay were not reasonable, at least in the absence of mitigating circumstances.  S*ee, e.g., Kellogg v. Struck, 269 F.3d 100, 104 (2d Cir. 2001)* (26 months); *Truskowski* v. *ESPN, Inc*., 60 F.3d 74, 77 (2d Cir. 1995) (18 months); *Peyser v. Searle Blatt & Co., Ltd.*, No. 99 Civ. 10785 (WK), 2001 WL 1602129, at *2 (S.D.N.Y. Dec. 14, 2001) (nearly 16 months).  Wachovia points to no mitigating circumstances that somehow excuse its unreasonable delay bringing its Motion.  In addition, even if the Motion were timely, Wachovia points to no extraordinary circumstances that would justify vacating the Preservation Order.  For this additional reason, Wachovia's Motion should be denied.

### C.  Wachovia's Prejudice Argument Fails.

71.    Wachovia's claim that its Motion should be granted because the release of its putative liens and claims against Laneko somehow has prejudiced its ability to defend against claims asserted by Debtors in the Wachovia Adversary Complaint is weak, speculative, and at best, highly fact intensive which can only be resolved following a fair opportunity to develop the pertinent facts.

72.    The relevant prejudice to Wachovia that the Court must now consider in reviewing the Preservation Order "involves impairment of defendant's ability to defend on the merits, rather than foregoing such a procedural or technical advantage [of the statute of limitations]." *National Union Fire Ins. Co. v. Barney Assoc.,* 130 F.R.D. 291, 294 (S.D.N.Y. 1990).

73.    Factual issues abound as to the extent, if any, that the alleged release of claims against Laneko has impaired Wachovia's ability to defend the merits of the claims asserted by

Debtors.  Wachovia still is free to raise defenses such as ordinary course, subsequent new value, etc. to the extent they apply.   For example, Wachovia claims that it never received any payments from Debtors.  If true – of course it is not true given that Debtors made the $1.86 million hostage payment directly to Wachovia – then that could be a valid defense to Debtor's preference claims. The prejudice to Wachovia is speculative at best.

74.    Conversely, the resulting prejudice to the Debtors if the Court were to award Wachovia the relief it seeks – the effective dismissal of valid and valuable preference claims - monumentally outweighs any prejudice to Wachovia, which at this point remains purely speculative.  There was no impropriety by Debtors with respect to the Preservation Order and no basis for such an unreasonable and punitive result.   Wachovia's prejudice argument is insufficient to support the granting of its Motion.  For this additional reason, Wachovia's Motion should be denied.[3]

---

[3] Furthermore, if Wachovia had actual knowledge that a preference action may have been filed against it when it allegedly released the Laneko liens and claims, then the fundamental assumption on which its Motion is based is false, and its Motion would be meritless for this additional reason.  *See In re Medaglia*, 52 F.3d 451, 454 (2d Cir. 1995) (counsel's actual notice sufficient to satisfy notice requirements.) There are numerous issues of fact that, at a minimum, warrant further inquiry as to Wachovia's actual knowledge on this point before the Court makes any ruling. *See also*, *In re TWA Inc. Post Confirmation Estate*, 305 B.R. 221, 227 (D. Del. 2004) ("[I]n large chapter 11 cases sophisticated creditors typically are well aware of prospects and risks of preference litigation. … Thus, it seems unlikely that creditors could be surprised or caught off guard when such preference complaints are finally filed.").

## **CONCLUSION**

75.    For the foregoing reasons, Debtors respectfully request that the Court deny Wachovia's Motion, and award Debtors any other relief that the Court determines is equitable and just.

Dated:  October 18, 2011                     Respectfully submitted,

                                             **BUTZEL LONG, a professional corporation**

                                             By: /s/ *Cynthia J. Haffey*
                                             Cynthia J. Haffey, Esq.
                                             Sheldon H. Klein, Esq.
                                             Thomas Radom, Esq.
                                             Bruce L. Sendek, Esq.
                                             David J. DeVine, Esq.
                                             Thomas D. Noonan, Esq.
                                             150 West Jefferson, Suite 100
                                             Detroit, MI  48226-4452
                                             (313) 225-7000

                                             *Attorneys for Reorganized Debtors*

BUTZEL LONG, a professional corporation
150 W. Jefferson, Suite 100
Detroit, Michigan 48226
Cynthia J. Haffey, Esq.
Sheldon H. Klein, Esq.
Thomas Radom, Esq.
Bruce L. Sendek, Esq.
David J. DeVine, Esq.
Thomas D. Noonan, Esq.
(313) 225-7000

*Attorneys for Reorganized Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re | Chapter 11 |
| DPH HOLDINGS CORP., *et al.*, | |
| | Case No. 05-44481 (RDD) |
| Reorganized Debtors. | Jointly Administered |

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2011, a true and correct copy of the *Reorganized Debtors' Response To Motion Of Wells Fargo Bank, N.A., Successor To Wachovia Bank, National Association, Under Rule 60(B) Of The Federal Rules Of Civil Procedure And Rule 9024 Of The Federal Rules Of Bankruptcy Procedure For Relief From The Orders Sealing Complaint And Extending The Time For Service Thereof* was served on Defendants via the courts electronic filing system and via e-mail.

Dated: Detroit, Michigan             /s/ Alexis L. Richards
       October 18, 2011              Alexis L. Richards

25