**Hearing Date and Time: October 24, 2011 at 10:00 a.m. (prevailing Eastern time)**

BUTZEL LONG, a professional corporation
150 West Jefferson, Suite 100
Detroit, Michigan 48226
Cynthia J. Haffey
Sheldon H. Klein
Thomas Radom
Bruce L. Sendek
David J. DeVine
Telephone: (313) 225-7000
Facsimile: (313) 225-7080
*Attorneys for Reorganized Debtors*

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
   In re  :  Chapter 11
: 
DPH HOLDINGS CORP., et al.,  :  Case No. 05-44481 (RDD)
: 
       Reorganized Debtors.  :  (Jointly Administered)
: 
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REORGANIZED DEBTORS' OMNIBUS SUPPLEMENTAL RESPONSE TO CERTAIN DEFENDANTS' SUBMISSIONS REGARDING THE OCTOBER 2, 2009 SUPPLEMENTAL POSTCONFIRMATION EXTENSION OF AVOIDANCE ACTION SERVICE DEADLINE MOTION**

**(REORGANIZED DEBTORS' SUPPLEMENTAL RESPONSE REGARDING 4(M) SERVICE)**

1

**Hearing Date and Time: October 24, 2011 at 10:00 a.m. (prevailing Eastern time)**

DPH Holdings and its affiliated reorganized debtors in the above-captioned cases (collectively, the "Reorganized Debtors"), formerly known as Delphi Corporation and certain of its subsidiaries and affiliates, former debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), submit this Supplemental Response regarding various recent filings (the "Replies") by certain preference defendants (the "Submission Defendants") in support of their affidavits and declarations (the "Submissions") regarding service of the Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion (Docket No. 18952) (the "Final Extension Motion").

## INTRODUCTION

1.     Of the 742 avoidance actions filed under seal prior to the Debtors' emergence from chapter 11, 177 actions were retained by the Reorganized Debtors. Today, the Reorganized Debtors believe that only 58 of the pending adversary proceedings are contested.[1] In connection with the Reorganized Debtors' Motion to Amend, certain defendants in these contested adversary proceedings have challenged notice of the Final Extension Motion through various filings, including 40 oppositions to the Motion to Amend, 36 Submissions, 27 oppositions to the Amended Omnibus Response and the Skadden Filings, and 15 motions to vacate the Final Extension Motion.[2] Because the Court has indicated that the notice issues briefed by the parties after the June 21, 2011 hearing constitute "part two" of the Reorganized Debtors' Motion to

---

[1]   The Reorganized Debtors believe that certain of these pending adversary proceedings may be settled prior to the October 24 hearing.

[2]   The Defendants' motion to vacate, among other things, seeks relief from the Final Extension Order under Federal Rule of Civil Procedure 60(b) because it was entered without providing particularized notice to the defendants. To be clear, the Reorganized Debtors do not believe that the motions to vacate will be re-heard by the Court at the October 24 hearing. Ultimately, however, the Reorganized Debtors believe that the Court should deny the relief sought under the motions to vacate and Rule 60(b) because, among other things, the Final Extension Order is an interlocutory order and, as described below, challenges relating to the prior Extension Motions are untimely.

1

Amend, the Reorganized Debtors maintain that each of the Submission Defendants' arguments in the above-referenced filings should be governed by the standards set forth in Rule 15.

2.      The Submission Defendants' Replies largely rehash their prior arguments, which have already been addressed in the parties' earlier briefs.  To the maximum extent possible, the Reorganized Debtors do not repeat their prior positions, nor do they repeat the substantive arguments asserted in the Reorganized Debtors' (A) Response to the Reply of NGK Automotive Ceramics USA, Inc. dated October 7, 2011 and (B) Joinder in Reorganized Debtors' Omnibus Supplemental Response to Certain Defendants' Submissions Regarding the October 2, 2009 Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion (the "Joinder"), which is being contemporaneously filed with this Supplemental Response by the Reorganized Debtors' conflicts counsel in these preference actions, Togut, Segal & Segal LLP.  Rather, the Reorganized Debtors adopt the substantive arguments in the Joinder and incorporate them by reference here.[3]  For purposes of this Supplemental Response, therefore, the Reorganized Debtors focus only on the limited number of newly raised arguments not addressed in the Togut Joinder which are pertinent to the issues which the Reorganized Debtors understand will be addressed at the October 24, 2010 hearing.  For the reasons explained in this and prior submissions, the Extension Orders[4] were valid and proper and should not be revisited by this Court.  The Reorganized Debtors further submit that there is no other basis to deny their Motion

---

[3]    In particular, but without limitation, this Supplemental Response adopts and incorporates by reference the arguments in the Joinder as to the nature of the shortcomings of many of the Submissions, and as to the consequences of these shortcomings for the purposes of these proceedings.

[4]    Capitalized but undefined terms used in this Supplemental Response have the same meanings as they do in the Amended Omnibus Response To Certain Defendants' Submissions Regarding the October 2, 2009 Supplemental Postconfirmation Extension Of Avoidance Action Service Deadline Motion (the "Amended Omnibus Response") (Docket No. 21571).

to Amend in any of the remaining cases. At most, for a limited number of defendants there may be individualized fact questions regarding prejudice. To the extent these cases exist, the Court should hold individualized hearings directed to both the nature and degree of each Submission Defendant's prejudice (if any), as well as the potential remedies available in each case. A proposed procedure for these hearings is generally described in the final portion of this Supplemental Response.

**ARGUMENT**

I.  **The Submission Defendants' Reply Arguments Do Not Justify Denying Leave to Amend, Vacating or Revisiting the Extension Orders, or Dismissing the Reorganized Debtors' Actions.**

3. In their Replies, the Submission Defendants make two general categories of arguments regarding the Rule 4(m) Extension Motions. The first category includes arguments that—irrespective of whether the Submission Defendants suffered any particularized, individual prejudice, and irrespective of the merits of the preference cases at issue—the Submission Defendants should be summarily excused from these cases because, although notice of the Extension Motions was provided to the master and 2002 service lists, the Reorganized Debtors did not provide each Submission Defendant with particularized notice of the Extension Motions via overnight mail. The second category includes arguments that the Submission Defendants were prejudiced by a lack of notice of the complaints or the Extension Motions or Extension Orders (collectively, the "Extension Filings"). The Reorganized Debtors believe that only the first category of arguments are properly before the Court at the October 24th hearing, and only to the extent that they are relevant to whether the court should grant the Reorganized Debtors' Motion to Amend under Rule 15. (June 21, 2011 Hearing Transcript, p. 307, attached in relevant part as **Exhibit A** ("Well, I think step one of this part two [of the Rule 15 analysis] would be the

3

defendants' assertion of their facts as to notice and step two of it would be the debtors' response.").) On the other hand, the second category of arguments presents separate and distinct issues that the Court should hear at a later date on an individualized basis to the extent necessary to resolve the Motion to Amend.

## II. The Submission Defendants' Global Challenges to the Validity of the Extension Orders Fail.

4. Various Submission Defendants contend in their Replies that the Extension Orders are invalid as a matter of law and that the Court should deny the Reorganized Debtors' Motion to Amend or dismiss these actions with prejudice as time-barred. In support of their contention, the Submission Defendants make (and in many cases repeat) four main arguments: (1) the Submission Defendants should have received particularized notice of the Extension Filings via overnight mail; (2) the Extension Orders are void for lack of due process; (3) the Extension Orders are void because they violate the Rules Enabling Act and the Separation of Powers doctrine; and (4) the Reorganized Debtors' prosecution of these actions after the expiration of the applicable limitations period has prejudiced all Submission Defendants as a matter of law. For the reasons already discussed in the Reorganized Debtors' previous briefs, and for the additional reasons set forth below, each of these arguments fails.

### A. The Manner and Extent of Service of the Extension Filings Is Not a Proper Basis for Vacating the Extension Orders.

5. As to the limited issue before the Court at the October 24 hearing, the Submission Defendants' general challenge to the Rule 4(m) extensions has no merit. As a matter of law, notice to defendants is not required before a court grants an extension of time to serve a

4

complaint.[5] For this reason alone, the Submission Defendants' attempts to retain preferential payments solely because they did not receive particularized notice of the Extension Motions are fatally flawed.

6. The Amended Omnibus Response sets forth specific facts for each Submission Defendant regarding their notice or other knowledge of the process this Court approved for the preference actions, namely, that the actions would be filed under seal with service deferred. This Court has recognized that different defendants had different levels of notice or awareness of the procedures approved by this Court, and it further suggested that spectrum of knowledge is pertinent to the equitable considerations now before this Court. (*See, e.g.*, June 21, 2011 Hearing Transcript, p. 308–09, attached in relevant part as **Exhibit A**.) Regarding the Submission Defendants' knowledge that they had been sued, it was inherent and necessary to the process approved by this Court that defendants would not be notified that they were defendants. The Submission Defendants' arguments are an attack on that process, not an argument regarding notice failings. For the reasons the Reorganized Debtors have already addressed at length the attack on the process fails.

7. For similar reasons, certain Submission Defendants' contention that service of the Final Extension Motion was inadequate unless given via overnight mail also fails. While the Court's case management order (Docket No. 5418) provided for particularized notice of filings

---

[5] *See* Fed. R. Civ. P. 6(b)(1)(A) ("[T]he court may, for good cause, extend the time . . . *with or without motion or notice* if the court acts, or if a request is made, before the original time or its extension expires." (emphasis added)); *Galdi v. Jones*, 141 F.2d 984, 992 (2d Cir. 1994) (affirming trial court's *ex parte* order enlarging defendant's time period within which to move or plead); *Boston Post Rd. Med. Imaging, P.C. v. Allstate Ins. Co.*, 221 F.R.D. 410, 414 n.20 (S.D.N.Y. 2004) (permitting *ex parte* application for extension of time when "made before the expiration of the period originally prescribed"); *Rampersad v. Deutsche Bank Securities, Inc.*, No. 02-Civ-7311, 2003 U.S. Dist. LEXIS 7861, at *1-4 (S.D.N.Y. May 9, 2003) (granting extension under Rule 4(m) *ex parte* when plaintiff was unable to determine a defendant's residence or place of business); *Dayton Monetary Assoc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 1992 U.S. Dist. LEXIS 12283, at *22 n.8 (S.D.N.Y. 1992) (rejecting defendant's challenge to Rule 4 extensions, granted upon *ex parte* applications because "Rule 6(b)(1) explicitly provides that such applications are properly made without notice").

5

to parties with a particularized interest, the case management order did *not* proscribe the Court from accepting different notice procedures in the special circumstances of the Extension Motions. Indeed, these alternative procedures were consistent with the *ex parte* nature of the Rule 4(m) relief sought in the Extension Motions while the complaints remained under seal. Further, the case management order did not vest the defendants with any substantive right to particularized notice. *See Harada v. DBL Liquidating Trust* (*In re* Drexel Burnham Lambert Group), 160 B.R. 729, 730 (S.D.N.Y. 1993) (finding that an *ex parte* case management order was "merely a case management tool of the Bankruptcy Court"); *Buergey v. Delta Air Lines, Inc.* (*In re* Delta Air Lines, Inc.), No. 06-9418, 2006 WL 3592334, at *6 (S.D.N.Y. Dec. 11, 2006) (finding that noncompliance with the court's case management order did not violate due process rights). As described in the Skadden Filings, the Debtors disclosed to the Court the basis for limiting the scope of service of the Extension Motions and complied with the Court's direction to provide particularized notice to only three of the defendants: Laneko Engineering Co., Wachovia Bank, National Association, and Laneko Engineering Co., Inc. The Debtors and the Reorganized Debtors demonstrated good cause for the Rule 4(m) extensions at the time they were sought,[6] and there is no basis to disturb this Court's Extension Orders retroactively based on a requirement of particularized notice.

---

[6] Certain of the Submission Defendants continue to argue that there was not good cause for the Final Extension Order because the Reorganized Debtors elected to pursue all 177 remaining preference actions even though they represented that they were considering abandoning some of them. *E.g.*, Response of Calsonic Corp., Calsonic N. America Inc. and Calsonic to Reorgainzed [sic] Debtors [sic] Amended Response to Certain Defendants' Submissions Regarding the October 2, 2009, Supplemental Postconfirmation Extension of Avoidance Action Service Deadline (the "Calsonic Reply"), p. 6 (Ad. Pro. No 07-02282, Docket No. 56). In no way does this argument negate the good cause for the Final Extension Order. First, it is based wholly on inference and hindsight; merely because the Reorganized Debtors ultimately pursued all of the actions does not mean they did not evaluate them, which, as affirmed in the Declaration John Brooks (Docket No. 21516), they did. Moreover, the evaluation process was just one of *several* important reasons for the Final Extension Motion. The Reorganized Debtors also sought additional time to allow new counsel to familiarize themselves with the cases and to allow the Reorganized Debtors to focus in the immediate term on consummating the many significant transactions contemplated by the recently confirmed plan.

8.  Finally, as a separate matter, any notice issues relating to the first three Extension Motions and Extension Orders are not properly before the Court. Not only was the Court's inquiry for "part two" of the Motion to Amend focused solely on the Final Extension Motion, but also, any notice issues relating to the earlier Extension Filings and arising prior to November 5, 2009 are time-barred. The Reorganized Debtors' rights to pursue the causes of action set forth in the sealed complaints were expressly preserved by the Plan and this Court's July 30, 2009 order approving the Plan (Docket No. 18707) (the "Modification Approval Order"). (Modified Plan Ex. 7.19; Modification Approval Order ¶¶ LL, 1.) To the extent that the Submission Defendants wished to challenge the Reorganized Debtors' retention of the avoidance actions in the sealed complaints—or the predicate Extension Filings—they had an opportunity to object to the Modified Plan, appeal entry of the Modification Approval Order, or seek its revocation. The Submission Defendants did not make any such challenge despite having received particularized notice of the effective date, and the time to do so has long since expired. Accordingly, the Submission Defendants' challenge to the Extension Filings based solely on notice and service issues is unavailing.

### B. The Submission Defendants Have Not Been Denied Due Process.

9.  Several Submission Defendants claim that their failure to receive particularized notice of the Final Extension Motion violated their right to due process. For reasons addressed in prior filings, the Submission Defendants have not been deprived of a property or liberty interest and thus have not been denied due process. Defendants offer no authority to change this conclusion. They rely heavily on *Johns-Manville Corp. v. Chubb Indemnity Ins. Co. (In re Johns-Manville Corp.)*, 600 F.3d 135 (2d Cir. 2010), which actually confirms that due process is *not* implicated here. *Johns-Manville* involved lack of notice regarding the **final resolution** of an

7

action. *Id.* The final resolution of an action does involve a property interest, because it disposes of a party's right to substantive relief. As the court noted, "[t]he principle of general application in Anglo-American jurisprudence [is] that one is not bound **by a judgment** . . . in which he is not designated as a party or to which he has not been made a party by service of process." *Id.* at 153 (internal quotation marks and citations omitted) (emphasis added). The procedural matters at issue here do not involve a judgment or any other final determination of the parties' rights. Rather, they merely involve the postponement of the ultimate adjudication of these actions, which due process permits. *Estate of Portnoy v. Cessna Aircraft Co.*, 603 F. Supp. 285, 295 (S.D. Miss. 1985) (quoting *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 611 (1974) (the "mere postponement of the judicial inquiry is not a denial of due process, if the opportunity given for **ultimate judicial determination of liability** is adequate." (emphasis added)). Accordingly, there is no due process right implicated by the service of a summons and complaint after the expiration of a limitations period.

### C. The Extension Orders Entered Under Fed. R. Civ. P. 4(m) Did Not Violate the Rules Enabling Act or the Separation of Powers Doctrine

10. Certain Submission Defendants wrongly claim that the Court's application of Federal Rule of Civil Procedure 4(m) in this case violated the Bankruptcy Rules Enabling Act, 28 U.S.C. § 2075,[7] because it abridged their "substantive right" to be free from a preference action after the expiration of the limitations period.[8]

---

[7] While Federal Rule of Civil Procedure 4(m) was promulgated under the Rules Enabling Act, 28 U.S.C. § 2072, rather than the Bankruptcy Rules Enabling Act, 28 U.S.C. § 2075, Federal Rule of Bankruptcy Procedure 7004 provides that Federal Rule of Civil Procedure 4 generally applies in bankruptcy adversary proceedings.

[8] See Heraeus Defendants' Reply in Opposition to Reorganized Debtors' Motions for Leave to Amend, to Supplement the Record of the June 21, 2011 Hearing and to File the Reorganized Debtors' Statement Regarding Service of the Final Extension Motion and in Reply to Debtors' Amended Omnibus Response (the "Heraeus Reply"), p. 20-26 (Docket No. 21623) and the Calsonic Reply, p.12 (Ad. Pro. No 07-02282, Docket No. 56). Numerous other Submission Defendants join in this argument.

8

11.     First, the Rules Enabling Act is not even implicated here because *Rule 4(m) was enacted by statute,* not as part of the Supreme Court's rule-making authority to which the Act applies. *See* Public Law No: 97-462 (enacting the predecessor to Rule 4(m), then enumerated as Rule 4(j)).

12.     In any case, the Submission Defendants' argument ignores recent and controlling Supreme Court authority. Just last year, in *Shady Grove Orthopedic Assoc. v. Allstate Insurance*, __ U.S. __; 130 S. Ct. 1431 (2010), the Supreme Court explained that the Rules Enabling Act applies only if a rule "alters the rules of decision by which [the] court will adjudicate [substantive] rights" as opposed to the "manner and means" for adjudicating those rights. *Id*. at 1442-1443 (internal quotations and citations omitted). The fact that a procedural rule affects a litigant's substantive rights is irrelevant. *Id.* Here, the Extension Orders do not modify the rules of decision for the adjudication of the preference claims, which is the substantive right at issue.

13.     Indeed, the Supreme Court (and other courts) has specifically held that "in actions arising under federal law, commenced in compliance with the governing statute of limitations, the manner and timing of serving process are generally nonjurisdictional matters of 'procedure' controlled by the Federal Rules." *Henderson v. United States*, 517 U.S. 654, 656, 116 S. Ct. 1638 (1996). *See also*, *J.G. v. Briarcliff Manor Union Free School District*, No. 07-CV-7245, 2008 WL 3843523, \*3 (S.D.N.Y. Aug. 14, 2008) ("There is no question that Rule 4(m) is consonant with the Rules Enabling Act and the Constitution ….").

14.     The Submission Defendants' cases do not support their conclusion. *In re Global Crossing Ltd.*, 385 B.R. 52 (Bankr. S.D.N.Y. 2008), thoroughly addressed in prior briefing, as well as *Locklear v. Bergman & Beving AB,* 224 F.R.D. 377, 380-381 (D. Md. 2004), hold only that Rule 4(m) does not allow a plaintiff to add parties that were not named when the limitations

9

period expired. *In re Osebach* 187 B.R. 92, 95 (Bankr. E.D.N.Y. 1995) (citing *Frasca v. United States*, 921 F.2d 450 (1990) dealt with an expired summons and did not address the Rules Enabling Act. Finally, neither *In re Searles*, 70 B.R. 266, 271 (D.R.I. 1987) nor *In re National Store Fixture Company*, 37 B.R. 481, 488 (Bankr. W.D. Mo. 1984) address statute of limitations or Rule 4(m) issues.

15.     Certain Submission Defendants repeat prior arguments that the reasons for which the Extension Orders were granted were improper under Rule 4(m). The Reorganized Debtors do not repeat prior arguments regarding the issue, but do address two cases cited in the Omnibus Reply of Certain Defendants to Reorganized Debtors' Omnibus Response to Certain Defendants' Submissions Regarding the October 2, 2009 Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion (the "Submission Defendants' Omnibus Reply") (Docket No. 21624), *Fimbres v. United States*, 833 F.2d 138, 139 (9th Cir. 1987) and *Smith v. Pennsylvania Glass Sand Corp.*, 123 F.R.D. 648, 651 (N.D. Fla. 1988), for the proposition that business reasons for deferring service are not good cause. (Submission Defendants' Omnibus Reply, p. 24 (Docket No. 21624).) Apart from pre-dating the current rule, which allows extension without cause, the cases are not on point. In *Fimbres*, the court held that "plaintiffs' financial problems were not an excuse for plaintiffs' counsel's ***failure to ask for an extension of time***," *id.* at 140 (emphasis added), not that business reasons cannot constitute good cause for an extension. The same was true in *Smith*—the plaintiff had failed to seek a timely extension and had otherwise failed to timely satisfy the requirements of Rule 4, and thus had not been diligent, 123 F.R.D. at 651, rather than diligently seeking an extension.

**D. Any Prejudice Resulting from the Extension Orders is Necessarily Defendant-Specific and Cannot Warrant a Reversal of the Extension Orders.**

16.     Certain Submission Defendants claim that *Zapata v. City of New York*, 502 F.3d

10

192 (2d Cir. 2007) establishes they have been prejudiced by the delay in service as a matter of law.[9] These Submission Defendants misunderstand the significance of *Zapata.*

17.   In *Zapata,* the plaintiff failed to serve the complaint ***or seek any extension of the service period under Rule 4(m)*** during the limitations period. *Id.* at 194. The district court denied plaintiffs' belated request for relief from its failure, in part because "prejudice is assumed" when service occurs after the limitations period. *Id.* at 195. The Second Circuit held that the district court did not abuse its discretion in denying plaintiff relief. In dictum, it recognized that there would be some prejudice from a further extension of service, *id.* at 198, but it squarely rejected the district court's analysis of the prejudice:

> [We] disagree with the district court's formulation that a dispositive degree of prejudice to the defendant is "assumed" when statute of limitations would bar the re-filed action[.] [W]e leave to the district courts to decide on the facts of each case how to weigh the prejudice….

*Id.* at 198.

18.   *Zapata* thus does not change the relevant inquiry before this Court: the Court must balance the parties' respective prejudices and other "equitable considerations." *Id.* at 197. Moreover, in doing so, individualized inquiry into the nature and extent of prejudice and how it might be remediated short of dismissal remains essential.[10]

---

[9]   *See, e.g.*, Heraeus Reply, p. 16 (Docket No. 21623); Calsonic Reply, pp. 13-15 (Ad. Pro. No 07-02282, Docket No. 56);

[10]   As this Court has recognized, the relevant prejudice is inherently temporally limited:

> I believe that the proper focus is not on prejudice to the defendants from the date that the adversary proceedings were commenced back in 2007, ***but prejudice resulting from a further extension***.

April 1, 2010 Hearing Transcript, p. 68, attached in relevant part as **Exhibit B** (emphasis added).

11

**III.    Various Submission Defendants' Individualized Bases for Challenging the Final Extension Motion Also Fail.**

    **A.    Various Submission Defendants Have Failed to Preserve the Defenses They Now Rely on in Connection with their Submissions.**

19.    As to the several Submission Defendants who failed to raise a challenge to the efficacy of service in their answer or in a pre-answer motion under Fed. R. Civ. P. 12(b)(5), the Replies of those parties confirm that they have waived the service argument they now assert.

20.    Some of these Submission Defendants erroneously contend that they have not waived an insufficiency of service defense because the original complaints have been dismissed, and they would be entitled to raise that putative defense in any response to the Reorganized Debtors' First Amended Complaint. These Submission Defendants are wrong. It is well-established in the Second Circuit that an amended complaint does not revive the defense of insufficiency of service of process if that defense was waived by the defendant's failure to raise it in response to the original complaint.

> Although an amended complaint ordinarily supersedes the original pleading, it does not automatically revive all of the defenses and objections that a defendant has waived in response to the original complaint. For example, even though Rule 15 of the Federal Rules of Civil Procedure does not expressly limit the defenses that can be alleged in response to an amended pleading, district courts in this circuit have determined that the Rule 12 defenses of lack of personal jurisdiction, improper venue, insufficiency of process and insufficiency of service, if waived by defendant's failure to raise those objections in response to the original complaint, may not be resurrected merely because a plaintiff has amended the complaint.

*Gilmore* v. *Shearson/American Express Inc.*, 811 F.2d 108, 112 (2d Cir. 1987).

21.    Because these Submission Defendants failed to challenge the sufficiency of service of process in their answer or pre-answer motion under Fed. R. Civ. P. (b)(5), they have "irrevocably waived" that defense. *See Shields v. Citytrust Bancorp.*, 25 F.3d 1124, 1128 (2d Cir.

12

1994) ("the defenses and objections that are irrevocably waived by answering an original complaint are those that 'involve[ ] the core issue of a party's willingness to submit a dispute to judicial resolution,' such as objections to 'lack of personal jurisdiction, improper venue, insufficiency of process and insufficiency of service.'"); *See also Neufeld v. Neufeld*, 910 F. Supp. 977, 986 (S.D.N.Y. 1996) ("Although amending the complaint may preserve certain defenses, defenses otherwise waived for defendant's failure to raise them against the first complaint are not resurrected by subsequent amendment of the complaint.")

22.  Other Submission Defendants erroneously contend that their assertion of a statute of limitations defense in their answer or pre-answer Rule 12 motion preserved their insufficiency of service defense. An answer or pre-answer Rule 12 motion must affirmatively and separately contain a defense based on improper service. *See, e.g.*, *Hemispherx Biopharma, Inc. v. Johannesburg Consolidated Investments*, 553 F.3d 1351, 1360 (11th Cir. 2008) ("Simply put, a litigant must cite each separate Rule 12(b) defense in the pre-answer motion or if no pre-answer motion is filed, then in the responsive pleading."); *Roque v. United States*, 857 F.2d 20, 21-22 (1st Cir. 1988) ("if the true objection is insufficient service of process, we do not think it is too much to require a litigant to plainly say so…"); *Federal Home Loan Mortg. Corp. v. Dutch Lane Assoc.*, 775 F. Supp. 133, 137 (S.D.N.Y. 1991) ("raising of a 'lack of personal jurisdiction' defense does not, under Rule 12, concurrently raise or preserve and insufficiency of service of process defense."). These Defendants failed to specifically raise any service objections in their answer of pre-answer Rule 12 motion. Consequently, they have waived that defense.

### B. Certain Submission Defendants' Objections to the Manner of Service Fail.

23.  Several of the Submission Defendants concede that they were on the service lists for various documents disclosing the existence of the preference actions and Extension Filings,

13

but they nonetheless challenge the adequacy of service based on the address or representative served.[11] Wells Fargo, for instance, claims to have no record of receiving the Confirmation Hearing Notice because the notice was supposedly sent to the wrong department of Wells Fargo.[12] This ignores Fed. R. Civ. P. 5(b)(2)(C) (applicable by Bankruptcy Rule 7005), which provides for service by "[m]ailing to the person's last known address—in which event service is complete upon mailing." Receipt is presumed from an affidavit or certificate of service, and a self-serving affidavit denying receipt does not rebut the presumption. *In re R.H. Macy & Co., Inc.*, 161 B.R. 355, 360 (Bankr. S.D.N.Y. 1993).

24. In any case, the issue before the Court does not turn on technical questions regarding manner of service. The Court at the June 21, 2011 hearing acknowledged the "spectrum" of notice that existed as to the Extension Filings and suggested that it would consider all forms of notice other than those communicated "through the ether." (June 21, 2011 Hearing Transcript, pp. 299, 308-09, attached in relevant part as **Exhibit A**.)

## IV. Consistent with the Court's October 22, 2010 Scheduling Order, the Court Should Address Defendants' Arguments Concerning Individualized Prejudice Caused by the Final Extension Motion at a Later Date and on a Case-by-Case Basis

25. As the Reorganized Debtors have recognized all along, it is possible, although not likely, that a particular defendant may have suffered prejudice as a result of the Final Extension Order so extreme as to bear on whether to allow leave to amend. However, for the reasons

---

[11] *See, e.g.*, Opposition of the Timken Company and the Timken Corporation in Opposition to Reorganized Debtors' Amended Omnibus Response to Certain Defendants' Submission Regarding the October 2, 2009 Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion (Docket No. 21654) (denying adequacy of electronic service of Final Extension Motion as to both counsel and this Submission Defendant itself); *see also* Declaration of David Ciccolo in Further Support of Omnibus Reply of Wells Fargo to Reorganized Debtors' Omnibus Response to Certain Defendants' Submissions Regarding the October 2, 2009 Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion (the "Wells Fargo Declaration"), ¶¶ 9–13 (Ad. Pro. No. 07-02597, Docket No. 54).

[12] Wells Fargo Declaration, ¶¶ 9–13 (Ad. Pro. No. 07-02597, Docket No. 54).

14

previously explained by the Reorganized Debtors and acknowledged by the Court, such claims are inherently defendant-specific and can only be resolved through an orderly and individualized process for testing and evaluating a particular defendant's assertions. Further, in evaluating the claims of prejudice, it is important to remember that for the reasons explained in Paragraph 8, the relevant time window in which any possible prejudice might have been incurred is limited to the additional period allowed by the Final Extension Order—November 5, 2009 to the date of service, or approximately 20 to 120 days, depending on the defendant.[13]

26.     Given these realities, the Reorganized Debtors do not believe that the October 24th omnibus hearing is the appropriate time to consider the Submission Defendants' particularized prejudice arguments. Instead, the Court should conduct individualized hearings within the context of Rule 15 to the extent necessary to resolve the Reorganized Debtors' Motion to Amend. Federal Rule of Civil Procedure 15(a) provides that "[t]he court should freely give leave [to amend] when justice so requires." "[A]bsent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed." *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 283 (2d Cir. 2000) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). At the same time, however, this Court has "broad discretion" to decide whether circumstances, such as undue prejudice[14] to the defendants, weigh against granting the relief sought in the Motion to Amend. *Beachum v. AWISCO N.Y.*, 785 F. Supp. 2d 84, 104 (S.D.N.Y. 2011); *see also H.L. Hayden Co. of New York,*

---

[13] The relevant period in which each Submission Defendant might assert prejudice is set forth in **Exhibit C** attached.

[14] Courts may find undue prejudice when: "the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (internal citations omitted, emphasis in original).

*Inc. v. Siemens Medical Sys., Inc.*, 112 F.R.D. 417, 419 (S.D.N.Y. 1986) ("The decision is thus one involving a balancing process which weighs the potential for prejudice resulting from granting the amendment against the risk of prejudice to the moving party if the amendment is denied." (internal quotations omitted)). The Court's decision in this regard generally will not be subject to reversal on appeal unless the Court abuses the discretion that it exercises under Rule 15. *Spiegel v. Schulmann*, 604 F.3d 72, 78 (2d Cir. 2010).

## CONCLUSION

27.     For the reasons set forth above, the Submission Defendants' *per se* challenges to the Extension Orders based on notice and service issues alone necessarily fail, and the Reorganized Debtors should be granted leave to amend in each of the remaining preference actions. To the extent the Court does not immediately grant the Reorganized Debtors' Motion to Amend as to any Submission Defendant, the sole basis for postponing its decision should be the Submission Defendant's allegation of extreme and irremediable prejudice arising from the Final Extension Order. In light of the fact-intensive inquiry that the Court must undertake under Rule 15, any serious prejudice arguments warranting further consideration should be addressed on a case-by-case basis, using procedures similar to those applied to claims against the Reorganized Debtors.[15]

---

[15]    The Reorganized Debtors' proposed process is consistent with this Court's October 22, 2010, scheduling order (Docket No. 20698) entered in connection with the Motion to Amend, which provided for individualized hearings.

Dated: New York, New York
October 20, 2011

                                                Respectfully submitted,

                                                **BUTZEL LONG, a professional corporation**

                                                s/*Cynthia J. Haffey*
                                                  Cynthia J. Haffey
                                                  Sheldon H. Klein
                                                  Thomas Radom
                                                  Bruce L. Sendek
                                                  David J. DeVine
                                               150 West Jefferson, Suite 100
                                               Detroit, MI 48226-4452
                                               (313) 225-7000
                                               haffey@butzel.com
                                               P57352
                                               *Attorneys for Reorganized Debtors*

17