1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 05-44481-rdd

5    - - - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    DPH HOLDINGS CORP., et al.,

9

10             Reorganized Debtors.

11

12    - - - - - - - - - - - - - - - - - - - - - -x

13

14                    U.S. Bankruptcy Court

15                    300 Quarropas Street

16                    White Plains, New York

17

18                    August 25, 2011

19                    10:09 AM

20

21    B E F O R E:

22    HON. ROBERT D. DRAIN

23    U.S. BANKRUPTCY JUDGE

24

25

Page 2

1

2    HEARING re Sixty-Ninth Omnibus Hearing

3

4    HEARING re Notice of Agenda Proposed Forty-Seventh Claims

5    Hearing Agenda

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Transcribed by:  Zipporah Geralnik

25

```
 1
 2   A P P E A R A N C E S :
 3   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
 4         Attorneys for Debtors
 5         155 North Wacker Drive
 6         Chicago, IL 60606
 7
 8   BY:   JOHN W. BUTLER, ESQ.
 9         LEE P. GARNER, ESQ.
10         LOUIS S. CHIAPPETTA, ESQ. (TELEPHONICALLY)
11
12
13   DELPHI
14         Attorneys for Debtors
15         5825 Delphi Drive
16         Troy, MI 48098
17
18   BY:   WILLIAM COSNOWSKI, JR., ESQ.
19
20
21
22
23
24
25
```

Page 4

```
 1
 2   LOCKE LORD BISSELL & LIDDELL LLP
 3          Attorneys for Methode
 4          3 World Financial Center
 5          New York, NY 10281
 6
 7   BY:    ZACHARY D. SILBERSHER, ESQ.
 8          SHALOM JACOB, ESQ.
 9          ANN MARIE WALSH, ESQ.
10
11
12   WACHTELL, LIPTON, ROSEN & KATZ
13          Attorneys for Methode
14          51 West 52nd Street
15          New York, NY 10019
16
17   BY:    EMIL A. KLEINHAUS, ESQ.
18
19
20   BUTZEL LONG, PC
21          Suite 100
22          150 West Jefferson Ave.
23          Detroit, MI 48226
24
25   BY:    DAVID J. DEVINE, ESQ. (TELEPHONICALLY)
```

05-44481-rdd    Doc 21678    Filed 10/18/11    Entered 10/24/11 15:36:56    Main Document
DPH HOLDINGS CORPORATION, ET AL.
Pg 5 of 60

Page 5

```
 1                    P R O C E E D I N G S

 2            THE CLERK:  All rise.

 3            THE COURT:  Please be seated.  Okay.  Good morning.

 4    In re DPH Holdings.

 5            MR. BUTLER:  Your Honor, good morning.  Jack Butler

 6    from Skadden Arps here this morning for DPH Holdings.  Sitting

 7    at counsel table is my colleague, Lee Garner, and Will

 8    Cosnowski who is the legal representative from DPH Holdings.

 9            Your Honor, this is the sixty-ninth omnibus hearing

10    and the forty-eighth claims agenda hearing -- claims hearing.

11    There are four matters on the omnibus agenda.  There's one

12    matter on the claims agenda.  If I could briefly just address

13    those matters that are going forward.

14            THE COURT:  That's fine.

15            MR. BUTLER:  Taking up first, Your Honor, the claim

16    hearing agenda, if I may.  The forty-seventh claims hearing.

17    There's one matter listed on that agenda which was a claims

18    objection regarding the claims of ATS Ohio, Inc. and other

19    parties and that matter has been adjourned to the September

20    22nd, 2011 hearing pursuant to a notice of adjournment that's

21    been filed.  So there's nothing else on the claims agenda for

22    today.

23            THE COURT:  Okay.

24            MR. BUTLER:  And Your Honor, with respect to the

25    sixty-ninth omnibus hearing, there are four matters on that
```

05-44481-rdd    Doc 21678    Filed 10/18/11    Entered 10/24/11 15:36:56    Main Document
DPH HOLDINGS CORPORATION, ET AL.
Pg 6 of 60

Page 6

1    agenda.  One is being withdrawn, two are being adjourned and

2    one is going forward as contested.  So, as to the matters not

3    going forward; very briefly, matter number 1 on the agenda

4    which is the motion of the IUE-CWA at docket number 21492 has

5    been withdrawn by the IUE-CWA at docket number 21521.  It's not

6    going forward.

7            THE COURT:  So that -- that's over at this point?

8            MR. BUTLER:  That's over.

9            THE COURT:  Okay.

10           MR. BUTLER:  The union, after consultant with DPH

11   Holdings, at least this moment, has withdrawn their motion.

12           THE COURT:  Okay.

13           MR. BUTLER:  Matter number 2, Your Honor, and matter

14   number 4 are related.  Matter number 2 is the motion by the

15   reorganized debtor to file a statement regarding the final

16   extension motion filed at docket number 21509 and matter number

17   4 on the agenda are the adversary proceedings relating to the

18   various avoidance actions filed at various docket numbers.  And

19   those -- both of those matters, by agreement between the

20   parties, has been -- and with the Court, has been adjourned to

21   the October 24th hearing.

22           THE COURT:  Okay.

23           MR. BUTLER:  Your Honor, that leaves us with matter

24   number 3 as the only matter going forward today.  It's a

25   contested matter and it's the motion by Methode Electronics for

Page 7

1    leave to file its amended counterclaim against the reorganized

2    debtors and to which the DPH Holdings has filed an objection.

3            THE COURT:  Right.  And DPH also has an objection to

4    the claim, right, in the --

5            MR. BUTLER:  Yes.  We have an objection --

6            THE COURT:  -- case.

7            MR. BUTLER:  -- to the claim which has been pending

8    previously but the -- the claims objection but this was -- the

9    hearing that's actually before the Court today deals with their

10   motion practice.

11           THE COURT:  Okay.  Thank you.

12           MR. JACOB:  Good morning, Your Honor.

13           THE COURT:  Good morning.

14           MR. JACOB:  Shalom Jacob, Locke Lord Bissell & Liddell

15   for Methode Electronics.  Seated alongside me is Anne Marie

16   Walsh and Zachary Silbersher from Locke Lord and Emil Kleinhaus

17   from Wachtell Lipton.  Before the Court this morning is

18   Methode's motion for leave to file an amended counterclaim in

19   Michigan.  We've been here before, as Your Honor knows.  Mr.

20   Mayer appeared a couple of times for our client.  The legal

21   submissions are lengthy, we're ready to address any issue that

22   the Court wants to hear us about and to try to answer any

23   questions that the Court has.

24           What I did want to do is try to touch briefly on some

25   of the issues that Skadden has raised, Delphi has raised.  I

Page 8

1   think Delphi has narrowed some of the issues and we appreciate

2   that and I just wanted to address a couple of issues briefly

3   and then respond to any questions that the Court would have

4   and, if appropriate, to any issues raised by Delphi.

5          THE COURT:  All right.

6          MR. JACOB:  Method tendered and has since then filed

7   an amended counterclaim with the Court.  I'd like to address

8   first, Delphi's main point which is that we are not in

9   compliance with the stipulation entered by the Court in June of

10  2010.  Briefly stated, that simply is not so.  Delphi claims

11  that we don't comply with the stipulation because our claims

12  are still pre-bar date claims.

13          As we explained in our response, we have two causes of

14  action in the amended complaint.  The first is breach of

15  contract and, under our amended complaint, our claim would be

16  based on a written termination of -- in August of 2009, well

17  after the car date, a written termination of our contract, as

18  well as written misrepresentations after the bar date that

19  Delphi did not resource our product.  And both of those event

20  clearly took place after the bar date and we don't see any

21  issue about that.

22          Our second cause of action is a fraudulent inducement

23  claim.  Basically our claim is that, at the time we negotiated

24  the 2008 contract, we had no idea -- when I say we I mean my

25  client had no idea that they had been sued by Delphi with a

05-44481-rdd    Doc 21678    Filed 10/18/11    Entered 10/24/11 15:36:56    Main Document
DPH Holdings CORPORATION, ET AL.
Pg 9 of 60

Page 9

1    twenty million dollar preference suit.  Had they known about

2    that, they would never have entered into a contract.  That

3    concealment took place from the fact that the preference suit

4    was filed under seal.  That situation continued for quite a

5    while, certainly after both of the bar dates.  And simply

6    because Delphi withheld that information, it is impossible that

7    our claim could have arisen before the bar date.  We didn't

8    know anything about it until way after the bar date.

9            Now, I would point out, we're not asking today and it

10   is not necessary today for the Court to get to the issue of

11   whether the under seal orders were properly procured.  That's

12   not our issue.  Obviously, if they were not properly

13   procured -- and that is a position that we're taking in

14   preference case -- that makes our claim even stronger than it

15   is.  But we're not asking the Court to go there today and we

16   don't think that's necessary for our fraudulent inducement

17   claim.

18           The fact that information was withheld from us while

19   contract negotiations went on and that that concealment went on

20   for months afterwards and that we had no way and did not, in

21   fact, know of the lawsuit as we negotiated this contract, to us

22   says that we have a fraudulent inducement claim that clearly

23   arises after the bar date.  We would note we've cited authority

24   that says that.  I am not aware of authority to the contrary.

25   Certainly, Skadden -- Delphi and Skadden, in their brief, have

05-44481-rdd   Doc 21678   Filed 10/18/11   Entered 10/24/11 15:36:56   Main Document
DPH HOLDINGS CORPORATION, ET AL.
Pg 10 of 60

Page 10

1    not cited any authority for their position that despite our

2    complete ignorance of the facts, due to the fact that Delphi

3    withheld this information, somehow our claim arose while we

4    were completely unaware of the facts.

5        In our view, therefore, we have complied perfectly and

6    to the letter with the requirement stipulation that our claims

7    arose after the bar date and they are set forth pretty clearly

8    and specifically in our amended counterclaim.

9        THE COURT:  All right.  I have two observations on

10   this that I'd like you to address.

11       MR. JACOB:  Okay.

12       THE COURT:  First, the resolution at the June 14th --

13   I'm sorry -- at the May 2010 hearing that was then incorporated

14   into the June 14th, 2010 order.  Didn't address whether the bar

15   date was effective or not or whether there would be relief from

16   the bar date but simply provided that any pre-bar date claims,

17   i.e. any claims arising before the bar date, would not be

18   asserted.  It's clear from Methode's pleadings that Methode

19   knew about the preference suit before the May hearing, before

20   the June 14th order and over the last year and two months.

21       So my first question is why isn't this properly -- or

22   if at all -- to be brought as a motion under Rule 60, as

23   opposed to an argument that Methode is complying with the June

24   14th order because it didn't have notice of this potential

25   claim that it had?

DPH HOLDINGS CORPORATION, ET AL.

1            My second point is, recognizing the context of this

2      motion -- which is to seek to pursue the counterclaim in

3      Michigan, and recognizing that the whole colloquy that led up

4      to the agreement set forth on the record or the understanding

5      set forth on the record in May of 2010, was that that is a

6      relatively easy motion to determine if, in fact, the bar bate

7      issues are taken out of the case -- why is it that I should

8      grant the underlying motion if, notwithstanding the colloquy --

9      the lengthy colloquy -- in May of 2010, the June 14th order and

10     the further clarification in the August 26th order, the bar

11     date issue is now -- if I conclude it is still a live issue --

12     front and center; and that, in addition to that issue, now

13     there is a further issue as to the bona fides of the debtor

14     acting pursuant to Court order or not, in respect of the

15     preferences, all of which pleadings are incorporated now, by

16     your footnote, into this action?

17            It just seems to me that, assuming for the moment that

18     I agreed with you that the stipulation isn't binding -- which I

19     have a very hard time doing -- if I did that, I would clearly

20     keep the case, because the whole issue here is the bar date and

21     interpretation of my orders.  Not just the bar date order but,

22     now, the June 14th order and the orders under Rule 4(m).  It's

23     all bankruptcy now.  I -- so, if you could address those two

24     questions.

25            MR. JACOB:  Okay.  I think there were several points

DPH HOLDINGS CORPORATION, ET AL.

Page 12

1    that we could be made.  The first one is that the notion that

2    we were fully apprised, as Delphi claims, on March 19th or

3    whenever we received a summons, is wrong and impractical and

4    doesn't make any sense.  After two and a half years of people

5    moving on, lawyers moving on --

6              THE COURT:  That may be the case, but none of that is

7    dealt with in these motion papers and that's why I said why

8    shouldn't this be a motion under Rule 60 when I can actually

9    consider that on a proper record?

10             MR. JACOB:  We have made a Rule 60 motion in the

11   preference cases.

12             THE COURT:  That's not this.

13             MR. JACOB:  I believe --

14             THE COURT:  That's the preference cases.

15             MR. JACOB:  I believe there is a footnote in our brief

16   that we incorporated that motion --

17             THE COURT:  Do you really want to do that?  Do you

18   really think that there's enough here for me to rule on a Rule

19   60 motion?  You have the burden there.  I'm prepared to do

20   that.  I don't think you set forth your case under Rule 60.

21             MR. JACOB:  No, but Judge, I don't --

22             THE COURT:  I mean, you have two of the best law firms

23   in the country representing you.  And for me to believe that

24   Mr. Mayer and Ms. Walsh didn't know about a nineteen million

25   dollar preference claim that went to the heart of this

DPH HOLDINGS CORPORATION, ET AL.

Page 13

1   contract, two months -- and then three months, given the June

2   14th order, is kind of hard to believe and requires something,

3   I think, more than a footnote incorporating preference

4   pleadings.

5          MR. JACOB:  But Judge, that's not what I'm saying.

6   I'm not saying we would not know about the preference lawsuit.

7   I'm saying that after the world changing for two and a half

8   years, it took us more than two months to understand the

9   ramifications of that lawsuit and that we should have been

10  entitled to a reasonable amount of time.  I'm also saying

11  that --

12         THE COURT:  I'm sorry; reasonable amount of time to do

13  what?

14         MR. JACOB:  To assess the ramifications of two and a

15  half years of not knowing of the lawsuit and how it affected

16  this case.

17         THE COURT:  But -- look, there's no affidavit here,

18  but I accept the fact that a light bulb may have gone off in

19  someone's head who dealt with this supply contract who said my

20  God, they're suing us for nineteen million dollars; we would

21  never have entered into a three-year contract with them if we

22  knew they were being sued with nineteen million dollars.  I've

23  accepted that fact for purposes of this pleading.

24         What I don't understand is why that light bulb didn't

25  go off in the heads of that same person and counsel in

05-44481-rdd   Doc 21678   Filed 10/18/11   Entered 10/24/11 15:36:56   Main Document
DPH HOLDINGS CORPORATION, ET AL.
Pg 14 of 60

Page 14

1    preparing for the May hearing, at the May hearing or on June

2    14th.  Or before then when the order was submitted.  And

3    there's nothing here to support the contention that it didn't

4    go off or that it wasn't reasonably known to them at the time,

5    which is what you would need to show under a Rule 60 motion.

6             MR. JACOB:  But Judge, I don't think we need to go to

7    a Rule 60 motion.  I think we were entitled to a reasonable

8    amount of time after two and a half years to deal with our

9    clients, to pull records out of storage, to make the

10   connection.  We had a separate law firm.  Mr. Mayer had nothing

11   to do with the preference action.

12            THE COURT:  I don't accept that.  I'm sorry.  I don't

13   accept that.  So I think you have a choice.  If you want me to

14   treat this as a Rule 60 motion today, which I certainly didn't

15   view it as, you lose.  If you don't, you can make the motion

16   with a proper record.

17            MR. JACOB:  Given that choice, Your Honor -- but,

18   after everything is said and done --

19            THE COURT:  Right.

20            MR. JACOB:  -- we did comply with the stipulation.

21            THE COURT:  And how did you do that?

22            MR. JACOB:  Because our claims arise after the bar

23   date.

24            THE COURT:  How -- how could that possibly be when you

25   assert a claim based in 2008 in the amended complaint?

DPH HOLDINGS CORPORATION, ET AL.

Page 15

1           MR. JACOB:  Because we had no idea about the lawsuit

2     in 2008.  We had no idea about the lawsuit in 2009.

3           THE COURT:  But it doesn't -- that's not what the --

4     that's not what the transcript says.  It says anything pre-bar

5     date is out.

6           MR. JACOB:  It says claims -- with all due respect,

7     Your Honor, the stipulation --

8           THE COURT:  Should we go through it, with all due

9     respect, sir?   You have tested my patience in these papers,

10    all right?  And one reason I would keep this case,

11    notwithstanding there being a clear order, is that I have

12    serious doubts, at this point, when you're back here for the

13    third time making the same types of claims and given the

14    misstatements of the law in addition to that in your papers,

15    that you wouldn't go ahead in the Michigan Court and try to do

16    the same thing all over again.

17           Now, I don't think that is necessarily or should be a

18    valid reason to keep a matter when the record has been made

19    clear, i.e. that you don't trust counsel to comply with an

20    order.  But you're getting very close to that point.  So let's

21    go through the transcript and you show me where it wasn't

22    crystal clear.

23           MR. JACOB:  Judge, I'm just looking at the

24    stipulation.

25           THE COURT:  No.  The transcript of the hearing is

05-44481-rdd    Doc 21678    Filed 10/18/11    Entered 10/24/11 15:36:56    Main Document
DPH HOLDINGS CORPORATION, ET AL.
Pg 16 of 60

Page 16

 1    incorporated and so ordered by the Court on page 4.  That is

 2    the decretal portion of the order.  "The disposition of the

 3    motion and the reorganized debtors' timeliness objection with

 4    respect to the contract claim is as set forth in the transcript

 5    of the hearing which is hereby so ordered by the Court."

 6         So let's go to the transcript.  I count at least four

 7    instances where this was made crystal clear and your co-counsel

 8    agreed, in fact, thanked me for making it crystal clear.  In

 9    addition to that, we had another hearing, where apparently it

10    had not been crystal clear to him because there was another

11    motion made, and if it wasn't crystal clear before, it was

12    etched in stone after the August hearing.  So let's go through

13    it.

14         MR. JACOB:  Judge, are we talking about both causes of

15    action or only the second one?

16         THE COURT:  We're talking about pre-bar date versus

17    post-bar date.

18         MR. JACOB:  Because we only talk about the bar date in

19    the second cause of action.

20         THE COURT:  That's what I'm focusing on.

21         MR. JACOB:  Okay.

22         THE COURT:  I'm focusing on that.  We'll turn to the

23    other one but we're focusing on the bar date.  The bar date is

24    the issue, as was clear from the very start of my addressing

25    this matter at the May hearing, would determine, in my mind,

05-44481-rdd   Doc 21678   Filed 10/18/11   Entered 10/24/11 15:36:56   Main Document
DPH HOLDINGS CORPORATION, ET AL.
Pg 17 of 60

Page 17

1    most likely, whether this case stayed here or went back to

2    Michigan.  Because the bar date is my order, it's a core

3    bankruptcy issue and it made perfect sense for me to deal with

4    it.  On the other hand, if, as was made clear, as I said at

5    least four times during this hearing, the bar date is out

6    because we're not dealing -- with whether something was pre- or

7    post-bar date, then in -- as I said at the end of the hearing,

8    it's most likely it would go back to Michigan.

9              I did want to see -- which was a good thing -- what

10   you all came up with in your amended complaint before I

11   actually let it go out; but if, in fact, it was clear that you

12   were dealing with just pre-bar date -- I'm sorry, just post-bar

13   date matters, I made it clear that it was going to go to

14   Michigan.  That's not where we are.  Again.  Over a year later.

15   And I don't understand it.  The only basis for it, in my mind,

16   is if you can satisfy me under Rule 60, and you haven't so far.

17             I mean it starts on page 8.

18             "There's no untimeliness."

19             "Yes," Mr. Mayer says.

20             "Because you're say -- no untimeliness issue because

21   you're saying that the claim here is all based upon a wrong by

22   Delphi that occurred after the bar date.

23             "MR. MAYER:  That, again, is our view."

24             And then Mr. Meisler comes in on page 9 and says well,

25   Judge, you know it -- it may -- it -- we think it's all pre-bar

DPH HOLDINGS CORPORATION, ET AL.

Page 18

```
 1   date.  And I'm not satisfied with that yet because there's a

 2   possibility that there's post-bar date activity that gives

 3   rise -- some additional wrongdoing that gives rise to the basis

 4   for a claim at that point.

 5            And then on page 10, Mr. Meisler says "Your Honor, for

 6   clarification, that means that any conduct pre-June 1st is time

 7   barred." Any conduct."

 8            "COURT:  Right."

 9            Then Mr. Mayer says "I'm not quite sure what that

10   means."

11            And then I say, on page 11 "You can bring in evidence

12   to support your post-bar date breach claim, but you can't do it

13   if it's independently the basis of a claim."  "Independently

14   the basis of a claim."

15            And then Mr. Mayer says "Well, that's a little bit

16   slippery."  11.

17            And I said, "I don't think it is.  I think it has to

18   be clear."

19            And then it says that it's clear that you cannot

20   assert a claim for anticipatory breach and breach and he said

21   no, we're not doing that.  And then this is the key thing.  Mr.

22   Meisler says, again, "To me it's crystal clear.  So for

23   purposes of facilitating the dialogue between me and Mr. Mayer

24   in particular, I just want to be -- I want to at least be clear

25   on my understanding which is as I had understood their papers
```

DPH HOLDINGS CORPORATION, ET AL.

Page 19

1   to say, because of the bad faith that took place pre-June 1st,

2   the clear and unambiguous language of paragraph 11 of the terms

3   and conditions, which is the termination for convenience

4   clause, is not enforceable or is rendered null and void.  To be

5   clear, that argument, the bad faith argument, to me, I actually

6   thought that was the claim they were asserting that occurred,

7   if you will, post-June 1.

8           "THE COURT:  Delphi's alleged bad faith before the bar

9   date would not be a basis for this claim.

10          "MR. MEISLER:  Terrific.  Thank you, Your Honor.

11          "THE COURT:  It would not be a separate basis for the

12  claim.  That's, I think, different than saying that you can

13  look at Delphi's conduct, generally, to see whether there was a

14  breach post-bar date.

15          "MR. MAYER:  I don't disagree with that.

16          "THE COURT:  You don't have a bad faith claim based

17  upon their whatever, you know, breach of duty of good faith and

18  fair dealing, for example, based on pre-bar date activity.

19          "MR. MAYER:  Yes.  I think that is right.

20          "Okay.

21          "Thank you, Your Honor," says Mr. Meisler.

22          "MR. MAYER:  That's right."

23          That's the third time this has been dealt with.  Then

24  Ms. Walsh stands up and says "Certainly Delphi's" -- on page

25  14 -- "Certainly Delphi's bad faith during contract

1    negotiations is the basis for our counterclaim.

2         "THE COURT:  No, it isn't.  It's not.  That's just

3    what we've gone through."

4         "MS. WALSH:  I know."

5         "THE COURT:  It may be relevant to whether there was a

6    post-bar date breach, but it's not --

7         "MS. WALSH:  Okay.

8         "-- the basis that gives rise to a claim.

9         "MS. WALSH:  We are not bringing a claim for Delphi's

10   bad faith, just so I can clarify that.

11        "Okay."

12        Of course, that's what is in the complaint, as

13   modified, on the bar date.  So again, I say at the bottom "Some

14   sort of pre-bar date fact, as long as that pre-bar date fact

15   does not, in and of itself, give rise to a separate claim.

16        "MS. WALSH:  Yes.

17        "Okay.  i.e., the only claim you're asserting is a

18   post-bar date breach.

19        "MS. WALSH:  Yes.

20        "THE COURT:  Okay.  All right.

21        "MS. WALSH:  Thank you.

22        "MR. MAYER:  Good.  We appreciate the clarification."

23        And everyone agrees.  And then, again, at page 37:

24        "I think, again, as I read their objection to your

25   motion, a significant part of it was bound up in the notion

1   that they thought you were trying to sidestep the bar date

2   issue by arguing that this litigation's fine to go ahead in

3   Michigan and that I would -- I would -- I'm uniquely situated

4   to interpret my own orders on that.  But I think we dealt with

5   that issue.

6        "MR. MAYER:  Yes, your orders are essentially out of

7   the case, I think.

8        "THE COURT:  Yeah.

9        "MR. MAYER:  So to speak.

10       "THE COURT:  Okay.

11       "That's my understanding.

12       "THE COURT:  Well, because they control.

13       "Right.

14       "Right.

15       "In other words, it's not a dispute that we have

16   to" -- that's Mr. Mayer saying and I say "right" and then he

17   says -- finishes his thought "-- bring to you on that subject.

18       "Okay."

19       I agree.  And then I say "Well, but, again, you can

20   come back to me.  If someone's violating my order and the

21   stipulation that was set forth out on the record today," --

22   which we said two sentences before then -- "then it's easy

23   enough to remedy, I think."

24       Well, Mr. Meisler was right.  It wasn't that easy to

25   remedy because we're back here again, over a year later.  It

Page 22

```
 1    was agreed.  Everything before the bar date is out.  And it's

 2    possible to me, it's conceivable to me, that in May of 2010 and

 3    before I entered the order in July of 2010, and certainly over

 4    the last year and a month, it only came to the attention of the

 5    people handling this that they had this other issue.  But I

 6    think it takes more than it just being conceivable to me to

 7    grant you Rule 60 relief.

 8            And that's particularly the case where we clarified

 9    all this again in August of 2010.  Which I guess it still

10    wasn't -- the light bulb still hadn't gone off in Methode's

11    mind about the preference lawsuit?  When was the answer due on

12    the preference lawsuit?

13            MR. JACOB:  Sometime in May or June.

14            THE COURT:  Okay.

15            MR. JACOB:  But we did not understand there was an

16    issue.  We answered and then we joined the second wave and then

17    become part of the first wave.

18            THE COURT:  No.  I'm talking about tying the lawsuit

19    to the contract.  And saying that we have a bad faith claim

20    that arose in 2008 when we negotiated the contract or before

21    then.  I -- it just -- you know --

22            MR. JACOB:  I don't think we filed an answer.

23            THE COURT:  Didn't think about it even though it was

24    absolutely essential to the negotiation of the contract?  As I

25    say, it's conceivable.  It's hard to believe but it's
```

1    conceivable.  But I thought that Mr. Mayer was pushing it in

2    August to make this point but I just don't -- because I thought

3    I was pretty clear in May but it -- you know, there was no

4    doubt in August that if the pre-bar date conduct is the basis

5    for the claim, as opposed to adding a context to a post-bar

6    date breach, it's out.  I don't -- it's just -- you know, it's

7    out.

8            And then to make these other arguments that the bar

9    date shouldn't even apply -- a, I think it's irrelevant because

10   there's an order that controls; it's a final order.  And b, I

11   dealt with most of them already on the patent claim.  So, you

12   know, again, are you going to be making those same arguments to

13   the Court in Michigan?  Are you going to be saying that we're

14   going to litigate the whole issue of the 4(m) in Michigan?

15           MR. JACOB:  No, Judge.  We're not going to do that.

16           THE COURT:  Well, but -- but it's incorporated into

17   the pleadings.

18           MR. JACOB:  But Judge, I said that we would not -- we

19   were not trying to raise that issue today.

20           THE COURT:  I understand but if you say that they

21   wrongfully withheld it from you, their answer's going to be

22   well, we had a court order.

23           MR. JACOB:  We -- I did not even use that word because

24   we don't even need to get there.  The fact that they withheld,

25   even if they had a court order, means we did not have the

Page 24

1    information.  And all I'm saying, Judge, is that that means we

2    didn't know anything when we did the contract and, as a matter

3    of law, we cited some authority that says our claims arose when

4    we learned of it.

5            THE COURT:  Well, all right.  And on that, I actually

6    did discuss that issue with Mr. Mayer in August and cited the

7    authority that I assume the other side would cite, all of which

8    is a wonderful bankruptcy law issue which has been dealt with

9    at the Circuit court level, which is how much do you need to

10   know about a claim before publication notice is enough. I cited

11   Chemtron which has been followed by the courts in this

12   district.

13           So those factual issues -- all that go -- all of which

14   go to the bar date -- and -- not the underlying merits but the

15   bar date, should be here.  I mean that -- this is -- it's a bar

16   date.  It bars future litigation.  So if we're going to have

17   fact finding as to what Methode knew or didn't know about the

18   preference litigation, it should be here.  That's not a

19   contract suit.  It's related to the bar date.  But I don't see

20   how you even get there given the -- the order -- the July

21   order.  It's -- you know?  I really think you're on a Rule 60

22   motion at this point.

23           MR. JACOB:  Well, we will make a Rule 60 motion --

24           THE COURT:  Okay.

25           MR. JACOB:  -- but our first cause of action had

05-44481-rdd    Doc 21678    Filed 10/18/11    Entered 10/24/11 15:36:56    Main Document
DPH HOLDINGS CORPORATION, ET AL.
Pg 25 of 60

Page 25

1    nothing to do with the bar date.

2            THE COURT:  Well, let's focus on that.  If we look at

3    the amended counterclaim and just focus on the Count 1,

4    paragraph 28 says "In bad faith, Delphi sent Methode a letter

5    setting forth its alleged reasons for Delphi's termination,

6    none of which had any legitimacy."  It's under the operative

7    terms of the contract.  How do you get to -- again, this is

8    the -- this was the issue that I posed with Mr. Mayer in

9    August.

10            Basically, you're saying that the contract was

11    illegitimately terminated.

12            MR. JACOB:  Correct.

13            THE COURT:  What is -- what is the basis -- what is

14    the conduct for illegitimately terminating it?

15            MR. JACOB:  I'm going to ask Ms. Walsh to address that

16    issue.

17            THE COURT:  Okay.  I mean, the complaint doesn't say

18    what it is and the motion doesn't say what it is.  So, again,

19    if it's pre -- if -- look, Delphi says that they could

20    terminate at will.  Originally, I think the complaint said that

21    it was a bad faith termination or an unlawful termination.  Now

22    it says it's an "illegitimate" termination.  If the basis for

23    any of those things is pre-bar date conduct, then I -- it's no

24    different than where we were in August.

25            MR. JACOB:  Your Honor --

05-44481-rdd   Doc 21678   Filed 10/18/11   Entered 10/24/11 15:36:56   Main Document
DPH HOLDINGS CORPORATION, ET AL.
Pg 26 of 60

Page 26

1          MS. WALSH:  Sir, can I address --

2          MR. JACOB:  -- I don't think that's true.  I'm going

3     to have Ms. Walsh address it but our view is that the term in

4     the contract superseded the --

5          THE COURT:  That's fine.  Paragraph 26 -- I don't have

6     any problem with that.  I have no problem with paragraph 26

7     which says that the three-year term negotiated by the parties

8     overrides any general boilerplate terms relating to duration of

9     the contract.  That's a straight contract issue.  You can argue

10    to a court, including the Michigan court, that the contract

11    interpretation law is such that the three-year term governs and

12    that something else has to happen, notwithstanding the

13    termination at will language.

14         But that's not -- I mean, again, paragraph 28 says

15    Delphi lacked good faith, so that's a separate basis.  And

16    again, we -- you know, we dealt with this with the first motion

17    where I said you're going to have to make it clear to me that

18    the basis for that lack of good faith, the facts giving rise to

19    the lack of good faith is a post-bar date thing.  And I --

20    paragraph 28, I don't think, does that.  Because again, it says

21    none of these things had any legitimacy.  It relates right back

22    to misconduct, I guess, right?

23         MR. JACOB:  Yes.

24         THE COURT:  "Illegitimate" conduct?

25         MR. JACOB:  Yes but this termination occurred well

Page 27

1    after the bar date.

2            THE COURT:  No, we've been through that.  We have been

3    through that.  And I'm surprised that you're making that

4    argument again.

5            MR. JACOB:  But I'm going to ask Ms. Walsh to address

6    the --

7            THE COURT:  Okay.

8            MR. JACOB:  -- specifics --

9            THE COURT:  All right.

10            MR. JACOB:  -- of that issue.

11            THE COURT:  Okay.

12            MS. WALSH:  Would you like me to go to the podium?

13            THE COURT:  Wherever you're -- that's fine.  Where

14    you're standing is fine.

15            MS. WALSH:  Thank you, Your Honor.  Anne Walsh on

16    behalf of Methode Electronics.  My understanding from the

17    stipulation that was entered as a result of the May hearing was

18    that we were instructed to allege post-bar date conduct and I

19    think we've done that in numerous ways.  The new counterclaim,

20    the amended counterclaim, is extremely different from the

21    original counterclaim tendered to the Court in the summer of

22    2010.  We tendered it to Skadden, I think, in May of this year.

23            First of all, with respect to the -- first of all, the

24    sentinel, critical fact in this case is the fact that the

25    contract was terminated post-bar date.  That gives rise to the

Page 28

1    cause of action, plain and simple, under contract law.  The

2    termination is the breach of contract.  That is our cause of

3    action.  That was on August 26th of '09.

4            THE COURT:  All right.  I have already ruled on that.

5            MS. WALSH:  Your Honor --

6            THE COURT:  I disagree with that.

7            MS. WALSH:  -- I think you did rule on it.

8            THE COURT:  It's not a breach.  Termination is not a

9    breach unless it's wrongful.  If the basis for the wrongful

10   conduct is pre-bar date, that's what governs.  Simple

11   termination isn't wrongful.  There has to be a basis for it

12   being wrongful as a breach.

13           MS. WALSH:  Yes --

14           THE COURT:  And I thought that was clear in May.  I

15   certainly made it clear in August.  So let's go to the next

16   point.

17           MS. WALSH:  Your Honor, I think you did make it clear

18   and the portion from the transcript which is on my page 28, you

19   said -- you were referring to that that conduct may be relevant

20   to whether there's a breach but it doesn't give rise to the

21   cause of action.  In August of 2009 is when we received the

22   letter of termination.  There were three bases cited for the

23   alleged termination of the contract which is the reference in

24   that paragraph in the complaint.

25           One is they cited the termination for convenience

Page 29

1    clause which we've discussed here.  The second was they claimed

2    that Methode had quality problems with respect to the

3    production of parts.  The third basis for termination was that

4    there was an alleged clause in the contract, which is not

5    there, that we had to meet all competitors' prices and we did

6    not.  We received that letter in August of 2009.  We couldn't

7    possibly have been charged with knowledge of that termination

8    prior to that date.  That date is post-bar date.

9            When we were here before Your Honor, you made it very

10   clear to us that we had to allege post-bar date conduct.  We

11   have done that.

12           THE COURT:  None of that is in this complaint.

13           MS. WALSH:  Your Honor, I think it is.

14           THE COURT:  Well, where?

15           MS. WALSH:  You instructed us --

16           THE COURT:  Where?

17           MS. WALSH:  -- that they have a right --

18           THE COURT:  I instructed you to be specific because of

19   this concern.

20           MS. WALSH:  Right.

21           THE COURT:  And instead said it's actually gotten less

22   specific.

23           MS. WALSH:  Your Honor, you instructed us that what

24   about if they have a right to terminate the contract?  First of

25   all, the right to terminate the contract is a defense to the

DPH HOLDINGS CORPORATION, ET AL.

Page 30

1    breach of contract case.  It is not an element of our cause of

2    action.  And therefore, it's part of their defense.  And we

3    should be able to put on evidence regarding why that isn't so.

4    But, more importantly, Michigan has case law that provides, as

5    we've alleged in our paragraph, that case came down in May

6    of -- sometime in the summer of 2010, I believe, <u>Summit</u>

7    <u>Polymers</u>, that a specific term of a contract, i.e. a three year

8    supply contract --

9                THE COURT:  I don't have a problem with that

10   provision.

11               MS. WALSH:  Okay.

12               THE COURT:  I have a problem --

13               MS. WALSH:  That's what we've alleged.

14               THE COURT:  -- with the general allegation in

15   paragraph 28.  I -- and -- if, in fact, it had been made

16   specifically or described specifically or stipulated to that

17   what you are saying here is that their specific reasons for

18   termination were pretextual, I guess I would understand the

19   argument.  But all it says is "none of which had any

20   legitimacy."  I don't know what that means.  And that's like

21   saying they're wrongful.  But --

22               MS. WALSH:  Your Honor, I guess what I'm getting

23   confused about and, frankly, I don't know that I could even

24   explain it to my client which is this -- and I know  we keep

25   coming back to this but the termination was post-bar date.  And

Page 31

1  I know we've talked about this extensively and I really do

2  appreciate the Court's insight but the termination was post-bar

3  date -- I'm sorry -- August of 2009.  It's like charging us

4  with knowledge of a fact that hasn't happened yet.  And we,

5  therefore, have to file a claim.  While meanwhile, Delphi sued

6  us in Michigan, went on with discovery for fourteen months --

7            THE COURT:  Look --

8            MS. WALSH:  -- cost us million of dollars --

9            THE COURT:  -- your client may not understand it, all

10  right?  But it is clear from the arguments.  And certainly your

11  co-counsel understood it and I thought you understood it when

12  you agreed in May.

13            MS. WALSH:  I did -- I did understand it, Your Honor

14  but --

15            THE COURT:  And I just -- look -- this is -- all

16  right.  This is bankruptcy 101, all right?

17            MS. WALSH:  Right.

18            THE COURT:  You filed a claim for anticipatory breach

19  in November.

20            MS. WALSH:  Um-hum.

21            THE COURT:  You knew they were doing something bad

22  enough to file a claim in November, all right?

23            MS. WALSH:  January, but yes.

24            THE COURT:  Okay.

25            MS. WALSH:  But Your Honor --

1           THE COURT:  No, no.  Let me finish.

2           MS. WALSH:  Yes, Your Honor.

3           THE COURT:  Because you've contested that what's going

4    on here is illogical.  All right?  And I'm going to explain to

5    you for the last time that it is not --

6           MS. WALSH:  Yes, Your Honor.

7           THE COURT:  -- and that it, in fact, is supported by

8    an agreement of you and your client that's memorialized in an

9    order that was never appealed from.

10          MS. WALSH:  Yes, Your Honor.

11          THE COURT:  A termination is not a breach.  Something

12   wrongful has to happen to make it a breach.  If that wrongful

13   thing happened before the bar date, unless you have some excuse

14   from the bar date, it's out.  It's not a claim.  It is barred.

15   Claims, including contingent and unliquidated claims, are

16   covered by the bar date.  Even the Third Circuit has reversed

17   the one contrary rule that existed, in _Frenville_, and that was

18   never the rule in the Second Circuit.

19          So, if the basis for the wrongful conduct occurred

20   before the bar date, when there was not a claim filed, it's

21   out.

22          MS. WALSH:  Okay.

23          THE COURT:  That's -- that's how it works.

24          MS. WALSH:  Okay.

25          THE COURT:  And in August, Mr. Mayer understood it.

05-44481-rdd   Doc 21678   Filed 10/18/11   Entered 10/24/11 15:36:56   Main Document
DPH HOLDINGS CORPORATION, ET AL.
Pg 33 of 60

Page 33

1    And frankly, he should have understood it from May.

2            MS. WALSH:  Okay.

3            THE COURT:  Because we went over it four times to make

4    it clear.  So -- as I said, I think the complaint here needs to

5    be more specific.  Not because of Rule 8 reasons but because of

6    bar date reasons.  My concern about that -- I think the

7    complaint -- and because of compliance with the July order and

8    the May stipulation, I think the complaint here needs to be

9    more specific as to what actually rendered the termination

10   unlawful.

11           And it may be that what you are relying here for

12   paragraph 28 is -- falls into that category but, frankly, it

13   just seems to me that you've substituted the word "legitimacy"

14   for "lawfulness."  It's the same concept.  If something is

15   illegitimate and it occurred pre-bar date, it's out.

16           MS. WALSH:  Okay.  Your Honor, could I --

17           THE COURT:  But if -- if there's something -- and

18   again, I told you all it needed to be specific here so I could

19   make sure you weren't going around the prior orders and --

20           MS. WALSH:  Yes.

21           THE COURT:  So that's my problem with 28.  29 -- is

22   there an issue of the debtor's with 29 here about saying

23   that --

24           MR. BUTLER:  Yes, Your Honor.  Because it deals

25   with -- I mean, the problem with Count 1 -- virtually every

DPH HOLDINGS CORPORATION, ET AL.

Page 34

1    paragraph of Count 1 deals with pre-bar date conduct and for

2    this claim preclusion position that DPH Holdings is asserting

3    today, Your Honor, the claim preclusion, as we sit in this

4    courtroom today, is based on the orders of the Court in the

5    stipulation.

6            THE COURT:  No, I understand that.

7            MR. BUTLER:  Not the bar date.

8            THE COURT:  But I 'm just looking -- I'm trying to

9    look very specifically at paragraph --

10           MR. BUTLER:  Well, paragraph 29 deals with discovery

11   requests that were delivered to them pre-bar date.

12           THE COURT:  Okay.  Well, that was my question.

13           MS. WALSH:  No, Your Honor.  They are not pre-bar

14   date.

15           MR. BUTLER:  Well, I --

16           MS. WALSH:  Sorry.

17           THE COURT:  Well, when was the --

18           MR. BUTLER:  Delphi is aware that the bar --

19           MS. WALSH:  That's what I was going to point out

20   about --

21           THE COURT:  When was the discovery?

22           MS. WALSH:  July of '09.  They wrote a --

23           THE COURT:  Was there any --

24           MS. WALSH:  -- in their --

25           THE COURT:  Was there any discovery before then?

05-44481-rdd   Doc 21678   Filed 10/18/11   Entered 10/24/11 15:36:56   Main Document
DPH HOLDINGS CORPORATION, ET AL.
Pg 35 of 60

Page 35

1            MS. WALSH:  They -- they -- they, in July of '09,

2    finally -- sixty days late, answered our request for admission.

3            MR. BUTLER:  I'm sorry.  I'm only trying to read what

4    the complaint -- the count says.

5            THE COURT:  Right.

6            MR. BUTLER:  The count says, the last sentence,

7    "Despite the fact that Delphi was well aware that the bar date

8    for administrative claims in the bankruptcy was two days after

9    Delphi served its vague discovery responses."  So according to

10   what --

11           MS. WALSH:  The discovery responses were in the summer

12   of '09.  That is post-bar date.  On July 13th, 2009, Delphi

13   answered requests for admissions in which they denied they were

14   intending to resource us.  So -- and they denied it in other

15   contexts as well in the patent suit.  So we may have had an

16   anticipatory breach complaint on file since January of '09 but

17   Delphi told us that they weren't going to breach.

18           THE COURT:  But can I --

19           MS. WALSH:  So why aren't we entitled to rely on that?

20           THE COURT:  But I guess --

21           MR. BUTLER:  Your Honor, I just want to be --

22           MS. WALSH:  They're officers of the court.

23           THE COURT:  Wait, wait.

24           MR. BUTLER:  I want the record to -- I want the record

25   to be clear about something.  To refresh Ms. Walsh's

05-44481-rdd    Doc 21678    Filed 10/18/11    Entered 10/24/11 15:36:56    Main Document
DPH HOLDINGS CORPORATION, ET AL.
Pg 36 of 60

Page 36

1    recollection, there were responses served and things served on

2    Methode in May of 2009.  And I'm reading the words of their

3    amended complaint.

4            THE COURT:  Right.

5            MR. BUTLER:  The words of the amended complaint says

6    "Delphi's written responses were, for the most part,

7    unresponsive and replete with objections --" and I'm not going

8    to the merits; I'm just reading the words.

9            THE COURT:  Right.

10           MR. BUTLER:  "-- despite the fact that Delphi was well

11   aware that the bar date for administrative claims in this

12   bankruptcy case was two days after Delphi served its vague

13   discovery responses."

14           So the allegation in this complaint, that's in

15   paragraph 29, says, on its face, that the conduct occurred

16   before the bar date.

17           MS. WALSH:  Your Honor, those --

18           MR. BUTLER:  I'm only reading the words; I'm not

19   trying to go --

20           MS. WALSH:  No.

21           MR. BUTLER:  -- any farther than the words that they

22   have put in the complaint because I can go through each of

23   these paragraphs, Your Honor, and, in fact -- but you asked me

24   about paragraph 29 --

25           THE COURT:  Right.

Page 37

1          MR. BUTLER:  -- when I had the opportunity --

2          THE COURT:  I'm going to go through the --

3          MR. BUTLER:  -- I want to address to the others.

4          THE COURT:  No, I want to go through the other ones

5    because we --

6          MR. BUTLER:  But paragraph 29, on its face -- now, she

7    may mean something else --

8          MS. WALSH:  No, I don't actually but I want him to

9    read the next paragraph.

10         MR. BUTLER:  I want to read --

11         THE COURT:  Well, but on the --

12         MS. WALSH:  They didn't answer the discovery, Your

13   Honor, in that time period.  They didn't say whether they were

14   or not.

15         THE COURT:  But, you know, I guess --

16         MS. WALSH:  It's in July --

17         THE COURT:  I guess the issue I have on this is I

18   don't -- there's no date here.  There's no date here except for

19   the date at the end of that -- that Mr. Butler's referring to.

20   I don't know whether this is pre --

21         MS. WALSH:  Your Honor, in the next paragraph.

22         THE COURT:  -- or post --

23         MS. WALSH:  And they answered --

24         THE COURT:  Okay.  Let -- but -- all right.  I'm doing

25   them paragraph by -- so I have a problem with paragraph 29.  I

DPH HOLDINGS CORPORATION, ET AL.

Page 38

1    really can't tell whether it's pre- or post-bar date.  I really

2    don't know.  I also am really not sure how this is bad faith in

3    termination of the contract.  How is it bad faith?  Is it

4    that --

5              MS. WALSH:  It's not bad -- it's -- it's -- in the

6    July of 2009, in an answer to a request to admit --

7              THE COURT:  Right.

8              MS. WALSH:  -- that was very direct and very point

9    blank --

10             THE COURT:  Right.

11             MS. WALSH:  -- they said that they denied intending to

12   resource us or insource us.  So in the summer of '09, two

13   months bef -- a month and a half before they, in fact,

14   terminated us, they were telling us they weren't going to.

15             THE COURT:  Okay.

16             MS. WALSH:  That's significant for two reasons.

17             THE COURT:  No, no, I -- okay.

18             MR. BUTLER:  Your Honor, I --

19             THE COURT:  But that -- I'm really focusing on the

20   second sentence.  I understand the first sentence.  You're

21   saying that Delphi told Methode that it was not re-sourcing,

22   right?

23             MS. WALSH:  Yes.

24             THE COURT:  That's what you're saying in the first

25   sentence?  Okay.  There's no date there on that one.

1          MS. WALSH:  Are you on paragraph 29 --

2          THE COURT:  Yes.

3          MS. WALSH:  -- or 30?

4          THE COURT:  29.  There's no date on paragraph 29.

5    That's my problem with 29.  With the first sentence of 29.  The

6    second sentence of 29, I don't understand how that is relevant

7    other than just arguing that they haven't complied with

8    discovery and raising issues about the bar date.  I don't

9    understand what that sentence does anyway as far as the --

10   other than trying to bring in bar date issues.

11          Look, this may seem odd to you because, normally,

12   someone wouldn't do this with a complaint.  There's a -- you

13   know, notwithstanding Twombly and Iqbal, there's a lot of room

14   people can have in a complaint.  But again, this is in a very

15   specific context where --

16          MS. WALSH:  Right.

17          THE COURT:  -- I want to make sure that, if I'm

18   letting this go out back, to Michigan, it's just dealing with

19   post-bar date issues.

20          MS. WALSH:  I understand.

21          THE COURT:  And I just --

22          MS. WALSH:  And I think --

23          THE COURT:  -- don't have any confidence in that with

24   regard to anything in paragraph 29.

25          MS. WALSH:  But I think you could be comfortable with

05-44481-rdd    Doc 21678    Filed 10/18/11    Entered 10/24/11 15:36:56    Main Document
DPH HOLDINGS CORPORATION, ET AL.
Pg 40 of 60

Page 40

1     it, Your Honor, because we've alleged that they don't have the

2     right to terminate the contract because of the paragraph

3     relating to the specific override --

4             THE COURT:  If you limit it to 26, that's fine.  I

5     don't have any problem with limiting it to 26.

6             MS. WALSH:  Okay.  And so --

7             THE COURT:  I told you that.  But this is a whole

8     other set of things, I think.  Anyway --

9             MS. WALSH:  The paragraphs relating to the discovery,

10    Your Honor, was really addressing it to you.  Those paragraphs

11    were really addressing it to you.

12            THE COURT:  Well --

13            MS. WALSH:  Would I ordinarily put that in a

14    complaint?  Maybe not.  But you had asked us to state post-bar

15    date facts.

16            THE COURT:  But only as they were -- only as they

17    relate to the claim.  I don't see this as a --

18            MS. WALSH:  Because in the summer of 2009, they're

19    telling us they're not going to breach.

20            THE COURT:  I'm not --

21            MS. WALSH:  So we relied on that.

22            THE COURT:  Well, it doesn't say that.  It doesn't say

23    in the summer of 2009 -- it doesn't say post-bar date they told

24    us we weren't going to breach.  It just doesn't say that.

25            MS. WALSH:  The requests to admit were served on July

05-44481-rdd   Doc 21678   Filed 10/18/11   Entered 10/24/11 15:36:56   Main Document
DPH HOLDINGS CORPORATION, ET AL.
Pg 41 of 60

Page 41

1   13th --

2          THE COURT:  But it doesn't say that.  Paragraph 29

3   does not say that.  And I asked Mr. Butler has there been

4   discovery in the case before the bar date and he says yes,

5   there has been.  So I -- I'm just not comfortable with this

6   paragraph here.

7          MR. BUTLER:  And I'm only reading the words that are

8   pled.

9          THE COURT:  Right.

10         MR. BUTLER:  Because I'm not litigating the underlying

11  case.

12         THE COURT:  All right.  So, can we go to page 30?  I

13  mean paragraph 30, excuse me.  So on July 13, Delphi denied

14  that it intended to insource or re-source Methode.  July 13 is

15  after the date, right?

16         MS. WALSH:  Yes.

17         MR. BUTLER:  Yes.

18         THE COURT:  So is there an issue with -- I don't

19  see --

20         MR. BUTLER:  Yes.  Because read what it says at the

21  beginning, "at the time of the contract formation."  They're

22  taking --

23         THE COURT:  I'm sorry --

24         MR. BUTLER:  -- a discovery document --

25         THE COURT:  Wait, wait.  Let me --

DPH HOLDINGS CORPORATION, ET AL.

Page 42

1          MR. BUTLER:  -- and they're relating it back to 2008.

2          THE COURT:  Oh, yeah.

3          MR. BUTLER:  And that's what they keep doing

4     throughout this --

5          THE COURT:  Right.

6          MR. BUTLER:  -- Your Honor.

7          THE COURT:  No, that's true.  That's true.  You're not

8     asserting this for the proposition that Delphi told you, on

9     July 13th, that we're not re-sourcing.  You're basically saying

10    that they admitted they -- at the time of contract formation,

11    they intended -- I'm sorry, that they denied they intended.

12    But it's irrelevant.  You're right.  I was just focusing on the

13    date but it goes -- but the purpose of the answer was to say

14    that we denied to do it at the time.

15         MR. BUTLER:  Right.  And Your Honor, paragraph 29

16    actually refers to -- just for context, in their own pleadings,

17    in the motion they filed, they filed the May -- this May 29th

18    letter, which is the letter that they referred to in their

19    complaint everywhere else --

20         THE COURT:  right.

21         MR. BUTLER:  -- but it's a May 29th, 2009 letter --

22         THE COURT:  Right.

23         MR. BUTLER:  -- served before the bar date.

24         THE COURT:  Well, that's paragraph 31.

25         MR. BUTLER:  Right.

05-44481-rdd    Doc 21678    Filed 10/18/11    Entered 10/24/11 15:36:56    Main Document
Pg 43 of 60
DPH HOLDINGS CORPORATION, ET AL.

Page 43

 1            THE COURT:  I understand that.  That's a different --

 2            MR. BUTLER:  Well, it's also, I think, related to 29

 3    but as I --

 4            THE COURT:  Yeah.

 5            MR. BUTLER:  -- and my point in 29 was I was --

 6            THE COURT: Well, I don't know.  I don't know whether

 7    29 is -- I don't know what 29 is referring to because it

 8    doesn't have any date in it.

 9            MR. BUTLER:  Well I was -- it does give you a date

10    context in the second sentence, Your Honor.

11            THE COURT:  I guess.  But the first --

12            MR. BUTLER:  And that's why --

13            THE COURT:  But the first sentence --

14            MR. BUTLER:  Right.

15            THE COURT:  -- doesn't have any date.

16            MR. BUTLER:  And that's why I was -- and the only date

17    context in paragraph 29 refers to actions that occurred,

18    according to the complaint, two days before the bar date.

19            THE COURT:  Look, when I -- I guess I was assuming,

20    notwithstanding Mr. Meisler telling me I shouldn't because

21    there was no way this could be the case, I thought that perhaps

22    you all had something that -- where Delphi actually said, post-

23    bar date, we intend to perform or something like that.  But

24    this doesn't -- this doesn't really -- it all -- except for

25    paragraph 26 which is just a flat out, you know, contract

05-44481-rdd    Doc 21678    Filed 10/18/11    Entered 10/24/11 15:36:56    Main Document
DPH HOLDINGS CORPORATION, ET AL.
Pg 44 of 60

Page 44

1    interpretation issue --

2            MR. BUTLER:  Can I address paragraph --

3            MS. WALSH:  Which is supported by Michigan case law.

4            THE COURT:  Well, that's -- I -- that's --

5            MR. BUTLER:  Your Honor, can I address paragraph 26,

6    briefly?

7            THE COURT:  All right.

8            MR. BUTLER:  There actually was an exchange between

9    Mr. Mayer and the Court on that, as well.

10           THE COURT:  Okay.

11           MR. BUTLER:  At the July 2010 hearing at page -- I

12   have 77 and 78.  Is that line numbers or pages?  I'm sorry.

13           THE COURT:  Let me see.

14           MR. BUTLER:  Pages 77 and 78 of our -- and I quote it

15   in our -- on page 13 of our response.  But it's where the Court

16   says, you know, "I don't think your complaint parses through

17   this sufficiently.  It covers the gamut here.  I mean,

18   "Paragraph 2 is the key thing.  It's due to Delphi's unlawful

19   contract termination.  It was unlawful, right?  It was unlawful

20   for a reason. "

21           Mr. Mayer says "Yes."

22           The Court says "As per the contract, they had a right

23   to terminate.  So something else rendered it unlawful, right?"

24           Mr. Mayer concedes the point.  "Yes."  Conceding the

25   point we had a right to terminate.

05-44481-rdd   Doc 21678   Filed 10/18/11   Entered 10/24/11 15:36:56   Main Document
Pg 45 of 60
DPH HOLDINGS CORPORATION, ET AL.

Page 45

```
 1              And then the Court says "So that if --

 2              THE COURT:  Well --

 3              MR. BUTLER:  -- "something else happened before the

 4    bar date --"

 5              MS. WALSH:  There was --

 6              THE COURT:  I don't know.

 7              MS. WALSH:  -- mistakes in the transcript.

 8              THE COURT:  You know, I -- is --

 9              MR. BUTLER:  I mean --

10              THE COURT:  I don't know.

11              MR. BUTLER:  I mean, because remember --

12              THE COURT:  I don't know about that.

13              MR. BUTLER:  -- this --

14              THE COURT:  I --

15              MR. BUTLER:  -- this is a new -- just to state, Your

16    Honor, this theory --

17              THE COURT:  I know it's a new theory.

18              MR. BUTLER:  -- is a new theory --

19              THE COURT:  I understand.

20              MR. BUTLER:  -- right?  That was -- came out of a

21    colloquy before the Court --

22              THE COURT:  But again, this is --

23              MR. BUTLER:  -- at a prior hearing.

24              THE COURT:  -- this is not -- I want to put this is a

25    context.  This litigation hasn't been removed to me.  I'm not
```

DPH HOLDINGS CORPORATION, ET AL.

Page 46

1    dealing with a request to amend the complaint under Rule 15.

2    I'm dealing with Methode's compliance with its stipulation and

3    my July order because I concluded that if, in fact, the bar

4    date issues were taken out of this case, then it could go back

5    to Michigan.  Not back in the sense of it would be remanded.

6    That I would lift the injunction. Because that's why this

7    motion is here, to get relief from that plan injunction.

8         So, I wanted to see the amended complaint to see

9    whether, in fact, it complied with the stipulation and the

10   order.  And whether, in fact, this legal contention that's in

11   paragraph 26 is futile or not or time barred or whatever there

12   might be as an argument that you'd normally make under Rule 15

13   in response to a Rule 15 motion, I think is not really relevant

14   here.  Because it isn't a Rule 15 motion.  It's just as to

15   whether the -- Methode has complied with my order and its

16   stipulation.

17        And that's why I don't think I need to get into

18   argument about whether this is futile or not.  It does appear

19   to me not to be in violation of my order.  Because it's -- it's

20   just on the face of the contract.  And if, in fact, the

21   contract was breached by the termination because,

22   notwithstanding the termination at will language, the three

23   year term trumps that, then that's a post-bar date breach.  But

24   it's not -- I -- that -- in contrast to these other provisions

25   which, to my mind, premise the claim not upon something that

05-44481-rdd   Doc 21678   Filed 10/18/11   Entered 10/24/11 15:36:56   Main Document
DPH HOLDINGS CORPORATION, ET AL.
Pg 47 of 60

Page 47

1    arose post-bar date but, rather, that arose pre-bar date, i.e.

2    wrongful conduct that would vitiate a valid termination without

3    cause provision.  I mean if something wrongful that would

4    somehow estop or prevent Delphi from doing that.

5          And I don't see how Delphi's allegedly being

6    unresponsive to discovery does that, unless the

7    unresponsiveness were post-bar date statements that, you know,

8    "we intend to honor the agreement."  But clearly a post-bar

9    date statement that says merely that at the time we entered

10    into the agreement we intended to honor it, that's neither here

11    nor there.  And I just -- you know, 29 just doesn't -- it

12    raises the decided risk in my mind that we're going to get back

13    into these same types of issues that I dealt with in August.

14          The May 29th letter is a pre-bar date letter.  As far

15    as 28 is concerned, it just said it was "illegitimate."  I

16    don't know what -- I mean, and that's, to my mind, the same

17    thing as when I had the colloquy with Mr. Mayer in August where

18    I said well, but why was it illegitimate and when did those

19    illegitimate things happen?  If -- if it was illegitimate

20    because they actually happened or didn't happen, depending on

21    what the basis for illegitimacy was, pre-bar date, then

22    that's -- that's a problem.  That doesn't -- that doesn't cut

23    it.

24          MS. WALSH:  Your Honor, but what if, of the three

25    bases that they cite in their termination letter -- and there

05-44481-rdd    Doc 21678    Filed 10/18/11    Entered 10/24/11 15:36:56    Main Document
DPH HOLDINGS CORPORATION, ET AL.
Pg 48 of 60

Page 48

1  were three including the fact that we allegedly had to be

2  priced competitive with competitors, if none of those three

3  bases -- let's for say example, two of those three bases

4  weren't legitimate -- we weren't put on notice of them until

5  after the bar date.

6        THE COURT:  I had -- you know, I had asked you all to

7  go through these things --

8        MS. WALSH:  Yes, Your Honor.

9        THE COURT:  -- twice out in court, to specify what it

10  was that you were relying upon.  Has this -- was this discussed

11  with anyone, what you're referring to in paragraph 28?

12        MS. WALSH:  You mean discussed with --

13        THE COURT:  Anyone at Skadden?  About what they -- you

14  know --

15        MS. WALSH:  They have the termination letter.  It's

16  been an exhibit --

17        THE COURT:  No, but what 28 was supposed to cover.

18        MS. WALSH:  We tendered the counterclaim -- the

19  amended counterclaim to Skadden in May.

20        THE COURT:  But --

21        MR. BUTLER:  Judge, can I address that for a moment?

22        THE COURT:  But -- no, but -- okay.  Fine.  Go ahead,

23  Mr. Butler.

24        MR. BUTLER:  This is the third hearing.  We've been at

25  this fifteen months now.  This is the third hearing we've had

05-44481-rdd   Doc 21678   Filed 10/18/11   Entered 10/24/11 15:36:56   Main Document
DPH HOLDINGS CORPORATION, ET AL.
Pg 49 of 60

Page 49

1    on this issue.  The third opportunity that Methode's had to

2    rewrite their complaint.  And just to make the point, when Ms.

3    Walsh said we were tendered something in May, what happened was

4    that after the rulings last July and August, for the next ten

5    months, Methode did nothing.  And it wasn't until -- Your

6    Honor made a note of this earlier in the hearing -- it wasn't

7    until we renoticed our objection to Methode's administrative

8    claim on May 25th and set a notice of sufficiency hearing for

9    that on the claims track, two days letter, Methode transmitted

10   to us the counterclaim.

11           So it was in direct response to our actually filing

12   the notice of sufficiency hearing for the claim to be resolved

13   and then four days -- or six weeks later, five weeks later,

14   they filed this motion.  Now, Your Honor, this motion has

15   attached to it there two counts and we're focused now on Count

16   1.  I just want Your Honor to look at Count 1 as it's pled.

17   And paragraph 24 of Count 1 says Methode realleges each of the

18   preceding paragraphs as set forth fully herein.

19           If you read the beginning of the complaint, the first

20   twenty-three paragraphs, most of it deals with pre-bar date

21   conduct.

22           THE COURT:  All right.  But again, I said that they

23   could -- you're right.  And it was incumbent upon them to make

24   the distinction in the claim itself -- in the claim number --

25   Count number 1 itself, what was actually wrongful as opposed to

Page 50

```
 1    just laying the groundwork --

 2           MR. BUTLER:  Right.

 3           THE COURT:  -- so that people could put this in

 4    context.

 5           MR. BUTLER:  And so the question is, is this strike

 6    three or do they get a strike four?  I mean at what point in

 7    time -- how many months, how many hearings, how many amended

 8    complaints, how many additional opportunities --

 9           THE COURT:  Right.

10           MR. BUTLER:  -- does Methode -- because I just want to

11    point out to Your Honor from Delphi's perspective, DPH's

12    perspective, there is very significant prejudice here.  They're

13    trying to assert, according to them, a forty-odd million dollar

14    claim.  Right?  That's their goal here.  As opposed to a

15    700,000 dollar --

16           THE COURT:  Well --

17           MR. BUTLER:  -- termination fee payment --

18           THE COURT:  Right.

19           MR. BUTLER:  -- under the -- under the contract.

20           THE COURT:  Well, the prejudice is whether we should

21    just get one with deciding that claim or not or whether we

22    should wait another several months to see whether I'll lift the

23    injunction and let the Michigan court decide that claim.  And

24    my inclination, since we're still going around the block on

25    this, is just to move on to the claim deci -- deciding the
```

05-44481-rdd   Doc 21678   Filed 10/18/11   Entered 10/24/11 15:36:56   Main Document
DPH HOLDINGS CORPORATION, ET AL.
Pg 51 of 60

Page 51

1    claim.  Deciding the amount of the claim and whether it's time

2    barred.

3              MR. BUTLER:  And we're prepared for that.

4              THE COURT:  But I --

5              MR. BUTLER:  We're prepared to do that, Your Honor.

6              THE COURT:  You know, I'm happy to -- I don't know.

7    If you -- look, if it were limited to paragraph 26, this issue

8    of Michigan law, I would be happy to let it go to Michigan.

9    You know?  The Michigan court can construe Michigan law as to

10   whether the contract -- what provision of the contract trumps.

11   But I -- I'm just very wary at this point, given what I -- what

12   I don't understand in these repeated arguments, I'm very wary

13   that there will be more in front of the Michigan court than

14   that issue and that the bar date issue and the preference

15   issue -- all of it will creep in to the Michigan litigation.

16   And it really shouldn't.

17              I mean, it's -- and now we have a stipulation in front

18   of me, on the record, that I -- you know, that I was part of.

19   That clearly should be in front of me.  So, if this is just --

20   if it's just limited to this, I don't have a problem with it

21   but otherwise, I think I should just deny the motion.

22              MS. WALSH:  Your Honor, the only -- the one comment I

23   would make is, as you know, you instructed us and we were

24   clear --

25              THE COURT:   I didn't instruct you -- I gave -- yes, I

1   gave you instructions.  I didn't tell you to file this,

2   clearly.

3          MS. WALSH:  No, no, Your Honor, of course not.  That

4   was our doing.

5          THE COURT:  All right.

6          MS. WALSH:  But we -- I read this transcript probably

7   a hundred times, the May transcript, and I understood from this

8   transcript that we were supposed to allege post-bar date facts

9   but, some pre-bar date conduct could be relevant to whether

10  there was a breach and that's what's said in the transcript.

11  And I think that's what we've done. And so now we're in the

12  position of right before the bar date, one business day before

13  the bar date, they -- Delphi can get away with sending a

14  letter, signed by counsel, under a court's instruction pursuant

15  to Rule 26, and they say in the letter they're not intending to

16  breach.

17         Yes, we had an anticipatory breach claim on file since

18  Nov -- since January of '09 but as your Court -- as this Court

19  recognized, an anticipatory breach is not the same as breach.

20  So all those months, right -- one business day before the bar

21  date they tell us they're not going to breach.

22         THE COURT:  When did -- you certainly had the letter.

23  Everyone had this letter --

24         MS. WALSH:  The --

25         THE COURT:  -- in May of 2010.

05-44481-rdd    Doc 21678    Filed 10/18/11    Entered 10/24/11 15:36:56    Main Document
DPH HOLDINGS CORPORATION, ET AL.
Pg 53 of 60

Page 53

1            MS. WALSH:  It was --

2            THE COURT:  They'd had it for a year.

3            MS. WALSH:  Yes, Your Honor.  It was sent in the

4    patent case --

5            THE COURT:  I mean, I --

6            MS. WALSH:  I'm not sure --

7            MR. BUTLER:  It was sent before the bar date.

8            THE COURT:  Look, I don't -- I don't spend thirty

9    minutes of a hearing nailing down an agreement that will

10   determine the rest of the course of the hearing on the

11   assumption that people are going to say oh, but -- but for this

12   one exception.  Unless they do it at the time.  They didn't do

13   it.  And it's in the order.  And it's final.  I'm sorry.  I

14   mean, it's -- what's the point of having a hearing, then?

15   What's the point of having agreements on the record?  I just

16   don't -- that's just not how things happen.  It's --

17           MR. JACOB:  But Judge, everything that happened in the

18   preference case happened after all these events.

19           THE COURT:  No, no. Let's leave the preference case

20   aside.  We're not talking about that now.  We're talking about

21   this May 29th, 2009 letter.

22           MS. WALSH:  I think Your Honor --

23           THE COURT:  I mean, if -- if you started reading it a

24   hundred times, I don't understand why there wasn't a Rule 60

25   motion made, you know, on July 30th.  Or August 30th of 2010.

1    It's just --

2           You know, at some point -- I'm not sure I would have

3    granted it then, given -- given the -- what I view as the

4    definitiveness of the discussion in May.  But to be raising it

5    now that oh, well, this is -- yes, it is pre-bar date but it's

6    only a few days before the bar date.  That's not what the

7    agreement said.  Pre-bar date, it's out.

8           And on the preference claim, I've already dealt with

9    that, too.  I mean, again, you have your right to make a Rule

10   60 motion.  But the key issue is whether the people who were in

11   front of me in May and made this agreement, which was then

12   memorialized in an agreed order in July of 2010, had the level

13   of knowledge or could have had the level of knowledge because

14   that's the standard under Rule 60.  Just because you didn't

15   think of it, doesn't mean it's out in Rule 60.  It's not new

16   evidence if you didn't think of it, because it was there.

17          But, you know, you could still make that motion.

18   That's my view on the preference issue.  I also think that --

19   it's clear to me that if, in fact, I were to grant that motion,

20   I'd keep the litigation because it involves several orders by

21   me as well as the alleged bad faith conduct of the debtor in

22   front of me.  And the debtor, you know, has taken the position

23   that it didn't act improperly in front of me.  And maybe it's

24   right on that so I -- you know --

25          So, my inclination, given the lapse of time here, is

Page 55

1    to deny the underlying motion and just to keep the -- keep this

2    in the context of a claim objection.  I mean, the claim's

3    asserted, it's a very different claim at this point and, you

4    know, we can deal with that.  Although, I'm happy to -- again,

5    if it's clear that the only issue is the -- this interpretation

6    of Michigan law on the -- how to construe the contract, then

7    that -- that would go to Michigan.

8            So, I guess that's my ruling.  I would deny the motion

9    unless that's the case.

10            MR. BUTLER:  I'm sorry.  I heard -- Your Honor, could

11   you repeat?

12            THE COURT:  I would deny the motion for relief from

13   the plan injunction unless, in fact, the complaint that's filed

14   is the complaint that relies upon, solely, the basis for the

15   cause of action, the assertion in paragraph 26.

16            MR. BUTLER:  And Your Honor, would that mean that all

17   other bases would be waived?

18            THE COURT:  They're out.

19            MR. BUTLER:  They're out.

20            THE COURT:  Yeah.  They're not going to be asserted.

21   Because I -- I mean, I just -- I still don't see anything

22   that's -- other than that that's being asserted that's -- as a

23   basis for the cause of action that isn't pre-bar date.

24            MS. WALSH:  So, Your Honor, if we assert a

25   counterclaim that's based, essentially, on paragraph 26, i.e.

Page 56

1    that the specific --

2            THE COURT:  They didn't have a right to terminate

3    because it's a three year contract and --

4            MS. WALSH:  Yes.

5            THE COURT:  Yeah.

6            MS. WALSH:  That could stay in Michigan?

7            THE COURT:  Absolutely.  So what I'm going to do is

8    give you all ten days to file that -- that complaint.  You

9    don't have to.  I mean, you don't have to file it.  You have an

10   alternative which is to, you know, move for relief under Rule

11   60 but -- on the July order.  But if it is filed, I'll enter an

12   order lifting the plan injunction to let that -- that claim be

13   dealt with in the Michigan litigation.  If it's not filed, then

14   I'll deny the motion.

15           MR. BUTLER:  Your Honor, also, may I ask a question

16   and -- will that order that you enter also dismiss the balance

17   of their administrative claims in this case but for that

18   limited matter?  Because they filed -- remember, we have before

19   Your Honor --

20           THE COURT:  Well, they're only --

21           MR. BUTLER:  -- an administrative claim.

22           THE COURT:  You're only -- I mean, they'd only be

23   asserting that claim.

24           MR. BUTLER:  Well, but what I'm trying to get at, Your

25   Honor, is they filed an administrative claim --

05-44481-rdd    Doc 21678    Filed 10/18/11    Entered 10/24/11 15:36:56    Main Document
DPH HOLDINGS CORPORATION, ET AL.
Pg 57 of 60

Page 57

1              THE COURT:  No, I understand.  The whole point is to

2       deal with this once.  I don't want to deal with it piecemeal.

3              MR. BUTLER:  Right.  And so --

4              THE COURT:  I mean, I'm assuming that's the case,

5       yeah.

6              MS. WALSH:  And so just so we're clear, Your Honor,

7       ten days to file it in Michigan.

8              THE COURT:  No, no, file it in front of me so I can

9       see it.

10             MS. WALSH:  Oh, okay.

11             THE COURT:  and then I'll -- and submit it along with

12      a proposed order lifting the injunction -- the plan injunction.

13      And obviously, you should run it by the Skadden lawyers first

14      before you send it in.  I don't want to have this further

15      delayed if it's -- you know, if it can be avoided.  And when I

16      say run "it" I mean both the proposed complaint as well as the

17      order.  But Mr. Butler's right.  I don't want to have the

18      Michigan Court deciding some issues and me deciding other

19      issues.  This should be it as far as -- the complaint that

20      you'd be pursuing in Michigan would be the claim.  Okay?

21             I'm not saying you have to do that.  That's how I

22      would -- otherwise I would just -- I would dismiss this -- I

23      would deny this motion and I'd deal with the claim here.  Okay?

24             MR. BUTLER:  Thank you, Judge.

25             THE COURT:  Okay.  Be sure to e-mail everything to

Page 58

1    chambers.  I usually don't like e-mails on things that just

2    come up in the ordinary course but this won't come up otherwise

3    so be sure to e-mail everything to chambers --

4            MS. WALSH:  Thank you, Your Honor.

5            THE COURT:  -- when you file it so I'll be aware of

6    it.

7            MS. WALSH:  Thank you, Your Honor.

8            THE COURT:  Thanks.

9            MR. BUTLER:  Thanks, Judge.

10       (Whereupon these proceedings were concluded at 11:22 AM)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 59

1

2                              I N D E X

3

4                              RULINGS

5                                              Page      Line

6    Motion for relief from plan injunction     55        7

7      conditionally denied; if complaint

8      relies upon noted assertion, motion

9      approved

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 60

1

2                     C E R T I F I C A T I O N

3

4    I, Zipporah Geralnik, certify that the foregoing transcript is

5    a true and accurate record of the proceedings.

6

7    Zipporah          Digitally signed by Zipporah
                        Geralnik
     Geralnik          DN: cn=Zipporah Geralnik, c=US
8    _____ Date: 2011.10.18 10:01:15 -04'00'_____

9    Zipporah Geralnik

10   AAERT Certified Electronic Transcriber (CET**D-489)

11

12   Veritext

13   200 Old Country Road

14   Suite 580

15   Mineola, NY 11501

16

17   Date:  August 29, 2011

18

19

20

21

22

23

24

25