DUANE MORRIS LLP
A Delaware Limited Liability Partnership
William C. Heuer, Esquire
Wendy M. Simkulak, Esquire (WS-8945)
1540 Broadway, 14th Floor
New York, NY 10036-4086
(212) 692-1000
(212) 692-1020 (facsimile)
    and
Lewis R. Olshin, Esquire
Margery N. Reed, Esquire
30 South 17th Street
Philadelphia, PA 19103-4196
(215) 979-1000
(215) 979-1020 (facsimile)

Counsel for the ACE Companies

Obj. Deadline: November 10, 2011
Hearing Date: November 17, 2011 at 9:00 a.m.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| DPH HOLDINGS CORP., et al. | ) Case No. 05-44481 |
| | ) (Jointly Administered) |
| Reorganized Debtors. | ) |

### RESPONSE AND LIMITED OBJECTION OF THE ACE COMPANIES TO THE AMENDED MOTION OF JAMES GRAI PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE TO MODIFY AUTOMATIC STAY AND AMENDED MOTION FOR JOINDER OF PARTIES

ACE American Insurance Company ("ACE American") and Pacific Employers Insurance Company ("Pacific" and, together with ACE American, the "ACE Companies"), by and through their undersigned counsel, hereby file this Response and Limited Objection (the "Response") to the Amended Motion of James Grai Pursuant to Section 362 Of The Bankruptcy Code To Modify Automatic Stay and Amended Motion For Joinder Of Parties (collectively, the "Amended Motions"), and respectfully state as follows:

#### Preliminary Statement

The ACE Companies have no objection to the Amended Motions to the extent the relief sought is directed solely against General Motors Corporation and/or the Michigan Workers

1

DM3\1955812.2

Compensation Funds Administration (the "Funds Administration") and does not seek to implicate the Policies (as defined herein) that are the subject of the Adversary Proceeding (as defined herein). The ACE Companies therefore seek clarification of the Amended Motion to the extent it is styled to lift the automatic Stay/Plan Injunction (as defined herein) against the ACE Companies in order to permit the Movants to pursue claims for workers' compensation benefits. To the extent that the Funds Administration denies liability for Movants' claims by raising issues which are the subject of the Adversary Proceeding and the Michigan Workers' Compensation Agency (the "Agency")[1] proceeds to determine such issues as part of the Movants' claim proceedings, such would be contrary to the Stay Order previously entered by this Court and directly affect the Adversary Proceeding and the Bankruptcy Case.

As explained in further detail in this Response, the ACE Companies have untaken a review of the claims filed by the Movants in order to determine whether any of the Movants (as defined herein) have claims for workers' compensation benefits that do not implicate the Deductible Policies (as defined herein) that are the subject of the Adversary Proceeding. As set forth below and on Exhibit A to this Response, the ACE Companies have identified 61 Movants with claims for workers' compensation benefits that do not implicate the Deductible Policies. With respect to these 61 cases the ACE Companies have no objection to the relief requested. To the extent the Movants can identify additional cases that do not implicate the Deductible Policies (and therefore, will not result in a potential claim against the Deductible Policies and a corresponding administrative expense claim against the Reorganized Debtors), the ACE Companies will have no objection to these additional cases proceeding as well. The remaining cases do however implicate the Deductible Policies. For instance, 91 of the Movants are listed in

---

[1] The Agency and the Funds Administration shall be referred to herein as the "Michigan Defendants."

2

DM3\1955812.2

the previously filed notice of the Rule 5 Hearing (as defined herein) initiated by the Agency and thus, as set forth hereinafter, the ACE Companies object to the relief requested with respect to the remaining cases since the requested relief would implicate the Deductible Policies that are the subject of the Adversary Proceeding. It is respectfully submitted that granting the requested relief as to the remaining cases would be contrary to the previously entered opinion and orders of this Court, as affirmed by the District Court.

I. **BACKGROUND NECESSARY TO EVALUATE THE RELIEF REQUESTED IN THE AMENDED MOTIONS**[2]

   A. **The Bankruptcy Case And The ACE Insurance Program**

   1. On October 8, 2005 and October 14, 2005 (collectively, the "Petition Date"), Delphi Corporation ("Delphi") and certain of its affiliates (collectively and together with Delphi, the "Debtors")[3] filed their respective voluntary petitions for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court") thereby commencing their bankruptcy cases (collectively, the "Bankruptcy Case").

   2. Prior to and after the Petition Date, the ACE Companies and the Debtors entered into certain written insurance agreements (including, but not limited to, claims servicing agreements) and the ACE Companies issued certain insurance policies to certain of the Debtors including, but not limited to:

---

[2] The summary set forth herein is limited in scope so as to only include the facts and pleadings that are most relevant to the issues raised by the Amended Motions. As this Court is well aware, the facts and documents relating to the dispute among the ACE Companies, the Debtors and the Michigan Defendants (as defined herein) are numerous and voluminous and already detailed in various pleadings presented to this Court in the Bankruptcy Case and the Adversary Case (as defined herein).

[3] As appropriate, any reference to the Debtors shall also include or refer to the Reorganized Debtors (as defined in the Modified Plan).

3

a. certain Specific Excess Workers' Compensation and Employers Liability policies for periods covering October 1, 2000 to October 1, 2009 (collectively, the "Retention Policies") each of which contains a substantial self-insured retention; and

b. certain Workers' Compensation and Employers Liability policies for periods covering October 1, 2000 through October 1, 2002 and October 1, 2003 through October 1, 2009[4] (collectively, the "Deductible Policies") that are applicable to certain workers' compensation claims arising in a number of states against certain of the Debtors who did not qualify for self-insured status, but are not applicable to any of the workers' compensation claims against Delphi in Michigan, each of which contains a substantial deductible.

3. Pursuant to various orders of the Court, (i) the Debtors assumed certain prepetition insurance policies and agreements including, but not limited to, the prepetition Retention Policies and prepetition Deductible Policies, (ii) the Debtors and the ACE Companies entered into certain postpetition insurance policies and agreements including, but not limited to, the postpetition Retention Policies and postpetition Deductible Policies, and (iii) the ACE Companies' claims for payment and reimbursement obligations owing by the Debtors under the assumed (and postpetition) insurance policies and agreements (collectively, the "Obligations") were accorded administrative priority status. *See* Docket Nos. 1779, 10520 and 18793.

4. The ACE Companies have filed certain administrative claims against the Debtors relating to the Obligations and to the Adversary Proceeding (as defined below).

5. On or about October 6, 2009 (the "Effective Date"), the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (As Modified) (the "Modified Plan") became effective.

6. The Modified Plan contains the following injunction (the "Modified Plan Injunction"):

---

[4] The periods of October 1, 2000 through 1, 2002 and October 1, 2003 through October 1, 2009 shall be referred to herein as the "Disputed Period."

4

DM3\1955812.2

> Subject to Article 11.13 of this Plan, the satisfaction, release, and discharge pursuant to this Article XI shall act as an injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim, Interest, or Cause of Action satisfied, released, or discharged under this Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof.

7. The order confirming the Modified Plan also provides as follows (together with the "Plan Injunction"):

> Except as otherwise specifically provided in the Modified Plan, the MDA Documents, or this order and except as may be necessary to enforce or remedy a breach of the Modified Plan, the Debtors and all Persons shall be precluded and permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any Claim, action, employment of process, or other proceeding of any kind with respect to any Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, (b) the enforcement, attachment, collection, offset, recoupment, or recovery by any manner or means of any judgment, award, decree, order or otherwise with respect to any Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, (c) creating, perfecting, or enforcing any encumbrance of any kind with respect to any Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, and (d) asserting any Claims, Interests, or Causes of Action that are satisfied, discharged, released, or subject to exculpation hereby or by the Modified Plan.

**B.   The Debtors' Description Of The ACE Insurance Program In Their Insurance Agreement Motion**

8. On or about December 16, 2005, the Debtors filed that certain Motion For Order Under 11 U.S.C. §§ 362, 363, 365, 1107, And 1108 Authorizing Renewal of Insurance Coverage And Certain Related Relief (the "Insurance Agreement Motion") pursuant to which the Debtors sought to assume certain prepetition insurance policies and agreements with the ACE Companies

5

DM3\1955812.2

including the prepetition Deductible Policies and prepetition Retention Policies. [Docket No. 1559].

9. In the Insurance Agreement Motion, the Debtors explained their self-insured obligations as follows:

> The Debtors' workers compensation liability under the Agreements represents a small percentage of the Debtors' total workers' compensation liability. The Debtors maintained first dollar workers' compensation insurance coverage only in the states where they do not have a high concentration of employees. In the states where the Debtors have a high concentration of employees, such as Michigan, the Debtors are self-insured for workers' compensation claims. In the self-insured states, the Debtors maintain excess workers' compensation insurance coverage with the Insurers for claims in excess of the respective state's self-insured retention. By this Motion, [the] Debtors also seek to renew their excess workers' compensation insurance coverage.

*See* Insurance Agreement Motion at page 12 n.5.

10. Accordingly, in the Insurance Agreement Motion, the Debtors specifically disclosed that Michigan was a "self-insured" jurisdiction for the Debtors' workers' compensation obligations. Therefore, since the Deductible Policies did not apply to the Debtors' self-insured obligations in Michigan, the Debtors further disclosed that their estimated obligations under the Deductible Policies, which were detailed in the Insurance Agreement Motion, did not include their self-insured obligations. *See* Insurance Agreement Motion at pages 12-13.

**C.    The Michigan Entities' Statements In The Bankruptcy Case Regarding The Debtors' Insurance Coverage**

11. On July 15, 2009, the Agency and the Funds Administration filed an objection (the "Michigan Plan Objection") to the Debtors' proposed modifications to the Debtors' First Amended Plan. [Docket No. 18264].

12. The basis for the Michigan Plan Objection was that the Debtors were self-insured under Michigan law, that the Plan was going to significantly curtail the Debtors' obligations to

6

DM3\1955812.2

make payments to their injured workers and, as a result, that the Debtors' plan did not adequately "protect Michigan's self-insured program for the benefit of all other Michigan self-insured employers and their employees." *See* Michigan Plan Objection at page 2.

13. On July 15, 2009, the Funds Administration also filed an Administrative Expense Claim Form (each, a "Claim Form") in the Debtors' cases, seeking payment of $1,130,191.92. (*See* Claims Nos. 19168 and 18994.) The attachment to these Claim Forms state:

> The basis for the claim stems from the status of Delphi Corporation as a self-insured employer for purposes of workers' compensation claims in the state of Michigan. Delphi Corporation was first granted self-insurer status by the Michigan Workers' Compensation Agency on May 28, 1999 and continues to operate as a self-insured employer.

*See* Claim Form.

14. In the Claim Form, the Funds Administration asserted that the assessments "should be treated as administrative expenses because Delphi has been allowed to remain self-insured and it has continued to make compensation payments during the bankruptcy." *Id.* at 2. The Funds Administration further stated: "[the] Debtor's estate has been greatly enhanced by its ability to remain self-insured during the pendency of the bankruptcy proceedings. By remaining self-insured, Debtor has been able to avoid paying policy premiums to a private insurer to cover its substantial Michigan workers' compensation obligations." *Id.* at 2. That Claim Form was executed by the Michigan Attorney General's office. *Id.* at 4.

15. The Michigan Attorney General also filed an administrative expense claim in the amount of $5,557,750.00 as well as two general unsecured proofs of claim in the amounts of $36,293,480.00 and $25,460,432.50 on behalf of the Michigan Self-Insurers' Security Fund (the "Michigan Security Fund" together with the Funds Administration and the Agency, the

7

DM3\1955812.2

"Michigan Entities"). Each of these claims asserted liability against the Debtors based upon the fact that Delphi was self-insured for workers' compensation claims in Michigan.

### D.     The Adversary Proceeding

16.     On the same date that the Michigan Entities were emphasizing the Debtors' self-insured status in their pleadings and claims filed with this Court, the Director of the Agency, on behalf of the Agency, sent a letter to the ACE Companies erroneously concluding that despite the Agency's approval of Delphi and certain of its affiliates as self-insured employers for virtually all of their Michigan workers' compensation claims, the Agency's records allegedly "show that Delphi Automotive Systems Corporation and Delphi Corporation have been insured for all workers' compensation liability in Michigan with members of the ACE Limited group [sic], specifically Pacific Employers Insurance Company and Ace American Insurance Company."[5]

17.     The ACE Companies immediately responded to the Agency and denied coverage.

18.     On or about October 6, 2009, ACE American and Pacific commenced an adversary proceeding (the "Adversary Proceeding") by filing a complaint (the "Complaint") against Delphi, the Agency, and the Funds Administration.

19.     The Complaint explained that the Adversary Proceeding "stems from underlying claims that have been filed or that may be filed with the Agency against Delphi seeking workers' compensation benefits." See Complaint at ¶ 2. These workers' compensation claims, the complaint noted, "were covered by Delphi as a self-insured employer and not by the [Policies.]" Id. The Complaint further stated that "the Agency and Funds Administration have taken the improper position, including the filing of documents in this Court, which erroneously allege that

---

[5]     The records were Form 400s, which provided notice of the issuance of the Deductible Policies—referring to them specifically by policy number and effective date—but which mistakenly identified "Delphi Corporation" as a covered legal entity, rather than just the non-self-insured subsidiaries actually covered by the Deductible Policies. The ACE Companies have subsequently filed amended notices.

8

DM3\1955812.2

ACE ... [is] obligated to provide insurance coverage for the [self-insured workers' compensation claims]." *Id.*

20. Relevant to the Amended Motions, the Complaint sought (i) a declaratory judgment of no coverage under the Deductible Policies, or, in the alternative, (ii) equitable reformation of the Deductible Policies "to reflect the mutual understanding and intent of the parties." *Id.* at ¶ 4.

21. On November 10, 2009, the Michigan Defendants filed a motion to dismiss the Adversary Proceeding for lack of jurisdiction, asserting a lack of subject-matter jurisdiction, sovereign immunity, and failure to state a claim. *See* Adversary Proceeding Docket No. 15. In the alternative, the Michigan Defendants moved the court to abstain in favor of the Michigan courts and workers' compensation administrative process.

22. On November 30, 2009, the Debtors answered the Complaint, and filed counterclaims and a crossclaim. *See* Adversary Proceeding Docket No. 26. While the Debtors agreed with the ACE Companies that the Deductible Policies were not intended to cover Delphi's self-insured obligations, the counterclaims and crossclaim sought a declaratory judgment that the ACE Companies cannot recover from the Debtors' estate under the Deductible Policies as to the self-insured claims, and that neither the ACE Companies nor the Michigan Defendants has a right of recovery against the Debtors' estate based on the ACE Companies' filing of the Form 400s. *Id.*

23. At oral argument on the Motion to Dismiss, the Court proposed that the parties stipulate that "the insurers are not liable under the policies," and that a Michigan tribunal would decide "whether the delivery of the [Form 400s] gives rise to liability to the workers'

9

DM3\1955812.2

compensation claim ... separate and apart from any liability under the policies" but the Michigan Defendants refused to so stipulate. *See* Adversary Proceeding Docket No. 16 at page 141.

24.    On January 26, 2010, the Court entered an order (the "Motion to Dismiss Order") denying the Michigan Defendants' motion to dismiss to the extent that it sought to dismiss the Complaint for lack of jurisdiction or, in the alternative, abstention. Adversary Proceeding Docket No. 69. The Court stated that it was "clear" to the Court that the Michigan Defendants were "not prepared to limit their legal theories to the [Form 400 theory], but want[ed] also to be able to point to the existence of the insurance policies and to deal with their terms as a basis for establishing the insurers' liability for the workers' compensation claims." *See* Adversary Proceeding Docket No. 69 at Transcript pages 20-21.

25.    The Court held that "related to" jurisdiction existed as "the outcome of this proceeding would have not only a conceivable effect but a potentially significant effect on Delphi's estate" because the Adversary Proceeding would result in "either the allowance of substantial claims by the insurer against the debtor's estate and the corresponding disallowance of the Fund's claim [if ACE did not prevail]," or "the disallowance of the insurers' claims, without necessarily the allowance of the Fund's claims [if ACE prevailed]." *See* Adversary Proceeding Docket No. 69 at Transcript pages 13, 21. Thus, the Court concluded that it was "clear that this is a core proceeding under 28 U.S.C. § 157(b)(2)(B)." *See* Adversary Proceeding Docket No. 69 at Transcript page 21.

26.    The Court also stated that "the allowance and disallowance of claims . . . is at the center of the bankruptcy court's jurisdiction" and analyzing *Central Va. Comm. College v. Katz*, 546 U.S. 356, 362 (2006) and 11 U.S.C. § 106(a), the Court found that sovereign immunity had

10

DM3\1955812.2

been abrogated with respect to the causes of action asserted in the Adversary Proceeding against the Michigan Defendants. *See* Motion to Dismiss Order at 28.

27. Lastly, as relevant to the Amended Motions, the Court found that the outcome of the proceeding would "affect the administration of the estate and liquidation of the assets of the estate under 28 U.S.C. § 157(b)(2)(A) and (O), in that the insurance policies at issue are clearly assets of the estate and coverage under those policies remains an issue in this litigation." *See* Adversary Proceeding Docket No. 69 at Transcript pages 21-22.

28. In the Motion to Dismiss Order, the Court retained jurisdiction to hear and determine the Adversary Proceeding.

29. On January 28, 2010, this Court entered its Order Granting Joint Motion Of State of Michigan Workers' Compensation Agency and Funds Administration To Stay Order And Adversary Proceeding Pending Appeal (the "Stay Order"). Adversary Proceeding Docket No. 71.

30. In, pertinent part, the Stay Order stayed the Adversary Proceeding subject to a number of "continuing conditions" including: (a) not proceeding with respect to the Michigan Workers' Compensation Agency Director's Rule 5 Hearing (the "Rule 5 Hearing") or the ACE Companies' Superintending Control proceeding; (b) the Agency and the Funds Administration shall not seek alternative relief in respect to the ACE Companies' potential liability for workers' compensation coverage of Delphi; (c) the Funds Administration will continue to request adjournments of all pending and future cases to the extent they involve any action to address the ACE Companies' potential liability for workers' compensation coverage of Delphi, and (d) the parties shall report to the Court any activity, action or matter scheduled in Michigan to address

DM3\1955812.2

the ACE Companies' potential liability for workers' compensation coverage of Delphi. *See* Stay Order ¶ 3.

31. The Rule 5 Hearing Notice referenced in the Stay Order, in pertinent part, has been filed by the Agency to seek "to enforce [the ACE Companies'] compliance with the Act" with respect to 332 claims filed with the Agency. Among the 332 claimants identified are 91 Movants including Mr. Grai. Attached hereto as Exhibit B is a true and correct copy of the relevant portion of the Rule 5 Hearing Notice.

32. Since the date of the entry of the Stay Order, the Michigan Entities, the ACE Companies and the Debtors have acted in accordance with the provisions of the Stay Order.

### E.    The Appeal to the District Court

33. The United States District Court for the Southern District of New York (the "District Court") granted the Michigan Defendants leave to appeal the Court's rulings on subject-matter jurisdiction and sovereign immunity, but denied leave to appeal the Court's abstention ruling.

34. By order entered September 9, 2010 (the "District Court Order"), the District Court affirmed the Court's judgment and as relevant to the Amended Motions, found, that in adjudicating the Adversary Proceeding, the Court "will make threshold decisions that will ultimately determine the validity and priority of the claims filed by the Michigan Funds and whether [ACE] will be entitled to administrative expenses." *See* Adversary Proceeding Docket No. 89 at Exh. B. page 12.

35. The District Court also rejected the Michigan Defendants' sovereign immunity defense. The District Court explained that the adjudication of this dispute "will have an effect on the amount and priority of claims to the estate," specifically including "claims ... asserted by the

12

DM3\1955812.2

Michigan Funds." *Id.* at pages 20-21. "Moreover, the Adversary Proceeding seeks the Court's determination of [ACE's] liabilities under the Policies, which are assets of the estate." *Id.* at page 21. Thus, the district court agreed with the Court that the controversy falls within *Central Va. Comm. College v. Katz*, 546 U.S. 356, 362 (2006) because it is "necessary to effectuate the Bankruptcy Court's in rem jurisdiction over the estate and its equitable distribution." *Id.* at pages 21-22. Finally, the District Court found that the Adversary Proceeding fell within § 106(a) of the Bankruptcy Code, because it implicated the allowance and disallowance of claims, and thus implicated §§ 502 and 503 of the Bankruptcy Code. *Id.* at pages 22-24.

### F. The Appeal to the Second Circuit

36. The District Court Order is presently on appeal to the United States Court of Appeal for the Second Circuit and oral argument was held on October 5, 2011.

### G. Pleadings Filed by James Grai

37. On September 14, 2011, James Grai submitted a letter to the Court seeking the lifting of the automatic stay, which the ACE Companies construe as reference to the Plan Injunction. *See* Docket No. 21574.

38. Subsequently, Mr. Grai, through counsel, filed the Amended Motions which listed, on Exhibit 1 thereto, 205 movants (collectively, the "Movants")[6] who seek to join in Mr. Grai's request for relief from the automatic stay/Plan Injunction.

---

[6] For the purpose of the Objection, the ACE Companies will treat the Amended Motions as seeking relief on behalf of all of the Movants but specifically reserve all rights with respect thereto.

13

DM3\1955812.2

## II.    THE OBJECTION

### A.    As To The Majority Of The Movants, The Amended Motions Implicate The Adversary Proceeding And The Claims Allowance Process And The Relief Requested Directly Conflicts With Prior Orders Of This Court And Should Therefore, Be Denied Under § 105 Of Bankruptcy Code.

39.    In pertinent part, the Amended Motions are styled to lift the automatic stay/Plan Injunction against the ACE Companies, the Michigan Defendants and General Motors Corporation ("GM") in order to permit the Movants, some of whom are parties to the notice of the Rule 5 Hearing, to pursue claims for workers' compensation benefits.

40.    Accompanying the Amended Motions was a box of exhibits (the "Exhibits"). To determine whether the relief sought in the Amended Motions could implicate the Adversary Proceeding and/or the claims allowance process in the Bankruptcy Case, the counsel has reviewed the Exhibits and Conklin Benham, P.C., the ACE Companies' workers' compensation counsel in Michigan, reviewed the relevant files maintained by the Agency. Attached hereto as Exhibit "A" is the affidavit of Walter Noeske, President, Conklin Benham, P.C. regarding his methodology and findings (the "Noeske Affidavit").

41.    As set forth in the Noeske Affidavit, 61 of the Movants (collectively, the "Not Implicated Claimants") do not have claims (*i.e.*, date(s) of alleged injury) falling within the Disputed Period but the remaining Movants (collectively, the "Implicated Claimants") including, Mr. Grai, allege dates of injury falling within the Disputed Period. *See* Exh. A. ¶ 16.

42.    The ACE Companies do not believe that anything in the Modified Plan, this Court's orders or applicable bankruptcy law prohibits the Michigan Defendants and/or GM from paying workers' compensation benefits to the Not Implicated Claimants, or any other movant who has a date of alleged injury that falls outside of the Disputed Period.

43. As to the Implicated Claimants, the ACE Companies understand that counsel for the Movants believes Movants' claims should be paid by either the Funds and/or GM (*i.e.*, without payment by the ACE Companies). Further, although the ACE Companies are named on page 1 of the Amended Notice of Motion, the Amended Motions (as opposed to the Notice) can be interpreted to seek relief from either the Fund or GM. Specifically, the Amended Motions state that "payments [to the Movants] will be the sole responsibility of either General Motors Corporation or the Michigan Self Insured Security Fund." *See* Amended Motion page 4.

44. While this may be the intention of the remaining Movants, the fact that the Implicated Claimants allege dates of injury falling within the Disputed Period creates a situation directly at odds with the Motion to Dismiss Order, the District Court Order and the Stay Order.

45. As a preliminary matter, the Stay Order specifically, *inter alia*, prohibits the Agency, Delphi and the ACE Companies from proceeding with the Rule 5 Hearing and requires the Funds to request adjournments of all pending and future cases to the extent that they involve any action to address the ACE Companies potential liability for workers' compensation coverage of Delphi in Michigan. *See* Stay Order ¶ 3.

46. It should be noted that 91 of the Movants are listed in the previously filed notice of the Rule 5 Hearing initiated by the Agency. *See* Exhibit B.

47. Accordingly, it is the position of the ACE Companies that allowing the Implicated Claimants to proceed with their claims in Michigan would be a violation of the Stay Order or, in the very least, the Funds would be required to request an adjournment of such proceeding(s) and the Agency, Delphi and the ACE Companies would have to promptly report such proceedings(s) to this Court. In effect, granting the Implicated Claimants the relief that they request would entitle (and for all practical purposes, require) the Agency to determine the issues raised by the

15

Adversary Proceeding that relate to the Bankruptcy Case and are on appeal to the Second Circuit and would be tantamount to having permitted the Rule 5 Hearing to proceed which was specifically prohibited by the Stay Order.

48. Further, if any of the remaining Implicated Claimants pursues an action against GM or the Funds Administration, it is highly likely that the ACE Companies will be joined in the case since once a proceeding commences the magistrate hearing the case may attempt to decide the coverage issues pending in the Adversary Proceeding to determine whether the ACE Companies are a responsible party. The result would then impact the claims of the Funds Administration and/or the ACE Companies in the Bankruptcy Case. These are the same factors which lead the ACE Companies to file the Adversary Proceeding and subsequently caused this Court and then the District Court to agree that the Adversary Proceeding "will make threshold decisions that will ultimately determine the validity and priority of the claims filed by the Michigan Funds and whether [ACE] will be entitled to administrative expenses." *See* Adversary Proceeding Docket No. 89 at Exh. B. page 12.

49. Accordingly, lifting the Injunction as to Implicated Claimants would not only ultimately and directly affect the Adversary Proceeding and the Bankruptcy Case but would create the precise situation that this Court sought to avoid by entering the Stay Order.

50. Section 105 of the Bankruptcy Code may be used to "'enforce and implement' earlier orders" particularly where the court retained jurisdiction to enforce them. *In re River Ctr. Holdings, LLC*, 394 B.R. 704, 711-12 (Bankr. S.D.N.Y. 2008).

51. Therefore, based on its prior orders in this Case (including, but not limited to, the Stay Order) and pursuant to § 105 of the Bankruptcy Code, this Court should not lift the Plan Injunction as to the Implicated Claimants.

16

### B. As To The Implicated Claimants, Relief Should Also Be Denied Under The *Sonnax* Factors.

52. In determining whether to grant relief from the automatic stay for cause, courts have adopted a twelve-factor test (the "*Sonnax* Factors") articulated by the United States Court of Appeals for the Second Circuit in *Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Industries, Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990).

53. Courts have applied the *Sonnax* Factors in determining whether to lift plan injunctions. *See, e.g., Grayson v. Worldcom, Inc. (In re Worldcom, Inc.)*, No. 05-5704, 2006 U.S. Dist. LEXIS 55284 (S.D.N.Y. Aug. 4, 2006).

54. The *Sonnax* Factors are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. *See In re Sonnax*, 907 F.2d at 1286.

55. All of the *Sonnax* factors "will not be relevant in every case, nor will a court accord equal weight to each element." *In re Enron Corp.*, 306 B.R. 465, 476 (Bankr. S.D.N.Y.) (citations omitted) (although the Movant asserted that specialized tribunal was necessary to hear

17

its dispute, the court found that the lack of connection to the bankruptcy case and the impact on the parties and balance of harms factors dictated that there was not cause to grant relief from the stay to pursue the action in state court where there were adversary proceedings pending before the bankruptcy court addressing the same issues that involved one of the largest assets of the debtors' estates and as such, relief would be inconsistent with the administrative needs of the bankruptcy case).

56. The Movants have asserted that several of the Sonnax factors weigh in favor of granting them relief from the Plan Injunction. However, the sole premise of the Movants' argument as to each of those factors is that they will only recover from GM or the Michigan Security Fund. *See* Amended Motions page 3-6.

57. In particular, Movants' assertion as to factors 5 (whether the insurer is covering the cost of litigation) and 6 (whether the action primarily involves third parties) is based on the assumption that workers' compensation payments "will be the sole responsibility of either [GM] or the [Fund]." *See* Amended Motion page 4.

58. While the ACE Companies (and the Debtors) agree with the Movants that the ACE Companies are not liable to them, the Michigan Defendants, as this Court is well aware, have argued to the contrary. Therefore, the Movants base their argument on a coverage issue that is disputed and is the subject of the Adversary Proceeding and currently pending before the Second Circuit.

59. As this Court explained in is Motion to Dismiss Order and as the District Court agreed, the Adversary Proceeding will ultimately determine the amount and priority of claims against the Debtors' estate. Accordingly, factors 2 (connection to bankruptcy case) and 7

DM3\1955812.2

(prejudice to other creditors) clearly weigh in favor of denying the relief requested as to the Implicated Claimants. *See, e.g., In re Enron Corp, supra.*

60.   Further, the Stay Order was entered in order to preserve the status quo while the Motion to Dismiss Order was appealed and specifically, *inter alia*, prohibits the Agency, Delphi and the ACE Companies from proceeding with respect to the Rule 5 Hearing and requires the Funds Administration to request adjournments of all pending and future cases to the extent that they involve any action to address the ACE Companies potential liability for workers' compensation coverage of Delphi in Michigan. *See* Stay Order ¶ 3. Given that the appeal to the Second Circuit is still pending and the Adversary Proceeding is not resolved, factors 1 (lack of resolution of issues) and 10 (judicial economy) also weigh in favor of denying the relief requested as to the Implicated Claimants.

61.   Finally, factor 12 (balance of harm) also weighs in favor of denial because if the Implicated Claimants' cases are permitted to proceed in Michigan, the relief that the ACE Companies sought through the Complaint will, in contravention of the Stay Order, be directly or indirectly decided by the state or administrative courts in Michigan; thereby, in effect granting the Michigan Defendants the relief that they were denied in the Motion to Dismiss Order. *See, e.g., In re Enron Corp., supra.*

62.   Accordingly, the *Sonnax* factors require that this Court deny the Implicated Claimants relief from the Plan Injunction.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

DM3\1955812.2

### III. CONCLUSION

WHEREFORE, Plaintiffs respectfully request that the Court (i) as to the Implicated Claimants, deny the relief sought in the Amended Motions and (ii) grant such other and further relief as the Court deems appropriate.

Dated: November 10, 2011

DUANE MORRIS LLP

By: /s/ *Wendy M. Simkulak*
William C. Heuer, Esquire
Wendy M. Simkulak, Esquire (WS-8945)
1540 Broadway, 14th Floor
New York, NY 10036-4086
(212) 692-1000
(212) 692-1020 (facsimile)
wcheuer@duanemorris.com
wmsimkulak@duanemorris.com

and

Lewis R. Olshin, Esquire
Margery N. Reed, Esquire
30 South 17th Street
Philadelphia, PA 19103-4196
(215) 979-1000
(215) 979-1020 (facsimile)
olshin@duanemorris.com
mreed@duanemorris.com

Counsel for the ACE Companies

DM3\1955812.2