| | |
|---|---|
| **MORRISON COHEN LLP**<br>909 Third Avenue<br>New York, New York 10022<br>(212) 735-8600<br>Andrea Fischer, Esq. | **Hearing Date: January 12, 2012 at 10:00 a.m.**<br>**Objection Deadline: January 5, 2012 at 4:00 p.m.** |

*Attorneys for Paul Feinsilver, James A. Klotz and Terrance O'Grady*

**EMMET, MARVIN & MARTIN, LLP**
120 Broadway
New York, NY 10271
(212) 238-3021
Edward P. Zujkowski, Esq.

*Attorneys for The Bank of New York Mellon, as Indenture Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DPH HOLDINGS CORP., et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Reorganized Debtors. | : | (Jointly Administered) |

**MOTION OF THE BANK OF NEW YORK MELLON, AS INDENTURE TRUSTEE,
PAUL FEINSILVER, JAMES A. KLOTZ AND TERRANCE O'GRADY
FOR PERMISSION TO PROCEED IN THE APPROPRIATE TRIBUNAL
<u>AS AGAINST THE REORGANIZED DEBTORS</u>**

The Bank of New York Mellon, as indenture trustee ("Indenture Trustee"), Paul Feinsilver ("Feinsilver"), James A. Klotz ("Klotz") and Terrance O'Grady ("O'Grady") (collectively, Feinsilver, Klotz and O'Grady are referred to as "Bondholders"), by and through their attorneys, Emmet, Marvin & Martin, LLP, on behalf of the Indenture Trustee, and Morrison Cohen LLP, on behalf of the Bondholders, hereby move this Court ("Motion") for the entry of an order, allowing the Indenture Trustee and the Bondholders to proceed in the appropriate tribunal

#3033480 v7 \022193 \0001

to enforce the provisions of the Bond (as defined below) as against the Reorganized Debtors. In support of the Motion, the Indenture Trustee and the Bondholders respectfully state as follows:

## PRELIMINARY STATEMENT

1.     In this matter, the "ride through" doctrine, as well as applications of principles of equity, fundamental fairness and equitable estoppel should result in permission for the Indenture Trustee to sue the Reorganized Debtors, in the appropriate tribunal to enforce certain bonds issued by Trumbull County, Ohio under an Indenture dated July 1, 1994 (the "Bonds"), as the Bond were not discharged in the bankruptcy. The Bonds were issued By Trumbull County in 1994 to finance a loan to GM. GM later assigned the loan to Delphi. During the pendency of this proceeding, the Debtors continued to pay scheduled interest on the Bonds. When contacted on behalf of the Bondholders, Delphi's Director of Corporate Finance, Albert VanDenBergh ("Mr. VanDenBergh"), represented that the bonds were a post-petition contractual obligation of the Debtors and that, as a result, would be paid in full. Indeed, the Bonds continued to be paid during both the GM and Delphi bankruptcies.

2.     However, years after the Debtors began paying post-petition interest payments on the Bonds, the Debtors unilaterally, without notice to the Holders of the Bonds, stopped making interest payments on the Bonds. Additionally, months after the initial communication with Mr. VanDenBergh, Debtors first informed the Bondholders that the Reorganized Debtors would not continue to make payments on the Bonds.

3.     An initial review of the docket, relevant pleadings, schedules, petition and affidavits of service indicates that the Bonds were not scheduled as a prepetition obligation of the Reorganized Debtors, nor did the Indenture Trustee, in its capacity as Indenture Trustee, or the

#3033480 v7 \022193 \0001

Bondholders themselves ever receive notice of the Bar Date (defined below). The Reorganized Debtors made all pre-petition payments due on the Bonds from the date that the obligation was assumed. The failure to schedule these Bonds as a pre-petition liability; the acknowledgment of the debt by Mr. VanDerBergh; the continued payments of these Bonds post-petition; and the failure of the Debtors to specifically reject obligations under the Bonds in the Chapter 11 case result in the Bonds surviving the Chapter 11 as a viable obligation of the Reorganized Debtors.

4. By filing this Motion, the Indenture Trustee and the Bondholders respectfully request that this Court allow the Indenture Trustee and the Bondholders to pursue their clam for payment of the Bond in the appropriate tribunal, under the "ride through principle", or alternatively, direct the Reorganized Debtors to make payment of all principal and interest due under the Bonds.

5. The Debtors were clearly on notice of the Bonds – as they were making payments during the pendency of this proceeding. Indeed, any delay in enforcing the rights of the Bondholders was occasioned by the belief that the Bonds would continue to be paid – a belief that was based in part on the representation of the Director of Corporate Finance of the Reorganized Debtors. Therefore, a law suit to enforce the Bonds would cause no material prejudice to the Reorganized Debtors, and the length of delay and impact on the proceedings is negligible. Initially the Bonds were getting paid, when such payment stopped, the Indenture Trustee on August 20, 2010 demanded payment on the Bonds. Months later, DPH Holdings, Inc. filed a motion to enforce the plan injunction solely on procedural grounds, which was settled by a stipulation and order requiring the Indenture Trustee to obtain leave of Court prior to taking further action in these proceedings. The Indenture Trustee and the Bondholders hold obligations

#3033480 v7 \022193 \0001

of the Reorganized Debtors which have not been discharged, and based upon the equities of the matter, should be entitled to their distribution, either in another tribunal, or in this Court.

## STATEMENT OF FACTS

6. On July 1, 1994, Trumbull County entered into a Loan Agreement with GM (the "1994 Loan Agreement"). Under the 1994 Loan Agreement Trumbull County agreed to loan GM the proceeds of the sale of Bonds which were issued under an Indenture dated July 1, 1994 between the County of Trumbull as issuer and the predecessor to the Indenture Trustee (the "Indenture") GM agreed to pay principal, premium and interest due under the Loan Agreement to provide the cash flow to pay principal and interest due under the Bonds. All of Trumbull County's rights under the 1994 Loan Agreement were assigned to the predecessor to the Indenture Trustee.

7. On January 1, 1999, GM and Delphi Automotive Systems LLC ("DAS LLC") entered in to an assignment and assumption agreement pursuant to which GM assigned the 1994 Loan Agreement to DAS LLC (the "1999 Agreement"). DAS LLC assumed all of GM's rights, obligations and benefits under the 1994 Loan Agreement. DAS LLC agreed to indemnify GM for losses relating to the 1994 Loan Agreement. DPH Holdings is the successor to DAS LLC with respect to the 1999 Agreement.

8. On October 8 and 14, 2005, the Debtors filed voluntary petitions for reorganization under chapter 11 of title 11 of the United States Code.

9. The bar date for filing proofs of claim in these cases was July 31, 2006 (the "Bar Date").

10. Upon information and belief, the Bonds were not scheduled, nor were the

Indenture Trustee or Bondholders given notice of the Bar Date.

11. The Bondholders hold 92.73% of the Bonds.

12. In October 2009, the Bondholders inquired about the status of the Bonds to Mr. VanDenBergh, Director – Corporate Finance, Capital Markets, Capital Planning and Financial Risk Management of the Debtors.

13. On October 29, 2009, Mr. VanDenBergh represented that the Bonds were an **allowed secured claim**, which would be paid in full with accrued interest over a 7 year period from the date of emergence. See email exchange between Jay Abrams and Mr. VanDenBergh, a true and correct copy of which is annexed hereto as Exhibit A.

14. Payments were made on the Bonds from the Petition Date through July of 2009, long after the Bar Date had passed, at which point, such payments unilaterally ceased.

15. DAS LLC did not make the interest payment due on January 2, 2010.

16. By letter of January 21, 2010 (a true and correct copy of which is annexed hereto as Exhibit B), Mr. VanDenBergh advised the Trustee that:

> "Delphi Automotive Systems, LLC is obligated to make payments with respect to the Trumbull Bonds only to the extent that General Motors Corporation is obligated to make such payments. As a result of the General Motors Corporation bankruptcy and the pre-petition nature of the Trumbull Bonds, legal counsel has advised that Delphi Automotive Systems, LLC will not make the January 2, 2010 payment on the Trumbull Bonds."

17. In response to Mr. VanDenBergh's letter, the Trustee requested an explanation (see letter from Mr. Gary Bush, (a true and correct copy of which is annexed hereto as Exhibit C) and initiated its own efforts to determine the actual obligor on the Bonds and the facts and circumstances relating to the continuing payment of interest due on the Bonds by DAS LCC.

18. In August of 2010 the Trustee obtained a copy of the 1999 Agreement from an

#3033480 v7 \022193 \0001

5

advisor to New GM and, based upon the clear and unambiguous terms of such agreement, made a demand for payment of such Bonds upon the Reorganized Debtors (see demand letter, a true and correct copy of which is annexed hereto as Exhibit D).

19.     On June 22, 2010, eight months after Mr. VanDenBergh's representations to the contrary, he first informed the Bondholders that DPH Holdings would not continue to pay on the Bonds. See email from Mr. VanDenBergh dated June 22, 2010, a true and correct copy of which is annexed hereto as Exhibit E.

20.     On November 25, 2010, DPH Holdings, Inc. made a motion to enforce the plan injunction, based on procedural grounds.

21.     In December 2010, the Indenture Trustee and the Reorganized Debtors entered into a stipulation whereby the Indenture Trustee agreed to take no further action with regard to the Bonds without leave of Court.

22.     Upon information and belief, no notice of the plan or ballots were received by the Indenture Trustee, in its capacity as Indenture Trustee, nor was any notice received by the Bondholders in this matter.

23.     Given the stipulation, the Indenture Trustee and the Bondholders now request that this Court allow them to proceed in the appropriate tribunal to enforce the Bond payment as against the Reorganized Debtors.

## ARGUMENT

## THE INDENTURE TRUSTEE AND BONDHOLDERS SHOULD BE ALLOWED TO PROCEED IN STATE COURT OR THIS COURT SHOULD RECOGNIZE THE LIABILITY AS AN ALLOWED SECURED CLAIM

24.     It appears that the Bonds were never scheduled as a liability of DPH Holdings. Neither the Trustee nor the Bondholders ever received notices in their capacity as creditors with respect to the Bonds; however, post-petition interest payments were made for a period of almost four years.

25.     The Bonds were not cancelled in the Chapter 11 case, therefore, the Indenture Trustee and Bondholders should be allowed to pursue all remedies available to them outside of the bankruptcy proceeding. The parties simply cannot be bound by a proceeding to which they received no notice and during which proceeding their claims continued to be paid. As the Indenture was not scheduled, it simply rides through the bankruptcy process. *See In re JZ L.L.C.*, 371 B.R. 412, 422 (8th Cir. BAP 2007) (The Code leaves open the "no action" possibility of neither assuming nor rejecting an executory contract); *In re Hernandez*, 287 B.R. 795, 802 (Bankr. D. Ariz. 20020 (the ride through doctrine applies any time a debtor fails to address an executory contract, whether the failure is inadvertent or intentional).

26.     Moreover, this doctrine applies even if the contract is not executory by nature:

> The absence of a bright-line boundary between executory and non-executory contracts creates a zone of uncertainly that would be a trap for the unwary without the 'ride-through' alternative.

JZ at 425.

27.     In this case, due process demands that the Indenture Trustee and Bondholders be allowed to pursue their claims, whether in this tribunal, or in a state court. Their claims were

#3033480 v7 \022193 \0001

unaffected by the bankruptcy process, as their claims were not scheduled and they never received notice of such process.

28. Finally, the Reorganized Debtors are estopped from stating that the Bondholders have no claim, as in email exchanges with Mr. VanDenBergh, he acknowledged the validity of the claim and stated that the Reorganized Debtors would continue to pay on the Bonds.

## **CONCLUSION**

29. In the instant case, the Debtors failed to schedule the Bonds; continued to make payment on the Bonds post-petition; and never presented any notice to the Trustee or the Bondholders that they would discontinue to make payment on the Bonds.

30. Most significantly, the Reorganized Debtors affirmatively represented to the Bondholders the Bonds were an allowed secured claim, and that payment would continue to be made on them. The Reorganized Debtors should be estopped from now stating otherwise.

31. The Bondholders had no reason to speculate or surmise that the Reorganized Debtors would suddenly stop paying the Bonds and the Reorganized Debtors had no legal right to cease payment.

32. To allow the Reorganized Debtors to simply walk away from their obligation contrary to law and the equities of this case.

#3033480 v7 \022193 \0001

WHEREFORE, for the reasons set forth above, the Indenture Trustee and Bondholders request that this Court allow them to proceed in the appropriate tribunal to enforce the provisions of the Bond as against Reorganized Debtors, or, alternatively, direct the Reorganized Debtors to continue to make all payments of principal and interest due under the Bonds, and such other and further relief as this Court deems appropriate.

Dated: New York, New York
December 9, 2011

**MORRISON COHEN LLP**
*Attorneys for Paul Feinsilver, James A. Klotz
And Terrance O'Grady*


By: /s/ Andrea Fischer
   Andrea Fischer
   909 Third Avenue
   New York, New York 10022
   (212) 735-8600

**EMMET, MARVIN & MARTIN, LLP**
*Attorneys for The Bank of New York Mellon,
 as Indenture Trustee*


By:/s/ Edward P. Zujkowski
   Edward P. Zujkowski
   120 Broadway
   New York, NY 10271
   (212) 238-3021

#3033480 v7 \022193 \0001