**Hearing Date And Time:  December 21, 2011 at 10:00 a.m. (prevailing Eastern time)**

BUTZEL LONG, a professional corporation
150 West Jefferson, Suite 100
Detroit, Michigan 48226
Cynthia J. Haffey
Bruce L. Sendek
David J. DeVine
Telephone: (313) 225-7000
Facsimile: (313) 225-7080
*Attorneys for Reorganized Debtors*

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - -    x
                                                           :
        In re                                              :    Chapter 11
                                                           :
DPH HOLDINGS CORP., et al.,                                :    Case No. 05-44481 (RDD)
                                                           :
Reorganized Debtors.                                       :    (Jointly Administered)
                                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -    x
```

**REPLY IN SUPPORT OF MOTION FOR ORDER PURSUANT TO 11 U.S.C. §§ 105(d), 544, 547, AND 548 AND FED. R. BANKR. P. 7016 ESTABLISHING (I) DATES FOR HEARINGS REGARDING ADVERSARY PROCEEDINGS AND (II) NOTICES AND PROCEDURES <u>GOVERNING ADVERSARY PROCEEDINGS</u>**

("Procedures Motion Reply")

In support of its Motion For Order Pursuant To 11 U.S.C. §§ 105(d), 544, 547, And 548 And Fed. R. Bankr. P. 7016 Establishing (I) Dates For Hearings Regarding Adversary Proceedings And (II) Notices And Procedures Governing Adversary Proceedings (Docket No. 21701) (the "Motion"), DPH Holdings Corp. ("DPH Holdings"), on behalf of itself and its affiliated reorganized debtors in the above-captioned cases (together with DPH Holdings, the "Reorganized Debtors"), formerly known as Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, former debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submits this reply (the "Procedures Motion Reply") and respectfully represents as follows:

## INTRODUCTION

1.      At the October 24, 2011 hearing (the "Hearing") on various notice issues relating to the Extension Motions and their impact, if any, on the Reorganized Debtors' Motion to Amend,[1] the Court asked the parties to devise a proposed procedures order to govern certain remaining stages of these Adversary Proceedings.  To accomplish this end, counsel for numerous defendants represented that they would work towards designating spokespersons to work with the Reorganized Debtors on devising that order.  (Oct. 24 Hr'g Tr., p. 82.)

2.      Ultimately, the defendants never appointed such a spokesperson.  Accordingly, on November 4, 2011, with the Court's understanding, the Reorganized Debtors filed their Motion along with their proposed procedures order (the "Proposed Order").  The Proposed Order prescribes hearing procedures for each of the three categories of remaining Adversary Proceedings (*i.e.*, those subject to a Default Hearing[2], Rule 15 Hearing[3], or Merits Hearing[4]) and contemplates a streamlined set of procedures in advance of each hearing designed to expedite the resolution of each matter, to reduce the financial burden on all parties, and to reduce the use of judicial resources and the burden on this Court.  In so doing, the Reorganized Debtors' Proposed Order provides for both a meet-and-confer and non-binding mediation before each Rule 15 Hearing and Merits Hearing so as to encourage the consensual resolution of each Adversary Proceeding.  Importantly, the Reorganized Debtors largely modeled these procedures after the

---

[1] Capitalized but undefined terms used in this Procedures Motion Reply have the meanings ascribed to them in the Motion.

[2] A Default Hearing is to be scheduled for all actions where a defendant has not appeared or otherwise filed an answer or responsive motion to the Reorganized Debtors' complaint.

[3] A Rule 15 Hearing is to be scheduled for those actions where a defendant has filed a timely motion to dismiss or opposition brief in response to the Reorganized Debtors' Motion to Amend.

[4] A Merits Hearing is to be scheduled for all actions where a defendant has not filed a timely motion to dismiss or opposition brief in response to Debtors' Motion to Amend.

claims procedures order, which has facilitated the successful and efficient resolution of roughly

20,000 claims in these captioned chapter 11 cases.

3.        Notwithstanding the proven effectiveness of the Reorganized Debtors' proposed

procedures, however, 23 defendants (collectively, the "Responding Defendants")[5] have objected

to the Proposed Order, alleging that it is one-sided and that the Reorganized Debtors have

eschewed any opportunity for the defendants' input.  The Responding Defendants have proposed

a different procedures order (the "Defendants' Proposed Order") that, among other things, fails

to address the several classifications of defendants (*i.e.*, those subject to a Default Hearing, Rule

15 Hearing, or Merits Hearing) and contemplates a process that increases the burden on this

Court and the cost to all parties.  A comparison version of Defendants' Proposed Order against

the Proposed Order (collectively, the "Orders") is attached to this Procedures Motion Reply as

**Exhibit B**.

4.        In reality, Defendants' Proposed Order is both incomplete and imbalanced.  By

way of example, it omits any procedure for a Merits Hearing even though the Court has already

held that the Reorganized Debtors are now entitled to litigate certain Adversary Proceedings on

the merits, and to propose a scheduling order for those actions.[6]  (Oct. 24 Hr'g Tr., pp. 83-84.)

---

[5] The Responding Defendants and their corresponding adversary proceeding numbers are identified in **Exhibit A** attached and include the defendants in two Adversary Proceedings being prosecuted by Togut Segal & Segal. **Exhibit A** does not include the response filed by defendant Globe Motors, however, because that Adversary Proceeding has since been resolved.

[6] At the October 24, 2011 hearing, this Court stated that "I have no problem with the debtors seeking a default judgment on the others and then as far as the – it's not clear to me, the twenty-one where there weren't objections to the Rule 15 motion, were there objections or motion to dismiss though on those remaining twenty-one?  If not. we should have a pretrial conference and move and deal with discovery on those." (Oct. Hr'g Tr., pp. 83-84.)  Or, "if the parties just want to agree to a pretrial order and move into the discovery phase on those, that's fine…"  (*Id.* at 84.)

3

Further, Defendants' Proposed Order diminishes the prospect of consensual resolution of these Adversary Proceedings during the Rule 15 Hearing process by making non-binding mediation merely optional.[7] It also postpones each meet-and-confer until after the Reorganized Debtors (but *not* the Responding Defendants) have made extensive and irrelevant disclosures concerning the ultimate *merits* of each Adversary Proceeding rather than the limited issues pertinent to the Rule 15 Hearing. Such disclosures are not only unnecessary and unjustifiably burdensome, but they are also tremendously overbroad, as is the scope of discovery that the Responding Defendants propose for each Rule 15 Hearing. As the Court has already made clear, the limited question to be resolved at the Rule 15 Hearings is whether the Court should vacate the Extension Orders as to certain defendants based primarily on prejudice. The parties' focus in advance of the Rule 15 Hearings should therefore be reasonably directed to that issue, and the Reorganized Debtors' Proposed Order efficiently advances that objective.

5.    Each of the above aspects of Defendants' Proposed Order is discussed in greater detail below, as are various other proposals by the Responding Defendants concerning the Default Hearing procedures and the timing and scheduling of hearings and related deadlines. Given the innumerable differences between the Orders, however, the body of this Procedures Motion Reply will address only significant sections of the Defendants' Proposed Order. Further arguments advanced by the Responding Defendants appear in the lead briefs listed on the chart

---

[7] The Responding Defendants also seek to alter the mediation procedures in the Proposed Order by, among other things, (a) striking the provision contemplating a list of pre-approved mediators, (b) changing the location of the mediation to an agreed upon location or the Southern District of New York, (c) removing the provision allowing the Reorganized Debtors' counsel to attend the mediation where the defendants fail to send their own attorneys, (d) limiting the time of mediation to 6 hours, rather than just one day, and (e) removing the threat of sanctions for those parties that fail to participate in mediation in good faith. All of these provisions of the Proposed Order were previously approved by this Court in the Claims Objection Procedures Order (Docket No. 6089). (See Claims Objection Procedures Order ¶ g(i)-(ix).)

in the attached **Exhibit C**.  The Reorganized Debtors have scheduled a meeting with the Responding Defendants to attempt to resolve the parties' differences as to the Proposed Order consensually, but to the extent that meeting is unsuccessful, the Reorganized Debtors urge the Court to reject Defendants' Proposed Order and enter the Proposed Order in each of the remaining Adversary Proceedings.

## ARGUMENT

**A.    The Reorganized Debtors Attempted to Negotiate a Mutually Acceptable Order with an Organized Group of Defendants.**

6.    Throughout the Responding Defendants' briefs is a recurring allegation that the Reorganized Debtors somehow plotted to avoid negotiating their Proposed Order with the Defendants.  This is hardly the case.

7.    At the Hearing, upon the suggestion of this Court, the defendants represented that they believed that it was in their best interest, at this time, to appoint a "steering counsel" to negotiate a proposed procedures order with the Reorganized Debtors. (Oct. 24 Hr'g Tr., p. 77.) In light of this representation, the Reorganized Debtors contacted defense counsel numerous times after the Hearing to determine who, if anyone, was serving as a defendant spokesperson.[8] In response, the defendants indicated they had not appointed any spokespersons, and they did not intend to do so.  (**Exhibit D**.)  As a result, the Reorganized Debtors were effectively tasked with achieving consensus on their Proposed Order through separate negotiations with 57 remaining active defendants.

8.    Believing this to be unmanageable, the Reorganized Debtors sent an October 31,

---

[8]  Ms. Haffey, counsel for the Reorganized Debtors, made several attempts to communicate with a defense group steering committee.  (See e-mails dated October 31, November 1 and November 2, 2011, attached as **Exhibit D.**) Ms. Haffey also attempted to assist the defendants in forming such a committee by providing all defense counsel with each other's names and e-mail addresses.  (*Id.*)

2011 letter to the Court explaining that they "ha[d] no practical means of discussing the[ir] [proposed] order and reaching an agreement" with the defendants.  (**Exhibit E**.)  They thus stated that absent the defendant's formation of a "steering committee with whom [the Reorganized Debtors could] . . . discuss the proposed order," and "unless otherwise directed by the Court," the Reorganized Debtors would "file a motion for entry of [their] proposed order and notice it for hearing."  (*Id.*)

9.      On November 1, 2011, the Court responded to the Reorganized Debtors' letter via e-mail, instructing that "[i]f [the Reorganized Debtors did] not ha[ve] a steering committee response by the close of business Friday [November 4]," they should "file the motion described in [their] letter by notice of presentment and provide that if there are any objections by the proposed presentment date the hearing will be on the next omnibus day."  (**Exhibit F**.)

10.      Three days later, and just hours before the Court-directed deadline, counsel for Victory Packaging sent a letter to the Court accusing the Reorganized Debtors of playing "hide the ball" by failing to elicit comments on their proposed order from an unorganized group of defendants.  (**Exhibit G**.)  In that same letter, however, Victory Packaging's attorney confirmed that even then—11 days after the Hearing—the defendants *still* were not prepared to negotiate with the Reorganized Debtors as an organized group.  (*See id.*)  The Reorganized Debtors therefore repeated their position in a brief response letter to the Court (**Exhibit H**) and went on to timely file their Motion.[9]

11.      Importantly, to allow the defendants even more time to form a steering committee

---

[9] Victory Packaging's allegations are unfounded.  As stated in footnote 7 above, the Reorganized Debtors made numerous attempts to negotiate a proposed order with a defendant steering group.  (**Exhibit D**.)  Moreover, while certain defense counsel continually represented that defendants were not working together cooperatively and therefore could not negotiate as a group, the Reorganized Debtors learned that a significant number of defendants were in fact holding conference calls and communicating by e-mail.  (**Exhibit I**.)

and comment on the Proposed Order, the Reorganized Debtors scheduled the hearing for December 21, 2011. Nonetheless, in the weeks that followed, no formal steering committee contacted the Reorganized Debtors. Instead, on November 30, 2011, Victory Packaging's attorney purported to contact the Reorganized Debtors on behalf of a "group" of defendants, but he noted he still had not determined how many defendants were willing to "sign on" to the form of order he was proposing. Thus, not knowing whether this defendant "group" included two, ten, or thirty defendants, the Reorganized Debtors asked Victory Packaging's attorney to identify the "group" he was claiming to represent. (**Exhibit J**.) The Reorganized Debtors received no response.

12.     On December 7, 2011, the Responding Defendants then filed their responses to the Motion (the "Responses"). Contrary to their previous representations to the Reorganized Debtors, the Responding Defendants confirmed in their Responses not only that they had been working together, but also that they had been doing so *extensively*. (*See, e.g.*, Mubea, Inc.'s Response to Reorganized Debtors' Motion, p. 3) ("***Defendant has worked with other defendants in the preference adversary proceedings to come up with a proposed order that addresses the issues and concerns raised above.***" (Emphasis added).) Three Responding Defendants— Methode Electronics, Victory Packaging, and Spartech—filed substantially identical proposed orders,[10] and the remaining 20 Responding Defendants joined in those orders and made essentially the same arguments.

13.     From the above facts, it is apparent that the Responding Defendants have never been interested in meaningfully negotiating a joint order with the Reorganized Debtors. Thus, to

---

[10] Victory Packaging's and Methode Electronics' proposed orders are identical, while Spartech's order differs only in that it corrects an inaccurate paragraph number reference.

the extent there are now two competing versions of the proposed procedures order, this is necessarily by the Responding Defendants' design.

**B. The Substantive Flaws in Defendants' Proposed Order**

14.    Not only have the Responding Defendants mischaracterized the events since the October 24 Hearing, but their substantive proposals for the Orders are seriously flawed.  Most significantly, the Responding Defendants have overlooked the fact that there are three categories of remaining Adversary Proceedings—those subject to Default Hearings, those subject to Rule 15 Hearings, and those subject to Merits Hearings.  As the Court made clear at the October 24 Hearing, the Reorganized Debtors are now permitted to move forward with their litigation against each category of defendants.  The Proposed Order accounts for this fact, prescribing procedures not only for each of the three types of hearings, but also for Rule 12(b) Hearings after the filing of the Reorganized Debtors' amended complaints.

15.    In contrast, Defendants' Proposed Order is tailored almost exclusively to those limited Adversary Proceedings in which the defendants opposed the Reorganized Debtors' Motion to Amend.  Among other things, it omits the Merits Hearing and 12(b) Hearing procedures altogether, and it also materially alters the scope and design of the Rule 15 Hearing process.

16.    To understand the deficiencies in the Responding Defendants' proposals, it is first necessary to consider the Responding Defendants' primary objections to the Proposed Order. These include the following:

(A)    the proposed timelines for the hearings in the Reorganized Debtors' Proposed Order do not afford the parties adequate time to meet the various deadlines preceding each hearing;

8

(B)    the Proposed Order is overreaching in that it prescribes a procedure for the trial of these Adversary Proceedings on the merits even though such trials may be moot depending on the outcome of each Rule 15 Hearing;

(C)    the Reorganized Debtors should not have the unilateral right to schedule and adjourn each hearing;

(D)    the scope of discovery in advance of each Rule 15 Hearing is impermissibly narrow, as is the scope of each Rule 15 Hearing; and

(E)    the parties should not be required to engage in non-binding mediation before each Rule 15 Hearing.

17.    The Reorganized Debtors will address each of these assertions in turn below, together with a limited number of other objectionable aspects of the Defendants' Filings.

### 1. The Reorganized Debtors' Proposed Hearing Schedule

18.    In their Proposed Order, the Reorganized Debtors deliberately included a condensed but achievable timeline for each hearing and pre-hearing deadline.  Their reason for doing so was two-fold.  First, at the October 24, 2011 Hearing, the Court conveyed an expectation that the parties would engage in "limited discovery" and then participate in Rule 15 Hearings in "February or March."  (Oct. 24 Hr'g Tr., p. 79.).  The Reorganized Debtors not only sought to satisfy the Court's expectations, but they also believed the defendants would be receptive to such a timeline.  Indeed, it is the *defendants* who have consistently objected to the delayed resolution in this litigation, and certain of the Responding Defendants have even gone so far as to blame **this Court** for failing to adjudicate these Adversary Proceedings before now.  In the words of Wells Fargo, ***"[i]t is incomprehensible that this Court has come this far without dismissing these cases which were not served until some four and half [sic] years following the***

9

*petition date.* …The amount of time afforded to these Debtors' [sic] under the guise of Rule 4(m) is unprecedented."[11]  Despite these realities, the Responding Defendants now complain that "the deadlines in the Reorganized Debtors [sic] proposed order are far too short."  (Methode Electronics, Inc.'s Response to Reorganized Debtors' Motion, p. 2.)  Specifically, the Responding Defendants take issue with the 14-day period after entry of the Proposed Order in which the Rule 15 defendants must file and serve their prejudice declarations.  (*Id.*)  They also take issue with the 98-day period for completing discovery, briefing, mediation and the Rule 15 Hearing.  (*Id.* at pp. 2-3.)  The Responding Defendants instead propose an extended time frame for Rule 15 Hearing deadlines, suggesting, among other things, that the hearing be held 119 days after scheduling rather than 98 days as the Proposed Order contemplates.  This is inconsistent with the Responding Defendants' desire to move these matters forward as promptly as possible.

### 2.  The Importance of Merits Hearing Procedures

19.    The Responding Defendants also object to the Proposed Order on the grounds that its proposed Merits Hearing procedures are supposedly premature and potentially moot.  The Responding Defendants instead suggest that the Court should postpone implementing such procedures until the completion of the Rule 15 Hearings.

20.    The Responding Defendants' argument misses a critical point—the Proposed Order addresses *all* of the Adversary Proceedings.  While the Responding Defendants may be subject to Rule 15 Hearings before facing a Merits Hearing, this is not true of all defendants.  Certain defendants did not oppose the Reorganized Debtors' Motion to Amend or did not move to dismiss the Reorganized Debtors' complaints.  As to those defendants (collectively, the "Merits Hearing Defendants"), this Court has already requested that the parties "have a pretrial

---

[11] Wells Fargo Bank, N.A.'s Objection to the Motion, p. 4 (Emphasis added).

conference . . . and/or just if the parties just want to agree to a pretrial order and move into the

discovery phase on those, that's fine." (Oct. 24 Hr'g Tr., pp. 83-84.) Consistent with this

instruction, and in an effort to avoid having multiple governing procedures for the remaining

Adversary Proceedings, which would be difficult for the parties and this Court to manage, the

Reorganized Debtors have incorporated pretrial and Merits Hearing procedures into a single

comprehensive Proposed Order.

21.    Significantly, no Merits Hearing Defendant has objected to the proposed Merits

Hearing procedures, and such procedures should be a part of the Court's final procedures order

to ensure the uninterrupted litigation of the Adversary Proceedings against the Merits Hearing

Defendants.

22.    Additionally, as to even the Responding Defendants, there is no sound reason for

postponing the implementation of Merits Hearing procedures. The Responding Defendants' sole

objection to the Merits Hearing procedures is that post-Rule 15 Hearing procedures may be moot

in that "[i]f the Reorganized Debtors' Motion to Amend is denied, these cases will be over."[12]

(See, e.g., Methode Electronics, Inc.'s Response to Reorganized Debtors' Motion, p. 2.)

Notwithstanding this assertion, the fact remains that at least *some* of the Responding Defendants

will be required to litigate these Adversary Proceedings on the merits. The Court has already

refused to deny the Reorganized Debtors' Motion to Amend on a global basis, stating that "[t]he

record is not such that it would lead me simply to deny the Rule 15 motion today on the basis of

---

[12] While certain Responding Defendants also suggest that their consent to the Merits Hearing procedures in the Proposed Order would waive any jurisdictional arguments available to them under *Stern v. Marshall*, 131 S. Ct. 2594 (2011) and *Developmental Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 2011 WL 5244463, at *7 (S.D.N.Y. Nov. 2, 2011), the Reorganized Debtors disagree that such cases strip this Court of jurisdiction to adjudicate the Adversary Proceedings. (*See, e.g.*, Methode Electronics, Inc.'s Response to Reorganized Debtors' Motions, p. 3.) For this reason, the Reorganized Debtors disagree with all sections of Defendants' Proposed Order that suggest this Court lacks, or has only limited, jurisdiction over these Adversary Proceedings.

any of the four factors that I need to consider when evaluating such a motion." (Oct. 24, 2011 Hr'g Tr., p. 75.) Moreover, as to the issue of individualized Rule 15 Hearings, the Reorganized Debtors maintain that few, if any, of the Responding Defendants will ultimately succeed in establishing the degree of prejudice necessary to warrant denying the Motion to Amend.

23.    For these reasons, the failure to implement Merits Hearing procedures at this juncture would be both inefficient and prejudicial to the Reorganized Debtors. Not only would it delay the resolution of the Adversary Proceedings against the Merits Hearing Defendants, but it would also force many of these same Responding Defendants to return before the Court after their Rule 15 Hearings  (which, incidentally, will not all end on the same date) to address the same procedural questions at issue now. The Proposed Order should be entered in its entirety.

### 3.  The Reorganized Debtors' Right to Schedule and Adjourn Hearings

24.    The Responding Defendants next object to the Proposed Order on the grounds that it allows the Reorganized Debtors to schedule and adjourn hearings unilaterally. Not only is this objection at odds with the Responding Defendants' concern that the Reorganized Debtors' proposed hearing schedule is too condensed (*i.e.*, the defendants would seemingly find adjournments unobjectionable for that reason), but it also turns on a mischaracterization of the reason for this procedure. Indeed, the scheduling flexibility afforded to the Reorganized Debtors is not a ploy to tilt the procedural playing field in favor of the Reorganized Debtors; it is a necessary mechanism to facilitate the orderly resolution of the Adversary Proceedings.[13]

25.    Unlike the Responding Defendants, which have only their own Adversary Proceedings to litigate, the Reorganized Debtors must ensure the continual progress of more than

---

[13] This Court has previously approved nearly identical adjournment procedures in the Claims Objection Procedures Order, which provides that "[t]he Debtors, in their sole discretion, are authorized to further adjourn a hearing scheduled in accordance herewith . . . ." (Claims Objection Procedures Order ¶ 9(a)(ii).)

55 Adversary Proceedings.  The Reorganized Debtors faced similar administrative challenges in the claims context and efficiently resolved a great volume of claims by exercising the very scheduling authority proposed in the Reorganized Debtors' Proposed Order.  As the Court is aware, these procedures proved remarkably successful, and for that reason, the Reorganized Debtors at the October 24 Hearing proposed implementing comparable procedures in the Adversary Proceedings.

26.     These proposed scheduling rights are imperative for several reasons.  First, as the Court noted at the October 24 Hearing, its schedule is growing increasingly tight, and the scheduling of each Rule 15 Hearing is likely to be logistically complex.  (Oct. 24 Hr'g Tr., p. 78 ("Obviously, thirty-six hearings is going to take some time for me, even if they are limited to say a half a day but I am prepared to do it . . . .").)  For this reason, if a Rule 15 Hearing is adjourned on one date, even upon mutual agreement of the parties, there will likely not be time in the Court's schedule on the following date to hear two initially-scheduled half-day hearings *and* the adjourned hearing.  In circumstances exactly like these, which have occurred frequently in the claims context, the right of the Reorganized Debtors to adjourn additional defendants' hearings is critical.

27.     Additionally, the fact remains that the Reorganized Debtors are going to be juggling multiple Rule 15 Hearings simultaneously.  It is not only possible, but likely, that the certain hearings will become more time-consuming to prepare and conduct than the parties initially anticipated.  In those instances, the Reorganized Debtors' right to limit the number of hearings it is handling at any given time is a logistical necessity.  The Responding Defendants have all but confirmed this reality in their Responses by complaining that, as to only *their own* Adversary Proceedings, they require more than the initially-proposed time periods to satisfy each

Rule 15 Hearing deadline.

28.    Finally, the Reorganized Debtors note that the adjournment authority that their Proposed Order affords them is not unlimited.  Absent agreement from the Defendants or an order from the Court, the Reorganized Debtors may not adjourn any hearing for more than 180 days, meaning the proposed scheduling mechanism is not akin to a right to postpone a defendant's hearing indefinitely.  Moreover, these rights are further confined by the Reorganized Debtors' obligations of professional courtesy and good faith, as the Reorganized Debtors will entertain all reasonable requests by the defendants for adjournments of deadlines.

29.    For each of the above reasons, the Reorganized Debtors' proposed right to schedule and adjourn hearings is critical to the efficient resolution of these proceedings and should remain part of the Court's procedures order.

### 4.    The Proper Scope of Discovery and of Each Rule 15 Hearing

30.    Next, the Responding Defendants seek to modify the Reorganized Debtors' Proposed Order by providing for overly broad Rule 15 discovery, irrelevant mandatory disclosures, and poorly defined Rule 15 Hearings.  As the Responding Defendants are well aware, the Court already determined at the June 21 Hearing on the Motion to Amend that the form of the Reorganized Debtors' Proposed Amended Complaints was adequate to state a claim under Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  (June 21 Hr'g Tr., pp.  125-26, 135-36, 147, 150, 187, 207, 218-19, 220.)  As the Responding Defendants are also aware, the Court at the October 24 Hearing ruled that there was not a basis for denying the Reorganized Debtors' Motion to Amend on a global basis based merely on the issue of notice.  (Oct. 24 Hr'g Tr., p. 75.)  Thus, the Court clearly stated that "the parties should move to the next stage in this litigation which, with respect to the thirty-six

objections to the Rule 15 motion, would be a focus on individual hearings with regard to whether

I should vacate the 4(m) order which is primarily to be based upon *prejudice* . . . ." (Oct. 24 Hr'g

Tr., pp. 76-77 (Emphasis added).)

31.    Notwithstanding these rulings, the Responding Defendants now seek to require

the Reorganized Debtors (but not the Responding Defendants) to make extensive disclosures

*prior to the meet-and-confer* concerning *all* issues pertinent to their Proposed Amended

Complaints, irrespective of whether they relate to the Responding Defendants' alleged prejudice,

and before the Responding Defendants even submit their declarations setting forth the nature and

extent of their alleged prejudice.  By way of illustration, the Responding Defendants propose,

among other things, requiring the Reorganized Debtors to make mandatory disclosures on the

following:

> . . . the current status and availability of the Debtors' legacy
> accounting systems and related records, including currently
> available electronically stored information ("ESI"), information
> that may no longer be available in native form, or that otherwise
> may no longer be available as ESI or otherwise is unavailable, (B)
> the name and address, and telephone number if available, of each
> individual who is likely to have discoverable information that may
> be relevant to the proposed amended complaint . . . concerning
> such legacy accounting systems and related records, including
> information technology administrators, outside consultants and
> other persons who the Debtors may call upon to operate, manage
> or explain the Debtors' legacy accounting systems or to otherwise
> provide support for the probative value of such records, and (C) the
> identity  and availability of each employee or former employee of
> the Debtors, with their address and telephone number if available,
> who is likely to have discoverable information that may be relevant
> to a proposed amended complaint.  (Defendant Order ¶ 5(b)(i).)

32.    This proposed one-sided, overly burdensome disclosure exercise has nothing to

do with "whether [the Court] should vacate the 4(m) order . . . based upon prejudice."  Rather, it

is a transparent effort to force the Reorganized Debtors to engage in time-consuming discovery

concerning the *merits* of each Adversary Proceeding before this Court even grants the

Reorganized Debtors leave to amend their complaints. Indeed, making disclosures about the

"probative value" of the Reorganized Debtors' records is entirely contrary to the Responding

Defendants' contention that the parties have no business dealing with anything but the Rule 15

Hearing at this stage. In the Responding Defendants' own words, "[i]f the Reorganized Debtors'

Motion to Amend is denied, these cases will be over." (Methode Electronics, Inc.'s Response to

Reorganized Debtors' Motion for Order, p. 2.)

33.        *Even more importantly, the Court has already determined that the information the*

*Responding Defendants now seek is immaterial to the Motion to Amend.* At the June 21 Hearing,

in response to various defendants' contentions that the Reorganized Debtors should be required

to substantiate their accounting records further before being permitted to proceed with their

Proposed Amended Complaints, the Court made clear that that was not a "Rule 8" but instead a

"summary judgment type of issue, or a trial issue." (June 21 Hr'g Tr., pp. 125-26).

34.        In light of the Court's unmistakable rulings, it is clear that the Responding

Defendants seek nothing more than a "do-over" of the June 21 Hearing. This is improper, and

the Court should ensure that its procedures order remains consistent with the Proposed Order's

provisions concerning the scope of permissible discovery and the scope of the Rule 15 Hearing.

### 5. The Importance of Alternative Dispute Resolution Procedures

35.        The Responding Defendants also object to the Proposed Order in that it allegedly

provides for a premature meet-and-confer and should not require the parties to engage in non-

binding mediation. Accordingly, the Responding Defendants propose holding the meet-and-

confer after the Reorganized Debtors (but not the Responding Defendants) complete the

burdensome and overbroad preliminary disclosures discussed above, and they suggest no

mediation proceedings at all unless the parties elect otherwise.

36.     These proposals make little sense.  The importance of a meet-and-confer at the *beginning* of the hearing process—rather than after discovery—is that it affords parties a meaningful opportunity to resolve their dispute *before* incurring additional litigation expenses. Indeed, this process proved successful in exactly this respect in hundreds of claims matters.[14]

37.     To the extent the meet-and-confer process is not successful in resolving the Adversary Proceedings, however, the mandatory mediation process that the Reorganized Debtors have proposed is an important additional opportunity.  Not only have the Reorganized Debtors proposed a relatively inexpensive mediation process requiring minimal briefing, but the exercise of receiving a third-party's valuation of the case while each party's business representatives are present presents a substantial promise of reinvigorating any settlement discussions the parties may have had to date.  For the benefit of the parties, as well as the Court (which will hopefully have fewer hearings on its agenda as a result), this process should remain part of the ultimate procedures order.

### 6.  The Responding Defendants' Additional Proposals

38.     In addition to the proposals addressed above, the Responding Defendants also seek myriad other unwarranted changes to the Proposed Order.  For instance, the Responding Defendants inexplicably seek to modify the proposed Default Hearing procedures.  Specifically, they advocate scheduling *Rule 15* Hearings rather than Merits Trials for *all* Default Hearing defendants that the Court allows to answer or respond to the Reorganized Debtors' Complaints. (Defendants' Proposed Order ¶ 5(a)(iii).)  No Default Hearing defendant should be inherently

---

[14] The meet-and-confer process was used to resolve numerous claims without the need for litigation.  In addition, for those claims that did not settle, the meet-and-confer was used as a platform to resolve discovery issues without burdening the Court.  This Court has already approved similar procedures.  (See Claims Objection Procedures Order ¶ (c)(i)-(iv).)

entitled to this opportunity, as that determination turns on case-specific considerations. Moreover, there is simply no reason for the Responding Defendants to propose such a revision to the Proposed Order. The Responding Defendants have no interest in the Default Hearing procedures because they all purport to be subject to Rule 15 Hearings (*i.e.*, they have answered or otherwise responded to the Reorganized Debtors' complaints).

39.     Additionally, as with the Merits Trial procedures, the Responding Defendants have proposed removing from the Proposed Order any 12(b) Hearing procedures. The Responding Defendants' reason for this revision remains the same, as they seek to prevent the Proposed Order from applying to any proceeding following the Rule 15 Hearing. As set forth above, this rationale fails in that the Proposed Order should be finalized now as to *all* remaining stages of this case so as to avoid requiring the parties to appear before the Court yet again to discuss these same issues. In any event, to the extent the Responding Defendants are confident that they will prevail in their Rule 15 Hearings (which the Reorganized Debtors maintain is unlikely), they should have no objection to such procedures because "[i]f the Reorganized Debtors' Motion to Amend is denied, these cases will be over." (Methode Electronics, Inc.'s Response to Reorganized Debtors' Motion, p. 3.)

40.     Additionally, the Defendants' Proposed Order appears to make the Rule 15 Hearing itself a merely optional exercise. Indeed, paragraph 4 of Defendants' Proposed Order provides that "[t]he Court *may* [rather than shall] conduct hearings (the 'Rule 15 Hearings') regarding the Debtor's [sic] Rule 15 Motions . . . *by agreement between the Debtors and a defendant in any individual Adversary Proceeding*, at such dates and times as shall be made available by the Court, or as set by the Court if such parties cannot agree on such date(s) and time(s)." The Responding Defendants propose no alternative to the Rule 15 Hearing, and most

significantly, their proposal is clearly inconsistent with the Court's directives at the October 24

Hearing. (Oct. 24 Hr'g Tr., p. 76 ("So, I think that the parties should move to the next stage in

this litigation which, with respect to the thirty-six objections to the Rule 15 motion, would be a

focus on individual hearings with regard to whether I should vacate the 4(m) order which is

primarily to be based upon prejudice . . . .").)

41.    Finally, the Reorganized Debtors emphasize that this brief does not address all of

the Responding Defendants' revisions to the Proposed Order. In the interest of brevity, this

Proposed Motion Reply focuses on only certain revisions, which alone warrant the rejection of

Defendants' Proposed Order in its entirety.

## CONCLUSION

42.    For the reasons set forth above and in their Motion, the Reorganized Debtors

respectfully request that the Court enter the Proposed Order in each of the remaining Adversary

Proceedings. To the extent the Responding Defendants have objected to the Proposed Order,

such objections overlook those categories of cases that are not subject to Rule 15 Hearings.

Moreover, even as to the Rule 15 Hearings, the Responding Defendants have proposed unduly

burdensome discovery and hearing procedures that implicate matters entirely unrelated to the

issue now before the Court—whether the 4(m) orders should now be vacated on the grounds of

prejudice. The Proposed Order avoids each of these pitfalls, and, much like the claims

procedures order that proved so successful in the Reorganized Debtors' chapter 11 cases, it

prescribes a streamlined and cost-effective litigation process that also affords the parties a

meaningful likelihood of resolving their Adversary Proceedings consensually.

WHEREFORE the Reorganized Debtors respectfully request that the Court enter an order

(a) granting the relief requested herein and (b) granting the Reorganized Debtors such other

further relief as is just.


Dated:   Detroit, Michigan
             December 14, 2011

Respectfully submitted,

**BUTZEL LONG, a professional corporation**

s/*Cynthia J. Haffey*
  Cynthia J. Haffey
  Sheldon H. Klein
  Thomas Radom
  Bruce L. Sendek
  David J. DeVine
150 West Jefferson, Suite 100
Detroit, MI  48226-4452
(313) 225-7000
haffey@butzel.com
P57352
*Attorneys for Reorganized Debtors*

BUTZEL LONG, a professional corporation
150 W. Jefferson, Suite 100
Detroit, Michigan 48226
Cynthia J. Haffey, Esq.
Sheldon H. Klein, Esq.
Thomas Radom, Esq.
Bruce L. Sendek, Esq.
David J. DeVine, Esq.
(313) 225-7000
*Attorneys for Reorganized Debtors*


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | ) |
| DPH HOLDINGS CORP., *et al.*, | ) Chapter 11 |
| | ) |
| Reorganized Debtors. | ) Case No. 05-44481 (RDD) |
| | ) Jointly Administered |
| | ) |
| | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2011, a true and correct copy of the *Reorganized Debtors' Reply In Support Of Motion For Order Pursuant To 11 U.S.C. §§ 105(D), 544, 547, And 548 And Fed. R. Bankr. P. 7016 Establishing (I) Dates For Hearings Regarding Adversary Proceedings And (I) Notices And Procedures Governing Adversary Proceedings* was served on Defendants via the courts electronic filing system and via e-mail.


Dated: Detroit, Michigan                  /s/ Alexis L. Richards
       December 14, 2011                   Alexis L. Richards