Page 1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 05-44481-rdd

5  - - - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  DPH HOLDINGS CORP., ET AL.,

9

10              Debtors.

11

12  - - - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              300 Quarropas Street

16              White Plains, New York

17

18              November 17, 2011

19              9:10 AM

20

21  B E F O R E:

22  HON. ROBERT D. DRAIN

23  U.S. BANKRUPTCY JUDGE

24

25

Page 2

1

2    HEARING re Notices of Agendas

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:   Avigayil Roth

Page 3

1

2    A P P E A R A N C E S :

3    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

4           Attorneys for Debtors

5           155 North Wacker Drive

6           Chicago, IL 60606

7

8    BY:   JOHN K. LYONS, ESQ.

9           BRANDON M. DUNCOMB, ESQ.

10          CARL TULLSON, ESQ. (TELEPHONICALLY)

11          ALBERT L. HOGAN, III, ESQ. (TELEPHONICALLY)

12

13   DUANE MORRIS LLP

14          Attorneys for Insurers

15          30 South 17th Street

16          Philadelphia, PA 19103

17

18   BY:   LEWIS R. OLSHIN, ESQ.

19

20   DAVIDSON, BREEN & DOUD, P.C.

21          Attorneys for Michigan Claimants

22          3438 Lennon Road

23          Flint, MI 48507

24

25   BY:   MICHAEL P. DOUD, ESQ.

Page 4

1

2   UNITED STATES DEPARTMENT OF JUSTICE

3         United States Attorney's Office

4         86 Chambers Street

5         3rd Floor

6         New York, NY 10007

7

8   BY:   JOSEPH N. CORDARO, ESQ.

9

10

11   MICHIGAN DEPARTMENT OF ATTORNEY GENERAL

12         Michigan Workers' Compensation Agency

13         525 W Ottawa St

14         #500

15         Lansing, MI 48909

16

17   BY:   SUSAN PRZEKOP-SHAW, ESQ. (TELEPHONICALLY)

18

19

20   MICHIGAN DEPARTMENT OF ATTORNEY GENERAL

21         Michigan Fund Administration

22         P.O. Box 30736

23         Lansing, MI 48909

24

25   BY:   DENNIS J. RATERINK, ESQ. (TELEPHONICALLY)

1

2    DELPHI WORLD HEADQUARTERS & CUSTOMER CENTER

3          Attorneys for Workers' Compensation

4          M/C 480,410,104

5          5825 Delphi Drive

6          Troy, MI 48098

7

8    BY:   MARK A. FRAYLICK

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 6

1                    P R O C E E D I N G S

2              THE CLERK:  All rise.

3              THE COURT:  Please be seated.  Good morning.  In re

4     DPH Holdings?

5              MR. LYONS:  Good morning, Your Honor.  John Lyons,

6     Skadden Arps on behalf of the reorganized debtors.  And I have

7     my colleague, Brandon Duncomb here with me in court.  I believe

8     Mr. Hogan and Carl Tullson from my office is also on the line.

9              THE COURT:  Okay.

10             MR. LYONS:  Today, Your Honor, we have the fiftieth

11    claims hearing, as well as the twenty-second (sic) omnibus

12    hearing.  With Your Honor's permission I'll deal with the

13    fiftieth claims hearing, since there are no contested matters

14    and really just a point of notice, Your Honor.

15             THE COURT:  Okay.  That's fine.

16             MR. LYONS:  The first item on the agenda is the Ohio

17    Bureau of Workers' Compensation matter.  Your Honor, we are

18    continuing to work with the State of Ohio and to resolve that

19    claim.  We have been exchanging information with them.  It

20    does -- it requires analysis under actuarial standards, so it's

21    a fairly complicated matter.  But we are working with them, and

22    we have deferred -- or adjourned that hearing to February 16th.

23             THE COURT:  Okay.

24             MR. LYONS:  The next matter, item number 2, Calsonic

25    Kansei North America, that has been resolved pursuant to a

Page 7

1    joint stipulation at docket 21705.

2             THE COURT:  Right.  And I think I approved that last

3    week.

4             MR. LYONS:  Correct.  Okay.  On to the seventy-second

5    omnibus hearing.  The first matter is a motion by the

6    reorganized debtors to enforce plan injunction against Oldco

7    trustee.  That matter is expected to be resolved and has been

8    adjourned to the next omnibus hearing pursuant to the agreement

9    of the parties.

10            THE COURT:  Okay.  So --

11            MR. LYONS:  Second --

12            THE COURT:  -- you're well on the way to resolving

13   that one, then?

14            MR. LYONS:  Yes, Your Honor.

15            THE COURT:  Okay.

16            MR. LYONS:  That's my understanding.

17            THE COURT:  All right.  Okay.

18            MR. LYONS:  The second item is the motion by the

19   reorganized debtors to enforce judgment against Charles Tebele.

20   That is also expected to be resolved -- and I believe, actually

21   that is resolved, but I don't have the e-mail in front of me.

22   But in any event, it has been adjourned to the next omnibus

23   hearing until they can get a stipulation or a decree order to

24   Your Honor.

25            THE COURT:  Okay.

Page 8

1          MR. LYONS:  Item number 3, the motion by reorganized

2     debtors to approve settlement with the United States.  I have

3     my colleague, Carl Tullson, on the line who, with Your Honor's

4     permission, will take you through that motion.

5          THE COURT:  Okay.  That's fine.

6          MR. TULLSON:  Good morning, Your Honor.  Carl Tullson

7     from Skadden Arps on behalf of the reorganized debtors.

8          THE COURT:  Good morning.

9          MR. TULLSON:  As my colleague, John, mentioned, the

10    next item on the agenda is our motion to approve a settlement

11    between the reorganized debtors and the United States on behalf

12    of the EPA.  The settlement agreement is part of a proposed

13    global settlement between Delphi Automotive LLP or new Delphi,

14    General Motors Company, the reorganized debtors and the United

15    States.  The resolved claim is currently pending in the United

16    States district court for the southern district of New York.

17    And the action is styled Delphi Corporation, et al. v. United

18    States of America, number 08-CIV-4487, and that's referred to

19    as the Delphi FICA case in our papers.

20          THE COURT:  And in fact this settlement before me is

21    conditioned upon that settlement becoming an actual settlement

22    that's been approved by the court, right?

23          MR. TULLSON:  That's correct, Your Honor.

24          THE COURT:  The district court.

25          MR. TULLSON:  Yeah.

DPH HOLDINGS CORP., ET AL.

Page 9

1          THE COURT:  Okay.

2          MR. TULLSON:  Yes.  And --

3          THE COURT:  What is the status of that?  Has that been

4    agreed to yet, or is it pending before the district court?

5    What's the status of it?

6          MR. TULLSON:  It is pending before the district court.

7    The parties are finalizing an offer letter that resolves the

8    terms of the entire settlement.

9          THE COURT:  Okay.

10          MR. TULLSON:  And I believe Joseph Cordaro from the

11    United States Attorney's Office is in court today, and he can

12    probably give you further updates from his perspective on the

13    status of the global settlement.

14          THE COURT:  Okay.

15          MR. TULLSON:  And that case seeks a refund of

16    approximately twenty-six million dollars related to overpayment

17    of employment taxes related to lump-sum payments that were made

18    to unionized employees on the effective dates of two collective

19    bargaining agreements entered into in 1998 and in 2003.  And as

20    part of that settlement agreement -- or FICA settlement, the

21    portion before this Court at this hearing provides that the

22    United States was in allowed pre-petition environmental claim,

23    proof of claim number 14309, in the amount of $857,582.52

24    against DPH-LLC.  Rather than receiving a normal distribution

25    under the modified plan, the settlement agreement provides that

DPH HOLDINGS CORP., ET AL.

Page 10

1    the United States shall apply the allowed claim, 14309, with

2    the reorganized debtors' agreement, as a setoff against the

3    FICA refund settlement amount to be paid to the reorganized

4    debtors.

5          Your Honor, as a side note I would like to mention

6    that the FICA settlement proceeds were acquired by the buyers

7    under the master disposition agreement that this Court approved

8    in connection with the plan modification order, entered in July

9    of 2009.  And for that reason, satisfying the allowed claim

10   pursuant to a setoff against the FICA settlement proceeds is

11   not giving away any value that would otherwise go to other

12   admin claimants or general unsecured creditors.

13         Your Honor, the Department of Justice filed its

14   statement in support --

15         THE COURT:  Can I interrupt you for a second?

16         MR. TULLSON:  Sure.

17         THE COURT:  Do those parties need to sign off on the

18   FICA settlement?

19         MR. TULLSON:  Yes.  And as I did mention earlier, the

20   settlement is a settlement between new Delphi --

21         THE COURT:  Okay.

22         MR. TULLSON:  -- General Motors Company --

23         THE COURT:  All right.

24         MR. TULLSON:  -- the reorganized --

25         THE COURT:  So they're fully up to speed on this?

 1              MR. TULLSON:  Yes.

 2              THE COURT:  All right.

 3              MR. TULLSON:  Yes.  And the Department of Justice

 4   filed its statement in support of our motion on Tuesday, at

 5   docket number 21722.

 6              THE COURT:  Right.

 7              MR. TULLSON:  Unless --

 8              THE COURT:  And as I understand it, that ends the

 9   United States' ability to pull out of this settlement unless,

10   of course, the FICA settlement doesn't go through, right?

11              MR. TULLSON:  That's correct.

12              THE COURT:  Okay.

13              MR. TULLSON:  Yeah.  So unless you have further

14   questions for the reorganized debtors, I'll turn things over to

15   Joe Cordaro from the United States Attorney's Office so they

16   can address their filing, as well the comments they received in

17   response to the publication of the terms of the settlement

18   agreement before this Court and the Federal Register.

19              THE COURT:  All right.  Well, I did have one question

20   for both of you.  As I read this motion and the proposed order,

21   this motion is a little different than the normal settlement

22   motion in that you're asking me to approve the settlement as a

23   whole, as opposed to just whether the settlement's in the best

24   interest of the debtors.  Am I right about that?

25              MR. TULLSON:  That's correct.

1        THE COURT:  Okay.  All right.  But I guess I can rely

2   in large measure on the EPA's views of the settlement and the

3   comment process as far as approving it from the government's

4   perspective.  That's just an observation, not a question.

5        MR. CORDARO:  Good morning, Your Honor.  Joseph

6   Cordaro, assistant United States attorney, on behalf of the

7   United States.

8        THE COURT:  Good morning.

9        MR. CORDARO:  To respond to the Court's question to

10  Mr. Tullson on the status of the FICA matter, the matter is

11  pending before Judge Etkin of the district court.  It has been

12  stayed to allow the parties to engage in the global settlement

13  negotiations and hopefully bring them to fruition.  Inasmuch as

14  the FICA tax settlement itself is concerned, that's subject to

15  the approval of the associate attorney general.  And we haven't

16  reached that stage yet, so I didn't want the Court to perceive

17  that perhaps the settlement agreement itself was before the

18  district court --

19       THE COURT:  Right.

20       MR. CORDARO:  We haven't reached that stage yet.

21       THE COURT:  Okay.  The agreement contemplates this

22  setoff though, right?  As I remember interagency setoffs,

23  there's a process that -- one agency itself just can't do it.

24  You need to have a process where there's a broader approval

25  within the government.  But I take it that what the parties are

1    talking about by way of a settlement of the FICA action

2    contemplates this setoff.

3              MR. CORDARO:  Yes, Your Honor.

4              THE COURT:  Okay.

5              MR. CORDARO:  In fact, they're mutually contingent.

6              THE COURT:  All right.  Okay.

7              MR. CORDARO:  Your Honor, the United States supports

8    the reorganized debtors' motion to approve the settlement

9    agreement.  The United States has made a determination under

10   environmental law that the agreement is fair, reasonable, in

11   the public interest and furthers the goals of CERCLA.  It was

12   the product of arm's-length negotiation over many months

13   involving not only the reorganized debtors and the United

14   States, but also as the Court alluded to, the new Delphi

15   attorneys and GM as well.  The parties took into account

16   arguments concerning liability and defenses to liability, the

17   risks of further litigation and the need for clean-up at the

18   sites.

19             In addition, the agreement serves CERCLA's goal of

20   reducing litigation and transaction costs associated with

21   response actions, as well as the public policy favoring

22   settlement.  The United States published a notice of the

23   agreement in the Federal Register in order to give the public

24   an opportunity to provide comments.  We did receive one

25   comment:  it was from Ballard Spahr LLP on behalf of several

1    companies who have conducted response actions at the Tremont

2    site.

3            I spoke to the attorney from Ballard Spahr after the

4    United States submitted its statement in support of the

5    agreement -- that was Mr. Glenn Harris.  Mr. Harris indicated

6    that the thrust of the comment was a concern that even if both

7    settlements became affective and even if the United States

8    affected the setoff as contemplated in the agreement, that

9    somehow the money would not find its way to the EPA.

10           THE COURT:  Because it was a setoff as a opposed to

11   actual cash.  I think that -- I mean, reading between the lines

12   I guess that was their concern.

13           MR. CORDARO:  I think that was the concern, Your

14   Honor.  And as I explained to Mr. Harris, the agreement makes

15   clear that the United States shall apply the allowed amount as

16   a setoff against any refund owed to the debtor.  That would be

17   a distribution under paragraph 1 of the agreement.  That the

18   agreement also specifically provides that the monies

19   contemplated therein will be allocated to the specific

20   superfund sites, and that EPA will deposit monies received into

21   special site accounts for those particular sites.

22           I also note that the agreement was signed by the EPA

23   as well as the Department of Justice, and that the comment

24   itself really does not address the fairness of the agreement.

25           THE COURT:  So, in essence, the government would be

1   keeping the roughly 850,000 dollars, and that actual cash will

2   be going into this special account?

3          MR. CORDARO:  That's correct, Your Honor.

4          THE COURT:  Okay.

5          MR. CORDARO:  And accordingly, we believe that the

6   clear language of the agreement addresses the comment's

7   concern.  And unless the Court has any further questions, we

8   would respectfully request that the Court enter the proposed

9   order.

10          THE COURT:  Okay.  No, I don't have any other

11   questions.  I think the United States' response made it clear.

12   I'm not sure they had to allocate the money the way they did,

13   but having done so I think that they've -- that the United

14   States has addressed the comment adequately.

15          And as far as the settlement itself is concerned from

16   DPH Holdings' perspective, it's clearly fair and reasonable.

17   It was noticed to, in particular, the NewCo entity, which is

18   really the only party from the debtors' side that might have an

19   objection to it since in affect they would be funding it, and

20   they have no objection.

21          From the perspective of the United States I agree with

22   the Justice Department's filing, which sets forth the reasons

23   why the settlement is appropriate.  And based on the public

24   comment -- or actually, lack thereof, except for the one

25   comment which I think is clearly resolved by the government's

1    response.  In addition it's clear that the settlement is fair

2    as a whole, so I'll approve the settlement.  Obviously it's

3    conditioned upon the other events taking place ultimately

4    leading to court approval of the FICA settlement.  And this is

5    of no force or affect if that settlement never goes through,

6    but in the meantime you can e-mail the order to chambers and

7    it'll be entered.

8              MR. CORDARO:  Thank you, Your Honor.

9              THE COURT:  Okay.

10             MR. LYONS:  Okay.  Your Honor, the final item on the

11   agenda is the amended motion filed by Mr. James Grai to lift

12   the stay, and that's at docket 20682 (sic) -- I'm sorry, 21682.

13             Your Honor, this whole matter began, if you may

14   recall, by a letter that Mr. Grai sent to chambers.  We sent an

15   e-mail in response to Your Honor giving you an update on the

16   status of the appeal to the Second Circuit.  And since then the

17   parties have filed numerous pleadings and motions to outline

18   some of the issues.

19             Your Honor, we have had several discussions with the

20   parties to the matter, including Mr. Grai, and that's Michael

21   Doud, who's here in court, the Ace defendants, and also I've

22   had some conversations with Mr. Raterink on behalf of the

23   Michigan defendants.

24             THE COURT:  And Mr. Raterink, you're on the phone,

25   right?

1          MR. RATERINK:  That is correct, Your Honor.

2          THE COURT:  Okay.  Good morning.

3          MR. RATERINK:  Good morning.

4          MR. LYONS:  And, Your Honor, I think all the parties

5     agree -- I won't go into the pleadings, because I assume Your

6     Honor is up to speed and read them.  But I think all the

7     parties agree that if there is an insurance issue that is at

8     issue in these individual claims, that those matters have to

9     remain here with Your Honor pending the Second Circuit's

10    ruling.  And then assuming a favorable ruling, then that would

11    be brought to Your Honor's -- on your court's calendar, and

12    would be adjudicated in due course.

13          However, the parties have identified a number of

14    claims of the 205 claims that Mr. Doud represents that have

15    nothing to do with the insurance issue.  And so the parties are

16    working together -- we have different numbers and different

17    lists, and I actually have in court here today Mr. Mark

18    Fraylick who's in the back of the courtroom, who is the DPH

19    Workers' Compensation administrator.

20          But what we would suggest, Your Honor, is that we

21    adjourn this matter to the next hearing in December.  And the

22    parties would work together on a joint stipulation that would

23    in essence list the claims that are not subject to this

24    insurance issue.  For example, there are claims that GM is

25    currently administering and paying under the MOU --

1          THE COURT:  Right.  You list three categories in your

2     response, which to me seemed the right categories --

3          MR. LYONS:  Right.

4          THE COURT:  -- for those claims that would not

5     implicate the Ace Insurance issue.

6          MR. LYONS:  Right.  So we were going to work together

7     with the parties because some of the lists just aren't matching

8     right now, but I'm confident that once we exchange lists and

9     dig into the individual claims we'll be able to come up with a

10    consensual list.  I mean, obviously the primary concern that

11    DPH has and I think I can also indicate the Ace defendants

12    have, is that this insurance issue is reserved for this Court,

13    and that nothing goes on in the adjudication of any of these

14    claims that would possibly touch upon that issue.

15         THE COURT:  Right.  I agree with that.  I mean, I

16    think that this is probably less an issue of the automatic stay

17    than the stay pending appeal that I entered, although the plan

18    injunction was implicated as part of that.

19         MR. LYONS:  Correct.

20         THE COURT:  And hopefully we'll get -- I mean, as I

21    understand from the pleadings, the Second Circuit heard oral

22    argument on October 5th on that issue.  So I'm assuming we'll

23    get a ruling from the Second Circuit probably before the end of

24    this year that clarifies whether, in fact, I will keep

25    jurisdiction over that adversary proceeding or whether the

DPH HOLDINGS CORP., ET AL.

Page 19

1    insurance coverage issue will go back to Michigan.

2            On the other hand, no matter where it is, on the

3    ultimate issue it's clear to me from the Michigan defendants'

4    response that the Michigan defendants are not going to make any

5    payments -- unless directed to do so by some court -- until the

6    insurance issue is resolved.  So if it goes back -- if the

7    Second Circuit rules contrary to Judge Marrero and me, that it

8    should go back to Michigan, there will still be a delay as far

9    as I can see, unless I'm missing something, on the Workers'

10   Compensation claims that are not free of that insurance issue.

11           MR. RATERINK:  This is Dennis Raterink, Your Honor.  I

12   think that's correct.  The ultimate issue still has to be

13   determined, whether it be by yourself and this court or whether

14   the issues are ultimately returned back to the Michigan

15   administrative tribunals.

16           THE COURT:  Right.  I mean, the only thing -- I'm

17   sorry to interrupt you.  The only thing I would say on that is

18   this may not be the first time there's been a dispute as to

19   whether there is no ability to pay anymore on the employer's

20   side.  And I don't know whether there's some doctrine that says

21   that Michigan should pay pending resolution of that dispute if

22   there are deep pockets.  But that's not really been brought

23   before me at this point.  And so that's not really implicating

24   in anything I'm ruling on today.

25           MR. RATERINK:  To be honest, Your Honor, I just kind

1    of tie it into the idea that we've raised in the pleadings,

2    that this is an issue of first impression.  That you had this

3    combination of both self-insurance and insurance coverage with

4    the same entity.

5            THE COURT:  Yeah.  This --

6            MR. RATERINK:  And therefore it's a unique situation.

7            THE COURT:  This particular situation, that the 404

8    and the self-insured with the insurers may be, in fact, sui

9    generis.  But it's hard for me to believe that there haven't

10   been disputes in the past as to whether there was an ability to

11   pay or not.  But again, this is probably neither here nor there

12   as far as -- well, it's definitely neither here nor there as

13   far as what's in front of me.

14           It's just I think that the issue before me is whether

15   there should be -- whether the claimants -- the former

16   employees' actions will implicate the injunction I issued

17   earlier this year, or the plan injunction.  And that would mean

18   implicating the Ace Insurance issues.  If there's some

19   mechanism for them to force payment absent a determination of

20   those issues, then I don't think that the injunction applies

21   and my stay order doesn't apply.

22           And that's implicit in what counsel for the debtors

23   has been saying, and I think also voiding (ph.) Ace's and the

24   Michigan defendants' responses they're saying, which is that we

25   should be able to agree on any number of claimants who are not

1    covered by the injunctions because they're not raising claims

2    within the disputed period, they're not raising claims against

3    the debtor but rather against GM.  And whether that's 61 people

4    or 107 or however, I mean, that's no problem.  So, again, as

5    long as those insurance issues, which are the ones that are

6    covered by my injunctions are not implicated, then I would

7    assume that people can forward.

8           MR. RATERINK:  And Your Honor --

9           MS. PRZEKOP-SHAW:  Your Honor, Susan Przekop-Shaw --

10          THE COURT:  Yes.

11          MS. PRZEKOP-SHAW:  -- on behalf of the Michigan

12   Workers' Compensation agency.

13          THE COURT:  Good morning.

14          MS. PRZEKOP-SHAW:  I haven't had any opportunity to be

15   talking to Mr. Lyons about this case, and so in regards to his

16   representation that all the parties agree if insurance is an

17   issue those matters have to stay here for resolution, the

18   agency does not agree with that position.  And it's for this

19   reason that we do not:  the issue as to which insurance claims

20   or which parties should be before this Court we still maintain

21   should be done within the Michigan administrative process.

22          THE COURT:  That's very clear.  I mean, that's why

23   there's an appeal in the Second Circuit.  But I think no one's

24   disputing that the stay pending appeal that I entered on

25   January 28th, 2010 would preclude litigation of the Michigan

Page 22

1    defendants' defense that there's an ability to pay in a

2    Workers' Comp action.

3            So clearly, in entering into a stipulated order, for

4    example, that however many claimants -- whether it's 61 or 107

5    or 150 or any other number -- are free to go ahead because

6    they're not covered by that injunction, obviously no party

7    would be waiving any rights in respect of the appeal or the

8    underlying litigation between --

9            MS. PRZEKOP-SHAW:  But --

10            THE COURT:  -- between Ace and the Michigan defendants

11    and DPH.

12            MS. PRZEKOP-SHAW:  But that's the inherent problem

13    that we have here.  Because I don't believe Mr. Doud is coming

14    to this Court to have him assert -- have the Court assert

15    jurisdiction on the resolution of his clients' claim.  I think

16    that it's critical to recognize that indeed, even though Mr.

17    Doud may have listed 190 or 200 employees that had claims in

18    Michigan, those claims that don't relate to this issue have

19    been going forward.  And there's no reason for this Court to

20    start deciding which claims can and cannot go forward in

21    Michigan.

22            THE COURT:  Well, I agree --

23            MS. PRZEKOP-SHAW:  And that's where I have a concern

24    where it's being suggested that a stipulation needs to be

25    agreed to by the parties as to which cases can go forward in

1   Michigan.  I think Mr. Doud, a very competent attorney, can

2   address these issues now that he has notice of what's going on.

3   And I feel that the agency really is not in a position to say

4   yes, this case can go and this case can't, because that's

5   within the jurisdiction of the magistrate before the Michigan

6   administrative hearing system.  And it's not necessarily within

7   this court's jurisdiction.

8          And I don't want the agency to be in a situation where

9   its stipulation is basically infringing upon the magistrate's

10  authority that has always existed there.  And so though I --

11  the agency appreciates Mr. Grai coming forward in this matter

12  because the agency has been pushing to have this administrative

13  issue brought back to Michigan, it's an issue of first

14  impression, it's a situation where Mr. Doud and Mr. Grai and

15  all the other movants must recognize that it's unique.  And

16  that fact remains that Ace and Pacific have been filing the

17  Form 400s, and that has to have something -- some impact, some

18  ability for these people to have their Workers' Comp

19  obligations covered, aside from going to the funds or to going

20  to General Motors.

21         Michigan has insurance law, and Ace and Pacific have

22  come forward and they have operated in Michigan, and therefore

23  this issue has to be addressed -- especially dealing with one

24  insurance coverage.  You yourself brought up an issue about

25  funding, Your Honor.  And it remains that -- and it's been the

DPH HOLDINGS CORP., ET AL.

Page 24

1   position that the Fund is not a deep pocket to be paying --

2   making obligations and to pay them.  And we believe that Mr.

3   Doud's clients have to recognize that potentially Ace and

4   Pacific will be responsible for paying their Workers' Comp

5   obligations, and will be ongoing responsibility.

6        So I appreciate Mr. Doud coming in and joining us and

7   advocating, in a sense, that this matter needs to go forward

8   because that's what the agency has rigorously maintained

9   throughout this process, but I'm concerned about Mr. Lyons

10  saying that we now need to stipulate as to which cases should

11  or should not cover.  I think Mr. Doud is a plaintiff's

12  attorney, he's a competent -- a prominent Workers' Comp

13  plaintiff's attorney here in Michigan.  He's been given a

14  number of pleadings, and before we start telling him where his

15  cases should go or his clients should be represented, I think

16  that's got to be Mr. Doud's input on this and --

17        THE COURT:  He sought relief in this court.

18        MS. PRZEKOP-SHAW:  I'm sorry?

19        THE COURT:  He sought relief in this court.  I don't

20  know w -- I mean --

21        MS. PRZEKOP-SHAW:  But he sought relief to this court

22  because it can be relieved through the court in trying to

23  figure out exactly where the positions are, and I don't think

24  he's trying to suggest to the Court that the Court should take

25  over these cases -- I would hope not because, I mean, that's

TPD HOLDINGS CORP., ET AL.

Page 25

```
 1    contrary to what Michigan law says.  The administrative process
 2    rests within corporate Michigan --
 3              THE COURT:  You know, I hate to quote Yogi Bera to
 4    often --
 5              MS. PRZEKOP-SHAW:  Yeah.
 6              THE COURT:  -- every week, but this is deja vu all
 7    over again.
 8              MS. PRZEKOP-SHAW:  Yes.
 9              THE COURT:  I've already ruled on this issue, the
10    district court's already ruled on this issue and it's pending
11    sub judice before the Second Circuit.
12              MS. PRZEKOP-SHAW:  Exactly.  And that's the point.
13              THE COURT:  So there's no reason to reargue it.  It's
14    just a waste of time.
15              MS. PRZEKOP-SHAW:  And I'm not rearguing it, I'm
16    just --
17              THE COURT:  I do agree with you on one point, but I'm
18    concerned by what you said and your desire to reargue this
19    issue.  That you would think that if I enter an order saying
20    that it's up to Mr. Doud to decide whether the injunction is
21    violated or not, that the State of Michigan would think that
22    that would be leave to get around the order that was issued in
23    January of 2010 and the plan injunction.
24              MS. PRZEKOP-SHAW:  But see, I don't think that's what
25    Mr. Doud wants.  He doesn't want --
```

Page 26

```
 1              THE COURT:  No.  It's what you want.

 2              MS. PRZEKOP-SHAW:  -- to violate

 3              THE COURT:  And I'm afraid that --

 4              MS. PRZEKOP-SHAW:  And nor did I say that, sir.

 5              THE COURT:  -- based upon your willingness to reargue

 6  this issue that if I just simply said all of this is moot and

 7  Mr. Doud can take his chances, that the State of Michigan would

 8  take the view that that means that notwithstanding my ruling

 9  and Judge Marrero's ruling and the fact that there's a matter

10  that's sub judice before the Second Circuit.  And in the

11  meantime my January 28th, 2010 order granting a stay pending

12  appeal, that if Mr. Doud took not just the 107 matters to

13  litigation in Michigan but all of them, that the State of

14  Michigan would be free to issue its -- raise its defense of

15  payment.

16              MS. PRZEKOP-SHAW:  Absolutely not.

17              THE COURT:  Okay.

18              MS. PRZEKOP-SHAW:  I mean, that's not the position I'm

19  taking here, sir.

20              THE COURT:  All right.

21              MS. PRZEKOP-SHAW:  I'm not trying to suggest to you to

22  enter an order that permits Mr. Doud to violate the injunction.

23  I'm concerned with the stipulation proposed by Mr. Lyons that

24  somehow the Court and the parties must decide which cases go

25  forward and which ones must be enjoined.  That's the only
```

DPH HOLDINGS CORP., ET AL.

Page 27

1    concern I have, sir.

2          THE COURT:  Well, I don't -- I mean, it would seem to

3    me that that was exactly the position that Michigan

4    supplemental response was taking.

5          MS. PRZEKOP-SHAW:  Well, it was identified for

6    purposes of the motion.

7          THE COURT:  Which is that we agree that 107 can go

8    forward.

9          MS. PRZEKOP-SHAW:  There were two motions that were

10   filed;  one, a motion to join.  And Mr. Doud was bringing in a

11   number of the injured employees that we maintain weren't

12   subject to this Court's stay order and could have proceeded.

13   And we were arguing whether they should be joined to his

14   proceeding.  That's the only part of the motion --

15         THE COURT:  Well, there's no re -- no.  I -- okay.

16   No.  Obviously there's no reason for the Michigan claimants --

17   the former employees of Delphi to be part of this adversary

18   proceeding.  I don't see a reason for that.

19         MS. PRZEKOP-SHAW:  Okay.

20         THE COURT:  I mean, if that's what you're saying, I

21   agree completely.  I don't -- I just think that while the issue

22   has been joined there should be clarification of who clearly

23   can proceed through to a final order in Michigan with their

24   claims.  Which I think the parties are all on board with.

25         MS. PRZEKOP-SHAW:  Well --

1          MR. LYONS:  And Your Honor, just to follow up.  I

2     mean, Mr. Doud should be applauded.  He has clients, he wanted

3     clarification of Your Honor's orders.  The stipulation is just

4     going to be in furtherance and in clarification of Your Honor's

5     stay order.  Nothing more.

6          THE COURT:  Right.  And I don't mind setting a --

7     making it clear in that stipulation that anyone who falls into

8     these three categories that the debtors' response says are not

9     implicated -- including in respect of any conceivable defense

10    that the Michigan defendants would raise -- don't have to come

11    back to me to get an order.

12         MR. DOUD:  Your Honor, Michael Doud.  And thank you

13    for having me here.

14         THE COURT:  Hi.  You've been very patient.

15    Everybody's talking about what you should be doing or not

16    doing, but --

17         MR. DOUD:  I appreciate the opportunity to talk.

18    Here's the big problem that we've been facing in Michigan.  The

19    State of Michigan Workers' Compensation Agency has prohibited

20    these cases from going forward because of the stay.

21         THE COURT:  Right.

22         MR. DOUD:  Now they're coming in and saying these

23    cases have been going forward all along:  that's not true.

24    Every time I go to court the State of Michigan is prohibiting

25    us from going forward and we're getting adjournments.

1              THE COURT:  Okay.  Well --

2              MR. DOUD:  That's why I'm here.

3              THE COURT:  It seems to me that, again, to the extent

4      that the State of Michigan is going to argue as its defense to

5      the claim --

6              MR. DOUD:  I understand.

7              THE COURT:  -- that there's a source of payment other

8      than the State of Michigan, then they're right, it should be

9      stayed.

10             MR. DOUD:  That part I agree with.

11             THE COURT:  But in respect of anyone else, I don't

12     think that the January 2010 order or the plan injunction are

13     implicated.  And we can have a specific order that identifies

14     specific clients of yours that fall into that category.  And

15     I'm happy to enter an order that says that anyone else that

16     falls into that category doesn't have to seek relief from the

17     January 2010 order as long as that decretal paragraph also says

18     that the January 2010 order is, of course, in full force and

19     effect to the extent it applies to people who don't fall under

20     those categories.

21             MR. DOUD:  Absolutely.

22             THE COURT:  I'm happy to do that.  And then no one has

23     to come back here again, that falls under that group.

24             MR. DOUD:  Thank you, Your Honor.

25             THE COURT:  Okay.

1          MR. LYONS:  And we will work with the parties to draft

2    an order that's very clear --

3          THE COURT:  Okay.

4          MR. LYONS:  -- and gives very clear guidance to

5    everyone.

6          THE COURT:  And it should say that -- I mean, it's

7    implicit, and it's -- because this is what I said on the

8    record.  That in agreeing to that order no one is waiving any

9    rights in respect to the underlying issue, including the

10   jurisdictional issues that Michigan has raised.  Obviously

11   that'll be dealt with in the litigation that's on appeal right

12   now.  So you should circulate that after you do your actuarial

13   work.

14         MR. LYONS:  We will, Your Honor.

15         THE COURT:  Okay.  And -- not actuarial work, but

16   reviewing the records.

17         MR. LYONS:  Yes.  And again, Your Honor, we would

18   envision -- we would have DPH, the Ace defendants, Mr. Grai and

19   his fellow claimants, the Michigan agencies, as well as General

20   Motors to be parties to that stipulation.

21         THE COURT:  Right.

22         MS. PRZEKOP-SHAW:  How are we bringing General Motors

23   into this case?

24         MR. LYONS:  To confirm that these are General Motors',

25   that they acknowledge the transfer of the Workers' Compensation

Page 31

```
 1    liabilities.

 2            MS. PRZEKOP-SHAW:  I don't think that's -- then that's

 3    a resolution.  The Court would be taking the resolution of an

 4    issue that is prevalent in Michigan, that General Motors may be

 5    pursuing and saying certain cases aren't within their

 6    jurisdiction.  And I would voice an objection to be bringing

 7    General Motors into this matter.  If it's an issue where the

 8    Court says these are the cases that's covered by my order,

 9    that's something different than all of a sudden deciding okay,

10    General Motors, you have this coverage and whatever else.  That

11    decision rests with Michigan's administrative system.  And --

12            THE COURT:  But this would -- this is just General

13    Motors saying we have taken on these matters.

14            MR. LYONS:  Correct.

15            THE COURT:  It's not --

16            MS. PRZEKOP-SHAW:  They may have been filing an

17    appearance in those matters, but they aren't -- they're not

18    necessarily making --

19            THE COURT:  No.  No.  They -- no.  This would be them

20    agreeing that they have taken on the matters.

21            MS. PRZEKOP-SHAW:  But why do we have General Motors

22    in here, Your Honor?

23            THE COURT:  Because if General --

24            MS. PRZEKOP-SHAW:  And why are we -- why are you

25    extending that jurisdiction now to General Motors to bring them
```

DPH HOLDINGS CORP., ET AL.

Page 32

1    in on this matter?

2            THE COURT:  I'm not extending jurisdiction to anyone.

3    What -- as long as GM or anybody -- Joe down the street or

4    Chrysler -- has agreed that they will pay for this, then --

5            MS. PRZEKOP-SHAW:  But they haven't agreed to pay for

6    it, that's my point, Your Honor.

7            THE COURT:  No.  But the premise of this --

8            MS. PRZEKOP-SHAW:  Why would you require them to start

9    saying something that we're on the risk for this liability when

10   that may be a question to them --

11           THE COURT:  It's not --

12           MS. PRZEKOP-SHAW:  -- and may be a subject of the

13   Court and -- I mean, the administrative proceedings?  I don't

14   understand that part, Your Honor.

15           THE COURT:  Well, I think --

16           MS. PRZEKOP-SHAW:  Why can't we just keep it with the

17   parties, is what I'm suggesting we --

18           THE COURT:  I think you're missing one point.  This is

19   a stipulation so they would be agreeing to this.  I'm not

20   deciding a contested matter, whether they've taken it on or

21   not.  This would be their agreement that they have assumed the

22   liability.  And it's -- if they have assumed the liability then

23   the insurance issues aren't implicated because GM's assumed the

24   liability.  It's only in those cases that they have agreed.

25           MR. LYONS:  And, Your Honor --

1          THE COURT:  There would be a category.  There are

2     three categories here:  one, claims that do not implicate the

3     reorganized debtors at all; two, claims that have been assumed

4     by General Motors Company -- and by assumed I mean where both

5     GM and the debtors acknowledge that they've been assumed.  I'm

6     not going to determine whether GM has assumed it if GM says

7     they haven't, but if they have assumed it then there's no

8     reason not to let the -- then the injunction's not implicated;

9     and then finally claims that fall outside of the dates of

10    coverage that are implicated in the insurance dispute that's

11    the subject of the injunction.

12          So it's those three categories that clearly don't

13    implicate the insurance litigation.

14          MS. PRZEKOP-SHAW:  There's really only two categories

15    that don't implicate your stay.  The ones that fall in within

16    the time period that Ace and Pacific filed their notices of

17    insurance coverage are impacted by the stay.  The second one is

18    all others.  And I'm just concerned that the Court now is

19    asking General Motors okay, come in and make a decision on

20    this.  You're going to be placing them in a situa -- and that's

21    their own choice, I recognize that, Your Honor.

22          THE COURT:  Right.  It's their own choice.

23          MS. PRZEKOP-SHAW:  But I think that the categories are

24    limited to two, and two only.

25          MR. DOUD:  Your Honor, there is a memorandum of

Page 34

1    understanding between General Motors and Delphi as to --

2         THE COURT:  Right.  Absolutely.

3         MR. LYONS:  Pursuant to the plan.

4         MR. DOUD:  -- as to which plants they have taken over

5    responsibility of.

6         THE COURT:  Right.  I have -- I mean, look, these are

7    real people out there.  They need to get their Workers'

8    Compensation.  If GM agrees that it has assumed the liability,

9    there's no reason why this should be enjoined:  they should go

10   ahead and pay it.

11        MS. PRZEKOP-SHAW:  And I don't disagree with that.

12   We've been pushing to have this resolved --

13        THE COURT:  No, you haven't.  Now, please, this is

14   just -- I'm sorry.  My ruling is clear on this.  This is a

15   perfectly reasonable provision on this.  And if there's no

16   issue and if GM is prepared to assume it then these people

17   should be free to go and get it.  There's no --

18        MS. PRZEKOP-SHAW:  No doubt.

19        THE COURT:  The insurance issue isn't implicated at

20   all.

21        MS. PRZEKOP-SHAW:  And, Your Honor, I understand your

22   ruling.  I'm just suggesting that these people will be having

23   their benefits paid without necessarily a bankruptcy court

24   telling them to make those payments.  And I'm just suggesting

25   to limit and isolate what is really the true cases before it,

1   so all the rest of them can go.

2           THE COURT:  As I understand it, there are people who

3   are currently filing claims in Michigan who would be covered by

4   the GM memorandum of understanding where GM has assumed full

5   responsibility for paying these claims, and nevertheless those

6   claims are being stayed because of Delphi.  That shouldn't

7   happen.

8           MR. RATERINK:  Your Honor?

9           THE COURT:  And we should have the clarity so that

10  there's no issue of that happening.  Now, maybe it's just belt

11  and suspenders, but to the extent even one person is clearly

12  covered by a GM assumption, that person shouldn't be deprived

13  of getting their Workers' Compensation -- at least by my order,

14  because my order wouldn't apply to that person.

15          MR. RATERINK:  Your Honor, Dennis Raterink again.  I

16  just, for clarity's sake and nothing else at this point, I want

17  to make it very clear.  Mr. Doud indicated that the Workers'

18  Comp agency was prohibiting cases from proceeding; the only

19  thing that has been happening was the Fund's attorneys has been

20  clear with your directive and the stay order.

21          THE COURT:  Right.

22          MR. RATERINK:  That we've been appearing in the cases

23  that the FASF (ph.) is implicated in and requesting

24  adjournments, nothing else.

25          THE COURT:  That's fine.  And now this will be clear

1    to the hearing officer, that he or she doesn't need to adjourn

2    as to these entities -- these people.

3          MR. RATERINK:  Yeah.  And I'm going to suggest that GM

4    is paying and litigating these cases every day --

5          THE COURT:  Okay.

6          MR. RATERINK:  -- in Michigan administrative

7    tribunals.  It's going forward.

8          THE COURT:  All right.  And that's great.  I'm happy

9    with that.  And to the extent we can make that crystal clear, I

10   have no problem with that.

11         MR. RATERINK:  Okay.  Just wanted to make sure you

12   didn't have a misunderstanding about what was happening in

13   Michigan.

14         THE COURT:  I just --

15         MR. RATERINK:  Because these cases are being

16   litigated.

17         THE COURT:  Okay.

18         MR. DOUD:  Your Honor, that's not true.

19         THE COURT:  Well, I don't want to get into it.

20         MR. DOUD:  No.  They're --

21         THE COURT:  As far as I'm concerned --

22         MR. DOUD:  Okay.

23         THE COURT:  -- this order will make it clear that if

24   anyone falls under those three categories --

25         MR. DOUD:  I appreciate that.

TPI HOLDINGS CORP., ET AL.

Page 37

```
 1              THE COURT:  -- that Michigan doesn't need to ask for
 2      an adjournment as to those three categories.
 3              MR. DOUD:  I don't want them to mislead you as to why
 4      I'm here though, Your Honor.
 5              THE COURT:  Okay.
 6              MR. DOUD:  I represent these people.  These are my
 7      files.  These cases are not going forward, and the State of
 8      Michigan's prohibiting it.
 9              THE COURT:  All right.
10              MR. DOUD:  And I appreciate that.
11              THE COURT:  Well, okay.  I'm not going to decide that
12      issue.
13              MR. DOUD:  I understand.
14              THE COURT:  All I'm going to say is those three
15      categories can go forward, we can have them memorialized in an
16      order, we can --
17              MR. DOUD:  Thank you.
18              THE COURT:  It should be memorialized with respect to
19      specific people.  It can also have a provision that says
20      generically anyone that falls under these categories can go
21      forward, provided that the insurance issues will not be raised.
22              MR. DOUD:  Thank you.
23              THE COURT:  Okay.
24              MR. LYONS:  Your Honor, we'll get right on it, and I'm
25      sure Mr. Fraylick will be all over this, as well.
```

1          THE COURT:  Okay.  All right.

2          MR. DOUD:  Thank you, Your Honor.

3          MR. LYONS:  Thank you, Your Honor.

4          THE COURT:  And I don't think this was the intent, but

5     I guess we should have an order saying this.  There's no reason

6     to grant the motion to intervene in the adversary proceeding.

7     I don't know if you want to withdraw that motion or if I should

8     just -- I mean, I think what you really wanted to do was join

9     to Mr. Grai's motion, all of these other people.

10         MR. DOUD:  Correct.

11         THE COURT:  So you could either file something

12    withdrawing the motion to intervene in the adversary proceeding

13    or to join in the adversary proceeding.  I'm not sure that

14    really was the intention of the motion, as opposed to just

15    joining these people to the lift-stay motion.

16         MR. DOUD:  That's correct.

17         THE COURT:  All right.  So maybe you can withdraw

18    that, or else you can just do an order saying that to the

19    extent relief was sought to intervene in the adversary

20    proceeding, that's denied.

21         MR. LYONS:  We'll wrap that all up in the stip.

22         THE COURT:  Okay.

23         MR. LYONS:  Thank you, Your Honor.

24         MR. DOUD:  Thank you, Your Honor.

25         THE COURT:  All right.  Thanks.

DPH HOLDINGS CORP., ET AL.

Page 39

1          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

2          THE COURT:  Okay.  Thank you.  And thank you for

3    accommodating me with starting an hour early today.  I had

4    thought because of some other matters that were adjourned that

5    we would go longer today and need more time, because I had an

6    afternoon matter.  But anyway, thank you.

7          IN UNISON:  Thank you, Your Honor.

8       (Whereupon these proceedings were concluded at 9:53 AM)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 40

**I N D E X**

**RULINGS**

|  | Page | Line |
|---|---|---|
| Debtors' Settlement with United States of America, Approved | 16 | 2 |
| Michigan Claimants' Motion to Intervene in Adversary Proceeding, Denied | 38 | 20 |

Page 41

1

2                           C E R T I F I C A T I O N

3

4      I, Avigayil Roth, certify that the foregoing transcript is a

5      true and accurate record of the proceedings.

6

7

8           Avigayil Roth        Digitally signed by Avigayil Roth
                                  DN: cn=Avigayil Roth,
                                  o=Veritext, c=US
9      _____   Date: 2011.11.21 14:36:03 -05'00'

10     AVIGAYIL ROTH

11

12     Veritext

13     200 Old Country Road

14     Suite 580

15     Mineola, NY 11501

16

17     Date:  November 21, 2011

18

19

20

21

22

23

24

25