# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK (FOLEY SQUARE)

In Re:

DPH HOLDINGS CORP., *et. al.*

      Reorganized Debtors.

_____/

JAMES SUMPTER,

      Appellant/Claimant,

vs.

DPH HOLDINGS CORP., *et. al.*

      Appellee/Respondent.

_____/

Chapter 11
Bankruptcy Court Case No. 05-44481 (RDD)
Hon. Robert D. Drain

District Court Case No. 11-cv-08443
Hon. Paul A. Engelmayer
Magistrate Henry Pitman

## BRIEF ON APPEAL OF APPELLEE REORGANIZED DEBTORS

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ iii

I.      STATEMENT OF BASIS FOR APPELLATE JURISDICTION ............................. 1

II.     STATEMENT OF ISSUES PRESENTED ................................................... 1

III.    COUNTER-STATEMENT OF THE CASE ................................................. 2

IV.     COUNTER-STATEMENT OF THE FACTS ............................................... 2

        A.    Bankruptcy History and Prior Orders ................................................ 2

        B.    Sumpter's Amended Recoupment Motion on Behalf of All Delphi
              Salaried Retirees ........................................................................ 7

        C.    Bankruptcy Court's Denial of Amended Recoupment Motion and
              Warning of Sanctions ................................................................... 8

        D.    Post-Hearing Events and Bankruptcy Court's Denial of Amended
              Recoupment Motion Upheld .......................................................... 9

        E.    Filing of Appeal ......................................................................... 11

V.      STANDARD OF REVIEW ..................................................................... 11

VI.     ARGUMENT ....................................................................................... 12

        A.    Introduction ............................................................................... 12

        B.    Sumpter Lacks the Prudential Standing to Assert the Rights of Other
              Delphi Salaried Retirees on Appeal ................................................. 13

        C.    Sumpter's Failure to Specifically Name the Delphi Salaried Retirees as
              Appellants in the Notice of Appeal Deprives the Appellate Court of
              Jurisdiction Over the Unnamed Parties ............................................. 15

        D.    The Bankruptcy Court Correctly Concluded that Appellant's
              "Recoupment" Claim is Barred by *Res Judicata* Based on the
              Bankruptcy Court's Prior Orders .................................................... 16

        E.    The Bankruptcy Court Correctly Concluded that Sumpter's
              "Recoupment" Claim was Extinguished, Discharged or Otherwise
              Enjoined under the Modified Plan and the Plan Modification Order ......... 19

        F.    The Bankruptcy Court Correctly Concluded that General Principles of
              Law Do Not Afford Sumpter the Right of Recovery Under A Claim of
              Recoupment ............................................................................... 22

        G.    The Bankruptcy Court Correctly Concluded that Sumpter's Statute of
              Limitations Argument Is Inapplicable .............................................. 23

        H.    Sumpter's Appeal is Equitably Moot ............................................... 24

VII.    CONCLUSION .................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Home Assurance Co. v. Enron Natural Gas Mktg. Corp. (In re Enron Corp.)*, 307 B.R. 372, 378 (S.D.N.Y.2004) ........................................................................................ 11

*Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) ................................................................................................................................. 11

*Brown v General Motors Corporation,* 152 B.R. 935, 938 (W.D. Wis. 1993) ........................... 22

*Bull v. United States*, 295 U.S. 247, 262; 79 L. Ed. 1421; 55 S. Ct. 695 (1935) .................. 22, 23

*Caldwell v. Gutman, Mintx, Baker & Sonnenfeldt,* 701 F. Supp. 2d 340, 351 (E.D.N.Y. 2010) ................................................................................................................................. 18

*Chartered Sec. Litig. v. The Charter Co. (In re The Charter Co.)*, 92 Bankr. 510, 514 (M.D. Fla. 1988) ................................................................................................................. 16

*Concord Resources, Inc. v. Woosley (In re Woosley)*, 855 F.2d 687, 688 (10th Cir. 1988) ................................................................................................................................. 16

*Daewoo International (America) Corp. Creditor Trust v. SSTS America Corp. et. al.*; 2003 U.S. Dist. LEXIS 9802 at p.7 (S.D.N.Y. 2003) .................................................... 21

*Deutsche Bank AG v. Metromdedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 144 (2d Cir. 2005) ........................................................... 24

*Exco Res.. v. Milbank*, 2003 U.S. Dist. LEXIS 1442 at *3 (S.D.N.Y. Jan. 28, 2003) ........... 13, 16

*Freeman v. Journal Register Co.*, 452 B.R. 367 (S.D.N.Y. 2010) ...................................... 13, 24

*Gaste v. Kaiserman*, 863 F.2d 1061, 1069 n.6 (2d Cir. 1988) ...................................... 17

*In re Bram*, 179 B.R. 824, 826 and 827 (Bankr. E.D. Tex. 1995) ...................................... 22

*In re Cavalry Const., Inc.*, 428 BR 25, 29 (S.D.N.Y. 2010) ...................................... 11

*In re Chateaugay Corp.*, 988 F.2d 322, 325 (2d Cir. 1993) ...................................... 21, 24

*In re Drexel Burnham Lambert Group, Inc.*, 113 B.R. 830, 854 (Bankr. S.D.N.Y. 1990) ................................................................................................................................. 22

*In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 145 (2d Cir. 2005) ............................ 24

*In re MidAtlantic Fund*, 60 B.R. 604, 610 (Bankr. S.D.N.Y., 1986) ............................ 23

*In re Pettibone Corp.*, 145 B.R. 570, 574 (N.D. Ill. 1992) ............................ 16

*In re Quigley Co.*, 391 B.R. 695, 705 (S.D.N.Y. 2008) ............................ 14

*Licensing by Paolo, Inc. v. Sinatra*, 126 F.3d 380, 388 (2d Cir. 1997)) ............................ 13

*Lubow Machine Co. v. Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000) ............ 11

*McHale v. Boulder Capital LLC*, 439 B.R. 47, 60-61 (S.D.N.Y. 2010) ............................ 14

*Mycak v. Honeywell, Inc.*, 953 F.2d 798, 803 (2d Cir. 1992) ............................ 17

*Novon Int'l v. Novamont S.p.A. (In re Novon Int'l)*, 2000 U.S. Dist. LEXIS 5169 at *3 (W.D.N.Y. Mar. 31, 2000) ............................................................................................... 16

*Storage Technology Corp. v. U.S. District Court*, 934 F.2d 244 (10th Cir. 1991) ............ 15

*Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317 (1988)...............................................15, 16

*Travellers Int'l A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1579 (2d Cir. 1994)) .............11

**Statutes**

11 U.S.C. §1144 ............................................................................................................24

**Rules**

Fed. R. App. P. 3(c) .......................................................................................................15

Fed. R. Bankr. P. 8001(a),..............................................................................................15

Fed. R. Bankr. P. 8010………..…………………………………………………………………..2

Fed. R. Bankr. P. 8013………..…………………………………………………………………....11

## I.    <u>STATEMENT OF BASIS FOR APPELLATE JURISDICTION</u>

Appellee concurs with Appellant's Statement of Appellate Jurisdiction.

## II.    <u>STATEMENT OF ISSUES PRESENTED</u>

<u>Issue 1</u>:  Whether Appellant lacks the prudential standing to assert the rights of other Delphi Salaried Retirees on appeal?

    Appellee Answers:  Yes
    Appellant Answers:  No

<u>Issue 2</u>:  Whether Appellant's failure to specifically name the Delphi Salaried Retirees as appellants in the Notice of Appeal deprives the Appellate Court of jurisdiction over them?

    Appellee Answers:  Yes
    Appellant Answers:  No

<u>Issue 3</u>:  Whether the Bankruptcy Court correctly concluded that Appellant's "Recoupment" claim is barred by *res judicata* based on the Bankruptcy Court's prior orders?

    Appellee Answers:  Yes
    Appellant Answers:  No

<u>Issue 4</u>:  Whether the Bankruptcy Court correctly concluded that Appellant's "Recoupment" claim was extinguished, discharged or otherwise enjoined under the Modified Plan and the Plan Modification Order?

    Appellee Answers:  Yes
    Appellant Answers:  No

<u>Issue 5</u>:  Whether the Bankruptcy Court correctly concluded that Appellant is improperly trying to assert the doctrine of recoupment as an affirmative claim?

    Appellee Answers:  Yes
    Appellant Answers:  No

<u>Issue 6</u>:  Whether Sumpter's Appeal is equitably moot?

    Appellee Answers:  Yes
    Appellant Answers:  No

### III.    COUNTER-STATEMENT OF THE CASE

This is an appeal from an order entered by the Honorable Robert D. Drain of the United States Bankruptcy Court for the Southern District of New York denying Appellant James Sumpter's "Amended Motion for Recoupment On Behalf of Delphi Salaried Retirees" ("Amended Recoupment Motion") whereby Appellant James Sumpter (hereinafter "Appellant" or "Sumpter") sought to recover, from Appellee DPH Holdings Corp. and certain of its affiliated reorganized debtors in the above-captioned cases (collectively, the "Reorganized Debtors" or "Appellee"), between $68 million and $145 million for himself and the entire universe of Delphi salaried retirees (hereinafter the "Delphi Salaried Retirees") based on an alleged recoupment claim, that was fully and finally disposed of over two years ago pursuant to various orders from the Bankruptcy Court.  Only now does Sumpter concede and forego his monetary claims that served as the principal basis of his Amended Recoupment Motion and argue that the Bankruptcy Court erred in denying his self-styled recoupment claim as it relates to "uncollected, unreimbursed, pending or future benefits."  *See, e.g.*, Appellant's App. Brief at p. 6.

### IV.    COUNTER-STATEMENT OF THE FACTS[1]

#### A.    Bankruptcy History and Prior Orders

On October 8 and 14, 2005, Delphi Corporation and certain of its affiliates, former debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), predecessors of the Reorganized Debtors, filed voluntary petitions in the Bankruptcy Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended. *See* Reorganized Debtors' Resp. to Amended Recoupment Motion, ¶ 6 (Bankruptcy Court Docket No. "Bkr. Dkt. No" 21581).

---

[1] Sumpter's Statement of the Facts is substantively defective because it disregards salient facts underlying this appeal and is procedurally defective under Fed. R. Bankr. P. 8010(a)(1)(D) because it fails to provide appropriate references to the record.

At the inception of the chapter 11 cases, the Debtors maintained, among other things, health, disability and life insurance benefit plans for their retirees (commonly referred to as "other post-retirement benefits" or "OPEB"). These plans all provided for various offsets or reductions in the amount of benefits payable by the Debtors based on government subsidies, third party payments or other payments a Delphi employee may receive. Examples would be social security disability benefits or workers' compensation payments paid directly to the employee. In any case, the purpose was to avoid the employee collecting twice on the same claim at the expense of the Debtors. *Id.* ¶ 7.

On February 4, 2009, the Debtors filed a Motion seeking the Bankruptcy Court's approval to cease contributions to certain welfare benefit plans for salaried employees, retirees and their spouses after March 31, 2009 (the "Salaried OPEB Termination Motion"). *See* Exhibit 1 (Bkr. Dkt. No. 14705). Approximately 1,633 objections were filed in opposition to the Salaried OPEB Termination Motion. *See* Exhibit 2, *the Revised Proposed Fortieth Omnibus Hearing Agenda, Exhibits A – C.* (Bkr. Dkt. No. 16326). Sumpter, individually (Exhibit 3, Bkr. Dkt. No. 14898), and three groups of retirees, including the Delphi Salaried Retirees' Association ("the Association"), were among those objecting.

At a hearing held on February 24, 2009 in connection with the Salaried OPEB Termination Motion, the Bankruptcy Court determined, among other things, that Debtors could terminate unvested retiree welfare benefits without following the procedures set forth in Section 1114 of the Bankruptcy Code and on February 25, 2009 entered the Provisional Salaried OPEB Termination Order. *See* Exhibit 4 (Bkr. Dkt. No. 16380). Among other things, that Order directed the U.S. Trustee to appoint members to the Retirees' Committee for limited purposes as described in Paragraph 8 of the Order. The U.S. Trustee was also ordered to limit the solicitation

of persons for membership on the Retirees' Committee to parties who appeared at the hearing on the Salaried OPEB Termination Motion. The Provisional Salaried OPEB Termination Order also authorized Debtors to reimburse the Retirees' Committee for up to $200,000.00 in attorney fees.

Sumpter was appointed to the Retirees' Committee by the U.S. Trustee, but subsequently resigned. See Final Report of The Official Committee of Retired Salaried Employees Pursuant to 11 U.S.C. §1114 (d) And Request for Instructions, at Paragraph 4. *See* Exhibit 5 (Bkr. Dkt. No. 20527, and then refiled at 20617).

On March 11, 2009, after discovery and an additional hearing, the Bankruptcy Court entered its Final OPEB Termination Order. *See* Exhibit 6 (Bkr. Dkt. No. 16448).

On March 4, 2009, the Association filed an appeal with the United States District Court for the Southern District of New York ("the District Court") from the Provisional OPEB Termination Order. *See* Exhibit 7 (Bkr. Dkt. No. 16404). On March 13, 2009 the Retirees' Committee filed an appeal with the District Court from the Final OPEB Termination Order. *See* Exhibit 8 (Bkr. Dkt. No. 16458).

Subsequently, the Retirees' Committee and the Association reached an agreement with the Debtors relative to the terms of the Final OPEB Termination Order ("the Settlement"). Among other things, under the Settlement, the Debtors agreed to pay $8,750,000.00 in subsidy payments to the Retirees' Committee for the benefit of salaried retirees and the Association and reimburse the Retirees' Committee and the Association an additional $250,000 in attorneys' fees, and the Retirees' Committee and the Association agreed to dismiss their appeals.

On April 2, 2009 the Bankruptcy Court entered its Salaried OPEB Settlement Order, Exhibit 9 (Bkr. Dkt. No. 16545), which approved the Settlement.

4

On June 16, 2009, the Bankruptcy Court entered an Order (A) (I) Approving Modifications to Debtors' First Amended Plan of Reorganization (as Modified) and Related Disclosures and Voting Procedures and (II) Setting Final Hearing Date to Consider Modifications to Confirmed First Amended Plan of Reorganization and (B) Setting Administrative Expense Claims Bar Date and Alternative Transaction Hearing Date ("the Modification Procedures Order"). Exhibit 10 (Bkr. Dkt. No. 17032). The Modification Procedures Order provided, in pertinent part that: (i) July 15, 2009 (the "Administrative Claim Bar Date") serve as the deadline for all creditors holding administrative expense claims for the period from the commencement of the chapter 11 case in October, 2005 through June 1, 2009 to file such a claim on an Administrative Expense Claim Form. The Modification Procedures Order also set July 15, 2009 as the deadline to object to confirmation of the Modified Plan.

Sumpter received timely service of the Final Modification Hearing Notice, the Administrative Claim Bar Notice and an Administrative Expense Claim Form. *See* Exhibit 11, *Affidavit of Service filed on June 23, 2009 at p. 4 and Exhibit U (Part 5), p. 3928* (Bkr. Dkt. No. 17267).

On July 14, 2009, Sumpter filed Administrative Expense Claim Number 18620 requesting a pay out on a life insurance policy and Administrative Expense Claim 18621 requesting lifetime COBRA payments (collectively, the "Sumpter Administrative Claims"). Sumpter did not file an administrative expense claim relating to the so-called recoupment claim set forth in his Amended Recoupment Motion. The Sumpter Adminstrative Claims were disallowed and expunged.[2]

---

[2] On December 2, 2009, the Sumpter Administrative Claims were disallowed and expunged by this Court's Order Pursuant to U.S.C. § 503(B) And Fed. R. Bankr. P. 3007 To Expunge Certain (I) Prepetition Claims, (II) Equity Interests, (III) Books And Records Claims, (IV) Untimely Claims, (V) Paid Severance Claims, (VI) Pension, Benefit And OPEB Claims, And (VII) Duplicative Claims ("Thirty-Seventh Omnibus Claims Objection Order"). *See*

On July 30, 2009, the Bankruptcy Court entered its Order Approving Modifications under 11 U.S.C. § 1127(b) To (I) First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified And (II) Confirmation Order, Exhibit 17 (Bkr. Dkt. No. 12359), (the "Plan Modification Order").  *See* Exhibit 18, (Bkr. Dkt. No. 18707), which approved the Debtors' First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (As Modified) (The "Modified Plan").  Article 11.14 of the Modified Plan provides:

> Subject to Article 11.13 of this Plan, the satisfaction, release and discharge pursuant to Article XI shall act as an injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim, Interest, or Cause of Action satisfied, release, or discharged under this Plan to the fullest extent authorized or provided by the Bankruptcy code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof.

*Id*. at Ex. A, Art. 11.14.

Similarly, the Plan Modification Order provides:

> Except as otherwise specifically provided in the Modified Plan, the MDA Documents, or this order and except as may be necessary to enforce or remedy a breach of the Modified Plan, the Debtors and *all Persons shall be precluded and permanently enjoined on and after the Effective Date from* (a) commencing or continuing in any manner any Claim, action, employment of process, or other proceeding of any kind with respect to any Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, (b) *the enforcement, attachment, collection, offset, recoupment, or recovery by any manner or means of any judgment, award, decree, order, or otherwise with respect to any Claim interest, Cause of Action, or any other right or Claim against the*

---

Exhibit 12 (Bkr. Dkt. No. 19135).  In addition, on July 17, 2009, Sumpter filed his Expedited Motion To Enforce COBRA Benefits For Salaried Retirees And Motion For COBRA Settlement ("COBRA Settlement Motion") Exhibit 13 (Bkr. Dkt. No. 18366) which was denied by this Court's Order entered on August 3, 2009 on the grounds that the COBRA Benefit Motion was moot.  Exhibit 14 (Bkr. Dkt. No. 18723).  On June 13, 2011, Sumpter filed his motion entitled Request For Stay Of Court Order And Related Proceedings Regarding Of VEBA In Lieu Of COBRA.  Exhibit 15 (Bkr. Dkt. Nos. 21306 and 21308) which was denied by this Court's Order entered on June 27, 2011.  Exhibit 16 (Bkr. Dkt. No. 21415).

> *Reorganized Debtors, which they possessed or may possess prior to the Effective Date*, (c) creating, perfecting, or enforcing any encumbrance of any kind and with respect to any Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior the Effective Date, and (d) asserting any Claims, Interests, or Causes of Action that are satisfied, discharged, released, or subject to exculpation hereby or by the Modified Plan.

*Id.* ¶ 22 (emphasis added).

On October 6, 2009, the Modified Plan became effective. As discussed below, the Salaried OPEB Settlement Order, while terminating or reducing pension and health benefits, did not terminate the Debtors' disability plan for salaried retirees and the Reorganized Debtors continued to make disability payments to salaried retirees, including Sumpter, following confirmation of the Modified Plan. *See e.g.*, Exhibit 20.

**B.    Sumpter's Amended Recoupment Motion on Behalf of All Delphi Salaried Retirees**

On September 8, 2011, Sumpter filed a convoluted-motion, in which he sought to recover between $68 million and $145 million for himself and the entire universe of Delphi Salaried Retirees based on an alleged recoupment claim, that the Reorganized Debtors asserted was fully and finally disposed of over two years ago under the Court's Salaried OPEB Settlement Order and otherwise extinguished and discharged under the Debtors' Modified Plan and the Court's July 30, 2009 Plan Modification Order.

In his Amended Recoupment Motion, Sumpter asserted that he and other salaried retired employees were entitled to repayment for all of the offsets (dating back to 1999) because the Debtors terminated or significantly modified their OPEB obligations in connection with the bankruptcy proceedings. *See e.g.*, Amended Recoupment Motion, ¶¶ 7-13 (Bkr. Dkt. No. 21566). Sumpter asserted that due to the Debtors' cutbacks and the increased cost of health care and Medicare premiums, the OPEB benefits Sumpter was continuing to receive were now

costing retirees more out of pocket dollars than originally anticipated.  He asked that, in light of

such hardships, (i) the Reorganized Debtors should not be entitled to the offsets which have

always been part of the underlying benefits provided, and (ii) the offsets dating back to 1999

constitute overpayments that should be returned to the salaried retirees.  *Id*. ¶ 16(iv). Further, any

future offsets (such as monthly benefit offsets for social security disability) should be canceled

so the retirees could receive an unreduced benefit.[3]  *Id*. ¶ 36.

### C.    Bankruptcy Court's Denial of Amended Recoupment Motion and Warning of Sanctions

On September 22, 2011, during the hearing on Sumpter's Amended Recoupment Motion,

the Bankruptcy Court first acknowledged that Sumpter was not authorized to act on behalf of all

Delphi Salaried Retirees.  Specifically, the Bankruptcy Court stated:

> Although the motion is styled as on behalf of Delphi salaried
> retirees and not just on behalf of Mr. Sumpter, he acknowledges in
> his reply to the debtors' objection to the motion, "The Movant does
> not claim to represent or serve as an attorney for other salaried
> retirees."  And so, I am treating this motion as a motion solely on
> behalf of and by Mr. Sumpter and not on behalf of anyone else
> who, as Mr. Sumpter acknowledges, have not authorized him to
> make the motion on their behalf.

*See* Exhibit 19, September 22, 2011 Hearing Transcript at p. 14 (Bkr. Dkt. No. 21609).

The Bankruptcy Court then denied the Amended Recoupment Motion on *res judicata* and

other grounds.  *Id*. at 17-23.  As stated by the Bankruptcy Court, "Mr. Sumpter is barred by res

judicata in the form of the Court's prior orders from either (a) challenging the Court's order

authorizing the debtors to terminate the OPEB plans; (b) the VEBA settlement; and (c) already

---

[3] For example, the Motion alleged:  "This motion affects the dischargeability of a debt in that this recoupment motion seeks to determine the proper liability as it relates to the discharge of Salaried Retiree OPEB benefits…" (¶14); "…the discharge of Delphi's OPEB liabilities created an overpayment by DSRs which continues to accrue…" (¶16(d)(iii), p. 10); "…Debtors [sic] discharge of its OPEB obligations to Salaried Retirees has created an overpayment by the DSRs and the sub-class of DDSRs." (¶28); and "…the significant hardship to Disabled Retirees… resulted from the discharge of Delphi's OPEB liabilities."  *See* Amended Recoupment Motion, p. 17.

disallowed administrative claims arising from the alleged nonpayment or failure to pay OPEB."

*Id*. at 17-18.  Specifically, the court concluded that:

> "[T]he plan modification order, by its expressed terms . . . permanently enjoins any person, including Mr. Sumpter, *from recoupment as well as offset or any other form of recovery by any manner.*  It's clear that a bankruptcy court's order confirming a Chapter 11 plan constitutes a final judgment on the merits and is to be given preclusive effect under res judicata."

*Id*. at 18-19 (emphasis added).

The Bankruptcy Court also held that Sumpter's motion should be denied because "it does not rely on a proper that is defensive, theory of recoupment but actually asserts a claim that is barred by the Court's prior bar date orders as well as the discharge under paragraph 20 of the plan modification and Article 11.2 of Delphi's confirmed and effective Chapter 11 Plan."  *Id*. at 21-22.[4]

Further, after denying the Amended Recoupment Motion, the Bankruptcy Court admonished Sumpter from bringing actions that are not premised upon a "good faith real argument" and issued a stern warning to Sumpter that future motions of that type "should merit the imposition of sanctions."  *Id*. at 23.

### D.    Post-Hearing Events and Bankruptcy Court's Denial of Amended Recoupment Motion Upheld

Following the September 22nd hearing on the Amended Recoupment Motion, Sumpter emailed the Bankruptcy Court on September 26, 2011 regarding the payor of his disability benefits.   *See* Exhibit 22.  Upon reviewing Sumpter's email and attached documents showing that he was receiving disability payments from the Reorganized Debtors through their third party administrator, the Reorganized Debtors promptly notified the Bankruptcy Court of the same in a

---

[4] The Reorganized Debtors acknowledge that during the hearing, based on an inadvertent representation to the Bankruptcy Court that the Reorganized Debtors were not paying benefits to Sumpter, the Bankruptcy Court concluded that there could be no recoupment claim.  *See* Exhibit 20.

letter to Judge Drain dated September 30, 2011.  *See* Exhibit 20 (Bkr. Dkt. No. 21603).  As stated in the letter, during the hearing, it was represented that the health and welfare benefits were paid by a VEBA trust fund pursuant to the Salaried OPEB Settlement Order (Docket 16545); that the salaried retirees' disability benefit payments are being paid from a source other than the Reorganized Debtors; and that the Reorganized Debtors are no longer paying salaried retiree disability benefit payments.   In fact, while substantially all OPEB benefits were terminated following the Salaried OPEB Settlement Order, disability benefits to salaried retirees, including Sumpter, continued.   Sumpter's disability benefit was currently being paid by Sedgwick CMS, a third-party claims agent, Delphi Automotive Systems LLC ("New Delphi"), under a services agreement with the Reorganized Debtors, was funding the disability benefit, and DPH Holdings Corp. ("DPHH") was reimbursing New Delphi both the amount of the actual disability benefit payment plus the cost of any third-party administrative expenses (e.g., Sedgwick fees).  *See id.*

As stated during the September 22nd hearing, there are no charges or deductions applied to Sumpter's disability benefit and Sumpter does not otherwise reimburse Sedgwick, New Delphi or any of the Reorganized Debtors.  Although social security and other third party sources affect the amount of Sumpter's disability benefit, there is no credit to the Reorganized Debtors or payment from Sumpter to any Reorganized Debtor.  Third-party benefits were taken into account in the year 2000 when the amount of Sumpter's disability benefit was calculated.  In other words, third-party benefits are simply an element of the formula for determining disability entitlements and are not later credited to any Reorganized Debtor.  As a result, Sumpter's benefit remained unchanged since his disability payments began in 2000. *See id.*

Based on the reasons stated in the letter, and as further detailed below, the Bankruptcy Court upheld its denial of Sumpter's Amended Recoupment Motion based on res judicata and other grounds as stated by the Bankruptcy Court.

On October 13, 2011, the Bankruptcy Court entered an order denying Sumpter's Amended Recoupment Motion (the "Order").  *See* Exhibit 21, October 13, 2011, Order.

### E.    Filing of Appeal

On or about November 21, 2011, Sumpter filed this appeal of the Order.

## V.    <u>STANDARD OF REVIEW</u>

Pursuant to Bankruptcy Rule 8013, a District Court reviews a bankruptcy court's conclusions of law de novo and reviews findings of fact for clear error. *In re Cavalry Const., Inc.*, 428 BR 25, 29 (S.D.N.Y. 2010); *see also* Fed. R. Bankr. P. 8013; *Lubow Machine Co. v. Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000) ("Like the District Court, we review the Bankruptcy Court's findings of fact for clear error, [and] its conclusions of law de novo ...." (internal citations omitted)); *Am. Home Assurance Co. v. Enron Natural Gas Mktg. Corp. (In re Enron Corp.)*, 307 B.R. 372, 378 (S.D.N.Y.2004) ("A bankruptcy court's conclusions of law are reviewed de novo and its findings of fact for clear error.").

Under the clear error standard, "[t]here is a strong presumption in favor of a trial court's findings of fact if supported by substantial evidence," and a reviewing court will not upset a factual finding "unless [it is] left with the definite and firm conviction that a mistake has been made." *In re Cavalry Const., Inc.*, 428 BR at 29 (quoting *Travellers Int'l A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1579 (2d Cir. 1994)); *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) ("[A] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left

with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted)).

## VI.    ARGUMENT

### A.    Introduction

In his appeal, Sumpter "concedes that his Amended Recoupment Motion was flawed in that, in addition to seeking recoupment as credits to future payments, the motion also incorrectly sought payments and/or refunds, which the principle of equitable recoupment does not permit." *See* Appellant's App. Brief at p. 6.  He now states that his issues on appeal are to be "applied only to uncollected, unreimbursed, pending, or future benefits." *Id*.  Regardless, just like the theories in his Amended Recoupment Motion, which the Bankruptcy Court even acknowledged "didn't make any sense," (Exhibit 19 at p. 22), Sumpter's appeal is similarly convoluted and appears to rely on (and misconstrue) the Reorganized Debtors' error in indentifying the payor of Sumpter's benefits as a basis for claiming that the Bankruptcy Court's ruling was erroneous. However, as stated above, the Bankruptcy Court was notified of the error and considered the parties arguments regarding the same prior to entering the Order.  *See* Exhibit 22, 10/4/11 E-mail.  Furthermore, as detailed below, the error did not otherwise affect the Bankruptcy Court's September 22, 2011 denial of the Amended Recoupment Motion.

Based on the foregoing, and the reasons further stated in this brief, the Reorganized Debtors submit that this Court should dismiss Appellant's appeal and otherwise affirm the Order for the following fundamental reasons:  (1) Sumpter lacks the prudential standing to assert the rights of third parties on appeal (i.e. other salaried retirees), (2) Sumpter's failure to specifically name the Delphi Salaried Retirees as appellants in the notice of appeal deprives the appellate court of jurisdiction over the unnamed parties, (3) Sumpter has abandoned his original request

and is seeking new relief on appeal, (4) the Bankruptcy Court correctly concluded Sumpter's recoupment claim is barred by *res judicata* based on the Bankruptcy Court's prior orders, (5) the Bankruptcy Court correctly concluded that Sumpter's "recoupment" claim was extinguished, discharged or otherwise enjoined under the Modified Plan and the Plan Modification Order, (6) the Bankruptcy Court correctly concluded that general principles of law do not afford Sumpter the right of recovery under a claim of recoupment, (7) the Bankruptcy Court correctly concluded that Sumpter's statute of limitations' argument is inapplicable, and (8) Sumpter's appeal is equitably moot.[5]

### B.    Sumpter Lacks the Prudential Standing to Assert the Rights of Other Delphi Salaried Retirees on Appeal

As the Bankruptcy Court correctly found, Sumpter did not have the authority to represent other salaried retirees.  While it appeared from the record of the Sept. 22 hearing that Sumpter seemed to acknowledge that he does not represent them and the Bankruptcy Court has acknowledged the same (*see* Exhibit 19 at p. 14), Sumpter nevertheless continues to impermissibly assert the rights of the Delphi Salaried Retirees through his appeal.[6]

In the Second Circuit, to have standing to appeal a bankruptcy court order, an appellant must be an "aggrieved person."  *Freeman v. Journal Register Co.*, 452 B.R. 367 (S.D.N.Y. 2010) (citing *Licensing by Paolo, Inc. v. Sinatra*, 126 F.3d 380, 388 (2d Cir. 1997)); *see also Exco Res.. v. Milbank*, 2003 U.S. Dist. LEXIS 1442 at *3 (S.D.N.Y. Jan. 28, 2003).  An aggrieved person is one that is "directly and adversely affected pecuniarily by the challenged order of the bankruptcy

---

[5] Furthermore, in regard to Sumpter's argument regarding Bankruptcy Rule 7012 and whether this contested proceeding was core v. non-core, the Reorganized Debtors state that is a non-issue that does not require any further response.

[6] The Reorganized Debtors also argued in their Response to the Amended Recoupment Motion that Sumpter didn't (i) filed a verified statement, as required by Fed. R. Bankr. P. 2019, that, among other things, identifies the name and address of each and every creditor he purports to represent; or (ii) submit a power of attorney evidencing his authority to act as agent or attorney in fact for all other salaried retirees as required by Fed. R. Bankr. P. 9010(c). *See* Reorganized Debtors' Resp. to Amended Recoupment Motion, ¶ 34 (Bkr. Dkt. No. 21581).

court." *Licensing*, 126 F.3d at 388.   "In a bankruptcy context, 'if appellate standing is not limited, bankruptcy litigation will become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order.'"   *Freeman*, 452 B.R. at 371.

"*In addition to satisfying the aggrieved person standard, an appellant must also have prudential standing. This requires that the appellant assert his own legal rights and interests and not those of third parties.*"   *Id.* (Emphasis added).   *See also In re Quigley Co.*, 391 B.R. 695, 705 (S.D.N.Y. 2008) ("[T]he objecting party can only challenge the parts of the plan that directly implicate its own rights and interests.").

As stated by the U.S. Bankruptcy Court for the Southern District of New York in *McHale v. Boulder Capital LLC*:

> The Supreme Court's general prohibition against allowing litigants to enforce rights of third parties exists for two reasons. First, courts should shy away from adjudicating rights unnecessarily, specifically because the purported holders of those rights may choose not to enforce them 'or will be able to enjoy them regardless of whether the in-court litigant is successful or not.' Second, permitting parties to assert the rights of third parties will frustrate court's efforts to properly determine issues as 'courts depend on effective advocacy' and 'third parties themselves usually [are] the best proponents of their own rights.' Courts have concluded that the prohibition against allowing litigants to enforce the rights of third parties applies with equal force offensively as well as defensively.

*McHale v. Boulder Capital LLC*, 439 B.R. 47, 60-61 (S.D.N.Y. 2010) (internal citations omitted).

Although Sumpter has standing to raise his own legal rights and interests (if any), he does not have standing to assert the rights of the Delphi Salaried Retirees who, as he even acknowledges, did not authorize him to act on their behalf.   Based on the foregoing, his attempts to now do so are patently frivolous.

C.    **Sumpter's Failure to Specifically Name the Delphi Salaried Retirees as Appellants in the Notice of Appeal Deprives the Appellate Court of Jurisdiction Over the Unnamed Parties**

In his Notice of Appeal, Sumpter listed himself as the only "Appellant." *See* Exhibit 23, Notice of Appeal.  This, in and of itself, would bar Sumpter's appeal as to the Delphi Salaried Retirees for lack of jurisdiction because the Delphi Salaried Retirees are not named as appellants in the Notice of Appeal.

Pursuant to Fed. R. Bankr. P. 8001(a), a "notice of appeal shall . . . contain the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their respective attorneys."  Bankruptcy Rule 8001(a) is an adaptation of Rule 3(c) of the Federal Rules of Appellate Procedure which states that "[t]he notice of appeal shall *specify the party or parties taking the appeal* . . . ." Fed. R. App. P. 3(c)(emphasis added).

In *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317 (1988), the Supreme Court held that failure to specifically name an appellant in a notice of appeal deprives the appellate court of jurisdiction over the unnamed party.  In *Torres*, the Court ruled that a notice of appeal that failed to name a party as one of the appellants was ineffective to permit that party's appeal, despite the listing of the first named party in the case caption followed by the phrase "et al." *Id*. at 317-18. *See also New Phone Co., Inc. v. City of New York*, 498 F.3d 127, 130 (2d Cir. 2007) (jurisdiction of the court is limited by the wording of the notice of appeal).

Although *Torres* involved Fed. R. App. P. 3(c), numerous courts have applied *Torres* to the analogous Bankruptcy Rule 8001(a).  For example, in *Storage Technology Corp. v. U.S. District Court*, 934 F.2d 244 (10th Cir. 1991), the Tenth Circuit, applying *Torres* in the Bankruptcy context, stated that "each and every appealing party must be specifically named in the notice of appeal or in a functionally equivalent document properly listing the appealing parties and filed within the appeal period."  *Id*. at 247-248.  *See also In re Pettibone Corp.*, 145

B.R. 570, 574 (N.D. Ill. 1992) (applying *Torres* to Fed. R. Bankr. P. 8001); *Concord Resources, Inc. v. Woosley (In re Woosley)*, 855 F.2d 687, 688 (10th Cir. 1988) (*Torres* controls appeal from bankruptcy court to district court; failure to list would-be appellant law firm presented jurisdictional bar to district court's hearing appeal); *Chartered Sec. Litig. v. The Charter Co. (In re The Charter Co.)*, 92 Bankr. 510, 514 (M.D. Fla. 1988) (appeal from bankruptcy court order properly dismissed as to unnamed individuals based on *Torres* and Bankruptcy Rule 8001(a)).

Although the Second Circuit has not specifically addressed the issue of whether *Torres* is applicable to Bankruptcy Rule 8001(a), at least one New York court in the bankruptcy context has specifically indicated that "failure to name an appealing party may preclude that party's appeal." *Exco Res. v. Milbank*, 2003 U.S. Dist. LEXIS 1442 at *10 (S.D.N.Y. Jan. 28, 2003) (citing *In re Pettibone Corp.*, 145 B.R. at 574, which applies *Torres* to Fed. R. Bankr. P. 8001). Furthermore, other New York courts have indicated that the court's jurisdiction could be curtailed with respect to parties that were not named in the notice of appeal. *See e.g., Novon Int'l v. Novamont S.p.A. (In re Novon Int'l)*, 2000 U.S. Dist. LEXIS 5169 at *3 (W.D.N.Y. Mar. 31, 2000); *see also Exco*, 2003 U.S. Dist. LEXIS 1442 at *10 n.1.

Based on the foregoing, because the Delphi Salaried Retirees were not named as appellants in the Notice of Appeal, the Court lacks jurisdiction to adjudicate their rights.

**D.** **The Bankruptcy Court Correctly Concluded that Appellant's "Recoupment" Claim is Barred by *Res Judicata* Based on the Bankruptcy Court's Prior Orders**

Notwithstanding Sumpter's narrowing of his requested relief to prospective benefits, on the apparent belief that the prior orders of the Bankruptcy Court would no longer apply, his appeal still fails for the reasons stated by the Bankruptcy Court. The Reorganized Debtors say this because the so-called wrong Sumpter complains of and which serves as the basis for his

recoupment claim arose in connection with the Salaried OPEB Settlement Order and prior to the

Plan Modification Order.  This is evidenced on p. 14 of his Appeal Brief where he states in para.

31(iv)(b) that "The cause of action in this recoupment motion seeks to establish the correct value

of the discharged OPEB benefits by seeking a credit to SSDB reimbursements by Salaried

Retirees."  Thus, it supports what the Reorganized Debtors have said all along, namely that

Sumpter is unhappy with the additional cost to him as a result of the termination or reduction of

OPEB benefits under the Salaried OPEB Settlement Order; that he feels under the circumstances

that Reorganized Debtors should not have the benefit of the savings the Debtors' estates realized

under the settlement[7] and that a way to "recoup" those savings is to prohibit the Reorganized

Debtors from further reducing his disability payment by the amount of payments he receives

from social security.  In other words, he wants to redo the deal embodied in the Salaried OPEB

Settlement Order and incorporated in the Modified Plan and the Plan Modification Order.  While

Sumpter may believe his "cause of action" post-dates these orders of the Bankruptcy Court, the

bottom line is that it doesn't.

As the Bankruptcy Court found, Sumpter's claim arises from benefit plan changes

specifically authorized and approved by this Court.  The Salaried OPEB Settlement Order (Bkr.

Dkt. No. 16545) and ultimately, the Plan Modification Order (Bkr. Dkt. No. 18707), which

authorized the debtors to terminate the OPEB plans, remain res judicata as to Sumpter's claim

and can no longer be challenged.  *See* Exhibit 19 at pp. 16-18, 20.

The Provisional and Final OPEB Termination Orders found, after extensive hearings and

---

[7] For the first time, Sumpter raises the claim of "unjust enrichment."  *See* Appellant's App. Brief at pp. 23-25.  Any and all arguments and gratuitous facts contained in his brief relating to "unjust enrichment" should be dismissed and otherwise disregarded because Sumpter never raised them in the lower court proceedings. *See e.g., Gaste v. Kaiserman*, 863 F.2d 1061, 1069 n.6 (2d Cir. 1988) ("[I]if a party fails to raise an issue on appeal in its initial brief, the issue is waived.");  *see also Mycak v. Honeywell, Inc.*, 953 F.2d 798, 803 (2d Cir. 1992) ("A party seeking to overturn the decision of a trial court may not ordinarily obtain review of an issue not raised below.").

after considering a multitude of objections, that Debtors <u>were</u> <u>authorized</u> to terminate OPEB to salaried retirees.  Neither of those Orders, nor the OPEB Settlement Order, restricted Debtors' right to continue to make the offsets and reductions for third party payments complained of in the Amended Recoupment Motion and this appeal, or granted salaried retirees the right to recover any offsets made by the Debtors.  Sumpter was aware of all proceedings relating to the Salaried OPEB Termination Motion and its resolution.  The Orders became final and binding.  "Under the doctrine of *res judicata*, ….a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action, not just those that were actually litigated." *Caldwell v. Gutman, Mintx, Baker & Sonnenfeldt,* 701 F. Supp. 2d 340, 351 (E.D.N.Y. 2010)(internal quotations and citations omitted).  Accordingly, the Bankruptcy Court correctly concluded that Sumpter is barred as a matter of *res judicata* from re-litigating the OPEB Termination Motion or otherwise attacking the Final OPEB Termination Order or otherwise raising this "recoupment" claim.  *See* Exhibit 19 at pp. 16-22.  This is still true irrespective of the fact that the Reorganized Debtors currently reimburse New Delphi for the disability payments.

Furthermore, the above Orders preclude Sumpter's claim under principles of collateral estoppel.  Sumpter cannot have a recoupment claim unless (among other things) he has suffered an actionable wrong and resulting damages to be recouped.  Thus, Sumpter argues that "as a means to mitigate the adverse effect of the lost of [sic] OPEB benefits and in an effort to establish the correct value of the discharged OPEB benefit, the Movant seeks to recoup, for the disable retiree[s], their prior and ongoing Social Security reimbursements…." *See* Amended Recoupment Motion, ¶ 12 (Bkr. Dkt. No. 21566).  Any claim that the elimination of OPEB benefits was wrongful is precluded by the final orders of the Bankruptcy Court approving their

elimination.  *See* Exhibit 19 at pp. 13-15, 20.

**E.**    **The Bankruptcy Court Correctly Concluded that Sumpter's "Recoupment" Claim was Extinguished, Discharged or Otherwise Enjoined under the Modified Plan and the Plan Modification Order**

It is well established that confirmation of a chapter 11 plan discharges any and all debts of the debtor which arose prior to confirmation, in accordance with the plan and the Bankruptcy Code.  11 U.S.C. § 1141(d) (1).  The Bankruptcy Code provides, in pertinent part:

> (c)    Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of the plan, the property dealt with by the plan is free and clear of all claims and interests of creditors…
>
> (d)    Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—
>
> > (A) discharges the debtor from any debt that arose before the date of such confirmation and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not—
> >
> > (i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;
> >
> > (ii) such claim is allowed under section 502 of this title…

11 U.S.C. § 1141(c) and (d)(1).

On July 30, 2009, the Bankruptcy Court entered the Plan Modification Order.  By entry of the Plan Modification Order, (i) the Reorganized Debtors were discharged of, among other things, all Claims and Causes of Action, whether known or unknown, including claims for recoupment; (ii) all retained assets of the Reorganized Debtors revested in the Reorganized Debtors free and clear of all Claims of creditors; and (iii) all Persons (as that term is defined in the Plan) were permanently enjoined ("Plan Injunction") from, among other things, "commencing…in any manner any Claim, Interest, Cause of Action or any other right or Claim

against the Reorganized Debtors, which they possessed or may possess prior to the Effective

Date" of the Plan.  *See* Exhibit 18, Plan Modification Order, *¶¶ 20 and 22*.

The effect of the Reorganized Debtors' discharge is set forth in section 524(a) of the

Bankruptcy Code, which operates as a permanent injunction against the commencement or

continuation of any action to recover discharged claims against the Reorganized Debtors.

Specifically, 11 U.S.C. § 524(a)(2) provides:

> (a)    A discharge in a case under this title –
>            …..
> (2) operates as an injunction against the commencement or
> continuation of an action, the employment of process, or an
> act, to  collect, recover or offset any such debt as a personal
> liability of the debtor, whether or not discharge of such debt
> is waived.

The alleged claim Sumpter has asserted arose <u>before</u> the date of the plan confirmation.

Therefore, under the Plan Modification Order and the Bankruptcy Code, all claims asserted by

Sumpter in the Motion were discharged and Sumpter is permanently enjoined from prosecuting

such claims against the Reorganized Debtors.

Further, as correctly noted by the Bankruptcy Court, irrespective of whether Sumpter's

claim could be deemed a claim for recoupment, the Modified Plan and Plan Modification Order

permanently enjoined any person, including Sumpter from exercising any right or claim of

recoupment arising before the Effective Date of the Modified Plan.  *See* Exhibit 19 at pp. 17-19.

Sumpter received actual notice of the objection deadline to confirmation of the Modified Plan

and failed to file an objection.  Further, despite receiving actual notice of the Administrative

Claims Bar Date, Sumpter failed to file by the Administrative Claim Bar Date proof of an

administrative expense claim for the alleged overpayments made during the postpetition period

or take any other action prior to confirmation of the Modified Plan to preserve his alleged

20

recoupment claim. As a consequence, Sumpter, like all other creditors, became bound by the

provisions of the Plan and Plan Modification Order which prohibited the exercise of any

recoupment based on pre-confirmation claims. *See Daewoo International (America) Corp.*

*Creditor Trust v. SSTS America Corp. et. al.*; 2003 U.S. Dist. LEXIS 9802 at p.7 (S.D.N.Y. 2003

("…in this case, because SSTS was provided sufficient notice to object to the plan's prohibition

on recoupment and because it did not do so in a timely fashion before the Bankruptcy Court, we

will not allow it to do so now."); *see also, In re King's Terrace Nursing Home,* 184 B.R. at 204*,*

where the court wrote:

> The broad definition of "claim" in Section 101(5) performs a vital
> role in the reorganization process by requiring, in conjunction with
> the bar date, that all those with a potential call on the debtor's
> assets, provided the call in at least some circumstances could give
> rise to a suit for payment, see *In re Chateaugay Corp.,* 944 F.2d at
> 1003, come before the reorganization court so that those demands
> can be allowed or disallowed and their priority and
> dischargeability determined. This is important even with respect to
> valid claims for equitable recoupment, despite their usual survival
> of plan confirmation, because the existence of such claims, like the
> existence of other non-dischargeable debts, can have a significant
> impact on the necessary determination of whether a proposed plan
> is feasible. [citations omitted] To allow a creditor such as DSS to
> stand outside the process of reorganization and later assert its right
> to recoupment thus would frustrate an important policy underlying
> the Code by undermining and, in some circumstance, destroying
> the utility and reliability of the bankruptcy judge's feasibility
> determination. At least in some circumstances, it would be
> impossible for a judge to determine accurately whether a proposed
> plan would create a viable reorganized company or, instead, an
> entity ripe for another bankruptcy precipitated by the absent
> creditor.

In summary, the Plan Modification Order specifically addressed and permanently

enjoined recoupment claims. The Plan Modification Order remains res judicata as to Sumpter's

claim irrespective of the fact that the Reorganized Debtors currently reimburse New Delphi for

the disability payments. Furthermore, Sumpter's claim is barred by his failure to submit an

administrative claim before the bar date, since it arises out of the Debtors' conduct (elimination

of the OPEB benefits) between the filing of the bankruptcy petition and the date set forth in the

Administrative Bar Date Order.  *See* Exhibit 19 at pp. 16-17.

> **F.      The Bankruptcy Court Correctly Concluded that General Principles of Law Do Not Afford Sumpter the Right of Recovery Under A Claim of Recoupment**

Sumpter's Amended Recoupment Motion and appeal is based upon a fundamental

misunderstanding of the doctrine of recoupment.  Recoupment does not provide a remedy but

"…is in the nature of defense arising out of some feature of the transaction upon which the

plaintiff's action is grounded."  *Bull v. United States*, 295 U.S. 247, 262; 79 L. Ed. 1421; 55 S.

Ct. 695 (1935).  *See also*, *In re Drexel Burnham Lambert Group, Inc.*, 113 B.R. 830, 854 (Bankr.

S.D.N.Y. 1990) ("In the absence of a statute to the contrary, recoupment is purely defensive, or

in the nature of a common-law defense, and not a separate cause of action or weapon of offense

[citations omitted].");  *Brown v General Motors Corporation,* 152 B.R. 935, 938 (W.D. Wis.

1993) ("Recoupment is only a challenge to the validity and extent of the plaintiff's claim, and no

recovery is permitted [citations omitted]"); and *In re Bram*, 179 B.R. 824, 826 and 827 (Bankr.

E.D. Tex. 1995) ("Recoupment…is asserted for the purpose of reducing or extinguishing a debt

arising from the same transaction;" "…under the doctrine of recoupment, no affirmative

recovery may be permitted.").

Therefore, if, for argument purposes only, Debtors (or Reorganized Debtors) had

commenced an action against Sumpter for monies owing to them on account of retiree benefits

provided, then theoretically Sumpter could have sought to reduce (or eliminate) the amount of

Debtors' recovery by arguing that he was entitled to recoup alleged overpayments.  But, this is

not what has occurred.  Nor could it occur because there are no charges or deductions applied to

Sumpter's disability benefit and Sumpter does not otherwise reimburse any of the Reorganized Debtors. In fact, there is no credit to Delphi or payment from Sumpter to any Reorganized Debtor. However, Sumpter is still improperly seeking to assert a right "affirmatively," as there is no claim being asserted against Sumpter; the Reorganized Debtors are merely paying Sumpter his disability benefit determined in accordance with the terms of the disability plan. As a result, the Bankruptcy Court correctly concluded that Sumpter's Amended Recoupment Motion should also be dismissed on these grounds. *See* Exhibit 19 at pp. 20-22.

G.    **The Bankruptcy Court Correctly Concluded that Sumpter's Statute of Limitations Argument Is Inapplicable**

Sumpter incorrectly argues that because he invokes the doctrine of recoupment, it "…is not subject to any statute of limitations." It is true that the statute of limitations does not preclude a defendant from raising the right to recoupment where recoupment is asserted as a defense and the "main action itself is timely." *Bull, supra,* 295 U.S. at p. 262. *See also In re MidAtlantic Fund*, 60 B.R. 604, 610 (Bankr. S.D.N.Y., 1986) ("The ultimate purpose of a limitation law is to bar actions rather than to suppress or deny matters of defense. Hence, as a general rule, limitation statutes are not applicable to defenses, but apply only where affirmative relief is sought.") However, that principle is completely inapplicable here where recoupment has not been raised as a defense to an action instituted against Sumpter by the Reorganized Debtors but has been invoked by Sumpter for affirmative relief.

Furthermore, as stated by the Bankruptcy court, "a confirmation order that specifically enjoins permanently the assertion of the doctrine of recoupment constitutes res judicata, where that order is final, as a plan modification order is, and the party against whom that order is asserted for res judicata purposes had sufficient notice of it for due process purposes which is undisputed here." Exhibit 19 at p. 19. Therefore, not only does Sumpter's argument that his

"recoupment" claim survive discharge fail based on the relevant principles of law, it also fails because of the injunction provisions of the Plan Modification Order and Sumpter's failure to void the Plan Modification Order within six months of its entry pursuant to 11 U.S.C. §1144.

### H.    Sumpter's Appeal is Equitably Moot

In addition to the arguments above, Sumpter's appeal should also be dismissed because it is equitably moot.  "Equitable mootness is a prudential doctrine that is invoked to avoid disturbing a reorganization plan once implemented." *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 144 (2d Cir. 2005); *see also In re Chateaugay Corp.*, 988 F.2d 322, 325 (2d Cir. 1993) ("These principles are especially pertinent in bankruptcy proceedings, where the ability to achieve finality is essential to the fashioning of effective remedies.").

"An appeal should . . . be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." *Freeman v. Journal Register Co.*, 452 B.R. 367, 372 (S.D.N.Y. 2010) (quoting *In re Chateaugay Corp.*, 988 F.2d at 325).  "When a reorganization has been substantially consummated, there is a 'strong presumption' that an appeal of an unstayed order is moot." *Freeman*, 452 B.R. at 372 (citations omitted). As stated in *Freeman*, this presumption may only be overcome when five circumstances are present:

> (a)the court can still order some effective relief; (b)such relief will not affect the re-emergence of the debtor as a revitalized corporate entity; (c) such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court; (d) the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings; and (e) the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order . . . if the

24

failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.

*Id*. at 372-73 (internal citations, quotations, and alterations omitted).

Even, if for argument purposes only, Sumpter's appeal has merit (which it doesn't), none of the circumstances are present here.

## VII.    CONCLUSION

For all of the reasons set forth above, the Reorganized Debtors' hereby request that this Court enter an order:  (1) dismissing Appellant's appeal that seeks to act on behalf of all Delphi Salaried Retirees not specifically named in the Notice of Appeal, (2) affirming the Bankruptcy Court's Order denying Appellant's Amended Recoupment Motion, and (3) grant the Reorganized Debtors' such other and further relief to which they are entitled for having to respond to this frivolous appeal.

Dated: Detroit, MI
      December 22, 2011

BUTZEL LONG

By:   /s/ Cynthia J. Haffey
      Cynthia J. Haffey
      Bruce L. Sendek
      Thomas B. Radom
      150 West Jefferson Avenue, Suite 100
      Detroit, MI  48226
      (313) 225-7000
Attorneys for Reorganized Debtors

1316580v1

BUTZEL LONG, a professional corporation
150 West Jefferson, Suite 100
Detroit, MI  48226
(313) 225-7000
Cynthia J. Haffey
Bruce Sendek
Thomas B. Radom
Ziyad Hermiz
*Attorneys for Reorganized Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| DPH HOLDINGS CORP., *et al.,* | ) | Case No. 05-44481 (RDD) |
| | ) | Jointly Administered |
| Reorganized Debtors. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2011, a true and correct copy of the *Brief On Appeal Of Appellee Reorganized Debtors* was served via e-mail to Mr. James Sumpter at jsump@ieee.org.

Dated: Detroit, Michigan                    /s/ Alexis L. Richards_____
          December 22, 2011