# EXHIBIT 3

# United States Bankruptcy Court

Southern District Of New York

− − − − − − − − − − − · − − − − −x

In re                                                    : Chapter 11
DELPHI CORPORATION, et al.,

                                                         : Case No. 05-44481 (RDD)

                                    Debtors              : (Jointly Administered)

− − − − − − − − − − − − − − −  x

Address: Delphi Corporation
        5725 Delphi
        Drive, Troy, Michigan 48098

**NOTICE OF OBJECTION BY JAMES B. SUMPTER, CURRENT CREDITOR**

**RETIREE TO**

"MOTION FOR ORDER UNDER 11 U.S.C. §§ 105, 363(b)(1), AND 1108 CONFIRMING

DEBTORS' AUTHORITY TO TERMINATE EMPLOYER-PAID POST RETIREMENT

HEALTH CARE BENEFITS AND EMPLOYER-PAID POST-RETIREMENT LIFE

INSURANCE BENEFITS FOR CERTAIN (A) SALARIED EMPLOYEES AND (B)

RETIREES AND THEIR SURVIVING SPOUSES ("SALARIED OPEB TERMINATION

MOTION")", Document #14705 filed February 4, 2009 and delivered to James B. Sumpter on

**February 6, 2009.**

I, James B Sumpter, have filed written papers with the court to object to said motion no later than

the date and time in the motion of February 17, 2009 at 4:00PM and per all requirements stated. I

am requesting the court to consider the following objections:

1. I object to the debtors **February 17, 2009 date** set for objections to be submitted. Basis: From the date of receipt of the motion (February 5, 2009) with NO prior knowledge, that leaves 6 working days to develop and submit an objection (Presidents day is February 16, 2009). That is insufficient time to research and form a well refined objection.

2. I object to a **March 31, 2009 termination date.** This termination date does not allow sufficient time to investigate alternatives to Delphi's petition.

    Furthermore, through its pattern, throughout the years, Delphi has established the de facto termination date in any plan year to be December 31. Delphi and retirees inter to a contract each year, in which retirees are an unequal partner. Except for specific events such as births, deaths and marriage no changes can be made except during the specified enrollment period, which occurs in October of each year. I believe that this view is confirmed by the fact that Delphi proposes to have retirees participate in existing plan arrangements, beginning on April 1, 2009, as 100% self payers. In addition this suggest that Delphi is attempting to manipulate retirees to avoid penalties and fees that it would incur due to contractual arrangements with insurance providers, which have likely based their fees to Delphi on the number of participants in the plan.

3. In addition, Between July 1985 and February 1989, I work as a highly compensated Independent contractor to Delphi. On February 4, 1989, I became a salaried employee of Delco electronics (the predecessor to Delphi automotive.). I accepted a $20,000 per year salary cut (along with the loss of significant tax benefits) to become a salaried employee. I accepted this employment offer, in part, because of the compensation package, which included hiring in at the pay grade of what is termed an 8th level engineer, health insurance and life insurance for my family and me, stock savings and a retirement program, which

included pension, health care and life insurance. I have attached my employment offer letter
a separate attachment file, document (1).

The company received exceptional benefit from my engineering expertise, innovation and
leadership. Should the court grant Delphi's request, Delphi will have managed to secure my
services for an amount substantially below market value. Therefore, eliminating any part of
my retirement benefits becomes an unconscionable an unfair exploitation of my position. I
am retired on full disability. I have systemic Lupus. I am fifty-seven years old. I am not
able to work in my profession or otherwise. I have a fixed income. Therefore I have no
means to generate income to mitigate the effects of Delphi's action. I have a pre-existing
chronic medical condition, therefore alternative life insurance and health insurance is not
available to me.

Therefore I object to Granting Delphi's request as it will result in an unfair catastrophic
reduction in the quality of my life and a probable financial collapse. It is **unfair** to sacrifice
my financial stability (and that of other retires like me) in order to save money for Delphi.

The court should also note that the offer of employment from Delphi made no reference
to the idea that these benefits could be eliminated at any time.

4. I n consideration of the compensation (which included, salary, health insurance, life insurance and
retirement benefits) paid for services I performed for Delphi Automotive Systems Corporation I
assigned to Delco and succeeding companies all rights to all patents, utility models, industrial
designs, trademarks, service marks, semiconductor chip mask works and copyrights on all writings,

designs, inventions and works that I conceived, made, invented or suggested during the time of my employment that were connected with my work or are otherwise related to the business of Delphi.

I (and many other salaried employees, who are now retired) assigned intellectual property to Delphi in exchange for salary and benefits. Delphi now seeks to eliminate a substantial portion of my retirement package while retaining all intellectual rights to innovations, designs and writings I produced at the company. Some of these innovations were transferred to General Motors. In some other cases Delphi took possession of the innovations, but chose to issue defensive publications in lieu of seeking patents. The income and benefit that Delphi receives from intellectual property that I conceived is substantial and will likely continue past my lifetime. Permitting Delphi to avoid its obligations established in my retirement package will transform a mutually beneficial agreement into an **unfair exploitation** of a former, dedicated employee.

5.   It was the intent of Congress Bankruptcy law requires that creditors including retirees be treated fairly. However, Delphi proposes to eliminate its monthly supplement to Medicare part B, Delphi has abandoned its promise to provide a medical savings account, Delphi is seeking to abandon medical and life insurance coverage for disable employees and surviving spouses among others. However, The Delphi disability retirement plan prohibits me from any gainful employment or occupation. The Plan also requires that any payments that Delphi makes are reduced by any social security disability benefit for which I might become eligible. Delphi has proposed to make no adjustments in any of it requirements. Delphi seeks to secure all advantage for the company at the expense of my security and well being.

Therefore I object to Delphi's petition as being completely unfair and in opposition to bankruptcy law and the intent of congress.

6.    The Summary Plan Document (SPD) in effect when I retired on disability has the following language:

> Delphi will continue contributions towards your health care coverage's while you remain totally and continuously disabled and you remain on an approved disability leave. (See page 81 column 1 in the SPD, shown in attachment file, document ( 2).)

> If you have 10 or more years of participation at the commencement of your disability, your Basic Life Insurance will be continued at no cost to you
> while you are totally and permanently disabled prior to age 65. (See page 81 column 1 in the SPD — shown in attachment file, document (2) .)

> If your most recent date of hire (or adjusted service date) with Delphi was prior to January 1, 1993, your Basic Life Insurance will immediately reduce upon retirement, as shown on **page 101. <u>If you retire under the total and permanent disability provisions of the Retirement Program, your Basic Life Insurance will continue, unreduced, until age</u>** 65. (See page 97 column 2 in the SPD — shown in attachment file, document (3) .)

Delphi claimed no specific right to change these disability benefits. However, had they reserved such a right, the changes would apply only if made prior to my retirement.

Since, these benefits were codified at the time that I was retired on disability by the company; the commitment contained in these paragraphs requires Delphi to continue to pay

for my benefits until age 65. If Delphi eliminates its insurance program then based on the language in the SPD, Delphi continues to be obligated to pay for the same coverage, wherever I can find it. Therefore I object to Delphi's efforts to terminate its obligations as it pertains to any part of my retirement benefits.

7.  I object to Delphi's petition because it is cruelly unfair to surviving spouses, particularly the surviving spouses (if they have remained unmarried) of four Delphi employees from Kokomo Indiana, who were killed (while on company business) when their flight (American Eagle 4148) Crashed in Northern Indiana, on October 31, 1994.

8.   Delphi has behaved in bad faith, undertaking a cynical strategy to deny congressionally mandated benefits and protections to retirees. The first part of this strategy was to eliminate health care benefits for retirees past age 65. In dropping its post "age sixty five" health care coverage, Delphi offered retirees a medical spending account. The proposal to provide the spending account was a ploy to mute objections by retirees, since it's now clear Delphi never intended to maintain these accounts long term. Once the terms of the plan were accepted by the court, Delphi has "now" decided that it is in its business interest to drop the saving account. I believe this because Delphi has access to economist and experienced financial experts that should have been able to predict some of the condition now present in the economy. They certainly should have been able to predict these conditions as a risk factor. Furthermore the senior management and directors of the company should have been aware of the automotive market cycle and anticipated challenges in this time frame.

Therefore I am convinced that riffling retirees' benefits has always been a major component of the reorganization plan.

This is especially apparent when we consider that any set of directors or managers committed to a healthy reorganization would have leveraged Delphi's considerable engineering, development and manufacturing resources to diversify its product portfolio so as to introduce products with shorter development cycles and cost. They would have also diversified their product portfolio to be less dependent on one dominant customer in an over- supplied automobile market segment.

I believe that this is sufficient reason, alone, for the court to deny Delphi's petition. Therefore, for all the reasons stated above, I respectfully ask the court not to grant any part of Delphi's petition and to establish an 11-14 committee so that the retirees are in a better position to monitor Delphi's behavior and protect our earned benefits.

Per the instructions in the referenced motion, this written **NOTICE OF OBJECTION BY JAMES B. SUMPTER** is being filed with the bankruptcy court as a PDF document on a 3.5 inch disk.

1. It is also being submitted as a hard copy directly to:

    The Honorable Robert D. Drain
    United States Bankruptcy Court for the Southern District of New York
    One Bowling Green
    Room 610
    New York, New York 10004

2. Separate copies have also been mailed to:

    Delphi Corporation
    5725 Delphi Drive
    Troy, Michigan 48098

7

(Attn: General Counsel)

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive
Suite 2100
Chicago, Illinois 60606
Attn: John Wm. Butler, Jr.

Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017
(Attn: Donald Bernstein and Brian Resnick)

Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
(Attn: Robert J. Rosenberg and Mark A. Broude)

Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004
(Attn: Bonnie Steingart)

Office of the United States Trustee for the Southern District of New York
33 Whitehall Street
Suite 2100
New York , New York 1004
(Att'n: Brian Masumoto)

# United States Bankruptcy Court

Southern District Of New York

— — — — — — — — — — — — — — · — — — — — x

In re                                            : Chapter 11
DELPHI CORPORATION, et al.,

                                                 : Case No. 05-44481 (RDD)

                           Debtors               : (Jointly Administered)

— — — — — — — — — — — — — — - - - - - - - - —x

Address: Delphi Corporation
          5725 Delphi
          Drive, Troy, Michigan 48098

**NOTICE OF OBJECTION BY JAMES B. SUMPTER, CURRENT CREDITOR**

**RETIREE TO**

"MOTION FOR ORDER UNDER 11 U.S.C. §§ 105, 363(b)(1), AND 1108 CONFIRMING

DEBTORS' AUTHORITY TO TERMINATE EMPLOYER-PAID POST RETIREMENT

HEALTH CARE BENEFITS AND EMPLOYER-PAID POST-RETIREMENT LIFE

INSURANCE BENEFITS FOR CERTAIN (A) SALARIED EMPLOYEES AND (B)

RETIREES AND THEIR SURVIVING SPOUSES ("SALARIED OPEB TERMINATION

MOTION")", Document #14705 filed February 4, 2009 and delivered to James B. Sumpter on

**February 6, 2009.**

_____**February 16, 2009**
                          **James B. Sumpter**
                          **21169 Westbay Circle**
                          **Noblesville, IN 46062**
                          **317-877-0736**

1

# Document 1



**Delco Electronics**

Subsidiary of
GM Hughes Electronics

December 21, 1990

James Sumpter
5560 Buttonwood Drive
Noblesville, IN 46060

Dear James,

We at Delco Electronics are very pleased that you have accepted our offer of employment to work for
Larry Cracraft In AE - Classis System beginning on Tuesday, February 5, 1991. Your compensation with
Delco Electronics will consist of a monthly base salary of $5,800.CO.

I would also like to remind you of Delco's outstanding benefit program which includes life, medical,
disability, accident, vision, dental, and prescription insurances. It also includes a stock savings
purchase program, a retirement program, generous vacation and holiday allowances, and special car
discounts for you and your family. The effective dates of these benefit plans vary. Further
clarification of these benefits is available from myself or a representative from the Placement and
College Relations staff.

If you are not local, Delco Electronics will pay the reasonable expenses of moving your household
belongings to your new location. Personnel will make all of the moving arrangements  for you. Please
contact Personnel with the necessary moving information a minimum of two weeks prior to your move date.

You will be required to successfully pass a physical examination administered under the direction of
our Medical Director prior to your employment. This examination will consist of a chest X-ray, vision
and hearing tests, and a urine specimen for drug testing. Please report to the Administration Building
at 700 E. Firmin Street for your physical, which is scheduled for Tuesday, January 29, 1991 at
10:00 a.m. Enclosed is a medical questionnaire which should be completed and submitted to the nurse
 whet reporting for this physical.

For your first day of work, please report to the lobby of our Corporate Technology Center (2151 E.
Lincoln Road) at 8:30 a.m. in order to be signed onto the payroll. Please be sure to bring your social
security card, your birth certificate, a blank bank deposit slip, work authorization papers (
  current non-U.S. citizens), and your  driver's license. You will also be required to have your
dependents' social security numbers, if appropriate.

Please ask your school to forward to us, within three months, a transcript of credits covering your
entire college history. This will be useful in determining future training needs in conjunction with
our Manpower Planning Program.

We are excited that you will soon begin working for Delco Electronics, the "World Leader in Automotive
Electronics". We hope that you will find this to be the beginning of a very exciting and rewarding
career with us.

Sincerely,

*Glen D. Hall*

Glen D. Hall
Placement and College Relations

Office Collect  317-451-0213
Toll Free      1-800-428-0645
Enclosures

Delco Electronics
Corporation
One Corporate Center
Kokomo, Indiana
46904-9005

# **Document** 2

# *Other Benefit Program Coverages*
# *While on Disability Leave*

## *Health Care Coverages*

Delphi will continue contributions towards your health care coverages while you remain totally and continuously disabled and you remain on an approved disability leave. If while you are receiving Sickness and Accident or Extended Disability Benefits the period of disability exceeds your length of service, health care coverage will be continued. However, receipt of Supplemental Extended Disability Benefits does not extend the continuation period. Note also that for this coverage to remain in effect you must continue to pay the applicable monthly employee contribution, if any.

## *Savings-Stock Purchase Program*

You may continue to contribute to the S-SPP while you are on an approved disability leave and while you continue to receive salary continuation payments. If you are eligible, you may contribute for a period of up to six months, and such contributions will be based on salary continuation payments of 25% of your monthly base salary.

Delphi contributions continue to vest while you remain on disability leave. You retain the usual withdrawal, fund exchange and loan privileges. You must, however, continue to make your loan repayments to the Program.

## *Life and Disability Benefits Coverages*

Corporation contributions for Basic Life Insurance, Sickness and Accident, and Extended Disability Benefits coverages will be continued:

- For any period you are entitled to receive Sickness and Accident benefits or salary continuation payments while you are totally disabled;

- And thereafter, while you are totally and continuously disabled and remain on an approved disability leave, but not to exceed a period equal to your years of participation (see page 116) as of the first day of disability.

Also, in the event your disability leave is canceled because the period of the leave equaled your length of service, life and disability benefits coverages may be continued while you are entitled to receive monthly Extended Disability Benefits. Delphi will make contributions for these coverages during these periods. However, receipt of Supplemental Extended Disability Benefits will not extend continuation of Life and Disability Benefits coverage.

If your disability leave is canceled because you recovered, and you again become totally disabled within three working days of the date your leave was canceled, so as to be unable to work, life and disability benefits coverages to which you were entitled will be continued under these circumstances. If you are returned to an approved disability leave, Delphi will make contributions for these coverages while you remain totally disabled. However, coverage cannot continue beyond the period equal to your years of participation as of your first day of disability.

You will need to pay the required monthly contributions to continue Optional Life, Dependent Life and Personal Accident Insurance while your Basic Life Insurance remains in force.

If you have 10 or more years of participation at the commencement of your disability, your Basic Life Insurance will be continued at no cost to you while you are totally and permanently disabled prior to age 65.

## *Accelerated Benefits Options*

If you are diagnosed as having a terminal illness with a life expectancy not to exceed 12 months, you may be eligible to receive an accelerated benefits option payment of up to 50%, but not less than $1,000, of your Basic Life Insurance. However, if your Basic Life Insurance will be reduced within twelve months of the date the accelerated benefits option payment is approved, such payment will be limited to 50% of the fully reduced amount of Basic Life Insurance.

# Document 3

**Lifetime Annuity Contract:** If you were hired prior to November 1, 1998 in lieu of (1) receiving your account in a lump sum at retirement or (2) deferring receipt of your account, you may elect to receive an annuity contract to be purchased by the S-SPP trustee in lieu of all the assets in your account. This arrangement will provide a monthly income after retirement.

Refer to pages 1 through 10 for additional information on the Savings-Stock Purchase Program.

## Individual Retirement Account

Another alternative available at retirement, is the "rollover" of the taxable amount of a S-SPP distribution to an Individual Retirement Account (IRA). Similar to the annuity option, an IRA will provide for deferred income. Any rollover of assets would be arranged between you and a bank or investment company of your choice. You should consult with a financial advisor concerning the tax impact or any sales and commission charges associated with an IRA.

## Health Care Program

Generally, under current provisions your participation in the Salaried Health Care Program can be continued in retirement. However, you will be required to pay the full monthly cost of any continuing coverage if you:

- Are an employee whose continuous service with the Corporation commenced on or after January 1, 1993 (or have an adjusted service date on or after that date);

- Retire with less than 10 years of credited service under the Delphi Automotive Systems Retirement Program for Salaried Employees; or

- Retire voluntarily at or after age 55 and prior to age 60 when your combined years of age and credited service total less than 85 or if hired on or after January 1, 1988 regardless of whether you have 85 points.

  *Note: If you are eligible to retire with 30 or more years of credited service at any age (and your most recent date of hire is prior to January 1, 1988), you are eligible for corporation contributions for health care in retirement.*

  *In addition, at age 65, or earlier while you are enrolled in Medicare Part B, you may receive a monthly special benefit, as described on page 66.*

As a retiree, any dependent you acquire after you retire will be limited to sponsored dependent coverage for which you pay the full cost.

**Former employees eligible only for a deferred retirement benefit are NOT entitled to any Delphi Automotive Systems Salaried Health Care Program coverage.**

## Life Insurance

In retirement, your life insurance coverage may be continued as stated below.

- **If your most recent date of hire (or adjusted service date) with Delphi was prior to January 1, 1993,** your Basic Life Insurance will immediately reduce upon retirement, as shown on page 101. **If you retire under the total and permanent disability provisions of the Retirement Program,** your Basic Life Insurance will continue, unreduced, until age 65.

  This coverage will be continued with Delphi contributions (except for voluntary retirement as early as age 55 and prior to age 60 when your combined years of age and credited service total less than 85.

  *Note: If you are eligible to retire with 30 or more years of credited service at any age (and your most recent date of hire is prior to January 1, 1988), you are eligible for corporation contributions for Basic Life Insurance in retirement.*

- **If your most recent date of hire (or adjusted service date) is prior to January 1, 1993 and you retire voluntarily as early as age 55 and prior to age 60 when your combined years of age and credited service total less than 85,** you may continue your Basic Life Insurance to the end of the month in which you attain age 65, provided you contribute $0.50 per month per $1,000 of Basic Life Insurance in force.

  Refer to page 101 for an explanation of continuing life insurance in retirement.