# EXHIBIT 15

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                      :
    In re                         :        Chapter 11
                                      :
DPH HOLDINGS CORP., et al.,           :        Case No. 05-44481 (RDD)
                                      :
          Reorganized Debtors.   :        (Jointly Administered)
                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 1114 AND
26 U.S.C. § 35(e)(1)(K) DESIGNATING DSRA VEBA BENEFIT
AS IN LIEU OF COBRA CONTINUATION COVERAGE

      Upon the Motion, dated May 5, 2011 (Docket No. 21261) (the "Motion"), of the

Official Committee of Eligible Salaried Retirees (the "Retirees' Committee"), requesting

that this Court enter an order (the "Order") providing that the benefits offered by the

Voluntary Employee Benefit Association (the "DSRA VEBA") established pursuant to

this Court's Salaried OPEB Settlement Order, dated April 3, 2009 (Docket No. 16547),

are designated as in lieu of COBRA continuation coverage benefits for retirees and their

dependents who are represented by the Retirees' Committee and were not offered lifetime

COBRA continuation coverage in connection with the change to their benefits during

these Chapter 11 cases; and this Court having entered the Salaried OPEB Settlement

Order and the Expansion of VEBA Benefits Order, dated December 18, 2009 (Docket

No. 19407), and having retained jurisdiction with respect to matters arising from or

related to the implementation of the Salaried OPEB Settlement Order and the Expansion

of VEBA Benefits Order; and upon the supporting declaration of Dean M. Gloster,

counsel for the Retirees' Committee, dated May 5, 2011 (Docket No. 21672) (the

"Declaration"); and it appearing from the Declaration that the Retirees' Committee has

determined that it could be helpful to the DRSA VEBA and its beneficiaries to request

that this Court enter this Order recognizing the Retirees' Committee's tactical choice in

entering into the settlement approved in the Salaried OPEB Settlement Order rather than

seeking to litigate over a right to lifetime COBRA continuation coverage from DPH

Holdings Corp. ("DPH Holdings"), reorganized lead debtor and successor to Delphi

Corporation (collectively, with certain of Delphi Corporation's reorganized debtor

subsidiaries and affiliates, the "Reorganized Debtors"); and the Reorganized Debtors not

having any objection to the requested relief other than that this Order include the

language set forth in paragraph 2 of this Order; and upon the record of the May 26, 2011

hearing on the Motion and the entire record of these Chapter 11 cases; and after due

deliberation thereon and good and sufficient cause appearing therefor,

THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:[1]

A.    The Retirees' Committee entered into the Settlement rather than, among

other things, seek to litigate over a right to lifetime COBRA continuation coverage rights

for all eligible salaried retirees (and their dependents) it represented who were not offered

such lifetime COBRA continuation coverage by the debtors or Reorganized Debtors.

B.    The relief granted herein is in the best interests of the Reorganized

Debtors and their estates and creditors.

C.    Proper and adequate notice of the Motion has been given and no other or

further notice is necessary.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:

1.    This Court has core jurisdiction over these chapter 11 cases and the parties

and property affected hereby to consider the relief described herein pursuant to 28 U.S.C.

---

[1]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as
findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

§§ 157 and 1334, article XIII of the First Amended Joint Plan Of Reorganization Of

Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (As

Modified), and paragraphs FF and 56 of the Plan Modification Order, dated July 30, 2009

(Docket No. 18707).  Venue of this matter and this Motion in this District is proper

pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      This Order is not and shall not be construed as a determination by this

Court or an agreement by the Reorganized Debtors that the DSRA VEBA beneficiaries

represented by the Retirees' Committee or any other former employees were, are, or will

be eligible for lifetime COBRA continuation coverage.  This Order does not affect and

shall not be construed as affecting this Court's bench ruling concerning COBRA

continuation coverage on July 30, 2009 (Docket No. 18830) or any order implementing

such ruling.

3.      The benefits offered by the DSRA VEBA are designated as in lieu of

lifetime COBRA continuation coverage benefits for retirees and their dependents who are

represented by the Retirees' Committee and were not offered lifetime COBRA

continuation coverage in connection with the change to their benefits during these

Chapter 11 cases.

4.      This Court shall retain jurisdiction to hear and determine all matters

arising from or related to the implementation of this Order, including further

modifications, limitations or clarifications to this Order.

Dated: White Plains, New York
       June 6, 2011

                              /s/Robert D. Drain
                              UNITED STATES BANKRUPTCY JUDGE

3

James B. Sumpter, Pro Se
21169 Westbay Circle
Noblesville, IN 46062
Telephone: (317) 877-0736
Facsimile: (317) 877-1070
jsump@ieee.org

Salaried Retiree of Debtors


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x Chapter 11 Case No. 05-44481 (RDD)

In re:

DELPHI CORPORATION, et. al.,

                               : ( J o i n t l y  Administered) :

   Debtors.                 : :

                               : :

------------------------------x


### Request for Stay of Court Order and Related Proceedings Regarding of VEBA in Lieu of COBRA Ruling (Docket # 21306)


1.      This motion is a Request for Stay of Court Order and related  proceedings regarding of  VEBA in Lieu of COBRA Ruling (Docket #21306) until Movant has the opportunity to submit a motion of reconsideration of COBRA Benefit Motion (docket # 18366 )

2.      The Movant respectfully request a stay which delays the court order and related proceedings, at least, until after the September 22, 2011 Omnibus hearing date and preferably until after October 27, 2011.  Movant request this length of  time so that a motion for rehearing based on the fact that Movant has secured an IRS ruling letter which states in part:

*The statute eliminates the need for showing that the listed event caused the loss of coverage if the substantial elimination occurs within that 24-month period. For a loss*

1

*that occurs outside that 24-month period, or for a loss that is not a substantial elimination of coverage, it is still necessary to show that the underlying financial condition of the employer that led to the bankruptcy proceeding also led to the change in the terms and conditions of the retiree health coverage.*

(See Attachment-1; IRS Ruling).

3.      Thus Movant also needs time to hire an Economist and time for the Economist to perform the required analysis regarding the underlying financial conditions during the two critical COBRA related dates.

4.      Because attorney cost to pursue this issue are in the tens of thousands of dollars, the Movant has not been able to hire legal representation and is forced to proceed pro se.  This poses an additional burden, since the Movant is a disabled retiree who suffers from Lupus, chronic fatigue and recurring depression.  As a result, the Movant has a significantly reduce efficiency.  In addition, the Movant is scheduled for total  knee replacement surgery on 6-July-2011 and is informed that he will require six seeks of intensive physical therapy and be restricted from most travel (particularly air travel) until October 2011

5.      For the reasons set forth herein, the relief requested is warranted and necessary.  In support of this Stay request, the Movant respectfully represent as follows:

## Failure to Give Proper Notice

6.      The Movant only learned of the VEBA motion on 3-Jun-2011, completely through serendipity.  Thus, there was a failure to give proper notice by the Retiree Committee and the VEBA committee.

7.      It is well known that Movant has been the face of the Salaried Retirees efforts to secure life time COBRA benefits.  This is demonstrated by the following:

2

a.   The Movant is the only retiree to file motion in this Bankruptcy court regarding COBRA.

b.   The Movant sought and received IRS Ruling which supports the position that Retirees are not time barred from proving eligibility for COBRA Life time benefits.  Key players on the DSRA board, the Retiree Committee and the VEBA Committee were aware of the existence of this ruling.

c.   Attached are copies of E-mails that document communication with Jim Frost, Chairman of the Retirees committee; Carol Light – Co-Chair of VEBA Committee; Members of the 1114 retiree committee and the DSRA leadership, which includes Jim Frost (See attachment-2).

d.   The Movant also had communications with Larry Schmits of Kreig and Devault LLP the supervising attorney for the VEBA Committee regarding Movant's ongoing COBRA efforts.  Mr. Schmits informed me, at that time, that he represented the VEBA Committee and that helping me would create a conflict of interest. As a result, Mr. Schmits returned my COBRA documents unopened. Movant cannot be certain of how much of the Movant's letter Mr. Schmits read (See attachment-3).  However, there was a substantial subsequent phone conversation, in which it was clear that Mr. Schmits was aware that the Movant had ongoing activities regarding retiree COBRA benefits (otherwise he would not have known there was a potential conflict).

e.   In April 2009, The Movant Communicated with Joe McHugh, who was working in support of the VEBA Committee, about my efforts regarding

COBRA. This included my intention to file for a rehearing based on the fact that I had received a favorable IRS ruling letter. Mr. McHugh indicated that he planned to pass this information to the VEBA committee and that he planned, at a subsequent time, to meet further with me about it. Mr. McHugh was one of the founding members of the retiree organization effort, the formation of the DSRA and the initial financial support of our efforts to have the court establish and 1114 committee.

    f.  Delphi Automotive was also aware of the Movant's ongoing activities and the fact that there was a favorable ruling letter from the IRS. They were informed through various exchanges with the Department of Labor, which the Movant had been trying to persuade to take over the COBRA legal effort.

8.    As a result, all of the parties involved knew of, or should have known that the Movant has been actively continuing efforts to secure, for the retirees and the VEBA, the COBRA benefit worth more than $500,000,000. Thus, the Movant should have, but did not, received notice of the motions and hearings that are represented in docket numbers 21280, 21275, 21262 and 21261.

## IRS Ruling and Request for COBRA Motion Rehearing

9.    At the 29-July-2009 Omnibus hearing, where the COBRA motion was heard (docket # 18366), the court was made aware that an IRS ruling was pending. In fact, documentation of the ruling request was an attachment to the COBRA motion.

10.     The Movant is  in the process of preparing a request to rehear the COBRA motion based on the content of  the IRS ruling, which provides a new and substantial reason to rehear this motion and therefore is not restricted by  the principals of res judicata. ( See attachment-1 for IRS Ruling)

## Current Ruling Will Do Irreparable Harm and Is Not In the Best Interest of Retirees

11.     This ruling, if allowed to proceed, will cause forever the retirees to loose the option to pursue life time COBRA.  It is, therefore, not in the best interest of retirees, as the issue regarding lifetime COBRA, which is worth in excess of $500,000,000, has not been resolved.  A ruling which, after the fact, declares that the VEBA was established in lieu of COBRA is not true and denies retirees the right to pursue their COBRA claim.

12.     This is significant, since court records document that the VEBA, established with eight million dollars from Delphi, was set up as part of the settlement between Delphi and the Retiree Committee.  In return, the Retiree Committee agreed not to appeal the courts order regarding retiree entitlement to an 1114 committee.  At no time was it ever proposed that the VEBA would be in lieu of COBRA.

13.     In addition, court records associated with the establishment of the VEBA and the Delphi $8,000,000 payment indicated that the two actions were compensation for not pursuing an appeal of the Judges 1114 committee ruling.  At no time was any reference made to COBRA.

14.     Movant was a member of the limited 1114 committee, and at no time prior to 25-March-2009 (Movant's last day on the 1114 Committee) was there any discussion or proposal that the VEBA would be in lieu of COBRA.  In fact, the Movant was a proponent of not taking the $8,000,000,000 settlement because retirees could achieve a better outcome by pursing

5

lifetime COBRA benefits.  Attached to this motion are documents that contain some of the

Movant's communications regarding the COBRA effort.  In fact, documents show that the 1114

committee, particularly the Chairman thought pursuing the issue COBRA issue was a distraction.

15.      Should Movant's COBRA motion prevail in gaining $500,000,000 in lieu of life

time COBRA, the goal of the VEBA would be achieved, while significantly increasing the

VEBA assets and the number of retirees that it could meaningfully help.  The VEBA provides

tangible benefits only to retirees, who are HCTC eligible.  As a result, no retiree under age 55, no

retiree who is over age 65 and no Medicare retiree receives any substantial financial benefit from

the VEBA.  The VEBA committee has made a significant effort to provide retiree access to other

group plans for such things as life insurance, dental, and vision. However, these plans provide, at

best, a minimum savings to retirees and would not equal the kind of benefit that could be derived

by adding $500,000,000 to the VEBA trust.

### Standing of  the 1114 Committee

16.      Based on the Courts ruling regarding the retirees' entitlement to an 1114

committee, in which the scope of the committee was narrowly confined to identifying vested

retiree rights and negotiations with Delphi regarding retirees' potential appeal of the courts order,

the 1114 committee was not empowered to bring its motion (docket # 21261) as official

representatives for retirees.  Thus, any effort to limit or convert Salaried Retiree COBRA benefit

rights should have required full notice to the Salaried Retiree population.

### A Stay of the Judges Order and Related Proceedings Will Do No Harm

17.      Since there is significant uncertainty regarding what actions Congress might take

or the related timing, it's unclear that the issues which concern the VEBA committee will

materialize. Thus, it's not clear that the VEBA Committee's long term goals are jeopardized by the requested Stay.

18.    In addition, any potential harm to the VEBA Committee's goals is far outweighed by the potential harm to all retirees if they lose the opportunity to seek life time COBRA benefits.

19.    Furthermore, the Stay provides an opportunity for the VEBA and Retiree Committees to join the Movant's effort to secure COBRA Benefits for all Salaried Retirees, which will result in significantly increase benefits and broader assistance for all Salaried Retirees.

WHEREFORE, the Movant respectfully requests that this Court enter an order granting the relief requested herein, and such other and further relief as may be just, necessary and appropriate.


Dated: Noblesville, Indiana
June 8, 2011


By: _James B. Sumpter_

James B. Sumpter, Pro Se
21169 Westbay circle
Noblesville, IN 46062
Telephone: (317) 877-0736
Facsimile: (317) 877-1070
jsump@ieee.org

Salaried Retiree of Debtors

# Attachment- 1

# IRS Ruling



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

OFFICE OF THE CHIEF COUNSEL

CC:TEGE:EB:HW:REWeinheimer

NOV 24 2009

Mr. James B. Sumpter
21169 Westbay Circle
Noblesville, IN 46062

Subject: Bankruptcy Qualifying Event under Section 4980B

Mr. Sumpter:

This letter is in response to your request dated July 8, 2009 for a private letter ruling on issues related to a bankruptcy qualifying event under the COBRA health care continuation coverage requirements of section 4980B of the Internal Revenue Code. We decline to issue a ruling. Nevertheless, this letter includes general observations about the bankruptcy qualifying event without applying them to the specific facts of your situation.

Pursuant to section 4980B and the regulations issued under it, a qualifying event occurs if one of the listed events causes a covered employee (or the spouse or dependent child of a covered employee) to lose coverage under a group health plan subject to COBRA. Losing coverage means to cease to be covered under the same terms and conditions in effect immediately before the event (or to cease to be covered under the same terms and conditions in anticipation of the event). A loss of coverage need not occur immediately after the event so long as it occurs before the end of the maximum required period of coverage.

A proceeding in bankruptcy under Title 11 of the United States Code with respect to an employer is one of the listed events that can be a qualifying event. However, it applies only with respect to a covered employee who retired from the employment of such an employer (and any spouse, surviving spouse, or dependent child of such a retired covered employee). For the bankruptcy proceeding to be a qualifying event, it must cause a retired covered employee (or the spouse, surviving spouse, or dependent child of a retired covered employee) to lose coverage under the group health plan. The maximum required period of coverage in the case of the bankruptcy qualifying event is the lifetime of the retiree for the retiree and 36 months after the death of the retiree for a spouse, surviving spouse, or dependent child of the retiree. The loss of coverage need not occur immediately after the bankruptcy proceeding, so long as it occurs before the death of the retiree (or before the date 36 months after the retiree's death).

2

The determination of whether a bankruptcy of an employer causes a loss of coverage under a group health plan typically raises a problem of interpretation. The mere commencement of a proceeding in bankruptcy with respect to an employer generally will not cause a loss of coverage under a group health plan in the way that a termination of an employee's employment, or the death of the employee, or divorce from the employee causes a loss of coverage. The determination of a loss of coverage with these events can generally be determined by inspecting the eligibility provisions of the group health plan. By contrast, group health plans generally are not written so that the coverage of retired employees and their families will end automatically upon the commencement of a proceeding in bankruptcy with respect to the employer. Nevertheless, Congress intended that some protection in the form of continuation coverage be provided to retirees and their families whose retiree health coverage is terminated in connection with the bankruptcy of the employer maintaining the plan. To give the statute meaning, the IRS generally views a bankruptcy proceeding with respect to an employer to cause a loss of retiree health coverage if the underlying financial condition that led to the bankruptcy is also a major contributing factor in the loss of health coverage for retirees and their families. (Of course, the loss need not be a complete loss of coverage; any change in the terms or conditions of coverage in effect immediately before the qualifying event, or any change in the terms or conditions of coverage in anticipation of the qualifying event, may be a loss of coverage.)

In short, any change in the terms or conditions of retiree health coverage that results from the underlying financial condition that led to the commencement of a bankruptcy proceeding with respect to the employer maintaining the retiree group health plan means that the employer bankruptcy will generally be a qualifying event, so long as the change occurs before the death of a retired covered employee (or 36 months after the death of the retiree for a spouse, surviving spouse, or dependent child of the retired covered employee).

The statute also provides an additional rule for determining a loss of coverage in the case of a bankruptcy qualifying event. A loss of coverage is considered to result from the bankruptcy if there is a substantial elimination of coverage within 12 months before or after the date the bankruptcy proceeding commences. In such a case, there is no need to show that the loss of coverage resulted from the same underlying financial condition of the employer that resulted in the bankruptcy proceeding. The statute eliminates the need for showing that the listed event caused the loss of coverage if the substantial elimination occurs within that 24-month period. For a loss that occurs outside that 24-month period, or for a loss that is not a substantial elimination of coverage, it is still necessary to show that the underlying financial condition of the employer that led to the bankruptcy proceeding also led to the change in the terms and conditions of the retiree health coverage.

We hope this information is helpful to you. As we previously stated, this letter addresses well-established principles of tax law without applying them to a specific set of facts. Therefore, this letter is advisory only and has no binding effect on the IRS. If

3

you have additional questions, feel free to contact me, or Russ Weinheimer of my staff,
at (202) 622-6080.

Sincerely,

Harry Beker, Chief
Health and Welfare Branch
(Tax Exempt & Government Entities)

# Attachment- 3

# Letter to Larry Schmits Regarding COBRA

05-44481-rdd    Doc 21308-2    Filed 06/13/11    Entered 06/13/11 10:43:08    Exhibit
Pg 2 of 4

James B. Sumpter
21169 Westbay Circle
Noblesville, IN  46062

**Mr. Larry Schmits**
**Kreig Devault LLP**
**949 Conner St, # 200**
**Noblesville, IN  46060**

21169 Westbay Circle
Noblesville, IN  46062
September 18, 2010

Mr. Larry Schmits
Kreig Devault LLP
949 Conner St, # 200
Noblesville, IN  46060

Dear Mr. Schmits:

I would like to thank you for taking the time to understand my disability life
insurance ERISA issue.  I appreciate your advices and candor.  I have not yet
tried to contact Ms. O'Ryn.   I have not decided whether pursuing the issue
further is the best use of my time.

During our conversation it became clear to me that you a very competent and
knowledgeable attorney.  Thus, it's my hope that your expertise and experience
will be applicable to a significant Delphi Salaried Retiree Lifetime COBRA issue
(worth over $532,000,000), which resulted from the Delphi Bankruptcy.

I have pursued this issue for almost sixteen months.  However, I feel I have
reached the limits of my strategic competence and my minimal legal abilities,
while my stamina has been significantly eroded by my ongoing health issues.

Thus, I'm hoping that you will determine that this case has sufficient merit and
probability of success that you and your firm will be willing to help.

I have received some assistance from Senator Lugar and have enclosed a copy
of a letter that I sent him last May.  I have enclosed this letter because it
provides a good summary of the current situation.  I have also enclosed a
complete document history of my efforts (both in a spiral bound booklet and on
a searchable DVD).  The enclosed document set includes an executive summary,
which will also be helpful in describing the issues and the extent my efforts.

Senator Lugar's office is also engaged in securing some additional Congressional
history (which I requested), via the Congressional Research Service.

Meanwhile, there has been no communications from the Department of Labor
with me since March 2010 and no meaningful response to Senator Lugar's
inquiries.

I do have a recent letter from the IRS, in response to an inquiry from Senator Lugar.  However, it provides little information.  A copy is enclosed.

My contact information is below:

**James B. Sumpter**
**21169 Westbay Circle**
**Noblesville, IN 46062**

**317-877-0736 hm**
**317-432-3681 cell**

**jsump@ieee.org**

I appreciate your consideration and I look forward to your timely feedback.

Sincerely,

James B. Sumpter

# ATTACHMENT A

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK


------------------------------------------x Chapter 11 Case No. 05-44481 (RDD)

In re:                                     :
                                           :(Jointly Administered)
DELPHI CORPORATION, et. al.,               :
                                           :
    Debtors.                               : :
                                           : :

------------------------------------------x

## AFFIDAVIT OF SERVICE


I, James B. Sumpter, do herby state that relative to the motion:

> **REQUEST FOR STAY OF COURT ORDER AND RELATED**
> **PROCEEDINGS REGARDING OF VEBA IN LIEU OF COBRA RULING**
> **(DOCKET # 21306)**

I served copies of the above motion and its related attachments on the entities listed in Exhibit A, via Email and U.S. Mail. The documents were E-mailed and mailed on 9-June-2011. A paper copy and a DVD were also sent via FED EX overnight to the clerk of the court.


_____     __6/9/2011____
James B. Sumpter                             Date
21169 Westbay circle
Noblesville, IN 46062
Telephone: (317) 877-0736
Facsimile: (317) 877-1070
jsump@ieee.org

# ATTACHMENT A

## Serving Date  - June 9, 2011

Hon. Robert D. Drain
United States Bankruptcy Court
for the Southern District of New York
300 Quarropas Street
White Plains, NY 10601-4140
Telephone: (914) 390-4155

Counsel to the Debtors
Skadden, Arps, Slate, Meagher & Flom LLP
155 North Wacker Drive, Suite 2700
Chicago, Illinois 60606
Attn: John Wm. Butler, Jr.; Albert L. Hogan, III; Nick D. Campanario
Telephone: (312) 407-0700

Co-Counsel for Delphi Salaried Retirees
Association Benefit Trust VEBA Committee
Satterlee Stephens Burke & Burke LLP
230 Park Avenue, Suite 1130
New York, New York 10169
Attn: Timothy T. Brock
Telephone: (212) 818-9200
        and
Krieg DeVault LLP
One Indiana Square, Suite 2800
Indianapolis, Indiana 46204
Attn: Patricia L. Beaty
Telephone: (317) 238-6278

Office of the United States Trustee
Southern District of New York
33 Whitehall Street, Suite 2100
New York, New York 10004
Attn: Alicia M. Leonhard
Telephone: (212) 668-2255

Dean M. Gloster (Admitted *Pro Hac Vice*)
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480
Attorneys for OFFICIAL COMMITTEE OF
ELIGIBLE SALARIED RETIREES

**Subject:** FAQs About COBRA Continuation Health Coverage
**From:** James Sumpter <jsump@ieee.org>
**Date:** Fri, 13 Mar 2009 22:34:25 -0400
**To:** d gloster <dgloster@fbm.com>, "Carol, Kathy" <catcar55@aol.com>, "Nicholson, Todd" <rnicholson@indy.rr.com>, "Gifford, Ben" <wbgifford@aol.com>, "Hagenbach, Jim" <hagenbachj@yahoo.com>, "Conger, Jim" <salaryhelp@hotmail.com>, Jim Frost <james.r.frost@roadrunner.com>, james sumpter <jsump@ieee.org>, "Jon D. Cohen" <JCohen@stahlcowen.com>

Dean:

Pleas look at this and answer the questions in Red.

I took the text below of the Department of Labors web site. ( See the link below). Acording to this those people eligible for Cobra only pay 35% of the premium cost. (Cathy I think this means you)

Why does Delphi not want to classify the change in the Plan as a COBRA event?  Does it cost them something?

Should we not also be telling our retirees who are Cobra Eligible about this?  These people could stay in the COBRA plan until it ended then join the VEBA. I wonder if the 35% premium would also be eligible for HCTC if the pension went to the PGBC?

I have heard about the new COBRA extension and subsidy that was contained in the Stimulus package signed by the President. I would like more information. The American Recovery and Reinvestment Act of 2009 expanded eligibility for COBRA and provides a premium reduction to certain qualified individuals.

Individuals eligible for COBRA coverage who were involuntarily terminated by their employer on or after September 1, 2008 through December 31, 2009 who are eligible for COBRA and elect COBRA may be eligible to pay a reduced premium amount that is only 35% of the premium costs for your COBRA coverage.

If you were terminated during that period and were covered by your employer's plan on your last day of employment, your plan administrator should provide you a notice of your eligibility to elect COBRA and to receive a premium reduction. You may also want to contact your employer directly to ask about getting the premium reduction.

If you have specific questions about your situation and how these new rules apply to you, you may wish to speak with one of our Benefits Advisors by calling 1.866.444.3272. You should also check the Employee Benefits Security

Administration's dedicated Web page at **www.dol.gov/COBRA**. This Web page will contain helpful information and will be updated regularly to include FAQs and new information related to the process you should follow to apply for COBRA and/or the premium reduction.

**http://www.dol.gov/ebsa/faqs/faq_consumer_cobra.HTML**

**James Sumpter**

**Subject:** FW: It's time for me to find an exit
**From:** "Jim Frost" <james.r.frost@roadrunner.com>
**Date:** Thu, 8 Jul 2010 20:16:18 -0400
**To:** <jsump@ieee.org>, <jgosik@mac.com>

James,
Don't let one person's political noise drive you away. We need all the help we can get. We're all volunteers and have a lot we're trying to do. Some people get carried away. Please don't let the rest of us volunteering down.

At least help us maintain the PayPal system.

Jim Frost
DSRA Interim Vice-Chair
http://www.delphisalariedretirees.org



Confidentiality Notice:  The information contained in this email and any attachments to it may be legally privileged and include confidential information intended only for the recipient(s) identified above.  If you are not one of those intended recipients, you are hereby notified that any dissemination, distribution or copying of this email or its attachments is strictly prohibited.  If you have received this email in error, please notify the sender of that fact by return email and permanently delete the email and any attachments to it immediately.  Please do not retain, copy or use this email or its attachments for any purpose, nor disclose all or any part of its contents to any other person.  Thank you.

---

**From:** james Sumpter [mailto:jsump@ieee.org]
**Sent:** Thursday, July 08, 2010 7:41 PM
**To:** John/Judy Gosik
**Cc:** Bruce Gump; Allen081644@aol.com; higgins297@roadrunner.com; tomjacirose@sbcglobal.net; oetiker@aol.com; mbcharles55@aol.com; pbeiter@rochester.rr.com; lluckyx4@aol.com; lcroisdale@magicbilliards.com; wingpr72@hotmail.com; carollight1@hotmail.com; denblack@cox.net; james.r.frost@roadrunner.com; mouse0@thecyberbase.com; kbhollis@aol.com; cathylukasko@aol.com; RBvonS@comcast.net; mjhissam@sbcglobal.net; erdman35473@yahoo.com; jimandnette@aol.com; salaryhelp@hotmail.com; jgosik@mac.com; mbcharles1@aol.com; gputt@wi.rr.com; skeeter@ndwave.com; catcar55@aol.com; jamacbain@aol.com; woodstc1@aol.com; hofius@aol.com; karigaffe@earthlink.net; rnicholson@indy.rr.com; jimthomas1@aol.com; ginesi.fam@sbcglobal.net; gary.l.robertson@gmail.com; JJ1955@aol.com; hagenbachj@yahoo.com; trsmjs08@aol.com; cmayer7744@sbcglobal.net; hudzikwar@aol.com; wbgifford@aol.com; ralee00@aol.com; mahusar@aol.com; jab346@comcast.net; jdc3119@aol.com; dblcorks@aol.com; joseph.devitto@att.net; fparndt@aol.com; jimmymayne@earthlink.net
**Subject:** It's time for me to find an exit
**Importance:** High

Hey Chet:

I've made the decision to be less active with the DSRA.  This means, you will need to make arrangements for a new assistant and to remove me from the checking account.  We will have to also find someone else to own the Paypal account.  Up to now, I had been the guarantor, which meant that if someone had a financial issue, I was on the hook with Paypal.  That, we need to

change ASAP, otherwise this donation vehicle will be lost.

Its probably appropriate to remove me from the core contact group.  We will need to identify a new account contact for Global Crossing also.  Den Black and Frost are copied on this so they can take appropriate action.  I will also be disconnecting from the Yahoo group.

I continued to have hopes of setting up a disabled sub-group.  If I can find the energy and motivation, I will get it done at some point.

**Although its not been a secret, I had not shared with many that my pension was not reduced when the PBGC took over. This is because I am disabled  and because my pension is not that large.** ▮▮▮▮▮▮▮▮▮▮▮ **In spite of that, I have tried to support the DSRA effort and I have tried to be a positive force.  I've done this even though I have always been concerned that that our efforts could cause the pension to end up back in Delphi's hands.  There are documented cases where the PBGC returned to pension to the original company.**

**The point is;  I think I'm used up. I am absolutely exhausted by the unrelated partisan politics.  I'll continue my efforts regarding the COBRA issue** and let everyone know if there is a breakthrough.

James Sumpter

**Subject:** RE: Increase in premium and COBRA
**From:** James Sumpter <jsump@ieee.org>
**Date:** Wed, 18 Mar 2009 07:51:21 -0400
**To:** d gloster <dgloster@fbm.com>
**CC:** "Carol, Kathy" <catcar55@aol.com>, "Nicholson, Todd"
<rnicholson@indy.rr.com>, "Gifford, Ben" <wbgifford@aol.com>, "Hagenbach, Jim"
<hagenbachj@yahoo.com>, "Conger, Jim" <salaryhelp@hotmail.com>, Jim Frost
<james.r.frost@roadrunner.com>

Dean:

Please follow up on the information provided regarding "*Increase in Premium
is Loss of Coverage*".
*Below is an excerpt from the document (February 20, 2001 : 2001–8 I.R.B):  I
have also attached a PDF version of the complete article.*

I Understand this section to mean that a n increase in premium is a COBRA
event.   This article makes no reference to bankruptcy.  Therefore,  according to
this text, the increase of Retirees premiums by Delphi is a Cobra event.  As a
result, all retirees are entitled to Cobra coverage.  Furthermore, COBRA
regulations require a 60 day election period which did  not take place, and it
requires a 45 day period after election for the first payment.

I believe the implications of this are that Delphi must issue COBRA notices
and provide for the 60 day waiting period. I think this would mean that Delphi
would have to wait another two months before they could make their changes.
I think this would get us at least the equivalent two month full subsidy period
we have requested.

In addition, numerous retirees were quoted higher rates than the COBRA rate.
Therefore the Cobra rates will be an advantage to some retirees.  Perhaps you
are also in the best position to make inquiries into Delphi regarding the
difference between the self pay cost and the COBRA cost.

This text and article came from the IRS web site.  although it may exist, I could
find no superseding document.  Please confirm that this is applicable is
applicable to the Retirees situation, and address the correctness of my
conclusions.  Please, reference and attach relevant documents, legislation, rules,
etc. that support your conclusion.

James Sumpter

## Increase in Premium is Loss of Coverage  (page 686, 2001–8 I.R.B.)

The 1999 final regulations provide, in describing what constitutes a loss of coverage

for determining whether a qualifying event has occurred, that any increase in premium or contribution that must be

paid for coverage as a result of one of the events that can be a qualifying event is a loss of coverage. Several commenters questioned why this rule was adopted and pointed out that it creates administrative burdens in two situations without apparently providing any advantage to the people whose premium is being increased. The two situations concern retiring employees and full-time employees reducing their work hours to become parttime

The IRS and Treasury were mindful of these situations before they adopted the rule in the 1999 final regulations. However, if a mere increase in premium were not considered a loss in coverage, the person whose premium is being increased would not be entitled by law to a 60-day election period nor to a 45-day period after the election for making the first premium payment. Although in many cases a qualified beneficiary might prefer a lower premium over these procedural protections under COBRA, in some cases these procedural protections might be more valuable. The likelihood of the COBRA procedural protections being more valuable than the lower premium becomes substantial as the amount

employees. In both situations, often employers will grant the employees access to the same coverage but will require them to pay a premium that is higher than what active employees pay though still significantly less than the 102 percent rate permitted under COBRA.

The commenters wondered why it is necessary to provide these individuals with a COBRA notice if it is always advantageous for the individual to take the other coverage. They suggested that a loss of coverage should not be considered to have occurred if employees (or other qualified beneficiaries) can get access to the same coverage for less than the applicable premium under COBRA.

required to be paid for part-time or retiree coverage approaches the amount of the applicable premium. Accordingly, the final regulations retain the rule in the 1999 final regulations so as not to deprive qualified beneficiaries of potentially valuable rights.

becomes substantial as the amount required to be paid for part-time or retiree coverage approaches the amount of the applicable premium. Accordingly, the final regulations retain the rule in the 1999 final regulations so as not to deprive qualified beneficiaries of potentially valuable rights.

**Subject:** It's time for me to find an exit
**From:** james Sumpter <jsump@ieee.org>
**Date:** Thu, 08 Jul 2010 19:40:47 -0400
**To:** John/Judy Gosik <jgosik@mac.com>
**CC:** Bruce Gump <bruceg.delphi@gmail.com>, Allen081644@aol.com,
higgins297@roadrunner.com, tomjacirose@sbcglobal.net, oetiker@aol.com,
mbcharles55@aol.com, pbeiter@rochester.rr.com, lluckyx4@aol.com,
lcroisdale@magicbilliards.com, wingpr72@hotmail.com, carollight1@hotmail.com,
denblack@cox.net, james.r.frost@roadrunner.com, mouse0@thecyberbase.com,
kbhollis@aol.com, cathylukasko@aol.com, RBvonS@comcast.net,
mjhissam@sbcglobal.net, erdman35473@yahoo.com, jimandnette@aol.com,
salaryhelp@hotmail.com, jgosik@mac.com, mbcharles1@aol.com, gputt@wi.rr.com,
skeeter@ndwave.com, catcar55@aol.com, jamacbain@aol.com, woodstc1@aol.com,
hofius@aol.com, karigaffe@earthlink.net, rnicholson@indy.rr.com,
jimthomas1@aol.com, ginesi.fam@sbcglobal.net, gary.l.robertson@gmail.com,
JJ1955@aol.com, hagenbachj@yahoo.com, trsmjs08@aol.com,
cmayer7744@sbcglobal.net, hudzikwar@aol.com, wbgifford@aol.com,
ralee00@aol.com, mahusar@aol.com, jab346@comcast.net, jdc3119@aol.com,
dblcorks@aol.com, joseph.devitto@att.net, fparndt@aol.com,
jimmymayne@earthlink.net

Hey Chet:

I've made the decision to be less active with the DSRA. This means, you will need to
make arrangements for a new assistant and to remove me from the checking account. We
will have to also find someone else to own the Paypal account. Up to now, I had been the
guarantor, which meant that if someone had a financial issue, I was on the hook with
Paypal. That, we need to change ASAP, otherwise this donation vehicle will be lost.

Its probably appropriate to remove me from the core contact group. We will need to
identify a new account contact for Global Crossing also. Den Black and Frost are copied
on this so they can take appropriate action. I will also be disconnecting from the Yahoo
group.

I continued to have hopes of setting up a disabled sub-group. If I can find the energy and
motivation, I will get it done at some point.

**Although its not been a secret, I had not shared with
many that my pension was not reduced when the PBGC
took over.  This is because I am disabled  and because my
pension is not that large.** ████████████████████████
████████████████████             **In spite of that, I
have tried to support the DSRA effort and I have tried to**

be a positive force.  I've done this even though I have always been concerned that that our efforts could cause the pension to end up back in Delphi's hands.  There are documented cases where the PBGC returned to pension to the original company.

The point is;  I think I'm used up. I am absolutely exhausted by the unrelated partisan politics.  I'll continue my efforts regarding the COBRA issue and let everyone know if there is a breakthrough.

James Sumpter

**Subject:** Re: James Sumpter, DSRA, COBRA
**From:** james Sumpter <jsump@ieee.org>
**Date:** Fri, 16 Jul 2010 14:08:57 -0400
**To:** carol light <carollight1@hotmail.com>

**Dear Carol:**

**Thanks for your kind notes.**

**Although I'm giving up my DSRA responsibilities,  I still have a couple of things that I'm working on that affects us retirees.  One of these things is the COBRA obligation that Delphi has.  In some e-mail I received, I recall someone noting that you had an interest or was also working on the COBRA issue.  Is that correct?**

**Please give me your status.  I have been trying to identify someone who could help with this COBRA issue.  I have done a substantial amount of work involving the DOL and IRS.  I also have Senator Lugar's office helping.  (I don't know how much that is yet.  I should get some feedback next week.)  However, my health limits me a great deal.  Therefore It would be good if I had an accomplice :-) .**

**James Sumpter**
**317-877-0736**

On 7/9/2010 10:15 AM, carol light wrote:
HI Jim,

Sorry to hear about your exit, but completely understand.  Good luck in your future endeavors.

Regards,
Carol

---

**From:** james Sumpter [mailto:jsump@ieee.org]
**Sent:** Thursday, July 08, 2010 7:41 PM
**To:** John/Judy Gosik
**Cc:** Bruce Gump; Allen081644@aol.com; higgins297@roadrunner.com; tomjacirose@sbcglobal.net; oetiker@aol.com; mbcharles55@aol.com; pbeiter@rochester.rr.com; lluckyx4@aol.com; lcroisdale@magicbilliards.com; wingpr72@hotmail.com; carollight1@hotmail.com; denblack@cox.net; james.r.frost@roadrunner.com; mouse0@thecyberbase.com; kbhollis@aol.com; cathylukasko@aol.com; RBvonS@comcast.net; mjhissam@sbcglobal.net; erdman35473@yahoo.com; jimandnette@aol.com; salaryhelp@hotmail.com; jgosik@mac.com; mbcharles1@aol.com; gputt@wi.rr.com; skeeter@ndwave.com; catcar55@aol.com; jamacbain@aol.com; woodstc1@aol.com; hofius@aol.com; karigaffe@earthlink.net; rnicholson@indy.rr.com; jimthomas1@aol.com; ginesi.fam@sbcglobal.net; gary.l.robertson@gmail.com; JJ1955@aol.com; hagenbachj@yahoo.com; trsmjs08@aol.com; cmayer7744@sbcglobal.net; hudzikwar@aol.com; wbgifford@aol.com; ralee00@aol.com; mahusar@aol.com; jab346@comcast.net; jdc3119@aol.com; dblcorks@aol.com; joseph.devitto@att.net; fparndt@aol.com; jimmymayne@earthlink.net
**Subject:** It's time for me to find an exit

Hey Chet:

I've made the decision to be less active with the DSRA. This means, you will need to make arrangements for a new assistant and to remove me from the checking account. We will have to also find someone else to own the Paypal account. Up to now, I had been the guarantor, which meant that if someone had a financial issue, I was on the hook with Paypal. That, we need to change ASAP, otherwise this donation vehicle will be lost.

Its probably appropriate to remove me from the core contact group. We will need to identify a new account contact for Global Crossing also. Den Black and Frost are copied on this so they can take appropriate action. I will also be disconnecting from the Yahoo group.

I continued to have hopes of setting up a disabled sub-group. If I can find the energy and motivation, I will get it done at some point.

**Although its not been a secret, I had not shared with many that my pension was not reduced when the PBGC took over. This is because I am disabled and because my pension is not that large.** ███████████████████ **In spite of that, I have tried to support the DSRA effort and I have tried to be a positive force. I've done this even though I have always been concerned that that our efforts could cause the pension to end up back in Delphi's hands. There are documented cases where the PBGC returned to pension to the original company.**

**The point is; I think I'm used up. I am absolutely exhausted by**

**the unrelated partisan politics.  I'll continue my efforts
regarding the COBRA issue** and let everyone know if there is a breakthrough.

James Sumpter

**Subject:** Re: Life Time COBRA
**From:** James Sumpter <jsump@ieee.org>
**Date:** Sun, 30 Aug 2009 12:25:59 -0400
**To:** Delphi_SR_Network@yahoogroups.com
**CC:** lssears1147@yahoo.com, chuckdejohn@yahoo.com

# <u>In response to the message inquiring as to whether COBRA is a life time event:</u>

US Code, Title 29 and Title 26, state that COBRA is a life time event if retirees loose their benefits as a result of bankruptcy. (Which we did.)
Delphi has taken the position that our loss of benefits did not meet the standards set out in the laws.
I don't agree with this and have taken several actions to force some financial accountability on Delphi's part.

One of the points I made was that Delphi should not have been charging retirees the self pay rate that was about 37% higher than the COBRA rate. The other is that Delphi's COBRA obligation should continue for the life time of the retirees.

**1) I filed a motion on July 17 that was heard in court, at the July 29 Omnibus hearing. The link below is to a PDF version of my motion.**

http://media.delphidocket.com/documents/0544481/0544481090717000000000009.pdf

If you have time to read the motion and the support documents, you will see the issues raised, and the financial accountability that I asked the court to enforce. (The relevant parts of Title 29 and 26 can be found in the attachments to the motion.)

The Court ruled against my motion (on a very narrow point). As a result, I believe that I will be able to refile this motion when I receive a requested ruling from the IRS. (The IRS by statute has the responsibility for enforcing COBRA compliance.) Essentially the judge ruled that he would not let my motion stop Delphi's reorganization from going forward.

The Judge Drain's ruling can be found here:

http://media.delphidocket.com/documents/0544481/05448109080300000000006.pdf

**2) I filed a request with to IRS for a ruling invalidating the position that Delphi has taken regarding COBRA.**

  I have been contacted by the assigned attorney from the IRS.  I expect his ruling soon and I, guardedly, expect it to support my position.
   When I receive this ruling I will re-file my motion with the court.  (If you read my motion, you will also see a copy of the request that I filed with the IRS)

**3) When I filed my motion with the court, I made certain that potential successor companies and/or transferee's of Delphi assets were notified. This notification ensures that they are all aware that there is a potential COBRA obligation and that that obligation continues to the successor companies and/or transferees, if certain conditions are met (e.g., They offer a health insurance plan.)**

In general, I don't think we, any longer, want Delphi COBRA.  We have our VEBA.  Delphi COBRA is more expensive and the COBRA benefit could be lost if Delphi or its successors ever ended, or substantially reduced, all its health insurance plans.

In addition, I don't think we want to be financially connected to Delphi or its successor's, in any way, if we can help it.  The VEBA permits us to be in control of our own fate.  Thus, I expect that if my efforts are successful, Delphi and/or its successors will be forced pay a sum of money ( I argue for $500,000,000 - 500 million dollars) that will go to our VEBA trust.  The best case result would be that our health insurance rate would lower and some people (i.e., under 55  and 65 and over retirees) would get a much better benefit.

4) I have also made another part of the IRS aware that Delphi is not in compliance with the law, which makes it subject to an IRS imposed excise tax of $100 per day per retiree for each day that it fails to issue a COBRA notice. That is approximately $600,000 per day.  The total sum is now over $100,000,000 and growing.

Should I prevail with my next motion, this site will be one of the first places that gets the news.

James Sumpter

**Subject:** RE: Obama installs PBGC nominee over Delphi retiree objections
**From:** "Jim Frost" <james.r.frost@roadrunner.com>
**Date:** Thu, 8 Jul 2010 19:15:27 -0400
**To:** <jsump@ieee.org>

James, thanks, understand your concern. We have a few people like Allen that get out of control. The best thing to do is just ignore them. We really need bipartisan support to be successful. Glad your pension is intact. I got a 30% hit, Hagenbach got 70%.

Cathy Cone has commented on the COBRA, I could pass on to her and get her take and help.

Thanks for all your support.

Jim Frost
DSRA Interim Vice-Chair
http://www.delphisalariedretirees.org



Confidentiality Notice:  The information contained in this email and any attachments to it may be legally privileged and include confidential information intended only for the recipient(s) identified above.  If you are not one of those intended recipients, you are hereby notified that any dissemination, distribution or copying of this email or its attachments is strictly prohibited.  If you have received this email in error, please notify the sender of that fact by return email and permanently delete the email and any attachments to it immediately.  Please do not retain, copy or use this email or its attachments for any purpose, nor disclose all or any part of its contents to any other person.  Thank you.

---

**From:** james Sumpter [mailto:jsump@ieee.org]
**Sent:** Thursday, July 08, 2010 7:04 PM
**To:** Jim Frost
**Subject:** Re: Obama installs PBGC nominee over Delphi retiree objections
**Importance:** High

## Hey Frost:

**It's been a while.  Thanks for your advice.**

**Just so you know, my comments were not a vent.  They were a direct reply to Allen and his political diatribe,**
**which was directed at me in front of the same large audience, while having no relevance to DSRA issues.**

**I also gave considerable thought to whether I should copy the entire distribution or not.**

I decided it was important for the distribution to know that at least one member of the group
was not happy to be assaulted with Allen's unrelated and unhelpful political grousing.

I understood that some might not embrace my comments. After all, most of us don't want conflict.
However, I've tried many polite, but unsuccessful, ways to discourage the partisan politics.

I encounter polarized politics too often, **from both sides**. It is not solicited and it is unwelcome.  I had a guy, doing my blood labs the other day, start up on the
subject.  I have my political perspective. However, I have other, more productive ways, to pursue my agenda.
I have no expectation of changing anyone opinion through e-mail discourse or verbal jousting.  I wish
they would have the same expectation regarding me.

You may not know that my pension was not reduced when the PBGC took over.  This is because I am disabled
and because my pension is not that large.  In October, I will have been disabled longer than I was a Delphi/GM employee. In spite of that, I have tried to support the DSRA effort and I have tried to be a positive force.  I, also, continue to pursue the COBRA
issues, which has significant financial importance to us Delphi Retirees.  ( FYI: I gave Paul Debosz my complete dossier on the matter. Send me your mailing address, and I'll send you a copy also.)

None of that means I'm willing to endure the kind of partisan politics that Allen foments.  Because of behavior like Allen's, I have been dithering about my continued involvement and

**support.  If being a part of the DSRA means that I have to supply a
platform for Allen's agenda (and those like him), I will withdraw.**

**Take Care,**

James Sumpter

On 7/8/2010 5:25 PM, Jim Frost wrote:
James, please refrain from venting with such a large audience.

Jim Frost
DSRA Interim Vice-Chair
http://www.delphisalariedretirees.org



Confidentiality Notice:  The information contained in this email and any attachments to it may be legally privileged and include confidential information intended only for the recipient(s) identified above.  If you are not one of those intended recipients, you are hereby notified that any dissemination, distribution or copying of this email or its attachments is strictly prohibited.  If you have received this email in error, please notify the sender of that fact by return email and permanently delete the email and any attachments to it immediately.  Please do not retain, copy or use this email or its attachments for any purpose, nor disclose all or any part of its contents to any other person.  Thank you.

**Subject:** DSRA and Delphi cobra
**From:** James Sumpter <jsump@ieee.org>
**Date:** Mon, 13 Jul 2009 17:53:12 -0400
**To:** Den Black <denblack@cox.net>, Jim Frost <james.r.frost@roadrunner.com>, Paul Dobosz <pjdobosz@verizon.net>

DSRA Leadership.

I've spent the last few weeks working on an issue related to Delphi and COBRA.  Essentially, the law says that if a retirees health care benefits are reduced or terminated during a bankruptcy and the company still has another health insurance plan, then the retirees are entitled to life time COBRA.

As much effort through the government maze, I figured out how to submit a request for a ruling on this issue from both the IRS and the Department of Labor.  For this issue the law says the two departments have to coordinate.

I have also file a motion with the court to try to force Delphi to offer COBRA.

I have attached the fillings that I just sent in.  The filing contains a copy of the request I sent to the IRS and the DOL.

I think the easiest way for you to understand the issue is to read my motion.  the various laws are referenced also.

I filed my motions, pro se, so my only direct cot so far is about $250 in Fed ex charges.

I would like to know, if I am successful, and the court agrees to hear my motion, is the DSRA able and willing to hire an attorney (e.g.Jon Cohn) to be in court with me that day.

There is more strategy to this filing.  However, I don't want to put it in an e-mail.  I can talk about it in a conference call.

I am also willing to answer individual calls on any questions you may have.

There are five PDF files.  Also, you may have other members of the leadership that you may want to forward this e-mail to.

James Sumpter

317-877-0736