# EXHIBIT 19

Page 1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 05-44481(RDD)

5    - - - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    DPH HOLDINGS CORP., et al.,

9

10                   Reorganized Debtors.

11

12    - - - - - - - - - - - - - - - - - - - - - -x

13

14                    United States Bankruptcy Court

15                    300 Quarropas Street

16                    White Plains, New York

17

18                    September 22, 2011

19                    10:09 AM

20

21    B E F O R E:

22    HON. ROBERT D. DRAIN

23    U.S. BANKRUPTCY JUDGE

24

25

Page 2

1

2    HEARING re Motion For Recoupment on Behalf of Delphi Salaried

3    Retirees

4

5    HEARING re Claims Objection Hearing Regarding Claims of Alla

6    Averbukh, on Behalf of the Estate of Boris Averbukh, as

7    Objected to in the Reorganized Debtors' Motion for Order (i)

8    Enforcing Modification Procedures Order, Modified Plan and Plan

9    Modification Order Injunction and Forty-Seventh Omnibus Claims

10   Objection Order Against Averbukhs, as Plaintiffs, in Maryland

11   State Court Wrongful Death Action; and (ii) Directing Averbukhs

12   to Dismiss Action to Recover Upon Discharged and Expunged Claim

13   ("Averbukh Injunction Motion")

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Lisa Bar-Leib

Page 3

```
 1
 2   A P P E A R A N C E S :
 3   BUTZEL LONG, PROFESSIONAL CORPORATION
 4        Attorneys for DPH Holdings Corp., et al., Reorganized
 5         Debtors
 6        Suite 100
 7        150 West Jefferson Avenue
 8        Detroit, MI 48226
 9
10   BY:   CYNTHIA J. HAFFEY, ESQ.
11
12   BUTZEL LONG, PROFESSIONAL CORPORATION
13        Attorneys for DPH Holdings Corp., et al., Reorganized
14         Debtors
15        Stoneridge West
16        41000 Woodward Avenue
17        Bloomfield Hills, MI 48304
18
19   BY:   SHELDON H. KLEIN, ESQ.
20
21
22
23
24
25
```

Page 4

```
 1

 2     SKADDEN ARPS SLATE MEAGHER & FLOM LLP

 3          Attorneys for DPH Holdings Corp., et al., Reorganized

 4           Debtors

 5          155 North Wacker Drive

 6          Chicago, IL 60606

 7

 8     BY:   LOUIS S. CHIAPPETTA, ESQ.

 9          (TELEPHONICALLY)

10

11     CIARDI CIARDI & ASTIN

12          Attorneys for Vladimir Averbukh (Individually and as

13           Personal Representative for the Estate of Boris

14           Averbukh) and Alesander Averbukh

15          100 Church Street

16          8th Floor

17          New York, NY 10007

18

19     BY:   RICK A. STEINBERG, ESQ.

20

21

22

23

24

25
```

Page 5

```
 1
 2    ALSO APPEARING:
 3    JAMES B. SUMPTER
 4         On Behalf of Himself as a Delphi Salaried Retiree
 5         21169 Westbay Circle
 6         Noblesville, IN 46062
 7
 8    BY:   JAMES B. SUMPTER, PRO SE
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 6

1                    P R O C E E D I N G S

2          THE COURT:  Please be seated.  Okay.  Good morning.

3   In re DPH Holdings.

4          MS. HAFFEY:  Good morning, Your Honor.  Cynthia Haffey

5   for DPH.  Your Honor, we have two agendas for the Court today,

6   the proposed seventieth omnibus hearing agenda.  And on that

7   agenda, there are no continued or adjourned matters and there

8   is one contested matter.  And that's the motion by James

9   Sumpter for recoupment on behalf of Delphi salaried retirees.

10          THE COURT:  Right.

11          MS. HAFFEY:  And I understand that Mr. Sumpter is on -

12   - joining us today by telephone.

13          THE COURT:  Are you on the phone, Mr. Sumpter?

14          MR. SUMPTER (TELEPHONICALLY):  Yes, I am.

15          THE COURT:  Okay.  Good morning.

16          MR. SUMPTER:  Good morning.

17          MS. HAFFEY:  We also have the proposed forty-eighth

18   claims hearing agenda.  And under "Continued or Adjourned

19   Matters", Your Honor, there is a claim objections hearing

20   regarding claims of Ohio Bureau of Workers' Compensation.  And

21   that matter has been adjourned until the November hearing date.

22          There is, under the "Uncontested, Agreed or Settled

23   Matters", the claims objection hearing regarding claims of ATS

24   Ohio Inc. ATS Automation Tooling Systems, Inc. and ATS Michigan

25   Sales and Services, Inc.  And that matter has been resolved by

Page 7

1    the parties, Your Honor.

2              THE COURT:  Okay.

3              MS. HAFFEY:  The only contested matter today is the

4    claims objection hearing regarding claim of Alla Averbukh on

5    behalf of the estate of Boris Averbukh.  And I understand that

6    counsel for the Averbukhs is here present in the courtroom.

7              THE COURT:  Okay.  So why don't we deal with the

8    motion by Mr. Sumpter first?

9              MS. HAFFEY:  Sounds good, Your Honor.

10             THE COURT:  Okay.  The parties should assume that I've

11   read the papers through Mr. Sumpter's reply that was filed, I

12   guess, yesterday in this matter.  So I have that background.

13   Is Delphi or DPH still making any payments under the various

14   OPEB plans?

15             MS. HAFFEY:  Your Honor, I believe the payments are

16   being made out of a VEBA trust fund.

17             THE COURT:  Under the VEBA?

18             MS. HAFFEY:  Yes.

19             THE COURT:  And is there -- that's under the

20   settlement, though, right?

21             MS. HAFFEY:  That's correct.

22             THE COURT:  Okay.  There are no other payments being

23   made and that's consistent with the fact that the plans were

24   terminated.

25             MS. HAFFEY:  That's correct, Your Honor.

Page 8

1              THE COURT:  Okay.  So, Mr. Sumpter, your motion

2     actually looks for a refund, right, not a crediting against

3     future payments to you?

4              MR. SUMPTER:  I think it asks for both.  I will say

5     this.  The disability payments are still being made when you

6     asked if there were still being payments made by Delphi.

7              THE COURT:  But that's under the VEBA settlement,

8     right?

9              MR. SUMPTER:  No.  No, it's not, not to my -- no.  The

10    VEBA was created out of the funds that were, I'll say, paid

11    when the retirees agreed not to follow through with their

12    appeal.  But that had nothing to do with the disability

13    benefits.

14             THE COURT:  But Delphi terminated its disability plan

15    or plans and the other OPEB plans.  So --

16             MR. SUMPTER:  No, it did not.

17             THE COURT:  -- I don't see how there would be any more

18    payments coming from Delphi.  There might be payments from

19    insurers or government agencies or if people used the VEBA

20    settlement to buy a new policy, they would come from that

21    policy.  But I don't think there any checks being cut by Delphi

22    at this point, right?

23             MR. SUMPTER:  Well --

24             THE COURT:  You don't get a check from Delphi itself,

25    do you?

Page 9

1          MR. SUMPTER:  Not from Delphi.  But I've been -- prior

2    to the OPEB benefits being terminated, I received a check from

3    the administrator which I think it was Mr. Politan (ph.) at the

4    time.

5          THE COURT:  All right.  So -- I mean, yes.  There were

6    checks obviously until the OPEB was terminated; Delphi was

7    cutting checks.

8          MR. SUMPTER:  Well, but now I'm receiving checks from

9    Sedgwick --

10          THE COURT:  Okay.

11          MR. SUMPTER:  -- who took over for Politan.

12          THE COURT:  Right.

13          MR. SUMPTER:  So -- and I have checked with several

14    other disability recipients and they are also receiving checks.

15    Apparently, there are two different organizations that are

16    paying checks.  But a number of people are receiving checks

17    from Sedgwick.

18          THE COURT:  Okay.  So it seems to me then that what

19    you're asking for here is for Delphi or its successor, DPH, to

20    actually cut a check to make up --

21          MR. SUMPTER:  Well, I'm asking -- okay.  I'm asking

22    for two things.  One is there is currently an obligation to

23    reimburse for social security benefits so that if we receive

24    social security benefits in our disability, we receive Delphi

25    that amount towards that disability.

DELPHI HOLDINGS CORPORATION, et al.

Page 10

1          THE COURT:  Well, is Delphi looking for Mr. Sumpter to

2     pay it anything in respect of social security that he's

3     received?  I'm not asking you, Mr. Sumpter.  I'm asking

4     Delphi's counsel.

5          MS. HAFFEY:  If it's a credit or an offset, Your

6     Honor.

7          THE COURT:  I'm sorry?

8          MS. HAFFEY:  A credit or an offset, Your Honor.

9          THE COURT:  But Delphi isn't paying anything to him.

10    So I don't know why there would be any credit.

11         MS. HAFFEY:  It would -- Your Honor, I believe it

12    would be an offset to the trust account.

13         THE COURT:  But the trust account isn't Delphi's.

14         MS. HAFFEY:  That's correct.

15         THE COURT:  I'm really just focusing on Delphi now.

16         MS. HAFFEY:  That's correct, Your Honor.

17         THE COURT:  Maybe you want to talk to your -- okay.

18    So did you want to confirm that with your client?

19         MS. HAFFEY:  Please.  Thank you.

20       (Pause)

21         MS. HAFFEY:  That's correct, Your Honor.

22         THE COURT:  What's correct?

23         MS. HAFFEY:  That Delphi itself is not expecting a

24    credit.

25         THE COURT:  Or a check --

Page 11

1                MS. HAFFEY:  Or a check.

2                THE COURT:  -- from Mr. Sumpter --

3                MS. HAFFEY:  That's correct.

4                THE COURT:  -- for anything that he got in respect of

5      payments from another party.

6                MS. HAFFEY:  That's correct, Your Honor.

7                THE COURT:  Okay.  So this is -- so the crediting was

8      all historical then.  The crediting was based on -- was only in

9      the context of amounts that Delphi owed retirees under the

10     various OPEB policies.  And they would be crediting

11     historically against that amount.  But that's all been done in

12     the past.  There's no more of that to continue in the future as

13     far as Delphi is concerned.

14               MS. HAFFEY:  That is correct, Your Honor.

15               THE COURT:  Okay.

16               MR. SUMPTER:  Your Honor, may I ask?  This is James

17     Sumpter.  I'm just confused about one thing.  In the orders

18     that dealt with the termination of benefits, they did not --

19     those orders did not reference disability at all.  It

20     referenced health care benefits, health care savings account,

21     Medicare supplements.  But they -- the disability benefits were

22     not referenced at all in the order or in the motions to

23     terminate.  And so, my -- I've been operating just based on

24     what I've been living with here in terms of the disability

25     payments, that that has continued.  If they've assigned that to

Page 12

1    someone else then I have no knowledge of it.  They've made us

2    not aware of that.  And the -- I know that people are still

3    making payments for reimbursing social security.

4            THE COURT:  I don't know.  That issue wasn't really --

5    I didn't deal with that issue in preparing for this hearing.  I

6    don't know --

7            MS. HAFFEY:  Your Honor, the settlement did terminate

8    all of Delphi's health and welfare plans which included those

9    disability benefits.

10           THE COURT:  Okay.  I mean, it's possible that

11   disability may be paid through another source, right?  There

12   may be either the substitute plan under the VEBA or some other

13   insurance but Delphi is not funding that?

14           MS. HAFFEY:  That's correct, Your Honor.

15           THE COURT:  Okay.  All right.  Okay.  All right.

16   Again, I have reviewed the papers on this.  And that last

17   discussion dealt with my remaining questions, factual

18   questions, on this matter.  I don't really need additional

19   argument but if either side wants to make their point or

20   supplement a point from their papers, you can do so.

21           MS. HAFFEY:  Your Honor, if I could just make -- and

22   point the Court's attention to -- give me one moment -- two

23   things, Your Honor.  In our response, we say that the general

24   rule is that recoupment is not a claim.  But then we cite to

25   the In re King's Terrace Nursing Home case.  Better stated,

Page 13

1    Your Honor, is that recoupment in the Second District is a

2    claim.  And we have cited that case in our brief.  So I just

3    wanted to point out to the Court that it should have been

4    stated a little stronger.

5              And to Mr. Sumpter's point in regards to res judicata,

6    I'd like to point the Court's attention to Corbett v. MacDonald

7    Moving Services, Inc., 124 F.3d 82 (2nd Cir. 1997).  In that

8    case, the Court states that -- Mr. Sumpter claims that res

9    judicata isn't present here because the claim basically hadn't

10   ripened.  I think that's in point 5 of his reply brief.  The

11   Court in Corbett states that the claim had been ripe in the

12   bankruptcy context because, of course, a claim is matured and

13   unmatured claims, liquidated and unliquidated claims.  And I

14   have a copy of that for the Court.

15             And that's all we have to add, Your Honor.

16             THE COURT:  Okay.

17             MR. SUMPTER:  And this is James Sumpter.  And I have

18   one issue to raise.  When Mr. Chiappetta requested that Your

19   Honor dismiss my motion, you responded that you would not do

20   that but he had the option to request a dismissal based on part

21   7 rule.  And you indicated they had been incorporated into

22   contested matters.  And so, looking at that, I admitted my

23   motion to comprehend the rule so that I alleged that this was a

24   core proceeding.  But there's Rule 7012 that makes that same

25   requirement for the response to the motion.  And the response

Page 14

1   from the debtor did not allege that these proceedings were core

2   or noncore.

3        And so, my thinking is that their response did not

4   meet the requirements and should be rejected.  And so, I was

5   asking Your Honor to reject or dismiss their response because

6   it did not meet the core -- the Rule 7012.

7        THE COURT:  Okay.  All right.  Okay.  I have a motion

8   before me -- it's actually an amended motion although they're

9   very close, that is the amended motion and the original

10  motion -- by James Sumpter "for recoupment on behalf of Delphi

11  salaried retirees".  Although the motion is styled as on behalf

12  of Delphi salaried retirees and not just on behalf of Mr.

13  Sumpter, he acknowledges in his reply to the debtors' objection

14  to the motion, "The Movant does not claim to represent or serve

15  as an attorney for other salaried retirees."  And so, I am

16  treating this motion as a motion solely on behalf of and by Mr.

17  Sumpter and not on behalf of anyone else who, as Mr. Sumpter

18  acknowledges, have not authorized him to make the motion on

19  their behalf.

20       In his motion, Mr. Sumpter argues that he is entitled

21  to and requests a refund from Delphi in respect of deductions

22  that Delphi took under various so-called OPEB benefit plans for

23  retirees for amounts that were due to the beneficiaries of

24  those plans from third parties, including Social Security

25  payments and the like, that under the plans acted as a credit

Page 15

1      against the amounts that Delphi would owe, in essence, to avoid

2      double counting.

3            The context of this motion is important.  Delphi

4      maintained, pre-bankruptcy and during most of its bankruptcy

5      case, various OPEB plans for salaried employees and retirees

6      and their spouses.  The debtors moved, however, on February

7      4th, 2009 seeking the Court's approval to cease contributions

8      to such plans commencing April 1st, 2009.  And on February

9      2nd -- I'm sorry -- February 25th, 2009, the Court entered a

10     provisional order granting that relief and then entered an

11     order on March 11th, 2009 granting the termination motion

12     pursuant to which the debtors did terminate their OPEB plans.

13           Notwithstanding that order, the Court, recognizing the

14     uncertainty under the law as well as the potential for a win-

15     win situation, authorized the appointment of a committee of

16     retirees to negotiate with the debtor over a potential

17     resolution of the issues raised by the OPEB termination motion

18     and the March 11th, '09 order.  And the debtor subsequently

19     entered into a settlement agreement pursuant to which there was

20     a settlement of the appeal from the termination order as well

21     as a resolution that appealed that provided for the debtors

22     paying a considerable sum of nine million dollars which, except

23     for the part that went to attorneys' fees, went to help fund a

24     health and benefit plan, so-called VEBA plan that provided for

25     replacement benefit coverage albeit incomplete replacement

Page 16

1    benefit coverage.

2         However, with the exception of that settlement,

3    pursuant to which Delphi committed the money that I've -- or

4    paid the money that I've just discussed, Delphi ceased, as

5    authorized by the Court, making any future OPEB payments.

6         Thus, it is clear to me that the relief that Mr.

7    Sumpter seeks in his motion is -- as generally styled in the

8    motion, seeking an affirmative recovery from Delphi in the form

9    of a refund of the amounts that Delphi had previously reduced

10   OPEB payments by, i.e., the amount paid for the same types of

11   claims by third parties.

12        The Delphi debtors, later in 2009, specifically on

13   June 16th, 2009, obtained a bar date order that required that

14   all administrative claims, that is claims arising from the

15   commencement of Delphi's Chapter 11 case through June 1, 2009,

16   be filed by July 15th, 2009 or be forever barred in the case.

17        Subsequently, on July 30th, 2009, Delphi obtained this

18   Court's approval of confirmation -- on the modification and

19   confirmation of its modified Chapter 11 plan. That order,

20   entered by the Court on July 30th, 2009 and referred to by

21   Delphi and stated in its caption as the "Plan Modification

22   Order", first incorporates the discharge under Article 11.2 of

23   the modified plan into the confirmation order. And in

24   addition, in paragraph 22, the discharge having been

25   incorporated in paragraph 20 of the plan modification order --

05-44481-rdd    Doc 21777-19    Filed 12/22/11    Entered 12/22/11 20:47:31    Exh. 19
Pg 18 of 27
05-44481-rdd    Doc 21603    Filed 09/30/11    Entered 09/30/11 23:21:29    Main Document
DPH HOLDINGS CORPORATION, et al.
Pg 20 of 29

Page 17

1    in paragraph 22, the plan modification order states, in

2    relevant part, that "All persons shall be precluded and

3    permanently enjoined on and after the effective date of the

4    modified plan from the enforcement attachment collection offset

5    recoupment or recovery by any matter or means of any judgment

6    or decree or order or otherwise with respect to any claim,

7    interest, cause of action or any other right or claim against

8    the reorganized debtors which they possessed or may possess

9    prior to the effective date of the Chapter 11 plan."

10        That order is a final order and under Section 1144 of

11    the Bankruptcy Code cannot be revoked even for fraud by the

12    plain terms of Section 1144 of the Code.

13        Finally, it should be noted that this Court has

14    disallowed administrative claims by Mr. Sumpter filed in

15    respect of his claims for termination of the OPEB plans by

16    order dated December 2, 2009.  In addition, the Court, in

17    connection with the litigation over the termination of the OPEB

18    benefits found as moot Mr. Sumpter's motion in this case to

19    enforce COBRA benefits for salaried retirees and motion for

20    COBRA settlement.  It did that by order dated August 3, 2009.

21    And in addition, the Court, in an order entered June 27, 2011,

22    denied Mr. Sumpter's motion for a stay of proceedings regarding

23    the VEBA in lieu of COBRA.

24        Thus, the record is quite clear that Mr. Sumpter is

25    barred by res judicata in the form of the Court's prior orders

Page 18

1     from either (a) challenging the Court's order authorizing the

2     debtors to terminate the OPEB plans; (b) the VEBA settlement;

3     and (c) already disallowed administrative claims arising from

4     the alleged nonpayment or failure to pay OPEB.

5          Mr. Sumpter, in his motion presently before the Court,

6     contends that his recoupment theory is not covered by the

7     Court's prior orders in that he is seeking not to have an

8     administrative claim allowed or an affirmative recovery from

9     Delphi in respect of the credits that it took when it paid him

10    in the past OPEB benefits.

11         The debtors disagree and also contend that even if the

12    legal theory upon which Mr. Sumpter relies is characterized as

13    recoupment, they contend that he is barred the confirmation

14    order and the discharge under the law in this district from

15    asserting even in light of recoupment as opposed to an

16    affirmative claim.

17         I find and conclude as a matter of law based upon the

18    facts asserted by Mr. Sumpter and the Court's prior orders and

19    related documents incorporated into those orders and Mr.

20    Sumpter's motion that the motion must be denied on the basis of

21    the following conclusions.

22         First, the plan modification order, by its expressed

23    terms, as I've already quoted, permanently enjoins any person,

24    including Mr. Sumpter, from recoupment as well as offset or any

25    other form of recovery by any manner.  It's clear that a

Page 19

1    bankruptcy court's order confirming a Chapter 11 plan

2    constitutes a final judgment on the merits and is to be given

3    preclusive effect under res judicata.  In re American Preferred

4    Prescription, Inc., 266 B.R. 273, 277 (E.D.N.Y. 2000).  See

5    also Sure-Snap Corp. v. State Street Bank & Trust Co., 948 F.2d

6    869, 872-73 (2nd Cir. 1991) and In re I. Appel Corp., 300 B.R.

7    564, 567 (S.D.N.Y. 2003) aff'd Katz v. I.A. Alliance Corp., 104

8    Fed. Appx. 199 (2nd Cir. 2004).

9            While there are conflicting cases as to whether the

10    proper application of the doctrine of recoupment survives the

11    discharge under either Chapter 7 or, as in this case, Chapter

12    11 of the Bankruptcy Code, it is clear that a confirmation

13    order that specifically enjoins permanently the assertion of

14    the doctrine of recoupment constitutes res judicata, where that

15    order is final, as a plan modification order is, and the party

16    against whom the order is asserted for res judicata purposes

17    had sufficient notice of it for due process purposes which is

18    undisputed here.  See Daewoo International (America) Corp.

19    Creditor Trust v. SSTS America Corp., 2003 U.S. Dist. LEXIS

20    9802 at 17-18 (S.D.N.Y. June 9, 2003) in which District Judge

21    Buchwald specifically found, as is directly on point here, that

22    a party that had constructive notice of the bankruptcy case and

23    confirmation order of the debtor, Daewoo America, was barred by

24    res judicata from asserting a right of recoupment given the

25    specific injunction in the confirmation order of the assertion

Page 20

1    of such a right.

2          So based upon the res judicata effect of paragraph 22

3    of the plan modification order, Mr. Sumpter's motion should be

4    denied.

5          In addition, the debtor is correct that at least one

6    case in this district has held, even in the absence of a

7    specific provision in the confirmation order enjoining a

8    recoupment right or the assertion of a recoupment right that

9    the discharge under Section 1141 of the Bankruptcy Code and the

10   broad definition of "claim" in Section 101(5) precludes the

11   assertion of recoupment rights after the confirmation and

12   effective date of a Chapter 11 plan.  See In re King's Terrace

13   Nursing Home, 184 B.R. 200, 204 (S.D.N.Y. 1995).  That is

14   particularly the case here where the debtor is not picking and

15   choosing with regard to the provisions of a contract that it

16   wants to perform and those that it does not want to perform

17   since, as is the case here, the debtor obtained permission to

18   terminate its OPEB benefits contracts.

19         Even if I were not to agree with the logic of a King's

20   Terrace Nursing Home case, moreover, the so-called recoupment

21   right in Mr. Sumpter's motion is not in fact a proper form of

22   recoupment for purposes of overcoming a Chapter 11 discharge.

23   That is because, as I noted earlier, Mr. Sumpter is not

24   asserting the doctrine of recoupment as it needs to be asserted

25   on a defensive basis but is rather instead looking for a refund

Page 21

1    from DPH, as the successor to Delphi, for payments that

2    allegedly should have been made before the termination of the

3    OPEB plans.  Recoupment -- in other words, he is looking for

4    DPH to cut a check to him as opposed to credits for future

5    payments that Delphi or DPH would be making none of which, in

6    fact, DPH is making or is required to make.

7         Recoupment is a defensive doctrine and not a separate

8    cause of action or weapon of offense.  See In re Drexel Burnham

9    Lambert Group, Inc., 113 B.R. 830, 854 (Bankr. S.D.N.Y. 1990).

10   See also Bull v. United States, 295 U.S. 247, (1935).

11        The cases that have the successful assertion of the

12   recoupment doctrine notwithstanding a debtor's discharge all

13   involve cases or situations where there are still running

14   payments to be made to or by the debtor against which credits

15   can be asserted defensively pursuant to recoupment.  On the

16   other hand, it is clear that where the defense -- where

17   recoupment is used offensively and not simply as a defense, it

18   is clearly a claim under Section 101(5) of the Code.  And, as

19   I've noted before, in respect of claims, Mr. Sumpter already

20   has been determined not to have a timely claim in this case and

21   his claims have been disallowed.  See In re Izaguirre, 166 B.R.

22   484, 492-93 (Bankr. N.D. Ga. 1994).

23        Thus, the motion should be dismissed on the

24   alternative ground that it does not rely on a proper that is,

25   defensive, theory of recoupment but actually asserts a claim

Page 22

1    that is barred by the Court's prior bar date orders as well as

2    the discharge under paragraph 20 of the plan modification and

3    Article 11.2 of Delphi's confirmed and effective Chapter 11

4    plan.

5              The debtors requested both informally, through an e-

6    mail to chambers that was cc'd to Mr. Sumpter, as well as

7    formally, when the Court required the filing of a formal

8    objection to the motion and hearing, that the Court enter an

9    order barring Mr. Sumpter from bringing further litigation

10   against them in respect of the manners that this Court has

11   already adjudicated by final order.  I took this request

12   seriously.  Mr. Sumpter has now raised an attack against either

13   the OPEB termination motion, the VEBA settlement, which is also

14   res judicata, and/or the assertion of his claims arising from

15   the nonpayment of benefits at least three times.  And the

16   debtors' estate clearly should not be further burdened by

17   attacks arising from the same facts but based upon different

18   legal theories that either don't fly or that were effectively

19   dealt with when I previously dealt with such attacks.

20             On the other hand, Mr. Sumpter is pro se.  And I do

21   take that into account in evaluating whether he is acting

22   improperly or in bad faith in raising legal theories that

23   clearly have no merit in that they've already been dealt with

24   by the Court or, alternatively, simply don't make any sense, as

25   frankly this recoupment theory -- it didn't make any sense.  At

Page 23

1    least, they wouldn't make any sense to a lawyer versed in basic

2    principles of bankruptcy law.  However, Mr. Sumpter isn't a

3    lawyer so I decided first to treat this matter through written

4    submissions by the parties and a hearing today.  And secondly,

5    I decided not to enjoin him from bringing further actions.

6            On the other hand, by no means should Mr. Sumpter take

7    that ruling as a license to bring further actions that are not

8    premised upon a good faith real argument.  The debtors have

9    their rights under -- in matters before this Court --

10    Bankruptcy Rule 9011, in matters in the federal district court

11    or other federal courts under Civil Procedure 11 and in their

12    corollaries under the various state court procedures for

13    bringing frivolous or bad faith claims.  And Mr. Sumpter is

14    duly warned that notwithstanding his pro se status, he is on

15    clear notice that future motions in violation of the -- or

16    other litigation in violation of the plan modification order or

17    this Court's prior orders or the Delphi debtors' discharge

18    under their Chapter 11 plan should merit the imposition of

19    sanctions.  And the debtors can certainly use this transcript

20    in that regard if such litigation is commenced outside of this

21    court.

22            So again, for the reasons that I've stated on the

23    record, the motion's denied as a matter of law under the

24    equivalent of or based upon the factors applied by the Court

25    under Bankruptcy Rule 7012 in light of the Court's prior orders

DPH HOLDINGS CORPORATION, et al.

Page 24

1    and the undisputed facts asserted in the motion.

2           So the debtors or DPH can submit an order to chambers

3    by e-mail consistent with that ruling.

4           MS. HAFFEY:  Thank you, Your Honor.

5           MR. SUMPTER:  Your Honor, this is James Sumpter.  And

6    I appreciation the consideration I've gotten.  I guess I would

7    like to tell the Court that my actions have not been intended

8    to be malicious but a sincere effort for --

9           THE COURT:  That's why I ruled the way I have.  But I

10   think you're on notice now, Mr. Sumpter, that I really don't --

11   unless -- every matter I need to review or some other Court

12   needs to review on its merits.  But you really need to think

13   very clearly about anything that deep down really does

14   challenge any of the things that are now approved by a final

15   order by me.

16          MR. SUMPTER:  And I understand that.  And I just

17   wanted to say, though, that I just would -- I don't have the

18   physical resources to go tilting at windmills.  So if you

19   apprec -- you know, if you understand the kind of effort that I

20   put into it, I just wouldn't do it if I didn't sincerely --

21   even if I was wrong -- think that I had a case.  But I really

22   don't anticipate any other action.

23          THE COURT:  Okay.  Very well.

24          MR. SUMPTER:  But could I ask a clarification that is

25   not intended to challenge a ruling or anything like that?  But

Page 25

1    I am really just still confused on one point. And I'm looking

2    at the -- what's here -- the filing they requested, the

3    termination of benefits.

4            THE COURT: Right.

5            MR. SUMPTER: And it eliminates post-paid retirement

6    health care benefits for current and future. It ceases the

7    company from making contributions to post-retirement health

8    care. It cancels all retiree health reimbursement accounts.

9    For Medicare, it terminates Medicare part B. It stops the one

10   percent employee contribution to scholarly retirement savings

11   program for people hired after a certain date. And it

12   eliminates retirement for post-retirement basic life insurance.

13   And those are the only categories that it covers. It does

14   reference disability at all. And so, that's my confusion.

15           THE COURT: All right. Well, I don't have that before

16   me, Mr. Sumpter, so I can't really comment on it. What I

17   recommend is that you speak to the debtor's -- DPH's

18   representative about it. Maybe they can show you what they

19   believe covers your disability in that order and/or prior

20   orders that I entered dealing with COBRA. So I think you know

21   who to speak to. Have you spoken with them before?

22           MR. SUMPTER: I don't know. There's a transition that

23   seems to be taking place.

24           THE COURT: Well, there's a gentleman who's here in

25   the courtroom who deals with claims. You can speak to him

Page 26

1   about it.  Or you can contact the lawyer who spoke today.  Why

2   don't you give him your name, ma'am?

3           MS. HAFFEY:  Mr. Sumpter, this is Cynthia Haffey.  You

4   can give me a call at (313)983-7434.  I'll be back in the

5   office on Friday.

6           MR. SUMPTER:  All right.

7           THE COURT:  And she can point you to the reasons

8   Delphi believes -- or DPH believes that it terminated validly

9   the disability -- its obligation to pay disability payments.

10  Okay?

11          MR. SUMPTER:  Okay.

12          THE COURT:  All right.  Thank you very much.

13          MR. SUMPTER:  Thank you.

14          THE COURT:  Okay.  So that leaves DPH's motion to

15  enforce the plan injunction and the discharge against the

16  Averbukh plaintiffs.

17          MR. KLEIN:  Yes, Your Honor.  Sheldon Klein of Butzel

18  Long on behalf of DPH reorganized debtors.

19          MR. STEINBERG:  Good morning, Your Honor.  Rick A.

20  Steinberg of Ciardi Ciardi & Astin for Vladimir Averbukh and

21  Alesander Averbukh.

22          THE COURT:  Okay.  You -- both sides should assume

23  that I've read the papers on this through DPH's reply to the

24  Averbukh's response to their motion.  I don't think there's

25  been anything after that filed.