**Hearing Date: January 12, 2012 at 10 a.m. (EDT)**
**Response Date: January 5, 2012**

BUTZEL LONG, a professional corporation
150 West Jefferson, Suite 100
Detroit, MI  48226
(313) 225-7000
Cynthia J. Haffey
Thomas B. Radom
David J. DeVine

*Attorneys for Reorganized Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) ) | Chapter 11 |
| DPH HOLDINGS CORP., *et al.,* | ) ) ) | Case No. 05-44481 (RDD) |
| | ) | Jointly Administered |
| Reorganized Debtors. | ) ) | |

**REORGANIZED DEBTORS' MOTION FOR SANCTIONS RELATING TO IMPROPER PURSUIT OF MARYLAND STATE COURT ACTION BY AVERBUKHS**

DPH Holdings Corp. and certain of its affiliated reorganized debtors in the above-captioned cases (collectively, the "Reorganized Debtors"), successors to Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, former debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), bring this Motion ("Motion") For Sanctions Relating To Improper Pursuit of Maryland State Court Action By Averbukhs.  In support of their Motion, the Reorganized Debtors rely on the facts and authority set forth below.

<u>**OVERVIEW**</u>

1.      This Motion seeks to recover expenses the Reorganized Debtors incurred to compel the dismissal of a Maryland state court action (the "Maryland Action") brought by the

estate, wife, and sons of Boris Averbukh against Debtors Delphi Corporation and Delphi

Automotive Systems LLC, among others. The Maryland Action was squarely barred by multiple

orders of this Court, and counsel for the Reorganized Debtors expressly requested that the

Averbukhs' counsel voluntarily dismiss the action.

2.      The Averbukhs refused to dismiss the Maryland Action, and the Reorganized

Debtors were forced both to seek an additional order from this Court compelling the dismissal

and to incur additional legal expenses to defend the Maryland Action in the interim.

3.      In this Court's Order dated October 4, 2011, the Court found that the Averbukhs'

continued prosecution of their Maryland Action was not only baseless, but it was also a "clear

violation" of this Court's previous orders. (Sept. 22, 2011 Hr'g Tr., p. 47 (**Exhibit A**).) The

Court therefore ordered the Averbukhs to dismiss their Maryland Action "immediately,"

emphasizing that such directive was "without prejudice to rights of the Reorganized Debtors to

seek sanctions for violation of the Court's prior Orders." (October 4, 2011 Order, p. 4 ¶ 6

(**Exhibit B**) (Docket No. 21606).) The Reorganized Debtors now move for such sanctions and

seek to recover the resources the bankruptcy estate expended to obtain a dismissal of the barred

Maryland Action.

## FACTS

### A. The Averbukh Claim, the Maryland Action, and this Court's Unambiguous Orders Barring the Averbukhs' Relief.

4.      On October 8 and 14, 2005, Delphi Corporation and certain of its affiliates,

former debtors and debtors-in-possession in the above-captioned cases, predecessors of the

Reorganized Debtors, filed voluntary petitions in this Court for reorganization relief under

chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended.

5.      Upon information and belief, on April 7, 2007 Boris Averbukh ("Boris") died in an automobile accident in the State of Maryland.  Also upon information and belief, at the time of his death, Boris was a passenger in a vehicle being driven by his wife, Alla Averbukh ("Alla").

6.      On July 27, 2007, Vladimir Averbukh ("Vladimir"), one of Boris' sons, was appointed personal representative of the Estate of Boris Averbukh by virtue of probate proceedings in the State of Maryland.

7.      On June 16, 2009, this Court entered an Order (A)(I) Approving Modifications to Debtors' First Amended Plan of Reorganization (as Modified) and Related Disclosures and Voting Procedures and (II) Setting Final Hearing Date to Consider Modifications to Confirmed First Amended Plan of Reorganization and (B) Setting Administrative Expense Claims Bar Date and Alternative Transaction Hearing Date ("Modification Procedures Order") (Docket No. 17032).

8.      The Modification Procedures Order provided in pertinent part that (i) July 15, 2009 was the deadline for all creditors holding administrative expense claims for the period from the commencement of the chapter 11 cases in October 2005 through June 1, 2009 to file a claim on an Administrative Expense Claim Form; (ii) notice of the Administrative Claim Bar Date was to be published in the Detroit Free Press, the New York Times (worldwide), the Wall Street Journal (national, European, and Asian editions) and USA Today (worldwide); and (iii) the failure to timely file an Administrative Expense Claim would forever bar, estop and enjoin the creditor from asserting such a claim, and the Debtors' property would be forever discharged from such claim.  See ¶¶ 38-41 of Modification Procedures Order.

9.      The Debtors published notices of the July 15, 2009 Administrative Claim Bar Date (the "Administrative Claim Bar Date") in accordance with the Modification Procedures Order, as evidenced by the Debtors' Affidavits of Publication. (Docket Nos. 17407-17415.)

10.      On July 30, 2009, this Court entered an Order Approving Modifications under 11 U.S.C. § 1127(b) to (I) First Amended Joint Plan of Reorganization (the "Plan") of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession, as Modified and (ii) Confirmation Order (the "Plan Modification Order"). (Docket No. 18707.)

11.      On September 9, 2009, after the Administrative Claim Bar Date, The Kuhlman Law Firm, LLC filed an Administrative Expense Claim Request on behalf of Alla (the "Averbukh Claim"). (Claim No. 19597.) Section 5 of the Averbukh Claim describes the claim as "[d]amages for injuries and wrongful death of Boris Averbukh." A copy of the Averbukh Claim is attached as **Exhibit C**. No other administrative claim was filed by any of the Averbukhs.

12.      On November 9, 2009, Vladimir Averbukh, Aleksandr Averbukh ("Aleksandr"), and Alla Averbukh filed a civil action in the Circuit Court for Prince George's County, Maryland, against Debtors Delphi Corporation and Delphi Automotive Systems LLC, among other defendants, Case No. CAL09-35924 (the "Maryland Action"). Both Vladimir and Aleksandr were named in their individual capacity, and Vladimir was also identified as Personal Representative of Boris' estate. Alla was identified as a "Use Plaintiff." In relevant part, the Maryland Action, like the Averbukh Claim, sought damages for the alleged wrongful death of Boris Averbukh. A copy of the complaint filed in the Maryland Action is attached as **Exhibit D.**

13.      Under Maryland law, a "Use Plaintiff" is a statutory beneficiary who has "not formally joined the [wrongful death] action, but, as [a] real part[y] in interest, [is a] plaintiff[]

4

whose interests must be acknowledged and protected throughout the litigation." *Williams v. Ace American Insurance Company*, 192 Md. App. 438, 445 (2010).

14.     Under Maryland law, Alla, Vladimir and Aleksandr were each a statutory "primary beneficiary" and necessary plaintiff to any wrongful death cause of action.

15.     On or about January 11, 2010, a summons and the complaint in the Maryland Action were served upon the Debtors.

16.     Soon after, on April 16, 2010, the Reorganized Debtors filed their Forty-Seventh Omnibus Objection Pursuant to 11 U.S.C. § 503(b) And Fed. R. Bankr. P. 3007 To (I) Disallow And Expunge (A) Certain Administrative Expense Books And Records Claims, (B) A Certain Administrative Expense Duplicate Claim, And (C) Certain Administrative Expense Duplicate Substantial Contribution Claims, And (II) Modify Certain Administrative Expense Claims (the "Forty-Seventh Omnibus Claims Objection") (Docket No. 19873).  The Forty-Seventh Omnibus Claims Objection objected to the Averbukh Claim on the grounds that the Reorganized Debtors' books and records showed nothing owing for the asserted liability.

17.     Also on April 16, 2010, the Reorganized Debtors served Alla with a Notice of Objection to Claim (Docket No. 19910) through her counsel of record, The Kuhlman Law Firm. A copy of the Notice of Objection to Claim is attached as **Exhibit E**.

18.     On or about April 26, 2010, local counsel for the Averbukhs filed motions in the Maryland Action to admit Brad Kuhlman and Chad Lucas of The Kuhlman Law Firm to appear as co-counsel for Aleksandr, individually, and for Vladimir, individually and as personal representative of Boris' estate.  Copies of the motions are attached as **Exhibit F**.

19.     No response was filed to the Reorganized Debtors' objection to the Averbukh Claim.

20.     On May 25, 2010 this Court entered its Order Pursuant to 11 U.S.C. §503(b) And Fed. R. Bankr. 3007 (I) Disallowing And Expunging (A) Certain Administrative Expense Claims On Books And Records Grounds, (B) A Certain Administrative Expense Duplicate Claim, And (C) Certain Administrative Expense Duplicate Substantial Contribution Claims, And (II) Modifying A Certain Administrative Expense Claim ("Averbukh Claim Expungement Order") (Docket No. 20188).    The Averbukh Claim Expungement Order "disallowed and expunged in its entirety" the Averbukh Claim.

21.     On May 28, 2010, the Reorganized Debtors provided Notice of Entry of the Averbukh Claim Expungement Order (Docket No. 20216) by serving it upon Alla's counsel of record, The Kuhlman Law Firm, which also represented the balance of the plaintiffs in the Maryland Action.    A copy of the Notice of Entry of Order is attached as **Exhibit G**.

22.     The Kuhlman Law Firm never withdrew its appearance from the bankruptcy proceedings, and neither Alla nor The Kuhlman Law Firm ever sought reconsideration or review of the Averbukh Claim Expungement Order.

23.     The Reorganized Debtors, through their counsel, subsequently notified the Averbukhs, through Brad Kuhlman, that the Maryland Action was improper and requested that it be dismissed as to the Debtors.    (*See, e.g.*, June 2011 E-mail Correspondence, **Exhibit H**.)    The Averbukhs nonetheless refused to dismiss the Maryland Action.

**B.    *The Subsequent Injunction Motion, Cross-Motion, and this Court's October 4, 2011 Order.***

24.     In light of the Averbukhs' refusal to dismiss the Maryland Action, on August 30, 2011, the Reorganized Debtors filed a Motion for Order (I) Enforcing Modification Procedures Order, Modified Plan and Plan Modification Order Injunction and Forty-Seventh Omnibus Claims Objection Order Against Averbukhs, as Plaintiffs, in Maryland State Court Wrongful

Death Action; and (II) Directing Averbukhs to Dismiss Action to Recover Upon Discharged and Expunged Claim (the "Injunction Motion") (Docket No. 21553).

25.    Vladimir Averbukh, in his personal and representative capacity, and Aleksandr Averbukh responded not by abandoning their Maryland Claim, but instead by filing a September 19, 2011 Response of Vladimir Averbukh and Alesander Averbukh to the Reorganized Debtors' Motion for Order Enforcing Modification Procedures Order, Modified Plan and Plan Modification Order Injunction, Etc. and Cross-Motion for Relief from the "Pertinent Orders" (the "Averbukhs' Cross-Motion") (Docket No. 21583).  Alla Averbukh never responded to the Reorganized Debtors' Injunction Motion.

26.    Accordingly, on September 21, 2011, the Reorganized Debtors filed their (A) Reply in Support of motion for Order (I) Enforcing Modification Procedures Order, Modified Plan and Plan Modification Order Injunction and Forty-Seventh Omnibus Claims Objection Order Against Averbukhs, as Plaintiffs, in Maryland State Court Wrongful Death Action; and (II) Directing Averbukhs to Dismiss Action to Recover Upon Discharged and Expunged Claim, and (B) Response to Vladimir Averbukh's and Alesander Averbukh's Cross-Motion for Relief from the "Pertinent Orders" (the "Cross-Motion Response") (Docket No. 21587).

27.    At the September 22, 2011 Forty-Eighth Claims Hearing (the "Hearing"), this Court heard both parties' motions.  On the record at the Hearing, and through a subsequent October 4, 2011 written order (the "October 4, 2011 Order"), this Court granted the Reorganized Debtors' Injunction Motion and denied the Cross-Motion.  Specifically, the Court held as follows:

    a.    The Averbukhs' claims against the Debtors in the Maryland Action were "barred by (1) the Reorganized Debtors' discharge under Section 11.2 of the Plan and section 1141 of the Bankruptcy Code, (2) Paragraph 20 of the Plan Modification Order, (3) the permanent injunction set forth in Paragraph 22 of

the Plan Modification Order, and (4) the May 2010 Order Disallowing Alla Averbukh's Claim . . . " (**Exhibit B**, p. 2 ¶ 1);

b.  The Reorganized Debtors' notice of the Administrative Bar Date, the Plan, and the Plan Modification Order by publication was sufficient because the Averbukhs were not known claimants (*id.* at p. 2 ¶ 3);

c.  The Maryland Action was additionally and alternatively barred by res judicata in light of the Averbukh Claim Expungement Order and the Maryland wrongful death statute, which provides for only a single action arising from the death of a person (*id.* at p. 3 ¶ 4 (citing Maryland Courts and Judicial Proceedings Code Ann. Section 3-904 (2011), subpart (f))); and

d.  The Cross-Motion failed because (1) the Averbukhs' request for relief from the Plan Modification Order under section 1144 of the Bankruptcy Code was was untimely and did not allege that the order was procured by fraud, and (2) the Averbukhs failed to assert any viable grounds for relief from the Administrative Bar Date (*id.* at pp. 3-4 ¶ 5).

28.   In light of the above conclusions, the Court ordered the Averbukhs to "immediately dismiss with prejudice the [Maryland Claim] against the Debtors and Reorganized Debtors." (*Id.* at p. 4 ¶ 5).

29.   The Court then addressed the Averbukhs' baseless refusal to dismiss the Maryland Claim long before the September 22 Hearing, noting its perplexity as to "why this law firm didn't comply with the debtors' [dismissal] request in the first place. . . . *[T]his was just a clear violation [of the Court's orders]. I don't know what they were thinking.*" (Sept. 22, 2011 Hr'g Tr., p. 47, **Exhibit A** (emphasis added).)   Accordingly, the Court emphasized that its October 4, 2011 Order was *"without prejudice to rights of the Reorganized Debtors to seek sanctions for violation of the Court's prior Orders."* (**Exhibit B**, p. 4 ¶ 6 (emphasis added).)

30.   The message could not have been clearer—the Averbukhs "clear[ly] violat[ed]" the Court's earlier orders by pursuing the Maryland Action against the Debtors, and immediate dismissal of that action was required.  Amazingly, notwithstanding the Court's straightforward position, the Averbukhs *still did not dismiss the Maryland Action until October 31, 2011—more*

8

*than a month after the Hearing.* (**Exhibit I**.)  *Until that time, moreover the Reorganized Debtors again had to send communications to the Averbukhs' attorneys to secure the dismissal.*

31.    Accordingly, for all of the above reasons, together with the reasons highlighted by the Court on the record at the September 22 Hearing and in the October 4, 2011 Order, the Reorganized Debtors now seek sanctions to recover their expenses in securing the dismissal of the Maryland Action.

## JURISDICTION AND VENUE

32.    This Court has subject-matter jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334, the Plan Modification Order (Docket No. 18707 ¶ 56), and the October 4, 2011 Order (Docket No. 21606, p. 4, ¶ 7).  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  *In re Emergency Beacon Corp.*, 52 B.R. 979, 987 (S.D.N.Y. 1985) ("[A] hearing by the bankruptcy court to impose sanctions based on conduct occurring during a core proceeding is a matter . . . . integral to the adjudication of bankruptcy, and one that has been traditionally before the bankruptcy court.  It is thus a core proceeding under 28 U.S.C. § 157 . . . . (internal quotation marks and citations omitted)).  This Court is the proper venue for this matter pursuant to 28 U.S.C. §§ 157 and 1409.

## APPLICABLE LAW AND LEGAL ARGUMENT[1]

### A. *The Averbukhs' Deliberate Pursuit of an Unjustifiable Legal Position Mandates the Imposition of Sanctions Under Fed. R. Bankr. P. 9011.*[2]

#### 1.  The Standard for Awarding Sanctions Under Fed. R. Bankr. P. 9011.

33.    Under Fed. R. Bankr. P. 9011(b)(1) and (2), respectively, a party is prohibited from pursuing a legal position for an improper purpose and from taking a frivolous position before the Court:

> (b) Representations to the court.  By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law . . . .

34.    In turn, a party, attorney, or law firm that violates Bankruptcy Rule 9011(b) is subject to sanctions under Bankruptcy Rule 9011(c):

---

[1] This Motion does not repeat in detail the underlying legal arguments in the Injunction Motion and Cross-Motion Response because such arguments are sufficiently reflected in the Court's October 4, 2011 Order and in the transcript of the September 22, 2011 Hearing.  Accordingly, this Motion focuses solely on the appropriateness of sanctions under Fed. R. Bankr. P. 9011.

[2] As an additional and alternative basis for the Reorganized Debtors' requested relief, 28 U.S.C. § 1927 authorizes this Court to award attorneys' fees against the Averbukhs' counsel *personally*:  "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Notwithstanding this reality, the Reorganized Debtors do not discuss 28 U.S.C. § 1927 in detail in this Motion because the Averbukhs' willful violation of this Court's orders also supports an award under Fed. R. Bankr. P. 9011.  *See In re Usoskin*, 61 B.R. 869, 873-74 (Bankr. E.D.N.Y. 1986).

(c) Sanctions.   If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may . . . impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

35.     Specifically, where "warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion." Fed. R. Bankr. P. 9011(c)(1)(A).   Sanctions also may include, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Fed. R. Bankr. P. 9011(c)(2).   While represented *parties* are not subject to monetary sanctions based on their counsel's assertion of frivolous legal positions (*id.*), such parties' attorneys and law firms are jointly responsible for any monetary sanctions awarded.   Fed. R. Bankr. P. 9011(c)(1)(A).   ("Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.").

## 2. The Averbukhs' Continued Prosecution of the Maryland Action Against the Debtors Was Frivolous.

36.     The relevant procedural history in this case and the Court's findings during the September 22 Hearing and in the October 4, 2011 Order make clear that sanctions are warranted under Fed. R. Bankr. P. 9011(c).   Specifically, the Maryland Action was plainly frivolous for the myriad reasons cited by the Court at the September 22 Hearing and in the October 4, 2011 Order, and the Averbukhs' continued pursuit of the action constituted a "clear violation" of this Court's earlier orders.   (**Exhibit B**, ¶¶ 1, 3, 4-6; **Exhibit A**, p. 47.)   Any reasonable investigation into the controlling law governing this matter would have confirmed these realities based on the untimeliness of the action alone.   *In re Rosage*, 189 B.R. 73, 81 (Bankr. W.D. Pa. 1985) (imposing sanctions where party's basis for filing complaint "some nine months after the first

date set for the § 341(a) meeting of creditors was entirely unreasonable. . . . [I]f the plaintiffs and their attorneys had researched the law, they could NOT have believed they had a good basis for filing the complaint and accompanying motions. The law in this area is too well established."); *see also In re Galemore*, 80 B.R. 223, 225 (Bankr. D. Kan. 1987) (imposing sanctions after deciding "[t]he sole issue . . . [of] whether the plaintiffs and their attorneys could have believed that after reasonable inquiry that the basis for their complaint and accompanying motions, especially the motion to enlarge time for filing a section 523 and 727 complaint after the time had run, was well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of law.").

37.     Additionally, the Reorganized Debtors' June 3, 2011 communications to the Averbukhs' counsel and the Reorganized Debtors' Injunction Motion all spelled out the fatal defects of the Maryland Action unequivocally, thus further stripping the Averbukhs of any reasonable basis for pursuing the action further. *See id.* These communications were therefore of particular import, as a court "considering sanctions under Rule 9011 . . . measures the attorney's conduct objectively against a reasonableness standard, which consists of a competent attorney admitted to practice before the involved court." *In re Martinez*, 393 B.R. 27, 33 (Bankr. D. Nev. 2008) (internal citations and quotation marks omitted). As the Court observed at the September 22 Hearing, the Averbukhs' attorneys fell far short of this standard: ***"I don't understand why this law firm didn't comply with the debtors' request [for dismissal] in the first place. . . . [T]his was just a clear violation [of the Court's orders]. I don't know what they were thinking."*** (**Exhibit A**, p. 47.)

38.     In summary, the Averbukhs' deliberate pursuit of a meritless action *mandates* the imposition of sanctions under Bankruptcy Rule 9011. *See In re Usoskin*, 61 B.R. 869, 874

(Bankr. E.D.N.Y. 1986) ("As the Second Circuit has noted, the inclusion of the word 'shall' [in

Bankruptcy Rule 9011] makes the imposition of sanctions mandatory where the Rule has been

violated. (citing *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.

1985)))).

### B. The Sanctions Sought by the Reorganized Debtors are Reasonable and Appropriate.

39.    Not only are sanctions required in this case under Bankruptcy Rule 9011, but the

nature and amount of sanctions sought by the Reorganized Debtors is both proper and

reasonable.  Where a court awards sanctions to a bankruptcy debtor, "the award of fees at the

prevailing market rate comports with the primary purpose of Rule 11 which is deterrence. ***One

of the most fundamental goals of the bankruptcy law is to provide the honest debtor with a

fresh start.  The award of fees at full market rate will deter creditors from wrongfully delaying

the fresh start which Congress intended.***"  *Id.* at 878 (internal citations and quotation marks

omitted and emphasis added).  For similar reasons, an award of attorneys' fees to a bankruptcy

debtor is also proper because "if the debtor is saved the expense of attorney's fees, there will be

more assets in the estate."  *In re Emergency Beacon Corp.*, 52 B.R. 979, 987 (S.D.N.Y. 1985)

(internal citations and quotation marks omitted).

40.    Given these principles, the amount the Reorganized Debtors seek in this Motion is

conservative.  The Reorganized Debtors do not seek their entire cost of defending the Maryland

Action from its inception (which would be reasonable given the bases of the Court's October 4,

2011 Order), but instead, they seek only those amounts expended from and after the June 2, 2011

date on which they prepared their communications with the Averbukhs' counsel.  Upon receiving

such communications, the Averbukhs' counsel had not even an arguable basis for maintaining

the Maryland Action.   Nonetheless, the Reorganized Debtors were forced to continue their

opposition to the Maryland Action through the date of this Motion. Among other things, the

Reorganized Debtors were compelled (a) to continue their defense of the matter and their related

discovery efforts until the time this Court heard the Injunction Motion and rendered an opinion

on the record, (b) to draft, file, and argue the Injunction Motion and Cross-Motion Response in

connection with the September 22 Hearing, (c) to prepare a draft of the October 4, 2011 Order,

and (d) to engage in numerous discussions with defense counsel, requesting that the Averbukhs'

counsel dismiss the Maryland Action *even after* the Court entered its October 4, 2011 Order

requiring such dismissal "immediately".

41.    The total amount the Reorganized Debtors expended as a result of these activities

for the period from and after June 2, 2011[3] through November 30, 2011 amounts to $116,058.98,

which amounts are evidenced by the attached (a) invoices[4] of Butzel Long ("Butzel") (**Exhibit

J**)[5], Winstein Tippetts & Little LLP ("Weinstein") (**Exhibit K**)[6] and Bacon Thornton & Palmer

LLP ("Bacon") (**Exhibit L**), (b) Declaration of Dean Unrue in Support of this Motion (**Exhibit**

---

[3] While Weinstein Tippetts & Little LLP notified the Averbukhs' counsel of their desire to discuss their request for dismissal of the Maryland Action on June 3, 2011, this Motion seeks the fees the Reorganized Debtors paid to the Weinstein firm to draft certain communications on June 2, 2011 setting forth the reasons why dismissal was required.

[4] These invoices have been redacted where necessary to protect confidential and privileged information, as well as information relating to work performed on matters other than the one at issue in this Motion.

[5] Due to the fact that Butzel was simultaneously handling numerous claims matters for the Reorganized Debtors during the period in question, certain of the time entries on Butzel's invoices reflect the total number of hours each timekeeper billed for all claims-related tasks in a given day. To ensure that this Motion does not seek reimbursement for fees the Reorganized Debtors incurred on other claims-related matters, therefore, the Reorganized Debtors have assigned conservative time approximations to each entry that reflects work on matters other than the Maryland Action. Also in an effort to be conservative, Butzel has not included in its request for recovery any of the hard costs the Reorganized Debtors incurred in connection with their effort dismiss the Maryland Action. These costs include travel expenses, computer research charges and various other administrative expenses, which were passed along in aggregate amounts for all claims-related matters in a given billing period.

[6] Note that the totals at the end of certain Weinstein invoices differ from the amounts the Reorganized Debtors now seek to recover. The reason is that Weinstein offered an incentive-based deferred payment arrangement to the Reorganized Debtors whereby the Reorganized Debtors paid only 90% of Weinstein's fees during the course of the Maryland Action, and then paid the remaining 10% upon the Maryland Action's conclusion. Upon the dismissal of the Maryland Action therefore, the Reorganized Debtors paid Weinstein this 10% difference, which included amounts that were held back from payments for work performed *before* June 2, 2011. Accordingly, so as to ensure that this Motion does not seek compensation for the period before June 2, 2011, the Reorganized Debtors request reimbursement for the full amount fees and costs reflected on each of Weinstein's invoices for the relevant period.

14

M), and (c) spreadsheets breaking down the monthly and daily fees and costs charged by Butzel, Weinstein, and Bacon, respectively, during the period in question (**Exhibit N, O, and P**). Respectively, these law firms served as bankruptcy counsel, primary litigation counsel, and local counsel for the Reorganized Debtors in the Maryland Action, and in addition to the amounts reflected and verified in the attached **Exhibits J-L, and N-P**, Butzel is also owed certain amounts for services rendered after November 30, 2011.  (**Exhibit M**.)  The Reorganized Debtors therefore seek recovery of those additional amounts as well in connection with this Motion, together with the additional costs they have incurred from and after November 30, 2011. The Reorganized Debtors do not, however, seek any amounts expended before June 2, 2011 even though they are likely entitled to recover the same.[7]  Further, the Reorganized Debtors do not seek to adjust their Detroit, Houston, and Maryland law firms' fees upward even though the prevailing market rates in the Southern District of New York are higher than the rates charged by those firms. *See In re Usoskin*, 61 B.R. at 878; *In re Emergency Beacon Corp.*, 52 B.R. at 987; *see also In re Rosage*, 189 B.R. 73, 82 (Bankr. W.D. Pa. 1985) ("The starting point for determining the amount of attorney's fees is the so-called 'lodestar' calculation which is the product of the number of hours reasonably spent in response to the objectionable action multiplied by an hourly fee based on the prevailing market rate." (citation omitted)).

42.     Finally, pursuant to Bankruptcy Rule 9011(c)(1)(A), the Reorganized Debtors seek to recover the above-specified amounts from (a) the Averbukhs, (b) their counsel, including Salsbury, Clements, Bekman, Marder and Adkins, LLC, The Kuhlman Law Firm, LLC, the Law

---

[7] The Reorganized Debtors believe that June 2, 2011 is a significant date because that was the date on which Weinstein began drafting a communication to opposing counsel making undeniable the reasons why the Maryland Action was impermissible.  Thus, to the extent the Averbukhs had any question before that time as to the viability of the Maryland Action (even though the Reorganized Debtors strongly believe it should have been clear to all parties at all times that the action was barred), there certainly should not have been any question after the Averbukhs' attorneys received Weinstein's communications.  Any expenses the Reorganized Debtors now seek to recover were entirely avoidable.

Offices of Alex Poberesky, P.A., and Weltcheck Mallahan & Weltchek LLC. *See* Fed. R. Bankr. P. 9011(c)(1)(A) ("Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.").  The Reorganized Debtors also seek to recover directly from the Averbukhs any amounts awarded to the extent the Court finds that the Maryland Action was pursued for an improper purpose, such as "to harass or to cause unnecessary delay or needless increase in the cost of litigation."  Fed. R. Bankr. P. 9011(c)(2)(A) (providing only that "[m]onetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2)," and not prohibiting such awards against a represented party for a violation of subdivision (b)(1) (emphasis added)).

## **RELIEF REQUESTED**

WHEREFORE the Reorganized Debtors request that this Court enter an order substantially similar to the proposed order attached to this Motion as **Exhibit Q** (a) awarding sanctions to the Reorganized Debtors in the amount of $116,058.98, plus all fees and costs the Reorganized Debtors have incurred after November 30, 2011 in connection with this Motion, based on the Averbukhs' and their attorneys' refusal to dismiss the Maryland Action against the Debtors voluntarily, (b) directing such sanctions to be payable jointly by the Averbukhs' law firms, as well as by the Averbukhs directly to the extent the Maryland Action was pursued for an improper purpose, and (c) granting the Reorganized Debtors such other and further relief to which they may be entitled.

Dated:   Detroit, Michigan
             December 23, 2011

                                            BUTZEL LONG, a professional corporation

                                            By:   /s/ Cynthia J. Haffey
                                                    Cynthia J. Haffey
                                                    Thomas B. Radom
                                                    David J. DeVine
                                            150 West Jefferson, Suite 100
                                            Detroit, MI  48226
                                            (313) 225-7000

                                            *Attorneys for Reorganized Debtors*

BUTZEL LONG, a professional corporation
150 West Jefferson, Suite 100
Detroit, MI 48226
(313) 225-7000
Cynthia J. Haffey
Chester E. Kasiborski, Jr.

*Attorneys for Reorganized Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| DPH HOLDINGS CORP., *et al.,* | ) | Case No. 05-44481 (RDD) |
|  | ) | Jointly Administered |
|  | ) |  |
| Reorganized Debtors. | ) |  |

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2011, a true and correct copy of the Notice of Hearing and Reorganized Debtors' Motion for Sanctions Relating to Improper Pursuit of Maryland State Court Action by Averbukhs was served by Fed Ex, next day delivery, to the following persons at the following addresses:

Vladimir Averbukh
6 Bridgeport Court, Apt. L2
Owings Mills, MD 21117-5368

Gregory G. Hopper, Esq.
Salsbury, Clements, Bekman, Marder
and Adkins, LLC
300 West Pratt Street, Suite 450
Baltimore, MD 21201
(410) 539-6633

Bradley D. Kuhlman, Esq.
The Kuhlman Law Firm, LLC
1100 Main Street, Suite 2550
Kansas City, MO 64105
(816) 799-0330

Chad C. Lucas, Esq.
The Kuhlman Law Firm, LLC
1100 Main Street, Suite 2550
Kansas City, MO 64105
(816) 799-0330

Aleksandr Averbukh                        Alex Poberesky, Esq.
6994 Millbrook Park, Apt. 2D              Law Offices of Alex Poberesky, P.A.
Baltimore, MD 21215                       104 Church Lane, Suite 100
                                          Baltimore, MD 21208
                                          (410) 484-0400

Alla Averbukh                             Robert J. Weltchek, Esq.
3 Russern Court, Apt. 2-A                 Weltcheck Mallahan & Weltchek LLC
Baltimore, MD 21215                       2330 W. Joppa Road, Suite 203
                                          Lutherville, MD 21093
                                          (410) 825-5287

                                          Kristopher A. Mallahan, Esq.
                                          Weltcheck Mallahan & Weltchek LLC
                                          2330 W. Joppa Road, Suite 203
                                          Lutherville, MD 21093
                                          (410) 825-5287


and was served by U.S. First-Class Mail upon Brian Masumoto, Counsel to the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004-2112.


Dated: Detroit, Michigan                  /s/Alexis Richards
       December 23, 2011