Hearing Date: January 12, 2012 at 10:00 a.m. (EST)
Response Date:  January 5, 2012 at 4:00 p.m. (EST)

BUTZEL LONG, a professional corporation
150 West Jefferson, Suite 100
Detroit, MI  48226
(313) 225-7000
Cynthia J. Haffey
Thomas B. Radom
Chester E. Kasiborski, Jr.

*Attorneys for Reorganized Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| DPH HOLDINGS CORP., *et al.* | Case No. 05-44481 (RDD) |
| | Jointly Administered |
| Reorganized Debtors. | |

**REORGANIZED DEBTORS' RESPONSE IN OPPOSITION TO
MOTION FOR RELIEF FROM AUTOMATIC STAY FILED BY RATKO MENJAK**

**("RESPONSE TO MENJAK'S MOTION FOR RELIEF FROM STAY")**

DPH Holdings Corp. and certain of its affiliated reorganized debtors in the above-captioned cases (collectively, the "Reorganized Debtors"), for their response in opposition to the Motion for Relief From Automatic Stay filed by Ratko Menjak (the "Motion"), state as follows:

**OVERVIEW**

1.    Movant Ratko Menjak ("Menjak") requests that this Court issue an order "lifting the automatic stay" so that his civil action in federal district court in Michigan against DPH Holdings Corp. ("DPH") can proceed.  Plaintiff argues that his complaint in that civil action

alleges an intentional violation of the Age Discrimination in Employment Act ("ADEA") and, therefore, his cause of action comes within the "willful misconduct" exception to discharge.[1]

2. Menjak ignores the fact that his civil action is permanently enjoined because he failed to file an administrative claim despite receiving notice of the bar date. Menjak does not aver that he has filed an administrative claim or that he should now be granted leave to now file a late claim.

3. Also, Menjak's claim has been discharged. His argument that he comes within the "willful misconduct" exception to discharge is based upon a flawed understanding of the ADEA and is totally without merit.

4. The Motion should be denied and Menjak should be ordered to dismiss his civil action and not pursue it any further.

## RELEVANT FACTS

5. On October 8 and 14, 2005, Delphi Corporation and certain of its affiliates, former debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), predecessors of the Reorganized Debtors, filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended.

6. On July 30, 2009, this Court entered its Order Approving Modifications under 11 U.S.C. § 1127(b) To (I) First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified And (II) Confirmation Order (Docket No. 12359) (the "Plan Modification Order") (Docket No. 18707), which approved

---

[1] Menjak mistakenly avers in his Motion that the "willful misconduct" exception to discharge is contained in the First Amended Joint Plan of Reorganization. As noted in the Brief appended to his Motion, the exception upon which he seeks to rely is contained in the Court's July 30, 2009 Plan Modification Order (Docket No. 18707).

the Debtors' First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (As Modified) (The "Modified Plan").

7.  According to allegations in Menjak's complaint filed in the United States District Court for the Eastern District of Michigan, Northern Division, Case No. 1:11-cv-10419 (the "Civil Action"), Menjak's employment was terminated by Delphi Corporation on September 1, 2009. See paragraph 7 of the complaint, a copy of which is attached as Exhibit A.

8.  On October 6, 2009 (the "Effective Date"), the Debtors substantially consummated the Modified Plan. The Reorganized Debtors have emerged from chapter 11 as DPH Holdings and affiliates and remain responsible for the post-Effective Date administration of these chapter 11 cases, including the disposition of certain retained assets, the payment of certain retained liabilities as provided for under the Modified Plan, and the eventual closing of the cases.

9.  Upon the Effective Date of the Modified Plan, injunctions were imposed by the Modified Plan and by the Plan Modification Order.

10.  Article 11.14 of the Modified Plan provides:

> Subject to Article 11.13 of this Plan, the satisfaction, release and discharge pursuant to Article XI shall act as an injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim, Interest, or Cause of Action satisfied, release, or discharged under this Plan to the fullest extent authorized or provided by the Bankruptcy code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof.

> (See Docket No. 18707, Ex. A, Art. 11.14)

11.  Similarly, the Plan Modification Order provides:

> Except as otherwise specifically provided in the Modified Plan, the MDA Documents, or this order and except as may be necessary to enforce or remedy a breach of the Modified Plan, the Debtors and all Persons shall be precluded and permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any Claim, action, employment of

3

process, or other proceeding of any kind with respect to any Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, (b) the enforcement, attachment, collection, offset, recoupment, or recovery by any manner or means of any judgment, award, decree, order, or otherwise with respect to any Claim interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, (c) creating, perfecting, or enforcing any encumbrance of any kind and with respect to any Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior the Effective Date, and (d) asserting any Claims, Interests, or Causes of Action that are satisfied, discharged, released, or subject to exculpation hereby or by the Modified Plan.

(See Docket No. 18707, ¶ 22.)

12. Paragraph 47 of the Plan Modification Order provides, in part:

…requests for payment of an Administrative [Expense] Claim (other than as set forth in the Modified Plan or otherwise contemplated by the Master Disposition Agreement, i.e., for such claims arising on or after June 1, 2009) must be filed, in substantially the form of the Administrative Claim Request Form attached as Exhibit 10.5 to the Modified Plan, with the Clams Agent and served on counsel for the Debtors and the Creditors' Committee no later than 30 days notice of after the Effective Date is filed on the docket of the Chapter 11 Cases. Any request for payment of an Administrative Claim pursuant to this paragraph that is not timely filed and served shall be disallowed automatically without the need for any objection from the Debtors or the Reorganized Debtors.

13. In compliance with Paragraph 47 of the Plan Modification Order, the notice of Effective Date was filed on October 6, 2009 with the Bankruptcy Court in the chapter 11 cases (the "Effective Date Notice") (Docket No. 18958). Upon the occurrence of the Effective Date on October 6, 2009, the bar date for filing Administrative Expense Claims for claims arising on or after June 1, 2009 was established as November 5, 2009 (the "Final Administrative Expense Claim Bar Date").

4

14. On or before October 9, 2009, Menjak was served with notice of the Final Administrative Expense Bar Date via U.S. Mail at 507 E. Franconian, Frankenmuth, MI 48734. See the Affidavit of Service signed by Evan Gershbein, which attests to Service of the Notice of (A) Order Approving Modifications to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession and (B) Occurrence of Effective Date (the "Notice") (Docket No. 18958). A copy of that Affidavit of Service, with one page of Exhibit A to the Affidavit that includes Menjak's name and address, is attached as Exhibit B and a copy of the Notice, which sets forth the administrative claim bar date of November 5, 2009 at Paragraph 9(a), is attached as Exhibit C.

15. Menjak has never filed an administrative expense claim in this matter.

16. On February 2, 2011, approximately 15 months after the Final Administrative Expense Bar Date, Menjak filed his complaint (Exhibit A) in the Civil Action.

17. On March 11, 2011 DPH moved in the district court to dismiss the Civil Action, in reliance upon the terms of the Modified Plan and the Plan Modification Order.

18. On June 13, 2011 the district court entered in the Civil Action its Order Granting in Part Defendant's Motion to Dismiss or Hold Proceedings in Abeyance, Directing Supplemental Briefing and Administratively Closing the Case (the "Civil Action Dismissal Order"), a copy of which is attached as Exhibit D.

19. Among other things, the Civil Action Dismissal Order mandated (at p. 13) that:

> It is further **ORDERED** that Plaintiff [Menjak] is **DIRECTED** to request relief from the Bankrtupcy Court's order enjoining claims against Defendant within **sixty days** from the date of this order. (Emphasis in original)

5

20.     Menjak did not file his Motion in this Court within sixty days as ordered in the Civil Action Dismissal Order but delayed almost six months before doing so.

## ARGUMENT

### A. Menjak's Claim As Set Forth in the Civil Action Has Been Discharged Is Barred By His Failure To File An Administrative Expense Claim

21.     The Bankruptcy Code defines "claims" to include any and all "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5). Courts have recognized that the definition of a claim is intentionally broad to enable all the obligations of a debtor to be treated in a bankruptcy case, no matter how remote or contingent, to give the debtor the broadest relief possible in the bankruptcy court. *See, In re Chateaugay Corp.*, 944 F.2d 997, 1003 (2nd Cir. 1991); *see also*; *Grady* v. *A.H. Robins Co.*, 839 F.2d 198, 202 (4th Cir. 1988); *In re Lorro, Inc.* 391 B.R. 760, 767 (E.D. Mich. 2008).

22.     Menjak's claim or cause of action for age discrimination is a "Claim" within the meaning of 11 U.S.C. §101(5) and accrued at the time of the termination of his employment on September 1, 2009, not when he subsequently received a "right to sue" letter. *McSherry v Trans World Airlines, Inc.*, 81 F.3d 739 (8th Cir. 1996).

23.     Menjak was served with actual notice of the Final Administrative Expense Claim Bar Date. See Exhibits B and C. However, Menjak did not file an administrative expense claim.

24.     Discharge under the Bankruptcy Code presumes that all creditors bound by the plan were given notice to satisfy due process. *DePippo* v. *Kmart Corp.*, 335 B.R. 290, 295 (D.C. S.D. N.Y. 2005). Notice requirements will vary depending upon whether the creditor is known or unknown to the debtor. A "known" creditor is one whose *identity* is either known to the debtor

6

or is 'reasonably ascertainable' by the debtor." *Id.* at 296.  Here, Menjak was treated as a known creditor.  A known creditor "must be afforded notice reasonably calculated, under all of the circumstances to apprise them of the pendency of the bar date." *See In re Macy & Co., Inc.*, 161 B.R. 355, 359 (Bankr. S.D.N.Y. 1993) (*quoting Mullane* v. *Central Hanover Bank & Trust Co.*, 399 U.S. 306, 314 (1950)).  The "Supreme Court has repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice." *Id.* (*quoting Tulsa Professional Collection Serv., Inc.* v. *Pope*, 485 U.S. 478, 490 (1988)). The "appropriate inquiry is whether the Debtors properly mailed notice of the bar date to known creditors." *Id.* (*citations omitted*).  "Mail properly addressed, stamped and deposited in the mail system is presumed to have been received by the party to whom it has been addressed." *Id.* (*citations omitted*).

25.     In his Motion, Menjak has not requested leave to file a late administrative claim or suggested any reasons why he should be excused from the requirement to file an administrative expense claim.

26.     It is well established that confirmation of a chapter 11 plan discharges any and all debts of the debtor, which arose prior to confirmation, in accordance with the plan and the Bankruptcy Code.  11 U.S.C. § 1141(d)(1).  The Bankruptcy Code provides, in pertinent part:

> (c)     Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of the plan, the property dealt with by the plan is free and clear of all claims and interests of creditors…
>
> (d)     Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—
>
> (A) discharges the debtor from any debt that arose before the date of such confirmation and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not—

7

>  (i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;
>
>  (ii) such claim is allowed under section 502 of this title…

11  U.S.C. § 1141(c) and (d) (1).

27. Due to Menjak's failure to file an administrative expense claim for the termination of termination of his employment by November 5, 2009, despite having been given actual notice of the Final Administrative Expense Claim Bar Date, his claim has been discharged and his now barred.  His Motion incorrectly assumes that the "willful misconduct" exception to discharge in Paragraph 20 of the Plan Modification Order excuses him from the requirement that he file an administrative expense claim, which it does not do.

### B.    The Injunction In The Plan Modification Order Enjoined Menjak From Filing and Pursuing The Civil Action

28. The effect of the Reorganized Debtors' discharge from Menjak's claim for the termination of his employment is set forth in section 524(a) of the Bankruptcy Code, under which that discharge operates as a permanent injunction against the <u>commencement or continuation</u> of any action to recover discharged claims against the Reorganized Debtors. Specifically, Section 524(a)(2) provides:

>  (a)    A discharge in a case under this title –
>
>  …..
>
>  (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. § 524(a)(2).

29.     Paragraph 22(a) of the Plan Modification Order (excerpted above in Paragraph 11) also permanently enjoined Menjak from commencing or continuing any claim, action, etc. against the Reorganized Debtors which he possessed as of the Effective Date.

30.     Menjak possessed a claim for age discrimination on September 1, 2009, the date of his termination, which was before October 6, 2009, the Effective Date.

31.     Therefore, Menjak's claim for age discrimination is enjoined by Paragraph 22 (a) of the Plan Modification Order.

32.     Menjak's Motion does not address the terms of the Paragraph 22(a) of the Plan Modification Order and thus totally fails to show that those terms do not require the denial of his Motion.

    **C.    Menjak's Age Discrimination Claim Does Not Come Within the "Willful Misconduct" Exception to Discharge in Paragraph 20 of the Plan Modification Order**

33.     Menjak's Motion is based entirely on a provision in Paragraph 20 of the Plan Modification Order. Paragraph 20 provides:

> 20.    <u>Discharge, Releases, Limitations of Liability, And Indemnification.</u> Pursuant to applicable law, including sections 105(a) and 1123(b)(3) and (6) of the Bankruptcy Code, the discharge of the Debtors and any of their assets or properties provided in Article 11.2 of the Modified Plan, as approved herein, the releases set forth in Articles 11.4, 11.5, 11.6 and 11.7 of the Modified Plan, and the exculpation and limitation of liability provisions set forth in Article 11.11 of the Modified Plan, are deemed incorporated in this order as if set forth in full herein and are hereby approved as an integral part of the Modified Plan and are fair, equitable, reasonable and in the best interests of the Debtors, their estates, and holders of Claims and Interests; <u>provided</u>, <u>however</u>, notwithstanding anything in this order, the exculpation provisions or releases provided pursuant to Article 11 of the Modified Plan shall have no effect on the liability of any entity that otherwise would result from any action or omission to the extent that such action or omission is determined in a final order to have constituted intentional fraud or willful misconduct. (emphasis in original).

9

34. Menjak argues that his complaint in the Civil Action alleges intentional age discrimination and for that reason he comes within the "willful misconduct" exception to discharge set forth in the proviso to Paragraph 20.

35. By focusing solely on the exception to discharge terms of Paragraph 20 of the Plan Modification Order, Menjak ignores the clear injunctive terms of Paragraph 22(a) of that Order which apply to permanently enjoin the Civil Action whether or not his claim has been "discharged."

36. Further, the exception to discharge in the proviso to Paragraph 20 only applies "to the extent such action is determined in a <u>final order</u> to have constituted… willful misconduct" (emphasis added). Menjak has not identified any final order that determined that any action by his former employer constituted "willful misconduct".

37. Finally, Menjak misconstrues the nature of an action founded upon the ADEA. A claimant does not have to prove "willful misconduct" or intentional discrimination on account of age to prevail on an ADEA claim. Rather, an ADEA claimant need only prove that age was the "… 'but for' cause of the challenged adverse employment action." *Gross v FBL Financial Services, Inc*, 557 U.S. 167 (2009).

38. The ADEA provides, in part, that: "…liquidated damages shall be payable only in cases of willful violations of this chapter." 29 U.S.C. §626(a). Therefore, a claimant in an ADEA case may prove a violation of the act and be entitled to certain damages even if a "willful violation" of that act is not proven and the claimant is not entitled to liquidated damages.

39. This principle is illustrated in *TransWorld Airlines v Thurston,* 469 U.S. 111 (1985), in which the Supreme Court affirmed a ruling that the employer had violated the ADEA

10

but reversed a ruling that the employees were entitled to liquidated damages due to lack of sufficient evidence of a "willful violation".

40. As explained in *Wheeler v McKinley Enterprises,* 937 F.2d 1158, 1163 (6th Cir. 1991):

> …a person who has suffered a wage loss as a result of having been discharged in violation of the ADEA is entitled to judgment for his back pay (the first tier of damages), and is entitled to judgment for liquidated damages in an equal amount (the second tier of damages) if – but only if – the ADEA violation was "willfull."

41. The Supreme Court's decision in *Hazan Paper Company v Biggins*, 507 U.S. 604, 614 (1993) is also instructive:

> …we observed that Congress aimed to create a "two-tiered liability scheme," under which some, but not all, ADEA violations would give rise to liquidated damages.

42. Menjak's complaint filed in the Civil Action (Exhibit A) recognizes this "two tier" concept, which is fatal to his Motion. Paragraph 16 of the complaint alleges, in part: "Age was a determining factor in the plaintiff being selected for separation…" (¶16) and continues: "Plaintiff also claims liquidated damages since this discrimination was intentional…" (¶18).

43. Since as a matter of law Menjak could prevail on an ADEA claim without proving "willful misconduct" via intentional age discrimination, the exception to discharge in the proviso of Paragraph 20 of the Plan Modification Order is not applicable.

44. Therefore, the injunction in Article 11.14 of the Modified Plan and the injunction in Paragraph 22 (d) of the Plan Modification Order –which apply to claims that have been discharged -- permanently enjoined Menjak from commencing or continuing the Civil Action.

11

45. Alternatively, if this Court believes that an ADEA claimant can come within the "willful misconduct" exception to discharge in Paragraph 20 of the Plan Modification Order even in the absence of a final order which determined that "willful misconduct" had occurred, Menjak has offered no facts to suggest that he can prove an intentional violation of the ADEA.

46. The allegation in the complaint in the Civil Action that "this discrimination was intentional" is wholly conclusory. Neither the complaint, nor the Motion, offer any facts to support that conclusion.

47. Rather, the complaint alleges that Menjak was terminated as part of a reduction in force, and that of the 116 employees terminated, 26 were under the age of 40 (which is the threshold for protection under the ADEA). Those allegations tend to disprove an intentional violation of the ADEA, i.e. "willful misconduct", by Menjak's employer.

### D.    The Motion is Too Late

48. The Civil Action Dismissal Order afforded Menjak 60 days to apply to this Court for relief from the stay provisions. He failed to do so, and instead waited almost 6 months to do so. Menjak's failure to abide by the terms of the Civil Action Dismissal Order constitutes sufficient grounds for this Court to deny the Motion.

### CONCLUSION

49. For all of the reasons set forth above, the Motion should be denied.

WHEREFORE the Reorganized Debtors request that this Court enter an Order (a) denying the Motion; (b) instructing Menjak to dismiss the Civil Action with prejudice; and (c) granting them such other and further relief to which they are entitled.

Dated:  Detroit, MI
        January 5, 2012

BUTZEL LONG, a professional corporation

By:  <u>/s/ Chester E. Kasiborski, Jr.</u>
      Cynthia J. Haffey
      Thomas B. Radom
      Chester E. Kasiborski, Jr.
150 West Jefferson, Suite 100
Detroit, MI  48226
(313) 225-7000

*Attorneys for Reorganized Debtors*

#1317958  v1

BUTZEL LONG, a professional corporation
150 W. Jefferson, Suite 100
Detroit, MI 48226
(313) 225-7000
Cynthia J. Haffey
Thomas B. Radom
Chester E. Kasiborski, Jr.
*Attorneys for Reorganized Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| DPH HOLDINGS CORP., *et al.,* | Case No. 05-44481 (RDD) |
| | Jointly Administered |
| Reorganized Debtors. | |

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2012, a true and correct copy of Reorganized Debtors' Response to Motion for Relief From Automatic Stay Filed by Ratko Menjak ("Response to Menjak's Motion for Relief from Stay") was served by personal service, facsimile and electronic mail to the following person at the following facsimile number and e-mail address:

> Richard A. Meier, Esq.
> 30300 Northwestern Highway
> Suite 320
> Farmington Hills, MI  48334
> Phone: (248) 932-3500
> Fax:  (248) 990-1971
> e-Mail:  meier900@netscape.net

Dated: Detroit, Michigan                /s/ Alexis L. Richards
          January 5, 2012                    Alexis L. Richards

#1317958 v1