# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

RATKO MENJAK,
        Plaintiff.

V

DELPHI CORPORATION,
        Defendant.
_____/

## COMPLAINT
## AND
## JURY DEMAND

**JURISDICTION**

1. Jurisdiction is proper under 28 USC 1331 in that a federal question is at issue in this case.

2. Venue is proper in this district.

3. Plaintiff has exhausted her administrative remedies and received a right to sue letter from the EEOC on November 19, 2010.

### Count 1 – Violation of the Age Discrimination in Employment Act

4. Plaintiff repeats and realleges paragraphs 1 through 3 as if fully set forth herein verbatim.

5. Plaintiff is age 64. His date of birth is March 28, 1945.

6. Plaintiff was a Senior Mechanical Engineer III for the defendant corporation.

7. On or about August 20, 2009 the plaintiff became aware that he was going to be subjected to involuntary separation, effective September 1, 2009.

8. The involuntary separation consisted of 116 salaried personnel. (thirty employees retired).

9. Of the 116 persons separated individuals 26 employees were under the age of 40 and 90 persons were over the age of 40. At the time of the separation the mean age at defendant corporation was 43.685 years.

10. Plaintiff was informed by the Director of Product Engineering that the criteria for selection to be separated was "relative contribution".

11. Defendant hired younger employees before plaintiff's discharge and retained younger employees whose relative contributions were less than the plaintiffs.

12. Plaintiff was a member of the defendant corporation's Innovation Hall of Fame. Plaintiff led the engineering department at defendant corporation with 23 patents. Plaintiff led the engineering department with 4 patents between June 2007 and June 2008.

13. There were nine comparable engineers in the mechanical engineering group on September 12, 2008. The plaintiff was the oldest mechanical engineer at age 64.

14. Defendant separated one mechanical engineer in what was termed phase two. This individual was Dave Siniff, age 50. Plaintiff age 64 was terminated in phase three. An individual named Paul Fisher age 34 was retained.

15. Plaintiff was replaced by a younger engineer Carlos Garza. A younger contract employee Niharika Popy was also hired. Neither Garza or Popy made any relative contribution in terms of working on patented projects in 2009. The plaintiff was associated with three out of six pending patents (double flank Delash gear mechanism,

stationary wheel hub and collapsible steering column assembly) at the time of being selected for separation.

16. Age was a determining factor in the plaintiff being selected for separation. Plaintiff was the oldest senior mechanical engineer at Delhi and plaintiff had more relative contributions to Delphi than any other mechanical engineer (the criteria used for selection) when plaintiff was selected for separation.

17. As a direct and proximate result of said discrimination based on age the plaintiff has suffered compensatory damages, including lost wages and benefits.

18. Plaintiff also claims liquated damages since this discrimination was intentional. Defendant knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.

WHEREFORE, Plaintiff prays for a judgment in his favor and against defendant in an amount established by the proofs, together with interest, costs and attorney fees,

Respectfully submitted,

/s/ Richard A. Meier

Richard A. Meier (P38204)
Attorney for the Plaintiff
30300 Northwestern Highway, Ste. 320
Farmington Hills, Michigan 48334
248-932-3500

## JURY DEMAND

Now comes the plaintiff and demands trial by jury.

Respectfully submitted,

*/s/ Richard A. Meier*

# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - x
                                       :

In re                       :      Chapter 11
                                         :

DELPHI CORPORATION, et al.,   :      Case No. 05-44481 (RDD)
                                         :

                 Debtors.   :      (Jointly Administered)
                                         :

- - - - - - - - - - - - - - - - - - - - - - - - - - x

## AFFIDAVIT OF SERVICE

I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

On or before October 9, 2009, I caused to be served the document listed below upon the parties listed on Exhibit A hereto via postage pre-paid U.S. mail:

Notice of (A) Order Approving Modifications to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession and (B) Occurrence of Effective Date (Docket No. 18958)

On or before October 13, 2009, I caused to be served the appropriate number of copies of the document listed below (i) upon the service list attached hereto as Exhibit B, for subsequent distribution to beneficial holders of Common Stock, CUSIP 172737 10 8; 6 ½% Notes due 2009, CUSIP 247126 AB 1; 7 1/8% Notes due 2029, CUSIP 247126 AC 9; 6.55% Notes due 2006, CUSIP 247126 AD 7; 6.50% Notes due 2013, CUSIP 247126 AE 5; 8 ¼% Adjustable Rate Subordinated Note due 2033, CUSIP 247126 AF 2; and 6.197% Junior Subordinated Note due 2033, CUSIP 247126 AG 0, via Overnight mail and hand delivery; (ii) upon the parties set forth on Exhibit C via postage pre-paid U.S. Mail; (iii) upon the registered holders of Common Stock listed on Exhibit D, provided by Computershare as transfer agent, via postage pre-paid U.S. Mail; and (iv) upon the service list attached hereto as Exhibit E via Electronic mail.

Notice of (A) Order Approving Modifications to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession and (B) Occurrence of Effective Date (Docket No. 18958)

Dated: October 14, 2009

_____*/s/ Evan Gershbein*_____
Evan Gershbein

State of California
County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 14th day of October, 2009, by
Evan Gershbein, proved to me on the basis of satisfactory evidence to be the person who
appeared before me.

Signature: *_/s/ Shannon J. Spencer_____*

Commission Expires: *_6/20/10_____*

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|---|
| MENDEZ FUEL INJECTION | | CARR 174 KM 4 H 6 | | | | BAYAMON | PR | 00956 | PR |
| MENDEZ JUAN | | PO BOX 206 | | | | BAYAMON | PR | 00960 | PR |
| MENDEZ JOSE | | 1206 N CHARLES ST | | | | SAGINAW | MI | 48602 | |
| MENDEZ JR MIGUEL | | 488 DORR AVE | | | | YOUNGSTOWN | OH | 44511 | |
| MENDEZ FELIX ANTONIO | | 11106 CORMAR PL | | | | NOBLESVILLE | IN | 46060 | |
| | | | | | | | | | |

# EXHIBIT C

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------- x
                       :
    In re                  :    Chapter 11
                       :
DELPHI CORPORATION, et al.,   :    Case No. 05-44481 (RDD)
                       :
            Debtors.   :    (Jointly Administered)
                       :
---------------------------------- x

NOTICE OF (A) ORDER APPROVING MODIFICATIONS TO FIRST
AMENDED JOINT PLAN OF REORGANIZATION OF DELPHI CORPORATION
AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION
AND (B) OCCURRENCE OF EFFECTIVE DATE

     1.     **Confirmation Of The Plan.**  On January 25, 2008 (the "Confirmation Date"), the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order confirming the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, dated January 25, 2008 (the "Confirmed Plan"), in the Chapter 11 Cases of Delphi Corporation and certain of its subsidiaries and affiliates, the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors").

2.    **Approval Of Modifications To The Confirmed Plan.**  On July 30, 2009 (the "Modification Approval Date"), the Bankruptcy Court entered an order (the "Modification Approval Order") approving certain modifications to the Confirmed Plan embodied in the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (As Modified) (the "Modified Plan"), attached as Exhibit A to the Modification Approval Order.  Unless otherwise defined in this Notice Of (A) Order Approving Modifications To First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession And (B) Occurrence Of Effective Date, capitalized terms and phrases used herein have the meaning(s) given to them in the Modified Plan and the Modification Approval Order.

3.    **Effective Date.**  On October 6, 2009, the Effective Date of the Modified Plan occurred. The Modified Plan was substantially consummated at a closing that occurred at the offices of Skadden, Arps, Slate, Meagher & Flom LLP in New York City, New York; provided however, that all of the transactions contemplated by the Master Disposition Agreement and related agreements to occur at the closing are effective for tax and accounting purposes as of 11:58 p.m., local time, on the Closing Date as defined in the Master Disposition Agreement.

4.    **Discharge Of Claims And Termination Of Interests.**  Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Modified Plan, Confirmation Order, or Modification Approval Order, the distributions and rights that are provided in the Modified Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims and Causes of Action, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Modified Plan on account of such Claims, rights, and Interests, including, but not limited to, Claims and Interests that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (a) a proof of claim or interest based upon such Claim, debt, right, or Interest is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim or Interest based upon such Claim, debt, right, or Interest is allowed under section 502 of the Bankruptcy Code, or (c) the holder of such a Claim, right, or Interest accepted the Modified Plan.  Due to the occurrence of the Effective Date, the Modification Approval Order shall be a judicial determination of the discharge of all Claims against and Interests in the Debtors.

5.    **Injunctions.**

   (a)    Subject to Article 11.13 of the Modified Plan, the satisfaction, release, and discharge pursuant to Article XI of the Modified Plan shall act as an injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim, Interest, or Cause of Action satisfied, released, or discharged under the Modified Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof.

   (b)    By accepting distributions pursuant to the Modified Plan, each Holder of an Allowed Claim shall be deemed to have specifically consented to the injunctions set forth in Article XI of the Modified Plan.

6.    **Release By Debtors Of Certain Parties.**  Pursuant to section 1123(b)(3) of the Bankruptcy Code, but subject to Article 11.13 of the Modified Plan, effective as of the Effective Date, each Debtor, in its individual capacity and as a debtor-in-possession for and on behalf of its Estate, shall release and discharge and be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged all Released Parties for and from any and all claims or Causes of Action

existing as of the Effective Date in any manner arising from, based on, or relating to, in whole or in part, the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Modified Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, or any act, omission, occurrence, or event in any manner related to any such Claims, Interests, restructuring, or the Chapter 11 Cases. The Reorganized Debtors, including Reorganized DPH Holdings, and any newly-formed entities that will be continuing the Debtors' businesses after the Effective Date, shall be bound, to the same extent the Debtors are bound, by the releases and discharges set forth above. Notwithstanding the foregoing, nothing in the Modified Plan shall be deemed to release (i) any of the Debtors or GM from their obligations under the Delphi-GM Definitive Documents or the transactions contemplated thereby, except to the extent set forth in the Master Disposition Agreement, (ii) any of the Debtors, the Unions, or GM from their obligations under the Union Settlement Agreements or the transactions contemplated thereby, (iii) any of the Buyers from their obligations under the Master Disposition Agreement, or (iii) any of the Debtors or the Plan Investors or their affiliates from their obligations under the Investment Agreement or the transactions contemplated thereby.

7.      **Release By Holders Of Claims And Interests.**  On the Effective Date, (a) each Person who votes to accept the Modified Plan and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each entity (other than a Debtor) which has held, holds, or may hold a Claim against or Interest in the Debtors, in consideration for the obligations of the Debtors and the Reorganized Debtors under the Modified Plan and Cash, General Unsecured MDA Distribution, and other contracts, instruments, releases, agreements, or documents to be delivered in connection with the Modified Plan (each, a "Release Obligor"), shall have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged all Released Parties for and from any claim or Cause of Action existing as of the Effective Date in any manner arising from, based on, or relating to, in whole or in part, the Debtors, the subject matter of, or the transaction or event giving rise to, the claim of such Release Obligor, the business or contractual arrangements between any Debtor and Release Obligor or any Released Party, the restructuring of the claim prior to the Chapter 11 Cases, or any act, omission, occurrence, or event in any manner related to such subject matter, transaction, obligation, restructuring, or the Chapter 11 Cases, including, but not limited to, any claim relating to, or arising out of the Debtors' Chapter 11 Cases, the negotiation and filing of the Modified Plan, the filing of the Chapter 11 Cases, the formulation, preparation, negotiation, dissemination, filing, implementation, administration, confirmation, or consummation of the Modified Plan, the Disclosure Statement, the Plan Exhibits, the Delphi-PBGC Settlement Agreement, the Credit Bid, the Master Disposition Agreement, the Union Settlement Agreements, any employee benefit plan, instrument, release, or other agreement or document created, modified, amended or entered into in connection with either the Modified Plan or any other agreement with the Unions, including but not limited to the Union Settlement Agreements, or any other act taken or not taken consistent with the Union Settlement Agreements in connection with the Chapter 11 Cases; provided, however, that (A) Article 11.5 of the Modified Plan is subject to and limited by Article 11.13 of the Modified Plan and (B) 11.5 of the Modified Plan shall not release any Released Party from any Cause of Action held by a governmental entity existing as of the Effective Date based on (i) the Internal Revenue Code or other domestic state, city, or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city, or municipality, (iii) any criminal laws of the United States or any domestic state, city, or municipality, (iv) the Exchange Act, the Securities Act, or other securities laws of the United States or any domestic state, city, or municipality, (v) the Employee Retirement Income Security Act of 1974, as amended, or (vi) the laws and regulations of the Bureau of Customs and Border Protection of the United States Department of Homeland Security. Notwithstanding the foregoing, all releases given by GM to (i) the Debtors and the Debtors' Affiliates shall be as set forth in the Delphi-GM Global Settlement Agreement and (ii) the Unions shall be as set forth in the Union Settlement Agreements.

8.      **Assumption And Assignment Of Executory Contracts And Unexpired Leases.**
Subject to the terms of the Modified Plan, Modification Approval Order, and any related Bankruptcy
Court orders, upon the occurrence of the Effective Date, each executory contract or unexpired lease
assumed, or assumed and assigned, as applicable, pursuant to Article VIII of the Modified Plan, shall vest
in and be fully enforceable by the applicable Reorganized Debtor or its assignee in accordance with its
terms.  On the Effective Date, all executory contracts and unexpired leases as to which any Debtor is a
party are deemed automatically assumed by the applicable Reorganized Debtor in accordance with the
provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date,
unless such executory contracts or unexpired leases (a) have been previously rejected by the Debtors by
Final Order of the Bankruptcy Court, (b) are the subject of a motion to reject, or that otherwise authorizes
rejection, filed on or before the Modification Approval Date, (c) have been rejected or assumed pursuant
to a motion to sell or transfer property or assets filed by the Debtors prior to the Effective Date, (d) have
expired or terminated on or prior to the Effective Date (and were not otherwise extended) pursuant to
their own terms, (e) are listed on the schedule of rejected contracts on Exhibit 8.1(a) to the Modified Plan,
or (f) are otherwise rejected pursuant to the terms of the Modified Plan and/or upon the direction of either
Buyer pursuant to the Master Disposition Agreement.  Subject to the foregoing sentences, entry of the
Modification Approval Order by the Bankruptcy Court approved the rejections, assumptions, and
assumptions and assignments contemplated by the Modified Plan, the Modification Approval Order, the
Master Disposition Agreement, and related documents pursuant to sections 365 and 1123 of the
Bankruptcy Code as of the Effective Date.

9.      **Bar Dates**

        (a)      **Administrative Bar Date.**  Requests for payment of an Administrative Claim
(other than as set forth in Article X of the Modified Plan), must be filed with the Claims Agent and served
on counsel for the Debtors and the Creditors' Committee no later than November 5, 2009 or shall be
disallowed automatically without the need for any objection from the Debtors or Reorganized Debtors.
Unless the Debtors or the Reorganized Debtors object to an Administrative Claim on or prior to May 4,
2010 (unless such objection period is extended by the Bankruptcy Court), such Administrative Claim
shall be deemed allowed in the amount requested.  In the event that the Debtors or the Reorganized
Debtors object to an Administrative Claim, the Bankruptcy Court shall determine the allowed amount of
such Administrative Claim.

        (b)      **Professional Claims And Final Fee Applications.**  All final requests for
payment of Professional Claims and requests for reimbursement of expenses of members of the Statutory
Committees must be filed no later than December 31, 2009.  After notice and a hearing in accordance
with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court, the
allowed amounts of such Professional Claims and expenses shall be determined by the Bankruptcy Court.
Pursuant to the Bankruptcy Court's prior orders, any requirement that Professionals comply with sections
327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered
terminated on the Confirmation Date, and the Reorganized Debtors have employed and paid Professionals
in the ordinary course of business thereafter.

        (c)      **Substantial Contribution Bar Date.**  Except as otherwise provided in the
Modification Approval Order, any Person who requests compensation or expense reimbursement for
making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of
the Bankruptcy Code shall file an application with the clerk of the Bankruptcy Court on or before
November 20, 2009, and serve such application on counsel for the Debtors, the Creditors' Committee, the
United States Trustee for the Southern District of New York, and such other parties as may be decided by
the Bankruptcy Court and the Bankruptcy Code on or before November 20, 2009, or be forever barred
from seeking such compensation or expense reimbursement.

4

Dated:  New York, New York
      October 6, 2009

                SKADDEN, ARPS, SLATE, MEAGHER &
                FLOM LLP

              By: /s/ John Wm. Butler,
                  John Wm. Butler, Jr.
                  John K. Lyons
                  Ron E. Meisler
              155 North Wacker Drive
              Chicago, Illinois  60606
              (312) 407-0700

              By:  /s/ Kayalyn A. Marafioti
                  Kayalyn A. Marafioti
              Four Times Square
              New York, New York 10036
              (212) 735-3000

              Attorneys for Delphi Corporation, et al.,
                Debtors and Debtors-in-Possession

5

# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RATKO MENJAK,

      Plaintiff,

                                           Case Number: 11-10419
                                           Hon. Thomas L. Ludington

v.

DELPHI CORPORATION,

      Defendant.
_____/

## ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS OR HOLD PROCEEDINGS IN ABEYANCE, DIRECTING SUPPLEMENTAL BRIEFING AND ADMINISTRATIVELY CLOSING THE CASE

On February 2, 2011, Plaintiff Ratko Menjak ("Plaintiff") filed a complaint [Dkt. #1] against Defendant Delphi Automotive Corporation ("Defendant" or "Delphi Automotive"), alleging violation of the Age Discrimination in Employment Act as a result of the September 2009 termination of his employment. Plaintiff, who was 64 at the time his employment was terminated, alleges in his complaint that Defendant wrongfully terminated him because of his age, hired younger employees before his discharge, and retained younger employees whose relative contributions were less than Plaintiffs.

Defendant filed a motion to dismiss or, in the alternative, hold proceedings in abeyance [Dkt. #6] on March 11, 2011. Defendant contends that Plaintiff's complaint should be dismissed because his claims are barred and enjoined by the orders of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered in Defendant's Chapter 11 bankruptcy cases. Furthermore, Defendant contends that if Plaintiff's claims are not barred and enjoined, he cannot receive a distribution from Defendant without obtaining leave to file an administrative claim with the Bankruptcy Court. Plaintiff filed an untimely response on April 6,

2011 [Dkt. #8], arguing that his claims are exempt from the Bankruptcy Court's orders because Defendant's acts of age discrimination are willful misconduct under 29 U.S.C. § 626(b). In its reply [Dkt. #9], Defendant restates its position that Plaintiff's claims were discharged because assuming, *arguendo*, that Defendant terminated Plaintiff's employment because of his age, such conduct is not the fraudulent, malicious, or willful type of conduct excepted from discharge under the Bankruptcy Court's Reorganization Plan. Furthermore, Defendant believes that the Bankruptcy Court is the proper forum to litigate any dischargeability issue and requests that this Court hold the instant proceedings in abeyance until Plaintiff's request for relief has been determined by the Bankruptcy Court.

The Court has reviewed the parties' submissions and finds that the facts and the law have been sufficiently set forth in the motion papers. The Court concludes that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. E.D. Mich. LR 7.1(e)(2). For the reasons provided below, the Court will grant Defendant's motion to dismiss or hold proceedings in abeyance.

## I

### A

On October 8 and 14, 2005, Delphi Corporation ("Delphi") and certain of its domestic affiliates (including without limitation, Delphi Automotive Systems LLC ("DAS LLC") and collectively referred to herein as the "Debtors"), filed petitions for reorganization relief under chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York. On December 10, 2007, in the chapter 11 cases *In re Delphi Corporation, et al.*, Case No. 05-44481 (Bankr. S.D.N.Y.) (n/k/a *In re DPH Holdings Corp., et al.*),

the Debtors filed their first amended joint plan of reorganization (the "Plan") and related disclosure statement (the "Disclosure Statement") and on January 25, 2008, the Bankruptcy Court entered an order (the "Confirmation Order") confirming the Plan, as modified (the "Confirmed Plan"). The Confirmation Order became final on February 4, 2008.

On June 16, 2009, in the chapter 11 cases *In re Delphi Corporation, et al.*, Case No. 05-44481 (Bankr. S.D.N.Y.) (n/k/a *In re DPH Holdings Corp., et al.*), the Debtors filed the "First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (As Modified)" (the "Modified Plan"). The Modified Plan made certain modifications to the terms of the Confirmed Plan. To comply with the requirements of 11 U.S.C. §§ 1125 and 1127, on the same date, the Debtors filed a supplement to the Disclosure Statement (the "Supplement"). In connection with the Debtors' Modified Plan and the Supplement, the Debtors sought an order from the Bankruptcy Court, among other things, approving the Supplement as containing adequate information, as defined under 11 U.S.C. § 1125, authorizing the solicitation of votes on the Modified Plan, and establishing a bar date for the submission of claims asserting administrative expense priority under 11 U.S.C. § 503(b). In connection therewith, and after notice and a hearing, on June 16, 2009, the Bankruptcy Court entered a certain Order (A)(I) Approving Modifications To Debtors' First Amended Plan Of Reorganization (As Modified) And Related Disclosures And Voting Procedures And (II) Setting Final Hearing Date To Consider Modifications To Confirmed First Amended Plan Of Reorganization And (B) Setting Administrative Expense Claims Bar Date And Alternative Transaction Hearing Date (the "Modification Procedures Order"). Paragraphs 38 and 41 of the Modification Procedures Order provide the following:

> any party that wishes to assert an administrative claim under 11 U.S.C. § 503(b) for the period from the commencement of these cases through June 1, 2009 shall file a

-3-

proof of administrative expense (each, an "Administrative Expense Claim Form")
for the purpose of asserting an administrative expense request, including any
substantial contribution claims (each, an "Administrative Expense Claim" or
"Claim") against any of the Debtors. July 15, 2009 at 5 :00 p.m. prevailing Eastern
time shall be the deadline for submitting all Administrative Expense Claims (the
"[Initial] Administrative Expense Bar Date") for the period from the commencement
of these cases through June 1,2009.

Modification Procedures Order ¶ 38.

any party that is required but fails to file a timely Administrative Expense Claim
Form shall be forever barred, estopped and enjoined from asserting such claim
against the Debtors, and the Debtors and their property shall be forever discharged
from any and all indebtedness, liability, or obligation with respect to such claim.

Modification Procedures Order ¶ 41.

Notice of the Initial Administrative Expense Bar Date was provided to Plaintiff via United

States mail on or prior to June 20, 2009. (Def.'s Mot. for Summ. J. Ex. 2.) In addition to providing

direct service through the mailing of applicable documents, as provided in paragraph 42 of the

Modification Procedures Order, notice of the Initial Administrative Expense Bar Date was also

published in the Detroit Free Press, the New York Times (national edition), the Wall Street Journal

(national, European, and Asian editions), and USA Today (worldwide) as required by paragraph 43

of the Modification Procedures Order. Pursuant to paragraph 44 of the Modification Procedures

Order, satisfaction of direct notice and publication notice constitutes adequate and sufficient notice

of the Initial Administrative Expense Bar Date and is deemed to satisfy the requirements of the

Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of the Bankruptcy Court.

On July 30, 2009, the Bankruptcy Court entered its Order Approving Modifications Under

11 U.S.C. § 1127(b) to (I) First Amended Joint Plan of Reorganization of Delphi Corporation and

Certain Affiliates, Debtors and Debtors-In-Possession, as Modified and (II) Confirmation Order (the

"Modification Approval Order"), which confirmed the Debtors' Modified Plan. On October 6, 2009,

the "Effective Date" of the Modified Plan occurred and the Modified Plan was substantially

consummated. On that date, the Debtors emerged from chapter 11 as reorganized entities (the

"Reorganized Debtors") and many of the corporate entities changed their corporate names.

Upon the Effective Date of the Modified Plan, an injunction was imposed. Specifically, the

Modified Plan and the Modification Approval Order contain a permanent injunction against, among

other things, the commencement or continuation of any action to recover on any claim against the

Debtors that arose on or prior to October 6, 2009. Article 11.14 of the Modified Plan provides that:

> the satisfaction, release, and discharge pursuant to [Article XI of the Modified Plan
> I shall act as an injunction against any Person commencing or continuing any action,
> employment of process, or act to collect, offset, or recover any Claim, Interest, or
> Cause of Action satisfied, released, or discharged under [the Modified] Plan to the
> fullest extent authorized or provided by the Bankruptcy Code . . .

Modified Plan Art. 11.14 (emphasis added). Similarly, paragraph 22 of the Modification Approval

Order provides that:

> the Debtors and all Persons shall be precluded and permanently enjoined on and after
> the Effective Date from (a) commencing or continuing in any manner any Claim,
> action, employment of process, or other proceeding of any kind with respect to any
> Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized
> Debtors, which they possessed or may possess prior to the Effective Date, (b) the
> enforcement, attachment, collection, offset, recoupment, or recovery by any manner
> or means of any judgment, award, decree, order, or otherwise with respect to any
> Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized
> Debtors, which they possessed or may possess prior to the Effective Date, (c)
> creating, perfecting, or enforcing any encumbrance of any kind with respect to any
> Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized
> Debtors, which they possessed or may possess prior to the Effective Date, and (d)
> asserting any Claims, Interests, or Causes of Action that are satisfied, discharged,
> released, or subject to exculpation hereby or by the Modified Plan.

Modification Approval Order ¶ 22. The permanent injunction in the Modified Plan and Modification

Approval Order thus prohibited the commencement or continuation of any action to recover any

claim against the Debtors that arose on or prior to October 6, 2009.

Furthermore, paragraph 47 of the Modification Approval Order provides in part:

> requests for payment of an Administrative [Expense 1 Claim (other than as set forth
> in the Modified Plan or otherwise contemplated by the Master Disposition
> Agreement, i.e., for such claims arising on or after June 1, 2009) must be filed, in
> substantially the form of the Administrative Claim Request Form attached as Exhibit
> 10.5 to the Modified Plan, with the Claims Agent and served on counsel for the
> Debtors and the Creditors' Committee no later than 30 days notice of after the
> Effective Date is filed on the docket of the Chapter 11 Cases [November 5, 2009].
> Any request for payment of an Administrative Claim pursuant to this paragraph that
> is not timely filed and served shall be disallowed automatically without the need for
> any objection from the Debtors or the Reorganized Debtors.

In compliance with paragraph 47 of the Modification Approval Order, the notice of Effective Date
was filed on October 6, 2009 with the Bankruptcy Court in the chapter II cases (the "Effective Date
Notice"). Upon the occurrence of the Effective Date on October 6, 2009, the bar date for filing
Administrative Expense Claims for claims arising on or after June 1, 2009 was established as
November 5, 2009 (the "Final Administrative Expense Bar Date"). As previously noted, notice of
the Final Administrative Expense Bar Date was provided to Plaintiff via United States mail on or
prior to October 9, 2009 through service of the Effective Date Notice.

## B

Before his termination, Defendant employed Plaintiff as a Senior Mechanical Engineer III.
During his tenure with Defendant, Plaintiff had become a member of Defendant's "Innovation Hall
of Fame," had 23 patents and had earned four of those patents between June 2007 and June 2008.
Plaintiff had three patents pending at the time of his termination.

On August 20, 2009, Plaintiff was made aware that he was being laid off. Plaintiff, who was
64 years old at the time his employment was terminated, was the oldest mechanical engineer. At the
same time Plaintiff's employment was terminated, 115 other employees were notified that their
employment was going to be terminated. Plaintiff alleges that of the 116 employees, including

-6-

himself, slated to be terminated, 30 retired, 26 were under the age of forty and 90 were over the age

of forty. Plaintiff was informed that Defendant selected employees to terminated based on "relative

contribution." Plaintiff contends that despite laying off over one hundred employees, Defendant hired

younger employees before Plaintiff's discharge and retained younger employees who Plaintiff

believed had lower relative contributions. Effective September 1, 2009, Plaintiff's employment was

terminated.

## II

"A pleading that states a claim for relief must contain . . . a short and plain statement of the

claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). The requirement

is meant to provide the opposing party with " 'fair notice of what the . . . claim is and the grounds

upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v.

Gibson*, 355 U.S. 42, 47 (1957)). If a complaint does not meet that standard, the opposing party may

move to dismiss it for failure to state a claim at any time before filing an answer. Fed. R. Civ. P.

12(b)(6).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." *Twombly*, 550 U.S. at 555 (2007) (citations omitted). "Factual allegations must

be enough to raise a right to relief above a speculative level, on the assumption that all the allegations

in the complaint are true . . . ." *Id.* at 555–56 (citations omitted). "To survive a motion to dismiss,

a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S.

at 570)). "Facial plausibility" requires the plaintiff to include sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III

Defendant contends that Plaintiff cannot state plausible claims for relief and his claim should be dismissed because his claims are barred by the Bankruptcy Court's orders outlined above. Pursuant to the Modification Approval Order, Plaintiff was required to file an Administrative Expense Claim. Plaintiff is asserting that his employment was terminated effective September 1, 2009 in violation of the Age Discrimination in Employment Act. Defendant argues that assertion of this type of claim falls squarely into the types of claims that were required to be filed by the Final Administrative Expense Bar Date as set forth in paragraph 47 of the Modification Approval Order. Plaintiff did not timely file an Administrative Expense Claim on or prior to the Final Administrative Expense Bar Date and Defendant contends that he is now barred from asserting any claim that arose on or after June 1, 2009 against any of the Debtors, including Delphi Corporation, n/k/a DPH Holdings Corp. Any administrative expense claim that may have been assertable by Plaintiff should be automatically disallowed and Defendant requests that this action be dismissed with prejudice.

Moreover, pursuant to the discharge provisions at Article 11.2 of the Modified Plan, Plaintiff may only receive a distribution on any purported claim as provided for by the Modified Plan. Specifically, under II U.S.C. § 1141(d) and pursuant to the terms of the Modification Approval Order and the Modified Plan, upon the Effective Date, all claims against the Debtors that arose on or prior to the Effective Date were discharged. Specifically, Article 11.2 of the Modified Plan provides that:

> the distributions and rights that are provided in [the Modified] Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of

> Claims and Causes of Action, whether known or unknown, against, liabilities of,
> liens on, obligations of, rights against, and Interests in the Debtors or any of their
> assets or properties, regardless of whether any property shall have been distributed
> or retained pursuant to [the Modified] Plan on account of such Claims, rights, and
> Interests, including, but not limited to, Claims and Interests that arose before the
> Effective Date.

In addition, upon the effectiveness of the Modified Plan, an injunction was imposed. Specifically, the

Modified Plan and the Modification Approval Order contain a permanent injunction against, among

other things, the commencement or continuation of any action to recover against any claim against

the Debtors that arose on or prior to October 6, 2009. Defendants request that, based on the Modified

Plan and Modification Approval Order prohibiting the commencement or continuation of any action

to recover any claim against the Debtors that arose on or prior to October 6, 2009, this case should

be dismissed as improper.

Plaintiff, however, contends that he has filed a claim of age discrimination which falls under

paragraph 20 of the Order Approving Modification of the Joint Plan of Reorganization, which

excludes claims for willful misconduct from release or discharge. Article XI of the First Amended

Joint Plan of Reorganization of Delphi Corporation reads: Pursuant to section 1141(d) of the

Bankruptcy Code, except as otherwise specifically provided in this Plan, Confirmation Order or

Modification Approval Order, the distributions and rights that are provided in this Plan shall be in

complete satisfaction, discharge and release, of claims and causes of action [of] . . . termination of

employment of any employee whether such termination occurred prior to or after the effective date."

On July 30, 2009, the Bankruptcy Court entered an Order Approving Modifications Under 11 U.S.C.

§ 1127(b) to the First Amended Joint Reorganization Plan of Reorganization of Delphi Corporation.

Paragraph 20 of the Modification Order states that

> the discharge of the Debtors and any of their assets or properties provided in Article

-9-

11.2 of the Modified Plan . . . are hereby approved as an integral part of the Modified Plan . . . provided, however, notwithstanding anything in this order, the exculpation provisions or releases provided pursuant to Article 11 of the Modified Plan shall have no effect on the liability of any entity that otherwise would result from any action or omission to the extent that such action or omission is determined in a final order to have constituted intentional fraud or willful misconduct.

Plaintiff contends that the instant case could result in a final order of intentional fraud or willful misconduct. Plaintiff submits that willful age discrimination claims, similar to the claim he has brought in the instant case, are governed by the provisions of 29 U.S.C. § 626(b), which is incorporated into the ADEA from the Fair Labor Standards Act of 1938. The FLSA defines liquidated damages as an amount equal to the benefit and wage losses sustained, which requires a two tiered approach: for a simple violation, the employee receives compensatory damages but for a willful violation the plaintiff receives liquidated damages to punish the employer. *Schrand v. Federal Pac. Elec. Co.*, 851 F.2d 152, 158 (6th Cir. 1988). A violation of the ADEA is willful "if the employer . . . knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 119 (1985). Plaintiff contends that he has alleged facts in his complaint that illustrate that his employer knew or showed reckless disregard that their conduct was prohibited by the ADEA and requests that the Court deny Defendant's motion to dismiss.

It its reply, Defendant emphasizes that the Plan Modification order enjoins claims even if they were not discharged in bankruptcy and, based on this language alone, the instant case should not go forward unless Plaintiff obtains an order from the Bankruptcy Court lifting the injunction and allowing him to file a late claim. Defendant also contends that Plaintiff's sole argument that his claim should be excepted from discharge under the Reorganization Plan is insufficient to withstand Defendant's motion because exceptions to discharge are to be narrowly construed in favor of the

debtor, and should be confined to those plainly expressed. *See In re Livingston*, 379 B.R. 711, 720

(Bankr. W.D. Mich. 2007). That Plaintiff's employment was terminated along with a number of other

employees suggests a reduction in workforce according to Defendant, and not that Defendant

engaged in fraudulent, malicious, or willful conduct that would except Plaintiff's claims from

discharge.

Defendant alternatively requests that this Court hold the instant matter in abeyance unless and

until Plaintiff obtains relief from the Bankruptcy Court's order enjoining pre-Effective Date claims.

*See, e.g., In re Padilla*, 84 B.R. 194, 197-98 (Bankr. D. Col. 1987) (finding bankruptcy court had

exclusive jurisdiction to determine statutory questions of discharge). As stated by the United States

Supreme Court in *Celotex Corp. v. Edwards*, " 'persons subject to an injunctive order issued by a

court with jurisdiction are expected to obey that decree until it is modified or reversed . . . .' " 514

U.S. 300, 300 (1995) (quoting *GTE Sylvania, Inc. v. Consumers Union of United States, Inc.*, 445

U.S. 375, 386 (1980). By continuing to pursue its claims in this Court by arguing that the Bankruptcy

Court injunction does not apply or need not be followed, Defendant believes that Plaintiff is engaging

in an improper collateral attack on the Modification Approval Order –an action that the Supreme

Court found impermissible in *Celotex*. Defendant argues that Plaintiff should address any complaint

it has with the plan injunction in the Bankruptcy Court–not this Court. Thus, until Plaintiff takes

action in the Bankruptcy Court, this Court should honor the plan injunction and hold this action in

abeyance until further order of the Bankruptcy Court.

While Plaintiff has not identified any statutory exception to discharge, the Bankruptcy Court

also retained exclusive jurisdiction under the confirmed Reorganization Plan to hear and determine

all disputes involving the existence, nature or scope of the Debtors' discharge and to enforce all

orders previously entered by the Court, including the injunction issued in the Delphi reorganization.

Moreover, bankruptcy courts have special expertise in matters relating to dischargeability, which

suggests that the bankruptcy court should be the preferred forum in which to litigate dischargeability

issues. *See* Helbling & Klein, <u>The Emerging Harmless Innocent Omission Defense to</u>

<u>Nondischargeability Under Bankruptcy Code</u>, §523(a)(3)(A), 69 Am. Bankr. L.J. at 49, 61, note 9.

The judge presiding over Defendant's case in the Bankruptcy Court has also already decided

a case involving salaried retirees of DPH Holdings Corporation against the "new General Motors"

(the entity that emerged from GM's bankruptcy), who claimed that the new GM's decision not to "top

up" their pensions as GM had "topped up" the pensions of hourly employees constituted "willful"

and "malicious" behavior. The DPH Holdings Corporation retirees filed a lawsuit in the United States

District Court for the Eastern District of Michigan. GM brought an action in the bankruptcy court,

asking the court to rule that the retirees' federal district court action violated the plan injunction and

the release and exculpation provisions of the plan. The Bankruptcy Court noted that ". . . it's

well-recognized that, quote, 'a bankruptcy court is undoubtedly the best qualified to interpret and

enforce its own orders, including those providing for discharge and injunction and therefore should

not abstain from doing so.' " (Def.'s Reply Br. Ex. B at 15.) The Bankruptcy Court went on to find

that the record did not show the requisite willful misconduct by GM, such as to trigger an exception

to dischargeability. The Bankruptcy Court noted in its conclusion that an order would be issued

"declaring that the continued prosecution of the Michigan District Court action by the retirees against

New GM violates the plan injunction and may not proceed." (*Id.*)

Because Plaintiff was provided the requisite notices, Defendant submits that it does not

foresee the Bankruptcy Court granting Plaintiff an exception to dischargeability. Instead, Defendant

believes that the Bankruptcy Court will deem Plaintiffs claims barred and require Plaintiff to dismiss

the lawsuit, just as the Bankruptcy Court has required another former employee to dismiss a lawsuit

brought in this Court alleging claims under ERISA. *See Leigh Ochoa v. DPH Holdings Corp.*, Case

No. 09-14383. In that matter, the Bankruptcy Court enforced the injunction and required the former

employee "to take such action as is necessary to immediately dismiss the Michigan Action." (Def.'s

Mot. to Dismiss Ex. 4.) By continuing to pursue its claims in this case, effectively arguing that the

Bankruptcy Court injunction does not apply or need not be followed, Plaintiff is engaging in an

improper collateral attack on the Modification Approval Order. Thus, until Plaintiff takes action in

the Bankruptcy Court, Defendant requests that this Court should hold the instant action in abeyance

until further order of the Bankruptcy Court. Plaintiff did not provide a response to Defendant's

motion to hold the proceedings in abeyance.

## VI

At this juncture, the Court finds it appropriate to hold the proceedings in abeyance to allow

Plaintiff to request relief from the Bankruptcy Court's order enjoining claims against Defendant.

Accordingly it is **ORDERED** that Defendant's motion to dismiss or to hold proceedings in

abeyance [Dkt. #6] is **GRANTED IN PART.**

It is further **ORDERED** that Plaintiff is **DIRECTED** to request relief from the Bankruptcy

Court's order enjoining claims against Defendant within **sixty days** from the date of this order

It is further **ORDERED** that the parties are **DIRECTED** to file supplemental briefing, not

to exceed ten pages, within fourteen days of resolution of the request for relief from the Bankruptcy

Court.

It is further **ORDERED** that, to avoid administrative difficulties, the Clerk of Court close this

case for statistical purposes only.  Nothing in this order or in the related docket entry shall be

considered a dismissal of this matter.

s/Thomas L. Ludington

THOMAS L. LUDINGTON
United States District Judge

Dated: June 13, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on June 13, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS