**Hearing Date and Time: February 16, 2012 at 10:00 a.m. (ET)**

Dimitri L. Karapelou, Esq.
Law Offices of Dimitri L. Karapelou, LLC
1600 Market Street, 25th Floor
Philadelphia, PA 19103
(215) 391-4312

AND

Chad C. Lucas, Esq.
Bradley D. Kuhlman, Esq
The Kuhlman Law Firm, LLC
1100 Main Street, Suite 2550
Kansas City, MO 64105
 (816)799-0330

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| DPH HOLDINGS CORP., *et al.*, | : | Case No. 05-44481 (RDD) |
| | : | Jointly Administered |
| Reorganized Debtors. | : | |
| | : | |

## RESPONSE OF THE KUHLMAN LAW FIRM TO
## THE REORGANIZED DEBTORS' MOTION FOR SANCTIONS RELATING TO
## IMPROPER PURSUIT OF MARYLAND STATE COURT ACTION BY AVERBUKHS

Reorganized Debtors have filed a Motion for Sanctions Relating to Improper Pursuit of
Maryland State Court Action by Averbukhs ("Motion for Sanctions"), in which they seek
sanctions against Plaintiffs and their counsel, including The Kuhlman Law Firm. For its separate
response to the Motion for Sanctions, The Kuhlman Law Firm submits:

## INTRODUCTION

This matter arises from the efforts of Reorganized Debtors to obtain dismissal of an
action which was filed by the Averbukhs on November 9, 2009, in the Circuit Court for Prince
George's County, Maryland ("Maryland Action"). (Complaint in Maryland Action, attached

hereto as Exhibit A). Reorganized Debtors have sought and obtained dismissal of the Maryland Action on the basis that the Maryland Action is barred by the bankruptcy proceedings currently pending in this Court ("Bankruptcy"). Reorganized Debtors, after obtaining dismissal of the Maryland Action, improperly filed a Rule 9011 Motion for Sanctions, which is procedurally defective and substantively challenged, as it tries to advance arguments for sanctions that do not raise any improper conduct on the part of Plaintiffs.

Plaintiffs acknowledge that their conduct is the focus of the Motion for Sanctions; however it is equally important for this Court, as argued in more detail below, to consider the Reorganized Debtors' conduct in failing to make a balanced decision that would reflect the complexities of the factual history of the Reorganized Debtors and the Plaintiffs.

For example, the Reorganized Debtors conveniently fail to inform this Court that they defended the Maryland Action for an eighteen-month period while not raising Bankruptcy as a defense or seeking relief from the state court or this Court on the basis of the Bankruptcy. In fact, Reorganized Debtors entered into settlement negotiations with Plaintiffs in the Maryland Action in August of 2011. It was only when those settlement negotiations broke down that Reorganized Debtors sought relief in this Court on the basis of the Bankruptcy.

Moreover, a Rule 9011 violation (or other type of sanction) may not be imposed on a party who acted in good faith or by mistake. Plaintiffs litigated the Maryland Action based upon their good faith belief that the claims being pursued against Reorganized Debtors in the Maryland Action were not barred by the Bankruptcy because the claims did not constitute administrative claims for purposes of the Bankruptcy plan. The United States District Court for the Western District of Texas, in April 2011, expressly affirmed this very argument with respect to the same Reorganized Debtors and the same Bankruptcy. This belief was reinforced by the

Reorganized Debtors who, despite having competent and experienced counsel, voluntarily chose to actively defend the claims for eighteen months without once raising the Bankruptcy as a defense.  Indeed, it would make no sense for Plaintiffs to intentionally violate the Discharge and the Injunction to pursue a claim that never could be paid.  Nowhere is it alleged that Reorganized Debtors placed Plaintiffs on notice, prior to August 2011, that Plaintiffs were continuing with the Maryland Action in violation of the Discharge and the Injunction.  And it is certainly impossible, in the context of a sanctions request, for the Reorganized Debtors to impose the notice retroactively on the Plaintiffs.

It was not until this Court entered its Order granting Reorganized Debtors' Motion for Injunction that Plaintiffs knew that their argument regarding the definition of administrative claims would not prevail.  Until that point this was an open question of law on which at least one court had ruled in favor of the position being pursued by Plaintiffs.  Nonetheless, after this Court entered its Order granting the Motion for Injunction, Reorganized Debtors filed their Motion for Sanctions in which they seek to recover for approximately six months of attorneys' fees in the Maryland Action.  The Motion for Sanctions, which is based upon Federal Bankruptcy Rule 9011, should be denied for a number of reasons.

First, Reorganized Debtors have not satisfied the prerequisite for pursuing a Rule 9011 motion in that Reorganized Debtors have not complied with the safe harbor provision of Rule 9011.  Failure to comply with the safe harbor provision requires dismissal of the Motion for Sanctions.  Furthermore, this is not a defect that can be remedied by a subsequent filing because this Court has already ruled upon the Motion for Injunction which is the only possible basis for the Motion for Sanctions.  The law is clear in this Circuit that a party may not seek sanctions in

connection with a motion that has already been granted prior to the filing of the motion for sanctions.

The Motion for Sanctions also fails because the conduct complained of by Reorganized Debtors cannot be addressed by Rule 9011 sanctions.  Rule 9011 only applies to sanctionable conduct involving the filing of a pleading or other paper in the bankruptcy court.  In this case, the only papers that were filed in the bankruptcy court were the administrative claim of Alla Averbukh and Plaintiffs' response to the Motion for Injunction.  Reorganized Debtors do not contend that either of these documents was improperly filed or violated Rule 9011.  Nor could they reasonably make such an argument given the facts as explained in more detail below.

The Motion for Sanctions also fails because there is no showing that Plaintiffs failed to meet the standards for pleadings set forth by Rule 9011.  Plaintiffs were proceeding based upon a good faith legal argument which was supported by the ruling of another court that had addressed the same issue.  Thus, there is no showing that Plaintiffs' argument was frivolous or was pursued for an improper purpose.

Even if Reorganized Debtors had established some sanctionable conduct on the part of Plaintiffs or their counsel, Reorganized Debtors should be estopped from seeking sanctions given their own failure to raise the Bankruptcy at a much earlier stage of the Maryland Action.  It is fundamentally unfair to allow Reorganized Debtors to participate in the Maryland Action for eighteen months, without once attempting to raise the Bankruptcy, only to seek sanctions for activity that occurred during that eighteen-month delay.

If this Court were inclined to entertain sanctions pursuant to Rule 9011, the magnitude of sanctions sought by Reorganized Debtors is wholly unreasonable.  The amount of attorneys' fees sought by Reorganized Debtors improperly contains a large amount for fees generated in the

4

underlying Maryland Action.  A party may not recover attorneys' fees in a Rule 9011 motion for sanctions in the bankruptcy court based upon legal services that were provided in a state court action.  Furthermore, given that Reorganized Debtors failed to mitigate their own damages by attempting to raise the Bankruptcy as a defense at a much earlier stage of the litigation, it would be improper to award any attorneys' fees.

Finally, although Reorganized Debtors do not seek sanctions pursuant to 28 U.S.C. § 1927, Reorganized Debtors suggest in a footnote that they would be entitled to sanctions under this statutory provision.  Given that Reorganized Debtors do not engage in any analysis of Section 1927, it would clearly be improper to grant Reorganized Debtors any relief pursuant to that Section.  Furthermore, it would be improper to grant sanctions under Section 1927 because Reorganized Debtors do not allege or make any showing of bad faith on the part of Plaintiffs' counsel.

## FACTUAL BACKGROUND

### I.    BRADLEY D. KUHLMAN AND THE KUHLMAN LAW FIRM.

Bradley D. Kuhlman is the sole partner in a two-lawyer firm, The Kuhlman Law Firm, in downtown Kansas City, Missouri.  (Affidavit of Bradley D. Kuhlman, ¶ 34, attached hereto as Exhibit B).  Mr. Kuhlman has been licensed to practice law since 1994.  (Exhibit B ¶ 1).  Mr. Kuhlman is licensed in Missouri, Illinois and the Western District of Missouri.  (Exhibit B ¶ 2). Mr. Kuhlman's practice for the past fifteen years has focused primarily on automotive products defect litigation.  (Exhibit B ¶ 4).  Mr. Kuhlman served as lead trial counsel for Alesander and Vladimir Averbukh in the Maryland wrongful death action addressed herein.  (Exhibit B ¶ 3).

Mr. Kuhlman has never been sanctioned by any court.  (Exhibit B ¶ 32).  Mr. Kuhlman has never had a motion for sanctions filed against him in any court.  (Exhibit B ¶ 32).  Mr. Kuhlman has never been the subject of a disciplinary investigation, complaint or proceeding in any court.  (Exhibit B ¶ 32).  Mr. Kuhlman has been admitted pro hac vice in numerous states over the past 16 years without incident.  (Exhibit B ¶ 32).  Mr. Kuhlman never intended to knowingly violate any of this Court 's Orders.  (Exhibit B ¶ 34).

## II.    THE MARYLAND ACTION.

Plaintiffs in the Maryland Action are Vladimir Averbukh and Alesander Averbukh.  (Exhibit A, ¶¶ 1-2).  Alla Averbukh is identified in the Maryland Action as a "Use Plaintiff" and also as a defendant.  (Exhibit A, ¶ 3).  The Complaint clearly states that Alla Averbukh is only named as a Use Plaintiff because, as the wife of the decedent, she is a potential wrongful death beneficiary and is required to be named pursuant to Maryland Rules.  (Exhibit A, ¶ 3).  Indeed, Reorganized Debtors acknowledge in their Motion for Sanctions that a "Use Plaintiff" is not actually a party to an action, but is simply a party in interest who must be identified in an action.  (Motion for Sanctions, ¶ 13).  Alla Averbukh does not state any claims for affirmative relief in the Complaint.  (Exhibit A, ¶¶ 19-71).  To the contrary, Alla Averbukh is named as a defendant in two counts of the Complaint.  (Exhibit A, ¶¶ 67-71).  The only parties who state affirmative claims for relief in the Complaint are the estate of Boris Averbukh and individual Plaintiffs Vladimir Averbukh and Alesander Averbukh.  (Exhibit A, ¶¶ 19-71).

## III.    REORGANIZED DEBTORS' PARTICIPATION IN THE MARYLAND ACTION.

A copy of the Complaint in the Maryland Action was served upon Reorganized Debtors on January 11, 2010. (Motion for Sanctions, ¶ 15). In the original complaint the Plaintiffs named Delphi Corporation and Delphi Automotive Systems LLC as defendants. On February 12, 2010, Reorganized Debtors filed their Answer to Plaintiffs' Complaint in the Maryland Action. (Answer in Maryland Action, attached hereto as Exhibit C). In their Answer, Reorganized Debtors stated seventeen separate affirmative defenses, not one of which mentioned bankruptcy. (Exhibit C). The Reorganized Debtors even corrected Plaintiffs' counsel by providing the correct "new" names of the Delphi entities, DPH Holdings Corporation (formerly known as Delphi Corporation) and DPH-DAS LLC (formerly known as Delphi Automotive Systems LLC).

During the course of the approximately eighteen months that elapsed between service of the Complaint upon Reorganized Debtors on January 11, 2010, and the filing of Reorganized Debtors' motion for relief in this Court on August 30, 2011, Reorganized Debtors fully participated in the Maryland Action. More specifically, Reorganized Debtors engaged in the following activity in the Maryland Action:

- On February 12, 2010, Reorganized Debtors filed their answer assisting Plaintiffs' counsel in naming the "correct" Delphi entities as defendants and failing to raise bankruptcy as an affirmative defense or in any manner.

- On June 11, 2010, Reorganized Debtors served their responses to Plaintiffs' First Interrogatories and Plaintiffs' First Requests for Production. (Exhibit D).

- On July 16, 2010, Reorganized Debtors filed a Proposed Stipulated Order Regarding Confidentiality of Materials filed by Defendant DPH-DAS, LLC. (Exhibit E).

- On August 26, 2010, Reorganized Debtors served their responses to Plaintiffs' Second Requests for Production.  (Exhibit F).

- On September 14, 2010, Reorganized Debtors served their first round of discovery on Plaintiffs, consisting of requests for production and interrogatories directed to separate plaintiffs and groups of plaintiffs.  (Exhibit G).

- On December 2, 2010, Reorganized Debtors participated in the deposition of Leonard Prather.

- On January 18 and 19, 2011, Reorganized Debtors participated in the depositions of Quintina Walker, Eboni Robinson, Lt. Thomas Potter and Suzanna Fitzpatrick.

- On January 19, 2011, Reorganized Debtors submitted their Pretrial Statement to the Court in the Maryland Action.  While that Pretrial Statement addressed numerous issues in the case, and included a section titled "Other Matters," the Pretrial Statement made no reference to any assertion by Reorganized Debtors that the Maryland Action was barred by the Bankruptcy.  (Exhibit H).

- On January 21, 2011, Reorganized Debtors served their supplemental responses to Plaintiffs' Second Request for Production.  (Exhibit I).

- On January 28, 2011, Reorganized Debtors served their responses to Plaintiffs' Third Requests for Production.  (Exhibit J).

- On May 19, 2011, Reorganized Debtors participated in the deposition of John DeRose.

- On July 27, 2011, Reorganized Debtors served their supplemental responses to Plaintiffs' First Interrogatories, Plaintiffs' First Requests for Production, and Plaintiffs' Second Requests for Production.  (Exhibit K).

- On August 15, 2011, Reorganized Debtors participated in the deposition of Alla Averbukh.

- On August 22, 2011, Reorganized Debtors served their responses to Plaintiffs' Fourth Requests for Production.  (Exhibit L).

This list, while by no means exhaustive, serves to illustrate that Reorganized Debtors fully participated in the Maryland Action up to the filing of their motion for relief in this Court on August 30, 2011.  More to the point, Reorganized Debtors did not raise the Bankruptcy as a bar to the Maryland Action at any point during this eighteen-month period.

The Reorganized Debtors  never raised the Bankruptcy as a defense to the Maryland Action.  (Exhibit B, ¶ 24).  The Bankruptcy was neither asserted nor raised in Reorganized Debtors'  Answer in the Maryland Action, filed on February 12, 2010.  (Exhibit B, ¶ 24).  Reorganized Debtors never filed a "Suggestion of Bankruptcy," or any similar document in the Maryland Action that referenced the Bankruptcy.  (Exhibit B, ¶ 25).  Reorganized Debtors proceeded in the Maryland Action for eighteen months without once filing any pleading that raised the Bankruptcy as a potential defense.  (Exhibit B, ¶ 26).

Not only have Reorganized Debtors fully participated in the Maryland Action, but they have participated in the Maryland Action in a manner that tends to indicate they viewed the Maryland Action as a proper proceeding.  For example, on May 7, 2010, Plaintiffs submitted an interrogatory to Reorganized Debtors in the Maryland Action, requesting that Reorganized Debtors identify any insurance policies that might indemnify Reorganized Debtors for any judgment obtained in the Maryland Action.  (Plaintiff's Interrogatory No. 23, attached hereto as Exhibit M).  On June 11, 2010, Reorganized Debtors responded to this interrogatory by indicating that they were self-insured for product liability claims up to $5 million per occurrence,

and that there were excess policies available to cover larger judgments.  (Response to Plaintiffs'

Interrogatory No. 23, attached hereto as Exhibit M.  In their response to this interrogatory,

Reorganized Debtors made no reference to any claim that they were not subject to liability as a

result of the Bankruptcy.  (Exhibit N).  Reorganized Debtors never amended nor supplemented

this response.  Indeed, it would have been foolish for Plaintiffs to continue prosecution of a

lawsuit that was either not covered by insurance or previously discharged by bankruptcy.   It is

implausible to believe that Plaintiffs intentionally violated the Discharge and Injunction Orders

to sue Reorganized Debtors on a claim that could not be collected.

Reorganized Debtors' response to Plaintiffs' discovery on the issue of insurance coverage

is important because it illustrates Plaintiffs' good faith basis for pursuing the Maryland Action.

Given the conduct and discovery responses of Reorganized Debtors, it appeared that there were

non-estate assets, including insurance in some form, that were available to satisfy Plaintiffs'

claims. Plaintiffs never intended to execute against any immune estate assets.  (Exhibit B, ¶ 28).

Rather, Plaintiffs pursued the Maryland Action for purposes of obtaining non-estate assets such

as insurance.  (Exhibit B, ¶ 29).  Reorganized Debtors' continued participation in the case

supported Plaintiffs' reasonable assumption that there was some insurance coverage available.

(Exhibit B, ¶ 30).  That reasonable assumption was later verified by Reorganized Debtors'

response to Interrogatory No. 23.

In their responses to Plaintiffs' interrogatories in the Maryland Action, Reorganized

Debtors also indicated that they were the proper parties in the action without once raising the

Bankruptcy.  (See Response to Plaintiffs' Interrogatories, "Prefatory Notes . . . Correct

Defendant", attached hereto as Exhibit O).

As noted above, in addition to responding to discovery of Plaintiffs in the Maryland Action, Reorganized Debtors have affirmatively engaged in their own discovery in the Maryland Action. In fact, in August of 2011, Reorganized Debtors participated in the deposition of Mrs. Averbukh and questioned her extensively. (Deposition Notice for Alla Averbukh, attached hereto as Exhibit P). This is hardly the conduct of a party that believes it is not properly named in an action.

Finally, Reorganized Debtors engaged in settlement negotiations shortly before filing their motion seeking relief in this Court. On August 22, 2011, Reorganized Debtors instituted settlement negotiations with Plaintiffs, through Mr. Kuhlman, by requesting a settlement demand from Plaintiffs. (Exhibit B, ¶ 31). On August 23, 2011, Mr. Kuhlman made a demand of $900,000 on behalf of Plaintiffs. (Email of August 23, 2011, attached hereto as Exhibit Q). Reorganized Debtors rejected Plaintiffs' settlement demand and cut off settlement negotiations on August 26, 2011. (Email of August 26, 2011, attached hereto as Exhibit R). It was only after settlement negotiations broke down that Reorganized Debtors filed their motion seeking relief in this Court on August 30, 2011. (Motion for Injunctive Relief, attached hereto as Exhibit S).

## IV.    THE SIMILAR ACTION AGAINST REORGANIZED DEBTORS IN TEXAS.

During the pendency of the Maryland Action, Mr. Kuhlman was aware of a similar product liability lawsuit that had been filed against the Reorganized Debtors in the United States District Court for the Western District of Texas, captioned <u>Keith Smith v. General Motors Corporation and Delphi Automotive Systems LLC</u>, Civil Action No. SA-09-ca-0296 ("<u>Smith</u> Action"). Like the Maryland Action, the <u>Smith</u> Action involved a claim against the Reorganized Debtors for personal injuries that arose after the bankruptcy petition date. (Motion

to Dismiss in the <u>Smith</u> Action, ¶ 10, attached hereto as Exhibit T).  Counsel for Reorganized Debtors in the <u>Smith</u> case is the same as that in the Maryland Action: Weinstein, Tippetts & Little LLP.  (Exhibit T).

In the <u>Smith</u> Action, Reorganized Debtors filed a motion seeking to dismiss the personal injury claims of the plaintiffs on the basis that those claims were barred by the bankruptcy proceedings in this Court.  (Exhibit T).[1]  In response to that motion, plaintiffs in the <u>Smith</u> Action argued that their claims were not barred by the Bankruptcy because the Bankruptcy orders pertained to "administrative claims," and the personal injury claims at issue in the Texas Court did not constitute administrative claims.  (Response to Motion to Dismiss in the <u>Smith</u> Action, pp. 5-6, attached hereto as Exhibit U).

On April 20, 2011, the United States District Court for the Western District of Texas denied the Motion to Dismiss in the <u>Smith</u> Action, specifically holding as follows:

> [P]laintiff's products liability cause of action is not an "administrative claim" as defined by the bankruptcy court's order – it is neither a claim for payment of an administrative expense under § 503(b) of the Bankruptcy Code nor a claim entitled to priority pursuant to § 507(a)(1) of the Code.

(Order Denying Motion to Dismiss in the <u>Smith</u> Action, attached hereto as Exhibit V).

Mr. Kuhlman was provided with a copy of the Motion to Dismiss in the <u>Smith</u> Action on November 3, 2010, the day after it was filed.  (Exhibit B, ¶ 16).  Furthermore, as a result of his communications with counsel for plaintiffs in the <u>Smith</u> Action, Mr. Kuhlman was aware that counsel in a highly similar action were pursuing the legal argument that personal injury claims do not constitute administrative claims which are barred by the Bankruptcy.  (Exhibit B, ¶ 19).

---

[1]    Because the Maryland Action and the Texas lawsuit both arise from injury claims, similar in nature, it begs the question as to why Reorganized Debtors did not file the same motion in the Maryland Action.

Upon information and belief, the <u>Smith</u> case settled after Judge Garcia denied Reorganized Debtors' Motion to Dismiss in the <u>Smith</u> Action. (Exhibit B, ¶ 20). Mr. Kuhlman relied upon the <u>Smith</u> Order, and the legal analysis addressed in the <u>Smith</u> Action, as part of the basis for his continued prosecution of the Maryland Action and for opposition to the original motion for relief in this Court. (Exhibit B, ¶ 21).

Once the United States District Court for the Western District of Texas issued its order in the <u>Smith</u> Action, finding that an action for personal injury did not constitute an administrative claim for purposes of the Bankruptcy, Plaintiffs' counsel was obligated to pursue this theory on behalf of his clients in the Maryland Action. (Exhibit B, ¶ 22). Plaintiffs' counsel believed, and still believes, that the failure to pursue a legal argument that had recently been recognized by another District Court, and which was favorable to his clients, would have potentially constituted both malpractice and a violation of counsel's obligation to zealously represent his clients. (Exhibit B, ¶ 23).

## V.    THE ALLA AVERBUKH CLAIM.

On September 9, 2009, The Kuhlman Law Firm filed an Administrative Expense Claim Request on behalf of Alla Averbukh in the Bankruptcy ("Alla Averbukh Claim"). (Administrative Expense Claim Request of Alla Averbukh, attached hereto as Exhibit W). The Alla Averbukh Claim only stated a claim on behalf of Alla Averbukh. (Exhibit W). No administrative claim was filed on behalf of Vladimir Averbukh or Alesander Averbukh, the Plaintiffs in the Maryland Action. (Exhibit W).

The Alla Averbukh Claim stated that Alla Averbukh was asserting an administrative claim against Reorganized Debtors in the amount of $1.5 million in connection with "Damages

and injuries and wrongful death of Boris Averbukh." (Exhibit W).  The Alla Averbukh Claim

was signed by Chad Lucas, an associate of The Kuhlman Law Firm.  (Exhibit W).  Aside from

stating the amount and nature of the claim, the Alla Averbukh Claim merely set forth general

information regarding the address of counsel and the date on which the claim arose.  (Exhibit

W).

On April 16, 2010, seven months after the filing of the Alla Averbukh Claim, and two

months after the Reorganized Debtors filed their Answer in the Maryland Action, the

Reorganized Debtors filed their Forty-Seventh Omnibus Objection in which they objected to the

Alla Averbukh Claim.  In their Notice of Objection to Claim, submitted to The Kuhlman Law

Firm, Reorganized Debtors indicated that they were seeking to disallow, expunge or modify the

Alla Averbukh Claim because the amount being sought in the claim was not owing according to

Reorganized Debtors' books and records.  (Exhibit E to Motion for Sanctions).  The Notice of

Objection to Claim made no reference to the known claims of Vladimir Averbukh and Alesander

Averbukh which were then pending in the Maryland Action.   (Exhibit E to Motion for

Sanctions).

On May 28, 2010, Reorganized Debtors provided notice to The Kuhlman Law Firm that

the Alla Averbukh Claim had been disallowed and expunged by the bankruptcy court.  (Exhibit

G to Motion for Sanctions).  The Notice of Order made no reference to the claims of Vladimir

Averbukh and Alesander Averbukh which were then pending in the Maryland Action.

**VI.    PURPORTED COMMUNICATIONS REGARDING THE BANKRUPTCY
SERVING AS A BAR TO THE MARYLAND ACTION.**

In their Motion for Sanctions, Reorganized Debtors allege that they "notified the

Averbukhs, through Brad Kuhlman, that the Maryland Action was improper and requested that it

14

be dismissed as to the Debtors" sometime around June 3, 2011.  (Motion for Sanctions, ¶ 23).  In

support of that assertion, Reorganized Debtors refer only to email communications from June

2011 which were attached as Exhibit H to the Motion for Sanctions.  (Motion for Sanctions, ¶

23).  The emails that Reorganized Debtors refer to consist of a June 3 email from David

Weinstein, counsel for Reorganized Debtors, to Brad Kuhlman, and the subsequent emails in that

chain on June 3 and June 6.

The June 3, 2011 email from David Weinstein to Brad Kuhlman stated in its entirety as

follows:

Brad,

There is a threshold dispositive issue in this matter against Delphi (concerning
bankruptcy matters) that I would prefer to discuss with you by phone.  Are you
available today to discuss?  Thanks.

- Dave

(Exhibit H to Motion for Sanctions).

Mr. Kuhlman responded to Mr. Weinstein's June 3rd email by indicating that he was not

available to talk that day, but would be available the following Monday.  (Exhibit H to Motion

for Sanctions).  Mr. Kuhlman further indicated that if Mr. Weinstein was intending to discuss the

issues that had been raised in the Reorganized Debtors' motion to dismiss which was filed in the

Smith Action in Texas, Mr. Kuhlman believed that issue had been disposed of when the Texas

Court ruled in favor of plaintiffs in the Texas action.  (Exhibit H to Motion for Sanctions).

On June 6, 2011 (i.e. the following Monday), Mr. Weinstein sent Mr. Kuhlman an email

indicating that he was not available to talk that day.  (Exhibit H to Motion for Sanctions).  Mr.

Kuhlman responded "That is fine."  (Exhibit H to Motion for Sanctions).

Prior to the filing of the Motion for Injunction (defined below), there was no further email correspondence, or other communication, regarding the bankruptcy issues that Delphi wanted to raise with Mr. Kuhlman . (Exhibit B, ¶ 7). It was approximately three months from the June 3, 2011 email until Reorganized Debtors filed their motion.

In their Motion for Sanctions, Reorganized Debtors indicate that they are seeking sanctions from June 2, 2011 because that is the date "on which they prepared their communications with the Averbukh's counsel." (Motion for Sanctions, ¶ 40). In this paragraph, they further make reference to the Averbukh's counsel "receiving such communications." (Motion for Sanctions, ¶ 40). Reorganized Debtors make a similar assertion in footnote 7 of their Motion for Sanctions, stating that the Plaintiffs' counsel received the communication from counsel for Reorganized Debtors which was begun on June 2, 2011. (Motion for Sanctions, p. 15, n.7). In reality, no such communication was ever sent to Plaintiffs' counsel. (Exhibit B, ¶ 7).

The invoices for Weinstein, Tippetts & Little, L.L.P. indicate that counsel for Reorganized Debtors worked on a letter to Plaintiffs' counsel regarding dismissal of the Maryland Action on June 2, 3, 6, 9, 10, 13, 14 and 16 of 2011. (Exhibit K to Motion for Sanctions). However, there is no indication that any such letter was ever sent to Plaintiffs' counsel. In fact, in recent conversations with Mr. Kuhlman, David Weinstein has confirmed that there was no oral conversation, e-mail, letter or memorandum following his e-mail of June 3, 2011 discussing the Bankruptcy or its effect on the Maryland Action. (Exhibit B, ¶ 8).

The July 13, 2011 invoice entries for Weinstein, Tippetts & Little, L.L.P. indicate that the proposed dismissal motion was still an "open issue" on that date, and make reference to consideration of a "possible settlement overture." (Exhibit K to Motion for Sanctions). As noted above, these settlement discussions subsequently broke down on August 26, 2011.

16

In short, the only communication from counsel for Reorganized Debtors to Plaintiffs' counsel regarding the possible impact of the Bankruptcy upon the Maryland Action was the June 3rd email from David Weinstein which merely stated "There is a threshold dispositive issue in this matter against Delphi (concerning bankruptcy matters) that I would prefer to discuss with you by phone." There was never any further elaboration regarding this "threshold dispositive issue" that concerned "bankruptcy matters" until Reorganized Debtors filed their Motion for Injunction (defined below) on August 30, 2011, approximately three months later.

Putting the facts together, it appears that Reorganized Debtors considered sending a letter to Plaintiffs' counsel regarding dismissal of the Maryland Action and began drafting such a letter. However, Reorganized Debtors never sent this letter. Why? Instead, Reorganized Debtors commenced settlement discussions with Plaintiffs' counsel and, after those discussions broke down on August 26, 2011, Reorganized Debtors filed their motion for relief in this Court which first raised the arguments of Reorganized Debtors regarding dismissal of the Maryland Action.

## VII.    THE MOTION FOR INJUNCTION IN THE BANKRUPTCY COURT.

On August 30, 2011, Reorganized Debtors filed their Motion for Order (I) Enforcing Modification Procedures Order, Modified Plan and Plan Modification Order Injunction and Forty-Seventh Omnibus Claims Objection Order Against Averbukhs, as Plaintiff, In Maryland State Court Wrongful Death Action; and (II) Directing Averbukhs to Dismiss Action to Recover Upon Discharged and Expunged Claim ("Motion for Injunction"). (Exhibit S).

In their Motion for Injunction, Reorganized Debtors argued for the first time that the Maryland Action being pursued by Vladimir Averbukh and Alesander Averbukh was barred as a

result of this Court's prior order regarding the administrative claim of Alla Averbukh.  (Exhibit S, p. 7).  In that regard, Reorganized Debtors argued that although this Court's order had only addressed the claim of Alla Averbukh, Vladimir Averbukh and Alesander Averbukh should be treated as having joined in the Alla Averbukh Claim given Maryland law regarding wrongful death claims.  (Exhibit S, p. 8).  This argument had not previously been raised with Plaintiffs.  (Exhibit B, ¶ 9).

In their Motion for Injunction, Reorganized Debtors also argued for the first time that the Maryland Action being pursued by Vladimir Averbukh and Alesander Averbukh was barred because Vladimir Averbukh and Alesander Averbukh failed to file administrative claims by the claims deadline.  (Exhibit S, p. 9).  In that regard, Reorganized Debtors argued that the wrongful death claim of Vladimir Averbukh and Alesander Averbukh constituted an "administrative claim" which was subject to this Court's orders regarding administrative claims.  (Exhibit S, p. 12).  This argument had not previously been raised with Plaintiffs.  (Exhibit B, ¶ 10).

In their Response to the Motion for Injunction, Plaintiffs explained that the Maryland Action was being pursued by Vladimir Averbukh and Alesander Averbukh, not by Alla Averbukh.  (Response to Motion for Injunction, p. 2, attached hereto as Exhibit X).  Plaintiffs also argued that this Court's orders regarding administrative claims do not apply to the Maryland Action because the claims of Vladimir Averbukh and Alesander Averbukh do not constitute "administrative claims" for bankruptcy purposes.  (Exhibit X, pp. 5-6).  In that regard, Plaintiffs noted that the United States District Court for the Western District of Texas had already addressed this issue and ruled that personal injury claims do not constitute administrative claims for purposes of the Bankruptcy.  (Exhibit X, p. 6).  The Response to Motion for Injunction was signed by the Averbukhs' bankruptcy counsel (Exhibit X, p. 8).  The Response to Motion for

18

Injunction was not signed by any attorney with The Kuhlman Law Firm and The Kuhlman Law Firm was not listed as counsel in the signature block.  (Exhibit X, p. 8).

On October 4, 2011, this Court entered its order granting the Motion for Injunction and directing Plaintiffs to dismiss the Maryland Action ("Injunction Order").  (Order Granting Motion for Injunction, attached hereto as Exhibit Y).  In its Injunction Order, this Court held that the claims being pursued in the Maryland Action constituted "administrative claims" for purposes of the Bankruptcy.  (Exhibit Y, ¶ 2).  This Court further held that the order disallowing the Alla Averbukh Claim was binding upon Vladimir Averbukh and Alesander Averbukh. (Exhibit Y, ¶ 4).  The Injunction Order was the first order in which this Court had addressed either of these issues.

Neither Reorganized Debtors nor their counsel ever provided to Mr. Kuhlman or The Kuhlman Law Firm any analysis by way of email, memorandum or letter of setting forth their argument in support of their Motion for Injunction prior to the filing of that motion on August 30, 2011.  (Exhibit B, ¶ 5).  Mr. Kuhlman has no recollection of any oral communication with Reorganized Debtors' counsel wherein the specific basis for its motion was discussed prior to August 30, 2011.  (Exhibit B, ¶ 6).  Mr. Kuhlman has no recollection of any communication between counsel regarding the Bankruptcy's effect on the Maryland Action before August 30, 2011 other than the short emails exchanged on June 3 and 6, 2011.  (Exhibit B, ¶ 7).  Since the filing of Reorganized Debtors' Motion for Sanctions, Mr. Kuhlman has spoken with David Weinstein, counsel for Reorganized Debtors in the Maryland Action, and he has confirmed that there was no oral conversation, e-mail, letter or memorandum following his vague and brief e-mail of June 3, 2011 discussing the Bankruptcy or its effect on the Maryland Action.  (Exhibit B, ¶ 8).  Contrary to the repeated assertions within the motion for sanctions, Reorganized Debtors

and their counsel never asked Mr. Kuhlman or The Kuhlman Law Firm to voluntarily dismiss the Maryland Action.  (Exhibit B, ¶ 11).

The Maryland Action was not pursued against the Reorganized Debtors for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.  (Exhibit B, ¶ 12).  To the contrary, the Maryland Action was pursued because it is and was Mr. Kuhlman's belief that the claims asserted in the Maryland Action were warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.  (Exhibit B, ¶ 13).

## VIII.   THE MOTION FOR SANCTIONS.

On December 23, 2011, Reorganized Debtors filed their Motion for Sanctions.  The Motion for Sanctions "seeks to recover expenses the Reorganized Debtors incurred to compel dismissal of a Maryland state court action."  (Motion for Sanctions, ¶ 1).  The Motion for Sanctions asserts that "counsel for the Reorganized Debtors expressly requested that the Averbukhs' counsel voluntarily dismiss the action" and that "[t]he Averbukhs refused to dismiss the Maryland Action."  (Motion for Sanctions, ¶¶ 1-2).  The Motion for Sanctions specifically indicates that Reorganized Debtors "seek to recover the resources the bankruptcy estate expended to obtain a dismissal of the barred Maryland Action."  (Motion for Sanctions, ¶ 4).

Reorganized Debtors did not submit a copy of the Motion for Sanctions to Plaintiffs and their counsel in advance of filing that motion.  (Exhibit B, ¶ 35).  Nor did Reorganized Debtors indicate to Plaintiffs or their counsel that they had any intention of seeking sanctions prior to the filing of the Motion for Sanctions.  (Exhibit B, ¶ 36).  The first indication that Plaintiffs and their counsel received from Reorganized Debtors that Reorganized Debtors intended to seek sanctions

was received after this Court had issued its Injunction Order on October 4, 2011.  (Exhibit B, ¶ 37).

Although the Motion for Sanctions alleges that "Reorganized Debtors expressly requested that the Averbukhs' counsel voluntarily dismiss the action," as noted previously there was no such communication.  The sole communication to Plaintiffs or their counsel was the email of June 3, 2011, in which counsel for Reorganized Debtors stated as follows:  "There is a threshold dispositive issue in this matter against Delphi (concerning bankruptcy matters) that I would prefer to discuss with you by phone."  There was never any express request that Plaintiffs voluntarily dismiss their action.  To the contrary, the first request for dismissal was the Motion for Injunction which Reorganized Debtors filed on August 30, 2011, after settlement discussions between the parties had broken down.

In the Motion for Sanctions, Reorganized Debtors suggest that Plaintiffs' counsel were dilatory in dismissing the Maryland Action following this Court's order of October 4, 2011. (Motion for Sanctions, ¶ 30).  That is a gross misrepresentation of the facts.

On October 6, 2011, two days after this Court issued its Order directing Plaintiffs to dismiss the Maryland Action, Plaintiffs' counsel distributed a proposed stipulation of dismissal to counsel for Reorganized Debtors.  (Email chain beginning on October 6, 2011, attached hereto as Exhibit Z).    Four days later, on October 10, 2011, counsel for Reorganized Debtors responded by emailing a red-lined version of the proposed stipulation of dismissal with proposed changes.  (Exhibit Z).  Plaintiffs' counsel responded the next day, October 11, 2011, indicating that Plaintiffs were fine with the proposed changes, with the exception that Plaintiffs did not believe it was appropriate to include Alla Averbukh as a signatory to the dismissal given that she did not state any affirmative claims in the Maryland Action and she was not included in the

21

definition of "Plaintiffs" in this Court's order of October 4, 2011. (Exhibit Z). Eight days later, on October 19, 2011, counsel for Reorganized Debtors responded, indicating that they believed Alla Averbukh should be included as a signatory on the stipulation of dismissal. (Exhibit Z). On October 25, 2011 a series of emails were exchanged in which separate counsel for Plaintiffs indicated that, while they did not agree with the position of counsel for Reorganized Debtors, it was up to Alla Averbukh's separate counsel whether she would agree to be a signatory to the stipulation of dismissal. (Exhibit Z). Once separate counsel for Alla Averbukh agreed that she would be a signatory to the stipulation of dismissal, counsel for Reorganized Defendants suggested that counsel for Alla Averbukh prepare a separate stipulation for Alla. (Exhibit Z).

The above-referenced email chain illustrates the misleading nature of Reorganized Debtors' Motion for Sanctions. Although Reorganized Debtors suggest in the Motion for Sanctions that Plaintiffs were dilatory in processing the stipulation of dismissal, the record actually indicates that it was Reorganized Debtors who were dilatory. Plaintiffs' counsel submitted a proposed stipulation of dismissal two days after this Court's order. Counsel for Reorganized Debtors then took four days to respond to that proposed stipulation with changes. Plaintiffs' counsel then responded to the proposed changes the very next day, and counsel for Reorganized Debtors then took another eight days to get back to Plaintiffs' counsel. The timing of these communications indicates that Plaintiffs' counsel were acting in a timely manner in trying to process the dismissal, but were hampered in those efforts by the delayed responses of counsel for Reorganized Debtors.

The Motion for Sanctions does not allege any bad faith on the part of Plaintiffs or their counsel. The Motion simply alleges that Plaintiffs failed to voluntarily dismiss the Maryland

Action and that Reorganized Debtors were forced to take action in this Court to obtain a dismissal of the Maryland Action.

**GROUNDS/BASIS FOR RELIEF**

## I.    REORGANIZED DEBTORS HAVE NOT COMPLIED WITH THE SAFE HARBOR PROVISION OF RULE 9011.

Pursuant to Rule 9011, before a party may seek sanctions, that party must first give the subject of the sanctions motion notice of the intent to seek sanctions and an opportunity to cease the allegedly sanctionable conduct.  In that regard, the Rule states in pertinent part as follows:

> The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b).

FED.R.BANKR.P. 9011(c)(1)(A).  The twenty-one-day requirement set forth in Rule 9011(c) is commonly referred to as the "safe harbor" provision.  In this Circuit, the safe harbor provision is strictly enforced.

"Rule 9011 . . . provides an opportunity for an attorney to withdraw a filing that offends the rule through a safe harbor provision.  This provision, which was added to Rule 9011 in 1997, like its counterpart added to Rule 11 in 1993, provides that a motion for sanctions may not be filed until twenty-one days after it is served, so that the other party has the opportunity to withdraw or amend the challenged paper."  In re Taub, 439 B.R. 276, 282 (E.D.N.Y. 2010).  "The 'notice' and 'reasonable opportunity to respond' requirements of Rule 9011(c) reflect the importance of according fair procedural protections to an attorney or other party facing sanction."  In Re Highgate Equities, Ltd., 279 F.3d 148, 152 (2nd Cir. 2002).

Given the clear requirements of the safe harbor provision, courts in this District have held that where the movant has failed to comply with the safe harbor requirement of Rule 9011, "it would be improper for [a court] to award sanctions, even if sanctions were an appropriate remedy." In re Hoffman, 403 B.R. 237, 243 (E.D.N.Y. 2009). In fact, in a case decided in the past month, this Court recognized that failure to comply with the safe harbor provision requires that a motion for sanctions be denied even when the conduct in question is highly egregious. In In re Obasi, 2011 WL 6336153 (S.D.N.Y. 2011), this Court addressed wide-spread misconduct of counsel which constituted a pattern of engaging in the same misconduct in numerous cases. Id. at *1-8. This Court unequivocally recognized the egregiousness of counsel's misconduct, noting that "serious issues of public policy are raised by the practices at issue here." Id. at *8. Nonetheless, because the movant had failed to comply with the safe harbor provision of Rule 9011, this Court declined to impose sanctions despite the serious and wide-spread nature of the misconduct in question. Id. at *9.

There is no question that Reorganized Debtors have failed to comply with the safe harbor provision in this case. The Motion for Sanctions was filed on December 23, 2011. The Motion for Sanctions was not served on Plaintiffs or their counsel prior to its filing, and Plaintiffs and counsel were not given any opportunity to cease the complained of conduct and/or to withdraw any complained of documents prior to the filing of the motion. Thus, Reorganized Debtors have wholly failed to comply with the safe harbor provision and their Rule 9011 motion must be denied in its entirety.

Reorganized Debtors may argue that they should not be held strictly to the safe harbor provision in this instance due to the circumstances of this case. However, this Court has previously rejected the same type of arguments.

In In re Galgano, 358 B.R. 90 (S.D.N.Y. 2007), the debtor filed a motion against his non-debtor spouse for violation of the automatic stay. Id. at 92. This Court held that the motion for violation of the automatic stay was meritless and dismissed the motion. Id. The non-debtor spouse then moved for sanctions against the debtor spouse pursuant to Rule 9011, seeking attorneys' fees and expenses incurred in responding to the meritless automatic stay motion. Id. However, this Court held that the motion for sanctions failed to comply with the safe harbor provision of Rule 9011, stating as follows:

> The safe-harbor provision in Rule 9011 is crucial because it gives a moving party an opportunity to avert sanctions by withdrawing a motion that lacks merit or an appropriate legal or factual basis. It promotes efficiency for courts and for adverse parties that would otherwise incur attorneys' fees in defending the motion. A litigant should not be rewarded for ignoring the safe-harbor provision, waiting until after the Court has disposed of the motion, and then alleging a violation of Rule 9011(b) in order to seek reimbursement of the attorneys' fees it accumulated while defending the motion. When a party attempts to use Rule 9011 in this way, the target of the sanctions motion has no opportunity to avoid liability by withdrawing the motion, and the result is completely inefficient for the Court and all parties involved.

Id. at 93. Based on this analysis, this Court held that the Rule 9011 motion would be denied due to movant's failure to comply with the safe harbor provision. Id. In so holding, this Court rejected the very types of arguments that Reorganized Debtors may make in this case.

Reorganized Debtors may attempt to argue that because this Court mentioned the possibility of sanctions in its ruling on the Motion for Injunction, the safe harbor provision is not applicable. This Court rejected a similar argument in Galgano.

In Galgano, the movant argued that she should be relived from the safe harbor requirement of Rule 9011 because the Court had indicated, when dismissing the debtor's earlier motion, that the movant was free to seek sanctions. Id. The Court rejected that argument, quoting at length from a decision in the Eastern District of New York:

> Photocircuits Corp. v. Marathon Agents, Inc., 162 F.R.D. 449, 452
> (E.D.N.Y.1995) rejected an argument [movant] makes here, that the party seeking
> sanctions was not bound by the safe-harbor provision because the court granted
> leave to move for sanctions "if they desire to do so." District Judge Arthur D.
> Spatt responded: "The granting of such leave in no way was intended, nor could
> it, circumvent the amended provisions of Rule 11. In fact, this Court could not
> prevent the defendant's counsel from making such a motion." The moving party
> also contended that the target of the sanctions motion "had many more than 21
> days to withdraw or correct the challenged material." This argument was rejected
> as "totally misplaced since the rule providing for the 21 day 'safe harbor' period
> expressly states that the 'safe harbor' period is '21 days after service of the
> motion.'" Judge Spatt also observed that the safe-harbor provision serves an
> extremely important function because it "has the salutary effect of providing
> appropriate due process considerations to sanction litigation, reducing Rule 11
> volume and eliminating abuses proscribed by this Rule." This Court denies the
> Rule 9011 Motion for the same reason that sanctions in Photocircuits was denied
> – the moving party failed to comply with the safe-harbor provision.

Galgano 358 B.R. at 102 (internal citations omitted).

Reorganized Debtors may also attempt to argue that because the conduct in question (i.e. continuation of the Maryland Action) had already ceased at the time the Motion for Sanctions was filed, they should be relieved from the obligation of complying with the safe harbor provision. Once again, this Court has previously rejected a similar argument.

In Galgano the movant argued that she should be relived from the safe harbor requirement of Rule 9011 because, given that the Court had already ruled upon the motion which was the subject of sanctions, it was not possible to give the other party twenty-one days to withdraw the motion. Galgano, 358 B.R. at 102-03. The Court rejected that argument, finding that the movant could have sought sanctions prior to obtaining a ruling if it had chosen to do so. Id. at 102-03. Given these facts, the Court held that the movant had "'failed to avail [herself] of any of these options, instead waiting until it was too late for the parties against whom sanctions were being sought to take corrective action.' As a consequence, the failure to comply 'deprived

the opposing parties the benefit of the safe harbor, which precludes this Court from imposing sanctions.'" Id. at 103.

An opinion in the Northern District of New York has reached the same conclusion.  In In re R & J Ventures, Inc., 2007 WL 4287715 (N.D.N.Y. 2007), the Court stated as follows:

> In this case, the Defendants initially requested sanctions in their opposition to Plaintiffs' motions, filed February 9, 2007, rather than filing separate motions as required by Fed.R.Bankr.P. 9011.  They did not file their motions for sanctions until July 16, 2007, some two months after Judge Littlefield signed the Orders denying the Plaintiffs' motions to amend the complaints.  The Defendants certainly had time in February 2007 to comply with the requirements of Fed.R.Bankr.P. 9011, namely serving Nash with separate motions for sanctions twenty-one days prior to filing them with the Court.  Furthermore, as suggested by the Court in In re M.A.S. Realty Corp., 326 B.R. 31 (Bankr.D.Mass.2005), the Defendants could have asked the Court to hear their motions for sanctions on shortened notice or by Order to Show Cause or could have requested that the hearing on the Plaintiffs' motions to amend be adjourned or that the Court refrain from entering an order until the Defendants' motions for sanctions could be heard. The Defendants took none of those actions.
>
> Once Judge Littlefield signed the Orders denying Plaintiffs' motions to amend their complaints based on a finding that their claim of equitable estoppel lacked merit, relief pursuant to Fed.R.Bankr.P. 9011, based on the filing of those motions, was no longer available to the Defendants.  Thus, the Court concludes that to the extent that the Defendants' motions for sanctions are based on Fed.R.Bankr.P. 9011, they are procedurally defective and must be denied as to Nash, the Napierski law firm and the Debtors.

Id. at *5 (internal citations omitted).

In this case, Reorganized Debtors chose to address the Maryland Action by filing the Motion for Injunction which sought to compel dismissal of the Maryland Action.  Then, after this Court had granted the Motion for Injunction, and the Maryland Action had been dismissed, Reorganized Debtors filed their Motion for Sanctions seeking to recover for their earlier efforts in seeking dismissal of the Maryland Action.  Such post-decision use of Rule 9011 was clearly rejected in Galgano and R & J Ventures, Inc., and should be rejected in this case as well.

Finally, Reorganized Debtors may argue that even if they can no longer seek sanctions pursuant to Rule 9011 due to their failure to comply with the safe harbor provision, this Court may still impose sanctions on its own initiative pursuant to FED.R.BANKR.P. 9011(c)(1)(B). However, the courts have recognized that when Rule 9011 sanctions are imposed on the court's own initiative, the objective reasonableness standard that normally applies under Rule 9011 is replaced by a higher standard of subjective bad faith:

> When a Rule 9011 motion is initiated by the court, the twenty-one-day safe harbor provision of Rule 9011(c)(1)(A) is not available to the party potentially subject to sanctions. The Second Circuit has held that because a sua sponte Rule 11 motion deprives a lawyer the opportunity to withdraw the challenged document, the appropriate mens rea standard is subjective bad faith.

In re Hudson, 2010 WL 3504767 at *5 (N.D.N.Y. 2010).  This higher standard applies under such circumstances because a party is being denied the protections of the safe harbor provision:

> In the typical case, Section 1927 punishes bad faith and Rule 11 punishes objective unreasonableness.  Where, however, a district court considers Rule 11 sanctions sua sponte, the test becomes one of bad faith.  This is generally because when a court considers sanctions on its own, the offending party cannot avail itself of Rule 11's 'safe harbor' and withdraw an unreasonable submission prior to judicial intervention.  **The same standard applies under Federal Rule of Bankruptcy Procedure 9011.**

In re Smith, 2011 WL 222146 at *3 (E.D.N.Y. 2011) (emphasis added).

In this case, the Motion for Sanctions does not allege any subjective bad faith on the part of Plaintiffs or their counsel, and the record does not support any such finding.  Thus, it would be inappropriate for this Court to impose Rule 9011 sanctions on its own initiative.

## II.    RULE 9011 IS NOT APPLICABLE BECAUSE THE CONDUCT IN QUESTION CONCERNS A STATE COURT ACTION AND NOT FEDERAL PLEADINGS.

Even if Reorganized Debtors had preserved their right to seek sanctions under Rule 9011 by complying with the safe harbor provision, they would still not be entitled to sanctions in this

case because the conduct that they complain of in their Motion for Sanctions does not fall within the scope of Rule 9011.

Rule 9011 specifically provides that it applies to "a petition, pleading, written motion, or other paper" that is presented to the Court. FED.R.BANKR.P. 9011(b). Moreover, Rule 9011 specifically provides that, in moving for sanctions, the movant "shall describe the specific conduct alleged to violate subdivision (b)." FED.R.BANKR.P. 9011(c)(1)(A). The decisions in this Circuit have interpreted these provisions as indicating that a Rule 9011 motion may only be based upon representations that are made in a paper that is filed with the bankruptcy court. "Rule 9011 penalizes an attorney who files 'a petition, pleading, written motion, or other paper' that does not satisfy one of the four professional standards prongs of Rule 9011(b)." In Re Highgate Equities, Ltd., 279 F.3d at 153; see also Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 96 (2nd Cir. 1997) ("A Rule 11 violation must be based on signed pleadings, motions, or other papers.").

The District Courts have recognized that Rule 9011, by its very nature, is focused upon representations that are made in papers filed with the bankruptcy court:

> Like its counterpart Fed.R.Civ.P. 11, Bankruptcy Rule 9011 serves the purpose of assuring courts and litigants that motions, pleadings, and other written submissions signed by an attorney bear the attorney's certification that he or she has acted in a manner that is objectively professional and reasonable under the circumstances.

In re Hoffman, 403 B.R. at 243 (E.D.N.Y. 2009) (internal quotation marks omitted); see also In re Taub, 439 B.R. at 281. Indeed, as this Court has recognized: "The key to Bankruptcy Rule 9011 sanctions is the certification flowing from the signature to a pleading, motion or other paper in a lawsuit." In re 680 Fifth Ave. Associates, 218 B.R. 305, 313 (S.D.N.Y. 1998).

In this case, the only documents that Plaintiffs and their counsel have filed with this Court are the administrative claim which was filed on behalf of Alla Averbukh, and the response to Reorganized Debtors' Motion for Injunction. Reorganized Debtors do not argue that either of these documents was improper, or that either of these documents contained assertions which violate the requirements of FED.R.BANKR.P. 9011(b). Nor could Reorganized Debtors reasonably make such assertions.

Reorganized Debtors take the position that claims pertaining to personal injuries must be filed as administrative claims. Thus, Reorganized Debtors cannot reasonably argue that it was unreasonable for Alla Averbukh to file an administrative claim pertaining to personal injuries. Furthermore, Reorganized Debtors have specifically indicated in their Motion for Sanctions that they are only seeking sanctions for conduct which occurred from June 2, 2011 forward. The administrative claim of Alla Averbukh was filed on September 9, 2009. Thus, this filing falls well outside the temporal scope of the Motion for Sanctions.

As for the Response to the Motion for Injunction, Reorganized Debtors can hardly fault Plaintiffs and their counsel for responding to a motion which was filed by Reorganized Debtors. Reorganized Debtors cannot file a motion in this Court and then argue that it was sanctionable for Plaintiffs and their counsel to respond to that motion. It is also important to note that the Response to the Motion for Injunction was not signed by anyone at The Kuhlman Law Firm. Thus, notwithstanding the fact that there was no impropriety in the filing of this Response, the filing cannot be used as a basis for imposing sanctions against The Kuhlman Law Firm.

In reality, Reorganized Debtors' Motion for Sanctions is not based upon the filing of any document in this Court. Rather, Reorganized Debtors are improperly using the Court's Order requiring dismissal of the Maryland Action for the wrong reason: they want this Court to

retroactively impose Rule 9011 sanctions for the past pursuit of the Maryland Action in state court.  Reorganized Debtors make this point quite clearly in their Motion for Sanctions, in which they describe the allegedly sanctionable conduct as follows:  "The Averbukhs' Continued Prosecution of the Maryland Action Against the Debtors was Frivolous."  (Motion for Sanctions, p. 11).   Reorganized Debtors further state that "the Averbukhs' continued pursuit of the [Maryland Action] constituted a 'clear violation' of this Court's earlier orders" and that the Averbukhs did not have "any reasonable basis for pursuing the [Maryland Action] further." (Motion for Sanctions, ¶¶ 36-37).  In addition, in their Proposed Order, Reorganized Debtors suggest that this Court should impose sanctions for "the commencement and prosecution of the Maryland State Court Action."  (Exhibit Q to Motion for Sanctions).

It is improper for Reorganized Debtors to seek sanctions under Rule 9011 for the continued pursuit of the Maryland Action.  As previously noted, Rule 9011 applies to representations which are made in papers that are filed in the bankruptcy court.  Obviously papers that are filed in a state court action do not meet this definition.  Thus, activity in a state court cannot serve as a basis for imposition of sanctions under Rule 9011.

Although the Second Circuit has not expressly addressed this point in the context of Rule 9011, the Second Circuit has addressed this point in the context of its counterpart, Rule 11.  In that context, the Second Circuit has held that "Rule 11, of course, does not purport to authorize sanctions for actions taken in state courts."  Brown v. Capitol Air, Inc., 797 F.2d 106, 107 (2nd Cir. 1986).  Courts in other Circuits have recognized the same point in the context of Rule 9011. For example, in In re Allnutt, 1998 WL 414248 (4th Cir. 1998), the Court held that sanctions could not be imposed under Rule 9011 based upon the filing of an action in state court.  Id. at *2. In that regard, the Court stated as follows:

> Rule 11 sanctions cannot be imposed for signing and filing a pleading in state court, when the action is later removed to federal court.  Although sanctions can be imposed based on pleadings filed in federal court after the state court action is removed, the signing of a pleading in a state court action cannot be the basis for imposition of sanctions pursuant to Rule 11.  In this case, the bankruptcy court imposed Rule 9011 sanctions on Allnutt "for filing the instant action in the Howard County Circuit Court without substantial justification."  The bankruptcy court based the sanctions on the initial filing in state court, rather than on Allnutt's pleadings filed after removal to federal court in which he continued to prosecute his claims.  Under our ruling in <u>Kirby</u>, the bankruptcy court exceeded its authority in imposing the Rule 9011 sanctions based on Allnutt's filing of the action in state court.

<u>Id.</u> at *2 (internal citations omitted).  Other courts have reached the same conclusion.  <u>See, e.g.</u>, <u>Hurd v. Ralphs Grocery Co.</u>, 824 F.2d 806, 808 (9th Cir. 1987) ("We hold that sanctions cannot be imposed under Rule 11 for filing a paper in state court."); <u>In re Duttenhefer</u>, 2009 WL 2880063 at *2 (D.N.D. 2009) ("Rule 9011 is not applicable in this case. Prior to Debtor's motion, Lindemann had not filed anything in the bankruptcy case, and Lindemann's representations to the state court cannot be the basis for a Rule 9011 motion in this case."); <u>In re Brewer</u>, 148 B.R. 346, 348 (M.D. Fla. 1992) (Holding that sanctions could not be imposed under Rule 9011 where the complained of conduct was the filing of action in state court and there was no document filed in the bankruptcy court which served as the basis of the motion for sanctions.); <u>In re Heck's Properties, Inc.</u>, 151 B.R. 739, 765 (S.D.W.Va. 1992) ("A plain reading of Bankruptcy Rule 9011 supports [movant's] position that the bankruptcy court could not properly predicate its imposition of sanctions against BI & L for actions taken in state court or upon conduct in which no pleading, petition, motion or other paper was improperly filed in bankruptcy court.").

In this case, Reorganized Debtors are seeking sanctions under Rule 9011 for conduct of Plaintiffs and their counsel which occurred in the state court (i.e. continued pursuit of the Maryland Action).  This is clearly not an appropriate basis for sanctions under Rule 9011.

Accordingly, the Motion for Sanctions must be denied in its entirety because the sanctions being sought do not fall within the scope of Rule 9011.

### III. SANCTIONS UNDER RULE 9011 ARE NOT APPROPRIATE BECAUSE PLAINTIFFS' LEGAL ARGUMENTS WERE NOT FRIVOLOUS AND WERE NOT PURSUED FOR ANY IMPROPER PURPOSE.

Even if Reorganized Debtors had complied with the safe harbor provision of Rule 9011, and even if the sanctions being pursued by Reorganized Debtors were within the scope of Rule 9011 (i.e. based upon filings in the bankruptcy court), sanctions would still not be appropriate in this case because the conduct of Plaintiffs and their counsel does not violate the standards of Rule 9011.

Rule 9011 provides that when a party presents a document to the bankruptcy court, that party is "certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief."

FED.R.BANKR.P. 9011(b).   Given that the arguments of Reorganized Debtors involve legal arguments, as opposed to factual contentions, it appears that only the requirements under subsections (1) and (2) are at issue in this case.  That is, Reorganized Debtors are alleging that

Plaintiffs and their counsel have pursued legal arguments for an improper purpose and/or that they have pursued legal arguments which are frivolous. Neither argument is well-founded.

As this Court has previously recognized, in determining whether a filing is objectively reasonable for purposes of Rule 9011, courts in the Second Circuit employ a two-part test:

> The first test is whether, after reasonable inquiry, a competent attorney could form a reasonable belief that the pleading is well grounded in fact and warranted by existing law or contains a good faith argument for the extension, modification or reversal of existing law. This clause imposes an affirmative obligation on the signer to conduct a reasonable inquiry into the viability of a pleading before it is signed. The rule is violated where it is patently clear that a claim has absolutely no chance of success. The second test is whether the pleading was interposed for an improper purpose such as harassment or delay. Under the objective standard, a court should impose sanctions whenever a pleading has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

In re 680 Fifth Ave. Associates, 218 B.R. at 313 (internal citations and punctuation omitted). "[A]ny ambiguity as to whether the basis for assertions in papers are objectively reasonable must be resolved in favor of the non-filing party and against the party seeking Rule 9011 sanctions." In re Taub, 439 B.R. at 282. "[B]ecause the signer's conduct is to be measured at the time of the signing, the court must avoid hindsight and resolve all doubts in favor of the signer." In re 680 Fifth Ave. Associates, 218 B.R. at 313 (S.D.N.Y. 1998).

While Rule 9011 imposes a standard of objective reasonableness in pursuing legal arguments, the court have cautioned that this standard should be applied with great caution. "Rule 9011 is not intended to chill zealous and professional advocacy." In re Taub, 439 B.R. at 282. "As the Second Circuit has noted, an attorney may not be sanctioned if a reasonable factual basis for the claim existed at the time the attorney signed the papers and 'where an attorney has an objectively reasonable basis to pursue a factual claim.'" Id. The Second Circuit has also held

that when a filing meets the objectively reasonable standard, the filing cannot be found to have been filed for an improper purpose.  Sussman v. Bank of Israel, 56 F.3d 450, 459 (2nd Cir. 1995); see also In re 680 Fifth Ave. Associates, 218 B.R. at 313.

In this case, although the Reorganized Debtors do not specifically allege sanctions for anything before June, 2011, it is important to retrace the Plaintiffs' conduct before June, 2011, so this Court can have a complete picture of Plaintiffs' intentions.[2]  Plaintiffs initially filed the Maryland Action before the Bankruptcy Court entered the order expunging the Plaintiff's Administrative Claim.  The Reorganized Debtors did not raise the Bankruptcy as a defense in their Answer in the Maryland Action, even though the Reorganized Debtors now claim that the Administrative Claim was expunged and discharged in its entirety.[3]  So, it was not unreasonable for Plaintiffs to continue with the Maryland Action after the Answer was filed, as Plaintiffs credibly believed that the claim was still alive.  After the Answer was filed, the parties engaged in discovery, settlement negotiations, pre-trial preparation, and the lawsuit proceeded without the hint of any impropriety.  During 2010 and 2011, the thick of the Maryland Action, Plaintiffs and their counsel continued to pursue the lawsuit based upon their good faith argument that the post-petition personal injury claims at issue in that action did not constitute "administrative claims" for purposes of the Bankruptcy and, hence, were not barred by the Bankruptcy.  In summary, the Plaintiffs have reasonable explanations for their conduct during all phases of the Maryland Action including the brief time period for which monetary sanctions are sought.  Once settlement

---

[2]     The motive driving the complained of conduct is certainly a central issue in any sanctions motion. While the Motion for Sanctions appears to raise no wrongful motive on the part of Plaintiffs, the relief sought is so severe that the existence or non-existence of motive is something that should be considered when evaluating the merits.

[3]     Reorganized Debtors offer no explanation for why they did not raise the Bankruptcy as a defense in their initial Answer in the Maryland Action.  They never amended their answer to add Bankruptcy at anytime.

negotiations broke down, Reorganized Debtors changed their defense position, and decided to use the Bankruptcy discharge as a sword. But Reorganized Debtors have not anticipated, as they should have, the Plaintiffs' right to claim reliance on a good faith belief of existing law.

In pursuing this good faith argument, Plaintiffs and their counsel relied, in part, upon analysis of that same issue in the United States District Court for the Western District of Texas. In summary, the Plaintiffs have reasonable explanations for their conduct during all phases of the Maryland Action including the summer of 2011 when Plaintiffs were allegedly notified.

As previously noted, in Keith Smith v. General Motors Corporation and Delphi Automotive Systems LLC, Civil Action No. SA-09-ca-0296 ("Smith Action"), the United States District Court for the Western District of Texas addressed the very legal argument which is at issue in this case. The Smith Action involved a claim against the same Reorganized Debtors who are pursuing the instant Motion for Sanctions and addressed the impact of the this Court's rulings in the same Bankruptcy.

In the Smith Action, Reorganized Debtors filed a motion seeking to dismiss the personal injury claims of the plaintiffs on the basis that those claims were barred by the Bankruptcy. In response to that motion, plaintiffs in the Smith Action argued in part that their claims were not barred by the Bankruptcy because the Bankruptcy orders pertained to "administrative claims," and the personal injury claims at issue in the Texas Court did not constitute administrative claims.

On April 20, 2011, the United States District Court for the Western District of Texas denied the Motion to Dismiss in the Smith Action, specifically holding as follows:

> [P]laintiff's products liability cause of action is not an "administrative claim" as defined by the bankruptcy court's order – it is neither a claim for payment of an administrative expense under § 503(b) of the Bankruptcy Code nor a claim entitled to priority pursuant to § 507(a)(1) of the Code.

36

(Exhibit V).

Given that the United States District Court for the Western District of Texas has addressed the very legal argument pursued by Plaintiffs and their counsel in the instant case, and has held in favor of that argument, it can hardly be said that the argument pursued by Plaintiffs and their counsel in the Maryland Action was frivolous. To the contrary, cases in this Circuit and other Circuits support the conduct of Plaintiffs and their counsel in pursuing a legal theory that has been approved by another court.

In <u>In re Baumblit</u>, 15 Fed.Appx. 30 (2nd Cir. 2001), the Court held that sanctions are not warranted under Rule 9011, even when a party has no controlling authority to support its legal argument, providing there is no legal authority that precludes the party's legal argument. <u>Id.</u> at 35. In <u>In re Smith</u>, 2011 WL 222146 (E.D.N.Y. 2011), the Court recognized that a party had not acted in bad faith when it had pursued a legal argument that, although ultimately rejected, had been previously recognized by an unpublished opinion in another Circuit. <u>Id.</u> at *3-4. In <u>Burns v. George Basilikas Trust</u>, 599 F.3d 673 (C.A.D.C. 2010), the Court held that a party could not be found to have proceeded in bad faith when its argument was based upon an unpublished opinion of a District Court in another Circuit. <u>Id.</u> at 677-78. In <u>Pobel v. Hans Christian Yachts, Inc.</u>, 933 F.Supp. 494 (D.Md. 1996), the Court recognized that Rule 11 sanctions are not appropriate when the non-movant has relied upon cases in other circuits in support of the legal position he is pursuing, because the existence of such other cases indicates that the non-movant's position is not frivolous. <u>Id.</u> at 496-97. In <u>Rode v. U.S.</u>, 812 F.Supp. 45 (M.D.Pa. 1992), the Court recognized that Rule 11 sanctions are not appropriate when the non-movant has relied upon cases from district courts in other circuits in support of the legal position he is pursuing,

because the existence of such other cases indicates that the non-movant did not exhibit a lack of good faith in pursuing his argument.  Id.  at 48.

In this case, Plaintiffs and their counsel reasonably relied upon a legal theory that was ultimately affirmed by the United States District Court for the Western District of Texas.  Thus, it would be improper to find that the argument being pursued by Plaintiffs and their counsel was frivolous.

Given that the legal theory being pursued by Plaintiffs and their counsel was not frivolous, Plaintiffs and their counsel cannot be found to have acted for an improper purpose. Sussman, 56 F.3d at 459; see also In re 680 Fifth Ave. Associates, 218 B.R. at 313. Furthermore, there is absolutely no evidence that Plaintiffs and their counsel pursued the Maryland Action for any improper purpose.  To the contrary, Plaintiffs pursued the Maryland Action in an effort to recover for their damages under Maryland law.  There is nothing improper about Plaintiffs attempting to avail themselves of legal remedies available to them under Maryland law.  There is absolutely no indication that Plaintiffs were pursuing the Maryland Action for purposes of harassing Reorganized Debtors, or to cause unnecessary delay or needless increase in the cost of litigation.  Thus, there is no basis for finding that Plaintiffs and their counsel acted for an improper purpose.

In short, setting aside the issue that pursuit of the Maryland Action (as opposed to filing some paper in this Court) cannot serve as a basis for sanctions under Rule 9011, the record in this action does not support a finding that Plaintiffs' pursuit of the Maryland Action was frivolous or was for an improper purpose.  Accordingly, the Motion for Sanctions should be denied in its entirety.

IV.     **REORGANIZED DEBTORS SHOULD BE ESTOPPED FROM SEEKING
        SANCTIONS GIVEN THEIR OWN FAILURE TO RAISE THE BANKRUPTCY
        AS A DEFENSE AT A MUCH EARLIER STAGE OF THE MARYLAND
        ACTION.**

As previously noted, Reorganized Debtors participated in the Maryland Action for
eighteen months before filing their Motion for Injunction which sought dismissal of the
Maryland Action.  Not only did Reorganized Debtors fully participate in the Maryland Action,
they initiated and participated in settlement discussions regarding the Maryland Action.  It was
only when those settlement negotiations broke down that Reorganized Debtors filed their Motion
for Injunction.  Given these circumstances, Reorganized Debtors should be estopped from
seeking sanctions in connection with Plaintiffs' continued pursuit of the Maryland Action.

Courts in this Circuit have recognized that a party may be estopped from pursuing
sanctions based upon their delay in addressing the allegedly sanctionable conduct.  In Matter of
Cohoes Indus. Terminal, Inc., 931 F.2d 222 (2nd Cir. 1991), the Court held that a movant who
failed to seek dismissal of a frivolous bankruptcy petition for five years, and instead participated
in the bankruptcy proceedings during that period, was estopped from seeking sanctions for the
filing of the frivolous petition.  Id. at 229-30.  In In re 72nd Street Realty Associates, 185 B.R.
460 (S.D.N.Y. 1995), the Court held that where the movant recognized that a bankruptcy claim
was not valid from the beginning, but waited nine months to challenge the claim and otherwise
cooperated in the claim proceedings during that nine months, the movant was estopped from
pursuing sanctions against the claimant.  Id. at 474.  In In re French Bourekas, Inc., 175 B.R. 517
(S.D.N.Y. 1994), this Court held that sanctions were not appropriate where the movant had
delayed seeking dismissal of a frivolous petition for fifteen months:  "UCC did not move at the
inception of the case to dismiss it as a bad faith filing.  It hardly seems appropriate that counsel
permit a petition to remain for 15 months in this court without challenging its bona fides, only to

39

move for sanctions for its filing at the time that the case is dismissed on the debtor's own

motion." Id. at 523.

    In this case, Reorganized Debtors continued to fully participate in the Maryland Action

despite their current apparent belief that it was improper to file the Maryland Action in the first

place.  Reorganized Debtors never raised the Bankruptcy as a defense.  Instead, Reorganized

Debtors participated in the Maryland Action until it became apparent that they would not be able

to settle that action on the terms that they preferred.  At that point, Reorganized Debtors raised

the Bankruptcy as a defense for the first time in their Motion for Injunction.  This was clearly a

strategic decision on the part of Reorganized Debtors, and this Court has recognized that tactical

use of Rule 9011 is not favored:

> Rule 9011, like its counterpart Federal Rule of Civil Procedure 11, plays an
> important role in maintaining the professionalism of the bar and the integrity of
> court processes.  That role is best effectuated when the Rule is invoked sparingly,
> and a request for sanctions under Rule 11 is not a tactical device.

In re Obasi, 2011 WL 6336153 at *8 (S.D.N.Y. 2011) (internal punctuation omitted); see also In

re Taub, 439 B.R. at 281.

    Even if Reorganized Debtors argue that they failed to raise the Bankruptcy at an earlier

point because they were not aware of its impact upon the Maryland Action, that argument wholly

undermines the Motion for Sanctions.  In Salkil v. Mount Sterling Tp. Police Dept., 458 F.3d 520

(6th Cir. 2006), the Court recognized that Rule 11 sanctions are not appropriate where there is a

mutual mistake of the parties regarding the non-movant's actions:  "A mistake can hardly be

characterized as unreasonable, or below some objective standard, when the mistake is made by

all parties to the litigation."  Id. at 530.  Thus, if the impact of the Bankruptcy upon the Maryland

Action was not clear, then sanctions are not warranted.

Reorganized Debtors cannot have it both ways.  They cannot argue that the Maryland Action was clearly improper from its inception, while simultaneously asserting that it was proper to delay raising this issue for the eighteen months that they participated in the Maryland Action prior to filing their Motion for Injunction.  Indeed, Reorganized Debtors were necessarily aware of the arguments in question by November of 2010 because those arguments had been fully briefed by Reorganized Debtors in the <u>Smith</u> Action in Texas.

In short, the conduct of Reorganized Debtors in stringing the Maryland Action along for eighteen months before raising the Bankruptcy as a defense serves to estop any claim by the Reorganized Debtors for sanctions.  If Reorganized Debtors truly believed that the Maryland Action was improper from its inception, they should have sought dismissal of that action immediately or, at the very least, filed Suggestions in Bankruptcy in the Maryland court.  As a result of their failure to raise the Bankruptcy as a defense in a timely fashion, Reorganized Debtors should be estopped from pursuing sanctions on the basis of those arguments.

**V.      THE AMOUNT OF SANCTIONS SOUGHT BY REORGANIZED DEBTORS IS INAPPROPRIATE BECAUSE IT INCLUDES ATTORNEYS' FEES FOR REPRESENTATION IN THE STATE COURT ACTION AND BECAUSE IT FAILS TO TAKE INTO ACCOUNT THE FAILURE OF REORGANIZED DEBTORS TO MITIGATE THEIR OWN DAMAGES.**

As noted in the immediately preceding section of this Response, the failure of Reorganized Debtors to raise the Bankruptcy as a defense for eighteen months should result in Reorganized Debtors being estopped from seeking any sanctions in this action.  However, even if this Court were to find that such conduct did not wholly estop Reorganized Debtors from seeking sanctions, this Court should find that such conduct substantially reduces the sanctions that should be imposed.

While courts in this Circuit have not directly addressed the issue, courts in other Circuits have consistently recognized that a movant's failure to mitigate its own damages is a factor that should be taken into account when determining the amount of sanctions to be awarded.   As  the Fifth Circuit observed in Thomas v. Capital Sec. Services, Inc., 836 F.2d 866 (5th Cir. 1988):

> [A]n attorney may not remain idle after a 'motion, pleading, or other paper' filed
> in violation of Rule 11 by his opponent has come to his attention.  The advisory
> committee notes stress that '[a] party seeking sanctions should give notice to the
> court and the offending party promptly upon discovering a basis for doing so.'
> Fed.R.Civ.P. 11 advisory committee notes (emphasis added).  In the same manner
> that a failure to mitigate expenses may result in a corresponding reduction in the
> amount of attorney's fees and costs awarded, so also may a failure to provide
> prompt notice of an alleged violation to the court and the offending party reduce
> the ultimate award.

Id. at 879.  The Seventh Circuit has likewise observed that one consideration in determining the amount of sanctions "is whether the party seeking fees caused the litigation to be longer than necessary.   A duty of mitigation exists, and a district court should ensure that the party requesting fees has not needlessly protracted the litigation."   Brown v. Federation of State Medical Boards of the U.S., 830 F.2d 1429, 1439 (7th Cir. 1987) (abrogated on unrelated grounds) (internal citations omitted).  Numerous other courts have reached the same conclusion. See, e.g., In re Walker, 532 F.3d 1304, 1309 (11th Cir. 2008); In re Zinni, 261 B.R. 196, 204 (6th Cir. 2001); In re Coastal Land Development Corp., 2009 WL 1515050 at *12 (S.D.Miss. 2009); In re Weaver, 307 B.R. 834, 847 (S.D.Miss. 2002); In re Smyth, 242 B.R. 352, 362 (W.D.Tex. 1999).

In this case, Reorganized Debtors are seeking attorneys' fees for all activity in the Maryland Action from June 2, 2011 forward.  Given that Reorganized Debtors failed to raise the Bankruptcy as a defense at the earliest possible point, they should not be allowed to recover

attorneys' fees for the months that they spent participating in litigation which they contend was improper from its inception.

Reorganized Debtors may well argue that the scope of sanctions they seek is appropriate because they have limited their claim to activity after they began working on a claim for dismissal. This argument fails for several reasons. First, the fact that Reorganized Debtors are now limiting their claim to the period after they first began working on the issue of dismissal (three months prior to filing the Injunction Motion) does not alter the fact that Reorganized Debtors failed to raise this issue at a much earlier stage of the case, at which time it could have been addressed much more easily. In addition, as noted previously, the letter that Reorganized Debtors began drafting on June 2, 2011 was never sent to Plaintiffs or their counsel. Thus, the efforts in crafting this letter are not reasonably included in the amount of sanctions being sought. Finally, and most important, a large portion of the sanctions being sought by Reorganized Debtors involve attorney work that has nothing to do with obtaining a dismissal of the Maryland Action.

Although Reorganized Debtors have unilaterally selected June 2, 2011 as the beginning date for sanctions, they have included in their claim for sanctions all activity that occurred in the Maryland Action after that date, regardless of whether that activity has any connection with seeking a dismissal. For example, they seek to recover attorneys' fees for time that they spent engaged in discovery and other routine tasks of litigation. If Reorganized Debtors had raised the issue of the Bankruptcy at the beginning of the case, and immediately sought dismissal on that basis, there would never have been any need for Reorganized Debtors to employ attorneys' to work on discovery and other similar tasks. Thus, it is Reorganized Debtors' own failure to raise

the Bankruptcy as a defense at an earlier date which resulted in the attorneys' fees that they are seeking to recover.

Plaintiffs and their Counsel still contend that it would be inappropriate to impose any sanctions in this case, monetary or otherwise.  However, if this Court were to impose some monetary sanctions, pursuant to the above-referenced facts and authorities this Court should limit the amount of sanctions to attorneys' fees that were directly related to the filing of the Motion for Injunction.  That motion was the motion that sought dismissal of the Maryland Action, and it is Plaintiffs' alleged refusal to dismiss the Maryland Action that serves as the basis for the Motion for Sanctions.  Thus, it is proper to limit any sanctions to amounts spent in pursuing that motion.

## VI.    REORGANIZED DEBTORS HAVE FAILED TO ADEQUATELY ALLEGE OR ESTABLISH ANY BASIS FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927.

Although Reorganized Debtors' Motion for Sanctions is brought pursuant to Rule 9011, Reorganized Debtors suggest in a footnote that it would also be proper to impose sanctions pursuant to 28 U.S.C. § 1927.  (Motion for Sanctions, p. 10, n.2).  Imposition of sanctions under 28 U.S.C. § 1927 would be improper for several reasons.

First, Reorganized Debtors have not properly stated a claim for sanctions under 28 U.S.C. § 1927.  The Second Circuit has held that "'due process requires that courts provide notice and an opportunity to be heard before imposing any kind of sanctions.'"  Nuwesra v. Merrill Lynch, Fenner & Smith, Inc., 174 F.3d 87, 92 (2nd Cir. 1999).  "In particular, 'a sanctioned attorney must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter.'"  Id.

Although Reorganized Debtors briefly mention 28 U.S.C. § 1927 in a footnote in their Motion for Sanctions, Reorganized Debtors do not engage in any analysis of this Section or

provide any explanation of how any specific conduct of Plaintiffs' counsel warrants sanctions under this Section. Accordingly, this issue is not properly before this Court and sanctions may not be awarded pursuant to 28 U.S.C. § 1927.

In addition to their general failure to address the application of 28 U.S.C. § 1927, Reorganized Debtors fail to allege facts which could serve as a basis for sanctions under 28 U.S.C. § 1927. Courts in this Circuit have consistently held that in order to impose sanctions under 28 U.S.C. § 1927, there must be a finding that the sanctioned party acted with subjective bad faith in engaging in the sanctioned conduct. See, e.g., In re Galgano, 358 B.R. at 103; In re R & J Ventures, Inc., 2007 WL 4287715 at *3; Monte v. Ernst & Young LLP, 330 F.Supp.2d 350, 366 (S.D.N.Y. 2004). In this case, there is no evidence of subjective bad faith on the part of Plaintiffs' counsel. Counsel was not attempting to mislead, trick or deceive the Reorganized Debtors about the impact of their own bankruptcy on the Maryland action. Indeed, the Motion for Sanctions makes no reference to "bad faith." Thus, there is no possible basis to impose sanctions under 28 U.S.C. § 1927.

Given that Reorganized Debtors have not alleged a claim for sanctions under 28 U.S.C. § 1927, and have not alleged or established any facts that could support a claim for sanctions under 28 U.S.C. § 1927, it would clearly be improper for this Court to entertain sanctions pursuant to 28 U.S.C. § 1927.

## CONCLUSION

**WHEREFORE** the Averbukhs respectfully request that this Court enter its Order denying the Motion for Sanctions in its entirety and grant whatever additional relief the Court deems appropriate.

Respectfully Submitted:

 /s/  Dimitri L. Karapelou
Dimitri L. Karapelou, Esq.
Law Offices of Dimitri L. Karapelou, LLC
1600 Market Street, 25th Floor
Philadelphia, PA 19103

Chad C. Lucas, Esq.
Bradley D. Kuhlman, Esq
The Kuhlman Law Firm, LLC
1100 Main Street, Suite 2550
Kansas City, MO 64105
 (816)799-0330

**Date: January 6, 2012**