# EXHIBIT B

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| DPH HOLDINGS CORP., *et al.*, | ) | Case No. 05-44481 (RDD) |
| | ) | Jointly Administered |
| Reorganized Debtors. | ) | |

## **AFFIDAVIT**

STATE OF MISSOURI      )
                                          ) ss.
COUNTY OF JACKSON      )

I, Bradley Dean Kuhlman, state as follows:

1.      I have been licensed to practice law since 1994.

2.      I am licensed in Missouri, Illinois and the Western District of Missouri.

3.      I am lead trial counsel for Alesander and Vladimir Averbukh in the Maryland action.

4.      My practice for the past 15 years has focused primarily on automotive product's defect litigation.

5.      Neither Reorganized Debtors nor its counsel ever provided to me or my firm any analysis by way of email, memorandum or letter of its argument in support its motion for Injunctive Relief prior to the filing of the motion on August 30, 2011.

6.      I have no recollection of any oral communication with Reorganized Debtors' counsel wherein the specific basis for its motion was discussed prior to August 30, 2011.

7.      I do not believe there was any communication between counsel regarding the bankruptcy's effect on the Maryland action before August 30, 2011 other than the short emails

exchanged on June 3 and 6, 2011, attached as Exhibit H to Reorganized Debtor's Motion for Sanctions.

8.      Since the filing of Reorganized Debtors' Motion for Sanctions I have spoken with David Weinstein, counsel for Reorganized Debtors in Maryland action and he confirmed that there was no oral conversation, e-mail, letter or memorandum following his e-mail of June 3, 2011 discussing the bankruptcy or its effect on the Maryland action.

9.      The argument that Vladimir Averbukh and Alesander Averbukh should be treated as having joined in the Alla Averbukh Claim given Maryland law regarding wrongful death claims was never raised with Plaintiffs prior to August 30, 2011.

10.      The argument that the wrongful death claim of Vladimir Averbukh and Alesander Averbukh constituted an "administrative claim" which was subject to this Court's orders regarding administrative claims was never raised with Plaintiffs prior to August 30, 2011.

11.      Reorganized Debtors or its counsel never asked me to voluntarily dismiss the Maryland action.

12.      The Maryland action was not pursued against the Reorganized Debtors entities for any improper purpose, such as to harass or to cause unnecessary delay or needless increase cost of litigation.

13.      It is and was my belief that the claims asserted in the Maryland action were warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

14.      Prior to the emails of June 3 and June 6, 2011 I was aware of a similar product liability lawsuit ongoing against the Reorganized Debtors in the United States District Court for the Western District of Texas San Antonio Division captioned <u>Keith Smith v. General Motors</u>

Corporation and Delphi Automotive Systems LLC, Civil Action No. SA-09-ca-0296. A copy of
the complaint is attached hereto as **Attachment A**.

15.     Counsel for Reorganized Debtors in the Smith case is the same as that in the
Averbukh Maryland matter, Weinstein, Tippetts & Little LLP.

16.     On November 2, 2010 Reorganized Debtors filed a motion in the trial court
seeking dismissal of the Smith claims for failing to file a timely notice of administrative claim.
Motion attached as **Attachment B**. I was provided with a copy of these pleadings on November
3, 2010.

17.     In its opposition to Reorganized Debtors' motion, Plaintiff Smith claimed both
that notice was inadequate and the post-petition personal injury claims are not "Administrative
Claims" under the bankruptcy.  Response is attached as **Attachment C,** and Reorganized
Debtors' Reply is attached as **Attachment D** and Plaintiff's Response to Reorganized Debtors'
Reply is attached as **Attachment E**.

18.     On April 20, 2011, United States District Court Judge Orlando Garcia denied
Reorganized Debtors' Motion and held that "plaintiff's products liability cause of action is not an
"administrative claim" as defined by the bankruptcy court's order- it is neither a claim for
payment of an administrative expense under Section 503(b) of the Bankruptcy Code nor a claim
entitled to priority pursuant to Section 507(a)(1) of the Code." Order attached as **Attachment F**.

19.     As a result of my communications with counsel for plaintiffs in the Smith Action,
I was aware that counsel in a highly similar action were pursuing the legal argument that
personal injury claims do not constitute administrative claims which are barred by the
Bankruptcy.

20.    Upon information and belief, the <u>Smith</u> case settled after Judge Garcia denied Reorganized Debtors' motion to dismiss.

21.    I relied upon the <u>Smith</u> Order and legal analysis in part as a basis for continued prosecution of the Maryland action and for opposition to the original Injunctive Motion.

22.    Once the United States District Court for the Western District of Texas issued its order in the <u>Smith</u> Action, finding that an action for personal injury did not constitute an administrative claim for purposes of the Bankruptcy, I believed that I was obligated to pursue this theory on behalf of my clients in the Maryland Action.

23.    I believed, and still believe, that the failure to pursue a legal argument that had recently been recognized by another District Court, and which was favorable to my clients, would have constituted both malpractice and a violation of my ethical obligation to zealously represent my clients.

24.    The Reorganized Debtors never raised the bankruptcy as a defense to the Maryland action.  It was not asserted nor raised in their answer filed on February 12, 2010. Answer attached as **Attachment G**.

25.    The Reorganized Debtors never filed a "Suggestion of Bankruptcy," or any similar document in the Maryland Action that referenced the Bankruptcy.

26.    The Reorganized Debtors proceeded in the Maryland action for 18 months without once filing any pleading that raised the Bankruptcy as a potential defense.

27.    In response to Plaintiffs' Interrogatories on June 11, 2010, Reorganized Debtors

provided the following response to Interrogatories No. 23:

---

23.    Do you have any insurance agreements which will indemnify you, in whole or in
part, for any judgment Plaintiffs may obtain against you in this lawsuit?  If so, please state for
each such agreement:

a.    The name and address of the insurer issuing the agreement;
b.    The policy number;
c.    The effective dates of the agreement;
d.    The limit of liability; and

e.    Attach a copy of the declaration page or certificate of coverage of each such
insurance agreement to these interrogatories.

**ANSWER:**

DPH-DAS, LLC is self-insured for product liability claims up to $5.0 million per
occurrence.  In addition, there are policies of excess insurance covering product liability claims
with limits in excess of any potential settlement or reasonably foreseeable judgment in this case.

---

28.    Plaintiffs never intended to execute against any immune estate assets.

29.    Plaintiffs pursued the Maryland Action for purposes of obtaining non-estate assets

such as insurance.

30.    Reorganized Debtors' continued participation in the case supported Plaintiffs'

reasonable assumption that there was some insurance coverage available.

31.    On August 22, 2011, Reorganized Debtors instituted settlement negotiations with

Plaintiffs, through me, by requesting a settlement demand from Plaintiffs.  It was after these

negotiations broke down that the motion for Injunctive Relief was filed. E-mails discussing the

negotiations are attached as **Attachment H**.

32.    I have never been sanctioned by any court.  I have not had a motion for sanctions

ever filed against me.  I have never been the subject of a disciplinary investigation, complaint or

proceeding.  I have been admitted pro-hac vice in numerous states over the past 16 years without incident.

33.    I am the sole partner in a two lawyer firm in downtown Kansas City, Missouri.

34.    I never intended to knowingly violate any of this Court's Orders.

35.    Reorganized Debtors did not submit a copy of the Motion for Sanctions to Plaintiffs and their counsel in advance of filing that motion.

36.    Reorganized Debtors did not indicate to Plaintiffs or their counsel that they had any intention of seeking sanctions prior to the filing of the Motion for Sanctions.

37.    The first indication that Plaintiffs and their counsel received from Reorganized Debtors that Reorganized Debtors intended to seek sanctions was received after this Court had issued its Injunction Order on October 4, 2011.


FURTHER AFFIANT SAYETH NOT.

Bradley Dean Kuhlman


Subscribed and sworn to before me this 6th day of January in the year 2012.

Notary Public

My Commission Expires:

7-26-2015

PAIGE BURKS
MY COMMISSION EXPIRES
July 26, 2015
NOTARY SEAL
#11520849
CLAY COUNTY
NOTARY PUBLIC, STATE OF MISSOURI

# ATTACHMENT A

# ATTACHMENT A

CAUSE NO. 2009-CI-03675

| | | |
|---|---|---|
| KEITH SMITH | § | IN THE DISTRICT COURT |
| VS. | § | 285th JUDICIAL DISTRICT |
| GENERAL MOTORS CORPORATION | § | |
| AND DELPHI AUTOMOTIVE SYSTEMS LLC. | § | BEXAR COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW KEITH SMITH, Plaintiff, filing and serving this Petition, whereby he would show:

I.

Discovery

Discovery should be conducted under Level 3 of TEX.R.CIV.P.190.1.

II.

Parties

The Plaintiff KEITH SMITH, is a resident of Bexar County, Texas, and the accident which is the basis of this suit occurred in Bexar County, Texas.

The Defendant GENERAL MOTORS CORPORATION is a corporation, organized and formed under the laws of the State of Delaware, doing business in Texas. Service of process can be accomplished by service to its Registered Agent for Service, CT Corporation Systems, 350 N. St Paul, Dallas, Texas 75201.

At all times pertinent to the occurrence made the basis of this lawsuit, the Defendant GENERAL MOTORS CORPORATION, hereinafter referred to as "GMC" or "Defendant," was engaged in the business of designing, testing, manufacturing, marketing, distributing and/or selling consumer goods, including automobiles, and placing them into the stream of commerce to be sold to the general public, including individual consumers. The Defendant was at all times pertinent to this Petition, engaged in trade and commerce in the State of Texas and the Plaintiff was seeking and or utilizing goods and services from the Defendant. All actions and omissions of the Defendant alleged herein were committed by

employees, agents, servants, and/or vice-principals of the Defendant and/or at the direction of, with the authority of and/or ratified by, vice-principals of the Defendant.

The Defendant DELPHI AUTOMOTIVE SYSTEMS LLC., hereinafter referred to as DELPHI, is a foreign limited liability company, organized and formed under the laws of the State of Delaware, doing business in Texas. Service of process can be accomplished by service to its Registered Agent for Service, CT Corporation Systems, 350 N. St Paul, Dallas, Texas 75201.

III.

On or about March 20, 2007, in Bexar County, Texas, KEITH SMITH was the single occupant, driving a 2000 Oldsmobile Intrigue GX, Vehicle Identification No. 1G3WH52H5YF101708, owned by his friend, Cheryl Sattiewhite. He was properly positioned and properly seat belted, driving below the posted speed limit. Plaintiff was southbound on IH35 in San Antonio, Texas, exiting in the left lane of a two lane elevated exit ramp onto Loop 410S, when the vehicle hit a pool of water and started to drift to the right. Mr. Smith applied his brakes and turned the steering wheel to the left. The Intrigue did not respond to the braking and steering input and it went over the side of the ramp, went down the incline, crossed over the southbound lanes of IH-35 and finally crashed into the concrete barrier dividing the northbound and southbound lanes of IH-35. His front air bag did not deploy.

IV.

Due to design and/or manufacturing defects in the vehicle and its safety systems; at the time of the motor vehicle accident, the 2000 Oldsmobile Intrigue GX being driven by Plaintiff, KEITH SMITH, was unsafe in foreseeable driving conditions and it was uncrashworthy in foreseeable crash events.

Additionally, the Defendants failed to use reasonable care when designing the vehicle for handling in foreseeable driving conditions and in foreseeable crash events.

V.

The 2000 Oldsmobile Intrigue GX being driven by Plaintiff at the time of the occurrence in question was designed, manufactured, marketed and/or otherwise placed in the stream of commerce by GMC. The components of the restraints system which failed to deploy the air bag were designed, developed and manufactured by GMC and DELPHI.

VI.

As a direct, proximate and producing cause of the Defendants acts, omission and design defects, KEITH SMITH suffered serious, incapacitating and permanent injuries including paraplegia. His injuries are permanent in nature and have had a serious affect on his health and well-being. In connection with such injuries, Plaintiff has suffered severe physical pain and mental anguish in the past and is suffering at the present, and in all reasonable probability will continue to suffer for the rest of his life. This includes the personal incapacity. He would show that as a direct, proximate and producing cause of his personal injuries, he has been caused to incur lost wages, doctor bills, hospital bills, and other medical expenses in the past, are incurring the same at the present time and will, in all reasonable probability, continue to incur the same in the future.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be found jointly and severally liable to the Plaintiff for the acts alleged and in an amount in excess of $100,000.00; Defendants be found liable for pre-judgment and post-judgment interest in the greatest amount allowed by law; costs of court be taxed against Defendants; and the Plaintiff be granted all other relief, in equity or in law, general or specific, to which he may show himself entitled.

Respectfully Submitted:

EDWARD R. LYTLE
5511 IH10 West, Suite 2
San Antonio, Texas 78201
(210) 924-9294
(210) 921-1973 Facsimile


BY:_____
        EDWARD R. LYTLE
        SBN: 12746300

ATTORNEY FOR PLAINTIFF

# ATTACHMENT B

# ATTACHMENT B

IN THE UNITED STATED DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KEITH SMITH | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. SA-09ca0296 |
| | § | |
| v. | § | |
| | § | |
| GENERAL MOTORS CORPORATION, | § | JURY DEMANDED |
| AND DELPHI AUTOMOTIVE SYSTEMS | § | |
| LLC | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT'S MOTION TO DISMISS

Defendant DPH-DAS LLC ("DPH"), files this Motion to Dismiss because Plaintiff failed to file an administrative claim in the Bankruptcy Court.

1.    On October 8 and 14, 2005, Delphi Corporation ("Delphi") and certain of its domestic affiliates (including without limitation, Delphi Automotive Systems LLC ("DAS LLC") and collectively referred to herein as the "Debtors,") filed petitions for reorganization relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2.    On December 10, 2007, in the chapter 11 cases In re Delphi Corporation, et al., Case No. 05-44481 (RDD) (Bankr. S.D.N.Y.) (n/k/a In re DPH Holdings Corp., et al.), the Debtors filed their first amended joint plan of reorganization (Docket No. 11386)[1] (the "Plan") and related disclosure statement (the "Disclosure Statement") (Docket No. 11388) and on January 25, 2008, the Bankruptcy Court entered an order (Docket No. 12359) (the "Confirmation Order") confirming the Plan, as modified (the "Confirmed Plan"). The Confirmation Order became final on February 4, 2008.

3.      On June 16, 2009, in the chapter 11 cases <u>In re Delphi Corporation, et al.</u>, Case

No. 05-44481 (RDD) (Bankr. S.D.N.Y.) (n/k/a <u>In re DPH Holdings Corp., et al.</u>), the Debtors

filed the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain

Affiliates, Debtors And Debtors-In-Possession (As Modified) (Docket No. 17030) (the

"Modified Plan").  The Modified Plan made certain modifications to the terms of the Confirmed

Plan.  To comply with the requirements of 11 U.S.C. §§ 1125 and 1127, on the same date, the

Debtors filed a supplement to the Disclosure Statement (the "Supplement").

4.      In connection with the Debtors' Modified Plan and the Supplement, the Debtors

sought an order from the Bankruptcy Court, among other things, approving the Supplement as

containing adequate information, as defined under 11 U.S.C. § 1125, authorizing the solicitation

of votes on the Modified Plan, and establishing a bar date for the submission of claims asserting

administrative expense priority under 11 U.S.C. § 503(b).  In connection therewith, and after

notice and a hearing, on June 16, 2009, the Bankruptcy Court entered that certain Order (A)(I)

Approving Modifications To Debtors' First Amended Plan Of Reorganization (As Modified)

And Related Disclosures And Voting Procedures And (II) Setting Final Hearing Date To

Consider Modifications To Confirmed First Amended Plan Of Reorganization And (B) Setting

Administrative Expense Claims Bar Date And Alternative Transaction Hearing Date  (Docket

No. 17032) (the "Modification Procedures Order").  Pursuant to paragraphs 38 and 41 of the

Modification Procedures Order:

> any party that wishes to assert an administrative claim under 11 U.S.C. § 503(b)
> for the period from the commencement of these cases through June 1, 2009 shall
> file a proof of administrative expense (each, an "Administrative Expense Claim
> Form") for the purpose of asserting an administrative expense request, including
> any substantial contribution claims (each, an "Administrative Expense Claim" or
> "Claim") against any of the Debtors. July 15, 2009 at 5:00 p.m. prevailing Eastern
> time shall be the deadline for submitting all Administrative Expense Claims (the

---

[1]   All references herein to the Bankruptcy Court Docket can be found at www.dphholdingsdocket.com

"[Initial] Administrative Expense Bar Date") for the period from the commencement of these cases through June 1, 2009.

Modification Procedures Order ¶38.

any party that is required but fails to file a timely Administrative Expense Claim Form shall be forever barred, estopped and enjoined from asserting such claim against the Debtors, and the Debtors and their property shall be forever discharged from any and all indebtedness, liability, or obligation with respect to such claim.

Modification Procedures Order ¶41.

5.      As provided in paragraph 42 of the Modification Procedures Order, notice of the Initial Administrative Expense Bar Date was published in the Detroit Free Press, the New York Times (national edition), the Wall Street Journal (national, European, and Asian editions), and USA Today (worldwide) as required by paragraph 43 of the Modification Procedures Order (see applicable affidavits of publication at Docket Nos. 17407-17411).

6.      On July 30, 2009, the Bankruptcy Court entered its Order Approving Modifications Under 11 U.S.C. § 1127(b) to (I) First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession, as Modified and (II) Confirmation Order (Docket No. 12359) (Docket No. 18707) (the "Modification Approval Order"), which confirmed the Debtors' Modified Plan.

7.      On October 6, 2009, the "Effective Date" of the Modified Plan occurred and the Modified Plan was substantially consummated. On that date, the Debtors emerged from chapter 11 as reorganized entities (the "Reorganized Debtors") and many of the corporate entities changed their corporate names.[2]

8.      Paragraph 47 of the Modification Approval Order provides in part (emphasis added):

requests for payment of an Administrative [Expense] Claim (other than as set forth in the Modified Plan or otherwise contemplated by the Master Disposition Agreement, i.e., for such claims arising on or after June 1, 2009) must be filed, in substantially the form of the Administrative Claim Request Form attached as Exhibit 10.5 to the Modified Plan, with the Claims Agent and served on counsel for the Debtors and the Creditors' Committee no later than 30 days notice of after the Effective Date is filed on the docket of the Chapter 11 Cases [November 5, 2009].[3] **Any request for payment of an Administrative Claim pursuant to this paragraph that is not timely filed and served shall be disallowed automatically** without the need for any objection from the Debtors or the Reorganized Debtors.

Modification Approval Order ¶ 47 (emphasis added).

9.    In compliance with paragraph 47 of the Modification Approval Order, the notice of Effective Date was filed on October 6, 2009 with the Bankruptcy Court in the chapter 11 cases (Docket No. 18958) (the "Effective Date Notice"). Upon the occurrence of the Effective Date on October 6, 2009, the bar date for filing Administrative Expense Claims for claims arising on or after June 1, 2009 was established as November 5, 2009 (the "Final Administrative Expense Bar Date"). As provided in paragraph 47 of the Modification Approval Order (and quoted above), any administrative claim for which a party has failed to timely file and serve a request for payment is automatically disallowed without the need for any objection from the Debtors or the Reorganized Debtors.

10.    Pursuant to the Modifications Procedures Order, Plaintiff was required to file an Administrative Expense Claim. Plaintiff is asserting personal injury claims that arose after the Debtors' petition date. Assertion of this type of claim falls squarely into the types of claims that were required to be filed by the Initial Administrative Expense Date as set forth in paragraph 38 of the Modification Procedures Order.

---

[2]  On the Effective Date, the reorganized company Delphi Automotive Systems LLC filed the relevant documents in the state of Delaware to change its corporate name to DPH-DAS LLC, a copy of which is attached, Exhibit 1.
[3]  The Effective Date of the Plan was October 6, 2009, which means Bar Date for Administrative Claims that arose after June 1, 2009 is November 5, 2009.

11.    As noted on the attached affidavit of Dean Unrue (attached as Exhibit 2), Plaintiff failed to file an Administrative Expense Claim by the Initial Administrative Claims Bar Date and thus is barred from asserting any claim that arose prior to June 1, 2009, against any of the Debtors including, without limitation Delphi Automotive Systems LLC, n/k/a DPH-DAS LLC.

12.    As noted on the attached affidavit of Dean Unrue, Plaintiff also failed to timely file an Administrative Expense Claim on or prior to the Final Administrative Expense Bar Date and thus is barred from asserting any claim that arose on or after June 1, 2009 against any of the Debtors, including without limitation Delphi Automotive Systems LLC, n/k/a DPH-DAS LLC.

13.    Because Plaintiff failed to file an Administrative Expense Claim before the applicable bar dates, pursuant to the Bankruptcy Court's order, any administrative expense claim that may have been asserted by Plaintiff shall be disallowed automatically unless Plaintiff has otherwise petitioned the Bankruptcy Court for relief. Accordingly, this action should be dismissed with prejudice.

14.    Moreover, pursuant to the discharge of the Debtors contained in Article 11.2 of the Modified Plan, Plaintiff may only receive a distribution on his claim as provided by the Modified Plan. Specifically, under 11 U.S.C. § 1141(d) and pursuant to the terms of the Modification Approval Order and the Modified Plan, upon the Effective Date, all claims against the Debtors that arose on or prior to the Effective Date were discharged. Specifically, Article 11.2 of the Modified Plan provides that:

> the distributions and rights that are provided in [the Modified] Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims and Causes of Action, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to [the Modified] Plan on account of such Claims, rights, and Interests, including, but not limited to, Claims and Interests that arose before the Effective Date

Modified Plan Art. 11.2.

      15.    In addition, upon the effectiveness of the Modified Plan, an injunction was

imposed.  Specifically, the Modified Plan and the Modification Approval Order contain a

permanent injunction against, among other things, the commencement or continuation of any

action to recover against any claim against the Debtors that arose on or prior to October 6, 2009.

Article 11.14 of the Modified Plan provides that (emphasis added):

> the satisfaction, release, and discharge pursuant to [Article XI of the Modified
> Plan] **shall act as an injunction against any Person commencing or continuing
> any action, employment of process, or act to collect, offset, or recover any
> Claim, Interest, or Cause of Action satisfied, released, or discharged under
> [the Modified] Plan to the fullest extent authorized or provided by the
> Bankruptcy Code** . . .

Modified Plan Art. 11.14 (emphasis added).  Similarly, paragraph 22 of the Modification

Approval Order provides that:

> the Debtors and all Persons shall be precluded and permanently enjoined on and
> after the Effective Date from (a) commencing or continuing in any manner any
> Claim, action, employment of process, or other proceeding of any kind with
> respect to any Claim, Interest, Cause of Action, or any other right or Claim
> against the Reorganized Debtors, which they possessed or may possess prior to
> the Effective Date, (b) the enforcement, attachment, collection, offset, recoupment,
> or recovery by any manner or means of any judgment, award, decree, order, or
> otherwise with respect to any Claim, Interest, Cause of Action, or any other right
> or Claim against the Reorganized Debtors, which they possessed or may possess
> prior to the Effective Date, (c) creating, perfecting, or enforcing any encumbrance
> of any kind with respect to any Claim, Interest, Cause of Action, or any other
> right or Claim against the Reorganized Debtors, which they possessed or may
> possess prior to the Effective Date, and (d) asserting any Claims, Interests, or
> Causes of Action that are satisfied, discharged, released, or subject to exculpation
> hereby or by the Modified Plan.

Modification Approval Order ¶ 22.  Accordingly, the permanent injunction in the

Modified Plan and Modification Approval Order prohibits the commencement or

continuation of any action to recover any claim against the Debtors that arose on or prior

to October 6, 2009, absent relief from the Bankruptcy Court.  Accordingly, this action should be dismissed.

> Respectfully submitted,
>
> WEINSTEIN TIPPETTS & LITTLE LLP
>
> By: /s/ David B. Weinstein
>     David B. Weinstein
>     Federal Bar No. 4329
>     Katheryne R. MarDock
>     Federal Bar No. 930998
>     7660 Woodway, Suite 500
>     Houston, Texas 77063
>     Ph.  (713) 244-0800
>     Fx. (713) 244-0801
>
> **ATTORNEYS FOR DEFENDANT**
> **DPH-DAS LLC (f/k/a Delphi Automotive**
> **Systems LLC)**

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2010, a copy of the foregoing was served in accordance with the Federal Rules of Civil Procedure on the following counsel of record:

Edward R. Lytle
5511 IH10 West, Suite 2
San Antonio, Texas 78201

Stephen E. Van Gaasbeck
5511 IH-10 West, Suite 2
San Antonio, TX 78201

> /s/ David B. Weinstein

# Delaware

PAGE 1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF

DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT

COPY OF THE CERTIFICATE OF AMENDMENT OF "DELPHI AUTOMOTIVE

SYSTEMS LLC", CHANGING ITS NAME FROM "DELPHI AUTOMOTIVE

SYSTEMS LLC" TO "DPH-DAS LLC", FILED IN THIS OFFICE ON THE SIXTH DAY OF

OCTOBER, A.D. 2009, AT 12:38 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF

THE AFORESAID CERTIFICATE OF AMENDMENT IS THE SIXTH DAY OF

OCTOBER, A.D. 2009, AT 11:59 O'CLOCK P.M.

2944910   8100

090905892

You may verify this certificate online
at corp.delaware.gov/authver.shtml

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 7567964

DATE: 10-06-09

---

**EXHIBIT**

1

tabbies

10/26/2009    12:32    SKADDEL LLC → 913027393673                                    NO. 863    002

```
                                                     State of Delaware
                                                     Secretary of State
                                                  Division of Corporations
                                              Delivered 12:38 PM 10/06/2009
                                                 FILED 12:38 PM 10/06/2009
                                           SRV 090905892 - 2944910 FILE
```

CERTIFICATE OF AMENDMENT

TO

CERTIFICATE OF FORMATION

OF

DELPHI AUTOMOTIVE SYSTEMS LLC

Pursuant to Section 18-202 of the
Delaware Limited Liability Company Act

1.    The name of the limited liability company is Delphi Automotive Systems LLC (the "Company").

2.    The Certificate of Formation of the Company is hereby amended to change the name of the Company to DPH-DAS LLC.

3.    Accordingly, Article 1, of the Certificate of Formation shall, as amended, read as follows:

"1.    The name of the limited liability company is DPH-DAS LLC."

4.    This Certificate of Amendment shall become effective at 11:59 PM on October 6, 2009.

IN WITNESS WHEREOF, the undersigned authorized person has executed this Certificate of Amendment this 6 day of October, 2009.

Delphi Automotive Systems LLC

By: _____
Name: David Sherbin
Title: Authorized Person]

IN THE UNITED STATED DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KEITH SMITH | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. SA-09ca0296 |
| | § | |
| v. | § | |
| | § | |
| GENERAL MOTORS CORPORATION, | § | JURY DEMANDED |
| AND DELPHI AUTOMOTIVE SYSTEMS | § | |
| LLC | § | |
| | § | |
| Defendants. | § | |

### Affidavit of Dean Unrue

| | |
|---|---|
| STATE OF MICHIGAN | § |
| | § |
| COUNTY OF OAKLAND | § |

BEFORE ME, the undersigned authority, on this day personally appeared Dean R. Unrue

who, on his oath, did depose and state as follows:

1.      My name is Dean R. Unrue, I am over eighteen (18) years of age, of sound mind, have never been convicted of a felony or crime involving moral turpitude, and am fully competent to make this Affidavit. I have personal knowledge of the facts stated in this Affidavit, and they are true and correct.

2.      I have been employed as Claims Administrator and A/R global Process Leader for Delphi Automotive Systems, LLC since 10/6/09. Prior to that, I served in the same position for DPH-DAS LLC (formerly known as Delphi Automotive Systems LLC).

3.      Among the duties in my position, I am familiar with the bankruptcy records of DPH-DAS LLC, indicating which persons and/or entities filed administrative claims against DPH-DAS LLC. I have reviewed such records in connection with giving this Affidavit.

4.      Based on my review of the relevant records, Plaintiff failed to file an Administrative Expense Claim by the Initial Administrative Claims Bar Date of June 1, 2009. Further, Plaintiff failed to file an Administrative Expense Claim on or prior to the Final Administrative Expense Bar Date of November 5, 2009.



EXHIBIT
2

Further affiant sayeth naught.

_____
Dean R. Unrue
Claims Administrator and Global
A/R Process Leader

SWORN AND SUBSCRIBED TO before me the undersigned authority on this 27th day of October, 2010, to certify which witness my hand and seal of office.

_____
Notary Public in
Oakland County, Michigan

My commission expires: Dec 15, 2010

BARBARA BURNSTEEL
NOTARY PUBLIC, STATE OF MI
COUNTY OF OAKLAND
MY COMMISSION EXPIRES Dec 15, 2010
ACTING IN COUNTY OF OAKLAND

ND: 4843-5107-7639, v. 1

# ATTACHMENT C

# ATTACHMENT C

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

KEITH SMITH

vs.                                            Case No.: SA-09-CV-0296-OG

GENERAL MOTORS CORPORATION
AND DELPHI AUTOMOTIVE SYSTEMS LLC.

## PLAINTIFF'S RESPONSE TO DEFENDANT DELPHI
## AUTOMOTIVE SYSTEMS LLC'S MOTION TO DISMISS

The Plaintiff, Keith Smith, files this response to the Motion to Dismiss filed by

Delphi Automotive Systems LLC.  (herein "Delphi").  The Plaintiff responds by stating

that the motion should be denied on its merits and also for failure to provide factual

information as required by local rule CV–7(b).

### Objections

**Violation of Local Rules:**

The Plaintiff objects to Delphi's motion to dismiss for failure to comply with local

rule CV–7(b), which specifically requires that "when allegations of fact not appearing in

the record are relied upon in support of a motion, a summary of the facts relied upon

with supporting affidavits and other pertinent documents then available shall be filed in

an appendix, served and filed with the motion."

Delphi makes numerous unsupported references to documents, orders, plans

and other facts related to its former bankruptcy proceeding in reliance upon these

unsupported factual allegations to request the Court to dismiss the Plaintiff's claims.

The only factual support provided for its Motion to Dismiss is an affidavit by a Delphi

employee which states that an Administrative Expense Claim had not been filed by

Keith Smith in the bankruptcy proceeding.  However, as will be demonstrated, that is an immaterial fact.

## Delphi's Misrepresentation of Facts:

The Plaintiff's reliance upon Local Rule CV–7(b) is justified due to Delphi's record of misrepresenting significant and material facts in this litigation.

On June 25, 2010, Delphi's counsel informed Mr. Smith's counsel that the Plaintiff's case should be dismissed because it was based upon a claim which arose prior to Delphi's filing of bankruptcy, which took place on October 8, 2005.  However, this was incorrect.  The Plaintiff's accident was not a "pre-petition" claim.  The Plaintiff's accident did not occur until March 20, 2007, more than a year and five months after Delphi filed for bankruptcy.  Plaintiff's counsel informed Delphi of this error. (See Exhibit 1, Affidavit of Edward R. Lytle).

Having been informed of this factual error, Delphi sent another letter renewing its demand for the Plaintiff to dismiss his case, this time based upon a claim that Mr. Smith had received notice of a requirement that he file an administrative claim, specifically representing that "direct notice of the administrative claim bar dates was sent to your client, who then failed to take appropriate action."  (See Exhibit 1).  This representation is also false.  Mr. Smith received no such notice from Delphi or anybody representing Delphi, even though Delphi and its counsel had knowledge of his claim since at least March 17, 2009.  (See Exhibit 2, affidavit of Keith Smith).

Additionally, Paragraph 2 of the affidavit filed by Delphi seems to be internally inconsistent in discussing the affiant's purported employment background.

### Denial on the Merits

The motion to dismiss for failure to file an Administrative Claim in bankruptcy

court should be denied on the merits.

### Plaintiff Not a Party:

Mr. Smith was not a party to the bankruptcy proceeding.  As noted above his

claim did not accrue until his paralyzing accident occurred on March 20, 2007.  He

could not have filed a claim and could not have been a party to the bankruptcy prior to

that.  Additionally, the automatic stay of proceedings clearly apply only to lawsuits which

had been or could have been filed before the bankruptcy petition. Bankruptcy Code,

Title 11, § 362, regarding the Automatic Stay describes the legal actions which are

subject to the Stay as follows:

> (1) the commencement or continuation, including the issuance or
> employment of process, of a judicial, administrative, or other action
> or proceeding against the debtor that was or could have been
> commenced before the commencement of the case under this title,
> or to recover a claim against the debtor that arose before the
> commencement of the case under this title;

### No Notice:

Further, while Mr. Smith was not an original party to the bankruptcy proceeding,

once Delphi had notice of his claim, it never took any action to bring him into the

bankruptcy proceeding, nor provided him with any notice of any actions which are

required to be taken by him.  (See Exhibit 2).

Lack of notice is significant to Delphi's claim that this lawsuit should be

dismissed, as evidenced by its original misrepresentation that Mr. Smith had been given

notice of the requirements of the alleged Modified Plan referenced in Delphi's motion. It

is even more significant that it now entirely neglects the issue of direct notice in its

motion and in its supporting affidavit.  This means that Delphi is now aware that it failed

to provide the notice that it once claimed was a reason that Mr. Smith should dismiss

his claim.

Delphi's newest claim to having given notice now rests solely on the unsupported

factual claim that the bar date was "published in the Detroit Free Press, the New York

Times (national edition), the Wall Street Journal (national, European, and Asian

editions), and USA Today (worldwide)."

Notice is a fundament aspect of the Constitutional requirement of Due Process.

"Many controversies have raged about the cryptic and abstract words of the Due

Process Clause, but there can be no doubt that, at a minimum, they require that

deprivation of life, liberty or property by adjudication be preceded by notice and

opportunity for hearing appropriate to the nature of the case." *Mullane v. Central

Hanover Bank & Trust Co.,* 339 U.S. 306 (1950), 70 S.Ct. 652, 94 L.Ed. 865.

*Mullane* recognized "Notice by publication" as being inherently inadequate to

accomplish the requirements of Due Process.

> "It would be idle to pretend that publication alone, as prescribed
> here, is a reliable means of acquainting interested parties of the
> fact that their rights are before the courts. It is not an accident that
> the greater number of cases reaching this Court on the question
> of adequacy of notice have been concerned with actions founded
> on process constructively served through local newspapers.
> Chance alone brings to the attention of even a local resident an
> advertisement in small type inserted in the back pages of a
> newspaper, and, if he makes his home outside the area of the
> newspaper's normal circulation, the odds that the information will
> never reach him are large indeed. The chance of actual notice is
> further reduced when, as here, the notice required does not even
> name those whose attention it is supposed to attract, and does
> not inform acquaintances who might call it to attention. In
> weighing its sufficiency on the basis of equivalence with actual
> notice, we are unable to regard this as more than a feint."

*Mullane*.

*However, Mullane* recognized that in <u>limited circumstances</u> notice might be

proper to <u>unknown or future</u> claimants, by publication.  However, it also warned notice

by publication does NOT meet the fundamental requirements of due process when the

claimant is <u>known</u>.

> "As to known present beneficiaries of known place of residence,
> however, notice by publication stands on a different footing.
> Exceptions in the name of necessity do not sweep away the rule
> that, within the limits of practicability, notice must be such as is
> reasonably calculated to reach interested parties. Where the
> names and post office addresses of those affected by a
> proceeding are at hand, the reasons disappear for resort to
> means less likely than the mails to apprise them of its pendency."

Delphi and its attorneys had known the name and address of Mr. Smith and the

nature of his claim on March 17, 2009, which according to Delphi's motion, is several

months before the decision regarding a bar date for administrative claims was made.

Thus, Delphi's claim to the right to dismissal based upon notice by publication is

erroneous.

## Not An Administrative Claim:

Even if Delphi's motion was not infirm due to its failure to support its allegations

with acceptable proof, and even if the Plaintiff had received a notice of a requirement to

file "Administrative Claims" by a certain date, his claim is not an administrative claim.

Mr. Smith's claim is a product liability claim for damages related to the failure of Delphi's

airbag sensor system in any GM vehicle, which resulted in his permanent paralysis.

Delphi's Motion to Dismiss references a December 10, 2007, First Amended

Joint Plan of Reorganization which was confirmed on January 25, 2008, by order of the

Bankruptcy Court which became final on February 4, 2008.

The First Amended Joint Plan of Reorganization referred to by Delphi defines administrative claims on page 4 as follows:

> 1.2    "Administrative Claim" means a Claim (other than the GM Administrative Claim) for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including, but not limited to, the DIP Facility Revolver Claim, the DIP Facility First Priority Term Claim, the DIP Facility Second Priority Term Claim, the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estates and operating the business of the Debtors, including wages, salaries, or commissions for services rendered after the Petition Date, Professional Claims, all fees and charges assessed against the Estates under chapter 123 of title 28, United States Code, and all Allowed Claims that are to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under section 546(c)(2)(A) of the Bankruptcy Code. (See Exhibit 1).

The Plan references §503 (b) Of the Bankruptcy Code to describe the types of expenses which are included in the term "Administrative Claim."  Reference to section 503(b) reveals that personal injury claimants are not included in the definition of who will be paid administrative claims.  Delphi's counsel may have an administrative claim for defending personal injury lawsuits during a period which occurred after the bankruptcy petition was filed, but the personal injury claimants themselves do not.

It should also be noted that inclusion under section 503 in the Delphi bankruptcy plan is not enough to qualify a demand as an "Administrative Claim."  The claimant must also be "entitled to priority pursuant to section 507(a)(1) of the bankruptcy code.  Section 507(a)(1) certainly does not include personal injury claims in the description of claims "entitled to priority."

## CONCLUSION

In conclusion, Delphi's Motion to Dismiss should be denied because it fails to

provide supporting facts for its allegations; is meritless because the Plaintiff was not a

party to the bankruptcy proceeding; the Plaintiff did not receive notice of any purported

requirement that he file a claim; and, his claim is not an "Administrative Claim" subject

to any purported "bar date."

DATED:        November 15, 2010

                              Respectfully Submitted,

                              EDWARD R. LYTLE
                              Attorney at Law
                              SBN: 12746300
                              5511 IH-10 West, Suite 2
                              San Antonio, Texas 78201
                              (210) 924-9294
                              (210) 921-1973 Facsimile

                              LAW OFFICE OF STEPHEN E. VAN GAASBECK
                              5511 IH-10 West, Suite 2
                              San Antonio, Texas 78201
                              (210) 924-9294
                              (210) 921-1973 Facsimile

BY: _____
            STEPHEN E. VAN GAASBECK
            State Bar No. 20445400

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2010, a true and correct copy of the above

and foregoing instrument has been served in accordance with the Federal Rules of Civil

Procedure, on the following counsel of record:

David B. Weinstein
Katheryn R. MarDock
WEINSTEIN TIPPETTS & LITTLE LLP
7660 Woodway, Suite 500
Houston, Texas 77063
Fax No. (713) 244-0801
*Attorney for Defendant Delphi Automotive Systems, LLC*

STEPHEN E. VAN GAASBECK

# ATTACHMENT D

# ATTACHMENT D

IN THE UNITED STATED DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KEITH SMITH | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. SA-09ca0296 |
| | § | |
| v. | § | |
| | § | |
| GENERAL MOTORS CORPORATION, | § | JURY DEMANDED |
| AND DELPHI AUTOMOTIVE SYSTEMS | § | |
| LLC | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendant DPH-DAS LLC, f/k/a Delphi Automotive Systems LLC, files this reply (the "Reply") in support of its Motion to Dismiss[1] and requests that this Court dismiss these proceedings in deference to the injunction issued by the United States Bankruptcy Court for the Southern District of New York presiding over the DPH-DAS LLC bankruptcy case (the "Bankruptcy Court"). In its response to the Motion to Dismiss, the Plaintiff does not challenge the validity of the injunction contained in the Modified Plan and Modification Approval Order (the "Plan Injunction"). Rather, the Plaintiff claims that (a) he did not receive actual notice of the bankruptcy proceeding, the Initial Administrative Claims Bar Date or the Final Administrative Claims Bar Date, and (b) that Plaintiff's product liability claim is not subject to the Bankruptcy Court's orders. To the contrary, although Defendant concedes that it did not mail the bar date notices to Plaintiff's address, the Plan Injunction still applies to Plaintiff. Accordingly, to continue with this action, Plaintiff must seek leave from the Bankruptcy Court to file a late claim and have the Bankruptcy Court lift the Plan Injunction.

---

[1] Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the Motion to Dismiss.

1.    **Plan Injunction Applies To Plaintiff.**  As discussed in the Motion to Dismiss, on October 6, 2009, the Effective Date of the Modified Plan, an injunction was imposed, including a permanent injunction against the continuation of any action to recover against the Debtors that arose on or prior to October 6, 2009.  The instant action for personal injuries resulting from allegedly defective automotive components manufactured by DPH-DAS LLC is a proceeding with respect to a "Claim" or "Cause of Action" as defined in the Modified Plan, which the Plaintiff possessed prior to the Effective Date.  Indeed, the underlying accident occurred on March 20, 2007 and Plaintiff filed the lawsuit on March 4, 2009.  Moreover, the underlying allegedly defective product giving rise to the lawsuit was manufactured before the commencement of DPH-DAS LLC's bankruptcy proceeding because the vehicle in question was a year 2000 model.[2]  Thus, the alleged defective product was manufactured, the underlying accident occurred, and the lawsuit against DPH-DAS LLC was filed well before October 6, 2009 and, accordingly, this lawsuit is expressly enjoined by the Plan Injunction.

Indeed, as stated by the United States Supreme Court in Celotex v. Edwards, "persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree

---

[2]    DPH-DAS takes no position in this Reply on whether, purely from a bankruptcy law perspective as opposed to a product liability law viewpoint, the Plaintiff's claim arose prior to Delphi filing for bankruptcy, in which case the underlying claim would be a prepetition claim, or whether such claim arose after Delphi filed for bankruptcy, in which case the claim may be an administrative priority claim under 11 U.S.C. § 503(b).  In its response, Plaintiff contends that "personal injury claimants are not included in the definition of who will be paid administrative claims."  However, 11 U.S.C. § 503(b) does not contain an exhaustive list of specific claims which may qualify as administrative expenses.  See, e.g., In re Chateaugay Corp., 102 B.R. 335, 353 (Bankr. S.D.N.Y. 1989) ("a Court is not limited to the specific examples of claims explicitly set for [sic] in § 503(b) as giving rise to an administrative expense."); In re DeSardi, 340 B.R. 790, 799 (Bankr. S.D. Tex. 2006) ("Administrative priority may be granted to appropriate claims that are not explicitly enumerated in the categories."); 4 Collier on Bankruptcy ¶ 503.01 at p. 203-8 (16th rev. ed. 2009) ("administrative expenses are generally those that are incurred by the estate after entry of the order for relief.").  DPH-DAS reserves any and all of its rights, however, to assert that the underlying claim, purely from a bankruptcy law perspective as opposed to a product liability law viewpoint, arose prior to Delphi's bankruptcy filing in October 2005, and therefore, would only be a prepetition claim.  Regardless of when the claim arose, however, the claim is subject to the Plan Injunction.

until it is modified or reversed . . . ." 514 U.S. 300, 306 (1995) (quoting GTE Sylvania, Inc. v.

Consumers Union of United States, Inc., 445 U.S. 375, 386 (1980)).

    2.    **Plaintiff Must Seek Leave From Bankruptcy Court To File A Late Claim**

**And To Lift Plan Injunction.** Defendant concedes that it did not mail the notices of the Initial

Administrative Claims Bar Date or the Final Administrative Claims Bar Date to the Plaintiff's

address.[3]  However, Delphi's bankruptcy was widely publicized from its inception in 2005, and

the case's progress was thoroughly reported on throughout the financial crisis of 2008-2009

when its former parent, General Motors, also filed for bankruptcy.  Reasonable due diligence in

preparing Plaintiff's Complaint would have placed Plaintiff on notice that his target defendant

was in bankruptcy and that he should understand his claims in that context.

    It is of critical significance that plaintiff's counsel, Stephen Van Gaasbeck, was

undeniably personally aware -- before he filed his notice of appearance May 2009 on behalf of

Keith Smith in this case -- of DPH-DAS LLC's (then known as Delphi Automotive Systems

LLC) bankruptcy, as well as the bankruptcy of its parent, then known as Delphi Corporation.

This prior awareness came from, at a minimum, his involvement in the a product liability case

against Delphi styled Aimee Banden, et al. v. General Motors Corp., et al, case number 06-CA-

---

[3]    Whether or not the Defendant mailed the notice of the Initial Administrative Claims Bar Date or the
Final Administrative Claims Bar Date to the Plaintiff's address is not necessarily determinative of
whether the Plaintiff received sufficient notice to discharge his claim.  For example, the claim may be
a prepetition claim of a creditor who was unknown at the time of the prepetition bar date and hence
publication notice is likely sufficient.  See Tulsa Prof'l Collection Servs., Inc. v. Pope, 485 U.S. 478,
490 (1982) ("For creditors who are not 'reasonably ascertainable,' publication notice can suffice.").
Moreover, the Defendant may have had actual knowledge of the relevant bar date.  See In re Arch
Wireless, Inc., 534 F.3d 76, 86 n.7 (1st Cir. 2008) (noting in dicta that "a case could arise in which,
although the required notices were not sent, the creditor in fact had actual knowledge 'not merely of
the general pendency of the . . . reorganization, but of each particular development therein to which
formal notice would be required.' 494 F.2d at 99 n.11. In such a case, we might conclude that the
creditor's due process rights were not violated, despite the debtor's failure to comply with notice rules,
because the creditor had actual knowledge of the critical dates about which he could expect to be
notified.").

1364-10-G in the Circuit Court of Seminole County, Florida. The details and relevance of Mr. Van Gaasbeck's involvement in <u>Banden</u> can be reserved for a later day, if necessary. Regardless, it was incumbent upon Plaintiff Keith Smith's counsel to file a notice of appearance with the Bankruptcy Court, so that they would be added to the applicable service lists. Other attorneys representing individuals with personal injury claims filed notices of appearance to be apprised of Bankruptcy Court proceedings.

Irrespective of the notice issue, however, if Plaintiff wishes to bring a product liability claim against DPH-DAS LLC, he must seek leave from the Bankruptcy Court to file a late claim and have the Bankruptcy Court lift the Plan Injunction. By continuing to pursue his claim in this Court, and arguing that the Bankruptcy Court's Plan Injunction does not apply or need not be followed, Plaintiff is engaging in an improper collateral attack on the Plan Modification Order; an action that the Supreme Court found impermissible in <u>Celotex, supra</u>. As the Supreme Court clearly established in its <u>Celotex</u> opinion, Plaintiff should address any complaint it has with the Plan Injunction in the Bankruptcy Court. Thus, until Plaintiff takes action in the Bankruptcy Court, this Court should honor the Plan Injunction and dismiss these proceedings.

3.    **No Affidavit Is Required For Documents And Orders Cited In Motion.**

Plaintiff also argues that Defendant is in violation of local rule CV-7(b), which requires that "[w]hen allegations of fact not appearing in the record are relied upon in support of a motion, a summary of the facts relied upon with supporting affidavits and other pertinent documents then available shall be filed in an appendix, served and filed with the motion." However, under Fed. R. Evid. 201(b), it is proper for this Court to take judicial notice that certain documents were filed and orders were entered in DPH-DAS LLC's bankruptcy proceedings because these are adjudicative facts not subject to reasonable dispute, in that they are capable of

accurate and ready determination by resorting to sources whose accuracy cannot reasonably be questioned. See also 5-Star Mgmt., Inc. v. Rogers, 940 F.Supp. 512, 518 (E.D.N.Y.1996) (taking judicial notice of pleadings in other lawsuits). This Court can take judicial notice of the Modification Approval Order entered on July 30, 2009 (Docket No. 18707) by the Bankruptcy Court for the Southern District of New York, In re DPH Holdings Corp., et. al., Case No. 05-44481 (RDD), a copy of which is attached hereto as Exhibit A. A certified copy of the Modification Approval Order can be provided upon request of this Court.

Accordingly, Plaintiff is enjoined from proceeding with litigation to address product liability claims against DPH-DAS LLC without first seeking recourse in the Bankruptcy Court. Pursuant to the various orders of the Bankruptcy Court, the underlying dispute should be resolved in the US District Court if and only to the extent that Plaintiff obtains relief from the Bankruptcy Court's Plan Injunction. If Plaintiff fails to pursue relief in the Bankruptcy Court and continues to litigate his action in this Court, DPH-DAS LLC reserves its rights to bring a motion in the Bankruptcy Court to enforce the Plan Injunction. For these reasons, DPH-DAS LLC requests that this Court grant its Motion to Dismiss.

Respectfully submitted,

WEINSTEIN TIPPETTS & LITTLE LLP

By:  /s/ David B. Weinstein
　　　David B. Weinstein
　　　Federal Bar No. 4329
　　　Katheryne R. MarDock
　　　Federal Bar No. 930998
　　　7660 Woodway, Suite 500
　　　Houston, Texas 77063
　　　Ph.  (713) 244-0800
　　　Fx. (713) 244-0801

**ATTORNEYS FOR DEFENDANT DPH-DAS LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2010, a copy of the foregoing was served in

accordance with the Federal Rules of Civil Procedure on the following counsel of record:

Edward R. Lytle
5511 IH10 West, Suite 2
San Antonio, Texas 78201

Stephen E. Van Gaasbeck
5511 IH-10 West, Suite 2
San Antonio, TX 78201


/s/ David B. Weinstein

# ATTACHMENT E

# ATTACHMENT E

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

KEITH SMITH

vs.                                        Case No. SA-09-CV-0296-OG

GENERAL MOTORS CORPORATION
AND DELPHI AUTOMOTIVE SYSTEMS LLC.

### PLAINTIFF'S RESPONSE TO DELPHI'S REPLY IN
### SUPPORT OF ITS MOTION TO DISMISS

The Plaintiff Responds to Delphi's Reply Supporting its Motion to Dismiss,

reaffirming that the Motion to Dismiss should be denied on its merits and also for

repeated persistent violations of local rule CV–7(b).

**Objections**

**VIOLATION OF LOCAL RULES:**

Once again Delphi has resorted to attempting to support its demand for relief by

using factual statements which are unsupported in the record or by affidavit in violation

of  local rule CV–7(b).   Specifically, Delphi makes unsupported allegations regarding

Plaintiff's counsel's knowledge of bankruptcy proceedings involving Delphi.   Because

these allegations are unsupported and in violation of local rules, the Plaintiff objects to

those allegations stating that they should not be considered in ruling on Delphi's motion

other than for the purpose of sanctioning Delphi for persistent violation of the rules.

**1.    "ADMINISTRATIVE CLAIM" ISSUE**

Delphi's argument supporting dismissal is based upon the claim that the Plaintiff

did not file an "Administrative Claim" as required by the bankruptcy court's "Modified

Plan," prior to a November 9, 2009, deadline.  The Plaintiff's Response to the Motion to

Dismiss proved that personal injury claims were not included in the definition of

"Administrative Claims" in the Modified Plan.

Delphi's response to the Plaintiff's proof is relegated to *footnote 2* of its Reply. It

argues that "a court is not limited to the specific examples of claims explicitly set (sic)

for in §503(b) ,,, ", (relying upon opinions of two bankruptcy courts).  Leaving aside the

issue of whether bankruptcy court opinions trump the specific requirements of the

Bankruptcy Code, Delphi loses sight of the fact that the Delphi bankruptcy court did not

include any additional definitions of what constitutes an "Administrative Claim" in the

Modified Plan. The Court specifically defined an "Administrative Claim" as an

"administrative expense of a kind specified in section 503(b) of the Bankruptcy Code

**and** entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code ... ."

(Modified Plan, "Article I,, Definitions, Rules of Interpretation, and Computation of Time

", Section B, 1.4).   Nowhere does the Modified Plan define personal injury claims as

Administrative Claims.

It should be noted that Delphi did not even attempt to refute the Plaintiff's

argument that in order to qualify as an "Administrative Claim" under the Delphi

bankruptcy court's definition, the claim must qualify not only as a §503 claim <u>but also</u>

<u>must be a priority claim</u> as defined in §507(a)(1) of the Bankruptcy Code.  Clearly the

Plaintiff's claim does not fit within the definition of a "priority claim."  For this reason

alone, Delphi's allegation that the Plaintiffs personal injury claim is barred as an

"Administrative Claim" is without merit.

## 2.    NOTICE ISSUE

Similarly, Delphi's Reply does not refute the Plaintiffs argument regarding lack of notice. On the contrary, the Reply concedes that Delphi did not send him notice as provided by law. (Rule 2002 FRBP). Just as important, the Modified Plan reveals that Delphi actually represented to the Court that it had mailed notices to all known claimants, which we know by its own admission to have been a false representation to the Court. It did not mail a notice to Mr. Smith even though it had full knowledge of his claim and address . (See Modified plan, pages 7 and 8).[1]

Delphi seeks to excuse its failure to provide notice to a known claimant by citing case law that allows service by publication for prepetition claimants who are unknown. This provides no comfort to Delphi because as noted in the Plaintiffs Response, Mr. Smith's claim did not accrue until after the bankruptcy petition was filed. Delphi's Reply also failed to address the Supreme Court's holding that when a claimant's name and address are known, due process requires that they be provided direct notice. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950), 70 S.Ct. 652, 94 L.Ed. 865.[2]

Delphi also spent a significant portion of its Reply making unsupported allegations that the Plaintiff had actual knowledge of Delphi's bankruptcy through one of

---

[1] Transmittal And Mailing Of Materials; Notice. Due, adequate, and sufficient notice of the Disclosure Statement Supplement and Modified Plan and of the Modification Approval Hearing, as well as all deadlines for voting on or filing objections to the Modified Plan, has been given to all known holders of Claims and Interests in accordance with Fed. R. Bankr. P. 2002(b), 3017(d), (e), and (f) and the procedures set forth in the Modification Procedures Order.

[2] "As to known present beneficiaries of known place of residence, however, notice by publication stands on a different footing. Exceptions in the name of necessity do not sweep away the rule that, within the limits of practicability, notice must be such as is reasonably calculated to reach interested parties. Where the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency."

his attorneys.  Its significant that this unsupported allegation is also deficient in the

specifics of just what Mr. Smith's counsel is supposed to have known.  And, it should

not be missed that immediately after rushing in to throw unsupported innuendos into the

record, Delphi just as quickly attempted to run away from its actions by stating "the

details and relevance of Mr. Van Gaasbeck's involvement in *Banden* can be reserved

for a later day, if necessary."   However, as these allegations are unsupported and in

violation of local rules, they should be disregarded and the Plaintiff will not respond to

them.

Delphi makes the claim that the Plaintiff is making an impermissible collateral

attack upon the bankruptcy court's order.  This is incorrect for several reasons.  First,

the Plaintiff is not collaterally attacking an order, he is responding to Delphi's false claim

that his lawsuit was subject to the order as an "Administrative Claim."  However, even if

this were a collateral attack, a citizen is allowed to collaterally attack a judgment or

order depriving him of property without due process (in this case, notice).  A judgment

in violation of due process is not merely voidable, it is void and subject to collateral

attack. *(Mullane* supra).

## CONCLUSION

In conclusion, Delphi's Motion to Dismiss should be denied because it fails to

provide supporting facts for its allegations; is meritless because the Plaintiff was not a

party to the bankruptcy proceeding; the Plaintiff did not receive notice of any purported

requirement that he file a claim; and, his claim is not an "Administrative Claim" subject

to any purported "bar date."

DATED:        November 29, 2010

Respectfully Submitted,

EDWARD R. LYTLE
Attorney at Law
SBN: 12746300
5511 IH-10 West, Suite 2
San Antonio, Texas 78201
(210) 924-9294
(210) 921-1973 Facsimile

LAW OFFICE OF STEPHEN E. VAN GAASBECK
5511 IH-10 West, Suite 2
San Antonio, Texas 78201
(210) 924-9294
(210) 921-1973 Facsimile


BY: _____
          STEPHEN E. VAN GAASBECK
          State Bar No. 20445400

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2010, a true and correct copy of the above

and foregoing instrument has been served in accordance with the Federal Rules of Civil

Procedure, on the following counsel of record:

David B. Weinstein
Katheryn R. MarDock
WEINSTEIN TIPPETTS & LITTLE LLP
7660 Woodway, Suite 500
Houston, Texas 77063
Fax No. (713) 244-0801
*Attorney for Defendant Delphi Automotive Systems, LLC*


_____
STEPHEN E. VAN GAASBECK

# ATTACHMENT F

# ATTACHMENT F

**FILED**

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS,
### SAN ANTONIO DIVISION

APR 2 0 2011

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

KEITH SMITH,                              §
    Plaintiff,                        §
                                      §
                                      §
v.                                        §        CAUSE NO. SA-09-CA-296-OG
                                      §
GENERAL MOTORS CORPORATION, and           §
DELPHI AUTOMOTIVE SYSTEMS, LLC,           §
    Defendants.                       §

## O R D E R

Defendant Delphi moves to dismiss plaintiff's case against it. The motion will be denied.

First, despite knowing of plaintiff's suit, Delphi concedes that it did not mail him notice of either

the initial or final administrative claims bar dates. Notice by publication does not suffice when

the claimant is known. <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 318 (1950).

Second, plaintiff's products liability cause of action is not an "administrative claim" as defined

by the bankruptcy court's order— it is neither a claim for payment of an administrative expense

under § 503(b) of the Bankruptcy Code nor a claim entitled to priority pursuant to § 507(a)(1) of

the Code.

Delphi's motion to dismiss (docket no. 26) is DENIED.

SIGNED this _____ day of _____, 2011.

_____
ORLANDO L. GARCIA
UNITED STATES DISTRICT JUDGE

# ATTACHMENT G

# ATTACHMENT G

## IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

VLADIMIR AVERBUKH, Individually and
as Personal Representative of the Estate of
Boris Averbukh

And

ALESANDER AVERBUKH, Individually,

      Plaintiffs,

And

ALLA AVERBUKH, Individually,

      Use Plaintiff

v.

ENTERPRISE RAC COMPANY OF
MARYLAND, LLC

And

ENTERPRISE LEASING COMPANY

And

ENTERPRISE RENT-A-CAR COMPANY

And

DELPHI CORPORATION

And

DELPHI AUTOMOTIVE SYSTEMS LLC

And

THE ROCKMONT MOTOR COMPANY

And

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

CASE NO. CAE09-35924

ACON, THORNTON
& PALMER
L.L.P.
CAPITAL OFFICE PARK
6411 IVY LANE
SUITE 500
GREENBELT, MARYLAND
20770-1411
(301) 345-7001
FAX (301) 345-7075

ALLA AVERBUKH                              §
                                          §
Defendants.                               §

## ORIGINAL ANSWER OF DPH HOLDINGS CORPORATION (FORMERLY KNOWN AS DELPHI CORPORATION) AND DPH-DAS LLC (FORMERLY KNOWN AS DELPHI AUTOMOTIVE SYSTEMS LLC) TO PLAINTIFFS' COMPLAINT

DPH Holdings Corporation (formerly known as Delphi Corporation) and DPH-DAS LLC (formerly known as Delphi Automotive Systems LLC) ("Delphi") file their Original Answer to Plaintiffs' Complaint and state as follows:

### FIRST DEFENSE

Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

Delphi generally denies all liability for the allegations contained in each and every Count

of Plaintiffs' Complaint directed against Delphi, pursuant to Rule 2-323(d).

### THIRD DEFENSE

Plaintiffs' Complaint may, depending on the outcome of further investigation and discovery, be barred by the sole and/or contributory negligence of Plaintiffs.

### FOURTH DEFENSE

As of the time of Plaintiffs' alleged injury, Delphi's products were produced, manufactured, sold and/or distributed in accordance with the then existing state-of-the-art technology.

### FIFTH DEFENSE

Plaintiffs' claims may, depending on the outcome of further investigation and discovery,  be barred by misuse.

ACON, THORNTON
& PALMER
L.L.P.
CAPITAL OFFICE PARK
6411 IVY LANE
SUITE 500
GREENBELT, MARYLAND
20770-1411
(301) 345-7001
FAX (301) 345-7075

ND: 4827-7000-0645, v. 1

## SIXTH DEFENSE

Delphi asserts, depending on the outcome of further investigation and discovery, that the intervening and superseding negligence or intentional actions of persons or entities over whom Delphi had no authority or control may have been the cause of Plaintiffs' injuries and losses.

## SEVENTH DEFENSE

Plaintiffs' Complaint may, depending on the outcome of further investigation and discovery, be barred by the Plaintiffs' assumption of known risks.

## EIGHTH DEFENSE

At the time that the product was sold by Delphi, the product met all industry standards.

## NINTH DEFENSE

Plaintiffs' causes of action may, depending on the outcome of further investigation and discovery, be barred, in whole or in part, to the extent Plaintiffs' damages, if any, were brought about or caused by a post-manufacture alteration, modification, or change in the condition of the product.

## TENTH DEFENSE

Delphi denies any and all allegations of strict liability and product defect made against it.

## ELEVENTH DEFENSE

Delphi denies any and all allegations of failure to warn made against it.

## TWELFTH DEFENSE

Delphi denies any and all allegations of breach of implied warranty made against it.

ACON, THORNTON
& PALMER
L.L.P.
CAPITAL OFFICE PARK
6411 IVY LANE
SUITE 500
GREENBELT, MARYLAND
20770-1411
(301) 345-7001
FAX (301) 345-7075

ND: 4827-7000-0645, v. 1

## THIRTEENTH DEFENSE

Delphi is entitled to a set-off for the amount of any monies paid to Plaintiffs in settlement of claims with other parties and non-parties.

## FOURTEENTH DEFENSE

Delphi asserts any and all other offsets and/or credits allowed under the statutory and common law of the State of Maryland.

## FIFTEENTH DEFENSE

Delphi asserts Plaintiffs' claims for damages may, depending on the outcome of further investigation and discovery, be barred in whole or in part, whether under the doctrine of failure to mitigate damages.

## SIXTEENTH DEFENSE

Plaintiffs' Complaint may, depending on the outcome of further investigation and discovery, be barred by the statute of limitations.

## SEVENTEENTH DEFENSE

Delphi reserves the right to amend this answer.

Delphi, having fully answered Plaintiffs' Complaint, prays that Plaintiffs' Complaint be dismissed with prejudice with costs to be borne by the Plaintiffs.

Respected submitted,

BACON, THORNTON & PALMER, L.L.P.

*Patricia m. Thornton /smo*

Patricia Thornton
Maryland Bar No. TH3284
6411 Ivy Lane Suite 500
Greenbelt , Maryland 20770
Telephone:    301.345.7001
Facsimile:    301.345.7075

ACON, THORNTON
& PALMER
L.L.P.
CAPITAL OFFICE PARK
6411 IVY LANE
SUITE 500
GREENBELT, MARYLAND
20770-1411
(301) 345-7001
FAX (301) 345-7075

ND: 4827-7000-0645, v. 1

## DEMAND FOR JURY TRIAL

DPH Holdings Corporation (formerly known as Delphi Corporation) and DPH-DAS LLC (formerly known as Delphi Automotive Systems LLC) demand a trial by jury on all issues.

*Patricia M. Thornton/smo*
Patricia M. Thornton

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 2ⁿᵈ day of February, 2010, a copy of the foregoing Original Answer of DPH Holdings Corporation (formerly known as Delphi Corporation) and DPH-DAS LLC (formerly known as Delphi Automotive Systems LLC) to Plaintiffs' Complaint was mailed, postage prepaid, first class to:

## COUNSEL FOR PLAINTIFFS

Gregory G. Hopper
Salsbury Clements Bekman Marder & Adkins, L.L.C.
300 West Pratt Street Suite 450
Baltimore, Maryland 21201
Telephone:    (410) 539-6633
Facsimile:    (410) 625-9554

*Patricia M. Thornton/smo*
Patricia M. Thornton

ϧACON, THORNTON
& PALMER
L.L.P.
CAPITAL OFFICE PARK
6411 IVY LANE
SUITE 500
GREENBELT, MARYLAND
20770-1411
(301) 345-7001
FAX (301) 345-7075

ND: 4827-7000-0645, v. 1

# ATTACHMENT H

# ATTACHMENT H

## Brad Kuhlman

---

**From:**          Brad Kuhlman
**Sent:**          Tuesday, August 23, 2011 1:37 PM
**To:**            David Weinstein (David.Weinstein@wtllaw.com)
**Subject:**       Averbukh

David- I am authorized to settle all claims versus the Delphi defendants for $900,000.  Brad

Bradley D. Kuhlman
**The Kuhlman Law Firm, LLC**
1100 Main Street,  Suite #2550
Kansas City, MO 64105
Telephone: (816) 799-0330
Facsimile:  (816)799-0336
Brad@Kuhlman-Law.com

*NOTE: The Missouri Bar Disciplinary Counsel requires all Missouri lawyers to notify all recipients of e-mail that (1) e-mail communication is not a secure method of communication, (2) any e-mail that is sent to you or by you may be copied and held by various computers it passes through as it goes from me to you or vice versa, (3) persons not participating in our communication may intercept our communications by improperly accessing your computer or my computer or even some computer unconnected to either of us which the e-mail passed through. I am communicating to you via e-mail because you have consented to receive communications via this medium. If you change your mind and want future communications to be sent in a different fashion, please let me know AT ONCE. The information contained in this electronic message may be attorney-client privileged, confidential, and exempt from disclosure under applicable law and is intended only for the use of the individual(s) to whom this electronic message is addressed. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this electronic communication or any attachment thereto is strictly prohibited. If you have received this electronic communication in error, you should immediately return it to us and delete the message from your system. We would also appreciate it if you would telephone us at (816)799-0330, to advise of the misdirected communication. Thank you.*

## Brad Kuhlman

| | |
|---|---|
| **From:** | David Weinstein <david.weinstein@wtllaw.com> |
| **Sent:** | Friday, August 26, 2011 6:21 AM |
| **To:** | Brad Kuhlman |
| **Cc:** | Katheryne Worley |
| **Subject:** | RE: Averbukh |

Brad,

I've discussed this with our client. Given your opening demand, and knowing how Delphi evaluates this case, I can advise that it probably makes little sense to negotiate at this point. I do appreciate your willingness to discuss settlement, but we are currently in two different universes in terms of evaluation. Therefore, it appears we should stay on track for continued discovery, subject to Delphi's filing in the bankruptcy court of its motion to dismiss.

- Dave

David B. Weinstein
Weinstein Tippetts & Little LLP
7660 Woodway, Suite 500
Houston, TX 77063
Ph (713) 244-0810
Fax (713) 244-0801
david.weinstein@wtllaw.com

---

**From:** Brad Kuhlman [mailto:brad@kuhlman-law.com]
**Sent:** Tuesday, August 23, 2011 1:37 PM
**To:** David Weinstein
**Subject:** Averbukh

David- I am authorized to settle all claims versus the Delphi defendants for $900,000.  Brad

Bradley D. Kuhlman
**The Kuhlman Law Firm, LLC**
1100 Main Street,  Suite #2550
Kansas City, MO 64105
Telephone: (816) 799-0330
Facsimile:  (816)799-0336
Brad@Kuhlman-Law.com

**NOTE:** *The Missouri Bar Disciplinary Counsel requires all Missouri lawyers to notify all recipients of e-mail that (1) e-mail communication is not a secure method of communication, (2) any e-mail that is sent to you or by you may be copied and held by various computers it passes through as it goes from me to you or vice versa, (3) persons not participating in our communication may intercept our communications by improperly accessing your computer or my computer or even some computer unconnected to either of us which the e-mail passed through. I am communicating to you via e-mail because you have consented to receive communications via this medium. If you change your mind and want future communications to be sent in a different fashion, please let me know AT ONCE. The information contained in this electronic message may be attorney-client privileged, confidential, and exempt from disclosure under applicable law and is intended only for the use of the individual(s) to whom this electronic message is addressed. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this electronic communication or any attachment thereto is strictly prohibited. If you have received this electronic communication in error, you should immediately return it to us and delete the message from your system. We would also appreciate it if you would telephone us at (816)799-0330, to advise of the misdirected communication. Thank you.*