Page 1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 05-44481-rdd

5  - - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  DPH HOLDINGS CORP., et al.,

9

10              Debtors.

11

12  - - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              300 Quarropas Street

16              White Plains, New York

17

18              December 21, 2011

19              10:12 AM

20

21  B E F O R E:

22  HON. ROBERT D. DRAIN

23  U.S. BANKRUPTCY JUDGE

24

25

1

2   Notice of Agenda Proposed Seventy-Third Omnibus Hearing Agenda

3   filed by John K. Lyons on behalf of DPH Holdings Corp., et al.

4

5   Notice of Agenda Proposed Fifty-First Claims Hearing Agenda

6   filed by John K. Lyons on behalf of DPH Holdings Corp., et al.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Shalom Boroda

Page 3

1

2    A P P E A R A N C E S :

3    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

4         Attorneys for Debtors

5         155 North Wacker Drive

6         Chicago, IL 60606

7

8    BY:   LOUIS S. CHIPPETTA, ESQ.

9         JOHN K. LYONS, ESQ.

10

11

12   TOGUT, SEGAL & SEGAL LLP

13        Attorneys for Debtors

14        One Penn Plaza

15        New York, NY 10119

16

17   BY:   DAVID M. SMITH, ESQ.

18

19

20

21

22

23

24

25

Page 4

1

2    BUTZEL LONG

3        Attorneys for Debtors

4        Suite 100

5        150 West Jefferson

6        Detroit, MI 48226

7

8    BY:   CYNTHIA J. HAFFEY, ESQ.

9        BRUCE L. SENDEK, ESQ.

10        DAVID J. DEVINE, ESQ. (TELEPHONICALLY)

11

12

13    REED SMITH LLP

14        Attorneys for Wells Fargo

15        599 Lexington Avenue

16        New York, NY 10022

17

18    BY:   MARK D. SILVERSCHOTZ, ESQ.

19

20

21

22

23

24

25

Page 5

1

2    SMITH, GAMBRELL & RUSSELL, LLP

3         Attorneys for Heraeus

4         Suite 1900

5         250 Park Avenue

6         New York, NY 10177

7

8    BY:   WILLIAM M. BARRON, ESQ.

9

10

11   LOCKE LORD BISSELL & LIDDELL LLP

12        Attorneys for Methode Electronics Inc.

13        3 World Financial Center

14        New York, NY 10281

15

16   BY:   SHALOM JACOB, ESQ.

17

18

19   KELLEY DRYE & WARREN, LLP

20        Attorneys for TCS America International Corp

21        101 Park Avenue

22        New York, NY 10178

23

24   BY:   GILBERT R. SAYDAH, ESQ.

25

Page 6

```
 1

 2   THOMPSON & KNIGHT LLP

 3        Attorneys for Victory Packaging

 4        900 Third Avenue

 5        20th Floor

 6        New York, NY 10022

 7

 8   BY:   IRA L. HERMAN, ESQ.

 9

10

11   MILLER CANFIELD P.L.C.

12        Attorneys for Kostal and Dr. Schneider

13        150 West Jefferson

14        Suite 2500

15        Detroit, Michigan 48226

16

17   BY:   ERIC D. CARLSON, ESQ. (TELEPHONICALLY)

18

19

20

21

22

23

24

25
```

Page 7

 1

 2   ARCHER & GREINER, P.C.

 3         Attorneys for Magnesium Electron

 4         One Liberty Place, Thirty-Second Floor

 5         1650 Market Street

 6         Philadelphia, PA 19103

 7

 8   BY:   JENNIFER L. DERING, ESQ. (TELEPHONICALLY)

 9

10

11   BRYAN CAVE LLP

12         Attorneys for Spartech Polycom

13         One Metropolitan Square

14         211 North Broadway, Suite 3600

15         St. Louis, MO 63102

16

17   BY:   CHRISTOPHER J. LAWHORN, ESQ. (TELEPHONICALLY)

18

19

20   POLSINELLI SHUGHART PC

21         Attorneys for Florida Production Engineering

22         222 Delaware Avenue, Suite 1101

23         Wilmington, DE 19801

24

25   BY:   JARRETT K. VINE, ESQ. (TELEPHONICALLY)

Page 8

1

2    JAECKLE FLEISCHMANN & MUGEL, LLP

3          Attorneys for Jamestown Container Corporation

4          Avant Building, Suite 900

5          200 Delaware Avenue

6          Buffalo, NY 14202

7

8    BY:   BEVERLY S. BRAUN, ESQ. (TELEPHONICALLY)

9

10

11   FROST BROWN TODD, LLC

12         Attorneys for Sprimag Inc.

13         3300 Great American Tower

14         301 East Fourth Street

15         Cincinnati, OH 45202

16

17   BY:   DOUGLAS L. LUTZ, ESQ. (TELEPHONICALLY)

18

19

20

21

22

23

24

25

Page 9

1

2    RUSKIN MOSCOU FALTISCHEK, P.C.

3          Attorneys for Wells Fargo

4          1425 RXR Plaza

5          East Tower, 15th Floor

6          Uniondale, NY 11556

7

8    BY:   MICHAEL T. ROZEA, ESQ. (TELEPHONICALLY)

9

10

11   HODGSON RUSS LLP

12          Attorneys for Unifax Corp.

13          The Guaranty Building

14          140 Pearl Street

15          Buffalo, NY 14202-4040

16

17   BY:   JAMES C. THOMAN, ESQ. (TELEPHONICALLY)

18

19

20

21

22

23

24

25

Page 10

```
 1
 2   WHYTE HIRSCHBOECK DUDEK S.C.
 3        Attorneys for Stepla Ultrasonics
 4        555 East Wells Street
 5        Suite 1900
 6        Milwaukee, WI 53202
 7
 8   BY:   MICHAEL E. GOSMAN, ESQ. (TELEPHONICALLY)
 9
10
11   CALFEE, HALTER & GRISWOLD LLP
12        Attorneys for Blair Strip Steel,
13           William Advanced Materials, and Park Ohio
14        1405 East Sixth Street
15        Cleveland, OH 44114
16
17   BY:   NATHAN A. WHEATLEY, ESQ. (TELEPHONICALLY)
18
19
20
21
22
23
24
25
```

DPH HOLDINGS CORP., et al.,

1                    P R O C E E D I N G S

2            THE COURT:  Okay.  Good morning.  In re DPH Holdings.

3            MR. LYONS:  Good morning, Your Honor.  John Lyons on

4    behalf of the reorganized debtors.  Here with me today, I have

5    my colleague, Louis Chippetta; also, Dean Unrue, DPH; and then

6    Bruce Sendek and Cynthia Haffey at Butzel Long; and finally,

7    David Smith at Togut Segal, all on behalf of the reorganized

8    debtors.

9            THE COURT:  Right.

10           MR. LYONS:  Your Honor, if I could quickly move

11   through before we get to the procedure issue.

12           We have a claims -- the fiftieth claims hearing.

13   There's only one matter on there and that's the Ohio Bureau

14   workers' compensation claim.  We sought to adjourn that until

15   February as we work through issues.  And that's it on the

16   claims agenda.

17           And then next, Your Honor, on the seventy-third

18   omnibus hearing, there are a number of matters.  The first is

19   the motion to reorganize debtors to enforce plan injunction

20   against the old co-trustee.

21           THE COURT:  Right.

22           MR. LYONS:  That is on the verge of settlement --

23           THE COURT:  Okay.

24           MR. LYONS:  -- from what I understand.  So that should

25   be resolved.

DPH HOLDINGS CORP., et al.,

1        Second, the motion of Swynson Limited, as assignee of

2    evo Medical Solutions for an order compelling binding

3    arbitration.  I understand that is also documentation for

4    settlement.

5        THE COURT:  Okay.

6        MR. LYONS:  So that will be resolved.

7        Third, Your Honor, we have the amended motion of James

8    Grye (ph.).  When we were last here, we were working out the

9    various buckets that didn't implicate insurance.  It's a five-

10   party agreement and we all need to verify the list.  So it's

11   taking a little bit more time.  But we're comfortable we will

12   get there.

13       And, as Your Honor may be aware, the Second Circuit

14   did affirm the decision.  They are seeking rehearing, so that

15   will be brief.  So it's --

16       THE COURT:  They're seeking rehearing of a summary

17   order by the Second Circuit?

18       MR. LYONS:  That's the status.  So we're waiting to

19   hear back.  We will put our brief in as well.  And then we will

20   report to Your Honor once that --

21       THE COURT:  All right.  Well, I guess once that's

22   resolved the parties should promptly schedule a conference in

23   front of me as far as the next step in the litigation.

24       MR. LYONS:  Right.

25       THE COURT:  Okay?

Page 13

```
 1            MR. LYONS:  Will do, Your Honor.

 2            THE COURT:  You should pass that along to both the

 3     insurers' counsel as well as the Michigan -- state of Michigan

 4     counsel.

 5            MR. LYONS:  We will, Your Honor.

 6            THE COURT:  Okay.

 7            MR. LYONS:  And then, finally, it's not on the agenda,

 8     but --

 9            THE COURT:  Can I just -- there's -- has there been

10     any issue with GM on the Grye order?

11            MR. LYONS:  No, Your Honor.

12            THE COURT:  No.  Okay.

13            MR. LYONS:  It's comparing various lists --

14            THE COURT:  It's just getting the numbers right.

15            MR. LYONS:  Exactly.

16            THE COURT:  All right.

17            MR. LYONS:  And there are some claims that the

18     employment predated the merger and the spinoff.  So they're

19     just issues that we've got to sort through.  But --

20            THE COURT:  Okay.

21            MR. LYONS:  -- but we'll get there.

22            THE COURT:  All right.

23            MR. LYONS:  Next, this is not on the agenda, but it's

24     the IUECWA pretrial conference.  That, I just would like to

25     mention, at the request of the Court, the reorganized debtors
```

1   filed a letter explaining that the parties wanted to extend the

2   deadline to answer the complaint.  We spoke with IUECWA's

3   counsel shortly after the letter was filed.  And the IUECWA was

4   in agreement that it didn't make sense to have a pretrial

5   conference before the answer was filed.  So --

6              THE COURT:  Okay.

7              MR. LYONS:  -- the pretrial conference, Your Honor,

8   we'd request --

9              THE COURT:  All right.

10              MR. LYONS:  -- be heard at the next omnibus hearing.

11              THE COURT:  Maybe I'm remembering this incorrectly,

12   but I thought you were close to resolving that matter.

13              MR. LYONS:  Your Honor, it was --

14              THE COURT:  Is it sort of fallen off the tracks?

15              MR. LYONS:  -- the earlier permutation was.  But

16   it's --

17              THE COURT:  Oh.

18              MR. LYONS:  -- but it's a matter of -- we're going

19   to -- we're still in discussions with them.  And --

20              THE COURT:  Still working through issues.  All right.

21              MR. LYONS:  So the pretrial, Your Honor, would be

22   February 16th.

23              THE COURT:  Okay.

24              MR. LYONS:  And with that, I'm going to turn the

25   podium over to Ms. Haffey, who will deal with the adversary

1    procedures motion.

2              THE COURT:  Okay.  Thank you.

3              MS. HAFFEY:  Thank you, John.

4              Good morning, Your Honor.  Cynthia Haffey on behalf of

5    the reorganized debtors.

6              THE COURT:  Good morning.

7              MS. HAFFEY:  And this is the reorganized debtors'

8    motion for entry of a procedures order in the remaining

9    adversary proceedings.  First, I'd like to provide the Court

10   with an update on the status of the cases.

11             There are currently, Your Honor, forty-seven, what I'm

12   going to call active cases.  And there are nine additional

13   cases in which a party -- the defendant has not filed an answer

14   or otherwise responded to the original complaint.

15             THE COURT:  Okay.

16             MS. HAFFEY:  Of those forty-seven active cases,

17   twenty-one filed a response to the debtors' motion for entry of

18   order.  Nineteen of that -- of those twenty-one were defendants

19   that are defendants at what I will refer to as the Rule 15

20   hearing defendants, and two are defendants that I'll refer to

21   as merit hearing defendants.  And I will explain those

22   categories in just a moment.

23             Yesterday, Your Honor, we did have a conference call

24   with defense counsel.  And eighteen defense counsel

25   participated in that call.  And we were able to work through

1    and come to an agreement on some of the objections that the

2    defendants had to the debtors' proposed order.  And I will

3    share those agreements and concessions that were reached

4    between the parties as I proceed this morning.

5         First, I would like to start by providing the Court

6    with a premise behind the --

7         THE COURT:  Can I interrupt you just for a second on

8    the numbers?

9         MS. HAFFEY:  Certainly.

10        THE COURT:  Over thirty defendants filed pleadings

11   last fall asserting notice and the like issues.  How many of

12   the forty-seven active ones, if you know, fell into that

13   category?

14        Or, to put it differently, how many of the forty-seven

15   fall into the category of those who have either raised the

16   issue of prejudice in connection with the motions to amend

17   and/or have raised or sought reconsideration of the Rule 4(m)

18   order --

19        MS. HAFFEY:  If you can give me --

20        THE COURT:  -- under Zapata and the like.

21        MS. HAFFEY:  -- just a moment to count --

22        THE COURT:  Right.

23        MS. HAFFEY:  -- on the chart I have here, Your Honor.

24        THE COURT:  Or maybe your -- I mean I don't need to

25   know the answer right away.

1           MS. HAFFEY:  Okay.

2           THE COURT:  I just like to get a sense of if your co-

3    counsel might be doing that while you could continue.

4           MS. HAFFEY:  I can ask him to do that, Your Honor.

5           THE COURT:  All right.

6           MS. HAFFEY:  If you'll just give me a moment to hand

7    him my chart.

8           THE COURT:  Okay.

9           MS. HAFFEY:  It's how I can get that information.

10          THE COURT:  I mean what I'm really focusing on is how

11   many of the forty-seven active are prepared to just move to the

12   merits and how many really want to focus on -- as they -- as I

13   have said, we need to focus, for those people, on the issue of

14   prejudice in the context of both Rule 4(m) and Rule 15.

15          MS. HAFFEY:  Of the defendants that were active

16   during -- for our last hearing in October, Your Honor, I can

17   tell you those that would be proceeding on to a merits hearing.

18          THE COURT:  Okay.

19          MS. HAFFEY:  There would be fifteen, Your Honor.  At

20   the -- in October, there were sixteen, but we've settled one of

21   those cases since then.

22          THE COURT:  So fifteen would be proceeding right to a

23   trial on the merits.

24          MS. HAFFEY:  That's correct.

25          THE COURT:  Okay.  All right.  Thanks.

1        Okay, I had interrupted you.

2        MS. HAFFEY:  Two of which, of those defendants, did

3    file a --

4        THE COURT:  Had objected.

5        MS. HAFFEY:  I'm sorry?

6        THE COURT:  Two of them had filed a response to the

7    motion.

8        MS. HAFFEY:  That's correct.

9        THE COURT:  Okay.

10       MS. HAFFEY:  The premise behind the reorganized

11   debtors' order, Your Honor, was to facilitate the movement of

12   these cases, of all of the cases -- remaining cases -- from

13   this point forward and to do so in a manner that would be

14   efficient not only for the parties, but also for this Court,

15   and to do so in a very cost-effective manner, which included an

16   encouragement of early resolution and included an ADR process.

17   So to lessen the use of judicial resources, keep the cost down

18   on the parties and to encourage early resolution.

19       We modeled the procedures order very closely to the

20   claims procedures order that I know that this Court, I believe

21   I understand, has appreciated that procedure's order and has

22   seen it as being successful in working through almost 22,000

23   claims.  So when we were here in October and the Court asked us

24   to prepare a proposed procedures order, I reached out to the

25   Skadden firm, John Lyons and Louis Chippetta in particular,

Page 19

1   understanding that they were the principal draftsmen with our

2   client of that order, to understand the format of that order

3   and what worked.  And we then structured the order off of that

4   process.

5          The order, as I said earlier, one of the premises of

6   it was to move all of the cases through the Court.  So it is

7   set up so that it includes three buckets, or three categories,

8   of defendants, if you may.  Those that have not answered or

9   otherwise moved in regards to the original complaint, and those

10  are defendants that are set up for what I'll refer to as a

11  default hearing.  The second category of defendants are those

12  defendants that did file either a motion to dismiss or filed an

13  opposition for our motion for leave to seek -- our motion to

14  seek leave to amend, and I'll refer to those as the Rule 15

15  hearing defendants.  And then last are those defendants that

16  did not do -- file either of those of motions and they're

17  moving forward with the merits hearing.

18         And it was my understanding from the October 24th

19  hearing, from statements that Your Honor made on the record, is

20  that you wanted us to create a procedure to deal with all three

21  of those categories of defendants.  So we have done that.

22         The Rule 15 category of defendants, that portion of

23  the order, again, was set up to, again, go back to the original

24  premise of the order, to facilitate an early resolution.  So we

25  set up the order so that there is a process for an early meet

1     and confer.  Then there would be a, if that doesn't work --

2     and, obviously, that's the least costly process for the

3     parties -- if that doesn't work, then to have a mandatory

4     mediation.  If that doesn't work, then the next step then would

5     be to engage in discovery and then have a Rule 15 hearing.  So

6     having the most burdensome process last, hopefully.

7           And I understand from the claims process it's been

8     very effective and either meet and confer or mediation to get

9     the proceedings resolved to be able to resolve as many of these

10    cases as possible to the meet and conserve -- meet and confer

11    or the mediation.

12          The merits hearing is designed so that the proposed

13    amended complaint would be entered and then we would then move

14    forward, get an answer from opposing counsel and then enter

15    into discovery and have a hearing.  If defense counsel filed a

16    motion in regards to a Rule 12(b)(6), there would be a hearing

17    on that.

18          Yesterday during our call, defense counsel -- one of

19    the defense counsel for the merit group recognized that there

20    wasn't a process specified if a defendant wanted to file a

21    summary judgment motion.  That was just an oversight on our

22    part, Judge; we have no problem adding that to the order if the

23    Court so chose.

24          So the defendants -- I'd like to discuss what the core

25    objections.  And we've discussed these objections as a group

Page 21

1    yesterday during our call.  And, again, there were no

2    objections that were filed as to bucket number 1.  And there

3    were only two defendants that raised objections to bucket

4    number 3.

5           So the Rule 15 objectors, they have an objection that

6    we have required a prejudice declaration to be filed within

7    fourteen days after entry of the order.  The principle -- they

8    didn't have an objection as to the idea of a prejudice

9    declaration; it was just the timing of that prejudice

10   declaration.

11          And particularly, now that we're in the midst of the

12   holidays, we agreed as a group that we would extend that time

13   frame from fourteen days to -- we said yesterday forty-five

14   days, but I suggested later in an e-mail that we make it forty-

15   two days so that we can work with the seven-day timing rule.

16   And that time frame would start clicking on either the date of

17   the entry of the order or January 1st, whichever is later,

18   again, dealing with the issue that we're in the midst of the

19   holidays.

20          The next objection that the Rule 15 objectors had was

21   the unilateral right to the reorganized debtors' ability to

22   adjourn a hearing.  And we talked about the reasoning behind

23   that, Your Honor.  And that is due to -- it's really a case

24   management requirement.  Due to the fact that we have a number

25   of active cases that will be proceeding in different stages

1    through this process, if one case were to need to be adjourned

2    due to a request of either of the parties, it very likely will

3    trigger a scheduling issue with another matter, either with

4    this Court or in a mediation process or whatnot.

5         So it's a right that the reorganized debtors, I

6    understand, had during the claims procedures process.  We see

7    it as a -- as an ability that we're going to need in this

8    process possibly.  But we did agree yesterday with the

9    defendants that we would add language into the order that would

10   require, one, that the reorganized debtors only adjourn a

11   matter in good faith, which, of course, we would do, but we'll

12   add that language; that we will attempt to gain cooperation and

13   agreement first with defense counsel and agree to a new date.

14   There already is, in the order, a restriction that an

15   adjournment can only be within a certain period of time and it

16   can't go on beyond a certain period of time.

17        And, finally, there was a concern from defense counsel

18   that -- we have in the order that there would be a five-day

19   notice of an adjournment.  And there was a concern on their

20   part that that wasn't a reasonable amount of time due to the

21   fact that they have client that would be making travel plans to

22   come into town and five days just wasn't sufficient to provide

23   their clients with notice.  So agreed to a ten-day notice

24   extension, rather than a five-day notice extension.

25        So I don't want to say that we've reached an agreement

Page 23

1    on -- I know the defense counsel still object to our unilateral

2    right to make an adjournment.  I think, with these additions

3    that I just described to the Court, that it would be very

4    unlikely that we would ever have to resort to a unilateral

5    right to adjourn.  But in the event that we would, I think it's

6    necessary, again, in that because we're going to have a domino

7    effect in how a scheduling change in one case may affect

8    another.  And by the time we could motion something and get it

9    heard by this Court, it very likely would be after the fact of

10   that happening.

11        Next was the portion of the procedures order that

12   dealt with mediation.  The defense counsel first had a concern

13   with the briefing requirement and the answer requirement into

14   mediation.  And my response to that is, like with any mediation

15   ADR, it is a process that counsel for both parties can be as

16   robust or not with their mediation briefs with the -- during

17   that process.  They are all under Rule 408, so they are not

18   briefs that would ever be presented to this Court and arguments

19   made to this Court in that fashion.  And it is a nonbinding

20   mediation.

21        Some of the defense counsel would like to have

22   discovery prior to mediation.  Again, Your Honor, we object to

23   having discovery prior to mediation because we are trying to

24   create an order that is most cost effective.  And, obviously,

25   the parties have the ability at mediation to present to each

Page 24

1    other evidence to support their claims to have the most

2    successful mediation and come to the best resolution possible.

3    And it's been my experience in mediations in the many years

4    that I've been doing this that that's what parties do because

5    they want to have a good result.  So we don't see discovery as

6    being necessary at that stage, nor advantageous to the parties

7    from a cost perspective.

8           And then, finally, in regards to it being a mandatory

9    process or a non-mandatory process, we believe in order for

10   this to be effective, it does need to be a mandatory process

11   and that this Court has the ability to order that there be a

12   mandatory mediation.

13          The Rule 15 hearing, then the -- in the current

14   proposed order, that is when discovery would start.  And we

15   have limited the issues in discovery to the Rule 15 hearing

16   itself.  I think this Court was clear during the October 24th

17   hearing that discovery would be limited at that phase.  And, in

18   fact, I believe you admonished the reorganized debtors to

19   ensure that it was only limited to that nature.  And we

20   included that language from the hearing in our order so that,

21   again, from a cost perspective, we're only dealing with the

22   issues that are really up for the Rule 15 hearing.  And those

23   are, of course, prejudice and notice.

24          THE COURT:  Is that an open issue or is that resolved?

25          MS. HAFFEY:  It is an open issue in the sense that

 1   defense counsel would like to have a global preliminary

 2   disclosure made by the reorganized debtors.  Not by defendants,

 3   but by the reorganized debtors prior to that process.  In fact,

 4   Your Honor, they request a global preliminary disclosure made

 5   by reorganized debtors within fourteen days of entry of this

 6   order.

 7         We strongly object to that.  We see that as putting,

 8   frankly, the cart before the horse.  The defense counsel is, in

 9   doing so, is taking a process that this Court is set up, again,

10   to be a hearing on the issues of prejudice and notice, and it's

11   the prejudice the defendants have been telling this Court for

12   two years now that they have.  And rather than deal with that

13   issue at the Rule 15 hearing, instead, they want to jump to a

14   full-blown global disclosure process and only on the part of

15   the reorganized debtors and early on.  And, again, I think

16   we'll find ourselves in a morass of discovery motions and

17   issues before we even get to the Rule 15 hearing issues.  And

18   it is out of keeping with what I think this Court had asked us

19   to do, and that is to set up a procedures order for a Rule 15

20   hearing.

21         Other than that, there were some defense counsel that

22   objected to the limit of interrogatories and document requests

23   and requests for admission at that process.  But I believe --

24   and I don't want to speak for them; they'll tell you if I'm

25   wrong on this -- that we -- ultimately, there was an agreement,

1   at least amongst some defense counsel, that they were okay with

2   the more limited nature for the Rule 15 hearing because of the

3   limited scope of that hearing.  But then, later on, when we got

4   to the merits trial, they wanted to have the ability to conduct

5   discovery to the extent permitted under the Federal Rules.  And

6   we are in agreement with that, Your Honor.

7          The defendants' next objection regarding the Rule 15

8   hearing is regard to briefing.  And they wanted the -- in their

9   briefs, they state they wanted the ability to file a sur-

10  surreply.  Again, I -- they will correct me if I'm wrong, but I

11  think we've worked through that issue and come to an agreement.

12  Both parties, as the current -- our current proposed orders --

13  each party has two bites at the apple, if you would, Your

14  Honor.  Both parties are providing the Court with two briefs.

15  There's an initial brief by the defendants, a response brief on

16  our part, a reply and a surreply.  And no one wanted to burden

17  the Court beyond that and have a sur-surreply.  So I think we

18  came to an agreement on that.

19          THE COURT:  I may not read the last -- I usually don't

20  take four briefs unless I ask for it.

21          MS. HAFFEY:  Okay.

22          THE COURT:  I don't understand why a --

23          MS. HAFFEY:  So that fourth brief, Your Honor, would

24  be the brief that reorganized debtors would file.  And if the

25  Court is telling us that you do not want us to do that, we'll

1    strike that from the order.

2         THE COURT:  Well, I usually only take something like

3    that if the responsive brief raised new issues or made

4    statements of fact or statements of law that basically makes

5    the other side's hair stand on end.

6         MS. HAFFEY:  It's a good standard.

7         THE COURT:  All right.

8         MS. HAFFEY:  The next objection, Your Honor, that

9    reorganized debtors have to the proposed order is they've

10   struck everything in their proposed order from that point

11   forward.  So any of the merits hearing process was struck.

12        I think, in part, but not totally, due to the fact

13   that the principal drafters of the proposed order on behalf of

14   defendants are Rule 15 hearing defendants and didn't recognize

15   or, maybe, fully appreciate the fact that there are defendants

16   that will be going straight to the merits hearing and that this

17   Court had asked us in October to put forth an order in regards

18   to that process as well, they do have a further objection as to

19   that, though.  And that is that they do not believe that this

20   Court should -- that we should have an order further than the

21   Rule 15 hearing because they may be dismissed at the Rule 15

22   hearing stage and why go further than that at this stage.

23        My response to that is twofold.  One, of course,

24   because we already -- we have defendants already in that phase

25   and we do need to have an order to deal with those cases.  My

Page 28

```
 1    second response to that is that if a defendant is dismissed at

 2    the Rule 15 stage, then no harm, no foul, whether there's an

 3    order that continues for other defendants.  And then as to the

 4    defendants that would continue, we do need to have an order in

 5    place at that time as to then what the next step would be.

 6           And we have all defendants right now in the same

 7    procedural posture in these cases.  And I think now is the

 8    unique time in which to gather all of the parties and have

 9    these discussions and have an order entered, rather than wait

10    and do it on a piecemeal basis, as the Rule 15 hearings --

11    because they're going get a staggered phasing -- proceeds with

12    this Court.

13           As to the actual trial procedures, the defendants do

14    have -- did have some objections.  One of the merits hearing

15    defendants requested that there be a comparable mediation

16    process for those defendants that go right to merits hearing.

17    And we have no disagreement with that, Your Honor.  So we

18    agreed to that.  Earlier, I mentioned there was also a request

19    that the order specifically address the right to be able to

20    file summary judgment motions.  And we have no disagreement

21    with that.

22           There was also --

23           THE COURT:  And also -- and obviously, they won't --

24    I'm assuming that the order will provide that they'll be heard

25    before the trial.
```

1          MS. HAFFEY:  Tat's correct, Your Honor.

2          THE COURT:  Okay.  Okay.

3          MS. HAFFEY:  There was also an objection as to the

4     time frames that were placed in the procedures order.  And, if

5     I may, the defendants, in their response brief, criticized

6     reorganized debtors in the tight time frames and state that it

7     was done, I think, for some ill intent.  It wasn't; it was

8     actually to acknowledge what I thought I'd heard from defense

9     counsel for the last couple years, and that is they want to

10    keep these cases moving; it's been too long and their clients

11    want this resolved.  So it was in that vein and with that

12    thought in mind that we drafted these tight time frames.  So we

13    have no problem, Your Honor, in extending out the time frames

14    with defense counsel.

15          In particular, we talked yesterday in regards to the

16    filing of an answer and/or a response -- other response to the

17    amended complaint once it's entered and agreed that the normal

18    rules under the Federal Rules of Civil Procedure would apply.

19    The defendants have also requested that the time frames for

20    discovery and other matters also follow strictly to the Federal

21    Rules of Civil Procedure.

22          We would propose, Your Honor, to maybe meeting halfway

23    on that one.  Of course, what this Court wants to do, we will

24    do.  The only reason I'm suggesting maybe we don't need that

25    long a time frame is because we have been proceeding through

 1    these cases now for a couple of years; we will have gone

 2    through a meet and confer and a mediation and the Rule 15

 3    hearing on many of these cases, where discovery will already

 4    have been exchanged.  So perhaps we don't need as long a time

 5    frame.

 6           And as far as the amount of discovery that is

 7    exchanged during that process, the defendants objected and want

 8    to have what is currently permitted under the Federal Rules.

 9    Again, we shortened or limited the number of exchanges, again,

10    to keep down cost as well as timing.  But if defendants aren't

11    concerned about the timing as they thought they were, we don't

12    have a problem with that, Your Honor.

13           THE COURT:  Okay.

14           MS. HAFFEY:  And unless the Court has some questions.

15           THE COURT:  Well, I just want to hear from the other

16    parties.  I mean I've been through the proposed orders.  And my

17    view on the open issues and -- I'll let you know.  But --

18           MS. HAFFEY:  All right.  Thank you.

19           THE COURT:  Okay.

20           MR. HERMAN:  Good morning, Your Honor.  I have the

21    enviable task of responding to Ms. Haffey's presentation this

22    morning.

23           THE COURT:  Okay.

24           MR. HERMAN:  I speak on behalf of Victory Packaging.

25    Ira Herman, Thompson & Knight, for Victory Packaging.

1          A number of other of the defendants will probably join

2     in what I have to say, so I think Your Honor can assume that

3     although I'm not representing the other parties, they will be

4     joining in.  And you can hear from them whether or not they

5     join in at the right time.

6          I was trying to figure out how to organize what I

7     wanted to say this morning, Judge.  The first principle is the

8     debtor comes to you as if you're looking at this motion in a

9     vacuum and there's been no history to this case.  And there has

10    been a lot of history and a lot of water has gone under the

11    bridge.  And it's not a tabula rasa.

12         The debtors -- whether it was proper for the Court to

13    approve it not, I'm putting that issue aside -- the debtors

14    themselves chose to seal complaints for two years and then

15    serve them two years later.  Whether it was right, wrong or

16    indifferent, they chose that process and they have to take the

17    benefits and the burdens of having made that election.  And I

18    think that the Court has already acknowledged that, when you

19    talked about some burden shifting at some of the different

20    hearings.

21         So let's talk about the merits affidavits.  My client

22    has no issue with filing the merits affidavit.  But my client

23    wants to be able to file a complete merits affidavit.

24         THE COURT:  I'm sorry?

25         UNIDENTIFIED SPEAKER:  Prejudice.

1          MR. HERMAN:  Prejudice.  I'm sorry, prejudice

2     affidavit.  I -- nomenclature.  Apologies, Judge.  The record

3     should reflect that I meant to say --

4          THE COURT:  Look, I already set it up.  We're going to

5     have individual hearings on prejudice for both for and

6     purposes --

7          MR. CURTIN:  Right.

8          THE COURT:  -- and Rule 15 purposes.  I've already

9     ruled on that.  This is just about procedures for getting

10    there.

11         MR. HERMAN:  I understand, Judge.

12         THE COURT:  So I don't want to hear any more about

13    that.

14         MR. HERMAN:  I'm not arguing about that at all, Judge.

15         THE COURT:  Okay.  Others did.  I don't want to hear

16    it.

17         MR. HERMAN:  Your Honor, I already stated that we have

18    no objection about that.

19         THE COURT:  I couldn't have been clearer in my ruling

20    on -- in October -- I'm not talking to you; I'm talking to

21    other people.  In my ruling in October, I expected this to be

22    done in about two weeks.  The parties expected it to be done in

23    about two weeks.  And I'm, frankly, shocked that we're here in

24    December on it.

25         So let's move on and focus on this as if we're really

1    dealing with nuts and bolts --

2              MR. HERMAN:  Okay.  Nuts and bolts, Judge.

3              THE COURT:  -- of the issues that are before the

4    Court.

5              MR. HERMAN:  Judge, the debtors have talked about --

6              THE COURT:  This is a pretrial conference.

7              MR. HERMAN:  Okay, Judge.  I'm -- the debtor really is

8    focused on expense and time-saving and what's --

9              THE COURT:  Right.

10             MR. HERMAN:  -- what's going to be effective to get

11   the job done.  And I'll just handle it on that level, Judge.

12             THE COURT:  Okay.

13             MR. HERMAN:  The reason, as draftsmen -- and I was a

14   principal draftsman of the proposed order -- that I propounded

15   the idea of the preliminary global discovery: very limited and

16   it will facilitate resolution of these cases.  All we have

17   asked for -- and we can work out language if Your Honor thinks

18   it's too broad -- is for the debtor to disclose the status of

19   its electronically-stored information and the custodians of

20   that information.  Because what the debtors' order does is it

21   looks at prejudice only with regard to what's happened at each

22   of the defendants, as opposed to the global prejudice to all

23   the defendants that was caused by the passage of time.  And the

24   passage of time itself is a form of prejudice --

25             THE COURT:  Well, let me cut through -- let me -- I

1    think I understand what you're saying; let me try to summarize

2    it.  All right?  As far as the discovery for the prejudice

3    hearing is concerned, you're contending that one of the issues,

4    as far as prejudice is concerned, is whether you can actually

5    look at an accounting system on the debtors' side that gives

6    you a history of the transfers.  Right?  Is that really it?

7            MR. HERMAN:  It goes beyond that, Judge.

8            THE COURT:  And if they don't have it, then you're

9    prejudiced because everyone is reconstructing it?

10           MR. HERMAN:  Your Honor, their -- they had an

11   interactive system called DACOR that they're relying on.

12           THE COURT:  All right.

13           MR. HERMAN:  Some of the information, like the PO

14   information that the reorganized debtors have relied upon to

15   propound their amended complaints, that information resided

16   only on the DACOR system.  Our client never had that

17   information.  Our client relied on their system and their

18   access to that system --

19           THE COURT:  Okay.

20           MR. HERMAN:  -- to recover that information.  It goes

21   to the very heart of the amendment of the complaint, Judge.

22           THE COURT:  But how does it go to prejudice?

23           MR. HERMAN:  Judge, how can my client defend itself if

24   that information doesn't exist?  And shouldn't Your Honor --

25           THE COURT:  Wait, wait, wait, wait.

1            MR. HERMAN:  -- shift the burden to the debtor --

2            THE COURT:  Wait, wait, no, no, wait, wait.  Wait.

3            The debtor has the burden, as the plaintiff --

4            MR. HERMAN:  Right.

5            THE COURT:  -- in showing a preference.  I'm not -- I

6     mean -- I'm not -- I have an open mind on this.  But it seems

7     to me that if they don't have the information, they're not

8     going to carry that burden.

9            MR. HERMAN:  But, Judge, I want them to tell me now.

10           THE COURT:  Because?

11           MR. HERMAN:  Our group has spent millions of dollars

12    defending these cases, Judge.  I'm not asking for them to

13    disclose content, just the status of the information.

14           They have -- the debtor has delivered a letter dated

15    August 27, 2007 to many of the defendants advising that they'd

16    be taking down the DACOR system and putting up the information

17    on another system.  I can represent to the Court that the

18    client has advised me that that information was never put up on

19    the second system.

20           If that information, sometime between August of 2007

21    and today, has disappeared, that's spoliation, Judge, and these

22    cases should be over on that basis alone.  Based on the rules

23    of this --

24           THE COURT:  All right.  So --

25           MR. HERMAN:  -- district court.

1          THE COURT:  -- in essence, you're saying -- and I

2     understand this argument -- that you want to make sure that at

3     the end of the day, the debtors have the rudimentary basis

4     based on their own documents, their own accounting documents,

5     to show their case.

6          MR. HERMAN:  No, Judge.

7          THE COURT:  Is that what you're basically saying?

8          MR. HERMAN:  I'm looking at prejudice.

9          THE COURT:  Well --

10         MR. HERMAN:  Stuff changed --

11         THE COURT:  -- that is prejudice because they're

12    looking to amend their complaint when they don't have the --

13         MR. HERMAN:  That's right.

14         THE COURT:  -- the underlying basis.

15         MR. HERMAN:  But I need to be able to assert that

16    prejudice, rather than just on speculation based on inferences.

17    We have inferences that the information no longer exists in

18    native form.  And, certainly, we don't have access to it, which

19    we did have prior to 2000 -- August of 2007.

20         THE COURT:  All right.

21         MR. HERMAN:  There has been a change after the time

22    that the debtors were working on these complaints in August of

23    2007.

24         THE COURT:  So you're -- okay.

25         MR. HERMAN:  And the status of the ESI, Judge.

1          THE COURT:  All right.  So you're not looking to take

2    discovery into the individual transfers; you just want to make

3    sure the records are still there?

4          MR. HERMAN:  I want to know the status of the ESI,

5    Judge.  I have, in my hand, the book brief and the excerpt from

6    the ADI best practices on what the debtor was supposed to have

7    done to protect and preserve the ESI.  Your Honor is very well

8    aware of Judge Scheindlin's decisions in the Lockheed cases and

9    what the debtors' obligations were.  But --

10         THE COURT:  All right.

11         MR. HERMAN:  -- Judge, remember when I started and I

12   said this is not in a vacuum?  They chose to seal these

13   complaints up for two years.  That was their choice.  That's

14   fine.  But they had a duty to protect and preserve the evidence

15   they were going to use to prosecute those cases or that

16   would -- had to be made available to defendants -- to defend

17   those cases.  That's black-letter law in this district,

18   Judge --

19         THE COURT:  Okay, I understand --

20         MR. HERMAN:  -- under Rule 26.

21         THE COURT:  -- I understand that point.

22         MR. HERMAN:  And all we're doing, Judge, is saying --

23         THE COURT:  Why does that -- in --

24         MR. HERMAN:  Because, Judge, the case is over if they

25   don't have it.

DPH HOLDINGS CORP., et al.,

1           THE COURT:  But I guess what I'm -- why does that

2    go -- I was looking at the language.  And maybe I -- maybe I --

3           MR. HERMAN:  Let me just add one thing, Judge.  I

4    think they --

5           THE COURT:  All right.

6           MR. HERMAN:  -- can answer this in two pages.  They

7    have to tell us where and the status of the evidence is.

8           THE COURT:  That's right.  And you're looking for

9    people who know about it?

10          MR. HERMAN:  And -- right.  Because, Judge, how the

11   evidence is recovered is germane to the ESI inquiry.  If --

12          THE COURT:  Well, I guess what I was focusing on was

13   (c).

14          MR. HERMAN:  Go ahead, Judge.

15          THE COURT:  (c) I didn't -- (c) went beyond that in

16   your --

17          MR. HERMAN:  Well let's see what (c) says.

18          THE COURT:  It says "the identity and availability of

19   each employee or former employee of the debtors who is likely

20   to have discoverable information that may be relevant to the

21   proposed amended complaint".  That goes beyond this basic --

22          MR. HERMAN:  Well, no, Judge, because --

23          THE COURT:  -- point.

24          MR. HERMAN:  -- to the extent former employees of the

25   debtor who would be witnesses are no longer available because

05-44481-rdd   Doc 21812   Filed 12/27/11   Entered 01/18/12 15:27:58   Main Document
DELPHI HOLDINGS CORP., et al.,
Pg 39 of 86

Page 39

1    of the passage of those two years -- or three years, however --

2    or four years, Judge, that is an issue of prejudice.  That's

3    why we included that.

4            THE COURT:  All right.  But this goes beyond that.

5            MR. HERMAN:  Well, we just want to know who's around.

6    And I think, Judge, to the extent that a former employee who

7    would be a custodian or who would -- had conversations with our

8    clients, they're not around, Judge.  That's a form of

9    prejudice.  It deprives the defendants of their ability to

10   defend the case.

11           THE COURT:  Well, what do you mean by "they're not

12   around"?  I mean what do --

13           MR. HERMAN:  They could have died, they could have

14   moved overseas, the debtor could've lost -- the reorganized

15   debtors could have lost contact with them.  I believe the

16   reorganized debtors has one employee -- correct me if I'm

17   wrong -- at this point.  So I don't know where these people

18   have scattered to.  And what they have to say may be germane to

19   litigation.

20           And to the extent that it's been four years that have

21   gone by since 2007, almost five years -- well, four-and-a-half

22   years.  Judge, that is prejudice.  I'm not even going into the

23   passage of time itself as prejudice because of the fading of

24   memories.  I'm saying people may be gone who should be

25   witnesses and would have been witnesses back in 2007, had these

1    complaints been filed and served back in 2007.  So that goes to

2    prejudice.

3           So that is why we're just looking for a list of names

4    and addresses, if they're available, and we're looking for the

5    status of the electronically stored information.  I would love

6    to see, Judge -- and I haven't really asked for it -- a copy of

7    their litigation freeze letter to the debtors -- to the

8    debtor --

9           THE COURT:  I'm sorry, their what?

10          MR. HERMAN:  The litigation hold.  The letter that

11   counsel is obligated to send to impose a freeze on ESI so

12   nothing gets destroyed.  It's gross negligence, Judge, as under

13   Judge Scheindlin's rulings in this district, if that letter

14   didn't go out and information was destroyed.  And again, Judge,

15   that's prejudice and grounds for dismissal of these cases.

16          It's cheap and easy, Judge.  There's one set of

17   discovery we're asking for.  And in response to that, Judge, we

18   will produce a Rule 15 prejudice affidavit from our clients --

19   or declaration from our clients.  And we'll make the same

20   disclosures about what's missing from our clients' side of the

21   ledger.  But we can't make a declaration without knowing what's

22   missing from the debtors' side of the ledger in terms of

23   evidence.

24          And it's only fair, Judge, to make the debtor make

25   those very, very, very narrow disclosures.  It's a list of

1    names and addresses, Judge, and it's a description of how their

2    information is currently being stored, how it was stored and

3    how they can recover it.

4              THE COURT:  Okay.

5              What's your response to that?

6              MS. HAFFEY:  I have a couple responses, Your Honor.

7              First of all, I think this Court has already dealt

8    with this issue in the June 21st hearing.  In response to

9    similar arguments from defense counsel, this Court made it

10   clear that this was not a Rule 8, but, instead, a summary

11   judgment-type of issue or a trial issue in determining

12   spoliation of evidence.

13             Secondly, however, I think what defendants are trying

14   to do here is to try to avoid having to put forth their actual

15   prejudice.  They have been telling this Court now, for two

16   years --

17             MR. HERMAN:  No, they're going to do -- no, I -- as I

18   see it, the request on the legacy accounting system is a

19   legitimate one.  I mean if the debtors -- that should be easy.

20   You either or you don't.  If you don't have it, then there's no

21   reason to go forward.

22             MS. HAFFEY:  Well --

23             THE COURT:  I mean this is silly.

24             MS. HAFFEY:  Well --

25             THE COURT:  If you do have it, then you can just

Page 42

1    identify it.

2         MS. HAFFEY:  But -- and my response to that, Your

3    Honor, as in why I think there's something else going on here,

4    is defendants know we have the information.  As you --

5         THE COURT:  Well, they don't.  I mean --

6         MS. HAFFEY:  If it --

7         THE COURT:  -- the only issue I'm having a hard time

8    with here is (c) in his list, where they're asking you to

9    identify everyone who may be relevant to the complaint.

10        MS. HAFFEY:  But the --

11        MR. HERMAN:  Judge, I would take a good faith effort

12   at it and make it nonexclusive.  But I think the parties are

13   entitled to know who's gone because of the passage of time.

14        THE COURT:  Well, I think you would need --

15        MS. HAFFEY:  If --

16        THE COURT:  -- I think it's fair to say who you intend

17   to rely on --

18        MS. HAFFEY:  Well, if I can --

19        THE COURT:  -- as far as the complaint.

20        MS. HAFFEY:  -- finish my initial response, Your

21   Honor, first --

22        THE COURT:  Okay.

23        MS. HAFFEY:  -- and then I'll respond to that.

24        The reason I say that it's evident we have the

25   information is, if this Court remembers, we were required by

Page 43

1    the Court to file an amended complaint that satisfied the

2    Iqbal-Trombly standard.  And to do that, we had to add dates,

3    real information, sometimes it's invoice information, down to

4    the specific individual transfer.

5            THE COURT:  Why is this a big deal?  I don't

6    understand why it's important.

7            MS. HAFFEY:  Well, the big deal is -- and I agree with

8    you completely, Your Honor -- with (c), until we know what

9    their --

10           THE COURT:  Right.  Well as far --

11           MS. HAFFEY:  -- prejudice arguments are going to be --

12           THE COURT:  -- as far as (c) --

13           MS. HAFFEY:  -- I can't answer (c).

14           THE COURT:  -- I think -- I think you should say that

15   your present intention is to rely upon -- if you can rely upon

16   any witness, X, Y and Z for our direct case.  You don't know

17   what defenses they're going to raise as far as ordinary course

18   or the like.  So you can deal with that at the hearing.

19           But I think you should say who you're going to rely on

20   in your direct case.  If that -- they should know that.

21           MS. HAFFEY:  My only contention with that, Your Honor,

22   is we have that in place in the discovery phase before the Rule

23   15 hearing.

24           THE COURT:  But do --

25           MS. HAFFEY:  They have the right to take discovery and

1    ask those interrogatories as to what witnesses do you plan on

2    relying on, and in that phase of the case.  But to require

3    the --

4         THE COURT:  Look, I'm assuming it's an accounting

5    person, right?  I mean --

6         MS. HAFFEY:  Well, again, I don't know what sort of

7    prejudice they're going to allege as to whether that is or not.

8         MR. HERMAN:  Judge, may --

9         THE COURT:  They want to know whether this is a waste

10   of time.  If it turns out, for example, that the only basis for

11   your case comes out of what they produce, they have a right --

12   and I have right -- I would be very upset by that because you

13   would have brought this whole thing --

14        MS. HAFFEY:  I understand.

15        THE COURT:  -- without having the information --

16   without having the basis for asserting the complaint.

17        And so I think it's fair for them, particularly given

18   that there needs to be an underlying belief that there's a

19   reason to go forward with this -- with each particular

20   complaint that you could actually make a prima facie case.  I

21   think it's important to identify your witness and the

22   accounting information for your prima facie case.

23        Now, I agree; if they say -- you don't know what their

24   defense is going to be.  So you should be able to supplement

25   that before the prejudice hearing with additional people, and

DPH HOLDINGS CORP., et al.,

Page 45

1    I'll consider whether that person's dead.  I mean if they say

2    it's ordinary course and you say well, we can't -- we don't

3    know that because Mrs. X passed away, well, maybe that's it

4    because I don't know how -- if they could make a prima facie

5    that it's ordinary course, you're going to lose on the ordinary

6    course defense.  So that should be the end of it.  There should

7    be -- there's no reason to proceed with the amended complaint

8    at that point because you won't be able to prove your case.

9         But I don't -- that person, you should be able to add

10   on responding to their affirmative defenses.  But I think, just

11   to identify your direct case witnesses is a fair request.

12        MR. HERMAN:  And they can have as much time, Judge, as

13   they want.  We can --

14        THE COURT:  You could have --

15        MR. HERMAN:  -- doesn't have to be fourteen days.  I

16   thought they wanted short time periods.

17        THE COURT:  -- you could -- that's within your

18   control.  You could have forty-five days to that or you could

19   do it --

20        MR. HERMAN:  Whatever you want --

21        MS. HAFFEY:  Well --

22        THE COURT:  -- you could do it shorter.

23        MR. HERMAN:  -- as far as I'm --Judge, I --

24        MS. HAFFEY:  -- if I could --

25        MR. HERMAN:  -- before you ask Ms. Haffey to extend, I

Page 46

1   just wanted to add that by making these preliminary

2   disclosures, which should be two or three pieces of paper, not

3   more than that, it will facilitate the ability to resolve these

4   cases.

5          THE COURT:  Well, that's a separate issue.  I was

6   going to -- on the mediation, I was going to say look, I'm

7   assuming that they would be providing that information to you

8   there because any mediator's going to say well, if you haven't

9   provided it, then obviously you don't have a strong case and so

10  I'm going to recommend a low settlement.

11         MR. HERMAN:  Well, Judge, I have a lot of problems

12  with the way they proposed the mediations.

13         THE COURT:  Well, leave that aside.  As far as --

14         MR. HERMAN:  Let's get to that later.

15         THE COURT:  -- as far as the initial disclosures for

16  the -- what's labeled here the Rule 15 hearing -- although,

17  again, I want to be clear.  The evidence that I'm going to take

18  on the Rule 15 hearing is also applicable to the remaining 4(m)

19  issue, which is whether I should -- I certainly don't lack --

20  or to reconsider the issuance of the last order in 2007.  And

21  as I read the case law, I consider that, for those who did not

22  get notice, as a de novo review based upon factors that I have

23  to take into account now as far as what's happened.

24         So I'm going to use that record for both of those

25  things.  So it's fine to label if Rule 15, but it's not just

DPH HOLDINGS CORP., et al.,

Page 47

1    Rule 15.  And I was clear on that in October.  But that's a

2    sideline.

3         So my -- I think that this paragraph in the order is

4    really, as far -- except for the fourteen days, is fine, except

5    for (c) at the end, which is -- it should say the identity and

6    availability of each person --

7         MR. HERMAN:  That the debtor knows will be involved.

8         THE COURT:  -- that the debtor -- the debtor

9    intends --

10        MR. HERMAN:  Right.

11        THE COURT:  -- to rely upon for its direct case.  And

12   that's --

13        MR. HERMAN:  And, Your Honor, we will allow them to

14   supplement, as Your Honor --

15        THE COURT:  Yes.  And that's subject to

16   supplementation.

17        MR. HERMAN:  That's just fine, Judge.

18        THE COURT:  Yes.  Okay.  I mean I'm assuming it's an

19   accounting person, right?

20        MS. HAFFEY:  And again, Your Honor, I'm very concerned

21   that it -- because we don't know the prejudice arguments that

22   they're going to make

23        THE COURT:  Well, that --

24        MS. HAFFEY:  If I can give an example, like maybe --

25        THE COURT:  -- you could deal with that in the future.

Page 48

```
 1    When they respond to that, then you'll have to see --

 2            MR. HERMAN:  They're free to supplement the list,

 3    Judge, at that point.

 4            THE COURT:  Right.  Right.

 5            MR. HERMAN:  I would not quibble with that --

 6            THE COURT:  Right.

 7            MR. HERMAN:  -- one iota, Judge.

 8            THE COURT:  Okay.

 9            MR. HERMAN:  Your Honor, just one background.

10            MS. HAFFEY:  If I --

11            MR. HERMAN:  When I prepared that paragraph, Judge, I

12    spoke to a technical computer person.  That's why the language

13    is drafted the way it is, about native form and the like.

14            THE COURT:  I'm just focusing on (c).  The other stuff

15    I understand.

16            MR. HERMAN:  Thank you, Judge.

17            THE COURT:  Okay.  All right.

18            Now, as far as the timing is concerned, I think the

19    debtors should produce that first.  You're representing to me

20    that you actually have this DACOR system, right?

21            MS. HAFFEY:  We have the DACOR system that has been

22    imaged.  So when this change took place that Mr. Herman is

23    referring to, that information was preserved and imaged.

24            THE COURT:  Okay.

25            MS. HAFFEY:  So we have that information.
```

 1          THE COURT:  All right.

 2          MS. HAFFEY:  As well as there are hard files as well,

 3     and other documents that one would expect in litigation.

 4          THE COURT:  All right.  Well, the reason I'm asking

 5     this is I'm somewhat reluctant to have the initial disclosures

 6     in connection with these Rule 15 hearings taking ninety days in

 7     total.

 8          So my -- I would like to -- I understand we're in the

 9     holidays.  But I'd really like to have this earlier from the

10     debtors and maybe even start the clock running a little earlier

11     for the defendants, too, on this.  Because I've been told for

12     months that there's prejudice here.  And people have submitted

13     affidavits saying there's prejudice.  So it seems to me that

14     the extra time you'll need is to review what they've submitted.

15     But most people are going to be refilling what they've already

16     filed, I think.

17          MR. HERMAN:  That's probably true, Judge.

18          THE COURT:  Right.

19          MR. HERMAN:  I think where we quibble with the

20     reorganized debtors was there are two lenses to focus through:

21     what's happened to debtor --

22          THE COURT:  Right.

23          MR. HERMAN:  -- and what's happened to the defendants.

24          THE COURT:  Okay.  So --

25          MS. HAFFEY:  Your Honor, if I could interject quickly.

1          In regards to the timing, I am going to need,

2   obviously, to work with my client --

3          THE COURT:  Right.

4          MS. HAFFEY:  -- who is going to have to -- which is

5   DPH -- will have to also work with Delphi.  They're shut down

6   for the holidays.

7          THE COURT:  Well, can -- I mean --

8          MS. HAFFEY:  They shut down yesterday.

9          THE COURT:  All right.  Can we do it thirty days

10  instead of forty-five from the later of June 1st or the

11  order -- January 1st or the order, and then thirty days for the

12  defendants in response?

13         MS. HAFFEY:  My second concern is we're talking fifty-

14  one cases.  I understand --

15         THE COURT:  But again, this is just -- I mean -- I --

16         MS. HAFFEY:  And it's just the paragraph -- the

17  portion (c) that concerns me.

18         THE COURT:  But it's just a -- it's an accountant,

19  isn't it?  I mean isn't this someone who can verify the

20  books -- the transfer was made?

21         MS. HAFFEY:  If that is the --

22         THE COURT:  I mean I'm -- look, I mean --

23         MS. HAFFEY:  -- if it's a business records --

24         THE COURT:  -- normally, that's what most --

25         MS. HAFFEY:  -- if it's a business records person I

1   need to identify --

2            THE COURT:  Right.

3            MS. HAFFEY:  -- I don't think that's an issue.

4            THE COURT:  And these are preference cases.

5            MR. HERMAN:  But, Judge, I don't think it's limited to

6   an accounting type.  There has to be somebody who knows --

7            THE COURT:  Well, you may have a -- you may have a --

8   I mean I guess you -- that's true.  You may have to have a

9   witness on insolvency also, I suppose.  Although most of these

10  are within the ninety days, right?

11           MR. HERMAN:  Judge, there were nine divisions, if I

12  understand the facts correctly.

13           THE COURT:  Right.

14           MR. HERMAN:  There may be nine different individuals

15  who were -- one for each of the divisions.

16           THE COURT:  Right.

17           MR. HERMAN:  I don't know how they organize their

18  accounting functions.

19           THE COURT:  Well, I'm happy to extend it if you're

20  having problems on identifying the people.  I think the DACOR

21  stuff should be done in thirty days.

22           Okay, so let's --

23           MS. HAFFEY:  That will be no problem, Your Honor.

24           MR. HERMAN:  Right, Judge.  And as --

25           THE COURT:  -- let's go thirty and thirty on that.

Page 52

1          MR. HERMAN:  -- as one of my colleagues just reminded

2     me, there are only nineteen cases that are Rule 15 cases at

3     this point.  But I guess it applies to 4(m) as well.

4          THE COURT:  Really?  Oh, yes.

5          MR. HERMAN:  I think that's about right.

6          THE COURT:  Okay.  Well, no, because there are only

7     fifteen that are going right to the merits.  So I think it's --

8          MR. HERMAN:  Right.

9          MS. HAFFEY:  Right.  There's more.

10         THE COURT:  -- yes, so there are more.  But anyway,

11    it's -- I -- the deadline should be -- for the initial

12    disclosure should be thirty days and thirty days.  And I think

13    we're clear on what's the language in (c).

14         MR. HERMAN:  Thirty days and thirty days from January

15    1, Judge?

16         THE COURT:  The later of January 1 or the time the

17    order is submitted, which is going to probably be before

18    January 1.

19         MS. HAFFEY:  Thank you, Your Honor.

20         THE COURT:  Okay.  All right.

21         MR. HERMAN:  Your Honor, how would you like to

22    proceed?  Would you like to ask me questions or you want me to

23    make a presentation at this point?

24         THE COURT:  Well, just going through the points that

25    Ms. Haffey was talking about, and then we can come back on --

DPH HOLDINGS CORP., et al.,

Page 53

```
 1    to my mind, with any adjournment, I will always ask the parties
 2    is it on consent or not.  And if it's not, I'll ask for a good
 3    reason.
 4            So I guess I'm really not -- and it's my calendar,
 5    ultimately.  And it's a very busy calendar.  And -- so whether
 6    the debtor does this on its own or not, my view is that we
 7    should just stick to that process.  It's on --
 8            MR. HERMAN:  Which process, Judge?
 9            THE COURT:  Adjournments will be granted, subject to
10    the Court's calendar, on consent, provided that there's ten
11    days' notice or for good reason.
12            MR. HERMAN:  Judge, why don't we build something very
13    easy into it, like each side can write a letter to you.  We
14    don't have to have a hearing --
15            THE COURT:  Right.
16            MR. HERMAN:  -- if there's a problem.  Or a telephone
17    conferences --
18            THE COURT:  No, let's just phone call.  Yes
19            MR. HERMAN:  -- a phone call.
20            THE COURT:  Right.
21            MR. HERMAN:  Why don't we build that in, Judge, that
22    if there's any dispute about adjournments, the Court will make
23    itself available to resolve them --
24            THE COURT:  Right.
25            MR. HERMAN:  -- subject to its calendar.
```

1          THE COURT:  Right.

2          UNIDENTIFIED SPEAKER:  But it'll be bilateral.

3          MR. HERMAN:  And it's bilateral that way.

4          THE COURT:  Right.

5          MR. HERMAN:  And Your Honor is controlling --

6          THE COURT:  But ten days' --

7          MR. HERMAN:  -- his own calendar.

8          THE COURT:  -- ten days' notice.

9          MR. HERMAN:  Ten days.  And the reason, Judge, unless

10    parties consent, is their folks out of town would have to

11    travel in.

12         THE COURT:  I understand.  It also -- we're talking

13    about evidentiary hearings here.  And I set every day.  So it's

14    going to be hard to rearrange the schedule.

15         MR. HERMAN:  Understood.

16         THE COURT:  Okay.  All right.

17         Okay.  Let's turn to the settlement procedures here.

18         First -- and I'm working off of the debtors' proposed

19    order on this -- it wasn't clear to me what the initial meet

20    and confer was supposed to be about.  Was it really intended to

21    discuss the initial aspects of settlement?

22         MS. HAFFEY:  Yes.

23         THE COURT:  Okay.

24         MS. HAFFEY:  To resolve the entire matter, if

25    possible, Your Honor.

1           THE COURT:  Okay.

2           MR. HERMAN:  Your Honor, may I make a comment?

3           THE COURT:  Right.

4           MR. HERMAN:  I think -- I'm hopeful we'll bridge the

5    gaps.

6           THE COURT:  Okay.

7           MR. HERMAN:  My suggestion would be, Judge, that

8    there -- that we can set up a meet and confer after both sides

9    have delivered their prejudice --

10          THE COURT:  Their initial declarations.

11          MR. HERMAN:  Right, their initial declarations --

12          THE COURT:  Right.

13          MR. HERMAN:  -- it makes sense, shortly thereafter.

14   Or we should be able to go straight to mediation on the Rule 15

15   issues only, Judge.  And since that's the only matter that's

16   before the Court at this point, I think that's the only thing

17   that the rule governs.

18          THE COURT:  Well, let me -- all right.  It does seem

19   to me that the parties should at least be required to meet and

20   confer on the potential for a settlement.  I am a big fan of

21   mediation.

22          And as I think everyone in this room understands, the

23   litigation of a preference claim on the merits at a trial is

24   something that almost never happens.  I've done it -- and I've

25   had thousands and thousands of preference claims.  I've done

1   it, maybe, twice in nine years.  And both times involved

2   parties that really didn't have lawyers and just didn't know

3   what to do.  And they basically wanted me to resolve it for

4   them.

5         So there is a good reason to push the parties to do

6   that sooner rather than later.  The only issue I have here is

7   that the -- some of the objectors have said they really want to

8   leave that as an option for themselves.  And I'm really of two

9   minds about that.

10         MR. HERMAN:  I have a couple thoughts about mediation,

11   Judge.

12         THE COURT:  Let me just finish one other point.

13         MR. HERMAN:  Sure.

14         THE COURT:  It seems to me that to be truly useful, a

15   mediator would want to hear about the merits as well.  I just

16   think that's what the person would do on almost every occasion.

17         What I don't see requiring here, though, is an

18   elaborate presentation on the merits.  I think the parties

19   should be prepared to discuss the merits, I don't think they

20   need to be put to elaborate mediation statements about the

21   merits of the preference claims.

22         MR. HERMAN:  I don't say this with hubris or ego,

23   Judge, but I recently some difficult preference cases as

24   mediator.

25         And the one thing that really troubled me about the

1    process they're setting up is they're trying to set up

2    something that's compulsory.  And you know what happened with

3    the good-faith argument.  People who go to mediation really

4    need to want to be there.  And it's a noncompulsory -- it's a

5    noncompulsory dispute resolution mechanism.

6           Put that aside for a moment, Judge.  The model I

7    usually use is I allow the parties to exchange whatever

8    documents they want to exchange and provide the mediator with a

9    confidential mediation statement so the mediator can be

10   informed without giving each other, the parties, a free shot at

11   discovery.

12          And I was very concerned about that because, as you

13   understand, Judge, the defendants here don't want to be put

14   into the position of making the plaintiffs' case.  And they

15   ought not be.

16          THE COURT:  Well, that's what I said.  I didn't -- I

17   really didn't think, to the extent it was going to be dealing

18   with the merits, the mediation should require elaborate

19   productions going to the merits.

20          MR. HERMAN:  My thought is that the mediation

21   statements, to the extent the parties want to submit them, in

22   confidence to the mediator, with the mediator to ask permission

23   to release parts of it.  And that's the way it would be a fair

24   process at this point.

25          Remember, Judge, there's no complaint filed now.

1          THE COURT:  Well, it seems to me the way it should

2     work is the parties should meet -- I mean must meet and confer

3     to discuss their ground rules for the mediation beyond the very

4     basic ones that you've just summarized.  So if they want to go

5     farther, if they want to get into real detail on an ordinary

6     course defense, for example, they can.  Because it may well be

7     that there's -- one of you actually has a slam dunk on that and

8     they'll settle it for one cent on the dollar, which happens.

9          On the other hand, I don't think you should be forced

10    to do that, but that you should be forced to at least address

11    the merits with the mediator.

12          MR. HERMAN:  With the mediator, Judge.

13          THE COURT:  Yes.

14          MR. HERMAN:  I'm perfectly happy as long as the

15    mediator takes confidential submissions to discuss virtually

16    any issue with the mediator.

17          THE COURT:  Right.

18          MR. HERMAN:  My experience is that that works.

19          THE COURT:  Okay.

20          MR. HERMAN:  And then the mediator asks permission to

21    disclose to the other side what's appropriate.

22          THE COURT:  Right.  Okay.

23          MS. HAFFEY:  If I can comment here.  Because I don't

24    think that we are in big disagreement here

25          The way we had set up the proposed order was a process

1    so that the mediator would get information.

2            THE COURT:  Right.

3            MS. HAFFEY:  I think the only difference that Mr.

4    Herman and I have is -- and it's a, I guess, a philosophical

5    one -- I've always seen it work better where the parties

6    exchange briefs so that you can share that -- the other side's

7    arguments and strengths and weaknesses with your business folks

8    so that mediation can be successful.

9            THE COURT:  Well, I think that's what the parties

10   should be forced to talk about at the meet and confer session.

11           MS. HAFFEY:  Okay.

12           THE COURT:  You may be willing to do that.  But if

13   not, I think they should provide -- should be --

14           MR. HERMAN:  Your Honor, if I'm writing an advocacy

15   piece, it's going to look different than if I'm writing a

16   confidential statement to a mediator.

17           THE COURT:  No, I understand.  But -- that's fine.

18   But I think that -- this is what I would like on this.  The

19   parties meet and confer as set forth in here to discuss the

20   scope of the mediation beyond that set forth immediately below.

21   Okay?

22           And then --

23           MR. HERMAN:  And can we meet and confer by phone,

24   Judge?

25           THE COURT:  Yes.  I think that's what this --

1          MR. HERMAN:  By phone conference.

2          THE COURT:  -- I think that's -- yes, it says hold a

3    telephonic meet and confer.

4          MR. HERMAN:  Okay.

5          THE COURT:  And then for the -- and I think there

6    should be a businessperson there with authority -- I don't know

7    if it's ultimate authority -- for that first conference.  It

8    should be someone who knows what he's talking about or she's

9    talking about.

10         The mediation itself, for those who have teed up Rule

11   4(m)/Rule 15 issues, clearly will cover those issues.  And the

12   mediator will have the -- will have access to what's been

13   submitted on that.

14         In addition, the parties will discuss the possibility

15   of settlement on the merits and provide the mediator in advance

16   of the mediation with a brief confidential mediation statement

17   with regard to their views on the merits.

18         The mediator may -- certainly has the -- well, the

19   other point -- this should be governed generally and expressly

20   by general order M-390.  So you don't need to have anything in

21   here about good faith; it's in the order.  And -- it's in order

22   390.

23         And the -- let me just raise one other point with you.

24   It probably seems -- I think it is fair to me, in addition to

25   providing the confidential mediation statement on the merits to

Page 61

1    the mediator, the parties should identify to each other the

2    issues that they would raise in the mediation, i.e., if you're

3    raising an ordinary course defense, if you're raising a new

4    value defense.  Just so there's a basic sense of what's being

5    raised here so they can have their financial person focusing on

6    that and, similarly, you can have -- it's probably not going to

7    be much on their end.  I mean you have their complaint, so you

8    know what it is.

9            MR. HERMAN:  Well, actually not, Judge.  That's part

10   of the problem.

11           THE COURT:  Well --

12           MR. HERMAN:  Actually not.

13           THE COURT:  They've given you the model -- the

14   proposed complaint.

15           MR. HERMAN:  Right, Your Honor.  And Your Honor's

16   already asked them to update those proposed complaints, to some

17   extent, with regard to a number of defendants on the record.

18   So that's another issue that's out there.

19           THE COURT:  All right.

20           MS. HAFFEY:  I guess I don't understand what the issue

21   is.  We provided the reconciliation and we've done the other

22   things the Court has ordered to do at this date.

23           THE COURT:  Are those in the form of a proposed

24   amended complaint at this point?

25           MS. HAFFEY:  We have identified the transfers that

DPH HOLDINGS CORP., et al.,

Page 62

1    have -- that would be taken away from the proposed amended

2    complaint, if that's the process that happens, to each of the

3    defendants.  And --

4            THE COURT:  All right.

5            Well, as long as they give you a list of the transfers

6    that they're focusing on, I think that should be enough.

7            MS. HAFFEY:  We have --

8            MR. HERMAN:  We still don't have a list of transfers

9    that we can figure out what they're talking about.

10           THE COURT:  Well, that's a separate issue.  I mean

11   they only go as far as they can go.

12           MR. HERMAN:  Right.

13           THE COURT:  And that's what you'll tell the mediator.

14           MR. HERMAN:  Right.

15           THE COURT:  I mean that'll be on your list, right?

16           MR. HERMAN:  Your Honor, that's why we're --

17           THE COURT:  All right.  So they should --

18           MR. HERMAN:  -- part of the reason we're here today.

19           THE COURT:  -- they should provide you, if they

20   haven't already, the list of the transfers that they're looking

21   to avoid in the proposed amended complaint.

22           MR. HERMAN:  And an amended complaint in the form that

23   they actually will file.

24           THE COURT:  Well, I don't know if they have to

25   actually file -- prepare the proposed amended complaint -- or

1    is that --

2          MS. HAFFEY:  I don't think we have a problem with

3    that, Your Honor.

4          THE COURT:  Okay, fine.

5          MS. HAFFEY:  It probably would facilitate things for

6    those defendants that have --

7          THE COURT:  Then -- all right.  So in addition to the

8    confidential brief mediation statement, each side will provide

9    the other -- obviously, all subject to Rule 408 in the general

10   order -- their list.  Well, the debtor will provide their

11   proposed amended complaint which identifies the transfers.  The

12   defendant will provide its list of issues.  That's -- I think

13   that's sufficient.

14         And it's solely for purpose of settlement.  If you

15   think of another issue later, before trial, there's no --

16   there's no harm, no foul.  It's not --

17         MR. HERMAN:  I'll ask one more question, Judge.  Where

18   do you see these mediations taking place?  In what locations.

19         THE COURT:  Well --

20         MR. HERMAN:  The debtor picked a location other than

21   necessarily the Southern District of New York.

22         THE COURT:  Right.

23         MR. HERMAN:  So --

24         THE COURT:  I think it's --

25         MR. HERMAN:  -- how do we cut the costs?

```
 1          MS. HAFFEY:  It --

 2          THE COURT:  -- look, I think it's -- I actually, when

 3   I first read their order, I said good for them, because I

 4   thought a lot of people would actually be in Michigan.  But --

 5   or in the Midwest because there are a lot of suppliers.

 6          But it should really be for the convenience of the

 7   parties.  And if there's a dispute, I'll decide it.

 8          MS. HAFFEY:  And that was --

 9          MR. HERMAN:  But I don't have to go to Michigan,

10   Judge?

11          THE COURT:  Well --

12          MS. HAFFEY:  That was the sole intent of put it

13   together, that if people --

14          THE COURT:  -- well, your client -- if your client's

15   in Michigan, they may want you to go there.

16          MR. HERMAN:  No, they may want, but my client happens

17   to be in Texas.

18          THE COURT:  All right.  Well, that's a different

19   story.

20          MS. HAFFEY:  We'll work that out.

21          THE COURT:  That wouldn't have been in because you're

22   outside -- that's outside of 140 miles of Troy.  So --

23          MS. HAFFEY:  Right.

24          MR. HERMAN:  Right.  So --

25          THE COURT:  -- you wouldn't have had to have gone to
```

1    Michigan, anyway.

2            MR. HERMAN:  You know, I'd probably be comfortable

3    saying Michigan or New York or the convenience of the parties

4    as otherwise agreed to.

5            THE COURT:  Okay.  That's fine.

6            MS. HAFFEY:  And I think that's how we had it set up.

7            THE COURT:  Well --

8            MR. HERMAN:  I don't think you have New York

9    mentioned.  That's my recollection.

10           THE COURT:  Not everyone here's a New York lawyer,

11   though.

12           MR. HERMAN:  That's for sure, Judge.  Although I

13   think -- well, maybe everybody in the courtroom is at this

14   point.  Well, not some of the folks from Detroit.

15           THE COURT:  Okay.  Okay.  All right, so I think that

16   covers that.

17           Now, this is just a mediation --

18           MS. HAFFEY:  Could I ask a --

19           THE COURT:  -- for the Rule 15 folks.  I think that

20   mediation on the merits, for those who are going right to the

21   merits, should be more detailed.  I don't have any real problem

22   with what they're proposing there as far as a more detailed

23   statement on the merits.

24           I'm not requiring you folks to go through it twice, if

25   that's what you're worried about.

1          MR. HERMAN:  Right.  No, Judge.  I -- again, I have

2     this concept that folks are going to disclose more to the

3     mediator --

4          THE COURT:  Right.

5          MR. HERMAN:  -- if they're acting in good faith than

6     they will to each other.  And that's just the nature of

7     mediation.

8          THE COURT:  Well, actually, at that point, you'll

9     have -- remind me.  As far as the mediation, you'll have --

10    you'll have had an answer by then, right?  Or a motion.

11         MS. HAFFEY:  I'm sorry?

12         THE COURT:  Mediation for those people who are going

13    right to the merits.

14         MS. HAFFEY:  We will have already had an answer.

15         THE COURT:  All right.  I think the same procedures,

16    then --

17         MS. HAFFEY:  Right.

18         THE COURT:  -- for both.

19         MS. HAFFEY:  Just a point of clarification for me,

20    then, in regards to the Rule 15 group of defendants.  The

21    mediation, is it this Court's thought that that mediation would

22    only focus on the Rule 15?

23         THE COURT:  No.

24         MS. HAFFEY:  Okay.

25         THE COURT:  No, absolutely not.

1          MS. HAFFEY:  Because we --

2          THE COURT:  It focuses on the --

3          MS. HAFFEY:  I thought you were clear in October that

4     you --

5          THE COURT:  It's just that the mediator will have a

6     lot more information on the Rule 15 issues.

7          MS. HAFFEY:  Right.  Okay.

8          MR. HERMAN:  I think Your Honor said that the parties

9     should meet and confer about the scope of --

10         THE COURT:  Well, but the scope will include what I've

11    just set forth, which is mediation on Rule 15 and the merits.

12    The disclosures will be, at a minimum, what I've just outlined.

13    They'd meet and confer as to whether they're willing to provide

14    more disclosure.  If -- the less disclosure you provide, the

15    more risk that there may not be a settlement.  So you should

16    talk about that.  That's all.  But I think -- as a practical

17    matter, you'll spend time on the merits, I think, for most

18    people.

19         The one other issue where there was a slight

20    disagreement was the duration of the mediation.  On a

21    preference case, I would think that you should pretty much be

22    done after four hours.  I think it can be longer if the parties

23    agree.

24         But I really don't want to -- the problem with setting

25    a longer date is that people just horse around.  Not in terms

1    of acting in bad faith, but it's just -- I did a mediation

2    myself a couple weeks ago.  And I told both sides what it will

3    settle at.  And then we spent eight more hours.  And they --

4    and actually, they broke because it was nighttime, they

5    couldn't reach people in London.  And then two days later, it

6    settled at that exact number.  And they spent another 100,000

7    dollars getting there.

8            So I'm kind of inclined to limit it to four hours,

9    subject to the parties' agreement to continue longer.  And that

10   way, the debtor can do two in one day, too.

11           MS. HAFFEY:  We have no objection to that, Your Honor.

12           THE COURT:  Okay.  All right.

13           MR. HERMAN:  I've seen that work, Your Honor.

14           THE COURT:  Okay.  All right.

15           As far as the identifying a mediator, it's -- yes,

16   it's forty-seven cases, but that's a lot less than 2,000.  And

17   I have a couple people in mind who do preference cases all the

18   time and know the issues.  But did you guys have any

19   suggestions as to who might be a mediator for this?

20           MR. HERMAN:  I have a conflict, Judge.

21           THE COURT:  Yes, I understand.  But did you have any

22   thoughts about that?  The debtors' proposed order actually

23   identified people -- I mean had it blank for identifying

24   people.

25           MS. HAFFEY:  Right.

1          THE COURT:  Have you had any discussions about who you

2    think would do a good job on this?

3          MS. HAFFEY:  We've had discussions internally; we have

4    not had a chance to talk with defense counsel and we will.

5          THE COURT:  All right, well, why don't you -- before

6    you submit the order, why don't you have those discussions?  My

7    thought would be that these are -- I would be reluctant to

8    impose this on a judge, one of my colleagues.  It's not like --

9    if there were 2,000 of them and I was -- and I wanted help to

10   winnow them down to forty-seven, I'd impose -- I'd ask a judge

11   to do it, and I'm sure he or she would.

12          But it seems to me, at this stage, you want someone

13   who's a practicing lawyer that deals with preferences all the

14   time.  And there are a few people out there that do that.  And

15   to the extent that there are one or two of those people who

16   also actually know the auto industry, that would be helpful,

17   but not necessary.  But it would be helpful.  So I would ask

18   you to, maybe, to identify a couple people like that.

19          MS. HAFFEY:  Okay.  We'll work together and see if we

20   can come up with a proposed list.

21          THE COURT:  Okay.  Does anyone have any issues with

22   that sort of job description?  Okay.  All right.

23          All right.  Okay.  Is there an issue -- on the merits,

24   discovery would be by the Federal Rules.  And that was a change

25   I was going to suggest, anyway.  My practice with preference

1   cases is basically in a pretrial conference to set the

2   discovery deadline and then have the parties follow the Federal

3   Rules.  And if they're not finished and it's their fault, it's

4   too bad; if it's someone else's fault, I'll extend the

5   deadline.

6            But as far as the discovery on Rule 15, I guess my

7   inclination is also to set a deadline and have it be done by

8   the Federal Rules within that.

9            And as far as Rule 15 is concerned, again, I think --

10  you know your internal prejudice because you've been focusing

11  on it for several months.  As far as the debtors are concerned,

12  you're going to get, I think, what's fair for you to be

13  provided with on that.  So I don't know.  What are we talking

14  about here?  Sixty days?  Ninety days?

15           MR. HERMAN:  Sounds about right.

16           Your Honor, I can speak for Victory Packaging, but I

17  see other folks nodding in the back of the courtroom, and I --

18           THE COURT:  Right.

19           MR. HERMAN:  -- don't know what the folks on the phone

20  think.  But it's acceptable to Victory.

21           THE COURT:  Which?

22           MR. HERMAN:  Sixty or ninety days.

23           THE COURT:  All right.  Well should we pick --

24           MR. BARRON:  Ninety.

25           THE COURT:  Well, I was going to say shall we pick --

```
 1              MR. HERMAN:  Sorry.  Ninety.

 2              THE COURT:  -- shall we pick seventy-seven so we stay

 3      with seven?

 4              MR. BARRON:  Ninety days from when?

 5              MR. HERMAN:  Eighty-four.

 6              THE COURT:  Well, I was going to say -- I would --

 7      well, the close of the mediation is really when you want to go

 8      with the discovery, right?  Because you don't want to be

 9      spending any money on it.  So maybe seventy-seven days from

10      then, you're done with it.

11              MR. HERMAN:  Ninety-one?

12              MR. BARRON:  Can we make it ninety just because it's

13      easier to count?

14              MR. HERMAN:  Make it ninety-one, Judge.

15              MR. BARRON:  Three months.

16              THE COURT:  All right.  Ninety-one.

17              MR. HERMAN:  Ninety-one because we're keeping the rule

18      of seven.

19              MR. BARRON:  Okay.

20              MR. HERMAN:  It's a multiple of seven, ninety-one.

21              MR. BARRON:  After the close of mediation?

22              THE COURT:  Right.

23              MR. BARRON:  Thank you.

24              THE COURT:  And I will extend a deadline like that if,

25      through no fault of the party, they haven't been able to get
```

1  what they need.  But they shouldn't wait until the last minute

2  to ask me for that.  If they're -- if, for some reason, the

3  other side is, in your view, not being responsive, don't wait

4  till the end of the period to tell me that.  Tell me that early

5  so that we can stick to the time table.

6          Okay.

7          MR. BARRON:  Judge, may I ask a question of Your

8  Honor?

9          Bill Barron for the Heraeus defendants.

10          You spoke briefly about merits discovery being just

11  under the Federal Rules; don't try to micromanage it in this

12  document is what I inferred you to be --

13          THE COURT:  Correct.

14          MR. BARRON:  -- saying.

15          One question.  Under the Federal Rules, I presume once

16  the admitted complaint is allowed and filed and answered --

17  maybe not even answered -- there would be an ordinary Rule 16

18  scheduling conference and Rule 26 initial disclosures, et

19  cetera.  I would assume those are embraced in what you were

20  saying.

21          THE COURT:  Well, my practice is to have a pretrial

22  conference shortly after the answer is filed.  So that -- we're

23  now talking about the Rule 15 people.  I'm not really -- those

24  who are going on to the merits, I think -- you've proposed a

25  discovery cutoff and that discovery cutoff date is generally

DPH HOLDINGS CORP., et al.,

1    the date I give for people in a preference case unless they ask

2    for more time.  And no one has, except -- well, have the two

3    who responded who are going right to the merits, have they

4    asked for more time?

5            MS. HAFFEY:  The two that responded, Your Honor,

6    adopted the briefs of the defendants that --

7            THE COURT:  Oh, well that doesn't really --

8            MS. HAFFEY:  -- crossed off the --

9            THE COURT:  -- that doesn't really help.

10           MS. HAFFEY:  -- proposed order after the Rule 15.  So

11   really --

12           THE COURT:   I -- in my view, the discovery cutoff

13   date that you proposed is acceptable, absent someone showing me

14   good cause otherwise for the merits discovery, for those who

15   are going right to the merits.  It should not apply to the Rule

16   15 people.

17           Although, I'm telling you now that normally, I impose

18   a ninety-day discovery period.  You may have unique issues that

19   you'll tell me about at the pretrial conference.

20           MR. HERMAN:  Your Honor, so -- are you adopting the

21   Rule 15 proposal that -- or it's going to be two separate

22   orders, one regarding the Rule 15 people and another one to go

23   right -- the folks that going right to the merits?

24           THE COURT:  Yes.  It can be in the same order, but

25   it'll --

DPH HOLDINGS CORP., et al.,

1          MR. HERMAN:  Well, Your Honor --

2          THE COURT:  -- I mean they can define the --

3     whatever's easier to draft.

4          MR. HERMAN:  The litigation may take turns and twists

5     that are not anticipated.  We truly believe that --

6          THE COURT:  Well, all I'm saying is they can -- they

7     can define your group --

8          MR. HERMAN:  Right.

9          THE COURT:  -- and then they could say nothing in the

10    following sections applies to this group.  I mean they can put

11    it one order.  But as an ultimate matter, the merits discovery

12    and procedures don't apply to your group.  Although I'm telling

13    you again, in large measure, they ultimately would if there was

14    a --

15         MR. HERMAN:  Judge, I understand that.  And the

16    elephant in the room is Stern v. Marshall and the litigation

17    involved in Cudare Brothers (ph.) and whether parts or all

18    these cases are amenable to resolution finding by Your Honor.

19         THE COURT:  They're just preference cases, right?

20         MR. HERMAN:  Well, Your Honor, there are contract

21    issues, folks maybe ask for jury trials, there's all kinds of

22    things that could happen.

23         THE COURT:  There are contract issues?

24         MR. HERMAN:  Yes, Your Honor.

25         THE COURT:  I thought these were just preference

1    cases.

2            MR. HERMAN:  No, Your Honor.  I have a contract issue.

3    We assert that there's been an assumed contract.  Remember the

4    whole -- that whole issue --

5            THE COURT:  Well, but that's -- look --

6            MR. HERMAN:  I don't know that Your Honor can finally

7    decide that.

8            THE COURT:  -- all right, I -- I'm not -- you know how

9    I think about this.

10           MR. HERMAN:  I do.  I'm just trying to reserve the

11   rights, Judge.

12           THE COURT:  365 and 547 are unique to the Bankruptcy

13   Code.  But that's fine.  We'll hear all about that if

14   there's -- when there's a pretrial --

15           MR. HERMAN:  Exactly, Judge.

16           THE COURT:  -- if and when there's a pretrial

17   conference.

18           MR. HERMAN:  I just want to preserve those rights.  I

19   don't want to debate it, Your Honor.

20           THE COURT:  No, everyone's -- I mean the merits people

21   reserve that, too.

22           All right.  On the -- well, I'm not sure there's

23   anything open.  Let me go through my markup of the order -- or

24   my notes on the order, I mean.

25           Oh, you know?  I understand that both of you were

Page 76

1    prepared to go to trials with direct testimony solely on the

2    declarations, which is my practice.  But I always have a safety

3    valve there, which is if the declarant's a hostile witness or

4    not under your control, you can't do it -- you can't write

5    their declaration.  So there should be that "except when the

6    witness is not under the party's control" should be in there

7    for on that.

8            I've never imposed page limits.  I figure briefs are

9    more effective if they're short, so -- but I don't know how

10   strongly people feel about that.  What I really don't like is

11   people making motions for more page limits.  So --

12           MR. HERMAN:  Let's not have page limits, Judge.

13           THE COURT:  I -- these are fine.  I think that's fine

14   to have the page limits in here.

15           And we already dealt with -- the debtors have revised

16   on the time to answer or move on amended complaint?  That's now

17   the regular time; it's not seven days?

18           MS. HAFFEY:  That's correct.

19           THE COURT:  Okay.  All right.  So I think -- I think

20   that's it.

21           MR. HERMAN:  Judge, on page limits.  Instead of motion

22   practice if somebody needs more, they should -- we can try to

23   work it out and then --

24           THE COURT:  Yes.  Right.

25           MR. HERMAN:  -- contact the Court instead of having a

1    motion practice.

2            THE COURT:  Right.  I get it.  I'm putting people on

3    notice that -- well, I've never -- I've never restricted page

4    limits because I think it's usually to the litigant's

5    disadvantage to have longer --

6            MR. HERMAN:  Your Honor, why don't you just strike

7    that out, then?

8            THE COURT:  -- longer pages.

9            MR. HERMAN:  And you'll have to just trust some people

10   to be reasonable.

11           THE COURT:  Right.

12           MS. HAFFEY:  Can I ask a clarifying question?  I think

13   I understand this, but I just want to be certain.

14           So regarding a Rule 15 defendant after we're through

15   the Rule 15 hearing process and if the case is proceeding to a

16   merits trial, they'll --

17           THE COURT:  The debtor will probably schedule a

18   pretrial conference.

19           MS. HAFFEY:  And the scheduling order for that

20   particular case will be set at the pretrial conference?

21           THE COURT:  Yes.  And it should say that the debtor

22   and the defendant shall have discussed an appropriate discovery

23   cutoff date before the pretrial conference.

24           MS. HAFFEY:  Okay.

25           THE COURT:  The only -- I mean the other point I had

1    here -- and I just want to be clear on this; I want to make

2    sure we're all on the same page on this -- is that while these

3    are called Rule 15 prehearing and hearing procedures, I really

4    do want that record to serve two purposes, both for Rule 15 and

5    for the remaining open 4(m) issue.

6          MR. HERMAN:  Your Honor, as a matter of clarification,

7    keep calling it prejudice affidavits --

8          THE COURT:  Right.

9          MR. HERMAN:  Does that --

10         THE COURT:  Well, it's notice as well.

11         MR. HERMAN:  -- does it need to include frustration

12   arguments and all other arguments --

13         THE COURT:  No.

14         MR. HERMAN:  -- defendants will have against --

15         THE COURT:  No.

16         MR. HERMAN:  -- the Rule 15 motion.

17         THE COURT:  Well, I don't know what frustration --

18   what do you mean by frustration?

19         MR. HERMAN:  One -- frustration is one of the -- one

20   of the defenses that's in possibility for the complaint to go

21   forward.

22         MR. BARRON:  Futility.

23         MR. HERMAN:  Futility, rather.  I'm sorry.  Futility.

24         THE COURT:  No, no, no.  I've already -- I've already

25   dealt with that.  I'm really just focusing on the factual

DPH HOLDINGS CORP., et al.,

1   record for Rule 4(m) as well as Rule 15, which, I think,

2   overlaps --

3          MR. HERMAN:  Yes, but I -- but I -- but I think

4   futility

5          THE COURT:  -- a hundred percent, which is --

6          MR. HERMAN:  -- has not been fully briefed and fully

7   argued.

8          THE COURT:  -- which is -- I'm sorry, what?

9          MR. HERMAN:  The futility arguments have not been

10  fully briefed and argued --

11         THE COURT:  No, I think they have.

12         MR. HERMAN:  -- and evidence presented.

13         THE COURT:  I think they -- I believe they --

14         MR. HERMAN:  No, they have not.  They have not.

15  Really, they have not.  So --

16         THE COURT:  I don't -- that was the whole point on the

17  Rule 15 is that people objected, saying that this is --

18         MR. HERMAN:  Futile.

19         THE COURT:  -- futile, yeah.  I've already dealt with

20  that.  I told them to amend their complaint.

21         MR. HERMAN:  Your Honor, we still have the contract

22  issue, which goes to futility if they can't meet their -- meet

23  the elements of a preference if there's been an assumed

24  contract.  That issue's still floating around out there.

25         THE COURT:  Oh, unique issues.  All right.  I

1    understand now.

2            MR. HERMAN:  Right.  Sorry.

3            THE COURT:  I understand that point.

4            MR. HERMAN:  All Rule 15 matters have to be

5    adjudicated.

6            THE COURT:  That haven't already been ruled on.

7            MR. HERMAN:  Correct, Judge.

8            THE COURT:  Right.  The unique-to-the-defendant

9    issues.  And there are -- there are two or three who have, like

10   your client, asserted that the contract had been assumed.

11   That's fair.

12           MS. HAFFEY:  So, to Mr. Herman's point, then, they

13   would be included in that declaration so that --

14           THE COURT:  Yes.  Right.

15           MS. HAFFEY:  -- the reorganized debtors are on notice

16   as to what that --

17           MR. HERMAN:  So it's broader than futility; it's going

18   to be all Rule 15 issues --

19           THE COURT:  No.  No.

20           MS. HAFFEY:  That haven't already been --

21           MR. HERMAN:  -- that are still open.

22           THE COURT:  That are unique to the -- all Rule 15 that

23   are unique to the particular defendant --

24           MR. HERMAN:  We'll raise them.

25           THE COURT:  -- and that have not already been ruled

1    on.

2         MR. HERMAN:  Right.

3         THE COURT:  Some of you have already -- I mean I ruled

4    on some of these already.

5         MR. HERMAN:  Some of them.

6         THE COURT:  For example, you said you haven't

7    identified the transfer.  And I said well, you have to amend

8    the complaint to do that.  So that's done with.

9         MR. HERMAN:  No, I'm talking about -- right, specific

10   issues --

11        THE COURT:  Okay.  All right.

12        MR. HERMAN:  -- that you have not ruled on -- or, to

13   the best of my knowledge, you have not ruled on.

14        THE COURT:  Okay.  And the -- and then that also --

15   and I think this proposed order recognized this.  It included

16   notice to the extent the debtor disputes whether the defendant

17   got notice or not of the order.  And the -- so that should --

18   that should be reflected in the order as far as the issues to

19   be tried.

20        MR. BARRON:  On that last point, Your Honor, you were

21   mentioning the notice issue.  I was not able to be part of the

22   call, at least all of it, yesterday.  I don't know that there

23   was a resolution of dispute, which I believe exists.

24        The debtor wanted to be able to take discovery on what

25   I think it calls constructive notice.  In other words, somebody

1    just saw a proposed plan of reorganization or a disclosure

2    statement.  I believe you ruled back in October that those are

3    issues of -- a matter of record.  In other words --

4            THE COURT:  Well --

5            MR. BARRON:  -- there's no need for discovery on that.

6            THE COURT:  -- I guess what I thought was -- the only

7    aspect I thought was open on that -- and I did reread the

8    transcript this morning -- was if someone's affidavit said we

9    knew nothing about this, then they -- it seemed to me that they

10   could cross-examine that person, that witness, either if he's

11   speaking on his own behalf or on behalf of the organization.

12           MR. HERMAN:  So --

13           THE COURT:  If they chose to.  I'm not sure they will.

14   But they may just simply say look, how -- then they were

15   wearing a blindfold because anyone would know it.

16           They may take that approach and -- but they may want

17   to test that person if he says or she says in his affidavit

18   that Methode did not know, period.

19           MR. HERMAN:  Or you may hear, though, that parties --

20           THE COURT:  But that's not -- that's not constructive

21   notice; that's actual notice.

22           MR. HERMAN:  Right.  Actual notice.

23           THE COURT:  So I think, going -- Mr. Barron, going

24   back to your point, if it's just --

25           MR. BARRON:  It --

1           THE COURT:  -- it's -- I'm -- that's actual notice.

2     So they're able to test in averment that we didn't actually

3     know.  But they -- constructive notice is a legal concept.

4     Right.

5           MR. BARRON:  Because I thought your ruling back in, I

6     think, October --

7           THE COURT:  So, just to be clear, they can't -- if

8     someone says, as a matter of fact, we did not know, then they

9     can examine that person.  But if their only argument is that,

10    as a matter of law, you should say that, objectively, they had

11    constructive notice, then there's no need to take discovery on

12    that.

13          MR. BARRON:  I think I understand.

14          THE COURT:  Okay.

15          MR. BARRON:  I think the record will be clear.  But

16    the fact is, I think all of these Rule 15 defendants and those

17    who aren't even in the room today have put in one or more

18    affidavits saying we had no idea we had been sued.

19          THE COURT:  Right.

20          MR. BARRON:  If that makes them candidates for a

21    deposition, that's what I wanted to understand.

22          THE COURT:  Well, I think it does, although I don't

23    know what -- I'm assuming the debtors -- they have a right to

24    test that; it's a factual assertion.

25          MR. HERMAN:  Or any theme similar to those, Judge --

1          THE COURT:  Right.  I think you --

2          MR. HERMAN:  -- where a party may have had reason to

3     believe it wasn't sued.

4          THE COURT:  Right.  So I mean I'm assuming that the

5     debtor will use its discretion on that.  But it's a factual

6     assertion; it's being offered as evidence, so they have a right

7     to take discovery on that.

8          MR. BARRON:  Understood.  Thank you.

9          THE COURT:  Okay.

10         MR. HERMAN:  Your Honor, I think you've already said

11    this, but I think it's a blanket issue.  If the parties -- and

12    I think this works for my client.  I think -- I suspect it

13    works for the debtor.  If there's a dispute about discovery, we

14    don't need formal motion practice --

15         THE COURT:  No.

16         MR. HERMAN:  -- we'd contact chambers.

17         THE COURT:  What you do on that is provide a letter to

18    chambers, CC'ing the other party.  And the other party should

19    really respond promptly, like in a day or so.  And then I'll

20    either respond by e-mail or, if I need to have a discovery

21    conference, I'll do that on the phone.

22         MR. HERMAN:  That's great.

23         THE COURT:  Okay.  And that's in -- that's in my

24    standard pretrial order that's on the website.  If you want to

25    put that paragraph in this, that's fine.

DPH HOLDINGS CORP., et al.,

Page 85

1          MR. HERMAN:  That's just efficient, Judge.  Thank you.

2          THE COURT:  Okay.  All right, anything else?  No?

3          MR. HERMAN:  I'm done, Judge.

4          THE COURT:  Okay.

5          MR. HERMAN:  Happy holidays.

6          THE COURT:  Thank you.

7          MR. HERMAN:  Thank you, Your Honor.

8          MS. HAFFEY:  Judge, one last thing.  Just so I

9     understand.  We'll be working, then, from the reorganized

10    debtors' --

11         THE COURT:  Yes.

12         MS. HAFFEY:  -- proposed order, making the changes

13    that this Court ordered today.

14         THE COURT:  Yes.  So I think what you should do is

15    circulate a blackline to all parties who were here, on the

16    phone, and who've filed objections.  And try to get it in to

17    chambers next week.  Although I recognize it's an odd week.  So

18    that's fine.

19         MS. HAFFEY:  Thank you, Your Honor.

20         THE COURT:  Okay.

21         MR. HERMAN:  Thank you, Judge.

22         MS. HAFFEY:  Happy holidays.

23         THE COURT:  Okay.

24     (Whereupon these proceedings were concluded at 11:41 AM)

25

Page 86

1

2                            C E R T I F I C A T I O N

3

4        I, Shalom Boroda, certify that the foregoing transcript is a

5        true and accurate record of the proceedings.

6

7        Shalom          Digitally signed by Shalom Boroda
                          DN: cn=Shalom Boroda, o, ou,
8        Boroda          email=digital1@veritext.com, c=US
                          Date: 2011.12.27 15:49:58 -05'00'
9        _____

10       SHALOM BORODA

11       AAERT Certified Electronic Transcriber CET**D 632

12

13       Veritext

14       200 Old Country Road

15       Suite 580

16       Mineola, NY 11501

17

18       Date:  December 27, 2011

19

20

21

22

23

24

25