MORRISON COHEN LLP
909 Third Avenue
New York, New York 10022
(212) 735-8600
Andrea Fischer, Esq.

*Attorneys for Paul Feinsilver, James A. Klotz*
*and Terrance O'Grady*

EMMET, MARVIN & MARTIN, LLP
120 Broadway
New York, New York 10271
(212) 238-3021
Edward P. Zujkowski, Esq.

*Attorneys for The Bank of New York Mellon, as Indenture Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| DPH HOLDINGS CORP., et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Reorganized Debtors. | : | (Jointly Administered) |
| | : | |

**REPLY BRIEF IN FURTHER SUPPORT OF MOTION OF THE
BANK OF NEW YORK MELLON, AS INDENTURE TRUSTEE,
PAUL FEINSILVER, JAMES A. KLOTZ, AND TERRANCE O'GRADY
FOR PERMISSION TO PROCEED IN THE APPROPRIATE TRIBUNAL
AS AGAINST THE REORGANIZED DEBTORS, OR ALTERNATIVELY, TO DIRECT
THE REORGANIZED DEBTORS TO CONTINUE TO MAKE ALL PAYMENTS OF
<u>PRINCIPAL AND INTEREST AS AN ADMINISTRATIVE CLAIM</u>**

The Bank of New York Mellon ("BNYM"), as successor indenture trustee ("Indenture

Trustee"), Paul Feinsilver ("Feinsilver"), James A. Klotz ("Klotz") and Terrance O'Grady

("O'Grady") (collectively, Feinsilver, Klotz and O'Grady are referred to as "Bondholders")

(collectively, the Indenture Trustee and the Bondholders are referred to as "Movants"), by and

through their attorneys, Emmet, Marvin & Martin, LLP, on behalf of the Indenture Trustee, and

Morrison Cohen LLP, on behalf of the Bondholders, in further support of their motion, allowing

the Indenture Trustee and the Bondholders to proceed in the appropriate tribunal to enforce the

provisions of certain bonds issued by Trumbull County Ohio under an Indenture dated July 1,

1994 (the "Bond") as against the Reorganized Debtors (the "Motion"), or directing the

Reorganized Debtors to continue to make Bond payments as an administrative claim. In further

support of the Motion, the Indenture Trustee and the Bondholders respectfully state as follows:

There are two main issues that are raised in the Reorganized Debtors' objection to the

Motion, and their argument fails as to each issue. The Reorganized Debtors argue that the

Indenture Trustee received notice of the Bar Date, as well as of the order approving the MRA,

and the MDA. This is simply untrue, as will be discussed below. Moreover, to the extent that the

Reorganized Debtors can overcome the notice issue, they go on to argue that the entry of the

order approving the MDA acted to discharge any obligations that the Debtors (and subsequently

the Reorganized Debtors) had to make payments on the Bonds. Their argument in support of this

proposition is rather tortured, and, as will be discussed below, ignores relevant provisions of

those agreements, as well as basic tenets of bankruptcy law. The Reorganized Debtors'

remaining arguments fail as well, as will be set forth below.

### I.      The Indenture Trustee Was Not Given Notice of the Bankruptcy Proceedings, and Due Process Demands that Its Pre-Petition Rights are Preserved

### A.      The Schedules

During the course of scouring the docket, schedules, and list of parties served (to the

extent that such review was allowed by the claims agent), it has become abundantly clear that the

debt to the Indenture Trustee (i.e. – the Bonds) was never properly scheduled in this case. It has

recently come to the attention of the Bondholders that the Indenture Trustee did not become the Indenture Trustee until a few months after the July 31, 2006 Bar Date had passed in this case. See press release dated October 2, 2006 annexed hereto as Exhibit A.

That discovery led to a review of the schedules and affidavits of service to ascertain whether the predecessor indenture trustee to the Indenture Trustee, JPMorgan Chase, had been scheduled as the holder of the Bond debt, or whether the predecessor indenture trustee to JPMorgan Chase Dai-Ichi Kangyo Trust Company of New York (the "Original Indenture Trustee") had been scheduled as the holder of the Bond debt. Neither was the case – the Bonds were simply not scheduled as debt owed to the Indenture Trustee or any of its predecessors. Nor was the debt listed as a debt to Trumbull County, Ohio.

Upon further review of all of the schedules to determine whether the Bond debt was mentioned at all, it became clear that the Debtors had incorrectly scheduled the debt. The Bonds appear on DAS LLC's Amended Schedule F as a debt owed to General Motors Corporation, as debt regarding "industrial development bond – County of Trumbull" in the amount of $49,702.87 in interest and $2,750,000.00 in principal – an amount which corresponds to that actually owed pursuant to the Bonds. A true and correct copy of this portion of Schedule F is annexed hereto as Exhibit B. DAS LLC did not give the Indenture Trustee or its predecessors notice of these proceedings because the Debtor had incorrectly listed General Motors as the creditor, rather than either Trumbull County or the Indenture Trustee. Given that the wrong entity was listed on the schedule as the holder of the Trumbull County debt (*i.e.* General Motors), General Motors is the party who assuredly received notice of all the relevant dates in this case, not the Indenture Trustee, who was assigned all of Trumbull County's rights, title and interest in the 1994 Loan Agreement (as defined below).

#3633082 v3 \022193 \0001

The Bonds are simply not scheduled, except as a debt to General Motors. The Reorganized Debtors have provided no explanation as to why they were not scheduled as a debt to Trumbull County or the Indenture Trustee (or its predecessor trustees). Nor has the Reorganized Debtor explained why, if the Bonds were simply an unsecured pre-petition debt, semi-annual payments of interest were made prior to the payment due January 1, 2010.

Given that the debt was not properly scheduled, it makes eminent sense that no notice was given. If the schedules do not reflect the debt, notice is not generated to the appropriate notice party. Why would the Debtors give notice of the proceedings to the Indenture Trustee or its predecessors - parties to whom the Debtors did not acknowledge they owed a debt? When a debt is not scheduled, and the parties do not receive notice of the proceeding, due process demands that the debt is not discharged. *See In re St. James Mechanical, Inc*., 434 B.R. 54, 62-63 (Bankr. E.D.N.Y. 2010):

> The correct remedy for such creditor is to treat the discharge as having no effect against the creditor's claim "An elemental component of constitutional due process. . . is the right to receive reasonable notice." *In re Pettibone*, 162 B.R. at 807-808 (citing *Pettibone v. Payne*, 151 B.R. 166) (Bankr. N.D. Ill. 1993). It is undisputed that "[a] confirmation order cannot act to discharge and enjoin a claim unless the claimant has received adequate notice of the bankruptcy proceeding and any of the claims bar dates fixed therein." *Id*. at 808 (citing *In re Longardner & Associates, Inc.*, 855 F.2d 455, 465 (7th Cir. 1988), *cert. denied*, 489 U.S. 1015, 109 S.Ct. 1130, 103 L.Ed. 2d 191 (1989) (citing *Mullane v. Cent. Hanover Bank and Trust Co.,* 339 U.S. 306, 313-314, 70 S.Ct. 652, 94 L.3d. 865 (1950))). *See In re CareMatrix Corp*., 306 B.R. 478, 486 (Bankr. D. Del. 2004) ("[W]hen a creditor does not receive adequate notice, the creditor is not bound by the confirmation order."); *Reliable Elec. Co. v. Olson Constr. Co.*, 726 F.2d 620, 623 (10th Cir. 1984) ("[N]otwithstanding the language of section 1141, the discharge of a claim without reasonable notice of the confirmation hearing is violative of the [F]ifth [A]mendment to the United States Constitution.").

> If a creditor is not bound by section 1141's discharge, that creditor retains all of his pre-petition rights against the debtor.

In this case, given the lack of notice of the Bar Date or the Modified Plan, the Indenture

Trustee simply cannot be bound by the Plan or the Plan Injunction contained therein.

B.    Notices

Despite the fact that the Bond debt was not scheduled (except *vis-a-vis* General Motors),

the Reorganized Debtors assert that BNYM received notice, and points to a number of notices

received by BNYM – however, such notices were not sent to BNYM in its role as Indenture

Trustee but were based on other debts to BNYM as set forth in the Debtors' schedules. Annexed

hereto as Exhibit C is a true and correct copy of the portions of the Debtors' schedules where

debt to BNYM was listed. *See also* Exhibits D and E to Reorganized Debtors' objection to the

Motion.

As to notice, pursuant to Bankruptcy Code §342(g), "notice . . . shall not be effective

until such notice is brought to the attention of such creditor. If such creditor designates a person

or an organizational subdivision of such creditor to be responsible for receiving notices under

this title and establishes reasonable procedures so that such notices receivable by such creditor

are to be delivered to such person or such subdivision, then a notice provided to such creditor

other than in accordance with this section shall not be considered to be brought to the attention of

such creditor until such notice is received by such person or such subdivision."   Moreover, as

stated in 9 *Collier on Bankruptcy* ¶2002.08 (Sixteenth Ed. 2010), "Notices are ordinarily mailed

to the most recent mailing address designated by a party." Here, the Indenture Trustee never

designated General Motors as a party to receive notice and any notice given to General Motors

cannot bind the Indenture Trustee or the Bondholders.

Moreover, given that the Bar Date took place prior to BNYM's appointment as Indenture Trustee, the appropriate division or department of the predecessor trustees to the Indenture Trustee needed to receive adequate notice. Once again, given that the Bond debt is not scheduled *vis-a-vis* either JPMorgan Chase or Dai-Ichi Kangyo Trust Company of New York, those entities did not receive appropriate notice. Given its size, much like BNYM, JPMorgan Chase, the predecessor trustee to BNYM also received a number of notices, but none in its role as indenture trustee. Annexed hereto as Exhibit D is a true and correct copy of the portions of the Debtors' schedules listing debt to JPMorgan Chase. Adequate notice was not given because the debt was improperly scheduled.

Indeed, if, as the Reorganized Debtors' argue,  notice to BNYM itself was adequate for each and every claim held by BNYM in any capacity, why was notice given to various departments at BNYM? The bottom line is that BNYM or its predecessor trustees, in their role as indenture trustees, never received adequate notice.

Similarly, pursuant to Fed R. Bank. Rule P. 2002(g), notices are to be sent to the address that is listed on the schedules. As this debt to the Indenture Trustee was not scheduled, notices were not sent to the correct party at BNYM or its predecessor indenture trustee. Given that DAS LLC was paying the Indenture Trustee at 101 Barclay Street, New York, NY 10286, Attn: Municipal Bond Group, during the pendency of the proceedings, and presumably was paying JPMorgan Chase at its appropriate department or division prior to that time, the Debtors were aware of the debt and to whom and where to give proper notice regarding such debt.

In this case, interest on the Bonds was being paid during the course of the bankruptcy proceedings to the Municipal Bonds Department at BNYM. This department simply did not receive notice of the bankruptcy itself, much less the Bar Date, the MRA, the MDA, or the Modified Plan. General notice to BNYM does not suffice.

## II.      The MRA and MDA Do Not Relieve the Reorganized Debtors of Their Obligations to Pay the Bonds

In 1994, General Motors entered into a loan agreement with the County of Trumbull, Ohio ("1994 Loan Agreement"). As is typical with municipal bond financing, the payments due from General Motors under the 1994 Loan Agreement, corresponded to the payments due on the Bonds issued under the Indenture. The proceeds from the sale of the Bonds were used to construct a sewage disposal facility at General Motors plant in Warren, Ohio (the "Facility"). All of Trumbull County's rights in the 1994 Loan Agreement (with the exception of some minor rights not relevant to this discussion) were assigned to the original Indenture Trustee. In 1999, DAS LLC assumed the 1994 Loan Agreement, and became the borrower under the 1994 Loan Agreement, and obligor for the payment of the Bonds ("1999 Assignment Agreement"). DAS LLC has been the obligor on the Bonds since that time.

Putting aside for the moment the fact that the Indenture Trustee or its predecessor trustees, was not given the requisite notice of the filing of the Chapter 11 Case, the Bar Date, MRA, MDA, Modified Plan or Plan Injunction, the Reorganized Debtors argue that the MRA and the MDA relieve them from their obligations to pay the Bond debt to the Indenture Trustee. However, a review of the documents mandates just the opposite conclusion.

Pursuant to section 5.01(a)(vi) of the MRA, Delphi specifically assumed the 1999 Assignment Agreement – making it directly responsible as the substituted obligor for payments to the Indenture Trustee on the Bonds. Moreover, section 5.01(e) of the MRA states that "All

provisions of the agreements that are assumed, reinstated, or ratified under this section 5.01 shall be assumed in their entirety without modification unless such modification is expressly set forth herein." The 1999 Assignment Agreement was, therefore, specifically assumed by the Reorganized Debtors and their argument, in paragraphs 55 through 59 of their objection to the Motion, that the 1999 Assignment Agreement was not an executory contract capable of being assumed, is disingenuous, at best, and is subject to estoppel.

Although the Reorganized Debtors next argue that the Indenture Trustee is not a third party beneficiary of the MRA, and cannot therefore enforce that agreement, the Indenture Trustee does not seek to enforce the MRA – it seeks to enforce the 1999 Assignment Agreement and 1994 Loan Agreement – agreements pursuant to which General Motors, and then Delphi, became directly obligated to pay the Bonds to the indenture trustee.

The Reorganized Debtors next point to section 9.19.2 of the MDA as evidence that their obligation to the Indenture Trustee was eviscerated pursuant to the MDA. However, section 9.19.2 of the MDA is a general catchall provision, alleviating the parties to the MRA of their duties to continue performing their obligations to one another pursuant to that agreement. A closer reading of the MDA reveals that the preceding paragraph - paragraph 9.19.1 discusses specific agreements which were previously assumed pursuant to section 5.01 of the MRA, which agreements are now terminated, pursuant to the MDA. Although the agreements listed in the section 5.01 of the MRA almost completely mirror the agreements listed in section 9.19.1 of the MDA, the 1999 Assignment Agreement is conspicuously absent. Presumably, this is because the 1999 Assignment Agreement involved obligations to third parties, and could not be waived, once assumed, merely by an agreement between GM and Delphi.

#3633082 v3 \022193 \0001

8

Once a contract is assumed in a bankruptcy (as was the 1994 Loan Agreement pursuant to the specific language of section 5.01(e) of the MRA), it cannot be disavowed with no consequence. An assumed contract becomes an administrative expense and if the Debtor thereafter terminates the contract, it is responsible for full payment. Generally, if a contract has been assumed by a debtor and later rejected, damages flowing from the breach will be entitled to administrative priority. As stated in 3 *Collier on Bankruptcy* at ¶ 365.10[5] (16th Ed. 2010): "[T]he estate receives the benefit of the assumed contract, which presumably was viewed as beneficial at the time it was assumed, and takes that contract *cum onere*. Therefore, any damages flowing from a breach of a previously assumed contract should be considered first priority administrative expenses." Cases construing Section 365(g) agree with the view expressed by *Collier. See, e.g.*; *Nostas Assocs. v. Costich (In re Klein Sleep Products, Inc.*), 78 F.3d 18, 27 (2nd Cir. 1996) (articulating the rule that administrative priority was available either if the trustee assumed the executory contract or if the estate received demonstrable benefits under the contract) (citing *American Anthracite Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.,* 280 F.2d 119, 124 (2nd Cir. 1960)); *Boston Post Road Ltd. Partnership v. Fed. Deposit Ins. Corp.* (*In re Boston Post Road Ltd. Partnership*), 21 F.3d 477, 484 (2nd Cir. 1994) (stating that the rights created by an assumption of the lease constitute a post-petition administrative claim under Section 503(b)(1)(A) of the Code) (quoting *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III*), 995 F.2d 1274, 1281 (5th Cir. 1991)); *Elliott v. Four Seasons Properties (In re Frontier Properties, Inc.*), 979 F.2d 1358, 1367 (9th Cir. 1992) (stating that if a trustee assumes and then rejects an executory contract, liabilities flowing from that rejection are entitled to priority as administrative expenses)(citations omitted); *Adventure Resources, Inc. v. Holland*, 137 F.3d 786, 798 (4th Cir. 1998) (ruling that upon assumption of a contract, the

expenses and liabilities incurred may be treated as administrative expenses which are afforded the highest priority on the Debtor's estate) (citations omitted) .

Since the Debtors did, in fact, assume the 1999 Assignment Agreement, and therefore, the obligations under the 1994 Loan Agreement, the consequent termination of that assumption results in the Bond obligations constituting an administrative expense. Alternatively, since adequate notice of the Bar Date, MRA, and MDA was not received, the Bond obligations rode through the proceedings as an executory contract – a contract which the Debtors acknowledged as executory when executing the MRA.

### III.    The Indenture Trustee has made the Appropriate Motion Pursuant to the Stipulation

The Reorganized Debtors argue that the signing of the Stipulation by the Indenture Trustee binds it to making a motion to lift the Plan Injunction. However, the so-ordered paragraphs of the Stipulation merely state that the Indenture Trustee must seek relief before this Court before attempting to enforce any rights regarding the Bonds. This Motion fulfills that mandate.

The Indenture Trustee has complied with the terms of the Stipulation. It has not taken any action to enforce the Bond obligations against the Reorganized Debtors and has brought the Motion before this Court to proceed in an appropriate forum to enforce the rights of the Bondholders against the Reorganized Debtors. In order to grant the relief sought in the Motion, this Court must determine that the Bonds were not discharged in the Chapter 11 case and remain an outstanding obligation of the Reorganized Debtors. This is precisely the same issue which would have been before this Court if the Motion was styled as a motion to lift the Plan Injunction. While such a motion was specifically authorized by the Stipulation, under the Stipulation the Indenture Trustee also reserved "all other rights, claims, and defenses in

#3633082 v3 \022193 \0001

10

connection with any subsequent matter or proceedings in connection with the Bonds." Thus, the Reorganized Debtors cannot argue that the filing of the Motion was not within the rights reserved by the Indenture Trustee under the Stipulation.

### IV.    The Sonnax and Pioneer Factors

Given that the Indenture Trustee and/or its predecessor indenture trustees did not receive the requisite notice in this case, they are not bound by the Plan or the Plan Injunction, except to the limited extent set forth in the Stipulation. Nonetheless, cause to lift the Plan Injunction clearly exists here.

The Reorganized Debtors argue that this Court must consider the factors set forth in *Sonnax Indus., Inc. v. Tri Component Products Corp. (In re Sonnax Indus., Inc*.), 907 F.2d 1280, 1286 (2d Cir. 1990), and *WorldCom II*, No. 02-13533 2007 WL 841984 (Bankr. S.D.N.Y. Mar. 12, 2007) in determining the Motion. These cases are not relevant since they focus primarily on whether a creditor's claim should be litigated in the Bankruptcy Court or another forum. In the instant case, the Movants recognize that the Court must rule that the obligation under the Bonds was not discharged prior to allowing the Movants to enforce their rights against the Reorganized Debtors. However, once that determination is made, allowing the Movants to proceed against the Reorganized Debtors in another forum is clearly authorized by the factors set forth in *Sonnax* and *WorldCom II.*

Allowing the Indenture Trustee and Bondholders to pursue a cause of action against the Reorganized Debtors will in no way interfere with the bankruptcy case, nor will it prejudice the rights of other creditors – whose rights have already been determined *vis a vis* the Plan. Any judgment received by the Indenture Trustee would not be subject to any kind of subordination.

This is a two party dispute that can be adequately resolved outside of the bankruptcy proceeding without prejudicing the rights of any of the parties to the proceeding.

Additionally, the *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.,* (Pioneer), 507 U.S. 380, 395 (1993) case has no relevance to this motion. The Movants are not requesting to file a late proof of claim. The Movants are requesting appropriate relief under unusual circumstances where the Debtors continued to make payment on the Bonds well after the Bar Date had passed; the Indenture Trustee and Bondholders were never given notice of the Bar Date; and, almost four years after the Bar Date had passed, the Reorganized Debtors affirmatively represented to the Bondholders that the Bonds were approved secured claims, and that payment would continue to be made on them. The Reorganized Debtors are estopped from now arguing otherwise. The Bondholders had no reason to speculate or surmise that the Reorganized Debtors would suddenly stop paying on an obligation that all parties clearly recognized as an obligation of the Debtors.

To allow the Reorganized Debtors to simply walk away from a valid claim, when they were well aware of the claim, and indeed were paying on it for years after the Bar Date, is simply inequitable.

**V.      The Reorganized Debtors are Estopped from Stating that Continued Payment of the Bond, as well as Statements by their, Agent do not Bind them to Continue Payments on the Bonds**

The Reorganized Debtors' objection to the Motion is conspicuously silent on a number of other important points, as well. The Reorganized Debtors have provided no explanation whatsoever as to why the interest payments on the Bonds continued to be paid during the course of the bankruptcy, explaining only that payments ceased after the MDA was approved. If all that was held by the Indenture Trustee was a pre-petition unsecured claim, why did it continue to be paid, and if it was paid incorrectly, why didn't the Debtors demand repayment? The Reorganized

Debtors have conceded that payments were made through 2009, long after the cases were commenced, and long after the Bar Date had passed.

Finally, the argument that the unqualified statement by the Director of Corporate Finance of the Reorganized Debtors is not binding on the Reorganized Debtors is weak, at best. Who, if not the Reorganized Debtors' Director of Corporate Finance, would be better situated to know (and represent) what the Reorganized Debtor's financial obligations are?

## CONCLUSION

The Bond debt rode through the bankruptcy proceedings because the debt was not properly scheduled. Additionally, the assumption of the 1999 Assignment Agreement creates an administrative obligation and therefore the Bond debt must continue to be paid.

WHEREFORE, for the reasons set forth above as well as those set forth in its opening brief, the Indenture Trustee and Bondholders request that this Court allow them to proceed in the appropriate tribunal to enforce the provisions of the Bond as against Reorganized Debtors, or, alternatively, direct the Reorganized Debtors to continue to make all payments of principal and interest due under the Bonds, and grant such other and further relief as this Court deems appropriate.

Dated: New York, New York
     January 18, 2012

                                  **MORRISON COHEN LLP**
                                  *Attorneys for Paul Feinsilver, James A. Klotz*
                                  *And Terrance O'Grady*

                                  By: */s/ Andrea Fischer*
                                      Andrea Fischer
                                      909 Third Avenue
                                      New York, New York 10022
                                      (212) 735-8600

#3633082 v3 \022193 \0001

**EMMET, MARVIN & MARTIN, LLP**
*Attorneys for The Bank of New York Mellon,*
 *as Indenture Trustee*


By:/s/ *Edward P. Zujkowski*
        Edward P. Zujkowski
        120 Broadway
        New York, NY 10271
        (212) 238-3021

#3633082 v3 \022193 \0001