IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
            :
In re             :    Chapter 11
            :
DPH HOLDINGS CORP., et al.,     :    Case No. 05-44481 (RDD)
            :
        Reorganized Debtors.     :    (Jointly Administered)
            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AFFIDAVIT OF SERVICE

      I, Darlene Calderon, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants LLC, the Court appointed claims and noticing agent for the Reorganized Debtors in the above-captioned cases.

      On May 17, 2012, I caused to be served the document listed below (i) upon the parties listed on Exhibit A hereto via overnight mail, (ii) upon the parties listed on Exhibit B hereto via electronic notification, and (iii) upon the party listed on Exhibit C hereto via postage pre-paid U.S. mail:

      Reorganized Debtors' Objection to Motion of Ontario Specialty Contracting, Inc. for Allowance of an Administrative Claim Pursuant to 11 U.S.C. § 503(b)(1)(A), or in the Alternative, for Leave to File a Late Administrative Expense Claim Pursuant to Federal Rule of Bankruptcy Procedure 9006(b) ("Objection to Ontario Specialty Contracting, Inc.'s Late Claim Motion") (Docket No. 21886) [a copy of which is attached hereto as Exhibit D]

Dated: May 22, 2012

                              _/s/ Darlene Calderon_
                                Darlene Calderon

State of California
County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 22nd day of May, 2012, by Darlene Calderon, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature:   _/s/ LydiaPastor Nino_

Commission Expires: _11/18/15_

# EXHIBIT A

DPH Holdings Corp.
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---------|---------|----------|----------|------|-------|-----|
| John E. Jureller, Jr. | | 570 Seventh Avenue, 17th Floor | | New York | NY | 10018 |
| Klestadt & Winter LLP | John E. Jureller, Jr. | 292 Madison Avenue, 17th Floor | | New York | NY | 10017 |
| Ontario Specialty Contracting Inc | c o 1800 Main Place Tower | 350 Main St | | Buffalo | NY | 14202 |
| Ontario Specialty Contracting, Inc. | Attn: Matthew Beck | c/o 1800 Main Place Tower | 350 Main St. | Buffalo | NY | 14202 |
| Ontario Specialty Contracting, Inc. | Ontaroi Specialty | James F. Williams | 333 Ganson St. | Buffalo | NY | 14203 |

# EXHIBIT B

DPH Holdings Corp.
Post-Emergence Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|
| Barnes & Thornburg LLP | Deborah L. Thorne Kathleen L. Matsoukas | One N Wacker Drive | Suite 4400 | Chicago | IL | 60606 | 312-357-1313 | dthorne@btlaw.com kmatsoukas@btlaw.com | Counsel to Johnson Controls Battery Group, Inc.; Johnson Controls, Inc. (Power Solutions) |
| Delphi Automotive Systems LLP | Sean Corcoran Karen Craft David M. Sherbin | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com david.sherbin@delphi.com | Delphi Automotive Systems LLP |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | fgorman@honigman.com rweiss@honigman.com | Counsel to General Motors Corporation |
| Ruskin Moscou Faltischek PC | Jeffrey A. Wurst, Esq. | 1425 RXR Plaza | 15th Floor | Uniondale | NY | 11556 | 516-663-6535 | jwurst@rmfpc.com | |
| Skadden, Arps, Slate, Meagher & Flom LLP | Ron E. Meisler | 155 N Wacker Drive | Suite 2700 | Chicago | IL | 60606-1720 | 312-407-0700 | rmeisler@skadden.com | Counsel to the Reorganized Debtor |
| Weil, Gotshal & Manges LLP | Harvey R. Miller Robert J. Lemons | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8500 | harvey.miller@weil.com robert.lemons@weil.com | Counsel to General Motors Corporation |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 1 of 1

5/21/2012 6:10 PM
Post-Emergence Master Service List 120321.xlsx Email (6)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Adalberto Cañadas Castillo | | Avda Ramon de Carranza | 10-1º | Cadiz | | 11006 | Spain | 34 956 226 311 | | adalberto@canadas.com | Representative to DASE |
| Adler Pollock & Sheehan PC | Joseph Avanzato | One Citizens Plz 8th Fl | | Providence | RI | 02903 | | 401-274-7200 | 401-751-0604 | javanzato@apslaw.com | Attorneys for Fry's Metals Inc. and Specialty Coatings Systems Eft |
| Airgas, Inc. | David Boyle | 259 Radnor-Chester Road, Suite 100 | P.O. Box 6675 | Radnor | PA | 19087-8675 | | 610-902-6028 | 610-687-3187 | david.boyle@airgas.com | Counsel to Airgas, Inc. |
| Akebono Brake Corporaton | Brandon J. Kessinger | 310 Ring Road | | Elizabethtown | KY | 42701 | | 270-234-5580 | 270-234-5504 | bkessinger@akebono-usa.com | Representative for Akebono Corporation |
| Akin Gump Strauss Hauer & Feld, LLP | Ira S Dizengoff | One Bryant Park | | New York | NY | 10036 | | 212-872-1000 | 212-872-1002 | idizengoff@akingump.com | Counsel to TAI Unsecured Creditors Liquidating Trust |
| Allen Matkins Leck Gamble & Mallory LLP | Michael S. Greger | 1900 Main Street | Fifth Floor | Irvine | CA | 92614-7321 | | 949-553-1313 | 949-553-8354 | mgreger@allenmatkins.com | Counsel to Kilroy Realty, L.P. |
| Alliance for Sustainable Energy LLC | National Renewable Energy Laboratory | Jim Martin Senior Attorney | 1617 Golden Blvd MS 1734 | Golden | CO | 80401 | | 303-384-7497 | 303-384-7499 | jim.martin@nrel.gov | Counsel for National Renewable Energy Laboratory |
| Alston & Bird, LLP | Craig E. Freeman | 90 Park Avenue | | New York | NY | 10016 | | 212-210-9400 | 212-922-3891 | craig.freeman@alston.com | Counsel to Cadence Innovation, LLC |
| Alston & Bird, LLP | Dennis J. Connolly; David A. Wender | 1201 West Peachtree Street | | Atlanta | GA | 30309 | | 404-881-7269 | 404-253-8554 | dconnolly@alston.com dwender@alston.com | Counsel to Cadence Innovation, LLC, PD George Co, Furukawa Electric Compamay, Ltd., and Furukawa Electric North America APD, Inc. |
| American Axle & Manufacturing, Inc. | Steven R. Keyes | One Dauch Drive, Mail Code 6E-2-42 | | Detroit | MI | 48243 | | 313-758-4868 | | steven.keyes@aam.com | Representative for American Axle & Manufacturing, Inc. |
| Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP | Mark T. Flewelling | 199 South Los Robles Avenue | Suite 600 | Pasadena | CA | 91101-2459 | | 626-535-1900 | 626-577-7764 | mtf@afrct.com | Counsel to Stanley Electric Sales of America, Inc. |
| Arent Fox PLLC | Robert M. Hirsh | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Hirsh.Robert@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arnall Golden Gregory LLP | Darryl S. Laddin | 171 17th Street NW | Suite 2100 | Atlanta | GA | 30363-1031 | | 404-873-8120 | 404-873-8121 | dladdin@agg.com | Counsel to Daishinku (America) Corp. d/b/a KDS America ("Daishinku"), SBC Telecommunications, Inc. (SBC) |
| Arnold & Porter LLP | Joel M. Gross | 555 Twelfth Street, N.W. | | Washington | D.C. | 20004-1206 | | 202-942-5000 | 202-942-5999 | joel_gross@aporter.com | Counsel to CSX Transportation, Inc. |
| ATS Automation Tooling Systems Inc. | Carl Galloway | 250 Royal Oak Road | | Cambridge | Ontario | N3H 4R6 | Canada | 519-653-4483 | 519-650-6520 | cgalloway@atsautomation.com | Company |
| Balch & Bingham LLP | Eric T. Ray | PO Box 306 | | Birmingham | AL | 35201 | | 205-251-8100 | 205-226-8799 | eray@balch.com | Attorney for Alabama Power Company |
| Barack, Ferrazzano, Kirschbaum & Nagelberg LLP | Kimberly J. Robinson | 200 W Madison St Ste 3900 | | Chicago | IL | 60606 | | 312-984-3100 | 312-984-3150 | kim.robinson@bfkn.com | Counsel to Motion Industries, Inc., EIS, Inc. and Johnson Industries, Inc. |
| Barack, Ferrazzano, Kirschbaum & Nagelberg LLP | William J. Barrett | 200 W Madison St Ste 3900 | | Chicago | IL | 60606 | | 312-984-3100 | 312-984-3150 | william.barrett@bfkn.com | Counsel to Motion Industries, Inc., EIS, Inc. and Johnson Industries, Inc. |
| Barnes & Thornburg LLP | Alan K. Mills | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | alan.mills@btlaw.com | Counsel to Mays Chemical Company |
| Barnes & Thornburg LLP | Damon R Leichty | 600 1st Source Bank Center | 100 North Michigan | South Bend | IN | 46601 | | 574-233-1171 | 574-237-1125 | damon.leichty@btlaw.com | Counsel to Bank of America, N.A. |
| Barnes & Thornburg LLP | David M. Powlen | 1000 N West Street | Suite 1200 | Wilmington | DE | 19801 | | 302-888-4536 | 317-231-7433 | david.powlen@btlaw.com | Counsel to Howard County, Indiana |
| Barnes & Thornburg LLP | Deborah L. Thorne | One North Wacker Drive | Suite 4400 | Chicago | IL | 60606 | | 312-357-1313 | 312-759-5646 | deborah.thorne@btlaw.com | Counsel to Johnson Controls Battery Group, Inc.; Johnson Controls, Inc. (Power Solutions) |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 1 of 21

5/21/2012 6:10 PM
Email (393)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Barnes & Thornburg LLP | John T. Gregg | 171 Monroe Avenue NW | Suite 1000 | Grand Rapids | MI | 49503 | | 616-742-3930 | 616-742-3999 | jgregg@btlaw.com | Counsel to Priority Health; Clarion Corporation of America; Continental AG and Affiliates |
| Barnes & Thornburg LLP | Kathleen L. Matsoukas | One North Wacker Drive | Suite 4400 | Chicago | IL | 60606 | | 312-357-1313 | 312-759-5646 | kathleen.matsoukas@btlaw.com | Counsel to Johnson Controls Battery Group, Inc.; Johnson Controls, Inc. (Power Solutions); Howard County, Indiana |
| Barnes & Thornburg LLP | Mark R. Owens | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | mark.owens@btlaw.com | Counsel to Clarion Corporation of America |
| Barnes & Thornburg LLP | Michael K. McCrory | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | michael.mccrory@btlaw.com | Counsel to Gibbs Die Casting Corporation; Clarion Corporation of America |
| Barnes & Thornburg LLP | Patrick E. Mears | 171 Monroe Avenue NW | Suite 1000 | Grand Rapids | MI | 49503 | | 616-742-3936 | 616-742-3999 | pmears@btlaw.com | Counsel to Armada Rubber Manufacturing Company, Bank of America Leasing & Leasing & Capital, LLC, & AutoCam Corporation |
| Barnes & Thornburg LLP | Sarah Quinn Kuhny | 600 1st Source Bank Center | 100 North Michigan | South Bend | IN | 46601 | | 574-233-1171 | 574-237-1125 | sarah.kuhny@btlaw.com | Counsel to Bank of America, N.A. |
| Barnes & Thornburg LLP | Wendy D. Brewer | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | wendy.brewer@btlaw.com | Counsel to Gibbs Die Casting Corporation |
| Bartlett Hackett Feinberg P.C. | Frank F. McGinn | 155 Federal Street | 9th Floor | Boston | MA | 02110 | | 617-422-0200 | 617-422-0383 | ffm@bostonbusinesslaw.com | Counsel to Iron Mountain Information Management, Inc. |
| Beeman Law Office | Thomas M Beeman | 33 West 10th Street | Suite 200 | Anderson | IN | 46016 | | 765-640-1330 | 765-640-1332 | tom@beemanlawoffice.com | Counsel to Madison County (Indiana) Treasurer |
| Bernstein Litowitz Berger & Grossman | Hannah E. Greenwald | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1411 | 2125541444 | hannah@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Berry Moorman P.C. | James P. Murphy | 535 Griswold | Suite 1900 | Detroit | MI | 48226 | | 313-496-1200 | 313-496-1300 | murph@berrymoorman.com | Counsel to Kamax L.P.; Optrex America, Inc.; GKN Sinter Metals, Inc. |
| Bialson, Bergen & Schwab | Kenneth T. Law, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | klaw@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.. |
| Bialson, Bergen & Schwab | Lawrence M. Schwab, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | lschwab@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.; Solectron Corporation; Solectron De Mexico SA de CV; Solectron Invotronics; Coherent, Inc.; Veritas Software Corporation |
| Bialson, Bergen & Schwab | Thomas M. Gaa | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | tgaa@bbslaw.com | Counsel to  Veritas Software Corporation |
| Bingham McHale LLP | Whitney L Mosby | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-635-8900 | 317-236-9907 | wmosby@binghammchale.com | Counsel to Universal Tool & Engineering co., Inc. and M.G. Industries |
| Blank Rome LLP | Marc E. Richards | The Chrysler Building | 405 Lexington Avenue | New York | NY | 10174 | | 212-885-5000 | 212-885-5002 | mrichards@blankrome.com | Counsel to DENSO International America, Inc. |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 2 of 21

5/21/2012 6:10 PM
Email (393)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bodman LLP | Ralph E. McDowell | 100 Renaissance Center | 34th Floor | Detroit | MI | 48243 | | 313-393-7592 | 313-393-7579 | rmcdowell@bodmanllp.com | Counsel to Freudenberg-NOK; General Partnership; Freudenberg-NOK, Inc.; Flextech, Inc.; Vibracoustic de Mexico, S.A. de C.V.; Lear Corporation; American Axle & Manufacturing, Inc. |
| Bond, Schoeneck & King, PLLC | Camille W. Hill | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | chill@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp. |
| Bond, Schoeneck & King, PLLC | Charles J. Sullivan | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | csullivan@bsk.com | Counsel to Diemolding Corporation |
| Bond, Schoeneck & King, PLLC | Stephen A. Donato | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | sdonato@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp; Diemolding Corporation |
| Boult, Cummings, Conners & Berry, PLC | Austin L. McMullen | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | amcmullen@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Boult, Cummings, Conners & Berry, PLC | Roger G. Jones | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | rjones@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Brembo S.p.A. | Massimiliano Cini | Administration Department via Brembo 25 | 24035 Curno BG | Bergamo | | | Italy | 00039-035-605-529 | 0039-035-605-671 | massimiliano_cini@brembo.it | Creditor |
| Brown & Connery, LLP | Donald K. Ludman | 6 North Broad Street | | Woodbury | NJ | 08096 | | 856-812-8900 | 856-853-9933 | dludman@brownconnery.com | Counsel to SAP America, Inc. |
| Buchalter Nemer, A Profesional Corporation | Shawn M. Christianson | 333 Market Street | 25th Floor | San Francisco | CA | 94105-2126 | | 415-227-0900 | 415-227-0770 | schristianson@buchalter.com | Counsel to Oracle USA, Inc.; Oracle Credit Corporation |
| Buchanan Ingersoll & Rooney PC | Mark Pfeiffer | 50 S. 16th St Ste 3200 | | Philadelphia | PA | 19102 | | 215-665-8700 | | mark.pfeiffer@bipc.com | Counsel to ATEL Leasing Corp. |
| Buchanan Ingersoll & Rooney PC | Mary Caloway | The Brandywine Building | 1000 West Street, Suite 1410 | Wilmington | DE | 19801 | | 302-552-4200 | 302-552-4295 | mary.caloway@bipc.com | Counsel to Fiduciary Counselors |
| Buchanan Ingersoll & Rooney PC | Peter S. Russ | 620 Eighth Ave | 23rd Floor | New York | NY | 10018 | | 212-440-4400 | | peter.russ@bipc.com | Counsel to ATEL Leasing Corp. |
| Buchanan Ingersoll & Rooney PC | William H. Schorling, Esq. | Two Liberty Place | 50 S. 16th St., Ste 3200 | Philadelphia | PA | 19102 | | 215-665-5326 | 215-665-8760 | william.schorling@bipc.com | Counsel to Fiduciary Counselors |
| Butzel Long | Bruce L. Sendek | 150 W. Jefferson Avenue | Suite 100 | Detroit | MI | 48226 | | 313-225-7000 | 313-225-7080 | sendek@butzel.com | Counsel to Reorganized Debtors |
| Butzel Long | Chester E. Kasiborski, Jr. | 150 W. Jefferson Avenue | Suite 100 | Detroit | MI | 48226 | | 313-225-7000 | 313-225-7080 | kasiborski@butzel.com | Counsel to Reorganized Debtors |
| Butzel Long | Cynthia J. Haffey | 150 W. Jefferson | Suite 100 | Detroit | MI | 48226 | | 313-983-7434 | 313-225-7080 | haffey@butzel.com | Counsel to Delphi Corporation |
| Butzel Long | David J. DeVine | 150 W. Jefferson Avenue | Suite 100 | Detroit | MI | 48226 | | 313-225-7000 | 313-225-7080 | devine@butzel.com | Counsel to Reorganized Debtors |
| Butzel Long | Donald V. Orlandoni | 150 W. Jefferson | Suite 100 | Detroit | MI | 48226 | | 313-225-7063 | 313-225-7080 | orlandoni@butzel.com | Counsel to Delphi Corporation |
| Butzel Long | Sheldon H. Klein | Stoneridge West | 41000 Woodward Avenue | Bloomfield Hills | MI | 48304 | | 248-258-1414 | 248-258-1439 | klein@butzel.com | Counsel to Reorganized Debtors |
| Butzel Long | Thomas B. Radom | Stoneridge West | 41000 Woodward Avenue | Bloomfield Hills | MI | 48304 | | 248-258-1413 | 248-258-1439 | radom@butzel.com | Counsel to Reorganized Debtors |
| Butzel Long | Thomas D. Noonan | 150 W. Jefferson Avenue | Suite 100 | Detroit | MI | 48226 | | 313-225-7000 | 313-225-7080 | noonan@butzel.com | Counsel to Reorganized Debtors |
| Cadwalader Wickersham & Taft LLP | Jeannine D'Amico | 1201 F St NW Ste 1100 | | Washington | DC | 20004 | | 202-862-2452 | 202-862-2400 | jeannine.damico@cwt.com | Attorneys for the Audit Committee of Delphi Corporation |

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cadwalader Wickersham & Taft LLP | John J. Rapisardi Esq Joseph Zujkowski Esq | One World Financial Center | | New York | NY | 10281 | | 212-504-6000 | 212-504-6666 | john.rapisardi@cwt.com joseph.zujkowski@cwt.com | Counsel to the Auto Task Force of the U.S. Department of the Treasury |
| Cahill Gordon & Reindel LLP | Jonathan Greenberg | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 732-205-6777 | jonathan.greenberg@BASF.COM | Counsel to Engelhard Corporation |
| Cahill Gordon & Reindel LLP | Kevin Burke | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 212-378-2167 | kburke@cahill.com | Counsel to Engelhard Corporation |
| Calfee, Halter & Griswold LLC | Jean R. Robertson, Esq. | 1400 McDonald Investment Ctr | 800 Superior Ave | Cleveland | OH | 44114 | | 216-622-8404 | 216-241-0816 | jrobertson@calfee.com | Counsel to Brush Engineered materials |
| Calinoff & Katz, LLP | Dorothy H. Marinis-Riggio Robert Calinoff | 140 East 45th Street | 17th Floor | New York | NY | 10017 | | 212-826-8800 | 212-644-5123 | dhriggio@gmail.com rcalinoff@candklaw.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, I |
| Cantor Colburn LLP | Michael J Rye | 20 Church Street | 22nd Floor | Hartford | CT | 06103-3207 | | 860-286-2929 | 860-286-0115 | mrye@cantorcolburn.com | Patent Counsel to Delphi Corporation et al., Debtors and Debtors-in-Possession |
| Carson Fischer, P.L.C. | Joseph M Fischer Patrick J Kukla | 4111 Andover Road | West 2nd Floor | Bloomfield Hills | MI | 48302 | | 248-644-4840 | | brcy@carsonfischer.com | Counsel to Bing Metals Group, LLC; Behr America, Inc.; Findlay Industries; Vitec, LLC |
| Carson Fischer, P.L.C. | Robert A. Weisberg | 4111 Andover Road | West 2nd Floor | Birmingham | MI | 48302 | | 248-644-4840 | 248-644-1832 | rweisberg@carsonfischer.com brcy@carsonfischer.com | Counsel to Cascade Die Casting Group, Inc.; Behr America, Inc. |
| Carter Ledyard & Milburn LLP | Aaron R. Cahn | 2 Wall Street | | New York | NY | 10005 | | 212-732-3200 | 212-732-3232 | cahn@clm.com | Counsel to STMicroelectronics, Inc. |
| Chadbourne & Parke LLP | Douglas Deutsch, Esq. | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-408-5100 | 212-541-5369 | ddeutsch@chadbourne.com | Counsel to EagleRock Capital Management, LLC |
| Clark Hill PLC | Joel D. Applebaum | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | japplebaum@clarkhill.com | Counsel to 1st  Choice Heating & Cooling, Inc.; BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLC | Shannon Deeby | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | sdeeby@clarkhill.com | Counsel to BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLLC | Robert D. Gordon | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8572 | 313-965-8252 | rgordon@clarkhill.com | Counsel to ATS Automation Tooling Systems Inc. |
| Cleary, Gottlieb, Steen & Hamilton LLP | James L. Bromley | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel to Bear, Stearns, Co. Inc.; Citigroup, Inc.; Credit Suisse First Boston; Deutsche Bank Securities, Inc.; Goldman Sachs Group, Inc.; JP Morgan Chase & Co.; Lehman Brothers, Inc.; Merrill Lynch & Co.; Morgan Stanley & Co., Inc.; UBS Securities, LLC |
| Cohen & Grigsby, P.C. | Thomas D. Maxson | 11 Stanwix Street | 15th Floor | Pittsburgh | PA | 15222-1319 | | 412-297-4706 | 412-209-1837 | tmaxson@cohenlaw.com | Counsel to Nova Chemicals, Inc. |
| Cohen, Weiss & Simon LLP | Joseph J. Vitale Babette Ceccotti | 330 West 42nd Street | | New York | NY | 10036 | | 212-356-0238 | 646-473-8238 | jvitale@cwsny.com bceccotti@cwsny.com | Counsel to International Union, United Automobile, Areospace and Agriculture Implement Works of America (UAW) |
| Cohn Birnbaum & Shea P.C. | Scott D. Rosen, Esq. | 100 Pearl Street, 12th Floor | | Hartford | CT | 06103 | | 860-493-2200 | 860-727-0361 | srosen@cb-shea.com | Counsel to Floyd Manufacturing Co., Inc. |

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Connolly Bove Lodge & Hutz LLP | Jeffrey C. Wisler, Esq. | 1007 N. Orange Street | P.O. Box 2207 | Wilmington | DE | 19899 | | 302-658-9141 | 302-658-0380 | jwisler@cblh.com | Counsel to ORIX Warren, LLC |
| Coolidge Wall Co. LPA | Ronald S. Pretekin | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | Pretekin@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Company; Attorneys for Columbia Industrial |
| Covington & Burling | Susan Power Johnston Aaron R. Marcu | 620 Eighth Ave | | New York | NY | 10018 | | 212-841-1005 | 646-441-9005 | sjohnston@cov.com | Special Counsel to the Debtor |
| Cox, Hodgman & Giarmarco, P.C. | Sean M. Walsh, Esq. | Tenth Floor Columbia Center | 101 W. Big Beaver Road | Troy | MI | 48084-5280 | | 248-457-7000 | 248-457-7001 | swalsh@chglaw.com | Counsel to Nisshinbo Automotive Corporation |
| Curtin & Heefner, LLP | Daniel P. Mazo | 250 N. Pennsylvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | dpm@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Cindi Eilbott | 101 Park Avenue | | New York | NY | 10178-0061 | | 212-696-6936 | 212-697-1559 | ceilbott@curtis.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Damon & Morey LLP | William F. Savino | 1000 Cathedral Place | 298 Main Street | Buffalo | NY | 14202-4096 | | 716-856-5500 | 716-856-5510 | wsavino@damonmorey.com | Counsel to Relco, Inc.; The Durham Companies, Inc. |
| David P. Martin | | 519 Energy Center Blvd | Ste 1104 | Northport | AL | 35401 | | 205-343-1771 | 205-343-1781 | davidmartin@erisacase.com davidpmartin@bellsouth.net | Co-Counsel for David Gargis, Jimmy Mueller, and D. Keith Livingston |
| Day Pitney LLP | Richard M. Meth | P.O. Box 1945 | | Morristown | NJ | 07962-1945 | | 973-966-6300 | 973-966-1015 | rmeth@daypitney.com | Counsel to Marshall E. Campbell Company |
| Day Pitney LLP | Ronald S. Beacher Conrad K. Chiu | 7 Times Square | | New York | NY | 10036 | | 212-297-5800 | 212-916-2940 | rbeacher@daypitney.com cchiu@daypitney.com | Counsel to IBJTC Business Credit Corporation, as successor to IBJ Whitehall Business Credit Corporation |
| Dechert LLP | Glenn E. Siegel James O. Moore | 1095 Avenue of the Americas | | New York | NY | 10036-6797 | | 212-698-3500 | 212-698-3599 | glenn.siegel@dechert.com james.moore@dechert.com | Counsel for Kensington International Limited, Manchester Securities Corp. and Springfield Associates, LLC |
| Denso International America, Inc. | Carol Sowa | 24777 Denso Drive | | Southfield | MI | 48086 | | 248-372-8531 | 248-350-7772 | carol_sowa@denso-diam.com | Counsel to Denso International America, Inc. |
| DiConza Law, P.C. | Gerard DiConza, Esq. | 630 Third Avenue, 7th Floor | | New York | NY | 10017 | | 212-682-4940 | 212-682-4942 | gdiconza@dlawpc.com | Counsel to Tyz-All Plastics, Inc.; Co-Counsel to Tower Automotive, Inc. |
| Dinsmore & Shohl LLP | John Persiani | 1900 Chemed Center | 255 East Fifth Street | Cincinnati | OH | 45202 | | 513-977-8200 | 513-977-8141 | john.persiani@dinslaw.com | Counsel to The Procter & Gamble Company |
| DLA Piper Rudnick Gray Cary US LLP | Richard M. Kremen Maria Ellena Chavez-Ruark | The Marbury Building | 6225 Smith Avenue | Baltimore | Maryland | 21209-3600 | | 410-580-3000 | 410-580-3001 | richard.kremen@dlapiper.com | Counsel to Constellation NewEnergy, Inc. & Constellation NewEnergy - Gas Division, LLC |
| Drinker Biddle & Reath LLP | Andrew C. Kassner | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | andrew.kassner@dbr.com | Counsel to Penske Truck Leasing Co., L.P. |

In re: DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 5 of 21

5/21/2012 6:10 PM
Email (393)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Duane Morris LLP | Joseph H. Lemkin | 744 Broad Street | Suite 1200 | Newark | NJ | 07102 | | 973-424-2000 | 973-424-2001 | jhlemkin@duanemorris.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC; and Hosiden America Corporation |
| Duane Morris LLP | Lewis R Olshin Esq | 30 South 17th Street | | Philadelphia | PA | 19103 | | 215-979-1129 | 215-689-3622 | Olshin@duanemorris.com | Counsel to ACE American Insurance Company and Pacific Employers Insurance Company |
| Duane Morris LLP | Margery N. Reed, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | dmdelphi@duanemorris.com mreed@duanemorris.com | Counsel to ACE American Insurance Company and Pacific Employers Insurance Company |
| Duane Morris LLP | Wendy M. Simkulak, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1547 | 215-689-4951 | wmsimkulak@duanemorris.com | Counsel to ACE American Insurance Company and Pacific Employers Insurance Company |
| Dykema Gossett PLLC | Douglas S Parker | 39577 Woodward Ave | Suite 300 | Bloomfield Hills | MI | 48304 | | 248-203-0703 | 248-203-0763 | dparker@dykema.com | Counsel for Federal Screw |
| Dykema Gossett PLLC | Robert D. Nachman | 10 South Wacker Drive | Suite 2300 | Chicago | IL | 60606 | | 312-876-1700 | 312-876-1155 | rnachman@dykema.com | Counsel to MJ Celco, Inc. |
| Electronic Data Systems Corporation | Ayala Hassell | 5400 Legacy Dr. | Mail Stop H3-3A-05 | Plano | TX | 75024 | | 212-715-9100 | 212-715-8000 | ayala.hassell@eds.com | Representattive for Electronic Data Systems Corporation |
| Ellenberg, Ogier, Rothschild & Rosenfeld, P.C. | Barbara Ellis-Monro | 170 Mitchell Street, SW | | Atlanta | GA | 30303 | | 404-581-3818 | 404-526-8855 | bem@eorrlaw.com | Counsel to Southwire Company |
| Entergy Services, Inc. | Alan H. Katz | 639 Loyola Ave 26th Fl | | New Orleans | LA | 70113 | | | | akatz@entergy.com | Assistant General Counsel to Entergy Services, Inc |
| Epstein Becker & Green PC | Maura I. Russell Anthony B. Stumbo | 250 Park Ave | 11th Floor | New York | NY | 10177-1211 | | 212-351-4500 | 212-661-0989 | MRussell@ebglaw.com | Counsel to SPCP Group LLC as agent for Silver Point Capital Fund LP and Silver Point Capital Offshore Fund Ltd |
| Ettelman & Hochheiser, P.C. | Gary Ettelman | c/o Premium Cadillac | 77 Main Street | New Rochelle | NY | 10801 | | 516-227-6300 | 516-227-6307 | gettelman@e-hlaw.com | Counsel to Jon Ballin |
| Faegre & Benson LLP | Elizabeth K. Flaagan | 3200 Wells Fargo Center | 1700 Lincoln St | Denver | CO | 80203-4532 | | 303-607-3694 | | eflaagan@faegre.com | Counsel to CoorsTek, Inc.; Corus, L.P. |
| Farrell Fritz PC | Louis A. Scarcella Patrick T. Collins | 1320 RexCorp Plaza | | Uniondale | NY | 11556-1320 | | 516-227-0700 | 516-227-0777 | lscarcella@farrellfritz.com pcollins@farrellfritz.com | Counsel to Official Committee of Equity Holders |
| Filardi Law Offices LLC | Charles J. Filardi, Jr., Esq. | 65 Trumbull Street | Second Floor | New Haven | CT | 06510 | | 203-562-8588 | 866-890-3061 | charles@filardi-law.com | Counsel to Federal Express Corporation |
| Finkel Goldstein Rosenbloom & Nash LLP | Ted J. Donovan | 26 Broadway | Suite 711 | New York | NY | 10004 | | 212-344-2929 | 212-422-6836 | tdonovan@finkgold.com | Counsel to Pillarhouse (U.S.A.) Inc. |
| Foley & Lardner LLP | Ann Marie Uetz | 500 Woodward Avenue | Suite 2700 | Detroit | MI | 48226-3489 | | 313-234-7100 | 313-234-2800 | auetz@foley.com | Counsel to PBR Tennessee |
| Foley & Lardner LLP | Jill L. Murch | 321 North Clark Street | Suite 2800 | Chicago | IL | 60610-4764 | | 312-832-4500 | 312-832-4700 | jmurch@foley.com | Counsel to Kuss Corporation |
| Foley & Lardner LLP | John A. Simon | One Detroit Center | 500 Woodward Ave Suite 2700 | Detroit | MI | 48226-3489 | | 313-234-7100 | 313-234-2800 | jsimon@foley.com | Counsel to Ernst & Young LLP |
| Foley & Lardner LLP | John R. Trentacosta Katherine R. Catanese | 500 Woodward Avenue | Suite 2700 | Detroit | MI | 48226-3489 | | 313-234-7100 | 313-234-2800 | jtrentacosta@foley.com kcatanese@foley.com | Counsel to Kautex Inc. |
| Fox Rothschild LLP | Brian Isen | 1301 Atlantic Avenue | | Atlantic City | NJ | 08401 | | 609-348-2294 | 609-348-6834 | bisen@foxrothschild.com | Counsel to M&Q Plastic Products L.P. |
| Fox Rothschild LLP | Fred Stevens | 100 Park Avenue | 15th Floor | New York | NY | 10017 | | 212-878-7900 | 212-682-4218 | fstevens@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Frederick T. Rikkers | | 419 Venture Court | P.O. Box 930555 | Verona | WI | 53593 | | 608-848-6350 | 608-848-6357 | ftrikkers@rikkerslaw.com | Counsel to Southwest Metal Finishing, Inc. |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 6 of 21

5/21/2012 6:10 PM
Email (393)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Frost Brown Todd LLC | Ronald E. Gold | 2200 PNC Center | 201 East Fifth Street | Cincinnati | OH | 45202-4182 | | 513-651-6156 | | rgold@fbtlaw.com | Counsel to AKS Receivables, LLC |
| Fulbright & Jaworski LLP | David A Rosenzweig | 666 Fifth Avenue | | New York | NY | 10103-3198 | | 212-318-3000 | 212-318-3400 | drosenzweig@fulbright.com | Counsel to Southwest Research Institute Attorney for Solvay Fluorides, LLC |
| Fulbright & Jaworski LLP | Michael M Parker | 300 Convent St Ste 2200 | | San Antonio | TX | 78205 | | 210-224-5575 | 210-270-7205 | mparker@fulbright.com | Counsel to Southwest Research Institute |
| Genovese Joblove & Battista, P.A. | David C. Cimo | 100 S.E. 2nd Street | Suite 4400 | Miami | FL | 33131 | | 305-349-2300 | 305-349-2310 | dcimo@gjb-law.com | Counsel to Ryder Integrated Logistics, Inc. |
| Gibbons P.C. | David N. Crapo | One Gateway Center | | Newark | NJ | 07102-5310 | | 973-596-4523 | 973-639-6244 | dcrapo@gibbonslaw.com | Counsel to Epcos, Inc. |
| Goldberg Segalla LLP | Attn Bruce W Hoover | 665 Main St Ste 400 | | Buffalo | NY | 14203 | | 716-566-5400 | 716-566-5401 | bhoover@goldbergsegalla.com | Attorneys for MasTec Inc. |
| Goldberg Segalla LLP | Bruce W Hoover Richard A Braden | 665 Main St Ste 400 | | Buffalo | NY | 14203 | | 716-566-5400 | 716-566-5401 | bhoover@goldbergsegalla.com | Counsel to Delphi Automotive Systems, LLC, succesor in interest to DPH Holdings Corp. |
| Gorlick, Kravitz & Listhaus, P.C. | Barbara S. Mehlsack | 17 State Street | 4th Floor | New York | NY | 10004 | | 212-269-2500 | 212-269-2540 | bmehlsack@gkllaw.com | Counsel to International Brotherood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Goulston & Storrs, P.C. | Peter D. Bilowz | 400 Atlantic Avenue | | Boston | MA | 02110-333 | | 617-482-1776 | 617-574-4112 | pbilowz@goulstonstorrs.com | Counsel to Thermotech Company |
| Grant & Eisenhofer P.A. | James J Sabella | 485 Lexington Ave | | New York | NY | 10017 | | 646-722-8520 | 302-622-7100 | jsabella@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Grant & Eisenhofer P.A. | Jay W. Eisenhofer | 45 Rockefeller Center | 650 Fifth Avenue | New York | NY | 10111 | | 212-755-6501 | 212-755-6503 | jeisenhofer@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Gratz, Miller & Brueggeman, S.C. | Matthew R. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | mrr@previant.com | Counsel to International Brotherood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Graydon Head & Ritchey LLP | J. Michael Debbler, Susan M. Argo | 1900 Fifth Third Street | 511 Walnut Street | Cincinnati | OH | 45202 | | 513-621-6464 | 513-651-3836 | mdebbeler@graydon.com | Counsel to Grote Industries; Batesville Tool & Die; PIA Group; Reliable Castings |
| Greenberg Traurig, LLP | Maria J. DiConza | MetLife Bldg | 200 Park Avenue | New York | NY | 10166 | | 212-801-9200 | 212-801-6400 | diconzam@gtlaw.com | Counsel to Samtech Corporation |
| Greenberg Traurig, LLP | Shari L. Heyen | 1000 Louisiana | Suite 1800 | Houston | TX | 77002 | | 713-374-3500 | 713-374-3505 | heyens@gtlaw.com | Counsel to Samtech Corporation |
| Greensfelder, Hemker & Gale, P.C. | Cherie Macdonald J. Patrick Bradley | 10 S. Broadway | Suite 200 | St. Louis | MO | 63102 | | 314-241-9090 | 314-241-8624 | ckm@greensfelder.com jpb@greensfelder.com | Counsel to ARC Automotive, Inc. |

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Hahn Loeser & Parks LLP | Lawrence E Oscar Christopher W Peer | 200 Public Square | Suite 2800 | Cleveland | OH | 44114 | | 216-621-0150 | 216-241-2824 | leoscar@hahnlaw.com cpeer@hahnlaw.com | Counsel to Casco Products, a Unit of Sequa Corporation and ARC Automotive, Inc. |
| Halperin Battaglia Raicht, LLP | Alan D. Halperin Christopher J.Battaglia Julie D. Dyas | 555 Madison Avenue | 9th Floor | New York | NY | 10022 | | 212-765-9100 | 212-765-0964 | cbattaglia@halperinlaw.net ahalperin@halperinlaw.net jdyas@halperinlaw.net | Counsel to Pacific Gas Turbine Center, LLC and Chromalloy Gas Turbine Corporation; ARC Automotive, Inc |
| Hancock & Estabrook LLP | R John Clark Esq | 1500 Tower I | PO Box 4976 | Syracuse | NY | 13221-4976 | | 315-471-3151 | 315-471-3167 | rjclark@hancocklaw.com | Counsel to Alliance Precision Plastics Corporation |
| Harrington, Dragich & O'Neill PLLC | David G Dragich | 21043 Mack Avenue | | Grosse Pointe Woods | MI | 48236 | | 313-886-4550 | 313-221-9612 | ddragich@hdolaw.com | Counsel to Internet Corporation |
| Harris D. Leinwand | Harris D. Leinwand | 315 Madison Avenue | Suite 901 | New York | NY | 10017 | | 212-725-7338 | 212-244-6219 | hleinwand@aol.com | Counsel to Baker Hughes Incorporated; Baker Petrolite Corporation |
| Haskell Slaughter Young & Rediker LLC | Robert H. Adams | 2001 Park Place North | Suite 1400 | Birmingham | AL | 35203 | | 205-251-1000 | | rha@hsy.com | Counsel to Simco Construction, Inc. |
| Haynes and Boone, LLP | Judith Elkin | 153 East 53rd Street | Suite 4900 | New York | NY | 10022 | | 212-659-7300 | 212-918-8989 | judith.elkin@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Haynes and Boone, LLP | Lenard M. Parkins Kenric D. Kattner | 1 Houston Center | 1221 McKinney, Suite 2100 | Houston | TX | 77010 | | 713-547-2000 | 713-547-2600 | lenard.parkins@haynesboone.com kenric.kattner@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Herrick, Feinstein LLP | Paul Rubin | 2 Park Avenue | | New York | NY | 10016 | | 212-592-1448 | 212-545-3360 | prubin@herrick.com | Counsel to Canon U.S.A., Inc. and Schmidt Technology GmbH |
| Hewlett-Packard Company | Kenneth F. Higman | 2125 E. Katella Avenue | Suite 400 | Anaheim | CA | 92806 | | 714-940-7120 | 740-940-7539 | ken.higman@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Ramona S. Neal | 11311 Chinden Blvd., M/S 314 | | Boise | ID | 83714-0021 | | 208-396-6484 | 208-396-3958 | Ramona.neal@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Sharon Petrosino | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4760 | 908-898-4133 | sharon.petrosino@hp.co | Counsel to Hewlett-Packard Financial Services Company |
| Hinckley Allen & Snyder LLP | Michael J Pendell | 185 Asylum St CityPlace I | 35th Floor | Hartford | CT | 06103-3488 | | 860-725-6200 | 860-278-3802 | mpendell@haslaw.com | Counsel to Barnes Group, Inc. |
| Hiscock & Barclay, LLP | J. Eric Charlton | 300 South Salina Street | PO Box 4878 | Syracuse | NY | 13221-4878 | | 315-425-2716 | 315-425-8576 | echarlton@hiscockbarclay.com | Counsel to GW Plastics, Inc. |
| Hodgson Russ LLP | Garry M. Graber | The Guaranty Building | 140 Pearl Street, Suite 100 | Buffalo | NY | 14202-4040 | | 716-856-4000 | 716-849-0349 | ggraber@hodgsonruss.com | Counsel to Hexcel Corporation; Unifrax I LLC f/k/a Unifrax Corporation |
| Hodgson Russ LLP | James C. Thoman | The Guaranty Building | 140 Pearl Street, Suite 100 | Buffalo | NY | 14202-4040 | | 716-856-4000 | 716-849-0349 | jthoman@hodgsonruss.com | Counsel to Unifrax I LLC f/k/a Unifrax Corporation |
| Hogan & Hartson L.L.P. | Audrey Moog | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | amoog@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Edward C. Dolan | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | ecdolan@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Scott A. Golden | 875 Third Avenue | | New York | NY | 10022 | | 212-918-3000 | 212-918-3100 | sagolden@hhlaw.com | Counsel to XM Satellite Radio Inc. |
| Hogan Lovells US LLP | Matthew P Morris | 875 Third Avenue | | New York | NY | 10022 | | 212-918-3000 | | matthew.morris@hoganlovells.com | Counsel to TESA AG |
| Honigman, Miller, Schwartz and Cohn, LLP | Donald T. Baty, Jr. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7314 | 313-465-7315 | dbaty@honigman.com | Counsel to Fujitsu Ten Corporation of America |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 8 of 21

5/21/2012 6:10 PM
Email (393)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Honigman, Miller, Schwartz and Cohn, LLP | E. Todd Sable | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7548 | 313-465-7549 | tsable@honigman.com | Counsel to Valeo Climate Control Corp.; Valeo Electrical Systems, Inc. - Motors and Actuators Division;Valeo Electrical Systems, Inc. - Wipers Division; Valeo Switches & Detection System, Inc. |
| Honigman, Miller, Schwartz and Cohn, LLP | I. W. Winsten, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7608 | 313-465-7609 | iww@honigman.com | Counsel to Affina Group Holdings Inc. |
| Honigman, Miller, Schwartz and Cohn, LLP | Lawrence J. Murphy | 2290 First National Building | 660 Woodward Ave | Detroit | MI | 48226 | | 313-465-7488 | 313-465-7489 | lmurphy@honigman.com | Attorneys for Guide Corporation and Lightsource Parent Corporation |
| Honigman, Miller, Schwartz and Cohn, LLP | Seth A Drucker | 2290 First National Building | 660 Woodward Avenue Ste 2290 | Detroit | MI | 48226 | | 313-465-7626 | 313-465-7627 | sdrucker@honigman.com | Counsel for Valeo Climate Control, Corp. |
| Howard & Howard Attorneys PC | Lisa S Gretchko | 39400 Woodward Ave | Ste 101 | Bloomfield Hills | MI | 48304-5151 | | 248-723-0396 | 248-645-1568 | lgretchko@howardandhoward.com | Intellectual Property Counsel for Delphi Corporation, et al. |
| Hunter & Schank Co. LPA | John J. Hunter | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | | 419-255-4300 | 419-255-9121 | jrhunter@hunterschank.com | Counsel to ZF Group North America Operations, Inc. |
| Hunter & Schank Co. LPA | Thomas J. Schank | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | | 419-255-4300 | 419-255-9121 | tomschank@hunterschank.com | Counsel to ZF Group North America Operations, Inc. |
| Hunton & Wiliams LLP | Steven T. Holmes | Energy Plaza, 30th Floor | 1601 Bryant Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | sholmes@hunton.com | Counsel to RF Monolithics, Inc. |
| Hurwitz & Fine P.C. | Ann E. Evanko | 1300 Liberty Building | | Buffalo | NY | 14202 | | 716-849-8900 | 716-855-0874 | aee@hurwitzfine.com | Counsel to Jiffy-Tite Co., Inc. |
| Ice Miller | Ben T. Caughey | One American Square | Box 82001 | Indianapolis | IN | 46282-0200 | | 317-236-2100 | 317-236-2219 | Ben.Caughey@icemiller.com | Counsel to Sumco, Inc. |
| Ice Miller LLP | Henry A. Efroymson | One American Square | 29th Floor | Indianapolis | IN | 46482 | | 317-236-2397 | 317-592-4643 | henry.efroymson@icemiller.com | Counsel to Fin Machine Co. Ltd |
| Infineon Technologies North America Corporation | Greg Bibbes | 1730 North First Street | M/S 11305 | San Jose | CA | 95112 | | 408-501-6442 | 408-501-2488 | greg.bibbes@infineon.com | General Counsel & Vice President for Infineon Technologies North America Corporation |
| Infineon Technologies North America Corporation | Jeff Gillespie | 2529 Commerce Drive | Suite H | Kokomo | IN | 46902 | | 765-454-2146 | 765-456-3836 | jeffery.gillispie@infineon.com | Global Account Manager for Infineon Technologies North America |
| International Union of Operating Engineers | Richard Griffin | 1125-17th Avenue, N.W. | | Washington | DC | 20036 | | 202-429-9100 | 202-778-2641 | rgriffin@iuoe.org | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Jackson Walker LLP | Bruce J. Ruzinsky | 1401 McKinney St Ste 1900 | | Houston | TX | 77010 | | 713-751-4200 | 713-752-4221 | bruzinsky@jw.com | Counsel to Constellation NewEnergy, Inc. |
| Jackson Walker LLP | Heather M. Forrest | 901 Main St Ste 600 | | Dallas | TX | 75202 | | 214-953-6000 | 214-953-5822 | hforrest@jw.com | Counsel to Constellation NewEnergy, Inc. |
| James R Scheuerle | Parmenter O'Toole | 601 Terrace Street | PO Box 786 | Muskegon | MI | 49443-0786 | | 231-722-1621 | 231-728-2206 | JRS@Parmenterlaw.com | Counsel to Port City Die Cast and Port City Group Inc |
| Jason, Inc. | Will Schultz, General Counsel | 411 E. Wisconsin Ave | Suite 2120 | Milwaukee | WI | 53202 | | 414-277-2110 | 414-277-9445 | wschultz@jasoninc.com | General Counsel to Jason Incorporated |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 9 of 21

5/21/2012 6:10 PM
Email (393)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Jenner & Block LLP | Ronald R. Peterson | One IBM Plaza | | Chicago | IL | 60611 | | 312-222-9350 | 312-840-7381 | rpeterson@jenner.com | Counsel to SPX Corporation (Contech Division), Alcan Rolled Products-Ravenswood, LLC, Tenneco Inc. and Contech LLC |
| Johnston, Harris Gerde & Komarek, P.A. | Jerry W. Gerde, Esq. | 239 E. 4th St. | | Panama City | FL | 32401 | | 850-763-8421 | 850-763-8425 | gerdekomarek@bellsouth.net | Counsel to Peggy C. Brannon, Bay County Tax Collector |
| Jones Day | Corinne Ball | 222 East 41st Street | | New York | NY | 10017 | | 212-326-7844 | 212-755-7306 | cball@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Jones Day | Peter J. Benvenutti Michaeline H. Correa | 555 California St 26th Floor | | San Francisco | CA | 94104 | | 415-626-3939 | 415-875-5700 | pjbenvenutti@jonesday.com mcorrea@jonesday.com | Attorneys for Symantec Corporation, Successor-in-Interest to Veritas Corporation |
| Jones Day | Scott J. Friedman | 222 East 41st Street | | New York | NY | 10017 | | 212-326-3939 | 212-755-7306 | sjfriedman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Karel S. Karpe P.C. d/b/a KarpeLaw | Karel S. Karpe | 44 Wall Street | 12th Floor | New York | NY | 10005 | | 212-461-2250 | | kkarpe@karpelaw.com | Counsel to United Parcel Service |
| Katten Muchin Rosenman LLP | John P. Sieger, Esq. | 525 West Monroe Street | | Chicago | IL | 60661 | | 312-902-5200 | 312-577-4733 | john.sieger@kattenlaw.com | Counsel to TDK Corporation America and MEMC Electronic Materials, Inc. |
| Kaye Scholer LLP | Richard G Smolev | 425 Park Avenue | | New York | NY | 10022-3598 | | 212-236-8000 | 212-836-8689 | rsmolev@kayescholer.com | Counsel to InPlay Technologies Inc |
| Kegler, Brown, Hill & Ritter Co., LPA | Kenneth R. Cookson | 65 East State Street | Suite 1800 | Columbus | OH | 43215 | | 614-426-5400 | 614-464-2634 | kcookson@keglerbrown.com | Counsel to Solution Recovery Services |
| Keller Rohrback L.L.P. | Lynn Lincoln Sarko Cari Campen Laufenberg Erin M. Rily | 1201 Third Avenue | Suite 3200 | Seattle | WA | 98101 | | 206-623-1900 | 206-623-3384 | lsarko@kellerrohrback.com claufenberg@kellerrohrback.com eriley@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Keller Rohrback P.L.C. | Gary A. Gotto | National Bank Plaza | 3101 North Central Avenue, Suite 900 | Phoenix | AZ | 85012 | | 602-248-0088 | 602-248-2822 | ggotto@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Kelley Drye & Warren, LLP | Craig A. Wolfe | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | | cwolfe@kelleydrye.com | Counsel to the Pension Benefit Guaranty Corporation |
| Kelley Drye & Warren, LLP | Merrill B. Stone | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | | mstone@kelleydrye.com | Counsel to the Pension Benefit Guaranty Corporation |
| Kennedy, Jennick & Murray | Susan M. Jennik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | sjennik@kimlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 10 of 21

5/21/2012 6:10 PM
Email (393)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Kennedy, Jennick & Murray | Thomas Kennedy | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | tkennedy@kimlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kerr Russell & Weber PLC | James E. DeLine | 500 Woodward Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-961-0200 | 313-961-0388 | jed@krwlaw.com | Counsel to Pontiac Coil, Inc. |
| Kerr Russell & Weber PLC | Patrick Warren Hunt | 500 Woodward Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-961-0200 | 313-961-0388 | pwh@krwlaw.com | Counsel to Pontiac Coil, Inc. |
| King & Spalding, LLP | H. Slayton Dabney, Jr. | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | 212-556-2222 | sdabney@kslaw.com | Counsel to KPMG LLP |
| Kirkland & Ellis LLP | David Spiegel | 300 North LaSalle | | Chicago | IL | 60654 | | 312-862-2000 | | david.spiegel@kirkland.com | |
| Kirkland & Ellis LLP | Jim Stempel | 200 East Randolph Drive | | Chicago | IL | 60601 | | 312-861-2000 | 312-861-2200 | jstempel@kirkland.com | Counsel to Lunt Mannufacturing Company |
| Kirkpatrick & Lockhart Nicholson Graham LLP | Edward M. Fox | 599 Lexington Avenue | | New York | NY | 10022 | | 212-536-4812 | 212-536-3901 | efox@klng.com | Counsel to Wilmington Trust Company, as Indenture trustee |
| Kokomo Gas & Fuel Company | Patti E Pope Revenue Recovery Manager | Northern Indiana Public Service Company | 801 East 86th Avenue | Merrillville | IN | 46410 | | | 219-647-5115 | pepope@nisource.com | Kokomo Gas & Fuel Company |
| Kramer Levin Naftalis & Frankel LLP | Jordan D Kaye | 1177 Avenue of the Americas | | New York | NY | 10036 | | 212-715-9489 | 212-715-9489 | jkaye@kramerlevin.com | Counsel to HP Enterprise Services, LLC; Vishay Americas Inc. |
| Krieg Devault LLP | Lawrence W. Schmits Esq. | One Indiana Square, Suite 2800 | | Indianapolis | IN | 46204 | | 317-238-6271 | | lschmits@kdlegal.com | Co-Counsel for Delphi Salaried Retirees Association Benefit Trust VEBA Committee |
| Krieg Devault LLP | Patricia L. Beaty Esq | One Indiana Square, Suite 2800 | | Indianapolis | IN | 46204 | | 317-636-4341 | | pbeaty@kdlegal.com | Co-Counsel for Delphi Salaried Retirees Association Benefit Trust VEBA Committee |
| Krugliak, Wilkins, Griffiths & Dougherty CO., L.P.A. | Sam O. Simmerman | 4775 Munson Street N.W. | P.O. Box 36963 | Canton | OH | 44735-6963 | | 330-497-0700 | 330-497-4020 | sosimmerman@kwgd.com | Counsel to for Millwood, Inc. |
| Kutak Rock LLP | Jay Selanders | 1010 Grand Blvd Ste 500 | | Kansas City | MO | 64106 | | 816-502-4617 | 816-960-0041 | jay.selanders@kutakrock.com | Counsel to DaimlerChrysler Corporation; DaimlerChrylser Motors Company, LLC; DaimlerChrylser Canada, Inc. |
| Kutchin & Rufo, P.C. | Edward D. Kutchin | Two Center Plaza | Suite 620 | Boston | MA | 02108-1906 | | 617-542-3000 | 617-542-3001 | ekutchin@kutchinrufo.com | Counsel to Parlex Corporation |
| Kutchin & Rufo, P.C. | Kerry R. Northrup | Two Center Plaza | Suite 620 | Boston | MA | 02108-1906 | | 617-542-3000 | 617-542-3001 | knorthup@bmklegal.com | Counsel to Parlex Corporation |
| Lambert. Leser, Isackson, Cook & Guinta, P.C. | Adam D. Bruski | 309 Davidson Building | PO Box 835 | Bay City | MI | 48707-0835 | | 989-893-3518 | | adbruski@lambertleser.com | Counsel to Creditor Linamar Corp. |
| Lambert. Leser, Isackson, Cook & Guinta, P.C. | Susan M. Cook | 309 Davidson Building | PO Box 835 | Bay City | MI | 48707-0835 | | 989-893-3518 | | smcook@lambertleser.com | Counsel to Linamar Corporation |
| Latham & Watkins | Mark A. Broude | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1384 | 212-751-4864 | mark.broude@lw.com | UCC Professional |
| Latham & Watkins | Michael J. Riela | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | michael.riela@lw.com | UCC Professional |
| Latham & Watkins | Mitchell A. Seider | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | mitchell.seider@lw.com | UCC Professional |
| Latham & Watkins | Robert Rosenberg | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | UCC Professional |
| Law Offices of Michael O'Hayer | Michael O'Hayer Esq | 22 N Walnut Street | | West Chester | PA | 19380 | | 610-738-1230 | 610-738-1217 | mkohayer@aol.com | Counsel to A-1 Specialized Services and Supplies Inc |
| Lewis and Roca LLP | Rob Charles, Esq. | One South Church Street | Suite 700 | Tucson | AZ | 85701 | | 520-629-4427 | 520-879-4705 | rcharles@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Lewis and Roca LLP | Susan M. Freeman, Esq. | 40 North Central Avenue | Suite 1900 | Phoenix | AZ | 85004-4429 | | 602-262-5756 | 602-734-3824 | sfreeman@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Linebarger Goggan Blair & Sampson, LLP | Diane W. Sanders | 1949 South IH 35 (78741) | P.O. Box 17428 | Austin | TX | 78760-7428 | | 512-447-6675 | 512-443-5114 | austin.bankruptcy@publicans.com | Counsel to Cameron County, Brownsville ISD |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 11 of 21

5/21/2012 6:10 PM
Email (393)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Linebarger Goggan Blair & Sampson, LLP | Elizabeth Weller | 2323 Bryan Street | Suite 1600 | Dallas | TX | 75201 | | 214-880-0089 | 4692215002 | dallas.bankruptcy@publicans.com | Counsel to Dallas County and Tarrant County |
| Linebarger Goggan Blair & Sampson, LLP | John P. Dillman | P.O. Box 3064 | | Houston | TX | 77253-3064 | | 713-844-3478 | 713-844-3503 | houston_bankruptcy@publicans.com | Counsel in Charge for Taxing Authorities: Cypress-Fairbanks Independent School District, City of Houston, Harris County |
| Locke Lord Bissell & Liddell | Kevin J. Walsh | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | | 212-812-8304 | 212-812-8364 | kwalsh@lockelord.com | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Loeb & Loeb LLP | P. Gregory Schwed | 345 Park Avenue | | New York | NY | 10154-0037 | | 212-407-4000 | | gschwed@loeb.com | Counsel to Creditor The Interpublic Group of Companies, Inc. and Proposed Auditor Deloitte & Touche, LLP |
| Loeb & Loeb LLP | William M. Hawkins | 345 Park Avenue | | New York | NY | 10154 | | 212-407-4000 | 212-407-4990 | whawkins@loeb.com | Counsel to Industrial Ceramics Corporation |
| Lowenstein Sandler PC | Bruce S. Nathan | 1251 Avenue of the Americas | | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | bnathan@lowenstein.com | Counsel to Daewoo International (America) Corp. |
| Lowenstein Sandler PC | Ira M. Levee | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | ilevee@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Kenneth A. Rosen | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | krosen@lowenstein.com | Counsel to Cerberus Capital Management, L.P. |
| Lowenstein Sandler PC | Scott Cargill | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | scargill@lowenstein.com | Counsel to Cerberus Capital Management, L.P.; AT&T Corporation |
| Lowenstein Sandler PC | Vincent A. D'Agostino | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | vdagostino@lowenstein.com | Counsel to AT&T Corporation |
| Lyden, Liebenthal & Chappell, Ltd. | Erik G. Chappell | 5565 Airport Highway | Suite 101 | Toledo | OH | 43615 | | 419-867-8900 | 419-867-8909 | egc@lydenlaw.com | Counsel to Metro Fibres, Inc. |
| Maddin, Hauser, Wartell, Roth & Heller PC | Alexander Stotland Esq | 28400 Northwestern Hwy | Third Floor | Southfield | MI | 48034 | | 248-354-4030 | | axs@maddinhauser.com | Attorney for Danice Manufacturing Co. |
| Madison Capital Management | Joe Landen | 6143 South Willow Drive | Suite 200 | Greenwood Village | CO | 80111 | | 303-957-4254 | 303-957-2098 | jlanden@madisoncap.com | Representative for Madison Capital Management |
| Margulies & Levinson, LLP | Leah M. Caplan, Esq. | 30100 Chagrin Boulevard | Suite 250 | Pepper Pike | OH | 44124 | | 216-514-4935 | 216-514-4936 | lmc@ml-legal.com | Counsel to Venture Plastics |
| Mastromarco & Jahn, P.C. | Victor J. Mastromarco, Jr. | 1024 North Michigan Avenue | P.O. Box 3197 | Saginaw | MI | 48605-3197 | | 989-752-1414 | | vmastromar@aol.com | Counsel to H.E. Services Company and Robert Backie and Counsel to Cindy Palmer, Personal Representative to the Estate of Michael Palmer |
| Masuda Funai Eifert & Mitchell, Ltd. | Gary D. Santella | 203 North LaSalle Street | Suite 2500 | Chicago | IL | 60601-1262 | | 312-245-7500 | 312-245-7467 | gsantella@masudafunai.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC and Hosiden America Corporation |
| McCarter & English, LLP | David J. Adler, Jr. Esq. | 245 Park Avenue, 27th Floor | | New York | NY | 10167 | | 212-609-6800 | 212-609-6921 | dadler@mccarter.com | Counsel to Ward Products, LLC |
| McCarter & English, LLP | Eduardo J. Glas, Esq. | Four Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4096 | | 913-622-4444 | 973-624-7070 | eglas@mccarter.com | Counsel to General Products Delaware Corporation |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 12 of 21

5/21/2012 6:10 PM
Email (393)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| McCarthy Tetrault LLP | Lorne P. Salzman | 66 Wellington Street West | Suite 4700 | Toronto | Ontario | M5K 1E6 | | 416-362-1812 | 416-868-0673 | lsalzman@mccarthy.ca | Counsel to Themselves (McCarthy Tetrault LLP) |
| McDermott Will & Emery LLP | Gary O. Ravert | 340 Madison Avenue | | New York | NY | 10017-1922 | | 212-547-5477 | 212-547-5444 | gravert@mwe.com | Counsel for Temic Automotive of North America, Inc. |
| McDermott Will & Emery LLP | Stephen B. Selbst | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5400 | 212-547-5444 | sselbst@mwe.com | Counsel to National Semiconductor Corporation |
| McDermott Will & Emery LLP | Steven P. Handler Monica M. Quinn | 227 W Monroe St | | Chicago | IL | 60606 | | 312-372-2000 | 312-984-7700 | shandler@mwe.com mquinn@mwe.com | Counsel for Temic Automotive of North America, Inc. |
| McDonald Hopkins Co., LPA | Scott N. Opincar, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sopincar@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McDonald Hopkins Co., LPA | Shawn M. Riley, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sriley@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McElroy, Deutsch, Mulvaney & Carpenter, LLP | Jeffrey Bernstein, Esq. | Three Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4079 | | 973-622-7711 | 973-622-5314 | jbernstein@mdmc-law.com | Counsel to New Jersey Self-Insurers Guaranty Association |
| McGuirewoods LLP | Aaron G McCollough Esq | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | | 804-775-1000 | 804-775-1061 | amccollough@mcguirewoods.com | Counsel to Siemens Energy & Automation, Inc. |
| McGuirewoods LLP | Daniel F Blanks | One James Center | 901 East Cary Street | Richmond | VA | 23219 | | 804-775-1000 | 804-698-2186 | dblanks@mcguirewoods.com | Counsel for CSX Transportation, Inc. |
| McGuirewoods LLP | John H Maddock III | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | | 804-775-1178 | 804-698-2186 | jmaddock@mcguirewoods.com | Counsel to Siemens Logistics Assembly Systems, Inc.; Counsel for CSX Transportation, Inc. |
| Meyer, Suozzi, English & Klein, P.C. | Attn Thomas R Slome Esq | 990 Stewart Ave Ste 300 | PO Box 9194 | Garden City | NY | 11530-9194 | | 516-741-6565 | 516-741-6706 | tslome@msek.com | Counsel for Pamela Geller; JAE Electronics, Inc. |
| Meyer, Suozzi, English & Klein, P.C. | Hanan Kolko | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | hkolko@msek.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Meyers Law Group, P.C. | Merle C. Meyers | 44 Montgomery Street | Suite 1010 | San Francisco | CA | 94104 | | 415-362-7500 | 415-362-7515 | mmeyers@mlg-pc.com | Counsel to Alps Automotive, Inc. |
| Meyers, Rodbell & Rosenbaum, P.A. | M. Evan Meyers | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | emeyers@mrrlaw.net | Counsel to Prince George County, Maryland |
| Meyers, Rodbell & Rosenbaum, P.A. | Robert H. Rosenbaum | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | rrosenbaum@mrrlaw.net | Counsel to Prince George County, Maryland |
| Miami-Dade County Tax Collector | April Burch | Paralegal Unit | 140 West Flagler St Ste 1403 | Miami | FL | 33130 | | 305-375-5314 | 305-375-1142 | mdtcbkc@miamidade.gov | Paralegal Collection Specialist for Miami-Dade County |
| Michael Cox | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | miag@michigan.gov | Attorney General for State of Michigan, Department of Treasury |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Dennis J. Raterink | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1176 | 517-373-2129 | raterinkd@michigan.gov | Assistant Attorney General for Worker's Compensation Agency; Attorney for the Funds Administration for the State of Michigan |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Michael Cox | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | miag@michigan.gov | Attorney General for Worker's Compensation Agency; Attorney for the Funds Administration for the State of Michigan |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 13 of 21

5/21/2012 6:10 PM
Email (393)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Miles & Stockbridge, P.C. | Thomas D. Renda | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | trenda@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miller & Martin PLLC | Dale Allen | 150 Fourth Ave North | Ste 1200 | Nashville | TN | 37219 | | | | vjones@millermartin.com | Counsel to Averitt Express |
| Miller Johnson | Thomas P. Sarb Robert D. Wolford | 250 Monroe Avenue, N.W. | Suite 800, PO Box 306 | Grand Rapids | MI | 49501-0306 | | 616-831-1748 616-831-1726 | 616-988-1748 616-988-1726 | sarbt@millerjohnson.com wolfordr@millerjohnson.com | Counsel to Pridgeon & Clay, Inc. |
| Miller, Canfield, Paddock and Stone, P.L.C. | Jonathan S. Green | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8452 | 313-496-7997 | greeni@millercanfield.com | Counsel to Wells Operating Partnership, LP |
| Miller, Canfield, Paddock and Stone, P.L.C. | Marc N. Swanson | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-963-6420 | 313-496-8452 | swansonm@millercanfield.com | Counsel to Brose North America Holding LP and its affiliates |
| Miller, Canfield, Paddock and Stone, P.L.C. | Timothy A. Fusco | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8435 | 313-496-8453 | fusco@millercanfield.com | Counsel to Niles USA Inc.; Techcentral, LLC; The Bartech Group, Inc.; Fischer Automotive Systems |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Paul J. Ricotta | One Financial Center | | Boston | MA | 02111 | | 617-542-6000 | 617-542-2241 | piricotta@mintz.com pricotta@mintz.com | Counsel to Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Molex Connector Corp | Jeff Ott | 2222 Wellington Ct. | | Lisle | IL | 60532 | | 630-527-4254 | 630-512-8610 | Jeff.Ott@molex.com | Counsel to Molex Connector Corp |
| Morgan, Lewis & Bockius LLP | Andrew D. Gottfried | 101 Park Avenue | | New York | NY | 10178-0060 | | 212-309-6000 | 212-309-6001 | agottfried@morganlewis.com | Counsel to ITT Industries, Inc.; Hitachi Chemical (Singapore), Ltd. |
| Morgan, Lewis & Bockius LLP | Menachem O. Zelmanovitz | 101 Park Avenue | | New York | NY | 10178 | | 212-309-6000 | 212-309-6001 | mzelmanovitz@morganlewis.com | Counsel to Hitachi Chemical (Singapore) Pte, Ltd. |
| Morgan, Lewis & Bockius LLP | Richard W. Esterkin, Esq. | 300 South Grand Avenue | | Los Angeles | CA | 90017 | | 213-612-1163 | 213-612-2501 | resterkin@morganlewis.com | Counsel to Sumitomo Corporation |
| Moritt Hock Hamroff & Horowitz LLP | Leslie Ann Berkoff | 400 Garden City Plaza | | Garden City | NY | 11530 | | 516-873-2000 | | lberkoff@moritthock.com | Counsel to Standard Microsystems Corporation and its direct and indirect subsidiares Oasis SiliconSystems AG and SMSC NA Automotive, LLC (successor-in-interst to Oasis Silicon Systems, Inc.) |
| Moses & Singer LLP | James M. Sullivan Esq. | The Chrysler Building | 405 Lexington Avenue | New York | NY | 10174 | | 212-554-7800 | 212-554-7700 | jsullivan@mosessinger.com | Counsel to The Timken Corporation |
| Munsch Hardt Kopf & Harr, P.C. | Raymond J. Urbanik, Esq., Joseph J. Wielebinski, Esq. and Davor Rukavina, Esq. | 3800 Lincoln Plaza | 500 North Akard Street | Dallas | RX | 75201-6659 | | 214-855-7590 214-855-7561 214-855-7587 | 214-855-7584 | rurbanik@munsch.com jwielebinski@munsch.com drukavina@munsch.com | Counsel to Texas Instruments Incorporated |
| Nantz, Litowich, Smith, Girard & Hamilton, P.C. | Sandra S. Hamilton | 2025 East Beltline, S.E. | Suite 600 | Grand Rapids | MI | 49546 | | 616-977-0077 | 616-977-0529 | sandy@nlsg.com | Counsel to Lankfer Diversified Industries, Inc. |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 14 of 21

5/21/2012 6:10 PM
Email (393)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Nathan, Neuman & Nathan, P.C. | Kenneth A. Nathan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | | 248-351-0099 | 248-351-0487 | Knathan@nathanneuman.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| National City Commercial Capital | Lisa M. Moore | 995 Dalton Avenue | | Cincinnati | OH | 45203 | | 513-455-2390 | 866-298-4481 | l.moore@pnc.com | Vice President and Senior Counsel to National City Commercial Capital |
| Nelson Mullins Riley & Scarborough | George B. Cauthen | 1320 Main Street, 17th Floor | PO Box 11070 | Columbia | SC | 29201 | | 803-7255-9425 | 803-256-7500 | george.cauthen@nelsonmullins.com | Counsel to Datwyler Rubber & Plastics, Inc.; Datwyler, Inc.; Datwyler i/o devices (Americas), Inc.; Rothrist Tube (USA), Inc. |
| New Jersey Attorney General's Office Division of Law | Tracy R Richardson Deputy Attorney General | R.J. Hughes Justice Complex | 25 Market St P.O. Box 106 | Trenton | NJ | 08628-0106 | | 609-292-1537 | 609-777-3055 | tracy.richardson@dol.lps.state.nj.us | Deputy Attorney General - State of New Jersey Division of Taxation |
| Nixon Peabody LLP | Victor G. Milione Christopher M. Desiderio | 437 Madison Ave | | New York | NY | 10022 | | 212-940-3000 | 866-596-3967 | cdesiderio@nixonpeabody.com vmilione@nixonpeabody.com | Counsel to Corning Incorporated, Incorporated and Corning |
| North Point | David G. Heiman | 901 Lakeside Avenue | | Cleveland | OH | 44114 | | 216-586-3939 | 216-579-0212 | dgheiman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Office of the Chapter 13 Trustee | Camille Hope | P.O. Box 954 | | Macon | GA | 31202 | | 478-742-8706 | 478-746-4488 | cahope@chapter13macon.com | Office of the Chapter 13 Trustee |
| Office of the Texas Attorney General | Jay W. Hurst | P.O. Box 12548 | | Austin | TX | 78711-2548 | | 512-475-4861 | 512-482-8341 | jay.hurst@oag.state.tx.us | Counsel to The Texas Comptroller of Public Accounts |
| Ohio Environmental Protection Agency | c/o Michelle T. Sutter | Principal Assistant Attorney General Environmental Enforcement Section | 30 E Broad St 25th Fl | Columbus | OH | 43215 | | 614-466-2766 | 614-752-2441 | msutter@ag.state.oh.us | Attorney for State of Ohio, Environmental Protection Agency |
| Orbotech, Inc. | Michael M. Zizza, Legal Manager | 44 Manning Road | | Billerica | MA | 01821 | | 978-901-5025 | 978-667-9969 | michaelz@orbotech.com | Company |
| O'Rourke Katten & Moody | Michael Moody | 55 W Wacker Dr | Ste 1400 | Chicago | IL | 60615 | | 312-849-2020 | 312-849-2021 | mmoody@rourkeandmoody.com | Counsel to Ameritech Credit Corporation d/b/a SBC Capital Services |
| Orrick, Herrington & Sutcliffe LLP | Alyssa Englund, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | | 212-506-5187 | 212-506-5151 | aenglund@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Frederick D. Holden, Jr., Esq. | 405 Howard Street | | San Francisco | CA | 94105 | | 415-773-5700 | 415-773-5759 | fholden@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Raniero D'Aversa, Jr. | 51 West 52nd Street at 6th Avenue | | New York | NY | 10103-0001 | | 212-506-3715 | 212-506-5151 | Rdaversa@orrick.com | Counsel to Bank of America, N.A. |
| Pachulski Stang Ziehl & Jones LLP | Michael R. Seidl | 919 N. Market Street, 17th Floor | P.O. Box 8705 | Wilmington | DE | 19899-8705 | | 302-652-4100 | 302-652-4400 | mseidl@pszjlaw.com | Counsel for Essex Group, Inc. |
| Pachulski Stang Ziehl & Jones LLP | Robert J. Feinstein Ilan D. Scharf | 780 Third Avenue, 36th Floor | | New York | NY | 10017-2024 | | 212-561-7700 | 212-561-7777 | Rfeinstein@pszjlaw.com Ischarf@pszjlaw.com | Counsel for Essex Group, Inc. |
| Patterson Belknap Webb & Tyler LLP | Daniel A. Lowenthal | 1133 Avenue of the Americas | | New York | NY | 10036 | | 212-336-2720 | 212-336-1253 | dalowenthal@pbwt.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation |
| Patterson Belknap Webb & Tyler LLP | David W. Dykhouse Phyllis S. Wallitt | 1133 Avenue of the Americas | | New York | NY | 10036-6710 | | 212-336-2000 | 212-336-2222 | dwdykhouse@pbwt.com | Attorneys for Fry's Metals Inc. and Specialty Coatings Systems Eft |

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Paul H. Spaeth Co. LPA | Paul H. Spaeth | 130 W Second St Ste 450 | | Dayton | OH | 45402 | | 937-223-1655 | 937-223-1656 | spaethlaw@phslaw.com | Attorneys for F&G Multi-Slide Inc and F&G Tool & Die Co. Inc. |
| Paul, Weiss, Rifkind, Wharton & Garrison | Andrew N. Rosenberg | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | arosenberg@paulweiss.com | Counsel to Merrill Lynch, Pierce, Fenner & Smith, Incorporated |
| Paul, Weiss, Rifkind, Wharton & Garrison | Douglas R. Davis | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | ddavis@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Elizabeth R. McColm | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | emccolm@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Peggy Housner | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | housnerp@michigan.gov | Assistant Attorney General for State of Michigan, Department of Treasury |
| Penachio Malara LLP | Anne Penachio | 235 Main Street | Suite 600A | White Plains | NY | 10601 | | 914-946-2889 | 914-946-2882 | apenachio@pmlawllp.com | Counsel to UVA Machine Company and its successors by acquisition |
| Pepper, Hamilton LLP | Francis J. Lawall | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | lawallf@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro); Ametek, Inc.; Cleo Inc. |
| Pepper, Hamilton LLP | Henry Jaffe | 1313 Market Street | PO Box 1709 | Wilmington | DE | 19899-1709 | | 302-777-6500 | 302-421-8390 | jaffeh@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pepper, Hamilton LLP | Nina M. Varughese | 3000 Two Logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | varughesen@pepperlaw.com | Counsel to Capro, Ltd; Teleflex Automotive Manufacturing Corporation; Teleflex Incorporated; Sierra International, Inc. |
| Pickrel Shaeffer & Ebeling | Sarah B. Carter Esq | 2700 Kettering Tower | | Dayton | OH | 45423-2700 | | 937-223-1130 | 937-223-0339 | scarter@pselaw.com | |
| Pierce Atwood LLP | Jacob A. Manheimer | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | jmanheimer@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pierce Atwood LLP | Keith J. Cunningham | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | kcunningham@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pietragallo Bosick & Gordon LLP | Richard J. Parks | 54 Buhl Blvd | | Sharon | PA | 16146 | | 724-981-1397 | 724-981-1398 | rjp@pbandg.com | Counsel to Ideal Tool Company, Inc. |
| Pillsbury Winthrop Shaw Pittman LLP | Karen B. Dine | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | karen.dine@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Margot P. Erlich | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | margot.erlich@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 16 of 21

5/21/2012 6:10 PM
Email (393)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pillsbury Winthrop Shaw Pittman LLP | Mark D. Houle | 650 Town Center Drive | Ste 550 | Costa Mesa | CA | 92626-7122 | | 714-436-6800 | 714-436-2800 | mark.houle@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Richard L. Epling | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | richard.epling@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Robin L. Spear | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | robin.spear@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Porzio, Bromberg & Newman, P.C. | Brett S. Moore, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | bsmoore@pbnlaw.com | |
| Porzio, Bromberg & Newman, P.C. | John S. Mairo, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | jsmairo@pbnlaw.com | Counsel to Neuman Aluminum Automotive, Inc. and Neuman Aluminum Impact Extrusion, Inc. |
| Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, S.C. | Jill M. Hartley and Marianne G. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | jh@previant.com mgr@previant.com | Counsel to International Brotherood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| PriceWaterHouseCoopers | Enrique Bujidos | Almagro | 40 | Madrid | | 28010 | Spain | 34 915 684 356 | | enrique.bujidos@es.pwc.com | Representative to DASE |
| QAD, Inc. | Stephen Tyler Esq | 10,000 Midlantic Drive | Suite 100 West | Mt. Laurel | NJ | 08054 | | 856-840-2870 | 856-840-2740 | xst@qad.com | Counsel to QAD, Inc. |
| Quarles & Brady LLP | Kasey C. Nye | One South Church Street | | Tucson | AZ | 85701 | | 520-770-8717 | 520-770-2203 | knye@quarles.com | Counsel to Offshore International, Inc.; Maquilas Teta Kawi, S.A. de C.V.; On Semiconductor Corporation; Flambeau Inc. |
| Quarles & Brady LLP | Roy Prange | 33 E Main St Ste 900 | | Madison | WI | 53703-3095 | | 608-283-2485 | 608-294-4920 | rlp@quarles.com | Counsel for Flambeau Inc. |
| Quarles & Brady LLP | Valerie L. Bailey-Rihn Esq | 33 E Main St Ste 900 | | Madison | WI | 53703 | | 608-283-2407 | | valerie.bailey-rihn@quarles.com | Counsel to Charter Manufacturing Co., Charter Mfg. Co. Inc., Charter Steel and Milwaukee Wire Products |
| Reed Smith | Ann Pille | 10 South Wacker Drive | | Chicago | IL | 60606 | | 312-207-1000 | 312-207-6400 | apille@reedsmith.com | Counsel to Infineon; Infineon Technologies |
| Republic Engineered Products, Inc. | Joseph A Kaczka | 3770 Embassy Parkway | | Akron | OH | 44333 | | 330-670-3215 | 330-670-3020 | jkaczka@republicengineered.com | Counsel to Republic Engineered Products, Inc. |
| Richard A Meier | | 30300 Northwestern Hwy Ste 320 | | Farmington Hills | MI | 48334 | | 248-932-3500 248-990-1971 | | meier900@netscape.net | Counsel to Ratko Menjak |
| Riddell Williams P.S. | Joseph E. Shickich, Jr. | 1001 4th Ave. | Suite 4500 | Seattle | WA | 98154-1195 | | 206-624-3600 | 206-389-1708 | jshickich@riddellwilliams.com | Counsel to Microsoft Corporation; Microsoft Licensing, GP |
| Rieck and Crotty PC | Jerome F Crotty | 55 West Monroe Street | Suite 3390 | Chicago | IL | 60603 | | 312-726-4646 | 312-726-0647 | jcrotty@rieckcrotty.com | Counsel to Mary P. O'Neill and Liam P. O'Neill |
| Russell Reynolds Associates, Inc. | Charles E. Boulbol, P.C. | 26 Broadway, 17th Floor | | New York | NY | 10004 | | 212-825-9457 | 212-825-9414 | rtrack@msn.com | Counsel to Russell Reynolds Associates, Inc. |
| Satterlee Stephens Burke & Burke LLP | Christopher R. Belmonte | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | cbelmonte@ssbb.com | Counsel to Moody's Investors Service |
| Satterlee Stephens Burke & Burke LLP | Pamela A. Bosswick | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | pbosswick@ssbb.com | Counsel to Moody's Investors Service |

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Satterlee Stephens Burke & Burke LLP | Roberto Carrillo | 230 Park Avenue | Suite 1130 | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | rcarrillo@ssbb.com | Attorney's for Tecnomec S.r.l. |
| Schafer and Weiner PLLC | Daniel Weiner | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | dweiner@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Howard Borin | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | hborin@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Ryan Heilman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | rheilman@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schiff Hardin LLP | Eugene J. Geekie, Jr. | 7500 Sears Tower | | Chicago | IL | 60606 | | 312-258-5635 | 312-258-5600 | egeekie@schiffhardin.com | Counsel to  Means Industries |
| Schulte Roth & Zabel LLP | David J. Karp | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | david.karp@srz.com | Counsel to Parnassus Holdings II, LLC and Platinum Equity Capital Partners II, LP |
| Schulte Roth & Zabel LLP | James T. Bentley | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2273 | 212-593-5955 | james.bentley@srz.com | Counsel to Panasonic Automotive Systems Company of America |
| Schulte Roth & Zabel LLP | Michael L. Cook | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | michael.cook@srz.com | Counsel to Panasonic Automotive Systems Company of America; D.C. Capital Partners, L.P. |
| Schwartz Lichtenberg LLP | Barry E Lichtenberg Esq | 420 Lexington Ave Ste 2400 | | New York | NY | 10170 | | 212-389-7818 | 212-682-6511 | barryster@att.net | Counsel to Marybeth Cunningham |
| Seyfarth Shaw LLP | Paul M. Baisier, Esq. | 1545 Peachtree Street, N.E. | Suite 700 | Atlanta | GA | 30309-2401 | | 404-885-1500 | 404-892-7056 | pbaisier@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | William J. Hanlon | World Trade Center East | Two Seaport Lane, Suite 300 | Boston | MA | 02210 | | 617-946-4800 | 617-946-4801 | whanlon@seyfarth.com | Counsel to  le Belier/LBQ Foundry S.A. de C.V. |
| Shaw Gussis Fishman Glantz Wolfson & Towbin LLC | Brian L Shaw | 321 N. Clark St. | Suite 800 | Chicago | IL | 60654 | | 312-541-0151 | 312-980-3888 | bshaw100@shawgussis.com | Counsel to ATC Logistics & Electronics, Inc. |
| Sheehan Phinney Bass + Green Professional Association | Bruce A. Harwood | 1000 Elm Street | P.O. Box 3701 | Manchester | NH | 03105-3701 | | 603-627-8139 | 603-627-8121 | bharwood@sheehan.com | Counsel to Source Electronics, Inc. |
| Sheldon S. Toll PLLC | Sheldon S. Toll | 2000 Town Center | Suite 2550 | Southfield | MI | 48075 | | 248-358-2460 | 248-358-2740 | lawtoll@comcast.net | Counsel to Milwaukee Investment Company |
| Sheppard Mullin Richter & Hampton LLP | Eric Waters | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | ewaters@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Malani J. Sternstein | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | msternstein@sheppardmullin.com | Counsel to International Rectifier Corp. and Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theodore A. Cohen | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | tcohen@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theresa Wardle | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | twardle@sheppardmullin.com | Counsel to International Rectifier Corp. |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 5353 Essen Lane | Suite 650 | Baton Rouge | LA | 70809 | | 225-757-2185 | 225-757-7674 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 909 Poydras Street | 28th Floor | New Orleans | LA | 70112-1033 | | 504-299-2100 | 504-299-2300 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Shipman & Goodwin LLP | Kathleen M. LaManna | One Constitution Plaza | | Hartford | CT | 06103-1919 | | 860-251-5603 | 860-251-5218 | bankruptcy@goodwin.com | |
| Sills, Cummis Epstein & Gross, P.C. | Andrew H. Sherman | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | asherman@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Jack M. Zackin | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | jzackin@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Sills, Cummis Epstein & Gross, P.C. | Valerie A Hamilton Simon Kimmelman | 650 College Rd E | | Princeton | NJ | 08540 | | 609-227-4600 | 609-227-4646 | vhamilton@sillscummis.com skimmelman@sillscummis.com | Counsel to Doosan Infracore America Corp. |
| Silver Point Capital, L.P. | Chaim J. Fortgang | Two Greenwich Plaza | 1st Floor | Greenwich | CT | 06830 | | 203-542-4216 | 203-542-4100 | cfortgang@silverpointcapital.com | Counsel to Silver Point Capital, L.P. |
| Smith, Katzenstein & Furlow LLP | Kathleen M. Miller | 800 Delaware Avenue, 7th Floor | P.O. Box 410 | Wilmington | DE | 19899 | | 302-652-8400 | 3026528405 | kmiller@skfdelaware.com | Counsel to Airgas, Inc. |
| SNR Denton US LLP | D. Farrington Yates | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | 212-768-6800 | fyates@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. and United Plastics Group |
| SNR Denton US LLP | Oscar N. Pinkas | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | 212-768-6800 | opinkas@sonnenschein.com | Counsel to Schaeffler Canada, Inc. and Schaeffler KG |
| SNR Denton US LLP | Robert E. Richards | 7800 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | 312-876-7934 | rrichards@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc.; Counsel to Schaeffler Canada, Inc. and Schaeffler KG |
| Squire, Sanders & Dempsey L.L.P. | G. Christopher Meyer | 4900 Key Tower | 127 Public Sq | Cleveland | OH | 44114 | | 216-479-8692 | 216-479-8776 | cmeyer@ssd.com | Counsel to Furukawa Electric Co., Ltd.; Counsel for the City of Dayton, Ohio |
| State of California Office of the Attorney General | Sarah E. Morrison | Deputy Attorney General | 300 South Spring Street Ste 1702 | Los Angeles | CA | 90013 | | 213-897-2640 | 213-897-2802 | sarah.morrison@doj.ca.gov | Attorneys for the State of California Department of Toxic Substances Control |
| State of Michigan Department of Labor & Economic Growth, Unemployment Insurance Agency | Roland Hwang Assistant Attorney General | 3030 W. Grand Boulevard | Suite 9-600 | Detroit | MI | 48202 | | 313-456-2210 | 313-456-2201 | hwangr@michigan.gov | Assistant Attorney General for State of Michigan, Unemployment Tax Office of the Department of Labor & Economic Growth, Unemployment Insurance Agency |
| State of Michigan Labor Division | Susan Przekop-Shaw | PO Box 30736 | | Lansing | MI | 48909 | | 517-373-2560 | | przekopshaws@michigan.gov | Assistant Attorney General as Attorney for the Michigan Workers' Compensation Agency |
| Steel Technologies, Inc. | John M. Baumann | 15415 Shelbyville Road | | Louisville | KY | 40245 | | 502-245-0322 | 502-245-0542 | jmbaumann@steeltechnologies.com | Counsel to Steel Technologies, Inc. |
| Sterns & Weinroth, P.C. | Michael A Spero Simon Kimmelman Valerie A Hamilton | 50 West State Street, Suite 1400 | PO Box 1298 | Trenton | NJ | 08607-1298 | | 609-392-2100 | 609-392-7956 | jspecf@sternslaw.com | Counsel to Doosan Infracore America Corp. |
| Stevens & Lee, P.C. | Constantine D. Pourakis, Esq. | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | | 212-319-8500 | 212-319-8505 | cp@stevenslee.com | Counsel to Tonolli Canada Ltd.; VJ Technologies, Inc. and V.J. ElectroniX, Inc. |
| Stinson Morrison Hecker LLP | Mark A. Shaiken | 1201 Walnut Street | | Kansas City | MO | 64106 | | 816-842-8600 | 816-691-3495 | mshaiken@stinsonmoheck.com | Counsel to Thyssenkrupp Waupaca, Inc. and Thyssenkrupp Stahl Company |
| Stinson Morrison Hecker LLP | Nicholas J Zluticky | 1201 Walnut Street | Suite 2900 | Kansas City | MO | 64106 | | 816-691-3278 | | nzluticky@stinson.com | Counsel to ThyssenKrupp Waupaca, Inc. |
| Stites & Harbison PLLC | Madison L.Cashman | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | robert.goodrich@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison PLLC | Robert C. Goodrich, Jr. | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | madison.cashman@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison, PLLC | W. Robinson Beard, Esq. | 400 West Market Street | | Louisville | KY | 40202 | | 502-681-0448 502-587-3400 | 502-779-8274 502-587-6391 | wbeard@stites.com loucourtsum@stites.com | Counsel to WAKO Electronics (USA), Inc.,Ambrake Corporation, and Akebono Corporation (North America) |
| Taft, Stettinius & Hollister LLP | Richard L .Ferrell | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202-3957 | | 513-381-2838 | | ferrell@taftlaw.com | Counsel to Wren Industries, Inc. |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 19 of 21

5/21/2012 6:10 PM
Email (393)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Taft, Stettinius & Hollister LLP | W Timothy Miller Esq | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202 | | 513-381-2838 | 513-381-0205 | miller@taftlaw.com | Counsel to Select Industries Corporation and Gobar Systems, Inc. |
| Teitelbaum & Baskin LLP | Jay Teitelbaum Ron Baskin | 3 Barker Avenue | 3rd Floor | White Plains | NY | 10601 | | 914-437-7670 | 914-437-7672 | jteitelbaum@tblawllp.com rbaskin@tblawllp.com | Counsel to Mary H. Schaefer |
| Tennessee Department of Revenue | Marvin E. Clements, Jr. | c/o TN Attorney General's Office, Bankruptcy Division | PO Box 20207 | Nashville | TN | 37202-0207 | | 615-532-2504 | 615-741-3334 | agbanknewyork@ag.tn.gov | Tennesse Department of Revenue |
| Thacher Proffitt & Wood LLP | Jonathan D. Forstot | Two World Financial Center | | New York | NY | 10281 | | 212-912-7679 | 212-912-7751 | jforstot@tpw.com | Counsel to TT Electronics, Plc |
| Thacher Proffitt & Wood LLP | Louis A. Curcio | Two World Financial Center | | New York | NY | 10281 | | 212-912-7607 | 212-912-7751 | lcurcio@tpw.com | Counsel to TT Electronics, Plc |
| The Furukawa Electric Co., Ltd. | Mr. Tetsuhiro Niizeki | 6-1 Marunouchi | 2-Chrome, Chiyoda-ku | Tokyo | Japan | 100-8322 | | 81-3-3286-3919 | | niizeki.tetsuhiro@furukawa.co.jp | Legal Department of The Furukawa Electric Co., Ltd. |
| The Michaelson Law Firm | Robert N Michaelson | 11 Broadway Ste 615 | | New York | NY | 10004 | | 212-604-0685 | 800-364-1291 | rnm@michaelsonlawfirm.com | Counsel to NXP Semiconductors USA, Inc. |
| The Timken Corporation BIC - 08 | Michael Hart | 1835 Dueber Ave. SW | PO Box 6927 | Canton | OH | 44706-0927 | | 330-438-3000 | 1-330-471-4388 | michael.hart@timken.com | Representative for Timken Corporation |
| Thompson & Knight | Rhett G. Campbell | 333 Clay Street | Suite 3300 | Houston | TX | 77002 | | 713-654-1871 | 713-654-1871 | rhett.campbell@tklaw.com | Counsel to STMicroelectronics, Inc. |
| Thompson & Knight LLP | Ira L. Herman | 919 Third Avenue | 39th Floor | New York | NY | 10022-3915 | | 212-751-3045 | 214-999-9139 | ira.herman@tklaw.com | Counsel to Victory Packaging |
| Thompson & Knight LLP | John S. Brannon | 1700 Pacific Avenue | Suite 3300 | Dallas | TX | 75201-4693 | | 214-969-1505 | 214-969-1609 | john.brannon@tklaw.com | Counsel to Victory Packaging |
| Thompson Coburn Fagel Haber | Lauren Newman | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | 312-580-2201 | lnewman@thompsoncoburn.com | Counsel to Aluminum International, Inc. |
| Thompson Hine LLP | Jennifer L Maffett | 2000 Courthouse Plaza NE | 10 W Second St | Dayton | OH | 45402 | | 937-443-6600 | | Jennifer.Maffett@ThompsonHine.com | Counsel to Rieck Group, LLC n/k/a Mechanical Construction Managers, LLC |
| TI Group Automotive Systms LLC | Timothy M. Guerriero | 12345 E Nine Mile Rd | | Warren | MI | 48089 | | 586-755-8066 | 586-427-8199 | tguerriero@us.tiauto.com | General Counsel and Company Secretary to TI Group Automotive Systems LLC |
| Todd & Levi, LLP | Jill Levi, Esq. | 444 Madison Avenue | Suite 1202 | New York | NY | 10022 | | 212-308-7400 | | jlevi@toddlevi.com | Counsel to Bank of Lincolnwood |
| U.S. Department of Justice | Matthew L Schwartz Joseph N Cordaro | Assistant United States Attorneys | 86 Chambers St 3rd Fl | New York | NY | 10007 | | 212-637-1945 | 212-637-2750 | matthew.schwartz@usdoj.gov Joseph.Cordaro@usdoj.gov | Counsel to Enviromental Protection Agency; Internal Revenue Service; Department of Health and Human Services; and Customs and Border Protection |
| Underberg & Kessler, LLP | Helen Zamboni | 300 Bausch & Lomb Place | | Rochester | NY | 14604 | | 585-258-2800 | 585-258-2821 | hzamboni@underbergkessler.com | Counsel to McAlpin Industries, Inc. |
| Union Pacific Railroad Company | Mary Ann Kilgore | 1400 Douglas Street | MC 1580 | Omaha | NE | 68179 | | 402-544-4195 | 402-501-0127 | mkilgore@UP.com | Counsel to Union Pacific Railroad Company |
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy | Allied Industrial and Service Workers, Intl Union (USW), AFL-CIO David Jury, Esq. | Five Gateway Center Suite 807 | | Pittsburgh | PA | 15222 | | 412-562-2546 | 412-562-2574 | djury@usw.org | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Vedder Price PC | Stephanie K Hor Chen | 222 N LaSalle St Ste 2600 | | Chicago | IL | 60601 | | 312-609-7786 | | schen@vedderprice.com | Counsel to The Intec Group, Inc. |
| Vorys, Sater, Seymour and Pease LLP | Tiffany Strelow Cobb | 52 East Gay Street | | Columbus | OH | 43215 | | 614-464-8322 | 614-719-4663 | tscobb@vorys.com | Counsel to America Online, Inc. and its Subsidiaries and Affiliates |
| Wachtell, Lipton, Rosen & Katz | Richard G. Mason | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | RGMason@wlrk.com | Counsel to Capital Research and Management Company |
| Warner Norcross & Judd LLP | Gordon J. Toering | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2185 | 616-222-2185 | gtoering@wnj.com | Counsel to Robert Bosch Corporation; Counsel to Daewoo International Corp and Daewoo International (America) Corp |
| Warner Norcross & Judd LLP | Michael G. Cruse | 2000 Town Center | Suite 2700 | Southfield | MI | 48075 | | 248-784-5131 | 248-603-9631 | mcruse@wnj.com | Counsel to Compuware Corporation |
| Warner Norcross & Judd LLP | Stephen B. Grow | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2158 | | growsb@wnj.com | Counsel to Behr Industries Corp. |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 20 of 21

5/21/2012 6:10 PM
Email (393)

DPH Holdings Corp.
Post-Emergence 2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Weltman, Weinberg & Reis Co., L.P.A. | Geoffrey J. Peters | 175 South Third Street | Suite 900 | Columbus | OH | 43215 | | 614-857-4326 | 614-222-2193 | gpeters@weltman.com | Counsel to Seven Seventeen Credit Union |
| White & Case LLP | Glenn Kurtz Gerard Uzzi Douglas Baumstein | 1155 Avenue of the Americas | | New York | NY | 10036-2787 | | 212-819-8200 | | gkurtz@ny.whitecase.com guzzi@whitecase.com dbaumstein@ny.whitecase.com | Counsel to Appaloosa Management, LP |
| White & Case LLP | Thomas Lauria Frank Eaton | Wachovia Financial Center | 200 South Biscayne Blvd., Suite 4900 | Miami | FL | 33131 | | 305-371-2700 | 305-358-5744 | tlauria@whitecase.com featon@miami.whitecase.com | Counsel to Appaloosa Management, LP |
| Whyte, Hirschboeck Dudek S.C. | Bruce G. Arnold | 555 East Wells Street | Suite 1900 | Milwaukee | WI | 53202-4894 | | 414-273-2100 | 414-223-5000 | barnold@whdlaw.com | Counsel to Schunk Graphite Technology |
| Wickens Herzer Panza Cook & Batista Co | James W Moennich Esq | 35765 Chester Rd | | Avon | OH | 44011-1262 | | 440-930-8000 | 440-930-8098 | jmoennich@wickenslaw.com | Counsel for Delphi Sandusky ESOP |
| Winston & Strawn LLP | David Neier Carey D. Schreiber | 200 Park Avenue | | New York | NY | 10166-4193 | | 212-294-6700 | 212-294-4700 | dneier@winston.com cschreiber@winston.com | Counsel to Ad Hoc Group of Tranche A & B DIP Lenders |
| Winthrop Couchot Professional Corporation | Marc. J. Winthrop | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | mwinthrop@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Winthrop Couchot Professional Corporation | Sean A. O'Keefe | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | sokeefe@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Womble Carlyle Sandridge & Rice, PLLC | Allen Grumbine | 550 South Main St | | Greenville | SC | 29601 | | 864-255-5402 | 864-255-5482 | agrumbine@wcsr.com | Counsel to Armacell |
| Womble Carlyle Sandridge & Rice, PLLC | Michael G. Busenkell | 222 Delaware Avenue | Suite 1501 | Wilmington | DE | 19801 | | | | mbusenkell@wcsr.com | Counsel to Chicago Miniature Optoelectronic Technologies, Inc. |
| Woods Oviatt Gilman LLP | Ronald J. Kisinski | 700 Crossroads Bldg | 2 State St | Rochester | NY | 14614 | | 585-362-4514 | 585-362-4614 | rkisicki@woodsoviatt.com | |
| Zeichner Ellman & Krause LLP | Stuart Krause | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | skrause@zeklaw.com | Counsel to Toyota Tsusho America, Inc. |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 21 of 21

5/21/2012 6:10 PM
Email (393)

# EXHIBIT C

DPH Holdings Corp.
Post-Emergence Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| United States Trustee | Brian Masumoto | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | Counsel to United States Trustee |

In re. DPH Holdings Corp., et al.
Case No. 05-44481 (RDD)

Page 1 of 1

5/21/2012 6:11 PM
Post-Emergence Master Service List 120321.xlsx US Mail (1)

# EXHIBIT D

**Hearing Date And Time:  May 24, 2012 at 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
   Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                           :

      In re                      :    Chapter 11
                            :

DPH HOLDINGS CORP., et al.,    :    Case No. 05-44481 (RDD)
                            :

                            :    (Jointly Administered)
               Reorganized Debtors.    :
                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

REORGANIZED DEBTORS' OBJECTION TO MOTION OF ONTARIO SPECIALTY
CONTRACTING, INC. FOR ALLOWANCE OF AN ADMINISTRATIVE CLAIM
PURSUANT TO 11 U.S.C. § 503(b)(1)(A), OR IN THE ALTERNATIVE, FOR LEAVE
TO FILE A LATE ADMINISTRATIVE EXPENSE CLAIM PURSUANT
<u>TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9006(b)</u>

("OBJECTION TO ONTARIO SPECIALTY CONTRACTING, INC.'S
LATE CLAIM MOTION")

DPH Holdings Corp. ("DPH Holdings") and its affiliated reorganized debtors in the above-captioned cases (together with DPH Holdings, the "Reorganized Debtors"), formerly known as Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, former debtors and debtors-in-possession (collectively, the "Debtors"), hereby object (the "Objection") to Ontario Specialty Contracting, Inc.'s Motion For Allowance Of An Administrative Claim Pursuant To 11 U.S.C. § 503(b)(1)(A), Or In The Alternative, For Leave To File A Late Administrative Expense Claim Pursuant To Federal Rule Of Bankruptcy Procedure 9006(b) (Docket No. 21878) (the "Motion"), dated May 4, 2012, requesting allowance of an untimely filed administrative expense claim or, in the alternative, for leave to pursue its untimely filed claim.  In support of this Objection, the Reorganized Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1.    In the Forty-Third Omnibus Claims Objection[1] (Docket No. 19356), the Reorganized Debtors objected to the late filed proof of administrative expense claim number 19873 (the "Administrative Expense Claim") filed by Ontario Specialty Contracting, Inc. ("Ontario") on the basis that the Administrative Expense Claim was not reflected in the Reorganized Debtors' books and records.  The Administrative Expense Claim concerns allegations asserted by Ontario for breach of a July 24, 2008 purchase order, as asserted in its counterclaim asserted in an action pending in New York state court (the "Contract Action").[2] Ontario asserts that it should be permitted to pursue the untimely Administrative Expense claim because (i) the Reorganized Debtors are barred from objecting to the Administrative Expense Claim as untimely, (ii) its claim did not become "ripe" until after the applicable June 1, 2009 bar

---

[1]    Capitalized terms used but not defined in this Preliminary Statement are defined below.

[2]    Delphi Automotive Systems, LLC v. Ontario Specialty Contracting, Inc., Index No. I2009010438 (N.Y. Sup. Ct. Erie County filed Aug. 28, 2009).

date, and (iii) Ontario has shown excusable neglect because, among other things, Ontario was not

served with notice of the applicable bar date.  As discussed more fully below, each of these

arguments fail.

        2.      As a preliminary matter, Article 10.2 of the Modified Plan governs

requests for payment of claims arising through June 1, 2009 and provides that  "[a]ny request for

payment of an Administrative Claim pursuant to this Article 10.2 that is not timely filed and

served <u>shall be disallowed automatically without the need for any objection from the Debtors or</u>

<u>the Reorganized Debtors</u>."  (Modified Plan Art. 10.2 (emphasis added).)[3]  Ontario conveniently

omits this portion of the Modified Plan in its argument that the Reorganized Debtors are

somehow barred from disallowing the Administrative Expense Claim as untimely.  (<u>See</u> Motion

¶¶ 22-24.)  Not only did the Reorganized Debtors "expressly reserve the right to amend, modify,

or supplement [the] Forty-Third Omnibus Claims Objection" (Forty-Third Omnibus Claims

Objection ¶ 58), but the Reorganized Debtors were not required to object to the Administrative

Expense Claim as untimely because untimely administrative expense claims were automatically

disallowed under the terms of the order approving the Modified Plan (Docket No. 18707).  That

the Reorganized Debtors followed the late claim protocol established by this Court—requiring

Ontario to show "excusable neglect" before an untimely administrative expense claim is

allowed—neither obviates the need for Ontario to establish excusable neglect nor requires the

Reorganized Debtors to have previously objected to the Administrative Expense Claim on the

grounds that such claim was untimely filed.

--------

[3]    As discussed below, the Administrative Expense Claim is governed by Article 10.2 of the Modified Plan, not
Article 10.5 of the Modified Plan, but at any rate, both provisions include the same language automatically
disallowing untimely claims without the need for any objection from the Reorganized Debtors.

3.      Ontario admitted in the first paragraph of its response to the Forty-Third

Omnibus Claims Objection (Docket No. 19426) (the "Response") that all acts giving rise to the

Administrative Expense Claim occurred prior to June 1, 2009,[4] but now asserts that its

Administrative Expense Claim did not become "ripe" until September 10, 2009.[5]  (Motion ¶¶ 20-

21.)  Having previously asserted that its Administrative Expense Claim arose prior to June 1,

2009, Ontario is estopped from backing away from this statement solely to fit its excusable

neglect theory.  Indeed, to determine "when a claim arises," courts focus on "'the time when the

acts giving rise to the alleged liability were performed.'" In re Finley, Kumble, Wagner, Heine,

Underberg, Manley, Myerson & Casey, 160 B.R. 882, 892 (Bankr. S.D.N.Y. 1993) (citation

omitted).  Despite its claim arising at the very latest in May 2009, Ontario did not file its

Administrative Expense Claim until October 30, 2009, after the Effective Date of the Modified

Plan and almost four months after the July 15, 2009 bar date applicable to administrative expense

claims that arose prior to June 1, 2009 (the "Initial Administrative Claim Bar Date").

---

[4]    Specifically, paragraph 1 of the Response notes that the Administrative Expense Claim "reflected a total amount
due of $288,751.25 in relation to demolition and related services provided to Debtors beginning on or about
August 4, 2008 and continuing through May 2009."  (Response ¶ 1 (emphasis added).)

[5]    Ontario also lists that its debts were incurred between August 2008 and May 2009 on the face of proof of
administrative expense claim number 19873.  As discussed below, all acts that could give rise to Ontario's claim
occurred before June 1, 2009.  To the extent Ontario wishes to assert acts that occurred after June 1, 2009, such
assertion would be an improper amendment to its proof of administrative expense claim and would not be
recognized pursuant to Article 9.6(d) of the Modified Plan, which provides:

Any claim (whether a newly filed Claim or an amendment to a previously filed Claim) filed after the
later of (i) the Effective Date, (ii) with respect to Claims for rejection damages, the bar date
established pursuant to Article 8.3 of this Plan for the filing of such claims, (iii) with respect to
Claims that are Administrative Claims, the bar date established pursuant to Articles 10.2 and 10.5 of
this Plan, or (iv) with respect to Claims that are Prepetition Employee Related Obligations, the bar
date established pursuant to Article 7.12(b) of this Plan, shall not be recognized, or recorded on the
claims register, by the Claims Agent and shall be disallowed automatically without the need for any
objection from the Debtors or the Reorganized Debtors unless such untimely filing is expressly
authorized by an order of the Bankruptcy Court.

(Modified Plan Art. 9.6(d).)

3

4.       Finally, despite Ontario's assertion that it has "no record of receiving any notice informing [it] of the Initial Administrative Claim Bar Date" (Motion ¶ 49), on or before June 20, 2009, the Debtors caused two copies of the Notice Of Bar Date For Filing Proofs Of Administrative Expense (the "June 2009 Notice") to be served on Ontario.[6]  Specifically, the address to which copies of the June 2009 Notices were sent was the exact same business addresses listed on the relevant purchase order, which Ontario attached to its Administrative Expense Claim.  Notwithstanding this ample and legally sufficient notice of the Initial Administrative Claim Bar Date, Ontario did not take any action to submit a timely proof of administrative expense claim.  Ontario must therefore satisfy the excusable neglect standard outlined by the United States Supreme Court in Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380 (1993), see id. at 387-95, and as applied by the United States Court of Appeals for the Second Circuit (the "Second Circuit").  See, e.g., Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.), 419 F.3d 115, 121-24 (2d Cir. 2005) (interpreting and applying Pioneer standard).  However, Ontario offers no evidence that would excuse its late filing under the excusable neglect standard outlined in Pioneer.  This Court should not permit Ontario to file a late Administrative Expense Claim and the Motion should be denied.

## RELEVANT BACKGROUND

### A.       Ontario's Relationship With Delphi

5.       As described in paragraphs 7 to 9 of the Motion, Ontario entered into a business relationship with Delphi Automotive Systems LLC ("DAS LLC") on or about July 24, 2008.  Ontario was to provide certain demolition services with respect to Delphi's Die Casting

---

[6]      See Affidavit Of Service Of Evan Gershbein For Solicitation Materials Served On Or Before June 20, 2009, dated June 23, 2009 (Docket No. 17267), the relevant portions of which are attached hereto as **Exhibit A**.

4

Building, located at 891 Driving Park Avenue and 1000 Lexington Avenue in Rochester, New

York for the total amount of $1.00 (the "Project"), with the further promise that Ontario would

pay the Debtors a total amount of $271,033.00 for the unconditional right to sell all scrap metal

recovered, as set forth on purchase order number 450751581 (the "Purchase Order"), attached

hereto as Exhibit B.  The Project was to be completed by December 15, 2008.

      6.    Ontario further elaborated on its relationship with the Debtors in its

Response as well as its answer and counterclaims filed in connection with the Contract Action

(the "Answer"), which Ontario attached to the Administrative Expense Claim as well as to its

Response.  The Answer is attached hereto as Exhibit C.

      7.    On November 3, 2008, Ontario notified the Debtors about the declining

scrap metal market (Answer ¶ 40) and by approximately November 18, 2008, Ontario began

selling scrap metal for a purported loss.  (Answer ¶ 35.)  Throughout late 2008 and early 2009,

Ontario sought to adjust the Project on account of "additional asbestos abatement" and the

existing state of the scrap market. (Answer ¶¶ 42 -50.)

      8.    On May 11, 2009, the Debtors responded to Ontario's request for

modifications to the Purchase Order, under which Delphi conditionally offered to extend the

completion date to November 30, 2009.

      9.    On May 27, 2009, Ontario rejected the Debtors' offer to extend the

completion date stating that "the project work is substantially complete."  A copy of Ontario's

May 27, 2009 rejection letter (the "Rejection Letter"), which Ontario attached to the

Administrative Expense Claim as well as to its Response, is attached hereto as Exhibit D.

**B.**     **Bar Date For Claims Under 11 U.S.C. § 503(b) Arising Through June 1, 2009**

      10.    On June 16, 2009, this Court entered the Modification Procedures Order

which, among other things, established July 15, 2009 as the Initial Administrative Claim Bar

5

Date,[7] and included a form to be used to submit an administrative expense claim (an

"Administrative Expense Claim Form").[8]  Accordingly, paragraph 38 of the Modification

Procedures Order provided that:

> Any party that wishes to assert an administrative claim under 11 U.S.C. § 503(b)
> for the period from the commencement of these cases through June 1, 2009 shall
> file a proof of administrative expense (each, an "Administrative Expense Claim
> Form") for the purpose of asserting an administrative expense request, including
> any substantial contribution claims (each, an "Administrative Expense Claim" or
> "Claim") against any of the Debtors.  July 15, 2009 at 5:00 p.m. prevailing
> Eastern time shall be the deadline for submitting all Administrative Expense
> Claims (the "Administrative Expense Bar Date") for the period from the
> commencement of these cases through June 1, 2009.

(Modification  Procedures Order ¶ 38.)  In addition, paragraph 41 of the Modification Procedures

Order provides that:

> Any party that is required but fails to file a timely Administrative Expense Claim
> Form shall be forever barred, estopped and enjoined from asserting such claim
> against the Debtors, and the Debtors and their property shall be forever
> discharged from any and all indebtedness, liability, or obligation with respect to
> such claim.

(Id. ¶ 41.)

---

[7]    The Initial Administrative Claim Bar Date was established pursuant to paragraph 38 of the Order (A)(I)
Approving Modifications To Debtors' First Amended Plan Of Reorganization (As Modified) And Related
Disclosures And Voting Procedures And (II) Setting Final Hearing Date To Consider Modifications To
Confirmed First Amended Plan Of Reorganization And (B) Setting Administrative Expense Claims Bar Date
And Alternative Transaction Hearing Date, entered by this Court on June 16, 2009 (Docket No. 17032) (the
"Modification Procedures Order").  On July 15, 2009, this Court entered the Stipulation And Agreed Order
Modifying Paragraph 38 Of Modification Procedures Order Establishing Administrative Expense Bar Date
(Docket No. 18259) to provide that paragraph 38 of the Modification Procedures Order should be amended to
require parties to submit an Administrative Expense Claim Form for Administrative Expense Claims for the
period from the commencement of these cases through May 31, 2009 rather than through June 1, 2009.

[8]    On June 20, 2009, in accordance with the Modification Procedures Order, the Debtors caused the claims and
noticing agent in these chapter 11 cases, Kurtzman Carson Consultants LLC ("KCC"), and Financial Balloting
Group LLC or their agents to transmit notices containing certain procedures for asserting an Administrative
Expense Claim and a copy of the Administrative Expense Claim Form.

11.     On or before June 20, 2009, the Debtors, through KCC, served Ontario

with a copy of the June 2009 Notice by first class mail at the same address listed on the Purchase

Order and each address listed below:

| Ontario Specialty Contracting | Ontario Specialty Contracting, Inc. |
|---|---|
| 333 Ganson St | 333 Ganson St |
| Buffalo, NY 14203 | Buffalo, NY 14203 |

See  Exhibit A.

12.     The June 2009 Notice provides, in relevant part:

You must file an Administrative Expense Claim Form if you believe that you are
entitled to an Administrative Expense Claim as described in 11 U.S.C. § 503,
except as provided below.

*** 

**ANY PARTY THAT IS REQUIRED BUT FAILS TO FILE AN
ADMINISTRATIVE EXPENSE CLAIM FORM IN ACCORDANCE WITH
THIS NOTICE ON OR BEFORE THE ADMINISTRATIVE EXPENSE
BAR DATE SHALL BE FOREVER BARRED, ESTOPPED, AND
ENJOINED FROM ASSERTING SUCH CLAIM AGAINST THE
DEBTORS AND REORGANIZED DEBTORS, AS APPLICABLE, AND
THEIR PROPERTY SHALL BE FOREVER DISCHARGED FROM ANY
AND ALL INDEBTEDNESS, LIABILITY, OR OBLIGATION WITH
RESPECT TO SUCH CLAIM.**

(Docket No. 17267, Ex. J.)

**C.     Substantial Consummation Of The Modified Plan.**

13.     On July 30, 2009, this Court entered its Order Approving Modifications

Under 11 U.S.C. § 1127(b) To (I) First Amended Joint Plan Of Reorganization Of Delphi

Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified And (II)

Confirmation Order (Docket No. 12359) (Docket No. 18707) (the "Modification Approval

Order"), which approved the Debtors' proposed modifications to their first amended joint plan of

reorganization (the "Modified Plan").

14.     On October 6, 2009 (the "Effective Date"), the Debtors substantially
consummated the Modified Plan.  The Reorganized Debtors have emerged from chapter 11 as
DPH Holdings and affiliates and remain responsible for the post-Effective Date administration of
these chapter 11 cases, including the disposition of certain retained assets, the payment of certain
retained liabilities as provided for under the Modified Plan, and the eventual closing of the cases.

**D.      Ontario's Untimely Administrative Expense Claim**

15.     On October 30, 2009, Ontario filed its untimely administrative expense
request under 11 U.S.C. § 503(b) in an amount not less than $288,751.25, which was incurred
between August 4, 2008 through May 2009.  (Response ¶ 1.)

16.     On January 22, 2010, the Reorganized Debtors filed their Forty-Third
Omnibus Objection Pursuant To 11 U.S.C. § 503(b) And Fed. R. Bankr. P. 3007 To (I) Expunge
Certain Administrative Expense (A) Severance Claims, (B) Books And Records Claims, (C)
Duplicate Claims, (D) Equity Interests, (E) Prepetition Claims, (F) Insufficiently Documented
Claims, (G) Pension, Benefit, And OPEB Claims, (H) Workers' Compensation Claims, And (I)
Transferred Workers' Compensation Claims, (II) Modify And Allow Certain Administrative
Expense Severance Claims, And (III) Allow Certain Administrative Expense Severance Claims
(Docket No. 19356) (the "Forty-Third Omnibus Claims Objection"), which, among other things,
objected to the Administrative Expense Claim on the basis that the claim was not reflected in the
Reorganized Debtors' books and records.

17.     Because the Administrative Expense Claim was untimely, the
Reorganized Debtors filed a Notice Of Deadline To File Motion For Leave To File Late
Administrative Expense Claim With Respect To Late Administrative Expense Claim Filed By
Ontario Specialty Contracting Inc. (Administrative Expense Claim No. 19873) (Docket No.
21863) (the "Notice of Deadline") in accordance with the late claim procedures established by

8

this Court.  The Notice of Deadline stated that if Ontario wished to further prosecute its

Administrative Expense Claim, Ontario must file a motion by May 4, 2012.

**E.      Filing Of The Ontario Motion**

              18.      On May 4, 2012, Ontario filed its Motion seeking a determination that the

failure to timely file an Administrative Expense Claim was the result of excusable neglect and

asking this Court to permit a late filed Administrative Expense Claim.

**ARGUMENT**

**I.      ONTARIO RECEIVED ADEQUATE NOTICE OF THE APPLICABLE BAR
DATE**

**A.      All Amounts Asserted In The Administrative Expense Claim Arose Prior To
June 1, 2009 And Ontario Is Estopped From Asserting Otherwise**

              19.      Contrary to Ontario's assertion in the Motion that its claim was not "ripe"

until September 10, 2009, Ontario has acknowledged on numerous occasions, including in

previous filings with this Court, that its alleged debts were incurred from August 2008 through

May 2009.  Specifically, Ontario admits that the acts giving rise to its Administrative Expense

Claim occurred prior to June 1, 2009 (i) on the face of proof of administrative expense claim

number 19873, (ii) in its Response, (iii) in the Rejection Letter, and (iv) in its Answer.

              20.      Having previously admitted that its Administrative Expense Claim arose

prior to June 1, 2009, Ontario is estopped from backing away from its previous statements solely

to fit its excusable neglect theory.  See Zedner v. United States, 547 U.S. 489, 504 (2006)

(stating that estoppel applies if a party's later position is clearly inconsistent with its earlier

position); see also Shepardson ex rel. Shepardson v. Town of Schodack, 195 A.D.2d 630, 632,

599 N.Y.S.2d 700, 702 (3d Dep't 1993) (stating that estoppel applies "to prevent a party from

inequitably adopting a position directly contrary to or inconsistent with an earlier assumed

9

position in the same proceeding or a prior proceeding"), aff'd, 83 N.Y.2d 894, 636 N.E.2d 1383,

613 N.Y.S.2d 850 (1994).

        21.     Moreover, Ontario misuses the term "ripeness," which primarily refers to

considerations designed to prevent "'premature adjudication'" of "'abstract disagreements over

administrative policies.'" Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 772-33 (1998)

(quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967), overruled on other grounds by

Califano v. Sanders, 430 U.S. 99 (1977)). Instead, Ontario appears to use the term "ripeness" to

indicate that its claim remained unmatured until after June 1, 2009. Therefore, Ontario argues, it

did not need to file a proof of claim prior to the Initial Administrative Claim Bar Date. However,

the Bankruptcy Code defines "claim" very broadly. See 11 U.S.C. § 101(5)(A) (a "claim" is,

inter alia, a "right to payment, whether or not such right is reduced to judgment, liquidated,

unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable,

secured, or unsecured"); see also FCC v. NextWave Pers. Commc'ns Inc., 537 U.S. 293, 302

(2003) ("'[C]laim' has 'the broadest available definition . . . .'" (citation omitted)). Given the

Bankruptcy Code's broad definition of a claim, whether a claim is unmatured, unliquidated, or

contingent is irrelevant to a creditor's obligation to a file a proof of claim by the bar date. See,

e.g., Woburn Assocs. V. Kahn (In re Hemingway Transp., Inc.), 954 F.2d 1, 9 (1st Cir. 1992)

(whether or not a claim is "contingent, unliquidated, [or] unmatured . . . is immaterial to [a

creditor's] obligation to file a timely proof of claim"). Instead, a creditor is obligated to file a

proof of claim by the bar date if a claim has arisen in the time prescribed by the bar date order.

When determining "'when a claim arises,'" courts in this Circuit and elsewhere have focused

"'upon "the time when the acts giving rise to the alleged liability were performed."'" Finley,

Kumble, 160 B.R. at 892 (citations omitted). As Ontario indicated on the face of proof of

administrative expense claim number 19873, all acts that gave rise to its claim occurred between

August 2008 and May 2009.  Ontario was therefore required to file its claim by the Initial

Administrative Claim Bar Date.

22.    In addition, Ontario appears to assert that the Project was somehow

extended to November 30, 2009, by a letter from the Debtors dated May 11, 2009.  At best, the

letter constituted an offer by the Debtors - an offer that was rejected by Ontario in its Rejection

Letter as "unacceptable."  (Rejection Letter ¶ 1.)  In the Rejection Letter, Ontario proposed new

terms of payment.  (Rejection Letter ¶ 4.)  Because Ontario explicitly rejected Delphi's offer and

offered a counter-proposal, there was no valid extension of the Project.  "[I]f [an] offeree

responds [to an offer] by adding provisions or making a counter proposal, the offer is deemed

rejected, rendering subsequent acceptance [of the offer] impossible."  <u>Kleinberg v. Ambassador</u>

<u>Assocs.</u>, 103 A.D.2d 347, 348, 480 N.Y.S.2d 210, 211 (1st Dep't) (citations omitted), <u>aff'd</u>, 64

N.Y.2d 733, 475 N.E.2d 119, 485 N.Y.S.2d 748 (1984); <u>see also</u> <u>Wittwer v. Hurwitz</u>, 216 N.Y.

259, 264, 110 N.E. 433, 434 (1915) (where an offeree conditionally accepts an offer, the first

offer is thereby rejected).

**B.    The Reorganized Debtors Have Complied With The Modified Plan And Claims
        Procedures Established By This Court**

23.    Because Ontario admits that its claims arose prior to June 1, 2009, it

attempts to attack the Reorganized Debtors' Forty Third Omnibus Objection as untimely.  To

support this contention, Ontario cites to Article 10.5 of the Modified Plan.  However, Article

10.2 of the Modified Plan governs Ontario's Administrative Expense Claim, which provides:

> **10.2    Pre-Confirmation Administrative Claim Procedures.** Pursuant to the
> Modification Procedures Order, all requests for payment of an Administrative
> Claim through June 1, 2009 (other than claims under the DIP Facility or as set
> forth in the Modification Procedures Order, Article 10.1, or Article 10.3 of this
> Plan) must be filed with the Claims Agent and served on counsel for the Debtors
> and the Statutory Committees no later than the July 15, 2009. <u>Any request for
> payment of an Administrative Claim pursuant to this Article 10.2 that is not
> timely filed and served shall be disallowed automatically without the need for any</u>

> objection from the Debtors or the Reorganized Debtors. The Debtors or the
> Reorganized Debtors may settle an Administrative Claim request made pursuant
> to this Article 10.2 without further Bankruptcy Court approval. Unless the
> Debtors or the Reorganized Debtors object to an Administrative Claim within 180
> days after the Administrative Claims Bar Date (unless such objection period is
> extended by the Bankruptcy Court), such Administrative Claim shall be deemed
> allowed in the amount requested. In the event that the Debtors or the Reorganized
> Debtors object to an Administrative Claim, the Bankruptcy Court shall determine
> the allowed amount of such Administrative Claim.

(Modified Plan Art. 10.2 (emphasis added).)

24.     Because the Administrative Expense Claim was not timely filed, the

Reorganized Debtors were not required to object the claim as untimely.[9]  Rather, once the

Reorganized Debtors discovered that the Administrative Expense Claim was untimely filed, the

Reorganized Debtors followed the late claim protocol established by this Court and filed the

Notice of Deadline.[10]  The burden is on Ontario to either show that the claim was timely filed

and therefore not subject to Article 10.2 of the Modified Plan or establish excusable neglect.

Ontario has not satisfied either burden.

**C.     Ontario Received Adequate Notice Of The Initial Administrative Claim Bar Date**

25.     In its Motion, Ontario disputes that it received the June 2009 Notice

setting forth the Initial Administrative Claim Bar Date.  Contrary to this assertion, a copy of the

---

[9]     The Reorganized Debtors were not required to object to untimely claims under either Article 10.2 or Article
10.5 of the Modified Plan.  In paragraph 22 of the Motion, Ontario selectively omitted the following portion of
Article 10.5: "Any request for payment of an Administrative Claim pursuant to this Article 10.5 that is not
timely filed and served shall be disallowed automatically without the need for any objection from the Debtors or
the Reorganized Debtors." (Modified Plan Art. 10.5 (emphasis added).)

[10]    Although the Reorganized Debtors were not required to object the untimely Administrative Expense Claim, the
Reorganized Debtors still objected to the claim pursuant to the Forty-Third Omnibus Claims Objection, which
was filed on January 22, 2010, and was therefore filed within the 180-day deadline after the Effective Date as
established by Article 10.2 the Modified Plan.  Moreover, this Court specifically authorized the Debtors to
utilize a broad "books and records" objection pursuant to the Order Under New Bankruptcy Rule 3007 And 11
U.S.C. § 105(a) Authorizing Debtors To Continue Claims Objection Procedures Under Order Dated December
7, 2006 Pursuant To 11 U.S.C. § 502(B) And Fed. R. Bankr. P. 2002(M), 3007, 7016, 7026, 9006, 9007, And
9014 Establishing (I) Dates For Hearings Regarding Objections To Claims And (II) Certain Notices And
Procedures Governing Objections To Claims (Docket No 11561) ("Order Authorizing Continued Claims
Objection Procedures").

June 2009 Notice was served at the same address identified on the Purchase Order.  The Debtors'

proper mailing of the June 2009 Notice constitutes effective service.  Courts uniformly presume

that an addressee receives a properly mailed item when the sender presents proof that it properly

addressed, stamped, and deposited the item in the mail.  See, e.g., Hagner v. United States, 285

U.S. 427, 430 (1932) ("The rule is well settled that proof that a letter properly directed was

placed in a post office creates a presumption that it reached its destination in usual time and was

actually received by the person to whom it was addressed."); Leon v. Murphy, 988 F.2d 303, 309

(2d Cir. 1993) (finding, under New York law, that presumption of receipt arises when a sender

presents "'proof of the office procedure followed in a regular course of business, and these

procedures establish that the required notice has been properly addressed and mailed'" (citation

omitted)); accord Nassau Ins. Co. v. Murray, 46 N.Y.2d 828, 829-30, 386 N.E.2d 1085, 1086,

414 N.Y.S.2d 117, 118 (1978); see also In re R.H. Macy & Co., 161 B.R. 355, 359 (Bankr.

S.D.N.Y. 1993) ("Mail properly addressed, stamped and deposited in the mail system is

presumed to have been received by the party to whom it has been addressed.").  Accordingly, the

Debtors provided Ontario timely, proper, and sufficient service of the Notice.

    26. Ontario was therefore obligated to file any administrative expense request

for claims arising before June 1, 2009 by the applicable July 15, 2009 bar date, in accordance

with the procedures referenced in the Modification Procedures Order and Modification Approval

Order, or else it would be barred, estopped, and enjoined from asserting those claims against the

Reorganized Debtors.

## II. ONTARIO HAS FAILED TO MEET ITS BURDEN OF PROOF FOR ESTABLISHING EXCUSABLE NEGLECT

    27. Because Ontario received proper notice of the Initial Administrative Claim

Bar Date, Ontario can obtain the relief requested in the Motion only if it meets its burden to

establish excusable neglect pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1).  See
R.H. Macy, 161 B.R. at 360 ("The burden of proving 'excusable neglect' is on the creditor
seeking to extend the bar date."); see also In re Dana Corp., No. 06-10354 (BRL), 2007 WL
1577763, at *3 (Bankr. S.D.N.Y. May 30, 2007) (finding that the "excusable neglect" analysis
applies to administrative expense claims under 11 U.S.C § 503); In re DPH Holdings Corp., Hr'g
Tr. at 44-45 (Bankr. S.D.N.Y. Aug. 20, 2009 ("given the practice of treating claims and disputes
related to missed bar dates for administrative claims the same way as the courts treat missed bar
dates for pre-petition claims, I find . . . those cases . . . to be appropriate here, and for all intents
and purposes on all fours.").[11]

      28.     Under Pioneer Investment Services Co. v. Brunswick Associates Ltd.
Partnership, 507 U.S. 380 (1993), courts must engage in a two-prong analysis.  See Mich. Self-
Insurers' Sec. Fund v. DPH Holdings Corp. (In re DPH Holdings Corp.), 434 B.R. 77, 82 & nn.
40-44 (S.D.N.Y. 2010) (citing Pioneer, 507 U.S. at 388, 395).  First, a creditor must first show
that its failure to file a timely claim was the result of "'neglect,' as opposed to willfulness or a
knowing omission."  Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 (I)
Denying United States Of America's Motion For Leave To File Administrative Expense Claim
And (II) Disallowing And Expunging Proof Of Claim Number 16727, at Ex. A p. 2 (Bankr.
S.D.N.Y. Mar. 6, 2008) (Docket No. 12980) (citing Pioneer, 507 U.S. at 387-88), aff'd sub nom.
United States v. Delphi Corp. (In re Delphi Corp.) Nos. 05-44481 (RDD), 08 Civ. 3753 (NRB),
2009 WL 803598 (S.D.N.Y. Mar. 24, 2009) (Docket No. 16515).  Second, the creditor "must
show by a preponderance of the evidence that the neglect was 'excusable.'"  Id.

---

[11] A copy of the relevant portion of the August 20, 2009 hearing transcript is attached hereto as Exhibit E.

29.    Under the present circumstances, Ontario cannot satisfy even the first

prong of the Pioneer test.  Specifically, Ontario argues that the reason for the delay in filing its

proof of administrative expense claim was that its claim was not "ripe" and Ontario was

negotiating a mutual resolution with the Debtors.  (Motion ¶ 48.)  As discussed above, Ontario's

assertion that its claim was not ripe is without merit.  Assuming that Ontario did not file its claim

because it was engaged in negotiations, then Ontario's failure to file a timely claim was the result

of a willful or knowing omission—its decision to allow the bar date to pass in the hopes that it

and the Debtors would reach a mutual resolution —as opposed to "neglect."  The strategic

decision to allow the Initial Administrative Claim Bar Date to pass therefore cannot support a

claim of excusable neglect.

30.    Even if Ontario were able to demonstrate that its failure to timely file an

administrative expense claim was the result of neglect, Ontario has not met its burden for

establishing that the neglect was "excusable" under the test outlined by the United States

Supreme Court in Pioneer, 507 U.S. at 395.  In examining whether a creditor's failure to file a

claim by the bar date constituted excusable neglect, the Supreme Court found that the factors

include "[a] the danger of prejudice to the debtor, [b] the length of the delay and its potential

impact on judicial proceedings, [c] the reason for the delay, including whether it was within the

reasonable control of the movant, and [d] whether the movant acted in good faith."  Id.  The

Second Circuit has held the most important factor is ""the reason for the delay, including

whether it was within the reasonable control of the movant.""  Enron, 419 F.3d at 122-23

(citations omitted).  In addition, the Second Circuit has adopted a "strict" standard in the area of

excusable neglect.  See Asbestos Pers. Injury Plaintiffs v. Travelers Indem. Co. (In re Johns

Manville Corp.), 476 F.3d 118, 120, 124 (2d Cir. 2007).

31.    "'[T]he equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule,' and . . . 'where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the <u>Pioneer</u> test.'" <u>Enron</u>, 419 F.3d at 123 (second alteration in original; citation omitted). In this case, three factors—the reason for the delay, the prejudice to the Reorganized Debtors, and the length of the delay—weigh in favor of the debtors.  Accordingly, Ontario fails to meet the excusable neglect standard and the Motion should be denied.

(i)    <u>Reason For The Delay</u>

32.    In the Second Circuit, the reason for the delay is the most important factor and is often dispositive. <u>See</u> <u>Enron</u>, 419 F.3d at 122-24; <u>see also</u> <u>In re Musicland Holding Corp.</u>, 356 B.R. 603, 607-08 (Bankr. S.D.N.Y. 2006) (noting that the Second Circuit emphasizes "the reason for the delay" in determining excusable neglect, stating "[t]he other factors are relevant only in close cases") (citing <u>Williams v. KFC Nat'l Mgmt. Co.</u>, 391 F.3d 411, 415-16 (2d Cir. 2004)).

33.    Ontario argues that the reason for the delay in filing the Administrative Expense Claim was because its claim did not become "ripe" until after the Initial Administrative Claim Bar Date.  (Motion ¶ 48.)  To support its "ripeness" contention, Ontario cites two cases: <u>In re Infiltrator Systems, Inc.</u>, 241 B.R. 278 (Bankr. D. Conn. 1999), and <u>In re Hudson Oil Co.</u>, 100 B.R. 72 (Bankr. D. Kan. 1989).  However, in both cases, the claimant did not learn of its alleged tort claim until after the bar date. In <u>Infiltrator Systems</u>, where the bar date had been specially sent to potential product liability claimants, the claimant, who had purchased the debtor's product, did not experience a "system failure" of the debtor's product until after the bar date.  <u>Infiltrator Sys.</u>, 241 B.R. at 280-81.  Similarly, in <u>Hudson Oil</u>, an environmental liability case, the claimant, who had leased her property to the debtor, was not made aware of environmental damage to her

16

property until almost one year after the bar date. <u>Hudson Oil</u>, 100 B.R. at 73-76, 78. By contrast,
Ontario was aware that it had a claim prior to the Initial Administrative Claim Bar Date, as
evidenced by its Rejection Letter, where Ontario indicated it "[would] seek to recover the full
claim." (Rejection Letter ¶ 4.) Moreover, in each case, the claimant filed its proof of claim
before the court confirmed the debtor's plan of reorganization. <u>See</u> <u>Infiltrator Sys.</u>, 241 B.R. at
281-82; <u>Hudson Oil</u>, 100 B.R. at 78. Here, however, Ontario filed its proof of claim after this
Court approved and the Reorganized Debtors substantially consummated the Modified Plan.

        34.    Ontario also asserts that it failed to timely file its Administrative Claim
because "Delphi offered, and the parties were considering, alternatives with regards to the
equitable adjustment including extension of the work schedule under the Project . . . through
November 30, 2009." (Motion ¶ 48.) In other words, Ontario appears to concede that the reason
for its delay in filing its proof of administrative expense claim was the result of a strategic
decision to continue to attempt to negotiate a resolution with the Debtors rather than filing a
claim by the bar date. The Reorganized Debtors are not aware of, and Ontario does not cite, a
single case that holds that a claim is not "ripe" until negotiations to resolve a breach that has
allegedly occurred have ceased. In fact, Ontario may not properly base its argument regarding
the reason for its delay on continued good-faith negotiations with the debtor, because good faith
negotiations could have taken place after filing a proof of claim by the appropriate bar date. <u>See</u>
<u>In re Northwest Airlines Corp.</u>, No. 05-17930 (ALG), 2007 WL 498285, at *3 (Bankr. S.D.N.Y.
Feb. 9, 2007) (where a creditor failed to timely file an objection to a claim transfer, the creditor
could not "properly ground its excusable neglect argument on the fact that it conducted an
investigation and tried to resolve the issue by good-faith negotiations"; investigations and
negotiations can all "be done after a filing is first made and rights are preserved").

17

35.     The Second Circuit has held that the reason for the delay, including whether it was in the reasonable control of the movant, is the most important factor under the Pioneer analysis.  See Enron, 419 F.3d at 122-24.  Notably, when Ontario did file the Administrative Expense Claim months later, it was (a) based on a purchase order that Ontario had in its possession since July 2008, (b) a project that was supposed to be completed by December 15, 2008, and (c) pricing adjustments that were disputed from August 2008 through May 2009.  Thus, Ontario apparently had all the information included in its untimely proof of administrative expense claim by May 2009, well in advance of the Initial Administrative Claim Bar Date.  Ontario's proffered reason for the delay, therefore, not only shows that the reason for Ontario's delay in filings its claim was not due to neglect but also that the reason for the delay was entirely within its control.

36.     Given that the courts in the Second Circuit "have 'taken a hard line' in applying the Pioneer test," Enron, 419 F.3d at 122 (quoting Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 368 (2d Cir. 2003)), and focus on """the reason for the delay, including whether it was within the reasonable control of the movant,""" Enron, 419 F.3d at 122-23 (quoting Silivanch, 333 F.3d at 366 (quoting Pioneer, 507 U.S. at 395)), this factor weighs heavily in favor of the Reorganized Debtors.

(ii)     Danger Of Prejudice To The Debtor

37.     Allowing Ontario to file a late claim more than two and a half years after the consummation of the Modified Plan will prejudice the Reorganized Debtors as well as other creditors in these cases who filed timely administrative expense claims.  Ontario appears to argue that the Reorganized Debtors have somehow acted in bad faith in their objection to the untimely Administrative Expense Claims, and this should be weighed against any danger of prejudice.  To support this contention, Ontario cites two cases: In re Robinson Foundry, Inc., 347 B.R. 781

18

(Bankr. M.D. Ala. 2006), and In re Spring Ford Indus., Inc., No. 02-15015DWS, 2003 WL

21785960 (Bankr. E.D. Pa. July 25, 2003).  As cited, neither case applies to Ontario's situation.

In Robinson Foundry, the court, in dicta, cautioned that the "debtors should use the utmost care

and precision when completing their schedules" and alluded to the idea that misrepresentations in

schedules could be an act of bad faith on the part of the debtors.  Robinson Foundry, 347 B.R. at

782-83 n.1.  However, Ontario does not allege that the Debtors deliberately misrepresented their

debts in their schedules.  In Spring Ford Industries, the claimants were known creditors that did

not receive actual notice of the bar date.  The court held that the debtor's failure to provide

effective notice was an omission of the debtor that excused a late filing.  See Spring Ford Indus.,

2003 WL 21785960, at *1-3.  In this case, Ontario did receive proper notice of the Initial

Administrative Claims Bar Date as evidenced by the Affidavit Of Service Of Evan Gershbein

For Solicitation Materials Served On Or Before June 20, 2009, dated June 23, 2009 (Docket No.

17267), attached hereto as Exhibit A.  Moreover, the court considered the fact that the claim was

filed before the effective date of the plan of reorganization as a relevant fact when weighing the

danger of prejudice to the debtors.  2003 WL 21785960, at *4.  Contrary to Spring Ford

Industries, Ontario received notice of the Initial Administrative Claims Bar Date, but waited until

after the Effective Date to file its proof of administrative expense claim.  Accordingly, neither

case is applicable to Ontario's situation.

       38.    Allowing untimely claims at this time may open the floodgates to any

potential claimant who failed to file an administrative expense claim on or before the applicable

administrative claim bar date.  Courts often have recognized the danger of opening the

floodgates to potential claimants.  See, e.g., Enron, 419 F.3d at 132 n.2 ("[C]ourts in this and

other Circuits regularly cite the potential 'flood' of similar claims as a basis for rejecting late-filed

claims."); In re Kmart Corp., 381 F.3d 709, 714 (7th Cir. 2004) (noting that "if the bankruptcy

19

court allowed all [similar] late-filed claims . . . , Kmart could easily find itself faced with a

mountain of such claims"); In re Enron Creditors Recovery Corp., 370 B.R. 90, 103 (Bankr.

S.D.N.Y. 2007) ("'[I]t can be presumed in a case of this size with tens of thousands of filed

claims, there are other similarly-situated potential claimants. . . .  Any deluge of motions seeking

similar relief would prejudice the Debtors' reorganization process.'" (omission in original;

citation omitted)); Dana Corp., 2007 WL 1577763, at *6 (denying motion to file late claim

because, inter alia, "the floodgates argument is a viable one").  Accordingly, Ontario's argument

that its claim of not less than $288,751.25 does not prejudice the Reorganized Debtors because

the "[t]he Debtors' bankruptcy, with its sheer size and hundreds of millions of dollars at issue

[will not be prejudiced]" is without merit.  (Motion ¶ 57.)

    39.    The Initial Administrative Claim Bar Date was established to identify

administrative expense claims that would be paid pursuant to the terms of the Modified Plan.

Allowing Ontario to prevail on the Motion may inspire many other similarly situated potential

claimants to file similar motions. Accordingly, establishing a precedent for allowing untimely

claims without a compelling justification would greatly prejudice the Reorganized Debtors, their

estates, and their creditors and undermine the Debtors' restructuring efforts.

(iii)    Length Of The Delay

    40.    Finally, the length of the delay also favors denying Ontario's Motion.

Ontario failed to file a proof of administrative expense claim until after the Effective Date and

nearly four months after the Initial Administrative Claims Bar Date.  Yet, Ontario attempts to

characterize its delay as a "insignificant."  (Motion ¶ 61.)  However, Courts considering

excusable neglect in this jurisdiction have characterized delays of six months as "not excusable."

Dana Corp., 2007 WL 1577763, at *5; see also id. (delay of more than six months after bar date

"was 'substantial'" (quoting Enron, 419 F.3d at 125)).  Indeed, a delay of only one day may be

20

inexcusable.  See In re Singer Co., No. M-47 (MBM), 2002 WL 10452, at *3 (S.D.N.Y. Jan. 3,

2002) ("Although the Union's miscalculation as to the appropriate appeals deadline was in good

faith and resulted in only one day's delay, not every minor error can or should be excused.

Compliance with deadlines is not a game of horseshoes; close doesn't count.").  In addition, this

Court has disallowed the claims of similarly situated claimants for significantly shorter delays.

See, e.g., Order Pursuant To 11 U.S.C. § 503(b) And Fed. R. Bankr. P. 3007 (I) Denying

Plymouth Rubber Company LLC's Motion For Leave To File Late Claim And (II) Disallowing

And Expunging Proof Of Claim Number 19506 (Docket No. 18849) (denying a late claim filed

15 days after the Initial Administrative Claims Bar Date); see also Order Pursuant To 11 U.S.C.

§ 503(b) And Fed. R. Bankr. P. 3007 (I) Denying The Motion Of Tal-Port Industries, LLC For

Allowance Of An Administrative Claim Pursuant To 11 U.S.C. § 503(B)(1)(A) And, In The

Alternative, For Leave To File A Late Administrative Expense Claim Pursuant To Bankruptcy

Rule 9006(B) And (II) Disallowing And Expunging Proof Of Administrative Expense Claim

Number 19804 (Docket No. 21259) (disallowing a claim as untimely when filed three months

after the Initial Administrative Claims Bar Date and objected to on the Forty-Third Omnibus

Claims Objection's "books and records" exhibit).  Accordingly, this factor also weighs in favor of

the Reorganized Debtors and further supports denying the Motion.

Conclusion

41.     Ontario has failed to provide any evidence of circumstances justifying the

extraordinary relief it seeks under the excusable neglect standard established by Pioneer and has

not met its burden for establishing excusable neglect.  The Motion should, therefore, be denied,

and the untimely Administrative Expense Claim should be disallowed and expunged.

21

WHEREFORE the Reorganized Debtors respectfully request that this Court enter

an order (a) denying the Motion, and (b) granting them such other and further relief as is just.


Dated: New York, New York
      May 17, 2012


                    SKADDEN, ARPS, SLATE, MEAGHER
                      & FLOM LLP


                    By: /s/ John K. Lyons
                       John Wm. Butler, Jr.
                       John K. Lyons
                       Ron E. Meisler
                    155 North Wacker Drive
                    Chicago, Illinois 60606
                    (312) 407-0700


                            - and –


                    Four Times Square
                    New York, New York 10036
                    (212) 735-3000


                    Attorneys for DPH Holdings Corp., et al.,
                       Reorganized Debtors

# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                          :
     In re                      :     Chapter 11
                          :
     DELPHI CORPORATION, et al.,    :     Case No. 05-44481 (RDD)
                          :
              Debtors.   :     (Jointly Administered)
                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

### AFFIDAVIT OF SERVICE

I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases. I submit this Affidavit in connection with the service of the solicitation materials for the **First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (As Modified)** [Docket No. 17030] ("the Plan").

On December 1, 2005, the Court signed and entered an Order Pursuant to 28 U.S.C. § 156(c) Authorizing Retention and Appointment of Kurtzman Carson Consultants LLC as Claims, Noticing and Balloting Agent for Clerk of Bankruptcy Court [Docket No. 1374] designating KCC as the official Balloting Agent.

KCC is charged with the duty of printing and distributing Solicitation Packages to creditors and other interested parties pursuant to the instructions set forth in the **Order (A)(I) Approving Modifications to Debtors' First Amended Plan of Reorganization (as Modified) and Related Disclosures and Voting Procedures and (II) Setting Final Hearing Date to Consider Modifications to Confirmed First Amended Plan of Reorganization and (B) Setting Administrative Expense Claims Bar Date and Alternative Transaction Hearing Date ("Modification Procedures Order")** [Docket No. 17032] ("Modification Procedures Order") as entered by the Court on June 16, 2009.

The various solicitation materials consist of the following documents:

1) Ballot for Accepting or Rejecting First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (As Modified) (Class A Secured Claims) ("Class A Ballot") (attached hereto as Exhibit A);

2) Ballot for Accepting or Rejecting First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (As Modified) (Class C-1 General Unsecured Claims) ("Class C-1 Ballot") (attached hereto as Exhibit B);

3) Ballot for Accepting or Rejecting First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (As Modified) (Class C-2 Pension Benefit Guaranty Corporation Claims) ("Class C-2 Ballot") (attached hereto as <u>Exhibit C</u>);

4) Ballot for Accepting or Rejecting First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (As Modified) (Class D General Motors Corporation Claim) ("Class D Ballot") (attached hereto as <u>Exhibit D</u>);

5) Notice of (1) Approval of Supplement; (2) Hearing on Modifications to Plan; (3) Deadline and Procedures for Filing Objections to Modifications of Plan; (4) Deadline and Procedures for Temporary Allowance of Certain Claims for Voting Purposes; (5) Treatment of Certain Unliquidated, Contingent, or Disputed Claims for Noticing, Voting, and Distribution Purposes; (6) Record Date; (7) Voting Deadline for Receipt of Ballots; and (9) Proposed Releases, Exculpation, and Injunction in Modified Plan ("Final Modification Hearing Notice") (attached hereto as <u>Exhibit E</u>);

6) a letter from the Delphi Corporation Official Committee of Unsecured Creditors ("Creditors' Committee Letter") (attached hereto as <u>Exhibit F</u>);

7) First Amended Disclosure Statement Supplement with Respect to First Amended Plan of Reorganization (As Modified), Modification Procedures Order and December 10, 2007 Solicitation Procedures Order, in CD-ROM format ("CD-ROM")

8) Notice of Non-Voting Status with Respect to Certain Claims and Interests ("Notice of Non-Voting Status") (attached hereto as <u>Exhibit G</u>);

9) Notice to Unimpaired Creditors of (I) Filing of Proposed Modified Plan of Reorganization, (II) Treatment of Claims Under Modified Plan, (III) Hearing on Approval of Modified Plan, and (IV) Deadline and Procedures for Filing Objections Thereto ("Unimpaired Notice") (attached hereto as <u>Exhibit H</u>);

10) a memorandum from Kurtzman Carson Consultants to additional notice parties of ballot recipients ("Ballot Notice Party Memo") (attached hereto as <u>Exhibit I</u>);

11) Notice of Bar Date for Filing Proofs of Administrative Expense ("Administrative Bar Date Notice") (attached hereto as <u>Exhibit J</u>); and

12) Administrative Expense Claim Form ("Administrative Expense Claim Form") (attached hereto as <u>Exhibit K</u>).

On or before June 20, 2009, I caused to be served a personalized Class A Ballot, Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Administrative Bar Date Notice, Administrative Expense Claim Form and a pre-addressed, postage pre-paid return envelope upon the parties listed on <u>Exhibit L</u> via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served a personalized Class C-1 Ballot, Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Administrative Bar Date Notice, Administrative Expense Claim Form and a pre-addressed, postage pre-paid return envelope upon the parties listed on <u>Exhibit M</u> via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served a personalized Class C-2 Ballot, Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Administrative Bar Date Notice, Administrative Expense Claim Form and a pre-addressed, postage pre-paid return envelope upon the party listed on <u>Exhibit N</u> via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served a personalized Class D Ballot, Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Administrative Bar Date Notice, Administrative Expense Claim Form and a pre-addressed, postage pre-paid return envelope upon the party listed on <u>Exhibit O</u> via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served the Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Administrative Bar Date Notice and Administrative Expense Claim Form upon the parties listed on <u>Exhibit P</u> via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served the Final Modification Hearing Notice, Notice of Non-Voting Status, Administrative Bar Date Notice and Administrative Expense Claim Form upon the parties listed on <u>Exhibit Q</u> via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served the Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Unimpaired Notice, Administrative Bar Date Notice and Administrative Expense Claim Form upon the parties listed on <u>Exhibit R</u> via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served the Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Notice of Non-Voting Status, Administrative Bar Date Notice and Administrative Expense Claim Form upon the parties listed on <u>Exhibit S</u> via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served the Final Modification Hearing Notice, Creditors' Committee Letter, CD-ROM, Ballot Notice Party Memo, Administrative Bar Date Notice and Administrative Expense Claim Form upon the parties listed on <u>Exhibit T</u> via postage pre-paid U.S. mail.

On or before June 20, 2009, I caused to be served the Final Modification Hearing Notice, Administrative Bar Date Notice and Administrative Expense Claim Form upon the parties listed on <u>Exhibit U</u> via postage pre-paid U.S. mail.

Dated: June 23, 2009

_____
Evan Gershbein

State of California
County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 23rd day of June, 2009, by Evan Gershbein, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature _____

Commission Expires: _10-1-09_

L. MAREE SANDERS
Commission # 1610322
Notary Public - California
Los Angeles County
My Comm. Expires Oct 1, 2009

4

# EXHIBIT U

Delphi Corporation
Notice List

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|---|
| ONTARIO DIE CO LTD | | 119 ROGER ST | | | | WATERLOO | ON | N2J 1A4 | CANADA |
| ONTARIO DIE CO LTD | | 119 ROGER ST | | | | WATERLOO | ON | N2J 3Z6 | CANADA |
| ONTARIO DIE CO LTD | | PO BOX 70 | | | | WATERLOO | ON | N2J 3Z6 | CANADA |
| ONTARIO DIE CO OF AMERICA | | ONTARIO DIE | 9641 PLAZA CIR | | | EL PASO | TX | 79927 | |
| ONTARIO DIE CO OF AMERICA INC | | 2735 20TH ST | | | | PORT HURON | MI | 48060-6452 | |
| ONTARIO DIE INTERNATIONAL USA | | INC | 2735 20TH ST | | | PORT HURON | MI | 48060 | |
| ONTARIO ELECTRONIC SERVCS EFT | | INC | 4056 BLAKIE RD | | | LONDON | ON | N6L 1P7 | CANADA |
| ONTARIO ELECTRONIC SERVCS INC | | 4056 BLAKIE RD | | | | LONDON | ON | N6L 1P7 | CANADA |
| ONTARIO ELECTRONIC SERVCS INC | | 4056 BLAKIE RD | | | | LONDON | ON | N6L 1P7 | CANADA |
| ONTARIO MINISTRY OF ENVIRONMENT | | 135 ST CLAIR AVE WEST | STE 100 | | | TORONTO | ON | M4V1P5 | CANADA |
| ONTARIO MINISTRY OF ENVIRONMENT | | 135 ST CLAIR AVE WEST | STE 100 | | | TORONTO | ON | M4V1P5 | CANADA |
| ONTARIO MINISTRY OF ENVIRONMENT | | 135 ST CLAIR AVE WEST | STE 100 | | | TORONTO | ON | M4V1P5 | CANADA |
| ONTARIO PLASTICS INC | | 2503 DEWEY AVE | | | | ROCHESTER | NY | 14616 | |
| ONTARIO SPECIALTY CONTRACTING | | 333 GANSON ST | | | | BUFFALO | NY | 14203 | |
| ONTARIO SPECIALTY CONTRACTING | | INC | 333 GANSON ST | | | BUFFALO | NY | 14203 | |
| ONTARIO TEACHERS PENSION PLAN BOARD | MR ROBERT BERTRAM | EQUITY | 5650 YONGE ST 500 | | | TORONTO | | M2M4H5 | CANADA |
| ONTARIO TRANSPORTATION SYSTEM | | 167 APPLEWOOD CRESCENT UNIT 6 | | | | CONCORD | ON | L4K 4K7 | CANADA |
| ONTARIO TRANSPORTATION SYSTEMS | | 167 APPLEWOOD CRES UNIT 6 | | | | CONCORD | ON | L4K 4K7 | CANADA |
| ONTIVEROS ERICA | | 11357 GENE SARAZEN | | | | EL PASO | TX | 79936 | |
| ONTIVEROS ROBERT | | 7024 W FREELAND RD | | | | FREELAND | MI | 48623 | |
| ONTKO DENNIS | | 412 SPRING CREST DR | | | | MARBLEHEAD | OH | 43440-9661 | |
| ONTRACK DATA RECOVERY INC | | 9023 COLUMBINE RD | | | | EDEN PRAIRIE | MN | 55346 | |
| ONTRAK CONTROL SYSTEMS INC | | 422 ARNLEY ST | | | | SUDBURY | ON | | CANADA |
| ONUFRY DAVID | | 11415 BRECKENRIDGE DR | | | | DAVISON | MI | 48423-9335 | |
| ONUFRYK CHARLES | | 3113 EDGEMERE DR | | | | ROCHESTER | NY | 14612 | |
| ONUKWUGHA ANTHONY | | 1 WOODBRIDGE AVE APT17 D | | | | AVENEL | NJ | 07001 | |
| ONVACO | GARY KEIBLER | C/O KEIBLER & ASSOCIATES | 9509 HWY 42 204 | | | PROSPECT | KY | 40059 | |
| ONWAFER TECHNOLOGIES | ANITA SCDORIS | 5451 PATRICK HENRY DR | | | | SANTA CLARA | CA | 95054-1167 | |
| ONYX ENVIRONMENT SERVICES LLC | | 107 S MOTOR AVE | | | | AZUSA | CA | 91702 | |
| ONYX ENVIRONMENTAL SERVICE | | AET DBA | 5202 OCEANUS DR | | | HUNTINGTON BEACH | CA | 92649 | |
| ONYX ENVIRONMENTAL SERVICE | AET DBA | DEPT 73709 | | | | CHICAGO | IL | 60673-7709 | |
| ONYX ENVIRONMENTAL SERVICES | | 700 EAST BUTTERFIELD RD | STE 201 | | | LOMBARD | IL | 60148 | |
| ONYX ENVIRONMENTAL SERVICES | | ONE EDEN LN | | | | FLANDERS | NJ | 07836 | |
| ONYX ENVIRONMENTAL SERVICES | | 700 EAST BUTTERFIELD RD | STE 201 | | | LOMBARD | IL | 60148 | |
| ONYX ENVIRONMENTAL SERVICES | | 700 EAST BUTTERFIELD RD | STE 201 | | | LOMBARD | IL | 60148 | |
| ONYX ENVIRONMENTAL SERVICES DIV ELECTRONICS RECYCLING | | | | | | | | | |
| ONYX ENVIRONMENTAL SERVICES ELECTRONICS | | | | | | | | | |
| ONYX ENVIRONMENTAL SERVICES LL | | 4400 RIVER RD | | | | TONAWANDA | NY | 14150 | |
| ONYX ENVIRONMENTAL SERVICES LL | | CHEMICAL MANAGEMENT | 4301 INFIRMARY RD | | | WEST CARROLLTON | OH | 45449 | |
| ONYX ENVIRONMENTAL SERVICES LL | | HWY 73 | | | | PORT ARTHUR | TX | 77640 | |
| ONYX ENVIRONMENTAL SVCS | | 700 E BUTTERFIELD RD | STE 201 | | | LOMBARD | IL | 60148 | |
| ONYX ENVIRONMENTAL SVCS | | 700 E BUTTERFIELD RD | STE 201 | | | LOMBARD | IL | 60148 | |
| ONYX ENVIRONMENTAL SVCS | | 700 E BUTTERFIELD RD | STE 201 | | | LOMBARD | IL | 60148 | |
| ONYX ENVIRONMENTAL SVCS LLC | VEOLIA ES TECHNICAL SOLUTIONS LLC FKA ONYX ENVIRONMENTAL SERVICES LLC ELECTRONICS RECYCLING DIVISION | VEOLIA ENVIRONMENTAL SERVICES NORTH AMERICA CORP FKA ONYX NORTH AMERICA CORP | 1275 MINERAL SPRINGS DR | | | PORT WASHINGTON | WI | 53074 | |
| ONYX INDUSTRIAL SERVICES INC | | 12215 E 61ST ST | | | | BROKEN ARROW | OK | 74012-9115 | |
| ONYX INDUSTRIAL SERVICES INC | | DEPT 73709 | | | | CHICAGO | IL | 60673-7709 | |
| ONYX INDUSTRIAL SERVICES INC | WASTE MANAGEMENT TULSA | PO BOX 78251 | | | | PHOENIX | AZ | 85062-8251 | |
| ONYX PONTIAC LANDFILL INC COLLIER RD LANDFILL | | 575 COLLIER RD | | | | PONTIAC | MI | 48326 | |

# Exhibit B

# DELPHI

Energy & Chassis Systems

Page  1  of  6

**Buyer:**

DELPHI AUTOMOTIVE SYSTEMS LLC
DELPHI ENERGY & CHASSIS DIV
3000 University Drive
Auburn Hills  MI  48326

**Deliver to:**

DELPHI ENERGY & CHASSIS SYSTEMS
ROCHESTER OPER-IN1C
DOCK 87/88/89 -7AM-3PM
1000 LEXINGTON AVE
ROCHESTER  NY  14606

ONTARIO SPECIALTY CONTRACTING
333 GANSON ST
BUFFALO  NY  14203-3062

## Purchase Order

| PO Number | Date Issued |
|---|---|
| 450751581 | 24-Jul-2008 |
| Version | |
| 24-Jul-2008  12:22:27 | |

Delivery date:  01-DEC-2008

Vendor No:  1033101
DUNS No:  178523494

| **Payment Terms:** ZMN3 | **Currency:** USD |
|---|---|
| Payment settled on 2nd day of 3rd Month | |
| **Incoterms:**  FOB- Freight Collect | |

| Item No. | Material No/Item Identifier No<br>Description | Total Order Quantity | Plant<br>Requester | | | |
|---|---|---|---|---|---|---|
| 00010 | PR13390208 00010 | 1.000 | E401 DELPHI  E & C  ROCHESTER | | | |
| | DECOMMISSIONING & DEMOLITION OF DIE | | R.RANDAZZO | | | |

CASTING BUILDING PER DELPHI SPECIFICATION PE-1386 AND INQUIRY 2008-HM66.  GENERAL TERMS & CONDITIONS FOR
OUTSIDE CONTRACTS SHALL APPLY. SUPPLIER TO PAY DELPHI $271,033.

| Delivery Date | Scheduled Quantity | Price | Price Unit | UOM | Value |
|---|---|---|---|---|---|
| 01-DEC-2008 | 1.000 | 1.00 | 1 | EA | 1.00 |
| **Net Line Item Value** | | | | USD | 1.00 |

| **Total net value** | USD | 1.00 |
|---|---|---|

**Purchasing Contact:** Martinez, Hugo

Phone:  915 612-8775

Fax:  915 612-1146

Buyer Email:hugo.f.martinez@delphi.com

**Contact Address:**

Buyer, Delphi Corporation
Hernamos Escobar 5756,
32310 Juarez

Date and Time Printed:  24-Jul-2008  12:22:27



# DELPHI

_____ Energy & Chassis Systems

Page   2   of   6

ONTARIO SPECIALTY CONTRACTING
333 GANSON ST
BUFFALO NY 14203-3062

## Purchase Order

| PO Number | Date Issued |
|---|---|
| 450751581 | 24-Jul-2008 |
| Version | |
| 24-Jul-2008  12:22:27 | |

| Item No. | Material No/Item Identifier No Description | Total Order Quantity | Plant Requester |
|---|---|---|---|

**Notes:**

Purchase order is issued as per Ontario specialty response to RFQ No. 2008-HM-66 - Rochester Die Casting Building Demolition and subsequent responses to target price letters.

Ontario Specialty Contracting will pay Delphi the amount of $271,033.00 usd under the following schedule:

25% ($67,758.25) at issuance of work permits . start of physical work

25% ($67,758.25) at start of structural Demolition

25% ($67,758.25) at completion of Demolition

25% ($67,758.25) at sign off of the work


*****************************************************************
IMPORTANT NOTICE TO SUPPLIERS:
PLEASE COMPLY STRICTLY WITH DELPHI'S ENVIRONMENTAL REQUIREMENTS AS STATED IN THE ENVIRONMENTAL REQUIREMENTS FOR CONTRACTORS / SUPPLIERS / VENDORS. A COPY OF THE ENVIRONMENTAL REQUIREMENTS IS AVAILABLE UPON WRITTEN REQUEST TO THE BUYER.
*****************************************************************
Delphi requires 100% on time delivery performance from suppliers. If you anticipate problems in delivering materials and/or completing services by the date specified on the Buyer's purchase order, the Delphi Buyer should be notified immediately.
*****************************************************************
Restricted, toxic, and hazardous materials - Suppliers are required to comply with current governmental and safety constraints on restricted, toxic and hazardous materials; as well as environmental, electrical and electromagnetic considerations applicable to the country of manufacture and sale. This relates to both the salable product and the manufacturing processes. (Refer also to Terms and Conditions No. 8 "Ingredients Disclosure and Special Warnings Instructions").
Commencement of any work or service under this order shall constitute seller's acceptance of these responsibilities. If you do not accept these responsibilities, please contact the appropriate Delphi's Buyer.


*****************************************************************
Seller acknowledges and agrees that Buyer's General Terms and Conditions and Delphi Customer Specific Requirements are incorporated in, and a part of, this contract and each purchase order, release, requisition, work order, shipping instruction, specification and other document issued by Buyer or accepted in writing by Buyer, whether expressed in written form or by electronic data interchange, relating to the goods and/or services to be provided by Seller pursuant to this contract (such documents are collectively referred to as this "Contract"). A copy of Buyer's General Terms and Conditions and Delphi Customer Specific Requirements are available upon written request to Buyer or via the internet at Delphi's website, delphi.com. Seller acknowledges and agrees that it has read and understands Buyer's General Terms and Conditions and Delphi Customer Specific Requirements . If Seller accepts this Contract in writing or commences any of the work or services which are the subject of this Contract, Seller will be deemed to have accepted this Contract and Buyer's General Terms and Conditions and Delphi Customer Specific Requirements in their entirety without modification. Any additions to, changes in, modifications of, or revisions of this Contract (including Buyer's General Terms and Conditions and and Delphi Customer Specific Requirements ) which Seller proposes will be deemed to be rejected by Buyer except to the extent that Buyer expressly agrees to accept any such proposals in writing.
*****************************************************************



# DELPHI

Energy & Chassis Systems

Page 3 of 6

ONTARIO SPECIALTY CONTRACTING
333 GANSON ST
BUFFALO NY 14203-3062

## Purchase Order

| PO Number | Date Issued |
|---|---|
| 450751581 | 24-Jul-2008 |
| Version | |
| 24-Jul-2008  12:22:27 | |

| Item No. | Material No/Item Identifier No | Total Order Quantity | Plant |
|---|---|---|---|
| | Description | | Requester |

**Notes Continued:**

All wood packaging must be compliant with the International Standard Phytosanitary Measure #15 in the treatment of wood packaging material.  Please reference the "Requirements for the treatment of wood packaging materials" section of the Supplier Community Portal found on www.delphi.com for further details.
*****************************************************************
*****************************************************************

*******************
Title to goods shall transfer from seller to buyer upon arrival at buyer's consuming plant.
*******************

*************************************************************
*************************************************************
If this is your first purchase order with Delphi under this DUNS number or your remittance information has changed, you need to establish a payment link with the following:

Delphi Corporation EAG Disbursements Center
Vendor Name and Address Group
PO Box 972930
El Paso, Texas  79997-2930
Fax 915-612-7152
Attention: Vendor Master Group

Delphi Accounts Payable Help Desk Phone Number is (888)856 6779 or E-mail at juarez.delphia.helpdesktieriiusacctspay@delphi.com.

You will need to provide a copy of invoice or letterhead showing, company name, correct remittance and correspondence addresses, contract number and "ship from" DUNS number.

You should have received an EFT Agreement from your buyer.  But you can obtain a copy of the EFT Agreement forms at Website at www.delphi.com <http://www.delphi.com> Double Click on "Supplier Portal" in the bottom right of the screen, then click "HERE" under How to Become a Supplier.  Then click on "Doing Business with Delphi" under Frequently Used Documents.  Click on "Delphi Customer Specific Requirements".  Scroll to the Payment Section.  Then can Click on "EFT Payment Authorization Form" to download.

You can now view payment status on-line using e*DELPHIPAY.  For new users, the registration instructions are at http://delphi.covisint.com  under the Registration Link.  Please contact the Delphi Help Desk at 877-7DELPHI for any technical questions.

This order will pay on receipt.  Please do not send an invoice unless specifically requested on the order.  This is an invoice less system, which generates payment, based on receipt.

If this P.O. is in error, please advise the buyer listed below before shipping.

Payment issues and questions regarding shipped material should be directed to the Delphi Accounts Payable Help Desk at (877)349 3417.

# DELPHI

Energy & Chassis Systems

Page  4  of  6

ONTARIO SPECIALTY CONTRACTING
333 GANSON ST
BUFFALO NY 14203-3062

## Purchase Order

| PO Number | Date Issued |
|---|---|
| 450751581 | 24-Jul-2008 |
| Version | |
| 24-Jul-2008  12:22:27 | |

| Item No.  Material No/Item Identifier No  Total Order Quantity  Plant |
|---|
| Description  Requester |

**Notes Continued:**

*******************************************************

*******************************************************
Do not bill sales or use tax on items delivered to locations within the states listed below. Delphi Automotive Systems, LLC (" DELPHI ") holds direct pay authority with these states. As a result, in all of the identified states DELPHI will remit directly to taxing authorities, all sales or use tax liability related to its purchase and use of tangible personal property and services. Therefore, effective immediately, this tax clause supersedes all tax code information found on this order except for those states not identified below. For those states not identified below, please continue to follow the specific tax code instructions found on this order. Listed below are Direct Pay Permit or Sales Tax License numbers for the eleven (11) states, or DELPHI locations within a state, where DELPHI holds direct pay authority:

Alabama -------------------805
New Jersey ---------------383-431-131/000
Georgia ------------------300-45870-8
New York ----------------DP-3487
Indiana -------------------1018702130011
Ohio ---------------------98-0002667
Kansas -------------------98-0003a
Texas ---------------------1-38-3431131-1
Michigan -----------------38-3431131
Wisconsin ----------------WDP-99-01-010037
Mississippi --------------4375

If this order relates to a construction contract for real property, all applicable sales and use taxes are the responsibility of the contractor, and should be included in the contractor's bid as required pursuant to Section 7 of the DELPHI 1638 (8/00 Rev A), "Construction General Conditions", unless the responsibility for payment of sales & use taxes are otherwise specifically outlined in the contract.

Questions should be directed to: Delphi Disbursement - Customer Service Phone: (248) 874-4636

*******************************************************

*****************************************************
A PROPERLY COMPLETED CERTIFICATE OF ORIGIN,
NAFTA CERTIFICATE WHERE APPLICABLE (CUSTOMS FORM 434)
AND A MANUFACTURERS AFFIDAVIT STATING THE COUNTRY OF
ORIGIN BE INCLUDED WITH THE SHIPPING DOCUMENTS FOR
THE MATERIAL ON THIS PURCHASE ORDER.        (NT)
*****************************************************

# DELPHI

Energy & Chassis Systems

Page  5  of 6

ONTARIO SPECIALTY CONTRACTING
333 GANSON ST
BUFFALO NY 14203-3062

**Purchase Order**

| PO Number | Date Issued |
|---|---|
| 450751581 | 24-Jul-2008 |
| Version | |
| 24-Jul-2008  12:22:27 | |

| Item No. | Material No/Item Identifier No Description | Total Order Quantity | Plant Requester |
|---|---|---|---|

Notes Continued:

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
CERTIFICATE OF INSURANCE GENERAL

CONTRACTOR SHALL OBTAIN AND MAINTAIN CONSISTENT WITH THE PROVISIONS OF THIS CONTRACT, AT ITS SOLE EXPENSE, THE FOLLOWING TYPES OF INSURANCE COVERAGE, TO REMAIN IN FORCE DURING THE TERM OF THIS CONTRACT, WITH MINIMUM LIMITS AS SET FORTH BELOW:
1.
COMMERCIAL GENERAL LIABILITY COVERING LIABILITY ARISING FROM PREMISES, OPERATIONS, INDEPENDENT CONTRACTORS, PRODUCTS - COMPLETED OPERATIONS, PERSONAL AND ADVERTISING INJURY, AND BLANKET CONTRACTUAL LIABILITY - US $5,000,000 EACH OCCURRENCE.
2.
BUSINESS AUTOMOBILE LIABILITY COVERING ALL OWNED, HIRED AND NON-OWNED VEHICLES - US $5,000,000 EACH OCCURRENCE, INCLUDING ALL APPLICABLE STATUTORY COVERAGES.
3.
WORKERS COMPENSATION - STATUTORY LIMITS FOR ALL STATES OF OPERATION.
4.
EMPLOYERS LIABILITY - US $1,000,000 EACH EMPLOYEE FOR BODILY INJURY BY ACCIDENT AND US $1,000,000 EACH EMPLOYEE FOR BODILY INJURY BY DISEASE.
5.
PROFESSIONAL/ERRORS AND OMISSIONS LIABILITY INSURANCE APPROPRIATE TO THE CONTRACTOR'S PROFESSION. COVERAGE SHOULD ALSO BE FOR A PROFESSIONAL ERROR, ACT OR OMISSION ARISING OUT OF THE SCOPE OF SERVICES SHOWN IN THIS CONTRACT - US $1,000,000 PER OCCURRENCE (ONLY IF PERFORMING CONSULTING ALONG WITH ACTUAL SITE WORK, IF NO CONSULTING, THIS PROVISION CAN BE DELETED)
ALL POLICIES OF INSURANCE PROCURED BY CONTRACTOR HEREIN SHALL BE WRITTEN AS PRIMARY POLICIES; NOT CONTRIBUTING WITH OR IN EXCESS OF COVERAGE THAT DELPHI MAY CARRY.  IF CONTRACTOR'S LIABILITY POLICIES DO NOT CONTAIN THE STANDARD SEPARATION OF INSURED'S PROVISION, OR A SUBSTANTIALLY SIMILAR CLAUSE, THEY SHALL BE ENDORSED TO PROVIDE CROSS-LIABILITY COVERAGE CONTRACTOR SHALL AGREE TO WAIVE THEIR INSURER'S RIGHT SUBROGATION UNDER ITS POLICIES. DELPHI SHALL BE AN ADDITIONAL INSURED UNDER CONTRACTOR'S INSURANCE POLICY (EXCEPT WORKER'S COMPENSATION AND EMPLOYER'S LIABILITY), AND AT DELPHI'S REQUEST, CONTRACTOR SHALL PROVIDE DELPHI WITH A CERTIFICATE OF INSURANCE EVIDENCING COMPLIANCE WITH THE LIMITS, INSURANCE REQUIREMENTS AND WAIVER OF SUBROGATION SET FORTH ABOVE.  SUCH CERTIFICATE SHALL BE IN A FORM ACCEPTABLE TO, AND UNDERWRITTEN BY AN INSURANCE COMPANY REASONABLY SATISFACTORY TO DELPHI AND WITH AN A.M.BEST COMPANY RATING OF A- OR ABOVE.  BY REQUIRING INSURANCE HEREIN, DELPHI DOES NOT REPRESENT THAT COVERAGE AND LIMITS WILL NECESSARILY BE ADEQUATE TO PROTECT CONTRACTOR.  THE PURCHASE OF APPROPRIATE INSURANCE COVERAGE BY CONTRACTOR OR THE FURNISHING OF A CERTIFICATE OF INSURANCE SHALL NOT RELEASE CONTRACTOR FROM ITS RESPECTIVE OBLIGATIONS OR LIABILITIES UNDER THE AGREEMENT.


MAIL ABOVE TO THE BUYER OF RECORD NOTED AT THE BOTTOM OF
OF THE PURCHASING DOCUMENT.
(FAX, PHONE AND ADDRESS BE PROVIDED)



Energy & Chassis Systems

Page  6  of  6

ONTARIO SPECIALTY CONTRACTING
333 GANSON ST
BUFFALO  NY  14203-3062

## Purchase Order

| PO Number | Date Issued |
|---|---|
| 450751581 | 24-Jul-2008 |
| Version | |
| 24-Jul-2008  12:22:27 | |

| Item No. | Material No/Item Identifier No Description | Total Order Quantity | Plant Requester |
|---|---|---|---|

Notes Continued:

CONTRACTORS ARE ADVISED THAT THEIR EMPLOYEES MAY HAVE
THE POTENTIAL OF EXPOSURE TO WORKPLACE CHEMICALS.
CONCERNS REGARDING THIS MATTER CAN BE DIRECTED TO
DELPHI CORP ENGINEERING DEPT.  CONTACT YOUR BUYER OF RECORD
FOR A LOCAL CONTACT NUMBER.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Work described herein shall be performed in accordance with Delphi Corporation Construction General Conditions Delphi 1638 (including Insurance Coverages
and Certification Requirements), provided with the initial request for quotation.  Contractor Specifications and the safety rules and precautions are established by
the Contracting Delphi Site's Safety Department.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# Exhibit C

STATE OF NEW YORK
SUPREME COURT : ERIE COUNTY

---

**DELPHI AUTOMOTIVE SYSTEMS, LLC**

<table>
<tr><td></td><td>Plaintiff</td><td>**ANSWER WITH**<br>**COUNTERCLAIMS**</td></tr>
<tr><td>v.</td><td></td><td></td></tr>
<tr><td>**ONTARIO SPECIALTY CONTRACTING, INC.**</td><td></td><td>Index No. I 2009010438</td></tr>
<tr><td></td><td>Defendant</td><td></td></tr>
</table>

---

Defendant Ontario Specialty Contracting, Inc. ("OSC") by and through its counsel, DUKE, HOLZMAN, PHOTIADIS & GRESENS LLP, for its Answer with counterclaims to plaintiff Delphi Automotive Systems, LLC's ("Delphi") Complaint alleges as follows:

1.        Denies the allegations of paragraphs 9, 10, 12, 14, 15, 16, 17, 20, 21, 22, 23, and 24 of the Complaint.

2.        Admits the allegations of paragraphs 2, 4 and 18 of the Complaint.

3.        Denies knowledge and information sufficient to admit or deny paragraph 1 of the Complaint at present.

4.        As to paragraph 3 of the Complaint, admit that OSC did agree to provide certain demolition services at the request of Delphi and refer the Court to the specific terms of the contract and related bid documents between the parties for the terms of said agreement.

5.        As to paragraphs 5, 6, 7 and 8 of the Complaint, OSC refers the Court to the specific terms of the identified communications for their content.

6.        As to paragraph 11 of the Complaint, OSC admits that one of its subcontractors has filed a lien against the Demolition Project Property (on account of Delphi's breach of

DUKE, HOLZMAN,
PHOTIADIS & GRESENS, LLP
ATTORNEYS AT LAW
1800 MAIN PLACE TOWER
350 MAIN STREET
BUFFALO, NEW YORK 14202-3718
716-855-1111
FAX 716-855-0327

-1-

contract) and otherwise deny the allegations of paragraph 11.

7.    Paragraph 13 of the Complaint states a legal conclusion to which no response is required, and otherwise deny the allegations of paragraph 13.

8.    As to paragraph 19 of the Complaint, OSC admits that it sold scrap metal recovered during the Demolition Project and denies that it received large sums of money for such scrap metals.

9.    Denies any and all other allegations not specifically addressed above.

### FIRST DEFENSE & COUNTERCLAIM - BREACH OF CONTRACT

10.    Leading up to July 2008, Delphi issued several requests for quotations ("RFQ") for the demolition of its Rochester Die Casting Building (the "Project").

11.    Each RFQ contained a target price calling for payment from the contractor to Delphi, on the basis that the value of the scrap metals at the Project site were believed to exceed the costs incurred by a contractor in performing the demolition work.

12.    The RFQ forms established by Delphi, expressly required the contractor to identify the total amount of "material reclamation/savage value" credited to Delphi against the Project costs.

13.    The "material reclamation/savage value" attributable to the scrap metals derived from the Project site was material to funding the demolition work on the Project.

14.    Delphi repeatedly increased the target price as the scrap metal market increased.

15.    On or about July 9, 2008, OSC responded to Delphi's final RFQ seeking a target price of "($305,000 USD) or better proposal", with a response of ($271,033). Attached hereto as **Exhibit A** is a copy of the OSC's July 7, 2008 response to Delphi's RFQ.

DUKE, HOLZMAN,
PHOTIADIS & GRESENS, LLP
ATTORNEYS AT LAW
1800 MAIN PLACE TOWER
350 MAIN STREET
BUFFALO, NEW YORK 14202-3718
716-855-1111
FAX 716-855-0327

-2-

16.    The line items within that response include a $1,189,999 credit to Delphi for "material reclamation/savage value."

17.    Based on asbestos disclosure documents provided to OSC by Delphi (which are required by New York law), OSC's response included a line item of $35,265 in costs for asbestos abatement.

18.    On or about July 24, 2008, Delphi issued a Purchase Order (the "Purchase Order") to OSC based on the above RFQ and accepting OSC's July 7, 2008 response.  Attached hereto as **Exhibit B** is a true and correct copy of the Purchase Order, including General Terms and Conditions incorporated by reference.

19.    Under the terms of the Purchase Order, OSC was to make four (4) separate progress payments to Delphi of $67,758.25 each.  OSC made the first payment of $67,758.25 at or about the start of work on the Project.

20.    The original project completion date under the Purchase Order was December 15, 2008.

21.    Certain work, which included asbestos abatement and utility related work, was required to be completed prior to demolition of the physical structures on the Project site.

22.    The scrap metals could not be removed from the physical structures on the Project site until the asbestos abatement and other pre-demolition work was completed.

23.    OSC immediately mobilized and began pre-demolition work during the week of August 4, 2008.

24.    The pre-demolition work was scheduled to complete on or before September 1, 2008.

DUKE, HOLZMAN,
PHOTIADIS & GRESENS, LLP
ATTORNEYS AT LAW
1800 MAIN PLACE TOWER
350 MAIN STREET
BUFFALO, NEW YORK 14202-3718
716-855-1111
FAX 716-855-0327

-3-

25.     Due to an error within the asbestos disclosure documents provided by Delphi, the pre-demolition asbestos abatement work on the Project went from a quantity of 1,600 s.f. to 15,600 s.f. of asbestos containing materials.

26.     In other words, there was almost ten (10) times more asbestos containing materials on site than represented by Delphi.

27.     Delphi has acknowledged this extra asbestos abatement work in writing and agreed to pay OSC at least $42,000.00 for the performance of such work.

28.     There was also extra pre-demolition utility work required on the Project.

29.     Delphi has acknowledged this extra utility work in writing and agreed to pay OSC at least $7,315.00 for the performance of such work.

30.     Delphi is additionally liable for the delays, interference and impact costs resulting from this extra work.

31.     As a result of the extra asbestos and utility work, and the time it took Delphi to address and respond to said issues, OSC's progress on the Project was delayed, interfered with and impacted.

32.     As a result of the extra asbestos and utility work, and the time it took Delphi to address and respond to said issues, OSC was delayed in its ability to sell and remove the scrap metals from the Project site intended to fund the Project work.

33.     During the period of Delphi's delays, the scrap metal market took an unprecedented and unanticipated decline from approximately $460/ton at the start of the Project to a low of approximately $80/ton.

34.     On or about September 1, 2008, when OSC would have been able to sell and

DUKE, HOLZMAN,
PHOTIADIS & GRESENS, LLP
ATTORNEYS AT LAW
1800 MAIN PLACE TOWER
350 MAIN STREET
BUFFALO, NEW YORK 14202-3718
716-855-1111
FAX 716-855-0327

-4-

establish dealer pricing arrangements for the Project under the original schedule, and thereafter begin immediate delivery of scrap metals, the market price under established scrap metal pricing indexes was $405/ton.

35.     By approximately November 18, 2008, when OSC was able to begin selling scrap metals on account of the above extras and delays, the market price under established scrap metal pricing indexes had dropped to only $80/ton and many scrap dealers would not even place orders or take materials.

36.     On account of the extra work directed by Delphi, interference and delays, OSC received at least $424,708+/- less in revenue from the sale of scrap metals to fund the Project work.

37.     The terms of the Purchase Order, provide at General Term and Condition number 3:

> 3. SPECIFICATION, DESIGN AND SCOP CHANGES
>
> Buyer [Delphi] may at any time require Seller [OSC] to implement changes to the specifications or design of the goods or to the scope of any service or work covered by this Contract, including work related to inspection, testing or quality control. While Buyer [Delphi] will endeavor to discuss any such changes will Seller [OSC] as early as practical, Seller [OSC] will promptly implement such changes. *Buyer [Delphi] will equitably determine any adjustment in price or delivery schedules resulting from such changes*, including Buyer's [Delphi's] payment of reasonable costs of modifications to Seller's Equipment (as defined in Article 16) necessary to implement such changes. In order to assist in the determination of any equitable adjustment in price or delivery schedules, Seller [OSC] will, as requested, provide information to Buyer [Delphi], including documentation of changes in Seller's [OSC's] cost of production and the time to implement such changes. In the event of any disagreement arising out of such changes, Buyer [Delphi] and Seller [OSC] will work to resolve the disagreement in good faith, provided, however, that Seller [OSC] will continue performing under this Contract, including the manufacture and delivery of goods and prompt implementation of changes required by Buyer [Delphi], while Buyer [Delphi] and Seller [OSC] resolve any disagreement arising out of such changes.

DUKE, HOLZMAN,
PHOTIADIS & GRESENS, LLP
ATTORNEYS AT LAW
1800 MAIN PLACE TOWER
350 MAIN STREET
BUFFALO, NEW YORK 14202-3718
716-855-1111
FAX 716-855-0327

-5-

Exhibit B (emphasis added).

38.    In breach of the Purchase Order, Delphi has failed and refused to equitably adjust the contract price between the parties.

39.    Although it has been acknowledged that additional pre-demolition work was directed by Delphi, it refused make adjustment to the contract price to account for the impact of such extra work and delays.

40.    On or about November 3, 2008, as the pre-demolition work was coming to a close, OSC wrote to Delphi bringing the scrap metal market decline issues to Delphi's attention. OSC pointed out the delays attributable to Delphi, and sought an equitable adjustment of the contract price.  Attached hereto as **Exhibit C** is a copy of a letter issued by OSC on or about November 3, 2008.

41.    On or about December 3, 2008, OSC again wrote to Delphi on this subject.  OSC and Delphi also had several verbal communications on this subject between November and December 2008, and thereafter.  Delphi representatives, repeatedly assured OSC that an equitable adjustment of the contract price would be made.

42.    On or about January 12, 2009, OSC again wrote to Delphi on this subject. Attached hereto as **Exhibit D** is a copy of OSC's January 12, 2009 letter.

43.    On February 3, 2009, Delphi responded in writing stating, in essence, that it was discussing the matter internally and would get back to OSC shortly.  OSC was expressly asked for its "patience and understanding."  Attached hereto as **Exhibit E** is a copy of the February 3, 2009 email received from Delphi.

44.    During the time period that Delphi was discussing this subject internally, OSC

DUKE, HOLZMAN,
PHOTIADIS & GRESENS, LLP
ATTORNEYS AT LAW
1800 MAIN PLACE TOWER
350 MAIN STREET
BUFFALO, NEW YORK 14202-3718
716-855-1111
FAX 716-855-0327

-6-

continued its performance per Delphi's request.

45.    On March 17, 2009, Delphi requested further information relating to the extra work that it required OSC to perform and asked OSC to "accept [its] apologies for the delay on the Delphi formal reply to your request to change the existing contract to the Rochester Die Cast demolition project." Attached hereto as **Exhibit F** is a copy of Delphi's March 17, 2009 email.

46.    Meanwhile, Delphi continued to request that OSC continue performance and informally advised that an equitable adjustment would be forthcoming.

47.    OSC provided the additional information requested by letter dated April 22, 2009. Attached hereto as **Exhibit G** is a copy of OSC's April 22, 2009 letter.

48.    On May 7, 2009, Delphi sent an email stating that it would respond shortly. Attached hereto as **Exhibit H** is a copy of Delphi's May 7, 2009 email.

49.    On May 11, 2009, Delphi responded. While offering additional time to allow the scrap metal market to recover, Delphi stated "Because Delphi itself is experiencing great financial difficulty, as a result of being in Chapter 11 since 2005 and due to current economic conditions, it is impossible for Delphi to commit any payments to Ontario Specialty Contracting." Attached hereto as **Exhibit I** is a copy of Delphi's May 11, 2009 letter.

50.    By the time Delphi finally responded on May 11, 2009, substantially all of the scrap metals had been sold (in the depressed market) and, shortly thereafter, OSC was also substantially complete with the Project work.

51.    The May 11, 2009 Delphi letter expressly acknowledges the extra asbestos and utility work directed by Delphi.

52.    Delphi breached its contract with OSC.

DUKE, HOLZMAN,
PHOTIADIS & GRESENS, LLP
ATTORNEYS AT LAW
1800 MAIN PLACE TOWER
350 MAIN STREET
BUFFALO, NEW YORK 14202-3718
716-855-1111
FAX 716-855-0327

-7-

53.    OSC has been damaged as a result of Delphi's breach.

54.    Delphi is liable to and should be directed to pay OSC monetary damages in an amount not less than $288,751.25, plus interest.

## SECOND DEFENSE AND SECOND COUNTERCLAIM - QUANTUM MERUIT

55.    OSC repeats and realleges all prior allegations.

56.    At the specific request of Delphi, OSC performed and provided labor, materials and demolition services to Delphi valued at not less than $968,281.

57.    Despite demand for payment, a balance of at least $474,023 remains due and owing to OSC from Delphi.

58.    Delphi is liable to and should be directed to pay OSC monetary damages in an amount not less than $474,023, plus interest.

## THIRD DEFENSE AND THIRD COUNTERCLAIM - UNJUST ENRICHMENT

59.    OSC repeats and realleges all prior allegations.

60.    At the specific request of Delphi, OSC performed and provided labor, materials and demolition services to Delphi valued at not less than $968,281.

61.    Despite demand for payment, a balance of at least $474,023 remains due and owing to OSC from Delphi.

62.    Delphi has been unjustly enriched at the expense of and to the detriment of OSC.

63.    Equity and good conscience require that Delphi is liable to and should be directed to pay OSC monetary damages in an amount not less than $474,023, plus interest.

## FOURTH DEFENSE

64.    Plaintiff's claims are barred by the doctrines of waiver, unclean hands and/or

DUKE, HOLZMAN,
PHOTIADIS & GRESENS, LLP
ATTORNEYS AT LAW
1800 MAIN PLACE TOWER
350 MAIN STREET
BUFFALO, NEW YORK 14202-3718
716-855-1111
FAX 716-855-0327

-8-

equitable estoppel.

### FIFTH DEFENSE

65.    Plaintiff's claims are subject to an offset and/or set-off.

### SIXTH DEFENSE

66.    Plaintiff fails to state a cause of action.

### SEVENTH DEFENSE

67.    Plaintiff's breach of and conduct under the contract, served to discharge any obligations of OSC.

### EIGHTH DEFENSE

68.    Plaintiff's conduct with respect to the happening of the incident alleged in the Complaint constitutes culpable conduct, contributory negligence and/or assumption of risk, express or implied, attributable to plaintiff, which conduct contributed to the happening of the plaintiff's damages, if any.

69.    The amount of damages, if any, otherwise recoverable by plaintiff shall be diminished in the proportion to which the culpable conduct attributable to plaintiff and to others, if any, for whose conduct this defendant is not responsible, bears to the culpable conduct which caused plaintiff's damages.

### NINTH DEFENSE

70.    Plaintiff lacks standing and/or jurisdiction to commence suit within the Supreme Court, Erie County.

### TENTH DEFENSE

71.    The Purchase Order is subject to rescission.

DUKE, HOLZMAN,
PHOTIADIS & GRESENS, LLP
ATTORNEYS AT LAW
1800 MAIN PLACE TOWER
350 MAIN STREET
BUFFALO, NEW YORK 14202-3718
716-855-1111
FAX 716-855-0327

-9-

### ELEVENTH DEFENSE

72.    The plaintiff's claims are barred by the doctrine of unconscionability.

**WHEREFORE**, defendant requests judgment against plaintiff:

1.    On its first counterclaim in an amount not less than $288,751.25, plus interest;

2.    On its second and third counterclaims in an amount not less than $474,023, plus interest;

3.    Dismissing plaintiff's Complaint;

4.    Granting such other and further relief as this Court sees just and proper.

Dated: September 22, 2009

DUKE, HOLAMAN, PHOTIADIS
& GRESENS LLP

Matthew J. Beck, Esq.
*Attorneys for Ontario Specialty Contracting, Inc.*
1800 Main Place Tower
350 Main Street
Buffalo, New York 14202
(716) 855-1111

DUKE, HOLZMAN,
PHOTIADIS & GRESENS, LLP
ATTORNEYS AT LAW
1800 MAIN PLACE TOWER
350 MAIN STREET
BUFFALO, NEW YORK 14202-3718
716-855-1111
FAX 716-855-0327

-10-

# Exhibit D

 Ontario Specialty Contracting, Inc.

Environmental Remediation  ||  Demolition / Dismantlement

May 27, 2009

Hugo Martinez
Delphi GSM – Construction

Re:    Equitable Adjustment to Rochester Die Casting Building Demolition Contract

Dear Hugo:

I write in response to your letter of May 11, 2009. Delphi's offer is unacceptable. Please recall that Delphi expressly negotiated this contract on the premise that the scrap metals would fund approximately $1.2M of the project costs and sought a credit for such materials. As the market increased, Delphi continuously demanded a larger scrap credit.

As your letter acknowledges, that scrap credit and source of project funding did not hold true, through no fault of Ontario Specialty Contracting ("OSC"), and turned this project completely upside down. OSC proceeded in good faith and in reliance on representations from Delphi that an adjustment would be forthcoming. Now that the project work is substantially complete, Delphi has refused adjustment and payment to OSC because "Delphi itself is experiencing great financial difficulty. . ." That response is not palatable.

It is unconscionable to expect OSC to absorb a $728,165 loss in project funding on account of the parties' mutually mistaken belief that the scrap metal market would not collapse, and therefore would serve as a substantial funding source for the demolition work. When the collapse occurred, the issue was immediately brought to Delphi's attention. OSC continued to perform in reliance on Delphi's conduct and representations, and both parties were hopeful that the market would recover. It did not.

We propose (without prejudice) that the parties equally absorb the loss of project funding in an effort to resolve this dispute. Under that scenario, Delphi owes OSC $195,927.25, calculated as follows: ($728,165 loss in funding X .5) - $168,155.25 = $195,927.25). In the absence of agreement, we will be forced to pursue legal proceedings and will seek to recover the full claim.

Please advise promptly as we have been carrying these costs for some time.

Very truly yours,

Peter Hartung
Sr. Project Manager
ONTARIO SPECIALTY CONTRACTING INC.

333 Ganson Street    Buffalo, New York 14203    Phone: (716) 856-3333  ·  FAX: (716) 842-1630

# Exhibit E

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 05-44481-rdd

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


DELPHI CORPORATION, et al.,


        Debtors.


- - - - - - - - - - - - - - - - - - - -x


            U.S. Bankruptcy Court

            One Bowling Green

            New York, New York


            August 20, 2009

            10:20 AM


B E F O R E:

HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE

13

1   additional fact that would, I think, be implicated in the

2   litigation in that one of the principal OEMs that received the

3   CD players was General Motors, and General Motors waived a

4   substantial portion of their warranty claims in connection with

5   all the settlements that we had --

6          THE COURT:  So that would --

7          MR. BUTLER:  -- or dealt with.

8          THE COURT:  -- that would greatly reduce the fifteen

9   million in claims damages.

10         MR. BUTLER:  Arguably, Your Honor, it would.  I mean,

11  you know, you'd get in -- I think you'd get into an argument

12  about fungibility at the time, but that's what 9019 is designed

13  for us to assess.

14         THE COURT:  Right.

15         MR. BUTLER:  And, ultimately, the judgment reached was

16  this -- the settlements before Your Honor seem to be an

17  appropriate disposition of this litigation under these

18  circumstances.

19         THE COURT:  Okay.

20         Does anyone have anything to say on this motion?

21         All right, for the reasons stated in the motion, I'll

22  approve it as clearly a fair and reasonable settlement.

23         MR. BUTLER:  Your Honor, matter number 7 on the agenda

24  is the motion of Plymouth Rubber Company, LLC seeking to have

25  an administrative claim that was filed fifteen days after the

14

1   bar date to be deemed timely filed, at docket number 18714.

2   And counsel's here to present the motion.

3          THE COURT:  Okay.

4          MR. VINCEQUERRA:  Good morning, Your Honor.  James

5   Vincequerra, Duane Morris, for Plymouth Rubber Company, LLC.

6   I'll explain in a minute why I'm emphasizing the LLC.  With me

7   today is Kara Zaleskas from my -- Duane Morris' Boston office.

8          As a matter of housekeeping, Your Honor, Ms. Zaleskas

9   filed a pro hac vice motion approximately two weeks ago.  I

10  don't believe I saw the order on the docket yet.  I would just

11  ask, to the extent she is required to appear here --

12         THE COURT:  That's fine.  That's granted.

13         MR. VINCEQUERRA:  Thank you very much, Your Honor.  A

14  number of -- a lot of trees were killed in the filings in

15  connection with this matter.  We raise no less than five issues

16  as to why -- or reasons why our claim should be deemed timely

17  or should otherwise be -- or the new admin claims bar date

18  should not be deemed to apply to our claim.

19         I'm really going to focus here on two of the issues:

20  the improper notice issue first and then, to the extent that

21  Your Honor finds that the new bar date does apply to the claims

22  of Plymouth Rubber Company, LLC, the excusable -- the

23  components of excusable neglect.

24         I'll leave the balance of the arguments in our papers

25  with regard to the technicalities of the amended admin bar

15

1    date, or the new admin bar date, the efficacy of that

2    admitted -- or modification order and the informal notice to

3    our papers.  I think they're argued fairly clearly there.

4           THE COURT:  The informal proof-of-claim argument?

5           MR. VINCEQUERRA:  Yes, that's right.

6           THE COURT:  Okay.

7           MR. VINCEQUERRA:  I apologize.  I'll leave those to my

8    papers and reserve any statements on those for rebuttal to the

9    extent we deem it's necessary.

10          As an initial matter, do you have any questions about

11   the papers, Your Honor?  I'd be happy to answer them.

12          THE COURT:  Well, I've reviewed them, so -- I guess

13   the issue on whether it's Inc. or LLC, to my mind, is -- it

14   seems to me it's a non-issue because it was actually received

15   by the claimant, right?  It was received?

16          MR. VINCEQUERRA:  It was received the day after the

17   bar date.

18          THE COURT:  Well, no, I mean it was received by the

19   individual who forwarded it on.

20          MR. VINCEQUERRA:  Well, really, the -- I mean, the

21   point we're getting to is proper notice, I would imagine.  And

22   a couple of points.  The debtor to points to 2002(g) and

23   service on LLC first through the law firm Burns and Levinson

24   and then at the former address of the Plymouth Rubber, Inc.

25   entity.  A couple of points here, Your Honor.  Service was made

16

1    pursuant to outdated -- you know, an outdated claims --

2    outdated exhibit-and-schedules lists and based on a claim that

3    was filed by a different entity.  Service was effected on

4    counsel for a different entity.  Burns and Levinson LLC, which

5    makes up a bulk of the notice argument, never represented the

6    LLC entity.  I mean, and it's important to understand --

7            THE COURT:  Was there any -- is there anything in the

8    record about notice of Plymouth Rubber Company Inc.'s Chapter

9    11 case and reorganization by --

10           MR. VINCEQUERRA:  Delphi actively participated in that

11   case, Your Honor.

12           THE COURT:  How do I know that?

13           MR. VINCEQUERRA:  Excuse me?

14           THE COURT:  How do I know that?  Or will they

15   acknowledge that?

16           MR. VINCEQUERRA:  Well, I can't imagine they won't

17   acknowledge it, Your Honor, as they filed stipulations in that

18   case as well as, I believe, a claim.

19           THE COURT:  When did the plan confirm?

20           MR. VINCEQUERRA:  Plymouth Rubber Inc. confirmed its

21   plan and emerged from bankruptcy on August 31st, 2006.  And

22   maybe I should back up a little bit, Your Honor, and give you a

23   little bit of a time line here because that may be helpful.

24           THE COURT:  I mean, I know they sued LLC.

25           MR. VINCEQUERRA:  That -- you know, that's the rub

17

1    here, Your Honor.  They served the objection -- the notice of

2    the new bar date on Inc. at seven different locations, or five

3    different locations, wherever it -- however many it was, served

4    counsel for Inc.  Burns and Levinson has never represented the

5    reorganized debtor, and -- but they got it right when they

6    wanted to sue the new entity under the new purchase order.

7              THE COURT:  But, again, Mr. Collins forwarded this

8    notice on to LLC, right?

9              MR. VINCEQUERRA:  Well, you're right, Your Honor,

10   they --

11             THE COURT:  And he was acting as LLC's agent, wasn't

12   he?

13             MR. VINCEQUERRA:  Right, as part of the wind-down

14   staff.  And if --

15             THE COURT:  Okay.

16             MR. VINCEQUERRA:  -- if Your Honor is -- you know,

17   wants it moved forward to the excusable neglect argument, which

18   I think is also a very good argument, I don't think the notice

19   was proper there.  I think, you know -- at footnote 3 of their

20   objection is very telling.  They note that for the purposes of

21   their objection they presume that LLC is the successor-in-

22   interest to Inc.  I'm not aware of any case law that says you

23   can get the benefit of that assumption for notice requirements

24   under an --

25             THE COURT:  But, again --

18

1          MR. VINCEQUERRA:  -- under an admin --

2          THE COURT:  -- Mr. Collins made the same presumption,

3    right?  He sent the notice on to LLC?

4          MR. VINCEQUERRA:  He did send it on, there's -- we do

5    not contest that fact.

6          THE COURT:  Okay.

7          MR. VINCEQUERRA:  So if you have no other questions

8    for me on the proper notice -- we don't contest the fact that

9    Mr. Collins did receive actual notice -- I can move on to

10   excusable neglect.

11         THE COURT:  Okay.

12         MR. VINCEQUERRA:  Debtors don't contest two components

13   of excusable neglect:  They don't contest that the -- regarding

14   the length of delay or Plymouth Rubber's good faith.  So,

15   really all that we're left with, Your Honor, is the prejudice

16   requirement and the reason for delay.

17         Mr. Butler indicated that a proof of claim was filed

18   fifteen or sixteen days after the bar date.  That's technically

19   true.  We alerted -- well, we alerted counsel for the debtor

20   the day after the bar date, asking them to deem the claim

21   timely filed; that's reflected in Ms. Zaleskas' affidavit.

22         But to get to the point of excusable neglect, Your

23   Honor, what happened here is really a perfect storm for my

24   client.  The prior entity, the Inc. entity, will have business

25   relationships with Delphi as a result of the Delphi bankruptcy

19

1   and things that happened which, to be quite honest with you, my

2   firm was not involved with.  They went into bankruptcy and

3   reorganized.  When they emerged from bankruptcy, they had new

4   equity, substantially new officers and directors, effectively a

5   new entity; entered into a new purchase order agreement with

6   Delphi on January 30th, 2008.  About nine months after that,

7   that's approximately a year and a half after, they emerged from

8   bankrupt -- the reorganized debtor emerged from bankruptcy.

9        Approximately nine months after entry into that

10  purchase order, Delphi sued Plymouth Rubber Company, LLC in

11  Michigan for breach of the contract, for breach of the purchase

12  order agreement.  Plymouth Rubber Company, LLC counterclaimed,

13  and that's the basis of our -- those are the bases of our --

14  that's the basis of our admin claims.

15       Six days after Delphi sued Yongel (ph.) -- the Yongel

16  Company, another -- a supplier of Plymouth Rubber Company also

17  sued Plymouth Rubber Company, LLC.  And in that case as well,

18  Plymouth Rubber Company filed counterclaims both against Yongel

19  and Delphi.

20       Both those cases were consolidated for mediation

21  purposes and they're in global mediation.  The -- as a result

22  of the lawsuits from their principal buyer and their principal

23  supplier, Plymouth Rubber Company, LLC started its own line

24  down in October of 2008 and approximately three months after

25  that laid of all of its employees.  And that's where we have,

20

1    you know, the sole employee of the debtor, Mr. Collins.

2            So, you know, it's important to remember -- oh, let me

3    jump -- I'm sorry, excuse me, Your Honor, let me jump to the

4    portions of excusable neglect that are in dispute:  reason for

5    delay.  We laid out some of these facts because, I mean,

6    clearly there is a legitimate reason for Plymouth Rubber

7    Company, LLC's one-day delay in providing notice to the debtors

8    with regard to their admin claim.

9            THE COURT:  I guess my one issue with that is why

10   didn't Mr. Collins open the envelopes?

11           MR. VINCEQUERRA:  Why did he open the envelopes?

12           THE COURT:  Why didn't he?

13           MR. VINCEQUERRA:  Why didn't he?

14           THE COURT:  Right.  I mean, he got them on the 9th.

15   He put them -- it doesn't say this, but I guess one can infer

16   that he didn't open them, he put them in another envelope and

17   mailed them to Mr. -- it begins with an S, let me get the right

18   name -- Mr. Schultz.

19           MR. VINCEQUERRA:  Yes, that's right.  His name is --

20           THE COURT:  I don't understand why he didn't open the

21   envelopes, because they weren't received by Mr. Schultz until

22   six days later.  I mean, particularly if he'd been waiting --

23   if they'd been -- you know, if he only checks the P.O. box

24   every two weeks, I don't understand why he wouldn't have opened

25   the envelopes.

21

1        MR. VINCEQUERRA:  Well, I mean, it's not in his

2    papers, Your Honor, and anything I say would be pure, you know,

3    suspicion and guesswork.  But the fact of the matter is that

4    the notices were not addressed to the entity that employed him.

5    They were addressed to an Inc. -- the Inc. entity.  So, LLC

6    never filed a notice of appearance in this case, has never

7    appeared in this case until this dispute, and they never felt

8    that they had a need to appear in this case because they were

9    party to a post-petition contract that, under the prior plan,

10   gave them an allowed amended claim.

11       So, I mean, while it's pure, you know, circumspection

12   as to why he did not open the letter for a day and put it in

13   regular mail, the letter wasn't addressed to the entity that

14   employed him and the entity that's in wind-down.

15       THE COURT:  Well, it didn't employ Mr. Schultz either,

16   did it?

17       MR. VINCEQUERRA:  No, it did not.  So, Your Honor, to

18   continue on with reason for the delays, you know, there was an

19   aggressive timetable here for the bar date, from the height of

20   the holiday season.  We're in -- Plymouth Rubber Company, LLC

21   is in its own wind-down, is on a short staff, and I think that

22   there's ample justification here for the reason of delay -- for

23   the reason for delay.

24       To move to the other component that's in contest, as

25   to prejudice, I don't see, you know, any realistic manner of

22

1   prejudice here for the debtors.  They learned of the claim one

2   day after the bar date.  There's no contest that Ms. -- there's

3   no question that Ms. Zaleskas -- I mean, it's not contested

4   Ms. Zaleskas alerted the debtors to the claim the day after the

5   bar date.  The claim was filed a week and a half to two weeks

6   later, followed shortly by this motion.  The claim is an

7   unliquidated amount, is in the nature of a counterclaim, you

8   know, brought as a response to suits against Plymouth Rubber

9   Company, LLC.

10       My understanding from my reading of the plan and

11  disclosure statement in this case and some things in the news

12  is admin claims are anticipated to be paid in full, and there

13  are literally hundreds of millions of dollars of admin claims.

14       So I see very little chance for prejudice there.  The

15  debtors make the argument that -- you know, the classic

16  floodgates argument that you commonly see in pioneer type of

17  cases.  The facts of this case are so unique I really don't see

18  that as a reasonable prospect.  Two creditors of the debtors

19  with substantially similar names but different entities, you

20  know, the claimant being in wind-down, I just don't see the

21  floodgates opening here.

22       So with that, Your Honor, if you have no questions,

23  I'll turn it over to, I guess -- is it Mr. Powlen?

24       MR. POWLEN:  Yeah.

25       THE COURT:  Is it -- was it a compulsory counterclaim?

23

1    Does it arise under the same transaction or occurrence?

2        MR. VINCEQUERRA:  Rises under the same purchase order

3    agreement.

4        THE COURT:  Okay.

5        MR. VINCEQUERRA:  Thank you very much, Your Honor.

6        MR. BUTLER:  Judge, just one moment, if you don't

7    mind.

8       (Pause)

9        MR. BUTLER:  Your Honor, I just want to make sure the

10   record is clear here.  I have, and I think counsel will

11   acknowledge that we obtained, and I have for the Court, a

12   certification of conversion from a corporation to a limited

13   liability company of Plymouth Rubber Company, Inc., a

14   Massachusetts corporation.  It's -- it is the same company.  I

15   mean, we hear that it's different companies and not successors.

16   I actually have the documentation from the State of Delaware

17   Secretary of State's Office that we obtained that shows that on

18   September 1st, 2006 the same legal entity was converted from

19   one kind of corporation in Delaware to another kind of

20   corporation in Delaware.

21       So, I mean, I think the suggestion that these are

22   fundamentally different entities just is not accurate.  And

23   I've got the evidence here.  I don't think that counsel,

24   Mr. Vincequerra, would dispute the Secretary of State of

25   Delaware as to what the entity is, and I have that.

24

1          So this is the same legal entity that was converted on

2     the -- on September 1st.

3          Second, Your Honor, Mr. Vincequerra, in his argument,

4     made a major point about the fact that there was a new purchase

5     order in January of 2008.  And, in fact, there was a purchase

6     order that was reissued on -- in January of 2008 after the 2006

7     reorganization to Plymouth Rubber, and it was purchase order

8     number P6850008, and it was issued to the address 500 Turnpike

9     Street in Canton, Massachusetts.  That was the business address

10    that the parties New Plymouth, Plymouth LLC, whatever one wants

11    to call it, that is the address that Plymouth used with Delphi

12    in connection with the new purchase order that Mr. Vincequerra

13    referred to, and the PO was issued to that address.  And the

14    notice of administrative claims bar date was -- one of the

15    places that it went to was to that address in Canton.

16         And so I think that the -- you know, the argument that

17    the notice, in addition to being actually received, it also was

18    the business address that Delphi and Plymouth Rubber Company,

19    LLC used between themselves in the January 2008 purchase order

20    and was the appropriate business address.

21         I don't think, Your Honor, that this matter should

22    turn in any respect on the issue of notice.  Appropriate notice

23    was given; it was given in connection with -- to the

24    appropriate -- you know, the legal entity, which really was the

25    same entity converted, to the business address that was used in

25

1    the 2008 contract between the companies.  And the notice was

2    actually, in fact, received.

3         I think the question is more the excusable neglect

4    question here, and I only have a few comments on that.  First,

5    we acknowledged in our papers that we did receive a call from

6    counsel the day after the bar date.  That isn't unusual.  We

7    receive those kinds of calls fairly regularly when there are

8    bar date issues, and our response is always the same, which is

9    it's not our bar date to change, it's the Court's bar date, and

10   that we don't have any ability to change the date and people

11   need to take whatever steps they need to take to protect their

12   clients.  And the same kind of -- the same discussion was had

13   with counsel for Plymouth Rubber.

14        The fact that they waited a couple of weeks -- and it

15   wasn't just a week, it was the fact they waited until after the

16   plan modification hearing to submit the proof of claim two

17   weeks later, is -- you know, kind of mystifies me as to why

18   they chose to do that.  But that's not excusable neglect.  They

19   could have filed something the next day.  According to

20   Mr. Vincequerra's argument, it would have been -- you know, all

21   they needed to do was to file an administrative claim that

22   attached the lawsuit and that that would have done that.

23        I think when you look at the -- from the company's

24   perspective, the issue here is -- Your Honor, I think, knows

25   from the plan modification hearing and all of the pleadings

26

1    filed in connection with that, Delphi was on a mission over the

2    last fifteen, sixteen months since the prior plan, before it

3    was modified, hadn't gone effective, to try and develop a

4    solution for these cases that would be successful, that would

5    involve modifying the plan, emerging pursuant to a plan and

6    providing for the payment of administrative expenses that are

7    allowed.  And that took an enormous amount of effort and

8    negotiation to do that.  And one of the things, the processes

9    we went through in the latter part of July, was to assess all

10   of the claims that were made in connection with the bar date

11   and to evaluate those with our chief restructuring officer and

12   with the representatives of our other major stakeholders,

13   particularly with the -- some of the advisors of the DIP

14   lenders in connection with their credit bid so that we were all

15   comfortable in proceeding on the 29th here.  And that was based

16   on having an assessment of what the world of administrative

17   claims was through July -- or through May 31st, understanding,

18   as Your Honor knows, under the modified plan that's now been

19   approved, the -- there's another window bar date that's going

20   to go out covering June 1st through the anticipated effective

21   date of September 30th.

22       But making the assessment of what the unpaid

23   administrative claims were from the -- from October 5, 2005

24   through May 31, 2008 was a real exercise in connection with

25   preparing for the plan modification hearing.  And the fact that

27

1    counsel or their client chose not to file the claim for a

2    couple of weeks after they had actual notice and they had had

3    actual conversations with us I don't think fits within the

4    factors of excusable neglect.

5         That's all, Your Honor, the debtors would have to say

6    on this.

7         THE COURT:  Well, let me explore that a little bit

8    more.  Is there or was there an estimate of allowed

9    administrative claims that was a factor in the DIP lenders and

10   GM going forward on the 29th to propose the winning plan

11   support agreement and lead to the modified confirmation --

12        MR. BUTLER:  Yes, Your Honor.  You --

13        THE COURT:  -- of the plan?  Because, I mean, I don't

14   remember any testimony --

15        MR. BUTLER:  No.

16        THE COURT:  -- on, you know, some floor that -- or

17   some ceiling for administrative claims or anything.

18        MR. BUTLER:  No, there's not, Your Honor.  There was

19   not.  What Your Honor may recall was that one of the charts

20   that we put up and went through explained how the

21   administrative liabilities were going to be allocated among the

22   parties.

23        THE COURT:  Right.

24        MR. BUTLER:  It was intentional that -- and one of the

25   things we fought for in the MDA was not to have dollar cap

1    limitations.  There were, in fact -- that was a subject of

2    protracted negotiation, actually, as to whether or not there

3    would be limitations and what those liabilities would be and,

4    instead, the agreement was to do it by category.  And Your

5    Honor saw those categories allocated between the GM entity, the

6    DIPCo entity and DPH Holdings, the reorganized entity.

7             THE COURT:  Right.

8             MR. BUTLER:  And there was also a focus, and Your

9    Honor may recall that Mr. Stipp, in his sworn testimony,

10   provided in his declaration a fair amount of discussion about

11   the assessment of administrative claims as it related to DPH

12   Holdings' ability to be able to deal with its -- or what it

13   needed to satisfy as it moved forward.  And so there was an

14   assessment that went on, there was -- Mr. Stipp did make those

15   evaluations and make those assessment, and there was that, if

16   you will, sort of informal feasibility discussion among the

17   parties.  Ultimately, that didn't arise to the level, Your

18   Honor, of having -- beyond the sworn testimony, there wasn't

19   any controversy at the plan modification hearing about it

20   because ultimately it had been negotiated out.

21            THE COURT:  So which of the three entities would be

22   responsible for any affirmative recovery here?

23            MR. BUTLER:  Without prejudicing the estate, because I

24   may get this wrong, but my sense is that this is a retained

25   liability of DPH Holdings.  I don't know that this -- and the

29

1    reason I say that is because this supplier no longer does

2    business with the company.  This is a -- but I'd have to check

3    that in terms of -- go back and check that under the plan in

4    the negotiations.  But this is a supplier -- this is a former

5    supplier who, from the company's perspective, failed to live up

6    to its obligations under the purchase order, and it required

7    Delphi to incur a very substantial expense in re-sourcing from

8    the supplier who failed to live up to the terms of their

9    contract in the company.  And that's only why we sued them, and

10   we re-sourced the product.

11          So I think the re-sourced product and the

12   administrative liabilities associated with them go to, in fact,

13   DIPCo, but I think that the exposure under this litigation is

14   likely a DPH Holding obligation.  But I'd have to confirm that,

15   Judge.  That's my best recollection.

16          THE COURT:  Okay.  Well --

17          MR. BUTLER:  And as you know, DPH Holdings --

18          THE COURT:  It wouldn't be -- I guess it wouldn't be a

19   GM one because this isn't a GM plant --

20          MR. BUTLER:  No, it's not -- no, no, it's -- and

21   that's what I'm saying to you.  My -- and I think Ms. Kraft

22   (ph.) is here from the company and we just told her about

23   this -- my believe is the retained liability for the litigation

24   exposure would be DPH Holdings.  And the supplier contract for

25   what was the re-sourced contract, which is with another entity,

30

1   that obligation and the administrative claims associated with

2   it, that went to DIP Holdco, or will go to DIP Holdco.

3           THE COURT:  Okay.

4           MR. BUTLER:  I think that's the proper -- at least

5   that was the philosophy behind the negotiation at the time.

6           THE COURT:  All right.  And it looks like to me the

7   counterclaim -- you can correct if I'm wrong -- the

8   counterclaim just seeks monetary damages, right?  It doesn't

9   seek specific performance or anything like that?

10          MR. BUTLER:  That's correct.

11          THE COURT:  It's an unliquidated claim.  Have there

12  been any discussion as to what the damages are asserted to be

13  as far as the counterclaim?  Either one of you --

14          MR. BUTLER:  There was, Your Honor -- I'm advised, and

15  Mr. Vincequerra may know, I was advised it was a mediation.  I

16  don't know what was --

17          THE COURT:  Right.

18          MR. BUTLER:  -- put on the table at the mediation.

19          THE COURT:  I mean, I don't want you to reveal

20  settlement proposals, but, just, has there been a settlement of

21  what the damages could be?

22          MR. VINCEQUERRA:  Yes, Your Honor, that's the irony of

23  this whole thing for my client is that while this bar date

24  procedure has been going on, my client has been across the

25  table --

31

1        THE COURT:  No, I know there's been a mediation.  I'm

2    just trying to figure out what --

3        MR. VINCEQUERRA:  No, there have been -- you know, a

4    mediation is fairly far along.  There have been numbers

5    exchanged.

6        THE COURT:  I don't want to hear settlement proposals.

7    What I'm focusing on here is, on the issue of prejudice, you

8    had made a good point that these claims are going to be paid in

9    full under the modified plan.  The point I've just been

10   exploring with Mr. Butler is who's going to be paying them.  If

11   it is, as it would appear to me to be the case just from the

12   nature of the claim and the MDA, the remaining holding company,

13   the debtor wind-down company, then I did make a conclusion as

14   part of my ruling approving the modification of the plan that

15   that modification was feasible, and that was premised upon the

16   testimony about the likely amount of administrative claims and

17   the funding of the successor entity and the like.

18        So the reason I'm asking this question is to find out

19   how large your claim is.  It wasn't taken into account in that

20   testimony, and it was a large claim that may affect the

21   prejudice calculation.  I just don't know.  I mean, it's an

22   unliquidated claim.  I don't know whether it's large or not but

23   whether it's, you know, something that, for example, pales in

24   comparison to the debtors' claim.

25        So I'm not asking you about settlement discussions;

32

1    I'm asking what's been asserted, unless you want to tell me

2    what you think the realistic number is.  But that's up to you.

3          MR. VINCEQUERRA:  It's difficult to say , Your Honor,

4    because, to be quite honest with you, I haven't been involved

5    in the mediation.  I understand from our mediation statement

6    that that counterclaim number that we've been stuck at is

7    roughly twenty million dollars.  Again, that's as a

8    counterclaim that would be, obviously, offset against any

9    successful recovery that they have against us.

10         THE COURT:  Although it would seem to be it's

11   either/or, right?  Unless you settle it, either they breached

12   or you breached.  So I'm not sure there'd be much of an offset.

13         Okay.  All right.

14         MR. BUTLER:  Your Honor, that's all the debtors

15   have --

16         THE COURT:  Well --

17         MR. BUTLER:  -- unless you had a question.

18         THE COURT:  -- let me ask you, though, based upon a

19   twenty million dollar claim, how does that affect the -- was

20   any liability for this taken into account in the declarations

21   in support of the modification of the plan?

22         MR. BUTLER:  My understanding is the answer to that

23   question is no, there was no money allocated to this amount

24   through the -- whether the claims process was evaluated.

25         The -- and, you know, Your Honor, there has been a

33

1    wide variety of lawsuits started, stopped in hiatus, since

2    October of 2005.  And the debtors relied on the administrative

3    claims process here that went out to everybody as -- to catch

4    the claims that people were going to assert as part of the --

5    to understand as part of the plan modification process.

6         THE COURT:  And, again, this claim came in after the

7    plan modification hearing.

8         MR. BUTLER:  Correct.  It came in on the June 30 -- on

9    July 30th --

10        THE COURT:  The hearing was on the 29th.

11        MR. BUTLER:  -- and where the hearing was July 29th.

12   And the assessment was actually made in the days -- we spent

13   three or four days leading up to the July 29th hearing going

14   over this evaluation and assessment.

15        THE COURT:  Okay.

16        MR. BUTLER:  And I think -- you know, I don't have

17   Mr. Stipp here, Your Honor, but Ms. Kraft is here and she works

18   closely with Mr. Stipp.  I think that Mr. Stipp would tell you

19   that if he had an extra twenty million dollar -- if in fact,

20   taking their -- I think we disagree vigorously with the claim,

21   but if you add another twenty million dollars of litigation

22   exposure to the pot, would that be material, I think Mr. Stipp

23   would say yes, it's material.

24        THE COURT:  Well, what was funding again for --

25        MR. BUTLER:  Remember, the funding from -- I think it

34

1    was -- the entire funding from General Motors was fifty

2    million; plus, we had the plants that were retained which we

3    could sell off; plus, we had --

4            THE COURT:  But those are more dogs and cats than --

5            MR. BUTLER:  They were.

6            THE COURT:  Right.

7            MR. BUTLER:  Plus, we had the avoidance actions, to

8    the extent that there's collectability on some of the avoidance

9    actions.  And there were some other -- there were some -- I

10   think some other MRA payments, I think, from General Motors or

11   a few other sources of revenue.  But it was calibrated.  It

12   was -- you know, it was designed, as you know, to provide for

13   an efficient disposition of all of those assets and remediation

14   of the -- of some of the other issues and payment of the

15   liabilities.  So I think Mr. Stipp would argue that twenty

16   million was material in that calculation.

17           THE COURT:  Okay.

18           MR. BUTLER:  Thanks, Judge.

19           THE COURT:  Okay.

20           MR. POWLEN:  Just one minor point, Your Honor.

21   Mr. Butler -- I don't know if he passed it up, because I didn't

22   see him pass it up, but makes much of the fact that the

23   entities -- the LLC entity and the Inc. entity are the same.  I

24   know Your Honor said actual -- there was -- you know, the

25   notice was received, but they're the same entities.  And I know

35

1   Mr. Butler's familiar with the concept of a fresh start and a

2   reorganized debtor, but they're the same entities as they would

3   be in any post-effective date debtor that has entirely new

4   equity and has a fresh start in a bankruptcy.  That this was

5   not accomplished through a 363 sale and a transfer of assets

6   but rather an infusion of equity and a stock deal doesn't

7   change the fact that at the end of the day they were dealing

8   with a newly born entity.

9           Other than that, Your Honor, I have nothing further.

10  Thank you very much for your time.

11          THE COURT:  Okay.

12          Is -- neither Mr. Collins nor Mr. Schultz is here,

13  right?

14          MR. POWLEN:  No, Your Honor.

15          THE COURT:  They're not present?

16          MR. POWLEN:  No, Your Honor.  We had discussions with

17  Skadden, and prior to the hearing we agreed that we would just

18  rely on the affidavits.

19          THE COURT:  Okay.

20          Okay, anyone else?

21          Okay, I have before me a motion by Plymouth Rubber

22  Company, LLC for an order deeming its administrative expense

23  claim timely filed or for related relief.  The origin of this

24  dispute is that, in connection with proceeding to obtain the

25  modification and ultimate consummation of its confirmed but

36

1    unconsummated Chapter 11 plan, Delphi Corporation and its

2    affiliated debtors sought approval of an administrative claims

3    bar date for the Chapter 11 period through May of 2009.  The

4    debtors' confirmed Chapter 11 plan was not consummated because,

5    asserting breaches, the plan investors under that plan refused

6    to close in April of 2008.  That left Delphi with a significant

7    hole in the required funding for the confirmed plan.  Delphi

8    then spent close to a year dealing with ways to plug that hole

9    as well as to address the further deterioration in the

10   financial markets and in their perception of Delphi's value,

11   which led to a substantially different approach, ultimately, to

12   their exit from Chapter 11 under a Chapter 11 plan.

13        The debtors, in assessing their ability to emerge from

14   Chapter 11, and having entered into an agreement with an entity

15   called Platinum, as well as General Motors, that would have

16   provided for that combined entity's acquisition of most of the

17   debtors' business operations in return for sufficient cash to

18   deal with a portion of the administrative claims against the

19   debtors, plus stock -- I'm sorry, plus forms of contingent

20   consideration -- having entered into that transaction, the

21   debtors determined that they needed prompt means to calculate

22   the outstanding administrative claims other than the debtor-in-

23   possession financing claims against them, and, therefore,

24   obtained from the Court, in connection with establishing

25   procedures for consideration of the proposed modification to

37

1   the Chapter 11 plan involving GM and Platinum, the

2   administrative claims bar date.

3       The bar date notice provided for, for purposes of a

4   bar date, fairly short notice, but given the timing constraints

5   that the debtors faced, including, in essence, a week-to-week

6   extension of enforcement of remedies under the DIP facility and

7   a clear and short deadline from GM and Platinum, such notice

8   was appropriate under the circumstances.

9       The debtors sent out the notice and received timely

10  administrative claims from approximately 2,400 claimants.  The

11  claims procedures motion that is on the calendar for later

12  today states that approximately one billion dollars of

13  administrative claims were asserted in those proofs of claim,

14  plus unliquidated amounts.

15      Ultimately, the proposed modified plan was itself

16  modified, although not materially so for purposes of the issues

17  before me today -- and instead of Platinum acquiring

18  significant assets under the plan, along with GM, Platinum was

19  replaced by the debtors after an auction process by a

20  consortium of the debtor-in-possession lenders.  And that

21  group, plus GM, entered into an MDA with the debtors, which

22  formed the basis for the modified plan.  The Court held a

23  hearing on that modification and approved it on July 29th, two

24  weeks after the administrative claims bar date.

25      The rough structure of the plan provides for the

38

1    continuation of most of the debtors' businesses, either in the

2    hands of a GM acquisition company with respect to certain

3    facilities that primarily manufacture parts for GM vehicles, as

4    well as other assets that would go to the DIP lender

5    acquisition group.

6         The third split of the debtors' assets would be

7    retained by the debtors, since neither GM nor the DIP

8    acquisition group wanted to acquire them.  In addition, that

9    entity that would continue to hold those assets would receive a

10   cash payment by GM to enable that entity to pay administrative

11   claims against it that were not being assumed in connection

12   with the purchase of ongoing operations by the DIP acquisition

13   vehicle and GM acquisition vehicle.  And that amount of cash

14   was determined by the debtors in consultation with various

15   constituents, including GM, to be sufficient to have the

16   surviving debtor entity meet its obligations under the plan,

17   including the payment of allowed administrative claims.

18        The Court took testimony on that aspect of the

19   proposed plan modification in the form of an affidavit by

20   Mr. Stipp, in which he went through his analysis of likely

21   sources and uses of cash to pay that entity's administrative

22   claims.  No one cross-examined Mr. Stipp.  And based upon my

23   review of the MDA, the modified plan and the affidavits

24   submitted in support thereof, I concluded that the plan, as

25   modified, was feasible: that is, that it was not likely to be

39

1    succeeded by a liquidation under Chapter 7 and that it could be

2    performed, including the payment of administrative claims, as

3    contemplated by the plan.

4         The debtors sent out notice of the administrative

5    claims bar date as required by my order establishing the bar

6    date, and notice was actually received by Plymouth Rubber

7    Company, Inc. on -- it is acknowledged to have been received by

8    Plymouth Rubber Company, Inc. on July 9, 2009.  That's set

9    forth in the affidavit in support of Plymouth's motion of

10   Mr. Collins.

11        The debtors sent that notice to the address in their

12   post-petition purchase order between them and Plymouth Rubber

13   Company, LLC -- the same location.  The address on the envelope

14   was to Plymouth Rubber Company, Inc., which had been the entity

15   with which the debtors had done business prior to Plymouth's

16   Chapter 11 reorganization.

17        Mr. Collins, as I said, received the notice, which was

18   also sent to numerous other locations to Plymouth Rubber

19   Company, Inc., including to the counsel that filed the proof of

20   claim on behalf of Inc. in the Chapter 11 case.  Mr. Collins

21   did not open the notice but, instead, on July 10th, put it, and

22   apparently some other correspondence, in an envelope and

23   forwarded it to Mr. Schultz, who is described in the Collins

24   affidavit as a representative of Plymouth Rubber, LLC's parent,

25   or at least an affiliate, retained to manage Plymouth's

40

1    affairs, Versa Capital Management, Inc., which also manages the

2    funds which directly own the equity interest in Plymouth

3    Rubber.

4           Although mailed on July 10th, according to

5    Mr. Collins, the notice was not received by Mr. Schultz until

6    July 16th, at which point Mr. Schultz, unlike Mr. Collins,

7    opened the package, read the notice and immediately contacted

8    the debtors, seeking an extension of the bar date, which was

9    not agreed to.

10          It's undisputed that Plymouth did not file the proof

11   of claim and/or seek approval of an extension until July 30th,

12   after the plan modification hearing.

13          Plymouth requests that the Court consider its

14   administrative claim timely on a number of different grounds,

15   although most of the focus, properly so, of this hearing, has

16   been on the ground of excusable neglect.  Before I deal with

17   that issue and those factors, let me briefly deal with the

18   other bases for Plymouth's requested relief.

19          First, Plymouth contends that the Court did not have

20   power to establish the administrative claims bar date, given

21   the treatment of the administrative claims bar date in the

22   original plan and the confirmation order.  The plan itself

23   contemplated, in the definition of "administrative claim," the

24   potential for establishing a different administrative claims

25   bar date than was set forth in the plan, which was a date

41

1   forty-five days after the confirmation of the plan.  The plan

2   also reserved fully the debtors' rights in the event that the

3   plan did not go effective, which clearly was the case.

4         That plan, as I noted, contemplated a very different

5   outcome for creditors than the current modified plan.  Not only

6   was there no issue of the payment of all administrative claims,

7   requiring no determination, as a practical matter, by the Court

8   as to feasibility for potential failure to cover administrative

9   claims, but also the plan provided for full payment of

10  unsecured creditors at a deemed plan value, and a substantial

11  return to shareholders.  Consequently, the plan's

12  administrative claims bar date provision was appropriate for

13  that structure -- again, one where there was really no issue as

14  to whether the debtors would be able to pay all asserted

15  administrative claims.

16        The confirmation order similarly provided for a forty-

17  five day post-confirmation administrative claims bar date and

18  stated that it would govern in light of -- in the event of a

19  conflict between the plan and the confirmation order.  And

20  clearly it was an extant order.  However, the debtors' need to

21  set an earlier bar date, given the changes to their plan, was

22  clear and required the establishment of a different bar date,

23  clearly, in the context of the deadlines they were facing.  The

24  Court considered such a request to be appropriate, both in

25  light of the rights that the debtors reserved for themselves

42

1  under the confirmed but not consummated plan, as well as under

2  the Court's ability to amend the confirmation order, which on

3  this point, was quite clearly outdated.

4        Therefore, I believe that Plymouth's argument that the

5  Court exceeded its authority in setting a new administrative

6  claims bar date order, and that Delphi and the other parties

7  should be governed in this respect by the terms of the

8  confirmed plan and the confirmation order entered in 2008, is

9  not well taken and is denied.

10       Next, Plymouth argues, as a matter of due process,

11  that the notice to it of the administrative claims bar date was

12  deficient.  It does so on two grounds.  The first is that it

13  asserts the debtors were involved in post-petition litigation

14  commenced by the debtors in state court in Michigan against

15  Plymouth as well as subsequent litigation commenced by a third

16  party in Massachusetts.  The second is that the debtors knew

17  that Plymouth was represented by counsel in that litigation,

18  and, therefore, that in addition to the other places that the

19  debtors provided Plymouth with notice, they should have

20  provided notice to litigation counsel in the Michigan and

21  Massachusetts litigation. It should be noted that those counsel

22  did not file a notice of appearance in the Chapter 11 case and

23  that, in fact, they have not appeared in the Chapter 11 case

24  until this current motion.

25       The motion relies upon, primarily, on this point, In

43

1   re Grand Union Company, 204 B.R. 864 (Bankr. D. Del. 1997), in

2   which the bankruptcy court concluded in that case that the

3   debtors' direct mailing of notice to personal injury tort

4   claimants represented by counsel was inadequate notice of the

5   bar date, and that the notice should have been provided to the

6   personal injury counsel that Grand Union was dealing with.

7   That case flies in the face of a number of cases in the Second

8   Circuit, including in the Southern District of New York, which

9   state that notice requirements under the Bankruptcy Code,

10  including in respect of bar dates (and notices of similar

11  consequence), do not have to be sent to counsel representing

12  the claimant, but may instead only be sent -- or need only,

13  instead, be sent to the claimant itself.  See, for example, In

14  re Brunswick Baptist Church v. Brunswick Baptist Church, 2007

15  U.S. Dist. LEXIS 3319 (N.D.N.Y. Jan. 16, 2007); In re

16  Alexander's Inc. 176 B.R. 715 (Bankr. S.D.N.Y. 1995); In re

17  R.H. Macy & Company Inc. 161 B.R. 355 (Bankr. S.D.N.Y. 1993);

18  and Dependable Insurance Company v. Horton, 149 B.R. 49 (Bankr.

19  S.D.N.Y. 1992).

20       I should note further that Judge Walsh, in the Grand

21  Union case, made it clear that he was focusing on the unique

22  facts before him, where he found that the claimants who

23  received the notice were unsophisticated and that all dealings

24  in respect of their claims had previously been through their

25  respective counsel.  Clearly, Plymouth is not an

44

1    unsophisticated tort claimant here.

2         Consequently, based on the rationale of the Brunswick

3    Church case and the other cases I've cited, I do not believe

4    that the debtors were required to give notice to counsel of

5    record in the pending litigation, particularly as, as I noted,

6    that counsel had not appeared in the Chapter 11 case.

7         In addition, Plymouth contends that it filed through

8    its counterclaim in the pending non-bankruptcy litigation an

9    informal proof of claim that should be recognized by the Court,

10   and clearly that that proof of claim was timely in that it was

11   well before -- the counterclaim was filed well before the

12   expiry of the administrative claims bar date.  The argument,

13   however, again runs afoul of case law in this district and the

14   majority of the cases, including at the circuit court level

15   elsewhere: that is, that the document giving rise to the

16   informal proof of claim was not filed in this Court, but

17   rather, instead, only in the courts in Michigan and in

18   Massachusetts.

19        I should note that the cases that deal with this issue

20   are generally dealing with pre-petition claims.  But given the

21   practice of treating claims and disputes related to missed bar

22   dates for administrative claims the same way as the courts

23   treat missed bar dates for pre-petition claims, I find those

24   claims to be analogous -- those cases, I'm sorry, to be

25   appropriate here, and for all intents and purposes on all

45

1    fours.  For the close analogy see -- between disputes in

2    respect of late administrative claims and disputes in respect

3    of late pre-petition claims, see In re PT-1 Communications Inc.

4    386 B.R. 402 (Bankr. E.D.N.Y. 2007).

5         The informal proof of claim rule, as far as I can see,

6    has always, in the Second Circuit and in the Southern District,

7    been applied to claims that were not filed in the form of a

8    proof of claim, but that were filed in the bankruptcy court,

9    that show an intention to make a demand for money from the

10   debtors' estate.  See In re G.L. Miller & Company Inc. 45 F.2d.

11   115 (2d Cir. 1930), as well as the statement of the four-factor

12   test -- factor one of which is that the claim, the documents

13   have been timely filed with the bankruptcy court and had become

14   part of the judicial record -- in In re Enron Corporation 370

15   B.R. 90 (Bankr. S.D.N.Y. 2007).

16        The rationale for this, again, is the collective

17   nature of a bankruptcy case and the need to put more than just

18   the debtor on notice of the existence of the claim.  See also

19   In re M.J. Waterman & Associates Inc. 227 F.3d. 604 (6th Cir.

20   2000), and In re Trans World Airlines Inc. 182 B.R. 102 (D.

21   Del. 1995), which was reversed in part and affirmed in part,

22   reversed on other grounds, at 96 F.3d. 687 (3d Cir. 1996).

23   Consequently, I don't believe that the complaint or the

24   counterclaim asserted in the Massachusetts District Court

25   action and the Michigan State Court action would constitute an

46

1   informal proof of claim.

2        Lastly, the movant contends that notice was improper

3   because it was delivered, albeit at the same address, to

4   Plymouth Rubber Company, Inc. as opposed to Plymouth Rubber

5   Company, LLC.  The change in name resulted from the Chapter 11

6   reorganization of Plymouth Rubber Company, Inc., which is the

7   entity that had filed the proof of claim against the debtor's

8   estate.  The emerged, reorganized debtor changed its name to

9   Plymouth Rubber Company, LLC as the successor to Plymouth

10  Rubber Company, Inc., and that was the entity, again at the

11  same address, with which the debtor contracted post-petition

12  under the contract that is now the subject of the dispute in

13  Michigan and Massachusetts.

14        Plymouth contends that because the notice was sent to

15  "Inc." as opposed to "LLC," albeit at the same address, that

16  notice was constitutionally deficient.  Under the facts before

17  me, however, I do not accept that argument.  As set forth in

18  Mr. Collins' affidavit and in the motion itself, Mr. Collins

19  was the sole employee of Plymouth Rubber after it had

20  determined to wind down its affairs.  He was retained by the

21  managing  - or manager for Plymouth Rubber, LLC as well as the

22  manager for other investments owned by the fund that owned the

23  debtor, Versa Capital Management.  And I believe that, as

24  evidenced by the fact that Versa opened the notice and that

25  Versa had hired Mr. Collins to look after LLC's affairs, and

47

1    that, therefore, he was acting as Versa's agent in this matter,

2    there was sufficient actual notice as of July 9th for due

3    process purposes.

4        The issue then comes down to whether the late filing

5    of the proof of administrative claim should be permitted under

6    Bankruptcy Rule 9006 for excusable neglect.  A claims bar date

7    is an important milestone in most Chapter 11 cases, and clearly

8    here the administrative claims bar date was an important

9    milestone in this case for the reasons that I've already

10   stated.  See First Fidelity Bank N.A. v. Hooker Investments

11   Inc.(In re Hooker Investments Inc.), 937 F.2d. 833, 840 (2d

12   Cir. 1991), in which the Court said, "A bar order does not

13   function merely as a procedural gauntlet, but as an integral

14   part of the reorganization process."  See also In re Musicland

15   Holding Corporation, 356 B.R. 603, 607 (Bankr. S.D.N.Y. 2006).

16       In most cases, the filing of a bar date order and the

17   existence of a bar date enables the debtor and other

18   constituents to determine whether the projected payments under

19   a plan will actually satisfy the parties' expectations; and, in

20   particular, an administrative claims bar date enables the

21   parties to determine whether the plan they're proposing is

22   feasible, in that administrative claims need to be paid in full

23   for a plan to be confirmed and consummated.

24       Nevertheless, the bankruptcy court may enlarge the

25   time for filing proofs of claim where the failure to act was

48

1    the result of excusable neglect, under Bankruptcy Rule

2    9006(b)(1).  The U.S. Supreme Court has adopted a two-part

3    framework for the movant to establish its excusable neglect

4    under Rule 9006(b)(1).  The movant has the burden in this

5    regard.  See Midland Cogeneration Venture Limited Partnership

6    v. Enron Corporation 419 F.3d. 115, 121 (2d Cir. 2005).

7         That framework was set forth in Pioneer Investment

8    Services Company v. Brunswick Associates Limited Partnership,

9    507 U.S. 380 (1993).  First a failure to file the proof of

10   claim must have been caused by neglect, which the Court defined

11   as inadvertence, mistake or carelessness, including intervening

12   circumstances beyond the party's control.  Id. at 388.  A

13   tactical, or simply a knowing, decision not to file a timely

14   claim will not suffice.

15        Second, the movant's neglect must have been excusable,

16   which is to be determined in the exercise of the Court's

17   equitable discretion taking into account all relevant

18   circumstances surrounding the failure to file a timely claim,

19   id. at 395, guided, however, by the following four factors:

20   "the danger of prejudice to the debtor; the length of the delay

21   and its potential impact on judicial proceedings; the reason

22   for the delay, including whether it was within the reasonable

23   control of the movant; and whether the movant acted in good

24   faith." Id.

25        The Second Circuit has taken a "hard line" when

49

1   applying the Pioneer factors to motions under Rule 9006(b)(1)

2   and other federal rules premised on excusable neglect.  Again,

3   see In re Enron Corporation 419 F.3d at 122.  Although all four

4   Pioneer factors should be considered, the Second Circuit places

5   the greatest weight on the reason for the delay and whether it

6   was in the movant's reasonable control.  In re Musicland

7   Holdings Corp. 356 B.R. at 607.

8           In the normal case, the movant has acted in good

9   faith, for example, and that's the case here.  Thus, the Second

10  Circuit said, "In the typical case, three of the Pioneer

11  factors, the length of the delay, the danger of prejudice and

12  the movant's good faith, usually weigh in favor of the party

13  seeking the extension.  We and other circuits have focused on

14  the third factor, the reason for the delay, including whether

15  it was within the reasonable control of the movant.  The

16  equities will rarely, if ever, favor a party who fails to

17  follow the clear dictates of a Court rule.  Where the rule is

18  entirely clear, we continue to expect that a party claiming

19  excusable neglect will, in the ordinary course, lose under the

20  Pioneer test."  In re Enron Corporation 419 F.3d at 122-23; see

21  also Canfield v. Van Atta Buick/GMC Truck Inc. 127 F.3d 248,

22  250-51(2d Cir. 1997).

23          Factors other than the reason for the delay usually

24  are relevant, therefore, only in close cases. In re Musicland

25  Holdings Corporation 356 B.R. at 608.  This is a somewhat close

50

1    case, in that I accept that Plymouth Rubber was clearly in

2    wind-down mode, where it only had one employee, who, consistent

3    with the very limited nature of its operations (which from

4    Mr. Collins' affidavit, which is uncontroverted, pertained

5    almost entirely to the two pending litigations) meant that

6    Mr. Collins checked the post office box only roughly once every

7    two weeks.  In addition, the time for the bar date notice was

8    shortened here from the normal time that would usually be

9    provided.  And, finally, there was potentially some room for

10   confusion, given that the notice was addressed to "Inc." as

11   opposed to "LLC."

12          On the other hand, I find it very hard to understand

13   why, given Mr. Collins' sole function, which appears to be to

14   monitor the mail, and the fact that he did so only roughly once

15   every two weeks, he did not open the mail, but instead simply

16   forwarded it to Mr. Schultz of Versa.  It would not seem to me

17   that he should have done that, given that Plymouth had

18   established the P.O. box that he checked as opposed to setting

19   up an automatic forwarding from Plymouth's address to Versa's.

20   It would appear, instead, to me appropriate for Mr. Collins to

21   have acted as someone who actually read the mail as opposed to

22   as a second mailman for delivery purposes.

23          So, clearly, it was within Plymouth's control to have

24   had notice of the bar date, at least by July 9th.  Moreover,

25   Plymouth did not file its claim until after the hearing on plan

51

1    modification, which it needn't have waited for.  It had the

2    claim or was aware of the late claim issue on July 16th, but,

3    nevertheless, waited two weeks thereafter to do so.  So, all

4    things being considered, it appears to me that while this is a

5    somewhat close case, the neglect here was largely within the

6    control of Plymouth.

7         Secondly, while the time between the bar date and the

8    filing of the claim was relatively short, I conclude that there

9    was prejudice to the debtor and other parties that resulted

10   from the delay.  If, in fact, the responsibility for paying

11   this administrative claim, to the extent it is allowed, rested

12   with either GM or the DIP lender acquisition vehicle, it would

13   appear to me, particularly given the balance of factors on

14   whether the delay was within Plymouth's control, that the lack

15   of prejudice to the estate would have argued for letting the

16   claim be filed late.  (The fact that some party receives a

17   smaller distribution or another third party pays more money as

18   a result of a claim being allowed to be filed late is not

19   sufficient prejudice, it is not the type of prejudice that the

20   courts have in mind when they evaluate the prejudice factor

21   under Pioneer.)

22        However, here, I believe there is prejudice to the

23   estate.  And also, again, some blame should be laid on Plymouth

24   for causing this prejudice by not filing the claim until after

25   the plan modification hearing.  As represented by Mr. Butler,

52

1    who clearly was involved in the preparation for the plan

2    modification hearing and the debtors' efforts to determine

3    whether, in fact, the MDA would result in a feasible plan, the

4    calculation of likely administrative claims against a surviving

5    debtor entity was a key factor in moving forward with the

6    hearing on July 29th.

7              It's been stated that a demand number under the

8    counterclaim by Plymouth is approximately twenty million

9    dollars.  That number would have had a significant impact on

10   the debtors' presentation of the modification of the plan on

11   July 29th and the Court's consideration of whether the plan is

12   feasible or was feasible, and would have, if asserted as a

13   recovery against the debtors -- the surviving debtors, as an

14   administrative claim it could have had a very significant

15   impact on feasibility.  Consequently, it would appear to me

16   that although the delay was short, it was very significant, and

17   that both the debtors as well as the other parties to the MDA,

18   and ultimately the Court, moved ahead in reliance on that claim

19   not being asserted.

20             So, that prejudice, as well as my conclusion that the

21   lateness of the claim, first in terms of its being verbally

22   asserted only on July 16th and then actually formally asserted

23   after the plan modification hearing, was largely, if not

24   entirely, within the control of Plymouth, leads me to deny

25   Plymouth's motion.

53

1        Obviously, to the extent that it is asserting a right

2   to setoff or recoupment, the lateness of the claim should not

3   matter, so that what this ruling effectively does is preclude

4   Plymouth from an affirmative recovery against the debtor's

5   estate as opposed to, again, a recoupment or setoff right in

6   the Michigan and Massachusetts litigation.

7           So Mr. Butler, you can submit an order to that effect.

8           MR. BUTLER:  Yes, Your Honor.

9           THE COURT:  Okay.

10          MR. BUTLER:  Your Honor, the last matter on the agenda

11  for today, matter number 8, is a motion for authority to apply

12  the claims objection procedures to administrative expense

13  claims, filed at docket number 18715.  Your Honor, by this

14  motion, what we're seeking to do is to use the claims

15  procedures that Your Honor is familiar with, that have been

16  running on a separate claims track for the last two and a half

17  years, to apply those to administrative claims.  And I think it

18  goes without saying that the -- and I think Your Honor has

19  observed in the past, that the procedures that have been

20  adopted by the Court here back on December 7th of 2006 at

21  docket number 6089, have served the debtors well and have dealt

22  with an expeditious treatment of almost 17,000 proofs of claim,

23  and through some 34 omnibus claims objections that addressed

24  over 14,000 of those claims, and have resulted in the

25  disallowance or withdrawal of over 10,000 of those claims.  So