1   UNITED STATES BANKRUPTCY COURT

2   FOR THE SOUTHERN DISTRICT OF NEW YORK

3   Case No. 05-44481-rdd

4   Adv. Case No. 09-01510-rdd

5   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6   In the Matter of:

7

8   DPH HOLDINGS CORP., ET AL. AND

9   DIP HOLDCO, LLP D/B/A DELPHI AUTOMOTIVE,

10

11          Debtors.

12   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

13

14   ACE AMERICAN INSURANCE COMPANY ET AL.

15          V.

16   DELPHI CORPORATION, ET AL.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18

19              U.S. Bankruptcy Court

20              300 Quarropas Street

21              White Plains, New York  10601

22

23              July 26, 2012

24              10:14 AM

25

Page 2

1    B E F O R E :

2    HON. ROBERT D. DRAIN

3    U.S. BANKRUPTCY JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1    Hearing re:  Notice of Agenda - Proposed Seventy-Seventh

2    Omnibus Hearing Agenda

3

4    Hearing re: Motion For Final Decree And Closing Chapter 11

5    Cases of Five Filing Debtors

6

7    Hearing re:  Motion by James Grai to Lift Stay

8

9    Hearing re: Adversary Proceeding 09-01510-rdd - Michigan

10   Defendant's Joint Motion to Stay Adversary Proceeding

11   Pending Appeal (related document(s) 23, 106)

12

13   Hearing re: Plaintiff's Emergency Motion for Preliminary

14   Injunction

15

16   Hearing re:  Michigan Defendants' Amended Motion to Dismiss

17

18   Hearing re:  Notice of Agenda - Proposed Fifth-Fifth Claims

19   Hearing Agenda

20

21

22

23

24

25   Transcribed by:  Pamela A. Skaw

```
 1   A P P E A R A N C E S :

 2

 3   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

 4        Attorneys for Reorganized Debtors

 5        155 North Wacker Drive

 6        Chicago, IL 60606-1720

 7

 8   BY:  NICK D. CAMPANARIO, ESQ.

 9        AL HOGAN, ESQ.

10        LOUIS S. CHIAPPETTA, ESQ. (TELEPHONIC APPEARANCE)

11

12   OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.

13        Attorney for Michigan Defendants

14        230 Park Avenue

15        New York, NY 10169

16

17   BY:  RICHARD G. HADDAD, ESQ.

18        MELANIE L. CYGANOWSKI, ESQ.

19

20   BUTZEL LONG

21        Attorney for

22        380 Madison Avenue, 22nd Floor

23        New York, NY 10017

24

25   BY:  MARIA CACERES-BONEAU, ESQ.
```

Page 5

```
 1   ALSTON & BIRD, LLP

 2        Co-Counsel for Ace Insurance Co.&

 3        Pacific Employers Insurance Co.

 4        90 Park Avenue

 5        New York, NY 10016

 6

 7   BY:  MARTIN G. BUNIN, ESQ.

 8

 9   DUANE MORRIS

10        Attorney for ACE & Pacific

11        30 South 17th Street

12        Philadelphia, PA 19101

13

14   BY:  LEWIS R. OLSHIN, ESQ.

15        WILLIAM C. HEUER, ESQ.

16

17   STATE OF MICHIGAN, BILL SCHUETTE, ATTORNEY GENERAL

18        Attorneys for

19        Labor Division, 5th Floor G. Mennen Williams Building

20        525 West Ottawa Street

21        Lansing, MI 46909

22

23   BY:  DENNIS J. RATERINK, ESQ.

24

25
```

Page 6

1    DAVIDSON, BREEN & DOUD, P.C.

2         Attorney for James Grai

3         3438 Lennon Road

4         Flint, MI 48507

5

6    BY:  MICHAEL P. DOUD, ESQ. (TELEPHONIC APPEARANCE)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              P R O C E E D I N G S

2              THE CLERK:  -- names for the records before they

3      speak.  Thank you.

4              THE COURT:  Please be seated.  Okay.  Good

5      morning.  In re: DPH Holdings.

6              MR. CAMPANARIO:  Good morning, Your Honor.  Nick

7      Campanario of Skadden on behalf of the reorganized debtors

8      and we're here for a claims hearing and an omnibus hearing.

9      With respect to claims, there are two matters on the agenda,

10     both of them relate to claims that were filed by Johnson

11     Controls or its affiliates.  Both of those matters have been

12     adjourned in light of settlement discussions between the

13     parties and so there's nothing to take care of today with

14     respect to claims.

15             THE COURT:  Okay.

16             MR. CAMPANARIO:  Moving to the omnibus hearing,

17     there are six matters on the agenda here, Your Honor.  The

18     first one is the fourth case closing motion.  This is an

19     uncontested case closing motion that was handled by Butzel

20     Long and Maria Caceres-Boneau of Butzel is here in the

21     courtroom if Your Honor has any questions about this motion.

22             THE COURT:  Okay.  I don't and I've seen no

23     opposition to it.  I understand that the U.S. Trustee has no

24     opposition to it?

25             U.S. TRUSTEE:  That's correct, Your Honor.

Page 8

1                    THE COURT:  You've spoken with them?

2                    U.S. TRUSTEE:  Yes.

3                    THE COURT:  Okay.  All right so you can submit the

4      order on that -- granting that motion.

5                    U.S. TRUSTEE:  Thank you.

6                    THE COURT:  Thanks.

7                    MR. CAMPANARIO:  The second matter is the

8      Plaintiff's emergency motion to shorten time and this motion

9      relates to scheduling issues in the adversary proceeding

10     that we're going to be talking about in a little bit.  This

11     motion was resolved through an agreed order that was entered

12     on July 18th.

13                   THE COURT:  Right.  Okay.

14                   MR. CAMPANARIO:  The third matter is the motion by

15     James Grai to lift stay.  As the Court is aware, we've been

16     trying to resolve this motion through a stipulation.  At an

17     earlier hearing we had told you that we were having some

18     trouble connecting with counsel for Mr. Grai and the others

19     Workers' Comp claimants who are covered by the motion --

20                   THE COURT:  Right.

21                   MR. CAMPANARIO:  -- That problem has been

22     resolved.  Those lines of communication have been open now

23     for the past several weeks and we hope that they remain open

24     going forward.

25                   In terms of progress on the stipulation itself,

1    the Michigan agencies have taken the position that they're

2    not willing to enter into a stipulation that will resolve

3    the motion.  Based on some discussions that happened earlier

4    this morning, it's my belief that there's been some

5    significant movement from that position and that they're now

6    willing to work with us and to sit down and finalize a

7    stipulation.  And so they've changed -- frankly, they've

8    changed their view on that.

9              THE COURT:  Okay.

10             MR. CAMPANARIO:  Now, I will tell you that we had

11   explored the possibility of entering into a stipulation

12   without their involvement and the insurers had raised some

13   real concerns about that approach.  So, from our

14   perspective, it's a very positive development that the

15   Michigan agencies are now willing to work with us on this.

16             THE COURT:  Okay.  Then remind me on this the

17   notion of the stipulation was to lift the stay with respect

18   to everyone that would not be subject to a Delphi policy or

19   claim?

20             MR. CAMPANARIO:  That's essentially it, Your

21   Honor.  Everyone that has a claim that doesn't implicate the

22   insurance policy questions that we have pending here.

23             THE COURT:  Right.  Okay.  All right.  Well, as I

24   said at the last hearing on this where you had -- or one of

25   your colleagues had reported that there was some delay in

Page 10

1    entering into a stipulation, I preferred it that you all

2    would just move ahead with the ones that are clear and not

3    wait for a stipulation.  But if you're close to entering one

4    and that will avoid any sort of confusion in the Michigan

5    proceedings and give clear guidance to the tribunal

6    determining the claims, that's, I guess, the best result but

7    I really wouldn't want to see this be delayed much longer.

8              MR. CAMPANARIO:  I believe that that's the case,

9    that we are close to that and if we're not, if something

10   goes awry in these discussions, we should know that in short

11   order.

12             THE COURT:  Okay.  All right.  Very well.  Does

13   anyone have anything more to say on this motion?  Okay.  And

14   I think Mr. Doud's on the phone?

15             MR. DOUD:  That is correct, Your Honor.

16             THE COURT:  Okay.  Good morning.

17             MR. DOUD:  Good morning, Your Honor.

18             THE COURT:  All right.  Okay.  So, I guess, we can

19   carry this then to the next omnibus --

20             MR. CAMPANARIO:  Thank you.

21             THE COURT:  -- hearing.

22             MR. CAMPANARIO:  The fourth matter is Michigan

23   defendants' joint motion to stay adversary proceeding and

24   this is the Michigan defendants' motion so I'll turn it over

25   to them.

Page 11

```
 1              THE COURT:  Okay.

 2              MS.  CYGANOWSKI:  Good morning, Your Honor.

 3   Melanie Cyganowski, Otterbourg, Steindler, Houston & Rosen.

 4   I rise today on behalf of the Michigan defendants.  I come

 5   here today and I am authorized, Your Honor, to present a

 6   proposal that we hope and trust will facilitate the many

 7   difficult issues that have been presented before this Court.

 8              To that end, I am prepared today, on behalf of the

 9   Michigan defendants to withdraw the motion seeking a stay of

10   this proceeding, in large part, to focus the issues upon

11   those that are presented by the plaintiffs' motion seeking

12   an injunction.

13              This Court, of course, has repeatedly said and

14   recognized that the pure 400 issue is not in front of this

15   Court, that it is not part of the adversary proceeding.  We

16   heard you.  We get it.  We have disagreed for all the

17   reasons we've previously stated but we recognize and respect

18   the holdings of this Court, the District Court and the

19   Second Circuit.  We respectfully submit that the very, very

20   narrow issue which is presented in the agency's letter to

21   the tribunal of July 11th; namely, whether Pacific and

22   Ace --

23              THE COURT:  Can I interrupt you?

24              MS. CYGANOWSKI:  Yeah.  Absolutely.

25              THE COURT:  I just want to do these in sequence.
```

1           MS. CYGANOWSKI:  All right.

2           THE COURT:  So should I take it then that the

3    joint motion for a stay pending appeal is withdrawn and

4    we're moving on to the preliminary injunction motion?

5           MS. CYGANOWSKI:  It is --

6           THE COURT:  Okay.

7           MS. CYGANOWSKI:  -- and I will not get into the

8    argument but what I was going to present to this Court is,

9    respectfully, the proposal that the question in Michigan as

10   well as the questions presented by the complaint, which, as

11   we all know, does not deal with the form, the pure 400

12   issue, proceed on a parallel course and that both

13   proceedings that --

14          THE COURT:  Okay.

15          MS. CYGANOWSKI:  -- they would not deal with the

16   sequencing but I'm prepared to let them argue their motion,

17   if that's what you would prefer.

18          THE COURT:  All right.  I think that we should

19   give them the chance to argue their motion --

20          MS. CYGANOWSKI:  That's fine.

21          THE COURT:  -- unless they agree with your view on

22   it but I will -- the record will reflect that the motion for

23   a stay pending appeal has been withdrawn.  So, we'll turn

24   then to the --

25          MS. CYGANOWSKI:  Thank you.

Page 13

1          THE COURT:  -- insurers' preliminary injunction

2     motion.

3          MR. HEUER:  Thank you, Your Honor.  William Heuer

4     of Duane Morris for ACE and Pacific.  Your Honor, I can go

5     through the facts briefly if you'd like or I can get right

6     to the relief sought in the motion.

7          THE COURT:  Well, could I -- I think that

8     notwithstanding my request that Ms. Cyganowski defer to you,

9     I had, what I think is probably the same question that she

10    was going to try to persuade me about and I wanted to ask

11    you about it.  Until now, the Michigan fund and Michigan

12    agency were reluctant to deal with the whole -- the panoply

13    of issues raised by the complaint and my suggestion that the

14    parties stipulate to what I refer to as the pure form 400

15    issue in my two earlier rulings because of their assertions

16    of sovereign immunity, lack of jurisdiction, abstention, et

17    cetera.

18         Those issues, I believe, have now been finally

19    decided.  So it would seem to me that at this point,

20    although I imagine it's frustrating to the insurers and DPH

21    that it -- well, at this point, after two and a half years,

22    the so-called pure form 400 issue is sort of front and

23    center just on -- without any overlay or precondition of

24    dealing with sovereign immunity and jurisdiction.

25         So, it's not a question of my asking the parties

1     to stipulate to something, to side-step those jurisdictional

2     sovereign immunity issues.  I think I could now enter an

3     order that would say that and be clear to the Michigan

4     tribunals that all questions in respect of the policies,

5     including reformation, et cetera, are enjoined except to the

6     extent that they're being decided in this Court and the only

7     issue that is not enjoined, as far as prosecution in

8     Michigan, is the assertion, by anyone, but including the

9     agency and the funds, of the -- of whether or not they

10    insurers are liable for any Workers' Compensation claim

11    solely based upon the fact that the insurers delivered the

12    form 400's and it entered into any form of insurance policy

13    naming any Delphi entity regardless whether it provides

14    coverage for the claim at issue which I view as the pure 400

15    issue.  So your defense, which is that the policies don't

16    apply, wouldn't be decided in the Michigan tribunals.

17           The only thing that would be decided is does the

18    mere fact of filing the form that has a Delphi entity named

19    in it mean that all Delphi entities -- or Workers'

20    Compensation claims against all Delphi entities in the State

21    of Michigan insured?

22           The Second Circuit has ruled and the Supreme Court

23    denied cert on the jurisdictional issue, so I think I can

24    issue that order without there, you know, there being any

25    dispute over that.  And, it seems to me, the terms of that

1    order could be made clear enough so that the issues with

2    respect to the policies and claims over against Delphi are

3    taken out of it.  It's a pretty limited consideration for

4    the Michigan tribunals but that's, you know, that's -- I

5    think that's a consideration that they can do without

6    effecting or giving rise to any claim against Delphi and we

7    would proceed with the issue as to whether the policies

8    apply to Delphi, to these claims, except for the excess

9    policy, I mean, the deductible policies apply to these

10   claims and the reformation issue here.

11          I guess that would mean that the claim, or the

12   defense, asserted by the Michigan defendants here wouldn't

13   be asserted here, i.e., doesn't matter, the form, they

14   signed the form.  But -- there was an earlier concern, which

15   I clearly articulated, that the Michigan defendants were

16   just putting a label on it, the 400 issue, when it really

17   wasn't the 400 issue but I could have dealt with that

18   concern then, but for the fact that the jurisdictional

19   issues were still front and center.  But I can deal with it

20   now by just issuing an order saying that it -- I don't care

21   what they think the issue means, my order will spell out

22   what it means.

23          Frankly, I think they probably agree with it

24   although there was a little, you know, putting on my lawyer

25   hat that the wording in their formulation of it, I guess,

Page 16

1    left open a little wiggle room and my formulation of it,

2    just now, is intended to avoid any wiggle room on that.  Are

3    you saying regardless of what the policy says, so there'd be

4    no consideration of the policy whatsoever.  So, what is

5    wrong with that approach, if anything?

6              MR. HEUER:  Your Honor, on the jurisdictional

7    issues, I agree they've been -- they're put to bed.  With

8    respect to the ongoing issue of the form 400 claim going

9    forward in Michigan, I still submit that the sequencing of

10   events is important.  It may not be that big of a hurdle.

11             I don't believe there's any dispute with the

12   debtors as to what the policies say.  Quite honestly, I

13   don't believe there's actually a dispute with the Michigan

14   defendants about what the policies provide.  They say what

15   they say.  So we may be able to move forward on summary

16   judgment very quickly.

17             THE COURT:  Well, I mean, it's scheduled for next

18   month, right?

19             MR. HEUER:  Correct.

20             THE COURT:  Okay, so --

21             MR. HEUER:  The sequencing is still important,

22   though, because in dealing with a form 400 issue, that form

23   is going to be before someone and no matter how you phrase

24   the issue that goes to them, they have to look at the form.

25   The form talks about a carrier.  It identifies that carrier

Page 17

1    by name, gives their address, gives dates of coverage,

2    identifies a specific policy number.  From the carrier's

3    perspective, those things are all relevant in deciding what

4    it means to deal with a form 400.

5              THE COURT:  But what I'm saying is that the order

6    would say -- just consider the fact that it merely says --

7    it identifies a policy and it's irrelevant for purposes of

8    this issue what the policy says.

9              MR. HEUER:  But if that's the limited issue that's

10   going to go to Michigan what --

11             THE COURT:    Right.

12             MR. HEUER:  -- I still think there's no harm in

13   proceeding with the summary judgment issue here first.

14             THE COURT:  Well, it may happen that way but I

15   think its -- I think --

16             MR. HEUER:  Your Honor, we've waited --

17             THE COURT:  -- there is a harm in having an appeal

18   of an injunction that might sidetrack this whole thing.  I

19   mean, again, there are a lot of people out there that are

20   waiting for their checks and I would like to just move on

21   with this and it seems to me that it highly likely that I'll

22   decide one way or another the summary judgment within a

23   month and there may be a ruling from a Michigan tribunal

24   before then but, again, it'll be on this very narrow issue

25   which is does merely filing the form that identifies a

Page 18

1   policy -- I mean that issue's going to come up anyway.

2   They've already said that issue's a defense of theirs, or a

3   counterclaim, however you want to phrase it, the agency and

4   the funds --

5         MR. HEUER:  Correct, Your Honor, but the flip is

6   also true.

7         THE COURT:  -- so it needs to be decided, I think.

8         MR. HEUER:  I don't disagree that it needs to be

9   decided.  My issue really is it's the sequencing --

10         THE COURT:  Okay.

11         MR. HEUER:  -- because as much as the Michigan

12  defendants have spent the last two and a half years

13  preserving their rights to defend how they see fit, and any

14  issue that goes before the Michigan tribunal, that policy's

15  going to be relevant.

16         THE COURT:  But it wouldn't be because of the very

17  terms of the injunction.  It would say that the only issue

18  is whether the mere filing of the form that lists a policy,

19  regardless of what the policy says, or who it covers, or

20  whether it covers any claim at all, gives rise to insurer

21  liability.

22         MR. HEUER:  But I would still submit that the

23  insurers would have an opportunity to defend that in full

24  and part of our defense on that, Your Honor, would be the

25  terms of the policy.  They make --

Page 19

1              THE COURT:  But why?

2              MR. HEUER:  -- us identify --

3              THE COURT:  I don't understand that.  You would

4    say to them this highlights our point exactly which is, you

5    know, the policy could say the insurers are never liable

6    until the insured pays $200 million and yet, although we

7    contracted to that, you're being asked to say -- you could

8    give a whole range of hypotheticals because it is just --

9    the terms of the policy are, for purposes of this order,

10   irrelevant.

11             MR. HEUER:  You Honor, I disagree because with the

12   way that that form is set up, the information it requires,

13   what it requires us to identify, the statutory scheme that

14   allows us to deny coverage, those things will come into

15   play.

16             THE COURT:  Well, you can certainly argue that

17   issue but it's just the terms of the policy itself would not

18   be at issue.

19             MR. HEUER:  Correct but a denial of coverage

20   implicates the terms of the policy.  So, I think, one way or

21   another we'll get there.

22             THE COURT:  Well --

23             MR. HEUER:  And, Your Honor, stepping back and

24   looking at this from a different --

25             THE COURT:  -- you got there under this proposed

```
 1    order, you would have to stop.

 2           MR. HEUER:  And that, quite frankly, is part of

 3    the problem, Your Honor.  We've waited two years because the

 4    Michigan defendants have chosen this strategy --

 5           THE COURT:  But, in the meantime, I'd be going

 6    forward so you're going to have your answer from me and

 7    that'll be, at least as far as the insurers are concerned,

 8    binding on the insurers, it'll be binding on Delphi and, or

 9    DPH, and it'll be binding on the Michigan defendants.

10           MR. HEUER:  Correct, Your Honor.  And I still

11    think that's a necessary first step, Your Honor.

12           THE COURT:  Okay, well, all right.

13           MR. HEUER:  We've waited the two and a half years,

14    Your Honor.  That motion's already partially briefed and

15    ready to go so, in asking that the Michigan folks wait just

16    that little bit extra of time, I don't think there's any

17    harm in that.

18           THE COURT:  Well, but again, you're asking for an

19    injunction here.  It's more than just whether there's harm

20    to anyone.  I mean, I think, that, first of all, if I did

21    issue that injunction, there's going to be an appeal from

22    it, right, on the pure 400 issue at least.  And they're

23    going to ask for a stay of my ruling because they're going

24    to suggest that the 400 issue, even on a pure basis, has

25    crept into the lawsuit.  I mean, let me ask either Ms.
```

Page 21

1   Cyganowski or Mr. Raterink, I take it that based on your

2   proposal and the opposition to the injunction motion, you

3   would not be raising the pure 400 issue in this adversary

4   proceeding?

5         MR. RATERINK:  Yes.

6         MS. CYGANOWSKI:  That's correct, Your Honor.

7         THE COURT:  Okay.  All right.

8         MR. HEUER:  So, Your Honor --

9         THE COURT:  So it's not going to get raised here.

10  I mean, your -- I forget whether it was you or your

11  colleague, already told me that you guys haven't raised it,

12  so it'd only come in as a defense --

13        MR. HEUER:  But, quite frankly, then we're at the

14  point where there's no defense toward the relief that we're

15  seeking for summary judgment --

16        THE COURT:  Well --

17        MR. HEUER:  -- and that's why I think it's very

18  easy --

19        THE COURT:  -- no, but that's -- I guess that's

20  the point I'm raising.  If I grant your motion for summary

21  judgment it is that the policies don't apply or that, even

22  if technically they apply, the policy should be reformed.

23  The whole point about the pure form 400 issue is that that

24  doesn't matter.  It doesn't matter what the policies say.

25  It's just that there is a policy so, to me, the summary

Page 22

1    judgment motion doesn't dispose of that issue.  I wouldn't

2    be dealing with that issue and --

3              MR. HEUER:  No, I don't think it would dispose of

4    that issue, Your Honor --

5              THE COURT:  Okay.

6              MR. HEUER:  -- but I think it would set the table

7    as to what those policies do say because I do believe --

8              THE COURT:  Well --

9              MR. HEUER:  -- that no matter how we phrase that

10   issue, there's a risk.  This question has been asked for two

11   and a half years now, Your Honor.

12             THE COURT:  Okay.

13             MR. HEUER:  So, at this point, to completely

14   reverse course, to me, when we're this close on summary

15   judgment --

16             THE COURT:  Well --

17             MR. HEUER:  let's have that procedure first.

18             THE COURT:  -- I guess I don't feel that I am

19   reversing course.  I understand that the Michigan agencies

20   are reversing course.

21             MR. HEUER:  That's what I meant, Your Honor.

22             THE COURT:  But that's because they believe, very

23   strongly, and I don't fault them for it, in their sovereign

24   immunity and jurisdictional issues and those have been

25   decided.  Until then, it seemed to me, that this could only

Page 23

```
 1    be done by a stipulation because those issues were still

 2    there.  If they weren't willing to waive those issues, which

 3    they weren't in the -- just for purposes of the stipulation,

 4    then, you know, so be it.  But, at this point, I don't --

 5    they could not go to Michigan and say, as I was worried they

 6    would do last March, this form 400 issue involves the

 7    policies and the issue of, you know, whether we can say that

 8    or not is an open issue because it's still on appeal.  I

 9    didn't want there to be that level of confusion but, I mean,

10    I think the order could be very clear now.  They can't away

11    with that.  And I think that, frankly, there was, you know,

12    there was some concern that that might happen if I granted

13    the relief that they asked for in March but I think you all

14    can police that now.  Does the debtor have view?

15              MR. CAMPANARIO:  Yes, if I could just make one

16    point.  As I think the insurers have said from the beginning

17    of the case, they do think that the policies are relevant to

18    whether they're liable under the forms 400 --

19              THE COURT:  Well, the --

20              MR. CAMPANIOR:  -- and so --

21              THE COURT:  -- order was meant to take that out

22    completely --

23              MR. CAMPANARIO:  Right and so I can --

24              THE COURT:  -- regardless of what the policies

25    say.
```

Page 24

1            MR. CAMPANARIO:  -- I can understand why, from

2     their perspective, if the issue is framed in terms of

3     relevance, the policies aren't relevant to the form 400

4     issue, that they might feel that that would prejudice their

5     defense and their position in Michigan.  What might make

6     more sense is to say that for purposes of deciding the form

7     400 issue, everyone should assume that the policies do not

8     provide coverage --

9            THE COURT:  Well, that's why --

10           MR. CAMPANARIO:  -- that may be a --

11           THE COURT:  --  you could say that.

12           MR. CAMPANARIO:  -- better way to isolate it.

13           THE COURT:  That's fine, too.  I mean, to me,

14     that's the same -- yes, that would make it even clearer.

15     Assume, without deciding, because it has not been decided --

16           MR. CAMPANARIO:  Right.

17           THE COURT:  -- that the policies do not provide

18     for coverage.  They're policies that name Delphi, in some

19     way, shape or form, and they have been issued by the

20     insurers, but assume that they do not provide coverage for

21     these claims.

22           MR. OLSHIN:  Your Honor --

23           THE COURT:  To me, that's the pure form 400 issue.

24           MR. OLSHIN:  Your Honor, Lou Olshin. I just wanted

25     to follow up on my colleague, Bill Heuer's comments to Your

1   Honor.  I guess what confounds me, quite frankly, is I've

2   been before Your Honor for, off and on, two and a half

3   years.  This is the first time we've ever heard anything

4   about some proposal.

5           THE COURT:  Well, no, I -- that was -- we spent

6   the first two hours of this case talking about whether --

7           MR. OLSHIN:  Well --

8           THE COURT:  -- there could be such a proposal.

9           MR. OLSHIN:  -- I'm saying it's the first time I

10  ever heard anyone from Michigan --

11          THE COURT:  Oh, but --

12          MR. OLSHIN:  -- we're willing to entertain a

13  proposal.

14          THE COURT:  -- but what I'm saying is, leave aside

15  whether Ms. Cyganowski -- let's assume Ms. Cynganowski never

16  made this proposal.

17          MR. OLSHIN:  I understand.

18          THE COURT:  Just assume it came from me.

19          MR. OLSHIN:  Right. My --

20          THE COURT:  For the first time in the case,

21  because the summary -- because the sovereign immunity issues

22  are finally decided, I could issue an order.  I don't have

23  to have you guys negotiate a stipulation about what's going

24  to be in front of Michigan tribunals.

25          MR. OLSHIN:  Well, I think --

1            THE COURT:  I could issue it.

2            MR. OLSHIN:  I think the footnote in the Circuit's

3    decision said they hadn't decided one way or another --

4            THE COURT:  Oh, I know --

5            MR. OLSHIN:  -- whether that applies.

6            THE COURT:  -- but I -- but that was always my

7    view --

8            MR. OLSHIN:  But more fundamentally --

9            THE COURT:  -- from the start of the case.

10           MR. OLSHIN:  -- Your Honor, I think the issue is

11   this form says it's notice of the issuance of a policy.

12           THE COURT:  Right.

13           MR. OLSHIN:  The statute itself confirms that.

14           THE COURT:  Right.

15           MR. OLSHIN:  Our position has been that the

16   cleanest way to get to the point you're talking about, Your

17   Honor, is that they would consent to the motion for summary

18   judgment and say there's no coverage.

19           THE COURT:  Well --

20           MR. OLSHIN:  Now, isn't that then the predicate

21   Your Honor's talking about?

22           THE COURT:  I can't force them to do that.  I

23   mean, and I don't see how my conditioning their being able

24   to go forward in Michigan should be dependent upon them

25   waiving a right.

Page 27

1          MR. OLSHIN:  Well, they've, in the context of the

2     amended motion to dismiss, have actually asked Your Honor to

3     look at the policies and --

4          THE COURT:  Oh, sure.

5          MR. OLSHIN:  -- make a rule.

6          THE COURT:  And I will.

7          MR. OLSHIN:  And so, I think, the logic, since

8     they really didn't attach anything to support that position,

9     is that that amended motion to dismiss issue be consolidated

10    with the motion for summary judgment.  Your Honor decide

11    that and then let's go from there.

12         THE COURT:  All right, well, okay.  To me this is

13    more of, like, a case management issue than a true

14    injunction issue and, again, my concern, and I appreciate

15    this is not the same concern that the insurers have, is that

16    the issues do get decided promptly so that these people get

17    their money.

18         MR. OLSHIN:  Well, I think we certainly --

19         THE COURT:  And by these people, I don't mean the

20    State of Michigan --

21         MR. OLSHIN:  I understand.

22         THE COURT:  -- or the insurers keeping their

23    money.  I mean the people that have --

24         MR. OLSHIN:  I --

25         THE COURT:  -- Workers' Compensation claims.

1           MR. OLSHIN:  Your Honor, I know, I -- we're all

2     working toward the same goal which was why two and a half

3     years ago we asked permission --

4           THE COURT:  All right.

5           MR. OLSHIN:  -- to file an expedited motion for --

6           THE COURT:  Okay.

7           MR. OLSHIN:  -- summary judgment --

8           THE COURT:  But I --

9           MR. OLSHIN:  -- which Your Honor allowed.

10          THE COURT:  -- so, but let's just take the case

11    management point because I can also issue injunctions

12    because I'm managing the case.  But it's a, you know, it's a

13    different -- I think it's a different level of inquiry than

14    protecting -- "protecting" the Court's jurisdiction which, I

15    think is a, you know, it's a lot easier for me to issue an

16    injunction when I'm protecting the Court's jurisdiction than

17    to issue an injunction just because it's efficient.

18          Again, the issue -- the pure form 400 issue is not

19    really in front of me in this litigation unless the Michigan

20    defendants want to make it so.  I mean, you all are on

21    record and it's clear from the complaint that pure issue

22    isn't here.  I recognized it, Judge Marrero recognized it,

23    the Second Circuit recognized it.  If it is properly

24    defined, as I think we've just talked about it on the

25    record, it needn't be here.  Now the issue is does it really

1    make sense, since it's not here, to hold off on it until a

2    ruling on what is here.

3              MR. OLSHIN:  Can I --

4              THE COURT:  And, to my mind, it's not like how I

5    rule here is necessarily dispositive on that issue that's

6    not in front of me.  It isn't.  It's really a separate issue

7    --

8              MR. OLSHIN:  My concern --

9              THE COURT:  -- as properly defined and I think

10   we've properly defined it.

11             MR. OLSHIN:  My concern, Your Honor, is what we've

12   all stated but, in addition to that, one of the statements

13   that counsel for the Michigan defendants has said throughout

14   the course of these conversations is that they lack control

15   over magistrates, they lack control over claimants' counsel.

16   So one could foresee, quite frankly, a situation where if

17   you tried to tee up some limitation, a claimant counsel

18   would say, well, I'm not going to litigate the case based on

19   that basis because there's been no decision that there isn't

20   a policy.  I want to raise the policy as another avenue to

21   collect my workers' compensation benefits.

22             THE COURT:  Well, I -- why isn't that barred by

23   the plan injunction, in the first place?  I mean, they're

24   basically asserting a claim against the debtor, at that

25   point, through you all.

Page 30

1          MR. OLSHIN:  Well, that's one of the reasons we've

2     asked for the injunction, but then the question then becomes

3     whether --

4          THE COURT:  Well, I mean, why -- but again, this

5     is in the context of my issuing an injunction -- what I'm

6     proposing would be an injunction in furtherance of the plan

7     injunction, which identifies the policy issues as issues

8     that are encompassed in the plan injunction and this would

9     prohibit determination of those policy issues and, frankly,

10    any such determination would be a violation of the

11    injunction.  It's be null and void.

12         MR. OLSHIN:  But isn't the cleaner approach to

13    rule on the motion for summary judgment --

14         THE COURT:  First.

15         MR. OLSHIN:  -- and find that there's no policies

16    --

17         THE COURT:  Well, frankly --

18         MR. OLSHIN:  -- and they you're left with what --

19         THE COURT:  -- if you have -- I don't know.  I

20    mean, are you amenable to adjourning this for a month so

21    that that can happen?

22         MS. CYGANOWSKI:  No.  I mean, the reason --

23         THE COURT:  Okay.

24         MS. CYGANOWSKI:  -- the short answer is, with all

25    due respect to the fact that everyone's arguing that the

Page 31

1    motion for summary judgment will be ripe in a month, even if

2    this Court were to consolidate the motion to dismiss with

3    the MSJ, which we would consent to, that the consolidation

4    of the two is acceptable to the Michigan defendants, but,

5    perhaps you rule on our motion to dismiss.  Perhaps this

6    Court decides to not grant our motion.  In that event, we

7    have the right to answer.  I know our -- my learned

8    colleagues argued before this Court that the MSJ is a

9    straight matter of law, there's no --

10            THE COURT:  Right.

11            MS. CYGANOWSKI:  -- facts.  But, obviously,

12    there's --

13            THE COURT:  Well, certainly --

14            MS. CYGANOWSKI:  -- reformation.

15            THE COURT:  -- reformation would be --

16            MS. CYGANOWSKI:  Reformation --

17            THE COURT:  Right.

18            MS. CYGANOWSKI:  -- is one nest --

19            THE COURT:   Arguably.

20            MS. CYGANOWSKI:  -- which we'd want discovery,

21    even if it's on an expedited schedule, Your Honor, you know,

22    I don't believe that the schedule would be so efficient and

23    expeditious that it would be done in 30 days.

24            THE COURT:  Okay.

25            MR. HEUER:  So, Your Honor, where we are is that

Page 32

1   no matter what we do, we're going to be litigating with the

2   Michigan defendants and they won't appeal one issue out of

3   this.

4          THE COURT:  But the pure 400 issue isn't here.  So

5   you're bound to have two appeals.

6          MR. HEUER:  But it is here in that they're going

7   to raise it in opposition to the motion for summary

8   judgment.  They're trying to peel the ability to rule on it

9   away from you.  If they were willing to wait and let the

10  policies be ruled on first, that's one thing.

11         But we've just heard.  They're going to litigate

12  that to death.

13         MS. CYGANOWSKI:  No, Your Honor, we just said, a

14  few minutes ago in answer to your question, that the rule

15  400 issue is not before this Court.

16         THE COURT:  And you wouldn't put it before the

17  Court?  I mean, Mr. Raterink and you both said that.

18         MS. CYGANOWSKI:  Yes.

19         THE COURT:  All right.

20         MS. CYGANOWSKI:  We did.  We said that, yes.

21         THE COURT:  Right.  So, I --

22         MR. OLSHIN:  I think it comes back to, Your Honor,

23  is the attempt to define a concept as some sort of a pure

24  theory, which under Michigan's statutes, isn't a pure

25  theory.  It's talking about a policy --

1          THE COURT:  Well, that's what you say to the

2     Michigan tribunal.  It's not a pure theory.

3          MR. OLSHIN:  Well, your --

4          THE COURT:  But all that the injunction would say

5     is that they -- if you're wrong on that, they could decide

6     it.

7          MR. OLSHIN:  Well, I don't know how, Your Honor,

8     would enter an injunction that the carriers can't raise

9     defenses in a Michigan tribunal, which is attempting to

10    litigate what the carriers' liability is.  Because that's

11    what you seem to be saying.

12         THE COURT:  But it's a condition to granting the

13    carriers own relief, which is an injunction.

14         MR. OLSHIN:  I don't think it's a condition to

15    granting our relief.  You're basically saying a proceeding,

16    that the Michigan defendants decided to tee up on their own,

17    is now going to be constructed, in some way, to limit rights

18    and defenses that a carrier may have to a claim for

19    coverage.

20         THE COURT:  Right.

21         MR. OLSHIN:  When the reality of this situation is

22    that if you really wanted to proceed on that basis, it would

23    seem, logically, that there would be a decision that the

24    policies didn't apply and then one could go off, if one

25    intended to litigate that  --

Page 34

1              THE COURT:  But the order would say that, assume

2      the policies don't apply.

3              MR. OLSHIN:  Well, but you can't assume the

4      policies don't apply because --

5              THE COURT:  Well, sure, people --

6              MS. OLSHIN:  -- the policies do.

7              THE COURT:  But --

8              MR. OLSHIN:  And that's why we're here.

9              THE CDOURT:  -- Well, that's -- and if that's the

10     answer, that the Michigan tribunal concludes, which is that

11     you have to look at the policies, then we're here.  If the

12     Michigan tribunal, to the contrary, says you don't have to

13     look at the policies, it's just signing the darn form, then

14     we're not here.

15             MR. OLSHIN:  So, then we'll spend years in

16     Michigan litigating an issue when the policy --

17             THE COURT:  Well, it's true --

18             MR. OLSHIN:  -- issue itself could be --

19             THE COURT:  -- you would --

20             MR. OLSHIN:  -- resolved --

21             THE COURT:  -- but --

22             MR. OLSHIN:  -- right here.

23             THE COURT:  -- on the other hand, at that point,

24     it's really between you all and Michigan, as the debtors --

25             MR. OLSHIN:   Well, maybe not.

1          THE COURT:  -- aren't part of --

2          MR. OLSHIN:  Because, at some point, some

3    appellate court may say Michigan, you're wrong, there is no

4    pure 400 theory, because there is no case law in Michigan

5    that even establishes --

6          THE COURT:  Well --

7          MR. OLSHIN:  -- that concept --

8          THE COURT:  -- all right.  But that would -- then

9    you'd be spending the same years here.

10         MR. OLSHIN:  Then we're back talking to the debtor

11   about the policy concept --

12         THE COURT:  Right.

13         MR. OLSHIN:  -- when, if you got rid of the policy

14   concept, at least we'd have one issue resolved.

15         THE COURT:  Well, we will get rid of the policy

16   concept, one way or the other.  All right. Is there any --

17         MS. CYGANOWSKI:  Just one comment, Your Honor, if

18   I might, just to remind the Court, in 2009, when the debtor

19   filed its answer to the complaint, the debtor was quite

20   clear in stating that if Ace and/or Pacific are liable for

21   some or all of the underlying self-insured, Michigan

22   workers' comp claims, based on their actions in filing the

23   insurance notices under the Michigan Act, neither Ace nor

24   Pacific has a right of recovery against DPH in this estate.

25   So, you know, with -- I disagree with counsel that they're

Page 36

1    intertwined.  The Michigan form 400 issue deals with the

2    filing of the notices, not a raise, not before this Court,

3    and, as the debtor itself conceded, if the insurers were to

4    be found liable in the form 400 proceedings, it would not

5    inure, in any way, to the detriment of this estate.

6              MR. OLSHIN:  That may be the debtor's position but

7    we've never got to that point --

8              THE COURT:  Correct.

9              MR. OLSHIN:  -- and certainly the issue that we've

10   attempted to resolve for two and a half years is whether

11   there is, in fact, a policy that, you know, governs these

12   obligations.  The other thing that goes unmentioned, and I

13   don't know how you'd deal with this, is that it's pretty

14   clear from the record we established that there are actually

15   amended form 400s which are not even mentioned in the

16   Michigan letter and, again, that would be a defense that Ace

17   Pacific would raise with respect to that form, which is the

18   other reason why --

19             THE COURT:  What that you've filed an amended

20   form?

21             MR. OLSHIN:  Yes, Your Honor.

22             THE COURT:  Well, okay, that -- but, again, that's

23   part of the pure issue.

24             MR. OLSHIN:  Well, it's not --

25             THE COURT:  You're certainly --

1              MR. OLSHIN:  -- the way they've --

2              THE COURT:  -- free to raise that defense.

3              MR. OLSHIN:  Well, I think that's part of my

4    concern here is that the real defense that could be resolved

5    here is there is or there isn't a policy.

6              THE COURT:  Well, that'll be resolved -- I think,

7    I mean, at least according to you all, it'll be resolved

8    next month.  Now, maybe the insurers will defeat your

9    summary judgment motion and it'll go on.  But it'll be

10   resolved as fast as I can resolve it.

11             MR. OLSHIN:  You meant the Michigan defendants, I

12   believe, Your Honor.

13             THE COURT:  What did I say?

14             MR. OLSHN:  You said insurers.

15             THE COURT:  No, the Michigan defendants will --

16             MR. OLSHIN:  We hope we don't defeat ourselves.

17             THE COURT:  Yeah, if the Michigan defendants

18   prevail against your summary judgment motion, it may go on

19   for some time --

20             MR. OLSHIN:  So, I mean, that just sort of --

21             THE COURT:  But it's not a huge -- even then it's

22   not a lot of discovery.  It's a reformation issue and

23   reading documents and, you know --

24             MR. OLSHIN:  Your Honor, we already received a

25   FOIA request where there's communications between the agency

Page 38

1   and people from Delphi, which acknowledged that fact that

2   Delphi was self-insured.  So, if they want that information

3   that the State already provided us, we'll give it to them

4   next week.

5              THE COURT:  Right.  So I think that issue will be

6   decided soon.  Anyway --

7              MR. CAMPANARIO:  Your Honor, to the extent that

8   your proposal is meant to avoid a potential appeal by

9   Michigan that would, you know, take place in connection with

10  a broader injunction --

11             THE COURT:  Right.

12             MR. CAMPANARIO:  -- and any potential State

13  pending appeal associated with that, I think it'd be

14  interesting to hear their perspective --

15             THE COURT:  Okay.

16             MR. CAMPANARIO:  -- on what their intentions would

17  be --

18             THE COURT:  All right.  I mean --

19             MR. CAMPANARIO:  in that --

20             THE COURT:  -- other than my -- at Delphi's, DPH's

21  suggestion, which I think was a good one, defining the issue

22  as assume that the policies don't apply, on their face, is

23  this -- I mean, that's consistent with your proposal, too,

24  isn't it?  It's the same thing.  You take the policies out

25  of the determination.

Page 39

1          MS. CYGANOWSKI:  That is correct.  I mean, the

2    only modest suggestion would be in your proposal, at one

3    point, you have indicated the phrase, or the provision,

4    assuming that the policies did not apply, and I would just

5    respectfully suggest regardless of whether they apply or

6    something that's more neutral.

7          THE COURT:  Well, without --

8          MS. CYGANOWSKI:  But it doesn't --

9          THE COURT:  -- prejudice to any --

10          MS. CYGANOWSKI:  Right --

11          THE COURT:  -- party's position --

12          MS. CYGANOWSKI: -- with --

13          THE COURT:  -- in this adversary proceeding.

14          MS. CYGANOWSKI:  -- right.  We are not going to

15    argue --

16          THE COURT:  Yeah.

17          MS. CYGANOWSKI:  -- with respect to that but -- to

18    tilt it to say assuming --

19          THE COURT:  Well, I wouldn't want there to be any

20    implication from my order that anyone had waived the

21    argument that the policies do apply.  It's just that that --

22          MS. CYGANOWSKI:  Correct.

23          THE COURT:  -- issue would not be before the

24    Michigan Court, it would be here.

25          MS. CYGANOWSKI:  We absolutely agree with that,

1   Your Honor.

2           THE COURT:  So this is not an order you would

3   appeal from?

4           MS. CYGANOWSKI:  Correct.  I mean, obviously --

5           THE COURT:  Okay.

6           MS. CYGANOWSKI:  -- we'd like to see it but we

7   have no --

8           THE COURT:  Well, of course.

9           MS. CYGANOWSKI:  -- intention of appealing it.

10          THE COURT:  Right.  If it's consistent with what

11  we've laid out on the record.

12          MS. CYGANOWSKI:  That's correct.

13          THE COURT:  Okay.  All right.  Okay.  All right.

14          MR. OLSHIN:  Your Honor, again, I just want to

15  reinforce that trying to craft something that removes the

16  policies from this case is an unmanageable, unworkable task.

17          THE COURT:  You guys made the proposal to the

18  insurers, I mean, to the Michigan defendants and they

19  rejected it so --

20          MR. OLSHIN:  We never made the proposal.

21          THE COURT:  Well, someone did.

22          MR. OLSHIN:  We never got to the point of making a

23  proposal.

24          THE COURT:  Someone did.  Maybe the debtors did.

25          MR. OLSHIN:  We made a proposal that said

1    stipulate to our motion for summary judgment.

2              THE COURT:  All right.

3              MR. OLSHIN:  And --

4              THE COURT:  Well, I could see why they rejected

5    that one.

6              MR. OLSHIN:  -- they rejected that but they did

7    more than that.  They've already told the Court previously,

8    most recently on March the 22nd, that they wouldn't

9    stipulate --

10             THE COURT:  All right.

11             MR. OLSHIN:  -- and made a record --

12             THE COURT:  But the --

13             MR. OLSHIN:  -- that said --

14             THE COURT:  -- I understand that but the

15   difference between then and now is that I believed, given

16   the pending appeal, I could not impose upon them what I

17   could not impose upon -- although they've agreed to it, at

18   this point, because they've lost on the pending appeal.  But

19   that's the difference.  I mean, believe me, I seriously

20   considered suggesting that Mr. Raterink, and his colleague,

21   that I don't care what reservations you're giving, I'll just

22   do it.  But that wouldn't have made any sense at that point

23   because there were pending appeals.  But I could do it now.

24             MR. OLSHIN:  Well, I guess, you --

25             THE COURT:  So, you know --

1           MR. OLSHIN:  -- we'll have to --

2           THE COURT:  -- they can't hold their hands behind

3    their back, you know, with crosses and say, you know, it's

4    -- as long as the label says form 400, we can say whatever

5    we want because the order will spell out what the form 400

6    issue is.

7           MR. OLSHIN:  And then we would have to police to

8    make sure, in fact --

9           THE COURT:  You would.

10           MR. OLSHIN:  -- our defenses are preserved?

11           THE COURT:  Yeah.  But that's easy enough to do.

12           MR. OLSHIN:  Well, again, I guess --

13           THE COURT:  I think it is.

14           MR. OLSHIN:  to us, based upon the statute, and

15    what's involved here, and the fact that what you're

16    basically asking the insurers to do is walk into a situation

17    where we conceding liability --

18           THE COURT:  No, you're not --

19           MR. OLSHIN:  -- which we're --

20           THE COURT:  -- because that --

21           MR. OLSHIN:  -- unwilling --

22           THE COURT:  -- no, just the opposite --

23           MR. OLSHIN:  -- to do.

24           THE COURT:  -- it would concede that you don't

25    have liability under the policies.  It's just the opposite

Page 43

1    and that issue, whether you have liability under the policy

2    or not, is decided here, which you've always wanted.

3           So, to me, it is, and I think you're right to

4    raise it, it is a question of managing litigation.  But, all

5    things considered, given the jurisdictional issues, which it

6    wasn't just the Second Circuit, and, you know, it was -- in

7    fact, I recognized it more than the Second Circuit.  The

8    Second Circuit, you know, very correctly said this issue

9    isn't in front of us --

10          MR. OLSHIN:  Well, in the context of --

11          THE COURT:  -- but the form 400 is.

12          MR. OLSHIN:  -- the motion to dismiss.

13          THE COURT:  Right.

14          MR. OLSHIN:  That's correct.

15          THE COURT:  The form 400 issue isn't in front of

16   us.  I understand that.  But --

17          MR. OLSHIN:  Your Honor --

18          THE COURT:  -- it was really something I

19   considered and tried to carve out of the case and I think it

20   is properly carved out of the case, the adversary

21   proceeding, before me, that is, in this way.  So, it seems

22   to me that such an injunction with such a condition in it is

23   appropriate here, all things considered.  If these were not

24   governmental agencies, if they were not, obviously, and I

25   don't fault them for this so willing to pursue their rights,

1    you know, up to petitions for certiorari, it might be a

2    little different, you know, if we could all do it here, I

3    think that would be more efficient, probably.  But they

4    don't have to agree to that and weighing their ability to

5    delay that ultimate determination, it would seem to me that

6    taking this issue out is actually, ultimately more efficient

7    than not.

8            MR. OLSHIN:  Although they were the ones who

9    interjected the issue into the case to begin with.

10           THE COURT:  Well, yes, that's true.  I understand.

11           MR. OLSHIN:  And we've been attempting to

12   determine whether there's any liability under the policies,

13   which clearly is property of the State which clearly could

14   have jurisdiction over it --

15           THE COURT:  Right.

16           MR. OLSHIN:  -- which clearly --

17           THE COURT:  And then --

18           MR. OLSHIN:  -- raises our concerns --

19           THE COURT:  -- I'm keeping that and I'm enjoining

20   anyone else from raising that issue anywhere other than

21   here.  So can I -- I would like the debtor, or DPH, to draft

22   this injunction.

23           MR. CAMPANARIO:  We can take a shot, Your Honor.

24   I just want to add that we continue to think that the best

25   way to isolate the pure form 400 issue and the strongest way

1   to protect your jurisdiction over the policies would be to

2   require everyone to assume --

3          THE COURT:  Yeah.  No -- and I agree with that.  I

4   think that's the best way to phrase it.

5          MR. CAMPANARIO:  And if you think about it, that's

6   the only --

7          THE COURT:  And it should say without prejudice to

8   the parties' positions in this adversary proceeding.

9          MR. CAMPANARIO:  Right.

10          THE COURT:  In front of me.

11          MR. CAMPANARIO:  And so I think, from Michigan's

12   side, they were comfortable not appealing from an --

13          THE COURT:  Right.

14          MR. CAMPANARIO:  -- order that had the regardless

15   of whether the policies provide coverage language --

16          THE COURT:  No, I --

17          MR. CAMPANARIO:  I don't know if --

18          THE COURT:  -- I said consistent with what -- I've

19   agreed with you --

20          MR. CAMPANARIO:  Okay.

21          THE COURT:  -- on that point.  And that's right,

22   as long as you're not waiving rights here, you're okay with

23   that, right?

24          MR. RATERINK:  Just for clarification, Your Honor,

25   you're talking about the language that Mr. Campanario --

```
 1              THE COURT:  Yes.

 2              MR. RATERINK:  -- first suggested --

 3              THE COURT:  Yes.

 4              MR. RATERINK:  -- talking about an assumption --

 5              THE COURT:  Right.

 6              MR. RATERINK:  -- that the policies don't --

 7              THE COURT:  Solely for purposes of the Michigan

 8    tribunals issue.

 9              MR. RATERINK:  -- and not --

10              THE COURT:  Not here.

11              MR. RATERINK:  -- implicating any rights in the

12    adversary proceeding.

13              THE COURT:  Right.

14              UNIDENTIFIED SPEAKER:  State your name, please.

15              MR. RATERINK:  I'm sorry.  Dennis Raterink.  Can

16    we take  --

17              THE COURT:  Sure.

18              MR. RATERINK:  -- a minute on that?

19              THE COURT:  RIGHT.

20         (Pause 00:50:00 - 00:50:29)

21              MR. HADDAD:  Your Honor, Richard Haddad from

22    Otterbourg, Steindler, Houston & Rosen, for the Michigan

23    agency.  We assume that, when Your Honor asked the debtor's

24    counsel, to draft an order that the order --

25              THE COURT:  He'll circulate it.
```

1           MR. HADDAD:  -- will be circulated and --

2           THE COURT:  Absolutely.

3           MR. HADDAD:  -- to the extent, if there is an

4      issue with respect to --

5           THE COURT:  Then you can raise it.

6           MR. HADDAD:  -- some words, we can raise it --

7           THE COURT:  Then you can raise it.

8           MR. HADDAD:  -- and Your Honor will --

9           THE COURT:  Yes. Yeah.  But let me --

10          MR. HADDAD:  -- address it.

11          THE COURT:  But generally that concept is okay.

12          MR. HADDAD:  we hear, yes.--

13          THE COURT:  All right.

14          MR. HADDAD:  We hear it but I --

15          THE COURT:  Okay, so --

16          MR. HADDAD:  -- counsel indicated --

17          THE COURT:  -- so --

18          MR. HADDAD:  -- it depends on the words and we

19      understand.

20          THE COURT:  -- I, just to lay it -- my concept of

21      this order, then, is that in furtherance of the plan

22      injunction, the Court is issuing this injunction enjoining

23      all litigation in respect of the claims against DPH, and/or

24      the insurers, to the extent that the claims assert liability

25      against the insurers for actions against -- for claims

1    against DPH.

2            I guess you should put in a qualification, except

3    as acknowledged by the insurers, because you have

4    acknowledged the retention policies.

5            MR. OLSHIN:  We've acknowledged the retention

6    policies but they don't provide coverage for --

7            THE COURT:  No, I understand, just to the extent

8    acknowledged.  You know, there are --

9            MR. OLSHIN:  -- subject to their terms and

10    conditions --

11            THE COURT:  Right --

12            MR. OLSHIN:  -- and

13            THE COURT:  -- subject to their terms and

14    conditions -- yeah, exactly.

15            MR. OLSHIN:  amounts of self-insured retention.

16            THE COURT:  Right.  Exactly.  With one exception,

17    and the exception is that the issue of the insurers

18    liability for such claims pending now or that can in the

19    future be raised in the Michigan tribunal is not enjoined to

20    the extent that, and only to the extent that, it is

21    contended that the insurers are liable for such claims

22    solely due to the fact that they delivered form 400s in

23    respect of a policy issued to a Delphi entity assuming that

24    that policy did not provide for coverage of the claim,

25    without prejudice to the termination of coverage issue in

1    this adversary proceeding and any of the other issues in

2    this adversary proceeding.

3           So, it's clear that that condition, or that

4    assumption, is not binding on anyone outside of the

5    determination by the Michigan tribunal.  To me, that's the

6    pure form 400 issue that I'd always thought could be carved

7    out of this case, if I had the power to do it and, based on

8    my ruling on the motion to dismiss, now being a final order,

9    I do have the power to do it, so, I believe that that order

10   can be clearly enforced now.

11          If you want to put something in to the effect that

12   any attempts to assert a claim against DPH, without

13   limitation, any attempts to assert claims against DPH

14   continue to be enjoined by the plan injunction.  And that's

15   really not for anyone's benefit here.  That's for the

16   benefit of, I guess, the Michigan tribunal and any

17   individual workers' comp claimants so they don't have to go

18   and review the plan injunction again.  They'll see it in

19   this order.  But that's really belt and suspenders.  It's

20   not a new injunction.

21          And when I see a form 400 -- 500, you're certainly

22   free to raise, you know, that we fixed the form 400.

23          MR. OLSHIN:  Well, Your Honor, I have to reserve

24   my client's rights as to this wording because it sort of

25   puts the rabbit into the hat, in some respect, because it

1        talks about delivered form 400s in respect to a policy,

2        assuming the policy didn't provide coverage --

3                    THE COURT:  Right.

4                    MR. OLSHIN:  -- yet, we're talking about a policy

5        that we're taking the position doesn't exist with respect to

6        providing any coverage.

7                    THE COURT:  Well, I mean, there's a policy, right?

8        It -- the form 400 does name a policy.

9                    MR. OLSHIN:  And that's the reason why we believe

10       these two issues can't be separated.

11                   THE COURT:  Well, but I just separated them.

12                   MR. OLSHIN:  Well, again, we're respectfully, I

13       think --

14                   THE COURT:  You win.

15                   MR. OLSHIN:  -- you know our position.

16                   THE COURT:  As far as the, let me put, I guess, as

17       succinctly as possible.  As far as the Michigan tribunal is

18       concerned, you've already won on the coverage issue on that

19       issue.  You've already won on that issue.  You haven't won

20       here, but you've won there.  So, you know, you don't even

21       have to brief that other than to say, you know, we just

22       reiterate that as far as this litigation is concerned, all

23       the parties must assume that we've already won on that

24       issue.

25                   MR. OLSHIN:  Well, I know you disagree with the

Page 51

1    point I've made previously but it seems logically and a

2    matter of law that it would be a lot cleaner if we just had

3    the motion for summary judgment decided and there --

4              THE COURT:  All right.

5              MR. OLSHIN:  -- was a determination that there

6    wasn't any coverage.

7              THE COURT:  Well, that may happen but, all things

8    considered, and I'm exercising my discretion here, in

9    basically managing the litigation efficiently, I disagree

10   with that.  And I'm not prepared to issue a blanket

11   injunction, including covering an issue that really isn't

12   before me when I am pretty darn sure that's going to be

13   appealed and will, in all likelihood, delay the

14   determination for another potentially couple of years.  And

15   --

16             MR. OLSHIN:  Well --

17             THE COURT:  -- you know, it's true, I, you know, I

18   might not issue a stay pending appeal if they did that

19   appeal and maybe the District Court wouldn't, maybe the

20   Second Circuit wouldn't, but -- it just seems to me that

21   this is the most efficient way to do it, particularly given

22   the representation that there wouldn't be an appeal from

23   this order as opposed to an appeal from a blanket

24   injunction.

25             MR. OLSHIN:  That the Michigan defendants wouldn't

Page 52

1   appeal --

2           THE COURT:  Right.

3           MR. OLSHIN:  -- is what you're saying.

4           THE COURT:  Well, you might all appeal, I suppose,

5   but I don't think anyone is going to issue a stay on that

6   one.

7           MR. OLSHIN:  Well, then I guess the other issue I

8   would just point out with respect to this order, and it

9   comes up in the context that we had previously pulled from

10  the Michigan court system a complaint for superintending

11  control so, to the extent that Your Honor would enter such

12  an order, we're certainly not waiving any rights with

13  respect to what the appropriate forum might be in Michigan

14  to consider these matters.

15          THE COURT:  I've been using the term Michigan

16  tribunal quite, you know, intentionally to be broad.  I'm

17  not saying in this order who should -- who in Michigan

18  should be deciding this pure form 400 issue.

19          MR. HEUER:  All right.  One question.  There is

20  still a question on jurisdiction because they're raising

21  that in their motion for leave to appeal at the District

22  Court.

23          THE COURT:  But they've withdrawn that motion.

24          MR. HEUER:  Actually they have not withdrawn the

25  motion for leave to appeal.

Page 53

1          THE COURT:  Oh.  In the District Court?

2          MR. HEUER:  They withdrew the motion --

3          THE COURT:  But how --

4          MR. HEUER:  -- seeking a new injunction.

5          THE COURT:  -- could you appeal an order that's

6    moot.  I mean, it's moot.

7          MR. HEUER:  I understand, Your Honor, but they are

8    raising that jurisdiction at the District Court level.

9          THE COURT:  Well, that's -- I mean, look,

10   that's --

11         MR. HEUER:  But it's difficult in saying they can

12   go forward because they're not contesting jurisdiction and

13   they're not doing that here, but they're doing that at the

14   District Court level with the sovereign immunity --

15         THE COURT:  The Second Circuit's already ruled.  I

16   mean, it's just --

17         MR. HEUER:  Your Honor, I agree.

18         THE COURT:  I'm not particularly worried about

19   that one in weighing the efficiency of how to handle this

20   adversary proceeding.

21         MR. HEUER:  We'll still have to defend at the

22   District Court level on --

23         THE COURT:  Well --

24         MR. HEUER:  -- the jurisdictional issues.

25         THE COURT:  -- you know what?  Maybe you move for

Page 54

1    Rule 11 because it doesn't make any sense.  There is a

2    controlling opinion by the Second Circuit that cert's been

3    denied on.  And the appeal is of a moot order so, frankly, I

4    think, you know, I don't usually -- look, now it's somewhat

5    facetious, but actually it isn't.  It isn't facetious and I

6    don't -- I think I've awarded Rule 11 sanctions maybe twice,

7    once was because a -- later the guy got disbarred because of

8    it because he was letting a convicted felon do his practice

9    instead of him.  And the other one was, you know, equally

10    deserved.  But that's a silly appeal.

11          MR. OLSHIN:  Well, we've asked them to withdraw it

12    and they refuse to.

13          THE COURT:  Well, maybe at this point, they will.

14    But that's not for me to decide.  You have other remedies

15    there.  So, anyway.  So that's what I'd like to do.  I --

16    you all have worked well enough that I'm not going to ask

17    the debtors to settle this proposed order on anyone, because

18    I don't want to have another hearing on it.  I really -- I

19    know what I have in mind.  What I really want the debtors to

20    do instead is to circulate the order so if there are, you

21    know, meaningful edits to it, consistent with my ruling,

22    people have a chance to come up with them.  But, ultimately,

23    I'm going to enter it.  We're not going to have another

24    hearing on it because I know what I have in mind.  Okay.

25          MR. CAMPANARIO:  Thank you, Your Honor.  There is

Page 55

1    one matter left on the agenda and it's the Michigan

2    defendants' amended motion to dismiss, at least the parts of

3    it that relate to failure to state a claim.

4              THE COURT:  Right.

5              MS. CYGANOWSKI:  Can I correctly assume that

6    that'll be consolidated with the ms --

7              THE COURT:  I think that makes sense.  I know that

8    was the request at the status conference and, frankly, I

9    hadn't reviewed it in so long that I didn't know whether

10   that made sense.

11             If people want a little more time to brief on it,

12   that's fine.  You can fit it into the briefing on the

13   summary judgment motion, if there is additional briefing to

14   be had in the summary judgment motion.  It's really the same

15   thing.  You're looking at the documents, primarily, as well

16   as -- well -- as -- well, that's it, really, is the

17   applicability of the documents, the provisions of the

18   documents and, I mean, frankly, I was prepared to rule on it

19   today but I'm happy to adjourn it until then.

20             MS. CYGANOWSKI:  Thank you.

21             THE COURT:  But let me be clear.  It is just on

22   the merits of the -- of whether these policies cover the

23   claims as policies.

24             MS. CYGANOWSKI:  Correct.

25             THE COURT:  We're not dealing with any

Page 56

1    jurisdictional issues or declaratory judgment power, or

2    anything like that.  It's just on the merits.

3              MR. OLSHIN:  Are you talking about the amended

4    motion to dismiss, Your Honor?

5              THE COURT:  Yes.

6              MR. OLSHIN:  As I, sort of, parsed through what

7    was left, it seemed like there were the following

8    components:  there was the claim that the complaint

9    insufficiently set forth a cause of action --

10             THE COURT:  Right.

11             MR. OLSHIN:  -- and didn't meet the standards for

12   a complaint requesting declaratory relief.

13             THE COURT:  Right.  Okay.

14             MR. OLSHIN:  Hard to believe, at this point.

15             THE COURT:  Right. I will deal with that issue,

16   too, if it's -- it'll be fairly short.

17             MR. OLSHIN:  Right.  Secondly, the other issue was

18   they raised an issue as a matter of law that the deductible

19   policies did provide --

20             THE COURT:  Right.

21             MR. OLSHIN:  -- coverage.

22             THE COURT:  Right.

23             MR. OLSHIN:  But did not address the other two

24   counts, reformation or the retention policies.

25             THE COURT:  Right.

Page 57

```
 1              MR. OLSHIN:  Those are also two counts of the --

 2              THE COURT:  And they're covered --

 3              MR. OLSHIN:  -- adversary complaint.

 4              THE COURT:  And they're -- are they covered by

 5    your summary judgment motion?

 6              MR. OLSHIN:  Yes.

 7              THE COURT:  Okay.  All right.  So --

 8              MR. OLSHIN:  And the third portion that seemed to

 9    be left, although I believe, Your Honor, covered this at

10    pages 30 to 33 of your amended bench ruling, ruling on the

11    motion to dismiss, was whether the Court should or should

12    not exercise discretion over a declaratory judgment action,

13    which, of course, you --

14              THE COURT:  Separate and apart from abstention?

15              MR. OLSHIN:  Yes, that was a separate argument --

16              THE COURT:  Oh.

17              MR. OLSHIN:  -- which you considered and rejected

18    at pages 30 to 33 of your --

19              THE COURT:  Yeah, I thought I'd already dealt with

20    that.

21              MR. OLSHIN:  -- You did, that's what I'm saying.

22    You dealt with at pages 30 to 33 of you amended bench

23    ruling.

24              THE COURT:  And when I was referring to

25    declaratory judgment, that's what I meant.
```

```
 1                    MR. OLSHIN:  Yes.

 2                    THE COURT:  I guess -- obviously, if someone says

 3          that this doesn't satisfy 2201, that's still -- that's part

 4          of the merits.

 5                    MR. OLSHIN:  Correct, that's the --

 6                    THE COURT:  Right and that's --

 7                    MR. OLSHIN:  -- that's a separate --

 8                    THE COURT:  -- in front of me.

 9                    MR. OLSHIN:  -- issue.  That's in front of you.

10                    THE COURT:  Right.  Okay.

11                    MR. RATERINK:  Just for -- Dennis Raterink.  For

12          clarification, there is a challenge to the reformation

13          aspect of the case as well.

14                    THE COURT:  In the motion to dismiss?

15                    MR. RATERINK:  In the motion to dismiss, it's --

16                    THE COURT:  All right.  Well, all the more --

17                    MR. RATERINK:  -- if sufficient facts were

18          alleged.  It's a --

19                    THE COURT:  All right.

20                    MR. RATERINK:  -- it's in the brief.  It's in the

21          plan.

22                    THE COURT:  Okay.  All the more reason that we

23          should do this all in connection with summary judgment.  So,

24          I'll hear you all next month on that.

25                    MR. OLSHIN:  Your Honor, one last point.  If we're
```

Page 59

1    crafting an order, which is evident from Your Honor's

2    position, is it possible to put in that order some

3    scheduling with respect to the motion for summary judgment

4    and --

5                THE COURT:  I thought we already had a schedule on

6    that.

7                MR. OLSHIN:  Not really.  Not as it relates to

8    what --

9                THE COURT:  Well, wasn't it --

10               MR. OLSHIN:  -- has now been said.

11               THE COURT:  Hasn't the hearing been set for next

12   month?

13               MR. CAMPANARIO:  There was discussion about the

14   hearing date but the precise briefing schedule and things of

15   that nature had not been set.

16               THE COURT:  Oh.  Well, I don't want to put this in

17   the -- the Michigan Courts don't need to have that in there,

18   in this order.  But --

19               MR. CAMPANARIO:  Can we have something in it --

20               THE COURT:  -- we should have a separate

21   scheduling order but I'd like you all -- I mean, I'm going

22   to have the hearing on it next month because it's been

23   scheduled for quite a while for that.

24               MR. CAMPANARIO:  Okay.

25               THE COURT:  So just work backwards from the

Page 60

1    briefing schedule.

2              MR. CAMPANARIO:  All right.  Fine.  We've had

3    success --

4              THE COURT:  Yeah.  I mean, it's --

5              MR. CAMPANARIO:  -- agreeing on briefing

6    schedules.

7              THE COURT:  -- just a regular briefing schedule

8    under the -- and, again, I will focus closely on the Rule

9    7056-1 statements, which is where I always start on summary

10   judgment motions, so people should pay attention to those

11   and -- including cites to the records and then the counter-

12   statements, as well as obviously, the briefs.  Okay?  Okay.

13   Thank you.

14             MR. CAMPANARIO:  Thank you, Your Honor.

15             MS. CYGANOWSKI:  Thank you, Your  Honor.

16

17        (Whereupon these proceedings were concluded at 01:07:23

18   AM)

19

20

21

22

23

24

25

Page 61

1           C E R T I F I C A T I O N

2

3   I, Pamela A. Skaw, certify that the foregoing transcript is

4   a true and accurate record of the proceedings.

5

6   Pamela A.          Digitally signed by Pamela A. Skaw
                       DN: cn=Pamela A. Skaw, o=Veritext,
7                      ou, email=digital@veritext.com,
                       c=US
8   Skaw               Date: 2012.08.23 16:12:13 -04'00'

9

10

11

    Veritext

12

    200 Old Country Road

13

    Suite 540

14

    Mineola, NY 11501

15

16

    Date:  July 27, 2012

17

18

19

20

21

22

23

24

25