Hearing Date: April 25, 2013 at 10 a.m. (EDT)
Response Date: April 18, 2013

BUTZEL LONG, a professional corporation
150 West Jefferson, Suite 100
Detroit, MI  48226
(313) 225-7000
Cynthia J. Haffey
Thomas B. Radom
David J. DeVine

*Attorneys for Reorganized Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| DPH HOLDINGS CORP., *et al.,* | Case No. 05-44481 (RDD) |
| | Jointly Administered |
| Reorganized Debtors. | |

**REORGANIZED DEBTORS' MOTION FOR ORDER
(I) ENFORCING MODIFICATION PROCEDURES ORDER,
MODIFIED PLAN AND PLAN MODIFICATION ORDER INJUNCTION
AND THIRTY-SEVENTH OMNIBUS CLAIMS OBJECTION ORDER
AGAINST JAMES SUMPTER, AS PLAINTIFF, IN FEDERAL COURT ERISA
ACTION; AND (II) DIRECTING JAMES SUMPTER TO DISMISS FEDERAL COURT
ERISA ACTION AGAINST THE REORGANIZED DEBTORS AND
<u>THE REORGANIZED DEBTORS' LIFE & DISABILITY BENEFITS PROGRAM</u>**

**("SUMPTER ERISA INJUNCTION MOTION")**

DPH Holdings Corp. and certain of its affiliated reorganized debtors in the above-captioned cases (collectively, the "Reorganized Debtors"), successors to Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, former debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), bring this motion (the "Motion") for an order (i) enforcing against James B. Sumpter ("Mr. Sumpter"), Plaintiff in an ERISA action filed in the United States District Court for the Southern District of Indiana, Indianapolis

Division, Case No. 1:13-cv-0347 TWP-DKL (the "District Court Action"), the June 16, 2009 Modification Procedures Order, the Modified Plan, the July 30, 2009 Modification Approval Order, and the December 2, 2009 Sumpter Claim Expungement Order (all as defined below) and (ii) directing Mr. Sumpter to dismiss the District Court Action against the Debtors and the DPH Life & Disability Program to recover upon claims that have been barred, discharged and expunged in these chapter 11 cases.

## OVERVIEW

1. As this Court is well aware, over the past three years Mr. Sumpter, in a *pro se* capacity, has filed a series of unwarranted claims, motions and appeals against the Reorganized Debtors, including, but not limited to (a) a Vesting Motion Regarding Extended Disability Benefits for Salaried Employees and Salaried Retirees (Docket No. 21680); (b) an Expedited Request for Preliminary Injunction to Prohibit DPHH from Terminating Salaried Disability Plan (Docket No. 21867); (c) an Amended Motion for Recoupment on Behalf of Delphi Salaried Retirees (Docket No. 21566); and (d) an Expedited Motion to Enforce COBRA Benefits for Salaried Retirees and Motion for COBRA Settlements (Docket No. 18366). All of these claims, motions and appeals have been denied or dismissed.

2. Despite the significant dollars incurred by the Reorganized Debtors in having to defend against such meritless claims, the Court has been exceedingly generous and patient with Mr. Sumpter, but not without admonishing him to forgo future actions that are not based on a "good faith real argument." *See* **Exhibit 1**, *September 22, 2011 Hearing Transcript, p. 23*. During the September 22, 2011 hearing, this Court issued the following warning to Mr. Sumpter regarding any future claims or actions:

> The debtors have their rights under – in matters before this Court –
> Bankruptcy Rule 9011, in matters in the federal district court or

2

>   other federal courts under Civil Procedure 11 and in their corollaries under the various state court procedures for bringing frivolous or bad faith claims. ***And Mr. Sumpter is duly warned that notwithstanding his pro se status, he is on clear notice that future motions in violation of the – or other litigation in violation of the plan modification order or this Court's prior orders or the Delphi debtors' discharge under their Chapter 11 plan should merit the imposition of sanctions. A[nd] the debtors can certainly use this transcript in that regard if such litigation is commenced outside of this court.*** *Id.* (emphasis added).

3. This Court granted the Reorganized Debtors' request for an order barring Mr. Sumpter from further litigation regarding issues previously adjudicated. *See Order Denying James B. Sumpter's Expedited Request for Preliminary Injunction to Prohibit DPH From Terminating Salaried Disability Plan (Docket No. 21877) and Order Denying James B. Sumpter's Vesting Motion Regarding Extended Disability Benefits For Salaried Employees and Salaried Retirees (Docket No. 21876)*. Despite that directive, the Reorganized Debtors again are confronted with a filing by Mr. Sumpter that involves claims that were already disallowed, time-barred, or discharged in the chapter 11 cases.

4. Specifically, in the District Court Action, as described in greater detail below, Mr. Sumpter seeks virtually the same relief that he previously sought in his Administrative Expense Claim (the "Administrative Expense Claim") (Docket No. 18620). **Exhibit 2**. This Court disallowed and expunged Mr. Sumpter's Administrative Expense Claim in its entirety by an order dated December 2, 2009. *See* **Exhibit 3**, *Thirty-Seventh Omnibus Claims Objection Order (Docket No. 19135)*. Despite that order, more than three years after the fact, Mr. Sumpter has filed the District Court Action to recover on the same disallowed claims. *See* **Exhibit 4**, *District Court Action Complaint*. Moreover, to the extent Mr. Sumpter argues that the District Court Action asserts new claims that were not previously asserted in his Administrative Expense

3

Claim, those claims are time-barred and enjoined by this Court's July 30, 2009 Modification Approval Order and the Modified Plan (as defined below).

5. For these reasons, and as discussed more fully below, the Reorganized Debtors now move for an order enforcing the Modification Procedures Order, the Modified Plan, the Plan Modification Order Injunction and the Sumpter Expungement Order against Mr. Sumpter and enjoining him from further prosecuting the District Court Action against the Reorganized Debtors and their Life & Disability Benefits Program.[1]

## RELEVANT FACTS

6. On October 8 and 14, 2005, Delphi Corporation and certain of its domestic affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended. On December 10, 2007, the Debtors filed their first amended joint plan of reorganization (the "Plan") and related disclosure statement. On January 25, 2008, this Court entered an order (the "Confirmation Order") confirming the Plan (the "Confirmed Plan"). The Confirmation Order became final on February 4, 2008.

7. On June 16, 2009, the Debtors filed the *First Amended Joint Plan of Reorganization of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (As Modified)* (the "Modified Plan"). The Modified Plan made certain modifications to the terms of the Confirmed Plan. To comply with the requirements of 11 U.S.C. §§ 1125 and 1127, on the same date, the Debtors filed a supplement to the disclosure statement (the

---

[1] The Reorganized Debtors' Life & Disability Benefit Program was terminated in March of 2012, and notice of termination was served on Mr. Sumpter. Regardless, for purposes of this Motion, the Reorganized Debtors submit that Mr. Sumpter should not have an independent cause of action against the benefit program on account of claims that were disallowed, barred, or discharged in the chapter 11 cases.

4

"Supplement"). In connection with the Debtors' Modified Plan and the Supplement, the Debtors sought an order from the Bankruptcy Court that, among other things, approved the Supplement as containing adequate information, as defined under Section 1125, authorized the solicitation of votes on the Modified Plan, and established a bar date for the submission of claims asserting administrative expense priority under 11 U.S.C. § 503(b). In connection therewith, and after notice and a hearing, on June 16, 2009, the Bankruptcy Court entered a certain *Order (A)(I) Approving Modifications To Debtors' First Amended Plan Of Reorganization (As Modified) And Related Disclosures And Voting Procedures And (II) Setting Final Hearing Date To Consider Modifications To Confirmed First Amended Plan Of Reorganization And (B) Setting Administrative Expense Claims Bar Date And Alternative Transaction Hearing Date* (Docket No. 17032) (the "Modification Procedures Order").

8.  Paragraphs 38 and 41 of the Modification Procedures Order provide the following:

> [A]ny party that wishes to assert an administrative claim under 11 U.S.C. Section 503(b) for the period from the commencement of these cases through June 1, 2009 shall file a proof of administrative expense (each, an "Administrative Expense Claim Form") for the purpose of asserting an administrative expense request, including any substantial contribution claims (each, an "Administrative Expense Claim" or "Claim") against any of the Debtors. July 15, 2009 at 5:00 p.m. prevailing Eastern time shall be the deadline for submitting all Administrative Expense Claims (the "[Initial] Administrative Bar Date") for the period from the commencement of these cases through June 1, 2009. *Modifications Procedures Order ¶ 38.*

> [A]ny party that is required but fails to file a timely Administrative Expense Claim Form shall be forever barred, estopped and enjoined from asserting such claim against the Debtors, and the Debtors and their property shall be forever discharged from any and all indebtedness, liability, or obligation with respect to such claim. *Modifications Procedures Order ¶ 41.*

5

9. On July 30, 2009, this Court entered its *Order Approving Modifications Under 11 U.S.C. Section 1127(b) to (I) First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession, as Modified and (II) Confirmation Order* (Docket No. 18707) (the "Modification Approval Order"), which confirmed the Debtors' Modified Plan. On October 6, 2009, the "Effective Date" of the Modified Plan occurred, and the Modified Plan was substantially consummated. On that date, the Debtors emerged from chapter 11 as the Reorganized Debtors.

10. Upon the Effective Date of the Modified Plan, an injunction was imposed. Specifically, the Modified Plan and the Modification Approval Order contain a permanent injunction against, among other things, the commencement or continuation of any action to recover on any claim against the Debtors that arose on or prior to October 6, 2009. Article 11.14 of the Modified Plan provides as follows:

> The satisfaction, release, and discharge pursuant to [Article XI of the Modified Plan] shall act as an injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim, Interest, or Cause of Action satisfied, released, or discharged under [the Modified] Plan to the fullest extent authorized or provided by the Bankruptcy Code…. *Modified Plan Art. 11.14*.

11. Similarly, paragraph 22 of the Modification Approval Order provides as follows:

> [T]he Debtors and all Persons shall be precluded and permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any Claim, action, employment of process, or other proceeding of any kind with respect to any Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, (b) the enforcement, attachment, collection, offset, recoupment, or recovery by any manner or means of any judgment, award, decree, order, or otherwise with respect to any Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, (c) creating, perfecting, or

6

enforcing any encumbrance of any kind with respect to any Claim, Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, and (d) asserting any Claims, Interests, or Causes of Action that are satisfied, discharged, released, or subject to exculpation hereby or by the Modified Plan.  *Modification Approval Order ¶ 22.*

12. The permanent injunction in the Modified Plan and Modification Approval Order thus prohibit the commencement or continuation of any action to recover on any claim against the Debtors that arose on or prior to October 6, 2009.

13. Furthermore, paragraph 47 of the Modification Approval Order provides in part:

[R]equests for payment of an Administrative [Expense] Claim (other than as set forth in the Modified Plan or otherwise contemplated by the Master Disposition Agreement, i.e. for such claims arising on or after June 1, 2009) must be filed, in substantially the form of the Administrative Claim Request Form attached as Exhibit 10.5 to the Modified Plan, with the Claims Agent and served on counsel for the Debtors and the Creditors' Committee no later than 30 days notice of after the Effective Date is filed on the docket of the Chapter 11 Cases [November 5, 2009]. Any request for payment of an Administrative Claim pursuant to this paragraph that is not timely filed and served shall be disallowed automatically without the need for any objection from the Debtors or the Reorganized Debtors.

14. In compliance with paragraph 47 of the Modification Approval Order, notice of the Effective Date (the "Effective Date Notice") was filed on October 6, 2009 with the Bankruptcy Court (Docket No. 18958).  Upon the occurrence of the Effective Date, the bar date for filing Administrative Expense Claims for claims arising on or after June 1, 2009 and prior to the Effective Date was established as November 5, 2009 (the "Final Administrative Expense Bar Date").  Mr. Sumpter was served with notice of the Final Administrative Expense Bar Date (Docket No. 18978).  ***Exhibit 5***.

7

## MR. SUMPTER'S CLAIMS

15.     In his District Court Action Complaint, Mr. Sumpter asserts that he became permanently disabled from his employment at Delphi on December 8, 2000 and, as a result, became entitled to a lump sum life insurance payout (hereinafter "SEDB Payout") under Delphi's Life & Disability Benefits Program. He made an initial inquiry regarding the SEDB Payout in December 2003 and submitted this original request for the SEDB Payout in January 2004. *Exhibit 4, Complaint ¶¶ 27-34.* Delphi's benefits administrator, Metropolitan Life Insurance Company ("Metropolitan Life"), sent Mr. Sumpter a form to fill out, which Mr. Sumpter asserts was incorrect. For more than five years, Mr. Sumpter inexplicably did nothing with his claim until he resubmitted his request on March 12, 2009. *Id.* at *¶¶ 34-37.*

16.     On March 20, 2009, Metropolitan Life provided Mr. Sumpter with a detailed explanation for its denial of benefits. *Exhibit 6*. Mr. Sumpter subsequently challenged the denial, and on June 3, 2009, the benefit administrator of Metropolitan Life again denied Mr. Sumpter's claim. *Exhibit 4, Complaint ¶ 38; Exhibit 7.* On June 11, 2009, Mr. Sumpter wrote to Metropolitan Life and demanded that they provide him with all documents reviewed by Metropolitan that formed the basis for their denial. He specifically requested that Metropolitan Life identify the controlling SPD and the date that it was issued. *Exhibit 8*. On July 6, 2009, Mr. Sumpter then informed Metropolitan Life that he was appealing the denial of his claim. *Exhibit 9*.

17.     On July 8, 2009, Mr. Sumpter filed his Administrative Expense Claim (Docket No. 18620). *Exhibit 2*. Mr. Sumpter described the claim as a "Life insurance claim, Disability early payout" (*i.e.*, the SEDB Payout). *Id.* at Section 5. As part of his claim, Mr. Sumpter attached his correspondence with Metropolitan Life, as well as an excerpt from a General Motors

8

Corporation benefits plan description ("GM SPD").[2] *Id*. Another attachment to the claim is Mr. Sumpter's March 12, 2009 letter regarding "Extended Disability and Payout of Basic Life Insurance: James B. Sumpter." *Id.* In the letter, Mr. Sumpter requested a "payout of [his] Basic life insurance as documented on page 34 of the [GM] SPD (March 1992) that was in effect when [he] became disabled." He further requested, due to "Delphi's financial uncertainty", an immediate full payment of the alleged $100,000 benefit. *Id*.

18. At Mr. Sumpter's request, on July 9, 2009 and July 15, 2009, Metropolitan Life representatives sent Mr. Sumpter the requested documents and, again, provided him with a detailed explanation for the denial of benefits. ***Exhibits 10 and 11***.

19. In correspondence dated July 31, 2009, Mr. Sumpter asserted that the controlling SPD was the General Motors 94 SPD. He further asserted that he was told to use the GM 94 SPD. ***Exhibit 12***.

20. On October 15, 2009, the Reorganized Debtors filed their objection to Mr. Sumpter's Administrative Expense Claim. ***Exhibit 13***, *Thirty-Seventh Omnibus Claims Objection (Docket No. 18984).* An Affidavit of Service confirming that Mr. Sumpter was served with the Thirty-Seventh Omnibus Claims Objection was filed with the Court on October 21, 2009 (Docket No. 18997). ***Exhibit 14***.

21. Mr. Sumpter did not file a response to the Reorganized Debtors' objection.

---

[2] According to the District Court Action Complaint, Mr. Sumpter was an employee of Delco Electronics, a division of General Motors, commencing February 5, 1991. ***Exhibit 4 ¶ 19***. It appears Mr. Sumpter was under the mistaken belief that the GM Life & Disability Benefits Program controlled, even though the Delphi Life & Disability Benefits Program represented an entirely new and separate benefits program following GM's spin-off of Delphi in 1999.

9

22. On December 2, 2009 this Court entered an order disallowing and expunging Mr. Sumpter's Administrative Expense Claim in its entirety. *See **Exhibit 3**, Thirty-Seventh Omnibus Claims Objection Order ("Sumpter Claim Expungement Order") (Docket No. 19135)*.

23. On December 8, 2009, the Reorganized Debtors served Notice of Entry of the Sumpter Claim Expungement Order on Mr. Sumpter (Docket No. 19155). **Exhibit 15**.

24. Mr. Sumpter did not object to the entry of the Sumpter Claim Expungement Order and did not file a motion for reconsideration or appeal of the order.

25. Mr. Sumpter also did not file an administrative expense claim form for any claim arising between June 1, 2009 and October 6, 2009 pursuant to the Modification Approval Order.

26. On March 4, 2013, more than three years after this Court entered the Sumpter Claim Expungement Order, Mr. Sumpter filed the District Court Action, seeking essentially the same relief that he sought in his expunged and disallowed Administrative Expense Claim or relief that was otherwise barred or discharged under this Court's Modification Procedures Order, the Modification Approval Order, and the Modified Plan.

27. On March 21, 2013, the Reorganized Debtors, through their counsel, notified Mr. Sumpter that the District Court Action is improper because the claims and causes of action were previously disallowed and expunged or are time-barred by the final order of this Court. The Reorganized Debtors requested that Mr. Sumpter dismiss the case or be subject to sanctions under Fed. R. Bankr. P. 9011. **Exhibit 16**. Mr. Sumpter rejected the Reorganized Debtors' request, thus necessitating the filing of this Motion.

## JURISDICTION AND VENUE

28. This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the Plan Modification Order (Docket No. 18707 ¶ 56). This matter is a core proceeding within the meaning of 28 U.S.C. §157(b). This Court is the proper venue for this matter pursuant to 28 U.S.C. § and 1409.[3]

## APPLICABLE LAW AND LEGAL ARGUMENT

***The District Court Action is Barred by the Sumpter Claim Expungement Order, By This Court's Modification Procedures Order, or the Modification Approval Order.***

29. For the reasons stated above and more fully below, the Reorganized Debtors are entitled to an order of this Court directing Mr. Sumpter to dismiss the District Court Action because the claims he has asserted in that action were disallowed in their entirety by the Sumpter Claim Expungement Order. Moreover, even if, *arguendo*, Mr. Sumpter's District Court Action claims were not disallowed in their entirety by the Sumpter Claim Expungement Order, the claims are also time-barred pursuant to the Court's Modification Procedures Order or Modification Approval Order because the claims accrued before the Effective Date. "[R]evisiting orders disallowing late-claims contradict[s] the doctrines of res judicata and law of the case . . . ." *In re Xpedior Inc.*, 354 B.R. 210, 227 (Bankr. N.D. Ill. 2006).

30. As stated above, this Court's Modification Procedures Order provided, in pertinent part, that July 15, 2009 was the deadline for all creditors holding administrative expense claims for the period from the commencement of the chapter 11 cases in October 2005 through June 1, 2009 to file a claim on an administrative expense claim form. Failure to file a timely administrative expense claim would forever bar, estop and enjoin a creditor from asserting

---

[3] The Reorganized Debtors intend to seek sanctions against Mr. Sumpter pursuant to Fed. R. Bankr. P. 9011.

11

such a claim against the Debtors, and their property would be forever discharged from such claim.

31. Paragraph 47 of the Modification Approval Order provides, in part, that "requests for payment of an Administrative [Expense] Claim (other than as set forth in the Modified Plan or otherwise contemplated by the Master Disposition Agreement, i.e. for such claims arising on or after June 1, 2009) must be filed, in substantially the form of the Administrative Claim Request Form attached as Exhibit 10.5 to the Modified Plan, with the Claims Agent and served on counsel for the Debtors and the Creditors' Committee no later than 30 days notice of after the Effective Date is filed on the docket of the Chapter 11 Cases [November 5, 2009]. Any request for payment of an Administrative Claim pursuant to this paragraph that is not timely filed and served shall be disallowed automatically without the need for any objection from the Debtors or the Reorganized Debtors."

32. Mr. Sumpter filed his Administrative Expense Claim on July 8, 2009. On October 15, 2009, the Reorganized Debtors objected to the claim. Mr. Sumpter did not respond to the objection. On December 2, 2009, this Court entered the Sumpter Claim Expungement Order.

33. Mr. Sumpter never filed a claim pursuant to the Modification Approval Order for claims arising after June 1, 2009 and before October 6, 2009.

34. Mr. Sumpter's Complaint in the District Court Action asserts five causes of action against the Reorganized Debtors, all of which were previously asserted in his Administrative Expense Claim, and/or were already known by Mr. Sumpter and are therefore time-barred.

35. In his "First Cause of Action, For Failure to Pay Disability Life Insurance Benefit," Mr. Sumpter claims that he is entitled to SEDB benefits in the form of a $100,000

12

Disability Life Insurance Payout. *Exhibit 4, Complaint ¶¶ 7-8.* This is effectively the same request made in his disallowed and expunged Administrative Expense Claim. *Exhibit 2*.

36. In his "Second Cause of Action, For Failure To Meet ERISA Notice Requirement For Distribution Of Summary Plan Description (SDP)," Mr. Sumpter asserts that the Plan Administrator failed to provide the 1996 SPD for the period between July 30, 1997 and November 5, 2009. *Exhibit 4, Complaint ¶ 9.* This claim was also part of Mr. Sumpter's disallowed and expunged Administrative Expense Claim. Specifically, Mr. Sumpter attached (as page 10) a June 3, 2009 letter that he sent to Metropolitan Life. In the letter, Mr. Sumpter demands copies of the SPD upon which Metropolitan Life relied. *Exhibit 2*.

37. Similarly, in the "Third Cause of Action, For Failure to Meet ERISA Noticing Requirement for Distribution of Summary of Material Modification", Mr. Sumpter asserts that the Plan Administrator failed to provide the Summary of Material Modification ("SMM") for the period between July 30, 1995 and November 5, 2009. *Exhibit 4, Complaint ¶ 10.* This claim was also part of Mr. Sumpter's disallowed and expunged Administrative Expense Claim. In the June 3, 2009 letter referenced above, Mr. Sumpter requested a "copy of all documentation, records and all other information related to [his] claim and [Metropolitan Life's] decision." *Exhibit 2*.

38. Notwithstanding the fact that Mr. Sumpter's claim accrued in 2004 (the date when he first made a claim) within the definition of 11 U.S.C. § 101(5)[4] and therefore was covered by

---

[4] The Bankruptcy Code defines "Claim" to mean (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, disputed, undisputed, legal, equitable, secured or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. 11 U.S.C. § 101(5). The Second Circuit has recognized that the definition of a claim is intentionally broad to enable all the obligations of a debtor to be

13

the Modification Procedures Order, Mr. Sumpter did not timely file an Administrative Expense Claim Form based on his alleged failure to receive SPD and SMM documents by the Administrative Claim Bar Date. By operation of the Modification Procedures Order, Mr. Sumpter's claims became forever barred, thereby estopping and enjoining them from asserting the new claims against the Debtors or their property. In addition, this Court's Plan Modification Order, which confirmed the Modified Plan, discharged, among other things, all Claims and Causes of Action, whether known or unknown, against the Reorganized Debtors and permanently enjoined all Persons (as that term is defined in the Plan) from, among other things, "commencing . . . in any manner any Claim, Interest, Cause of Action or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date" of the Plan (the "Plan Injunction"). *See* ¶¶ 20 and 22 of Plan Modification Order.

39.     In his "Fourth Cause of Action, For Failure To Meet ERISA Claim Procedure Noticing Requirements," Mr. Sumpter alleges that "DPHH failed to provide a timely response to Plaintiff's first appeal of its adverse decision . . . ." **Exhibit 4**, *Complaint ¶ 11*. The required response time is forty-five days. *Id*. Once again, this is an allegation that was part of Mr. Sumpter's disallowed and expunged Administrative Expense Claim. Attached to his claim are two letters, one from Metropolitan Life (page 8) and the other from Mr. Sumpter (page 11), both discussing Mr. Sumpter's appeal. **Exhibit 2.** This Court's Plan Modification Order, which confirmed the Modified Plan, discharged, among other things, all Claims and Causes of Action,

---

treated in a bankruptcy case, no matter how remote or contingent, to give the debtor the broadest relief possible in the bankruptcy court. *See In re Chateaugay Corp.*, 944 F.2d 997, 1003 (2d Cir. 1991). In addition, the Second Circuit in *Chateaugay* wrote, "[a] claim exists only if before the filing of the bankruptcy petition, the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation—'a right to payment'—under the relevant non-dash bankruptcy law." *Id.* at 497. Mr. Sumpter's relationship with the Debtors, by his own admission, existed in 2004, and his lack of diligence in pursuing his claims until 2009 should not change their pre-petition nature.

14

whether known or unknown, against the Reorganized Debtors and permanently enjoined all Persons (as that term is defined in the Plan) from, among other things, "commencing . . . in any manner any Claim, Interest, Cause of Action or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date" of the Plan (the "Plan Injunction"). *See* ¶¶ 20 and 22 of Plan Modification Order.

40. Mr. Sumpter will undoubtedly argue that this claim had not yet accrued as of the June 1, 2009 administrative claim deadline and, therefore, was not expunged and disallowed pursuant to the Sumpter Expungement Order.[5] Assuming, *arguendo*, that to be the case, the claim is still time-barred pursuant to the Modification Approval Order. In his Complaint, Mr. Sumpter alleges that he first appealed the adverse decision on July 31, 2009. Taking his pleading as true, a timely forty-five day response was due on or before September 14, 2009. Mr. Sumpter's claim related to a timely response, therefore, arose on September 15, 2009. Pursuant to this Court's Modification Approval Order, all claims that arose between June 1, 2009 and October 6, 2009 were to be filed no later than November 5, 2009. *Modification Approval Order ¶¶ 22 and 47*. Claims that were not "timely filed and served shall be disallowed automatically . . . ." *Id. at ¶ 47*.

41. Finally, Mr. Sumpter's "Sixth[6] Cause of Action, For Breach of Fiduciary Duty" again asserts claims related to the already expunged and disallowed Administrative Expense Claim. This Court's Plan Modification Order, which confirmed the Modified Plan, discharged, among other things, all Claims and Causes of Action, whether known or unknown, against the

---

[5] Again, because of Mr. Sumpter's lack of diligence in pursuing his ERISA claims for five years, his non-accrual argument warrants no credence as a matter of law and equity.

[6] Because Mr. Sumpter's "Fifth Cause of Action, For Failure To Meet ERISA Claim Procedure Requirements And The Resulting Breach of Fiduciary Duty" is asserted against Metropolitan Life only, the Reorganized Debtors have not addressed this claim in this Motion.

15

Reorganized Debtors and permanently enjoined all Persons (as that term is defined in the Plan) from, among other things, "commencing . . . in any manner any Claim, Interest, Cause of Action or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date" of the Plan (the "Plan Injunction"). *See* ¶¶ 20 and 22 of Plan Modification Order.

42. The effect of the Reorganized Debtors' discharge is set forth in section 524(a) of the Bankruptcy Code, under which that discharge operates as a permanent injunction against the <u>commencement or continuation</u> of any action to recover discharged claims against the Reorganized Debtors. Specifically, Section 524(a)(2) provides:

> (a) A discharge in a case under this title –
>
> …
>
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. § 524(a)(2).

43. Based on the foregoing, all of Mr. Sumpter's claims asserted in the District Court Action against the Reorganized Debtors and their Life & Disability Benefits Program are pre-confirmation "claims" that have been disallowed, barred, or discharged in these chapter 11 cases. By operation of the Section 524(a) injunction, Mr. Sumpter should be enjoined from further prosecuting his District Court Action.

## RELIEF REQUESTED

WHEREFORE, the Reorganized Debtors request that this Court enter an order (a) enforcing the Modification Procedures Order, Modified Plan and Plan Modification Order Injunction and Sumpter Claim Expungement Order against Mr. Sumpter; (b) directing Mr. Sumpter to dismiss the District Court Action against the Reorganized Debtors and their Life &

16

Disability Benefits Program; (c) awarding the Reorganized Debtors the costs and attorneys' fees they have been forced to expend in connection with this Motion and the District Court Action; and (d) granting the Reorganized Debtors such other and further relief to which they may be entitled.

Dated:   Detroit, Michigan
         April 5, 2013

                                BUTZEL LONG, a professional corporation

                                By:   /s/ Cynthia J. Haffey
                                     Cynthia J. Haffey
                                     Thomas B. Radom
                                   David J. DeVine
                              150 West Jefferson, Suite 100
                              Detroit, Michigan 48226
                              (313) 225-7000

                              *Attorneys for Reorganized Debtors*

#1400158 v1