James B. Sumpter, Pro se
21169 Westbay Circle
Noblesville, IN 46062
Telephone: (317) 877-0736
E-mail:  jsump@ieee.org

Salaried Retiree of Debtors

UNITED STATES
BANKRUPTCY COURT
SOUTHERN DISTRICT OF
NEW YORK

------------------------------------- .x Chapter 11 Case No. 05-44481 (RDD)

In re:

DELPHI CORPORATION, et. al.,

                                        : (Jointly Administered) :

    Debtors.

                                        :

------------------------------·

                                        :




                                        x


# RESPONSE To  " Haffey Injunction Motion" Docket 22040

## List of Attachments

| | |
|---|---|
| Attachment 1 | Sumpter letter of April 10, 2013 to Judge Drain Docket # 22043 |
| Attachment 2 | OPEB  Final Order Docket 16448 |

## List of Related Documents

| | |
|---|---|
| Haffey Injunction Motion Exhibit 2 | Sumpter Administrative Expense Claim and Support Documents |
| Haffey Injunction Motion Exhibit 4 | Sumpter ERISA Benefit Complaint |
| Haffey Injunction Motion ERISA Benefit Complaint Exhibit 12 | Sumpter's First Administrative appeal |

# I.           Jurisdiction

1       **WHEREAS**, the Bankruptcy Court has jurisdiction over this matter as it pertains to administrative expense claims pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b) (2) (B).

2       **However, this court does not have subject mater Jurisdiction with regard to the Sumpter ERISA Benefit Claim, for which the District Court SDIN has jurisdiction.**

# II.           Important Facts

## Fact 1

## Injunction Motion Violated Fed Bankr Rule 9006-1(b)

3       I   asserted in my letter to Judge Drain on April 10, 2013 that the debtors "Injunction Motion was not served at least 14 days before the return Date (**See Attachment 1**).  Mr. Thomas Radon wrote Judge Drain and **falsely** stated the motion was in compliance.  The Motion was filed on  April 5, 2013.  The return date is April 18, 2013.  Rule 9006(a) Computing Time states: That for Period stated in Days or a longer unit of time: "(A) exclude  the day of the event that triggers the period."

4       Thus, $(18 - 5) = 13$, which is less than 14.  Therefore the motion, which could not be served sooner  than the filing date  is not in compliance with **Rule 9006-1(b)**.

## **Fact 2**

## **Injunction Motion Violated Part VII of the
Federal Bankruptcy Rules**

5      The Debtors motion is procedurally flawed.  It seeks an injunction, which

is an adversary proceeding, governed by **Part VII of the Federal Bankruptcy Rules**.

However, Debtor has failed to file a complaint and issue a summons, as required.

6      The Federal Bankruptcy Rules prescribed by the U S Supreme Court were

last amended April 28, 2010, with an effective date of December 1, 2010.

7      The updated version of the Federal Bankruptcy rules  did not include any

modifications that reflect the decisions found in the rulings cited in Mr. Thomas B.

Radom 's April 11, 2013 letter Docket # 22044.  Therefore, the Debtors Injunction

Motion is procedurally improper.

8      Furthermore, there is no injunction in place that relates to Causes Two

through Six of the ERISA Benefit Denial Complaint.  Therefore, Debtors Injunction

motion is procedurally flawed

## **Fact 3**

## **The Respondent, James Sumpter, did not Receive notice of
(1) Reorganized Debtors' Thirty-Seventh Omnibus Objection or
(2) Notice of Hearing Dates or Claim Objection procedure order**

9      I did  not receive the Objection Notices  or the Claims Procedure Notice.

According to the Affidavit of Service. Apparently,  these notices were sent together, by

U. S. mail, which (although reliable) is not known to be infallible.  Additionally, there is

no documentation that the notices were actually received.   Furthermore, if the  Affidavit

of Service ( Docket 18997) is to be believed, the notices in Exhibit F of  Affidavit of

Service were mailed to the address in Exhibit E.   In which case, there is no possibility

that the notices were mailed to my address.  Since my name and address are not found in

Exhibit E.

10      Included below is the relevant excerpt from the Affidavit of Service –

Docket #  18997 (**See text in BOLD**):

> *On October 16, 2009, I caused to be served the documents listed below upon the
> parties listed on Exhibit E hereto via postage pre-paid U.S. mail:*
>
> *2) Reorganized Debtors' Thirty-Seventh Omnibus Objection Pursuant To 11
> U.S.C. § 503(b) And Fed. R. Bankr. P. 3007 To Expunge Certain (I)
> Prepetition Claims, (II) Equity Interests, (III) Books And Records Claims,
> (IV) Untimely Claims, (V) Paid Severance Claims, (VI) Pension, Benefit
> And OPEB Claims, And (VII) Duplicate Claims ("Thirty-Seventh Omnibus
> Claims Objection") (without exhibits) (Docket No. 18984) [a copy of which
> is attached hereto as Exhibit D]*
>
> *3) Personalized Notice of Objection to Claim (the "Personalized Notice") [a
> copy of the form of which is attached hereto as Exhibit F].* **Each party's
> Personalized Notice was sent to the name and address listed in columns 1
> and 2 of <u>Exhibit E</u>** *attached hereto. In addition, the chart provided on each
> party's Personalized Notice contained the information listed in columns 3
> through 8 of Exhibit E attached hereto. The chart contained in the form of the
> Personalized Notice which is attached hereto as Exhibit F has been marked
> so as to demonstrate the manner in which the information listed in columns 3
> through 8 of Exhibit E attached hereto was incorporated into each
> Personalized Notice.*

11      Irrespective of what caused the failure, the notices were not

received by me.

## **Fact 4**

### **Section 11 USC 1129 (a) (13) requires the continuation of benefits
for the duration of the period that the Debtor is obligated**

12      Bankruptcy section **11 USC 1129 (a) (13)**, which, in part, states the

following:

>*(a) The court shall confirm a plan only if all of the following requirements are met:*
>
>>*(13) The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of this title, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of this title, at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits.*

13      Thus, as of October 6, 2009 (The Effective Date) payments of Disability benefits and Supplemental Disability benefits are to continue as specified in the Life and disability program, except the life insurance was discontinued effective April 1, 2009. Thus, it is logical that that the Life and Disability Benefit Program, which is an ERISA Plan continued to be governed, as it has been through out the bankruptcy, by the ERISA Law, which includes the benefit claim appeal process and the right to pursue civil enforcement, pursuant to **29 USC 1132.**

14      In fact, it seems unreasonable that Judge Drain's OPEB Final Order and section **11 USC 1129 (a) (13)** would require continuation of benefit payments and operation of the benefit plan, which is an ERISA plan, and not have them governed by the ERISA benefit claim procedure and ERISA civil enforcement provisions.

## <u>Fact 5</u>

### The Sumpter Disability Life Insurance Claim was wrongly Objected to and wrongly expunged

15      It's clear that the Disability Life Insurance Payment claim **(See Haffey Injunction Motion – Exhibit 2**) that I submitted was not a pension claim. In addition, it was not an OPEB Claim. I submitted the request for the payout to the benefit Administrator on **March 12, 2009**, which was prior to the OPEB termination date, which

was **April 1, 2009,** or later.

16      The Disability Life Insurance Claim is for a benefit.  However, Judge

Drain's OPEB order (Docket # 16448 – **See Attachment 2**) stated the following:

> *The Debtors shall continue to provide benefits for claims incurred by each*
> *Eligible Salaried Employee through the cessation date of such retiree's*
> *participation in the applicable welfare plan, provided that such retiree has*
> *timely paid all requisite contributions for the applicable plan, and provided*
> *further that such retirees shall not be required to file proofs of claim in this*
> *Court to implement the terms of this decretal paragraph.*

17      Thus, the Court's order was clearly violated. As a result, the Disability

Life insurance claim was illegally disallowed and therefore illegally expunged.

18      Because a proof of claim was not required, the Disability Life Insurance

Claim, at worst, should have been treated as a duplicate.

19      In addition, attached to the Disability Life Insurance Claim form, was a

letter of explanation and documents showing the benefit request, the benefit denial, the

communication history and the state of the appeal process (as of July 31, 2009) –  **(See**

**Haffey Injunction Motion – Exhibit 2**)

## Fact 6

### Disability Was not Terminated in OPEB Order

20      It should be noted that Delphi did not terminate disability benefits.

The question, of whether Disability Benefits were cancelled, when the OPEB benefits

were cancelled, was raised in the Recoupment Motion Hearing (Docket # 21609).

However, it was definitively established in post hearing communications (Docket #'s

21696 and 21603) that Disability benefits were not terminated and continued to be paid by DPHH.

21      In addition, Judge Drain's Final OPEB Termination Order **(Attachment 2)** made no reference to Disability benefits, when it listed the terminated benefits (Docket # 16448) .

22      The violations which are the basis for Causes Two, Three, Four, five and Six of the Sumpter ERISA Benefit Claim are post confirmation violations that occurred in the course of the ERISA Appeal process and are governed by **29 USC 1132.**

# Fact 7

### The Sumpter Disability Life Insurance Claim
### was for Disability Life Insurance payout only

23      Any reasonable person can see that the Proof of Claim that was submitted was for the Disability Life Insurance payout only[1].   It made no claim for any other benefit.

24      Thus, Ms. Haffey assertion that the documents attached to the claim, which showed the history of the  benefit application and resulting appeal communications, cannot reasonably be construed as any kind of  additional claim.

# Fact 8

### The GM 1992 SPD Was the Controlling SPD When
### Sumpter Disability Commenced

25      The GM 1992 SPD was the controlling Summary Plan Description when the Sumpter disability commenced (See Exhibit 12 of Haffey Injunction Motion).

---

[1] The Administrative Claim form did contain an Error. The form should have listed the Insurance benefit amount as $100,000.

26      Note, Ms. Haffey stated incorrectly that Exhibit 12 asserted that the controlling SPD was GM 1994.

27      Ms. Haffey also makes claims, about which she is not properly informed, when she states her opinion regarding which SPD was the controlling document after the Delphi spin-off.

28      Judge Drain noted in the OPEB hearing (See transcript page 113, line 22  -  docket  # 16451)  that he had heard testimony regarding the relationship between GM benefits and Delphi benefits at the time of the Delphi spin-off.   See the transcript text below:

> **THE COURT: But what about the testimony that around the time of the spin-off that the employees were told that it essentially would be a rollover  from GM as far as your benefits?**

29      This would indicate that benefits were a roll over of the benefits specified in the GM 1992 SPD.  It should also be noted that post spin-off Delphi distributed no other SPD until 2001. If the GM documentation had not been relied on, it would have been a gross violation of ERISA, which requires distribution of an SPD with in 120 days of Plan commencement (**29 USC 1024**).

30      Thus, it's clear that Ms. Haffey does not have sufficient factual record when she bases her arguments on a sample of the documentation available in the ERISA case.  Which, is also sufficient reason that the bankruptcy court is not the place to argue the factual merits of the Sumpter ERISA Benefit Claim

## **Fact 9**

### **Causes Two, Three, Four, Five And Six Of The ERISA**

**Complaint Are Post Confirmation Civil Enforcement Actions And Not
Administrative Expense Claims**

31       Causes Two, Three, Four, Five[2] and Six[3] of the ERISA

Complaint seek enforcement regarding post confirmation ERISA violations that were

discovered or occurred over the course of the ERISA Appeal process and are governed by

**29 USC 1132.**

32       These Causes  of the ERISA Complaint are post confirmation civil

enforcement actions which are governed by **29 USC 1132** .  As such, they a are not

Administrative Expenses as defined by **11 USC 503**

# Fact 10

**The  Disability Appeal Process  Continued Until May, 10 2010,
And Occurred Almost Exclusively Post Confirmation And The
Resulting Violations Were All Post Confirmation**

33       The first Appeal of the Disability Life Insurance Claim was initiated on

**July 31, 2009.**  The first formal response by Met Life was **October 18, 2009,** which was

after the **Effective Date** of October 6, 2009.  That process continued until **Mar 20, 2010,**

when a final decision was issued.


34       The second and final appeal was initiated on **April 14, 2010**.  The

Employee Benefit Plan Committee (EBPC) issued a letter, on **May 10, 2010,** refusing to

review the prior adverse ruling., thereby concluding the ERISA administrative appeal

process.

---

[2] Cause Five of the ERISA Benefit Denial Complaint was only against Met Life, the benefit claims
administrator. Met Life is also the Life insurance Benefit Fiduciary and the Life insurance carrier
[3] For convenience Causes Two, Three, Four, Five and Six[3] of the Sumpter ERISA Benefit Complaint will
be referred as "Causes Two through Six", without any additional statement that Cause five refers
exclusively to Met Life

35      All the violations in Causes Two through Six of the Sumpter ERISA

Complaint occurred or were discovered during the benefit administrative appeal process.

They are not administrative expense claims as stated in paragraph 32 above.


# V.    ARGUMENT


## Regarding Ms. Haffey's Argument as it pertains to
## Cause One of the Sumpter ERISA Complaint


36      I received a letter and claim form in late June or early July 2009, which

informed me of the bar date for submitting administrative expense claims.  The letter

stated that claims for benefits need not be submitted.  However, I was unsure where that

waiver originated.  I was beginning the PLAN appeal process,  which I was certain would

last well past the bar date.  I considered the claim provisional, since I did not know the

outcome and since I also knew there was a possibility that the issue would have to be

litigated in District court.

37      I made the determination that it was safer to submit the Claim form.  In

this way I was safe, in regards to the bar date and I judged that the worst possible

outcome would be that the claim would be considered redundant.

38      I also included a letter (see Haffey Injunction Motion, Exhibit 2) which

explained why I was  submitting the form.  I also sent other documentation to show the

status of my benefit claim.

39      At the time that I file my claim, I was unaware of Judge Drains OPEB

order regarding continuing benefits or **11 USC 1129 (a) (13).**

40      However, there is no doubt that the very skilled lawyers that were

handling the Delphi bankruptcy at the time, knew of these provision. Therefore,

objecting to the claim was a direct violation of Judge drains OPEB order and **11 USC**

**1129 (a) (13).**

41      Thus, the claim objection and expungement is illegal. DPHH's claim that

I received notice and did not respond, although incorrect (I did not receive notice), should

not be permitted to protect an obviously illegal action.

42      Had I not submitted ,what I considered likely to be a redundant claim, I

would not be faced with this current legal challenge.

43      Since the intent of  section **11 USC 1129 (a) (13)** and Judges Drain's

OPEB order  was that benefits such as the one addressed in Cause One of the ERISA

Complaint be paid by the debtor, there is no prejudice to DPHH to permit the ERISA

process to continue.

44      If it is assumed, for the moment, that the administrative expense claim was

properly expunged, it seems reasonable that DPHH should have intervened and stopped

the ERISA appeal process.

45       Its clear DPHH knew of the appeal because that information was provided

with the administrative expense claim form.

46      Since DPHH went nearly eight months and took no action to stop the

ERISA process, because of the principle of  **Estoppel by Acquiescence**, It has  lost the

opportunity to challenge the ERISA action now.

47      In addition, DPHH is **bared by latches,** the company allowed the ERISA

appeal process to continue eight months, without objection.  DPHH now find itself as

defendant in District Court facing a strong case and likely loss.  As a result, the debtor

now seeks to terminate the ERISA action, as their position is shown to be weak.  Thus, they should be bared by latches from any attempt to enjoin the ERISA action.

48      Thus, in this scenario the ERISA Complaint (Particularly **Cause One**) should be allowed to proceed:

(1) because DPPH lost its right to challenge because of acquiescence and/or;

(2) because DPHH is barred by latches.


**Regarding Ms. Haffey's Argument as it pertains to
Causes Two through Six of the Sumpter ERISA Benefit Complaint**

49      Ms. Haffey asserts that that  Causes Two through Six of  the Sumpter ERISA Complaint are Administrative Claims.  However, it was established in **FACT 9** that Causes Two Through Six of the ERISA Complaint are not Administrative Expense claims, they are Enforcement Actions to address ERISA Violations pursuant to **11 USC 1132(a) (3) (B) (i)**, in addition to other ERISA statutes and regulations.


50      The ERISA violations all occurred post confirmation as stated in paragraphs 32 and 35 of **FACT 10**.  Two of the violations referred to in Causes Two  and Three  of the ERISA Complaint are continuing violations that were not discovered until late in the appeal process, for which the of Continuing Violations Principle and Discovery Principle apply.

51      Ms. Haffey also claims that the support documents references these "claims" but she cites no paragraphs, or specific quotations, because they don't exist in the appeal documentation.  In addition, the Administrative claim form only made one claim, for $97,788.00, which was an error, as it should have been for $100,000.

52      In addition, it is not possible for any of violations that are addressed in Causes Two through Six to be found in the documents provided with the Administrative complaint, because either they had not yet occurred, or they had not been discovered until some time after October 18, 2009, which is well after **Effective Date** of October 6, 2009 and the Administrative Expense Claim form filing date of July 8, 2009.

53      The Haffey Motion tries to litigate the ERISA complaint. However it has been established that **29 USC 1132** establishes ERISA enforcement and litigation to be the exclusive Jurisdiction of the District Court[4]. In addition, her arguments are uninformed, since she has based her comments on the limited set of documents included with the Administrative Expense Claim and the ERISA Complaint it self. She, makes here assertions, while having no knowledge regarding the additional eight months of the benefit appeal process, which essentially commenced on October 18, which is when Met Life responded to my appeal, and continued until May 10, 2010.

54      Ms. Haffey has also shown a lack of understanding of what requirements are made on the administrator in the ERISA appeal process. She seems not to know the obligation that ERISA places on the administrator. Nor, does she seem aware of the rights granted to the participants and beneficiaries by ERISA. In fact, she seems not to have reviewed the ERISA statute or the Department of Labor regulations that were referenced in the Sumpter ERISA Benefit Complaint.

55      She appears also not to have studied the PLAN language, as it relates to when the Disability Life insurance payment could start, or the process for initiating the payments. Therefore, she is uninformed when she states that the claim accrued in 2004.

---

[4] In limited areas, 1132 (a) (1) (B) and 1132 (a) (7), the District Court has concurrent jurisdiction with State Courts.

She is not entitled to substitute her judgment for that of the Plan Administrator, or the text of the PLAN rules.

56      Ms. Haffey also appears not to be  aware of the obligations ERISA requires of  the Administrator, in regards the benefit claim initiation and document request.

57      Thus, her comments are erroneous and uninformed.  They are also inappropriate, since bankruptcy court is not the correct jurisdiction to litigate the Sumpter ERISA Benefit Complaint.


# IV.        The Matter of  Accountability

58      Ms. Haffey would have me sanctioned in perpetuity, because my recoupment motion was partially flawed. Yet she blatantly lied to the Court, in that same hearing, when she falsely stated that DPHH was not paying my disability benefits. The Court relied on her comments when making its ruling against my motion. When I presented document to the Court that proved Ms. Haffey's statements were false, she claimed it was a simple error and avoided accountability (See Recoupment Transcript, pages 7-12, ; Docket # 21609 , and post hearing letters (Sumpter letter Sep. 26, 2011 and Haffey Letter Sep. 30, 2011- Docket # 21603)

59      Just recently, in his letter to the Court, Mr. Radom lied when he wrote that the "Injunction Motion" did not violate Bankruptcy Rule 9006. ( See **Fact 1** above). Such an issue is too easy to check and the arithmetic to simple to claim that Mr. Radom assertion was a simple "error".

60      In this present matter, Ms. Haffey, in her motion, has willfully

manufactured content that is not in the documents that were attached to my

Administrative Expense claim (See paragraph 51 above.).

61      In the present matter, Ms Haffey has exposed me to potential harm, by

publishing my social security number in the exhibits to her motion.

62      The debtors Attorneys have casually  ignored **11 USC 1129 (a) (13)** as it

relates to my benefit claim in the same way they have casually violated Judge Drain's

OPEB final order ( See **Fact 4** above)

63      In addition, in regard to Ms. Haffey's injunction motion, she has violated

Part VII rules regarding adversary proceedings (See **Fact 2** above).

64      Ms. Haffey was also given a pass when she filed an untimely response to

my recoupment appeal in District Court (SDNY). She was permitted to file her appeal

response on the Bankruptcy Docket because  she had not yet filed her  motion to be

admitted pro hac vice..  She did not file her pro hac vice motion until 17 days after the

brief was due and she failed to file an appearance until four weeks after her brief was due

(see case #   1:11 cv-08443   docket 5,6, 7, 8, 9 & 10)[5].  Although she never offered any

reason for these failures, she argued and the District Court ruled that they were a simple

technicality.

65      These violations allowed Ms. Haffey a four week delay in filing her brief,

but she argued that her clear abuse of Bankruptcy Appeal rules was no prejudice to me.

66      Thus,  it's past time for Ms. Haffey and DPHH other attorneys to  be

vigorously scrutinized and held accountable for their blatant disregard for honesty and

their willful violation of Court Rules.

---

[5] The letters regarding Ms. Haffey late filing in the recoupment appeal to District Court are not docketed.
However, copies from Sumpter are available if requested

67      It is unjust to have Ms. Haffey continue to demonize the mistake of a pro

se litigator, when she, as a trained, experienced member of the Bar, continues to operate

so recklessly.

# VI.                          Relief Sought

68      I are requesting the Court to Order Ms. Haffey to redact my social security

number from the administrative expense claim documents that she included in her motion

(Docket # 22040); and also redact my social security number from Sumpter

Administrative claim documents which appear in docket # 18620.

69      I am also requesting Affirmation that Causes Two through Six are ERISA

enforcement actions are not administrative expense claims and therefore, are not enjoined

by this court, as they are under District Court (SDIN) Jurisdiction.

70      I am requesting Affirmation that the Sumpter Administrative Expense

claim was:

    (1) illegally expunged and/or;

    (2) DPPH lost its right to challenge because of acquiescence and/or;

    (3) DPHH lost its right to challenge because DPHH is barred by latches and;

71      I am requesting a ruling that **Cause One** of the Sumpter ERISA Benefit

Complaint (as it pertains to DPHH and the Delphi Life and disability Program) is not

enjoined and can continue under District Court (SDIN) Jurisdiction and/or;

72      I am requesting a ruling that the Sumpter ERISA Benefit Complaint is

not enjoined and can continue under District Court (SDIN) Jurisdiction because of

Debtors violation of  Bankruptcy rule 6009 and/or;

73      I am requesting a ruling that the Sumpter ERISA Benefit Complaint is

not enjoined and can continue under District Court (SDIN) Jurisdiction because of

Debtors violation of  Bankruptcy Part VII rules regarding adversary proceedings.


      WHEREFORE, I respectfully requests that this Court Disallow the " Haffey

Injunction Motion" enter an order granting the relief requested herein, and such other and

further relief as may be just, necessary and appropriate.


     Dated:
     Noblesville, Indiana
     April 18, 2013


By: _James B. Sumpter_


James B. Sumpter, Pro se
21169 Westbay circle
Noblesville, IN 46062
Telephone: (317) 877-0736
 E-mail: jsump@ieee.org

Salaried Retiree of Debtors

# Attachment I

## Sumpter ERISA Injunction letter
## April 10, 2013

21169 Westbay Circle
Noblesville, IN  46062
April 10, 2013

The Honorable Robert D. Drain
United States Bankruptcy Court
For the Southern District of New York
300 Quarropas Street

cc:

The Honorable Tanya Walton Pratt          Mr. Douglas Dormire Powers
U.S. District Court                       BECKMAN LAWSON LLP
Birch Bayh Federal Building               201 West Wayne Street
46 East Ohio Street                       Fort Wayne, IN 46802
Chambers Room 524
Indianapolis, IN 46204                    Ms. Cynthia Haffey - via E-mail

**Re:**

**("SUMPTER ERISA INJUNCTION MOTION") filed by Ms. Cynthia Haffey, attorney for DPHH - Case # 05-44481 (RDD) - Docket # 22040**

**ERISA BENEFIT DENIAL COMPLAINT filed by James B Sumpter, pro se in District Court - Southern District of Indiana – Indianapolis**
**SUMPTER v. DELPHI AUTOMOTIVE SYSTEMS (HOLDING), INC. et al**
**Case #   1:13-cv-00347-TWP-DKL**

Dear Judge Drain:

    Ms Haffey has recently filed a motion (Docket # 22040) requesting an injunction against my ERISA suit against DPHH and the Delphi Life and Disability Program.  I am requesting, for the reasons discussed below, that the Court exercise the powers conferred upon it under Section 105(a) of the Bankruptcy Code and *sua sponte* dismiss the Haffey Motion.

    Ms. Haffey's motion is procedurally flawed.  She seeks an injunction, which is an adversary proceeding, governed by **Part VII of the Federal Bankruptcy Rules**. However, Ms. Haffey has failed to file a complaint and issue a summons, as required. This is especially significant, since Ms. Haffey requested the court dismiss my motion for injunction (Docket # 21867) on the same grounds last April, in her letter to the Court

dated April 17, 2012.  I quote directly from her letter:

> *The Court is well aware that, as a matter of basic bankruptcy procedure, a proceeding to obtain an injunction or other equitable relief is governed by Rule 7001 which requires the commencement of an adversary proceeding and the filing of a complaint. Because a motion outside an adversary proceeding is not the appropriate vehicle for an injunctive request, the Preliminary Injunction Motion fails on its face and there is no just reason why the Reorganized Debtors should have to incur the cost of formally responding and appearing for a hearing.*

The Court did honor Ms. Haffey's request on the basis that **"the relief requested must be sought in an adversary proceeding pursuant to Fed. R. Bankr. P. 7001"** (see Docket # **21876** and **21877**).  It is therefore logical and fair that the Court would follow its prior precedence, with respect to my request.  Therefore, there is no just reason that I should have to endure the stress and hardship of having to formerly respond and appear at a hearing.

Additionally, Ms Haffey's motion does not comply with local **Rule 9006-1(b)**, which specifies that **"*motion papers shall be served at least 14 days before the return date"*.**  Assuming Ms Haffey's notice by E-mail is considered proper (of which there is serious question), **service is, at best, only thirteen days before the return date**, since I received the notice at  5:55 pm, on Friday April 5th and the motion sets a return date of April 18th (Paper copies arrived on Monday April 8th ).  As a result, the violation of local **Rule 9006-1(b)** is also a compelling reason to dismiss Ms. Haffey's motion.

Ms Haffey's effort is also an attempt to  subvert the Jurisdiction of the District Court, which has exclusive jurisdiction to hear ERISA cases[1], as established by **29 USC 1132 (e)**.  At the same time, Ms. Haffey is attempting to improperly split the case venue between SDIN District Court and the (SDNY bankruptcy court).  Thus, Ms Haffey is also trying for force an additional hardship on me by forcing me to have to litigate the same issues twice.

It is also an abuse of Court resources and my scarce resources to have to litigate

---

[1] In limited areas, 1132 (a) (1) (B) and 1132 (a) (7), the District Court has concurrent jurisdiction with State Courts.

this case in two separate venues, when clearly; the District Court has full jurisdictional authority to adjudicate the ERISA claim and DPHH issues.

Ms. Haffey, in her procedurally improper motion for injunction, has not shone that there is any potential for irreparable injury.  There is no potential of irreparable injury to DPHH, since my ERISA Claim is valid and DPHH has a presence and legal representation in the District Court SDIN and are free to raise any legitimate issue.

Ms Haffey also alleges that Sumpter's ERISA claim was properly expunged in October 2009.  However, she refuses to consider the argument that expungement was either erroneous or willfully illegal.  As a result, she refuses to consider the information that I provided her regarding **11 USC 1129 (a) (13),** which, in part, states the following:

> *(13) The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section <u>1114</u> of this title, at the level established pursuant to subsection (e)(1)(B) or (g) of section <u>1114</u> of this title, at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits.*

I have also made Ms. Haffey aware of the Courts comments in the OPEB hearing (docket # 16451 – Transcript page 68: line 5 thru 9), which references 11 **USC 1129 (a) (13)**

In addition Ms. Haffey was made aware of the following content from Judge Drain's final OPEB order (Docket # 16448):

> *The Debtors shall continue to provide benefits for claims incurred by each Eligible Salaried Employee through the cessation date of such retiree's participation in the applicable welfare plan, provided that such retiree has timely paid all requisite contributions for the applicable plan, and provided further that such retirees shall not be required to file proofs of claim in this Court to implement the terms of this decretal paragraph.*

Thus, she has chosen to ignore bankruptcy law and the Court's order as referenced above.

Additionally, there is nothing constraining DPHH from making its argument in District Court. There are remedies available at law to address any potential, yet unidentified injury.

Furthermore, contrary to the text of her motion, Ms Haffey demonstrates a poor understanding of the nature of the benefit payment being sought, the ERISA benefit appeal process and ERISA law in general.  Ms. Haffey's argument could only possibly apply to Cause One of the Sumpter ERISA Complaint.  Thus, under any circumstance DPHH is required to argue its position in District Court, relative to Causes Two, Three, Four and Six.

It should also be noted that Mr. Douglas Dormire Powers of Beckman Lawson, LLP, has filed an appearance on behalf of DPHH and the Benefit Program in the District Court, SDIN.  Mr. Powers requested and was granted an extension of time to respond to the ERISA Complaint.  This raises a serious question as to whether that request for delay was a pretext to allow time for Ms. Haffey to pursue her "Injunction Motion", which I think should be of interest to Bankruptcy Court and the Honorable Tanya Walton Pratt, District Judge, SDIN.

Ms. Haffey continues to allege that I am harassing DPHH.  However, this allegation has no merit. I have been disabled and unable to work, for the past twelve years, because I have lupus, rheumatoid arthritis, major depression and chronic fatigue.  I have recurring episodes of pleurisy, infrequent cardiac episodes and worsening problems with most of my joints.  I have limited use of my hands. I am able to achieve a very modest productivity on my computer keyboard because I wear custom (swan neck) occupational splints on six of my fingers (three on each hand) and a supplemental splint to control two of the joints for my left hand.  On my best days, I have two to three hour of productivity.  When I work on one of these legal issues, I walk a health threatening tight-rope due to the strain of the effort and the accompanying stress.  I share this information to make the point that my situation is too tenuous to waste my limited time and physical resources on any malicious or unproductive endeavor.

For the same reasons, having to answer Ms Haffey's motion in bankruptcy court would pose an unjust an unnecessary hardship on me and my well being, which plainly

demonstrates that the balance of hardship brought by having to argue this injunction, or endure such an order, weighs strongly against me.

It should also be noted that an injunction in this matter offers no benefit to the public's interest.

Although, The court in its ruling regarding the Sumpter Vesting Motion, permits me to refile ( May 1, 2012;  Docket 21876), I have learned that the increased time pressures of Bankruptcy Court and the encumbrances of long distance litigation poses too great a strain on my health. In addition, for my remaining issues, District Court has the proper jurisdiction and Indianapolis is the best venue (as in the case of ERISA). Thus, it was my plan not to seek any further relief from the Bankruptcy Court.  Therefore, Absent Ms Haffey's improper motion, that would still be the case.

Thus, I pray I have made the case that Ms. Haffey's motion is procedurally improper, is factually flawed and that DPHH is in no way threatened by any irreparable injury.  Thus, I hope that you will find it appropriate to dismiss the "Injunction Motion", that you will instruct Ms. Haffey that the District Court has full jurisdiction over the ERISA Complaint and that the Southern District of Indiana - Indianapolis is the proper venue to litigate any related issues.

Respectfully,

James B. Sumpter, pro se
jsump@ieee.org
317-877-0736

# Attachment II

## Final OPEB Termination Order
## Docket # 16448

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
            In re                                         :    Chapter 11
                                                          :
DELPHI CORPORATION, et al.,                               :    Case No. 05-44481 (RDD)
                                                          :
                            Debtors.                      :    (Jointly Administered)
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FINAL ORDER UNDER 11 U.S.C. §§ 105, 363(b)(1), 1108, AND 1114(d) (I)
CONFIRMING DEBTORS' AUTHORITY TO TERMINATE EMPLOYER-PAID POST-
RETIREMENT HEALTH CARE BENEFITS AND EMPLOYER-PAID POST-
RETIREMENT LIFE INSURANCE BENEFITS FOR CERTAIN (A) SALARIED
EMPLOYEES AND (B) RETIREES AND THEIR SURVIVING SPOUSES AND (II)
AMENDING SCOPE AND ESTABLISHING DEADLINE FOR
COMPLETION OF RETIREES' COMMITTEE'S RESPONSIBILITIES

(" FINAL OPEB TERMINATION ORDER")

Upon the motion, dated February 4, 2009 (the "Motion"), of Delphi Corporation and

certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned

cases (collectively, the "Debtors"), for an order confirming the Debtors' authority (or alternatively,

authorizing, but not directing, the Debtors) to terminate, as soon as practicable after March 31,

2009, Salaried OPEB,[1] which termination, inter alia, consists of: (a) eliminating eligibility for

employer-paid post-retirement health care benefits for all current and future active salaried

employees; (b) ceasing to make Company contributions to provide post-retirement health care for

current and future salaried retirees and their surviving spouses; (c) canceling all Retirees' Health

Reimbursement Accounts for Medicare-eligible salaried retirees and their surviving spouses; (d)

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.
       "Salaried OPEB" means the Debtors' current and future costs associated with providing post-retirement
       health and life insurance benefits to salaried retirees and their surviving spouses.

MSW - Draft March 11, 2009 - 1:06 AM



0544481090311000000000001

terminating the Medicare Part B special benefit for current and future salaried retirees and their

surviving spouses; (e) ceasing to provide the 1% employer contribution to the Salaried Retirement

Savings Plan for those active salaried employees hired on or after January 1, 1993 and on or prior

to December 31, 2000; (f) eliminating eligibility for employer-paid post-retirement basic life

insurance benefits for all current and future active salaried employees; and (g) ceasing to make

Company contributions to provide post-retirement basic life insurance benefits for current and

future salaried retirees; and the Court having held a hearing on the Motion, the objections thereto

as reflected in the Revised Proposed Omnibus Hearing Agenda (Docket No. 16326), and the

cross-motions for the appointment of a committee of retired employees (Docket Nos. 14882,

14886, and 15283) on February 24, 2009 (the "Hearing"); and upon the record of the Hearing

(including the testimony of witnesses examined and exhibits admitted into evidence at the

Hearing); and after due deliberation thereon; and good and sufficient cause appearing therefor;

and based on the bench opinion of the Court read into the record at the Hearing (as subsequently

modified by the Court at Docket No. 16443), the Court having entered its Provisional Salaried

OPEB Termination Order (Docket No. 16380); and the United States Trustee having appointed a

Retirees' Committee on February 26, 2009 (Docket No. 16384) pursuant to and subject to the

limitations of the Provisional Salaried OPEB Termination Order; and the Court having considered

certain pleadings filed by the Retirees' Committee at Docket Nos. 16430 and 16431, the response

by the Debtors at Docket No. 16446, and the responses and statements filed by certain other

parties at Docket Nos. 16444 and 16445; and upon the record of the Final Hearing (including

certain further exhibits admitted into evidence at the Final Hearing); and after due deliberation

thereon; and good and sufficient cause appearing therefore; and based on the supplemental bench

opinion of the Court read into the record at the Hearing;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT THE

PROVISIONAL SALARIED OPEB TERMINATION ORDER IS SUPPLEMENTED AS

FOLLOWS:

1.      The Debtors have made a substantial showing that none of the Salaried OPEB

benefits have vested with regard to any Eligible Salaried Retiree group hereof.  The Retirees'

Committee has not presented any competent evidence to establish, consistent with the Court's

prior bench ruling and applicable law, that Salaried OPEB benefits have vested with respect to

any Eligible Salaried Retiree or group thereof.

2.      The Debtors' Salaried OPEB benefits have not vested and the Debtors have

reserved the right to modify or terminate Salaried OPEB benefits.

3.      The Debtors are authorized, but not directed, to terminate Salaried OPEB benefits

as provided in the Motion.

4.      The Debtors shall continue to provide benefits for claims incurred by each

Eligible Salaried Employee through the cessation date of such retiree's participation in the

applicable welfare plan, provided that such retiree has timely paid all requisite contributions for

the applicable plan, and provided further that such retirees shall not be required to file proofs of

claim in this Court to implement the terms of this decretal paragraph.

5.      The Debtors are authorized and directed to make provisions for, and contingent

upon the occurrence of a triggering event under 29 U.S.C. §§ 1341 or 1342 implement, a

Voluntary Employees' Beneficiary Association ("VEBA") under 26 U.S.C. § 501(c)(9) for the

purpose of qualifying covered employees who have retired or will retire for the tax credit

available through 26 U.S.C. § 35(e)(1)(K) as amended by § 1899G of the American Recovery

And Reinvestment Act Of 2009 (PL 111-5, February 17, 2009, 123 Stat 115); provided, however,

3

that (a) the Debtors shall have no obligation to fund or contribute to any such VEBA in any

respect and such funding or contributions will come solely from participants in the VEBA and (b)

the Debtors shall be required to maintain such VEBA only through the later of the month ending

prior to January 1, 2011 or such later date as may be established under the provisions of 26

U.S.C. 35(e)(1)(K) (or any substantially similar provision in the Internal Revenue Code

providing an applicable health care tax credit) as the same may be amended from time to time.

6.      Notwithstanding the establishment of any VEBA pursuant to this Order, the

Debtors shall maintain flexibility to implement changes to the VEBA on terms and conditions

determined by the Company.

7.      The Debtors are authorized and directed to mail a follow-up notice to all Eligible

Salaried Retirees who do not elect continuation of coverage prior to March 28, 2009 explaining

the consequences of such election and offering a second and final chance for such individuals to

elect, on or prior to April 15, 2009, continuation of coverage, in which case such coverage shall

be reinstated retroactively to April 1, 2009 upon payment of the applicable full cost by the

individual retiree.

8.      The responsibilities of the Retirees' Committee previously appointed pursuant to

the Court's direction for the limited purposes set forth in the Provisional Salaried OPEB

Termination Order have been satisfied and discharged.  However, in the interests of justice, the

Court will continue the existence of the Retirees' Committee through the later of (a) the

consideration by this or any court of competent appellate jurisdiction of any motions to stay the

implementation of the Provisional Salaried OPEB Termination Order or this Order and (b) the

date on which the Debtors implement the termination actions set forth in this Order.  The Court

hereby prospectively amends and limits the scope of the authority of the Retirees' Committee to:

4

(a) participating in any hearing to stay the implementation of the Provisional Salaried OPEB

Termination Order or this Order and (b) meeting and conferring with the Debtors and negotiating

any agreements that are mutually agreeable to the Debtors and the Retirees' Committee regarding

the terms and conditions pursuant to which the Debtors implement the authority granted herein

according to which the Retirees' Committee would settle and waive any and all appeals with

respect to the Provisional Salaried OPEB Termination Order or this Order.  The Debtors remain

authorized to reimburse the reasonable and documented costs and expenses of the legal counsel

retained by the Retirees' Committee in an amount not to exceed $200,000 without further order

of this Court.  Nothing in the Provisional Salaried OPEB Termination Order or this Order shall

trigger any of the statutory provisions of section 1114 of the Bankruptcy Code (other than the

Court's continued exercise of its discretionary authority under section 1114(d) of the Bankruptcy

Code).

       9.      The Court shall retain jurisdiction to (a) hear and determine all matters arising

from the implementation of this Order, and (b) enter any further orders necessary to implement

the provisions of this order.


Dated:   March 11, 2009
        New York, New York

                                     /s/ Robert D. Drain
                                     UNITED STATES BANKRUPTCY JUDGE