Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 05-44481(RDD)

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   DPH HOLDINGS CORP., ET AL.,

8

9          Debtors.

10

11  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13                 U.S. Bankruptcy Court

14                 300 Quarropas Street

15                 White Plains, New York

16

17                 April 25, 2013

18                 10:09 AM

19

20  B E F O R E :

21  HON ROBERT D. DRAIN

22  U.S. BANKRUPTCY JUDGE

23

24

25

Page 2

1    Hearing re:  Notice of Agenda Proposed Sixtieth Claims

2    Hearing Agenda

3

4    Hearing re:  Notice of Agenda Proposed Eighty-Second Omnibus

5    Hearing Agenda

6

7    Hearing re:  Debtors' Motion For Order (I) Enforcing

8    Modification Procedures Order, Modified Plan and Plan

9    Modification Order Injunction and Thirty-Seventh Omnibus

10   Claims Objection Order Against James Sumpter, as Plaintiff,

11   in Federal Court ERISA Action; and (II) Directing James

12   Sumpter to Dismiss Federal Court ERISA Action Against the

13   Reorganized Debtors and the Reorganized Debtors Life and

14   Disability Benefits Program (related document(s) #22040)

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Dawn South

1    A P P E A R A N C E S :

2    BUTZEL LONG

3         Attorney for the Debtors

4    150 West Jefferson

5    Suite 100

6    Detroit, MI 48226

7

8    BY:  CYNTHIA J. HAFFEY, ESQ.

9

10   ALSO PRESENT TELEPHONICALLY:

11   JAMES SUMPTER - PRO SE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 4

1                    P R O C E E D I N G S

2              THE CLERK:  All rise.

3              THE COURT:  Please be seated.  Okay, good

4      morning.  In re: DPH holdings.

5              MS. HAFFEY:  Good morning, Your Honor,

6      Cynthia Haffey on behalf of the reorganized debtors.

7              If it's all right with Your Honor could I

8      stay at counsel table this morning?

9              THE COURT:  Just as long as the microphone

10     picks you up, because we have Mr. Sumpter on the phone.

11     Can you hear Ms. Haffey, Mr. Sumpter?

12             MR. SUMPTER:  Yes, I can.

13             THE COURT:  Okay.  Good morning.

14             MS. HAFFEY:  Good morning, Mr. Sumpter.

15             MR. SUMPTER:  Good morning.

16             MS. HAFFEY:  First, Your Honor, let me go

17     through the agendas for today.

18             The proposed sixtieth claims hearing agenda.

19     There are a continued or adjourned matter the

20     sufficiency hearing regarding proofs of administrative

21     expense claims numbers 19715 and 19716.

22             The hearing with respect to this matter has

23     been adjourned until June 20th, 2013 pursuant to the

24     notice of adjournment of sufficiency hearing with

25     respect to the reorganized debtors' objections to proof

Page 5

1          of administrative Expense claim numbers 19715 and

2          19716, docket number 22045.

3                    The eighty-second omnibus hearing agenda, the

4          only matter up before the Court today is the Sumpter

5          ERISA injunction motion.

6                    Responses were filed by Mr. Sumpter,

7          including a letter response to which we replied to as

8          well by letter and a formal response to which a reply

9          was filed by the reorganized debtors.  Mr. Sumpter's

10         response is docket number 22048 and the reorganized

11         debtors' reply is 22049.

12                   Before we proceed with that motion,

13         Your Honor, let me just give you a brief update if you

14         would like in regards to the claims matters as well as

15         the adversary proceedings.

16                   There are only 17 proofs of claims left to be

17         resolved, and 15 preference actions left to be resolved

18         of which 5 of those will likely be dismissed within the

19         next month.

20                   THE COURT:  Okay.  And the proofs of claims,

21         those are all administrative claims?

22                   MS. HAFFEY:  They are.  They --

23                   UNIDENTIFIED SPEAKER:  There's three

24         prepetition (indiscernible) specific.

25                   THE COURT:  Okay.  Which would given the

Page 6

1          assumption of their agreements be administrative.

2                    UNIDENTIFIED SPEAKER:  Yes.

3                    THE COURT:  Okay.

4                    MS. HAFFEY:  Okay.  This is the reorganized

5          debtors' motion, Your Honor, for an injunction to seek

6          an order from this Court to require that Mr. Sumpter

7          dismiss with prejudice an action that he filed in the

8          United States District Court Southern District of

9          Indiana.  The order -- excuse me -- our motion seeks an

10         order enjoining that action.  The Federal Court action

11         seeks relief that has already been previously

12         disallowed and enjoined --

13                   THE COURT:  Before we get into the merits of

14         the injunction motion can you tell me what, if

15         anything, is happening in the SD Indiana action?

16                   And I say this because separate and apart

17         from issues of jurisdiction and the merits I could not

18         really tell from the pleadings -- although the action

19         was filed very recently -- whether the District Court

20         in Indiana is either on the one hand aware of your

21         present motion and expressed some view that it's fine

22         if it goes forward or on the other hand moving ahead

23         with its own determination as to the applicability of

24         the discharge injunction or the other injunction under

25         the plan or the res judicata issues or perhaps

Page 7

1          something in the middle where nothing has happened and

2          District Court hasn't taken a position on this action

3          because really nothing has happened in front of it.

4                    And I say that because it's clear to me that

5          the District Court does I think have jurisdiction to

6          consider these issues, to consider the effect of the

7          discharge, to consider the injunction, to consider

8          res judicata, they could all be defenses that would be

9          asserted.  I don't think it has exclusive jurisdiction,

10         but it has jurisdiction, and I don't want to get

11         crosswise with another court if another court has

12         already been working on something on these issues.

13                   MS. HAFFEY:  I appreciate that, Your Honor.

14         Only a little bit has happened.

15                   As you noted, Mr. Sumpter's complaint was

16         only recently filed -- excuse me -- an initial --

17                   THE COURT:  And that was -- it was in March,

18         right?  I think.

19                   MS. HAFFEY:  I have it in front of me, I can

20         give you the date in just a moment.  That's correct,

21         Your Honor, March 4th --

22                   THE COURT:  Okay.

23                   MS. HAFFEY:  -- 2013 is when it was signed by

24         Mr. Sumpter, so on or about that date.

25                   THE COURT:  Okay.

1              MS. HAFFEY:  And when the reorganized

2      debtors' initial answer was due we did receive an

3      extension from the court pretty much just as a matter

4      of right in that -- in that court.  This motion was

5      then filed in this court.  We then filed a motion for

6      an extension to respond to the complaint with the

7      Indiana court --

8              THE COURT:  And that motion --

9              MS. HAFFEY:  -- alerting --

10              THE COURT:  -- that motion referenced this

11      motion?

12              MS. HAFFEY:  It did, and I think we even

13      attached it --

14              THE COURT:  Okay.

15              MS. HAFFEY:  -- Your Honor.  We have asked

16      Mr. Sumpter to concur in that motion and he never

17      responded to that request, but the judge did grant our

18      request, and the order provides that our response to

19      the complaint in the Indiana action isn't due until two

20      weeks after this Court enters an order in regards to

21      this motion.

22              THE COURT:  Okay.  So the Indiana judge is

23      aware of this motion, and I guess as part of your

24      motion -- is it a him or a her?

25              MS. HAFFEY:  It's a her.

Page 9

```
 1              THE COURT:  Your motion in front of her,

 2       Mr. Sumpter did have the opportunity to say, no, you

 3       should be deciding this, Indiana Judge, not Judge Drain

 4       and --

 5              MR. SUMPTER:  That's not --

 6              THE COURT:  -- whether that opportunity was

 7       taken or not the Indiana court has extended the time to

 8       answer.

 9              MS. HAFFEY:  She did extend the time, the

10       Court rendered its decision on that motion pretty much

11       within 24 or 48 hours, so I think Mr. Sumpter was

12       probably just about to tell you that he didn't really

13       have an opportunity to respond to that because she did

14       render the decision and enter an order --

15              THE COURT:  Right.  Okay.

16              MS. HAFFEY:  -- almost immediately.

17              THE COURT:  Any way -- in any event the

18       Indiana court is aware of this and --

19              MS. HAFFEY:  That's correct.

20              THE COURT:  -- this is different than I

21       gather what happened to Judge Easterbrook in In re:

22       Mahurkar Double Lumen Hemodialysis Catheter Patent

23       litigation, 140 B.R. 949 N.D. Illinois, 1992, where I

24       think he felt he was blindsided by an ex parte action

25       in the Bankruptcy Court to issue an injunction when he
```

 1    had already scheduled briefing on the issues in front

 2    of him.

 3              MS. HAFFEY:  Yes, Your Honor --

 4              THE COURT:  Okay.

 5              MS. HAFFEY:  -- it is entirely different.

 6    Nothing --

 7              THE COURT:  All right.

 8              MS. HAFFEY:  -- other than what I have just

 9    stated to you has happened in that action.

10              THE COURT:  Okay.  Do you disagree with any

11    of that, Mr. Sumpter?

12              MR. SUMPTER:  The only part I disagree with

13    is I have not had an opportunity to respond to the

14    Court as far as that extension of time.

15              THE COURT:  The District Court.

16              MR. SUMPTER:  Yes.

17              THE COURT:  Right.  No, I understood that

18    from what Ms. Haffey said, but on the other hand I'm

19    not going to second guess the District Court's decision

20    to rule promptly on the motion that DPH filed in that

21    action.  So -- okay.

22              So, Ms. Haffey, I'm sorry I interrupted you,

23    but why don't you go ahead then.

24              MS. HAFFEY:  The relevant facts and timeline

25    of this case are important so let me just briefly

Page 11

1    review those with the Court.

2              Mr. Sumpter seeks a life insurance payout

3    that was never a benefit that he was entitled to under

4    Delphi's plan or for that matter General Motors' plan.

5    I know that he disputes that, but again, the timeline

6    is important.  The benefit was terminated by General

7    Motors in the mid-90s.

8              Mr. Sumpter first requested the benefit with

9    Delphi corporation in 2004.  He again made the request

10   -- and he was provided a form my understanding is at

11   that time and that he says was the wrong form, and I

12   can only presume it was because the benefit wasn't

13   offered under the benefits plan -- but nothing happened

14   after 2004.  He did not pursue the benefit.  Until

15   again he made a request in March 12th of 2009.

16             The claims administrator denied the claim on

17   June 3rd, 2009, and on June 11th, Mr. Sumpter, formally

18   requested a copy of all the documents and records,

19   including the summary plan description for salaried

20   employees and requested that the administrator

21   specifically state which SPD had been relied on when it

22   made its decision.

23             On July 6th Mr. Sumpter informed the claims

24   administrator that he intended to appeal the decision

25   of the denial benefits, and in that letter he stated

Page 12

```
 1              that he was aware of the Delphi bankruptcy and his need

 2              to preserve his claim by filing an administrative

 3              claim.

 4                      On July 8th he did then file his

 5              administrative claim seeking the life insurance payout

 6              that he had already been denied and he attached to that

 7              claim various letters between himself and the claims

 8              administrator again referencing the issue about which

 9              SPD controlled.

10                      THE COURT:  And I know this acronym is used a

11              lot, but SPD stands for?

12                      MS. HAFFEY:  Summary plan description.

13                      THE COURT:  Okay.

14                      MS. HAFFEY:  On July 15th the benefit

15              administrator responded to Mr. Sumpter's requests in

16              writing in a letter and provided him with a copy of

17              that summary plan description for salaried employees

18              and also provided him with the other information that

19              he requested in the letter.  That information actually

20              had also been sent to him on July 6th via an email.

21                      On July 31st Mr. Sumpter formally appealed

22              the decision of the denial of benefits, and in that

23              appeal he asserted again that the General Motors' SPD

24              controlled.

25                      According to this Court's orders the bar date
```

1          for administrative claims from --

2                    THE COURT:  And I'm sorry, and the documents

3          that the administrator provided in July, including the

4          SPD, were not the GM one, it was the Delphi one?

5                    MS. HAFFEY:  It was the Delphi.

6                    THE COURT:  All right.  And that's attached

7          -- that correspondence is attached to the pleadings and

8          the proof of claim I think, right?

9                    MS. HAFFEY:  The proof of claim is attached

10         to the pleadings as well as the letters.  I don't know

11         if that actual SPD is attached, Your Honor, but I do

12         believe I have a copy of it with me if it's not that I

13         can provide to the Court.

14                   THE COURT:  Well, no, I -- it's less -- I

15         don't want to review the SPD, I just -- I'm confirming

16         my recollection that the letter is referred to

17         providing the SPD, and the SPD that was provided was

18         the Delphi one.

19                   MS. HAFFEY:  That's correct, Your Honor.

20                   So as this Court knows the bar date for

21         administrative claims was July 15th, 2009, and the bar

22         date for final administrative expenses, those claims

23         that arose between June 1st, 2009 and October 5th,

24         2009, was on November 5th, 2009.

25                   On October 15th of 2009 the reorganized

Page 14

```
 1        debtors filed their objection to Mr. Sumpter's

 2        administrative claim.  He did not respond to that

 3        claim.  He did receive notice of the objection.  I know

 4        he states in his response that he did not, but I

 5        believe, and I obviously can't speak for Mr. Sumpter,

 6        but it appears that he has a misreading of the

 7        affidavit of service in the exhibits attached to it

 8        where it refers to Exhibit E and he saw his name in

 9        Exhibit F.  Well that Exhibit F was actually an

10        attachment to the Exhibit E of the notice.  And in our

11        reply brief we attached those for this Court to see how

12        there could have been a confusion.

13              But he did receive notice.  The address as

14        provided on that notice is the address that Mr. Sumpter

15        used in his correspondence almost recently with this

16        Court as well as with the claims administrator.

17              Mr. Sumpter never filed a final

18        administrative claim.

19              On December 2nd this Court entered an order

20        disallowing and expunging Mr. Sumpter's administrative

21        claim, and of course our position is that all the

22        claims asserted by Mr. Sumpter in the Federal Court

23        action pending in Indiana were expunged and disallowed

24        by this Court's orders.

25              And if you would like, Your Honor, I can go
```

Page 15

1           through the actual cause of actions.  There are five of

2           them in that action that are pending against DPH or the

3           plan.

4                    There is a -- one cause of action that is

5           against the planned administrator, only MetLife.

6                    THE COURT:  I think that's worthwhile to go

7           through the causes of action.

8                    MS. HAFFEY:  Okay.

9                    THE COURT:  And I have a copy of the

10          complaint here which is attached as an exhibit,

11          Exhibit B.

12                   MS. HAFFEY:  So the first cause of action,

13          Your Honor, is for failure to pay the disability life

14          insurance benefit.  And in that claim he -- Mr. Sumpter

15          claims he's entitled to a benefit in the form of a

16          $100,000 disability life insurance pay out.  And if you

17          refer to the administrative claim it is on the face of

18          the claim life insurance claim disability early payout

19          and he's seeking $97,788.  It is the identical claim

20          that Mr. Sumpter sought at that time.

21                   In the second cause of action -- it's

22          entitled second cause of action for failure to meet

23          ERISA notice requirement for distribution of summary

24          plan description.

25                   Mr. Sumpter asserts that the plan

Page 16

1          administrator failed to provide the 1996 SPD for the

2          period between July 30th, '97 and November 5th, 2009.

3                    THE COURT:  Okay.

4                    MS. HAFFEY:  And again, the question of which

5          SPD was proper and whether he had received SPDs was

6          already an issue and was in -- stated in Mr. Sumpter's

7          correspondence with the plan administrator as early as

8          -- and I got to go back to my note, excuse me,

9          Your Honor -- June 11th of 2009 when he formally

10         requested a copy of all documents, records, and

11         including the summary plan description, and he

12         requested that the administrator specifically state

13         which SPD was believed to be in force.

14                   The third --

15                   MR. SUMPTER:  Excuse me, is it possible to

16         interrupt, Your Honor?

17                   THE COURT:  Sure.  I was going to interrupt

18         at that point too.

19                   MR. SUMPTER:  Just for the record this is

20         James Sumpter.

21                   THE COURT:  Right.  You don't have to

22         identify yourself each time you speak because you're

23         the only one on the phone.

24                   MR. SUMPTER:  Okay.

25                   THE COURT:  But before you -- before you

Page 17

1      speak -- and I'm going to let you speak on this -- this

2      point.

3              So as I gather it with regard to the second

4      cause of action in the District Court complaint the

5      debtors contend that the cause of action is premised

6      upon the plan administrator through its agents not

7      providing the correct SPD, not providing the correct

8      information with regard to the SPD.  And the debtors'

9      contention is that Mr. Sumpter could have determined,

10     based on the provision by the administrator in July in

11     response to his request from June for the documents of

12     only the Delphi SPD, that that cause of action was

13     known or knowable to Mr. Sumpter then, at least in July

14     of 2009 because of the documents provided the

15     administrator took the view that the applicable SPD was

16     the Delphi one, not the GM one.

17             MS. HAFFEY:  That's correct, Your Honor.

18             THE COURT:  Okay.  So, Mr. Sumpter, you can

19     -- you can address that point now with regard to the

20     second cause of action.

21             MR. SUMPTER:  Well, in the appeal process

22     when I had the communications with the person who was

23     doing the review when we had the discussion about which

24     SPD was governing he indicated that an SPD had been

25     released in 1996, which is -- was new information.  And

1           so it wasn't until December that he provided a copy of

2           that SPD.

3                     THE COURT:  But that was the GM one, right?

4                     MR. SUMPTER:  Yes.

5                     THE COURT:  It must have been.

6                     MR. SUMPTER:  (Indiscernible - 00:18:32) of

7           1996.

8                     THE COURT:  Right.

9                     MR. SUMPTER:  Now the summary -- I was not

10          aware of this until -- that this SPD even existed until

11          October I guess it was or somewhere in the December or

12          whenever it was of 2009.

13                    The SPD that I contend, and I still do, that

14          governs my benefits is the GM 1992 SPD, because the

15          1996 was never distributed.  And I challenged them on

16          that.

17                    And he later -- I'm going to get a little

18          ahead, but I think it'll benefit us -- gave me a copy

19          of an enrollment document for 1994, and it was in the

20          enrollment document that he asserts the change is

21          actually made.

22                    And so the reason I have this claim for the

23          1996, if according to ERISA rules if they had made a

24          change then they were supposed to publish a 199 --

25          distribute a 1996 SPD, which they never distributed,

1        which is part of the reason that I have a problem here.

2        Is that had they followed the procedures there wouldn't

3        be an issue now if that was the case.

4                And so that's why I have this -- this action

5        regarding the failure to provide notice as far as that

6        SPD is concerned.  But that SPD was not known to me

7        until whenever -- maybe it was December of -- I think

8        December is the right month of 2009.

9                THE COURT:  Well, let me ask you two

10       questions in response to that.

11               The first is, why is it that if you had known

12       of a 1996 one you would have acted differently?

13               MR. SUMPTER:  Well, if I had known of the

14       1996 one it would have meant that I wasn't entitled to

15       the benefit or it would have meant that the benefit has

16       been canceled -- that option had been canceled.  And so

17       I wouldn't be involved in this at all, I wouldn't have

18       had that expectation.

19               THE COURT:  Right.  Okay.

20               MR. SUMPTER:  But when I became disabled that

21       I had that option.

22               THE COURT:  Right.  And I assume that was

23       going to be your answer and I understand it.  But let

24       me ask you the second question.

25               When Delphi -- the plan administrator took

1      the position that your benefits -- your claimed benefit

2      to this $100,000 was denied that was based on neither

3      the 1996 nor the 1992 policy, it was based on a later

4      policy, right?

5              MR. SUMPTER:  It was based on the later

6      summary plan description.

7              THE COURT:  All right.

8              MR. SUMPTER:  It was based on the 2001

9      summary plan description.

10             THE COURT:  So at that point I mean you

11     basically assumed there was another policy, right?

12             MR. SUMPTER:  No -- well, the -- what my

13     argument is, is that the summary plan description that

14     was in effect when I became disabled is the one that

15     governs my --

16             THE COURT:  No, I understand that.  I

17     understand that.  But I'm focusing on -- I'm focusing

18     on this second claim, this second cause of action in

19     your complaint.

20             MR. SUMPTER:  Okay.

21             THE COURT:  And it's basically a cause of

22     action premised upon your contention that the plan

23     administrator, and through it, Delphi, did not provide

24     you with the 1996 amendment, that you learned about

25     that only later.

Page 21

1          MR. SUMPTER:  That's right.

2          THE COURT:  And that you would have acted

3     differently in your planning and in your decision to do

4     the $100,000 election if you would had known about the

5     1996 issue.

6          MR. SUMPTER:  Yes.

7          THE COURT:  And I understand that, but it

8     seems to me that when Delphi took the position in the

9     response to all the documents -- the request to provide

10    the documents, which they did in July of 2009, weren't

11    you on notice that Delphi was relying on something

12    other than the document you thought controlled?

13         MR. SUMPTER:  Yes, I was aware of that.

14         THE COURT:  Okay.

15         MR. SUMPTER:  But that's the -- I mean that's

16    the dispute.  They were relying on a document that was

17    published after I became disabled.

18         THE COURT:  Right.  But again, this is --

19    this is -- I'm focusing at this point on this issue,

20    not on the merits --

21         MR. SUMPTER:  Okay.

22         THE COURT:  -- but on the timing, and what it

23    was that you knew or could have known or could have

24    done and whether you knew that or could have known it

25    as far as having a potential claim against, among

Page 22

1        others, Delphi based on the disclosure of the -- of the

2        documents.

3                And it seems to me as long as -- I mean the

4        debtors' argument is that as long as you knew or could

5        have known based on what -- on the information you had

6        before either of the two bar dates and/or the hearing

7        on the claim objection that at this point you --

8                MR. SUMPTER:  Well, I think --

9                THE COURT:  -- you can't pursue that claim

10       because it's discharged and/or it's been disallowed.

11               MR. SUMPTER:  Well, I think I can answer that

12       question.

13               THE COURT:  Okay.

14               MR. SUMPTER:  In July, as far as I was aware,

15       there were only two summary plan descriptions, in 1992

16       and in 2001.

17               Now, the reason that I can -- and I wasn't

18       aware of the 1996 -- and the reason I could file this

19       second cause of action regarding the 1996 is that the

20       ERISA requirement is if there's a change in the plan

21       you have to publish a document within five years.

22               So they made a change in 1994 and the five

23       years would go back to 1992 or whatever.  So they made

24       -- apparently they should have distributed this 1996

25       document.

1                    THE COURT:  Within five years.

2                    MR. SUMPTER:  I'm sorry?

3                    THE COURT:  Within five years of that

4         document.  So 2001.

5                    MR. SUMPTER:  Within five years of -- every

6         -- they have to -- they have to -- like five years from

7         1992.

8                    THE COURT:  Right.  Either '92 or '96,

9         whenever it came out.

10                   MR. SUMPTER:  Right.

11                   THE COURT:  Okay.

12                   MR. SUMPTER:  So it was during that process

13        that I learned that they made a change and failed to

14        submit or publish the SPD, and so that's what this

15        second cause of action is about.  They made a change

16        and failed to publish this SPD.  And I -- there was no

17        way I would have known that until it was revealed to me

18        during the appeal process.

19                   THE COURT:  Well, okay.  I'm going to

20        anticipate what the debtors are going say on this.

21                   The first is that that error on their part,

22        that wrong on their part, assuming it was not disclosed

23        as you've stated, is rooted in the prebankruptcy past,

24        you know, that it started -- the obligation to disclose

25        the 1996 SPD started when it was issued in 1996 and

1    continued for five years thereafter.

2              MS. HAFFEY:  And if I could just --

3              MR. SUMPTER:  Okay.

4              MS. HAFFEY:  -- interject, Your Honor, of

5    course at that the time it was General Motors'

6    obligation.

7              THE COURT:  Right.  But -- that's fair, but I

8    guess the argument is that Delphi assumed that

9    responsibility.

10             The second -- the second argument the debtors

11   going make, which is -- is as follows.

12             Assuming for the moment that you still have a

13   claim for that, even though it's rooted in the

14   prebankruptcy past, and so therefore it really would

15   have been covered by the first bar date in the case,

16   which covers the prepetition claims, it was capable of

17   detection by you based on the facts you did know, which

18   is that Delphi was relying on a different document,

19   it's own SPD, which is what the plan administrator

20   provided to you in July, but what it was basically

21   referring to in its denial letters, and you were

22   relying on a 1992 SPD from GM.

23             But basically given that distinction one

24   could have asked for those documents and gotten them

25   well before the date passed to file an admin claim

Page 25

1      and/or object to the claim objection, and it didn't

2      happen.

3               I guess I see some logic to both of those

4      arguments.  I'm not sure what your claim would have

5      been based on the failure to disclose the 1996 SPD

6      other than something rooted in the prebankruptcy past,

7      and that's under the Bankruptcy Code not an

8      administrative claim, it's a prebankruptcy claim.

9               There is the issue of whether you had notice

10     of it to assert that claim, but I think -- well, I'll

11     have to decide this -- but I think there's a pretty

12     good argument to say that it was capable of detection

13     before the bar dates passed.

14               MS. HAFFEY:  In particular, Your Honor, since

15     Mr. Sumpter did first request the benefit in March of

16     -- I think it was March of 2004 and then just let it

17     drop and went no further, if he had pursued it at that

18     time it certainly would have been discovered.

19               THE COURT:  Okay.

20               MR. SUMPTER:  Well, let me comment on that.

21     Because I actually started work on this in December of

22     2003, and the problem -- and I have an extensive

23     communication record that, you know, I was prepared to

24     provide when this issue arose in the District Court, I

25     wasn't prepared to litigate it here, but -- and so I --

1          at that same time I submitted my letter and I submitted

2          the appropriate sections from the summary plan

3          description and identified the summary plan description

4          that I was relying on, and I did that in 2009 also.

5                    THE COURT:  Right.

6                    MR. SUMPTER:  And -- but I was dealing with

7          people who were -- which we had a problem with the

8          benefit center.  They were uninformed or their first

9          level firewall was just a frustration for me at the

10         time when I couldn't manage it health wise.

11                   And the way this benefit works, it could not

12         be paid before October 2010, because that was when --

13         it only is paid when your supplemental disability

14         starts.  And my supplemental disability benefit did not

15         start until October 15, 2010.

16                   THE COURT:  Right.

17                   MR. SUMPTER:  So when they sent me a form for

18         terminally ill payout I decided I would wait until I

19         had more opportunity or whatever, I had time to pursue

20         -- I had time to pursue it as long as that benefit

21         wasn't canceled even after I was receiving my

22         supplemental.  So I wasn't -- I was -- I had plenty of

23         time to pursue it.

24                   Now when the OPEB order became a threat it

25         became imperative for me that I do it before April 1 of

Page 27

1    2009, and that's when I filed again.  And at that time

2    in fact they did send me the correct form.

3              THE COURT:  Right.  I accept all of that, but

4    -- and again, if Delphi weren't in bankruptcy you might

5    have a claim for all that that would get paid in

6    hundred cent dollars, but given that it is in

7    bankruptcy and the Bankruptcy Code makes a distinction

8    between prebankruptcy and post-bankruptcy claims -- and

9    that's what we're talking about here.  We're not

10   talking about -- you know, we're really talking about

11   timing issues as opposed to the underlying merits.  And

12   the timing issue here is such I think that the claim

13   was asserted in the prebankruptcy period, Delphi under

14   your argument, which for purposes of this analysis I'm

15   accepting, didn't provide the underlying document that

16   changed the GM plan, and all of that was really a

17   prebankruptcy process.  And your point is you would

18   have done things differently if they had provided it,

19   but they didn't, and again, that was something that

20   happened prebankruptcy.

21              So I think I understand the facts as alleged

22   here that underlie this cause of action.

23              I'm going to think a little bit about, you

24   know, what they mean as far as your right to get paid

25   as a claim against Delphi --

```
 1                    MR. SUMPTER:  Okay.  May I ask one --

 2                    THE COURT:  -- but I think we should move on

 3           to the third cause of action --

 4                    MR. SUMPTER:  Okay.

 5                    THE COURT:  -- asserted in the complaint.

 6                    MR. SUMPTER:  Your Honor, if I could add one

 7           piece of information I think will be -- at least I

 8           think will be helpful.

 9                    The -- this particular cause of action is

10           allowed under ERISA, and it actually is a cause of

11           action for the benefit of the government.

12                    THE COURT:  But you're looking for equitable

13           relief, you're looking to be paid money by Delphi to

14           you, right?

15                    MR. SUMPTER:  Yeah, what -- yes, that's

16           right.  What I'm doing is in each one of those causes

17           of actions somehow or another I want to get my

18           $100,000.

19                    THE COURT:  Right.

20                    MR. SUMPTER:  But the -- if I was to prevail

21           in this second cause of action it would mean that DPH

22           would owe the government $200,000.

23                    THE COURT:  Well -- all right.

24                    MR. SUMPTER:  And I don't know if there's a

25           distinction about --
```

Page 29

1                      THE COURT:  That's not the relief you're

2          seeking though.

3                      MR. SUMPTER:  I'm sorry?

4                      THE COURT:  That's not the relief you're

5          seeking.  You're seeking relief, quote, "appropriate

6          equitable relief" to be paid in essence the $100,000,

7          and that's within the definition in the Bankruptcy Code

8          of the term claim, which is in 1015 of the Bankruptcy

9          Code, which refers to a right to payment or a right to

10         an equitable remedy for breach of performance if such

11         breach gives rise to a right to payment in each case

12         whether or not reduced to judgment, liquidated,

13         unliquidated, fixed, contingent, matured, unmature,

14         disputed, undisputed, legal equitable, secured, or

15         unsecured.

16                      So once you're looking for payment it falls

17         into the Bankruptcy Code claim structure or claim

18         regime that, you know, along with all the other people

19         that are asking for money from the debtor.

20                      MR. SUMPTER:  Okay.

21                      THE COURT:  Okay.

22                      MS. HAFFEY:  The third cause of action,

23         Your Honor, is virtually identical to the second cause

24         of action, with the exception that rather than the SPD

25         it's a claim of having not received the summary

```
 1          material modification during the same time frame.

 2                    THE COURT:  Which is the summary of the

 3          1996 --

 4                    MS. HAFFEY:  The change.

 5                    THE COURT:  -- change.

 6                    MS. HAFFEY:  That's correct.

 7                    MR. SUMPTER:  Judge, actually the claim took

 8          place in -- it actually took place January 1, 1995.

 9                    THE COURT:  I'm sorry.

10                    MR. SUMPTER:  The change actually went into

11          effect January 1, 1995.

12                    THE COURT:  Okay.  But it --

13                    MR. SUMPTER:  The summary --

14                    THE COURT:  I'm sorry, go ahead.

15                    MR. SUMPTER:  The summary of material

16          modification, you know, can't be published until after

17          the change goes into effect, and it has like 180 days

18          to do that or whatever.

19                    THE COURT:  Right.

20                    MR. SUMPTER:  So -- but that's -- that's just

21          an additional violation that I see.

22                    THE COURT:  Okay.  But again, it seems to me

23          to be quite similar to cause of action number two,

24          which is it arose in the prebankruptcy period because

25          GM at that time, then Delphi having assumed the
```

Page 31

1          obligation, had an obligation by mid-1995 to provide

2          this summary.

3                    And again, I understand if you had had that

4          summary you might have done your planning differently,

5          you wouldn't have planned to, you know, deal with this

6          asset the way you eventually did, but I think -- I

7          think the debtors' response on this -- on cause of

8          action number two would apply to this one too, which is

9          that it's rooted in the prebankruptcy past, to the

10         extent that no one would have known about the summary

11         given the plan administrator's explanation of the

12         denial of your request in June of 2000 -- well, yeah,

13         in June of 2009 and then the provision of the documents

14         upon which that denial was based, the debtors will say

15         that that was -- this issue was reasonably detectable

16         at least by then, if not before then, and then they're

17         going to rely on the bar dates and the plan injunction

18         and discharge.

19                   So that even though you say you didn't

20         actually learn of this until after October 6th they'll

21         say, well, it could have been found out by you before

22         then.

23                   MR. SUMPTER:  If I could respond to that.

24                   I don't know how you could find it out.  The

25         only way I found it out was when I got to the more

Page 32

1        authoritative level in the company, in the

2        administration, and they informed me of it.  But the

3        first level of people don't have that kind of knowledge

4        and expertise.  I don't know how I would have been able

5        to find out.

6                    THE COURT:  But --

7                    MR. SUMPTER:  I could have assumed that there

8        was another change in it.

9                    THE COURT:  But you knew that they were

10       relying on a different document.

11                   MR. SUMPTER:  Yes, I knew they were relying

12       on 2001.

13                   THE COURT:  Right.  So the debtors will say,

14       well, okay, you knew that that's what they were relying

15       on.  In some respects the provision of this other

16       document at that point doesn't matter because they were

17       relying on a different one.  It's not like they were

18       relying on the 1996 one.

19                   MR. SUMPTER:  Well, what I knew is they were

20       relying on a document that didn't apply to me --

21                   THE COURT:  Right.

22                   MR. SUMPTER:  -- because it was published

23       after I became disabled.

24                   THE COURT:  Right.

25                   MR. SUMPTER:  And what I believed was the

Page 33

1          document they should have been relying on was the only

2          one that had been distributed --

3                    THE COURT:  Okay.

4                    MR. SUMPTER:  -- and there's other evidence

5          of this --

6                    THE COURT:  All right.

7                    MR. SUMPTER:  -- was the 1992 one.

8                    THE COURT:  Okay.

9                    MS. HAFFEY:  The fourth cause of action,

10         Your Honor, is entitled fourth cause of action for

11         failure to meet ERISA claim procedure notice

12         requirements.

13                   And in that allegation Mr. Sumpter asserts

14         that the reorganized debtors failed to provide a timely

15         response to his first appeal of its adverse decision.

16                   We have two arguments in regards to that,

17         Your Honor.

18                   First of all the response time that's

19         required is 45 days.  The allegation we believe under

20         the doctrine of res judicata which bars cause of action

21         that arise from the same operative nucleus of facts

22         therefore under the first expungement there's an

23         argument to be made for res judicata in regards to his

24         fourth cause of action.  But in --

25                   THE COURT:  Which was December 2, 2009.

```
1              MS. HAFFEY:  That's correct, Your Honor.

2              THE COURT:  And the -- let's see, if the

3         adverse decision was appealed from -- what, at the end

4         of July, right?

5              MS. HAFFEY:  July 17th, I believe, 2009, is

6         when Mr. Sumpter submitted his appeal.

7              MR. SUMPTER:  July 31.

8              MS. HAFFEY:  July 31, excuse me.

9              THE COURT:  July 31.  I thought it was the

10        end of July.  Yeah, July 31.

11             MS. HAFFEY:  So --

12             THE COURT:  So that would make it --

13             MS. HAFFEY:  So the notice -- 45 days after

14        that is September 14th, 2009.  So the response was due

15        on that date.  So his action then arose on

16        September 15th.  So it certainly was covered under this

17        Court's final administrative order because it fell

18        within that time frame between June 1st and October --

19        was it October 5th is the effective date?  And

20        therefore he had to file that final administrative bar

21        date claim by November 5th or it was barred.

22             THE COURT:  Okay.  I also -- all right.  And

23        your first argument is that --

24             MS. HAFFEY:  Because it's a --

25             THE COURT:  -- if you're going to be
```

1          defending against the claim objection that you made to

2          the admin claim that he did file in July you would have

3          known about this delay or could have known about the

4          delay, if it was actionable, by the end of November and

5          the order was entered in December.

6                    MS. HAFFEY:  He would have known about it by

7          September 15th.

8                    THE COURT:  He would have known about it by

9          September 15th --

10                    MS. HAFFEY:  Right.

11                    THE COURT:  -- and you're saying that's the

12          same --

13                    MS. HAFFEY:  He mentioned --

14                    THE COURT:  -- same core facts basically --

15                    MS. HAFFEY:  Right.

16                    THE COURT:  -- which is -- well --

17                    MS. HAFFEY:  Well, in fact in his

18          administrative claim, again he attached various

19          letters, and in those letters he told the claims

20          administrator he was going to appeal.

21                    THE COURT:  Right.

22                    MS. HAFFEY:  So his decision to appeal was

23          already there, he never sought to amend that

24          administrative claim nor did he object -- or excuse me

25          -- respond to the reorganized debtor objection to the

1          that claim.  So --

2                    THE COURT:  Right.

3                    MS. HAFFEY:  -- again, my argument is in that

4          same --

5                    THE COURT:  Well, I mean it's a little odd

6          because he filed a claim before the appeal.  He's

7          referring to intention to appeal, but I guess I don't

8          really -- I'm not sure it would be res judicata.

9                    I think that I understand your second

10         argument which is that it's barred by the second

11         administrative bar date.

12                   MS. HAFFEY:  Right.

13                   THE COURT:  But as far as res judicata, I

14         mean he filed a claim based upon his belief that he was

15         entitled to take this action, not that they delayed in

16         responding to his appeal, because he hadn't appealed

17         yet.

18                   MS. HAFFEY:  Well, this particular cause of

19         action is in regards to their delay in responding to

20         his appeal.

21                   THE COURT:  I understand.

22                   MS. HAFFEY:  Okay, sorry.

23                   THE COURT:  But as far as res judicata is

24         concerned I don't think the order granting the debtors'

25         objection to his administrative claim, which was filed

1        before he even filed an appeal, could really be one

2        that would be res judicata on the plan administrator's

3        undue delay in answering that appeal, because the

4        appeal hadn't been filed yet.  So I think it's a

5        different set of facts.

6                But I understand your second argument, which

7        is that as of September 14, which is well before the

8        bar date of November 5, and also before the October 5th

9        cutoff date for the -- for claims that was known to

10       Mr. Sumpter and he could have filed an admin claim for

11       that -- for that claim.

12               MS. HAFFEY:  That's correct, Your Honor.

13               THE COURT:  Okay.

14               MR. SUMPTER:  And, Your Honor, can I ask a

15       question here?  You -- in your order back in the OPEB

16       order in 2009 --

17               THE COURT:  Right.

18               MR. SUMPTER:  -- it stated that -- that

19       benefits should be paid without having to file an

20       administrative claim.  So wouldn't that apply here?

21               THE COURT:  Well, what is your response to

22       that, Ms. Haffey?  I -- that's in the OPEB order, does

23       contemplate sort of the ordinary course running out of

24       the benefits.

25               MS. HAFFEY:  My response to that, Your Honor,

1          is that it's putting the cart before the horse.  That

2          that order, and my reading of the intent of that order,

3          is that if there is a benefit owed and due to an

4          employee that they need not file a claim.  There was

5          not a benefit that was due here, and that's what the

6          denial of the claim was based on, there is no benefit,

7          and that's what the denial of the administrative claim

8          was by the reorganized debtors in which this Court then

9          entered the order expunging the claim.  There was no

10         benefit.  So it's putting the cart before the -- the

11         cart before the horse.

12              THE COURT:  Well, I understand that as far as

13         -- as far as it goes, and I think it goes generally to

14         Mr. Sumpter's claims, I think it goes to claims one,

15         two, and three.  If the only -- I understand you're

16         making two defenses to claim four.  But if the only

17         defense that I'm accepting or buying is that the claim

18         was late, if the OPEB order actually doesn't require

19         him to file a claim then it's not late.

20              MS. HAFFEY:  I agree, Your Honor.  But again,

21         I read that order as saying if the person is entitled

22         to a benefit then they don't need to file a claim.  But

23         there's no entitlement to a benefit here, so the order

24         doesn't apply.

25              THE COURT:  But again, the benefit we're

```
 1        talking about here is not a benefit under the plan,

 2        rather it is a right to a prompt determination of an

 3        appeal.

 4                 MS. HAFFEY:  Of a particular benefit though.

 5                 THE COURT:  I understand, but it's still a

 6        determination to --

 7                 MS. HAFFEY:  Okay.  It gets circular.

 8                 THE COURT:  -- it's a right to a

 9        determination.  I mean the appeal could be a complete

10        looser, but I think under ERISA you still have a right

11        to know that within 45 days.  I'm not sure what the

12        damages would be.  And --

13                 MS. HAFFEY:  I guess my other --

14                 THE COURT:  -- also I'm not sure whether

15        since it was a claim that arose in 2009 whether the

16        discharge order might still apply, but I don't think

17        the bar date order would necessarily apply.  I think --

18        I think Mr. Sumpter is right on that point.

19                 So, I guess -- I don't know -- I have no idea

20        what the damages would be.  I can't believe it would be

21        the $100,000, because your right to a prompt

22        determination is -- if you don't get that I don't know

23        if there's a penalty for that under the regulars or

24        statutes, I don't know if there's a right to actual

25        damages.  I just don't know.
```

1          But it seems -- so then let me turn to the

2    second point is I imagine you would also say that

3    notwithstanding the OPEB order if you do -- well, you

4    may be saying it's not even a benefit, it's just a

5    right under ERISA,.  But I don't think the OPEB order

6    -- in fact it couldn't, because it was well before the

7    modified plan confirmation order and the discharge went

8    into effect, doesn't exempt these claims from

9    discharge.

10          So I guess there's still the final point,

11   which is that this is in fact a pre-effective date

12   claim and therefore covered by the discharge.

13          MS. HAFFEY:  That's correct.

14          THE COURT:  Mr. Sumpter, I'm not aware of any

15   -- I know -- I understand the OPEB order says what you

16   say it says, it does do that, but I don't think there's

17   any provision in the confirmation order -- that is the

18   modified approval order from July 30, 2009 -- that

19   exempts these rights from the discharge.

20          MR. SUMPTER:  I guess I don't understand

21   that.  I guess --

22          THE COURT:  Well, it's pretty -- I don't

23   blame you, it's pretty -- it's pretty abstruse.  But --

24   well, it would still -- even though it's discharged it

25   would still be an admin claim.

1          MS. HAFFEY:  Uh-huh.

2          THE COURT:  You couldn't enforce it in any

3     other way expect through the plan.  So to me I think

4     that one may survive.

5          MS. HAFFEY:  But I go back then, Your Honor,

6     that it's only an admin claim if he actually has a

7     benefit, and there is no benefit here.

8          THE COURT:  Well, but is it a benefit?  I

9     mean it is -- it's a separate -- to me I view this as a

10    procedural right.

11         MS. HAFFEY:  But it's a procedural right

12    based on a benefit that he doesn't have.

13         THE COURT:  But it's a right to a prompt

14    review.  So maybe I need more briefing on this.  But it

15    would seem to me that the right shouldn't only apply if

16    the review is positive.

17         MS. HAFFEY:  I would happy to give more

18    briefing to the Court on this.

19         THE COURT:  Okay.

20         MS. HAFFEY:  I think that would --

21         THE COURT:  I mean then it wouldn't really be

22    much of a right because you'd get the benefit any way.

23         So I think there's -- it should apply whether

24    the review is positive or negative.  You have to -- it

25    sets up a timetable, you know, and you go from the

Page 42

1    benefit review to the appeal by the plan administrator

2    to -- you know, you keep exhausting your remedies, but

3    Congress wanted it or the -- not Congress -- the

4    regulator -- ERISA -- PBGC wanted that step to proceed

5    within specific time frames, and for this step it was

6    45 days --

7              MS. HAFFEY:  Right.

8              THE COURT:  -- so it would seem to me that it

9    -- the right isn't contingent upon you being the winner

10   at the end of the day as to whether you have a benefit

11   or not.  But I guess I better hear more briefing on

12   that.

13             MR. SUMPTER:  Well, let me just make one

14   comment on that.  Is that the only reason I have an

15   issue about failure to respond is it already said I

16   didn't have -- that I wasn't entitled to the benefit.

17   I mean that's why I appealed.  And so --

18             THE COURT:  Right.  No, I -- I mean I'm

19   leaning your way on this --

20             MR. SUMPTER:  Right.

21             THE COURT:  -- I appreciate that it's not

22   really fully dealt with and I might want some more -- a

23   supplement to be submitted on whether I should be leans

24   your way on this point, because I raised it, no one

25   else has really raised this specific issue.  But I

Page 43

1          understand your point on this one.

2                    I'm not sure what the -- I mean frankly I'm

3          not sure what the damages are for it being late.  I

4          would -- I would find it hard to believe that it would

5          be the underlying amount you're seeking that that --

6          that doesn't seem to make sense, but in any event.

7                    So that's the fourth cause of action.

8                    The fifth one is against MetLife and that's

9          really not part of this, right?

10                   MS. HAFFEY:  That's correct, Your Honor.

11                   THE COURT:  So just to be clear if the debtor

12         -- if DPH wins on this motion Mr. Sumpter would still

13         be free to pursue this action against MetLife in the

14         Indiana District Court as far as the fifth cause of

15         action is concerned.  And I guess any of these causes

16         of action.  Is that right?  Or is it just the fifth

17         one?

18                   MS. HAFFEY:  Well, I expect that MetLife will

19         then file a motion to dismiss in the court based on

20         arguments of privity with res judicata.  You're right.

21                   THE COURT:  Fine.  But that would be --

22                   MS. HAFFEY:  But that would be for that

23         judge.

24                   THE COURT:  That would be for the Indiana

25         court.

Page 44

1                    MS. HAFFEY:  That's correct.

2                    THE COURT:  Okay.  So then --

3                    MS. HAFFEY:  That's at least how I see it.

4                    THE COURT:  So then there's the sixth cause

5          of action which is breach of fiduciary duty, and I mean

6          we've -- it's basically -- this is paragraph 13, 13(b)

7          and (c) I think is just another way of talking about

8          the 1996 summary plan description and the summary of

9          material modification.  (d) is it failed to permit

10         MetLife to institute -- it failed by permitting MetLife

11         to institute an unreasonable claims procedure.  And

12         then (a) is that a full and fair appeal process.  And I

13         guess both of those, other than this issue that we've

14         just been talking about with regard to the fourth cause

15         of action, are also rooted in the bankruptcy -- in

16         prebankruptcy past as opposed to something that's after

17         the -- after the proof of claim or after the -- you

18         know, basically that.

19                   MS. HAFFEY:  All four of those subsections.

20                   MR. SUMPTER:  Excuse me, Your Honor?

21                   THE COURT:  Yeah.

22                   MR. SUMPTER:  Are you saying that (a) is

23         rooted in the --

24                   THE COURT:  No, no.  I'm saying that other

25         than we've just been talking about --

1              MR. SUMPTER:  Oh, okay.

2              THE COURT:  -- your claim number four it

3    would be.

4              MR. SUMPTER:  Oh, okay.

5              THE COURT:  I understand to the extent it

6    subsumes claim number four and to the extent (d)

7    assumes claim number four then I understand there'd be

8    an overlap as to the timely appeal process.  But I'm

9    not sure there's any other --

10             MR. SUMPTER:  Well, no, (d) actually does not

11   have to do with timely appeal.

12             THE COURT:  Okay.

13             MR. SUMPTER:  (d) has to do with the fact

14   that in order to submit my -- my claim I had to pay a

15   fee -- I had to pay a doctor to fill out a form.  And

16   ERISA states that I shouldn't have to pay any kind of

17   fee in order to submit my claim.

18             THE COURT:  Okay.

19             MR. SUMPTER:  And that's what (d) has to do

20   with.

21             THE COURT:  But when did that happen?  When

22   did you --

23             MR. SUMPTER:  That happened in March of 2009.

24             THE COURT:  Okay.

25             MR. SUMPTER:  Or early April.

 1                    THE COURT:  Okay.

 2                    MR. SUMPTER:  It might -- it either happened

 3      -- it may have happened early April because they -- you

 4      know, I filed my request in March, then they sent me

 5      the form, and then I had to give it to the doctor to

 6      fill out.  So somewhere between March say 15th and

 7      April 8th.

 8                    THE COURT:  All right.  So to me though --

 9      again, this is not about the merits, this is about

10      timing.

11                    MR. SUMPTER:  Yes.

12                    THE COURT:  And the timing there is such that

13      you could have known at that time that that was

14      wrongful of the plan administrator to require and

15      therefore it really was part of the -- I think the

16      claim that's already been determined.  I mean you filed

17      a claim in July.

18                    MR. SUMPTER:  Well, I suppose -- I guess I

19      can't entirely argue with you on that.  Is that I could

20      have known -- had been able to delve into the ERISA

21      law --

22                    THE COURT:  Right.

23                    MR. SUMPTER:  -- with the kind of detail I've

24      done in the last --

25                    THE COURT:  Well, I appreciate that, but the

Page 47

1          law in the Second Circuit and in most courts, in fact

2          it's even perhaps more broad in the Third Circuit, is

3          that -- and this is a quote:

4                    "A claimant's knowledge that it had been

5          damaged is irrelevant on the question of whether a

6          cause of action meets the statutory definition of

7          claim.  The key thing is whether the claim is

8          susceptible to detection."

9                    So -- and that's really based just on a --

10         you know, a reasonable person standard, and I think

11         it's susceptible to detection.

12                   I mean the broadest example of this where,

13         you know, one might second guess the courts, but I'm

14         not allowed to because they're more senior than I am,

15         is where people live next to a toxic dump and don't

16         really know about it, although I guess they could have

17         known about it by looking and digging in the soil but

18         they didn't, and the courts have said, well, that's

19         still a prebankruptcy claim because they were injured

20         prebankruptcy.

21                   This is a little more than that because they

22         did ask you to file this form and pay the money as part

23         of that, and one could have asked, well, why do I have

24         to pay the money?  Okay.

25                   MS. HAFFEY:  We have nothing further,

1    Your Honor.

2              THE COURT:  Okay.  All right, Mr. Sumpter, do

3    you have -- do you have anything more?  I mean I've

4    read your -- I've read your two pleadings, your letter

5    and your response, and you make other arguments in that

6    response that I've considered, including jurisdictional

7    arguments, which I'm happy to address, but I have

8    considered those already.

9              MR. SUMPTER:  Well, no, if you've read them

10   and considered them then I think that's all I have to

11   say.

12             THE COURT:  Okay.

13             MR. SUMPTER:  Other than I guess I want to

14   reemphasize that I did not receive any notification

15   regarding the expungement of --

16             THE COURT:  You mean the objection?

17             MR. SUMPTER:  Yeah.

18             THE COURT:  The claim objection?

19             MR. SUMPTER:  Yes.

20             THE COURT:  Okay.  All right.  But you do see

21   where the debtors have provided their certificate of

22   service where they say they served it on you.  I mean

23   do you dispute that that was the right address?

24             MR. SUMPTER:  No, that is the correct

25   address.

1               THE COURT:  Okay.

2               MR. SUMPTER:  But I do raise a point -- their

3      certification of service as I read it, and I read that

4      several times, is the -- they have me in the Exhibit F,

5      but they say they sent those documents to the addresses

6      in Exhibit E.  And if I'm understanding that right then

7      they -- if they sent that they sent it to -- my address

8      wasn't in Exhibit E so they sent it somewhere else if

9      you look at it -- if I understand that right, and I've

10     tried to read that and tried to be accurate.

11              MS. HAFFEY:  Mr. Sumpter --

12              MR. SUMPTER:  They say they sent the

13     documents in Exhibit F to the addresses in Exhibit E.

14              MS. HAFFEY:  Mr. Sumpter, let me respond to

15     that.  And it is a confusing affidavit of service, I

16     can understand how a layperson, a non-lawyer might not

17     understand it as well.

18              The Exhibit F that your name appears on is a

19     subpart to Exhibit E to the affidavit of service.  So

20     when it refers to Exhibit E -- and it's a voluminous

21     document, you'd have to scroll through it to fully

22     appreciate this -- when you scroll through Exhibit E

23     you'll see there's Exhibit A, B, C, D, E, F, I think it

24     goes through H doesn't it David, of Exhibit E, and he

25     is on Exhibit F --

1           THE COURT:  To Exhibit E.

2           MS. HAFFEY:  -- to Exhibit E.  That's

3      correct.

4           THE COURT:  Yeah, that how I read it too.

5      Okay.

6           MR. SUMPTER:  So are you saying I

7      misunderstand that, my interpretation is incorrect?

8           THE COURT:  Well, I think -- I think

9      basically the reference to the service on Exhibit E is

10     a big exhibit that includes the Schedules A through G

11     of the people that whose claims are being objected to.

12          MS. HAFFEY:  And they're titled exhibit

13     instead of schedule, so it does make it confusion to

14     Mr. Sumpter I'm sure.

15          THE COURT:  Right.

16          MR. SUMPTER:  Well, but each of those other

17     exhibits they have -- like they sent some certain

18     documents, like Exhibit A -- I don't have it right in

19     front of me I'm just going from my rough memory -- they

20     sent those overnight mail to somebody, in Exhibit B

21     they did the same thing.  And I think when they got

22     down to Exhibit E they sent those by U.S. mail.

23          THE COURT:  Right.

24          MS. HAFFEY:  That's correct.

25          THE COURT:  But Exhibit E covers the people

```
 1          in -- what should have been said -- Schedules A through

 2          G as opposed to Exhibits A through G.  But -- and

 3          you're on Schedule F or Exhibit F that Exhibit E refers

 4          to.

 5                    MS. HAFFEY:  That's correct.

 6                    MR. SUMPTER:  I think I'm on exhibit -- I

 7          understand it to be Exhibit F that Exhibit E refers to.

 8                    THE COURT:  Right.  Okay.  All right.

 9                    MS. HAFFEY:  Your Honor, would you like --

10                    THE COURT:  I'm going give you my ruling now.

11                    One aspect of it I'm going make a preliminary

12          ruling and I'm going to ask for some more briefing on

13          it, and I may change the ruling based on the briefing.

14                    I have before me a motion by the reorganized

15          debtors for an order enforcing and in furtherance of

16          three orders previously issued by this Court which

17          would have the effect of enjoining Mr. Sumpter's

18          continued pursuit of litigation against the reorganized

19          debtors in the District Court for the Southern District

20          of Indiana, which I'll refer to as the Indiana

21          litigation.

22                    The motion seeks to enforce the so-called

23          modification procedures order which effectively

24          confirmed the Chapter 11 plan for these debtors that

25          actually went into effect and was consummated on
```

Page 52

1          October 6, 2009.  The modification approval order is

2          dated July 30, 2009.

3                    As part of that order the Court issued an

4          injunction and also recognized that the debtor would

5          receive a discharge under Section 1141 of the

6          Bankruptcy Code, and the injunction was in furtherance

7          of that discharge that effectively enjoined any claims

8          or causes of action arising on or before the effective

9          date of the plan, which was October 6th, again of 2009.

10                    The debtors also seek to enforce as

11         res judicata an order of the Court issued after the

12         plan modification approval order that again the Court

13         issued which disallowed the administrative expense

14         claim that Mr. Sumpter filed in which he asserted a

15         claim for failure to provide him with a liquidated

16         benefit on a life insurance disability early payout

17         claim.

18                    The claim was for $97,788, and the debtors

19         objected to it on the basis that they had no liability

20         for such claim and that it was therefore not allowable,

21         and the Court granted that objection there being no

22         response by Mr. Sumpter on -- in an order entered

23         December 2nd, 2009.

24                    And finally the Court entered a second

25         administrative expense bar date order, that bar date

1      being November 5, 2009, that covered administrative

2      expense claims arising after the first administrative

3      bar date order and running through October 5, 2009.

4               Mr. Sumpter brought the Indiana action in

5      early March of this year, and it asserts six claims

6      under ERISA, and in fact is headed quote, "ERISA

7      Benefit Denial Complaint."

8               The debtors in their motion before me are

9      looking to preclude Mr. Sumpter from proceeding with

10     five of the six claims asserted in that complaint.

11              Mr. Sumpter has opposed that motion on a

12     number of grounds, and I will deal with the procedural

13     and jurisdictional grounds first.

14              As an initial matter Mr. Sumpter contends

15     that because his complaint asserts claims only under

16     ERISA the District Court, that is the Indiana District

17     Court, has exclusive jurisdiction under ERISA to

18     determine such claims.

19              It has long been recognized however that the

20     Bankruptcy Court as a unit of the District Court

21     referred to it, among other things, core jurisdiction

22     over the allowance and disallowance of all claims

23     except where specifically provided in the Bankruptcy

24     Code, which does not as an aside specifically exclude

25     ERISA claims from that jurisdiction, and referred --

Page 54

1 have referred to it by the district court core

2 jurisdiction over the enforcement of a debtor's

3 discharge, in fact has jurisdiction to determine ERISA

4 claims.

5   That includes not only whether such claims

6 are barred by the court's bar date orders as part of

7 the claim administration process not only to determine

8 the priority of the claims based upon the priority

9 scheme of the Bankruptcy Code, including a

10 determination of when the claim arose, i.e., whether

11 pre or post-petition or post discharge, not only

12 whether the claims are discharged or not but also the

13 merits of the claim.

14   See, for example, Browning v. Levy, 283 F.3d

15 761, 779, Sixth Circuit, 2002 and In re: Enron Corp.

16 2004 Bankruptcy Lexus, 2549 Note 31, Bankruptcy

17 S.D.N.Y., July 15, 2004.

18   The Court has also considered whether it has

19 jurisdiction over the debtors' injunction motion, and I

20 conclude that I do and that in fact that jurisdiction

21 is core under 28 U.S.C. Section 157(b)(2).

22   The claims asserted by Mr. Sumpter, it is

23 contended by the debtors, are either barred by the

24 Court's procedural orders or by the discharge or by the

25 doctrine of res judicata.

1           The Court clearly has the power to interpret

2      and enforce such orders, particularly where they --

3      whether the underlying dispute arises over a bankruptcy

4      plan of reorganization or the order confirming that

5      plan.

6           See Traveler's Indemnity Company v. Bailey,

7      557 U.S. 137, 151 through 53, 2009; Celotex Corp. v.

8      Edwards, 514, U.S. 300, 313, 1995, and In re: Petry

9      Retail, Inc., 304 F.3d 223, 230, Second Circuit, 2004.

10          The Court also clearly has the power to

11      enjoin conduct that would constitute a collateral

12      attack on its prior orders.

13          See Celotex Corp. v. Edwards, 514, U.S. 313,

14      as well as In re: Old Carco LLC, 438 Fed. Appendix 30,

15      2011 U.S. App. Lexus 19217 at page 2, Second Circuit,

16      September 19, 2011.

17          This specifically includes a recognition that

18      the Court has subject matter jurisdiction to enjoin

19      pursuit of claims in another court that are subject to

20      a debtor's discharge.

21          See In re: Texaco, Inc., 2012 U.S. App. Lexus

22      25853, Second Circuit, December 19, 2011.

23          Notwithstanding that clear jurisdiction

24      prudential concerns need to be taken into account when

25      a party to a proceeding in another court asks this

1      Court to enjoin further litigation in that other court,

2      notwithstanding that this Court would have jurisdiction

3      to do so.

4              See Time Warner Cable of New York City v. MD

5      Electronics, Inc., 101 F.3d 278, Second Circuit, 1996.

6              However, based upon what I believe are

7      uncontroverted facts the Indiana District Court is

8      aware of the debtors' injunction motion before me and

9      has in fact granted the debtors' motion for an

10     extension of its time to answer in the Indiana

11     proceeding until after this Court rules on the

12     injunction motion.

13              I appreciate the Indiana court's deference on

14     that point, particularly where I think it does in fact

15     have jurisdiction to decide these issues in the context

16     of the debtor asserting a defense even with respect to

17     the claim that the Indiana action violates the

18     discharge.

19              See -- or see In re: Baldwin-United Corp.

20     litigation, 765 F.2d 343, 347, Second Circuit, 1985.

21              But in any event, I do not feel that I am

22     violating principals of comity or more colloquially

23     stepping on the Indiana court's toes by considering

24     this motion today over which I believe I clearly do

25     have jurisdiction.

Page 57

1           I have carefully reviewed the claims in

2      Mr. Sumpter's ERISA benefit denial complaint, which

3      appears at Exhibit 4 to the debtors' motion, and also

4      heard the parties' oral arguments on what those claims

5      entail, and I conclude with one possible exception that

6      they are in fact assertions of claims that either at

7      this point are barred by the debtors' discharge and the

8      injunction provisions in the plan modification order

9      that preclude pursuit of such claims outside of this

10     court or -- or and/or are barred by the doctrine of

11     res judicata because of the Court's December 2, 2009

12     order disallowing Mr. Sumpter's claim.

13           Let me address the res judicata point first.

14           Mr. Sumpter contends as a preliminary matter

15     that that order was improperly entered and is not

16     meritorious and that the debtors should not have sought

17     such relief in the first place; however, it is a final

18     order.  It was not appealed and no request for

19     reconsideration or vacature under Bankruptcy Rules 9023

20     or 9024 was not -- were ever made.

21           His response to this motion does not make

22     such a request and I will not deem it to be such a

23     request.

24           Moreover, Mr. Sumpter argues in -- if such a

25     request were made and the facts supported it I might

Page 58

```
 1          grant relief under Rule 9024, which would be the only

 2          rule that would apply to permit reconsideration of the

 3          order at this time given lapse of time since its

 4          issuance, that he did not receive notice of the

 5          debtors' claim objection.

 6                    I conclude that in fact there is a very

 7          strong presumption that he did receive notice of the

 8          claim objection.

 9                    The debtors have submitted a certificate of

10          service that I believe shows that he did receive

11          notice, and he has acknowledged that the address listed

12          on that certificate is in fact his address.  He states

13          only that he in fact did not receive it and that mail

14          has been known not to be delivered by the post office.

15                    Unfortunately for Mr. Sumpter there is a

16          strong presumption that in fact a pleading served by

17          regular mail was in fact received notwithstanding

18          assertions of non-receipt.

19                    As Bankruptcy Judge Lane very recently ruled

20          Federal Courts in New York have held, quote, "quite

21          uniformly," close quote, that an affidavit of non-

22          receipt is insufficient to rebut the presumption of

23          receipt created by proof of mailing.  In re: AMR Corp.,

24          2013 W.L. 1721637 at page 2 of Bankruptcy S.D.N.Y.,

25          April 22, 2013.
```

1                This is in fact the case.  See for example In

2        re: RH Macy Corp., 161 B.R. 355, 360, Bankruptcy

3        S.D.N.Y. 1993; In re: Horton, 149 B.R. 4958, Bankruptcy

4        S.D.N.Y 1992; and Cable Vision Systems Corp. v.

5        Malandra, 206 B.R. 667, 673, Bankruptcy E.D.N.Y, 1997,

6        and the cases cited therein.

7                So even if I were to deem the response as a

8        motion under Rule 9024 and separate and apart from the

9        issue of the substantial amount of time that's gone by

10       since the December 2, 2009 order, the basis for the

11       motion -- the procedural basis for such a motion, i.e.,

12       that the claimant wasn't served would not hold water,

13       and I do not believe given the policy underlying Rule

14       9024 that the arguments on the merits would lead to

15       reconsideration and vacature of that order.

16               It is clear under the law generally and

17       certainly the law of this circuit that under the

18       doctrine of res judicata or claim preclusion a final

19       judgment on the merit to an action precluded the

20       parties or they're privies from relitigating issues

21       that were or could have been raised in that action.

22       EDP Med Computer Systems, Inc. v. U.S., 480 F.3d 621,

23       624, Second Circuit, 2007.

24               Res judicata bars the filing of a subsequent

25       claim if the earlier decision was a final judgment on

1      the merits by a court of competent jurisdiction in a

2      case involving the same parties or their privies and

3      for involving the same cause of action.  ID see also In

4      re: DPH Holdings Corp., 468 B.R. 603, S.D.N.Y, 2012 at

5      page 618.

6           In reviewing Mr. Sumpter's complaint in the

7      Indiana action I conclude that with one possible

8      exception he is raising causes of action that although

9      denominated under ERISA were or could have been raised

10     as part of his defense of the debtors' claim objection

11     which states that again Mr. Sumpter is not entitled to

12     an administrative claim for the $97,000 and change that

13     he's asserted under the debtors' benefits plans.

14          The claims generally also are time barred by

15     the first bar date order established by the Court of

16     which it is clear Mr. Sumpter had notice based on his

17     own inquiries of the claims administrator.

18          Mr. Sumpter correctly points out that under

19     the Court's so-called OPEB order he did not have to

20     file a claim for benefits, but with one exception, if

21     in fact he did not have a claim for benefits then it

22     wouldn't be a benefits claim, and he has asserted

23     claims for benefits that the debtors had already denied

24     in the June and July period.

25          The claims asserted in the first, second, and

Page 61

1         third causes of action are all premised upon failure to

2         comply with ERISA as it pertains to Mr. Sumpter's

3         benefit claims against the debtors.  They all seek

4         essentially the same amount of money that was sought in

5         Mr. Sumpter's proof of administrative claim.  They

6         assert $100,000 rather than 97,775, but in his response

7         to the debtors' motion before me today Mr. Sumpter has

8         stated that his original claim was inaccurate and that

9         it should have been for $100,000.

10              That cause of action like causes of actions

11        one through three in the complaint are all rooted in

12        the prebankruptcy past or at best in the pre-July 15th

13        and certainly pre-October 6, 2009 period as laid out on

14        the record of this hearing.

15              The reach of Section 1015 of the Bankruptcy

16        Code, which defines very broadly the term claim and

17        therefore the reach of the discharge injunction, covers

18        claims rooted in such period whether or not the

19        claimant actually knew of them as long as they were

20        quote, "susceptible to detection."

21              I find and conclude based on the record of

22        this hearing that the claims asserted in claims one

23        through three of Mr. Sumpter's complaint of the Indiana

24        action all fit that description.

25              See generally In re: Leer Corporation, 2012

Page 62

1      Bankruptcy Lexus 440, Bankruptcy S.D.N.Y., February 10,

2      2012 at pages 23 through 29, and the cases cited

3      therein, including In re: Shadow Gay (ph) Corp., 944

4      F.2d 997, Second Circuit 1991l In re: Texaco 182 B.R.

5      -- excuse me -- 182 B.R. 937, Bankruptcy S.D.N.Y.,

6      1995; and In re: Envirodyne Industries, Inc., 214 B.R.

7      338, N.D. Illinois, 1997.

8              So whether it is based on principals of

9      res judicata or based upon the applicability of the

10     Court's first administrative bar date order or frankly

11     its unsecured claims bar date order previously issued

12     in this case or the discharge and injunction provisions

13     in the Court's plan modification order those claims

14     either are barred by res judicata or the discharge and

15     injunction provisions of the confirmation order as they

16     could have been raised as part of the response to the

17     debtors' claim objection or subject to detection before

18     the discharge.

19             To the extent in cause of action number six

20     Mr. Sumpter is asserting a breach of fiduciary duty

21     claim based upon the same facts, the same timing

22     analysis applies, and those claims also would be barred

23     by the Court's prior orders.

24             As we went through during oral argument that

25     would apply to the claims described in paragraph 13(b),

1     (c), and (d) asserted by Mr. Sumpter, all of which

2     arose either in the prebankruptcy period or in the

3     period preceding the claim objection in the Court's

4     December 2, 2009 order granting that objection, and

5     also preceding the Court's discharge order.

6           Mr. Sumpter has also asserted that the

7     debtor, as plan administrator -- or a debtor as plan

8     administrator and/or a debtor in control of that plan

9     administrator improperly delayed its response to his

10    appeal of the denial of his right to the cash out.

11          As a timing matter it's agreed that the

12    appeal should have been responded to within 45 days,

13    it's also agreed when the appeal was made, and

14    therefore that the 45 days would have run by

15    September 14th, 2009.  It's also acknowledged that

16    there was no response by that date.

17          The debtors contend however that first, the

18    claim objection order acts as res judicata on this

19    cause of action, and second, that even if it does not

20    the claim is time barred because Mr. Sumpter knew of it

21    or should have known of it and could be deemed to have

22    detected the breach as of September 15th with plenty of

23    time for him to file a timely administrative claim for

24    the -- before the November 5th administrative claims

25    second bar date.

1           And finally the debtors would contend that

2      the plan injunction channels Mr. Sumpter's pursuit of

3      such a claim to this Court and that the claim is

4      discharged, albeit that it would have to be paid under

5      the plan if it's allowed.

6           As I said during oral argument unlike the

7      other claims asserted by Mr. Sumpter, which are all

8      rooted in the period before he filed his proof of

9      claim, most of which go back to the prepetition period,

10     this claim actually only arose after he filed his proof

11     of claim.  In fact although he referred in the proof of

12     claim to his intention to appeal he had not even yet

13     started the appellate period when he filed his claim.

14           Therefore, I do not believe that the Court's

15     December 2, 2009 claim objection order would be

16     res judicata for this particular claim.

17           Mr. Sumpter I believe also correctly states

18     that where he actually has a right under the debtors'

19     benefit plan or plans, which here incorporate ERISA and

20     require a 45-day response to an appeal, he was excluded

21     by the Court's OPEB order from having to file any proof

22     of claim therefore.

23           I have not seen any response to that point

24     other than the debtors' contention that as with the

25     other claims he's putting the cart before the horse to

1    say that he has a right to this.  But unlike the other

2    ones where it was clear before the bar date that the

3    debtor was taking the position he did not have the

4    right to the claim the debtor had taken no such

5    position in respect of his appeal that it didn't have

6    to respond within 45 days.

7              And so therefore, I conclude that with

8    respect to this particular claim Mr. Sumpter did not

9    have to comply with the second bar date order.

10             That still leaves the issue of whether the

11   claim is in fact covered by the specific terms of the

12   OPEB order, i.e., whether it is in fact a benefit

13   claim.  And while I think it is on a preliminary basis

14   I'll give the debtors time to brief that issue.

15             I also conclude on a preliminary basis that

16   notwithstanding the OPEB orders provision that benefit

17   claims do not have to be filed as proofs of claim --

18   and I'm using shorthand to express terms of the order

19   govern -- I do not believe that there's any provision

20   of the plan modification order that exempts benefit

21   claims from the plan injunction or from the discharge.

22             Consequently, even if I conclude as a final

23   matter, after having read the supplemental briefing on

24   this, that Mr. Sumpter does still have a claim based on

25   the failure to respond within 45 days, that is a claim

Page 66

1    that is not either time barred or barred by

2    res judicata, I still believe that claim needs to be

3    liquidated in this court and paid pursuant to the plan.

4    It cannot be liquidated elsewhere or paid pursuant to

5    an order of another court, which is obviously what he's

6    attempting to do in the Indiana District Court

7    litigation.

8              Therefore, I will grant the injunction of

9    this claim also, but I will not find that it is barred

10   by res judicata or the second administrative claims bar

11   date order, except if I'm convinced by the supplemental

12   briefing that I'm going to ask for.

13             I think it may make sense to consider whether

14   there's any measure of damages also for such a claim in

15   that supplemental briefing.

16             So I will give the debtors 30 days to brief

17   those issues, and I'll give Mr. Sumpter 30 days to

18   respond, and then I doubt I will have oral argument on

19   it, I will in all likelihood, if I agree with my

20   preliminary analysis, simply make that my final ruling

21   on this particular claim, which is claim number four,

22   or if I change my mind I will issue an order

23   accordingly.

24             So I'm looking for two things from the

25   debtor.  First an order granting the motion for an

1          injunction with regard to claims one through four and

2          claim six.  You should email a copy of that to

3          Mr. Sumpter, but you don't need to settle it formally

4          on him, it's really a straightforward injunction for

5          the reasons stated by the Court on the record.

6                    Secondly, within 30 days of today I'll look

7          for a supplemental brief on the issue of the effect of

8          the OPEB order on the second bar date with respect to

9          this claim, claim number three -- I'm sorry, claim

10         number four, excuse me, claim number four.

11                   And secondly whether in any event the claim

12         is subject to the injunction -- no, I'm sorry --

13         subject to -- strike all of that.

14                   And secondly what the proper measure -- not

15         the amount, but the measure of damages would be for

16         such a claim.

17                   And then after you serve it on Mr. Sumpter he

18         will have 30 days to reply to those two points.

19                   Unlike most filings before the Court I would

20         like you to email these to chambers -- these

21         supplemental briefs, because otherwise I will have

22         forgotten about it and I won't be checking the docket

23         for them.  So you should email them to chambers and

24         remind me in the cover letter why I had asked you to

25         submit the supplemental briefing.

1            MS. HAFFEY:  Just one point of clarification,

2       Your Honor.  The last claim that had (a), (b), (c), and

3       (d) at --

4            THE COURT:  Right.

5            MS. HAFFEY:  -- 6(a) --

6            THE COURT:  Right.  (a) is subsumed within

7       this.  You can refer to 6(a) as well as to the extent

8       that it incorporates four.

9            MS. HAFFEY:  All right.

10           THE COURT:  Otherwise there's no basis --

11           MS. HAFFEY:  Very good.

12           THE COURT:  -- and res judicata applies,

13      which you can put in the -- in the injunction order.

14           MS. HAFFEY:  Thank you.

15           THE COURT:  Okay.  Okay, Mr. Sumpter, do you

16      have any questions about procedurally what's going

17      happen next?

18           MR. SUMPTER:  No, I don't.

19           THE COURT:  Okay.  All right.  So they will

20      -- they'll email you a copy of the order when they

21      email it -- well before they email it to me, but

22      they'll be emailing it to me shortly thereafter and

23      I'll see whether it's consistent with my ruling.

24      They'll submit this supplemental brief 30 days from now

25      and then you'll have 30 days to submit it, both serve

```
 1              it on them and then email it to chambers and file it on

 2              the docket of course 30 days after you get it from

 3              them.

 4                      MR. SUMPTER:  All right.

 5                      THE COURT:  Okay?

 6                      MR. SUMPTER:  Do you have time for me to ask

 7              a couple of questions?

 8                      THE COURT:  Okay.

 9                      MR. SUMPTER:  13(a) -- in paragraph 13(a)

10              which is part of the sixth cause of action.

11                      THE COURT:  Right.

12                      MR. SUMPTER:  I think I heard you say it was

13              subsumed in part four?

14                      THE COURT:  Well, I'm concluding that other

15              than as it is subsumed in claim number four you are --

16              you are barred by res judicata and/or the bar date

17              orders and the discharge.  So I'm only focusing on

18              really this 45 days too late claim for both purposes of

19              -- that I think are still open for purposes of my

20              ruling.

21                      MR. SUMPTER:  Okay.  I want -- I mean I don't

22              challenge your rulings, I mean, you know, you do -- I

23              mean you're thorough so I don't question that, I just

24              -- this item in 13(a) happened in May of 2010.

25                      THE COURT:  I understand, but that's --
```

Page 70

1      again, that's the preclaim past.  So everything that

2      falls into the preclaim past, whether it's

3      prebankruptcy or post-bankruptcy, is either barred by

4      res judicata or the bar date order.

5              The only thing that doesn't fall into that

6      that I can see is the 45-day period issue.  Because

7      even though you learned about these things in 2010 when

8      they -- when you eventually learned of the 1996 SPD --

9              MR. SUMPTER:  Right.

10             THE COURT:  -- it was susceptible to

11     detection well before that.  In fact it was susceptible

12     to detection before the bankruptcy, and in any event it

13     was clear when Delphi disputed your right to this

14     payment based on its own SPD that that was what it was

15     relying on.

16             So really in many respects this 1996 point is

17     moot because no one is relying on it, but in any event

18     it falls into that period that could have been detected

19     during the preclaim period at least, if not

20     prepetition.

21             So that's why I -- even though you say it --

22     you didn't know about it until 2010 I don't think under

23     the case law that I cited to you that matters.  What

24     matters is whether it could have been detected before

25     then or whether it arose in the context of that period,

Page 71

1        and I think it does.

2                    MR. SUMPTER:  Well, in terms of 13(a) though

3        this has to do with they didn't allow me to -- they

4        didn't give me the second appeal.

5                    THE COURT:  No, but that's what's I'm

6        covering.

7                    MR. SUMPTER:  Oh, okay.

8                    THE COURT:  I'm saying that is part -- that

9        and claim number four, that's what I think you're

10       probably going to win on, although I'm giving the

11       debtors a chance to submit something to convince me

12       otherwise and you the chance to reply to it.

13                   But my preliminary ruling says you probably

14       will have a claim under cause of action number four,

15       and to the extend it's subsumed in that paragraph 13(a)

16       also under that paragraph, although you can't recover

17       twice for it.

18                   MR. SUMPTER:  I understand.

19                   THE COURT:  And however that claim is covered

20       by the plan injunction.  So -- and the discharge.  So

21       you could only liquidate it here.

22                   MR. SUMPTER:  Okay.

23                   THE COURT:  But unlike the other claims I'm

24       not finding -- well, I'm finding the other claims on a

25       final basis.  On a preliminary basis I'm not finding

Page 72

1      this one is in fact barred by res judicata or one of my

2      other orders.  I think it probably isn't, although I'm

3      going to give the debtors a chance to prove otherwise.

4      The other claims I think are barred and I'm so finding

5      by res judicata and my prior orders.

6                    MR. SUMPTER:  I understand now.

7                    THE COURT:  Okay.  All right.

8                    MR. SUMPTER:  I do have a couple more

9      questions just so I'm sure.

10                   Claim one -- I'm sorry -- cause one --

11                   THE COURT:  Right.

12                   MR. SUMPTER:  -- it was against the plan DPH

13     and MetLife.  So your injunction --

14                   THE COURT:  It doesn't apply to MetLife.

15                   MR. SUMPTER:  Right.

16                   THE COURT:  None of these claims as they

17     apply to MetLife will be enjoined, and the order should

18     make that clear.

19                   MS. HAFFEY:  Yes.

20                   THE COURT:  And Ms. Haffey has acknowledged

21     that.

22                   MR. SUMPTER:  Okay.  And I have one other

23     question.  Is there any help for me as far as expunging

24     my social security number?

25                   THE COURT:  Yeah, I -- well, I mean the

1          damage is -- some of the damage has been done --

2                    MR. SUMPTER:  Right.

3                    THE COURT:  -- but I'm going to ask the

4          debtors' counsel to go up to the clerk's office and see

5          if it cannot be expunged on a going forward basis.

6                    MR. SUMPTER:  Thank you.

7                    THE COURT:  Okay.  I think they'll be able to

8          do that.  They can't go back and scrub everything -- I

9          mean it's out there somewhat, but they can scrub what's

10         on the docket.

11                   MR. SUMPTER:  Right.  Okay.  I know of just

12         two cases.  The one case I only knew because of

13         Ms. Haffey pointed out, but I -- you know, I didn't

14         realize that when I submitted that claim it was going

15         to get docketed.  I mean not just because I was

16         naive --

17                   THE COURT:  That's fine.  I understand.  But

18         we'll try to -- I'm instructing the debtors to speak to

19         the clerks after we finish up today to go upstairs to

20         the clerk's office and ask them to take it off the

21         docket.  And my clerk who's here will follow up on

22         that.

23                   MR. SUMPTER:  All right, thank you very much.

24                   THE COURT:  Okay.  I think they have a

25         mechanism where they can put a black -- you know, a

1          black bar over it.

2                    MR. SUMPTER:  All right.

3                    THE COURT:  Okay.  All right, very well,

4          thank you.

5                    MS. HAFFEY:  Thank you, Your Honor.

6               MR. SUMPTER:  Thank you.

7          (Whereupon these proceedings were concluded at 12:06

8     PM)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 75

1                          I N D E X

2

3                          RULINGS

4                                          Page      Line

5   Debtors' Motion For Order (I) Enforcing

6   Modification Procedures Order, Modified Plan

7   and Plan Modification Order Injunction and

8   Thirty-Seventh Omnibus Claims Objection

9   Order Against James Sumpter, as Plaintiff,

10  in Federal Court ERISA Action; and (II)

11  Directing James Sumpter to Dismiss Federal

12  Court ERISA Action Against the Reorganized

13  Debtors and the Reorganized Debtors Life and

14  Disability Benefits Program                51        14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6

7

8

9    AAERT Certified Electronic Transcriber CET**D-408

10

11

12    Veritext

13    200 Old Country Road

14    Suite 580

15    Mineola, NY 11501

16

17    Date:  April 29, 2013

18

19

20

21

22

23

24

25