**Hearing Date And Time:  July 25, 2013 at 10:00 a.m. (prevailing Eastern Time)**
**Response Date And Time:  July 18, 2013 at 4:00 p.m. (prevailing Eastern Time)**

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Neil Berger
Steven S. Flores

*Counsel for DPH Holdings Corp., et al.,*
*    Reorganized Debtors*

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                          :
In re                                     :        Chapter 11
                                          :
DPH HOLDINGS CORP., et al.,               :        Case No. 05-44481 (RDD)
                                          :
              Reorganized Debtors.        :        (Jointly Administered)
                                          :
---------------------------------------------------------------x

**REORGANIZED DEBTORS' MOTION FOR AN ORDER TO COMPEL**
**COMPLIANCE WITH, AND TO IMPLEMENT, THE MODIFIED PLAN,**
**PLAN MODIFICATION ORDER AND RELATED DOCUMENTS**

## Table of Contents

Preliminary Statement ................................................................................................................ 1

Relevant Background ................................................................................................................ 4

    A.   Confirmation of the Modified Plan and
         Approval of the Master Disposition Documents ........................................................ 4

    B.   The Disputed Advance ................................................................................................ 9

Jurisdiction ............................................................................................................................... 12

Relief Requested ...................................................................................................................... 12

Basis For Relief ....................................................................................................................... 13

Legal Argument ....................................................................................................................... 14

    A.   New GM's Position Violates the Modified Plan,
         Plan Modification Order and Master Disposition Documents .............................. 14

    B.   This Court Can Enforce Its Own Orders and the Modified Plan ........................... 16

Notice ...................................................................................................................................... 18

# Table of Authorities

## Cases

*Back v. LTV Corp. (In re Chateaugay Corp.)*, 213 B.R. 633 (S.D.N.Y. 1997) ........................... 17

*Baker v. Simpson*, 613 F.3d 346 (2d Cir. 2010) ................................................................... 13, 16

*In re Allegiance Telecom, Inc.*, 356 B.R. 93 (Bankr. S.D.N.Y. 2006) ................................... 14, 16

*In re Baker*, No. CV05-3487, 2005 WL 2105802 (E.D.N.Y. Aug. 31, 2005) .......................... 17

*In re Collins & Aikman Corp.*, Case No. 05-55927 (Bankr. E.D. Mich. July 18, 2007) .......... 15

*In re Continental Airlines, Inc.*, 236 B.R. 318 (Bankr. D. Del. 1999) ................................. 16, 17

*In re Lyondell Chemical Co.*, Case No. 09-10023 (Bankr. S.D.N.Y. Apr. 19, 2010) ............... 15

*In re Riverside Nursing Home*, 137 B.R. 134 (Bankr. S.D.N.Y. 1992) ..................................... 18

*In re Tronox Inc.*, Case No. 09-10156 (Bankr. S.D.N.Y. Nov. 30, 2010) ............................... 15

*Jordan v. Attalla Golf & Country Club, Inc.*
   *(In re Attalla Golf & Country Club, Inc.)*, 181 B.R. 611 (Bankr. N.D. Ala. 1995) ......... 14, 17

*Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*,
   304 F.3d 223 (2d Cir. 2002) ................................................................................. 17

*Official Unsecured Creditors Comm. of Erie Hilton Joint Venture v. Siskind*
   *(In re Erie Hilton Joint Venture)*, 137 B.R. 165 (W.D. Pa. 1992) .......................................... 18

*Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101 (2d Cir. 2008) ................................... 15

*Paul v. Monts*, 906 F.2d 1468 (10th Cir. 1990) ......................................................................... 18

*Texaco Inc. v. Sanders (In re Texaco Inc.)*, 182 B.R. 937 (Bankr. S.D.N.Y. 1995) ............. 13, 16

*Travelers Indemn. Co. v. Bailey*, 557 U.S. 137 (2009) .......................................................... 16, 17

*Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*, 1 N.Y.3d 470 (2004) ...................... 14

## Statutes

11 U.S.C. § 105 ..................................................................................................................... 17

11 U.S.C. § 105(a) .................................................................................................................. 12

11 U.S.C. § 1142 ............................................................................................................... 12, 17

11 U.S.C. § 1142(b) ................................................................................................. 13, 14, 17, 18

28 U.S.C. § 157 ................................................................................................................. 12

28 U.S.C. § 157(b)............................................................................................................. 12

28 U.S.C. § 1334 ............................................................................................................... 12

28 U.S.C. § 1408 ............................................................................................................... 12

28 U.S.C. § 1409 ............................................................................................................... 12

**Rules**

Fed. R. Bankr. P. 3020(d) ........................................................................................... 14, 15

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

DPH Holdings Corp. ("DPH Holdings" or "DPH," and, together with certain of its affiliated reorganized debtors in the above-captioned chapter 11 cases, the "Reorganized Debtors"), successors to Delphi Corporation ("Delphi") and certain of Delphi's subsidiaries and affiliates, former debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby move for an order, pursuant to, among other things, sections 105(a) and 1142 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 3020(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to compel General Motors LLC's ("New GM") compliance with, and to implement, the Modified Plan (defined below), Plan Modification Order (defined below) and Master Disposition Documents (defined below) (the "Motion").[1]  In support of this Motion, the Reorganized Debtors respectfully represent:

### Preliminary Statement

In July 2009, the Debtors entered into a Master Disposition Agreement (as amended, modified and supplemented, the "MDA") with various parties, including predecessors in interest to New GM, pursuant to which New GM purchased assets from the Debtors that were critically important to New GM's operations.  This Court approved the MDA and incorporated its terms into the Debtors' Modified Plan.

As a result of the MDA and related transactions, DPH was left to liquidate various assets and attendant liabilities.  To assist in this liquidation, the MDA -- and the

---

[1]    This Motion is being filed in conjunction with the Reorganized Debtors' Motion for Final Decree and Order Pursuant to 11 U.S.C. §§ 105, 350(a), and 1142, Fed. R. Bankr. P. 3022, and Local Bankr. R. 3022-1 Closing the Bankruptcy Cases and Providing Related Relief, filed on July 3, 2013 (the "Motion to Close Bankruptcy Cases").

Funding Agreement (defined below) annexed to the MDA (together, the "Master Disposition Documents") -- obligated New GM to pay up to ███████ (with ███████ payable after the closing of the MDA) for the costs and expenses associated with, or related to, the wind up of DPH and its subsidiaries through December 31, 2013. Although DPH originally forecasted that its liquidation would require New GM to advance approximately ███████, DPH's current forecast estimates requiring approximately ███████ in Post-Closing Advances (defined below) to complete the Wind Up (defined below).[2]

New GM's funding obligations -- which expire at the end of this year -- are part of the purchase price paid for the assets that New GM obtained from the Debtors. These funding obligations are clear. ████████████████████ ████████████████████████████████ █████████████████████████████ ██████████████████████████████ ██████  ██  ████████████████████ ██████████████████████████████ ██████████████████████████████ ████████████████████

DPH has complied with its obligations under the Funding Agreement (and New GM has not made any assertion to the contrary). New GM has complied too. To date, New GM has advanced ███████ to DPH, and DPH has been able to return it all.

---

[2]    DPH's forecast is subject to change and DPH reserves all rights to modify its request for Post-Closing Advances in accordance with the terms of the Funding Agreement.

Although this relationship has worked well for years, the parties now disagree over the scope of New GM's funding obligations under the Modified Plan (and related documents). New GM does not believe that it is required to (i) pay for settlements of certain environmental claims that will be funded by the establishment of a remediation trust or (ii) fund reserve accounts to satisfy pending patent and general litigation claims in order to fulfill statutory requirements for the dissolution of the Reorganized Debtors (collectively, the "Trust Claims Settlements"). New GM asserts that it is only obligated to pay "monthly" costs and expenses, and that the Trust Claims Settlements do not fall within that narrow category because these payments will be made into a trust or otherwise provided as security for pending litigation claims. ██

████████████████████████████████████████████████████████████
██████████████████████  █  ██████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████████
█████████████████████████

To embrace New GM's interpretation of its funding obligations would require this Court to ignore express contract terms and basic canons of construction. Worse yet, it would require this Court to find that basic claims resolution payments, and payments required by state law prior to dissolution of the Reorganized Debtors, are somehow not wind up costs that must be provided for under the Funding Agreement -- an absurd result.

Although the parties have tried to resolve this dispute over the last year, to date, they have been unable to do so. DPH has provided supplemental information to New GM about the Trust Claims Settlements, including the production of thousands of pages of information. But because the parties continue to disagree about the scope of

New GM's funding obligations, DPH requests a ruling from this Court establishing

that, among other things, the Trust Claims Settlements are costs and expenses that are

within the scope of New GM's funding obligations under the Master Disposition

Documents.

New GM's responsibility to make Advances for these claims is a critical

issue that must be resolved to fully consummate the Modified Plan, Plan Modification

Order and Master Disposition Documents.  Simply put, DPH is required to satisfy its

environmental claims as part of winding up its remaining sites.  And Delaware law

requires DPH to post security for pending patent and general litigation claims prior to

dissolution of the Reorganized Debtors.  Without New GM's funding, these payments

cannot be made and DPH's progress on key aspects of the wind up will grind to a halt.

## Relevant Background

**A.    Confirmation of the Modified Plan and
Approval of the Master Disposition Documents**

1.    This Court is well aware of the history of these chapter 11 cases,

and that history need not be repeated in full here.  For purposes of this Motion, it

suffices to say that on October 3, 2008, the Debtors filed a Motion for Order

(I) Approving Modifications to Debtors' First Amended Plan of Reorganization (as

Modified) and Related Disclosures and Voting Procedures and (II) Setting Final Hearing

Date to Consider Modifications to Confirmed First Amended Plan of Reorganization

(Docket No. 14310) (the "Plan Modification Approval Motion").

2.    On June 1, 2009, the Debtors filed their (A) Supplement to the Plan

Modification Approval Motion and (B) Request to Set Administrative Expense Claims

Bar Date and Alternative Sale Hearing Date (Docket No. 16646) (the "Supplement to

Plan Modification Approval Motion"), which sought, among other things, a core

modification to the Debtors' first amended plan of reorganization that adopted and incorporated the transactions contemplated under the MDA (Docket No. 17030) (the "Modified Plan").

3.       On June 16, 2009, this Court entered an Order approving the Plan Modification Approval Motion and the Supplement to Plan Modification Approval Motion (Docket No. 17032) (the "Modification Procedures Order").[3]

4.       On July 30, 2009, this Court entered the Order Approving Modifications Under 11 U.S.C. § 1127(b) to (I) First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession, as Modified and (II) Confirmation Order (Docket No. 18707) (the "Plan Modification Order"), which approved the Modified Plan.

### i.       The MDA

5.       The Modified Plan, among other things, "constitute[d] a request to authorize and approve the Master Disposition Agreement." (Modified Plan at § 7.7).[4] The MDA was entered into on July 30, 2009, between Delphi, GM Components Holdings, LLC, General Motors Company, solely with respect to certain provisions, and Motors Liquidation Company (f/k/a General Motors Corp.), solely with respect to certain provisions ("Old GM"),[5] DIP Holdco 3, LLC and the other sellers and buyers

---

[3]    Also on June 16, 2009, the Debtors filed their Supplement to First Amended Disclosure Statement With Respect to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (as Modified) (Docket No. 17031) (the "Supplemental Disclosure Statement").

[4]    The MDA was attached as Exhibit 7.7 to the Modified Plan, a copy of which is attached as Exhibit 1 to the Declaration of Richard M. Goldman in Support of the Reorganized Debtors' Motion for an Order to Compel Compliance With, and to Implement, the Modified Plan, Plan Modification Order and Related Documents, dated July 3, 2013(the "Goldman Decl.").

[5]    Pursuant to the *Order Approving (I) Master Disposition Agreement for Purchase of Certain Assets of Delphi Corporation, (II) Related Agreements, (III) Assumption and Assignment of Executory Contracts, (IV) Agreement with Pension Benefit Guaranty Corporation, and (V) Entry Into Alternative Transaction in*

party thereto.  The MDA provided for New GM to purchase assets of Delphi, which

were critical to New GM's continued operations.

   6.  Recognizing the importance of the MDA, this Court approved the

MDA pursuant to, among other things, paragraph 8 of the Plan Modification Order.

The Plan Modification Order further provided:

- "The Master Disposition Agreement is an ***essential element of the
  Modified Plan*** and entry into and consummation of the Master
  Disposition Agreement is in the best interests of the Debtors, their
  estates, and their creditors and is approved in all respects."  (Plan
  Modification Order at ¶ HH) (emphasis added);

- The Modified Plan provided "adequate and proper means for . . .
  consummation of the [MDA] . . . and the transactions contemplated by
  the [MDA] . . . ."  (*Id*. at ¶ L.5); and

- "[A]ll payments for services or for costs or expenses the payment of
  which is provided to be paid in . . . the Master Disposition Agreement
  . . . are hereby (or have heretofore been) so approved."  (*Id*. at ¶ O).

   7.  A key component of the consideration paid for the sale of Delphi's

valuable assets under the MDA was New GM's commitment to fund "payment[s] to

Delphi of certain expenses of Delphi and its Filing Affiliates following the Closing . . . ."

(Goldman Decl., Ex. 1 at § 3.1.1.E).  The terms of this commitment are embodied in

Exhibit 3.1.1.E to the MDA (as amended, the "<u>Funding Agreement</u>").[6]

  **ii.**  **The Funding Agreement**

   8.  The Funding Agreement states that, among other things, DPH and

its subsidiaries shall be provided with ███████████████████████████

---

*Lieu Thereof,* entered in the GM chapter 11 cases on July 14, 2009 [Case No. 09-50026 (REG); Docket
No. 3139], Old GM entered into an Assignment Agreement, dated as of July 10, 2009, pursuant to
which Old GM, among other things, assigned the Master Disposition Documents to General Motors
Company.  Pursuant to a Certificate of Conversion filed with the Delaware Secretary of State on
October 16, 2009, a copy of which is attached as Exhibit 2 to the Goldman Decl., General Motors
Company formally changed its name to General Motors LLC (referred to herein as New GM).  New
GM assumed Old GM's obligations under the Master Disposition Documents.

[6]  The Funding Agreement is attached as Exhibit 3 to the Goldman Decl.

9.

---

[7]   The Wind Up Budget was originally contemplated to be in a form similar to Attachment A to the Funding Agreement, but in response to requests made by multiple GM Treasury personnel since the inception of the Funding Agreement, the current form of the Wind Up Budget has gone through multiple iterations and, as a result, it is substantially different (and more detailed) than Attachment A to the Funding Agreement. (*Compare* Goldman Decl., Ex. 3 at Attachment A, to July 2013 Wind Up Budget (defined below)).



10. ███████████████████████████

11. ███████████████████████████

12. ███████████████████████████



**B.** **The Disputed Advance**

15. ████████████████████████████

████████████████████████████

████████████████████ Despite that

initial projection, to date, DPH has paid back every dollar advanced by New GM as

DPH has been able to satisfy the costs of its liquidation by applying the proceeds from

the sale of real property and settlement of preference and other actions.  Indeed, DPH's

adherence to the terms of the Funding Agreement has not, and cannot, be questioned.

16. Presently, DPH does not maintain sufficient assets in the estate to

satisfy projected costs associated with the Wind Up.  As a result, DPH forecasts that it

will require Post-Closing Advances of approximately ████████ (which forecasts are

subject to change) to satisfy the remaining costs and expenses associated with the Wind

Up through the end of this year, a portion of which will be used to fund the Trust

Claims Settlements.  (*See* Goldman Decl., Ex. 7, page 2, DPH Holding Corp. Cash Flow).

17.     DPH's request for Post-Closing Advances to satisfy its remaining

environmental claims[10] and post security for its litigation obligations[11] is not a new

development.  DPH consistently contemplated the need to address environmental

claims asserted against it and specifically disclosed in the Debtors' Supplemental

Disclosure Statement that DPH could be responsible for environmental clean up costs.

(*See* Supplemental Disclosure Statement at Art. III.D.6(b)).  In addition, DPH specifically

informed New GM of these Post-Closing Advances approximately one year ago when,

on July 27, 2012, it provided New GM with a monthly Wind Up Budget in accordance

with sections 3 and 5 of the Funding Agreement.  At that time, DPH discussed with

New GM that a portion of the Post-Closing Advances reflected in that Wind Up Budget

may involve the creation of a remediation trust.

18.     On August 1, 2012, New GM indicated that it would not fund the

Post-Closing Advances to satisfy the Trust Claims Settlements and stated:

> [New GM] has not agreed to fund any wind down trusts or other
> amounts which are not monthly costs and expenses of the wind
> down of the DPH estate through December 31, 2013, net of
> available cash and liquidation proceeds.[12]

---

[10]    These environmental remediation claims concern the transfer of three properties into a trust created
for the purpose of remediating any environmental contamination related to those properties and
negotiating with environmental agencies who asserted environmental claims against the Reorganized
Debtors to fund clean-up costs and other expenses associated with the trust (further described in the
Motion to Close Bankruptcy Cases at ¶¶ 8.iii and 13.v).

[11]    Litigation reserve accounts are established to fund security required by Delaware law for the
dissolution of the Reorganized Debtors (further described in the Motion to Close Bankruptcy Cases
at at ¶¶ 21-25).  Funding of these accounts is a prerequisite to dissolution of the Reorganized Debtors
under Delaware law.

[12]    New GM's August 1, 2012 correspondence is attached as Exhibit 4 to the Goldman Decl.

19.    Since that initial refusal, the parties have had numerous communications and exchanges to resolve this dispute.  DPH has responded to multiple requests by New GM for supplemental information concerning DPH's forecasted needs to satisfy the Trust Claims Settlements in an effort to resolve this impasse.  DPH has also produced thousands of pages in response to New GM's numerous requests for information.[13]

20.    On June 20, 2013, DPH requested that New GM confirm by June 27, 2013 that it would commit to fund the Trust Claims Settlements.  New GM did not respond to this request.  On the morning of July 1, 2013, DPH served a demand letter upon New GM (by electronic mail) again asking that New GM confirm its commitment to fund the Trust Claims Settlements (the "Demand Letter").[14]  The Demand Letter provided that if New GM did not respond to DPH by 11:00 a.m. on July 3, 2013, DPH would have no choice but to file this Motion.  New GM responded to the Demand Letter on July 3, 2013.[15]  In its response, New GM disagreed that it is obligated under the Modified Plan, Plan Modification Order and Master Distribution Documents to fund the Trust Claims Settlements.  (*See* Goldman Decl., Ex. 6).

21.    Time is running out.  The Trust Claims Settlements cannot be finalized without New GM's commitment to fund them.

---

[13]    ███████████████████████████████████████████████████████

[14]    The Demand Letter is attached as Exhibit 5 to the Goldman Decl.

[15]    New GM's response to the Demand Letter, dated July 3, 2013, is attached as Exhibit 6 to the Goldman Decl.

22.    According to the last budget submitted by DPH to New GM on June 26, 2013 (the "July 2013 Wind Up Budget"),[16] DPH will need the Post-Closing Advances to satisfy certain of the Trust Claims Settlements as early as July 31, 2013. Although DPH's wind up is nearly complete, without these Advances, DPH's ability to resolve remaining claims, dissolve the Reorganized Debtors in accordance with Delaware law and complete the Wind Up will be significantly hampered.

### Jurisdiction

23.    This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, Article 13 of the Modified Plan and paragraph 56 of the Plan Modification Order.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

24.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  As further described below, the bases for the relief requested in this Motion are sections 105(a) and 1142 of the Bankruptcy Code, Bankruptcy Rule 3020(d) and this Court's inherent authority to enforce its own orders.

### Relief Requested

25.    The Reorganized Debtors seek entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), establishing that (i) the Trust Claims Settlements are Wind Up costs within the scope of New GM's funding obligations pursuant to the Modified Plan and Plan Modification Order, (ii) DPH has properly requested funds for the Trust Claims Settlements and (iii) New GM must fund

---

[16]    The July 2013 Wind Up Budget is attached as Exhibit 7 to the Goldman Decl.  The July 2013 Wind Up Budget has been redacted to conceal commercially-sensitive information relating to DPH's financial needs, the negotiation of potential claims settlements and resolution of certain preference actions. DPH believes that the redacted information is not germane to the legal issues before this Court concerning the scope of New GM's funding obligations.  Accordingly, the July 2013 Wind Up Budget has been redacted to, among other things, avoid any prejudice in connection with completing various settlements.

the Trust Claims Settlements pursuant to the timing requirements, and Post-Closing

Advance dollar amount limitations, set forth in the Funding Agreement.

**Basis For Relief**

26.    The Reorganized Debtors have a substantial interest in ensuring

that unambiguous provisions of the Modified Plan, Plan Modification Order and

Master Disposition Documents are enforced according to their terms.  "[A] bankruptcy

court is undoubtedly the best qualified to interpret and enforce its own orders . . . ."

*Texaco Inc. v. Sanders (In re Texaco Inc.)*, 182 B.R. 937, 947 (Bankr. S.D.N.Y. 1995);  *see also*

*Baker v. Simpson*, 613 F.3d 346, 352 (2d Cir. 2010) (recognizing that "a bankruptcy court

retains post-confirmation jurisdiction to interpret and enforce its own orders").

27.    Additionally, Bankruptcy Code section 1142(b) provides this Court

with the express authority to interpret and enforce the Modified Plan, Plan Modification

Order and Master Disposition Documents.  That section provides:

> The court may direct the debtor and other necessary party to
> execute or deliver or to join in the execution or delivery of any
> instrument required to effect a transfer of property dealt with by a
> confirmed plan, and to perform any other act, including the
> satisfaction of any lien, ***that is necessary for the consummation of
> the plan.***

11 U.S.C. § 1142(b) (emphasis added).[17]  New GM's funding obligation is an essential

part of the Modified Plan, and funding from New GM is critical to completing the Wind

Up.

---

[17]    Fed. R. Bankr. P. 3020(d) ("Notwithstanding the entry of the order of confirmation, the court may
issue any other orders necessary to administer the estate.").  Such relief may be granted *sua sponte* or
on motion of a party in interest.  *See Jordan v. Attalla Golf & Country Club, Inc. (In re Attalla Golf &
Country Club, Inc.)*, 181 B.R. 611, 614 (Bankr. N.D. Ala. 1995).

## Legal Argument

**A.**    **New GM's Position Violates the Modified Plan,**
        **Plan Modification Order and Master Disposition Documents**

        28.    This Court approved the Master Disposition Documents pursuant to paragraph 8 of the Plan Modification Order.  The Master Disposition Documents are essential components of the Debtors' Modified Plan.

        29.    New GM's funding obligations under the Modified Plan are clear: as part of its consideration for its purchase of Delphi assets, New GM agreed to fund the DPH Wind Up in accordance with the Master Disposition Documents.  Despite New GM's unambiguous funding obligations, New GM has failed to commit to fund the Post-Closing Advances that DPH will require to satisfy the Trust Claims Settlements.

        30.    New GM's funding obligations are extremely broad and cannot be re-written by New GM now.  *In re Allegiance Telecom, Inc.*, 356 B.R. 93, 99 (Bankr. S.D.N.Y. 2006) ("'[C]ourts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include. Hence, courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing.'" (quoting *Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475, 775 N.Y.S.2d 765, 807 N.E.2d 876, 879 (2004)).

        31.    ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

██████████  To accept New GM's position would run counter to well-established rules

of contract interpretation that require courts, when interpreting the words and phrases of a contract, to do so in a manner that gives meaning to all of the contract's provisions. *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 111 (2d Cir. 2008) ("The rules of contract construction require us to adopt an interpretation which gives meaning to every provision of the contract.").

       32.     New GM's argument that it is not obligated to fund a trust, or fund security for patent and general litigation claims, is utterly baseless and contradicted by the unambiguous and express provisions of the Master Disposition Documents.[18]  First, payment into a trust simply does not alter New GM's obligation to fund.  █████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

█████████████████████

       33.     Second, DPH is required to "set aside" money to cover the costs of patent and general litigation claims pursuant to 8 Del. C. § 1-280. These payments are required as part of the Reorganized Debtors' dissolution under Delaware law;  thus, they fall squarely within the scope of New GM's payment obligations, and those

---

[18] Moreover, DPH's expected mechanism for satisfying environmental liabilities is consistent with how environmental liabilities are satisfied in other cases.  *See, e.g., In re Tronox Inc.*, Case No. 09-10156 (ALG), Docket No. 2567 at ¶ 82 (Bankr. S.D.N.Y. Nov. 30, 2010) (confirming plan establishing a trust to resolve certain environmental claims); *In re Lyondell Chemical Co.*, Case No. 09-10023 (REG), Docket No. 4418 at ¶ 10 (Bankr. S.D.N.Y. Apr. 19, 2010) (same); *In re Collins & Aikman Corp.*, Case No. 05-55927 (SWR), Docket No. 7827 at ¶¶ 27-28 and Docket No. 7731 at Art. IV.D (Bankr. E.D. Mich. July 18, 2007) (same).  Whether paid for into a trust or not, these environmental liabilities are Wind Up costs that should be paid by New GM, and all of New GM's hyper-technical pretexts, which clearly do not comport with the Funding Agreement, should be rejected by this Court.

express payment obligations should be enforced.[19] *Allegiance Telecom, Inc.*, 356 B.R. at

98-102 (recognizing that unambiguous terms of a contract must be enforced as written).

**B.    This Court Can Enforce Its Own Orders and the Modified Plan**

34.    New GM's refusal to commit to advance funds to satisfy the Trust

Claims Settlements violates the Modified Plan and Plan Modification Order.  This Court

should not abstain from interpreting and enforcing its own orders.  *Baker*, 613 F.3d at

352 (recognizing that a "bankruptcy court retains post-confirmation jurisdiction to

interpret and enforce its own orders"); *see also Texaco Inc.*, 182 B.R. at 947 ("[A]

bankruptcy court is undoubtedly the best qualified to interpret and enforce its own

orders . . . and therefore should not abstain from doing so.").

35.    A bankruptcy court retains subject matter jurisdiction to enforce

both a plan of reorganization and its order confirming that plan.  In fact, it "is axiomatic

that a court possesses the inherent authority to enforce its own orders" and agreements

approved by the court.  *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 325 (Bankr. D. Del. 1999);

*see also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("[A]s the Second Circuit

recognized, . . . the Bankruptcy Court plainly had jurisdiction to interpret and enforce

its own prior orders.").  "In the bankruptcy context, courts have specifically, and

consistently, held that the bankruptcy court retains jurisdiction, *inter alia*, to enforce its

confirmation order."  *Cont'l Airlines*, 236 B.R. at 326.

36.    Pursuant to the Modified Plan and Plan Modification Order, this

Court retained exclusive jurisdiction to, among other things, hear and determine all

matters related to the Modified Plan.  (*See* Plan Modification Order at ¶ 56; *see Travelers*,

557 U.S. at 151 (noting that "when the Bankruptcy Court entered the [prior plan

---

[19]    For a more detailed discussion of the Reorganized Debtors' dissolution obligations under Delaware law, *see* Motion to Close Bankruptcy Cases at ¶¶ 21-25.

confirmation and settlement orders,] it explicitly retained jurisdiction to enforce its

injunctions")).  Section 14.16 of the MDA also provides this Court with the jurisdiction

to enforce the parties' obligations under the MDA.[20]

       37.    Moreover, "[sections 105 and 1142 of the Bankruptcy Code] codify

the bankruptcy court's inherent power to enforce its own orders."  *Back v. LTV Corp. (In*

*re Chateaugay Corp.)*, 213 B.R. 633, 640 (S.D.N.Y. 1997);  *see also Attalla Golf & Country*

*Club, Inc.*, 181 B.R. at 614.  "Section 1142 . . . codifies the Bankruptcy Court's equitable

powers . . . .  Courts have thus generally held that [section 1142 of the Bankruptcy Code

does] not give Bankruptcy Judges authority to modify a confirmed Plan, rather, they

give Bankruptcy Judges authority to perform acts related to the implementation and

execution of a plan that are otherwise provided for in the Bankruptcy Code."  *In re*

*Baker*, No. CV05-3487 (CPS), 2005 WL 2105802, at *5 (E.D.N.Y. Aug. 31, 2005).

       38.    "A bankruptcy court retains post-confirmation jurisdiction to

interpret and enforce its own orders, particularly when disputes arise over a

bankruptcy plan of reorganization."  *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie*

*Retail, Inc.)*, 304 F.3d 223, 230 (2d Cir. 2002).  Section 1142(b) "expressly authorizes the

court to direct a recalcitrant debtor or other party to perform acts necessary to

consummate the plan."  *In re Riverside Nursing Home*, 137 B.R. 134, 138 (Bankr. S.D.N.Y.

1992).  Additionally, authority under section 1142(b) of the Bankruptcy Code includes

directing third party investors to fund a confirmed plan.  *See Official Unsecured Creditors*

---

[20]    Section 14.16 of the MDA provides that this Court's jurisdiction over the MDA terminates on July 30, 2013.

*Comm. of Erie Hilton Joint Venture v. Siskind (In re Erie Hilton Joint Venture)*, 137 B.R. 165
(Bankr. W.D. Pa. 1992).[21]

39.     In light of the foregoing, this Court's ability to enforce the Modified
Plan, Plan Modification Order and Master Disposition Documents cannot seriously be
questioned.

## Notice

40.     Notice of this Motion has been provided in accordance with the
Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m),
9006, 9007, and 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case
Management, and Administrative Procedures, entered on March 20, 2006 (Docket
No. 2883), and the Twenty-Ninth Supplemental Order Under 11 U.S.C. §§ 102(1) and
105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing
Dates and Certain Notice, Case Management, and Administrative Procedures, entered
on May 13, 2013 (Docket No. 22058).  Copies of this Motion and notice thereof will also
be available on the claims agent's website, http://www.dphholdingsdocket.com/dph.

41.     In light of the nature of the relief requested in this Motion, the
Reorganized Debtors submit that, under the circumstances, no other or further notice is
required.

---

[21]    In *Erie*, the court found that a group of investors had committed to invest cash to fund a proposed
plan of reorganization.  *Erie*, 137 B.R. at 171.  When certain investors failed to provide those funds
after confirmation, the court held that, under section 1142(b) of the Bankruptcy Code, it retained
jurisdiction to oversee execution of the confirmed plan and that the "[c]onfirmed [p]lan must be read
so as to include the provisions of all documents which were confirmed together to form the contract."
*Id*.  "Thus, the Bankruptcy Code contains the requisite basis for the Court to interpret the [c]onfirmed
[p]lan and to compel the Defendants to fund the [c]onfirmed [p]lan . . . ."  *Id*. at 170;  *see also Paul v.
Monts*, 906 F.2d 1468, 1476 n.10 (10th Cir. 1990) (remedies for investor's failures to provide capital
required by plan included compelling contribution under section 1142(b)).

**WHEREFORE,** for the reasons set forth above, the Reorganized Debtors respectfully request that this Court enter the Proposed Order, substantially in the form attached hereto as Exhibit A, and grant such other and further relief as this Court deems just and proper.

Dated:   New York, New York
         July 3, 2013

                                        DPH Holdings Corp., et al.,
                                        By Their Attorneys
                                        TOGUT, SEGAL & SEGAL LLP
                                        By:


                                        /s/ Albert Togut
                                        ALBERT TOGUT
                                        NEIL BERGER
                                        STEVEN S. FLORES
                                        One Penn Plaza, Suite 3335
                                        New York, New York 10119
                                        (212) 594-5000