**Objection To Reorganized Debtors' Motion For Final Decree And Order Closing
The Bankruptcy Cases**

# Attachment I

## (The Sumpter Indiana Complaint)

**DISABILITY BENEFIT TERMINATION ERISA COMPLAINT,
DISABILITY BENEFIT TERMINATION ADA COMPLAINT,
UNJUST ENRICHMENT COMPLAINT, CIVIL CONSPIRACY
COMPLAINT AND CIVIL RICO CONSPIRACY COMPLAINT**

## Cause # 1:13-cv-1024 WTL – TAB  (SDIN)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| James B. Sumpter, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No. |
| | ) | |
| DPH (Holding), Inc. | ) | **1:13-cv-1024 WTL - TAB** |
| fka/ Delphi Automotive Systems), | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| vs. | ) | . |
| | ) | |
| Butzel Long , P.C. | ) | |
| Defendant. | ) | |
| | ) | |
| vs. | ) | . |
| | ) | |
| John Brooks | ) | |
| and Other **TBD** DPHH Employees | ) | |
| | ) | |
| vs. | ) | |
| Cynthia Haffey, | ) | |
| Roberta P. Granadier | ) | |
| and Other **TBD** Butzel long Employees | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| | ) | |

## DISABILITY BENEFIT TERMINATION ERISA COMPLAINT, DISABILITY BENEFIT TERMINATION ADA COMPLAINT, UNJUST ENRICHMENT COMPLAINT, CIVIL CONSPIRACY COMPLAINT AND CIVIL RICO CONSPIRACY COMPLAINT

Plaintiff brings a complaint against defendants, DPH Holdings, for illegally

terminating his Supplemental  Disability  Benefit (SEDB), for breach of fiduciary duties,

for breach of contract, for illegal termination of bankruptcy ordered benefit payments and for unjust enrichment;

Plaintiff also brings a complaint against defendants, DPH Holdings, Butzel Long, P.C. **and others,** for civil conspiracy to illegally terminate bankruptcy ordered (SEDB) benefit payments, to commit mail fraud, and extortion;

Plaintiff also brings a complaint against defendants David Brooks, Cynthia Haffey, Roberta P. Granadier and other employees of DPH Holdings and Butzel Long, P.C. for racketeering, extortion and mail fraud in violation of the Federal RICO Statute and;

Plaintiff also brings a complaint against defendants, DPH Holdings for civil conspiracy, with other non defendants, to discriminate against the disabled Plaintiff pursuant to ADA as set forth below.

Plaintiff **DOES NOT** demand a jury trial.

# I.    PARTIES

James B. Sumpter                          Plaintiff
    21169 Westbay Circle
    Noblesville, IN  46062

    Phone        317-877-0736
    E-mail      jsump@ieee.org


DPH (Holding), Inc.  (DPHH)              Defendant
 (fka / Delphi Automotive Systems)
    5725 Delphi Drive,
    Troy, MI 48098.


Butzel  Long, P.C.                       Defendant
    150 West Jefferson
    Suite 100
    Detroit, MI 482226


John Brooks                              Defendant
    DPHH
    5725 Delphi Drive,
    Troy, MI 48098.


Cynthia Haffey                           Defendant
    Butzel  Long, P.C.
    150 West Jefferson
    Suite 100
    Detroit, MI 482226


Roberta P.  Granadier                    Defendant
    Butzel  Long, P.C.
    Stoneridge West
    41000 Woodward Avenue
    Bloomfield Hills, MI 48304

3

## II. JURISDICTION AND VENUE

**1.**    This complaint is brought pursuant to : **28 U.S.C. §1331** and **28 U.S.C. §1332.**  In addition;

    **a.** Relative to **the First and Second Cause of actions,** this complaint is also brought pursuant to The Employee Retirement Income Security Act ("ERISA") of 1974 (**29 U.S.C § 1001 et seq**.), and jurisdiction is also based on **29 U.S.C. § 1132(e)**;

    **b.** Relative to **the Fourth Cause of actions ,** this complaint is also brought pursuant to **18 USC 1341, 18 U.S.C 1961(1)(A), 18 U.S.C 875(d)** and **18 U.S.C 876(d).**  The jurisdiction is also based on **28 USC 1331;** and venue is based on **28 USC 1391,  18 USC 1341, 18 USC § 3237(a)**

    **c.** Relative to **the Fifth Cause of actions ,** this complaint is also brought pursuant to The Federal RICO laws 1**8 USC 1961 *et seq***, and jurisdiction is based on **18 USC 1964(c), 28 USC 1331**; and venue is based on **28 USC 1391(b)(2), 18 USC 1341, 18 USC § 3237(a) and 18 USC 1965(b).** In regards to **18 USC 1965(b)**

        **i.** This cause of action, shares facts and related violations as those cited in the Fourth Cause;

        **ii.** The Defendants in this cause are defendants in a related conspiracy in the Fourth Cause of action;

        **iii.** The predicate acts of mail fraud and extortion took place in Noblesville Indiana, for which the southern district of Indiana is the appropriate venue; and

4

     **iv.** Plaintiff is disabled and will have to endure likely unmanageable

         hardships and challenges to both his health and finances should he

         have to pursue this complaint in another district.

    **d.** Relative to **Sixth Cause of actions ,** this complaint is also brought

       pursuant to The Americans with Disabilities Act of 1990 (ADA), as

       amended **(42 U.S.C § 12101** *et seq*.; and jurisdiction and venue are also

       based on **42 USC 2000e-5(f) (3);**

**2.** Plaintiff, James B. Sumpter, is a resident of Hamilton County, Indiana and

a citizen of the United States of America. Plaintiff was employed at Delphi Automotive

Systems (Delphi), whose successor DPH Holdings, a national corporation, continues to

operate a facility in Kokomo, Indiana. Therefore, the venue is appropriate as stated

above.

## III. BACKGROUND

**3.** Prior to his disability, Plaintiff was a salaried Electrical Engineer for

Delphi in Kokomo Indiana, whose pay grade was that of Senior Systems Engineer and as

such assumed positions of increasing responsibility and influence throughout his career,

with his last position being that of Product Line Architect.

**4.** Plaintiff became disabled on December 8, 2000, and was retired on

permanent long term disability on July 1, 2002.

**5.** Because his tenure with Delphi was less than ten years, plaintiff

continuously purchased the Supplemental Extended Disability Benefit (SEDB), which

would commence when Extended Disability Benefits expired ( after 9 years and 10 months) and continue through the month that he became 65 years old.

**6.**      In October 7, 2005 Delphi Automotive filed for chapter 11 bankruptcy.

**7.**      On February 24, 2009 a hearing was held regarding the termination of OPEB benefits.  A significant part of that hearing addressed the effort of retirees to have the Court authorize the establishment of an 1114 retirees committee.  The court Denied the retirees request, pending proof that no vested benefits were being terminated.

**8.**      On March 11, 2009, the bankruptcy Court Authorized Delphi Automotive to Terminate OPEB Benefits[1].  This termination did not include Extended Disability benefits or Supplemental Extended Disability Benefits.  No retiree 1114 committee was authorized[2] by the Court, since  no vested benefits were identified to be affected by the OPEB termination request.

**9.**      In addition, the bankruptcy Court Order stipulated the following:

> ***The Debtors shall continue to provide benefits for claims incurred by each Eligible Salaried Employee through the cessation date of such retiree's participation in the applicable welfare plan, provided that such retiree has timely paid all requisite contributions for the applicable plan, and provided further that such retirees shall not be required to file proofs of claim in this Court to implement the terms of this decretal paragraph.***

**10.** In July 2009, Delphi Automotive ceded the retiree pension plan to the PBGC.

The Pension plan was underfunded by Seven Billion dollars.

---

[1] See Attachment 1 for OPEB order, Case no.  05-4448 1, Docket #16448: bankruptcy case SDNY.
[2] The Court Did authorize a limited 1114 committee for the purpose of identifying vested benefits affected by the OPEB request.  The committee's responsibilities were also expanded to include the right to negotiate a money settlement  for retirees to establish a VEBA, as payment for not appealing the Courts order.

**11.**     Furthermore, it should be noted that the SEDB benefit is a vested benefit[3]

**12.**     The Bankruptcy Plan effective date was October 6, 2009.

**13.**     The Plaintiff's Extended Disability Payments ended on October 14, 2009 and he began receiving Supplemental Extended Disability (SEDB) payments on October 15, 2009

**14.**     In February 2012, the Plaintiff received a letter form DPHH informing him that he would be offered a lump sum payment of **$129, 600** in lieu of benefits, if he agreed to the terms stated in the letter[4].  The letter was crafted coercively to imply that not accepting the lump sum offer would cause the termination of all benefits payments. The lump sum payment was about 64% of the benefit the Plaintiff would receive until the normal termination of the benefit[5].

**15.**     The Plaintiff let the acceptance deadline pass and, therefore, did not accept the lump sum offer .  As a result, the Defendant, DPHH, has issued no SEDB payments since the March 2012 payment.

**16.**     On March 20 1012, the plaintiff wrote a letter to DPHH requested more information about the lump-sum offer and benefit termination (see exhibit H-2).

**17.**     On March 20 1012, Ms. Roberta Granadier responded with a letter that contained inaccuracies and fraudulent content. This is a clear indication of Ms.

---

[3] See exhibit F
[4] See Exhibit B – DPHH lump sum offer.
[5] This percentage does not reflect the adjustment  sought through the Third Cause -  Unjust Enrichment.

Granadier's participation in, and her efforts to further, the civil conspiracy cited in the

Fourth Cause and RICO scheme cited in the Fifth Cause (see exhibit H-1).

18.     On April 6, 2012, Plaintiff filed a motion with the bankruptcy court

seeking his benefits and also filed a motion (April 16, 2012) for injunction regarding the

termination of the SEDB benefit.  The motions were dismissed for being procedurally

flawed.  However, the Courts order did afford the Plaintiff the option to re-file the

"Vesting Motion".  However, the Court did not retain jurisdiction.

19.     Plaintiff did not re-file at that time because of urgent health issues.

20.     On April 16, 2012 the plaintiff had a telephone conversation with Cynthia

Haffey, in which she tried to encourage the plaintiff to take the lump sum settlement.

This is a clear indication of Ms. Haffey participation in, and her efforts to further, the

civil conspiracy cited in the Fourth Cause and the RICO scheme cited in the Fifth Cause.

21.     On April 17, 2012, Cynthia Haffey wrote a letter to Judge Drain

successfully challenging the Plaintiff's motion for preliminary injunction regarding the

termination of SEDB benefits.  This is a clear indication of Ms. Haffey participation in,

and her efforts to further, the civil conspiracy cited in the Fourth Cause and the RICO

scheme cited in the Fifth Cause. (See BKRP Case 05-44481 RDD —SDNY; Docket

#21867)

22.     Although Plaintiff received no communications  stating that his SEDB

benefits had been discontinued or any communications giving the reason for such

8

cessation, the plaintiff assumed it was because he did not accept the lump sum offer.

23.    On July 31, 2012, the Plaintiff wrote a letter appealing the termination of

his SEDB benefit.  Neither DPHH nor the benefit administrator ever  replied to the

Plaintiff's letter.

## IV. STATEMENT OF LEGAL CLAIM

### First Cause of Action

For Termination of Vested ERISA Disability Benefit, Breach of Contact

And Violation of Bankruptcy Court Order

(Against DPHH)

24.    Pursuant to **29 USC § 1132(a)(1)** and **29 USC § 1132(a)(3) ,** Plaintiff now

comes seeking relief from this Court for defendant DPHH's breach of contract, for its

violation of Bankruptcy Court (SDNY) OPEB Order and it's ongoing failure in regards to

unpaid and future  SEDB benefit payments of **$4890/ month**.


WHEREFORE Plaintiff demands judgment against **, DPHH** for the following

relief:

    **a.** Payment, to the Plaintiff, of the SEDB benefit of **$4890/ month**  for the

       months of April 2012 through the month of his 65 birth date **(January**

       **2017) –** Total amount **$249,390**;

    **b.** All pre and post judgment interest;

    **c.** A payment for **20%** of the amount in arrears and future benefits to offset

the impact of income taxes resulting from a lump sum payment.

**d.** A payment of **$3000** to offset the impact of increases in Medicare cost

precipitated by the lump sum payment of benefits;

**e.** All cost and legal expenses that Plaintiff has incurred and;

**f.** Such other relief as this Court deems appropriate and just.


## Second Cause of Action

For Breach of Fiduciary Duty

(Against DPHH)

**25.**    Plaintiff seeks appropriate equitable relief pursuant to  **29 USC 1109(a),**

**29 USC 1132 (a) (1) and 29 USC 1132 (a) (3)** for **PLAN** Administrator and Fiduciary

(DPHH ) breaching its fiduciary duty, pursuant to **29 USC 1104(a)** for:

**a.** illegally discontinuing SEDB benefit payments beginning April 2012;

**b.** Breach of contract

WHEREFORE Plaintiff demands judgment against DPHH for the following

relief:

**c.** Payment of Plaintiff's  discontinued SEDB benefit;

**d.** As equitable relief, a 100% surcharge, on the ERISA benefit, to be paid to

Plaintiff;

**e.** Payment of any statutory penalties;

**f.** All cost and legal expenses that Plaintiff has incurred;

**g.** Removal of DPHH as Fiduciary and;

**h.** Such other equitable and/or remedial relief as this Court deems

10

appropriate and just;

## Third Cause of Action
UNJUST ENRICHMENT
(Against DPHH, Successor to Delphi Automotive Systems)

26.    Plaintiff seeks to recover pension benefit offsets that DPHH has taken or will take from the Plaintiffs SEDB payments. The Delphi Life and Disability Program section of the summary plan document (SPD) calls for a reduction to SEDB benefits equal to Part A and Part B pension payments by Delphi.

27.    However, Delphi breached the Program contract when it  ceded the Pension Benefit Program, **underfunded by 7 Billion dollars**, to the Pension Benefit Guarantee Corporation (PBGC), in July 2009.

28.    As a result, DPHH received, between October 15, 2010 and March 2012, an unjust benefit of **$22, 571.50**, for deduction taken from the Plaintiff's SEDB payments and DPHH would continue to receive an unjust enrichment, at the expense of the Plaintiff, through the deduction of  **$1289.80 per month** from each now owed or future SEDB payment, once repayment commences.  (See The Firsts and Fourth Causes).

WHEREFORE Plaintiff seeks relief from the Unjust Enrichment of DPHH at the expense of the Plaintiff and demands judgment against DPHH  for the following:

11

a.  Payment to Plaintiff of the Part A and Part B Pension offsets, equaling

**$1289.80 per month,** for the months October 15, 2010 through March

2012 (17.5 moths) for a total of **$22, 571.50**;

b.  Elimination of any pension offset to SEDB payments due since April 2012

to the end of the benefit period ( **Jan 31, 2017**);

c.  Such other relief as this Court deems appropriate and just.

## Fourth Cause of Action

CIVIL CONSPIRACY TO TERMINATE PLAINTIFF'S
SUPPLEMENTAL EXTENDED DISABILITY BENEFIT IN VIOLATION
OF BANKRUPTCY COURT ORDER, MAIL FRAUD AND EXTORTION
(Against DPHH, David Brooks, other TBD employees of DPHH,
Butzel Long, Cynthia Haffey, Roberta P. Granadier and
other TBD employees of Butzel Long)

29.     Plaintiff seeks relief for DPHH's willful violation of The Honorable

Robert D. Drain's order regarding payment of Plaintiff's SEDB benefits (See exhibit D),

which was aided by Butzel long, P.C and other individual; and for the violations listed

below[6]:

a.  Pursuant to **18 USC 1341**, for mail fraud, for the fraudulent "Cancellation

---

[6] Guided by *Ashcroft v. Iqbal, No. 07-1015 (U.S. May 18, 2009).* and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955 (2007), Plaintiff will provide factual allegations that will support a conclusion of plausibility.

letter" (See exhibit B) , which failed to disclose the existence of the court

order requiring payment of Plaintiff's and other retiree's disability

benefits, and which also failed to disclose that retiree disability benefits,

in payment, were vested (see exhibit D and exhibit F, respectively);

    **b.** **Pursuant to 18 U.S.C 875(d),** for extortion by forcing or attempting to force

Plaintiff (and other disabled retirees) to except a lower benefit payment

under threat of otherwise receiving no benefit payment; or by terminating

the Plaintiff's SEDB benefits, when he did not agree to reduced benefit

payments(See exhibit B).

    **c.** **Pursuant to 18 U.S.C 876(d),** for mailing a threatening communication

regarding lump sum disability payments(See exhibit B).

    **d.** For fraudulent responses (through the mail) to Plaintiff's letter of inquiry

(see attachment H-1).


WHEREFORE Plaintiff demands judgment against DPHH for the following

relief:


**30.**    Payment of plaintiff's SEDB benefits (owed and future) in the amount of

**$249,390**.

**31.**    All pre and post judgment interest;

**32.**    A payment for 20% of the amount of any lump sum benefit payment to

offset the impact of resulting higher income taxes - **$49,878**;

**33.**    A payment of **$3000** to offset the impact of increases in Medicare cost

precipitated by the lump sum payment of past due benefits;

**34.**    All cost and legal expenses that Plaintiff has incurred;

**35.**    Compensatory damages for pain, suffering, diminished health, mental
anguish, depression, anxiety, loss of enjoyment of life, inconvenience and
other nonpecuniary losses,  in the amount of **$1,500,000**;

**36.**    Punitive damages in the amount of **$4,500.000** and;

**37.**    Such other relief as this Court deems appropriate and just

## Fifth Cause of Action

CIVIL CONSPIRACY TO ILLEGALLY TERMINATE SUPPLEMENTAL
EXTENDED DISABILITY BENEFIT, RACKETEERING, MAIL FRAUD
AND EXTORTION IN VIOLATION OF THE FEDERAL RICO
STATUTES

(Against John Brooks, other TBD employees of DPHH,
Cynthia Haffey, Roberta P.  Granadier and
other TBD employees of  Butzel Long )

**38.**    Pursuant to **18 USC 1964(c)**, Plaintiff seeks relief, from this Court,  for the
defendants' willful violation of  **18 USC 1962(c)** and **18 USC 1962(d)** of The Federal
RICO Act[6 above].

**39.**    The defendant's engaged in racketeering activity by conspiring to defraud

the Plaintiff (and other disable retirees) of a portion of their disability benefit payments

through the use of mail fraud and extortion as documented in paragraphs **29.a** and **29.b**,

or, in the case of the Plaintiff, extortionate denial of all his disability benefit payments

since April 1, 2012.

**40.**     The defendants have engaged in a pattern of racketeering activity as they

have applied their scheme against approximately 270 disabled salaried retirees of DPHH,

as documented in Exhibit B.

**41.**     The defendants have also applied a similar scheme against, approximately,

46 disabled employees of DPHH, as documented in Exhibit G.

**42.**     In addition, the defendants' actions against the Plaintiff are ongoing and

are expected to continue, unless there is  intervention, until February 1, 2017, which is

the date at which his SEDB benefits would normally end.

15

43.     It should be noted that the defendants are employees of, or associated with the enterprises of DPH Holdings and Butzel Long, P.C.

44.     As a major North American automotive parts supplier, DPHH is engaged in extensive interstate commerce.

45.     Butzel Long, P.C. is a large law firm, which according to its web site has offices in Detroit Michigan, New York, NY and Washington, DC; and has engaged in interstate commerce, at least, on a limited basis, while associated with DPHH.

**WHEREFORE,** Plaintiff demands judgment against John Brooks, other TBD employees of DPHH, Cynthia Haffey, Roberta P. Granadier and other TBD employees of Butzel Long for the following relief:

46.     Payment of plaintiff's SEDB benefits (currently owed and future) in the amount of **$249,390**.

47.     All pre and post judgment interest;

48.     A payment for 20% of the amount of any lump sum benefit payment to offset the impact of resulting higher income taxes - **$49,878**;

49.     A payment of **$3000** to offset the impact of increases in Medicare cost precipitated by the lump sum payment of past due benefits;

50.     All cost and legal expenses that Plaintiff has incurred;

51.     Compensatory damages for pain, suffering, diminished health, mental anguish, depression, anxiety, loss of enjoyment of life, inconvenience and other nonpecuniary losses in the amount of **$1,500,000**;

52.     Corresponding Rico triple damages and as follows **:**

16

| i. 3 x $249,390 | = $ | 748,170 |
| ii. 3 x $49,878 | = $ | 149,634 |
| iii. 3 x $3000 | = $ | 9000 |
| iv. 3 x 1,500,000 | = $ | 4,500,000 |

For total Rico triple damages of **$ 5,406,804** and;

**53.**    Such other relief as this Court deems appropriate and just.

## Sixth Cause of Action

CIVIL CONSPIRACY TO ILLEGALLY TERMIANTE SUPPLEMENTAL
EXTENDED DISABILITY BENEFIT IN VIOLATION OF ADA AND
CONSPIRACY TO INTERFERE WITH PLAINTIFF'S CIVIL RIGHTS.
(Against DPHH-which conspired with others)

**54.    Pursuant to   42 USC 2000e5 (f)**  and **42 USC 1985(2) & (3)**,  Plaintiff
alleges that DPHH (the employer) conspired with Delphi's Automotive Systems, the DIP
lenders, General Motors, and the attorneys of Butzel Long, P. C.  to violate the Americas
With Disability Act, **42 USC 12112,** when they discriminated against the Plaintiff ( and
other disabled retirees) by their efforts to deny protections under **11 USC 1114**[6 above]; and
the plaintiff also alleges that DPHH and the above named conspirators, conspired to
interfere with the plaintiff's civil rights regarding equal protection of the laws as it
pertains to **11 USC 1114** and the termination of plaintiff's disability benefits.

55.     The conspiracy formed when Delphi chose not to terminate disability
benefits because they were vested, which would have entitled the Plaintiff and other
disabled salaried retirees to an 1114 committee, it's associated benefits, and a likely
position on the Creditor's Committee.

56.     The argument by Delphi's attorney, Mr. Butler, during the OPEB hearing,
indicated that the DIP lenders and the DIP steering committee were a source of the
pressure to eliminate all at-will retiree benefits.  (See exhibit F, paragraph 37.)

57.     In addition, Mr. Butler also indicated that pressure was coming from the
DIP lenders and General Motors, in his comments during the OPEB hearing (See Exhibit
E, page 122, line 9 through 19.)

58.     It is clear the Delphi did not want retirees the have an 1114 committee, as
it made a vigorous challenge during the OPEB termination hearing.

    a.  See  OPEB hearing transcript ( BKRP Case 05-44481 RDD —SDNY;
         Docket #21867) - 24-FEB-09 and;

59.     There was a clear indication that the Court would have ordered an 1114
committee, if vested benefits had been identified. (**See Exhibit D, Exhibit E and the
OPEB hearing transcript, docket # 16451**)

60.     The OPEB hearing transcript is direct proof that DIP lenders and other
"stakeholders" wanted all "at-will benefits" terminated – OPEB hearing.  – both with the
pressure to eliminate all "at-will benefits" and the desire to avoid the formation of an
1114 committee, it is also clear that there was a tacit, if not direct, agreement not to

terminate disability benefits (which are vested), so as to prevent formation of an 1114 committee.

■ See Exhibit E and the Full OPEB transcript **Docket # 16451** and the

Sumpter Vesting Motion **Docket # 21860**; page 15 – 19 (attached as

**Exhibit F**) and the excerpts from the OPEB hearing below:

i. *Mr. Butler Page 119; Line 10*
 *"That starts with the DIP lenders and the DIP steering committee that's been formed. ...They made it very clear -- in their view, actually, they think the company has a fiduciary duty to terminate these at-will benefits.*

ii. *Mr. Butler page 112; Lines 19 & 23:*

*"...in fact if these were vested benefits, there would be an 1114 committee."*

*"...even though if you follow the majority rule, you only appoint an 1114 committee if there are vested benefits."*

**61.**    DPHH delayed termination of SEDB and other disability benefits, until it

was in the  post confirmation phase of the bankruptcy, thereby eliminating any

opportunity for the formation of  an 1114 committee , while also achieving its objection

of jettisoning the last of its obligations to retirees – which as a result, discriminates

against the Plaintiff (and other disabled salaried retirees).

**62.**    In addition, during the OPEB hearing [transcript (**Docket # 16451**; page

68 – included in **Exhibit E**)], reference was made to **Section 11 USC 1129(a) (13),**

which states that **"the Plan must provide for the continuation after the effective date of**

**payment of all retiree benefits as the term is defined, for the duration of the period the**

**debtor has obligated itself to provide such benefits."**  (which was enforced through

Judge Drain's decree that was included in his final OPEB order- see **Exhibit D**) Thus,

terminating the SEDB Disability benefits on 1-APR-2012 was illegal.

     **63.**    Furthermore, Terminating Vested benefits retroactively is illegal, as

established in Sumpter Vesting Motion  **Docket # 21860**; page 15 – **Exhibit F**), and Final

OPEB Order **Docket #16448** – page **3** (also **Exhibit D** ), which states:

> *The Debtors shall continue to provide benefits for claims incurred by each*
> *Eligible Salaried Employee through the cessation date of such retiree's*
> *participation in the applicable welfare plan, provided that such retiree has*
> *timely paid all requisite contributions for the applicable plan, and provided*
> *further that such retirees shall not be required to file proofs of claim in this*
> *Court to implement the terms of this decretal paragraph.*

     **64.**    Illegally terminating Disability benefits (without the benefits of 1114

protection) is the resulting injury, which was also the culmination of the plan and

furtherance of the conspiracy, which discriminates against the Plaintiff (and other

disabled salaried retirees), pursuant to **42 USC 12112.**

     **65.**    As a result plaintiff has been denied his vested SEDB benefits and the

protections afforded by **11 USC 1114**, which include:

    **a.** A bankruptcy court hearing regarding the termination of the SEDB

       benefits

    **b.** Establishing an 1114 committee;

    **c.** Payment of the administrative expenses;

    **d.** Paid legal representation;

    **e.** Participation on the creditors committee; and

    **f.** The opportunity to negotiate a settlement.

WHEREFORE Plaintiff demands judgment against DPHH, for the following

relief pursuant to **42 USC 2000e-5(f)(3)**, **42 USC 1981a(a)(2)** and **42 USC 1985(3):**

    **66.**    Payment of Plaintiff's SEDB benefit;

    **67.**    Compensatory damages for pain, suffering, diminished health, mental

anguish, depression, anxiety, loss of enjoyment of life, inconvenience and other

nonpecuniary losses and punitive damages in the amount of **$300,000;**

    **68.**    Payment of plaintiff's SEDB benefit of **$249,390;**

    **69.**    All pre and post judgment interest;

    **70.**    A payment for 20% of the amount of any lump sum benefit payment to

offset the impact of resulting higher income taxes - **$49,878**;

    **71.**    A payment of **$3000** to offset the impact of increases in Medicare cost

precipitated by the lump sum payment of past due benefits;

    **72.**    All cost and legal expenses that Plaintiff has incurred; and

    **73.**    such other equitable relief as this Court deems appropriate and just.

    **74.**    In addition, pursuant to **42 USC 1985(3)** Plaintiff demands judgment

against DPHH, for the following:

    **a.** Compensatory damages for pain, suffering, diminished health, mental anguish, depression, anxiety, loss of enjoyment of life, inconvenience and other nonpecuniary losses in the amount of **$2,000,000** and;

    **b.** Punitive damages in the amount of **$6,000,000.**

# V.  ADDITIONAL FACTS IN SUPPORT OF
# COMPLAINT

**75.**    Plaintiff was hired as a Senior Systems Engineer by Delco Electronics, a division of General Motors(GM) on February 5, 1991.

**76.**    Delphi Electronics was spun off, from GM, as a part of Delphi Automotive Systems, on January 1, 1999.

**77.**    At the time of the GM spin off, Plaintiff and other salaried employees were told to continue to use GM Benefit Plan documentation.

**78.**    Plaintiff was a participant in the Delphi Life & Disability Benefits Program. During year 2000, and the years prior to his disability, Plaintiff had continuously purchased the Supplemental Extended Disability Benefit (**SEDB**) from GM and then Delphi Electronics, following the spinoff.

**79.**    The Plan sponsor is DPH Holdings (DPHH-fka/ Delphi Automotive Systems).

**80.**    **The PLAN** Administrator is  DPH Holdings.

**81.**    **The PLAN** Fiduciary is DPH Holdings.

**82.**    John Brooks is **The PLAN** administrator**,** based on DPH Holding's Form 5500 filed with the Department of Labor.

**83.**    John Brooks was also copied on the letter from Ms. Roberta P. Granadier to the plaintiff (See Exhibit H-1), and therefore was involved in the termination of the Plaintiff's SEDB benefit payments.

84.     This is a clear indication of John Brooks' participation in the civil conspiracy cited in the Fourth Cause and the RICO scheme cited in the Fifth Cause.

85.     Cynthia Haffey was also copied on the letter from Ms. Roberta P. Granadier to the plaintiff (See Exhibit H-1), and therefore was involved in the termination of the Plaintiff's SEDB benefit payments.

86.     This is an additional indication of Cynthia Haffey's participation in the civil conspiracy cited in the Fourth Cause and the RICO scheme cited in the Fifth Cause.

87.     Cynthia Haffey's involvement in the termination of the Plaintiff's SEDB benefit payments is also documented in paragraphs 20 and 21.

88.     In his final OPEB order, Judge Drain ordered that existing benefits be continued, if all premiums have been paid(See Exhibit D), which was in compliance with **11 USC 1129(a)(13).**

89.     Plaintiff exhausted **The PLAN**'s Extended Disability Benefit (EDB) and began receiving SEDB monthly benefits on October 15, 2010.

90.     The Plaintiff paid a premium each year of this employment with Delphi, until he was disabled, for the protection of Supplemental Extended Disability Benefits (SEDB).

91.     The SPD describes the SEDB premium as a fully self-paid benefit purchase.

92.     The SPD, on page 115, also states the following:

> Benefits made available by Delphi, **the full costs of which are borne by employees,** are Optional Life Insurance, Dependent Life Insurance, Personal Accident Insurance, flexible spending accounts, **Supplemental Extended Disability Benefit,** and sponsored dependent medical coverage

**93.**    DPHH made an extortionate lump sum offer in February 2012.

**94.**    The Plaintiff did not accept the offer.

**95.**    DPHH, illegally, stopped issuing the Plaintiff's SEDB payment after March 1, 2012.

**96.**    The plaintiffs appealed the termination of his SEDB benefits on July 31, 2012.

**97.**    There was no response by the benefits administrator or DPHH, as a result, the Plaintiff has exhausted all administrative remedies and procedures made available to him by the Defendants, as it pertains to ERISA.

**98.**    Plaintiff, James B. Sumpter meets the definition of disabled, pursuant to the Americans with Disabilities Act, **42 USC 12102**.

**99.**    DPH Holdings, continuously throughout the year, has more than 500 employees.

**100.**    EEOC Notice of Suit Rights mail date – March 28, 2013.

**101.**    EEOC notice receipt date- March 29, 2013.

**102.**    EEOC suit right expiration date – June 27, 2013

# VI.  PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests this Court to:

**103.**    Exercise jurisdiction in this case and award, to Plaintiff, payment of the SEDB benefit of **$249,390**, to which he is entitled;

24

**104.**    Award Plaintiff equitable relief in the form of a surcharge to defendant, as specified in the Second Cause of Action;

**105.**    Disallow all DPHH pension offsets to SEDB payments between October 15, 2010 and January 31, 2017, as specified in the Third Cause of Action.

**106.**    Award, to plaintiff, all compensatory, consequential and punitive damages specified in the Fourth Cause of Action;

**107.**    Award to plaintiff all compensatory, consequential and RICO damages specified in the Fifth Cause of Action;

**108.**    Award to plaintiff all compensatory, consequential and punitive damages specified in the Sixth Cause of Action;

**109.**    Award to Plaintiff all cost and legal expenses that Plaintiff has incurred;

**110.**    Award to Plaintiff all appropriate pre-judgment and post-judgment interest and;

**111.**    Award to Plaintiff such other equitable, legal and/or remedial relief that the Court deems appropriate and just.

## VII.  SIGNATURE

Signed this___22nd___day of _____June_____, 2013

By: _____

James B. Sumpter, pro se
Plaintiff

James B. Sumpter, pro se
21169 Westbay Circle
Noblesville, IN  46062

Phone       317-877-0736
E-mail     jsump@ieee.org

# Exhibit List

**Exhibit A –**    Supplemental Extended Disability Benefit ( SEDB) Letter From
Sedgwick CMS- SEDB Administrator

**Exhibit B –**    DPHH's SEDB Benefit Lump Sum And Benefit Cancellation Letter

**Exhibit C –**    EEOC Dismissal and Notice of Suit Rights

**Exhibit D –**    An excerpt from the **"Final OPEB Order -  Docket #16448"** from
Delphi's bankruptcy case (05-44481 RDD – SDNY) .  the excerpt is
supplied here to define OPEB benefits and to note that the definition does
not include disability benefits.

        Also included in the final order is the requirement that  payment of retiree
benefits that were not terminated through the cessation date of the retiree's
participation and the particular welfare plan

        The key text is highlighted in yellow.

**Exhibit E –**    An excerpt from the transcript of the  OPEB hearing (**Docket  # 16451** ),
and which illustrates that Vested benefits can only be terminated during
bankruptcy (page 65 ), Delphi's understanding that Vested benefits would
trigger an 1114 committee ( page 112), the fact that benefits not
terminated shall be paid per obligation (pages 68 and 69); and the
emphasis by  the Court to identify vested benefits that would trigger the
formation of a full 1114 Committee (pages 123 and 125). The key text is
highlighted in yellow.

**Exhibit F –**     An excerpt from **"Sumpter Vesting Motion – Docket # 21860"** that establishes that Disability benefits are Vested (page 15) and established that Delphi knew disability benefits were vested; and also Delphi's motive for terminating OPEB benefits (pages 16 -20).

This exhibit also includes excerpts from the OPEB hearing transcript: pages 105, 106, 112, and 119.

**Exhibit G–**     Benefit termination letter to disabled employees

**Exhibit H –**     **(H-1)** Roberta Granadier's (Butzel Long) Response To The March 20, 2012 Letter From James Sumpter

**(H-2)** Letter From James Sumpter (March 20, 2012) Regarding Disability Benefit Cancellation And/Or Lump-Sum

# EXHIBIT A

Supplemental Extended
Disability Benefit ( SEDB)
Letter From Sedgwick CMS
(SEDB Administrator)

# Sedgwick CMS

Delphi Benefit Center
P.O. Box 14422
Lexington, KY 40512-4422
Phone: 1-877-933-5744, Fax: 1-859-825-6897
TTY: 1-866-665-1287

Date: October 27, 2010

James Sumpter
21169 Westbay Circle
Noblesville, IN 46062

Claim No.: 920201298582
Cisco: Salaried

**Re: Claim for Supplemental Extended Disability Benefits**

Dear Mr. Sumpter:

We are responding to your inquiry dated October 14, 2010, regarding your Supplemental Extended Disability benefits.

During your period of disability, you were covered under the Salaried Delphi Life and Disability Benefits Program for Employees. The Life and Disability Benefits Program is provided by Delphi Corporation under the provisions of a self-funded Employee Welfare Benefit Plan as described in the Employee Retirement Income Security Act (ERISA). Sedgwick CMS is the claims administrator of the Disability Benefits Program.

The Salaried Delphi Life and Disability Benefits Program Provides that Extended Disability Benefits are payable if a covered employee is wholly and continuously disabled so as to be unable to perform any and every duty of his occupation and during the period of such disability is under treatment by a legally licensed physician during the period of such disability is under treatment by a legally licensed physician who can certify to such treatment and total disability.

In addition, for an employee who has less than ten (10) years of Participation at the commencement of disability, the monthly amount of Extended Disability Benefits is based on the years and months of participation an employee had earned with the Corporation at the time the first period of disability commenced. In your case, your maximum eligibility date for Extended Disability benefits is October 14, 2010. However, our records reflect that you are eligible for Supplemental Extended Disability benefits effective October 15, 2010.

Based upon your inquiry, we have confirmed that your Supplemental Disability benefits claim has commenced on October 15, 2010 and the direct deposit feature is currently active.

Under the Program, you may be eligible for Supplemental Extended Disability benefits through the end of the month in which you attain age sixty-five (65); providing that the requirements for disability are satisfied. Therefore, if you cease to meet the requirements under the Program, Supplemental Extended Disability benefits may be terminated prior to the maximum eligibility date.

Lastly, Sedgwick CMS is not the claims administrator for Delphi Life Insurance. Therefore, we are unable to address your Life Insurance concerns. We suggest that you contact the Delphi Corporation for direction.

Page Two-James Sumpter

If you have any questions about S&A, Extended Disability Benefits, or Workers' Compensation Benefits, please call 1-877-933-5744 to speak with a Customer Service Associate.

Sincerely,

**Delphi Benefit Center**

Cc: Claim File

# **EXHIBIT B**

DPHH's SEDB Benefit

Lump Sum and Benefit

Cancellation Letter

February, 2012

Dear JAMES SUMPTER:

You are receiving this letter because you are a salaried retiree of DPH Holdings Corp. ("DPHH"), the entity formerly known as Delphi Corporation, and you are currently receiving disability benefits from DPHH. The purpose of this letter is to inform you of **important changes** regarding those benefits.

In October, 2010 we notified you that DPHH was in the process of winding down all of its remaining operations. Further, you were informed that DPHH had limited resources during the wind-down process and that it reserved the right to terminate its benefit programs.

We regret to inform you that effective midnight March 31, 2012, DPHH will terminate The DPH Holdings Corp. Life and Disability Benefits Program for Salaried Employees (the "Disability Plan") and all benefits provided under such Plan. This means that any disability benefits you currently receive or are eligible to receive will cease after March 31, 2012. The termination of the Disability Plan will not impact your continued receipt of any of the following: retirement benefits you may be receiving from the PBGC, Workers Compensation benefits, Social Security disability or retirement benefits, or any other disability-related benefits under State or Federal law.

DPHH is offering you a lump sum payment equal to $129,600, less applicable withholdings. **You are eligible for the lump sum payment only if you sign the attached Separation and Release Agreement. The Release must be postmarked no later than April 9, 2012 and sent to DPH Holdings Corp., P.O. Box 5027, Troy, MI 48098. Assuming DPHH has timely received your signed Separation and Release Agreement, all lump sum payments will be paid in early May and sent to the address on file.**

Please direct any questions or concerns you may have regarding your benefits to DPHH's benefits administrator at 1-888-587-9648.

Sincerely,

DPH Holdings Corp.

# DPH Holdings Corp.

World Headquarters 5725 Delphi Drive  Troy, MI  48098  USA

## RELEASE AGREEMENT

This Release Agreement ("Agreement") is between JAMES SUMPTER for himself/herself, his/her heirs and personal representatives ("Retiree"), and DPH Holdings Corp., The DPHH Life and Disability Benefits Program for Salaried Retirees (the "Disability Plan") together with their current and former officers, directors, plan administrators, managers, shareholders, former employees, contractors, agents, parent companies, subsidiaries, affiliated entities, related entities including, attorneys, any other representatives, and successors in interest (collectively referred to as "DPHH").

## RECITALS

A.    Retiree has previously retired from active employment with DPHH, the entity formerly known as Delphi Corporation.

B.    DPHH is in the process of winding up its remaining operations.  As part of the process of winding up the business, DPHH is terminating its benefit plans.

C.    Retiree is affected by the termination of the DPHH Life and Disability Benefits Program for Salaried Retirees.

D.    DPHH has decided to provide Retiree with a lump sum payment and in exchange Retiree has agreed to release and discharge DPHH of any and all liability claims.

Based on the foregoing Recitals, which Retiree and DPHH accept as true and as part of the basis for this Agreement, and in consideration of and in reliance upon the representations and promises in this Agreement, Retiree and DPHH agree as follows:

1.    **Payments to Retiree.**

(a)    In exchange for Retiree's execution of this Release Agreement, DPHH will pay Retiree the sum of $129,600 less applicable withholding.

(b)    <u>Consideration in Exchange for Retiree's Promises.</u>  The consideration set forth in Section 1 of this Agreement is not otherwise due and owing to Retiree and is fair and adequate consideration in exchange for Retiree's promises contained in this Agreement.  DPHH will provide the consideration under this paragraph to Retiree only in exchange for Retiree's promises in this Agreement.  Retiree will not receive this consideration unless Retiree signs this Agreement and returns it to the address below, post-marked no later than April 9, 2012.

2.    **Termination of Benefits.**  The Retiree's participation in and receipt of benefits under The DPHH Life and Disability Benefits Program for Salaried Retirees shall be terminated effective midnight March 31, 2012.

3.    **Release**

(a)    General Release.  Retiree, to the fullest extent permitted by law, waives, releases, and discharges DPHH (as defined above and including The DPHH Life and Disability Benefits Program for Salaried Retirees) from any claims, arbitration demands, and causes of action related to, arising in the course of, or arising out of Retiree's employment with DPHH, the termination of Retiree's employment with DPHH or the termination of DPHH benefits under any state or federal regulation, law, and statute, including (a) the Age Discrimination in Employment Act or the Older Worker's Benefit Protection Act, 29 U.S.C. § 621, *et seq.*, Title VII of the Civil Rights Act of 1964, as amended, the Rehabilitation Act of 1973, the Michigan Elliot Larsen Civil Rights Act, the Michigan Persons With Disabilities Civil Rights Act, the Family and Medical Leave Act, and the Americans With Disabilities Act, the Retiree Retirement Income Security Act (ERISA), 29 USC §1001 *et seq.,* (b) any and all claims pursuant to state or federal wage payment laws, (c) any and all claims related to Michigan fair employment laws, (d) any and all claims pursuant to the Michigan Whistleblowers' Protection Act and/or claims or complaints pursuant to the federal Sarbanes-Oxley Act of 2002, the Dodd-Frank Act, and (e) any claim arising under common law.

Retiree and DPHH intend that, to the fullest extent permitted by law, this waiver, release, and discharge is a general release and it shall extinguish any claims, arbitration demand or cause of action by Retiree against DPHH about anything that occurred before the date of this Agreement.  This Agreement includes a release of Retiree's right to file a lawsuit or to seek individual remedies or damages in any EEOC-filed court action, and this release will apply to any Charge of Discrimination about any events that occurred up to the date of the signing of this Agreement.  Retiree and DPHH intend that, to the fullest extent permitted by law, these waivers, releases, and discharges will constitute a general release, will extinguish any claims and any causes of action, and will preclude any lawsuit or any other legal claim by Retiree against DPHH about anything that occurred before the date of the signing of this Agreement, including anything arising out of or relating to Retiree's employment with DPHH or the termination of benefits.  This Agreement will not be construed to prohibit the filing of a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") or a state agency, but this Agreement includes a release of Retiree's right to file a lawsuit or to receive any monetary recovery and any other remedies if the EEOC or a state agency pursues any claims on Retiree's behalf.  The only claims and causes of action that Retiree is not waiving, releasing, or discharging are for the consideration that Retiree will receive under Section 1 of this Agreement and any claims and causes of action that, as a matter of law, cannot be waived, released, or discharged.

(b)    Accord and Satisfaction.  The consideration set forth in this Agreement is in full accord and satisfaction of any claims and any causes of action that Retiree has, may have, or may have had against DPHH related to, arising in the course of or arising out of Retiree's employment with DPHH or the termination of benefits.

S6.R

4.    **Knowing and Voluntary Acceptance**

(a)    Knowing and Voluntary Acceptance.    Retiree has carefully read this Agreement, understands it, and is entering it knowingly and voluntarily, which means no one is forcing or pressuring Retiree to sign it.

(b)    Advice of Counsel.    Retiree is advised to consult with an attorney of Retiree's choice, at Retiree's expense, before signing this Agreement.

(c)    No Reliance on Any Other Representation.    In signing this Agreement, Retiree has not relied upon any DPHH representation or statement, either oral or written, about the subject matter of this Agreement that is not set forth in this Agreement.

5.    **Non-admission of Liability.**    This Agreement shall not be used or construed as an admission of liability or wrongdoing by either DPHH or Retiree.  DPHH denies that it acted unlawfully, tortiously, or in violation of any employment law affecting Retiree.

6.    **Severability.**    If any one or more than one of the provisions contained in this Agreement are, for any reason, held to be invalid, illegal, or unenforceable in any respect, the rest of this Agreement will remain enforceable.  This Agreement shall then be construed as if it never contained the invalid, illegal, or unenforceable provision.

7.    **Applicable Law.**    This Agreement is to be interpreted, construed, and applied in accordance with the law of the State of Michigan.

8.    **Jurisdiction and Forum.**    Any action arising out of this Agreement or the relationship between the parties established herein shall be brought only in the State of Michigan Courts of appropriate venue, or the United States District Court sitting in Michigan, and Retiree hereby consents to and submits himself or herself to the jurisdiction of such Courts.

9.    **Non-disclosure.**    Retiree will not disclose the terms of this Agreement to any third party, other than Retiree's immediate family members (meaning spouse, mother, father or siblings only), except as required by law or as necessary for the purpose of receiving counsel from Retiree's attorney, accountant, or both.    Retiree's immediate family members and professional advisors will be subject to the non-disclosure requirement of this paragraph.

10.    **Successors and Assigns.**    This Agreement is binding and shall take effect for the benefit of (i) DPHH and (ii) Retiree, Retiree's heirs, assigns, executors, administrators, other legal representatives, and successors.

11.    **Counterparts.**    This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which together shall constitute the same instrument.

12.    **Entire Agreement.**    This Agreement constitutes the entire agreement between the parties related to the termination of Retiree's benefits.  There are no other agreements, promises,

S6.R

conditions, or understandings, either written or oral, between DPHH and Retiree either with respect to the subject matter of this Agreement or modifying the terms of this Agreement.  Only a writing signed by Retiree and an authorized representative of DPHH that specifically refers to and expressly changes this Agreement can modify the terms of this Agreement.


**DPH HOLDINGS CORP.**                    **RETIREE**


By: _____        _____

Its: _____


Dated: _____, 2012        Dated: _____, 2012


**Return signed agreement postmarked
no later than April 9, 2012 to:**

DPH Holdings Corp.
P.O. Box 5027
Troy,                    MI                        48098

000141814\0005\1293521-1                                    S6.R

# EXHIBIT C

# EEOC Dismissal and Notice of Suit Rights

EEOC Form 161 (11/09)

## U.S. Equal Employment Opportunity Commission

## Dismissal and Notice of Rights

| | |
|---|---|
| To:  **James B. Sumpter**<br>**21169 West Bay Circle**<br>**Noblesville, IN 46062** | From:  **Indianapolis District Office**<br>**101 West Ohio St**<br>**Suite 1900**<br>**Indianapolis, IN 46204** |

[ ]      *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **470-2012-03362** | **Michelle D. Ware,**<br>**Enforcement Supervisor** | **(317) 226-5161** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]  The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u>** before you file suit may not be collectible.

On behalf of the Commission

**Webster N. Smith,**
**District Director**

MAR 2 8 2013

*(Date Mailed)*

Enclosures(s)

cc:
**Jugal Vijayvagiya**
**Senior VP and President**
**DELPHI ELECTRONICS AND SAFETY**
**2151 East Lincoln Road**
**Kokomo, IN 46902**

Enclosure with EEOC
Form 161 (11/09)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS   --   **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

PRIVATE SUIT RIGHTS   --   **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than** <u>2 years (3 years)</u> before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION   --   **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request** <u>within 6 months</u> of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**INDIANAPOLIS DISTRICT OFFICE**

Equal Employment Opportunity Commission
101 West Ohio Street - Suite 1900
Indianapolis, Indiana 46204-4203

OFFICIAL BUSINESS

Received
3/29/13

UNITED STATES POSTAGE
PITNEY BOWES
02 1A                    $ 00.46⁰
0004601365    MAR 28  2013
MAILED FROM ZIP CODE 46204

46062931169

# EXHIBIT D

Excerpt from "Final OPEB Order"

U. S. Bankruptcy Court
Southern District New York

Chapter 11 Case # 05-44481 (RDD)
Docket #16448

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                                        :
        In re                                           :    Chapter 11
                                                        :
DELPHI CORPORATION, et al.,                             :    Case No. 05-44481 (RDD)
                                                        :
                            Debtors.                    :    (Jointly Administered)
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - -   x

FINAL ORDER UNDER 11 U.S.C. §§ 105, 363(b)(1), 1108, AND 1114(d) (I)
CONFIRMING DEBTORS' AUTHORITY TO TERMINATE EMPLOYER-PAID POST-
RETIREMENT HEALTH CARE BENEFITS AND EMPLOYER-PAID POST-
RETIREMENT LIFE INSURANCE BENEFITS FOR CERTAIN (A) SALARIED
EMPLOYEES AND (B) RETIREES AND THEIR SURVIVING SPOUSES AND (II)
AMENDING SCOPE AND ESTABLISHING DEADLINE FOR
COMPLETION OF RETIREES' COMMITTEE'S RESPONSIBILITIES

(" FINAL OPEB TERMINATION ORDER")

Upon the motion, dated February 4, 2009 (the "Motion"), of Delphi Corporation and

certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned

cases (collectively, the "Debtors"), for an order confirming the Debtors' authority (or alternatively,

authorizing, but not directing, the Debtors) to terminate, as soon as practicable after March 31,

2009, Salaried OPEB,[1] which termination, inter alia, consists of: (a) eliminating eligibility for

employer-paid post-retirement health care benefits for all current and future active salaried

employees; (b) ceasing to make Company contributions to provide post-retirement health care for

current and future salaried retirees and their surviving spouses; (c) canceling all Retirees' Health

Reimbursement Accounts for Medicare-eligible salaried retirees and their surviving spouses; (d)

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.
       "Salaried OPEB" means the Debtors' current and future costs associated with providing post-retirement
       health and life insurance benefits to salaried retirees and their surviving spouses.



terminating the Medicare Part B special benefit for current and future salaried retirees and their surviving spouses; (e) ceasing to provide the 1% employer contribution to the Salaried Retirement Savings Plan for those active salaried employees hired on or after January 1, 1993 and on or prior to December 31, 2000; (f) eliminating eligibility for employer-paid post-retirement basic life insurance benefits for all current and future active salaried employees; and (g) ceasing to make Company contributions to provide post-retirement basic life insurance benefits for current and future salaried retirees; and the Court having held a hearing on the Motion, the objections thereto as reflected in the Revised Proposed Omnibus Hearing Agenda (Docket No. 16326), and the cross-motions for the appointment of a committee of retired employees (Docket Nos. 14882, 14886, and 15283) on February 24, 2009 (the "Hearing"); and upon the record of the Hearing (including the testimony of witnesses examined and exhibits admitted into evidence at the Hearing); and after due deliberation thereon; and good and sufficient cause appearing therefor; and based on the bench opinion of the Court read into the record at the Hearing (as subsequently modified by the Court at Docket No. 16443), the Court having entered its Provisional Salaried OPEB Termination Order (Docket No. 16380); and the United States Trustee having appointed a Retirees' Committee on February 26, 2009 (Docket No. 16384) pursuant to and subject to the limitations of the Provisional Salaried OPEB Termination Order; and the Court having considered certain pleadings filed by the Retirees' Committee at Docket Nos. 16430 and 16431, the response by the Debtors at Docket No. 16446, and the responses and statements filed by certain other parties at Docket Nos. 16444 and 16445; and upon the record of the Final Hearing (including certain further exhibits admitted into evidence at the Final Hearing); and after due deliberation thereon; and good and sufficient cause appearing therefore; and based on the supplemental bench opinion of the Court read into the record at the Hearing;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT THE

PROVISIONAL SALARIED OPEB TERMINATION ORDER IS SUPPLEMENTED AS

FOLLOWS:

1.      The Debtors have made a substantial showing that none of the Salaried OPEB

benefits have vested with regard to any Eligible Salaried Retiree group hereof.  The Retirees'

Committee has not presented any competent evidence to establish, consistent with the Court's

prior bench ruling and applicable law, that Salaried OPEB benefits have vested with respect to

any Eligible Salaried Retiree or group thereof.

2.      The Debtors' Salaried OPEB benefits have not vested and the Debtors have

reserved the right to modify or terminate Salaried OPEB benefits.

3.      The Debtors are authorized, but not directed, to terminate Salaried OPEB benefits

as provided in the Motion.

4.      The Debtors shall continue to provide benefits for claims incurred by each

Eligible Salaried Employee through the cessation date of such retiree's participation in the

applicable welfare plan, provided that such retiree has timely paid all requisite contributions for

the applicable plan, and provided further that such retirees shall not be required to file proofs of

claim in this Court to implement the terms of this decretal paragraph.

5.      The Debtors are authorized and directed to make provisions for, and contingent

upon the occurrence of a triggering event under 29 U.S.C. §§ 1341 or 1342 implement, a

Voluntary Employees' Beneficiary Association ("VEBA") under 26 U.S.C. § 501(c)(9) for the

purpose of qualifying covered employees who have retired or will retire for the tax credit

available through 26 U.S.C. § 35(e)(1)(K) as amended by § 1899G of the American Recovery

And Reinvestment Act Of 2009 (PL 111-5, February 17, 2009, 123 Stat 115); provided, however,

# EXHIBIT E

## Excerpt from OPEB Hearing Transcript

U. S. Bankruptcy Court
Southern District New York

Chapter 11 Case # 05-44481 (RDD)
Docket #16451

1  the plan.  And that is certainly, you know, the issue in Drexel

2  is one that I think you see in Doskocil too, which, I think, is

3  a misinterpretation of the statute, which is 1129(a)(13), is

4  that if the plan comes through the bankruptcy process

5  unmodified, and it's adopted wholesale under the plan, then

6  magically it becomes vested.  And that is certainly not the

7  case.  And that is the narrow issue that I think Drexel

8  addressed.

9       THE COURT:  I'm sorry.  Let me make sure I understand

10  this.

11       MR. DOYLE:  Right.

12       THE COURT:  That 1114 creates a federal override of

13  modification of vested benefits only during the Chapter 11 pre-

14  plan period.

15       MR. DOYLE:  No, Your Honor.  It's through the

16  effective date.  I think there's the Ormed (ph.) case out

17  there.

18       THE COURT:  All right.  Until the plan goes

19  effective?

20       MR. DOYLE:  Yes, Your Honor.  It's to allow the

21  retirees to have a voice in what the plan ultimately is going

22  to look like.

23       THE COURT:  But if the plan -- if it snaps back to a

24  right to terminate at will, what good is giving them that

25  voice?

```
 1    will, by 1114, then where is that right?

 2              MR. DOYLE:  Your Honor, 1129(a)(13) simply says that

 3    whatever the deal is that's cut with the committee of the

 4    retirees under 1114 has to be integrated into a plan.  Now --

 5              THE COURT:  It doesn't say that.  It says that the

 6    plan must provide for the continuation after the effective date

 7    of payment of all the retiree benefits, as that term is

 8    defined, for the duration of the period the debtor has

 9    obligated itself to provide such benefits.

10              MR. DOYLE:  That's right, Your Honor.  And so if the

11    retirees' committee has negotiated a certain amount of time in

12    which those benefits will continue post-effective date, the

13    plan has to reflect that.  If the --

14              THE COURT:  But the debtor doesn't have to negotiate

15    that, right?  The debtor doesn't have to -- if the debtor was

16    willing, under your interpretation of 1114, not to modify the

17    plan during the course of the case, pre-effective date, then

18    once the Chapter 11 plan is confirmed, it can do whatever it

19    wants, right?

20              MR. DOYLE:  That is what the case law appears to say,

21    Your Honor.

22              THE COURT:  Okay.

23              MR. DOYLE:  And that's assuming they have a

24    reservation of rights and they haven't contracted that away

25    during the -- modified that during the --
```

VERITEXT REPORTING COMPANY

69

1        THE COURT:  Right.

2        MR. DOYLE:  -- bankruptcy process.

3        THE COURT:  Right.

4        MR. DOYLE:  And the reason why that is, is because

5   everybody expects a successful reorganization, including

6   continuation of retiree benefits.  In other words, the debtor

7   would continue to be economically able to provide those

8   benefits post-effective date.  The real issue comes in a case

9   like this, when the debtor believes that it cannot economically

10  maintain those benefits.  Then the issue becomes what level of

11  benefits should there be with regard to a modification through

12  the 1114 process and how is that going to be reflected in the

13  plan under 1129(a)(13).

14            And that can run, as I've already described, that can

15  run the gamut in terms of lowered benefits to meet the

16  financial model that the debtor might need to formulate in

17  order to be effective.  I mean, the whole thrust of 1114 is

18  that the retirees need a voice, and this Court, absent

19  agreement with the debtor and the committee, needs to find that

20  it's fair and equitable to the parties and that it's necessary

21  to permit a reorganization.  And obviously, those are being

22  lost over here today.

23        THE COURT:  Okay.

24        MR. DOYLE:  So, Your Honor, as I said, I enjoyed the

25  discussion and I would ask that the Court deny the motion and

1    retiree.

2            THE COURT:  Okay.

3            MR. GLOSTER:  And Your Honor, with regard to Delta

4    Airlines, at the time the 1114 committee was appointed, the

5    debtor had indicated that they did not have a current intention

6    to modify vested benefits.  But the committee was then

7    appointed in any event and dealt with both vested and unvested

8    benefits which we preserved for a period of time after the

9    confirmation.

10            THE COURT:  But Delta sought that committee, right?

11            MR. GLOSTER:  Delta opposed --

12            THE COURT:  The appointment of the committee.

13            MR. GLOSTER:  -- the appointment of the 1114

14    committee.  It was appointed over the objection of Delta.

15            THE COURT:  Okay.

16            MR. BUTLER:  Your Honor, moving to what at least two

17    counsel have indicated in their arguments, is sort of the

18    argument that the company's got the cart before the horse

19    because in fact if these were vested benefits, there would be

20    an 1114 committee and there's an open question as to whether

21    these are vested benefits so you need an 1114 committee

22    appointed under any circumstance to find out whether they're

23    vested, even though if you follow the majority rule, you only

24    appoint an 1114 committee if there are vested benefits.  And

25    they say let us go out and find that and find out whether there

122

1    whether it wants to see these pensions continue.

2          We certainly hope that we can find a solution that

3    involves the support of the government in continuing these

4    pensions.  But that really is for another day.  And that

5    doesn't change the problems I have now for this company in

6    trying to be able to address the issues that our current

7    liquidity constraints provide.  And this is not, you know, just

8    to say it, this is not -- the legal standards for us, this is

9    not a but-for test that we're dealing with.  This is a business

10   judgment test about whether, given the extremely important

11   objectives of preserving liquidity and providing liquidity

12   transparency to our administrative creditors as we are

13   essentially getting support from our DIP lenders and from

14   General Motors to do that, as I've said before, on a week by

15   week and month by month basis, can the company, in working with

16   those stakeholders, continue to spend a million and a half

17   dollars a week on discretionary at-will expenses?  And the

18   conclusion the company has had after consulting with the

19   stakeholders is no, we can't.

20         THE COURT:  Let me run an idea by you.  I tend to

21   agree with you that the record for today suggests to me pretty

22   clearly that not only do the plan documents provide this right

23   but that there's nothing, under either a Sixth Circuit or a

24   Second Circuit law, that would override that right that exists

25   in the plan documents.

123

1       On the other hand, the Code in 1114(d), in addition

2   to having a mandatory order of the appointment of a committee,

3   gives the Court discretion to appoint one if it's

4   "appropriate." And the consequence of the Court being wrong on

5   the issue of whether anyone is vested or not, at least for that

6   person, is pretty serious because that person, if he or she is

7   vested, would have the rights specified in 1114.

8       And so given that this relief would not kick in until

9   April 1st, consider the possibility of an order today granting

10  the debtors' motion subject to the Court's review of the

11  results of a committee appointed for the sole purpose of

12  determining whether any group, such as, for example, those who

13  retired on disability, in a more thorough look at the documents

14  which would occur over the next two weeks, would have a vested

15  right. I would probably set a budget for that committee.  It

16  would give the debtor someone to talk with and employees

17  someone to coordinate with.

18       MR. BUTLER:  But the only --

19       THE COURT:  And let me just say one other thing too.

20  And perhaps this is anathema to someone who I've just told may

21  well win his motion, these issues are all issues that --

22  particularly the statutory construction issues, are all issues

23  that are nicely subject to appellate rights.  So you would have

24  a committee to talk to about that sort of thing too.  And

25  perhaps also about the federal tax plan, which, frankly, I

1   hire capable lawyers, but they've only been able to do that

2   very recently.  And again, I think the difference as far as how

3   one comes out on this issue is significant, although ultimately

4   I'm not sure how significant because again, if it's necessary

5   for a plan, it doesn't appear to me that 1114 even really kicks

6   in in that sense.

7          But as far as cash flow management is concerned, it

8   would seem to me that even there the debtor has its rights for

9   interim relief as well if that becomes an emergency.  But

10  leaving all that aside, I guess I'm really not at the point to

11  see that 1114 generally kicks in.  But it's all premised upon

12  the notion that there are no vested rights here.  And the

13  record on that is clear today, but it's a record that was built

14  up on very short notice from the objectors' side and I still

15  have some questions about how Orion fits into all of this as

16  far as it's being a summary proceeding.

17          So my inclination, I think, is to authorize the

18  appointment of a committee with the marching instructions

19  limited to doing investigation on the vesting for particular

20  groups.  And I suppose also negotiating with the debtor, if

21  either side thinks it's advisable, on a settlement of any of

22  these issues ultimately, and it would be the settlement, I

23  guess, on an appellate basis.

24          MR. BUTLER:  Your Honor, if that would be without

25  imposing the 1114 regime?

# EXHIBIT F

Excerpt from

## "Sumpter Vesting Motion"

U. S. Bankruptcy Court
Southern District New York

Chapter 11 Case # 05-44481 (RDD)
Docket #21860

## Vested Benefits Cannot Be Retroactively Terminated

29.    In addition, several courts, in particular the 4th Circuit[9], 10th Circuit[10] and 6th Circuit[11], have ruled that vested welfare benefits cannot be retroactively terminated.

30.    It should also be noted that the 4th Circuit stated *"Numerous courts have taken, in a wide array of circumstances, a similarly dim view of any amendment that attempts to retroactively eliminate vested welfare benefit rights."* The 4th Circuit also went on to cite several cases to make the point[8] above.

---

[8] We concluded that the beneficiary's rights under a welfare benefit plan providing medical insurance vested at the moment the triggering event under the policy occurred and that the plan could not be amended to deny coverage after that point. *See id.* At 638-40. Numerous courts have taken, in a wide array of circumstances, a similarly dim view of any amendment that attempts to retroactively eliminate vested welfare benefit rights. *See Member Servs. Life Ins. Co. v. American Nat'l Bank & Trust Co. of Sapulpa, 130 F.3d 950, 954-57 (10th Cir. 1997); Filipowicz v.American Stores Benefit Plans Comm., 56 F.3d 807, 815 (7th Cir. 1995); Bartlett v. Martin Marietta Operations Support, Inc. Life Ins. Plan, 38 F.3d 514, 517 (10th Cir. 1994); Wulf v. Quantum Chem. Corp., 26 F.3d 1368, 1377-78 (6th Cir. 1994); Confer v. Custom Eng'g Co., 952 F.2d 41, 43 (3d Cir. 1991) (per curiam).* **Blackshear v. Reliance Standard Life Ins. Co., 509 F.3d 640, 641 (4th Cir. 2007)**

[9] Once an employer or plan sponsor grants vested rights under a welfare benefit plan, however, it may not retroactively amend the plan to deprive a beneficiary of a vested benefit. *See Wheeler,* 62 F.3d at 638, 640 **Blackshear v. Reliance Standard Life Ins. Co., 509 F.3d 640 (4th Cir. 2007)**

[10] ...an amendment to any ERISA plan may not operate retroactively if that amendment deprives a beneficiary of a vested benefit, see Chiles, 95 F.3d at 1510; Wheeler, 62 F.3d at 640... **Member Services Life Insurance Company V. American National Bank And Trust Company Of Sapulpa 130 F.3d 954 (10th Cir. 1997)**

[11] As then Chief Judge Hillman stated in Edward W. Sparrow Hospital Ass'n, Inc. v. Industrial Welding, Inc., 1990 U.S. Dist. LEXIS 9194 (W.D. Mich., July 19, 1990), "Once a participant became entitled to coverage under the then existing terms of the Plan, it would be entirely illusory to allow [the employer] to essentially divest them of that right by retroactively deleting the benefit." **Wulf v. Quantum Chem. Corp., 26 F.3d 1368, 1377-78 (6th Cir. 1994)**

31.    Furthermore in the OPEB Termination Hearing, the Hon. Judge Drain (Bk-SDNY) paid special attention to the protection of vested benefits. As a result (as noted in the background section of this motion), Judge Drain established a limited 1114 committee for Salaried Retirees, which was principally tasked with identifying vested benefits that might be affected. (See OPEB termination transcript Docket # 16451, pages 143-144 )

32.    Judge Drain's references to "disability benefits potentially being vested benefits" can be found on pages 80, 123 and 130 of the OPEB transcript. However, as far as vesting issues and the 1114 Committee are concerned, the OPEB benefits did not include disability. Not withstanding that Judge Drain had some pre-established concerns about Disability Benefits being vested, the termination of disability benefits was not part of the charter of the limited 1114 committee, and was not addressed.

## Delphi Prior Actions Demonstrate That It Operated With The Knowledge That Disability Benefits Are Vested

33.    Delphi prior actions demonstrate that it operated with the knowledge that the disability benefits are vested.

34.    On at least two occasions Salaried Retirees petitioned the court to authorize an 1114 Committee. Delphi vigorously and successfully challenge each of these motions.

35.    The two instance seeking 1114 Committee status were:

    i.    Motion to appointment of official committee of retirees (Docket # 0874)

    ii.    OPEB benefits Terminations Hearing (Docket # 16451)

36.    In the case of OPEB benefit termination, Delphi terminated all retiree benefits,

**except Disability Benefits**.

37.    There is significant text, from the hearing transcript, that indicates that Delphi

was terminating all "at-will" or discretionary benefits:

*Comments From Mr. Butler, Delphi's attorney at the OPEB termination hearing*

*24-FEB-2009 (Docket # 16451):*

    **a.**    Mr. Butler Page 105; Line 12

    *"That's really where the company is at right now. And that's why after having*
*provided some forty-two months of welfare coverage here on an at-will basis the*
*company has concluded that this motion is necessary."*

    **b.**    Mr. Butler (Page 105; Line 25 thru Page 106; Line 16 of the transcript):

    *"That starts with the DIP lenders and the DIP steering committee that's been*
*formed. ...They made it very clear -- in their view, actually, they think the*
*company has a fiduciary duty to terminate these at-will benefits. We have*
*pushed back on their interpretation, but nonetheless it is clear to the company,*
*as Mr. Miller testified to in his declaration that the stakeholders with the*
*economic interest at the top of the absolute priority waterfall that have to be*
*dealt with in this case, in the circumstances we find ourselves in, simply will not*
*support and will not countenance having discretionary liabilities of this*
*magnitude on the reorganized balance sheet of the company -- reorganized*
*company's balance sheet".*

    **c.**    Mr. Butler Page 119; Line 10

    *"But the fact of the matter is, and we fought for forty-two months to keep these*
*discretionary benefits in place. The reality is we simply cannot do that any*
*more in light of where we are and what we need to do in order to be able to*

*preserve this company, and in preserving this company, preserve the continuity of supply in the global automotive business. If we don't do this right, there's going to be a real problem."*

38.    Thus, Mr. Butler, representing Delphi, indicates that there was significant business pressure to terminate all at–will or discretionary benefits. Therefore, had Delphi considered Disability benefits discretionary and non-vested, they would have been included in the definition of OPEB benefits.

39.    Delphi argued that it was terminating OPEB benefits out of business necessity. Therefore, on that basis there would have been no reason not to terminate all retiree benefits including Disability benefits, if disability benefits had been considered discretionary

40.    In the OPEB hearing ( docket # 16451) , Delphi acknowledged that any attempt to terminate vested benefits would entitled retirees to an 1114 committee.

a)    Mr. Butler page 112: Lines 19 & 23:

        *"...in fact if these were vested benefits, there would be an 1114 committee."*

        *"...even though if you follow the majority rule, you only appoint an 1114 committee if there are vested benefits."*

41.    It's clear from the hearing that Delphi was not interested in the retirees having an 1114 committee.

42.    Thus, Delphi chose not to terminate Disability Benefits, when it terminated other retiree benefits, because the terminating the vested Disability Benefits would have precipitated

the one outcome it had consistently sought to avoid - having retirees represented by an 1114

committee and possibly serving on the Creditors Committee.

## Some Disability Beneficiaries Are Covered By Supplemental Extended Disability Benefits (SEDB)

43.     If an employee (on January 1 of the Plan year) has credited service that is at least

six months but less than 10 years, Supplemental Disability coverage he may **purchased** with Pre

tax dollars.

44.     Thus some Disabled Beneficiaries, including the Movant, are now receiving this

benefit. Having been purchased as insurance coverage, Supplemental Disability vest like any

other policy, at the time performance is due[13 below].

45.     As a result, it's also not consistent with insurance contract law that a vested

benefit can be retroactively reduced or eliminated. However, in the Response Letter from DPHH

(Appendix F). Delphi attorney makes that claim in item # 4:

> *Supplemental extended disability benefit ("SEDB') was apart of the Plan*
> *which was self-insured by DPHH. You may have made contributions*
> *toward the cost of the Plan, but you were not purchasing insurance.*

46.     This response does not seem credible and appears to be an attempt to use a

semantic gyration to redefine insurance. The assertion by DPHH is inconsistent with the

definition of **insurance**, or **coverage** (See page 5 in Definition Section). In addition, the SPD

specifically states that employees may **purchase** Supplemental Disability Coverage (See par.

43). The SPD, on page 115, also states the following:

# EXHIBIT G

Benefit Termination Letter

To Disabled Employees

February, 2012

Dear ███████████████

You are receiving this letter because you are a salaried employee of DPH Holdings Corp. ("DPHH"), the entity formerly known as Delphi Corporation, and you are currently receiving health care and life insurance benefits from DPHH. The purpose of this letter is to inform you of **important changes** regarding those benefits and your continued employment with DPHH.

In October, 2010 we notified you that DPHH was in the process of winding down all of its remaining operations. Further, you were informed that DPHH had limited resources during the wind-down process and that it reserved the right to terminate its benefit programs.

We regret to inform you that effective midnight March 31, 2012, DPHH will terminate your employment. DPHH is also terminating The DPH Holdings Corp. Life and Disability Benefits Program for Salaried Employees (the "Disability Plan") and The DPH Holdings Corp. Salaried Health Care Program (the "Health Plan") and all benefits provided under such Plans effective midnight March 31, 2012. This means that any life insurance and health insurance coverage you currently receive or are eligible to receive will cease after March 31, 2012.

DPHH is offering you a lump sum payment equal to ██████ less applicable withholdings. **You are eligible for the lump sum payment only if you sign the attached Separation and Release Agreement. The Release must be postmarked no later than April 9, 2012 and sent to DPH Holdings Corp., P.O. Box 5027, Troy, MI 48098. Assuming DPHH has timely received your signed Separation and Release Agreement, all lump sum payments will be paid in early May and sent to the address on file.**

## Life Insurance

All DPHH-paid life insurance protection under the Disability Plan will terminate on midnight March 31, 2012. You have the option to convert your DPHH-paid life insurance coverage to an individual life insurance policy. If you are 55 or older and had at least 10 years of service on your last day worked, you will be able to continue any employee-paid life insurance coverage you may have purchased through DPHH. You will receive an information packet on how to convert or otherwise continue your life coverages in the next few weeks from Delphi Benefits, the benefit administrator for DPHH. You must follow the instructions in that information packet carefully because

**DPH Holdings Corp.**    World Headquarters 5725 Delphi Drive, Troy, MI 48098 USA

there are specific time limits within which you must act in order to continue or convert any coverages.

## Health Insurance Termination – No COBRA Coverage

Your Health Plan benefits, which include medical, dental, vision and prescription drug coverage, will cease effective midnight March 31, 2012 assuming you have made timely premium payments through such date.  You may be familiar with the Federal law known as COBRA, which allows qualified beneficiaries to continue employer-sponsored Health Care coverage at their own cost for up to eighteen (18) months.  **COBRA coverage is not available to you** because DPHH will not be maintaining any health plan after March 31, 2012.

This letter is also intended to satisfy the requirements of the Federal W.A.R.N. Act.  No bumping rights exist for yourself or any of the other employees affected by this termination.

Please direct any questions or concerns you may have regarding your benefits to DPHH's benefits administrator at 1-888-587-9648.

Sincerely,

DPH Holdings Corp.

**DPH Holdings Corp.**    World Headquarters 5725 Delphi Drive, Troy, MI  48098  USA

## SEPARATION AND RELEASE AGREEMENT

This Separation and Release Agreement ("Agreement") is between SHIRLEY RYAN for himself/herself, his/her heirs and personal representatives ("Employee"), and DPH Holdings Corp., The DPHH Life and Disability Benefits Program for Salaried Employees (the "Disability Plan") and The DPHH Salaried Health Care Program (the "Health Plan") together with their current and former officers, directors, plan administrators, managers, shareholders, employees, contractors, agents, parent companies, subsidiaries, affiliated entities, related entities including, attorneys, any other representatives, and successors in interest (collectively referred to as "DPHH").

## RECITALS

A.    Employee is on a leave of absence from active employment with DPHH, the entity formerly known as Delphi Corporation.

B.    DPHH is in the process of winding up its remaining operations. As part of the process of winding up the business, DPHH is terminating the employment status of all salaried individuals who are on leaves of absence and terminating its benefit plans.

C.    Employee is one of the individuals whose employment status will be terminated as part of this process.

D.    DPHH and Employee have amicably concluded they should end the employment relationship and provide for the orderly termination of Employee's benefits under The DPHH Life and Disability Benefits Program for Salaried Employees and The DPHH Salaried Health Care Program, and Employee has agreed to release and discharge DPHH of any and all liability claims.

Based on the foregoing Recitals, which Employee and DPHH accept as true and as part of the basis for this Agreement, and in consideration of and in reliance upon the representations and promises in this Agreement, Employee and DPHH agree as follows:

1.    **Payments to Employee.**

(a)    In exchange for Employee's execution of this Separation and Release Agreement, DPHH will pay Employee          less applicable withholding.

(b)    Consideration in Exchange for Employee's Promises.    The consideration set forth in Section 1 of this Agreement is not otherwise due and owing to Employee and is fair and adequate consideration in exchange for Employee's promises contained in this Agreement. DPHH will provide the consideration under this paragraph to Employee only in exchange for Employee's promises in this Agreement. Employee will not receive this consideration unless Employee signs this Agreement and returns it to the address below post-marked no later than April 9, 2012 and does not revoke it during the revocation period set forth in paragraph 5(a) of this Agreement.

S5.SR.A

2.    **Termination of Employment and Benefits.**  The Employee's employment with DPHH will terminate effective midnight March 31, 2012 and his/her participation in and receipt of any benefits under The DPHH Life and Disability Benefits Program for Salaried Employees and The DPHH Salaried Health Care Program shall end effective midnight March 31, 2012. This means that any life insurance coverage, health care coverage and disability benefits you currently receive or are eligible to receive will cease after midnight March 31, 2012.

3.    **Release**

(a)    <u>General Release.</u>  Employee, to the fullest extent permitted by law, waives, releases, and discharges DPHH (as defined above and including The DPHH Life and Disability Benefits Program for Salaried Employees and The DPHH Salaried Health Care Program) from any claims, arbitration demands, and causes of action related to, arising in the course of, or arising out of Employee's employment with DPHH or the termination of Employee's employment with DPHH or termination of DPHH benefits under any state or federal regulation, law, and statute, including (a) the Age Discrimination in Employment Act or the Older Worker's Benefit Protection Act, 29 U.S.C. § 621, *et seq.*, Title VII of the Civil Rights Act of 1964, as amended, the Rehabilitation Act of 1973, the Michigan Elliot Larsen Civil Rights Act, the Michigan Persons With Disabilities Civil Rights Act, the Family and Medical Leave Act, and the Americans With Disabilities Act, the Employee Retirement Income Security Act (ERISA), 29 USC §1001 *et seq.,* (b) any and all claims pursuant to state or federal wage payment laws, (c) any and all claims related to Michigan fair employment laws, (d) any and all claims pursuant to the Michigan Whistleblowers' Protection Act and/or claims or complaints pursuant to the federal Sarbanes-Oxley Act of 2002, the Dodd-Frank Act, and (e) any claim arising under common law.

Employee and DPHH intend that, to the fullest extent permitted by law, this waiver, release, and discharge is a general release and it shall extinguish any claims, arbitration demand or cause of action by Employee against DPHH.  This Agreement includes a release of Employee's right to file a lawsuit or to seek individual remedies or damages in any EEOC-filed court action, and this release will apply to any Charge of Discrimination about any events that occurred up to the date of the signing of this Agreement.  Employee and DPHH intend that, to the fullest extent permitted by law, these waivers, releases, and discharges will constitute a general release, will extinguish any claims and any causes of action, and will preclude any lawsuit or any other legal claim by Employee against DPHH about anything that occurred before the date of the signing of this Agreement, including anything arising out of or relating to Employee's employment with DPHH the termination of Employee's employment or the termination of benefits.  This Agreement will not be construed to prohibit the filing of a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") or a state agency, but this Agreement includes a release of Employee's right to file a lawsuit or to receive any monetary recovery and any other remedies if the EEOC or a state agency pursues any claims on Employee's behalf.  The only claims and causes of action that Employee is not waiving, releasing, or discharging are for the consideration that Employee will receive under Section 1 of this Agreement and any claims and causes of action that, as a matter of law, cannot be waived, released, or discharged.

(b)    <u>Accord and Satisfaction.</u>  The consideration set forth in this Agreement is in full accord and satisfaction of any claims and any causes of action that Employee has, may

2

S5.SR.A

have, or may have had against DPHH related to, arising in the course of or arising out of Employee's employment with DPHH or the termination of Employee's employment status and benefits.

4.      **Knowing and Voluntary Acceptance**

(a)      _Advice of Counsel_.  DPHH has advised Employee to consult with an attorney of Employee's choice, at Employee's expense, before signing this Agreement.

(b)      _Sufficient Time to Review Agreement._  Employee has had a sufficient amount of time totaling at least forty-five (45) days to consider the terms of this Agreement, including Exhibit A Addendum, to discuss all aspects of this Agreement with Employee's attorney, if Employee chooses to do that, at Employee's expense, and to decide whether to accept it.  No change to this Agreement, whether material or immaterial, will initiate a new forty-five (45) day period.

(c)      _Early Submission of Agreement._  Employee may voluntarily and knowingly sign, but is not required to sign, this Agreement before the end of the forty-five (45) day period. DPHH has made no promises, inducements, representations, or threats to cause Employee to sign this Agreement before the end of the forty-five (45) day period.  If Employee voluntarily and knowingly signs this Agreement before the end of the forty-five (45) day period, the mandatory seven (7) day revocation period set forth in paragraph 5(a) will start on the day after the day on which Employee signs this Agreement.

(d)      _Knowing and Voluntary Acceptance._  Employee has carefully read this Agreement, understands it, and is entering it knowingly and voluntarily, which means no one is forcing or pressuring Employee to sign it.

(e)      _No Reliance on Any Other Representation._  In signing this Agreement, Employee has not relied upon any DPHH representation or statement, either oral or written, about the subject matter of this Agreement that is not set forth in this Agreement.

(f)      _Procedural Requirements_.  Employee agrees he/she had adequate time to review the procedural and substantive requirements for execution of this Agreement under the Older Worker Benefit Protection Act and Age Discrimination in Employment Act with Employee's legal counsel and further agrees that DPHH has complied with those procedural and substantive requirements.

5.      **Right to Revoke Acceptance of Agreement**

(a)      _Right to Revoke._  Employee is entitled to revoke this Agreement within seven (7) days after the date on which Employee signs it.  The seven (7) days will start on the day after the day on which Employee signs this Agreement.  The Agreement will not become effective or enforceable until after this revocation period has expired, and no revocation has occurred.  DPHH will not pay Employee the payment described in Section 1 of this Agreement until after this revocation period has expired, and no revocation has occurred.  If Employee revokes this Agreement during the seven (7) day revocation period, the Agreement will not be effective or enforceable, and Employee will not receive any of the consideration set forth in this Agreement.

3

S5.SR.A

(b)     <u>Revocation Procedure.</u>  To be effective, any revocation must be in writing, addressed to **DPH Holdings Corp., P.O. Box 5027, Troy, Michigan 48098,** and either postmarked within the seven (7) day revocation period or hand delivered to **DPH Holdings Corp., 5725 Delphi Drive, Troy, Michigan 48098,** within the seven (7) day revocation period. If revocation is made by mail, mailing by certified mail return receipt requested is recommended to show proof of mailing.

(c)     <u>Effect of Failure to Revoke.</u>  Employee understands that by signing this Agreement and by not revoking the Agreement during the seven (7) day revocation period, Employee shall be bound by this Agreement.

(d)     <u>Effective Date.</u>     The Agreement will become effective after the Revocation period described within Section 5 and only if both parties sign the Agreement.

6.     **Non-admission of Liability.**  This Agreement shall not be used or construed as an admission of liability or wrongdoing by either DPHH or Employee.  DPHH denies that it acted unlawfully, tortiously, or in violation of any employment law affecting Employee.

7.     **Severability.**  If any one or more than one of the provisions contained in this Agreement are, for any reason, held to be invalid, illegal, or unenforceable in any respect, the rest of this Agreement will remain enforceable.  This Agreement shall then be construed as if it never contained the invalid, illegal, or unenforceable provision.

8.     **Applicable Law.**  This Agreement is to be interpreted, construed, and applied in accordance with the law of the State of Michigan.

9.     **Jurisdiction and Forum.**  Any action arising out of this Agreement or the relationship between the parties established herein shall be brought only in the State of Michigan Courts of appropriate venue, or the United States District Court sitting in Michigan, and Employee hereby consents to and submits himself or herself to the jurisdiction of such Courts.

10.     **Non-disclosure.**  Employee will not disclose the terms of this Agreement to any third party, other than Employee's immediate family members (meaning spouse, mother, father or siblings only), except as required by law or as necessary for the purpose of receiving counsel from Employee's attorney, accountant, or both.  Employee's immediate family members and professional advisors will be subject to the non-disclosure requirement of this paragraph.

11.     **Successors and Assigns.**  This Agreement is binding and shall take effect for the benefit of (i) DPHH and (ii) Employee, Employee's heirs, assigns, executors, administrators, other legal representatives, and successors.

12.     **Counterparts.**  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which together shall constitute the same instrument.

13.     **Entire Agreement.**  This Agreement constitutes the entire agreement between the parties related to termination of Employee's employment and benefits with DPHH.  There are no

4

other agreements, promises, conditions, or understandings, either written or oral, between DPHH and Employee either with respect to the subject matter of this Agreement or modifying the terms of this Agreement.   Only a writing signed by Employee and an authorized representative of DPHH that specifically refers to and expressly changes this Agreement can modify the terms of this Agreement.

**DPH HOLDINGS CORP.**                    **EMPLOYEE**


By: _____      _____

Its: _____


Dated: _____, 2012    Dated: _____, 2012


**Return signed agreement postmarked no later than April 9, 2012 to:**

DPH Holdings Corp.
P.O. Box 5027
Troy, MI  48098

5

S5.SR.A

## ADDENDUM TO SEPARATION AND RELEASE AGREEMENT

The following information is being provided to employees eligible to receive lump sum payments in exchange for a release of claims in connection with the termination program instituted by DPHH. This information is provided to comply with the federal Age Discrimination in Employment Act and the Older Workers Benefit Protection Act.

The decisional unit that has resulted in employment loss consisted of all salaried employees on leave of absence as of March 31, 2012 ("decisional unit"). DPHH is terminating all salaried employees on leave of absence as part of the winding up of the business. Employees in the decisional unit who have been offered an Agreement, which includes an offer of lump sum payments, are indicated below.

| Job Title | Age | Offered or not offered a lump sum payment in an Agreement containing a release |
|---|---|---|
| Accountant I | 49 | N |
| Assoc Designer I | 43 | N |
| Assoc Designer II | 62 | Y |
| Assoc Engrg Technician III | 49 | Y |
| Assoc Maintenance Supervisor III | 50 | Y |
| Assoc Operations Supervisor III | 56 | Y |
| Assoc Program Coordinator III | 59 | Y |
| Asst Designer I | 64 | Y |
| Clerk I | 65 | N |
| Clerk I | 60 | N |
| Engrg Specialist II | 59 | Y |
| Engrg Technician I | 60 | Y |
| Engrg Technician I | 63 | Y |
| Health & Safety Coordinator III | 54 | Y |
| Logistics Specialist II | 57 | Y |
| Maintenance Supervisor III | 65 | Y |
| Maintenance Supervisor III | 62 | Y |
| Marketing Analyst I | 58 | Y |
| Mfg Engrg Supervisor III | 58 | Y |
| Operations Supervisor II | 64 | Y |
| Operations Supervisor II | 58 | Y |
| Operations Supervisor II | 51 | Y |
| Operations Supervisor II | 47 | Y |
| Operations Supervisor II | 59 | Y |
| Operations Supervisor II | 45 | Y |
| Operations Supervisor II | 56 | Y |
| Operations Supervisor II | 67 | N |
| Operations Supervisor II | 66 | N |
| Packaging Engineer II | 58 | Y |
| Product Engineer III | 43 | Y |
| Production Control Supervisor I | 48 | Y |
| Production Control Supervisor II | 65 | Y |
| Production Control Supervisor II | 59 | Y |
| Production Control Supervisor II | 58 | Y |
| Purchasing Coordinator III | 43 | Y |
| Sr Account Manager III | 46 | Y |
| Sr Manufacturing Engineer II | 55 | Y |
| Sr Manufacturing Engineer II | 47 | Y |
| Sr Marketing Analyst II | 56 | Y |
| Sr Mechanical Engineer III | 61 | Y |
| Sr Nurse III | 67 | Y |
| Sr Product Engineer I | 66 | N |
| Sr Quality Engineer II | 58 | Y |
| Sr Software Engineer III | 56 | Y |
| Staff Product Engineer II | 57 | Y |
| Validation Analysis Engineer I | 50 | Y |

# EXHIBIT H-1

Roberta Granadier's (Butzel
Long) Response To The
March 20, 2012 Letter From
James Sumpter



# BUTZEL LONG
### ATTORNEYS AND COUNSELORS

*a professional corporation*

Roberta P. Granadier
**248 593 3020**
granadier@butzel.com

Stoneridge West
41000 Woodward Avenue
Bloomfield Hills, Michigan 48304
T: 248 258 1616   F: 248 258 1439
**butzel.com**

March 30, 2012

**<u>Via Federal Express</u>**

James B. Sumpter
21169 Westbay Circle
Noblesville, IN 46062

Re:   Termination of DPHH Salaried Retiree Disability Benefits
      Claim #920201298582

Dear Mr. Sumpter:

      Our firm is legal counsel to DPH Holdings Corp. ("DPHH") and this letter will respond to your correspondence dated March 20, 2012, relating to the DPHH termination of salaried retiree disability benefits under the DPH Holdings Corp. Life and Disability Benefits Program for Salaried Employees (the "Plan").

1. What happens if I don't accept the lump sum offer?

   A.   *The lump sum payment offer is completely voluntary. You may choose to accept it or not. The lump sum payment is conditioned upon your execution of the Release Agreement you received on February 16, 2012. The Release Agreement must be returned to DPHH, postmarked no later than April 9, 2012. Please note that the April 9 deadline will not be extended.*

2. What other options are available to me?

   A.   *Your question is unclear. If you are asking what other options you may have to obtain disability benefits or disability insurance, we are not in a position to advise you. You may wish to contact an insurance broker. DPHH's decision to terminate the Plan and benefits under the Plan is final.*

Ann Arbor    Bloomfield Hills    Detroit    Lansing    New York    Washington D.C.

Alliance Offices    Beijing    Shanghai    Mexico City    Monterrey    *Member Lex Mundi*    www.butzel.com

James B. Sumpter
March 30, 2012
Page 2

3.    My belief is that for a disabled retiree, disability benefits are vested, and are therefore protected. Please confirm this statement or provide documentation that disproves it.

   *A.    Your understanding is not correct. Employee welfare benefits under ERISA are not subject to vesting if the plan document contains a reservation of rights clause. I am attaching a copy of the Plan. Please see Article III, Section 3.05(b)(1) on page 111-7 where DPHH has reserved the right to, "amend, modify, suspend or terminate the Program in whole or in part at any time." Since DPHH is in the process of liquidation and winding-up all if its liabilities and affairs, it has decided to terminate all benefit programs, including the Disability Plan, effective March 31, 2012.*

4.    What are the implications of the fact that I paid a premium for supplemental extended disability benefits as it pertains to the size of the lump-sum offer?

   *A.    Supplemental extended disability benefit ("SEDB") was a part of the Plan which was self-insured by DPHH. You may have made contributions toward the cost of the Plan, but you were not purchasing insurance. Because the Plan is being terminated effective March 31, 2012, all disability benefits will cease. The amount of the proposed lump sum is based on the benefits you received from DPHH under the Plan.*

5.    Is it correct that no deductions other than tax withholdings will be made from the lump-sum?

   *A.    Your lump sum payment will be reduced for applicable tax withholdings such as federal, state and employment taxes.*

6.    If I were to consider the lump-sum offer ($129,600) as it is currently configured, it would have significant negative tax implications, which would result in a significant increase to my 2012 net tax rate. It would also raise my Medicare cost for 2013 by $3,000. Can arraignments be made through a trust fund, annuity, or some other mechanism so that the funds can be distributed in six yearly increments, so as to avoid the severe tax implications of the lump-sum?

   *A.    There is no option to receive the proposed amount other than in a single lump sum payment.*

James B. Sumpter
March 30, 2012
Page 3

7.  Is DPHH willing to gross up the lump-sum so as to offset the negative tax and Medicare implications?

A.  *No gross up is available.*

8.  What justification does DPHH have for only offering 51.4% of my expected benefit between April 1, 2012 and normal age 66 termination?

A.  *The proposed lump sum payment amount is determined based on the benefits you received from DPHH prior to Plan termination. Each individual payment is different.*

9.  Why is DPHH not offering to pay, as a lump-sum, my full to age 66 benefit of $252, 014.00?

A.  *DPHH is not required to offer any lump sum payment. It recognizes that terminating disability benefits presents a hardship and it has agreed to pay an amount it feels is fair and reasonable.*

10.  Does DPHH (or Delphi) have an agreement or other arrangement with the PBGC regarding the continuation, payment, and/or termination of Salaried Retiree Disability benefits? If so, what is the agreement?

A.  *No.*

11.  Why is DPHH requiring a non-disclosure agreement with the acceptance of the lump-sum offer?

A.  *A non-disclosure provision is a common provision in a release agreement.*

If you have any additional questions, please do not hesitate to contact the undersigned.

Sincerely,

BUTZEL LONG
a professional corporation

Roberta Granadier

Enclosure

cc:  John Brooks
     Cynthia J. Haffey, Esq.

1348207

# EXHIBIT H-2

Letter From James Sumpter

(March 20, 2012) Regarding

Disability Benefit

Cancellation

And/Or Lump-Sum

21169 Westbay Circle
Noblesville, IN  46062
March 20, 2012

DPH Holdings Corp.  (via FED-EX overnight)
5725 Delphi Drive
Troy, MI 48098

cc. DPH Holdings Corp.  (via priority mail)
    P O Box 5027
    Troy, MI 48098

**Regarding the termination of DPHH Salaried Retiree Disability
Benefits - Claim # 920201298582:**

Dear Gentlemen:

I have several questions and concerns regarding your recent notification and offer as they
pertain to the termination of the DPHH (Delphi) Disability program:

1.  What happens if I don't accept the lump sum offer?

2.  What other options are available to me?

3.  My belief is that for a disabled retiree, disability benefits are vested, and are
    therefore protected.  Please confirm this statement or provide documentation that
    disproves it.

4.  What are the implications of the fact that I paid a premium for supplemental
    extended disability benefits as it pertains to the size of the  lump-sum offer?

5.  Is it correct that no deductions other than tax withholdings will be made from the
    lump-sum?

6.  If I were to consider the lump-sum offer ($129,600) as it is currently configured,
    it would have significant negative tax implications, which would result in a
    significant increase to my 2012 net tax rate.  It would also raise my Medicare cost
    for 2013 by $3000.  Can arraignments be made through a trust fund, annuity, or
    some other mechanism so that the funds can be distributed in six yearly
    increments, so as to avoid the severe tax implications of the lump-sum?

7.  Is  DPHH willing to gross  up the lump-sum  so as to offset the negative tax and
    Medicare implications?

8.  What justification does DPHH have for only offering 51.4% of  my expected
    benefit between April 1, 2012  and normal age 66 termination?

9. Why is DPHH not offering to pay, as a lump-sum, my full to age 66 benefit of $252,014.00?

10. Does DPHH (or Delphi) have an agreement or other arrangement with the PBGC regarding the continuation, payment, and /or termination of Salaried Retiree Disability benefits?  If so, what is the agreement?

11. Why is DPHH requiring a non-disclosure agreement with the acceptance of the lump-sum offer?

I am requesting that you respond to the questions in this letter in such a time frame so as to allow sufficient time to consider the answers in regards to my making a decision about the lump-sum offer; or if you cannot meet the timing that you extend the acceptance deadline appropriately.


Sincerely,


James B. Sumpter