Hearing Date and Time:  July 25, 2013, 10:00 a.m. (Eastern)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In Re: :
: Chapter 11
DPH HOLDINGS CORP., et al., :
: Case No. 05-44481 (RDD)
Reorganized Debtors. :
: (Jointly Administered)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**STATEMENT OF THE UNITED STATES OF AMERICA IN SUPPORT OF THE REORGANIZED DEBTORS' MOTION FOR AN ORDER TO COMPEL COMPLIANCE WITH, AND TO IMPLEMENT, THE MODIFIED PLAN, PLAN MODIFICATION ORDER AND RELATED DOCUMENTS**

PREET BHARARA
United States Attorney for the
Southern District of New York
*Attorney for the United States of America*

CRISTINE IRVIN PHILLIPS
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2696
Facsimile: (212) 637-2702
Email: cristine.phillips@usdoj.gov

—Of Counsel —

## TABLE OF AUTHORITIES

**Cases**                                                                                                        **Page**

*In re Chateaugay*,
    944 F.2d 997 (2d Cir. 1991)......................................................................................2

*In re CMC Heartland Partners*,
    966 F.2d 1143 (7th Cir. 1992) ...................................................................................3

*Midlantic National Bank v. New Jersey Department of Environmental Protection*,
    474 U.S. 494 (1986).................................................................................................2, 3

*Ohio v. Kovacs*,
    469 U.S. 274 (1985)....................................................................................................2

*U.S. v. Wheeling-Pittsburgh Steel Corp.*,
    818 F.2d 1077 (3d Cir. 1987).....................................................................................2

The United States of America (the "United States"), by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this statement in support of the *Reorganized Debtors' Motion for an Order to Compel Compliance With, and to Implement, the Modified Plan, Plan Modification Order and Related Documents* [Dkt. No. 22075] (the "Motion").

1. On July 3, 2013, DPH Holdings Corp. ("DPH Holdings") and its affiliates (collectively, the "Reorganized Debtors") filed the Motion, seeking an order from the Court that directs General Motors LLC ("GM") to provide funding for certain wind-down expenses that the Reorganized Debtors expect to incur in 2013. Reorganized Debtors cite as authority for this request the Master Disposition Agreement ("MDA") that governs the current relationship between GM and the Reorganized Debtors, as well as the confirmed plan as modified by the Court on July 30, 2009 (the "Modified Plan"), which, according to the Motion, "adopted and incorporated the transactions contemplated under the MDA."[1] Motion at ¶ 2.

2. Among the wind-down expenses cited in the Motion is the allocation of funding to an environmental response trust, to be established for the disposition of four properties with demonstrated environmental liabilities owned by the Post-Consummation Reorganized DPH Holdings Share Trust (the "Trust"), sole shareholder of DPH Holdings. Those properties include two adjacent sites in Flint, Michigan and sites in Saginaw, Michigan and Rootstown, Ohio (collectively, the "Properties").

---

[1] The provisions of the MDA governing GM's obligations with respect to wind-down expenses, as well as portions of the Motion, exhibits thereto, and the objection filed by GM that discuss these relevant MDA provisions, have been filed under seal; the United States therefore takes no position regarding these provisions. Further, the United States asserts that neither the Reorganized Debtors nor GM has set forth a legitimate basis for the filing of these documents under seal. The United States intends to address this issue in a separate application to the Court.

3. On July 18, 2013, GM filed an objection to the Motion [Dkt. No. 22088] (the "GM objection"). The GM objection argues that the creation of the contemplated environmental response trust is not a wind-down expense, and further states that "[t]here should be no reason to form an environmental trust if the environmental claims will be resolved before year end," GM Objection ¶ 9, and that the Reorganized Debtors have failed to inform GM "what will be the projected saleable value of the properties after the clean-up has occurred, and when such funds will be received," *id.* ¶ 11. For the reasons set forth below, these arguments misunderstand the nature of the Reorganized Debtors' environmental obligations and the role of the environmental response trust in resolving those obligations.

4. The Reorganized Debtors, by virtue of their ownership of the Properties, are legally obligated to deal with the environmental contamination on those properties. This obligation exists independently of any claims filed by the United States or any other government entity. *See Ohio v. Kovacs*, 469 U.S. 274, 285 (1985) (even in bankruptcy, a party owning contaminated property "must comply with the environmental laws"); *see also Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 507 (1986) (prohibiting abandonment of property by the estate "in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards."); *In re Chateaugay*, 944 F.2d 997, 1009 (2d Cir. 1991) ("[A] person or firm in possession of a site 'may not maintain a nuisance, pollute the waters of the State, or refuse to remove the source of such conditions.'") (quoting *Kovacs*, 469 U.S. at 285); *U.S. v. Wheeling-Pittsburgh Steel Corp.*, 818 F.2d 1077, 1087 (3d Cir. 1987) ("[P]ending Chapter 11 status is not a basis on which [a court] could . . . permissibly rel[y] for [an] order relieving [the debtor] of its

obligation to comply with the relevant environmental statute, regulations and consent decree provisions.").

5.   Unlike a traditional claim in bankruptcy, an environmental obligation as to a property owned by a debtor cannot be discharged.  *See In re CMC Heartland Partners*, 966 F.2d 1143, 1146 (7th Cir. 1992) (the relevant environmental statute "creates a claim running with the land" and "a statutory obligation attached to current ownership of the land survives bankruptcy").

6.   An environmental response trust is a mechanism by which the Reorganized Debtors can fulfill their responsibility to comply with the applicable environmental laws, by transferring the Properties to the environmental response trust and by providing sufficient funding to cover the costs of the necessary environmental remediation as well as the operating expenses of the trust.  As part of an agreement establishing such a trust, a trustee will be hired who will oversee the environmental clean-up.  As part of the trust administration process, the United States Environmental Protection Agency, the State of Michigan Environmental Protection Agency, or the State of Ohio Environmental Protection Agency will work with the trustee and oversee the clean-up.

7.   After providing funding and transferring the Properties to the environmental response trust, the Reorganized Debtors will have no further liability or interests (ownership or otherwise) in the Properties.  In this way, an environmental response trust will resolve the Reorganized Debtors' environmental liabilities and allow the Trust to divest itself of the Properties.  *See Midlantic*, 474 U.S. at 507.  GM's position that it requires more information regarding the "projected saleable value of the properties," GM Objection ¶ 11, is thus inapposite, as neither the Reorganized Debtors nor GM would maintain an ownership interest in the

Properties after they are transferred to the environmental response trust.

8.    The Reorganized Debtors cannot dissolve DPH Holdings or terminate the Trust until their environmental obligations as to the Properties have been satisfied.  *See* ¶ 4, *supra*. Therefore, contrary to the arguments in the GM Objection, which reflect a lack of understanding regarding the nature of the environmental response trust or the legal obligations it would resolve, it is clear that the creation of an environmental response trust is a legitimate wind-down expense.

Dated:  New York, New York
        July 24, 2013

                                    Respectfully submitted,

                                    PREET BHARARA
                                    United States Attorney for the
                                    Southern District of New York

                            By:     s/ Cristine Irvin Phillips
                                    CRISTINE IRVIN PHILLIPS
                                    Assistant United States Attorney
                                    86 Chambers Street, Third Floor
                                    New York, New York 10007
                                    Tel.: (212) 637-2696
                                    Fax: (212) 637-2702
                                    Email: cristine.phillips@usdoj.gov