**Hearing Date and Time:  July 30, 2013, 1:00 p.m. (Eastern)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In Re:

DPH HOLDINGS CORP., et al.,

            Reorganized Debtors.

Chapter 11

Case No. 05-44481 (RDD)

(Jointly Administered)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**OBJECTION OF THE UNITED STATES OF AMERICA TO THE REORGANIZED DEBTORS' MOTION FOR A FINAL DECREE AND ORDER CLOSING THE BANKRUPTCY CASES**

          PREET BHARARA
          United States Attorney for the
          Southern District of New York
          *Attorney for the United States of America*

CRISTINE IRVIN PHILLIPS
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2696
Facsimile: (212) 637-2702
Email: cristine.phillips@usdoj.gov

    —Of Counsel —

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................1

 FACTUAL BACKGROUND ........................................................................................................2

ARGUMENT ...................................................................................................................................5

I.       Legal Standard ....................................................................................................................5

II.      The Reorganized Debtors Are Not Entitled to the Relief They Seek Unless
and Until Their Environmental Obligations and the United States'
Request for Administrative Expenses Have Been Resolved ...............................................6

III.     The Government Should Not Be Forced to Resolve the Outstanding Issues
Through Procedures From Which It Is Expressly Exempt ..................................................8

IV.     Neither the Trustee and Plan Administrator nor the Officers and
Directors of DPH Holdings Are Entitled to the Release
and Discharge Sought by the Motion ..................................................................................9

CONCLUSION ..............................................................................................................................12

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                                                                                       **Page**

*Brandt- Airflex Corp. v. Long Island Trust Co.*
*(In re Brandt-Airflex Corp.)*,
    843 F.2d 90 (2d Cir. 1988) ............................................................................................... 12

*Deutsche Bank AG v. Metromedia Fiber Network, Inc.*
*(In re Metromedia Fiber Network, Inc.)*,
    416 F.3d 136 (2d Cir. 2005) ............................................................................................ 10

*In re Adelphia Communications Corp.*,
    368 B.R. 140 (Bankr. S.D.N.Y. 2007) ....................................................................... 10, 11

*In re Chateaugay*,
    944 F.2d 997 (2d Cir. 1991) ............................................................................................... 7

*In re Dreier LLP*,
    429 B.R. 112 (Bankr. S.D.N.Y. 2010) ............................................................................. 11

*In re Johns-Manville Corp.*,
    517 F.3d 52 (2d Cir. 2008) ............................................................................................... 11

*In re Omega Optical, Inc.*,
    476 B.R. 157 (Bankr. E.D. Pa. 2012) ................................................................................. 6

*Kunica v. St. Jean Finance, Inc.*,
    233 B.R. 46 (S.D.N.Y. 1999) ........................................................................................... 11

*Midlantic National Bank v. New Jersey Department of Environmental Protection*,
    474 U.S. 494 (1986) ....................................................................................................... 6, 7

*Metcalfe & Mansfield Alternative Investments*,
    421 B.R. 685 (Bankr. S.D.N.Y. 2010) ............................................................................. 11

*Ohio v. Kovacs*,
    469 U.S. 274 (1985) ........................................................................................................... 6

*Schwartz v. Aquatic Development Group, Inc.*
*(In re Aquatic Development Group, Inc.)*,
    352 F.3d 671 (2d Cir. 2003) ............................................................................................... 5

*U.S. v. Wheeling-Pittsburgh Steel Corp.*,
    818 F.2d 1077 (3d Cir. 1987).........................................................................................7

**Statutes & Rules**

11 U.S.C. § 503(b)(1) ...............................................................................................................2

11 U.S.C. §§ 727(a)(1) ..............................................................................................................9

11 U.S.C. § 1127........................................................................................................................2

11 U.S.C. § 1141(d)(3) ........................................................................................................1, 10

28 U.S.C. § 959(b) ................................................................................................................3, 9

42 U.S.C. § 6901, *et seq*..........................................................................................................3

42 U.S.C. § 9601, *et seq*..........................................................................................................3

Fed. R. Bankr. P. 3022.........................................................................................................5, 6

## INTRODUCTION

The United States of America (the "United States"), by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this objection to the *Reorganized Debtors' Motion for a Final Decree and Order Pursuant to 11 U.S.C. §§ 105, 350(a), and 1142, Fed. R. Bankr. P. 3022, and Local Bankr. R. 3022-1 Closing the Bankruptcy Cases and Providing Related Relief* (the "Motion"). As set forth more fully below, the Motion prematurely seeks a finding and determination by the Court that good cause exists to dissolve DPH Holdings Corp. ("DPH Holdings") and terminate the Post-Consummation Reorganized DPH Holdings Share Trust (the "Trust"), and assurance that a final decree closing all cases related to this bankruptcy will issue in December 2013, despite a number of material outstanding issues, including the outstanding environmental obligations of DPH Holdings and its affiliates (the "Reorganized Debtors"), specifically the disposition of environmentally contaminated real property currently owned by the Trust. These issues, which the Motion inaccurately and misleadingly refers to as "administrative tasks," remain unresolved despite many months of negotiations. The Motion also seeks to force the United States into expedited procedures set forth in the Claim Objection Procedures Order for the resolution of these and other obligations, ignoring the fact that the United States is expressly exempt from the terms of that order. The Motion also requests a release and discharge for the officers and directors of DPH Holdings and the trustee and plan administrator without presenting any authority for such relief, and in contravention of 11 U.S.C. § 1141(d)(3) and governing case law, all of which makes clear that no such relief is available. For these and other reasons set forth below, the Government respectfully requests that the Court deny the Motion.

## FACTUAL BACKGROUND

1.      On October 8 and 14, 2005 (the "Petition Date"), Delphi Corporation and its affiliates (collectively, "Debtors") filed voluntary petitions for relief (the "Chapter 11 Cases") under Chapter 11, Title 11 of the United States Code, 11 U.S.C. § 1101 *et seq.*, as amended (the "Bankruptcy Code").

2.      On December 6, 2006, the Court issued the "Claim Objection Procedures Order," [Dkt. No. 6089] setting forth procedures by which the Court would adjudicate contested claims matters.  Paragraph 10 of the Claim Objection Procedures Order states that the order "shall not apply to claims filed by . . . the State of Michigan Environmental Protection Agency, the State of Ohio Environmental Protection Agency," or "the United States Environmental Protection Agency."

3.      On January 25, 2008, the Court issued an order confirming Debtors' first amended joint plan of reorganization (as modified).  On October 3, 2008, Debtors filed a motion under 11 U.S.C. § 1127 for an order, inter alia, approving certain modifications to the confirmed plan.  On June 1, 2009, Debtors filed a supplement to their previous motion for approval of certain modifications to the confirmed plan (the "Modified Plan").  On July 30, 2009, the Court entered an order approving the Modified Plan, which Debtors substantially consummated on October 6, 2009 (the "Effective Date").

4.      On July 15, 2009, the EPA timely filed an application for administrative expenses for the period from the Petition Date to June 1, 2009 (the "July 15 EPA Application"), which was subsequently designated claim numbers 18956 and 19539.  As the July 15 EPA Application evidences, Debtors' liability arises in the context of post-petition environmental response and oversight costs incurred or to be incurred at the properties (collectively, the "Facilities") listed on

2

page S-xviii of Debtors' *Supplement to First Amended Disclosure Statement with Respect to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (As Modified)* ("First Amended Disclosure Statement") [Docket No. 17031] under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9601, *et seq*. These costs include, but are not limited to, approximately $220,000 incurred in connection with a site previously owned by Debtors in Dayton, Ohio (the "Dayton Site"). *See* July 15 EPA Application at ¶ 3.[1]

5.   The July 15 EPA Application also contains a protective contingent claim and reservation of rights with respect to Debtors' work obligations imposed by environmental statutes, regulations, court orders, administrative orders, or permits that are not claims within the meaning of the Bankruptcy Code, including with respect to compliance and work obligations under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, *et seq*. *See* July 15 EPA Application at ¶¶ 6-7. The July 15 EPA Application also indicates that Debtors have or may have environmental obligations for properties that are part of the bankruptcy estate and/or for the migration of hazardous substances from the property of the bankruptcy estates, and that Debtors have voluntary corrective action agreements for ongoing investigations pursuant to schedules approved by the EPA for certain facilities. *See* July 15 EPA Application at ¶ 8.

6.   In October 2012, the Reorganized Debtors initiated settlement negotiations with

---

[1] On November 5, 2009, the EPA timely filed an amended application for administrative expense (the "November 5 EPA Application"), which was subsequently designated claim number 19786. The expenses listed in the attachment to the November 5 EPA Application are substantially similar to those in the attachment to the July 15 EPA Application, but for the more recent time period of June 1, 2009, through the Effective Date of October 6, 2009. The attachment to the November 5 EPA Application indicates that the United States has incurred an additional $8,003.01 in expenses in connection with the Dayton Site between June 1, 2009, and

the United States and the States of Michigan and Ohio regarding the disposition of four properties with demonstrated environmental liabilities owned by the Trust, as sole shareholder of DPH Holdings. Those properties include two adjacent sites in Flint, Michigan (the "Flint Sites"), and sites in Saginaw, Michigan (the "Saginaw Site") and Rootstown, Ohio (the "Rootstown Site").

7. The stated objective of the settlement negotiations between the United States, Michigan and Ohio (collectively, the "Government") and the Reorganized Debtors is the establishment of an environmental response trust (the "environmental response trust"), to which the Flint, Saginaw and Rootstown Sites would be transferred, and through which the Reorganized Debtors would fund the required environmental remediation along with certain related trust operation expenses. *See* Motion at 11.

8. Settlement negotiations regarding the Flint, Saginaw and Rootstown Sites have been active and ongoing since October 2012, and have included the exchange of thousands of pages of documents regarding testing performed on the sites and other specifications, and the retention of experts by the United States and the Reorganized Debtors.

9. Although both the Government and the Reorganized Debtors are committed to negotiating a settlement, and despite the efforts to date on both sides toward this objective, substantial disagreement remains regarding the funding required to fully satisfy the Reorganized Debtors' environmental obligations, and negotiations regarding the other material terms of an environmental response trust have not yet begun.

10. Additionally, the United States' request for administrative expenses pertaining to

---

October 6, 2009.

4

the Dayton Site, reflected in the July 15 and November 5 EPA Applications, remains outstanding.

## ARGUMENT

### I.    Legal Standard

11.    "After an estate is *fully administered* in a chapter 11 reorganization case, the court, on its own motion or on a motion of a party in interest, shall enter a final decree closing the case."  Fed. R. Bankr. P. 3022 (emphasis added).

12.    "[B]ankruptcy courts have flexibility in determining whether an estate is fully administered by considering the factors set forth in Rule 3022, along with any other relevant factors."  *In re Omega Optical, Inc.*, 476 B.R. 157, 167 (Bankr. E.D. Pa. 2012) (internal citations omitted).

### II.   The Reorganized Debtors Are Not Entitled to the Relief They Seek Unless and Until Their Environmental Obligations and the United States' Request for Administrative Expenses Have Been Resolved

13.    As the Reorganized Debtors' Motion makes clear, the estate in this action has not been fully administered because a number of outstanding issues remain, including the Reorganized Debtors' outstanding environmental obligations.  *See* Motion at 10.  It is, therefore, uncontroverted that a motion to close the Chapter 11 Cases is premature as of today.  *See* Fed. R. Bankr. P. 3022; *Schwartz*, 352 F.3d at 676 n.5.  Yet the Reorganized Debtors have taken the unusual step of asking the Court to provide assurance that it will enter a final decree closing the Chapter 11 Cases on a date certain in December 2013, without knowing whether the as-yet unresolved matters in this bankruptcy will have been resolved by that date.  Additionally, the Reorganized Debtors seek a finding and determination from the Court today that "[g]ood cause

5

exists to dissolve DPH Holdings, to terminate the Trust, and to discharge and release the Plan Implementation Parties." *See* Reorganized Debtors' Proposed Order [Dkt. No. 22073-1] ("Proposed Order"), at ¶ G.  These requests are inappropriate at this juncture.

14.  The Reorganized Debtors are obligated, by virtue of their ownership of the Flint, Saginaw and Rootstown Sites, to deal with the environmental contamination on those properties and cannot dissolve DPH Holdings or terminate the Trust until their environmental obligations as to those properties have been satisfied.  *See Ohio v. Kovacs*, 469 U.S. 274, 285 (1985) (even in bankruptcy, a party owning contaminated property "must comply with the environmental laws"); *see also Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 507 (1986) (prohibiting abandonment of property by the estate "in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards."); *In re Chateaugay*, 944 F.2d 997, 1009 (2d Cir. 1991) ("[A] person or firm in possession of a site 'may not maintain a nuisance, pollute the waters of the State, or refuse to remove the source of such conditions.'") (quoting *Kovacs*, 469 U.S. at 285); *U.S. v. Wheeling-Pittsburgh Steel Corp.*, 818 F.2d 1077, 1087 (3d Cir. 1987) ("[P]ending Chapter 11 status is not a basis on which [a court] could . . . permissibly rel[y] for [an] order relieving [the debtor] of its obligation to comply with the relevant environmental statute, regulations and consent decree provisions.").

15.  The Reorganized Debtors' Motion represents to the Court that the Flint, Saginaw and Rootstown Sites "will be transferred to a trust along with funds to pay for environmental clean-up and remediation costs."  Motion at 11.  But no agreement exists regarding critical terms of an environmental response trust, including the proper amount of funding for the trust and other

material issues.[2] The terms of an agreement establishing an environmental response trust traditionally require a number of months to negotiate due to their complexity. *See, e.g.*, *In re Tronox Incorporated*, 09-10156 (alg) [Dkt. No. 2812]; *in re Lyondell Chemical Company*, 09-10023 (reg) [Dkt. No. 4082, 4389]. Without such agreement, there is no plan forward for the lawful disposition of the environmentally contaminated property owned by the Trust.

16. As just one example of a material issue that the Reorganized Debtors incorrectly claim has been settled, the Motion states that "[a]ny residual value remaining in the [environmental response] trust following the property remediation will be transferred to GM or New Delphi, as provided by the MDA." Motion at 11. But environmental response trusts traditionally do not have residual value; rather, they are final settlements of a debtor's environmental obligations. The parties have not begun to negotiate this or numerous other material issues, despite the Reorganized Debtors' suggestion to the contrary.

17. Additionally, the Motion purports to list all outstanding "claims and administrative expenses," Motion at 9, but does not acknowledge the outstanding application for administrative expenses pertaining to the Dayton Site as set forth in the July 15 and November 5 EPA Applications, which the parties have yet to address.

18. In light of these outstanding substantive issues, the Reorganized Debtors are not entitled to an order determining that "[g]ood cause exists to dissolve DPH Holdings, to terminate the Trust, and to discharge and release the Plan Implementation Parties," *see* Proposed Order at ¶ G, or any reassurance that a final decree will issue on a date certain.

---

[2] Furthermore, the amount of funding available for an environmental response trust is currently the subject of litigation and so is necessarily unsettled. *See Reorganized Debtors' Motion for an Order to Compel Compliance With, and to Implement, the Modified Plan, Plan*

### III. The Government Should Not Be Forced to Resolve the Outstanding Issues Through Procedures From Which It Is Expressly Exempt

19.    In a further attempt to persuade the Court to provide assurances that it will close the Chapter 11 Cases by final decree in December 2013, the Reorganized Debtors have asked the Court to authorize the employment of a timetable and certain streamlined resolution procedures to resolve all claims outstanding as of September 1, 2013, including Claim numbers 18596, 19539, and 19786 filed by the United States, which the Reorganized Debtors incorrectly characterize as encompassing their environmental obligations at the Flint, Saginaw and Michigan Sites. *See* Motion at 15. These resolution procedures are memorialized in the Claim Objection Procedures Order – an order that expressly exempts the Government. *See* Claim Objection Procedures Order [Dkt. No. 6089], ¶ 10.

20.    While the Government recognizes that certain time pressures exist, it objects to the Proposed Order, which effectively would force the Government to submit to procedures from which it is exempt, without the ability to negotiate or make an application regarding the timing or logistics of a hearing before the Court.

21.    The request in the Motion for authorization to utilize the Claim Objection Procedures Order is particularly inappropriate as it applies to the resolution of the Reorganized Debtors' ongoing environmental obligations at sites owned by the Trust, which are not the subject of, and exist independently of, any claim filed by the Government, *see* ¶ 14, *supra*, and which, to the extent a hearing is required, would require presentation of relatively complex issues for the Court's determination. The anticipated complexity of any hearing required to adjudicate

---

*Modification Order and Related Documents* [Dkt. No. 22075].

8

the Debtors' environmental obligations was, in fact, one of the bases for the Government's request that it be exempt from the Claim Objection Procedures Order.

22.     In the event that the parties find it necessary to move the Court for a hearing to determine the scope of the Reorganized Debtors' environmental obligations, the Government asks that the form and timing of that hearing be decided at that point, and not as part of the current Motion.

### IV.    Neither the Trustee and Plan Administrator nor the Officers and Directors of DPH Holdings Are Entitled to the Release and Discharge Sought by the Motion

23.     The Reorganized Debtors' Motion includes a request for a broad discharge and release for the officers and directors of DPH Holdings, as well as Butzel Long, the trustee and plan administrator (collectively, the "Plan Implementation Parties").  The Motion cites no authority for this request other than the organizing documents of the Trust, which, according to the Motion, afford certain rights and releases.[3]

24.     Put simply, there is no authority for the Court to grant the discharge and release sought by the Motion.  To the extent the Reorganized Debtors seek to invoke the Court's inherent authority to issue orders under 11 U.S.C. § 105(a), that section "does not allow the

---

[3] Specifically, the Motion argues that a discharge and release is appropriate because the President of DPH Holdings will no longer be protected under DPH Holdings' certificate of incorporation if the Court grants "the relief requested by this Motion – final distribution of all of the Reorganized Debtors' assets, dissolution of DPH Holdings, and termination of the [T]rust." Motion at 20.  This statement demonstrates the exact problem with the underlying request for such relief at this time – the Reorganized Debtors are asking the Court to authorize dissolution of DPH Holdings and termination of the Trust before the work of the Trust, and its officers and directors, is complete.  The Motion further posits that a discharge and release for the trustee and plan administrator is appropriate because that entity could obtain such a release "under Delaware law upon complying with the statutory dissolution and claims resolution requirements." Motion at 20 n.9.  This argument also demonstrates that the Reorganized Debtors' request is premature,

9

bankruptcy court "to create substantive rights that are otherwise unavailable under applicable law." *Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 142 (2d Cir. 2005) (rejecting the argument that Section 105(a) provides authority to issue third-party releases).

25. To the extent the Reorganized Debtors are relying upon the Court's authority to provide releases from a Chapter 11 plan, that authority does not extend to the release and discharge requested in the Motion where the Modified Plan is already in place. And even if the Reorganized Debtors were seeking such relief under a plan, pursuant to 11 U.S.C. § 1141(d)(3), a Chapter 11 liquidation affords no opportunity for a discharge. *See Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 55 (S.D.N.Y. 1999) ("If a debtor corporation is liquidated either under Chapter 7 or pursuant to a Chapter 11 plan, no discharge is granted, see 11 U.S.C. §§ 727(a)(1), 1141(d)(3) . . . .").

26. Even if a plan release were available in the context of a Chapter 11 liquidation, the Plan Implementation Parties, as non-debtors, would only be entitled to a release in the context of a plan if the Court were to find that "truly unusual circumstances render the release terms important to success of the plan." *Metromedia*, 416 F.3d at 143; *see also, e.g.*, *In re Adelphia Communications Corp.*, 368 B.R. 140, 266 (Bankr. S.D.N.Y. 2007) (observing that *Metromedia* "now limits the use of third-party releases to situations that can be regarded as unique"), *appeal dismissed*, 361 B.R. 337 (S.D.N.Y. 2007) *and* 371 B.R. 660 (S.D.N.Y. 2007), *dismissal of appeal affirmed*, 544 F.3d 420 (2d Cir. 2008). Here, where the Modified Plan is already in place and where, in any event, the Motion puts forward no "unusual circumstances" that would entitle

---

as it would circumvent the trustee and plan administrator's legal obligation to resolve all

10

any of the Plan Implementation Parties to a release, there is certainly no legal authority for the discharge and release requested. *See Metromedia*, 416 F.3d at 142-43.

27. Furthermore, "a bankruptcy court only has jurisdiction to enjoin third-party non-debtor claims that directly address the *res* of the bankruptcy estate." *In re Johns-Manville Corp.* ("*Manville*"), 517 F.3d 52 (2d Cir. 2008), *rev'd on other grounds sub nom. Travelers Indem. Co. v. Bailey*, 129 S. Ct. 2195 (2009), *jurisdictional holding reaffirmed on remand, In re Johns-Manville Corp.*, 600 F.3d 135, 158 (2d Cir. 2010); *see also In re Metcalfe & Mansfield Alternative Investments*, 421 B.R. 685, 695 (Bankr. S.D.N.Y. 2010) (noting "jurisdictional limits *Manville* imposes on a bankruptcy court"). Where parties "make no claim against an asset of the bankruptcy estate, nor do their actions affect the estate," bankruptcy courts lack jurisdiction to enjoin a claim. *Manville*, 517 F.3d at 65; *see In re Dreier LLP*, 429 B.R. 112, 133 (Bankr. S.D.N.Y. 2010) (no jurisdiction to enjoin matter that does "not affect property of the estate or the administration of the estate").

28. In addition, particular claims of interest to the Government are subject to subject to jurisdictional limitations. For example, courts lack authority under most circumstances to "restrain[] the assessment or collection of any tax," 26 U.S.C. § 7421, and the grant of authority in 11 U.S.C. § 505 for this Court to determine tax liability is limited only to debtors' tax liability, *see Brandt-Airflex Corp. v. Long Island Trust Co. (In re Brandt-Airflex Corp.)*, 843 F.2d 90, 96 (2d Cir. 1988) (holding that 11 U.S.C. § 505 does not apply to the tax liability of non-debtors). Likewise, environmental laws limit judicial jurisdiction over various matters. *See* 42 U.S.C. § 9613(h) (depriving courts of jurisdiction over pre-enforcement environmental disputes). Here,

---

outstanding claims before it can obtain a release.

the Court should not approve non-debtor releases that reach to cover matters beyond its jurisdiction.

29.    Because the Motion fails to present any adequate basis for granting the requested discharge and release for the Plan Implementation Parties, the Court should deny such relief.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court deny the Reorganized Debtors' Motion, without prejudice to renew such motion following the resolution of all outstanding issues, including the Reorganized Debtors' outstanding environmental obligations and the Government's administrative expense application.

Dated: New York, New York
       July 23, 2013

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York

By:    s/ Cristine Irvin Phillips
CRISTINE IRVIN PHILLIPS
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2696
Fax: (212) 637-2702
Email: cristine.phillips@usdoj.gov