**Hearing Date And Time:  July 30, 2013 at 1:00 p.m. (prevailing Eastern Time)**

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Neil M. Berger
Steven S. Flores

*Counsel for DPH Holdings Corp., et al.,*
  *Reorganized Debtors*

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                               :

In re                                           :           Chapter 11

DPH HOLDINGS CORP., et al.,             :           Case No. 05-44481 (RDD)

        Reorganized Debtors.          :           (Jointly Administered)

-----------------------------------------------------------------x

**REORGANIZED DEBTORS' REPLY TO OBJECTION
BY GENERAL MOTORS LLC TO MOTION FOR FINAL
DECREE AND ORDER PURSUANT TO 11 U.S.C. §§ 105, 350(a),
AND 1142, FED. R. BANKR. P. 3022, AND LOCAL BANKR. R. 3022-1
<u>CLOSING THE BANKRUPTCY CASES AND PROVIDING RELATED RELIEF</u>**

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................ 1

REPLY ........................................................................................................................................ 3

    A.    GM's Argument that DPH Holdings Is Not Authorized to Form a Trust Ignores the Plan Modification Order ............................................................... 3

    B.    DPH Holdings Is Not a "Debtor" in Bankruptcy and It May Properly Dissolve Under Delaware Law ........................................................................ 5

    C.    GM's Objection to a Release for the Plan Administrator Is Premature ................................................................. 7

# Table of Authorities

**Cases**

*Akande v. Transamerica Airlines, Inc. (In re Transamerica Airlines, Inc.)*,
    No. Civ.A 1039-N, 2006 WL 587846 (Del. Ch. Feb. 28, 2006) .................................. 7

*Gans v. MDR Liquidating Corp.*, No. CIV. A. 9630,
    1990 WL 2851 (Del. Ch. Jan. 10, 1990) ...................................................................... 7

*In re Citadel Indus., Inc.*, 423 A.2d 500 (Del. Ch. 1980) ................................................. 7

*In re Franklin*, 448 B.R. 744 (Bankr. M.D. La. 2011) ..................................................... 5

*In re RegO Co.*, 623 A.2d 92 (Del. 1992) ......................................................................... 7

*Unsecured Claims Estate Representative of Teligent, Inc. v. Cigna Healthcare, Inc.
    (In re Teligent, Inc.)*, 326 B.R. 219 (S.D.N.Y. 2005) .................................................. 4

**Statutes**

8 Del. C. § 275 ................................................................................................................... 6

8 Del. C. § 275(f) ............................................................................................................... 6

8 Del. C. § 278 ................................................................................................................... 7

8 Del. C. § 279 ............................................................................................................... 6, 7

8 Del. C. § 280 ............................................................................................................... 6, 7

8 Del. C. § 281 ............................................................................................................... 6, 7

8 Del. C. § 281(c) ............................................................................................................... 7

8 Del. C. § 282 ............................................................................................................... 6, 7

11 U.S.C. § 501 .................................................................................................................. 5

11 U.S.C. § 502(c) .............................................................................................................. 5

11 U.S.C. § 1129(a)(9)(A) ................................................................................................. 4

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

The Reorganized Debtors[1] hereby reply to GM's objection [Docket No. 22088] (the "Objection") to the Motion to Close Bankruptcy Cases.[2]  In further support of the Motion to Close Bankruptcy Cases, and in response to the Objection, the Reorganized Debtors respectfully represent:

## PRELIMINARY STATEMENT

DPH Holdings is only months away from concluding its Wind Up (as defined in Exhibit 3.1.1.E of the MDA).  It has sold nearly all of its assets, resolved nearly all of its preference claims and is in the final stages of settling the last seventeen proofs of claim that it must allow and satisfy pursuant to the Modified Plan.

Although the Wind Up is nearly complete, important work remains to be done.  The Modified Plan always contemplated that the Chapter 11 cases would close by the end of 2013, and to comply with the Modified Plan, the Reorganized Debtors need to administer all claims before termination of the GM Wind Down Facility.  Accordingly, by the Motion to Close Bankruptcy Cases, DPH Holdings seeks an order to allow it to take administrative steps to permit the Reorganized Debtors' estates to be deemed fully administered by December 31, 2013, thereby allowing the cases to be closed.  These administrative actions include, but are not limited to:  (i) resolving the

---

[1]  Capitalized terms used but not otherwise defined herein shall be ascribed the meanings given to them in the *Reorganized Debtors' Motion for Final Decree and Order Pursuant to 11 U.S.C. §§ 105, 350(a), and 1142, Fed. R. Bankr. P. 3022, and Local Bankr. R. 3022-1 Closing the Bankruptcy Cases and Providing Related Relief*, dated July 3, 2013 [Docket No. 22073] (the "Motion to Close Bankruptcy Cases").

[2]  Pursuant to an agreement between the Reorganized Debtors and GM, the Reorganized Debtors reply to the portion of GM's Objection that concerns the *Reorganized Debtors' Motion for an Order to Compel Compliance With, and to Implement, the Modified Plan, Plan Modification Order and Related Documents*, dated July 3, 2013 (the "Motion to Compel") [Docket No. 22075], is not due to be filed until no later than four (4) business days before the rescheduled hearing before this Court to consider the Motion to Compel, if necessary.

Remaining Claims and Remaining Adversary Proceedings; (ii) dissolving DPH Holdings in accordance with Delaware law; and (iii) forming trusts for purposes of resolving claims.

Presumably to delay conclusion of the Wind Up past its December 31 deadline, at which time GM will no longer have any obligation to fund the DPH Holdings Wind Up, GM has objected to the non-economic, purely administrative relief sought in the Motion to Close Bankruptcy Cases. GM argues: (i) that the Plan Modification Order and Modified Plan do not authorize the Reorganized Debtors to establish a remediation trust to settle the Environmental Claims (Obj. ¶¶ 7, 9); (ii) the dissolution of DPH Holdings is unnecessary because DPH Holdings is a "debtor in bankruptcy" (Obj. ¶ 49); and (iii) that a release should not be granted to the Plan Administrator (at least until the Motion to Compel is satisfactorily "dealt with" (Obj. ¶ 46)).

GM's arguments have no merit (for reasons further described below). The Motion to Close Bankruptcy Cases does not seek to prejudice GM in any way. It seeks only authority to conduct administrative tasks that are necessary to conclude these cases, and it has no bearing on GM's ultimate obligation to fund anything. To make that crystal clear, DPH Holdings has added the following provision in a modified version of the Case Closing Order, which will be submitted to this Court for approval:

> Notwithstanding anything to the contrary in the Motion or otherwise, entry of this Order does not constitute a finding that GM, or any other party, including the Reorganized Debtors, are required to pay, fund or satisfy any particular liability, claim or cost of the Wind Up (as defined in Exhibit 3.1.1.E to the MDA), or to fund any trust or post security that the Reorganized Debtors are authorized to establish. Such obligation, if any, of GM shall be determined as part of the adjudication, if necessary, by this Court of the *Reorganized Debtors' Motion for an Order to Compel Compliance With, and to Implement, the Modified Plan, Plan Modification Order and Related Documents* (the "<u>Motion to Compel</u>") [Docket No. 22075], and all parties' rights, claims and defenses concerning the Motion to Compel, including

the Reorganized Debtors' right to assert that GM has a funding obligation, are preserved and not waived.

With this concession, the relief sought by the Motion to Close Bankruptcy Cases simply should not be controversial, and any objections by GM to this non-economic, purely administrative motion should be overruled.

**REPLY**

1. GM asserts three arguments in response to the Motion to Close Bankruptcy Cases, including: (i) DPH Holdings is not authorized to form a remediation trust in settlement of the Environmental Claims (Obj. ¶¶ 7, 9); (ii) DPH Holdings should not be allowed to dissolve under Delaware law, and thus, a security on account of pending litigations is unnecessary (*id*. ¶¶ 17–21, 49–50); and (iii) the Plan Administrator should not be given a release now (*id*. ¶ 46). Each argument is incorrect and addressed below.

**A.   GM's Argument that DPH Holdings Is Not Authorized
to Form a Trust Ignores the Plan Modification Order**

2. GM asserts that DPH Holdings is not authorized to create a trust as part of its settlement of the Environmental Claims because the Modified Plan does not explicitly authorize DPH Holdings to establish the trust. (Obj. ¶ 7.)[3]

3. GM is wrong. The Plan Modification Order expressly authorizes DPH Holdings to take all "necessary or appropriate" steps to effectuate and consummate the Modified Plan. (*See* Plan Modification Order ¶ 24 (allowing the Reorganized Debtors to take "all such actions as any of their executive officers may

---

[3] Given the agreement between the Reorganized Debtors and GM to adjourn the hearing on the Motion to Compel, and thus, the adjournment of the issue regarding whether GM is obligated to fund a remediation environmental trust under the terms of the Master Disposition Documents (as defined in the Motion to Compel), GM's issue with respect to receipt of information concerning the "form of the contemplated environmental trust agreement" or other information (Obj. ¶¶ 11–14) is not before the Court.

3

determine are necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Modified Plan").) Section 9.6 of the Modified Plan provides that DPH Holdings "shall retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving all Claims," (as defined in the Modified Plan), including the Environmental Claims. Accordingly, there is sufficient authority for DPH Holdings to establish a remediation trust to settle the Environmental Claims.

4. Further, a plan of reorganization need not (and cannot) list *ad nauseam* each corporate action that may be necessary in the future. *Unsecured Claims Estate Representative of Teligent, Inc. v. Cigna Healthcare, Inc. (In re Teligent, Inc.)*, 326 B.R. 219 (S.D.N.Y. 2005) -- cited by GM in support of its argument that a plan administrator can only perform acts authorized by a plan (Obj. ¶ 7) -- is completely inapposite. In *Teligent*, the estate representative's powers were narrowly defined under the confirmed plan, and the court enjoined the estate representative from trying to exercise a power that was outside of, and contrary to, her defined powers. *See* 326 B.R. at 225. Here, the Reorganized Debtors are seeking to perform an act that is well within, and consistent with, the expansive powers that were approved by this Court when it confirmed the Modified Plan. Moreover, providing for the establishment of one trust simply does not prohibit the establishment of others (absent specific language to the contrary).[4]

---

[4] To the extent GM still argues that a trust is unnecessary because, as the Reorganized Debtors expect, the Environmental Claims will be resolved no later than November 14, 2013 (Obj. ¶ 9), GM misunderstands the nature of the Reorganized Debtors' obligations with respect to resolving the Environmental Claims. DPH Holdings is obligated to resolve the Environmental Claims pursuant to the Bankruptcy Code. *See* 11 U.S.C. § 1129(a)(9)(A) and section 9.6(a) of the Modified Plan. If the Environmental Claims are not settled, DPH Holdings cannot fulfill its obligations under the Bankruptcy Code or the Modified Plan, and the Wind Up cannot be completed as contemplated. While funding these settlement is not at issue now, establishment of a trust is the mechanism by which the Reorganized Debtors will likely settle the Environmental Claims. Formation of a trust for this purpose is supported by the governmental authorities with which DPH Holdings is negotiating its settlement, and is the vehicle through which resolution of the Environmental Claims is currently contemplated by those parties. *See Statement of the United States of America in Support of the Reorganized*

4

**B.     DPH Holdings Is Not a "Debtor" in Bankruptcy
         and It May Properly Dissolve Under Delaware Law**

        5.     GM appears to argue that the Delaware dissolution statute does not apply to a "debtor in bankruptcy" (Obj. ¶ 49), and suggests that DPH Holdings could rely on section 502(c) of the Bankruptcy Code to estimate the Environmental Claims and pending litigations that relate to the security that DPH Holdings would establish in connection with its dissolution under Delaware law.[5] Based on the arguments asserted in the Objection (*see* Obj. ¶¶ 17–21), GM is apparently confused about these pending litigations and why DPH Holdings seeks to dissolve in the first place. While not all of GM's issues are relevant to the Motion to Close Bankruptcy Cases, the following facts define and narrow the issues in dispute here.

        6.     There are ten litigations pending against DPH Holdings unrelated to proofs of claim.[6] As a result, these actions were not included in the seventeen unresolved claims referenced in paragraph 8(i)–(iii) of the Motion to Close Bankruptcy

---

    *Debtors' Motion for an Order to Compel Compliance With, and to Implement, the Modified Plan, Plan Modification Order and Related Documents* ¶¶ 4–8, dated July 24, 2013 [Docket No. 22100]; *Michigan Department of Environmental Quality's Limited Objection to Motion for Final Decree and Order Pursuant to 11 U.S.C. 105, 350(a), and 1142, Fed. R. Bankr. P. 3022, and Local Bankr. R. 3022-1 Closing the Bankruptcy Cases and Providing Related Relief* ¶ 16, dated July 23, 2013 [Docket No. 22095].

[5]    Although GM argues that DPH Holdings could have availed itself of the estimation process provided under section 502(c) of the Bankruptcy Code (*see* Obj. ¶¶ 13, 50 n.10), there is no guarantee that such process would have benefited GM. Estimation under section 502(c) could be a costly, lengthy and litigious process void of any certain result. Thus, it is conceivable that if DPH Holdings had proceeded under section 502(c) to estimate the Environmental Claims, the outcome would have been less favorable than the settlement DPH Holdings is currently negotiating. Notwithstanding the foregoing, DPH Holdings reserves its right to pursue estimation of the Environmental Claims under section 502(c) of the Bankruptcy Code. With respect to the pending litigations, section 502(c) of the Bankruptcy Code is arguably unavailable given that the litigations are not related to proofs of claim. *See In re Franklin*, 448 B.R. 744, 746–47 (Bankr. M.D. La. 2011) ("Section 502(c) only confers 'deemed allowed' status on proofs of claim filed in conformity with Bankruptcy Code section 501.").

[6]    In the Motion to Compel, DPH Holdings inadvertently labeled its pending product liability litigations as patent litigations. None of these actions relate to patent litigations. Moreover, GM acknowledges that it has received information related to DPH Holdings' pending litigations. (*See* Obj. ¶ 19.)

5

Cases, but they were referenced as "wind down obligations." (Motion to Close Bankruptcy Cases ¶ 25.)

7. The current dispute, however, is **_not_** about whether GM is obligated to fund a security in connection with DPH Holdings' dissolution, or whether GM has all of the information it should reasonably receive before it is obligated to fund. The current dispute is about one thing: whether DPH Holdings should be allowed to dissolve under Delaware law to complete its Wind Up. GM's main argument here is that dissolving under Delaware law is not necessary for a "debtor in bankruptcy." (Obj. ¶ 49.) But this argument ignores a basic fact: DPH Holdings is **_not_** a debtor in bankruptcy.

8. Debtor Delphi Corporation was reorganized as DPH Holdings, a non-Debtor Delaware corporation, in accordance with the Modified Plan. (*See* Modified Plan § 1.192; Modified Plan Ex. 7.4(a) (Certificate Of Incorporation for Reorganized Delphi); Modified Plan Ex. 7.4(b) (Bylaws Of Reorganized Delphi).) Consequently, the Delaware dissolution statutes (8 Del. C. §§ 275, 280–282) apply to DPH Holdings.

9. Under Delaware law, dissolution is **_the_** means by which a Delaware corporation "winds up" its affairs. *See* 8 Del. C. § 275(f) (providing that a corporation is "dissolved" upon filing a certificate of dissolution); *accord* 8 Del. C. §§ 279–281 (providing for wind up of a "dissolved" corporation).

10. Dissolving DPH Holdings pursuant to Delaware law would have a number of substantial benefits, including: (i) providing fair treatment to DPH Holdings' creditors who have claims that are not otherwise resolved or barred (including, potentially, the claimants in at least some of the pending litigations); and (ii) allowing corporate fiduciaries to avoid the risk of breaching a fiduciary duty to stakeholders. *See Akande v. Transamerica Airlines, Inc. (In re Transamerica Airlines, Inc.),*

6

No. Civ.A 1039-N, 2006 WL 587846, at *7 (Del. Ch. Feb. 28, 2006) (citing *In re RegO Co.*, 623 A.2d 92, 94 (Del. 1992)); *see also In re Citadel Indus., Inc.*, 423 A.2d 500, 506 (Del. Ch. 1980) (noting that 8 Del. C. §§ 278–279 ensure that a dissolved corporation maintains authority and viability to wind up its affairs).

11.     Conversely, failure to comply with Delaware dissolution laws needlessly creates the possibility for liability to arise. *See Transamerica Airlines*, 2006 WL 587846, at *7 ("Delaware case law recognizes, however, that a director breaches her fiduciary duty to creditors if she fails to comply with the dissolution procedures set forth in 8 *Del. C*. §§ 280-282." (citing *Gans v. MDR Liquidating Corp.*, No. CIV. A. 9630, 1990 WL 2851, at *6–8 (Del. Ch. Jan. 10, 1990))). Indeed, section 281(c) of the Delaware General Corporation Law absolves a director of a dissolved corporation (or the governing person of a successor trust) from personal liability if the director complies with the wind up procedures under sections 280–281 of the Delaware General Corporation Law. *See* 8 Del. C. § 281(c).

12.     DPH Holdings believes that it should not be forced to ignore its obligations under Delaware law -- and potentially expose the Plan Administrator to liability -- simply because doing so may relieve GM of its funding obligations under the MDA.[7] GM simply does not have the authority to micromanage how DPH Holdings ultimately winds up its affairs.

## C.     GM's Objection to a Release for the Plan Administrator Is Premature

13.     Finally, GM states that the Motion to Close Bankruptcy Cases is objectionable in that it seeks prematurely to release the Plan Administrator. (Obj. ¶ 46.)

---

[7]  Although GM may claim that it has no obligation to fund the dissolution process at all, or to fund the security that may be established in connection therewith, no aspect of DPH Holdings' funding obligation is before the Court now.

7

GM does not dispute the scope of the proposed release or that a full and complete release may be proper at a later date. GM's only articulated objection to the release is simple: it claims that the release should not apply to the Plan Administrator "until all of the issues relating to [the] Motion to Compel are satisfactorily dealt with." (*Id*.)

14.  GM's objection to the Plan Administrator's release is premature because the release is not to be given now. The Plan Administrator will not receive a release until "entry of a final decree." (Motion to Close Bankruptcy Cases ¶ 28.) There has been no request yet for a final decree. Moreover, no request for a final decree can (or will) be made until the issues in the Motion to Compel are "dealt with."

15.  A request for a final decree in these Chapter 11 cases will not be made for months. If GM still disputes the releases when that request is made, it can raise its objection at that time.

**WHEREFORE**, for the reasons set forth above, the Reorganized Debtors respectfully request that this Court overrule the Objection, enter the Case Closing Order, and grant such other and further relief as this Court deems just and proper.

Dated:  New York, New York
          July 29, 2013

          DPH Holdings Corp., et al.,
          By Their Attorneys
          TOGUT, SEGAL & SEGAL LLP
          By:

          /s/ Albert Togut
          ALBERT TOGUT
          NEIL M. BERGER
          STEVEN S. FLORES
          One Penn Plaza, Suite 3335
          New York, New York 10119
          (212) 594-5000