SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Albert L. Hogan III
Ron E. Meisler

     - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
    Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x
                                                          :
            In re                                         :     Chapter 11
                                                          :
DPH HOLDINGS CORP., et al.,                               :     Case No. 05-44481 (RDD)
                                                          :
                                                          :     (Jointly Administered)
            Reorganized Debtors.                          :
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

REORGANIZED DEBTORS' REPLY TO OBJECTIONS TO MOTION FOR A FINAL
DECREE AND ORDER PURSUANT TO 11 U.S.C. §§ 105, 350(a), AND 1142, FED.
R. BANKR. P. 3022, AND LOCAL BANKR. R. 3022-1 CLOSING THE
BANKRUPTCY CASES AND PROVIDING RELATED RELIEF OBJECTIONS
FILED BY REPUBLIC ENGINEERED PRODUCTS (DOCKET NO. 22082), PRO
TECH MACHINE (DOCKET NO. 22085), DSSI, LLC (DOCKET NO. 22086), JAMES
B. SUMPTER (DOCKET NOS. 22089, 22106), TATA AMERICA INTERNATIONAL
CORPORATION D/B/A TCS AMERICA (DOCKET NO. 22092), THE MICHIGAN
DEPARTMENT OF ENVIRONMENTAL QUALITY (DOCKET NO. 22095), AND
THE UNITED STATES OF AMERICA (DOCKET NO. 22100)

("NON-GM CASE CLOSING MOTION REPLY")

In accordance with paragraph 14 of the Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, entered March 20, 2006 (Docket No. 2883), the Reorganized Debtors submit this reply (the "Reply") in support of the Reorganized Debtors' Motion for Final Decree and Order Pursuant to 11 U.S.C. §§ 105, 350(a), and 1142, Fed. R. Bankr. P. 3022, and Local Bankr. R. 3022-1 Closing the Bankruptcy Cases and Providing Related Relief, filed July 3, 2013 (Docket No. 22073) (the "Motion").[1]

## PRELIMINARY STATEMENT

The Modified Plan[2] under which the Reorganized Debtors emerged from chapter 11 always contemplated that these cases would come to completion by the end of 2013. Accordingly, as of this time the Reorganized Debtors have disposed of all of their saleable assets, and the funds available under the GM Wind Down Facility that will allow the Reorganized Debtors to fulfill their obligations under the Modified Plan will not be available after December. Given these circumstances, the Reorganized Debtors filed the Motion to provide the Court, as well as other parties in interest, a blueprint for the final months of the Chapter 11 Cases.

The immediate relief sought in the Motion is relatively limited, requesting authority to take certain administrative actions and impose certain procedures and deadlines so that the Reorganized Debtors will be in a position to conclude these cases by year end. The

---

[1]    This Reply addresses the objections (collectively, the "Objections") filed by seven of the objectors—defendants in certain of the Remaining Adversary Cases, the United States, the Michigan Department of Environmental Quality, and James Sumpter. A separate objection filed by GM is addressed in a reply filed concurrently herewith by Togut, Segal & Segal LLP. In addition, the Reorganized Debtors' have sought to address certain issues raised by the objectors and informal comments provided by the Office of the United States Trustee and Kurtzman Carson Consultants, LLC in a revised form of the Case Closing Order attached as Exhibit A hereto. A redline reflecting changes to the proposed order filed along with the Motion is attached as Exhibit B hereto.

[2]    Capitalized terms used and not otherwise defined in this reply have the meanings ascribed to them in the Motion.

actual closing of the cases, entry of a final decree, and certain related relief described in the

Motion is contingent upon resolution of the Remaining Claims and Remaining Administrative

Proceedings.

By this Motion, the Reorganized Debtors are seeking to be transparent about the

process that must be followed in order to allow these cases to conclude successfully, and to

obtain the limited relief described in the Motion to put that process in motion.  Many of the

Objections are premised on the notion that substantive rights are being affected or altered by this

Motion.  That is incorrect, although, to be sure, the Motion does seek to establish an overall

framework, timetable, and deadlines for the resolution of these cases that will be accomplished in

2013.  On that score, to the extent that the Objections seek to reserve the right to push this

process past the end of 2013, that position must be rejected—not because the Reorganized

Debtors are imposing an arbitrary timeframe, but, rather, because the circumstances of these

cases require that they be concluded in that timeframe.

**REPLY**

I.    **The Motion Does Not Prejudice the Rights of Parties to the Remaining
      Claims or the Remaining Adversary Proceedings**

1.    A common thread across all of the objections is a generalized assertion

that the Motion somehow may prejudice their rights in connection with the Remaining Claims or

the Remaining Adversary Proceedings. That is not the case. Nothing in the Motion seeks to

resolve any of the merits or substantive issues in the Remaining Claims or the Remaining

Adversary Proceedings. However, the procedures previously approved by the Court may need to

be adjusted to resolve the Remaining Claims and the Remaining Adversary Proceedings prior to

the Closing Status Hearing. To modify those procedures, the Reorganized Debtors will

separately seek approval from the Court for the specific schedules to be employed. But, through

this Motion the Reorganized Debtors do intend to establish that, as an overarching matter, the

Remaining Claims and Remaining Adversary Proceedings will be concluded by the end of the

year, prior to the expiration of the GM Wind Down Facility.

### A.    The Remaining Claims

2.      The objections filed by the Michigan Department of Environmental

Quality (the "Michigan DEQ") (Docket No. 22095) and the United States (Docket No. 22100)

with respect to certain environmental claims observe that they were "carved out" of the

procedures approved by this Court for resolving prepetition claims.[3]  As an initial matter, the

same carve out was not incorporated into the order extending the Claims Procedures Order to the

resolution of administrative expense claims.[4]  More importantly, the carve out was not an

adjudication that the claims procedures should not or could not apply to the claims of the

Michigan DEQ or the United States.   The  claims procedures have been enormously effective—

thousands of claims have been resolved in these Chapter 11 Cases under those procedures in an

equitable and efficient manner—and there is no reason that they (or something similar to them)

cannot be used to resolve these environmental claims as well.

---

[3]     Order Pursuant to 11 U.S.C. §§ 502(b) and 502(c) and Fed. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007,
and 9014  Establishing (I) Dates for Hearings Regarding Objections to Claims and (II) Certain Notices and
Procedures Governing Objections to Claims (Docket No. 6089) (the "Claim Objection Procedures Order").

[4]     Order Pursuant to 11 U.S.C. §§ 105(a) and 503(b) Authorizing Debtors to Apply Claims Objection Procedures
to Address Contested Administrative Expense Claims (Docket No 18998) ("The Reorganized Debtors are
authorized and directed to apply the claim objection procedures set forth in the Claims Objection Procedures
Order to any dispute with respect to Administrative Claims. . . . All Administrative Claims shall be subject to
the Claims Objection Procedures.").

3.     The Reorganized Debtors have other tools at their disposal to resolve the

environmental claims.  Indeed, absent the claims procedures, the Reorganized Debtors have the

right to notice claims for hearing in accordance with the shorter period otherwise applicable

under the Federal Rules of Bankruptcy Procedure and the Local Rules for the Bankruptcy Court

for the Southern District of New York.  In the form of Case Closing Order attached as Exhibit A,

the Reorganized Debtors have proposed that the existing claims procedures will apply to the

claims filed by the Michigan DEQ and the United States unless the Michigan DEQ or the United

States elect to opt out of those procedures prior to August 15, 2013, or except as otherwise may

be agreed by the parties. If either the Michigan DEQ or the United States opt out, the

Reorganized Debtors will notice the applicable claims for disposition, and reserve all rights for

an expedited schedule permitted by the Federal Rules of Bankruptcy Procedure and the Local

Rules for the Bankruptcy Court for the Southern District of New York, to be heard no later than

November 30, 2013.

4.     Substantively, the Michigan DEQ and the United States argue that the

cases cannot be closed until the Reorganized Debtors' environmental obligations are addressed.

But, that is the precise point of the Motion, which lays out the framework for achieving a

resolution of all claims and entry of a final decree and the closing of the cases upon satisfaction

of certain conditions, including resolution of the Remaining Claims filed by the Michigan DEQ

and the United States. The Motion does not address the merits of those claims—that will be done

prior to the Closing Status Hearing, either consensually or by order of the Court.

5.     The United States further notes that, as a result of their ownership of

contaminated property, the Reorganized Debtors have environmental obligations that are

independent from the administrative claims filed against the Debtors in these Chapter 11 Cases.[5]

This assertion does not withstand scrutiny.  To the extent that a governmental agency could

compel a reorganized debtor to pay costs independent from an administrative claims – and the

Reorganized Debtors do not concede that to be the case – in this case, the Reorganized Debtors'

environmental obligations wholly overlap with the obligations asserted in the Remaining Claims.

The Remaining Claims seek to recover from the estate the full costs of associated with the

Reorganized Debtor's environmental obligations flowing from their ownership of certain

properties.  There are no additional or incremental obligations beyond the Remaining Claims.

### B.    The Remaining Adversary Proceedings

6.      To the extent that the Reorganized Debtors seek to expedite the procedures

approved by this Court for resolving the Remaining Adversary Proceedings, they will do so in

accordance with those procedures or with separate approval of the Court. The existing adversary

procedures were approved the disposition of sixty-six remaining adversary cases open at that

time.  The time frames under those procedures were necessarily generous to accommodate the

volume of open adversary proceedings.  Today, all but five of the adversary proceedings have

been resolved, only four of which may go to trial.[6] As a result, modification of the existing

procedures to resolve the Remaining Adversary Claims prior by November 30, 2012, is both

feasible and necessary.

---

[5]     The United States incorrectly states that the Trust owns contaminated property and is, therefore, liable for environmental obligations asserted in the Remaining Claims. The Trust does not own any property. The Trust owns only shares of common stock in DPH Holdings.

[6]     While the adversary proceeding dockets reveal a greater number of open cases, those cases will be dismissed in the coming weeks and/or upon the receipt of final settlement payments.

7.        Four of the remaining defendants have objected to an accelerated schedule to the extent it results in prejudice.  In this regard, defendants' concerns are unwarranted.  With nearly five months remaining before the proposed case closing, there is sufficient time to complete the remaining tasks, and if necessary, resolve disputes through trial.  Four of the five cases are already scheduled for mediation during the month of August.  In the meantime, the Reorganized Debtors will work cooperatively with defense counsel to modify the existing adversary procedures and will propose such modifications to this Court for approval or to resolve any disputes.

8.        In addition, certain objections by defendants in the Remaining Adversary Proceedings also assert that the relief sought in the Motion may prejudice potential appeals regarding the disposition of the Remaining Claims and the Remaining Adversary Proceedings. In the event that any pending appeals remain unresolved as of the Closing Status Hearing, this Court may still enter a final decree. A case may be "fully administered" pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022 even where pending appeals of such adversary proceedings are unresolved.[7] This Court may reopen a case upon a showing of cause, pursuant to section 350(b) of the Bankruptcy Code, to address the resolution of any appeals from adversary proceedings that cause this Court to entertain further proceedings with respect to those matters.[8]  Further, the fact that this Court's jurisdiction could potentially be required at some

---

[7]      In re W.A.R. LLP, 2011 Bankr. LEXIS 2650 at *4 (Bankr. D.D.C. July 11, 2011) ("Appeals of various rulings are pending . . . . Nevertheless, a case should be closed when, as here, the estate has been fully administered. … Under 11 U.S.C. § 350(b), the court is permitted to reopen the case for cause, including, in this case, in order to address … the results of any pending appeals, or any other appeals that may be filed."); In re Ion Media Networks, Inc., 2010 Bankr. LEXIS 5585, at *2 (Bankr. S.D.N.Y. Dec. 22, 2010) (where an appeal had not yet been resolved, court entered the final decree closing the cases upon a finding that cases had been fully administered).

[8]      Ion Media Networks, Inc., 2010 Bankr. LEXIS at *2; see also, W.A.R. LLP, 2011 Bankr. LEXIS at *4.

time in the future should not prevent the Court from entering a final decree.[9] In short, the

theoretical existence of appeals will not preclude the closing of these cases, and certainly should

not preclude the relief sought in the Motion.

## II.        Objection Filed by James Sumpter

9.      James S. Sumpter, a salaried retiree of the Debtor, submitted an objection

to the Motion (Docket No. 22089). Mr. Sumpter is no stranger to this Court. His objection is

premised on the same arguments that the Court has already considered and rejected on numerous

occasions.[10] Undeterred, Mr. Sumpter's has filed yet another complaint seeking damages against

DPH Holdings, Butzel Long, P.C., John Brooks, Cynthia Haffey, and Robert P. Granadier, in the

U.S. District Court for the Southern District of Indiana on June 26, 2013 (this is in addition to the

complaint that was the subject of injunction proceedings and this Court's recent order dated July

---

[9]    Fed. R. Bankr. P. 3022 Advisory Committee Note (1991) ("The court should not keep the case open only
because of the possibility that the court's jurisdiction may be invoked in the future. A final decree closing the
case after the estate is fully administered does not deprive the court of jurisdiction to enforce or interpret its own
orders and does not prevent the court from reopening the case for cause pursuant to section 350(b) of the
Code."); see also, In re Jordan Mfg. Co., Inc., 138 B.R. 30, 35 (Bankr. C.D. Ill. 1992) ("If jurisdiction is present,
the Advisory Committee Notes to the current Bankruptcy Rule 3022 make it quite clear that the entry of a final
decree should not be delayed because the bankruptcy court's jurisdiction might be required in the future and
that the entry of a final decree does not deprive the bankruptcy court of jurisdiction . . . ."); see also, In re Gates
Comm. Chapel of Rochester, 212 B.R. 220, 224 (Bankr. W.D.N.Y. 1997) ("[A] a bankruptcy court should not
maintain its jurisdiction only because of a mere possibility that such jurisdiction may be invoked by the parties
in the future . . . . [T]he entry of a final decree in no way completely deprives the court of its jurisdiction to
reopen the case, enforce or interpret an order, or determine a pertinent issue.").

[10]   Second Order on Reorganized Debtors' Motion for an Order (I) Enforcing Modification Procedures Order,
Modified Plan and Plan Modification Order Injunction and Thirty-Seventh Omnibus Claims Objection Order
Against James Sumpter, as Plaintiff, in Federal Court ERISA Action; and (II) Directing James Sumpter to
Dismiss United States District Court, Southern District of Indiana Action Against Reorganized Debtors and the
Reorganized Debtors' Life & Disability Benefits Program (Docket No. 22090); Order (I) Enforcing
Modification Procedures Order, Modified Plan and Plan Modification Order Injunction and Thirty-Seventh
Omnibus Claims Objection Order Against James Sumpter, as Plaintiff, in Federal Court ERISA Action; and (II)
Directing James Sumpter to Dismiss United States District Court, Southern District of Indiana Action Against
Reorganized Debtors and the Reorganized Debtors' Life & Disability Benefits Program (Docket No. 22063);
Order Denying James B. Sumpter's Expedited Request for Preliminary Injunction to Prohibit DPH from
Terminating Salaried Disability Plan (Docket No. 21877); Order Denying James B. Sumpter's Vesting Motion
Regarding Extended Disability Benefits for Salaried Employees and Salaried Retirees (Docket No. 21876).

19, 2013). Mr. Sumpter's objects to the closing of these Chapter 11 Cases on the basis that "the

potential dissolution of DPH Holdings and the potential lack of available funds to pay damages"

he anticipates will be awarded as a result of his latest Indiana lawsuit. Mr. Sumpter's objections,

like his serial filings, are frivolous and should be overruled.

### III.        The Requested Releases Are Appropriate

10.        The United States objects to the discharge and release described in the

Motion on the grounds that "there is no authority for the Court to grant the discharge and release

sought by the Motion." Here again, the Motion does not seek the entry of such a discharge and

release today, but, rather, contemplates the entry of such an order in connection with the case

closing, at which time the United States' administrative claims will be fully resolved.  Thus, to

the extent the objection is based on the existence of the unresolved claims, that condition will,

necessarily, no longer exist when the discharge and release becomes effective.

11.        The Reorganized Debtors do not seek broad releases through the Motion. Rather,

the Reorganized Debtors' are seeking narrowly tailored releases for the President of DPH

Holdings and for the Plan Administrator (as well as employees of the Plan Administrator acting

for or on behalf of the Plan Administrator). These types of confirmatory releases are frequently

granted in similar cases for parties charged with administering and taking other actions

contemplated by a plan of reorganization. See, e.g., Final Decree and Order Closing Chapter 11

Case and Granting Other Related Relief, In re APF Co., No. 98-1596 (Bankr. D. Del. July 6,

2011); Order (I) Approving Certain Final Claims Register Information, (II) Authorizing Final

Distributions, and (III) Granting Related Relief, In re Hayes Lemmerz International, Inc., No.

01-11490 (Bankr. D. Del. Jan. 21, 2010); Order Granting Reorganized Debtor's Motion for Entry

of Final Decree Closing Chapter 11 Cases, Discharging and Releasing Plan Administrator,

9

Authorizing Final Distribution, Authorizing Abandonment of Property, and Granting Related Relief, In re Russell-Stanley Holdings, Inc., No. 05-12339 (Bankr. D. Del. Oct. 13, 2009).

12.    Moreover, the releases sought in the Motion are complimentary to the broad exculpation rights that this Court has already approved a broad in connection with the confirmation of the Modified Plan. Section 11.11 , which is applicable to the Plan Implementation Parties for postpetition conduct, provides, in relevant part:

> the Reorganized Debtors . . . and any of such parties' respective current or former members, officers, directors, . . . affiliates, employees, advisors, attorneys, representatives . . . or agents, and any of such parties' successors and assigns, shall not have or incur, and are hereby released from, any claim, obligation, Cause of Action, or liability to any party, or any of its agents, employees, representatives, current or former members, . . . or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Debtors' Chapter 11 Cases . . . [N]o party . . . shall have any right of action against the parties listed in this Article for any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases [or] . . . implementation . . . of this Plan . . . or  other agreement or document created, modified, amended or entered into in connection with . . . this Plan.

Further, this Court, in the Plan Modification Order, found that the "exculpation and limitation of liability provisions set forth in Article 11.1 of the Modified Plan . . .  are hereby approved as an integral part of the Modified Plan and are fair, equitable, reasonable, and in the best interests of the Debtors, their estates, and holders of Claims and Interests." Plan Modification Order ¶ 20. The discharge and release described in the Motion is simply an affirmation of this protection.

13.    In addition to the indemnification and exculpation rights under DPH Holdings' certificate of incorporation and under the Trust Agreement described in the Motion, a discharge and release of the Plan Implementation Parties is analogous to protections afforded to directors of a dissolved corporation under applicable law. Pursuant to section 281(c) of the

Delaware General Corporation Law (the "DGCL"), the directors of a dissolved corporation, or governing persons of a successor entity, that comply with the wind-down provisions under sections 280-281 of the DGCL, are not personally liable to the claimants of the dissolved corporation.  Because the Motion contemplates that, in fact, the DGCL will be followed to dissolve the Reorganized Debtors, the discharge and release contemplated in the Motion is in harmony with this law as well.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

963658-CHISR02A - MSW

<u>CONCLUSION</u>

WHEREFORE, the Reorganized Debtors respectfully request that the Court overrule the objections, grant the Motion, and enter an order substantially in the form of the proposed Revised Case Closing Order attached to the Motion.

Dated: New York, New York
         July 29, 2013

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr.
    John K. Lyons
    Albert L. Hogan III
    Ron E. Meisler
    155 North Wacker Drive
    Chicago, Illinois 60606

        - and -

    Four Times Square
    New York, New York 10036

    Attorneys for DPH Holdings Corp., <u>et</u> <u>al.</u>,
     Reorganized Debtors

## Exhibit A

**Proposed Case Closing Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                        :

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DPH HOLDINGS CORP., et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Reorganized Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER PURSUANT TO 11 U.S.C. §§ 105, 350(a), AND 1142, FED. R.
BANKR. P. 3022, AND LOCAL BANKR. R. 3022-1 CLOSING THE
BANKRUPTCY CASES AND PROVIDING RELATED RELIEF

This matter having come before the court on the motion dated July 3, 2013 (the

"Motion") filed by the Reorganized Debtors seeking entry of a final decree and order, pursuant

to 11 U.S.C. §§ 105, 350(a), and 1142, Federal Rule of Bankruptcy Procedure 3022, and Local

Rule of Bankruptcy Procedure 3022-1 (i) closing the Chapter 11 Cases[1] that remain open,[2] (ii)

authorizing the Reorganized Debtors to complete certain outstanding administrative tasks

following entry of this Order; (iii) discharging and releasing the Plan Implementation Parties;

(iv) setting the Closing Status Hearing; (v) approving the form and manner of notice of the

Motion, and (vi) retaining jurisdiction to enforce or interpret its own orders pertaining to the

Chapter 11 Cases including, but not limited to, the Plan Modification Order and this Order; and

upon the arguments presented by the parties' counsel at and the record of the hearing on the

---

[1]    Capitalized terms not defined herein have the meanings given to them in the Motion.

[2]    Pursuant to the Motion, the Reorganized Debtors seek to close the Chapter 11 Cases that remain open (the "Open Cases"), including: (1) DPH Holdings Corp. (Case No. 05-44481), (2) Delphi Medical Systems Colorado Corporation (Case No. 05-44507), (3) Delphi Medical Systems Texas Corporation (Case No. 05-44511), (4) Delphi Mechatronic Systems, Inc. (Case No. 05-44567), and (5) Delphi Automotive Systems LLC (Case No. 05-44640).

Motion on July 30, 2013 (the "Hearing"); and the Court having jurisdiction over this matter; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

FOUND AND DETERMINED THAT:

A.  The predicates for the relief requested herein are Bankruptcy Code sections 105(a), 350(a), 1142, Federal Rule of Bankruptcy Procedure 3022, Local Rule of Bankruptcy Procedure 3022-1, the Plan Modification Order, and the Modified Plan;

B.  Notice of the Motion and the proposed Case Closing Order in the manner described in the Motion was good and sufficient under the particular circumstances and no other or further notice need be given;

C.  A reasonable opportunity to object and be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities;

D.  The objections filed by Republic Engineered Products (Docket No. 22082), Pro Tech Machine (Docket No. 22085), DSSI, LLC (Docket No. 22086), General Motors LLC (Docket No. 22088), James B. Sumpter (Docket Nos. 22089, 22106), Tata America International Corporation d/b/a TCS America (Docket No. 22092), the Michigan Department of Environmental Quality (Docket No. 22095), and the United States of America (Docket No. 22100), to the extent not resolved prior to the Hearing, are hereby overruled.

E.  Upon final resolution of the Remaining Claims and the Remaining Adversary Proceedings, Debtors' estates will have been fully administered within the meaning of 11 U.S.C. § 350 and in accordance with the Modified Plan;

F.   Upon final resolution of the Remaining Claims and the Remaining Adversary Proceedings, either consensually or by further order of this Court, the Plan Implementation Parties will have each substantially fulfilled their obligations under the Modified Plan;

G.   Good cause exists to dissolve DPH Holdings, to terminate the Trust, and to discharge and release the Plan Implementation Parties;

H.   The Trust will automatically terminate upon full administration and distribution of Trust Property;

I.   The distributions described in the Motion, including the funding of trusts and reserve accounts for payments associated with the Remaining Claims and with dissolution of DPH Holdings, satisfy the requirements of the Modified Plan, the Modification Approval Order, and the MDA;

J.   Notwithstanding anything to the contrary in the Motion or otherwise, entry of this Order does not constitute a finding that GM or any other party, including the Reorganized Debtors, are required to pay, fund or satisfy any particular liability, claim or cost of the Wind Up (as defined in Exhibit 3.1.1.E to the MDA), or to fund any trust or post security that the Reorganized Debtors are authorized to establish.  Such an obligation, if any, of GM shall be determined as part of the adjudication, if necessary, by this Court of the Reorganized Debtors' Motion for an Order to Compel Compliance With, and to Implement, the Modified Plan, Plan Modification Order and Related Documents (the "Motion to Compel"), dated July 3, 2013 (Docket No. 22075), and all parties' rights, claims and defenses concerning the Motion to Compel, including the Reorganized Debtors' right to assert that GM has a funding obligation, are preserved and not waived;

962337-CHISR02A - MSW

K.  The relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and, therefore, it is hereby

ORDERED, DECREED AND ADJUDGED THAT:

1.  The Motion is GRANTED to the extent provided in this Order.

2.  The Reorganized Debtors are hereby authorized to resolve the Remaining Claims and Remaining Adversary Proceedings pursuant to the procedures as detailed in the Motion. To the extent any of the Remaining Adversary Claims are not resolved by August 1, 2013, the Reorganized Debtors shall present modified procedures to the Court providing for the disposition of the Remaining Adversary Proceedings prior to November 30, 2013. To the extent that any of the Remaining Claims are not resolved prior to September 1, 2013, the Reorganized Debtors shall notice such claims for disposition on a sufficiency or an evidentiary basis for hearings scheduled on October 24, 2013, and November 14, 2013, respectively, or such other dates as the Court may schedule prior to November 30, 2013.

3.  The claim resolution procedures set forth in the Order Pursuant to 11 U.S.C. §§ 105(a) and 503(b) Authorizing Debtors to Apply Claims Objection Procedures to Address Contested Administrative Expense Claims (Docket No. 18998) and the Order Pursuant to 11 U.S.C. §§ 502(b) and 502(c) and Fed. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, and 9014  Establishing (I) Dates for Hearings Regarding Objections to Claims and (II) Certain Notices and Procedures Governing Objections to Claims (Docket No. 6089), as applicable, shall apply to claim numbers 15785, 18956, 19539, and 19786 (the "Environmental Claims") filed by the Michigan Department of Environmental Quality and the U.S. Department of Environmental Protection (each an "Environmental Agency") unless an Environmental Agency opts out of such procedures by providing written notice to counsel for the Reorganized Debtors prior to August

4

15, 2013 or except as may be otherwise agreed to in writing by the Reorganized Debtors and an

Environmental Agency. In the event that an Environmental Agency opts out of such claim

resolution procedures, on or before September 1, 2013, the Reorganized Debtors shall notice the

applicable Environmental Claims for disposition in accordance with the Federal Rules of

Bankruptcy Procedure and the Local Bankruptcy Rules for the Bankruptcy Court for the

Southern District of New York, but in any event, to occur no later than November 30, 2013.

Nothing herein shall prejudice the right of an Environmental Agency to contest the entry of the

final decree, the dissolution of DPH Holdings, or the termination of the Trust on the grounds that

the Reorganized Debtors have not satisfied all of the conditions necessary to close the cases,

dissolve DPH Holdings or terminate the Trust, including but not limited to the failure to resolve

the Environmental Claims or the failure to resolve any of the Reorganized Debtors' obligations

under the environmental laws.

4.    The Reorganized Debtors are hereby authorized complete all outstanding

administrative tasks after entry of this Order, including (a) resolution of the Remaining Claims

and Remaining Adversary Proceedings subject to the schedule, procedures, and deadlines

provided by this order; (b) disposition of any remaining assets; (c) dissolution of DPH Holdings

in accordance with Delaware law; (d) to establish trusts for purposes of resolving the Remaining

Claims; (e) payment of any taxes, professional fees, and other administrative costs; and (f) to

take such actions as may be necessary to close the Chapter 11 Cases.

5.    Upon entry of the final decree, the Plan Implementation Parties, including employees

of the Plan Administrator acting for or on behalf of the Plan Administrator, are hereby released

and discharged to the fullest extent permissible under any applicable law from any and all claims

that (a) have been, could have been, or which may in the future be asserted against any of the

5

Plan Implementation Parties for any act or omission occurring through the date of entry of the

final decree in these Chapter 11 Cases, and (b) relate to the Debtors, the Reorganized Debtors,

the Trust, the Modified Plan or the Chapter 11 Cases, including, without limitation, any claims

relating to or arising out of the implementation or administration of the Modified Plan, the

actions or omissions of any of the Plan Implementation Parties after the date of confirmation of

the Modified Plan, the assets or liabilities of the Debtors, the Reorganized Debtors, or the Trust,

or the responsibilities or obligations of any of the Plan Implementation Parties with respect to the

Modified Plan, the Trust, the Debtors, or the Reorganized Debtors. The Reorganized Debtors

further request that the Plan Implementation Parties be expressly discharged from any further

obligation or responsibility to take any additional action in connection with the administration of

the Debtors' estates, other than the outstanding administrative tasks outlined in the Motion or,

with respect to the Plan Administrator, under the Trust Agreement.

6.    Upon entry of the final decree and termination of the Trust, any residual assets of the

Reorganized Debtors shall be transferred to and shall be the property of Delphi Automotive LLP.

7.    The Debtors shall reserve sufficient funds to pay the Office of the United States

Trustee the amount of any quarterly fees due pursuant to 28 U.S.C. § 1930 and any applicable

interest due pursuant to 31 U.S.C. § 3717, which fees and interest, if any, shall be paid within ten

(10) days of the entry of the final decree.  Upon the payment of such quarterly fees, the Debtors

shall simultaneously provide to the United States Trustee an affidavit indicating cash

disbursements for the quarter in which the final decree is entered, and for any other relevant

quarter or quarters.

8.    Upon entry of the final decree, Kurtzman Carson Consultants, LLC ("KCC") shall (a)

prepare final claims registers for the Clerk's Office pursuant to the guidelines for implementing

6

28 U.S.C. § 156(c) and (b) box and transport all claims to the Federal Archives, at the direction of the Clerk's Office. Such services will be charged to the Reorganized Debtors.

9.   Except as expressly provided herein, upon entry of the final decree, KCC is released as claims and noticing agent in the Chapter 11 Cases under Bankruptcy Rule 2002, 28 U.S.C. § 156(c) and the Final Order Under 28 U.S.C. Section 156(c) Authorizing Retention and Appointment of Kurtzman Carson Consultants LLC as Claims, Noticing, and Balloting Agent for Clerk of Bankruptcy Court, In re DPH Holdings Corp, et. al., No. 05-44481 (Bankr. S.D.N.Y. December 1, 2005).

10. This Order shall be served in the manner set forth in the Motion on (i) the Master Service List, (ii) the Rule 2002 Service List, (iii) all parties to the Remaining Claims and Remaining Adversary Proceedings, and (iv) all known creditors of DPH Holdings.

11. This Court shall retain jurisdiction to enforce or interpret its own orders pertaining to the Chapter 11 Cases, including, but not limited to, the Plan Modification Order and this Order.

*Remainder of Page Left Intentionally Blank*

12. The Reorganized Debtors shall report on the status of outstanding administrative

tasks at the Closing Status Hearing, scheduled for December ___, 2013, at __:__ _.m. (prevailing

Eastern time), at which time this Court shall decide whether to enter a final decree in the Open

Cases.


Dated: White Plains, New York
        July ___, 2013


_____
    UNITED STATES BANKRUPTCY JUDGE

## Exhibit B

**Redline of Proposed Case Closing Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                  :
            In re                                 :        Chapter 11
                                                  :
DPH HOLDINGS CORP., et al.,                       :        Case No. 05-44481 (RDD)
                                                  :
                    Reorganized Debtors.          :        (Jointly Administered)
                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER PURSUANT TO 11 U.S.C. §§ 105, 350(a), AND 1142, FED. R.
BANKR. P. 3022, AND LOCAL BANKR. R. 3022-1 CLOSING THE
BANKRUPTCY CASES AND PROVIDING RELATED RELIEF

This matter having come before the court on the motion dated July 3, 2013 (the

"Motion") filed by the Reorganized Debtors seeking entry of a final decree and order, pursuant

to 11 U.S.C. §§ 105, 350(a), and 1142, Federal Rule of Bankruptcy Procedure 3022, and Local

Rule of Bankruptcy Procedure 3022-1 (i) closing the Chapter 11 Cases[1] that remain open,[2] (ii)

authorizing the Reorganized Debtors to complete certain outstanding administrative tasks

following entry of this Order; (iii) discharging and releasing the Plan Implementation Parties;

(iv) setting the ~~Final~~Closing Status Hearing; (v) approving the form and manner of notice of the

Motion, and (vi) retaining jurisdiction to enforce or interpret its own orders pertaining to the

Chapter 11 Cases including, but not limited to, the Plan Modification Order and this Order; and ~~it~~

~~appearing that notice of the Motion was good and sufficient and under the particular~~

~~circumstances and that no other or further notice need be given~~upon the arguments presented by

---

[1]    Capitalized terms not defined herein have the meanings given to them in the Motion.

[2]    Pursuant to the Motion, the Reorganized Debtors seek to close the Chapter 11 Cases that remain open (the
       "Open Cases"), including: (1) DPH Holdings, ~~Inc~~ Corp. (Case No. 05-44481), (2) Delphi Medical Systems
       Colorado Corporation (Case No. 05-44507), (3) Delphi Medical Systems Texas Corporation (Case No. 05-

the parties' counsel at and the record of the hearing on the Motion on July 30, 2013 (the "Hearing"); and the Court having jurisdiction over this matter; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

FOUND AND DETERMINED THAT:

A. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. §157(b)(2);

A. B. The predicates for the relief requested herein are Bankruptcy Code sections 105(a), 350(a), 1142, Federal Rule of Bankruptcy Procedure 3022, Local Rule of Bankruptcy Procedure 3022-1, the Plan Modification Order, and the Modified Plan;

B. C. Notice of the Motion and the proposed Case Closing Order in the manner described in the Motion was good and sufficient under the particular circumstances and no other or further notice need be given;

C. D. A reasonable opportunity to object and be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities;

D. The objections filed by Republic Engineered Products (Docket No. 22082), Pro Tech Machine (Docket No. 22085), DSSI, LLC (Docket No. 22086), General Motors LLC (Docket No. 22088), James B. Sumpter (Docket Nos. 22089, 22106), Tata America International Corporation d/b/a TCS America (Docket No. 22092), the Michigan Department of Environmental Quality (Docket No. 22095), and the United States of America (Docket No. 22100), to the extent not resolved prior to the Hearing, are hereby overruled.

---

44511), (4) Delphi Mechatronic Systems, Inc. (Case No. 05-44567), and (5) Delphi Automotive Systems LLC (Case No. 05-44640).

962337-CHISR962337.07B-CHISR02A−                                                           MSW - Draft July 29, 2013 - 1:41 PM

Redline DPH - Case Closing Order and DPH - Case Closing Order 7/29/2013 3:36:56 PM

E.  Upon final resolution of the Remaining Claims and the Remaining Adversary Proceedings, Debtors' estates will have been fully administered within the meaning of 11 U.S.C. § 350 and in accordance with the Modified Plan;

F. The Trust will automatically terminate upon full administration and distribution of Trust Property;

F.   Upon final resolution of the Remaining Claims and the Remaining Adversary Proceedings, either consensually or by further order of this Court, the Plan Implementation Parties will have each substantially fulfilled their obligations under the Modified Plan;

G.  Good cause exists to dissolve DPH Holdings, to terminate the Trust, and to discharge and release the Plan Implementation Parties;

H.  The Plan Implementation Parties have each substantially fulfilled their obligations under the Modified Plan Trust will automatically terminate upon full administration and distribution of Trust Property;

I.   The distributions described in the Motion, including the funding of trusts and reserve accounts for payments associated with the Remaining Claims and with dissolution of DPH Holdings, satisfy the requirements of the Modified Plan, the Modification Approval Order, and the MDA;

J.   Notwithstanding anything to the contrary in the Motion or otherwise, entry of this Order does not constitute a finding that GM or any other party, including the Reorganized Debtors, are required to pay, fund or satisfy any particular liability, claim or cost of the Wind Up (as defined in Exhibit 3.1.1.E to the MDA), or to fund any trust or post security that the Reorganized Debtors are authorized to establish.  Such an obligation, if any, of GM shall be determined as part of the adjudication, if necessary, by this Court of the Reorganized Debtors'

3

Motion for an Order to Compel Compliance With, and to Implement, the Modified Plan, Plan

Modification Order and Related Documents (the "Motion to Compel"), dated July 3, 2013

(Docket No. 22075), and all parties' rights, claims and defenses concerning the Motion to

Compel, including the Reorganized Debtors' right to assert that GM has a funding obligation, are

preserved and not waived;

K.    J. The relief requested in the Motion is in the best interests of the Debtors, their

estates, their creditors, and other parties in interest; and, therefore, it is hereby

ORDERED, DECREED AND ADJUDGED THAT:

1.    The Motion is GRANTED to the extent provided in this Order.

2.    The Reorganized Debtors are hereby authorized to resolve the outstanding claims and
open adversary proceedings Remaining Claims and Remaining Adversary Proceedings pursuant

to the procedures as detailed in the Motion. To the extent any of the Remaining Adversary

Claims are not resolved by August 1, 2013, the Reorganized Debtors shall present modified

procedures to the Court providing for the disposition of the Remaining Adversary Proceedings

prior to November 30, 2013. To the extent that any of the Remaining Claims are not resolved

prior to September 1, 2013, the Reorganized Debtors shall notice such claims for disposition on a

sufficiency or an evidentiary basis for hearings scheduled on October 24, 2013, and November

14, 2013, respectively, or such other dates as the Court may schedule prior to November 30,

2013.

3.    The claim resolution procedures set forth in the Order Pursuant to 11 U.S.C. §§

105(a) and 503(b) Authorizing Debtors to Apply Claims Objection Procedures to Address

Contested Administrative Expense Claims (Docket No. 18998) and the Order Pursuant to 11

U.S.C. §§ 502(b) and 502(c) and Fed. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, and

9014  Establishing (I) Dates for Hearings Regarding Objections to Claims and (II) Certain Notices and Procedures Governing Objections to Claims (Docket No. 6089), as applicable, shall apply to claim numbers 15785, 18956, 19539, and 19786 (the "Environmental Claims") filed by the Michigan Department of Environmental Quality and the U.S. Department of Environmental Protection (each an "Environmental Agency") unless an Environmental Agency opts out of such procedures by providing written notice to counsel for the Reorganized Debtors prior to August 15, 2013 or except as may be otherwise agreed to in writing by the Reorganized Debtors and an Environmental Agency. In the event that an Environmental Agency opts out of such claim resolution procedures, on or before September 1, 2013, the Reorganized Debtors shall notice the applicable Environmental Claims for disposition in accordance with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Bankruptcy Court for the Southern District of New York, but in any event, to occur no later than November 30, 2013. Nothing herein shall prejudice the right of an Environmental Agency to contest the entry of the final decree, the dissolution of DPH Holdings, or the termination of the Trust on the grounds that the Reorganized Debtors have not satisfied all of the conditions necessary to close the cases, dissolve DPH Holdings or terminate the Trust, including but not limited to the failure to resolve the Environmental Claims or the failure to resolve any of the Reorganized Debtors' obligations under the environmental laws.

    4.   3. The Reorganized Debtors are hereby authorized complete all outstanding administrative tasks after entry of this Order, including (a) resolution of the Remaining Claims and Remaining Adversary Proceedings, subject to the schedule, procedures, and deadlines provided by this order; (b) disposition of any remaining assets; (c) dissolution of DPH Holdings in accordance with Delaware law; (d) to establish trusts for purposes of resolving the Remaining

Claims and fund such trusts using the Reorganized Debtors' unrestricted cash or proceeds from the GM Wind Down Facility, and; (e) payment of any taxes, professional fees, and other administrative costs; and (f) to take such actions as may be necessary to close the Chapter 11 Cases.

5. 4. Upon entry of the final decree, the Plan Implementation Parties, including employees of the Plan Administrator acting for or on behalf of the Plan Administrator, are hereby released and discharged to the fullest extent permissible under any applicable law from any and all claims that (a) have been, could have been, or which may be in the future be asserted against any of the Plan Implementation Parties for any act or omission occurring through the date of entry of the final decree in these Chapter 11 Cases, and (b) relate to the Debtors, the Reorganized Debtors, the Trust, the Modified Plan or the Chapter 11 Cases, including, without limitation, any claims relating to or arising out of the implementation or administration of the Modified Plan, the actions or omissions of any of the Plan Implementation Parties after the date of confirmation of the Modified Plan, the assets or liabilities of the Debtors, the Reorganized Debtors, or the Trust, or the responsibilities or obligations of any of the Plan Implementation Parties with respect to the Modified Plan, the Trust, the Debtors, or the Reorganized Debtors. The Reorganized Debtors further request that the Plan Implementation Parties be expressly discharged from any further obligation or responsibility to take any additional action in connection with the administration of the Debtors' estates, other than the outstanding administrative tasks outlined in the Motion or, with respect to the Plan Administrator, under the Trust Agreement.

6. 5. Upon entry of the final decree and termination of the Trust, any residual assets of the Reorganized Debtors shall be transferred to and shall be the property of Delphi Automotive LLP.

7. The Debtors shall reserve sufficient funds to pay the Office of the United States Trustee the amount of any quarterly fees due pursuant to 28 U.S.C. § 1930 and any applicable interest due pursuant to 31 U.S.C. § 3717, which fees and interest, if any, shall be paid within ten (10) days of the entry of the final decree. Upon the payment of such quarterly fees, the Debtors shall simultaneously provide to the United States Trustee an affidavit indicating cash disbursements for the quarter in which the final decree is entered, and for any other relevant quarter or quarters.

8. Upon entry of the final decree, Kurtzman Carson Consultants, LLC ("KCC") shall (a) prepare final claims registers for the Clerk's Office pursuant to the guidelines for implementing 28 U.S.C. § 156(c) and (b) box and transport all claims to the Federal Archives, at the direction of the Clerk's Office. Such services will be charged to the Reorganized Debtors.

9. Except as expressly provided herein, upon entry of the final decree, KCC is released as claims and noticing agent in the Chapter 11 Cases under Bankruptcy Rule 2002, 28 U.S.C. § 156(c) and the Final Order Under 28 U.S.C. Section 156(c) Authorizing Retention and Appointment of Kurtzman Carson Consultants LLC as Claims, Noticing, and Balloting Agent for Clerk of Bankruptcy Court, In re DPH Holdings Corp, et. al., No. 05-44481 (Bankr. S.D.N.Y. December 1, 2005).

10. 6. This Order shall be served in the manner set forth in the Motion on (i) the Master Service List, (ii) the Rule 2002 Service List, (iii) all parties to outstanding adversary proceedings

7

and outstanding claims the Remaining Claims and Remaining Adversary Proceedings, and (iv) all known creditors of DPH Holdings.

11. 7. This Court shall retain jurisdiction to enforce or interpret its own orders pertaining to the Chapter 11 Cases, including, but not limited to, the Plan Modification Order and this Order.

*Remainder of Page Left Intentionally Blank*

12. 8. The Reorganized Debtors shall report on the status of outstanding administrative tasks at the Final Closing Status Hearing, scheduled for December ___, 2013, at __:__ _.m. (prevailing Eastern time), at which time this Court shall decide whether to enter a final decree in the Open Cases.

Dated: White Plains, New York
July ___, 2013

_____
UNITED STATES BANKRUPTCY JUDGE

| Summary report: | |
|---|---|
| **Litéra® Change-Pro TDC 7.5.0.10 Document comparison done on 7/29/2013 3:36:56 PM** | |
| **Style name:** Option 3a Strikethrough Double Score No Moves | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:**dm://CHISR02A/962337/4 | |
| **Modified DMS:** dm://CHISR02A/962337/7B | |
| **Changes:** | |
| Add | 43 |
| Delete | 27 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format Changes | 0 |
| **Total Changes:** | 70 |