Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 05-44481-rdd

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5

6   In the Matter of:

7

8   DPH HOLDINGS CORP., ET AL.,

9

10           Debtors.

11

12   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

13                   * REDACTED VERSION *

14                   U.S. Bankruptcy Court

15                   300 Quarropas Street

16                   White Plains, New York

17

18                   July 30, 2013

19                   1:10 PM

20

21

22   B E F O R E :

23   HON ROBERT D. DRAIN

24   U.S. BANKRUPTCY JUDGE

25

Page 2

1    Notice of Agenda Proposed Eighty-Third Omnibus Hearing

2    Agenda (Continued)

3

4    Application for Final Decree Reorganized Debtors Motion for

5    Final Decree and Order Pursuant to 11 U.S.C. Sections 105,

6    350(a) and 1142 Fed. R. Bankr. P. 3022, and Local Bankr. R.

7    3022-1 Closing the Bankruptcy Cases and Providing Related

8    Relief

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sherri L. Breach, CERT*D-397

1   A P P E A R A N C E S :

2   BUTZEL LONG

3        Attorneys for Debtor

4        1500 West Jefferson, Suite 100

5        Detroit, Michigan 48226

6

7   BY:  DAVID J. DEVINE, ESQ.

8        BRUCE L. SENDEK, ESQ.

9

10   SKADDEN ARPS SLATE MEAGHER & FLOM, LLP

11        Attorneys for Debtor

12        155 North Wacker Drive

13        Chicago, Illinois 60606

14

15   BY:  JOHN WM. BUTLER, JR., ESQ.

16        BRANDON M. DUNCOMB, ESQ.

17        AL HOGAN, ESQ.

18

19   FOX ROTHSCHILD, LLP

20        Attorneys for DSSI

21        75 Eisenhower Parkway, Suite 200

22        Roseland, New Jersey 07068

23

24   BY:  RICHARD M. METH, ESQ.

25

1   TOGUT, SEGAL & SEGAL, LLP

2        Attorneys for DPH Holdings Corp.

3        One Penn Plaza

4        New York, New York 10119

5

6   BY:  NEIL BERGER, ESQ.

7        STEVEN S. FLORES, ESQ.

8        RICHARD GOLDMAN, ESQ.

9

10  KING & SPALDING, LLP

11       Attorneys for General Motors

12       1185 Avenue of the Americas

13       New York, New York 10036

14

15  BY:  SCOTT DAVIDSON, ESQ.

16       ARTHUR J. STEINBERG, ESQ.

17

18  UNITED STATES ATTORNEY'S OFFICE

19       Attorneys for U.S. Trustee

20       86 Chambers Street

21       New York, New York 10007

22

23  BY:  CRISTY IRVIN PHILLIPS, ESQ.

24

25

Page 5

1    KELLEY, DRYE & WARREN, LLP

2         Attorneys for Tata International Corp.

3         101 Park Avenue

4         New York, New York 10178

5

6    BY:  GILBERT R. SAYDAH, JR., ESQ.

7

8    STATE OF MICHIGAN - OFFICE OF THE ATTORNEY GENERAL

9         Attorneys for Michigan Dept. of Environmental Quality

10        333 Bridge Street NW, #1300

11        Grand Rapids, Michigan 49504

12

13   BY:  CELESTE GILL, ESQ.

14

15   APPEARING TELEPHONICALLY:

16   JAMES SUMPTER

17   CHIP BOWLES

18   ADAM BRUSKI

19   LOUIS CHIAPPETTA

20   SEAN CORCORAN

21   CYNTHIA HAFFEY

22   TOM RADOM

23

24

25

Page 6

```
 1                    P R O C E E D I N G S

 2              THE CLERK:  All rise.

 3              THE COURT:  Please be seated.

 4         Okay.  Good afternoon.  In re: DPH Holdings.

 5              MR. BUTLER:  Your Honor, good afternoon.  Jack

 6    Butler from Skadden Arps here with a number of other law

 7    firms in connection with the continued hearing on the

 8    eighty-third omnibus agenda, which was filed at Docket

 9    Number 22109.

10         The only matter on the agenda this afternoon is

11    the motion for final decree.  If I can, Your Honor,

12    introduce a couple of people in connection with that --

13              THE COURT:  Okay.

14              MR. BUTLER:  -- so the Court's aware as to who is

15    here.

16         First,  Mr. John Brooks who is the president of

17    DPH Holding is present in the courtroom today.

18         Second, while I'll be presenting the motion in

19    chief and also responding to the objectors, I'm responding

20    and Skadden Arps is responding to all the objections other

21    than that filed by General Motors.  And dealing with the

22    General Motors' objection is Mr. Berger from Togut --

23              MR. BERGER:  Good afternoon, Judge.

24              MR. BUTLER:  -- who is here in connection with

25    that.  We also have present in the courtroom Mr. Sendek and
```

Page 7

1    his colleagues from the Butzel law firm who are dealing with

2    all the adversary proceedings.

3              MR. SENDEK:  Good afternoon, Your Honor.

4              MR. BUTLER:  So I think that represents the folks

5    on behalf of DPH, Your Honor.

6              And if I can, Your Honor, I'm -- I'm just going to

7    go through and present the motion and why we're here and

8    what we're trying to accomplish, if that's okay.

9              THE COURT:  Okay.

10             MR. BUTLER:  Your Honor, a little more than five

11   years ago I -- I stood before Your Honor when we were

12   seeking to get the modified plan approved by the Court and

13   Your Honor confirmed or approved -- approved the

14   modifications to the prior confirmed plan of reorganization

15   and the parties went about their business closing that.

16             And if you remember, at the time the central

17   feature of that plan was a master disposition agreement.

18   And that agreement provided for the transfer of the debtors'

19   operating businesses to GM and also to an acquisition entity

20   owned primarily by lenders under the debtor-in-possession

21   credit facility, also by GM, and by the Pension Benefit

22   Guarantee Corporation.  That entity is now known as Delphi

23   Automotive, PLLC, and during my presentation I'll refer to

24   them as new Delphi.

25             The key consideration paid in connection by GM and

Page 8

1    new Delphi for the transfer of those core businesses

2    included a full credit bid of approximately $3.5 billion

3    from the debtor-in-possession credit facility -- hose are --

4    those, if you recall, Your Honor, were the suits that the

5    Court finally recognized back then as being the suits with

6    the right -- the right bid; New Delphi's obligation to

7    distribute up to $300 million to general unsecured

8    creditors, which as -- as of this date has still not been

9    distributed by new Delphi; and a XXXXXX facility provided by

10   General Motors to fund the wind-down of the reorganized

11   debtors.

12           There were assets that were not transferred to GM

13   and new Delphi, and Your Honor will remember at the time of

14   the plan modification hearing we had a big colored chart

15   with three buckets as to what stayed in DPH Holdings, the

16   reorganized debtors, what went -- went to General Motors and

17   what went to new Delphi.  And DPH or the reorganized debtors

18   were tasked with the obligation to monetize those assets and

19   to fulfill the various obligations under the modified plan,

20   and to bring the Chapter 11 cases to a close by the end of

21   the calendar year 2013.  That was a long time in the future

22   at the time we were having those discussions.  It was more

23   than five years looking forward, and that was also --

24   December 31st, 2013 was also when GM's obligation to fund

25   the wind-down terminates.

Page 9

1           Now just a note here, Your Honor, I think you're

2     aware because we had a hearing on -- last Thursday.  There

3     -- there may be a dispute between GM and the reorganized

4     debtors as to those funding obligations.  We're not involved

5     in that dispute.  That dispute is being handled by Mr.

6     Steinberg and Mr. Berger, if it ever ends up in front of

7     Your Honor.

8           I read the transcript of Thursday's hearing and we

9     have provided an order, which we'll go through later in the

10    presentation, in which we have proposed language on behalf

11    of DPH to make it clear that nothing we're seeking today --

12    today -- to do today is to impact on that dispute, which is

13    completely separate.

14          The work that the reorganized debtors had to do

15    has been substantially completed.  There were -- there's

16    only -- of the some 20,000 prepetition and post-petition

17    claims that were filed, there are 17 or 18 left.  Those fall

18    into three buckets:  Workers' compensation; the ACE

19    controversy, which Your Honor is very familiar with, and

20    some environmental claims.  And I believe the MDEQ is on the

21    telephone and the U.S. -- United States is represented here

22    in court today.

23          The -- in addition to those -- to those 17 claims,

24    there are also some potential state law claims that have

25    popped up since the effective date occurred under the

Page 10

1    modified plan.

2            With respect to avoidance actions, the 177 or so

3    actions that existed early on that moved down to about 66

4    the last time I was before Your Honor when we were trying to

5    craft adversary procedure resolution mechanics, which the

6    Court adopted at that time, are now down effectively to

7    four.  While there are a few others that are open, in terms

8    of -- of there are only four that have the potential of

9    actually coming to trial before Your Honor as we sit here

10   today.

11           In terms of asset dispositions, there have been 20

12   properties that have been sold.  In fact, perhaps with one

13   perhaps exception, basically all of the sellable property

14   has been sold, and that's generated about $34 million in

15   proceeds.

16           The avoidance actions have generated something

17   south of $25 million in proceeds to date, and those numbers

18   are both important because the GM facility, which had at one

19   point a balance of $21 million on it is, as we stand here

20   before you today, at zero.  And that's because of the

21   mechanics of that facility, things get paid back down to

22   them, and other expenses obviously have been funded over the

23   last five years.

24           So when it -- we are left with really are -- are

25   three properties at Roots Down, Ohio, one in Flint and one

Page 11

1   in Saginaw that are the subject of the MDEQ and -- and/or

2   the U.S. EPA claims that we're -- we're also dealing with as

3   well.

4          So, Your Honor, in looking at where we are and

5   where we need to go, Mr. Brooks sat down with us a month or

6   two months ago and sort of said, how do we actually put

7   together a blue print and a time table on how we get from

8   here to December 31st which was the date that had always

9   been agreed to was the date that we needed to be done and

10  the date --

11         THE COURT:  Let's -- let me be sure.  That's the

12  date when the obligation of GM to fund the wind-down costs

13  ends.

14         MR. BUTLER:  Correct.

15         THE COURT:  There's -- there's no other -- is

16  there any other significance to that date?

17         MR. BUTLER:  No, Your Honor.  The significance --

18  that's the significance.  Right.  If you don't have any --

19  and the concern Mr. Brooks has -- he's a businessman --

20         THE COURT:  Right.

21         MR. BUTLER:  -- is if I don't have any cash to

22  operate -- and there is -- certainly there is -- there is a

23  residual balance, but not a large residual balance in the --

24  in DPH now.  But I -- I -- certainly not anywhere near

25  what's needed to fund the balance of the obligations to

Page 12

1   close up these estates.  Mr. Brooks, I think, when we talked

2   to him he said, what is -- what do we do; how do we get all

3   of this sorted out so that, you know, we can resolve all

4   these issues to everyone's satisfaction.

5           And to the extent people aren't satisfied, how do

6   we get in front of Judge Drain and have him make whatever

7   decisions need to be made over the next six months.

8           And Mr. Brooks' inquiry is what led to the filing

9   of the motion for final decree.  It's not dissimilar from

10  motions that our firm has filed in a variety of other cases.

11  When it's time, there's -- there's still work to be done,

12  but it's quite limited compared -- when you compare it to

13  everything else that has occurred, and it's important to

14  have transparency.

15          There's always in these cases, Your Honor, and I'm

16  sure Your Honor has seen in other cases, there is also the

17  last person standing syndrome that occurs in cases, whether

18  it's in the litigation side, on the claims side.  People

19  tend to hold out until the end, and when is the end, and at

20  some point there needs to be an end so people can actually

21  sort things out.  And if they can't sort them out, that Your

22  Honor has -- can make those determinations.

23          So among -- for example, among the 177 adversary

24  proceedings, I haven't been sitting in the courtroom, but

25  I've at least been told that Your Honor hasn't been called

Page 13

1   upon yet to determine any of them; that they have all been

2   resolved and there are now four left.  And the goal is to

3   actually get those four resolved also, but the fact is if

4   they don't get resolved, the -- you know, we also can't let

5   last person standing syndrome cause us to not actually get a

6   resolution and -- and it may be necessary to submit those to

7   Your Honor and have those tried.

8            And so we laid all of this out.  It was noticed

9   out to all the service lists and we ended up receiving a

10  handful of objections.  And let me just sort of recap what

11  those objections are.

12           We have two objections from the environmental

13  regulators from the United States and from the MDEQ, the

14  Michigan Department of Environmental Quality.  We have four

15  objections and joinders from defendants in adversary

16  proceeding actions.  We have an objection from General

17  Motors, which was actually part of a broader objection

18  dealing with the funding issues as well.  And then we have,

19  as we seem to draw in almost everything we do in this case,

20  we have an objection from Mr. Sumpter who has filed, in

21  fact, two objections to this -- to the relief being sought

22  here.

23           And -- but when you boil it down, in fact -- when

24  you boil it down, in fact, to where we're at, at least from

25  the company's perspective I think the good news is there is

 1    not a lot of there there.  There -- it seems to me that

 2    there are discreet issues that Your Honor may have to decide

 3    today, but we tried very hard to try to craft this in a way

 4    where this timetable can be approved today, if Your Honor is

 5    inclined to do that, and issues, if they come up after

 6    there's been an opportunity to try to resolve things

 7    consensually, if they can't be resolved consensually, then

 8    we'll end up -- someone will end up -- one of the law firms,

 9    depending on what issue it is, will come back to Your Honor

10    and ask Your Honor to weigh in on what you want to do and

11    what the Court thinks is appropriate at that time.

12             And so this is -- you know, frankly, you know,

13    this is from -- from, you know, Mr. Brooks' position and

14    certainly from our position at Skadden, you know, this is

15    kind of blueprint day, trying to set up the schedule and

16    trying to avoid what I think otherwise, absent a schedule,

17    is a real possibility, if not a likelihood that we could

18    have mismatches in the timing of issues and end up in a

19    place where DPH is insolvent in January or February of next

20    year because these things weren't thought out and brought --

21    and all lined up, and there is no ability for Your Honor to

22    -- to make determinations then on how the funding might

23    occur.  And that -- that's a place we don't want to be.

24             And so I think that's -- that's what's driving

25    this from our perspective, is to try to make sure we have

Page 15

1    things outlined.

2            So if I look at the objections, in addition to

3    whatever questions Your Honor may have, let me just briefly

4    talk about them because they fall into sort of three or four

5    buckets.

6            One bucket are the objections from the adversary

7    proceeding defendants.  There was an objection filed by

8    Republic Engineering Products at 22082.  They've now settled

9    their adversary and that issue -- I think chambers has been

10   advised that that objection has been withdrawn.

11           It's an important objection because, frankly, the

12   other objectors -- two of the other objectors join in that

13   objection, and the third -- the fourth objector actually

14   files an objection, but when you read it and you compare the

15   words, if you do a compare-write (sic), it's essentially the

16   same objection filed later.  I mean, it's almost word for

17   word.

18           And so the -- you know, what -- what does that

19   objection -- there is one -- there is one difference, but

20   what do those objections say?  Well, those objections

21   basically say we're prejudiced because if we don't have the

22   timetable under the adversary procedures order that we have

23   signed up for, we're prejudiced and we can't possibly

24   litigate this between now and the end of the year, some five

25   or six months from now.  And, therefore, we have to have

Page 16

1     more time to fully investigate these issues, notwithstanding

2     the length of this litigation that it's been pending and the

3     issues associated with it.

4                And those objectors include Pre Tech Machine at

5     22085, which filed a joinder, Tata which filed a joinder at

6     22092, and then the separate objection of DSSI, LLC at 22086

7     which tracks Republic's objection.

8                And from at least our perspective, when we get

9     into this, the relief we're asking today is not asking Your

10    Honor to change the procedures with respect to those

11    matters.  It is simply the order we're proposing that Your

12    Honor enter today is an order that recognizes the realities

13    of -- of the ultimate timetable, but essentially provides

14    for the debtors' through the Butzel firm to go out, and Mr.

15    Sendek to go out and try and negotiate consensually with the

16    remaining four litigants about how the -- their matter

17    should be brought on for disposition or settled over the

18    next four or five months.  And absent that, Mr. Sendek will

19    come back to the Court with proposed procedures.

20                I'll point out that's exactly what was

21    contemplated in the procedures that I helped craft with Mr.

22    Sendek and the Court back when they were put in place.  And,

23    specifically, paragraph 3(m) of those procedures

24    specifically provides those procedures can be modified at

25    any time, either by consent or by actually contacting the

Page 17

1    Court for a chambers conference.  It doesn't even require a

2    formal court hearing.  And the Court will determine what's

3    appropriate in those circumstances.

4              So it's not as though anyone has an entitlement to

5    those procedures.  They are very clear on their face,

6    subject to modification at any time.  And that's really --

7    that -- that bucket of objections really goes to that

8    timetable.

9              The next bucket of objections --

10             THE COURT:  Well, can I -- can I interrupt you on

11   that --

12             MR. BUTLER:  Sure.

13             THE COURT:  -- because I -- I just want to be sure

14   I understand what -- what you said.  It may be that this is

15   already clear to the four objectors.

16             The order says that, in paragraph 2, that "To the

17   extent any of the remaining adversary proceedings are not

18   resolved by August 1, 2013, the reorders -- reorganized

19   debtors shall present modified procedures to the Court

20   providing for the disposition of the remaining adversary

21   proceedings prior to November 30, 2013."

22             So that contemplates you're presenting something

23   or Butzel will be presenting something to me.  I'm assuming

24   we'll have a -- I take that to mean we would have a pretrial

25   conference on it --

1            MR. BUTLER:  Right.

2            THE COURT:  -- and go over that.  The other

3    parties to the adversaries, obviously, could weigh in then

4    as to those procedures.

5            And then it says, "To the extent that any of the

6    remaining claims are not resolved prior to September 1,

7    2013, the reorganized debtors shall notice such claims for

8    disposition on a sufficiency or an evidentiary basis for a

9    hearing scheduled on October 24, 2013 and November 14, 2013,

10   respectively, or such other dates as the Court may schedule

11   prior to November 30, 2013."

12           Now that, at least, may have an implication that

13   I've already preapproved that schedule.

14           MR. BUTLER:  Yeah.

15           THE COURT:  And -- and obviously that's something

16   you all want, so it may be more than an implication.

17           MR. BUTLER:  Well, no.  Actually, Judge, those are

18   two different things.  Maybe they should be in two different

19   paragraphs.

20           THE COURT:  Okay.

21           MR. BUTLER:  One deals -- the last sentence deals

22   with remaining claims --

23           THE COURT:  All right.

24           MR. BUTLER:  -- which aren't -- which aren't

25   adversary proceedings.

Page 19

1            THE COURT:  All right.  So this is not adversary

2      proceedings.

3            MR. BUTLER:  No.  Correct.  And -- and we can put

4      it in a separate paragraph to drive that point home.

5            THE COURT:  All right.

6            MR. BUTLER:  The point was we -- the claims are

7      being dealt with on one track.  The adversary proceedings on

8      the other track.  The adversary proceedings are very clear.

9      The current procedures for those are very clear under 3(m)

10     which basically says the parties at any time can -- can

11     modify them by -- with consent or, absent that, any --

12     either party can come to Your Honor in a chambers

13     conference, as Your Honor talked about, and seek to modify

14     them.

15           THE COURT:  So this order that you're seeking

16     would not specify today that those adversary proceedings

17     must be resolved by November 30th?

18           MR. BUTLER:  Well, no.  It simply says, Your

19     Honor, that the -- I think the implication of paragraph 2 is

20     that the procedure we present to you would be presented for

21     that purpose.  But Your Honor --

22           THE COURT:  Right.

23           MR. BUTLER:  -- but Your Honor can determine that

24     I'm not going to do that, right?

25           THE COURT:  Yeah.

1            MR. BUTLER:  I mean, we don't -- you know -- you

2      know --

3            THE COURT:  It may be completely hypothetical.  I

4      mean --

5            MR. BUTLER:  Right.

6            THE COURT:  -- as I understand, at least as the

7      motion states, these adversaries are up for mediation --

8            MR. BUTLER:  Right.

9            THE COURT:  -- in August.

10           MR. BUTLER:  Correct.

11           THE COURT:  So this may be much ado about nothing.

12     But assuming that there -- the mediations are unsuccessful,

13     although I hope they will be, clearly the debtors would like

14     them to be resolved by November 30th, but this order does

15     not require that they be resolved by November 30th.  There's

16     this procedure in place where the debtors will come before

17     me promptly, I'm assuming sometime in August, and say, you

18     know, we would like to set a discovery deadline of X, to the

19     extent discovery hasn't been completed, and any dispositive

20     motions by Y, an evidentiary hearing or a trial, if

21     necessary, by November 14th or in any event before November

22     30th.  And whoever hasn't settled will say, no.  I need, you

23     know, nine months more for discovery and then I'll decide

24     what's appropriate.

25           MR. BUTLER:  Right.  Your Honor, I think that's

Page 21

1   correct.  I mean, we -- obviously, we would like -- you

2   know, we would like the Court -- from the debtors'

3   perspective, we would like the Court to -- to -- you know,

4   to adopt the November 30th date today --

5          THE COURT:  Right.

6          MR. BUTLER:  -- as it relates to it because,

7   ultimately, if we can't get them done, you know, that's --

8   you know, that's a problem.  But, you know, we recognize

9   that at the moment the 3(m) -- paragraph 3(m) of those

10  procedures controls.

11         And, you know, again, we're try -- what we're

12  trying to do here is be completely transparent to everybody,

13  including the Court because, I mean, obviously if the Court

14  said, you know -- you know, heck, there's no way I'm ever

15  going to do that, you know, we should obviously know that

16  today.  We're not asking the Court -- we're not asking the

17  Court to say, you know, there's no circumstance under which

18  a defendant who has not yet been heard from can present

19  something where I may make a different decision.  I mean, we

20  can't do that under the procedures.

21         THE COURT:  Well, clearly under the right

22  circumstances I could -- I could try all four of these by

23  November 30th.  I'm assuming that that won't happen because

24  at least some of them will settle, at least based on your --

25  the parties' track record so far.

1           But I just wanted to make -- I just wanted to

2    understand what it was that you were seeking through --

3           MR. BUTLER:  Right.

4           THE COURT:  -- that and --

5           MR. BUTLER:  Yeah.  And the last sentence is --

6           THE COURT:  And --

7           MR. BUTLER:  -- claims, Your Honor.

8           THE COURT:  And, frankly, it did seem to me that

9    the reason, besides sort of good order and planning, behind

10   this, which is the fact that the GM funding would stop year-

11   end may be less applicable to these adversary proceedings

12   than to the environmental matters because, again, I don't

13   know what the debtor has budgeted in its offers, but it

14   would seem to me that the funding of an environmental trust

15   is much more of an issue that may require some -- this is

16   leaving aside whether it's required under the -- under the

17   MDA, but may require more planning and more advance funding

18   than simply carrying the cost of litigating the preference

19   case.

20          MR. BUTLER:  Well, Your Honor -- well, here's how

21   we --

22          THE COURT:  And -- and the debtor is clearly not

23   out of money completely, so --

24          MR. BUTLER:  No.  No.  And here's how we think

25   about that, Judge, I mean, just from the debtors'

1    perspective.  We cited in our -- in our reply brief, and I

2    think actually in our original brief, but certainly in our

3    reply brief, we -- we cited the cases that stand for the

4    proposition that you can close cases and issue final decrees

5    when there's appellate litigation ongoing.

6              There is also a body of law, quite candidly, that

7    says that you can close cases when there's adversary

8    proceedings still extant, right, because those -- that --

9    you know, as my colleagues continue to remind me, that's

10   money in, not money out presumably if you're dealing with a

11   -- a preference litigation.

12             THE COURT:  Right.

13             MR. BUTLER:  You know, and -- and -- but here's

14   where I think it makes a difference and the reason we're

15   pushing to get -- and urging the Court to get this done

16   promptly and the parties to get done.  This all has been

17   going on for a very long time.  People can -- you know, we

18   -- we are left to the really last person standing type of

19   litigation and without deadlines we're concerned that people

20   just aren't actually going to resolve those issues.  And it

21   becomes --

22             THE COURT:  So that --

23             MR. BUTLER:  -- and it becomes relevant, Your

24   Honor --

25             THE COURT:  That's -- that's fine.  I mean, it's

Page 24

1    perfectly appropriate for a debtor to say, enough's enough.

2    I want a pretrial conference.  I want to set a trial date.

3    The only question was whether it has to be by November 30th

4    or not --

5             MR. BUTLER:  Right.

6             THE COURT:  -- and I think I have the answer on

7    that.

8             THE COURT:  And, Judge, the other point I would

9    make -- observe on this is obviously to the extent that

10   these matters are resolved and we know what the money coming

11   in is, that may well inform whatever negotiation Mr.

12   Steinberg and Mr. Berger are having about the final

13   disposition of the GM facility because I think we would all

14   agree -- all the counsel would agree every dollar in is a

15   dollar less that anyone's looking to GM for because the

16   money comes back to GM.

17            THE COURT:  Right.

18            MR. BUTLER:  I mean, that's the whole way this

19   facility works.  You know, money comes in.  GM gets paid

20   down to zero.  More money is needed.  Assuming GM thinks

21   it's appropriate or your judge -- Your Honor determines it,

22   money goes back out.  That's kind of how it works.

23            So --

24            THE COURT:  Okay.

25            MR. BUTLER:  There is -- as we're trying to

Page 25

1    resolve controversies, frankly, the more knowledge we all

2    have and the more information we have in, the less likely

3    there is to be controversy --

4            THE COURT:  All right.

5            MR. BUTLER:  That's the piece of it.

6            THE COURT:  So on the remaining adversary

7    proceedings, the debtors' laid out what it intends to do.  I

8    don't have any visceral reaction against that.  I think that

9    this schedule may work.  But it's clear that as far as

10   fixing that schedule is concerned, the next step will be --

11   if the adversary proceedings aren't settled, a request for a

12   pretrial conference with the debtors' request to implement a

13   schedule and the non-settling defendants standing before me

14   and saying, it's too short, right?

15           Okay.  So do -- do you -- do the objectors have

16   any -- any remaining issues then, given that -- that

17   colloquy and that record?

18           MR. METH:  Would Your Honor like me to approach --

19           THE COURT:  Somewhere near --

20           MR. METH:  -- the podium?

21           THE COURT:  -- a microphone.  Yes.

22           MR. METH:  Good afternoon, Your Honor.  For the

23   record, Richard M. Meth, Fox Rothschild, LLP, appearing as

24   local counsel for DSSI, LLC.  Also on the phone appearing

25   via Court Call is primary counsel for DSSI, Mr. Bowles.

1            Your Honor properly pointed out one of the many

2     concerns that we had, which appeared to be an attempt,

3     especially in the revised proposed order by the debtors to

4     unilaterally have this set and have this Court establish in

5     stone a drop-dead deadline of November 30th for the trial of

6     all of the remaining adversary proceedings.

7            THE COURT:  Yeah.  But -- but we've addressed

8     that.

9            MR. METH:  That's one thing.

10           But the other thing that I think is extremely

11    important for this record to reflect, and as this Court

12    obviously remembers very, very well is the distinction that

13    exists between the DSSI adversary proceeding and virtually

14    all of the other ones not -- not -- the least of which are

15    the three other remaining ones or four other remaining ones.

16           As the record is clear, the adversary proceeding

17    procedures order was entered on the docket on February 15th,

18    2012.  There was subsequently entered, as a result of motion

19    practice and -- involving the trust and DSSI an order on

20    June 25th of 2012, and most recently on April 15th of 2013

21    an order which expressly stated that all of the timelines,

22    all of the deadlines that were established by the adversary

23    proceedings procedures order did not even commence until

24    April 15th of this year.

25           So although Mr. Butler would like the Court -- and

Page 27

1   perhaps he may be totally operating under that assumption

2   that DSSI, like all the other defendants, has been operating

3   under the timeline established by that order since February

4   or March of 2012, in fact, that is not the case here and

5   that that kind of accelerated timeline that the debtor is

6   seeking is -- would be extremely prejudicial to the rights

7   of DSS, LLC, especially given the fact -- DSSI, LLC --

8   especially given the fact that we have over 12,000

9   transactions involved.

10           So notwithstanding the fact that, yes, we're going

11  to be proceeding to mediation on August 19th, there is not

12  even a date -- the date set for the Rule 15 and Rule 4(m)

13  hearing hasn't even been set until the end of December, and

14  thereafter the adversary proceeding procedures order

15  contemplates another 182 days for the resolution -- for

16  discovery, for summary judgment motions to the extent that a

17  merits trial may, in fact, be necessary.

18           Now that does not in any way connote that DSSI,

19  LLC doesn't want to reach a settlement of this matter.  We

20  have been attempting to at various times since the motions

21  were commenced.  But unfortunately so far we have not been

22  able to do so.

23           But the timeline --

24           THE COURT:  But I think -- I think it's -- it's

25  also fair to say that a substantial reason for that timeline

Page 28

1    being so lengthy is that the debtors were dealing with so

2    many adversary proceedings.  And I understand that there are

3    unique aspects to every case that may affect discovery, but,

4    frankly, I've never had a preference case have such a

5    discovery cutoff if it's just one debtor and one trustee

6    versus one defendant.

7             So, you know, we'll -- we'll deal with it when it

8    comes up.

9             MR. METH:  I understand that, Your Honor.  The

10   only other thing I would say is although initially we could

11   understand the procedures that were set forth and the

12   timelines that were set forth because of the 66 remaining

13   adversary proceedings, at no time either in conjunction with

14   the June 25th, 2012 order or the April 15th, 2013 order was

15   there any indication ever given to DSSI that there was going

16   to be a modification of that.  We continued to operate and,

17   in fact, those orders both expressly recognized --

18             THE COURT:  Okay.  Your clients had the money,

19   too.

20             MR. METH:  I'm sorry.

21             THE COURT:  Your clients had the money, too.

22             MR. METH:  Well, that -- that is --

23             THE COURT:  I mean, I just --

24             MR. METH:  That assumes --

25             THE COURT:  -- I don't -- I think we're kind of --

1    I mean --

2              MR. METH:  To -- to the extent --

3              THE COURT:  -- there's nothing really before me on

4    this issue, so I -- I don't really --

5              MR. METH:  Well, it only --

6              THE COURT:  -- unless you're here trying to, you

7    know, sensitize me for the next prehearing conference on

8    this.  But I -- I just want to -- I'll deal with it then.

9              MR. METH:  Okay.  I just want to --

10             THE COURT:  I --

11             MR. METH:  Your Honor --

12             THE COURT:  And I urge you all -- I mean, look,

13   I'm assuming you're going to go to mediation informed --

14             MR. METH:  Absolutely.

15             THE COURT:  -- on the issues and that the debtors

16   will be, too, and that hopefully that will lead to a

17   settlement, and if not, getting informed should lead to

18   resolution of this.

19             I also -- you know, as I said to Mr. Butler, it

20   may be that the need to tap into GM as far as funding is

21   less significant when you're dealing with claims against

22   someone where the debtor does take the -- you know, people

23   -- people get paid out of the proceeds.  So, you know, I

24   think it may be a different issue.

25             MR. METH:  No.  I -- I certainly didn't want to,

Page 30

1   in fact, repeat what the Court had itself said, and I also

2   want to make clear that our -- notwithstanding the Court's

3   recognition and apparently Mr. Butler's recognition that

4   November 30th is their desired date and that this Court is

5   making no rulings in any way, shape or form that the

6   proposed language of the revised order is itself

7   problematical.  So --

8           THE COURT:  Well, it's -- it's only, I think,

9   because this second sentence is in the same paragraph as --

10          MR. METH:  Well --

11          THE COURT:  -- as -- you know, the second sentence

12   really deals with the remaining claims.  So I --

13          MR. METH:  Well --

14          THE COURT:  -- it just says that they'll --

15   they'll present modified procedures to have them resolved on

16   November 30th, which is -- which is fine.  I think that

17   should promptly happen so that we can  --

18          MR. METH:  Well, I still would --

19          THE COURT:  -- we can focus on it.

20          MR. METH:  -- would request that -- that we be

21   able to try to work with counsel over an appropriate

22   language because the intimation is that providing for the

23   disposition by November 30th at least -- it implies that, in

24   fact, they shall be resolved by that day.

25          THE COURT:  Well -- okay.

1              MR. METH:  And that is of grave, grave concern as

2    --

3              THE COURT:  I didn't --

4              MR. METH:  -- as the Court itself noted.

5              THE COURT:  I didn't -- I didn't view it that way.

6    It was really the -- my reading of the second sentence that

7    gave me a problem.

8              MR. BUTLER:  Your Honor, and I -- and I don't

9    think you can read that in light of this record.

10             THE COURT:  Okay.

11             MR. BUTLER:  And I -- and I -- Mr. Meth knows, you

12   know, he can cite all the --

13             THE COURT:  I mean, he can say to provide for as

14   opposed to providing for.

15             MR. BUTLER:  Yeah.

16             MR. METH:  We'll certainly be delighted --

17             THE COURT:  That's fine.

18             MR. METH:  -- to work with either Mr. Butler or

19   other counsel concerning language that would be acceptable

20   to all parties.

21             MR. BUTLER:  I'm not looking to --

22             THE COURT:  I don't want to drag it out.

23             MR. BUTLER:  Yeah.

24             THE COURT:  That's -- that's the only thing.

25             MR. METH:  Well, we don't want to drag it out

1    either, Your Honor.

2              THE COURT:  All right.

3              MR. METH:  That's not our desire at all.

4              THE COURT:  I -- I know what this -- what the

5    sentence says already.

6              Okay.

7              MR. SAYDAH:  Good afternoon, Your Honor.  For the

8    record, Gilbert Saydah of Kelley, Drye & Warren on behalf of

9    Tata International Corp.  We are one of the remaining

10   preference defendants.

11             THE COURT:  Right.

12             MR. SAYDAH:  Your Honor, I'm not going to rehash

13   all of this.  I understand where Your Honor is going with

14   this and, Your Honor, we are trying to move forward and --

15   and resolve this consensually, believe me.

16             With respect to the schedule in terms of proposing

17   procedures to Your Honor, my client is a corporation based

18   out of India.  It's presented some issues with respect to

19   scheduling, meet and confers, and settlement discussions.  I

20   would appreciate --

21             THE COURT:  Well, are you -- are you up for

22   mediation in August, too, or --

23             MR. SAYDAH:  We have not yet scheduled a

24   mediation.

25             THE COURT:  You're not.  Okay.

1          MR. SAYDAH:  We, again, are trying to work out

2     times to -- we've had an initial meet and confer, but we

3     were attempting to have an additional meet and confer -- the

4     attorneys have conferred.  We're trying to get the clients

5     together.  It's --

6          THE COURT:  Okay.

7          MR. SAYDAH:  -- difficult with people in multiple

8     continents and -- but, Your Honor, we will certainly work

9     with them to move this process forward.  We would appreciate

10    the opportunity of at least ten days from a proposed

11    procedures before having a chamber conference with Your

12    Honor in order to see their proposed schedule, be able to

13    talk to --

14         THE COURT:  Well, the one thing -- the one thing I

15    did add to this sentence was that the reorganized debtor

16    shall promptly present modified procedures to the Court.  So

17    that should -- that should give you time to read them and --

18    and appear, you know, reasonably informed having talked to

19    your client.

20         MR. SAYDAH:  Understood, Your Honor.  And we -- we

21    will certainly, as soon as we're -- we get them we will

22    promptly jump on that.

23         Your Honor, one point I would just raise that --

24    that seems problematic is there's really no evidence in the

25    record with respect to the urgency of the relief being

Page 34

```
 1    requested today.  I mean, Mr. Butler's presented a very --
 2    very compelling argument, but it's just argument.  It's not
 3    evidence.  There's -- there's apparently money in the
 4    coffers with respect to the proceeds of the avoidance
 5    actions.  Your Honor's point is incredibly valid that it may
 6    not even be necessary to have a drop dead date of November
 7    30th with respect to these avoidance actions.
 8              My concern from one of Mr. Butler's statements was
 9    that they're not going to have the money to be able to
10    continue doing any of the wind-up post-December.  If that's
11    so, and they're not going to be able to present us with the
12    results of discovery, if they're not going to be able to
13    respond to requests, I'm curious as to exactly how dire the
14    situation is and how urgent it actually must be --
15              THE COURT:  Well --
16              MR. SAYDAH:  -- with respect to these issues.
17              THE COURT:  -- I understand that you would be
18    curious about that, wanting to know how much money the other
19    side has to fight the case.  But I think -- look, I think
20    that as of the prehearing conference date, I'll want to know
21    from Butzel law why this has to be done by the date they're
22    -- they -- they want it to be done by.
23              And I'm -- I -- I'm assuming that if that's a hard
24    and fast date, focusing on a resolution by December 31st,
25    I'll be asking about the money that they -- that -- you
```

1  know, whether the estate -- is this being driven by the

2  estate not having sufficient funds to conduct a litigation

3  otherwise.  And -- because, you know, normally, two weeks to

4  a month doesn't really matter that much.  But, you know, if

5  it's a deadline, I may have to know why it matters that

6  much.

7         On the other hand, you know, it's time to get

8  these done.  So even if -- even if the answer to my question

9  is, oh, we have -- we have a few million dollars in the

10  coffers, I'm still going to want to get it done and -- and

11  not -- not wait until, you know, late 2014 to do it.

12         So I -- that's part of the information I'll want

13  if you don't settle this and the debtors ask for a pretrial

14  conference to establish, you know, discovery cutoff and

15  briefing dates and all of that sort of thing.

16         MR. SAYDAH:  Understood, Your Honor.  Thank you

17  very much.

18         THE COURT:  Okay.

19         MR. BUTLER:  Your Honor, so I -- I think that's

20  the first bucket which is the adversary proceeding bucket.

21         THE COURT:  Right.

22         MR. BUTLER:  While we're in the same paragraph and

23  in the same sentences, I think that -- let me deal with, if

24  I can, the first half of the -- the only two objectors --

25  well, you know what?  Let me -- let me, if I can, just so

Page 36

1    there's some cogency to this presentation, let me deal with

2    Mr. Sumpter now --

3              THE COURT:  Okay.

4              MR. BUTLER:  -- if I can.

5              Mr. Sumpter filed two objections at 22089 and at

6    22108 -- 106 in which he made generalized allegations that

7    an alleged discontinuation of supplemental extended

8    disability benefits somehow gave rise to violations of order

9    that should preclude the entry of a final decree.  The

10   objection is not more articulated in that, although there

11   was lots of stuff attached to it.

12             And as I think Mr. Sumpter acknowledged and

13   admitted, he filed yet another lawsuit in Indiana which I

14   understand is in addition to the lawsuit in Indiana that was

15   the subject of a proceeding before Your Honor recently and

16   the subject, I believe, of an order from Your Honor

17   enjoining Mr. Sumpter with respect to the alternative

18   Indiana proceeding.  This is a -- a second one.

19             But I -- but in terms of having any legitimate

20   basis or cause to oppose the relief being sought today, we

21   didn't see it on the -- on the face of the -- on the face of

22   the -- of the objection, which I think largely when we

23   compared them were duplicates of each other.  But,

24   nonetheless, they carry those separate docket numbers.

25             So, Your Honor, I don't know if Mr. Sumpter is

Page 37

1    present by phone or otherwise and wants to address them, but

2    we would ask that Your Honor overrule the objection.

3              THE COURT:  You're on the phone, right, Mr.

4    Sumpter?

5              MR. SUMPTER:  Yes, I am.  Excuse me.

6              THE COURT:  Okay.

7              MR. SUMPTER:  Yes, I am.

8              THE COURT:  All right.  Let -- let me -- I know

9    you represent yourself, although you've gotten a fair amount

10   of practice so far.

11             This motion does not seek an order closing these

12   cases today.  It seeks a closing of the case upon the

13   submission of a final report and a final order contemplating

14   that closing to be some time in December.  It would seem to

15   me that between now and December the issue you've raised in

16   the District Court -- is it Indiana again --

17             MR. SUMPTER:  Yes.

18             THE COURT:  -- will be dealt with either here --

19   in all likelihood here, or it may be in the Indiana Court.

20             I -- I just don't see why your objection is

21   pertinent at this point.  You may have thought that the

22   debtors were looking to close the case today, but that's --

23   that's really not the case.

24             MR. SUMPTER:  Well, my -- two concerns.  One is

25   based on what I saw the proposal to be; that they also were

Page 38

1    looking to wind-down DPHH.  I guess it was my thinking,

2    based on like how my other cases proceeded in District Court

3    in terms of timing, it won't be -- the possibility existed

4    strongly that it wouldn't be done by then.  And so there

5    wouldn't be a DPHH there at all.

6            The other part was as far as the closing of the

7    case, there's an order that -- that Your Honor issued back

8    when you did the OPED order that said that the debtor should

9    pay benefits -- my wording will be imprecise -- but I can

10   find it and read it if you would like --

11           THE COURT:  No, I'm familiar.  And you -- and you

12   cite it in your -- in your objection.

13           MR. SUMPTER:  Right.  Okay.  And so -- and I --

14   and I believe that according to what I've been able to read

15   about closing the case, that's -- that order should have

16   been followed and I would like for that -- I would like for

17   that order to be addressed.

18           I think my understanding is that you would -- you

19   have the means to sua sponte enforce that order because

20   that's the -- you know, that was a benefit that was in

21   payment until they decided to stop paying it last March.

22           THE COURT:  Okay.

23           MR. SUMPTER:  And it -- it's -- it's supposed to

24   continue until the end of January 2017.

25           THE COURT:  All right.  I guess I -- I have two

Page 39

1    thoughts on that besides the ones I already -- I already

2    said.

3              First, to the extent that DPH is looking for

4    authority to dissolve under applicable non-bankruptcy law,

5    it has to follow the procedures under Delaware law that you

6    have to do to do that.

7              As I take it, Mr. Butler, this order doesn't

8    sidetrack those procedures in that request?

9              MR. BUTLER:  It does not, Your Honor, as to the

10   liabilities that have been incurred since the emergence.

11             THE COURT:  Right.  That dissolution part.

12             MR. BUTLER:  Correct.

13             THE COURT:  And then, secondly, the order that the

14   debtors are asking me to enter today would provide that --

15   or at least the case closing order would provide that the

16   Court retains the power to enforce its own orders, which is

17   often found in case closing orders.

18             So to the extent that I have issued an order that

19   you think has not been complied with, I would have the power

20   to enforce that order, notwithstanding the closing.

21   Similarly, to the extent that the debtors believe I've

22   issued an order already that binds you, they would have the

23   ability to enforce that order.

24             So I think that concern you have about that order

25   is not affected by the closing of the case as proposed by

Page 40

1    the debtors.  Am I right about that, Mr. Butler?

2              MR. BUTLER:  Yes, Your Honor.

3              THE COURT:  Okay.

4              So it seems to me that -- that the concerns you

5    have raised (a) can be dealt with -- and I expect that the

6    reorganized debtors will also be dealing with in response to

7    what was filed in Indiana perhaps here like they did the

8    last time -- can be dealt with between now and December,

9    which is when they're contemplating closing the cases.

10             And, secondly, as to post-confirmation obligations

11   in -- as part of its dissolution process under state law,

12   the debtors' not looking to shortchange that process.

13             And then, thirdly, the closing order, as is

14   typical, says that the Court still has the power to enforce

15   its orders entered during the case.

16             So I don't think that the issues that you have

17   expressed a concern over are -- are actually affected by

18   this motion.

19             MR. SUMPTER:  Okay.  I would, if I can, make a

20   small clarification.  It's not, you know, going to affect

21   your decision or anything.  I've only filed one objection.

22   I don't know how --

23             THE COURT:  I actually only read one, too, but

24   there may have been two separate filings of it.

25             MR. BUTLER:  Right.  It was -- it -- the docket

Page 41

 1    number was -- it was docketed twice, Your Honor.

 2              THE COURT:  Yeah.  I think -- I think -- it really

 3    is just one.  You're right.

 4              Okay.  So I think with those clarifications on the

 5    record, I would overrule Mr. Sumpter's objection.

 6              MR. BUTLER:  And, Your Honor -- Your Honor, the

 7    next bucket of objections are the environmental objections

 8    and they come from the Michigan Environmental -- Department

 9    of Environmental Quality that -- at Docket Number --

10              THE COURT:  Oh, can I interrupt?

11              MR. BUTLER:  Sure.

12              THE COURT:  I'm sorry.

13              MR. BUTLER:  Oh, no.

14              THE COURT:  You -- you, in your opening statement

15    you said that the several claims filed by ACE are ones I'm

16    familiar with because the litigation has been in front of

17    me. I'm not sure that's right.  I thought that the claims

18    filed by ACE at this point are sort of a fallout of that

19    litigation.  They're basically subrogation claims, so

20    they're fairly easy claims.  I take the resolve it's not

21    along the lines of the State of Michigan versus ACE versus

22    the debtor that, you know, went up to Second Circuit and --

23    well, you know, request for cert and everything.

24              So it seemed to me that those were not

25    particularly hairy claims to deal with between now and the

Page 42

1    end of the year.

2              MR. BUTLER:  I -- I agree with Your Honor.

3              THE COURT:  Okay.

4              MR. BUTLER:  I -- I think -- I just meant that

5    it's all part of that --

6              THE COURT:  I'm aware of --

7              MR. BUTLER:  It's a --

8              THE COURT:  -- the context of it.

9              MR. BUTLER:  That's what I meant.  I meant that

10   it's a --

11             THE COURT:  But it's -- it's really just a

12   subrogation claim for someone who's --

13             MR. BUTLER:  Right.

14             THE COURT:  - had a workers' comp claim.

15             MR. BUTLER:  And deal with indemnity --

16   indemnification of other issues.  That -- you're right.

17             THE COURT:  Okay.

18             MR. BUTLER:  But -- and I do think it's capable of

19   being resolved under the claims procedures as they stand.

20             THE COURT:  Okay.

21             MR. BUTLER:  And the -- and the same -- I think

22   the same is true with the MEDQ claims at 22095.  They filed

23   an objection and the United States of America's claims at

24   22101.  I want to talk at this moment about the -- there are

25   substantive concerns about their claims.

1              MR. SUMPTER:  Excuse me.  If I can ask if -- if

2       there's no other need for me, I wanted permission to --

3              THE COURT:  No.  You -- You can sign off, Mr.

4       Sumpter.

5              MR. SUMPTER:  All right.  Thank you.

6              THE COURT:  Sure.

7              MR. BUTLER:  I think that just to say, you know,

8       from the -- I think we have a basic understanding with both

9       environmental regulators about the process going forward

10      here and -- and, you know, and, again, this motion -- you

11      know, one of the benefits of having brought this motion is

12      to been -- has been to bring transparency about how we might

13      approach this.  It -- because it is -- it is true, Your

14      Honor, that the environmental claims held by those two

15      entities are not subject to the claims procedure motion

16      other than the administrative claims.  The administrative

17      claims procedures motion doesn't have a carve-out for

18      environmental claims.  But the other claims were

19      specifically carved out of the -- of the claims that were

20      other than administrative claims.

21              And, of course, as we've said in our papers, that

22      doesn't provide anyone any particular protection because you

23      had -- there is a contested hearing by virtue of having the

24      objections filed and -- and, ultimately, those can be

25      brought on for hearing at 21 days notice and -- and move

Page 44

1    forward to the contested hearing.

2         So we've -- we've had conversations with both

3    regulators and I think we're proceeding along a path that

4    says, I think there's -- in all -- I'm going to get

5    practical for a moment.  There's only sort of two practical

6    outcomes here in the environmental claims.

7         One path is going to be that there is the creation

8    of environmental trusts.  These properties get transferred

9    to the environmental trust.  There's an agreement as to what

10   is going to be contributed to fund the environmental trust.

11   That's all going to be brought to Your Honor in the form of

12   a settlement agreement and noticed for hearing, and that's

13   going to need to be funded.  And, for the moment, I -- I'm

14   not here today to talk about how that's to be funded.

15   That's another day, not -- you know, the debtors have

16   expressed their point of view on that, but that's not for

17   today.

18        The alternative to that path is that these

19   properties will end up getting abandoned and that will

20   create claims.  I mean that will create claims, but it will

21   further inform the claims that have been filed and those

22   claims are going to need to be determined as to what the

23   actual claims are.

24        And I believe that there is a general

25   understanding with both environmental regulators that that

Page 45

1    -- those are the two practical paths, and the -- and I think

2    they have both agreed that the -- that we -- that the

3    debtors' goal in this case, or the -- I should say the

4    reorganized debtors' goal in this case of having that all

5    wrapped up prior to November 30th is one that they agree

6    with.

7            And, therefore, I don't think there's any dispute

8    between the United States of America or the MEDQ or the

9    reorganized debtors that the schedule that's outlined in the

10   order is one that can be worked with, which is -- which is

11   that this would be sorted out one way or another and finally

12   disposed of by November 30th.

13           Now there are some additional -- there are some

14   additional -- there's an additional aspect of the United

15   States objection going to the releases.  I'm going to hold

16   that for a moment and deal with that separately.

17           THE COURT:  Okay.

18           MR. BUTLER:  But I wanted to deal with the

19   substantiveness.  I think I have that correctly and I've --

20   we've got both --

21           THE COURT:  Well, I --

22           MR. BUTLER:  -- both regulators on -- here and on

23   the phone.

24           THE COURT:  I have -- I have counsel for Michigan

25   on the phone.  Do --

1              MR. BUTLER:  And --

2              THE COURT:  -- I have people here, too, also, for

3      Michigan and -- and the EPA?

4              MR. BUTLER:  The United States of America is here,

5      Your Honor.

6              THE COURT:  Okay.

7              MS. PHILLIPS:  Good afternoon, Your Honor.  Cristy

8      Phillips, assistant U.S. attorney on behalf of the United

9      States.

10             The -- yes.  Mr. Butler is correct that we have

11     discussed scheduling.  I'll say as an initial matter that

12     the U.S. has never been able to see the agreement that

13     purportedly creates this 12/31 deadline and we believe

14     that's inappropriate and we actually intend to make a

15     separate application to the Court to lift the seal on the

16     relevant portions of that agreement and the portions of the

17     motion that discuss that agreement.

18             But that not being before the Court today, we have

19     no reason to believe that the deadline is not a real

20     deadline.

21             THE COURT:  That -- that -- and you're right about

22     that.

23             MS. PHILLIPS:  And with --

24        (Laughter)

25             MS. PHILLIPS:  -- with that in mind, you know, we

Page 47

1    understand the need to get this resolved one way or the

2    other by the end of November.  And so we -- we would agree

3    and we -- and we think it would be advisable to set a

4    hearing date in November for one of two purposes:  Either

5    the final approval by the Court of a resolution and the

6    procedural matters that would be required for that approval,

7    or the litigation of the value of the environmental

8    obligations.

9              THE COURT:  Okay.

10             MS. PHILLIPS:  We would ask for a date as late in

11   November as possible because regardless of which path we

12   take, we have a lot of work to do.

13             THE COURT:  Right.

14             MS. PHILLIPS:  But we -- we are amenable to that

15   and we've discussed setting up interim dates in -- leading

16   up to that.

17             Now we're amenable to that because we've reached

18   an agreement with DPH regarding our reservation of rights as

19   to the final decree, so if there's a worst case scenario and

20   there is no agreement, we reserve the right to object to the

21   final decree.

22             THE COURT:  Okay.

23             MS. PHILLIPS:  So on that issue that's our

24   position.

25             THE COURT:  Okay.

1          MR. BUTLER:  And, Your Honor --

2          MS. GILL:  Your Honor, this is Celeste Gill with

3     the Michigan Attorney General's Office on behalf of the

4     Michigan Department of Environmental Quality.

5          THE COURT:  Yes.

6          MS. GILL:  And I concur with the comments by Ms.

7     Phillips with regard to our understanding of the agreement.

8     Since our position, at least with regard to the scheduling

9     issues are so much aligned, I'll let her, to the extent she

10    wants to continue, to go ahead and continue.  And I will

11    only speak if I for some reason think I need to add --

12         THE COURT:  Okay.

13         MS. GILL:  -- something.

14         THE COURT:  Okay.  Thank you.

15         MR. BUTLER:  And, Your Honor, the reservation of

16    rights that is included in the final order simply says that

17    -- I mean, it -- it puts, if you will, the reorganized

18    debtors to -- you know, to the test of what we have said all

19    along and this motion is premised on.  We're not going to

20    come to Your Honor at a final status hearing and ask -- and

21    report in a final report that we ought to have a final

22    decree if the environmental claims have not been resolved.

23    Right.  That -- that's --

24         THE COURT:  Okay.

25         MR. BUTLER:  -- you know, it's -- I mean, it's --

Page 49

1   that's the -- you know, that has been the premise of this is

2   the stuff all needs to get wrapped up.  If we don't get the

3   claims resolved, we're not going to be able to hit the

4   target and we -- we understand that.

5           And so the ability -- giving -- giving these two

6   large claimholders the ability to appear and sort of, you

7   know, say, you know, not so fast, Mr. Butler, you know, if I

8   come to court and say we're settled and they come to court

9   and say we're not, you know -- you know, you're wrong about

10  that, that seemed only fair to us because this is a -- these

11  are by far the largest claims left in the estate --

12          THE COURT:  Okay.

13          MR. BUTLER:  -- or left -- I shouldn't say estate,

14  left in the reorganized company to resolve.

15          THE COURT:  All right.

16          MR. BUTLER:  So I think there is --

17          THE COURT:  So it looks like you've --

18          MR. BUTLER:  -- a common agreement there.

19          THE COURT:  -- made some -- you've made some

20  progress since the objections were filed on --

21          MR. BUTLER:  Yes.

22          THE COURT:  -- on both the -- both sides have on

23  narrowing the --

24          MR. BUTLER:  Right.

25          THE COURT:  -- the timing issues.

Page 50

1          MR. BUTLER:  Right.  And -- and --

2          THE COURT:  Can I just -- on that -- on that

3     score, then --

4          MR. BUTLER:  Yeah.

5          THE COURT:  -- that the language in paragraph 3

6     actually contemplates the claim objection procedures

7     applying to this although, obviously, it also provides that

8     -- that the agencies can opt out.  But I'm -- it's not clear

9     to me that that's what you all are planning to follow

10    because those procedures contemplate mediation and -- and,

11    you know, there's some other steps there.  I don't know if

12    that's what you're following or you -- you really have just

13    your own timetable that you've already agreed to now.

14         MR. BUTLER:  Well, I think the -- I think the key

15    issue, Your Honor, with respect to the environmental claims

16    is we've agreed that we would not set this for final hearing

17    in terms of the settlement or the litigation until at least

18    the November 14th date.

19         THE COURT:  Right.

20         MR. BUTLER:  They wouldn't come earlier.  Other

21    than that, I think that the intention is that the parties

22    will work out consensually the schedule between now and

23    then.

24         THE COURT:  Okay.

25         MR. BUTLER:  And that's -- and all paragraph 3

1    does is provide a default with an opt-out and they --

2              THE COURT:  Right.

3              MR. BUTLER:  -- you know, if we're not able to get

4    there, they can opt out and then we're, you know --

5              THE COURT:  But I --

6              MR. BUTLER:  -- some view of another.

7              THE COURT:  -- I think as a practical matter

8    you're beyond that at this point.  You're in the realm of

9    talking about what -- you know, how you're actually going to

10   schedule this.

11             MR. BUTLER:  Correct.

12             THE COURT:  Okay.  Well, that's good.

13             MR. BUTLER:  Correct.  Right.

14             THE COURT:  Can I -- just one other --

15             MR. BUTLER:  And I -- Your Honor, just to say that

16   -- that -- that was when we put in the -- this language in

17   in paragraph 3 about halfway down there is -- there is a

18   statement that says, "or except as otherwise may be agreed

19   in writing by the reorganized debtors and the environmental

20   agency."

21             THE COURT:  Right.  So you --

22             MR. BUTLER:  We --

23             THE COURT:  -- did that.

24             MR. BUTLER:  -- we believe we're going to be doing

25   that --

Page 52

1            THE COURT:  All right.

2            MR. BUTLER:  -- when we get done.  We can't -- you

3     know, neither they -- we're not done yet with that, but I --

4     I think we're all highly confident that's what's going to

5     happen.

6            THE COURT:  All right.  Well, there's one -- one

7     related point because I agree with you and the environmental

8     agencies on this that isn't really addressed in here, but I

9     think should be and it's consistent with it, which is that

10    if you all don't reach agreement on the trust structure, on

11    a funded trust structure, in addition to dealing with the

12    claim I think you're going to be making a -- an abandonment

13    motion.

14            MR. BUTLER:  We are.

15            THE COURT:  So that should -- you know, that

16    should be teed up at the same time because they're -- you

17    know, of course, the agencies say that under the particular

18    facts this can't be abandonment.  I'm sure you're going to

19    rely on footnote 9 in -- in Mid-Atlantic and say they can be

20    abandoned because it doesn't fall within the -- that

21    description in that footnote.

22            But that -- that should be part of what's teed up

23    in --

24            MR. BUTLER:  Right.  In the --

25            THE COURT:  But I appreciate you all are leaving

Page 53

1    yourselves basically a month's cushion, too.  But that --

2    there's no reason not to resolve it before then.

3           MR. BUTLER:  Right.  And, Your Honor, I -- I

4    think -- I think what -- what the comments of the United

5    States really -- that she nailed it in terms of where we are

6    here, which is to get to a -- a -- our goal, right.  Our

7    goal is to get to a funded trust arrangement that

8    everybody's happy with in this courtroom.  If we can do

9    that, there's a whole bunch of stuff that has to happen

10   which is why it can't actually happen before November.

11          THE COURT:  Right.

12          MR. BUTLER:  And -- you know, and if it turns out

13   that it falls apart, we'll be able to understand that, you

14   know, sometime early in the fall because -- because you

15   basically have to have a deal and then there's a bunch of

16   process that has to occur.

17          THE COURT:  Right.

18          MR. BUTLER:  It's not like -- it's not like you're

19   cutting the deal the day before you walk in the room.  It's

20   just not how you get these things put in place.

21          THE COURT:  So that's why you have the cushion.

22          MR. BUTLER:  Right.  That's why you have the

23   cushion and that's why we -- you know, and Your Honor's

24   quite correct, and I -- I had sort of suggested in terms of

25   practical paths, the abandonment -- if there's a claims

Page 54

1    adjudication there will be an abandonment motion sitting

2    side by side.

3           THE COURT:  With it.  And -- okay.  So I -- I'm

4    really going to be looking to this writing because,

5    obviously, I think I need to -- I think that's what the

6    parties should be focusing on.

7           MR. BUTLER:  Right.

8           THE COURT:  I also think that -- I would hope that

9    the government and the debtors and GM can reach some

10   accommodation on letting the government see the relevant

11   portion of the MDA so they know basically what's -- what's

12   the -- what's the -- what the issue is.

13          So -- okay.  So I -- so I understand that section

14   of your order.

15          MR. BUTLER:  Right.

16          THE COURT:  I think there was something related to

17   that that you picked up in the last blackline.  In the -- in

18   paragraph 6 it says, "Upon entry of the final decree and

19   termination of the trust, any residual assets of the

20   reorganized debtor shall be transferred to and be the

21   property of," and originally it said Delphi Automotive, LLP,

22   but now I think you've -- you've put more flesh on that,

23   which is that under the -- it's basically governed by the

24   MDA.

25          MR. BUTLER:  Right.  It's -- it is, Your Honor.  I

Page 55

1    mean, the reality is that --

2           THE COURT:  So it could be GM.

3           MR. BUTLER:  That's right.  General -- that's what

4    my point is, is that General Motors, this is another comment

5    we offered after Mr. Berger had his conferences with Mr.

6    Steinberg is -- and this isn't -- the concept is not wrong,

7    which is to the extent that GM is out on the facility --

8    there's outstandings on the facility -- and proceeds come

9    in, they're going to be entitled to those proceeds to pay

10   them down before anything goes to new Delphi.

11          THE COURT:  Right.

12          MR. BUTLER:  Nothing goes to new Delphi so long as

13   there's a facility -- there's a balance out under the GM

14   facility under the terms of the MDA.  We wanted to codify

15   that in here so that it was clear.

16          THE COURT:  But there was -- there was something

17   in the motion about the potential for these -- these three

18   properties to go back, and the United States took issue with

19   that.  Is that something that's just subject to discussion

20   and this order doesn't, you know, really govern that one way

21   or another because the residual property means, you know,

22   property the debtor actually has --

23          MR. BUTLER:  Right.

24          THE COURT:  -- and it may that the debtor wouldn't

25   have these properties.

1            MR. BUTLER:  Right.  Well, there was some -- I

2    think there was a misunderstanding on behalf of -- that was

3    -- that was set forth in some of the objections that there

4    was a suggestion that the trust owned the property.  The

5    trust doesn't own the property.  The trust only owns the one

6    share of stock that exists for DPH Holdings.  DPH Holdings

7    owns this property, and I think we've outlined on the record

8    today what the intended disposition of these -- of these

9    three properties are:  Either they're going to go into a

10   trust that Your Honor approves in terms of a settlement, or

11   they're likely to be abandoned pursuant to an abandonment

12   and claims --

13           THE COURT:  And then it wouldn't be residual,

14   obviously, in either case.

15           MR. BUTLER:  Correct.  And it won't be -- so at

16   least we don't perceive there to be a risk of them being a

17   residual asset.  You know, now, I mean, I -- you know, I

18   suppose that we could be unsuccessful in either of those

19   paths and we will have to figure out where we stand at that

20   moment, but we'll all be there then.

21           THE COURT:  Okay.

22           MR. BUTLER:  That -- the only -- I think that

23   leaves the only objection other than GM's that's not

24   addressed, and I'm about ready to -- to cede the podium to

25   Mr. Berger is -- for that portion of the presentation -- is

Page 57

1    the policy objection filed by the United States of America

2    simply saying don't give anybody any releases, which is --

3    which is articulately laid out, you know, in their

4    objection.

5            From the debtors' perspective or the reorganized

6    debtors' perspective, you know, the -- I'll be -- again, as

7    I've tried to be everything here, totally transparent.  The

8    request for the release of the plan administrator and of the

9    officers and directors of DPH which is essentially Mr.

10   Brooks, you know, in connection with the -- which would be

11   effective upon the final decree being entered in, not

12   earlier than that is -- you know, why is it in here.  It's

13   in here because frankly it's a standard request we make when

14   we file these motions for final decree.

15           And -- and why do that and the answer is pretty

16   simple;  We're bringing forward the releases and

17   exculpations that occurred at the time of the plan.  We are

18   addressing the -- you know, we're giving effect to what's in

19   the trust agreements and the charter of DPH which broad --

20   provides for the broadest indemnification and other rights

21   possible.  And we're trying, frankly, to minimize if not

22   avoid the need to devise other corporate type replacements

23   for that release which -- which cost money, which someone is

24   going to have to fund.  Right.

25           Which -- so, ultimately, you know, absent those

Page 58

1    kind of releases and, you know, and other related relief,

2    what do companies do in circumstances like this?  They go

3    out and buy tail policies and they buy other kinds of

4    insurance products and other things that are intended and

5    take other actions that are intended, setting up reserves

6    and residuals and other things to try to protect or to give

7    a economic meaning to the documents that have existed.

8    Right.

9            When this plan was modified -- approved as

10   modified, there were protections given to Mr. Brooks and

11   given to the plan administrator in those documents.  Those

12   protections are not really meaningful if there's no money

13   left.  And so, you know, we -- in our view we can do one of

14   two things:  We can -- we can try to do this in a way that

15   we think is as economically appropriate as possible, or,

16   ultimately, the reorganized debtors in their -- you know, in

17   their business discretion will take the steps necessary

18   outside of a further release from Your Honor to, you know,

19   under Delaware law and otherwise, purchase what they need to

20   purchase and then we'll presumably have some discussions of

21   who is going to pay for that.

22            But that's -- that's the -- I mean, that's why

23   it's in there, Judge.  It's not a whole lot more complicated

24   than that.  And, you know, we think there's good cause for

25   it.  We think it's appropriate.  It's been certainly done in

1    similar situations.  We respect the fact that the United

2    States of America, just as a general matter, has a policy

3    issue with these -- these matters.  But we're -- we have

4    laid that out.

5            And I think, you know, before Your Honor -- unless

6    Your Honor has questions about that, and certainly the U.S.

7    may want to address it as well, there has been a similar

8    objection raised by General Motors.  So I think before we

9    get to the end of this colloquy on this, Mr. Berger and Mr.

10   Steinberg probably are going to want to talk about that

11   issue as well.

12           But that's the piece of it that I have, which is

13   the -- which is the objection from the United States of

14   America on policy grounds that there shouldn't be any

15   releases at the time of the final decree.

16           THE COURT:  Okay.

17           MS. PHILLIPS:  Your Honor, in fact, there are --

18   there are two remaining open issues with respect to the

19   United States' objection, but one I think can be resolved

20   through a clarification, and that involves the dissolution

21   of -- the timing of the dissolution of DPH Holdings.

22           It's my understanding having spoken with the

23   debtors' counsel that their intention is to dissolve DPH

24   Holdings contemporaneously with the entry of the final

25   decree; that certain things, pursuant to Delaware law, have

1   to be done before then, but the actual dissolution will not

2   happen before the entry of the final decree.

3           However, the language of the order as it's

4   currently drafted states in paragraph G that good cause

5   exists to dissolve DPH Holdings and terminate the trust, and

6   presumably that -- that statement is good as of the entry of

7   this order.

8           Similarly, paragraph 4 directs that -- or

9   authorizes the dissolution of DPH Holdings after the entry

10  of this order, and, of course, the United States has

11  concerns about any preliminary dissolution of DPH Holdings

12  or termination of the trust.

13          So --

14          THE COURT:  Well, Mr. Butler, is it okay where it

15  says the reorganized debtors are hereby authorized to

16  complete all outstanding administrative tasks after entry of

17  this order, including, and then it says see dissolution of

18  DPH Holdings in accordance with Delaware law, to add the

19  phrase, effective no earlier than entry of the final decree;

20  is that okay?

21          MR. BUTLER:  I think, yes, Your Honor, that would

22  be --

23          THE COURT:  You're going to be doing -- you're

24  going to be doing the work leading up to that --

25          MR. BUTLER:  Yeah.

Page 61

1            THE COURT:  -- beforehand, but it --

2            MR. BUTLER:  And --

3            THE COURT:  -- would effective --

4            MR. BUTLER:  -- genuinely, it's a temp -- it's

5     kind of a temporal issues.  In a number of these cases the

6     -- showing the certificate of dissolution from the Delaware

7     Court or from the Delaware -- from Delaware is what you

8     provide to the Bankruptcy Court as the final decree is being

9     entered.

10            THE COURT:  Right.

11            MR. BUTLER:  That's how it's been in a lot of

12    cases.  So it -- it's -- but, I mean, I'm certainly prepared

13    o say it -- we -- to answer their objection, we're certainly

14    not going to do it prior to resolving the environmental

15    claims.

16            THE COURT:  Right.

17            MR. BUTLER:  It's -- it's -- you know, but it

18    would -- so if you want to say in connection with or

19    contemporaneously with or, you know, the final hearing.  But

20    we normally -- we -- our intention would be to come to the

21    final hearing with that piece of evidence to present to Your

22    Honor that that's been accomplished.

23            THE COURT:  Okay.  But that can be -- that can be

24    effective at that point.

25            MR. BUTLER:  Yes, Your Honor.

1          THE COURT:  Okay.  All right.  Okay.

2          MS. PHILLIPS: So then the remaining issue is -- is

3     the releases.  And as -- as we set forth in our objection,

4     we -- we simply believe that there is no authority for the

5     releases that are being requested and, particularly, with --

6     as to the scope of those releases that the Court simply

7     lacks jurisdiction to grant releases.  And -- and just as

8     one example, as to certain legal obligations, for example,

9     obligations under the environmental laws or under the tax

10    laws.

11         THE COURT:  Well, it says to the fullest extent

12    permissible under any applicable law.  So --

13         MS. PHILLIPS:  So that being the case, we also

14    believe that -- that -- that the Court only has jurisdiction

15    to enjoin non-debtor claims that directly address the

16    estate.  We -- we simply believe that the breadth here of

17    what's being asked for is -- that there's no authority --

18         THE COURT:  Well --

19         MS. PHILLIPS:  -- for it.

20         THE COURT:  -- I mean, I -- I think arguably it is

21    overly broad.  I -- I mean, I have no reason to believe

22    this, but what if -- what if, for example, some employee of

23    the plan administrator pocketed some of the money that

24    should have gone to pay GM, for example.  I mean, most --

25    and I think this -- this plan injunction said, you know,

1   with the exception of gross negligence and willful

2   misconduct.

3           So -- now that mean that you might feel like you

4   have to purchase a tail, and maybe you need to put something

5   in like, you know, basically, equivalent to the Barton (ph)

6   Doctrine so that people can't sue until they've made a

7   motion to sue, something like that.  But I -- I am -- I am

8   hesitant to approve a release that would include, you know,

9   theft, for example.

10          MR. BUTLER:  And, Your Honor, I think that -- that

11  -- there -- we're not -- you know, that's not what we're

12  necessarily looking for.

13          THE COURT:  Well, I know, but that's what it says.

14          MR. BUTLER:  And so -- no.  And so, Your Honor, to

15  the extent -- I -- I think it's a general release.  I mean,

16  certainly, I -- I'll acknowledge in this record to the

17  extent Your Honor puts in whatever limitation -- from my

18  perspective -- at least my perspective, whatever limitations

19  Your Honor feels are appropriate to put in ought to be put

20  in the order, and then we'll figure out what we have to do

21  on -- you know, to -- to --

22          THE COURT:  Well --

23          MR. BUTLER:  -- to supplement that because --

24          THE COURT:  -- I -- I think I do have jurisdiction

25  given that these are the people who have been -- who have

Page 64

1    been implementing the plan to provide that they're released.

2    But I think other than the U.S.'s general carve-out, which I

3    think is covered by the phrase, to the fullest extent

4    permissible under any applicable law, you should have the

5    type of carve-out that's in the plan injunction, which is

6    but not gross negligence or -- or willful misconduct.

7            And I -- I don't mind putting in, in essence,

8    language that's the same as the Barton Doctrine; that you

9    have to come to the Court before you can sue any of these

10   people and get permission to sue them.

11           MR. BUTLER:  We'll make those modifications, Your

12   Honor.

13           THE COURT:  Okay.  There's -- there's something

14   else in here that I think doesn't -- the last sentence of

15   this isn't really an order sentence.  It says, the

16   reorganized debtors further request that the plan

17   implementation parties be expressly discharged.  I think you

18   need to turn that into, you know, upon entry of the final

19   decree they will be discharged.

20           MR. BUTLER:  Right.  Yes.  You're right.

21           THE COURT:  And -- and related to that, you know,

22   this all ties into this -- this release language or it leads

23   up to it.

24           Paragraph 4 has the task that the debtors are

25   authorized to complete and it says -- F says, and take such

Page 65

1    actions as may be necessary to close the Chapter 11 cases.

2    You could add to that, including, without limitation,

3    preparation of a final report detailing compliance with this

4    order because that's really the deal here is that -- that

5    they comply with the order, then there will be a final

6    decree.  And I think you -- you need -- and, also -- and

7    making a motion for a final decree, you know, consistent

8    with the final report.

9              MR. BUTLER:  Your Honor, as to that last point, I

10   think this --

11             THE COURT:  Well, it's not really a motion.

12             MR. BUTLER:  -- this -- this was the motion, so --

13             THE COURT:  Well, but the motion said it

14   contemplated two orders.

15             MR. BUTLER:  Right.  Correct.

16             THE COURT:  So something has to trigger the second

17   order.

18             MR. BUTLER:  Right.

19             THE COURT:  And I think that's the final report,

20   so --

21             MR. BUTLER:  Right.

22             THE COURT:  -- there needs to be some sort of

23   notice of the final report and entry of -- request for entry

24   of the final decree because, otherwise, we will -- you know,

25   we would sit there.

```
 1              MR. BUTLER:  Right.

 2              THE COURT:  You're going to have to --

 3              MR. BUTLER:  No.  No.  No.  I agree.

 4              THE COURT:  -- somehow get -- get my attention so

 5     that --

 6              MR. BUTLER:  We have to --

 7              THE COURT:  -- I enter that order.

 8              MR. BUTLER:  I mean, I think -- I think, Your

 9     Honor, on that point I think our intention was to include in

10     this, we just didn't want to do it presumptively without

11     talking to Your Honor first, is -- is to pick the -- put

12     actually in this order a date that we would file the final

13     report by and a date --

14              THE COURT:  All right.

15              MR. BUTLER:  -- at which we would come for the

16     final status conference.

17              THE COURT:  All right.  So you can put that in

18     here --

19              MR. BUTLER:  And I think --

20              THE COURT:  -- in F, you know, as part of -- as

21     part of the actions necessary to close.

22              MR. BUTLER:  And, Your Honor, I think the calendar

23     date we have is December 18th.

24              THE COURT:  Right.

25              MR. BUTLER:  And so if -- what -- the final
```

1    report, I think probably you would want by --

2              THE COURT:  Five days before then.

3              MR. BUTLER:  Okay.  So --

4              THE COURT:  Okay.

5              MR. BUTLER:  Thank you.

6              THE COURT:  Okay.

7              MS. PHILLIPS:  Thank you, Your Honor.  The

8    government has no further objections.

9              THE COURT:  Okay.  So did that discussion about

10   the releases, did that solve -- is there more that I --

11   should I hear from GM now?

12             MR. STEINBERG:  Yes.  You do need to --

13             THE COURT:  I mean, I do need to hear from GM on

14   the -- on the releases?

15             MR. STEINBERG:  Yes.

16             THE COURT:  Okay.

17             MR. STEINBERG:  All right.

18             Your Honor, I understand what DPH is trying to do,

19   but in the context of responding to my request to, in

20   effect, carve us out of the release issue for now and the

21   context of this order, the DPH filed a reply.  At paragraph

22   15 of the reply says, a request for a final decree in these

23   Chapter 11 cases will not be made for months.  If GM still

24   disputes the releases when that request is made, it can

25   raise its objection at that time.

1          One of the reasons why I'm not consenting to the

2    proposed order that's here is that I asked for a specific

3    provision that -- that essentially rewrote that clause

4    that's in their reply and said that nothing herein shall

5    prejudice the right of GM to contest the releases sought by

6    the plan implementation parties as part of the entry of the

7    final decree.  I was told I was not allowed to have that,

8    even though I was essentially writing what was there.

9          Beyond --

10         THE COURT:  In the -- in the reply you mean.

11         MR. STEINBERG:  In the reply.

12         THE COURT:  Okay.

13         MR. STEINBERG:  Which was filed yesterday.

14         THE COURT:  Okay.

15         MR. STEINBERG:  Beyond that, the release construct

16   is -- is basically set up to say if the remaining claims are

17   resolved and the adversary proceedings are resolved, the

18   case will close.  There are -- there is more to be done than

19   those two things and, therefore -- and those things do

20   affect GM.  And so, therefore, I was not happy with the

21   findings in the proposed order --

22         THE COURT:  Well, what are the remaining things to

23   be done besides that?

24         MR. STEINBERG:  Okay.  The definition of remaining

25   claims under the case closing motion are the 17 claims.

1    There are a bunch of claims that -- that are not claims,

2    litigations that were sent to us that are ten or 11.  It's

3    first referenced in the reply.  It's not --

4              THE COURT:  This is the patent stuff?

5              MR. STEINBERG:  It's the patent stuff and the

6    other litigation claims.  The debtor in their -- DPH in

7    their reply said, why we labeled it as patent was a mistake.

8    There are no patent claims.

9              THE COURT:  Okay.

10             MR. STEINBERG:  We -- we do have copies of -- of

11   litigation claims.  A good chunk of those claims are

12   prepetition claims or administrative claims that -- that

13   arose before the administrative bar date.  And so one of the

14   objections which we had hoped to resolve itself through the

15   disclosure and the reason why the motion to compel was --

16   was pushed off was my contention that a lot of what they are

17   not referring to in the context of remaining claims are

18   remaining claims, should be resolved as part of closing the

19   case, are not liabilities that arose after the effective

20   date of the plan.

21             I mean, there's a birth defect from 1990.  There's

22   a slip and fall from 2001.  Those are the -- those -- those

23   are two specific litigation claims that are there.  So -- so

24   the notion that -- that -- that the remaining claims and the

25   adversary proceedings are the only thing that's involved is

Page 70

```
 1    not true and --

 2              THE COURT:  Well, I --

 3              MR. STEINBERG:  -- they created the problem

 4    because of their definition of remaining claims.

 5              THE COURT:  Well, I'm not following you.  I mean,

 6    it -- there's no reason for me to liquidate a prepetition

 7    claim.

 8              MR. STEINBERG:  No.  It's discharged.  It should -

 9    - was --

10              THE COURT:  Right.

11              MR. STEINBERG:  -- it was subject to discharge.

12              THE COURT:  So --

13              MR. STEINBERG:  But -- but those are things that

14    they -- that they, to date, have said a part of the

15    dissolution process of which needs to be reserved for.

16              THE COURT:  When did they say that?  I -- I don't

17    think they said that.  I think they said they have these --

18    these roughly 17 remaining claims --

19              MR. STEINBERG:  No.  That -- the reply --

20              THE COURT:  -- which are adequately -- they've

21    described them.

22              MR. STEINBERG:  No.  The reply to -- to -- that

23    was filed yesterday reveals that there are ten claims

24    outside of the 17 claims.

25              THE COURT:  But the -- but the --
```

1            MR. STEINBERG:  Ten litigations.

2            THE COURT:  -- but the definition of remaining

3    claims --

4            MR. STEINBERG:  Are the 17.

5            THE COURT:  -- is --

6            MR. STEINBERG:  Just the 17.

7            THE COURT:  Right.

8            MR. STEINBERG:  It doesn't count --

9            THE COURT:  That's all that this order deals with.

10            MR. STEINBERG:  This order says that the case will

11    be closed if those 17 claims are resolved.

12            THE COURT:  Right.

13            MR. STEINBERG:  I'm saying that there are ten

14    other litigations that they want to deal with in a different

15    way, many of them --

16            THE COURT:  Well, they may want to deal with them,

17    but -- but I don't need to resolve -- unless I'm missing

18    something, I don't think I need to resolve them to close the

19    case because they're -- well, I don't know.  I mean, they --

20    you're saying that they're discharged and they're -- they're

21    late.  So --

22            MR. STEINBERG:  Right.  But the debtor still wants

23    to have a concept where they're -- they're reserving for

24    that as part of the dissolution process.  And I'm saying

25    those --

```
 1              THE COURT:  Well, I --

 2              MR. STEINBERG:  -- are bar date --

 3              THE COURT:  That was raised as part of the --

 4              MR. STEINBERG:  Right.

 5              THE COURT:  -- enforcement motion.  But so what is

 6     -- what is the status of these other claims?

 7              MR. BERGER:  Your Honor, two things --

 8              THE COURT:  Should they be in this order, too, or

 9     --

10              MR. BERGER:  If I may speak from the table?

11              THE COURT:  Right.

12              MR. BERGER:  Neil Berger for the reorganized

13     debtors.  Two things:

14              One, I want to be very careful.  We were in front

15     of Your Honor last week.  Your Honor so ordered our

16     agreement yesterday.  I do not want this conversation to

17     drift into the motion to compel.  We're not here today to

18     address those issues.  We're not here to punt issues on the

19     case closing motion to August 22nd, the return date.

20              Second, Your Honor's precisely correct.  Your

21     Honor does not need, within the meaning of 30 -- of a case

22     closing as we cited in our motion and our order to

23     adjudicate those matters.

24              THE COURT:  And why is that?

25              MR. BERGER:  Those are -- those are -- those --
```

Page 73

1    those are litigations pending in a non-bankruptcy forum.  If

2    the debtor believes that they have value and that there

3    needs to be a reserve or a security, it will go before the

4    Delaware Chancery Court as part of the liquidation and the

5    wind-up proceeding, and we'll be going to Mr. Steinberg's

6    client for funding.  That's part of a funding request.  That

7    need not be determined for purposes of closing the case.

8              For purposes of closing this case, Your Honor will

9    be dealing with two things:  One is have claim objections

10   been substantially completed; have adversary proceedings

11   been substantially closed; and -- and if we're not able to

12   come to an agreement, Your Honor will be addressing the

13   funding dispute.

14             The resolution of those and the value of how those

15   separate actions in non-bankruptcy cases are resolved isn't

16   a -- a hurdle that we or you have to get past to close these

17   cases.

18             THE COURT:  Let me make sure I understand.  These

19   -- these claims are pending in non-bankruptcy forums.  Is

20   that because the stay was lifted or --

21             MR. BERGER:  Either because -- either because a

22   stay was lifted --

23             THE COURT:  Or because there was a violation of

24   the stay or --

25             MR. BERGER:  -- or there's -- or there may not be

1   a violation of a stay or an injunction.  We can discuss with

2   Mr. Steinberg our view about whether or not these claims may

3   or may not be barred by a bar date.  Maybe they do have

4   value and need to be addressed as part of the liquidation.

5   But they're not pending in this case.  They have not been

6   reviewed.  They have not --

7           THE COURT:  No one is going to be --

8           MR. BERGER:  -- been removed.

9           THE COURT:  -- administering them in -- in this

10  case after the dissolution of DPH is what you're saying to

11  me.

12          MR. BERGER:  Part of the dissolution of DPH under

13  the Delaware law --

14          THE COURT:  Is to deal with them.

15          MR. BERGER:  -- will be to address those --

16          THE COURT:  But --

17          MR. BERGER:  -- those claims.

18          THE COURT:  -- but no -- the trustee or the trust

19  will not be administering them and his professionals won't

20  be administering them.

21          MR. BERGER:  Well --

22          THE COURT:  After -- after case closing.

23          MR. BERGER:  Well --

24          THE COURT:  After what you're proposing to be case

25  closing, which is when the remaining claims or the adversary

Page 75

1    proceedings are dealt with.

2              MR. BERGER:   Either they will be resolved prior

3    to case closing or they won't need to be resolved, or they

4    -- sorry.  Under two scenarios:  Either they won't be --

5    need to be resolved because a zero valuation is assigned to

6    them in front of the Chancery Court and they -- there is no

7    need for --

8              THE COURT:  Right.

9              MR. BERGER:  -- anything further, or we'll be

10   seeking a reserve and an advance request under the MDA to

11   handle this.

12             THE COURT:  So that would be like self-

13   effectuating.

14             MR. BERGER:  Not self-effectuating.  There would

15   have to be a funding demand under --

16             THE COURT:  Well, yeah.  But, I mean, in that

17   sense it would be self-effectuating.

18             MR. BERGER:  Yeah.

19             MR. STEINBERG:  Your Honor --

20             MR. BUTLER:  Your Honor, if I may, again for the

21   record Jack Butler from Skadden.

22             Not on this as to what should be funded or not

23   funded, but on the general point is at some point over the

24   next three months as everything is cleaned up here and

25   getting wound down, to the extent that, you know, Mr.

1    Steinberg suggests in open court today -- I certainly

2    haven't looked at these matters.  To the extent that there's

3    something out there that's in the state court wind-down

4    process that actually is someone taking advantage of DPH

5    and, therefore, GM or anyone else by trying to assert

6    something was barred under the plan, that will all be sorted

7    through.  And if we need to come back to Your Honor for

8    relief, it won't be -- you know, it won't be Mr. Berger that

9    comes back. It will be someone either at Butzel or at -- at

10   Skadden that will be back here, as we have on a variety --

11              THE COURT:  To enforce the --

12              MR. BUTLER:  -- of other issues.

13              THE COURT:  To enforce the order.

14              MR. BUTLER:  To enforce the orders.  I mean, I --

15   I haven't gone through and didn't prepare -- in preparing

16   for this hearing I certainly haven't gone through and tried

17   to evaluate, nor has Mr. Brooks asked us to evaluate, all

18   the stuff that's sitting out in connection with the Delaware

19   wind-down.  I assume, you know, that's work to be done.  But

20   that's certainly not something that is for this hearing from

21   a standpoint of what we're -- we're trying to do.  But,

22   obviously, people are going to do the right thing when it

23   comes to, you know, administering, as DPH has all along done

24   the right thing in administering DPH's affairs.

25              MR. STEINBERG:  Your Honor, I accept everything

1    that Mr. Butler has said, but when it become my turn to make

2    my presentation as to what is problematic right now in

3    connection with the order that's before you.  All I was

4    trying to illustrate is that I understand the notion that

5    you may need to dissolve for post-effective date liabilities

6    that were incurred.

7              A good portion of the liabilities that we're

8    talking about here are the liabilities that Mr. Butler said

9    that the DPH should take care of which are -- either

10   prepetition or administrative claims subject to the bar

11   date, and that -- that a large portion of what is raised in

12   the motion -- the objection that we filed is that because

13   the defined term, remaining claims, is limited to 17 claims,

14   doesn't account for the body of claims which I think are --

15   are, at least in large part, either prepetition or

16   administrative claims; that the language of the order itself

17   for what they're trying to accomplish does not work because

18   --

19              THE COURT:  Well --

20              MR. STEINBERG:  -- they don't have a broad enough

21   term for it.

22              THE COURT:  -- paragraph 1 says, the distributions

23   described in the motion, including the fundings -- the

24   funding of trusts and reserve accounts for payments

25   associated with the remaining claims and the dissolution of

Page 78

1   DPH Holdings satisfy the requirements of the modified plan

2   modification approval order and the MDA.  That's the

3   defining in I.  And then --

4           MR. STEINBERG:  I was looking at paragraph E, Your

5   Honor.

6           THE COURT:  Well, but let me just -- and then the

7   -- there's really nothing that says that, as you -- as you

8   had said, I think, that upon just dealing with the remaining

9   claims and the adversaries a final decree will be entered.

10  I mean, it just says the debtors are authorized to finish

11  up.

12          MR. STEINBERG:  It says, paragraph E, upon final

13  resolution of the remaining claims, which are the 17 claims,

14  and the remaining adversary proceedings, which are the

15  preference litigations --

16          THE COURT:  Right.  Will --

17          MR. STEINBERG:  -- the estates will be fully

18  administered within the meaning of 350 in accordance with

19  the modified plan.

20          THE COURT:  Right.

21          MR. STEINBERG:  Paragraph F says, upon final

22  resolution of the remaining claims and the remaining

23  adversary proceedings, either consensually or by further

24  order of the Court, the plan implementation --

25  implementation parties will have each substantially

```
 1    fulfilled their obligations under the modified plan.

 2             And I -- and I think that because the definition

 3    of remaining claims is limited to those 17 claims does not

 4    pick up these other claims which are prepetition claims --

 5             THE COURT:  But it's a difference -- if it's a

 6    difference between administering and funding, maybe I should

 7    come ahead of those two things.  But if -- if -- if you've

 8    fully funded the reserves, then there's nothing to

 9    administer depending --

10             MR. STEINBERG:  Well, there's an issue that we're

11    reserving about -- different word reserve about whether we

12    should have to fund any reserves --

13             THE COURT:  Yeah.  But that's a separate --

14             MR. STEINBERG:  -- as part of the --

15             THE COURT:  -- issue.  That's -- that's going to

16    be dealt with by dealing with the -- your -- you know, your

17    motion.

18             MR. STEINBERG:  Right.

19             THE COURT:  The debtors' motion to compel the

20    performance.  But maybe these findings are out of order, but

21    it would seem to me that if you have provided for the

22    payment or the resolution of the remaining claims and the

23    reserves requiring for -- with dissolution of DPH, then

24    there's -- you know, there's nothing --

25             MR. STEINBERG:  Yeah, but --
```

1                    THE COURT:  -- more to be administered --

2                    MR. STEINBERG:  Yeah, but these are --

3                    THE COURT:  -- once you've administered --

4                    MR. STEINBERG:  -- these are the findings that are

5      in your order that they're asking you to sign today.

6                    THE COURT:  Well, I know.  But I'm assuming that

7      if they've -- if they've provided for the reserves, then it

8      will -- then there's nothing more to do there.  There's

9      nothing more to administer.

10                    MR. STEINBERG:  That's right.  But -- but they

11     will be providing for reserves of prepetition claims that

12     should have been administered as part of their plan, and

13     they're asking me to --

14                    THE COURT:  Well, it has to be an appropriate

15     reserve, obviously.  They're not going to -- you know, if

16     they -- if they're -- I don't --

17                    MR. BUTLER:  Judge --

18                    THE COURT:  It's only a reserve required with the

19     dissolution of DPH.  It's not like this is giving them

20     authority to, you know, burn money.

21                    MR. STEINBERG:  Your Honor, the problem that we're

22     having is, is that I've seen the claims that have been

23     provided to my client which are --

24                    THE COURT:  Right.

25                    MR. STEINBERG:  -- the ten claims that are there.

1    Those are claims that primarily are no different than the

2    remaining claims, which are defined in this order.  They've

3    created a construct to deal with just --

4              THE COURT:  Well, no.  I thought they were

5    different.  You -- the remaining claims are all admin claims

6    that --

7              MR. STEINBERG:  Right.  Right.

8              THE COURT:  -- and -- and these other ones, I

9    gather, have been asserted against DPH Holdings, right?

10             MR. BUTLER:  Yes, Your Honor.

11             THE COURT:  And they're just kind of -- you know,

12   they're just out there and they -- they're subject to all

13   the defenses DPH Holdings has.  And I'm assuming when DPH

14   Holdings goes through its process to dissolve under Delaware

15   law, it's going to say, we think most of these claims are

16   bogus, and maybe all of them are bogus.

17             MR. STEINBERG:  Your -- Your Honor --

18             THE COURT:  And, we'll -- you know, we'll set a

19   reserve as is appropriate.  We think the reserve should be

20   X.

21             MR. STEINBERG:  Your Honor, a trip and --

22             MR. BERGER:  Which -- which, Your Honor, is --

23             MR. STEINBERG:  -- a trip and --

24             MR. BERGER:  -- for the --

25             MR. STEINBERG:  -- fall that occurs in 2008 during

Page 82

1    the administrative period is an administrative expense

2    claim.  The only difference is is they haven't asserted it

3    in this court.  But it is --

4             THE COURT:  Well -- so then it's -- then it's --

5             MR. STEINBERG:  Then it's barred.

6             THE COURT:  So they went by the bar date.

7             MR. STEINBERG:  Right.  And that's why I want

8    those issues --

9             THE COURT:  So they'll say that.  They'll say it's

10   barred by the bar date when they set the -- I don't -- other

11   courts can enforce the bar date.  I don't' -- I'm not the

12   only one who has jurisdiction of the --

13            MR. STEINBERG:  No.  But -- but, Your Honor, the

14   way this funding agreement was set up was that Your Honor

15   was going to deal with the administration of prepetition

16   claims and administrative claims.  These are prepetition

17   claims for the most part and administrative claims.

18            THE COURT:  Yeah.  But, fine.  But then -- I mean,

19   then -- then I guess -- I'm not sure what -- what the point

20   is.  They -- they are setting out a methodology for dealing

21   with them that I think may be more efficient than dealing

22   with them here.

23            MR. STEINBERG:  And moving to -- to dismiss those

24   claims, those litigations in this court on the grounds that

25   they were barred by the administrative bar date or barred by

1    the --

2              THE COURT:  Well, they can -- they can do that, or

3    they can do it through the DPH.  They can do it either way.

4              MR. STEINBERG:  But DPH was supposed to resolve

5    those claims, administrative claims in this court.

6              THE COURT:  I don't think it's limited to doing

7    that.

8              MR. STEINBERG:  All right.  The other -- the other

9    comment that since I rose in connection with the releases is

10   that there's a lot of action that needs to be taken between

11   now and the actual closing of the cases, including the

12   resolution of the environmental claims --

13             THE COURT:  Right.

14             MR. STEINBERG:  -- to give a -- a release subject

15   to the entry of the final decree without knowing how they're

16   going to administer the remaining estate when they have an

17   outstanding request for, at least in connection with their

18   motion to compel, was for XXXXXX.  It's something that we

19   weren't prepared to give a release now for.  And, frankly,

20   it all goes back to the original provision in the reply

21   which is they said they weren't asking for it, and if

22   they're not asking for it, then it shouldn't be in this

23   order.

24             MR. BERGER:  Pardon -- pardon me, Your Honor.  Mr.

25   Steinberg (sic), you may have inadvertently just disclosed

Page 84

1    information that we agreed would be not disclosed.  You

2    referred to our request.  Our request is not for today's

3    adjudication, and specifically not for today's record is the

4    -- is the amount of funding requests.

5               MR. STEINBERG:  Oh.

6               THE COURT:  Oh, he didn't say anything. I didn't

7    hear any dollars.

8               MR. BERGER:  Yes, Your Honor.  He --

9               MR. STEINBERG:  I did.

10              MR. BERGER:  -- did.  And maybe it didn't find its

11   way --

12              THE COURT:  Well, I didn't hear -- I didn't hear

13   it.

14              MR. STEINBERG:  Okay.

15              MR. BERGER:  I did and -- and that's why I rose.

16              MR. STEINBERG:  Okay.  I appreciate that.

17              THE COURT:  All right.

18              MR. STEINBERG:  I didn't realize that.  Okay.

19              THE COURT:  Well, I mean, the contract says up to

20   XXXXXX, so -- in any event, I -- let -- the issue raised is

21   an interesting issue on how this works.  It's clear that

22   this order doesn't give the release until there's the entry

23   of the final decree.  So your issue is what ability do we

24   have to object to the entry of the final decree.  And you

25   were concerned that this order basically locks in a final

Page 85

1    decree as long as the debtors comply with this order.

2              MR. STEINBERG:  And the order is defined as A or B

3    and doesn't deal with the ten litigation claims.

4              THE COURT:  Well, okay.  But as far as -- let's

5    just focus on, for the second, on the things that the order

6    clearly says has to be done before there's a final decree.

7    I'm assuming that if those things are done and nothing else

8    needs to be done, then --

9              MR. STEINBERG:  I'm fine.

10             THE COURT:  -- you're fine.  Right.

11             MR. STEINBERG:  Yes.

12             THE COURT:  So you're saying something else may

13   need to be done and that something else is these other

14   claims need to be dealt with.

15             MR. STEINBERG:  Yes.

16             THE COURT:  Okay.  Well, I mean, that's -- I had a

17   question mark here, frankly, in paragraph I where it says

18   distributions as described in the motion, including the

19   funding of trusts and reserve accounts for payments

20   associated with the remaining claims, I didn't have any

21   problem with that.  And then it says, and with the

22   dissolution of DPH Holdings.  I assumed I knew what that

23   meant, and I guess you've confirmed that, which is there's a

24   process under Delaware law where you give notice and people

25   have a right to say, it owes me money, and then you set a

1    reserve.  It's overseen by the Delaware Chancery Court.

2         MR. STEINBERG:  Correct.

3         THE COURT:  So why isn't that process good enough?

4    You want it to be done down here instead?

5         MR. STEINBERG:  Clearly, yes, if I think it's

6    subject to a bar order and subject to --

7         THE COURT:  Well, but --

8         MR. STEINBERG:  -- the plan.

9         THE COURT:  -- they're -- you assert the same --

10   you're going to assert the bar order and all the other

11   defenses there, too, wouldn't you?

12        MR. STEINBERG:  Yeah.  But I -- Your Honor, I know

13   then that the funding obligation will be resolved --

14        THE COURT:  Well, can -- do you want to say --

15        MR. STEINBERG:  -- by December 31.

16        THE COURT:  -- the funding of the trust, the

17   reserve accounts for payments associated with the remaining

18   claims or the dissolution of DPH Holdings and any other

19   obligations of the -- of the debtors under the modified

20   plan.

21        MR. BERGER:  Judge, I don't --

22        THE COURT:  I mean, I think you have some --

23        MR. BERGER:  -- I don't --

24        THE COURT:  -- discretion on how you want to deal

25   with this.  You can deal with it either in the dissolution

1    process or in the Bankruptcy Court.

2              MR. BERGER:  Well, we do have the discretion to

3    deal with it in either --

4              THE COURT:  Well, but this order --

5              MR. BERGER:  -- scenario.  But --

6              THE COURT:  -- kind of just suggests that you'll

7    only be doing it this one way.  So you could say, you know,

8    and/or in the debtors' discretion, you know, in the

9    Bankruptcy Court.

10             MR. BERGER:  We can certainly craft language to

11   that effect.  But --

12             MR. STEINBERG:  Your -- Your Honor --

13             MR. BERGER:  -- I'm sorry.  I was in midsentence.

14   If I may.  This whole release issue, I want the Court to

15   understand, GM is not a claimant in this -- in this case.

16             THE COURT:  No.

17             MR. BERGER:  They have -- it has rights under its

18   funding agreement for another day, but it's not a claimant.

19   And so the -- when we talk about releases, GM is not a

20   claimant.

21             THE COURT:  Well, except there is an obligation --

22   no.  I -- it's not a bankruptcy claimant, but there is an

23   obligation under the MDA to repay them the money that

24   they've advanced.  So they -- I mean, I think they are --

25             MR. BERGER:  And -- and --

Page 88

1           THE COURT:  -- affected by the release.

2           MR. BERGER:  Understood.  I'm -- and we did

3    preserve those rights in paragraph 7 that we provided.  They

4    have their rights preserved under the MDA.

5           THE COURT:  Well, maybe that --

6           MR. STEINBERG:  Your Honor --

7           THE COURT:  -- as long as it's either or in the

8    debtors' discretion, I think that should --

9           MR. STEINBERG:  Your Honor, I -- I don't -- if I

10   can just stay on this point one second longer.  If that was

11   true, then they could dissolve -- they could have dissolved

12   last year or -- or now and have the Delaware Chancery Court

13   deal with everything else that was supposed to be dealt with

14   as part of the plan.

15          THE COURT:  No.  But that's not an exclusive -- I

16   don't have exclusive jurisdiction over -- over this.  They

17   can dissolve that way.

18          MR. STEINBERG:  Including the -- on the

19   environmental claims, too, right?  I mean, because --

20   because those are claims that existed -- that exist now.

21   You could -- under Your Honor's -- under what we've been

22   talking about now you could dissolve DPH and have the

23   Delaware Chancery Court deal with the environmental claims

24   --

25          THE COURT:  I -- I suppose --

1          MR. STEINBERG:  -- something --

2          THE COURT:  -- we could.  But --

3          MR. STEINBERG:  -- something that the governments

4   don't want to do and -- and they want to have resolved in

5   this court.  All I'm saying is if -- if the plan was

6   supposed to deal with these claims so there would be final

7   resolution, because otherwise what you would have is a

8   circumstance where contrary to the structure of the funding

9   agreement -- then I'll stop because I'm not sure what I'm

10  supposed to say and not say with regard to the funding

11  agreement -- contrary to the structure, it wasn't supposed

12  to be a -- a dollar amount part, and then it sits for a year

13  or two years until something gets resolved past December 31

14  --

15         MR. BERGER:  Your Honor --

16         THE COURT:  Well --

17         MR. STEINBERG:  -- 2013.

18         THE COURT:  -- I don't know.  I don't know if

19  that's right.  I mean, that's for another day.

20         MR. BERGER:  Thank you.

21         THE COURT:  But, you know, it's -- it's -- I -- I

22  have closed cases before and this is permitted, where the

23  administration is done.  You've set up a trust.  The trust

24  is self -- you know, the trust is working on its own and

25  that's -- you know, that's the new entity that's making the

1    distributions or the reorganized debtor is.  You know, and

2    it's dealing with -- with claims that are asserted against

3    it that are -- you know, they're in violation of the bar

4    date and the Court doesn't have to stay open for that.  You

5    can reopen the case if you think that it really makes sense

6    to do it because maybe the -- there's no alternative.  But

7    -- but I think that's not an impediment to closing the case

8    if you've set up a mechanism to pay the claims.  I mean,

9    it's --

10           MR. STEINBERG:  Well --

11           THE COURT:  -- administration, that -- in my mind

12   that -- that's the administration.  It's done.  You've set

13   up the mechanism to pay them.  So I think as long as these

14   claims -- there's a provision to deal with these claims

15   through a reserve, which you have in I, although I would say

16   or, you know, such other -- you know, or by the Bankruptcy

17   Court is a -- you know, with dissolution of DPH or

18   Bankruptcy Court resolution, you know, under debtors'

19   discretion, then you've covered it.

20           MR. BERGER:  We'll -- we'll craft that language.

21   And the environmental claims, Your Honor, the issue has been

22   joined in this -- in this court.  So there is a distinction

23   between --

24           THE COURT:  Well, I clearly -- I mean, the thing

25   about the environmental claims is that you have 554, which

Page 91

1    is unique to the Bankruptcy Code.  So it wouldn't make sense

2    to deal with that in a -- in a state court decision.

3              MR. STEINBERG:  Right.  Your Honor, so that the

4    order is clear, whatever you just said about the reserve

5    does not impact whether we actually have to fund that

6    reserve --

7              THE COURT:  No.  No.  That's --

8              MR. BERGER:  Well, Judge --

9              THE COURT:  -- that's the separate language that's

10   been submitted.  That's the separate language.

11             MR. STEINBERG:  Okay.  If you want to take the

12   podium and then make your presentation or just let me make

13   my objection, whichever you would like.

14             THE COURT:  Well, can I -- one -- one other thing

15   about -- while we're on this issue.  E says upon -- and F

16   says, upon final resolution of the remaining claims and the

17   remaining adversary proceedings, and I'm not sure what that

18   means.  I mean, I have closed cases and I know Judge Peck

19   has because there were a couple of reported decisions where,

20   you know, a preference claim that loses -- I mean -- I'm

21   sorry -- a preference defendant loses, hasn't gotten the

22   stay, it's appealed and we close the case.  It can be

23   reopened if the -- if the thing is reversed on appeal.

24             So I think you ought to clarify what final means,

25   not -- I --

1          MR. BUTLER:  Your Honor, let me take the word

2    final out.  I -- because I've already said on the record

3    here that, you know, there's ample authority for appeals to

4    not obviate the final -- the closing of the case.

5          THE COURT:  Right.

6          MR. BUTLER:  I think probably in those -- we just

7    take final out of those two sentence -- those two

8    paragraphs.

9          THE COURT:  Right.  And what -- and I guess the

10   last point we should get on the record on these two

11   paragraphs, it says -- now that will say, upon resolution of

12   the remaining claims.  And I think it should also say, and

13   provision for distribution and respect thereof under the

14   plan because it's one thing to -- that's part of the

15   administration.  You've got to -- you've got to set up some

16   way to get the money.

17          Okay.  So then I guess I have a question on what's

18   -- what's the remaining -- you were talking about the

19   remaining objection, not based on the release, but the other

20   -- the other objection.

21          MR. STEINBERG:  Sure.  If I can just go through

22   the proposed order and tell you where the specific language

23   is that would -- that -- that we have concerns about.

24          THE COURT:  Okay.

25          MR. STEINBERG:  The first is the title of the

1   order.  Unless Your Honor thinks you're closing the cases

2   now, then the title needs to be changed.  To some extent I'm

3   happy if you're closing the cases now, but I -- I thought

4   that you may want to look at that language --

5            THE COURT:  Well, put in the word concerning, I

6   guess.  Yeah.  That's fine, or related to.

7            MR. BERGER:  We'll -- we'll put in concerning,

8   Your Honor.

9            THE COURT:  Okay.

10           MR. BERGER:  If I can just respond from the table

11   --

12           MR. STEINBERG:  Your Honor, with regard to

13   paragraph I, there is a -- there's a reservation of rights

14   that we have in paragraph 7 and I had wanted to sort of make

15   it clear that paragraph I is subject to paragraph 7.  So to

16   add, subject to paragraph 7.

17           THE COURT:  Well, doesn't --

18           MR. BERGER:  Your --

19           THE COURT:  -- doesn't it say notwithstanding

20   anything to the contrary herein?

21           MR. BERGER:  It does in paragraph 7 in the

22   beginning, Your Honor.

23           MR. STEINBERG:  But it's -- but the language in

24   paragraph 7 of notwithstanding anything to the contrary

25   herein, the first -- refers -- if it refers to everything,

Page 94

1   then that's fine.  If you put a colon there and then it

2   refers to the entire paragraph, then I'm fine.  If it -- if

3   it's limited to the first sentence, the first sentence is

4   just funding and this clause talks about dissolving and

5   establishing trusts and stuff like that.

6           So I'm happy if -- I'm happy if you put the word -

7   - if you put a colon instead of comma after, notwithstanding

8   anything to the contrary herein --

9           THE COURT:  Right.

10          MR. STEINBERG:  -- then I don't have to -- and --

11  and that involves the entire paragraph, then I don't need to

12  -- any cross references --

13          THE COURT:  Okay.

14          MR. STEINBERG:  -- and that would be fine.

15          THE COURT:  All right.

16          MR. BERGER:  I'm sorry.  You want it after the

17  fifth or so -- after the word, herein --

18          THE COURT:  It's all --

19          MR. BERGER:  -- in paragraph 7.

20          THE COURT:  It's all one sentence.

21          MR. BERGER:  Right.  Okay.  That's fine, Judge.

22          MR. STEINBERG:  Paragraph 7 modifies -- is the

23  override on the entire order.  And that would be fine, Your

24  Honor.

25          The next comment I have is the sentence that I had

1   wanted to include which is consistent with the reply that

2   nothing herein shall prejudice the right of GM to contest

3   the releases sought by the plan implementation parties as

4   part of the entry of the final decree.  Add that to

5   paragraph 7, which is what they wrote --

6           THE COURT:  No.  I think they already dealt -- I

7   mean, I think, again, now that we've gotten clear what it is

8   they have to do to get the final decree, I might as well

9   approve the release now.  Your concern was that there was --

10  there was a -- an omitted thing that was necessary for the

11  final decree.  And I've said --

12          MR. STEINBERG:  My -- my --

13          THE COURT:  -- we'll deal with that --

14          MR. STEINBERG:  -- that was one --

15          THE COURT:  -- by an appropriate reserve.

16          MR. STEINBERG:  -- that was -- I agree with that -

17  - that aspect of it, Your Honor.  But -- but, frankly, there

18  is -- there's a whole bunch that needs to be done between

19  now and -- and the entry of the final decree, including --

20          THE COURT:  But that's all -- that's all set --

21  they -- they have to -- yeah.  And they have to do that.

22  It's set out in 4, all the things they have to do.  As long

23  as they do those things, I think they get the -- they get

24  the final decree and they get the release.  There's nothing

25  else -- I don't think there's anything else that they need

1    to do.  They need to pay their taxes.  They need to take

2    such other actions as may be necessary to close the case.

3    You know, but that's everything.

4              MR. STEINBERG:  But -- but we would have the right

5    to contest the entry of the final decree.

6              THE COURT:  Yeah.

7              MR. STEINBERG:  Okay.  As long as I have the right

8    to contest the --

9              THE COURT:  No.  I -- I think I said earlier.

10             MR. BERGER:  No -- no, Judge.

11             THE COURT:  No.  No.  No.  I said -- no.  You

12   contest it if they haven't done those things.

13             MR. STEINBERG:  Right.

14             MR. BERGER:  Your Honor, I'm -- I'm just curious.

15   If GM is not a creditor in this case --

16             THE COURT:  Right.

17             MR. BERGER:  -- the debtors have done, and they're

18   going to come to the -- Your Honor with a status report --

19             THE COURT:  That says we have done all of these

20   things.

21             MR. BERGER:  What -- what I don't want is the door

22   that we've just swung open potentially very wide is for GM

23   to come in and -- and say, no.  The final decree can't be

24   entered on -- on any other grounds.

25             THE COURT:  No.  No.  No.  It's --

1           MR. BERGER:  That's -- they have --

2           THE COURT:  No.  I -- I think I said this earlier.

3    If I didn't, I -- I meant to, which is that you -- F should

4    say, take such other actions that would be necessary to

5    close the Chapter 11 cases, and it says, including

6    preparation of final report detailing that there's

7    compliance with this order and notice of the final

8    conference on final decree.  And, you know, upon the Court's

9    finding that you have done those -- it has done those

10   things, the final decree will be entered.

11          MR. BERGER:  But why -- I'm sorry to belabor the

12   point.

13          THE COURT:  And so the only way-- someone can

14   object by saying, you haven't done this.  You haven't done

15   one of these things that the order requires you to do.  They

16   can't dream up some new thing.

17          MR. BERGER:  But I'm not -- I'm obviously

18   concerned about the dreaming up the new thing.  But if GM

19   has its rights under its MDA -- and we'll deal with that in

20   a separate proceeding -- and it's not a creditor with a

21   claim in this case, why would GM have a standing?  I don't

22   --

23          THE COURT:  Well, they may not.

24          MR. BERGER:  -- think it would --

25          THE COURT:  I'm not saying GM in particular.  I'm

Page 98

1    just saying that you -- you're going to ask for a final

2    decree to be entered.  You're going to give me notice of

3    that with your final report that says we've done the

4    following things.  Please enter the final decree in -- in --

5    as consistent with the order of July 31st.  And -- and the

6    order says you're going to get a final decree if you've done

7    these things.

8              MR. BERGER:  Yeah.  If it's -- if it's limited to

9    the debtors doing what it needs to -- they need to do to --

10             THE COURT:  Right.

11             MR. BERGER:  -- close this case --

12             THE COURT:  Well, not even -- I mean, to the

13    things stated in the order that they need to do.

14             MR. BERGER:  Right.  Then we'll live with that --

15             THE COURT:  Okay.

16             MR. BERGER:  -- and we'll deal with whatever

17    objection might be filed on that day.

18             THE COURT:  Right.

19             MR. STEINBERG:  I think that's it for me.

20             THE COURT:  But it's kind of -- I mean, it's kind

21    of like the -- you know, the orders that say that if there's

22    a default on this conditional order on lifting the stay it's

23    limited to whether there's a default or not, not all the

24    other things which you can argue lift stay motions over.

25             MR. BERGER:  Right.

1           MR. STEINBERG:  I think that's it for me, Your

2     Honor.

3           THE COURT:  Okay.

4           MR. SAYDAH:  Your Honor, for the record Gilbert

5     Saydah representing Tata.

6           Just to clarify one issue.  The debtors are

7     obligated to prepare a report detailing what it is that

8     they've done in order to obtain entry of the final decree.

9           THE COURT:  Right.

10          MR. SAYDAH:  That's going to be filed and served

11    and parties are going to have a specified objection deadline

12    or --

13          THE COURT:  Well --

14          MR. SAYDAH:  -- it's --

15          THE COURT:  -- I -- I think you -- if you -- if

16    you can dispute that -- you know, they're going to say,

17    we've resolved your adversary proceeding.  If you say -- if

18    it hasn't, you know, if it hasn't been settled and you're

19    scheduled for trial on -- on January 15th, then, yeah.

20    You'll -- you'll say, no.  This is wrong.

21          MR. SAYDAH:  I just wanted to clarify the

22    procedures by which they're going to actually file that and

23    serve that --

24          MR. BUTLER:  The Court told us to --

25          MR. SAYDAH:  -- so the parties have an opportunity

1    to object.

2            THE COURT:  I think they'll file it on the docket.

3    People will get electronic notice.  I think they've -- they

4    don't have to serve it on any -- you know, every person.

5    They'll get electronic notice on the docket.  They'll file

6    it on the docket and the notice will say we're scheduling a

7    conference, what did I say, five days later?

8            MR. BUTLER:  Yes, you did.

9            THE COURT:  We're scheduling a conference five

10   days later and at that point, consistent with the Court's

11   order concerning case closing --

12           MR. SAYDAH:  Thank you, Your Honor.

13           THE COURT:  -- they'll present the final decree.

14           MR. BUTLER:  Your Honor, I think that disposes of

15   all of the objections.  Your Honor has given us a variety of

16   instructions on -- on the record today.  With the Court's

17   permission, we'll get a copy of the transcript.  We've taken

18   a lot of notes, but we'll get a copy of the transcript.  We

19   will -- we'll prepare a draft revised order and we will

20   circulate it.  We're not going to settle it, but we'll

21   circulate it to the parties to get -- see if anyone thinks

22   we've --

23           THE COURT:  Right.

24           MR. BUTLER:  -- misunderstood what Your Honor has

25   said.

Page 101

1          THE COURT:  Yeah.  And that -- I wouldn't -- that

2     shouldn't be a long process.  You know, that should -- I

3     have a pretty good idea of what it's supposed to say.  So I

4     am thinking like a -- you know, a couple day process.

5          MR. BUTLER:  Right.

6          THE COURT:  And if you can provide chambers with a

7     blackline as well as the clean one when you submit it to

8     chambers --

9          MR. BUTLER:  We will, Your Honor.

10          THE COURT:  -- I would appreciate it.

11          MR. METH:  Your Honor, given that the new order is

12     going to be circulated -- and for the record, Richard M.

13     Meth, Fox Rothschild for DSSI.

14          We assume that we'll be included in that

15     circulation list, Mr. Butler?

16          MR. BUTLER:  Mr. Meth, I always include you.

17       (Laughter)

18          MR. METH:  I thought so.

19          MR. BUTLER:  And you know that.

20          THE COURT:  The objectors will be included.

21          MR. METH:  I thank you, Mr. Butler.

22          THE COURT:  Okay.

23          Okay.  Anything else?

24          MR. BUTLER:  We have nothing else, Your Honor.

25          THE COURT:  Okay.

Page 102

1              MR. BUTLER:   Thank you very much.

2              MR. BERGER:   Thank you, Judge.

3              MR. STEINBERG:   Thank you, Your Honor.

4         (Whereupon, these proceedings were concluded at 2:59

5    p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    I N D E X

2

3                   RULINGS

4                                    Page        Line

5

6   Application for Final Decree

7   Reorganized Debtors Motion for Final

8   Decree and Order Pursuant to 11 U.S.C.

9   Sections 105, 350(a) and 1142 Fed. R.

10  Bankr. P. 3022, and Local Bankr. R.

11  3022-1 Closing the Bankruptcy Cases

12  and Providing Related Relief          --          --

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 104

1              C E R T I F I C A T I O N

2

3    I, Sherri L. Breach, CERT*D-397, certified that the

4    foregoing transcript is a true and accurate record of the

5    proceedings.

6    Sherri L        Digitally signed by Sherri L
                      Breach
7    Breach          DN: cn=Sherri L Breach, o, ou,
                      email=digital1@veritext.com,
8                     c=US
                      Date: 2013.08.05 14:45:20 -04'00'

     SHERRI L. BREACH

9

     AAERT Certified Electronic Reporter & Transcriber

10

     CERT*D -397

11

12

13

     Veritext

14

     200 Old Country Road

15

     Suite 580

16

     Mineola, NY 11501

17

18

19

     Date:  July 31, 2013

20

21

22

23

24

25