**Hearing Date: September 26, 2013 at 10:00 A.M. (EDT)**
**Response Deadline: September 19, 2013 at 4:00 P.M. (EDT)**

BUTZEL LONG, a professional corporation
150 West Jefferson, Suite 100
Detroit, MI  48226
(313) 225-7000
Thomas B. Radom
Bruce L. Sendek
David J. DeVine
*Attorneys for Reorganized Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re | Chapter 11 |
| DPH HOLDINGS CORP., *et al.,* | Case No. 05-44481 (RDD) |
|  | Jointly Administered |
| Reorganized Debtors. |  |

**REORGANIZED DEBTORS' MOTION FOR ORDER (I) ENFORCING
(A) MODIFIED PLAN AND PLAN MODIFICATION ORDER INJUNCTIONS,
(B) OPEB ORDERS, AND (C) RECOUPMENT ORDER; (II) ENJOINING JAMES
SUMPTER'S SECOND LAWSUIT FILED IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT OF INDIANA AND REQUIRING
JAMES SUMPTER TO DISMISS THE INDIANA ACTION
WITH PREJUDICE; AND (III) HOLDING JAMES SUMPTER
IN CONTEMPT AND AWARDING OTHER SANCTIONS**

**("SUMPTER INJUNCTION MOTION II")**

DPH Holdings Corp. ("DPH") and certain of its affiliated reorganized debtors in the

above-captioned cases (together with DPH, the "Reorganized Debtors") bring this motion

("Motion") for an Order enjoining James B. Sumpter's second United States District Court,

Southern District of Indiana action [1] ("Sumpter Indiana Action II"), filed on June 26, 2013, and

---

[1] *Sumpter v. DPH Holdings, Corp., et al.*, Case No. 1:13-cv-1024 WTL-TAB, *attached as*
***Exhibits 1A and 1B.***  **Exhibit 1A** is Sumpter's amended complaint; however, Sumpter neglected
to file the corresponding exhibits to that document.  Accordingly, to provide the Court with

holding Sumpter in contempt and awarding other sanctions.  The Motion is brought on behalf of

all defendants in Indiana Action II (collectively, the "Movants" or the "Defendants")[2] and seeks

(I) to enforce this Court's (a) Plan and Plan Modification Order Injunction ("Modification

Approval Order") (Dkt. No. 18707); (b) Final OPEB Termination Order (Dkt. No. 16448); and

(c) Recoupment Motion Order (Dkt. No. 21566), and (II) to sanction Sumpter for violating this

Court's prior orders.  In support of the Motion, the Movants respectfully represent as follows:

**OVERVIEW**

1.      As this Court is well aware, over the past five years, Sumpter, a Delphi salaried

retiree, has filed, in a *pro se* capacity, a series of unwarranted actions, claims, motions and

appeals against the Reorganized Debtors pertaining to the termination or modification of his

alleged retiree benefits as a consequence of the chapter 11 proceedings.  These filings have

included, among others, (a) a Recoupment Motion on Behalf of Delphi Salaried Retirees (Dkt.

No. 21566), which this Court denied on October 13, 2011 (Dkt. No. 21645)[3]; (b) a Vesting

Motion Regarding Extended Disability Benefits for Salaried Employees and Salaried Retirees

(Dkt. No. 21680), which this Court denied on May 1, 2012 (Dkt. No. 21876); (c) an Expedited

Request for Preliminary Injunction to Prohibit DPHH from Terminating Salaried Disability Plan

(Dkt. No. 21867), which this Court denied *sua sponte* on May 1, 2012 (Dkt. No. 21877); and (d)

a complaint in the United States District Court for the Southern District of Indiana, Indianapolis

---

copies of those exhibits, Sumpter's original complaint is attached as **Exhibit 1B**.  Subsequent
references in this Motion to Sumpter's complaint are to the amended complaint, which is simply
referenced subsequently as **Exhibit 1.**

[2] In addition to DPH, the suit also names as defendants DPH's President, John Brooks, and its
attorneys, Cynthia Haffey, Roberta Granadier, and the law firm Butzel Long, P.C., as well as
other DPH and Butzel Long employees that have not been identified by Sumpter.

[3] On appeal by Sumpter, the District Court affirmed this Court's Order.  Sumpter later withdrew
his appeal to the Second Circuit.

Division, Case No. 1:13-cv-1024 ("Indiana Action I"),[4] which this Court ordered Sumpter to dismiss and enjoined him from further prosecuting on May 28, 2013 (Dkt. No. 22063) and July 19, 2013 (Dkt. No. 22090), respectively.  While each of these filings was styled differently and purported to be based on one or more different causes of action, they were all based on the same storyline—that termination of Sumpter's other post-employment benefits ("OPEB") was illegal, even though, by virtue of the Plan Modification Order and other relevant orders of the Court, that was not the case at all.

2.    The Reorganized Debtors have spent tens of thousands of dollars defending against Sumpter's meritless claims.  This Court has been exceedingly generous and patient with Sumpter, but not without admonishing him to forgo future actions that are not based on a "good faith real argument."  *See September 22, 2011 Hearing Transcript, p. 23* (Dkt. No. 21609)*, attached as **Exhibit 2***.  During the September 22, 2011 hearing, this Court warned Sumpter that future actions dealing with claims that had "already been dealt with" and that "simply don't make sense," particularly those that violated the Plan Modification Order, would "merit the imposition of sanctions."  *Id.* at 2:20-23:19.  This Court likewise granted the Reorganized Debtors' request for an order barring Sumpter from pursuing further litigation regarding issues previously adjudicated.  *See Sumpter ERISA Injunction Order and Sumpter ERISA Injunction Order II* (Dkt. Nos. 22063 and 22090).

---

[4] Sumpter previously disregarded this Court's jurisdiction and challenged its orders outside of the proper appeal process when he filed a lawsuit in the United States District Court for the Southern District of Indiana ("Sumpter Indiana Action I").  Then, as now, Sumpter essentially asked the Indiana Court to reexamine issues decided and rights granted by this Court.  On motion by the Reorganized Debtors, this Court enjoined Sumpter Indiana Action I and ordered Sumpter to dismiss all claims with prejudice.

3.      In complete disregard of that warning, the Movants now find themselves faced

with defending against Sumpter's Indiana Action II[5], filed on June 26, 2013 (and amended on

July 30, 2013)—the most egregious and frivolous of Sumpter's filings to date.  This time around,

Sumpter has sued not only DPH, but also its President, John Brooks, as well as DPH's counsel,

Butzel Long, Cynthia J. Haffey of Butzel Long, Roberta Granadier, formerly of Butzel Long, as

well as employees from both entities that have yet to be named by Sumpter.  *See **Exhibit 1**.*

4.      In this new complaint, Sumpter now claims that the termination of his

supplemental extended disability benefits ("SEDB") by DPH in March of 2012 under the

company's Life and Disability Benefits Program for Salaried Employees ("Benefit Plan"), which

was the subject of Delphi's Salaried OPEB Termination Motion filed in February of 2009 (Dkt.

No. 14705), violated the Court's Final OPEB Order (Dkt. No. 16448) because the SEDB

allegedly constituted vested benefits that the Final OPEB Termination Order directed DPH to

pay to Sumpter until age 65.  Incredulously, the benefit termination also gives rise, in Sumpter's

mind, to claims for ERISA violations, breach of contract, breach of fiduciary duty, civil

conspiracy, mail fraud, extortion, racketeering, RICO violations, Americans with Disability Act

violations and civil rights violations.  Sumpter also asserts an unjust enrichment claim against

DPH for pension benefit offsets against his SEDB, and thus seeks to revisit his previously denied

Recoupment Motion.  *See **Exhibit 1**, Complaint.*

5.      The issue whether benefits for salaried retirees under the Benefits Plan were

vested was briefed, argued and decided by the Court in its Modified Bench Ruling on Debtors'

Salaried OPEB Termination Motion (Dkt. No. 16443) and Final OPEB Termination Order (Dkt.

No. 16448).  The Court held that benefits under the Benefit Plan were modifiable at will and

---

[5] This Court previously enjoined Indiana Action I. (Dkt. Nos. 22063 and 22090).

therefore not vested, citing in support, the case of *Sprague v. General Motors Corp.,* 133 F. 3d 388 (6th Cir. 1998).  Sumpter was a party in interest to that motion, having filed his own objection (Dkt. No. 14705).

6.      For the reasons explained below, Sumpter's new action, like Sumpter Indiana Action I and Sumpter's previous motions, violates the Plan Injunction and is otherwise barred by the doctrines of res judicata and issue preclusion, legal concepts Sumpter refuses to acknowledge or accept.  Nonetheless, by having chosen to represent himself in all of these proceedings, Sumpter should be deemed to understand the law and should pay for inexcusably disregarding it, as well as the multitude of Orders of this Court.

7.      On August 6, 2013, the Court entered an Order Pursuant to 11 U.S.C. §§ 105, 350(a) and 1142, Fed. R. Bankr. P. 3022 and Local Bankr. R. 3022-1 Concerning Closing the Bankruptcy Cases and Providing Related Relief. (Dkt. No. 22121).  That Order recognizes the critical need to wrap up all pending matters in the Reorganized Debtors' open cases by December 31, 2013 in light of various issues concerning GM's funding obligations.  This new case by Sumpter is no exception.  It is nothing more than a costly nuisance to the Defendants, and there is no reason why this Court should not act expeditiously to summarily quash this harassment and to prohibit Sumpter from proceeding further with his new Indiana action.

## PROCEDURAL AND OTHER RELEVANT HISTORY

8.      Each of the claims asserted in Sumpter Indiana Action II is based on Sumpter's flawed interpretation of this Court's prior orders and/or actions taken by DPH that were authorized under this Court's orders.  The Complaint seeks relief based on and/or requiring an interpretation of this Court's orders.  By illustration, Sumpter claims that his new action implicates (i) Defendant DPH's "violation of Bankruptcy Court (SDNY) OPEB Order and it's

(sic) ongoing failure in regards to unpaid and future SEDB benefit payments…" *Complaint, ¶ 24*; (ii) DPH's breach of contract "when it ceded the Pension Benefit Program…to the Pension Benefit Guarantee Corporation (PBGC), in July 2009," *Complaint, ¶ 27*; (iii) "DPHH's (sic) willful violation of The Honorable Robert D. Drain's order regarding payment of Plaintiff's SEDB benefits…which was aided by Butzel long (sic), P.C. and other individual (sic)…" *Complaint, ¶ 29*; (iv) "a clear indication that the [Bankruptcy] Court would have ordered an 1114 committee, if vested benefits had been identified," *Complaint, ¶ 43*; and (v) "protections afforded by 11 USC 1114, which include…[a] bankruptcy court hearing regarding the termination of the SEDB benefits, [e]stablishing an 1114 committee; …[p]articipation on the creditors committee…." *Exhibit 1, Complaint, ¶ 49*.

## I.      This Court's Orders

### A.      *The Salaried OPEB Termination Orders*

9.      On February 4, 2009, the Debtors filed a motion for an order pursuant to 11 U.S.C. §§ 105, 363(b)(1), and 1108 to confirm the Debtors' authority (or alternatively, authorization, but not direction) to terminate benefits provided under the Delphi Salaried Health Care Program, the Delphi Salaried Life and Disability Benefits Program (previously defined as the "Benefit Plan") and the Delphi Salaried Health Care Program (the "Salaried OPEB Termination Motion"). *Salaried OPEB Termination Motion, ¶ 45* (Dkt. No. 14705).

10.      The Debtors relied on Article III, Section 3.05(b)(1) of the Benefit Plan, which provides the following reservation of rights language: "The Corporation reserves the right to amend, modify, suspend or terminate the program in whole or in part, at any time, by action of its Board of Directors or other committee expressly authorized by the Board to take such action." *Exhibit 3, Benefit Plan, Article III, Section 3.05(b)(1)*.

11.     The Debtors further argued that section 1114(d) of the Bankruptcy Code was inapplicable to the termination of the Benefits Plan. *See Salaried OPEB Termination Motion, ¶¶ 46-47* (Dkt. No. 14705).

12.     Approximately 1,633 objections were filed in opposition to the Salaried OPEB Termination Motion. *See Revised Proposed Fortieth Omnibus Hearing Agenda, Exhibits A – C.* (Dkt. No. 16326).

13.     Sumpter was one of the objecting parties. (Dkt. No. 14898.) Relevant to this Motion to Enjoin, Sumpter "object[ed] to Delphi's efforts to terminate its obligations as it pertain[ed] to *any* part of [his] retirement benefits" and asserted that Delphi had "no specific right to change … *disability* benefits". *Sumpter OPEB Objection p. 5-6 (emphasis added).* Attached as an exhibit to Sumpter's Objection was a page from the Delphi Summary Plan Description regarding "Life and Disability Benefit Coverages". (Dkt. No. 14898.)

14.     On February 25, 2009, this Court entered its Provisional Salaried OPEB Termination Order in which it ordered in relevant part that "[b]ased on the record at the Hearing, the Debtors' Salaried OPEB benefits have not vested and the Debtors have reserved the right to modify or terminate Salaried OPEB benefits. *Provisional Salaried OPEB Termination Order, ¶ 5.* (Dkt. No. 16380). The Court also exercised its discretionary authority under section 1114(d) of the Bankruptcy Code to appoint a committee of retired employees ("Retirees Committee") solely for the limited purpose of determining whether there was sufficient and competent evidence not presented at the Hearing to establish that Salaried OPEB benefits had vested as to any Eligible Salaried Retiree or group and to meet with the Debtors. *Id. at ¶¶8-9.* The Court retained jurisdiction to hear and determine all matters arising from the implementation of the Order. *Id. at ¶13.*

15.      On March 6, 2009, the Retiree Committee filed its Supplement And Report In Support Of Motions To Appoint An Official Retiree Committee Pursuant To Section 1114 Of The Bankruptcy Code And In Opposition To Debtors' Motion To Terminate Salaried Retiree Benefits ("Retiree Committee Report").  (Dkt. Nos. 16430 and 16431.)

16.      On March 10, 2009, this Court filed a Modified Bench Ruling On Debtors' Salaried OPEB Termination Motion ("Modified Bench Ruling") in which the Court summarized the motion as follows:  "The debtors take the position that notwithstanding that the subject matter of these plans involves reimbursing or providing for the reimbursement of 'payments for retired employees and their spouses and dependants, for medical, surgical or hospital care benefits, or benefits in the event of sickness, accident, *disability* or death,' that their request need not, and should not be governed by Section 1114 of the Bankruptcy Code."  *Modified Bench Ruling, pp. 1, 17-24 (emphasis added)* (Dkt. No. 16443).

17.      On March 11, 2009, this Court entered its Final OPEB Termination Order. (Dkt. No. 16448.)  In that order, this Court found that "[T]he Debtors' Salaried OPEB benefits have not vested and the Debtors have reserved the right to modify or terminate Salaried OPEB benefits."  *Id. at ¶ 2.*  The Court further ordered that "[t]he Debtors are authorized, but not directed, to terminate Salaried OPEB benefits as provided in the [Salaried OPEB Termination] Motion."  *Id. at ¶ 3.*

18.      The Final OPEB Termination Order also provided that "[t]he Debtors shall continue to provide benefits for claims incurred by each Eligible Salaried Employee through the cessation date of such retiree's participation in the applicable welfare plan, provided that such retiree has timely paid all requisite contributions for the applicable plan, and provided further

that such retirees shall not be required to file proofs of claim in this Court to implement the terms of this decretal paragraph." *Id. at ¶ 3.*

19.    The remaining issues surrounding the Salaried OPEB Termination Motion were finally resolved on April 3, 2009, when this Court entered the Amended Order Pursuant to 11 U.S.C. § 363 And Fed. R. Bankr. P. 9019 For Order Approving Debtors' Compromise And Settlement With Committee Of Eligible Salaried Retirees And Delphi Salaried Retirees' Association ("Salaried OPEB Settlement Order") (Dkt No. 16547).

### B.    *Plan Modification Order and Plan Injunction*

20.    On December 10, 2007, the Debtors filed their first amended joint plan of reorganization and related disclosure statement, and on January 25, 2008, this Court entered an order (the "Confirmation Order") confirming the Plan, as modified ("Confirmed Plan").  The Confirmed Order became final on February 4, 2008.

21.    On June 16, 2009, the Debtors filed the "First Amended Joint Plan of Reorganization of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (As Modified)" (hereinafter the "Modified Plan").  The Modified Plan made certain modifications to the terms of the Confirmed Plan.  To comply with the requirements of 11 U.S.C. §§ 1125 and 1127, on the same date, the Debtors filed a supplement to the Disclosure Statement (the "Supplement").

22.    On July 30, 2009, this Court entered its Order Approving Modifications Under 11 U.S.C. § 1127(b) to (I) First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession, as Modified and (II) Confirmation Order (the "Plan Modification Order") (Dkt. No. 18707), which confirmed the Debtors' Modified Plan.  On October 6, 2009, the effective date of the Modified Plan occurred and the Modified Plan was

substantially consummated ("Effective Date").  On that date, the Debtors emerged from chapter
11 as the Reorganized Debtors.

23.     Upon the Effective Date of the Modified Plan and Modification Approval Order,
a permanent injunction against creditors and other parties in interest was imposed, prohibiting
the commencement or continuation of any action to recover any claim against the Debtors that
arose on or prior to October 6, 2009.

24.     Article 11.14 of the Modified Plan provides as follows:

The satisfaction, release, and discharge pursuant to [Article XI of the Modified Plan]
shall act as an injunction against any Person commencing or continuing any action,
employment of process, or act to collect, offset, or recover any Claim, Interest, or Cause
of Action satisfied, released, or discharged under [the Modified] Plan to the fullest extent
authorized or provided by the Bankruptcy Code… *Modified Plan Art. 11.14*.

25.     Similarly, paragraph 22 of the Plan Modification Order provides as follows:

The Debtors and all Persons shall be precluded and permanently enjoined on and after the
Effective Date from (a) commencing or continuing in any manner any Claim, action,
employment of process, or other proceeding of any kind with respect to any Claim,
Interest, Cause of Action, or any other right or Claim against the Reorganized Debtors,
which they possessed or may possess prior to the Effective Date, (b) the enforcement,
attachment, collection, offset, recoupment, or recovery by any manner or means of any
judgment, award, decree, order, or otherwise with respect to any Claim, Interest, Cause of
Action, or any other right or Claim against the Reorganized Debtors, which they
possessed or may possess prior to the Effective Date, (c) creating, perfecting, or
enforcing any encumbrance of any kind with respect to any Claim, Interest, Cause of
Action, or any other right or Claim against the Reorganized Debtors, which they
possessed or may possess prior to the Effective Date, and (d) asserting any Claims,
Interests, or Causes of Action that are satisfied, discharged, released, or subject to
exculpation hereby or by the Modified Plan.  *Plan Modification Order, para 22.*

26.     Furthermore, paragraph 47 of the Plan Modification Order provides in part:

[R]equests for payment of an Administrative [Expense] Claim (other than as set forth in
the Modified Plan or otherwise contemplated by the Master Disposition Agreement, i.e.
for such claims arising on or after June 1, 2009) must be filed, in substantially the form of
the Administrative Claim Request Form attached as Exhibit 10.5 to the Modified Plan,
with the Claims Agent and served on counsel for the Debtors and the Creditors'
Committee no later than 30 days notice of after the Effective Date is filed on the docket
of the Chapter 11 Cases [November 5, 2009].  Any request for payment of an

Administrative Claim pursuant to this paragraph that is not timely filed and served shall be disallowed automatically without the need for any objection from the Debtors or the Reorganized Debtors. *Modification Approval Order, para 47.*

27.     Paragraph 20 of the Plan Modification Order incorporated the Modified Plan and discharged DPH and any of its assets or properties as provided in Article 11.2 of the Modified Plan, released DPH as set forth in articles 11.4, 11.5, 11.6 and 11.7 of the Modified Plan, and exculpated and limited the liability of DPH as set forth in Article 11.11 of the Modified Plan. *Plan Modification Order*, ¶ 20.

28.     Section 11.2 of the Modified Plan specifically provides that the "distributions and rights that are provided in the Modified Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims and Causes of Action, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims, rights, and Interests, including, but not limited to, Claims and interests that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims relate to services performed by employees of the Debtors prior to the Petition Date and that arise from a termination of employment or a ***termination of any employee or retiree benefit program***, regardless of whether such termination occurred prior to or after the Effective date…. The Confirmation Order shall be a judicial determination of the discharge of all Claims against and Interests in the Debtors, subject to the occurrence of the Effective Date." *Modified Plan, ¶11.2* (*emphasis added*).

29.     Section 11.11 of the Modified Plan, entitled Exculpation And Limitation Of Liability, provides in relevant part that "the Reorganized Debtors…and [their] current or former … officers, directors, …employees, …attorneys, [and] representatives… are hereby released

11

from, any claim, obligation, Cause of Action, or liability to any party…for any act or omission in connection with, relating to, or arising out of [including, among other things,] the Debtors' Chapter 11 Cases... the Delphi-PBGC Settlement Agreement, any employee benefit plan, …release or other agreement or document created, modified, amended or entered into in connection with …this Plan….″ *Modified Plan, § 11.11.* The Exculpation provision goes on to provide that the "exculpatory provisions…apply to postpetition conduct….″ *Id.*

30.    Section 11.14 of the Modified Plan, entitled Injunction, provides in relevant part that "the satisfaction, release, and discharge pursuant to this Article XI shall act as an injunction against any Person commencing or continuing any action… satisfied, released, or discharged under this Plan to the fullest extent authorized or provided by the Bankruptcy Code….″ *Modified Plan, § 11.14.*

31.    Section 13 of the Modified Plan, entitled Retention of Jurisdiction, provides that "[p]ursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and this Plan, including, among others, …to hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date.″ *Modified Plan, § 13(p).*

32.    Section 13(u) further provides that the Court retained exclusive jurisdiction to "hear and determine all matters relating to the … Delphi-PBGC Settlement Agreement.″ *Modified Plan, § 13(u).*

12

II.    **Sumpter's Prior Related Motions**

    *A.*    ***Recoupment Motion***

33.    On August 22, 2011, Sumpter filed a Motion For Recoupment On Behalf Of Delphi Salaried Retirees (Dkt. No. 21534). On September 7, 2011, he filed an Amended Motion For Recoupment On Behalf Of Delphi Salaried Retirees (Dkt. No. 21566) ("Recoupment Motion"). In this latest Sumpter Indiana Action II, Sumpter reasserts the same defective legal argument, albeit relabeled as "Unjust Enrichment." *See* **Exhibit 1**, *Complaint, Count III; see also The Reorganized Debtors' Response In Opposition To Amended Motion For Recoupment, ¶ 21* (Dkt. No. 21581). Sumpter "seeks to recover pension benefit offsets that DPHH (sic) has taken or will take from the Plaintiffs (sic) SEDB payments." *Complaint, ¶ 26.* In his Recoupment Motion, Sumpter asserted, "[t]his motion affects the dischargeability of a debt in that this recoupment motion seeks to determine the proper liability as it relates to the discharge of Salaried Retiree OPEB benefits…" (¶ 14); "…the discharge of Delphi's OPEB liabilities created an overpayment by DSRs which continues to accrue…" (¶ 16(d)(iii), p. 10); "…Debtors [sic] discharge of its OPEB obligations to Salaried Retirees has created an overpayment by the DSRs and the sub-class of DDSRs" (¶28); and "…the significant hardship to Disabled Retirees… resulted from the discharge of Delphi's OPEB liabilities." (p. 17).

34.    As in the previous action, the offsets or reductions against Sumpter's SEDB were appropriate and based on the applicable provisions of the Benefit Plan. *Id. at ¶2* (Dkt. No. 21581).

35.    On October 13, 2011, this Court entered its Order Denying [Sumpter's] Amended Motion For Recoupment On Behalf Of Delphi Salaried Retirees and "retain[ed] jurisdiction to

hear and determine all matters arising from or relating to the implementation of this order." (Dkt. No. 21645.)

36.     Sumpter appealed this Court's decision.   The District Court for the Southern District of New York affirmed.  *Exhibit 4*.   Sumpter later withdrew his appeal to the Second Circuit, believing that the Reorganized Debtors' termination of his SEDB benefits (the subject of this latest action) rendered his appeal moot.

### B.     *Vesting Motion and Injunction Motion*

37.     In February 2012, DPH notified Sumpter and all other individuals covered by any benefits contained in the Benefit Plan still remaining with DPH that such benefits were terminating effective March 31, 2012.  *See **Exhibit 5**, February 2012 letter to Sumpter and other retirees regarding termination of the Plan*; ***Exhibit 6**, February 2012 letter to non-retired employees regarding termination of the Plan*.

38.     The notice to non-retired employees was accompanied by a proposed Separation and Release Agreement; the notice to retirees, including Sumpter, was accompanied by a proposed Release Agreement.  *Id.*

39.     In no way was the March 31, 2012 termination of the Benefit Plan linked to whether or not any recipient opted to sign the Release Agreements by the April 9, 2012 deadline for same (a deadline that was later extended).  As confirmed by the letters themselves, as well as DPH's corporate resolution dated March 23, 2012 (***Exhibit 7***), the plan was going to terminate on March 31, 2012, no matter what Sumpter or any other Benefit Plan participant elected to do with regard to the releases.

40.     On April 6, 2012, Sumpter filed a Vesting Motion Regarding Extended Disability Benefits For Salaried Employees And Salaried Retirees (the "Vesting Motion"). (Dkt. No.

21680.)  In his Vesting Motion, Sumpter requested a ruling that the Plan benefits were vested and could not be terminated by DPH.  *Id*.  This is the identical relief sought by Sumpter in his current Indiana action.

41.    Ten days later, Sumpter filed a related "Expedited Request For Preliminary Injunction To Prohibit DPHH From Terminating Salaried Disability Plan" (the "Injunction Motion") (Dkt. No. 21687).  In his Injunction Motion, Sumpter sought an order enjoining DPH from "any action related to the termination" of his SEDB benefits.  *Injunction Motion, ¶ 6*. Again, the action underlying this motion is identical to the action underlying Sumpter's current Indiana action.

42.    In his Injunction Motion, Sumpter conceded that both the Vesting Motion and Injunction Motion arose "under the bankruptcy code" and "related to the debtor's bankruptcy case" and "[t]o the extent that there are any issues that are determined to be non-core", Sumpter consented to this Court having jurisdiction. *Injunction Motion, ¶¶ 2 & 4*.

43.     On April 17, 2012, Attorney Haffey e-mailed a letter to the Court asking that the two motions filed by Sumpter be dismissed on the grounds that they were procedurally improper. (Dkt. No. 21866.)

44.    Later that day, Sumpter e-mailed a letter to the Court responding to Attorney Haffey's e-mail and referencing two conversations from that and the prior day regarding motion scheduling issues. *See Complaint, **Exhibit 1***.

45.    On May 1, 2012, the Bankruptcy Court entered orders denying both motions on the grounds that they were not brought through an adversary proceeding, advising again of the possibility of sanctions, and "retain[ing] jurisdiction to hear and determine all matters arising from or relating to the implementation of this order." *Order Denying James B. Sumpter's*

*Vesting Motion Regarding Extended Disability Benefits for Salaried Employees and Salaried Retirees* (Dkt. No. 21876); *Order Denying James B. Sumpter's Expedited Request for Preliminary Injunction to Prohibit DPH From Terminating Salaried Disability Plan* (Dkt. No. 21877).

### C. *Sumpter ERISA Motion (Indiana Action I)*

46.       In the Sumpter Indiana Action I Complaint, Sumpter asserted, among other things, that because he was permanently disabled from his employment at Delphi on December 8, 2000, he was entitled to a lump-sum life insurance payout under DPH's Benefit Plan.

47.       DPH moved to enjoin Sumpter's action and this Court granted DPH's motion on the basis that Sumpter's claim for benefits had been previously adjudicated.  (Dkt. No. 22063.)

48.       On June 26, 2013, Sumpter filed this lawsuit with the Southern District of Indiana, again asking *that* Court to interpret and overrule *this* Court's prior orders.

## <u>JURISDICTION AND VENUE</u>

49.       This Court has subject-matter jurisdiction over this matter under 28 U.S.C. § 1334, Section 13 of the Modified Plan, and Paragraph 56 of the Plan Modification Order.  This matter is a core proceeding within the meaning of 28 U.S.C. §157(b).[6]  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

50.       A "Bankruptcy Court plainly ha[s] jurisdiction to interpret and enforce its own prior orders," particularly where the dispute arises from the Modified Plan or the Confirmation Order.  *See Traveler's Indemnity Company v. Bailey*, 557 U.S. 137, 151-152 (2009); *In re: Petry Retail, Inc.*, 304 F.3d 223, 230 (2d Cir. 2004).  "A 'bankruptcy court's interpretation of its own

---

[6] The Bankruptcy Court, as a unit of the District Court referred to it, has core jurisdiction over the allowance and disallowance of all claims except where specifically provided in the Bankruptcy Code, which does not specifically exclude ERISA claims from that jurisdiction. *Browning v. Levy*, 283 F.3d 761, 779 (6th Cir. 2002).

confirmation order is entitled to substantial deference." *Traveler's,* 557 U.S. at 151 fn. 4 (*internal citations omitted*).

51.    This Court is well within its jurisdiction to take action to enforce the Modified Plan. *Modified Plan, § 13(p); In re Texaco, Inc.,* 2012 U.S. App. LEXIS 25853 (2d Cir., Dec. 19, 2012) ("A bankruptcy court retains post-confirmation jurisdiction in a chapter 11 proceeding only to the extent provided in the plan of reorganization." (quoting *In re Johns-Manville Corp.,* 7 F.3d 32, 34 (2d Cir. 1993)).

52.    Moreover, this Court has the power to enjoin conduct that would constitute a collateral attack on its prior orders. *See Old Carco LLC,* 2011 U.S. App. LEXIS 19217 (2d Cir., Sept. 19, 2011). "Courts have inherent power to enforce their orders." *Hunt v. Enzo Biochem, Inc.,* 904 F. Supp. 2d 337, 344 (2d Cir. 2012). "The power of a court to make an order carries with it the equal power to punish for a disobedience of that order." *Id.* "Ancillary jurisdiction is recognized as part of a court's inherent power to prevent its judgments and orders from being ignored or avoided with impunity." *Id.* 344 (*internal citations omitted*). This Court subject has matter jurisdiction to enjoin the pursuit of claims in another court that are the subject of this Court's prior orders. See *In re Texaco, Inc.,* 2012 U.S. App. LEXIS 25853 (2d Cir., Dec. 19, 2012).

## LEGAL ARGUMENT

### I.    The Sumpter Indiana Action II Claims Are Barred By The Discharge Injunction.

53.    The Sumpter Indiana Action II claims are barred by the discharge injunction of 11 U.S.C. § 1141. Each of the claims asserted in the Complaint are premised on Sumpter's assertion that the disability benefits provided under the Benefit Plan were vested and that DPH did not have authority to terminate them. These issues, however, were conclusively litigated in

the OPEB Termination Motion.  This Court then held that the Reorganized Debtors had the

authority to terminate OPEB benefits, which were not vested.  *Final OPEB Termination Order*

(Dkt. No. 16448).  Any claim to the contrary arose at the time the Reorganized Debtors filed the

Termination Motion.  Sumpter understood this, as he filed an objection to the motion ("Sumpter

Termination Motion Objection") (Dkt. No. 14898).  Any additional claims, whether or not

pursued, were discharged when this Court confirmed the Modified Plan.  See *In re Texaco, Inc*.,

2012 U.S. App. LEXIS 25853, at *2-3 (2d Cir., Dec. 19, 2012), *affirming Bankruptcy Court*

(Drain, J.) (*holding that claims asserted in state court action were properly enjoined by the*

*court's order confirming Chapter 11 plan of reorganization, directing plaintiff to dismiss all*

*state court claims, and enjoining plaintiff from pursuing the claims*).  Here, the Modified Plan

provided that the bankruptcy court retained jurisdiction, *inter alia*, to take any action to resolve

any disputes arising out of or relating to any claim, and to construe and to take any action to

enforce the plan.  It states that "[p]ursuant to sections 105(a) and 1142 of the Bankruptcy Code,

the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related

to, the Chapter 11 Cases and this Plan, including, among others, …to hear and determine all

disputes involving the existence, nature or scope of the Debtors' discharge, including any dispute

relating to any liability arising out of the termination of employment or the termination of any

employee or retiree benefit program, regardless of whether such termination occurred prior to or

after the Effective Date."  *Modified Plan, § 13(p)*.  Subsection (u) further provides that the Court

retained exclusive jurisdiction to "hear and determine all matters relating to the … Delphi-PBGC

Settlement Agreement."  *Modified Plan, § 13(u)*.

54.    In addition, Section 11.11 of the Modified Plan (Exculpation And Limitation Of

Liability) bars Sumpter's action against DPH's attorneys and president by providing, in relevant

part, that "the Reorganized Debtors…and [their] current or former … officers, directors,…

employees,… attorneys, [and] representatives… are hereby released from, any claim, obligation,

Cause of Action, or liability to any party …for any act or omission in connection with, relating

to, or arising out of [including, among other things,] the Debtors' Chapter 11 Cases... the Delphi-

PBGC Settlement Agreement, any employee benefit plan, …release or other agreement or

document created, modified, amended or entered into in connection with …this Plan…"

*Modified Plan, § 11.11*.  The Exculpation provision goes on to provide that the "exculpatory

provisions… apply to postpetition conduct…." *Id.*

## II.    Sumpter's Indiana Action II Is Barred By *Res Judicata* and Collateral Estoppel.

55.    Once a bankruptcy court's order becomes final, the order is *res judicata*, even as

to claims that challenge the bankruptcy court's subject matter jurisdiction.  *Traveler's Indemnity*

*Company v. Bailey*, 557 U.S. 137, 152, 129 S. Ct. 2195, 2205 (2009); *In re Petry Retail, Inc*.,

304 F.3d 223, 230 (2d Cir. 2004).  Here, the OPEB Final Termination Order and PBGC Order

are final; Sumpter never appealed either of the Orders and the time to do so has expired.  Thus,

this Court's sole task is to determine whether the OPEB Final Termination Order and PBGC

Order preclude Sumpter's Indiana District Court Action claims, even *arguendo* if there are valid

objections to those orders that could have been made when they were entered.  *Old Carco LLC,*

2011 U.S. App. LEXIS 19217, *1-2 (2d Cir., Sept. 19, 2011).

56.    The elements of *res judicata* include the following: (1) a final decision on the

merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or

their 'privies'; (3) an issue in the subsequent action which was litigated or which should been

litigated in the prior action; and (4) an identity of the causes of action.  *Browning v. Levy*, 283

F.3d 761, 771 (6th Cir. 2002) (citing *Bittinger v. Tecumseh Prod. Co.*, 123 F.3d 877, 880 (6th Cir.

1997)).  All four elements are satisfied here.

57.    First, "[a]s a general rule, the confirmation of a plan of reorganization constitutes

a final judgment in bankruptcy proceedings." *Browning*, 283 F.3d at 772.  "Such confirmation

by a bankruptcy court has the effect of a judgment by the district court and res judicata principles

bar relitigation of any issues raised or that could have been raised in the confirmation

proceedings." *Id.* (citing *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 463 (6th

Cir. 1991)).  Here, the Final OPEB Termination Order was a final decision on the merits made

by this Court.  Second, there can be no question that the Sumpter Indiana Action II is a

subsequent action between the same parties or their privies.  Both Sumpter and DPH were a

party to the bankruptcy proceeding.  Sumpter personally filed an objection to the OPEB

Termination motion (Dkt. No. 14898).  Third, as stated above, each of the Counts in the Indiana

Action II is premised on relitigating this Court's Final OPEB Termination Order.  The final

element of res judicata—that there be an "identify of claims"—is satisfied if "the claims arose

out of the same transaction or series of transactions, or whether the claims arose out of the same

core of operative facts." *Browning*, 283 F.3d at 773-74.  Again, there can be no question that

this element is satisfied.

58.    As discussed below, the doctrine of issue preclusion plainly bars all claims

Sumpter attempts to assert in his Indiana Action II.  *Res judicata* applies to DPH and its agents

and privies, John Brooks, Butzel Long, Cynthia Haffey and Roberta Granadier.[7]  Mr. Brooks is

the President of DPH and the remaining defendants represented DPH as its attorneys in the

bankruptcy proceedings that gave rise to Sumpter's claims.  Further, the Defendants need not

---

[7] …and any unnamed employees of DPH and Butzel Long.

establish that they were in privity to the prior proceedings as they "need only show that the party against whom issue preclusion will be applied had a fair opportunity to litigate the issue fully." *Monarch Life Insurance Company v. Ropes & Gray*, 65 F.3d 973 (1st Cir. 1995) (quoting *Kyricopoulos v. Town of Orleans*, 967 F.2d 14, 16 (1st Cir. 1992)).

59.    The First Circuit's *Monarch* opinion is particularly applicable to the legal claims raised by Sumpter.  There, the court held that claims against a third party, Ropes & Gray, were barred by reason of issue preclusion (*i.e.*, collateral estoppel) where the prior proceeding involved the same issue of law or fact and the issues were fully litigated and resolved.  As in *Monarch*, there is no doubt that Sumpter had his day in court and that the issues upon which he now relies to build a case against DPH and the other Defendants were conclusively resolved.

### III.    Each Count of the Sumpter Indiana Action II Should Be Enjoined.

60.    In his Indiana District Court Action II, Sumpter asserts six (6) counts against one or more of the Defendants.  Although creatively titled, each of the counts actually centers on issues already decided by this Court and seeks relief that is the subject of this Court's OPEB Orders, Modified Plan and Plan Modification Order.  As discussed as follows, taken one-by-one, each of the Count's is barred by *res judicata*, collateral estoppel and/or this Court's plan injunction and should be enjoined.

### IV.    Count I – "Termination of Vested ERISA Disability Benefit, Breach of Contact (sic) And Violation of Bankruptcy Court Order."

61.    This count is against DPH only and is premised on Sumpter's incorrect assertions that (1) The DPH Holdings Corp. Life and Disability Benefits Program for Salaried Employees (the "Plan")[8] was vested and (2) this Court's Final OPEB Termination Order somehow barred

---

[8] The Plan was previously known as the "Delphi Corporation Life and Disability Benefits Program for Salaried Employees" and included the SEDB benefits at issue in Sumpter Indiana

DPH from *ever* terminating any Plan benefits that were not immediately terminated after entry of the Order.

62.        Not only are both of the above underpinnings for Sumpter's Count I incorrect, but they are actually directly *contrary* to this Court's rulings during the OPEB Termination proceedings.

63.        The Debtors argued to this Court that the Plan[9] expressly reserved Delphi's right to amend or terminate at any time. *See Debtors' Omnibus Reply in Support of Salaried OPEB Termination Motion and Objection, pp. 5-15* (Dkt. No. 16327).

64.        This Court ruled that, "the debtors have very clearly made the showing that they have the right to modify the plans at will." *March 10, 2009, Modified Bench Ruling on Debtors' Salaried OPEB Termination Motion, pp. 16:24 – 17:2* (Dkt. No. 16443).

65.        This Court's Final OPEB Termination Order held (directly contrary to the allegations Sumpter now seeks to pursue in Sumpter Indiana Action II), that the "Debtor's Salaried OPEB benefits ***have not vested*** and the Debtors have reserved the right to modify or terminate Salaried OPEB benefits" and that the "Debtors are authorized, ***but not directed***, to terminate Salaried OPEB benefits as provided in the Motion." *Final OPEB Termination Order, p. 3 (emphasis added)* (Dkt. No. 16448).

66.        Essentially, Sumpter's Count I is an untimely and improper attempt to appeal (to a District Court sitting in a different Circuit altogether) this Court's prior ruling that the reservation of rights language in the Plan makes it terminable at will. Perhaps Sumpter is motivated by the

---

Action II.  The Plan was also one of the welfare benefit plans at issue in the Salaried Termination Motion.

[9] Three benefit plans were the subject of the OPEB Termination Motion: (i) the Delphi Corporation Life and Disability Benefits Program for Salaried Employees; (ii) Delphi Salaried Health Care Program; and (iii) Salaried Retirement Savings Program. *See n. 3, OPEB Termination Motion* (Dkt. No. 14705).

belief that application of Seventh Circuit law would lead to a different conclusion, or that

*Sprague v. General Motors Corporation*, 133 F.3d 388 (6th Cir. 1998) might be disregarded by a

different judge, or that Sumpter would be less likely to face sanctions[10] in a new Court that is

unfamiliar with his history of filing meritless motions and proceedings against DPH (and now

against DPH *and* its agents).    Whatever his motivation, Sumpter is not free to shop his

accusations around until he finds a court that will rule in his favor.

67.    Accordingly, principles of *res judicata* govern and Sumpter should not be

permitted to continue his quest for a forum that will rule differently.  Further, the Modified Plan

provisions (including the injunction provision) confirm this Court's jurisdiction and authority to

enjoin Sumpter from continuing down this costly and disruptive path.

## V.    Count II – "Breach of Fiduciary Duty."

68.    This count is also against DPH only.  Sumpter alleges in Count II that DPH

"illegally" discontinued his SEDB benefit payments under the Plan from April 2012 on.

69.    In other words, Count II (like Count I) is premised entirely on Sumpter's assertion

that termination of the Plan at the end of March 2012 was wrongful because such benefits were

---

[10]This is not Sumpter's first, or even second, bite at this particular apple.  Even after his objection to the OPEB termination was overruled, Sumpter returned to this Court on April 10, 2012, with his Vesting Motion Regarding Extended Disability Benefits for Salaried Employees and Salaried Retirees (Dkt. No. 21860), raising the same arguments he now raises in his second Indiana lawsuit.  On April 16, 2012, Sumpter filed his Expedited Request for Preliminary Injunction to Prohibit DPHH from Terminating Salaried Disability Plan, also seeking to have this Court declare that termination of the Plan was improper. (Dkt. No. 21867.)  On May 1, 2012, both motions were denied by this Court, as they were not brought through an adversary proceeding, and Sumpter was advised of the possibility of sanctions if he re-filed using the appropriate procedure.  In both Orders, the Court "retained jurisdiction to hear and determine all matters arising from or relating to the implementation of this order."  *Order Denying James B. Sumpter's Vesting Motion Regarding Extended Disability Benefits for Salaried Employees and Salaried Retirees* (Dkt. No. 21876); *Order Denying James B. Sumpter's Expedited Request for Preliminary Injunction to Prohibit DPH From Terminating Salaried Disability Plan* (Dkt. No. 21877).

purportedly vested.  Sumpter should be enjoined from proceeding with Count II for the same
reasons set forth above with relation to Count I.

70.    It is worth noting that in support of his allegation that his benefits were vested
(Complaint ¶ 11), Sumpter cites only to excerpts from the argument section of his Vesting
Motion (*see* n. 3) and does not provide or reference even one piece of paper that could be
sufficient to overcome the reservation of rights language this Court has already considered and
ruled on.

71.    Instead, Sumpter suggests that this Court affirmatively ordered DPH to continue
providing benefits under the plan *ad infinitum*, a suggestion that is contrary to the Court's central
finding that the reservation of rights language was sufficient to make the Plan modifiable or
terminable at will.  Sumpter's claim that termination of the Plan was tantamount to contempt of
this Court's Order gives the Court an additional basis for deciding this matter.

## VI.    Count III – "Unjust Enrichment."

72.    This count is also against DPH only.  In this count, Sumpter seeks to recover
pension benefit offsets that DPH allegedly took or will take from his (terminated) SEDB
payments.

73.    Count III essentially mirrors the Amended Recoupment Motion that Sumpter filed
with this Court on September 7, 2011 (Dkt. No. 21566), which this Court denied on October 13,
2009.  Sumpter subsequently appealed this Court's decision and his appeal was denied.

74.    In ruling on the Amended Recoupment Motion, this Court held that, "Mr.
Sumpter is barred by res judicata in the form of the Court's prior orders from either (a)
challenging the Court's order authorizing the debtors to terminate the OPEB plans; (b) the
VEBA settlement; and (c) already disallowed administrative claims arising from the alleged

nonpayment or failure to pay OPEB." *September 22, 2011, Hearing Transcript at pp. 17-18*

(Dkt. No. 21609), *attached as **Exhibit 2***.

75.    The Court further concluded (at 18-19 of the Hearing Transcript) that:

"[T]he plan modification order, by its expressed terms… permanently
enjoins any person, including Mr. Sumpter, from recoupment as well as
offset or any other form of recovery by any manner.  It's clear that a
bankruptcy court's order confirming a Chapter 11 plan constitutes a final
judgment on the merits and is to be given preclusive effect under res
judicata."

76.    The Court also ruled that Sumpter's Amended Recoupment Motion failed because

"it does not rely on a proper[,] that is defensive, theory of recoupment but actually asserts a

claim that is barred by the Court's prior bar date orders as well as the discharge under paragraph

20 of the plan modification and Article 11.2 of Delphi's confirmed and effective Chapter 11

Plan." *Id.* at 21-22.

77.    After denying the Amended Recoupment Motion, this Court admonished Sumpter

from bringing actions that are not premised upon a "good faith real argument" and issued a stern

warning to Sumpter that future proceedings of that type "should merit the imposition of

sanctions." *Id.* at 23.

78.    An Order denying the Amended Recoupment Motion was entered on October 13,

2011.  (Dkt. No. 21645.)

79.    Sumpter appealed the Court's ruling and lost.  He now seeks to try a *third* time,

with yet another court, to claim that offsets to his (now terminated) benefits payments under the

Plan should be recouped.

80.    Sumpter might contend that his latest recoupment claim (dressed up as a defective

unjust enrichment claim) is different because it seeks recoupment of purported setoffs from a

different starting date.  However, the October 15, 2010 start date (a) is not the true date on which

his alleged cause of action would have accrued, (b) overlaps with the period at issue in the Amended Recoupment Motion in any event, and (c) does not take Sumpter outside of the key Modified Plan dates.

81.     The so-called wrong Sumpter complains of and which serves as the basis for his recoupment claim arose in connection with the PBGC's takeover of the pension plans (July 2009). *See ¶ 27 of Sumpter's Complaint.* Thus, what Sumpter truly challenges is the restructuring approved by this Court. The October 15, 2010 date referenced in his Complaint is simply the date on which his standard disability benefits under the Benefit Plan switched to extended disability benefits under the *same* Benefit Plan. That date has no true significance to this analysis. While Sumpter may believe his "cause of action" post-dates these orders of the Bankruptcy Court, the bottom line is that it does not.

82.     Not only does *res judicata* bar Sumpter from again pursuing recoupment claims, but any recoupment claim he arguably had was also extinguished, discharged, or otherwise enjoined under the Modified Plan and the Plan Modification Order. *See Article 11.14 of the Modified Plan* (Dkt. No. 18707) *and ¶ 22 of the Plan Modification Order* (Dkt. No. 12359).

## VII.    Count IV – "Civil Conspiracy To Terminate Plaintiff's Supplemental Extended Disability Benefit In Violation of Bankruptcy Court Order, Mail Fraud And Extortion."

83.     This count is against all Defendants and is essentially a restatement of Counts I and II couched in terms of a "conspiracy." Count IV fails and is barred for the same reasons set forth in the Count I discussion, above. The conspiracy reference is a futile effort to sidestep an injunction by including defendants who are *not* parties to the bankruptcy.

84.     However, accusations against DPH's attorneys and its president of "conspiring" with DPH to (1) terminate a benefit under the Plan that this Court already found to be terminable

at will or (2) violate a prior Order of this Court that does not require what Sumpter says it does, fail for the same reason as Counts I and II.

85.    Labeling routine business and legal activities of DPH's agents, including its attorneys in this bankruptcy action, as conspiracy, mail fraud, and extortion is an inappropriate and offensive ploy that should be rejected and sanctioned.

86.    The fact that Sumpter did not *like* (1) DPH's ultimate decision to terminate the Plan in its entirety in March 2012, (2) DPH's decision to offer a payment in exchange for an executed Release to its remaining retirees, and (3) the answers DPH's agents gave him to his questions, does *not* give him the right to drag those agents' names through the mud – just as the fact that Sumpter did not *like* this Court's prior rulings does *not* give him the right to ask another court for a different outcome.

87.    Sumpter's "extortion" claim raises the old axiom "no good deed goes unpunished."  DPH had every right to terminate the Benefits Plan by its own 'modify at will' terms, including Sumpter's benefits, without any further legal obligation to pay.  DPH's offer to pay Sumpter (and the other salaried retirees) was in exchange for a release was intended to afford him a soft landing in light of the loss of his benefits, which offer he unfortunately rejected.  While Sumpter may fancy the sound of "extortion", at the end of the day, that is all it is – a fancy.

### VIII.    Count V – "Civil Conspiracy To Illegally Terminate Supplemental Extended Disability Benefit, Racketeering, Mail Fraud And Extortion In Violation Of The Federal RICO Statutes."

88.    This count is against all the individual Defendants (DPH's president and attorneys), but not against DPH or the law firm of Butzel Long as those entities are, instead, purported to be RICO "enterprises".

89.     Count V is essentially a restatement of Count IV (and fails for the same reasons), couched in terms of a "RICO" claim in order to justify a demand for treble damages (as well as other improper demands).

90.     As noted in Count IV, above, calling the routine business and legal activities of DPH's agents—including its attorneys in this bankruptcy action—conspiracy, mail fraud, and extortion is nonsense and sanctionable.  Adding the accusation of "racketeering activity" based on the same legitimate actions only strengthens this conclusion.  No matter how badly Sumpter wishes this Court had not determined the Plan to be terminable at will based on the reservation of rights language, he is not entitled to defame DPH's President and attorneys by accusing them of criminal behavior (not to mention put them to the expense and aggravation of having to defend against a meritless lawsuit that was barred in the first place by Section 11.11 of the Modified Plan (Exculpation And Limitation Of Liability)).

IX.     **Count VI – "Civil Conspiracy To Illegally Termiante (sic) Supplemental Extended Disability Benefit In Violation of ADA and Conspiracy To Interfere With Plaintiff's Civil Rights."**

91.     This count is against DPH only.  Sumpter asserts that DPH conspired with Delphi Automotive Systems, the DIP lenders, General Motors, Butzel Long and its attorneys to violate the Americans with Disability Act – again by terminating purportedly "vested" benefits under the Plan.

92.     Count VI is Sumpter's final attempt to disguise a clone of Count I as something other than what it is – a challenge to this Court's decision that the Plan was terminable at will.

93.     Sumpter's contention that DPH somehow discriminated against him as a disabled retiree by *maintaining* his SEDP benefits for years *longer* than other benefits under the Plan is

counterintuitive, in addition to being contrary to ERISA law and to this Court's prior Orders identified in the discussion regarding Count I, above.

### **RELIEF REQUESTED**

WHEREFORE, for these reasons, and as discussed more fully above, the Movants' request is two-fold: (a) enforce this Court's prior orders and enjoin Sumpter's prosecution of Sumpter Indiana Action II against each of the Defendants; (b) order that Sumpter dismiss the Indiana Action II with prejudice as to all defendants; (c) order that Sumpter present all future purported claims and causes of action involving DPH or its agents to this Court prior to filing; (d) hold Sumpter in contempt for violating this Court's prior orders; and (e) award DPH and the other Defendants their fees and costs associated with this Motion and Indiana Action II.

Dated:    Detroit, Michigan
          September 6, 2013

                                        BUTZEL LONG, a professional corporation

                                        By:   /s/ David J. DeVine_____
                                                Thomas B. Radom
                                                Bruce L. Sendek
                                                David J. DeVine
                                        150 West Jefferson, Suite 100
                                        Detroit, Michigan  48226
                                        (313) 225-7000
                                        *Attorneys for Reorganized Debtors*

1428449v3

29