Page 1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 05-44481(RDD)

5   - - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   DPH HOLDINGS CORP., et al.,

9

10              Reorganized Debtors.

11

12   - - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              300 Quarropas Street

16              White Plains, New York

17

18              September 22, 2011

19              10:09 AM

20

21   B E F O R E:

22   HON. ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25

 1

 2    HEARING re Motion For Recoupment on Behalf of Delphi Salaried

 3    Retirees

 4

 5    HEARING re Claims Objection Hearing Regarding Claims of Alla

 6    Averbukh, on Behalf of the Estate of Boris Averbukh, as

 7    Objected to in the Reorganized Debtors' Motion for Order (i)

 8    Enforcing Modification Procedures Order, Modified Plan and Plan

 9    Modification Order Injunction and Forty-Seventh Omnibus Claims

10    Objection Order Against Averbukhs, as Plaintiffs, in Maryland

11    State Court Wrongful Death Action; and (ii) Directing Averbukhs

12    to Dismiss Action to Recover Upon Discharged and Expunged Claim

13    ("Averbukh Injunction Motion")

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Lisa Bar-Leib

Page 3

1

2    A P P E A R A N C E S :

3    BUTZEL LONG, PROFESSIONAL CORPORATION

4         Attorneys for DPH Holdings Corp., et al., Reorganized

5          Debtors

6         Suite 100

7         150 West Jefferson Avenue

8         Detroit, MI 48226

9

10   BY:   CYNTHIA J. HAFFEY, ESQ.

11

12   BUTZEL LONG, PROFESSIONAL CORPORATION

13        Attorneys for DPH Holdings Corp., et al., Reorganized

14         Debtors

15        Stoneridge West

16        41000 Woodward Avenue

17        Bloomfield Hills, MI 48304

18

19   BY:   SHELDON H. KLEIN, ESQ.

20

21

22

23

24

25

1

2    SKADDEN ARPS SLATE MEAGHER & FLOM LLP

3         Attorneys for DPH Holdings Corp., et al., Reorganized

4          Debtors

5         155 North Wacker Drive

6         Chicago, IL 60606

7

8    BY:   LOUIS S. CHIAPPETTA, ESQ.

9          (TELEPHONICALLY)

10

11   CIARDI CIARDI & ASTIN

12        Attorneys for Vladimir Averbukh (Individually and as

13         Personal Representative for the Estate of Boris

14         Averbukh) and Alesander Averbukh

15        100 Church Street

16        8th Floor

17        New York, NY 10007

18

19   BY:   RICK A. STEINBERG, ESQ.

20

21

22

23

24

25

Page 5

1

2    ALSO APPEARING:

3    JAMES B. SUMPTER

4        On Behalf of Himself as a Delphi Salaried Retiree

5        21169 Westbay Circle

6        Noblesville, IN 46062

7

8    BY:    JAMES B. SUMPTER, PRO SE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          P R O C E E D I N G S

2          THE COURT:  Please be seated.  Okay.  Good morning.

3     In re DPH Holdings.

4          MS. HAFFEY:  Good morning, Your Honor.  Cynthia Haffey

5     for DPH.  Your Honor, we have two agendas for the Court today,

6     the proposed seventieth omnibus hearing agenda.  And on that

7     agenda, there are no continued or adjourned matters and there

8     is one contested matter.  And that's the motion by James

9     Sumpter for recoupment on behalf of Delphi salaried retirees.

10         THE COURT:  Right.

11         MS. HAFFEY:  And I understand that Mr. Sumpter is on -

12    - joining us today by telephone.

13         THE COURT:  Are you on the phone, Mr. Sumpter?

14         MR. SUMPTER (TELEPHONICALLY):  Yes, I am.

15         THE COURT:  Okay.  Good morning.

16         MR. SUMPTER:  Good morning.

17         MS. HAFFEY:  We also have the proposed forty-eighth

18    claims hearing agenda.  And under "Continued or Adjourned

19    Matters", Your Honor, there is a claim objections hearing

20    regarding claims of Ohio Bureau of Workers' Compensation.  And

21    that matter has been adjourned until the November hearing date.

22         There is, under the "Uncontested, Agreed or Settled

23    Matters", the claims objection hearing regarding claims of ATS

24    Ohio Inc. ATS Automation Tooling Systems, Inc. and ATS Michigan

25    Sales and Services, Inc.  And that matter has been resolved by

1    the parties, Your Honor.

2            THE COURT:  Okay.

3            MS. HAFFEY:  The only contested matter today is the

4    claims objection hearing regarding claim of Alla Averbukh on

5    behalf of the estate of Boris Averbukh.  And I understand that

6    counsel for the Averbukhs is here present in the courtroom.

7            THE COURT:  Okay.  So why don't we deal with the

8    motion by Mr. Sumpter first?

9            MS. HAFFEY:  Sounds good, Your Honor.

10           THE COURT:  Okay.  The parties should assume that I've

11   read the papers through Mr. Sumpter's reply that was filed, I

12   guess, yesterday in this matter.  So I have that background.

13   Is Delphi or DPH still making any payments under the various

14   OPEB plans?

15           MS. HAFFEY:  Your Honor, I believe the payments are

16   being made out of a VEBA trust fund.

17           THE COURT:  Under the VEBA?

18           MS. HAFFEY:  Yes.

19           THE COURT:  And is there -- that's under the

20   settlement, though, right?

21           MS. HAFFEY:  That's correct.

22           THE COURT:  Okay.  There are no other payments being

23   made and that's consistent with the fact that the plans were

24   terminated.

25           MS. HAFFEY:  That's correct, Your Honor.

1          THE COURT:  Okay.  So, Mr. Sumpter, your motion

2     actually looks for a refund, right, not a crediting against

3     future payments to you?

4          MR. SUMPTER:  I think it asks for both.  I will say

5     this.  The disability payments are still being made when you

6     asked if there were still being payments made by Delphi.

7          THE COURT:  But that's under the VEBA settlement,

8     right?

9          MR. SUMPTER:  No.  No, it's not, not to my -- no.  The

10    VEBA was created out of the funds that were, I'll say, paid

11    when the retirees agreed not to follow through with their

12    appeal.  But that had nothing to do with the disability

13    benefits.

14         THE COURT:  But Delphi terminated its disability plan

15    or plans and the other OPEB plans.  So --

16         MR. SUMPTER:  No, it did not.

17         THE COURT:  -- I don't see how there would be any more

18    payments coming from Delphi.  There might be payments from

19    insurers or government agencies or if people used the VEBA

20    settlement to buy a new policy, they would come from that

21    policy.  But I don't think there any checks being cut by Delphi

22    at this point, right?

23         MR. SUMPTER:  Well --

24         THE COURT:  You don't get a check from Delphi itself,

25    do you?

1            MR. SUMPTER:  Not from Delphi.  But I've been -- prior

2     to the OPEB benefits being terminated, I received a check from

3     the administrator which I think it was Mr. Politan (ph.) at the

4     time.

5            THE COURT:  All right.  So -- I mean, yes.  There were

6     checks obviously until the OPEB was terminated; Delphi was

7     cutting checks.

8            MR. SUMPTER:  Well, but now I'm receiving checks from

9     Sedgwick --

10           THE COURT:  Okay.

11           MR. SUMPTER:  -- who took over for Politan.

12           THE COURT:  Right.

13           MR. SUMPTER:  So -- and I have checked with several

14    other disability recipients and they are also receiving checks.

15    Apparently, there are two different organizations that are

16    paying checks.  But a number of people are receiving checks

17    from Sedgwick.

18           THE COURT:  Okay.  So it seems to me then that what

19    you're asking for here is for Delphi or its successor, DPH, to

20    actually cut a check to make up --

21           MR. SUMPTER:  Well, I'm asking -- okay.  I'm asking

22    for two things.  One is there is currently an obligation to

23    reimburse for social security benefits so that if we receive

24    social security benefits in our disability, we receive Delphi

25    that amount towards that disability.

1      THE COURT:  Well, is Delphi looking for Mr. Sumpter to

2    pay it anything in respect of social security that he's

3    received?  I'm not asking you, Mr. Sumpter.  I'm asking

4    Delphi's counsel.

5      MS. HAFFEY:  If it's a credit or an offset, Your

6    Honor.

7      THE COURT:  I'm sorry?

8      MS. HAFFEY:  A credit or an offset, Your Honor.

9      THE COURT:  But Delphi isn't paying anything to him.

10   So I don't know why there would be any credit.

11     MS. HAFFEY:  It would -- Your Honor, I believe it

12   would be an offset to the trust account.

13     THE COURT:  But the trust account isn't Delphi's.

14     MS. HAFFEY:  That's correct.

15     THE COURT:  I'm really just focusing on Delphi now.

16     MS. HAFFEY:  That's correct, Your Honor.

17     THE COURT:  Maybe you want to talk to your -- okay.

18   So did you want to confirm that with your client?

19     MS. HAFFEY:  Please.  Thank you.

20       (Pause)

21     MS. HAFFEY:  That's correct, Your Honor.

22     THE COURT:  What's correct?

23     MS. HAFFEY:  That Delphi itself is not expecting a

24   credit.

25     THE COURT:  Or a check --

1          MS. HAFFEY:  Or a check.

2          THE COURT:  -- from Mr. Sumpter --

3          MS. HAFFEY:  That's correct.

4          THE COURT:  -- for anything that he got in respect of

5     payments from another party.

6          MS. HAFFEY:  That's correct, Your Honor.

7          THE COURT:  Okay.  So this is -- so the crediting was

8     all historical then.  The crediting was based on -- was only in

9     the context of amounts that Delphi owed retirees under the

10    various OPEB policies.  And they would be crediting

11    historically against that amount.  But that's all been done in

12    the past.  There's no more of that to continue in the future as

13    far as Delphi is concerned.

14         MS. HAFFEY:  That is correct, Your Honor.

15         THE COURT:  Okay.

16         MR. SUMPTER:  Your Honor, may I ask?  This is James

17    Sumpter.  I'm just confused about one thing.  In the orders

18    that dealt with the termination of benefits, they did not --

19    those orders did not reference disability at all.  It

20    referenced health care benefits, health care savings account,

21    Medicare supplements.  But they -- the disability benefits were

22    not referenced at all in the order or in the motions to

23    terminate.  And so, my -- I've been operating just based on

24    what I've been living with here in terms of the disability

25    payments, that that has continued.  If they've assigned that to

05-44481-rdd   Doc 22138-3   Filed 09/06/13   Entered 09/06/13 22:37:36   Exhibit
DPH HOLDINGS CORPORATION, et al.
Exhibit 2   Pg 12 of 52

Page 12

1   someone else then I have no knowledge of it.  They've made us

2   not aware of that.  And the -- I know that people are still

3   making payments for reimbursing social security.

4            THE COURT:  I don't know.  That issue wasn't really --

5   I didn't deal with that issue in preparing for this hearing.  I

6   don't know --

7            MS. HAFFEY:  Your Honor, the settlement did terminate

8   all of Delphi's health and welfare plans which included those

9   disability benefits.

10            THE COURT:  Okay.  I mean, it's possible that

11   disability may be paid through another source, right?  There

12   may be either the substitute plan under the VEBA or some other

13   insurance but Delphi is not funding that?

14            MS. HAFFEY:  That's correct, Your Honor.

15            THE COURT:  Okay.  All right.  Okay.  All right.

16   Again, I have reviewed the papers on this.  And that last

17   discussion dealt with my remaining questions, factual

18   questions, on this matter.  I don't really need additional

19   argument but if either side wants to make their point or

20   supplement a point from their papers, you can do so.

21            MS. HAFFEY:  Your Honor, if I could just make -- and

22   point the Court's attention to -- give me one moment -- two

23   things, Your Honor.  In our response, we say that the general

24   rule is that recoupment is not a claim.  But then we cite to

25   the In re King's Terrace Nursing Home case.  Better stated,

1    Your Honor, is that recoupment in the Second District is a

2    claim.  And we have cited that case in our brief.  So I just

3    wanted to point out to the Court that it should have been

4    stated a little stronger.

5          And to Mr. Sumpter's point in regards to res judicata,

6    I'd like to point the Court's attention to Corbett v. MacDonald

7    Moving Services, Inc., 124 F.3d 82 (2nd Cir. 1997).  In that

8    case, the Court states that -- Mr. Sumpter claims that res

9    judicata isn't present here because the claim basically hadn't

10   ripened.  I think that's in point 5 of his reply brief.  The

11   Court in Corbett states that the claim had been ripe in the

12   bankruptcy context because, of course, a claim is matured and

13   unmatured claims, liquidated and unliquidated claims.  And I

14   have a copy of that for the Court.

15         And that's all we have to add, Your Honor.

16         THE COURT:  Okay.

17         MR. SUMPTER:  And this is James Sumpter.  And I have

18   one issue to raise.  When Mr. Chiappetta requested that Your

19   Honor dismiss my motion, you responded that you would not do

20   that but he had the option to request a dismissal based on part

21   7 rule.  And you indicated they had been incorporated into

22   contested matters.  And so, looking at that, I admitted my

23   motion to comprehend the rule so that I alleged that this was a

24   core proceeding.  But there's Rule 7012 that makes that same

25   requirement for the response to the motion.  And the response

Page 14

1    from the debtor did not allege that these proceedings were core

2    or noncore.

3          And so, my thinking is that their response did not

4    meet the requirements and should be rejected.  And so, I was

5    asking Your Honor to reject or dismiss their response because

6    it did not meet the core -- the Rule 7012.

7          THE COURT:  Okay.  All right.  Okay.  I have a motion

8    before me -- it's actually an amended motion although they're

9    very close, that is the amended motion and the original

10   motion -- by James Sumpter "for recoupment on behalf of Delphi

11   salaried retirees".  Although the motion is styled as on behalf

12   of Delphi salaried retirees and not just on behalf of Mr.

13   Sumpter, he acknowledges in his reply to the debtors' objection

14   to the motion, "The Movant does not claim to represent or serve

15   as an attorney for other salaried retirees."  And so, I am

16   treating this motion as a motion solely on behalf of and by Mr.

17   Sumpter and not on behalf of anyone else who, as Mr. Sumpter

18   acknowledges, have not authorized him to make the motion on

19   their behalf.

20         In his motion, Mr. Sumpter argues that he is entitled

21   to and requests a refund from Delphi in respect of deductions

22   that Delphi took under various so-called OPEB benefit plans for

23   retirees for amounts that were due to the beneficiaries of

24   those plans from third parties, including Social Security

25   payments and the like, that under the plans acted as a credit

1    against the amounts that Delphi would owe, in essence, to avoid

2    double counting.

3          The context of this motion is important.  Delphi

4    maintained, pre-bankruptcy and during most of its bankruptcy

5    case, various OPEB plans for salaried employees and retirees

6    and their spouses.  The debtors moved, however, on February

7    4th, 2009 seeking the Court's approval to cease contributions

8    to such plans commencing April 1st, 2009.  And on February

9    2nd -- I'm sorry -- February 25th, 2009, the Court entered a

10   provisional order granting that relief and then entered an

11   order on March 11th, 2009 granting the termination motion

12   pursuant to which the debtors did terminate their OPEB plans.

13         Notwithstanding that order, the Court, recognizing the

14   uncertainty under the law as well as the potential for a win-

15   win situation, authorized the appointment of a committee of

16   retirees to negotiate with the debtor over a potential

17   resolution of the issues raised by the OPEB termination motion

18   and the March 11th, '09 order.  And the debtor subsequently

19   entered into a settlement agreement pursuant to which there was

20   a settlement of the appeal from the termination order as well

21   as a resolution that appealed that provided for the debtors

22   paying a considerable sum of nine million dollars which, except

23   for the part that went to attorneys' fees, went to help fund a

24   health and benefit plan, so-called VEBA plan that provided for

25   replacement benefit coverage albeit incomplete replacement

Page 16

1    benefit coverage.

2           However, with the exception of that settlement,

3    pursuant to which Delphi committed the money that I've -- or

4    paid the money that I've just discussed, Delphi ceased, as

5    authorized by the Court, making any future OPEB payments.

6           Thus, it is clear to me that the relief that Mr.

7    Sumpter seeks in his motion is -- as generally styled in the

8    motion, seeking an affirmative recovery from Delphi in the form

9    of a refund of the amounts that Delphi had previously reduced

10   OPEB payments by, i.e., the amount paid for the same types of

11   claims by third parties.

12          The Delphi debtors, later in 2009, specifically on

13   June 16th, 2009, obtained a bar date order that required that

14   all administrative claims, that is claims arising from the

15   commencement of Delphi's Chapter 11 case through June 1, 2009,

16   be filed by July 15th, 2009 or be forever barred in the case.

17          Subsequently, on July 30th, 2009, Delphi obtained this

18   Court's approval of confirmation -- on the modification and

19   confirmation of its modified Chapter 11 plan.  That order,

20   entered by the Court on July 30th, 2009 and referred to by

21   Delphi and stated in its caption as the "Plan Modification

22   Order", first incorporates the discharge under Article 11.2 of

23   the modified plan into the confirmation order.  And in

24   addition, in paragraph 22, the discharge having been

25   incorporated in paragraph 20 of the plan modification order --

05-44481-rdd    Doc 22138-3    Filed 09/06/13    Entered 09/06/13 22:37:36    Exhibit
DPH HOLDINGS CORPORATION, et al.
Exhibit 2    Pg 17 of 52

Page 17

1    in paragraph 22, the plan modification order states, in

2    relevant part, that "All persons shall be precluded and

3    permanently enjoined on and after the effective date of the

4    modified plan from the enforcement attachment collection offset

5    recoupment or recovery by any matter or means of any judgment

6    or decree or order or otherwise with respect to any claim,

7    interest, cause of action or any other right or claim against

8    the reorganized debtors which they possessed or may possess

9    prior to the effective date of the Chapter 11 plan."

10          That order is a final order and under Section 1144 of

11    the Bankruptcy Code cannot be revoked even for fraud by the

12    plain terms of Section 1144 of the Code.

13          Finally, it should be noted that this Court has

14    disallowed administrative claims by Mr. Sumpter filed in

15    respect of his claims for termination of the OPEB plans by

16    order dated December 2, 2009.  In addition, the Court, in

17    connection with the litigation over the termination of the OPEB

18    benefits found as moot Mr. Sumpter's motion in this case to

19    enforce COBRA benefits for salaried retirees and motion for

20    COBRA settlement.  It did that by order dated August 3, 2009.

21    And in addition, the Court, in an order entered June 27, 2011,

22    denied Mr. Sumpter's motion for a stay of proceedings regarding

23    the VEBA in lieu of COBRA.

24          Thus, the record is quite clear that Mr. Sumpter is

25    barred by res judicata in the form of the Court's prior orders

1    from either (a) challenging the Court's order authorizing the

2    debtors to terminate the OPEB plans; (b) the VEBA settlement;

3    and (c) already disallowed administrative claims arising from

4    the alleged nonpayment or failure to pay OPEB.

5            Mr. Sumpter, in his motion presently before the Court,

6    contends that his recoupment theory is not covered by the

7    Court's prior orders in that he is seeking not to have an

8    administrative claim allowed or an affirmative recovery from

9    Delphi in respect of the credits that it took when it paid him

10   in the past OPEB benefits.

11           The debtors disagree and also contend that even if the

12   legal theory upon which Mr. Sumpter relies is characterized as

13   recoupment, they contend that he is barred the confirmation

14   order and the discharge under the law in this district from

15   asserting even in light of recoupment as opposed to an

16   affirmative claim.

17           I find and conclude as a matter of law based upon the

18   facts asserted by Mr. Sumpter and the Court's prior orders and

19   related documents incorporated into those orders and Mr.

20   Sumpter's motion that the motion must be denied on the basis of

21   the following conclusions.

22           First, the plan modification order, by its expressed

23   terms, as I've already quoted, permanently enjoins any person,

24   including Mr. Sumpter, from recoupment as well as offset or any

25   other form of recovery by any manner.  It's clear that a

1   bankruptcy court's order confirming a Chapter 11 plan

2   constitutes a final judgment on the merits and is to be given

3   preclusive effect under res judicata.  In re American Preferred

4   Prescription, Inc., 266 B.R. 273, 277 (E.D.N.Y. 2000).  See

5   also Sure-Snap Corp. v. State Street Bank & Trust Co., 948 F.2d

6   869, 872-73 (2nd Cir. 1991) and In re I. Appel Corp., 300 B.R.

7   564, 567 (S.D.N.Y. 2003) aff'd Katz v. I.A. Alliance Corp., 104

8   Fed. Appx. 199 (2nd Cir. 2004).

9         While there are conflicting cases as to whether the

10  proper application of the doctrine of recoupment survives the

11  discharge under either Chapter 7 or, as in this case, Chapter

12  11 of the Bankruptcy Code, it is clear that a confirmation

13  order that specifically enjoins permanently the assertion of

14  the doctrine of recoupment constitutes res judicata, where that

15  order is final, as a plan modification order is, and the party

16  against whom the order is asserted for res judicata purposes

17  had sufficient notice of it for due process purposes which is

18  undisputed here.  See Daewoo International (America) Corp.

19  Creditor Trust v. SSTS America Corp., 2003 U.S. Dist. LEXIS

20  9802 at 17-18 (S.D.N.Y. June 9, 2003) in which District Judge

21  Buchwald specifically found, as is directly on point here, that

22  a party that had constructive notice of the bankruptcy case and

23  confirmation order of the debtor, Daewoo America, was barred by

24  res judicata from asserting a right of recoupment given the

25  specific injunction in the confirmation order of the assertion

Page 20

1    of such a right.

2         So based upon the res judicata effect of paragraph 22

3    of the plan modification order, Mr. Sumpter's motion should be

4    denied.

5         In addition, the debtor is correct that at least one

6    case in this district has held, even in the absence of a

7    specific provision in the confirmation order enjoining a

8    recoupment right or the assertion of a recoupment right that

9    the discharge under Section 1141 of the Bankruptcy Code and the

10   broad definition of "claim" in Section 101(5) precludes the

11   assertion of recoupment rights after the confirmation and

12   effective date of a Chapter 11 plan.  See In re King's Terrace

13   Nursing Home, 184 B.R. 200, 204 (S.D.N.Y. 1995).  That is

14   particularly the case here where the debtor is not picking and

15   choosing with regard to the provisions of a contract that it

16   wants to perform and those that it does not want to perform

17   since, as is the case here, the debtor obtained permission to

18   terminate its OPEB benefits contracts.

19        Even if I were not to agree with the logic of a King's

20   Terrace Nursing Home case, moreover, the so-called recoupment

21   right in Mr. Sumpter's motion is not in fact a proper form of

22   recoupment for purposes of overcoming a Chapter 11 discharge.

23   That is because, as I noted earlier, Mr. Sumpter is not

24   asserting the doctrine of recoupment as it needs to be asserted

25   on a defensive basis but is rather instead looking for a refund

Page 21

1    from DPH, as the successor to Delphi, for payments that

2    allegedly should have been made before the termination of the

3    OPEB plans.  Recoupment -- in other words, he is looking for

4    DPH to cut a check to him as opposed to credits for future

5    payments that Delphi or DPH would be making none of which, in

6    fact, DPH is making or is required to make.

7         Recoupment is a defensive doctrine and not a separate

8    cause of action or weapon of offense.  See In re Drexel Burnham

9    Lambert Group, Inc., 113 B.R. 830, 854 (Bankr. S.D.N.Y. 1990).

10   See also Bull v. United States, 295 U.S. 247, (1935).

11        The cases that have the successful assertion of the

12   recoupment doctrine notwithstanding a debtor's discharge all

13   involve cases or situations where there are still running

14   payments to be made to or by the debtor against which credits

15   can be asserted defensively pursuant to recoupment.  On the

16   other hand, it is clear that where the defense -- where

17   recoupment is used offensively and not simply as a defense, it

18   is clearly a claim under Section 101(5) of the Code.  And, as

19   I've noted before, in respect of claims, Mr. Sumpter already

20   has been determined not to have a timely claim in this case and

21   his claims have been disallowed.  See In re Izaguirre, 166 B.R.

22   484, 492-93 (Bankr. N.D. Ga. 1994).

23        Thus, the motion should be dismissed on the

24   alternative ground that it does not rely on a proper that is,

25   defensive, theory of recoupment but actually asserts a claim

1   that is barred by the Court's prior bar date orders as well as

2   the discharge under paragraph 20 of the plan modification and

3   Article 11.2 of Delphi's confirmed and effective Chapter 11

4   plan.

5           The debtors requested both informally, through an e-

6   mail to chambers that was cc'd to Mr. Sumpter, as well as

7   formally, when the Court required the filing of a formal

8   objection to the motion and hearing, that the Court enter an

9   order barring Mr. Sumpter from bringing further litigation

10  against them in respect of the manners that this Court has

11  already adjudicated by final order.  I took this request

12  seriously.  Mr. Sumpter has now raised an attack against either

13  the OPEB termination motion, the VEBA settlement, which is also

14  res judicata, and/or the assertion of his claims arising from

15  the nonpayment of benefits at least three times.  And the

16  debtors' estate clearly should not be further burdened by

17  attacks arising from the same facts but based upon different

18  legal theories that either don't fly or that were effectively

19  dealt with when I previously dealt with such attacks.

20          On the other hand, Mr. Sumpter is pro se.  And I do

21  take that into account in evaluating whether he is acting

22  improperly or in bad faith in raising legal theories that

23  clearly have no merit in that they've already been dealt with

24  by the Court or, alternatively, simply don't make any sense, as

25  frankly this recoupment theory -- it didn't make any sense.  At

05-44481-rdd   Doc 22138-3   Filed 09/06/13   Entered 09/06/13 22:37:36   Exhibit
DPH HOLDINGS CORPORATION, et al.
Exhibit 2   Pg 23 of 52

Page 23

1    least, they wouldn't make any sense to a lawyer versed in basic

2    principles of bankruptcy law.  However, Mr. Sumpter isn't a

3    lawyer so I decided first to treat this matter through written

4    submissions by the parties and a hearing today.  And secondly,

5    I decided not to enjoin him from bringing further actions.

6         On the other hand, by no means should Mr. Sumpter take

7    that ruling as a license to bring further actions that are not

8    premised upon a good faith real argument.  The debtors have

9    their rights under -- in matters before this Court --

10   Bankruptcy Rule 9011, in matters in the federal district court

11   or other federal courts under Civil Procedure 11 and in their

12   corollaries under the various state court procedures for

13   bringing frivolous or bad faith claims.  And Mr. Sumpter is

14   duly warned that notwithstanding his pro se status, he is on

15   clear notice that future motions in violation of the -- or

16   other litigation in violation of the plan modification order or

17   this Court's prior orders or the Delphi debtors' discharge

18   under their Chapter 11 plan should merit the imposition of

19   sanctions.  And the debtors can certainly use this transcript

20   in that regard if such litigation is commenced outside of this

21   court.

22        So again, for the reasons that I've stated on the

23   record, the motion's denied as a matter of law under the

24   equivalent of or based upon the factors applied by the Court

25   under Bankruptcy Rule 7012 in light of the Court's prior orders

Page 24

1    and the undisputed facts asserted in the motion.

2         So the debtors or DPH can submit an order to chambers

3    by e-mail consistent with that ruling.

4         MS. HAFFEY:  Thank you, Your Honor.

5         MR. SUMPTER:  Your Honor, this is James Sumpter.  And

6    I appreciation the consideration I've gotten.  I guess I would

7    like to tell the Court that my actions have not been intended

8    to be malicious but a sincere effort for --

9         THE COURT:  That's why I ruled the way I have.  But I

10   think you're on notice now, Mr. Sumpter, that I really don't --

11   unless -- every matter I need to review or some other Court

12   needs to review on its merits.  But you really need to think

13   very clearly about anything that deep down really does

14   challenge any of the things that are now approved by a final

15   order by me.

16        MR. SUMPTER:  And I understand that.  And I just

17   wanted to say, though, that I just would -- I don't have the

18   physical resources to go tilting at windmills.  So if you

19   apprec -- you know, if you understand the kind of effort that I

20   put into it, I just wouldn't do it if I didn't sincerely --

21   even if I was wrong -- think that I had a case.  But I really

22   don't anticipate any other action.

23        THE COURT:  Okay.  Very well.

24        MR. SUMPTER:  But could I ask a clarification that is

25   not intended to challenge a ruling or anything like that?  But

Page 25

1    I am really just still confused on one point.  And I'm looking

2    at the -- what's here -- the filing they requested, the

3    termination of benefits.

4           THE COURT:  Right.

5           MR. SUMPTER:  And it eliminates post-paid retirement

6    health care benefits for current and future.  It ceases the

7    company from making contributions to post-retirement health

8    care.  It cancels all retiree health reimbursement accounts.

9    For Medicare, it terminates Medicare part B.  It stops the one

10   percent employee contribution to scholarly retirement savings

11   program for people hired after a certain date.  And it

12   eliminates retirement for post-retirement basic life insurance.

13   And those are the only categories that it covers.  It does

14   reference disability at all.  And so, that's my confusion.

15          THE COURT:  All right.  Well, I don't have that before

16   me, Mr. Sumpter, so I can't really comment on it.  What I

17   recommend is that you speak to the debtor's -- DPH's

18   representative about it.  Maybe they can show you what they

19   believe covers your disability in that order and/or prior

20   orders that I entered dealing with COBRA.  So I think you know

21   who to speak to.  Have you spoken with them before?

22          MR. SUMPTER:  I don't know.  There's a transition that

23   seems to be taking place.

24          THE COURT:  Well, there's a gentleman who's here in

25   the courtroom who deals with claims.  You can speak to him

1    about it.  Or you can contact the lawyer who spoke today.  Why

2    don't you give him your name, ma'am?

3           MS. HAFFEY:  Mr. Sumpter, this is Cynthia Haffey.  You

4    can give me a call at (313)983-7434.  I'll be back in the

5    office on Friday.

6           MR. SUMPTER:  All right.

7           THE COURT:  And she can point you to the reasons

8    Delphi believes -- or DPH believes that it terminated validly

9    the disability -- its obligation to pay disability payments.

10   Okay?

11          MR. SUMPTER:  Okay.

12          THE COURT:  All right.  Thank you very much.

13          MR. SUMPTER:  Thank you.

14          THE COURT:  Okay.  So that leaves DPH's motion to

15   enforce the plan injunction and the discharge against the

16   Averbukh plaintiffs.

17          MR. KLEIN:  Yes, Your Honor.  Sheldon Klein of Butzel

18   Long on behalf of DPH reorganized debtors.

19          MR. STEINBERG:  Good morning, Your Honor.  Rick A.

20   Steinberg of Ciardi Ciardi & Astin for Vladimir Averbukh and

21   Alesander Averbukh.

22          THE COURT:  Okay.  You -- both sides should assume

23   that I've read the papers on this through DPH's reply to the

24   Averbukh's response to their motion.  I don't think there's

25   been anything after that filed.

Page 27

1              MR. STEINBERG:  No, Your Honor.

2              THE COURT:  Okay.  All right.  I guess I'm a little

3    puzzled on at least one point because I don't think there was

4    really a response on this point.  Leaving aside for the moment

5    the argument that DPH makes that the Averbukhs are bound by the

6    confirmation order and the plan and, in particular, paragraphs

7    20 and 22 of the confirmation order -- or the plan modification

8    order as well as the administrative claims bar date order on

9    the theory that they got notice for due process purposes either

10   by publication or by notice to the law firm or both.

11             There was an order entered by me some time ago

12   disallowing Mrs. Averbukh's claim as being untimely.  And I

13   didn't really see any response to that argument that the

14   Averbukhs are bound by that order.

15             MR. STEINBERG:  Well, Your Honor, that claim was filed

16   in the name of Alla Averbukh.  We don't even represent Alla

17   Averbukh.  So representing Vladimir and Alesander, I would make

18   a few points in that regard.  First of all, that claim was

19   specifically filed as an administrative claim.

20             THE COURT:  Right.

21             MR. STEINBERG:  Second of all, Alesander and Vladimir

22   did not receive notice of the claim objection.  Even for sake

23   of argument you're talking about only the notice that was sent

24   to The Kuhlman Law Firm, that is the claims objection that was

25   sent to The Kuhlman Law Firm in regard to the Alla Averbukh

Page 28

1    claim.  That claim was only filed on her behalf not on behalf

2    of Vladimir and Alesander.

3            THE COURT:  But isn't Maryland's one-form-of-action

4    rule designed specifically to cut short that type of argument?

5            MR. STEINBERG:  Well, Your Honor, I think that part of

6    the problem is that the cart has been placed before the horse,

7    which is there's a determination or an attempt to determine a

8    claim -- or whether a claim exists before the claim has even

9    been liquidated.  The movants, or I should say the cross-

10   movants, Vladimir and Alesander, are seeking to be allowed to

11   liquidate their claim.  And one thing that I think has been

12   lost or ignored, certainly at least glossed over if not

13   completely ignored, is that the cross-movants, Alesander and

14   Vladimir, should have the right to be able to liquidate their

15   claim for whatever it's worth.

16           THE COURT:  Why if it's barred?

17           MR. STEINBERG:  Well --

18           THE COURT:  Why should the debtors be forced to go

19   through that and spend the money to do that if it's already

20   barred by (a)the administrative bar date order; (b)the

21   confirmation order; and (c)the order from May 2010 disallowing

22   Alla Averbukh's claim?

23           MR. STEINBERG:  Well, Your Honor, as Your Honor knows

24   under Second Circuit law, it is very common for a personal

25   injury wrongful death action to proceed only in the event that

1   there may be insurance proceeds in order to have a liquidated

2   claim.

3        THE COURT:  But you're not offering that.

4        MR. STEINBERG:  Well, in this instance, Your Honor,

5   while we don't represent the Averbukhs in the wrongful death

6   action, my information is that Delphi had supposedly answered

7   an interrogatory stating that there was no insurance available.

8   However, I don't believe that that alone would -- should bar

9   being able to liquidate a claim in the event that there is

10  somehow some insurance that would cover a claim.  And how

11  else --

12       THE COURT:  But again, the plaintiffs aren't

13  offering -- that's not even in the mix here.  The Averbukhs

14  aren't -- there's nothing in the papers saying that the

15  Averbukhs are willing to waive their claims against Delphi and

16  indemnify Delphi as against any cost in the litigation that

17  proceeds solely against insurance.

18       MR. STEINBERG:  Well, I'm not saying that they would,

19  Your Honor.  I would have to get authorization --

20       THE COURT:  All right.  So I'm assuming that you're

21  looking to do more than that and you're looking to establish a

22  claim so that it can be enforced against DPH.

23       MR. STEINBERG:  Well, Your Honor, I think that it may

24  also be that it's necessary to have the Delphi defendants in

25  the wrongful death action in order to properly present the

1    case.  Again, I don't represent them in that action.  But it

2    does seem that it would be a hindrance to liquidating the claim

3    -- or prosecuting the wrongful death action against any

4    defendant to not have, at least as nominal defendants, the

5    Delphi defendants.

6         THE COURT:  They're not listed as nominal defendants

7    and you're not seeking to precede them.  And I'm assuming that

8    the law firm's response to Delphi's request to obey the

9    discharge and plan injunction and the May 2010 order didn't say

10   that we're only looking to name you as nominal defendants and

11   we will not -- we will limit our recovery to available

12   insurance.

13        MR. STEINBERG:  Well, again, Your Honor, I think it's

14   putting the cart before the horse.

15        THE COURT:  No, it isn't.  The cart is -- you're doing

16   just that.  You have to deal with the facts that your clients

17   were faced with just as people have to deal with the automatic

18   stay.  And the facts your clients were faced with in addition

19   to the bar date order and the modified plan confirmation order

20   is the fact that there was an order entered in May 2010

21   disallowing Alla's claim.  So I want to go back to my original

22   question.  I didn't see any response contradicting the debtors'

23   position that Maryland Code 3904 means that the other

24   plaintiffs are now barred by the disallowance of Alla's claim.

25        MR. STEINBERG:  Well, Your Honor, I can't really

1    speak --

2            THE COURT:  You're Vladimir and Alesander.

3            MR. STEINBERG:  I can't really speak to what the

4    effect under Maryland would be in the wrongful death action

5    itself.  Alesander and Vladimir's position is that they didn't

6    file the claim that was expunged and that the issue of what

7    Maryland law entitles them to is not really a question of

8    bankruptcy law to be determined at this juncture.

9            THE COURT:  Why not?  It's my order.  May 2010

10    disallows her claim.  If the effect of disallowing that claim

11    is also to render as a matter of res judicata, statutory res

12    judicata, the claims of anyone else under the -- in respect of

13    this accident relating to the death of a person barred then

14    that's it.  It's a matter of res judicata.  And I can certainly

15    determine that issue.  It's my order.

16            MR. STEINBERG:  Well, Your Honor --

17            THE COURT:  It's statutory res judicata.

18            MR. STEINBERG:  I can't speak specifically to the

19    question of Maryland law and --

20            THE COURT:  All right.  Well, I mean, the debtors.

21    And there was a timely reply.  And I guess the answer is

22    there's no response.  So, to me, it seemed to me the debtors

23    were right on that point.  But -- okay.

24            So let's move on to the other defenses.  Why isn't

25    publication notice sufficient here?

1          MR. STEINBERG:  Well, first of all, Your Honor, I

2     think we have to step back and remember which notices we're

3     talking about.  You're talking obviously now of the bar date.

4     Again, it's conceded by the debtors that there was no written

5     notice.

6          THE COURT:  All right.

7          MR. STEINBERG:  It's the cross-movants' position that

8     the debtors -- the reorganized debtors, by the time of the

9     fixing of the bar date, had notice or should have or could have

10    through diligence obtained information that would have put them

11    on notice as the debtors of a claim or a potential claim --

12         THE COURT:  On what basis?

13         MR. STEINBERG:  Well, the accident --

14         THE COURT:  The law suit itself was filed after the

15    bar date, right?

16         MR. STEINBERG:  Well, the accident occurred in 2007.

17         THE COURT:  Well, was there any notice given to the

18    debtors of the occurrence of the accident?

19         MR. STEINBERG:  Your Honor, I don't know -- again, not

20    having handled the wrongful death action, I don't know what

21    kind of pre-action notice may or may not have --

22         THE COURT:  There's no assertion in the objection of

23    the debtors' motion that there was any such notice to the

24    debtors of the accident.

25         MR. STEINBERG:  Well, the facts of the case is that it

1     was a rental car rented by Enterprise Rental Car.  And I would

2     think that Enterprise Rental Car had some kind of not just

3     responsibility but desire to advise General Motors and/or

4     Delphi and/or other parties that there had been some kind of

5     accident where there was a failure of the airbag -- alleged

6     failure of the airbag.

7             THE COURT:  Well, this is just pure speculation,

8     right?

9             MR. STEINBERG:  I don't know, Your Honor.

10            THE COURT:  Okay.  All right.

11            MR. STEINBERG:  But you asked specifically about the

12    notice and the --

13            THE COURT:  Right.

14            MR. STEINBERG:  -- publication notice.

15            THE COURT:  Right.

16            MR. STEINBERG:  And the point I was going to make

17    about the bar date -- you know, we're talking about two

18    different notices in terms of the claims objection and the bar

19    date.  There's no dispute that there was no written notice of

20    the bar date to any of the Averbukhs.  And as to the claim

21    objection itself, Your Honor, again, I reiterate that the

22    notice of the claim objection, or the claim objection itself,

23    was only served on -- or was in relation to the claim filed by

24    Alla not a claim filed by Alesander or Vladimir.

25            THE COURT:  Okay.  And the administrative expense

1   claim was filed also after the plan modification order was

2   entered, right?

3          MR. STEINBERG:  Yeah.  Shortly thereafter.  A few

4   months, Your Honor.

5          THE COURT:  Right.  Okay.  So again, there's nothing

6   to suggest that when that order was entered, which contained

7   the discharge provision and the permanent injunction, the

8   debtors were on notice of the lawsuit because the lawsuit was

9   brought a few months after the plan modification order was

10  entered?

11         MR. STEINBERG:  You're saying is there some basis?

12         THE COURT:  Right.

13         MR. STEINBERG:  I don't know, Your Honor, what

14  information was or was not transmitted in some form to the

15  debtors or to anyone else, say Enterprise Rental Car, General

16  Motors.  That is the answer.  I don't know what information, if

17  any, was provided to them and how.

18         THE COURT:  Okay.  But the accident itself happened in

19  2007.

20         MR. STEINBERG:  Yes, Your Honor.

21         THE COURT:  And it was the airbag malfunctioned is

22  what is claimed, right?

23         MR. STEINBERG:  Yes.

24         THE COURT:  So there was over a year to notify

25  Delphi -- the plaintiffs or their counsel had over a year to

Page 35

1    notify Delphi that they thought they had a claim, right?

2           MR. STEINBERG:  Well, I understand what the chronology

3    is, Your Honor.  Again, I don't know what notification was or

4    was not given.

5           THE COURT:  All right.  But there's no assertion that

6    the law firm or the Averbukhs notified Delphi.

7           MR. STEINBERG:  Not that I'm aware, no.

8           THE COURT:  Okay.  All right.  So I guess I don't

9    understand why even assuming that the Maryland one-action rule

10   doesn't apply here, why the claims of the other plaintiffs or

11   the other alleged injured parties, Vladimir and Alesander,

12   including in the capacity as administrators of Boris' estate,

13   aren't barred by the administrative claims bar date or the

14   discharge order.

15          MR. STEINBERG:  Well, again, Your Honor, it's the

16   cross-movants' position that they did not receive notice of the

17   bar date or --

18          THE COURT:  Let's assume for the moment that there was

19   appropriate constructive notice.  Is there any other argument?

20          MR. STEINBERG:  You're talking about of the bar date

21   or of the --

22          THE COURT:  Either one.

23          MR. STEINBERG:  Well, again, Your Honor, I believe

24   that the cross-movants should be allowed to prosecute the

25   wrongful death action in the court of jurisdiction to determine

1   what they have.  I mean, I was going to say liquidated claim.

2   But again, I think that the wrongful death action really is a

3   separate proceeding that has to be allowed to proceed and then

4   a determination would be made as to the status of any --

5           THE COURT:  But it's specifically enjoined by the

6   statutory discharge as well as the Court's order.  It's not

7   just enforcement but proceeding.  The whole point is that it's

8   barred.  The action itself is barred.  I mean, that's what the

9   order says and that's what the Code says, you know, 1141.

10          MR. STEINBERG:  I understand what you're saying, Your

11  Honor.

12          THE COURT:  Okay.  I guess, I didn't understand the

13  argument why it was relevant whether or not it was an

14  administrative claim.  Isn't it just worse for you if it's not

15  an administrative claim?  Then it was barred even earlier.

16          MR. STEINBERG:  The point is, Your Honor, the

17  plaintiffs cite to -- the plaintiffs, that is, in the wrongful

18  death action cite to a similar case in the western district of

19  Texas in the district court.

20          THE COURT:  In that case -- you're referring to the

21  Smith case, right?

22          MR. STEINBERG:  Yes, Your Honor.

23          THE COURT:  In that case, the judge specifically found

24  that the debtor knew on the existence of the injury and

25  therefore needed to provide actual notice instead of

Page 37

1   constructive publication notice.  The other statement in there

2   that it wasn't an administrative claim is really dicta.  It

3   doesn't make any sense.  It certainly was a claim that arose in

4   the Smith case and in your case before some bar date whether

5   it's an admin bar date or even earlier, a pre-petition claims

6   bar date arose before the bar date.  But the whole point of

7   that very brief opinion, which is attached as Exhibit B to your

8   papers, is that the debtor had to provide actual notice because

9   it says first "Despite knowing of plaintiff's suit, Delphi

10   concedes that it did not mail a notice of either the initial or

11   file an administrative claims bar date.  Notice by publication

12   does not suffice when the claimant is known" which is

13   absolutely right.  I agree with that.

14          MR. STEINBERG:  Yes, Your Honor.  Again, it's the

15   cross-movants' position that they should be -- assuming for the

16   sake of argument that their claim is deemed to be the same as

17   the Alla Averbukh claim that was expunged, that they should be

18   relieved of that order for the reasons previously stated, that

19   is the lack of notice -- written notice of the bar date and the

20   lack of notice to them of the claim objection.  And so, while

21   the issue of the administrative --

22          THE COURT:  Well, but wasn't the claim objection sent

23   to their counsel?  There's no dispute about that, right?

24          MR. STEINBERG:  The claim objection was sent to The

25   Kuhlman Law Firm, yes.

05-44481-rdd   Doc 22138-3   Filed 09/06/13   Entered 09/06/13 22:37:36   Exhibit
DPH HOLDINGS CORPORATION, et al.
Exhibit 2   Pg 38 of 52

Page 38

1          THE COURT:  And that was the address on the proof of

2    claim.

3          MR. STEINBERG:  I believe so, Your Honor.

4          THE COURT:  So that doesn't really fly, right?

5          MR. STEINBERG:  Well, Your Honor, the point is that

6    the circumstances of this case warrants relief from the order

7    not -- for the sake of argument, assuming that the notice was

8    sent to The Kuhlman Law Firm as alleged by the reorganized

9    debtors that the cross-movants are entitled to relief from the

10   order expunging the claim for the reasons stated.

11         THE COURT:  But why?

12         MR. STEINBERG:  Well, again --

13         THE COURT:  Why should they be relieved from an order

14   that was entered in May of 2010 --

15         MR. STEINBERG:  Well, they weren't --

16         THE COURT:  -- particularly when they chose to proceed

17   in the face of an injunction --

18         MR. STEINBERG:  Well, they weren't --

19         THE COURT:  -- and a warning that they were violating

20   an injunction and a discharge order.

21         MR. STEINBERG:  Because Vladimir and Alesander did not

22   file a claim.  And while I can't speak for The Kuhlman Law

23   Firm, they were not the named claimants.  And they're --

24         THE COURT:  What was the rationale given by them for

25   proceeding in violation of the discharge --

05-44481-rdd   Doc 22138-3   Filed 09/06/13   Entered 09/06/13 22:37:36   Exhibit
DPH HOLDINGS CORPORATION, et al.
Exhibit 2   Pg 39 of 52

Page 39

1          MR. STEINBERG:  I do not know, Your Honor.

2          THE COURT:  I honestly do not understand it.  It seems

3   to me when you see an injunction as a -- that before you run

4   the risk of violating it under these circumstances, you see

5   relief from it.  And at that point, you seek relief either

6   because you think it doesn't apply or -- under Rule 60

7   although, of course --

8          MR. STEINBERG:  Well --

9          THE COURT:  -- you couldn't do it under Rule 60

10  because it's barred by the express terms of Rule 9024 which

11  modifies Rule 60 in bankruptcy cases to limiting the challenges

12  or revocation of a confirmation order to the 180 days after the

13  entry of such an order and then only for fraud.  So obviously,

14  they couldn't have done that.  So I don't see why they're not

15  bound by the discharge --

16         MR. STEINBERG:  Well, Your Honor, again --

17         THE COURT:  -- unless it's a theory that they didn't

18  have proper due process notice.

19         MR. STEINBERG:  Well, as we stated in the papers, Your

20  Honor, that is our position that they did not have --

21         THE COURT:  Okay.

22         MR. STEINBERG:  -- proper notice.

23         THE COURT:  All right.  Okay.  Anything on the

24  debtors' side?

25         MR. KLEIN:  Nothing, Your Honor.

05-44481-rdd   Doc 22138-3   Filed 09/06/13   Entered 09/06/13 22:37:36   Exhibit
DPH HOLDINGS CORPORATION, et al.
Exhibit 2   Pg 40 of 52

Page 40

1          THE COURT:  Okay.  I have before me a motion by the

2     debtors -- or the reorganized debtors, DPH Holdings Corp., to

3     enforce the order entered by this Court on July 30th, 2009, the

4     so-called plan modification order which confirms the modified

5     plan of the Delphi debtors.  Specifically, the motion seeks to

6     enforce paragraphs 20 and 22 of the plan modification order.

7     The first paragraph, paragraph 20, incorporates into the

8     confirmation order the discharge of the Delphi debtors found in

9     paragraph -- or Article 11.2 of Delphi's first amended plan as

10    modified under Section 1141(d) of the Bankruptcy Code which

11    discharges all pre-effective date, that is pre the date when

12    Delphi's modified plan went effective, claims and causes of

13    action, whether known or unknown, whether fixed or unliquidated

14    against the Delphi debtors.

15          Paragraph 22 of the plan modification order is a

16    permanent injunction of all persons on or after the effective

17    date from commencing or continuing in any manner any claim,

18    action, appointment of process or other proceeding of any kind

19    with respect to any claim, cause of action or any other right

20    or claim against the reorganized debtors which they possess or

21    may possess prior to the effective date, again, the effective

22    date of the confirmed modified plan.

23          The reorganized debtors seek to enforce those two

24    provisions of the July 15th -- I'm sorry -- the July 30th, 2009

25    order against the plaintiffs in a personal injury lawsuit

Page 41

1    commenced in September of 2009 by Vladimir and Alesander

2    Averbukh and naming Alla Averbukh as a use party in Maryland

3    state court based on the wrongful death of Boris Averbukh in a

4    car accident that occurred in 2007.

5           Those dates are important.  The accident occurred in

6    2007.  The lawsuit was commenced in September of 2009 after the

7    effective date of Delphi's modified plan.  And in addition, the

8    car accident occurred, as I said, in 2007 during the pendency

9    of Delphi's Chapter 11 case which began in October of 2005.

10   The accident also occurred in the period from October 2005

11   through June 1, 2009 covered by the Court's order establishing

12   administrative claims bar date in Delphi case of July 15th,

13   2009 by which to assert any administrative claims falling

14   within that period.

15           The record reflects that the first time that Delphi

16   was aware of the lawsuit was when it was commenced, in

17   September of 2009.  In addition, in November of 2009 -- I'm

18   sorry.  I've gotten my dates wrong.

19           The first time that Delphi was aware of the claim was

20   when Alla Averbukh filed a proof of administrative claim in

21   September of 2009, approximately forty-eight days after the

22   administrative claims bar date.  The lawsuit was not commenced

23   until November of 2009 by Boris' estate with his two sons,

24   Vladimir and Alesander, with Alla named as a use party.  So to

25   be clear, Delphi was not aware, on this record before me, of

1    the existence of the car accident or the claim until Alla filed

2    her administrative expense claim after the administrative

3    claims bar date in September of 2009, the lawsuit itself not

4    being commenced until November of 2009.

5         The reorganized debtors objected to Alla Averbukh's

6    proof of claim as being untimely.  And in May of 2010, this

7    Court entered an order disallowing and expunging that claim.

8    The debtors also made demand of the Averbukhs and their counsel

9    thereafter to discontinue the Maryland state court action on

10   the basis that it was in violation of the plan modification

11   order, the debtors' discharge and now also as well in violation

12   of the May 2010 order disallowing Alla's claim.  The basis for

13   the latter assertion is Maryland Courts and Judicial

14   Proceedings Code Ann. Section 3-904 (2011) which restricts

15   actions in respect of the death of a person, that is wrongful

16   death actions like the Maryland state court action, to only one

17   action.  The debtors contend that since Alla's claim premised

18   upon the wrongful death of Boris was disallowed by this Court

19   in May of 2010, the parties to the Maryland wrongful death

20   action are now barred by statutory res judicata or claim

21   preclusion by Section 3-904.

22        The plaintiffs in the wrongful death action did not

23   cease the action nor did they cease -- nor did they seek relief

24   from the Court's bar date order, the Court's plan modification

25   order or the Court's order from May 2010 disallowing Alla's

05-44481-rdd   Doc 22138-3   Filed 09/06/13   Entered 09/06/13 22:37:36   Exhibit
DELPHI HOLDINGS CORPORATION, et al.
Exhibit 2   Pg 43 of 52

Page 43

1    proof of claim.  Instead, the debtors were forced to bring this

2    motion to enforce all of those orders.

3           In response, the claimants assert effectively, or

4    really, only one issue which is that they did not receive

5    sufficient notice for due process purposes of any of the orders

6    that the debtors contend bar, as a matter of res judicata,

7    their continued prosecution of the state court lawsuit.

8           It is, of course, the case that to be enforceable, an

9    order, including a discharge order, must comply with due

10   process under the Fifth Amendment.  See, for example, In re

11   Enron Corporation, 2006 Bankr. LEXIS 894 at 12 (Bankr. S.D.N.Y.

12   March 29, 2006) and In re Thomson McKinnon Securities, Inc.,

13   130 B.R. 717, 719-20 (Bankr. S.D.N.Y. 1991).

14          The case law is clear that for known claimants,

15   claimants known to be such by the debtor, the debtor must

16   provide actual notice of a bar date and/or a proposed

17   confirmation order that would effectuate a bankruptcy

18   discharge.  However, for unknown claimants, the debtor need

19   provide notice reasonably calculated to reach them and

20   permitting a reasonable amount of time for response and

21   reasonably conveys all of the required information.  Such

22   notice, again for an unknown creditor, may be made by

23   publication.  See Mullane v. Central Hanover Bank & Trust Co.,

24   339 U.S. 306, 314, 317 (1950).  See also Daewoo International

25   America Corp. Creditor Trust v. SSTS America Corp., 2003 U.S.

Page 44

1    Dist. LEXIS 9802 at 7-10 (S.D.N.Y. June 9, 2003); In re Thomson

2    McKinnon Securities, Inc., 130 B.R. at 719-20; and see also

3    Chemetron Corp. v. Jones, 72 F.3d 341, 346 (3rd Cir. 1995) as

4    well as In re J.A. Jones, Inc., 492 F.3d. 242 (4th Cir. 2007)

5    making a distinction between a known personal injury claimant

6    who's entitled to actual notice and unknown personal injury

7    claimants who are entitled to reasonable publication notice.

8         Here, the record is undisputed that the debtors

9    provided publication notice to unknown claimants on a wide

10   basis that was previously approved by the Court and the actual

11   content of that notice or its reasonableness are not in

12   dispute.  There's also nothing in the record to refute the

13   obvious facts from the dates that I went through that the

14   debtors were not aware of this claim until it was filed by Alla

15   in November of 2009 after the entry of the administrative

16   claims bar date order and the modified plan confirmation order

17   and then subsequently when the litigation was commenced by

18   Alesander and Vladimir naming Alla in November of 2009.

19        In light of the foregoing, I conclude that there was

20   sufficient notice for due process purposes under Mullane and

21   the cases that I've cited and that consequently, the claims

22   asserted by the plaintiffs in the Maryland action are barred by

23   the debtors' discharge under Section 11.2 of the plan and

24   paragraph 20 of the plan modification order as well as the

25   permanent injunction set forth in paragraph 22 of the plan

1   confirmation order.  In addition, they are barred, as I've

2   already found and as is law of the case, by my order of May

3   2010 disallowing Alla's proof of administrative expense claim

4   in this case as being untimely.

5            The plaintiffs in the Maryland state action seek

6   relief from "the Court's relevant orders" in their response to

7   the debtors' motion under Bankruptcy Rule 9024 which

8   incorporates Federal Rule of Civil Procedures 60.  They are

9   precluded by the express terms of Bankruptcy Rule 9024,

10  however, from seeking relief from the plan modification order

11  given that Section 1144 of the Bankruptcy Code is an exception

12  expressly in Bankruptcy Rule 9024.  And Section 1144 provides

13  that a party may seek revocation of a plan confirmation order

14  until 180 days after the entry of that order but if, and only

15  if, the order was procured by fraud which is not asserted here.

16           In addition, other than the issue of notice, which

17  I've already addressed, no grounds are raised for relief from

18  the bar date order which is now over two years old and which

19  the Averbukhs had notice of, as well as their law firm, at

20  least as of the date of the debtors' objection to Alla's proof

21  of claim which, again, I granted in May of 2010 in which has

22  not sought to have overturned since then.  So there really is

23  no basis for such requested relief even from the bar date order

24  under Bankruptcy Rule 9012 nor any specific fact alleged other

25  than the issue of notice which I've already dealt with as

Page 46

1    giving a basis for such relief.

2          Finally, as an alternative ground, I believe that the

3    debtors are correct that leaving aside the res judicata effect

4    and binding effect given my belief that the Averbukhs received

5    sufficient notice for due process purposes of the plan

6    modification order and the discharge is the fact that, as a

7    result of my May 2010 order disallowing Alla's claim based on

8    the wrongful death that is also the basis for the Maryland

9    state action, Maryland Courts and Judicial Proceedings Code

10   Ann. Section 3-904 precludes, as a matter of statutory res

11   judicata, Alesander and Vladimir proceeding with the action

12   that has already been effectively ruled on by me in May of 2010

13   by disallowing Alla's wrongful death claim.

14         So the debtors' motion is granted on those separate

15   alternative grounds.  I frankly don't even understand the

16   contention that was made at oral argument that the debtor

17   should permit the Averbukhs to liquidate their claim in

18   Maryland state court in the face of the discharge and the

19   injunction in paragraph 22 of the plan modification order which

20   expressly prohibits the commencement or continuation of any

21   proceeding in respect of any claim arising before the effective

22   date.  That's why a debtor gets a discharge in a plan

23   confirmation order and that's why a debtor gets a bar date

24   order which these parties were clearly in violation of by

25   asserting pre-effective date claims which these claims clearly

Page 47

1    are under Reading Company v. Brown, 391 U.S. 471 (1968) and In

2    re Refco Inc., 2008 U.S. Dist. LEXIS 2484 at 17 (S.D.N.Y.

3    January 14, 2008).

4            So the debtors can submit an order consistent with

5    that ruling.

6            MR. KLEIN:  Your Honor --

7            THE COURT:  It's without prejudice to the debtors'

8    rights to seek sanctions for violation of the Court's orders.

9            MR. KLEIN:  And this may be implicit in your last

10   remark but I would ask that the order include a mandatory

11   injunction directing them to dismiss the Maryland action so we

12   don't have to incur the costs of doing anything beyond this.

13           THE COURT:  Well, that's appropriate.

14           MR. STEINBERG:  Your Honor, if I may, there was an

15   order -- proposed order submitted by the reorganized debtors

16   with their motion.  I'm not sure if they want a different order

17   than that.

18           THE COURT:  I want a different order than that.  It's

19   my order.  I don't understand why this law firm didn't comply

20   with the debtors' request in the first place.  I know you're

21   saying you're not really involved with that so I'm not really

22   addressing this so much to you as to them.  But this was just a

23   clear violation.  I don't know what they were thinking.

24           MR. STEINBERG:  Thank you, Your Honor.

25           THE COURT:  Okay.

Page 48

1          MR. KLEIN:  Thank you, Your Honor.

2          MS. HAFFEY:  Thank you, Judge.

3          THE COURT:  Oh, I'm sorry.  And this doesn't relate to

4     you.  You may not even be aware of this.  I had asked my clerk

5     because of a letter I had gotten to give me an update -- I

6     asked my clerk to ask someone at Skadden to give me an update

7     on the status of the Michigan Workers' Compensation matter

8     that's now on appeal to the Second Circuit.  And the reason I

9     did that is I had received a letter from a former employee in

10    Michigan who said that the Michigan Insurance Fund wasn't

11    paying any workers' comp benefits.  And I didn't really

12    understand why that should be the case.  And I wanted to make

13    sure that the Skadden firm had the letter.  And Mr. Lyons sent

14    an e-mail to chambers in response to that inquiry saying that

15    he was aware of it, the debtors were aware of it, and that the

16    debtors didn't believe that anything in the plan or the

17    confirmation or anything else precluded or prevented the

18    Michigan regulatory bodies from paying those claims.

19          If that's the case, I think that the debtors would be

20    well advised to so inform the Michigan parties as well as this

21    individual.  I don't want a misunderstanding or potential

22    misunderstanding by the Michigan parties, Michigan regulatory

23    authorities, to get in the way of people getting their actual

24    benefits that they're entitled to under Michigan law.  So I

25    don't know if the debtors have done that, but I think it's

Page 49

1    probably worth doing.  I'm not telling you to compromise any

2    rights you have if you think that sending such a letter

3    compromises some right.  But it seemed from Mr. Lyons' response

4    that the debtors don't believe that.

5              MR. UNRUE:  That's correct, Your Honor.

6              THE COURT:  Okay.

7              MR. UNRUE:  This was Mr. Gai, I believe.  I'm not sure

8    how to pronounce it.

9              THE COURT:  That was the letter, yeah.

10             MR. UNRUE:  Yeah.  And we'll be responding.

11             THE COURT:  Okay.  And the Michigan people -- I mean,

12   the Michigan regulators should be copied on that letter because

13   I don't want there to be any implication that I'm precluding

14   them from making those payments.

15             MR. UNRUE:  Understood.

16             THE COURT:  And notwithstanding the appeal, there's no

17   injunction of my order.  So if Michigan is taking the position

18   that they're precluded somehow from doing that by the

19   litigation, the litigation should proceed quickly in front of

20   me although I understand the appeal is going to be argued soon.

21   But there's no reason to delay that litigation if it's holding

22   up people's payments.

23             MR. UNRUE:  Okay.

24             THE COURT:  Okay.

25             MR. UNRUE:  Thank you, Your Honor.

1          THE COURT:  And obviously, no one's here from

2     Michigan.  Mr. Lyons isn't here.  You can tell them that they

3     can read this portion of the transcript if they --

4          MR. UNRUE:  Yep.  Absolutely.

5          THE COURT:  -- have any questions about it.

6          MR. UNRUE:  Thank you, sir.

7          THE COURT:  Okay.

8          MS. HAFFEY:  Thanks, Judge.

9          THE COURT:  Thanks.

10         (Whereupon these proceedings were concluded at 11:49 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 51

1

2                        **I N D E X**

3

4                      **R U L I N G S**

5    DESCRIPTION                              PAGE      LINE

6    Motion of James Sumpter, pro se, for      20         4

7    recoupment denied

8    Debtors' motion to enforce plan modification   46        14

9    order granted

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 52

1

2                          C E R T I F I C A T I O N

3

4      I, Lisa Bar-Leib, certify that the foregoing transcript is a

5      true and accurate record of the proceedings.

6

7

8      _____

9      LISA BAR-LEIB

10     AAERT Certified Electronic Transcriber (CET**D-486)

11

12     Veritext

13     200 Old Country Road

14     Suite 580

15     Mineola, NY 11501

16

17     Date:  September 26, 2011

18

19

20

21

22

23

24

25