**EXHIBIT A**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| James B. Sumpter, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No. |
| | ) | |
| Delphi Automotive Systems (Holding), Inc. et al | ) | 1:13-cv-1024 WTL - TAB |
| | ) | |
| Defendants. | ) | |

# EMERGENCY MOTION FOR INJUNCTION AGAINST DPHH ACTION IN THE BANKRUPTCY COURT (SDNY)

1. Defendant DPHH has filed a motion in bankruptcy court (SDNY) seeking an injunction from the bankruptcy court (SDNY) against the plaintiff in regards to this case.

2. As a result, it has become necessary for me to file a motion with this court seeking an order that enjoins the defendants from pursuing its injunction or attempting to move any aspect of this case to the bankruptcy court in New York, for the following reasons:

   a. The timing of the defendant's motion, defeats the purpose of the extension requested by the plaintiff (Docket # 30), (Currently the motion requesting time has not been acted on by the court.)



b. The defendants bankruptcy court motion is an attempt to subvert jurisdiction of this court;

c. The defendants motion is part of a campaign of retaliation harassment by the defendants;

d. The defendants bankruptcy motion, like their motion to dismiss, in this court, ignores the fundamental issue of this case, that disability benefits were not terminated by the bankruptcy court OPEB Order;

e. The bankruptcy court does not have sufficient subject matter jurisdiction.

f. The bankruptcy court does not have constitutional authority; and

g. The bankruptcy court can have no authority over litigation between the plaintiff and defendants who are not part of the DPHH bankruptcy.

### A. The timing of the DPHH motion, defeats the purpose of the extension the court has recently granted

3. On Friday, September 5th, I filed a motion requesting an extension of time (Docket # 30) to respond to defendant's motion to dismiss (docket #28). My justification for requesting this extension was because of the effect that my health condition was having on my productivity.

4. As a part of this motion process, and in compliance with local rules, I contacted defendant attorneys and sought their response regarding my request. As a result, they knew that I had health issues that were impacting my performance. Although the motion was filed with the court on September 6th, there has been a delay in its

docketing which did not take place until September 10th. At the time this motion was filed, the court had not yet acted on plaintiffs request for 28 day delay.

5. Subsequent to my extension requests, after full knowledge of my situation, the defendant's attorneys have filed a motion in bankruptcy court seeking an injunction that prevents me from pursuing this case in Indiana. Having to respond, to a motion, although it is frivolous, in bankruptcy court defeats the purpose for the extension granted in this court and consumes our resources that I had anticipated applying to the defendant's motion to dismiss.

6. This is also true of the need to have to file this motion for injunction, as I am forced to apply my limited resources to activities other than responding to defendant's motion to dismiss.

7. Thus I am asking the court, to enjoin the defendant's from pursuing a motion in the bankruptcy court.

### B. The defendant's have made three attempts to subvert the jurisdictional control of this court.

8. The defendant's have made three attempts to subvert the jurisdictional control of this court and two attempts to change the venue

9. The defendants made such an attempt in the notice of related cases (Docket number #), which was based on frivolous justifications and associations.

10. The defendants also has made such an attempt in their recent motion to dismiss (Docket # 28), which seeks to shift the jurisdictional control and change the venue of this case.

11. The third and most recent attempt is the DPHH's injunction motion in the bankruptcy court SDNY. In this motion, the defendants are actually seeking to have the bankruptcy court litigate this case. They have filed a motion that is frivolous, that ignores the content of the plaintiff's complaint and the facts in the case.

### C. The defendants have begun a campaign of retaliation and harassment

#### Issue one

12. They have filed simultaneous motions in two different courts, so as to deplete my scarce physical resources. In this bankruptcy court motion, the defendants are actually seeking to have the bankruptcy court litigate this case. They have filed a motion that is frivolous, that ignores the content of the plaintiff's complaint and the facts in the case.

13. In addition, they have filed this motion setting a response date that is too short and in violation of the Federal rules of bankruptcy procedure. They were not held accountable in a similar situation regarding my ERISA complaint, when they moved for an injunction in that case.

#### Issue two

14. Mrs. Beaufort telephoned me at 6:30 PM on Friday, August 30 and requested that I issue a new amended complaint. Her justification was that I was entitled to submit one amended complaint without court approval and that this would help her know which version of the complaint to respond to. I indicated that 6:30 PM on Friday evening was not the best time, since the court was closed and I could not seek any information from the pro se clerk.

15. However, later, I did send her an email indicating that I would attempt to contact the clerk on Monday morning and give her a prompt reply. After reviewing the Federal Rules of Civil Procedure, I determine it would be a violation to issue an amended complaint without filing a motion with the court after 21 days has passed.

16. I did reach the clerk work on Monday morning sent a notice to the court regarding the issue. The clerk also indicated that Ms. Beaufort could have called the court herself. The court approved my previously sent motion to amend my complaint. I sent Ms. Beaufort an email update regarding my communications with the clerk and related issues around the request.

17. However when Ms. Beaufort responded to the complaint, she responded to neither version of the complaint. Instead she filed a motion to dismiss. This is a clear indication to me that Ms. was trying to manipulate me into violating the federal Rules of Civil Procedure.

### Issue three

18. On Friday, September 6, at 11:30 PM, I was awakened when the defendants attempted to send me a fax of their recent motion for an injunction in the bankruptcy court (about 200 pages). I disconnected the fax machine but failed to disconnect the telephone. At 12:30 AM on September 7th, the defendants again attempted to send me a fax was again awoke the entire house. I had the same issue with them, in my other case, that's pending in District Court, from the same attorneys. At that time I wrote them asking them **not** to send court documents to me by fax. I sent another email to the defendants about 12:45 AM on September 7th, and reminded them that I've asked not to be faxed and asked them to stop. A copy of this communication is in Attachment 1.

19. It should also be noted, that the defendants sent me a copy of the bankruptcy motion via email around 11:30 PM Friday (September 6). I also received a paper copy via FedEx on Saturday morning, which means this package had to have been sent before 6:30 PM on Friday. Therefore it's clear, that there could be no reason to send the fax, other than to harass, since I had previously requested that they not fax me, and since they had already sent me two separate copies by other reliable means.

### Issue four

20. The court should also note that I tried to reach Ms. Boufford Friday morning about 11 AM. To follow up regarding her comments on my requests for a delay. She refused to take my call and did not return my voicemail. Instead she wrote me an email asking me not to call her, asking me to communicate by email only. Normally, looked at in isolation, I would consider this issue too petty to bring to the court's attention.

21. However, in the context of the defendant's attorney's harassment campaign Ms. Boufford's behavior is a passive aggressive act directed toward the plaintiff and his additional proof of the defendant's antagonism toward the plaintiff.

### Disability benefits were **not** terminated by the bankruptcy court OPEB Order

22. The bankruptcy court OPEB Order did not terminate the plaintiff's supplemental extended disability benefits. In fact the order requires the debtor continue to pay such benefits through the contractual end date.

23. The defendant's bankruptcy motion, like their **motion to dismiss** in this court ignores the fundamental issue of this case, that disability benefits were not terminated by the bankruptcy court OPEB Order.

24. Therefore, the plaintiff wishes to emphasize that disability benefits (EDB) and supplemental extended disability benefits (SEDB) are vested. This fact is a fundamental issue of this complaint. However, it is not the only key issue. The disability benefits were **not** terminated during the bankruptcy OPEB proceedings. In addition, no determination was made regarding the vesting of disability benefits during the OPEB hearing, because disability benefits were **not part** of the OPEB benefits.

25. The entire list of terminated OPEB benefits, which comes directly from the OPEB termination order, is documented below[1]. (For the courts convenience, a copy bankruptcy courts final **OPEB Order** is provided as Attachment **2**.) It should be easily seen that disability benefits are not included in this list.

   a. Eliminating eligibility for **employer-paid post-retirement health care benefits** for all current and future active salaried employees;

   b. Ceasing to make **Company contributions to provide post-retirement health care** for current and future salaried retirees and their surviving spouses;

   c. Canceling **all Retirees' Health Reimbursement Accounts** for Medicare-eligible salaried retirees and their surviving spouses;

   d. Terminating the **Medicare Part B special benefit** for current and future salaried retirees and their surviving spouses;

   e. Ceasing to provide the **1% employer contribution to the Salaried Retirement Savings Plan** for those active salaried employees hired on or after January 1, 1993 and on or prior to December 31, 2000;

---

[1] The final OP ED termination order can be found in exhibit D and the plaintiffs complaint(docket #1) and **Attachment 2** of this motion.

    **f.**    Eliminating eligibility for **employer-paid post-retirement basic life insurance** benefits for all current and future active salaried employees; and

    **g.**    ceasing to make Company contributions to provide **post-retirement basic life insurance benefits** for current and future salaried retirees;

### Disability benefits were not terminated by the OPEB order.

26. Furthermore disability benefits were not discussed as a part of the OPEB hearing. Whether disability benefits were vested or not, was not discussed as a part of the OPEB hearing.

27. The final OPB order also included the following text:

> *The Debtors shall continue to provide benefits for claims incurred by each Eligible Salaried Employee through the cessation date of such retiree's participation in the applicable welfare plan, provided that such retiree has timely paid all requisite contributions for the applicable plan, and provided further that such retirees shall not be required to file proofs of claim in this Court to implement the terms of this decretal paragraph.*

28. In addition, the Plaintiff's complaint included Exhibit E which includes a portion of the transcript from the OPEB hearing which documents that 11 USC 1129( a )(13) requires continued payment, by the debtor of benefits that would not terminated by the OPEB order.

29. The text of 11 USC 1129( a )(13) follows:

> *(13) The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of this title, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of this title, at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits.*

30. Thus, it can be seen that disability benefits were **not** terminated by OPEB termination order and the OPEB termination order requires the payment of non-terminated benefits as does the law (11 USC 1129( a )(13)).

31. Thus, when the DPHH terminated the plaintiff's disability benefit, it illegally terminated a vested benefit. This also means that DPHH also illegally terminated a benefit that it was ordered to continue paying by the bankruptcy court.

32. Thus, in the plaintiff's **case**, the debtor (now DPHH) had obligated itself to pay plaintiff supplemental extended disability benefits until the end of the month when the Plaintiff turns 65, which is the end of January 2017.

33. It's unfortunate that the defendant's attorneys have refused to recognize and understand this important and essential issue that has been fully documented in the Sumpter complaint(docket #1).

34. Thus, the defendant's failure to recognize this key issue regarding disability benefits in the bankruptcy courts OPEB Order has apparently contributed to numerous factual errors in the motion in the bankruptcy court and its resulting frivolous nature.

35. Therefore having to respond to a flawed and frivolous motion in the bankruptcy court would unnecessarily create significantly extra work for me and consume my precious physical and emotional resources while erasing the benefit that requested delay offers.

36. Therefore, the plaintiff requests that this court enjoined DPHH from pursuing this motion or any similar future motions in the bankruptcy court and instead order DPHH to make an informed response, in normal course, to the plaintiffs complaint (Sumpter Complaint- docket #1) in this court.

### E. The bankruptcy court does not have sufficient subject matter jurisdiction.

37. In the Sumpter the Complaint it was shown that the bankruptcy court ruled that the DPHH was obligated to pay benefits not terminated in the OPEB Order. As a result, the OPEB order establishes that disability payments to the plaintiff are not part of the bankruptcy estate.

38. Thus, in the Sumpter complaint Causes One and Three through Six are litigations to seek redress for defendants illegal actions regarding disability payments, which are not part of the bankruptcy estate and, as a result, these Causes in the Sumpter Complaint, are not related to bankruptcy court proceedings.( See **Celotex Corp. v. Edwards, 514 U.S. 300 (U.S. 1995)**)

39. Cause One of the Sumpter complaint is an ERISA action in which the plaintiff seeks to recover benefits illegally terminated by DPHH. As indicated earlier, these benefits are not part of the bankruptcy estate.

40. However, cause one also relies on the bankruptcy judges OPEB Order, which the bankruptcy judge does have the authority to enforce. Therefore, plaintiff believes that the bankruptcy court and the District Court have concurrent jurisdiction regarding cause one.

41. Cause Two does affect the size of the bankruptcy estate. As a result, the bankruptcy court does have subject matter jurisdiction in regards to this item. However, the bankruptcy court does not have exclusive jurisdiction regarding Cause Two.

42. As a result, the District Court is only court with complete subject matter jurisdiction. It should therefore be the court to hear these issues.

43. As a result of the jurisdictional characteristics of this case and the impact of having respond to emotions and bankruptcy court on the plaintiff, the plaintiff requests that this Court enjoins DPHH from pursuing its motion or any similar future motions in the bankruptcy court and instead order it to make an informed response, in normal course, to the plaintiffs complaint in this court.

### F. The bankruptcy court does not have constitutional authority

44. Generally, none of the causes in the plaintiff's complaint are subject to bankruptcy jurisdiction because they all should be litigated in an Article 3 court. However there is exception in the case of bankruptcy, if the issues are core proceedings of the bankruptcy or if the issues are related to the bankruptcy.

45. The Plaintiff offers the following citations relative to constitutional authority:

**Regarding "related to" jurisdiction**

*A civil proceeding is "related to" a bankruptcy case, for jurisdictional purposes, when the action between the parties affects how much property is available for distribution to creditors of the bankruptcy estate or allocation of property among such creditors, or if the outcome could alter the debtor's rights or liabilities. [8] "Related to" jurisdiction is limited, and bankruptcy courts lack jurisdiction over matters which will have no effect upon the debtor's estate. [9].*

*[8] = See Knox v. Sunstar Acceptance Corp. (In re Knox), 237 B.R., 693 (Bankr. N.D. Ill. 1999);*
*[9]= See Geron v. Schulman (In re Manshul Constr. Corp.), 225 B.R. 45 (S.D.N.Y. 1998)*

### Regarding "related to" jurisdiction

*Stern v. Marshall, 131 S. Ct. 2594 (U.S. 2011)*
*Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.*

### Regarding "related to" jurisdiction

*Celotex Corp. v. Edwards, 514 U.S. 300 (U.S. 1995)*
*The United States Court of Appeals for the Third Circuit has devised a test for determining the existence of "related to" jurisdiction: The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action, either positively or negatively, and which in any way impacts upon the handling and administration of the bankrupt estate. The First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits have adopted the test with little or no variation.*

### Regarding core proceedings

*In other words, a core proceeding, "for bankruptcy jurisdictional purposes, is [an] action that has as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment." (See Geron v. Schulman (In re Manshul Constr. Corp.), 225 B.R. 41, 45 (S.D.N.Y. 1998)).*

46.     Thus plaintiff concedes, that Cause Two is a core proceeding in the bankruptcy. However, based on the citations above, Causes One, 3,4,5and 6 have no effect on property of the estate. In addition, causes 1,3,4,5 and six are torts revolving around personal injury and these causes are not core proceedings in the bankruptcy. As a result, only an Article III court can adjudicate these issues.

47. The one partial exception is in regards to Cause One, the bankruptcy court retains the authority to enforce its order, which in this case the OPEB Order required the debtor to continue to pay the plaintiffs supplemental extended disability benefit, which removed the plaintiffs disability benefits from being considered property of the estate.

48. Thus the bankruptcy court does have the authority to enforce his order that the debtor continue to pay the plaintiffs supplemental extended disability benefit. However, the ERISA action, which is Cause One, based on the rulings cited above, is not related to the bankruptcy.

### G. The bankruptcy court can have no authority over litigation between the     plaintiff and defendants who are not part of the DPHH bankruptcy.

49. In addition, the defendants, other than DPHH, in Causes Three, Four, Five and Six are not creditors in the bankruptcy and have no property interest in the bankruptcy estate. Therefore DPHH's efforts to have the bankruptcy court enjoined the plaintiff's actions against these defendants is improper.

### Summary

50. Granting the requested injunction does no harm to DPHH or the other defendants. This is true, first, because the defendants other than DPHH have no standing in the bankruptcy court. It is also true because DPHH retains the ability to make any argument that it believes it could make in the bankruptcy court in the Indiana District Court.

51. Permitting DPHH to pursue this injunction in the bankruptcy court does irreparable harm to the plaintiff, since the plaintiff will be forced to litigate the same complaint in two courts simultaneously, while he endures a health crisis that has substantially limited his scarce physical and emotional resources. This makes it impractical for the plaintiff to do the work required to receive a just outcome.

52. For these reasons, having to answer a motion in bankruptcy court would pose an unjust an unnecessary hardship on me and my well being. While, there is no hardship to DPHH if it's forced to withdraw his motion in the bankruptcy court and continue with proceedings, in normal course, in Indiana.

53. This plainly demonstrates that the balance of hardship brought by having to argue this injunction motion, or endure distant proceedings in the New York bankruptcy court, weighs strongly against me.

54. Permitting DPHH to proceed with its efforts in the bankruptcy court will ultimately duplicate and waste court resources as it does also to the plaintiffs. As the plaintiff has shown that the issues involved in the case are not core bankruptcy issues, the bankruptcy court cannot enter a final judgment and the issue will return to a district court. Although, that court will be in New York. In which case DPHH will have managed to subvert the jurisdiction of this court and shift these proceedings from its proper venue.

55. DPHH has inexplicably and doggedly avoided the fundamental issue in this case, which is that the bankruptcy court ordered the continued payment of benefits(i.e. the Plaintiff's SEDB benefit) that were not terminated by the bankruptcy courts OPEB Order. It appears as though the attorneys for DPHH either have not read or don't understand the OPEB Order.

56. DPHH, in its bankruptcy injunction efforts, also avoids another key issue, which is that DPHH's chose to terminate the plaintiffs SEDB benefits in March 2012, which was nearly 3 years after the effective date (October 6, 2009) of the bankruptcy plan (an act not related to any claim process), while conspiring to commit, ERISA violations, a civil rights violation, mail fraud , extortion and racketeering, all of which are not related to the DPHH bankruptcy. DPHH avoids this issue because the plaintiff has presented substantial documentation to support a strong conclusion of plausibility and therefore has a high probability of prevailing on the issues in the Sumter complaint.

57. In addition, this court has the jurisdictional, constitutional and statutory authority to adjudicate any non-frivolous issue that DPHH and the other defendants choose the raise in this case, which, as the above paragraphs document, the bankruptcy court is not empowered to do.

58. For these reasons, the defendant, DPHH should be immediately enjoined from attempting to have the bankruptcy court participate in any manner in litigating these issues.

WHEREFORE, the plaintiff respectfully requests that this Court enter an order at the earliest possible date and as soon as possible before the bankruptcy motion response deadline of September 19th, granting the relief requested herein, and such other and further relief as may be just, necessary and appropriate.

The court should note that the sooner the plaintiff knows this courts ruling, on this motion, the sooner the plaintiff can focus his resources on responding to the defendants Motion to Dismiss (Docket #28).

## VII. SIGNATURE

Signed this 12th day of September, 2013

By: *[signature]*
James B. Sumpter, pro se
Plaintiff

James B. Sumpter, pro se
21169 Westbay Circle
Noblesville, IN  46062

Phone    317-877-0736
E-mail   jsump@ieee.org