Hearing Date: October 21, 2013 at 10 a.m. (EDT)

BUTZEL LONG, a professional corporation
150 West Jefferson, Suite 100
Detroit, MI 48226
(313) 225-7000
Thomas B. Radom
Cynthia J. Haffey
David J. DeVine
*Attorneys for Reorganized Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| DPH HOLDINGS CORP., *et al.,* | Case No. 05-44481 (RDD) |
| | Jointly Administered |
| Reorganized Debtors. | |

**REORGANIZED DEBTORS' REPLY IN SUPPORT OF THEIR MOTION FOR ORDER
(I) ENFORCING MODIFICATION PROCEDURES ORDER,
MODIFIED PLAN AND PLAN MODIFICATION ORDER INJUNCTION
AGAINST CURTIS J. DUXBURY AND CAROL DUXBURY, AS PLAINTIFFS,
IN NEW YORK STATE COURT PERSONAL INJURY ACTION;
AND (II) DIRECTING CURTIS J. DUXBURY AND CAROL DUXBURY TO
<u>DISMISS ACTION TO RECOVER UPON DISCHARGED AND EXPUNGED CLAIM</u>**

("REPLY IN SUPPORT OF DUXBURY INJUNCTION MOTION")

DPH Holdings Corp. and certain of its affiliated reorganized debtors in the above-captioned cases (collectively, the "Reorganized Debtors"), formerly known as Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, former debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), submit this Reply in Support of their Duxbury Injunction Motion (the "Motion") seeking an order (i) enforcing against the plaintiffs in the New York State Court Action[1] this Court's June 16, 2009

---

[1] Capitalized but undefined terms used in this Reply have the meanings ascribed to them in the Motion.

1

Modification Procedures Order, the Modified Plan, and the Court's July 30, 2009 Plan Modification Order Injunction ("Plan Injunction Order") and (ii) directing the plaintiffs to dismiss the action against the Reorganized Debtors to recover upon claims that have been barred, discharged and expunged in these cases.

## INTRODUCTION

1.  In their Response to the Duxbury Injunction Motion (Docket No. 22183), the Duxburys assert three arguments as to why the Duxbury Injunction Motion should be denied. One, DPH should be deemed to have waived its right to seek a dismissal of the New York State Court Action for failure to argue discharge. Two, Mr. Duxbury never received the Administrative Expense Claim Bar Date Notice. Three, even if the Duxburys should be deemed to have received the Administrative Expense Claim Bar Date Notice, they should be allowed to file a late administrative expense claim on the grounds that it would not be prejudicial to the Reorganized Debtors because they are being defended by an insurance carrier.

2.  Each of the Duxburys' arguments in opposition to the Reorganized Debtors' Motion fails. Accordingly, the Reorganized Debtors' Motion should be granted and the Duxburys should be enjoined from pursuing their New York State Court Action and ordered to dismiss it with prejudice.

## ARGUMENT

**I.    *Alleged Non-Receipt of Notice Is Insufficient To Rebut The Presumption Of Mailing With Proof Of Service*.**

3.  The Duxburys oppose the Motion on the grounds that Curtis J. Duxbury denies receipt of the Administrative Expense Claim Bar Date Notice. In his affidavit, Mr. Duxbury asserts that he did not receive any documentation in June of 2009 regarding Delphi's bankruptcy

or the Administrative Expense Claim Bar Date of July 15, 2009. *Response to Motion, Affidavit of Curtis J. Duxbury, ¶ 7 (Docket No. 22183).*

4. As stated in the Motion, on or before June 20, 2009, Mr. Duxbury was served with due and proper notice of the Administrative Expense Claim Bar Date. *Exhibit B to Motion, Affidavit of Service (Docket No. 17267).*[2] In addition, pursuant to the Modification Procedures Order, notice of the Administrative Expense Claim Bar Date was also published in the Detroit Free Press, the New York Times (worldwide), the Wall Street Journal (national, European, and Asian editions) and USA Today (worldwide). Affidavits of Publication are part of the record in this case. (*Docket Nos. 17407-17415*).

5. The federal courts in the state of New York have held "quite uniformly" that an affidavit of non-receipt is insufficient to rebut the presumption of receipt created by proof of mailing. *See In re: AMR Corp.*, 422 B.R. 660, 663-64 (Bankr. S.D.N.Y. 2013); *See also In re: RH Macy Corp.*, 161 B.R. 355, 360 (Bankr. S.D.N.Y. 1993); *In re: Horton*, 149 B.R. 4958 (Bankr. S.D.N.Y. 1992); and *Cable Vision Systems Corp. v. Malandra*, 206 B.R. 667, 673 (Bankr. S.D.N.Y. 1997). Accordingly, the Duxburys' first argument fails.

## II. *DPH-DAS Did Not Waive Its Right To Seek the Requested Relief.*

6. DPH-DAS has not waived its right to seek to enjoin the Duxburys' New York State Court Action. While the Duxburys claim that "Delphi . . . never represented . . . that the Duxburys were . . . enjoined from pursuing litigation against" it, this statement is simply untrue.[3] DPH-DAS informed the Duxburys, when it presented its affirmative defenses in December 2011,

---

[2] Mr. Duxbury received notice of the Administrative Expense Claim Bar Date at the very same address he provided in his summons and complaint in the New York State Court Action.

[3] See Declaration of Duane D. Schoonmaker, Counsel for the Duxburys, *Response to Motion*, ¶ 10 *(Docket No. 22183).* Literally, this statement is true, since neither old Delphi nor new Delphi provided the Duxburys with the affirmative defense. But Delphi had no obligation to do so given that neither old nor new Delphi is a party to this action.

3

that the Duxburys had failed to file a claim in the bankruptcy proceeding and that their claim was discharged.

7. Specifically, in DPH-DAS's Twelfth Affirmative Defense, DPH-DAS states that "[p]laintiffs failed to file a claim in the answering defendant's bankruptcy proceeding and their claims against this defendant were discharged in bankruptcy." *Motion, Exhibit G (Docket No. 22167)*. The very purpose and effect of pleading this affirmative defense in the New York State Court Action was to ensure that the defense was preserved and not waived. *See* C.P.L.R. § 3018(b) ("Affirmative defenses. A party shall plead all matters which if not pleaded would be likely to take the adverse party by surprise or would raise issues of fact not appearing on the face of a prior pleading such as . . . discharge in bankruptcy, . . . release, res judicata, . . . or statute of limitation."). DPH-DAS's pleading was both proper and timely under New York law, and it therefore necessarily overcomes the Duxburys' arguments of surprise and waiver. *See id.*; *see also Youssef v. Triborough Bridge & Tunnel Auth.*, 24 A.D.3d 661, 661-62; 808 N.Y.S.2d 362 (2005) ("Here, the record fails to demonstrate any factual basis for the plaintiffs' claim of prejudice since the pleaded defense sufficiently provided them with notice of the matters intended to be proved . . . .").

8. Plaintiff relies solely on *In re Cobb,* 88 B.R. 119, 120-21 (Bankr. W.D. Tex. 1988) and *In re Bona,* 110 B.R. 1012, 1023 (Bankr. S.D.N.Y. 1990), *aff'd*, 124 B.R. 11 (S.D.N.Y. 1991), in support of its assertion that DPH has effectively waived its bar date injunction defense. The cases have no bearing on this matter whatsoever. In *In re Bona,* the issue before the court was "how and under what circumstances may a debtor imprisoned under a civil writ for the nonpayment of a debt secure his release after the filing of a Chapter 7 petition." *In re Bona*, 110 B.R. at 1013. *In re Cobb* is equally irrelevant. In that case, the court was faced

4

with the question of lifting the automatic stay on a state court action where counsel in the state court action never received any notice that the case was on the dismissal docket. *Id*. at *120.

### III.    No Excusable Neglect Exists to Allow a Late Claim.

9.    The Federal Rules of Bankruptcy Procedure provide that

> when an act is required or allowed to be done at or within a specified period . . . by order of court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr. P. 9006(b)(1). Rule 9006 governs the admission of proofs of claim filed after a court-ordered bar date. *In re Enron Corp.*, 419 F.3d 115, 121 (6th Cir. 2005) (citing *Pioneer Investment Services Co. v. Brunswick Associates L.P.*, 507 U.S. 380 (1993). *See also Pioneer*, 507 U.S. at 382 (noting that Rule 9006(b)(1) "empowers a bankruptcy court to permit a late filing if the movant's failure to comply with an earlier deadline was the result of excusable neglect."). The Second Circuit has "taken a hard line" in applying the four-part excusable neglect test from *Pioneer*. The elements of that test are (i) the length of the delay; (ii) the danger of prejudice; (iii) the reason for the delay; and (iv) movant's good faith. *In re Enron*, 419 F. 3d at 122. The Second Circuit, along with other circuits, focuses on the third factor: "'the reason for the delay' . . . and the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule." *Id*. at 122-123. The four *Pioneer* factors therefore do not carry equal weight, and the excuse given for the late filing has the greatest import. *Id.* at 123.

10.    The Duxburys have not made a motion to allow for a late filing, and they have provided no reason in response to the Motion why excusable neglect exists. The reason is that it does not. As stated above, the Duxburys have been on notice of the July 15, 2009 bar date since Mr. Duxbury's receipt of the Bar Date Notice. In addition, the Duxburys received additional

5

notice of the need to file a claim in the Bankruptcy Court when they received DPH-DAS's affirmative defenses on December 21, 2011.  Four years have passed since the Duxburys first received notice to file a claim.  An additional 22 months have passed since they received notice that the claim bar date had passed.  Finally, and most importantly, is that the Reorganized Debtors are approximately two months away from closing the last remaining debtor cases.  Based on the foregoing, there simply is no conceivable excuse to allow the filing of a late claim, and Second Circuit jurisprudence underscores this reality.

11. Further, the Duxburys' (untrue) assertion that DPH-DAS is being defended by an insurance carrier offers no basis for allowing them to file a late claim.  *See Response to Motion, Schoonmaker Declaration, ¶¶ 18-19 (Docket No. 22183) (arguing that the supposed presence of an insurance carrier would negate or minimize the prejudice to DPH-DAS from a late filed administrative claim).*  The origin of this allegation is not known but the fact of the matter is that DPH-DAS is not being defended by its insurer.  As represented by the Debtors in their Motion for Order Under 11 U.S.C. § 362 and Fed. R. Bankr. P. 7016 and 9019 Approving Procedures for Modifying the Automatic Stay to Allow for (i) Liquidating and Settling and/or (ii) Mediating Certain Prepetition Litigation Claims (Docket No. 4038), under the Debtors' various liability policies, the Debtors had deductible limits, depending on, among other things, the nature of the claim, ranging from $1 million up to $5 million.  These deductible limits have continued post-emergence and the deductible limit applicable to the Duxbury matter is $5 million per occurrence.  The Duxburys themselves have stated that their alleged damages do not exceed $1.1 million.  *See **Exhibit 1**, Response to Demand Pursuant to C.P.L.R. § 3017(c).*

12. Therefore, as to any late administrative expense claim the Duxburys would file, the Reorganized Debtors would be 100% exposed.  Consequently, the allowance of a late

administrative expense claim would be highly prejudicial to the Reorganized Debtors, and the Duxbury's request, were they to formally make one, should be denied.

13. To the extent that, pursuant to section 524(e) of the Bankruptcy Code, the plan injunction would not bar a suit by the Duxburys against the Reorganized Debtors' insurer under section 3420(a)(1) of the New York Insurance Law ("[t]he insolvency or bankruptcy of the person insured, or the insolvency of the insured's estate, shall not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of and *within the coverage of such policy* or contract"), the Reorganized Debtors also would object to the continuation of the state court action against DPH-DAS as a nominal party to fix liability against the insurer for the same reasons as discussed above. Because of the $5 million deductible limit, the Reorganized Debtors could not escape the burden of defense costs and, as such, the discharge injunction would be rendered meaningless. *In re Jason Pharmceuticals, Inc.* 224 B.R. 315, 323 (Bankr. Md. 1998) ("This exception to the permanent injunction under *Section 524 (a)* is necessarily conditioned upon the debtor's being exempted from any exposure to personal expense or liability, resulting from the creditor's action, which would imperil its 'fresh start.'"). *See also, Shakir et. al., v. U.S. Leasing International, Inc, et. al*., 14 Misc. 3d 1208(A); 831 N.Y.S.2d 362 (2006).[4]

---

[4] Reference to the New York statute does not suggest the lack of defenses to any such action, as several defenses would clearly exist in favor of the insurance carrier.

7

## **CONCLUSION**

14.     For the reasons set forth above and in the Motion, the Duxburys' New York State Court Action is plainly barred.  The Reorganized Debtors therefore respectfully request that this Court grant the Motion and deny any request by the Duxburys to file a late administrative expense claim.

Dated:   Detroit, Michigan
         October 17, 2013

                                        BUTZEL LONG, a professional corporation

                                        By:   /s/ David J. DeVine
                                              Thomas B. Radom
                                              Cynthia J. Haffey
                                              David J. DeVine
                                        150 West Jefferson, Suite 100
                                        Detroit, Michigan  48226
                                        (313) 225-7000
                                        *Attorneys for Reorganized Debtors*