**Hearing Date: October 21, 2013 (10:00 a.m.)**

BUTZEL LONG, a professional corporation
150 West Jefferson, Suite 100
Detroit, MI 48226
(313) 225-7000
Thomas B. Radom
Bruce L. Sendek
David J. DeVine

*Attorneys for Reorganized Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| DPH HOLDINGS CORP., *et al.*, | Case No. 05-44481 (RDD) |
| | Jointly Administered |
| Reorganized Debtors. | |

# REORGANIZED DEBTORS' MEMORANDUM
# IN FURTHER SUPPORT OF SUMPTER INJUNCTION MOTION II

## PROCEDURAL HISTORY

1. On February 4, 2009, the Debtors filed a motion (the "Salaried OPEB Termination Motion") for an order pursuant to 11 U.S.C. §§ 105, 363(b)(1), and 1108 to confirm their authority (or alternatively, authorization, but not direction) to terminate the benefits provided under the Delphi Salaried Health Care Program, the Delphi Salaried Life and Disability Benefits Program and the Delphi Salaried Health Care Program (hereinafter collectively, the "Benefit Plans"). *Salaried OPEB Termination Motion, ¶ 45* (Docket No. 14705).

2. The Debtors relied on the following reservation of rights language contained in each of the Benefit Plans: "The Corporation reserves the right to amend, modify, suspend or terminate the program in whole or in part, at any time, by action of its Board of Directors or

1

other committee expressly authorized by the Board to take such action." *See e.g.*, *Exhibit 3 to Sumpter Injunction Motion II*, *Delphi Salaried Life and Disability Benefits Program, Article III, Section 3.05(b)(1)* (Docket No. 22138). The Debtors also asserted that Section 1114 of the Bankruptcy Code was inapplicable to the termination of the Benefit Plans as the plans were not vested. *See Salaried OPEB Termination Motion, ¶¶ 46-47* (Docket No. 14705).

3. Approximately 1,633 objections were filed in opposition to the Salaried OPEB Termination Motion. *See Revised Proposed Fortieth Omnibus Hearing Agenda, Exhibits A – C.* (Docket No. 16326).

4. As explained in greater detail below, Mr. Sumpter was one of the objecting parties. (Docket No. 14898).

5. On February 24, 2009, this Court held a hearing on the Debtors' *Salaried OPEB Termination Motion*. The relevant excerpts from the hearing are discussed below in Section I.

6. On February 25, 2009, this Court entered its Provisional Salaried OPEB Termination Order in which it ordered in relevant part that "[b]ased on the record at the Hearing, the Debtors' Salaried OPEB benefits have not vested and the Debtors have reserved the right to modify or terminate Salaried OPEB benefits." *Provisional Salaried OPEB Termination Order, ¶ 5* (Docket No. 16380). The Court also exercised its discretionary authority under section 1114 of the Bankruptcy Code to appoint a committee of retired employees (the "1114 Committee"). *Id.* at ¶¶8-9. The Court retained jurisdiction to hear and determine all matters arising from the implementation of the provisional order. *Id.* at ¶13.

7. On March 6, 2009, the 1114 Committee filed its Supplement And Report In Support Of Motions To Appoint An Official Retiree Committee Pursuant To Section 1114 Of

2

The Bankruptcy Code And In Opposition To Debtors' Motion To Terminate Salaried Retiree Benefits (the "1114 Committee Report"). (Docket Nos. 16430 and 16431).

8. On March 10, 2009, this Court entered a Modified Bench Ruling On Debtors' Salaried OPEB Termination Motion (the "Modified Bench Ruling") in which the Court summarized the motion as follows:

> "The debtors take the position that notwithstanding that the subject matter of these plans involves reimbursing or providing for the reimbursement of 'payments for retired employees and their spouses and dependants, for medical, surgical or hospital care benefits, or benefits in the event of sickness, accident, ___disability___ or death,' that their request need not, and should not be governed by Section 1114 of the Bankruptcy Code." *Modified Bench Ruling, pp. 1, 17-24 (emphasis added)* (Docket No. 16443).

9. On March 11, 2009, this Court held a second hearing on the Debtors' *Salaried OPEB Termination Motion*. The relevant excerpts from the hearing are set forth in Section I below. That same day, this Court entered its Final OPEB Termination Order authorizing, but not requiring, the termination of Salaried OPEB Benefits. (Docket No. 16448).

10. On June 16, 2009, the Debtors filed the First Amended Joint Plan of Reorganization of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (As Modified) (the "Modified Plan").

11. On July 30, 2009, this Court entered its Order Approving Modifications Under 11 U.S.C. § 1127(b) to (I) First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession, as Modified and (II) Confirmation Order (the "Plan Modification Order") (Docket No. 18707), which confirmed the Debtors' Modified Plan. On October 6, 2009, the effective date of the Modified Plan occurred and the Modified Plan was substantially consummated ("Effective Date"). On that date, the Debtors emerged from chapter 11 as the Reorganized Debtors.

3

12. Upon the Effective Date of the Modified Plan and Modification Approval Order, a permanent injunction against creditors and other parties in interest was imposed, prohibiting the commencement or continuation of any action to recover any claim against the Debtors that arose on or prior to October 6, 2009.

13. In March 2012, the Reorganized Debtors terminated benefits provided under the Benefit Plans. Among the terminated benefits were disability benefits.

14. In June 2013, Mr. Sumpter filed an action in the United States District Court for the Southern Division of Indiana (the "Indiana Action"), claiming that this Court's March 11, 2009 Final OPEB Order provided that disability benefits were vested benefits and required the Reorganized Debtors to continue to pay Mr. Sumpter disability benefits until he turns 65.

15. Because Mr. Sumpter's Indiana Action is based on the erroneous premise that this Court found that disability benefits were vested and that the order required the Reorganized Debtors to continue to pay him disability benefits until he turns 65, the Reorganized Debtors filed the Sumpter Injunction Motion II, so as to enforce the Court's orders and enjoin the Indiana Action.

16. The Reorganized Debtors assert that the Final OPEB Order (i) does not provide that disability benefits were vested; (ii) does not require the Reorganized Debtors to continue to pay Mr. Sumpter disability benefits until he turns 65; and (iii) provides that disability benefits were not vested.

I.  *Disability Benefits Were Part of The Salaried OPEB Termination Motion.*

17. During the September 26, 2013 hearing on the Reorganized Debtors' motion to enjoin Mr. Sumpter's Indiana Action, this Court allowed additional evidence that disability benefits were among the benefits addressed in the Salaried OPEB Termination Motion.

4

18. The issue of whether salaried retiree benefits provided under the Benefits Plans are modifiable or terminable at-will was briefed, argued and decided by the Court. *See Hearing Transcripts dated February 24, 2009 and March 11, 2009*; *Modified Bench Ruling on Debtors' Salaried OPEB Termination Motion* (Docket No. 16443); *and Final OPEB Termination Order* (Docket No. 16448). The Court held that all of the benefits under the Benefit Plans were modifiable and terminable at-will and, therefore, not vested, citing in support, *Sprague v. General Motors Corp.,* 133 F.3d 388 (6th Cir. 1998).

19. This Court held hearings on February 24, 2009 and March 11, 2009 on the Debtors' Salaried OPEB Termination Motion. During those hearings (i) positions advanced by the parties demonstrate that disability benefits were included in the benefits that the Reorganized Debtors sought to have authority to terminate, (ii) objectors, such as the 1114 Committee and Mr. Sumpter, filed objections which include statements and/or attach documents that reveal that the termination of disability benefits was before this Court, and (iii) this Court made findings and rulings that indicate that it had before it the issue of whether disability benefits were terminable at will and were contemplated by the Salaried OPEB Termination Motion.

20. The following citations confirm that the termination of disability benefits was contemplated in the Salaried OPEB Termination Motion and that the objectors were aware of this fact:

    a. During the OPEB Termination Motion hearing on February 24, 2009, Mr. Gloster, counsel for the objectors and the later formed 1114 Committee argued that the Debtors had the burden of proof to establish that "all of these [Benefit Plan] benefits are amendable" and complained that the Reorganized Debtors only put on evidence "about four of them." *February 24, 2009 Hearing Transcript, p. 78:3-14.* Mr. Gloster expressly identified retirees with disability

5

benefits as a category that he believed should warrant additional attention. *Id*. When this Court inquired whether there were any facts to support that "people who retired on full disability" had "some separate promise", Mr. Gloster conceded there was not. *Id*. at 78:4-19.

        b.      During the February 24th hearing, Mr. Butler, counsel for the Debtors, advised this Court that all of the Debtors' benefit "***plans***" contain the same reservation of rights language, allowing the Debtors to terminate or modify any of the benefits provided under those plans. And that "no document that has been put in by the objectors and nothing in the record [ ] suggest[s]" otherwise. *February 24, 2009 Hearing Transcript, p. 113:6-16 (emphasis added)*. Mr. Butler clarified that the OPEB Termination Motion concerned the benefit ***plans*** and was not limited to specific benefits under the plans. As Mr. Butler stated: "There are not seventeen other plans that we haven't put before the Court. These are the plans. These are the plans that the groups participate in. And since Delphi has had them, these plans have consistently and routinely had these reservation of rights in there." *Id*. at 113:17-21 (emphasis added). It must be noted that, during this colloquy with the Court, a question regarding someone on "disability" was used as an example, thus further demonstrating that the parties understood that disability benefits were one of the benefits covered under the plans at issue. *Id*. at 113:13-21.

        c.      During the February 24th hearing, Delphi's Executive Director – Benefits & Policy, Steve Gebbia, testified that "[i]n the [Delphi] summary plan description there is a section that would go to medical or life insurance coverage for employees who retire, for example, under a total and permanent disability retirement." *Id*. at pp. 41-42.

        d.      The fact that the 1114 Committee's charge included disability benefits is evidenced by this Court statement, made toward the end of the February 24th hearing, wherein this Court proposed issuing an order that day granting the motion, "subject to the Court's review

of the results of a committee appointed for the sole purpose of determining whether any group, such as, for example, those retired on ***disability*** would have vested rights." *Id*. at 123;8-17 (emphasis added).

      e.    Following the formation of the 1114 Committee, this Court held a second hearing on the Debtors' Salaried OPEB Termination Motion on March 11, 2009. The 1114 Committee filed a report and a series of exhibits. (Docket No. 16380); *March 11, 2009 Hearing Transcript, p. 5:6-15*.

      f.    In providing an overview of the "evidence", or lack thereof, provided by the 1114 Committee in its attempt to establish that plan benefits were vested, Mr. Butler again referenced disabled retirees:

> "[t]here's also, I think important to say, no evidence submitted by the retirees committee that would support the suggestion made in the prior record that somehow people who were ***disabled*** were treated differently or specially or there were promises made or any other allegations made on the record about a ***disabled class***. That was one of the classes that was - - or groups that was identified at the prior hearing. And the reason nothing was submitted by the retirees' committee is because, as Delphi indicated at the prior hearing, there is ***no different plan for disabled parties***. They participate in the plans that have the same reservations that everybody else does." *March 11, 2009 Hearing Transcript, p. 23:7-18 (emphasis added).*

This reference plainly shows that the question of terminating all of the benefits of disabled retirees was before this Court on the Salaried OPEB Termination Motion.

      g.    At the end of the March 11th hearing, this Court made several rulings. Critical to this motion, and relying on the Sixth Circuit's *Sprague* decision, the Court found that "***all of Delphi's plans*** and all of GM's plans, at least since 1985, ***contained a clear and unambiguous reservation of the right to terminate***, or plan documents contain such reservation . . ." and "that debtors have met their burden, which as I stated in my modified ruling

7

is substantial, to show that the salaried OPEB benefits for these retirees are also modifiable or terminable at will." *March 11, 2009 Hearing Transcript, pp. 62 and 64 (emphasis added).* Notably, the Court went on to state that "in light of" the Debtors having met their burden, and in "the absence of any other evidence" that any particular group, such as "people on disability . . ." should be excluded from the order, the Debtors' motion was granted. *Id. at p. 64.*

        h.      The 1114 Committee argued that disability benefits were vested benefits in their brief in opposition to the Debtor's motion and included disability benefits provisions as exhibits:

        i.      On page 23 of the 1114 Committee's brief in opposition, the committee cited the following language from the 1980 SPD in support of their objection: "Monthly total and permanent ***disability benefits*** payable for life under the Retirement Program." *See Supplement And Report In Support of Motions To Appoint An Official Retiree Committee Pursuant To Section 114 Of The Bankruptcy Code And In Opposition To Debtors' Motion To Terminate Salaried Retiree Benefits, p. 23* (Docket No. 16430);

        ii.      On page 26, the 11 Committee argued that the annual Personal Benefit Summary, "which described each employees' [sic] . . . Disability Income" included "statements representing that as retirees they would each have vested benefits." *Id.* at 26.

        iii.      Exhibits A, B and C to the 1114 Committee's brief in opposition included the disability benefits provisions, with no reference or mention of their exception.

21.    As stated above, Mr. Sumpter personally filed an objection to the Salaried OPEB Termination Motion, within which he objected to the termination of his disability benefits. (Docket No. 14898).

22.     In his objection, Sumpter expressly brought before this Court an "object[ion] to Delphi's efforts to terminate its obligations as it pertain[ed] to **_any_** part of [his] retirement benefits" and asserted that Delphi had "no specific right to change … **disability** benefits". *Id.* at pp. 5-6 (emphasis added). Sumpter's Objection also attached a page from the Delphi Summary Plan Description regarding "Life and Disability Benefit Coverages." *Id.* at Document 2.

## II.     *The Final Salaried OPEB Termination Order Does Not Provide That SEDB Benefits Were Vested And Does Not Require The Payment Of SEDB Benefits Through Age 65.*

23.     In his Complaint[1], Mr. Sumpter incorrectly claims that this Court's Final Salaried OPEB Termination Order ("Final OPEB Order") (Docket No. 16448) orders that disability benefits provided under the Delphi Salaried Life and Disability Benefits Program (the "Benefit Plan") were vested benefits. *Complaint, ¶ 11*. Mr. Sumpter further erroneously alleges that the Final OPEB Order required DPH to pay SEDB Benefits[2] until he turned 65. *Complaint, ¶ 24(a)*. As shown below, three of the six counts in Sumpter's Complaint expressly reference this Court's Final OPEB Order as the basis for his erroneous claims:

a.     In his First Cause of Action, "For Termination of Vested ERISA Disability Benefits", Sumpter expressly states that the relief sought is for DPH's "violation of Bankruptcy Court (SDNY) OPEB Order" and resulting failure to pay SEDB Benefits. *Complaint, ¶¶ 24 and 24(a)*.

b.     In the Second Cause of Action, "Civil Conspiracy To Terminate Plaintiff's [SEDB Benefits] In Violation of Bankruptcy Court Order, Mail Fraud And Extortion", Sumpter expressly cites to this Court's Final OPEB Order, seeking "relief for DPH's willful violation of

---

[1] Complaint means the complaint filed in the United States District Court, Southern District of Indiana, *Sumpter v. DPH Holding Corp., et. al.*, 1:13-cv-1024 WTL-TAB (June 26, 2013).
[2] "SEDB Benefits" are defined as supplemental extended disability benefits provided under the Benefit Plan.

the Honorable Robert D. Drain's [Final OPEB Order] regarding payment of Plaintiff's SEDB benefits . . . and fail[ing] to disclose the existence of the court order requiring payment of . . . [SEDB Benefits]." *Complaint, ¶¶ 29 and 29(a))*.

        c.     In the Sixth Cause of Action, "Civil Conspiracy To Illegally Terminate [SEDB Benefits] In Violation Of ADA And Conspiracy To Interfere With Plaintiff's Civil Rights", Mr. Sumpter falsely asserts, contrary to this Court's prior findings, that "[t]he disability benefits . . . were vested . . . ." *Complaint, ¶ 55*.

24.    Mr. Sumpter's Fourth and Fifth Counts are premised on his assertion that the disability benefits provided under the Benefit Plan were vested.

25.    Mr. Sumpter relies on Paragraph 4 of the Final OPEB Order for his assertions that the SEDB Benefits were vested and that this Court ordered that the benefits be paid until he turned 65. Paragraph 4 of the Final OPEB Order provides as follows:

> The Debtors shall continue to provide benefits for claims incurred by each Eligible Salaried Employee through the cessation date of such retiree's participation in the applicable welfare plan, <u>provided</u> that such retiree has timely paid all requisite contributions for the applicable plan, and <u>provided</u> <u>further</u> that such retirees shall not be required to file proofs of claim in this Court to implement the terms of this decretal paragraph. *Final OPEB Order, ¶ 4.*

26.    Neither Paragraph 4 nor any other provision of the Final OPEB Order provides that SEDB Benefits were vested. Likewise, it plainly does not require DPH to pay Mr. Sumpter SEDB Benefits until age 65.

27.    Moreover, this Court expressly found that the benefits contained in the Benefit Plan, which include SEDB Benefits, were ***not*** vested benefits and therefore could be modified or terminated at will. *Modified Bench Ruling On Debtors' Salaried OPEB Termination Motion* (Docket No. 16443). This Court found as follows:

"the benefit ***plan*** documents, including the summary plan descriptions, or SPDs, and the absence of any evidence in this record that would indicate that the debtors otherwise promised, or the debtors' predecessors otherwise promised, to the beneficiaries of those ***plans*** who are affected by this motion, that notwithstanding the language in the Delphi plan documents, those plans are not modifiable at will. The only evidence that has been submitted to counter the language in the Delphi plan documents (including the SPDs) pertains to the plans of GM Corporation, the debtors' predecessor. Those documents, however, all predate the decision of the Sixth Circuit in *Sprague v. General motors Corp.*, 133 F.3d 388 (6th Cir. 1988), which found GM's plan to be modifiable. ***Given that record, it appears to me that the debtors have very clearly made the showing that they have the right to modify the plans at will***." *Id.* at p. 16-17 (emphasis added).

28. There is no plausible interpretation that can be given to paragraph 4 to conclude that it conveyed vested rights to disability benefits. Nothing whatsoever in the record supports the interpretation that Mr. Sumpter advances. To the contrary, the record is replete with evidence and findings that point in one direction only: the Benefit Plan under which Mr. Sumpter received disability benefits was, like the other plans addressed in the OPEB Termination Motion, terminable at will. The content of the Final OPEB Order is the antithesis of Mr. Sumpter's contention.

29. The reason paragraph 4 is in the OPEB Order is straightforward and immaterial to the claim Mr. Sumpter asserts in the Indiana action. The explanation is found in the March 11, 2009 hearing transcript at pages 52 through 54. There, Mr. Butler, counsel for the Debtors, explains the origin of the paragraph; it is the product of a discussion with counsel for the 1114 Committee. The point of paragraph 4 was to create a mechanism that would obligate the Debtors to pay claims through coverage dates (*i.e.*, the time prior to termination of the plan) without imposing on the retirees an obligation to file a proof of claim. Counsel for the 1114 Committee made no objection to Mr. Butler's recital and nothing whatsoever was said or intimated that

11

paragraph 4 was intended to create vested rights where none previously existed in the benefit plan or otherwise.

### III.   *This Court's Jurisdiction Over This Matter*

30.   Generally, the Bankruptcy Court has exclusive jurisdiction over "core" proceedings. *In re Birting Fisheries, Inc.,* 300 B.R. 489 (9th Cir. 2003) (citing *In re Gruntz*, 202 F. 3d 1074 (9th Cir. 2000)). "[A] bankruptcy court's original core jurisdiction 'continues' in order for it to enforce its orders, even after the case has been closed." *Id.* at 499 (citing *Peacock v. Thomas*, 516 U.S. 349, 356 (1996)). "A federal court always has subject matter jurisdiction "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and to *effectuate its decrees*." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379-80 (1994) (emphasis added). Here, the Debtors' Salaried OPEB Termination Motion was a core proceeding during which this Court made several findings upon which the Final OPEB Order is based.

31.   Additionally, "where bankruptcy court jurisdiction has been expressly retained, it will be construed as exclusive, so as not to render the provision a nullity." *In re Birting Fisheries, Inc.*, 300 B.R. at 499 (citing *United States v. Alpine Land & Reservoir Co.,* 174 F.3d 1007, 1013 (9th Cir. 1999). Pursuant to Section 13 of the Modified Plan, entitled Retention of Jurisdiction, ***this Court retained*** "***exclusive jurisdiction*** of all matters arising out of, and related to, the Chapter 11 Cases and this Plan, ***including . . .any dispute*** relating to any liability arising out of . . . ***the termination of any*** employee or ***retiree benefit program***, ***regardless of whether such termination occurred prior to or after the Effective Date***." Modified Plan, § 13(p) (emphasis added).

32. This Court has jurisdiction to order that Mr. Sumpter is collaterally estopped from pursuing the claims against the Reorganized Debtors in the Indiana Action. *In re Texaco, Inc.*, 505 Fed. Appx. 77; 2012 U.S. App. LEXIS 25853 (2d Cir. 2012) is particularly instructive. In that case, appellant Kling Realty Company and others ("Kling") appealed a judgment of the United States District Court affirming this Court's order which (1) found that all claims asserted by Kling against Texaco in Louisiana state court were discharged by the Bankruptcy Court's confirmation order; (2) directed Kling to dismiss all such claims; and (3) enjoined Kling from pursuing those claims. In its appeal, Kling contended that the Bankruptcy Court lacked subject-matter jurisdiction to dismiss claims arising after the plan confirmation date. *Texaco*, 505 Fed. Appx. at 78-79. The Second Circuit affirmed the Bankruptcy Court's findings that Kling's Louisiana state court tort claims arose before the Petition Date and were discharged by the confirmation order. The Second Circuit found that Kling had forfeited the right to assert that the subject pre-and post-confirmation clean-up operations were separate and distinct because Kling had framed Texaco's tortious activity as a failure to restore the property to its original condition. *Texaco*, 505 Fed. Appx. at 79. Further, even if Kling hadn't forfeited the argument, the court concluded that the property was already in the shape that it was in pre-confirmation, so it was irrelevant when the clean up work occurred.

33. The reasoning in *Texaco* is applicable here. First, like in *Texaco*, because Mr. Sumpter has based his entire Indiana Action on paragraph 4 of this Court's Final OPEB Order, which was a pre-confirmation order, Sumpter has forfeited any right to now assert that his Indiana Action is based on post-confirmation action. Second, like in *Texaco*, the underlying subject matter has not changed pre-confirmation to post-confirmation. In *Texaco*, the property was already in the shape that it was in pre-confirmation. Here, the benefit plan that contains the

13

disability benefits is the exact same benefit plan that was before this Court on the Debtors' Salaried OPEB Termination Motion. In other words, the benefit plan "was already in the shape that it was in pre-confirmation", just like the property in Texaco. This Court has already found, as stated above, that the benefit plan language gave the Debtors the right to modify the plans at will. *See Modified Bench Ruling, pp. 16-17.*

34. Accordingly, like in *Texaco*, this Court has jurisdiction to dismiss all of Sumpter's Indiana Action claims and enjoin him from pursuing those claims. As the Second Circuit stated in Texaco, "[a] bankruptcy court retains post-confirmation jurisdiction in a chapter 11 proceeding . . . to the extent provided in the plan of reorganization." Here, as cited above, the Modified Plan provided that this Court retained jurisdiction, *inter alia*, to resolve any disputes arising out of the termination of any retiree benefit plans, even if the termination occurred after the plan effective date.

35. Further, this Court's ability to enjoin Mr. Sumpter from proceeding on his claims in Indiana based on the doctrine of issue preclusion, more specifically collateral estoppel, is supported by the First Circuit opinion in *Monarch Life Insurance Company v. Ropes & Gray*, 65 F.3d 973 (1st Cir. 1995). There, the law firm of Ropes & Gray sought to enjoin a state court proceeding brought by Monarch Life Insurance Co. alleging legal malpractice. Ultimately the First Circuit agreed that the action could not proceed because issues decided in the bankruptcy proceeding operated to collaterally estop Monarch.

36. *Monarch* therefore provides authority for the proposition that this Court has jurisdiction to enjoin a post-confirmation action, such as the action brought by Mr. Sumpter. The issue that is at the core of Mr. Sumpter's Indiana action was decided when this Court entered its

14

Modified Bench Ruling and Final OPEB Order: the Benefit Plan under which disability benefits were paid was terminable at will.

37.  To be collaterally stopped from relitigating an issue that was adjudicated in a prior action, the following must be present: (1) the issue sought to be precluded must be the same as the one involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment." *In re Contempri Homes, Inc.*, 247 B.R. 135, 138 (M.D. Pa. 2000).

38.  All of the elements are satisfied here: (1) the issue of whether disability benefits were vested was involved in the prior action. This Court found that the benefit plan under which disability benefits were paid was terminable at will; (2) that issue was actually litigated; (3) this Court entered a valid and final judgment; and (4) the determination that the benefit plan was terminable at will was essential to the prior judgment.

## CONCLUSION

39.  For the reasons advanced in the Reorganized Debtors' principal motion and brief and this supplemental memorandum, the Reorganized Debtors ask this Court to grant the relief requested in their motion.

15

Dated: Detroit, Michigan
   October 17, 2013

            BUTZEL LONG, a professional corporation

            By: /s/ David J. DeVine
               Thomas B. Radom
               Bruce L. Sendek
               David J. DeVine
            150 West Jefferson, Suite 100
            Detroit, Michigan 48226
            (313) 225-7000
            *Attorneys for Reorganized Debtors*