James B. Sumpter, Pro se
21169 Westbay Circle
Noblesville, IN 46062
Telephone: (317) 877-0736
jsump@ieee.org


Salaried Retiree of Debtors


UNITED STATES BANKRUPTCY
COURT SOUTHERN DISTRICT OF
NEW YORK

------------------------------.x Chapter 11 Case No. 05-44481 (RDD)

In re:

DELPHI CORPORATION, et. al.,

                                 : ( J o i n t l y  Administered) :

    Debtors.                             : :

                                     : :

------------------------------x


# SUPPLEMENTAL RESPONSE TO DPHH's INJUNCTION MOTION
## - Docket # 22139
## (SUMPTER INJUNCTION MOTION II)

## Table Of Contents

Table Of Contents ........................................................................ 2

Definitions .................................................................................. 4

Regarding Ms. Haffey's reference to the Sumpter ..................................... 6

Regarding Delphi OPEB Termination Motion .......................................... 7

Disability Benefits under claim Are Vested And ..................................... 11

Vesting of Benefits under Claim is Granted Through The SPD .......... 12

Vesting Granted Through Contract Law ................................................ 14

Vested Benefits Cannot Be Retroactively Terminated .......................... 14

      Delphi Prior Actions Demonstrate That It Operated With The

      Knowledge That Disability Benefits Are Vested And That It

Purposefully Avoided Terminating Disability Benefits ......................... 15

Regarding Supplemental ............................................................... 19

DPHH Has No Authority To Change Terms .......................................... 20

Regarding the diabetes question ...................................................... 21

Conclusion ................................................................................ 24

Appendix A:    SPD Sections on Disability Benefits .............................. 27

# Table Of Authorities

## CASES

Bartlett v. Martin Marietta ................................................................................. 14

Blackshear v. Reliance Standard.......................................................... 14, 15, 20

Chiles v. Ceridian Corp.......................................................................................... 11

Confer v. Custom Eng'g ........................................................................................ 14

Curtiss-Wright Corp. v. Schoonejong.............................................................. 20

Edward W. Sparrow Hospital Ass'n, Inc. v. Industrial Welding ..................... 15

Feifer v. Prudential Ins.......................................................................................... 14

Filipowicz v. American Stores............................................................................ 14, 20

Medina v. Time Ins. Co ........................................................................................ 20

Member Services Life Insurance Company V. American .................................. 12, 13, 15

Member Services Life Insurance Company V. American National Bank And Trust

    Company Of Sapulpa............................................................................................ 13

Waupaca Foundry, Inc. v. Gehlhausen ............................................................ 20

Wheeler v. Dynamic Eng'g, Inc. .......................................................................... 12

Wulf v. Quantum Chem.......................................................................................... 14, 15

Young v. Standard Oil (Indiana).......................................................................... 20

# Definitions

## Coverage

The risks that are included in the terms of an insurance contract for protection under the policy; the amount and type of insurance.

An insurance policy provides coverage for particular losses, such as theft, fire, or accidents.  The provisions of each individual policy determine the duration, extent, and nature of the coverage.

**West's Encyclopedia of American Law, edition 2.  Copyright 2008 The Gale Group, Inc.**

## Insurance

A contract whereby, for specified consideration, one party undertakes to compensate the other for a loss relating to a particular subject as a result of the occurrence of designated hazards.

**West's Encyclopedia of American Law, edition 2.  Copyright 2008 The Gale Group, Inc.**

## OPEB

**O**ther **P**ost-**E**mployment **B**enefits obligations – Which are Salaried Retiree Health Care Benefits, Medicare Part B special benefits, Health Savings Account benefits and Life Insurance benefits.

## SPD

Summary Plan Document

## Welfare Plan

ERISA defines an employee welfare plan as "any plan, fund or program ... established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (a)

medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment...." 29 U.S.C. Sec. 1002(1)

## Vesting

To give an immediate, fixed right of present or future enjoyment.

The term *vest* is significant in the law, because it means that a person has an absolute right to some present or future interest in something of value. When a right has *vested*, the person is legally entitled to what has been promised and may seek relief in court if the benefit is not given.

In contemporary U.S. law the term *vesting* refers to the right that an employee acquires to various employer-contributed benefits, such as a <u>Pension</u>, after having been employed for a requisite number of years. The federal <u>Employee Retirement Income Security Act</u> (ERISA) of 1974 (29 U.S.C.A. § 1001 et seq.) governs the funding, vesting, administration, and termination of employee benefit plans. ERISA was enacted as a result of congressional dissatisfaction with private pension plans. Under some plans an employee's pension benefits did not vest before retirement or vested only after such a long period of time (as long as thirty years) that few employees ever became entitled to them. ERISA ensures that all pension benefits will vest within a reasonable time. Once pension benefits are vested, an employee has the right to them even if the employment relationship terminates before the employee retires.

In <u>Constitutional Law</u> *vested rights* are those that are so completely and definitely settled in a person that they are not subject to defeat or cancellation by the act of any other private person. Once a person can prove to a court the validity of the vested rights, the court will recognize and protect these rights so as to prevent injustice.

**West's Encyclopedia of American Law, edition 2. Copyright 2008 The Gale Group, Inc.**

## SUPPLEMENTAL RESPONSE TO DPH HOLDINGS
## CORP. INJUNCTION MOTION

### Regarding Ms. Haffey's reference to the Sumpter
### OPEB OBJECTION docket # 14898

1.      In the September 26, 2013 Bankruptcy Court hearing, Ms. Haffey informed

the court that the Sumpter OPEB objection (docket #14898 -see Attachment 1) referred

to disability. She offers this information to suggest to the court that Sumpter understood

the OPEB motion to include the termination of disability benefits.

2.      However, the Sumpter objection makes no reference to termination of

disability benefits. It only references the termination of health and life insurance

benefits.

3.      The Sumpter OPEB objection references disability in three places.  The first

instance is the case where Sumpter states that he is retired and on disability, in the

second paragraph on page 3.  See the text below:

      *"I am retired on full disability"*

4.      The next occurrences are in paragraph 5 on page 4 were Sumpter states the

disability program restriction regarding working. See the text below.

      *"However, the Delphi disability retirement plan prohibits me from*
      *any gainful employment or occupation. The Plan also requires that*
      *any payments that Delphi makes are reduced by any social security*

*disability benefit for which I might become eligible. Delphi has*
*proposed to make no adjustments in any of it requirements."*

5.    The next occurrences are in paragraph 5 on page 4 where Sumpter argues
that the summary plan document provides payment of life insurance benefits until age
65.  The text is not included here because of its length and its numerous references to
text in the SPD document.

6.    In no case, in the Sumpter OPEB objection, was there an indication that there
was an understanding that the Delphi OPEB motion sought to terminate disability
payments.

7.    Thus, far from supporting Ms. Haffey's argument, the Sumpter OPEB
objection makes clear that Sumpter understood the OPEB motion was intended to
terminate the various healthcare and life insurance benefits exclusively.

## Regarding Delphi OPEB Termination Motion
## docket # 14705

8.    The OPEB motion (Docket #14705) specifically listed the benefits being
terminated. These terminated benefits are listed below and are copied directly from the
OPEB termination motion:

   **(a)** eliminate eligibility for employer-paid post-retirement health care benefits
   for all current and future active
   salaried employees;

    **(b)** cease making Company contributions to provide post-retirement health
   care for current and future salaried retirees and their surviving spouses;

**(c)** cancel all RHRAs for Medicare-eligible salaried retirees and their surviving spouses; **(d)** terminate the Medicare Part B special benefit for current and future salaried retirees and their surviving spouses;

**(e)** cease providing the 1% employer contribution to the Delphi Salaried Retirement Savings Program for those active salaried employees hired on or after January 1, 1993 and on or prior to December 31, 2000 (the "1993 to 2000 Salaried Employees");

**(f)** eliminate eligibility for employer-paid post-retirement basic life insurance benefits for all current and future active salaried employees; and

**(g)** cease making Company contributions to provide post-retirement basic life insurance benefits for current and future salaried retirees.

9.    It's easily seen that this list does not include disability benefits. In addition, the OPEB motion goes on to discuss the current salaried OPEB benefits and retirement in paragraphs 38 thru 43. It should be emphasized that this list and these paragraphs makes no reference to disability benefits.

10.    Furthermore, paragraphs 44 of the motion, by way of a table on page 22 and 23 illustrated how the termination would affect various employee groups. This table can be found on page 22 of the OPEB motion and is reproduced below.

11.    It can be seen that this table does not include any reference to disability benefits.  In addition the word "disability" can be found in only three instances in this motion. In two instances the word is found as a part of the name of the **life and disability benefits program.** In the context that the motion states that the program reserves the right to amend modify suspend or terminate the referenced benefit program.

12.    In the case of the **Life and Disability Benefits Program,** it was modified when company provided life insurance was terminated. Nowhere did that modification specify any changes to the disability portion of the program.

13.    The third instance of the word **"disability"** can be found when the document reproduces part of section 1114 A of the bankruptcy code's definition of **"retiree benefits"**,. On page 24.

14.    Thus, in no case in the OPEB motion was the word disability used in the context of a discontinued welfare benefit. It is therefore clear that Delphi did not include disability in the definition of OPEB and also clear that Delphi sought no approval from the court to terminate disability benefits.

| Employee Status | Current Retiree Medical and Insurance Benefits | Proposed Treatment |
|---|---|---|
| Active Salaried Employees Hired By GM Prior To 1993 | Eligible for Delphi-paid Medical and Insurance Benefits in retirement | Not eligible for Delphi-paid Medical and Insurance Benefits in retirement<br><br>May purchase Medical Benefits in retirement, provided 100% self-paid. May convert Insurance Benefits to individual policy at retirement |
| | Eligible for RHRA at Medicare eligibility | No RHRA at Medicare eligibility |
| | Eligible for Medicare Special Benefit | No Medicare Special Benefit |
| Active Salaried Employees Hired By GM Or Delphi Between 1993 And 2000 | Not eligible for Delphi-paid Medical or Delphi-paid Insurance Benefits in retirement; may purchase Medical Benefits in retirement, provided 100% self-paid; and may convert Insurance Benefits to individual policy at retirement, provided 100% self-paid | No changes |
| | Delphi contributes 1% of base into Delphi Salaried Retirement Savings Program | 1% contribution cancelled |
| Active Post-2000 Salaried Employees Hired By Delphi | Not Eligible for Delphi-paid Medical or Delphi-paid Insurance Benefits in retirement; may purchase Medical Benefits in retirement, provided 100% self-paid; and may convert Insurance Benefits to individual policy at retirement, provided 100% self-paid | No changes |
| Retired Salaried Employees Who Were Hired By GM Prior To 1993 | Delphi subsidizes Medical Benefits until Medicare eligible (i.e., age 65) and Insurance Benefits for life | Subsidies for Medical and Insurance Benefits terminated<br><br>May purchase Medical Benefits in retirement, provided 100% self-paid<br><br>Will be offered one-time ability to enroll in or increase coverage (subject to proof of good health) under Optional Life Plan, provided 100% self-paid. May elect an increase of one times base salary |
| | Eligible for RHRA at Medicare eligibility | Cancelled |
| | Eligible for Medicare Special Benefit | Cancelled |

15.    As indicated in my prior response (docket # 22164), disability benefits were

not terminated in the OPEB order (Docket #16448).  In addition, the OPEB order stated

in paragraph 4 on page 3, the following:

> *The Debtors shall continue to provide benefits for claims incurred*
> *by each Eligible Salaried Employee through the cessation date of*
> *such retiree's participation in the applicable welfare plan,*
> *provided that such retiree has timely paid all requisite*
> *contributions for the applicable plan, and provided further that*
> *such retirees shall not be required to file proofs of claim in this*
> *Court to implement the terms of this decretal paragraph.*

16.    Thus, because the Sumpter disability benefit was under claim, the OPEB

order specified that that the Sumpter SEDB benefit should be paid through the cessation

date of Sumpter's participation, which is the end of January 2017(the month of Sumpter's

65th birthday).

## Disability Benefits under claim Are Vested And
## Cannot Be Retroactively Terminated

17.    In addition, disability benefits under claim are vested and cannot be

retroactively terminated.

18.    It is not disputed that ERISA rules permit employers to amend the terms

of a welfare benefit plan or terminate it entirely[1] ; and DPHH has reserved the right to

---

[1] ERISA regulates two types of benefit plans, pension benefit plans that create vested rights and
welfare benefit plans that need not create vested rights. See Chiles v. Ceridian Corp., 95 F.3d
1505, 1510 (10th.1996). The plan at issue here is a welfare benefit plan. As such it is "exempt
from the statutory vesting requirements that ERISA imposes on pension benefits. Accordingly,

terminate its benefit plans in the SPD and the Amended Plan. Thus, it's understood that

DPHH had the right to modify or terminate the disability plan for future (not currently

disabled) beneficiaries (Although, prior to March 2012, no such action was taken.)

However, the ERISA rules do not permit retroactive modification or termination of

vested benefits.

19.    Thus, Disability Benefits are vested both; because of the Benefit Plans

description in the SPD, because of the rules of general contract law and because of the

bankruptcy court OPEB order[2].

## Vesting of Benefits under Claim is Granted Through The SPD

20.    Pages 75- 79 of the SPD (December 2001) list the requirements necessary

to receive disability benefits. (**See Appendix A.**) These requirements are:

  i.   Length of employment service at the commencement of Disability

  ii.  The Beneficiary must be (1) totally disabled so as to be unable to engage

       in any regular employment with Delphi at the location where they last

       worked, (2) not working elsewhere.

---

an employer may amend the terms of a welfare benefit plan or terminate it entirely." Wheeler
v. Dynamic Eng'g, Inc., 62 F.3d 634, 637 (4th Cir.1995) (citations omitted).

[2] "However, benefits under a welfare benefit plan may vest under the terms of the plan itself."
Id. at 637- 38. Because, as MSA agrees, an amendment to any ERISA plan may not operate
retroactively if that amendment deprives a beneficiary of a vested benefit, see Chiles, 95 F.3d at
1510; Wheeler, 62 F.3d at 640... **Member Services Life Insurance Company V.
American National Bank And Trust Company Of Sapulpa 130 F.3d 954 (10th Cir.
1997)**

iii. The Beneficiary must be totally disabled thereby preventing you from

performing the duties of your occupation and must give written notice

of any sickness or injury within 20 days after the onset of disability.

Generally, Sickness and Accident benefits begin after a seven-day

waiting period, provided you have been treated by a physician legally

licensed to practice medicine or the plant medical department during the

first seven-days of disability.

21.   In particular, the table on SPD page 79 clearly indicates that the benefits are

based on the years of service at the commencement of disability (**In _Appendix B: See_**

**_SPD page 79 and foot note (1)_**). Thus the Plan conveys vested rights for disability by

specifying that the duration of the benefit "**at the commencement of disability**" is

based on the length of service[3] .

22.   Thus, the disability benefits vest under the terms of the plan itself, and

therefore can not be amended retroactively.[4]

---

[3] Note: "Length of Service" is a primary legal standard as articulated in § 2 of "Vesting"
definition, pg 5.

[4] "However, benefits under a welfare benefit plan may vest under the terms of the plan itself." Id.
At 637-38. Because, as MSA agrees, an amendment to any ERISA plan may not operate
retroactively if that amendment deprives a beneficiary of a vested benefit, see Chiles, 95 F.3d at
1510; Wheeler, 62 F.3d at 640. **Member Services Life Insurance Company V. American
National Bank And Trust Company Of Sapulpa 130 F.3d 954 (10th Cir. 1997)**

## Vesting Granted Through Contract Law

23.    In Blackshear v. Reliance Standard Life Ins. Co. the 4th Circuit ruled that ... *"Under general principles of insurance contract law ... such benefits **do** vest when performance is due under the contract. At that point, the contract is no longer executory and must be performed in accordance with the terms then in existence." Member Servs., 130 F.3d at 956. )"*. **Blackshear v. Reliance Standard Life Ins. Co., 509 F.3d 641 (4th Cir. 2007)**

24.    Also, in Blackshear v. Reliance Standard Life Ins. Co., the 4th Circuit ruled that insurance vested at the moment the triggering event under the policy occurred[5]

25.    In addition, in **Feifer v. Prudential Ins. Co. of Am., 306 F.3d 1202 (2d Cir. N.Y. 2002)** the court stated the following:

> *Absent explicit language to the contrary, a plan document providing for disability benefits promises that these benefits vest with respect to an employee no later than the time that the employee becomes disabled.*

## Vested Benefits Cannot Be Retroactively Terminated

---

[5] We concluded that the beneficiary's rights under a welfare benefit plan providing medical insurance vested at the moment the triggering event under the policy occurred and that the plan could not be amended to deny coverage after that point. *See id.* At 638-40. Numerous courts have taken, in a wide array of circumstances, a similarly dim view of any amendment that attempts to retroactively eliminate vested welfare benefit rights. *See Member Servs. Life Ins. Co. v. American Nat'l Bank & Trust Co. of Sapulpa, 130 F.3d 950, 954-57 (10th Cir. 1997); Filipowicz v. American Stores Benefit Plans Comm., 56F.3d 807, 815 (7th Cir. 1995); Bartlett v. Martin Marietta Operations Support, Inc. Life Ins. Plan, 38F.3d 514, 517 (10th Cir. 1994); Wulf v. Quantum Chem. Corp., 26 F.3d 1368, 1377-78 (6th Cir. 1994);Confer v. Custom Eng'g Co.,* 952 F.2d 41, 43 (3d Cir. 1991) (per curiam). **Blackshear v. Reliance Standard Life Ins. Co., 509 F.3d 640, 641 (4th Cir. 2007)**

26.    In addition, several courts, in particular the 4th Circuit[6] , 10th Circuit[7]

and 6th  Circuit[8] , have ruled that vested welfare benefits cannot be retroactively

terminated.

27.    It should also be noted that the 4th Circuit stated **"Numerous courts have**

**taken, in a wide array of circumstances, a similarly dim view of any amendment that**

**attempts to retroactively eliminate vested welfare benefit rights."** The 4th Circuit

also went on to cite  several cases to make the point[5 above].

## Delphi Prior Actions Demonstrate That It Operated With The Knowledge That Disability Benefits Are Vested And That It Purposefully Avoided Terminating Disability Benefits

28.    Delphi prior actions demonstrate that it operated with the knowledge that the

disability benefits are vested.

29.    On at least two occasions Retirees petitioned the court to authorize an 1114

Committee. Delphi vigorously and successfully challenge each of these motions.

---

[6] Once an employer or plan sponsor grants vested rights under a welfare benefit plan, however, it may not
retroactively amend the plan to deprive a beneficiary of a vested benefit. *See Wheeler,* 62 F.3d at 638, 640
**Blackshear v. Reliance Standard Life Ins. Co., 509 F.3d 640 (4th Cir. 2007)**

[7] ...an amendment to any ERISA plan may not operate retroactively if that amendment deprives a beneficiary of a vested benefit, see Chiles, 95 F.3d at 1510; Wheeler, 62 F.3d at 640... Member Services Life Insurance Company V. American National Bank And Trust Company Of Sapulpa 130 F.3d 954 (10th Cir. 1997)

[8] As then Chief Judge Hillman stated in Edward W. Sparrow Hospital Ass'n, Inc. v. Industrial Welding, Inc., 1990 U.S. Dist. LEXIS 9194 (W.D. Mich., July 19, 1990), "Once a participant became entitled to coverage under the then existing terms of the Plan, it would be entirely illusory to allow [the employer] to essentially divest them of that right by retroactively deleting the benefit**." Wulf v. Quantum Chem. Corp., 26 F.3d 1368, 1377-78 (6th Cir. 1994)**

30.    The two instance seeking 1114 Committee status were:

    i. Motion to appointment of official committee of retirees (Docket # 0874)

    ii. OPEB benefits Terminations Hearing (Docket # 16451)

31.    In the case of OPEB benefit termination, Delphi terminated all retiree benefits, **except Disability Benefits**.

32.    There is significant text, from the hearing transcript, that indicates that Delphi was terminating all "at-will" or discretionary benefits:

*Comments From Mr. Butler, Delphi's attorney at the OPEB termination hearing 24-FEB-2009 (Docket # 16451):*

a.    Mr. Butler Page 105; Line 12

*"That's really where the company is at right now. And that's why after having provided some forty-two months of welfare coverage here on an at-will basis the company has concluded that this motion is necessary."*

b.    Mr. Butler (Page 105; Line 25 thru Page 106; Line 16 of the transcript):

*"That starts with the DIP lenders and the DIP steering committee that's been formed. ...They made it very clear -- in their view, actually, they think the company has a fiduciary duty to terminate these at-will benefits. We have pushed back on their interpretation, but nonetheless it is clear to the company, as Mr. Miller testified to in his declaration that the stakeholders with the economic interest at the top of the absolute priority waterfall that have to be dealt with in this case, in the circumstances we find ourselves in, simply will not support and will not*

*countenance having discretionary liabilities of this magnitude on the
reorganized balance sheet of the company -- reorganized company's
balance sheet".*

   c.  Mr. Butler Page 119; Line 10

*"But the fact of the matter is, and we fought for forty-two months to keep
these discretionary benefits in place. The reality is we simply cannot
do that any more in light of where we are and what we need to do in
order to be able to*

*preserve this company, and in preserving this company, preserve the
continuity of supply in the global automotive business. If we don't do
this right, there's going to be a real problem."*

33.    Thus, Mr. Butler, representing Delphi, indicates that there was significant
business pressure to terminate all at–will or discretionary benefits. Therefore, had Delphi
considered Disability benefits discretionary and non-vested, they would have been
included in the definition of OPEB benefits.

34.    Delphi argued that it was terminating OPEB benefits out of business necessity.
Therefore, on that basis there would have been no reason not to terminate all retiree benefits
including Disability benefits, if disability benefits had been considered discretionary

35.    In the OPEB hearing ( docket # 16451) , Delphi acknowledged that any attempt
to terminate vested benefits would entitled retirees to an 1114 committee.

**a)** Mr. Butler page 112; Lines 19 & 23:

*"...in fact if these were vested benefits, there
would be an 1114 committee."*

*"...even though if you follow the majority rule,*
*you only appoint an 1114 committee if there are*
*vested benefits."*

36.    It's clear from the hearing that Delphi was not interested in the retirees

having an 1114 committee.

37.    Thus, Delphi chose not to terminate Disability Benefits, when it terminated

other retiree benefits, because the termination of vested Disability Benefits would have

precipitated the one outcome it had consistently sought to avoid - having retirees

represented by an 1114 committee and possibly serving on the Creditors Committee.

38.    In addition, in the OPEB hearing, Delphi attorneys made a vigorous case

that the company was having serious financial issues and that its DIP lenders were

exercising significant pressure to terminate benefits. Thus, if there was a time when

Delphi would've been most helped by terminating disability benefits it would've been

in April 2009 instead of March 2012. This is a clear indication that Delphi's intentional

exclusion of disability benefits as a part of the OPEB definition was because Delphi

recognized that disability benefits, on claim, were vested and terminating such benefits

will resulted in the formation of an 1114 committee of salaried retirees.

**Regarding Supplemental
Extended Disability Benefits (SEDB)**

39.   If an employee (on January 1 of the Plan year) has credited service that is at least six months but less than 10 years, he may elect Supplemental Disability coverage **purchased** with self paid, pre tax dollars[9].

40.   Thus, some Disabled Beneficiaries, including James Sumpter, were receiving SEDB benefits until they were illegally termination in March 2012 .  Having been purchased as insurance coverage, Supplemental Disability vest like any other policy, at the time performance is due[10 below].

41.   It's also not consistent with insurance contract law that a vested benefit can be retroactively reduced or eliminated.

42.   It should be noted that the SPD specifically states that employees may **purchase** Supplemental Disability Coverage (See par. 39). The SPD, on page 115, also states the following:

> ***Benefits made available by Delphi, the full costs of which are borne by employees****, are Optional Life Insurance, Dependent Life Insurance, Personal Accident Insurance, flexible spending accounts,* ***Supplemental Extended Disability Benefit,*** *and sponsored dependent medical coverage*.

43.   Thus, according to this section of the SPD, DPHH does not pay any part of the cost of Supplemental Extended Disability Coverage. This is further evidence that SEDB is an insurance product and vest as any insurance product would.

---

[9] SPD 2001 – page 77

44.    Furthermore, for the reasons stated in paragraphs 23 thru 27, once vested, Extended Disability benefits and Supplemental Extended Disability benefits cannot be retroactively modified or terminated.

## DPHH Has No Authority To Change Terms
## Of Vested Disability Payments

45.    Because disability benefits are vested, Delphi has no authority to unilaterally change the terms of benefits payments. Delphi must perform in accordance with the contract  (Disability Section and disability retirement sections of the of the SPD)[10].

46.    In addition, in **Waupaca Foundry, Inc. v. Gehlhausen, 104 F. Supp. 2d 1052,** the court stated the following:

*The plan is a welfare benefit plan, so it is exempt from the accrual, funding, and vesting requirements that ERISA imposes on pension plans.* ***Young v. Standard Oil (Indiana), 849 F.2d 1039, 1045 (7th Cir. 1988).*** *Therefore, the plan can be modified at any time.* ***See, e.g., Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78, 131 L. Ed. 2d 94, 115 S. Ct. 1223 (1995).*** *Nevertheless, employers can't use their amending power "to call off a bet after the race is over,"* ***Medina v. Time Ins. Co., 3 F. Supp. 2d 996, 998 (S.D.Ind. 1998),*** *because "benefits under a welfare benefit plan may vest under the terms of the plan itself,"* ***Member Services Life Ins. Co. v. American Nat. Bank and Trust Co. of Sapulpa, 130 F.3d 950, 958 (10th Cir. 1997). In Filipowicz v. American Stores Ben. Plans Committee, 56 F.3d 807 (7th Cir. 1995),*** *the court held that a*

---

[10] Under "general principles of insurance contract law ... such benefits do vest when performance is due under the contract. At that point, the contract is no longer executory and must be performed in accordance with the terms then in existence.( *Member Servs.,* 130 F.3d at 956. ). **Blackshear v. Reliance Standard Life Ins. Co., 509 F.3d 641 (4th Cir. 2007)**

*modification to an ERISA plan "can have no effect on a beneficiary's claim to benefits."*

## Regarding the diabetes question

47.    In the September 26, 2013 bankruptcy hearing, Judge Drain raised the issue of diabetes in the context of healthcare vesting. I answered the judge's question by citing the situation where a person is in the hospital five days for surgery and on the third day of the hospital stay, the benefit plan was terminated. I argued that the health benefit would be vested for that claim because the claim would cover the full five day hospital stay.

48.    The situation is applicable to a beneficiary who had diabetes. Diabetes is a chronic disease, and in that sense like Lupus, the chronic fatigue and the rheumatoid arthritis that I have. However being diagnosed with diabetes, Lupus, chronic fatigue or rheumatoid arthritis, in itself is not a healthcare claim or a disability claim.

49.    In the case of healthcare it is not the diagnosis that results in a claim but the receipt of treatment and medication that result in a claim. In the case of the disability benefit, it is not the diagnosis of Lupus, rheumatoid arthritis, chronic fatigue or major depression that results in a claim. It is the certification by the employee's physician and the company's physician that the employee is physically, mentally and/or emotionally unable to perform the tasks of his job.  The distinction to be made is that health benefits, or disability benefits for that matter, are not paid simply based on the diagnosis, which in this example is diabetes. The benefits are paid on a per claim basis. As such, each time the diabetes patient sees his doctor, receives treatment, is hospitalized or buys

medication there is a new claim. Thus, if the health benefit was terminated between claims there would be no vesting of the post termination claims, and the termination of the health benefit would be proper.

50.    However, if the diabetic patient had been admitted to the hospital and while he was in the hospital the plan terminated, the claim that arose that allowed the patient to be admitted to the hospital would be vested and the plan provider would be required to make payments as long as that claim was active. Presumably, that claim would end when the patient left the hospital.

51.    Thus, in the case of the Sumpter disability, the claim was made in December 2000. Sumpter has been continuously disabled and unable to perform his job at Delphi or otherwise work. He has therefore continually met the requirements of the disability claim. As a result, the disability claim vested when performance was due, which was when Sumpter was approved for disability leave and subsequently approved for disability retirement.

52.    During the OPEB hearing, the concept of vesting was limited to be the statutory vesting (the kind that might be associated with a pension) and vesting established by the benefit plan's language. In the case of OPEB benefits, there was never a question that there was a statutory vesting of retiree welfare benefits. However there was a question as to whether there were plan documents that vested certain benefit rights for retirees.

53.    One question that Judge Drain raised was whether the medical benefits and the Social Security supplement benefits were vested for disability beneficiaries. A

limited 1114 committee was established to investigate the existence of vested benefits, including those that might be vested by disability plan language. The 1114 committee found no situation in the plan documentation where any of the welfare benefits that would be terminated were vested. The 1114 committee search included an analysis of whether healthcare and other benefits for disabled retirees were vested. The committee found no such language. As a result, the debtor was able to secure permission of the court to terminate the OPEB benefits that it had identified in its motion.

54.    However, the OPEB motion did not seek to terminate disability benefits. But, had it done so, disability benefits already under claim and in payment would be vested, because disability benefits like other claim based benefits vest when performance is due.

55.    Thus, when considered in the context of the diabetes example, the disability benefit was under claim and is not based on a succession of claims. Therefore just like the case in the example where the diabetic patient was in the hospital, the disability claim vest.

56.    Another such example can be seen in a life insurance claim. If a retiree died the day before the life insurance benefit was terminated, that life insurance claim would be vested because performance was due. This is the true even if the life insurance payments were to be made in a series of installments that continue past the termination date.

57.    In prior briefs, I have stated that the debtor demonstrated an awareness that the termination of any vested benefits would entitle the retirees to an 1114 committee.

It's also clear that the debtor did not want the retirees to have an 1114 committee. It's also clear that the debtor and its attorneys are knowledgeable enough and sophisticated enough to know that disability benefits under claim are vested. Therefore, had they attempted to terminate disability benefits, as a part of the OPEB motion, it would have resulted in the appointment of a full 1114 committee. Although, the debtor would've been entitled to seek termination for disability benefits not under claim. This, however did not happen.

58.    Judge drain wrote in his final OPEB order to following:

**"The Debtors shall continue to provide benefits for claims incurred by each Eligible Salaried Employee through the cessation date of such retiree's participation in the applicable welfare plan, provided that such retiree has timely paid all requisite contributions for the applicable plan, and provided further that such retirees shall not be required to file proofs of claim in this Court to implement the terms of this decretal paragraph."**

59.    Thus, the Sumpter disability benefit, which was vested and under claim was wrongly terminated, which violated the court's order.

## Conclusion

60.    The Sumpter OPEB objection did not indicate that there was any believe that disability benefits were being terminated.

61.    Healthcare benefits such as those provided to beneficiaries with diabetes and/or disability benefits are both paid and vested on a per claim basis.

62.    This supplemental response has shown that there are five reasons why the termination of Sumpter's SEDB benefit was improper. These reasons are listed below:

**a.**  The OPEB motion did not request and the Court did not order the termination of disability benefits;

**b.**  The Sumpter SEDB benefits were being paid under an approved claim that vested at the time of disability, pursuant to the plan language in the SPD;

**c.**  The SEDB benefits, vested once a claim was made and performance was due, pursuant to prior rulings by various courts and contract law;

**d.**  Vested welfare benefits, including disability, cannot be retroactively terminated; and

**e.**  The Bankruptcy Court, in the final OPEB order, required that all benefits under claim shall be paid through the duration of the beneficiaries of participation in the plan.

WHEREFORE, the respondent respectfully requests that this Court order DPH Holdings Corp. to pay Sumpter's SEDB benefit along with the consequential and compensatory damages that have been requested. and such other and further relief as may be just, necessary and appropriate.

Dated: Noblesville, Indiana
October 17, 2013

By: _____
James B. Sumpter


James B. Sumpter, pro se
21169 Westbay circle
Noblesville, IN 46062
Telephone: (317) 877-0736
jsump@ieee.org

Salaried Retiree of Debtors.

**Appendix A:     SPD Sections on Disability Benefits**

# *Sickness and Accident Benefits*

## *If You Are in a Classified Salaried Position*

You are covered for Sickness and Accident benefits on the first day of the sixth month following the month in which you commence working with Delphi. If you are not actively at work on the day your coverage otherwise would start, coverage commences on the day you return to active work.

While you are unable to work because of sickness or injury and you are being treated by a physician legally licensed to practice medicine, Sickness and Accident benefits may be payable for as long as 12 months. Sickness and Accident benefits also may be payable if you are
      (1)    disabled from surgery for sterilization, or
      (2)    hospitalized for testing to determine your suitability to be a donor for an organ or tissue transplant.

**To receive Sickness and Accident benefits,** you must be totally disabled thereby preventing you from performing the duties of your occupation and must give written notice of any sickness or injury within 20 days after the onset of disability. Generally, Sickness and Accident benefits begin after a seven-day waiting period, provided you have been treated by a physician legally licensed to practice medicine or the plant medical department during the first seven-days of disability. Your salary may be continued during the seven-day waiting period. If you have not been treated within the first seven days of disability, sickness and accident benefits would be payable as of your first date of treatment. Also, you must provide proof of your injury or sickness to the Carrier within 90 days after the termination of the period for which monthly benefits are payable.

Monthly benefit amounts are determined by your monthly base salary. Base salary, for purposes of Sickness and Accident benefits, includes the premium for necessary continuous seven-day operations, but does not include overtime, night-shift premium, or any other payments.

Benefits generally are payable on your regular payday. These benefits may be supplemented by salary continuation, as shown in the table on page 79.

Your monthly benefit amount is equal to 75% of your monthly base salary for periods of disability commencing after you attain one year's length of service. Your monthly benefit amount is equal to 60% of your monthly base salary for periods of disability commencing prior to your attainment of one year's length of service.

Sickness and Accident benefits are payable for a period based on your (1) Delphi length of service, or (2) years of participation under the Life and Disability Benefits Program, if greater (see page 77).

For each month of service, you may receive one monthly benefit, up to a total of 12 monthly benefits. If your Delphi service is less than 12 months, benefits may continue up to 12 months while you are hospitalized, or receiving workers' compensation payments from Delphi.

If you return to work before the end of the maximum period for which you are eligible to receive Sickness and Accident benefits, and are absent again within three months because of the same or a related disability, benefits resume where they left off. For example, if you were disabled and received Sickness and Accident benefits for four months, returned to work and then became disabled again two months later from the same or a related condition, you would be eligible for eight additional months of benefits, without a new waiting period. If your second period of disability results from a different cause, the first absence does not affect the benefits, or waiting period, for the second absence.

Sickness and accident benefits are reduced by:

- Primary Social Security Disability Insurance Benefits (SSDIB) or unreduced Social Security Old Age Insurance (including retroactive amounts paid for the same period of disability);

- Certain workers' compensation payments;

- Any unemployment compensation payments to which you are entitled for the same period you receive Sickness and Accident benefits;

- Any payments made under the Corporation's salary continuation policy or any other salary payments that may be made in connection with any Corporation incentive separation plan or the Separation Allowance Plan.

You may be required to apply for SSDIB if your disability is expected to continue for a year or longer.

**You may be required to be examined** by a doctor, clinic, or other medical authority for the purpose of verifying disability, at any time you may be eligible to receive Sickness and Accident benefits, Extended Disability Benefits; Supplemental Extended Disability Benefits, or Personal Accident Insurance benefits. Generally, if you are found able to work, your benefits will be discontinued. Failure to report for the examination may affect any eligibility you may have for benefits. You will be reimbursed, upon request, at 31¢ per mile for travel to and from the examination, if your residence is more than 40 miles (one-way) from the examiners office.



To apply for **Sickness and Accident Benefits**, you must complete a claim form provided by the **National Benefit Center.**

You may contact the center, toll-free, at **1-800-734-0346 or 1-800-882-3563 for the hearing or speech impaired**.

In certain states, employees in either classified or executive salaried positions may be eligible under a statutory disability benefits law for disability benefits for time lost from work. **If you are an employee working in California, New Jersey, or New York**, certain modifications in your Sickness and Accident benefits, or salary continuation payments during disability, are explained in a special enclosed insert.

# Extended Disability Benefits and Supplemental Extended Disability Benefits

If you continue to be disabled after you receive Sickness and Accident benefits and/or salary continuation payments for the maximum period and you continue to be a Delphi employee, you may be eligible to receive monthly Extended Disability Benefits.

**You are covered** for Extended Disability Benefits on the first day of the sixth month following the month in which you commence working with Delphi. If you are not actively at work on the day your coverage otherwise would start, coverage commences on the day you return to active work.

**To receive Extended Disability Benefits,** you must (1) be totally disabled so as to be unable to engage in any regular employment with Delphi at the location where you last worked, and (2) not be working elsewhere.

**Monthly benefit amounts** are determined by your monthly base salary. Base salary, for purposes of Extended Disability Benefits, includes the premium for necessary continuous seven-day operations, but does not include overtime, night-shift premium, or any other payments.

Your monthly benefit amount is equal to 60% of your monthly base salary.

**Extended Disability Benefits are payable** for a period based on your Delphi years of participation under the Life and Disability Benefits Program (see page 116).

- **If you have 10 or more years of participation when you become disabled,** benefits are payable until recovery or death, but not beyond age 65.*

- **If you have less than 10 years of participation when you become disabled,** benefits are payable until recovery, death, or, if less, for a period equal to your years of participation at the commencement of disability (less the period during which Sickness and Accident benefits or salary continuation payments are received), but not beyond age 65.*

   * However, if you become disabled at or after age 63, you may receive Extended Disability Benefits for a period of time beyond age 65.

In addition, **if you are covered for Extended Disability Benefits, but have less than 10 years of participation in the Life and Disability Benefits Program,** you may elect to purchase Supplemental Extended Disability Benefits coverage under the Delphi Options! Program.

As the name implies, Supplemental Extended Disability Benefits coverage is intended to supplement the Delphi Extended Disability Benefits for shorter service employees. You may elect Supplemental Extended Disability Benefits during the Delphi Options! Program enrollment period, **only** if on January 1 of the following year, you will have **at least six months but less than 10 years of participation.** If eligible, Supplemental Extended Disability Benefits would be available to you on a pre-tax, self-paid basis. Employee contributions and coverage for Supplemental Extended Disability Benefits would not commence until you have acquired 13 months of credited service under the Retirement Program for salaried employees.

All Extended Disability Benefits plan provisions also apply to Supplemental Extended Disability Benefits. However, receipt of Supplemental Extended Disability Benefits does not extend eligibility for health care and life and disability coverage.

To be eligible for a Supplemental Extended Disability Benefits payment, you must have
(1) elected Supplemental Extended Disability Benefits under the Delphi Options! Program,
(2) made at least one monthly contribution, and
(3) exhausted maximum Extended Disability Benefits.

**77**

If you are eligible, Supplemental Extended Disability Benefits provides you with disability benefits equal to 60% of your monthly base salary in effect as of September 1 of the year prior to your first day of disability. Supplemental Extended Disability Benefits will begin when your Extended Disability Benefits are exhausted. The length of time the benefit is paid may continue until the earliest of recovery from your qualifying disability, age 65, or death. This additional coverage will provide you with the maximum duration of Extended Disability Benefits available to employees with 10 or more years of credited service.

**Extended Disability Benefits and Supplemental Extended Disability Benefits are reduced by:**

■  Any monthly Part A benefits and Part B supplementary benefits (see pages 84 - 98) for which you may be eligible under the Delphi Salaried Retirement Program;

■  Any benefit for which you are eligible under any other Delphi retirement or pension plan;

■  Any salary payments that may be made in connection with any Corporation separation plan;

■  Governmental benefits, such as workers' compensation;

■  Certain social security benefits; and

■  Any federal or state lost-time disability benefits.

Increases in any of these benefits payable after Extended Disability Benefits or Supplemental Extended Disability Benefits commence will not be deducted, unless the increase represents an adjustment in the original determination of the amount of such benefit. **A retroactive award of any of these benefits will create an overpayment of Extended Disability Benefits or Supplemental Extended Disability Benefits that were paid for the same period of disability. (See page 115 for Recovery of Benefit Overpayments.)**

For both Extended Disability Benefits and Supplemental Extended Disability Benefits, you will be required to apply for Social Security Disability Insurance Benefits (SSDIB) under a special procedure designed to handle the offset of SSDIB against Extended Disability Benefits. You also will be required to repay any overpayment incurred due to receipt of an SSDIB award.

## *Social Security Disability Insurance Benefits*

If you become disabled before age 65, you may be eligible for disability insurance benefits from Social Security. Your nearest Social Security office can tell you if you qualify. Benefits may be payable after you have been disabled for five full calendar months.

The amount of Social Security benefits payable because of disability generally is in accordance with the schedule set forth on page 95 for benefits payable at age 65.

It is important for you to apply for Social Security Disability Insurance Benefits (SSDIB) for these reasons:

■  Failure to obtain an SSDIB award may result in a lesser Social Security old age benefit.

■  Your dependents also may qualify for Social Security benefits.

■  Your Social Security benefits may be increased annually to reflect cost-of-living increases.

■  You become eligible for Medicare after receiving 24 months of SSDIB. If you become enrolled in Medicare Part B, you may become eligible for payment of a monthly Special Benefit under the Delphi Salaried Health Care Program (see page 66).

■  If you are receiving SSDIB and return to work you may be eligible to continue these benefits, in addition to your salary, up to 12 months. You should contact your nearest Social Security office for additional information.

■  SSDIB awards are given favorable federal tax treatment, under current tax laws.

If you are receiving Sickness and Accident, Extended Disability Benefits or Supplemental Extended Disability Benefits, you may be required to complete an authorization form that allows the Social Security Administration to inform Delphi of the status of your claim for Social Security Disability Insurance Benefits. If you fail to complete this authorization, your Sickness and Accident or Extended Disability Benefits or Supplemental Extended Disability Benefits will be suspended until the authorization is received.



To apply for **Extended Disability Benefits**, you must complete a claim form provided by the **National Benefit Center**. You may contact the center, toll-free, at **1-800-734-0346 or 1-800-882-3563 for the hearing or speech impaired**.

## *Illustration of Salary Continuation, Sickness and Accident Benefits (S&A), and Extended Disability Benefits (EDB) for Eligible Salaried Employees*

| Types of Disability Payments for Periods Shown Below | | | | |
|---|---|---|---|---|
| Length of Service[1] | Full Salary[2] | S&A and Salary Combined Equal to Full Salary[3] | Maximum S&A Benefits Payable | Maximum EDB Payable |
| Less than 1 year | 1st week | — | Up to 12 months | None[4] |
| 1 year but less than 5 years | 1st week | Next 7 weeks | 12 months | For a period equal to years of participation (if under 10) less the period S&A and/or salary continuation paid[5] but not beyond age 65[6] |
| 5 years but less than 10 years | 1st week | Next 12 weeks | 12 months | |
| 10 or more years | 1st week | Next 25 weeks | 12 months | To age 65[6] (if years of participation are 10 or more) |

(1) *At commencement of disability.*
(2) *For this purpose, full salary includes base salary and the premium for necessary continuous seven-day operations, but does not include overtime, night-shift premium, or any other payment.*
(3) *The combined payments equal 25% salary continuation and 75% Sickness and Accident benefits. For this purpose, full salary includes base salary and the premium for necessary continuous seven-day operations, but does not include overtime, night-shift premium, or any other payment.*
(4) *If you elected Supplemental Extended Disability Benefits, employee contributions and coverage will not begin until you have acquired 13 months of credited service under the Retirement program for salaried employees.*
(5) *If you are covered for Extended Disability Benefits, but have less than 10 years of participation in the Life and Disability Benefits Program, you may elect to purchase Supplemental Extended Disability Benefit coverage under the Delphi Options! Program.*
(6) *If you become disabled at or after age 63, you may receive Extended Disability Benefits for a period of time beyond age 65.*

### Example of Delphi Disability Income Benefits

A Delphi employee with more than 10 years of service becomes totally and permanently disabled in February 2001. The following table illustrates the monthly benefits the employee would receive assuming a final monthly base salary of $4,100.

| Period Payable | Type of Disability Income Benefit | Monthly Benefit Amount |
|---|---|---|
| 1st 6 months | Salary continuation (25%) | $1,025.00 |
| | Sickness and accident (75%) | $3,075.00 |
| | **Total** | $4,100.00 |
| 2nd 6 months | Sickness and accident (75%) | $3,075.00 |
| After 12 months | Extended disability (60%) | $2,460.00 |

This employee also may be eligible to receive:
- Monthly total and permanent disability benefits under the Retirement Program (see page 89).
- Their entire account balance under the Savings-Stock Purchase Program after one year of disability.

# *Your Delphi Retirement Program Is Made Up of Two Parts*

***Part A*** is non-contributory. Delphi Automotive Systems pays the entire cost. Part A provides monthly benefits for all employees who have five or more years of credited service and retire or receive deferred vested benefits under the Program. Monthly retirement benefits also are payable when you retire at age 65, or older, based on your credited service. Part A may consist of:

- Basic benefits;

- Temporary benefits; and

- Supplements.

***Part B*** is contributory. To receive full Part B benefits, you must (1) contribute at all times while eligible, and (2) leave your contributions in the Program. Part B provides you with an opportunity to build up substantial additional monthly benefits, consisting of:

- Supplementary benefits, which are based on your (1) years of Part B credited service, and (2) average monthly base salary over the highest 60 months during the 120 months immediately preceding retirement; and

- Primary benefits, which are based on the amount you contribute.

While you are required to contribute to participate in Part B of the Program, Delphi also contributes in the aggregate, about 85% of the cost of this part of the Program.

## *Eligibility*

- ***To Participate***
*In general you are eligible to participate in Part A automatically when you become a regular Delphi salaried employee.*

- ***Part B***
*You are eligible to contribute under Part B when you have attained (1) age 21, and (2) six months of continuous service.*

*Your Part B contribution is 1.25% of your eligible monthly base salary in excess of $3,000. When you elect to participate in Part B, your contribution is deducted (after-tax) from your salary each month. Your Part B contributions are limited to 35 years.*

- ***To Retire***
*You are eligible to retire under normal retirement provisions when you attain age 65.*

*You may retire voluntarily at (1) any age if you have 30 or more years of credited service\*, or (2) age 55 with 10 or more years of credited service.*

*If you have 10 or more years of credited service, you may retire at any age prior to age 65 if totally and permanently disabled.*

*\* This provision is not applicable to a salaried employee hired on or after January 1, 1988.*