SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
  Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                   :
    In re                                                          :    Chapter 11
                                                                   :
DPH HOLDINGS CORP., et al.,                                        :    Case No. 05-44481 (RDD)
                                                                   :
                    Reorganized Debtors.                           :    (Jointly Administered)
                                                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOINT STIPULATION AND AGREED ORDER BETWEEN REORGANIZED
DEBTORS AND ACE AMERICAN INSURANCE COMPANY, PACIFIC
EMPLOYERS INSURANCE COMPANY, AND ILLINOIS UNION INSURANCE
COMPANY DISALLOWING AND EXPUNGING PROOFS OF CLAIM NUMBERS
13018, 13080, AND 13309 AND PROOFS OF ADMINISTRATIVE EXPENSE
CLAIM NUMBERS 18900, 19192, 19270, 19671, and 19716 AND ALLOWING
PROOFS OF ADMINISTRATIVE EXPENSE CLAIM NUMBERS 19633 AND 19715

DPH Holdings Corp. ("DPH Holdings") and certain of its affiliated reorganized debtors in the above-captioned cases (collectively, the "Reorganized Debtors") and ACE American Insurance Company ("ACE"), Pacific Employers Insurance Company ("Pacific") and Illinois Union Insurance Company ("Illinois Union," and together with ACE and Pacific, the "Claimants") respectfully submit this Joint Stipulation And Agreed Order Between Reorganized Debtors And ACE American Insurance Company, Pacific Employers Insurance Company, And Illinois Union Insurance Company Disallowing And Expunging Proofs of Claim Numbers 13018, 13080, And 13309 And Proofs Of Administrative Expense Claim Numbers 18900, 19192, 19270, 19671, And 19716 And Allowing Proofs of Administrative Expense Claim Numbers 19633 and 19715 (the "Stipulation") and agree and state as follows:

WHEREAS, on October 8 and 14, 2005 (the "Petition Date"), Delphi and certain of its subsidiaries and affiliates, former debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as then amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Court").

WHEREAS, prior to and after the Petition Date, the Claimants issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to certain Debtors as named insureds.

WHEREAS, prior to and after the Petition Date, the Claimants and the Debtors also entered into certain written agreements in connection with the Policies including, but not limited to, claims servicing agreements (as renewed, amended, modified, endorsed or supplemented from time to time, and including any exhibit or addenda thereto, collectively, the "Insurance Agreements" and together with the Policies, the "ACE Insurance Program").

2

WHEREAS, on October 6, 2009, the Debtors substantially consummated the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified (the "Modified Plan"), which had been approved by this Court pursuant to an order entered on July 30, 2009 (Docket No. 18707), and emerged from chapter 11 as the Reorganized Debtors. Article 9.6(a) of the Modified Plan provides that "[t]he Reorganized Debtors shall retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving all Claims against, and Interests in, the Debtors and making distributions (if any) with respect to all Claims and Interests."

WHEREAS, on August 8, 2006, ACE filed proof of claim number 13018 ("Claim 13018"), Pacific filed proof of claim number 13080 ("Claim 13080"), and Illinois Union filed proof of claim number 13309 ("Claim 13309," and together with Claim 13018 and 13080, the "Prepetition Policy Claims"), each against Delphi. Each of the Prepetition Policy Claims asserts a prepetition claim in the amount of $5,614.06, plus additional contingent and unliquidated amounts, for the Reorganized Debtors' prepetition insured obligations.

WHEREAS, on April 27, 2007, the Debtors objected to the ACE Prepetition Claims pursuant to the Debtors' Thirteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. Section 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Protective Insurance Claims, (D) Insurance Claims Not Reflected On Debtors' Books And Records, (E) Untimely Claims And Untimely Tax Claims, And (F) Claims Subject To Modification, Tax Claims Subject To Modification, And Claims Subject To Modification And Reclamation Agreement (Docket No. 7825) (the "Objection to Prepetition Policy Claims"). The Objection to Prepetition Policy

3

Claims was consensually resolved by way of the Joint Stipulation and Agreed Order Resolving the Debtors' Thirteenth Omnibus Claims Objection and Claims Estimation Motion with Respect to Proofs of Claim Filed by ACE American Insurance Company, Pacific Employers Insurance Company, Illinois Union Insurance Company, ESIS, Inc. and their Affiliates and Consolidating Such Proofs of Claim, entered on October 2, 2007 (Docket No. 10405), that, *inter alia*, provided that Claim numbers 13018, 13080 and 13309 would remain pending on the Delphi claims register.

WHEREAS, on July 15, 2009, Illinois Union filed proof of administrative expense claim number 18900 ("Claim 18900"), Pacific filed proof of administrative expense claim number 19192 ("Claim 19192"), and ACE filed proof of administrative expense claim number 19270 ("Claim 19270"), each against Delphi.  Claim 18900, Claim 19192, and Claim 19270 each assert an administrative expense priority claim in the amount of $180,676.36, an estimated ultimate amount of $12,359,616, plus additional contingent and unliquidated amounts, for the Reorganized Debtors' postpetition insured obligations.

WHEREAS, on August 14, 2009, the Court entered the Stipulation and Order Resolving Limited Objection of The Ace Companies to Approval and/or Confirmation of First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (as Modified) and Preserving Limited Objection of The ACE Companies to Assignment of Agreements to Buyers (Docket No. 18793), pursuant to which, among other things, it was agreed that "the ACE Companies shall have Allowed Administrative Claims for all liabilities of the Debtors to the ACE Companies under the [ACE Insurance Program] . . . and such liabilities shall be paid by the Debtors or the Reorganized Debtors, as applicable . . . in the ordinary course of their businesses."

4

WHEREAS, on November 4, 2009, ACE filed proof of administrative expense claim number 19633 ("Claim 19633") and Pacific filed proof of administrative expense claim number 19671 ("Claim 19671;" and together with Claim 18900, Claim 19192, Claim 19270, and Claim 19633, the "Administrative Expense Policy Claims;" and together with the Prepetition Policy Claims, Claim 18900, Claim 19192, Claim 19270, and Claim 19633, the "Policy Claims"), each against Delphi. Claim 19633 and Claim 19671 each assert an administrative expense priority claim in the amount of $541.36 for deductible reimbursements and the estimated ultimate amount of $12,359,616, plus additional contingent and unliquidated amounts, for postpetition insured obligations. Claim 19633 and Claim 19671 each expressly noted that they were "substantially similar" to the administrative expense proofs of claim previously filed on July 15, 2009 (noted above).

WHEREAS, on November 4, 2009, ACE filed proof of administrative expense claim number 19715 ("Claim 19715") against Delphi, and Pacific filed proof of administrative expense claim number 19716 ("Claim 19716," and together with Claim 19715, the "Litigation Claims," and the Litigation Claims together with the Policy Claims, the "Claims") against Delphi. The Litigation Claims each assert an administrative expense priority claim in the amount of $67,311,662.50, plus additional contingent and unliquidated amounts, relating to litigation in the adversary proceedings captioned *ACE American Insurance Co., et al. v. Delphi Corp. et al.*, No. 09-1510 (Bankr. S.D.N.Y.) and subsequent appeals taken by the State of Michigan Workers' Compensation Insurance Agency and the State of Michigan Funds Administration (the "ACE-Michigan Litigation").

WHEREAS, on March 19, 2010, the Reorganized Debtors objected to the Administrative Expense Policy Claims and the Litigation Claims pursuant to the Reorganized

5

Debtors' Forty-Sixth Omnibus Objection Pursuant To 11 U.S.C. § 503(b) And Fed. R. Bankr. P. 3007 To (I) Disallow And Expunge Certain Administrative Expense (A) Books And Records Claims, (B) Methode Electronics Claims, (C) State Workers' Compensation Claims, (D) Duplicate State Workers' Compensation Claims, (E) Workers' Compensation Claims, (F) Transferred Workers' Compensation Claims, (G) Tax Claims, (H) Duplicate Insurance Claims, And (I) Severance Claims, (II) Disallow And Expunge (A) A Certain Duplicate Workers' Compensation Claim, (B) A Certain Duplicate Tax Claim, And (C) A Certain Duplicate Severance Claim, (III) Modify Certain Administrative Expense (A) State Workers' Compensation Claims And (B) Workers' Compensation Claims, And (IV) Allow Certain Administrative Expense Severance Claims (Docket No. 19711) (the "Objection to Administrative Expense Claims," and together with the Objection to Prepetition Policy Claims, the "Objections"). On April 15, 2012, the Claimants responded to the Objection to Administrative Expense Claims (Docket No. 19836).

WHEREAS, on November 16, 2012, the Reorganized Debtors filed the Notice of Sufficiency Hearing with Respect to Debtors' Objection to Proofs of Administrative Expense Claim Number 19715 (Notice of Sufficiency Hearing -- ACE American Insurance Company) (Docket No. 21993), scheduling a sufficiency hearing on Claim 19715 (the "Claim 19715 Sufficiency Hearing") for December 18, 2012.

WHEREAS, on December 7, 2012, the Reorganized Debtors filed the Notice of Sufficiency Hearing with Respect to Debtors' Objection to Proofs of Administrative Expenses Claim Number 19716 (Notice of Sufficiency Hearing – Pacific Employers Insurance Company) (Docket No. 22001), scheduling a sufficiency hearing on Claim 19716 (the "Claim 19716 Sufficiency Hearing," and together with the Claim 19715 Sufficiency Hearing, the "Sufficiency

6

Hearings") for January 24, 2013.

WHEREAS, each of the Sufficiency Hearings was adjourned several times. On September 18, 2013, the Reorganized Debtors filed the Notice of Adjournment of Sufficiency Hearing with Respect to Reorganized Debtors' Objections to Proofs of Administrative Expense Claim Number 19715 and 19716 ("Notice of Adjournment of Sufficiency Hearing- ACE American Insurance Company and Pacific Employers Insurance Company") (Docket No. 22154), adjourning each of the Sufficiency Hearings to November 14, 2013.

WHEREAS, on September 9, 2013, the Reorganized Debtors filed the Notice of Claims Objection Hearing with Respect to Reorganized Debtors' Objection to Proofs of Claim Number 13018, 13080, and 13309 and Proofs of Administrative Expense Claim Numbers 18900, 19192, 19270, 19633, and 19671 (ACE American Insurance Company, Pacific Employers Insurance Company, and Illinois Union Insurance Company) (Docket No. 22143), scheduling an evidentiary hearing on the merits of the Policy Claims for November 14, 2013.

WHEREAS, the Claims are secured by a letter of credit for the benefit of Claimants in the amount of $12,359,616 (as amended, confirmed, supplemented or replaced and the proceeds thereof, the "Letter of Credit" and together with any credits, adjustments, return premiums, funds or other amounts of any kind, the "Collateral").

WHEREAS, to resolve the Objections with respect to the Claims, the Reorganized Debtors and the Claimants entered into this Stipulation. Pursuant to this Stipulation, the Reorganized Debtors and the Claimants, agreed that (i) Claim 13018, Claim 13080, Claim 13309, Claim 18900, Claim 19192, Claim 19270, Claim 19671, and Claim 19716 should be disallowed and expunged and (ii) Claim 19633 should be allowed in the amount of $7,440,673 and Claim 19715 should be allowed in the amount of $500,000, all as set forth in

7

more detail below, in full and final satisfaction of such claims in accordance with the terms of the Modified Plan.

NOW, THEREFORE, the Reorganized Debtors and the Claimants, stipulate and agree as follows:

1. The Recitals set forth above are incorporated herein as though fully set forth at length.

2. This Stipulation shall become effective on the later of the date that is: (i) fifteen (15) days after the Court's entry of this Stipulation or, (ii) thereafter, the first date on which the Stipulation is not subject to any stay or appeal (the "Effective Date"). Claimants may waive the requirements of subsection (ii) above, in writing, in their sole discretion.

3. On the Effective Date, Claim 13018, Claim 13080, Claim 13309, Claim 18900, Claim 19192, Claim 19270, Claim 19671, and Claim 19716 are hereby disallowed and expunged in their entirety (with disallowance of Claims 19671 and 19716 being subject to the terms set forth in paragraphs 4 and 5 below).

4. On the Effective Date, Claims 19633 and 19671 shall be considered consolidated for purposes of this Stipulation, and claim 19671 shall be disallowed as duplicative after consolidation. Consolidated claim 19633 shall be allowed against Delphi in the amount of $**7**,440,673.

5. Claims 19715 and 19716 shall be considered consolidated for purposes of this Stipulation, and claim 19716 shall be disallowed as duplicative after consolidation. Consolidated claim 19715 shall be allowed against Delphi in the amount of $500,000 (the "Michigan Litigation Settlement Amount").

6. The Claimants shall retain $7,940,673 of the Collateral (the "Settlement

8

Amount" and the "Retained Collateral") in full and final satisfaction of (i) consolidated Claim 19633 (subject to paragraph 8 hereof), and (ii) consolidated claim 19715 (subject to paragraph 7 hereof). On the Effective Date, the Debtors forever waive and release all of their rights, title and interest in and to the Retained Collateral (except for (i) the Michigan Litigation Settlement Amount (and in the case thereof, only subject to the terms set forth in paragraph 7 herein), and/or (ii) any Collateral Return Amount for auto liability and general liability claims (subject to the terms of, and as defined in, paragraph 8 hereof)).

     7.  To the extent that the November 1, 2012 order granting summary judgment in favor of ACE and Pacific in the ACE-Michigan Litigation, or such other order determining that neither the Claimants nor the Reorganized Debtors are liable for workers' compensation obligations in the ACE-Michigan Litigation, becomes a final, non-appealable order, the Debtors and Claimants agree that, consistent with Rule 60(b) of the Federal Rules of Civil Procedure and 11 U.S.C. § 502(j), "cause" exists for reconsideration and disallowance of the previously-allowed consolidated claim number 19715, and expressly consent to the disallowance of such claim, in full, at such point in time. This Stipulation shall be self-effectuating and shall be sufficient to accomplish such reconsideration and disallowance without further order of the Court. At such time, the Claimants shall pay to the Reorganized Debtors (or, if applicable, their successors or designees, including post-dissolution DPH Holdings), within fifteen (15) business days after receipt of a written request for payment, the Michigan Settlement Amount. Claimants shall not be responsible for the payment to the Reorganized Debtors, their designees, or such other party lawfully authorized to accept payment on their behalf, of any interest. For the avoidance of doubt, if, under the terms of this Stipulation, the Claimants do not have to return the Michigan Settlement Amount to the Debtors, the Debtors forever waive and

9

Pg 10 of 15

release all of their rights, title and interest in and to the Michigan Settlement Amount.

        8.      On and after the Effective Date, for a period of two years beginning on the Effective Date (the "Two Year Period"), Claimants shall use up to $2,471,542 of the Settlement Amount described in paragraph 6 for the payment of certain auto liability and general liability claims that have been or may be asserted against the Policies (the "Auto Liability and General Liability Collateral").  During the Two Year Period, Claimants may pay claims if and as necessary pursuant to the terms of the auto liability and general liability policies.  At the end of the Two Year Period, Claimants and the Reorganized Debtors (or, if applicable, their successors or designees, including post-dissolution DPH Holdings) shall negotiate in good faith to reach agreement, in accordance with the terms of the ACE Insurance Program, as to (i) any amount of the Auto Liability and General Liability Collateral that should be retained by Claimants for the payment of future auto liability and general liability exposure or claims, and (ii) the amount of any return of Auto Liability and General Liability Collateral funds (the "Collateral Return Amount") that should be paid to the Reorganized Debtors (or, if applicable, their successors or designees, including post-dissolution DPH Holdings), at the end of the Two Year Period. Claimants shall not be responsible for the payment to the Reorganized Debtors (or, if applicable, their successors or designees, including post-dissolution DPH Holdings), of any interest on account of the Auto Liability and General Liability Collateral or the Collateral Return Amount. In the event that no agreement regarding the Collateral Return Amount can be reached following the conclusion of the Two Year Period, the Collateral Return Amount shall be determined in accordance with the ACE Insurance Program.

        9.      For the avoidance of doubt: (i) on the Effective Date, the $4,969,131 of the Settlement Amount designated for claims, costs and related fees and expenses arising under

the Deductible Policies which provide coverage for workers' compensation claims subject to their terms and conditions (and the Insurance Agreements to the extent they are related thereto) shall become property of the Claimants, and the Debtor Released Parties (defined below) shall have no right, title or interest therein, and (ii) any amount of the Auto Liability and General Liability Collateral that is retained by the Claimants after the Two Year Period (in accordance with the ACE Insurance Program and this Stipulation), shall be free and clear of any right, title, or interest by the Reorganized Debtors (or, if applicable, their successors or designees).

        10. On or after the Effective Date, Claimants shall draw on the Letter of Credit in the amount of $7,940,673, and the Reorganized Debtors expressly consent to Claimants doing so. To the extent necessary, the Reorganized Debtors shall assist or support Claimants' request to draw on the Letter of Credit. Claimants hereby consent to a reduction of the Letter of Credit as of the Effective Date to the amount to be drawn by Claimants in accordance with this Stipulation ($7,940,673), and shall take reasonable steps to assist or support the Reorganized Debtors in documenting such reduction of Collateral with the issuing bank so that the reduction occurs as soon as is practicable on or after the Effective Date. After the Letter of Credit has been drawn by Claimants in the amount of $7,940,673, Claimants shall release the Letter of Credit to the issuing bank and thereafter shall have no further right to the remaining Letter of Credit. Other than as is set forth above, the disposition of the remaining Letter of Credit or any collateral held by the bank that issued the Letter of Credit (after the $7,940,673 draw down by Claimants) shall be a matter addressed by the Reorganized Debtors and the issuing bank.

        11. On and following the Effective Date, (i) the Claimants have the right to handle, administer, adjust, settle and/or pay any claim covered by the ACE Insurance Program and the defense costs and other costs associated therewith, (ii) the Claimants have the right to

11

draw against and hold and/or apply the Collateral and take other actions without further notice to the Debtors or order of the Court and (iii) the automatic stay imposed by Section 362 of the Bankruptcy Code and any injunction or release provision in the Modified Plan, order or other document (collectively, the "Stays"), if and to the extent applicable, shall be lifted for the foregoing purposes without further order of the Court.  For the avoidance of doubt, nothing in this Stipulation (i) alters or amends the terms and conditions of the ACE Insurance Program, (ii) creates or permits a direct right of action by any third party claimant against the Claimants, (iii) precludes or limits, in any way, the rights of the Claimants to contest and/or litigate the existence, primacy and/or scope of available coverage under the ACE Insurance Program or (iv) grants, or should be deemed to grant, any third party claimant relief from the Stays, or if applicable, to proceed with their claims without first seeking and receiving relief the Court from the Stays, to the extent applicable.

      12.    Nothing herein shall be construed as an admission by the Debtors, the Reorganized Debtors, or the Claimants of any liability relating to the Claims.

      13.    Other than with respect to any right or privilege to draw upon or apply Collateral and the rights enumerated in paragraphs 7, 8, 11 and 15 of this Stipulation, this Stipulation fully settles and satisfies the Claims, and Claimants further waive and release, against each of the Debtors and the Reorganized Debtors, and each of their former and current officers, directors, and agents (collectively, the "Debtor Released Parties"), any right to assert any other claim, cause of action, demand, or liability of every kind and nature whatsoever, including those arising under contract, statute, or common law, whether or not known or suspected at this time, which the Claimants have, ever had, or hereafter shall have against any of the Debtor Released Parties based upon, arising out of, related to, or by reason of any event, cause, thing, act,

12

statement, or omission occurring before this Stipulation being "so ordered" by the Court. Notwithstanding the foregoing, the Claimants specifically reserve any action based on a failure to meet a requirement of this Stipulation.

14.    The Debtor Released Parties waive and release any right to assert any other claim, cause of action, demand or liability of every kind and nature whatsoever, including those arising under contract, statute or common law, whether or not known or suspected at this time, which the Debtor Released Parties have, ever had, or hereafter shall have against Claimants, and each of their former and current officers, directors, agents, affiliates, and subsidiaries, based upon, arising out of, related to, or by reason of any event, cause, thing, act statement, or omission occurring before this Stipulation being "so ordered" by the Court. Notwithstanding the foregoing, the Debtor Released Parties specifically reserve any action based on a failure to meet a requirement of this Stipulation, including payment of the Michigan Settlement Amount.

15.    The Reorganized Debtors and the Claimants agree that the releases and other rights or protections provided by this Stipulation, including but not limited to the releases set forth in paragraphs 13 and 14, <u>do not</u> extend to or in any way impact the rights and/or obligations of the Reorganized Debtors or the Claimants relating to or in any way arising out of any insurance policies (i) issued by the Claimants during the period beginning on or after October 6, 2009 to each, any, or all of the following: (a) the Reorganized Debtors, (b) Delphi Corporation, (c) New Delphi 1 LLC, or (ii) to the extent there is in effect any directors and officers liability policies providing for any "tail" coverage for the Debtors' directors and officers, which policies shall remain subject to the terms, conditions, and exclusions thereof.  The releases

and other terms of this Stipulation do not and are not intended to affect the terms and conditions under Policy No. G2445857A.

16. If any provision of this Stipulation is held to be illegal, void or unenforceable, such provision shall be of no force or effect. However, the illegality or unenforceability of such provision shall have no effect upon, and shall not impair the legality or enforceability of, any other provision of this Stipulation. Notwithstanding the foregoing, upon any finding by any court of competent jurisdiction that any release provided for in this Stipulation is illegal, void or unenforceable (the "Unenforceable Release"), the parties agree, promptly upon the request of the other party hereto, to execute a release that is legal and enforceable and provides a release most similar in scope and in fact to the Unenforceable Release without itself being illegal, void or unenforceable.

17. The terms of this Stipulation shall be enforceable by, binding upon, and inure to the benefit of, the successors and assigns (and, if applicable, designees) of the Reorganized Debtors, the Debtor Released Parties, and the Claimants.

[*Remainder of Page Intentionally Left Blank*]

18.     This Court shall retain original and exclusive jurisdiction to adjudicate any disputes arising from or in connection with this Stipulation.

IT IS HEREBY SO ORDERED in White Plains, New York, this 20th day of November, 2013

    /s/Robert D. Drain
UNITED STATES BANKRUPTCY JUDGE

AGREED TO AND
APPROVED FOR ENTRY:

| /s/ John K. Lyons | /s/ William C. Heuer |
|---|---|
| John Wm. Butler, Jr. | William C. Heuer |
| John K. Lyons | Wendy M. Simkulak |
| Ron E. Meisler | DUANE MORRIS LLP |
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | 1540 Broadway, 14th Floor |
| 155 North Wacker Drive | New York, NY 10036-4086 |
| Chicago, Illinois 60606 | |
| – and – | – and – |
| Four Times Square | Margery N. Reed |
| New York, New York 10036 | Lewis R. Olshin |
| | 30 South 17th Street |
| Attorneys for DPH Holdings Corp., et al., Reorganized Debtors | Philadelphia, Pennsylvania 19103-4196 |
| | Attorneys for ACE American Insurance Company, Pacific Employers Insurance Company, and Illinois Union Insurance Company |

15