Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 05-44481(RDD)

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   DPH HOLDINGS CORP., ET AL.,

8

9        Debtors.

10

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13                  U.S. Bankruptcy Court

14                  300 Quarropas Street

15                  White Plains, New York

16

17                  November 14, 2013

18                  10:05 AM

19

20   B E F O R E :

21   HON ROBERT D. DRAIN

22   U.S. BANKRUPTCY JUDGE

23

24

25

1   Hearing re:  Notice of Agenda Proposed Eighty-Sixty Omnibus

2   Hearing Agenda

3

4   Hearing re:  Motion to Authorize Reorganized Debtors Motion

5   for Order Pursuant to 11 U.S.C. 105(a) and 1142 and Fed. R.

6   Bankr. P. 3020(d) Authorizing the Reorganized Debtors to

7   Dispose of Non-Essential Records

8

9   Hearing re:  Debtors Motion to Compel

10

11  Hearing re:  Notice of Agenda Proposed Sixty-Fourth Claims

12  Hearing Agenda

13

14  Hearing re:  Claims Objection Hearing with Respect to

15  Reorganized Debtors Objection to Proof of Administrative

16  Expense Claim Number 19571 (Joe N. Swan)

17

18  Hearing re:  Sufficiency Hearing Regarding To Proofs Of

19  Administrative Expense Claim Number 19715 And 19716

20

21  Hearing re:  Claims Objection Hearing with Respect to

22  Reorganized Debtors Objection to Proofs of Claim Nos. 13018,

23  13080, and 13309 and Proofs of Administrative Expense Claim

24  Nos. 18900, 19192, 19270, 19633 and 19671 (Ace American

25  Insurance Company, Pacific Employers Insurance Company, and

1    Illinois Union Insurance Company)

2

3    Hearing re:  Claims Objection Hearing Regarding (i) Proof of

4    Claim Number 15785 and (ii) Proofs of Administrative Expense

5    Claim Numbers 18956, 19539, and 19786

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dawn South

Page 4

```
 1   A P P E A R A N C E S :

 2   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

 3        Attorneys for the Debtors

 4        155 North Wacker Drive

 5        Chicago, IL 60606-1720

 6

 7   BY:  BRANDON M. DUNCOMB, ESQ.

 8        LOUIS S. CHIAPPETTA, ESQ.

 9

10   TOGUT, SEGAL & SEGAL LLP

11        Attorney for the Debtors

12        One Penn Plaza

13        New York, NY 10119

14

15   BY:  STEVEN S. FLORES, ESQ.

16

17   JONES DAY

18        Attorney for the Debtors

19        51 Louisiana Avenue, N.W.

20        Washington, D.C. 20001-2113

21

22   BY:  KEVIN P. HOLEWINSKI, ESQ.

23

24

25
```

Page 5

```
1   KING & SPALDING LLP

2         Attorneys for General Motors LLC

3         1185 Avenue of the Americas

4         New York, NY 10036-4003

5

6   BY:   ARTHUR STEINBERG, ESQ.

7         SCOTT DAVIDSON, ESQ.

8

9   DUANE MORRIS LLP

10        Attorneys for The ACE Companies

11        190 South LaSalle Street

12        Suite 3700

13        Chicago, IL 60603-3433

14

15  BY:   LEWIS R. OLSHIN, ESQ. (TELEPHONIC)

16        WILLIAM HEUER, ESQ. (TELEPHONIC)

17

18  U.S. DEPARTMENT OF JUSTICE

19        Attorney for the U.S. Trustee

20        86 Chambers Street

21        New York, NY 10007

22

23  BY:   CRISTY IRVIN PHILLIPS, ESQ.

24

25
```

1   BUTZEL LONG

2        150 West Jefferson

3        Suite 100

4        Detroit, MI 48226

5

6   BY:  CHYTHIA J. HAFFEY, ESQ.

7

8   ALSO PRESENT TELEPHONICALLY:

9   JAMES SUMPTER

10  CELESTE GILL

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 7

1              P R O C E E D I N G S

2              THE COURT:  Please be seated.  Okay, good morning.

3      In re DPH Holdings.

4              MR. DUNCOMB:  Good morning, Your Honor, Brandon

5      Duncomb, Skadden, Arps on behalf of reorganized debtors.

6      With me at the table is my colleague, Louis Chiappetta and

7      from Togut, Segal & Segal, Neil Berger.

8              THE COURT:  Good morning.

9              MR. DUNCOMB:  So unless you wanted to proceed

10     differently I thought it made sense to do the claims agenda

11     first and then jump over to the omni.

12             THE COURT:  Okay.  That's fine.

13             MR. DUNCOMB:  So I'm happy to report that all of

14     the remaining claims are represented on this claims agenda,

15     and in each case the claims are settled and settled in

16     principal.

17             The first matter on the agenda is the Mississippi

18     workers' compensation claim filed on behalf of Joe Swan,

19     it's claim 19571.

20             On the agenda we've had that reflected as being

21     sent to Your Honor, and since then you've entered it, so

22     thank you.

23             Matters 2 and 3 on the agenda relate to the ACE

24     suite of claims.

25             For those claims we have a settlement in

Page 8

```
 1    principal.  We expect to have that handed up to Your Honor

 2    in the next couple of days.  We're very close.

 3              In the meantime it's reflected it's contested,

 4    we'd ask that it be adjourned while we finalize the

 5    stipulation.

 6              THE COURT:  Okay.  And this resolves the Michigan

 7    claims as part of that process?

 8              MR. DUNCOMB:  All of the ACE claims, yes.

 9              THE COURT:  Okay.

10              MR. DUNCOMB:  So there's two sets of the ACE

11    claims, one relates to the ongoing Michigan ACE litigation,

12    and we've resolved that as well.

13              THE COURT:  All right.  So I entered the wind-down

14    order in August and it contemplated hearings on claim

15    objections if they hadn't been resolved, but the parties are

16    comfortable enough at this point that you have an agreement

17    on these that it's unlikely I would have a hearing in

18    December on this.

19              MR. DUNCOMB:  Very unlikely.  The folks from ACE

20    I'm sure will jump all over me if I'm misstating that, but I

21    think within the next couple of days, I mean if something

22    were to go horribly wrong I guess we'd come to you and seek

23    to have -- do something on an expedited briefing schedule.

24              THE COURT:  Okay.

25              MR. DUNCOMB:  But I don't know that's going to be
```

1    an issue.

2            THE COURT:  All right, very well.

3            MR. DUNCOMB:  And then last, but certainly not

4    least, we have the environmental claims.

5            Happy to report we've settled those as well.  We

6    have a settlement that resolves all the remaining

7    environmental claims and the reorganized debtors' other

8    environmental obligations.

9            The settlement -- the procedure here is a little

10   bit different than I'm sure you're used to seeing our claims

11   being presented, at least since we've emerged, and from the

12   reorganized debtors' perspective it's because, you know, we

13   still view, you know, our obligations, we have 11.3 of the

14   plan that allows us to settle and compromise claims, kind of

15   without the Court oversight, but here there's environmental

16   issues that we have other processes that we have to go

17   through, and that entails the notice of lodging, which is

18   how the stipulation was presented to Your Honor, and then

19   there'll be a 15-day public comment period under the

20   settlement.  After the public comment period the government

21   will be filing a motion for approval.  And then, you know,

22   if the public comment period expires, there are no comments

23   or the government is comfortable that comments don't cause

24   it to change its mind, that motion would seek to have the

25   stipulation entered as is.  If the public comments prove

Page 10

1   otherwise the motion will say something different.

2           THE COURT:  Okay.  I think I followed that, but

3   just to be sure, I've read the proposed stipulation.  It

4   contemplates that process and then has a signature line for

5   the Court, but as I read it that will be submitted to me

6   after that process is done, even the stipulation

7   contemplates the process?  Is that how it is or will there

8   be two stipulations?

9           MR. DUNCOMB:  No, you're exactly right, that is

10  the stipulation.

11          THE COURT:  Okay.

12          MR. DUNCOMB:  Unless the public comment period

13  requires some modifications.

14          THE COURT:  All right.

15          MR. DUNCOMB:  The motion -- timing is going to be

16  tight, but the way that the 15-day comment period runs it

17  runs from -- we have the notice of lodging, but the 15-day

18  public comment period will run from the date it gets

19  published to the federal register.  I understand that that's

20  going to be by tomorrow.  And so that puts us to about

21  December 2nd, on or about, when we would have to motion

22  filed, and there will be other things that we have to

23  accomplish between December 2nd and the case closing.

24          So the way I think that would work is how the

25  motion would be presented on an expedited basis, order to

Page 11

```
 1    show cause.  If there are no public comments or there's

 2    nothing that really needs to be dealt with I guess we'd

 3    welcome (indiscernible - 00:05:00) feedback as to how that

 4    should be handled, because I don't think --

 5                  THE COURT:  Okay.

 6                  MR. DUNCOMB:  -- we need to necessarily have a

 7    hearing.

 8                  THE COURT:  I think -- well, I really don't like

 9    orders to show cause because people think, even though I try

10    to make it clear that this isn't the case, that it somehow

11    shifts the burden.

12                  So I would prefer it if there are no comments that

13    would cause the parties to change their mind that the

14    hearing on this be scheduled for the next omnibus hearing,

15    which is either the 18th or 19th I think of December.

16                  MR. DUNCOMB:  There is an omnibus hearing on the

17    18th.

18                  THE COURT:  18th.

19                  MR. DUNCOMB:  But the timing issue I guess that

20    presents from the reorganized debtors' standpoint and under

21    the case closing order is that on the 13th we're required to

22    enter a notice that says all of the claims have been

23    resolved and that the DPH Holdings entity has been

24    dissolved.  Those are two of the things that we contemplated

25    having done.  So that notice gets filed on the 13th.
```

Page 12

1          Also as part of the case closing order there's a

2     provision that says DPH can't resolve until all of the

3     claims are administered, and that won't happen of course

4     until the stipulation is entered resolving the environment

5     claims.

6          So working back --

7          THE COURT:  So you'd rather do it on the 12th

8     then?

9          MR. DUNCOMB:  Yes.

10          THE COURT:  All right.  Well, I have -- you know,

11     I've read the stipulation, it's obviously the subject of

12     extensive negotiations by many parties at arms length.

13          I would normally be satisfied doing that by notice

14     of presentment, but given the timing issue I think you

15     probably ought to schedule a hearing for the 12th.

16          MR. DUNCOMB:  The 12th or I guess maybe we have to

17     wait until the public comment period expires.

18          But another way we can handle is if there's no

19     comments that come in I don't know if we would need a full

20     hearing, perhaps even a hearing over the telephone would

21     work and we could do it on a more expedited basis.

22          THE COURT:  Well you're going to file it on the

23     2nd?

24          MR. DUNCOMB:  There'd be a -- yeah, a motion on

25     the 2nd.

1          THE COURT:  So let me go back to the other point I

2     made.  I don't see how after the 15 days you can have it

3     before your December 13th day.  It doesn't -- the timing

4     doesn't work.  That's why I thought it would be the 18th.

5          MR. DUNCOMB:  Okay.  I mean I was thinking perhaps

6     on an expedited basis, but --

7          THE COURT:  Right.

8          MR. DUNCOMB:  -- we could also do it the 12th.

9          THE COURT:  Well no, but the comment period won't

10    be done by then.

11         MR. DUNCOMB:  No, the public comment period will

12    be done by November 29th or 30th.

13         THE COURT:  No, I thought you said they were going

14    to file it on the 2nd.

15         MR. DUNCOMB:  The motion, that's at the

16    conclusion --

17         THE COURT:  No, I thought they were going to do

18    the CFR notice on the 2nd.

19         MR. DUNCOMB:  No, I'm sorry, let me walk back.

20         So we have the November 8th notice of lodging.

21         THE COURT:  Right.

22         MR. DUNCOMB:  November 15th that settlement makes

23    us weigh the federal register.

24         THE COURT:  Oh, okay.  I'm sorry, that's --

25         MR. DUNCOMB:  And then the public comment period

Page 14

1    runs from the 15th for 15 days.

2             THE COURT:  I see.  So it ends on the 2nd.

3             MR. DUNCOMB:  That -- it'll end --

4             THE COURT:  I got it.

5             MR. DUNCOMB:  -- before the 2nd, we can file the

6    motion on the 2nd, which is the first business day after the

7    Thanksgiving weekend.

8             THE COURT:  All right.  Well, I still think given

9    the shortened notice issue you probably should have a

10   hearing, and my recommendation would be that you schedule --

11   you seek as part of that notice to have the hearing on

12   shortened notice, and that would be the first thing I would

13   consider at the hearing.

14            Do you have a view on this, Mr. Steinberg?

15            MR. STEINBERG:  Your Honor, this procedure is

16   foreign to me.  I had asked the questions before the

17   hearing.

18            My understanding is that under the plan the debtor

19   actually doesn't need a hearing if there's a resolution of a

20   claim so that this purpose of a hearing is not because the

21   debtor is seeking such relief.

22            I'm not sure if you've gone through the comment

23   period and the government wants to go forward with the

24   stipulation as written why you need a hearing at all as

25   compared to just presenting it to Your Honor after the

Page 15

1    comment period is over.

2              So I may have misunderstood.

3              THE COURT:  Well, I thought the debtors wanted a

4    hearing.

5              MR. DUNCOMB:  The reorganized debtors don't

6    need --

7              THE COURT:  You don't -- you don't feel --

8              MR. DUNCOMB:  -- don't need the hearing.

9              THE COURT:  All right.

10             MR. DUNCOMB:  I think it's for purposes of the

11   environmental process.

12             THE COURT:  I mean there are a couple of findings

13   in the stipulation, but I -- at least based on what I've

14   read so far, unless someone objected, I'm comfortable making

15   those findings.  They're not findings under the Bankruptcy

16   Code, they're findings under other federal statutes.

17             MR. DUNCOMB:  Right.

18             THE COURT:  But --

19             MR. DUNCOMB:  And one of the reasons we --

20             THE COURT:  -- I leave it up to you.  I mean I

21   don't think I need a hearing.

22             MR. DUNCOMB:  Great.  So I --

23             THE COURT:  But you need to -- the notice needs to

24   give people I guess an opportunity to object, and that's

25   been given, right, as part of the comment process?

```
 1              MR. DUNCOMB:  That's right, and that's also --

 2              THE COURT:  Right.

 3              MR. DUNCOMB:  -- a part of our thinking in having

 4    the notice of lodging on file before the hearing today so it

 5    was out -- out in the public and would give Your Honor and

 6    others a chance to come into court today as well.

 7              THE COURT:  Okay.  All right.  So you can do it --

 8    you can do it on -- you can just submit the order like you

 9    did with the Mississippi stipulation.

10              MR. DUNCOMB:  Thank you, Your Honor.

11              THE COURT:  Okay.

12              MR. DUNCOMB:  So that's it for the claims agenda.

13              Turning to the omnibus agenda the first matter is

14    the reorganized debtors' motion to dispose of non-essential

15    records.

16              Here we're just trying to address, you know, a

17    voluminous achieve of virial documents going back a long

18    time before the reorganized debtors closed the cases and

19    otherwise kind of wind up their affairs.

20              Now that all of the claims are resolved or nearly

21    resolved DPH's purpose is coming to an end.  These records

22    are obsolete.

23              MR. SUMPTER:  Excuse me, Your Honor, this is James

24    Sumpter.  I wonder if it's possible to get Mr. Duncomb to

25    get a little closer to the microphone.  I'm having
```

Page 17

1    difficulty hearing him just from a volume level.

2              THE COURT:  Okay.

3              MR. DUNCOMB:  Is that better?

4              MR. SUMPTER:  I think so.

5              THE COURT:  Okay.  All right.

6              MR. DUNCOMB:  So right now we're storing about

7    13,000 boxes off site, annual cost is about $60,000, and we

8    think we'll be able to dispose of a lot of those.

9              What we're providing for in the motion is that

10   we'd retain records -- medical records and exposure records

11   as required by OSHA, documents that are subject to

12   litigation holds and other document retention agreements.

13             THE COURT:  When you say we after the dissolution

14   who is we?  Who would be retaining those essential records?

15             MR. DUNCOMB:  So what we're doing is we're going

16   to prepay the off-site vendor, so they would continue to

17   store everything that doesn't get destroyed, and you know,

18   there'll be a run off for some of those records.  For

19   example, the OSHA records you have a 30-year storage

20   requirement.  So it'd start to run those off on a yearly

21   basis that lapse for the records.

22             And as part of the Delaware process there's at

23   least a three-year wind-up period and we will make a

24   provision to have people in place to be administering during

25   that process.

1        THE COURT:  So -- so just to play it out, say

2    someone wants an OSHA record how would they go about getting

3    it and how would you be assured that, you know, it isn't

4    lost when they can for it?  I.e., it doesn't walk off with

5    them?

6        MR. DUNCOMB:  Well, during the wind-up period

7    it'll be the folks running the wind up.  I think at the end

8    of the wind up and when their duties expire they'll have to

9    find a way to address that.

10        There used to be a provision I believe under the

11    OSHA regulations that allowed you to turn it over to the

12    government, I don't think that's there anymore, but if it's

13    just everything can be reduced to a CD that might be a way

14    to handle it.

15        THE COURT:  Okay.  And the wind-up period is for

16    how long again?

17        MR. DUNCOMB:  Up to three years.  There's a notice

18    that'll go up of the dissolution similar to the bankruptcy

19    claims process, people have a chance to come in after 60

20    days, assert a claim.  If there's a dispute between the DPH

21    Holdings view and the claimants view of those claims people

22    can come to the Chancery Court for a period of three years

23    and initiate litigation to resolve that dispute.

24        THE COURT:  Okay.

25        MR. DUNCOMB:  Since we filed the motion we did get

Page 19

1    a few informal comments both from the United States and from

2    ACE, so we've made some revisions to the proposed order.  I

3    have black lines if I can approach.

4             THE COURT:  Okay.

5             MR. DUNCOMB:  So the changes here provide for I

6    guess three additional categories of documents to be

7    retained.

8             The first is the environmental records that we're

9    required to turn over to the government under the

10   environmental stipulation.

11            All other environmental records will be retained

12   for a period of time to allow the United States to come in

13   and review and retain, you know, the non-privileged records

14   so that they're not -- they're not lost.

15            And then for ACE we're retaining anything that

16   relates to workmen's compensation or employer liability

17   claims that are insured by ACE.

18            And then otherwise the only objection to the claim

19   was the objection by Mr. Sumpter.

20            THE COURT:  Well let me make sure, on the second

21   point this paragraph 5 doesn't limit it to claims that were

22   insured by ACE, it just says -- you know --

23            MR. DUNCOMB:  I guess we could clarify that.  The

24   debtor insures -- the debtors only insurer was ACE.

25            THE COURT:  It's the only one.

1           MR. DUNCOMB:  Yeah.

2           THE COURT:  All right.  Okay.

3           MR. DUNCOMB:  It's reliance for a very, very small

4   period, but I don't think that there's anything that's

5   gone --

6           THE COURT:  And they were all insured.  All of

7   these workers' comp and employer's liability claims were the

8   subject of insurance?

9           MR. DUNCOMB:  Not all of the reorganized debtors,

10   there were self-insured states and there were insured

11   states, so this would only apply to claims in the uninsured

12   states.

13           THE COURT:  Okay, well, it doesn't say that

14   either.  It says and/or as opposed to --

15           MR. DUNCOMB:  I'll have to talk to ACE and make

16   sure that they're comfortable with the language, but I think

17   we can clarify that.

18           THE COURT:  Okay.  And that's because you're

19   assigning and at least in part -- I mean the policy

20   continues and in one case you're assigning it to

21   Mississippi, so they have an ongoing obligation.

22           MR. DUNCOMB:  There's an ongoing obligation there,

23   and as part of the -- I don't want to get too far ahead of

24   myself -- but as part of the resolution of the ACE claims

25   they would be taking over the continued administration --

```
 1              THE COURT:  Right.

 2              MR. DUNCOMB:  -- of the claims that they're

 3    covering.

 4              THE COURT:  Right.  Do you want authorization just

 5    to turn those records over to ACE?

 6              MR. DUNCOMB:  That essentially is what's going to

 7    happen.

 8              THE COURT:  Okay.

 9              MR. DUNCOMB:  We have a third-party administrator

10    that handles most of that, so it's not, you know, the

11    reorganized debtor itself that's holding those records, most

12    of those records are either with our third-party

13    administrator --

14              THE COURT:  So what's going to happen is you're

15    not being authorized to destroy them now, instead what's

16    going to happen is in practical terms instead of destroying

17    them you're going to turn them over to ACE.

18              MR. DUNCOMB:  That's right.

19              THE COURT:  Or the administrator.

20              MR. DUNCOMB:  Or the administrator.

21              THE COURT:  Okay.  All right.

22              MR. DUNCOMB:  So I guess we can send you a

23    proposed --

24              THE COURT:  And the same thing with -- with the

25    records pertaining to the Ohio and Michigan properties that
```

Page 22

```
 1    are the subject of the environmental stipulation.

 2              MR. DUNCOMB:  That's exactly right.

 3              THE COURT:  It's going -- those records rather

 4    than being destroyed they're going to be turned over to the

 5    people that are administering that property.

 6              MR. DUNCOMB:  There are clarifying comments just

 7    to make sure that --

 8              THE COURT:  Okay.

 9              MR. DUNCOMB:  -- you know, in 30 days before those

10    go effective that we don't -- don't burn our buns.

11              THE COURT:  Right.  Okay.

12              MR. DUNCOMB:  So I mean Mr. Sumpter has an

13    objection so I guess I can --

14              THE COURT:  Right.

15              MR. DUNCOMB:  -- turn it over to him.

16              THE COURT:  And, Mr. Sumpter, I've read your

17    objection.  Have you seen the debtors' reply?

18              MR. SUMPTER:  No, I have not.

19              THE COURT:  Okay.  I just want to -- let me

20    summarize it for you then.

21              I think the key point is a footnote in which they

22    say that they do not intend to dispose of the records which

23    they own or control that relate to the first Indiana action.

24    So they're not going dispose of those even though they're

25    not a party to it.
```

1          And then they assert that the records pertaining

2     to the second Indiana action, since that's -- they assume

3     you're going to appeal it.  So since that's ongoing

4     litigation they won't dispose of those either.

5          Is that a fair summary of if debtors' position?

6          MR. DUNCOMB:  That's right.  I guess for the first

7     category of the Indiana litigation our position would be

8     that we don't have any --

9          THE COURT:  You don't have to --

10         MR. DUNCOMB:  -- obligation --

11         THE COURT:  -- but you're going to.

12         MR. DUNCOMB:  But yeah, our intention is not to do

13    anything with those files, it'll -- it'll be turned over to

14    I want to call them new Delphi, Delphi Automotive LLP, we

15    just can't vouch for what they will or will not do.

16         THE COURT:  Right.  So they say that -- I mean

17    this isn't a discovery response, they roughly say that -- or

18    generally say that they don't have a lot of these records,

19    that they're in the possession of other parties at this

20    point, but to the extent they have them with regard to the

21    second Indiana action they're not going to destroy them

22    because of the pending appeal.

23         And on the first one, even though they're not a

24    party and they believe they don't have an obligation to hold

25    them they will hold them or they won't destroy them and

1    they're going to be turned over to Delphi Automotive LLP.

2            So I think that resolves your objection, but I'm

3    happy to hear you on it.

4            MR. SUMPTER:  Well, I'm pretty happy with that, as

5    long as it, you know, comprehends the things that they

6    would, you know, keep under the idea of things that they

7    think are related to the case.

8            THE COURT:  Right.

9            MR. SUMPTER:  I'm talking about that they -- that

10   comprehends those things I have in the list.  Other than

11   that I'm pretty happy.

12           THE COURT:  Okay.  Well they make it clear they

13   don't think they have everything now that's on your list --

14           MR. SUMPTER:  Right.

15           THE COURT:  -- but as I take it to the extent they

16   do have them they're not going to destroy them.

17           MR. SUMPTER:  Okay.

18           MR. DUNCOMB:  That's right, Your Honor.

19           THE COURT:  Okay.  All right.

20           So I mean the record is clear on that.  I think

21   that you could either put that in the order also or

22   alternatively you can send a letter to Mr. Sumpter

23   confirming it.  Either way.

24           MR. DUNCOMB:  Would it work to send him a letter

25   attaching the reply and saying we intend to live up to what

1    we said in the reply, something to that effect?

2            THE COURT:  Yeah, that's fine.  Okay.  Because I

3    think the reply speaks for itself on this point and we've

4    clarified what it means on the record.

5            MR. DUNCOMB:  So that objection is overruled?

6            THE COURT:  Okay.  All right.  So no one else

7    having anything to say on this motion and obviously given

8    the eminent winding up of this case the debtors need to deal

9    with roughly 13,000 boxes of records, the vast majority of

10   which are no longer required, I'll grant the motion.

11           MR. DUNCOMB:  Thank you, Your Honor.

12           THE COURT:  Okay.

13           MR. DUNCOMB:  The next one --

14           THE COURT:  So after you run the -- that

15   paragraph 5 by ACE, and you know, get clarity on that

16   provision you can email the order to chambers.

17           MR. DUNCOMB:  Thank you.

18           THE COURT:  Okay.

19           MR. DUNCOMB:  Next item on the omnibus agenda is

20   the general motors matter, so I'll turn the podium over to

21   Neil Berger.

22           MR. SUMPTER:  Excuse me, at this time, Your Honor,

23   if it's okay I'll go ahead and hang up.

24           THE COURT:  That's fine, you can ring off.

25           MR. SUMPTER:  All right, thank you.

Page 26

1          THE COURT:  Thanks.

2          MR. BERGER:  Good morning, Judge.

3          THE COURT:  Good morning.

4          MR. BERGER:  I'm Neil Berger, Togut, Segal &

5    Segal, we represent the reorganized debtors in connection

6    particularly this morning regarding the motion to compel,

7    that's item 2 on this morning's omnibus agenda.

8          Your Honor so ordered a third stipulation between

9    GM and the reorganized debtors, and pursuant to that

10   stipulation we have agreed to provide a short status report

11   to Your Honor.

12         We have reserved the December 12 hearing in the

13   chance that there are issues that would need to be addressed

14   by the Court.

15         A short status simply is, Your Honor, that we have

16   resolved the most significant issues that existed between

17   the reorganized debtors and General Motors.  You did so

18   order a stipulation at docket 22200, and those largest

19   issues have been resolved.

20         General Motors did fund the amount that was

21   specified in that stipulation in connection with the

22   environmental settlement that Mr. Duncomb spoke about this

23   morning.

24         There are a number of other issues that we're

25   working our way through.

1            Your Honor may recall that the parties addressed

2     the Court regarding a number of State Court actions, product

3     liability, personal injury claims, they are not claims in

4     this case, they need not be resolved for purposes of closing

5     the case.  When we started we had 12 or 13 of those, we're

6     down to the last 2.

7            One is the subject of a mediation that started the

8     day before yesterday and we're hopeful that will be

9     resolved.

10           The last action also is a personal injury/product

11     liability litigation.  General Motors Canada is a co-

12     defendant in that action.

13           We've begun conversations with General Motors with

14     a view that potentially General Motors would take over the

15     Delphi slot -- defendant's slot in that action to control

16     its destiny in that action.

17           So I'm hopeful that those last two items would --

18     would be resolved in the near term.  We speak with counsel

19     for GM very frequently, we're trying to work our way through

20     the last items in connection with the funding.

21           We do have the December 12th hearing set aside in

22     the off chance that we can't find a solution for an issue

23     we'd come back to Your Honor, but I'm confident that given

24     the history that we've had and the negotiations we will be

25     able to find a solution.

```
 1                So for today --

 2                THE COURT:  I guess that's the other reason why we

 3    didn't really need a hearing on the environmental

 4    stipulation if the comment period went by --

 5                MR. BERGER:  That's right.  That's right.

 6                So for today --

 7                THE COURT:  -- on the timing.

 8                MR. BERGER:  -- it's a status, Your Honor, we're

 9    not asking Your Honor to make any decisions --

10                THE COURT:  Okay.

11                MR. BERGER:  -- today.

12                THE COURT:  The patent issues went by the boards?

13                MR. BERGER:  That was -- that was an error.

14                THE COURT:  Okay.

15                MR. BERGER:  I don't think there was a patent

16    issue.

17                THE COURT:  All right.  Okay.

18                MR. BERGER:  It was the personal injury and --

19                THE COURT:  All right.

20                MR. BERGER:  -- and product liability issue.

21                So for today, Your Honor, that's my status, and

22    I'm prepared to answer any questions.

23                THE COURT:  Okay.  Is that -- is that your take on

24    it also, Mr. Steinberg?

25                MR. STEINBERG:  Yes, Your Honor.
```

1              I would want to make just two additional comments.

2              When Mr. Berger said that they're not creditors in

3      the case I think the more technical response is they have

4      never filed claims in the case so there's nothing to

5      adjudicate.

6              It's our position that with respect to many of

7      these that have been resolved, and at least one of them that

8      hasn't been revolved, that the actual injury took place

9      during the administration of the case and therefore they

10     were subject to bar dates.

11             So while they didn't file a claim in the case I

12     don't want them to say that they won something that should

13     have been dealt with in the case if the creditor had acted

14     in an appropriate way.

15             And the second thing is, is that the December 12th

16     date comes 12 days after or 15 days after we will get our

17     last budget in the case, and we have worked hard in trying

18     to resolve our issues, and I assume that if we have any

19     remaining issues they will be fleshed out by the final

20     budget that we will be presented, and if we haven't been

21     able to resolve them we'll try to tee it up so that Your

22     Honor will be able to resolve it for us on the December 12th

23     hearing.

24             THE COURT:  Okay.  And I guess I'm -- based on

25     what you just said right before then, is there a possibility

1    that I'll have a hearing on one or more of these claims

2    then?

3              MR. BERGER:  I don't think so.  None of them have

4    filed claims, and certainly the reorganized --

5              THE COURT:  Well but -- okay.  They're not

6    asserting a claim now.

7              MR. BERGER:  They're not asserting a claim now --

8              THE COURT:  All right.

9              MR. BERGER:  -- and I think it's consistent

10   with --

11             THE COURT:  So there wouldn't be a Pioneer motion

12   or anything like that.

13             MR. BERGER:  We haven't seen --

14             THE COURT:  All right.

15             MR. BERGER:  -- or heard anything about that and

16   we'd certainly resist that.

17             THE COURT:  Okay.  All right.

18             MR. BERGER:  That's all I have for today, Your

19   Honor.

20             THE COURT:  All right.  Well, I'm glad you've been

21   able to cooperate to narrow down those issues to the extent

22   you have, which is a lot.

23             MR. BERGER:  Thank you, Judge.

24             THE COURT:  Okay.

25             MR. DUNCOMB:  Your Honor, the final matter on the

Page 31

1    agenda relates to the Duxbury matter.

2                THE COURT:  Okay.

3                MR. DUNCOMB:  I believe Cindy Haffey is here from

4    Butzel, but there's been a settlement on that claim so I

5    don't believe it's going forward.

6                THE COURT:  Well, I certainly got an email I guess

7    yesterday that the matter was not going forward and it

8    settled in principal, so I guess I'll be looking for a

9    stipulation on that?  Right?  Yeah?

10               MR. DUNCOMB:  I think that's right.

11               THE COURT:  Okay.  All right.  And that's fine.

12   That was all that was on the agenda.

13               I did go back before this hearing and look at the

14   wind-down order, and it also contemplated dealing with the

15   adversary proceedings, but I gather those are not going to

16   be presenting a problem for closing the case?

17               MR. DUNCOMB:  I believe all the adversary

18   proceedings, you know, substantively have come to a

19   conclusion.  There are a couple that are still open just

20   because payments are still being made as part of the

21   settlement, but --

22               THE COURT:  All right.

23               MR. DUNCOMB:  -- but otherwise they've been

24   resolved.

25               THE COURT:  Okay.  So the reservation of time for

Page 32

1    dealing with open adversary proceedings is not going to be

2    necessary either.

3              MR. DUNCOMB:  That's correct, Your Honor.

4              THE COURT:  Okay.  Good.  All right.

5              MR. OLSHIN:  Your Honor, this -- excuse me -- this

6    is Lew Olshin from ACE.

7              THE COURT:  Yes.

8              MR. OLSHIN:  I just wanted to mention to Your

9    Honor that although the District Court had affirmed Your

10   Honor's order in the ACE matter with Michigan --

11             THE COURT:  Right.

12             MR. OLSHIN:  -- Michigan has appealed that matter

13   to the Second Circuit.

14             So we have not received -- the case has not been

15   argued so we have not received a decision from the Second

16   Circuit on Your Honor's finding in favor of ACE and Pacific

17   on our motion for summary judgment.

18             So that case is still out there, and I just wanted

19   to mention that to Your Honor.

20             THE COURT:  Okay.  But ACE's claims are subject to

21   this agreement in principal, and those include as relating

22   to Michigan though.

23             MR. OLSHIN:  The claims themselves are, Your

24   Honor, is correct, are part of the stipulation where we've

25   reached an agreement in principal.

1              I was really just saying in response to Your

2      Honor's indication that all the adversary proceedings were

3      done, I just wanted to mention that that matter is still on

4      appeal.

5              THE COURT:  Right.

6              MR. OLSHIN:  And I guess, you know, don't want to

7      jinx myself, Your Honor, but I guess there's always the

8      potential that some portion of that case could be remanded

9      depending upon what the Second Circuit did.  But, you know,

10     we're confident and hopeful that the Second Circuit will

11     affirm --

12             THE COURT:  Okay.

13             MR. OLSHIN:  -- but it's still pending.

14             THE COURT:  Well, I appreciate your raising that.

15             My focus really was more on the adversaries that

16     were pending in front of me that were referred to in the

17     wind down-motion, which were basically the avoidance

18     actions.  But I've been getting a slew of dismissal orders

19     in light of I guess performed settlements and I just wanted

20     to confirm that there were none of those going forward as

21     had been contemplated in the wind-down order if they needed

22     to be.

23             MR. OLSHIN:  Thank you, Your Honor.

24             MR. DUNCOMB:  And just to clarify, from the

25     reorganized debtors' perspective, I mean we cited some cases

Page 34

1   in the case closing motion that we intend to go forward with

2   the case closing despite outstanding appeals in some of the

3   adversaries.

4           THE COURT:  Okay.  I mean one can always reopen a

5   case for a specific purpose, so that's fine.

6           All right, very good.  Thank you.

7           MR. DUNCOMB:  Thank you, Your Honor.

8           THE COURT:  So I'll look for the -- so I guess

9   you're going keep track of the United States, under the

10  stipulation they're supposed to submit the request, but I'll

11  look for the order I guess some time, you know, in early

12  December.

13          MR. DUNCOMB:  That's right.  And it will be

14  presented to you on a motion just to fulfill the requirement

15  from the government's perspective.

16          THE COURT:  Okay.

17          MR. DUNCOMB:  But, yes.

18          THE COURT:  Okay.

19          MR. DUNCOMB:  Thank you.

20          THE COURT:  Thank you.

21      (Whereupon these proceedings were concluded at 10:36

22  AM)

23

24

25

Page 35

1                            I N D E X

2

3                            RULINGS

4                                          Page      Line

5    Environmental Issues                   16         8

6

7    Motion to Dispose of Non-Essential Records   25     6

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6    Dawn      Digitally signed by Dawn South
              DN: cn=Dawn South, o, ou,
              email=digital1@veritext.com,
     South    c=US
7             Date: 2013.11.18 16:15:30 -05'00'

8    AAERT Certified Electronic Transcriber CET**D-408

9

10   Veritext

11   330 Old Country Road

12   Suite 300

13   Mineola, NY 11501

14   Date:  November 18, 2013

15

16

17

18

19

20

21

22

23

24

25