Proposed Objection Deadline: December 6, 2013 at 12:00 p.m. (EST)

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
In Re: :
: Chapter 11
DPH HOLDINGS CORP., et al., :
: Case No. 05-44481 (RDD)
Reorganized Debtors. :
: (Jointly Administered)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**UNITED STATES' MOTION TO APPROVE THE JOINT STIPULATION AND AGREED
ORDER, CONSENT DECREE AND SETTLEMENT AGREEMENT**

　　　　　　　　　　　　　　　　　　PREET BHARARA
　　　　　　　　　　　　　　　　　　United States Attorney for the
　　　　　　　　　　　　　　　　　　Southern District of New York
　　　　　　　　　　　　　　　　　　*Attorney for the United States of America*

CRISTINE IRVIN PHILLIPS
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2696
Facsimile: (212) 637-2702
Email: cristine.phillips@usdoj.gov

　　— Of Counsel —

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ........................................................................... 1

II.  GENERAL STATUTORY/FACTUAL BACKGROUND ..................................... 3

    A.   Statutory Background ................................................................................ 3

        1.   CERCLA ......................................................................................... 3

        2.   RCRA ............................................................................................. 5

    B.   Procedural Background .............................................................................. 6

        1.   Proofs of Claims of the Governmental Environmental
            Entities ............................................................................................ 6

        2.   Settlement Negotiations and DPH's Motion to Close ..................... 7

    C.   The Settlement Agreement ......................................................................... 8

        1.   Environmental Response Trusts ...................................................... 8

        2.   Dayton VOC Site ............................................................................ 9

        3.   Covenants Not to Sue and Contribution Protection ........................ 9

    D.   No Public Comments ................................................................................ 10

III. ARGUMENT ......................................................................................................... 10

    A.   The Court Should Approve the Proposed Settlement Agreement
        Because It Is Fair, Reasonable, and Consistent With Environmental
        Law ............................................................................................................ 10

        1.   The Settlement is Fair .................................................................... 11

        2.   The Settlement is Reasonable ........................................................ 11

        3.   The Settlement is Consistent with the Goals of
            Environmental Law ....................................................................... 13

IV.  CONCLUSION ..................................................................................................... 14

# **TABLE OF AUTHORITIES**

*B.F. Goodrich Co. v. Murtha*,
　958 F.2d 1192 (2d Cir. 1992) .................................................................................................. 4

*In re Cuyahoga Equipment Corp.*,
　908 F.2d 110 (2d Cir. 1992) ....................................................................................... 5, 10, 12

*Dedham Water Co. v. Cumberland Farms Dairy, Inc.*,
　805 F.2d 1074 (1st Cir. 1986) ................................................................................................ 3

*City of New York v. Exxon Corp.*,
　697 F. Supp. 677, 693 (S.D.N.Y. 1988) ................................................................................. 5

*United Technologies Corp. v. Browning-Ferris Industries, Inc.*,
　33 F.3d 96 (1st Cir. 1994) ...................................................................................................... 5

*New York v. Shore Realty Corp.*,
　759 F.2d 1032 (2d Cir. 1985) ................................................................................................ 3

*New York v. Solvent Chemical Corp.*,
　984 F. Supp. 160 (W.D.N.Y. 1997) ................................................................................ 10, 11

*O'Neil v. Picillo*,
　682 F. Supp. 706 (D.R.I. 1988), *aff'd*, 883 F.2d 176 (1st Cir. 1989) ........................... 3, 4, 5

*States v. Alcan Aluminum Corp.*,
　990 F.2d 711 (2d Cir. 1993) .................................................................................................. 4

*U.S. Sec. & Exch. Commission v. Citigroup Global Markets, Inc.*,
　673  F.3d 158 (2d Cir. 2012) ............................................................................................ 2, 10

*United States v. Akzo Coatings of America, Inc.*,
　949 F.2d 1409 (6th Cir. 1991) ........................................................................................... 2, 5

*United States v. Alcan Aluminum, Inc.*,
　25 F.3d 1174 (3d Cir. 1994) .................................................................................................. 5

*United States v. Cannons Engineering Corp.*,
　899 F.2d 79, 92 (1st Cir. 1990) ................................................................................ 5, 10, 11, 12

*United States v. Charles George Trucking Co.*,
　34 F.3d 1081 (1st Cir. 1994) .................................................................................... 10, 11, 12

*United States v. Davis*,
    261 F.3d 1 (1st Cir. 2001) .................................................................................................. 11

*United States v. DiBiase*,
    45 F.3d 541 (1st Cir. 1995) ............................................................................................. 5, 11

*United States v. Hooker Chemical & Plastics Corp.*,
    540 F. Supp. 1067 (W.D.N.Y. 1982), *aff'd*, 749 F.2d 968 (2d Cir. 1984) ..................... 2, 10

*United States v. Monsanto*,
    858 F.2d 160 (4th Cir. 1988) ................................................................................................ 4

*Voluntary Purchasing Groups, Inc. v. Reilly*,
    889 F.2d 1380 (5th Cir. 1989) .............................................................................................. 3

*Winberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982), *cert. denied*, 464 U.S. 818 (1983) ....................................... 13

**STATUTES**

26 U.S.C. § 9507 .......................................................................................................................... 3

42 U.S.C. §§ 6921-6925 .............................................................................................................. 6

42 U.S.C. § 6925 .......................................................................................................................... 6

42 U.S.C. § 6926(b)(1) ................................................................................................................ 5

42 U.S.C. § 6928 .......................................................................................................................... 6

42 U.S.C. § 7003 .......................................................................................................................... 6

42 U.S.C. § 9622(a) ..................................................................................................................... 5

42 U.S.C. § 9613(f)(2) ................................................................................................................. 5

42 U.S.C. §§ 9604, 9606 ............................................................................................................. 5

42 U.S.C. §§ 9601-75 .................................................................................................................. 7

**I.   PRELIMINARY STATEMENT**

The United States on behalf of the United States Environmental Protection Agency ("U.S. EPA"), hereby moves the Court to approve as a final judgment, the proposed Joint Stipulation and Agreed Order, Consent Decree and Settlement Agreement Among Reorganized Debtors, the United States on Behalf of the United States Environmental Protection Agency, the State of Michigan on Behalf of the Michigan Department of Environmental Quality, the State of Ohio on behalf of the Ohio Environmental Protection Agency, and the Environmental Response Trust Trustee (I) Resolving Proof of Claim Number 15785 and Proofs of Administrative Expense Numbers 18956, 19539, and 19786 and (II) Establishing an Environmental Response Trust (the "Settlement Agreement"), lodged with the Court on November 8, 2013 [Dkt. No. 22215].[1]

The proposed Settlement Agreement resolves the administrative claims filed by the United States and the claim filed by the State of Michigan, as well as the environmental obligations of DPH Holdings Corp. ("DPH") and its affiliates (collectively, the "Reorganized Debtors") under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9601-9675, the Resource Conservation and Recovery Act, 42 U.S.C. § 9601 *et seq.* ("RCRA"), the Michigan Natural Resources and Environmental Protection Act, 1994 PA 451 (the "NREPA"), Federal Regulation 40 C.F.R. § 61.151, Ohio Rev. Code § 6111 and Ohio Admin. Code § 3745-20-07, with respect to four environmentally contaminated properties located in Michigan and Ohio (the "DPH Sites"), which are owned by the Reorganized Debtors. Under the Settlement Agreement, the Reorganized

---

[1] While this brief is filed only on behalf of the United States, the State of Michigan on behalf of the Michigan Department of Environmental Quality and the State of Ohio on behalf of the Ohio Environmental Protection Agency (collectively, with the United States on behalf of U.S. EPA, the "Environmental Agencies"), both have authorized the United States to inform the Court that they join the United States' request that the Court approve and enter the Settlement Agreement.

Debtors will pay $23.3 million in total, consisting of $23,142,065 to fund the administrative and remedial expenses of an environmental response trust, which will take title to the DPH Sites, and $157,935 to compensate U.S. EPA for past response costs incurred at a fifth contaminated property in Dayton, Ohio (the "Dayton VOC Site"), formerly owned by the Reorganized Debtors.

The proposed Settlement Agreement is contingent upon the Court approving the Settlement Agreement as fair, reasonable, and consistent with environmental law. As is typical for a settlement under environmental law, on November 15, 2013, notice of the proposed settlement was published in the Federal Register, 78 Fed. Reg. 221, 68863-64 (the "Federal Register Notice"). The United States accepted public comments on the proposed Settlement Agreement through December 2, 2013, but received no public comments.

As described below, the United States has determined that the proposed Settlement Agreement is fair, reasonable and consistent with environmental law. The settlement memorialized in the proposed Settlement Agreement was reached after lengthy negotiations of its terms among sophisticated counsel. In addition, the parties weighed the merits, costs, and risks that litigation would entail against the value of settlement.

The function of the Court in reviewing such motions is not to substitute its judgment for that of the parties to the proposed Settlement Agreement, but to confirm that the terms of the proposed Settlement Agreement are fair, adequate, and consistent with applicable law. *See United States v. Hooker Chem. & Plastics Corp.*, 540 F. Supp. 1067, 1072 (W.D.N.Y. 1982), *aff'd*, 749 F.2d 968 (2d Cir. 1984). If the Court finds that these standards have been met, then the settlement should be approved. *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1426 (6th Cir. 1991); *see also U.S. Sec. & Exch. Comm'n v. Citigroup Global Mkts., Inc.*, 673 F.3d 158, 164 (2d Cir. 2012) ("[T]he scope of a court's authority to second-guess an agency's

2

discretionary and policy-based decision to settle is at best minimal."). Accordingly, for the reasons set forth herein, the United States respectfully requests that this Court sign and enter the proposed Settlement Agreement lodged with this Court on November 8, 2013, and attached hereto as Exhibit A and additionally, that the Court sign the Order attached hereto as Exhibit B, approving the Settlement Agreement.

## II.  GENERAL STATUTORY/FACTUAL BACKGROUND

The environmental liabilities that are resolved by the Settlement Agreement derive primarily from two federal statutes, CERCLA and RCRA, and their state counterparts.

### A.  Statutory Background

#### 1.  CERCLA

CERCLA was enacted to provide a framework for cleanup of the nation's worst hazardous waste sites. The primary goal of CERCLA is to protect and preserve public health and the environment from the effects of releases or threatened releases of hazardous substances to the environment. *See Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1386 (5th Cir. 1989); *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1081 (1st Cir. 1986); *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1040, n.7 (2d Cir. 1985); *O'Neil v. Picillo*, 682 F. Supp. 706, 726 (D.R.I. 1988), *aff'd*, 883 F.2d 176 (1st Cir. 1989).

CERCLA also created a Hazardous Substance Superfund, known simply as the Superfund, to finance federal response actions undertaken pursuant to Section 104(a) of CERCLA. The Superfund was established under 26 U.S.C. § 9507. Although CERCLA authorizes cleanup of hazardous waste sites using money provided by the Superfund, the Superfund is a limited source and cannot finance cleanup of all of the many hazardous waste sites nationwide. *See* S. Rep. No. 96-842, 848, 96th Cong., 2d Sess. at 17-18 (1980), *reprinted*

3

*in* 1 Sen. Comm. on Env't & Pub. Works, Legislative History of CERCLA 305, 324-25 (1983). Replenishment of expended Superfund monies is crucial to the continuing availability of funds for future cleanups. Thus, the United States is tasked with seeking to ensure that potentially responsible parties ("PRPs") pay for or perform site cleanups, or to collect Superfund monies expended by the federal government in response to a release or threatened release of hazardous substances through the liability scheme set forth in Section 107 of CERCLA wherever possible. *See B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1198 (2d Cir. 1992) (one statutory purpose of CERCLA is to hold responsible parties liable for the costs of the cleanup).

Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), permits the United States to recover its costs of responding to releases of hazardous substances from PRPs. Pursuant to Section 107(a), PRPs include the owners and operators of Superfund sites at the time of the disposal of hazardous substances at the sites, the current owners and operators of Superfund sites, as well as the generators and transporters of hazardous substances sent to Superfund sites. *See United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 722 (2d Cir. 1993); *O'Neil*, 883 F.2d at 178; *United States v. Monsanto*, 858 F.2d 160, 168-171 (4th Cir. 1988). Section 107(a) of CERCLA creates strict joint and several liability where environmental harm is indivisible. *See Alcan Aluminum Corp.*, 990 F.2d at 722.

Sections 104(a) and (b) of CERCLA, 42 U.S.C. §§ 9604(a) and (b), authorize U.S. EPA to use Superfund monies to investigate the nature and extent of hazardous substance releases from contaminated sites and to clean up those sites. Moreover, pursuant to Section 106 of CERCLA, 42 U.S.C. § 9606, U.S. EPA may also issue unilateral administrative orders to PRPs that require them to clean up sites, may seek injunctive relief through a civil action to secure such relief, or may seek to reach agreements with PRPs through which they agree to perform the

4

necessary cleanup of sites. *See* Sections 104, 106 and 122 of CERCLA, 42 U.S.C. §§ 9604, 9606, and 9622.

Having created the liability system and enforcement tools to allow U.S. EPA to pursue responsible parties for Superfund cleanups, Congress expressed a strong preference that the United States settle with responsible parties in order to avoid spending resources on litigation rather than on cleanup. 42 U.S.C. § 9622(a).[2] CERCLA encourages settlements, *inter alia*, by providing parties who settle with the United States protection from contribution claims for matters addressed in the settlement. 42 U.S.C. § 9613(f)(2). This provision provides settling parties with a measure of finality in return for their willingness to settle.[3]

    2.    <u>RCRA</u>

RCRA, also known as the Solid Waste Disposal Act, regulates generators and transporters of hazardous waste and owners and operators of facilities that manage, treat, store, or dispose of hazardous wastes. Pursuant to 42 U.S.C. § 6926(b)(1), U.S. EPA has authorized certain states to administer portions of the RCRA hazardous waste management programs. The United States retains the authority to enforce an authorized state's regulations as well as the

---

[2] *See also United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1184 (3d Cir. 1994); *United States v. Akzo Coatings of America, Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991); *In re Cuyahoga Equipment Corporation*, 980 F.2d 110 (2d Cir. 1992) (citing *City of New York v. Exxon Corp.*, 697 F. Supp. 677, 693 (S.D.N.Y. 1988)); *United States v. Cannons Engineering Corp.*, 899 F.2d 79, 92 (1st Cir. 1990); *United States v. DiBiase*, 45 F.3d 541, 545-46 (1st Cir. 1995); H.R. Rep. No. 253, pt. 1, 99th Cong., 1st Sess. 80 (1985), *reprinted in* 1986 U.S. Code Cong. & Ad. News 2862.

[3] *See Cannons Engineering*, 899 F.2d at 92; *O'Neil v. Picillo*, 883 F.2d 176, 178-79 (1st Cir. 1989), *cert. denied*, 493 U.S. 1071 (1990); *United Technologies Corp. v. Browning-Ferris Industries, Inc.*, 33 F.3d 96 (1st Cir. 1994), *cert. denied*, 115 S. Ct. 1176 (1995); H.R. Rep. No. 253, pt. 1, 99th Cong., 1st Sess. 80 (1985), *reprinted in* 1986 U.S. Code Cong. & Ad. News 2862.

federal portion of the program still being administered by the United States.  42 U.S.C. § 6928.

RCRA regulations impose on owners and operators of hazardous waste generation, treatment, storage, disposal, and transportation facilities obligations regarding the manner in which solid and hazardous wastes are dealt with.  *See* 42 U.S.C. §§ 6921-6925; 40 C.F.R. Subchapter I.  In addition, owners and operators of hazardous waste treatment, storage or disposal facilities must obtain either a permit or "interim status" in order to operate legally.  42 U.S.C. § 6925.  Under RCRA, the United States and authorized states have authority to order the owner or operator of a permitted or interim status facility to conduct closure, correction action, or other response measures as necessary to protect human health.  42 U.S.C. §§ 6924(u), (v), 6925(c)(3), and 6928(h).  Where U.S. EPA determines that handling of solid waste may present an imminent and substantial endangerment to health or the environment, it can also issue a cleanup order or seek injunctive relief against any person who has contributed or is contributing to the handling, storage, treatment, transportation, or disposal of solid waste anywhere that solid waste is located.  42 U.S.C. § 7003.

**B.     Procedural Background**

1.     <u>Proofs of Claims of the Governmental Environmental Entities</u>

On October 8 and 14, 2005, Delphi Corporation and certain of its subsidiaries and affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, as then amended.  On July 30, 2009, the Court entered an order confirming a modified plan of reorganization, pursuant to which the Debtors emerged from chapter 11 as the Reorganized Debtors.

On July 28, 2006, prior to confirmation of the Plan, the State of Michigan filed a proof of claim (the "Michigan Claim") for recovery of liquidated past environmental response costs

6

incurred at properties including at the DPH Site in Saginaw, Michigan, pursuant to part 201 and 213 of the Michigan NREPA.  The Michigan Claim also asserted a protective claim for future response actions at the DPH Site in Saginaw, Michigan and for closure and post-closure requirements at the DPH Sites in Flint, Michigan.  Delphi objected to the Michigan Claim on November 6, 2009, but the hearing on that objection was adjourned and has not occurred to date.

On July 14, 2009, and November 4, 2009, the United States on behalf of U.S. EPA filed administrative expense claims against Delphi (the "U.S. Administrative Expense Claims"), asserting, *inter alia*, a claim for administrative expenses for the Dayton VOC Site, incurred by U.S. EPA under CERCLA, 42 U.S.C. §§ 9601-75.  The U.S. Administrative Expense Claims also included protective claims for work that the Reorganized Debtors were or would be required to perform in the future at sites including the DPH Sites, pursuant to regulatory requirements or in compliance with court or administrative orders.  DPH objected to the U.S. Administrative Expense Claims on March 19, 2010, but the hearing on DPH's objection was adjourned and has not occurred to date.

2.    Settlement Negotiations and DPH's Motion to Close

Since October 2012, Reorganized Debtors and the Environmental Agencies (collectively, the "parties") have engaged in negotiations with the goal of resolving the U.S. Administrative Expense Claims, the Michigan Claim and other environmental obligations of the Reorganized Debtors at the DPH Sites.  As part of these negotiations, Reorganized Debtors and the Environmental Agencies each engaged expert consultants and participated in frequent exchanges of information to determine the cost of remediating each of the DPH Sites in accordance with the environmental laws.

7

On July 3, 2013, while settlement discussions regarding the DPH Sites were ongoing, DPH filed a motion to close the bankruptcy action by year-end (the "Motion to Close"). As part of the Motion to Close, the Reorganized Debtors and the Environmental Agencies agreed to resolve the Michigan Claim, the U.S. Administrative Expense Claims, and DPH's environmental obligations at the DPH Sites by November 2013, either by mutual resolution or by presenting the issues for determination by the Court. The Court entered an order on the Motion to Close, reflecting this agreement, on August 6, 2013.

Following the Order on the Motion to Close, the parties continued their negotiations while also preparing to litigate if necessary. On September 6, 2013, the Reorganized Debtors filed a Claims Objection and Statement of Disputed Issues (the "Claims Objection"), setting forth their account of the issues to be tried absent a settlement. The United States and the States responded to the Claims Objection on September 16, 2013. The parties also engaged in document discovery, producing documents and responding to discovery requests on September 30, 2013. Had the proposed settlement not been reached, the parties would have engaged in further fact and expert discovery and would have proceeded to a hearing before the bankruptcy court on November 14, 2013.

    **C.**    **The Settlement Agreement[4]**

        1.    <u>Environmental Response Trust</u>

The Settlement Agreement provides a mechanism by which the Reorganized Debtors can fulfill their responsibility to clean up the DPH Sites and resolve their liabilities to the

---

[4] This memorandum of law contains an abbreviated summary of the terms and provisions of the Settlement Agreement. If there is any conflict between the description of the settlement contained in this memorandum and the terms and provisions of the Settlement Agreement, the terms and provisions of the Settlement Agreement are controlling.

8

Environmental Agencies. Pursuant to Sections VI and VII of the Settlement Agreement, an environmental response trust will be created to own and clean up the DPH Sites, which will be transferred by the Reorganized Debtors within two business days of the Plan Effective Date. Reorganized Debtors also will fund the environmental response trust simultaneously with the transfer of the DPH Sites, in the total amount of $23,142,065, to be divided among the DPH Sites as per the Settlement Agreement, including $2,376,451 for the administrative costs of the trust. The environmental response trust will be governed by the terms and conditions of the Settlement Agreement and an environmental trust agreement (the "Trust Agreement"), which is attached to the Settlement Agreement as Exhibit A. The Settlement Agreement provides for the appointment of Le Petomane XVIII, Inc., as environmental response trustee as of the Effective Date. *See* Settlement Agreement ¶ 6.

    2.  <u>Dayton VOC Site</u>

Pursuant to Section VIII of the Settlement Agreement, Reorganized Debtors will pay U.S. EPA $157,935 as an allowed administrative expense claim; this is the full amount asserted by U.S. EPA for past response costs incurred at the Dayton VOC Site.

    3.  <u>Covenants Not to Sue and Contribution Protection</u>

Under Section XI of the Settlement Agreement, the Reorganized Debtors will receive the covenants not to sue provided for in the Settlement Agreement from the Environmental Agencies with respect to the DPH Sites. *See* Settlement Agreement § XI. Section XI of the Settlement Agreement provides covenants not to sue from Reorganized Debtors to the Environmental Agencies and the "Environmental Trust Parties," defined in the Trust Agreement to include the environmental response trust, its trustee and its affiliates, and the trustee's shareholders, officers, directors, employees, members, managers, partners, affiliated entities, consultants, agents,

accountants, attorneys, and other professionals or representatives engaged or employed by the trust or trustee.  *See* Settlement Agreement ¶ 54; Trust Agreement § 1.1.25.

Under Section XII of the Settlement Agreement, the Reorganized Debtors and the Trust Parties also will receive contribution protection as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), or as otherwise provided by law.  *See* Settlement Agreement ¶ 55.

### D.     No Public Comments

The United States received no comments regarding the Settlement Agreement during the 15-day public comment period.

### III.    ARGUMENT

#### A.     The Court Should Approve the Proposed Settlement Agreement Because It is Fair, Reasonable, and Consistent With Environmental Law

Approval of a settlement agreement is a judicial act committed to the informed discretion of the Court.  *In re Cuyahoga Equipment Corp.*, 908 F.2d 110, 118 (2d Cir. 1992); *United States v. Hooker Chem. & Plastics Corp.* 40 F. Supp. 1067, 1072 (W.D.N.Y. 1982), *aff'd*, 749 F.2d 968 (2d Cir. 1984); *United States v. Cannons Eng'g Corp.*, 720 F. Supp. 1027, 1035 (D. Mass 1989), *aff'd* 899 F.2d 79 (1st Cir. 1990).  Judicial review of a settlement negotiated by the United States is subject to special deference; the Court should not engage in "second-guessing the Executive Branch."  *Cannons Eng'g Corp.*, 899 F.2d at 84; *In re Cuyahoga*, 980 F.2d at 118 (noting the "usual deference given the EPA"); *New York v. Solvent Chemical Corp.*, 984 F. Supp. 160, 165 (W.D.N.Y. 1997) ("This Court recognizes that its function in reviewing consent decrees apportioning CERCLA liability is not to substitute its judgment for that of the parties to the decree but to assure itself that the terms of the decree are fair and adequate and are not unlawful, unreasonable, or against public policy.") (internal quotation marks omitted); *see also U.S. Sec. &*

*Exch. Comm'n v. Citigroup Global Mkts., Inc.*, 673 F.3d at 164. An evidentiary hearing is not required in order to evaluate a proposed consent decree. *United States v. Charles George Trucking Co.*, 34 F.3d 1081, 1085 (1st Cir. 1994); *Cannons*, 899 F.2d at 94. For the reasons discussed below, the Court should approve the Settlement Agreement because it is fair, reasonable and furthers the goals of environmental law. *See Charles George Trucking Co.*, 34 F.3d at 1084; *Cannons*, 899 F.2d at 85. This "limited standard of review reflects a clear policy in favor of settlements." *Solvent Chem. Corp.*, 984 F. Supp. at 165.

        1.      The Settlement is Fair

The fairness of a settlement under environmental law involves both procedural fairness and substantive fairness. *Cannons*, 899 F.2d at 86-88. To measure procedural fairness, the Court "should look to the negotiation process and gauge its candor, openness, and bargaining balance." *Id.* at 86. The negotiation of the Settlement Agreement was procedurally fair because it was negotiated at arm's length over the course of a year, and the parties were represented by experienced counsel. To measure "substantive" fairness, the Court should consider whether the settlement is "based upon, and roughly correlated with, some acceptable measure of comparative fault, apportioning liability . . . according to rational (if necessarily imprecise) estimates of how much harm each PRP has done." *Id.* at 87; *see also United States v. Davis*, 261 F.3d 1, 24 (1st Cir. 2001); *Charles George Trucking, Inc.*, 34 F.3d at 1087; *United States v. DiBiase*, 45 F.3d 541, 544-45 (1st Cir. 1995).

Here, the proposed Settlement Agreement is "substantively" fair. The proposed Settlement Agreement is the product of a complex analysis of the Reorganized Debtors' environmental liabilities, which took into account litigation risks, the circumstances under which contamination occurred, and multiple other factors. These issues formed the backdrop for

11

lengthy negotiations between the parties. The resulting terms of the settlement, which provide reasonably sufficient funding for the clean-up of the DPH Sites and pay all of U.S. EPA's claimed expenses incurred at the Dayton VOC Site, are substantively fair. The Court can be further assured of the substantive fairness of the Settlement Agreement because the United States has provided public notice and opportunity to comment on the Settlement Agreement, and has received no public comments.

### 2.  The Settlement is Reasonable

Courts evaluating the reasonableness of settlements under environmental law have considered three factors: technical adequacy of the cleanup work to be performed; satisfactory compensation to the public for response costs; and the risks, costs and delays inherent in litigation. *See Charles George*, 34 F.3d at 1087; *Cannons*, 899 F.2d at 89-90.

Although the first prong of the reasonableness inquiry is not at issue in this settlement, as the Reorganized Debtors are not performing any cleanup, the Settlement Agreement satisfies the other, necessarily intertwined, considerations relevant to reasonableness. As discussed above, the environmental response trust will receive $23,142,065 in cash for the cleanup of four contaminated properties, as well as for the administrative costs of the trust. *See* Settlement Agreement ¶ 7. U.S. EPA will receive an additional $157,935 in cash compensation for past response activities.

These settlement terms satisfactorily compensate the public, and reasonably balance myriad competing factors, including the strength of the Environmental Agencies' case against the Reorganized Debtors; the remaining funds available to the Reorganized Debtors in the bankruptcy; the litigation risks associated with the Environmental Agencies' proofs of claims; and the need to recover funds for cleanup and minimize the expense of litigation. Accordingly,

the Settlement Agreement is reasonable.

### 3. The Settlement is Consistent with the Goals of Environmental Law

The primary goals of CERCLA are to "encourage prompt and effective responses to hazardous waste releases and to impose liability on responsible parties," and to "encourage settlements that would reduce the inefficient expenditure of public funds on lengthy litigation." *In re Cuyahoga*, 980 F.2d at 119. This settlement furthers these statutory goals. As discussed above, the proposed Settlement Agreement accounts for cleanup costs at the DPH Sites. The settlement further meets CERCLA's statutory goal of providing final resolution of liability for settling parties. Moreover, the Settlement Agreement serves CERCLA's goal of reducing, where possible, the litigation and transaction costs associated with response actions, as well as the public policy favoring settlement to reduce costs to litigants and burdens on the courts. *See Winberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982), *cert. denied*, 464 U.S. 818 (1983).

Similarly, the purpose of RCRA is to "reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.'" *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483 (1996) (citing 42 U.S.C. § 6902(b)). The Settlement Agreement also serves RCRA's objectives by providing reasonably sufficient funding to address the contamination at the DPH Sites.

## IV.   CONCLUSION

For the reasons stated above, the Court should sign and enter the proposed Settlement Agreement, attached hereto as Exhibit A, and should sign and enter the Order approving the Settlement Agreement, attached hereto as Exhibit B, as fair, reasonable, and consistent with environmental law.

Dated:  New York, New York
        December 3, 2013

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney for the
                                        Southern District of New York

                                By:     s/ Cristine Irvin Phillips
                                        CRISTINE IRVIN PHILLIPS
                                        Assistant United States Attorney
                                        86 Chambers Street, Third Floor
                                        New York, New York 10007
                                        Tel.: (212) 637-2696
                                        Fax: (212) 637-2702
                                        Email: cristine.phillips@usdoj.gov

14