## Exhibit B

**Settlement Agreement**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                  :
In re:                                            :          Chapter 11
                                                  :
DPH HOLDINGS CORPORATION, *et al.*,               :          Case No. 05-44481 (RDD)
                                                  :
                    Reorganized Debtors.          :          Jointly Administered
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**JOINT STIPULATION AND AGREED ORDER, CONSENT DECREE AND SETTLEMENT
AGREEMENT AMONG REORGANIZED DEBTORS, THE UNITED STATES ON BEHALF
OF THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, THE STATE OF
MICHIGAN ON BEHALF OF THE MICHIGAN DEPARTMENT OF ENVIRONMENTAL
QUALITY, THE STATE OF OHIO ON BEHALF OF THE OHIO ENVIRONMENTAL
PROTECTION AGENCY, AND THE ENVIRONMENTAL RESPONSE TRUST TRUSTEE (I)
RESOLVING PROOF OF CLAIM NUMBER 15785 AND PROOFS OF ADMINISTRATIVE
EXPENSE CLAIM NUMBERS 18956, 19539, AND 19786 AND (II) ESTABLISHING AN
ENVIRONMENTAL RESPONSE TRUST**

# TABLE OF CONTENTS

I.      BACKGROUND ........................................................................................ 1

II.     DEFINITIONS ........................................................................................... 7

III.    JURISDICTION ...................................................................................... 12

IV.     PARTIES BOUND; SUCCESSION AND ASSIGNMENT ............................... 12

V.      RESOLUTION OF PROOFS OF CLAIM ....................................................... 12

VI.     THE ENVIRONMENTAL RESPONSE TRUST ................................................ 12

VII.    ENVIRONMENTAL TRUST ACCOUNTS ...................................................... 17

VIII.   DAYTON VOC SITE ................................................................................ 22

IX.     ENVIRONMENTAL RESPONSE TRUST MISCELLANEOUS
        PROVISIONS ......................................................................................... 23

X.      OUTSTANDING OBLIGATIONS ................................................................ 26

XI.     COVENANT NOT TO SUE AND RESERVATION OF RIGHTS .................... 27

XII.    CONTRIBUTION PROTECTION ................................................................ 30

XIII.   TRANSFERS OF REAL PROPERTY INFORMATION AND
        ENVIORNMENTAL INFORMATION ........................................................... 31

XIV.    NOTICES AND SUBMISSIONS .................................................................. 31

XV.     JUDICIAL APPROVAL AND OPPURTUNITY FOR PUBLIC
        COMMENT ............................................................................................. 35

XVI.    EFFECTIVE DATE ................................................................................... 36

XVII.   AMENDMENTS/INTEGRATION AND COUNTERPARTS ............................. 36

XVIII.  RETENTION OF JURISDICTION ............................................................... 36

DPH Holdings Corp. ("DPH") and certain of its affiliated reorganized debtors in the above-captioned cases (collectively, the "Reorganized Debtors"), the United States on behalf of the United States Environmental Protection Agency (the "EPA"), the State of Michigan on behalf of the Michigan Department of Environmental Quality (the "MDEQ"), and the State of Ohio on behalf of the Ohio Environmental Protection Agency (the "Ohio EPA") respectfully submit this Joint Stipulation and Agreed Order, Consent Decree and Settlement Agreement Among Reorganized Debtors, the United States on Behalf of the United States Environmental Protection Agency, the State of Michigan on Behalf of the Michigan Department of Environmental Quality, the State of Ohio on behalf of the Ohio Environmental Protection Agency, and the Environmental Response Trust Trustee (I) Resolving Proof of Claim Number 15785 and Proofs of Administrative Expense Numbers 18956, 19539, and 19786 and (II) Establishing an Environmental Response Trust (the "Stipulation and Settlement Agreement") and agree and state as follows:

## I.  BACKGROUND

WHEREAS, on October 8 and 14, 2005 (the "Petition Dates") Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, former debtors and debtors-in-possession in the above captioned cases (collectively, the "Debtors"), filed with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") voluntary petitions for relief under chapter 11 of title 11 of the United States Code, as then amended (the "Bankruptcy Code"), which petitions have been consolidated for procedural purposes and are being administered jointly as Case No. 05-44481 (RDD) (the "Bankruptcy Cases");

WHEREAS, on July 30, 2009, the Bankruptcy Court entered an order (Dkt. # 18707) (the "Plan Approval Order") confirming a modified plan of reorganization ("Plan of Reorganization" or the "Plan"), pursuant to which the Debtors emerged from chapter 11 as the Reorganized Debtors;

WHEREAS, post-emergence, the Reorganized Debtors were given the responsibility for winding up the Bankruptcy Cases, including resolving remaining claims and interests against the Debtors;

WHEREAS, on July 3, 2013, the Reorganized Debtors filed the Motion for Final Decree and Order Pursuant to 11 U.S.C. §§ 105, 350(a), and 1142, Fed. R. Bankr. P. 3022, and Local Bankr. R. 3022-1 Closing the Bankruptcy Cases and Providing Related Relief (the "Case Closing Motion") (Dkt. # 22073);

WHEREAS, on July 23 and 24, 2013, the United States and the MDEQ filed objections to the Case Closing Motion (Dkt: # 22095, 22101);

WHEREAS, on August 6, 2013, the Court entered the Order Pursuant to 11 U.S.C. §§ 205, 350(a), and 1142, Fed. R. Bankr. P. 3022, and Local Bankr. R. 3022-1 Concerning Closing the Bankruptcy Cases and Providing Related Relief, which provided for, among other things, a schedule for the resolution of environmental claims and issues ("Case Closing Order") (Dkt. # 22121);

WHEREAS, on September 3, 2013, the Court entered an Order Establishing Procedures Governing the Resolution of Environmental Claims and All Other Environmental Issues At The Sites Owned By Reorganized Debtors ("Environmental Claims and Issues Procedure Order") (Dkt. # 22136);

WHEREAS, the United States on behalf of EPA and the State of Michigan on behalf of MDEQ contend that Reorganized Debtors have compliance and work obligations under RCRA (as defined below) and Part 111 of Michigan's Natural Resources and Environmental Protection Act ("NREPA"), PA 451 of 1994, MCL 324.11101 *et seq.*, requiring Reorganized Debtors to clean up two adjacent contaminated sites owned by Reorganized Debtors in Flint, Michigan, and that Reorganized Debtors are responsible for known or potential environmental contamination at or emanating from the sites (the "DPH Flint Sites");

WHEREAS, United States, on behalf of EPA, and the State of Michigan on behalf of MDEQ contend that Reorganized Debtors have compliance and work obligations under Part 201 the NREPA, requiring Reorganized Debtors to clean up a contaminated site owned by Reorganized Debtors in

2

Saginaw, Michigan, and that Reorganized Debtors are responsible for known or potential environmental contamination at or emanating from the site (the "DPH Saginaw Site");

WHEREAS, United States, on behalf of EPA, and the State of Ohio on behalf of the Ohio EPA contend that Reorganized Debtors have compliance and work obligations under Ohio Rev. Code § 6111 and Ohio Admin. Code § 3745-20-07 requiring Reorganized Debtors to clean up a contaminated site owned by Reorganized Debtors in Rootstown, Ohio, and that Reorganized Debtors are potentially responsible parties or may otherwise be responsible for known or potential environmental contamination at or emanating from the site (the "DPH Rootstown Site" and, collectively, with the DPH Flint Sites and the DPH Saginaw Site, the "DPH Sites");

WHEREAS, the Reorganized Debtors dispute the contentions of the United States on behalf of EPA, the State of Michigan on behalf of MDEQ, and the State of Ohio on behalf of Ohio EPA with respect to the DPH Sites and contend that they do not have injunctive compliance and work obligations for the DPH Sites and have disputed the State of Ohio's right to participate in the November 14, 2013 hearing because it does not have an outstanding claim pending;

WHEREAS, the United States has filed proofs of claim for administrative expenses (Claim Nos. 18956, 19539, and 19786) (collectively, the "U.S. Administrative Expense Claims") against the Reorganized Debtors, and such applications seeking, among other things, administrative expenses incurred by EPA at a site in Dayton, Ohio (the "Dayton VOC Site"), pursuant to CERCLA as defined below, and which set forth claims or causes of action against Reorganized Debtors protectively for past and future response costs and work with respect to the DPH Sites pursuant to Reorganized Debtors' status as present owner of the DPH Sites;

WHEREAS, the Reorganized Debtors objected to the U.S. Administrative Expense Claims pursuant to the Reorganized Debtors' Forty-Sixth Omnibus Objection Pursuant to 11 U.S.C. § 503(B) and Fed. R. Bankr. P. 3007 to (I) Disallow and Expunge Certain Administrative Expense (A) Books and

3

Records Claims, (B) Methode Electronics Claims, (C) State Workers' Compensation Claims, (D) Duplicate State Workers' Compensation Claims, (E) Workers' Compensation Claims, (F) Transferred Workers' Compensation Claims, (G) Tax Claims, (H) Duplicate Insurance Claims, and (I) Severance Claims, (II) Disallow and Expunge (A) a Certain Duplicate Workers' Compensation Claim, (B) A Certain Duplicate Tax Claim, And (C) a Certain Duplicate Severance Claim, (III) Modify Certain Administrative Expense (A) State Workers' Compensation Claims and (B) Workers' Compensation Claims, and (IV) Allow Certain Administrative Expense Severance Claims (the "Forty-Sixth Omnibus Claims Objection") (Dkt. # 19711);

WHEREAS, the United States filed a response to the Forty-Sixth Omnibus Claims Objection (Dkt. # 19870);

WHEREAS, a hearing on the U.S. Administrative Expense Claim was adjourned to a future date to be noticed by the Reorganized Debtors pursuant to the Court's Order Pursuant to 11 U.S.C. § 503(B) and Fed. R. Bankr. P. 3007 (I) Disallowing and Expunging Certain Administrative Expense (A) Books and Records Claims, (B) State Workers' Compensation Claims, (C) Duplicate State Workers' Compensation Claims, (D) Workers' Compensation Claims, (E) Transferred Workers' Compensation Claims, (F) Tax Claims, (G) Duplicate Insurance Claims, and (H) Severance Claims, (II) Disallowing and Expunging (A) A Certain Duplicate Workers' Compensation Claim, (B) A Certain Duplicate Tax Claim, and (C) A Certain Duplicate Severance Claim, (III) Modifying and Allowing Certain Administrative Expense Workers' Compensation Claims, and (IV) Allowing Certain Administrative Expense Severance Claims ("Forty-Sixth Omnibus Claims Objection Order") (Dkt. # 19949);

WHEREAS, the State of Michigan has filed a proof of claim (Claim No. 15785) (the "MDEQ Claim," and collectively with the U.S. Administrative Expense Claim, the "Environmental Agency Claims") against the Reorganized Debtors;

4

WHEREAS, the Reorganized Debtors objected to the MDEQ Claim pursuant to the Reorganized Debtors' Thirty-Eighth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To (I) Expunge Certain (A) Equity Interests, (B) Books And Records Claims, (C) Untimely Claims, (D) Pension, Benefit, And OPEB Claims, And (E) Workers' Compensation Claims And (II) Modify And Allow Certain Claims ("Thirty-Eighth Omnibus Claims Objection") (Dkt. # 19044);

WHEREAS, the MDEQ filed a response to the Thirty-Eighth Omnibus Claims Objection (Dkt. # 19132);

WHEREAS, the hearing on the MDEQ Claim was adjourned to a future date to be noticed by the Reorganized Debtors pursuant to the Court's Order Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 to (I) Expunge Certain (A) Equity Interests, (B) Books and Records Claims, (C) Untimely Claims, (D) Pension, Benefit, and OPEB Claims, and (E) Workers' Compensation Claims and (II) Modify and Allow Certain Claims ("Thirty-Eighth Omnibus Claims Objection Order") (Dkt. # 19175);

WHEREAS, the Ohio EPA filed five proofs of claim in the Bankruptcy Cases (Claim Numbers 15345, 15346, 15347, 16354, and 16355);

WHEREAS, four of the five claims were disallowed (Claim Numbers 15346, 15347, 16354, and 16355) and the final claim (Claim Number 15345) was withdrawn with prejudice pursuant to a stipulation entered into with the Reorganized Debtors on July 7, 2011 (Dkt. # 21431);

WHEREAS, pursuant to the Environmental Claims and Issues Procedure Order, the Reorganized Debtors filed a Notice of Claims Objection and Statement of Disputed Issues with Respect to Environmental Claims Numbers 15785, 18956, 19539, and 19786 and All Other Environmental Issues at the Sites Owned by the Reorganized Debtors ("Environmental Claims and Issues Objection") on September 6, 2013 (Dkt. # 22137);

WHEREAS, the United States on behalf of the EPA, MDEQ and Ohio EPA filed a Response of the Environmental Agencies to the Reorganized Debtors' Notice of Claims Objection and Statement of

5

Disputed Issues with Respect to Environmental Claims Numbers 15785, 18956, 19539, and 19786 and All

Other Environmental Issues at the Sites Owned by the Reorganized Debtors on September 16, 2013 (Dkt.

# 22150);

WHEREAS, the United States, the State of Michigan and the State of Ohio contend that the

Reorganized Debtors' injunctive obligation to comply with work requirements under court orders,

environmental statutes, regulations, rules, administrative orders, licenses, and permits is not dischargeable

pursuant to Section 1141 of the Bankruptcy Code;

WHEREAS, the Reorganized Debtors contend that the Environmental Agency Claims and any

claims now raised by the State of Ohio related to the DPH Rootstown Site are dischargeable prepetition

claims under the Plan of Reorganization, the Plan Approval Order and the Bankruptcy Code;

WHEREAS, the Reorganized Debtors, the United States on behalf of EPA, the State of Michigan

on behalf of MDEQ, and the State of Ohio on behalf of Ohio EPA (collectively, the "Parties") wish to

resolve their differences with respect to the DPH Sites and the Environmental Agency Claims, and to

address other matters as provided herein;

WHEREAS, under Section 11.3 of the Plan, the Reorganized Debtors may compromise and settle

Claims or Interests against the Debtors without the need for further Bankruptcy Court approval;

WHEREAS, the Parties agree that the proper vehicle for the resolution of the issues set forth

herein is an Environmental Response Trust (the "Environmental Response Trust"), which shall be deemed

the "DPH Environmental Response Trust," to be administered by an Environmental Response Trust

Trustee (the "Environmental Trustee") pursuant to an Environmental Response Trust Agreement (the

"Environmental Trust Agreement"), and for the transfer to the Environmental Response Trust of the DPH

Sites along with funding and other consideration as provided herein;

WHEREAS, the Parties and the Environmental Trustee wish to address certain matters with

respect to the DPH Sites as provided herein and in the Environmental Trust Agreement;

WHEREAS, in consideration of, and in exchange for, the promises and covenants herein, including, without limitation, the covenants not to sue set forth in Paragraphs 47, 49, and 54, the Parties and the Environmental Trustee hereby agree to the terms of this Stipulation and Settlement Agreement;

WHEREAS, settlement of the matters governed by this Stipulation and Settlement Agreement is in the public interest and is an appropriate means of resolving these matters;

NOW, THEREFORE, without the admission of liability or the adjudication of any issue of fact or law, the Parties, by their attorneys and authorized officials, hereby stipulate and agree as follows:

## II.  DEFINITIONS

1.    Unless otherwise expressly provided herein, terms used in this Stipulation and Settlement Agreement that are defined in CERCLA (as defined below), RCRA (as defined below), the NREPA, regulations promulgated pursuant to CERCLA, RCRA, the NREPA, the Bankruptcy Code, or the Environmental Trust Agreement attached as Exhibit B hereto shall have the meaning assigned to them therein.

2.    Whenever terms listed below are used in this Stipulation and Settlement Agreement, the following definitions shall apply:

a.    "Administrative Costs" means the fees, costs, and expenses incurred in connection with the administration of the Environmental Response Trust, including but not limited to real estate management, taxes, insurance, property marketing costs, and maintenance costs, but excluding any expenses (including, without limitation, expenses of the Environmental Response Trust and its third-party professionals) incurred in overseeing, managing, and performing Environmental Actions.

b.    "Environmental Agency Claims" has the meaning set forth in the recitals.

c.    "Bankruptcy Cases" has the meaning set forth in the recitals.

d.      "Bankruptcy Code" means title 11 of the United States Code, as then amended, and subject to any further amendments retroactively applicable to the Petition Date.

e.      "Bankruptcy Court" has the meaning set forth in the recitals.

f.      "CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as now in effect or hereafter amended.

g.      "Dayton VOC Site" has the meaning set forth in the recitals.

h.      "DPH Flint Sites" has the meaning set forth in the recitals.

i.       "DPH Rootstown Site" has the meaning set forth in the recitals.

j.      "DPH Saginaw Site" has the meaning set forth in the recitals.

k.      "DPH Site" and/or "DPH Sites" has the meaning set forth in the recitals, and further means all the rights, titles, and interests in and to, including, without limitation, all of the fee ownership in, all appurtenances, rights, easements, rights-of-way, mining rights, mineral rights, mineral claims, appurtenant groundwater rights, associated surface water rights, claims, and filings, permits, licenses, third-party warranties and guaranties for equipment or services to the extent transferable under bankruptcy law, or other interests (including without limitation all fixtures, improvements, personal property (tangible and intangible) and equipment located thereon as of the Effective Date).

l.      "Effective Date" means the effective date of this Stipulation and Settlement Agreement, as provided in Paragraph 63 hereof.

m.      "Environmental Actions" means any and all environmental activities authorized or required under Environmental Law, or any and all environmental activities as directed by the Lead Agency,  that occur after the Effective Date and that are related to any of the DPH Sites, including but not limited to response or remedial actions, removal actions, corrective action, closure or post-closure care, reclamation, investigations, studies, remediation, interim actions, final

8

actions, emergency actions, water treatment, implementation of engineered structures and controls, monitoring, repair and replacement of engineered structures, monitoring equipment and controls, operation and maintenance, implementation, operation and maintenance of institutional controls, coordination and integration of reuse and remedial efforts and initiatives (including, without limitation, multi-stakeholder communications), and, if required, long-term stewardship and perpetual custodial care activities. "Environmental Actions" also include the above environmental activities relating to the migration of hazardous substances or contaminants emanating from the DPH Sites.  For avoidance of doubt, 'Environmental Actions" shall not include natural resource assessment or restoration.

n.    "Environmental Agencies" means EPA, MDEQ, and Ohio EPA.

o.    "Environmental Information" means all environmental reports, audits, analyses, records, studies and other documents containing non-privileged information prepared by or otherwise in the possession, custody or control of Reorganized Debtors or their technical consultants that are based on or otherwise reflect information related to environmental activities or conditions at the DPH Sites.  For avoidance of doubt, Environmental Information shall include all technical and/or sampling data, but shall not include analysis of this data prepared in anticipation of litigation or otherwise subject to the attorney client privilege.

p.    "Environmental Law" or "Environmental Laws" means, whenever in effect, all federal, state and local statutes, regulations, rules, ordinances and similar provisions having the force or effect of law, all judicial and administrative orders and determinations and all common law concerning public health and safety, worker health and safety, pollution or protection of the environment, including, without limitation, the Atomic Energy Act ("AEA"), CERCLA, Clean Water Act ("CWA"), Clean Air Act ("CAA"), Emergency Planning and Community Right-to-Know Act ("EPCRA"), Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), Resource

9

Conservation and Recovery Act ("RCRA"), Safe Drinking Water Act ("SDWA"), Toxic Substances

Control Act ("TSCA"), and any state or local equivalents.

q.     "Environmental Response Trust" has the meaning set forth in the Environmental

Trust Agreement.

r.     "Environmental Trust Account" has the meaning set forth in the Environmental

Trust Agreement.

s.     "Environmental Trust Administrative Account" has the meaning set forth in the

Environmental Trust Agreement.

t.     "Environmental Trust Agreement" means the Environmental Trust Agreement,

which is attached as Exhibit A hereto.

u.     "Environmental Trust Assets" has the meaning set forth in the Environmental

Trust Agreement.

v.     "Environmental Trust Environmental Cost Account" has the meaning set forth in

the Environmental Trust Agreement.

w.     "Environmental Trust Parties" has the meaning set forth in the Environmental

Trust Agreement.

x.     "Environmental Trustee" has the meaning set forth in the Environmental Trust

Agreement.

y.     "EPA" has the meaning set forth in the recitals.

z.     "Excess Funding" has the meaning set forth in Paragraph 28 herein.

aa.     "Lead Agency" means the designated Environmental Agency identified in

Paragraph 9.

bb.     "MDEQ" has the meaning set forth in the recitals.

cc.     "MDEQ Claim" has the meaning set forth in the recitals.

10

dd.     "Non-Lead Agency" means the designated Environmental Agency identified in Paragraph 10.

ee.     "Ohio EPA" has the meaning set forth in the recitals.

ff.     "120-Day Budget" has the meaning given in Paragraph 22, herein.

gg.     "Parties" has the meaning set forth in the recitals.

hh.     "Petition Date" has the meaning set forth in the recitals.

ii.     "Plan of Reorganization" or "Plan" has the meaning set forth in the recitals.

jj.     "Postpetition," with respect to a particular Debtor, refers to the time period from and after the Petition Date applicable to such Debtor.

kk.     "Prepetition," with respect to a particular Debtor, refers to the time period prior to the Petition Date applicable to such Debtor.

ll.     "RCRA" means the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 *et seq.*, as now in effect or hereafter amended.

mm.     "Real Property Information" means all non-privileged documents in Reorganized Debtors' possession, custody, or control, or reasonably obtainable by Reorganized Debtors, related to property ownership, property taxes, leases, contracts, security, insurance, or administration or potential sales of a DPH Site.

nn.     "Reorganized Debtors" has the meaning set forth in the recitals.

oo.     "States" means the State of Michigan and the State of Ohio.

pp.     "Superfund" means the "Hazardous Substance Superfund" established by 26 U.S.C. § 9507 or, in the event such Hazardous Substance Superfund no longer exists, any successor fund or comparable account of the Treasury of the United States to be used for removal or remedial actions to address releases or threats of releases of hazardous substances.

11

qq.    "United States" shall mean the United States of America (on behalf of EPA) and all of its agencies, departments, and instrumentalities.

rr.    "U.S. Administrative Expense Claim" has the meaning set forth in the recitals.

## III. JURISDICTION

2.    The Bankruptcy Court has jurisdiction over the subject matter hereof pursuant to 28 U.S.C. §§ 157, 1331, and 1334.

## IV. PARTIES BOUND; SUCCESSION AND ASSIGNMENT

3.    This Stipulation and Settlement Agreement applies to, is binding upon, and shall inure to the benefit of the Parties, the Environmental Trust Parties, their legal successors and assigns, and any trustee, examiner, or receiver appointed in the Bankruptcy Cases.

## V. RESOLUTION OF PROOFS OF CLAIM

4.    Upon the occurrence of the Effective Date, the MDEQ Claim, proof of claim number 15785, shall be disallowed and expunged.  Proof of administrative expense claim number 19786, relating to the Dayton VOC Site, shall be allowed as an administrative expense claim in the amount of $157,935.00; the U.S. administrative expense claims 18956 and 19539 shall be disallowed and expunged.  The Environmental Agency Claims and contentions regarding compliance and work obligations with respect to the DPH Sites shall be satisfied in full by the funding of the Environmental Response Trust and as otherwise provided in this Stipulation and Settlement Agreement.

## VI. THE ENVIRONMENTAL RESPONSE TRUST

5.    This Stipulation and Settlement Agreement hereby incorporates in full the Environmental Trust Agreement that is entered into by the parties thereto, and which is attached hereto as Exhibit A.

6.    Le Petomane XXVIII, Inc., not individually but solely in its representative capacity as Environmental Trustee, by and through Jay A. Steinberg, not individually but solely in his representative

12

capacity as president of the Environmental Trustee, is appointed to serve as the Environmental Trustee to administer the Environmental Response Trust and the Environmental Trust Accounts in accordance with this Settlement Agreement and the Environmental Trust Agreement, attached hereto as Exhibit A.

7.    Within two (2) business days of the Effective Date, the Reorganized Debtors shall cause to be transferred to the Environmental Response Trust, at the direction of the Environmental Trustee, cash in the amount of $23,142,065.00, as set forth in greater detail in Paragraph 21, herein.

8.    Simultaneously with the payments to the Environmental Response Trust under Paragraph 7, Reorganized Debtors also will transfer all of their right, title, and interest in the DPH Sites (as defined above), including, without limitation, all of their fee ownership in, all appurtenances, rights, easements, rights-of-way, mining rights (including unpatented mining claims, mill site claims, and placer claims), mineral rights, mineral claims, appurtenant groundwater rights, associated surface water rights, claims, and filings, permits, licenses, third-party warranties and guaranties for equipment or services to the extent transferable under bankruptcy law, or other interests (including without limitation all fixtures, improvements, personal property (tangible and intangible) and equipment located thereon as of the Effective Date) related to the DPH Sites, but not including Letter of Credit No. 63655963 and  Letter of Credit No. 63656029, as further discussed and described in Paragraphs 45 and 46 of this Agreement, to the Environmental Response Trust. Prior to the Effective Date, but not thereafter, Reorganized Debtors may remove from the DPH Sites the machinery, equipment, fixtures, furniture, computers, tools, parts, supplies, and other tangible personal property, used, or held for use, in connection with the operation of Reorganized Debtors' operating assets.  On and after the Effective Date, Reorganized Debtors shall have no ownership or other residual interest whatsoever with respect to the Environmental Response Trust or the DPH Sites.  The transfer of ownership by the Reorganized Debtors of any such assets or other property shall be a transfer of all of the Reorganized Debtors' right, title and interests therein, and

13

the transfer (i) shall be as is and where is, with no warranties of any nature; (ii) shall be free and clear of all claims, liens, and interests against the Reorganized Debtors, including liens for the payments of monetary claims, such as property taxes, or other monetary claims asserted or that could have been asserted in the bankruptcy proceeding, but shall remain subject to any existing *in rem* claims that do not secure payment of monetary claims (such as easements or deed restrictions); (iii) shall be subject to any rights of the Environmental Agencies under this Stipulation and Settlement Agreement; and (iv) shall be accomplished by transfer of good title, with all such conveyance documents to be agreed to in form by the Reorganized Debtors and the Environmental Trustee.  Reorganized Debtors, as applicable, will reasonably cooperate with the Environmental Agencies and the Environmental Trustee to deliver to the title company (which will cause to be recorded in the appropriate real property records) the transfer documents as soon as reasonably practicable, but not to exceed 30 days after the Effective Date.  In addition to and simultaneous with the payment set forth in Paragraph 7, Reorganized Debtors shall pay to the Environmental Response Trust an amount equal to the recording costs and transfer fees relating to the title transfers for the DPH Sites, and Reorganized Debtors' pro-rata share of such real property taxes that have accrued or become a lien on the DPH Sites during the calendar year as of the Effective Date.  If the actual bills for such real property taxes have not been issued, then such proration shall be based on an amount equal to such real property taxes for the prior year or tax period, which shall constitute a final proration and not be subject to further adjustment.  Upon full payment by the Reorganized Debtors as set forth in Paragraph 7 and this Paragraph 8, the Environmental Response Trust shall be responsible for paying all real property taxes first coming due following the Effective Date relating to the DPH Sites.  Reorganized Debtors shall execute, or cause to be executed, and record, if necessary, all necessary releases of any liens or security interests held by any Reorganized Debtor against any of the DPH Sites.  After Reorganized Debtors execute this Stipulation and Settlement

14

Agreement, Reorganized Debtors shall not further encumber the DPH Sites or their other interests

therein and shall maintain such properties in a commercially reasonable manner in accordance with

Reorganized Debtors' current practices, including the improvements thereon and the fixtures thereto

that are related to ongoing remediation activities in the condition that they exist as of the date of

such execution, except for ordinary wear and tear, casualty and condemnation, and except to the

extent that ongoing environmental activities require otherwise.

9.     For each DPH Site, Environmental Actions implemented or funded by the

Environmental Trustee shall be overseen by a "Lead Agency," which shall have the authority to

approve or disapprove the proposed budget for the relevant Environmental Trust Environmental

Cost Account (but only after consultation with the Non-Lead Agency where the Non-Lead Agency

requests such consultation).  The Lead Agency for each of the DPH Sites is as follows: for the DPH

Flint Sites, EPA; for the DPH Saginaw Site, MDEQ; for the DPH Rootstown Site, Ohio EPA.  After

this Stipulation and Settlement Agreement's entry, the Environmental Agencies may provide the

Environmental Trustee with joint written notice that the Lead Agency for a particular DPH Site has

changed.

10.     The "Non-Lead Agency" for the DPH Saginaw Site and DPH Rootstown Site will be

EPA, and the Non-Lead Agency for the DPH Flint Sites will be MDEQ.  After this Stipulation and

Settlement Agreement's entry, the Environmental Agencies may provide the Environmental Trustee

with joint written notice that the Non-Lead Agency for a particular Site has changed.

11.     The purpose of the Environmental Response Trust shall be to: (i) own the DPH Sites;

(ii) carry out administrative and property management functions related to the DPH Sites; (iii)

manage and/or fund implementation of future Environmental Actions approved by the Lead

Agencies with respect to the DPH Sites; (iv) fulfill other obligations as set forth in this Stipulation

and Settlement Agreement; (v) pay certain future oversight costs; and (vi) ultimately sell, transfer,

15

or otherwise dispose or facilitate the reuse of all or part of the Environmental Trust Assets, if possible, all as provided herein with no objective or authority to engage in any trade or business. The performance by the Environmental Trustee of its duties under this Agreement, including but not limited to the sale, lease or other disposition of some or all of the DPH Sites, shall not be considered to be the Environmental Trustee's engaging in a trade or business.  The Environmental Response Trust shall be funded as specified in Paragraph 21 herein.

12.     The Environmental Response Trust by and through the Environmental Trustee not individually but solely in its representative capacity, Reorganized Debtors, and the Lead Agencies for the DPH Sites shall make reasonable efforts to exchange information and reasonably cooperate to determine the appropriate disposition of any contracts or unexpired leases that relate to the relevant DPH Site.

13.     None of the Environmental Agencies shall be deemed to be an owner, operator, trustee, partner, agent, shareholder, officer, or director of the Environmental Response Trust or the Environmental Trust Parties, or to be an owner or operator of any of the DPH Sites on account of this Stipulation and Settlement Agreement or actions contemplated thereby.

14.     Reorganized Debtors shall provide to the Environmental Trustee Environmental Information and Real Property Information in accordance with Section XIII below.

15.     Prior to any conveyance of a DPH Site to the Environmental Response Trust pursuant to this Stipulation and Settlement Agreement, the Reorganized Debtors and their affiliates shall vacate such DPH Site and surrender possession of such Site to the Environmental Trustee, unless otherwise approved by the Environmental Trustee.

16.     Notwithstanding any other provision of this Stipulation and Settlement Agreement, the Reorganized Debtors shall continue, at their own expense, the operation of any ongoing environmental activities at the DPH Sites until the funds and the DPH Sites are transferred to the Environmental

16

Response Trust in accordance with this Stipulation and Settlement Agreement and the Environmental

Trust Agreement.

17.     The Environmental Trustee shall at all times seek to have the Environmental Response

Trust treated as a "qualified settlement fund" as that term is defined in Treasury Regulation Section

1.468B-1.  For purposes of complying with Section 468B(g)(2) of the Internal Revenue Code, this

Stipulation and Settlement Agreement shall constitute a consent decree between the Parties.  Approval of

the Bankruptcy Court, as a unit of the District Court, shall be sought, and the Bankruptcy Court shall retain

continuing jurisdiction over the Environmental Response Trust sufficient to satisfy the requirements of

Treasury Regulation Section 1.468B-1.  The Environmental Trustee shall not elect to have the

Environmental Response Trust treated as a grantor trust.  The Environmental Response Trust shall be

treated as a separate taxable entity.  The Environmental Trustee shall cause any taxes imposed on the

earnings of the Environmental Response Trust to be paid out of such earnings and shall comply with all

tax reporting and withholding requirements imposed on the Environmental Response Trust under

applicable tax laws.  The Environmental Trustee shall be the "administrator" of the Environmental

Response Trust pursuant to Treasury Regulation Section 1.468B-2(k)(3).

## VII. <u>ENVIRONMENTAL TRUST ACCOUNTS</u>

18.     The Environmental Trustee shall create a segregated Environmental Trust

Environmental Cost Account within the Environmental Response Trust for each of the DPH Sites,

and a separate, single Environmental Trust Administrative Account for all of the DPH Sites.  The

purpose of an Environmental Trust Environmental Cost Account shall be to provide funding for

future Environmental Actions and, with respect to some of the DPH Sites, certain future oversight

costs of one or more Environmental Agencies with respect to that DPH Site, within an approved

budget as set forth in Paragraph 23.  The purpose of the Environmental Trust Administrative

Account is to fund the payment of real estate taxes, income taxes (to the extent applicable),

17

insurance, and other Administrative Costs associated with one or more of the DPH Sites, within an approved budget as set forth in Paragraph 24.

19.     Environmental Trust Assets shall be held in trust solely for the purposes provided in this Stipulation and Settlement Agreement.  The Environmental Agencies shall be the sole beneficiaries of the Environmental Trust Accounts.  The Reorganized Debtors shall not have any rights or interest in the Environmental Trust Assets, or to any funds remaining in any of the Environmental Trust Accounts upon the completion of any and all final actions and disbursement of any and all final costs with respect to the DPH Sites.

20.     All interest, dividends and other revenue earned in an Environmental Trust Account shall be retained in the respective Environmental Trust Account and used only for the same purposes as the principal in that account as provided in this Stipulation and Settlement Agreement, subject to any reallocation approved by the Environmental Agencies in accordance with the terms of this Stipulation and Settlement Agreement.

21.     In settlement and full satisfaction of all claims asserted by the Environmental Agencies against the Reorganized Debtors with respect to any and all costs of response incurred, or to be incurred in connection with the DPH Sites, and in satisfaction of the alleged injunctive compliance, work, or other obligations covered by the covenants not to sue contained in this agreement, Reorganized Debtors shall, within two (2) business days of the Effective Date, make the following payments:

    a.     $10,425,449 to be deposited in the Environmental Trust Environmental Cost Account for the DPH Saginaw Site.

    b.     $9,148,524 to be deposited in the Environmental Trust Environmental Cost Account for the DPH Flint Sites.

c.    $1,191,641 to be deposited in the Environmental Trust Environmental Cost Account for the DPH Rootstown Site.

d.    $2,376,451 to be deposited in the Environmental Trust Administrative Account for the DPH Sites.

22.    Prior to the Effective Date, the Environmental Trustee shall submit to the Environmental Agencies for approval a budget for the first 120 days following the Effective Date (a "120-Day Budget") for each Environmental Trust Environmental Cost Account and for the Environmental Trust Administrative Account.  The Lead Agency shall have the authority to approve or disapprove the proposed 120-Day Budget for the relevant Environmental Trust Environmental Cost Account after consultation with the Non-Lead Agency, if such consultation is requested by the Non-Lead Agency. The 120-Day Budget for the Environmental Trust Administrative Account shall be deemed approved upon approval by each of the Environmental Agencies.  No expenses may be incurred or paid from an Environmental Trust Environmental Cost Account or the Environmental Trust Administrative Account by the Environmental Trustee that are inconsistent with an approved 120-Day Budget except as provided in Section 3.2.1, 3.2.2, and/or 3.2.4 of the Environmental Trust Agreement.

23.    Within 90 days following the Effective Date in the first year and thereafter at least 60 days before January 1 of each year following the Effective Date, the Environmental Trustee shall provide to the Lead and Non-Lead Agency for each of the DPH Sites, a statement showing the balance of each cost account and proposed budget for the coming year.  The Lead Agency shall have the authority to approve or disapprove the proposed budget for the relevant Environmental Trust Environmental Cost Account, but only after consultation with the Non-Lead Agency where the Non-Lead Agency requests such consultation.

19

24.     Within 90 days following the Effective Date in the first year and thereafter at least 60 days before January 1 of each year, the Environmental Trustee shall provide the Environmental Agencies with an annual budget for administration of the Environmental Response Trust for review and approval or disapproval.

25.     The Environmental Trustee shall pay funds from an Environmental Trust Environmental Cost Account to the Lead Agency making a written request for funds for reimbursement within 30 days following such request.  Such written request shall: (i) be in accordance with the approved budget, and (ii) shall specify what the funds were used for and shall certify that they were used only for Environmental Actions performed and/or oversight costs incurred after the Effective Date by the Lead Agency with respect to that Site.

26.     The Environmental Trustee shall also pay funds from an Environmental Trust Environmental Cost Account to the Non-Lead Agency making a written request for funds within 30 days following such request where the Lead Agency has requested the assistance of the Non-Lead Agency with respect to that Site.  Such written request shall: (i) be in accordance with the approved budget, and (ii) shall specify what the funds were used for and shall certify that they were used only for Environmental Actions performed and/or oversight costs incurred after the Effective Date by the Non-Lead Agency with respect to that Site.

27.     In the case of requests by the Lead Agency to the Environmental Trustee to use the funds from a particular Environmental Trust Environmental Cost Account to perform Environmental Actions in accordance with the approved budget, the Environmental Trustee shall utilize the funds and interest earned thereon from that Environmental Trust Environmental Cost Account to undertake such work promptly and in accordance with any schedule approved by the Lead Agency.  The Environmental Trustee shall require liability insurance as set forth in the Environmental Trust Agreement from each contractor hired to perform work.

28.     The Lead and Non-Lead Agency for a particular DPH Site may agree in writing at any time after the Effective Date that, based on new information about the estimated cost of Environmental Action or the assumption of liability by a buyer or other party for Environmental Action at that DPH Site, the actual funding needed for the DPH Site is less than was projected by the Lead Agency for that Site ("Excess Funding").  In such event, the United States, the State of Michigan and the State of Ohio may instruct jointly in writing that such Excess Funding be transferred to one or more of the other Environmental Trust Cost Accounts established under this Stipulation and Settlement Agreement, or to the Environmental Trust Administrative Account, if there are remaining actions to be performed and a demonstrated need for additional trust funding or, to the extent there are no such remaining actions with a demonstrated need for additional funding, to the Superfund, a clean-up fund or account in Michigan to be designated by the MDEQ, and/or the hazardous waste clean-up fund created by Ohio Revised Code 3734.28.

29.     After the Lead and Non-Lead Agencies have confirmed to the Environmental Trustee that all final actions have been completed, and all final costs have been disbursed for any Site, any funds remaining in the  Environmental Trust Environmental Cost Account for that Site shall be transferred in the following order: (i) first, in accordance with instructions provided jointly by the United States, the State of Michigan, and the State of Ohio, to other Environmental Trust Environmental Cost Accounts for one or more of the DPH Sites, if there are remaining actions to be performed and a demonstrated need for additional funding, or to the Environmental Trust Administrative Account; (ii) second, in accordance with instructions provided jointly by the United States, the State of Michigan, and the State of Ohio, to the Superfund, a clean-up fund or account in Michigan to be designated by the MDEQ, and/or the hazardous waste clean-up fund created by Ohio Revised Code 3734.28.

21

30.      Annually, beginning with the first year after the Effective Date, the Environmental Trustee shall provide the Environmental Agencies with an update of anticipated future Administrative Costs of the Environmental Response Trust.  At any time four (4) years after the Effective Date, the United States, the State of Michigan and the State of Ohio may instruct in writing after consultation with the Environmental Trustee that any conservatively projected surplus funding in the Environmental Trust Administrative Account be transferred to one or more of the other Environmental Trust Environmental Cost Accounts if there are remaining actions to be performed and with a need for additional trust funding.

**VIII.  DAYTON VOC SITE**

31.      Within two (2) business days of the Effective Date, and in settlement and satisfaction of all claims asserted by EPA against the Reorganized Debtors for the Dayton VOC Site, the Reorganized Debtors shall pay to the United States a sum of $157,935.00 on account of allowed proof of administrative expense claim number 19786.  Reorganized Debtors shall transfer the payment pursuant to the instructions set forth in the following paragraph, to be deposited in the Delphi VOC Plume Site special account to be retained and used to conduct or finance response actions at or in connection with the Dayton VOC Site, or to be transferred by EPA to the Superfund.

Cash distributions to the United States shall be made by FedWire Electronic Funds Transfer ("EFT") to the United States Department of Justice account in accordance with current EFT procedures. Payment shall be made in accordance with instructions provided to the Reorganized Debtors by the Financial Litigation Unit of the United States Attorney's Office for the Southern District of New York and shall reference Bankruptcy Case Number 05-44481 and DJ# 90-11-3-08913.  The Reorganized Debtors shall transmit written confirmation of such payments to the United States at the addresses specified in Paragraph 59.

32.    Any claim asserted in the Bankruptcy Cases by the State of Ohio with respect to the Dayton VOC site has been disallowed and/or withdrawn, and as of the Effective Date, Ohio shall not assert claims against DPH pertaining to the Dayton VOC Site.

33.    The Environmental Response Trust will have no ownership interest in the Dayton VOC site.

## IX. ENVIRONMENTAL RESPONSE TRUST MISCELLANEOUS PROVISIONS

34.    Except as otherwise provided in Paragraph 41, in no event shall any of the Environmental Trust Parties be held liable to any third parties for any liability, action, or inaction of any other party, including Reorganized Debtors or any other Environmental Trust Party.

35.    The Environmental Trustee shall implement any institutional controls or deed restrictions requested by the Environmental Agencies with respect to any of the DPH Sites. Additionally, the Environmental Trustee shall abide by the terms of any existing institutional controls or deed restrictions in place or of record as to any of the DPH Sites.

36.    The Environmental Response Trust is intended to be governed by the terms of this Stipulation and Settlement Agreement and the Environmental Trust Agreement and shall not be subject to any provision of the Uniform Custodial Trust Act as adopted by any state, now or in the future.

37.    The Environmental Trustee shall provide the Environmental Agencies and their representatives and contractors access to all portions of the DPH Sites that the Environmental Response Trust owns at all reasonable times for the purposes of conducting Environmental Actions at or near the DPH Sites.

38.    The United States, the State in which the relevant Site is located, or an Environmental Agency that is a designee thereof, may at any time propose in writing to take ownership of any of the DPH Sites or any part thereof.  Any such proposed transfer and the terms

23

thereof are subject to approval in writing by EPA and the State (after consultation with the Environmental Trustee) in which the Site is located. However, neither the United States nor any State shall be required to accept an ownership interest in remaining properties upon termination of the Environmental Response Trust.

39.      The Environmental Trustee may, at any time, seek the approval of the Lead Agency for the relevant Site is located for the sale or lease or other disposition of all or part of a Site. The Lead Agency shall approve or deny the sale or lease or other disposition of all or part of a Site following consultation with the Non-Lead Agency.

40.      Subject to the approval of the Environmental Agencies, the Environmental Trustee may propose a sale, lease, or disposition of a Site that includes funding from, or the retention of some portion of liability by, the respective Environmental Trust Environmental Cost Account and/or the Environmental Trust Administrative Account, provided that the net effect of any proposed sale, lease or disposition is to lessen the total financial obligations and liabilities as would otherwise be incurred in the absence of any such sale, lease, or disposition.

41.      None of the Environmental Trust Parties shall be personally liable unless the Bankruptcy Court, by a final order that is not reversed on appeal, finds that it committed fraud or willful misconduct after the Effective Date in relation to the Environmental Trustee's duties. There shall be an irrebuttable presumption that any action taken or not taken with the approval of the Bankruptcy Court does not constitute an act of fraud or willful misconduct, provided that there has been no misrepresentation to the Court. Any judgment against an Environmental Trust Party and any costs of defense relating to any Environmental Trust Party shall be paid from and limited to funds from the Environmental Trust Environmental Cost Account for the relevant Site only if it relates to the Environmental Action at the Site, or the Environmental Trust Administrative Account, without the Environmental Trust Party having to first pay from its own funds for any personal

24

liability or costs of defense unless a final order of the Bankruptcy Court, that is not reversed on appeal, determines that it committed fraud or willful misconduct in relation to the Environmental Trust Party's duties; in the event the Bankruptcy Court makes such a determination, the Environmental Trust Party shall reimburse the relevant Environmental Trust Account for all expended funds.  Nothing herein shall permit any judgment against the Environmental Trust Environmental Cost Account related to a particular Site to be paid from the Environmental Trust Environmental Cost Account for another Site.

42.    The Environmental Trust Parties are exculpated by all persons, including without limitation, holders of claims and other parties in interest, of and from any and all claims, causes of action and other assertions of liability arising out of the ownership of Environmental Trust Assets and the discharge of the powers and duties conferred upon the Environmental Response Trust and/or Environmental Trustee by this Stipulation and Settlement Agreement or any order of court entered pursuant to or in furtherance of this Stipulation and Settlement Agreement, or applicable law or otherwise.  No person, including without limitation, holders of claims and other parties in interest, will be allowed to pursue any claims or cause of action against any Environmental Trust Party for any claim against Reorganized Debtors, for making payments in accordance with this Stipulation and Settlement Agreement or any order of court, or for implementing the provisions of this Stipulation and Settlement Agreement or any order of court.  Nothing in this Paragraph or the Stipulation and Settlement Agreement shall preclude the United States and/or the States from enforcing the terms of this Stipulation and Settlement Agreement against the Environmental Trust Parties.

43.    Except as may otherwise be provided herein: (a) the Environmental Trust Parties may rely conclusively on, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document

25

believed by them to be genuine and to have been signed or presented by the proper party or parties; (b) the Environmental Trust Parties may, on behalf of the Environmental Response Trust or on their own behalf in their capacity as Environmental Trust Parties, consult with legal counsel, financial or accounting advisors and other professionals and shall not be personally liable for any action taken or not taken in accordance with the advice thereof; and (c) persons or entities dealing with the Environmental Trust Parties shall look only to the Environmental Trust Assets that may be available to them consistent with this Stipulation and Settlement Agreement to satisfy any liability incurred by the Environmental Trust Parties to such person in carrying out the terms of this Stipulation and Settlement Agreement or any order of the Bankruptcy Court, and the Environmental Trust Parties shall have no personal obligations to satisfy any such liability other than as provided in Paragraph 41.

## X.  **OUTSTANDING OBLIGATIONS**

44.       As of the Effective Date, the Environmental Response Trust shall become beneficiary of all insurance policies applicable to past, present or future occurrences at the DPH Sites.  Reorganized Debtors agree to take such reasonable steps as are appropriate to effectuate this Paragraph.

45.       The Reorganized Debtors have provided the MDEQ with a letter of credit, LOC No. 63655963, pursuant to Part 111 of the NREPA, MCL 324.11101 et seq., and its implementing rules MAC R 299.9705, to secure certain Environmental Actions at the DPH Flint East sites.  The Director of MDEQ or his or her designee, will release the letter of credit subject to and in reliance upon (i) the Environmental Trustee's entry into this Stipulation and Settlement Agreement reflecting its agreement to perform the Environmental Actions for which the letter of credit was issued, in accordance with the terms of Settlement Agreement; (ii) entry of this Settlement Agreement by the Court; and (iii) the Reorganized Debtors fully funding the Environmental

26

Response Trust as required under paragraphs 7 and 21 of this Settlement Agreement. MDEQ will return the letter of credit to the bank for termination within two business days of receiving notice that the Environmental Response Trust has been fully funded.

46.    The Reorganized Debtors have provided the United States with a letter of credit, LOC No. 63656029, pursuant to the Administrative Settlement Agreement and Order on Consent for Removal Action, Docket No. V-W-08-C-884, Dated November 1, 2007, by and among the United States and Delphi Corporation, now DPH Holdings Corp., entered into by the parties thereto in accordance with the authority of CERCLA. The United States will release the letter of credit upon full funding of the administrative expense claim for the Dayton VOC Site as required by Paragraph 28 of this Stipulation and Settlement Agreement.

## XI.    COVENANT NOT TO SUE AND RESERVATION OF RIGHTS

47.    In consideration of all of the foregoing, including the cash payments pursuant to Paragraphs 7 and 31, the full funding of all Environmental Trust Accounts pursuant to Paragraph 21, and the covenants provided by Reorganized Debtors herein, and except as provided in Paragraphs 41 and 50-53, and upon the Reorganized Debtors' full funding of all Environmental Trust Accounts as set forth in Paragraphs 7 and 21, as well as Reorganized Debtors' full payment of the administrative expense claim for the Dayton VOC Site as set forth in Paragraph 31, the United States, on behalf of EPA, and the States covenant not to file a civil action or to take any administrative or other civil action against the Reorganized Debtors or the Environmental Trust Parties pursuant to CERCLA, 42 U.S.C. §§ 9601 *et seq.*, and RCRA, 42 U.S.C. §§ 6901 *et seq.*, or any similar state laws with respect to each of the DPH Sites and the Dayton VOC Site; with respect to the DPH Rootstown Site, the United States, on behalf of EPA, and the State of Ohio covenant not to file a civil action or to take any administrative or other civil action against the Reorganized Debtors or the Environmental Trust Parties pursuant to the Clean Air Act, 42 U.S.C. §§ 7401 *et seq.*, or any rules promulgated thereunder.

48.     This Stipulation and Settlement Agreement in no way impairs the scope and effect of the Reorganized Debtors' discharge under the Plan, the Plan Approval Order, or Section 1141 of the Bankruptcy Code as to any third parties or as to any Claims that are not addressed by this Stipulation and Settlement Agreement.

49.     Without in any way limiting the covenant not to sue (and the reservations thereto) set forth in Paragraph 47, and notwithstanding any other provision of this Stipulation and Settlement Agreement, such covenant not to sue shall also apply to the Reorganized Debtors' successors and assigns, officers, directors, employees, and trustees, but only to the extent that the alleged liability of the successor or assign, officer, director, employee, or trustee of any Debtor or Reorganized Debtor is based solely on its status as and in its capacity as a successor or assign, officer, director, employee, or trustee of any Debtor or Reorganized Debtor.

50.     The covenants not to sue contained in Paragraphs 47 and 49 of this Stipulation and Settlement Agreement extend only to the Reorganized Debtors and the persons described in Paragraphs 47 and 49 above and do not extend to any other person.  Nothing in this Stipulation and Settlement Agreement is intended as a covenant not to sue or a release from liability for any person or entity other than the Parties, the Environmental Trust Parties, and the persons described in Paragraph 49.  The Parties and the Environmental Trust Parties expressly reserve all claims, demands, and causes of action, either judicial or administrative, past, present, or future, in law or equity, which they may have against all other persons, firms, corporations, entities, or predecessors of the Debtors for any matter arising at or relating in any manner to the DPH Sites or claims addressed herein.

51.     The covenants not to sue and/or agreements not to sue set forth in Paragraphs 47 and 49 do not pertain to any matters other than those expressly specified therein.  The United States and the States expressly reserve, and this Stipulation and Settlement Agreement is without prejudice to, all rights against the Reorganized Debtors and the persons described in Paragraph 49 with respect to all other matters other

28

than those set forth in Paragraph 47.  The United States and the States also specifically reserve, and this Stipulation and Settlement Agreement is without prejudice to, any action based on (i) a failure to meet a requirement of this Stipulation and Settlement Agreement; or (ii) criminal liability.

52.    Nothing in this Stipulation and Settlement Agreement shall be deemed to limit the authority of the United States or the States to take response action under Section 104 of CERCLA, 42 U.S.C. § 9604, or any other applicable law, regulation or rule, or to alter the applicable legal principles governing judicial review of any action taken by the United States or the States pursuant to such authority. Nothing in this Stipulation and Settlement Agreement shall be deemed to limit the information-gathering authority of the United States or the States under Sections 104 and 122 of CERCLA, 42 U.S.C. §§ 9604 and 9622, or any other applicable federal or state law or regulation, or to excuse the Reorganized Debtors or the Environmental Trustee from any disclosure or notification requirements imposed by CERCLA, RCRA, or any other applicable federal or state law, regulation or rule.

53.    The State of Michigan, the State of Ohio, and the Environmental Agencies shall retain the right to issue, obtain, or enforce an order against the Environmental Response Trust to perform Environmental Action under applicable law, including an administrative order, provided that any such order or enforcement is not inconsistent with the provisions of the Stipulation and Settlement Agreement or the Environmental Trust Agreement.  The State of Michigan, the State of Ohio and/or the Environmental Agencies may bring enforcement actions against the Environmental Response Trust that are not inconsistent with the provisions of the Stipulation and Settlement Agreement in other courts having jurisdiction, provided, however, that the Bankruptcy Court shall have primary jurisdiction over any issues relating to (a) approval of budgets and expenditures of budgeted funds (provided, however, that if the Environmental Trustee enters into a consent decree or administrative order on consent, then the State of Michigan, the State of Ohio, and/or the Environmental Agencies may enforce the expenditure of budgeted funds to comply with such

29

consent decree or administrative order on consent in other courts having jurisdiction), (b) changes to

the funding in an Environmental Trust Environmental Cost Account, (c) disputes involving the

Administrative Funding Account, or (d) the removal of the Environmental Trustee.

54.     The Reorganized Debtors and the Environmental Trustee hereby covenant not to sue and

agree not to assert or pursue any claims or causes of action against the United States, the States, MDEQ,

Ohio EPA or the Environmental Trust Parties with respect to the DPH Sites, and the Reorganized Debtors

covenant not to sue and agree not to assert claims or causes of action against the Environmental Trust

Parties, with respect to the DPH Sites, including, but not limited to, (i) any direct or indirect claim for

reimbursement from the Superfund through Sections 106(b)(2), 111, 112, or 113 of CERCLA, 42 U.S.C.

§§ 9606(b)(2), 9611, 9612, or 9613, or any other provision of law; (ii) any claim against the United States

or the States, including any department, agency, or instrumentality of the United States or the States, under

Sections 107 or 113 of CERCLA, 42 U.S.C. §§ 9607 or 9613, or any other provision of law, related to the

DPH Sites; or (iii) any claims arising out of response activities at the DPH Sites.  Such covenant not to sue

shall also apply to the United States' and the States' officers, directors, employees, trustees, successors,

and assigns.  Nothing in this Stipulation and Settlement Agreement shall be deemed to constitute

preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40

C.F.R. § 300.700(d).  Notwithstanding the foregoing, the Reorganized Debtors specifically reserve, and

the Stipulation and Settlement Agreement is without prejudice to, any action based on a failure to meet a

requirement of this Stipulation and Settlement Agreement, provided, however, that nothing in this

sentence shall be deemed to have modified Paragraph 19.

## XII.  CONTRIBUTION PROTECTION

55.     The Parties agree that, and by entering this Settlement Agreement and the Environmental

Trust Agreement, the Bankruptcy Court finds, that this settlement constitutes a judicially-approved

settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that the

Reorganized Debtors and the Environmental Trust Parties are entitled, as of the Effective Date, to

protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. §

9613(f)(2), or as may be otherwise provided by law, for "matters addressed" in this Stipulation and

Settlement Agreement.  Subject to the last sentence of this Paragraph, the "matters addressed" in this

Stipulation and Settlement Agreement, as that phrase is used in Section 113(f)(2) of CERCLA, 42 U.S.C.

§ 9613(f)(2), include, without limitation, claims by the United States, the States, the Environmental

Agencies, or potentially responsible parties for response costs at or in connection with each of the DPH

Sites, including claims related to releases of hazardous substances from any portion of the DPH Sites and

all areas affected by natural migration of such substances from the DPH Sites.

## XIII.  TRANSFERS OF REAL PROPERTY INFORMATION AND ENVIRONMENTAL INFORMATION

56.     Reorganized Debtors shall provide to the Environmental Trustee, at Reorganized

Debtors' expense, within 10 business days after the Effective Date, all Real Property Information

and Environmental Information in the care, custody or control of Reorganized Debtors, their

professionals, consultants and/or contractors.  The Environmental Response Trust shall become the

owner of all such Real Property Information and Environmental Information upon receipt.

57.     Reorganized Debtors make no warranty as to the completeness or accuracy of the

Environmental Information or Real Property Information provided pursuant to this Section.

58.     The United States and the States reserve, and this Stipulation and Settlement

Agreement is without prejudice to, all rights to obtain information regarding the DPH Sites from

Reorganized Debtors pursuant to their information-gathering authority under Sections 104 and 122

of CERCLA, 42 U.S.C. §§ 9604 and 9622, or any other applicable laws.

## XIV.  NOTICES AND SUBMISSIONS

59.     Whenever, under the terms of this Stipulation and Settlement Agreement, written notice is

required to be given, or a report or other document is required to be sent by one Party to another, it shall be

directed to the individuals at the addresses specified below via U.S. certified mail, return receipt requested,

unless those individuals or their successors give notice of a change of address to the other Parties in

writing.  All notices and submissions shall be considered effective upon receipt, unless otherwise

provided.  Except as otherwise provided in this Stipulation and Settlement Agreement, written notice as

specified herein shall constitute complete satisfaction of any written notice requirement in the Stipulation

and Settlement Agreement with respect to the Parties.

As to the United States:

Cristine Irvin Phillips
Assistant United States Attorney
Office of the United States Attorney
for the Southern District of New York
86 Chambers Street, Third Floor
New York, NY 10007
Telephone: (212) 637-2696
Facsimile: (212) 637-2702
E-mail: cristine.phillips@usdoj.gov

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Telephone: (202) 514-5271
Facsimile: (202) 514-4180
File Ref. No. 90-11-3-09688

As to EPA:

Craig Kaufman
Attorney-Advisor
United States Environmental Protection Agency
Office of Site Remediation Enforcement, Regional Support Division
1200 Pennsylvania Avenue, NW (Mail Code 2272A)
Washington, D.C. 20460
Telephone: (202) 564-4284
E-mail: Kaufman.Craig@epa.gov

Cathleen R. Martwick
Associate Regional Counsel
United States Environmental Protection Agency, Region 5
Office of Regional Counsel (C-14J)

32

77 West Jackson Blvd.
Chicago, IL 60604
Telephone: (312) 886-7166
martwick.cathleen@epa.gov

Donald A. Heller
Corrective Action Project Manager
United States Environmental Protection Agency, Region 5
Remediation and Reuse Branch (LU-9J)
77 West Jackson Boulevard
Chicago, IL  60604
(312) 353-1248
heller.donald@epa.gov

As to the State of Michigan:

Celeste R. Gill
Assistant Attorney General
Environment, Natural Resources and Agriculture Division
P.O. Box 30755
Lansing, MI 48909
Telephone: (517) 373-7540
Fax: (517) 373-1610
Email: GillC1@michigan.gov

As to MDEQ:

Delores Montgomery
Chief Hazardous Waste Section
Office of Waste Management and Radiological Protection
Michigan Department of Environmental Quality
P.O. Box 30241
Lansing, MI 48909-7741
Telephone: (517) 284-6565
Fax: (517) 373-4051
Email: montgomeryd1@michigan.gov

Leonard Lipinski
Bankruptcy Specialist
Compliance and Enforcement Section
Remediation and Redevelopment Division
Michigan Department of Environmental Quality
P.O. Box 30246
Lansing, MI 48909-7926
Telephone: (517) 284-5128
Fax: (517) 241-9581
Email: lipinskil@michigan.gov

<u>As to the State of Ohio</u>:

Timothy J. Kern
Principal Assistant Attorney General
Environmental Enforcement Section
Ohio Attorney General Michael DeWine
30 E. Broad St., 25th Floor
Columbus, Ohio 43215
Telephone: (614) 466-5261
Fax: (614) 644-9684
Email: Timothy.Kern@OhioAttorneyGeneral.gov

<u>As to Ohio EPA</u>:

Bruce Weinberg
Manager Compliance and Enforcement Section
Ohio Environmental Protection Agency
Division of Air Pollution Control, Central Office
50 West Town Street, Suite 700
Columbus, Ohio 43215
Telephone: (614) 644-3752
Email: bruce.weinberg@epa.ohio.gov

<u>As to the Reorganized Debtors</u>:

John Brooks
President
DPH Holdings Corp.
World Headquarters
M/C 483-400-530
5725 Delphi Drive
Troy, MI 48098
Telephone: (248) 813-2143
Fax: (248) 813-1406
Email: john.brooks@delphi.com

<u>As to the Environmental Trustee</u>:

Jay A. Steinberg, not individually, but solely as President
Le Petomane XXVIII, Inc., not individually, but solely as Trustee
35 East Wacker Drive, Suite 1550
Chicago, IL  60601
Telephone: (312) 505-2688
Email: bankruptcytrustee-receiver@lepetomaneinctrustee.com

Tanya C. O'Neill
Foley & Lardner LLP
777 E. Wisconsin Ave.

34

Milwaukee, WI  53202
Telephone:  (414) 297-5836
Email: toneill@foley.com

## XV.  <u>JUDICIAL APPROVAL AND OPPORTUNITY FOR PUBLIC COMMENT</u>

60.       This Stipulation and Settlement Agreement shall be lodged with the Bankruptcy Court and shall thereafter be subject to a period of 15 days of public comment following publication of notice of the Stipulation and Settlement Agreement in the Federal Register.

61.       After the conclusion of the public comment period, the United States will file with the Bankruptcy Court any comments received, as well as the United States' responses to the comments, and at that time, if appropriate, the United States will request approval of the Stipulation and Settlement Agreement under applicable environmental laws.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Stipulation and Settlement Agreement disclose facts or considerations which indicate that the Stipulation and Settlement Agreement is not in the public interest.

62.       If for any reason (i) the Stipulation and Settlement Agreement is withdrawn by the United States as provided in Paragraph 61; (ii) the Stipulation and Settlement Agreement is not approved, (iii) the Environmental Trust Agreement is not approved; or (iv) the Bankruptcy Cases are dismissed or converted to  cases under Chapter 7 of the Bankruptcy Code:  (a) this Stipulation and Settlement Agreement shall be null and void and the Parties and Environmental Trustee shall not be bound hereunder or under any documents executed in connection herewith; (b) the Parties and Environmental Trustee shall have no liability to one another arising out of or in connection with this Stipulation and Settlement Agreement or under any documents executed in connection herewith; and (c) this Stipulation and Settlement Agreement and any documents prepared in connection herewith shall have no residual or probative effect or value.

## XVI.  EFFECTIVE DATE

63.     Following the 15 day public comment process following notice published in the

Federal Register and providing for public comment, the date this Stipulation and Settlement

Agreement is approved by the Bankruptcy Court shall be the "Effective Date."

## XVII.  AMENDMENTS/INTEGRATION AND COUNTERPARTS

64.     This Stipulation and Settlement Agreement and any other documents to be executed in

connection herewith or referred to herein shall constitute the sole and complete agreement of the Parties

and Environmental Trustee hereto with respect to the matters addressed herein.  This Stipulation and

Settlement Agreement may not be amended except by a writing signed by all Parties and the

Environmental Trustee.

65.     Each undersigned representative of a Party or Environmental Trustee certifies that he or

she is fully authorized to execute this Stipulation and Settlement Agreement on behalf of such Party and

Environmental Trustee and bind it legally to the terms and provisions herein.

66.     This Stipulation and Settlement Agreement may be executed in counterparts, each of

which shall constitute an original, and all of which shall constitute one and the same agreement.

## XVIII. RETENTION OF JURISDICTION

67.     The Bankruptcy Court (or, upon withdrawal of the Bankruptcy Court's reference, the

United States District Court of the Southern District of New York) shall retain jurisdiction over the subject

matter of this Stipulation and Settlement Agreement and the Parties and Environmental Trustee for the

duration of the performance of the terms and provisions of this Stipulation and Settlement Agreement for

the purpose of enabling any of the Parties and Environmental Trustee to apply to the Bankruptcy Court at

any time for such further order, direction, and relief as may be necessary or appropriate for the

construction or interpretation of this Stipulation and Settlement Agreement or to effectuate or enforce

compliance with its terms.

36

So Ordered in White Plains, New York, this _____ day of November, 2013

_____
HON. ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

THE UNDERSIGNED PARTIES ENTER INTO THIS STIPULATION AND SETTLEMENT AGREEMENT:

FOR THE UNITED STATES OF AMERICA:

PREET BHARARA
United States Attorney

Date: __11/8/13__    By: _____
CRISTINE IRVIN PHILLIPS
Assistant United States Attorney
Office of the United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, NY 10007


Date: _____    By: _____
ROBERT G. DREHER
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


Date: _____    By: _____
ALAN S. TENENBAUM
Senior Bankruptcy Counsel
ROBERT DARNELL
Trial Attorney
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044

37

So Ordered in White Plains, New York, this _____ day of November, 2013

_____

HON. ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

THE UNDERSIGNED PARTIES ENTER INTO THIS STIPULATION AND SETTLEMENT
AGREEMENT:

FOR THE UNITED STATES OF AMERICA:

PREET BHARARA
United States Attorney

Date: _____    By: _____
CRISTINE IRVIN PHILLIPS
Assistant United States Attorney
Office of the United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, NY 10007

Date: 11/7/13    By: _____
ROBERT G. DREHER
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

Date: 11/8/13    By: _____
ALAN S. TENENBAUM
Senior Bankruptcy Counsel
ROBERT DARNELL
Trial Attorney
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044

37

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:


Date: *November 8, 2013*    By: _____

ROBERT A. KAPLAN
Regional Counsel
U.S. Environmental Protection Agency
Region 5



Date:    11-8-13    By: _____

RICHARD KARL
Director
Superfund Division
U.S. Environmental Protection Agency
Region 5

FOR THE STATE OF MICHIGAN ON BEHALF OF THE MICHIGAN DEPARTMENT OF
ENVIRONMENTAL QUALITY:

Date:  _11- 7- 13_

Bill Schuette
Attorney General

Celeste R. Gill (P52484)
Assistant Attorney General
Environment, Natural Resources and
Agriculture Division
6th Floor, G. Mennen Williams Building
525 West Ottawa Street
P.O. Box 30755
Lansing, MI 48909
Tel.: (517) 373-7540
Fax: (517) 373-1610
gillc1@michigan.gov
Attorneys for the Michigan Department
of Environmental Quality

FOR THE STATE OF OHIO ON BEHALF OF THE OHIO ENVIRONMENTAL PROTECTION
AGENCY:


MICHAEL DeWINE
OHIO ATTORNEY GENERAL

Date: _NOVEMBER 8, 2013_     By: _____

Timothy J. Kern
Principal Assistant Attorney General
Environmental Enforcement Section
30 East Broad Street, 25th Floor
Columbus, Ohio 43215
Telephone: (614) 466-5261
Fax: (614) 644-9684
Email: Timothy.Kern@OhioAttorneyGeneral.gov

FOR THE REORGANIZED DEBTORS:

Date:  06 Nov 2013                    By: _____

                                         John Brooks
                                         President
                                         DPH Holdings Corp., et al.,
                                         World Headquarters
                                         M/C 483-400-530
                                         5725 Delphi Drive
                                         Troy, MI 48098

Date:  November 7, 2013             By: _____

                                         Kevin Holewinski
                                         Daniella Einik
                                         JONES DAY
                                         Attorneys for DPH Holdings Corp., et al.,
                                         Reorganized Debtors
                                         51 Louisiana Ave., N.W.
                                         Washington, D.C. 20001-2113

Date: _____             By: _____

                                         John Wm. Butler, Jr
                                         John K. Lyons
                                         Ron E. Meisler
                                         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                                         Attorneys for DPH Holdings Corp., et al.,
                                         Reorganized Debtors
                                         155 North Wacker Drive
                                         Chicago, Illinois 60606

                                         - and -

                                         Four Times Square
                                         New York, New York 10036

FOR THE REORGANIZED DEBTORS:

Date: _____      By: _____
                                      John Brooks
                                      President
                                      DPH Holdings Corp., et al.,
                                      World Headquarters
                                      M/C 483-400-530
                                      5725 Delphi Drive
                                      Troy, MI 48098

Date: _____      By: _____
                                      Kevin Holewinski
                                      Daniella Einik
                                      JONES DAY
                                      Attorneys for DPH Holdings Corp., et al.,
                                      Reorganized Debtors
                                      51 Louisiana Ave., N.W.
                                      Washington, D.C. 20001-2113

Date: 11/7/13                    By: _____
                                      John Wm. Butler, Jr
                                      John K. Lyons
                                      Ron E. Meisler
                                      SKADDEN, ARPS, SLATE, MEAGHER  & FLOM LLP
                                      Attorneys for DPH Holdings Corp., et al.,
                                      Reorganized Debtors
                                      155 North Wacker Drive
                                      Chicago, Illinois 60606

                                      - and -

                                      Four Times Square
                                      New York, New York 10036

41

FOR THE ENVIRONMENTAL TRUSTEE:

The DPH Environmental Trustee by and through Le Petomane
XXVIII, Inc., not individually but solely in the representative
capacity as Environmental Trustee of the DPH Environmental
Response Trust

Date: 11- 7- 13        By: _____

*not individually,
but solely as President*

JAY A. STEINBERG
not individually, but solely in the representative capacity as
President of the Environmental Trustee of the DPH
Environmental Response Trust

42

# EXHIBIT A

# ENVIRONMENTAL RESPONSE TRUST AGREEMENT

## BY AND AMONG

### DPH HOLDINGS CORPORATION,
on behalf of itself and certain of its reorganized affiliates, the Reorganized Debtors,

### LE PETOMANE XXVIII, INC.,
not individually but solely in its representative capacity
as Environmental Trustee,

### AND

### THE UNITED STATES OF AMERICA,
the STATE of MICHIGAN, and
the STATE of OHIO,
as Beneficiaries

### As of November 8, 2013

# TABLE OF CONTENTS

RECITALS ..................................................................................................................................1

ARTICLE I DEFINITIONS ........................................................................................................2

    1.1 Definitions.........................................................................................................................2

        1.1.1 Administrative Costs.................................................................................................2

        1.1.2 Agreement.................................................................................................................2

        1.1.3 Bankruptcy Cases.....................................................................................................2

        1.1.4 Bankruptcy Code ......................................................................................................3

        1.1.5 Bankruptcy Court......................................................................................................3

        1.1.6 Beneficiaries .............................................................................................................3

        1.1.7 CERCLA....................................................................................................................3

        1.1.8 DPH Flint Sites .........................................................................................................3

        1.1.9 DPH Rootstown Site .................................................................................................3

        1.1.10 DPH Saginaw Site...................................................................................................3

        1.1.11 DPH Site or DPH Sites ...........................................................................................3

        1.1.12 Court .......................................................................................................................3

        1.1.13 Effective Date .........................................................................................................3

        1.1.14 Emergency Environmental Action...........................................................................3

        1.1.15 Environmental Actions ............................................................................................3

        1.1.16 Environmental Agencies..........................................................................................4

        1.1.17 Environmental Costs................................................................................................4

        1.1.18 Environmental Information.......................................................................................4

        1.1.19 Environmental Law or Environmental Laws.....................................................4

i

1.1.20 Environmental Response Trust ........................................................4

1.1.21 Environmental Trust Account ........................................................4

1.1.22 Environmental Trust Administrative Account .................................5

1.1.23 Environmental Trust Assets ...........................................................5

1.1.24 Environmental Trust Environmental Cost Account........................5

1.1.25 Environmental Trust Parties ..........................................................5

1.1.26 Environmental Trust Proceeds .......................................................5

1.1.27 Environmental Trustee...................................................................5

1.1.28 EPA ...............................................................................................5

1.1.29 Excess Funding .............................................................................5

1.1.30 Funding .........................................................................................5

1.1.31 Internal Revenue Code ..................................................................5

1.1.32 Lead Agencies...............................................................................5

1.1.33 MDEQ ...........................................................................................5

1.1.34 Non-Lead Agency .........................................................................6

1.1.35 Ohio EPA ......................................................................................6

1.1.36 120-Day Budget ............................................................................6

1.1.37 Parties............................................................................................6

1.1.38 Person............................................................................................6

1.1.39 OSF Regulations ...........................................................................6

1.1.40 Real Property Information .............................................................6

1.1.41 Reorganized Debtors......................................................................6

1.1.42 Stipulation and Settlement Agreement ..........................................6

1.1.43 Superfund ........................................................................6

1.1.44 United States .....................................................................6

ARTICLE II THE ENVIRONMENTAL RESPONSE TRUST ..........................................6

2.1     Creation of and Transfer of Assets to the Environmental
        Response Trust ..............................................................6

        2.1.1.............................................................................6

        2.1.2.............................................................................7

        2.1.3.............................................................................7

        2.1.4.............................................................................8

2.2     Transfer of Funding and Consideration to the Environmental
        Trustee ....................................................................8

        2.2.1 The Funding ...............................................................8

        2.2.2.............................................................................8

        2.2.3 Creation of the Environmental Trust Accounts ................................8

        2.2.4.............................................................................9

        2.2.5.............................................................................9

2.3     Objectives and Purposes ...................................................9

        2.3.1.............................................................................9

        2.3.2.............................................................................9

2.4     Holder of Environmental Trust Assets .....................................10

2.5     Management of Environmental Trust Assets..................................10

        2.5.1............................................................................10

        2.5.2............................................................................10

        2.5.3............................................................................10

2.5.4 ................................................................................................. 10

2.5.5 ................................................................................................. 11

2.5.6 ................................................................................................. 11

2.6    Investment and Safekeeping of Environmental Trust Assets ................... 11

2.6.1 ................................................................................................. 11

2.6.2 ................................................................................................. 12

2.6.3 ................................................................................................. 12

2.6.4 ................................................................................................. 12

2.7    Insurance Policy to Cover Future Response Actions ............................... 12

2.8    Access and Deed Restrictions .................................................................. 12

2.9    Accounting ............................................................................................... 13

2.10   Termination .............................................................................................. 13

2.11   Property Disposition ................................................................................ 13

2.11.1 ................................................................................................ 13

2.11.2 ................................................................................................ 14

2.11.3 ................................................................................................ 14

ARTICLE III WORK AND DISTRIBUTIONS ................................................................ 14

3.1    Environmental Trust Accounts ................................................................ 14

3.2    Payments by the Environmental Response Trust ..................................... 15

3.2.1 Emergency Funding ........................................................................... 15

3.2.2 Administrative Expenses of the Environmental
       Response Trust ................................................................................... 15

3.2.3 Remuneration for Environmental Trustee's Start-Up
       Fees and Expenses ............................................................................. 16

iv

3.2.4 Environmental Expenses of the Environmental Response
Trust ...................................................................................................16

3.2.5 Reimbursement of Agencies and Performance of
Environmental Action by Environmental Response Trust ...............17

3.3     Liens by Government...............................................................................18

3.4     Manner of Payment..................................................................................18

3.5     Unclaimed Distributions ..........................................................................18

ARTICLE IV THE ENVIRONMENTAL TRUSTEE ......................................................18

4.1     Appointment ............................................................................................18

4.1.1.........................................................................................................18

4.1.2.........................................................................................................19

4.2     Generally..................................................................................................19

4.3     Powers......................................................................................................19

4.4     Other Professionals ..................................................................................20

4.5     Limitation of the Environmental Trustee's Authority ..............................20

4.6     Reliance by the Environmental Trust Parties............................................21

4.7     Compensation of the Environmental Trustee ...........................................21

4.8     Liability of Environmental Trust Parties ..................................................21

4.8.1.........................................................................................................21

4.8.2.........................................................................................................22

4.8.3.........................................................................................................22

4.9     Exculpation and Indemnification..............................................................22

4.9.1 Exculpation .....................................................................................22

4.9.2.........................................................................................................23

4.9.3 Indemnification ................................................................23

4.10    Termination, Replacement, and Removal of the
        Environmental Trustee ......................................................24

        4.10.1 Termination ..........................................................24

        4.10.2 Replacement .........................................................24

        4.10.3 Removal ..............................................................24

4.11    Appointment of Successor Environmental Trustees .................25

4.12    No Bond ...........................................................................25

ARTICLE V BENEFICIARIES ............................................................25

5.1     Beneficiaries .....................................................................25

5.2     Identification of Beneficiaries .............................................26

        5.2.1 ..................................................................................26

        5.2.2 ..................................................................................26

5.3     Non-Beneficiaries ..............................................................28

5.4     Transfer of Beneficial Interests ..........................................28

ARTICLE VI REPORTIND AND TAXES .............................................29

6.1     Reports ............................................................................29

6.2     Other ...............................................................................29

6.3     Reports in Support of Insurance Claims ...............................29

6.4     Taxes ...............................................................................29

ARTICLE VII MISCELLANEOUS PROVISIONS ...................................30

7.1     Amendments and Waivers ..................................................30

7.2     Tax Treatment ..................................................................30

7.3     Cooperation ......................................................................30

vi

7.4     Situs of the Trust .......................................................................................30

7.5     Severability ...............................................................................................31

7.6     Sufficient Notice ........................................................................................31

7.7     Headings ...................................................................................................31

7.8     Actions Taken on Other Than Business Day .............................................31

7.9     Consistency of Agreements and Construction ...........................................31

7.10    Compliance with Laws ...............................................................................31

7.11    Preservation of Privilege............................................................................32

7.12    No Recourse to Beneficiaries......................................................................32

7.13    Status of Beneficiaries ...............................................................................32

7.14    Uniform Custodial Trust Act .....................................................................32

## ENVIRONMENTAL RESPONSE TRUST AGREEMENT

This Environmental Response Trust Agreement (the "Agreement") is made this 8th day of November, 2013, by and among DPH HOLDINGS CORPORATION ("DPH"), formerly known as Delphi Corporation, and certain of its affiliates, as reorganized debtors in the Bankruptcy Cases (defined below) (collectively, "Reorganized Debtors" or "settlors"), LE PETOMANE XXVIII, Inc., not individually but solely in its representative capacity as Environmental Trustee (defined herein) of the DPH Environmental Response Trust established hereby (the "Environmental Response Trust"), and the Beneficiaries (defined herein).

## R E C I T A L S:

WHEREAS, on October 8 and 14, 2005 (the "Petition Dates"), Delphi Corporation and certain of its subsidiaries and affiliates, former debtors and debtors-in-possession in the above captioned cases (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, as then amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"), which cases have been jointly administered under Case No. 05-44481 (the "Bankruptcy Cases");

WHEREAS, on July 30, 2009, the Bankruptcy Court entered an order (Dkt. # 18707) (the "Plan Approval Order") confirming a modified plan of reorganization ("Plan of Reorganization" or the "Plan"), pursuant to which the Debtors emerged from chapter 11 as Reorganized Debtors;

WHEREAS, post-emergence, Reorganized Debtors were given the responsibility for winding up the Bankruptcy Cases, including resolving remaining claims and interests against the Debtors;

WHEREAS, on July 3, 2013, the Reorganized Debtors filed the Motion for Final Decree and Order Pursuant to 11 U.S.C. §§ 105, 350(a), and 1142, Fed. R. Bankr. P. 3022, and Local Bankr. R. 3022-1 Closing the Bankruptcy Cases and Providing Related Relief (the "Case Closing Motion") (Dkt. # 22073);

WHEREAS, on July 23 and 24, 2013, the United States of America (the "United States") and the Michigan Department of Environmental Quality ("MDEQ") filed objections to the Case Closing Motion (Dkt: # 22095, 22101);

WHEREAS, on August 6, 2013, the Court entered the Order Pursuant to 11 U.S.C. §§ 205, 350(a), and 1142, Fed. R. Bankr. P. 3022, and Local Bankr. R. 3022-1 Concerning Closing the Bankruptcy Cases and Providing Related Relief, which provided for, among other things, a schedule for the resolution of environmental claims and issues ("Case Closing Order") (Dkt. # 22121);

WHEREAS, the Reorganized Debtors, as settlors, the United States, the State of Michigan, the State of Ohio, and the Environmental Trustee (defined below) have entered into that certain Joint Stipulation and Agreed Order,  (the "Stipulation and Settlement Agreement") lodged with the Bankruptcy Court on November 8, 2013;

WHEREAS, the Stipulation and Settlement Agreement provides for the transfer of the Flint, Saginaw, and Rootstown Sites (defined below; collectively, the "DPH Sites") to the

Environmental Response Trust to be administered by the Environmental Trustee (defined below) pursuant to this Agreement and the Stipulation and Settlement Agreement;

WHEREAS, the Environmental Response Trust is to be funded in the amount set forth in the Stipulation and Settlement Agreement;

WHEREAS, in accordance with the Stipulation and Settlement Agreement, the Environmental Response Trust, which shall be deemed the "DPH Environmental Response Trust," is established for the purposes of owning the DPH Sites, carrying out administrative and property management functions related to the DPH Sites, managing and/or funding implementation of future Environmental Actions approved by the Lead Agencies as defined herein with respect to the DPH Sites, paying certain future oversight costs, ultimately selling, transferring, or otherwise disposing or facilitating the reuse of all or part of the Trust Assets, if possible, and fulfilling other obligations as set forth in the Stipulation and Settlement Agreement;

WHEREAS, this Agreement and the Stipulation and Settlement Agreement govern the Environmental Response Trust, which is created pursuant to section 1.468B-1 *et seq*. of the Treasury Regulations promulgated under section 468B of the Internal Revenue Code (the "QSF Regulations"); and

WHEREAS, the Environmental Response Trust shall be the exclusive holder of the assets described herein for purposes of 31 U.S.C. § 3713(b);

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants and agreements contained herein and in the Stipulation and Settlement Agreement the Parties hereby agree as follows:

ARTICLE I
DEFINITIONS

1.1     Definitions.

The following terms as used in this Agreement shall have the definitions given below:

1.1.1   "Administrative Costs" means the fees, costs, and expenses incurred in connection with the administration of the Environmental Response Trust, including but not limited to real estate management, taxes, insurance, property marketing costs, and maintenance costs, but excluding any expenses (including, without limitation, expenses of the Environmental Response Trust and its third-party professionals) incurred in overseeing, managing, and performing Environmental Actions.

1.1.2   "Agreement" has the meaning as given in the preamble.

1.1.3   "Bankruptcy Cases" has the meaning given in the recitals to this Agreement.

2

1.1.4   "Bankruptcy Code" means title 11 of the United States Code, as then amended, and subject to any further amendments retroactively applicable to the Petition Date.

1.1.5   "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York.

1.1.6   "Beneficiaries" means the United States (on behalf of the EPA), the State of Michigan (on behalf of the MDEQ) and the State of Ohio (on behalf of the Ohio EPA).

1.1.7   "CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as now in effect or hereafter amended.

1.1.8   "DPH Flint Sites" has the meaning given in the Stipulation and Settlement Agreement.

1.1.9   "DPH Rootstown Site" has the meaning given in the Stipulation and Settlement Agreement.

1.1.10   "DPH Saginaw Site" has the meaning given in the Stipulation and Settlement Agreement.

1.1.11   "DPH Site" or "DPH Sites" has the meaning given in the recitals to this Agreement, and further means all the rights, titles, and interests in and to, including, without limitation, all of the fee ownership in, all appurtenances, rights, easements, rights-of-way, mining rights, mineral rights, mineral claims, appurtenant groundwater rights, associated surface water rights, claims, and filings, permits, licenses, third-party warranties and guaranties for equipment or services to the extent transferable under bankruptcy law, or other interests (including without limitation all fixtures, improvements, personal property (tangible and intangible) and equipment located thereon as of the Effective Date).

1.1.12   "Court" means the Bankruptcy Court or if the Bankruptcy Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of this Agreement, a United States District Court having competent jurisdiction with respect to such matters.

1.1.13   "Effective Date" has the meaning set forth in the Stipulation and Settlement Agreement.

1.1.14   "Emergency Environmental Action" has the meaning set forth in Section 3.2.1 herein.

1.1.15   "Environmental Actions" means any and all environmental activities authorized or required under Environmental Law, or any and all environmental activities as directed by the Lead Agency, that occur after the Effective Date and that are

3

related to any of the DPH Sites, including but not limited to response or remedial actions, removal actions, corrective action, closure, or post-closure care, reclamation, investigations, studies, remediation, interim actions, final actions, emergency actions, water treatment, implementation of engineered structures and controls, monitoring, repair and replacement of engineered structures, monitoring equipment and controls, operation and maintenance, implementation, operation and maintenance of institutional controls, coordination and integration of reuse and remedial efforts and initiatives (including, without limitation, multi-stakeholder communications), and, if required, long-term stewardship and perpetual custodial care activities.    "Environmental Actions" also include the above environmental activities relating to the migration of hazardous substances or contaminants emanating from the DPH Sites.  For the avoidance of doubt, "Environmental Actions" shall not include natural resource assessment or restoration.

       1.1.16  "Environmental Agencies" means EPA, MDEQ, and Ohio EPA.

       1.1.17 "Environmental Costs" means the costs and expenses of implementing Environmental Actions, including any expenses (including, without limitation, expenses of the Environmental Trust and its third party professionals) incurred in overseeing, managing and performing Environmental Actions, and the costs of payment of certain oversight costs (as provided below) of any Beneficiary with respect to the DPH Sites.

       1.1.18 "Environmental Information" means all environmental reports, audits, analyses, records, studies and other documents containing non-privileged information prepared by or otherwise in the possession, custody or control of Reorganized Debtors or their technical consultants that are based on or otherwise reflect information related to environmental activities or conditions at the DPH Sites.  For avoidance of doubt, Environmental Information shall include all technical and/or sampling data, but shall not include analysis of this data prepared in anticipation of litigation or otherwise subject to the attorney client privilege.

       1.1.19  "Environmental Law" or "Environmental Laws" means, whenever in effect, all federal, state and local statutes, regulations, rules, ordinances and similar provisions having the force or effect of law, all judicial and administrative orders and determinations and all common law concerning public health and safety, worker health and safety, pollution or protection of the environment, including, without limitation, the Atomic Energy Act ("AEA"), CERCLA, Clean Water Act ("CWA"), Clean Air Act ("CAA"), Emergency Planning and Community Right-to-Know Act ("EPCRA"), Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), Resource Conservation and Recovery Act ("RCRA"), Safe Drinking Water Act ("SDWA"), Toxic Substances Control Act ("TSCA"), and any state or local equivalents.

       1.1.20 "Environmental Response Trust" means the trust established pursuant to this Agreement.

       1.1.21 "Environmental Trust Account" has the meaning given in Section 2.2.3 herein.

1.1.22 "Environmental Trust Administrative Account" means the Environmental Trust Account established to fund the payment of Administrative Costs.

1.1.23 "Environmental Trust Assets" means (a) those assets and properties, including the DPH Sites and sources of funding to be transferred to the Environmental Response Trust pursuant to the Stipulation and Settlement Agreement and (b) such other assets acquired, earned, or held by the Environmental Response Trust from time to time pursuant to the Trust Agreement, including Environmental Trust Proceeds.

1.1.24 "Environmental Trust Environmental Cost Account" has the meaning given in Section 2.2.3.

1.1.25 "Environmental Trust Parties" means, collectively, the Environmental Response Trust, the Environmental Trustee and its affiliates and their shareholders, officers, directors, employees, members, managers, partners, affiliated entities, consultants, agents, accountants, attorneys or other professionals or representatives engaged or employed by the Environmental Response Trust or Environmental Trustee; provided however, that any contractors or consultants retained to perform or oversee Environmental Actions of the Environmental Response Trust (for the avoidance of doubt, other than the Environmental Response Trust, the Environmental Trustee and affiliated entities, and their shareholders, officers, directors, and employees) shall not be Environmental Trust Parties.

1.1.26 "Environmental Trust Proceeds" means the net proceeds of any liquidation, sale, lease, recovery or other disposition of or other proceeds in respect of the Environmental Trust Assets.

1.1.27 "Environmental Trustee" means the trustee of the Environmental Response Trust.

1.1.28 "EPA" means the United States Environmental Protection Agency and any successor departments or agencies of the United States.

1.1.29 "Excess Funding" has the meaning given in Section 2.5.3 herein.

1.1.30 "Funding" has the meaning given in Section 2.2.1 herein.

1.1.31 "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended.

1.1.32 "Lead Agencies" means (i) EPA for the DPH Flint Site, (ii) MDEQ for the DPH Saginaw Site, and (iii) Ohio EPA for the DPH Rootstown Site. The Lead Agency for a DPH Site may be changed as provided in Paragraph 9 of the Stipulation and Settlement Agreement.

1.1.33 "MDEQ" means the Michigan Department of Environmental Quality.

5

1.1.34   "Non-Lead Agency" means the EPA for the DPH Saginaw Site and DPH Rootstown Site, and MDEQ for the DPH Flint Sites.  The Non-Lead Agency for a DPH Site may be changed as provided in Paragraph 10 of the Stipulation and Settlement Agreement.

1.1.35   "Ohio EPA" means the Ohio Environmental Protection Agency.

1.1.36   "120-Day Budget" has the meaning given in Section 3.2.2, herein.

1.1.37   "Parties" means the Reorganized Debtors, the Environmental Trustee, and the Beneficiaries.

1.1.38   "Person" means any individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, charitable foundation, unincorporated organization, government or any agency or political subdivision thereof or any other entity.

1.1.39   "QSF Regulations" has the meaning given in the recitals.

1.1.40   "Real Property Information" means all non-privileged documents in Reorganized Debtors' possession, custody, or control, or reasonably obtainable by Reorganized Debtors, related to property ownership, property taxes, leases, contracts, security, insurance, or administration or potential sales of a DPH Site.

1.1.41   "Reorganized Debtors" has the meaning given in the preamble.

1.1.42   "Stipulation and Settlement Agreement" has the meaning given in the recitals.

1.1.43   "Superfund" means the "Hazardous Substance Superfund" established by 26 U.S.C. § 9507 or, in the event such Hazardous Substance Superfund no longer exists, any successor fund or comparable account of the Treasury of the United States to be used for removal or remedial actions to address releases or threats of releases of hazardous substances.

1.1.44   "United States" means the United States of America (on behalf of EPA) and all of its agencies, departments, and instrumentalities.

ARTICLE II
THE ENVIRONMENTAL RESPONSE TRUST

2.1   Creation of and Transfer of Assets to the Environmental Response Trust

2.1.1   Pursuant to the Stipulation and Settlement Agreement, the Parties hereby establish, on behalf of the Beneficiaries named herein, and DPH hereby transfers, assigns, and delivers, by good title and other appropriate instruments, to the Environmental Response Trust, or to the Environmental Trustee, not individually but solely in its representative capacity as Environmental Trustee, if the law of the state in

which the property to be transferred is situated prohibits a trust entity from holding such title, on behalf of the Beneficiaries, all of Reorganized Debtors' right, title and interest in and to the Environmental Trust Assets.  Reorganized Debtors shall retain no ownership or other residual interest whatsoever with respect to the Environmental Response Trust, in the DPH Sites.   The transfer of ownership by DPH Holdings Corporation of the Environmental Trust Assets shall be a transfer of all of the Reorganized Debtors' right, title and interests therein, and the transfer shall be (i) free and clear of all claims, liens, encumbrances and interests against the Reorganized Debtors, including mechanics' liens and other liens for the payments of monetary claims, such as property taxes, or other monetary claims asserted or that could have been asserted in the bankruptcy proceeding, but shall remain subject to any existing in rem claims that do not secure payment of monetary claims (such as easements or deed restrictions); (ii)  subject to any rights of the United States, the State of Michigan, and the State of Ohio under the Stipulation and Settlement Agreement; and (iii) accomplished by transfer of good title, with all such conveyance documents to be agreed to in form by the Reorganized Debtors and the Environmental Trustee.  The grantee for each such deed and personal property bill of sale shall be the Environmental Response Trust by and through Le Petomane XXVIII, Inc., not individually but solely in its representative capacity as Environmental Trustee.  The Environmental Response Trust shall not be responsible for, and Reorganized Debtors shall be responsible for, in accordance with the Plan of Reorganization and applicable bankruptcy law, any invoices, statements, and amounts relating to the DPH Sites that relate to the period prior to the Effective Date even if such items are issued after the Effective Date or are not known of at the time of the Effective Date.

2.1.2    Reorganized Debtors, as applicable, will reasonably cooperate with the United States on behalf of EPA, the State of Michigan on behalf of MDEQ, the State of Ohio on behalf of Ohio EPA, and the Environmental Trustee to deliver to the title company (which will record or cause to be recorded in the appropriate real property records) the transfer documents as soon as reasonably practicable, but not to exceed 30 days after the Effective Date.  In addition to and simultaneous with the payment set forth in Section 2.2.1 herein, Reorganized Debtors shall pay to the Environmental Response Trust an amount equal to the recording costs and transfer fees relating to the title transfers for the DPH Sites.  No deeds are to be recorded until all payments referenced in this Paragraph are made.

2.1.3   In addition to and simultaneous with the payment set forth in Section 2.2.1 herein, Reorganized Debtors shall pay to the Environmental Response Trust an amount equal to Reorganized Debtors' pro-rata share of such real property taxes that have accrued or become a lien on the DPH Sites during the calendar year as of the Effective Date.  If the actual bills for such real property taxes have not been issued, then such proration shall be based on an amount equal to such real property taxes for the prior year or tax period, which shall constitute a final proration and not be subject to further adjustment.  Upon full payment by the Reorganized Debtors as set forth in Sections 2.1.2 and 2.2.1 herein and this Section 2.1.3, the Environmental Response Trust shall be responsible for paying all real property taxes first coming due following the Effective Date relating to the DPH Sites. Reorganized Debtors shall execute, or cause to be

executed, and record, if necessary, all necessary releases of any liens or security interests held by any Reorganized Debtors against the DPH Sites.

        2.1.4   The Environmental Response Trust hereby accepts and agrees to hold the Environmental Trust Assets in the Environmental Response Trust for the benefit of the Beneficiaries for the purposes described in Section 2.3 below, subject to the terms of the Stipulation and Settlement Agreement, this Agreement, and any applicable orders of the Court.

        2.2    <u>Transfer of Funding and Consideration to the Environmental Trustee</u>

        2.2.1   <u>The Funding</u>. Within two (2) business days of the Effective Date, the Reorganized Debtors shall cause to be transferred to or at the direction of the Environmental Trustee cash in the amount of $23,142,065.00 (the "Funding").

        2.2.2   Upon transfer of the Funding, the Reorganized Debtors shall have no interest in, or with respect to, any Environmental Trust Assets, and neither the Reorganized Debtors, nor any successors thereto, shall have any further obligation to provide funding to the Environmental Response Trust.

        2.2.3   <u>Creation of the Environmental Trust Accounts</u>.  Upon receipt of the DPH Sites and the Funding, the Environmental Trustee shall create a segregated Flint Environmental Cost Account, Saginaw Environmental Cost Account, and Rootstown Environmental Cost Account within the Environmental Response Trust (collectively, the "Environmental Trust Environmental Cost Accounts"). The purpose of an Environmental Trust Environmental Cost Account for a DPH Site shall be to provide funding for Environmental Actions and Costs and certain future regulatory fees and oversight costs of EPA, MDEQ and Ohio EPA, respectively, with respect to the DPH Site as to which each is Lead or Non-Lead Agency.  Funding from an Environmental Trust Environmental Cost Account for a DPH Site may not be used for another DPH Site except as provided in Section 2.5 herein.  Funding for the Flint Environmental Cost Account shall be held in trust for Environmental Actions with respect to the DPH Flint Sites.  Funding for the Saginaw Environmental Cost Account shall be held in trust for Environmental Actions with respect to the DPH Saginaw Site.  Funding for the Rootstown Environmental Cost Account shall be held in trust for Environmental Actions with respect to the DPH Rootstown Sites. The initial funding of the Flint Environmental Cost Account shall be a total of $9,148,524.00. The initial funding of the Saginaw Environmental Cost Account shall be a total of $10,425,449.00.  The initial funding of the Rootstown Environmental Cost Account shall be a total of $1,191,641.00.  The Environmental Trustee shall also create a segregated Environmental Trust Administrative Account in the amount of $2,376,451.00.  The purpose of the Environmental Trust Administrative Account for the DPH Sites shall be to provide funding for the Administrative Costs of the Environmental Response Trust that have been approved by the EPA, MDEQ and Ohio EPA.  The separate accounts are referred to in this Agreement individually as an "Environmental Trust Account" and collectively as the "Environmental Trust Accounts."  Subject to Section 2.6, the income and gains from any investment of the Environmental Trust Assets shall be allocated, paid and credited to such Environmental Trust Account.

2.2.4    Each Environmental Trust Account may be divided into such number of trust subaccounts dedicated for specific uses as may be deemed necessary in the sole discretion of the Environmental Trustee (each, a "Trust Subaccount") to comply with the terms of, and implement, the Stipulation and Settlement Agreement and this Agreement.

2.2.5    For all federal income tax purposes, the Environmental Trustee and Reorganized Debtors shall treat the transfer of the Environmental Trust Assets by DPH Holdings Corporation to the Environmental Response Trust as a transfer to a qualified settlement fund pursuant to section 468B of the Internal Revenue Code and the QSF Regulations. The Environmental Trustee shall at all times seek to have the Environmental Response Trust treated as a "qualified settlement fund" as that term is defined in the QSF Regulations.    The Court shall retain continuing jurisdiction over the Environmental Response Trust and Environmental Trust Accounts sufficient to satisfy the requirements of the QSF Regulations.    The Environmental Trustee shall cause any taxes imposed on the earnings of the Environmental Response Trust to be paid out of such earnings and shall comply with all tax reporting and withholding requirements imposed on the Environmental Response Trust under applicable tax laws.    Taxes imposed upon earnings accruing to the Environmental Trust Environmental Cost Account for a DPH Site shall be paid from that Environmental Trust Environmental Cost Account.  The Environmental Trustee shall be the "administrator" of the Environmental Response Trust pursuant to Treasury Regulation section 1.468B-2(k)(3).

2.3    Objectives and Purposes

2.3.1    The purpose of the Environmental Response Trust shall be to: (i) own the Sites; (ii) carry out administrative and property management functions related to the DPH Sites; (iii) manage and/or fund implementation of future Environmental Actions approved by the Lead Agencies with respect to the DPH Sites; (iv) fulfill other obligations as set forth in this Stipulation and Settlement Agreement; (v) pay certain future oversight costs; and (vi) ultimately sell, transfer, or otherwise dispose or facilitate the reuse of all or part of the DPH Sites, if possible, all as provided herein with no objective or authority to engage in any trade or business.    The performance by the Environmental Trustee of its duties under this Agreement, including but not limited to the sale, lease or other disposition of some or all of the DPH Sites, shall not be considered to be the Environmental Trustee's engaging in a trade or business.

2.3.2    The Environmental Response Trust is established pursuant to this Agreement and the Stipulation and Settlement Agreement and approved by the Bankruptcy Court for the sole purpose of resolving environmental liabilities of Reorganized Debtors with respect to the DPH Sites.  The Bankruptcy Court shall retain continuing jurisdiction over the Environmental Response Trust. The Environmental Response Trust satisfies all the requirements of, and is intended by the Parties to be classified as, a qualified settlement fund pursuant to the QSF Regulations.

2.4   Holder of Environmental Trust Assets

The Environmental Response Trust shall be the exclusive holder of the Environmental Trust Assets and Environmental Trust Accounts described herein for purposes of 31 U.S.C. § 3713(b).

2.5   Management of Environmental Trust Assets

2.5.1   Consistent with this Agreement and the Stipulation and Settlement Agreement, the Environmental Trustee shall use the Environmental Trust Environmental Cost Accounts for the DPH Sites to fund Environmental Actions and certain future oversight costs approved by the Lead Agency pursuant to applicable environmental law with respect to the DPH Sites. The Environmental Trustee shall use the Environmental Trust Administrative Account to fund the Administrative Costs of the Environmental Response Trust that have been approved by the Environmental Agencies.

2.5.2   The Environmental Trustee may enter into an administrative order on consent and/or consent decree or consent order with the United States, the State of Michigan, and/or the State of Ohio, and may perform work pursuant to unilateral administrative orders issued by EPA, MDEQ, and/or Ohio EPA to facilitate implementation of this Section with respect to the DPH Sites, to the extent of available funds, in accordance with this Agreement.

2.5.3   The Lead and Non-Lead Agency for a particular DPH Site may agree in writing at any time after the Effective Date that, based on new information about the estimated cost of Environmental Action or the assumption of liability by a buyer or other party for Environmental Action at that DPH Site, the actual funding needed for the DPH Site is less than was projected by the Lead Agency for that Site ("Excess Funding"). In such event, the United States, the State of Michigan and the State of Ohio may instruct jointly in writing that such Excess Funding be transferred to one or more of the other Environmental Trust Environmental Cost Accounts established under this Stipulation and Settlement Agreement, or to the Environmental Trust Administrative Account, if there are remaining actions to be performed and a demonstrated need for additional trust funding or, to the extent there are no such remaining actions with a demonstrated need for additional funding, to the Superfund, a clean-up fund or account in Michigan to be designated by the MDEQ, and/or the hazardous waste clean-up fund created by Ohio Revised Code 3734.28.

2.5.4   After the Lead and Non-Lead Agencies have confirmed to the Environmental Trustee that all final actions have been completed, and all final costs have been disbursed for any Site, any funds remaining in the  Environmental Trust Environmental Cost Account for that Site shall be transferred in the following order: (i) first, in accordance with instructions provided jointly by the United States, the State of Michigan, and the State of Ohio, to other Environmental Trust Environmental Cost Accounts for one or more of the DPH Sites, if there are remaining actions to be performed and a demonstrated need for additional funding, or to the Environmental Trust Administrative Account; (ii) second, upon written confirmation by the United States, the

State of Michigan and the State of Ohio, to the Superfund, a clean-up fund or account in Michigan to be designated by the MDEQ, and/or the hazardous waste clean-up fund created by Ohio Revised Code 3734.28.

2.5.5   Annually, beginning with the first year after the Effective Date, the Environmental Trustee shall provide the Environmental Agencies with an update of anticipated future Administrative Costs of the Environmental Response Trust.  At any time on or after four (4) years after the Effective Date, The United States, the State of Michigan and the State of Ohio may instruct in writing after consultation with the Environmental Trustee that any conservatively projected surplus funding in the Environmental Trust Administrative Account be transferred to one or more of the other Environmental Trust Environmental Cost Accounts if there are remaining actions to be performed and with a need for additional trust funding.

2.5.6   If the Environmental Trustee determines at any time that it anticipates a shortfall in the Environmental Trust Administrative Account based on anticipated future Administrative Costs of the Environmental Response Trust, funds from any of the Environmental Trust Environmental Cost Accounts may be transferred to the Environmental Trust Administrative Account upon the agreement in writing of the United States, the State of Michigan and the State of Ohio.

2.6   Investment and Safekeeping of Environmental Trust Assets

2.6.1   The Environmental Trust Assets, until sold as provided herein and in the Stipulation and Settlement Agreement, shall be held in trust and segregated.  All interest, dividends, and other revenue earned in a Environmental Trust Account shall be retained in the respective Environmental Trust Account and used only for the same purposes as the principal in that account as provided in this Agreement and the Stipulation and Settlement Agreement, subject to any transfers approved by the Environmental Agencies, in accordance with the terms of this Agreement and the Stipulation and Settlement Agreement.  The Environmental Trustee shall be under no liability for interest or producing income on any moneys received by the Environmental Response Trust hereunder and held for distribution or payment as provided in this Agreement, except as such interest shall actually be received by the Environmental Response Trust.  Investments of any moneys held by the Environmental Response Trust shall be administered in a manner consistent with the standards and requirements applicable to a Environmental Trustee in connection with a Chapter 7 liquidation; provided, however, that the right and power of the Environmental Response Trust to invest the Environmental Trust Assets, Environmental Trust Proceeds, or any income earned by the Environmental Response Trust, shall be limited to the right and power to invest such assets (pending periodic distributions in accordance with Article III hereof) in demand and time deposits, such as certificates of deposit, in banks or other savings institutions whose deposits are federally insured, or other liquid investments, such as Treasury bills; and provided further, that the scope of any such permissible investments shall be limited to include only those investments, or shall be expanded to include any additional types of investments as permitted by the United States, the State of Michigan, and the State of Ohio, and these additional types of investments shall be specifically

detailed in writing including a directive that the Environmental Response Trust is authorized to make, in each case, such investments that a liquidating trust, within the meaning of Treasury Regulation section 301.7701-4(d), may be permitted to hold, pursuant to Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise (although the Parties acknowledge and agree that the Environmental Response Trust is properly characterized for federal tax purposes as a qualified settlement fund within the meaning of Section 1.468B-1 of the Treasury Regulations, and not as a liquidating trust under Section 301.7701-4(d) of the Treasury Regulations).

2.6.2    The Environmental Trustee is expressly prohibited from holding any or all of the Environmental Trust Assets in a common, commingled or collective trust fund and from holding any or all of the Environmental Trust Assets in a common, commingled or collective trust fund with the assets of any other entity.  However, the funds provided for administrative expenses can be held in one account.

2.6.3    Nothing in this Section shall be construed as authorizing the Environmental Trustee to cause the Environmental Response Trust to carry on any business or to divide the gains therefrom, including without limitation, the business of an investment company, a company "controlled" by an "investment company," required to register as such under the Investment Company Act of 1940, as amended. The sole purpose of this Section 2.6 is to authorize the investment of the funds in the Environmental Trust Accounts or any portions thereof as may be reasonably prudent pending use of the proceeds for the purposes of the Environmental Response Trust.

2.6.4    The Environmental Trust Parties shall not incur any liability for following any written direction or order to act (or to refrain to act) from any Beneficiary so long as such written direction is not inconsistent with this Agreement and the Stipulation and Settlement Agreement.

2.7    Insurance Policy to Cover Future Response Actions

The Environmental Trustee may investigate the possible purchase of one or more insurance policies to cover future Environmental Actions and general liability at the DPH Sites and may make recommendations to the Beneficiary regarding such insurance.  If, and only if, the Lead and Non-Lead Agency jointly authorize the Environmental Trustee in writing to purchase such insurance, shall the Environmental Trustee use Environmental Trust Assets to purchase such insurance.

2.8    Access and Deed Restrictions

The Environmental Trustee shall provide the Lead and Non-Lead Agency and their representatives and contractors access to all portions of the DPH Sites that the Environmental Response Trust owns at all reasonable times for the purposes of conducting Environmental Actions at or near the DPH Sites. The Environmental Trustee shall implement any institutional controls or deed restrictions requested by the Lead and Non-Lead Agency with respect to any of the DPH Sites. The Environmental Trustee shall execute and record with the appropriate

recorder's office any easements or deed restrictions requested by the Lead and Non-Lead Agency for restrictions on use of a DPH Site in order to protect public health, welfare or safety or the environment or ensure non-interference with or protectiveness of any action. Any existing easements or deed restrictions of record as to any DPH Site prior to the Effective Date of the Stipulation and Settlement Agreement shall survive the Stipulation and Settlement Agreement. The Environmental Trustee shall abide by the terms of any institutional controls or deed restrictions in place or of record as to any DPH Site; however, nothing herein shall create any personal liability for any Environmental Trust Party due to the Environmental Trustee's failure to abide by any institutional controls of which the Environmental Trustee is unaware.

### 2.9    Accounting

The Environmental Trustee shall maintain proper books, records, and accounts relating to all transactions pertaining to the Environmental Response Trust, and the assets and liabilities of the Environmental Response Trust in such detail and for such period of time as may be necessary to enable the Environmental Trustee to make full and proper accounting in respect thereof in accordance with Article VI below and to comply with applicable provisions of law and good accounting practices. Except as otherwise provided herein or by the Stipulation and Settlement Agreement, the Environmental Trustee shall not be required to file any accounting or seek approval of the Court with respect to the administration of the Environmental Response Trust, or as a condition for making any payment or distribution out of the Environmental Trust Assets. Beneficiaries shall have the right upon fourteen (14) days' prior written notice delivered to the Environmental Trustee to inspect such books and records.

### 2.10   Termination

Consistent with the terms of the Stipulation and Settlement Agreement, the Environmental Trustee shall not unduly prolong the duration of the Environmental Response Trust and shall at all times endeavor to complete the Environmental Response Trust's objectives and purposes, resolve, settle, or otherwise dispose of all claims against Environmental Trust Assets to effect the distribution of any remaining Environmental Trust Assets and other receipts relating thereto to the Beneficiaries and the others who receive distributions hereunder in accordance with the terms hereof, and to terminate the Environmental Response Trust as soon as practicable consistent with this Agreement and the Stipulation and Settlement Agreement.

### 2.11   Property Disposition

2.11.1 The Environmental Trustee may, at any time, seek the approval of the Lead and Non-Lead Agencies for the sale or lease or other disposition of all or part of the Environmental Trust Assets (including but not limited to real property constituting the DPH Sites and personal property associated therewith). Subject to the approval of the Lead and Non-Lead Agency for a particular DPH Site, the Environmental Trustee may propose a sale, lease, or disposition of that DPH Site that includes funding from the respective Environmental Trust Environmental Cost Account and/or the Environmental Trust Administrative Account, provided that the net effect of any proposed sale, lease or disposition is to lessen the total financial obligations and liabilities as would otherwise be incurred in the absence of any such sale, lease, or disposition.

2.11.2  In the event of any approved sale or lease or other disposition of Environmental Trust Assets, the proceeds will be paid as follows:

(a)     From the gross proceeds, the Environmental Trustee shall return to the Environmental Trust Administrative Account any amount expended from the Environmental Trust Administrative Account in connection with the sale, lease or other disposition.

(b)     The remaining proceeds shall be paid to the Environmental Cost Account for the DPH Site in connection with Environmental Trust Assets that were sold.

2.11.3  The parties agree that the rule against perpetuities does not apply to the Environmental Response Trust, but to the extent that any rule against perpetuities or a rule governing or limiting vesting, accumulations, the suspension of alienation, or the like shall be deemed applicable, the Environmental Response Trust shall automatically terminate on the date 90 days after the date on which 21 years less 91 days pass after the death of the last survivor of all of the descendants of the late Joseph P. Kennedy, Sr., father of the late President John F. Kennedy, living on the date hereof, and provided further that if the Environmental Response Trust owns real property located in any jurisdiction that sets a maximum duration for interests in real property located in such jurisdiction held in trust under a rule against perpetuities or a rule governing or limiting vesting, accumulations, the suspension of alienation, or the like, that for the Environmental Response Trust is shorter than the date 90 days after the date on which 21 years less 91 days pass after the death of the last survivor of all of the descendants of the late Joseph P. Kennedy, Sr., father of the late President John F. Kennedy, living on the date hereof, the Environmental Response Trust shall automatically terminate as to such Property upon the expiration of the maximum period authorized pursuant to the laws of such jurisdiction.  If the Environmental Response Trust is terminated in whole or in part pursuant to this Subsection, title to the relevant Property or Properties as to which the Environmental Response Trust is terminated shall be transferred outright and free of trust to or at the direction of the United States in consultation with any of the States in which the relevant Property or Properties are located, provided, however, that the disposition of all relevant Property or Properties shall be governed by applicable state and federal law, or by agreement of the Environmental Trustee, the United States, and the applicable State, or by order of the Court, and further provided that neither the United States or any State will be required to accept an ownership interest in the relevant Property or Properties as to which the Environmental Response Trust is terminated.

## ARTICLE III
## WORK AND DISTRIBUTIONS

3.1     <u>Environmental Trust Accounts</u>

The Environmental Trustee shall establish, maintain and hold Environmental Trust Accounts consistent with the Stipulation and Settlement Agreement and Section 2.3 of this Agreement, to administer the Environmental Trust Assets and distributions therefrom. The

14

Environmental Trustee shall also maintain a dedicated Environmental Trust Administrative Account for administrative funds, which shall be used solely to pay the costs of administering the Environmental Response Trust as set forth herein.

3.2     Payments by the Environmental Response Trust

The Environmental Trustee shall provide the Lead and Non-Lead Agencies with balance statements and proposed budgets as described in Sections 3.2.2 and 3.2.4 of this Agreement. The Environmental Trustee shall not pay any expense that has not been provided for in the applicable budget and approved by the Lead Agency or, in the case of costs incurred by the Environmental Trust Administrative account, by the Environmental Agencies.

3.2.1     Emergency Funding

In the event of an emergency at a DPH Site requiring the performance of an Environmental Action within hours or days of the Environmental Trustee first receiving notice of the emergency, if the emergency does not permit sufficient time to amend the annual budget for that DPH Site, the Environmental Trustee may utilize funding from the DPH Site's Environmental Cost Account to undertake Environmental Actions necessary to respond to the emergency (the "Emergency Environmental Action"). If an Emergency Environmental Action is performed by the Lead Agency or Non-Lead Agency, the Environmental Trustee may reimburse the Lead Agency (or the Non-Lead Agency, if the Lead Agency concurs in writing) for such Emergency Environmental Action from the DPH Site's Environmental Cost Account. Nothing in this subparagraph shall preclude the payment or reimbursement of the Emergency Environmental Action through the annual budget or budget revision process.

3.2.2     Administrative Expenses of the Environmental Response Trust

Prior to the Effective Date, the Environmental Trustee shall submit to the Environmental Agencies for approval a budget for the first 120 days following the Effective date (a "120-Day Budget") for the Environmental Trust Administrative Account. The 120-Day Budget for the Environmental Trust Administrative Account shall be deemed approved upon approval by each of the Environmental Agencies. No expenses may be incurred or paid from the Environmental Trust Administrative Account by the Environmental Trustee that are inconsistent with an approved 120-Day Budget unless the Environmental Agencies approve such expenses in writing, or unless a revised 120-Day Budget is approved consistent with this Section.

Within 90 days following the Effective Date in the first year, and thereafter at least 60 days before January 1 of each year for the following year, the Environmental Trustee shall provide the Environmental Agencies with an annual budget for administration of the Environmental Response Trust for review and approval or disapproval. If disapproved, such budget shall be revised and resubmitted as expeditiously as possible. No administrative expenses may be incurred or paid by the Environmental Trustee that are inconsistent with the approved budget, unless the Environmental Agencies approve a revised budget or a revised line item for an approved

15

budget, provided, however, that the Environmental Trustee may incur or pay ongoing or recurring expenses approved in the prior year's budget that occur between the time a proposed annual budget is submitted and the time it is approved. Each annual budget shall include a future year forecast of administrative expenditures, with annual details for at least the next three years (or such longer period as the Environmental Agencies shall reasonably request). The Environmental Response Trust shall regularly, but not less often than annually, and otherwise upon the reasonable request of the Environmental Agencies, provide documentation to the Environmental Agencies to substantiate compliance with the applicable approved budget and application of Environmental Trust Assets consistently with the terms of this Agreement and the Stipulation and Settlement Agreement. The approved budget shall be funded by the transfer of the approved amount from the Environmental Trust Administrative Account.

### 3.2.3    Remuneration for Environmental Trustee's Start-Up Fees and Expenses

The Environmental Trustee shall be entitled to remuneration from the Environmental Trust Administrative Account of up to $85,000 for its reasonable fees and expenses in connection with the formation of the Environmental Response Trust prior to the Effective Date.  Where the Environmental Trustee, the United States, and the relevant Lead Agency agree that the Environmental Trustee accrued pre-Effective Date fees and expenses in furtherance of activities that post-Effective Date would constitute Environmental Action, those pre-Effective Date fees and expenses shall be paid from any applicable Environmental Cost Account.  Within 60 days of the Effective Date, the Environmental Trustee will submit detailed invoices reflecting its pre-Effective Date fees and expenses for approval by the United States, the State of Michigan, and the State of Ohio.

### 3.2.4    Environmental Expenses of the Environmental Response Trust

Prior to the Effective Date, the Environmental Trustee shall submit to the Environmental Agencies for approval a 120-Day Budget for each Environmental Trust Environmental Cost Account.  The Lead Agency shall have the authority to approve or disapprove the proposed 120-Day Budget for the relevant Environmental Trust Environmental Cost Account after consultation with the Non-Lead Agency, if such consultation is requested by the Non-Lead Agency. No expenses may be incurred or paid from an Environmental Trust Environmental Cost Account by the Environmental Trustee that are inconsistent with an approved 120-Day Budget, except as provided in Section 3.2.1, or unless a revised 120-Day Budget is approved consistent with this Section.

Within 90 days following the Effective Date in the first year, and thereafter at least 60 days before January 1 of each year for the following year, the Environmental Trustee shall provide the EPA, MDEQ, and Ohio EPA with balance statements and annual budgets of projected expenditures from each of the Environmental Trust Environmental Cost Accounts. The first budget for the remainder of the current calendar year shall be submitted within 90 days following the Effective Date and annual

16

budgets shall be submitted at least 60 days before each January 1 during the term of the Environmental Response Trust. The Lead Agency shall have the authority to approve or disapprove the proposed budget for the relevant Environmental Trust Environmental Cost Account after consultation with the Non-Lead Agency, if such consultation is requested by the Non-Lead Agency. If disapproved, a budget shall be revised and resubmitted as expeditiously as possible.  No expenses may be incurred or paid by the Environmental Trustee that are inconsistent with an approved budget, except as provided in Section 3.2.1, or unless a revised budget is approved consistent with this Section; provided, however, that the Environmental Trustee may incur or pay ongoing or recurring expenses approved in the prior year's budget that occur between the time a proposed annual budget is submitted and the time it is approved.

      3.2.5   <u>Reimbursement of Agencies and Performance of Environmental Action by Environmental Response Trust</u>

      The Environmental Trustee shall pay funds from a Environmental Trust Environmental Cost Account to the applicable Lead Agency making a written request for funds for reimbursement within 30 days following such request.  Such written request shall: (i) be in accordance with the approved budget set forth in Section 3.2.4 above, and (ii) specify what the funds were used for and shall certify that they were used only for Environmental Actions and future regulatory fees or oversight costs with respect to the DPH Site. The Environmental Trustee shall also pay funds from the applicable Environmental Trust Environmental Cost Account to a Non-Lead Agency making a written request for funds within 30 days following such request where the Lead Agency has requested the assistance of the Non-Lead Agency with respect to the applicable DPH Site.  Such written request shall: (i) be in accordance with the approved budget set forth in Section 3.2.4 above, and (ii) specify what the funds were used for and shall certify that they were used only for Environmental Actions performed and/or oversight costs incurred after the Effective Date by the Non-Lead Agency pursuant to a request for assistance by the Lead Agency with respect to the applicable DPH Site.

      In the case of requests by the Lead Agency for a Environmental Trust Environmental Cost Account to the Environmental Trustee to use the funds from that Environmental Trust Environmental Cost Account to perform Environmental Actions, the Environmental Trustee shall utilize the funds from that Environmental Trust Environmental Cost Account to undertake such work promptly and in accordance with any schedule approved by the Lead Agency pursuant to Section 3.2.4 above.  The Environmental Trustee shall be responsible for the review and selection of any contractors sought to perform work; provided, however, that the Environmental Trustee shall provide the Lead Agencies with its intended selection at least 30 days before the contract is awarded, and the Lead Agencies may object or otherwise deny the award of any contract for any reasonable reason.  The Environmental Trustee shall require liability insurance from each contractor hired to perform work.

3.3     Liens by Government

Notwithstanding anything to the contrary in this Article III, the Environmental Response Trust hereby grants to the Environmental Trustee, the United States, the State of Michigan, and the State of Ohio a first-priority lien on and security interest in the Environmental Trust Assets, except with respect to any real property, to secure the payment of all amounts owed to, accrued or reserved on account of the Environmental Response Trust or to be retained by the Environmental Trustee hereunder or otherwise due hereunder.  However, only the Environmental Trustee shall have a first-priority lien on and security interest in the Environmental Trust Administrative Account, only EPA shall have a first-priority lien and security interest in the Flint Environmental Cost Account, only the State of Michigan shall have a first-priority lien and security interest in the Saginaw Environmental Cost Account, and only the State of Ohio shall have a first-priority lien on and security interest in the Rootstown Environmental Cost Account. The Environmental Trustee agrees to take appropriate actions and execute appropriate documents so that the Environmental Trustee's, EPA's, the State of Michigan's, and the State of Ohio's, liens and security interest hereunder are perfected as of the Effective Date.  The perfection will require the signatures of the Beneficiaries to be effective.

3.4     Manner of Payment

Cash payments made by the Environmental Response Trust pursuant to the Stipulation and Settlement Agreement and this Agreement shall be in United States dollars by checks drawn on a domestic bank whose deposits are federally insured selected by the Environmental Trustee, or by wire transfer from such a domestic bank, at the option of the Environmental Trustee.

3.5     Unclaimed Distributions

In the event that funds remain in the Environmental Response Trust at its termination, the amounts remaining shall be transferred, upon written confirmation by the United States, the State of Michigan and the State of Ohio, to the Superfund, a clean-up fund or account in Michigan to be designated by the MDEQ, and/or the hazardous waste clean-up fund created by Ohio Revised Code 3734.28.

ARTICLE IV
THE ENVIRONMENTAL TRUSTEE

4.1     Appointment

4.1.1   Le Petomane XXVIII, Inc., not individually but solely in its representative capacity, is appointed to serve as the Environmental Trustee to administer the Environmental Response Trust and the Environmental Trust Accounts, in accordance with the Stipulation and Settlement Agreement and this Agreement, and the Environmental Trustee hereby accepts such appointment and agrees to serve in such representative capacity, effective upon the Effective Date.  If the Environmental Trustee is not reappointed and no successor Environmental Trustee is appointed by the expiration of the Environmental Trustee's term, as set forth in Section 4.10.2, the Court may reappoint the Environmental Trustee or appoint a successor Environmental Trustee.

4.1.2   After consultation with the Environmental Agencies, the Environmental Response Trust is authorized to obtain the services of an environmental consultant to implement the future Environmental Actions (the "Consultant").   The Environmental Trustee shall consider any request by a Lead Agency, made in consultation with a Non-Lead Agency, to utilize the services of an existing Consultant or contractor, provided that the continued use of the Consultant or contractor would be cost-effective.   The Consultant shall obtain environmental, general and professional liability insurance in the sum of $5,000,000 or such lesser amount as agreed to by the Environmental Response Trust after consultation with the Environmental Agencies. The beneficiary of the insurance policies shall be the Environmental Trust Parties and the Beneficiaries, and shall cover negligence committed by the Consultant in implementing the future Environmental Actions or any other negligence committed by the Consultant. The legal relationship of the Consultant to the Environmental Response Trust and Environmental Trustee is that of an independent contractor professional, not that of an entity employed by the Environmental Response Trust or the Environmental Trustee. The Consultant shall not be deemed a Environmental Trust Party.

4.2   <u>Generally</u>

The Environmental Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of the Environmental Response Trust and the Stipulation and Settlement Agreement and not otherwise. The Environmental Trustee shall have the authority to bind the Environmental Response Trust, and any successor Environmental Trustee, or successor or assign of the Environmental Response Trust, but shall for all purposes hereunder be acting in its representative capacity as Environmental Trustee and not individually. Notwithstanding anything to the contrary contained herein, the Environmental Trustee shall not be required to take action or omit to take any action if, after the advice of counsel, the Environmental Trustee believes in good faith such action or omission is not consistent with the Environmental Trustee's fiduciary duties.   The Environmental Trustee shall have no obligations to perform any activities for which the relevant Environmental Trust Environmental Cost Account or Environmental Trust Administrative Account lacks sufficient funds.

4.3   <u>Powers</u>

In connection with the administration of the Environmental Response Trust, except as otherwise set forth in this Agreement or the Stipulation and Settlement Agreement, the Environmental Trustee is authorized to perform any and all acts necessary to accomplish the purposes of the Environmental Response Trust.   The powers of the Environmental Response Trust shall, without any further Court approval or order, include, without limitation, each of the following: (i) to receive, manage, invest, supervise and protect the Environmental Trust Assets, withdraw, make distributions and pay taxes and other obligations owed by the Environmental Response Trust or the Environmental Trust Accounts from funds held by the Environmental Trustee and/or the Environmental Response Trust (or the Environmental Trust Accounts) in accordance with the Stipulation and Settlement Agreement and this Agreement, and withhold and pay to the appropriate taxing authority any withholding taxes on distributions from the Environmental Response Trust; (ii) to engage employees and professional Persons to assist the Environmental Response Trust and/or the Environmental Trustee with respect to the

responsibilities described herein; (iii) to make distributions of the Environmental Trust Assets from the Environmental Trust Accounts for the purposes contemplated in this Agreement and the Stipulation and Settlement Agreement; and (iv) to effect all actions and execute all agreements, instruments and other documents necessary to implement this Agreement, including to exercise such other powers as may be vested in or assumed by the Environmental Response Trust and/or the Environmental Trustee pursuant to this Agreement and any order of the Court or as may be necessary and proper to carry out the provisions of this Agreement and the Stipulation and Settlement Agreement. No Person dealing with the Environmental Response Trust shall be obligated to inquire into the authority of the Environmental Trustee in connection with the protection, conservation or disposition of Environmental Trust Assets. The Environmental Trustee is authorized to execute and deliver all documents on behalf of the Environmental Response Trust to accomplish the purposes of this Agreement and the Stipulation and Settlement Agreement.

    4.4    Other Professionals

    The Environmental Trustee is authorized to retain on behalf of the Environmental Response Trust and pay such third parties as the Environmental Trustee (in accordance with a budget approved pursuant to Section 3.2 and in a manner consistent with Section 3.2.5 and 4.1.2, above) may deem necessary or appropriate to assist the Environmental Trustee in carrying out its powers and duties under this Agreement and the Stipulation and Settlement Agreement, including, without limitation, (i) counsel to the Environmental Response Trust and/or Environmental Trustee, (ii) a public accounting firm to perform such reviews and/or audits of the financial books and records of the Environmental Response Trust as may be appropriate in the Environmental Trustee's reasonable discretion and to prepare and file any tax returns or informational returns for the Environmental Response Trust or the Environmental Trust Accounts as may be required, and (iii) environmental consultants, custodians, security personnel, engineers, surveyors, brokers, contractors, administrative assistants and clerks. The Environmental Trustee may pay all such Persons compensation for services rendered and expenses incurred in accordance with a budget approved as provided in Section 3.2. The Environmental Trustee may, consistent with its fiduciary duty and with Section 3.2.4, above, retain an affiliated company to perform services for the Environmental Response Trust.

    4.5    Limitation of the Environmental Trustee's Authority

    The Environmental Response Trust and the Environmental Trustee shall not and are not authorized to engage in any trade or business with respect to the Environmental Trust Assets or any proceeds therefrom except as and to the extent the same is deemed in good faith by the Environmental Trustee to be reasonably necessary or proper for the conservation or protection of the Environmental Trust Assets, or the fulfillment of the purposes of the Environmental Response Trust. The Environmental Response Trust and the Environmental Trustee shall not take any actions that would cause the Environmental Response Trust to fail to qualify as a qualified settlement fund under the QSF Regulations.

4.6     Reliance by the Environmental Trust Parties

Except as may otherwise be provided herein: (a) the Environmental Trust Parties may rely on, and shall be protected from liability in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties; (b) the Environmental Trust Parties may consult with legal counsel, financial or accounting advisors and other professionals and shall not be personally liable for any action taken or not taken in accordance with the advice thereof; and (c) Persons dealing with the Environmental Trust Parties shall look only to the relevant Environmental Trust Environmental Cost Account if related to Environmental Action or Environmental Trust Administrative Account to satisfy any liability incurred by the Environmental Trust Parties to such Person in carrying out the terms of this Agreement or any order of the Court, and the Environmental Trust Parties shall have no personal obligations to satisfy any such liability other than as provided in Section 4.9.1.

4.7     Compensation of the Environmental Trustee

The Environmental Response Trust shall pay its own reasonable and necessary costs and expenses, and shall reimburse the Environmental Trustee for the actual reasonable out-of-pocket fees and expenses to the extent incurred by the Environmental Trustee in connection with the Environmental Trustee's duties hereunder, including, without limitation, necessary travel, lodging, office rent (to be paid directly by the Environmental Response Trust), postage, photocopying, telephone and facsimile charges upon receipt of periodic billings, all in accordance with an annual budget or fee schedule approved by the Beneficiaries. The Environmental Trustee, and employees of the Environmental Response Trust and the Environmental Trustee, who perform services for the Environmental Response Trust shall be entitled to receive reasonable compensation for services rendered on behalf of the Environmental Response Trust in accordance with an annual budget or fee schedule approved by the Beneficiaries.

The Environmental Trust Assets shall be subject to the claims of the Environmental Trustee, and the Environmental Trustee shall be entitled to reimburse itself out of any available cash in the Environmental Trust Administrative Account, and the Environmental Response Trust shall be obligated to pay, for actual out-of-pocket expenses and for actual hours worked.

All compensation and other amounts payable to the Environmental Trustee shall be paid from the Environmental Trust Assets.

4.8     Liability of Environmental Trust Parties

4.8.1     In no event shall any of the Environmental Trust Parties be held liable to any third parties for any liability, action, or inaction of any other party, including Reorganized Debtors or any other Environmental Trust Party. The Environmental Trust Parties shall, further, be indemnified and exculpated in accordance with Section 4.9 of this Agreement. The Environmental Trustee shall not be deemed in breach of its duties or responsibilities on account of the insufficiency of funds. Funding from an Environmental Trust Environmental Cost Account may not be used except as otherwise

expressly provided by and in accordance with the Stipulation and Settlement Agreement. Funding from an Environmental Trust Environmental Cost Account for any DPH Site may not be used for any other DPH Site, except as otherwise expressly provided by and in accordance with the Stipulation and Settlement Agreement.

4.8.2   As provided in Sections XI and XII of the Stipulation and Settlement Agreement, the Environmental Trust Parties are deemed to have resolved their civil liability under CERCLA and State Environmental Laws to the United States and States, and have protection from contribution actions or claims as provided by Sections 113(f)(2) of CERCLA, 42 U.S.C. Section 9613(f)(2), or similar state law for matters addressed in the Stipulation and Settlement Agreement.  The Environmental Trust Parties shall have the benefits of the covenants not to sue as set forth in Section XI of the Stipulation and Settlement Agreement and of contribution protection as set forth in Section XII of the Stipulation and Settlement Agreement, each as limited by all reservations of rights contained in the Stipulation and Settlement Agreement.

4.8.3   No provision of this Agreement or the Stipulation and Settlement Agreement shall require the Environmental Trust Parties to expend or risk their own personal funds or otherwise incur any personal financial liability based on the ownership or environmental condition of the Assets or the performance or non-performance of any of its duties or the exercise of any of its authorities as Environmental Trustee hereunder. Notwithstanding the foregoing, the Environmental Trustee shall satisfy from its own funds any liability imposed by a final order of the Court, not reversed on appeal, on account of the Environmental Trustee's fraud, willful misconduct, or criminal conduct with relation to the performance or non-performance of any of its duties or the exercise of any of its authorities as Environmental Trustee hereunder.

4.9   Exculpation and Indemnification

4.9.1   Exculpation. None of the Environmental Trust Parties shall be personally liable unless the Court, by a final order that is not reversed on appeal, finds that it committed fraud or willful misconduct after the Effective Date in relation to the Environmental Trustee's duties. There shall be an irrebuttable presumption that any action taken or not taken with the approval of the Court does not constitute an act of fraud or willful misconduct, provided that there has been no misrepresentation to the Court.  Any judgment against an Environmental Trust Party and any costs of defense relating to any Environmental Trust Party shall be paid from the relevant Environmental Trust Environmental Cost Account for the relevant Site only if it relates to the Environmental Action at the Site, or the Environmental Trust Administrative Account without the Environmental Trust Party having to first pay from its own funds for any personal liability or costs of defense, unless a final order of the Court, that is not reversed on appeal, determines that it committed fraud or willful misconduct in relation to the Environmental Trust Party's duties. However, any payment shall be limited to funds in the relevant Environmental Trust Environmental Cost Accounts or the Environmental Trust Administrative Account.

4.9.2   The Environmental Trust Parties are exculpated by all persons, including without limitation, holders of claims and other parties in interest, of and from any and all claims, causes of action and other assertions of liability arising out of the ownership or environmental condition of Environmental Trust Assets and the discharge of the powers and duties conferred upon the Environmental Response Trust and/or Environmental Trustee by the Stipulation and Settlement Agreement or any order of the Court entered pursuant to or in furtherance of the Stipulation and Settlement Agreement, or applicable law or otherwise.   No person, including without limitation, holders of claims and other parties in interest, will be allowed to pursue any claims or cause of action against any Environmental Trust Party for any claim against DPH, for making payments in accordance with the Stipulation and Settlement Agreement or any order of the Court, or for implementing the provisions of the Stipulation and Settlement Agreement or any order of the Court.   Nothing in this Paragraph or the Stipulation and Settlement Agreement shall preclude the United States, the State of Michigan, and the State of Ohio from enforcing the terms of the Stipulation and Settlement Agreement and this   Agreement   against   the   Environmental   Trust   Parties   as   provided   herein. Notwithstanding anything in this Section 4.9.2 or elsewhere in this Agreement to the contrary, nothing in this Agreement shall be construed to exculpate the Environmental Trust Parties from any liability resulting from any act or omission constituting fraud, willful misconduct, or criminal conduct, as provided herein. The parties agree that the Environmental Trustee is not contracted to act as an architect, engineer or surveyor in its role as Environmental Trustee and that N.Y. Gen. Oblig. Law § 5-324 is not applicable to this Section 4.9.   This Agreement shall not be construed as one relative to the construction, alteration, repair or maintenance of a building, structure, appurtenances and appliances under N.Y. Gen. Oblig. Law § 5-322.1.

4.9.3   <u>Indemnification</u>.   The   Environmental   Response   Trust   shall indemnify, defend and hold harmless (without the Environmental Trust Parties having to first pay from their personal funds) the Environmental Trust Parties from and against any and all claims, causes of action, liabilities, obligations, losses, costs, judgments, damages or expenses (including attorneys' fees) and any other assertion of liability arising out of the ownership or environmental condition of Environmental Trust Assets or action or inaction or in connection with the Environmental Trustee's duties, to the fullest extent permitted by applicable law, including but not limited to, those caused or alleged to be caused by negligence or fault of any Environmental Trust Party (except for fraud, willful misconduct, or criminal conduct), provided that such indemnification shall be limited to funds in the relevant Environmental Trust Environmental Cost Account for the DPH Sites if it relates to Environmental Action or the Environmental Trust Administrative Account. Without limiting the foregoing, any such judgment against a Environmental Trust Party and any such costs of defense relating to any Environmental Trust Party shall be paid by the Environmental Response Trust consistent with the terms and conditions of this Section. Notwithstanding the foregoing, to the extent fraud, willful misconduct, or criminal conduct of any Environmental Trust Party is alleged and the Court finds, by a final order, not reversed on appeal, that such Environmental Trust Party committed fraud, willful misconduct, or criminal conduct after the Effective Date in relation to the Environmental Trustee's duties, there shall be no indemnification, of that Environmental Trust Party, for any judgments arising from such allegations of fraud, willful misconduct,

or criminal conduct.  It shall be an irrebuttable presumption that any action taken, or inaction, consistent with Court approval shall not constitute willful misconduct or fraud, provided that there has been no misrepresentation to the Court.

4.10    Termination, Replacement, and Removal of the Environmental Trustee.

    4.10.1  Termination

        The duties, responsibilities and powers of the Environmental Trustee will terminate on the date the Environmental Response Trust is dissolved under applicable law in accordance with the Stipulation and Settlement Agreement, or by an order of the Court; provided that this Section and Sections 4.6, 4.8 and 4.9 above shall survive such termination, dissolution and entry. The Environmental Trustee may resign from its Environmental Trusteeship generally and without cause giving not less than 120 days prior written notice thereof to the Court, the United States, the State of Michigan, and the State of Ohio, and the Environmental Agencies provided however, that in the event a suitable replacement is not found and approved by the United States, the State of Michigan, and the State of Ohio within 120 days after such written notice is provided, the Environmental Trustee's resignation shall not become effective and the Environmental Trustee shall continue to function in its capacity as Environmental Trustee until a suitable replacement is found and approved by the United States, the State of Michigan, and the State of Ohio.

        4.10.2  Replacement:

        The Environmental Trustee may be replaced upon completion of any five (5) year term at the direction of the United States, the State of Michigan, and the State of Ohio; however, this Section and Sections 4.6, 4.8 and 4.9 above shall survive such termination.

        4.10.3  Removal

        The Environmental Trustee may be removed or the Environmental Trust Assets may be transferred to another environmental response trust at the direction of the United States, the State of Michigan, and the State of Ohio by:

            (1) The entry of an order by the Bankruptcy Court, not reversed on appeal, immediately upon notice of appointment of a temporary or permanent successor, finding that the Environmental Trustee committed fraud, willful misconduct or criminal conduct after the Effective Date in relation to the Environmental Trustee's duties under the Environmental Response Trust; or

            (2) The entry of an order by the Bankruptcy Court, not reversed on appeal, immediately upon notice of appointment of a temporary or permanent successor, finding that (i) the Environmental Trustee in any material respect, as a result of negligence, exacerbates hazardous conditions at the DPH Site, (ii) is seriously or repeatedly

deficient or late in performance of the work or violates the provisions of the Stipulation and Settlement Agreement, or (iii) has violated the provisions of this Agreement or other related implementation agreements.  In the event of the occurrence of 2(i), 2(ii) or 2(iii), the United States, the State of Michigan, and the State of Ohio may jointly direct that (i) the Environmental Trustee be replaced in accordance with the Trust Agreement or (ii) all Trust Assets be transferred to a new trust established to oversee clean-up of the DPH Sites, at the direction of the United States, the State of Michigan, and the State of Ohio to be used in accordance with the terms of this Agreement or the Stipulation and Settlement Agreement.

(3) The provisions of this Section and Section 4.6, 4.8 and 4.9 above shall survive the removal of the Environmental Trustee or transfer of funds.

4.11    Appointment of Successor Environmental Trustees

Any successor Environmental Trustee shall be proposed by the United States, the State of Michigan, and the State of Ohio and appointed by the Court.  Any successor Environmental Trustee appointed hereunder shall execute an instrument accepting such appointment hereunder and shall file such acceptance with the Environmental Response Trust records. Thereupon, such successor Environmental Trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts and duties of its predecessor in the Environmental Response Trust with like effect as if originally named herein; provided, however, that a removed or resigning Environmental Trustee shall, nevertheless, when requested in writing by the successor Environmental Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Environmental Trustee under the Environmental Response Trust all the estates, properties, rights, powers, and trusts of such predecessor Environmental Trustee.

4.12    No Bond

Notwithstanding any state law to the contrary, the Environmental Trustee, including any successor Environmental Trustee, shall be exempt from giving any bond or other security in any jurisdiction.

ARTICLE V
BENEFICIARIES

5.1    Beneficiaries

Beneficial interests in the Environmental Response Trust shall be held by each of the Beneficiaries.

5.2     Identification of Beneficiaries

       5.2.1    In order to determine the actual names and addresses of the authorized representatives of a Beneficiary, the Environmental Response Trust and the Environmental Trustee shall be entitled to rely conclusively on the name and address of the authorized representative for such Beneficiary listed below in Section 5.2.2, who may from time to time provide additional or replacement names and addresses of authorized representatives, or listed in any written notice provided to the Environmental Trustee in the future by an authorized representative of such Beneficiary.

       5.2.2    The Environmental Trustee shall send copies of all reports, budgets, annual balance statements, and other documents that the Environmental Trustee is required to submit to a Beneficiary under the Stipulation and Settlement Agreement and this Agreement, and related implementation documents including any unilateral administrative orders, consent decrees, or administrative orders on consent to the following person(s), as applicable:

As to the United States of America (on behalf of EPA) as beneficiary:

Authorized representative and party to receive all notices under 5.2.2:

    Cristine Irvin Phillips
    Assistant United States Attorney
    Office of the United States Attorney
     for the Southern District of New York
    86 Chambers Street, Third Floor
    New York, NY 10007
    Telephone: (212) 637-2696
    Facsimile: (212) 637-2702
    E-mail: cristine.phillips@usdoj.gov

    Chief, Environmental Enforcement Section
    Environment and Natural Resources Division
    U.S. Department of Justice
    P.O. Box 7611
    Washington, DC 20044-7611
    Telephone: (202) 514-5271
    Facsimile: (202) 514-4180
    File Ref. No. 90-11-3-09688

    Cathleen R. Martwick
    Associate Regional Counsel
    U.S. EPA, Region 5
    Office of Regional Counsel (C-14J)
    77 West Jackson Blvd.,
    Chicago, IL 60604

Telephone: (312) 886-7166
Facsimile: (312) 697-2060
E-mail: martwick.cathleen@epa.gov

Donald A. Heller
Corrective Action Project Manager
United States Environmental Protection Agency, Region 5
Remediation and Reuse Branch (LU-9J)
77 West Jackson Boulevard
Chicago, IL  60604
(312) 353-1248
heller.donald@epa.gov

<u>As to the State of Michigan as beneficiary</u>:

Authorized representative and party to receive all notices under 5.2.2:

Celeste R. Gill
Assistant Attorney General
Environment, Natural Resources and Agriculture Division
P.O. Box 30755
Lansing, MI 48909
Telephone: (517) 373-7540
Fax: (517) 373-1610
Email: GillC1@michigan.gov

Delores Montgomery
Chief Hazardous Waste Section
Office of Waste Management and Radiological Protection
Michigan Department of Environmental Quality
P.O. Box 30241
Lansing, MI 48909-7741
Telephone: (517) 284-6565
Fax: (517) 373-4051
Email: montgomeryd1@michigan.gov

Leonard Lipinski
Bankruptcy Specialist
Compliance and Enforcement Section
Remediation and Redevelopment Division
Michigan Department of Environmental Quality
P.O. Box 30246
Lansing, MI 48909-7926
Telephone: (517) 284-5128
Fax: (517) 241-9581
Email: lipinskil@michigan.gov

27

<u>As to the State of Ohio as beneficiary</u>:

Authorized representative and party to receive all notices under 5.2.2:

> Timothy J. Kern
> Principal Assistant Attorney General
> Environmental Enforcement Section
> Ohio Attorney General Michael DeWine
> 30 E. Broad St., 25th Floor
> Columbus, Ohio 43215
> Telephone: (614) 466-5261
> Fax: (614) 644-9684
> Email: <u>Timothy.Kern@OhioAttorneyGeneral.gov</u>

> Bruce Weinberg
> Manager Compliance and Enforcement Section
> Ohio Environmental Protection Agency
> Division of Air Pollution Control, Central Office
> 50 West Town Street, Suite 700
> Columbus, Ohio 43215
> Telephone: (614) 644-3752
> Email: bruce.weinberg@epa.ohio. gov

5.3     <u>Non-Beneficiaries</u>

Upon the Effective Date of this Agreement, the Reorganized Debtors shall have no interests including, without limitation, any reversionary interest, in the Environmental Response Trust or any Environmental Trust Assets. The United States, the State of Michigan, and the State of Ohio shall be the sole beneficiaries of the Environmental Trust Accounts. Reorganized Debtors shall not have any rights or interest to the Environmental Trust Assets distributed to the Environmental Trust Accounts, nor to any funds remaining in any of the Environmental Trust Accounts upon the completion of any and all final actions and disbursements for any and all final costs with respect to the DPH Sites.

5.4     <u>Transfer of Beneficial Interests</u>

The interest of the Beneficiaries in the Environmental Response Trust, which are reflected only on the records of the Environmental Response Trust maintained by the Environmental Response Trust, are not negotiable and may be transferred only by order of the Court or by operation of law, and in any event, only after written notice to the Environmental Response Trust. The Environmental Response Trust shall not be required to record any transfer in favor of any transferee where, in the sole discretion of the Environmental Response Trust, such transfer is or might be construed to be ambiguous or to create uncertainty as to the holder of the interest in the Environmental Response Trust. Until a transfer is in fact recorded on the books and records maintained by the Environmental Response Trust for the purpose of identifying Beneficiaries, the Environmental Response Trust, whether or not in receipt of

28

documents of transfer or other documents relating to the transfer, may nevertheless make distributions and send communications to Beneficiaries, as though it has no notice of any such transfer, and in so doing the Environmental Response Trust and Environmental Trustee shall be fully protected and incur no liability to any purported transferee or any other Person. Interests in the Environmental Response Trust may not be transferred to the Reorganized Debtors, DPH Holdings Corporation, or any Persons related to any of the preceding (within the meaning of Section 468B(d)(3) of the Internal Revenue Code).

ARTICLE VI
REPORTING AND TAXES

6.1    Reports

As soon as practicable, but no later than 28 days after the end of each calendar quarter beginning with the quarter ended after assets are first received by the Environmental Response Trust and ending as soon as practicable upon termination of the Environmental Response Trust, the Environmental Response Trust shall submit to the Beneficiaries a written report, including: (a) financial statements of the Environmental Response Trust at the end of such calendar quarter or period and the receipts and disbursements of the Environmental Response Trust for such period; and (b) a description of any action to be taken by the Environmental Response Trust, and prior to such action being taken, in the performance of its duties which, as determined by outside counsel, accountants or other professional advisors, materially and adversely affects the Environmental Response Trust and of which notice has not previously been given to the Beneficiaries. The Environmental Response Trust shall promptly submit additional reports to the Beneficiaries whenever, as determined by outside counsel, accountants or other professional advisors, an adverse material event or change occurs which affects either the Environmental Response Trust or the rights of the Persons receiving distributions (including, without limitation, the Beneficiaries) hereunder.

6.2    Other

The Environmental Response Trust shall also file (or cause to be filed) any other statements, returns or disclosures relating to the Environmental Response Trust that are required by any applicable governmental unit.

6.3    Reports in Support of Insurance Claims

The Environmental Response Trust shall also file (or cause to be filed) reports and cost analyses in support of claims against insurance carriers at the request of the United States and the States and shall provide the United States and the States a copy of any such reports and cost analyses.

6.4    Taxes

The Environmental Trustee shall be the "administrator," within the meaning of Treasury Regulation Section 1.468B-2(k)(3), of the Environmental Response Trust. Subject to definitive guidance from the Internal Revenue Service or a judicial decision to the contrary, the Environmental Trustee shall file tax returns and pay applicable taxes with respect to the

Environmental Response Trust in a manner consistent with the provisions of the QSF Regulations. All such taxes shall be paid from the Environmental Trust Administrative Account.

ARTICLE VII
MISCELLANEOUS PROVISIONS

7.1     Amendments and Waivers

Any provision of this Agreement may be amended or waived by mutual written consent of the Environmental Response Trust and the Beneficiaries; provided, however, that no change shall be made to this Agreement that would alter the provisions of Section 7.2 hereof or adversely affect the federal income tax status of the Environmental Response Trust as a "qualified settlement fund" (in accordance with Section 6.4 hereof), or, unless agreed to in writing by the affected Environmental Trustee, any of the rights or powers of the Environmental Trustee as contained in this Agreement.  Technical amendments to this Agreement may be made as necessary, to clarify this Agreement or enable the Environmental Trustee to effectuate the terms of this Agreement, in a manner consistent with the Stipulation and Settlement Agreement with the mutual consent of the Environmental Response Trust and the Beneficiaries.

7.2     Tax Treatment

The Environmental Response Trust created by this Agreement is intended to be treated as a qualified settlement fund pursuant to the QSF Regulations for federal income tax purposes, and to the extent provided by law, this Agreement shall be governed and construed in all respects consistent with such intent.

7.3     Cooperation

The Environmental Response Trust and Environmental Trustee shall take such actions and execute such documents as are reasonably requested by Reorganized Debtors with respect to effectuating the Stipulation and Settlement Agreement and the transactions contemplated thereby, provided that such actions are not inconsistent with this Agreement or the Stipulation and Settlement Agreement.  To the extent that the Reorganized Debtors request the Environmental Response Trust and/or the Environmental Trustee to take such an action, the Environmental Response Trust and Environmental Trustee shall do so at the sole expense of the Reorganized Debtors.

7.4     Situs of the Trust

The situs of the Trust herein established is New York.  To the extent the Bankruptcy Code or other federal law is applicable, the rights, duties, and obligations arising under this Trust Agreement shall be governed by, and construed and enforced in accordance with, those laws as are applicable.  Where the Bankruptcy Code or other federal law is not applicable, the rights, duties, and obligations arising under this Trust Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of law thereof.

7.5     Severability

30

If any provision of this Agreement or application thereof to any Person or circumstance shall be finally determined by the Court to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

7.6     <u>Sufficient Notice</u>

Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the Person for whom such notice is intended, or via email or facsimile, to the name and address set forth in the case of a Beneficiary in Section 5.2 of this Agreement or such other address provided in writing to the Trust by an authorized representative of the respective Beneficiary.

7.7     <u>Headings</u>

The section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or any term or provision hereof.

7.8     <u>Actions Taken on Other Than Business Day</u>

If any payment or act under the Stipulation and Settlement Agreement or this Agreement is required to be made or performed on a date that is not a business day, then the making of such payment or the performance of such act may be completed on the next succeeding business day, but shall be deemed to have been completed as of the required date. For the purposes of this agreement, a business day shall be any of the days Monday through Friday excluding national holidays.

7.9     <u>Consistency of Agreements and Construction</u>

To the extent reasonably possible, the provisions of this Agreement shall be interpreted in a manner consistent with the Stipulation and Settlement Agreement. Where the provisions of this Agreement are irreconcilable with the provisions of the Stipulation and Settlement Agreement, the provisions of the Stipulation and Settlement Agreement shall prevail, with the exception of Section 1.1.25, 2.5.5, 2.6.1, 3.2.1 through 3.2.5 and Article IV in its entirety, in which case this Agreement controls.

7.10    <u>Compliance with Laws</u>

Any and all distributions of Environmental Trust Assets shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

7.11    Preservation of Privilege.

In connection with the rights, claims, and causes of action that constitute the Environmental Trust Assets, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Environmental Response Trust shall vest in the Environmental Response Trust and its representatives, and the Parties are authorized to take all necessary actions to effectuate the transfer of such privileges.

7.12    No Recourse to Beneficiaries.

In no event shall the Beneficiaries have any responsibility for paying any expenses, fees, and other obligations of the Environmental Response Trust, and in no event shall the Environmental Response Trust or the Environmental Trustee, or any of their agents, representatives, or professionals, have recourse to the Beneficiaries therefor.

7.13    Status of Beneficiaries

No Beneficiary shall be deemed to be an owner, operator, Environmental Trustee, partner, agent, shareholder, officer, or director of the Environmental Response Trust or the Environmental Trust Parties, or to be an owner or operator of any of the DPH Sites, solely on account of this Agreement or the Stipulation and Settlement Agreement, or actions contemplated thereby, or its status as a Beneficiary or party to this Agreement or the Stipulation and Settlement Agreement.

7.14    Uniform Custodial Trust Act.

The Trust Agreement shall not be subject to any provision of the Uniform Custodial Trust Act as adopted by any state, now or in the future.

THE UNDERSIGNED PARTIES ENTER INTO THIS AGREEMENT:


**FOR THE UNITED STATES OF AMERICA:**


Date: _11 / 8 / 13_                PREET BHARARA
                                   United States Attorney for the
                                    Southern District of New York


                   By:     _____
                                   CRISTINE IRVIN PHILLIPS
                                   Assistant United States Attorney
                                   86 Chambers Street
                                   New York, New York 10007
                                   Tel:  (212) 637-2696



Date: _____           _____
                                   ROBERT G. DREHER
                                   Acting Assistant Attorney General
                                   Environment and Natural Resources Division
                                   U.S. Department of Justice
                                   Washington, D.C. 20044



Date: _____           _____
                                   ALAN S. TENENBAUM
                                   National Bankruptcy Coordinator
                                   Environment and Natural Resources Division
                                   U.S. Department of Justice
                                   Washington, D.C. 20044



Date: _____           _____
                                   ROBERT DARNELL
                                   Trial Attorney
                                   Environment and Natural Resources Division
                                   U.S. Department of Justice
                                   Washington, D.C. 20044


33

THE UNDERSIGNED PARTIES ENTER INTO THIS AGREEMENT:


**FOR THE UNITED STATES OF AMERICA:**


Date: _____

PREET BHARARA
United States Attorney for the
 Southern District of New York


By: _____

CRISTINE IRVIN PHILLIPS
Assistant United States Attorney
86 Chambers Street
New York, New York 10007
Tel: (212) 637-2696


Date: 11/7/13

ROBERT G. DREHER
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20044


Date: 11/8/13

ALAN S. TENENBAUM
National Bankruptcy Coordinator
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20044


Date: 11/8/13

ROBERT DARNELL
Trial Attorney
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20044

**FOR DPH HOLDINGS CORPORATION:**

Date: _06 NOV 2013_          By: _____

John Brooks
President
DPH Holdings Corp., et al.,
World Headquarters
M/C 483-400-530
5725 Delphi Drive
Troy, MI 48098

Date: _November 7, 2013_          By: _____

Kevin Holewinski
Daniella Einik
JONES DAY
Attorneys for DPH Holdings Corp., et al.,
Reorganized Debtors
51 Louisiana Ave., N.W.
Washington, D.C. 20001-2113

Date: _____          By: _____

John Wm. Butler, Jr
John K. Lyons
Ron E. Meisler
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
Attorneys for DPH Holdings Corp., et al.,
Reorganized Debtors
155 North Wacker Drive
Chicago, Illinois 60606

- and -

Four Times Square
New York, New York 10036

**FOR DPH HOLDINGS CORPORATION:**

Date: _____    By: _____

John Brooks
President
DPH Holdings Corp., et al.,
World Headquarters
M/C 483-400-530
5725 Delphi Drive
Troy, MI 48098

Date: _____    By: _____

Kevin Holewinski
Daniella Einik
JONES DAY
Attorneys for DPH Holdings Corp., et al.,
Reorganized Debtors
51 Louisiana Ave., N.W.
Washington, D.C. 20001-2113

Date: 11/7/13    By: _____

John Wm. Butler, Jr
John K. Lyons
Ron E. Meisler
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
Attorneys for DPH Holdings Corp., et al.,
Reorganized Debtors
155 North Wacker Drive
Chicago, Illinois 60606

- and -

Four Times Square
New York, New York 10036

34

**FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:**

Date: *November 8, 2013*          By: _Robert A. Kaplan_

ROBERT A. KAPLAN
Regional Counsel
U.S. Environmental Protection Agency
Region 5

Date: _11-8-13_          By: _Richard Karl_

RICHARD KARL
Director
Superfund Division
U.S. Environmental Protection Agency
Region 5

**FOR THE STATE OF MICHIGAN ON BEHALF OF THE MICHIGAN DEPARTMENT
OF ENVIRONMENTAL QUALITY:**

Date:  _11- 7- 13_

_____
Bill Schuette
Attorney General

Celeste R. Gill (P52484)
Assistant Attorney General
Environment, Natural Resources and
Agriculture Division
6th Floor, G. Mennen Williams Building
525 West Ottawa Street
P.O. Box 30755
Lansing, MI  48909
Tel.: (517) 373-7540
Fax: (517) 373-1610
gillc1@michigan.gov
Attorneys for the Michigan Department
of Environmental Quality

**FOR THE STATE OF OHIO ON BEHALF OF THE OHIO ENVIRONMENTAL
PROTECTION AGENCY:**

MICHAEL DeWINE
OHIO ATTORNEY GENERAL

Date: _November 8, 2013_          By: _(signature)_
Timothy J. Kern
Principal Assistant Attorney General
Environmental Enforcement Section
30 East Broad Street, 25th Floor
Columbus, Ohio 43215
Telephone: (614) 466-5261
Fax: (614) 644-9684
Email: Timothy.Kern@OhioAttorneyGeneral.gov

**FOR THE ENVIRONMENTAL TRUSTEE:**

The DPH Environmental Trustee by and through Le
Petomane XXVIII, Inc., not individually but solely in the
representative capacity as Environmental Trustee of the
DPH Environmental Response Trust

Date: 11-7-13          By: _____  *not individually but solely as President*

JAY A. STEINBERG
not individually, but solely in the representative capacity as
President of the Environmental Trustee of the DPH
Environmental Response Trust

38