**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------x
                                     :
In re:                               :        Chapter 11
                                     :
DPH HOLDINGS CORPORATION, *et al.*,  :        Case No. 05-44481 (RDD)
                                     :
            Reorganized Debtors.     :        Jointly Administered
------------------------------------x


**JOINT STIPULATION AND AGREED ORDER, CONSENT DECREE AND SETTLEMENT AGREEMENT AMONG REORGANIZED DEBTORS, THE UNITED STATES ON BEHALF OF THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, THE STATE OF MICHIGAN ON BEHALF OF THE MICHIGAN DEPARTMENT OF ENVIRONMENTAL QUALITY, THE STATE OF OHIO ON BEHALF OF THE OHIO ENVIRONMENTAL PROTECTION AGENCY, AND THE ENVIRONMENTAL RESPONSE TRUST TRUSTEE (I) RESOLVING PROOF OF CLAIM NUMBER 15785 AND PROOFS OF ADMINISTRATIVE EXPENSE CLAIM NUMBERS 18956, 19539, AND 19786 AND (II) ESTABLISHING AN ENVIRONMENTAL RESPONSE TRUST**

# TABLE OF CONTENTS

I.      BACKGROUND ................................................................................................ 1

II.     DEFINITIONS ................................................................................................. 7

III.    JURISDICTION ............................................................................................. 12

IV.     PARTIES BOUND; SUCCESSION AND ASSIGNMENT ............................... 12

V.      RESOLUTION OF PROOFS OF CLAIM .......................................................... 12

VI.     THE ENVIRONMENTAL RESPONSE TRUST ................................................ 12

VII.    ENVIRONMENTAL TRUST ACCOUNTS ....................................................... 17

VIII.   DAYTON VOC SITE .................................................................................... 22

IX.     ENVIRONMENTAL RESPONSE TRUST MISCELLANEOUS
        PROVISIONS ............................................................................................... 23

X.      OUTSTANDING OBLIGATIONS .................................................................... 26

XI.     COVENANT NOT TO SUE AND RESERVATION OF RIGHTS .................... 27

XII.    CONTRIBUTION PROTECTION .................................................................... 30

XIII.   TRANSFERS OF REAL PROPERTY INFORMATION AND
        ENVIORNMENTAL INFORMATION ............................................................... 31

XIV.    NOTICES AND SUBMISSIONS ...................................................................... 31

XV.     JUDICIAL APPROVAL AND OPPURTUNITY FOR PUBLIC
        COMMENT ................................................................................................... 35

XVI.    EFFECTIVE DATE ........................................................................................ 36

XVII.   AMENDMENTS/INTEGRATION AND COUNTERPARTS ............................ 36

XVIII.  RETENTION OF JURISDICTION .................................................................... 36

DPH Holdings Corp. ("DPH") and certain of its affiliated reorganized debtors in the above-captioned cases (collectively, the "Reorganized Debtors"), the United States on behalf of the United States Environmental Protection Agency (the "EPA"), the State of Michigan on behalf of the Michigan Department of Environmental Quality (the "MDEQ"), and the State of Ohio on behalf of the Ohio Environmental Protection Agency (the "Ohio EPA") respectfully submit this Joint Stipulation and Agreed Order, Consent Decree and Settlement Agreement Among Reorganized Debtors, the United States on Behalf of the United States Environmental Protection Agency, the State of Michigan on Behalf of the Michigan Department of Environmental Quality, the State of Ohio on behalf of the Ohio Environmental Protection Agency, and the Environmental Response Trust Trustee (I) Resolving Proof of Claim Number 15785 and Proofs of Administrative Expense Numbers 18956, 19539, and 19786 and (II) Establishing an Environmental Response Trust (the "Stipulation and Settlement Agreement") and agree and state as follows:

## I.  <u>BACKGROUND</u>

WHEREAS, on October 8 and 14, 2005 (the "Petition Dates") Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, former debtors and debtors-in-possession in the above captioned cases (collectively, the "Debtors"), filed with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") voluntary petitions for relief under chapter 11 of title 11 of the United States Code, as then amended (the "Bankruptcy Code"), which petitions have been consolidated for procedural purposes and are being administered jointly as Case No. 05-44481 (RDD) (the "Bankruptcy Cases");

WHEREAS, on July 30, 2009, the Bankruptcy Court entered an order (Dkt. # 18707) (the "Plan Approval Order") confirming a modified plan of reorganization ("Plan of Reorganization" or the "Plan"), pursuant to which the Debtors emerged from chapter 11 as the Reorganized Debtors;

WHEREAS, post-emergence, the Reorganized Debtors were given the responsibility for winding up the Bankruptcy Cases, including resolving remaining claims and interests against the Debtors;

WHEREAS, on July 3, 2013, the Reorganized Debtors filed the Motion for Final Decree and Order Pursuant to 11 U.S.C. §§ 105, 350(a), and 1142, Fed. R. Bankr. P. 3022, and Local Bankr. R. 3022-1 Closing the Bankruptcy Cases and Providing Related Relief (the "Case Closing Motion") (Dkt. # 22073);

WHEREAS, on July 23 and 24, 2013, the United States and the MDEQ filed objections to the Case Closing Motion (Dkt: # 22095, 22101);

WHEREAS, on August 6, 2013, the Court entered the Order Pursuant to 11 U.S.C. §§ 205, 350(a), and 1142, Fed. R. Bankr. P. 3022, and Local Bankr. R. 3022-1 Concerning Closing the Bankruptcy Cases and Providing Related Relief, which provided for, among other things, a schedule for the resolution of environmental claims and issues ("Case Closing Order") (Dkt. # 22121);

WHEREAS, on September 3, 2013, the Court entered an Order Establishing Procedures Governing the Resolution of Environmental Claims and All Other Environmental Issues At The Sites Owned By Reorganized Debtors ("Environmental Claims and Issues Procedure Order") (Dkt. # 22136);

WHEREAS, the United States on behalf of EPA and the State of Michigan on behalf of MDEQ contend that Reorganized Debtors have compliance and work obligations under RCRA (as defined below) and Part 111 of Michigan's Natural Resources and Environmental Protection Act ("NREPA"), PA 451 of 1994, MCL 324.11101 *et seq*., requiring Reorganized Debtors to clean up two adjacent contaminated sites owned by Reorganized Debtors in Flint, Michigan, and that Reorganized Debtors are responsible for known or potential environmental contamination at or emanating from the sites (the "DPH Flint Sites");

WHEREAS, United States, on behalf of EPA, and the State of Michigan on behalf of MDEQ contend that Reorganized Debtors have compliance and work obligations under Part 201 the NREPA, requiring Reorganized Debtors to clean up a contaminated site owned by Reorganized Debtors in

2

Saginaw, Michigan, and that Reorganized Debtors are responsible for known or potential environmental contamination at or emanating from the site (the "DPH Saginaw Site");

WHEREAS, United States, on behalf of EPA, and the State of Ohio on behalf of the Ohio EPA contend that Reorganized Debtors have compliance and work obligations under Ohio Rev. Code § 6111 and Ohio Admin. Code § 3745-20-07 requiring Reorganized Debtors to clean up a contaminated site owned by Reorganized Debtors in Rootstown, Ohio, and that Reorganized Debtors are potentially responsible parties or may otherwise be responsible for known or potential environmental contamination at or emanating from the site (the "DPH Rootstown Site" and, collectively, with the DPH Flint Sites and the DPH Saginaw Site, the "DPH Sites");

WHEREAS, the Reorganized Debtors dispute the contentions of the United States on behalf of EPA, the State of Michigan on behalf of MDEQ, and the State of Ohio on behalf of Ohio EPA with respect to the DPH Sites and contend that they do not have injunctive compliance and work obligations for the DPH Sites and have disputed the State of Ohio's right to participate in the November 14, 2013 hearing because it does not have an outstanding claim pending;

WHEREAS, the United States has filed proofs of claim for administrative expenses (Claim Nos. 18956, 19539, and 19786) (collectively, the "U.S. Administrative Expense Claims") against the Reorganized Debtors, and such applications seeking, among other things, administrative expenses incurred by EPA at a site in Dayton, Ohio (the "Dayton VOC Site"), pursuant to CERCLA as defined below, and which set forth claims or causes of action against Reorganized Debtors protectively for past and future response costs and work with respect to the DPH Sites pursuant to Reorganized Debtors' status as present owner of the DPH Sites;

WHEREAS, the Reorganized Debtors objected to the U.S. Administrative Expense Claims pursuant to the Reorganized Debtors' Forty-Sixth Omnibus Objection Pursuant to 11 U.S.C. § 503(B) and Fed. R. Bankr. P. 3007 to (I) Disallow and Expunge Certain Administrative Expense (A) Books and

3

Records Claims, (B) Methode Electronics Claims, (C) State Workers' Compensation Claims, (D)

Duplicate State Workers' Compensation Claims, (E) Workers' Compensation Claims, (F) Transferred

Workers' Compensation Claims, (G) Tax Claims, (H) Duplicate Insurance Claims, and (I) Severance

Claims, (II) Disallow and Expunge (A) a Certain Duplicate Workers' Compensation Claim, (B) A Certain

Duplicate Tax Claim, And (C) a Certain Duplicate Severance Claim, (III) Modify Certain Administrative

Expense (A) State Workers' Compensation Claims and (B) Workers' Compensation Claims, and (IV)

Allow Certain Administrative Expense Severance Claims (the "Forty-Sixth Omnibus Claims Objection")

(Dkt. # 19711);

WHEREAS, the United States filed a response to the Forty-Sixth Omnibus Claims Objection

(Dkt. # 19870);

WHEREAS, a hearing on the U.S. Administrative Expense Claim was adjourned to a future date

to be noticed by the Reorganized Debtors pursuant to the Court's Order Pursuant to 11 U.S.C. § 503(B)

and Fed. R. Bankr. P. 3007 (I) Disallowing and Expunging Certain Administrative Expense (A) Books

and Records Claims, (B) State Workers' Compensation Claims, (C) Duplicate State Workers'

Compensation Claims, (D) Workers' Compensation Claims, (E) Transferred Workers' Compensation

Claims, (F) Tax Claims, (G) Duplicate Insurance Claims, and (H) Severance Claims, (II) Disallowing and

Expunging (A) A Certain Duplicate Workers' Compensation Claim, (B) A Certain Duplicate Tax Claim,

and (C) A Certain Duplicate Severance Claim, (III) Modifying and Allowing Certain Administrative

Expense Workers' Compensation Claims, and (IV) Allowing Certain Administrative Expense Severance

Claims ("Forty-Sixth Omnibus Claims Objection Order") (Dkt. # 19949);

WHEREAS, the State of Michigan has filed a proof of claim (Claim No. 15785) (the "MDEQ

Claim," and collectively with the U.S. Administrative Expense Claim, the "Environmental Agency

Claims") against the Reorganized Debtors;

4

WHEREAS, the Reorganized Debtors objected to the MDEQ Claim pursuant to the Reorganized Debtors' Thirty-Eighth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To (I) Expunge Certain (A) Equity Interests, (B) Books And Records Claims, (C) Untimely Claims, (D) Pension, Benefit, And OPEB Claims, And (E) Workers' Compensation Claims And (II) Modify And Allow Certain Claims ("Thirty-Eighth Omnibus Claims Objection") (Dkt. # 19044);

WHEREAS, the MDEQ filed a response to the Thirty-Eighth Omnibus Claims Objection (Dkt. # 19132);

WHEREAS, the hearing on the MDEQ Claim was adjourned to a future date to be noticed by the Reorganized Debtors pursuant to the Court's Order Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 to (I) Expunge Certain (A) Equity Interests, (B) Books and Records Claims, (C) Untimely Claims, (D) Pension, Benefit, and OPEB Claims, and (E) Workers' Compensation Claims and (II) Modify and Allow Certain Claims ("Thirty-Eighth Omnibus Claims Objection Order") (Dkt. # 19175);

WHEREAS, the Ohio EPA filed five proofs of claim in the Bankruptcy Cases (Claim Numbers 15345, 15346, 15347, 16354, and 16355);

WHEREAS, four of the five claims were disallowed (Claim Numbers 15346, 15347, 16354, and 16355) and the final claim (Claim Number 15345) was withdrawn with prejudice pursuant to a stipulation entered into with the Reorganized Debtors on July 7, 2011 (Dkt. # 21431);

WHEREAS, pursuant to the Environmental Claims and Issues Procedure Order, the Reorganized Debtors filed a Notice of Claims Objection and Statement of Disputed Issues with Respect to Environmental Claims Numbers 15785, 18956, 19539, and 19786 and All Other Environmental Issues at the Sites Owned by the Reorganized Debtors ("Environmental Claims and Issues Objection") on September 6, 2013 (Dkt. # 22137);

WHEREAS, the United States on behalf of the EPA, MDEQ and Ohio EPA filed a Response of the Environmental Agencies to the Reorganized Debtors' Notice of Claims Objection and Statement of

5

Disputed Issues with Respect to Environmental Claims Numbers 15785, 18956, 19539, and 19786 and All

Other Environmental Issues at the Sites Owned by the Reorganized Debtors on September 16, 2013 (Dkt.

# 22150);

WHEREAS, the United States, the State of Michigan and the State of Ohio contend that the

Reorganized Debtors' injunctive obligation to comply with work requirements under court orders,

environmental statutes, regulations, rules, administrative orders, licenses, and permits is not dischargeable

pursuant to Section 1141 of the Bankruptcy Code;

WHEREAS, the Reorganized Debtors contend that the Environmental Agency Claims and any

claims now raised by the State of Ohio related to the DPH Rootstown Site are dischargeable prepetition

claims under the Plan of Reorganization, the Plan Approval Order and the Bankruptcy Code;

WHEREAS, the Reorganized Debtors, the United States on behalf of EPA, the State of Michigan

on behalf of MDEQ, and the State of Ohio on behalf of Ohio EPA (collectively, the "Parties") wish to

resolve their differences with respect to the DPH Sites and the Environmental Agency Claims, and to

address other matters as provided herein;

WHEREAS, under Section 11.3 of the Plan, the Reorganized Debtors may compromise and settle

Claims or Interests against the Debtors without the need for further Bankruptcy Court approval;

WHEREAS, the Parties agree that the proper vehicle for the resolution of the issues set forth

herein is an Environmental Response Trust (the "Environmental Response Trust"), which shall be deemed

the "DPH Environmental Response Trust," to be administered by an Environmental Response Trust

Trustee (the "Environmental Trustee") pursuant to an Environmental Response Trust Agreement (the

"Environmental Trust Agreement"), and for the transfer to the Environmental Response Trust of the DPH

Sites along with funding and other consideration as provided herein;

WHEREAS, the Parties and the Environmental Trustee wish to address certain matters with

respect to the DPH Sites as provided herein and in the Environmental Trust Agreement;

WHEREAS, in consideration of, and in exchange for, the promises and covenants herein, including, without limitation, the covenants not to sue set forth in Paragraphs 47, 49, and 54, the Parties and the Environmental Trustee hereby agree to the terms of this Stipulation and Settlement Agreement;

WHEREAS, settlement of the matters governed by this Stipulation and Settlement Agreement is in the public interest and is an appropriate means of resolving these matters;

NOW, THEREFORE, without the admission of liability or the adjudication of any issue of fact or law, the Parties, by their attorneys and authorized officials, hereby stipulate and agree as follows:

## II.  DEFINITIONS

1.    Unless otherwise expressly provided herein, terms used in this Stipulation and Settlement Agreement that are defined in CERCLA (as defined below), RCRA (as defined below), the NREPA, regulations promulgated pursuant to CERCLA, RCRA, the NREPA, the Bankruptcy Code, or the Environmental Trust Agreement attached as Exhibit B hereto shall have the meaning assigned to them therein.

2.    Whenever terms listed below are used in this Stipulation and Settlement Agreement, the following definitions shall apply:

a.    "Administrative Costs" means the fees, costs, and expenses incurred in connection with the administration of the Environmental Response Trust, including but not limited to real estate management, taxes, insurance, property marketing costs, and maintenance costs, but excluding any expenses (including, without limitation, expenses of the Environmental Response Trust and its third-party professionals) incurred in overseeing, managing, and performing Environmental Actions.

b.    "Environmental Agency Claims" has the meaning set forth in the recitals.

c.    "Bankruptcy Cases" has the meaning set forth in the recitals.

7

d.    "Bankruptcy Code" means title 11 of the United States Code, as then amended, and subject to any further amendments retroactively applicable to the Petition Date.

e.    "Bankruptcy Court" has the meaning set forth in the recitals.

f.    "CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as now in effect or hereafter amended.

g.    "Dayton VOC Site" has the meaning set forth in the recitals.

h.    "DPH Flint Sites" has the meaning set forth in the recitals.

i.    "DPH Rootstown Site" has the meaning set forth in the recitals.

j.    "DPH Saginaw Site" has the meaning set forth in the recitals.

k.    "DPH Site" and/or "DPH Sites" has the meaning set forth in the recitals, and further means all the rights, titles, and interests in and to, including, without limitation, all of the fee ownership in, all appurtenances, rights, easements, rights-of-way, mining rights, mineral rights, mineral claims, appurtenant groundwater rights, associated surface water rights, claims, and filings, permits, licenses, third-party warranties and guaranties for equipment or services to the extent transferable under bankruptcy law, or other interests (including without limitation all fixtures, improvements, personal property (tangible and intangible) and equipment located thereon as of the Effective Date).

l.    "Effective Date" means the effective date of this Stipulation and Settlement Agreement, as provided in Paragraph 63 hereof.

m.    "Environmental Actions" means any and all environmental activities authorized or required under Environmental Law, or any and all environmental activities as directed by the Lead Agency,  that occur after the Effective Date and that are related to any of the DPH Sites, including but not limited to response or remedial actions, removal actions, corrective action, closure or post-closure care, reclamation, investigations, studies, remediation, interim actions, final

8

actions, emergency actions, water treatment, implementation of engineered structures and controls, monitoring, repair and replacement of engineered structures, monitoring equipment and controls, operation and maintenance, implementation, operation and maintenance of institutional controls, coordination and integration of reuse and remedial efforts and initiatives (including, without limitation, multi-stakeholder communications), and, if required, long-term stewardship and perpetual custodial care activities. "Environmental Actions" also include the above environmental activities relating to the migration of hazardous substances or contaminants emanating from the DPH Sites. For avoidance of doubt, 'Environmental Actions" shall not include natural resource assessment or restoration.

n.    "Environmental Agencies" means EPA, MDEQ, and Ohio EPA.

o.    "Environmental Information" means all environmental reports, audits, analyses, records, studies and other documents containing non-privileged information prepared by or otherwise in the possession, custody or control of Reorganized Debtors or their technical consultants that are based on or otherwise reflect information related to environmental activities or conditions at the DPH Sites. For avoidance of doubt, Environmental Information shall include all technical and/or sampling data, but shall not include analysis of this data prepared in anticipation of litigation or otherwise subject to the attorney client privilege.

p.    "Environmental Law" or "Environmental Laws" means, whenever in effect, all federal, state and local statutes, regulations, rules, ordinances and similar provisions having the force or effect of law, all judicial and administrative orders and determinations and all common law concerning public health and safety, worker health and safety, pollution or protection of the environment, including, without limitation, the Atomic Energy Act ("AEA"), CERCLA, Clean Water Act ("CWA"), Clean Air Act ("CAA"), Emergency Planning and Community Right-to-Know Act ("EPCRA"), Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), Resource

9

Conservation and Recovery Act ("RCRA"), Safe Drinking Water Act ("SDWA"), Toxic Substances

Control Act ("TSCA"), and any state or local equivalents.

q.    "Environmental Response Trust" has the meaning set forth in the Environmental

Trust Agreement.

r.    "Environmental Trust Account" has the meaning set forth in the Environmental

Trust Agreement.

s.    "Environmental Trust Administrative Account" has the meaning set forth in the

Environmental Trust Agreement.

t.    "Environmental Trust Agreement" means the Environmental Trust Agreement,

which is attached as Exhibit A hereto.

u.    "Environmental Trust Assets" has the meaning set forth in the Environmental

Trust Agreement.

v.    "Environmental Trust Environmental Cost Account" has the meaning set forth in

the Environmental Trust Agreement.

w.    "Environmental Trust Parties" has the meaning set forth in the Environmental

Trust Agreement.

x.    "Environmental Trustee" has the meaning set forth in the Environmental Trust

Agreement.

y.    "EPA" has the meaning set forth in the recitals.

z.    "Excess Funding" has the meaning set forth in Paragraph 28 herein.

aa.    "Lead Agency" means the designated Environmental Agency identified in

Paragraph 9.

bb.    "MDEQ" has the meaning set forth in the recitals.

cc.    "MDEQ Claim" has the meaning set forth in the recitals.

10

dd.    "Non-Lead Agency" means the designated Environmental Agency identified in Paragraph 10.

ee.    "Ohio EPA" has the meaning set forth in the recitals.

ff.    "120-Day Budget" has the meaning given in Paragraph 22, herein.

gg.    "Parties" has the meaning set forth in the recitals.

hh.    "Petition Date" has the meaning set forth in the recitals.

ii.    "Plan of Reorganization" or "Plan" has the meaning set forth in the recitals.

jj.    "Postpetition," with respect to a particular Debtor, refers to the time period from and after the Petition Date applicable to such Debtor.

kk.    "Prepetition," with respect to a particular Debtor, refers to the time period prior to the Petition Date applicable to such Debtor.

ll.    "RCRA" means the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 *et seq.*, as now in effect or hereafter amended.

mm.    "Real Property Information" means all non-privileged documents in Reorganized Debtors' possession, custody, or control, or reasonably obtainable by Reorganized Debtors, related to property ownership, property taxes, leases, contracts, security, insurance, or administration or potential sales of a DPH Site.

nn.    "Reorganized Debtors" has the meaning set forth in the recitals.

oo.    "States" means the State of Michigan and the State of Ohio.

pp.    "Superfund" means the "Hazardous Substance Superfund" established by 26 U.S.C. § 9507 or, in the event such Hazardous Substance Superfund no longer exists, any successor fund or comparable account of the Treasury of the United States to be used for removal or remedial actions to address releases or threats of releases of hazardous substances.

11

qq.    "United States" shall mean the United States of America (on behalf of EPA) and all of its agencies, departments, and instrumentalities.

rr.    "U.S. Administrative Expense Claim" has the meaning set forth in the recitals.

## III.  JURISDICTION

2.    The Bankruptcy Court has jurisdiction over the subject matter hereof pursuant to 28 U.S.C. §§ 157, 1331, and 1334.

## IV.  PARTIES BOUND; SUCCESSION AND ASSIGNMENT

3.    This Stipulation and Settlement Agreement applies to, is binding upon, and shall inure to the benefit of the Parties, the Environmental Trust Parties, their legal successors and assigns, and any trustee, examiner, or receiver appointed in the Bankruptcy Cases.

## V.  RESOLUTION OF PROOFS OF CLAIM

4.    Upon the occurrence of the Effective Date, the MDEQ Claim, proof of claim number 15785, shall be disallowed and expunged.  Proof of administrative expense claim number 19786, relating to the Dayton VOC Site, shall be allowed as an administrative expense claim in the amount of $157,935.00; the U.S. administrative expense claims 18956 and 19539 shall be disallowed and expunged.  The Environmental Agency Claims and contentions regarding compliance and work obligations with respect to the DPH Sites shall be satisfied in full by the funding of the Environmental Response Trust and as otherwise provided in this Stipulation and Settlement Agreement.

## VI.  THE ENVIRONMENTAL RESPONSE TRUST

5.    This Stipulation and Settlement Agreement hereby incorporates in full the Environmental Trust Agreement that is entered into by the parties thereto, and which is attached hereto as Exhibit A.

6.    Le Petomane XXVIII, Inc., not individually but solely in its representative capacity as Environmental Trustee, by and through Jay A. Steinberg, not individually but solely in his representative

12

capacity as president of the Environmental Trustee, is appointed to serve as the Environmental Trustee to

administer the Environmental Response Trust and the Environmental Trust Accounts in accordance with

this Settlement Agreement and the Environmental Trust Agreement, attached hereto as Exhibit A.

7.    Within two (2) business days of the Effective Date, the Reorganized Debtors shall cause to be

transferred to the Environmental Response Trust, at the direction of the Environmental Trustee, cash in the

amount of $23,142,065.00, as set forth in greater detail in Paragraph 21, herein.

8.    Simultaneously with the payments to the Environmental Response Trust under

Paragraph 7, Reorganized Debtors also will transfer all of their right, title, and interest in the DPH

Sites (as defined above), including, without limitation, all of their fee ownership in, all

appurtenances, rights, easements, rights-of-way, mining rights (including unpatented mining claims,

mill site claims, and placer claims), mineral rights, mineral claims, appurtenant groundwater rights,

associated surface water rights, claims, and filings, permits, licenses, third-party warranties and

guaranties for equipment or services to the extent transferable under bankruptcy law, or other

interests (including without limitation all fixtures, improvements, personal property (tangible and

intangible) and equipment located thereon as of the Effective Date) related to the DPH Sites, but not

including Letter of Credit No. 63655963 and  Letter of Credit No. 63656029, as further discussed

and described in Paragraphs 45 and 46 of this Agreement, to the Environmental Response Trust.

Prior to the Effective Date, but not thereafter, Reorganized Debtors may remove from the DPH

Sites the machinery, equipment, fixtures, furniture, computers, tools, parts, supplies, and other

tangible personal property, used, or held for use, in connection with the operation of Reorganized

Debtors' operating assets.  On and after the Effective Date, Reorganized Debtors shall have no

ownership or other residual interest whatsoever with respect to the Environmental Response Trust

or the DPH Sites.  The transfer of ownership by the Reorganized Debtors of any such assets or other

property shall be a transfer of all of the Reorganized Debtors' right, title and interests therein, and

13

the transfer (i) shall be as is and where is, with no warranties of any nature; (ii) shall be free and clear of all claims, liens, and interests against the Reorganized Debtors, including liens for the payments of monetary claims, such as property taxes, or other monetary claims asserted or that could have been asserted in the bankruptcy proceeding, but shall remain subject to any existing *in rem* claims that do not secure payment of monetary claims (such as easements or deed restrictions); (iii) shall be subject to any rights of the Environmental Agencies under this Stipulation and Settlement Agreement; and (iv) shall be accomplished by transfer of good title, with all such conveyance documents to be agreed to in form by the Reorganized Debtors and the Environmental Trustee.   Reorganized Debtors, as applicable, will reasonably cooperate with the Environmental Agencies and the Environmental Trustee to deliver to the title company (which will cause to be recorded in the appropriate real property records) the transfer documents as soon as reasonably practicable, but not to exceed 30 days after the Effective Date.  In addition to and simultaneous with the payment set forth in Paragraph 7, Reorganized Debtors shall pay to the Environmental Response Trust an amount equal to the recording costs and transfer fees relating to the title transfers for the DPH Sites, and Reorganized Debtors' pro-rata share of such real property taxes that have accrued or become a lien on the DPH Sites during the calendar year as of the Effective Date.  If the actual bills for such real property taxes have not been issued, then such proration shall be based on an amount equal to such real property taxes for the prior year or tax period, which shall constitute a final proration and not be subject to further adjustment.  Upon full payment by the Reorganized Debtors as set forth in Paragraph 7 and this Paragraph 8, the Environmental Response Trust shall be responsible for paying all real property taxes first coming due following the Effective Date relating to the DPH Sites.  Reorganized Debtors shall execute, or cause to be executed, and record, if necessary, all necessary releases of any liens or security interests held by any Reorganized Debtor against any of the DPH Sites.  After Reorganized Debtors execute this Stipulation and Settlement

14

Agreement, Reorganized Debtors shall not further encumber the DPH Sites or their other interests

therein and shall maintain such properties in a commercially reasonable manner in accordance with

Reorganized Debtors' current practices, including the improvements thereon and the fixtures thereto

that are related to ongoing remediation activities in the condition that they exist as of the date of

such execution, except for ordinary wear and tear, casualty and condemnation, and except to the

extent that ongoing environmental activities require otherwise.

9.    For each DPH Site, Environmental Actions implemented or funded by the

Environmental Trustee shall be overseen by a "Lead Agency," which shall have the authority to

approve or disapprove the proposed budget for the relevant Environmental Trust Environmental

Cost Account (but only after consultation with the Non-Lead Agency where the Non-Lead Agency

requests such consultation).  The Lead Agency for each of the DPH Sites is as follows: for the DPH

Flint Sites, EPA; for the DPH Saginaw Site, MDEQ; for the DPH Rootstown Site, Ohio EPA.  After

this Stipulation and Settlement Agreement's entry, the Environmental Agencies may provide the

Environmental Trustee with joint written notice that the Lead Agency for a particular DPH Site has

changed.

10.    The "Non-Lead Agency" for the DPH Saginaw Site and DPH Rootstown Site will be

EPA, and the Non-Lead Agency for the DPH Flint Sites will be MDEQ.  After this Stipulation and

Settlement Agreement's entry, the Environmental Agencies may provide the Environmental Trustee

with joint written notice that the Non-Lead Agency for a particular Site has changed.

11.    The purpose of the Environmental Response Trust shall be to: (i) own the DPH Sites;

(ii) carry out administrative and property management functions related to the DPH Sites; (iii)

manage and/or fund implementation of future Environmental Actions approved by the Lead

Agencies with respect to the DPH Sites; (iv) fulfill other obligations as set forth in this Stipulation

and Settlement Agreement; (v) pay certain future oversight costs; and (vi) ultimately sell, transfer,

15

or otherwise dispose or facilitate the reuse of all or part of the Environmental Trust Assets, if possible, all as provided herein with no objective or authority to engage in any trade or business. The performance by the Environmental Trustee of its duties under this Agreement, including but not limited to the sale, lease or other disposition of some or all of the DPH Sites, shall not be considered to be the Environmental Trustee's engaging in a trade or business.  The Environmental Response Trust shall be funded as specified in Paragraph 21 herein.

12.    The Environmental Response Trust by and through the Environmental Trustee not individually but solely in its representative capacity, Reorganized Debtors, and the Lead Agencies for the DPH Sites shall make reasonable efforts to exchange information and reasonably cooperate to determine the appropriate disposition of any contracts or unexpired leases that relate to the relevant DPH Site.

13.    None of the Environmental Agencies shall be deemed to be an owner, operator, trustee, partner, agent, shareholder, officer, or director of the Environmental Response Trust or the Environmental Trust Parties, or to be an owner or operator of any of the DPH Sites on account of this Stipulation and Settlement Agreement or actions contemplated thereby.

14.    Reorganized Debtors shall provide to the Environmental Trustee Environmental Information and Real Property Information in accordance with Section XIII below.

15.    Prior to any conveyance of a DPH Site to the Environmental Response Trust pursuant to this Stipulation and Settlement Agreement, the Reorganized Debtors and their affiliates shall vacate such DPH Site and surrender possession of such Site to the Environmental Trustee, unless otherwise approved by the Environmental Trustee.

16.    Notwithstanding any other provision of this Stipulation and Settlement Agreement, the Reorganized Debtors shall continue, at their own expense, the operation of any ongoing environmental activities at the DPH Sites until the funds and the DPH Sites are transferred to the Environmental

16

Response Trust in accordance with this Stipulation and Settlement Agreement and the Environmental

Trust Agreement.

17.    The Environmental Trustee shall at all times seek to have the Environmental Response

Trust treated as a "qualified settlement fund" as that term is defined in Treasury Regulation Section

1.468B-1.  For purposes of complying with Section 468B(g)(2) of the Internal Revenue Code, this

Stipulation and Settlement Agreement shall constitute a consent decree between the Parties.  Approval of

the Bankruptcy Court, as a unit of the District Court, shall be sought, and the Bankruptcy Court shall retain

continuing jurisdiction over the Environmental Response Trust sufficient to satisfy the requirements of

Treasury Regulation Section 1.468B-1.  The Environmental Trustee shall not elect to have the

Environmental Response Trust treated as a grantor trust.  The Environmental Response Trust shall be

treated as a separate taxable entity.  The Environmental Trustee shall cause any taxes imposed on the

earnings of the Environmental Response Trust to be paid out of such earnings and shall comply with all

tax reporting and withholding requirements imposed on the Environmental Response Trust under

applicable tax laws.  The Environmental Trustee shall be the "administrator" of the Environmental

Response Trust pursuant to Treasury Regulation Section 1.468B-2(k)(3).

## VII. <u>ENVIRONMENTAL TRUST ACCOUNTS</u>

18.    The Environmental Trustee shall create a segregated Environmental Trust

Environmental Cost Account within the Environmental Response Trust for each of the DPH Sites,

and a separate, single Environmental Trust Administrative Account for all of the DPH Sites.  The

purpose of an Environmental Trust Environmental Cost Account shall be to provide funding for

future Environmental Actions and, with respect to some of the DPH Sites, certain future oversight

costs of one or more Environmental Agencies with respect to that DPH Site, within an approved

budget as set forth in Paragraph 23.  The purpose of the Environmental Trust Administrative

Account is to fund the payment of real estate taxes, income taxes (to the extent applicable),

17

insurance, and other Administrative Costs associated with one or more of the DPH Sites, within an approved budget as set forth in Paragraph 24.

19.    Environmental Trust Assets shall be held in trust solely for the purposes provided in this Stipulation and Settlement Agreement.  The Environmental Agencies shall be the sole beneficiaries of the Environmental Trust Accounts.  The Reorganized Debtors shall not have any rights or interest in the Environmental Trust Assets, or to any funds remaining in any of the Environmental Trust Accounts upon the completion of any and all final actions and disbursement of any and all final costs with respect to the DPH Sites.

20.    All interest, dividends and other revenue earned in an Environmental Trust Account shall be retained in the respective Environmental Trust Account and used only for the same purposes as the principal in that account as provided in this Stipulation and Settlement Agreement, subject to any reallocation approved by the Environmental Agencies in accordance with the terms of this Stipulation and Settlement Agreement.

21.    In settlement and full satisfaction of all claims asserted by the Environmental Agencies against the Reorganized Debtors with respect to any and all costs of response incurred, or to be incurred in connection with the DPH Sites, and in satisfaction of the alleged injunctive compliance, work, or other obligations covered by the covenants not to sue contained in this agreement, Reorganized Debtors shall, within two (2) business days of the Effective Date, make the following payments:

   a.    $10,425,449 to be deposited in the Environmental Trust Environmental Cost Account for the DPH Saginaw Site.

   b.    $9,148,524 to be deposited in the Environmental Trust Environmental Cost Account for the DPH Flint Sites.

18

c.    $1,191,641 to be deposited in the Environmental Trust Environmental Cost Account for the DPH Rootstown Site.

d.    $2,376,451 to be deposited in the Environmental Trust Administrative Account for the DPH Sites.

22.    Prior to the Effective Date, the Environmental Trustee shall submit to the Environmental Agencies for approval a budget for the first 120 days following the Effective Date (a "120-Day Budget") for each Environmental Trust Environmental Cost Account and for the Environmental Trust Administrative Account.  The Lead Agency shall have the authority to approve or disapprove the proposed 120-Day Budget for the relevant Environmental Trust Environmental Cost Account after consultation with the Non-Lead Agency, if such consultation is requested by the Non-Lead Agency. The 120-Day Budget for the Environmental Trust Administrative Account shall be deemed approved upon approval by each of the Environmental Agencies.  No expenses may be incurred or paid from an Environmental Trust Environmental Cost Account or the Environmental Trust Administrative Account by the Environmental Trustee that are inconsistent with an approved 120-Day Budget except as provided in Section 3.2.1, 3.2.2, and/or 3.2.4 of the Environmental Trust Agreement.

23.    Within 90 days following the Effective Date in the first year and thereafter at least 60 days before January 1 of each year following the Effective Date, the Environmental Trustee shall provide to the Lead and Non-Lead Agency for each of the DPH Sites, a statement showing the balance of each cost account and proposed budget for the coming year.  The Lead Agency shall have the authority to approve or disapprove the proposed budget for the relevant Environmental Trust Environmental Cost Account, but only after consultation with the Non-Lead Agency where the Non-Lead Agency requests such consultation.

19

24.     Within 90 days following the Effective Date in the first year and thereafter at least 60 days before January 1 of each year, the Environmental Trustee shall provide the Environmental Agencies with an annual budget for administration of the Environmental Response Trust for review and approval or disapproval.

25.     The Environmental Trustee shall pay funds from an Environmental Trust Environmental Cost Account to the Lead Agency making a written request for funds for reimbursement within 30 days following such request.  Such written request shall: (i) be in accordance with the approved budget, and (ii) shall specify what the funds were used for and shall certify that they were used only for Environmental Actions performed and/or oversight costs incurred after the Effective Date by the Lead Agency with respect to that Site.

26.     The Environmental Trustee shall also pay funds from an Environmental Trust Environmental Cost Account to the Non-Lead Agency making a written request for funds within 30 days following such request where the Lead Agency has requested the assistance of the Non-Lead Agency with respect to that Site.  Such written request shall: (i) be in accordance with the approved budget, and (ii) shall specify what the funds were used for and shall certify that they were used only for Environmental Actions performed and/or oversight costs incurred after the Effective Date by the Non-Lead Agency with respect to that Site.

27.     In the case of requests by the Lead Agency to the Environmental Trustee to use the funds from a particular Environmental Trust Environmental Cost Account to perform Environmental Actions in accordance with the approved budget, the Environmental Trustee shall utilize the funds and interest earned thereon from that Environmental Trust Environmental Cost Account to undertake such work promptly and in accordance with any schedule approved by the Lead Agency.  The Environmental Trustee shall require liability insurance as set forth in the Environmental Trust Agreement from each contractor hired to perform work.

20

28.    The Lead and Non-Lead Agency for a particular DPH Site may agree in writing at any time after the Effective Date that, based on new information about the estimated cost of Environmental Action or the assumption of liability by a buyer or other party for Environmental Action at that DPH Site, the actual funding needed for the DPH Site is less than was projected by the Lead Agency for that Site ("Excess Funding").  In such event, the United States, the State of Michigan and the State of Ohio may instruct jointly in writing that such Excess Funding be transferred to one or more of the other Environmental Trust Cost Accounts established under this Stipulation and Settlement Agreement, or to the Environmental Trust Administrative Account, if there are remaining actions to be performed and a demonstrated need for additional trust funding or, to the extent there are no such remaining actions with a demonstrated need for additional funding, to the Superfund, a clean-up fund or account in Michigan to be designated by the MDEQ, and/or the hazardous waste clean-up fund created by Ohio Revised Code 3734.28.

29.    After the Lead and Non-Lead Agencies have confirmed to the Environmental Trustee that all final actions have been completed, and all final costs have been disbursed for any Site, any funds remaining in the  Environmental Trust Environmental Cost Account for that Site shall be transferred in the following order: (i) first, in accordance with instructions provided jointly by the United States, the State of Michigan, and the State of Ohio, to other Environmental Trust Environmental Cost Accounts for one or more of the DPH Sites, if there are remaining actions to be performed and a demonstrated need for additional funding, or to the Environmental Trust Administrative Account; (ii) second, in accordance with instructions provided jointly by the United States, the State of Michigan, and the State of Ohio, to the Superfund, a clean-up fund or account in Michigan to be designated by the MDEQ, and/or the hazardous waste clean-up fund created by Ohio Revised Code 3734.28.

21

30.     Annually, beginning with the first year after the Effective Date, the Environmental

Trustee shall provide the Environmental Agencies with an update of anticipated future

Administrative Costs of the Environmental Response Trust.  At any time four (4) years after the

Effective Date, the United States, the State of Michigan and the State of Ohio may instruct in

writing after consultation with the Environmental Trustee that any conservatively projected surplus

funding in the Environmental Trust Administrative Account be transferred to one or more of the

other Environmental Trust Environmental Cost Accounts if there are remaining actions to be

performed and with a need for additional trust funding.

### VIII. <u>DAYTON VOC SITE</u>

31.     Within two (2) business days of the Effective Date, and in settlement and satisfaction of all

claims asserted by EPA against the Reorganized Debtors for the Dayton VOC Site, the Reorganized

Debtors shall pay to the United States a sum of $157,935.00 on account of allowed proof of administrative

expense claim number 19786.  Reorganized Debtors shall transfer the payment pursuant to the instructions

set forth in the following paragraph, to be deposited in the Delphi VOC Plume Site special account to

be retained and used to conduct or finance response actions at or in connection with the Dayton

VOC Site, or to be transferred by EPA to the Superfund.

Cash distributions to the United States shall be made by FedWire Electronic Funds Transfer

("EFT") to the United States Department of Justice account in accordance with current EFT procedures.

Payment shall be made in accordance with instructions provided to the Reorganized Debtors by the

Financial Litigation Unit of the United States Attorney's Office for the Southern District of New York and

shall reference Bankruptcy Case Number 05-44481 and DJ# 90-11-3-08913.  The Reorganized Debtors

shall transmit written confirmation of such payments to the United States at the addresses specified in

Paragraph 59.

32.    Any claim asserted in the Bankruptcy Cases by the State of Ohio with respect to the Dayton VOC site has been disallowed and/or withdrawn, and as of the Effective Date, Ohio shall not assert claims against DPH pertaining to the Dayton VOC Site.

33.    The Environmental Response Trust will have no ownership interest in the Dayton VOC site.

## IX. ENVIRONMENTAL RESPONSE TRUST MISCELLANEOUS PROVISIONS

34.    Except as otherwise provided in Paragraph 41, in no event shall any of the Environmental Trust Parties be held liable to any third parties for any liability, action, or inaction of any other party, including Reorganized Debtors or any other Environmental Trust Party.

35.    The Environmental Trustee shall implement any institutional controls or deed restrictions requested by the Environmental Agencies with respect to any of the DPH Sites. Additionally, the Environmental Trustee shall abide by the terms of any existing institutional controls or deed restrictions in place or of record as to any of the DPH Sites.

36.    The Environmental Response Trust is intended to be governed by the terms of this Stipulation and Settlement Agreement and the Environmental Trust Agreement and shall not be subject to any provision of the Uniform Custodial Trust Act as adopted by any state, now or in the future.

37.    The Environmental Trustee shall provide the Environmental Agencies and their representatives and contractors access to all portions of the DPH Sites that the Environmental Response Trust owns at all reasonable times for the purposes of conducting Environmental Actions at or near the DPH Sites.

38.    The United States, the State in which the relevant Site is located, or an Environmental Agency that is a designee thereof, may at any time propose in writing to take ownership of any of the DPH Sites or any part thereof.  Any such proposed transfer and the terms

23

thereof are subject to approval in writing by EPA and the State (after consultation with the

Environmental Trustee) in which the Site is located. However, neither the United States nor any

State shall be required to accept an ownership interest in remaining properties upon termination of

the Environmental Response Trust.

39.    The Environmental Trustee may, at any time, seek the approval of the Lead Agency

for the relevant Site is located for the sale or lease or other disposition of all or part of a Site. The

Lead Agency shall approve or deny the sale or lease or other disposition of all or part of a Site

following consultation with the Non-Lead Agency.

40.    Subject to the approval of the Environmental Agencies, the Environmental Trustee

may propose a sale, lease, or disposition of a Site that includes funding from, or the retention of

some portion of liability by, the respective Environmental Trust Environmental Cost Account

and/or the Environmental Trust Administrative Account, provided that the net effect of any

proposed sale, lease or disposition is to lessen the total financial obligations and liabilities as would

otherwise be incurred in the absence of any such sale, lease, or disposition.

41.    None of the Environmental Trust Parties shall be personally liable unless the

Bankruptcy Court, by a final order that is not reversed on appeal, finds that it committed fraud or

willful misconduct after the Effective Date in relation to the Environmental Trustee's duties. There

shall be an irrebuttable presumption that any action taken or not taken with the approval of the

Bankruptcy Court does not constitute an act of fraud or willful misconduct, provided that there has

been no misrepresentation to the Court. Any judgment against an Environmental Trust Party and

any costs of defense relating to any Environmental Trust Party shall be paid from and limited to

funds from the Environmental Trust Environmental Cost Account for the relevant Site only if it

relates to the Environmental Action at the Site, or the Environmental Trust Administrative Account,

without the Environmental Trust Party having to first pay from its own funds for any personal

24

liability or costs of defense unless a final order of the Bankruptcy Court, that is not reversed on appeal, determines that it committed fraud or willful misconduct in relation to the Environmental Trust Party's duties; in the event the Bankruptcy Court makes such a determination, the Environmental Trust Party shall reimburse the relevant Environmental Trust Account for all expended funds.  Nothing herein shall permit any judgment against the Environmental Trust Environmental Cost Account related to a particular Site to be paid from the Environmental Trust Environmental Cost Account for another Site.

42.     The Environmental Trust Parties are exculpated by all persons, including without limitation, holders of claims and other parties in interest, of and from any and all claims, causes of action and other assertions of liability arising out of the ownership of Environmental Trust Assets and the discharge of the powers and duties conferred upon the Environmental Response Trust and/or Environmental Trustee by this Stipulation and Settlement Agreement or any order of court entered pursuant to or in furtherance of this Stipulation and Settlement Agreement, or applicable law or otherwise.  No person, including without limitation, holders of claims and other parties in interest, will be allowed to pursue any claims or cause of action against any Environmental Trust Party for any claim against Reorganized Debtors, for making payments in accordance with this Stipulation and Settlement Agreement or any order of court, or for implementing the provisions of this Stipulation and Settlement Agreement or any order of court.  Nothing in this Paragraph or the Stipulation and Settlement Agreement shall preclude the United States and/or the States from enforcing the terms of this Stipulation and Settlement Agreement against the Environmental Trust Parties.

43.     Except as may otherwise be provided herein: (a) the Environmental Trust Parties may rely conclusively on, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document

25

believed by them to be genuine and to have been signed or presented by the proper party or parties;

(b) the Environmental Trust Parties may, on behalf of the Environmental Response Trust or on their

own behalf in their capacity as Environmental Trust Parties, consult with legal counsel, financial or

accounting advisors and other professionals and shall not be personally liable for any action taken

or not taken in accordance with the advice thereof; and (c) persons or entities dealing with the

Environmental Trust Parties shall look only to the Environmental Trust Assets that may be available

to them consistent with this Stipulation and Settlement Agreement to satisfy any liability incurred

by the Environmental Trust Parties to such person in carrying out the terms of this Stipulation and

Settlement Agreement or any order of the Bankruptcy Court, and the Environmental Trust Parties

shall have no personal obligations to satisfy any such liability other than as provided in Paragraph

41.

## X. **OUTSTANDING OBLIGATIONS**

44.     As of the Effective Date, the Environmental Response Trust shall become

beneficiary of all insurance policies applicable to past, present or future occurrences at the DPH

Sites.  Reorganized Debtors agree to take such reasonable steps as are appropriate to effectuate this

Paragraph.

45.     The Reorganized Debtors have provided the MDEQ with a letter of credit, LOC No.

63655963, pursuant to Part 111 of the NREPA, MCL 324.11101 et seq., and its implementing rules

MAC R 299.9705, to secure certain Environmental Actions at the DPH Flint East sites.  The

Director of MDEQ or his or her designee, will release the letter of credit subject to and in reliance

upon (i) the Environmental Trustee's entry into this Stipulation and Settlement Agreement

reflecting its agreement to perform the Environmental Actions for which the letter of credit was

issued, in accordance with the terms of Settlement Agreement; (ii) entry of this Settlement

Agreement by the Court; and (iii) the Reorganized Debtors fully funding the Environmental

Response Trust as required under paragraphs 7 and 21 of this Settlement Agreement.  MDEQ will return the letter of credit to the bank for termination within two business days of receiving notice that the Environmental Response Trust has been fully funded.

46.      The Reorganized Debtors have provided the United States with a letter of credit, LOC No. 63656029, pursuant to the Administrative Settlement Agreement and Order on Consent for Removal Action, Docket No. V-W-08-C-884, Dated November 1, 2007, by and among the United States and Delphi Corporation, now DPH Holdings Corp., entered into by the parties thereto in accordance with the authority of CERCLA.  The United States will release the letter of credit upon full funding of the administrative expense claim for the Dayton VOC Site as required by Paragraph 28 of this Stipulation and Settlement Agreement.

## XI.      COVENANT NOT TO SUE AND RESERVATION OF RIGHTS

47.      In consideration of all of the foregoing, including the cash payments pursuant to Paragraphs 7 and 31, the full funding of all Environmental Trust Accounts pursuant to Paragraph 21, and the covenants provided by Reorganized Debtors herein, and except as provided in Paragraphs 41 and 50-53, and upon the Reorganized Debtors' full funding of all Environmental Trust Accounts as set forth in Paragraphs 7 and 21, as well as Reorganized Debtors' full payment of the administrative expense claim for the Dayton VOC Site as set forth in Paragraph 31, the United States, on behalf of EPA, and the States covenant not to file a civil action or to take any administrative or other civil action against the Reorganized Debtors or the Environmental Trust Parties pursuant to CERCLA, 42 U.S.C. §§ 9601 *et seq.*, and RCRA, 42 U.S.C. §§ 6901 *et seq.*, or any similar state laws with respect to each of the DPH Sites and the Dayton VOC Site; with respect to the DPH Rootstown Site, the United States, on behalf of EPA, and the State of Ohio covenant not to file a civil action or to take any administrative or other civil action against the Reorganized Debtors or the Environmental Trust Parties pursuant to the Clean Air Act, 42 U.S.C. §§ 7401 *et seq.*, or any rules promulgated thereunder.

27

48.      This Stipulation and Settlement Agreement in no way impairs the scope and effect of the Reorganized Debtors' discharge under the Plan, the Plan Approval Order, or Section 1141 of the Bankruptcy Code as to any third parties or as to any Claims that are not addressed by this Stipulation and Settlement Agreement.

49.      Without in any way limiting the covenant not to sue (and the reservations thereto) set forth in Paragraph 47, and notwithstanding any other provision of this Stipulation and Settlement Agreement, such covenant not to sue shall also apply to the Reorganized Debtors' successors and assigns, officers, directors, employees, and trustees, but only to the extent that the alleged liability of the successor or assign, officer, director, employee, or trustee of any Debtor or Reorganized Debtor is based solely on its status as and in its capacity as a successor or assign, officer, director, employee, or trustee of any Debtor or Reorganized Debtor.

50.      The covenants not to sue contained in Paragraphs 47 and 49 of this Stipulation and Settlement Agreement extend only to the Reorganized Debtors and the persons described in Paragraphs 47 and 49 above and do not extend to any other person.  Nothing in this Stipulation and Settlement Agreement is intended as a covenant not to sue or a release from liability for any person or entity other than the Parties, the Environmental Trust Parties, and the persons described in Paragraph 49.  The Parties and the Environmental Trust Parties expressly reserve all claims, demands, and causes of action, either judicial or administrative, past, present, or future, in law or equity, which they may have against all other persons, firms, corporations, entities, or predecessors of the Debtors for any matter arising at or relating in any manner to the DPH Sites or claims addressed herein.

51.      The covenants not to sue and/or agreements not to sue set forth in Paragraphs 47 and 49 do not pertain to any matters other than those expressly specified therein.  The United States and the States expressly reserve, and this Stipulation and Settlement Agreement is without prejudice to, all rights against the Reorganized Debtors and the persons described in Paragraph 49 with respect to all other matters other

28

than those set forth in Paragraph 47.  The United States and the States also specifically reserve, and this

Stipulation and Settlement Agreement is without prejudice to, any action based on (i) a failure to meet a

requirement of this Stipulation and Settlement Agreement; or (ii) criminal liability.

52.    Nothing in this Stipulation and Settlement Agreement shall be deemed to limit the

authority of the United States or the States to take response action under Section 104 of CERCLA, 42

U.S.C. § 9604, or any other applicable law, regulation or rule, or to alter the applicable legal principles

governing judicial review of any action taken by the United States or the States pursuant to such authority.

Nothing in this Stipulation and Settlement Agreement shall be deemed to limit the information-gathering

authority of the United States or the States under Sections 104 and 122 of CERCLA, 42 U.S.C. §§ 9604

and 9622, or any other applicable federal or state law or regulation, or to excuse the Reorganized Debtors

or the Environmental Trustee from any disclosure or notification requirements imposed by CERCLA,

RCRA, or any other applicable federal or state law, regulation or rule.

53.    The State of Michigan, the State of Ohio, and the Environmental Agencies shall

retain the right to issue, obtain, or enforce an order against the Environmental Response Trust to

perform Environmental Action under applicable law, including an administrative order, provided

that any such order or enforcement is not inconsistent with the provisions of the Stipulation and

Settlement Agreement or the Environmental Trust Agreement.  The State of Michigan, the State of

Ohio and/or the Environmental Agencies may bring enforcement actions against the Environmental

Response Trust that are not inconsistent with the provisions of the Stipulation and Settlement

Agreement in other courts having jurisdiction, provided, however, that the Bankruptcy Court shall

have primary jurisdiction over any issues relating to (a) approval of budgets and expenditures of

budgeted funds (provided, however, that if the Environmental Trustee enters into a consent decree

or administrative order on consent, then the State of Michigan, the State of Ohio, and/or the

Environmental Agencies may enforce the expenditure of budgeted funds to comply with such

29

consent decree or administrative order on consent in other courts having jurisdiction), (b) changes to

the funding in an Environmental Trust Environmental Cost Account, (c) disputes involving the

Administrative Funding Account, or (d) the removal of the Environmental Trustee.

54.    The Reorganized Debtors and the Environmental Trustee hereby covenant not to sue and

agree not to assert or pursue any claims or causes of action against the United States, the States, MDEQ,

Ohio EPA or the Environmental Trust Parties with respect to the DPH Sites, and the Reorganized Debtors

covenant not to sue and agree not to assert claims or causes of action against the Environmental Trust

Parties, with respect to the DPH Sites, including, but not limited to, (i) any direct or indirect claim for

reimbursement from the Superfund through Sections 106(b)(2), 111, 112, or 113 of CERCLA, 42 U.S.C.

§§ 9606(b)(2), 9611, 9612, or 9613, or any other provision of law; (ii) any claim against the United States

or the States, including any department, agency, or instrumentality of the United States or the States, under

Sections 107 or 113 of CERCLA, 42 U.S.C. §§ 9607 or 9613, or any other provision of law, related to the

DPH Sites; or (iii) any claims arising out of response activities at the DPH Sites.  Such covenant not to sue

shall also apply to the United States' and the States' officers, directors, employees, trustees, successors,

and assigns.  Nothing in this Stipulation and Settlement Agreement shall be deemed to constitute

preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40

C.F.R. § 300.700(d).  Notwithstanding the foregoing, the Reorganized Debtors specifically reserve, and

the Stipulation and Settlement Agreement is without prejudice to, any action based on a failure to meet a

requirement of this Stipulation and Settlement Agreement, provided, however, that nothing in this

sentence shall be deemed to have modified Paragraph 19.

## XII.  CONTRIBUTION PROTECTION

55.    The Parties agree that, and by entering this Settlement Agreement and the Environmental

Trust Agreement, the Bankruptcy Court finds, that this settlement constitutes a judicially-approved

settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that the

30

Reorganized Debtors and the Environmental Trust Parties are entitled, as of the Effective Date, to

protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. §

9613(f)(2), or as may be otherwise provided by law, for "matters addressed" in this Stipulation and

Settlement Agreement.  Subject to the last sentence of this Paragraph, the "matters addressed" in this

Stipulation and Settlement Agreement, as that phrase is used in Section 113(f)(2) of CERCLA, 42 U.S.C.

§ 9613(f)(2), include, without limitation, claims by the United States, the States, the Environmental

Agencies, or potentially responsible parties for response costs at or in connection with each of the DPH

Sites, including claims related to releases of hazardous substances from any portion of the DPH Sites and

all areas affected by natural migration of such substances from the DPH Sites.

## XIII.  TRANSFERS OF REAL PROPERTY INFORMATION AND ENVIRONMENTAL INFORMATION

56.    Reorganized Debtors shall provide to the Environmental Trustee, at Reorganized

Debtors' expense, within 10 business days after the Effective Date, all Real Property Information

and Environmental Information in the care, custody or control of Reorganized Debtors, their

professionals, consultants and/or contractors.  The Environmental Response Trust shall become the

owner of all such Real Property Information and Environmental Information upon receipt.

57.    Reorganized Debtors make no warranty as to the completeness or accuracy of the

Environmental Information or Real Property Information provided pursuant to this Section.

58.    The United States and the States reserve, and this Stipulation and Settlement

Agreement is without prejudice to, all rights to obtain information regarding the DPH Sites from

Reorganized Debtors pursuant to their information-gathering authority under Sections 104 and 122

of CERCLA, 42 U.S.C. §§ 9604 and 9622, or any other applicable laws.

## XIV.  NOTICES AND SUBMISSIONS

59.    Whenever, under the terms of this Stipulation and Settlement Agreement, written notice is

required to be given, or a report or other document is required to be sent by one Party to another, it shall be

directed to the individuals at the addresses specified below via U.S. certified mail, return receipt requested,

unless those individuals or their successors give notice of a change of address to the other Parties in

writing. All notices and submissions shall be considered effective upon receipt, unless otherwise

provided. Except as otherwise provided in this Stipulation and Settlement Agreement, written notice as

specified herein shall constitute complete satisfaction of any written notice requirement in the Stipulation

and Settlement Agreement with respect to the Parties.

As to the United States:

Cristine Irvin Phillips
Assistant United States Attorney
Office of the United States Attorney
for the Southern District of New York
86 Chambers Street, Third Floor
New York, NY 10007
Telephone: (212) 637-2696
Facsimile: (212) 637-2702
E-mail: cristine.phillips@usdoj.gov

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Telephone: (202) 514-5271
Facsimile: (202) 514-4180
File Ref. No. 90-11-3-09688

As to EPA:

Craig Kaufman
Attorney-Advisor
United States Environmental Protection Agency
Office of Site Remediation Enforcement, Regional Support Division
1200 Pennsylvania Avenue, NW (Mail Code 2272A)
Washington, D.C. 20460
Telephone: (202) 564-4284
E-mail: Kaufman.Craig@epa.gov

Cathleen R. Martwick
Associate Regional Counsel
United States Environmental Protection Agency, Region 5
Office of Regional Counsel (C-14J)

77 West Jackson Blvd.
Chicago, IL 60604
Telephone: (312) 886-7166
martwick.cathleen@epa.gov

Donald A. Heller
Corrective Action Project Manager
United States Environmental Protection Agency, Region 5
Remediation and Reuse Branch (LU-9J)
77 West Jackson Boulevard
Chicago, IL  60604
(312) 353-1248
heller.donald@epa.gov

As to the State of Michigan:

Celeste R. Gill
Assistant Attorney General
Environment, Natural Resources and Agriculture Division
P.O. Box 30755
Lansing, MI 48909
Telephone: (517) 373-7540
Fax: (517) 373-1610
Email: GillC1@michigan.gov

As to MDEQ:

Delores Montgomery
Chief Hazardous Waste Section
Office of Waste Management and Radiological Protection
Michigan Department of Environmental Quality
P.O. Box 30241
Lansing, MI 48909-7741
Telephone: (517) 284-6565
Fax: (517) 373-4051
Email: montgomeryd1@michigan.gov

Leonard Lipinski
Bankruptcy Specialist
Compliance and Enforcement Section
Remediation and Redevelopment Division
Michigan Department of Environmental Quality
P.O. Box 30246
Lansing, MI 48909-7926
Telephone: (517) 284-5128
Fax: (517) 241-9581
Email: lipinskil@michigan.gov

As to the State of Ohio:

Timothy J. Kern
Principal Assistant Attorney General
Environmental Enforcement Section
Ohio Attorney General Michael DeWine
30 E. Broad St., 25th Floor
Columbus, Ohio 43215
Telephone: (614) 466-5261
Fax: (614) 644-9684
Email: Timothy.Kern@OhioAttorneyGeneral.gov

As to Ohio EPA:

Bruce Weinberg
Manager Compliance and Enforcement Section
Ohio Environmental Protection Agency
Division of Air Pollution Control, Central Office
50 West Town Street, Suite 700
Columbus, Ohio 43215
Telephone: (614) 644-3752
Email: bruce.weinberg@epa.ohio.gov

As to the Reorganized Debtors:

John Brooks
President
DPH Holdings Corp.
World Headquarters
M/C 483-400-530
5725 Delphi Drive
Troy, MI 48098
Telephone: (248) 813-2143
Fax: (248) 813-1406
Email: john.brooks@delphi.com

As to the Environmental Trustee:

Jay A. Steinberg, not individually, but solely as President
Le Petomane XXVIII, Inc., not individually, but solely as Trustee
35 East Wacker Drive, Suite 1550
Chicago, IL  60601
Telephone: (312) 505-2688
Email: bankruptcytrustee-receiver@lepetomaneinctrustee.com

Tanya C. O'Neill
Foley & Lardner LLP
777 E. Wisconsin Ave.

Milwaukee, WI 53202
Telephone: (414) 297-5836
Email: toneill@foley.com

## XV. JUDICIAL APPROVAL AND OPPORTUNITY FOR PUBLIC COMMENT

60.     This Stipulation and Settlement Agreement shall be lodged with the Bankruptcy Court and

shall thereafter be subject to a period of 15 days of public comment following publication of notice of the

Stipulation and Settlement Agreement in the Federal Register.

61.     After the conclusion of the public comment period, the United States will file with the

Bankruptcy Court any comments received, as well as the United States' responses to the comments, and at

that time, if appropriate, the United States will request approval of the Stipulation and Settlement

Agreement under applicable environmental laws.  The United States reserves the right to withdraw or

withhold its consent if the comments regarding the Stipulation and Settlement Agreement disclose facts or

considerations which indicate that the Stipulation and Settlement Agreement is not in the public interest.

62.     If for any reason (i) the Stipulation and Settlement Agreement is withdrawn by the United

States as provided in Paragraph 61; (ii) the Stipulation and Settlement Agreement is not approved, (iii) the

Environmental Trust Agreement is not approved; or (iv) the Bankruptcy Cases are dismissed or

converted to  cases under Chapter 7 of the Bankruptcy Code:  (a) this Stipulation and Settlement

Agreement shall be null and void and the Parties and Environmental Trustee shall not be bound hereunder

or under any documents executed in connection herewith; (b) the Parties and Environmental Trustee shall

have no liability to one another arising out of or in connection with this Stipulation and Settlement

Agreement or under any documents executed in connection herewith; and (c) this Stipulation and

Settlement Agreement and any documents prepared in connection herewith shall have no residual or

probative effect or value.

## XVI.  EFFECTIVE DATE

63.    Following the 15 day public comment process following notice published in the

Federal Register and providing for public comment, the date this Stipulation and Settlement

Agreement is approved by the Bankruptcy Court shall be the "Effective Date."

## XVII.  AMENDMENTS/INTEGRATION AND COUNTERPARTS

64.    This Stipulation and Settlement Agreement and any other documents to be executed in

connection herewith or referred to herein shall constitute the sole and complete agreement of the Parties

and Environmental Trustee hereto with respect to the matters addressed herein.  This Stipulation and

Settlement Agreement may not be amended except by a writing signed by all Parties and the

Environmental Trustee.

65.    Each undersigned representative of a Party or Environmental Trustee certifies that he or

she is fully authorized to execute this Stipulation and Settlement Agreement on behalf of such Party and

Environmental Trustee and bind it legally to the terms and provisions herein.

66.    This Stipulation and Settlement Agreement may be executed in counterparts, each of

which shall constitute an original, and all of which shall constitute one and the same agreement.

## XVIII. RETENTION OF JURISDICTION

67.    The Bankruptcy Court (or, upon withdrawal of the Bankruptcy Court's reference, the

United States District Court of the Southern District of New York) shall retain jurisdiction over the subject

matter of this Stipulation and Settlement Agreement and the Parties and Environmental Trustee for the

duration of the performance of the terms and provisions of this Stipulation and Settlement Agreement for

the purpose of enabling any of the Parties and Environmental Trustee to apply to the Bankruptcy Court at

any time for such further order, direction, and relief as may be necessary or appropriate for the

construction or interpretation of this Stipulation and Settlement Agreement or to effectuate or enforce

compliance with its terms.

So Ordered in White Plains, New York, this 9th day of December, 2013

/s/Robert D. Drain
HON. ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

THE UNDERSIGNED PARTIES ENTER INTO THIS STIPULATION AND SETTLEMENT AGREEMENT:

FOR THE UNITED STATES OF AMERICA:

PREET BHARARA
United States Attorney

Date:    11/8/13                By:   /s/Cristine Irvin Phillips
CRISTINE IRVIN PHILLIPS
Assistant United States Attorney
Office of the United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, NY 10007

Date:   11/7/13                By:   /s/Robert G. Dreher
ROBERT G. DREHER
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

Date:   11/8/13                By:   /s/Alan S. Tenenbaum
ALAN S. TENENBAUM
Senior Bankruptcy Counsel
ROBERT DARNELL
Trial Attorney
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044

37

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

Date:    11/8/13            By:    /s/Robert A. Kaplan
                                   ROBERT A. KAPLAN
                                   Regional Counsel
                                   U.S. Environmental Protection Agency
                                   Region 5

Date:    11/8/13            By:    /s/Richard Karl
                                   RICHARD KARL
                                   Director
                                   Superfund Division
                                   U.S. Environmental Protection Agency
                                   Region 5

FOR THE STATE OF MICHIGAN ON BEHALF OF THE MICHIGAN DEPARTMENT OF ENVIRONMENTAL QUALITY:

Date:    11/7/13                                              _/s/Celeste R. Gill                                          
                                                             Bill Schuette
                                                             Attorney General

                                                             Celeste R. Gill (P52484)
                                                             Assistant Attorney General
                                                             Environment, Natural Resources and
                                                             Agriculture Division
                                                             6th Floor, G. Mennen Williams Building
                                                             525 West Ottawa Street
                                                             P.O. Box 30755
                                                             Lansing, MI  48909
                                                             Tel.: (517) 373-7540
                                                             Fax: (517) 373-1610
                                                             gillc1@michigan.gov
                                                             Attorneys for the Michigan Department
                                                             of Environmental Quality

FOR THE STATE OF OHIO:


Date:  11/8/13            By:    /s/Timothy J. Kern
                                 Timothy J. Kern
                                 Principal Assistant Attorney General
                                 Environmental Enforcement Section
                                 Ohio Attorney General Michael DeWine
                                 30 E. Broad St., 25th Floor
                                 Columbus, Ohio 43215
                                 Telephone: (614) 466-5261
                                 Fax: (614) 644-9684
                                 Email: Timothy.Kern@OhioAttorneyGeneral.gov

FOR THE REORGANIZED DEBTORS:


Date:   11/6/13                    By:   / s/John Brooks
                                         John Brooks
                                         President
                                         DPH Holdings Corp., et al.,
                                         World Headquarters
                                         M/C 483-400-530
                                         5725 Delphi Drive
                                         Troy, MI 48098


Date:   11/7/13                    By:   /s/Kevin Holewinski
                                         Kevin Holewinski
                                         Daniella Einik
                                         JONES DAY
                                         Attorneys for DPH Holdings Corp., et al.,
                                         Reorganized Debtors
                                         51 Louisiana Ave., N.W.
                                         Washington, D.C. 20001-2113


Date:   11/7/13                    By:   /s/John Wm. Butler, Jr.
                                         John Wm. Butler, Jr
                                         John K. Lyons
                                         Ron E. Meisler
                                         SKADDEN, ARPS, SLATE, MEAGHER  & FLOM LLP
                                         Attorneys for DPH Holdings Corp., et al.,
                                         Reorganized Debtors
                                         155 North Wacker Drive
                                         Chicago, Illinois 60606

                                         - and -

                                         Four Times Square
                                         New York, New York 10036

FOR THE ENVIRONMENTAL TRUSTEE:

The DPH Environmental Trustee by and through Le Petomane XXVIII, Inc., not individually but solely in the representative capacity as Environmental Trustee of the DPH Environmental Response Trust

Date:  11/7/13          By:     /s/Jay A. Steinberg, not individually, but solely as President
                                JAY A. STEINBERG
                                not individually, but solely in the representative capacity as
                                President of the Environmental Trustee of the DPH
                                Environmental Response Trust

Exhibit A                    Environmental Trust Agreement