BUTZEL LONG, a professional corporation
150 West Jefferson, Suite 100
Detroit, MI 48226
(313) 225-7000
Thomas B. Radom
Bruce L. Sendek
David J. DeVine
*Attorneys for Reorganized Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| DPH HOLDINGS CORP., *et al.,* | Case No. 05-44481 (RDD) |
| | Jointly Administered |
| Reorganized Debtors. | |

### REORGANIZED DEBTORS' AND OTHER DPH PARTIES' RESPONSE TO JAMES SUMPTER'S EXPEDITED MOTION FOR STAY PENDING APPEAL

DPH Holdings Corp. ("DPH") and certain of its affiliated reorganized debtors in the above-captioned cases (together with DPH, the "Reorganized Debtors"), on behalf of themselves and all other defendants in Case No. 1:13-cv-1024 WTL-TAB pending in the United States District Court for the Southern District of Indiana (collectively with the Reorganized Debtors, the "DPH Parties"), hereby submit this Response to James Sumpter's Expedited Motion for Stay Pending Appeal (the "Response"). In support of the Response, the DPH Parties hereby state as follows:

### INTRODUCTION

1. In its November 4, 2013 Order Enjoining Sumpter Indiana Action (the "Order") (Docket No. 22210),[1] this Court directed Mr. Sumpter to dismiss his Indiana Action with prejudice. Mr. Sumpter ignored the Court's directive for nearly a month, and on December 1, he

---

[1] Capitalized but undefined terms in this Response have the meanings ascribed to them in the Order.

1

filed an Expedited Motion for Stay Pending Appeal with this Court (the "Stay Motion"), claiming he will suffer irreparable injury in the form of lost appellate remedies if he dismisses his Indiana Action with prejudice before the conclusion of his appeal. Mr. Sumpter's position is unavailing.

2. First, Mr. Sumpter grossly overstates the nature of his interests in this case. Indeed, under relevant case law, Mr. Sumpter's claims of error on appeal are <u>not</u> sufficiently significant to support a claim of irreparable injury, and in any event, Mr. Sumpter has little if any chance of prevailing on appeal.

3. Mr. Sumpter also fails to recognize the significant harm a stay would create for the DPH Parties and other stakeholders in the Reorganized Debtors' bankruptcy. Absent a dismissal of the Indiana Action, Mr. Sumpter will presumably try to press forward with his case during the pendency of his appeal. Such needless litigation would create significant costs for the Reorganized Debtors, and it would also complicate the Reorganized Debtors' case closing and dissolution efforts. Among other things, the Reorganized Debtors would be forced to reevaluate their litigation reserves, and they would potentially also face new disputes over which bankruptcy stakeholders would need to make supplemental contributions to the reserves. The DPH Parties would have no redress for any of these injuries because Mr. Sumpter's Stay Motion makes no reference to his intention or capacity to post a bond, meaning he apparently seeks to avoid providing security for the costs and delays resulting from his ineffectual appeal. For all of these reasons, Mr. Sumpter's Stay Motion should be denied.

**ARGUMENT**

**I. The Standards for Stay Motions Under Fed. R. Bankr. P. 8005**

4.     Pursuant to Fed. R. Bankr. P. 8005, "[a] motion for a stay of the judgment, order, or decree of a bankruptcy judgment, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge . . . ." The bankruptcy judge, in turn, "may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest." *Id.*  In exercising this authority, courts look to four factors when deciding a stay motion: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected." *ACC Bondholder Group v. Adelphia Communs. Corp. (In re Adelphi Communs. Corp.)*, 361 B.R. 337, 346 (S.D.N.Y. 2007) ("*Adelphia II*") (internal quotation marks and citations omitted).[2]

5.     Additionally, to "determin[e] whether a bond should be ordered, the court looks to whether the bond would be necessary to protect against diminution in the value of property pending appeal and to secure the prevailing party against any loss that might be sustained as a result of an ineffectual appeal. Moreover, the posting of a bond guarantees the costs of delay incident to the appeal." *Adelphia II*, 361 B.R. at 350 (internal citations and quotation marks omitted). Ultimately, the decision whether to grant a stay pending appeal is discretionary (s*ee*

---

[2] As the *Adelphia II* Court noted, the rule among lower courts in the Second Circuit is not uniform as to whether these four factors should be balanced or treated as a single conjunctive test, such that "the failure of the movant to satisfy any one of the four factors on a motion for a stay pending appeal of a bankruptcy order dooms the motion." *Id.* at 346-47.  The *Adelphia II* Court ultimately followed the balancing approach, but here, it is immaterial which approach the Court follows, as none of the four factors favors Mr. Sumpter.

3

*id.*), and "[t]he burden on the movant is a 'heavy' one." *In re DJK Residential, LLC*, 2008 U.S. Dist. LEXIS 19801 (S.D.N.Y, Mar. 7, 2008) (citing *In re Adelphia Communs. Corp.*, 333 B.R. 649, 659 (S.D.N.Y. 2005) ("*Adelphia I*")).

6.  Here, Mr. Sumpter cannot meet his "heavy" burden. As set forth below, none of the four governing factors warrants a stay, and Mr. Sumpter has not demonstrated any willingness or ability to post a bond securing the DPH Parties against their losses as a result of his ineffectual appeal.

**II.  Application of the Four Stay Factors to Mr. Sumpter's Stay Motion**

   *A. Mr. Sumpter Will Not Suffer Irreparable Injury Absent a Stay.*

7.  Mr. Sumpter claims he will suffer irreparable injury absent a stay because he will be forced to dismiss his Indiana action with prejudice before the conclusion of his appeal. In support of his argument, Mr. Sumpter cites *Adelphia II*, where the court stated that the "[l]oss of appellate rights is a quintessential form of prejudice. Thus, where the denial of a stay pending appeal risks mooting *any* appeal of *significant* claims of error, the irreparable harm requirement of Fed. R. Bankr. P. 8005 is satisfied." *Adelphia II*, 361 B.R. at 348 (emphasis in original). Ultimately, Mr. Sumpter's reliance on *Adelphia II* is misplaced.

8.  First, the holding in *Adelphia II* is narrower than Mr. Sumpter suggests. As the court in *In re DJK Residential,* LLC observed, "although 'several courts including ones within this Circuit, have held to the contrary,' [a] 'majority of courts have held that a risk of mootness, standing alone, does not constitute irreparable harm.'" 2008 U.S. Dist. LEXIS 19801, *9 (S.D.N.Y., Mar. 7, 2008) (quoting *Adelphia II*, 361 B.R. at 347 (footnotes omitted)). Further, even when the rule in *Adelphia II* does apply, not *every* threat to a movant's appellate rights constitutes "irreparable injury." Rather, the movant's appeal must involve "*significant* claims of

4

error," such as "the 'troubling' failure by the proponents of the confirmation plan to comply with a central order of the Bankruptcy Court and the Bankruptcy Court's failure to enforce that order." *Id.* at *10 (citing *Adelphia II*, 361 B.R. at 356)).  Thus, where the movant's appeal "merely [involves] an argument that the Bankruptcy Court was wrong on the merits of [its] decisions[,] . . . there is no reason why the majority view that the risk of mootness does not constitute irreparable harm should not apply . . . ." *Id.*

9.    In light of these realities, even if Mr. Sumpter is correct that the immediate enforcement of the Order will impair his appellate rights, he cannot demonstrate "irreparable injury" for purposes of his Stay Motion.  As Mr. Sumpter's statement of issues on appeal makes clear, Mr. Sumpter has not raised any "significant" claims of error in his appeal, let alone any claims of error based on "troubling" defects in the central orders to the Modified Plan.  *See* Appellants' [sic] Statement of Issues and Designation of Record on Appeal (Docket No. 22224); *see also Adelphia II*, *supra*.  To the contrary, Mr. Sumpter's fundamental position is that "the Bankruptcy Court was wrong on the merits of [its] decisions" regarding the extent of its jurisdiction and the scope and effect of certain earlier orders in the bankruptcy case.  *See In re DJK Residential, supra*; *see also* Appellants' [sic] Statement of Issues and Designation of Record on Appeal (Docket No. 22224).  Under *In re DJK Residential*, such arguments do not support a claim of "irreparable injury," and they certainly do not warrant a stay where, as here, the District Court is all but certain to affirm the Order.  *See infra* Section II(C).    Accordingly, Mr. Sumpter will not suffer irreparable harm absent a stay.

### B.  A Stay Would Likely Cause the DPH Parties Substantial Harm.

10.    The Court should also deny the Stay Motion based on the substantial harm a stay would inflict on the DPH Parties.  First, a stay would empower Mr. Sumpter to continue

5

prosecuting his Indiana Action during the pendency of his appeal.  Mr. Sumpter downplays this fact by asserting that "all actions in the Indiana complaint are stayed" (Stay Motion ¶ 7), but in fact, that is *not* the case.  The Indiana Court merely entered an order adjourning an October pretrial conference to "a later date" based on "unresolved issues in the bankruptcy matter [*i.e.*, the Sumpter Injunction Motion II, which has now been resolved] and a *Motion to Dismiss Complaint* . . . ."  (**Exhibit A,** Indiana District Court's October 25, 2013 Order Vacating Initial Pre-Trial Conference).  Thus, the Indiana Court has not issued a formal, open-ended stay.

11. Accordingly, should the Indiana Action move forward at the insistence of either Mr. Sumpter or the Indiana Court, the DPH Parties will incur needless legal expenses, and their imminent case-closing and dissolution plans will also be frustrated, particularly to the extent that the ongoing litigation forces the Reorganized Debtors to reassess (and potentially supplement) their post-dissolution litigation reserves.  A stay of the Order would also be harmful to the various individual defendants in Mr. Sumpter's Indiana Action.  Mr. Sumpter's allegations against those individuals are scurrilous, and consequently, these individual defendants risk increased reputational and professional harm the longer Mr. Sumpter's action continues.  The Court should avoid all of these risks by denying the Stay Motion.

### C. *Mr. Sumpter Cannot Demonstrate a Substantial Possibility of Success on Appeal.*

12. The third factor of the stay analysis is whether Mr. Sumpter has a "substantial possibility" of success on appeal.  This factor weighs entirely in favor of the DPH Parties.  Beyond simply restating his arguments in his earlier filings in opposition to the Sumpter Injunction Motion II, Mr. Sumpter fails to identify any ways in which the Order is erroneous, and he fails altogether to establish a "substantial possibility" of success on appeal.  The reason,

of course, is that there is no serious basis for reversing the Order, as the Order is the product of an especially robust and thoughtful analysis by the Court.

13. Before issuing the Order, the Court considered <u>five</u> substantive briefs from the parties regarding the Sumpter Injunction Motion II (Docket No. 22138) (including two supplemental briefs requested by the Court); it held <u>two</u> separate hearings on the motion, including an evidentiary hearing addressing Mr. Sumpter's vesting arguments; and it ultimately considered nearly <u>60</u> other filings from the docket (including numerous motions, responses, hearing transcripts, and orders). Moreover, the Court's ultimate conclusions in the Order were equally sound, being justified on multiple independent grounds, including Sections 11.2 and 11.14 of the Modified Plan, Paragraph 20 of the Plan Modification Order, and the permanent injunction set forth in Paragraph 22 of the Plan Modification Order. Given the Court's cautious and well-reasoned approach, Mr. Sumpter's appeal is overwhelmingly likely to fail, and his Stay Motion should be denied on that ground.

### D. The Stay Motion Does Not Advance the Public Interest.

14. Mr. Sumpter's arguments about the public's supposed interest in a stay are also unavailing. According to Mr. Sumpter, a stay in this case will advance the public interest by "facilitat[ing] the Movant's appeal," which will "illuminate[] our democracy and confirm[] that due process is available to all citizens." Stay Motion ¶ 17. This is simply not the case. Fundamentally, Mr. Sumpter's Stay Motion and appeal seek only to preserve Mr. Sumpter's Indiana Action, which seeks monetary relief for himself and no one else. Accordingly, a stay of the Order would do nothing to benefit the public interest; to the contrary, it would *harm* it.

15. The Reorganized Debtors are now in the final process of closing their cases and dissolving, and their success in timely achieving those goals turns largely on their success in

7

resolving the disputes against them. Given the soundness of the Court's Order and the virtual certainty that the District Court will affirm it on appeal, Mr. Sumpter's three-front litigation (*i.e.*, the Indiana Action, plus each of Mr. Sumpter's two appeals of this Court's orders requiring him to dismiss his Indiana actions) serves only to frustrate the case-closing and wind-down process at the expense of both the DPH Parties *and their stakeholders*. For these reasons, the Court should deny Mr. Sumpter's Stay Motion based on the public interest factor as well.

**III.    A Stay Is Also Inappropriate Absent a Bond From Mr. Sumpter.**

16.    Not only is a stay of the Order inappropriate under the four factors above, but it is also inappropriate in light of Mr. Sumpter's apparent unwillingness or inability to post a bond. *See* Fed. R. Bankr. P. 8005 (empowering Court to "make any [] appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest."); *see also Adelphia II*, 361 B.R. 337, 350 (S.D.N.Y. 2007) (ordering of a bond is proper where it "would be necessary to protect against diminution in the value of property pending appeal and to secure the prevailing party against any loss that might be sustained as a result of an ineffectual appeal. Moreover, the posting of a bond guarantees the costs of delay incident to the appeal." (internal citations and quotation marks omitted)).

17.    Here, if the Court were to grant the Stay Motion, Mr. Sumpter could seek to continue litigating his Indiana Action during his appeal. In that event, without a bond, the DPH Parties would incur significant expenses without recourse, including (a) ongoing defense costs; (b) potential additional litigation reserve funding obligations; and/or (c) potential attorneys' fees and costs arising from disputes over which bankruptcy stakeholders are responsible for supplementing the Reorganized Debtors' litigation reserves. Mr. Sumpter alone should be responsible for these expenses because Mr. Sumpter alone would choose whether to push

8

forward with his Indiana litigation during his appeal. Thus, in the event of a stay, a bond would be imperative to protect the DPH Parties because (a) it would discourage Mr. Sumpter from pressing forward with the Indiana Action before the disposition of his appeal (thus making it less likely that the DPH Parties would incur needless costs in the first place), and (b) it would afford the DPH Parties a remedy in the event the Indiana Action does unnecessarily move forward.

## **CONCLUSION**

18. For the above reasons, a stay of the Court's November 4, 2013 Order is not warranted under any of the four governing factors, and Mr. Sumpter's Stay Motion should be denied. Alternatively, should the Court grant Mr. Sumpter's Stay Motion, the Court should require Mr. Sumpter to post a bond to protect the DPH Parties' against the costs they will incur as a result of the stay.

Dated:   Detroit, Michigan
         December 10, 2013

                                            BUTZEL LONG, a professional corporation

                                            By:   /s/ David J. DeVine
                                                  Thomas B. Radom
                                                  Bruce L. Sendek
                                                  David J. DeVine
                                            150 West Jefferson, Suite 100
                                            Detroit, Michigan  48226
                                            (313) 225-7000
                                            *Attorneys for Reorganized Debtors*

1442853