SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Albert L. Hogan III
Ron E. Meisler

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., et al.,
    Reorganized Debtors

DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x
                                                              :
        In re                                                 :    Chapter 11
                                                              :
DPH HOLDINGS CORP., et al.,                                   :    Case No. 05-44481 (RDD)
                                                              :
                                                              :    (Jointly Administered)
                Reorganized Debtors.                          :
                                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

REORGANIZED DEBTORS' CASE CLOSING STATUS REPORT

In accordance with paragraph 6 of the Order Pursuant to 11 U.S.C. §§ 105, 350(a), and 1142, Fed R. Bankr. P. 3022, and Local Bankr. R. 3022-1 Concerning Closing the Bankruptcy Cases and Providing Related Relief, the Reorganized Debtors[1] submit this case closing status report (the "Case Closing Status Report").[2]

## BACKGROUND

**The Chapter 11 Cases**

1.     On October 8 and 14, 2005, (the "Petition Dates"), the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York. This Court ordered joint administration of the Debtors' chapter 11 cases (the "Chapter 11 Cases").

2.     On December 10, 2007, the Debtors filed their first amended joint plan of reorganization (Docket No. 11386) (the "Plan") and related disclosure statement (Docket No. 11388).  On January 25, 2008, the Court entered an order (Docket No. 12359) (the "Confirmation Order") confirming the Plan (as modified) (the "Confirmed Plan"), and the Confirmation Order became final on February 4, 2008.

3.     On October 3, 2008, the Debtors filed a motion under 11 U.S.C. § 1127 for an order approving (i) certain modifications to the Confirmed Plan and related disclosure statement and (ii) related procedures for re-soliciting votes on the Confirmed Plan, as modified (Docket No. 14310) (the "Plan Modification Motion"). On June 1, 2009, the Debtors filed a

---

[1]     All capitalized terms not otherwise defined herein have the meaning ascribed to them in the Motion (as defined below).

[2]     The case closing report required pursuant to Local Bankruptcy Rule 3022-1 was previously filed on October 21, 2009, at Docket No. 18994 and is attached as Exhibit A hereto.

supplement to the Plan Modification Motion, which sought approval of (i) certain modifications

to the Confirmed Plan (the "Modified Plan"), (ii) supplemental disclosure, and (iii) procedures

for re-soliciting votes on the Modified Plan. This Court entered an order approving the Modified

Plan (Docket No. 18707) on July 30, 2009, which became final on August 9, 2009. On October 6,

2009 (the "Effective Date"), the Debtors substantially consummated the Modified Plan.

        4.      On the Effective Date, the Debtors also closed the transactions under the

Master Disposition Agreement, dated as of July 30, 2009, by and among Delphi, GM

Components Holdings, LLC, General Motors Company, Motors Liquidation Company (f/k/a

General Motors Corporation), DIP Holdco 3, LLC (which assigned its rights to what is now New

Delphi), and the other sellers and buyers party thereto (as amended, modified, and supplemented,

the "MDA").

**DPH Holdings**

        5.      On the Effective Date, the Debtors emerged from chapter 11 as DPH

Holdings Corporation ("DPH Holdings"), a Delaware corporation, and its reorganized affiliates.

In addition to providing transition services to GM and New Delphi after the closing of the MDA,

DPH Holdings was charged with the purpose of winding down the Debtors' remaining assets and

affairs, including (i) the disposition of assets not transferred to New Delphi or GM under the

MDA, (ii) the resolution of prepetition and administrative expense claims, and (iii) the

prosecution of avoidance actions. John C. Brooks is the President of DPH Holdings. Mr. Brooks

has served as DPH Holdings' only authorized representative since the Effective Date and has

overseen the wind down of its affairs. Mr. Brooks will continue to be the authorized

representative of DPH Holdings in connection with its dissolution and wind-up under Delaware

law and will be compensated for such services with an annual salary of $100,000, plus 6% of

certain proceeds recovered by DPH Holdings and paid over to GM.

**Case Closing**

      6.     On July 3, 2013, the Reorganized Debtors filed the Motion for Final

Decree and Order Pursuant to 11 U.S.C. §§ 105, 350(a), and 1142, Fed R. Bankr. P. 3022, and

Local Bankr. R. 3022-1 Closing the Bankruptcy Cases and Providing Related Relief (Docket No.

22073) (the "Motion"). The Motion provided a blueprint for the final months of the Chapter 11

Cases so that final decrees could be entered by December 2013, which coincides with the

termination of GM's obligation, pursuant to section 3.1.1.E the MDA, to fund the Reorganized

liquidation and wind-down costs of the Reorganized Debtors up to an aggregate of amount of

$50 million (based on an agreement reached with GM, the outstanding balance owed by the

Reorganized Debtors under the GM Wind Down Facility will be approximately one-third of the

maximum available amount). Pursuant to the Motion, the Reorganized Debtors sought, among

other things, authority to close the Chapter 11 Cases upon the completion of certain

administrative tasks.

      7.     On August 6, 2013, this Court entered the Order Pursuant to 11 U.S.C. §§

105, 350(a), and 1142, Fed R. Bankr. P. 3022, and Local Bankr. R. 3022-1 Concerning Closing

the Bankruptcy Cases and Providing Related Relief (Docket No. 22121) (the "Case Closing

Order"). Pursuant to the Case Closing Order, the Court, among other things, scheduled the

Closing Status Hearing for December 18, 2013, at which time the Reorganized Debtors are to

report on the status of outstanding tasks to be performed prior to entry of the final decree.

Pursuant to paragraph 6 of the Case Closing Order, the Reorganized Debtors are required to

prepare and file this Case Closing Status Report at least five days prior to the Closing Status

Hearing detailing the status of tasks outlined in the Case Closing Order.

8.      Pursuant to paragraphs F and G of the Case Closing Order, the Debtors'
estates shall be fully administered within the meaning of 11 U.S.C. § 350 and the Plan
Implementation Parties shall have substantially fulfilled their obligations under the Modified
Plan upon resolution (and provision for distribution in respect thereof) of the Remaining Claims
and the Remaining Adversary Proceedings. As set forth below, those tasks – along with other
administrative actions described in the Motion – have been completed. Accordingly, at the
conclusion of the Closing Status Hearing, the Reorganized Debtors respectfully request that this
Court enter a final decree in each of the remaining Chapter 11 Cases[3] substantially in the form of
the final decree attached hereto as Exhibit B and grant such further and other relief this Court
deems just and proper.

## CASE CLOSING STATUS REPORT

**A.      Resolution of the Remaining Claims and the Establishment of the Environmental
Response Trust**

9.      As outlined in the Motion, of the more than 20,000 proofs of claim and
proofs of administrative expense claim that were filed against the Debtors in the Chapter 11
Cases, only eighteen claims – the Remaining Claims[4] – remained unresolved as of the filing of
the Motion. Since the entry of the Case Closing Order, the Reorganized Debtors have worked
diligently with claimants to consensually resolve all of the Remaining Claims, including
workers' compensation claims, ACE insurance claims, and environmental claims, as detailed
below.

---

[3]     The remaining cases in which the Reorganized Debtors request the entry of a final decree are: (1) DPH
        Holdings, Inc. (Case No. 05-44481), (2) Delphi Medical Systems Colorado Corporation (Case No. 05-44507),
        (3) Delphi Medical Systems Texas Corporation (Case No. 05-44511), (4) Delphi Mechatronic Systems, Inc.
        (Case No. 05-44567), and (5) Delphi Automotive Systems (Case No. 05-44640) (the "Remaining Cases").

[4]     Administrative Expense Claim No. 19786, asserted by the U.S. Department of Environmental Protection, was
        not listed in the Motion as a Remaining Claim.

      (a)    **Workers' Compensation Claims.**

      i.    Administrative Expense Claim No. 19281, asserted by the Michigan Self-Insurers' Security Fund (No. 19281), was allowed in full and final satisfaction of the claim, pursuant to the Joint Stipulation and Agreed Order Between Reorganized Debtors and Michigan Self-Insurers' Security Fund Compromising and Allowing Proof of Administrative Expense Claim Number 19281 (Docket No. 22153), entered September 18, 2013. The Reorganized Debtors have paid all amounts due under the stipulation.

      ii.    Administrative Expense Claim No. 19571, asserted by the Mississippi Workers' Compensation Individual Self-Insurer Guaranty Association, on behalf of Joe N. Swan, was allowed in full and final satisfaction of the claim pursuant to the Joint Stipulation and Agreed Order Between Reorganized Debtors and Mississippi Workers' Compensation Individual Self-Insurer Guaranty Association on Behalf of itself and Joe N. Swan Allowing Proof of Administrative Expense Claim Number 19571 and Resolving Disputes (Joe N. Swan) (Docket No. 22219), entered November 13, 2013. The Reorganized Debtors have paid all amounts due under the stipulation.

      iii.    Administrative Expense Claim Nos. 18602 and 19712, asserted by the New Jersey Self-Insurers' Guaranty Association, were each disallowed and expunged pursuant to the Joint Stipulation and Agreed Order Between Reorganized Debtors and New Jersey Self-Insurers' Guaranty Association Disallowing and Expunging Proofs of Administrative Expense Claim Numbers 18602 and 19712 (Docket No. 22180), entered October 11, 2013.

      (b)    **ACE Insurance Claims.**

      The ACE Insurance Claims (as defined in the Motion), which include Claim Nos. 13018, 13080, 13309 and Administrative Expense Claim Nos. 18900, 19192, 19270, 19633, 19671, 19715 and 19716, asserted by ACE American Insurance Company and two of its affiliates, Pacific Employers Insurance Company and Illinois Union Insurance Company, were resolved pursuant to the Joint Stipulation and Agreed Order Between Reorganized Debtors and ACE American Insurance Company, Pacific Employers Insurance Company, and Illinois Union Insurance Company Disallowing and Expunging Proofs of Claim Numbers 13018, 13080, and 13309 and Proofs Of Administrative Expense Claim Numbers 18900, 19192, 19270, 19671, and 19716 and Allowing Proofs of Administrative Expense Claim Numbers 19633 and 19715 (Docket No. 22228), entered November 20, 2013 (the "ACE Stipulation"). Pursuant to the ACE Stipulation, Claim Nos. 13018, 13090, and 13309, along with Administrative Expense Claim Nos. 18900, 19192, 19270, 19671, and 19716, were each disallowed and expunged, and Administrative Expense Claim Nos. 19633 and 19715 were allowed in full and final satisfaction of the claims. The amounts due under the stipulation have been paid from proceeds of collateral securing the claims. Excess collateral securing the ACE Insurance Claims was returned to the Reorganized Debtors, and additional collateral may be returned, in accordance with the stipulation, following the dissolution of DPH Holdings.

    **(c)**    **Environmental Claims.**

        The Environmental Claims, which include Claim No. 15785 and Administrative Expense Claim Nos. 18956, 19539, and 19786 asserted by the Michigan Department of Environmental Quality (the "Michigan DEQ") and the U.S. Department of Environmental Protection (the "U.S. EPA"), were resolved (the "Environmental Claims Settlement") pursuant to the Order Approving the Joint Stipulation and Agreed Order, Consent Decree, and Settlement Agreement (Docket No. 22241) ("Order Approving Joint Stipulation and Agreed Order"), entered December 9, 2013, pursuant to which this Court approved the Joint Stipulation and Agreed Order, Consent Decree and Settlement Agreement Among Reorganized Debtors, the United States on Behalf of the United States Environmental Protection Agency, the State of Michigan on Behalf of the Michigan Department of Environmental Quality, the State of Ohio on Behalf of the Ohio Environmental Protection Agency, and the Environmental Response Trust Trustee (I) Resolving Proof of Claim Number 15785 and Proofs of Administrative Expense Claim Numbers 18956, 19539, and 19786 and (II) Establishing an Environmental Response Trust (Docket No. 22242) (the "Environmental Stipulation"). The Environmental Claims Settlement consensually resolves each of the Environmental Claims. Pursuant to the Environmental Claims, the Michigan DEQ and the U.S. EPA asserted claims for both past and future environmental costs at certain sites owned or formerly owned by the Reorganized Debtors. In order to resolve such claims, the Environmental Claims Settlement provides for the allowance of Administrative Expense Claim No. 19786 in full and final satisfaction of the claim and the disallowance and expungement of Claim No. 15785 and Administrative Expense Claim Nos. 18956 and 19569. In addition, the Environmental Claims Settlement provided for the creation of an environmental response trust funded by the Reorganized Debtors to own and clean up four sites, located in Michigan and Ohio, owned by the Reorganized Debtors. The Reorganized Debtors have paid all amounts due under the Environmental Claims Settlement and will have transferred the applicable property to the trust by the date of the Closing Status Hearing.

        10.    Accordingly, all of the Remaining Claims have been resolved, and the

Reorganized Debtors have provided for distribution, as applicable, in respect of each of the

Remaining Claims in accordance with the Modified Plan.[5] The total amount of allowed general

unsecured claims is $6,164,657,752. As set forth in section 1.102 of the Modified Plan and

---

[5]    The Reorganized Debtors were recently contacted by counsel for the former administrative agent under the Debtors' former debtor-in-possession financing facility with a request for payment of accrued and future legal expenses in connection with a subpoena. The administrative agent asserts that these amounts are payable under a continuing indemnification obligation that was part of the administrative agent's allowed administrative expense claim. Without conceding that those legal fees represent valid indemnification obligations, the Reorganized Debtors have provided for payment of all outstanding invoices. The Reorganized Debtors do not believe that they are required to fund unknown, contingent indemnification obligations prior to case closing. Any future claims against the Reorganized Debtors will be administered in the Delaware Proceeding (defined below). Undersigned counsel do not represent the Reorganized Debtors in connection with the recent indemnification claim. To date, that matter has been handled by Togut, Segal & Segal LLP and going forward will be handled by Cole, Schotz, Meisel, Forman & Leonard P.A.

section 3.2.3 of the MDA, any distribution to holders of general unsecured claims will come

from New Delphi and will be triggered once New Delphi's distributions to its own members

exceed the $7.2 billion threshold provided for in the Modified Plan and the MDA (the "General

Unsecured MDA Distribution").

11.    As of the date hereof, New Delphi has not made any distributions pursuant

to section 3.2.3 of the MDA. A holder of a general unsecured claim contacted the Reorganized

Debtors and requested, in connection with the closing of the Chapter 11 Cases, that (a) the Court

retain jurisdiction to adjudicate any and all disputes arising from or relating to the General

Unsecured MDA Distribution; and (b) the Reorganized Debtors assign their contractual right to

directly enforce section 3.2.3 of the MDA as a third party beneficiary to all record or beneficial

holders of allowed general unsecured claims, including, without limitation, their successors,

assignees, and participants.  The Reorganized Debtors declined to modify the proposed final

decree in these respects because the Plan Modification Order already contains the retention of

jurisdiction provisions established by this Court, and the Reorganized Debtors are not prepared

to assign any contractual rights that they may have to a purported class.  Whether and to what

extent there are future payments from New Delphi to holders of general unsecured claims is a

matter of contract under the Modified Plan, and the Reorganized Debtors do not believe that the

Modified Plan precludes enforcement of the Plan by individual holders with contract interests

thereunder or prevents the Reorganized Debtors from closing their Chapter 11 Cases in

accordance with applicable law.

**B.    Resolution of the Remaining Adversary Proceedings, Other Adversary Proceedings, and Contested Matters**

12.    The Court was previously advised that all but five of the 177 avoidance

actions retained by the Reorganized Debtors had been resolved. At that time, the adversary

proceeding dockets revealed a greater number of open adversary cases; such cases were to be

subsequently dismissed, or dismissed upon the receipt of final settlement payments. All of the

Remaining Adversary Proceedings have now been resolved. Although the dockets for two of the

Remaining Adversary Proceedings, Delphi Corporation, et al. v. Republic (Adv. Proc. No. 07-

2742) and Delphi Corporation, et al. v. Republic Engineered Products et al. (Adv. Proc. No. 07-

2744) (the "Republic Matters"), reflect that the cases remain open as of the date of this Case

Closing Status Report, those matters have been settled. The Reorganized Debtors expect to

receive the final settlement payments in each of the Republic Matters on December 17, 2013.

Upon receipt of the final payments, the Reorganized Debtors will submit to this Court proposed

orders dismissing and closing the Republic Matters. One other Remaining Adversary Proceeding,

Delphi Corporation, et al. v. AIU (Adv. Proc. No. 07-2097) (the "AIU Matter"), remains open.

The plaintiffs have filed a notice of dismissal with prejudice in the AIU matter.

    13.  In addition to the Remaining Adversary Proceedings, three adversary

proceedings, unrelated to the retained avoidance actions, remained open as of the date of the

filing of the Reply, two of which have been dismissed and closed and one of which is currently

on appeal to the Second Circuit. Two of these adversary proceedings, Official Committee of

Unsecured Creditors v. Delphi Corporation, et al. (Adv. Proc. No. 08-1368) and Wilmington

Trust Company, as Indenture Trustee v. Delphi Corporation, et al. (Adv. Proc. No. 08-1367) (the

"Confirmation Order Adversaries") sought to revoke the Confirmation Order (as defined in the

Motion). This Court had previously ordered, pursuant to paragraph A of the Plan Modification

Order, that the plaintiffs in each of the Confirmation Order Adversaries was deemed to have

withdrawn its adversary complaint. On November 26, 2013, this Court entered orders dismissing

with prejudice and closing both of the Confirmation Order Adversaries.[6] In addition, ACE

American Insurance Company et al. v. Delphi Corporation et al. (Adv. Proc. No. 09-1510)

remains open. On November 1, 2012, the bankruptcy court granted summary judgment in favor

of ACE American Insurance Company and Pacific Employers Insurance Company,[7] and on

August 1, 2013, the district court affirmed the bankruptcy court's decision.[8] The case is currently

on appeal to the Second Circuit.[9]

    14.  Additionally, James S. Sumpter, a salaried retiree of the Debtor, has

appealed two decisions of this Court to the United States District Court for the Southern District

of New York, which appeals are pending.  One appeal arises from this Court's Order (I)

Enforcing Modification Procedures Order, Modified Plan and Plan Modification Order

Injunction and Thirty-Seventh Omnibus Claims Objection Order Against James Sumpter, as

Plaintiff, in Federal Court ERISA Action; and (II) Directing James Sumpter to Dismiss United

States District Court, Southern District of Indiana Action Against Reorganized Debtors and the

Reorganized Debtors' Life & Disability Benefits Program (Docket No. 22063) ("Sumpter

ERISA Injunction Order"), dated May 28, 2013, which enjoined certain causes of action as

against DPH Holdings and other defendants in an Indiana litigation filed by Mr. Sumpter. Mr.

Sumpter did not seek a stay of that order pending appeal, and the Indiana litigation has been

---

[6] Official Committee of Unsecured Creditors v. Delphi Corporation, et al. (In re DPH Holdings Corp., et al.), Ch. 11 Case No. 05-44481, Adv. No. 08-1368 (RDD) (Bankr. S.D.N.Y. Nov. 26, 2013), ECF No. 6; Wilmington Trust Company, as Indenture Trustee v. Delphi Corporation, et al. (In re DPH Holdings Corp., et al.), Ch. 11 Case No. 05-44481, Adv. No. 08-1367 (RDD) (Bankr. S.D.N.Y. Nov. 26, 2013), ECF No. 7.

[7] ACE American Insurance Company et al. v. Delphi Corporation et al. (In re DPH Holdings Corp., et al.), Ch. 11 Case No. 05-44481, Adv. No. 09-1510 (RDD) (Bankr. S.D.N.Y. Nov. 1, 2012), ECF No. 173.

[8] State of Michigan Workers' Compensation Insurance Agency et al. v. ACE American Insurance Company et al., No. 12-9292 (PAE) (S.D.N.Y. Aug 1, 2013), ECF No. 19.

[9] State of Michigan Workers' Compensation Insurance Agency et al. v. ACE American Insurance Company et al., No. 13-3305 (2d Cir. filed Sept. 3, 2013).

dismissed as against DPH Holdings. The second appeal arises from this Court's Order Granting

the Reorganized Debtors' Motion for Order Enjoining James Sumpter's United States District

Court, Southern District of Indiana Action (Docket No. 22210) ("Order Enjoining Sumpter

Indiana Action"), dated November 4, 2013, which permanently enjoined Mr. Sumpter from

pursuing certain claims against DPH Holdings and other defendants in a second Indiana

litigation filed by Mr. Sumpter and ordered him to dismiss that second Indiana litigation with

prejudice. In addition, on December 1, 2013, Mr. Sumpter filed an Expedited Motion for Stay

Pending Appeal with this Court ("Sumpter Stay Motion"), requesting to stay the Order Enjoining

Sumpter Indiana Action. On December 10, 2013, the Reorganized Debtors filed a response to the

Sumpter Stay Motion (Docket No. 22243). The Court has not yet ruled on the Sumpter Stay

Motion. The Reorganized Debtors have funded a professional retainer for the continued

opposition of Mr. Sumpter's appeal, which the Reorganize Debtors believe to be meritless.

   15. Although certain cases remain open at the time of this Case Closing Status

Report, and certain appeals remaining pending, the Reorganized Debtors believe that all

adversary proceedings and contested matters have been resolved for purposes of closing the

cases. The existence of pending appeals or open adversary proceedings need not prevent a

finding that a case has been fully administered or the entry of a final decree. Ion Media Networks,

Inc., 2010 Bankr. LEXIS 5585, at *2 (Bankr. S.D.N.Y. Dec. 22, 2010) (where an appeal and

adversary proceedings had not yet been resolved, court entered the final decree closing the cases

upon a finding that cases had been fully administered); see also, In re W.A.R. LLP, 2011 Bankr.

LEXIS 2650 at *4 (Bankr. D.D.C. July 11, 2011) ("Appeals of various rulings are pending . . . .

Nevertheless, a case should be closed when, as here, the estate has been fully administered.")

The Chapter 11 Cases may be reopened, if cause is shown under section 350(b) of the

Bankruptcy Code, to address the resolution of any pending appeals or adversary proceedings. Ion
Media Networks, Inc., 2010 Bankr. LEXIS at *2; see also, W.A.R. LLP, 2011 Bankr. LEXIS at
*4. At this time, no distributions from the Reorganized Debtors are required or expected.

**C.    Administrative Tasks**

　　　　(a)    **Dissolution of DPH Holdings under Delaware Law**

　　　　16.    Pursuant to paragraph 6 of the Case Closing Order, the Reorganized
Debtors were authorized to dissolve under Delaware Law following the resolution of the
Remaining Claims.[10] The Reorganized Debtors will accomplish dissolution as part of a two-step
process. At step one, which was completed as of December 6, 2013, the Reorganized Debtors
consummated merger transactions pursuant to which DPH Holdings' wholly owned affiliates
were merged into DPH Holdings. In step two, the surviving entity – DPH Holdings – will file a
notice of dissolution under Delaware law pursuant to 8 Del. C. § 275(c). The Reorganized
Debtors will effect dissolution prior to the Closing Status Hearing.[11] DPH Holdings will engage
in a wind-down and claims resolution process pursuant to Delaware law (the "Delaware
Proceeding"), which requires DPH Holdings to continue administer any claims against that entity
for a period of at least three years. 8 Del C. §§ 1-280, 281.

　　　　17.    In addition to paying all amounts owed by the Reorganized Debtors on
account of allowed claims and administrative expenses, the Reorganized Debtors have attempted
to provide for payment of all other known liabilities prior to the dissolution of DPH Holdings.

---

[10]    This Court's entry of the Environmental Claims Settlement on December 9, 2013, marked the resolution of the
last disputed claims required to be administered under the Modified Plan.

[11]    If payment of amounts due under the GM Settlement (defined below) and dissolution do not occur prior to the
Closing Status Hearing, the Reorganized Debtors will submit to the Court an alternative form of order that will
condition the effectiveness of the order on the filing of a notice by the Reorganized Debtors that such events
have occurred.

The Reorganized Debtors have either paid, prepaid, or funded into escrow the amounts owed and

projected to be owed for current and future obligations including taxes, document retention and

destruction, professional retainers for administration of the Delaware Proceeding, director pay

for the duration of the Delaware Proceeding, insurance, environmental obligations, final payment

of fees to the Office of the United States Trustee, and other administrative costs. In addition,

because it is unlikely that any assets will be available for distribution in the Delaware

Proceeding,[12] the Reorganized Debtors attempted to reach settlements in pending litigations;

litigation that could not be settled prior to dissolution will be resolved in the Delaware

Proceeding.

### (b)   GM Settlement

18.   As described above, pursuant to section 3.1.1.E of the MDA, GM was

obligated to fund up to $50 million in costs related to the liquidation and wind down of the

Reorganized Debtors. The GM Wind Down Facility expires on December 31, 2013. To resolve a

dispute with GM regarding the terms of the GM Wind Down Facility, the Reorganized Debtors

have entered into the Stipulation and Order Further Resolving Funding Dispute Between

Reorganized Debtors and General Motors (the "GM Settlement"), which was submitted to the

Court on December 13, 2013. Among other things, the GM Settlement provides for an

immediate payment to GM and sets forth mechanics for repayment of funds advanced under the

GM Wind Down Facility.

---

[12]   In accordance with the GM Settlement (defined below), no funds are available under the GM Wind Down
Facility for payments in unresolved litigations.

13

(c)    **Disposition of Assets**

19.    Since emerging from chapter 11, the Reorganized Debtors have engaged in a sales and marketing process to dispose of all of the Reorganized Debtors' real-property assets. At the time the Motion was filed, the Reorganized Debtors had completed sales of approximately twenty separate properties. As detailed above, pursuant to the Environmental Settlement Agreement, the right, title and interest in three[13] of those remaining properties will be transferred to an environmental response trust prior to the Closing Status Hearing. The Reorganized Debtors had expected to sell the remaining fourth property, located in Olathe, Kansas (the "Kansas Property") prior to the Closing Status Hearing but were unable to complete a transaction with the prospective buyer. Accordingly, the Kansas Property will be included among the assets of DPH Holdings administered in the Delaware Proceeding. Similarly, future receivables payable to the Reorganized Debtors after the closing of the Chapter 11 Cases will be administered in the Delaware Proceeding. The proceeds from assets being administered in the Delaware Proceeding have been assigned to GM pursuant to the GM Settlement in repayment of amounts funded by GM under the GM Wind Down Facility.

[*Remainder of Page Intentionally Left Blank*]

---

[13]    The Settlement Agreement provides for the transfer of four of the Reorganized Debtors' sites, which are on three different properties. Those sites include a site in Saginaw, Michigan, Rootstown, Ohio, and two adjacent sites in Flint, Michigan.

**CONCLUSION**

WHEREFORE, the Reorganized Debtors respectfully request that this Court enter a final decree in each of the Remaining Cases substantially in the form of the final decree attached hereto as <u>Exhibit B</u> and grant such further and other relief this Court deems just and proper.


Dated: New York, New York
December 13, 2013

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: /s/ John Wm. Butler, Jr.
John Wm. Butler, Jr.
John K. Lyons
Albert L. Hogan III
Ron E. Meisler
155 North Wacker Drive
Chicago, Illinois 60606

- and -

Four Times Square
New York, New York 10036

Attorneys for DPH Holdings Corp., <u>et</u> <u>al.</u>,
Reorganized Debtors

**EXHIBIT A**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

     - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti

Attorneys for DPH Holdings Corp., et al.,
    Reorganized Debtors

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.dphholdingsdocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                               :

In re                              :     Chapter 11
                                               :

DELPHI CORPORATION, et al.,        :     Case No. 05-44481 (RDD)
                                               :
                                               :     (Jointly Administered)
                   Debtors.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CLOSING REPORT IN CHAPTER 11 CASES

To the best of our knowledge and belief, the following is a breakdown in the above-captioned jointly administered chapter 11 cases:[1]

FEES AND EXPENSES (from inception of cases):

| | |
|---|---|
| $140,980,778 | ALLOWED AND PENDING FEES AND EXPENSES for 24 LEGAL PROFESSIONALS RETAINED BY DEBTORS PURSUANT TO SECTION 327 OF THE BANKRUPTCY CODE[2] |
| $241,031,641 | ALLOWED AND PENDING FEES AND EXPENSES for OTHER PROFESSIONALS[3] |
| N/A | TRUSTEE FEE (if applicable) |
| N/A | FEE FOR ATTORNEY for TRUSTEE (if applicable) |

---

[1]   On January 25, 2008 (the "Confirmation Date"), the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order confirming the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, dated January 25, 2008 (the "Confirmed Plan"), in the Chapter 11 Cases of Delphi Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors").  On July 30, 2009 (the Modification Approval Date"), the Bankruptcy Court entered an order (the "Modification Approval Order") approving certain modifications to the Confirmed Plan embodied in the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession  (As Modified) (the "Modified Plan"), attached as Exhibit A to the Modification Approval Order (Docket No. 18707).  Capitalized terms used but not defined in this closing report have the meanings ascribed to them in the Modified Plan.

[2]   Pursuant to Article 10.3(a) of the Modified Plan, final fee applications incorporating the seventh interim fee application period (October 1, 2007 through the Confirmation Date) are not required to be filed until December 31, 2009.  As set forth in the Supplement to First Amended Disclosure Statement with Respect to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (as Modified) (the "Supplement to Disclosure Statement"), dated June 16, 2009 (Docket No. 17031), the estimated amount of fees and expenses for attorneys for the 24 legal professionals retained by the Debtors pursuant to section 327 of the Bankruptcy Code for the seventh interim fee application period is $26,787,000.  This amount is included in the amount listed on this closing report.  Pursuant to paragraph 33 of the Confirmation Order, the Debtors employed and paid all professionals in the ordinary course of business following the Confirmation Date.

[3]   The amounts reflected for "Other Professionals" include amounts paid to financial and other non-legal professionals retained by the Debtors under section 327 of the Bankruptcy Code, plus the allowed fees and expenses of retained professionals (both legal and other) for the Official Committee of Unsecured Creditors, the Official Committee of Equity Security Holders, and the fee committee.  As set forth in the Supplement to Disclosure Statement, the estimated amount of fees and expenses for "Other Professionals" for the seventh interim fee application period is $29,840,793.  This amount is included in the amount listed on this closing report.

|  |  |
|---|---|
| Contingent; unlikely to exceed 4.2% | % DIVIDEND PAID/TO BE PAID[4] |
| √ | FUTURE DIVIDENDS (check if % of future dividend not yet determinable) |

STEPS TAKEN TO CONSUMMATE PLAN:  On October 6, 2009, the Effective Date of the Modified Plan occurred.  The Modified Plan was substantially consummated at a closing that occurred at the offices of Skadden, Arps, Slate, Meagher & Flom LLP in New York City, New York.  All of the transactions contemplated by the Master Disposition Agreement and related agreements to occur at the closing were effective for tax and accounting purposes as of 11:58 p.m., local time, on the Closing Date as defined in the Master Disposition Agreement.  Initial distributions under the Modified Plan were also completed on October 6, 2009.  See Notice of (A) Order Approving Modifications to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession and (B) Occurrence of Effective Date, dated October 6, 2009 (Docket No. 18958).

---

[4]    If and to the extent the Company Buyer makes distributions to its members in accordance with the Company Buyer Operating Agreement, as described in section 3.2.3 of the Master Disposition Agreement, in excess of $7.2 billion, an amount equal to $32.50 for every $67.50 so distributed in excess of $7.2 billion will be distributed to the holders of General Unsecured Claims.  In no event, however, will the distribution under the Modified Plan to the holders of General Unsecured Claims exceed $300 million in the aggregate.  Based on currently available information, a distribution to the holders of General Unsecured Claims, if any, is unlikely to exceed 4.2 percent of the Allowed Claims.

Dated:    New York, New York
          October 21, 2009

                          SKADDEN, ARPS, SLATE, MEAGHER
                            & FLOM LLP


                          By:  /s/ John Wm. Butler, Jr.
                               John Wm. Butler, Jr.
                               John K. Lyons
                               Ron E. Meisler
                          155 North Wacker Drive
                          Chicago, Illinois 60606


                                  - and -


                          By:  /s/  Kayalyn A. Marafioti
                               Kayalyn A. Marafioti
                          Four Times Square
                          New York, New York 10036

                          Attorneys for DPH Holdings Corp., et al.,
                            Reorganized Debtors

4

**EXHIBIT B**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                  :

In re                           :      Chapter 11
                                                  :

DPH HOLDINGS CORP., et al.,       :      Case No. 05-44481 (RDD)
                                                  :

               Reorganized Debtors. :      (Jointly Administered)
                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FINAL DECREE AND ORDER PURSUANT TO 11 U.S.C. § 350(a)
AND FED. R. BANKR. P. 3022 AND LOCAL R. BANKR. P. 3022-1
CLOSING CHAPTER 11 CASES OF DPH HOLDINGS CORP., DELPHI
MEDICAL SYSTEMS COLORADO CORPORATION, DELPHI MEDICAL
SYSTEMS TEXAS CORPORATION, DELPHI MECHATRONIC
SYSTEMS, INC., AND DELPHI AUTOMOTIVE SYSTEMS LLC

         Upon the motion, dated July 3, 2013 (the "Motion"), of DPH Holdings Corp.

("DPH Holdings"), on behalf of itself and certain of its affiliated reorganized debtors in the

above-captioned cases (together with DPH Holdings, the "Reorganized Debtors"), successors to

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, former debtors and

debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for entry of an

order and final decree pursuant to 11 U.S.C. §§ 105, 350(a), and 1142, Fed. R. Bankr. P. 3022

and Local R. Bankr. P. 3022-1 closing the chapter 11 cases of the remaining Debtors, which

cases were jointly administered pursuant to the Order Authorizing Joint Administration (Docket

No. 28) and the Second Joint Administration Order (Docket No. 404); upon the record of the

hearing held by the Court on the Motion on July 30, 2013; upon the entry of the Order Pursuant

to 11 U.S.C. §§ 105, 350(a), and 1142, Fed R. Bankr. P. 3022, and Local Bankr. R. 3022-1

Concerning Closing the Bankruptcy Cases and Providing Related Relief (Docket No. 22121),

entered August 6, 2013 (the "Case Closing Order"); upon the filing of the Reorganized Debtors'

Case Closing Status Report Pursuant to the Order Pursuant to 11 U.S.C. §§ 105, 350(a), and

1142, Fed R. Bankr. P. 3022, and Local Bankr. R. 3022-1 Concerning Closing the Bankruptcy

Cases and Providing Related Relief, dated December 13, 2013 (the "Case Closing Status

Report"); and upon the record of the case closing status hearing held by the Court on December

18, 2013; and the Debtors' estates having been fully administered within the meaning of 11

U.S.C. § 350 and in accordance with the Modified Plan; and after due deliberation thereon; and

good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:[1]

1.     This Court has core jurisdiction over these chapter 11 cases and the parties

and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334, article 13 of the Modified

Plan, and paragraphs FF and 56 of the Plan Modification Order.  Venue of this proceeding and

the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The chapter 11 cases of the five Debtors (the "Closing Debtors")

identified in Exhibit 1 attached hereto and incorporated herein by reference are hereby closed,

pursuant to section 350 of the Bankruptcy Code, Bankruptcy Rule 3022, and Local Rule 3022-1.

3.     The Clerk of the Court shall enter this final decree and order individually

in each of the dockets for the Closing Debtors and thereafter such dockets shall be marked

"Closed."

---

[1]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings
of fact when appropriate.  See Fed. R. Bankr. P. 7052.

4.      Notwithstanding the possible application of any law or rule to the contrary, the provisions of this final decree and order shall be immediately effective and enforceable upon its entry.

5.      The discharges and releases authorized and approved by this Court pursuant to the Case Closing Order are hereby effective.

6.      Any assets remaining at the conclusion of the Delaware Proceeding shall be transferred to, and shall be the property of, either General Motors LLC ("GM"), under the Stipulation and Order Further Resolving Funding Dispute Between Reorganized Debtors and General Motors, except, in the event that all advances made by GM to the Reorganized Debtors pursuant to section 3.1.1.E of the Master Disposition Agreement, dated as of July 30, 2009, by and among Delphi Corporation, GM Components Holdings, LLC, General Motors Company, Motors Liquidation Company, DIP Holdco 3, LLC, and the other sellers and buyers party thereto, are paid in full, such remaining assets shall be transferred to Delphi Automotive LLP.

7.      This Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of this order.

Dated:  White Plains, New York
           December ___, 2013

_____
       UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

|   | Case No. | Filing Debtor | Address[2] | Tax ID Number |
|---|---|---|---|---|
| 1. | 05-44481 | DPH Holdings Corp., f/k/a Delphi Corporation | 5725 Delphi Drive, Troy Michigan 48098-2815 | 38-3430473 |
| 2. | 05-44507 | Delphi Medical Systems Colorado Corporation | 4300 Road 18, Longmont, CO 80504 | 32-0052827 |
| 3. | 05-44511 | Delphi Medical Systems Texas Corporation | 5725 Delphi Drive, Troy Michigan 48098-2815 | 20-2885110 |
| 4. | 05-44567 | Delphi Mechatronic Systems, Inc. | 5725 Delphi Drive, Troy Michigan 48098-2815 | 38-3589834 |
| 5. | 05-44640 | Delphi Automotive Systems LLC | 5725 Delphi Drive, Troy Michigan 48098-2815 | 38-3431131 |

---

[2]    All Debtor addresses are those that appear on the voluntary petitions.