Hearing Date And Time: December 18, 2013 at 10:00 a.m. (prevailing Eastern Time)

**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
900 Third Avenue, 16th Floor
New York, New York  10022
(646) 752-8000
Michael D. Warner (admitted *pro hac vice*)
Ilana Volkov

Attorneys for DPH Holdings Corp., et al., Reorganized Debtors
DPH Holdings Corp. Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

DPH Holdings Corp. Legal Information Website:
http://www.dphholdingsdocket.com

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK**<br>In re:<br><br>DPH HOLDINGS CORP., et al.,<br><br>　　　　　Reorganized Debtors. | Chapter 11<br><br>Case No. 05-44481 (RDD)<br><br>(Jointly Administered) |

**REPLY OF REORGANIZED DEBTORS TO LIMITED OBJECTION OF JP MORGAN CHASE BANK, N.A. TO MOTION FOR A FINAL DECREE AND ORDER AND TO THE REORGANIZED DEBTORS' CASE CLOSING STATUS REPORT**

TO: HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE

　　　　The Reorganized Debtors, by and through their undersigned counsel, submit this Reply to the Limited Objection of JPMorgan Chase Bank, N.A. ("JPMC") to the Reorganized Debtors' Motion for a Final Decree and Order and to the Reorganized Debtors' Case Closing Status Report (the "Limited Objection").  The Limited Objection is fatally flawed as follows:

　　　　1.　　First, the Limited Objection is untimely.  JPMC has had the IRS Subpoena (as defined in the Limited Objection) since June 11, 2013.  On July 3, 2013, the Reorganized Debtors filed their Motion for Final Decree and Order Pursuant to 11 U.S.C. §§ 105, 350(a), and

1142, Fed R. Bankr. P. 3022, and Local Bankr. R. 3022-1 Closing the Bankruptcy Cases and Providing Related Relief (Docket No. 22073) (the "Motion"). Objections to the Motion were due on July 18, 2013, a full month after JPM received the IRS Subpoena. The Motion provided a blueprint for the final months of these Chapter 11 cases so that final decrees could be entered by December 2013, which coincides with the termination of New GM's obligation, pursuant to section 3.1.1.E of the Master Disposition Agreement, to fund the Reorganized Debtors' liquidation and wind-down costs of the Reorganized Debtors. The Motion identified which claims remained unresolved as of that date, including administrative claims (defined in the Motion as the "Remaining Claims"). Moreover, the Reorganized Debtors sought a finding in the proposed Order that these cases would be substantially administered upon resolution of the Remaining Claims. JPMC received notice of the Motion,[1] which did not include JPMC's current claim for indemnification, yet failed to object. This Court entered the Case Closing Order on August 6, 2013 [Docket No. 22121], and found in Paragraph F:

> Upon resolution of the Remaining Claims and the Remaining Adversary Proceedings, and provision for distribution in respect thereof under the Modified Plan, Debtors' estates will have been fully administered within the meaning of 11 U.S.C. § 350 and in accordance with the Modified Plan;

2.  Not until November 27, 2013, nearly five months after JPMC received the IRS Subpoena, did JPMC demand payment of $584,246 fund/escrow/retainer. JPMC waited until thirty-six (36) hours before the final hearing on the Motion to file the Limited Objection. JPMC's eleventh-hour effort to create new conditions for closing these cases should not be condoned now, and the Limited Objection should be overruled as untimely.

---

[1] *See* Affidavit of Service of Darlene Calderon re: Reorganized Debtors' Motion for Final Decree and Order Pursuant to 11 U.S.C. §§ 105, 350(a), and 1142, Fed. R. Bankr. P. 3022, and Local Bankr. R. 3022-1 Closing the Bankruptcy Cases and Providing Related Relief (Docket No. 22079).

2

3. <u>Second</u>, JPMC has, at best, a contract claim against the Reorganized Debtors for indemnification pursuant to the 2008 Credit Facility. It is undisputed that the Modified Plan became effective four years ago and the separate legal entities created under that Plan, i.e., the Reorganized Debtors, are the entities that may be contractually obligated to reimburse JPMC pursuant to the indemnification provision if/when the legal services are provided because it is then and only then that the contractual obligation ripens.[2] JPMC may not, as it improperly does here, conflate and/or transform its unsecured contract claim against the Reorganized Debtors (i.e., non-debtor entities) into a "superpriority" administrative claim. Such claims are legal entitlements under Sections 503(b) and/or 364 of the Bankruptcy Code. This priority scheme does not apply to non-debtor entities.[3]

4. JPMC's claim for a future expense reimbursement, if and when it is ever properly asserted, is subject to various defenses. Those defenses will be fully addressed in the appropriate venue (i.e., the Delaware dissolution proceeding) if/when the claim is asserted, and may include, *inter alia*:

(a) Paragraph 16 of the Plan Modification Order expressly states that the Reorganized Debtors shall be obligated on an *unsecured basis* to indemnify the DIP Agent:

> Upon occurrence of the Closing . . . except as explicitly set forth in the Master Disposition Agreement, (i) the DIP Loan shall be fully discharged, released, terminated and if necessary, deemed waived, . . . (iii) the Debtors and Reorganized Debtors shall be fully

---

[2] As set forth in the Case Closing Report, without conceding that the legal fees actually incurred by JPMC's counsel in responding to the IRS Subpoena constitute a valid indemnification obligation, the Reorganized Debtors paid the invoices submitted prior to the filing of the Case Closing Status Report in excess of $95,000 with a full reservation of rights. The Reorganized Debtors received another invoice on December 13, 2013, which is under review, but provision for payment of that invoice has been made as part of the wind-up budget.

[3] JPMC argues that were this Court to allow case closure notwithstanding its unasserted administrative claim, DIP lenders' confidence to provide debtor-in-possession financing would erode. *See* Limited Objection, ¶ 34. JPMC's predicted demise of the commercial lending world ignores that every commercial transaction carries a level of known risk that one of the contract parties will be unable to fulfill its contractual obligations.

> discharged and released of all obligations of any kind relating to the DIP Loan, and the Debtors and Reorganized Debtors shall have no further obligation to the DIP Lenders under and relating to the DIP Loan . . . **provided, however, that notwithstanding the above . . . (x) the Reorganized Debtors shall be obligated on <u>an unsecured basis</u> (i) in respect of the indemnity to the DIP Agent to the extent contemplated under the Credit Agreement and section 13(d) of the DIP Facility Order** . . . . (emphasis supplied);

JPMC curiously ignores this controlling provisions in the Limited Objection.

(b) JPMC wore two hats in connection with the Delphi Emergence Transaction. One hat was as a DIP Agent, and one hat was as a buyer; any legal services JPMC's lawyers rendered for JPMC as a buyer would not be covered by the indemnity. Responding to a third-party information subpoena concerning Debtor New Delphi's decision to be formed as a U.K. entity arguably falls under the "buyer" hat;

(c) the controlling indemnity provision only requires expense reimbursement of reasonable fees and JPMC will have to demonstrate, at a later date in the Delaware dissolution proceeding, that an additional $584,246 in legal fees is reasonable at the time incurred to respond to the IRS Subpoena.[4]

5. This Court need not decide the merits of JPMC's claims nor the Reorganized Debtors' defenses. Consistent with this Court's Case Closing Order, those will be adjudicated by the Delaware Chancery Court; they do not form a basis for delaying the closing of these cases.

6. <u>Third</u>, JPMC's argument that its claim for a $584,246 trust pursuant to its superpriority status under Section 364 of the Bankruptcy Code is erroneous in several respects. As a threshold issue, JPMC has not even asserted – because it cannot (*see* Paragraph 16 of the

---

[4] While JPMC complains that it has to "bear the brunt" of the IRS Subpoena, counsel to New GM has advised Cole, Schotz, Meisel, Forman & Leonard, P.A. that New GM responded to a similar third-party information request from the IRS and New GM's in-house counsel was able to negotiate with the IRS to substantially limit the document request. In addition, New GM was ultimately required to produce only a small amount of documents and understands that the IRS is satisfied.

Plan Modification Order) – an administrative claim. Nevertheless, JPMC has asserted its right on a "superpriority" basis to a $584,246 trust for legal services that may (or may not) be provided in the future.[5] Even if the indemnity obligation could be construed as an allowed administrative claim (which it cannot), it is JPMC's burden to establish that a reserve for future legal services is entitled to administrative priority. JPMC cannot meet its heavy burden due to the following:

(a) JPMC's requested escrow for potential future legal services is not an actual, necessary cost or expense of preserving the Debtors' bankruptcy estate pursuant to 11 U.S.C. § 503(b)(1)(A) as such estate has not existed since the 2009 Effective Date and the claim is therefore not entitled to administrative priority.[6]

(b) JPMC's requested escrow for potential future legal services (to the extent any are actually rendered) are, at best, contractual obligations of the Reorganized Debtors and do not benefit the Debtors' bankruptcy estate because that estate ceased to exist in 2009, upon the Effective Date of the Modified Plan.

---

[5] Footnote 3 of the Limited Objection is JPMC's only effort to substantiate the requested $585,000 "estimate." The projected legal services include negotiating search terms, reviewing 170,000 documents (possibly limited to 55,000 documents as part of a targeted review), additional document review (if requested by the IRS), deposition testimony (if requested by the IRS), and trial testimony (if requested by the IRS). No evidence has been presented that the IRS has requested or might ever make these requests.

[6] *See Trustee of the Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986). Critically, the burden of proving entitlement to priority payment as an administrative expense rests with the party requesting it, here JPMC. *See Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.)*, 954 F.2d 1, 5 (1st Cir.1992); *In re Drexel Burnham Lambert Group, Inc.*, 134 *B.R.* 482, 489 (Bankr.S.D.N.Y.1991). JPMC cannot sustain its burden because the claimed expense -- the provision of legal services in the future -- is not realized; furthermore, potential (or for that matter, even likely) future provision of legal services cannot act to preserve an estate that no longer exists. *In re HNRC Dissolution Co.*, 343 *B.R.* 839 (Bankr. E.D. Ky. 2006), aff'd, 371 *B.R.* 210 (E.D. Ky. 2007), aff'd, 536 F.3d 683 (6th Cir. 2008), cert. den., *Zurich American Ins. Co. v. Lexington Coal Co., LLC*, 129 S.Ct. 2866 (U.S. 2009); *In re HNRC Dissolution Co.*; see also *Nat'l Union Fire Ins. Co. v. VP Bldgs., Inc.*, unreported decision (Bankr.N.D. Ohio 2007), aff'd, 2008 WL 4445075 (N.D. Ohio 2008), aff'd, (606 F.3d 835 (6th Cir. 2010)), *rehearing and rehearing en banc denied* (2010)); *cert. den.* (U.S. 2011) (projected expenses determined through actuarial calculations were not actual or necessary as they were speculative and prospective post-confirmation expenses; also payment would not provide a direct and substantial benefit to a bankruptcy estate where there is no longer an estate to benefit).

5

(c)     The very contract upon which JPMC stakes its claim, Section 10.05(b) of the Credit Facility entitled "Expenses; Indemnity; Damage Waiver," provides only for expense *reimbursements* upon presentation of an indemnitee's expense reimbursement request accompanied by back-up documentation.  As the legal fees are potential, prospective and speculative, at best, there is nothing for the Reorganized Debtors to reimburse today.  JPMC's expense reimbursement is premature notwithstanding the Reorganized Debtors' imminent dissolution.

7.     <u>Fourth</u>, even if JPMC had an administrative claim against a debtor, which it does not, a proper outstanding, contingent administrative claim does not preclude this Court's entry of the Case Closing Order when as here, the estate is fully administered within the meaning of 11 U.S.C. §350.

8.     The closing of a bankruptcy estate is governed by Section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.  Section 350(a) provides: "After an estate is fully administered and the court has discharged the trustee, the court shall close the case."  Rule 3022 provides: "After an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case."  Thus, the main issue in determining whether an estate may be closed is whether it has been fully administered.

9.     The Advisory Committee Note to Rule 3022 is instructive.  It provides: "Entry of a final decree closing a chapter 11 case should not be delayed solely because the payments required by the plan have not been completed.  Factors that the court should consider in determining whether the estate has been fully administered include: (1) whether the order confirming the plan has become final, (2) whether deposits required by the plan have been

6

distributed, (3) whether the property proposed by the plan to be transferred has been transferred, (4) whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan, (5) whether payments under the plan have commenced, and (6) whether all motions, contested matters, and adversary proceedings have been fully resolved."  The Note further states: "The court should not keep the case open only because of the possibility that the court's jurisdiction may be invoked in the future."

10.     As courts have noted, the Advisory Committee Notes to Rule 3022 incorporate the three-part standard for determining whether a Chapter 11 plan has been substantially consummated pursuant to Section 1101 of the Bankruptcy Code.  That standard requires: (A) the transfer of all or substantially all of the property proposed by the plan to be transferred, (B) the assumption by the debtor or its successor under the plan of the business or management of all or substantially all of the property dealt with by the plan, and (C) commencement of distributions under the plan.  *See In re Jordan Manufacturing Co., Inc.*, 138 *B.R.* 30, 35 (Bankr. C.D. Ill. 1992); *Walnut Assocs. v. Saidel*, 164 *B.R.* 487, 493 (E.D. Pa. 1994); *In re A.H. Robins Co., Inc.*, 219 *B.R.* 145, 150 (Bankr. E.D. Va. 1998).  Notwithstanding the incorporation of that standard, courts have flexibility to apply some, but not necessarily all, of the factors enumerated in the Advisory Committee Note in determining whether a case should be closed.  *See In re IDC Servs., Inc.*, 1998 WL 547085 *3 (S.D.N.Y. Aug. 28, 1998)("the approach that looks to the Advisory Note provides a more complete and flexible standard for determining when to close a Chapter 11 case, and is therefore preferable [to a strict application of the standards for substantial consummation"]); *In the Matter of Clayton*, 101 F.3d 697, 1996 WL 661099 *1 (5th Cir. Oct. 15, 1996) ([The Advisory Committee Note] factors merely serve as a guide, however, and each need not be present before the entry of a final decree").

7

11. As the Case Closing Status Report indicates, all of these actions have been taken and, therefore, these cases are ready to be closed. JPMC's contingent, unliquidated contractual claim cannot properly stand in the way of case closing.

12. Taking JPMC's argument to its illogical conclusion would suggest that a bankruptcy case must remain open in perpetuity to address any potential future claims. Certainly, that is not what Congress intended.

## CONCLUSION

For all these reasons and authorities, the Limited Objection should not delay this Court's entry of the Order Closing the Case or require the Reorganized Debtors to establish a reserve for JPMC's contingent, unliquidated unsecured contractual claim. Accordingly, the Limited Objection should be overruled.

DATED:    December 17, 2013

>
> Respectfully submitted,
>
> COLE, SCHOTZ, MEISEL,
> FORMAN & LEONARD, P.A.
> Attorneys for DPH Holdings Corp., et al.,
> Reorganized Debtors
>
>
> By:    /s/ Ilana Volkov
>     Michael D. Warner (admitted *pro hac vice*)
>     Ilana Volkov

40000/5027-10144896v3