UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                                :

In re                                             :          Chapter 11
                                                :

DPH HOLDINGS CORP., *et al.*,            :          Case No. 05-44481 (RDD)
                                                :

          Reorganized Debtors.            :          (Jointly Administered)
                                                :
----------------------------------------------------------------x

### STIPULATION AND ORDER FURTHER RESOLVING FUNDING DISPUTE BETWEEN REORGANIZED DEBTORS AND GENERAL MOTORS LLC

It is hereby stipulated and agreed by and between DPH Holdings Corp. ("DPH"), on behalf of itself and certain affiliated reorganized debtors in the above-captioned cases (together with DPH, the "Reorganized Debtors"),[1] and General Motors LLC ("New GM" and, together with the Reorganized Debtors, the "Parties" and, each a "Party"):[2]

### Recitals

**WHEREAS**, on October 8 and 14, 2005, Delphi Corporation and certain of its subsidiaries and affiliates (collectively, the "Debtors"), filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the

---

[1] Prior to filing its notice of dissolution, all of the Reorganized Debtors will have been merged into DPH. For purposes of this Stipulation, the phrase "Reorganized Debtors" shall include DPH for the period before and after the date on which the certificate of dissolution is filed.

[2] Capitalized terms used but not otherwise defined herein shall be ascribed the meanings provided in the *Stipulation and Order Partially Resolving Funding Dispute Between Reorganized Debtors and General Motors LLC*, entered on October 23, 2013 [Docket No. 22202] (the "Settlement Stipulation").

05-44481-rdd    Doc 22252    Filed 12/18/13    Entered 12/18/13 11:16:32    Main Document
Pg 2 of 15

Southern District of New York (the "Bankruptcy Court"), Case No. 05-44481 (RDD); and

WHEREAS, on July 30, 2009, the Bankruptcy Court entered an order approving the Modified Plan [Docket No. 18707] (the "Plan Modification Order"), which became effective on October 6, 2009; and

WHEREAS, on October 6, 2009, the Debtors also closed the transactions under that certain Master Disposition Agreement, dated as of July 30, 2009, by and among New GM, Delphi and other parties (as amended, the "MDA"); and

WHEREAS, the MDA contains, among other things, Exhibit 3.1.1.E (the "Funding Agreement"), which provides for New GM to fund the "Wind Up" (as defined in the Funding Agreement) of the Reorganized Debtors in accordance with the terms of the Funding Agreement; and

WHEREAS, the Parties have been engaged in a dispute concerning the scope of New GM's funding obligation under the Funding Agreement; and

WHEREAS, on October 24, 2013, the Bankruptcy Court entered the Settlement Stipulation partially resolving certain issues related to the Parties' funding dispute; and

WHEREAS, the Reorganized Debtors assert that 

(the "December 2013 Advance Request"); and

40000/9150-10117142v3                              2

**WHEREAS**, New GM has asserted:  (a) objections to the December 2013 Advance Request, including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; and (b) that it is entitled to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (as defined herein), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (the "<u>Outstanding Advance</u>"), in accordance with the terms of the Funding Agreement, which the Reorganized Debtors dispute (collectively, the "<u>Advance Dispute</u>");  and

**WHEREAS**, the Parties have engaged in extensive meetings and conferences concerning the Advance Dispute and have agreed that the December 2013 Advance Request has been updated and superseded by the "Budget/Draw Request," a redacted form of which is attached hereto as "Exhibit A";  and

**WHEREAS**, the Parties have reached a settlement of the Advance Dispute, the terms of which are set forth in this stipulation (this "<u>Stipulation</u>"), which settlement also resolves any and all remaining issues that were identified in the Motion to Compel [Docket No. 22075] and related pleadings and submissions to the Bankruptcy Court; and

**WHEREAS**, the Parties agree that the terms set forth herein contain confidential commercial information, as contemplated under Section 107 of the Bankruptcy Code, the publicity of which may cause commercial injury to the

Reorganized Debtors and New GM. Accordingly, the Parties agree that this Stipulation constitutes the Parties' request that the Bankruptcy Court enter an order directing the redaction of the confidential commercial information contained herein.

**NOW, THEREFORE**, it is hereby stipulated, consented to and agreed by the Parties as follows:

1. The Recitals shall be incorporated into and deemed part of this Stipulation.

2. This Stipulation will become effective on the day of entry of an order by the Bankruptcy Court approving this Stipulation (the "Effective Date").

3. In settlement of the Advance Dispute including disputes over the December 2013 Advance Request, the Reorganized Debtors shall wire funds in the amount of ▮▮▮▮▮▮▮▮▮▮▮▮ to New GM (the "Settlement Payment") two (2) business days after the Effective Date.

4. In accordance with the terms of paragraph 3 hereof, the Reorganized Debtors shall remit the Settlement Payment to New GM prior to the date on which DPH files a certificate of dissolution. The Reorganized Debtors' bankruptcy cases shall not be closed until the Settlement Payment is received by New GM.

5. In further settlement of the Advance Dispute including disputes over the December 2013 Advance Request, the Reorganized Debtors, subject to the proviso, hereby assign to New GM all of the Reorganized Debtors' tangible and intangible assets, and the proceeds thereof (except for (a) ▮▮▮▮▮▮▮▮▮▮▮▮

██████████████████████████████████████████████████████████████████████

██████, (b) ██████████████████████████████████████████████████████

████████████████████████████ and (c) ████████████████████████████

████████████████████████████████████████████) (collectively, the "<u>Assets</u>"), whether or not currently in the possession of the Reorganized Debtors, including, without limitation, those Assets identified on "Exhibit B" hereto (collectively, the "<u>Assignment</u>");  <u>provided</u>, <u>however</u>, that the term Assets shall not include real property but shall include only the proceeds of sale of any real property.  The grant of the Assignment is free and clear of all claims, other than existing valid liens, if any, and the rights of BB Solutions, LLC (collectively, with John Brooks, the "<u>Manager</u>") under Section IV.D of that certain Consulting Agreement**,** dated as of November 26, 2013, between DPH and BB Solutions, LLC, as amended, or amended and restated prior to or as of the date hereof (the "<u>Brooks Dissolution Consulting Agreement</u>").  A copy of the Brooks Dissolution Consulting Agreement in redacted form is annexed hereto as "Exhibit C".  New GM has reviewed and does not object to the terms of the Brooks Dissolution Consulting Agreement.

      6.      Within five (5) business days after the Reorganized Debtors' receipt of the "net proceeds" of any Asset, the Reorganized Debtors shall remit the amount of such net proceeds to New GM, subject to the terms and conditions of the Brooks Dissolution Consulting Agreement.  For the purposes hereof, the "net proceeds" of any Asset means the proceeds received from the collection or recovery of such Asset, net of the costs and expenses incurred in the collection or recovery thereof, including without

limitation, any fees paid by the Reorganized Debtors to a consultant to assist in such collection or recovery; _provided_, _however_, that "net proceeds" shall specifically exclude any costs or expenses already included in the "Budget/Draw Request".

7. The "Budget/Draw Request" attached hereto as "Exhibit A" represents a reasonable, arms'-length and good faith compromise of the disputes concerning the Advance Dispute including the December 2013 Advance Request, and is the product of the Reorganized Debtors' sound business judgment in view of the facts and circumstances of this case.

8. In further settlement of the Advance Dispute including disputes relating to the December 2013 Advance Request, New GM consents to: (a) payment of each of the forms of compensation and completion fee provided in that certain Consulting Agreement, dated October 6, 2009, by and between DPH and BB Solutions, LLC, as amended; and (b) the Brooks Dissolution Consulting Agreement. New GM also consents to the Reorganized Debtors' incurrence and satisfaction of the expenses identified on the "Budget/Draw Request" for the amounts set forth therein. The Manager shall supervise the dissolution of DPH and otherwise perform duties as set forth in the Brooks Dissolution Consulting Agreement. An amount equal to the "Budget/Draw Request" less amounts already paid or funded prior to dissolution in accordance with the "Budget/Draw Request" (the "Escrow Funds") shall be turned over by the Reorganized Debtors to the Reorganized Debtors' dissolution counsel, Cole, Schotz, Meisel, Forman & Leonard, P.A. (the "Escrow Account"), which Escrow Funds

shall be disbursed at the direction of the Reorganized Debtors to pay those expenses identified in the "Budget/Draw Request".

        9.      Subject to the provisos in this paragraph, the Reorganized Debtors may use the Escrow Account for any administrative expense of the dissolution of DPH within the following categories of expenses set forth in the "Budget/Draw Request": (a) "Operating Expenses - Paid, Due and Projected Through 12/31/13"; (b) "Long Term Property Obligations"; and (c) "Post 12/31/13 Projected Operating Expenses" (each, a "Bucket" and, collectively, the "Buckets"); provided, however, that (i) the amount spent for any particular Bucket may not exceed the amount set forth in the "Budget/Draw Request" for such Bucket (unless otherwise agreed to in writing by New GM); (ii) any funds remaining within a Bucket after all expenses set forth therein have been paid shall not be used to pay expenses set forth in any other Bucket (unless otherwise agreed to in writing by New GM); (iii) the Reorganized Debtors shall notify New GM of the total amount of any excess funds not needed for any particular Bucket within fifteen (15) days of such determination, and shall remit such funds to New GM at that time, subject to the terms and conditions of the Brooks Dissolution Consulting Agreement (unless otherwise agreed to in writing by New GM); and (iv) in no event shall any unused amounts allocated to any of the Buckets be used to pay the Professional Fees Bucket (as defined herein) (unless agreed to in writing by New GM). With respect to the category of expenses set forth in the "Budget/Draw Request" entitled "Professional Fees - Current Due and Projected for 3 Year Period post 12/31/13" (the "Professional Fees Bucket"), each law firm may be paid only from the

amount set forth in the "Budget/Draw Request" for that law firm. After a particular law firm has completed its services and received payment on account of all outstanding fees and expenses, the Reorganized Debtors shall notify New GM of the total amount of any excess funds not otherwise due to that law firm for services rendered theretofore, and shall remit such excess funds to New GM at that time, subject to the terms of the Brooks Dissolution Consulting Agreement. Notwithstanding the foregoing provisions of this paragraph, the Reorganized Debtors may substitute counsel identified in the Professional Fees Bucket with different counsel who will perform substantially the same services as counsel currently identified in the Professional Fees Bucket; <u>provided</u>, <u>however</u>, that such different counsel's fees and expenses shall only be payable from any amount remaining of the corresponding amount allocated in the "Budget/Draw Request" for the replaced counsel.

    10. New GM hereby withdraws its Notice of Deposition of John C. Brooks, dated November 22, 2013, and the document request annexed as "Exhibit A" thereto.

    11. On the Effective Date, New GM shall be deemed to have satisfied in full all of its past, present and future obligations under the Funding Agreement. New GM shall have no further obligation to provide funding to the Reorganized Debtors pursuant to the Funding Agreement or otherwise, including, without limitation, for (a) the settlement of any of State Court Claims (as defined in the

Settlement Stipulation) or (b) any other obligations incurred by the Reorganized Debtors.

12.  Upon the Effective Date, but subject to the timely payment of the Settlement Payment, and excluding any claims for the enforcement of the obligations under this Stipulation, New GM, for itself and its successors and assigns (collectively, the "GM Releasors"), hereby release, waive and forever discharge the Reorganized Debtors, the Manager, the Plan Administrator (as defined in the Case Closing Order) and their respective professionals and advisors (collectively, the "Released Parties") from any and all actions, attorneys' fees, charges, claims, costs, demands, expenses, judgments, liabilities and causes of action of any kind, nature or description, whether matured or unmatured, contingent or absolute, liquidated or unliquidated, known or unknown, direct or derivative, which the GM Releasors may now have or ever had against the Released Parties arising out of or based on any facts, circumstances, issues, services, advice or the like, occurring from October 6, 2009 through the Effective Date, that relate to, arise under or concern in any way the Funding Agreement, the Motion to Compel, the Advance Dispute or any dispute concerning the December 2013 Advance Request; provided, however, that nothing herein shall release the Released Parties from (a) claims determined in a final order by a court of competent jurisdiction to have constituted willful misconduct or gross negligence, and (b) obligations set forth in existing agreements between the GM Releasors (or a subset thereof) and the Released Parties (or a subset thereof) where there are continuing obligations owed by the Released Parties (or a subset thereof, excluding Mr. John C. Brooks in his individual

40000/9150-10117142v3                                9

capacity but not as a representative of the Reorganized Debtors) to the GM Releasors (or a subset thereof).

13. Upon the Effective Date, excluding any claims for the enforcement of the obligations under this Stipulation, the Reorganized Debtors, for themselves and on behalf of their subsidiaries, affiliates, agents, attorneys, employees, officers, directors, shareholders, successors, assigns, predecessors, members and representatives (including, without limitation, the Plan Administrator and the Manager) (collectively, the "Reorganized Debtors Releasors") hereby release, waive and forever discharge New GM and its subsidiaries and affiliates, and their officers, directors, agents, attorneys, successors and assigns (collectively, the "GM Releasees"), from any and all actions, attorneys' fees, charges, claims, costs, demands, expenses, judgments, liabilities and causes of action of any kind, nature or description, whether matured or unmatured, contingent or absolute, liquidated or unliquidated, known or unknown, direct or derivative, which the Reorganized Debtors Releasors may now have or ever had against the GM Releasees arising out of or based on any facts, circumstances, issues, services, advice or the like, occurring from the beginning of time through the Effective Date that relate to, arise under or concern the Funding Agreement, the Motion to Compel, the Advance Dispute or any dispute concerning the December 2013 Advance Request.

14. New GM agrees that the Manager and the Plan Administrator shall be released in accordance with the Order closing the Reorganized Debtors' bankruptcy cases.

15. From and after the date of dissolution, the Reorganized Debtors shall, on a quarterly basis and within 45 days after the close of the preceding quarter, provide to New GM a written report identifying the receipts and disbursements of the Reorganized Debtors during the preceding quarter, and in the aggregate showing the variances in the line items in the "Budget/Draw Request". Upon prior reasonable notice to the Reorganized Debtors and at the sole cost and expense of New GM, the Reorganized Debtors shall permit representatives, agents and/or employees of New GM to have reasonable access to its books and records during normal business hours and shall cooperate with and provide to such persons all such information concerning the receipts and disbursements of the Reorganized Debtors as they may reasonably request on a quarterly basis. The Reorganized Debtors agree that they will keep New GM reasonably apprised of all material developments in the course of the dissolution, and that they will promptly comply with any reasonable inquiries by New GM for information maintained in the ordinary course of the Manager's business.

16. On the date that the dissolution of the Reorganized Debtors is complete, which shall be not later than (a) three (3) years from the date the certificate of dissolution is filed by DPH with the Delaware Secretary of State or (b) such other date that may be set by the Delaware court overseeing the dissolution of the Reorganized Debtors, the Reorganized Debtors and the Escrow Agent shall promptly remit to New

GM all remaining cash held by the Reorganized Debtors in reimbursement of the Outstanding Advance.

17. In the unlikely event that New GM shall receive an amount greater than ███████ pursuant to this Stipulation (inclusive of the Settlement Payment) it shall return such excess amount to the Reorganized Debtors.

18. Subject to the approval of this Stipulation, New GM shall not oppose entry of an order by the Bankruptcy Court closing the Open Cases or entry of a Final Decree (as defined in the *Order Pursuant to 11 U.S.C. §§ 105, 350(a), and 1142, Fed. R. Bankr. P. 3022, and Local Bankr. R. 3022-1 Concerning Closing the Bankruptcy Cases and Providing Related Relief*, entered on August 6, 2013 [Docket No. 22121] (the "Case Closing Order")); provided, however, that New GM is in receipt of the Settlement Payment in accordance with paragraph 3 hereof prior to the Open Cases being closed.

19. The Clerk of the Bankruptcy Court is authorized and directed, pursuant to Section 107 of the Bankruptcy Code, to file a redacted form of this Stipulation and Order in a form acceptable to the Parties and approved by the Bankruptcy Court.

20. The signatories below represent that they are authorized to enter into this Stipulation.

21. This Stipulation contains the entire agreement between the Parties with respect to the subject matter hereof and supersedes all other prior agreements, understandings, representations or warranties between the Parties. In the event of a

conflict between the terms of the Funding Agreement or the MDA and this Stipulation, the terms of this Stipulation shall control.

22. This Stipulation may not be modified or terminated, nor any of its provisions waived, except by written agreement of the Parties.

23. This Stipulation shall be binding upon and inure to the benefit of the Parties hereto and each of their respective successors and assigns. Except as otherwise provided herein, nothing in this Stipulation, whether express or implied, is intended to confer third-party beneficiary status or otherwise confer any rights or remedies on any person or entity, other than: (a) the Parties and their successors and assigns; (b) other entities obtaining releases hereunder and under the Final Decree to the extent of such releases only; and (c) the Manager.

24. No Party shall be deemed to be the drafter of this Stipulation for any purpose. Accordingly, this Stipulation shall be interpreted and construed in a neutral manner in accordance with the plain meaning of the language contained herein, and shall not be presumptively construed against any Party.

25. This Stipulation may be executed in counterparts, by either an original signature or signature transmitted by facsimile transmission or other similar process, and each copy so executed shall be deemed to be an original and all copies so executed shall constitute one and the same agreement.

26. The Bankruptcy Court has and shall continue to retain jurisdiction to hear any matters or disputes arising from or relating to this Stipulation.

*[signature page to follow]*

*[signature page to follow]*

Dated:   New York, New York
    December 13, 2013

               DPH HOLDINGS CORP., et al.,
               By Their Attorneys
               TOGUT, SEGAL & SEGAL LLP
               By:


               By: /s/ Neil Berger
               NEIL BERGER
               STEVEN S. FLORES
               One Penn Plaza, Suite 3335
               New York, New York 10119
               (212) 594-5000

Dated:   New York, New York
    December 13, 2013

               GENERAL MOTORS LLC
               By Their Attorneys
               KING & SPALDING LLP
               By:


               By: /s/ Scott Davidson
               ARTHUR J. STEINBERG
               SCOTT DAVIDSON
               1185 Avenue of the Americas
               New York, New York 10036
               (212) 556-2100

**SO ORDERED**

this 16th day of December, 2013
in New York, New York, the Court having reviewed the un-redacted stipulation and exhibits

/s/Robert D. Drain
HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE