Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 05-44481-rdd

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    DPH HOLDINGS CORP, ET AL,

8

9            Debtors.

10

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13                    U.S. Bankruptcy Court

14                    300 Quarropas Street

15                    White Plains, NY

16

17                    December 12, 2013

18                    2:01 PM

19

20   B E F O R E :

21   HON ROBERT D. DRAIN

22   U.S. BANKRUPTCY JUDGE

23

24

25

1    Hearing re:  Reorganized Debtors' Motion for an Order to

2    Compel Compliance with, and to Implement, the Modified Plan,

3    Plan Modification Order and Related Documents (ECF #22075)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Melissa Looney

1    A P P E A R A N C E S :

2    TOGUT, SEGAL & SEGAL, LLP

3         Attorneys for Debtors

4         One Penn Plaza

5         New York, NY 10119

6

7    BY:  NEIL BERGER, ESQ.

8         STEVEN S. FLORES, ESQ.

9

10   FRIEDMAN KAPLAN SEILER & ADELMAN LLP

11        Attorney for Mr. Brooks

12        7 Times Square

13        New York, NY 10036

14

15   BY:  BRUCE S. KAPLAN, ESQ.

16

17   KING & SPALDNG

18        1185 Avenue of the Americas

19        New York, NY 10036

20

21   BY:  ARTHUR J. STEINBERG, ESQ.

22

23

24

25

Page 4

1    ALSO APPEARING TELEPHONICALLY

2        TOM RADOM, ESQ.

3        BRUCE L. SENDECK, ESQ.

4        MICHAEL D. WARNER, ESQ.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2            THE COURT:  Okay.  DPH.

 3            You know whenever I watch them they go from being

 4      in front to losing.  So I've stopped watching them now

 5      because I'm jinxing them, so you're just the opposite.

 6            UNIDENTIFIED SPEAKER:  I think I'm qualified to be

 7      the Nicks coach.  I'll put Carmelo Anthony with the ball and

 8      tell the other Nicks they can sit on the bench and see

 9      whether that's good 48 minutes of basketball play to watch.

10            THE COURT:  All right.  So DPH Holdings.

11            MR. BERGER:  I'm a Yankee fan, so -- rough days.

12      Thank you for the extra time, Your Honor.   I'm Neil Berger

13      of Togut, Segal & Segal.  We are counsel for the reorganized

14      debtors.  On Your Honor's calendar this morning was the

15      adjourned date for the debtors' motion to compel docket

16      22075.

17            THE COURT:  Right.

18            MR. BERGER:  That hearing was adjourned to deal

19      with the motion to compel.  We've reached an agreement in

20      principle.  We're trying to document it, but if I can very

21      generally tell Your Honor where we're headed on this bearing

22      in mind that Your Honor has entered a number of seal orders

23      and there is commercially sensitive information that we

24      don't want to disclose, certainly not as I --

25            THE COURT:  Well, at this point, I think the only
```

Page 6

1    people on the phone are Michael Warner from Cole Schotz and

2    two people from Butzel Long.  And Ms. Golden, is there

3    anyone else on the phone?

4        (No response)

5            THE COURT:  All right.  So, this portion of the

6    transcript I guess will be sealed, right?  Or you just alert

7    me if to -- if there's a section that you think needs to be

8    sealed?

9            MR. BERGER:  I think -- you mentioned Ms. Golden?

10            THE COURT:  From the U.S. Trustee's Office.

11            MR. BERGER:  Oh, I'm sorry.  I know Ms. Golden.  I

12    think that for purposes of my presentation today, I simply

13    won't state dollar figures.

14            THE COURT:  All right.

15            MR. BERGER:  That's all.

16            THE COURT:  Okay.

17            MR. BERGER:  Your Honor may recall that there was

18    a motion to compel and seek enforcement of the plan to help

19    fund the debtors' financial needs.  We entered into a

20    partial settlement stipulation in October that Your Honor so

21    ordered.  GM and the debtors complied.  There was funding

22    Your Honor approved the environmental settlement.  That's

23    closed, that is fully funded.

24            And then there was a funding request made by the

25    debtors.  As a result of Mr. Brooks' good efforts, actually

Page 7

1     the debtors' financial situation and balance sheet has

2     changed such that we don't need funding from GM.  So our

3     request in the motion to compel is moot.

4           We have worked very hard and there's been some

5     arm's length negotiations, extensive negotiations and we've

6     come to an agreement such that the debtors will have cash on

7     hand to fund their needs to go into dissolution adequately

8     prepared.  A sum certain will be paid to General Motors, New

9     GM rather and there are time tables set forth in our

10    stipulation.

11          Mr. Brooks will continue at the helm for the

12    reorganized debtors.  Certainly his institutional knowledge

13    is very helpful and there is a consulting agreement that New

14    GM has been negotiating with Mr. Brooks and Mr. Brooks is

15    represented by counsel who is here with us today.

16          And those are the general concepts, Your Honor.

17    There will be releases exchanged and they will be set forth

18    in the stipulation for Your Honor to see.

19          THE COURT:  Can I make sure I understand one

20    thing?

21          MR. BERGER:  Yes.

22          THE COURT:  You said that the debtors don't

23    need -- DPH doesn't need any more money from GM.  That's

24    pre-dissolution?

25          MR. BERGER:  Pre-dissolution and --

1            THE COURT:  It's contemplated that there will need

2    to be some funding for some purpose post dissolution and

3    that's why you have this arrangement with --

4            MR. BERGER:  Yeah.  And to answer Your Honor's

5    question --

6            THE COURT:  Okay.

7            MR. BERGER:  -- with the A settlement, that

8    (indiscernible) odd dollars came in GM asserted that it was

9    entitled to sweep all of that money and it wasn't required

10   to leave any money behind.  And the reorganized debtors

11   disagreed with that and set forth a budget and said this is

12   what we need to fund to address expenses that it anticipates

13   to incur in the course of the dissolution.

14           THE COURT:  Okay.

15           MR. BERGER:  So that money is staying behind.  A

16   balance of cash on hand will be paid over to New GM.  The

17   debtors have -- reorganized debtors have interests in other

18   assets that are being assigned to New GM.  You'll recall

19   that under the funding agreement and the MDA there are

20   certain repayment obligations for advances and we're

21   addressing those in our settlement.  Again, Mr. Brooks will

22   have a continuing role here.

23           THE COURT:  Which GM will fund if necessary?

24           MR. BERGER:  We've actually figured out what that

25   compensation is and there's an --

Page 9

1           THE COURT:  All right.

2           MR. BERGER:  -- incentive there.

3           THE COURT:  Right.

4           MR. BERGER:  And that's been provided for.  The

5    base compensation and the incentive is being memorialized in

6    an agreement.

7           THE COURT:  Okay.

8           MR. BERGER:  Provided that we document it as we're

9    -- I think we're close to being finished documented, New GM

10   won't have an objection to case closing.  And I think that

11   generally summarizes the significant points of what we're

12   going to present o Your Honor in a stipulation in the next

13   day or so.  Mr. Steinberg will stand to correct me in a

14   moment or supplement if I've missed something.

15           But I did want to state for the record, Your

16   Honor, that this agreement is the culmination of some very

17   extensive negotiations about some very hotly contested and

18   complex issues.

19           THE COURT:  Well there's also a moving part so you

20   had to deal with that too.

21           MR. BERGER:  I didn't --

22           THE COURT:  There were also moving parts.

23           MR. BERGER:  Yes.  And we've tried to gauge them

24   as best we could and address the rights and claims of the

25   people who are engaged in this contested matter.  But these

1   are very complex issues and certainly if we go forward in

2   litigation and we're trying -- I think we've gotten to the

3   point we're not -- but if we had to it would certainly be

4   very costly and extensive litigation.  And I think both

5   sides would agree that there's some risk here.  So we think

6   that -- and then the debtors believe that this is a proper

7   exercise of their business judgment and they are prepared to

8   finalize the documentation and be finished with this matter.

9           THE COURT:  Okay.  Well on that score, as far as

10  timing is concerned, I have a hearing scheduled on the 18th.

11          MR. BERGER:  Yes.

12          THE COURT:  And what are you looking to dissolve?

13          MR. BERGER:  Before then and we're going to have

14  this stipulation signed up before the 18th.

15          THE COURT:  Okay.

16          MR. BERGER:  And I'm sure --

17          THE COURT:  But that's really kind of a drop dead

18  date, I guess, right?

19          MR. BERGER:  Yeah, yeah.

20          THE COURT:  All right.

21          MR. BERGER:  And we've all tried very hard to

22  figure in that mechanism and how to deal with it and I think

23  it's fair to say --

24          THE COURT:  Well, I mean, it -- I need -- I mean,

25  you're going to lose your window with me because my calendar

Page 11

```
 1    is really full.

 2              MR. BERGER:  Yes.  We are --

 3              THE COURT:  And I have commitments, I'm doing a

 4    couple days mediation and just, you know --

 5              MR. BERGER:  Yeah.

 6              THE COURT:  -- that's the last time you can raise

 7    any dispute with me.

 8              MR. BERGER:  Yeah.  Yeah.

 9              THE COURT:  Okay.

10              MR. BERGER:  Understood.  And that's all I have.

11    I'm certain Mr. Steinberg has some words for the Court as

12    well.

13              MR. STEINBERG:  Good morning, Your Honor.  I think

14    Mr. Berger made an accurate presentation.

15              THE COURT:  Okay.

16              MR. STEINBERG:  But to try to add a little color

17    so Your Honor understands a little of back and forth and

18    some of which was (indiscernible) in the context of our

19    motion to adjourn.

20              There was an irony about me filing a request to

21    adjourn a motion, which there was no obligation anymore

22    to --

23              THE COURT:  Well, now you're fighting about what

24    money should come back to GM.

25              MR. STEINBERG:  That's correct.
```

Page 12

1           THE COURT:  Right.  Okay.

2           MR. STEINBERG:  So, Your Honor, just as a -- to

3      give a color, because ultimately we're going to be handing

4      up an order to Your Honor to approve and I just wanted to

5      give you a little more background.

6           The funding agreement that GM had committed to

7      back in 2009 provided for a window of financing and it

8      contemplated really that everything would have been finished

9      by the end of the his year and that the funding would happen

10     by the end of this year.  And it turned out that that is

11     probably true for substantially everything.  But like

12     everything in life, it wasn't a complete story.

13          So as we got close to the end, as the debtor was

14     appearing before you on a number of occasions, the

15     reorganized debtors as to what they needed to do to close

16     the matter, there were other issues that sort of propped up.

17     And the big issue -- the big (indiscernible) item was the

18     environmental settlement.  And we knew that we -- at the end

19     of the day -- if we thought that was our obligation, it was

20     going to be a substantial sum.

21          And at the time that we funded it, we funded it

22     based on what we had thought the present position of the

23     reorganized debtors were.  It turned out that after we had

24     committed to fund that amount, that the debtors had cut

25     deals on and concluded the A stipulation and there was an

Page 13

1    aspect of the environmental settlement that we didn't see,

2    which led to millions of dollars coming back to the

3    reorganized debtors so that we knew at that point in time,

4    we clearly had overfunded the funding.

5         At the same point, as the debtor got closer to the

6    last month, it really had to do with a sharp pencil as to

7    what does it really need to deal with during the dissolution

8    process, the cost and expenses of doing it.  And they

9    generally -- and this is my view.  I'm sure it's not their

10   view.  They generally would budget towards the higher side

11   of the world because you needed to anticipate the unknown

12   and they knew this was their last --

13        THE COURT:  Well I hope they did.

14        MR. STEINBERG:  Yeah, that was their last request

15   for funding.

16        THE COURT:  I would want them to.

17        MR. STEINBERG:  Right.  So that was the back and

18   forth that we were going because that affected how much

19   money --

20        THE COURT:  Right.

21        MR. STEINBERG:  -- we would get back.  And so when

22   you'll see the stipulation, you'll see money coming back to

23   GM, a substantial new budget that's being presented, which

24   will give them monies to run through the dissolution for a

25   three year period and it will involve a new arrangement with

1    Mr. Brooks who is the person who has been administering this

2    estate and will carry forward to that period of time.

3                THE COURT:  And I'm assuming that there's probably

4    something in there that says if he ends up with a surplus it

5    goes back to GM too?

6                MR. STEINBERG:  That's correct, Your Honor.

7                THE COURT:  Okay.

8                MR. STEINBERG:  And it provides that the -- when

9    we saw that there was monies coming back on the

10   (indiscernible) -- and there was monies coming back on the

11   environmental settlement, we did ask what other monies that

12   we are not presently aware of that may come back.  So they

13   listed theoretical potential assets that are coming back.

14   And as always, we try to make sure that we had the complete

15   list.  And so the stipulation that will be presented to you

16   will provide for assignments of that.  Because under all

17   calculations, we will never get paid back in full the monies

18   that we advanced for the environmental settlement.

19                And the way that the funding agreement was

20   structured was that each month we were supposed to get

21   reimbursed from extra assets from that month to pay us back

22   on our advance.  So that was the reason why it was -- became

23   a little more complex and a little more contested.

24                THE COURT:  Okay.

25                MR. STEINBERG:  But I think we are at the stage

Page 15

1   now where we have it all pinned down and we have something

2   to present to Your Honor in the next few days.

3           THE COURT:  All right.  So I'll look for that.

4           I don't remember whether you have to give notice

5   to particular people for something like this under the wind

6   down.

7           MR. STEINBERG:  We don't think we do, Judge.

8           THE COURT:  Okay.  You probably don't.  I think

9   Mr. Brooks has the last say on it.  Okay.

10          MR. KAPLAN:  Bruce Kaplan, Friedman Kaplan Seiler

11  & Adelman representing Mr. Brooks --

12          THE COURT:  Okay.

13          MR. KAPLAN:  -- n this unfamiliar context.

14          THE COURT:  Good afternoon.

15          MR. KAPLAN:  Good afternoon, Your Honor.

16          MR. BERGER:  So, Your Honor, I think I -- Mr.

17  Steinberg articulated his client's position and he

18  identified a number of the issues that were hotly contested.

19          THE COURT:  Well that's the context to your

20  settlement and I -- reading between the lines, I thoughts

21  that where you were and --

22          MR. BERGER:  Yeah.

23          THE COURT:  -- that's a reasonable way to end up

24  as long as you all have been appropriately conservative in

25  reserving money for the wind down and I'm assuming you have.

Page 16

1    So I'll look for that stip -- is it going to be a

2    stipulation order?

3              MR. BERGER:  Yes, Judge.

4              THE COURT:  That's fine.

5              MR. BERGER:  Thank you again for the extra time

6    this morning (indiscernible).

7              THE COURT:  Thank you for resolving it.

8              MR. STEINBERG:  Thank you, Judge.

9              THE COURT:  Okay.

10        (Proceedings concluded at 2:14 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              C E R T I F I C A T I O N

2

3     I, Melissa Looney, certify that the foregoing transcript is

4     a true and accurate record of the proceedings.

5     Melissa Looney    Digitally signed by Melissa Looney
                        DN: cn=Melissa Looney, o=Veritext,
                        ou, email=digital@veritext.com, c=US
6     _____    Date: 2014.01.07 10:49:22 -05'00'

7     MELISSA LOONEY

8     AAERT Certified Electronic Transcriber CET - 607

9

10

11    Veritext

12    330 Old Country Road

13    Suite 300

14    Mineola, NY 11501

15

16    Date:  December 18, 2013

17

18

19

20

21

22

23

24

25