UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

JAMES B. SUMPTER,

         *Appellant*,

-*against*-

DPH HOLDINGS CORP., *et al.*,

         *Appellees.*

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-5-14

Case Nos.:

13 Civ. 6432 (PAC)
13 Civ. 8987 (PAC)

**MEMORANDUM & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

    James B. Sumpter appeals two orders of the Bankruptcy Court of the Southern District of New York (dated May 28 and November 4, 2013) enjoining his pursuit of two federal lawsuits in the Southern District of Indiana, which allege that his disability benefits were unlawfully terminated.[1] In 2009, almost four years prior to those lawsuits, the Bankruptcy Court had approved a reorganization plan for his employer, which discharged its debts for "any employee or retiree benefit program" and enjoined the pursuit of any claims which arose before the reorganization date. Pursuant to its 2009 orders, the Bankruptcy Court enjoined both of Sumpter's lawsuits. For the reasons below, the Bankruptcy Court's injunction orders are affirmed.

## BACKGROUND

    Appellant James B. Sumpter was formerly employed by Delphi Automotive Systems as an electrical engineer. He was disabled in 2000 and retired on long-term disability in 2002.

---

[1] Since the issues in these two appeals are substantially identical, the Court considers them together.

Having participated in the Delphi Life and Disability Benefit Program ("the Benefit Plan"), he contends that he was entitled to a lump-sum life insurance payout of $100,000. In January 2004, Sumpter made his initial request for the payout. Delphi's benefits administrator, the Metropolitan Life Insurance Company ("MetLife"), responded by sending Sumpter a form to fill out, which he contends was the incorrect form.

Sumpter then waited more than five years to resubmit his claim on March 12, 2009. By then, Delphi was in the midst of bankruptcy proceedings, and as of February 4, 2009, Delphi had already moved for permission to terminate certain employer-paid post-retirement benefits. (R.[2] Tab 1.) Sumpter, along with many others, objected to this motion. (*See* R. Tab 3). In February 2009, Bankruptcy Judge Robert D. Drain held an evidentiary hearing in which a court-appointed committee of retirees argued that they had vested rights in the Benefit Plan. The Bankruptcy Court disagreed, however, and on March 11, 2009 issued a "Final OPEB Termination Order"[3] concluding that "none of the Salaried OPEB benefits have vested with regard to any Eligible Salaried Retiree group hereof." (R. Tab 6, ¶ 1.) That order provided that Delphi was "authorized, but not directed, to terminate salaried OPEB benefits," defined as "the Debtors' current and future costs associated with providing post-retirement health and life insurance benefits to salaried retirees and their surviving spouses." (*Id.* ¶ 4.)

By letter dated June 3, 2009, MetLife denied Sumpter's claim. (First Injunction Motion (Bankr. Dkt. 22042), Ex. 7.) As of that date, Delphi had not yet elected to terminate the OPEB

---

[2] References to the Record ("R.") are to Appellant's Designation of Record on Appeal, filed in Case No. 13-CV-8987 (ECF No. 6). "R. Supp." refers to the documents submitted by Appellees to supplement the record, by letter dated January 31, 2014. (Case No. 13-CV-8987, ECF No. 20.)

[3] Although not defined in the parties' submissions, "OPEB" is an acronym for "other post-employment benefits," which commonly refers to benefit plans for retirees "relat[ing] to health, disability, and life insurance benefits." *See In re DPH Holdings Corp.*, 468 B.R. 603, 606 (S.D.N.Y. 2012) (Engelmayer, J.).

2

benefits, but MetLife's denial of Sumpter's claim was on the merits. By letter dated July 31, 2009, Sumpter appealed, and he enclosed a benefit plan description issued by General Motors (Delphi's predecessor prior to Delphi's spin-off), dated March 1992, in support of his claim. (*Id.* Ex. 12). MetLife responded on March 20, 2010 that "the provision that allowed a payout . . . was eliminated effective January 1, 1994," and that the change had been "communicated to all salaried employees" at that time. (*Id.* Ex. 6.)

In the meantime, Delphi's bankruptcy case had been proceeding apace: on July 30, 2009, the Bankruptcy Court approved Delphi's Modified Plan for reorganization. (R. Supp. Tab 3). That "Plan Modification Order" incorporated the Modified Plan's broad discharge of debts, including liability for "termination of any employee or retiree benefit program." (*Id.* ¶ 20 & Ex. A § 11.2.) The order also enjoined all claims arising before the reorganization plan was consummated. (*Id.* ¶ 22 & Ex A. § 11.14.) The Modified Plan was consummated on October 6, 2009, when Delphi emerged from Chapter 11 bankruptcy as DPH Holdings Corp. (*See* First Injunction Motion, Ex. E, ¶ 9.) In an effort to preserve his claims, on July 8, 2009, Sumpter had submitted an Administrative Expense Claim to the Bankruptcy Court. (*Id.* Ex. 2.) DPH objected (*id.* Ex. 13), and on December 2, 2009, the Bankruptcy Court entered an order disallowing and expunging Sumpter's claim in its entirety (*id.* Ex. 3). Sumpter did not appeal.

Instead, Sumpter waited more than three years, and then he adopted a new strategy. In March and June, 2013, he filed two similar complaints in the U.S. District Court for the Southern District of Indiana, claiming that the denial of the lump-sum benefit violated the Employee Retirement Income Security Act ("ERISA"). DPH moved in the Bankruptcy Court to enjoin Sumpter's lawsuits.

Sumpter opposed the motions, contending that the Bankruptcy Court lacked the authority

3

to enter the injunctions because his ERISA claims were not "core proceedings" under the Bankruptcy Code. In response to the Second Motion, Sumpter further argued that he was not precluded from litigating his claims because his disability benefits were never made part of the bankruptcy estate or expressly covered by the Bankruptcy Court's prior orders. The Bankruptcy Court disagreed: it concluded that the injunction motions were "core" proceedings and, after holding an evidentiary hearing, found that that Sumpter's disability claims were barred by its prior orders. Accordingly, the Bankruptcy Court enjoined the two actions in Indiana. Sumpter appeals the injunctions.

## DISCUSSION

### I.  Standard of Review

"A district court has jurisdiction to hear appeals from final judgments, orders, or decrees by the bankruptcy court under 28 U.S.C. § 158(a)(1)." *In re PlusFunds Grp., Inc.*, 505 B.R. 419, 424 (S.D.N.Y. 2014). "Findings of fact . . . shall not be set aside unless clearly erroneous . . . ." Fed. R. Bankr. P. 8013. "Under the clear error standard, there is a strong presumption in favor of a trial court's findings of fact if supported by substantial evidence, and a district court will not overturn factual findings unless it is left with the definite and firm conviction that a mistake has been made." *In re DPH Holdings Corp.*, 468 B.R. 603, 611 (S.D.N.Y. 2012) (quotation marks omitted). "A bankruptcy court's legal conclusions are, however, reviewed *de novo*." *Id.*

"A bankruptcy court's interpretation of its own order is typically given deference on appeal and reviewed for abuse of discretion." *In re The 1031 Tax Grp., LLC*, No. 10-CV-2799, 2011 WL 1158445, at *1 (S.D.N.Y. Mar. 29, 2011); *accord In re Quigley Co., Inc.*, 449 B.R. 196, 201 (S.D.N.Y. 2011) *aff'd*, 676 F.3d 45, 58 (2d Cir. 2012) ("[W]e typically accord a bankruptcy court's interpretation of its own order 'customary appellate deference.'").

4

Nonetheless, "[t]he Bankruptcy Court's interpretation of the text of the [reorganization] Plan [and] the Confirmation Order . . . are conclusions of law reviewed *de novo*." *In re Kalikow*, 602 F.3d 82, 91 (2d Cir. 2010).

## II.     The Bankruptcy Court's Authority to Adjudicate "Core" Proceedings

Under 28 U.S.C. § 1334(b), "[t]he United States District Court has original jurisdiction over matters 'related to' a case arising under the Bankruptcy Code." *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 463 (S.D.N.Y. 2011). "[A] civil proceeding is related to a [bankruptcy] case if the action's outcome might have *any conceivable effect* on the bankrupt estate." *Id.* (quoting *Parmalat Capital Finance Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011)) This bankruptcy jurisdiction, however, "is exercised by both the District Court and the Bankruptcy Court, depending on the nature of the proceedings." *Id.*

"Bankruptcy judges may hear and determine all cases under [the Bankruptcy Code] and all *core proceedings* arising under [the Bankruptcy Code], or arising in a case under [the Bankruptcy Code]," subject to review by the district court. 28 U.S.C. § 157(b)(1) (emphasis added). For non-core proceedings, however, a bankruptcy judge may only "submit proposed findings of fact and conclusions of law" for the district court's review before entry of any final order or judgment. *Id.* § 157(c)(1).[4] In this District, pursuant to 28 U.S.C. § 157(a), "all proceedings related to a bankruptcy case, whether core or non-core, are automatically referred to the Bankruptcy Court in the first instance." *Dev. Specialists*, 462 B.R. at 463; *see* Amended Standing Order of Reference, No. 12-MC-32 (S.D.N.Y. Jan. 31, 2012).

The Second Circuit has construed the term "core proceedings," "expansively," giving it a

---

[4] Although this statutory regime "allocates the authority to enter final judgment between the bankruptcy court and the district court," the Supreme Court has noted that it "does not implicate questions of subject matter jurisdiction." *Stern v. Marshall*, 131 S.Ct. 2594, 2607 (2011).

5

"broad interpretation that is close to or congruent with constitutional limits." *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010). "Proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, . . . or (2) the proceedings directly affect a core bankruptcy function." *In re Petrie Retail, Inc.*, 304 F.3d 223, 229 (2d Cir. 2002).

Here, the Bankruptcy Court correctly determined that the injunction motions were "core proceedings." As Judge Drain held, the Bankruptcy Court had "the power to interpret and enforce [its prior] orders, particularly where . . . the underlying dispute arises over a bankruptcy plan of reorganization or the order confirming that plan." (4/25/13 Tr. at 55 (Bankr. Dkt. 22056).) Both injunctions involve interpreting the Final OPEB Termination Order and the Plan Modification Order to determine whether Sumpter's benefits were covered by those orders. Indeed, it is well established that "the Bankruptcy Court plainly ha[s] jurisdiction to interpret and enforce its own prior orders," particularly where, as here, its prior Plan Modification Order "explicitly retained jurisdiction to enforce its injunctions." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009).

Accordingly, upon *de novo* review, this Court affirms the Bankruptcy Court's determination that the two injunction motions at issue were "core proceedings" that it had the authority to adjudicate.

### III. Scope of the Injunctions

Sumpter makes several related arguments that the injunction orders inappropriately exceeded the scope of the bankruptcy estate:

1. The Benefits Plan could never have been part of the bankruptcy estate in the first instance because it constituted vested assets held by a fiduciary, which were therefore not subject to discharge in bankruptcy.

2. Even if his benefits could have been discharged, they were not in fact discharged here because neither the Final OPEB Termination Order nor the Plan Modification Order specifically referenced them.

3. No injunction against claims as to the Benefit Plan can issue because it was a third party whose debts were not subject to discharge in the bankruptcy proceedings.

The time has come and gone for Sumpter's arguments.

The first argument is essentially an untimely appeal of various orders entered in the bankruptcy proceedings in 2009. *See* Fed. R. Bankr. P. 8002 (notice of appeal must be filed within 14 days). The OPEB Termination Order, for instance, considered and rejected the retiree committee's argument that its members had vested rights in the Benefit Plan. Furthermore, the Plan Modification Order discharged liability for "termination of any employee or retiree benefit program" (Plan Modification Order ¶ 20 & Ex. A § 11.2), and the Bankruptcy Court denied Sumpter's Administrative Expense Claim shortly thereafter. As Judge Drain observed in granting the First Injunction Motion, these were final orders, which Sumpter did not appeal or make a request for reconsideration or vacatur. (4/25/13 Tr. at 57.) *See generally In re Quigley*, 676 F.3d at 51 ("The standards for determining finality in bankruptcy differ from those applicable to ordinary civil litigation.'" . . . Accordingly, we regard as final 'orders that finally dispose of discrete disputes within the larger case.'") The Bankruptcy Court properly concluded that, to the extent that Sumpter's claims were previously determined by its prior orders, these claims are barred as res judicata. (*See* 4/25/13 Tr. at 59–63; 9/26/13 Tr. at 53–54.)[5] *See EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) ("Under the doctrine

---

[5] For the reasons stated in the Bankruptcy Court's April 25, 2013 bench order, the Court also affirms its determination that Sumpter's other claims in his first federal action are subject to the Plan Modification Order's injunction that such claims must be liquidated in the Bankruptcy Court. (*See* 4/25/13 Tr. at 64–66; First Injunction Order ¶ 8 (Bankr. Dkt. 22063).)

7

of *res judicata,* or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.' . . . This rule applies with full force to matters decided by the bankruptcy courts.").

As for Sumpter's argument that the 2009 orders did not cover some of his claims, the Bankruptcy Court held an evidentiary hearing on October 21, 2013 and found to the contrary. The Bankruptcy Court considered, *inter alia*, witnesses called by the parties and evidence that had been presented in 2009 in connection with the retiree committee's arguments that they had vested rights in the Benefit Plan. (*See* 10/21/13 Tr. at 70–71.) Although the Bankruptcy Court agreed with Sumpter that his disability benefits were not specifically listed as subject to termination in the Final OPEB Termination Order, it nonetheless found that the issue was subject to collateral estoppel because "the issue of termination rights for those on disability was directly before the Court and actually decided in order to decide the OPEB motion." (*Id.* at 73.) Therefore, the Bankruptcy Court concluded that its prior decision "is now binding on Mr. Sumpter when he is quite candidly again alleging that it was the wrongful termination of his disability benefits that gives rise to his claims." (*Id.*) To the extent this determination relied on factual findings, this Court has reviewed the record for clear error and finds none. *Cf. In re Quigley*, 676 F.3d 45, 58 ("[W]e typically accord a bankruptcy court's interpretation of its own order 'customary appellate deference.'"). Upon *de novo* review of the Bankruptcy Court's determination that these findings preclude Sumpter from arguing to the contrary in opposing the second injunction, the Court agrees. Since Sumpter "was a party to the OPEB motion and had a full and fair opportunity to litigate the issue" (10/21/13 Tr. at 73), and the question of the termination of his benefits was necessarily decided, he cannot be heard now to argue the contrary in opposing the present injunctions. *See Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973,

983 (1st Cir. 1995) ("[T]he issue of the bankruptcy court's power to enter its . . . injunction was precluded, having been conclusively resolved in the confirmation order which [the enjoined party] neither opposed nor appealed.").

Finally, to the extent that Sumpter's third argument is not duplicative of the other two, it too is untimely. In his September 26, 2013 bench ruling, Judge Drain stated, "I also believe that the claims against the agents of the debtor are enjoined, they're exculpated for taking actions in accordance with the plan." (9/26/13 Tr. at 53–54.) Sumpter did not argue then—or at the subsequent October 21, 2013 evidentiary hearing—his current theory that a third party to the bankruptcy cannot benefit from such an injunction even where it is the debtor's agent. Therefore, this issue cannot be raised for the first time here on appeal. Furthermore, even if he had raised this issue, the terms of the 2009 Modified Plan would have been preclusive. It provided for "an injunction against any Person commencing or continuing any action . . . to collect, offset, or recover any Claim . . . discharged under this Plan." (Modified Plan § 11.14.)[6] If Sumpter had objections to this aspect of the injunction, he should have raised them—or appealed—in 2009.

The Court has considered Sumpter's other arguments and finds them to be without merit.

\* \* \* \*

---

[6] "Person," in turn, was broadly defined as "an individual, corporation, . . . or other entity." (Modified Plan § 1.173.)

9

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's injunction orders dated May 28, 2013 (Bankr. Dkt. 22063) and November 4, 2013 (Bankr. Dkt. 22210) are AFFIRMED. The Clerk of Court is directed to enter judgments and terminate 13 Civ. 6432 (PAC) as well as 13 Civ. 8987 (PAC).

Dated: New York, New York
September 5, 2014

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge