**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

*Counsel for Solus Alternative Asset Management LP
and Angelo, Gordon & Co., L.P.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | x<br>:<br>: | Chapter 11<br>Case No. 05-44481 (RDD) |
| DPH HOLDINGS CORP., et al., | :<br>: | Jointly Administered |
| Reorganized Debtors. | :<br>x | |

**MOTION OF SOLUS ALTERNATIVE ASSET MANAGEMENT LP AND ANGELO GORDON & CO., L. P., PURSUANT TO SECTIONS 105(A) AND 350(B) OF BANKRUPTCY CODE AND RULE 5010 OF FEDERAL RULES OF BANKRUPTCY PROCEDURE, TO REOPEN DPH HOLDINGS CORP. CHAPTER 11 CASE**

Solus Alternative Asset Management LP ("Solus") and Angelo, Gordon & Co., L.P. ("Angelo Gordon"), on behalf of certain funds they manage or control (collectively, the "Delphi GUCs"), in their capacities as holders of general unsecured claims against former Delphi Corporation and certain of its subsidiaries (the "Debtors" or "Old Delphi"), hereby move (the "Motion"), pursuant to sections 105(a) and 350(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and Rule 5010 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an Order reopening the chapter 11 case of DPH Holdings Corp. for the sole purpose of prosecuting an adversary proceeding (the "Adversary Proceeding") against Delphi Automotive PLC and Delphi Automotive LLP (the "Company") seeking the declaratory relief set forth in the annexed complaint (the "Complaint") relating to amounts owing under the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors, And Debtors-In-Possession (As Modified) (the "Modified Plan") and, in support thereof, respectfully state as follows:

I.  PRELIMINARY STATEMENT

1. In March 2012, at the conclusion of an unrelated adversary proceeding concerning the Debtors' initial public offering, the Court made the prescient observation that to the extent Company distributions approached the $7.2 billion threshold set under the Modified Plan, unsecured creditors might renew their request for declaratory relief that the Company owes them the General Unsecured MDA Distribution.[1]  That time has come.  The Debtors will reach the threshold imminently.  And while the Court closed the Debtors' chapter 11 cases, the Final Decree did so without prejudice to the rights of general unsecured creditors with respect to the General Unsecured MDA Distribution.[2]  The Debtors' refusal to engage with the Delphi GUC's on the issue and their view, reflected in public filings, that distributions previously made do not count toward the threshold, leave the Delphi GUC's with little choice but to initiate the Adversary Proceeding.  The Delphi GUCs therefore request that the chapter 11 cases be reopened for that single purpose, so they can receive distributions committed to them years ago under the Modified Plan.

---

[1]  See Tr., Hearing, March 22, 2012, at 140:8-13 (noting "[if] either DAL or DAP … make distributions out of their assets to the owners which, when coupled with the payments that have already been made to GM and PBGC come close to or go over the 7.2 billion-dollar threshold, I believe that there would, in fact, be a basis for seeking declaratory relief, although I'm not going to rule today how I would determine such a request."); at 141:18-24 ("[I]f actual distributions by DAP and DAP get up towards the $7.2 billion when you factor in the GM and PBGC distributions, I can certainly conceive of a situation where a new complaint could be filed, which is why I'm not dismissing the complaint as a whole with prejudice, but only in respect to that component of it that deals with the IPO.") (the relevant portions of which are attached hereto as Exhibit A).

[2]  See Final Decree and Order Pursuant To 11 U.S.C. § 350(a) And Fed. R. Bankr. P. 3022 And Local R. Civ. P. 3022-1 Closing Chapter 11 Cases Of DPH Holdings Corp., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Texas Corporation, Delphi Mechatronic Systems, Inc., And Delphi Automotive Systems LLC [Docket No. 22254 in Chapter 11 Cases] at 4 (¶ 3)  (the "Final Decree") ("None of the entry of this final decree and order, the dissolution of DPH Holdings or any of the other relief contemplated by this final decree and order or the Case Closing Order shall prejudice or otherwise limit the rights of holders of General Unsecured Claims to receive payment of the General Unsecured MDA Distribution (as such terms are defined in the Modified Plan) in accordance with the terms of the Modified Plan.") (attached as Exhibit B).

2

## II. RELEVANT FACTUAL BACKGROUND

### A. OLD DELPHI'S CHAPTER 11 CASES

2. On October 8, 2005, Old Delphi filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code (the "Chapter 11 Cases") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

3. In 2007, the Debtors filed their First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates (the "Original Plan"), which provided for holders of general unsecured claims—estimated at more than $3.2 billion—to receive payment in full, including accrued interest. The Original Plan was confirmed on January 25, 2008. Due to the collapse of the exit financing needed to fund distributions, the Debtors abandoned the distribution scheme under the Original Plan.

4. Thereafter, on June 1, 2009, the Debtors proposed modifications to the Original Plan that drastically reduced the distributions to general unsecured creditors. After general unsecured creditors objected to the proposed modifications, a compromise was reached on the eve of the confirmation hearing.

### B. MODIFIED PLAN AND CONFIRMATION ORDER

5. The Debtors and general unsecured creditors ultimately agreed to a maximum potential distribution to general unsecured creditors of $300 million, which would be made once the Debtors' distributions to its members exceeded $7.2 billion. This compromise is embodied in section 5.3 of the Modified Plan, which specifically provides that holders of general unsecured claims, such as the Delphi GUCs, are entitled to receive their "Pro Rata share of the proceeds of the General Unsecured MDA Distribution." Modified Plan, § 5.3. The General Unsecured MDA Distribution is defined as follows:

> "**General Unsecured MDA Distribution**" means, if and to the extent Company Buyer makes distributions to its members in accordance with the Company Buyer Operating Agreement, as described in section 3.2.3 of Master Disposition Agreement, in

3

        excess of $7.2 billion, an amount equal to $32.50 for every $67.50 so distributed in excess of $7.2 billion; provided, however, that in no event shall the General Unsecured MDA Distribution exceed $300,000,000 in the aggregate.

Modified Plan § 1.102.

6. The order confirming the Modified Plan [Docket No. 18707 in Chapter 11 Cases] (the "Confirmation Order") specifically protected the interests of general unsecured creditors. It provides: "[a]fter the Effective Date, the MDA Documents may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court; provided, however, that neither prior to or after the Effective Date shall any provision in the Master Disposition Agreement or Company Buyer Operating Agreement regarding distributions to holders of general unsecured claims of the Debtors be amended, modified, or waived to reduce, eliminate, or otherwise affect such distributions." Confirmation Order at 87 (¶ 64(g)).

7. The Confirmation Order also explicitly preserves the Court's broad, post-confirmation jurisdiction. See id. at 78 (¶ 56) ("Retention Of Jurisdiction. Pursuant to sections 105(a) and 1142 … and notwithstanding the entry of this order or the occurrence of the effective date, but subject to the jurisdiction provisions of the MDA Documents, the Court shall retain exclusive jurisdiction as provided in the Modified Plan over all matters arising out of, and related to, the Chapter 11 Cases and the Modified Plan to the fullest extent permitted by law, including, among other items and matters, jurisdiction over those items and matters set forth in Article XIII of the Modified Plan.").

8. The Confirmation Order was entered on July 30, 2009 and the Modified Plan was substantially consummated on or about October 6, 2009 (the "Effective Date").

        **C. OBLIGATIONS UNDER MODIFIED PLAN TO MAKE DISTRIBUTIONS TO GENERAL UNSECURED CREDITORS**

9. The Modified Plan referenced the Master Disposition Agreement dated July 26, 2009 (the "MDA"). The parties to the MDA included Old Delphi, the Company, and General

4

Motors. The MDA provided for Old Delphi to transfer substantially all of its assets to the Company and the Company was then obligated under section 3.2.3 of the MDA to make any payments required for the benefit of general unsecured creditors under the Modified Plan.

10. The Modified Plan also referenced the Company's Operating Agreement, which provided:

> In accordance with Section 3.2.3 of the MDA, if the Asset Purchase Agreement is consummated pursuant to the Plan of Reorganization, once an aggregate of $7,200,000,000 has been paid as Distributions to the Holders pursuant to this Agreement, the Company shall pay an amount equal to $32.5 to a disbursement agent on behalf of the unsecured creditors of Old Delphi for every $67.5 in excess of such $7,200,000,000 that is distributed to the Holders pursuant to Section 5.1(a)(iv), up to a maximum amount of $300,000,000.

Operating Agreement § 5.6, at 26

### D. COMPANY'S DISTRIBUTIONS TO MEMBERS

11. As part of the Company's acquisition of Old Delphi, the Company issued membership interests to its owners. Since March 2011, the Company has made distributions to its members in the form of share redemptions, repurchases, and dividends. As of November 26, 2014, distributions to members totaled approximately $6.754 billion.

12. In addition, the Company introduced a dividend priced at $0.17 per quarter in the first quarter of 2013. The dividend, which has been paid quarterly since 2013, was raised to $0.25 per quarter in the first quarter of 2014. The Company has stated that the quarterly dividend will grow in line with earnings. The Company also has indicated that share repurchases are likely to increase from second quarter 2014 levels.

13. Based upon the quarterly $0.25 dividends that the Company will pay in each quarter following June 30, 2014 and the $446 million in remaining share repurchases under the Company's authorized share repurchase program as of November 26, 2014, the Company is projected to exceed the $7.2 billion distribution threshold no later than June 30, 2015.

14. On December 4, 2014, counsel for the Delphi GUCs sent a letter to counsel for the Debtors in the Chapter 11 Cases regarding the General Unsecured MDA Distribution. See Letter from Susheel Kirpalani to Benjamin S. Kaminetzsky, dated December 4, 2014 (the "December 4 Letter") (a copy of which is attached as Exhibit C). The December 4 Letter lists the distributions to date and asks that the Company "advise by December 15, 2014 if the Company disagrees … that the distributions to date … are at least $6.754 billion, leaving $446 million until the Threshold is met, and if there is a disagreement, please specify in detail any such disagreement." Ex. C. The Delphi GUCs also requested that the Company confirm its intentions to make the General Unsecured MDA Distribution once the Company made distributions to members that exceed the $7.2 billion threshold. Id.

    E.    **ADVERSARY PROCEEDING**

15. The Company did not respond to the December 4 Letter. Moreover, in its public filings, the Company has indicated that it does not believe it is probable that the threshold of $7.2 billion will be met in the near future or anytime thereafter and has accordingly made no reserve for the payment of the General Unsecured MDA Distribution. See DAP, Form 10-Q, filed October 24, 2014, at 21 ("Under the terms of the Acquisition and the Fourth LLP Agreement, if cumulative distributions to members of Delphi Automotive LLP under certain provisions of the Fourth LLP Agreement exceed $7.2 billion, Delphi, as disbursing agent on behalf of DPHH, is required to pay the holders of allowed general unsecured claims against DPHH $32.50 for every $67.50 in excess of $7.2 billion distributed to the members, up to a maximum amount of $300 million. This contingency is not considered probable of occurring as of September 30, 2014 and accordingly, no reserve has been recorded."); Reorganized Debtors' Case Closing Status Report, at ¶ 11, filed Dec. 13, 2013 [Docket No. 22245] ("As of the date hereof [12/13/13], New Delphi has not made any distributions pursuant to section 3.2.3 of the MDA.").

6

16. The Delphi GUCs thereafter filed this Motion with the attached Complaint. The Complaint sets forth two counts, the first seeking declaratory relief that the distributions as of November 26, 2014 total $6.754 billion, and the second for anticipatory breach of contract, i.e., that even though the Company will meet the $7.2 billion threshold on or before June 30, 2015, it will not make the General Unsecured MDA Distribution.

### III. JURISDICTION AND VENUE

17. The Court has jurisdiction over the Motion and the Adversary Proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b) and Article XIII(c) the Modified Plan, which provides that this Court shall have exclusive jurisdiction over all matters related to the Modified Plan, specifically including "any and all disputes arising from or relating to the distribution or retention of the General Unsecured MDA Distributions, or other consideration under this Plan." Similarly, the Court has jurisdiction over the Motion and the Adversary Proceeding under the Confirmation Order. See Confirmation Order at 78 (¶ 56) ("Retention Of Jurisdiction.").

18. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

19. The Motion and the Adversary Proceeding are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(A), (L), and (O).

### IV. RELIEF REQUESTED

20. The Delphi GUCs seek the entry of an Order reopening the Chapter 11 Cases for the single purpose of prosecuting the Adversary Proceeding. The statutory predicates for the requested relief are sections 105(a) and 350(b) of the Bankruptcy Code and Bankruptcy Rule 5010.

21. Specifically, the Delphi GUCs request an entry of an order opening the chapter 11 case of DPH Holdings Corp., case No. 05-44481.

### V. ARGUMENT

22. "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). See also

Bankruptcy Rule 5010 (stating case may be reopened on motion of "the debtor or other party in interest.").

23. The Bankruptcy Code does not define "cause" to reopen a case, but courts consider "equitable concerns, the merits of the underlying claim, and the availability of relief in other fora." See In re Emmerling, 223 B.R. 860, 864 (2d Cir. BAP 1997) (bankruptcy court erred in denying debtor's motion to reopen chapter 7 bankruptcy case for purpose of vacating a default judgment entered against him; noting court may consider numerous factors including equitable considerations); Katz v. I.A. Alliance Corp. (In re I. Appel Corp.), 300 B.R. 564, 571 (S.D.N.Y. 2003) (upholding bankruptcy court's order reopening chapter 11 cases and noting courts "typically examine the benefit to the debtor, the prejudice to the would-be defendant in the litigation, and the benefit to the creditors"); In re Amaya, 2014 WL 7004848, at *4 (Bankr. E.D.N.Y. 2014) (granting motion to reopen chapter 7 case: "[i]n determining whether cause exists, courts will also consider whether the debtor and creditors stand to benefit by reopening the case and whether affected parties will be prejudiced. Among these considerations, the benefit to creditors is uppermost."). See also In re Easley-Brooks, 487 B.R. 400, 406-07 (Bankr. S.D.N.Y. 2013) (granting motion to reopen chapter 7 case; listing factors to include: (1) length of time case was closed; (2) whether a nonbankruptcy forum has jurisdiction to determine issue which is basis for reopening case; (3) whether prior litigation in bankruptcy court determined that a state court would be appropriate forum; (4) whether any parties would suffer prejudice should court grant or deny motion; (5) extent of benefit to debtor by reopening; and (6) whether it is clear at outset that no relief would be forthcoming to debtor by granting motion to reopen).

24. However, these factors are not determinative, as "[s]ection 350(b) gives the bankruptcy court broad discretion in deciding whether to reopen a case." In re Emmerling, 223

8

B.R. at 864. Cf., In re Weinstein, 164 F.3d 677, 686 & n. 6 (1st Cir. 1999) (finding bankruptcy court had broad discretion to reopen a closed case sua sponte, to reverse its prior decision denying a motion to avoid a lien, and to then avoid lien based on more recent case law without further evidentiary hearing).

### A. BANKRUPTCY COURT PROVIDES APPROPRIATE FORUM TO RESOLVE DISPUTES CONCERNING MODIFIED PLAN

25. The Delphi GUCs request limited relief, that is, to reopen the Chapter 11 Cases for the sole purpose of prosecuting the Adversary Proceeding. The Complaint requests declaratory relief concerning the rights and obligations of general unsecured creditors and the Company under the Modified Plan and the MDA with respect to the General Unsecured MDA Distribution and the $7.2 billion threshold.

26. Requiring the Company to comply with its obligations under the Modified Plan is precisely the type of action over which the Court retained jurisdiction. The Confirmation Order (at 78 (¶ 56)) provides the Court shall retain exclusive jurisdiction over all matters arising out of, and related to the Chapter 11 Cases and the Modified Plan to the fullest extent permitted by law. Similarly, Article XIII(c) of the Modified Plan grants the Court exclusive jurisdiction over any disputes arising from or relating to the distribution or retention of the General Unsecured MDA Distributions. To that end, the Adversary Proceeding simply requires the Court to interpret and enforce its prior Orders. The Court is the most appropriate forum for that purpose, especially given the extent to which those Orders retained jurisdiction here. See, e.g., Travelers Indem. Co. v. Bailey, 557 U.S. 137, 151 (2009) ("[T]he Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders;" noting "when the Bankruptcy Court issued the 1986 Orders, it expressly retained jurisdiction to enforce its injunctions"); In re Petrie Retail, Inc., 304 F.3d 223, 230 (2d Cir. 2002) ("A bankruptcy court retains post-confirmation jurisdiction to

9

interpret and enforce its own orders."); In re Chateaugay Corp., 201 B.R. 48, 62 (Bankr. S.D.N.Y. 1996) (noting that "[b]ankruptcy courts have inherent or ancillary jurisdiction to interpret and enforce their own orders wholly independent of the statutory grant under 28 U.S.C. § 1334.").

27.     The closing of the Chapter 11 Cases does not alter this conclusion. Indeed, the Final Decree specifically protects the rights of general unsecured creditors with respect to the General Unsecured MDA Distribution. See Final Decree ¶ 3.

### B. COURT CAN REOPEN CASES TO PERMIT PROSECUTION OF ADVERSARY PROCEEDING, ESPECIALLY GIVEN BENEFIT TO ALL UNSECURED CREDITORS

28.     Section 350(b) of the Bankruptcy Code provides a basis for the Court to reopen the Chapter 11 Cases for the sole purpose of allowing the Delphi GUCs to prosecute the Adversary Proceeding. The adversary proceeding requests a determination of rights and obligations under a confirmed chapter 11 plan in the Chapter 11 Cases, and they should be reopened to resolve those issues. See, e.g., In re Zinchiak, 406 F.3d 214, 224 (3d Cir. 2005) (affirming bankruptcy court's exercise of its discretion to reopen case to allow mortgagee's deficiency petition to proceed to determine value of property notwithstanding related pending state court actions because petition required bankruptcy court to interpret its own orders concerning "step-by-step" relief from automatic stay over property); In re Collins, 173 F.3d 924, 926, 929 (4th Cir. 1999) (finding bankruptcy court had authority to reopen case on motion under § 350(b) to determine dischargeability of debt in chapter 7 case; rejecting argument that Eleventh Amendment immunity "strips a bankruptcy court of jurisdiction to reopen a case and determine (in connection with the decision to reopen) the dischargeability of a debt owed to a state."); In re Easley-Brooks, 487 B.R. at 409-10 (reopening chapter 7 case to allow trustee to bring a medical malpractice claim because bankruptcy case had only been closed for three years and trustee, if successful, stood to obtain a substantial recovery).

10

29.     The relief requested in the Adversary Proceeding also entails the administration of assets and will inure to the benefit of all unsecured creditors by compelling the Company to comply with its obligations and make the General Unsecured MDA Distribution.  See In re Zinchiak, 406 F.3d 214, 224 (3d Cir. 2005) (noting petition that would be pursued when case was reopened "had the potential to generate assets for the benefit of unsecured creditors to the Debtor's estate …. It is well recognized that a bankruptcy proceeding may be reopened to administer estate assets and to determine whether additional assets may be available for creditors of the estate."); In re Am. Remfrs., Inc., 439 B.R. 633, 637 (Bankr. D. Del. 2010) (reopening chapter 7 cases to permit the trustee to continue litigating an adversary proceeding; noting "refusal to reopen would be unjust to the creditors, as the Accounts Receivable Action is potentially a significant asset to the three estates.").

30.     Moreover, the Adversary Proceeding should be commenced *now*.  Based on current projections, the Company will exceed the distribution threshold in the first few months of 2015—but is currently disputing its obligation to make the General Unsecured MDA Distribution.  Notably, the Company's public filings indicate it does not think the threshold will be met any time soon, and the Company ignored the December 4 Letter requesting confirmation otherwise.  By reopening the Chapter 11 Cases now for the Adversary Proceeding, the Delphi GUCs—who have been awaiting distributions for more than five years—hope to resolve any dispute concerning the Company's obligations under the Modified Plan and MDA before the payment obligation is triggered.

31.     Lastly, the Chapter 11 Cases should be reopened for the Adversary Proceeding given the Bankruptcy Court's familiarity with these issues.  The Bankruptcy Court's own Confirmation Order and the Modified Plan are at issue.  In addition, two years ago the Court

11

heard issues related to whether certain transactions constituted distributions that counted toward the $7.2 billion threshold in an adversary proceeding commenced by different creditors. See <u>Cai Distressed Debt Opportunity Master Fund Ltd. v. Delphi Automotive, PLC, et. al.</u>, Adversary No. 11-02934 (RDD). In that litigation, the Bankruptcy Court gained familiarity with issues related to the $7.2 billion threshold and the relevant documents. Although the Bankruptcy Court dismissed the proceeding on the basis that the Company's initial public offering did not constitute a distribution, it did not rule on whether the Company's repurchases of shares held by GM and the PBGC were distributions. It also recognized that if the Company made additional distributions and approached the $7.2 billion threshold, a new complaint requesting declaratory relief might be filed. <u>See</u> Ex. A (Tr., Hearing, March 22, 2012 at 140:8-13, 143:18-24). The situation the Court envisioned in March 2012 has come to fruition, making it appropriate to reopen the Chapter 11 Cases to allow the Delphi GUC's to pursue relief compelling the Company to comply with its obligations under the Modified Plan and the MDA.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Delphi GUCs respectfully request that the Bankruptcy Court enter an Order granting the Motion, reopening the Chapter 11 Case of DPH Holdings Corp. for the purpose of allowing the Delphi GUCs to prosecute the Adversary Proceeding, and providing any other relief the Bankruptcy Court deems appropriate.

DATED:   New York, New York
              December 29, 2014

        **QUINN EMANUEL URQUHART &
          SULLIVAN, LLP**

By: */s/ Susheel Kirpalani*
     Susheel Kirpalani
     James C. Tecce
     51 Madison Avenue, 22nd Floor
     New York, New York 10010
     Telephone: (212) 849-7000
     Fax: (212) 849-7100
     susheelkirpalani@quinnemanuel.com
     jamestecce@quinnemanuel.com

     *Attorneys for Solus Alternative Asset Management LP and Angelo, Gordon & Co., L.P.*