Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 05-44481-rdd

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    DPH HOLDINGS CORP, ET AL,

8

9            Debtors.

10

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13                    U.S. Bankruptcy Court

14                    300 Quarropas Street

15                    White Plains, NY

16

17                    December 18, 2013

18                    10:13 A.M.

19

20   B E F O R E :

21   HON ROBERT D. DRAIN

22   U.S. BANKRUPTCY JUDGE

23

24

25

Page 2

1   Hearing re:  Proposed Sixty-Fifth claims Hearing Agenda

2

3   Hearing re:  Claims objection Hearing Regarding (i) Proof of

4   Claim Number 15785 and (ii) Proofs of Administrative Expense

5   claim Numbers 18956, 19539, and 19786 (Docket #19711)

6

7   Hearing re:  Response of Michigan Department of

8   Environmental Quality (Docket #19132)

9

10  Hearing re:  Response of the United States of America

11  (Docket #19870)

12

13  Hearing re:  Response of the Environmental Agencies (Docket

14  #22150)

15

16  Hearing re:  Notice Of Lodging Of Proposed Settlement

17  Agreement (Docket #22215)

18

19  Hearing re:  Proposed Eighty-Seventh Omnibus hearing Agenda

20

21  Hearing re:  Case closing Motion (Docket #22073)

22

23  Hearing re:  Limited Objection or Republic Engineered

24  Products (Docket #22082)

25

Page 3

1    Hearing re: Joinder Of Pro Tech Machine In Limited Objection

2    Of Republic Engineered Products (Docket #22085)

3

4    Hearing re:  Limited Objection Of DSSI, LLC (Docket #22086)

5

6    Hearing re:  Objection By General Motors LLC (Docket #22088)

7

8    Hearing re:  Joinder Of Tata America International

9    Corporation d/b/a TCS America To The Limited (Docket #22092)

10

11   Hearing re:  Michigan Department or Environmental Quality's

12   Limited Objection (Docket #22095)

13

14   Hearing re:  Objection by James Sumpter (Docket #s 22106,

15   22113)

16

17   Hearing re:  Objection Or The United States Or America

18   Docket #22101)

19

20   Hearing re:  JPMorgan Chase Bank N.A., as Administrative as

21   Administrative Agent Docket #22247)

22

23

24

25   Transcribed by:  Melissa Looney

Page 4

1    A P P E A R A N C E S :

2    TOGUT, SEGAL & SEGAL, LLP

3         Attorneys for Debtors

4         One Penn Plaza

5         New York, NY 10119

6

7    BY:  NEIL BERGER, ESQ.

8         STEVEN S. FLORES, ESQ.

9

10   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

11        Attorneys for the Reorganized Debtors

12        155 North Wacker Drive

13        Chicago, IL 60606

14

15   BY:  LOUIS S. CHIAPETTA, ESQ.

16        JOHN W. JACK BUTLER, ESQ.

17        BRANDON DUNCOMB, ESQ.

18

19   COLE SCHOTZ

20        Attorney for DPH Holdings

21        900 Third Avenue

22        16th Floor

23        New York, NY 10022

24

25   BY:  MICHAEL D. WARNER, ESQ.

Page 5

```
 1   KAYE SCHOLER LLP

 2        Attorney for Stone Lion Capital

 3        425 Park Avenue

 4        New York, NY 10022

 5

 6   BY:  BENJAMIN MINTZ, ESQ.

 7

 8   STEPTOE & JOHNSON LLP

 9        Attorney for Delphi Automotive PLC

10        1114 Avenue of the Americas

11        New York, NY 10036

12

13   BY:  EVAN GLASSMAN, ESQ.

14

15   KING & SPALDNG

16        Attorneys for GM

17        1185 Avenue of the Americas

18        New York, NY 10036

19

20   BY:  ARTHUR J. STEINBERG, ESQ.

21        SCOTT DAVIDSON, ESQ.

22

23

24

25
```

1  SATTERLEE STEPHENS BURKE & BURKE LLP

2       Attorney for JP Morgan Chase

3       (No other info given)

4

5  BY:  TIMOTHY BURKE, ESQ.

6

7  ALSO APPEARING TELEPHONICALLY

8       SEAN CORCORAN, ESQ.

9       TOM RADOM, ESQ.

10      BRUCE L. SENDECK, ESQ.

11      CHRISTINE PHILLIPS, ESQ.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 7

1                    P R O C E E D I N G S

2              THE CLERK:  All rise.

3              THE COURT:  Please be seated.  Okay.  Good

4     morning.  In re DPH Holdings.

5              MR. BUTLER:  Good morning, Your Honor.  Jack

6     Butler from Skadden Arps on behalf of the reorganized

7     debtors.

8              THE COURT:  Good morning.

9              MR. BUTLER:  Your Honor, It was a little bit more

10    than eight years ago when these cases were filed in the --

11    here in the Bankruptcy Court in the Southern District.  And

12    as Your Honor will recall and as you lived it with us, we

13    went through some pretty tumultuous economic times in the

14    national economy and the automotive industry.  Having first

15    dealt with a confirmed plan in January of 2008 that led to a

16    modified plan that Your Honor proved in July of 2009 and it

17    became effective on October 6th of 2009.

18             We're here today to ask Your Honor to enter the

19    final decree in the remaining cases that have remained open.

20    And to do so, pursuant to Your Honor's order that was

21    entered back on August 6th of this year in response to a

22    case closing motion that we filed in July.

23             I do think it's important for this record to point

24    out that this is -- was intended under Your Honor's case

25    closing order that was entered at docket #22121.  This was

Page 8

1    intended to be more of an administrative hearing or a status

2    hearing to report to Your Honor as to whether the

3    reorganized debtors had done all the things that were

4    required to be done under the case closing order.

5            And I'm pleased to report, while there have been

6    some filings that have been made in conjunction with this; I

7    think we actually are back into the stage of a status

8    hearing. We have, I think resolved all the issues.  We'll

9    report to them as we go through, Your Honor.  But the -- for

10   example, the pleading filed by JPM -- JP Morgan has been

11   resolved and we'll explain that to the Court in a few

12   minutes.

13           THE COURT:  Okay.

14           MR. BUTLER:  So, Your Honor, what the -- our

15   responsibility was in preparing for this hearing was to

16   explain to Your Honor how we dealt with all the claims, all

17   of the adversary proceedings and all of the administrative

18   tasks that were to have been disposed of in connection with

19   the case closing order.

20           One of the things Your Honor required us to do was

21   to five days prior to the hearing today, this status hearing

22   was to file a case closing status report.  We did that.

23   It's at docket #22245 and I'll not repeat everything that's

24   in the case closing report.

25           THE COURT:  Right.

Page 9

1           MR. BUTLER:  But I did want to highlight a couple

2    of items.

3           THE COURT:  Okay.  And I have reviewed that.

4           MR. BUTLER:  So, Your Honor, first with respect to

5    claims.  As we've indicated, Your Honor, we have now

6    resolved and disposed of all of the remaining claims.  There

7    was a footnote 5 in that report, which reported to you that

8    we'd been contacted by counsel for the former administrative

9    agent under the debtors, debtor in possession facility

10   dealing with indemnification claim.

11          That matter matured into the objection that was

12   filed by JP Morgan by Mr. Brock of the Satterlee Stephens

13   firm.  And handling that matter for the reorganized debtors

14   is Mike Warner from Cole Schotz.  Cole Schotz has been

15   retained by DPH to assist it in the dissolution proceedings

16   that are in Delaware moving forward and to act as counsel

17   after these cases are closed.

18          As part of that engagement, they  have been

19   working with the company over the last several months on

20   dissolution related matters and are handling this particular

21   claim, which as an indemnification claim is a claim that

22   came up against the reorganized company.

23          Your Honor may recall under the plan modification

24   order, the indemnification claims from JP Morgan in this

25   context were under the plan modification order given the

Page 10

1    status of unsecured claims against the reorganized debtors.

2    That matter has now been resolved.  I think Mr. Warner is

3    going to place the agreement on the record.

4              THE COURT:  Okay.

5              MR. WARNER:  That's correct, Your Honor.

6              Good morning, Your Honor.

7              THE COURT:  Good morning.

8              MR. WARNER:  Michael Warner, Cole Schotz on behalf

9    of DPH.  As Mr. Butler said, I've come in just recently to

10   address basically the final stages of wind up and then the

11   dissolution process.

12             As the Court knows, JPM did file an objection or a

13   comment basically to the hearing today.  Mr. Brock is here

14   and in the courtroom and I know he'll come up to the podium

15   and confirm.  But I understand that they are withdrawing

16   their pleading and in exchange, I'm going to put on the

17   record for you basically what's going on now.  I want to

18   remind both Mr. Brock and the Court that there's been

19   previous orders of this Court sealing certain portions of

20   transcripts and testimonies, especially with regard to

21   budgets of the debtor, of DPH.  And I'm just going to detail

22   some numbers in the budget.  So I would ask that that

23   continue to be the case and it be sealed, at least with

24   respect to those numbers.

25             THE COURT:  Okay.

Page 11

1          MR. WARNER:  Your Honor, we have a wind down

2     budget, if you will, for the remaining portion of the life

3     of DPH, which under Delaware law will be a minimum of three

4     years.  That budget has a line item for JPM's professional

5     fees and out of pocket expenses incurred, reasonably

6     incurred in connection with the indemnity.  That line item

7     is $150,000 in the budget.

8          We have paid JPM already approximately $90- to

9     $95,000 out of that 150 budget.

10          THE COURT:  And that includes the most recent

11     bill?

12          MR. WARNER:  It does not include the bill that

13     came in Monday of this week for about 25,000, so --

14          THE COURT:  Okay.

15          MR. WARNER:  -- when we pay that 25,000 we will

16     have about 30,000 left of the 150.

17          THE COURT:  Okay.

18          MR. WARNER:  That will remain available in the

19     budget.  It will remain available subject to the submission

20     of involves and the invoices being reasonable and

21     appropriate in light of the indemnification provision.  They

22     will submit invoices potentially, the (indiscernible),

23     potentially in excess of the funds available.  Those

24     invoices will be -- not be paid by DPH holdings from either

25     the funds set aside for the administration of the wind down

Page 12

1    and the dissolution.  They will not be paid from any monies

2    coming in.  They will only be paid if after all advances

3    received from GM have been repaid in accordance with the

4    funding agreements and in accordance with other pleadings

5    that have been filed.  So it will be a non-recourse and non-

6    claim against DPH Holdings.  There will be no claim and no

7    recourse unless and until GM has been repaid on all of the

8    advances.  That's essentially the structure of the

9    transaction and what we've agreed to with JPM.

10           THE COURT:  Okay.  I guess the one question I have

11   on that, well first, is that your understanding too, Mr.

12   Brock?

13           MR. BROCK:  Yes, Your Honor.  On the basis of that

14   understanding, we hereby withdraw our objection.  My name is

15   Timothy Brock from Satterlee Stephens Burke and Burke on

16   behalf of JP Morgan Chase.

17           THE COURT:  Okay.  The one question I have on this

18   and this is based on my having read the stipulation a few

19   days ago when I set it into be entered.  Wasn't there a

20   provision of the GM stipulation that said any surplus money

21   would go to Delphi?  Do I remember that incorrectly?

22           MR. BERGER:  Your Honor, we tried to be as -- I'm

23   sorry, Neil Berger Togut Segal and Segal also for the

24   reorganized debtors.  There is yes a provision in the

25   settlement agreement that tracks the MDA to the extent that

Page 13

1    if there are funds after repayment of the advances, they

2    follow the MDA route.

3              THE COURT:  Right. And so you are comfortable that

4    this arrangement is consistent with that because the MDA

5    talks about surplus as --

6              MR. BERGER:  I think it is consistent, Your Honor.

7    I think that the way that the funding agreement dovetails

8    into the MDA is that whatever is left after the wind up.

9              THE COURT:  Okay.  So as long as these -- if

10   there's a future demand based on the indemnity agreement, as

11   long as that is a wind up expense then even though GM

12   wouldn't be paying it beyond the budget in the bucket, it

13   would go first to pay --

14             MR. BROCK:  Is probably --

15             MR. BERGER:  Yes.

16             MR. BROCK:  -- the answer is yes, Your Honor.

17             THE COURT:  Before going to New Delphi.

18             MR. BROCK:  Your Honor, the answer is yes, but I

19   think you would probably look at it as sort of tranches.  GM

20   will be paid back --

21             THE COURT:  Right.

22             MR. BROCK:  -- if anything is left over before

23   distribution to Delphi --

24             THE COURT:  Yeah.

25             MR. BROCK:  -- it would be claims there, but this

Page 14

1    is a non-recourse and a non-

2              THE COURT:  Because it would be a wind up expense.

3              MR. BROCK:  That's correct.  It would be a claim.

4              THE COURT:  Not an expense payable by GM except

5    through the mechanism that you've outlined.

6              MR. BROCK:  Correct.

7              THE COURT:  Okay.

8              MR. BROCK:  Thank you, Your Honor.

9              THE COURT:  all right.  That seems to me to be a

10   fair resolution of it.  I guess one last question, obviously

11   you still have the reasonableness issue and the incurred

12   issue, but you would -- I mean there was some fairly pointed

13   argument that they weren't entitled to this in the first

14   place on the indemnity.  Is that being reserved or is it

15   your understanding that that will be paid subject to

16   reasonableness?

17             MR. WARNER:  I think the argument, Your Honor, is

18   subject to reasonableness because I think this is a business

19   decision that DPH is willing to make --

20             THE COURT:  All right.

21             MR. WARNER:  -- and we're dealing with a limited

22   amount of remaining funds, so yes.

23             THE COURT:  Okay.  Okay.  Fine.

24             MR. WARNER:  Thank you, Your Honor.

25             THE COURT:  Okay. Are you going to put that in the

Page 15

1   order or is he record going to suffice on that?

2           UNIDENTIFIED SPEAKER:  I think the intention is to

3   have the record suffice, Your Honor.

4           THE COURT:  Okay.  Fine.

5           MR. WARNER:  Thank you, Your Honor.

6           MR. BUTLER:  Your Honor, the only other item I

7   would mention -- again it's Jack Butler back on the record.

8   The only other item I would mention with respect to the

9   claim section of the closing report is I want to talk

10  briefly about the environmental claims.  That has been fully

11  resolved.  DPH has fully performed under its obligations

12  under the stipulation Your Honor approved. The funds we were

13  to pay to the United States have been paid.  Not everything

14  administratively has found its way, however, into the trust

15  from the United States perspective.  So there's a mechanic

16  left to be completed.

17          THE COURT:  So we're still going the certificate

18  route?

19          MR. BUTLER:  Right.  And so --

20          THE COURT:  Okay.

21          MR. BUTLER:  -- what we wanted -- and the same

22  thing is true and I get to (indiscernible) into the GM

23  settlement, the GM stipulation is not appeared on the docket

24  yet, because it's not on the docket, the payments to be made

25  under that hasn't been paid.  We had agreed with general

Page 16

1   motors, we're not going to dissolve until we make that

2   payment.  So what we've done in the final decree, the

3   revised final decree is setup a process in which there are

4   three certificates entered in a sequential order.

5              THE COURT:  Right.

6              MR. BUTLER:  So we want to make sure that all of

7   the property gets into the environmental trust that's

8   supposed to be there and we want the trustee to acknowledge

9   it to Your Honor.

10             THE COURT:  Right.

11             MR. BUTLER:  We want to make sure GM gets the

12  payment they've agreed to take and that they acknowledge

13  they received the payment. And then at that point in time,

14  Cole Schotz will complete the dissolution and tell Your

15  Honor the dissolution has been completed.

16             THE COURT:  And there's an outside date for those

17  certificates.  Have you gotten a date from Ms. Lee (ph) to

18  fill in that blank?

19             MR. BUTLER:  We haven't, Your Honor.  We wanted to

20  ask you.  We just wanted to -- I'm fairly confident that all

21  that's going to be resolved in the next week or so once

22  everything hits the docket.  But we wanted to -- it's the

23  holidays, so we wanted to sort of have a date in early

24  January.

25             THE COURT:  Okay.  So can you get that date from

Page 17

1    here and just send me the order once you have that?

2              MR. BUTLER:  We will.

3              THE COURT:  Okay.

4              MR. BUTLER:  So I think Your Honor with respect to

5    the claims section of this, having made that note on the

6    environmental claims that I think we've fully administered

7    all the claims in the estate.

8              I did want to point out, Your Honor, in paragraph

9    11 of our case closing report we filed last week, the -- we

10   did talk about the fact that there have not been any

11   distributions made by New Delphi, pursuant to section 3.23

12   of the MDA.

13             Your Honor, I point out just as background and we

14   attached it to our report we filed last week.  There was an

15   earlier closing report in the Chapter 11 cases that was

16   filed way back in 2009 at docket #18994.  And that closing

17   report, among other things, as is required by the local

18   rules explained what distributions would be made to

19   unsecured creditors on and what basis.  And I'll not repeat

20   that in detail, but it does describe the mechanism under

21   section 3.23 of the master disposition agreement about the

22   contingent nature of the payments to general unsecured

23   creditors.

24             I've described -- we made that same reference when

25   we talked about it in our report we filed last week,

Page 18

1    although we didn't put all the detail in that was in the

2    closing report that was filed publicly back in 2009.  But

3    since 2009, no payments have been made in connection with

4    that.

5           As we reported to you in the closing report, we

6    had received request from a holder of such a claim that we

7    modify the proposed final decree in various respects.  And

8    based on the requests at that time, we were not prepared to

9    do it.  Subsequent to the filing of the report last Friday,

10   there has been an agreement with this holder to add

11   essentially a reservation of rights section and it's the

12   last sentence on paragraph 3 of the proposed alternative

13   final decree that we presented to Your Honor overnight.

14   Which I'll just simply read, if I can, the words on that.

15   Which simply says, quote, none of the entry of this final

16   decree and order, the dissolution of DPH Holdings or any of

17   the other relief contemplated by this final decree and order

18   or the case closing order shall prejudice or otherwise limit

19   the rights of holders of general unsecured claims to receive

20   payment of the general unsecured MDA distribution as such

21   terms are defined in the modified plan in accordance with

22   the terms of the modified plan. End quote.

23          My understanding is that that statement and that

24   inclusion of that in the final decree resolves the request

25   we received from that holder who I believe is represented by

Page 19

1    Mr. Mintz from Kaye Scholer who wanted, I think, to say

2    something on the record as well.

3              THE COURT:  Okay.

4              MR. MINTZ:  Good morning, Your Honor.  Benjamin

5    Mintz, Kaye Scholer.  My client is Stone Lion Capital, which

6    is a holder of general unsecured claims.  As Mr. Butler

7    indicated my client was concerned that the case closing

8    order, the final decree and the contemplated dissolution of

9    DPH Holdings might be construed in the future to have

10   impaired the creditors' rights under the modified plan and

11   more particularly, their rights and respect of the general

12   unsecured MDA distribution, the contingent right that exists

13   under the modified plan.

14             We wanted to make sure that the orders and the

15   contemplated actions didn't affect the ability of the

16   general unsecured creditors to get the benefit of the plan

17   compromise and the contemplated distributions of the general

18   unsecured MDA distribution if and when the requisite

19   conditions to such distribution were ultimately satisfied.

20             So to foreclose that argument, we worked with

21   Skadden to include the comfort language that Mr. Butler read

22   into the record.  And with that, we believe that the concern

23   that we identified has been addressed by that language.

24             THE COURT:  Okay.  That's fine.  I think frankly I

25   think it's belt and suspenders, but there's nothing wrong

Page 20

1    with it.  Clearly a case can be closed under section 350

2    while a plan is still being implemented in various respects,

3    particularly where the remaining distribution contemplated

4    is something that's far off.  I guess the best example would

5    be the Pinncore (ph) case where there were going to be

6    settlement distributions over the next 50 years and the

7    Court had no problem, the District Court had no problem

8    closing the case because those were still supposed to be

9    made.

10          And of course if for some reason it would be

11   necessary to reopen the case, I've retained jurisdiction to

12   interpret my orders and the like, it's not exclusive.  So

13   certainly consistent with the commentary to 3022 you don't

14   have to have all possible distributions completed before you

15   close a case.  So I don't think there's any adverse affect

16   on your client's rights, whatever they are, under the plan

17   by the case closing.

18          MR. MINTZ:  Thank you, Your Honor.

19          THE COURT:  Okay.

20          MR. BUTLER:  Judge, again Jack Butler on the

21   record.  The -- moving now to the adversary proceedings, in

22   terms of the avoidance actions, where we were the last time

23   we were before the Court or shortly thereafter was I think

24   we were down to 5 of the 177.  All those have been resolved

25   and all those have been disposed of on the docket, with the

Page 21

1      exception of the Republic proceedings, the Republic matters,

2      which at dockets 2742, excuse me, adversary proceeding no.

3      07-2742 and adversary proceeding 07-2744.  Those have been

4      settled and we have performed under those and the paperwork

5      is at least in the -- has been submitted to chambers.  I

6      just don't think it's hit the docket yet.

7              THE COURT:  You mean the closing order?

8              MR. BUTLER:  Correct.

9              THE COURT:  Yeah, I think I actually did -- it

10     will be entered shortly if it hasn't been already.

11             MR. BUTLER:  So those, Your Honor, are -- that

12     would deal with the avoidance actions.  In addition to those

13     proceedings, there were three matters that were unrelated to

14     the avoidance actions that remained open as of the date of

15     the filing.  And two of those have been dismissed and one is

16     on appeal to the Second Circuit.

17             What is on appeal to the Second Circuit is the

18     judgment this Court entered back in November in favor of Ace

19     American Insurance Company and Pacific Employer's Insurance

20     Company.  The District Court -- that was November 2012.  The

21     District Court affirmed that on August of this year and that

22     is now on appeal in the Second Circuit.

23             That's primarily a -- now an issue of controversy

24     between those parties in the state of Michigan from the

25     standpoint of the reorganized debtors we have no more

Page 22

1    liability associated with that.

2            THE COURT:  Because of the A settlement.

3            MR. BUTLER:  Because of the A settlement.  We have

4    the right actually if the Second Circuit affirms, there's

5    additional proceeds that will flow to the dissolved entity

6    and those have been dealt with under the terms of the A

7    settlement.  That's all public.  There's an affirmation of

8    the District Court of this Court and the District Court by

9    the Second Circuit, then there are some held back funds in

10   the amount of about $500,000 for that particular item that

11   will flow back to the reorganized debtors, which would then

12   be in their dissolution proceedings and assuming and that's

13   all been accounted for in the GM settlement.

14           THE COURT:  Okay.  Well, again, as the papers

15   pointed out, it's appropriate to close a case even though

16   there is a pending appeal, this is one of the circumstances

17   where it would be appropriate given that -- given the nature

18   of the appeal.  If need be, I can reopen the case depending

19   on the result, but I don't see any reason not to close the

20   case because of the pending appeal.

21           MR. BUTLER:  Thank you, Your Honor.

22           The next item I wanted to address briefly is there

23   are appeals involving Mr. Sumpter, James S. Sumpter, a

24   former salaried -- actually a salaried retiree of the debtor

25   and those -- the item that I want to mention that at least

Page 23

1    remains open on the docket in this Court is there was a

2    motion by Mr. Sumpter filed for seeking a stay in connection

3    with the appeal.

4            THE COURT:  That order will get entered today.  I

5    had determined to grant the stay on the condition that the

6    Indiana action be stayed so that there's no affect on the

7    Indiana action -- his pursuit of the Indiana action.  I

8    don't think that affects your budget at all because the

9    Indiana action is completely stayed and I would not stay the

10   appeal to the District Court unless that happened and that's

11   in the order.

12           MR. BUTLER:  Thank you.

13           Your Honor, I think that leads us to only a couple

14   of additional items. First, as I indicated in my earlier

15   remarks to Your Honor, the dissolution is going to occur in

16   the sequence I described after the environmental certificate

17   is filed and the GM stipulation is approved by Your Honor

18   and the GM payment is made and that certificate is filed,

19   then the dissolution will occur and that certificate will be

20   filed.  And the proposed form of final decree would then,

21   the effective time of that would then occur.

22           That was the -- that's what we had contemplated in

23   footnote 11 to our closing report depending on the

24   sequencing of the matters, as I've described them to you.

25   And I think that leaves then only two things I wanted to

Page 24

1    point out.  One, before I get to the GM settlement, which is

2    the last, the one thing I wanted to point out is we had

3    originally intended to resolve all of the real estate

4    properties either into the trust, into an environmental

5    trust or to be sold.  As we pointed out in paragraph 19 of

6    the closing report, there was a sale that was not completed

7    in Olife (ph) Kansas where the purchaser pulled away.  That

8    will be dealt with in the wind down proceeding.

9              Other than that, we've dealt with the matters as

10    we described them to Your Honor.  And I think the only other

11    matter then is the parties did submit the GM stipulation

12    settlement, Your Honor, for Your Honor's consideration.

13    That matter was held -- was dealt with by the reorganized

14    debtors by Mr. Berger at Togut Segal.

15              THE COURT:  I sent that to be entered.  It hasn't

16    been entered yet?

17              MR. BERGER:  It hasn't, Judge.

18              THE COURT:  All right.  Well I'll make sure that

19    happens.  I sent that in Friday afternoon or Monday morning.

20              MR. BERGER:  Okay. We'll watch the docket.  Thank

21    you, Judge.

22              THE COURT:  All right.  Okay.

23              MR. BUTLER:  Great, Your Honor, because that --

24    the entry -- once you see that in the docket, the payment

25    that's supposed to be made will be made and I'm sure

Page 25

1    promptly after that we'll get Mr. Steinberg's certificate

2    filed.  So that's the -- those are the only issues that we

3    have left.

4              THE COURT:  Okay.

5              MR. BUTLER:  So with that, Your Honor, I think we

6    have reported to you on all the items that we were supposed

7    to report under the case closing order that you entered

8    previously.  And other than to thank the Court for its

9    stewardship of these cases over the last eight years, we

10   have nothing else to say.

11             THE COURT:  Okay.  Does anyone else have anything

12   to say on the motion?

13             MR. STEINBERG:  Your Honor, there was one thing

14   that Mr. Butler said in his -- Arthur Steinberg on behalf of

15   New GM.  There was one thing that Mr. Butler said in his

16   presentation with regard to the Ace money and I wanted to

17   just be a little more precise than what he was.  There is

18   the possibility of Ace money coming back, but under the GM

19   stipulation that has been assigned to GM in repayment, in

20   partial repayment of the advance as compared to it flowing

21   into the dissolved entity.

22             THE COURT:  Okay.

23             MR. STEINBERG:  So I just wanted the record to

24   reflect that.

25             THE COURT:  Well the terms of that stipulation

Page 26

1    will govern.

2            MR. BERGER:  Yes and I -- Neil Berger again for

3    the reorganized debtors.  Mr. Steinberg is correct in his

4    articulation of that provision of our settlement.

5            THE COURT:  Okay.  All right.  Fine.  I told my

6    wife this morning that it might be that we would close the

7    DPH Delphi cases today and she said, oh, forgotten but not

8    gone.  Obviously it's not been forgotten by the parties that

9    have been working on it since the plan went effective and

10   there have been -- obviously there was a lot to do and

11   various firms and DPH representatives that handled it, you

12   know, obviously did a remarkable job on it.  So to have

13   wrapped it up given the amount of claims and the litigation

14   issues and under budget was an achievement.  So you can

15   email that.

16           MR. BUTLER:  Thank you very much, Your Honor.

17           THE COURT:  Okay.  Thank you.

18           (Chorus of thank you.)

19       (Proceedings concluded at 10:39 a.m.)

20

21

22

23

24

25

Page 27

1                    C E R T I F I C A T I O N

2

3      I, Melissa Looney, certify that the foregoing transcript is

4      a true and accurate record of the proceedings.

5      Melissa          Digitally signed by Melissa Looney
                         DN: cn=Melissa Looney,
                         o=Veritext, ou,
6      Looney            email=digital@veritext.com, c=US
                         Date: 2016.12.13 14:59:15 -05'00'

7      MELISSA LOONEY

8      AAERT Certified Electronic Transcriber CET - 607

9

10

11

12     Veritext

13     330 Old Country Road

14     Suite 300

15     Mineola, NY 11501

16

17     Date:   December 18, 2013

18

19

20

21

22

23

24

25