James C. Tecce  
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**  
51 Madison Avenue, 22nd Floor  
New York, NY 10010

**Objections Due:** Aug. 25, 2017 at 4:00 p.m.  
**Presentment Date:** Aug. 28, 2017 at 10:00 a.m.  
**Hearing Date:** None, unless objections are filed

*Counsel to Adversary Proceeding Plaintiffs*

**UNITED STATES BANKRUPTCY COURT**  
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE:                                                   x<br><br>DPH HOLDINGS CORP., et al.,<br><br>　　　　　　　　　Reorganized Debtors.<br>                                                          x | Chapter 11<br>Case No. 05-44481 (RDD)<br>(Jointly Administered) |

**MOTION OF ADVERSARY PROCEEDING PLAINTIFFS, PURSUANT TO 11 U.S.C. §§ 105(a), 350(b), AND 1142(b) AND FED. R. BANKR. P. 3021 AND 5010, FOR ENTRY OF AN ORDER (A) REOPENING DPH HOLDINGS CORP. ET AL. CHAPTER 11 CASES FOR SOLE ADMINISTRATIVE PURPOSE OF CONSIDERING MOTION, (B) WAIVING FEES TO REOPEN CASES, AND (C) AIDING IMPLEMENTATION OF PLAN AND ADVERSARY PROCEEDING SETTLEMENT BY CLARIFYING THAT CLAIMS RECORD DATE SET UNDER PLAN DOES NOT APPLY TO DISTRIBUTIONS TO BENEFICIAL HOLDERS OF DELPHI SENIOR UNSECURED NOTES**

Plaintiffs in the Adversary Proceeding (the "Movants")[1] hereby move, pursuant to sections 105(a), 350(b), and 1142(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-

---

[1] The "Adversary Proceeding" means the proceeding styled *Solus Alternative Asset Mgmt. LP, et al. v. Delphi Auto. PLC, et al. (In re DPH Holdings Corp., et al.)*, Adv. Proc. No. 14-02445 (RDD) (Bankr. S.D.N.Y.), brought by Movants to compel payment of the Plan's General Unsecured MDA Distribution. Capitalized terms not otherwise defined herein have the meanings ascribed to them in the (1) Motion, Pursuant To 11 U.S.C. §§ 105(a) And 1142(b), For Approval Of Stipulation And Order, Pursuant To Fed. R. Civ. P. 41(a)(1)(A)(ii), Vacating Final Judgment And Dismissing Adversary Proceeding With Prejudice [Adv. Proc. ECF No. 132] (the "Settlement Motion"), (2) Order (A) Granting Plaintiffs' Motion Pursuant To 11 U.S.C. §§ 105(a) And 1142(b), For Approval Of Stipulation [Adv. Proc. ECF No. 132] And (B) SO-ORDERING Stipulation, Pursuant To Fed R. Civ. P. 41(a)(1)(A)(ii), Vacating Final Judgment And Dismissing Adversary Proceeding With Prejudice [Adv. Proc. ECF No. 132-2] As Set Forth Herein [Adv. Proc. ECF No. 140] (the "Settlement Order"), and (3) Stipulation And Order, Pursuant To Fed. R. Civ. P. 41(a)(1)(A)(ii), Vacating Final Judgment And Dismissing Adversary Proceeding With Prejudice, attached as Exhibit A to the Settlement Order [Adv. Proc. ECF No. 140-1] (the "Settlement Stipulation"). The Settlement Order and Settlement Stipulation shall be referred to herein collectively as the "Settlement Documents"). The "Adversary Proceeding Plaintiffs" are Solus Alternative Asset Management LP, Angelo Gordon & Co., L.P., Longhorn Credit Funding, LLC, Nexpoint Credit Strategies Fund, Gov Re, Ltd., Ultra

1532 (as amended, the "Bankruptcy Code"), and Rules 3021 and 5010 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (hereinafter, the "Motion"), for entry of an Order (a) reopening the above-captioned, jointly-administered chapter 11 cases (the "Chapter 11 Cases") for the sole administrative purpose of considering the within Motion, (b) waiving any fees associated with reopening the Chapter 11 Cases, and (c) aiding implementation of the Adversary Proceeding Settlement[2] and the Plan by clarifying that the claims record date established under the Plan has no applicability to the distributions that will be made by the sole registered holder of the Senior Notes,[3] Cede & Co., a nominee partnership of the Depository Trust Company (collectively, the "DTC"), to the DTC Participants (as defined below) and the beneficial holders of Senior Notes, and respectfully state as follows.

## PRELIMINARY STATEMENT

1. Delphi Automotive PLC and Delphi Automotive LLP (collectively, "Defendants") began implementing the Adversary Proceeding Settlement in July 2017 by directing the retained Disbursement Agent, Kurtzman Carson Consultants LLC ("KCC"), to distribute the Settlement Payment ($307.2 million) to holders of Allowed General Unsecured Claims. On July 20, 2017, KCC distributed to Wilmington Trust Company ("Wilmington Trust") $101,887,098.78 (the "Initial Distribution") on account of Proof of Claim No. 10271 that Wilmington Trust filed in the Chapter 11 Cases as indenture trustee for the Senior Notes in the amount of $2,044,593,402.77. Under the Adversary Proceeding Settlement, Defendants will

---

Master Ltd, Sola Ltd, Solus Opportunities Fund 1 LP, Solus Opportunities Fund 2 LP, Solus Recovery Fund III Master LP, AG Super Fund International Partners, L.P., and Botticelli LLC.

[2]  The "Adversary Proceeding Settlement" means the settlement reached between Movants and Defendants resolving the disputes in the Adversary Proceeding on the terms set forth in the Settlement Documents.

[3]  The "Senior Notes" means the "Senior Notes" as that term is defined in the Plan, i.e., collectively the (1) 6.55% Notes due 2006, (2) 6.5% Notes due 2009, (3) 6.5% Notes due 2013, and (d) 7.125% Notes due 2029, all issued by (former) Delphi Corporation pursuant to the indenture for debt securities between (former) Delphi Corporation and the First National Bank of Chicago, as indenture trustee, dated as of April 28, 1999. See Plan at 25 (§§ 1.212, 1.213, 1.214, 1.215). The relevant portions of the Plan are attached hereto as **Exhibit A**.

1

make a second distribution of Settlement Payment proceeds six months after the Funding Date to the extent there are Undelivered Payments still remaining from the Initial Distribution.  At that time, a Pro Rata share of any remaining Undelivered Payments will be distributed by Defendants to Wilmington Trust (hereinafter, the "Subsequent Distribution").

2.  Wilmington Trust has indicated it will deliver the Initial and Subsequent Distributions to the DTC, which is the sole registered holder of record of the Senior Notes as of the Claims Record Date.  Movants understand that when Wilmington Trust delivers the Initial and Subsequent Distributions to the DTC, however, Wilmington Trust must either advise the DTC of, or will be asked by DTC for the appropriate record dates for the DTC's subsequent transfer of those distributions to the beneficial holders of Senior Notes.  Or, Wilmington Trust can direct the DTC to transfer the Distributions to "current holders" (as hereinafter described).

3.  Paragraph forty-five (¶ 45) of the Confirmation Order establishes a Claims Record Date of June 8, 2009.  It also addresses distributions made on account of the Senior Notes and provides that the Disbursing Agent, the Indenture Trustee, and the Servicer do not have to recognize claim transfers that take place after the Claims Record Date.

4.  Movants submit the Claims Record Date applies only to (a) the transfers of the Initial and Subsequent Distributions by the Defendants (as Disbursing Agent) to Wilmington Trust (as Indenture Trustee) and (b) the subsequent transfers of the Initial and Subsequent Distributions from Wilmington Trust (as Servicer of distributions under the indenture) to the DTC.  Movants also maintain that the DTC is not a Servicer under the Confirmation Order and that the order does not set a record date for the transfer by the DTC of distributions to beneficial noteholders.  Wilmington Trust asserts that the Confirmation Order may be unclear with respect to the application of the Claims Record Date to the DTC.  In light of potentially divergent views, Movants have submitted the issue for clarification.

2

5.    Clarity is critical. The Senior Notes have traded continuously over the last eight years. The current beneficial holders are, in most cases, different from those on the Claims Record Date. With respect to Movants, for example, most of their notes were acquired after the Claims Record Date through transactions that did not involve assignment agreements addressing downstream distributions. Instead, the transfers of beneficial note ownership are recorded on transfer ledgers maintained by the "DTC Participants," i.e., participating financial institutions that act as prime brokers for the beneficial holders of Senior Notes. The transfer ledgers maintained by the DTC Participants as of the Claims Record Date, to the extent they still exist, do not reflect the current beneficial holders of Senior Notes. Accordingly, Movants request the entry of an Order:

- clarifying (a) that the DTC is not a "Servicer" and (b) that the Claims Record Date has no application to the DTC's transfers of either the Initial or Subsequent Distributions to the DTC Participants and thereafter to the beneficial holders of Senior Notes (hereinafter, the "Beneficial Holders"); and

- directing Wilmington Trust to advise the DTC upon delivery to the DTC of the Initial Distribution and Subsequent Distribution (if any) that the DTC shall pay each such distribution to the then "current holders," meaning the holders of record on the DTC's books as of the close of business on the business day immediately preceding the day on which such Distributions are made.

## BACKGROUND

**A.    PLAN AND CONFIRMATION ORDER**

6.    Distributions under the Plan are made by the "Disbursing Agents"—a defined term.[4] The Company Buyer, the predecessor entity to Defendants, is appointed under the Plan to be the Disbursing Agent for the General Unsecured MDA Distribution.[5]

---

[4]    See Plan at 12 (§ 1.78) ("'Disbursing Agent' means Reorganized DPH Holdings, or any Person designated by it, in its sole discretion, to serve as disbursing agent under this Plan. For purposes of distributions to holders of Allowed General Unsecured Claims, Reorganized DIP Holdings shall, as of the Effective Date, appoint DIP Holdco 3, LLC as the Disbursing Agent, or such other party as may be determined by mutual agreement between Reorganized DIP Holdings and DIP Holdco 3, LLC.").

[5]    *Note* that under the Settlement Documents, Defendants retained KCC to act as the "Disburs*ement* Agent"—a defined term thereunder—for purposes of distributing the Settlement Amount. As used in this

3

7. While the Plan contemplates that Disbursing Agents make the initial distributions to creditors, it also contemplates that the Indenture Trustee, in its capacity as a "Servicer," will administer those distributions with respect to the Senior Notes Indenture:

> [t]he Disbursing Agent shall make all distributions required under this Plan except with respect to any holder of a Claim whose Claim is governed by an agreement and is administered by a Servicer, which distributions shall be deposited with the appropriate Servicer, as applicable, who shall deliver such distributions to the holders of Claims in accordance with the provisions of this Plan and the terms of any governing agreement …[6]

Thus, Wilmington Trust is both Indenture Trustee and Servicer under the Plan.

8. The Senior Notes Indenture relating to the Senior Notes was canceled under the Plan on the Effective Date. Nonetheless, the Senior Notes Indenture continues to exist for the limited purpose of making Plan distributions:

> [o]n the Effective date, except as otherwise specifically provided for herein (a) the Existing Securities and any other note, bond indenture, or other instrument … shall be canceled … ; provided however, that any agreement (including the Indentures) that governs the rights of a holder of a Claim and that is administered by an indenture trustee, agent, or servicer (each hereinafter referred to as a 'Servicer') shall continue in effect solely for purposes of (x) allowing such Servicer to make the distributions on account of such Claims under this Plan … and (y) permitting such Servicer to maintain any rights or liens it may have for fees, costs, and expenses under such indenture or other agreement.[7]

9. The Confirmation Order provides that for purposes of making distributions, the Disbursing Agent, the Indenture Trustee, and the Servicer need only recognize and deal with holders of Allowed Claims that hold those claims as of the Claims Record Date and appear in the Claims Register:

---

Motion, the term "Disburs*ement* Agent" refers to the entity retained by Defendants under the Settlement Documents (KCC). The term "Disburs*ing* Agent" refers to the entity designated under the Plan for the purpose of making distributions, i.e., Defendants' predecessor (DIP Holdco 3, LLC) in the case of the General Unsecured MDA Distribution.

[6]   Plan at 53 (§ 9.3). See id. at 54 (§ 9.5) ("The services, with respect to the implement of the distributions contemplated by this Plan, of Servicer under the relevant agreements that govern the rights of holders of Claims and Interests shall be set forth elsewhere in this Plan.").

[7]   Plan at 41-42 (§ 7.13).

4

Record Date For Claims Distributions. The Reorganized Debtors, the Disbursing Agent, the Indenture Trustees (as agent or Servicer as described in Section 9.5 of the Modified Plan), and the Servicers shall have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after June 8, 2009 (the 'Claims Record Date'), and shall be entitled for all purposes herein to recognize and distribute only to those holders of Allowed Claims who are holders of such Claims, or participants therein, as of the Claims Record Date. The Reorganized Debtors, the Disbursing Agent, the Indenture Trustees (as agent or Servicer as described in Section 9.5 of the Modified Plan), and the Servicers shall instead be entitled to recognize and deal for all purposes under the Modified Plan with only those record holders stated on the official claims register or the transfer ledger, as the case may be, as of the Claims Record Date. On the Claims Record Date, the transfer ledgers of the Indenture Trustees or other agents or Servicers shall be closed, and there shall be no further changes in the record holders of securities. The Reorganized Debtors, the Disbursing Agent, the Indenture Trustees (as agent or Servicer as described in Section 9.5 of the Modified Plan), and the Servicers shall have no obligation to recognize any transfer of the Senior Notes, the TOPrS, or the Subordinated Notes occurring after the Claims Record Date. The Reorganized Debtors, the Disbursing Agent, the Indenture Trustees (as agent or Servicer as described in Section 9.5 of the Modified Plan), and Servicers shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers as of the Claims Record Date ...[8]

## B. INITIAL AND SUBSEQUENT DISTRIBUTIONS

10. The Settlement Documents require Defendants to cause the Disbursement Agent (KCC) to transfer the Settlement Payment to "Record Holders," a defined term meaning "holders of Allowed General Unsecured Claims who (i) appear on the final Schedules … as holding Allowed General Unsecured Claims or (ii) were record holders stated on the final claims register in the Chapter 11 Cases as of the Record Date (as defined in the Plan)."[9]

11. Wilmington Trust is the only creditor appearing in the Claims Register with respect to the Senior Notes and has received the Initial Distribution totaling approximately $101.9 million.[10] Wilmington Trust intends to transfer that Initial Distribution to the DTC for

---

[8] Confirmation Order at 73-75 (¶ 45). The relevant portions of the Confirmation Order are attached hereto as **Exhibit B**.

[9] See Settlement Order at 3 (¶ 6). While the term "Claims Record Date" is defined in the Confirmation Order, the definition of "Plan" in that document includes the Confirmation Order. See Plan at 21 (§ 1.175) ("'Plan' means this joint plan of reorganization … as confirmed by the Bankruptcy Court … and as may be modified … by the Modification Approval Order").

[10] The relevant portions of the Claims Register are attached hereto as **Exhibit C**.

5

the benefit of Cede & Co., which is the sole registered holder of the Senior Notes as of the Claims Record Date.

12.     The DTC, however, will require instruction from Wilmington Trust whether to forward the Distributions to the DTC Participants and thereafter to the Beneficial Holders as of a particular record date or to "current holders." Once the DTC receives the Initial and Subsequent Distributions, the DTC will then transfer them to the DTC Participants who act as prime brokers maintaining the Beneficial Holders' accounts for further distribution to either (a) holders of record as of a particular date or (b) "current holders," as specified by Wilmington Trust.

## BASIS FOR RELIEF

13.     The statutory predicates for the relief requested in the Motion are sections 105(a), 350(b), and 1142(b) of the Bankruptcy Code and Rule 3021 and 5010 of the Bankruptcy Rules. The Court has jurisdiction over the Motion pursuant to sections 157(b) and 1334 of title 28, the Settlement Order, and the Plan.

## ARGUMENT

14.     "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). See also Fed. R. Bankr. P. 5010 (stating case may be reopened on motion of "the debtor or other party in interest."). "Section 350(b) gives the bankruptcy court broad discretion in deciding whether to reopen a case." In re Emmerling, 223 B.R. 860, 864 (B.A.P. 2d Cir. 1997). C.f., In re Weinstein, 164 F.3d 677, 686 & n. 6 (1st Cir. 1999) (finding bankruptcy court had broad discretion to reopen a closed case sua sponte, to reverse its prior decision denying a motion to avoid a lien, and to then avoid lien based on more recent case law without further evidentiary hearing when one already had been held).

15.     Bankruptcy Rule 3021 provides that "after a plan is confirmed, distribution shall be made to creditors whose claims have been allowed …. For purposes of this rule, creditors

6

include holders of bonds, debentures, notes, and other debt securities … of record at the time of commencement of distribution unless a different time is fixed by the plan or order confirming the plan."

16. Section 1142(b) of the Bankruptcy Code empowers the Court to "direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act … that is necessary for the consummation of the plan." 11 U.S.C. § 1142(b). Section 105(a) of the Bankruptcy Code provides "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

17. While the Confirmation Order establishes the Claims Record Date for the first transfer from the Disbursing Agent to Wilmington Trust and the second transfer from Wilmington Trust to the DTC, Movants submit it otherwise is silent and imposes no record date that governs the DTC's distribution to Beneficial Holders. Movants believe the plain text of the Confirmation Order supports their interpretation. Specifically, the lead sentence in paragraph 45 mentions only "Disbursing Agents" and "Servicers" as those terms are defined in the Plan, i.e., to "[t]he Reorganized Debtors, the Disbursing Agent, the Indenture Trustee (*as agent or Servicer as described in Section 9.5 of the Modified Plan*), and the Servicers shall have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after June 8, 2009."[11] Those are the only parties entitled to disregard transfers of claims that took place after the Claims Record Date.

18. The DTC, as the sole registered noteholder, is not among the parties listed in paragraph forty-five (¶ 45) of the Confirmation Order. Movants believe Wilmington Trust clearly is the Servicer referenced in the paragraph because it is the entity responsible for

---

[11] See Confirmation Order at 73-74 (¶ 45) (emphasis added).

7

administering distributions under the Senior Notes Indenture. Movants therefore maintain that the DTC is neither a Disbursing Agent nor a Servicer and that the Claims Record Date has no application to the DTC. Wilmington Trust, however, has expressed concern that the Confirmation Order can be read otherwise and that even though Cede & Co. is the sole registered holder of the Senior Notes, the DTC could conceivably fall within the definition of "Servicer" in section 7.13 of the Plan.

19. Absent a specific instruction from Wilmington Trust to the DTC to pay current Beneficial Holders, the proceeds of the Settlement Payment may be deposited by the DTC or the DTC Participants into the accounts of former Beneficial Holders that have sold their positions. If that occurs, those proceeds may not be forwarded to the current Beneficial Holders who have purchased the Senior Notes in the eight years since the Plan was confirmed. Transfers relating to the Senior Notes are not subject to detailed assignment agreements that contain provisions relating to downstream distributions.[12] Instead, these transfers are reflected on transfer ledgers in the books and records maintained by the DTC and the DTC Participants.

20. As the current beneficial holders of Senior Notes, Movants (and others) are the parties entitled to the Settlement Payment proceeds.[13] Accordingly, the DTC should not be considered a Servicer required to make distributions to beneficial holders of the Senior Notes as

---

[12] See, e.g., Declaration Of Adam Freedman [Adv. Proc. ECF 34-1] ¶¶ 4-5 (identifying claims acquired by assignment from PBGC and noting "[u]nder the terms of each of the respective assignment agreements pursuant to which the Funds acquired their claims, the assignor must turn over to the assignee any funds it receives from the Disbursing Agent under the Modified Plan."); Declaration Of Joshua Sock [Adv. Proc. ECF 34-2] ¶ 4-5 (identifying claims taken by assignment from PBGC and trade creditors and noting the same), ¶ 7 ("In addition to the foregoing claims, the Funds are the current beneficial holders of Senior Notes Claims in the aggregate face amount of not less than $600 million."); Declaration Of Isaac Leviton [Adv. Proc. ECF No. 34-3] ¶ 4 (identifying Delphi Senior Notes Claims held since Claims Record Date).

[13] See Stipulation And Order Denying Defendants' Motion To Dismiss For Lack Of Standing [Adv. Proc. ECF No. 45] ¶ 1 ("Plaintiffs Highland Funds were and are beneficial owners of Senior Notes of Old Delphi on the Claims Record Date and currently."), ¶ 2 ("Each of Plaintiffs Solus Funds and Angelo Gordon Funds are assignees of holders of Senior Notes and/or allowed General Unsecured Claims identified in the Claims Register."), ¶ 3 ("Each of plaintiffs Highland Funds, Solus Funds, and Angelo Gordon Funds will suffer an injury in fact if the General Unsecured MDA Distribution is not made in accordance with the Modified Plan and any other relevant documents when due.").

8

of the Claims Record Date.  Instead, Wilmington Trust should be directed to advise the DTC to make distributions to the then "current holders."

## NOTICE

21.     Movants have caused a copy of this Motion to be served (a) through the ECF System, (b) on the parties appearing on the final Master Service List maintained in the Chapter 11 Cases (by electronic mail), and (c) on the DTC.

9

**CONCLUSION**

WHEREFORE, Movants respectfully request that the Court enter an Order substantially in the form attached hereto as **Exhibit D** (A) granting the within Motion; (B) reopening the Chapter 11 Cases for the sole administrative purpose of considering the within Motion and waiving any fees associated with reopening the cases; (C) clarifying that the DTC is not a "Servicer" for purposes of the Confirmation Order and that the Claims Record Date has no application to the DTC's transfers of the Initial and Subsequent Distributions to the DTC Participants and thereafter to the Beneficial Holders; (D) directing Wilmington Trust to advise the DTC to deliver the Initial and Subsequent Distributions to the then "current holders" (as described herein); and (E) awarding such other, further relief as the Court deems appropriate.[14]

Dated: August 11, 2017
       New York, New York

                                        Respectfully submitted,

                                        **QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP**

                                  By:   /s/ JAMES C. TECCE
                                        James C. Tecce
                                        51 Madison Avenue, 22nd Floor
                                        New York, New York
                                        10010-1601
                                        Telephone: (212) 849 7199

                                        *Counsel to Adversary Proceeding
                                        Plaintiffs*

---

[14] For the avoidance of doubt, the [Proposed] Order relating to the Motion makes clear it in no way modifies the Settlement Documents or Defendants' rights and obligations thereunder.