**HEARING DATE AND TIME: May 31, 2018 at 10:00 a.m. (Eastern Time)**
**OBJECTION DEADLINE: May 17, 2018 at 4:00 p.m. (Eastern Time)**

Thomas M. Kennedy, Esq.
COHEN, WEISS and SIMON LLP
900 Third Avenue
New York, NY  10022
Telephone: (212) 563-4100
Facsimile: (212) 563-6527
Attorneys for IUE-CWA

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re:                                          :        Chapter 11 Case No.
                                                :
DPH HOLDINGS CORP., et al.,                     :        05-44481 (RDD)
                                                :
f/k/a  DELPHI CORP., et al.,                    :        (Jointly Administered)
                                                :
                       Debtors.                 :
                                                :
------------------------------------------------------------x

**IUE-CWA'S MOTION PURSUANT TO 11 U.S.C. §§ 105 AND 363(b),
TO AMEND THE IUE-CWA 1113/1114 SETTLEMENT APPROVAL ORDER**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

**PRELIMINARY STATEMENT**

1.     By this Motion, the IUE-CWA, Industrial Division of the Communications Workers of America, AFL-CIO, CLC ("IUE-CWA"), seeks entry of an order, pursuant to 11 U.S.C. §§ 105(a) and 363, amending the August 16, 2007 Order under 11 U.S.C. §§ 363, 1113 and 1114 and Fed. R. Bankr. P. 6004 and 9019 Approving Memorandum of Understanding among IUE-CWA, Delphi, and General Motors Corporation Including Modification of IUE-CWA Collective Bargaining Agreements and Retiree Welfare Benefits for Certain IUE-CWA-Represented Retirees ("Settlement Approval Order") (Docket No. 9106).  A proposed amended order is attached as Exhibit A.

2. This motion is necessary because the general unsecured pre-petition claim allowed to IUE-CWA by the Settlement Approval Order has generated a recovery of approximately five (5%) percent of the face value of the claim and the prospective uses to which this recovery can be spent need to be restated to reflect (i) the current needs of the Union and its members, and (ii) the substantially reduced proceeds that resulted from the IUE-CWA general unsecured claim.

3. General Motors LLC and Aptiv LLC, the successor to Delphi Automotive PLC, do not object to the proposed reallocation of the claim. See Declaration of Thomas M. Kennedy, paragraph 3, attached as Exhibit B.

4. On or about August 5, 2007, the IUE-CWA entered into an agreement with Delphi Corp. ("Delphi" or "the Debtors") and General Motors Company ("GM"), titled IUE-Delphi-GM Memorandum of Understanding, Delphi Restructuring ("Settlement Agreement") which is an Exhibit to the Settlement Approval Order. The Settlement Agreement provides, in pertinent part, as follows:

> The IUE-CWA will receive an allowed general unsecured pre-petition claim against Delphi in the amount of $126 million in complete settlement of all asserted and unasserted IUE-CWA claims, including but not limited to IUE-CWA/Delphi Joint Activities Center asserted and unasserted claims ("the Allowed Claim"), pursuant to an order of the Bankruptcy Court. The Bankruptcy Court order shall provide that (i) the proceeds realized by the IUE-CWA and/or the VEBA trust, described herein, from a $26 million dollar portion of the Allowed Claim shall be paid directly to a voluntary employees' beneficiary association (VEBA) trust to be established and sponsored by the IUE-CWA to provide supplemental retiree health insurance to certain eligible Delphi employees and their dependents (ii) the proceeds realized by the IUE-CWA and/or the VEBA trust, described herein, from a $90 million dollar portion of the Allowed Claim shall be paid directly to a VEBA trust to be established and sponsored by the IUE-CWA for the purpose of funding employee benefits for active and retired employees and their dependents and (iii) the proceeds realized by the IUE-CWA and/or a VEBA trust, described herein, from a $10 million dollar portion of the Allowed Claim shall be paid directly to the successor to the JAC entity which shall be established and administered by the IUE-CWA.

2

5.      The Settlement Approval Order included those provisions at ¶ 8. (Doc No. 9106).

6.      On July 20, 2017, the IUE-CWA received into an escrow account the sum of $6,278,888.72 as its share of the Delphi bankruptcy distribution to the unsecured Delphi creditors, which recovery is approximately five (5%) percent of the face value of the claim. Declaration of James Clark, attached as Exhibit C, paragraph 3. IUE-CWA is proposing that the Settlement Approval Order be amended to provide that the claims proceeds be expended as follows, which purposes are explained more fully at paragraphs and through 11 below:

A.    $250,000 to be used by IUE-CWA for training and skills enhancement for active Delphi employees.

B.    $1,260,000 in health care reimbursement for 105 Delphi employees from the two surviving IUE-CWA Delphi local unions (9 from Local 718 and 96 from Local 717), who as of the critical date of January 1, 2010 were eligible for the GM guarantee but were not within 7 years of qualifying for a retirement. The existing IUE-CWA GM VEBA will be amended to provide a health reimbursement type benefit for each of these individuals of $12,000.

C.    $3,762,000 in health care reimbursement accounts for Delphi retirees who participated in the pre-65 health program but were limited by age to two years or less of participation. The IUE-CWA GM VEBA would be amended to provide a health reimbursement type benefit for each of these individuals of $2,000 to be used within three years of the beginning of the program.

D.    $500,000 to the IUE-CWA Joint Activities Center ("JAC") to support its operations, which was to receive a $10 million claim under the original settlement.

E.    $360,000 for administrative VEBA costs to implement the health care reimbursement programs. The extensive administrative costs for administering HRA-type reimbursements would also be deferred by earnings on the HRA funds and the retention of any forfeited amounts by non-claiming participants.

F.    $150,000 reimbursement to Kennedy, Jennik & Murray, P.C. for legal work to litigate and establish the IUE-CWA unsecured Delphi claim.[1] See Clark Declaration attached as Exhibit C.

---

[1] Please note that the total disbursements slightly exceed the claim distribution amount to reflect the interest that has been earned on an escrow account established upon the distribution on July 7, 2017.

3

## THE MOTION TO AMEND THE 1113/1114 SETTLEMENT APPROVAL ORDER SHOULD BE GRANTED UNDER §§ 105(a) AND 363(b) OF THE BANKRUPTCY CODE

7.  Ample authority exists for approval of the Motion under §§ 105(a) and 363(b) of the Bankruptcy Code. Section 105 of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Settlement Agreement contemplates approval of the Bankruptcy Court for the distribution of any funds resulting from the Allowed Claim. The IUE-CWA seeks to modify the distribution of the proceeds of the Allowed Claim due to the change in the expected value of the Allowed Claim but proposes to maintain the purposes intended by the Settlement Agreement.

8.  The Allowed Claim is for the loss of retiree health benefits and for the loss of contractual benefits for employees. The IUE-CWA proposes to distribute the proceeds of the Allowed Claim in a manner consistent with the intended purposes stated in the Settlement Agreement. Because the actual distribution was only 4.98% ($6,278,888/$126,000,000) of the agreed-upon claim, the proposed changes in the distribution of these proceeds are necessary to reflect the original intent of the Agreement. Clark Dec. pp.4-9.

9.  The original claim of $126,000,000 was split into three buckets:

    A.  $26 million dollars of the Allowed Claim shall be paid directly to a voluntary employees' beneficiary association (VEBA) trust to be established and sponsored by the IUE-CWA to provide supplemental retiree health insurance to certain eligible Delphi employees and their dependents

    B.  $90 million dollars of the Allowed Claim shall be paid directly to a VEBA trust to be established and sponsored by the IUE-CWA for the purpose of funding employee benefits for active and retired employees and their dependents

   C. $10 million dollars of the Allowed Claim shall be paid directly to the successor to the JAC entity which shall be established and administered by the IUE-CWA. (id.)

 10. As a result of the reduced recovery of only 5% of the Allowed Claim, it is not necessary or appropriate for VEBA(s) to be established to administer the distribution of benefits to retired or active employees under this claim. A separate VEBA would require the expenditure of funds to retain counsel to establish and maintain the VEBA, a certified public accountant to perform annual audits and make required governmental tax, and other filings and investment managers to safeguard the investment of the VEBA funds. These expenditures would consume a substantial portion of the proceeds of the Allowed Claim. It is far more practicable given the amount of money involved to (i) utilize an existing IUE-CWA VEBA that was created to administer benefits for retired GM employees in the GM bankruptcy for retiree health benefits as described below and (ii) to allow the union to directly administer the training funds that are part of this proposal as it was intended to do in connection with the original $10 million Joint Activities Center portion of the original claim. (id.)

 11. The proposed modified distribution is a fair and reasonable allocation of the actually available proceeds from the 2010 claim:

   A. The $250,000 to be used by IUE-CWA for training and skills enhancement for active Delphi employees is reasonable because the amount of money available is not sufficient to provide an alternative benefit of any significance to the approximately current 800 members working for Delphi in Locals 717 and 718. The IUE-CWA intends to work with those local unions and Delphi to use these funds to encourage Delphi to invest more money in training of the current employees to upgrade their skills and abilities. Upgraded skills and abilities are the best available form of job security for these workers.

5

B.  The $1,260,000 in health care reimbursement for 105 Delphi employees from the two surviving IUE-CWA Delphi local unions (9 from Local 718 and 96 from Local 717) is reasonable since these workers did not receive any other compensation for the loss of their retiree medical plans from GM. As of the critical date of January 1, 2010, these workers were eligible for the GM retiree medical and pension guarantee but were not within 7 years of qualifying for a retirement. The existing IUE-CWA GM VEBA will be amended to provide a health reimbursement type benefit for each of these individuals of $12,000. This small payment will partially address the significant loss these individuals suffered as a result of GM's cancellation of its retiree plans medical plans. This money must be used within five years of the beginning of the program, and any undistributed money at the end of that time will be paid to eligible participants who have applied to receive this money. Any money not applied for will be retained by the GM VEBA to pay for the anticipated administrative expenses for the work of administering this amended program for pre- and post-65 retirees.

C.  The $3,762,000 in health care reimbursement accounts for Delphi retirees who participated in the pre-65 health program but were limited by age to two years or less of participation is reasonable because these workers were only able to take advantage of the GM-funded medical plan for pre-65 retirees for a short period. In the GM-IUE CWA-Delphi settlement in the GM bankruptcy, a Fund was established for post-65 retirees as of January 1, 2010 that partially compensated them for the loss of their post-65 retiree health care. Otherwise eligible individuals who turned age 65 <u>after</u> January 1, 2010, even by only one month, were not able to take part in that plan. As of January 31, 2018, the GM VEBA has paid out $74 million to those who were age 65 as of January 1, 2010 and the Delphi retirees who were not age 65 as of January 1, 2010 have not gotten any of that money. While they did participate in the pre-65

6

plan, they were no longer able to participate in that plan when they turned age 65. The motion is to amend the IUE-CWA GM VEBA to provide a health reimbursement type benefit for the approximately 1,800 individuals who turned age 65 within two (2) years after January 1, 2010 and before December 31, 2012 of $2,000. This money must be used within three years of the beginning of the program and any undistributed money at the end of that time will be paid to eligible participants who have applied to receive this money. Any money not applied for will be retained by the GM VEBA to pay for the anticipated administrative expenses for the work of administering this amended program for pre- and post-65 retirees.

D. The $500,000 to the IUE-CWA Joint Activities Center ("JAC") to support its operations is reasonable given that the JAC was to receive a $10 million claim under the original settlement.

E. The $360,000 for administrative VEBA costs to implement the health care reimbursement programs is reasonable since enabling participants to receive these funds in the form of reimbursed health expenses without liability for income tax will impose an administrative burden on the Fund. The extensive administrative costs for administering the HRA-type reimbursements will also be deferred by earnings on the HRA funds and the retention of any forfeited amounts by non-claiming participants.

F. The $150,000 reimbursement to Kennedy, Jennik & Murray, P.C. for legal work to litigate and establish the IUE-CWA unsecured Delphi claim in 2008-2010 is reasonable because the IUE-CWA paid a steeply discounted hourly rate of $150 for this work and the results obtained justified a higher rate. [2] (id.)

---

[2] Please note that the total disbursements slightly exceeds the claim distribution amount to reflect the interest that has been earned on an escrow account established upon the distribution on July 7, 2017.

7

12. A union is the representative of employees in a bankruptcy proceeding. Pursuant to § 1113 of the Code, provisions of existing collective bargaining agreements may be modified during the proceeding. When such provisions are modified, the union has a claim on behalf of the employees whose terms and conditions of employment have been modified. Similarly, pursuant to § 1114(c)(1) of the Code, a labor organization may serve as the representative of retirees whose health and other non-pension benefits are modified in the bankruptcy case. In such circumstances, the union may sell the claim and distribute the proceeds to the affected members in the form of cash or other benefits. *In re Northwest Airlines Corp.*, 366 B.R. 270, 274 (Bankr. S.D.N.Y. 2007) ("In addition, each of the unions that has agreed with the Debtor on a new collective bargaining agreement has received a large proof of claim, and these unions have (with Court approval) sold part of their claims and made a substantial cash distribution to their members."); *Hourly Employees/Retirees of Debtor v. Erie Forge & Steel, Inc.*, CIV.A. 03-233 ERIE, 2004 WL 385023 (W.D. Pa. Feb. 2, 2004), *aff'd sub nom. In re Erie Forge & Steel, Inc.*, 418 F.3d 270 (3d Cir. 2005) ("There is no basis for concluding, as Appellants urge, that the Union would somehow personally profit from this recovery, which was obviously obtained for the benefit of its members. Indeed, the Union has conceded on the record that this recovery was negotiated for distribution to the hourly employees in addition to the recovery of some $340,000 in allowed administrative claims for their vacation pay.") *See also, In re General Motors Corp.*, 407 B.R. 463, 484-86, 519-20 (Bankr. S.D.N.Y. 2009) (approval of agreement to fund a VEBA providing retiree health benefits); *In re Chrysler LLC*, No. 09-50002 (AJG), 2009 WL 1360869, *18-19 (Bankr. S.D.N.Y. May 7, 2009) (approval of agreement to fund a VEBA providing retiree health benefits with equity and a note); *In re Delphi Corp.*, No. 05-44481 (RDD), 2009

8

WL 973130 (Bankr. S.D.N.Y. April 2, 2009) (approving payment to a salaried retirees committee to set up a VEBA in settlement of claims for lost retiree health benefits).

## JURISDICTION

13. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## NOTICE

14. Notice of this Motion has been provided to (i) Office of the United States Trustee for the Southern District of New York; (ii) the attorneys for Aptiv LLC, the successor to Delphi Automotive LLC; and (iii) the attorneys for General Motors LLC. IUE-CWA submits that such notice is sufficient and no other or further notice need be provided.

15. No previous request for the relief sought herein has been made by IUE-CWA to this or any other Court.

WHEREFORE, IUE-CWA respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: New York, New York
April 16, 2018

Respectfully submitted,

COHEN, WEISS and SIMON LLP
Attorneys for IUE-CWA

By: Thomas M. Kennedy
900 Third Avenue
New York, NY 10022
(212) 563-4100
(212) 563-6527 (facsimile)
tkennedy@cwsny.com

9